United States District Judge to be determined
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

     Re:     <u>Payne v. de Blasio</u>, No. 20-cv-8924 (S.D.N.Y.)

Monday, October 26, 2020

To whom it may concern,

My name is Towaki Komatsu. I'm a U.S. Navy veteran and am filing this letter to you to request to be granted intervention as of right pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 24(a)(2) or permissive intervention pursuant to FRCP Rule 24(b) in order to intervene in the case referenced above as an interested party or to appear in it as an amicus curiae in the alternative. I am filing this letter in a timely manner for that purpose after having learned about this case today.

### **Legal Standards**

1. The following is a pertinent excerpt from <u>Ferguson v. Ruane Cuniff & Goldfarb Inc.</u>, No. 17-cv-06685 (ALC) (S.D.N.Y. Mar. 29, 2019) that applies to the timeliness of this application:

   "Timeliness is the threshold consideration for both mandatory and permissive intervention. *Kamdem-Ouaffo v. Pepsico, Inc.,* 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (citing. *Pitney Bowes,* 25 F.3d 66, 70). "Whether a motion to intervene is timely is determined within the sound discretion of the trial court from all the circumstances." *Pitney Bowes,* 25 F.3d at 70. Courts consider: (1) how long the proposed intervenor had notice of the interest before it made the motion; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness. *In re Bank of N.Y. Derivative Litig.,* 320 F.3d 291, 300 (2d Cir. 2003). One of the most important factors is the length of time the applicant knew or should have known of their interest. *Catanzano,* 103 F.3d 223, 232. Courts measure timeliness from the moment the proposed intervenor had actual or constructive notice of their unrepresented interest. *Pepsico,* 314 F.R.D. 130, 135."

2. FRCP Rule 24 is comprised of 3 components that a) set forth the legal standard for being granted intervention of right, b) set forth the legal standard for permissive intervention, and c) concern notice and pleading. The following is the text of FRCP Rule 24(a):

   > "(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
   >
   > (1) is given an unconditional right to intervene by a federal statute; or
   >
   > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

   The following is the text of FRCP Rule 24(b)(1):

   > "(b) PERMISSIVE INTERVENTION.
   >
   > (1) In General. On timely motion, the court may permit anyone to intervene who:
   >
   > (A) is given a conditional right to intervene by a federal statute; or
   >
   > (B) has a claim or defense that shares with the main action a common question of law or fact."

3. With respect to textualism and what appears within FRCP Rule 24, text that states or is otherwise equivalent to the following does not exist in FRCP Rule 24:

   a. "an interest that is closely related to having been assaulted by members of the NYPD during peaceful demonstrations by members of the public in New York City since May of 2020".

   b. "an interest that is closely related to having been seized by members of the NYPD during peaceful demonstrations by members of the public in New York City since May of 2020".

c. "an interest that is closely related to having been subjected to a practice that is known as "kettling" by members of the NYPD during peaceful demonstrations by members of the public in New York City since May of 2020".

d. "an interest that is closely related to having attended more than a few peaceful demonstrations by members of the public in New York City since May of 2020 during which members of the NYPD were present".

e. "an interest that is closely related to entirely valid complaints that were reported to the New York City Civilian Complaint Review Board, New York State Attorney General's office, United States Department of Justice, a New York City District Attorney's office, the NYPD's Internal Affairs Bureau, New York City Department of Investigations, New York City Council, and/or New York City Mayor's office about behavior by members of the NYPD during peaceful demonstrations by members of the public in New York City since May of 2020 during which members of the NYPD were present".

f. "an interest that is held by community groups instead of individuals that they do not represent".

g. "an interest that is held by people who have repeatedly and outrageously been victimized by members of the NYPD in public forums and aren't consistently subjected to whistleblower news censorship about that and other matters by people and organizations that include **a)** Erin Durkin, Madina Toure of Politico; **b)** Courtney Gross, Bobby Cuza, Gloria Pazmino, Dean Meminger, Errol Louis, Jillian Jorgensen of Spectrum News; **c)** J. David Goodman, Mara Gay, Jeff C. Mays, Joseph Goldstein, Benjamin Weiser, Ashley Stewart of the New York Times; **d)** Kendall Taggart of

Buzzfeed; **e)** Yoav Gonen Greg Smith, Jere Hester, and Rachel Holliday of The City; **f)** George Joseph of WNYC; **g)** Gothamist; **h)** Michael Gartland, Graham Rayman, Laura Nahmias, Stephen Rex Brown of the New York Daily News; **i)** Julia Marsh, Kaja Whitehouse, Priscilla DeGregory, Gabrielle Fonrouge of the New York Post; **j)** Ben Max and Samar Khurshid of Gotham Gazette; **k)** John Riley and Matthew Chayes of Newsday."

h. "an interest that is held by people who haven't commenced entirely valid litigation against the City of New York and members of the NYPD that pertains to abuse by members of the NYPD in public forums prior to 5/1/20."

i. "an interest that is held by people who haven't had conversations prior to 5/1/20 with senior members of **a)** the New York Civil Liberties Union ("NYCLU") that include Chris Dunn and Arthur Eisenberg, **b)** American Civil Liberties Union that include David Cole, and **c)** the Legal Aid Society about illegal acts by members of the NYPD in public forums prior to 5/1/20 while seeking legal assistance from their organizations to address that to no avail."

j. "an interest that is closely related to the specific property"

k. "an interest that is closely related to the specific transaction"

l. "an interest that is tied to the specific parties that are responsible for having caused the specific transaction to occur"

m. an interest that is tied to the specific agency that is responsible for having caused the specific transaction to occur"

n. "an interest that is tied to the specific property in which the transactions have occurred or are occurring"

My interest in intervening in this case is largely due to my interest in having a federal judge immediately intervene on behalf of New Yorkers by imposing a strict set of rules of engagement upon the NYPD to prevent that mob from continuing to violate the civil rights of New Yorkers in public forums.

What follows is a relevant long excerpt that corresponds to information that appears between pages 10 and 17 within the legal filing (Dkt #: 374) that I submitted on 6/4/20 in the ongoing case of <u>Komatsu v. City of New York</u>, No. 18-cv-3698 (LGS)(GWG)(S.D.N.Y.) that is hereinafter referred to as "K1". I'm the plaintiff in that case and Judge Lorna Schofield and Magistrate Judge Gabriel Gorenstein have repeatedly subjected me to illegal First Amendment retaliation, abuse of process, fraud, negligence, and viewpoint discrimination in it that has cost me dearly. Due to such abuse by them, I unconscionably need to wait until Judge Schofield officially issues a final judgment in that case that finally and belatedly rids me of her and the cancer to the pursuit of justice on the merits that she continues to be by having the U.S. Court of Appeals remedy her incompetence, abuse, and subservience to the NYPD with that of Judge Gorenstein's by reversing key decisions and orders that they issued in that case that contain fraudulent, biased, and prejudicial findings in flagrant violation of my due process rights. The excerpt that follows concerns illegal acts that members of the NYPD committed against me since 5/29/20 during peaceful demonstrations in New York City that Judge Schofield illegally refused to allow me to add to my claims in K1 in response to my 6/4/20 submission in that case and in violation of FRCP Rules 15, 18, and 21.

- **Excerpt from 6/4/20 filing in <u>Komatsu v. City of New York</u>, No. 18-cv-3698 (LGS) (GWG) (S.D.N.Y.)**:

Furthermore, I continue to accumulate additional claims to assert against Defendant City of New York that are members of the NYPD due to illegal acts that they continue to commit against me in public forums. The following screenshot is from a video recording that I recorded with my cell phone yesterday at 4:31 pm while I lawfully conducted myself in accordance with my First Amendment rights and Fourteenth Amendment rights as I walked in a protest that was comprised of many people:



I recorded that video in the intersection of 14th Street and 8th Avenue in Manhattan. The focus of that protest was against abuse by law-enforcement personnel that includes the NYPD. As I was walking in the direction of 9th Avenue on 14th Street in front of the member of the NYPD who is shown in the preceding screenshot, he criminally assaulted

me in flagrant violation of federal criminal law 18 U.S.C. §245(b)(5) as well as my rights pursuant to the Fourth Amendment, Fifth Amendment, and Fourteenth Amendment by suddenly grabbing my left arm that I immediately and angrily objected to. The following pertinent excerpt from Wright v. Musanti, No. 14-cv-8976 (KBF) (S.D.N.Y. Jan. 20, 2017) confirms that member of the NYPD criminally assaulted me because I instantly regarded the contact that he initiated as offensive and I lawfully and instantly exercised my legal self-defense rights by shoving his hand and arm off of my left arm:

> Under New York law, "`[a]n `assault' is an intentional placing of another person in fear of imminent or offensive contact.'" Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001) (quoting United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993)); Farash v. Cont'l Airlines, Inc., 337 F. App'x 7, 9-10 (2d Cir. 2009) (same). "The plaintiff must show that the defendant intended `either to inflict personal injury or to arouse apprehension of harmful or offensive bodily contact.'" Bouveng v. NYG Capital LLC, No. 14-cv-5474 (PGG), 2015 WL 3503947, at *9 (S.D.N.Y. June 2, 2015) (quoting Wahlstrom v. Metro-N. Commuter R. Co., 89 F. Supp. 2d 506, 528 (S.D.N.Y. 2000)).

That member of the NYPD illegally grabbed my left arm yesterday immediately after I lawfully exercised my First Amendment rights by asking him and other members of his NYPD team that were nearby if they wanted to autograph the 9/30/19 decision that you issued in this case that I held in my hands. The fact is sufficient to establish that his illegal act against me was First Amendment retaliation. I was holding that decision throughout my walk in that protest mainly because I presciently anticipated further crimes by members of the NYPD against me as well as others in that protest as we lawfully conducted ourselves in that protest. The member of the NYPD who illegally grabbed my left arm never showed me any information that identified his last name and his NYPD shield number in spite of my First Amendment right and New York City's Right to Know law that absolutely required him to have done so. Although he told me

that his last name is Santori and his NYPD shield number is 31854, I have no reason to believe that he wasn't lying to me to try to illegally get away with having criminally assaulted me. The next screenshot is from that same video and shows NYPD Deputy Inspector McGeown of the NYPD's Strategic Response Group that is notorious for violating civil rights of New Yorkers in public forums during demonstrations. As I talked with Mr. McGeown then, I pointed out that I sought to make a valid complaint against the NYPD member who had just illegally grabbed my left arm. In response, he illegally refused to do anything to facilitate my ability to do so and instead illegally ordered me to keep walking as he lied by fraudulently claiming that I was illegally in the street that was then a traditional public forum that was occupied by protesters that likely exceeded 500 people.



On a related note, the following screenshot is from a video that I recorded on 5/29/20 at 3:36 pm that I legally recorded with my cell phone as I lawfully conducted myself while I walked along Centre Street in Manhattan toward Leonard Street during a protest against law-enforcement personnel as I stood on a sidewalk on the right side of that street.



The preceding screenshot shows a member of the NYPD that I discussed on page 9 in numbered paragraph 2 within the supporting affidavit for the emergency order to show cause application that I filed in this case on 6/2/20. Concerning what I discussed there, the preceding screenshot shows the member of the NYPD who illegally grabbed my right arm as I walked next to him and held a copy of your 9/30/19 decision in this case then. In the video recording to which I just referred, he told me that his name is NYPD Detective Sandoval and that his NYPD badge number is 5841. However, as I stated earlier in this letter motion, I have no reason to believe that he wasn't lying to me as he provided me

that information. He also illegally never showed me his NYPD shield to enable me to verify his identity firsthand.

The following text mirrors extremely relevant remarks that you stated on page 15 of that 9/30/19 order that you current and past abusive practices by the NYPD against me in public forums demands that you immediately and decisively implement to safeguard my constitutional rights in public forums that include streets and sidewalks that you discussed in <u>Gonzalez v. City of New York</u>, No. 14 Civ. 7721 (LGS) (S.D.N.Y. Sept. 29, 2016):

> The Complaint, liberally construed, also requests permanent injunctive relief against the City so that Plaintiff can access public events. *See Hardaway*, 879 F.3d at 489 ("We afford a pro se litigant 'special solicitude' by interpreting a complaint filed pro se to raise the strongest claims that it suggests." (quotation marks omitted)). This request for relief ultimately would be granted only if Plaintiff succeeds on the merits of the constitutional claims after the facts are more fully developed in discovery, and if the four factors required for permanent injunctions are satisfied:
>
>> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.
>
> *U.S.S.E.C. v Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 296 (2d Cir. 2014) (quoting *eBay Inc. v MercExchange, L.L.C.*, 547 US 388, 391 (2006)).
>
> The request for permanent injunction relief is not dismissed because the Complaint alleges sufficient facts that if proven would satisfy the four *eBay* factors. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *New York Progress and Protection PAC v Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); see *Knight First Amendment Inst. at Columbia Univ. v Trump*, 302 F Supp. 3d 541, 577 (S.D.N.Y. 2018), *aff'd*, 928 F.3d 226 (2d Cir. 2019). The balance of hardships tilts in Plaintiff's favor; the opportunity to voice objections to political officials is "a fundamental principle of our constitutional system," *New York Times Co.*, 376 U.S. at 269, whereas Defendants need only provide Plaintiff access as

> long as he complies with reasonable conditions. Monetary damages cannot adequately compensate Plaintiff for these injuries because of this fundamental interest. *Id.* Finally, "securing First Amendment rights is in the public interest." *Walsh*, 733 F.3d at 488; *see also Amarin Pharma, Inc. v. U.S. Food & Drug Admin.*, 119 F. Supp. 3d 196, 237 (S.D.N.Y. 2015). A narrowly tailored injunction that allows Plaintiff access to public events so long as he does not act in a disruptive manner would be in the public interest and respect both Plaintiff's First Amendment rights and the City's right to conduct civic meetings in an orderly fashion.

Additionally, the video recording that the preceding screenshot is from confirms that the member of the NYPD who criminally assaulted me as I legally recorded it was violating NYPL§175.25 by illegally hiding information about his NYPD shield number that was shown on his shirt behind a NYPD body-camera that he was using and was recording during my interaction with him. NYPD shield information certainly is a public record. Yesterday, a news organization named "The Intercept" published a news article on the Internet at the following address that was written by a journalist named Nick Pinto and is entitled "NYPD Officers at George Floyd Protests Are Covering Their Badge Numbers in Violation of Own Policy":

> https://theintercept.com/2020/06/03/nypd-badge-black-band/

That news article reinforces what I just stated about members of the NYPD illegally concealing information about their NYPD badges that are also referred to as shields. That article reported about the prospect of a lawsuit being filed by an organization named the National Lawyers Guild against the City of New York to force the NYPD to stop hiding that information. The next screenshot is another one that is from the video that I discussed above and recorded at 4:31 pm yesterday. It confirms that a member of the NYPD who was similarly dressed as the member of the NYPD who illegally grabbed my left arm had his name and NYPD shield number shown on his shirt in the same area of

the shirt that was worn by the NYPD member who illegally grabbed my left arm as he illegally hid that information with a body-camera that he was using.



As I previously pointed out to you in an earlier legal filing that I submitted in this action, the following findings from *Chowdhury v. Brioni AM., Inc.*, No. 16 Civ. 344 (HBP) (S.D.N.Y. Nov. 1, 2017) confirms that I have a legal right to pursue as many claims as I

> have against the defendants as well as third-parties in this case:
>
>> "Pursuant to Fed.R.Civ.P. 18(a), a party asserting a claim "may join, as independent or alternative claims, as many claims as it has against an opposing party." Thus, plaintiffs could have asserted any claim in this action that they had against defendants, even if unrelated to wage-and-hour issues, so long as the court had subject matter jurisdiction over those claims."

On 5/23/17, I talked with Joo-Hyun Kang of the organization Communities United for Police Reform that has asked to intervene in this case. Neither she nor her organization adequately represent my interests in this case and other matters. When I talked with her on 5/23/17, I did so during a meeting that was conducted near 200 West Street in Manhattan. I talked with her then as we left that meeting. While I attended that meeting, I told those who attended it and included the useless New York City politicians Jumaane Williams and Brad Lander that I had just come from the Bronx Supreme Court in which members of the Mayor's NYPD security detail and New York State court officers illegally prevented me from attending the public resource fair meeting that the Mayor conducted in that courthouse. In the more than 3 years that have passed since then, no one who attended that meeting nor anyone else has tried to have appropriate corrective action taken in response to the illegal acts that were committed against me on that date in the Bronx Supreme Court that constituted voter fraud, voter suppression, whistleblower retaliation in violation of the federal Hatch Act and the Handschu Agreement while the Mayor and other government officials used such public forums as campaign events to attract support to bolster their re-election prospects. At this point, it's appropriate for me to also point out that I had an active lawsuit against the New York City Human Resources Administration on 5/23/17 that I commenced in January of 2017. Although I asserted entirely valid claims in that hybrid lawsuit on 5/19/17 that partly concerned illegal acts and omissions that were committed against me on 4/27/17 at the site of the public town hall meeting that Bill de Blasio conducted in Long Island

City in Queens that partly involved NYPD criminal Rafael Beato shoving me 3 times in my chest on a nearly empty public sidewalk next to the school that hosted that town hall shortly after it ended and while I was conducting myself in an entirely lawful manner in contrast to Mr. Beato and 3 other members of the NYPD's mob that included 2 members of New York City Mayor Bill de Blasio's NYPD security detail who stood nearby and illegally condoned his assault against me, 2 of the judges who were assigned to that state-court lawsuit illegally dismissed it on both 1/31/18 and 4/9/19 while I continued to have that claim pending to be addressed in it before the last judge assigned to that case flagrantly violated my due process rights by depriving me of my right to be heard at a meaningful time and in a meaningful way that was tailored to my circumstances and capacity to be heard on and after 2/26/20 while I was recovering from a severe illness that may have been the coronavirus by preventing me from being able to present oral arguments in that case at a time and in a manner that would comport with my due process rights after I had previously been granted an oral arguments hearing in that case that needed to be adjourned because of my illness. That case is now pending appeal before the New York State Supreme Court's Appellate Division's First Department.

Additionally, though the judge who will be assigned to *Payne v. de Blasio*, No. 20-cv-8924 (S.D.N.Y.) may believe that I have other options to pursue appropriate redress, that clearly does not appear to be the case at all. This is largely because Judge Gorenstein has followed me like the plague and a stalker to further entirely valid litigation that I commenced by being assigned to it against my wishes. I commenced such additional litigation mainly because Judge Schofield illegally refused to allow me to exercise my right to have the claims and defendants that additional litigation concerns to be added in K1 instead in spite of the fact that claims and

defendants share a common nucleus of operative fact that is the legal standard that applies to consolidating related litigation to befit the interests of judicial economy.

Although I could certainly further elaborate about additional grounds for me to be granted intervenor status in <u>Payne v. de Blasio</u>, No. 20-cv-8924 (S.D.N.Y.) as of right, I don't believe that I need to because I have presented sufficient grounds for that. However, in the event that the judge who is assigned to this case disagrees, I'm willing to supplement the grounds that I have already provided in this application by incorporating legal filings in relevant litigation that I have commenced, testimony that I have given to New York City Council committees, written transcripts of 50-h hearings that I have participated in, as well as audio and video recordings of conversations that I have had with Bill de Blasio, James O'Neal, Cyrus Vance, Jr., Letitia James, and other government officials about terrorism by members of the NYPD against me prior to 5/1/20 in public forums that all of them condoned.

In closing, it's probably helpful to point out that though I signed-up to testify in public hearings that Letitia James conducted in June of this year about the NYPD's terrorism since May of this year against New Yorkers during peaceful demonstrations, I was illegally prevented from doing so by the New York State Attorney General's office in flagrant violation of my Fourteenth Amendment and First Amendment rights long after she made it perfectly clear to me that she was condoning NYPD abuse against me through face-to-face conversations that I had with her about that on and after 10/26/17. Ms. James was recorded on video during those public hearings as she instead talked with someone who testified in them about dogs that he was taking care of. That discussion had absolutely nothing to do with the subject matter of those public hearings and was a waste of precious time that should have instead been accorded to me to be able to testify in

them about relevant matters. This fact underscores my point about the fact that Letitia James is utterly useless in combatting civil rights abuse by members of the NYPD in public forums that supports my application to intervene in this case.

Thank you for your time and consideration.

Sincerely,

Towaki Komatsu

s_/Towaki Komatsu

802 Fairmount Pl., Apt. 4B
Bronx, NY  10460

Tel: 347-872-1205
E-mail: Towaki_Komatsu@yahoo.com