# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────x

In Re: New York City Policing                           No. 20 Civ. 8924 (CM) (GWG)
During Summer 2020 Demonstrations
─────────────────────────────────────────x

This filing is related to                                No. 21 Civ. 322 (CM) (GWG)
*People v. City of New York et al.*
─────────────────────────────────────────x

## DECLARATION OF EDWARD D. MULLINS

EDWARD D. MULLINS declares as follows, pursuant to 28 U.S.C.§ 1746:

1. I am currently a full-time sergeant with the New York City Police Department ("NYPD"), and the President of the Sergeants Benevolent Association (the "SBA"). I am making this declaration to provide the Court with information in support of the SBA's motion to intervene in this action. I have personal knowledge of the facts and conflicts between the sergeants and the City that prevent the City from fairly representing the interests of the SBA and its members in this litigation. At the same time the City and NYPD claim they can represent the sergeants' interests, the City and NYPD are pursuing at least 50 disciplinary investigations and proceedings against NYPD sergeants in connection with the 2020 protests.

2. The SBA is an independent municipal police union whose membership consists of approximately 13,000 active and retired sergeants of the NYPD. It is the fifth-largest police union in the country, and the country's largest superior officers' union. The SBA is recognized by the City of New York (the "City") as the sole and exclusive bargaining representative for all NYPD sergeants. In this capacity, the SBA is entitled to negotiate changes to the terms and conditions of employment with the City.

3. The SBA's central mission is to advocate for, and protect the interests of, its NYPD police sergeant members. I have been advised that <u>at least 50 sergeants have been questioned in disciplinary investigations</u> by the City and its agencies in connection with the 2020 protests, and that the questioning has sought information on at least 200 members of service who are being investigated for allegations of misconduct.

4. At the same the City and NYPD are pursuing these disciplinary investigations and proceedings <u>against sergeants</u>, the City and NYPD are claiming they can represent and <u>defend the sergeants' interests</u> in this litigation in which the Attorney General seeks judicial findings and conclusions that sergeants and other police officers acted unlawfully. The conflict with the interests of the sergeants is fundamental.

5. The SBA should be permitted to intervene so that it can defend the sergeants' interests and explain directly to the Court what happened in the 2020 protests, how sergeants acted as they were trained, and what is at stake in any proposed relief or reform in police training, tactics, and equipment. All of the proposed changes in training, tactics, and equipment can directly affect the personal physical safety of sergeants and their ability to effectively protect the public. The City cannot fairly represent the sergeants' interests.

## My background in the NYPD and SBA

6. I was appointed to the NYPD in January 1982. Prior to my election as SBA President on July 1, 2002, I served ten years on patrol in Manhattan, and was promoted to detective in 1992. In 1993, I was promoted to sergeant, and was assigned to the 19th Precinct, as well as the Detective Bureau in Brooklyn South, where I served in the 67th Precinct Detective Squad, the Special Victims Squad, and the Kings County District Attorney's Office. As president of the SBA, I am a Trustee of the New York City Police Pension Fund.

7. I received a Bachelor's degree from Concordia College while working full-time as a sergeant, and a Master's degree in organizational leadership from Mercy College.

## NYPD sergeants and the 2020 Protests

8. NYPD police sergeants are line supervisors responsible for, among other things, supervising patrol officers and other subordinate officers and implementing policies of the NYPD on the street level. A sergeant is required to train, instruct, monitor, and advise subordinates in their duties, and is held directly responsible for the performance of those subordinates. Failure to carry out any of the above responsibilities can result in the imposition of disciplinary sanctions against the sergeant, who is the front-line supervisor responsible for carrying out the mission of the NYPD during street-level encounters.

9. In addition to supervisory responsibilities, a sergeant also routinely performs field police work, which typically consists of relatively complex law enforcement activities with which only sergeants are entrusted. Sergeants are regularly dispatched to more difficult and complex calls. This includes situations where NYPD police monitor and, if necessary, control crowds and demonstrations.

10. In accordance with their training, sergeants use specific tactics to control crowds that present dangerous conditions, involve illegal activity, or both. Sergeants rely on certain equipment in these situations, such as shields, tear gas, helmets, and batons, to keep themselves safe while lawfully protecting the public. They also rely on the use of mounted officers and crowd containment techniques when managing and dispersing large crowds. Sergeants facing violent crowds would be placed in greater personal danger if stripped of these tools in certain circumstances. With fewer options at their disposal, officers may have no choice but to use greater

force methods, such as hand-to-hand contact or the use of batons. Limitations on tactics and equipment inevitably raise safety concerns for officers as well as the public.

11. In my role as President of the SBA, I have been advised that many individual sergeants were directly involved in crowd control duties during the summer 2020 protests referred to in this litigation.

12. Although the Attorney General's complaint in *People v. City of New York* describes the protests against police brutality which took place in New York City beginning in May 2020 as "overwhelmingly peaceful" (Complaint ¶ 1), information provided by dozens of frontline police sergeants who were present during the protests contradict the Attorney General's assertion.

13. During the protests, frontline police were confronted with a chaotic scene of virulent anti-police sentiment marked by direct assaults against members of service: police vehicles were surrounded and lit on fire, officers were repeatedly pelted by projectiles, pepper sprayed, spat upon, and in one well-publicized case, were the targets of Molotov cocktails. The rank-and-file members of the NYPD were ordered to disperse crowds that did not obey their lawful commands or obey curfews imposed by City officials. NYPD sergeants acted as they were trained.

**NYPD investigations and disciplinary proceedings related to the protests**

14. If a sergeant does not carry out his job adequately, he or she can be disciplined by the NYPD. Disciplinary proceedings can result from investigations by the Civilian Complaint Review Board (CCRB), NYPD Internal Affairs Bureau (IAB) and/or Inspections. The City, by the police commissioner, is responsible for making final disciplinary decisions. Findings in this case could affect a defense in disciplinary proceedings and investigations.

15. I have been advised that at least fifty (50) sergeants have already been questioned by the CCRB, IAB and/or Inspections about their actions at many of the 2020 protest locations.

These interviews consistently focused on the alleged unlawful use of force, alleged unlawful arrests, and supervisory functions.

16.     I have also been advised that throughout the course of these interviews, many individual sergeants were asked to identify other members of service (MOS) who were alleged to have committed misconduct.  In total, there are at least 200 MOS who are being investigated for allegations of misconduct by CCRB, IAB and Inspections.

17.     Findings in this case may also affect indemnification of sergeants.  The City can decline to indemnify officers who are defendants in civil litigation, such as private lawsuits under 42 U.S.C. § 1983, regarding the alleged misconduct.  This decision turns on whether the officer was acting within the scope of employment.  When the City declines to indemnify a sergeant in a Section 1983 case, it passes the costs and burdens associated with defending these suits to the SBA.

### Police training

18.     The Attorney General seeks extensive injunctive relief, including judicial "monitoring," that covers details of police tactics, training, and equipment.  This is likely to concern crowd containment techniques, pepper spray, baton use, and other measures.  Every aspect of tactics, training, and equipment is of direct concern to sergeants because they are crucial not only to crowd control and protection of the public, but also crucial to the personal physical safety of officers in crowd control and demonstration situations.

19.     Proper training for policing is central to the factual issues and requested relief in this litigation, which directly and immediately affect the interests of the SBA and its members.  Sergeants are responsible for directing patrol officers in unpredictable, dynamic, and dangerous situations.  The need for proper police training to protect the safety of sergeants, the officers they

supervise, and the communities and public they serve, is one of the most important reasons why the SBA seeks to intervene.  The SBA should be allowed to intervene so that it can to explain directly to the Court what training sergeants received, how it affected events in the protests, and what is at stake in any proposed relief or change in training.  The sergeants' interests in training, and their experience and knowledge concerning it, are immediate, direct, extensive, and compelling.

### The practical impact on collective bargaining rights

20. The SBA also has an interest in ensuring the collective bargaining rights of its members are not compromised by any relief or reforms ordered in this action.  The requested injunctive relief is likely to have a practical impact on the terms and conditions of sergeants' employment by affecting their workload, training, and safety.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 3, 2021.

*Ed Mullins*
_____
Edward D. Mullins