EXHIBIT 2

# Detectives' Endowment Association
## 2012-2019 Agreement

### TABLE OF CONTENTS

ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION ...................................... 1
ARTICLE II - UNION SECURITY DUES CHECKOFF ................................................... 2
ARTICLE III - HOURS AND OVERTIME ................................................................. 2
ARTICLE IV - RECALL AFTER TOUR .................................................................... 3
ARTICLE V - COMPUTATION OF BENEFITS ........................................................... 4
ARTICLE VI - SALARIES .................................................................................... 4
ARTICLE VII - UNIFORM ALLOWANCE ................................................................. 8
ARTICLE VIII - LONGEVITY ADJUSTMENTS .......................................................... 8
ARTICLE IX - BODY-WORN CAMERAS………………………………………………………11
ARTICLE X - PAYMENT FOR HOLIDAY WORK ..................................................... 11
ARTICLE XI - LEAVES ..................................................................................... 11
ARTICLE XII - VACATIONS ............................................................................... 12
ARTICLE XIII- HEALTH AND HOSPITALIZATION BENEFITS .................................... 177
ARTICLE XIV - HEALTH AND WELFARE FUND ..................................................... 19
ARTICLE XV - ANNUITY FUND .......................................................................... 21
ARTICLE XVI - GENERAL ................................................................................. 21
ARTICLE XVII - UNION ACTIVITY ...................................................................... 26
ARTICLE XVIII - NO DISCRIMINATION ............................................................... 26
ARTICLE XIX - NIGHT SHIFT DIFFERENTIAL ....................................................... 26
ARTICLE XX - OVERTIME TRAVEL GUARANTEE ................................................... 27
ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE ................................. 28
ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT .................................................. 32
ARTICLE XXIII - DEATH BENEFIT - UNUSED  LEAVE AND COMPENSATORY TIME 32
ARTICLE XXIV - OPTIONAL WORK DURING VACATIONS ........................................ 32
ARTICLE XXV - NO STRIKES ............................................................................. 33
ARTICLE XXVI - BULLETIN BOARDS .................................................................. 33
ARTICLE XXVII - LABOR-MANAGEMENT COMMITTEE ........................................... 33
ARTICLE XXVIII - NO WAIVER ........................................................................... 34
ARTICLE XXIX - SAVINGS CLAUSE .................................................................... 34
ARTICLE XXX - FINANCIAL EMERGENCY ACT ..................................................... 34
ARTICLE XXXI - TERM ..................................................................................... 35

# Detectives' Endowment Association
## 2012-2019 Agreement

*AGREEMENT* made this      day of          2021 by and between the **City of New York** (hereinafter called "the **City**" or "the **Employer**"), acting by the Commissioner of Labor Relations, and the **Detectives' Endowment Association of the City of New York, Inc.** (hereinafter called "the **Union**" or the "**DEA**"), for the seven year period of **April 1, 2012 to March 31, 2019**.

## W̲I̲T̲N̲E̲S̲S̲E̲T̲H̲:

**WHEREAS,** the Detectives employed by the City have duly designated the Union as their exclusive bargaining representative for the purpose of collective bargaining with the City with respect to wages, hours and conditions of employment; and

**WHEREAS,** the Union and the City desire to cooperate in establishing conditions which will tend to secure standards and conditions of employment consistent with the dignity of Detectives, and to provide methods for fair and peaceful adjustment of disputes that may arise between the Union and the City; and

**WHEREAS,** as a result of collective bargaining the parties have reached an Agreement which they desire to reduce to writing;

*NOW, THEREFORE,* it is mutually agreed as follows:

### ARTICLE I - UNION RECOGNITION AND UNIT DESIGNATION

#### Section 1.

The City recognizes the Union as the sole and exclusive collective bargaining representative for the unit consisting of the employees of the New York City Police Department in the titles of Police Officers who are designated as First Grade Detectives, Second Grade Detectives, and Third Grade Detectives.

#### Section 2.

Except as otherwise provided herein, for purposes of this Agreement, the terms "employee" or "employees" and "Detective" or "Detectives" shall be interchangeable and shall relate solely to employees in the unit described in Section 1 of this Article.

## ARTICLE II - UNION SECURITY DUES CHECKOFF

Section 1.

All employees covered by this Agreement shall be free to become and remain members of the Union in good standing.

Section 2.

The Union shall have the exclusive right to the check-off and transmittal of dues in behalf of each employee in the unit in accord with the Mayor's Executive Order No. 98, dated May 15, 1969, entitled "Regulations Regulating the Checkoff of Union Dues" and in accord with the Mayor's Executive Order No. 107, dated December 29, 1986, entitled "Regulations Governing Procedures for Orderly Payroll Checkoff of Union Dues" and any executive orders which amend or supersede said Executive Orders.

Section 3.

An employee may consent in writing to the authorization of the deduction of dues from the employee's wages and to the designation of the Union as the recipient thereof.  Such consent, if given, shall be in a proper form, in accord with Section 2 of this Article II, which bears the signature of the employee.

Section 4.

The parties agree to an agency shop to the extent permitted by applicable law, as described in a supplemental agreement hereby incorporated by reference into this Agreement.

## ARTICLE III - HOURS AND OVERTIME

Section 1(a)

All ordered and/or authorized overtime in excess of 40 hours in any week or in excess of the hours required of an employee by reason of the employee's regular duty chart if a week's measurement is not appropriate, whether of an emergency nature or of a non-emergency nature, shall be compensated for either by cash payment or compensatory time off, at the rate of time and one-half, at the sole option of the employee.  Such cash payments or compensatory time off shall be computed on the basis of completed fifteen (15) minute segments.

Section 1(b)

In order to preserve the intent and spirit of this section on overtime compensation, there shall be no rescheduling of days off, except that for the purpose of night watch coverage an employee's swing period shall not be diminished by more than 8 hours.  This restriction shall apply both to the retrospective crediting of time off against hours already worked and to the anticipatory

reassignment of personnel to different days off.  Prior to the completion of the steps in the grievance procedure under Article XXI of this Agreement, the President of the D.E.A. may informally discuss a question in regard to the application of this Section 1(b) with the Police Commissioner and the Chairman of the Personnel Grievance Board in an effort to resolve the matter.

Section 1(c)

An employee who is specially assigned to duty involving travel outside New York City shall receive credit for eight (8) hours' work for each day of that assignment at the employee's straight time rate of pay.  On days which are not the employee's regularly scheduled days, such credit shall be at the rate of time and one-half.  When such employee performs duty in excess of 8 hours and such duty can be verified to the satisfaction of the employee's Commanding Officer, the Commanding Officer shall recommend to the Chief of Department that the employee be credited with appropriate overtime compensation.

Section 2.

Overtime shall be computed on a monthly basis and shall be paid no later than six (6) weeks after submission of the monthly report.

ARTICLE IV - RECALL AFTER TOUR

Section 1.

Any employee who is recalled to duty after having completed the employee's regular tour of duty but four (4) hours or more before the commencement of the employee's next regular tour and who is released without having been assigned to duty prior to the commencement of said next regular tour shall receive a minimum of four hours pay pursuant to the regular overtime provisions of this Agreement.

Section 2.

Any employee who is recalled to duty after having completed the employee's regular tour of duty but six (6) hours or more before the commencement of the employee's next regular tour and who is assigned to duty and then released from duty prior to commencement of said next regular tour shall receive a minimum of six hours pay pursuant to the regular overtime provisions of this Agreement.

Section 3.
In the event the actual time spent on recall defined in Sections 1 and 2 of this Article extends beyond the minimum periods provided therein, the employee shall receive pay pursuant to the regular overtime provisions of this Agreement for the full period of time actually spent on such recall.

Section 4.

Notwithstanding anything to the contrary provided in Sections 1 through 3 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but before the commencement of the employee's next regular tour and who is assigned to duty or held without assignment for a period which extends into the commencement of that next regular tour shall receive pay pursuant to the regular overtime provisions of this Agreement only for the actual time so assigned or held.

Section 5.

a.     Notwithstanding anything to the contrary in Sections 1 through 4 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but less than four hours before the commencement of the employee's next regular tour and who is released without having been assigned to duty prior to the commencement of that next regular tour shall receive pay in cash or compensatory time off at the employee's sole option, at the rate of time and one-half, for the actual time between the beginning of such recall and the commencement of that next regular tour.

b.     Notwithstanding anything to the contrary in Sections 1 through 4 of this Article, any employee who is recalled to duty after having completed the employee's regular tour of duty but less than six hours before the commencement of the employee's next regular tour and who is assigned to duty and then released from duty prior to the commencement of that next regular tour shall receive pay in cash or compensatory time off at the employee's sole option, at the rate of time and one-half, for the actual time between the beginning of such recall and the commencement of that next regular tour.

Section 6.

The provisions of this Article IV are expressly subject to and limited by the terms of Section 1(a) and 1(b) of Article III of this Agreement.

## ARTICLE V - COMPUTATION OF BENEFITS

Since the basic forty-hour week has not been changed by this Agreement, any modifications of a standard chart and use of other tours shall not affect current standard practice for the computation of compensation for holidays, vacation days, personal leave days, annuity fund contributions and other relevant benefits, which shall remain on the basis of an eight-hour work day calculation.

## ARTICLE VI - SALARIES

Section 1.

The following base annual rates shall prevail for employees during the term of this Agreement:

| Class of Positions and Step | Effective Date | | | | | | |
|---|---|---|---|---|---|---|---|
| 1st Grade Detective | 4/1/2012 | 10/1/2013 | 12/1/2014 | 12/1/2015 | 1/1/2017 | 1/1/2018 | 12/17/2018 |
| | $113,700 | $114,837 | $115,985 | $117,145 | $118,902 | $121,875 | $125,531 |
| 2nd Grade Detective | | | | | | | |
| | 4/1/2012 | 10/1/2013 | 12/1/2014 | 12/1/2015 | 1/1/2017 | 1/1/2018 | 12/17/2018 |
| | $99,053 | $100,044 | $101,044 | $102,054 | $103,585 | $106,175 | $109,360 |

### 3rd Grade Detective    Appointed on or before March 30, 2006

| | 4/1/2012 | 10/1/2013 | 12/1/2014 | 12/1/2015 | 1/1/2017 |
|---|---|---|---|---|---|
| 1st Step | $82,823 | $83,651 | $84,488 | $85,333 | $86,613 |
| 2nd Step | $83,020 | $83,850 | $84,689 | $85,536 | $86,819 |
| 3rd Step | $83,219 | $84,051 | $84,892 | $85,741 | $87,027 |
| 4th Step | $83,417 | $84,251 | $85,094 | $85,945 | $87,234 |
| 5th Step | $88,151 | $89,033 | $89,923 | $90,822 | $92,184 |

### 3rd Grade Detective    Appointed on or after October 31, 2008

| | 4/1/2012 | 10/1/2013 | 12/1/2014 | 12/1/2015 | 1/1/2017 |
|---|---|---|---|---|---|
| 1st Step | $78,371 | $79,155 | $79,947 | $80,746 | $81,957 |
| 2nd Step | $78,598 | $79,384 | $80,178 | $80,980 | $82,195 |
| 3rd Step | $78,825 | $79,613 | $80,409 | $81,213 | $82,431 |
| 4th Step | $79,084 | $79,875 | $80,674 | $81,481 | $82,703 |
| 5th Step | $79,344 | $80,137 | $80,938 | $81,747 | $82,973 |
| 6th Step | $79,603 | $80,399 | $81,203 | $82,015 | $83,245 |
| 7th Step | $84,640 | $85,486 | $86,341 | $87,204 | $88,512 |
| 8th Step | $85,209 | $86,061 | $86,922 | $87,791 | $89,108 |
| 9th Step | $88,151 | $89,033 | $89,923 | $90,822 | $92,184 |

*3rd Grade Detectives appointed on/after 3/31/06 and before 10/31/08 were placed on the 7th step of the salary schedule for 3rd Grade Detectives appointed on/after 10/31/08 effective 10/31/08. When placed on the 7th step, 10/31 becomes their new anniversary date for advancement to the next step.

### 3rd Grade Detective
### Detective Specialist

| | 8/22/2017 | 1/1/2018 | 12/17/2018 |
|---|---|---|---|
| 1st  Step* | $60,000 | $61,500 | $63,345 |
| 2nd Step* | $65,000 | $66,625 | $68,624 |
| 3rd Step* | $70,000 | $71,750 | $73,903 |
| 4th Step*,** | $91,217 | $93,497 | $96,302 |

| | | | |
|---|---|---|---|
| 5th Step | $91,406 | $93,691 | $96,502 |
| 6th Step | $91,596 | $93,886 | $96,703 |
| 7th Step***, **** | $91,785 | $94,080 | $96,902 |
| 8th Step*** | $91,974 | $94,273 | $97,101 |
| 9th Step*** | $92,184 | $94,489 | $97,324 |

*Effective 1/1/18, Police Officers that have less than 5.5 years of service promoted to Detective Investigator Third Grade or Detective Specialist Third Grade shall be placed on the salary schedule as follows:
A Police Officer on the "after 1.5 years" and "after 2.5 years" steps shall be placed on Step 1.
A Police Officer on the "after 3.5 years" step shall be placed on Step 2.
A Police Officer on the "after 4.5 years" step shall be placed on Step 3.
A Police Officer on the "after 5.5 years" step shall be placed on Step 4.

Those placed on Steps 1 to 3 shall advance to Step 4 once they have 5.5 years of uniformed police service.  Advancement to Step 4 changes the employee's anniversary date for step advancement to the date of advancement to Step 4.

** Effective 1/1/18, Police Officers promoted to Detective Investigator 3rd Grade or Detective Specialist 3rd Grade that have 5.5 or more years of service start on Step 4 on the salary schedule.

***Effective 8/22/17, incumbent Detective Investigators 3rd Grade and incumbent Detective Specialist 3rd Grade shall be placed on Step 7 on the salary schedule, except those on Step 8 or Step 9. Those on Step 8 shall be placed on Step 8 on the salary schedule. Those on Step 9 shall be placed on Step 9 of the salary schedule.

****Effective 8/22/17 and through 12/31/17, Police Officers promoted to Detective Investigator 3rd Grade or Detective Specialist 3rd Grade shall be placed on Step 7 of the new salary schedule.

<u>Section 2.</u>     <u>General Wage Increase.</u>

a.     (i)     Effective April 1, 2012, incumbent Employees shall receive a general rate increase of 1%.

       (ii)    Effective October 1, 2013, incumbent Employees shall receive a general rate increase of 1%.

       (iii)   Effective December 1, 2014, incumbent Employees shall receive a general rate increase of 1%.

       (iv)    Effective December 1, 2015, incumbent Employees shall receive a general wage increase of 1%.

       (v)     Effective January 1, 2017, incumbent Employees shall receive a general wage

increase of 1.5%.

(vi)    Effective January 1, 2018, incumbent Employees shall receive a general wage increase of 2.5%.

(vii)    Effective December 17, 2018, incumbent Employees shall receive a general wage increase of 3%.

b.    The increases provided for in this Section 2 shall be calculated as follows:

(i)    The increase in Section 2(a)(i) shall be based upon the base rates (which shall include salary or incremental schedules) of the applicable titles in effect on March 31, 2012 and

(ii)    The rate increase in Section 2(a)(ii) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on September 30, 2013.

(iii)    The rate increase in Section 2(a)(iii) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on November 30, 2014.

(iv)    The rate increase in Section 2(a)(iv) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on November 30, 2015.

(v)    The rate increase in Section 2(a)(v) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect December 31, 2016.

(vi)    The rate increase in Section 2(a)(vi) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on December 31, 2017.

(vii)    The rate increase in Section 2(a)(vii) shall be based upon the base rate (which shall include salary or incremental schedules) of the applicable titles in effect on December 16, 2018.

c.    The general increase provided in this Section 2 shall be applied to the base rates and salary grades fixed for the applicable titles.

d.    Employees in the class of 3rd Grade Detective shall be subject to the salary schedule set forth in Section 1 above.

e.    The general increases provided for in Section 2 shall be payable a soon as practicable after

the effective date of such increases.

Section 3.

Paychecks will be delivered to commands by 3:00 p.m. on the Thursday preceding payday for distribution after 3:00 p.m. on said Thursday.

Section 4.

The Department shall make available in convenient places in each precinct or command the appropriate payroll work sheets for the purpose of enabling each employee to verify the salary components of the employee's paycheck.   The parties will review further the feasibility of otherwise advising each employee of all payroll components along with the employee's paycheck.

## ARTICLE VII - UNIFORM ALLOWANCE

In Fiscal Years 2012-2019, the City shall pay all employees with less than 15 years of uniformed police service a uniform allowance of $1120 per annum in accord with the existing standard procedures.

Effective August 22, 2017, the City shall pay all employees with 15 or more years of uniformed police service a uniform allowance of $1,500 per annum in accord with the existing standard procedures.

## ARTICLE VIII - LONGEVITY ADJUSTMENTS

Section 1.

a.      Effective April 1, 2012, the following longevity adjustments shall be paid:

   (i)      Upon the completion of five years of service, employees shall receive a longevity adjustment of $3,245.

   (ii)     Upon the completion of ten years of service, employees shall receive a longevity adjustment of $4,745.

   (iii)    Upon the completion of fifteen years of service, employees shall receive a longevity adjustment of $7,742.

   (iv)     Upon the completion of twenty years of service, employees shall receive a longevity adjustment of $8,833.

b.      Effective October 1, 2013, the following longevity adjustments shall be paid:

   (i)      Upon the completion of five years of service, employees shall receive a longevity

adjustment of $3,245.

(ii)    Upon the completion of ten years of service, employees shall receive a longevity adjustment $4,745.

(iii)    Upon completion of fifteen years of service, employees shall receive a longevity adjustment of $7,819.

(iv)    Upon completion of twenty years of service, employees shall receive a longevity adjustment of $8,921.

c.    Effective December 1, 2014, the following longevity adjustments shall be paid:

(i)    Upon the completion of five years of service, employees shall receive a longevity adjustment of $3,245.

(ii)    Upon the completion of ten years of service, employees shall receive a longevity adjustment $4,745.

(iii)    Upon completion of fifteen years of service, employees shall receive a longevity adjustment of $7,897.

(iv)    Upon completion of twenty years of service, employees shall receive a longevity adjustment of $9,010.

d.    Effective December 1, 2015, the following longevity adjustments shall be paid:

(i)    Upon the completion of five years of service, employees shall receive a longevity adjustment of $3,245.

(ii)    Upon the completion of ten years of service, employees shall receive a longevity adjustment $4,745.

(iii)    Upon completion of fifteen years of service, employees shall receive a longevity adjustment of $7,976.

(iv)    Upon completion of twenty years of service, employees shall receive a longevity adjustment of $9,100.

e.    Effective January 1, 2017, the following longevity adjustments shall be paid:

(i)    Upon the completion of five years of service, employees shall receive a longevity adjustment of $3,245.

(ii)    Upon the completion of ten years of service, employees shall receive a longevity

adjustment $4,745.

    (iii)    Upon completion of fifteen years of service, employees shall receive a longevity adjustment of $8,096.

    (iv)    Upon completion of twenty years of service, employees shall receive a longevity adjustment of $9,237.

f.    Effective January 1, 2018, the following longevity adjustments shall be paid:

    (i)    Upon the completion of five years of service, employees shall receive a longevity adjustment of $3,326.

    (ii)    Upon the completion of ten years of service, employees shall receive a longevity adjustment $4,864.

    (iii)    Upon completion of fifteen years of service, employees shall receive a longevity adjustment of $8,298.

    (iv)    Upon completion of twenty years of service, employees shall receive a longevity adjustment of $9,468.

g.    Effective December 17, 2018, the following longevity adjustments shall be paid:

    (i)    Upon the completion of five years of service, employees shall receive a longevity adjustment of $3,426.

    (ii)    Upon the completion of ten years of service, employees shall receive a longevity adjustment $4,968.

    (iii)    Upon completion of fifteen years of service, employees shall receive a longevity adjustment of $8,547.

    (iv)    Upon completion of twenty years of service, employees shall receive a longevity adjustment of $9,752.

h.    The adjustment after the 5th and 10th years shall not be computed as salary for pension purposes until after completing 20 years of service.

The adjustment after the 15th and 20th years shall not be computed as salary for pension purposes until after completion of 25 years of service.

In the event this provision is declared invalid under the law, the parties shall reopen negotiations to resolve the issue of the increased cost of changing the effective date of the pensionability of the above adjustments. Such negotiations will be commenced forthwith.

If no agreement is reached, an impasse may be declared and subsequent mediation and the impasse proceeding, if any, shall in all respects be conducted on an expedited basis.

i.     The calculation of night shift differential payments shall be based upon the same factors, amounts and methodology as previous utilized.

j.     The adjustments for the 5th, 15th, and 20th years shall be increased by any future general wage increases, as compounded, as of the effective date of said increases, as reflected in the above schedules.

k.     ITHP and pension benefit calculations shall only include the amount of the longevity payment that is pensionable.

## ARTICLE IX – BODY-WORN CAMERAS

The parties recognize that all Detective Specialists (excluding the Emergency Services Unit) may be required to wear body-worn cameras as a term and condition of employment. If any Detectives other than Detective Specialists (excluding the Emergency Services Unit) are required to wear body-worn cameras, the impact of such requirement shall be subject to further negotiations.

## ARTICLE X - PAYMENT FOR HOLIDAY WORK

Each employee shall receive eleven (11) paid holidays annually, payments for which shall be made in accord with existing procedures.

## ARTICLE XI - LEAVES

<u>Section 1.</u>    <u>Sick Leave</u>

a.    (i)    Each employee shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect which is service-connected pursuant to Section 14-122.1 of the Administrative Code.

          (ii)    Each employee shall be entitled to leave with pay for the full period of any incapacity due to illness, injury or mental or physical defect, whether or not service-connected.

b.    The Chief Surgeon shall consult with representatives of the DEA regarding the enforcement of the sick leave program in order to insure that undue restrictions will not be placed upon Detectives.  Departmental orders in connection therewith shall be issued after consultation with the DEA.

Section 2.      Death-in-Family-Leave

In the event of a death in an employee's immediate family and upon application to and approval of the employee's commanding officer or supervisory head, an employee shall receive leave with pay not exceeding four consecutive regular tours of duty.  For the purposes of this section, the phrase, "immediate family," shall include any of the following: (a) a spouse or domestic partner, (b) a natural, foster or step-parent, child, brother or sister, (c) father-in-law or mother-in-law, or (d) any relative residing in the employee's household.  The commanding officer or supervisory head granting such leave shall verify the death and relationship of the deceased.  If the deceased was in the military service of the United States at the time of death, the employee requesting leave shall produce the official notice of death.

Section 3.      Military Leave

Military leave not exceeding a total of thirty (30) days in any one calendar year and not exceeding thirty (30) days in any one continuous period of such absence shall be granted with pay to any employee requiring such leave to satisfy military obligations.

Section 4.      Special Excusals

Excused time accorded to other personnel employed by the City under circumstances such as excusals for the Dr. Martin Luther King, Jr. and the Senator Robert F. Kennedy funerals and the Moon Landing Observation Day shall be granted equally to employees covered by this Agreement. All compensating days off shall be subject to the exigencies of the Department.

Section 5.      Leave to Attend Hearings

Individual employee grievants shall be granted leave with pay for such time as is necessary to testify at arbitration hearings.

Leave with pay shall be granted to three (3) employees who are named grievants in a group arbitration proceeding, for such time as is necessary for them to testify at their group arbitration hearings.

Leave with pay for such time as is necessary to testify at their hearings shall be granted to employees who, after final adjudication of proceedings under Section 210 paragraph 2 h of the Civil Service Law are determined not to have been in violation of Section 210.

ARTICLE XII - VACATIONS

Section 1.

The Department shall continue to provide the following authorized annual vacations:

(a)      Following the first five (5) years after appointment as a Police Officer: twenty-seven (27)

2012-2019 DEA                                    12

work days.

(b)     During the first five (5) years after appointment as a Police Officer: twenty (20) work days.

(c)     During the calendar year in which the fifth anniversary of appointment as a Police Officer occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| From | To | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | April 15 | 26 work days |
| April 16 | June 15 | 25 work days |
| June 16 | July 15 | 24 work days |
| July 16 | Sept. 15 | 23 work days |
| Sept. 16 | Nov. 15 | 22 work days |
| Nov. 16 | Dec. 15 | 21 work days |
| Dec. 16 | Dec. 31 | 20 work days |

Section 2.

The Department shall provide the following authorized annual vacations for employees in their first year in rank as a Detective who are promoted to Detective on or after January 1, 2018:

(a)     Following the first five (5) years after appointment as a Police Officer:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| From | To | |
| Jan. 1 | Mar. 15 | 24 work days |
| Mar. 16 | Sept. 15 | 25 work days |
| Sept. 16 | Dec. 31 | 26 work days |

(b)     During the first five (5) years after appointment as a Police Officer:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| From | To | |
| Jan. 1 | Mar. 15 | 17 work days |

| | | |
|---|---|---|
| Mar. 16 | Sept. 15 | 18 work days |
| Sept. 16 | Dec. 31 | 19 work days |

(c)     During the calendar year in which the fifth anniversary of appointment as a Police Officer occurs:

IF APPOINTMENT             VACATION ALLOWANCE
 DATE IS:                         SHALL BE:

| From | To | |
|---|---|---|
| Jan. 1 | Feb. 14 | 24 work days |
| Feb. 15 | Mar. 15 | 23 work days |
| Mar. 16 | June 15 | 22 work days |
| June 16 | July 15 | 22 work days |
| July 16 | Sept. 15 | 21 work days |
| Sept. 16 | Nov. 15 | 21 work days |
| Nov. 16 | Dec. 15 | 20 work days |
| Dec. 16 | Dec. 31 | 19 work days |

Section 3.

The Department shall provide the following authorized annual vacations for employees in their second year in rank as a Detective who are promoted to Detective on or after January 1, 2018:

(a)     Following the first five (5) years after appointment as a Police Officer: twenty-four (24) work days.

(b)     During the first five (5) years after appointment as a Police Officer: seventeen (17) work days.

(c)     During the calendar year in which the fifth anniversary of appointment as a Police Officer occurs:

IF APPOINTMENT             VACATION ALLOWANCE
 DATE IS:                         SHALL BE:

| From | To | |
|---|---|---|
| Jan. 1 | Feb. 14 | 24 work days |
| Feb. 15 | Mar. 15 | 23 work days |
| Mar. 16 | June 15 | 22 work days |
| June 16 | July 15 | 21 work days |
| July 16 | Sept. 15 | 20 work days |
| Sept. 16 | Nov. 15 | 19 work days |

| | | |
|---|---|---|
| Nov. 16 | Dec. 15 | 18 work days |
| Dec. 16 | Dec. 31 | 17 work days |

<u>Section 4.</u>

The Department shall provide the following authorized annual vacations for employees in their third year in rank as a Detective who are promoted to Detective on or after January 1, 2018:

(a)     Following the first five (5) years after appointment as a Police Officer:

| | | |
|---|---|---|
| Jan. 1 | Mar. 15 | 27 work days |
| Mar. 16 | Sept. 15 | 26 work days |
| Sept. 16 | Dec. 31 | 25 work days |

(b)     During the first five (5) years after appointment as a Police Officer:

| | | |
|---|---|---|
| Jan. 1 | Mar. 15 | 20 work days |
| Mar. 16 | Sept. 15 | 19 work days |
| Sept. 16 | Dec. 31 | 18 work days |

(c)     During the calendar year in which the fifth anniversary of appointment as a Police Officer occurs:

| IF APPOINTMENT <br> DATE IS: | | VACATION ALLOWANCE <br> SHALL BE: |
|---|---|---|
| <u>From</u> | <u>To</u> | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | Mar. 15 | 26 work days |
| Mar. 16 | June 15 | 25 work days |
| June 16 | July 15 | 23 work days |
| July 16 | Sept. 15 | 22 work days |
| Sept. 16 | Nov. 15 | 20 work days |
| Nov. 16 | Dec. 15 | 19 work days |
| Dec. 16 | Dec. 31 | 18 work days |

<u>Section 5.</u>

The Department shall provide the following authorized annual vacations for employees following their third year in rank as a Detective who are promoted to Detective on or after January 1, 2018:

(a)     Following the first five (5) years after appointment as a Police Officer: twenty-seven (27) work days.

2012-2019 DEA                                        15

(b)    During the first five (5) years after appointment as a Police Officer: twenty (20) work days.

(c)    During the calendar year in which the fifth anniversary of appointment as a Police Officer occurs:

| IF APPOINTMENT DATE IS: | | VACATION ALLOWANCE SHALL BE: |
|---|---|---|
| From | To | |
| Jan. 1 | Feb. 14 | 27 work days |
| Feb. 15 | Mar. 15 | 26 work days |
| Mar. 16 | June 15 | 25 work days |
| June 16 | July 15 | 24 work days |
| July 16 | Sept. 15 | 23 work days |
| Sept. 16 | Nov. 15 | 22 work days |
| Nov. 16 | Dec. 15 | 21 work days |
| Dec. 16 | Dec. 31 | 20 work days |

Section 6.

Employees may select individual vacation days at the time vacations are picked, provided that the maximum number of employees allowed to take such individual vacation days at any one time shall be in accordance with the needs of the Unit and provided further that no employee may choose more than one of the following holidays as an individual vacation day:  Independence Day, Labor Day, Thanksgiving Day, Christmas Day and New Year's Day.  Any employee who fails to select such individual vacation days at the time the employee makes the regular vacation pick may select such individual vacation days at a later time subject to the exigencies of the Department.  Such individual vacation days shall be treated as regular vacation picks.

Section 7.    Accrual of Vacation

If the Department calls upon an employee in writing to forego the employee's vacation or any part thereof that portion up to a maximum of three weeks of vacation shall be carried over until such time as it can be liquidated in the following calendar year subject to the following conditions:

(1)    the selection of such vacation days shall be in the discretion of and subject to the exigencies of the Department; and

(2)    the selection of such days in the following calendar year shall be made after the regular vacation picks; and

(3)    the utilization of this vacation time shall be restricted to the months of January

through May and September through November.

It is the intention of the Police Department to allow an employee to request permission to accrue vacation consistent with this provision and to grant such requests which are reasonable.

ARTICLE XIII- HEALTH AND HOSPITALIZATION BENEFITS

Section 1.

The City shall continue to provide a fully paid choice of health and hospitalization insurance plans for each employee, not to exceed 100% of the full cost of HIP-HMO on a category basis. There will be an annual reopening period during the term of this Agreement for active employees to exercise their choice among medical plans.

Section 2.

Retirees shall continue to have the option of changing their previous choice of Health Plans.  This option shall be:

(a) a one time choice;

(b) exercised only after one year of retirement; and

(c) can be exercised at any time without regard to contract periods.

The effective date of change to a new plan shall be the first day of the month three months after the month in which the application has been received by the New York City Health Insurance Program.

Effective with the reopener period for Health Insurance subsequent to January 1, 1980 and every two years thereafter, retirees shall have the option of changing their previous choice of health plans.  This option shall be exercised in accordance with procedures established by the Employer. The Union will assume the responsibility of informing retirees of this option.

There shall be a sub-committee with representatives of both the City and the Uniformed Superior Officers Coalition ("USOC") to meet and discuss issues of health coverage for employees who retire prior to the age of 55 and have health benefits coverage from another employer. The parties shall share in the savings generated. The parties may agree to expand their discussion of issues regarding retiree health subject to mutual agreement.

Section 3.

a.      Effective July 1, 1983 and thereafter, the City's cost for each employee and each retiree under age 65 coverage shall be equalized at the Community-rated basic HIP/HMO plan payment rate as approved by the State Department of Insurance on a category basis of

individual or family, e.g. the Blue Cross/GHI-CBP payment for family coverage shall be equal to the HIP/HMO payment for family coverage.

b.    If a replacement plan is offered to employees and retirees under age 65 which exceeds the cost of the HIP/HMO equalization provided in Section 3a, the City shall not bear the additional costs.

c.    The City (and other related Employers) shall continue to contribute on a City employee benefits program-wide basis the additional amount of $30 million to maintain the health insurance stabilization reserve fund which shall be used to continue equalization and protect the integrity of health insurance benefits.

The health insurance stabilization reserve fund shall be used: to provide a sufficient reserve; to maintain to the extent possible the current level of health insurance benefits provided under the Blue Cross/GHI-CBP plan; and, if sufficient funds are available, to fund new benefits.

The health insurance stabilization reserve fund shall be credited with the divisions or reduced by the losses attributable to the Blue Cross/GHI-CBP plan.

d.    Pursuant to paragraph 7 of the MLC Health Benefits Agreement, notwithstanding the above, in each of the fiscal years 2001 and 2002, the City shall not make the annual $35 million contributions to the health insurance stabilization fund.

e.    In the event that there is a Citywide or program-wide health insurance package which exceeds the cost of the equalization and stabilization fund described above, the parties may negotiate reconfiguration of this package which in no event will provide for costs in excess of the total costs of this Agreement as set forth herein.  However, it is understood that the DEA will not be treated any better or any worse than any other Union participating in the Citywide or Program-wide Health Program with regard to increased health insurance costs.

Section 4.

Where an employee is suspended without pay prior to disciplinary trial for disciplinary reasons for more than 30 days, the employee shall receive full health and hospitalization benefit coverage during the period of the suspension following the first 30 days.   Where an employee is subsequently restored to full pay status, as of the date of suspension, the employee shall be restored to full health and hospitalization coverage for the first 30 days of the suspension.

Section 5.  Health Care Flexible Spending Account.

a.    A flexible health care spending account shall be established after July 1993 pursuant to Section 125 of the IRS Code.  Those employees eligible for New York City health plan coverage as defined on page 32, section 4(B) of the 1992 New York City Health Summary Program Description shall be eligible to participate in the account.    Participating

employees shall contribute at least $260 per year up to a maximum of $5,000 per year. Said contribution minimum and maximum levels may be modified by the MLC Health Advisory Committee based on experience of the plan.  Any unfunded balance may be deducted from final salary payments due an employee.

b.  Expenses of the account shall include but not be limited to deductibles, co-insurance, co-payments, excess expenses beyond plan limits, physical exams and health related transportation costs for vision, dental, medical and prescription drug plans where the employee and dependents are covered.  In no case will any of the above expenses include those non-deductible expenses defined as non-deductible in IRS Publication 502.

c.  An administrative fee of $1.00 per week for the first year shall be charged for participation in the program.  An employee's participation in the account is irrevocable during a plan year.   At the close of the plan year any excess balance in an employee's account will not be refunded.

## ARTICLE XIV - HEALTH AND WELFARE FUND

Section 1.

a.  Effective April 1, 2008, the City shall continue to contribute the pro-rata annual amount of $1,458 for each employee for remittance to the Health and Welfare Fund of the Detective's Endowment Association of the City of New York ("Welfare Fund") pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

b.  Effective February 1, 2015, there shall be a $50 Welfare Fund reduction for actives and retirees.

c.  Pursuant to its commitment, the DEA will continue to provide benefits to employees' domestic partners.

d.  To the extent permitted by law, part of the amounts so contributed may be applied to maintain an appropriate legal services plan, pursuant to the terms of a supplemental agreement between the parties as approved by the Corporation Counsel.

e.  Effective June 22, 2001 employees who have been separated from service subsequent to December 31, 1970, and who were covered by the Health and Welfare Fund of the Detective Endowment Association at the time of such separation pursuant to a supplementary agreement between the City and the DEA shall continue to be so covered, subject to the provisions of Section 1 a, b, c, d, and e hereof, on the same contributory basis as incumbent employees. Contributions shall be made only for such time as said individuals remain primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by the City through such Program.

f.    Civil Legal Representation Fund

Effective April 1, 2008, the City shall continue to contribute $25 per annum for each active Employee to the Welfare Fund to establish a civil legal representation fund pursuant to the terms of a supplemental agreement between the City and Union as approved by the Corporation Counsel.  While these funds shall be administered by the applicable Welfare Fund, they are to be maintained in a separate account and shall not be commingled with the other monies received by the Welfare Fund.  Only the $25 provided above may be used for civil legal representation.  No additional monies from the Welfare Fund may be used for civil legal representation.

Effective May 1, 2011, the City shall increase its contribution to $75 per annum for each active Employee to the Welfare Fund to establish a civil legal representation fund pursuant to the terms of a supplemental agreement between the City and Union as approved by the Corporation Counsel.  While these funds shall be administered by the applicable Welfare Fund, they are to be maintained in a separate account and shall not be commingled with the other monies received by the Welfare Fund.  Only the $75 provided above may be used for civil legal representation.  No additional monies from the Welfare Fund may be used for civil legal representation.

g.    Such payments shall be made pro-rata by the City every twenty-eight (28) days.

h.    Administrative Benefits Fund

The Union shall create an administrative benefits trust fund, to be called the DEA Administrative Trust Fund. The purpose of the DEA Administrative Trust Fund shall be to receive contributions from the Employer and to distribute and allocate such funds to the Retiree Welfare Funds and the Active Welfare Fund as the trustees of the DEA Administrative Trust Fund deem appropriate.

As soon as practicable after the DEA Administrative Trust Fund is established, all contributions made by the Employer pursuant to the DEA Unit Agreement Article XIII, Section 1 a.-d. shall be made to the DEA Administrative Trust Fund.

Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the date of the suspension, the employee shall receive full Health and Welfare Fund coverage for the period of the suspension.

Section 3.

This Agreement incorporates the terms of the May 5, 2014 Letter Agreement regarding health savings and welfare fund contributions between the City of New York and the Municipal Labor Committee, as appended to this agreement.

2012-2019 DEA                                    20

## ARTICLE XV - ANNUITY FUND

Section 1.

a.      Effective April 1, 2008, the City shall continue to contribute for each employee, on a twenty eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $1119.69 per annum for each First Grade Detective, $1041.39 per annum for each Second Grade Detective and $978.75 for each Third Grade Detective in full pay status in the prescribed twelve (12) month period.  Contributions hereunder shall be remitted by the City each twenty eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel.

Effective February 15, 2006, the City shall contribute at the rate of $522 per annum on behalf of new appointees to Third Grade Detective until such Employees reach basic maximum salary.

b.      Effective February 1, 2015, there shall be a $261 per year reduction in the annuity for all members of the DEA, so the City shall contribute for each employee, on a twenty eight (28) day cycle basis, a pro-rata daily contribution for each working day for which such employee is paid by the City which amount shall not exceed $858.69 per annum for each First Grade Detective, $780.39 per annum for each Second Grade Detective, $717.75 for each Third Grade Detective in full pay status in the prescribed twelve (12) month period, and $261 per annum for new appointees to Third Grade Detective until such Employees reach basic maximum salary.  Contributions hereunder shall be remitted by the City each twenty eight (28) days to a mutually agreed upon annuity fund pursuant to the terms of a supplemental agreement to be reached by the parties subject to the approval of the Corporation Counsel

Section 2.

Where an employee is suspended without pay for disciplinary reasons and is subsequently restored to full pay status as of the effective date of the suspension, the employee shall receive full Annuity Fund coverage for the period of the suspension.

## ARTICLE XVI - GENERAL

Section 1.      Safety Helmets

The City agrees to furnish a safety helmet and equipment related thereto for each employee.  Such headgear shall conform to Police Department specifications in effect at the time of this Agreement.

Section 2.      Parking Facilities

It is the intent of the Department to make available without liability to the City, City-owned property and on-street locations adjacent to, near or part of police stations or other command

locations, as parking facilities for the personal cars of employees.  A single designated representative of the Department and a single designated representative of the DEA will survey locations in the vicinity of station houses to determine what space is available which could reasonably be used for police parking and, where space exists, the Department and the DEA will jointly request of the appropriate City agency designation of such locations.  This expressed intent of the Department does not imply any obligation or commitment on the part of the City or the Department to make available any such location or parking facilities.  Where such property is provided and so designated for this purpose, the City shall not be obligated to improve the same, nor to maintain it for parking.  The City need not continue to provide such property for parking when the City, in its discretion, decides to make a different use of it.  All inquiries or complaints from employees concerning the subject matter or application of this Section shall be referred directly to the DEA for investigation and review.  The DEA shall screen and thereafter shall present only those inquiries or complaints which it believes are justified to the Commanding Officer of the Office of Labor Relations of the Police Department, or the Commanding Officer's designee, for discussion and possible adjustment.

This Section shall not be subject to the grievance procedure.

Section 3.      Maintenance of Facilities
All commands and other Departmental places of assignment shall have adequate heating, hot water and sanitary facilities.  The Union shall give notice to the Department of any failure to maintain these conditions.  If not corrected by the Department within a reasonable time, the Union may commence a grievance at Step 3 of the grievance procedure concerning that failure.

Section 4.      Private Hospital Accommodations for Line-of-Duty Injuries

It is the intent of the City to use its best efforts to secure private room accommodations in a hospital for employees injured in the line-of-duty.  This section shall not be subject to the grievance procedure.

Section 5.      Information Exchange

a.      The Department will provide the Union with a copy of all Orders, Department Bulletins, "Open Door" issues, and press releases.  The details of delivery shall be worked out between the parties.

        The Department will provide to the Union on a semi-annual basis a computer printout containing names and addresses of employees listed alphabetically.

b.      The Union will provide the Department with a copy of Union publications, bulletins and press releases.

Section 6.      Meal Areas

A representative of the Department and a representative of the DEA will meet to determine an

adequate meal area for employees within each command and other Departmental places of assignment. This does not contemplate rebuilding or extensive remodeling.

Section 7.      Personal Folder

a.      The Personnel Bureau will provide the Union with a list of categories of items included in the Personal Folder with an indication of those confidential items which an employee is not permitted to review.

b.      Employees may view their folders on normal business days between the hours of 9:00 a.m. and 5:00 p.m. by appearing in person at the Employee Management Division, Personnel Bureau, 10th Floor, Police Headquarters. To avoid delay, employees should call the Employee Management Division at least one day in advance.

c.      The Department will, upon written request to the Chief of Personnel by the individual employee, remove from the Personal Folder investigative reports which, upon completion of the investigation, are classified "exonerated" and/or "unfounded."

Section 8.      Disciplinary Records

Where an employee has been charged with a "Schedule A" violation as listed in Patrol Guide 118-2 and such case is heard in the Trial Room and disposition of the charge at trial or on review or appeal therefrom is other than "guilty", the employee concerned may, after 2 years from such disposition, petition the Police Commissioner for a review for the purpose of expunging the record in the case. Such review will be conducted by a board composed of the Deputy Commissioner-Trials, Department Advocate, and the Chief of Personnel, or their designees. The Board will make a recommendation to the Police Commissioner. The employee concerned will be notified of the final decision of the Police Commissioner by the Deputy Commissioner-Trials.

Section 9.      Disciplinary Procedures

The parties, through a joint subcommittee, shall develop procedures to insure that:

a.      All disciplinary charges shall be brought in a timely fashion pursuant to the current departmental regulations.

b.      Departmental trials shall be held as promptly as possible, utilizing additional hearing personnel.

c.      Reimbursement shall be made for any period of suspension in excess of any penalty ultimately levied.

Section 10.      Fixed Post Duty

A commanding officer may limit fixed post duty for a single employee to a single four-hour period.

Section 11.    Lump Sum Payments

A. Where an employee has an entitlement to accrued annual leave and/or compensatory time, and the City's fiscal condition requires employees who are terminated, laid off or who choose to retire in lieu of layoff to be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the employer shall provide the monetary value of accumulated and unused annual leave and/or compensatory time allowances standing to this credit in a lump sum. Such payments shall be in accordance with the provisions of Executive Order 30, dated June 24, 1975.

Where an employee has an entitlement to terminal leave and the City's fiscal situation requires that employees who are terminated, laid off or retired be removed from the payroll on or before a specific date, or where an employee reaches the mandatory retirement age, the employer shall provide a monetary lump sum payment for terminal leave in accordance with the provisions of Executive Order 31, dated June 24, 1975.

B. The resolution of the Board of Estimate of the City of New York dated June 27, 1957, states the following:

> *Members of the Force shall be granted terminal leave with pay upon retirement not to exceed one month for every ten years of service, pro-rated for a fractional part thereof, provided, however, that no terminal leave shall be granted to an employee against whom departmental disciplinary charges are pending.*

Effective February 1, 2015, such employees as described in the Resolution above and are entitled to payment and who are members of the DEA shall now be entitled to voluntarily choose the option of a one-time lump sum payment as their terminal leave benefit in lieu of their current terminal leave benefit prior to retirement. Such payments shall be made as soon as practicable after retirement. In the event that a change in legislation is needed to effectuate this agreement, the parties agree to jointly support the necessary legislation to implement these terms.

Section 12.    Interest Payments

Interest on wage increases shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days after execution of this Agreement or one hundred-twenty (120) days after the effective date of the increase, whichever is later, to the date of actual payment. Interest on longevity and step-up increments, differentials and holiday pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days after the execution of this Agreement, whichever is later, to the date of actual payment. Interest on overtime pay shall accrue at the rate of three percent (3%) per annum from one hundred-twenty (120) days following its earning or one hundred-twenty (120) days following the employee's submission of an overtime report, whichever is later. Interest accrued

pursuant to this paragraph shall be payable only if the amount of interest due to an individual employee exceeds five dollars ($5.00).

Section 13.    Public Transportation

The City and the DEA will use their best efforts to effect free transportation on buses and subways for police officers who are designated as Detectives.

Section 14.    Safeguarding of Records

Employees shall take all reasonable means to safeguard court and departmental records in their care after a normal tour of duty is completed in court.  The loss or damage of such records shall not be grounds for disciplinary action unless due to the employee's negligence.

Section 15.    Polygraphs

The current practice concerning the use of polygraphs in internal investigations shall be maintained during the current collective bargaining agreement.

Section 16.    Performance Compensation

The City acknowledges that each of the uniformed forces performs an important service that reflects the diverse missions of the City's uniformed agencies.  In order to reward service of an outstanding, exceptional nature, each of the uniformed agencies will establish a performance compensation program to recognize and reward such service, tailored to the unique missions of the individual uniformed agency.

The parties agree that additional compensation may be paid to employees performing outstanding, exemplary, difficult and/or unique assignments.  The City will notify and discuss with each affected union of its intent to pay such additional compensation and the individuals to be compensated.

The criteria for the granting of performance-based compensation shall be based upon outstanding performance in the work assigned, and/or performance of unique and difficult work.

The performance-based compensation payments provided for in this section shall be one-time, non-recurring cash payments subject to applicable pension law.  An employee can receive no more than one payment annually.

This provision shall not affect any existing productivity programs covered in any existing collective bargaining agreements.  Nor shall this provision be construed to waive any obligation of the City to negotiate over future productivity programs as required by applicable law.

## ARTICLE XVII - UNION ACTIVITY

Section 1.

Time spent by union officials and representatives in the conduct of labor relations shall be governed by the provisions of Mayor's Executive Order No. 75, as amended, dated March 22, 1973, or any other applicable Executive Order or local law, or as otherwise provided in this Agreement.  No employee shall otherwise engage in Union activities during the time the employee is assigned to the employee's regular duties.

Section 2.

Union Trustees and delegates shall be recognized as representatives of the Union within their respective territories and commands.  For the purpose of attending the regularly scheduled monthly delegate meetings, but not more than 12 per year, there will be a 24-hour excusal either from 0001 to 2400 hours on the day of the meeting for daytime meetings, or from 0800 on the day of the meeting to 0800 the following day for evening meetings.  If the delegate or officer is either sick or out-of-town on leave or assignment, or is required to appear in court, an alternate will be able to obtain this same excusal.  The Union will provide the City with a list of those attending each such meeting, which shall be the basis for their payment.

Section 3.
The parties shall explore a further clarification of departmental rules and procedures to enable DEA delegates and officers to represent properly the interests of Detectives.  An appropriate departmental order in this regard shall be issued.

## ARTICLE XVIII - NO DISCRIMINATION

In accord with applicable law, there shall be no discrimination by the City against any employee because of Union activity.

## ARTICLE XIX - NIGHT SHIFT DIFFERENTIAL

a.      There shall be a 10% night shift differential effective January 1, 1971 applicable to all employees assigned to rotating tours of duty for all work actually performed between the hours of 4:00 p.m. and 8:00 a.m.  There shall be a 10% night differential effective January 1, 1971 applicable to all other employees for all work actually performed between the hours of 4:00 p.m. and 8:00 a.m., provided that more than one hour is actually worked after 4:00 p.m. and before 8:00 a.m.

b.      Where overtime compensation is to be calculated for tours in the regular duty chart, the overtime calculation shall be based on the rate paid for the tour to which the overtime is attached; for tours not in the regular duty chart, the overtime calculation shall be based on that rate paid for half or more of the hours of the tour to which the overtime is attached.

ARTICLE XX - OVERTIME TRAVEL GUARANTEE

Section 1.

Employees shall not be entitled to Overtime Travel Guarantee compensation unless assigned to duty in uniform.  If, however, an employee is assigned to duty in uniform, the employee shall receive such compensation in accord with the provisions of this Article.

Section 2.

Overtime travel guarantee compensation shall continue to be paid as follows:

a.      In the event that an employee is assigned to a post outside the employee's permanent command and the employee is required to report at such post at the start of the employee's regular tour of duty, the employee shall accrue an allowance for travel to the post to which the employee is assigned at the rate of time and one-half for 45 minutes of travel time if the assigned post is within the same patrol borough as that of the employee's permanent command or at the rate of time and one-half for 1-1/4 hours if the assigned post is in a different patrol borough from that of the employee's permanent command.

b.      In the event that an employee is assigned to a post outside the employee's permanent command and the employee cannot return to the employee's permanent command within the employee's regular tour of duty, the employee shall accrue an allowance for travel to the employee's permanent command at the same rate as stated in Subsection 2(a) of this Article XX.

Section 3.

The overtime accrued pursuant to this Article XX for any one day shall be taken by the employee at the employee's sole option either all in cash or all in compensatory time off.

Section 4.

(1)     All claims for payment of compensatory time off which is earned as pursuant to this Article on January 1, 1978 or thereafter must be submitted to the appropriate payroll personnel by the applicant within 180 days from the date payment is earned for payment in cash.  All applications submitted after 180 days up to 365 days from the date payment is earned will be granted the appropriate compensatory time off only for claims under this Article.

(2)     If a request for payment is timely submitted and rejected by the Police Department, the grievant shall have 120 days from the date of receipt of a written rejection notice to file a grievance pursuant to this Article.

(3)     The above clarification shall apply only to claims under this Article earned on January 1, 1978 or thereafter.

(4)     This clarification applies to a grievance brought under this collective bargaining contract only.  It has no applicability to any other legal remedy which an individual may have.

### ARTICLE XXI - GRIEVANCE AND ARBITRATION PROCEDURE

Section 1.     Definitions

a.     For the purposes of this Agreement, the term "grievance" shall mean:

   (1)     a claimed violation, misinterpretation or inequitable application of the provisions of this Agreement;

   (2)     a claimed violation, misinterpretation or misapplication of the rules, regulations or procedures of the Police Department affecting terms and conditions of employment, provided that, except as otherwise provided in this Section 1(a), the term "grievance" shall not include disciplinary matters;

   (3)     a claimed improper holding of an open-competitive rather than a promotional examination;

   (4)     a claimed assignment of the grievant to duties substantially different from those stated in the grievant's job title specification.

b.     For the purposes of this Agreement the term, "Commanding Officer" shall mean the immediate Commanding Officer of the aggrieved employee.

c.     For the purposes of this Agreement the term "Reviewing Officer" shall mean the superior officer in charge of the next higher command or level above a Commanding Officer.

d.     For the purposes of this Agreement the term "Board" shall mean the Personnel Grievance Board to be composed of three (3) members, as follows:  a Deputy Commissioner or other designee of the Police Commissioner, who shall be Chairman of the Board, the Chief of Department or the Chief of Department's designee, and the President of the Union or the President's designee.

e.     For the purposes of this Agreement the term "grievant" shall mean an employee or group of employees asserting a grievance or the Union or both, as the context requires.

Section 2.

The availability of the grievance or arbitration procedure shall not justify a failure to follow orders.

Section 3.

a.     Every grievant shall have the right to present a grievance in accord with the procedure

2012-2019 DEA                                    28

provided herein free from coercion, interference, restraint or reprisal.

b.      The informal resolution of differences of grievances is urged and encouraged at all levels of supervision.

c.      Commanding Officers and Reviewing Officers shall promptly consider grievances presented to them and, within the scope of their authority take such necessary action as is required herein.

d.      Commanding Officers, Reviewing Officers and members of the Personnel Grievance Board shall consider objectively the merits of grievances with due consideration to the harmonious interrelationship that is sought to be achieved among all members of the force and for the good of the Police Department.

e.      Any employee may present the employee's own grievance through the first four steps of the grievance procedure either individually (with the aid of the employee's own counsel if the employee so chooses), or through the Union, provided however that the Union shall have the right to have a representative present at each step of the grievance procedure.

Section 4.

Under the grievance procedure herein, a grievance must be initiated within 90 days following the date on which the grievance arose or the date on which the grievant should reasonably have learned of the grievance or the execution date of this Agreement, which ever date is the latest.  Grievances shall be processed according to the following procedure:

STEP I.

A grievant shall present the grievance to the Commanding Officer either orally or in writing.  The Commanding Officer shall carefully consider the matter, make a decision thereon and advise the grievant of the decision within five (5) days of the grievance's submission.

STEP II.

If the grievance is still not satisfactorily adjusted, at STEP I, the grievant may seek the following review within ten days after receipt of the Step I decision.  The grievant shall reduce the grievance to writing on Form P.D. 158-151 (in triplicate), setting forth a concise statement of the grievance and the results of the proceedings at Step I.   The grievant shall forward two copies to the appropriate Reviewing Officer and retain one copy for personal use.  The Reviewing Officer shall forward one copy to the Commanding Officer, requesting the Commanding Officer's comments. The Reviewing Officer shall carefully consider said grievance, make a determination, and notify the grievant and the Commanding Officer of the Reviewing Officer's decision within ten (10) days following receipt of the grievance.

STEP III.

If the grievance is still not satisfactorily adjusted, the grievant may, not later than ten days after notification of the Reviewing Officer's decision, seek further review as follows:

The grievant shall prepare a report on P.D. 158-151 (in quintuplicate) setting forth a concise statement of the grievance and the results of the proceedings at Step I and II. The grievant shall forward four copies of the report through official channels to the Chairman, Personnel Grievance Board, retaining one copy for personal use. The Board shall forward one copy to the Reviewing Officer, requesting the Reviewing Officer's comments thereon. The Personnel Grievance Board shall meet at least once a month on a date designated by the Chairman. At each meeting, the Board shall consider all grievances which, at least five days prior to such meeting, have been properly referred to the Board. The grievant may choose to have the grievant's representatives present at the meeting, at which time oral and written statements may be presented.
The Board shall carefully consider said grievance, make a determination and notify the grievant, the Commanding Officer and the Reviewing Officer, in writing, of its decision within seven days after the meeting at which the grievance is considered.

It is understood and agreed by and between the parties that there are certain grievable disputes which are of a Department level or of such scope as to make adjustments at Step I or Step II of the grievance procedure impracticable, and, therefore, such grievances may be instituted at Step III of the grievance procedure by filing the required written statement of the grievance directly with the Chairman of the Personnel Grievance Board; the Chairman or Chairman's designee shall convene a meeting of the Board within five (5) working days following receipt of the grievance, and the Board shall render its decision within five (5) working days following that meeting.

STEP IV.

Where the grievance is not satisfactorily adjusted at Step III, the grievants may, not later than 30 calendar days after notification of the Board's decision, request that the grievance be referred to the Police Commissioner for determination; and the Police Commissioner shall make a determination within ten working days following receipt of the grievance. This determination shall be made after appropriate consultation with any or all parties to the grievance, including the Chairman of the Board and/or the Board members; and copies shall be sent to the grievant and the Union.

Grievances which affect substantial numbers of employees may be compressed by elimination of the fourth Step of the Grievance Procedure.

Section 5.

At every step of these procedures, the grievant and the officer considering the grievance shall work for a satisfactory adjustment. At any step, the Commanding Officer, the Reviewing Officer and the Board shall have the right to summon the grievant and any and all persons considered necessary to equitable adjustment of the grievance. Proceedings shall be informal. The Chairman of the

Personnel Grievance Board shall take such steps to implement the provisions concerning grievances as are necessary for the proper and effective operation of the procedures provided for herein. The Chairman shall resolve questions as to jurisdictional responsibility of Commanding Officers and Reviewing Officers and shall work out the operational details of the program. For these purposes, the Chairman shall issue orders and instructions through the Chief of Department not inconsistent with the provisions of this Article.

Section 6.

The grievance procedure established hereinbefore is designed to operate within the framework of, and is not intended to abolish or supersede existing rules and procedures providing for additional methods of redress. These include, but are not limited to, the existing rights of a grievant to request an interview with the Police Commissioner.

Section 7.

Any and all of the foregoing grievance steps may be waived by the written consent of both parties.

Section 8.

Within twenty (20) days following receipt of the Police Commissioner's STEP IV decision, the Union shall have the right to bring grievances unresolved at STEP IV to impartial arbitration pursuant to the New York City Collective Bargaining Law and the Consolidated Rules of the New York City Office of Collective Bargaining. In addition, upon ten (10) days' written notice to the Union, the City shall have the right to bring directly to arbitration any dispute between the parties concerning any matter defined as a "grievance" herein. The City shall commence such arbitration by submitting a written request therefor to the Office of Collective Bargaining, with a copy to the Union; and the matter shall proceed pursuant to the Consolidated Rules of the Office of Collective Bargaining.

A permanent rotating Panel of three (3) Arbitrators shall be established, drawn from the official panel of the Office of Collective Bargaining, as agreed to by both parties. The members of the Panel shall be assigned on a rotating basis to arbitrate all grievances under this Section.

The assigned Arbitrator shall hold a hearing at a time and place convenient to the parties and a transcript shall be taken unless the taking of a transcript is waived by both parties. The Arbitrator shall attempt to issue an award within ten (10) days after the completion of the hearing.

The City and the Union shall each pay 50% of the fees and expenses of the Arbitrator and of all other expenses incidental to such arbitration. The costs of one copy for each party and one copy for the Arbitrator of the transcripts shall be borne equally by the parties.

Section 9.

In the case of grievances falling within Sections 1(a)(1) or 1(a)(2) of this Article, the Arbitrator's

decision, and order or award (if any), shall be limited to the application and interpretation of the collective bargaining agreement, rule, regulation, procedure, order or job title specification involved, and the Arbitrator shall not add to, subtract from, or modify any such Agreement, rule, regulation, procedure, order or job title specification.  An Arbitrator's award shall be final and binding and enforceable in any appropriate tribunal in accord with Article Seventy-five of the Civil Practice Law and Rules, except that awards as to grievances concerning assignment of the grievant to duties substantially different from those stated in the grievant's job title specification or the use of open-competitive rather than promotional examinations shall be final and binding and enforceable only to the extent permitted by law.  An Arbitrator may provide for and direct such relief as the Arbitrator determines to be necessary and proper, subject to the limitations as set forth above and any applicable limitations of the law.

Section 10.

The time limits contained in this Article may be modified by mutual agreement.  In the event that the Department fails to comply with the time limits prescribed herein, the grievance may be advanced to the next step.

## ARTICLE XXII - LINE-OF-DUTY DEATH BENEFIT

In the event, an employee dies because of a line-of-duty injury received during the actual and proper performance of police service relating to the alleged or actual commission of an unlawful act, or directly resulting from a characteristic hazard of police duty, through no fault of the employee's, a payment of $25,000 shall be made from funds other than those of the Retirement System in addition to any other payment which may be made as a result of such death.  Such payment shall be made to the beneficiary designated under the Retirement System or, if no beneficiary is so designated, to the estate of the deceased.

## ARTICLE XXIII - DEATH BENEFIT - UNUSED
## LEAVE AND COMPENSATORY TIME

If an employee dies while employed by the City, the employee's beneficiary designated under the Retirement System or, if no beneficiary is so designated, the deceased's estate shall receive payment in cash for the following as a death benefit:

(a)     All unused accrued leave up to a maximum of 54 days' credit;

(b)     All unused accrued compensatory time earned subsequent to January 1, 1971 which is verifiable by official Department records up to a maximum of two hundred (200) hours.

## ARTICLE XXIV - OPTIONAL WORK DURING VACATIONS

Section 1.

Any employee may volunteer to work for one five-day period during such employee's vacation

leave.  Whether the volunteer will be assigned to duty is within the discretion of the Department. If assigned to duty, the assignment shall be at the discretion of the Department to any regular platoon in any one command for the entire five-day period.  No employee shall be discriminated against in the application of this Section because the employee is in the last year of service.

Section 2.

An employee who so volunteers shall be compensated at the employee's regular straight-time rate of pay for all work performed during the assigned platoon's regular hours of work.  Except as otherwise provided in this Article, all other provisions of this Agreement shall be applicable to work so performed.

Section 3.

Contributions under Article XIV (Health and Welfare Fund) and Article XV (Annuity Fund) of this Agreement shall not be paid for work performed pursuant to this Article.

Section 4.

For purposes of Article XX (Overtime Travel Guarantee) of this Agreement, the command to which an employee is so assigned for the five-day period shall be deemed that employee's "permanent command."

## ARTICLE XXV - NO STRIKES

In accord with applicable law, neither the Union nor any employees shall induce or engage in any strikes, slowdowns, work stoppages or mass absenteeism or induce any mass resignations during the terms of this Agreement.

## ARTICLE XXVI - BULLETIN BOARDS

The Union may post notices on bulletin boards in places and locations where notices usually are posted by the employer for employees to read.  All notices shall be on Union stationery, shall be used only to notify employees of matters pertaining to Union affairs, and shall not contain any derogatory or inflammatory statements concerning the City, the Department or personnel employed by either entity.

## ARTICLE XXVII - LABOR-MANAGEMENT COMMITTEE

Section 1.

The City and the Union, having recognized that cooperation between management and employees is indispensable to the accomplishment of sound and harmonious labor relations, shall jointly maintain and support a labor-management committee.

Section 2.

The labor-management committee shall consider and may recommend to the Police Commissioner changes in the working conditions of the employees, including, but not limited to, the following subjects:  the adequate levels of police coverage to ensure the safety of employees on duty; and excusal policy for employees appearing in court after the midnight tour.  Matters subject to the grievance procedure shall not be appropriate items for consideration by the labor-management committee.

Section 3.

The labor-management committee shall consist of six members who shall serve for the term of this Agreement.  The Union shall designate three members and the Police Commissioner shall designate three members.  Vacancies shall be filled by the appointing party for the balance of the term to be served.  Each member may designate one alternate.  The committee shall select a chairman from among its members at each meeting.  The chairmanship of the committee shall alternate between the members designated by the Police Commissioner and the members designated by the Union.  A quorum shall consist of a majority of the total membership of the committee.  The committee shall make its recommendation to the Police Commissioner in writing.

Section 4.

The labor-management committee shall meet at the call of either the Union members or the City members at times mutually agreeable to both parties.  At least one week in advance of a meeting the party calling the meeting shall provide to the other party a written agenda of matters to be discussed. Minutes shall be kept and copies supplied to all members of the committee.

## ARTICLE XXVIII - NO WAIVER

Except as otherwise provided in this Agreement, the failure to enforce any provision of this Agreement shall not be deemed a waiver thereof.  This Agreement is not intended and shall not be construed as a waiver of any right or benefit to which employees are entitled by law.

## ARTICLE XXIX - SAVINGS CLAUSE

If any provision of this Agreement is found to be invalid, such invalidity shall not impair the validity and enforceability of the remaining provisions of this Agreement.

## ARTICLE XXX - FINANCIAL EMERGENCY ACT

The provisions of this Agreement are subject to applicable provisions of law, including the New York State Financial Emergency Act for the City of New York, as amended.

## ARTICLE XXXI - TERM

The term of this Agreement shall commence on April 1, 2012 and shall expire at midnight on March 31, 2019.

IN WITNESS WHEREOF, the parties have executed this agreement on the day and year first above written.

CITY OF NEW YORK

DETECTIVES' ENDOWMENT ASSOCIATION OF THE CITY OF NEW YORK, INC.

By:_____
    RENEE CAMPION
    Commissioner, Office of
    Labor Relations

By:_____
    PAUL DIGIACOMO
    President

APPROVED AS TO FORM:

By:_____
    ERIC EICHENHOLTZ
    Acting Corporation Counsel

DATE SUBMITTED TO THE FINANCIAL CONTROL BOARD:

UNIT:   DETECTIVES

TERM:   April 1, 2012 to March 31, 2019

Appendix A

Paul DiGiacomo
President
Detectives' Endowment Association
26 Thomas Street
New York, N.Y.  10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

During the life of the above Agreement, the Police Department shall make advancements in grade of Detectives assigned to investigative functions.  The Department shall send out a memorandum to all commanders requesting recommendations on candidates for promotions for such detectives to the first and second grades.

Very truly yours,

Dermot F. Shea
Police Commissioner

Appendix B

Paul DiGiacomo
President
Detectives' Endowment Association
26 Thomas Street
New York, N.Y.  10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

During the life of the above Agreement, it is my intention not to evaluate
Detectives on a numerical basis nor is it my intention to conduct evaluations more
than twice per year.

Very truly yours,

Dermot F. Shea
Police Commissioner

Appendix C

Paul DiGiacomo
President
Detectives' Endowment Association
26 Thomas Street
New York, N.Y.  10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

This is to confirm our intention regarding the transfer of Detective specialists from one command to another.

A Detective specialist who requests a transfer from one command to another pursuant to Patrol Guide Procedure 205-14 will not automatically lose his/her Detective designation if such transfer is granted by the Police Department.

Very truly yours,


Dermot F. Shea
Police Commissioner



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix D

Paul DiGiacomo
President
Detectives Endowment Association
26 Thomas Street
New York, N.Y. 10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

This is to reflect that our agreement increased the number of appearances required by certain Detectives as follows:

Each employee designated as Detective on or after February 1, 1990 shall be required to work six (6) additional tours per year beyond the number required for a similarly situated incumbent Detective.

Effective April 1, 1995, each employee designated as Detective on or after February 1, 1990, who is assigned to a "four-by-two" work chart, will no longer be required to work the above six (6) additional appearances, as long as that employee is assigned to a "four-by-two" work chart. After the completion of six (6) years as a

Detective, all employees designated as Detective on or after February 1, 1990, regardless of work chart, will no longer be required to work the above six (6) additional appearances.

Very truly yours,


Renee Campion


AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY: _____
PAUL DIGIACOMO
President



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix E

Paul DiGiacomo
President
Detectives Endowment Association
26 Thomas Street
New York, N.Y.  10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

This is to confirm our mutual understanding and agreement regarding Article XII of the above Agreement.  If the stabilization fund referred to does not have sufficient monies to maintain the then current level of health insurance benefits provided under GHI-CBP/Blue Cross plan, payroll deductions in the appropriate amounts shall be taken from employees and retirees enrolled in such plan unless agreement is reached on a program wide basis to take the needed monies from the contributions to the welfare fund provided in Article XIII of the above Agreement.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY: _____
PAUL DIGIACOMO
President

 # Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix F

Paul DiGiacomo
President
Detectives Endowment Association
26 Thomas Street
New York, N.Y. 10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

This is to confirm that during negotiations for the successor agreement to this 2008-2012 agreement the parties shall negotiate the issue of increasing the City's contribution to the DEA Health and Welfare Fund as the first issue to be addressed. The issues to be negotiated shall include the intent of the parties to equalize the City's total contribution to the DEA Health and Welfare Fund with the total contributions made by the City to other health and welfare funds on behalf of other employees and that the DEA shall be responsible for the cost of such increased contributions.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY: _____
    PAUL DIGIACOMO
    President



# *Office of Labor Relations*

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*

**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*

**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix G

Paul DiGiacomo
President
Detectives Endowment Association
26 Thomas Street
New York, N.Y.  10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

The City and the DEA recognize that, pursuant to Administrative Code Section 12-127, the City is obligated to pay for the cost of line of duty injury prescription drugs for DEA members. The parties further recognize that a significant number of DEA members have utilized the DEA Health and Welfare Fund to pay for these prescription drugs without reimbursement by the City. The DEA agrees to waive any and all claims retroactively and prospectively against the City for the reimbursement of the cost of line of duty injury prescription drugs.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY: _____
          PAUL DIGIACOMO
          President



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix H

Paul DiGiacomo
President
Detectives Endowment Association
26 Thomas Street
New York, N.Y.  10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

This is to reflect that our agreement modified the number of appearances and tours required by certain Detectives as follows:

Effective February 15, 2006, for those Detectives who previously worked tours of eight hours and fifteen minutes (8:15), the length of the tour shall be eight hours and thirty-three minutes (8:33) with 253 appearances per year.

Effective February 15, 2006, for those Detectives who had previously worked eight hour and ten minute (8:10) tours, the length of the tour shall be eight hours and twenty-eight minutes (8:28) with 256 appearances per year.

Effective February 15, 2006, for Detectives who had worked eight hour or nine hour tours on the 4 x 2 chart, the length of the tour shall be increased by fifteen (15) minutes.  However, these Detectives shall not work the additional fifteen (15) minutes during any 28 day FLSA cycle in which the additional time would increase their regularly scheduled hours over the 171 hour maximum.  During these cycles, the tours shall not be increased by the aforementioned fifteen (15) minutes.

Effective February 15, 2006, the parties agree that new hires outside the 4 x 2 chart will work an additional two (2) tours per year for the first six years of their employment.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY:   _____
        PAUL DIGIACOMO
        President

 # Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix I

Paul DiGiacomo
President
Detectives Endowment Association, Inc.
26 Thomas Street
New York, NY 10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

This will confirm our mutual understanding that detectives assigned to the Narcotics Division will receive overtime payment if they are rescheduled to work a tour that intrudes upon their swing period. Any overtime payment will be limited to the portion of the tour that is worked after midnight on their last scheduled day of the week. The City and the DEA acknowledge further that the New York City Police Department is not obligated to provide overtime payment to detectives who are assigned to steady tours that intrude upon the swing period.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY: _____
PAUL DIGIACOMO
President



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix J

Paul DiGiacomo
President
Detectives Endowment Association, Inc.
26 Thomas Street
New York, NY 10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

This is to confirm the understanding between the City of New York ("City") and the Detectives Endowment Association ("DEA") regarding detectives detailed or assigned to the rank of third grade detective.

Effective November 1, 2007, the City shall increase the current number of budgeted positions for first and second grade detectives by 4.92% of the current DEA bargaining unit. This side letter shall not prohibit or limit the Police Commissioner's discretion to detail or assign first, second or third grade detectives.

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY: _____
PAUL DIGIACOMO
President



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix K

Paul DiGiacomo
President
Detectives Endowment Association, Inc.
26 Thomas Street
New York, NY 10007

   Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

   This will confirm our mutual understanding that a labor-management committee be established which shall include representatives from the Police Department; the DEA and the Mayor's Office of Labor Relations to address compensatory time / overtime issues.

   If the above conforms to your understanding, please execute the signature line below.

                              Very truly yours,


                              Renee Campion


AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY: _____
          PAUL DIGIACOMO
          President



# Office of Labor Relations

22 Cortlandt Street, New York, NY 10007
nyc.gov/olr

**Renee Campion**
*Commissioner*
**Steven H. Banks**
*First Deputy Commissioner*
*General Counsel*

**Claire Levitt**
*Deputy Commissioner*
*Health Care Cost Management*
**Georgette Gestely**
*Director, Employee Benefits Program*

Appendix L

Paul DiGiacomo
President
Detectives Endowment Association, Inc.
26 Thomas Street
New York, NY 10007

Re: D.E.A. Agreement for the period April 1, 2012 to March 31, 2019

Dear Mr. DiGiacomo:

This is to confirm our mutual understanding and agreement regarding the Home Confinement Elimination Pilot Program.

The pilot program concerning Patrol Guide Procedures 205-01 and 205-45 will continue to apply. This pilot program will continue to be subject to the following terms:

a. The pilot program will provide that eligible employees, who request sick leave for an injury or illness, shall no longer be subject to home visitation and confinement, outside the hours of the employee's regularly scheduled tour of duty, except where the convalescence for the injury or illness requires home confinement in the opinion of the Department's Medical Division, after consultation with the employee's personal physician.

b. The following employees are not eligible to participate in the program:

    1) Any Employee who is designated as 'chronic sick',
    2) Any Employee who is on modified assignment,
    3) Any Employee who is on dismissal probation,
    4) Any Employee who is on suspension.

c.   For purposes of this agreement the "designated absence rate" is the average lost days, including both line of duty and non-line of duty sick leave, per member of service in the DEA bargaining unit for Fiscal Year 2007-2008, which equals 9.37 days per year.

d.   The Department, on the first day of each month, will review Detective availability for the preceding 365 days. In the event that Detective average sick leave for the entire DEA bargaining unit exceeds the designated absence rate for the preceding 365 day period by more than 10%, the previous Patrol Guide home visitation and confinement policies will be placed into effect the following day. Such procedures will remain in effect for the remainder of the month. Provided however, the Police Commissioner in his own discretion may permit the new procedures to remain in effect.

e.   The following month another review of sick leave usage for the preceding 365 days will occur. When a monthly review results in a return to a level at or below the "designated absence rate" plus 10% the Department will resume the new visitation and confinement procedures the following day (the second day of the month.)

If the above conforms to your understanding, please execute the signature line below.

Very truly yours,

Renee Campion

AGREED AND ACCEPTED ON BEHALF OF THE
DETECTIVES ENDOWMENT ASSOCIATION

BY:   _____
      PAUL DIGIACOMO
      President