# EXHIBIT 4

# *DC 37*, 5 OCB2d 8 (BCB 2012)

(IP) (Docket No. BCB-2959-11)

***Summary of Decision***: The Union claimed that the City violated its duty to bargain in good faith by unilaterally changing the COIB financial disclosure appeals procedure. The Union argued that the COIB financial disclosure appeals procedure is a mandatory subject of bargaining and that the statute at issue did not expressly or implicitly remove the appeals procedure from the scope of mandatory bargaining. The City argued that the duty to bargain was preempted by statute, or, alternatively, that the changes that it made to the financial disclosure appeals procedure were *de minimis*. The Board found that the changes were not *de minimis*, that bargaining was not preempted by statute, and that the City violated its duty to bargain over the financial disclosure appeals procedure. Accordingly the Union's improper practice petition was granted. ***(Official decision follows.)***

---

**OFFICE OF COLLECTIVE BARGAINING**
**BOARD OF COLLECTIVE BARGAINING**

**In the Matter of the Improper Practice Proceeding**

***-between-***

**DISTRICT COUNCIL 37, AFSCME, AFL-CIO,**

***Petitioner,***

***-and-***

**THE CITY OF NEW YORK and**
**THE NEW YORK CITY CONFLICTS OF INTEREST BOARD,**

***Respondents.***

---

## DECISION AND ORDER

On May 17, 2011, District Council 37, AFSCME, AFL-CIO ("DC 37" or "Union") filed a verified improper practice petition against the City of New York ("City") and the New York City Conflicts of Interest Board ("COIB"). The Union claims that the City violated § 12-306(a)(1) and (4) of the New York City Collective Bargaining Law (City of New York

Administrative Code, Title 12, Chapter 3) ("NYCCBL") by unilaterally changing the COIB financial disclosure appeals procedure. The Union argues that the COIB financial disclosure appeals procedure is a mandatory subject of bargaining and that the statute at issue did not expressly or implicitly remove the appeals procedure from the bargaining obligation. The City argues that the duty to bargain was preempted by statute, or, alternatively, that the changes that it made to the financial disclosure appeals procedure are *de minimis*. This Board finds that the changes were not *de minimis*, that bargaining was not preempted by statute, and that the City violated its duty to bargain over the financial disclosure appeals procedure. Accordingly, the Union's improper practice petition is granted.

## BACKGROUND

The COIB is an independent, non-mayoral agency that, among other responsibilities, is charged with interpreting and enforcing the City's financial disclosure law set forth in § 12-110 of the New York City Administrative Code ("Administrative Code § 12-110"). Administrative Code § 12-110 provides the COIB with the authority to promulgate rules concerning the financial disclosure law and requires certain public employees to file an annual financial disclosure report with the COIB.[1] *See also* N.Y. City Charter § 2603(d) (stating that the COIB "shall issue rules concerning the filing of financial disclosure statements"). The Union serves as the Citywide collective bargaining representative and is an amalgam of 55 local unions representing approximately 120,000 City employees. Some of the Union's members are required to file an annual financial disclosure report with the COIB because their duties relate to the

[1] Financial disclosure reports concerning a particular calendar year are filed in the next calendar year. For example, reports pertaining to calendar year 2006 are filed in 2007.

negotiation or approval of contracts.[2] Such employees are known as "contract filers." Initial determinations concerning whether an employee must file a financial disclosure report are made by the employing agency.

Prior to the events that gave rise to the petition, and dating back to at least 1990, the City and the Union negotiated a financial disclosure appeals procedure, which allowed employees to challenge an agency designation requiring them to file financial disclosure reports. This procedure was memorialized in letter agreements dated March 14, 1990 ("1990 Agreement"), March 1, 2000 ("2000 Agreement"), and March 24, 2002 ("2002 Agreement"). Under each of these agreements, employees who requested a review of the requirement to file a financial disclosure report could appeal their agency's determination to a neutral referee provided by the New York City Office of Collective Bargaining ("OCB"). For example, the 2002 Agreement provides:

> If the employee is dissatisfied with [the Agency Head or the Agency Head's designee's] determination, the employee's collective bargaining representative shall have five (5) days from the receipt of the notification from the Agency Head or the Agency Head's designee to file a written appeal of that determination with the Deputy Chair for Dispute Resolution (Deputy Chair) of the Office of Collective Bargaining (OCB).

---

[2] Administrative Code § 12-110(b)(3)(a)(4) provides that persons who are required to file a financial disclosure report include:

> Each employee whose duties at any time during the preceding calendar year involved the negotiation, authorization or approval of contracts, leases, franchises, revocable consents, concessions and applications for zoning changes, variances and special permits, as defined by rule of the conflicts of interest board and as annually determined by his or her agency head or employer, subject to review by the conflicts of interest board.

*See* § 1-15 of the Rules of the Conflicts of Interest Board (Rules of the City of New York, Title 53, Chapter 1) (clarifying which employees with the responsibilities set forth above are required to file financial disclosure reports).

* * *

> Upon receipt of an appeal, the Deputy Chair shall appoint one of its referees from a list jointly agreed to by the parties to render a recommendation as to whether an employee should be recertified or decertified.

(Ans., Ex. 5) Under the 2002 Agreement, the City and the Union had the ability to file a written objection to the OCB neutral's advisory recommendation with the City's Department of Investigations ("DOI"). The DOI Commissioner would then make the final determination regarding whether the employee would have to file a financial disclosure report.

Effective January 1, 2004, Local Law 43 amended portions of the Administrative Code relating to the annual disclosure of financial interests by certain officers and employees of the City. Among other things, Local Law 43 transferred the authority to determine who was required to file financial disclosure reports from DOI to the COIB.[3] The COIB also was given rulemaking responsibility to establish a financial disclosure appeals procedure. In pertinent part, Local Law 43 states:

> c. Procedures involving the filing of financial disclosure reports.
>
> * * *
>
> 2. Each agency head shall determine, subject to review by the conflicts of interest board, which persons within the agency occupy positions that are described in clauses three and four of subparagraph (a) of paragraph three of subdivision b of this section, and shall, prior to the date on which the filing of the report is required, inform such employees of their obligation to report. *The conflicts of interest board shall promulgate rules establishing procedures whereby any employee may seek review of the agency's*

[3] Local Law 43 also changed the universe of employees who could be required to file annual financial disclosure reports based on duties related to the negotiation or approval of contracts because it eliminated the word "directly" from the requirement that contract filers be "*directly* involve[d] the negotiation, authorization or approval of contracts . . . ." (Ans., Ex. 2) (emphasis added)

*determination that he or she is required to report.*

Administrative Code § 12-110(c)(2) (emphasis added).

During the legislative process, the New York City Council Committee on Standards & Ethics issued a report, which explained that the "proposed amendments would require the COIB to adopt rules establishing procedures for employees to seek review of their agency's determination that they fall within this filing category." (Ans., Ex. 7) The COIB's rulemaking responsibility to establish a financial disclosure appeals procedure was not prescribed by prior versions of the Administrative Code.

On March 15, 2007, the City and the Union agreed to a financial disclosure appeals procedure effective for a one year pilot period covering the 2006 calendar year filing period ("Pilot Program").[4] Under the Pilot Program, an employee was required to file a notice of appeal form with the agency's financial disclosure liaison and then submit a written statement to the agency head or request a meeting with the agency head. The agency would then review the employee's appeal and notify the employee and the COIB of its decision. If the agency approved the appeal, the COIB would remove the employee from its list of required filers. If, however, the agency denied the appeal, the employee could elect to file a further written appeal

---

[4] Pursuant to the Pilot Program, the parties "reserve[d] all their respective rights, including by statute, rule, regulation and/or under a collective bargaining agreement." (Pet., Ex. B) No such language was contained in the 1990 Agreement, the 2000 Agreement, or the 2002 Agreement. The parties further agreed that:

> If any of the provisions of this letter agreement are found to be in conflict with the New York City Administrative Code § 12-110 and/or Rules of the City of New York, Title 53, §§ 1-02, 1-14, and 1-15, or any other applicable rules and regulations, it is understood by the parties that such law, or the applicable rules and regulations, shall govern. Such conflict shall not impair the validity and enforceability of the remaining provisions of this letter agreement.

(*Id.*)

with the COIB, which would either reverse the agency's determination or refer the matter for a hearing before an OCB neutral. After holding a hearing, the OCB neutral would issue "a report[] and recommendation to the COIB as to whether the appeal should be granted or denied." (Pet., Ex. B) Upon receipt of the OCB neutral's report and recommendation, the COIB would make the final determination regarding whether to grant or deny the employee's appeal.

The Pilot Program provided that, after the one year pilot period, "the parties would meet to discuss the experience and to recommend modifications, if any, based on the application of this appeals process." (Pet., Ex. B) By e-mail dated July 16, 2008, the parties agreed to extend the Pilot Program until June 2009.[5] The Union alleges that, sometime after the expiration of the Pilot Program in June 2009, it learned that the COIB intended to unilaterally implement a new financial disclosure appeals procedure upon its members.

In the fall of 2010, the COIB commenced its rulemaking process pursuant to the City Administrative Procedure Act, § 2603(a) of Chapter 68 of the City Charter, and Administrative Code § 12-110(c)(2). Three public meetings and a public hearing were held concerning the proposed financial disclosure appeals rule. Notice of each meeting and the hearing as well as notice of an opportunity to comment on the proposed rule was published in the City Record and on the COIB's website. According to the City, no member of the public attended any of the meetings or the hearing. It is undisputed that the COIB informed the Union of its intent to

[5] According to the City, 83 employees filed 220 appeals with the COIB under the Pilot Program. Only one case, however, was heard by an OCB neutral. The case concerned seven employees at the New York City Office of Comptroller, and the OCB neutral recommended that they were not required to file financial disclosure reports for the 2006 calendar year. The COIB ultimately rejected the OCB neutral's Report and Recommendation, ordering the employees to file the financial disclosure reports in question. Upon review under Article 78 of the Civil Practice Law and Rules, the COIB's determination was upheld by the Supreme Court of the State of New York, New York County. *Matter of Tirado v. N.Y. City Conflicts of Interest Board*, Index No. 112955/2009 (Sup. Ct. N.Y. Co. July 1, 2010).

implement a new financial disclosure appeals procedure and sought to elicit the Union's input in the rulemaking process.

On December 27, 2010, the Union sent a letter to the City objecting to "the proposed rule change by the [COIB] regarding appeals of the requirement for financial disclosure." (Pet., Ex. C) The Union wrote that the City and the Union had "negotiated a process for members to appeal their requirement for financial disclosure to a neutral labor relations professional" and that the procedure had been in place since 2007. (*Id.*) The Union further wrote that the financial disclosure appeals procedure is a mandatory subject of bargaining and demanded that the City cease and desist from making any changes that apply to its members unless and until an agreement was reached at the bargaining table.

On January 18, 2011, the City replied to the Union's letter, declining the Union's demand for bargaining over changes to the financial disclosure appeals procedure because, according to the City, "current New York State and New York City law preempts collective bargaining in this area." (Pet., Ex. D) In the letter, the City explained that implementing legislation expressly requires the COIB to adopt an appeals rule and that, as early as October 2010, the COIB solicited the Union's input regarding the rulemaking.

On February 4, 2011, the COIB published a notice of adoption of the new appeals rule in the City Record and on its website. Thirty days following publication, the rule became effective. Similar to the 2002 Agreement and the Pilot Program, the new rule provides that any employee seeking to appeal an agency's determination of the requirement to file a financial disclosure report must first file a notice of appeal form with his or her agency's financial disclosure liaison. The employee then is required to submit a written statement and any supporting documentation to his or her agency head or agency head's designee, who determines whether or not the

employee is required to file. If the agency grants the employee's appeal, the employee will not be required to file a financial disclosure report. If the agency denies the employee's appeal, the employee may further appeal to the COIB and supplement the filing with additional requested materials. Unlike the 2002 Agreement and the Pilot Program, there is no process that permits an appeal hearing before an OCB neutral. Instead, the new appeal rules provide that the COIB Director of Financial Disclosure will review the matter and recommend to the COIB whether the agency's determination should be upheld or reversed. The agency and the employee may submit written comments to the COIB regarding the COIB Director's recommendation. The COIB has the sole discretion to request additional information or to order an evidentiary hearing before the full COIB, or, in the discretion of the Chair of the COIB, before a member or members of the COIB or before the Executive Director. The COIB will then issue its decision.

On May 17, 2011, the Union filed the instant petition, alleging that the City violated NYCCBL § 12-306(a)(1) and (4) by failing to bargain over the new financial disclosure appeals procedure. As relief for the alleged statutory violations, the Union requests that the Board order the City and the COIB to cease and desist from unilaterally changing the financial disclosure appeals procedure for DC 37 members, order the City and the COIB to bargain over any change and/or the practical impact of any change to the financial disclosure appeals procedure, and order any other relief that may be just and proper.

## POSITIONS OF THE PARTIES

### Union's Position

The Union argues that the City failed to bargain in good faith in violation of NYCCBL § 12-306(a)(1) and (4) by unilaterally changing the procedures for employees to appeal a

designation requiring the filing of an annual financial disclosure statement.[6] The new appeal procedure does not provide for a hearing before a neutral, and an employee's appeal now may be denied without a hearing of any kind because the COIB has the sole discretion regarding whether to order a hearing. As a consequence, the Union contends that due process and employee participation, including the ability to testify at a hearing, has been "materially, substantially[,] and significantly reduced." (Rep. ¶ 61) The Union asserts that the Board has consistently held that there is an obligation to bargain over procedures requiring employee participation in the disclosure of personal information, even where the procedures are necessary to achieve legitimate managerial concerns. Accordingly, the Union maintains that the appeals procedure is a mandatory subject of bargaining over which the City failed to bargain. The Union admits that the COIB sought to elicit the Union's input in the rulemaking process; however, the Union argues that the act of seeking the Union's input does not fulfill the City's bargaining obligation. The Union contends that the City's bargaining obligation is "compelling" because the parties had previously negotiated multiple appeals procedures. (Pet. Memo at 4)

The Union argues that the City's bargaining obligation was not preempted by statutory mandate because there is no language in the Administrative Code that evinces a plain and clear intent to remove this mandatory subject from the collective bargaining process. Instead, the

---

[6] NYCCBL § 12-306(a) provides, in pertinent part:

> It shall be an improper practice for a public employer or its agents:
>
> (1) to interfere with, restrain or coerce public employees in the exercise of their rights granted in section 12-305 of this chapter;
>
> * * *
>
> (4) to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees[.]

Administrative Code left room for negotiation over the appeals procedure, which is evidenced by the fact that the City bargained over the appeals procedure in 2006 and 2007, after the COIB was directed by statute to promulgate such rules. The Union argues that the cases cited by the City are distinguishable because they involved the content of statutes that clearly preempted the duty to bargain. Although the Administrative Code authorizes the COIB to promulgate rules establishing an appeals procedure, it does not expressly or implicitly remove the subject from collective bargaining.

Further, the Union contends that the Pilot Program did not waive or alter the Union's rights under the NYCCBL to bargain over the financial disclosure appeals procedure. Rather, upon its expiration, the Pilot Program expressly reserved to the parties all their respective rights, including by statute, rule, regulation, and/or collective bargaining agreement. Therefore, the Union argues that, when the Pilot Program expired, the COIB remained bound by the parties' last recorded agreement regarding the financial disclosure appeal process and had an obligation to bargain over any changes to the procedure.

**City's Position**

The City argues that it did not violate NYCCBL § 12-306(a)(1) and (4) because the financial disclosure appeals rule adopted by the COIB was implemented pursuant to a statutory mandate. The City explains that the obligation to bargain over terms and conditions of employment may be preempted where an employer's actions are subject to a statutory mandate. According to the City, Local Law 43 clearly and unequivocally required the COIB to promulgate a rule establishing procedures for financial disclosure appeals. The City contends that the plain language of Local Law 43 and the New York City Council Committee of Standards & Ethics report evidence a clear intent to preclude bargaining over the matter. Thus, under Local Law 43,

the financial disclosure appeals procedure is a non-mandatory subject of bargaining, and the City had no obligation to bargain.

Further, assuming that a duty to bargain existed, the City and the COIB did not violate NYCCBL § 12-306(a)(1) and (4) based on the fact that the parties previously negotiated the Pilot Program. The one year Pilot Program covered the 2006 calendar year filing period and had an explicit expiration date. Thereafter, the parties expressly agreed to extend the expiration date of the Pilot Program until June 2009. The Pilot Program did not create any post-expiration obligations, and, additionally, the *status quo* provisions of the NYCCBL do not apply because the Pilot Program contained a valid sunset provision. Furthermore, even if there was no sunset provision, the COIB could implement a new financial disclosure appeals procedure because it is not a mandatory subject of bargaining. Accordingly, following the expiration of the Pilot Program, the COIB had the authority to promulgate a financial disclosure appeals procedure pursuant to the statutory directive of Local Law 43, and any allegation of a refusal to bargain is unfounded.

Moreover, the City argues that any change that the COIB made to the financial disclosure appeals procedure is *de minimis* because the new rule has little or no effect on the final determination of an appeal. According to the City, the rule promulgated by the COIB made only minor adjustments and continues to allow for multiple levels of review by individual agencies and the COIB. The fact that the process no longer includes review by an OCB neutral is not determinative because the OCB neutral only acted as a fact-finder, providing non-binding recommendations to the COIB, which made the final determination. Thus, the substance of the right to appeal has not been abolished or altered, but, rather, one step in the appeals procedure

has been minimally changed, and, therefore, employees' participation in the appeals process has not changed substantially.

**DISCUSSION**

It is undisputed that the COIB made a unilateral change when it adopted a new financial disclosure appeals procedure in early 2011. We find that the unilateral change to the financial disclosure appeals procedure was not *de minimis* because the decision to no longer provide employees with a hearing before an OCB neutral materially impacts employees' due process and participation in the appeal procedure. *See DC 37*, 4 OCB2d 43, at 8-9 (BCB 2011). Therefore, in order to assess whether the City committed an improper practice, the sole question for this Board to decide is whether the City had a duty to bargain over the changes that it made to the financial disclosure appeals procedure. For the following reasons, we find that the City had a duty to bargain over the financial disclosure appeals procedure.

NYCCBL § 12-307(a) requires public employers and employee organizations to bargain in good faith over wages, hours, and working conditions, as well as "any subject with a significant or material relationship to a condition of employment." *Municipal Highway Inspectors L. Union 1042*, 2 OCB2d 12, at 7 (BCB 2009); *see also DC 37*, 79 OCB 20, at 9 (BCB 2007); *NYSNA*, 51 OCB 37, at 8 (BCB 1993). The duty to bargain in good faith includes the duty to negotiate until an agreement is reached or the statutory impasse procedures are exhausted. *DC 37*, 4 OCB2d 19, at 22 (BCB 2011). Pursuant to NYCCBL § 12-306(a)(4), a public employer commits an improper practice if it fails or refuses to bargain over matters within the scope of mandatory bargaining. *See DC 37, L. 1457*, 1 OCB2d 32, at 26 (BCB 2008). A

unilateral change to a mandatory subject of bargaining amounts to a refusal to bargain in good faith. *See DC 37, L. 1457*, 77 OCB 26, at 12 (BCB 2006).

The New York State Court of Appeals has long recognized the "strong and sweeping" public policy in favor of collective bargaining and the "presumption . . . that all terms and conditions of employment are subject to mandatory bargaining." *Matter of City of Watertown v. State of N.Y. Pub. Empl. Relations Bd.*, 95 N.Y.2d 73, 79 (2000); *see also Matter of City of N.Y. v. Patrolmen's Benevolent Assoc.*, 14 N.Y.3d 46, 58 (2009). Indeed, even where substantive decisions are entrusted by statute to a public employer, the procedures appurtenant to the decisions may nonetheless constitute mandatory subjects of bargaining. *See Matter of City of Watertown*, 95 N.Y.2d at 79-81; *DC 37*, 79 OCB 37, at 11 (BCB 2007). Thus, "[w]hile the City has the right to make and implement decisions concerning its management prerogatives without bargaining, the procedures for implementing decisions that affect terms and conditions of employment are mandatorily negotiable." *DC 37*, 75 OCB 13, at 11 (BCB 2005).

For example, in *Matter of City of Watertown*, the Court of Appeals held that, while a municipality's initial determination of disability status was a non-mandatory subject of bargaining, the procedures for challenging the determination had to be negotiated. 95 N.Y.2d at 79-80. Similarly, we found that a union had the right to request bargaining over the procedures implementing the requirements of Chapter 68, the New York City Conflicts of Interest Law. *Doctors Council*, 69 OCB 31, at 10 (BCB 2002). *See Local 333, United Marine Division, ILA*, 3 OCB2d 11, at 12 (BCB 2010) (ordering the City to bargain "over the implementation of federal drug testing regulations to the extent that compliance with them permits discretion in how to achieve such compliance"); *DC 37*, 77 OCB 34, at 14 (BCB 2006) (finding a duty to bargain over procedures for requesting FMLA leave); *DC 37*, 75 OCB 14, at 15 (BCB 2005) (holding

that a change in residency verification procedures may not be implemented unilaterally even though enforcement of the statutory residency requirement is a management right); *LBA*, 71 BCB 23 (BCB 1999) (finding procedures that implement the verification of overpayment of nonresident tax claims under City Charter § 1127 mandatorily negotiable), *affd.*, *Matter of City of N.Y. v. Lieutenants Benevolent Assn.*, 285 A.D.2d 329 (1st Dept. 2001).

Although procedures affecting terms and conditions of employment, such as the financial disclosure appeals procedure, generally are mandatory subjects of bargaining, the City contends that any obligation to bargain over the financial disclosure appeals procedure that may have existed prior to the enactment of Local Law 43 was preempted by the legislature's amendment to the Administrative Code. We disagree. "[I]t is well established that compliance with statutory mandates other than the NYCCBL does not, of its own weight, discharge distinct statutory obligations arising under the NYCCBL." *DC 37, L. 376*, 1 OCB2d 37, at 10 (BCB 2008), *affd.*, *Matter of City of N.Y. v. N.Y. City Bd. of Collective Bargaining*, Index No. 403010/08 (Sup. Ct. N.Y. Co., Oct. 23, 2009) (Lehner, J.). While we have recognized that bargaining is not permitted when a subject has been preempted by statute, the "strong and sweeping" public policy supporting collective bargaining and the NYCCBL's presumption in favor of it require that we not find preemption and "contravene our own expressed statutory mandate" unless there is "clear evidence that a statute . . . was designed to remove a particular subject from the ambit of mandatory collective bargaining . . . ."[7] *United Marine Division, L. 333, ILA*, 2 OCB2d 44, at 17; *see also UFA*, 43 OCB 4, at 8-9 (BCB 1989), *affd.*, *Matter of*

[7] The Court of Appeals has similarly explained that "in order to overcome the strong State policy favoring the bargaining of terms and conditions of employment, any implied intention that there not be mandatory negotiation must be 'plain and clear', or 'inescapably implicit' in the statute. Anything less threatens to erode and eviscerate the mandate for collective bargaining." *Matter of Webster Cent. Sch. Dist. v. Pub. Empl. Relations Bd. of State of N.Y.*, 75 N.Y.2d 619, 627 (1990) (citations omitted).

*Uniformed Firefighters Assn. v. Office of Collective Bargaining*, Index No. 12338/89 (Sup. Ct. N.Y. Co. Oct. 30, 1989), *affd.*, 163 A.D.3d 251 (1st Dept. 1990). Here, there is no evidence that the City Council intended to remove the financial disclosure appeals procedure from collective bargaining. Neither the statutory language nor the legislative history support an inference that the elimination of collective bargaining over the financial disclosure appeals procedure was contemplated, let alone intended, by the City Council's amendment to the Administrative Code.

Bargaining may be preempted by statute in the limited circumstance where the statutory provision contains "so unequivocal a directive to take certain action that it leaves no room for bargaining." *Matter of Bd. of Educ. of the Cent. Sch. Dist. of the City of N.Y. v. N.Y. State Pub. Empl. Relations Bd.*, 75 N.Y.2d 660, 668 (1990). Thus, "[t]here is no duty to negotiate where explicit statutory mandates dictate conduct to such an extent that a public employer cannot impose variations of such conduct." *City of Schenectady*, 19 PERB ¶ 3051, at 3108 (1986), *affd.*, *Matter of City of Schenectady v. N.Y. State Pub. Empl. Relations Bd.*, 135 Misc.2d 1088 (Albany Co. Sup. Ct. 1986), *affd.*, 132 A.D.2d 242 (3d Dept. 1987), *app. denied*, 71 N.Y.2d 803 (1988). This Board was presented with such a scenario in *PBA*, 39 OCB 41 (BCB 1987). There, we found that a statute left no room for bargaining over the composition of a civilian complaint review board because the statute explicitly stated that "[t]he [civilian complaint review] board shall consist of twelve members, of whom six shall be members of the public so that one resident from each of the five boroughs of the city and one citywide representative are members." *PBA*, 39 OCB 41, at 7-8.

By contrast, a statutory directive to promulgate rules but which affords unfettered discretion as to the content of those rules does not remove that content from the scope of bargaining. *See Matter of Bd. of Educ.*, 75 N.Y.2d at 668. Here, the City Council did not enact

"so unequivocal a directive to take certain action that it leaves no room for bargaining." *Id.* The statute only prescribes that rules establishing a financial disclosure appeals procedure shall be promulgated; the nature and extent of the procedures applicable to financial disclosure appeals are left to the COIB to determine. *See State of N.Y.*, 37 PERB ¶ 6601, at 6605 (2004) (ALJ) (following *Matter of Board of Education* and finding no basis to conclude that the word "shall" as applied to procedural rule-making authority relieves the state of its duty to negotiate). Similarly, in *Matter of Board of Education*, "the statute [] explicitly [gave] the Board wide discretion concerning the substance of the reporting requirements" that it was directed to prescribe.[8] 75 N.Y.2d at 668. Where a statutory directive grants broad discretion to the employer in promulgating rules, it leaves sufficient room for bargaining to take place. *Cf. Matter of County of Chautauqua v. Civil Serv. Employees Assn.*, 8 N.Y.3d 513, 521-522 (2007) (following *Matter of Board of Education* and finding that a statutory provision limiting bumping rights did not preclude the arbitration of a grievance concerning layoffs, although the remedy available at arbitration may be constrained by the statute).

Further, in finding no explicit statutory prohibition against bargaining, the Court of Appeals in *Matter of Board of Education* noted that "[t]he Board itself viewed its power to act under the statute as discretionary and it refrained for nine years from acting at all." 75 N.Y.2d at 668. In the present matter, it is undisputed that for many years the parties negotiated a financial disclosure appeals procedure. The parties' longstanding practice of bargaining over the financial

---

[8] In *Matter of Board of Education*, the Court of Appeals considered whether there was a duty to bargain over the substance of employee disclosure requirements in light of two statutory directives mandating the New York City School Board to prescribe regulations and bylaws requiring employees to disclose certain financial interests. The Court of Appeals found that there was a duty to bargain over the substance of the reporting requirements set forth in one of the two statutory provisions because the statute afforded the New York City School Board discretion to determine the content of the financial reports.

disclosure appeals procedure continued after the enactment of Local Law 43. In addition, the COIB waited approximately seven years before unilaterally promulgating a new procedure allegedly in accordance with the statutory directive.

Because Local Law 43 left room for bargaining over the substance of the financial disclosure appeals procedure, the COIB "may not insulate its actions from compliance with applicable requirements of the NYCCBL merely by demonstrating that its [promulgation of the new procedures] were in accord with statutory law." *Doctors Council*, 69 OCB 31, at 10; *see also DC 37, L. 376*, 1 OCB2d 37, at 10 (BCB 2008), *affd.*, *Matter of City of N.Y. v. N.Y. City Bd. of Collective Bargaining*, Index No. 403010/08 (Sup. Ct. N.Y. Co., Oct. 23, 2009) (Lehner, J.). For the reasons stated above, we find that the financial disclosure appeals procedure is a mandatory subject of bargaining, and that the City committed an improper practice by unilaterally implementing a new procedure. Therefore, we grant the Union's petition.

**ORDER**

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby

ORDERED, that the verified improper practice petition filed by District Council 37, AFSCME, AFL-CIO, docketed as BCB-2959-11, is granted; and it is further

ORDERED, that the City of New York and the New York City Conflict of Interests Board cease and desist from enforcing the rule, adopted in 2011, establishing a new financial disclosure appeals procedure; and it is further

ORDERED, that the City of New York and the New York City Conflicts of Interest Board bargain over the financial disclosure appeals procedure to the extent required by the New York City Collective Bargaining Law.

Dated: March 6, 2012
New York, New York

MARLENE A. GOLD
CHAIR

GEORGE NICOLAU
MEMBER

CAROL A. WITTENBERG
MEMBER

M. DAVID ZURNDORFER
MEMBER

CHARLES MOERDLER
MEMBER

GABRIELLE SEMEL
MEMBER