EXHIBIT 5

*UFA*, 10 OCB2d 5 (BCB 2017)
(IP) (Docket No. BCB-4150-16)

*Summary of Decision*: Petitioner alleged that the City and the FDNY violated NYCCBL § 12-306(a)(1), (4), and (5) by unilaterally changing the value of a day's pay for disciplinary fines when the parties' collective bargaining agreements were in *status quo*. The City argued that the Board lacks jurisdiction, the petition is untimely, and that the value of a day's pay for disciplinary fines is not a mandatory subject of bargaining. The Board found that it has jurisdiction over Petitioner's claims and that the petition is timely. The Board also found that the value of a day's pay for disciplinary fines is a mandatory subject of bargaining and that the City violated NYCCBL § 12-306(a)(1), (4), and (5) when it changed its value during the period when the parties' collective bargaining agreements were in *status quo*. Accordingly, the petition was granted. *(Official decision follows.)*

---

OFFICE OF COLLECTIVE BARGAINING
BOARD OF COLLECTIVE BARGAINING

In the Matter of the Improper Practice Proceeding

*-between-*

UNIFORMED FIREFIGHTERS ASSOCIATION, LOCAL 94, IAFF, AFL-CIO,

*Petitioner,*

*-and-*

THE CITY OF NEW YORK and
THE FIRE DEPARTMENT OF THE CITY OF NEW YORK,

*Respondents.*

---

<u>DECISION AND ORDER</u>

On February 9, 2016, the Uniformed Firefighters Association, Local 94, IAFF, AFL-CIO

("Union") filed a verified improper practice petition against the City of New York ("City") and

the Fire Department of the City of New York ("FDNY").[1]  The Union alleges that the City and the

FDNY violated § 12-306(a)(1), (4), and (5) of the New York City Collective Bargaining Law (City

of New York Administrative Code, Title 12, Chapter 3) ("NYCCBL") by unilaterally changing

the value of a day's pay for disciplinary fines when the parties' collective bargaining agreements

were in *status quo*.  The City argues that the Board lacks jurisdiction, the petition is untimely, and

that the value of a day's pay for disciplinary fines is not a mandatory subject of bargaining.  The

Board finds that it has jurisdiction over the Union's claims and that the petition is timely.  The

Board also finds that the value of a day's pay for disciplinary fines is a mandatory subject of

bargaining and that the City violated NYCCBL § 12-306(a)(1), (4), and (5) when it changed its

value during the period when the parties' collective bargaining agreements were in *status quo*.

Accordingly, the petition is granted.


## BACKGROUND

The Union is the certified collective bargaining representative for all Firefighters, Fire

Marshalls, Marine Wipers, Pilots, and Marine Engineers ("Uniformed Employees") employed by

the FDNY and is a party to three collective bargaining agreements ("Agreements") covering these

titles.  The prior Agreements expired on July 31, 2010 and July 27, 2011, and remained in effect

pursuant to the *status quo* provision of NYCCBL § 12-311(d) from their expiration through August

5, 2015, when the parties executed a memorandum of agreement for the current Agreements.  The

---

[1] At the request of the parties, the matter was held in abeyance for approximately six months as they attempted to resolve the dispute.  On November 7, 2016, the Trial Examiner was advised that the parties were unable to resolve the matter.

current Agreements cover the periods of August 1, 2010 to July 31, 2017 for Firefighters, Fire

Marshals, and Wipers and August 8, 2011 to July 27, 2018 for Pilots and Marine Engineers.

PA/ID 3-75 and Chapter 26

The Command Discipline Policy and Procedures ("PA/ID 3-75") establishes an informal

disciplinary procedure for Uniformed Employees.[2]  Its purpose is to "encourage[] the resolution

of disciplinary problems at the unit level by treating them as . . . internal administrative proceedings

rather than [] formal adversar[ial] proceedings."  (Ans., Ex. 5)  PA/ID 3-75 describes the

circumstances when Command Discipline is appropriate, provides for the use of disciplinary fines,

and establishes a penalty point system.[3]  For example, violations for failing to perform assigned

duties are assigned between one and seven penalty points.  PA/ID 3-75 also requires an employee's

consent prior to the imposition of Command Discipline and affords the employee an opportunity

to consult with union representatives or an attorney prior to accepting a penalty.  In circumstances

when a commanding officer determines that a disciplinary fine is appropriate and an employee

consents, funds are deducted from the employee's paycheck on the basis of one day of pay for

each penalty point, up to a maximum of seven days.  In instances when Command Discipline is

deemed inappropriate or when an employee does not accept a Command Discipline, the matter

proceeds to a formal disciplinary proceeding.

---

[2] PA/ID stands for Personnel Administrative Information Directive.

[3] PA/ID 3-75 lists 21 instances in which Command Discipline is appropriate, including "failure to
perform assigned duties, failure to observe safety precautions in response and in operations, . . .
failure to comply with Department regulations, directives, bulletins, and procedures, . . . and any
infraction when ordered by the Bureau of Investigations and Trials on behalf of the Fire
Commissioner or Chief of Department."  (Ans., Ex. 5)

Chapter 26 of the FDNY Regulations ("Chapter 26") governs the FDNY's formal disciplinary proceedings for Uniformed Employees. It establishes the process of preparing, serving, investigating, and resolving formal disciplinary charges.[4] The process incorporates a pre-trial conference, at which the employee charged with misconduct is afforded an opportunity to respond to the charges before a presiding officer designated by the FDNY Commissioner. After the pre-trial conference, the presiding officer determines whether to sustain the charges and, where appropriate, recommends a penalty for the employee to consider. Chapter 26 disciplinary fines are levied in increments of "days of pay." (Ans., Ex. 8) In instances when a presiding officer recommends a disciplinary fine and the employee accepts the fine, a settlement and stipulation ("Stipulation") is executed by the employee and the employee's attorney, union representative, or witness, and the FDNY Commissioner or his designee. All Stipulations are subject to the FDNY Commissioner's approval. In instances when an employee rejects a recommended penalty or the FDNY Commissioner rejects a Stipulation, the matter proceeds to hearing before the New York City Office of Administrative Trials and Hearings ("OATH"). OATH issues a report and recommendation on the written charges and, where appropriate, recommends a penalty to the FDNY Commissioner. The FDNY Commissioner can accept, reject or modify OATH's recommendation. *See* NYC Charter § 487(a).

---

[4] PA/ID 3-75 lists 10 instances appropriate for formal disciplinary proceedings, including "[v]iolations of law resulting in conviction for felony or misdemeanor, . . . unfitness for duty by reason of use of intoxicants or drugs, . . . loss or misuse of firearm, . . . and when the accused member has been the subject of previous discipline and the member's attitude or behavior indicate little or no inclination to change. . . ." (Ans., Ex. 5)

Change in the FDNY's Method of Calculating Disciplinary Fines

The value of a day of pay for disciplinary fines under Command Discipline and Chapter

26 is not governed by written rules, regulations, policies, or the parties' Agreements.   It is

undisputed that prior to July 2013, the value of a day of pay for disciplinary fines was 1/365th of

annual salary for Uniformed Employees and 1/261st of annual salary for all other FDNY

employees.   In July 2013, the FDNY Commissioner changed the value of a day of pay for

disciplinary fines for Uniformed Employees from 1/365th of annual salary to 1/261st of annual

salary ("New Calculation").   According to the City, the change was implemented to establish

internal equity for disciplinary fines between the Uniformed and all other FDNY employees.   It is

undisputed that the FDNY implemented the New Calculation without notice to the Union during

the period when the parties' Agreements were in *status quo*.   According to the Union, it first

became aware of the New Calculation on November 20, 2015.

The City maintains that between July 2013 and the filing of the instant petition, the FDNY

levied approximately 30 disciplinary fines on Uniformed Employees.   It is undisputed that several

of these fines were levied pursuant to Stipulations, which the Union signed or had an opportunity

to review.   As an example, the City submitted a signed Stipulation dated April 10, 2014 ("April

2014 Stipulation") that provides, in relevant part: "Firefighter [ ] accepts as a penalty for the above

misconduct, the imposition of fifteen (15) *days of pay*, to be deducted at the rate of one (1) day per

pay period for fifteen (15) consecutive pay periods."   (Ans., Ex. 8) (emphasis added) This

Stipulation does not include the calculation methodology, the dollar amount of the disciplinary

fine, or any reference to the New Calculation.

6

## POSITIONS OF THE PARTIES

### Union's Position

The Union argues that the Petition is timely because it was filed within four months of the date it learned of the New Calculation. The Union asserts that it first became aware of the New Calculation on November 20, 2015, and that it did not have direct or imputed knowledge of the New Calculation prior to that date. It maintains that the New Calculation was implemented without notice to the Union and that the post-July 2013 Stipulations do not contain a mathematical formula for calculating disciplinary fines or otherwise include language that put the Union on notice of the New Calculation.

The Union also denies the City's assertion that this Board does not have jurisdiction over its claim, arguing that the FDNY violated NYCCBL § 12-306(a)(1), (4), and (5) by unilaterally implementing the New Calculation for Uniformed Employees.[5]

---

[5] NYCCBL § 12-306 states, in pertinent part:

> It shall be an improper practice for a public employer or its agents:
>
> (1) to interfere with, restrain or coerce public employees in the exercise of their rights granted in section 12-305 of this chapter;
>
>          *    *    *
>
> (4) to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees. . . .
>
> (5) to unilaterally make any change to any mandatory subject of collective bargaining . . . during the period of negotiations. . . .

NYCCBL § 12-305 provides, in pertinent part: "Public employees shall have the right to self-organization, to form, join or assist public employee organizations, to bargain collectively through

The Union offers two arguments to support its claim that the method of calculating the value of a day's pay for disciplinary fines is a mandatory subject of bargaining. First, it asserts that the value of a day's pay is a measure of wages, a mandatory subject of bargaining under NYCCBL § 12-307(a).[6] Alternatively, the Union maintains that the method of calculating the value of a day for disciplinary fines is a mandatorily negotiable disciplinary procedure that is outside the scope of the FDNY Commissioner's statutory authority to discipline.

In response to the City's argument, the Union asserts that the FDNY Commissioner's statutory authority to discipline does not transform the entire subject of discipline into a prohibited subject of bargaining. It argues that this statutory authority does not overcome the well-established presumption in favor of collective bargaining, nor render all matters related to discipline inextricably intertwined with the FDNY Commissioner's statutory authority to discipline. Rather, it maintains that bargaining over the value of a day's pay for disciplinary fines does not restrict the FDNY Commissioner's statutory disciplinary authority and, therefore, requires negotiation. The Union further asserts that the cases cited by the City do not apply because their scope is limited to drug testing "methodology" and drug "testing triggers," which are not at issue here.

_____

certified employee organizations of their own choosing and shall have the right to refrain from any or all of such activities."

[6] NYCCBL § 12-307(a), in relevant part, provides:

> [P]ublic employers and certified or designated employee organizations shall have the duty to bargain in good faith on wages (including but not limited to wage rates, pensions, health and welfare benefits, uniform allowances and shift premiums), hours (including but not limited to overtime and time and leave benefits), working conditions. . .

The Union also argues that the City does not have a managerial prerogative under NYCCBL § 12-307(b)[7] to modify the value of a day. It asserts that the City's managerial prerogative is not an unfettered right and that there is a strong presumption in favor of negotiating over the value of a day's pay.

Finally, the Union argues that the unilateral change to the value of a day's pay for disciplinary fines occurred at a time when the parties' collective bargaining agreements were in *status quo*, in violation of NYCCBL § 12-306(a)(5) and, derivatively, NYCCBL § 12-306(a)(1).

As a remedy, the Union requests that the Board order the FDNY to: (1) cease and desist from changing the value of a day's pay for disciplinary fines from 1/365[th] of annual pay; (2) rescind any directive and/or decision to change the value of a day's pay for disciplinary fines; (3) return to the *status quo ante*; (4) make whole all affected employees; and (5) post notices of NYCCBL violations.[8]

---

[7] NYCCBL § 12-307(b) provides:

> It is the right of the city, or any other public employer, acting through its agencies, to determine the standards of services to be offered by its agencies; . . . take disciplinary action; relieve its employees from duty because of lack of work or for other legitimate reasons; . . . take all necessary actions to carry out its mission in emergencies; and exercise complete control and discretion over its organization and the technology of performing its work. Decisions of the city or any other public employer on those matters are not within the scope of collective bargaining, but, notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety, are within the scope of collective bargaining.

[8] After the petition was filed, the City represented that it made whole all Uniformed Employees who received disciplinary fines between July 2013 and April 20, 2016, that were not aware of the amount of the disciplinary fine.

**City's Position**

        The City argues that an improper practice petition is "not the appropriate mechanism" and that the Board is "not the appropriate forum" for the instant dispute because some of the disciplinary fines at issue were levied pursuant to voluntary settlement agreements.  (Ans. ¶ 78) The City also argues that the petition is untimely under NYCCBL § 12-306(e) and §1-07(b)(4) of the Rules of the Office of Collective Bargaining (Rules of the City of New York, Title 61, Chapter 1) ("OCB Rules")[9] because Union members incurred disciplinary fines prior to October 9, 2015 pursuant to Stipulations that the Union reviewed and/or signed.  The City points to the April 2014 Stipulation as evidence of the Union's knowledge of the New Calculation prior to October 9, 2015, which is four months before the petition was filed.

        The City also argues that it did not violate NYCCBL § 12-306(a)(1), (4), and (5) because changing the value of a day for disciplinary fines is not a mandatory subject of bargaining.  First, the City maintains that the New Calculation does not constitute a change to a term and condition of employment.   It argues that disciplinary fines and their calculation are not wages under NYCCBL § 12-307(a).  Rather, it asserts that such fines are disciplinary penalties and that the

---

[9] NYCCBL § 12-306(e) provides, in relevant part:

> A petition alleging that a . . . public employee organization or its agents has engaged in or is engaging in an improper practice in violation of this section may be filed with the board of collective bargaining within four months of the occurrence of the acts alleged to constitute the improper practice or the date the petitioner knew or should have known of said occurrence.

OCB Rule § 1-07(b)(4) provides, in relevant part: "A petition alleging that. . . a public employee organization. . . has engaged in or is engaging in an improper practice violation of [§] 12-306(e) of the statue may be filed with the Board within four (4) months thereof. . . ."

implementation of the New Calculation falls within the FDNY Commissioner's authority to determine disciplinary fines pursuant to § 487(a) of the New York City Charter and New York City Administrative Code § 15-113.[10]   It asserts that implementing the New Calculation "represents the imposition of the discipline itself," and is not a mandatorily negotiable procedure. (Ans. ¶ 69-70)  Finally, the City asserts that even if the implementation of the New Calculation is not the discipline itself, it is still encompassed within the Commissioner's disciplinary authority under § 487(a) of the New York City Charter and New York City Administrative Code § 15-113, and is a prohibited subject of bargaining because it is inextricably intertwined with this statutory authority.  Second, the City argues that the New Calculation constitutes an exercise of the FDNY's managerial rights under NYCCBL § 12-307(b).

Consequently, the City requests that the Board dismiss the petition.

---

[10] NYC Charter § 487(a) provides that "[t]he commissioner shall have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof . . . ."

Chapter I, § 15 ("Fire Department") of the New York Administrative Code provides, in relevant part:

§ 15-113 Discipline of members; removal from force.

The commissioner shall have power, in his or her discretion on conviction of a member of the force of any legal offense or neglect of duty or disobedience of orders or incapacity, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer of member, or other breach of discipline, to punish the offending party by reprimand, forfeiture and withholding of pay for a specified time, or dismissal from the force; but not more than ten days' pay shall be forfeited and withheld for any offense.

## DISCUSSION

As a preliminary matter, we reject the City's assertion that the Board is the wrong "forum" and that an improper practice charge is the wrong "mechanism" for the Union to advance the instant claim because it involves voluntary settlement agreements.[11]  (Ans., ¶ 78)  The Union claims that the FDNY unilaterally changed a mandatory subject of bargaining, which this Board is authorized to remedy.  *See* NYCCBL § 12-309(a)(4).  Moreover, the scope of the improper practice petition is not limited to voluntary settlement agreements.  It also includes disciplinary fines unilaterally imposed by the FDNY Commissioner following formal disciplinary proceedings. Consequently, we find that the Board has jurisdiction over the instant improper practice.

Next, we address the timeliness of the Union's claims.  *See Nardiello*, 2 OCB2d 5, at 28 (timeliness is a threshold question).  Claims of improper practices must be made within four months by the "party having actual or constructive knowledge of definitive acts which put it on notice of the need to complain."  *DC 37,* 1 OCB2d 21, at 12 (BCB 2008) (citing *DC 37*, 77 OCB 6, at 13 (BCB 2006)).  *See also USA, Local 831*, 3 OCB2d 27, at 6-7 (BCB 2010); OCB Rules § 1-07(b)(4) (stating that a petition must be filed within four months of an alleged violation).  Any claims prior to "the four month period preceding the filing of the [p]etition are not properly before the Board and will not be considered."  *Okorie-Ama*, 79 OCB 5, at 13 (BCB 2007).  The party asserting the statute of limitations defense has the burden of establishing such notice.  *See USA,* 3 OCB2d 27, at 7 (citing *Shelley v. Mintz, et al.,* 899 N.Y.S.2d 63 (N.Y. Co. Sup. Jul. 10, 2009)).

---

[11] The City cites no authority for this assertion.  Neither does the City explain the basis for its argument, identify the correct forum, nor the appropriate mechanism for advancing the Union's claim.

We find that the Union's claims are timely because the Union did not have actual or constructive notice of the New Calculation prior to November 20, 2015, the date the Union first became aware of the New Calculation.  The City acknowledges that it did not provide the Union with any formal notice of the New Calculation but points to the April 2014 Stipulation as evidence of the Union's prior knowledge.  However, the April 2014 Stipulation references only "days of pay."  It does not indicate the calculation methodology or the amount of the disciplinary fine, nor does it include any language that otherwise put the Union on notice of the New Calculation.  (Ans., Ex. 8)  We also reject the City's argument that the passage of more than two years, without additional evidence, establishes the Union's constructive notice of the New Calculation.  *See UPOA*, 37 OCB 44 (1986) (passage of nine years did not establish constructive notice of a change). There is no evidence to establish that any of the impacted employees were aware that the value of a day's pay for disciplinary fines had changed or that such evidence would establish a duty to inform the Union of the amount of the fines deducted from their paychecks.  *See USA, Local 831*, 3 OCB2d 27, at 8-9 (finding no constructive notice when there was no evidence that employees were aware of change and that the employees had no obligation to report their payment of a fee to the union).  Here, the Union asserts that it first learned of the New Calculation on November 20, 2015.  Since the City has failed to demonstrate that the Union was on notice of the New Calculation prior to November 20, 2015, and the petition was filed within four months of that date, the Union's claim is timely.

Next, we turn to the substantive claim.  NYCCBL § 12-306(a)(4) makes it an improper practice to fail to bargain in good faith on wages, hours, and working conditions, as well as "any subject with a significant or material relationship to a condition of employment."  *UFT, Local 2*,

4 OCB2d 54, at 10 (BCB 2011) (citing *Municipal Highway Inspectors L. Union* 1042, 2 OCB2d 12, at 7 (BCB 2009)); *see also DC 37*, 79 OCB 20, at 9 (BCB 2007); *NYSNA*, 51 OCB 37, at 8 (BCB 1993). We have long held that a unilateral change to a mandatory subject of bargaining is an improper practice because it constitutes a refusal to bargain in good faith. *See ADW/DWA*, 7 OCB2d 26, at 18 (BCB 2014); *DC 37*, 79 OCB 20, at 9 (BCB 2007). The party asserting a unilateral change to a mandatory subject of bargaining carries the burden of demonstrating "that (i) the matter sought to be negotiated is . . . a mandatory subject and (ii) the existence of such a change from existing policy." *ADW/DWA*, 7 OCB2d 26, at 18 (quoting *DC 37, L. 436*, 4 OCB2d 31, at 13 (BCB 2011)) (internal quotation marks omitted). This Board will accept evidence of a past practice when determining whether or not a change has taken place. In determining whether a union has established a past practice, we look at whether the "practice was unequivocal and existed for such a period of time that unit employees could reasonably expect the practice to continue unchanged." *Local 621, SEIU*, 2 OCB2d 27, at 10 (quoting *County of Nassau*, 38 PERB ¶ 3005 (2005)).

Here, it is undisputed that at all times prior to July 2013, the value of a day's pay for disciplinary fines for Uniformed Employees was 1/365th of annual pay. As such, the practice was unequivocal and continued for such a period of time that Uniformed Employees could reasonably expect the value of a day's pay for disciplinary fines would continue to be 1/365th of annual pay. Further, the City acknowledges that effective July 2013, the FDNY changed the value of a day's pay for disciplinary fines to 1/261st of annual pay. Consequently, it is undisputed that the value of a day's pay for disciplinary fines at 1/365th of annual salary for Uniformed Employees was unilaterally changed to 1/261st of annual salary in July 2013.

It is well established that the FDNY Commissioner has the "sole and exclusive power" to determine disciplinary penalties under § 487(a) of the New York City Charter and § 15-113 of the New York Administrative Code. *See L. 854, UFOA,* 57 OCB 25 (BCB 1996) (finding that the determination of disciplinary penalties for alcohol and drug related offenses are not mandatory subjects of bargaining because they are reserved to the FDNY Commissioner by § 15-113 of the New York Administrative Code); *Matter of Roberts v. New York City Off. of Collective Bargaining,* 976 N.Y.2d 450, 455 (2013) (finding that the implementation of a zero tolerance policy for drug related offenses is not a mandatory subject of bargaining "because [New York City Charter § 487(a)] vests disciplinary authority over such matters with the fire commissioner" and it "goes to the FDNY's core mission and involves public safety"). However, it is also true that not everything relating to the discipline of members of the uniformed service is outside the scope of collective bargaining. Indeed, the Court of Appeals has taken a measured approach to defining the scope of the police commissioner's disciplinary authority. *See Matter of the City of New York v. Patrolmen's Benevolent Assn. of the City of New York, Inc.,* 14 N.Y. 3d 46, 59-60 (2009) (explaining that the Court was "not saying that every step that the Commissioner takes or every decision that he makes to implement drug testing is excluded from bargaining" and declining to determine "the full extent or the limits of [the Commissioner's] unilateral disciplinary authority"). ("*City of New York v. PBA*"); *see also L. 854, UFOA*, 45 OCB 5 (BCB 1990) (finding that an FDNY prohibition on soliciting or contributing to uniformed employee disciplinary fines relates to how employees use their wages and goes beyond the scope of the Commissioner's disciplinary authority); *Matter of City of New York*, 40 PERB 3017 (2007) (holding that the Police

Commissioner's authority to discipline does not prohibit bargaining over a demand for compensation related to such disciplinary authority).

The value of a day's pay is fundamentally tied to an employee's wages. It is beyond dispute that wages are a mandatory subject of bargaining. *See* § 12-307(a); *Local 621, SEIU*, 2 OCB2d 27, at 10 (BCB 2009). Further, the "method of calculating pay" is also a mandatory subject of bargaining. *See DC 37*, 65 OCB 36, at 7 (BCB 2000) (method of deducting pay fines from wages is a mandatory subject of bargaining); *see also DC 37*, 4 OCB2d 31 (BCB 2011) (payment for snow days not worked is a mandatory subject of bargaining); *Matter of United College Employees of Fashion Institute of Technology*, 41 PERB ¶ 3010 (2008) (changing calculation of salary from 16 weeks to 15 weeks is a mandatory subject of bargaining). Here, disciplinary fines are levied in terms of "days of pay" and the FDNY unilaterally changed the value of a day of pay for Uniformed Employees subject to such fines from 1/365th of annual salary to 1/261st of annual salary. Consequently, the FDNY unilaterally changed the value of a day's pay for disciplinary fines, a mandatory subject of bargaining.

This conclusion is consistent with NYCCBL § 12-307(b), which expressly states that the "practical impact that decisions" reserved to management "have on terms and conditions of employment…are within the scope of collective bargaining."[12]  Therefore, even where there is a management right to take unilateral action, there may be an impact that warrants bargaining under the NYCCBL. For example, the Court of Appeals has held that the City's unilateral implementation of a policy requiring the payment of debts or fines owed to the City was

---

[12] Our discussion of NYCCBL § 12-307(b) is limited to the issue of impact bargaining. We need not address the management right "to take disciplinary action" pursuant to NYCCBL § 12-307(b) in light of the FDNY Commissioner's disciplinary authority pursuant to § 487(a) of the New York City Charter and § 15-113 of the New York Administrative Code.

permissible, however the method of payment via payroll deductions within that policy was a

mandatory subject of bargaining because it impacted wages. *See Levitt v. Board of Collective*

*Bargaining,* 79 N.Y.2d 120 (1992).  Similarly, here we find that while the FDNY Commissioner

has the exclusive authority to discipline bargaining unit members and to determine the penalty,

including the number of days for or the amount of a disciplinary fine, the narrow issue raised - the

value of a day's pay for these fines - impacts wages, a mandatory subject of bargaining that falls

outside the scope of this authority and may not be altered unilaterally.[13]  *See L. 854, UFOA*, 45

OCB 5.

In reaching this conclusion, we find that the value of a day's pay for disciplinary fines is

not inextricably intertwined with the Fire Commissioner's disciplinary authority.  In *City of New*

*York v. PBA,* the Court of Appeals held that drug testing methodology and testing triggers are not

mandatory subjects of bargaining because they relate to the Police Commissioner's "discretion to

select the investigatory measures that he deems most effective to discover and deter illegal drug

use" and are "inextricably intertwined with the Commissioner's authority to conduct drug testing

in the first place [and] are not ancillary or tangential to his disciplinary authority." *City of New*

*York v. PBA* at 59.  The Court reasoned that "'if the Commissioner is not at liberty to use a

particular drug test. . . then his ability to carry out his disciplinary 'authority' [is] significantly

limited.'"  *Id.*  The basis for the Court's decision in *City of New York v. PBA* does not exist here.

While the value of a day's pay may be a factor the Commissioner considers when determining a

disciplinary fine, negotiation over that value does not limit the FDNY Commissioner's authority

---

[13] Whatever the value of a day's pay for disciplinary fines, this value would not in any way limit
the FDNY Commissioner's discretion to determine the dollar amount of the fine that he may
unilaterally elect to impose following formal disciplinary proceedings.

to determine whether to discipline an employee or the penalty.[14]  Therefore, unlike in *City of New York v. PBA*, here the FDNY Commissioner's ability to investigate or determine discipline would not be constrained by finding that the value of a day of pay is a mandatory subject of bargaining. Moreover, in *City of New York v. PBA*, the Court emphasized that it was only addressing the question of whether drug testing triggers and methodology are encompassed within the Police Commissioner's disciplinary authority.  *See City of New York v. PBA* at 59-60.  These issues are not before us.  Consequently, we find that the value of a day's pay for disciplinary fines is ancillary and tangential to the FDNY Commissioner's authority to discipline and not precluded from collective bargaining.

      We also find that the FDNY violated NYCCBL § 12-306(a)(5).  NYCCBL § 12-306(a)(5) states it is an improper practice "to unilaterally make any change . . . to any mandatory subject of collective bargaining . . . during a period of negotiations with a public employee organization . . ." As set forth above, the FDNY's change to the value of a day's pay for disciplinary fines constitutes a unilateral change to a mandatory subject of bargaining.  It is undisputed that this change occurred in the time period between the expiration of the July 27, 2011 Marine Engineers and Pilots Agreement and the July 31, 2010 Firefighters, Fire Marshals, and Marine Wipers Agreements and the ratification of the 2015 Agreements.  Consequently, the FDNY's change to the value of a day's

---

[14]  In finding in *L. 854, UFOA*, that the City could not unilaterally prohibit solicitations or contributions to uniformed employee disciplinary fines, the Board noted that to the extent the solicitations or contributions "diminish[es] the measure of punishment that the Fire Department metes out for a particular rule infraction, there are other ways that this effect can be mitigated." *L. 854, UFOA*, 45 OCB 5, at 13.

pay for disciplinary fines occurred during the period when the Agreements were in *status quo*, in violation of NYCCBL § 12-306(a)(5).

Accordingly, under the circumstances here, we find that the City breached its duty to bargain by changing the value of a day's pay for disciplinary fines, in violation of NYCCBL § 12-306(a)(1), (4), and (5).[15]

---

[15] When an employer violates its duty to bargain in good faith, there is also a derivative violation of NYCCBL § 12-306(a)(1). *See DC 37*, 8 OCB2d 11, at 23 (BCB 2015); *Local 621, SEIU,* 2 OCB2d 27, at 14 (BCB 2009); *USCA*, 67 OCB 32, at 8 (BCB 2001).

10 OCB2d 5 (BCB 2017)                                                    19

## ORDER

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby

ORDERED, that the improper practice petition docketed as BCB-4150-16, filed by the Uniformed Firefighters Association, Local 94, IAFF, AFL-CIO, against the Fire Department of the City of New York and the City of New York, hereby is granted in its entirety; and it is further

ORDERED, that the Fire Department of the City of New York reinstate the *status quo* regarding the method of calculating the value of a day's pay for disciplinary fines to 1/365th of annual pay for Marine Engineers, Pilots, Firefighters, Fire Marshals, and Marine Wipers; it is further

ORDERED, that the Fire Department of the City of New York cease and desist from changing the method of calculating the value of a day's pay for disciplinary fines until such time as the parties bargain over any such changes; and it is further

ORDERED, that the Fire Department of the City of New York make whole any Marine Engineers, Pilots, Firefighters, Fire Marshals, and Marine Wipers affected by the July 2013 change in the method of calculating the value of a day's pay for disciplinary fines; and it is further

DIRECTED, that the Fire Department of the City of New York post the attached Notice of this Decision and Order for no less than 30 days at all locations used by the New York City Fire Department for written communications with employees represented by the Union.

Dated: February 16, 2017
       New York, New York

                                   _____ SUSAN J. PANEPENTO _____
                                           CHAIR

10 OCB2d 5 (BCB 2017)                                                    20

                                        _____ALAN R. VIANI_____
                                              MEMBER

                                        _____M. DAVID ZURNDORFER___
                                              MEMBER

                                        _____PAMELA S. SILVERBLATT__
                                              MEMBER

                                        _____PETER B. PEPPER_____
                                              MEMBER

NOTICE
TO
ALL EMPLOYEES
PURSUANT TO
THE DECISION AND ORDER OF THE
BOARD OF COLLECTIVE BARGAINING
OF THE CITY OF NEW YORK
and in order to effectuate the policies of the
NEW YORK CITY COLLECTIVE BARGAINING LAW

**We hereby notify:**

**That the Board of Collective Bargaining has issued 10 OCB2d 5 (BCB 2017), in final determination of the improper practice petition between the Uniformed Firefighters Association, Local 94, IAFF, AFL-CIO and the Fire Department of the City of New York and the City of New York.**

**Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby:**

**ORDERED, that the improper practice petition docketed as BCB-4150-16, filed by the Uniformed Firefighters Association, Local 94, IAFF, AFL-CIO, against the Fire Department of the City of New York and the City of New York, hereby is granted in its entirety; and it is further**

**ORDERED, that the Fire Department of the City of New York reinstate the *status quo* regarding the method of calculating the value of a day's pay for disciplinary fines to 1/365th of annual pay for Marine Engineers, Pilots, Firefighters, Fire Marshals, and Marine Wipers; it is further**

**ORDERED, that the Fire Department of the City of New York cease and desist from changing the method of calculating the value of a day's pay for disciplinary fines until such time as the parties bargain over any such changes; and it is further**

**ORDERED, that the Fire Department of the City of New York make whole any Marine Engineers, Pilots, Firefighters, Fire Marshals, and Marine Wipers affected by the July 2013 change in the method of calculating the value of a day's pay for disciplinary fines; and it is further**

**DIRECTED, that the Fire Department of the City of New York post this Notice for no less than 30 days at all locations used by the New York City Fire Department for written communications with employees represented by the Union.**

22

<u>The City of New York</u>

(Department)

Dated:

(Posted By)

(Title)

*This Notice must remain conspicuously posted for 30 consecutive days from the date of posting, and must not be altered, defaced, or covered by any other materials.*