EXHIBIT 9

{00682706-1}

*ADW/DWA*, 7 OCB2d 26 (BCB 2014)
(IP) (Docket No. BCB-4009-13)

*Summary of Decision*:  The Union alleged that the City and the DOC violated NYCCBL § 12-306(a)(1), (4), and (5), by unilaterally deciding to alter the way Deputy Wardens and Deputy Wardens-in-Command select days on which to utilize vacation and compensatory time.  The City contended that there has been no unilateral change, that it has acted within its managerial prerogative, and that public policy necessitates that the DOC be free to organize scheduling and staffing.  The City further contended that the Union failed to raise these matters at the parties' single negotiation session for a successor collective bargaining agreement.  The Board found that the City and the DOC unilaterally changed the number of times per year that Deputy Wardens can make vacation requests, thereby breaching their duty to bargain in good faith.  The Board did not find that this unilateral change applied to Deputy Wardens-in-Command; nor did it find a change to how compensatory time is requested.  Accordingly, the petition was granted, in part, and denied, in part.  *(Official decision follows.)*

OFFICE OF COLLECTIVE BARGAINING
BOARD OF COLLECTIVE BARGAINING

In the Matter of the Improper Practice Proceeding

-*between*-

ASSISTANT DEPUTY WARDENS/DEPUTY WARDENS ASSOCIATION,

*Petitioner,*

-*and*-

THE CITY OF NEW YORK and
THE NEW YORK CITY DEPARTMENT OF CORRECTION,

*Respondents.*

## DECISION AND ORDER

On October 31, 2013, the Assistant Deputy Wardens/Deputy Wardens Association, ("Union") filed a verified improper practice petition against the City of New York ("City") and the New York City Department of Correction ("DOC").  The Union alleges that the City and the

DOC violated § 12-306(a)(1), (4), and (5), of the New York City Collective Bargaining Law (New York City Administrative Code, Title 12, Chapter 3) ("NYCCBL") by breaching their duty to bargain in good faith regarding a mandatory subject of bargaining, interfering with Union members' statutory rights, and failing to maintain the *status quo* after the expiration of the parties' collective bargaining agreement, all stemming from the DOC's unilateral decision to alter the way Deputy Wardens and Deputy Wardens-in-Command select days on which to utilize vacation and compensatory time. Specifically, the Union alleges that the DOC unilaterally reduced from four to two the number of times per year that Deputy Wardens and Deputy Wardens-in-Command select vacation and compensatory time.[1] Additionally, the Union alleges that the DOC changed the way Deputy Wardens and Deputy Wardens-in-Command request accrued compensatory time, which would only be granted on a case-by-case basis, rather than in three month prospective intervals. The City contends that there has been no unilateral change to existing rules and regulations regarding the selection of vacation and utilization of compensatory time, that it has acted within its managerial prerogative, and that public policy necessitates that the DOC be free to organize scheduling and staffing for the safety and security of its employees, prisoners, and members of the public. The City further contends that the Union failed to raise these matters at the parties' single negotiation session for a successor collective bargaining agreement. The Board finds that the City and the DOC unilaterally changed the number of times per year that Deputy Wardens make vacation requests, thereby breaching their duty to bargain in good faith. The Board does not find that this unilateral change applied to Deputy Wardens-in-

---

[1] We note that a reduction, from four to two, in the number of times per year that vacation requests may be made corresponds to an increase, from three to six, in the number of months for which requests are submitted.

Command.  Additionally, the Board finds that the Union did not demonstrate a change to the number of times per year that Deputy Wardens or Deputy Wardens-in-Command make compensatory time requests.  Accordingly, the petition is granted, in part, and denied, in part.

## BACKGROUND

The Union is the certified collective bargaining representative for the DOC employees in the titles of Assistant Deputy Warden, Deputy Warden, and Deputy Warden-in-Command.  The City and the Union are parties to a collective bargaining agreement covering the period of March 1, 2008, to June 30, 2012 ("Agreement"), which remains in *status quo* pursuant to the NYCCBL.

Deputy Wardens and Deputy Wardens-in-Command serve as Commanding Officers of specialized departmental units, and are generally assigned to a jail facility discipline, such as Security, Program Services, or Administration.[2]  Additionally, Deputy Wardens and Deputy Wardens-in-Command are sometimes required to work during their respective days off in order to attend funerals, to respond to violent incidents, and to address other incidents that affect the normal operations of a command.

The Union asserts that as a result of the non-scheduled activities required by the position, the practice of assigning multiple disciplines to a Deputy Warden in a single tour of duty, and the allegedly inadequate staffing levels in the rank of Deputy Warden, Deputy Wardens have

---

[2]  We note that while the civil service title for employees serving in both the Deputy Wardens and Deputy Wardens-in-Command positions are the same, Warden (Correction) Level II, these two positions are distinct at the DOC and are so referred to in the Agreement.  *See ADW/DWA*, 3 OCB2d 8, at 3 (BCB 2010).

accrued significant amounts of overtime/compensatory time.[3]  The Union further maintains that Deputy Wardens have difficulty utilizing portions of their contractually entitled time.

With respect to scheduling vacations, Article XI, § 2, of the Agreement provides that: "[v]acations shall be scheduled in accordance with existing procedures."[4]  (Pet., Ex. A)  In addition to the Agreement, the City has identified the following DOC rules that address vacation time.  First, DOC Rule Number 2.10.190 provides that "[n]o more than one (1) Deputy Warden assigned to the command should be on vacation at the same time."  (Ans., Ex. 7)  Second, DOC Rule Number 3.10.160(C) ("Annual Leave Rule") provides that "[e]arned annual leave allowance shall be taken by the employees at a time convenient to the Department.  A vacation may be split into no more than two (2) periods.  Vacations shall be scheduled to permit the proper and efficient handling of departmental work."[5]  (Ans., Ex. 6)

---

[3]  The Union asserts that, from June 20, 2007, to June 21, 2010, with the exception of one employee who was promoted pursuant to a Stipulation of Settlement, the DOC failed to promote any Assistant Deputy Wardens into the rank of Deputy Warden and that this resulted in inadequate staffing levels.

[4]  As discussed later, the Union alleges that prior to July 1, 2013, the "existing procedures" referenced in Article XI, § 2, of the Agreement were that Deputy Wardens and Deputy Wardens-in-Command made their "vacation picks" on a quarterly basis.  (Pet. ¶ 22)

[5]  A DOC rule with substantively identical pertinent language to the Annual Leave Rule, DOC Rule 3.10.80(c), applied to correction officers.  Regarding that rule, the City contended before the Board in a prior proceeding that its purpose was to prohibit correction officers from taking all of their annual leave at one time.  *See COBA*, 53 OCB 12, at 3-5 (BCB 1994).  DOC Rule 3.10.80(c) reads:

> Earned annual leave allowances shall be taken by the employees at the time convenient to the department.  A vacation may be split into not more than two periods.  Vacations shall be so scheduled as to equalize, as far as possible, the number on vacation over the entire year to permit the proper and efficient handling of departmental work.

With respect to compensatory time, Article III, § 1, of the Agreement provides that:

> Overtime performed by Deputy Wardens and Deputy Wardens-in-Command shall be compensated for in compensatory time off at the rate of time and one-half when such overtime is ordered by the Commissioner, or the Chief of Department, [DOC], or their designee, or is performed during an emergency without prior approval and when requests for compensation therefor after performance of such overtime are forwarded through channels together with recommendations and are approved by the Chief of Department, or designee, for such purposes.

(Pet., Ex. A)  The City also identified a DOC Rule regarding compensatory time: DOC Rule Number 3.10.020 provides that: "[t]he commanding officer shall ensure that a record shall be kept of the compensatory overtime worked by employees of a facility/command.  Time off for such compensatory overtime shall be granted at the convenience of the [DOC]."  (Ans., Ex. 1)

Vacation Selection before July 1, 2013

The Annual Leave Rule has existed for many years.  However, the Union contends that the Annual Leave Rule does not address the matter at issue in this petition, the procedures by which Deputy Wardens and Deputy Wardens-in-Command request and use vacation and compensatory time.  Further, the Union avers that, before July 1, 2013, the DOC never enforced the Annual Leave Rule against Deputy Wardens and Deputy Wardens-in-Command.  Rather, it had only applied it to Correction Officers, Correction Captains, and Assistant Deputy Wardens.[6]

---

53 OCB 12, at 2.

[6]  As an example of the way Correction Officers, Captains, and Assistant Deputy Wardens request vacation time semi-annually, the Union provided a memorandum, dated April 19, 2013, informing all Brooklyn Detention Center Uniform Staff Members to select two blocks of vacation time ("April 2013 Memo").  (Rep., Ex. C)  The memorandum asks employees to each select a two week interval between June 30, 2013, and January 25, 2014, and a two week interval between January 26, 2014, and June 14, 2014, during which they may take vacation.  (Rep., Ex.

The Union asserts that, prior to July 2013, the DOC had a practice of permitting Deputy

Wardens and Deputy Wardens-in-Command to make four, quarterly selections of vacation and

compensatory time.[7] The Union asserts that by selecting for the prospective three month period,

and having it approved in advance, Deputy Wardens and Deputy Wardens-in-Command had

more flexibility to meet the needs of the DOC, and utilize portions of their contractually-entitled

vacation and compensatory time.  As evidence of the quarterly selection practice, the Union

provided a memorandum from Carmine La Bruzzo, then-DOC Deputy Chief of Department,

dated August 29, 2012, and titled "Anticipated Vacation for the Months of October through

December 2012 (Assistant Chiefs, Supervising Wardens, Wardens, and Deputy Wardens)"

("August 2012 Memo").  (Pet., Ex. B)  The August 2012 Memo provides, in pertinent part;

"[p]lease ensure you submit your anticipated vacation schedule for the months of October,

November, and December 2012, utilizing the attached format."  (Pet., Ex. B)  Additionally, in its

reply, the Union provided a letter executed on January 6, 2014, by the former DOC Deputy Chief

of Department explaining that the standard practice was for Deputy Wardens to request vacation

---

C)  In an email dated June 30, 2014, the City maintained that while subordinate ranks select two
week blocks of vacation, the two week blocks are not used for Deputy Wardens.

[7]  In its reply, the Union provided an affidavit executed by the President of the Union, Sidney
Schwartzbaum, explaining that:

> Since the [Deputy Warden, Warden Level II, title was] accreted
> into the Union, [the Annual Leave Rule] has never applied to
> [them], and the [DOC's] standard operating procedure has been for
> [Deputy Wardens, Warden Level II] to submit and have approved
> by their Warden four, quarterly opportunities to utilize a
> combination of their [c]ompensatory [t]ime and [v]acation [t]ime,
> prospectively for the next three months."

(Rep., Ex. D ¶ 15)

time and compensatory time in quarterly periods, while Correction Officers, Captains, and Assistant Deputy Wardens request vacation time semi-annually.  (Rep., Ex. F)

May 2013 Memorandum

The City provided an affidavit from Evelyn A. Mirabal, DOC's current Chief of the Department, explaining that she noticed on some occasions that staff member absences were "high enough to indicate possible diminished levels of supervision in some facilities" and that the "absences tended to result from the use of vacation and 'Time Due.'  'Time Due' is the Department's term for usage of accumulated compensatory time."[8]  (Ans., Ex. C, ¶ 7-8)  The DOC Chief of the Department asserts that she discussed her concerns with the Assistant Chiefs, Supervising Wardens, and Wardens, and urged them to make sure that Wardens and Deputy Wardens were following the DOC rules regarding vacation and Time Due.  (Ans., Ex. C, ¶ 12) The DOC Chief of the Department then instructed Gregory P. McLaughlin, DOC Deputy Chief of Department, to issue a memorandum to the Assistant Chiefs and Supervising Wardens reiterating what she had discussed with them informally.  The memorandum, dated May 31, 2013 ("May 2013 Memo"), provides, in pertinent part:

> SUBJECT: VACATION SELECTIONS (FY14)
>      RE: ASSISTANT CHIEF, SUPERVISING WARDEN,
>      WARDEN AND DEPUTY WARDEN
>
> Please be advised, effective July 1, 2013 (Fiscal Year 2014), managers in the rank of Assistant Chief, Supervising Warden, Warden and Deputy Warden will utilize two vacation picks as follows:

---

[8]   The DOC Chief of the Department clarified that shortages in coverage may result in: diminished supervision and training of other employees, incomplete investigations, late close of business reports, and, on occasion, mandatory overtime when Deputy Wardens need to catch up on the work not completed in their absence.

- One vacation pick for the first six months (July 2013 through December 2013)
- One vacation pick for the second six months (January 2014 through June 2014)

One Assistant Chief and one Supervising Warden can be off at the same time so that there will be continuous coverage maintained by the same rank. Facilities that have four (04) Deputy Wardens may permit two (02) managers to be granted vacation at the same time. Facilities with three (03) or less Deputy Wardens assigned may permit one manager to be granted vacation at a time.

Any other time utilized must be submitted as "Time Due" and will be granted on a case by case basis provided that the same numerical strength as outlined above is maintained in the facilities.

Please ensure that you communicate and confer with each other to ensure that this procedure is complied with.

If additional information is required, please advise.

(Pet., Ex. C)  According to the DOC Chief of the Department, the terms of the May 2013 Memo were intended to keep the DOC Deputy Chief of Department informed of when staff would be absent, and ensure that coverage of the facilities was adequate.  Subsequent to the conference in this matter, in an email dated July 15, 2014, the City stated that the May 2013 Memo does not apply to Deputy Wardens-in-Command.

June 4, 2013 Meeting

On or about June 4, 2013, the Union President met with the DOC Deputy Chief of Department ("June 2013 Meeting").  During this meeting, the DOC Deputy Chief of Department handed the Union President a copy of the May 2013 Memo.

The Union avers, and the City denies, that during the June 2013 Meeting, the DOC Deputy Chief of Department informed the Union President that Deputy Wardens and Deputy

Wardens-in-Command would no longer be able to select days for utilization of vacation and compensatory time for the prospective three month period; instead, Deputy Wardens and Deputy Wardens-in-Command would only be allowed to select days in which to utilize vacation time for the prospective six-month period and they would only be granted accrued compensatory time on a case by case basis.  The Union further asserts, and the City denies, that in response to the Union President's expression of displeasure with this unilateral change, the DOC Deputy Chief of Department stated that the changes were an executive staff decision and non-negotiable.  The City denies that the DOC Deputy Chief of Department stated that the issue was non-negotiable.  The City avers, and the Union denies, that during the June 2013 Meeting, the DOC Deputy Chief of Department explained to the Union President that "there was no difference with the way things are being done with respect to vacation."  (Ans. ¶ 66; Ans., Ex. 10 ¶ 11)

Vacation Selection after July 1, 2013

The Union asserts that on or about July 1, 2013, the directives in the May 2013 Memo were implemented, and the longstanding policy of allowing quarterly selection of vacation and compensatory time was no longer applied uniformly to all facilities in the DOC.  The City contends that Deputy Wardens continue to submit their vacation selections and Time Due on a quarterly basis.[9]

---

[9]  The DOC Chief of the Department asserts that "[s]ince issuance of the [May 2013] Memo, the managers continue to submit quarterly reports of vacation schedules and Time Due."  (Ans., Ex. C, ¶ 17)  The City asserts that: "[f]ollowing the [May 2013] Memo, [Deputy Wardens] did not submit their vacation selections for the period of July 2013 through December 2013.  Instead, [Deputy Wardens] submitted their vacation submissions quarterly."  (Ans. ¶ 69)  Additionally, the City further asserts:

> Moreover, as is clear by Petitioner's members' submission of vacation selection and Time Due after issuance of the [May 2013

Negotiations for a Successor Agreement

      The Agreement includes two relevant side letters.  Appendix B of the Agreement states, in pertinent part, that "the issue of the usage of compensatory time for Assistant Deputy Wardens/Deputy Wardens in the [DOC] has been referred to the Labor Management Committee provided for in this [ ] Agreement."  (Pet., Ex. A)  Appendix L of the Agreement states, in pertinent part, that "the following topics shall be referred for discussion to the labor management committee in the [DOC]: compensatory time for Deputy Wardens and Deputy Wardens-in-Command[,] vacation picks for Deputy Wardens …"  (Pet., Ex. A)  According to the City, the Union did not bring up the issue raised in the petition at any Labor Management meetings prior to filing the petition.  The Union asserts that from the issuance of the semi-annual selection policy to the time it filed the petition, no Labor-Management meeting had been scheduled.

      By letter dated October 29, 2013, counsel for the Union requested that the City schedule dates to commence negotiations over a successor agreement to the parties' Agreement.  On or about November 25, 2013, the parties met and exchanged demands.

      On October 31, 2013, the Union filed the instant improper practice petition.  The Union requests that the Board find that the City and the DOC violated NYCCBL § 12-306(a)(1), (4), and (5), and direct the City and the DOC to cease and desist from unilaterally changing the manner in which Deputy Wardens and Deputy Wardens-in-Command select days on which to utilize vacation and compensatory time; reinstate the four, quarterly opportunities for Deputy

---

Memo], Petitioner's members currently submit vacation selection and Time Due on a quarterly basis.  Insofar as Petitioner alleges that there has been a change in enforcement of the [DOC's] longstanding rules, no such change has been demonstrated.

(Ans. ¶ 92)

Wardens and Deputy Wardens-in-Command to select days on which to utilize vacation and compensatory time; and bargain to fruition or impasse concerning the manner in which Deputy Wardens and Deputy Wardens-in-Command select days on which to utilize vacation and compensatory time and the time frame in which to utilize said accrued time.  The Union further requests that the City be directed to post conspicuous notices throughout the DOC.

## POSITIONS OF THE PARTIES

### Union's Position

The Union contends that the City and the DOC violated NYCCBL § 12-306(a)(1), (4), and (5) by breaching their duty to bargain in good faith regarding a mandatory subject of bargaining, interfering with Union members' statutory rights, and failing to maintain the *status quo* in place after the expiration of the parties' Agreement, all stemming from the DOC's unilateral change, from four to two, to the number of times per year that Deputy Wardens and Deputy Wardens-in-Command select vacation and compensatory time.[10]   Additionally, the

---

[10]  NYCCBL § 12-306(a) provides, in pertinent part:

It shall be an improper practice for a public employer or its agents:

(1)  to interfere with, restrain or coerce public employees in the exercise of their rights granted in section 12-305 of this chapter . . .

        *               *              *

(4)  to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees;

(5)  to unilaterally make any change as to any mandatory subject of collective bargaining or as to any term and condition of employment established in the prior contract, during a period of

Union alleges that Deputy Wardens and Deputy Wardens-in-Command would now have to request accrued compensatory time, which would only be granted on a case-by-case basis, rather than in three month prospective intervals. According to the Union, these changes make it even more difficult for Deputy Wardens and Deputy Wardens-in-Command to utilize portions of their contractually-entitled vacation and compensatory time.

The Union argues that annual leave and compensatory time, as well as the policies and procedures governing the selection and utilization of these benefits, are within the scope of mandatory subjects of bargaining, which must be bargained to fruition or impasse prior to any change related thereto. Here, the Union argues that prior to July 1, 2013, Deputy Wardens and Deputy Wardens-in-Command selected vacation days during four, quarterly opportunities. After July 1, 2013, the effective date of the May 2013 Memo, Deputy Wardens and Deputy Wardens-in-Command were only allowed to select vacation days during two, semi-annual opportunities. In addition, the use of compensatory time was limited to approval on a case-by-case basis. The Union further asserts that during the June 4, 2013 meeting, the DOC Deputy Chief of Department represented that the implementation of the semi-annual vacation selection was non-negotiable, effectively preempting any demand for bargaining or negotiations related thereto. Thus, the City and the DOC made a unilateral change to the policies and procedures of a mandatory subject of bargaining in violation of NYCCBL § 12-306(a)(4), and derivatively in violation of NYCCBL § 12-306(a)(1).

---

negotiations with a public employee organization as defined in subdivision d of section 12-311 of this chapter.

Additionally, the Union asserts that by changing the longstanding *status quo* at a time when the Agreement was expired and the parties' were in a period of negotiations, the City violated NYCCBL § 12-306(a)(5).

In response to the City's argument that staffing levels are of the utmost importance to the DOC, the Union contends that the DOC's failure to promote employees into the rank of Deputy Warden, which led to a dearth in the number of Deputy Wardens, contradicts this point. In response to the City's argument that there is no violation of NYCCBL because Petitioner failed to raise the instant issues at the parties' single negotiating session, the Union contends that the argument lacks support in the case law governing the NYCCBL. Further, the Union asserts that it provided two proposals addressing the issues of selection and utilization of vacation and compensatory time, as well as a disclaimer indicating that the Union reserves the right to add and discuss proposals.

Finally, the Union contends that there may be additional violations of the NYCCBL if the purpose of the May 2013 Memo was to make further unilateral changes by having Deputy Wardens and Deputy Wardens-in-Command select vacation days completely in conformance with the manner by which subordinate ranks select time, including selecting vacation semi-annually in two week blocks of time.

**City's Position**

The City argues that the instant petition must be dismissed as the City has not violated NYCCBL § 12-306(a)(1), (4), or (5). The City alleges that the Union has not established that a unilateral change has been made in the instant matter. Nothing in the May 2013 Memo changed the DOC's longstanding rules and regulations regarding vacation selection and compensatory

time.[11]  DOC's Rules require the utilization of vacation time in no more than two (2) periods and

the approval of Time Due on a case-by-case basis at the convenience of the DOC.  As is

evidenced by the DOC Chief of the Department's discussions with Assistant Chiefs, Supervising

Wardens, Wardens, and the Union President, as well as the May 2013 Memo, the DOC has

consistently attempted to make the Union's members adhere to the longstanding rules regarding

the selection of vacation time and utilization of compensatory time.  The City contends that the

DOC's partial enforcement of the rule does not negate the rules longstanding existence and the

DOC's efforts to enforce it.  The City further contends that the May 2013 Memo does not change

the method by which the selection and designation of vacation schedules for Deputy Wardens is

made in their respective facilities.  The City argues that after issuance of the May 2013 Memo,

Petitioner's members' still submit vacation selection and Time Due utilization requests on a

quarterly basis.  The City asserts that the August 2012 Memo requesting anticipated vacation

schedules for October 2012 through December 2012 cannot form the basis of Petitioner's claim

that the *status quo* has been changed as it was not a rule or regulation of the DOC, nor was it

used to schedule vacation picks; it simply sought information about employees previously

arranged vacation schedules and military training in order to create the DOC duty officer report.

Additionally, the City argues that the issuance of the May 2013 Memo was an exercise of

express managerial rights under NYCCBL § 12-307(b).[12]  According to the City, the May 2013

---

[11]  Additionally, the City asserted in an email dated July 15, 2014, that the May 2013 Memo does not apply to Deputy Wardens in Command.

[12]  NYCCBL § 12-307(b) provides, in pertinent part, that:

> It is the right of the city . . . acting through its agencies, to determine the standards of services to be offered by its agencies; . .

Memo, which reiterates longstanding DOC rules and regulations regarding vacation picks and compensatory time, is directly related to substantial staffing and coverage issues uncovered by the DOC Chief of the Department. It argues that the DOC issued the May 2013 Memo in order to keep the DOC Deputy Chief of Department informed of when staff would be absent and ensure that coverage and supervision was adequate. The City contends that without adequate coverage and supervision, the DOC is unable to accomplish its mission of keeping communities safe by securely and safely detaining inmates and preparing them for successful community reentry. Thus, management must be able to enforce its longstanding rules and regulations with respect to vacation and compensatory time utilization. Especially, where, as here, "Petitioner's members are no less able to arrange vacation than they were prior to the [May 31, 2013 Memo]." (Ans. ¶ 103) Further, public policy concerns require the DOC to be able to craft such policies and rules regarding scheduling and staffing that allow it to ensure that the DOC's central mission is effectively accomplished. The City argues that since the Union has failed to establish that Respondents violated NYCCBL § 12-306(a)(4), there is no derivative violation of NYCCBL § 12-306(a)(1).

Moreover, the City contends that there is no violation of NYCCBL because Petitioner failed to raise the issues of vacation selection or compensatory time usage at the parties' single

---

. direct its employees; . . . maintain the efficiency of governmental operations; determine the methods, means and personnel by which government operations are to be conducted; . . . [and] exercise discretion over its organization and the technology of performing its work . . . Decisions of the [C]ity . . . on those matters are not within the scope of collective bargaining, but, notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety, are within the scope of collective bargaining.

negotiating session for a successor collective bargaining agreement.  Specifically, when the parties met and exchanged bargaining demands on November 25, 2013, Petitioner failed to raise the issue of the manner in which Deputy Wardens and Deputy Wardens-in-Command select vacation days and utilize compensatory time.  The Union has also failed to avail itself of the bargained for procedure, whereby issues of compensatory time are to be addressed in the form of Labor Management meetings.

## DISCUSSION

The Union alleges that the City and the DOC unilaterally changed the manner in which Deputy Wardens and Deputy Wardens-in-Command select days on which to utilize vacation and compensatory time, in violation of NYCCBL § 12-306(a)(1), (4), and (5).  For the reasons set forth below, we find that the only change which has occurred concerns the reduction in the number of times Deputy Wardens select vacations, from four to two times per year.

As an initial matter, the May 2013 Memo only mentions Deputy Wardens and does not mention Deputy Wardens-in-Command.  There is no support in the record upon which to conclude that Deputy Wardens-in-Command will be required to request vacation time only twice per year.  In addition, the City represents that the May 2013 Memo does not apply to Deputy Wardens-in-Command.  Therefore, we find that the May 2013 Memo does not apply to Deputy Wardens-in-Command.  Additionally, we find that the May 2013 Memo, by its express terms, does not address the number of times per year that Deputy Wardens can make requests to utilize compensatory time.  The only possible mention of compensatory time in the May 2013 Memo is, "[a]ny other time utilized must be submitted as "Time Due" and will be granted on a case by

case basis provided that the same numerical strength as outlined above is maintained in the facilities." (Pet., Ex. C)  Assuming, as the City asserts, that "Time Due" refers to compensatory time, then the May 2013 Memo reiterates the DOC's position that it has the right to approve compensatory time on a case-by-case basis.  Indeed, this is consistent with DOC Rule Number 3.10.020, which provides, in pertinent part, that "[t]ime off for such compensatory overtime shall be granted at the convenience of the [DOC]." (Ans., Ex. 1)  Thus, on this record, we do not find that the Union demonstrated that a change was made to the number of times per year Deputy Wardens request compensatory time or a reduction in the number of times Deputy Wardens in Command select vacations.[13]  Therefore, the only remaining claim to be addressed is whether or not the DOC, through the May 2013 Memo, unilaterally reduced from four to two the number of times per year that Deputy Wardens request vacation time.

Pursuant to NYCCBL § 12-307(a), mandatory subjects of bargaining generally include wages, hours (including, but not limited to, overtime and time and leave benefits), and working conditions, as well as "any subject with a significant or material relationship to a condition of employment."[14]  *Municipal Highway Inspectors L. Union 1042*, 2 OCB2d 12, at 7 (BCB 2009);

---

[13]   Additionally, based upon the terms of the May 2013 Memo, which does not include the requirement that employees take vacations in two week blocks of time, and the City's representation that the two week blocks are not used for Deputy Wardens, we cannot find on this record that there was a unilateral change with respect to the duration of vacations that Deputy Wardens may take.

[14]   NYCCBL § 12-307(a) provides, in pertinent part:

> [P]ublic employers and certified or designated employee organizations shall have the duty to bargain in good faith on wages (including, but not limited to, wage rates, pensions, health and welfare benefits, uniform allowances and shift premiums), hours

*see also NYSNA*, 51 OCB 37, at 7-8 (BCB 1993). Under NYCCBL § 12-306(a)(1) and (4), it is an improper practice for a public employer "to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees." We have held that "[a]s a unilateral change in a term and condition of employment accomplishes the same result as a refusal to bargain in good faith, it is likewise an improper practice." *DC 37, L. 420*, 5 OCB2d 19, at 9 (BCB 2012); *see also PBA*, 63 OCB 4, at 10 (BCB 1999). To establish that such a unilateral change has occurred, the Union "must demonstrate that (i) the matter sought to be negotiated is, in fact, a mandatory subject and (ii) the existence of such a change from existing policy." *DC 37, L. 436*, 4 OCB2d 31, at 13 (BCB 2011) (internal quotation marks omitted) (quoting *DC 37*, 79 OCB 20, at 9 (BCB 2007)).

Turning to the present case, wages and hours, including overtime and time and leave benefits, are mandatory subjects of bargaining. *See* NYCCBL § 12-307(a). The Board has held that regulations and procedures regarding the use of some types of leave constitute mandatory subjects of bargaining. *See DC 37*, 77 OCB 34, at 11-15 (BCB 2006) ("City violated the NYCCBL by unilaterally changing the documentation and certification procedures applicable to employees availing themselves of FMLA leave, which constitute a mandatory subject of bargaining"); *COBA*, 69 OCB 26, at 7 (BCB 2002) (demands relating to the amount of sick leave and procedures for its authorized use are mandatorily bargainable); *UFOA, L. 854 & UFA*, 67 OCB 17 (BCB 2001) (change in a policy regarding payment for holiday leave is a mandatory subject of bargaining); *COBA*, 27 OCB 16, at 116 (BCB 1981) (Union seeking a procedure to govern preferences in the use of vacation time is bargainable). Similarly, the Public

(including, but not limited to, overtime and time and leave benefits), working conditions . . . .

Employment Relations Board ("PERB") has stated that "[i]n general, procedures applicable to employee leave requests constitute a mandatory subject of negotiations."  *City of Albany*, 41 PERB ¶ 3019 (2008); *see also County of Nassau*, 46 PERB ¶ 4555 (2013); *Town of Carmel*, 29 PERB ¶3053 (1996).  Thus, a change to vacation selection and request procedures such as the May 2013 Memo (which concerns the number of times per year that Deputy Wardens request vacation time) is a mandatory subject of bargaining.[15]

We are not persuaded by the City's claim that the instant issues are inseparable from the DOC's management prerogative to establish manpower levels, and schedule employees, or that public policy concerns are implicated by the frequency of Deputy Warden requests for vacation. Adequate staffing and supervision are no doubt important to the DOC and necessary to carry out its mission.  However, the procedures set forth in the May 2013 Memo do not raise issues of staffing or scheduling.  The instant matter involves a change to the number of times that Deputy Wardens submit their requests for vacation time.  When employees request vacation does not restrict the DOC's managerial right to approve or deny these requests and therefore DOC retains the rights it had to assign employees and control manpower levels.  Indeed, whether Deputy Wardens select their vacations on a quarterly or semi-annual basis, the concerns raised by the City about staffing and scheduling will still exist.  Accordingly, we do not find DOC's argument in this regard persuasive.

---

[15] We note that compensatory time has also been found to be a mandatory subject of bargaining but, for the reasons stated above, we do not find a change to compensatory time on the record before us.  *See CEA*, 75 OCB 16, at 9-10 (BCB 2005) ("[t]he duty to bargain over wages includes the duty to bargain over employee compensation for overtime, including cash or compensatory time . . . including the prescription of the period during which an officer may use such time."  *See also ADW/DWA*, 3 OCB2d 8, at 13 (BCB 2010) (duty to bargain extends to the procedures relating to the accrual and use of compensatory time).

Having found, in this particular circumstance, that the number of opportunities that Deputy Wardens have to select vacation time is a mandatory subject of bargaining, the Board must now determine whether a unilateral change has occurred.  For the following reasons, we find that the Union established that the DOC made a unilateral change to how Deputy Wardens request vacation when it directed in the May 2013 Memo that "effective July 1, 2013 (Fiscal Year 2014), ... Deputy Warden[s] will utilize two vacation picks..."  (Pet., Ex. C)

We find that prior to July 1, 2013, Deputy Wardens submitted vacation selections on a quarterly basis.  The Union provides statements from its President and the former DOC Deputy Chief of Department in support of its assertion that before July 1, 2013, the DOC had a practice of permitting Deputy Wardens to make four, quarterly selections of vacation and compensatory time.  While the DOC does not explicitly concede the regularity or extent of the quarterly selection practice, it does acknowledge that the practice existed before July 1, 2013.  Indeed,  the City asserts that the quarterly selection practice continued after July 1, 2013, and  submitted an affidavit from the DOC Chief of the Department stating that:  "Since issuance of the [May 2013] Memo, the managers continue to submit quarterly reports of vacation schedules and Time Due." (Ans., Ex. C, ¶ 17)  Further, the City argued that:  "Petitioner's members currently submit vacation selection and Time Due on a quarterly basis.  Insofar as Petitioner alleges that there has been a change in enforcement of the [DOC's] longstanding rules, no such change has been demonstrated."  (Ans. ¶ 92)  Thus, we find that prior to July 1, 2013, there was a practice of permitting Deputy Wardens to make four, quarterly selections of vacation time.

Next, we find that the issuance of the May 2013 Memo, which stated that "effective July 1, 2013 ... managers in the rank of ... Deputy Warden will utilize two vacation picks,"

announced a change to the existing practice of vacation selection for Deputy Wardens. (Pet., Ex. C)  We note that, while the parties dispute the extent to which, if at all, the change has been implemented, nothing in the record indicates that the May 2013 Memo was rescinded.  We have held that the change element of an improper practice charge can be satisfied by the employer's notification to its employees of a change, even when the change itself had not yet been implemented.  *See Local 1455, DC 37*, 4 OCB2d 56, at 8 (BCB 2011) ("Board has held that an improper practice charge can be ripe for review before an employer has affirmatively acted") (*explaining UFA*, 47 OCB 61, at 8 (BCB 1991) (petition was not premature where the employer publicly stated an intention to make certain changes and the Union stated its opposition, even though the employer had not yet acted on the changes); *see also UFT*, 7 OCB2d 12 (BCB 2014); *PBA*, 63 OCB 2, at 11 (BCB 1999) (claim alleging an improper practice due to a unilateral change is not deficient on its face even though the change at issue, although announced, had not yet been implemented).  With respect to vacation requests after July 1, 2013, the City asserts that the quarterly selection process continued; while the Union asserts that the policy of allowing quarterly selection of vacation and compensatory time was no longer applied uniformly to all facilities in the DOC.  We need not reach this issue here, as we find that the May 2013 Memo constitutes the change element of the improper practice.

In reaching this conclusion, we reject the City's argument that the May 2013 Memo does not make any unilateral changes.  While the City argues that no unilateral change has occurred, its own statements are inconsistent and include representations that the employees at issue submitted annual leave requests quarterly while the plain language of the May 2013 memo, which the City argues merely reiterates the longstanding DOC rules, states they will choose them

twice per year. Further, we are not persuaded by the City's claim that the May 2013 Memo reiterates the DOC's longstanding rules and regulations where neither the Annual Leave Rule nor any other rule cited by the City provides for vacation request procedures like those set forth in the May 2013 Memo.

Further, we are not persuaded by the City's argument that the Union has waived its right to bargain over this matter because it failed to present a demand on this subject at the parties' only negotiation session concerning the successor collective bargaining agreement.[16] This Board has long held that "a union does not waive its right to bargain unless prior negotiations indicate that the matter was fully discussed or consciously explored and the union consciously yielded or clearly and unmistakably waived its interest in the matter." *CEA*, 75 OCB 16, at 10 (BCB 2005) (citations and quotation marks omitted); *see also DC 37*, 15 OCB 21 (BCB 1975), *affd, Matter of City of New York v. Bd. of Collective Bargaining*, N.Y.L.J., Mar. 18, 1976 (Sup. Ct. N.Y. Co. Mar. 15, 1976) (no waiver of the right to bargain over the impact of layoffs absent evidence that the subject had been fully discussed or consciously explored). Here, there is no evidence that the frequency of vacation picks for Deputy Wardens was raised, discussed, or clearly waived by the Union.

Accordingly, under the circumstances here, we find that the City and DOC unilaterally changed the number of times per year that Deputy Wardens make vacation requests, which is mandatorily bargainable, thereby breaching its duty to bargain in violation of NYCCBL § 12-306(a)(4). Additionally, by violating its duty to bargain in good faith, the City and the DOC derivatively violated NYCCBL § 12-306(a)(1). *See Local 621, SEIU*, 2 OCB 2d 27, at 14 (BCB

---

[16] Only one negotiation session concerning the successor collective bargaining agreement had occurred as of the filing of the Answer in December 2013.

2009).   Further, because the City and DOC unilaterally changed a mandatory subject of bargaining during a period of negotiations, they also violated NYCCBL § 12-306(a)(5).   *UFT*, 3 OCB2d 44, at 10 (BCB 2010); *see also USCA*, 67 OCB 32, at 7 (BCB 2001).   Thus, we order the City and DOC to bargain to fruition or impasse concerning the number of times per year that Deputy Wardens make vacation requests.

### ORDER

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby

ORDERED, that the verified improper practice petition filed by the Assistant Deputy Wardens/Deputy Wardens Association, docketed as BCB-4009-13, is hereby granted, in part, and denied, in part; and it is further

ORDERED, that the City of New York and the New York City Department of Correction rescind the May 31, 2013 Memo by the Department's Deputy Chief of Department regarding "vacation picks" against Deputy Wardens and reinstate the four, quarterly opportunities for Deputy Wardens to request vacation; and it is further

ORDERED, that the City of New York and the New York City Department of Correction bargain in good faith with Assistant Deputy Wardens/Deputy Wardens Association over the number of times per year that Deputy Wardens submit and/or make vacation requests; and it is further

DIRECTED, that the New York City Department of Correction post appropriate notices of the violations in locations throughout the New York City Department of Correction.

Dated:  November 10, 2014
        New York, New York


        GEORGE NICOLAU
        MEMBER

        CAROL A. WITTENBERG
        MEMBER

        M. DAVID ZURNDORFER
        MEMBER

7 OCB2d 26 (BCB 2014)                                                                25

 

   PAMELA S. SILVERBLATT
            MEMBER

   CHARLES G. MOERDLER
            MEMBER

   PETER PEPPER
            MEMBER

# NOTICE
# TO
# ALL EMPLOYEES
# PURSUANT TO
# THE DECISION AND ORDER OF THE
# BOARD OF COLLECTIVE BARGAINING
# OF THE CITY OF NEW YORK
# and in order to effectuate the policies of the
# NEW YORK CITY
# COLLECTIVE BARGAINING LAW

We hereby notify:

That the Board of Collective Bargaining has issued 7 OCB2d 26 (BCB 2014), determining an improper practice petition between the Assistant Deputy Wardens/Deputy Wardens Association and the City of New York and the New York City Department of Correction.

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby:

ORDERED, that the verified improper practice petition filed by the Assistant Deputy Wardens/Deputy Wardens Association, docketed as BCB-4009-13, is hereby granted, in part, and denied, in part; and it is further

ORDERED, that the City of New York and the New York City Department of Correction rescind the May 31, 2013 Memo by the Department's Deputy Chief of Department regarding "vacation picks" against Deputy Wardens and reinstate the four, quarterly opportunities for Deputy Wardens to request vacation; and it is further

ORDERED, that the City of New York and the New York City Department of Correction bargain in good faith with Assistant Deputy Wardens/Deputy Wardens Association over the number of times per year that Deputy Wardens submit and/or make vacation requests; and it is further

ORDERED, that the New York City Department of Correction post this Notice for no less than thirty (30) days in locations throughout the New York City Department of Correction.

<u>The New York City Department of Correction</u>
(Department)

Dated:

_____ (Posted By)
(Title)

*This Notice must remain conspicuously posted for 30 consecutive days from the date of posting, and must not be altered, defaced, or covered by any other material.*