EXHIBIT 11

{00682706-1}

## *Local 333, UMD,* 6 OCB2d 25 (BCB 2013)
(IP) (Docket No. BCB-3029-12)

***Summary of Decision:***   The Union alleged that DOT violated NYCCBL §
12-306(a)(1) and (4) when it unilaterally created new procedures for conducting
performance evaluations and related appeals of nonmanagerial employees.   The
Union contended that the implementation of these procedures altered the parties'
contractual sick leave policy.   Respondents argued that the Union's claim that
DOT improperly implemented the evaluation appeal procedure is untimely.   They
also contended that the Union's allegation that the new procedure altered
contractual sick leave policy should be deferred to arbitration and that, if the claim
is not deferred, the Board should dismiss the claim because the establishment of
criteria for performance evaluations is a managerial prerogative.   Respondents
further contended that any changes to the policy pertaining to sick leave are *de
minimis* or moot.   The Board determined that the Union's amended claim is
timely.   It further held that DOT violated the NYCCBL when it implemented new
performance evaluation appeal procedures but that its implementation of the
remaining performance evaluation procedures did not violate the statute.   The
Board rejected Respondents' defense that the Union's claim that the procedures
altered contractual sick leave policy should be deferred to arbitration.
Accordingly, the petition was granted, in part, and denied, in part.   ***(Official
decision follows.)***

---

**OFFICE OF COLLECTIVE BARGAINING
BOARD OF COLLECTIVE BARGAINING**

**In the Matter of the Improper Practice Proceeding**

-*between*-

**LOCAL 333, UNITED MARINE DIVISION, INTERNATIONAL
LONGSHOREMAN'S ASSOCIATION, AFL-CIO,**

*Petitioner,*

-*and*-

**THE CITY OF NEW YORK and THE NEW YORK CITY
DEPARTMENT OF TRANSPORTATION,**

*Respondents.*

---

**<u>DECISION AND ORDER</u>**

On July 6, 2012, Local 333, United Marine Division, International Longshoremen's Association, AFL-CIO ("Union") filed a verified improper practice petition against the City of New York ("City") and the New York City Department of Transportation ("DOT").   The Union alleges that DOT violated § 12-306(a)(1) and (4) of the New York City Collective Bargaining Law (New York City Administrative Code, Title 12, Chapter 3) ("NYCCBL"), by unilaterally changing its policy addressing performance evaluations.   Specifically, the Union contends that the changes that DOT made to the performance evaluation policy alter members' contractual sick leave benefits.   On November 19, 2012, the Union filed an amended verified improper practice petition to add a claim that DOT, by issuing the new performance evaluation policy, unilaterally implemented requirements for appealing negative performance evaluations.   Respondents argue that the Union's claim that DOT improperly implemented the evaluation appeal procedure is untimely.   They also contend that the Union's allegation that DOT unilaterally changed the contractual sick leave policy should be deferred to arbitration and that, if the claim is not deferred, the Board should dismiss the claim because the establishment of criteria for performance evaluations is a managerial prerogative.   Respondents further contend that any changes to the policy's sick leave provisions are *de minimis*, and that the related DOT e-mail elaborating on the policy was subsequently rescinded, rendering any related claim moot.   This Board finds that the claim asserted in the amended petition is timely.   It further holds that DOT violated the NYCCBL when it implemented new performance evaluation appeal procedures but that its implementation of the other performance evaluation procedures did not violate the statute.   Accordingly, the petition is granted, in part, and denied, in part.

# BACKGROUND

DOT is responsible for the management of a large portion of the City's transportation structure, including the operation and maintenance of the Staten Island Ferry.   The Union is the certified bargaining representative of approximately 300 individuals employed at DOT, including Deckhands, Oilers, and Ferry Terminal Supervisors.

The City Charter mandates that the work performance of all full-time, non-managerial City employees be evaluated annually.   In accordance with this mandate, DOT regularly conducts performance evaluations of its employees.   Performance evaluations serve as the basis for personnel decisions such as promotions, demotions and terminations, transfers, monetary rewards, and training.

The form used by Ferry Division Supervisors to evaluate employees ("Performance Evaluation Form" or "Form") has been in effect since at least 2008.   The section of the Form entitled Employee's Overall Rating provides:

> The overall rating is derived from the ratings for individual tasks, taking into consideration the importance of priority tasks.   The supervisor should also consider factors not reflected in the tasks statements.   These may include the employee's attendance, punctuality, impact on the work of others, promptness of work, accuracy and completeness of work, decision making ability, initiative, dependability, effectiveness in planning and executing work assignments, adaptability to changing conditions, and other factors relevant to work performance.

(Ans., Ex. 2)   On the Form, the supervisor must fill in each task and standard on which the employee is being rated and rate the employee's performance as one of the following: unratable, unsatisfactory, conditional, good, very good, or outstanding.   The Absence Control Information section of the Form seeks the "absence instances," the number of days of "undocumented sick leave" and "documented sick leave," the number of "A.W.O.L.-days," and "lateness-hours"

attributed to the employee during the evaluation period.   (*Id.*)   Additional sections on the Form

include the Supervisor's Justification for Overall Rating and the Supervisors' Plans and

Recommendations.   At the bottom of the Form, following the signature section, it states: "If you

are dissatisfied with the above rating, you have ten calendar days from the date the rating is given

to submit an appeal to your Division Evaluation Review Board.   Submit a copy of this

Performance Evaluation Form with your appeal to the Personnel Coordinator of the Division under

which your work unit falls."   (*Id.*)

The 1998 Performance Evaluation Policy

In 1998, DOT issued the "DOT Instructional Guide to Completing the Nonmanagerial

Performance Evaluation Form" ("1998 Policy"), which provided step-by-step guidance to

supervisors on how to evaluate an employee's performance.   (Ans., Ex. 1)   Sections C and D of

the 1998 Policy address, in whole or in part, the role of attendance in the determination of an

employee's overall performance rating.   They provide:

> C.   ABSENCE CONTROL
> The information requested concerning absences due to sick leave
> must be included on the [performance evaluation] form, or it will be
> considered incomplete.
>
> D.   OVERALL RATING
> After the employee has been assigned a rating for each individual
> task, the supervisor must assign an overall performance rating to the
> employee.   The overall performance rating will be derived from the
> general tendency indicated by ratings for individual tasks, taking
> into consideration the importance or priority of tasks.   The
> supervisor should also consider factors not reflected in the tasks
> statement, such as attendance, punctuality, impact on the work of
> others, promptness and speed, accuracy and completeness, decision
> making ability, initiative, dependability, effectiveness in planning
> and executing assignments, adaptability to changing conditions and
> other factors relevant to the employee's work performance.   **(The
> supervisor must also consider the employee's usage of
> undocumented sick leave in determining the overall
> performance rating.)** . . .

(*Id.*) (emphasis in original)   The 1998 Policy does not contain an evaluation appeal procedure.

The 2012 Performance Evaluation Policy

The 1998 Policy remained in effect until early 2012, when DOT issued a new policy.   On or about March 12, 2012, DOT's Director of Administration circulated a policy to DOT Ferry Division Supervisors entitled "DOT Non-Managerial Performance Evaluations" ("2012 Policy").[1] (Am. Pet., Ex. B)   The 2012 Policy was accompanied by a memorandum to Ferry Division Supervisors advising them, among other things, that the evaluations are to be conducted annually and that the procedures are retroactively applicable to employee performance for the calendar year 2011.

The 2012 Policy consists of three sections: Part One, "Formulating Tasks and Standards;" Part Two, "Instructional Guide to Completing the Non-Managerial Performance Evaluation Form;" and Part Three, "Non-Managerial Performance Evaluation Appeal Procedure."   (Am. Pet., Ex. B)   Sections B and D of Part Two address, in whole or in part, the role of attendance in the determination of an employee's overall performance rating.   Section B states:

> B.   ABSENCE CONTROL INFORMATION
>
> Attendance and punctuality are critical to the performance of tasks, and are important factors in making an overall evaluation. Excessive absences and latenesses adversely affect an employee's ability to perform satisfactorily.
>
> The information requested which may adversely affect the employee's overall rating, such as undocumented sick leave, AWOL, or latenesses must be included on the form, or it will be considered incomplete.

(Am. Pet., Ex. B)   With the exception of the heading, the language in § D of the 2012 Policy is

---

[1] The Union had access to the 2012 Policy as of no later than March 29, 2012.

identical to the language in the correlating section of the 1998 Policy.[2]

Part Three of the 2012 Policy provides a multi-level appeal procedure for employees who wish to appeal their performance evaluation rating.   It states that the employee should first try to resolve the disputed issue through discussion with his or her immediate supervisor.   If they are unable to resolve the matter, the employee should then request in writing that the complaint be reviewed by his supervisor's supervisor (the "Reviewer") within 10 working days.   The Reviewer then has 10 working days in which to provide the employee with a written response.   If the complaint is not resolved, or if the Reviewer does not respond within the prescribed time frame, the employee has 10 working days to submit a written appeal along with a copy of the Performance Evaluation Form to his or her Division's Evaluation Review Board ("DERB").[3]

The procedure further provides that the DERB has 15 days to issue a written determination. If the employee is dissatisfied with the DERB's conclusion, the employee has 10 working days to submit a written appeal to DOT's Director of Personnel for review by the Agency Review Board. If still unsatisfied, the employee may then make a final written appeal to the Agency Head.   The DOT Commissioner has final authority in all cases of unresolved complaints.

<u>Margaret Gordon's E-mail Correspondence</u>

On March 21, 2012, Margaret Gordon, DOT's Executive Director for Safety & Security, Ferry Division, sent an e-mail to Ferry Division Supervisors instructing them on how to evaluate employees who have "excessive undocumented absences" ("Gordon e-mail").   (Am. Pet., Ex. B) The e-mail states, in relevant part:

I will reiterate that those with excessive undocumented absences

---

[2] The heading of § D of the 2012 Policy is "EMPLOYEE'S OVERALL RATING".

[3] Part Three also lists the documentation and other information that must be included in the employee's written appeal to DERB.

> need to be called out on it.  For those PERMANENT employees
> with 5 to 9 UNDOCUMENTED DAYS absent, a "Conditional"
> rating should be rendered.    For those with 10 or more
> UNDOCUMENTED DAYS absent, an "Unsatisfactory" rating
> needs to be rendered.  There are a few employees who do fit this
> definition and will need to be discussed with them.   In the end, you
> must be able to count on your crew to show up.   If their days absent
> are documented, then there is true evidence that they made the right
> decision to stay home.  I get that everyone needs a mental health
> day every now and then (except new probationary staff . . . they
> haven't worked here long enough to need a mental health day)
> however taking more than 5 is unacceptable and more than 10 is
> egregious in nature.

(*Id.*)  On July 19, 2012, following the Union's objection, in its petition, to the content of the
Gordon e-mail, DOT rescinded it.  DOT asserts that, as a result, it subsequently withdrew all
performance evaluations of employees affected by the e-mail.

The Collective Bargaining Agreement

The Union and Respondents are parties to the 2008-2010 Marine Consolidated Agreement
("Agreement"), which remains in *status quo* pursuant to NYCCBL § 12-311(d).   Article IV-A, §
10(b)(4) of the Agreement addresses sick leave use and provides, in pertinent part:

> a.    A verifying statement from the Employee's doctor shall not
> be required by the Employer for sick day claims of two (2)
> days or less.
> b.    For claims of more than two (2) working days, the Employee
> must secure a verifying statement from his doctor to support
> his claim.  This statement should be sent in as soon as
> possible after the period of absence is over.
> c.    A verifying statement from the Employee's doctor may be
> required by the department where there is absence of more
> than one (1) working [day] in the case of chronic
> absenteeism.  The agency may require a doctor's note for
> one (1) day of sick leave where there is a pattern of sick
> leave abuse, such as consistently taking off the first or last
> day of a work week.  Prior to determining that there is a
> pattern of abuse, a meeting will be conducted between the
> union and management to discuss the findings.    An
> Employee shall be deemed to be in the category of chronic
> absenteeism if such Employee falls within the criteria set

> forth in Final Warning (STEP IV) of the City of New York –
> Attendance Policy (commonly referred to as the "City's
> Absence Control Plan") or any successor thereto . . .

(Am. Pet., Ex. A)

## POSITIONS OF THE PARTIES

### Union's Position

The Union contends that DOT violated NYCCBL § 12-306(a)(1) and (4) by unilaterally creating new policies and procedures for performance evaluations and evaluation appeals.[4]   The Union urges the Board to reject Respondents' timeliness defense to the claim that DOT unilaterally implemented the performance evaluation appeal procedure because the claim relates back to the original filing date of the petition.   The Union contends that Respondents were on notice of the claim upon receipt of the original petition because it "explicitly" raised the fact that DOT created a policy that "contains the performance evaluation appeals procedure" and that the Union was challenging these actions in the original petition.   (Reply Memo of Law in Support of Am. Pet., at 2)   It also points out that the 2012 Policy, which contains the appeal procedure, was attached as an exhibit to the original petition.   Therefore, the Union argues, the amended petition

---

[4] NYCCBL § 12-306(a) provides, in pertinent part:

> It shall be an improper practice for a public employer or its agents:
>
> (1) to interfere with, restrain or coerce public employees in the
>     exercise of their rights granted in section 12-305 of this chapter;
>                                     ***
> (4) to refuse to bargain collectively in good faith on matters within
>     the scope of collective bargaining with certified or designated
>     representatives of its public employees[.]

"merely augments" its theory of the case as to the appeals claim by adding additional details.   (*Id.*, at 3)

With regard to performance evaluations, the Union contends that the 2012 Policy created new procedures addressing time and leave matters, which are terms and conditions of employment and thus mandatorily negotiable.   It asserts that these matters were already addressed in the parties' Agreement, and that the new procedures conflict with the Agreement and undermine members' contractual rights.   The Union points out that, under the Agreement, Union members do not have to produce medical documentation unless they are absent for three or more consecutive days or if they are considered chronically absent.   In contrast, the 2012 Policy "explicitly draws a negative inference in connection with all undocumented absences."[5]   (Memo of Law in Support of Am. Pet., at 13)   Compounding the matter, according to the Union, is the fact that its members did not learn that undocumented absences would be considered in their evaluations until after the evaluation period had concluded.   The Union contends that the 2012 Policy further conflicts with the Agreement by denying employees a meeting with the Union and the employer to discuss any perceived shortcomings in their time and leave record prior to being considered chronically absent.   Thus, the Union asserts that under the 2012 Policy, DOT is encouraged to "draw a negative inference and in effect punish . . . members who do not produce verifying doctor's notes for each and every absence."   (*Id.*)   In short, the Union contends, DOT's actions in creating the 2012 Policy demonstrates its failure to bargain in good faith, which interferes with the Union's ability to act as a bargaining representative for its members.

The Union argues that the DOT's unilateral implementation of procedures for the appeal of unfavorable performance evaluations also violates the NYCCBL.   Without negotiating with the

---

[5] The Union maintains that the Gordon e-mail is encompassed within the "2012 Policy" and represents DOT's policy on sick leave.

Union, the DOT imposed new requirements on its employees who wish to appeal their evaluations. These new procedures require additional acts of Union members, including attempting to directly resolve disputes with their supervisor without Union involvement, submitting a written request to the Reviewer, submitting an appeal to the DERB, creating a memo and signing the performance evaluation.

The unilateral changes prescribed by the 2012 Policy are not *de minimis* or moot, according to the Union. It argues that neither the changes to the sick leave provisions nor the appeal procedure is *de minimis* because both require increased employee participation. The Union further contends that, although the Gordon e-mail was rescinded, its claims are not moot because they are based on the unilateral changes that DOT made to the "performance evaluation appeals procedure and the sick leave procedure" and not on that e-mail. (Reply Memo of Law in Support of Am. Pet., at 13) Moreover, it asserts that, since the 2012 Policy is still in effect, there has been no change in circumstances that would have eliminated the underlying dispute between the parties and rendered it moot.

According to the Union, Respondents' argument that the Union's claim that DOT's unilateral changes to the performance evaluation procedures altered the sick leave provisions of the Agreement requires a contractual interpretation is misleading. It contends that the Board has jurisdiction over an alleged breach of contract where the disputed act would also constitute an improper practice. If the instant matter were to be deferred to arbitration to resolve the contractual dispute, the question of whether Respondents violated the NYCCBL would not be addressed. Thus, deferral is inappropriate.

**City's Position**

Initially, Respondents argue that the Board should dismiss the claim regarding the performance evaluation appeal procedure as untimely.   They contend that the 2012 Policy was distributed on March 12, 2012, yet the Union asserted its allegation concerning the performance evaluation appeal procedure for the first time on November 19, 2012, the date on which it filed its amended petition.   (Ans., ¶ 41)   It argues that this is well beyond the four-month statute of limitations set forth in NYCCBL § 12-306(e) and Section § 1-07(b) of the Rules of the Office of Collective Bargaining (Rules of the City of New York, Title 61, Chapter 1).   Respondents contend that the Board should not find that the Union's appeal procedure claim relates back to the filing date of the original petition because the claim relates to an entirely different section of the 2012 Policy than the section with which the Union took issue in the original petition, and is completely unrelated to sick leave policy, which is the sole focus of the unilateral change claim in the initial petition.   Moreover, they contend that the Union cannot argue that it was not aware of the evaluation appeal procedure, and thus that the start of the limitations period should commence later for that claim than for its original allegations.

In response to the Union's allegation that DOT's unilateral changes to the performance evaluation procedures altered the Agreement's sick leave provisions, Respondents contend that the Board should defer the matter to arbitration.   They assert that, to the extent the Union premises its claim solely on an alleged conflict between DOT policy and the Agreement, the claim is improper in the current forum because it requires an interpretation of the Agreement.   Since the Board is prohibited from exercising jurisdiction over contract violations, the matter should be deferred.

Respondents argue that, in the event the Board does not defer the matter to arbitration, it should dismiss the petition because any alleged unilateral changes that DOT made to the

performance evaluation policy either relate to a non-mandatory subject of bargaining or are *de minimis* or moot.   Respondents first contend that DOT had no duty to bargain over the alleged unilateral changes to the sick leave policy because the 2012 Policy and the Gordon e-mail do not alter the procedures required for an employee to use sick leave.   Rather, any change that DOT allegedly made to the 2012 Policy pertaining to sick leave, such as consideration of undocumented absences, is a change to the performance evaluation criteria.   Respondents argue that the selection of such criteria is a right reserved to management and a clearly established non-mandatory subject of bargaining.

Second, Respondents contend that any unilateral changes that DOT made to the 2012 Policy are non-material changes to its wording.   They maintain that DOT's policy, both before and after the issuance of the 2012 Guide, was to take undocumented sick leave into consideration in determining performance evaluations.   Both the 1998 Policy and the 2012 Policy contain identical language mandating that supervisors consider undocumented sick leave in determining an employee's rating.   Any additional language that the 2012 Policy added pertaining to DOT's consideration of absences was a change in form only, and did not alter DOT policy.   Such minor changes must be considered *de minimis*.   Accordingly, the DOT had no duty to bargain over them.

Additionally, Respondents argue that the policy set forth in the Gordon e-mail and all negative evaluations affected by it have been rescinded.   Accordingly, there is no need for any further remedy, and the claim should be dismissed as moot.

## DISCUSSION

As a threshold matter, we address Respondents' procedural defense of timeliness. Respondents contend that the Union alleged that DOT unilaterally created an evaluation appeal

procedure, in violation of NYCCBL § 12-306(a)(1) and (4), for the first time in its amended

petition.    According to Respondents, the amended petition was filed more than eight months after

the 2012 Policy, which describes the appeal procedure, was issued, well beyond the NYCCBL's

four month statute of limitations.[6]    Respondents further argue that this new allegation is entirely

unrelated to the claims asserted by the Union in its original petition.

We find, however, that the petition as originally filed encompasses the allegation that the

adoption of the appeal procedure constitutes a violation of the NYCCBL.    In the original petition,

the Union contended that DOT unilaterally issued the 2012 Policy, which established new policies

and procedures for conducting performance evaluations.    The Union asserted that the 2012 Policy

is divided into three parts, one of which is a section addressing the handling of employee appeals

of performance evaluations.    Importantly, in its request for relief in the original petition, the

Union sought the recission of the entire 2012 Policy, which includes the appeal procedure section.

While the Board has not addressed a timeliness issue of this nature extensively, we have long held

that pleadings are to be liberally construed.    *See*, *e.g.*, *DEA*, 4 OCB2d 8, at 8 (BCB 2011);

*NYSNA*, 51 OCB 37, at 6 (BCB 1993).    We find, therefore, that the claim that the adoption of the

appeal procedure violates the NYCCBL falls "within the scope of the original causes of action."[7]

*McAllan*, 31 OCB 2, at 16.    The claim is thus timely.

---

[6] NYCCBL § 12-306(e) provides, in relevant part:

> A petition alleging that a public employer . . . has engaged in or is
> engaging in an improper practice in violation of this section may be
> filed with the board of collective bargaining within four months of
> the occurrence of the acts alleged to constitute the improper practice
> or of the date the petition knew or should have known of the
> occurrence.

[7] The fact that the Union filed an amended petition does not negate the fact that its amended claim
falls "within the scope of the original causes of action" in the original petition.    *See id.*

On the merits, the Union argues that DOT unilaterally created and implemented the 2012 Policy without first bargaining with the Union, in violation of NYCCBL § 12-306(a)(4), and used it to make personnel decisions impacting the terms and conditions of its members' employment. Specifically, the Union contends that the DOT changed the performance evaluation procedures pertaining to undocumented absences and, in doing so, contradicted the Agreement's time and leave provisions.   It also contends that DOT unilaterally created an evaluation appeal procedure that requires increased employee participation and eliminates the Union's role in the appeal process.

NYCCBL § 12-306(a)(4) makes it an improper practice for a public employer or its agents "to refuse to bargain collectively in good faith on matters within the scope of collective bargaining with certified or designated representatives of its public employees."   Thus, NYCCBL § 12-306(c) requires public employers and employee organizations "bargain over matters concerning wages, hours, and working conditions, and any subject with a significant or material relationship to a condition of employment." *CEU, L. 237, IBT*, 2 OCB2d 37, at 11 (BCB 2009). It is well-established that "[a]s a unilateral change in a term and condition of employment accomplishes the same result as a refusal to bargain in good faith, it is likewise an improper practice." *DC 37, L. 420*, 5 OCB2d 19, at 9 (BCB 2012).   To establish that a unilateral change constitutes an improper practice, "[t]he petitioner must 'demonstrate the existence of such a change from the existing policy or practice' [and establish] . . . that the change as to which it seeks to negotiate is or relates to a mandatory subject of bargaining." *DC 37*, 4 OCB2d 19, at 22 (BCB 2011) (citations omitted).

We first examine whether DOT, in implementing the 2012 Policy, changed the procedures for the consideration of undocumented absences in the context of determining an employee's

performance rating.   Sections B and D of Part Two of the 2012 Policy are the only sections that specifically refer to employee absences and/or attendance.   Section D, which addresses the factors that a supervisor should consider in determining an employee's overall performance rating, including attendance and "usage of undocumented sick leave," is identical to Section D of the 1998 Policy.   Section B of the 2012 Policy, titled "Absence Control Information," adds additional language to the corresponding section of the 1998 Policy.   That section of the 1998 Policy reads, in its entirety: "The information requested concerning absences due to sick leave must be included on the form, or it will be considered incomplete."   (Ans., Ex. 1)   That sentence in the 2012 Policy was changed to read: "The information requested which may adversely affect the employee's overall rating, such as undocumented sick leave, AWOL, or latenesses must be included on the form, or it will be considered incomplete."   (Am. Pet., Ex. B)   The additional language in the 2012 Policy does not alter the meaning or intent of the section, particularly since affected employees were already on notice, at least as early as 1998, that "undocumented sick leave, AWOL, or latenesses" could negatively affect an employee's rating.   Rather, this new language simply clarifies and expands upon already existing concepts.   Section B of the 2012 Policy includes the following new sentences: "Attendance and punctuality are critical to the performance of tasks, and are important factors in making and overall evaluation.   Excessive absences and latenesses adversely affect an employee's ability to perform satisfactorily."   We find, however, that these new sentences do not amount to the creation of a new policy or practice.   *See DC 37*, 4 OCB2d 19, at 22.   As stated above, they simply clarify and expand upon already existing concepts and information.   Indeed, it is clear from the 1998 Policy that attendance and punctuality have long been considered important factors in determining an employee's overall rating. Accordingly, we find that none of the revisions that DOT made to the 2012 Policy with regard to

the consideration of absences and/or attendance rise to the level of a unilateral change from an existing policy or practice.

We next examine whether the Gordon e-mail created a new policy which altered employees' contractual rights with regard to the use of sick leave.   As an initial matter, Respondents argue that, because the Gordon e-mail was rescinded, the issue is moot.   We disagree and note that DOT did not rescind the Gordon e-mail until after the Union's petition was filed, and nearly four months after the e-mail was issued.   We have held that an improper practice claim does not become moot "merely because the acts alleged to have been committed in violation of the law have ceased.   The question of a remedy for a prior violation of law and the matter of deterring future violations remain open to consideration."   *DC 37*, 6 OCB2d 8, at 12-13 (BCB 2013) (quoting *DC 37*, 75 OCB 14, at 13 (BCB 2005)).   Accordingly, the fact that DOT rescinded the Gordon e-mail does not nullify the Union's allegation.

The Gordon e-mail was sent to Ferry Division Supervisors shortly after the 2012 Policy was disseminated and provided guidance on how to evaluate the performance of employees who have "excessive undocumented absences."   (Am. Pet., Ex. B)   To that end it stated, in part, "[f]or those PERMANENT employees with 5 to 9 UNDOCUMENTED DAYS absent, a 'Conditional' rating should be rendered.   For those with 10 or more UNDOCUMENTED DAYS absent, an 'Unsatisfactory' rating needs to be rendered." (*Id.*)   In short, the Union contends that in the Agreement, members are not required to submit medical documentation to DOT unless they are absent for three or more consecutive days.   In the case of a member's chronic absenteeism, he or she may be required to submit medical documentation for absences in excess of one day. However, before determining that a member is chronically absent, DOT must meet with the Union to discuss its findings.   The Union asserts that the Gordon e-mail eliminates these rights by

drawing negative inferences with respect to all absences for which medical documentation is not produced and failing to put members on notice to any shortcomings in their attendance record prior to drawing such inferences.

We find the Union's argument unavailing. First, the Gordon e-mail does not alter or eliminate any of the contractual sick leave provisions. Members are still afforded the right to take two consecutive sick days without providing medical documentation. Similarly, the e-mail does not affect the Union's right to have a meeting with management to discuss the findings of an employee's alleged sick leave abuse.[8]

Even if we were to find that, by issuing the Gordon e-mail, DOT unilaterally implemented a new policy for evaluating members' performance, we would still find that there was no violation of NYCCBL § 12-306(a)(4) because the Gordon e-mail does not implicate a mandatory subject of bargaining. This Board has drawn a distinction between unilateral changes to performance evaluations which are procedural versus those that are substantive. *See, e.g.*, *DC 37, L. 3631*, 4 OCB2d 34, at 12 (BCB 2011); *PBA*, 63 OCB 2, at 16-17 (BCB 1999). We have held that, where a change to an evaluation process is clearly a management prerogative and does not implicate any expectation or action on the part of the employee, the change is considered substantive and thus a non-mandatory subject of bargaining. *See PBA*, 63 OCB 2, at 17 (BCB 1999) (changes in performance evaluation process were substantive and not procedural where "the employee is not required to do anything procedurally different from before"); *see also Matter of Patrolmen's Benevolent Assn. of the City of New York v. New York City Bd. of Collective Bargaining*, Index No. 112687/04, at 4 (Sup. Ct. N.Y. Cty. Aug. 17, 2005) (Friedman, J.); *affd.*, 38 A.D.3d 482 (1st

---

[8] Because we find that the 2012 Policy does not alter, or in any way implicate, the sick leave provisions of the Agreement, we reject Respondents' defense that the Union's claim is improperly before the Board and should be deferred to the arbitration process.

Dept. 2007) ("imposition of criteria used for evaluation, and substantive changes in that criteria, are areas of managerial prerogative which need not be bargained with an employee organization"); *PBA*, 73 OCB 12, at 15 (BCB 2004) (procedural change to a performance evaluation that requires action solely on the part of a supervisor is substantive in nature).

On the other hand, changes which require additional acts of an employee as part of an evaluation process are deemed "procedural" in the sense that they do not fall within the managerial prerogative.  *See DC 37*, L. 1508, 79 OCB 21, at 26 (BCB 2007) (citing *Matter of Patrolmen's Benevolent Assn. of the City of New York v. New York City Bd. of Collective Bargaining*, Index No. 112687/04, at 6 ("where an employer imposes a new requirement that an employee meet with a supervisor as part of an evaluation process, this requirement is a procedure that is subject to mandatory bargaining") (emphasis in original); *see also Suffolk Cnty. Bd. Of Coop. Educ. Serv.*, 17 PERB ¶ 3043 (1984) (requirement that teacher participate in pre-observation conference as part of evaluation procedure is unilateral change in procedure and a mandatory subject of bargaining). These types of changes to evaluation procedures are mandatory subjects of bargaining.

Here, it is clear that the Gordon e-mail established criteria, not procedures, for the evaluation of employee performance.   Specifically, it provided new criteria for determining when an employee should be given a conditional versus an unsatisfactory rating.   It did not mandate or implicate any expectation or additional action on the part of the employee.  *See DC 37*, L. 1508, 79 OCB 21, at 26.   Moreover, the Gordon e-mail was directed to supervisors, not as a general e-mail to employees.   This directive was within DOT's rights to provide its Ferry Division Supervisors with a framework within which to evaluate employee performance and is not bargainable.[9]

---

[9] *Cf. Matter of Poughkeepsie City Sch. Dist.*, 19 PERB ¶ 3046 (1986), in which the union objected

However, we find that DOT's imposition of a new appeal procedure for performance evaluations is a unilateral change which violates NYCCBL § 12-306(a)(4).   The 1998 Policy does not contain a procedure for the appeal of performance evaluations.   With the exception of a two-sentence statement at the bottom of the Performance Evaluation Form providing that an employee had 10 calendar days to appeal his rating, no other written procedures pertaining to performance evaluation appeals existed prior to the issuance of the 2012 Policy.   In contrast, the appeal procedure in the 2012 Policy is nearly two pages long and describes multiple levels of appeal.   This new procedure represents a substantive, material change from the brief statement provided in the Form.   The procedure also provides that employees who wish to appeal their rating must take various steps to submit an appeal.   Those steps mandate greater employee participation as the process reaches a higher level of management.   Here, it is the employee, and not the supervisor, who is required to take additional steps which were not previously required to access and comply with the procedure.   *See DC 37*, L. 1508, 79 OCB 21, at 26.   Thus, DOT has made a procedural change to a mandatory subject of bargaining without first bargaining over it, in violation of NYCCBL § 12-306(a)(4).   When an employer violates its duty to bargain in good faith, there is also a derivative violation of NYCCBL § 12-306(a)(1).   *See DC 37*, 77 OCB 34, at 18 (BCB 2006).   Accordingly, we find that DOT violated NYCCBL § 12-306(a)(1) and (4).

---

to the school district's issuance of a policy statement providing that employees who take more than ten days of paid sick leave per year or more than three such days which extend weekends or holidays without proper medical documentation will be presumed to have abused their leave rights.   PERB held that while sick leave is a mandatory subject of bargaining, an employer has the right to ascertain that employees are using it for the purposes contemplated by the parties' agreement.

## ORDER

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby

ORDERED, that the verified improper practice petition filed by Local 333, United Marine Division, International Longshoreman's Association, AFL-CIO, docketed as BCB-3029-13, is hereby granted, in part, and denied, in part; and it is further

ORDERED, that the New York City Department of Transportation rescind Part Three of the 2012 Policy, the "Non-Managerial Performance Evaluation Appeal Procedure"; and it is further

ORDERED, that the New York City Department of Transportation bargain in good faith with the Union before implementing any changes to performance evaluation appeal procedures; and it is further

DIRECTED, that the New York City Department of Transportation post the attached Notice of this Decision and Order for no less than thirty (30) days at all locations used by DOT for written communications with employees represented by Local 333, United Marine Division, International Longshoreman's Association, AFL-CIO.

Dated:   September 23, 2013
         New York, New York


                                        MARLENE A. GOLD
                                        CHAIR

                                        CAROL A. WITTENBERG
                                        MEMBER

                                        M. DAVID ZURNDORFER
                                        MEMBER

6 OCB2d 25 (BCB 2013)                                                                      21

      PAMELA S. SILVERBLATT
            MEMBER

      PETER B. PEPPER
            MEMBER

      GWYNNE A. WILCOX
            MEMBER

**NOTICE**
**TO ALL EMPLOYEES**
**PURSUANT TO**
**THE DECISION AND ORDER OF THE**
**BOARD OF COLLECTIVE BARGAINING**
**OF THE CITY OF NEW YORK**
**and in order to effectuate the policies of the**
**NEW YORK CITY COLLECTIVE BARGAINING LAW**

We hereby notify:

That the Board of Collective Bargaining has issued 6 OCB2d 25 (BCB 2013), determining an improper practice petition between Local 333, United Marine Division, International Longshoreman's Association, AFL-CIO, and the City of New York and the New York City Department of Transportation.

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby:

ORDERED, that the improper practice petition filed by Local 333, United Marine Division, International Longshoreman's Association, AFL-CIO, docketed as BCB-3029-12 be, and the same hereby is, granted, in part, and denied, in part; and it is further

ORDERED, that the New York City Department of Transportation rescind Part Three of the DOT Non-Managerial Performance Evaluations, entitled "Non-Managerial Performance Evaluations Appeal Procedure"; and it is further

ORDERED, that the New York City Department of Transportation bargain in good faith with the Union before implementing any changes to performance evaluation appeal procedures; and it is further

DIRECTED that the New York City Department of Transportation post this Notice for no less than thirty (30) days at all locations it uses for written communications with employees represented by Local 333, United Marine Division, International Longshoreman's Association, AFL-CIO.

**The New York City Department of Transportation**
**(Department)**

**Dated:**                              _____(Posted By)

_____
                    **(Title)**

   *This Notice must remain conspicuously posted for 30 consecutive days from the date of posting, and must not be altered, defaced, or covered by any other material.*