EXHIBIT 14

**City v. EMS Superior Officers Assoc., 75 OCB 15 (BCB 2005) [Decision No. B-15-2005, (Scope)]**

OFFICE OF COLLECTIVE BARGAINING
BOARD OF COLLECTIVE BARGAINING
------------------------------------------------------------------------x
In the Matter of the Scope of Bargaining Proceeding

-between-

THE CITY OF NEW YORK,                          Decision No. B-15-2005
                                               Docket No. BCB-2456-05
                    Petitioner,                      (I-243-04)

-and-

EMS SUPERIOR OFFICERS ASSOCIATION

                    Respondent.
------------------------------------------------------------------------x


## DECISION AND ORDER

On February 4, 2005, the City of New York ("City") filed a verified scope of bargaining

petition seeking a determination whether a number of demands raised in negotiations between the

City and the Emergency Medical Services Superior Officers Association ("Union") are

mandatory subjects of bargaining within the meaning of § 12-307 of the New York City

Collective Bargaining Law (New York City Administrative Code, Title 12, Chapter 3)

("NYCCBL"). The City contends that certain of the Union's demands concern nonmandatory

subjects and may not be submitted to an impasse panel for consideration. In response, the Union

has withdrawn several demands, revised one, and argues that the remaining demands, as revised,

either are mandatory subjects of bargaining or already have been agreed to. In addition, the

Union alleges that one demand involves a claimed practical impact on safety that should proceed

to a hearing. The City argues that the practical impact claim is untimely and without merit. This

Decision No. B-15-2005                                                                 2

Board finds the Union's demands are bargainable in part and not bargainable in part, and that a

hearing shall be held on the Union's practical impact claim.


## BACKGROUND

The Union is the certified representative of employees in the title Supervising Emergency

Medical Service Specialist ("SEMSS"), detailed as Deputy Chiefs and Division Commanders,

pursuant to Board of Certification Decision Nos. 10-2001 and 4-2002. These employees work in

the Emergency Medical Service which is part of the Fire Department of the City of New York

("FDNY"). On January 27, 2003, the parties began negotiations for their first collective

bargaining agreement for these employees. After several formal and informal bargaining

sessions and mediation sessions, on July 20, 2004, the Union filed a request for the appointment

of an impasse panel. The City objected to the request. When further mediation efforts proved

unsuccessful, this Board declared an impasse in negotiations on October 28, 2004. Following a

selection process, on January 3, 2005, the Board designated arbitrator Maurice C. Benewitz as

the impasse panel to hear and determine the impasse between the parties. Hearings are scheduled

to commence on May 11, 2005.

The City seeks a determination that certain of the Union's demands are not within the

scope of mandatory collective bargaining. The City further notes that while it has not challenged

Demands 6, 7, 8, 10, and 12, which concern subjects allegedly covered under the Citywide

Agreement, it does not waive its rights as to those subjects with respect to pending litigation in

the courts.[1]

    In response to the City's petition, the Union has withdrawn its Demand Nos. 11, 15, and 19. Accordingly, these Demands will not be discussed in this Decision. The Union also has revised its Demand No. 13, to which the City continues to object. We shall consider this demand in its revised form.

    Following receipt of the Union's answer, the City submitted a letter, dated April 18, 2005, clarifying its position as to Union Demand No. 9.

## RELEVANT STATUTORY PROVISIONS

Section 12-307 of the NYCCBL provides:

> Scope of collective bargaining; management rights.  a.  Subject to the provisions of subdivision b of this section and subdivision c of section 12-304 of this chapter, public employers and certified or designated employee organizations shall have the duty to bargain in good faith on wages (including but not limited to wage rates, pensions, health and welfare benefits, uniform allowances and shift premiums), hours (including but not limited to overtime and time and leave benefits) and working conditions, except that:

> (1) with respect to those employees whose wages are determined under section two hundred twenty of the labor law, there shall be no duty to bargain concerning those matters determination of which is provided for in said election;

> (2) matters which must be uniform for all employees subject to the career and salary plan, such as overtime and time and leave rules, shall be negotiated only with a certified employee organization, council or group of certified employee

---

[1] Local Laws 18 and 19 of 2001 amended the level-of-bargaining provisions of NYCCBL § 12-307(a)(4) to confer "uniformed service" status on, among others, supervisors of emergency medical technicians and advanced emergency medical technicians. On August 17, 2001, the Mayor filed a lawsuit against the City Council in state court seeking a judgment declaring the amendments unlawful and enjoining their application and enforcement. On January 3, 2005, the Supreme Court, New York County, held that Local Laws 18 and 19 are "valid and enforceable." *Mayor of New York*, N.Y.L.J., Jan. 21, 2005, at 18. The City has indicated that it will appeal this decision. The validity of the amendments is not an issue in this scope of bargaining proceeding.

organizations designated by the board of certification as being the certified representative or representatives of bargaining units which include more than fifty percent of all such employees, but nothing contained herein shall be construed to deny to a public employer or certified employee organization the right to bargain for a variation or a particular application of any city-wide policy or any term of any agreement executed pursuant to this paragraph where considerations special and unique to a particular department, class of employees, or collective bargaining unit are involved;

(3)  matters which must be uniform for all employees in a particular department shall be negotiated only with a certified employee organization, council or group of certified employee organizations designated by the board of certification as being the certified representative or representatives of bargaining units which include more than fifty per cent of all employees in the department;

(4)  all matters, including but not limited to pensions, overtime and time and leave rules which affect employees in the uniformed police, fire, sanitation and correction services, shall be negotiated with the certified employee organizations representing the employees involved;

(5)  matters involving pensions for employees other than those in the uniformed forces referred to in paragraph four hereof, shall be negotiated only with a certified employee organization, council or group of certified employee organizations designated by the board of certification as representing bargaining units which include more than fifty per cent of all employees included in the pension system involved.

b.  It is the right of the city, or any other public employer, acting through its agencies, to determine the standards of services to be offered by its agencies; determine the standards of selection for employment; direct its employees; take disciplinary action; relieve its employees from duty because of lack of work or for other legitimate reasons; maintain the efficiency of governmental operations; determine the methods, means and personnel by which government operations are to be conducted; determine the content of job classifications; take all necessary actions to carry out its mission in emergencies; and exercise complete control and discretion over its organization and the technology of performing its work. Decisions of the city or any other public employer on those matters are not within the scope of collective bargaining, but, notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees, such as questions of workload or manning, are within the scope of collective bargaining.

Section 12-309 of the NYCCBL provides, in relevant part:

a. Board of collective bargaining.  The board of collective bargaining, in addition to such other powers and duties as it has under this chapter and as may be conferred upon it from time to time by law, shall have the power and duty:

\* \* \*

(2) on the request of a public employer or public employee organization to make a final determination as to whether a matter is within the scope of collective bargaining;

Section 12-311(c)(3) of the NYCCBL provides, in relevant part:

\* \* \*

(c)  The report of an impasse panel shall be confined to matters within the scope of collective bargaining.

## PRELIMINARY ISSUES

The scope of mandatory collective bargaining is defined in NYCCBL § 12-307.

Mandatory subjects of bargaining generally include wages, hours, and working conditions and any subject with a significant or material relationship to a condition of employment.  *District Council 37,* Decision No. B-7-2004 at 15; *District Council 37,* Decision No. B-12-2003 at 7; *Social Service Employees Union, Local 371, AFSCME*, Decision No. B-22-2002 at 7.  Demands that are not mandatory subjects of negotiation may not be considered by an impasse panel unless submitted to the panel by the mutual agreement of the parties.  *See District Council 37*, Decision No. B-16-71 at 9; *District Council 37*, Decision No. B-4-69 at 4.  However, as the Court of Appeals has recognized:

Although terms and conditions of employment (subject to bargaining) and management prerogatives (exempt from bargaining) may be neatly separated in principle, the practical task of assigning a particular matter to one category or the other is often far more difficult.   Indeed, in many instances a matter may partake of both categories, requiring a balancing of the interests involved [citation omitted].  No litmus test has yet been devised that automatically identifies a term or condition of employment, or a management prerogative, or establishes whether a particular subject should be placed into the first category or the second.

Decision No. B-15-2005                                                                                          6

*Matter of Levitt v. Board of Collective Bargaining*, 79 N.Y.2d 120, 127 (1992); *District Council 37*, Decision No. B-8-2005 at 7.

In a scope of bargaining proceeding pursuant to NYCCBL § 12-309(a)(2), this Board's task is to apply the language of NYCCBL § 12-307 as well as relevant precedent to each of the disputed demands in order to determine whether and to what extent the demand is within the scope of bargaining.

In cases in which a demand has a dual character, we have followed a practice of advising the parties of those elements of a demand which are mandatory subjects and of those elements which are nonmandatory subjects of bargaining. *Uniformed Firefighters Ass'n*, Decision No. B-4-89 at 15-16, *aff'd Uniformed Firefighters Ass'n v. Office of Collective Bargaining*, No. 12338/89 (Sup. Ct. N.Y. Co. Oct. 30, 1989), *aff'd*, 163 A.D.2d 251 (1st Dep't 1990); *Correction Officers Benevolent Ass'n*, Decision No. B-16-81 at 9. This practice is consistent with our authority, under NYCCBL §12-309(a)(2), to determine whether a matter is within the scope of mandatory collective bargaining. We view our function in implementing this authority as one of informing the parties rather than penalizing them for refusing to bargain over disputed demands.

## THE DEMANDS

**UNION DEMAND NO. 9:**

**HEALTH AND WELFARE BENEFITS**

**(a) The Employer shall provide the annual amount of $1475.00 per annum for each active and retired employee, or the pro-rata share thereof for each employee employed during the term of this agreement, for the purpose of furnishing certain supplemental benefits for the period of employment of such employee by the Employer during the term of this Agreement, all as**

**provided for in a Supplemental Agreement to be approved as to form by the Corporation Counsel.  The payments as above indicated shall be remitted by the Employer to the _____ Welfare fund subject to the said supplemental agreement to be entered into between the Employer and the Union for the benefit of each employee and further subject to periodic audit by the Comptroller of the City of New York.**

**(b) Health and Hospitalization Benefits (1) The Employer shall provide a fully paid choice of health and hospitalization insurance plans for each employee, as is currently provided.  (2) Retirees will continue to receive these same health and hospitalization benefits.**

## City's Position

Although initially challenging the negotiability of this demand, the City, in an April 18, 2005 letter clarifying its position, states that it would agree to grant the employees at issue the same health and welfare benefits negotiated with the Municipal Labor Committee ("MLC").

## Union's Position

The City knows that the Union agreed to accept the amounts and substance of the supplemental welfare agreement and health benefits received by all City employees and retirees for the period involved.  Because this demand was agreed to, it need not be submitted to the impasse panel unless the City is reneging on its agreement.

## DISCUSSION

There is no dispute that the agreement with the MLC, to which both parties implicitly or explicitly refer, provides for health and welfare benefits received by all City employees.  The Union's answer and the City's letter of clarification demonstrate that the parties have, in fact, agreed that the City will offer and the Union will accept the same health and welfare benefits provided other City employees pursuant to the agreement with the MLC.  Accordingly, there is no need for this Board to rule on the bargainability issue raised in the petition.  Moreover, as the

Union has acknowledged, agreement having been reached, this demand need not be submitted to the impasse panel.

**UNION DEMAND NO. 13 (as revised in Union's Answer):**

### NON-SERVICE MEDICAL DISABILITY

**The Fire Department will make every effort to provide Deputy Chiefs and Division Commanders who incur a non-service connected medical disability a modified assignment in accordance with the reasonable accommodation provisions of state and federal law.**

<u>City's Position</u>

The employer is not obligated to bargain regarding modified duty assignments, since doing so would abrogate the City's management right to determine the job duties of its employees. Similarly, the assignment and direction of the duties an employee will perform is a management right. Notwithstanding the Union's revision of this demand, it should be withdrawn.

<u>Union's Position</u>

This demand, as revised, merely requires the employer to comply with federal and state law and is similar to a no-discrimination provision. It does not provide entitlement to particular assignments, as in the original demand. Therefore, it does not infringe upon any managerial prerogative.

### DISCUSSION

The Union's original formulation of Demand No. 13 would have mandated that Chiefs with a non-service connected medical disability which prevented them from performing full duty be granted a modified duty assignment at no loss in pay. In response to the City's petition, the

Decision No. B-15-2005                                                                              9

Union revised its Demand to its present form.  The revised demand would require the City to

"make every effort" to provide modified assignments ". . . in accordance with the reasonable

accommodation provisions of state and federal law."  We view this as a demand for a contractual

benefit paralleling statutory rights.  Regarding such a demand, we have held:

> We do not agree with the assertion that a matter covered by a statute is necessarily
> a prohibited subject of bargaining.  It is well-settled that the requirement of good
> faith bargaining extends to matters covered by law when they relate to terms and
> conditions of employment.

*Patrolmen's Benevolent Association*, Decision No. B-41-87 at 7, *aff'd sub nom. Caruso v.*

*Anderson*, No. 25827/87 (Sup. Ct. N.Y. Co. Feb. 19, 1988), *aff'd*, 150 A.D.2d 994 (1st Dep't

1989).

The threshold inquiry in examining a demand alleged to relate to a matter covered by

statute is whether the subject matter of the demand concerns wages, hours, or working

conditions.  If the demand does not concern these matters, then it is a nonmandatory subject of

bargaining regardless of whatever rights or benefits may be conferred by the statute in question.

*Uniformed Firefighters Ass'n*, Decision No. B-4-89 at 9-10.  However, if the demand does

concern one of these matters, it is within the scope of mandatory collective bargaining unless: (a)

it would require a contravention of law (*Patrolmen's Benevolent Ass'n*, Decision No. B-5-75 at

17; *see, Social Service Employees Union*, Decision No. B-11-68 at 18); or, (b) the subject has

been pre-empted by statute (*Patrolmen's Benevolent Ass'n*, Decision No. B-41-87 at 7); or, (c) it

would offend a public policy embodied in a statutory scheme which requires that a body or

officer be given unrestricted judgment and discretion (*Detectives Endowment Ass'n,* Decision

No. B-15-77 at 13-14, *aff'd Detectives Endowment Ass'n v. Anderson,* N.Y.L.J., May 18, 1978,

at 12 (Sup. Ct. N.Y. Co. May 4, 1978), *aff'd*, 67 A.D.2d 648 (1st Dep't 1979)).  *See generally,*
*District Council 37*, Decision No. B-7-2004 at 16; *Patrolmen's Benevolent Ass'n*, Decision No.
B-24-97 at 40-41; *Uniformed Firefighters Ass'n*, Decision No. B-4-89 at 8-11.

   We do not agree that a demand which involves terms and conditions of employment
becomes nonmandatory merely because it duplicates statutory benefits or requires compliance
with a law.  *See Committee of Interns and Residents*, Decision No. B-10-81 at 9.  We perceive no
reason why a demand which, but for a parallel statutory provision, would be a mandatory subject
of bargaining, should be converted into a nonmandatory subject in the absence of evidence of its
contravention or a statutory policy or procedure.  *Uniformed Firefighters Ass'n*, Decision No. B-
4-89 at 10-11.

   The Union's demand concerns the subject of a "reasonable accommodation" for disabled
employees.  In *District Council 37*, Decision No. B-7-2004 at 17, we held that management has the
right to establish a reasonable accommodation policy, in compliance with applicable federal
and state law, without bargaining.  *See also Doctors Council,* Decision No. B-31-2002 at 11
(compliance with Conflicts of Interest Law).  We further held that management has the right to
determine eligibility for reasonable accommodation and select amongst competing applicants for
reasonable accommodation or available assignments.  *District Council 37*, Decision No. B-7-
2004 at 17.  However, relying on the decision of the Court of Appeals in *Matter of City of*
*Watertown v. State of New York Public Employment Relations Board*, 95 N.Y.2d 73 (2000), we
stated that while management has the right to determine who qualifies for reasonable
accommodation, the procedures implementing that policy constitute a mandatory subject of
bargaining. *Id* at 17-18.

Here, the Union's demand does not mandate or guarantee a modified assignment or a reasonable accommodation for any employee, but would require FDNY to "make every effort" to grant such an assignment "in accordance with" applicable law. We find that this demand concerns "working conditions" for employees who become disabled, and that it does not fall into any of the three exceptions set forth in the second prong of our test for matters covered by statute. *See, e.g., Patrolmen's Benevolent Ass'n*, Decision No. B-24-97 at 40-41. We view this as in the nature of a demand that the employer give consideration to covered employees for such modified assignment positions as may exist, in accordance with the reasonable accommodation requirements of federal and state law. The City would retain the right to determine who is eligible for a reasonable accommodation under the law and to select among competing applicants for available assignments. *District Council 37*, Decision No. B-7-2004 at 17. To the extent the demand requires the City to consider disabled Deputy Chiefs and Division Commanders for available modified duty positions, it concerns a procedure for the implementation of FDNY's reasonable accommodation policy, it is not inconsistent with the applicable statutes, and it is a mandatory subject of bargaining.

**UNION DEMAND NO. 14:**

    **CHIEFS' ASSISTANTS**

    **A full duty EMT shall be assigned to each Chief Officer as an Assistant.**

**City's Position**

This demand seeks to determine staffing levels of the employer and is an infringement on management's right to determine such levels. To the extent the Union's answer raises, for the

first time, a claim that the removal of the Chiefs' Assistants has created a practical impact on the

safety of the Chiefs, such claim is: (a) time-barred; and (b) unsupported by allegations of fact

sufficient to warrant a hearing or to demonstrate the existence of a practical impact.  The Union

alleges that the Assistants were removed in March 2002, and that it sent a letter to the

Commissioner requesting a meeting in June 2002, but no response was received.  The Union then

waited a year before setting up a meeting with the Commissioner to discuss the issue.  In June

2003, the Commissioner informed the Union that budgetary constraints would prevent the

restoration of the Chiefs' Assistants.  The Union did not pursue the matter further until raising

the practical impact claim in its answer to the instant petition.  If this matter was of concern,  the

Union should have raised it in an improper practice petition, or in a petition requesting a hearing

on the issue of practical impact, filed within four months of the alleged violation.

         Moreover, a determination by the Board of the existence of a practical impact is a

condition precedent to the determination whether there are any bargainable issues arising from

the impact.  The Union has the burden of presenting sufficient evidence to warrant a hearing on a

practical impact claim.  Here, the only evidence submitted is the Union President's affidavit

which refers to three incidents.  In none of these incidents was he personally involved, and two of

them resulted in no harm to anyone.  These allegations, even if assumed to be true, do not

demonstrate the existence of a practical impact.  In addition, the City asks the Board to note that

the Deputy Chiefs and Division Commanders are not assigned as first responders to emergency

scenes, and the evidence in the representation case led the Board of Certification to find that

Deputy Chiefs spend only 40% of their time in the field and Division Commanders spend only

20% of their time in the field.  Thus, these employees are not rushing to emergencies with the

frequency suggested by the Union.  The allegations submitted by the Union do not warrant a

practical impact hearing.

**Union's Position**

       The Union does not directly respond to the City's contention that this demand infringes

on a management prerogative.  Instead, the Union asserts that FDNY's removal of Chiefs'

Assistants in March 2002 has had a practical impact on the safety of Deputy Chiefs as well as

other employees reporting to major and catastrophic incidents.  The Union alleges that it is

necessary for a Deputy Chief, when responding to such events, to consult a map to determine the

location to which to respond; to continually respond to and initiate telephone calls; to monitor the

radio; to comply with incident command protocol; and to read text messages displayed on a

terminal in the vehicle.  From March 1996 until March 2002 the Deputy Chiefs were assisted by

an Aide or Assistant who performed many of these duties or who drove the response vehicle

while the Deputy Chief performed these responsibilities.

       The Union submits an affidavit from its President relating three incidents that occurred

allegedly involving serious safety impact issues.  In one, in June 2002, a former Deputy Chief

responding to an incident missed pertinent information relayed to him via a mobile data terminal.

The missed information warned of possible hazardous materials at the scene.  Because the

Deputy Chief could not look down at the terminal while driving, he missed the information and

was unable to request additional or specialized resources.  In addition, at the scene, the Deputy

Chief had to use additional ambulance crews to carry out tasks that otherwise would have been

performed by an Assistant.

       In another incident, in February 2003, a Deputy Chief was nearly involved in a collision

because he took his eyes off the road to read an urgent message on the mobile data terminal.

When he looked up, the car in front of him had stopped short, and he was barely able to avert a

collision.  A further incident occurred in January 2005 when a Deputy Chief responding to a fire

and trying to talk on a cell phone, listen to the radio, and check the mobile data terminal, was cut

off by a car that veered into her lane.  Her sudden braking caused her seat belt to lock and

slammed her back into her seat.

The Union contends that because of situations like these, the removal of the Chiefs'

Assistants has caused a serious impact on safety.  The Union requests that the Board order a

hearing on this issue.

## DISCUSSION

This Board's decisions have abundantly established that the City's managerial prerogative

pursuant to NYCCBL § 12-307(b) extends to the subject of staffing levels.  This subject is

beyond the scope of mandatory collective bargaining.  *See, e.g.*, *Uniformed Firefighters Ass'n*,

Decision No. B-70-89 at 3, aff'd *Uniformed Firefighters Ass'n v. Office of Collective*

*Bargaining*, No. 1065/90 (Sup. Ct. N.Y. Co. Nov. 26, 1990); *Uniformed Firefighters Ass'n*,

Decision No. B-4-89 at 284; *United Probation Officers Ass'n*, Decision No. B-23-85 at 30-31;

*Sergeants' Benevolent Ass'n*, Decision No. B-6-79 at 21, *aff'd Sergeants' Benevolent Ass'n v.*

*Board of Collective Bargaining*, No. 11950/79 (Sup. Ct. N.Y. Co. Aug. 7, 1979).  The same is

true as to the City's prerogative to assign and direct its employees, to determine what duties

employees will perform during working hours, and to allocate duties among its employees; these,

too, are nonmandatory subjects.  *Uniformed Firefighters Ass'n*, Decision No. B-2-2004 at 6; *New*

*York State Nurses Ass'n*, Decision No. B-23-2003 at 11; *Local 621, SEIU*, Decision No. B-34-93

at 8.

We find that since Union Demand No.14 would force the City to assign a full duty Emergency Medical Technician to work as an assistant to each Chief Officer, it would interfere with the City's discretion to make staffing and assignment decisions, and it therefore is a nonmandatory subject that may not be submitted to the impasse panel.

In its answer, the Union alleges, for the first time, that FDNY's decision to eliminate the position of Assistant or Aide to Deputy Chiefs in March, 2002, has resulted in a practical impact on the safety of Deputy Chiefs. The City contends that this claim is untimely, and, in any event, without merit. We have recognized that when an employer asserts a management right in a manner that has an adverse effect on terms and conditions of employment and thus results in a practical impact, the duty to bargain may arise over the alleviation of that impact. *Uniformed Firefighters Ass'n*, Decision No. B-2-2004 at 6; *New York State Nurses Ass'n*, Decision No. B-23-2003 at 11; *Local 621, SEIU*, Decision No. B-34-93 at 9; *Sergeants Benevolent Ass'n*, Decision No. B-56-88 at 13. We consider claims of practical impact to present scope of bargaining issues, not issues of improper practice. *New York State Nurses Ass'n*, Decision No. B-23-2003 at 12; *Sergeants Benevolent Ass'n*, Decision No. B-56-88 at 15-16. Therefore, the four-month statute of limitations applicable to improper practice petitions, pursuant to NYCCBL § 12-306(e), does not preclude consideration of the Union's practical impact claim.[2]

---

[2] NYCCBL § 12-306(e) provides, in relevant part:

A petition alleging that a public employer or its agents or a public employee organization or its agents has engaged in or is engaging in an improper practice in violation of this section may be filed with the board of collective bargaining within four months of the occurrence of the acts alleged to constitute the improper practice or of the date the petitioner knew or should have known of said

Decision No. B-15-2005                                                                 16

      When a union asserts a safety practical impact claim, it is incumbent upon the union to

show how the alleged impact results either from a management decision or action, or from

management's inaction in the face of changed circumstances. *United Probation Officers Ass'n*,

Decision No. B-31-89 at 10-11; *Uniformed Firefighters Ass'n*, Decision No. B-43-86 at 9. To

satisfy this burden, the union must do more than claim that a practical impact on safety exists. It

must substantiate with sufficiently specific factual details, not merely unsupported allegations,

the existence of a threat to safety before we will require the employer to bargain, or even order a

hearing to present further evidence. *Uniformed Firefighters Ass'n*, Decision No. B-19-2003 at 7;

*Local 621, SEIU*, Decision No. B-34-93 at 9; *United Probation Officers Ass'n*, Decision No. B-

37-87 at 6.

      In this case, the Union has alleged with some detail the multiple tasks an unaccompanied

Deputy Chief may have to perform while responding to an incident, including driving, consulting

a map, watching for text messages displayed on a mobile data terminal, monitoring radio

communications, and talking on a telephone. The Union has submitted an affidavit describing

three incidents in which the fact that the Deputy Chief involved was required to act alone

allegedly resulted in: (1) missed information regarding the possible presence of hazardous

materials because the Deputy Chief, while driving, could not look down to read the mobile data

terminal; (2) a near collision when another Deputy Chief took his eyes off the road to read a

message on the mobile data terminal and almost hit a car that stopped unexpectedly; and (3)

---

     occurrence. . . .

The NYCCBL contains no corresponding time limitation on the filing of a scope of bargaining
petition raising a practical impact claim.

Decision No. B-15-2005                                                                 17

another near collision, and an injury to a Deputy Chief, when a car cut her off while she was

engaged in using the radio, a cell phone, and the mobile data terminal while driving.  While these

allegations do not prove the existence of a safety impact, and while we understand the City's

argument that vehicle accidents may happen regardless whether a car is being driven by an

Assistant with a Deputy Chief, or the latter alone, nevertheless we are satisfied that the Union has

presented sufficient allegations of fact regarding a potential practical impact on employee safety

to warrant a hearing.

      Accordingly, we will direct that a hearing be held before a Trial Examiner designated by

the Office of Collective Bargaining.  This will give the parties the opportunity to present

evidence and arguments for the purpose of establishing a record upon which this Board may

ascertain whether a practical impact on the safety of the employees involved has occurred.  *See*

*United Probation Officers Ass'n*, Decision No. B-31-89 at 12-13; *Uniformed Firefighters Ass'n*,

Decision No. B-43-86 at 9-10.  Since no duty to bargain over the alleviation of a practical impact

arises until this Board determines that a practical impact exists, *Uniformed Firefighters Ass'n*,

Decision No. B-19-2003 at 3; *Patrolmen's Benevolent Ass'n*, Decision No. B-39-93 at 9;

*Sergeants Benevolent Ass'n*, Decision No. B-56-88 at 15-16, this issue may not be presented to

the impasse panel.

Decision No. B-15-2005                                                    18

## DETERMINATION AND ORDER

Pursuant to the powers vested in the Board of Collective Bargaining by the New York

City Collective Bargaining Law, and for the reasons set forth in the foregoing decision, it is

hereby

DETERMINED, that the following demands of the Emergency Medical Services

Superior Officers Association, the negotiability of which was challenged in the scope of

bargaining petition filed by the City of New York, are within or without the scope of mandatory

collective bargaining between the parties to the following extent:

Agreement has been reached as to the subject of Union Demand No. 9, and this demand

need not be presented to the impasse panel;

Union Demand No. 13, as revised in the Union's answer, is a mandatory subject of

bargaining to the extent indicated in this decision;

Union Demand No. 14 is a nonmandatory subject of bargaining; and it is further

ORDERED, that a hearing be held before a Trial Examiner designated by the Office of

Collective Bargaining on the Union's allegations of practical impact on safety resulting from the

removal of Assistants or Aides to Deputy Chiefs.

Dated: May 10, 2005
       New York, New York

                                               MARLENE A. GOLD
                                                   CHAIR

                                             GEORGE NICOLAU
                                             MEMBER

                                             CAROL A. WITTENBERG
                                             MEMBER

Decision No. B-15-2005                                                                    19

 ERNEST F. HART         

MEMBER

 CHARLES G. MOERDLER  

MEMBER
