```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   JARRETT PAYNE, et al.,

 4                 Plaintiffs,

 5          v.                           20 CV 8924 (CM)(GWG)

 6   MAYOR BILL DE BLASIO, et al.,

 7                 Defendants.           Conference

 8   ------------------------------x

 9   SAMIRA SIERRA, et al.,

10                 Plaintiffs,

11          v.                           20 CV 10291 (CM)

12   CITY OF NEW YORK, et al.,

13                 Defendants.
     ------------------------------x
14
     CHARLES HENRY WOOD,
15
                   Plaintiff,
16
            v.                           20 CV 10541 (CM)
17
     MAYOR BILL DE BLASIO, et al.,
18
                   Defendants.
19   ------------------------------x

20   PEOPLE OF THE STATE OF
     NEW YORK,
21
                   Plaintiffs,
22
            v.                           21 CV 322 (CM)
23
     CITY OF NEW YORK, et al.,
24
                   Defendants.
25   ------------------------------x
```

```
 1   ADAMA SOW, et al.,

 2                     Plaintiffs,

 3           v.                              21 CV 533 (CM)

 4   CITY OF NEW YORK, et al.,

 5                     Defendants.
     ------------------------------x
 6
                                          New York, N.Y.
 7                                        February 22, 2021
                                          2:00 p.m.
 8
     Before:
 9
                           HON. COLLEEN McMAHON,
10
                                          Chief Judge
11
                        HON. GABRIEL W. GORENSTEIN, (via Skype)
12
                                          U.S. Magistrate Judge
13

14                              APPEARANCES

15   MOLLY K. BIKLEN
     JESSICA PERRY
16        Attorneys for Plaintiff Payne, et al.

17   HAMILTON CLARKE LLP
          Attorneys for Plaintiff Sierra, et al.
18   BY:  JASON M. CLARK
             -and-
19   MICHAEL L. SPIEGEL (via Skype)

20   KAUFMAN LIEB LEBOWITZ & FRICK LLP
          Attorneys for Plaintiff Charles Henry Wood
21   BY:  DOUGLAS LIEB

22   LETITIA JAMES, Attorney General of
     The State of New York
23   Department of Law
          Attorney for Plaintiff People of The State of New York
24   BY:  LILLIAN MARQUEZ
          JESSICA CLARKE
25
```

                              APPEARANCES (cont'd)

**COHEN & GREEN P.L.L.C.**
      Attorneys for Plaintiff Sow, *et al.*
BY:   ELENA L. COHEN
      -and-
BELDOCK LEVINE & HOFFMAN LLP
BY:   JONATHAN C. MOORE

JAMES E. JOHNSON
      Corporation Counsel for the City of New York
      Attorney for Defendants
BY:   DARA L. WEISS
      BRACHAH GOYKADOSH
      ELISSA JACOBS

1          (Case called)

2          THE COURT:  Could I have appearances for the People.

3          MS. MARQUEZ:  Good afternoon, your Honor, Lillian

4   Marquez.  I'm joined by my colleague, Jessica Clarke, from the

5   Office of the State Attorney General on behalf of the People.

6          THE COURT:  Thank you.  Can I have appearances for the

7   Payne plaintiffs.

8          MS. BIKLEN:  Good afternoon, your Honor, Molly Biklen

9   from the New York Civil Liberties Union.  I am here with my

10  cocounsel, Jessica Perry, also from the New York Civil

11  Liberties Union.

12         THE COURT:  Let me just suggest, Ms. Biklen, and

13  anybody who has the luxury of having a microphone relatively

14  close, that you remain seated because we have discovered that

15  through the masks it works better, especially when you have

16  some feedback.

17         The Sierra plaintiffs.

18         MR. CLARK:  Good afternoon, your Honor, Jason Clark

19  from Hamilton Clarke, as well as Michael Spiegel, cocounsel for

20  Hamilton Clarke.

21         THE COURT:  Mr. Spiegel is on Zoom -- we are on Skype

22  today.  I don't want to give credit to the wrong platform.

23         The Wood plaintiffs.

24         MR. LIEB:  Good afternoon, your Honor, Douglas Lieb

25  for plaintiff Henry Wood.

1          THE COURT:  Good afternoon.

2          Is it Sow or Sow?

3          MR. MOORE:  Sow, your Honor.  Jonathan Moore, Beldock

4    Levine & Hoffman, along with Elena Cohen, for the plaintiffs in

5    Sow v. City of New York.

6          THE COURT:  Thank you.

7          Corporation Counsel.

8          MS. WEISS:  Good afternoon, your Honor, Dara Weiss for

9    the City of New York, the mayor, the police commissioner, and

10   the chief of department.  With me are my colleagues Elissa

11   Jacobs and Brachah Goykadosh.

12         THE COURT:  Terrific.

13         Just out of curiosity, I had a couple of letters from

14   police unions indicating that there is a possibility that we

15   are going to have intervention motions.  Is anybody here

16   representing them right now?

17         We have a public line open, is that correct,

18   Ms. Lewis?

19         THE LAW CLERK:  Yes.

20         THE COURT:  To those of you who are listening in the

21   on public line, welcome to this proceeding.

22         I would like to introduce to anyone who does not know

23   him my colleague, the Honorable Gabriel Gorenstein, who is the

24   magistrate judge in this group of cases.  If we were in a

25   normal world he would be sitting here next to me.  He is, I

1     gather, on Skype.

2             Judge Gorenstein, would you like to say hello.

3             JUDGE GORENSTEIN:  Hello.  I'm here listening to

4     everything.

5             THE COURT:  Great.  Wonderful.

6             I should say that Judge Gorenstein and I have both

7     reviewed everything that you all have submitted in writing

8     prior to today, and we have also talked and compared notes.  We

9     have surprisingly congruent views of how things should proceed.

10    We came to them independently.

11            This is what I understand the state of play to be.  We

12    have one *parens patriae* action that was filed by the Attorney

13    General, we have the ACLU action, the Payne action, which is

14    not a class action, I don't believe.  It's filed on behalf of a

15    large group of identified individuals.

16            MS. BIKLEN:  Eleven plaintiffs, your Honor.

17            THE COURT:  Correct, 11 plaintiffs.

18            Then we have three purported class actions filed on

19    behalf of largely identical classes, and the Payne plaintiffs

20    would be members of those classes if they were not proceeding

21    on their own.  That's what we have got in terms of cases.

22            MR. LIEB:  Your Honor, if I may, Wood is not a class

23    action.

24            THE COURT:  Wood is not a class action.  Thank you.

25            You need to identify yourself by names when you speak

for the court reporter.  You probably need to speak a little

more loudly and a lot more slowly than you otherwise would.

That seems to be what works the best.

Since we went to double masking, the great advantage

of my singer's mask is that a lot of resonance space has been

lost because there is something underneath it.

When these cases came in, I entered a temporary order

of consolidation.  Everybody wants me to vacate that.  But

everybody understands that this is a case where the discovery

is congruent.  These are five cases where the discovery is

largely, if not entirely, congruent, so nobody appears to

oppose something called coordinated discovery.  To me that's

pretrial consolidation.  I don't understand the distinction

between coordinated discovery and consolidated for pretrial

purposes.  So I actually think that we are on the same page

there.

There are people who think that a discovery and

possibly trial, I guess, should be bifurcated as between cases

brought by individuals and now discovery relating to city

policies.

I understand that there will be multiple motions to

dismiss and that the parties want me to suspend my usual rule

requiring that qualified immunity motions be made at the outset

of the case, thereby dispensing with that issue for the moment.

And I have advised already and I think you know that

1    there are at least two unions representing police officers and

2    detectives who are considering making motions for leave to

3    intervene out of some concern that the city will not adequately

4    represent the interests of the police.  That's what Judge

5    Gorenstein and I think we have on the plate today.

6         I'll listen to anything that anybody wants to say, but

7    we have read your letters.  Both of us have read your letters,

8    and we have discussed your letters and your letters are a

9    matter of public record.  They can be accessed by anyone on

10   ECF.  I think that you should assume that you are dealing with

11   a bench that's acquainted with your issues.  They are all lined

12   up here to my left.

13        Let's start with the Attorney General.

14        MS. MARQUEZ:  Good afternoon, your Honor.

15        THE COURT:  Stay seated.  It's so much easier for the

16   court reporter.

17        MS. MARQUEZ:  I believe since, as you have

18   acknowledged, you have read our letter and you set forth what

19   we are willing to do, I understand that coordinated discovery

20   may be something in alignment with consolidation, and we have

21   noted that we are ready and prepared and think it is

22   appropriate to do overlapping depositions and document demands.

23        Of course, we don't want to tie ourselves to each

24   other in a way that would delay proceedings, particularly

25   because some cases have been started as early as October of

```
 1   last year.  But you can see our positions on that point and I
 2   won't belabor them.  We are happy to discuss any other matters
 3   that your Honor wants to bring up.

 4          In terms of bifurcation, since we didn't file earlier
 5   and did not have an opportunity to respond to that, we don't
 6   think that that is appropriate.  A lot of our claims overlap
 7   with the Monell style and, in particular, because we do name
 8   policy makers who had personal involvement in the protests,
 9   including the chief of the department being present at the
10   protests at Mott Haven --
11          THE COURT:  Slow down.  It's amazing how the masks
12   muffle your sound.  The nose keeps falling down.
13          MS. MARQUEZ:  Just on the point of bifurcation, as I
14   understand it, the city wants to bifurcate even at the level of
15   the trial, which case law says would deprive the Court of
16   flexibility.
17          THE COURT:  Don't worry about the trial.  We are not
18   there.  We are not at the trial.
19          MS. MARQUEZ:  The only other thing that we have
20   noticed in the papers filed by the city that I'll just briefly
21   point out, in terms of parens, your Honor has found that we
22   have parens authority, and there are other cases in the circuit
23   and in the Third which found that states have parens authority.
24          THE COURT:  I haven't found anything.  You filed a
25   parens patriae lawsuit.  That's what the Attorney General does
```

1    for a living.

2             MS. MARQUEZ:  Yes.  It has been upheld, standing on

3    the state's part in bringing claims on that standing theory in

4    unconstitutional policing actions.

5             Just briefly on the point of 50(e) in terms of

6    requiring notices of claim, because our action seeks only

7    equitable --

8             THE COURT:  If they make a motion to dismiss your

9    claim, I will deal with it.  I don't think they are going to

10   make a motion addressed to you.  They are certainly not going

11   to make a 50(e) motion addressed to you.  You are the State of

12   New York.

13            MS. MARQUEZ:  Unless the Court has any other

14   questions, based on those, I just wanted to touch on things

15   because the city filed their letter after ours, so that might

16   not be apparent.

17            THE COURT:  That's OK.  That's fine.

18            Ms. Biklen.

19            MS. BIKLEN:  Yes, your Honor.

20            THE COURT:  Anything you want to say in addition to

21   what's in your letter?

22            MS. BIKLEN:  I will only add, your Honor --

23            THE COURT:  Do yourselves a favor, pull that mic in a

24   little closer to you.

25            MS. BIKLEN:  How is this, your Honor?

1              THE COURT:  Much better.

2              MS. BIKLEN:  Your Honor, just in terms of the question

3      of consolidation or coordination, it does sound like the court

4      is fully aware of the issues that we have raised.

5              I will note that the Payne case was filed October 26

6      of 2020, and the plaintiffs have been working very diligently

7      to move their case ahead.  So at this point the plaintiffs do

8      understand that coordinated discovery consolidation for

9      pretrial purposes will take place, but seek a schedule that

10     allows them to continue moving --

11             THE COURT:  Fear not, Ms. Biklen.

12             MS. BIKLEN:  Thank you, your Honor.

13             Unless there are other questions, we are prepared to

14     address the motions.

15             THE COURT:  What is the other nonclass action?

16             Mr. Lieb, anything else you want to say?

17             MR. LIEB:  The only thing I would briefly address is

18     intervention which came up after I filed my letter, your Honor.

19     I don't see how there would be a basis for a nonparty to

20     intervene in a damages action.  We are not seeking any

21     injunctive relief in our action, and so the question of whether

22     the police union's interests are adequately represented, I

23     think, is a nonissue in that context.  That's all I have.

24             THE COURT:  I'm sure the city will have more to say on

25     that one.

 1                For the Sierra.

 2                MR. SPIEGEL: Yes, your Honor.  Good afternoon.

 3                THE COURT: Hello, Mr. Spiegel.

 4                MR. SPIEGEL: Hello, your Honor.  Are you able to hear

 5     me adequately?

 6                THE COURT: Yes.  Excellent.

 7                MR. SPIEGEL:  I would like to address the city's

 8     letter.  It was not filed in the Sierra case.  The city has not

 9     yet filed a notice of appearance, and they have not answered

10     our complaint, which was filed on December 7.

11                The concern I have, as I mentioned in my letter, a

12     number of the attorneys here, Mr. Moore, the NYCLU, were

13     plaintiffs' counsel during the RNC cases which began more than

14     15 years ago.  Those cases took nine years to resolve before

15     there was a global settlement of those cases.

16                THE COURT:  Wrong judge.

17                MR. SPIEGEL:  Well, I won't comment on that, but I'm

18     very happy to hear that, your Honor.

19                The concern I have is when I look at the city's

20     letter, they have not yet assigned an Assistant Corporation

21     Counsel in the Sow case.  They have made no appearances in

22     Sierra.

23                And this resonates with those of us who were in the

24     RNC cases which, of course, include the city attorneys, who

25     were very much present and pursued their strategy over that

1    nine years.

2          My concern is that excuses such as budgetary concerns,

3    which they raise as an excuse for not having appointed a line

4    Assistant Corporation Counsel in the Sow case, and they haven't

5    even come up with any excuse for ours.

6          To the extent that your Honor commented that they are

7    going to make motions, we urge you to set a tight and --

8          THE COURT:  Trust me.  It's going to be set in five

9    minutes.

10         MR. SPIEGEL:  OK.  I won't belabor that any further.

11         The only other comment I would make is that there is

12   no reason in these cases not to let discovery proceed as those

13   motions are litigated.

14         THE COURT:  Correct.

15         MR. SPIEGEL:  That would be our position.  I have

16   nothing further.  Thank you very much, your Honor.

17         THE COURT:  For the Sow case.

18         MR. MOORE:  Your Honor, I just have two things to add

19   to what's been said.

20         One is that we do intend to file an amended complaint,

21   and we would want a schedule set for that.  We intend to do it

22   expeditiously.  We will be filing an amended complaint.

23         The second is our claim, our case has the broadest

24   class action allegations that cover all the different

25   demonstrations over a certain period of time in the city.  When

1  we say both, a class based on a B2 and a B3 class, and we would

2  want to set a briefing schedule for the class cert. motion.

3          THE COURT:  It's going to be very far delayed.  Class

4  certification will be very much delayed.

5          MR. MOORE:  I'm sorry, Judge.  I didn't hear you.

6          THE COURT:  Will be very much delayed.

7          MR. MOORE:  OK, your Honor.  That's all we have.

8          THE COURT:  Does the city have anything else to say

9  aside from what's in its letter?

10          MS. WEISS:  Yes, your Honor, if I may.

11          First of all, your Honor, if I can address --

12          THE COURT:  You need to get down so you are closer to

13  the microphone.  I'm really sorry.  I know this is horrible.

14          MS. WEISS:  With respect to the Sierra case, I'll just

15  start out there, we were not aware that it was part of this

16  group of cases until we received an ECF bounce on Friday.  We

17  know that counsel had asked that it be part of the group for

18  this conference today, but we didn't know that it had actually

19  been accepted because --

20          THE COURT:  Come on.  You knew it was going to be.

21          MS. WEISS:  Respectfully, your Honor, we didn't.

22          THE COURT:  You assumed we would have a second judge

23  to decide these issues?  OK.  Fine.

24          MS. WEISS:  A few other things that weren't addressed

25  in our letter because --

1                THE COURT:  I know.  They crossed.

2                MS. WEISS:  With respect to qualified immunity, we

3      think that your Honor should go forward with your usual

4      schedule for qualified immunity cases because the city would

5      move for qualified immunity on behalf of individual defendants.

6                As the law is clear, cases need not go forward against

7      individuals if they would be entitled to qualified immunity,

8      and they should be relieved from the lawsuit from the earliest

9      possible time, which is what your rules envision.  We think

10     that your rules should be held intact, although we imagine we

11     might need longer than your usual 30-day schedule because there

12     are a number of individual defendants, and it's not clear if we

13     would be able to get the depositions of plaintiffs done and

14     motions made in your very tight time period.

15               We also just wanted to point out, everyone knows the

16     burden that these cases are on the city, but we just want to

17     make clear that all of these cases, for the most part, have a

18     lot of the same components.  For instance, I think all of the

19     cases have something to do with the Mott Haven protest.  They

20     all have a lot --

21               THE COURT:  This is all one case, as far as I'm

22     concerned on my docket, in my head.  I have a lot of lawyers.

23     I have a lot of parties.  Some people want injunctive relief

24     only.  Some people want damages only.  Some people want

25     injunctions and damages.  But this is all one case.

1          MS. WEISS:  The city tends to agree with that.  So we

2     just wanted to make clear to the Court and to all the parties

3     that while you obviously have a number of law firms and a

4     number of attorneys working on this one case, there is just one

5     law firm for the defense.

6          THE COURT:  But that's OK.  It's the Corporation

7     Counsel and it can do this job.

8          MS. WEISS:  We certainly can, your Honor.

9          THE COURT:  It is, as the Corporation Counsel always

10    reminds me, the largest law firm in the City of New York.

11         MS. WEISS:  That is true.

12         Also, with respect to early motions, and I think this

13    was raised in the letter, there may be motions on standing.  We

14    are still looking into that.  We haven't decided for sure, but

15    I just wanted to make sure that that was pointed out.

16         THE COURT:  It's part of the motion to dismiss.  You

17    move on all grounds or you forfeit.

18         MS. WEISS:  Yes, your Honor.  I am not going to

19    belabor the points on *Monell* and bifurcation.  I think it's

20    clearly laid out in our letter.

21         Some of plaintiffs' counsel have noted that they are

22    planning on amending their complaints, so we wanted to see if

23    there was going to be a date set by which they must do so.

24         THE COURT:  When are you going to advise the

25    plaintiffs what you believe to be inadequate about their *Monell*

1    allegations?

2              MS. WEISS:  Well, we don't know, your Honor, what

3    they're planning on amending.

4              THE COURT:  No, no, no.  You've already said that

5    their *Monell* allegations as currently pleaded are inadequate.

6    So if I'm going to give them a date on which to amend, before

7    that date you have to tell them what you think is wrong, which

8    you can do in a letter.

9              MS. WEISS:  We will be happy to do that, Judge.

10             THE COURT:  Good.  Do it by Friday.

11             MS. WEISS:  Your Honor, can we have longer than that?

12             THE COURT:  Do it by Friday.

13             MS. WEISS:  We also wanted to bring up with you also

14   the Attorney General.  We had asked them this previously, and

15   we are still not sure of the answer.  We had spoken to them

16   about why they were suing the mayor, the police commissioner,

17   and the chief of department in their individual capacities, as

18   opposed to simply their official capacities, and we were hoping

19   that we could get some more information about that.

20             THE COURT:  Does the Attorney General have any

21   response to that?

22             MS. MARQUEZ:  We do, and we did respond to that.  We

23   sent case law which has claims that the Court in the EDNY

24   allowed it to move forward for injunctive and declaratory

25   relief against individuals, including a sheriff, matters that

1   are similar to what we have in this case under 1983.  And we

2   received no further response to that e-mail.

3          THE COURT:  So you will make a motion to dismiss them

4   out.  I am not bound by decisions of my colleagues across the

5   river, but I frequently find them to be wise.  I always find

6   them to be interesting reading.

7          MS. WEISS:  Thank you, your Honor.

8          Finally, we just wanted to mention that we don't

9   believe that there is merit to the Attorney General's case in

10  light of the fact that the governor, who also represents the

11  State of New York, has requested that all state police

12  departments create programs to reimagine the police, and the

13  NYPD has been doing just that.  They started making reforms

14  that have already been implemented and will continue to do so,

15  including, for example, the new disciplinary matrix that the

16  NYPD has started.  Final plans for these changes are due on

17  April 1 of this year.

18         In addition, the city council has been working on a

19  number of bills to reform certain aspects of policing in New

20  York City.

21         THE COURT:  What you are suggesting is Ms. James' case

22  may at some point become moot?

23         MS. WEISS:  That's correct, your Honor.

24         THE COURT:  I am sure Ms. James doesn't think so.  But

25  I hear you.  I hear you.

1              MS. WEISS:  Finally, with respect to the intervention

2    by the unions, I am not going to belabor it now because there

3    are no representatives of the union, but we don't believe that

4    those interventions would have any merit.

5              THE COURT:  Great.

6              MS. WEISS:  Thank you.

7              THE COURT:  Judge Gorenstein, before I go into the

8    things that we discussed earlier today, is there anything that

9    you would like to raise with any of these parties?

10             JUDGE GORENSTEIN:  No.  I think everything has been

11   covered.  Thank you.

12             THE COURT:  It's wonderful to have such a wonderful

13   partner as Judge Gorenstein.  I found it very interesting and

14   gratifying, actually, personally gratifying, to learn that his

15   list and my list looked pretty much the same, and we had not

16   talked about the case before this morning.

17             MR. MOORE:  Judge, I had a couple of comments to make

18   based on what people said, if that's appropriate now.

19             THE COURT:  All right.  Sure.

20             MR. MOORE:  First, on the issue of qualified immunity,

21   if the Court wants to tell us what her decision is on that now,

22   then I won't go into it.

23             In lieu of that, I don't think anything is gained at

24   this point by a motion on qualified immunity because of the

25   injunctive claims and the *Monell* claims.  All those officers

1    are going to have to be deposed anyway.

2            THE COURT:  They are all going to be in the case.

3            MR. MOORE:  Right.

4            The other thing is, just a matter of personal

5    preference with respect to the NYPD's implementation of a

6    disciplinary matrix, that came out of the Floyd case, the

7    stop-and-frisk case in which I am one of the lead counsel in.

8    That's not something that was done in response to these

9    demonstrations.

10            THE COURT:  As far as I'm concerned, I have one case

11    with five subcases in front of me, and I'm sure there are other

12    things going on, and I'm sure that the governor has his own

13    agenda, the Attorney General has her own agenda, and the mayor

14    has his own agenda, and city council has its own agenda.  And

15    that's all very interesting to me, but I deal with lawsuits.

16    Right now I've got five live lawsuits.

17            I meant no disrespect to my former and forever

18    colleague who handled the RNC cases, brilliant judge.

19            MR. MOORE:  Yes.

20            THE COURT:  But I don't like cases to hang around for

21    a long period of time.  My attitude toward these cases is they

22    are going on a rocket docket.  And if you all want to settle

23    them, which is how these things usually end, I won't be waiting

24    around for you to settle them.  Frankly, I'm too old for that.

25    If I want to get this done, I need to do it.  So you are going

1    to be on a rocket docket moving towards a trial and don't think

2    that's going to be delayed.

3            I'm happy to send you to mediation.  I'm happy to have

4    a settlement master appointed, if that's what you want.  I'm

5    happy to entrust that to Judge Gorenstein or, if he think it's

6    appropriate, to one of his colleagues.  But you will be

7    litigating this case toward a December 31, 2021 deadline for

8    discovery.

9            The cases will be consolidated for pretrial purposes,

10   which will allow motions to be heard on a single schedule and

11   discovery to be held simultaneously in all cases.  The fact

12   that people are seeking different types of relief is of

13   absolutely no moment.  The cases all raise the same issues with

14   respect to the same demonstrations.  Maybe every demonstration

15   isn't in every complaint, but I'll bet by the end every one

16   will be, and they will be handled together.

17           The Attorney General's case will be the lead case.

18   It's too soon to decide whether the cases will be consolidated

19   for trial on some or all issues.  I don't need to decide that

20   now, and I'm not going to decide that now.  I realize that the

21   defendants intend to file motions to dismiss, but discovery

22   will begin immediately and will encompass both the claims of

23   individuals and *Monell* issues.  The city has already indicated

24   to at least some defendants that it finds *Monell* allegations to

25   be inadequate.  I'm serious.  It has until Friday to explain in

1   writing why.

2          I expect amended pleadings.  If there are going to be

3   any, to be filed by March 5.  Motions to dismiss due March 26.

4   Replies, April 16.  Responses, April 16.  Reply papers due

5   April 30.  No surreplies.  Any issue that is raised for the

6   first time in a reply brief will be ignored.  That's the law.

7          I won't make you make qualified immunity motions

8   within 30 days.  It does not mean that I have altered my views

9   on the meaning of *Stevenson v. Doe* or what would justify a

10  finding of qualified immunity and what would not.  But in the

11  unusual circumstances of the case, with the large number of

12  plaintiffs who would have to be deposed, and especially because

13  it's going to go forward with all of these defendants

14  testifying as witnesses, in any event, which is absolutely the

15  only burden on them is participating in discovery and their

16  witnesses, and they are going to be participating in discovery.

17  So I will accede to the defendants' wishes in that regard.

18         Motions for leave to intervene -- this will go on the

19  docket, since I have gotten these letters -- are due on March

20  3.  Opposition papers due March 19.  Reply papers, March 26.

21  Until those motions are decided, the proposed intervenors will

22  not participate in the case.  If the motions are made and are

23  granted, the proposed intervenors will have access to such

24  discovery as Judge Gorenstein deems appropriate.

25         Aside from the cutoff date that I've given you, Judge

1    Gorenstein will set discovery schedules, including,

2    undoubtedly, quite shortened times for response, and he will

3    set procedures for objections and dealing with same.  He will

4    be in day-to-day charge of the case.  He is going to do that.

5    I am going to decide the motions.

6         By the way, when I say all discovery, in my courtroom

7    that means all discovery, which includes plaintiffs'

8    depositions, defendants' depositions, answers to

9    interrogatories, production of documents, designation of

10   experts, expert reports, and expert depositions.  Notice of

11   experts have to be exchanged by July 1.  Reports due September

12   1.  Depositions by the end of the year.

13        MR. MOORE:  I'm sorry, Judge.  Could you repeat that

14   last thing about the experts.  I didn't hear the dates.

15        THE COURT:  Sure.  Designate your experts by July 1.

16   Reports to be served by September 1.  Depositions by the end of

17   the year.  I anticipate that we will be briefing class

18   certification in the fall.

19        The parties will report to the Court by November 15

20   whether anyone anticipates making a motion for summary judgment

21   at the close of discovery.  As I frequently say, there is a

22   Rule 56a.  I haven't found it yet in print.  I just know it

23   exists.  It's the rule that says that you must make a motion

24   for summary judgment no matter what, including if you don't

25   have the slightest chance of winning it.  So I'm expecting

L2CSBA1C

 1    someone to take me up on that on November 15, but that's the

 2    date for advising me.

 3          I probably won't be seeing very much of you over the

 4    course of the next ten months, but Judge Gorenstein undoubtedly

 5    will, so let me turn the floor over to him.

 6          Judge Gorenstein, what would you like to say to these

 7    folks?

 8          JUDGE GORENSTEIN:  Well, what I would like to do is to

 9    ask the parties to see if they can come to an agreement as to

10    the interim dates; and if they can't, to provide whatever

11    schedules they do agree upon in a letter to me.  If it is a

12    single schedule and they are all in agreement, that's

13    fantastic.  They can put that in a letter to me.  I'm sure I

14    would simply approve it.  If there is disagreement, then the

15    parties should give me whatever their competing schedule is.

16          What I'd like to do is give you a deadline for giving

17    me that schedule.  I guess my preference would be a week from

18    today.  If that's a problem, it can go a day or two if the

19    parties all agree.  In the absence of an agreement among the

20    parties, let's shoot for March 1.  If someone wanted an

21    extension, if you want to go to the 2nd or 3rd, it's not the

22    end of the world.  I think that's the thing I would want.  If

23    it turns out that we need to have a conference on it, then I

24    would call a conference.

25          I would really like to see the letters and, if

1  possible, just be able to decide the interim dates based upon

2  the letters.  I think it will be helpful if you include all of

3  the dates that have been mentioned here, not just the discovery

4  dates.  The schedule will show the dates for the motions to

5  dismiss and for the letters on summary judgment and so forth.

6          THE COURT:  I'll get all those up on the docket later

7  today, all those dates.

8          JUDGE GORENSTEIN:  If it's already in an order that

9  Judge McMahon had issued, then you don't have to include it in

10  the order that I'm talking about.

11          THE COURT:  You have your two hard task masters.

12  There are two ways to litigate a case.

13          One is the matrimonial docket way, where things keep

14  getting postponed in the belief that ultimately it will all

15  work itself out.

16          And the other is the, let's set a trial date, and it's

17  a real date.  I can't set a trial date in this case today, but

18  I can give you a tight discovery deadline, and I mean it.  And

19  I appreciate it that it will be on a burden on everyone and

20  particularly on the Corporation Counsel.  I understand that.

21  Nothing I can do about it.

22          If it should be that over the course of the next few

23  months things happen, whether at the behest of the governor or

24  at the behest of the mayor or the city council or possibly the

25  Attorney General, who knows, that make things better for those

1    of you who are interested in injunctive relief, you will let me

2    know.

3              Is there anything else that anybody has to say today?

4              MR. MOORE:  One final thing, your Honor.

5              I'm assuming, and maybe we will take it up with Judge

6    Gorenstein, but in terms of the number of the presumptive

7    depositions and the number of interrogatories, we can work that

8    out with Judge Gorenstein.

9              THE COURT:  You will either work it out among

10   yourselves or you will take it up with Judge Gorenstein and he

11   will decide it, and I will not overrule him.  I have enough to

12   do deciding your motions.

13             It's interesting to sit in this chair.  This is the

14   first time in some months since I had a trial in the fall.

15   It's been since then.  It's kind of nice.  It's nice to see you

16   all here, as weird as this is.  I look forward to seeing you

17   again.  I hope that by the time I see you again we will not be

18   wearing masks and the Plexiglas will disappear and the witness

19   box will not look like this.

20             The Corporation Counsel wants to say something.  Yes,

21   your Honor.

22             THE COURT:  I can't hear you.

23             MS. GOYKADOSH:  The one thing that I wanted to raise

24   is, we did mention in our letter moving for a stay because of

25   the open --

1          THE COURT:  There will be no stay.  If you've been

2     paying attention, it should be obvious.  You can make a motion.

3     I will write deny across the front of it.  There will be no

4     stay.

5          MS. GOYKADOSH:  We absolutely understand that.  But

6     the reason why we are raising that at this point is because we

7     will be unable to get documents from the Civilian Complaint

8     Review Board.

9          THE COURT:  That's fine.  You can have other

10    documents.

11         MS. GOYKADOSH:  I just wanted to raise that issue for

12    the Court.

13         THE COURT:  Judge Gorenstein will handle that, but

14    there are lots of documents to be produced.  I have no doubt.

15         MS. GOYKADOSH:  Thank you, your Honor.

16         THE COURT:  Thank you, everybody.  Nice to see you

17    all.

18              (Adjourned)

19

20

21

22

23

24

25