**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: New York City Policing During Summer 2020 Demonstrations | 20 Civ. 8924 (CM)(GWG) |
| This filing is related to: ALL CASES | |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO INTERVENE BY SERGEANTS BENEVOLENT ASSOCIATION, DETECTIVE ENDOWMENT ASSOCIATION, AND POLICE BENEVOLENT ASSOCIATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

   I.   Proposed Intervenors are Not Entitled to Intervene as a Matter of Right Under Rule 24(a). 4

      A.   Proposed Intervenors' purported interests are too remote to warrant intervention. ....... 5

         1.   Proposed Intervenors' alleged interests in the effect of remedies on statutory and contractual collective bargaining rights, as well as officer safety and wellness, do not warrant intervention. ..................................................................................................... 5

         2.   Proposed Intervenors' alleged interest in the collateral consequences of judicial findings does not warrant intervention. ............................................................................ 9

      B.   Proposed Intervenors' ability to protect their purported interests will not be impaired by a disposition in this action............................................................................................... 13

      C.   The parties adequately represent any interest that Proposed Intervenors may have in the outcome of this litigation. ............................................................................................... 16

   II.  Permissive Intervention Under Rule 24(b) Is Unwarranted. ............................................... 20

CONCLUSION..................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACRA Turf Club, LLC v. Zanzucci,*
    561 Fed. Appx. 219 (3d Cir. 2014)......................................................................22

*AT&T Corp. v. Sprint Corp.,*
    407 F.3d 560 (2d Cir. 2005)..............................................................................20

*Banks v. Yokemick,*
    144 F. Supp. 2d 272 (S.D.N.Y. 2001)...............................................................15

*Battle v. City of N.Y.,*
    No. 11-CV-3599, 2012 WL 112242 (S.D.N.Y. Jan. 12, 2012) ..............................23

*British Airways Bd. v. Port Auth. of N.Y. & N.J.,*
    71 F.R.D. 583 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1976).....................23

*Bush v. Viterna,*
    740 F.2d 350 (5th Cir. 1984) .............................................................................23

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
    250 F.3d 171 (2d Cir. 2001)........................................................................ 16-17

*Catanzano by Catanzano v. Wing,*
    103 F.3d 223 (2d Cir. 1996).............................................................................20

*Cigar Ass'n of Am. v. U.S. Food & Drug Admin.,*
    323 F.R.D. 54 (D.D.C. 2017)............................................................................23

*City of New York v. MacDonald,*
    201 A.D.2d 258 (N.Y. App. Div. 1st Dep't 1994)..................................................9

*Cook v. Bates,*
    92 F.R.D. 119 (S.D.N.Y. 1981) ........................................................................13

*Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC,*
    289 F. Supp. 3d 582 (S.D.N.Y. 2018)................................................................23

*Env't'l Def. v. United States Env't Prot. Agency,*
    369 F.3d 193 (2d Cir. 2004).............................................................................14

*Floyd v. City of N.Y.,*
    770 F.3d 1051 (2d Cir. 2014).................................................................... passim

*Floyd v. City of New York*,
   302 F.R.D. 69, 111 (S.D.N.Y. 2014), *aff'd in relevant part, appeal dismissed*
   *in part*, 770 F.3d 1051 (2d Cir. 2014)..............................................................................passim

*FTC v. First Capital Consumer Mbrshp. Servs.*,
   206 F.R.D. 358 (W.D.N.Y 2001).....................................................................................22

*Greene v. United States*,
   996 F.2d 973 (9th Cir. 1993) ............................................................................................11

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*,
   797 F.2d 85 (2d Cir. 1986)............................................................................................5, 11

*Hogan v. City of New York*,
   No. 04-CV-3298, 2008 WL 189891 (E.D.N.Y. Jan. 18, 2008) .......................................15

*In re County of Erie v. PERB*,
   12 N.Y.3d 72 (2009) ..........................................................................................................6

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*,
   No. 96 CIV. 2064, 1996 WL 346352 (S.D.N.Y. June 25, 1996).....................................20

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
   471 F.3d 377 (2d Cir. 2006)...............................................................................................4

*Monahan v. N.Y. City Dep't of Corrs.*,
   214 F.3d 275 (2d Cir. 2000)..............................................................................................15

*Natural Resources Defense Council, Inc. v. New York State Dep't of Envtl.*
   *Conservation*,
   834 F.2d 60 (2d Cir. 1987)................................................................................................17

*New York News Inc. v. Newspaper & Mail Deliverers' Union of New York*,
   139 F.R.D. 291 (S.D.N.Y. 1991), *aff'd sub nom. New York News, Inc. v.*
   *Kheel*, 972 F.2d 482 (2d Cir. 1992) .................................................................................13

*New York SMSA Ltd. P'ship v. Vill. of Nelsonville*,
   No. 18 CV 5932, 2019 WL 1877335, at (S.D.N.Y. Apr. 26, 2019) .................................17

*New York v. United States Dep't of Educ.*,
   No. 20-CV-4260, 2020 U.S. Dist. LEXIS 122489 (S.D.N.Y Jul. 10, 2020) ...............20, 23

*New York v. United States Dep't of Health & Hum. Servs.*,
   No. 19 CIV. 4676 (PAE), 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019)........................17, 20

*Nw. Mut. Life Ins. Co. v. Linard*,
   498 F.2d 556 (2d Cir. 1974)..............................................................................................15

*Oneida Indian Nation of Wis. v. New York*,
    732 F.2d 261 (2d Cir. 1984)...........................................................................................13

*Paramount Pictures Corp. v. Allianz Risk Transfer AG*,
    31 N.Y.3d 64 (2018) ...................................................................................................14

*People v. Fagan*,
    66 N.Y.2d 815 (1985) .................................................................................................15

*People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*,
    961 F.2d 1335 (7th Cir. 1992) ......................................................................................8

*SEC v. Amtrust Fin. Servs.*,
    No. 20 Civ. 4652, 2020 U.S. Dist. LEXIS 136485 (S.D.N.Y Jul. 31, 2020)..........................21

*Sheppard v. Phoenix*,
    No. 91 Civ. 4148, 1998 WL 397846 (S.D.N.Y. July 16, 1998) ...............................................7

*State v. City of Chicago*,
    912 F.3d 979 (7th Cir*.), cert. denied sub nom. Fraternal Ord. of Police
    Chicago Lodge No. 7 v. Illinois*, 140 S. Ct. 82 (2019)...........................................8-9

*Uniformed Fire Officers Ass'n v. de Blasio*,
    No. 20-2789-CV, 2021 WL 561505 (2d Cir. Feb. 16, 2021) .............................................7, 12

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) .........................................................................................7, 10

*United States v. City of New York*,
    198 F.3d 360 (2d Cir. 1999)..........................................................................................16, 21

*United States v. City of New York*,
    No. 07-CV-2067 NGG RLM, 2012 WL 314353 (E.D.N.Y. Feb. 1, 2012), *aff'd
    in part, vacated in part*, 717 F.3d 72 (2d Cir. 2013)................................................18

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)........................................................................................ passim

*Williams v. City of New York*,
    64 N.Y.2d 800 (1985) .................................................................................................12

## RULES

Fed. R. Civ. P. 24(a) .............................................................................................. passim

Fed. R. Civ. P. 24(b) .............................................................................................. passim

Fed. R. Evid. 702 ...........................................................................................................19

**MISCELLANEOUS AUTHORITIES**

38A N.Y.C.R.R. § 1-01 et seq. ........................................................................................10

6 James W. Moore, Federal Practice § 24.10 .............................................................21

Ashley Southall, *N.Y.P.D. Releases Secret Misconduct Records After Repeal of Shield Law,* N.Y. Times....................................................................................11

7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 (3d ed. 2007 & supp. 2019) ...........................................................16

N.Y.C. Gen. Mun. L. 50-k ..............................................................................12, 15, 19

New York City Police Department Interim Order 65 (June 24, 1994)........................10

New York Collective Bargaining Law § 12-307 ....................................................5-6, 9

## INTRODUCTION

Plaintiffs in these consolidated litigations collectively submit this memorandum of law in opposition to the motions to intervene filed by the Sergeants Benevolent Association ("SBA"), the Detectives Endowment Association ("DEA"), and the Police Benevolent Association ("PBA") (collectively, "Proposed Intervenors"). *See* ECF Nos. 45, 48, & 51.[1]  The Court should deny Proposed Intervenors' Motions.  They are not entitled to intervention as a matter of right under Rule 24(a)(2), and permissive intervention under Rule 24(b) is unwarranted as it would substantially prejudice the parties and impede efficient and effective adjudication of this litigation.

First, Proposed Intervenors fail to satisfy the requisite elements for intervening as of right under Rule 24(a)(2), which ensure that intervention does not encumber litigation with a multiplicity of parties whose participation is unnecessary to protect and promote their interests. Proposed Intervenors do not have a cognizable right to bargain over any changes to disciplinary or operational New York City Police Department ("NYPD") policies that may result from the remedies sought in this case, and their other purported interests are too remote and speculative to warrant intervention.  Regardless, their ability to protect any such interests will be neither impaired nor impeded by the disposition of this litigation because individual officers who are not named as defendants will not be bound by any findings or legal conclusions, rendering intervention unwarranted.  Further, Proposed Intervenors have not overcome the strong presumption that the government parties in this litigation will adequately represent their interests.

---

[1] Unless otherwise noted, all docket entries referred to herein pertain to *Payne, et al, v. De Blasio et al*, No. 20 Civ. 8924 (S.D.N.Y.) ("*Payne*").

Second, permissive intervention is similarly inappropriate.  Proposed Intervenors' participation as parties would not meaningfully advance their interests because the existing parties already sufficiently represent those interests, and their participation as parties in this litigation will unnecessarily prejudice the proceedings in this case, impeding Rule 24(b)'s purpose of promoting judicial economy and efficiency.

## BACKGROUND

This litigation comprises six civil rights actions filed in the Southern District of New York between October 2020 and March 2021 against the City of New York ("City"), the NYPD, and/or certain City and NYPD leadership and personnel (collectively, "Defendants"), alleging that Defendants have engaged or continue to engage in unconstitutional or otherwise illegal conduct in response to social justice protests throughout New York City.  *See generally* Amended Complaints in *Payne,* (ECF No. 54); *Sierra, et al, v. City of New York*, No. 20 Civ. 10291 ("*Sierra*") (ECF No. 38); *Wood v. De Blasio, et al*, No. 20 Civ. 10541 ("*Wood*") (ECF No. 48); *People of the State of New York v. City of New York et al*, No. 21 Civ 322 ("*People*") (ECF No. 51); *Sow, et al, v. City of New York et al*, 21 Civ. 533 ("*Sow*") (ECF No. 49); and Complaint in *Yates v. City of New York, et al*, No. 21 Civ. 01904 ("*Yates*") (ECF No. 1).  The Court consolidated these cases for pretrial purposes, set an expedited discovery schedule to conclude all discovery by the year's end, and established March 3, 2021 as the deadline for any motions seeking leave to intervene as a party in this action.  *See Payne*, ECF No. 40, ¶¶ 1, 4; *Yates*, ECF No. 4.

Within the deadline set by this Court, Proposed Intervenors each moved to intervene, under Rule 24(a)(2) or, in the alternative Rule 24(b), as a defendant-intervenor in *People*, an action that seeks only declaratory and injunctive relief against the City and its top policymakers.

ECF Nos. 45, 48, & 51.[2]  Proposed Intervenors comprise three organizations representing current or former NYPD employees at various ranks, and they each allege similar interests purportedly related to the instant litigation: The SBA represents NYPD sergeants and alleges that it seeks intervention to "defend against court findings and orders on the particular allegations" of *People,* to "defend against potential remedies that will impair police officer safety and the ability of officers to fulfill their duty to protect the public," and "to defend against potential remedies that can infringe on collective bargaining rights." *See* SBA Mem. of L. Supp. Interv., ECF No. 47 ("SBA Mem."), at 1-2.  The DEA represents NYPD detectives and alleges that it seeks intervention to ensure retention of the integrity of "statutorily created collective bargaining rights" and "the terms and conditions contained in its collective bargaining agreement," and to ensure that the disposition of this action does not "unnecessarily adversely impact the health and safety of DEA members." *See* DEA Mem. of L. Supp. Interv., ECF No. 53 ("DEA Mem."), at 2.  The PBA represents NYPD police officers and alleges that it seeks intervention "to protect [officers'] personal safety, their collective bargaining and other statutory rights, their reputations[,] and

---

[2] Proposed Intervenors also filed their motions in *Payne,* presumably only in order to comply with the Court's direction to file documents under that lead docket.  ECF No. 40.  The SBA and DEA explicitly seek intervention only in *People*, and included Proposed Answers responding *only* to the allegations in *People*.  *See* ECF No. 47-3 (SBA Proposed Answer); ECF No. 52-16 (DEA Proposed Answer).  And though the PBA states that it seeks intervention in "all cases," it notes that it seeks intervention in *Wood* and *Payne* "only to the limited extent of responding, as appropriate, to the generalized allegations of NYPD conduct."  PBA Mem. at 1, n.1.  None of the Proposed Intervenors' motions refers to the *Yates* litigation, which was consolidated for pretrial purposes with this action after Proposed Intervenors filed their motions.  *See Yates*, ECF No. 4. Because these actions have been consolidated for pretrial purposes (ECF No. 40 ¶ 1), and due to the substantial overlap in issues raised by Proposed Intervenors' motions, Plaintiffs in *Payne*, *People*, *Sow*, *Sierra*, and *Wood* file this consolidated memorandum of law opposing Proposed Intervenors' motions.

other interests that stand to be affected by" the resolution of this litigation.  *See* PBA Mem. of L.

Supp. Interv., ECF No. 49 ("PBA Mem."), at 2.

## ARGUMENT

I.   **Proposed Intervenors are Not Entitled to Intervene as a Matter of Right Under Rule 24(a).**

Proposed Intervenors have failed to meet their burden to demonstrate that they are

entitled to intervene as of right.  To intervene as of right under Rule 24(a)(2), a proposed

intervenor must: (1) file a timely motion; (2) "assert[] an interest relating to the property or

transaction that is the subject of the action;" (3) demonstrate that "without intervention,

disposition of the action may, as a practical matter, impair or impede the applicant's ability to

protect its interest;" and (4) show that its "interest is not adequately represented by the other

parties."  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)

(citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).  "[F]ailure to satisfy

*any one* of these four requirements is a sufficient ground to deny the application."  *Floyd v. City

of N.Y.*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin

Mktg. Corp.*, 467 F.3d 238, 241 (2d Cir. 2006)) (emphasis in original).  "The burden to

demonstrate a right to intervene, including a cognizable interest, is at all times on the applicant."

*Floyd v. City of New York*, 302 F.R.D. 69, 100 (S.D.N.Y. 2014), *aff'd in relevant part, appeal

dismissed in part*, 770 F.3d 1051 (2d Cir. 2014) (citing *In re NASDAQ Market-Makers Antitrust

Litig.*, 187 F.R.D. 465, 490 (S.D.N.Y. 1998).  Proposed Intervenors cannot do so and fail to meet

the second, third, and fourth requirements for intervention as of right.

### A. Proposed Intervenors' purported interests are too remote to warrant intervention.

The Second Circuit has "made it clear that, for an interest to be 'cognizable' under Rule 24, it must be 'direct, substantial, and legally protectable.'" *Floyd*, 770 F.3d at 1060 (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (citing *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986)). Nor will "interests of a general or indefinite character." *H.L. Hayden Co.*, 797 F.2d at 88.

Proposed Intervenors allege two principal interests: (1) the possible effect of potential remedies on officers' contractual or statutory rights and on officer safety and job performance; and (2) the possible effect of findings from this Court on disciplinary, civil, or criminal proceedings involving individual officers, or on the reputations of such officers. *See* SBA Mem. at 5-12; DEA Mem. at 5-13; PBA Mem. at 8-12. For the reasons that follow, Proposed Intervenors' alleged interests are not protectable under either collective bargaining law or the unions' contracts, or they are too speculative or contingent to be cognizable.

> 1. *Proposed Intervenors' alleged interests in the effect of remedies on statutory and contractual collective bargaining rights, as well as officer safety and wellness, do not warrant intervention.*

Proposed Intervenors primarily allege that the relief the Court may grant, or to which the parties may ultimately consent, namely changes to policies on how to police protests, implicates their statutory right to negotiate any "practical impact" of policies on members' "terms and conditions of employment." SBA Mem. at 10; *see also* DEA Mem. at 5, 10, 11; PBA Mem. at 9, 11. That is not so. Section 12-307 of the New York Collective Bargaining Law ("NYCBL")

exempts from mandatory collective bargaining wide-ranging matters of "managerial

prerogative." *Floyd*, 770 F.3d at 1061.  As relevant here, that includes the City's authority to

unilaterally: (1) direct its employees; (2) take disciplinary actions; (3) determine the methods,

means and personnel by which government operations are to be conducted; and (4) exercise

complete control and discretion over its organization and the technology of performing its work.

NYCBL § 12-307(b).  The NYCBL also provides that the "practical impact" of such decision-

making on workload, staffing, employee safety, and other terms and conditions of employment

may be subject to collective bargaining.  *Id*.  But changes to "policies, procedures, supervision,

training, and monitoring" that may impact employees nevertheless "fall squarely within"

managerial prerogative.  *See Floyd*, 770 F.3d at 1061; *see also In re County of Erie v. State of

N.Y. Pub. Empl. Relations Bd.,* 12 N.Y.3d 72, 78 (2009) ("[D]ecisions are not bargainable as

terms and conditions of employment where they are inherently and fundamentally policy

decisions relating to [its] primary mission[.]").

      Proposed Intervenors' purported interest centers on the creation or modification of policy

and training—a non-negotiable subject.  *See Floyd*, 770 F.3d at 1061; NYCBL § 12-307(b).

They argue that any such changes may in turn impact their members by increasing members'

workload, requiring additional training, or imposing "[l]imitations on [protective] tactics and

equipment" when policing protests.  SBA Mem. at 9; *see also* SBA Mem. at 9–11; DEA Mem. at

8, 12–13; PBA Mem. at 9.  As a general matter, however, the right to bargain over practical

impacts of a policy does not entail the right to bargain over the policy itself.  *Floyd* 302 F.R.D. at

111.  "If that were true, it would defeat the statute's purpose in delineating management

prerogatives as distinct from collective bargaining topics" and subject every managerial policy

change to mandatory collective bargaining.  *Id.* at 111-12.  Proposed Intervenors' rights instead

lie at a later point, to negotiate increased pay or other concessions to counterbalance impacts

policy changes may cause. *Id.* at 112.

Proposed Intervenors also lack any legally protectable right regarding the requested

relief. The *People* Amended Complaint seeks an order enjoining City policies, practices, and

customs in policing protests that are unconstitutional and an order requiring their replacement

with policies that comply with the federal and New York state constitutions and applicable law.

*People* Am. Compl. at 82, Docket No. 21-cv-322, ECF No. 51. Even if the Court were to grant

all the injunctive relief requested, such an order would serve only to conform the City's policies

to the law. Undoubtedly, neither public employers nor unions have the right to negotiate for a

contract term that violates the law. *Cf. Uniformed Fire Officers Ass'n v. de Blasio*, No. 20-2789-

CV, 2021 WL 561505, at *1 (2d Cir. Feb. 16, 2021) ("[T]he NYPD cannot bargain away its

disclosure obligations" under the New York Freedom of Information Law); *United States v. City

of Los Angeles*, 288 F.3d 391, 398–99 (9th Cir. 2002) ("Of course, as the district court noted, the

Police League and the officers it represents have no protectable interest in violating other

individuals' constitutional rights."). Indeed, public policy "transcend[s] the general statutory

collective bargaining scheme" and "[t]here is no more compelling public policy than compliance

with the mandates of the United States Constitution." *Sheppard v. Phoenix,* No. 91 Civ. 4148,

1998 WL 397846, at *7-*8 (S.D.N.Y. July 16, 1998). The obligation to remedy unconstitutional

conduct "cannot be delegated, abnegated or surrendered through collective bargaining." *Id.*; *see

also Floyd*, 302 F.R.D. at 110 (finding that the unions' generalized assertions do not demonstrate

how any result in that case would "prevent or limit them from doing something they currently

have the right to do.") There is therefore no statutory or contractual right that Proposed

Intervenors have in negotiating the relief requested.

There similarly is no non-speculative interest in a potential settlement.  Proposed Intervenors' interest in a particular settlement in *People* is contingent upon (1) the parties agreeing to resolve the People's claims and (2) including terms in the settlement that affect Proposed Intervenors' alleged collective bargaining rights.  And even where these contingencies are satisfied, any settlement may nonetheless contain carve-out provisions to protect such interests, and "may not alter collective bargaining agreements without the union's assent," and thus would defeat the Unions' bid for intervention.  *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 961 F.2d 1335, 1337 (7th Cir. 1992) (citing *W.R. Grace & Co. v. Rubber Workers Local 759*, 461 U.S. 757, 771 (1983)); *see also State v. City of Chicago*, 912 F.3d 979, 987 (7th Cir.), *cert. denied sub nom. Fraternal Ord. of Police Chicago Lodge No. 7 v. Illinois*, 140 S. Ct. 82 (2019); *Floyd*, 770 F.3d at 1062, 1063, n.43 (upholding denial of intervention because consent decree did not preclude Unions from collective bargaining and expressly invited "NYPD personnel and representatives of police organizations" "to be heard in the reform process").

Apart from its statutory bargaining rights, the DEA additionally argues that potential remedies will diminish specific provisions in its contract with the City.  *See* DEA Mem. at 7-9. For most of the terms cited, the DEA does not explain how they relate to these actions.  And there is no apparent reason why this litigation would affect the City's duty to remit payments to the DEA's civil legal representation fund, disclose "certain departmental information to the Union," or provide safety equipment that "conforms to Police Department specifications."  DEA Mem. at 7-9.  The interest in protecting these terms is therefore too "remote from the subject matter of the proceeding" to satisfy the Rule.  *Wash. Elec. Coop., Inc.*, 922 F.2d at 97.  As to the DEA's argument that any "new regulations could serve as new predicates for discipline," it is

plainly within managerial prerogative to create such rules and to discipline officers.  *See* NYCBL § 12-307.  The case the DEA cites confirms as much.  In *City of New York v. Patrolmen's Benevolent Association of City of New York, Inc.*, the New York Court of Appeals emphasized that the Police Commissioner's unilateral disciplinary authority included the ability to change the methodology to be used for drug testing and the circumstances prompting testing, noting that local law "state[s] the policy favoring management authority over police disciplinary matters in clear terms" and "express[es] a policy so important that the policy favoring collective bargaining should give way."  14 N.Y.3d 46, 58 (2009); *cf. City of New York v. MacDonald,* 201 A.D.2d 258, 259 (N.Y. App. Div. 1st Dep't 1994) (finding that police discipline, "including the right to determine guilt or innocence of breach of disciplinary rules and the penalty to be imposed upon conviction," is committed to NYPD commissioner and that City cannot be forced to bargain on this subject).  The DEA's contract does not purport to change these fundamental rules of collective bargaining.  Further, the mere creation of new rules does not trigger any loss of benefits.  It is only an officer's violation of the rules that may result in the loss of health coverage or compensation under the DEA's contract.  DEA Mem. at 8.  Accordingly, Proposed Intervenors fail to identify collective bargaining rights that would be affected by the remedial process in *People*.[3]

  2. *Proposed Intervenors' alleged interest in the collateral consequences of judicial findings does not warrant intervention.*

  Proposed Intervenors' second argument that this Court's hypothetical, future rulings as to particular allegations in this litigation will "directly affect police discipline, civil liability, and

---

[3] To the extent the Court retains any concerns that remedies ordered or agreed to in this case will implicate any legally cognizable interest of the unions, the Court may reconsider a motion to intervene at that later stage, but in no sense do those at-best speculative interests warrant intervention now.  *See State v. City of Chicago*, 912 F.3d 979, 987 (7th Cir. 2019).

indemnification" for particular officers (*see, e.g.*, SBA Mem. at 7) is both speculative and illusory.  Proposed Intervenors insist that they must be present in the litigation to "defend against" findings as to particular officers' conduct in this forum (SBA Mem. at 1) and to "explain directly to the Court" that "sergeants acted as they were trained" in responding to the protests (Decl. of Edward Mullins, ECF No. 47-1 ("Mullins Decl.") ¶ 5).

As a preliminary matter, the City and NYPD are independently obligated to investigate and, if necessary, impose discipline on officers that are the subject of these allegations, many of which are already in the public record.  38A N.Y.C.R.R. § 1-01 et seq. (CCRB); NYPD Interim Order 65 (June 24, 1994) (creating the NYPD Internal Affairs Bureau).  Indeed, many of the incidents alleged in *People* are already under internal investigation by the NYPD or under review by the Civilian Complaint Review Board, based on widespread reporting of occurrences during the protests, or based upon individual complaints from injured New Yorkers.  *See* Mullins Decl., ECF No. 47-1, ¶ 3 (describing ongoing internal investigatory activities).

The SBA asserts that *United States v. City of Los Angeles*, 288 F.3d 391, 399-400 (9th Cir. 2002) stands for the proposition that "police unions have a legally protectable interest in department-wide civil rights cases that may have collateral consequences for individual officers." SBA Mem. at 6-7.  Its reliance on that decision is misplaced.  There, the interest recognized by the court was not in the defense of the merits of the litigation but in the right to negotiate potential injunctive relief that could be entered *individually* against officers, pursuant to specific provisions of California law that are not applicable here.  *See City of Los Angeles*, 288 F.3d at 399-400 ("The Police League has state-law rights to negotiate about the terms and conditions of its members' employment as LAPD officers and to rely on the collective bargaining agreement that is a result of those negotiations . . . .  These rights give it an interest in the consent decree at

issue.") (citing Cal. Gov't Code §§ 3500–3511); *see also Floyd*, 770 F.3d at 1061 n.33.  Here, plaintiffs seek no injunctive relief to be entered individually against unnamed officers, and there is no provision of New York law as broad as the California law on which the *City of Los Angeles* court relied.  Further, unlike the Ninth Circuit, which applies a "liberal" test for intervention under which "[n]o specific legal or equitable interest need be established," *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993), the Second Circuit requires a defined "legally protectable" interest, *Floyd*, 770 F.3d at 1060.  Proposed Intervenors' desire to defend unnamed individuals in *People* is therefore not founded in any substantive legal right.

For similar reasons, Proposed Intervenors' purported interest in avoiding potential "reputational" harms as a consequence of this Court's findings or conclusions (PBA Mem. at 4, 11) is baseless, especially given recent legislative changes that make public NYPD's decisions to impose discipline for officer misconduct and CCRB's findings and recommendations regarding its review of alleged officer misconduct.  *See* S. 8496/A10611 (signed June 12, 2020); Ashley Southall, *N.Y.P.D. Releases Secret Misconduct Records After Repeal of Shield Law,* N.Y. Times (Mar. 8, 2021), https://www.nytimes.com/2021/03/08/nyregion/nypd-discipline-records.html. And Proposed Intervenors have failed to adduce specific evidence of alleged reputational harms, instead offering only contrary factual allegations to those described in the *People* complaint.  *See* PBA Mem., at 11 (citing Decl. of Joseph Alejandro ¶¶ 13–21).  Such bare assertions of reputational harm must be rejected as "general and indefinite."  *H.L. Hayden Co.*, 797 F.2d at 88 (quoting *United States v. American Tel. & Tel. Corp.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980); *see also Floyd*, 770 F.3d at 1061 (holding that district court did not err in finding that the unions had submitted no evidence to substantiate their claims of reputational harm where "there was no evidence in the record showing that the union members' careers had been tarnished, that their

11

safety was in jeopardy, or that they had been adversely affected in any tangible way."); *cf.*
*Uniformed Fire Officers Ass'n*, 2021 WL 561505, at *2 (affirming denial of preliminary
injunction where unions failed to establish irreparable harm because they "pointed to no
evidence from any jurisdiction" that making discipline records public "resulted in harm to
employment opportunities," and observing that "diminished future employment opportunities
resulting from a damaged reputation, as opposed to some independent legal detriment" are
insufficient to demonstrate that they have been deprived of some "tangible interest or property
right" under federal and state law.)

Proposed Intervenors' argument that the City can decline to indemnify officers "who are
defendants in civil litigation" and who acted outside the scope of their employment (SBA Mem.
at 8) is similarly unavailing.  The *People* complaint does not name any individual officers,
sergeants, or lieutenants as defendants, and Corporation Counsel has already appeared in these
consolidated actions on behalf of the City and at least one of the NYPD's policymakers, which
necessarily means that Corporation Counsel has concluded that at least some defendants were
acting within the scope of their employment.  *See* N.Y.C. Gen. Mun. L. 50-k; *Williams v. City of
New York*, 64 N.Y.2d 800, 802 (1985) (determination of whether employee was acting within the
scope of his employment and thus entitled to representation is made "in the first instance by the
Corporation Counsel"); *see also Floyd*, 302 F.R.D. at 94 ("in agreeing to represent both the City
and the individual officers, the Corporation Counsel was presumably satisfied that the officers
were acting within the scope of their employment and that there was no ethical conflict that
would have required the appointment of separate counsel.").  The other policymaking defendants,
individual defendants, and any unnamed officers who may be called to sit for a deposition in this
litigation of course retain the right to obtain their own counsel to represent them to the extent

they are not already represented by counsel for Defendants.  Thus, the Proposed Intervenors'

purported interests regarding the effect of findings and conclusions during the merits stage of this

litigation are either too speculative or will simply not follow as a consequence of Proposed

Intervenors' absence from this litigation as a party, rendering these alleged interests insufficient

to support intervention here.

     Thus, Proposed Intervenors have failed to demonstrate that their purported interests are

"'direct, substantial, and legally protectable'" and for this reason alone, the Court should deny

Proposed Intervenors' motions.  *Floyd*, 770 F.3d at 1060 (quoting *Bridgeport Guardians, Inc.*,

602 F.3d at 473).

### B. Proposed Intervenors' ability to protect their purported interests will not be impaired by a disposition in this action.

Proposed Intervenors' motions fail to show that any of their purported interests would be

impaired by the outcome of this litigation.  In determining whether disposition in an action will

"impair or impede" a proposed intervenor's interest, the central inquiry is whether a proposed

intervenor would be barred from later asserting claims if intervention is not granted.  *See*

*Washington Elec. Co-op., Inc.*, 922 F.2d at 98; *Oneida Indian Nation of Wis. v. New York*, 732

F.2d 261, 265 (2d Cir. 1984) (A proposed intervenor must demonstrate that their "claims and

interests . . . may be adversely affected at least by principles of *stare decisis*, arising out of the

final judgement.").   Intervention as of right is inappropriate where, as here, there is no danger

that an adverse decision would have *stare decisis* effect on the proposed intervenor's claims or

interests, or "would preclude the intervenors by *res judicata* or collateral estoppel from bringing

their own challenge," *Cook v. Bates*, 92 F.R.D. 119, 123 (S.D.N.Y. 1981), and the intervenor can

"protect [its] interests by other means," *New York News Inc. v. Newspaper & Mail Deliverers'*

*Union of New York*, 139 F.R.D. 291, 293 (S.D.N.Y. 1991), *aff'd sub nom. New York News, Inc.*

*v. Kheel*, 972 F.2d 482 (2d Cir. 1992).  Proposed Intervenors do not point to any precedent or evidence in the record showing that the proof of bad acts by its members in this forum—in which the Attorney General seeks injunctive relief only as to the City, the NYPD, and its leadership— would have any preclusive impact on proceedings that are already pending or may be filed; and furthermore, no such authority exists.

First, because this is not "a case of first impression involving the resolution of new legal issues," but instead involves application of legal principles already well established in prior cases addressing policing of protests, the doctrine of *stare decisis* will not control future, related actions involving Proposed Intervenors' members.  *Washington Elec. Co-op., Inc.*, 922 F.2d at 98.

Second, there is no danger of findings in *People* of having preclusive effect in union members' subsequent civil or criminal proceedings.  The *People* amended complaint does not name as defendants any individual union member.  *See People* Am. Compl.[4]  Collateral estoppel cannot be used to preclude non-parties from litigating issues raised in a prior action.  *See Envt'l Def. v. United States Env't Prot. Agency*, 369 F.3d 193, 202 (2d Cir. 2004) (explaining that collateral estoppel bars only parties who had a "full and fair opportunity to litigate" an issue from relitigating that issue in a subsequent proceeding); *Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64, 69-71 (2018) (applying federal common law to determine preclusive effect of federal judgment on subsequent state proceeding).  Res judicata likewise would not apply to individual officers because they are not individual defendants being represented by

---

[4] To the extent that the Unions seek to intervene in *Payne* or any of the related lawsuits where individual officers are named, the individual officers will have the opportunity to fully litigate those claims with assistance of counsel and such actions do not implicate collateral estoppel rights for unnamed union members.

counsel, and there is no privity with the parties in *People*.  *See Monahan v. N.Y. City Dep't of Corrs.*, 214 F.3d 275, 285 (2d Cir. 2000) (union members' claims foreclosed by decree negotiated by their unions and thus barred by res judicata).  Preclusion concerns regarding subsequent criminal proceedings are even more attenuated because the lower burden of proof in civil litigation generally precludes their preclusive effect.  *Nw. Mut. Life Ins. Co. v. Linard*, 498 F.2d 556, 564 n.12 (2d Cir. 1974).  Observing that "[t]he correct determination of guilt or innocence is paramount in criminal cases," the New York Court of Appeals held that collateral estoppel of even a previously litigated issue did not apply because "[s]trong policy considerations militate against giving issues determined in prior litigation preclusive effect in a criminal case."  *People v. Fagan*, 66 N.Y.2d 815, 816 (1985).  Any critique of the conduct of Proposed Intervenors' members does not therefore impair those members' rights.

Third, the decision by the City as to whether to indemnify an officer is a factual determination made by the City's Corporation Counsel and is not bound by any judicial ruling.  *See* N.Y.C. Gen. Mun. L. § 50-k(3); *Hogan v. City of New York*, No. 04-CV-3298, 2008 WL 189891, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that the City may make its own determination as to whether to indemnify after judgement or settlement is entered).  Any harms that may result from that indemnification decision therefore would not be attributable to any legal findings in *People*, but on Corporation Counsel's independent factual assessment of an individual officer's acts.  Nor would the officers be left without remedy: they retain the right to contest an alleged wrongful denial of indemnification in an Article 78 proceeding.  *See Banks v. Yokemick*, 144 F. Supp. 2d 272, 287 (S.D.N.Y. 2001).

Proposed Intervenors therefore fail to demonstrate that a disposition of this action would impair their ability to protect their interests without their intervention.

### C. The parties adequately represent any interest that Proposed Intervenors may have in the outcome of this litigation.

Proposed Intervenors incorrectly state that to meet the Rule 24(a) standard, they need only show that the representation of their interests by Defendants "may be" inadequate and that the burden of demonstrating such inadequacy should be "treated as minimal." *See* DEA Mem. at 16; SBA Mem. at 17; PBA Mem. at 12 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *City of Los Angeles*, 288 F.3d at 398). But the Second Circuit "demand[s] a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001).

When the defendant and proposed defendant-intervenor share "an identity of interest," the proposed intervenor "must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179-80. This presumption is particularly compelling—indeed, it is the "controlling principle," 7 C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 & nn. 24-27 (3d ed. 2007 & supp. 2019)—in cases where, as here, the proposed intervenor shares an identity of interest with a governmental entity. "The governmental parties to this litigation share appellants' [i.e., the proposed intervenors'] concerns," e.g., "about safety," "and their representation is not inadequate simply because they have different ideas about how best to achieve these goals." *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) (quotation marks omitted).

To meet the "very strong showing" of inadequacy in this case, Proposed Intervenors "may offer, for example, 'evidence of collusion, adversity of interest, nonfeasance, or incompetence' by the named party sharing the same interest." *New York SMSA Ltd. P'ship v. Vill. of Nelsonville*, No. 18 CV 5932, 2019 WL 1877335, at *2 (S.D.N.Y. Apr. 26, 2019)

16

(quoting *Butler*, 250 F.3d at 180). Proposed Intervenors have made no such showing, nor could they.

Here, Defendants, represented collectively by the New York City Corporation Counsel, and the Proposed Intervenors, variously represented by counsel for SBA, DEA, and PBA, share an "ultimate objective" implicating the strong presumption that Proposed Intervenors' interests are adequately protected. *Butler*, 250 F.3d at 179.  Both Defendants and Proposed Intervenors share the objective of defending the lawfulness of officers' conduct at the protests or otherwise disputing plaintiffs' allegations.  Counsel for the Defendants have averred that they intend to vigorously defend against the allegations and relief sought in these consolidated lawsuits, including by filing forthcoming motions to dismiss on multiple grounds.  *See generally* Ex. A, Letter from B. Goykadosh to All Plaintiff Counsel (Feb. 26, 2021) (explaining that Defendants intend to move to dismiss on multiple grounds).  It is therefore reasonable for this court to conclude that the interests of Proposed Intervenors will be adequately protected by Defendants. "So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented."  *Natural Resources Defense Council, Inc. v. New York State Dep't of Envtl. Conservation* ("*NRDC*")*,* 834 F.2d 60, 62 (2d Cir. 1987); *see also, e.g.*, *New York v. United States Dep't of Health & Hum. Servs.* ("*HHS*"), No. 19 CIV. 4676 (PAE), 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019) ("The possibility that the Proposed Intervenors may emphasize different evidence in support of a common outcome also does not make HHS's representation of the Proposed Intervenors' interests inadequate.").

Defendants and Proposed Intervenors also share the objective of ensuring that any relief entered in this litigation facilitates the efficient operation of the NYPD and the safety of its

officers. *See United States v. City of New York*, No. 07-CV-2067, 2012 WL 314353, at *2 (E.D.N.Y. Feb. 1, 2012), *aff'd in part*, *vacated in part*, 717 F.3d 72 (2d Cir. 2013) (denying intervention based upon union's asserted interest in "firefighter safety," and finding such interest adequately represented by City defendant where "[t]he City has moral, legal, financial, and political reasons to be concerned with issues that affect public safety, employee safety, and managerial efficiency" and finding "firefighter safety . . . subsumed within these issues").

Faced with this high burden, Proposed Intervenors rely entirely on conjecture and speculation as to hypothetical divergences between Defendants' interests and their own. The City, they argue, is inherently conflicted from adequately representing the interests of Proposed Intervenors' constituents because of "ongoing disciplinary proceedings and investigations and indemnification decisions." SBA Mem. at 12. Puzzlingly, SBA posits that the City "may acquiesce in the Attorney General's descriptions of specific police conduct" or "unfairly distance themselves and assign blame to the officers" and, as a consequence, "no existing party will have incentive to impeach such testimony." *Id*. But, as the district court in *Floyd* observed, "[i]n civil actions where both the City and its employees are named as defendants, the Corporation Counsel must represent the City, and it may elect to represent individual employees, so long as the Corporation Counsel is satisfied that the employees were acting within the scope of their employment and there is no ethical conflict of interest in representing co-defendants." 302 F.R.D. at 94 (citing N.Y.C. Gen. Mun. L. § 50-k). In such situations, "it would not be in the City's interest to ... place blame on" the individual employees and so "Corporation Counsel could not simultaneously represent these municipal employees and repudiate their conduct." *Floyd*, 302 F.R.D. at 94 (citing *Mercado v. City of New York*, 08 Civ. 2855, 2010 WL 3910594, at *4 (S.D.N.Y. Sept. 30, 2010)). The City may also be liable for any damages that its

employees are ordered to pay.  In any event, this argument suggests only a divergence between the City's interest and that of an individual officer, *not* a divergence between interests of the City and Proposed Intervenors, which is the relevant inquiry here.

In an effort to pry themselves free from this precedent, SBA offers a purported expert opinion through a conclusory affirmation from Professor Bruce Green.  *See* SBA Mem., Ex. B ("Green Affirm.").  To begin with, Plaintiffs do not concede that Professor Green qualifies as an expert.  *See* Fed. R. Evid. 702.  Assuming arguendo that he does, the purported opinions within his affidavit are entirely without merit.  Professor Green admits that his opinion is based on nothing more than his reading of the *People* complaint and a single page letter from counsel for SBA advising this Court of the potential that SBA may seek to intervene.  Green Affirm. ¶ 9. Based only on these sources, Professor Green finds "a reasonable likelihood" that this Court could render findings that include that "particular officers engaged in conduct that would subject them personally to discipline, civil liability[,] or other adverse legal or employment consequences." Green Affirm. ¶ 11.  As a result, he concludes that there is a conflict of interest between the City and individual officers.  *See id*. ¶¶ 14-15. Professor Green's opinion amounts to little more than a baseless attack on the City's determination under General Municipal Law 50-k that no conflicts exist and that it may proceed with representing individual defendants who acted within the scope of their employment.

Proposed Intervenors fail to provide any non-conclusory rationale as to why Defendants cannot adequately represent their interests. Moreover, this litigation does not genuinely *concern* Proposed Intervenors' collective bargaining rights, as explained *supra*. Proposed Intervenors' speculate that the City may not be completely aligned with their interests in defending the NYPD's policing practices because they have "many other fish to fry." (PBA Mem. at 12.)  But

"a putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party." *HHS*, 2019 WL 3531960, at *6 (quoting *NRDC*, 834 F.2d at 62-63); *see also Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.,* No. 96 CIV. 2064, 1996 WL 346352, at *3 (S.D.N.Y. June 25, 1996).

For these reasons, the Court should deny Proposed Intervenors' motion to intervene as of right under Rule 24(a)(2).

## II.     Permissive Intervention Under Rule 24(b) Is Unwarranted.

This Court should also deny Proposed Intervenors' motion for permissive intervention. Rule 24(b) allows the Court to permit intervention by one who "has a claim or defense that shares with the main action a common question of law or fact," subject to the Court's consideration of "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(1)(B), (b)(3).  The district court has "broad discretion" to deny permissive intervention, *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996), and a "denial of permissive intervention has virtually never been reversed." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005) (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 990 n.19 (2d Cir. 1984).

Thus, as a threshold matter, the Court should deny the motion for permissive intervention for the same reasons that intervention of right is unwarranted.  *See supra*; *see also New York v. United States Dep't of Educ.*, No. 20-CV-4260, 2020 U.S. Dist. LEXIS 122489, at *13 (S.D.N.Y Jul. 10, 2020) ("As an initial matter, the considerations that render [the movant] ineligible for

intervention as of right under Rule 24(a) . . . militate strongly as well against granting permissive intervention under Rule 24(b)." (internal citation and quotation marks omitted).

Additionally, applying the factors identified in Rule 24(b), the Court should deny permissive intervention because Proposed Intervenors' participation as a party "will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

A key consideration in determining whether intervention will cause delay or prejudice is whether the "potential intervenor will essentially repeat the same sort of testimony given by existing parties," in which case "intervention is counterproductive because it will only clutter and prolong the litigation unnecessarily." 6 James W. Moore, Federal Practice § 24.10(2)(b) at 72-73 & n.24 (citing cases). This consideration should be given extra weight where, as here, the Proposed Intervenor seeks to intervene in a case where the parties are governmental entities, which are presumed to provide adequate representation. *United States v. City of New York*, 198 F.3d at 367; *see also SEC v. Amtrust Fin. Servs.*, No. 20 Civ. 4652, 2020 U.S. Dist. LEXIS 136485, at *11 (S.D.N.Y Jul. 31, 2020) ("Concerns about undue delay and complication resulting from permissive intervention are acute where the Government . . . is a party to the underlying action.") (internal citation omitted).

As discussed above, Proposed Intervenors' stated goal is identical to Defendants' goal: both seek to defend the constitutional validity of the NYPD's use of force practices during the protests. *See supra* at 17. Proposed Intervenors identify no cognizable interests in the present litigation that are not adequately protected by the City's participation. Permitting intervention will therefore simply result in duplication of the City's arguments as defendant, cluttering and unnecessarily prolonging the litigation, which is moving on an expedited schedule. Proposed Intervenors' participation would only serve to impede efficient adjudication of this matter, and

intervention should be denied. *See, e.g.*, *ACRA Turf Club, LLC v. Zanzuccki*, 561 Fed. Appx. 219, 222 (3d Cir. 2014) ("[T]he district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'") (quoting *Hoots v. Commonwealth of Pa.*, 672 F.3d 1133, 1135–36 (3d Cir. 1982).

Alternatively, even if the Court accepts the Proposed Intervenors' contention that they possess separate cognizable interests in this litigation, these interests are collateral to the core interests at stake in this action. Concerns regarding collective bargaining rights and officer safety are not only attenuated but are secondary to the core legal issue in this action: whether the NYPD's policing practices related to the protests are constitutionally permissible. Because Proposed Intervenors' asserted interests are secondary to this issue, permissive intervention is not appropriate here. *See, e.g.*, *FTC v. First Capital Consumer Mbrshp. Servs.*, 206 F.R.D. 358, 366 (W.D.N.Y 2001) ("[T]he case law is clear that if an intervenor attempts to introduce collateral issues in a proceeding, a court may be justified in denying a motion to intervene based on undue delay or prejudice." (citing *The Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 178 F.R.D. 39, 44 (E.D.N.Y. 1998)); *see also Washington Elec. Coop*, 922 F.2d at 97 ("Intervention cannot be used as a means to inject collateral issues into an existing action.") (citing *Sierra Club v. United States Army Corps of Engineers*, 709 F.2d 175, 176-77 (2d Cir. 1983); *Rios v. Enterprise Assoc. Steamfitters Local Union*, 520 F.2d 352, 356-57 (2d Cir. 1975)).

Proposed Intervenors' speculative worry of potential future NYPD policy changes cannot be the basis for intervention because "an inchoate fear" of future enforcement by a party to an underlying action does not satisfy the Rule 24(b)(1)(B) "common question" requirement. *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 595 (S.D.N.Y.

2018). Thus, consideration of these speculative claims will only further cause "undu[e] delay[.]" *See id.*

Insofar as Proposed Intervenors have some unique perspective on the issues before the Court as members of the business community, their insights may be offered as *amici curiae*. *See, e.g.*, *United States Dep't of Educ.*, 2020 U.S. Dist. LEXIS 122489, at *15 ("[The] motion for permissive intervention is denied. To the extent that the movant seeks to raise issues that will be helpful to the Court in deciding the issues in this case, the movant may file an amicus brief or initiate a separate litigation."); *Battle v. City of N.Y.*, No. 11-CV-3599, 2012 WL 112242, at *7 (S.D.N.Y. Jan. 12, 2012) ("To the extent that Taxi Federation members may have had relevant experiences with TRIP . . . the Taxi Federation may request to participate as an amicus curiae."); *British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1976); *see also Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) ("Additional parties always take additional time. . . . Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.") (quoting *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943)); *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 323 F.R.D. 54, 66 (D.D.C. 2017) (denying permissive intervention to public health organizations that sought to defend agency rulemaking in a challenge by cigar manufacturers, where the proposed intervenors "have not given the court sufficient reason to believe that Defendants will not defend those requirements to the fullest," and where intervenors could "join these proceedings as amicus curiae").

For these reasons, the Court should deny Proposed Intervenors' request for permissive intervention under Rule 24(b).

## CONCLUSION

For these reasons, Proposed Intervenors have failed to demonstrate their entitlement to intervene in these actions as of right, and the Court should exercise its discretion to deny Proposed Intervenors' request for permissive intervention.

Dated: March 19, 2021                                        Respectfully submitted,

                                                                    LETITIA JAMES
                                                                    *Attorney General of the State of New York*

Anisha Dasgupta                                       By: */s/ Travis W. England*
  *Deputy Solicitor General*                      Jessica Clarke
Philip Levitz                                                 *Chief of Civil Rights Bureau*
  *Assistant Solicitor General*                   Lillian Marquez, *Assistant Attorney General*
                                                               Morenike Fajana, *Special Counsel*
*Of Counsel*                                             Travis England, *Assistant Attorney General*
                                                               Gregory Morril, *Assistant Attorney General*
                                                               Office of the New York State Attorney General
                                                               28 Liberty Street, 20th Floor
                                                               New York, NY 10005
                                                               Phone: (212) 416-8250
                                                               Jessica.Clarke@ag.ny.gov


*Counsel for Plaintiff in People of the State of New York v. City of New York et al,*
*No. 21 Civ. 322*

**NEW YORK CIVIL LIBERTIES UNION FOUNDATION**

*/s/Jessica Perry*
JESSICA PERRY
MOLLY BIKLEN
DANIEL R. LAMBRIGHT
LISA LAPLACE
CHRISTOPHER T. DUNN
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
mbiklen@nyclu.org
jperry@nyclu.org

24

dlambright@nyclu.org
llaplace@nyclu.org
cdunn@nyclu.org


**THE LEGAL AID SOCIETY**

*/s/ Corey Stoughton*
COREY STOUGHTON
JENNVINE WONG
199 Water Street
New York, NY 10038
(212) 577-3367
cstoughton@legal-aid.org
jwong@legal-aid.org

*Co-Counsel for Plaintiffs in Payne v. de Blasio, 20 Civ. 8924*


Lance A. Clarke, Esq.
Jason Clark, Esq.
Michael L. Spiegel, Esq.
Joshua S. Moskovitz, Esq.
48 Wall Street, Suite 1100
New York, NY 10005
(212) 729-0952

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, et al, No. 20 Civ. 10291*


**KAUFMAN LIEB LEBOWITZ & FRICK LLP**

Douglas E. Lieb
10 East 40th Street, Suite 3307
New York, NY 10016
(212) 660-2332
dlieb@kllf-law.com

*Counsel for Plaintiff Charles Henry Wood v. de Blasio, et al, No. 20 Civ. 10541*

**BELDOCK LEVINE & HOFFMAN LLP**

By:

Jonathan C. Moore
David B. Rankin
Luna Droubi
Marc Arena
Deema Azizi
Rebecca Pattiz
Katherine "Q" Adams
Regina Powers

99 Park Avenue, PH/26th Floor
New York, New York 10016
    t: 212-490-0400
    f: 212-277-5880
    e: jmoore@blhny.com
       drankin@blhny.com
       ldroubi@blhny.com
       marena@blhny.com
       dazizi@blhny.com
       rpattiz@blhny.com
       qadams@blhny.com
       rpowers@blhny.com

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By:

Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com
       jessica@femmelaw.com

**WYLIE STECKLOW PLLC**

By: Wylie Stecklow
Wylie Stecklow PLLC
231 West 96th Street
Professional Suites 2B3
NYC NY 10025
t: 212 566 8000
Ecf@wylielaw.com

**LORD LAW GROUP PLLC**

Masai I. Lord
14 Wall St., Ste 1603
New York, NY 10005
P: 718-701-1002
E: lord@nycivilrights.nyc

*Co-Counsel for Plaintiffs in Sow et al v. City of New York et al, No. 21 Civ. 00533*