UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

In Re: New York City Policing During Summer 2020
Demonstrations.

20 Civ. 8924 (CM)(GWG)
20 Civ. 10291(CM)(GWG)
20 Civ. 10541(CM)(GWG)
21 Civ. 322(CM)(GWG)
21 Civ. 533(CM)(GWG)
21 Civ. 1904(CM)(GWG)

-------------------------------------------------------------------------x

# MEMORANDUM OF LAW OPPOSITION TO MOTIONS TO INTERVENE

GEORGIA M. PESTANA, ESQ.
ACTING CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By:  Dara L. Weiss
     Elissa B. Jacobs
     Brachah Goykadosh
     Senior Counsels
     Special Federal Litigation Division
     (212) 356-3517

Table of Contents

PRELIMINARY STATEMENT ..................................................................................................1

STANDARD OF REVIEW ..........................................................................................................1

    THE COURT SHOULD DENY THE UNIONS' MOTIONS
        TO INTERVENE AS OF RIGHT ........................................................................2

    THE COURT SHOULD DENY THE UNIONS' MOTIONS
        FOR PERMISSIVE INTERVENTION ................................................................8

CONCLUSION ............................................................................................................................10

## **TABLE OF AUTHORITIES**

Washington Electric Coop. v. Mass. Mun. Wholesale Elec. Co., 92, 97 (2d Cir. 1990) ................ 4

AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561 (2d Cir. 2005) ....................................................... 3

Calderon v. Clearview AI, Inc., No. 20 Civ. 1296 (CM), (S.D.N.Y. May 29, 2020 ...................... 9

CWCapital Cobalt Vr Ltd. v. U.S. Bank Nat'l Ass'n, 790 Fed. App'x. 260, 262 (2d Cir. 2019) .. 2

EC v. Amtrust Fin. Servs., 20 Civ. 4652 (LLS), (S.D.N.Y. July 31, 2020 ..................................... 3

Fed. R. Civ. P. 24(a) ................................................................................................................... 2,3

Fed. R. Civ. P. 24(a)(2) ................................................................................................................... 3

Fed. R. Civ. P. 24(b) ................................................................................................................. 3, 10

Fed. R. Civ. P. 24(b)(2) ................................................................................................................... 3

Fed. R. Civ. P. 24(b)(3) ................................................................................................................... 3

Floyd v. City of New York, 302 F.R.D. 69 (S.D.N.Y. 2014) ............................................ 5, 6, 7, 8

Lynch v. City of New York, 737 F.3d 150, 163 (2d Cir. 2013 ........................................................ 5

MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006) ......................... 2

New York City Administrative Code § 12-307(b) ................................................................ 4, 6, 7

NYCCBL § 12-307(b) .................................................................................................................... 8

Patrolmen's Benevolent Association (PBA") v. New York State Public Employment Relations
    Board ("PERB"), 6 N.Y.3d 563, 575-76 (2006) .................................................................... 5, 7

Person v. N.Y. State Bd. of Elec., 467 F.3d 141, 144 (2d Cir. 2006). ............................................ 4

R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006) .............. 3

U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191-92 (2d Cir. 1978). ............................................. 9

U.S. v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir. 1994 ............................................................... 9

United States v. City of Los Angeles, 288 F.3d 391 (9th Cir. 2002) ............................................. 7

## PRELIMINARY STATEMENT

Defendants City of New York, Mayor DeBlasio, Police Commissioner Shea and Chief Monahan ("City Defendants") submit this memorandum of law in opposition to the Motions to Intervene filed by proposed intervenors Police Benevolent Association, Detectives Endowment Association, Lieutenants Benevolent Association, and Sergeants Benevolent Association (collectively, "the Unions"). The Unions attempt to argue that intervention must be granted, contending that they have a legally protectable interest in these consolidated actions sufficient to establish their entitlement to intervention as of right. They further assert that intervention, given their purported interests, must be afforded to them, and assail the City, claiming it cannot properly or fairly represent such interests because potential and actual conflicts exist. This is simply untrue. Indeed, as repeatedly noted within the Unions' motions themselves, the City Defendants are moving to dismiss these actions, an application incongruent with the Unions' rhetoric and rationale employed to justify their need to intervene. Equally unavailing is the Unions' claim that allegations of unconstitutional acts by their members, made in the line of duty, must dictate intervention. Indeed, the Office of the Corporation Counsel has a proven track record of successfully representing members of the Unions in litigation arising out of protests, without Union intervention, or even participation.

Accordingly, neither intervention as of right, nor permissive intervention, should be granted, and the Unions' motions should be denied.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 24(a) provides for intervention as of right, stating in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

"To obtain intervention as of right under Federal Rule of Civil Procedure 24(a)(2), the putative intervenor must establish that: (1) the motion is timely; (2) [it] asserts an interest relating to the property or transaction that is the subject of the action; (3) [it] is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede [its] ability to protect its interest; and (4) [its] interest is not adequately represented by the other parties. CWCapital Cobalt Vr Ltd. v. U.S. Bank Nat'l Ass'n, 790 Fed. App'x. 260, 262 (2d Cir. 2019) (citing MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets, 847 F.2d 1038, 1043 (2d Cir. 1988).

Fed. R. Civ. P. 24(b) provides for intervention by permission, stating in relevant part: "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." District courts have "broad discretion" when "considering permissive intervention." AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561 (2d Cir. 2005). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "The court considers substantially the same factors whether the claim for intervention is 'as of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)." EC v. Amtrust Fin. Servs., 20 Civ. 4652 (LLS), 2020 U.S. Dist. LEXIS 136485 at **10-11 (S.D.N.Y. July 31, 2020) (citing R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006).

**THE COURT SHOULD DENY THE UNIONS'
MOTIONS TO INTERVENE AS OF RIGHT
PURSUANT TO FED R. CIV. P. 24(a)**

The Unions are not entitled to intervene as of right in this action, as they have failed to establish all four of the criteria provided by Fed. R. Civ. P. 24(a). The disposition of this action without intervention would not impair or impede the Unions' ability to protect their supposed interest therein. Moreover, the Unions' supposed interest is adequately represented by other parties.

To intervene as of right, the Unions must have a "direct, substantial, and legally protectable" interest in the litigation. Person v. N.Y. State Bd. of Elec., 467 F.3d 141, 144 (2d Cir. 2006). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Washington Electric Coop. v. Mass. Mun. Wholesale Elec. Co., 92, 97 (2d Cir. 1990). The Unions first assert that they have a legally protectable interest in this action on the theory that their collective bargaining rights will be impacted by the outcome of this matter. Yet that angle of approach is unavailing. Though pointedly characterized to connect to their members' interests, the true gravamen of this litigation, and the plain relief sought by Plaintiffs, implicates not mandatory subjects of collective bargaining, but rather managerial prerogatives entrusted to the City under the New York City Collective Bargaining Law.

Specifically, New York City Administrative Code § 12-307(b) provides that the City has the right to:

determine the standards of services to be offered by its agencies; determine the standards of selection for employment; direct its employees; take disciplinary action; relieve its employees from duty because of lack of work or for other legitimate reasons; maintain the efficiency of

governmental operations; determine the methods, means and personnel by which governmental operations are to be conducted; determine the content of job classifications; take all necessary actions to carry out its mission in emergencies; and exercise complete control and discretion over its organization and the technology of performing its work.  Decisions of the city or any other public employer on those matters are not within the scope of collective bargaining, but, notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety, are within the scope of collective bargaining.

Moreover, the City's authority in such matters is particularly broad in the context of police work.  As the New York State Court of Appeals has observed, "[w]hile the Taylor Law policy favoring collective bargaining is a strong one, so is the policy favoring the authority of public officials over the police."  Patrolmen's Benevolent Association (PBA") v. New York State Public Employment Relations Board ("PERB"), 6 N.Y.3d 563, 575-76 (2006).  Likewise, the Second Circuit has consistently recognized the important interests in the "NYPD's ability both to manage its personnel effectively and to assure the public that it is doing so."  Lynch v. City of New York, 737 F.3d 150, 163 (2d Cir. 2013).

Both this Court and, thereafter, the Second Circuit, previously determined this very issue, though under admittedly different circumstances, in Floyd v. City of New York, 302 F.R.D. 69 (S.D.N.Y. 2014), aff'd, 770 F.3d 1051 (2d Cir. 2014).  The Unions largely distort the import of the Second Circuit's holding in Floyd, framing its denial of intervention primarily as a consequence of its procedural posture. In Floyd, the Unions sought intervention belatedly, when a Remedial Order already was proposed as part of the resolution of the litigation.  The Unions argue further that, given claimed dissimilarities from Floyd, they have direct and protectable

interests, which they characterize as pertaining to their physical safety, collective bargaining rights, and their reputations. Yet, contrary to the Unions' claim, Floyd dictates that their motions to intervene be denied.

Indeed, the Second Circuit, in evaluating the motion to intervene before it in Floyd, stressed that "for an interest to be 'cognizable' under Rule 24, it must be 'direct, substantial, and legally protectable. In other words, '[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.'" Floyd, 770 F.3d at 1060. After acknowledging that the unions' motion to intervene was untimely, having identified the prejudice and threat to the democratic process were intervention permitted, the Second Circuit added that its "reservations deepen when we note the relatively modest interests the unions seek to advance and to which we now turn." Id. Those interests cannot be deemed colorably different from those the Unions proffer here.

In Floyd, the Second Circuit upheld the District Court's determination that "the unions' interest in protecting their collective bargaining rights is similarly too remote from the subject matter of the Remedial Order to be legally protectable." Floyd, 770 F.3d at 1061. Relying on the New York City Collective Bargaining Law, the Second Circuit agreed that the Remedial Order mandated changes that fell "squarely within the 'management rights' provision of New York City Administrative Code § 12-307(b), which exempts from mandatory collective bargaining certain managerial prerogatives including 'the methods, means and personnel by which government operations are to be conducted.'" Id.

In their present motion to intervene, the Unions proffer interests neither departing from those imperfectly advanced in Floyd, nor eliding the managerial prerogatives catalogued in

Administrative Code § 12-307(b). They broadly contend that they hold an interest "in the contours of any injunction or other prospective relief" that may be founded on adverse findings made against their members. Yet the Unions preface their entire argument by identifying such interests as pertaining to the "[c]hanges in training, supervision, monitoring, and/or discipline" set forth in the Plaintiffs' pleadings. They further identify as principal concerns the possibility that practices and procedures "developed by NYPD leadership" may be changed through the course of litigation. These matters, so identified, constitute managerial prerogatives, consigned to the City and the NYPD, and are no different from the changes undertaken by the Remedial Order, which included "the NYPD's 'stop-and-frisk' policies, procedures, supervision, training, and monitoring." The Second Circuit deemed such subjects of remediation firmly "within the 'management rights' provision of New York City Administrative Code § 12-307(b)." Floyd, 770 F.3d at 1061. Unsurprisingly too, it is well established under state law that the establishment and revision of policing policy, including discipline, are generally not mandatory subjects of collective bargaining. See PBA, 6 N.Y.3d at 571-72 (collecting cases and holding that police discipline is not a subject of collective bargaining).

As they did in Floyd, the Unions cite United States v. City of Los Angeles, 288 F.3d 391 (9th Cir. 2002), for the proposition that they have the right to intervene. In Floyd, the Second Circuit discounted the reliance on City of Los Angeles, noting it was a "decision by a sister Circuit that is not binding in this Circuit." Floyd, 770 F.3d at 1061 n.33. Accordingly, given that statement made by otherwise mandatory precedent, this Court must follow Floyd. There, the Second Circuit identified as managerial prerogatives subjects akin to those challenged by the Plaintiffs here. As it emphasized, "[i]t is the right of the city . . . [to] exercise complete control and discretion over its organization and the technology of performing its work." Id. at 1061.

Even a cursory review of the pleadings – now amended – across the cases consolidated before the Court, shows that Plaintiffs seek to address purported policies, practices and customs of the NYPD itself, and, though identifying particularized incidents, the challenge is no different than the cast of allegations and request for relief sought in Floyd.

It need only be added, too, that even the Unions' speculative belief that any future fashioned remedy could touch on their bargaining rights does not warrant intervention. In Floyd, the Second Circuit found the Remedial Order to have no "practical impact" on "questions of workload, staffing and employee safety," as subsumed within collective bargaining. And, even so, the Second Circuit further noted that "to the extent any provision of the settlement agreement might be said to affect collective bargaining rights, no provision in the agreement prevents the unions from collectively bargaining." Floyd, 770 F.3d at 1061-62. Further, it acknowledged the City's representation that it did "not object to appropriate collective bargaining to the extent that issues raised by the settlement agreement would normally be subject to collective bargaining." Id. at 1062. That position, indeed, harmonizes with NYCCBL § 12-307(b), which provides that "questions concerning the practical impact that decisions on the above matters have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety, are within the scope of collective bargaining." It is that bargaining requirement, known as "impact bargaining" or "effects bargaining," that constitutes the precise form and forum for the very interests the Unions seek to advance, incorrectly, through their motions for intervention here.

The Unions also contend that the City cannot adequately represent the interests of the Unions, asserting, through a tautology, that only the Unions can represent their members' interests because only the Unions can represent their members. The mere fact that the City may

sit only as management, and thus across the bargaining table from the Unions, cannot reasonably serve to validate the Unions' grounds for intervention in litigation that challenges managerial prerogatives.

And, even so, the City, through the Office of the Corporation Counsel, routinely defends the actions and conduct of the Unions' members, a fact that upends the oppositional dynamic they seek to employ here. In fact, the Office of the Corporation Counsel has had a remarkable success rate at defending Union members in federal lawsuits brought in the SDNY arising out of protests; in the last decade, with a jury verdict for the grand sum of one penny.  In the last decade no Union member that this office has represented has had to pay out of his or her pocket for any settlement in a protest case.  And no protest case in the last decade has resulted in any injunctive or declaratory relief at all, let alone any that has had an affect on the contractual rights of Union members.   It is absurd for the Unions to say that the Office of the Corporation Counsel is inadequate at representing Union members in cases arising out of protests.

In sum, the Unions' motions for intervention as of right should be denied

### THE COURT SHOULD DENY THE UNIONS' MOTIONS FOR PERMISSIVE INTERVENTION PURSUANT TO FED R. CIV. P. 24(b)

The Unions' motions also contend that they are entitled to permissive intervention.  Permitting the Unions to intervene in this action would unduly delay and/or prejudice the rights of the other parties, and would generally not contribute to the full development of the facts in this litigation. "In exercising its discretion to decide a motion for permissive intervention, the court's primary consideration is whether intervention will unduly delay or prejudice the adjudication of the rights of the parties whose lawsuits are being 'invaded.'" Calderon v. Clearview AI, Inc., No. 20 Civ. 1296 (CM), 2020 U.S. Dist. LEXIS 94926, at *23 (S.D.N.Y. May 29, 2020) (citing U.S. v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d

Cir. 1994) ("The principal guide in deciding whether to grant permissive intervention" is prejudice to existing parties."). In determining whether to permit intervention under Rule 24(b), courts consider, *inter alia*, whether the party seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191-92 (2d Cir. 1978).

For substantially the same reasons as set forth above, the Unions' motions for permissive intervention should be denied. The altogether generalized interests that the Unions seek to advance, ostensibly animating their grounds for intervention, are simply not sufficient. Further, the intervention of the Unions would contribute neither to the full development of the underlying factual issues – which plainly concern recorded public events and, more centrally, the policies, practices, and procedures of the NYPD – nor to the just and equitable adjudication of the cases. Rather, beyond delaying determination, the Unions seek simply to parlay their intervention to bolster and benefit their collective bargaining interests, none of which are implicated in the litigation itself. And, even if their bargaining rights could be impacted by any eventually altered managerial prerogatives (which are the singular subjects of these actions), this would justify future engagement in impact or effects bargaining, and absolutely does not warrant permissive intervention. Indeed, the Unions' flat assertion that permissive intervention will enable them to "advance their members' views" has no bearing on any "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Accordingly, the Unions' motion seeking permissive intervention should be denied.

## CONCLUSION

For the foregoing reasons, defendants City of New York, Mayor Bill de Blasio, Commissioner Dermot Shea, and Chief Terence Monahan respectfully request that the Court deny the Unions' motions to intervene, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 19, 2021

**GEORGIA M. PESTANA**
ACTING CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorneys for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3517

By: *Dara L. Weiss s/*
Dara L. Weiss
Elissa B. Jacobs
Brachah Goykadosh
*Senior Counsels*
Special Federal Litigation Division