UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In Re: New York City Policing During Summer 2020         Civil Action No.:
Demonstration                                             20-CV-8924
                                                          (CM) (GWG)

------------------------------------------------------------------x

This filing is related to                                 Civil Action No.:
                                                          21-CV-0322
*People v. City of New York, et al.*                      (CM) (GWG)

------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR DETECTIVE ENDOWMENT ASSOCIATION'S MOTION FOR INTERVENTION

PITTA LLP
**Stephen Mc Quade, Esq.**
**Vincent F. Pitta, Esq.**
**Barry N. Saltzman, Esq.**
*Attorneys for Proposed Intervenor*
*Detective Endowment Association*
120 Broadway, 28th Floor
New York, New York 11554
(212) 652-3885
smcquade@pittalaw.com
vpitta@pittalaw.com
bsaltzman@pittalaw.com

{00683626-4}

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................1

ARGUMENT..................................................................................................................................1

POINT I     THE UNION HAS SATISFIED THE CRITERIA
            FOR INTERVENTION AS OF RIGHT..................................................................1

POINT II    PERMISSIVE INTERVENTION BY
            THE DEA IS ALSO APPROPRIATE......................................................................8

CONCLUSION...............................................................................................................................10

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Brennan v. New York City Bd. of Educ.*,
   260 F.3d 123 (2d Cir. 2001) .................................................................................................. 2
*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d. Cir. 2001) ................................................................................................... 2
*Floyd v. City of New York*,
   770 F.3d 1051 (2d Cir. 2014) ............................................................................................. 6, 7
*H.L. Hayden Co. of New York v. Siemens Medical Sys., Inc.*,
   797 F2d 85 (2d Cir. 1986) .................................................................................................. 8, 9
*U.S. v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ................................................................................................. 2
*United States v. City of Jackson, Miss.*,
   519 F.2d 1147 (5th Cir. 1975) ............................................................................................... 4

**State Cases**

*City of New York v. Patrolmen's Benevolent Assn. of the City of*,
   New York, 14 N.Y.3d 46 ........................................................................................................ 2
*Patrolmen's Benevolent Assn. v. New York Pub. Empl. Relations Bd.*,
   6 N.Y.3d 563 (2006) ............................................................................................................. 2

**Statutes**

New York City Administrative Code, Title 12, Chapter 3 .................................................. *passim*

**Rules**

FRCP Rule 24(a) ............................................................................................................. 1, 8, 10
FRCP Rule 24(b) ................................................................................................................ 8, 10

**Other Authorities**

*Unif. Firefighters Assn.*, 10 OCB2d 5 (BCB 2017) ........................................................................ 3
*Dist. Council 37*, 4 OCB2d 19 (BCB 2011) .................................................................................. 6
*Local 333, Utd. Marine Div.*, 6 OCB2d 25 (BCB 2013) ............................................................... 6

## PRELIMINARY STATEMENT

This reply memorandum of law is submitted on behalf of Proposed Intervenor, the Detectives Endowment Association (hereinafter "DEA" or "Union"), in further support of its Motion for Intervention in the above-captioned matter, dated March 3, 2021 (hereinafter "DEA Motion"), (*see* Dkt. 51-53), and in rebuttal of the arguments raised in Plaintiffs' Consolidated Memorandum of Law in Opposition to the Motions to Intervene, dated March 19, 2021 (hereinafter "Plaintiffs"), (*see* Dkt. 90), and in Defendants' Memorandum of Law in Opposition to Motions to Intervene, dated March 19, 2021 (hereinafter "Defendants" or "City"). (*See* Dkt. 93). Based upon all of the submissions concerning this motion, DEA's Motion should be granted in its entirety because the DEA meets each and every element of the criteria for intervention as of right, and alternatively for permissive intervention.

## STATEMENT OF FACTS

The facts relevant to this action are set forth in the Declaration of Stephen Mc Quade, dated March 3, 2021 (hereinafter "Mc Quade Declaration"), (*see* Dkt. 52), the exhibits annexed thereto, (*see* Dkt. 52-2 – 52-16), and the Declaration of Paul DiGiacomo, dated March 3, 2021 (hereinafter "DiGiacomo Declaration"). (*See* Dkt. 52-1).

## ARGUMENT

### POINT I

### THE UNION HAS SATISFIED THE CRITERIA FOR INTERVENTION AS OF RIGHT

The Union has met each of the elements of Rule 24(a)(2) of the Federal Rules of Civil Procedure (hereinafter "FRCP") for intervention – i) the motion is timely; ii) the DEA has an interest in the existing litigation; iii) the DEA's interests would be impaired by the outcome of the

litigation; and iv) the DEA's interests will not be adequately represented by the existing parties – all under the "flexible" broad view all factors and liberal standard that "serves both efficient resolution of issues and broadened access to the courts." *U.S. v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). *See also, D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d. Cir. 2001).

In contesting that the interests of the Union and its membership are "direct, substantial, and legally protectable" under *Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001), Plaintiffs and the City claim that the DEA's interests are too remote and that statutory collective bargaining rights are insufficient. Plaintiffs myopically focus on only a portion of § 12-307(b) of the New York City Collective Bargaining Law (New York City Administrative Code, Title 12, Chapter 3) (hereinafter "NYCCBL")[1] and judicial decisions concerning the disciplinary authority of the Police Commissioner for the New York City Police Department (hereinafter "NYPD"). *See Patrolmen's Benevolent Assn. v. New York Pub. Empl. Relations Bd.*, 6 N.Y.3d 563, 575-576 (2006); *in contrast, City of New York v. Patrolmen's Benevolent Assn. of the City of New York*, 14 N.Y.3d 46, 59 (stating that not "every step" of the Police Commissioner's disciplinary authority is a prohibited subject of bargaining).

---

[1] NYCCBL § 12-307(b) states:

> It is the right of the city, or any other public employer, acting through its agencies, to determine the standards of services to be offered by its agencies; determine the standards of selection for employment; direct its employees; take disciplinary action; relieve its employees from duty because of lack of work or for other legitimate reasons; maintain the efficiency of governmental operations; determine the methods, means and personnel by which government operations are to be conducted; determine the content of job classifications; take all necessary actions to carry out its mission in emergencies; and exercise complete control and discretion over its organization and the technology of performing its work. Decisions of the city or any other public employer on those matters are not within the scope of collective bargaining, *but, notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety, are within the scope of collective bargaining.* (Emphasis added).

However, the litany of decisions issued by the New York City Board of Collective Bargaining (hereinafter "BCB" or "Board"), properly applying the entirety of NYCCBL § 12-307(b) and the caselaw interpreting the same, including the last sentence caveat to this provision, demonstrate that a public sector employer's authority under NYCCBL § 12-307(b) is not an "unfettered" right. *Unif. Firefighters Assn.*, 10 OCB2d 5, at 8 (BCB 2017) (holding that the management right's provision of the NYCCBL does not exclude all aspects of the commissioner's disciplinary authority from the scope of mandatory subjects of negotiations). (*See* Dkt. 52-5). Additionally, the BCB decisions annexed to the Mc Quade Declaration accentuate the parameters the BCB has utilized when engaging in an analysis concerning the tension that exists between the managerial prerogative and the obligation to negotiate over mandatory subjects of bargaining. (*See* Dkt. 52-4 – 52-15).

Nor do Plaintiffs successfully articulate how the contractual provisions cited in the DEA Motion fail to constitute a sufficient interest in the above-captioned matter despite the detail set forth in the DiGiacomo Declaration, (*see* Dkt. 52-1, ¶¶ 29-48) and the DEA's explanation of how these contractual covenants could be diminished as a result of the instant matter. (*See* Dkt. 53, pp. 7-9). For example without limitation of the DEA's prior position on the adverse effect the instant matter could have on the collective bargaining agreement by and between the City and DEA (hereinafter "CBA" or "Agreement"), the outcome herein could diminish the benefits enjoyed by DEA members, all of which were attained through diligent collective negotiations. The DEA could be forced to make certain decisions on priorities in future negotiations with the City, based on the outcome of the instant litigation, such as revising the duration for which health insurance of a DEA member is lost as a result of a suspension (Article XIII § 4 of the CBA), increasing the monetary amount dedicated for contributions into the Union's civil legal defense fund (Article

XIV § 1(f) of the CBA), and losing creditable service years that are used to calculate one's entitlement to terminal leave (Article XVI § 11 of the CBA).[2]

Finally, both Plaintiffs and the City fall far short of showing that the City is capable of adequately representing DEA members[3] and their interests. Plaintiffs contend that both Defendants and DEA members have the same interest at stake, defeating the instant litigation, but such an overly expansive description of "interest" can, and here does, obscure the relevant point. In determining whether the actions of all NYPD officials involved were in accordance with the U.S. and New York Constitutions, the Court will necessarily apply facts and law to the constitutional balance of safety, security, and right to protest at the core of these cases. The DEA's interest in community security and member safety is not the same as the City's. Politicians and brass cannot care for the rank-and-file's collective bargaining rights and stand far removed from field officers' vital safety and security needs, especially in light of the fact that, as mentioned in the DEA Motion, Defendants' orders and actions significantly led to the exacerbation of dangerous conditions during the events mentioned by Plaintiffs, including but not limited to violent encounters and multiple conflagrations. (*See* Dkt. 52-1 and 52-16).

---

[2] With respect to the argument that no interests of DEA members would be affected by the litigation of and outcome in the instant matter, Plaintiffs state that any decision resulting from the instant case would have no preclusive effect on any DEA members who are not specifically named in these civil suits. However, as will be discussed below in Point II, both Plaintiffs and the City fail to address, or even mention, the fallout that resulted from the Nunez litigation, and the ramifications that it had on all uniformed employees of the New York City Department of Correction (hereinafter "DOC"). (*See* Dkt. 53, pp. 15-16). Moreover, the intervention standard of impairments is far lighter than preclusion. *See United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1150 (5th Cir. 1975).

[3] Detective Damian Rivera was named in the First Amended Complaint by the plaintiffs in *Payne, et al. v. City of New York, et al.*, 20-CV-8924 (CM) (GWG), (*see* Dkt. 54, 62, and 75), and Detective Edward Carrasco was named in the First Amended Complaint by the plaintiffs in *Sow, et al. v. City of New York*, 21-CV-0533 (CM) (GWG). (*See* Dkt. 96). The DEA intends to amend its proposed responsive pleading attached to the DEA Motion, (*see* Dkt. 52-16), to deny liability for any and all named detectives following leave to intervene.

That Corporation Counsel has successfully represented DEA members in civil actions speaks not at all to the necessary balances of this case. Moreover, it fails to address the numerous instances raised by the DEA, where an inherent conflict exists between the NYPD and individual DEA members, as is manifested either before the NYPD Internal Affair Bureau or the New York City Civilian Complaint Review Board. Plaintiffs' insistence that a Union member denied representation and indemnification by Corporation Counsel can simply go out and retain individual counsel or could initiate a special proceeding under Article 78 of the New York Civil Practice Law and Rules, coldly ignores the monetary burden that would be thrust upon an officer in these types of litigation. Neither Plaintiffs nor Defendants address the existing legislation that created a private right of action against individual uniformed employees of the NYPD in certain instances.[4]

Plaintiffs further contend that the DEA's interests under the NYCCBL and/or the CBA are too remote to the core issues in above-captioned matter because possible impairment is contingent on undetermined factors that have yet to become manifest. Here, the DEA's statutory and contractual interests are direct and substantial; further, impairment of those interests are not dependent on contingencies nor would granting the DEA Motion alter the inherent core of the instant matter.

In the first amended complaint filed in *State of New York v. City of New York, et al.,* Civil Action No. 21-CV-0322 (CM) (GWG), the State Attorney General's Office seeks, as part of its requested remedy, the NYPD "to take affirmative steps, including changing policies" to ensure compliance with the U.S. and New York Constitutions. (Dkt. 94). As outlined in the DEA Motion,

---

[4] Further highlighting the divergent interests of Defendants and the DEA, as well as the inherent conflict between these two sides, named-Defendant Mayor Bill DeBlasio stated yesterday that he was in favor of proposed legislation that would end qualified immunity for uniformed members of the NYPD and would attach personal civil liability against them, up to $25,000. *See* https://subscriber.politicopro.com/states/new-york/city-hall/story/2021/03/25/de-blasio-backs-nypd-qualified-immunity-bill-1369566

{00683626-4}                                      5

as well as herein, the implementation of policies and/or procedural aspects of managerial decisions are subjects of mandatory negotiations. *See Dist. Council 37*, 4 OCB2d 19, at 22 (BCB 2011) (Dkt. 52-10); *See Local 333, Utd. Marine Div.*, 6 OCB2d 25, at 18 (BCB 2013) (Dkt. 52-11). As such, the DEA Motion is simply responding to the assertions set forth by this plaintiff. Accordingly, the interests of the DEA are not dependent on double contingencies and/or will not transform the nature of the current litigation; rather granting the DEA Motion will permit the Union to participate in the case at bar in any meaningful way, under the guidance and direction of the Court.

Based upon these reasons, as well as those set out in the DEA Motion, the Union has demonstrated that the legally protectable interests of its members face real impairment and cannot be adequately represented by the parties, thereby necessitating intervention as of right. Nevertheless, both Plaintiffs and the City cite to the recently litigated matter revolving around the stop-and-frisk litigation against the City and NYPD. *See Floyd*, 302 F.R.D. 69; *see also Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014) (collectively, "*Floyd*"). *Floyd* does not bar intervention here.

The Courts in *Floyd* expended significant time and effort in addressing: i) the untimely nature of the Union's motion to intervene and ii) the inconsequential nature of reputational damages as it related to the individual Union members within the context of that litigation.[5] These formed the main concerns in that case and the gravamen of its holding, neither implicated by the DEA here. Moreover, the case at bar is distinguishable from *Floyd* because the Courts therein

---

[5] For example, the Court should consider a recent decision by a California appellate court condoning the termination of an employee who was fired after the release of his personnel records from his time as a police officer showing that he had substantiated disciplinary charges against him while on the force. *See Collondrez v. City of Rio Vista*, A159246 (Ca. Ct. of Appeals, 1st App. Dist. March 16, 2021). This serves as an example of real life harm that DEA members could face with subsequent employment, depending upon the outcome in the instant matter.

{00683626-4}                                    6

were not presented with the full panoply of interests at stake that could restrict the statutory and contractual rights of the DEA's membership. As presented herein above, as well as in the DEA Motion, the outcome in the instant matter could certainly have real life effects on the DEA, its membership, the CBA, and the statutory rights codified in NYCCBL § 12-305. The management rights provision of the NYCCBL simply does not act as a panacea that cures all ills that result from managerial action. Rather, the BCB has outlined instances where such management action impinges upon the rights of the DEA; namely the right to bargain over mandatory subjects of negotiations such as procedural aspect of a managerial decision, as well as practical impacts on the safety and workload of its members, and the right to ensure the sanctity of the Agreement.

The suggestion in *Floyd* that any potential outcome would singularly affect the City, not union members, is likewise misplaced. As highlighted by the recent legislation creating a private right of action against uniformed members of the NYPD, the agency argument relied upon by this Court, as well as the appellate court, would no longer be applicable. In addition, the CBA would suffer from untold diminutions resulting from the litigation or resolution, and these developments are evinced by the circumstances that followed the litigation in *Nunez v. City of New York*, Docket No.: 11-CV-5845 (LTS) (JCF) (hereinafter "*Nunez*"). (*See* Dkt. 53, pp. 15-16). *Floyd* did not properly account for these specific provisions of the NYCCBL or the causes of action that frequently arise in this administrative forum but focused primarily on concerns not raised by the DEA here. "Motions to intervene are highly fact-specific and tend to resist comparison to prior cases." *Floyd*, 302 F.R.D. at 83. This Court should apply a fact-based analysis and come to a different result, just as contemplated by *Floyd*.[6]

---

[6] Plaintiffs suggest possible intervention by the DEA at a later stage of the instant litigation and also suggest possible *amicus* status. (*See* Dkt. 90, p. 9, fn. 3 and p. 23). Neither suggestion goes far enough. Both beg the question why

{00683626-4}                                                7

## POINT II

### PERMISSIVE INTERVENTION BY
### THE DEA IS ALSO APPROPRIATE

Alternatively, the DEA satisfies the burden for permissive intervention. The DEA Motion timely raises claims of statute and contract right impairment that share common questions of law or fact with the main action exactly as prescribed by FRCP Rule 24(b). The Union's involvement in the case at bar will not delay the litigation of the underlying claims raised by Plaintiffs. As evidenced, the DEA, as well as the PBA and SBA, was given a "rocket docket" time frame to complete the motion practice related to intervention, and the DEA has complied with the same. To safeguard the interests of its members, the DEA will continue to abide by the pace set by the Court in discovery and later motions. Additionally, neither Plaintiffs nor Defendants are able to articulate how, if at all, they would be prejudiced by the DEA's intervention in the instant matter. Having to hear and address the views of police officers is no prejudice; it should be an imperative. In contrast, if the DEA Motion is not granted, the adverse consequences, as referenced throughout the DEA Motion and herein, that could befall the Union and its members are many and real.

The Courts have indicated that the satisfaction of this rule is not a high burden to meet, and that district courts have very broad discretion in granting permissive intervention *See H.L. Hayden Co. of New York v. Siemens Medical Sys., Inc.*, 797 F2d 85, 89 (2d Cir. 1986). In exercising that discretion, the Courts will also look to other relevant factors, such as "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *H.L. Hayden Co. of New York*, 797 F2d at 89; *see also Building and Realty Institute of Westchester and Putnam*

---

full participation now would not best effectuate the purposes of FRCP Rule 24, especially since any possible issues are best dealt with at the outset and not in the aftermath.

*Counties, Inc. v. State of New York*, 2020WL 5658703, *7 (S.D.N.Y. September 23, 2020) (granting permissive intervention because proposed intervenor "agreed to be subject to the same briefing schedule" and "has not needed to extend any preexisting deadlines or reschedule any proceedings to accommodate"). As established in the record provided by the DEA and its sister unions, intervention now by the very men and women charged with maintaining lawful peaceful protest satisfies the above-sated goals of the Court.

The real life example of how the resolution in *Nunez* has manifested itself stands as solid grounds to grant permissive intervention to the DEA. As referenced in the DEA Motion, *Nunez* spanned five years and the Consent Judgment resulting therefrom is still subject to the Court's oversight as well as a federal monitor. As detailed in the 65-page Consent Judgment, the manner in which DOC employees handle use of force incidents were forever altered to the detriment of the rank-and-file DOC employees. (*See* Dkt. 52-3). In order to enforce their statutory and contractual rights, the three unions representing uniformed DOC employees were forced to file administrative actions against the DOC for its implementation of the new, *Nunez*-compliant use of force policy. Because those unions were not party to the action, *Nunez* signaled only the beginning of protracted litigation on multiple fronts, rather than a comprehensive, reasoned solution to a complex problem. Significantly, the City which stands in an adversarial posture against those unions, did not even attempt to rebut the DEA's recitation of the facts involving *Nunez* or the contradictory position they take in the instant litigation.

Thus, based upon the foregoing, the DEA should be granted permissive intervention because the Union's inclusion in the instant matter has not caused any delay, will not prejudice Plaintiffs and/or Defendants, and inclusion of the DEA at this stage offers the best opportunity to avoid a *Nunez* quagmire and instead achieve a just result for all.

## CONCLUSION

All parties and proposed intervenors share substantial interests in protecting the legal right to peacefully protest without harm to property or person of fellow New Yorkers. If the whole outcome of these actions is to be more than any of us, or even the sum of us, then the voices, concerns, and courage of all of us must be heard, not least that of the brave men and women who daily contribute heart, mind, and physical safety to our city. The DEA respectfully requests that the Motion for Intervention, dated March 3, 2021, be granted finding that intervention of the Union as of right is appropriate under FRCP Rule 24(a)(2), or in the alternative, finding that permissive intervention of the Union is appropriate under FRCP Rule 24(b), as well as awarding the DEA such other and further relief as this Court finds just and proper.

Dated: New York, New York
      March 26, 2021

**PITTA LLP**

By: _____
Stephen Mc Quade, Esq.
Vincent F. Pitta, Esq.
Barry N. Saltzman, Esq.
Attorneys for Proposed Intervenor
*Detectives Endowment Association*
120 Broadway, 28th Floor
New York, New York 10271
(212) 652-3885
smcquade@pittalaw.com
vpitta@pittalaw.com
bsaltzman@pittalaw.com

TO:    All counsel of record