UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: New York City Policing During Summer 2020 Demonstrations<br>_____<br><br>This filing is related to:  ALL CASES | 20-Cv-8924 (CM) (GWG) |

# REPLY MEMORANDUM OF LAW OF THE POLICE BENEVOLENT ASSOCIATION IN SUPPORT OF MOTION TO INTERVENE

**LAW OFFICES OF ROBERT S. SMITH**

Robert S. Smith
Times Square, 28th floor
New York, N.Y. 10036
Tel.:   (917) 225-4190
Email: robert.smith@rssmithlaw.com

- and -

**SCHLAM STONE & DOLAN LLP**

Richard H. Dolan
Thomas A. Kissane
26 Broadway, 19th Floor
New York NY 10004
Tel.:   (212) 344-5400
Fax:    (212) 344-7677
Email: rdolan@schlamstone.com
Email: tkissan@schlamstone.com

*Attorneys for Proposed Intervenor Police Benevolent Association of the City of New York, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .....................................................................................................................................1

I. The PBA Has A Cognizable Interest In The Consolidated Actions ....................................2

    A. Collective Bargaining and Related Rights.............................................................2

    B. Collateral Consequences.........................................................................................7

II. The Danger Of Impairment To The PBA's Interests Is Sufficient To Support Intervention As Of Right .....................................................................................................9

III. Defendants Cannot Adequately Represent The Interests Of The PBA And Its Members .........................................................................................................................11

IV. Permissive Intervention Should Be Granted, In The Alternative .......................................13

CONCLUSION................................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page(s)**

*Brennan v. N.Y.C. Bd. Of Educ.*,
   260 F.3d 123 (2d Cir. 2001) ............................................................................................... 4

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
   250 F.3d 171 (2d Cir. 2001) ........................................................................................ 11-12

*CBS, Inc. v. Snyder*,
   798 F. Supp. 1019 (S.D.N.Y. 1992) ................................................................................... 3

*E.E.O.C. v. A.T. & T. Co.*,
   506 F.2d 735 (3d Cir. 1974) ............................................................................................... 3

*Floyd v. City of New York*,
   302 F.R.D. 69 (S.D.N.Y. 2014) ............................................................................. 4, 6, 12-13

*Floyd v. City of New York*,
   770 F.3d 1051 (2d Cir. 2014) ................................................................................... 7, 8, 13

*H.L. Hayden Co. v. Siemens Medical Sys., Inc.*,
   797 F.2d 85 (2d Cir. 1986) ................................................................................................ 8

*Hartford Fire Ins. Co. v. Mitlof*,
   193 F.R.D. 154, 160-162 (S.D.N.Y. 2000) ................................................................. 10-11

*Illinois v. City of Chicago*,
   912 F.3d 979 (7th Cir. 2019) ..................................................................................... 6-7, 13

*New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*,
   516 F.2d 350 (1975) ......................................................................................................... 10

*Oneida Indian Nation v. New York*,
   732 F.2d 261 (2d Cir. 1984) ............................................................................................... 9

*People Who Care v. Rockford Bd. of Educ. School Dist. No. 205*,
   961 F.2d 1335 (7th Cir. 1992) ........................................................................................... 6

*Sheppard v. Phoenix*,
   1998 U.S. Dist. LEXIS 10576 (S.D.N.Y. July 16, 1998) ................................................. 5-6

*Stallworth v. Monsanto Co.*,
   558 F.2d 257 (5th Cir. 1977) ............................................................................................. 3

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ......................................................................................................... 11

*Uniformed Fire Officers Ass'n v. De Blasio,*
  2021 U.S. App. LEXIS 4266 (2d Cir. Feb. 6, 2021) ........................................................ 5, 8-9

*United States v. City of Los Angeles,*
  288 F.3d 391 (9th Cir. 2002) ................................................................................. 3, 5, 7-8, 12

*United States v. City of New York,*
  2012 U.S. Dist. LEXIS 12085 (E.D.N.Y Feb. 1, 2012) ........................................................ 12

*United States v. City of Portland,*
  2013 U.S. Dist. LEXIS 188465 (D. Or. Feb. 19, 2013) ........................................................... 3

*Washington Electric Coop., Inc. v. Massachusetts Municipal Wholesale Electric Co.,*
  922 F.2d 92 (2d Cir. 1990) .............................................................................................. 10-11

**Rules**

New York City Collective Bargaining Law § 12-307(b) ............................................................. 2
Fed. R. Civ. P. 24 ..............................................................................................................1, 2, 5, 9
Rule 24(a) ............................................................................................................................ 1, 2, 9
Rule 24(b) .................................................................................................................................... 1

The Police Benevolent Association of the City of New York, Inc. ("PBA") respectfully submits this reply memorandum in further support of its motion to intervene. In this memo, we respond to the Plaintiffs' Consolidated Memorandum Of Law In Opposition To Motions To Intervene ("Pl. Opp. Br.") and the Defendants' Memorandum Of Law In Opposition To Motions To Intervene ("Def. Opp. Br."), both dated March 19, 2021. We use the same definitions as in the PBA's March 3, 2021 moving brief ("PBA Mov. Br.")

## PRELIMINARY STATEMENT

The PBA's motion for intervention should be granted because neither Plaintiffs nor Defendants have rebutted its showing that it has a direct, protectable interest that may be impaired by the disposition of the Consolidated Actions and that those interests will not be adquately protected in the absence of intervention.

## ARGUMENT

In opposing intervention as of right under Rule 24(a), Plaintiffs argue that: (i) the PBA's interests are too remote to support intervention (Pl. Opp. Br., pp. 5-13); (ii) the PBA's interests will not be impaired by disposition of the action (Pl. Opp. Br., pp. 13-15); and (iii) Defendants adequately represent the PBA's interests (Pl. Opp. Br., pp. 16-19). Defendants make the same arguments, joining the first two at pp. 3-7 of the Def. Opp. Br., and addressing the third at pp. 7-8. Both rely on these same arguments to oppose permissive intervention under Rule 24(b). Pl. Opp. Br., pp. 20-23, Def. Opp. Br., p. 9.

We show below that: the PBA has a cognizable interest in the Consolidated Actions for purposes of Rule 24(a) (Point I); the danger of impairment to that interest is sufficient to support intervention as of right (Point II); Defendants cannot adequately represent that interest (Point III); and even if intervention as of right were not found, permissive intervention should be granted (Point IV).

I. **The PBA Has A Cognizable Interest In The Consolidated Actions**

Plaintiffs address the PBA's interests under two headings: "the effects of remedies on statutory and contractual collective bargaining rights, as well as officer safety and wellness" (Pl. Opp. Br., pp. 5-9); and "the collateral consequences of judicial findings." Pl Opp. Br., pp. 9-12. Defendants focus on "changes in training, supervision, monitoring and/or discipline" and "the possibility that practices and procedures 'developed by the NYPD leadership' may be changed through the course of litigation." Def. Opp. Br., p. 6 (internal citations omitted).

Quite apart from statutory and collective bargaining rights and the consequences of court decisions, the PBA's members have, as our main brief shows, independent interests protected by the Constitutions of the United States and the State of New York – not least their interest in their own physical safety, an interest about which Plaintiffs and Defendants, for obvious reasons, say very little. The PBA's members also have constitutionally protected interests in fair disciplinary procedures, and in their reputations. Thus even if the interests that the briefs opposing intervention choose to focus on did not support intervention – and they do – the PBA's members have legally cognizable interests that may be impaired by the result of this case. The opposing briefs make no serious argument on this subject.

In addressing the interests the parties opposing intervention discuss, we will use shorthand references to "collective bargaining and related rights" and "collateral consequences." Neither Plaintiffs nor Defendants succeed in rebutting our showing at pp. 8-12 of the PBA Mov. Br. that the PBA's interests are cognizable under Rule 24(a).

A. **Collective Bargaining and Related Rights**

Plaintiffs argue that the PBA's interest in collective bargaining and related rights is too remote because matters of "managerial prerogative" are beyond the scope of collective bargaining under the New York City Collective Bargaining Law ("NYCCBL") § 12-307(b). They concede

2

that "[t]he NYCCBL also provides that the 'practical impact' of such decision-making on workload, staffing, employee safety, and other terms of conditions of employment may be subject to collective bargaining." However, Plaintiffs argue that " [a]s a general matter, the right to bargain over practical impacts of policy does not entail the right to bargain over the policy itself." Pl. Opp. Br., p. 6 (citations omitted).

This exercise in hair-splitting provides a reason to grant, not to deny, intervention. The NYCCBL does make a distinction between "policy" and "the practical impacts of policy," but exactly where one begins and the other ends can be a difficult question to answer. That is a question on which the PBA is entitled to be heard *before* the line is carved into stone by a judgment or settlement in these cases. As we showed at pp. 9-10 of the PBA Mov. Br., if a proposed remedy "'contains—*or even might contain*—provisions that contradict the terms' of the collective bargaining agreement, the union members have 'a protectable interest' [and] [e]ven when the issue of whether an order touches upon a bargaining right is disputed, a union has the 'right to present its views on the subject to the district court and have them fully considered in conjunction with the district court's decision to approve' the ultimate injunction.'" (Citations omitted.) Changes to "policies" that *might have* a "practical impact" are more than enough to warrant intervention.

Plaintiffs and Defendants both ignore four[1] of the five cases cited by the PBA on this subject, and attempt to distinguish the fifth, *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002), only when discussing other points (addressed below). Nor do they address

---

[1] *CBS, Inc. v. Snyder*, 798 F. Supp. 1019, 1023 (S.D.N.Y. 1992), *aff'd*, 989 F.2d 89 (2d Cir. 1993); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 268-69 (5th Cir. 1977); *E.E.O.C. v. A.T. & T. Co.*, 506 F.2d 735, 741-42 (3d Cir. 1974); *United States v. City of Portland*, 2013 U.S. Dist. LEXIS 188465 (D. Or. Feb. 19, 2013).

3

*Brennan v. N.Y.C. Bd. Of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001), cited at p. 9 of the PBA Mov. Br. for the proposition that "'except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention.'" (Internal citation omitted).

Rather than deal with the PBA's authorities, Plaintiffs cite the district court decision in *Floyd v. City of New York*, 302 F.R.D. 69 (S.D.N.Y. 2014), for the distinction they rely on between "policy" and its "impacts." But *Floyd* does not rebut the PBA's showing that, where infringement of collective bargaining rights is arguably in play, the union should be allowed to intervene. Rather, as to this issue *Floyd* turned on the proposed intervenors' delay, a factor Plaintiffs and Defendants have conceded is not present here:

> To the extent the Unions' actual objection is that they did not have an opportunity to shape the terms of the Remedial Order before it was issued, **that is a problem of their own making. They chose to file an untimely motion** in September 2013, rather than (1) when the Court made clear in January 2013 that a remedial order would be issued following any finding of liability in Floyd, and (2) when the Court invited input on the scope of such a remedial order as early as March 2013. See, e.g., Jan. 4, 2013 Hearing Tr. at 84:13-85:20, Floyd, ECF No. 252 (oral order declining to bifurcate Floyd trial into separate liability and remedial phases); Injunction Order, 925 F. Supp. 2d at 543 (inviting the parties to brief "whether the proposed relief is insufficient or too burdensome or otherwise inappropriate."). **Thus, if the Unions were concerned that** between January and August 2013 **the parties or other stakeholders might recommend to the Court remedial measures that would practically impact the terms and conditions of employment**, rather than relate only to managerial prerogatives, **the Unions should have timely moved to intervene.**

302 F.R.D. 69, 112-113 (emphasis supplied). And, in contrast to *Floyd*, here there are specific provisions of the collective bargaining rights agreement likely to be impacted and, given the widespread violence, often targeting police, in the protests at issue, a for more direct and evident threat to Officer safety.

4

Plaintiffs also argue that the PBA lacks a cognizable interest because the Consolidated Actions seek only to "conform the City's policies to the law", or because a settlement *could* contain carve-outs to avoid impinging on collective bargaining rights, Pl. Opp. Br., pp. 7-8. These arguments miss the point of Rule 24. The issue under the rule is whether this litigation "may as a practical matter" impact the PBA's protectable interests. Indeed, the arguments Plaintiffs make would rule out intervention in every case: relief granted by any court is presumptively always "in conformity with law," and any settlement could be tailored to respect the rights of non-parties. But Rule 24 protects the rights of parties whose interests are jeopardized to litigate the issues of what is or is not in conformity with the law, and of whether their rights are or are not adequately protected.

Plaintiffs' authorities for their arguments are inapposite at best. They are mostly fact-specific decisions having no application to this case. Thus, *Uniformed Fire Officers Ass'n v. De Blasio*, 2021 U.S. App. LEXIS 4266, *6-7, __ Fed. Appx. __ (2d Cir. Feb. 6, 2021), did not concern intervention at all, but rather upheld the district court's denial of an injunction against release of certain disciplinary records. The Second Circuit's observation that "to the extent that this claim implicates records that must be disclosed under FOIL, the NYPD cannot bargain away its disclosure obligations," has no bearing on any issue before this Court. Nor does the self-evident fact, noted by the Ninth Circuit in *City of Los Angeles*, 288 F.3d at 398-99, that the police union to which the Ninth Circuit *granted* intervention had "no protectable interest in violating other individuals' constitutional rights."

*Sheppard v. Phoenix*, 1998 U.S. Dist. LEXIS 10576, at * 6-7 (S.D.N.Y. July 16, 1998), denied intervention to a correction officers' union as untimely when sought:

> [a]fter years of litigation and discovery, including production of tens of thousands
> of pages of document discovery, viewing of video films of a large number of use

5

of force incidents, depositions of well over 100 present and former Department employees, and after long months of tenuous negotiations over both substantive terms and language to be used.

That court's observation that constitutional compliance is a compelling public policy concern says nothing about whether the PBA should be allowed to intervene at the outset to protect the interests of itself and its members. Nor does the *Floyd* district court's recognition that constitutional rights trump collective bargaining rights. That proposition is not disputed, but the PBA is entitled to litigate the question of whether there is a conflict between the two.

The cases Plaintiffs cite in arguing that a settlement could contain "carve-outs" confirm that intervention is appropriate, precisely so that the PBA can identify and advocate such carve-outs. In *People who Care v. Rockford Bd. of Educ. School Dist. No. 205*, 961 F.2d 1335, 1339 (7th Cir. 1992), a teachers' union objected to a consent decree that had been designed to correct discriminatory practices. The union *was a party* in that case, and the Seventh Circuit vacated "those portions of the decree overriding the seniority provisions of the collective bargaining agreements or relieving the Board of its obligation to bargain with the unions." That such a remedy was available to a party underscores the need for intervention to make the PBA a party here.

*Illinois v. City of Chicago*, 912 F.3d 979, 985 (7th Cir. 2019), also supports intervention here. In that case, a police union (the "Lodge") sought to intervene in an action alleging that the City's policing practices involved the repeated use of excessive force. The Seventh Circuit affirmed denial of that application because it was untimely:

> Lodge President Graham asserted in his September 2017 newsletter article that a consent decree "could seriously threaten ... collective bargaining rights." (R. 73-1 at 13.) The conclusion that the City, State, and Lodge do not share interests is hardly remarkable. The Lodge's very existence is rooted in the competing interests between its members and the City. And the complaint emphasized the need for increased accountability and other significant reforms which would inevitably

6

impact police officer interests. Thus, the Lodge waited nine months from the time it became clear that the lawsuit might affect its interests. The Lodge's delay renders the motion untimely.

In rejecting the Lodge's argument that it had reasonably delayed seeking intervention because it had been told that its members' collective bargaining rights would be carved out of any consent decree, the Seventh Circuit observed: "the very fact that the Lodge and State were discussing the need for 'carve-out' language makes clear that both anticipated that the consent decree would address matters which arguably fell under the purview of the CBA", and thus the Lodge had no reason to delay in seeking to intervene.  Of course, that is precisely why the PBA has sought intervention here without delay.

Plaintiffs mischaracterize the Second Circuit's decision in *Floyd* as "upholding denial of intervention because consent decree did not preclude Unions from collective bargaining." Neither Plaintiffs nor Defendants effectively dispute the showing we made at pp. 10-12 of the PBA Mov. Br. that the proposed intervenors' delay distinguishes *Floyd* from this case.  Not only is there no such delay here, but in *Floyd,* after specific remedies were already incorporated in the settlement, those remedies, rather than a range of possible remedies, defined the analysis of cognizable interest.

### B.     Collateral Consequences

Plaintiffs and Defendants attack the PBA's interest in collateral consequences as speculative.  Plaintiffs  argue that discipline may already be under way, or may be sought, independently of this action.  That argument is true speculation and, whether it is accurate or not, does nothing to rebut the PBA's showing that its members' interests may be impaired in the Consolidated Actions.

Plaintiffs also fail in their attempt to distinguish *City of Los Angeles,* on the ground that "the interest recognized by the court was not in the defense of merits of the litigation but in the

7

right to negotiate potential injunctive relief that could be entered *individually* against officers, pursuant to specific provisions of California law that are not applicable here." Pl. Opp. Br., p. 10. That effort does not survive even cursory review of the case, which did not focus only on such individual relief. The Ninth Circuit said: "Given the Police League's **protectable interest in both the merits of the action** and the remedy sought by the United States and the status of the case at the time, the district court erred in concluding that the Police League's interest would not be impaired if intervention was not granted." 288 F.3d 3at 400 (emphasis supplied).

Nor do the cases Plaintiffs cite support their conclusion that the reputations of the PBA's members are too "general and indefinite" an interest to justify intervention. *H.L. Hayden Co. v. Siemens Medical Sys., Inc.,* 797 F.2d 85, 89 (2d Cir. 1986), involved an antitrust case and an investigative subpoena. The issues there have nothing to do with the issues here. Plaintiffs also rely on *Floyd*'s denial of intervention because of lack of "evidence in the record" of injury to police officers' careers or reputation (770 F.3d at 1061). As discussed in the PBA Mov. Br., *Floyd* turned principally on the lateness of attempted intervention. The Court also mentioned that a threat to reputational interests had not been proved, but the same cannot be said as to the interests the PBA relies on here. Among the aims of Plaintiffs in these cases is to limit the choices available to police officers to protect themselves and members of the public during not-always-peaceful protests, and to make officers more readily subject to discipline. The likelihood of injury to the officers' interests is hardly debatable.

Finally, Plaintiffs' renewed citation to *Uniformed Fire Officers Ass'n,* 2021 U.S. App. LEXIS 4266, *8, now for the proposition that a diminution in employment opportunities from a damaged reputation does not support intervention, is no more pertinent here than previously. The case simply does not concern intervention, and therefore the court there had no occasion to

engage in any analysis relevant to the interests of the PBA's members in being party to a case in which their past actions and future work conditions are litigated.

## II. The Danger Of Impairment To The PBA's Interests Is Sufficient To Support Intervention As Of Right

The facts demonstrating the cognizable interests of the PBA and its members in the subject matter of this case (discussed in Point I) also demonstrate that those interests may, as a practical matter, be impaired by the outcome. Plaintiffs try to avoid this conclusion by arguing that intervention is appropriate only where the proposed intervenor can show that the principles of *stare decisis* will bar them from ever being heard with respect to the interest they seek to protect. Pl. Opp. Br., pp. 13-15. This argument fails on the law – Rule 24 requires a showing that the intervenor's interest may, as a practical matter, be impacted, not that it necessarily will be, and *stare decisis* is only one way to show impairment, not the only way.

Plaintiffs' parenthetical description of *Oneida Indian Nation v. New York*, 732 F.2d 261, 265 (2d Cir. 1984), is a distortion. Their description reads "A proposed **intervenor must demonstrate that their 'claims and interests . . . may be adversely affected at least by principles of stare decisis**, arising out of the final judgment.'" Pl. Opp. Br., p. 13 (emphasis supplied). In proper context, the language they partially quote reads:

> Because we believe that there is a substantial likelihood that the claims and interests of the proposed intervenors concerning the disputed lands may be adversely affected at least by principles of *stare decisis*, arising out of the final judgment to be entered in this case . . .. we conclude that they may intervene as a matter of right.

The phrase "at least" plainly means that there may be other means of impairment as well – not, as Plaintiffs' parenthetical would have it, that a proposed intervenor must show impairment specifically by means of *stare decisis*. None of Plaintiffs' cases support their strange and mistaken characterization, which would be irreconcilable with Rule 24(a)(2).

9

Plaintiffs' argument also fails on its own terms. The PBA has shown a sufficient prospect of being bound by precedential rulings in the Consolidated Actions to support intervention. PBA Mov. Br., p. 11. Plaintiffs' citation to *Washington Electric Coop., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 922 F.2d 92, 98 (2d Cir. 1990), illustrates why. *Washington Electric Coop., Inc.* held that "[b]ecause this is not a case of first impression involving the resolution of new legal issues but a conventional contractual dispute, the doctrine of *stare decisis* also will not control future, related actions." Plaintiffs attempt to shoehorn the present case into this precedent, but it doesn't fit. This is not a "conventional contract dispute," or a "conventional" case at all. Plaintiffs are seeking to show that the City of New York, its Mayor and other high officials are, by failing to prevent alleged police misconduct, systematically depriving citizens of their constitutional rights. If Plaintiffs succeed, they will have set, to put it mildly, an important precedent. There is no way to conclude, especially at this early stage, that the Consolidated Actions will not change the law that governs policing in the United States or in in New York in a way that seriously damages the interests of the PBA's members.

The concerns behind *Washington Electric Coop.* therefore are not present here. This case is more like *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160-162 (S.D.N.Y. 2000), which held that *stare decisis* concerns allowed the issuer of a commercial general liability policy to intervene in an action against its insured, by another insurer, to void a marine insurance policy. In so holding, the court cited to *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350 (1975), where "the Second Circuit held that a society of pharmacists and individual pharmacists could intervene in an action brought by consumers to enjoin the University of the State of New York from enforcing a statewide regulation against advertising the price of prescription drugs." *Hartford Fire Ins. Co.* also

distinguished *Washington Electric Coop.* on the ground that intervention there would have "change[d] the complexion of the case from a contractual dispute … in which $ 924,208 was at issue to one in which the original plaintiff would be joined by another plaintiff who … sought more than $ 6 million in damages". Here, the PBA's intervention will not change the nature of the Consolidated Actions.

### III. Defendants Cannot Adequately Represent The Interests Of The PBA And Its Members

Plaintiffs dispute the application of the standard announced in *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), quoted at p. 12 of the PBA Mov. Br. (to justify intervention, the applicant need only show that representation of his interest "'may be' inadequate; and the burden of making that showing should be treated as minimal.") They cite *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 178 (2d Cir. 2001), for the proposition that where "the defendant and proposed defendant-intervenor share an 'identity of interest,' the proposed intervenor 'must rebut the presumption of adequate representation by the party already in the action'", and argue this presumption of adequacy is "especially compelling . . . where, as here, the proposed intervenor shares an identity of interest with a governmental entity." Pl. Opp. Br., p. 16. But, for the reasons explained in PBA Mov. Br., the claim of an "identity of interest" between the City and the PBA here is far-fetched.

*Butler Fitzgerald* does not support Plaintiffs' argument. That case held that the district court had not erred in exercising its discretion to deny intervention to a law firm that sought to protect its charging lien by joining an action it had spent years litigating before being discharged by plaintiff. The firm's interests were adequately protected because its "recovery upon the charging lien is predicated upon a favorable result for" its former client. 250 F.3d at 180. In *Butler Fitzgerald*, the plaintiff plainly had the strongest possible interest in obtaining a favorable

11

result in its own case. It was not subject to anything like the political pressures and policy considerations that may deter an enthusiastic defense by the City in the Consolidated Actions. Like most of Plaintiffs' other citations on this point, *Butler Fitzgerald* offers no guidance for the present case, whose facts fall much closer to those in *City of Los Angeles, City of Chicago*, and the other cases collected at pp. 12-14 of the PBA Mov. Br.

*United States v. City of New York,* 2012 U.S. Dist. LEXIS 12085, *7-10 (E.D.N.Y Feb. 1, 2012), which involved an intervention application by a New York City civil service union, fails as an answer to those authorities. While *City of New York* denied intervention to a firefighters' union, it did so as to issues of priority hiring eligibility, and granted permissive intervention as to examination objection procedures, in a civil rights action that alleged and ultimately found discriminatory hiring practices by the New York City Fire Department. The case was about hiring standards -- not, as here, about safety and conditions of employment. More specifically, it was about alleged discrimination in hiring, a claim as to which the interests of the union's members presumably differed from each other. There is no similar divergence of interests in this case.

Plaintiffs and Defendants simply ignore much of the PBA's argument on the adequacy-of-representation issue. Neither of their briefs addresses the cases collected at pp. 12-14 of the PBA Mov. Br., recognizing that government employees are not adequately represented by their employers in matters where a municipality may have reason to deemphasize employee concerns relative to its other interests in the litigation, or even to barter such concerns away in settlement. Nor do they address the PBA's discussion of the substantial rifts already evident between the PBA and its member-Officers on the one hand and Defendants on the other. In responding to concerns expressed by another proposed intervenor, Plaintiffs cite a statement by the district court in *Floyd*

12

about joint representation by the Corporation Counsel, Pl. Opp. Br., p. 18, quoting *Floyd*, 302 F.R.D. at 94. But Plaintiffs ignore the Second Circuit's observation in *Floyd* that "the interests of employers and their employees frequently diverge, especially in the context of municipal employment, where an employer's interests are often not congruent with the employee's and the employer may argue that the employee was acting outside the scope of his employment". PBA Mov. Br. at 12-13, quoting 770 F.3d at 1059 & n.2.

Plaintiffs inadvertently shed light on this subject with their assertion that "Defendants and Proposed Intervenors also share the objective of ensuring that any relief entered in this litigation facilitates the efficient operation of the NYPD and the safety of its officers." Pl. Opp. Br., pp. 17-18. This identifies just two of the numerous interests Defendants have in the Consolidated Actions and, as argued in the PBA Mov. Br., it defies credibility to suggest that they have the same interest in Officer safety as the Officers themselves. See, e.g., *Illinois v. City of Chicago*, 912 F.3d at 985 ("The conclusion that the City, State, and Lodge [police union] do not share interests is hardly remarkable. The Lodge's very existence is rooted in the competing interests between its members and the City. And the complaint emphasized the need for increased accountability and other significant reforms which would inevitably impact police officer interests.").

Here, the PBA does not argue merely that the City has a different motive for litigating, but rather that it has different priorities altogether in the litigation. The City in an unsuitable representative to advance the concerns of the PBA and its members.

## IV. Permissive Intervention Should Be Granted, In The Alternative

Plaintiffs and Defendants both oppose permissive intervention on substantially the same grounds as intervention as of right. Plaintiffs offer two additional arguments as well.

13

First, Plaintiffs argue that permissive intervention would involve "undue delay," because the PBA's interests are already represented by Defendants so any discovery the PBA might seek, or any arguments it might make, would be cumulative. This is merely an effort to import the issue of inadequacy of representation, which has no place in permissive intervention analysis. In all events, this Court has already exercised its supervisory powers over discovery to avoid redundancy and delay, by specifying that the Magistrate Judge supervising discovery may limit any intervenor's participation in discovery to avoid any such issues.

Second, Plaintiffs argue that the PBA's interests in its members' collective bargaining rights and safety are "collateral" and "secondary to the core legal issue in this action: whether the NYPD's policing practices related to the protests are constitutionally permissible." Thus Plaintiffs simply assume that their own priorities are the only ones that matter. But whether Plaintiffs can show the existence of constitutional violations that justify impairing Officers' rights and safety is the very issue to be litigated. Neither the existence of such violations nor the appropriate remedy, if such violations exist, should be adjudicated without the PBA's participation.

Neither Plaintiffs nor Defendants address Judge Failla's decision in *United Fire Officers Association v. DeBlasio,* SDNY Dkt No. 20-cv-5441 (KPF) Dist. LEXIS 154649, *4 (S.D.N.Y. Aug. 25, 2020) (PBA Mov. Br., p. 17). In this case, as in that one, intervenor's "participation moving forward would 'significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" We respectfully request that, should intervention as of right not be granted, this Court exercise its broad discretion to grant permissive intervention, so the PBA may make that contribution, and protect the interests of its member-Officers.

## CONCLUSION

For all of the above reasons, the PBA respectfully requests that the Court grant its motion to intervene.

Dated: March 26, 2021
      New York, New York

                              **LAW OFFICES OF ROBERT S. SMITH**

                              By: /s/ Robert S. Smith
                                   Robert S. Smith
                              7 Times Square, 28th floor
                              New York, N.Y. 10036
                              Tel.: (917) 225-4190
                              Email: robert.smith@rssmithlaw.com

                                    - and -

                              **SCHLAM STONE & DOLAN LLP**

                              By: /s/ Richard H. Dolan
                                 Richard H. Dolan
                                 Thomas A. Kissane
                              26 Broadway, 19th Floor
                              New York NY 10004
                              Tel.: (212) 344-5400
                              Fax: (212) 344-7677
                              Email: rdolan@schlamstone.com
                              Email: tkissane@schlamstone.com

                              *Attorneys for Proposed Intervenor*
                              *Police Benevolent Association of the City of New York, Inc.*

MICHAEL T. MURRAY
Office of the General Counsel
Police Benevolent Association of the
City of New York, Inc.
125 Broad Street, 11th Floor
New York, NY 10004

Gaurav I. Shah,
    Associate General Counsel

Tel: (212) 298-9144
E-mail:  mmurray@nycpba.org
             gshah@nycpba.org

*Of Counsel*