UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                          :
                                     Docket #20cv8924
 PAYNE, et al.,                 : 1:20-cv-08924-CM

                Plaintiffs,     :

  - against -                   :

 DE BLASIO, et al.,             : New York, New York
                                  June 24, 2021
                Defendants.     :

-----------------------------------: TELEPHONE CONFERENCE
```

PROCEEDINGS BEFORE
THE HONORABLE GABRIEL W. GORENSTEIN,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Payne Plaintiffs:     NEW YORK CIVIL LIBERTIES UNION
                          BY:  MOLLY BICKLEN, ESQ.
                          125 Broad Street
                          New York, New York 10004

For Sow Plaintiffs:       GIDEON ORION OLIVER, ESQ.
                          277 Broadway, Suite 1501
                          New York, New York 10007

For Sierra Plaintiffs:    RICKNER PLLC
                          BY:  ROB RICKNER, ESQ.
                          14 Wall Street, Suite 1603
                          New York, New York 10005

For Wood Plaintiffs:      KAUFMAN LIEB LEBOWITZ & FRICK LLP
                          BY:  ALISON FRICK, ESQ.
                          10 E. 40th Street, Suite 3307
                          New York, New York 10016


Transcription Service: Carole Ludwig, *Transcription Services*
                          155 East Fourth Street #3C
                          New York, New York 10009
                          Phone:  (212) 420-0771
                          Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

APPEARANCES (CONTINUED):

For Yates Plaintiff:          STOLL, GLICKMAN & BELLINA, LLP
                              BY:  ANDREW STOLL, ESQ.
                              300 Cadman Plaza West, 12th Floor
                              Brooklyn, New York 11201

For Plaintiff People          NEW YORK STATE OFFICE OF
of the State of New           THE ATTORNEY GENERAL
York:                         BY:  LILLIAN MARQUEZ, ESQ.
                              28 Liberty Street
                              New York, New York 10005

For Defendants:               NEW YORK CITY LAW DEPARTMENT
                              BY:  DARA WEISS, ESQ.
                                   BRACHAH GOYKADOSH, ESQ.
                                   ANTHONY DISENSO, ESQ.
                                   RACHEL KAUFMAN, ESQ.
                              100 Church Street
                              New York, New York 10007

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None |  |  |  |  |  |

<u>**E X H I B I T S**</u>

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None |  |  |  |  |

1

```
 1                                                      4

 2              THE CLERK:  Payne v. De Blasio, et al., 20cv8924.

 3   Counsel, please state your names and appearances for the

 4   record starting with plaintiffs.

 5              MS. MOLLY BICKLEN:  This is Molly Bicklen of the

 6   New York Civil Liberties Union Foundation and co-counsel

 7   for the Payne plaintiffs.

 8              MR. GIDEON OLIVER:  Gideon Oliver co-counsel for

 9   the Sow plaintiffs.

10              MR. ROB RICKNER:  Rob Rickner, co-counsel for the

11   Sierra plaintiffs, good afternoon.

12              MS. ALISON FRICK:  Good afternoon, this is Alison

13   Frick from Kaufman Lieb Lebowitz & Frick for the Wood

14   plaintiffs.

15              MR. ANDREW STOLL:  And good afternoon, this is

16   Andrew Stoll for plaintiff Cameron Yates.

17              MS. LILLIAN MARQUEZ:  Good afternoon, this is

18   Lillian Marquez of the AG's office on behalf of for

19   plaintiffs for People v. City of New York.

20              THE COURT:  Who's here for defendants?

21              MS. DARA WEISS:  Good afternoon, this is Dara

22   Weiss for the York City Law Department for defendants.

23              MS. BRACHAH GOYKADOSH:  Brachah Goykadosh also on

24   behalf of defendants.  Good afternoon, Your Honor.

25              MR. ANTHONY DiSENSO:  Anthony DiSenso also on
```

```
 1                                               5
 2  behalf of the defendants.
 3         MS. RACHEL KAUFMAN:  Rachel Kaufman also on
 4  behalf of defendants.
 5         THE COURT:  Okay, who's going to be speaking for
 6  the plaintiffs today?
 7         MS. MOLLY BICKLEN:  Your Honor, this is Molly
 8  Bicklen from the New York Civil Liberties Union Foundation.
 9  I'll be speaking on behalf of the plaintiffs to address
10  defendants' failure to produce documents in these
11  consolidated cases.
12         MR. OLIVER:  And, Your Honor, Gideon Oliver, co-
13  counsel, and so I'm prepared to speak about the
14  interrogatories piece.
15         THE COURT:  I think we have – first, let me
16  start by saying we're being recorded, but any dissemination
17  of this proceeding of copying of any kind is strictly
18  prohibited.  A transcript will presumably be ordered by the
19  parties.  And I should remind attorneys that if they're not
20  speaking, they should keep themselves on mute.
21         I think we have sort of three projects for this
22  conference.  One is dealing with substantive objections to
23  the responses to the document requests and the
24  interrogatories.  And when I say substantive, I guess I
25  would also include complaints about the manner in which
```

1

2  those document requests or interrogatory responses will

3  give information about timing, and if there's complaints

4  about that, what we do about that.  The second thing is the

5  plaintiffs' complaints about the information that's been

6  provided by the City about their process which is reflected

7  in the June 21 letter.  And then I think the third thing is

8  the requests for what we do going forward in terms of

9  specific orders regarding timing of production.

10         If after we accomplish that, if someone thinks

11  there's something else we need to do, certainly we'll go

12  around at the end and make sure I didn't fail to cover what

13  we need to accomplish.

14         Also, I had spoken to Judge McMahon, I just

15  wanted to advise you of information that she had given to

16  me regarding the discovery process which I'll distill and

17  summarize.  In essence, she reiterates that she does not

18  believe this litigation should be prolonged.  She intends

19  to try the case next year.  She wants me to advise her

20  whether any party is being recalcitrant about discovery.

21  She's fully prepared to enter sanctions orders of

22  preclusion against any party who's being recalcitrant about

23  discovery.  She expects all parties, especially the City,

24  to devote whatever resources are necessary to getting

25  discovery done in time to meet her schedule.  And if it

1

2 turns out that a particular party is being recalcitrant or

3 slow walking discovery, she wants it known that she will

4 entertain a preclusion motion.  So I just wanted to make

5 sure I got that out there and it didn't get lost as we go

6 later into the conference.

7          Okay, on the issues that I talked about, I'm

8 prepared to go through the complaints about the responses

9 to the document requests and the interrogatories both to

10 the extent that they're substantive and relate to timing.

11 It's a little bit unusual for me because, you know, because

12 as I put this on a compressed schedule, I've gotten a

13 letter from the plaintiffs but I haven't gotten anything

14 from the defendants.  I assume they're prepared to talk.

15 I'm prepared to try to do this orally.  If something comes

16 up that absolutely has to be in a letter, then, you know, I

17 can wait a day or two for such a letter.  I think would be

18 to the City's advantage to not have to write a letter and

19 to present it orally, but if for some reason that's a

20 problem, I guess I'm willing to hear about it.

21          So, Ms. Bicklen, should we go through your sort

22 of specific – if we start with the thing which is the, you

23 know, the complaints about the specific request

24 interrogatories or should we start with the letter and

25 whether you got sufficient information in that letter?

```
1                                              8
2          MS. BICKLEN:   Thank you, Your Honor.  We think
3   that they're one of a piece.  Most specifically, the
4   problem that plaintiffs have had with defendants' responses
5   is that they keep telling us that they are searching and
6   just to wait and they will provide us something.  But it's
7   clear as their June 21 letter that that's illusory.   In
8   many cases they merely claimed to have requested the
9   information, in other places it's very clear that they have
10  not even gathered or searched for this information.
11         And so putting together their second amended
12  responses, which, again, in many cases promises to be
13  looking for things.  In other places it says that, you
14  know, issues are burdensome but does quantify that.  It's
15  hard to separate out these issues.  We're happy to go
16  through it one by one, but we think at the end of the day
17  the most significant problem is that they are not gathering
18  these documents quickly enough, reviewing them and sending
19  them out, and that is just going to be true in response to
20  every single request.
21         THE COURT:   Okay, well, I mean this is your
22  chance to go through some of those issues in depth.  I mean
23  I guess one – well, maybe we should do it on a broader
24  scale to start.  So, Ms. Weiss, are you speaking for the
25  defendants?
```

```
 1                                                   9
 2              MS. WEISS:   Yes, Your Honor.
 3              THE COURT:   I think that your June 21 letter
 4   certainly advances the ball on transparency which was my
 5   goal from the last conference by giving a good deal of
 6   information I didn't have before.  But I think on the thing
 7   that's most important to the plaintiffs they're still
 8   operating in the dark.  And I would've thought that there
 9   has to be some mechanism whereby you can say we have 5,000
10   documents, or whatever the number is, that have to be
11   reviewed.  We have X number of people reviewing it.  It's
12   going to take this much time, and we're going to do it on
13   this schedule.  I'm not saying that you could do that
14   definitively with respect to all the documents, but you
15   might know that you have right now 5,000 documents or some
16   number, whatever the number is, and what is the problem
17   telling us what that number is and what it's going to take
18   timing-wise to go through the process that you describe in
19   this letter.
20              MS. WEISS:   Well, Your Honor, I can answer that
21   to some extent, but with your permission I may need – we
22   have two of our e-discovery counsel no the line, Ms.
23   Kaufman and Mr. DiSenso, and I may need them to chime in
24   with some details if that would be okay.  I do know that as
25   of right now we probably have about 40,000 documents in our
```

1
2  possession that we received from our client.  Is that
3  right, my e-discovery colleagues?
4          MR. DiSENSO:   This is Anthony DiSenso.  I don't
5  have the number in front of me, but that sounds roughly
6  right.  I think it's maybe in the neighborhood of 50,000 if
7  I recall off the top of my head.
8          MS. WEISS:   We can confirm that we have that
9  now.  And we're trying to – we don't have a definitive
10 answer right now on how many people and how the review is
11 going to do because it is such a huge amount, and we are
12 working on trying to figure out the most efficient way to
13 get those documents reviewed.
14         THE COURT:   Okay, I mean you made a commitment
15 at the last conference and I think before that to have it
16 all done by July 31.  So I'm going to hold you to that
17 commitment, and I guess the question is what is the
18 impediment to producing them on a rolling basis essentially
19 in equal, you know, in one, 10,000 a week if that's what it
20 comes down to, between now and July 31 sort of on an equal
21 weekly basis.
22         MS. WEISS:   There's certainly going to be more
23 than just these 50,000, that's just what we have in our
24 possession right now.  And as I think we stated either
25 during the conference last week or it could've been in

11

1  
2  conversations, in meet and confers, I'm sorry, I don't

3  remember off the top of my head exactly when it was, this

4  coming Wednesday we're going to produce the first large

5  batch of these documents which we committed to do and we

6  will do.  Some of them require less of a level of review

7  than others.  So some of them will be able to go out fairly

8  quickly; some of them need a more thorough and intense

9  review because of the nature of the documents.  And we're

10  sliding around personnel and reorganizing who's going to be

11  doing what on these cases and that takes things from other

12  cases that our division has, but we're ramping up how we're

13  going to get these reviews done.

14          THE COURT:  How many documents will you produce

15  on the 30th, you must know that?

16          MS. WEISS:  I don't have the number in front of

17  me.  Anthony or Rachel, do you have that number from what

18  we had spoken about earlier?

19          (pause in proceeding)

20          MS. WEISS:  I guess not --

21          MS. KAUFMAN:  Hi --

22          (interposing)

23          MR. DiSENSO:  Sorry, Rachel, you're going to

24  speak?

25          MS. KAUFMAN:  No, go ahead.

12

1

2          MR. DiSENSO:  Okay, as far as knowing the number

3    of documents we can produce, that's hard to say.  We know

4    the (indiscernible) documents roughly, based on what we

5    have now from the number I stated before, the number of

6    documents that need to be reviewed in some fashion, you

7    know, it's possible some of those may be non-responsive or

8    privileged and wouldn't thus be actually produced.

9          THE COURT:  So I'm not getting a number it

10    sounds like.

11          MS. KAUFMAN:  For this Wednesday, this coming

12    Wednesday as I sit here right now, Your Honor, I'm sorry,

13    I don't have the number but it is significant.  It's not a

14    hundred documents.  It's a significant number of documents.

15          THE COURT:  Thousands?

16          MS. KAUFMAN:  I believe so, yes.

17          MS. BICKLEN:  Your Honor, this is Molly --

18          THE COURT:  What is the process for – how much

19    personnel – let me back up.  There may be vast differences

20    in what's needed to do different kinds of documents, and

21    one of the things that's going on is that the plaintiffs

22    need on the short term basis documents that relate to

23    policing practices more than they need documents relating

24    to particular arrests.  Is that – and maybe I should ask

25    plaintiffs if, in fact, that's an appropriate distinction

13

and one that should be pursued.

MS. BICKLEN:   Your Honor, this is Molly Bicklen

for the Payne plaintiffs.  Because they are not a class

case, I would defer to my colleague on the line for Sow,

Gideon, who may be able to address that as well.  I think

we want both types of documents, but currently the class

certification is September 1.

THE COURT:   I understand that, but it's the

expert deadline that I know that is of great concern right

now or least expert disclosure deadline.  And I would have

thought that, and I understood from the last letters and

conference, that the documents relating to police practices

are in a sense a priority because that was the subject of a

July 1 deadline.  Your class certification deadline's not

till September.

MS. BICKLEN:   That's right, Your Honor, and

those should not be very difficult to review insofar as

there should be no privilege.  They should be able to

identify those and send those out the door and should

already have been able to do so.

THE COURT:   All right, let me just ask Ms.

Weiss, do you understand the distinction that I'm making

and what is this first batch going to be more arrests, you

know, individual arrest type documents or are they going to

1                                                          14

2   be what I'm calling police practice documents?

3           MS. WEISS:   I do understand the distinction, and

4   it's my understanding that it's going to be a mix.  A lot

5   of it is going to be individual arrest type documents which

6   it's my understanding those play into part of the expert

7   issues as well in that plaintiffs are concerned with

8   statistics on race and gender in the arrests.  I don't know

9   what they're asking their experts to opine upon, of course,

10  but I think there's definitely overlap.  But certain things

11  like training documents and procedural documents, Ms.

12  Bicklen is right, require not a very high level of review,

13  and they would be able to go out sooner rather than later.

14          It's just, you know, if I may, it becomes very

15  difficult because on the several meet and confers that the

16  parties have had plaintiffs are giving defendants mixed

17  messages on what they want and when they want it.  You

18  know, it comes down to, of course, they want everything,

19  and they will – as I mentioned several times, plaintiffs

20  are going to get and defendants will produce thousands upon

21  thousands upon thousands of documents.  There's very little

22  that they're asking for that we're not planning on

23  producing.  But it would actually be great, and thank you,

24  Your Honor, for bringing it up, if plaintiffs were able to

25  tell us what their real priorities were and perhaps we

15

could do our best to get those documents reviewed and out

first, you know, because as I said, we've been getting

mixed messages in our meet and confers about what they're

looking for right away, what they need right now.  So so

this is actually very helpful to defendants.

THE COURT:  So, Ms. Bicklen, again, I – you

know, it seemed what precipitated the original letter to me

from June 9 was the concern about the expert discovery

deadline and I think to a lesser extent the class

certification deadline since it's months later.  Is there a

desire to have them put the police practice/policy

documents to the front burner or is that not a desire?

MS. BICKLEN:  Your Honor, at this stage almost

everything needs to be on the front burner, and what

defendants refer to as mixed messages I think is attempt at

flexibility on the part of the plaintiffs to work with

defendants to get literally anything.  We have gotten so

few documents.  We're trying to provide them with

flexibility to produce anything.

And so in our letter last night, for example,

we've identified documents that we think should be quite

easy to produce, including everything that already has been

produced to the Department of Investigation and Corporation

Counsel, after action reports and underlying documents, all

1

2  responsive training documents, and all --

3          THE COURT:   Okay, before you go down this road,

4  the answer I think I'm getting is it's not – making these

5  distinctions is not what's driving the plaintiffs at this

6  point.  It's just the getting of the documents.  So I don't

7  think I'm going to dwell any longer on trying to figure out

8  if there's something that should be front loaded.  I think

9  we should go just back to the issue of producing as much as

10 can be produced as soon as it could be produced.

11         So I'm the one who brought this up.  I've now

12 gotten my answer, and I think we have to move on from the

13 concept of trying to distinguish between different

14 categories just being of greater need to the plaintiffs

15 than others.

16         But let's now talk about what you talked about,

17 Ms. Bicklen.  We have to do it in the context of the

18 overall production.  I guess your contention is that there

19 are certain things that should be much easier to produce

20 than others.  I don't think the defendants are arguing with

21 that principle.  So I don't know – we're now being told

22 that by the 30th you're going to get thousands of

23 documents, that there's going to be, there's at least

24 50,000 documents they're reviewing and that will be

25 produced or withheld on nonresponsive or privilege grounds

by July 31.  Tell me how we can best use our time today to do whatever it is you want to accomplish.

MS. BICKLEN:  Well, respectfully, Your Honor, I don't think we (indiscernible) where they wait until July 31 to produce documents.

THE COURT:  No, I didn't mean to imply that. No, and I don't think they said that.  So I think that's a straw horse, sorry, straw man.  They said they're going to be producing thousands of documents next week.  I'm prepared to order weekly production because I think the biweekly production doesn't make any sense because there's only one, two, three, four, five and a half weeks till this July 31 deadline.  So to the extent you were seeking weekly production, I think that is important because you really have waited long enough to get any serious number of documents, and, you know, for the first time June 30 is when you're getting a significant number.

So I'm with with you on that.  Tell me what else.

MS. BICKLEN:  Thank you, Your Honor.  Another concern we have is made clear by the defendants' letter is that it appears that the New York Police Department is doing an initial review for many documents and then sending them to the defendants, or defense counsel to then do another review.  And we have significant concerns that that

18

 1    is not going to be sufficient in terms of obtaining the

 2    documents that are necessary and responsive to the

 3    plaintiffs' request.  NYPD legal is not signing these

 4    objections, and so, for example, in their June 21 letter,

 5    with respect to responses 22 and 23, for example, these are

 6    the search out documents concerning the Corporation counsel

 7    report and the DOI report.  And defendants state that these

 8    documents do exist, they're currently undergoing review by

 9    the NYPD and are expected to be produced to this office,

10    the Corporation Counsel's office soon, at which point they

11    will again be reviewed.

12            Respectfully, we have grave concerns about the

13    idea that there is an initial review happening that's

14    outside of Corporation Counsel's purview, but, second, that

15    this two layer track of review is just not going to get the

16    job done in terms of the compressed schedule that has been

17    set by Judge McMahon.

18            THE COURT:   And these are documents that were

19    provided to the Corporation Counsel and DOI, is that what

20    this is?

21            MS. BICKLEN:   These are documents concerning,

22    for example, document request 22 is all documents including

23    communications concerning the December 30, 2020 Corporation

24    Counsel report, which includes both documents that they

1                                                                    19

2  produced to the Corporation Counsel in preparing such a

3  report but also any other communications concerning that

4  report.

5          THE COURT:   And same for DOI.

6          MS. BICKLEN:   And that is one example – sorry,

7  that is the Corporation Counsel number 22, and then we

8  asked for the same with respect to the DOI report in 23.

9  But, again, their response in a letter of June 21 is the

10 first time that they have made clear that, in fact, NYPD is

11 doing the sort of first analysis and review, and if that is

12 what is holding up, and if that is what they're doing in

13 response to other of the requests, that is a significant

14 problem.

15         MS. WEISS:   Your Honor, if I may, just to

16 clarify what is meant by the NYPD's review, respectfully,

17 they can't just hand us over a bunch of documents.  They

18 have a responsibility and we have asked them to look

19 through these documents and make sure that this is, you

20 know, say, for example, they have a file folder drawer full

21 of documents, you know, they have – and understanding

22 likely all on computer but I'm speaking in more of an old-

23 fashioned sense I guess.  They have a responsibility and

24 we've asked them to make sure that the documents that

25 they're giving us are, in fact, the documents that were

1                                                                  20

2    handed over to these entities for their investigations.

3            And another part of the review is, and I want it

4    clear that they're not holding things back or deciding what

5    is responsive and what is relevant, but they're also

6    looking through them because, as I'm sure the Court and all

7    the parties are aware, there are a lot of very sensitive

8    documents within the NYPD, and we've asked them to sort of

9    flag these documents so we know when we are looking at them

10   as their attorneys and as attorneys for the City, things

11   that we might have to take a closer review, a closer look

12   at for privilege or for responsiveness or for relevance.

13           So I just want to make it clear that NYPD legal

14   or anyone within the NYPD is not making decisions on what

15   should or should not be produced.  That's not what this

16   review is that's mentioned in our letter.  It's a review to

17   make sure that they're getting us the proper documents.

18           THE COURT:  I'm not as concerned about that

19   aspect as I am about the delay factor.  So what, you know,

20   the word soon is not helpful which is the letter that, the

21   word that you use in the letter.  So what date do you get

22   these documents or do you have no idea?

23           (pause in proceeding)

24           THE COURT:  Ms. Weiss, did we lose you?

25           MS. WEISS:  I'm sorry, I'm very sorry.  I was

1
2   saying, and I don't know how much you caught, when I wrote

3   this letter on Monday, I was not aware that we, in fact,

4   almost 50,000 documents in our possession, us being the New

5   York City Law Department.  They are undergoing review.  So

6   I believe that those documents are probably encompassed in

7   these 50,000 documents or at least a good portion of them.

8           THE COURT:   You think you have them already?

9           MS. WEISS:   I can't – I can't guarantee that we

10   have every single one, but it looks like we have a lot of

11   documents from the DOI investigation at the very least.

12           THE COURT:   Is there someone who knows more than

13   you about what's going on?  Because (indiscernible).

14           MS. WEISS:   Perhaps our e-discovery counsel, Mr.

15   DiSenso or Ms. Kaufman, have a better idea exactly what

16   have with respect to those documents?

17           (pause in proceeding)

18           MR. DiSENSO:   Hi, this is Mr. DiSenso.  You

19   know, again, these are the same documents we were talking

20   about before.  We have them in our database, as Ms. Weiss

21   was saying at the beginning of the conference.  At this

22   point, we're trying to determine the proper (indiscernible)

23   strategy for these documents, what can go out as quickly as

24   possible --

25           THE COURT:   That's not the part I'm asking

22

about.  That's not the part I'm asking about.  I'm asking

about --

          MR. DiSENSO:   I apologize.

          THE COURT:   No problem.  Are you familiar with

Ms. Weiss's letter of June 21?

          MR. DiSENSO:   Unfortunately, Your Honor, I can't

say I am.

          THE COURT:   Okay, so, Ms. Weiss, this is the

problem, I need someone who knows everything.  And I think

you should be this person.  You write these documents

expect to be produced to this office soon, and it seems

like it is your responsibility to know that, but I think

it's your responsibility to know the answer to that

question which is have they been produced now and are they

in this batch?

          MS. WEISS:   As I said, I believe with respect to

the documents that NYPD produced to Department of

Investigations, yeah, I believe that that is what is in the

set, you know, among other things of course.

          THE COURT:   Okay, so you think that – I mean I

would've thought that Ms. Bicklen said we're really

concerned about the fact that you haven't even gotten these

documents from NYPD, your answer would've been, oh, no, we

have them, don't worry.  What wasn't that your answer and

1

2   is that your answer?

3          MS. WEISS:   Because I'm going to give the

4   answer, yes, we have those documents, don't worry, to the

5   extent I can without being able to, as I sit here right now

6   and, you know, as an officer of the court, I do not want to

7   give incorrect information, but as I sit here now, I cannot

8   access the database to see exactly what documents are in

9   there.  This is what has been indicated to me, that this

10  was this part of this huge batch of documents that was sent

11  over to our office.  But I also can't right now, as we sit

12  here this moment, 100 percent guarantee that, but it is my

13  strong belief.

14          THE COURT:   Okay, well, I mean that's worth

15  something, but let me just tell you for the future, you

16  need to have, you know, when you put something in the

17  letter like this, you need to be able to answer questions

18  about it and track it, not just for me, but to know what's

19  going on with the efforts to do all of this, and that has

20  to reside in someone's know, and if you're the person who

21  it is, then you need to have all that knowledge, you need

22  to track each of these requests to see what's going on, how

23  many documents are involved, what stage they're at.  There

24  should be a chart that's available to you that let's you

25  know what all these things are and what's being done about

```
 1                                          24
 2  them.  All right?  So for our next conference, do you
 3  understand you have to be able to do?
 4          MS. WEISS:   Yes, Your Honor.
 5          THE COURT:   Okay, Ms. Bicklen, should we go
 6  through more of these?  Tell me what we should do.
 7          MS. BICKLEN:   Thank you, Your Honor.  At this
 8  point, it might be helpful to inquire as to how many
 9  attorneys are working on this.  We have known from some of
10  the meet and confers with respect to depositions that at
11  times it's only one attorney from Corporation Counsel who's
12  available.  And if it is the case that only one attorney is
13  available to review these documents for privilege to
14  determine when they can be produced, I have grave concerns,
15  given what we just heard, about the ability to even meet
16  the promise to start major production.
17          THE COURT:   So, Ms. Weiss, I think that's
18  something that I talked about last time in order to assess,
19  you know, whatever claims you've made to not having made
20  much production up until this point, what — and I'm not so
21  concerned about the tasks, but I'm concerned about a July
22  31 deadline, how many attorneys are going to be reviewing
23  these documents and at what pace and what is the plan on
24  that?
25          MS. WEISS:   Well, that is part of what we're
```

1                                                                  25

2    trying to determine now.  We don't have the staffing at

3    this moment or the arrangement of staffing I should say to

4    be able to review tens upon tens of thousands of documents

5    by July 31.  Part of what we're doing is working on

6    getting, you know, ramping up the staffing to get these

7    documents reviewed so that we can ensure that we will have

8    them reviewed and produced in time.

9             THE COURT:  Well, this is the first time I've

10   ever heard you express doubt that you're going to meet the

11   July 31 deadline.

12            MS. WEISS:  Oh, no, we fully intend on doing so,

13   Your Honor.

14            THE COURT:  But you don't have, no one has given

15   you the staffing to do it.

16            MS. WEISS:  It's being worked on as we speak.

17            THE COURT:  Okay, well, what I have to tell you

18   is what I said earlier which is the communication from

19   Judge McMahon which is either we don't get answers to the

20   questions or it was insufficient, then the City is putting

21   itself at risk in terms of how this delayed, the delay is

22   going to be treated.  So I'm not asking you to say anything

23   about it, but I just want to remind you again that the City

24   is at risk of preclusion or other sanctions if it hasn't

25   done the staffing necessary to meet the deadlines on the

```
 1                                                        26
 2   case.  You understand that, Ms. Weiss?
 3            MS. WEISS:   Understood, Your Honor.
 4            THE COURT:   All right, well, I think we need to
 5   get more reports.  I hate to have, you know, you spend
 6   whatever it takes to write these letters, I think it'll be
 7   a little easier to write the second one because you can use
 8   the template of the first.  We're going to have to continue
 9   the transparency as long as the plaintiffs aren't getting a
10   large number of documents which they just aren't.  We have
11   to understand what's going on.  So we're going to have to
12   go to weekly production.  You told me the first production
13   is Wednesday, the 30th.  In the earlier call you told me
14   for some reason Thursday was better for you.  Has that gone
15   by the boards?
16            MS. WEISS:   Well, the reason I was saying
17   Wednesday I think that was in part in response to what
18   plaintiffs are saying because we made a small production on
19   Wednesday the 16th I believe it was.  Thursday is better
20   for the Law Department.  We would certainly prefer to do
21   Thursdays if that's an option.
22            THE COURT:   Well, let's start with the 30th which
23   is a Wednesday.  That's going to be the first one.  And
24   then for the next week you can go to Thursday, which would
25   be July 8.
```

1

2          MS. WEISS:   Thank you.

3          THE COURT:   And I think we're going to have to

4  get updates from you on anything that changes with respect

5  to what you wrote in your June 21 letter.  So, for example,

6  you say arrest report – I just picked one out for example –

7  the document request number 9 was going to even have

8  certain things produced next week.  So in your next letter

9  you're going to say they were produced, presumably, and if

10  not, given an explanation for it.  And I think you have to

11  do that for – I think we're going to have to have reports,

12  you know, you're going to have to update this letter, and

13  we're not going to, and I need you to add a section and the

14  section is how many people, how many documents are

15  available for you to review and how many people are working

16  on doing the privilege responsiveness review.

17          Okay, Ms. Bicklen, should we go through – is

18  there anything more specific we should be going through?

19  What do you propose?

20          MS. BICKLEN:   I can continue, Your Honor.  So,

21  for example, with respect to document request 7, seeks a

22  variety of documents related to the incident and the

23  protest at issue.  Now, in their June 21 letter, they say

24  they will produce many of these but that the search for

25  U49, the unusual incident or occurrence reports will be

28

1

2  unduly burdensome as it encompasses nearly any document

3  that NYPD employees created regarding the incident.

4         Quite simply, these protests are what are at

5  issue.  The incidents at the protests are what are at

6  issue.  And with just --

7         THE COURT:   Before you go any further, before

8  you go any further, what's a UF49?

9         MS. BICKLEN:   It's an unusual incident --

10        MS. WEISS:   Your Honor --

11        (interposing)

12        MS. BICKLEN:   -- occurrence report.

13        THE COURT:   Okay.

14        MS. WEISS:   Your Honor, this is Dara Weiss.  If

15 I may add to this, the NYPD considers a UF49, from what I

16 understand with conversations with the NYPD, it's not only

17 the actual printed report but pretty much anything that any

18 NYPD employee writes down anywhere at all about the

19 incident.  You know, and there were, at some of these

20 incidents, there were hundreds of police officers present,

21 you know, almost any little thing that they wrote down,

22 whether it be relevant or not, would be considered part of

23 a UF49.

24        The finalized report, you know, the official, the

25 to/from sort of memo report, that we're happy to produce.

29

1

2  I guess it was just in the – we want it to be crystal clear

3  from the phrasing of plaintiffs' document request that, you

4  know, absolutely anything that any NYPD employee wrote

5  about anything regarded to any of these incidents would be

6  overbroad, overly burdensome, and likely irrelevant.

7         THE COURT:  I'm totally lost still.  Are you

8  talking about a logbook entry, Ms. Weiss, is that what you

9  say is burdensome or is there literally a formal form

10 called the UF49 and --

11        MS. WEISS:  There is --

12        THE COURT:  I'm completely confused.

13        MS. WEISS:  There is – I'm not sure if there's a

14 formal form, but there is often like a to/from memo, you

15 know, often written to a higher-up from someone who was on

16 the scene saying, you know, this, that, or the other thing

17 happened.  Those types of things are, you know, filed in a

18 certain way and easily found, and they often describe what

19 happened at these events, including, you know, arrests that

20 were made and a number of other things.  Those --

21        THE COURT:  Those you say you are producing.

22        MS. WEISS:  Those we can produce absolutely.

23 But the NYPD --

24        THE COURT:  But what is it you can't produce?

25        MS. WEISS:  The NYPD also considers, you know,

1

2  in the universe of UF49 absolutely, you know, anything that

3  any NYPD employee writes down anywhere about anything that

4  happened at these events, whether relevant to the claims in

5  these lawsuits or not.  And it's just, to try to – and it's

6  not even the officers who were present; if someone

7  somewhere else happened to jot something down, it would be

8  incredibly burdensome to try to get these documents, and we

9  don't even know if we could, you know, if we could even

10 find everything that's out there.

11          But I think ultimately what would be the

12 important and relevant part would be these final UF49

13 unusual occurrence reports.

14          THE COURT:  Which is what they asked for.  I

15 don't understand why you would call a logbook entry a UF49,

16 if that's what you're talking about.

17          MS. WEISS:  No, no, I don't think we did.  It

18 wouldn't be a logbook.

19          THE COURT:  Well, you just keep saying someone,

20 anybody writes down anywhere – this is getting a little bit

21 surreal.  Either there's this form UF49 or there isn't, and

22 I don't know why you're defining it in this broad manner.

23          MS. WEISS:  This is after conversations with the

24 NYPD, this is what they explained to me.

25          THE COURT:  You need to get – we're not going to

31

1
2    do this now.  I think there's something not making sense
3    here.  I'd like you to get as much information as you can
4    about what a UF49 is, find some examples of things that
5    you're talking about, just one, that you're not going to
6    produce, discuss this with plaintiffs' counsel, and I think
7    this is not the right time to work this out.  So, Ms.
8    Bicklen, let's go on to something else.

9            MS. BICKLEN:   Thank you, Your Honor.  I'd like
10   to turn to document request 15, which seeks all documents
11   concerning incidents investigated or referred to
12   investigation to the Civilian Complaint Review Board.  And
13   in their response and there letter of June 21, defendants
14   claim that they've requested this information from the CCRB
15   and are waiting a response.  But we need specifics on when
16   that information will be provided and as quickly as
17   possible.

18           THE COURT:   And just to educate me, so this is
19   for anybody, the CCRB is, you know, it's subject to the
20   Mayor, it's not in any way independent.  Mayor has complete
21   control over getting their documents and so forth or not?

22           MS. BICKLEN:   It is my understanding that
23   Corporation Counsel has agreed to represent them in this to
24   produce documents.

25           THE COURT:   Are they a separate entity from –

32

that doesn't answer my question.  I'm not asking who the

lawyer is.  I'm asking who has control over the documents.

            (interposing)

            MR. OLIVER:   -- Gideon Oliver.

            THE COURT:   The CCRB is assume is not a

defendant in this case.  So my question is --

            MS. BICKLEN:   That's right.

            THE COURT:   -- the City of New York is a

defendant.  Is the CCRB completely within, the documents of

the CCRB completely in the control of the Mayor of the City

of New York?  Ms. Weiss.

            MS. WEISS:   I actually do not know the answer to

that question, Your Honor.  All I know is that in this case

or any other case when we are requested or required to

provide documents by the CCRB, we make a request like

anyone else would to the CCRB for documents.  And they are

--

            THE COURT:   Like anyone else would, you mean

like a person off the street?

            MS. WEISS:   If a person off the street wanted to

subpoena documents from the CCRB, I'm sure that they could.

I don't know what they would get, but the CCRB --

            THE COURT:   No, Ms. Weiss, I'm trying to

understand what you're – Ms. Weiss, I'm trying to

33

1

2   understand what you're saying.  Are you saying that you

3   (indiscernible) same position as anybody else?  Because

4   that's what I heard you to say.

5          MS. WEISS:   From the way that in my career with

6   the New York City Law Department I have been requesting

7   documents from the CCRB, I don't know that they are – I

8   don't know their exact relation with the City and how they

9   are involved or controlled with the City.  It was my

10  understanding that they were an independent entity of some

11  sort.  I don't know all the background behind it.  But the

12  New York City Law Department and the NYPD do not unfettered

13  access to their documents.  We have to go through a formal

14  requesting process.

15         THE COURT:  Okay, well, so, Ms. Bicklen, you

16  know, if this was a city agency, a normal city agency, I

17  would treat this in one way.  It's something else

18  apparently, unless you persuade me otherwise, and tell me

19  what you think is the right, I mean I don't know if they

20  need to be subpoenaed, I don't know, maybe they need to be

21  in front of us?  I guess is it correct, Ms. Weiss, you're

22  representing them right now?

23         MS. WEISS:   I don't know that I'm representing

24  them.  I don't know that I have any call to represent them.

25         THE COURT:   Well, if they're (indiscernible)

```
 1                                                    34
 2   documents, I mean was a document request the appropriate
 3   way to get these documents or did it require a subpoena?
 4          MS. WEISS:   It did not require a subpoena.  We
 5   made a request to the CCRB.
 6          THE COURT:   No, no, no, I'm talking about the --
 7          MS. BICKLEN:   Your Honor, the City --
 8          THE COURT:   I'm talking about the plaintiffs,
 9   you can only make document requests of parties.  So did
10   they properly proceed or not?  I mean they can issue a
11   subpoena tomorrow.  It's not terribly hard.  Someone has to
12   be able to say to me here's what's going in the CCRB and
13   here's their timetable.  Are you saying you're not that
14   person?  Because I need that person.
15          MS. WEISS:   I can - I personally am not that
16   person.  I can make or have calls made to them tomorrow to
17   try to find out the, you know, progress that they're
18   making.
19          THE COURT:   Well, I think that's important --
20          MS. WEISS:   We have contact --
21          THE COURT:   I mean if they're prepared to submit
22   to the Court's jurisdiction now, great.  If they want a
23   subpoena, we'll do that tomorrow.  But they need to, I
24   think, Ms. Bicklen, it makes sense for them to send you a
25   letter or whoever's representing them to send you a letter
```

35

immediately saying what the status of the request is

because Ms. Weiss is taking the position that she can just

request from them and has to wait.  Because they're an

independent agency.

        MS. WEISS:   Your Honor, I just want to clear I

don't know exactly what they are in relation to the City.

I don't know all the ins and outs of their relationship --

        THE COURT:   Okay, Ms. Weiss, this is back to

what I, related to what I said before, which is you need to

be on top of all of these requests.  It needs to be one

person, and if it's you, that's great.  But you need to

know what's going on at the CCRB, and if your answer is I

have no control, all I can do is find out what they're

doing, then we need to do something else.  We need to have

a subpoena so that I can order them to do something.  I

know I can order the City to do something, but it sounds

like you're telling me that you have no control over the

CCRB.

        MS. BICKLEN:   Your Honor, this is Molly Bicklen.

With respect, they're a City agency, and defendants have

not taken the position in their responses that they are not

in possession of the documents or not in custody of them

such that we would have to do a subpoena.  They're part of

the City charter, and so it's just not clear to me why

```
 1                                                    36
 2   there has to be this process of waiting.
 3            THE COURT:   I don't want to wait, I agree with
 4   you.  I want a letter from, if, Ms. Weiss, you can't do it,
 5   I want a letter from the CCRB by Monday that says exactly
 6   when these documents are going to be produced.  And I don't
 7   mean produced to you; I mean produced.  Whoever's producing
 8   them.  Okay, so that needs to be given to the plaintiffs by
 9   Monday, Ms. Weiss, do you understand that?
10            MS. WEISS:   Yes, Your Honor.
11            THE COURT:   That's with respect to document
12   request 15.  Ms. Bicklen, what's next?
13            MS. BICKLEN:   I think I'll defer to my colleague
14   with respect to the interrogatory.
15            MR. OLIVER:   Your Honor, hi, Gideon Oliver.
16   Sorry that it's so late and we're just getting to the
17   interrogatories.  But the letter from the - so the City had
18   three, has done three rounds of interrogatories.  They're
19   virtually the same.  There's almost no substantive
20   responses being the main problem.  The June 21 letter from
21   the City provides no algorithm information about the
22   process that's been deployed.  These interrogatories are
23   signed by Ms. Weiss, not any of the individual defendants.
24   We don't know anything about who was asked, which documents
25   were reviewed, which documents are necessary to give
```

37

complete answers or anything else that we think the Court

directed defendants to provide already.

But what is included is on the last page of

defendants' letter, they go through each of the 14

interrogatories and make certain representations.  And if

it would be okay with the Court, I'd like to just run

through those, at least a few of those quickly to tell you,

you know, put them in some different buckets.

You know, they say with respect to

interrogatories 1 through 9 that the information is either

contained in documents that they've produced or that they

will produce.  The documents they produced they say answer

fully interrogatories 1 to 6 are two types of documents:

detailed rosters and these, what they're calling MAPSI or

mass arrest processing center spreadsheets.  These are what

we typically call mass arrest reports.  They say these

documents will contain this information, and they're

contained in productions that we don't have yet.  They also

say they're trying to get those two types of documents as

quickly as possible so they can be produced in the first

batch.

But yesterday we had a meet and confer about ESI,

and I asked them very specifically about these mass arrest

reports which from prior discovery we know lived in a

1                                                                  38

2  shared hard drive in the criminal justice bureau.

3  Lieutenant Czark, C-Z-A-R-K, ha testified about this a

4  number of times, and he's the person that they've put up as

5  their ESI custodian.  And so I don't understand why we're

6  waiting for versions of these documents that are in these

7  other productions when nothing has been done to, apparently

8  to go and get them and give them to us.

9            To the extent they say that their responses to,

10 you know, these interrogatories, we're asking the Court to

11 order defendants to produce all the records they say

12 contain the answers by the 28th.  But I'll tell you that

13 the representation that the detail rosters and the mass

14 arrest reports will contain the information responsive to

15 interrogatories 1 to 6 is at best incorrect information,

16 but it is not accurate or true to say that those records

17 contain responsive information.

18           At best they might answer some information

19 responsive to interrogatory number 1.  They won't identify

20 legal bureau attorneys who were present or who were

21 involved in arrest locations.  They won't give us the

22 identities of incident commanders at the locations or the

23 officers who were the highest ranking patrol service bureau

24 members.  The charts and other information that in other

25 words are much, much more limited in use than defendants

1

2   are representing.

3         So what we've asked for is that the Court order –

4   and I should say also beyond that, looking at, for example,

5   interrogatory 11, interrogatory 11 seeks the identities of

6   personnel at the Mayor's office or the Mayor's Office of

7   Criminal Justice who were present at any of the protest

8   locations.  Their response in this letter, very different

9   from their response in subsequent responses, we're reach

10  out to the Mayor's office for this information.  Well, you

11  know, of course, our position is that's what they should've

12  done in March and in the several times since then where

13  they've redone and redone these responses, and we don't

14  even have sort of the basic algorithm information of who

15  did they reach out to in the Mayor's office, when are we

16  going to get the information, etc.

17         Interrogatories 12 and 13 seek --

18         THE COURT:  Can we maybe, can we --

19         MR. OLIVER:  I'm sorry, Your Honor.

20         THE COURT:  Mr. Oliver, I think we need to break

21  this down into pieces.  So let's start with 1 to 6.  It

22  seemed like you had two problems.  One, you don't have the

23  things that they say has the information, and, number two,

24  you know that certain of the information is going to be in

25  there.  Is that fair?

1

2          MR. OLIVER:   Correct.  Yes, Your Honor.

3          THE COURT:   Okay, so let's hear from the City

4   about what we're going to do about this.

5          MS. WEISS:   Well, plaintiffs do have some of

6   these documents.  They have been produced in initial

7   disclosures, and some documents will be produced unredacted

8   at a later time.  They do have a number of incident

9   commanders, so much so that they, you know, have been

10  serving deposition notices so that they can depose these

11  incident commanders and many, many other people who were

12  present.

13          But that being said, these documents are going to

14  contain most if not all of these information according to

15  conversations that I've had with my clients, and they're

16  going to be part of, we're hoping that – and like I said I

17  don't have it in front of me – this first batch of

18  discovery, and they'll get the names of nearly every member

19  of service who was present at these demonstrations.  Some

20  of them will not be on detail rosters because oftentimes at

21  these demonstrations a police officer, more police officers

22  are needed, so there might be radio calls for whoever's in

23  the area to come, and there might not actually be a

24  document that shows that that officer arrived at the scene.

25  But these documents that we are going to be producing

1                                                            41

2  hopefully next week are going to contain nearly every

3  member of service who were at these demonstrations.

4         THE COURT:  Okay, well, let's make clear I'm

5  ordering their production on the 30th, okay, so hopefully

6  is not in the cards.  Production is ordered of these

7  documents on June 30.

8         Now, I don't know what to do about Mr. Oliver's

9  contention that, in fact, it's not going to have the

10  answers to these questions.  What was the specific example

11  you gave, Mr. Oliver?

12         MR. OLIVER:  Sure, Your Honor, I mean if we

13  could go through them, I would be happy to do that, but the

14  specific example I gave was the mass arrest report, for

15  example.  I mean Ms. Weiss just gave another example which

16  is that these detail rosters, you know, are sort of filled

17  out kind of at the beginning of a shift, right, and then

18  people get deployed to different locations, and in order to

19  figure out who actually ended up where, you need much more

20  records.  You need the radio communications about who was

21  deployed where and all kinds of other documents.  I mean,

22  unfortunately, we do this in every case, and it's an uphill

23  battle to sort of show the Court, you know, defense counsel

24  says it's easy, we're getting you the stuff, this will give

25  you the answers.

42

1

2          You know, I mean I'm not sure what the best way

3   to proceed is, Your Honor, but I'm confident because we've

4   gone down this road so many times before, that the records

5   that they – there are two types of records they've

6   identified, mass arrest reports and detail rosters, will

7   only give some information in response to interrogatories 1

8   and 6.  And the commanders' sort of spreadsheet that

9   they've shown us has a bunch of like last names of some

10  officers for some locations.  It's not an interrogatory

11  response that reflects that someone did their homework,

12  reviewed records, you know, found out what the answers to

13  these questions were as if they needed to, and then

14  produced something that, you know, someone signed and we

15  can use as evidence.

16          And I realize that it's a big case, so, you know,

17  we're not going to be able to get all of that sort at once

18  necessarily, but we would like a mechanism to show Your

19  Honor very quickly what's deficient and what we do end up

20  getting so that we can skip as many of the, I mean usually

21  what happens is we then have to take a bunch of depositions

22  where we don't have the records and the officers make a

23  record about how to get them and then come back to the

24  court and, you know, we'd like to skip as much of that as

25  possible with respect to these documents.

43

1

2          So just to clarify Your Honor's order, were you

3  ordering them to produce the documents they say will answer

4  interrogatories 1 through 9 completely by the 30th?

5          THE COURT:   Well, yes --

6          MR. OLIVER:   Or just 1 through 6?

7          THE COURT:   It was 1 through 6 I think is what I

8  was focusing on.  I didn't – is there a distinction?  I'm

9  not sure what documents are being produced with respect to

10  7 through 9?

11          MR. OLIVER:   Me either, Your Honor.  It just

12  says this information – the letter just says, "This

13  information will be contained in the documents which are to

14  be provided in response to the document request" --

15          THE COURT:   Oh, okay, well, 7 is the CCRB

16  request.  7 and 8.  7, 8, and 9 are all CCRB documents.  So

17  I think that's has to stay on the CCRB track.  We're going

18  to hear from the CCRB on Monday.  So I think we --

19          MR. OLIVER:   Understood, Your Honor.

20          THE COURT:   -- have to wait on that.

21          MR. OLIVER:   I'm sorry, I think those would also

22  sweep in NYPD investigations and OIG, you know, any other

23  investigations.  The CCRB is one bucket, but there were a

24  bunch of City agencies who were involved in the

25  (indiscernible).

```
1                                                    44
2            THE COURT:   You're right.  I mean I don't think
3   we can really divorce this interrogatory from the document
4   production.  I think they have to rise and fall together, 7
5   through 9.
6            MR. OLIVER:   Understood, Your Honor, and so is
7   the Court, would the Court order defendants to produce all
8   documents that are responsive, that provide all the, you
9   know, full and complete responses to 7 through 9 by the
10  30th?
11           THE COURT:   Well, no, because the problem, I
12  mean I --
13           (interposing)
14           MR. OLIVER:   -- I'm sorry.
15           THE COURT:   -- but it's tied to the document
16  production, and that would have the tail wagging the dog as
17  it were.  Unless there's some way to extract names that I
18  don't know about, you know, before you review documents,
19  but until you tell me that that's possible, I've already
20  made rulings with respect to the documents and how we're
21  going to proceed on that.  So I think that has to await
22  that.
23           MR. OLIVER:   Understood, Your Honor, thank you.
24  And just before we move on, on our request for relief on 2
25  to 4, interrogatories, I'm sorry, 2 to 5 was to ask for the
```

1                                                          45

2   Court to order responses to those interrogatories.  2 seeks

3   the identities of the incident commanders at each protest

4   location.  Incident commander is a role in the police

5   department.  It's the highest ranking uniformed member of

6   service at the protest location.  And so it is the kind of

7   - it's not the kind of thing that the chart that they've

8   provided answers so that we could glean by looking at the

9   chart.  We need to know who the bosses were who were making

10  the calls at those protest locations, and so those are

11  really interrogatories 2 and 3.

12          And similar issues with interrogatory 4 which --

13          THE COURT:   Stop, stop, one at a time, one at a

14  time.

15          MR. OLIVER:   Sure, sorry, Your Honor.

16          THE COURT:   Ms. Weiss, is it truly your

17  contention, contrary to what Mr. Oliver is saying, that

18  these rosters and mass arrest spreadsheets are going to

19  show the incident commanders?

20          MS. WEISS:   We (indiscernible) a chart with

21  incident commanders.  I'm not really sure what Mr. Oliver

22  is saying.  Not every incident will have an incident

23  commander.  It is not true that the highest ranking member

24  of the NYPD on the scene is necessarily the incident

25  commander.  An incident commander is assigned in those

46

1

2    demonstrations or those events where there's an incident

3    commander.  Just because someone is the highest ranking

4    member of the NYPD on the scene doesn't make them an

5    incident commander, and just because there is an event

6    doesn't mean that there's an incident commander assigned.

7    So for the demonstrations where there were incident

8    commanders assigned, that is the information we've provided

9    in a document.

10         THE COURT:   All right, Mr. Oliver, I think we're

11   hitting a problem, and the problem is this, you know, I can

12   talk about process issues and deadline and things like

13   that.  But in terms of answer, you know, figuring out an

14   answer to a question like this, like whether these

15   documents are going to show this or not, I can't do that,

16   and I have to have more discussion with the parties.  You

17   need to give me proof in a way that doesn't happen on a

18   phone call if you really want to pursue this.

19         I think we have to not do the substantive

20   objections to the interrogatory and, frankly, document

21   request responses.  I think we have to deal more about

22   production and that process and moving things along than

23   getting into sort of merits based arguments about what's

24   going to happen.  I mean they have to operate in good

25   faith.  If they say that these interrogatories are going to

47

1

2  be answered by these document requests, I'm going to take

3  as a presumption, and then it'll be to you to say, you

4  know, we absolutely have to go a different route here.  But

5  I don't want to do this in a phone call.  I want to do this

6  --

7           MR. OLIVER:   Understood, Your Honor.

8           THE COURT:   -- through your explaining to the

9  other side what you think the problem is.  Maybe they'll

10 come up with an accommodation, and then if there's truly an

11 impasse, then you're coming back to me.  Okay?

12          MR. OLIVER:   Understood, Your Honor, we'll

13 exhaust all those options and queue it up.  Would it help

14 to go through the remaining interrogatories because --

15          THE COURT:   Yeah --

16          MR. OLIVER:   -- it's different issues.

17          THE COURT:   Yeah, I mean I guess I imagined this

18 conference being more about document production because I

19 thought the interrogatory problems were substantive rather

20 than timing, except for 11.  Perhaps we can talk about that

21 one.  But if it's a timing problem, then I'm happy to talk

22 about it.  So I'll give you the floor.

23          MR. OLIVER:   Sorry, Your Honor, we can set 14 to

24 the side then, but if we could talk briefly about 10, 11,

25 and 12 to 13.  10 and 11 are interrogatories that relate to

1
2 identifying – (indiscernible) my interrogatory list – the
3 Mayor's office, City employees, and representatives of the
4 Mayor's office who communicated with the police department
5 about the police department's protest responses and
6 personnel at the Mayor's office and MOCJ, the Office of
7 Criminal Justice who were present at any of the protest
8 locations.

9          For number 10, the defendants, you know, in their
10 letter said we'll talk about this during any ESI meet and
11 confer.  We had that yesterday, it was not a topic of
12 discussion.  And for number 11, you know, we don't have any
13 information about what's been done or what will be done to
14 get us the answers that we need.  So without this
15 information we have virtually nothing to target further
16 discovery from the Mayor's office and from the City at this
17 time.

18          THE COURT:  Okay, I mean I think --

19          MR. OLIVER:  It's a timing problem for us.
20 Sorry, Your Honor.

21          THE COURT:  I understand that, but I think the
22 answers to 10 and 11 are very different.  10, the City is
23 saying the ESI production is going to answer this question,
24 and we can't answer it independently.  Now, whether that's
25 a good answer or not, I don't know, but is that right, Ms.

```
 1                                            49
 2  Weiss, is that your answer?
 3           MS. WEISS:   Yeah, it had to do with search terms
 4  and searching for electronic communications.  So yeah.
 5           THE COURT:   So their answer to number 10 is, if
 6  you want to know who communicated with NYPD, we have to do
 7  the ESI search.  I mean if you have, you know, a reason for
 8  me to – it doesn't seem like an unreasonable way to deal
 9  with this issue which is examine the emails and figure out
10  who's been communicating.
11           MR. OLIVER:   Understood, Your Honor, we don't –
12  understood, Your Honor.  And what about --
13           THE COURT:   Okay, 11 is on a different front
14  which is who was actually at any of the protests.  So
15  what's the mechanism, Ms. Weiss, for doing this and when's
16  the response going to come?  See, this is the problem, and,
17  Ms. Weiss, in future letters I need to solve this.  To just
18  say you've reached out, that's the first part of something
19  you need to explain.  You need to explain what, whether
20  you've given, you know, a response date, whether they've
21  given one, and if not, I may have to give one.  So tell me
22  where we are on this.
23           MS. WEISS:   Your Honor, not me personally,
24  members of my office reached out to whoever it is in the
25  Mayor's office would be the one to provide this
```

1

2   information, and I was advised that it was being searched

3   for.  I don't have further information on that front, but I

4   will check into that and let plaintiffs know what further

5   information I get.

6          THE COURT:   Well, I make it simpler for you.

7   I'm ordering that this interrogatory be answered by July 1,

8   which is a week from today.  So provide the updated

9   response to interrogatory 11.  Mr. Oliver, what's next?

10          MR. OLIVER:   Just one last issue with respect to

11   the rogs, Your Honor.  Interrogatories 12 and 13 seek for

12   each plaintiff and others, but for now if we focus just on

13   the plaintiffs, the identities of the officer who directly

14   observed them or determined there's probable cause to

15   arrest them.  And we don't have any substantive response to

16   these questions at all, you know, about plaintiffs, others

17   at the arrest locations or otherwise.  So even assuming

18   that there's something to, you know, I mean there's a

19   tension between defendants saying we understand there's

20   class claims and lots of issues in this case, so we know

21   plaintiffs need lots of discovery and we're going to give

22   them virtually all of it, and they're saying, you know,

23   this is overly, you know, actually digging into what

24   happened is overly burdensome.

25          But certainly we're doing defendants'

1

2  depositions.  We've noticed defendants' depositions to

3  start mid-June, and defendants have not produced anyone

4  yet, and we're in the process of trying to work out, you

5  know, getting these depositions rolling yesterday.  And we

6  don't even have basic information about who was personally

7  involved in putting their hands on our plaintiffs, who

8  decided to give the arrest orders that are relevant to our

9  plaintiffs' cases.  What we do have in some cases are like

10  a copy of a desk appearance ticket or a copy of a summons,

11  documents that are handed to people when they're released

12  from custody.  They don't have the substance of the

13  allegations that the officer allegedly observed.

14         And when we depose these people in these kinds of

15  chases, very frequently what happens is they say I didn't

16  see this person before they were put under arrest.  I was

17  assigned this person and four others to process their

18  arrests.  And we then need to do all kinds of follow-up

19  discovery to either find people who have personal knowledge

20  or get to the point where we get an adverse inference from

21  the Court, which is what we ended up getting in the R&T

22  cases.  Judge Francis granted us adverse inferences after

23  we went through this process of trying to pin down who had

24  personal knowledge about our clients' pre-arrest conduct

25  and what led up to their arrests.

1                                                              52

2              So the ask in our letter with respect to

3    interrogatories 12 and 13 was for the individual defendants

4    to provide substantive and verified responses to

5    interrogatories 12 and 13.  And certainly we think we need

6    something like that in order to pursue our individual

7    plaintiffs' claims, setting aside for a minute the class

8    claims.

9              THE COURT:  Ms. Weiss.

10             MS. WEISS:   I understand what Mr. Oliver is

11   saying, but I don't know that there is any way that we

12   could answer these interrogatories such as identifying

13   every officer who observed every plaintiff.  I mean we

14   could answer broadly and say that every officer who was

15   there, but I don't think that there is any way to be able

16   to tell plaintiffs who, you know, who saw their clients do

17   what.  We can certainly start with the arresting officer.

18   We present, we've provided body worn camera footage.  Some

19   of the plaintiffs' attorneys have pointed out or identified

20   or noted officers in that footage and asked us to identify

21   who those people were because either their clients had a

22   belief that they either saw or somehow involved in their

23   incident.  But short of that, I'm not really sure of a

24   practical way that we could get this information.

25             THE COURT:   How many arrests are you talking

```
 1                                              53
 2  about or plaintiffs?
 3           MR. OLIVER:   In Sow, Your Honor, I think we have
 4  nine plaintiffs.  I mean all tolled we probably have 50
 5  plaintiffs.  I'm not - maybe someone will help me out in
 6  the chat, but --
 7           THE COURT:   I wanted a ballpark.  So I think
 8  with numbers like that, I think the documents - I think, as
 9  a matter of proportionality and burden under Rule 26(b),
10  the documents that show who, you know, I assume show who
11  the arresting officer was, show other people who were
12  present are an appropriate way rather than having lawyers
13  for the defendants, you know, investigate each of these,
14  you know, each of these 50 arrests.  So --
15           MR. OLIVER:   Your Honor, if we revisit that, if
16  it turns out, and when it turns out in the depositions and
17  in getting these documents, that they do not reveal that
18  information, because to be clear, in our experience that is
19  just not true and it's not what happens.  The officers
20  whose names on the paperwork are the start of the
21  investigation into who was actually there and what actually
22  happened.  And so getting those records is going to then
23  lead to our taking those low-level depositions and sort of
24  going through the usual process which is what takes months
25  and months to get discovery done.
```

                                                                54

THE COURT:   You're saying that --

MS. WEISS:   Your Honor, if I may, having –
sorry.

THE COURT:   Go ahead.

MS. WEISS:   Go ahead, Your Honor.  No please.

THE COURT:   No, you go ahead.

MS. WEISS:   Having spoken to or learned the
stories of many of these named officers who in many cases
were the arresting officers of these particular plaintiffs,
I think Mr. Oliver may be surprised pleasantly, with the
information that they do have.

MR. OLIVER:   I'm sorry, but I know that I won't
be because our clients have testified that, you know, that
they were arrested or injured by people and then handed
over to other people.  So the officers have an interest in
saying, yeah, I saw XYZ because if they haven't, in fact,
seen those things and they've said that they have in their
paperwork, that should be at least (indiscernible) a
problem.

But I guess if the Court is not inclined to give
us relief on these issues now, then I just ask that we have
an expedited mechanism of queuing this up to show the Court
that these documents, you know, I mean we don't even have
the individual like packets of these arrest processing

55

documents for most if not all of the individual plaintiffs.
But even – we would like an expedited mechanism to be able
to bring these issues to the Court so that we can move the
ball forward.

THE COURT:   Well, I'm certainly not going to
preclude you from coming back and saying, you know, the
documents don't have what we need.  So the answer to your
question, absolutely.  In terms of expedited, my individual
practices allow you to bring an issue to me any time you
want, and the other side has to respond within two days.
And then I'll get to it, depending upon my schedule,
usually pretty quickly.  So I think that's pretty
expedited.

MR. OLIVER:   Thank you, Your Honor.

THE COURT:   Okay, are we don't on
interrogatories?

MR. OLIVER:   Yes, Your Honor, thank you.

THE COURT:   Okay, Ms. Bicklen, what else should
we do today?

MS. BICKLEN:   I'm going back to my notes at the
beginning, Your Honor, to see if there was a third thing to
discuss.  I believe we have the orders for the immediate
production, and --

(interposing)

1                                                                    56

2              THE COURT:   -- June 30, we're going to have

3    production June 30 and then weekly after that beginning on

4    July 8.  Ms. Weiss needs to update her June 21 letter on a

5    regular basis so that the parties know exactly what's going

6    on with all of this.  She needs to act sections about how

7    many documents are queued up for review and how many people

8    are reviewing them and expected dates of production.  So I

9    think your next updated letter should be, well, a week

10   after this one was written.  Well, you know what, maybe it

11   should come the day after you do your production, maybe

12   that's more sensible.  So you should update this letter

13   July 1, and then after that beginning – you should update

14   it a week from today and then after that beginning July 9

15   and then every Friday.  If you want to do it the day of the

16   production, that's fine too, but by the Friday of the week

17   so that they know exactly what's going on with all of these

18   things.

19             MS. WEISS:   Yes, Your Honor.  Thank you, Your

20   Honor.

21             THE COURT:   I'm sorry, so go ahead, Ms. Bicklen,

22   anything else for today?

23             MS. BICKLEN:   I'm sorry, there was just one

24   additional issue to address with respect to their responses

25   to request 1 and 2 regarding training materials and policy

1                                                             57

2  documents.  You know, they have repeatedly claimed and

3  claimed in their letter that they're producing patrol guide

4  sections, but there are, has to be far more directives and

5  other information related to this.  In their letter for the

6  first time, they identify Finest messages, but we need them

7  to search actually for policies and directive documents

8  beyond the patrol guide, and that's what we would ask here

9  today.

10         THE COURT:  Ms. Weiss, what makes you believe

11 that the patrol guide is – or better yet, what is being

12 done, I mean this seems like the heart of the case or a lot

13 of the case.  What is being done to find documents

14 responsive to 1 and 2?

15         MS. WEISS:  Well, as Ms. Bicklen mentioned and

16 as I put in the responses and in the letter, the patrol

17 guide determines the policy.  There are some Finest

18 messages which may update or remind the officers --

19         THE COURT:  What are Finest messages?  I don't

20 know.

21         MS. WEISS:  They are messages that go out to all

22 police officers and are often read at rollcalls that are

23 usually sort of brief updates on things or brief reminders.

24 So there are likely going to be some Finest messages,

25 especially with respect to COVID protocols and the

1                                                           58

2  (indiscernible) last summer.  There are training documents

3  because, of course, officers are trained on those things,

4  and we'll be providing them, and I believe that those

5  documents will be contained in the 50,000 document batch.

6  Possibly not the Finest messages, I'm not sure, but I can

7  doublecheck on that.

8          THE COURT:   I think Ms. Bicklen's question had

9  to do with your methodology for searching.  How is it you

10  know to look for, I mean maybe the answer is you talked to

11  someone who knows at the police department.  But what is

12  the methodology for deciding where these documents relating

13  to tactics and procedures and policies and so forth are

14  going to exist?

15          MS. WEISS:   We speak with individuals at the New

16  York City Police Department, both in their legal department

17  and in other units that would have knowledge of these

18  things, and these are what we are advised.

19          THE COURT:   Ms. Bicklen, where do we go with

20  this?

21          MS. BICKLEN:   Your Honor, we would prefer, we

22  would like — what we thought was going to happen in this

23  letter but is who they've actually talked to, what searches

24  have actually been done, and, you know, what documents

25  they're actually producing.  This is the first time now

59

that they state for Finest messages, there simply are other

materials out there, and with just this very generic notion

it's hard to even know that they've searched properly.  And

the same is true for training as well.  There are

PowerPoints, there are other materials that are out there,

and we have to know how they're going about searching for

this relevant information.  And we would request that that

be added to the letter for June 30.  Or July 1 I believe.

THE COURT:   Ms. Weiss, I think we do need a

little more detail on this.  So let's put that in the next

letter.  Ms. Bicklen, anything else for today?

MS. BICKLEN:   I think that's it, Your Honor.

THE COURT:   Ms. Weiss, anything?

MS. WEISS:   No, Your Honor.

THE COURT:   All right, so I'm, you know, I'm

very accessible if there's a problem.  We're going to have

the weekly reports from Ms. Weiss to the law department,

I'm sorry, from Ms. Weiss to the plaintiffs, and we're

going to start having the production.  If there's any

substantive disputes, use paragraph 2A of my individual

practices to try to resolve them.  Frankly, if there's

disputes of any kind, you should use those, and you'll be

able to get my attention very quickly by writing me a

letter.  All right, thank you everyone, and good bye.

1                                                                    60

2              MS. WEISS:   Thank you, Your Honor.

3              MR. OLIVER:   Thank you, Your Honor.

4              (Whereupon the matter is adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                                              61

2                      C E R T I F I C A T E

3

4        I, Carole Ludwig, certify that the foregoing

5   transcript of proceedings in the United States District

6   Court, Southern District of New York, Payne, et al. versus

7   De Blasio, et al., docket #20cv8924, was prepared using PC-

8   based transcription software and is a true and accurate

9   record of the proceedings.

10

11

12

13

14   Signature _____   *Carole Ludwig*

15

16   Date:   June 28, 2021

17

18

19

20

21

22

23

24

25