UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                        Docket #20cv8924
 PAYNE, et al.,                     : 1:20-cv-08924-CM

                    Plaintiffs,     :

   - against -                      :

 DE BLASIO, et al.,                 : New York, New York
                                        July 2, 2021
                    Defendants.     :

-----------------------------------:  TELEPHONE CONFERENCE

                   PROCEEDINGS BEFORE
            THE HONORABLE GABRIEL W. GORENSTEIN,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Sow Plaintiffs:      COHEN & GREEN
                         BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New York 11385

For Payne Plaintiffs:    LEGAL AID SOCIETY
                         BY:  COREY STOUGHTON, ESQ.
                         199 Water Street
                         New York, New York 10036

For Sierra Plaintiffs:   RICKNER PLLC
                         BY:  ROB RICKNER, ESQ.
                         14 Wall Street, Suite 1603
                         New York, New York 10005

For Wood Plaintiffs:     KAUFMAN LIEB LEBOWITZ & FRICK LLP
                         BY:  DOUGLAS LIEB, ESQ.
                         10 East 40th Street, Suite 3307
                         New York, New York 10016

Transcription Service: Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

APPEARANCES (CONTINUED):

For Yates Plaintiff:          STOLL, GLICKMAN & BELLINA, LLP
                              BY:  ANDREW STOLL, ESQ.
                              300 Cadman Plaza West, 12th Floor
                              Brooklyn, New York 11201

For Plaintiff People          NEW YORK STATE OFFICE OF
of the State of New           THE ATTORNEY GENERAL
York:                         BY:  TRAVIS ENGLAND, ESQ.
                              28 Liberty Street
                              New York, New York 10005

For Defendants:               NEW YORK CITY LAW DEPARTMENT
                              BY:  DARA WEISS, ESQ.
                                   ELISSA JACOBS, ESQ.
                                   PAT MILLER, ESQ.
                              100 Church Street
                              New York, New York 10007

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---|---|---|---|---|---|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

1

```
 1                                                    4

 2              THE CLERK:  Payne, et al. v. De Blasio, et al.,

 3  docket #20cv8924.  Counsel, please state your appearances

 4  starting with plaintiff.

 5              MX. REMY GREEN:  Good morning, this is Remy Green

 6  from Cohen & Green on behalf of the Sow plaintiffs, and

 7  I'll be speaking for all the plaintiffs today for the sake

 8  of the Court and the reporter in the transcript I should

 9  appear as Mx. Green spelled M-X-period, rather than Mr. or

10  Ms., and I'm sure you're all sick of hearing that by now.

11              THE COURT:   If other plaintiffs' counsel want to

12  make an appearance, that's fine.  They should do it now,

13  otherwise we'll hear from defendant.

14              MR. ROB RICKNER:  Rob Rickner --

15              MR. ANDREW STOLL:   Good morning, Your Honor –

16  Rob, go ahead.

17              MR. RICKNER:   Rob Rickner for the Sierra class,

18  good morning, Your Honor.

19              MR. STOLL:  And good morning, Your Honor, for

20  Cameron Yates it's Andrew Stoll, S-T-O-L-L, thank you.

21              MS. COREY STOUGHTON:   For the Payne plaintiffs

22  it's Corey Stoughton.

23              MR. DOUGLAS LIEB:  Douglas Lieb for plaintiff

24  Charles Henry Wood.

25              MR. TRAVIS ENGLAND:  Good morning, this is Travis
```

1                                                                    5

2  England for plaintiff People of the State of New York.

3            THE COURT:   All right, for defendant.

4            MS. DARA WEISS:   Good morning, this is Dara Weiss

5  from the New York City Law Department for defendants.

6            MS. ELISSA JACOBS:   Elissa Jacobs from the New

7  York City Law Department for defendants.

8            MS. PAT MILLER:   And Pat Miller from the New York

9  City Law Department.

10           THE COURT:   Ms. Weiss, you'll be speaking for

11 the defendants?

12           MS. WEISS:   Yes, Your Honor.

13           THE COURT:   Christina, if you could turn, if you

14 know how to do this, use the website to turn off the

15 signals when people come in and out.  That'll be a help.

16 And also let me remind counsel that if they're not

17 speaking, they should keep themselves on mute.  For members

18 of the public who are listening, this is a public

19 proceeding but no recording is permitted and no

20 dissemination of proceeding is permitted.

21           We're here based on a letter from plaintiffs

22 dated June 29, docket 178, and a response from defendants,

23 docket 184.  A few issue are coming up here, and one I

24 don't know that we can solve today, but it seems like it's

25 one that is driving all the others, that is, how many

depositions are going to be permitted in this case.

There's a presumption limit obviously of ten per side that

I don't think anyone thinks is realistic, and that's fine,

but where we are above that, it seems pretty clear from

defendants' letter at least that there's no agreement on

that.  And I think it's going to be very hard to do the

planning without arriving at some conclusion.  I'm not sure

it has to be definitive.  But that seems to me to be a

driving force behind issues regarding scheduling.

I understand there are other issues, I understand

that the plaintiffs don't want to depose people until

they've gotten certain documents, and I understand the

defendants don't want to have depositions left open.  That

would be extremely inefficient.

I would have thought that one way to handle the

document situation would be to start by deposing people who

are going to be document dependent, people like line

officers, I know there are some of them, and it seems to me

that one does not need to wait for documents to depose

those individuals and that maybe some of the higher-up

people one might want to wait for documents.  I also

understand there's problems in identifying some of the line

officers and one of the issues raised in the letters.

So I want to talk about, I'm not sure in which

7

1
2   order but I'll hear from each side, I want to talk about
3   the numbers.  I had issued an order long ago talking about
4   reserving deposition dates.  I would've thought the topic
5   would've come up when people started trying to reserve
6   dates for depositions, or maybe not.  I want, you know,
7   numbers, that's sort of one big topic.  There is this
8   notion of achieving some efficiency by deposing lower level
9   people first for whom there's going to be little need for
10  documents I assume, though someone could tell me otherwise.

11          I also I guess want to talk about the defendants'
12  proposal about having subject areas in advance for
13  depositions probably is not a big issue for the low level
14  officer people, but for the middle or higher people a much
15  bigger issue.  And then I guess the fourth issue would be,
16  and we'll save this for the end, would be the issue of
17  settlement.

18          So, again, number of depositions, how they're
19  going to be done in terms of lower level people and so
20  forth, the protocol, the Bellamy case protocols that Judge
21  Kuo instituted apparently, and settlement.  And I'm open to
22  other topics.  So that being said, I think we should, if we
23  can talk about them separately, let's talk about them
24  separately.  If not, people can lump them together.  Let me
25  hear from plaintiffs I guess first.

1

2          MX. GREEN:   Well, Your Honor, and this is Remy

3   Green, good morning.  I think you've gotten things almost

4   entirely right, and to your point we've done exactly what

5   you thought we would do, which is we have very much focused

6   the early depositions on the line officers.  In fact,

7   that's why, for example, we thought it was problematic that

8   the person, that the single person that defendants have

9   offered up is a document intense deposition while the

10  beginning of our schedule that was supposed to start in

11  June was all line officers with I think maybe one

12  exception.  And so it was all depositions we don't

13  anticipate needing documents, but, you know, I think the

14  only comments we've made is that, you know, you don't know

15  what you don't know, it could be that it turns out that

16  there's a document that they really should've given us and,

17  or we discovered a document that we should've had during

18  the deposition and we need to leave it open.

19          But I think the real point is, yes, we've done

20  exactly what you think we should've done is which we

21  focused on people for whom we won't need documents, and

22  those are the people we're trying to get ordered today.

23          And to Your Honor's point, we did meet and confer

24  on the schedule.  We forced this issue.  We asked for a

25  meet and confer, and, you know, defendants really were not

1

2  willing to give us scheduling.  So then we proposed the

3  schedule.  They even agreed by last Friday to give us a

4  counterproposal on a schedule so we can start depositions

5  yesterday, and the reason we're here today is they did not

6  ever give that to us.

7          So I think, Your Honor, two of the points, to the

8  point that you are making, Judge, we are very much I think

9  of a mind.  In terms of, you spoke to the Bellamy proposal,

10  the first we heard of that ever was yesterday.  We have not

11  really had a chance to dig into it.  I think on its face

12  there are some issues with it.  I understand that Bellamy

13  concerned, you know, decade of topics whereas we're really

14  looking to depose people about stuff that happened in the

15  last year.  And I think beyond that the bigger issue is

16  that, you know, we've talked about the issues with the

17  interrogatory responses and getting individual officers,

18  getting information.  And where we are on that it's hard

19  for us to tell them or to tell defendants exactly what

20  (indiscernible) officer is at because we don't know.

21          Now, the 2,300 documents defendants produced this

22  week I think have some of that information, not all of it

23  but some of it.  And so as we process that, you know, we

24  just got it, but as we process that, there might be some

25  information we can do.  But this is really information that

10

1

2  is in the possession of defendants, and we've, as you've

3  suggested, noticed line officers.

4        I think that the Bellamy stuff is just not ripe

5  right now though.  We haven't conferred on it at all.  And

6  I think I'll address the other topics, I'll let you break

7  it up, but I think we are really here narrowly today on the

8  issue that we need to start depositions.

9        THE COURT:  Okay, well, let me hear from

10 defendants on this.

11        MS. WEISS:  Thank you, Your Honor.  As we noted

12 in our letter and I see now, as I read it, it may not be

13 precisely clear, but we do note that the 20 witnesses that

14 we're talking about in the second page of our letter, those

15 are 20 of the witnesses that plaintiffs have in the

16 beginning of their list, meaning they're basically the line

17 officers.  And these are the folks that we are lining up

18 for the first depositions.  Ten of them we've already

19 confirmed for the first couple of weeks in July, not this

20 week of course, but starting next week.  We do intend on

21 producing those first because we do understand that for the

22 most part they are not document intensive witnesses.

23        But there are some documents that would be

24 possibly used which we have produced to the plaintiffs

25 quite a while ago.  There might be body camera footage that

1

2 might be applicable to these officers which we did produce

3 to defendants, I mean, I'm sorry, to plaintiffs.  So we are

4 definitely ready to go with these defendants, and 20

5 witnesses I think is an excellent start.

6          Then when we start to get to the middle and

7 higher ranking officers, we produced I think it was 24,000

8 pages this week.  We're going to produce, I don't know the

9 exact number, but it's probably another I want to say 1,900

10 documents next week.  I'm not sure how many pages that

11 equals; probably about 15,000 pages next week.  And that

12 will get us certainly closer to documents that plaintiffs

13 will need to start deposing higher ranking officers.  But

14 when it comes to them, I think it's very important that

15 plaintiffs will let us know what they intend to ask these

16 officers about.

17          According to interrogatories they've served and

18 document requests they've served, they're going back to

19 questioning about – I think I lost audio for a second

20 there.  They're going back to questions about protests

21 dating as far back as the WEX demonstrations in 2002.  So

22 if they're intending on asking NYPD employees about things

23 that happened almost 20 years ago, we certainly are going

24 to need to know about that and about the documents that

25 they're referring to so we can properly prepare the

1
2  officers and especially higher ranking officials for this

3  type of questioning.

4          THE COURT:   I think – it's certainly good to

5  know that the defendants are prepared to offer up a number

6  of witnesses in the next week or so, the line officers.

7  That's a good start.  I think that there's a communication

8  problem here because it seemed to me from the letters that

9  they, you know, thought that they were going to get a

10 proposal like that from you earlier in the week, and then

11 it just didn't come.  And, therefore, they wrote their

12 letter, and, therefore, I sent my comments and you wrote

13 your letter and then you made this proposal.  So I think

14 going forward, Ms. Weiss, and both sides, we need to be as

15 responsive as possible to avoid people running to court

16 because you didn't get something that they thought.  I

17 don't know if your fault or their fault.  They thought that

18 they were going to get at a certain time and then didn't

19 get.

20         The plaintiffs are understandably concerned about

21 moving the case along, so I'm not going to blame them for

22 precipitous letters, but I'd like you to do everything in

23 your power to avoid those letters by giving them as much

24 information as possible about what you're prepared to do.

25 Do you think something went wrong here on that front, Ms.

1

2  Weiss?

3          MS. WEISS:   Well, Your Honor, with all due

4  respect, I informed plaintiffs that we were busy, very busy

5  with all of our available resources getting the documents

6  prepared to serve on them Wednesday to comply with your

7  order, and we just weren't able to get the deposition

8  schedule out to them yet.  And before we got a chance to

9  get to it, they wrote to Your Honor for the conference.

10          THE COURT:   Okay --

11          MX. GREEN:   Your Honor, if I may.  Defendants

12  made a firm commitment in the meet and confer to get us the

13  schedule last Friday.  They didn't.  And I think in terms

14  of the resource issue, I mean we're obviously going to tee

15  this up next week, but the rate at which they're getting

16  through documents, and they haven't completed collection

17  yet, they haven't collected any communications, for

18  example.  They told you last week that they had 50,000

19  documents.  They got 2,300 this week and Ms. Weiss just

20  said that they got through, they're going to get through

21  1,700 next week.  That isn't okay.  They will not make it

22  through that by July 31.  And so if getting through 2,000

23  documents a week consumes every resource the Law Department

24  has, we won't be able to take depositions in this case, and

25  that's not okay.

```
 1                                              14
 2              THE COURT:   Well, I think they've offered you
 3   ten depositions before July 19.  Am I wrong?
 4              MX. GREEN:   I mean I guess I understand that,
 5   Your Honor, but even in their letter they haven't
 6   identified who those people are.
 7              THE COURT:   All right --
 8              MX. GREEN:   And I think if they had them ready,
 9   they would have named them in their letter.
10              THE COURT:   Ms. Weiss, can you send the schedule
11   today, the proposed schedule?
12              MS. WEISS:   I have the names, the exact dates -
13   yes, we can.
14              THE COURT:   Okay, do that.  This is what I'm
15   talking about.  The sooner you can do things like that, the
16   more we can avoid conferences like this.  So let's - I'm
17   not sure we're going to make any big decisions today.  The
18   defendant needs to make the proposal on the depositions.
19   Taking us through the 19th is hopeful, but I think you also
20   at some point next week you need to give whatever the next
21   traunch or next round is going to be of depositions after
22   that date that you're prepared to commit to.  Once again, I
23   assume there are enough line officers that take us through
24   July that won't be too document dependent.  So that should
25   be a goal.
```

1

2          Any reason you can't do that by next week, put

3  together a schedule – I mean today you're going to take us

4  through the 19th.  There's not that much more left of July

5  after that.  Can you take us through the end of July,

6  perhaps the beginning of August with your proposals?

7          MS. WEISS:   Yes, Your Honor, we absolutely can,

8  but I just do want to point out that the plaintiffs on

9  their proposed schedule did tentative schedule some line

10 officers for dates in August and September.  So we have not

11 contacted those line officers yet because we were trying to

12 do it in roughly the same order that they put in their

13 proposal schedule.  If they would like to change the order

14 of those line officers, then we can certainly contact the

15 ones that they scheduled for later and try to get them

16 scheduled for sooner rather than later.

17          (interposing)

18          THE COURT:   All right --

19          MX. GREEN:   We want witnesses in the order we

20 noticed.  But I think to that point I think we do need to,

21 at this point, be double-tracking depositions, especially

22 with the, you know, the document issues and the issues just

23 of getting through things on this schedule so that we can

24 crystallize what issues are in dispute.  We do need to be

25 double-tracking depositions.

16

1

2          THE COURT:  Well, before we get to double-

3  tracking, sometimes we don't always get what we want, Mx.

4  Green, and if it's the case that you, it's more efficient

5  to do line officers first because – I mean I suppose if you

6  wanted some higher level person and, I mean you should

7  assume you're never going to get a deposition reopened.  So

8  if you would rather say, you know what, I'll wait on the

9  documents, I'll do this higher level person knowing I'll

10  never see that person again, that would seem to me an odd

11  choice, but that's not impossible.  It's something that you

12  could negotiate with the defendants.  But as a matter of

13  efficiency, it seems better to do line officers first.

14          MX. GREEN:  Yeah, no, Your Honor, I completely

15  agree.  I think that the schedule we have is the product of

16  a lot of exactly this kind of discussion between the six

17  teams we have.  And I think we have the same goals in mind,

18  we have exactly those concerns in mind, and we understand

19  that it is not, you know, the default to get a deposition

20  reopened certainly.

21          THE COURT:  Okay, now you used the D word there,

22  which is double-tracking of depositions, and I don't – this

23  comes back to an issue that I don't think we can do today

24  which is the number of depositions, and there's absolutely

25  no need for double-tracking if there are enough days before

17

```
 1
 2  December to do an appropriate number of depositions.  I've
 3  made no decision on that.  But there's no reason to do
 4  double-tracking for the sake of doing double-tracking.  It
 5  should only be done if there literally aren't enough days
 6  to accomplish what should be accomplished.  So I don't know
 7  --
 8          MX. GREEN:   Of course.
 9          THE COURT:   -- if you're ready to have the
10  discussion with the other side, but whoever is ready to
11  have that discussion should try having it, certainly not on
12  this phone call.  And if impasse is reached, then you know
13  how to get my attention.  But that's going to have to be
14  part of the discussion before we ever talk about double-
15  tracking depositions.
16          MX. GREEN:   Understood, Judge.  I think you have
17  asked us to raise it separately, so I will.  I do think one
18  of the issues though is, as came up at the conference last
19  time, we don't know who put hands on our clients, and we
20  are taking the first step in figuring that out.  And so,
21  you know, we don't even know the names of most of the line
22  officers that we really want to depose yet.  And so the
23  goal of double-tracking here is to be in a place where we
24  are actually, in a timely manner, deposing the line
25  officers we actually want to depose.
```

18

1

2          THE COURT:   I understand your desire.   I

3   understand the logic.  But, once again, this is a perfect

4   world and I suppose in a perfect world we would have years

5   to do all this; we don't.  So choices are going to have to

6   be made, and I'm not guaranteeing you that double-tracking

7   is going to be one of those choices.  So we'll put it off,

8   but just be aware that just because there were four people

9   involved in someone's arrest doesn't mean you'll get a

10  deposition of all four people.

11          MX. GREEN:   That makes sense, Judge.

12          THE COURT:   Let's see, I think we've gone as far

13  as we can in number of depositions.  We've talked about the

14  lower level people.  We're putting off the Bellamy protocol

15  for discussion among the parties.  I've already told the

16  City they should be making proposals for depositions

17  through August.  If there's some problem, you know how to

18  reach me.  The only other thing I have on my list is

19  settlement.  Before we get to that, is there anything else

20  from the plaintiffs' side?

21          MX. GREEN:   No, Judge, I think we'll talk about

22  documents next week.  Perhaps, I guess this would be the

23  end of the conference, but maybe we should, just so we're

24  not fighting about schedules, if we could schedule a

25  conference because I promise we'll be writing a letter

1  Tuesday.

2

3          THE COURT:   Okay, let's - Ms. Weiss, before we

4  get to settlement, anything else that you think we should

5  do today?

6          MS. WEISS:   Yes, Your Honor.  We - I'm sorry.

7  We wanted to know if the Court would consider waiving the

8  fee to admit some attorneys from our office pro hac vice

9  who could help out in defending some of these depositions.

10 We have a number of attorneys in our office who are very

11 qualified and very knowledgeable in this area of the law

12 but are simply not admitted to practice in the Southern

13 District.  So we were wondering if the Court would consider

14 waiving the fee to have them admitted so that they could

15 help out in defending these depositions.

16         THE COURT:   I didn't realize the City was in

17 such dire straits that our fee for pro hac waiver was an

18 impediment.  But I haven't even looked at our rules to see

19 if I have that power.  This should be the subject of a

20 letter, so put whatever you need to in a letter.

21         MS. WEISS:   Thank you.

22         THE COURT:   And, you know, we'll take it from

23 there.  You should also look at our pro hac vice process

24 which requires a little bit of paperwork, showing people in

25 good standing.  I mean I have the power to admit someone,

20

you know, for a singular purpose like a single deposition on a single date, but if there's going to be any regular practice, it seems to me that it should go through the normal pro hac vice admission process which is not terribly onerous.  And if you tell me the fee is onerous, I don't know if there's some in forma pauperis version that the City wants to ask for, but you could put all that in a letter.

MS. WEISS:   We will do that, thank you, Your Honor.

THE COURT:   Okay, and if it wasn't clear, I was kidding.  Anything else before we talk settlement, Ms. Weiss?

MS. WEISS:   No, nothing else, Your Honor.

THE COURT:   Okay, so, all right, now I'm promised that I'm getting a letter next week which would mean I would, on Tuesday, which would mean you would have a response due Thursday.  I don't mind.  I don't want to do this on a regular basis, but in light of representation I'm prepared to put a conference on for this next Friday morning at the same time.  Any problem with that time or date, Ms. Weiss?

MS. WEISS:   Your Honor, I am going to be out of town next Friday and the following Monday.

                                                                21

1

2          THE COURT:   Okay.  Well, I have an extremely

3    heavy week the week of the 12th.  I'm on what's called

4    criminal duty where I have to deal with every arrest that

5    comes in and every search warrant, which means – I'm sorry?

6          MS. WEISS:   I'm sorry, Your Honor --

7          (interposing)

8          MS. WEISS:   Of course, as you know, I do have

9    more than competent co-counsel with me on this case who can

10   most certainly handle a conference in my absence.

11         THE COURT:   Okay, then let's do it next Friday

12   at 10:30.  Is that all right with plaintiffs?

13         MX. GREEN:   Your Honor, I think this is going to

14   ultimately be a conference where, as you said in the last

15   conference, you need somebody who knows everything.  My

16   understanding is for this case this is Ms. Weiss.  I

17   certainly think she knows a lot --

18         THE COURT:   That's why I said if you cloned your

19   knowledge, I need someone who knows everything.

20         MS. WEISS:   Well, I don't know what the basis of

21   this letter is going to be.  Hard to tell if my co-counsel

22   Ms. Jacobs knows enough to be able to handle the

23   conference.  So if we could put it off until I return from

24   my mini vacation, you know, that would be great.  It's hard

25   for me to say.

1

2          THE COURT:   All right, let's take a chance and

3   put it on for the 13th --

4          MS. WEISS:   I'm sorry, I lost audio there for a

5   second again.

6          THE COURT:   It was our fault.  Tuesday the 13th.

7   I probably can carve out half an hour.  So let's see what

8   happens if we try for 10:30 on the 13th.  If I suddenly

9   move it, I'll certainly give you notice.

10          MX. GREEN:   Thank you, Judge.  Given that, you

11   know, I would ask could we do our letter Wednesday and

12   theirs Friday since that leaves the right amount of time?

13          THE COURT:   Well, the problem is you've lost Ms.

14   Weiss.

15          MX. GREEN:   Oh, you're right, okay.  We'll get

16   it in Tuesday.

17          THE COURT:   Okay.  All right, so I'll issue some

18   kind of order about the 13th at 10:30.  Last issue then,

19   settlement.  It seems to me that all defendants are asking

20   for right now is a proposal.  How soon do you think you

21   could get that to the defendants?

22          MX. GREEN:   Your Honor, we actually went back

23   and forth about this kind of at length and without

24   discussing the contents of settlement negotiations.  The

25   problem is we still don't have a single policy document,

23

and what we told defendants, when they wanted to talk

settlement some time ago, is that we need them to make a

(indiscernible) targeted production of policy documents so

that we can intelligently propose policy reforms, and they

have refused to do that.  And we still don't have policy

documents in their productions, you know, some three months

later, two months later.  So I don't know how we can make a

proposal in this case given, I mean from the Attorney

General's perspective, for example, there are no damages to

talk about.  From our perspective in the Sow case, we have

class damages but we also have, you know, we have

injunctive relief we're seeking.  And so I just, we can't

make a proposal.

          MS. BUTLER:   Okay, Ms. Weiss, yes.

          MS. WEISS:   If I may, Your Honor, with respect

to policy documents, the Attorney General did a full review

last summer and has thousands and thousands of pages of

policy documents.  And I understand that they're not

looking for monetary relief, but all the other plaintiffs

are looking for monetary relief, and they were deposed, and

I certainly would assume that the plaintiffs who are

looking for monetary relief do have a number in mind.  So

at the very least the Attorney General can propose what

sort of injunctive relief they're looking for, and the

1

2    other plaintiffs could certainly propose the monetary

3    relief they're looking for.

4           And there were public hearings on this matter.

5    There are a lot of public police documents that all parties

6    can certainly look at.  There's been police reform that is

7    public that all parties can look at it.  But it's kind of a

8    copout for plaintiffs to say that they can't make any kind

9    of proposal because the defendants haven't provided policy

10   documents.  The parole guide is public, I mean there are –

11   I can't even imagine the number of public documents.  Plus

12   the defendants have provided a number of policy documents

13   thus far.  So they've got to be able to propose something

14   that we could at least start to talk about.

15          THE COURT:   Well, Ms. Green --

16          MX. GREEN:   Your Honor, I think to that point –

17   sorry, please go ahead.

18          THE COURT:   I think I've confirmed before you

19   have access to whatever the Attorney General got, is that

20   right?

21          MX. GREEN:   Yes, that's right, Your Honor, and I

22   think to this point --

23          THE COURT:   Do you think there's more?

24          MX. GREEN:   We think there's a lot more, and let

25   me give an illustration that I'm not entirely sure

1

2   ultimately bears out, but last week when we were here, Ms.

3   Weiss talked about how the police, her contact at the

4   police department had told her that the incident commander

5   is not, in fact, the highest ranked person on the scene.

6   Well, if you look at the patrol guide, in black and white,

7   that's the definition of incident commander.  So if Ms.

8   Weiss's contacts at the police department are correct that

9   that's not it plays out in practice, then there's obviously

10  other documents or other information or other, etc., etc.

11         And I think as we know from many, many, many of

12  these cases, the patrol guide, which is what they keep

13  referring to, is not the be all end all of police policy.

14  It's barely even a starting point.  And that doesn't get

15  into training, that doesn't get into the new training that

16  they claim was the case.  And so if we're proposing policy

17  based on policy that's no longer in effect, you know, it's

18  almost nonsensical.

19         THE COURT:   Well, I'm not sure I agree.  I mean

20  if they say here's the patrol guide, that's our policy, and

21  whatever we gave the AG, that's our policy, I think you

22  should be able to say, well, here's what we think it should

23  be.  I'm not --

24         MX. GREEN:   Your Honor, I should also – I should

25  also say the patrol guide isn't public.  There are parts of

26

1

2   it that are public, but the whole thing is not public, and

3   they have not produced it.  We do not have – we have barely

4   anything, if anything.  I don't – I don't know how strongly

5   I can say that.

6          THE COURT:   Well, I mean I don't know what to

7   say here.  The City says that the Attorney General has it,

8   you say it's not there.  I can't really deal with that.

9   It'll come out how it comes out.  I would still think that

10  the plaintiffs could come up with a proposal based upon

11  what the City claims is all that there is, which is what

12  they're now claiming.

13         But I think it's a little soon to force this.  I

14  mean there's two pieces to settlement.  One is going to be

15  the injunctive relief which is going to be a long, bigger,

16  a bigger process than whoever's seeking damages.  Is the

17  City interested in bifurcating settlement or do they want

18  one big settlement?

19         MX. GREEN:   Your Honor, may I ask one thing

20  which is would you ask Ms. Weiss to confirm whether the

21  policies that they gave the AG are, in fact, the current

22  policies?

23         THE COURT:   Ms. Weiss, do you know the answer?

24         MS. WEISS:   The policies that were given to the

25  Attorney General's office were the policies that were in

1  effect at the time they were given to the Attorney

2  General's office.  It's now nearly a year later and things

3  have changed.

4

5          THE COURT:   Well, that's going to be

6  significant, Ms. Weiss, to them because to the extent

7  they're seeking injunctive relief, what's happening now

8  also matters, not merely what was happening at the time of

9  demonstrations.  Do you understand that?

10          MS. WEISS:   Yes, absolutely, but these changes

11  have been publicized and we even annexed them to our

12  dismissal motion that we made earlier in this case.  So

13  plaintiffs do have --

14          THE COURT:   I mean if you say it - once again,

15  we're back to where I was.  You say now you produced

16  everything there is to produce, you know, I don't know what

17  to say other than that's your claim, and for some reason

18  plaintiffs are doubting that.  And I can't resolve that.

19  But let's get to my question if you don't mind.  Ms. Green

20  had that interlude.  But my question was, Ms. Weiss, are

21  you interested in bifurcating settlement in terms of

22  damages and injunctive relief?

23          MS. WEISS:   That's certainly something we can

24  discuss, and discuss with our client.  I can't answer that

25  question right now.

THE COURT:  Okay, you know, this settlement certainly should continue to be discussed between the parties.  I mean it seems a little soon to have literally a settlement conference, at least with me.  I don't know if there's some other neutral out there that perhaps wants to volunteer that both of you could be happy with that might be able to do more of the nitty gritty in terms of helping the parties put this together.  But it sounds like it's a little soon for that from the plaintiffs' point of view anyway.  But keep that in mind as a possibility.

All right, I think I'm done from my end.  Anything else from the plaintiffs' side?

MX. GREEN:  Your Honor, if we could just confirm one final time.  As I understood it, defendants are going to give us the schedule through the 19th today and then fill in the rest next week.  I forget what date you said.

THE COURT:  I said next week.  So I guess if you're leaving, Ms. Weiss, I give you till the 8th, if your colleague does it till the 9th.

MS. WEISS:  Okay.

THE COURT:  Is that understood, Ms. Weiss?

MS. WEISS:  Understood.

THE COURT:  Okay on plaintiffs' side?

MX. GREEN:  If we could, I assume that the

```
 1                                                     29

 2   people they will be giving us will be, you know, line level

 3   officers and the people we had noticed let's say for the

 4   first three weeks of our schedule or two weeks of our

 5   schedule.

 6           THE COURT:   Let's see what it is when it comes.

 7           MX. GREEN:   Well, fair enough.

 8           THE COURT:   Anything else from the plaintiffs?

 9           MX. GREEN:   No, that is the only housekeeping I

10   have.  Thank you, Judge.

11           THE COURT:   Anything else from defendants?

12           MS. WEISS:   No, Your Honor.

13           THE COURT:   Okay, thank you everyone.  Good bye.

14           MS. WEISS:   Thank you.

15           (Whereupon the matter is adjourned.)

16

17

18

19

20

21

22

23

24

25
```

30

## C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Payne, et al. versus De Blasio, et al., docket #20cv8924, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature _____*Carole Ludwig*_____

Date:  July 7, 2021