

**GEORGIA M. PESTANA**
*Acting Corporation Counsel*

THE CITY OF NEW YORK

LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NEW YORK 10007

**DARA L. WIESS**
*Senior Counsel*
daweiss@law.nyc.gov
Phone: (212) 356-3517
Fax: (212) 356-1148

July 19, 2021

**By ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      In Re:  *New York City Policing During Summer 2020 Demonstrations*,
      No. 20 Civ. 8924 (CM) (GWG)
      This filing is related to all cases

Your Honor:

      I am an attorney in the Office of Georgia M. Pestana, Acting Corporation Counsel for the City of New York, representing defendants in the above-referenced matters. I write in opposition to plaintiffs' motion and proposed order, and to cross move for a protective order limiting plaintiffs to no more than sixty-five (65) depositions total for the consolidated cases.

      I. Defendants are Not Obstructing Anything

      It will surprise no one at this point that plaintiff's account of the past two weeks is both inaccurate and knowingly omits significant information. The most significant omission is the fact that where scheduling issues arose, defendants have made numerous proposals to reschedule depositions, and plaintiffs have either rejected or ignored all proposals. Further, the premise of plaintiffs' letter that insufficient depositions have gone forward. Absent from plaintiffs' account is the fact that, to use plaintiffs' word, "unilaterally" canceled the deposition first witness defendants were prepared to produce on July 8, 2021. Similarly, plaintiff's complaint that depositions remain open pending the production of documents ignores the Court's statements during the July 2, 2021 conference that plaintiffs should not expect to depose a witness more than once. Plaintiffs omit the fact that defendants proposed agreeing to do depositions every Tuesday and Thursday, each week, until the close of discovery. Plaintiffs refused to make such an agreement. At the same time, plaintiffs make unreasonable demands, such as demanding that officers be produced on their regular days off as opposed to days they are working on the grounds that this is the day plaintiff wants them. Plaintiffs omit the fact that within hours of the July 2, 2021 conference, defendants wrote plaintiffs about the number of depositions and asking to confer

about who the appropriate deponents were. This was ignored for almost a week until defendants raised it again, and plaintiffs continued to avoid the topic, which is discussed more fully below. Instead, plaintiffs focus on limited events early in a lengthy process, raise issues the Court previously warned them about, omit relevant events, and come running to the Court to complain. Lastly, plaintiffs' complaints on the lack of progress are premised on another fact that they have been warned by this Court they should not assume, that they can take over two hundred depositions. For these reasons and those that follow, plaintiffs' motion for their proposed order should be denied.

      A) Scheduling Issues

Although plaintiffs complain about the depositions of Officer Jean-Pierre and Detective Mansharamani ending "early," it should be pointed out that Officer Jena-Pierre's deposition was left open and he agreed to return to complete his deposition, and questioning was completed at Detective Mansharamani's deposition before he had to leave for the day. As explained in detail below, Officer Jean-Pierre had to return to his command, and plaintiffs were planning on continuing his deposition on a subsequent day regardless. Detective Mansharamani had to leave by 1:00 pm to take part in an NYPD-related activity, and plaintiffs were informed of this work commitment in advance. Mr. Beck, the attorney for defendants who was defending that deposition attempted to contact several of the attorneys for plaintiffs before he was finally able to speak with an attorney and inform counsel of the conflict. Mr. Beck made two suggestions; that the deposition start earlier in the morning so that it could be completed by 1:00p.m., which seemed possible in light of the fact that Detective Mansharamani is simply a witness, and not a named defendant, or to rescheduled the deposition. Plaintiffs chose to go forward, starting at 9:00 a.m instead of the originally scheduled 10:00 a.m. By 12:20 p.m. no counsel present had any further questions for the witness. Plaintiffs' complaint about Detective Mansharamani's deposition are disingenuous, as they agreed to conduct it knowing it would have to end at a certain time, and in fact, questioning was complete 40 minutes prior to that time.

As to Officer Pjetri, when the depositions were being scheduled, this office was not made aware that she had been called to appear for jury duty on her scheduled deposition date. As non-compliance with a summons for jury service could have resulted in civil or criminal penalties, she was compelled to appear for jury service. As explained to plaintiffs' counsel, defendants believed that the wisest course of action was to hold off on setting a new date for her deposition until after she was released from jury service.

With respect to Officer Montesino, while it is true that there was a scheduling conflict, defendants offered three alternative dates for his deposition, one of them just the day after the originally scheduled date. If none of those three dates were convenient for counsel, additional availability could have been provided. But no attorney for plaintiffs ever advised any attorney for defendants if, or when, they intend to take Officer Montesino's deposition. Instead, they wrote this letter.

B) Officer Jeans-Pierre Did Not Walk Out of a Deposition

Plaintiffs claim that Officer Jeans-Pierre walked out of his deposition and imply that the witness and defense counsel terminated the deposition. At the outset, defendants note that although plaintiffs quote from a "rough transcript," they have not provided a transcript to defendants. After between four and five hours of inquiry, the officer believed he had to return to his command before the end of his tour. At a point when the officer believed he had to leave after an additional thirty minutes, counsel raised the amount of time left. Plaintiffs' counsel wanted to show the officer approximately thirty minutes of body camera footage and next go back over the video with questions. During the course of the deposition, plaintiffs' counsel made repeated complaints that certain documents were not produced and insisted that the deposition would be held open and continued another day. Although defendants object to plaintiffs' practice of conducting depositions with the intention of holding them open, in this situation where the officer did not think he could remain beyond another thirty minutes, counsel agreed to produce the officer to complete the deposition on another day for the remaining as plaintiffs asserted they would. At no time did plaintiffs raise the issue of calling the Court or costs in any exchanges at the deposition. Thus, plaintiffs are now complaining that they must do something they had every intention of doing in the first place.

The plaintiffs cite two cases that are inapplicable here because they involve conduct meant to wholly frustrate the deposition process either by refusing to answer substantive questions or by improper conduct. This is not the situation here. The officer participated in the deposition, but did not think he could remain without returning to his command. Since plaintiffs said they were going to seek to bring the officer back anyway, the witness agreed to come back again.

As counsel from the State of New York recently conceded, plaintiffs are only permitted a collective sixty depositions under the Rules. There is no justification why almost four times that number is warranted in this case. Plaintiffs list numerous superior, executive, and high-level officers and officials as deponents without regard as to whether these individuals have the basis of knowledge relevant to the case. In defendants' July 2, 2021 letter they offered to help identify the people who can best information relevant to plaintiffs' claims, again with no response. This too was ignored. In addition, after the parties agreed with the Court to focus on the officers on the street, plaintiffs serve a lengthy Rule 30(b)(6) notice, which to the extent proper, is likely duplicative of the depositions plaintiffs were seeking. This came on the heels of a discussion with the Court about first focusing on officers involved in the incidents at the street level.

Plaintiffs have tried to avoid any discussion about limiting the number of depositions. We understand, who would like to ruin their own good time? The fact is, however, the number of depositions are patently and impermissibly excessive. From defendants perspective, plaintiffs attempt to continue on the current course is an effort to simply drift through the list of witnesses without the appropriate limitations.

Based on these concerns, defendants request that plaintiff withdraw their current deposition notices. I am aware that my colleagues agreed to a few more depositions than the permitted sixty, and as a result, defendants will agree to 65 depositions. Defendants ask plaintiff

issue new notices for the balance of the sixty depositions they are permitted plus the five we will agree to. If plaintiffs need more, plaintiffs should articulate why each of the additional depositions is necessary under Rule 26 and not objectionable for some other reason.

In addition, once the list of witnesses is limited or narrowed, defendants would be in a position to provide a list of witnesses who should be subject to the *Bellamy* protocol as requested by attorneys from the State of New York.

If we cannot reach an agreement by Friday, July 16, 2021, we intend to move for a protective order. I am hopeful we can reach an agreement that satisfies all parties' interests and concerns.

C) Other Issues With Plaintiffs' Proposed Order

In addition, plaintiffs seek to have ordered dates certain for certain depositions. As an initial matter, three of those dates have passed. Most important, Officers Agro and Hernandez-Carpio were deposed. Moreover, all of the plaintiffs were deposed on time except for one, who was deposed on July 8th. Defendants offered new dates for Officer Montesino, Officer Jeff and Sergeant Thomas which plaintiffs never responded to. Instead, plaintiffs added the proposed dates for Officer Jeff and Sergeant Thomas to the order without confirming with defendants. Plaintiffs have never responded on Officer Montesino. Prior to submitting this proposed order, plaintiffs failed to confer with defendants on any proposal for a continued date for a Officer Jeanpierre's deposition, or for paying costs. That portion of the motion should be denied for that reason alone.

Defendants also objected to the depositions of D.I. Craig Edelman and Lt. Michael Butler. D.I. Edelman is a named defendant in the matter of *Dounya Zayer v. City of New York*, et al., 20-CV-6070 (ARR)(PK), currently pending in the Eastern District of New York. As there is an open, pending IAB investigation into the *Zayer* matter, defendants object to D.I. Edelman being deposed before that investigation is concluded. Additionally, upon information and belief, Lt. Michael Butler may be an eyewitness to that incident. As both officers will likely be deposed in *Zayer* matter, defendants ask that their depositions take place later and in conjunction with the *Zayer* matter. Plaintiff's counsel in *Zayer*, Aymen and Tahanie Abushi, are also involved in a consolidated matter. Therefore, to avoid duplicative testimony and to conserve resources, defendants request that these individuals only be deposed once and the deposition transcripts be used in both cases. As a result, they should not be included in any list of depositions at this time.

Lastly, plaintiffs' request that two dates for ten depositions in a certain time frame should be denied. First, the order appears to permit two depositions of Chief Fausto, which is improper because plaintiff has failed to show a sufficient need for two depositions of this witnesses. More importantly, the order does not require a window for plaintiffs to confirm the deposition, nor the ability of defendants to negotiate the schedule if plaintiffs attempt to select too many depositions in a particular number of days.

II. Plaintiffs Should Be Limited in the Number of Depositions They Can Take

As counsel from the State of New York recently conceded in a conferral by the parties, plaintiffs are only permitted a collective sixty depositions under the Federal Rules of Civil Procedure. Plaintiffs have indicated they are considering deposing almost four times that

amount. There is no justification why over two-hundred depositions are warranted in this case. The parties conferred on a limitation for the number of depositions, but could not reach an agreement.

Rule 30(a)(2)(A) of the Federal Rules of Civil Procedure limits the number of depositions to ten per side. *See* Fed. R. Civ. P. 30(a)(2)(A). The purpose of this rule is to "enable the courts to maintain a tighter rein on the extent of discovery and minimize the potential cost of wide-ranging discovery." *Castro v. City of New York*, 11 Civ. 7856 (DAB)(HBP), 2014 U.S. Dist. LEXIS 60224, at *8 (S.D.N.Y. Apr. 30, 2014) (citation and quotations omitted).

The "mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." *Castro*, 2014 U.S. Dist. LEXIS 60224, at *8 (citation omitted). In determining who should be deposed, counsel should "think long and hard about who they want to depose and [] depose only those who are really important[.]" *In re Weatherford Int'l Sec. Litig.*, 11 Civ. 1646 (LAK) (JCF), 2013 U.S. Dist. LEXIS 153011, at *11 (S.D.N.Y. Oct. 24, 2013) (quotation omitted). The burden of demonstrating relevance is on the party seeking discovery. *Lent v. Signature Truck Sys.*, No. 06-CV-569S (HBS), 2010 U.S. Dist. LEXIS 41733, at *5 (W.D.N.Y. Apr. 26, 2010), citing *Mandell v. Maxon Co.*, No. 06 Civ. 460 (RWS). 2007 U.S. Dist. LEXIS 99238, at *1 (S.D.N.Y. Oct. 15, 2007). The Court "should not freely grant relief from the limits without a showing of need." *S.F. Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010).

"The factors relevant to determining whether a party should be entitled to more than ten depositions are now set forth in Fed.R.Civ.P. 26(b)(2)(C). *Castro*, 2014 U.S. Dist. LEXIS 60224, at *8-9 (S.D.N.Y. Apr. 30, 2014) (citation omitted). These factors include whether the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information; and if the discovery sought is proportional to the needs of the case considering *inter alia* the parties' access to relative information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C).

Plaintiffs are currently seeking to depose fifty-two witnesses in the immediate, and may seek an unknown number of depositions following this initial group. Discovery in this matter will include a variety of materials, including policy documents, videos, interviews, reports, and investigative documents. Thus, the excessive number of depositions will be duplicative and cumulative of other discovery. In the parties' conferral on this issue, plaintiffs asserted that they were unable to make definite decisions about depositions because they are operating on a lack of information in terms of who to depose. In that regard, defendants have made multiple offers to help plaintiffs find the right people, in addition to the fact that plaintiffs have conducted their own investigation into City practices. In response, plaintiffs said defendants should identify who they think should be deposed and plaintiffs will consider it.

The problem with plaintiffs soft approach to this issue is that defendants are attempting to implement a long term plan to complete deposition discovery. To that end, defendants proposed designating Tuesdays and Thursdays each week as deposition days when witnesses could be slotted in. Plaintiffs rejected this proposal based on the possibility that some witness may not be

available on one of those days. Such issues could be addressed on a case by case basis. Further, as noted above, plaintiffs' proposal for a weekly list of proposed dates has its won issues that warrant its rejection.

As the Court noted at the July 2, 2021 conference, how depositions are scheduled going forward is a function of how many depositions plaintiffs will be permitted to take. Plaintiffs bear the burden of demonstrating they need more than the presumptive amount. Even if plaintiffs can overcome the presumption, that does not mean they are entitled to limitless depositions. Further, plaintiffs' incrementalist approach allows for an endless series of depositions, when the burden should be on plaintiffs to exercise planning and forethought for what discovery is needed under Rule 26.

In addition, if the Court imposes a limit, defendants would be in a position to provide a list of witnesses who should be subject to the *Bellamy* protocol as requested recently by attorneys from the State of New York in considering that proposal.

Thank you for your consideration herein.

Respectfully submitted,

*Dara L. Weiss s/*

Dara Weiss
*Senior Counsel*
Special Federal Litigation Division

cc: ALL COUNSEL (via ECF only)