```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In the matter of:                    :
                                             Docket #20cv8924
 IN RE NEW YORK CITY POLICING        :
 DURING SUMMER 2020 DEMONSTRATIONS      New York, New York
                                     : July 20, 2021

------------------------------------: TELEPHONE CONFERENCE

                      PROCEEDINGS BEFORE
             THE HONORABLE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Sow Plaintiffs:      COHEN & GREEN
                         BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New York 11385

For Payne Plaintiffs:    LEGAL AID SOCIETY
                         BY:  COREY STOUGHTON, ESQ.
                         199 Water Street
                         New York, New York 10036

For Sierra Plaintiffs:   LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.
                         BY:  JOSHUA MOSKOVITZ, ESQ.
                         392 Central Avenue, #7803 07307
                         Jersey City, New Jersey 07307

For Wood Plaintiffs:     KAUFMAN LIEB LEBOWITZ & FRICK LLP
                         BY:  DOUGLAS LIEB, ESQ.
                         10 East 40th Street, Suite 3307
                         New York, New York 10016

For Yates Plaintiff:     STOLL, GLICKMAN & BELLINA, LLP
                         BY:  ANDREW STOLL, ESQ.
                         300 Cadman Plaza West, 12th Floor
                         Brooklyn, New York 11201


Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

<u>APPEARANCES (CONTINUED)</u>:


For Plaintiff People          NEW YORK STATE OFFICE OF
of the State of New           THE ATTORNEY GENERAL
York:                         BY:  LILLIAN MARQUEZ, ESQ.
                              28 Liberty Street
                              New York, New York 10005


For Defendants:               NEW YORK CITY LAW DEPARTMENT
                              BY:  DARA WEISS, ESQ.
                              100 Church Street
                              New York, New York 10007


For CCRB:                     CIVILIAN COMPLAINT REVIEW BOARD
                              BY:  KERRY JAMIESON, ESQ.
                                   ASSISTANT GENERAL COUNSEL
                              100 Church Street, Tenth Floor
                              New York, New York 10007

**<u>INDEX</u>**

**<u>E X A M I N A T I O N S</u>**

| **<u>Witness</u>** | **<u>Direct</u>** | **<u>Cross</u>** | **<u>Re-Direct</u>** | **<u>Re-Cross</u>** | **<u>Court</u>** |
|---|---|---|---|---|---|

None

**<u>E X H I B I T S</u>**

| **<u>Exhibit Number</u>** | **<u>Description</u>** | **<u>ID</u>** | **<u>In</u>** | **<u>Voir Dire</u>** |
|---|---|---|---|---|

None

1

```
 1                                               4
 2              THE CLERK:  This is In Re New York City Policing
 3   During Summer 2020 Demonstrations, docket #20cv8924.
 4   Counsel, please state your names and appearances for the
 5   record, starting with plaintiffs.
 6              MR. JOSHUA MOSKOVITZ:  Good evening, Your Honor,
 7   this is Joshua Moskovitz for the Sierra plaintiffs.
 8              MS. COREY STOUGHTON:  And Corey Stoughton for the
 9   Payne plaintiffs.
10              MR. DOUGLAS LIEB:  Douglas Lieb for plaintiff
11   Charles Henry Wood.
12              MX. REMY GREEN:  Remy Green for the Sow
13   plaintiffs.
14              MS. LILLIAN MARQUEZ:  Lillian Marquez for the
15   People.
16              MR. ANDREW STOLL:  Andrew Stoll for Cameron
17   Yates.
18              THE CLERK:  And for defendants.
19              MS. DARA WEISS:  Dara Weiss from the New York
20   City Law Department for the defendants.
21              THE COURT:  Okay, we're here certainly on one
22   request which is docket 193, and then we'll talk about what
23   we can do on docket 197 after that.  I assume, Mr.
24   Moskovitz, you're talking about, you're speaking for the
25   plaintiffs on this one?
```

```
 1                                                   5
 2             MR. MOSKOVITZ:   Yes, Your Honor.  Although I
 3    believe that Lilly Marquez may address the disciplinary
 4    history with you as well.
 5             THE COURT:   Well, I'm pretty clear that I want
 6    one lawyer per issue, and I think I need to make clear it's
 7    really one lawyer per letter.  So if we have to get into
 8    that with someone else, we'll see what happens when we get
 9    there, but in the future, folks, I really have to try to
10    limit it to one attorney per letter, unless there's two
11    very separate issues in one letter.
12             MR. MOSKOVITZ:   That's fine, Your Honor, I'll be
13    happy to address both issues.
14             THE COURT:   Okay.  So I've read your letters,
15    and let me start by just saying I'm not going to find any
16    procedural forfeit on the part of the defendants based upon
17    what they said.  So I'd like to get just to the merits of
18    the requests.  And I guess there's two requests.  One is
19    the open investigation and the other is the disciplinary
20    history.
21             So let me just try to understand so I have a
22    little better context.  I think the parties may certainly
23    understand the case better than I do since they're living
24    it and that they may (indiscernible) realize that I don't
25    have all their background on.  So when you say you're
```

```
1                                                  6
2   looking for open investigations, I assume you mean just
3   investigations relating to the protests at issue in the
4   lawsuits, is that right?
5             MR. MOSKOVITZ:   That's correct, Your Honor.
6             THE COURT:   And do we know how many such
7   investigations there are?
8             MR. MOSKOVITZ:   Well, the information that was
9   provided to us from the CCRB is contained in an email that
10  was attached as exhibit 3 to my letter.  It references 750
11  complaints related to behavior of NYPD officers at the
12  summer protests, and it goes on to describe 75 full
13  investigations and 147 open investigations.
14            THE COURT:   And what about the rest of the
15  complaints, do you know anything about what that status is?
16            MR. MOSKOVITZ:   There's a few other categories
17  that are described in the letter.  It talks about 12 - let
18  me see how to describe it - 12 complaints where the CCRB
19  voted charges and specifications but went on to describe
20  those as open because they are being prosecuted by the
21  administration prosecution unit.  But I don't know the
22  extent or the status of all of the rest of the complaints.
23            THE COURT:   And maybe the City may ultimately
24  have the answers to this, but you said 147 open
25  investigations and 75, what was the term, full
```

```
 1                                                      7
 2  investigation?
 3            MR. MOSKOVITZ:   Yes, that's what the CCRB
 4  general counsel, that's what his email says.
 5            THE COURT:   And do you know if the 75 is a
 6  subset of the 147 or if it's something additional?
 7            MR. MOSKOVITZ:   I do not know.
 8            THE COURT:   Ms. Weiss, do you know?
 9            MS. WEISS:   Well, Your Honor, I do but I have
10  Ms. Kerry Jamieson on the line.  She's the Assistant
11  General Counsel of CCRB, and if you allow her to speak, she
12  will be able to clarify all of these numbers and types of
13  investigations and I mean make it very clear for everybody
14  exactly what all of this is about.
15            THE COURT:   All right.
16            MS. WEISS:   May she speak, Your Honor?
17            THE COURT:   Yes, I mean since she's essentially
18  a fact witness, I think I can make an exception to my
19  normal rule.  So, I'm sorry, what's the name of the person?
20            MS. WEISS:   Kerry Jamieson.
21            THE COURT:   All right, Ms. Jamieson, do you
22  have, do you know the answer to my question?
23            MS. JAMIESON:   Yes, so good afternoon, Your
24  Honor.  Thank you for allowing me to speak.  So yes, the 75
25  full investigations is a subset of the 750 complaints.  And
```

1
2  just to clarify, a full investigation is when the CCRB is
3  able to identify a complainant and speak to that
4  complainant (indiscernible).  So once the CCRB is able to
5  do that, that's a full investigation.
6           THE COURT:   Actually, my question was not
7  whether the 75 was a subset of the 750.  It was whether the
8  75 was a subset of the 147 open investigations.  Do you
9  know the answer to that?
10          MS. JAMIESON:   It may be, some of them may be.
11 So investigation may be considered a full investigation but
12 it's not closed.  So there may be some overlap but it's not
13 necessarily a full subset of the 147, if that makes sense.
14          THE COURT:   Yeah, I understand.  So if there's
15 147 open, does that mean there's 600 something closed?
16          MS. JAMIESON:   Well, they're closed and referred
17 because the CCRB will only investigate complaint within its
18 jurisdiction.  So there may be (indiscernible) 750 there
19 may be duplicates and there also may be (indiscernible)
20 were not within CCRB's jurisdiction.
21          Your Honor, this is Ms. Weiss.  If I may.  There
22 were – CCRB did not conduct 750 or so investigations.  It
23 was closer to 330 some odd if I'm not mistaken.  I don't
24 have the exact number in front of me.  And as Ms. Jamieson
25 said, some of them are duplicates.  It could've been ten or

9

1

2 twenty people making complaints about the same incident,

3 and that would result in one investigation.

4        So out of these 330 some odd investigations that

5 CCRB did, 75 of them were fully investigations.  Others

6 were things like they couldn't identify officers or the

7 complainant was uncooperative and they couldn't complete

8 the investigations.  But there are currently about 120 some

9 odd investigations that are still open, and there are 193

10 which are closed.  And we have advised plaintiffs' counsel

11 on several occasions that we have and are providing them

12 with the underlying files of the 193 closed CCRB

13 investigations.  It's the 129 or so that are still open

14 that I believe is at the heart of this dispute.

15        THE COURT:   Is that right, Mr. Moskovitz, you

16 want those 129 open?

17        MR. MOSKOVITZ:   That's correct, Your Honor.

18        THE COURT:   Okay.  All right, so on that issue

19 I'm trying to understand the City's objection.  It doesn't

20 seem to be – I understand the burdensomeness objection that

21 you don't want to have to continually provide updates and

22 so forth.  Let's just put that aside for a moment, and we

23 can talk about what to do about that, assuming I would be

24 ordering production.  Apart from that, what is the

25 objection to the open investigation?  Because it sounds

1

2  like the moment they become closed, you're willing to

3  produce them, is that right?

4       MS. WEISS:   That is essentially right.  The

5  biggest part of our objection is the overly burdensome

6  part, and Ms. Jamieson could speak a little more to that

7  because she understands the burden more than I do.  So she

8  can speak to it more accurately.

9       But besides that, as Your Honor is well aware,

10  anyone could make a complaint to CCRB, and it could amount

11  to nothing.  It could be a complaint where then a, you

12  know, a person calls or uses the website to call in, makes

13  a completely false complaint, and then sort of drops off

14  the face of the earth, and CCRB is still investigating,

15  and, you know, a completely false complaint could be made

16  against an officer.  That's still on paper.  CCRB is still

17  investigating.  The complainant doesn't respond to phone

18  calls or communications.  And it's still a complaint, a

19  false complaint out there against an officer.  It hasn't

20  been proven yet, but it also hasn't been disproven yet.  So

21  it could prejudice an officer.

22       Complaints change over time.  Perhaps there's a

23  complaint against an officer and it turns out that it

24  really wasn't that officer at all, and as the investigation

25  goes on, you know, facts are found and it could completely

11

change.  So what plaintiffs would get now, if we were to

produce these still open investigations to them, could be,

you know, could change 180 degrees over time.  So there's

no guarantee, and it's very likely that the information

they'd be getting now is inaccurate.  It's not accurate

until the investigation is complete.

          So we're really reluctant to give over

investigations that we're really unsure of the accuracy

about and the CCRB investigators haven't had a chance to

finish, you know, digging and investigating and doing all

they need to do to find out as much as they can about the

truth of the investigations.  And we don't see what

plaintiffs would be able to do with these not, you know,

knowing that, we don't know what they're about.

          Granted there would likely be NYPD documents in

these investigative files because that's what make up a big

part of these files, but they're getting them anyway

through the production that the City is making.  So there's

not going to be any NYPD documents in these CCRB open

investigations that plaintiffs are not otherwise getting

through the City's productions.

          THE COURT:  Well, I guess I should hear from Ms.

Jamieson about burden.  Tell me what it takes to, what

these files look like and what it takes to duplicate them.

12

1   I assume things are electronic these days, and no one's

2   sitting over a copier.

3          MS. JAMIESON:   Yes, Your Honor, we do have an

4   electronic case (indiscernible) system.  However, a lot of

5   the documents, and in particular the interviews that are

6   conducted, they have to be manually uploaded by the

7   investigator to the case files.  So in order for us to do a

8   production, we have to actually, there's no automatic way

9   to go in and pull that attachment out.  A person has to go

10  in and open up each file to determine what it is and

11  whether or not we're turning it out.

12         And just to give the Court a sense of the burden,

13  so as Ms. Weiss mentioned a little bit ago, the CCRB has

14  turned over to the law department about 193 closed cases,

15  and it took two attorneys working full time four days just

16  to go through those closed case files to get them prepared

17  to send them over to the law department.  So just that will

18  hopefully give the Court a sense of the amount of time it

19  takes for two people to do the work of going through these

20  case files, and it would be infinitely more difficult if we

21  had to do that for all of the open cases and on an ongoing

22  basis because we have to go into each individual case.

23         THE COURT:   Just so I understand the burden.

24  Let's say I were to tell you you only had to do it once,

13

the open cases, but we had to do it while they're open.  Is

there any difference between doing it for an open case once

and doing it for a closed case?

MS. JAMIESON:  Yes.  So in most --

THE COURT:  Why?

MS. JAMIESON:  -- instances, so open cases are

in different stages.  So there may be, there are some cases

where they may still be trying to identify an officer so

they haven't conducted interviews yet.  So if you're to do

it once for an open case, there's a lot of evidence that

may not exist yet.  Furthermore --

THE COURT:  I didn't follow you, wait.  I'm

sorry, I lost you.

MS. JAMIESON:  I'm sorry.

THE COURT:  I understand there may not be

something in there, but that's not a burden to you if it's

not in there.

MS. JAMIESON:  Right, but then we'd have to do

it again when the case is closed.  We'd have to go back --

THE COURT:  That wasn't my question.  My

question was if I only had you do it once, is there any

difference in the burden from doing an open case than doing

a closed case?

MS. JAMIESON:  If we're only doing it once,

```
 1                                                  14
 2   regardless of whether it's open or closed, then no.
 3              THE COURT:   Okay, just wanted to check that.
 4              MS. JAMIESON:   (indiscernible) of it is a
 5   separate question.
 6              THE COURT:   Say it again?
 7              MS. JAMIESON:   I said the utility of that might
 8   be a separate question, but the burden --
 9              THE COURT:   Right, no, I'm just asking you about
10   burden.  I believe Ms. Weiss spoke at length about utility.
11   Okay, Mr. Moskovitz, I'll hear from you.
12              MR. MOSKOVITZ:   Thank you, Your Honor.  I mean
13   obviously the plaintiffs have a diametrically opposed view
14   from the City on the utility of the evidence that's
15   contained in the CCRB files.  Indeed, this is core evidence
16   in any case of this sort, and particularly in these cases.
17   We're talking about audio recordings of interviews with
18   officers, with witnesses; we're talking about videos of the
19   incident; we're talking about documents and reports that
20   are recordings, you know, and reports completed by officers
21   who are involved in these incidents.
22              Whether or not the City believes that complaints
23   were false or later reaching the conclusion that a
24   complaint is unsubstantiated or unfounded, the courts in
25   this circuit almost always order even unfounded or
```

unsubstantiated CCRB files to be produced.  So the City's own analysis about the veracity of a complaint should have no bearing on whether or not those complaints are produced. I would think all of this stuff should be produced.

In terms of the burden, I don't understand any distinction between open and closed cases, and it doesn't sound like there's any difference in the burden to produce open or closed cases.  I will note that while there might be some incremental additional burden for the CCRB to go back after a case is closed and produce any additional information or records that have been generated in the course of its investigation for a file that was formally open and which they produced, we still think that information would be highly relevant to these cases and should be done.  Every party has an obligation to supplement its discovery productions when additional information is generated or discovered.  So although there is some burden there, I don't believe it's undue.

I'd like to just maybe note for a second, and perhaps we can come back to this, I've got some questions about the numbers and what it is that the CCRB has and what they're able to produce.  I guess I still don't quite understand this difference between the 750 complaints, the 75 full investigations, and 330 odd investigations,

16

although it wasn't clear to me if those were full or
complete or something else.  At the end of the day, what
we're looking for is any information that the City has
collected through the CCRB about complaints having to do
with the events in this case, in these cases.

THE COURT:  I had put it together in my mind,
and maybe I did it wrong, I assumed that of the 750
complaints they actually took it to the next stage of
investigation of 330 cases, of which about 200 are closed
and 129 are open.  Ms. Jamieson, is that correct or am I
wrong on that?

MS. JAMIESON:  Yes, that's basically, the
numbers are roughly correct.

THE COURT:  And how does this - and of those
investigations, you call, of the 330 you call 75 of them
full for some reason, is that it?

MS. JAMIESON:  Yes, the full investigations, as
I explained what those were before when we're actually able
to interview a complainant.

THE COURT:  Mr. Moskovitz, does that answer your
question?

MR. MOSKOVITZ:  I think it does, and it leads me
to say that we want the complaints from all 750 complaints
having to do with these protests.

```
 1                                                    17
 2              THE COURT:   Okay, so now we have a new issue
 3   which I don't know that the City can respond to it.   It
 4   sounds like the only thing that was brought to me was about
 5   investigations.   So is the City prepared to address the
 6   complaint issue?
 7              MS. WEISS:   I am not.   I would have to speak
 8   with the CCRB to find out exactly what are done with those
 9   complaints.   I don't know if they've put together an
10   investigation or something, so I'm not prepared to answer
11   that right now.
12              THE COURT:   Okay, well, I'm not going to deal
13   with the complaint right now.   I certainly see the
14   relevance.   I don't know what the burden is, I don't know
15   if there's other problems, but we'll put that aside, and
16   you should have a discussion, Mr. Moskovitz, with Ms. Weiss
17   about that as soon as you can.   All right?
18              MR. MOSKOVITZ:   Yes, Your Honor.
19              THE COURT:   All right, now, back to these
20   investigations.   So I mean it's — I certainly am not going
21   to have the City continually updating the open
22   investigations.   I reject the notion that the open
23   investigations shouldn't be produced simply on the theory
24   they aren't complete.   You know, the CCRB's judgment about
25   veracity or anything else is not critical to what the
```

18

plaintiffs need.  They need basic information consisting of witness statements and things of that sort.  So whether those people turn out to be liars or not that's not something that should be judged at this stage of the proceeding, and, you know, the City produces the closed versions, and perhaps those closed versions give a fuller picture, but the City knows what they're getting when they're getting — I'm sorry, the plaintiffs know what they're getting when they're getting an open investigation.  So I'm rejecting the City's argument on that point.

I have some sympathy for the burden argument.  And, you know, it is, I appreciate, Ms. Jamieson, the efforts that your attorneys have to make to put together these files.  So certainly I would require at least one production of what you have in the open.  The only question is whether I would require two.  In other words, whether I would require it, you know, now and then in addition when it was completed.  I'm not sure I have an answer to the second question because it may depend on certain things.  I might put the plaintiffs to the burden of saying why they need more information on an open investigation.  It may be that some of them are obviously irrelevant or not going anywhere, and they can tell that from what they have, it may be near completion.

```
 1                                                19
 2              So my question then, Mr. Moskovitz, is - let me
 3   back up for a second.  Is there any information on the
 4   open, on the 129 open investigation that is readily
 5   available like the officer involved or the protest or the
 6   date or things like that?  Is there like some printout, Ms.
 7   Jamieson, you can easily do that?
 8              MS. JAMIESON:   So we do have a complaint report.
 9   So when a complainant contacts the CCRB and we have various
10   methods in which that's done, but there is something
11   created as a result of the complainant contacting the CCRB
12   with a complaint, if that's what you're asking about.
13              THE COURT:   Here's what I was thinking.  I was
14   thinking that if there's a particular officer involved, is
15   there a way to tell that easily, like can you do a list of
16   the 129 open complaints showing the officer involved?
17              MS. JAMIESON:   I believe we could do that.  So
18   if you're asking for in those 129 complaints who we
19   currently have as subject officers?
20              THE COURT:   Yes.
21              MS. JAMIESON:   With the understanding that there
22   may be some, some of those complaints that there's no
23   officer identified.
24              THE COURT:   Correct, I would understand that.
25              MS. JAMIESON:   I believe that we can do that.  I
```

20

1

2  will doublecheck with, you know, the people who handle the

3  more technical side of things, but I do believe that that's

4  something we can do.

5        THE COURT:   Okay, so here's what I'm prepared to

6  order.  You should produce that list.  Mr. Moskovitz, I'm

7  going to order that the open complaints be produced.  I'm

8  not guaranteeing you're going to get a second production of

9  them.  So if you want to wait — I want to see if there's

10  some showing either you or the City can make that it would

11  be a waste of time or would be necessary to get a second

12  production of the open investigation once it closed.

13        So I was thinking — I'm a little bit thinking out

14  loud because I got all this new information.  I was

15  thinking that if you got a list of the open complaints with

16  the officers involved, you can say, you know what, I'm

17  about to depose this officer, therefore, I want that

18  complaint right now.  For other complaints you might say,

19  you know what, I can wait on that.  I'll wait till it's

20  closed, I'll wait till it's farther along.  Is that going

21  to be of some utility to you?

22        MR. MOSKOVITZ:   Your Honor, I have a slightly

23  different suggestion which is if all of the open files are

24  produced, we'll have more information available to us to

25  analyze those files and likely determine later whether

1
2  there's any that we don't think we need a subsequent
3  production when they're closed, and we'll probably have a
4  better sense of any that we think are particularly
5  necessary for a subsequent production.  I mean, so, for
6  instance, the email that was provided to us from the CCRB
7  general counsel dated June 28 says that 38 of the open
8  investigations are awaiting member of service interviews.
9  And so if we get open files and they have interviews of
10 officers, that might be a rather complete file, for
11 instance, versus other files that we realize that there's
12 going to be a significant amount of investigation and fact
13 gathering that happens after the file was produced to us,
14 we might be able to narrow our request for the subsequent
15 closed files based on our review of the full open file that
16 we receive.
17         THE COURT:   Okay, so it sounds like you'd rather
18 have them all now.
19         MR. MOSKOVITZ:   Yes.
20         THE COURT:   Okay.  I'm going to order production
21 of them all now with no promise that there'll be a second
22 production once it's closed.  I'm saying that based upon
23 the burden that's involved.  But I'm open to the plaintiffs
24 saying that there should be a second production once it's
25 closed in particular cases, and I'm open to the City saying

22

why it would be burdensome in those cases.  So any
questions about the ruling?  First, Ms. Weiss, any
questions?

MS. WEISS:  Yes, since this is a burden to the
Civil Complaint Review Board, we would ask that they have
until a date past July 31 to get them to our office and
give us a chance to review them and get them to plaintiff
since we all know that July 31 is the deadline for document
discovery.  We would request a date past that to get these
documents to give CCRB a little extra time to get them
together to maybe ease the burden on them a bit.

THE COURT:  Well, Ms. Weiss, what I heard from
Ms. Jamieson was that it was eight attorneys' days to do
190 something closed files.  Since we're talking, you know,
about 60 percent of that, so I think we're looking at more
like five attorneys' days, I think you have to be able to
find that on a sooner basis.  First of all, it's hard to
believe that there'd be much to review a second time once
they produced it.  When they did the 199 files, what did
you have to do to review it?

MS. WEISS:  We had to go through and are
continuing to go through all of them.  It's our
responsibility as the attorneys for the City to not produce
any documents without looking at them first.  So grant it

1
2  there is, you know, they are attorneys of course and they

3  are reviewing them, but we have Rule 26 obligations, our

4  names are on the docket in this case, and we've got to look

5  through them.

6          THE COURT:   Ms. Jamieson is not checking for

7  privilege?

8          MS. JAMIESON:   I'm sorry, Your Honor, I didn't

9  hear the last part of what you said.

10         THE COURT:   It was actually a question for Ms.

11  Weiss.  Even though it's about you, Ms. Jamieson, I'd like

12  to have the answer.  Ms. Jamieson is not checking for

13  privilege?

14         MS. WEISS:   I do not know what Ms. Jamieson is

15  doing.  I don't think that she is one of the attorneys who

16  is getting the documents and getting them over to our

17  office.

18         THE COURT:   I'm sorry, I (indiscernible).

19         MS. WEISS:   I'm not sure --

20         THE COURT:   I would think that CCRB, since it

21  has attorneys, would be checking for privilege when it does

22  this review.  It's not --

23         MS. WEISS:   I would imagine they are.

24         THE COURT:   So it's hard to see what else you

25  have to do if the privilege review is being done.

1                                                                    24

2              MS. WEISS:   We still feel that we have an

3    obligation to look at them.   I mean the attorneys at the

4    CCRB have other cases and other things they need to do

5    besides this, so, yes, even if it's five attorney days and

6    there is more than that left until the discovery deadline,

7    I don't know that they can drop all of their other

8    obligations to do this.

9              THE COURT:   All right, I'm going to give you a

10   production date of August 13 for all the open

11   investigations.

12             MS. WEISS:   Thank you.

13             THE COURT:   Okay, Mr. Moskovitz, we dealt with

14   the open investigations now?

15             MR. MOSKOVITZ:   Yes, Your Honor, and, you know,

16   I'll speak with Ms. Weiss after the conference about

17   conferring with regards to, if I understand and my math is

18   right, there's about 420 complaints that aren't encompassed

19   by the 330 that we just covered.   So I guess we'll confer

20   about documents that are available from CCRB and any

21   information that we can get about those complaints.

22             THE COURT:   Okay.   All right, now we have the

23   complaint or disciplinary history.   Mr. Moskovitz, if you

24   want to turn it entirely over to another attorney, I'm

25   willing to do that.   The attorney has to then deal with

1

2  everything I ask on that.  Is it going to be you or the

3  other attorney?

4          MR. MOSKOVITZ:  No, that's fine, Your Honor,

5  I'll continue speaking about this issue.

6          THE COURT:  All right.  Okay, so I'm trying to

7  understand what officers we're talking about who are not

8  defendants who you're seeing disciplinary history for.

9          MR. MOSKOVITZ:  So, Your Honor, if I could say

10  at the outset of this issue, the City and the plaintiffs

11  have not had the opportunity to confer about the scope of

12  which officers' disciplinary histories would be

13  proportional or would not be burdensome, would be agreeable

14  amongst the parties.  And the reason is because the City

15  has given so far only a blanket objection to producing

16  disciplinary histories for any non-named defendant

17  officers.  So this has a tremendous impact, for instance,

18  on the Attorney General's case where there are no named

19  defendant officers and yet their case involves a

20  substantial Monell claim with regards to the City's failure

21  to discipline officers, and Judge McMahon cited those

22  specific allegations in sustaining the Monell claims in

23  these various cases.

24          And so I don't believe the issue is particularly

25  keyed up for the Court today to address which specific

1

2  officers' disciplinary histories are at issue here.  We

3  sort of need to get past the first logjam of does the City

4  need to produce disciplinary histories for any officers who

5  aren't named defendants.

6            THE COURT:  Oh, okay.  So we're more in a

7  general level as to the principle of whether disciplinary

8  history could be relevant, that's where you think the

9  disagreement is?

10           MR. MOSKOVITZ:  That is the only issue that we

11  have come to impasse as a preliminary matter.  The City's

12  taken the position that officers who are not named as

13  defendants in cases should not have their disciplinary

14  histories disclosed at all.

15           THE COURT:  Okay, because the way I read it, the

16  City had its own characterization of this, as you're

17  seeking history for any and all officers ever in a CCRB

18  investigation, whatever capacity, whether the subject or

19  the witness and so forth and so forth.  So that doesn't

20  sound like that's really the issue.  It sounds like the

21  issue from your point of view is is it ever going to be

22  relevant an officer's history, which the City has obviously

23  conceded for the named defendants.  I'm not really sure

24  what we're arguing about.

25           I mean obviously disciplinary – one of your

1                                                                27

2    claims is, and as upheld by Judge McMahon, was that one of

3    the aspects of deliberate indifference being alleged is

4    that the City was not disciplining officers and, therefore,

5    maybe with respect to protests or not, I'm not sure, but it

6    resulted in the officers behaving in a certain way in terms

7    of policing the protests that might not have happened had

8    the discipline process been performed in the way plaintiffs

9    think it should have been performed.

10            So if you read Judge McMahon's decision, it seems

11   obvious that there's relevance to the history.  You seem to

12   recognize that.  Do you think we can make any headway today

13   as to, I mean if you're taking the position that it's only

14   going to be relevant for an actual named defendant, I'm

15   certainly rejecting that.  I guess I'll hear from you if

16   that's truly your position.  Is that truly your position?

17            MS. WEISS:   Well, I guess it's hard for the

18   defendants to state their positions because I guess we

19   don't know the extent of what plaintiffs are looking for.

20   But as we stated in our letter, disciplinary histories are

21   public.  They're on City websites, they're on CCRB

22   websites, they're on private websites.  Plaintiffs or

23   anybody can look and see what's there.  And as I think I

24   put in my letter, if they take a look and see something

25   that they believe is relevant with respect to an officer

1

2  who is a defendant or a witness or someone who's in charge

3  or something, you know, at that point we can discuss

4  perhaps giving over that officer's disciplinary history.

5          But from what we understand, what they want is so

6  broad that we don't even know where to get started.  You

7  know, if an officer, you know, lost his memo book 12 years

8  ago, how does that become, you know, an officer who

9  happened to, you know, be standing there at a protest and

10 is shown on someone's body cam footage and they're able,

11 the plaintiffs are able to identify that officer by his

12 badge number which is shown in the footage.  I think that

13 Mr. Moskovitz is right that maybe this isn't quite ripe for

14 this conference because we're not really sure what

15 plaintiffs are looking for.

16          I don't think that that was ever, you know, we're

17 not opposed to perhaps providing some relevant disciplinary

18 histories, but I think perhaps the first step for

19 plaintiffs would be to look at all the public websites for

20 officers that they are interested in and go from there and

21 then come back and speak to us about it, and if they see

22 something on there that looks like it might be relevant, we

23 can look further into that.

24          MR. MOSKOVITZ:   Your Honor, if I could respond

25 to that.

```
 1                                                          29
 2              THE COURT:   Well, I mean I realize now that I
 3   re-read the letters is I don't even know what discovery
 4   request is at issue here.  Are there specific requests, Mr.
 5   Moskovitz, that we're trying to address here?
 6              MR. MOSKOVITZ:   It's discovery request, document
 7   request 16A from the plaintiffs.
 8              THE COURT:   Okay, if it's quoted in your letter,
 9   I'll find it easily.  If not, you're going to have to read
10   it to me.
11              MR. MOSKOVITZ:   I don't believe it's quoted in
12   our letter, and I'll read to you – it's tied to
13   interrogatories where we ask for the identities of officers
14   who had received complaints about their conduct at
15   protests.  So the way that the document requests reads, and
16   this is on page 25 of exhibit 2, our letter.  For each of
17   those officers identified in interrogatories 8 and 9, all
18   personnel related records in the possession of the NYPD or
19   the City of New York, including, but not limited to – it's
20   paragraph A, records reflecting the officers' histories at
21   the CCRB and IAB investigations, as well as the underlying
22   records, but we're not at that point of the underlying
23   records.
24              THE COURT:   Okay, but the group we're talking
25   about is, what, officers who had complaints?  Say it again.
```

```
 1                                                      30
 2              MR. MOSKOVITZ:   Yes, let me go back to
 3    interrogatories 8 and 9 so I can give you - (pause) -
 4    sorry, just one second, Your Honor.
 5              THE COURT:   Take your time.
 6              MR. MOSKOVITZ:   Okay, so interrogatory, so the
 7    request encompassed any of the officers identified in
 8    interrogatory 8 which is each and every officer associated
 9    with or otherwise involved in the circumstances in the
10    various complaints in these cases.
11              THE COURT:   Okay, those are the names
12    defendants.  I don't have to worry about those people I
13    assume, or they're not the named defendants?
14              MR. MOSKOVITZ:   I apologize, just one second.
15    We have some cross-referenced discovery requests, so it
16    takes a little bit of work for me to --
17              THE COURT:   Take your time.
18              MR. MOSKOVITZ:   -- on the fly.
19              THE COURT:   I'm not in a rush.
20              MR. MOSKOVITZ:   So interrogatory 7 and 8
21    actually work together.  So in interrogatory 7 we ask for,
22    and this sort of dovetails with our earlier discussion
23    about the CCRB complaint.  So interrogatory 7 addressed the
24    identities of any individual who had submitted a complaint
25    to the CCRB having to do with any of the summer protests.
```

```
 1                                            31
 2              THE COURT:   Okay, but that's the complainants.
 3              MR. MOSKOVITZ:   Right.  And then interrogatory 8
 4   asks for the identities of any of the officers involved and
 5   the factual circumstances of those complaints.
 6              THE COURT:   Okay, and are we suing the CCRB as
 7   the repository of such complaints or are there other places
 8   to complain?
 9              MR. MOSKOVITZ:   We did identify in the
10   interrogatory, and this is number 7, CCRB, DOI, the City
11   Law Department, but it was a not limited to list.  So I
12   think fairly the NYPD, CCRB, DOI, the New York City Law
13   Department would encompass the vast majority of what we're
14   looking for.
15              THE COURT:   So I mean I think, and have you
16   gotten an answer as to who these people are?
17              MR. MOSKOVITZ:   No, Your Honor.
18              THE COURT:   Okay.  So at some point – let me
19   just think big picture here.  I don't know that I need to
20   make a ruling on this yet because I don't think it's been
21   sufficiently fleshed out.  But for me the big picture is
22   there's going to be a set of officers who certainly are not
23   necessarily the named defendants who will be accused of
24   behaving improperly at the protests, presumably either
25   excessive force or false arrest, something of that nature.
```

And those will be the officers whom the plaintiffs will

want to use as their set of people about whom they will

make arguments that they were not properly trained, and,

therefore, bad things that they're accused of ensued.

So for those – when that developed, for those

people, certainly their disciplinary history with respect

to, you know, false arrests or excessive force are going to

be relevant, not losing a memo book or having taken an

improper vacation or something like sick leave or something

like that.  That's my big picture.  I don't know if you

need anymore for me right now.  Mr. Moskovitz, do you think

that takes us far enough for today?

MR. MOSKOVITZ:   I certainly think that moves the

ball forward, yes, Your Honor, and the big picture issue

that we think that resolves the dispute about is named

defendants versus non-named defendants.  There's one small

additional point that I think would be greatly helpful,

particularly in the next few days and in the next week,

which is we have depositions lined up, in fact, we've had

depositions for the last week where we don't even have the

disciplinary histories for those officers.  And so it would

be greatly helpful in achieving what the City wants to

achieve which is having these depositions go forward and be

completed, which we've been unable to do since we don't

1                                                          33

2   have all of the documents available to us before those

3   depositions.

4           So if we could start on a rolling basis receiving

5   from the City, and at this point I'm only talking about the

6   notice (indiscernible) issues to discuss about depositions.

7   But at this point in regards to the complaint histories, if

8   we could have those produced in advance of the depositions,

9   that would certainly move things forward.

10          THE COURT:   These are officers who are accused

11  of excessive force or false arrest?

12          MR. MOSKOVITZ:   Including named defendants in

13  the various cases.

14          THE COURT:   Who may not be accused of it, who

15  may be higher up people?

16          MR. MOSKOVITZ:   Right, but so far the only

17  depositions that we've been taking are of line officers.

18          THE COURT:   Who are accused of false arrest or

19  excessive force?

20          MR. MOSKOVITZ:   Yes, Your Honor, being involved

21  in the protest events of either using excessive force on

22  the plaintiffs or engaging in the arrests of the

23  plaintiffs, right.

24          THE COURT:   Okay.  So, Ms. Weiss, it seems to me

25  that the disciplinary history of such officer, I mean I've

```
 1                                                      34
 2   already ruled, as have many other courts in similar
 3   circumstances, that when you have an officer accused of
 4   false arrest, excessive force, discipline for that conduct
 5   is something that should be produced.  So --
 6              MS. WEISS:   Yes.  We --
 7              THE COURT:   That needs to be produced, and you
 8   should be producing it for line officers.  I assume that's
 9   not overly burdensome --
10              MS. WEISS:   Yes, Your Honor, we --
11              THE COURT:   -- to at least give a list of the
12   incidents of that type.
13              MS. WEISS:   We do have those documents, and we
14   are producing them and we will, we're trying to produce
15   them in a batch as plaintiffs had originally requested, but
16   to the extent that we can't get them that batch out prior
17   to each deposition, we'll make sure to get that officer's
18   disciplinary histories prior to that deposition.  We can
19   certainly do that.  And I --
20              THE COURT:   I didn't understand what you just
21   said.  First, you told me that you suggested you wouldn't
22   be able to get it out, then you said you would be able to
23   get it out, but maybe you were talking about two different
24   things.
25              MS. WEISS:   What I was trying to say, I
```

apologize, what I was trying to say was that we have the

disciplinary histories of the named police officers who are

currently being deposed.  Plaintiffs had originally asked

for all productions that we would not produce documents

piecemeal, that we produce them in large batches.  So we

were hoping to get out all of the disciplinary documents in

a large batch.  Clearly, it's not going to get out prior to

these depositions which are occurring, you know, as soon as

tomorrow.  So we will produce them prior to the depositions

just for that officer rather than in the large batch to

ensure that plaintiff's counsel has them prior to the

depositions of the officers.

THE COURT:  Yes, that's critical obviously.  I

think it's so obvious, I don't know it would be questioned.

If they're deposing an officer, they should have all the

documents relating to that officer or that arrest,

including the disciplinary history.

Okay, are we done, Mr. Moskovitz, with your

application?

MR. MOSKOVITZ:  Yes, Your Honor.

THE COURT:  All right, Ms. Weiss, anything else

on Mr. Moskovitz's application?

MS. WEISS:  No, Your Honor.  Just actually to go

back slightly on the disciplinary histories of the officers

36

against whom complaints were made for these demonstrations.
I think once the CCRB records are produced, then that will
make that universe of officers much clearer, and we can
start at that point to talk about that and the histories of
those officers once we know who they are, which is, you
know, coming very soon.

THE COURT:  Frankly, I would've thought that the
CCRB file already has the disciplinary history.  Ms.
Jamieson, is that, when you did all those closed files, the
193 closed files, did they have disciplinary history or not
or only sometimes?

MS. JAMIESON:  I'm not sure if they do, but if I
can doublecheck.

THE COURT:  No, you don't have to.  I was just –
you don't have to check.  We'll find out soon enough.  And
plaintiffs already have it somewhere, someone knows the
answer to that.

Okay, let's move on then.

MR. MOSKOVITZ:  Your Honor, if I might just for
one second.  I hate to muddy waters that seems clear but I
just want to clarify one aspect.  The disciplinary
histories we're talking about here at the very least
encompass the CCRB histories and the central personnel
index, indices, the CPI which is a history that's

```
1                                              37
2  referenced specifically in this court's local rule 8310.  I
3  just want to make sure we're at least covering those, and
4  if not, also the IAB resume.  Those are the three standard
5  disciplinary histories that are turned over in cases like
6  this.
7            THE COURT:  Ms. Weiss.
8            MS. WEISS:  Yes, that's right.
9            THE COURT:  Okay, anything else, Mr. Moskovitz?
10           MR. MOSKOVITZ:  No, Your Honor, thank you.
11           THE COURT:  All right, Mr. Lieb, you're dealing
12 with the depositions, is that right?
13           MR. LIEB:  Yes, Your Honor.
14           THE COURT:  On the big picture on this, I don't
15 think we're going to solve the total deposition issue
16 because the plaintiffs did not have a chance to respond to
17 this letter which, you know, is addressing the issue of the
18 total number.  So I don't want to, first of all, I don't
19 think there's been a serious negotiation about this.  So
20 that needs to happen as soon as possible about the total
21 number and dates and whether there should be, you know, I'm
22 not quite sure what the defendant's theory is on two days a
23 week given that there's only about 19 or 20 weeks between
24 now and my December 5 presumptive cutoff date, though I'm
25 allowing for a little bit of spillage after that.  So maybe
```

38

they're assuming doubletracking on those Tuesdays and
Thursdays.  But even under their view, that only gives you
about 40 days.

       So the parties need to have a serious discussion
about the total number, and people need to present, you
know, arguments in a more serious and thought-through way.
Some of this, you know, the City's claiming burden.  Some
of this may have to do with their resources and they may
have to be more forthcoming about that and how they're
staffing the case and what the available pool of people to
staff it with is.  They have to talk about why there can't
be doubletracking if they're trying to limit it to two
days.  You should try to figure out why there shouldn't be
at least three days.  I would've thought Tuesday,
Wednesday, Thursday would be a better way to think about
it.

       We should be talking about whether some
depositions should be limited to three and a half hours.  I
would've thought that might've been something for some of
the line officers but maybe not and maybe it's true of
other people that the plaintiffs expect to depose.  But
we're nowhere near me being able to rule on the total
number of depositions yet.

       So let's talk about the issues that were actually

1
2   raised by the plaintiffs in their letter.  It's a little
3   bit hard for me to start dealing with minutiae of
4   scheduling depositions and whether someone improperly left
5   early, you know, in terms of the request for costs, let's
6   save requests for costs for the end of the deposition
7   period.  You can accumulate any claims like this.  I don't
8   want to start spending time on that now.

9        The City, you know, made certain commitments to
10  producing deposition, deponents in the very short term.
11  Some things are going to be out of their control, I
12  understand that.  I'm willing to accept that they want to
13  schedule depositions at a time when the officers are on
14  duty, but that means they have to have a much better
15  understanding of what those dates are and doing the
16  scheduling and not being surprised by officers' schedules.
17  And they should have backup people if necessary so that
18  deposition dates aren't wasted.  Or at least, you know,
19  needs to be scheduling multiple depositions during the week
20  so that if something gets cancelled, there isn't a loss of
21  time.

22        So, Mr. Lieb, if you have any ideas about exactly
23  how to do this, I'm not really prepared to sign your order
24  as it is, but maybe I can do something to take you along
25  the direction of where you need to go.  If you have any

1                                                    40

2   ideas, tell me.

3              MR. LIEB:    Understood, Your Honor.  I think, you

4   know, as Your Honor just identified, the real crux of the

5   issue that we're presenting in our application is the

6   City's non-compliance, which is really just not the

7   commitment that it made but the directive that the Court

8   gave it to provide, you know, ten deponents by July 19 and

9   then a second traunch thereafter.  Now, we've gotten

10  through parts of four depositions, one of which is the one

11  where the deponent walked out at 1 o'clock, one of which

12  was completed, and two of which were not completed because

13  certain very basic documents like the deponent parties'

14  activity logs or body worn camera footage had not been

15  produced in advance of the deposition.

16             So I think int terms of what the Court could do,

17  you know, our proposal really had two parts.  I think the

18  first is just to order in very clear terms that the

19  depositions that we believe to be prospectively on calendar

20  which are basically the five starting with Sergeant Quigley

21  (phonetic) tomorrow with the exception of the continuation

22  of Officer Jean Pierre which that is the one that has not

23  expressly been confirmed, is to order that those proceed so

24  that there's absolutely no ambiguity that those are

25  happening.  And, second of all, to basically require that

the City at regular intervals provide us with real dates,

not dates on which people are on vacation or have jury

duty, but real dates, two real dates for any number of

officers that are one to four weeks out.  The plaintiffs

will confer in short order and confirm those dates.

So I fully take the point about, you know, the

costs, Your Honor, but I think without the regular court

ordered process for the identification of dates, we will

end up where we are right now which is barely completed any

depositions because the majority of the dates that we were

provided were not real dates on which the officers were

actually available to testify.

So, you know, I do think that a weekly ten-

person, ten deponents two days each every week with those

dates one to four weeks out is a reasonable way of keeping

this on track so that we fill up the calendar with real

dates and start making real headway that we have not yet

been able to make despite the Court's directive that we do

so.

THE COURT:   I'm trying to understand what you

mean by two days.  So there's a particular person, you

know, Sergeant Cojerts (phonetic), I'm just pick the first

name on your list, why shouldn't it be enough for them – it

seems to me that you folks should between the lot of you

1                                                          42

2   have someone who can cover any particular date, and it may

3   be hard for the City to come up with two dates for one

4   officer.  I don't know, maybe it's not.  But why is it you

5   need two dates?

6            MR. LIEB:   Your Honor, the issue is simply that

7   some of these depositions are relevant across cases and

8   some of them are largely relevant to only one or two of the

9   consolidated cases.  So the issue is simply to allow for

10  the possibility that the taking attorney who's actually

11  from, you know, for example, Wood or Yates, you know, has a

12  conflict that date so there are two available dates so we

13  don't have to have a protracted back and forth, and we can

14  simply pick from one of two options presented to ensure

15  that --

16           THE COURT:   Okay --

17           MR. LIEB:   -- (indiscernible) is present.

18           THE COURT:   And how quickly can you pick among

19  those two dates?  I assume very quickly.

20           MR. LIEB:   Yes, Your Honor, I don't see any

21  reason why, I mean I don't think I would be speaking out of

22  turn to say 48 hours or perhaps even less.

23           THE COURT:   Okay.  So and let me turn to the

24  City.  I'm certainly disturbed that the promise that I was

25  given which is ten depositions by July 19 did not occur,

43

1

2  and there has to be much better efforts by the City to come

3  up with real dates for these officers.  I'll issue whatever

4  order I need to to make it happen.  It seems like having

5  you provide two dates, you know, is a reasonable way to do

6  it.  You tell me what the problem is.

7          MS. WEISS:   Well, Your Honor, we apologize to

8  you and to counsel.  It certainly didn't work out the way

9  we expected or planned, but we have been working on a

10  better system with more personnel.  Someone with better

11  access to the officers' schedules, we had been going

12  through a less direct process, and we were able to get

13  access to a more direct line into officers' schedules.  So

14  we're quite confident that things are going to go much

15  smoother now.

16          With respect to two dates for officers, I do

17  understand why plaintiffs want it especially in some of the

18  cases like Yates or Wood where there's less attorneys on

19  each of those cases.  I think we can try that for some of

20  the officers, especially the ones where we know that

21  they're involved in some of those cases.  It's sometimes

22  difficult to hold multiple days open for an officer because

23  either their command needs them because they might be short

24  staffed or often one of the district attorneys might need

25  them for a criminal appearance or something like that.  I'm

1                                                              44

2   not saying it can't be done, but it may be difficult in

3   some circumstances, but we'll see what we can do, and

4   perhaps we can, you know, if there seems to be a particular

5   problem with a particular officer, we'll do our best to

6   work that out with counsel.

7              But I think that --

8              THE COURT:   Hold on.   Hold the thought and let

9   me just turn to Mr. Lieb.   You must know on this list who

10  are the people that you really need two dates for because

11  of the problem that you suggested.   I see that, you know,

12  25 however many people on this list, which of those fits

13  into this category?

14             MR. LIEB:   Your Honor, I am not prepared to be

15  able to say off the cuff, you know, which of these specific

16  officers we would require two dates versus one for because

17  I do not know offhand who each of these deponents, you

18  know, is the principal questioning attorney.   So I can

19  certainly follow up in short order with that information,

20  but I am not prepared to speak to that, you know, offhand -

21  -

22             THE COURT:   And do you know about how many

23  officers on this list fit into that?

24             MR. LIEB:   I mean, look, I think a substantial

25  number of them are relevant to all of them, but there's

1

2   another problem here, Your Honor, which is in part that we

3   don't actually know because not all of the documents have

4   been produced, which of these protests all of these

5   officers attended.  We know some of them, and that's the

6   basis for our having noticed their depositions.  But

7   because basic documents like body worn camera footage,

8   activity logs formally known as memo books, the DAT's that

9   they issued including in some cases for our own clients

10  were not produced in advance of the prior depositions, we

11  are operating somewhat in the dark.

12       So I have some difficulty identifying exactly

13  which of these deponents are relevant to multiple cases,

14  but I will say, you know, to be sent anything about Mott

15  Haven that is relevant to multiple cases because there's

16  significant overlap there, and so I think a majority,

17  (indiscernible) majority of these deponents are relevant

18  across multiple cases such that it would be beneficial to

19  have the ability to have two dates in case there is a

20  scheduling conflict for one.

21       THE COURT:  Well, but if the majority are across

22  all cases, that to me suggests you only need one date.

23  Right?  For those people.

24       MR. LIEB:  Your Honor, I think it is very

25  difficult for us to commit, to understand how we're going

1                                                              46

2  to be able to staff these depositions when we have not

3  gotten interrogatory responses as to which protests these

4  specific individuals attended.  I understand the Court's

5  point, and if the Court's directive is that it's going to

6  be one date, I can't parse the list at this particular

7  moment to say these are those deponents for whom we need

8  two dates.

9           I think in the interest of getting depositions on

10 the calendar, we will be prepared to respond very quickly

11 if and when presented with two dates such that those dates

12 don't need to be held for more than 24 hours.  So if the

13 concern is about holding dates and making those officers

14 unavailable to command, to their commands, we can commit to

15 the Court to responding very quickly once presented with

16 two dates and to say we're doing this one, take that one

17 off the calendar.  So I understand the point that the Court

18 is making, but I think that we can work very quickly to

19 make sure that we confirm those in short order.

20          THE COURT:  Okay, this is my plan.  Ms. Weiss,

21 you tell me – I think I've heard from you on this, but if

22 there's anything else, I'll hear one last thing.  My plan,

23 as to the first paragraph of the proposed order, I mean I'm

24 prepared to orally order, that's the schedule that you've

25 already agreed to, what appears through 21, July 21 through

```
 1                                              47
 2   29, is that right, Ms. Weiss?
 3          MS. WEISS:   My computer just shut itself down,
 4   and I cannot bring it up.  No, it is not what we have
 5   agreed to.  It is other than Officer Jean Pierre.
 6          THE COURT:   So Quigley, all those are wrong.
 7          MS. WEISS:   Salla is wrong.  I'm sorry, if you
 8   could bear with me one second.  I don't want to --
 9          THE COURT:   Take your time.
10          MS. WEISS:   -- give you wrong information.
11          THE COURT:   Take your time.
12          MS. WEISS:   Jean Pierre is wrong.
13          THE COURT:   And the others?
14          MS. WEISS:   Are correct.  The rest are correct.
15   Only Jean Pierre is wrong.
16          THE COURT:   All right, Jean Pierre I'll take out
17   of the picture.  You should produce, you're ordered to
18   produce the people on the dates listed in that first
19   proposed paragraph.  Okay?
20          MS. WEISS:   I'm sorry, Your Honor, also Salla is
21   wrong.
22          THE COURT:   What's the correct date for Salla?
23          MS. WEISS:   We do not have a date yet.
24          THE COURT:   Okay, well, we'll add Salla to the
25   list in the second paragraph and we'll add Jean Pierre to
```

1

2 the list in the second paragraph then.  Okay, now so what

3 I'm going to do with the second paragraph is I'm going to

4 order that beginning July 21 you provide the plaintiffs

5 with the deposition dates for any ten members of the NYPD

6 on the list below.  If the plaintiffs have a problem with

7 it, they have to tell you within 24 hours, and then you'll

8 figure out another date.  But they have to be real dates,

9 and you have to in advance, at least 48 hours in advance,

10 I'm sorry, two business days in advance, provide the

11 documents that relate to that officer.  And if you don't,

12 then there's going to be a problem because you're going to

13 have to do it twice or there'll be a penalty or something.

14 But it's insanity to have these depositions without having

15 the documents that relate to the officers.

16          MS. WEISS:   Your Honor, can you just clarify

17 what documents are being referred to just so that we're all

18 clear?

19          THE COURT:   I mean I assume that these officers

20 are involved in specific arrests that have been identified

21 in some way during the course of the discovery so far.  Is

22 that — am I wrong on that?

23          MS. WEISS:   Some of them have been involved in

24 arrests, some have not.  Some are just, you know, we know

25 one for sure was involved with a plaintiff in a case in the

1                                                    49

2  Eastern District, you know, and not these consolidated

3  cases as far as we know.  So we're not entirely sure how

4  all of these --

5              THE COURT:   Where --

6              MS. WEISS:   -- people were involved.

7              THE COURT:   Mr. Lieb, what do you do about the

8  document aspect?

9              MR. LIEB:   Well, Your Honor, there were emails

10  that were sent by counsel for Sow to counsel for defendants

11  on July 9, sorry, July 8 and July 13 laying out very

12  specifically what the documents are that we expect to be

13  produced 48 hours prior to the scheduled depositions, for

14  which we received no response.  I will say that the sum and

15  substance of that though is not just if they were, you

16  know, an arresting officer at a specific protest for which

17  a claim arises in this case, but whether there are, you

18  know, memo books, body worn camera footage from their

19  activities at other protests that are within the scope of

20  the litigation.  Those should be provided in advance of

21  their depositions so that they can be asked about those

22  activities.

23          So I have a bullet pointed list that I'd be happy

24  to go through in as much detail as the Court would like me

25  to, but I think the headline is, you know, personnel

records, body worn camera footage, activity logs, any

arrest processing documents that are related to them, any

use of force related documents for that deponent, any

documents related to any injuries the deponent may have

suffered, all of these related to any of the, you know,

subject protects to which they respond.

        THE COURT:   Ms. Weiss, is this doable or not?

        MS. WEISS:   (no response)

        THE COURT:   Ms. Weiss --

        MS. WEISS:   Hello, this is Dara Weiss, sorry, I

got knocked off the call.

        THE COURT:   Well, what was the last thing you

heard?

        MS. WEISS:   Mr. Lieb I think was saying that

plaintiffs sent emails on July 8 and 13 about documents.

        THE COURT:   All right, Mr. Lieb, you're going to

have to repeat what you said.

        MS. WEISS:   I apologize.

        THE COURT:   No problem.

        MR. LIEB:   Yes, Your Honor, and I will repeat it

and then I would ask a couple of additional brief notes at

the end.  So I was referring to the July 8 and July 13

emails from Sow counsel which contain an enumerated bullet

point list of the documents that we believe are necessary

to effectively conduct line officer depositions to which

plaintiffs received no response.  And without ticking off

every bullet point, I was explaining in sum and substance

that those documents are body worn camera footage, activity

logs, arrest processing related documents, use of force

related documents, injury related documents, disciplinary

records, and unusual occurrence reports and the like

related to any of the subject protests to which the officer

responded.

You know, one efficient way of doing, of making

sure that we have all that would be to provide a list in

response to our interrogatory about which of these people,

you know, which of these protests these people actually

attended.

The note that I wanted to make, Your Honor, is

that with regard to the Quigley and Terrangelo depositions

that are supposed to be going forward this week, these are

documents that we do not have.

MS. WEISS:  Your Honor, first of all, that's a

huge amount of documents.  The reason that we had discussed

doing line officers first was because it was agreed that

plaintiffs could do the line officers without a lot of

documents.  We simply are not going to have the person

power to get all of these documents 48 hours before each of

1

2   these depositions between – we staffed up to have attorneys

3   to be able to defend these depositions.  We staffed up to

4   get out the tens of thousands of pages of document

5   discovery which these documents to some extent would be

6   part of, but then to, you know, to get them to plaintiffs'

7   counsels 48 hours before the depositions I just don't know

8   that it came happen.  It's 16 categories of documents.

9         And some of them are, some of them are pretty

10  simple, you know, relatively, but, you know, like activity

11  logs, you know, the officer should be able to bring that up

12  on his or her phone, but things like, you know, arrest

13  processing documents that, any arrest processing documents

14  that that officer was involved with for any arrests that

15  they made at any of these protests is not such an easy

16  thing to find.  The officer wouldn't have that.  Documents

17  related to uses of force by the – these are not, these are

18  not usually the simple types of documents that plaintiffs'

19  counsel need before a simple deposition of a simple line

20  officer.

21        Plus I want to point out that in this list of 16

22  types of documents most of them are categorized with

23  including but not limited to wording.  You know, things

24  like any other documentation regarding the deponent's

25  activities on the days of incident, you know, NYPD radio

53

communications, a lot of these things are being produced in

the large productions that plaintiffs are getting in this

lawsuit, but to have them produced to plaintiffs prior to

the depositions is a lot.  Things like memo book, you know,

disciplinary history to the extent it's relevant.  Body

worn camera, we could get it for some of them.  A lot of it

has been produced already.  Arrest reports, if they

arrested one of the plaintiffs, we could get pretty easily.

I think plaintiffs have already been provided with all the

arrests reports for all of the protests.  But some of these

documents are really burden --

        (audio cuts out)

        THE COURT:   Oh, no.  Hello?  Mr. Lieb, can you

hear me?

        MR. LIEB:   Yes, I can, Your Honor.

        THE COURT:   All right, she dropped off, John?

        THE CLERK:   Yes.

        THE COURT:   Okay, let's wait for her to back,

call back in.  I thought I had been dropped off.

        (pause in proceeding)

        MS. JACOBS:   Hi, this is Elissa Jacobs from

Corporation Counsel.  I believe Ms. Weiss is also trying to

get back on the call.

        THE COURT:   Okay.

```
1                                             54
2              (pause in proceeding)
3              MS. JACOBS:   She is on her way in.  I apologize
4  for the technical issues, Your Honor.
5              THE COURT:   No problem.
6              MS. WEISS:   Hi, sorry.
7              THE COURT:   Ms. Weiss.
8              MS. WEISS:   Yes, I'm so sorry.
9              THE COURT:   That's okay.
10             MS. WEISS:   I'm calling from a different phone.
11             THE COURT:   We heard the sound when you dropped
12  off, so we didn't conduct any business.  You were in the
13  middle of something, so you can finish.
14             MS. WEISS:   So I don't know where I dropped off,
15  but I know I was talking about the burden and how a lot of
16  these documents are well beyond what we would normally
17  produce or what plaintiffs would normally need for a simple
18  line officer or arresting officer deposition.
19             THE COURT:   When are they going to get these
20  documents?
21             MS. WEISS:   A lot of them have been produced in
22  the large production such as arrest reports --
23             THE COURT:   I should've been clear.  When are
24  they going to get the documents that they need to conduct
25  these depositions?
```

1

2          MS. WEISS:   I can't answer that right now.  I've

3    got to talk to my team and see where things are, but things

4    like the arrest report for the arrestee at issue for that

5    particular officer's deposition and that officer's

6    disciplinary history, that officer's memo book, we could

7    certainly get it to them I would hope, you know, 48 hours

8    prior to the deposition, but I really do need to talk to my

9    team about exactly when we could get it to them.  But some

10   of these other documents in these 17 or so categories, I

11   don't even – certainly not prior to a deposition.  I think

12   that in, when we're done producing all of our documents by

13   July 31, those documents would be in there.

14          THE COURT:   Okay, well, that's the answer to my

15   question.  Okay, so to me it's a sort of a stark choice.  I

16   mean none of this was presented in the letters.  The

17   letters were about deposition schedule not the document

18   production, at least Mr. Lieb's letter.  So it's easy

19   enough for me to order what you asked for in, you know,

20   that second paragraph, reducing it to a deposition date.

21   The question is are you going to want to go forward if, in

22   fact, you're not getting until July 31 everything you want

23   and you're only, we would only be able to get 48 hours

24   beforehand the more limited materials that Ms. Weiss is

25   talking about, knowing you're only to get one deposition.

```
 1                                                    56
 2          Because the choice is to go forward before the
 3  31st with the more limited materials or to do it after the
 4  31st and maybe now we'll have triple tracking of
 5  depositions because it's not going to reduce the number of
 6  depositions.  And if we have to have sort of a separate
 7  group of line officer depositions or depositions of people
 8  on this list that start happening in August instead of
 9  July, then it'll be on top of whatever we were otherwise
10  planning to have in August.  So do you see the choice, Mr.
11  Lieb?  I think it should be up to you.
12          MR. LIEB:  Your Honor, I do understand, but I
13  would respectfully submit that it is not quite
14  (indiscernible) to put this choice to us in light of the
15  fact that we have not even gotten the low-hanging fruit so
16  far.  So, for example, Officer Jean Pierre testified at his
17  deposition that he has provided his body worn camera
18  footage and his activity log to Corporation Counsel months
19  before the deposition, and they had not been produced.  We
20  have depositions scheduled for tomorrow and the day after
21  for which we have no, not even the basics, none of the low-
22  hanging fruit.
23          And so I understand where the Court is coming
24  from, but I respectfully submit that for the remedy to be
25  that we have essentially have to defer progress in the case
```

57

by taking depositions because the City has not complied

with even the basic obligations to date strikes me as

essentially causing us to bear the burden of the City's

non-compliance with even the most minimal of its discovery

obligations, Your Honor.

THE COURT:   I would have --

(interposing)

THE COURT:   I would have thought the burden was

greater on the City if these things get postponed not on

you because you folks seem to have a lot of lawyers and not

as many as the City.  I thought that's where the burden

would be.  You --

(interposing)

MR. LIEB:   Well, Your Honor, our primary

interest is in moving the case forward.

THE COURT:   If I can finish my sentence.  The

presumption all along was that the, you know, document

production would occur by July 31, and I don't think it was

clear that there was some obligation to produce specific

documents for the line officers without, you know, some

clear indication or - let me strike that.  I think my

vision on the line officers was that there was some officer

who was involved in one protest and some very limited

number of arrests for whom it would be relatively simple to

                                                          58
produce documents in advance.

          I don't think I really realized there were
depositions being scheduled without those documents being
produced, and I'm surprised that the City would think that
would be an appropriate thing to do.  So is it true, Ms.
Weiss, that, for example, for Quigley, you haven't produced
documents relating to whatever arrests he was involved in?

          MS. WEISS:   As far as I know, there's been
nothing produced for Quigley.  What's been produced has
been for named officers, and Quigley is not a named
officer.

          THE COURT:   Well, I'm trying to understand
what's the theory in producing officers without documents.
What do you think that's going to lead to?

          MS. WEISS:   There's no theory behind it, but
this is the schedule that plaintiffs chose to depose
officers.  They chose to put Quigley on the list knowing
that they didn't have documents for Quigley.  There's
plenty of named officers for whom they have documents.

          THE COURT:   No, no, no.  Oh, well, if that's –
is there – I assumed there was a set of officers for whom
the documents are ready and able to go, and those are the
ones who are going to be deposed.  That's what I assumed
was happening all along.

1                                                           59

2              MS. WEISS:   Plaintiffs provided us with a

3    schedule.  They told us on numerous occasions that there

4    were specific reasons that they chose the order that they

5    did.  I think even at one of the conferences before Your

6    Honor they did, when we spoke about producing the line

7    officers first, and they had wanted some higher ranking

8    officers early, and we spoke about schedules, and they were

9    very clear that they had specific reasons in mind why they

10   wanted specific officers at specific times and that some of

11   their earlier deposition notices they had line officers and

12   even named defendant line officers down near the end of

13   their list.  So either we – they put down officers who they

14   wanted, and we scheduled them.

15              MR. LIEB:   May I be heard on this issue, Your

16   Honor?

17              THE COURT:   Sure.

18              MR. LIEB:   Your Honor, we provided a list at the

19   very beginning of this process which was sometime ago of an

20   approximate order which depositions, you know, we wanted to

21   proceed.  The City has provided dates, as far as we know,

22   are completely arbitrary.  We're all in agreement that

23   we're doing line officers first.  The City has provided

24   what appears to us, what Ms. Weiss appears to have

25   confirmed, to be an essentially arbitrary selection of line

officers that they have chosen for reasons that we are not
aware of.  We are in good faith trying to proceed with
those depositions to move these cases forward mindful of
looming deadlines that are not very far away for class
certification, for example.

So we have been trying in advance of all these
depositions to get the documents that we believe pertain to
their depositions, and there has been extensive email
traffic, mainly one-way email traffic, but email traffic
from plaintiffs' counsel in advance of the Quigley
deposition, in advance of the Terrangelo deposition.
During the Jean Pierre deposition there was an extensive
discussion about this, not to mention the emails I was
discussing beforehand, okay, you've put these officers on
the calendar.  We need the documents.  The documents have
not been forthcoming.  We have proceeded with the
depositions to the best of our ability while leaving two of
them open in an effort to make progress in this case and
just at least get some defense testimony on the record.

But that is the state of play, Your Honor, it is
- we were given a set of dates, we have tried very hard by
email to get the documents in advance of the deposition.
They haven't come even though one of the officers testified
that he provided them to counsel.  And so we're doing as

1                                                                    61

2  best we can to proceed in the dark.

3              THE COURT:   Ms. Weiss, are you still here?

4              MS. WEISS:   Yes, I am.

5              THE COURT:   I mean this is not what I

6  contemplated.  I contemplated depositions with documents

7  not depositions without documents.  So the notion that

8  people are going down this road of just having depositions

9  without documents makes no sense to me.  I cannot even

10 understand why anyone would think that would be

11 appropriate.  Why did you think that was appropriate, Ms.

12 Weiss?  You just thought, well, if they want them, we'll

13 give it to them, it doesn't matter about the documents?

14             MS. WEISS:   Your Honor, they sent us a list of

15 names, they insisted on beginning depositions.  They even

16 wanted depositions to start in mid to late June despite the

17 fact that we told them on several occasions we were

18 unavailable.  The plaintiffs pushed and pushed and pushed

19 and pushed about starting depositions even well before

20 there was barely a single document exchanged.  They clearly

21 didn't seem to care about documents when they started

22 trying to schedule depositions.  There was no conferral

23 clearly before this court conference about documents.  It's

24 not until we got on the phone now that this document issue

25 seems to be such a big issue with them.

```
 1                                              62
 2            So I don't - it appears that plaintiffs are just
 3   looking for issues.  First, it was about --
 4            THE COURT:   Okay, no, no --
 5            (interposing)
 6            THE COURT:   No, no, Ms. Weiss, stop.  Let's not
 7   have personal attacks on motives.  I don't believe they're
 8   just looking for issues just as I don't believe you'd
 9   deliberately do anything to harm the process.  So that's
10   silly.
11            All right, we're not going to solve this right
12   now.  We're going to set another conference for, let's see,
13   I think we should just do tomorrow afternoon.  Between 3
14   and 4 o'clock, Mr. Lieb?
15            MR. LIEB:   I --
16            THE COURT:   If not, that's fine, tell me.
17            MR. LIEB:   For me - no, I'm sorry --
18            THE COURT:   I could do, how about let's also
19   talk about Thursday at 10 a.m., the 22nd.
20            MR. LIEB:   Your Honor, I have another conference
21   before Judge Schofield at that time.  So speaking at least
22   from my perspective, if I were continue to be the
23   spokesperson on these issues for the plaintiffs, then let's
24   put that on the calendar Wednesday afternoon, Your Honor,
25   if we can.
```

1

2            THE COURT:   4 p.m.?

3            MR. LIEB:   Fine with me.

4            THE COURT:   Are you free tomorrow, Mr. Lieb,

5  during the day?

6            MR. LIEB:   Yeah.

7            THE COURT:   Because I don't want to just pick

8  this up.  I want you two to talk about a plan for what on

9  earth to do.  You know, what is feasible in terms of what

10 documents you could get.  Maybe it's not the entire list of

11 16 categories or whatever it is.  Maybe it's something

12 smaller.  What we can do so that I can go ahead with

13 paragraph, your second paragraph and, you know, whether you

14 still want to do these depositions in your first paragraph.

15 Do you want – what documents are realistic for them to come

16 up with?  Do they have the information to give the

17 documents that you need?

18            I'd like you two to try to come up with a plan

19 and, if not, provide separate plans and be as reasonable as

20 possible because I'll probably just pick one of them.  And

21 we'll, you know, we'll try to take it from there.  I mean I

22 don't think it's a terrible thing if we have to move

23 depositions a little bit later so that you can get the

24 documents.  I mean the other alternative is for you to go

25 forward with depositions knowing you won't get a second

1

2   crack, and you'll get the documents later on.  You'll deal

3   with them then.  It's not a terrible option either.  It's

4   not the best option, I agree.  But I have to be realistic

5   about what the City can do in this very, very short term.

6           So I need you to spend tomorrow discussing that

7   and trying to figure it out, and then we'll – I don't need

8   you to put anything in writing because it's going to waste

9   time, but we have to pick this up tomorrow.  I don't see

10  what I can do today.  I mean if it were up to me, I would

11  either, you know, pick some limited number of documents and

12  say go forward with the depositions and that's all you're

13  going to get for those depositions or I'm going to put them

14  off till August and understanding there'll be double or

15  triple tracking with respect to the line officers.  I don't

16  know what else I can do.  I mean, you know, this wasn't

17  even presented to me.  So you folks have to at least make

18  some effort to try to solve it tomorrow.  Mr. Lieb, you'll

19  have time to do that starting in the morning?

20          MR. LIEB:  Yes, Your Honor, and I'm sure my

21  counterparts will join me.  So, yes, plaintiffs can make it

22  work certainly.

23          THE COURT:  And, Ms. Weiss?

24          MR. LIEB:  I will note that --

25          THE COURT:  Ms. Weiss, you can too?

```
 1                                                    65
 2            MS. WEISS:   We will make sure to, Your Honor.
 3            THE COURT:   All right, it'll be great if there
 4   was a plan presented to me at 4 o'clock.
 5            MR. LIEB:   Your Honor, if I may just very
 6   briefly because there is the matter of depositions within
 7   the next 36 hours.
 8            THE COURT:   Yeah, yeah.
 9            MR. LIEB:   The Quigley deposition to go forward
10   tomorrow, I might want to ask you, counsel, for the people
11   who are the one who have notice and are primarily
12   responsible for this deposition.  My understanding is that
13   their position is that they would be prepared to proceed,
14   but we're hoping that the defendants could at least produce
15   the officers' activity logs for the relevant period of
16   time, which is something that would be, number one,
17   electronically accessible and, number two, something that
18   the officer himself would have access to.  And my
19   understanding is that Paine counsel who are the party who
20   noticed or who are primarily responsible for the Terrangelo
21   deposition, which would be Friday, would like not to take
22   that deposition at the time.
23            So I just wanted to make that clear because we're
24   literally talking about something tomorrow morning, I
25   wanted to put that on the record with regard to Sergeant
```

66

Quigley.

THE COURT:   Ms. Weiss, can you produce the
activity log tonight?

MS. WEISS:   I have to talk to the attorney who
prepared Sergeant Quigley to see if he got the daily
activity log.  I don't know that right now.

THE COURT:   How hard is it to get an activity
log for an officer?

MS. WEISS:   They should have it on their phone.
So they should have it.  It's the attorney who prepared
Sergeant Quigley didn't get it from him when he prepared
him, I don't know if he was prepared in person or not, it
should be readily available at the time of the deposition,
and as I'm sure Your Honor and certainly plaintiffs'
counsel know, that activity log is no more than a page or
two.  So it's certainly not something that would take
significant time to review if it was given at the time of
the deposition.

THE COURT:   All right.  Well, it seems like it's
worth going forward.  You can take a half hour break to
review the activity log if it's that short.  So let's go
forward with Quigley, and if they want to cancel
Terrangelo, that's fine if that's what they want.

MR. LIEB:   I think I spoke out of turn, Your

1
2   Honor, in saying that – I think the preference would

3   certainly be that it go forward with the documents, but,

4   you know, in the absence of documents, it would be --

5           THE COURT:   Why don't you two talk about that

6   tomorrow.

7           MR. LIEB:   Understood.

8           THE COURT:   All right, folks, you know, I have

9   several hundred other cases, so I can't, you know, have

10  conferences every day with you folks and maybe not even

11  every week.  So you have to try to figure out ways to key

12  up these issues a little better than happened here today,

13  to have an issue that was literally not presented suddenly

14  come up orally is not the way to go.  So let's try to

15  anticipate more than we are.  Okay, talk to you folks

16  tomorrow at 4, same dial-in instructions.  Thank you,

17  everyone, good bye.

18          MS. WEISS:   Thank you.

19          MR. LIEB:   Bye, Judge.

20          (Whereupon the matter is adjourned.)

21

22

23

24

25

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, Payne, et al. versus

De Blasio, et al., docket #20cv8924, was prepared using PC-

based transcription software and is a true and accurate

record of the proceedings.

Signature _____

Date:  July 25, 2021