```
                   UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #20cv8924

 IN RE NEW YORK CITY POLICING       :
 DURING SUMMER 2020 DEMONSTRATIONS
                                    : New York, New York
                                      July 21, 2021
-----------------------------------: TELEPHONE CONFERENCE


                    PROCEEDINGS BEFORE
           THE HONORABLE GABRIEL W. GORENSTEIN,
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Sow Plaintiffs:      COHEN & GREEN
                         BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New York 11385

For Payne Plaintiffs:    LEGAL AID SOCIETY
                         BY:  JENNVINE WONG, ESQ.
                         199 Water Street
                         New York, New York 10036

For Sierra Plaintiffs:   RICKNER PLLC
                         BY:  ROB RICKNER, ESQ.
                         14 Wall Street, Suite 1603
                         New York, New York 10005

For Wood Plaintiffs:     KAUFMAN LIEB LEBOWITZ & FRICK LLP
                         BY:  DOUGLAS LIEB, ESQ.
                         10 East 40th Street, Suite 3307
                         New York, New York 10016
```

Transcription Service: Carole Ludwig, *Transcription Services*
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

APPEARANCES (CONTINUED):

| | |
|---|---|
| For Yates Plaintiff: | STOLL, GLICKMAN & BELLINA, LLP<br>BY:  ANDREW STOLL, ESQ.<br>300 Cadman Plaza West, 12th Floor<br>Brooklyn, New York 11201 |
| For Plaintiff People of the State of New York: | NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL<br>BY:  LILLIAN MARIE MARQUEZ, ESQ.<br>28 Liberty Street<br>New York, New York 10005 |
| For Defendants: | NEW YORK CITY LAW DEPARTMENT<br>BY:  DARA WEISS, ESQ.<br>100 Church Street<br>New York, New York 10007 |

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> | <u>**Court**</u> |
|---|---|---|---|---|---|
| None | | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

1

```
 1                         PROCEEDINGS                    4

 2              THE CLERK:  This is In Re:  New York City

 3   Policing During Summer 2020 Demonstrations 20cv8924.

 4              Counsel, please state your appearances for the

 5   record, starting with plaintiff.

 6              MR. DOUGLAS LIEB:  Good afternoon, your Honor.

 7   Douglas Lieb for plaintiff, Wood, and speaking on behalf of

 8   consolidated plaintiffs at this conference.

 9              MS. JENNVINE WONG:  Good afternoon, your Honor.

10   Legal Aid Society, Jennvine Wong for Payne plaintiff.

11              MX. REMY GREEN:  This is Remy Green from Cohen &

12   Green for the Sow plaintiffs.

13              MR. ANDREW STOLL:   And good afternoon, your

14   Honor.  It's Andrew Stoll, Stoll, Glickman & Bellina, for

15   Cameron Yates.

16              MS. LILLIAN M. MARQUEZ:  And this is Lillian

17   Marquez from the New York State Attorney General's Office

18   for the People.

19              MR. ROB RICKNER:   This is Rob Rickner, Rickner

20   PLLC, for the Sierra plaintiffs.

21              HONORABLE GABRIEL W. GORENSTEIN (THE COURT):  For

22   defendants?

23              MS. DARA WEISS:  This is Dara Weiss from the New

24   York City Law Department for defendants.

25              THE COURT:  Okay, we're continuing from
```

```
1                         PROCEEDINGS              5
2    yesterday.  Mr. Lieb or Ms. Weiss, is there an agreement,
3    proposal, anything?
4              MR. LIEB:  Your Honor, I would say there's some of
5    both.  So the parties met and conferred for about an hour
6    and a half earlier this afternoon.  We reached agreement on
7    some of the logistical areas, which I'm happy to sort of
8    memorialize here for the Court.  And then there was some
9    agreement as to document production, and then there were
10   some areas of disagreement as to which plaintiffs have a
11   proposal for the Court.
12             So with respect to the areas of agreement, it's as
13   follows.  The parties agree that, starting on August 9th,
14   we're going to endeavor to try and get through these
15   approximately 44 line-level officer depositions in five
16   weeks, which obviously will require double-tracking, to
17   some extent.  And on a weekly basis, beginning at the end
18   of next week, the defendants are going to provide a single
19   date for a batch of approximately ten officers, with the
20   obvious understanding that we need to fill up the earlier
21   dates first in order to keep the schedule at a pace where
22   we can get this done.  Those are going to be real dates
23   that have actually been cleared with the officers in
24   advance to make sure that they're available.  We will --
25   we, the plaintiffs, will confirm or indicate unavailability
```

```
 1                          PROCEEDINGS                    6
 2  with respect to those dates within 24 hours.  If there's a
 3  cancellation by the defense of any of those confirmed
 4  dates, they're going to let us know a specific reason why,
 5  with the exception of obviously not intruding upon a
 6  deponent's personal privacy.  If it's a personal reason,
 7  they'll just say it's a personal reason.  And a new date
 8  for the cancelled deponent will be provided in short order.
 9  We had asked that there be a new date provided within 24
10  hours; we didn't reach agreement on that specific point,
11  but there was conceptual agreement that a new date should
12  be provided promptly.  Additionally, the defendants will
13  endeavor to have the officers in front of computers with
14  chargers, with sufficiently large screens that they can
15  both be seen, readily visible, and easily view documents
16  that are screen-shared with them.
17          With respect to the four depositions between this
18  moment and July 31st, which is the document deadline,
19  tomorrow's is proceeding by agreement; the other three we
20  owe defendants an answer on that depends upon hearing from
21  counsel, who's simply out of pocket today, and will provide
22  that to defendants in short order.  So that is the sort of
23  logistical area of agreement.
24          With respect to documents, my understanding is
25  that we have agreement as to the following -- or documents
```

```
 1                        PROCEEDINGS                  7
 2   and information.  Number one, there are some officers who
 3   are on the list who have been identified by description.
 4   Obviously, the defendants are going to provide their names
 5   and tax ID numbers in advance of the deposition.  The
 6   defendants, my understanding, are going to be producing
 7   CCRB histories, IAB histories, and CGIs for the deponents
 8   in, as I understand it, a batch, with the expectation that
 9   that batch is going to be coming before the August 9th
10   commencement of this set of depositions, so to speak.
11            There's also agreement that the defendants are
12   going to ensure that any body-worn camera footage recorded
13   by a deponent is going to be identifiable in some manner.
14   There's a little bit of an open question, slight
15   disagreement, about to what extent that is already true.
16   But I have optimism that the parties can work that out.
17   But that to the extent it is not already identifiable by
18   essentially file name or Bates number, that the defendants
19   will identify it by file name or Bates number.  But the
20   parties will work on that discrete sub-issue.
21            The defendants have also committed to producing no
22   later than the day before the deposition but, you know, in
23   reality, contemporaneously with the preparation of the
24   witness or, you know, promptly thereafter, the activity log
25   of the deponent for the, what you might call the subject
```

```
 1                          PROCEEDINGS               8

 2   protest.  So if that person was an arresting officer in

 3   Mott Haven, that would be what I mean when I say the

 4   subject protest.

 5            That leads us, really, your Honor, to the area of

 6   disagreement and the place where, you know, the plaintiffs

 7   have a proposal to the Court.  So the area of disagreement

 8   is as follows.  The way plaintiffs believe this should work

 9   is we, at the very beginning of the case, there had been an

10   interrogatory which had attached to it a Schedule A.

11   Schedule A is not before the Court, but when I say

12   Schedule A, the parties know what I'm talking about, which

13   is a list of 83 protest locations with dates and locations

14   that are the protests, more or less, that are the subject

15   of these consolidated proceedings.  Our proposal is that

16   when they prepare their witnesses, the defendants should

17   identify to us which of the protests on Schedule A those

18   deponents were at.  They should pull the activity logs of

19   those officers for those dates, produce those to us.  To

20   the extent that the officers made an arrests, wrote any

21   summonses, wrote any DATs, they should produce those.  And

22   then they should go look up if there are any arrest

23   reports, aided reports, TRI reports that are in an

24   electronic database that's searchable by officer name and

25   date for those protest locations to which the officer
```

1                           PROCEEDINGS                    9

2    responded.  Then to the extent they haven't already been

3    produced, they should produce them to us.

4           Now, obviously, there's been a representation that

5    we should have all of this by July 31st, but we don't know

6    what we don't know, and so -- and as we had the experience

7    that, you know, we discussed with your Honor but with

8    Officer Jeanpierre -- obviously, officers have some of

9    these materials in their own personal possession, and so

10   it's important that there be an effort to ensure not just

11   that it's somewhere in this, you know, thousands upon

12   thousands of documents that were gathered *en masse* by the

13   NYPD, but that there's an actual double-checking with the

14   individual officer who's sitting there in front of counsel

15   preparing for the deposition, that that individual

16   officer's documents have in fact been produced.  We've set

17   forth just now the way that that can be done very easily by

18   asking him a few questions, looking at their activity logs

19   and checking some electronic databases; and to the extent

20   necessary, the production should be supplemented.

21          So that's where we have the disagreement because

22   the defendants have expressed that it is in their view

23   unduly burdensome to identify which of the protests these

24   officers attended and to, you know, contemplate addressing

25   any documents for anything other than, you know, the

```
 1                        PROCEEDINGS                 10
 2   protest at which the deponent was, for example, the
 3   arresting officer.
 4          So there are basically three reasons why we think
 5   this is extremely important.  The first is this is
 6   simply -- first of all, it's factual information that is
 7   within the knowledge of the City and can readily be
 8   ascertained by just asking the witness who's being prepped,
 9   sitting in front of counsel -- so you know, just as a
10   factual matter, we're entitled to know it.  We tried to get
11   it by interrogatory; the City didn't answer that
12   interrogatory.  But we're entitled to know that
13   information.
14          Second of all, it's going to help a lot with
15   scheduling because if we know that someone was in Mott
16   Haven, you know, someone who is from a Mott Haven-related
17   case will make an effort to be present.  If we don't know
18   that, they're not going to have to make an effort to be
19   present.  But it's going to result in a much more efficient
20   conduct of the depositions to actually know in advance,
21   okay, this officer was at these three or four protests.
22   We're going to be asking this officer about these three or
23   four protests; we have his activity logs in front of us;
24   we're going to conduct the questioning in an efficient
25   manner, as opposed to spending the first thirty minutes of
```

```
 1                          PROCEEDINGS                    11
 2   the deposition showing him Schedule A on the screen and
 3   asking him to go line by line and tell us which of the
 4   protests he had attended, which is what we've been doing.
 5   Because, obviously, we're entitled to that information;
 6   we're entitled to take the officers' testimony about, you
 7   know, any relevant knowledge they may have.  And this is a
 8   much, much more efficient, effective way of doing it.
 9          So the proposal for the Court that we have is that
10   the defendants identify which of the protests on Schedule A
11   the officer attended, ensure that any arrest reports, aided
12   reports, CRI reports, DATs, summonses, body-worn camera
13   footage, activity logs from those protests have already
14   been produced.  If they been produced, great; if not,
15   supplement the production in advance of the deposition.
16   And then we'll be able to conduct the questioning of the
17   officers in a much more focused, directed and efficient
18   manner.
19          The last sort of freestanding, I think, area of I
20   wouldn't say dispute but nonresolution concerns NYPD
21   Academy transcripts, which you might refer to as training
22   transcripts.  So we had proposed --
23          THE COURT:  And I interrupt you for a second,
24   Mr. Lieb?
25          MR. LIEB:  By all means, your Honor.
```

2                THE COURT:  Is this the academy transcripts in

3       relation to depositions, or is it a totally separate issue?

4                MR. LIEB:  No, it is in relation to the

5       depositions, your Honor.  It is the training that the

6       deponent received.  So there is a publicly-available --

7                THE COURT:  You're including this in the list of

8       documents along with the activity log and the body-camera

9       footage that you want in advance; is that what's going on?

10               MR. LIEB:  Yes, your Honor, but it just -- it

11      comes by slightly different means, so I think it sort of --

12      and the parties are in a slightly different posture with

13      respect to it, so it's kind of a separate point.

14               THE COURT:  Okay.  Go ahead.

15               MR. LIEB:  So, you know, knowing what training

16      officers received in the areas that we're talking about --

17      obviously, you know, as the Court pointed out yesterday, so

18      the extent of the adequacy or inadequacy of the training

19      these individuals received and how it may have informed the

20      conduct that they engaged in on the days in question is

21      obviously part of our Monell claim; it's a central part of

22      the case.  And so there are publicly-available NYPD

23      training summaries that are incomplete and just generally

24      not reliable.  This document that we're talking about, it's

25      like the equivalent of your college transcript from the

```
 1                         PROCEEDINGS                  13
 2   NYPD Academy, so to speak.  And we had tried to provide an
 3   exemplar to counsel earlier today but realized that we
 4   could not do so, consistent with the Protective Order in
 5   the case in which that document had been produced.  So the
 6   parties weren't really able to full exhaust the discussion
 7   on this point, which is why I raise it separately.  But
 8   this is the other document that we think should be produced
 9   with respect to each deponent in advance of the deposition.
10            THE COURT:  Okay.  And just so I have the list of
11   documents that you think is at issue, that's disputed, one
12   is the activity log?
13            MR. LIEB:  Your Honor, the defendants have agreed
14   to produce the activity log for, for example --
15            THE COURT:  No, I'm sorry, I should say -- I meant
16   it's for -- I should back up.  With respect to the -- you
17   want them to have the deponent identify the protest
18   locations in advance of the deposition in some way and then
19   produce the activity log for those dates; is that right?
20            MR. LIEB:  That is correct.  And the defendants
21   have --
22            THE COURT:  And the body cameras?
23            MR. LIEB:  Yes.
24            THE COURT:  Finish your sentence.
25            MR. LIEB:  The defendants have agreed to produce
```

```
 1                      PROCEEDINGS              14
 2  the activity logs just for, for example, you know, if my
 3  arresting officer was a named defendant for Mott Haven on
 4  June 4th, only that date, not necessarily other dates on
 5  which he's responded to other protests that are at issue in
 6  the litigation.  That's the specific disagreement --
 7             THE COURT:  Okay.  But I'm just trying to
 8  structure --
 9             MR. LIEB:  -- with respect to --
10             THE COURT:  -- I'm just trying to structure what
11  the disagreement is.  So as you need them to identify the
12  protest locations and provide the activity log, even if
13  they weren't the arresting officer?
14             MR. LIEB:  Correct.
15             THE COURT:  I'm just trying to list the categories
16  under there so I know what's at issue.  I also have body
17  camera footage, right, for whatever he got identified.
18             MR. LIEB:  Correct.
19             THE COURT:  Before we get to transcripts, is there
20  anything else on that list?
21             MR. LIEB:  Yes, your Honor.  So there are
22  summonses or DATs or OLDS reports prepared by the officers
23  with respect to any arrests --
24             THE COURT:  What are OLDS reports?
25             MR. LIEB:  They're computerized -- that's the
```

```
 1                        PROCEEDINGS                 15
 2   NYPD's, you know, computer online booking system.  So
 3   it's -- I don't know exactly how to describe what it is,
 4   but it is a report prepared by the officer in that database
 5   that pertains to, you know, the arrest or the complaint or
 6   the summons that the officer was pursuing on the date in
 7   question.
 8             THE COURT:  Okay.  What else --
 9             MR. LIEB:  An electronic [indiscernible] database
10   [indiscernible].
11             THE COURT:  All right, what else in that category?
12             MR. LIEB:  TRI reports and aided reports, your
13   Honor.
14             THE COURT:  I know what an aided report has to do
15   with the medical care.  What's a TRI report?
16             MR. LIEB:  It's a Threat, Resistance and Injury
17   report, I believe, is what TRI stands for.  It's a use of
18   force related report.
19             THE COURT:  Okay.  And then transcripts.
20             MR. LIEB:  Yes, for the Training Academy, yes.
21             THE COURT:  Okay.  Were you done?
22             MR. LIEB:  Yes, your Honor.
23             THE COURT:  All right, Ms. Weiss?
24             MS. WEISS:  Okay, after our meet-and-confer, I
25   had an opportunity to speak with my team over here.  And we
```

1                          PROCEEDINGS                    16

2   agree for the sake of efficiency because we are certainly

3   hoping that these depositions of line officers don't have

4   to take an entire day, that when we do prep our officers

5   for deposition, that we're happy to show them the list of

6   83 protests, this Exhibit A, and see if they're -- and I

7   believe the list has dates and locations -- and see if

8   they're able to recall if they were present, policing any

9   of those demonstrations.  And to the extent that they

10  recall being there, they can certainly, you know, pull up

11  their activity report, their mem -- which would be what

12  they now call the memo book entry.  And we can provide that

13  to plaintiffs' counsel.  That is not a problem.  That's not

14  any burden at all.

15          Plaintiffs had indicated that they would want that

16  72 hours prior to the deposition.  We can't guarantee that

17  it's going to be 72 hours before, because we don't always

18  prep the officers 72 hours before; but it would be, you

19  know, at or about the time that we prep them, you know,

20  pretty much immediately after the prep is over.  It could

21  be a day before, it could be two days before, just

22  depending on scheduling.

23          To the extent that the officer doesn't recall

24  being at a particular demonstration, then we can't -- you

25  know, we can't tell them.  We can't -- the same way, you

```
 1                         PROCEEDINGS              17
 2   know, plaintiffs -- plaintiffs have the rosters.  We
 3   provide the rosters for every demonstration, so you know,
 4   they can tell from that, if they choose to go through them,
 5   what officers were assigned to any demonstration.  So, you
 6   know, if they want --
 7              THE COURT:  Wait, wait, wait, wait.  Stop for a
 8   second.  Are you saying that for all 83 protests in
 9   Schedule A, you know which officers -- someone has written
10   down which officers were there, and that's available?
11              MS. WEISS:  No, which officers were assigned to
12   that demonstration.  It doesn't necessarily mean that that
13   officer was there or that different officers who were not
14   on the detail rosters were not there.
15              THE COURT:  Wait, wait.  I couldn't understand the
16   last thing you said; it doesn't mean --
17              MS. WEISS:  So the detail rosters show the
18   officers who were assigned there.  There could have been
19   additional officers who were not originally assigned there
20   that could have shown up to a protest.
21              THE COURT:  Okay.  Hold on.  Let me just think for
22   a second.  I mean, it seems like somebody -- I'm not saying
23   it should be the defendants -- maybe it should be the
24   plaintiffs -- should for any deponent know at least which
25   protests they were supposed to be at, you know.  And that
```

1                           PROCEEDINGS                    18

2    might go a long way to someone getting this information,

3    no?  I mean, I agree that the officer might -- an officer

4    might not have been assigned but then after looking at a

5    list, saying, yeah, I got there later or got there even

6    though I wasn't on the list, and then we're back in the

7    same problem.  But can't we at least obviate the ones that

8    we do know about?

9              MR. LIEB:  Your Honor, two points, I think.

10   Number one is the way these detail rosters work is, you

11   know, it's for essentially a preplanned event, right, where

12   someone's tour is that they're going to be detailed to this

13   location.  And so in the real world of how these situations

14   unfold, it doesn't actually say whether someone actually

15   showed up at any particular protest location; it just

16   indicates that, you know, people are going to be detailed

17   to a particular area on a particular day, which number one,

18   they may or may not, depending on how events unfold; but

19   more critically, you know, particularly when we're talking

20   about mass arrest processing, you're going to have officers

21   from lots of other precincts who are responding to actually

22   process.  So it's --

23             THE COURT:  Okay.  If it doesn't get us

24   anywhere --

25             MR. LIEB:  I take the point that we should look at

```
 1                        PROCEEDINGS                    19

 2   them, but it doesn't get us to the finish line or

 3   particularly close.

 4             MR. LIEB:  And the other thing I would say, I

 5   think the easiest way to actually ascertain where the

 6   officers were is for the officers, if they thumb through

 7   their activity log on their phone for 15 minutes and, you

 8   know, [indiscernible] the activity log will tell them

 9   whether they were in, you know, Williamsburg on June 5th,

10   for argument's sake, or if they were, you know, at some

11   other location entirely.  Right?  So the officer can just

12   thumb through his or her activity logs on their phone and

13   pretty quickly -- obviously assuming the activity logs are

14   accurate -- you know, figure out where they were on those

15   dates.

16             MS. WEISS:  It's not --

17             THE COURT:  Okay.  Ms. Weiss -- Ms. Weiss, I

18   interrupted you, so you can pick up where you left off.

19             MS. WEISS:  Okay.  Thank you.  So as I was

20   saying, we're more than happy to have the officers look at

21   the list and see if they recall being at any of these

22   demonstrations.  To have them look through their activity

23   logs is overly burdensome.  It's not a matter of thumbing

24   through a few pages; it's looking through seven months'

25   worth of logs, which is certainly going to be more than 15
```

```
 1                          PROCEEDINGS                    20
 2    minutes.  It's not -- they can't just search them for a
 3    location; it's quite a burdensome process.  One or two,
 4    yes.  One or two officers, yes.  But if we're prepping ten
 5    officers a week for deposition, it's burdensome for the
 6    officers, and it's burdensome for our attorneys.
 7              So we're more than happy to do it for the officers
 8    for the demonstrations that they recall being at.  I expect
 9    that a number of these officers will recall being at a
10    number of demonstrations; but, other than that, you know,
11    defendants object strongly to providing this material for
12    other demonstrations.
13              THE COURT:  I'm just -- it doesn't quite make
14    sense to me.  I mean, it seems like this is a, I guess --
15    let me think about this.  You know, it's very hard for me
16    to visualize.  The demonstrations are over the course of
17    seven months, is that what you're telling me?
18              MS. WEISS:  Yes, your Honor.
19              THE COURT:  The 83 --
20              MS. WEISS:  Between May and January.
21              THE COURT:  But are officers sent across boroughs?
22              MS. WEISS:  They could be, yes, absolutely.  You
23    can have Queens officers respond to a demonstration in
24    Manhattan or vice-versa.
25              THE COURT:  And the only way to link -- the only
```

```
 1                        PROCEEDINGS                    21
 2  document that links these officers to a particular protest
 3  apparently is not the rosters; the only document is this
 4  activity log?
 5            MS. WEISS:  I mean, a document like an arrest
 6  report would show that an officer made a particular arrest;
 7  but you would have to know the arrest report that you were
 8  looking at.
 9            THE COURT:  Well, you're producing arrest reports,
10  are you not?
11            MS. WEISS:  Yes.  I think they're being produced
12  with today or tomorrow's production.  But there are
13  thousands of arrest reports.
14            THE COURT:  Well, I'm not saying you necessarily
15  should do this, but my question is are the arrest
16  reports -- I guess that's not the universe of officers with
17  knowledge because --
18            MS. WEISS:  No.
19            THE COURT:  -- an officer might have been present
20  and not appear on an arrest report.
21            MS. WEISS:  Absolutely.  Your Honor, there is no
22  one document or one type of document that would show every
23  officer who responded to a particular demonstration.  It
24  would be, I guess, a number of documents put together would
25  show most -- hopefully, most of the officers who responded.
```

```
 1                        PROCEEDINGS                  22
 2   But there is no one overall type of document that would
 3   list every officer.
 4              THE COURT:  I'm just thinking about this.  I
 5   assume the officers work an average of five days or, say,
 6   twenty days a month, right?
 7              MS. WEISS:  During the protests, I'm sure that
 8   most of them worked more over the summer with the curfew
 9   and COVID and a lot of officers being out sick due to the
10   pandemic.  Most of them worked a huge amount of overtime.
11   So I would certainly say that they worked a lot more than
12   that.
13              THE COURT:  And how long is the entry for a day,
14   typically?
15              MS. WEISS:  I don't know.
16              THE COURT:  I mean, I've seen them; sometimes it's
17   four lines.
18              MS. WEISS:  And sometimes it could be four pages.
19   But, you know, they're not the written memo books that
20   maybe you've seen before, your Honor.  They're all
21   electronic and on their department phones.
22              THE COURT:  And they have to type them on their
23   phones?
24              MS. WEISS:  Yes.
25              THE COURT:  Well, that suggests they're not going
```

```
 1                         PROCEEDINGS                   23

 2   to be very lengthy.

 3              MR. LIEB:  Your Honor, I have a brief point about

 4   the logistics of this, if I may be heard at some

 5   opportunity?

 6              THE COURT:  Yes.

 7              MR. LIEB:  So, while it is true that the 83

 8   protests cover a long period of time, I have Schedule A in

 9   front of me, and items 1 through 60 on the list are just

10   from May 28, 2020, to June 8, 2020, because as it seems

11   perhaps obvious, this protest activity was highly

12   concentrated in the days immediately following the murder

13   of George Floyd,  And then there are what I would --

14              THE COURT:  What are the dates you gave me, May

15   what?

16              MR. LIEB:  One through 60 are May 28th through

17   June 8th.

18              THE COURT:  June -- so hold on.  I couldn't hear

19   you.  June 5th?

20              MR. LIEB:  June 8th.

21              THE COURT:  June 8th.  Go ahead.

22              MR. LIEB:  And then for, you know, protest numbers

23   61 through 83, which I guess are 23 additional protests,

24   there --

25              THE COURT:  It this document filed somewhere?
```

```
 1                    PROCEEDINGS              24

 2           MR. LIEB:  Not in connection with the most recent

 3   applications, and I can't say --

 4           THE COURT:  No, no, anywhere, anywhere in the

 5   docket.

 6           MR. LIEB:  Not to the best of -- somewhere, yes,

 7   but I couldn't tell the Court where.  I apologize.

 8           THE COURT:  I think my chambers emails to you

 9   folks with dial-in information -- and the chambers email is

10   not public, but do you have it, and can you just email it

11   to me right now?  I'd just like to look at it.

12           MX. GREEN:  Your Honor, this is Remy Green.  I

13   will send it right now.

14           THE COURT:  Okay.

15           MR. LIEB:  The overall point being, though, that

16   the vast majority of these protests are compressed within a

17   very short time period with then isolated dates over the

18   course of the next six months thereafter.  And so the

19   burden is not in fact looking through seven months; it's

20   really looking through eight days plus a couple -- you

21   know, 23 other random dates.

22           THE COURT:  Okay.  I'm going to look at the

23   document as soon as it arrives.  But, Ms. Weiss, it seems

24   like it would be, as a compromise, not unreasonably

25   burdensome to ask them to look through those ten days and
```

```
1                         PROCEEDINGS                    25
2   then use their memory on the rest of it.
3             MS. WEISS:  That sounds reasonable, your Honor.
4   But then it takes us onto the next part of the equation
5   where plaintiffs are then asking that we provide all the
6   other documentation with respect to any of the protests
7   that these officers may have attended.  And I just want to
8   point out that plaintiffs will have all of these documents,
9   arrest reports, TRI reports, aided reports, the gamut of
10  documents, by the time defendants are finished producing
11  documents by the 31st of this month.  So there's no need to
12  produce them again prior to the depositions of these
13  officers.  A number of the arrest reports --
14            THE COURT:  They're searchable by the officer's
15  name?
16            MS. WEISS:  I don't know a lot about the
17  technology, but I do know that they are produced in a
18  searchable format.  I don't know what the details of --
19            THE COURT:  Mr. Lieb, I was going to ask the same
20  question before I heard Ms. Weiss say that.  If you're
21  getting all this material in advance, why should the City
22  have to, you know, essentially do your work by looking to
23  see the involvement of the particular officer in a
24  particular production and produce that to you again?
25            MR. LIEB:  Your Honor, if it is the case that --
```

1
2    you know, if Officer Smith was at the June 5th protest
3    in -- near the Barclays Center, and if it is actually in
4    fact the case that those -- that that officer's arrest
5    reports and summonses are included within the production
6    that we received by July 31st, by the end of next week,
7    essentially, that then that is one thing.  I think the
8    issue that we're having is that we know from our experience
9    in other cases and from a deposition just last week, that
10   officers maintain these records in their personal
11   possession, and officers have knowledge of what they did
12   and did not do.  And we don't.  Right?  So the only way we
13   have of knowing --
14          THE COURT:  Stop for a second.  When you say "in
15   their possession," what is it you learned at the
16   deposition, that they're sitting in their locker, on their
17   phone; what are you talking about?
18          MR. LIEB:  Yeah, so this is from, I guess -- I
19   think at this point it was last week's deposition of
20   Officer Jeanpierre, you know, he testified that he
21   maintained, you know, his own personal file of the DATs and
22   summonses and related materials that he had himself issued.
23   So that was the example to which I'm referring.
24          THE COURT:  Okay.  I think --
25          MR. LIEB:  I mean, I think --

```
 1                      PROCEEDINGS              27

 2            THE COURT:  Hold on, Mr. Lieb.  I mean, we don't

 3  know if this is a regular habit, but it's certainly -- I'm

 4  sure Ms. Weiss would agree -- no burden for them to tell

 5  their officers if you have any documents relating to any of

 6  the protests or arrests at the protests, bring it with you

 7  to the prep session, and they would supply those documents.

 8            MS. WEISS:  Absolutely.

 9            THE COURT:  After reviewing.  So if we did that,

10  then where are we?

11            MR. LIEB:  Then where we are, your Honor, is that

12  we don't know what we don't know.  And, you know,

13  obviously, the document production has not yet occurred,

14  and we're not in a position yet to, you know, really dig in

15  and assess its completeness.  And so our thought was that,

16  for the sake of conducting the depositions in an efficient

17  manner that, you know, querying the database for the

18  officer's name one time before the officer sits to ensure

19  that that production was complete and ensure that those

20  reports had in fact been produced was much better than us

21  showing up to the deposition and hearing that the officer

22  issued a summons on X date and then us saying, "Well,

23  actually, we've been -- you know, we searched thousands

24  upon thousands of documents that were produced to us, and

25  there is no summons for that officer on that date."  So --
```

```
 1                       PROCEEDINGS                    28

 2             THE COURT:  I got confused because you talked

 3   about -- I'm trying to figure out what exactly you're

 4   asking them to do as a practical matter.  And then you

 5   talked about searching something.  What is it you're

 6   talking about?

 7             MR. LIEB:  My understanding is that arrest

 8   reports, complaint reports and all of the S-reports are

 9   maintained in an electronic database that is searchable by

10   officer name.  And so what we're asking them to do -- as

11   well as the bodycam footage, which is a separate point --

12   but what they're asking them to do is just once they know

13   that, okay, this officer was at Point A, Point B, and

14   Point C and made arrests at those three places, just go

15   look for those arrest -- that arrest-related paperwork to

16   make sure that it has in fact been produced.

17             THE COURT:  Okay.  So let me ask the City.  It

18   seems to me -- obviously, you have access to this database

19   and those -- do you know what database is being referred

20   to?

21             MS. WEISS:  Yes.

22             THE COURT:  Okay.  Obviously, you have access and

23   the plaintiffs don't.  I would think --

24             MS. WEISS:  No, plaintiffs have access to

25   everything we have produced on this database.
```

```
 1                        PROCEEDINGS                    29

 2              THE COURT:  Right.  I understand that.  I mean, I

 3   guess it comes down to how much risk you want to take,

 4   Ms. Weiss, because if it turns out -- this is the way I

 5   would do it, I would think.  But let me give you two

 6   choices.  If you say, you know what, that search was done;

 7   the arrests for that officer have been produced, you know,

 8   all the AB, TRI, aided reports, I guess -- I don't know,

 9   does it have the DATs and summonses, too?  Is it all in one

10   database?

11              MS. WEISS:  Every -- it should.  I mean, by the

12   time everything is produced, it will have all of those

13   documents to --

14              THE COURT:  No, no, I'm talking -- I'm imagining a

15   database where we put in Officer Jane Doe, and it comes up

16   with the arrests for Jane Doe in this period and locations,

17   and you see right away there's, you know, a protest, and

18   there's an aided report and there's a summons or there's a

19   DAT with her name on it.  Is that how it works, you can

20   look someone up and just pull that up?

21              MS. WEISS:  I don't know how the search function

22   works.

23              THE COURT:  Well, the plaintiffs seem to think

24   that's doable; that's what they want you to do, because

25   they were describing it as something easy.  And your answer
```

```
 1                        PROCEEDINGS                    30

 2   is don't worry, that will have been done already as part of

 3   the production, and you can just look in the production for

 4   it.

 5            So, I mean, my inclination on this is to say if

 6   you want to take your chances, fine, I suppose; but if you

 7   messed up and it turns out that you could have just done a

 8   search and that name was there, and that would have been a

 9   normal part of the deposition prep process, and you didn't

10   do it and you went forward with this deposition, then

11   there's going to be some kind of consequence to the City

12   for that.  It seems to me it would be a lot better if it

13   would be part of the prep process for the City, that when

14   they have Officer Jane Doe, they look up Officer Jane Doe

15   during this period and say, well, here's what we got on

16   you.  And they would either just forward that along with

17   the activity logs for the plaintiffs, or if they -- you

18   know, I suppose they could verify that it was in the

19   production.  But it would be a lot more efficient to just

20   forward it along with the activity log information.

21            So it seems to me that's the sensible thing to do

22   because you're going to have a huge down side if your big

23   production doesn't have that.  Do you understand what I'm

24   saying, Ms. Weiss?

25            MS. WEISS:  I do, you know.  And I think perhaps a
```

```
 1                          PROCEEDINGS                      31

 2   good solution would be, because the way that our

 3   productions work is that they go through a vendor to be

 4   prepared for production, is for us to check that they've

 5   been produced and perhaps provide the Bates numbers to

 6   plaintiffs' counsel --

 7              THE COURT:  Yes, that's fine, right, Mr. Lieb?

 8              MS. WEISS:  The only thing that -- the only catch

 9   to that might be I don't know how well the search function

10   works on handwritten documents.  So to the extent that

11   there are handwritten documents -- and I actually don't

12   know how much is handwritten -- I know most of it is

13   computerized nowadays, but if there a scratch copies of

14   things, I don't know how well it will work on handwritten

15   documents.  But to the extent that things are typewritten

16   or, you know, entered into a computer, the search function

17   should work pretty well.

18              THE COURT:  So what's generating that handwritten

19   document?  Are you talking about the -- it's not the

20   activity log, which you told me is not handwritten.

21              MS. WEISS:  No.  But perhaps a scratch copy of --

22   I don't even know if they do it anymore, to be honest.  But

23   they used to fill out scratch copies of arrest reports,

24   handwritten before they entered them into the computer.

25              THE COURT:  Okay, but those reports -- surely, the
```

```
 1                         PROCEEDINGS                    32

 2  only reason you got them is because someone looked up Jane

 3  Doe arrests on June 2nd, or whatever it is; and then

 4  there's some PDF -- I don't know what -- that would have

 5  produced this document.  No one's going around collecting

 6  paper, are they, from your office?

 7            MS. WEISS:  The paper is being collected.  It's

 8  not just documents from --

 9            THE COURT:  So these aided reports, the -- I'm

10  talking about the set that Mr. Lieb was talking about, the

11  TRI report, the aided report --

12            MS. WEISS:  It should all be from computer

13  databases.

14            THE COURT:  Okay, well, this is my point.  In

15  other words, someone had to put in a name.  And that's the

16  only reason there's paper.  So I don't know why you're

17  bringing up paper searches.

18            MS. WEISS:  Because I just want to be completely

19  thorough because I fear that plaintiff is going to come

20  back and say you didn't provide a scratch copy or you

21  didn't provide this or that or the other thing.  I just

22  want to be as thorough as I can be.

23            THE COURT:  We're not even -- I'm not talking

24  about your document production; that's not a topic for

25  today.  I am talking about the big document production,
```

1

2  whether you did that properly.  That's not what Mr. Lieb

3  was talking about.  He is talking about whether there's

4  something that was easily generatable by you as part of

5  your prep to this officer, like looking up, you know, the

6  officer in this arrest database that he's talking about,

7  and maybe this bodycam footage database and producing that

8  to them.  And your answer to that is no, we don't want to

9  do that because we already have it.  And what I'm saying to

10  you is if there's something easy you could do, it would be

11  a lot better if you did it as part of your prep and just

12  sent it over to them relying on it being on the big

13  database, because you're going to get punished if it turns

14  out a deposition went forward and you had not put it in

15  that July 31st production.  Do you understand what I'm

16  saying to you?

17          MS. WEISS:  Yes, your Honor, I do understand.

18  And, as I said, we will do the search of the database to

19  ensure that we have provided these documents.  I just want

20  to make sure that we're doing what the Court is

21  instructing --

22          THE COURT:  Yes.  And if it turns out you didn't

23  and if it's not, you're going to provide the Bates numbers

24  or whatever the number is.  And if it turns out you found

25  something as part of your prep that's not in the big

```
 1                    PROCEEDINGS                 34
 2   production, you've got to produce that.
 3            MS. WEISS:  Absolutely.
 4            THE COURT:  Okay.  Mr. Lieb, do we sort of now
 5   have a solution to this problem, at least the ones to
 6   understand what my solution is?
 7            MR. LIEB:  Yes, your Honor, I think we have a
 8   solution.
 9            THE COURT:  Okay.  So does this cover the bodycam
10   footage, as well?  I know we haven't talked about the
11   transcript yet.
12            MR. LIEB:  Yes.  You know, assuming that a similar
13   procedure applies to evidence.com, which is the body-worn
14   camera maintenance repository, whatever you call it, yes.
15   And so I think what remains to be resolved is just what
16   process is being used for the officers to identify the
17   protests that they attended.
18            THE COURT:  Right.  Okay, and I think I'm ruling
19   on that.  And I now have the document.  There starts to be
20   huge gaps.  So what I think -- so my ruling is that the
21   officer needs to, as part of your prep, Ms. Weiss, look
22   through their activity logs for this very brief period,
23   which is May 28th through June 8th -- that has to be part
24   of your prep.  And then you can ask them the memory of the
25   rest of them.
```

```
 1                        PROCEEDINGS                35

 2              MS. WEISS:  Okay.

 3              THE COURT:  And then whatever you get as the

 4   answers has to be transmitted, you know, if not that day,

 5   the next day to the plaintiff.

 6              MS. WEISS:  Okay.

 7              THE COURT:  I mean, if the deposition's the next

 8   day, then it better be that day.  But, otherwise, the next

 9   day.

10              MS. WEISS:  Yes, your Honor.

11              THE COURT:  So, Mr. Lieb, do you understand my

12   ruling?

13              MR. LIEB:  Yes, your Honor.

14              THE COURT:  Okay.  Other than the -- well, I know

15   we have the transcript, but other than that, have we done

16   what we need to do on this?

17              MR. LIEB:  If I may just look quickly at my notes

18   to make sure I don't have any outstanding items?

19              THE COURT:  Okay, that's fine.

20              MR. LIEB:  I don't believe there are any other

21   outstanding items on the list, your Honor, with the

22   exception of the training.

23              THE COURT:  Okay, so Ms. Weiss, now on the

24   transcripts.

25              MS. WEISS:  So as discussing during meet-and-
```

```
 1                          PROCEEDINGS                    36
 2   confer this afternoon with plaintiffs' counsel, I wasn't
 3   sure what transcripts they were talking about.  And there
 4   is an online database on nypdonline.org which lists all the
 5   training that a police officer has had.  And, you know, I'm
 6   clicking on it now, for example, and I picked a random
 7   officer.  And it's got --
 8                 THE COURT:  I'm sorry, [indiscernible] officer?
 9                 MS. WEISS:  I just clicked on a random officer,
10   and --
11                 THE COURT:  I don't understand -- hold on.  I have
12   no idea what you're looking at.
13                 MS. WEISS:  There's an online database on a site
14   called nypdonline.org, which is a New York City Police
15   Department website which you can find any police officer's
16   what they call a profile.  And part of that profile is a
17   listing of all the training classes that a police officer
18   was given and the date of that class, in addition to that
19   officer's rank and shield history, department awards,
20   discipline history, the number of arrests processed.  But
21   for our purpose, I just clicked on a random Officer
22   Santana -- there's dozens of Santanas.  And there's three
23   pages of a list of his -- of the training classes he took,
24   starting --
25                 THE COURT:  From day one?
```

1                          PROCEEDINGS                    37

2                MS. WEISS:  Starting in -- for this officer, I

3    don't know if it's day one for this officer.

4                THE COURT:  No, but it includes the police

5    academy, or is it sort of post, you know, on-the-job

6    training?

7                MS. WEISS:  Let's see if I can see.

8                THE COURT:  It's a fascinating list.

9                MS. WEISS:  Recruit training, four-wheel-drive

10   training, property evidence --

11               THE COURT:  This doesn't sound like the -- I mean,

12   from what I'm looking at, it doesn't sound like the

13   academy.

14               MS. WEISS:  It might not be the academy training,

15   but it's the training that the officer has certainly had

16   since and all the classes that the officer has had since.

17   I'm not --

18               THE COURT:  Okay, so that's the disconnect.

19   Mr. Lieb, you want the academy, is that it?

20               MR. LIEB:  The principal disconnect, actually,

21   your Honor, is that in the experience of counsel, that

22   public document, aside from the question of whether it

23   public relieves the City client of its discovery

24   obligations, that document is not -- it just in practice is

25   not complete.  So when you actually compare the document

```
 1                         PROCEEDINGS                  38

 2   that we're talking about that I'm referring to as the

 3   transcript with the publicly available version, you know,

 4   in preparation for this, Sow counsel went back and looked

 5   and did a side-by-side of those from another case that they

 6   had previously -- the actual transcripts are marked as

 7   confidential, so we couldn't provide them to opposing

 8   counsel and share them and discuss them in detail -- but

 9   the gist of it is just that sometimes there are officers

10   that are just outright missing from the public database.

11   And sometimes -- and more often than not, there are things

12   that are on the official document that are just not on the

13   public-facing version.

14           So it's the academy issue, but it's also just the

15   completeness and reliability issue.

16           THE COURT:  Ms. Weiss, what do you know about the

17   burden of getting an academy transcript for an officer?

18           MS. WEISS:  I don't know anything about it.  The

19   only thing that I know about is the public website.

20           THE COURT:  Okay.

21           MS. WEISS:  And I'm curious, Mr. Lieb, this

22   transcript from the academy, does that have grades on it,

23   as well?

24           MR. LIEB:  I do not know the answer to that

25   question.
```

```
 1                          PROCEEDINGS                    39
 2              THE COURT:  Okay.  So here's where we are.  Right
 3    now it seems relevant to me because I think it's important
 4    to know about training, and they may want to ask officers
 5    about what they learned and so forth.  So unless -- and,
 6    you know, the grades, I don't see that as particularly
 7    relevant.  But I'm not ready to deal with that right now.
 8    I assume this is all being produced under a confidentiality
 9    order, anyway.  So the City should produce it unless they
10    can come back to me in the next day or two saying what it's
11    going to be a problem.  If it's just pushing a button and
12    generating it for a particular deponent, it seems perfectly
13    easy to do.
14              MS. WEISS:  So I will find out immediately what it
15    entails.
16              THE COURT:  Okay.  Well, if there's a problem, you
17    need to let me know by Friday in a letter.  But first talk
18    to the other side about it before you write me.
19              MS. WEISS:  Yes, of course.
20              THE COURT:  So I'm ordering it produced unless I
21    rule otherwise based on whatever the City may give me.
22              Have we now covered everything, Mr. Lieb?
23              MR. LIEB:  I believe we have, your Honor.
24              THE COURT:  All right, Ms. Weiss, have we covered
25    everything?
```

```
 1                        PROCEEDINGS                40

 2              MS. WEISS:  Yes, your Honor.

 3              THE COURT:  All right, so I'm ordering the agreed-

 4   upon items that were described by Mr. Lieb earlier.  So I'm

 5   ordering that that should be the way we proceed with these

 6   depositions.  And I made certain other rulings.  And I

 7   think we're done.

 8              Anything else, Mr. Lieb?

 9              MR. LIEB:  No.  Thank you for your time, your

10   Honor.

11              THE COURT:  All right, Ms. Weiss, anything?

12              MS. WEISS:  No, thank you.

13              THE COURT:  All right, thank you, everyone.  Good-

14   bye.

15              (Whereupon the matter is adjourned.)

16

17

18

19

20

21

22

23

24

25
```

```
 1                                                    41

 2                   C E R T I F I C A T E

 3

 4        I, Carole Ludwig, certify that the foregoing

 5   transcript of proceedings in the United States District

 6   Court, Southern District of New York, Payne, et al. versus

 7   De Blasio, et al., docket #20cv8924, was prepared using PC-

 8   based transcription software and is a true and accurate

 9   record of the proceedings.

10

11

12

13

14   Signature _____  *Carole Ludwig*

15

16   Date:  July 29, 2021

17

18

19

20

21

22

23

24

25
```