```
               UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF NEW YORK
```

```
In the matter of:                :
                                         Docket #20cv8924

  IN RE NEW YORK CITY POLICING   :
  DURING SUMMER 2020 DEMONSTRATIONS    New York, New York
                                 : July 20, 2021


-----------------------------------: TELEPHONE CONFERENCE
```

```
                   PROCEEDINGS BEFORE
             THE HONORABLE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE
```

APPEARANCES:

For Sow Plaintiffs:      COHEN & GREEN
                         BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New York 11385


For Payne Plaintiffs:    LEGAL AID SOCIETY
                         BY:  COREY STOUGHTON, ESQ.
                         199 Water Street
                         New York, New York 10036


For Sierra Plaintiffs:   LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.
                         BY:  JOSHUA MOSKOVITZ, ESQ.
                         392 Central Avenue, #7803 07307
                         Jersey City, New Jersey 07307


For Wood Plaintiffs:     KAUFMAN LIEB LEBOWITZ & FRICK LLP
                         BY:  DOUGLAS LIEB, ESQ.
                         10 East 40th Street, Suite 3307
                         New York, New York 10016


For Yates Plaintiff:     STOLL, GLICKMAN & BELLINA, LLP
                         BY:  ANDREW STOLL, ESQ.
                         300 Cadman Plaza West, 12th Floor
                         Brooklyn, New York 11201



Transcription Service: Carole Ludwig, *Transcription Services*
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>APPEARANCES (CONTINUED):</u>

For Plaintiff People           NEW YORK STATE OFFICE OF
of the State of New            THE ATTORNEY GENERAL
York:                          BY:  LILLIAN MARQUEZ, ESQ.
                               28 Liberty Street
                               New York, New York 10005


For Defendants:                NEW YORK CITY LAW DEPARTMENT
                               BY:  DARA WEISS, ESQ.
                               100 Church Street
                               New York, New York 10007


For CCRB:                      CIVILIAN COMPLAINT REVIEW BOARD
                               BY:  KERRY JAMIESON, ESQ.
                                    ASSISTANT GENERAL COUNSEL
                               100 Church Street, Tenth Floor
                               New York, New York 10007

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-<br>Direct**</u> | <u>**Re-<br>Cross**</u> | <u>**Court**</u> |
|---|---|---|---|---|---|
| None | | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit<br>Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir<br>Dire**</u> |
|---|---|---|---|---|
| None | | | | |

1

```
 1                                          4
 2           THE CLERK:  This is In Re New York City Policing
 3   During Summer 2020 Demonstrations, docket #20cv8924.
 4   Counsel, please state your names and appearances for the
 5   record, starting with plaintiffs.
 6           MR. JOSHUA MOSKOVITZ:  Good evening, Your Honor,
 7   this is Joshua Moskovitz for the Sierra plaintiffs.
 8           MS. COREY STOUGHTON:  And Corey Stoughton for the
 9   Payne plaintiffs.
10           MR. DOUGLAS LIEB:  Douglas Lieb for plaintiff
11   Charles Henry Wood.
12           MX. REMY GREEN:  Remy Green for the Sow
13   plaintiffs.
14           MS. LILLIAN MARQUEZ:  Lillian Marquez for the
15   People.
16           MR. ANDREW STOLL:  Andrew Stoll for Cameron
17   Yates.
18           THE CLERK:  And for defendants.
19           MS. DARA WEISS:  Dara Weiss from the New York
20   City Law Department for the defendants.
21           THE COURT:  Okay, we're here certainly on one
22   request which is docket 193, and then we'll talk about what
23   we can do on docket 197 after that.  I assume, Mr.
24   Moskovitz, you're talking about, you're speaking for the
25   plaintiffs on this one?
```

```
 1                                                    5
 2              MR. MOSKOVITZ:   Yes, Your Honor.  Although I
 3   believe that Lilly Marquez may address the disciplinary
 4   history with you as well.
 5              THE COURT:   Well, I'm pretty clear that I want
 6   one lawyer per issue, and I think I need to make clear it's
 7   really one lawyer per letter.  So if we have to get into
 8   that with someone else, we'll see what happens when we get
 9   there, but in the future, folks, I really have to try to
10   limit it to one attorney per letter, unless there's two
11   very separate issues in one letter.
12              MR. MOSKOVITZ:   That's fine, Your Honor, I'll be
13   happy to address both issues.
14              THE COURT:   Okay.  So I've read your letters,
15   and let me start by just saying I'm not going to find any
16   procedural forfeit on the part of the defendants based upon
17   what they said.  So I'd like to get just to the merits of
18   the requests.  And I guess there's two requests.  One is
19   the open investigation and the other is the disciplinary
20   history.
21              So let me just try to understand so I have a
22   little better context.  I think the parties may certainly
23   understand the case better than I do since they're living
24   it and that they may (indiscernible) realize that I don't
25   have all their background on.  So when you say you're
```

```
 1                                                          6
 2  looking for open investigations, I assume you mean just
 3  investigations relating to the protests at issue in the
 4  lawsuits, is that right?
 5          MR. MOSKOVITZ:   That's correct, Your Honor.
 6          THE COURT:   And do we know how many such
 7  investigations there are?
 8          MR. MOSKOVITZ:   Well, the information that was
 9  provided to us from the CCRB is contained in an email that
10  was attached as exhibit 3 to my letter.  It references 750
11  complaints related to behavior of NYPD officers at the
12  summer protests, and it goes on to describe 75 full
13  investigations and 147 open investigations.
14          THE COURT:   And what about the rest of the
15  complaints, do you know anything about what that status is?
16          MR. MOSKOVITZ:   There's a few other categories
17  that are described in the letter.  It talks about 12 - let
18  me see how to describe it - 12 complaints where the CCRB
19  voted charges and specifications but went on to describe
20  those as open because they are being prosecuted by the
21  administration prosecution unit.  But I don't know the
22  extent or the status of all of the rest of the complaints.
23          THE COURT:   And maybe the City may ultimately
24  have the answers to this, but you said 147 open
25  investigations and 75, what was the term, full
```

```
1                                                    7

2   investigation?

3            MR. MOSKOVITZ:   Yes, that's what the CCRB

4   general counsel, that's what his email says.

5            THE COURT:   And do you know if the 75 is a

6   subset of the 147 or if it's something additional?

7            MR. MOSKOVITZ:   I do not know.

8            THE COURT:   Ms. Weiss, do you know?

9            MS. WEISS:   Well, Your Honor, I do but I have

10  Ms. Kerry Jamieson on the line.  She's the Assistant

11  General Counsel of CCRB, and if you allow her to speak, she

12  will be able to clarify all of these numbers and types of

13  investigations and I mean make it very clear for everybody

14  exactly what all of this is about.

15           THE COURT:   All right.

16           MS. WEISS:   May she speak, Your Honor?

17           THE COURT:   Yes, I mean since she's essentially

18  a fact witness, I think I can make an exception to my

19  normal rule.  So, I'm sorry, what's the name of the person?

20           MS. WEISS:   Kerry Jamieson.

21           THE COURT:   All right, Ms. Jamieson, do you

22  have, do you know the answer to my question?

23           MS. JAMIESON:   Yes, so good afternoon, Your

24  Honor.  Thank you for allowing me to speak.  So yes, the 75

25  full investigations is a subset of the 750 complaints.  And
```

8

1

2 just to clarify, a full investigation is when the CCRB is

3 able to identify a complainant and speak to that

4 complainant (indiscernible).  So once the CCRB is able to

5 do that, that's a full investigation.

6         THE COURT:   Actually, my question was not

7 whether the 75 was a subset of the 750.  It was whether the

8 75 was a subset of the 147 open investigations.  Do you

9 know the answer to that?

10         MS. JAMIESON:   It may be, some of them may be.

11 So investigation may be considered a full investigation but

12 it's not closed.  So there may be some overlap but it's not

13 necessarily a full subset of the 147, if that makes sense.

14         THE COURT:   Yeah, I understand.  So if there's

15 147 open, does that mean there's 600 something closed?

16         MS. JAMIESON:   Well, they're closed and referred

17 because the CCRB will only investigate complaint within its

18 jurisdiction.  So there may be (indiscernible) 750 there

19 may be duplicates and there also may be (indiscernible)

20 were not within CCRB's jurisdiction.

21         Your Honor, this is Ms. Weiss.  If I may.  There

22 were – CCRB did not conduct 750 or so investigations.  It

23 was closer to 330 some odd if I'm not mistaken.  I don't

24 have the exact number in front of me.  And as Ms. Jamieson

25 said, some of them are duplicates.  It could've been ten or

1

2    twenty people making complaints about the same incident,

3    and that would result in one investigation.

4           So out of these 330 some odd investigations that

5    CCRB did, 75 of them were fully investigations.  Others

6    were things like they couldn't identify officers or the

7    complainant was uncooperative and they couldn't complete

8    the investigations.  But there are currently about 120 some

9    odd investigations that are still open, and there are 193

10   which are closed.  And we have advised plaintiffs' counsel

11   on several occasions that we have and are providing them

12   with the underlying files of the 193 closed CCRB

13   investigations.  It's the 129 or so that are still open

14   that I believe is at the heart of this dispute.

15          THE COURT:   Is that right, Mr. Moskovitz, you

16   want those 129 open?

17          MR. MOSKOVITZ:   That's correct, Your Honor.

18          THE COURT:   Okay.  All right, so on that issue

19   I'm trying to understand the City's objection.  It doesn't

20   seem to be – I understand the burdensomeness objection that

21   you don't want to have to continually provide updates and

22   so forth.  Let's just put that aside for a moment, and we

23   can talk about what to do about that, assuming I would be

24   ordering production.  Apart from that, what is the

25   objection to the open investigation?  Because it sounds

1
2  like the moment they become closed, you're willing to

3  produce them, is that right?

4        MS. WEISS:   That is essentially right.  The

5  biggest part of our objection is the overly burdensome

6  part, and Ms. Jamieson could speak a little more to that

7  because she understands the burden more than I do.  So she

8  can speak to it more accurately.

9        But besides that, as Your Honor is well aware,

10  anyone could make a complaint to CCRB, and it could amount

11  to nothing.  It could be a complaint where then a, you

12  know, a person calls or uses the website to call in, makes

13  a completely false complaint, and then sort of drops off

14  the face of the earth, and CCRB is still investigating,

15  and, you know, a completely false complaint could be made

16  against an officer.  That's still on paper.  CCRB is still

17  investigating.  The complainant doesn't respond to phone

18  calls or communications.  And it's still a complaint, a

19  false complaint out there against an officer.  It hasn't

20  been proven yet, but it also hasn't been disproven yet.  So

21  it could prejudice an officer.

22        Complaints change over time.  Perhaps there's a

23  complaint against an officer and it turns out that it

24  really wasn't that officer at all, and as the investigation

25  goes on, you know, facts are found and it could completely

11

1
2   change.  So what plaintiffs would get now, if we were to

3   produce these still open investigations to them, could be,

4   you know, could change 180 degrees over time.  So there's

5   no guarantee, and it's very likely that the information

6   they'd be getting now is inaccurate.  It's not accurate

7   until the investigation is complete.

8          So we're really reluctant to give over

9   investigations that we're really unsure of the accuracy

10  about and the CCRB investigators haven't had a chance to

11  finish, you know, digging and investigating and doing all

12  they need to do to find out as much as they can about the

13  truth of the investigations.  And we don't see what

14  plaintiffs would be able to do with these not, you know,

15  knowing that, we don't know what they're about.

16         Granted there would likely be NYPD documents in

17  these investigative files because that's what make up a big

18  part of these files, but they're getting them anyway

19  through the production that the City is making.  So there's

20  not going to be any NYPD documents in these CCRB open

21  investigations that plaintiffs are not otherwise getting

22  through the City's productions.

23         THE COURT:  Well, I guess I should hear from Ms.

24  Jamieson about burden.  Tell me what it takes to, what

25  these files look like and what it takes to duplicate them.

1                                                          12

2   I assume things are electronic these days, and no one's

3   sitting over a copier.

4          MS. JAMIESON:   Yes, Your Honor, we do have an

5   electronic case (indiscernible) system.  However, a lot of

6   the documents, and in particular the interviews that are

7   conducted, they have to be manually uploaded by the

8   investigator to the case files.  So in order for us to do a

9   production, we have to actually, there's no automatic way

10  to go in and pull that attachment out.  A person has to go

11  in and open up each file to determine what it is and

12  whether or not we're turning it out.

13         And just to give the Court a sense of the burden,

14  so as Ms. Weiss mentioned a little bit ago, the CCRB has

15  turned over to the law department about 193 closed cases,

16  and it took two attorneys working full time four days just

17  to go through those closed case files to get them prepared

18  to send them over to the law department.  So just that will

19  hopefully give the Court a sense of the amount of time it

20  takes for two people to do the work of going through these

21  case files, and it would be infinitely more difficult if we

22  had to do that for all of the open cases and on an ongoing

23  basis because we have to go into each individual case.

24         THE COURT:   Just so I understand the burden.

25  Let's say I were to tell you you only had to do it once,

13

the open cases, but we had to do it while they're open.  Is

there any difference between doing it for an open case once

and doing it for a closed case?

MS. JAMIESON:   Yes.  So in most --

THE COURT:   Why?

MS. JAMIESON:   -- instances, so open cases are

in different stages.  So there may be, there are some cases

where they may still be trying to identify an officer so

they haven't conducted interviews yet.  So if you're to do

it once for an open case, there's a lot of evidence that

may not exist yet.  Furthermore --

THE COURT:   I didn't follow you, wait.  I'm

sorry, I lost you.

MS. JAMIESON:   I'm sorry.

THE COURT:   I understand there may not be

something in there, but that's not a burden to you if it's

not in there.

MS. JAMIESON:   Right, but then we'd have to do

it again when the case is closed.  We'd have to go back --

THE COURT:   That wasn't my question.  My

question was if I only had you do it once, is there any

difference in the burden from doing an open case than doing

a closed case?

MS. JAMIESON:   If we're only doing it once,

14

1

2  regardless of whether it's open or closed, then no.

3          THE COURT:   Okay, just wanted to check that.

4          MS. JAMIESON:   (indiscernible) of it is a

5  separate question.

6          THE COURT:   Say it again?

7          MS. JAMIESON:   I said the utility of that might

8  be a separate question, but the burden --

9          THE COURT:   Right, no, I'm just asking you about

10 burden.  I believe Ms. Weiss spoke at length about utility.

11 Okay, Mr. Moskovitz, I'll hear from you.

12         MR. MOSKOVITZ:   Thank you, Your Honor.  I mean

13 obviously the plaintiffs have a diametrically opposed view

14 from the City on the utility of the evidence that's

15 contained in the CCRB files.  Indeed, this is core evidence

16 in any case of this sort, and particularly in these cases.

17 We're talking about audio recordings of interviews with

18 officers, with witnesses; we're talking about videos of the

19 incident; we're talking about documents and reports that

20 are recordings, you know, and reports completed by officers

21 who are involved in these incidents.

22         Whether or not the City believes that complaints

23 were false or later reaching the conclusion that a

24 complaint is unsubstantiated or unfounded, the courts in

25 this circuit almost always order even unfounded or

1
2  unsubstantiated CCRB files to be produced.  So the City's

3  own analysis about the veracity of a complaint should have

4  no bearing on whether or not those complaints are produced.

5  I would think all of this stuff should be produced.

6          In terms of the burden, I don't understand any

7  distinction between open and closed cases, and it doesn't

8  sound like there's any difference in the burden to produce

9  open or closed cases.  I will note that while there might

10 be some incremental additional burden for the CCRB to go

11 back after a case is closed and produce any additional

12 information or records that have been generated in the

13 course of its investigation for a file that was formally

14 open and which they produced, we still think that

15 information would be highly relevant to these cases and

16 should be done.  Every party has an obligation to

17 supplement its discovery productions when additional

18 information is generated or discovered.  So although there

19 is some burden there, I don't believe it's undue.

20          I'd like to just maybe note for a second, and

21 perhaps we can come back to this, I've got some questions

22 about the numbers and what it is that the CCRB has and what

23 they're able to produce.  I guess I still don't quite

24 understand this difference between the 750 complaints, the

25 75 full investigations, and 330 odd investigations,

1                                                      16

2  although it wasn't clear to me if those were full or

3  complete or something else.  At the end of the day, what

4  we're looking for is any information that the City has

5  collected through the CCRB about complaints having to do

6  with the events in this case, in these cases.

7           THE COURT:  I had put it together in my mind,

8  and maybe I did it wrong, I assumed that of the 750

9  complaints they actually took it to the next stage of

10 investigation of 330 cases, of which about 200 are closed

11 and 129 are open.  Ms. Jamieson, is that correct or am I

12 wrong on that?

13          MS. JAMIESON:  Yes, that's basically, the

14 numbers are roughly correct.

15          THE COURT:  And how does this – and of those

16 investigations, you call, of the 330 you call 75 of them

17 full for some reason, is that it?

18          MS. JAMIESON:  Yes, the full investigations, as

19 I explained what those were before when we're actually able

20 to interview a complainant.

21          THE COURT:  Mr. Moskovitz, does that answer your

22 question?

23          MR. MOSKOVITZ:  I think it does, and it leads me

24 to say that we want the complaints from all 750 complaints

25 having to do with these protests.

17

1

2          THE COURT:   Okay, so now we have a new issue

3   which I don't know that the City can respond to it.  It

4   sounds like the only thing that was brought to me was about

5   investigations.  So is the City prepared to address the

6   complaint issue?

7          MS. WEISS:   I am not.  I would have to speak

8   with the CCRB to find out exactly what are done with those

9   complaints.  I don't know if they've put together an

10  investigation or something, so I'm not prepared to answer

11  that right now.

12         THE COURT:   Okay, well, I'm not going to deal

13  with the complaint right now.  I certainly see the

14  relevance.  I don't know what the burden is, I don't know

15  if there's other problems, but we'll put that aside, and

16  you should have a discussion, Mr. Moskovitz, with Ms. Weiss

17  about that as soon as you can.  All right?

18         MR. MOSKOVITZ:   Yes, Your Honor.

19         THE COURT:   All right, now, back to these

20  investigations.  So I mean it's – I certainly am not going

21  to have the City continually updating the open

22  investigations.  I reject the notion that the open

23  investigations shouldn't be produced simply on the theory

24  they aren't complete.  You know, the CCRB's judgment about

25  veracity or anything else is not critical to what the

18

plaintiffs need.  They need basic information consisting of
witness statements and things of that sort.  So whether
those people turn out to be liars or not that's not
something that should be judged at this stage of the
proceeding, and, you know, the City produces the closed
versions, and perhaps those closed versions give a fuller
picture, but the City knows what they're getting when
they're getting – I'm sorry, the plaintiffs know what
they're getting when they're getting an open investigation.
So I'm rejecting the City's argument on that point.

I have some sympathy for the burden argument.
And, you know, it is, I appreciate, Ms. Jamieson, the
efforts that your attorneys have to make to put together
these files.  So certainly I would require at least one
production of what you have in the open.  The only question
is whether I would require two.  In other words, whether I
would require it, you know, now and then in addition when
it was completed.  I'm not sure I have an answer to the
second question because it may depend on certain things.  I
might put the plaintiffs to the burden of saying why they
need more information on an open investigation.  It may be
that some of them are obviously irrelevant or not going
anywhere, and they can tell that from what they have, it
may be near completion.

1

2           So my question then, Mr. Moskovitz, is – let me

3    back up for a second.  Is there any information on the

4    open, on the 129 open investigation that is readily

5    available like the officer involved or the protest or the

6    date or things like that?  Is there like some printout, Ms.

7    Jamieson, you can easily do that?

8           MS. JAMIESON:   So we do have a complaint report.

9    So when a complainant contacts the CCRB and we have various

10   methods in which that's done, but there is something

11   created as a result of the complainant contacting the CCRB

12   with a complaint, if that's what you're asking about.

13          THE COURT:   Here's what I was thinking.  I was

14   thinking that if there's a particular officer involved, is

15   there a way to tell that easily, like can you do a list of

16   the 129 open complaints showing the officer involved?

17          MS. JAMIESON:   I believe we could do that.  So

18   if you're asking for in those 129 complaints who we

19   currently have as subject officers?

20          THE COURT:   Yes.

21          MS. JAMIESON:   With the understanding that there

22   may be some, some of those complaints that there's no

23   officer identified.

24          THE COURT:   Correct, I would understand that.

25          MS. JAMIESON:   I believe that we can do that.  I

20

1

2  will doublecheck with, you know, the people who handle the

3  more technical side of things, but I do believe that that's

4  something we can do.

5              THE COURT:   Okay, so here's what I'm prepared to

6  order.  You should produce that list.  Mr. Moskovitz, I'm

7  going to order that the open complaints be produced.  I'm

8  not guaranteeing you're going to get a second production of

9  them.  So if you want to wait - I want to see if there's

10 some showing either you or the City can make that it would

11 be a waste of time or would be necessary to get a second

12 production of the open investigation once it closed.

13             So I was thinking - I'm a little bit thinking out

14 loud because I got all this new information.  I was

15 thinking that if you got a list of the open complaints with

16 the officers involved, you can say, you know what, I'm

17 about to depose this officer, therefore, I want that

18 complaint right now.  For other complaints you might say,

19 you know what, I can wait on that.  I'll wait till it's

20 closed, I'll wait till it's farther along.  Is that going

21 to be of some utility to you?

22             MR. MOSKOVITZ:   Your Honor, I have a slightly

23 different suggestion which is if all of the open files are

24 produced, we'll have more information available to us to

25 analyze those files and likely determine later whether

1                                                           21

2  there's any that we don't think we need a subsequent

3  production when they're closed, and we'll probably have a

4  better sense of any that we think are particularly

5  necessary for a subsequent production.  I mean, so, for

6  instance, the email that was provided to us from the CCRB

7  general counsel dated June 28 says that 38 of the open

8  investigations are awaiting member of service interviews.

9  And so if we get open files and they have interviews of

10  officers, that might be a rather complete file, for

11  instance, versus other files that we realize that there's

12  going to be a significant amount of investigation and fact

13  gathering that happens after the file was produced to us,

14  we might be able to narrow our request for the subsequent

15  closed files based on our review of the full open file that

16  we receive.

17          THE COURT:   Okay, so it sounds like you'd rather

18  have them all now.

19          MR. MOSKOVITZ:   Yes.

20          THE COURT:   Okay.  I'm going to order production

21  of them all now with no promise that there'll be a second

22  production once it's closed.  I'm saying that based upon

23  the burden that's involved.  But I'm open to the plaintiffs

24  saying that there should be a second production once it's

25  closed in particular cases, and I'm open to the City saying

22

1

2  why it would be burdensome in those cases.  So any

3  questions about the ruling?  First, Ms. Weiss, any

4  questions?

5       MS. WEISS:  Yes, since this is a burden to the

6  Civil Complaint Review Board, we would ask that they have

7  until a date past July 31 to get them to our office and

8  give us a chance to review them and get them to plaintiff

9  since we all know that July 31 is the deadline for document

10  discovery.  We would request a date past that to get these

11  documents to give CCRB a little extra time to get them

12  together to maybe ease the burden on them a bit.

13       THE COURT:  Well, Ms. Weiss, what I heard from

14  Ms. Jamieson was that it was eight attorneys' days to do

15  190 something closed files.  Since we're talking, you know,

16  about 60 percent of that, so I think we're looking at more

17  like five attorneys' days, I think you have to be able to

18  find that on a sooner basis.  First of all, it's hard to

19  believe that there'd be much to review a second time once

20  they produced it.  When they did the 199 files, what did

21  you have to do to review it?

22       MS. WEISS:  We had to go through and are

23  continuing to go through all of them.  It's our

24  responsibility as the attorneys for the City to not produce

25  any documents without looking at them first.  So grant it

23

1

2    there is, you know, they are attorneys of course and they

3    are reviewing them, but we have Rule 26 obligations, our

4    names are on the docket in this case, and we've got to look

5    through them.

6            THE COURT:   Ms. Jamieson is not checking for

7    privilege?

8            MS. JAMIESON:   I'm sorry, Your Honor, I didn't

9    hear the last part of what you said.

10           THE COURT:   It was actually a question for Ms.

11   Weiss.  Even though it's about you, Ms. Jamieson, I'd like

12   to have the answer.  Ms. Jamieson is not checking for

13   privilege?

14           MS. WEISS:   I do not know what Ms. Jamieson is

15   doing.  I don't think that she is one of the attorneys who

16   is getting the documents and getting them over to our

17   office.

18           THE COURT:   I'm sorry, I (indiscernible).

19           MS. WEISS:   I'm not sure --

20           THE COURT:   I would think that CCRB, since it

21   has attorneys, would be checking for privilege when it does

22   this review.  It's not --

23           MS. WEISS:   I would imagine they are.

24           THE COURT:   So it's hard to see what else you

25   have to do if the privilege review is being done.

```
 1                                                    24
 2          MS. WEISS:   We still feel that we have an
 3   obligation to look at them.  I mean the attorneys at the
 4   CCRB have other cases and other things they need to do
 5   besides this, so, yes, even if it's five attorney days and
 6   there is more than that left until the discovery deadline,
 7   I don't know that they can drop all of their other
 8   obligations to do this.
 9          THE COURT:   All right, I'm going to give you a
10   production date of August 13 for all the open
11   investigations.
12          MS. WEISS:   Thank you.
13          THE COURT:   Okay, Mr. Moskovitz, we dealt with
14   the open investigations now?
15          MR. MOSKOVITZ:   Yes, Your Honor, and, you know,
16   I'll speak with Ms. Weiss after the conference about
17   conferring with regards to, if I understand and my math is
18   right, there's about 420 complaints that aren't encompassed
19   by the 330 that we just covered.  So I guess we'll confer
20   about documents that are available from CCRB and any
21   information that we can get about those complaints.
22          THE COURT:   Okay.  All right, now we have the
23   complaint or disciplinary history.  Mr. Moskovitz, if you
24   want to turn it entirely over to another attorney, I'm
25   willing to do that.  The attorney has to then deal with
```

```
 1                                                    25
 2   everything I ask on that.  Is it going to be you or the
 3   other attorney?
 4          MR. MOSKOVITZ:   No, that's fine, Your Honor,
 5   I'll continue speaking about this issue.
 6          THE COURT:   All right.  Okay, so I'm trying to
 7   understand what officers we're talking about who are not
 8   defendants who you're seeing disciplinary history for.
 9          MR. MOSKOVITZ:   So, Your Honor, if I could say
10   at the outset of this issue, the City and the plaintiffs
11   have not had the opportunity to confer about the scope of
12   which officers' disciplinary histories would be
13   proportional or would not be burdensome, would be agreeable
14   amongst the parties.  And the reason is because the City
15   has given so far only a blanket objection to producing
16   disciplinary histories for any non-named defendant
17   officers.  So this has a tremendous impact, for instance,
18   on the Attorney General's case where there are no named
19   defendant officers and yet their case involves a
20   substantial Monell claim with regards to the City's failure
21   to discipline officers, and Judge McMahon cited those
22   specific allegations in sustaining the Monell claims in
23   these various cases.
24          And so I don't believe the issue is particularly
25   keyed up for the Court today to address which specific
```

1

2  officers' disciplinary histories are at issue here.  We

3  sort of need to get past the first logjam of does the City

4  need to produce disciplinary histories for any officers who

5  aren't named defendants.

6          THE COURT:   Oh, okay.  So we're more in a

7  general level as to the principle of whether disciplinary

8  history could be relevant, that's where you think the

9  disagreement is?

10          MR. MOSKOVITZ:   That is the only issue that we

11  have come to impasse as a preliminary matter.  The City's

12  taken the position that officers who are not named as

13  defendants in cases should not have their disciplinary

14  histories disclosed at all.

15          THE COURT:   Okay, because the way I read it, the

16  City had its own characterization of this, as you're

17  seeking history for any and all officers ever in a CCRB

18  investigation, whatever capacity, whether the subject or

19  the witness and so forth and so forth.  So that doesn't

20  sound like that's really the issue.  It sounds like the

21  issue from your point of view is is it ever going to be

22  relevant an officer's history, which the City has obviously

23  conceded for the named defendants.  I'm not really sure

24  what we're arguing about.

25          I mean obviously disciplinary – one of your

1
2  claims is, and as upheld by Judge McMahon, was that one of
3  the aspects of deliberate indifference being alleged is
4  that the City was not disciplining officers and, therefore,
5  maybe with respect to protests or not, I'm not sure, but it
6  resulted in the officers behaving in a certain way in terms
7  of policing the protests that might not have happened had
8  the discipline process been performed in the way plaintiffs
9  think it should have been performed.
10        So if you read Judge McMahon's decision, it seems
11 obvious that there's relevance to the history.  You seem to
12 recognize that.  Do you think we can make any headway today
13 as to, I mean if you're taking the position that it's only
14 going to be relevant for an actual named defendant, I'm
15 certainly rejecting that.  I guess I'll hear from you if
16 that's truly your position.  Is that truly your position?
17        MS. WEISS:   Well, I guess it's hard for the
18 defendants to state their positions because I guess we
19 don't know the extent of what plaintiffs are looking for.
20 But as we stated in our letter, disciplinary histories are
21 public.  They're on City websites, they're on CCRB
22 websites, they're on private websites.  Plaintiffs or
23 anybody can look and see what's there.  And as I think I
24 put in my letter, if they take a look and see something
25 that they believe is relevant with respect to an officer

1

2  who is a defendant or a witness or someone who's in charge

3  or something, you know, at that point we can discuss

4  perhaps giving over that officer's disciplinary history.

5           But from what we understand, what they want is so

6  broad that we don't even know where to get started.  You

7  know, if an officer, you know, lost his memo book 12 years

8  ago, how does that become, you know, an officer who

9  happened to, you know, be standing there at a protest and

10 is shown on someone's body cam footage and they're able,

11 the plaintiffs are able to identify that officer by his

12 badge number which is shown in the footage.  I think that

13 Mr. Moskovitz is right that maybe this isn't quite ripe for

14 this conference because we're not really sure what

15 plaintiffs are looking for.

16          I don't think that that was ever, you know, we're

17 not opposed to perhaps providing some relevant disciplinary

18 histories, but I think perhaps the first step for

19 plaintiffs would be to look at all the public websites for

20 officers that they are interested in and go from there and

21 then come back and speak to us about it, and if they see

22 something on there that looks like it might be relevant, we

23 can look further into that.

24          MR. MOSKOVITZ:  Your Honor, if I could respond

25 to that.

29

THE COURT:   Well, I mean I realize now that I re-read the letters is I don't even know what discovery request is at issue here.  Are there specific requests, Mr. Moskovitz, that we're trying to address here?

MR. MOSKOVITZ:   It's discovery request, document request 16A from the plaintiffs.

THE COURT:   Okay, if it's quoted in your letter, I'll find it easily.  If not, you're going to have to read it to me.

MR. MOSKOVITZ:   I don't believe it's quoted in our letter, and I'll read to you – it's tied to interrogatories where we ask for the identities of officers who had received complaints about their conduct at protests.  So the way that the document requests reads, and this is on page 25 of exhibit 2, our letter.  For each of those officers identified in interrogatories 8 and 9, all personnel related records in the possession of the NYPD or the City of New York, including, but not limited to – it's paragraph A, records reflecting the officers' histories at the CCRB and IAB investigations, as well as the underlying records, but we're not at that point of the underlying records.

THE COURT:   Okay, but the group we're talking about is, what, officers who had complaints?  Say it again.

```
1                                                    30

2              MR. MOSKOVITZ:   Yes, let me go back to

3   interrogatories 8 and 9 so I can give you – (pause) –

4   sorry, just one second, Your Honor.

5              THE COURT:   Take your time.

6              MR. MOSKOVITZ:   Okay, so interrogatory, so the

7   request encompassed any of the officers identified in

8   interrogatory 8 which is each and every officer associated

9   with or otherwise involved in the circumstances in the

10  various complaints in these cases.

11             THE COURT:   Okay, those are the names

12  defendants.  I don't have to worry about those people I

13  assume, or they're not the named defendants?

14             MR. MOSKOVITZ:   I apologize, just one second.

15  We have some cross-referenced discovery requests, so it

16  takes a little bit of work for me to --

17             THE COURT:   Take your time.

18             MR. MOSKOVITZ:   -- on the fly.

19             THE COURT:   I'm not in a rush.

20             MR. MOSKOVITZ:   So interrogatory 7 and 8

21  actually work together.  So in interrogatory 7 we ask for,

22  and this sort of dovetails with our earlier discussion

23  about the CCRB complaint.  So interrogatory 7 addressed the

24  identities of any individual who had submitted a complaint

25  to the CCRB having to do with any of the summer protests.
```

```
 1                                                       31
 2              THE COURT:   Okay, but that's the complainants.
 3              MR. MOSKOVITZ:   Right.  And then interrogatory 8
 4   asks for the identities of any of the officers involved and
 5   the factual circumstances of those complaints.
 6              THE COURT:   Okay, and are we suing the CCRB as
 7   the repository of such complaints or are there other places
 8   to complain?
 9              MR. MOSKOVITZ:   We did identify in the
10   interrogatory, and this is number 7, CCRB, DOI, the City
11   Law Department, but it was a not limited to list.  So I
12   think fairly the NYPD, CCRB, DOI, the New York City Law
13   Department would encompass the vast majority of what we're
14   looking for.
15              THE COURT:   So I mean I think, and have you
16   gotten an answer as to who these people are?
17              MR. MOSKOVITZ:   No, Your Honor.
18              THE COURT:   Okay.  So at some point – let me
19   just think big picture here.  I don't know that I need to
20   make a ruling on this yet because I don't think it's been
21   sufficiently fleshed out.  But for me the big picture is
22   there's going to be a set of officers who certainly are not
23   necessarily the named defendants who will be accused of
24   behaving improperly at the protests, presumably either
25   excessive force or false arrest, something of that nature.
```

1
2  And those will be the officers whom the plaintiffs will

3  want to use as their set of people about whom they will

4  make arguments that they were not properly trained, and,

5  therefore, bad things that they're accused of ensued.

6       So for those – when that developed, for those

7  people, certainly their disciplinary history with respect

8  to, you know, false arrests or excessive force are going to

9  be relevant, not losing a memo book or having taken an

10  improper vacation or something like sick leave or something

11  like that.  That's my big picture.  I don't know if you

12  need anymore for me right now.  Mr. Moskovitz, do you think

13  that takes us far enough for today?

14       MR. MOSKOVITZ:   I certainly think that moves the

15  ball forward, yes, Your Honor, and the big picture issue

16  that we think that resolves the dispute about is named

17  defendants versus non-named defendants.  There's one small

18  additional point that I think would be greatly helpful,

19  particularly in the next few days and in the next week,

20  which is we have depositions lined up, in fact, we've had

21  depositions for the last week where we don't even have the

22  disciplinary histories for those officers.  And so it would

23  be greatly helpful in achieving what the City wants to

24  achieve which is having these depositions go forward and be

25  completed, which we've been unable to do since we don't

33

1

2  have all of the documents available to us before those

3  depositions.

4          So if we could start on a rolling basis receiving

5  from the City, and at this point I'm only talking about the

6  notice (indiscernible) issues to discuss about depositions.

7  But at this point in regards to the complaint histories, if

8  we could have those produced in advance of the depositions,

9  that would certainly move things forward.

10         THE COURT:   These are officers who are accused

11 of excessive force or false arrest?

12         MR. MOSKOVITZ:   Including named defendants in

13 the various cases.

14         THE COURT:   Who may not be accused of it, who

15 may be higher up people?

16         MR. MOSKOVITZ:   Right, but so far the only

17 depositions that we've been taking are of line officers.

18         THE COURT:   Who are accused of false arrest or

19 excessive force?

20         MR. MOSKOVITZ:   Yes, Your Honor, being involved

21 in the protest events of either using excessive force on

22 the plaintiffs or engaging in the arrests of the

23 plaintiffs, right.

24         THE COURT:   Okay.  So, Ms. Weiss, it seems to me

25 that the disciplinary history of such officer, I mean I've

```
 1                                                       34
 2   already ruled, as have many other courts in similar
 3   circumstances, that when you have an officer accused of
 4   false arrest, excessive force, discipline for that conduct
 5   is something that should be produced.  So --
 6           MS. WEISS:   Yes.  We --
 7           THE COURT:   That needs to be produced, and you
 8   should be producing it for line officers.  I assume that's
 9   not overly burdensome --
10           MS. WEISS:   Yes, Your Honor, we --
11           THE COURT:   -- to at least give a list of the
12   incidents of that type.
13           MS. WEISS:   We do have those documents, and we
14   are producing them and we will, we're trying to produce
15   them in a batch as plaintiffs had originally requested, but
16   to the extent that we can't get them that batch out prior
17   to each deposition, we'll make sure to get that officer's
18   disciplinary histories prior to that deposition.  We can
19   certainly do that.  And I --
20           THE COURT:   I didn't understand what you just
21   said.  First, you told me that you suggested you wouldn't
22   be able to get it out, then you said you would be able to
23   get it out, but maybe you were talking about two different
24   things.
25           MS. WEISS:   What I was trying to say, I
```

1

2  apologize, what I was trying to say was that we have the

3  disciplinary histories of the named police officers who are

4  currently being deposed.  Plaintiffs had originally asked

5  for all productions that we would not produce documents

6  piecemeal, that we produce them in large batches.  So we

7  were hoping to get out all of the disciplinary documents in

8  a large batch.  Clearly, it's not going to get out prior to

9  these depositions which are occurring, you know, as soon as

10  tomorrow.  So we will produce them prior to the depositions

11  just for that officer rather than in the large batch to

12  ensure that plaintiff's counsel has them prior to the

13  depositions of the officers.

14         THE COURT:  Yes, that's critical obviously.  I

15  think it's so obvious, I don't know it would be questioned.

16  If they're deposing an officer, they should have all the

17  documents relating to that officer or that arrest,

18  including the disciplinary history.

19         Okay, are we done, Mr. Moskovitz, with your

20  application?

21         MR. MOSKOVITZ:  Yes, Your Honor.

22         THE COURT:  All right, Ms. Weiss, anything else

23  on Mr. Moskovitz's application?

24         MS. WEISS:  No, Your Honor.  Just actually to go

25  back slightly on the disciplinary histories of the officers

1
2   against whom complaints were made for these demonstrations.

3   I think once the CCRB records are produced, then that will

4   make that universe of officers much clearer, and we can

5   start at that point to talk about that and the histories of

6   those officers once we know who they are, which is, you

7   know, coming very soon.

8           THE COURT:   Frankly, I would've thought that the

9   CCRB file already has the disciplinary history.  Ms.

10  Jamieson, is that, when you did all those closed files, the

11  193 closed files, did they have disciplinary history or not

12  or only sometimes?

13          MS. JAMIESON:   I'm not sure if they do, but if I

14  can doublecheck.

15          THE COURT:   No, you don't have to.  I was just —

16  you don't have to check.  We'll find out soon enough.  And

17  plaintiffs already have it somewhere, someone knows the

18  answer to that.

19          Okay, let's move on then.

20          MR. MOSKOVITZ:   Your Honor, if I might just for

21  one second.  I hate to muddy waters that seems clear but I

22  just want to clarify one aspect.  The disciplinary

23  histories we're talking about here at the very least

24  encompass the CCRB histories and the central personnel

25  index, indices, the CPI which is a history that's

37

referenced specifically in this court's local rule 8310.  I

just want to make sure we're at least covering those, and

if not, also the IAB resume.  Those are the three standard

disciplinary histories that are turned over in cases like

this.

THE COURT:  Ms. Weiss.

MS. WEISS:  Yes, that's right.

THE COURT:  Okay, anything else, Mr. Moskovitz?

MR. MOSKOVITZ:  No, Your Honor, thank you.

THE COURT:  All right, Mr. Lieb, you're dealing

with the depositions, is that right?

MR. LIEB:  Yes, Your Honor.

THE COURT:  On the big picture on this, I don't

think we're going to solve the total deposition issue

because the plaintiffs did not have a chance to respond to

this letter which, you know, is addressing the issue of the

total number.  So I don't want to, first of all, I don't

think there's been a serious negotiation about this.  So

that needs to happen as soon as possible about the total

number and dates and whether there should be, you know, I'm

not quite sure what the defendant's theory is on two days a

week given that there's only about 19 or 20 weeks between

now and my December 5 presumptive cutoff date, though I'm

allowing for a little bit of spillage after that.  So maybe

1

2  they're assuming doubletracking on those Tuesdays and

3  Thursdays.  But even under their view, that only gives you

4  about 40 days.

5          So the parties need to have a serious discussion

6  about the total number, and people need to present, you

7  know, arguments in a more serious and thought-through way.

8  Some of this, you know, the City's claiming burden.  Some

9  of this may have to do with their resources and they may

10  have to be more forthcoming about that and how they're

11  staffing the case and what the available pool of people to

12  staff it with is.  They have to talk about why there can't

13  be doubletracking if they're trying to limit it to two

14  days.  You should try to figure out why there shouldn't be

15  at least three days.  I would've thought Tuesday,

16  Wednesday, Thursday would be a better way to think about

17  it.

18          We should be talking about whether some

19  depositions should be limited to three and a half hours.  I

20  would've thought that might've been something for some of

21  the line officers but maybe not and maybe it's true of

22  other people that the plaintiffs expect to depose.  But

23  we're nowhere near me being able to rule on the total

24  number of depositions yet.

25          So let's talk about the issues that were actually

39

1
2   raised by the plaintiffs in their letter.  It's a little

3   bit hard for me to start dealing with minutiae of

4   scheduling depositions and whether someone improperly left

5   early, you know, in terms of the request for costs, let's

6   save requests for costs for the end of the deposition

7   period.  You can accumulate any claims like this.  I don't

8   want to start spending time on that now.

9         The City, you know, made certain commitments to

10  producing deposition, deponents in the very short term.

11  Some things are going to be out of their control, I

12  understand that.  I'm willing to accept that they want to

13  schedule depositions at a time when the officers are on

14  duty, but that means they have to have a much better

15  understanding of what those dates are and doing the

16  scheduling and not being surprised by officers' schedules.

17  And they should have backup people if necessary so that

18  deposition dates aren't wasted.  Or at least, you know,

19  needs to be scheduling multiple depositions during the week

20  so that if something gets cancelled, there isn't a loss of

21  time.

22        So, Mr. Lieb, if you have any ideas about exactly

23  how to do this, I'm not really prepared to sign your order

24  as it is, but maybe I can do something to take you along

25  the direction of where you need to go.  If you have any

                                                                40

ideas, tell me.

            MR. LIEB:    Understood, Your Honor.  I think, you
know, as Your Honor just identified, the real crux of the
issue that we're presenting in our application is the
City's non-compliance, which is really just not the
commitment that it made but the directive that the Court
gave it to provide, you know, ten deponents by July 19 and
then a second traunch thereafter.  Now, we've gotten
through parts of four depositions, one of which is the one
where the deponent walked out at 1 o'clock, one of which
was completed, and two of which were not completed because
certain very basic documents like the deponent parties'
activity logs or body worn camera footage had not been
produced in advance of the deposition.

            So I think int terms of what the Court could do,
you know, our proposal really had two parts.  I think the
first is just to order in very clear terms that the
depositions that we believe to be prospectively on calendar
which are basically the five starting with Sergeant Quigley
(phonetic) tomorrow with the exception of the continuation
of Officer Jean Pierre which that is the one that has not
expressly been confirmed, is to order that those proceed so
that there's absolutely no ambiguity that those are
happening.  And, second of all, to basically require that

41

1

2   the City at regular intervals provide us with real dates,

3   not dates on which people are on vacation or have jury

4   duty, but real dates, two real dates for any number of

5   officers that are one to four weeks out.  The plaintiffs

6   will confer in short order and confirm those dates.

7          So I fully take the point about, you know, the

8   costs, Your Honor, but I think without the regular court

9   ordered process for the identification of dates, we will

10  end up where we are right now which is barely completed any

11  depositions because the majority of the dates that we were

12  provided were not real dates on which the officers were

13  actually available to testify.

14         So, you know, I do think that a weekly ten-

15  person, ten deponents two days each every week with those

16  dates one to four weeks out is a reasonable way of keeping

17  this on track so that we fill up the calendar with real

18  dates and start making real headway that we have not yet

19  been able to make despite the Court's directive that we do

20  so.

21         THE COURT:  I'm trying to understand what you

22  mean by two days.  So there's a particular person, you

23  know, Sergeant Cojerts (phonetic), I'm just pick the first

24  name on your list, why shouldn't it be enough for them – it

25  seems to me that you folks should between the lot of you

                                                                    42

1

2   have someone who can cover any particular date, and it may

3   be hard for the City to come up with two dates for one

4   officer.  I don't know, maybe it's not.  But why is it you

5   need two dates?

6            MR. LIEB:   Your Honor, the issue is simply that

7   some of these depositions are relevant across cases and

8   some of them are largely relevant to only one or two of the

9   consolidated cases.  So the issue is simply to allow for

10  the possibility that the taking attorney who's actually

11  from, you know, for example, Wood or Yates, you know, has a

12  conflict that date so there are two available dates so we

13  don't have to have a protracted back and forth, and we can

14  simply pick from one of two options presented to ensure

15  that --

16           THE COURT:   Okay --

17           MR. LIEB:    -- (indiscernible) is present.

18           THE COURT:   And how quickly can you pick among

19  those two dates?  I assume very quickly.

20           MR. LIEB:   Yes, Your Honor, I don't see any

21  reason why, I mean I don't think I would be speaking out of

22  turn to say 48 hours or perhaps even less.

23           THE COURT:   Okay.  So and let me turn to the

24  City.  I'm certainly disturbed that the promise that I was

25  given which is ten depositions by July 19 did not occur,

43

1

2  and there has to be much better efforts by the City to come

3  up with real dates for these officers.  I'll issue whatever

4  order I need to to make it happen.  It seems like having

5  you provide two dates, you know, is a reasonable way to do

6  it.  You tell me what the problem is.

7           MS. WEISS:   Well, Your Honor, we apologize to

8  you and to counsel.  It certainly didn't work out the way

9  we expected or planned, but we have been working on a

10  better system with more personnel.  Someone with better

11  access to the officers' schedules, we had been going

12  through a less direct process, and we were able to get

13  access to a more direct line into officers' schedules.  So

14  we're quite confident that things are going to go much

15  smoother now.

16           With respect to two dates for officers, I do

17  understand why plaintiffs want it especially in some of the

18  cases like Yates or Wood where there's less attorneys on

19  each of those cases.  I think we can try that for some of

20  the officers, especially the ones where we know that

21  they're involved in some of those cases.  It's sometimes

22  difficult to hold multiple days open for an officer because

23  either their command needs them because they might be short

24  staffed or often one of the district attorneys might need

25  them for a criminal appearance or something like that.  I'm

1                                                                    44

2   not saying it can't be done, but it may be difficult in

3   some circumstances, but we'll see what we can do, and

4   perhaps we can, you know, if there seems to be a particular

5   problem with a particular officer, we'll do our best to

6   work that out with counsel.

7              But I think that --

8              THE COURT:   Hold on.  Hold the thought and let

9   me just turn to Mr. Lieb.  You must know on this list who

10  are the people that you really need two dates for because

11  of the problem that you suggested.  I see that, you know,

12  25 however many people on this list, which of those fits

13  into this category?

14             MR. LIEB:   Your Honor, I am not prepared to be

15  able to say off the cuff, you know, which of these specific

16  officers we would require two dates versus one for because

17  I do not know offhand who each of these deponents, you

18  know, is the principal questioning attorney.  So I can

19  certainly follow up in short order with that information,

20  but I am not prepared to speak to that, you know, offhand -

21  -

22             THE COURT:   And do you know about how many

23  officers on this list fit into that?

24             MR. LIEB:   I mean, look, I think a substantial

25  number of them are relevant to all of them, but there's

1

2  another problem here, Your Honor, which is in part that we

3  don't actually know because not all of the documents have

4  been produced, which of these protests all of these

5  officers attended.  We know some of them, and that's the

6  basis for our having noticed their depositions.  But

7  because basic documents like body worn camera footage,

8  activity logs formally known as memo books, the DAT's that

9  they issued including in some cases for our own clients

10  were not produced in advance of the prior depositions, we

11  are operating somewhat in the dark.

12        So I have some difficulty identifying exactly

13  which of these deponents are relevant to multiple cases,

14  but I will say, you know, to be sent anything about Mott

15  Haven that is relevant to multiple cases because there's

16  significant overlap there, and so I think a majority,

17  (indiscernible) majority of these deponents are relevant

18  across multiple cases such that it would be beneficial to

19  have the ability to have two dates in case there is a

20  scheduling conflict for one.

21        THE COURT:  Well, but if the majority are across

22  all cases, that to me suggests you only need one date.

23  Right?  For those people.

24        MR. LIEB:  Your Honor, I think it is very

25  difficult for us to commit, to understand how we're going

46

1

2  to be able to staff these depositions when we have not

3  gotten interrogatory responses as to which protests these

4  specific individuals attended.  I understand the Court's

5  point, and if the Court's directive is that it's going to

6  be one date, I can't parse the list at this particular

7  moment to say these are those deponents for whom we need

8  two dates.

9         I think in the interest of getting depositions on

10  the calendar, we will be prepared to respond very quickly

11  if and when presented with two dates such that those dates

12  don't need to be held for more than 24 hours.  So if the

13  concern is about holding dates and making those officers

14  unavailable to command, to their commands, we can commit to

15  the Court to responding very quickly once presented with

16  two dates and to say we're doing this one, take that one

17  off the calendar.  So I understand the point that the Court

18  is making, but I think that we can work very quickly to

19  make sure that we confirm those in short order.

20         THE COURT:  Okay, this is my plan.  Ms. Weiss,

21  you tell me – I think I've heard from you on this, but if

22  there's anything else, I'll hear one last thing.  My plan,

23  as to the first paragraph of the proposed order, I mean I'm

24  prepared to orally order, that's the schedule that you've

25  already agreed to, what appears through 21, July 21 through

```
 1                                          47
 2  29, is that right, Ms. Weiss?
 3          MS. WEISS:   My computer just shut itself down,
 4  and I cannot bring it up.  No, it is not what we have
 5  agreed to.  It is other than Officer Jean Pierre.
 6          THE COURT:   So Quigley, all those are wrong.
 7          MS. WEISS:   Salla is wrong.  I'm sorry, if you
 8  could bear with me one second.  I don't want to --
 9          THE COURT:   Take your time.
10          MS. WEISS:   -- give you wrong information.
11          THE COURT:   Take your time.
12          MS. WEISS:   Jean Pierre is wrong.
13          THE COURT:   And the others?
14          MS. WEISS:   Are correct.  The rest are correct.
15  Only Jean Pierre is wrong.
16          THE COURT:   All right, Jean Pierre I'll take out
17  of the picture.  You should produce, you're ordered to
18  produce the people on the dates listed in that first
19  proposed paragraph.  Okay?
20          MS. WEISS:   I'm sorry, Your Honor, also Salla is
21  wrong.
22          THE COURT:   What's the correct date for Salla?
23          MS. WEISS:   We do not have a date yet.
24          THE COURT:   Okay, well, we'll add Salla to the
25  list in the second paragraph and we'll add Jean Pierre to
```

48

1

2  the list in the second paragraph then.  Okay, now so what

3  I'm going to do with the second paragraph is I'm going to

4  order that beginning July 21 you provide the plaintiffs

5  with the deposition dates for any ten members of the NYPD

6  on the list below.  If the plaintiffs have a problem with

7  it, they have to tell you within 24 hours, and then you'll

8  figure out another date.  But they have to be real dates,

9  and you have to in advance, at least 48 hours in advance,

10 I'm sorry, two business days in advance, provide the

11 documents that relate to that officer.  And if you don't,

12 then there's going to be a problem because you're going to

13 have to do it twice or there'll be a penalty or something.

14 But it's insanity to have these depositions without having

15 the documents that relate to the officers.

16       MS. WEISS:   Your Honor, can you just clarify

17 what documents are being referred to just so that we're all

18 clear?

19       THE COURT:   I mean I assume that these officers

20 are involved in specific arrests that have been identified

21 in some way during the course of the discovery so far.  Is

22 that — am I wrong on that?

23       MS. WEISS:   Some of them have been involved in

24 arrests, some have not.  Some are just, you know, we know

25 one for sure was involved with a plaintiff in a case in the

```
 1                                                  49
 2   Eastern District, you know, and not these consolidated
 3   cases as far as we know.  So we're not entirely sure how
 4   all of these --
 5              THE COURT:   Where --
 6              MS. WEISS:   -- people were involved.
 7              THE COURT:   Mr. Lieb, what do you do about the
 8   document aspect?
 9              MR. LIEB:   Well, Your Honor, there were emails
10   that were sent by counsel for Sow to counsel for defendants
11   on July 9, sorry, July 8 and July 13 laying out very
12   specifically what the documents are that we expect to be
13   produced 48 hours prior to the scheduled depositions, for
14   which we received no response.  I will say that the sum and
15   substance of that though is not just if they were, you
16   know, an arresting officer at a specific protest for which
17   a claim arises in this case, but whether there are, you
18   know, memo books, body worn camera footage from their
19   activities at other protests that are within the scope of
20   the litigation.  Those should be provided in advance of
21   their depositions so that they can be asked about those
22   activities.
23              So I have a bullet pointed list that I'd be happy
24   to go through in as much detail as the Court would like me
25   to, but I think the headline is, you know, personnel
```

1                                                           50

2  records, body worn camera footage, activity logs, any

3  arrest processing documents that are related to them, any

4  use of force related documents for that deponent, any

5  documents related to any injuries the deponent may have

6  suffered, all of these related to any of the, you know,

7  subject protects to which they respond.

8              THE COURT:   Ms. Weiss, is this doable or not?

9              MS. WEISS:   (no response)

10             THE COURT:   Ms. Weiss --

11             MS. WEISS:   Hello, this is Dara Weiss, sorry, I

12  got knocked off the call.

13             THE COURT:   Well, what was the last thing you

14  heard?

15             MS. WEISS:   Mr. Lieb I think was saying that

16  plaintiffs sent emails on July 8 and 13 about documents.

17             THE COURT:   All right, Mr. Lieb, you're going to

18  have to repeat what you said.

19             MS. WEISS:   I apologize.

20             THE COURT:   No problem.

21             MR. LIEB:   Yes, Your Honor, and I will repeat it

22  and then I would ask a couple of additional brief notes at

23  the end.  So I was referring to the July 8 and July 13

24  emails from Sow counsel which contain an enumerated bullet

25  point list of the documents that we believe are necessary

1                                                     51

2   to effectively conduct line officer depositions to which

3   plaintiffs received no response.  And without ticking off

4   every bullet point, I was explaining in sum and substance

5   that those documents are body worn camera footage, activity

6   logs, arrest processing related documents, use of force

7   related documents, injury related documents, disciplinary

8   records, and unusual occurrence reports and the like

9   related to any of the subject protests to which the officer

10  responded.

11         You know, one efficient way of doing, of making

12  sure that we have all that would be to provide a list in

13  response to our interrogatory about which of these people,

14  you know, which of these protests these people actually

15  attended.

16         The note that I wanted to make, Your Honor, is

17  that with regard to the Quigley and Terrangelo depositions

18  that are supposed to be going forward this week, these are

19  documents that we do not have.

20         MS. WEISS:   Your Honor, first of all, that's a

21  huge amount of documents.  The reason that we had discussed

22  doing line officers first was because it was agreed that

23  plaintiffs could do the line officers without a lot of

24  documents.  We simply are not going to have the person

25  power to get all of these documents 48 hours before each of

1                                                              52

2  these depositions between – we staffed up to have attorneys

3  to be able to defend these depositions.  We staffed up to

4  get out the tens of thousands of pages of document

5  discovery which these documents to some extent would be

6  part of, but then to, you know, to get them to plaintiffs'

7  counsels 48 hours before the depositions I just don't know

8  that it came happen.  It's 16 categories of documents.

9          And some of them are, some of them are pretty

10 simple, you know, relatively, but, you know, like activity

11 logs, you know, the officer should be able to bring that up

12 on his or her phone, but things like, you know, arrest

13 processing documents that, any arrest processing documents

14 that that officer was involved with for any arrests that

15 they made at any of these protests is not such an easy

16 thing to find.  The officer wouldn't have that.  Documents

17 related to uses of force by the – these are not, these are

18 not usually the simple types of documents that plaintiffs'

19 counsel need before a simple deposition of a simple line

20 officer.

21         Plus I want to point out that in this list of 16

22 types of documents most of them are categorized with

23 including but not limited to wording.  You know, things

24 like any other documentation regarding the deponent's

25 activities on the days of incident, you know, NYPD radio

53

communications, a lot of these things are being produced in
the large productions that plaintiffs are getting in this
lawsuit, but to have them produced to plaintiffs prior to
the depositions is a lot.  Things like memo book, you know,
disciplinary history to the extent it's relevant.  Body
worn camera, we could get it for some of them.  A lot of it
has been produced already.  Arrest reports, if they
arrested one of the plaintiffs, we could get pretty easily.
I think plaintiffs have already been provided with all the
arrests reports for all of the protests.  But some of these
documents are really burden --

          (audio cuts out)

          THE COURT:  Oh, no.  Hello?  Mr. Lieb, can you
hear me?

          MR. LIEB:  Yes, I can, Your Honor.

          THE COURT:  All right, she dropped off, John?

          THE CLERK:  Yes.

          THE COURT:  Okay, let's wait for her to back,
call back in.  I thought I had been dropped off.

          (pause in proceeding)

          MS. JACOBS:  Hi, this is Elissa Jacobs from
Corporation Counsel.  I believe Ms. Weiss is also trying to
get back on the call.

          THE COURT:  Okay.

```
 1                                                 54
 2              (pause in proceeding)
 3              MS. JACOBS:   She is on her way in.  I apologize
 4     for the technical issues, Your Honor.
 5              THE COURT:   No problem.
 6              MS. WEISS:   Hi, sorry.
 7              THE COURT:   Ms. Weiss.
 8              MS. WEISS:   Yes, I'm so sorry.
 9              THE COURT:   That's okay.
10              MS. WEISS:   I'm calling from a different phone.
11              THE COURT:   We heard the sound when you dropped
12     off, so we didn't conduct any business.  You were in the
13     middle of something, so you can finish.
14              MS. WEISS:   So I don't know where I dropped off,
15     but I know I was talking about the burden and how a lot of
16     these documents are well beyond what we would normally
17     produce or what plaintiffs would normally need for a simple
18     line officer or arresting officer deposition.
19              THE COURT:   When are they going to get these
20     documents?
21              MS. WEISS:   A lot of them have been produced in
22     the large production such as arrest reports --
23              THE COURT:   I should've been clear.  When are
24     they going to get the documents that they need to conduct
25     these depositions?
```

55

2    MS. WEISS:   I can't answer that right now.  I've

3  got to talk to my team and see where things are, but things

4  like the arrest report for the arrestee at issue for that

5  particular officer's deposition and that officer's

6  disciplinary history, that officer's memo book, we could

7  certainly get it to them I would hope, you know, 48 hours

8  prior to the deposition, but I really do need to talk to my

9  team about exactly when we could get it to them.  But some

10  of these other documents in these 17 or so categories, I

11  don't even – certainly not prior to a deposition.  I think

12  that in, when we're done producing all of our documents by

13  July 31, those documents would be in there.

14    THE COURT:   Okay, well, that's the answer to my

15  question.  Okay, so to me it's a sort of a stark choice.  I

16  mean none of this was presented in the letters.  The

17  letters were about deposition schedule not the document

18  production, at least Mr. Lieb's letter.  So it's easy

19  enough for me to order what you asked for in, you know,

20  that second paragraph, reducing it to a deposition date.

21  The question is are you going to want to go forward if, in

22  fact, you're not getting until July 31 everything you want

23  and you're only, we would only be able to get 48 hours

24  beforehand the more limited materials that Ms. Weiss is

25  talking about, knowing you're only to get one deposition.

1                                                                56

2          Because the choice is to go forward before the

3   31st with the more limited materials or to do it after the

4   31st and maybe now we'll have triple tracking of

5   depositions because it's not going to reduce the number of

6   depositions.  And if we have to have sort of a separate

7   group of line officer depositions or depositions of people

8   on this list that start happening in August instead of

9   July, then it'll be on top of whatever we were otherwise

10  planning to have in August.  So do you see the choice, Mr.

11  Lieb?  I think it should be up to you.

12          MR. LIEB:   Your Honor, I do understand, but I

13  would respectfully submit that it is not quite

14  (indiscernible) to put this choice to us in light of the

15  fact that we have not even gotten the low-hanging fruit so

16  far.  So, for example, Officer Jean Pierre testified at his

17  deposition that he has provided his body worn camera

18  footage and his activity log to Corporation Counsel months

19  before the deposition, and they had not been produced.  We

20  have depositions scheduled for tomorrow and the day after

21  for which we have no, not even the basics, none of the low-

22  hanging fruit.

23          And so I understand where the Court is coming

24  from, but I respectfully submit that for the remedy to be

25  that we have essentially have to defer progress in the case

1

2 by taking depositions because the City has not complied

3 with even the basic obligations to date strikes me as

4 essentially causing us to bear the burden of the City's

5 non-compliance with even the most minimal of its discovery

6 obligations, Your Honor.

7           THE COURT:   I would have --

8           (interposing)

9           THE COURT:   I would have thought the burden was

10 greater on the City if these things get postponed not on

11 you because you folks seem to have a lot of lawyers and not

12 as many as the City.  I thought that's where the burden

13 would be.  You --

14           (interposing)

15           MR. LIEB:   Well, Your Honor, our primary

16 interest is in moving the case forward.

17           THE COURT:   If I can finish my sentence.  The

18 presumption all along was that the, you know, document

19 production would occur by July 31, and I don't think it was

20 clear that there was some obligation to produce specific

21 documents for the line officers without, you know, some

22 clear indication or – let me strike that.  I think my

23 vision on the line officers was that there was some officer

24 who was involved in one protest and some very limited

25 number of arrests for whom it would be relatively simple to

1  produce documents in advance.

2

3          I don't think I really realized there were

4  depositions being scheduled without those documents being

5  produced, and I'm surprised that the City would think that

6  would be an appropriate thing to do.  So is it true, Ms.

7  Weiss, that, for example, for Quigley, you haven't produced

8  documents relating to whatever arrests he was involved in?

9          MS. WEISS:   As far as I know, there's been

10  nothing produced for Quigley.  What's been produced has

11  been for named officers, and Quigley is not a named

12  officer.

13          THE COURT:   Well, I'm trying to understand

14  what's the theory in producing officers without documents.

15  What do you think that's going to lead to?

16          MS. WEISS:   There's no theory behind it, but

17  this is the schedule that plaintiffs chose to depose

18  officers.  They chose to put Quigley on the list knowing

19  that they didn't have documents for Quigley.  There's

20  plenty of named officers for whom they have documents.

21          THE COURT:   No, no, no.  Oh, well, if that's –

22  is there – I assumed there was a set of officers for whom

23  the documents are ready and able to go, and those are the

24  ones who are going to be deposed.  That's what I assumed

25  was happening all along.

1

2          MS. WEISS:   Plaintiffs provided us with a

3    schedule.  They told us on numerous occasions that there

4    were specific reasons that they chose the order that they

5    did.  I think even at one of the conferences before Your

6    Honor they did, when we spoke about producing the line

7    officers first, and they had wanted some higher ranking

8    officers early, and we spoke about schedules, and they were

9    very clear that they had specific reasons in mind why they

10   wanted specific officers at specific times and that some of

11   their earlier deposition notices they had line officers and

12   even named defendant line officers down near the end of

13   their list.  So either we – they put down officers who they

14   wanted, and we scheduled them.

15          MR. LIEB:   May I be heard on this issue, Your

16   Honor?

17          THE COURT:   Sure.

18          MR. LIEB:   Your Honor, we provided a list at the

19   very beginning of this process which was sometime ago of an

20   approximate order which depositions, you know, we wanted to

21   proceed.  The City has provided dates, as far as we know,

22   are completely arbitrary.  We're all in agreement that

23   we're doing line officers first.  The City has provided

24   what appears to us, what Ms. Weiss appears to have

25   confirmed, to be an essentially arbitrary selection of line

1

2 officers that they have chosen for reasons that we are not

3 aware of.  We are in good faith trying to proceed with

4 those depositions to move these cases forward mindful of

5 looming deadlines that are not very far away for class

6 certification, for example.

7 So we have been trying in advance of all these

8 depositions to get the documents that we believe pertain to

9 their depositions, and there has been extensive email

10 traffic, mainly one-way email traffic, but email traffic

11 from plaintiffs' counsel in advance of the Quigley

12 deposition, in advance of the Terrangelo deposition.

13 During the Jean Pierre deposition there was an extensive

14 discussion about this, not to mention the emails I was

15 discussing beforehand, okay, you've put these officers on

16 the calendar.  We need the documents.  The documents have

17 not been forthcoming.  We have proceeded with the

18 depositions to the best of our ability while leaving two of

19 them open in an effort to make progress in this case and

20 just at least get some defense testimony on the record.

21 But that is the state of play, Your Honor, it is

22 - we were given a set of dates, we have tried very hard by

23 email to get the documents in advance of the deposition.

24 They haven't come even though one of the officers testified

25 that he provided them to counsel.  And so we're doing as

1
2  best we can to proceed in the dark.

3          THE COURT:   Ms. Weiss, are you still here?

4          MS. WEISS:   Yes, I am.

5          THE COURT:   I mean this is not what I

6  contemplated.  I contemplated depositions with documents

7  not depositions without documents.  So the notion that

8  people are going down this road of just having depositions

9  without documents makes no sense to me.  I cannot even

10 understand why anyone would think that would be

11 appropriate.  Why did you think that was appropriate, Ms.

12 Weiss?  You just thought, well, if they want them, we'll

13 give it to them, it doesn't matter about the documents?

14         MS. WEISS:   Your Honor, they sent us a list of

15 names, they insisted on beginning depositions.  They even

16 wanted depositions to start in mid to late June despite the

17 fact that we told them on several occasions we were

18 unavailable.  The plaintiffs pushed and pushed and pushed

19 and pushed about starting depositions even well before

20 there was barely a single document exchanged.  They clearly

21 didn't seem to care about documents when they started

22 trying to schedule depositions.  There was no conferral

23 clearly before this court conference about documents.  It's

24 not until we got on the phone now that this document issue

25 seems to be such a big issue with them.

```
 1                                              62
 2            So I don't – it appears that plaintiffs are just
 3    looking for issues.  First, it was about --
 4            THE COURT:   Okay, no, no --
 5            (interposing)
 6            THE COURT:   No, no, Ms. Weiss, stop.  Let's not
 7    have personal attacks on motives.  I don't believe they're
 8    just looking for issues just as I don't believe you'd
 9    deliberately do anything to harm the process.  So that's
10    silly.
11            All right, we're not going to solve this right
12    now.  We're going to set another conference for, let's see,
13    I think we should just do tomorrow afternoon.  Between 3
14    and 4 o'clock, Mr. Lieb?
15            MR. LIEB:   I --
16            THE COURT:   If not, that's fine, tell me.
17            MR. LIEB:   For me – no, I'm sorry --
18            THE COURT:   I could do, how about let's also
19    talk about Thursday at 10 a.m., the 22nd.
20            MR. LIEB:   Your Honor, I have another conference
21    before Judge Schofield at that time.  So speaking at least
22    from my perspective, if I were continue to be the
23    spokesperson on these issues for the plaintiffs, then let's
24    put that on the calendar Wednesday afternoon, Your Honor,
25    if we can.
```

1

2          THE COURT:   4 p.m.?

3          MR. LIEB:   Fine with me.

4          THE COURT:   Are you free tomorrow, Mr. Lieb,

5  during the day?

6          MR. LIEB:   Yeah.

7          THE COURT:   Because I don't want to just pick

8  this up.  I want you two to talk about a plan for what on

9  earth to do.  You know, what is feasible in terms of what

10 documents you could get.  Maybe it's not the entire list of

11 16 categories or whatever it is.  Maybe it's something

12 smaller.  What we can do so that I can go ahead with

13 paragraph, your second paragraph and, you know, whether you

14 still want to do these depositions in your first paragraph.

15 Do you want - what documents are realistic for them to come

16 up with?  Do they have the information to give the

17 documents that you need?

18          I'd like you two to try to come up with a plan

19 and, if not, provide separate plans and be as reasonable as

20 possible because I'll probably just pick one of them.  And

21 we'll, you know, we'll try to take it from there.  I mean I

22 don't think it's a terrible thing if we have to move

23 depositions a little bit later so that you can get the

24 documents.  I mean the other alternative is for you to go

25 forward with depositions knowing you won't get a second

64

1

2   crack, and you'll get the documents later on.  You'll deal

3   with them then.  It's not a terrible option either.  It's

4   not the best option, I agree.  But I have to be realistic

5   about what the City can do in this very, very short term.

6            So I need you to spend tomorrow discussing that

7   and trying to figure it out, and then we'll – I don't need

8   you to put anything in writing because it's going to waste

9   time, but we have to pick this up tomorrow.  I don't see

10  what I can do today.  I mean if it were up to me, I would

11  either, you know, pick some limited number of documents and

12  say go forward with the depositions and that's all you're

13  going to get for those depositions or I'm going to put them

14  off till August and understanding there'll be double or

15  triple tracking with respect to the line officers.  I don't

16  know what else I can do.  I mean, you know, this wasn't

17  even presented to me.  So you folks have to at least make

18  some effort to try to solve it tomorrow.  Mr. Lieb, you'll

19  have time to do that starting in the morning?

20           MR. LIEB:   Yes, Your Honor, and I'm sure my

21  counterparts will join me.  So, yes, plaintiffs can make it

22  work certainly.

23           THE COURT:   And, Ms. Weiss?

24           MR. LIEB:   I will note that --

25           THE COURT:   Ms. Weiss, you can too?

1                                                              65

2           MS. WEISS:   We will make sure to, Your Honor.

3           THE COURT:   All right, it'll be great if there

4    was a plan presented to me at 4 o'clock.

5           MR. LIEB:   Your Honor, if I may just very

6    briefly because there is the matter of depositions within

7    the next 36 hours.

8           THE COURT:   Yeah, yeah.

9           MR. LIEB:   The Quigley deposition to go forward

10   tomorrow, I might want to ask you, counsel, for the people

11   who are the one who have notice and are primarily

12   responsible for this deposition.  My understanding is that

13   their position is that they would be prepared to proceed,

14   but we're hoping that the defendants could at least produce

15   the officers' activity logs for the relevant period of

16   time, which is something that would be, number one,

17   electronically accessible and, number two, something that

18   the officer himself would have access to.  And my

19   understanding is that Paine counsel who are the party who

20   noticed or who are primarily responsible for the Terrangelo

21   deposition, which would be Friday, would like not to take

22   that deposition at the time.

23           So I just wanted to make that clear because we're

24   literally talking about something tomorrow morning, I

25   wanted to put that on the record with regard to Sergeant

66

Quigley.

THE COURT:   Ms. Weiss, can you produce the
activity log tonight?

MS. WEISS:   I have to talk to the attorney who
prepared Sergeant Quigley to see if he got the daily
activity log.  I don't know that right now.

THE COURT:   How hard is it to get an activity
log for an officer?

MS. WEISS:   They should have it on their phone.
So they should have it.  It's the attorney who prepared
Sergeant Quigley didn't get it from him when he prepared
him, I don't know if he was prepared in person or not, it
should be readily available at the time of the deposition,
and as I'm sure Your Honor and certainly plaintiffs'
counsel know, that activity log is no more than a page or
two.  So it's certainly not something that would take
significant time to review if it was given at the time of
the deposition.

THE COURT:   All right.  Well, it seems like it's
worth going forward.  You can take a half hour break to
review the activity log if it's that short.  So let's go
forward with Quigley, and if they want to cancel
Terrangelo, that's fine if that's what they want.

MR. LIEB:   I think I spoke out of turn, Your

```
 1                                                      67

 2  Honor, in saying that -- I think the preference would

 3  certainly be that it go forward with the documents, but,

 4  you know, in the absence of documents, it would be --

 5            THE COURT:   Why don't you two talk about that

 6  tomorrow.

 7            MR. LIEB:   Understood.

 8            THE COURT:   All right, folks, you know, I have

 9  several hundred other cases, so I can't, you know, have

10  conferences every day with you folks and maybe not even

11  every week.  So you have to try to figure out ways to key

12  up these issues a little better than happened here today,

13  to have an issue that was literally not presented suddenly

14  come up orally is not the way to go.  So let's try to

15  anticipate more than we are.  Okay, talk to you folks

16  tomorrow at 4, same dial-in instructions.  Thank you,

17  everyone, good bye.

18            MS. WEISS:   Thank you.

19            MR. LIEB:   Bye, Judge.

20            (Whereupon the matter is adjourned.)

21

22

23

24

25
```

```
 1                                                      68
 2                   C E R T I F I C A T E
 3
 4          I, Carole Ludwig, certify that the foregoing
 5  transcript of proceedings in the United States District
 6  Court, Southern District of New York, Payne, et al. versus
 7  De Blasio, et al., docket #20cv8924, was prepared using PC-
 8  based transcription software and is a true and accurate
 9  record of the proceedings.
10
11
12
13
14  Signature _____
15
16  Date:  July 25, 2021
17
18
19
20
21
22
23
24
25
```