

GEORGIA M. PESTANA
*Acting Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK , NEW YORK 10007

ELISSA B. JACOBS
*Senior Counsel*
ejacobs@law.nyc.gov
Phone:  (212) 356-3540
Fax:  (212) 356-1148

July 29, 2021

**By Email**
All Counsel

   In Re:  *New York City Policing During Summer 2020 Demonstrations*,

Counsel:

   I am a Senior Counsel in the Office of Georgia M. Pestana, Acting Corporation Counsel of the City of New York and I am among counsel for the defense in the above-referenced matter. I write in accordance with Magistrate Judge Gorenstein's June 24, 2021 instructions to provide a status report on the progress of defendants' document productions.  As an initial matter, I apologize for not having provided a letter last week.  Due to a family issue, I had more limited time over the past week and our other resources were focused on other priorities related to this litigation.

   Defendants have completed our review of the 45,000 documents that we previously listed were in our possession, and they have all been produced.  This includes  Administrative Bulletins regarding the curfew, unusual disorder guides, MAPC training memos, requests for department helicopters, among other documents; various patrol guide sections and FINEST messages, including messages regarding displaying a shield and interacting with the press, gear distribution policies; Chief of Department arrest statistics from May 28, 2020 to June 7, 2020; Information regarding TACTICS course certifications; internal analyses of arrests, summonses, and injuries; various spreadsheets from Intel regarding the May-June 2020 protests; various video and radio recordings, including certain radio audio from the Mott Haven protests; medical division statistics; and a list of Operation commanders, borough commanders and incident commanders for May 28, 2020 through June 20, 2020.

   Defendants have also produced documents relied upon in the creation of the Corporation Counsel report, including training documents, old and current patrol guide sections, operations reports, protest deployment numbers and muster point locations, arrest statistics from previous years, various non-NYPD documents regarding trauma and mental health, bereavement leave.  The Corporation Counsel team also relied upon the SRG Manual and Training manuals, which are being produced this week.

   Defendants are producing this week additional NYPD documents, which includes 2500 documents from the NYPD, and 1300 documents received from the Department of Investigations.

These documents include but are not limited to Intel Daily briefings from June 2020, operations recaps from June 2020, Intel Situation Reports, tactical plans, reports of damage to property, TARU video from protests after July 2020, social media information related to the protests. Defendants have also produced documents received from the tapes and records department, which includes 911 reports for all 83 protest locations, audio and video records from the protests and incident recreations from the protests, where they were completed.  Defendants are not producing documents that are in the possession of the Department of Investigations that were not otherwise relevant or responsive to plaintiffs' document requests.  Defendants are also producing disciplinary documents from the named defendants.

Furthermore, pursuant to Rule 33(d), defendants have prepared for inspection Complete CCRB files of closed investigations and related to the protests and IAB files related to the protests. Plaintiffs are invited to the Office of the Corporation Counsel at 100 Church Street to inspect those documents in a conference room on a computer, on a date and time convenient to all parties, and advice this office which documents/pages/videos and audio files you would like reproduced.

With respect to UF49s/Unusual Incident Rports/To: From: reports as discussed during the meet and confer on Monday July 27, 20201 between Gideon Oliver and Dara Weiss, none of these types of documents exist of the 83 protests on Schedule A.  The following people/commands/units were asked to search for such reports:

1. Chief of Patrol's office, who had no records of unusual occurrence reports, and suggested checking with Patrol Borough Operations Units;
2. Patrol Borough Operations, who checked their records and had no such reports;
3. The commands where the incidents occurred, who had Precinct operations coordinators check their records, with negative results;
4. Operations Unit, who had no record of unusual occurrence reports.

Upon information and belief, if such reports existed, they would be contained in the records of one or more of the above commands or units.

In addition, we are in the process of collecting ESI material from the relevant custodians as has been agreed upon by the parties.

Information related to staffing levels will be provided separately.

Sincerely,

Elissa B. Jacobs
*Senior Counsel*
Special Federal Litigation Division