

August 13, 2021

The Honorable Gabriel W. Gorenstein
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

By Electronic Filing.

    Re:    In re: New York City Policing During Summer 2020 Demonstrations,
            1:20-CV-8924 (CM) (GWG) — This Letter Relates to All Cases

Dear Judge Gorenstein:

    I write on behalf of the Plaintiffs in the consolidated case named above regarding Defendants' failure to comply with the Court's orders and improper directions at deposition to withhold non-privileged information. After a dispute (ECF Nos. 193, 196-201), the Court ordered Defendants to provide a number of documents and other information prior to depositions. Defendants have failed to provide many of the most important things ordered by the Court. The Court specifically warned at the conference on July 21, 2021[1] that there would be "some kind of consequence" if the City failed to provide information. *See* 7-21 Tr. 30:5-12 ("if you want to take your chances, fine, I suppose; but if you messed up and it turns out that you could have just done a 8 search and that name was there, and that would have been a normal part of the deposition prep process, and you didn't do it and you went forward with this deposition, then there's going to be some kind of consequence to the City for that"). So we write to move, under Rule 37(b)(2), for compliance with this Court's order and for sanctions for the misconduct.

    Additionally, Defendants have withheld relevant disciplinary and other information upon misplaced claims of privilege and objections at the deposition of Captain Vitaliy Zelikov. So Plaintiffs also move for an order compelling the production of the withheld material, an unsealing order, and a brief continuation of Captain Zelikov's deposition at Defendants' expense.[2]

    **I.    Defendants violated the Court's order to timely provide deponent documents.**

    At the conference on July 21, the Court ordered the Defendants to produce a list of the events an officer policed, to be transmitted "if not [the day the officer is prepared,] the next day to

---

[1] A copy of the relevant transcript is attached to this letter as Exhibit A ("7-21 Tr."). Because the Court issued a number orders running throughout the conference, the full transcript is attached.
[2] Because this motion contains discrete requests, regarding sanctions for failing to provide ordered documents to all Plaintiffs on the one hand and sanctions for conduct at the deposition of Captain Zelikov on the other, Plaintiffs respectfully request that two attorneys be permitted to speak to these issues at a discovery conference.



the plaintiff." 7-21 Tr. 34:18-35:10. Defendants have not produced this list for a single of the officers produced thus far, despite repeated requests for this information. Plaintiffs are left largely in the dark as to what additional events an officer might have attended beyond, for example, the event where an officer appears as the "arresting officer" on a summons. When pressed about the missing list of events at a deposition on August 9, John Schemitsch (the attorney defending the deposition) confirmed on the record that the City had not generated a list of events, but refused to state whether he believed that complied with the Court's order, and objected to keeping the deposition open in any fashion. Additionally, Defendants provided no list of events prior to the deposition of Officer Ryan Brady today. Officer Brady testified that he was only shown the list of protests an hour before the deposition, and that he never consulted his memo book entries to determine if he had been assigned to any of them. Defendants' failure to produce the required list of protests makes scheduling and planning difficult and prejudices Plaintiffs' ability to coordinate depositions effectively. Plaintiffs further cannot demand missing documents with any precision. For example, during Monday's deposition of Officer Enmanuel Montesino, Officer Montesino testified he was at "dozens" of protests over the summer, but Plaintiffs had only been aware of five or six until that moment.

Along with such missing information, Defendants failed to disclose memo book entries or arrest paperwork for dates outside the May 27 – June 8 window the Court ordered Defendants to specifically review memo books for, as well as relevant bodyworn camera footage. Officer Montesino, for example, was at a protest on November 4, 2020 that appears on Schedule A (Defendants provided a short body worn camera (BWC) clip for that event), and Defendants simply seem to have decided not to provide any paper work for that event. Similarly, Captain Zelikov testified to responding to numerous protests near Barclays Center in the summer of 2020, but Defendants had provided documents and BWC footage to Plaintiffs related to only two protests at other locations.

Beyond that, the City's productions for depositions have not been timely. Despite preparing, according to Officer Montesino, about a week before the deposition, the City did not produce *anything* until the Friday before the Monday deposition. And that production was (among other things listed above) missing the NYPD transcript (ordered at 7-21 Tr. 38-39) and Officer Montesino's IAB history. After Plaintiffs followed up several times, Defendants made a production on Saturday morning of those two documents. Similarly, Defendants did not produce *any* activity logs for Officer Keith Cheng for January 16, 2021, the date of incident identified in the First Amended Complaint in *Payne*, until the morning of his deposition. There is no reason that production should have been, in effect, on the same business day the deposition began. In addition, Defendants did not produce any CCRB or Internal Affairs Bureau investigation files regarding incidents and investigations from the protests that are the subject of these cases that Captain Zelikov or officers under his command were involved in prior to his August 10 deposition. This was contrary to the Court's order at the August 9, 2021 conference that Defendants must produce those files and not merely make available for inspection. 8-9 Tr. 7:10-20. Without those clearly relevant records, counsel was shortchanged in questioning Captain Zelikov.

Additionally, on July 20, the Court ordered Defendants to produce CCRB, IAB, and Central Personnel Index (CPI) histories for the deponents in order to provide information about incidents

Page 2 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



and complaints similar to those at issue in these lawsuits, including those relating to claims of false arrests or uses of force or that involve false or misleading statements or other acts of dishonesty. 7/20 Tr.[3] 24:22-35:21. The parties represented to the Court the next day that the "line officer" histories would be produced in a batch before August 9th, when their depositions were to begin. 7/21 Tr. 7:2-5. Yet Defendants did not produce all of the required documents by August 9th and have not been producing them in a timely fashion, or in some cases at all, before the ongoing depositions. Beyond that, several of the histories eventually produced are over-redacted to exclude incidents that are clearly relevant, apparently relevant, or not obviously self-explanatory. Because Defendants have marked even the over-redacted histories produced as entirely Confidential, we also seek the Court's leave to submit representative samples of over-redacted histories that Defendants have provided, under seal, in advance of the conference. Faced with these same problems in other, similar cases, judges of this Court have conducted *in camera* review of unredacted versions and ordered these same Defendants to explain entries that are not obviously self-explanatory and to produce less-redacted versions as well as underlying summaries of investigations and closing files for all relevant underlying incidents. *See, e.g., Caravalho v. City of New York*, 13-cv-4174 (PKC)(MHD), Dkt. No. 131 (Dolinger, J.); *Dekuyper v. City of New York*, 14-cv-8249 (DLC), Dkt. No. 42. Copies of these past orders are attached as Exhibit C, and we seek similar relief (as well as sanctions).

Rule 37 provides that where a party who "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)," the court "may issue further just orders." Fed. R. Civ. P 37(b)(2). Further, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* Here, the Court warned Defendants that a failure to provide relevant information was a "risk." 7-21 Tr. 29:2-6. And that if Defendants failed to produce information, they were "going to have a huge down side." 7-21 Tr. 30:21-24. When the Court asked if Defendants understood these warnings, they confirmed. *Id.* But then Defendants elected to simply not provide all manner of information they were ordered to. So the Court should do exactly what it warned it would do: order "some kind of consequence to the City for that." 7-21 Tr. 30-5-12.

At the very least, for depositions that have not yet occurred, these consequences should include the completion of productions several days in advance of the scheduled depositions, so Plaintiffs have time to raise continued non-compliance with the Court. For the depositions that have already taken place, Defendants should be required to bring the relevant deponents back after they have provided the required information and documents, and to pay the costs and fees for those continued depositions. Finally, Defendants should also pay the fees related to at least this application, if not the applications leading up to this one as well. Fed. R. Civ. P. 37(b)(2)(C).

    **II.    Defendants improperly directed Captain Zelikov not to provide relevant, non-privileged testimony.**

Defendants have also improperly withheld related testimony at Captain Zelikov's August 10

---

[3] Excerpts of the July 20 conference transcript ("7/20 Tr.") are attached as Exhibit B.

COHEN&GREEN    Page 3 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



deposition. On the basis of the official information privilege, Defendants' counsel directed Captain Zelikov not to testify about the factual circumstances that prompted his suspension and rejected the offer to mark the relevant part of the deposition transcript confidential. Federal Rule of Civil Procedure 30(c) severely limits when counsel can direct their client not to answer. "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c). For all other objections, the examination must proceed and "the testimony is taken subject to [those] objection." *Id*. Here, there is no court-ordered limitation. Privilege was the only potentially proper basis for not answering a question. Defendants cannot establish that any privilege protected the requested testimony. "In *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y. 1988), the court held that any party invoking the official information privilege (as Defendants do here) must first make a 'substantial threshold showing' that disclosure would result in 'specific harm to identified important interests.'" *Gavrity v. City of New York*, No. 12-CV-6004, 2014 WL 4678027, at *4 (E.D.N.Y. Sept. 19, 2014) (citing *Coggins v. Cty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *3 (E.D.N.Y. Feb. 6, 2014) (stating that a proponent of a law-enforcement privilege must make a "threshold showing" that as to the interests that would be harmed, how disclosure would cause the harm, and how much harm there would be); *Pendleton v. City of N.Y.*, No. 10694/94, 2008 WL 5146791 at *4 (N.Y. Sup. Dec.3, 2008) (stating that the official-information privilege, which is governed by federal common law, requires the party resisting disclosure to make a threshold showing of a specific hard connected to the disclosure of specific information)). Once that showing is satisfied, "a court will then "turn to the next prong and weigh the factors in favor of and against disclosure." *Coggins*, 2014 WL 495646, at *3.

     Defendants cannot clear that first hurdle. When Captain Zelikov was asked to explain why he had been disciplined, he asserted that it was "for an incident that occurred unrelated to . . . the NYPD. Off duty, of a personal matter, [] a personal nature."[4] Counsel for Plaintiff the People of the State of New York asked whether it "involve[d] the use of force or threat of use of force." Defendants' counsel then instructed Captain Zelikov not to answer, stating, that "it delves into his personal matter" and "I'm happy to let them answer as to any departmental consequences as a result of the action, but I can't let them answer anything about the underlying details." The thin assertion that a matter is personal is not enough to make the threshold showing that disclosure would result in "*specific* harm to identified important interests." *Id.* (emphasis added).

     Even if the Court were to weigh the relevant factors, they favor disclosure here. Of the factors disfavoring disclosure, Defendants have alluded only to one: the invasion of the privacy of Captain Zelikov. But all of the factors favoring disclosure exist here and win out: the relevance of the material to the plaintiff's case, the importance of the material to the plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest in releasing the information. *Morrissey v. City of N.Y.*, 171 F.R.D. 85, 92 (S.D.N.Y. 1997) (citing *King*, 121 F.R.D. at 190–96). The incident at issue involved Captain Zelikov threatening physical harm and resulted in serious discipline on the job, including suspension and required counseling, among other consequences, in June of 2015. This act therefore touched upon his fitness for duty. Despite this discipline, he was

---

[4] These quotes are derived from an automatic transcription created contemporaneously with an audiovisual recording of the deposition.

COHEN&GREEN     Page 4 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



promoted to Captain in 2018. These facts are all a matter of public record. *See, e.g.,* www.50-a.org/officer/16527#discipline-details; www.capstat.nyc/officer/p111194/. The threatened use of force and whether Captain Zelikov's discipline was sufficient is relevant to the People's allegation that Captain Zelikov used excessive force at the protests and its *Monell* failure to supervise claim. *See Alwan v. City of New York*, 311 F. Supp. 3d 570, 583–84 (E.D.N.Y. 2018) ("[I]t seems safe to say that Nelson's history of complaints—which includes . . . several domestic- or domestic-related violence complaints—would suffice to create a triable issue as to whether it was obvious to the City that there was a risk that Nelson would use excessive force against arrestees."). The strong public interest in knowing about how the NYPD handles discipline has been the main catalyst for New York's recent repeal of section 50-a of the New York Civil Rights Law, which had previously shielded police disciplinary records. L.2020, c. 96, § 1. The interests in disclosure far outweigh the insubstantial interests in protecting from disclosure the factual circumstances underlying professional discipline. *See King*, 121 F. R. D. at 191 ("The privacy interest in this kind of professional record is not substantial, because it is not the kind of 'highly personal' information warranting constitutional safeguard."). Counsel's directive not to answer questions on the facts underlying the discipline therefore violated Rule 30.[5]

As a remedy, Defendants should be required to produce Captain Zelikov, at their own expense, for 90 minutes to answer questions on the factual circumstances relating to the underlying incident that led to his suspension and related investigations, prosecutions, and discipline, and his subsequent promotions. *See* Fed. R. Civ. P. 30(d)(2) (empowering the court to "impose an appropriate sanction" on a person who "impedes, delays, or frustrates the fair examination of the deponent."), (3) (providing for the continuation of a deposition by court order); *see also Sicurelli v. Jeneric/Pentron, Inc.*, No. 03-CV-4934, 2005 WL 3591701, at *9 (E.D.N.Y. Dec. 30, 2005), report and recommendation adopted, No. 03CV-4934, 2006 WL 681212 (E.D.N.Y. Mar. 14, 2006) (ordering party to pay costs associated with re-deposing witness whose testimony it disrupted).

Separately, because the same conduct led to a criminal action that Defendants represent is now sealed, the People also request an unsealing order pursuant to section 160.50 of the New York Criminal Procedure Law. At the August 10 deposition, Defendants directed Captain Zelikov not to testify about that criminal action and the related arrest on the basis that records are sealed. To permit the requested inquiry into Captain Zelikov's disciplinary history and avoid triggering another objection under section 160.50, justice requires that these records be unsealed. *See* N.Y.C.P.L. § 160.50(1)(d)(ii) (providing that records sealed under 160.50 may be provided to a "law enforcement agency . . . if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it").

---

[5] Defendants also improperly asserted Health Insurance Portability and Accountability Act (HIPAA) as a basis for preventing Captain Zelikov — who claimed he was injured during the protests — from describing the injuries he sustained in a car accident that happened three months before the protests and which is the subject of a lawsuit, *Zelikov v. Markowitz*, 516586/2021 (Kings County, NY). When counsel for the People sought to inquire about those injuries and whether they were distinguishable from those Captain Zelikov allegedly sustained at the protests, he refused to waive any rights after his attorney's direction not to answer. HIPAA does not apply to the provision of healthcare information from a patient but rather from a "covered entity," such as a doctor or hospital. *See* 45 C.F.R. § 164.500.

COHEN&GREEN    Page 5 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



We thank the Court for its continued time and attention.

Respectfully submitted,

/s/
_____
J. Remy Green
   *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow Plaintiffs, on behalf of all Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

Enclosures

cc:
All relevant parties by electronic filing.

Page 6 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com