

**GEORGIA M. PESTANA**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**DARA L. WEISS**
*Senior Counsel*
daweiss@law.nyc.gov
Phone: (212) 356-3517
Fax: (212) 356-1148

**By ECF**

August 17, 2021

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      In Re:  *New York City Policing During Summer 2020 Demonstrations*,
             No. 20 Civ. 8924 (CM) (GWG)
             This filing is related to all cases

Your Honor:

      I am a Senior Counsel in the Office of Georgia M. Pestana, Corporation Counsel of the City of New York and I am among counsel for the defense in the above-referenced matter. I write in accordance with Rule 2.A of the Court's Individual Rules in response to plaintiff's motion to compel certain materials and motion for sanctions. Plaintiffs' application should be denied for multiple reasons. First, plaintiffs misconstrue the Court's previous orders in seeking sanctions under Rule 37. Second, plaintiffs failed to conduct any meet and confer with defendants regarding the alleged problems they now raise, nor do plaintiffs identify any alleged prejudice. Third, plaintiffs' request for information surrounding an off-duty incident involving Captain Zelikov are improper, any invocation of privilege or confidentiality was made in good faith, and plaintiffs opted to end the deposition without seeking a ruling from the Court.

      **BACKGROUND**

      A. Relevant Orders

      Plaintiffs maintain that defendants have violated several orders of the Court. Tellingly, plaintiffs do not set forth in full the Court's prior orders regarding the procedures for providing information and materials prior to depositions. At the July 21, 2021 conference, the Court ordered a representation from plaintiffs' counsel that included the following agreement: the parties would endeavor to complete depositions of 44 line-officers and outlined a procedure for scheduling dates; defendants would identify the name and tax identification number for officers whose depositions were requested by description; defendants would produce a batch of CCRB histories, IAB histories, and Central Personnel Indexes, with a batch that was hoped to be produced prior to the start of deposition on August 9, 2021; defendants would endeavor that any body worn camera

footage (BWC) would be identifiable in some manner and the parties would continue to work on that; and defendants would produce no later than the day before the deposition the activity log what plaintiffs' counsel called "the subject protest." (Transcript, In re New York City Policing During Summer 2020 Demonstrations, 20 CV 8924 (CM)(GWG), July 21, 2021 ("July 21 Trans."), at pp. 5:12-8:4, 40:3-6). In addition, the Court ordered that as part of the preparation of the 44 line-officer deponents, the officers had to check their activity logs for May 27, 2020 to June 8, 2020 to see if they attended protests listed by plaintiffs in what they refer to as Schedule "A;" the officers are also to be asked if they remember attending the remaining protests on that list; the Court added that "whatever you get as the answers has be transmitted, you know, if not that day, the next day to plaintiff . . . . if the deposition is the next day, then it better be that day. But, otherwise, the next day." (July 21 Trans., at p. 34:18-35:9). The Court also encouraged defendants, if they are searching their document database as part of preparation, to confirm that the productions due no later than July 31, 2021 contained the documents that would be needed to be produced prior to the depositions. (July 21 Trans., at p. 32:23-34:2).

With regard to the CCRB Histories, IAB Resumes, and Central Personnel Indexes, the plaintiffs requested that these items would be produced on a rolling basis. (Transcript, In re New York City Policing During Summer 2020 Demonstrations, 20 CV 8924 (CM)(GWG), July 21, 2021 ("July 20 Trans."), at p. 32:14-33:9). Defense counsel advised the Court that they were attempting to produce these items in a batch, but if they were unable to do so, they would get them produced in a batch prior to the deposition at issue. (July 20 Trans., at p. 34:13-19).

With regard to full IAB and CCRB files, the Court ordered defendants to produce these items in 2-3 days of the August 9, 2021 conference. Defendants complied with that order.

Despite the claim of numerous deficiencies, plaintiffs have failed to follow-up in writing with defendants, nor did they seek to confer about any of the issues raised in their submission. Moreover, plaintiffs have not provided any of the deposition transcripts for the depositions referenced in their letter, except that of Captain Zelikov.

B. How Defendants' Counsel Comply with the Court's Orders

Defendants instituted a procedure amongst the team of attorneys preparing for depositions. From the first point of contact with a deponent about scheduling, counsel has the officer review their memo book for protest related activity from May 27, 2020 to June 8, 2020 and transmit those pages to counsel. Similarly, counsel attempt to obtain the memo book entries for protests beyond those dates. In preparation for the deposition, Schedule "A" is to be reviewed for memory of protests after June 8, 2020. In addition, officers are asked for any documents they have in their possession. A team of attorneys also queries the document database for any documents referencing that officer in anyway. In addition, a search of the BWC database is performed for all BWC taken by the deponent officer. These items are gathered and produced to plaintiffs by adding them to the document database (if they are not already in there) and producing them to plaintiffs.

C. Captain Zelikov's Off-Duty Incident

As noted by plaintiff, some information regarding Captain Zelikov's off-duty incident is public and gives a general description of the allegations and the result. Contrary to plaintiff's representation, Captain Zelikov gave a full account of the consequences of that incident, and admitted that his promotion was delayed by those consequences. Captain Zelikov also acknowledged that there was a related criminal proceeding that resulted in an adjournment in contemplation of dismissal. The circumstances underlying that incident do not involve any police activity. Moreover, discussion of these circumstances would force Captain Zelikov to disclose specific information about his family.

**ARGUMENT**

Defendants have not violated any of the Court's orders. Plaintiffs' first claim is that defendants have failed to generate a list of which protest an officer deponent attended. This Court issued no such order. As noted above, defendants were obligated to have the officer review their memo book for certain dates, ask the officers to review the list of the balance, and report the results. Defendants simply produced the memo book pages from the May to June dates that indicate where the officer was detailed and what they did, as well as for any later dates that they remembered that they were at a demonstration. In addition, defendants are sending copies of previously produced documents to plaintiffs that indicate further activity. Thus, instead of making plaintiffs hunt for the documents, plaintiffs are receiving the equivalent of defendants' work product to help them depose defendants and other City employees. The procedure outlined above was followed with Officer Brady, despite his testimony. For whatever reason, he forgot that defense counsel worked with him in regards to his memo book and Schedule "A." Defendants produced a number of memo book entries for Officer Montesino.

Plaintiffs next assert that defendants are failing to provide documents and memo books outside the May 27, 2020 to June 8, 2020 time frame. Against, this is incorrect. Plaintiffs point to two isolated examples. For the example with Officer Montesino, defendants provided BWC for that incident, which was fully inquired about at the deposition. Moreover, Officer Montesino may not have recalled this incident when shown Schedule "A," which accounts for why he did not produce his memo book ahead of time. Plaintiffs do not assert the documents are missing, they claim they "seem" to be missing. Plaintiffs failed to follow-up with counsel before filing this letter, and thus, prior to this filing, defendants had no opportunity to check what documents would have been produced about this incident. With regard to Captain Zelikov's potential BWC, plaintiffs are in possession of all BWC from the protests, the relevant rosters, and other information. Moreover, in terms of the request for sanctions, plaintiffs fail to point to a specific order which was violated. If neither side could figure out how to identify the captain's BWC easily as was the agreement, plaintiffs were going to have to conduct their own review.

Plaintiffs' timeliness arguments are similarly groundless. The Montesino deposition was the first deposition on August 9, 2021. Defendants overlooked two of the documents, and when noted by counsel, defendants immediately cured the deficiency the next morning, on a weekend. Similarly, a single memo book date was overlooked for Officer Cheng, which was produced. These two examples out of a process that remains ongoing do not demonstrate any grounds for

sanctions. Similarly, plaintiffs' assertion that defendants violated the August 9, 2021 order to provide the actual CCRB and IAB files is similarly meritless by failing to produce all files prior to the deposition of Captain Zelikov for himself and anyone under his command. The August 9, 2021 order directed production in two to three days of all these materials. Captain Zelikov was deposed on August 10, 2021, prior to the production deadline (all files were available for inspection before that). Thus, plaintiffs cannot contend in any honest way that any order was violated in this context.

Lastly, plaintiffs maintain that production of CCRB Histories, IAB Resumes, and Central Personnel Indexes are somehow deficient. First, plaintiffs have failed to raise with defendants which of these items they believe are missing. Second, plaintiffs fail to note that with regard to redactions, defendants have been cooperative in resolving disputed redactions. Third, the use of the term "batch" has created some confusion in the parties' discussions that led to the Court's order. During the July 20, 2021 conference the term batch appears to have had a different meaning than the one plaintiffs now claim "batch" had in the July 21, 2021 conference. On July 20, 2021, all appeared to understand that defense counsel described multiple batches. Now, plaintiffs maintain that batch was a single production. Again, plaintiffs made no effort to resolve this issue before writing the Court.

"In determining whether preclusion or another sanction would be appropriate, courts should consider: '(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of... the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (citing Softel, Inc. v. Dragon Medical & Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir.1997)). Plaintiffs wholly fail to meet the standard for Rule 37 sanctions. First, they cannot demonstrate that orders were violated. Second, to the extent that there was a deficiency, those deficiencies were cured. These isolated problems arose out of small oversights, rather than some culpable misconduct. Lastly, plaintiffs' application is devoid of any discussion of prejudice to plaintiffs. On a related note, nowhere in plaintiffs' letter do they note that defendants failed to produce documents in the productions due July 31, 2021. It is clear that plaintiffs have not made any efforts to search the documents to determine whether there really was a deficiency in production.

With regard to the deposition of Captain Zelikov, as an initial matter, plaintiffs ended the deposition without seeking a ruling from the Court. Plaintiffs failed to do so here (which violates the Local Rule 37.3 in the Eastern District of New York), and any further inquiry should be deemed waived. Similarly, plaintiffs' decision to forgo court intervention at the deposition should waive their entitlement to any costs or fees.

In terms of the substantive issues, plaintiffs acknowledge that the assertion of privilege in this matter is subject to balancing. Here, the balance weighs heavily against disclosure. Rule 26 instructs that any discovery is proportionate to the needs of the case and necessary to a claim or defense. Here, Captain Zelikov's right to privacy, his right to confidentiality conferred by the New York State sealing laws, the law enforcement privilege (referred to as the official information privilege at the deposition), and the right to privacy of third parties such as family members and protection from threat to safety in so far as they have a connection to a law enforcement officer,

outweigh the need of plaintiffs to discovery the underlying specifics of an off-duty incident. This incident was unconnected to the captain's police activity. Further, this is not a situation where defendants seek to foreclose all inquiry and discovery about this situation. Instead, Captain Zelikov acknowledged that there was an off-duty incident, that he was disciplined for his conduct, that there was a criminal proceeding that terminated in his favor with an ACD, that he was on modified duty and could not carry a firearm, and that his promotion was delayed. The public website cited by plaintiffs indicates he was also sent to counselling. Plaintiffs have all the information about an NYPD response to an off-duty incident involving a physical confrontation that occurred six years ago. Thus, the underlying facts are simply not necessary or proportionate to the needs of the case. The cases cited by plaintiffs all focus on the general proposition that on-duty incidents are discoverable, but provide no authority that the degree of disclosure here is insufficient. Therefore, the Court should deny any further deposition on this topic, and should deny plaintiffs' request for an unsealing order for criminal records.

Lastly, plaintiffs note in a footnote that they believe they should have been able to ask Captain Zelikov about a prior, unrelated injury in a car accident is similarly incorrect. Captain Zelikov enjoys confidentiality of his medical history, and has not put it in issue here. Whether the attack on the captain during the protest exacerbated any prior injuries is of no moment. In terms of the probable cause analysis, the relevant inquiry is whether the arrestee engaged in conduct giving rise to probable cause at the time of the arrest. Captain Zelikov's assertion that he was injured on the day of the incident does not put at issue prior instances of injury since he is not claiming damages for any injury.

**CONCLUSION**

Based upon the foregoing, plaintiffs' application should be denied in its entirety.

Thank you for your consideration herein.

Respectfully submitted,

*Dara L. Weiss s/*

Dara Weiss
*Senior Counsel*
Special Federal Litigation Division

cc:   ALL COUNSEL (via ECF only)