# Rickner PLLC

Rob Rickner | rob@ricknerpllc.com

August 23, 2021

**Via ECF**

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York

    Re:    *In re: New York City Policing During Summer 2020 Demonstrations*,
                No. 20-CV-8924
                *This Filing is Related to All Cases*

Dear Judge Gorenstein:

We represent the Plaintiffs in *Sierra* and write on behalf of counsel for all Plaintiffs in these consolidated actions to respectfully request a discovery conference pursuant to Local Civil Rule 37.2. Plaintiffs have requested two pieces of discovery that Defendants have refused to produce: (1) an index (or indexes) matching the helmet numbers of the SRG NYPD officers with the officers' names, and (2) the metadata and audit trail logs for officers' body-worn camera ("BWC") footage that show which officer was wearing each camera, where the footage was taken, whether the footage was altered, and other key information. At its simplest, these two demands would allow us to identify the videographer/witnesses behind the cameras, and the witness in front of the cameras – which has been an ongoing struggle for Plaintiffs.

Our inability to identify witnesses and lack of detail about the BWC footage is easily solved. Each officer wears their own helmet with a number on and the NYPD keeps indexes of which officer was wearing which helmet number, which readily would solve many of the identification issues. Each body worn camera is assigned to an individual officer, with metadata that clearly identifies the officer/videographer, and contains other vital information, including GPS coordinates where the footage was taken, edit and access history, and comments added by the officer. Unfortunately, the Defendants refuse to produce this information. So we now move.

    I.    **The Helmet Number Index**

On March 25, 2021, Plaintiffs served Consolidated Requests on the Defendants, seeking documents sufficient to identify the officers who responded to each protest. *See* Exhibit A, Request No. 7 (Requests and Objections). Defendants interposed a litany of objections in their June 4, 2021 Responses, although they never stated whether they would produce the index of helmet numbers of officers who responded to protests, nor was it mentioned in any of the subsequent "algorithm letters" order by the Court. *Id*. In addition, on July 16, 2021, counsel for Yates sent Interrogatories specifically requesting helmet number information for the client he

Rickner PLLC

represents. *See* Exhibit B (Yates Interrogatories). And on August 3, 2021, Plaintiffs sent a follow up email again demanding the helmet number index. *See* Exhibit C (Email).[1]

On August 18, 2021, from 10:30 a.m. to 12:15 p.m., Plaintiffs and Defendants attended a video conference meet and confer to discuss multiple outstanding issues in discovery.[2] During that meet and confer, the Defendants stated that they would not produce the helmet number index because they believed it was too intrusive. Plaintiffs confirmed that there was an impasse.

Defendants' position—that indexes helmet numbers would intrude on officers' privacy interests –is without merit. Defendants have already produced numerous other documents listing other identifying information from officers, including some detail rosters that list some, although not all, of the officers assigned to each protest. But these documents do not reveal information sufficient to identify officers appearing in videos produced by the City, because they do not include helmet numbers.

These helmet numbers are likely to be the best way to determine which officers appear in the footage of the protests. At a recent deposition, an SRG officer testified that each officer had their own helmet and should only use their own helmet. She further testified that an index that listed which helmet was assigned to each officer.[3]

Defendants even acknowledge that the helmet number index is the best way to identify officers. In place of producing the index, Defendants stated that Plaintiffs should send them helmet numbers of officers they wish to identify and Defendants would consult the index and provide the officer's name. But that is not a workable solution. Plaintiffs have made numerous requests for officers' names based on helmet numbers, and it has often taken weeks, or longer, for Defendants to respond. There are hundreds of videos and hundreds of officers to be identified. It is too inefficient to force Plaintiffs to ask Defendants for the name of each officer Plaintiffs are researching, particularly given the tight discovery schedule and Defendants' repeated claims to be significantly overburdened.

This issue is particularly well-illustrated by Plaintiff Cameron Yates' experience with requests to identify officers. Mr. Yates was knocked over and injured during a charge of over 20 unidentified officers. In a March 25 interrogatory, he asked for the identity of every officer that could be seen in photos capturing the event, which he had provided in initial disclosures; not one was identified in the City's response. In a June 15 interrogatory, Yates explicitly listed 23 of the officers he sought to identify from the photos, in a chart that included helmet numbers for 14 of

---

[1] Plaintiffs have also served a more targeted request for helmet number information, in the Second Consolidated Requests on the Defendants, the response to which is not yet due. But all parties at the meet and confer acknowledged that the helmet number index at issue is covered by the initial requests, and as stated above, the parties reached an impasse.

[2] In attendance were Rob Rickner, Andrew Stoll, Remy Green, among others, for Plaintiffs and Dara Weiss and Elissa Jacobs for Defendants.

[3] The deposition transcript is not yet available, but Plaintiffs can provide the Court with the relevant testimony when it is available, if the Court wishes.

the officers, physical descriptions, and live links to where each officer could be seen in Yates' prior production of photos and video. On July 16, defendants responded with boilerplate objections, again failed to identify a single officer, and asked for screenshots instead of links. On July 18, Plaintiff provided every single screenshot requested (though unnecessary) and asked for a meet and confer.  In a July 22 meet and confer, Defendants largely agreed to withdraw their objections and supplement their responses. On July 30th, Defendants appear to have conclusively identified seven of the 14 officers with helmet numbers, and equivocally identified two others. In yet another meet and confer, on August 18, the relevant portion of which lasted approximately five minutes, defense counsel expressed surprise they had still not identified the remaining officers, promised to do so by the close of the next business day, and asked for an email restating which officers with helmet numbers had not yet been identified. That same day, Yates provided counsel with that reminder; nevertheless, the next day (and the day after) came and went without any supplemental response.  During the August 18 meet and confer, Yates' counsel expressed that he believed they were at an impasse if the identifications were not made by close of business August 19.  Nevertheless, until August 23, defendants had still not supplemented, and on August 23, the responses were still incomplete.  Five months have gone by without Defendants identifying uniformed officers with clearly seen helmet numbers.  Plainly, plaintiffs should have access to the documents needed to do the task themselves.

No part of this tortured saga was necessary, and all Plaintiffs need this information as part of their investigations. Defendants should be ordered to produce the helmet number indexes for every SRG unit and every precinct that policed the protests. This is a discrete number of accessible, highly relevant documents, and there is no valid basis for Defendants to be withholding these documents.

## II. The Body Worn Camera Metadata and Audit Trail Logs

The BWCs worn by the NYPD are made by a company called Axon. Each officer is assigned a camera, which has a serial number on the back that has the officer's name and a series of numbers and is recorded in officers' activity logs as well as precinct command logs. The camera is stored in a charging bay that is attached to the internet. The officers take the cameras out of the bay, wear the device, and when they want to activate it, they press a button on the center of the camera. At the end of a shift, the officers return the camera to the bay and the footage from that day is automatically uploaded to a website run by Axon called evidence.com. The footage, according to Axon, cannot be tampered with when it is on the camera, and the complete file is uploaded and stored. The footage can then be viewed by the officer on their department-issued iPhone, by others at the NYPD, and even at the district attorneys' offices.

The Axon website, evidence.com, thus performs two important functions. *First*, it stores the BWC footage, along with all the metadata related to who took the footage, when, and where (by GPS coordinates). *And second*, it protects chain of custody, by ensuring that the footage stored can be traced from the individual officer to the ultimate use in (usually criminal) court, with digital proof the footage not been altered. When presented together, this metadata is often called an "audit log", because of the way it allows evidence.com users to ensure the footage stored will withstand scrutiny in court. We address each function in turn.

There are multiple metadata fields linked to each body-worn camera file, and a list is attached as Exhibit D (Metadata 1). Sometimes, this metadata is produced in more user-friendly format, such as the example in Exhibit E (Metadata 2). Both of these printouts were obtained in criminal cases, where the information Plaintiffs are requesting is frequently produced. There are several key pieces of information in this metadata. The "title", sometimes called "File Name" is the name of the actual .mp4 format video file. The officers name, and tax identification number, are included. The date and time the body-worn camera footage was taken is included. There are sometimes comments or tags (which are interesting evidence all on their own). Any edits—and sometimes there are edits—are shown, along with who made them. And the metadata has the GPS location of where the footage was taken—which an expert could take and use to create trial tools that synthesize and coherently present the wide array of events this case involves.

An example of the chain of custody information, called the Evidence Audit Trail, is attached as Exhibit F (Example Audit Trial). This Audit Trail is a digital version of the paper logs that have for years been used to track physical evidence in police custody. The Audit Trail shows which criminal case it was added to, who has access, who viewed it and when, and what changes, if any, have been made to the footage. For example, in the attached Exhibit, the title of the footage was changed and that is reflected in the seventh entry in the Audit Trail.

All of this information is straightforward to produce.[4] In fact, the very purpose of evidence.com is to ensure that this body worn camera footage can be easily tracked and securely provided for use in litigation. Each district attorney's office is given body camera footage by the NYPD every day, and it is continuously produced to defense attorneys. The system is designed to handle large amounts of body worn camera footage and the associated meta data and Evidence Audit Trails. So it should be feasible to produce the same information here.

The City previously produced logs, an example is attached as Exhibit G, but these logs do not have all the necessary information and are not the same as the ones counsel has seen in prior cases. The largest problem is that the file names in these logs do not match the file names Defendants gave to the BWC footage they produced. Defendants do not dispute this. Instead of looking at file names, Defendants have told Plaintiffs to match the video to the entry on the log they provided—and thus identify the recorder of the video—by matching up the *length* of the video files listed in the logs. This is tedious and it provides no reliable way to match the footage to the lists Defendants provided. It is essentially an educated guess. And perhaps more importantly, it does not easily or reliably lead to matching officers to their cameras.[5] This is no substitution for the actual metadata. Moreover, the limited logs Defendants have shared are

---

[4] Defendants also agreed to produce all metadata associated with any files they produce, as the Rules anticipate parties might. *See* Fed. R. Civ. P. 26(f), Committee Notes on Rules—2006 Amendment. It is unclear how Defendants' previous agreement to produce metadata does not itself resolve this dispute, and Defendants have not justified changing their position.

[5] After one meet and confer, Defendants offered to check if they could link officers to the videos without guessing based on video length — and acknowledged that if it was not possible to make this link, Plaintiffs should at least be entitled to something that would fix that. But at the most recent meet and confer, Defendants could not say whether they had taken this step.

incomplete. They do not have the GPS information, chain of custody information, or comments that the wearer may have added to the footage, among other data.

It should go without saying that Defendants have an obligation under the Federal Rules of Civil Procedure to produce electronic documents as they are kept "in the usual course of business." *Cardwell v. Davis Polk & Wardwell LLP*, 19-CV-10256-GHW, 2021 WL 2650371, at *4 (S.D.N.Y. June 28, 2021) (quoting Fed. R. Civ. P. 34(b)(2)(E)(i) and awarding fees as a deterrent for non-compliance). This footage is kept with the metadata and the Evidence Audit Trail in the usual course of business, so the presumption is that is how it should be produced in litigation. Metadata is often required as part of a modern ESI protocol. *See, e.g., Williams v Rosenblatt Sec., Inc.*, 2016 US Dist LEXIS 184492, at *4 (SDNY Nov. 23, 2016); *Romero v Allstate Ins. Co.*, 271 FRD 96, 108 (ED Pa 2010). And cases that reject requests for metadata often do it by contrasting the circumstances to a case like this one. *See, e.g., Aguilar v Immigration & Customs Enforcement Div.*, 255 FRD 350, 360 (SDNY 2008) (denying a late request for production of *all* metadata "because the universe of emails is apparently only 500 or so, this is not a case in which the Plaintiffs need the metadata in order to be able to manage the ESI that they have received," and compelling only certain metadata). So, as shown by the attached examples, in state criminal court BWC footage is produced with this data, and there is no principled reason it would not be produced the same way here.

The parties have written letters and discussed this issue for approximately two months, including at the August 17, 2021 meet and confer mentioned above. Following the meet and confer, the Defendants stated they would consider the matter further, but the next day confirm they would not produce the data in a terse email: "After further consultation, defendants are confirming that they will not be producing audit trails for the BWC footage produced." Defendants have not proffered any cognizable reason why the BWC footage should not be produced in the same way it is kept in the usual course of business, and the same way it is routinely provided in criminal cases. They should be compelled to produce it.

## Conclusion

Defendants repeatedly promised to produce all the relevant materials by July 31, 2021, but Plaintiffs still do not have core pieces of information, like the materials sought here that would allow Plaintiffs to connect the video they have with the documents produced. And the Court should award Plaintiffs fees for the time spent litigating this issue. Defendants' position has no basis, and they should be deterred from forcing Plaintiffs to make motions to obtain core information that is key to the claims. *See John v. City of New York*, No. 11-CV-5610(RPP), 2012 WL 2719154, at *7 (S.D.N.Y. July 9, 2012) (sanctioning the City of New York for failing to follow court discovery orders); *Fleming v. City of New York*, No. 01-CV-8885(RCC)(RLE), 2006 WL 2322981, at *5 (S.D.N.Y. Aug. 9, 2006) (same).

Respectfully,

/s/

Rob Rickner