UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| In Re: New York City Policing During Summer 2020 Demonstrations | No. 20-CV-8924 (CM) (GWG) |
|---|---|
| This filing is related to:<br><br>*Charles Henry Wood, on behalf of himself and all others similarly situated, v. City of New York et al.*, No. 20-CV-10541 | |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH PLAINTIFFS' THIRD-PARTY SUBPOENA**

Kaufman Lieb Lebowitz & Frick LLP
10 E. 40th Street, Suite 3307
New York, New York 10016
(212) 660-2332

## TABLE OF CONTENTS

TABLE OF CONTENTS .......... i

FACTUAL BACKGROUND .......... 1

ARGUMENT .......... 2

I. Defendants Cannot Show that the Smoot Documents Are Predecisional .......... 2

II. Defendants Cannot Show that the Smoot Documents Are Deliberative .......... 5

III. Defendants Cannot Show Sufficient Interests Disfavoring Disclosure .......... 10

IV. Defendants' Objections Are Untimely and Waived .......... 13

CONCLUSION .......... 14

Defendants' motion to quash the subpoena Plaintiffs served upon Sean Smoot ("the Smoot subpoena") should be denied.[1] Smoot was a consultant engaged by the Office of the Corporation Counsel ("OCC") during its investigation into the NYPD's conduct during the protests over the killing of George Floyd ("the Protests"). The deliberative process privilege does not protect the drafts and communications sought here from disclosure. The documents are not "predecisional," because the agency involved—the OCC—made no policy decision. And they are not "deliberative" because they concern factual analysis, rather than opinions "essentially linked" to specific policy choices. These documents are discoverable and should be produced.

## FACTUAL BACKGROUND

After the George Floyd Protests, Defendant Bill de Blasio ordered the OCC to conduct an "analysis . . . of factors that may have impacted the events at the [George Floyd] protests," which was meant to "culminate in a written public report."[2] Sean Smoot is one of three experts the OCC consulted in connection with that investigation ("the Report"). Ex. B.[3] Plaintiffs served Smoot with a non-party subpoena on June 10, 2021, Ex. A, seeking Smoot's communications with the OCC concerning the investigation as well as draft documents exchanged between Smoot and the OCC. Defendants claim these documents are protected from disclosure by the deliberative process privilege.

---

[1] This brief is filed jointly on behalf of all Plaintiffs in this consolidated action except the Office of the State Attorney General, which takes no position on this issue.

[2] *See* Executive Order No. 58 ("EO 58"), available online at https://a860-gpp.nyc.gov/concern/parent/8s45qb646/file_sets/mw22v725h.

[3] Citations to "Ex. __" refer to the exhibits attached to Defendants' Motion to Quash, filed at Dkt. # 232-1 (Ex. A, the Smoot subpoena) and Dkt. # 232-2 (Ex. B, the Report).

To sustain their invocation of the privilege, Defendants must demonstrate that the documents sought by the Smoot subpoena are both predecisional, *i.e.,* "prepared in order to assist an agency decisionmaker in arriving at his decision," and deliberative, *i.e.*, "actually . . . related to the process by which policies are formulated." *Grand Cent. P'ship v. Cuomo,* 166 F.3d 473, 482 (2d Cir.1999). Further, the deliberative process privilege is a qualified one, such that "[even] when the existence of [the] privilege is established, there [remains] a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *Friedman v. Bache Halsey Stuart Shields,* 738 F.2d 1336, 1341 (D.C. Cir. 1984).

Defendants fail to demonstrate that the drafts and communications sought by the Smoot subpoena (collectively, "the Smoot documents") are both predecisional and deliberative. Nor do they argue that the interests disfavoring disclosure outweigh those favoring it. Moreover, even if they satisfied their burden on these issues, Defendants' invocation of the privilege is untimely and thus waived.

## ARGUMENT

### I. DEFENDANTS CANNOT SHOW THAT THE SMOOT DOCUMENTS ARE PREDECISIONAL

Defendants cannot demonstrate that the Smoot Documents were "prepared in order to assist an agency decisionmaker in arriving at his decision," *Grand Central P'ship*, 166 F.3d at 482, if for no other reason than because the OCC is not an agency decisionmaker setting policy. There is no showing that the documents "are central to a decisional process resulting in the formation of policy," *Haus v. City of New York*, No. 03 Civ. 4915, 2004 WL 3019762, at *3 (S.D.N.Y. Dec. 29, 2004), because the OCC is not a policy-making body.

Defendants make no claim that the OCC itself made any decision on the basis or with the assistance of the Smoot documents. That is fatal to its claim of privilege. "[A] document will be considered 'predecisional' if the agency can . . . pinpoint the specific agency decision to which the document correlates and . . . verify that the document precedes, in temporal sequence, the 'decision' to which it relates." *Grand Central P'ship*, 166 F.3d at 482 (cleaned up). Defendants claim only that the Report recommended policy changes that were "the subject of deliberation *by the mayor and other high-level decisionmakers within the NYPD*." Defs.' Mot. 3 (emphasis added). That is insufficient. Conspicuously absent is any description of a decision by the OCC itself that the Smoot documents preceded.

Defendants' reliance on *Tigue v. United States Department of Justice,* 312 F.3d 70 (2d Cir. 2002), is misplaced. *Tigue* concerned a consulting commission the IRS established to make suggestions on how the IRS could reform its Criminal Investigations Department. To achieve its goal, the commission sought the opinion of the Southern District U.S. Attorney's Office, which provided the commission with a memorandum outlining the U.S. Attorney's suggestions to the IRS on how the IRS should conduct its criminal investigations—suggestions the Second Circuit latter determined to be protected as deliberative process. *Id*. at 70.

None of this bears any resemblance to the present case. The NYPD did not commission the OCC (let alone Smoot) to determine how it should reform its policies. Nor did the OCC enlist Smoot to provide it with his own advice and recommendations on how best to improve either the OCC's practices or the NYPD's—unlike the IRS commission's solicitation of advice from the U.S. Attorney's office in *Tigue*. Rather, Defendant de Blasio directed that the OCC conduct an independent analysis and

produce a public report in the name of public transparency and accountability, not in an effort to formulate recommendations for policy change.[4] And the OCC, in turn, tasked Smoot with investigating and analyzing the NYPD's conduct at the Protests. *See infra*, Part III.

Far more apropos is the *Haus* case. There, New Yorkers sued the NYPD for deploying excessive force at a demonstration protesting the impending invasion of Iraq. Plaintiffs requested documents "describe[d] as 'critiques' of tactics or other aspects of the police performance during the demonstration," which contained officers' "views, recommendations and ideas regarding police response." *Haus*, 2004 WL 3019762, at *1. Because an agency "must be able to demonstrate that . . . the document for which . . . privilege is claimed related to a specific decision facing the agency," the City's claim that the documents "may be consulted in the future in unspecified circumstances" was insufficient to demonstrate the documents were "central to a decisional process resulting in the formation of policy." *Id.* at *1-3. Those documents were ordered produced in full.

Thus, that the NYPD later consulted the OCC's cursory recommendations in formulating its own internal policy does not protect the documents from disclosure. "It is of no consequence that documents may 'assist,' 'lead to,' or 'form the basis for' some governmental policy. The mere fact that an agency's deliberations regarding a policy involve the consideration of particular documents does not render those documents

---

[4] For example, the "WHEREAS" provisions of EO 58 state, in pertinent part: "[T]he public will benefit from an independent investigation into matters relating to the conduct of officers of the New York City Police Department at protests" and "it is important to ensure that there is accountability for the police who acted inappropriately during these protests, and to help deepen trust between community and the police." EO 58.

protected by the deliberative process privilege." *Allocco Recycling LTD v. Doherty*, 220 F.R.D. 407, 413 (S.D.N.Y. 2003) (Gorenstein, J.). Whether the NYPD and/or the Mayor's office implemented any recommendations suggested by the OCC report (and Plaintiffs do not concede they did) says nothing about whether the Smoot documents—created and exchanged with *the OCC only*—are predecisional and protected from disclosure. They are not.

## II. DEFENDANTS CANNOT SHOW THAT THE SMOOT DOCUMENTS ARE DELIBERATIVE

"[T]here is obviously no rule that documents prepared by government consultants are necessarily deliberative." *Doherty*, 220 F.R.D. at 412. Nor is there a rule that drafts or communications are privileged *per se*. *See Judicial Watch, Inc. v. U.S. Postal Serv.,* 297 F.Supp.2d 252, 261 (D.D.C. 2004) ("[D]rafts are not presumptively privileged."); *MacNamara v. City of New York*, 249 F.R.D. 70, 85 (S.D.N.Y. 2008) (ordering production of emails that did not contain "policy-oriented judgments").

Rather, the Court "must consider the consultant's function in preparing the documents at issue." *Doherty,* 220 F.R.D. at 412. In determining whether that function was "deliberative," Courts ask whether the proponent of the privilege has demonstrated that the requested documents "(i) form an essential link in a specified consultative process, (ii) reflect the personal opinion of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Haus*, 2004 WL 3019762, at *1 (cleaned up). Defendants have failed to make this showing. The OCC's detailed review of what went wrong during the George Floyd Protests and who was responsible is not (and was never) a policy deliberation. It was a factual analysis not protected by the deliberative process privilege.

"[T]he fact that [OCC] personnel or [Smoot] exercised some judgment or discretion in deciding how to compose [the Report] itself *is of no consequence*." *Doherty*, 220 F.R.D. at 414 (emphasis added). The exercise of discretion or judgment—determining what to include, what to highlight, and what is important—is insufficient to turn factual documents into opinion protected from disclosure. In *Doherty*, this Court rejected the Department of Sanitation's ("DSNY") claim of privilege over documents generated by a consulting firm it had hired to "collect and analyze" information concerning waste disposal in New York City. The DSNY argued that the documents were deliberative because they were prepared to assist the department in making policy decisions about waste management. This Court found that these documents did not reflect the personal opinion of the consultant or anyone at DSNY; rather, "the record show[ed] that [the consultant's] role was merely to obtain, record, and analyze factual material from various waste carters and other sources. The privilege does not apply to such factual material." *Id.* at 412. This is precisely the case with the Smoot documents.

Defendants offer the conclusory statement, without detail, that Smoot "offered his opinions and ideas" on unnamed topics, and that the OCC chose "which of Smoot's opinions and ideas to incorporate" into its final recommendations. Defs.' Mot. at 5. But that is plainly insufficient to invoke the privilege. *Hennessey v. US AID* (cited with approval in *Doherty*), is instructive. 121 F3d 698 (4th Cir. 1997) (per curiam). In *Hennessey*, an agency commissioned a surveyor to report on the reasons for construction delays in building a university, including attributing responsibility for specific delays. In reversing the District Court's conclusion that the report was privileged because it "involved an assessment of which particular steps in the construction project had an effect upon overall delays" and contained

"recommendations concerning [the building contractor's] responsibility . . . for delay in completion of the project," the Fourth Circuit reasoned:

> While it is doubtless true that the process of composing these portions of the final report may have involved the exercise of some judgment or discretion, the [report] must ultimately be regarded as factual because it is written as an objective and retrospective recitation of historical facts . . . To the extent that any portion of the report expresses an 'opinion,' it is simply an opinion regarding what occurred in the past rather than advisory opinion regarding future agency action."

*Id.* at *4. The same rule applies here. Smoot's retrospective analysis and the Report's recommendations about a historical event—the Protests—are not privileged.

Over and above the fact that neither discretionary judgment nor recommendations inoculate an investigatory report from disclosure, Defendants' attempt to characterize the Report as "policy-oriented," Defs.' Mot. at 2, ignores both the purpose of the Report and the vast majority of its content. As for its purpose, Defendant de Blasio asked the OCC to conduct an "analysis . . . of factors that may have impacted the events at protests." Ex. B at 1. And thus very little of the Report is dedicated to actually providing recommendations, let alone substantive ones.

The Report is 53 pages. Four pages are dedicated to a proposed "Strategic Checklist for First Amendment Events," while the last three pages addend ten "recommendations" for improving the NYPD (with two more pages duplicating these recommendations in full). The remaining 44 pages—83% of the report—are dedicated to evaluating what went wrong in the NYPD's response to the Protests.

Contrary to Defendants' insistence that these recommendations were "sometimes described in great[] detail" and "include instructions for implementation," Defs.' Mot. at 2-3, these recommendations are at most a cursory afterthought. The recommendations

are almost comical in their vagueness.[5] *Cf. Haus,* 2004 WL 3019762, at *3 (deeming "comments" the NYPD solicited from its officers on proposed changes to protest policing strategy not to be "central to a decisional process resulting in the formation of policy"). The recommendations Defendants identify the NYPD as adopting are particularly meaningless: namely, that the NYPD "develop processes for incorporating community sentiment into planning for protests," (#4) and that "training should be assessed according to current best practices" (#6). Defs.' Mot. at 4; Ex. B. at 51-52.

At most, these recommendations advise the NYPD to plan to plan—that is, to commence designing policies, *not* to implement policies previously developed by the OCC and Smoot. These superficial postscripts should not and cannot possibly inoculate the Smoot documents from disclosure. *Hennessey,* 121 F3d at *4; *Grand Central P'ship,* 166 F.3d at 482 ("the privilege does not protect a document which is merely peripheral to actual policy formation").

---

[5] The superficiality of the Report's recommendations cannot be stressed enough. They include, for example, recommendations that the NYPD should "work to ensure that input from multiple stakeholders . . . is considered in any post-action policy review" (#3); "focus on investments in supervisors" (# 8); and "work with the five District Attorneys to develop and implement a plan for coordination of high impact First Amendment events" and "convene an implementation team for these and other recommendations" (#9-10). Ex. B at 50-53.

Although the Report's First Amendment checklist is more specific, it "contains tasks that NYPD already does." Report at 47. The remaining tasks, which the Report suggests "enhance[] upon what [NYPD] can do going forward," *id.*, are generic best practices in policing First Amendment demonstrations. Indeed, it is largely derived from previously published scholarship. Police Executive Research Forum, *The Police Response to Mass Demonstrations: Promising Practices and Lessons Learned* (2018); Edward R. Maguire, New Directions in Protest Policing, 35 St. Louis U. Pub. L. Rev. 67 (2015). Defendants' assertion that consultants may have "relied upon their reasonable expectation of privacy in order to freely express their opinions [] and recommendations," Defs.' Mot. at 5, makes little sense when those recommendations have been made previously and publicly. In any event, it appears that Smoot had no role in preparing the checklist. *See infra* at 9-10.

Moreover, Defendants' briefing repeatedly conflates the OCC Report itself with the documents actually sought by the Smoot subpoena: documents evincing Smoot's drafts and communications during the course of the investigation. *Cf. Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 867 (D.C. Cir 1980) ("The deliberative process privilege is . . . dependent upon the *individual document* and the role *it* plays in the administrative process.") (emphases added); *accord Doherty,* 220 F.R.D. at 414. Defendants make no showing that *the Smoot documents themselves* are and "essential link" to the formation of any of the Report's recommendations. In fact, Defendants—who have not provided Plaintiffs a privilege log for these documents or justified its absence—make no effort to identify the Smoot documents with any more particularity than Plaintiffs' subpoena, which is necessarily imprecise for the simple reason that Plaintiffs have little idea what documents the OCC investigation generated. Instead, Defendants now simply declare the Smoot documents privileged *en masse* without the particularity required to either sustain the privilege or permit Plaintiffs or this Court to properly evaluate it.[6]

Weighted against Defendants' unsubstantiated assertion that this indeterminate class of documents consists principally of opinion is the Report itself, which makes clear that Smoot's contributions were primarily if not exclusively limited to the factual section of the Report. According to the Report, Smoot "advised the review team on issues including crowd psychology, best practices in policing protests, and behavioral science

---

[6] *See generally*, *Fischer v. Forrest*, No. 14 Civ. 1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017). To the extent the Court believes the Smoot documents are potentially privileged, it could conduct an *in camera* review; at the very least, Defendants should be required to produce a privilege log describing the documents.

as they related to policing and protests." Ex. B at 9. "Crowd Psychology and Behavior," *id*. at 40-42, and "Maintaining Emotional Control vs. Habitual Response to Take Control," *id*. at 38-40, are subparts of a section of the Report titled "The Content and Focus of the NYPD's Training for Protests," which provides that the "central question for analysis" in the section is "whether the training provided by the NYPD *had an impact* on the events that occurred at the George Floyd protests." *Id*. at 38 (emphasis added). Similarly, best practices are discussed in a section titled "Comparative Review," which compares the NYPD policies in effect during the Protests to those of other police departments across the nation. *Id*. at 43-46.

These contributions are precisely the sort of "purely factual matters" and retrospective analysis this Court found not to qualify for protection in *Dohetry*. 220 F.R.D. at 414. *Cf. Tigue*, 312 F.3d at 77-79 (memorandum outlining U.S. Attorney's suggestions to the IRS on how the IRS should conduct criminal investigations protected as opinion). A proper privilege log (or *in camera* review) would show that the communications and drafts regarding factual sections of the Report—*i.e.*, those sections that contain Smoot's contributions—are segregable factual material that are not privileged and should be produced. *Haus*, 2004 WL 3019762, at *3 ("[S]egregable factual material . . . is not covered by the privilege.").

## III. DEFENDANTS CANNOT SHOW SUFFICIENT INTERESTS DISFAVORING DISCLOSURE

The deliberative process privilege is a qualified privilege, requiring Defendants to demonstrate that the interests disfavoring disclosure outweigh both Plaintiffs' need for the documents and the public interest favoring disclosure, "the interest that . . . looms

largest [in civil rights cases]" as it "gives force to the federal civil rights laws." *King v. Conde*, 121 F.R.D. 180, 195 (E.D.N.Y. 1988).

Defendants fail to make the "extremely persuasive" showing required to sustain the privilege at this juncture. *Id.*; *accord Morrissey v. City of New York,* 171 F.R.D. 85, 92 (S.D.N.Y.1997). In fact, Defendants do not expressly address it. Charitably construed, they argue that Smoot "communicated with the Corporation Counsel team with the expectation of privacy," that he and other consultants "undoubtedly relied upon their reasonable expectation of privacy in order to freely express their opinions," and that "all such communications were critical to the Corporation Counsel team's completion of the OCC Report." Defs.' Mot. at 5. These conclusory statements are insufficient to carry the privilege. *See Haus,* 2004 WL 3019762, at *3-4 ("formulaic assertion" that disclosure "would inhibit the frank and candid exchange of opinions . . . plainly fails to offer a persuasive basis for believing that production under the governing confidentiality order would pose any harm to the public interest"); *King*, 121 F.R.D. at 192 (noting the concern of chilling investigative candor "is probably often overstated, and courts should be wary of relying on it in restricting discovery").

The risks that that the deliberative process privilege is meant to protect against—public confusion over agency official policy and a corresponding chilling of candid discussion among government employees, *Nat'l Wildlife Fed. v. U.S. Forest Serv.*, 861 F.2d 1114, 1119 (9th Cir. 1988)—are simply not present given that Smoot was engaged for a project of factual analysis, not one of providing opinion. *Doherty*, 220 F.R.D. at 414; *Hennessey,* 121 F3d at *4; *see also Coastal States*, 617 F.2d at 863 (deeming personal privacy interests insufficient to sustain *attorney-client privilege* between auditor and agency counsel where the memoranda at issue "seem[ed] to be neutral,

objective analyses of agency regulations") (emphasis added). Nor is there any risk that disclosure of the Smoot documents would prematurely disclose the OCC's views given the report itself principally consisted of historical analysis, it has been publicly published, and the Smoot documents may well fall under the protective order in place. *E.g., Nat'l Cong. for Puerto Rican Rts. ex rel. Perez v. City of New York,* 194 F.R.D. 88, 96 (S.D.N.Y. 2000) (noting privacy concerns are minimal "in light of the carefully crafted protective order already in place").

Moreover, Defendants have not explained how any personal privacy interests (to the extent they exist) would overcome Plaintiff's need for the documents or the intense public interest in having full transparency about NYPD's handling of the George Floyd Protests. In contrast, that interest is high. Defendant de Blasio, whose misconduct Plaintiffs in these cases are challenging, ordered the OCC, who represents him and the other Defendants in these cases, to conduct what was meant to be an independent analysis of the relevant events and to create and publish the Report as a mechanism for public transparency and accountability. Thus, the drafts and communications analyzing those events are directly relevant to Plaintiffs' core claims that Defendants violated their constitutional and other rights as well as their related *Monell* and injunctive relief claims. For example, Plaintiffs are plainly entitled to know whether a police practices expert entrusted by the City expressed the view that any techniques used by the NYPD in response to the Protests were unlawful, wrong, or improper. Additionally, some Plaintiffs' *Monell* claims directly challenge Defendants' failures to train, supervise, and discipline NYPD members related to the protests—all topics that are discussed in the Report. The Smoot documents are also especially relevant to Plaintiffs' injunctive claims; Defendants have repeatedly argued that recent "reforms" implemented by the

NYPD moot or otherwise defeat those claims. *See, e.g.*, Defs.' Mot. to Dismiss, Dkt. #106 at 12-13 (purported reforms ensure "there is no expectation the events of the summer will recur" and "eradicate[e] the need for injunctive relief"). To the extent Smoot really did make any policy recommendations, Plaintiffs are entitled to discover the extent to which the NYPD adopted or ignored them.

Next to the "[t]he great weight of the policy in favor of discovery in civil rights" actions and "the normal presumption in favor of broad discovery," Plaintiffs' need for these documents necessitates disclosure. *King*, 121 F.R.D. at 195; *see also Perez*, 194 F.R.D. at 96 (noting courts must consider availability of information from other sources and that "in civil rights cases against police departments, it is unlikely that plaintiffs will be able to obtain information of comparable quality from any other source.") Preventing Plaintiffs and the public from scrutinizing the NYPD's devastating policing failures is insufficient to justify the privilege.

## IV. DEFENDANTS' OBJECTIONS ARE UNTIMELY AND WAIVED

Defendants' motion to quash, filed on August 16, is patently untimely, coming over two weeks after the subpoena's July 30 compliance deadline, originally extended from June 30 at Defendants' request. Fed. R Civ. Pro. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); *Est. of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006). Defendants' motion should be denied on that basis alone. *E.g., City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08 Civ. 3966, 2009 WL 10705762, at *2 (E.D.N.Y. Dec. 21, 2009) (defendants' delay in moving to quash "further compels the Court's decision to deny defendants' motion on the grounds of untimeliness"). Nor do Defendants even attempt to show good cause for their delay. *Cf. In re Rule 45*

*Subpoena Issued To JP Morgan Chase Bank, N.A.*, 319 F.R.D. 132, 135 (S.D.N.Y. 2016) (motion to quash subpoena, filed nearly two months after the return date without good cause shown, denied as untimely).

Thus, even if a legitimate claim of privilege exists here, Defendants waived it. *E.g., FG Hemisphere Assoc., L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) (party's "unjustified failure to comply with Local Rule 26(b) results in a waiver of any claim of privilege that might otherwise have existed with respect to all responsive documents," and collecting 13 cases). Indeed, "[a]ny other result would ignore the time limits set forth in the Federal Rules of Civil Procedure, contribute further to the delay in resolving cases and effectively turn Article V of the Federal Rules of Civil Procedure from a structure of well-defined rights and obligations to a system of suggested, but non-binding, guidelines." *Eldaghar v. City of New York Dep't of Citywide Admin. Servs.*, No. 02 Civ. 9151, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003).

## CONCLUSION

Defendants do not demonstrate the Smoot documents are predecisional. They do not demonstrate they are deliberative. They do not show that the balance of interests favors non-disclosure. And their objections are waived. The Court should deny Defendants' motion.

Dated: August 27, 2021
New York, New York

KAUFMAN LIEB LEBOWITZ & FRICK LLP

/s/Alison Frick
Alison Frick
Douglas E. Lieb

10 E. 40th Street, Suite 3307
New York, New York 10016
(212) 660-2332
africk@kllf-law.com

*Counsel for Plaintiff in Wood v. City of New York, No. 20-cv-10541*

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
Molly Biklen
Jessica Perry
Daniel R. Lambright
Robert Hodgson
Lisa Laplace
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
mbiklen@nyclu.org

*Co-Counsel for Plaintiffs in Payne v. De Blasio, No. 20-cv-8924*

THE LEGAL AID SOCIETY
Corey Stoughton
Jennvine Wong
199 Water Street
New York, NY 10038
(212) 577-3367
cstoughton@legal-aid.org

*Co-Counsel for Plaintiffs in Payne v. De Blasio, No. 20-cv-8924*

HAMILTON CLARKE LLP
Lance A. Clarke, Esq.
Jason Clark, Esq.
William Guilford, Esq.
48 Wall Street, Suite 1100
New York, NY 10005
(212) 729-0952 l
c@hamiltonclarkellp.com

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, No. 20-cv-10291*

THE LAW OFFICE OF JOSHUA MOSKOVITZ, P.C. /
Joshua S. Moskovitz, Esq.
14 Wall Street, Suite 1603
New York, NY 10005
(212) 380-7040
josh@moskovitzlaw.com

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, No. 20-cv-10291*

RICKNER PLLC
Robert Howard Rickner
14 Wall Street
Suite 1603
New York, NY 10005
212-300-6506
rob@ricknerpllc.com

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, No. 20-cv-10291*

THE LAW OFFICE OF MICHAEL L. SPIEGEL
Michael L. Spiegel, Esq.
48 Wall Street, Suite 1100
New York, New York 10005
(212) 587-8558
mikespieg@aol.com

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, No. 20-cv-10291*

STOLL, GLICKMAN & BELLINA, LLP /
Andrew B. Stoll
300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201
(718) 852-3710
astoll@stollglickman.com

*Counsel for Plaintiff in Yates v. New York City, No. 21-cv-1904*

BELDOCK LEVINE & HOFFMAN LLP
Jonathan C. Moore
David B. Rankin
Luna Droubi
Marc Arena
Deema Azizi
Rebecca Pattiz
Katherine "Q" Adams
Regina Powers
99 Park Avenue, PH/26th Floor
New York, New York 10016
212-490-0400
jmoore@blhny.com

*Co-Counsel for Plaintiffs in Sow v. City of New York, No. 00533*

GIDEON ORION OLIVER, Esq.
277 Broadway, Suite 1501
New York, NY 10007
718-783-3682
gideon@gideonlaw.com

*Co-Counsel for Plaintiffs in Sow v. City of New York, No. 00533*

COHEN & GREEN P.L.L.C
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
929-888-9480
elena@femmelaw.com

*Co-Counsel for Plaintiffs in Sow v. City of New York, No. 00533*

WYLIE STECKLOW PLLC
Wylie Stecklow PLLC
111 John Street, Suite 1050
New York, NY 10038
212-566-8000
Ecf@wylielaw.com

*Co-Counsel for Plaintiffs in Sow v. City of New York, No. 00533*

LORD LAW GROUP PLLC
Masai I. Lord
14 Wall St., Ste 1603
New York, NY 10005
718-701-1002
lord@nycivilrights.nyc

*Co-Counsel for Plaintiffs in Sow v. City of New York, No. 00533*