

**GEORGIA M. PESTANA**
*Corporation Counsel*

T HE C ITY OF N EW Y ORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**ELISSA B. JACOBS**
*Senior Counsel*
ejacobs@law.nyc.gov
Phone: (212) 356-3540
Fax: (212) 356-1148

August 27, 2021

**By ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      In Re:  *New York City Policing During Summer 2020 Demonstrations*,
      No. 20 Civ. 8924 (CM) (GWG)
      This filing is related to all cases

Your Honor:

     I am a Senior Counsel in the Office of Georgia M. Pestana, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. I write in accordance with Rule 2.A of the Court's Individual Practices to respectfully oppose plaintiffs' request for discovery pursuant to Local Civil Rule 37.2. (Dkt no. 242) Plaintiffs' motion to compel discovery should be denied, because the requested production is vastly out of proportion to the needs of the case; it would constitute an undue burden upon defendants that would far outweigh any minimal, conceivable benefit to plaintiffs; it is overbroad, overreaching, and lacking justification; and finally, it is irrelevant.

     Plaintiffs seek to compel production relating to two subjects: (1) "an index (or indexes)" revealing which numbered helmets were assigned to which specific officers assigned to the NYPD's Strategic Response Group (SRG), as captured in body-cam footage that defendants have produced in this litigation, and (2) "the metadata and audit trail logs for officers' body-worn camera ('BWC') footage," which plaintiffs claim will reveal details such as the identity of the officer wearing the body camera on a particular date and time, the location of recorded footage, whether footage was altered, "and other key information." (Dkt no. 242 at 1). For the reason discussed below, plaintiffs' are not entitled to this discovery.

**I.     Body Worn Camera Metadata and Audit Trail Logs**

   **A.     *Plaintiffs' demands are not proportional to the needs of the case and are unduly burdensome.***

   Contrary to plaintiffs' claims that Courts generally order the production of metadata, none of the cases cited by plaintiffs endorse this view.[1] Metadata is not addressed directly in the Federal Rules of Civil Procedure but is subject to the general rules of discovery. Metadata thus is discoverable if it is relevant to the claim or defense of any party and is not privileged. Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter [including metadata] relevant to the subject matter involved in the action." Id. The "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The discovery of metadata is also subject to the balancing test of Rule 26(b)(2)(C), which requires a court to weigh the probative value of proposed discovery against its potential burden. See Aguilar v Immigration & Customs Enforcement Div., 255 FRD 350, 355 (S.D.N.Y. 2008).

   Plaintiffs are seeking two broad categories of information regarding the BWC footage: metadata associated with the files and an audit trail that would demonstrate whether the video was edited in any way after the fact. Plaintiffs make the bold, uninformed assertion that, "[a]ll of this information is straightforward to produce. In fact, the very purpose of evidence.com is to ensure that this body worn camera footage can be easily tracked and securely provided for use in litigation... The system is designed to handle large amounts of body worn camera footage and the associated meta data and Evidence Audit Trails. So it should be feasible to produce the same information here." (Dkt no. 242 at 4). Plaintiffs misunderstand and/or misstate the capabilities of the Axon and evidence.com technologies. Simply put, what plaintiffs seek exceeds the current capabilities of the technology in question, and a manual review would be unduly burdensome and not proportional to the needs of this case.

   All of the various types of information the Axon technology stores in the form of "metadata" – such as, in the case of certain body camera models used by NYPD officers during summer 2020, the location where particular footage was recorded – are not designed equally with respect to production capabilities. Some types of metadata were perhaps anticipated by the system's architect to be more frequently in demand, and thus are more easily producible than other types of metadata, particularly when it comes to large-scale extraction and production. These types of metadata can be produced in a more user-friendly format, with relative efficiency and minimal effort. For example, plaintiffs have requested and been provided with spreadsheets that contain this information, as was attached to their motion as Exhibit "G." These documents includes: the name of the officer who took the footage, the date and time the footage was taken, the length of

---

[1] Plaintiffs cite to Williams v Rosenblatt Sec., Inc., No. 14-CV-04390 (JGK)(DF), 2016 US Dist LEXIS 184492 (S.D.N.Y. Nov. 23, 2016) for the proposition that metadata must be produced. However, the Court never defined what was meant by "metadata" in that context, nor did it offer any reasoning, rationale, basis or any sort of endorsement of the practice in general. Moreover, the Court highlighted that the Relativity review platform permitted both parties to easily and painlessly produce their ESI and associated metadata. Id. At *4.

the footage; and whether the officer tagged the footage, as well as the file name.[2]  Contrary to plaintiffs' assertions, it takes relatively minimal effort to match a file name with an officer.

Plaintiffs are also seeking GPS data, which they baselessly believe to be simple to produce. First, plaintiffs can generally identify where footage was taken by simply viewing identified footage, a relatively simple proposition. For many of the protests, the location can be easily identify based on familiar visual cues and landmarks -- as the majority of protests took place in recognizable neighborhood spots such as famous parks, adjacent to famous statues and landmarks, within the confines of distinctive neighborhoods.

Moreover, GPS data (when available) is not stored in a format capable of mass extraction; rather, production would have to be performed on an individual basis, meaning that someone familiar with the technology would have to personally review every single one of the thousands of BWC files, and manually print out the screen with GPS data, or take down notes of the location information displayed in the form of GPS coordinates on the tracking map that appears alongside the camera footage.[3] Alternatively, an individual would have to track and notate all movements made by the officer wearing the body camera in the event that officer travels within the City, which was an especially common practice for officers policing summer 2020 protests while on bicycles, who were able to make their way across town in a manner of minutes. Some such BWC footage lasts for quite long durations as the officer wearing the body camera traverses a borough, even rides among boroughs.  Moreover, only a small percentage of the NYPD's Body Worn Cameras automatically recorded location data. During the first three weeks of the protests, less than 5% of the NYPDs Body Worn Cameras (851 out of over 20,000 cameras) recorded location data. While this number has increased, even now, fewer than half of the NYPD's cameras record GPS data. Similarly, Audit Trails would have to be printed for each video, and would provide very limited relevant information, as discussed below.

To produce this information is highly impractical; it would be so inefficient as to border on the absurd; it would waste vast amounts of time and resources, and simply is not feasible, given the impending Court-Ordered deadlines.

### B.  *Plaintiffs' requests are overbroad and seek irrelevant information.*

Plaintiffs additionally request audit trails, but offer no compelling reason why it is necessary or relevant. BWC footage cannot be edited or deleted in the way plaintiffs' baselessly imply, and any additional information provided in the audit trails is of no utility.

First, plaintiffs claim that they require the audit trails in order to see if the footage has somehow been tampered with. Plaintiffs offer no basis for this accusation as there is none. Simply put, officers do not have the ability to edit or delete videos. In fact, this very argument has been rejected by Criminal Courts in this State. See, e.g., People v. Nila Larkin, Ind. No. 774/2019 at

---

[2] The file names reference the date and time that an officer turned on their footage. Therefore, if multiple officers turned on their cameras at the exact same moment, there could be files with the same name. Each subsequent file would be given a suffix "1," "2", etc. In order to differentiate the files, plaintiffs would be able to look at the length of the particular video.

[3] We have spoken with Axon, who maintains evidence.com, about the feasibility of exporting the location data, and have been informed that it would take months to add this option to the system.

6(Sup. Ct., Kings County May 24, 2021) (D'Emic, J.)("Similarly unavailing is the defendant's claim that the prosecution is obligated to produce the audit trails to prove that the video recording has not been tampered with. Upon the court's information and belief, police officers do not have the ability to delete or edit their body camera recordings.") Officers do not have the capability to delete or redact videos. While officers can make a shorter clip of a longer recording, this process would not delete the longer video. In addition, the title of the video would reflect the fact that this was a clip, obviating the need for any audit trail. To the extent videos were redacted by one of the few members of the NYPD with the permission to do so, this too would be reflected in the video's title. The rest of the information contained in the audit trails simply shows who at the NYPD has downloaded a video and on what date. Plaintiffs have provided no justification for the relevance of this information, and it appears to be nothing more than a fishing expedition.

Finally, contrary to plaintiffs' assertion, audit trails are not regularly provided even in the criminal context. See, e.g., Larkin at 7 ("[T]he audit trail of body camera footage offers no additional information regarding the subject matter of the criminal case – a consideration that strongly militates against mandating the automatic disclosure thereof"); See also People v. Shakeem Smit, Ind. No. 1866/2019 (Sup. Ct., Kings County Oct. 8, 2020) (Johnson, J.) (finding that audit trails need not be provided in a criminal case either under new automatic discovery rules nor under more general principles of criminal discovery.) There is no reason for the Court to diverge here, as plaintiffs have offered no compelling reason why these contain information relevant to the needs of this case.

## II.    The Helmet Number Index

Plaintiffs also seek a helmet index system in an effort to identify officers. Providing a list of all officers within SRG is in fact a burden on their privacy, particularly without an agreement that this be kept confidential. Moreover, it is unnecessary, as defendants have been providing the names associated with officers once plaintiffs identify the helmet numbers of officers they wish identified. While this provides an additional burden on defendants, it is appropriate to protect the interests of the officers in question.

Plaintiffs somehow believe that the experience of Mr. Yates demonstrates the need for this index, but in fact shows how these may be more misleading and useless as evidence. First, the officers in Mr. Yates's case are patrol officers, not SRG officers, making the SRG index useless. In addition, some of the officers identified solely by helmet number are not in fact the individuals seen on the video. Therefore, defendants are using other methods to attempt to identify these individuals, once it has been determined that the helmet numbers do not match. These efforts can be significantly more time-intensive, leading to some of the delays plaintiffs reference. However, this joint effort has led to both parties involved ensuring that the proper officer is identified. There is no reason to diverge from this process.

### III. Conclusion

For the reasons stated above, the Court should deny plaintiffs' motion. Thank you for your consideration herein.

Respectfully,

*Elissa B Jacobs*

Elissa B. Jacobs
*Senior Counsel*
Special Federal Litigation Division

CC: All Counsel of Record (via ECF)