

**GEORGIA M. PESTANA**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**DARA L. WEISS**
*Senior Counsel*
daweiss@law.nyc.gov
Phone: (212) 356-3517
Fax: (212) 356-1148

**By ECF**

September 10, 2021

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    In Re: *New York City Policing During Summer 2020 Demonstrations*,
           No. 20 Civ. 8924 (CM) (GWG)
           This filing is related to all cases

Your Honor:

    I am a Senior Counsel in the Office of Georgia M. Pestana, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. I write in accordance with Rule 2.A of the Court's Individual Practices to respectfully oppose plaintiffs' September 8, 2021 letter motion pursuant to Local Civil Rule 37.2.

    Once the rhetoric and posturing are stripped away from plaintiffs' most recent letter motion, what remains is a basic dispute about the pace of email discovery. Defendants are working as diligently as they can, and plaintiffs are not satisfied with that. The impossible pace that plaintiffs are demanding for review and production is inconsistent with the unbounded nature and expansive scope of discovery that they have sought. While defendants fully understand the speed of the "rocket docket" and have been in continued compliance with the schedule set by Judge McMahon, the sheer breadth and scope of electronic discovery sought by plaintiffs means that additional and asymmetrical burdens are placed on defendants.

    Until the end of July, defendants devoted their resources to reviewing and producing the tens of thousands of non-email files that they committed to producing by July 31, 2021. Plaintiffs were well aware that defendants did not consider email discovery to be a part of the document discovery they were committed to producing by the July 31 deadline. Once the document production was completed, defendants promptly turned their attention to email discovery. The parties met and conferred several times and reached agreement as to email custodians and collection terms on August 6, 2021[1]. Defendants began the collection process soon after

---

[1] Plaintiffs claim that defendants "have insisted at meet and confers that there is no reasonable chance that any relevant email will be omitted," but defendants did not make that assertion. Defendants conducted a reasonable investigation to identify appropriate email custodians and collection terms and then engaged in a meet-and-confer process with

custodians and terms were finalized. The email collection included 39 custodians for NYPD and 10 custodians for the Office of the Mayor (OTM).[2] The collection process is not instantaneous—it takes time to run a large collection; resolve any issues that may arise (e.g., identifying and reformatting search terms that return errors); transfer collected data to the Law Department's electronic discovery vendor; process the email data; and load it into a review platform. As defendants reported to plaintiffs during the September 8, 2021 meet and confer, that part of the process is complete and defendants are now running email threading and reviewing statistically valid samples of the email populations to determine the most efficient review approach and the number of reviewers needed to conduct the review. Defendants plan to complete this part of the process by the end of next week and can provide another update at that time. Although plaintiffs allege that "Defendants have provided no clear information to plaintiffs about their search and collection of ESI communications since [August 6, 2021]," that is simply not true—plaintiffs know exactly what custodians, date range, and collection terms were used for the collection and where defendants are in the process[3].

As plaintiffs are undoubtedly aware, discovery is an iterative process and unexpected issues arise. For instance, when conducting an initial sample analysis of the OTM email, defendants encountered two unexpected issues that had to be dealt with and, unfortunately required the email to be reprocessed by defendants' electronic discovery vendor. Defendants disclosed the first of these issues to plaintiffs during the September 3 meet and confer (large volume of form petition emails that skewed the sample analysis) and the second issue was disclosed to plaintiffs during the September 8 meet and confer (truncated versions of emails were included in the review set rather than full versions). During the September 8 meet and confer, defendants reiterated their willingness to continue providing plaintiffs with updates.

As defendants further disclosed during the September 8 meet and confer, defendants intend to engage a team of review attorneys to conduct the review. However, until the sample analysis is completed, defendants do not know how many reviewers will be needed. And although it would be theoretically possible to hire dozens of reviewers to get through the documents very quickly, that would not be a defensible or reasonable way to conduct a document review. Defendants did not "concede[] that if not for apparent budget concerns, the review could get done very quickly." Defendants explained that the Law Department case team has an obligation to supervise the review attorneys and perform quality control ("QC") review of the work done by the review team to ensure they understand the issues and are correctly categorizing documents for responsiveness, privilege,

---

plaintiffs to finalize the list of custodians and terms. However, no discovery process is perfect and "[t]he standard for evaluating discovery is reasonableness, not perfection." *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841 (JPO) (JCF), 2017 U.S. Dist. LEXIS 33249, at *13 (S.D.N.Y. Mar. 8, 2017).

[2] Defendants are perplexed by plaintiffs' assertion that defendants did not adequately explain why certain individuals listed in defendants' preliminary ESI disclosures were not included in the final list of custodians. As defendants explained in their July 12, 2021 letter, not all the individuals listed in defendants' preliminary ESI disclosures were appropriate email custodians because certain individuals were only involved in preservation and collection efforts and would not have relevant emails. This was disclosed to plaintiffs in writing and the identified individuals were not included in the email collection.

[3] Plaintiffs make a big ado about the fact that defendants have not provided a hit report for search terms being used to narrow the review set. However, the reason for this is that defendants are not using search terms to narrow the review set. Instead, defendants intend to use technology assisted review (likely either continuous active learning or simple active learning) to conduct the review as efficiently as possible. Once the statistical sample analysis is completed, defendants can assess the type of technology assisted review that will be utilized and the estimated review effort.

redaction, and confidentiality. Typically, case teams QC around 10% of the review teams' output to ensure an accurate and defensible review. As a result, the number of review attorneys that can be utilized to conduct first level review will be limited by the amount of time that the Law Department case team can devote each day to conducting an appropriate level of QC. Once the sample analysis is completed, defendants will determine how many reviewers are needed and when the review can be completed. Defendants are willing to provide this information to plaintiffs once it is available.[4]

In addition, given the scope of this litigation and the "rocket docket," it is not surprising that discovery has—and continues to be—a time- and-labor-intensive process. Defendants are working diligently to conduct discovery in a reasonable and defensible manner, but resources are being diverted by the rate and frequency with which plaintiffs raise disputes, demand meet-and-confers, and seek judicial intervention. Precious time that can be spent fashioning a defense to this action, or even better, devoting time and resources to discussing settlement, are taken up by hours of meeting and conferring, responding to letters to Your Honor, and participating in conferences.

Based upon the foregoing, plaintiffs' application should be denied in its entirety.

Thank you for your consideration herein.

Respectfully submitted,

*Dara L. Weiss s/*

Dara Weiss
*Senior Counsel*
Special Federal Litigation Division

cc:   ALL COUNSEL (via ECF only)

---

[4] In addition to simply performing QC, it is incumbent upon the attorneys defending this case to have an understanding of the emails being produced. This goes for the tens of thousands of documents already produced as well. Simply handing over documents and emails is one thing. Reading, understanding, and using the documents and emails to develop a defense is quite another, and no matter how many reviewers are hired to go through the emails, Ms. Jacobs and myself will still need to have an understanding of what those emails contain.