

**GEORGIA M. PESTANA**
*Corporation Counsel*

T<small>HE</small> C<small>ITY OF</small> N<small>EW</small> Y<small>ORK</small>
**L<small>AW</small> D<small>EPARTMENT</small>**
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**DARA L. WIESS**
*Senior Counsel*
daweiss@law.nyc.gov
Phone: (212) 356-3517
Fax: (212) 356-1148

September 14, 2021

**By ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      In Re: *New York City Policing During Summer 2020 Demonstrations*,
      No. 20 Civ. 8924 (CM) (GWG)
      This filing is related to all cases

Your Honor:

      I am a Senior Counsel in the Office of Georgia M. Pestana, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. I write in accordance with the Court's Individual Practices as well as Local Rule 37.2 to: (i) oppose plaintiffs' request that the Court compel defendants "to produce witnesses in response to Plaintiffs' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6)" (hereinafter, "Notice")[1] (*see* Dkt no. 256), and (ii) respectfully request a conference regarding defendants' anticipated motion for a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure to quash the Notice. Plaintiffs' arguments seeking a motion to compel lack merit, as does their claim that defendants have waived objections to the Notice. Moreover, the Court should issue a protective order as to the Notice in its entirety, because it seeks discovery of information that is, *inter alia*, irrelevant, overly burdensome, not proportional to the needs of the case, protected by privilege, and which constitutes impermissible collateral discovery (also known as "discovery on discovery").[2]

---

[1] Plaintiffs' Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) dated July 2, 2021 ("Notice") is annexed hereto as Exhibit A.

[2] Defendants are cognizant that this letter is longer than the five pages Your Honor permits in response to motions for discovery. This letter includes both a response to plaintiffs' letter, dated September 3, 2021, and an affirmative motion for discovery. Given that these two motions would cover much of the same topic, they have been combined to conserve both Court and attorney resources.

**Argument**

I.   **Defendants' Objections to the Topics Set Forth in Plaintiffs' Rule 30(b)(6) Notice**

"A Rule 30(b)(6) deposition notice, like other forms of discovery, is subject to the limitations under Rule 26 of the Federal Rules of Civil Procedure." *City of N.Y. v. FedEx Ground Package Sys.*, No. 13-CV-9173 (ER), 2016 U.S. Dist. LEXIS 56553, at *15 (S.D.N.Y. Apr. 27, 2016); *see also Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03-CV-1382 (RWS), 2003 U.S. Dist. LEXIS 23179, at *23 (S.D.N.Y. Dec. 23, 2003) (party issuing a subpoena pursuant to Rule 30(b)(6) "must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings") (citation omitted) (emphasis added). Where, as here, a party "objects to the scope of a Rule 30(b)(6) deposition notice… [that party] may move for a protective order under Fed. R. Civ. P. 26(c)(1) 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]'" *Seliger v. Breitbart News Network, LLC*, No. 20-CV-2860 (ER), 2021 U.S. Dist. LEXIS 33325, at *3 (S.D.N.Y. Feb. 22, 2021) (quoting Fed. R. Civ. P. 26(c)(1)) (emphasis added).[3] Courts within this Circuit commonly grant requests for protective orders regarding 30(b)(6) deposition notices. *See, e.g.*, *Seliger v. Breitbart News Network, LLC*, No. 20-CV-2860 (ER), 2021 U.S. Dist. LEXIS 33325, at *7-10 (S.D.N.Y. Feb. 22, 2021) (granting protective order excusing party from producing 30(b)(6) witness as to noticed topics deemed irrelevant, vague, overbroad, and which failed to request information with "reasonable particularity"); *Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-CV-3701 (JPO)(JCF), 2013 U.S. Dist. LEXIS 173006, at *10-11 (S.D.N.Y. Dec. 9, 2013) (excusing defendants from producing 30(b)(6) witness regarding deposition topic that was "all-encompassing and fatally vague," and limiting scope of other topics deemed "overly broad").

   A.   **Plaintiffs Fail to Allege Sufficient Bases for Seeking Collateral Discovery**

      **(1) Collateral discovery in general**

Plaintiffs lack the requisite basis to seek collateral discovery as set forth in Topic Nos. 2, 3, 4 and 5. Specifically, these Topics seek information about defendants' retention and preservation procedures in general, the manner in which certain documents are stored, and the technical aspects of some 18 electronic data sources. (*See* Ex. A at 11-12) This information is "discovery-on-discovery," and is thus "outside the bounds of relevancy." *Downing v. Abbott Labs.*, No. 15 CV 5921, 2017 U.S. Dist. LEXIS 181401, at *2-4 (N.D. Ill. Nov. 2, 2017).

Inquiries into collateral discovery require the requesting party to identify evidence of systemic deficiencies in the responding party's production, allegedly caused by preservation, collection, and/or review issues; plaintiffs here have not made any such showing. *See, e.g., Powers v. Mem'l Sloan Kettering Cancer Ctr.*, No. 20-CV-2625 (LGS), 2020 U.S. Dist. LEXIS 214341,

---

[3] At the outset, defendants note the following claim by plaintiffs is demonstrably false: "[P]rocedural default is also appropriate in this case because Plaintiffs are at a disadvantage on this motion in not knowing what the basis for Defendants' objections to the notice are, particularly Topics 1-3 and 6-7, about which Defendants have steadfastly declined to offer any particular objection." (Dkt no. 256 at 5) Defendants previously identified their objections (and well-grounded bases for a protective order) with specificity as to each topic enumerated in the Notice, in an e-mail sent to all plaintiffs' counsel on August 23, 2021. *See* Exhibit B, E-mail from Elissa Jacobs to plaintiffs' counsel in all consolidated cases, titled "30(b)(6) objections," dated August 23, 2021.

at *2 (S.D.N.Y. Nov. 16, 2020) (a party seeking discovery-on-discovery "must provide an adequate factual basis to justify the discovery"); *Freedman v. Weatherford Int'l*, No. 12 Civ. 2121 (LAK) (JCF), 2014 U.S. Dist. LEXIS 133950, at *9 (S.D.N.Y. Sep. 12, 2014) (finding that failure to produce a few relevant documents was not an adequate factual basis for allowing collateral discovery). At best, plaintiffs' request for collateral discovery is premature. *See E. Mishan & Sons, Inc. v. Tekno Prods.*, No. 19-CV-1910 (LJL), 2020 U.S. Dist. LEXIS 212121, at *2 (S.D.N.Y. Nov. 12, 2020). Plaintiffs' suggestion that they may narrow their request for collateral discovery after defendants produce email is the clearest indication that they lack a fundamental understanding as to what evidence they must put forth to pursue discovery-on-discovery.

Plaintiffs' belated attempts to justify their pursuit of collateral discovery have shifted markedly over time. During the August 25, 2021 meet and confer, plaintiffs claimed for the first time that their basis to seek testimony on collateral issues was a suspicion that certain relevant documents were missing from defendants' productions to date. This assertion strains credulity, given that plaintiffs served the Deposition Notice on July 2, 2021, at which time only a small number of documents had been produced and plaintiffs knew they would be receiving rolling productions on a weekly basis over the subsequent month; also, as of July 2nd, the parties were still negotiating the custodians and search terms to be used in defendants' email collection. Plaintiffs' most recent filing on September 3rd, has abandoned their prior argument. Instead, plaintiffs now claim that testimony on collateral discovery is necessary "to ensure that discovery is comprehensive and timely, to help Plaintiffs identify potentially relevant information, and to avoid misunderstanding or delay in the identification and production of relevant materials."[4] (Dkt no. 256 at 4) This latest effort to justify "discovery on discovery" completely misses the mark and again demonstrates plaintiffs' failure to grasp the basic requirements for seeking collateral discovery. This argument also lacks credibility given that the vast majority of meet-and-confers plaintiffs discuss in their letter took place after the Notice was served.

### (2) Specific collateral discovery sought by the Notice

The portions of Topic Nos. 2-3 seeking "[t]he nature and extent of" and the "location(s) and manner(s) in which such documents and information are stored," (Ex. A at 11-12) seek impermissible collateral discovery, as plaintiffs have failed to allege any deficiencies in defendants' production with respect to the information sought in these Topics.

---

[4] This sort of inquiry by a requesting party is wholly inappropriate in federal civil discovery. *See, e.g., Kaye v. N.Y.C. Health & Hosps. Corp.*, No. 18-CV-12137 (JPO) (JLC), 2020 U.S. Dist. LEXIS 9240, at *4-5 (S.D.N.Y. Jan. 21, 2020) ("[T]he Court does not believe that, in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review [process]."); *Freedman*, 2014 U.S. Dist. LEXIS 102248, at *8 (S.D.N.Y. July 25, 2014) (rejecting plaintiffs assertion that they were "entitled to test the reasonableness and adequacy of [the] [d]efendants production" and finding there was no legal basis for collateral discovery absent an adequate factual basis that suggested a deficiency in the production); *see also* Comment 6.b, The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 125 (2018) ("as a general matter, neither a requesting party nor the court should prescribe or detail the steps that a responding party must take to meet its discovery obligations, and there should be no discovery on discovery, absent [a] . . . specific, tangible, evidence-based indicia of a material failure by the responding party to meet its obligations").

When pressed about Topic No. 4 during the August 25 meet-and-confer, plaintiffs were unable to explain how information about "document maintenance and retention policies and procedures . . . and location(s) of documents reflecting those document maintenance and retention policies" is relevant nor were they able to articulate a deficiency in defendants' production that would justify such unbounded collateral discovery. Absent evidence of a deficiency or issue with defendants' preservation efforts, the requested discovery is impermissible. *See, e.g., Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019) (granting defendant's motion for a protective order with respect to a Rule 30(b)(6) deposition about defendant's retention policies and procedures where there was no evidence of spoliation).

In Topic No. 5, plaintiffs seek detailed technical information for 18 specific data sources that defendants included in their ESI disclosure, without articulating an adequate factual basis by demonstrating a production deficiency with respect to each of these data sources, or tailoring their request in any meaningful way. To date, plaintiffs have only alleged "deficiencies" involving at most 4 of 18 data sources and none of the issues identified warrant formal collateral discovery. Indeed, most have already been addressed by defendants.[5]

Moreover, plaintiffs' assertion in their letter motion that defendants are unable to provide answers on questions necessary to address discovery disputes is a canard. With the rate and frequency that plaintiffs both raise disputes and demand meet-and-confers, it should be expected that defendants will need to take questions back to their clients and follow up on certain topics. And contrary to plaintiffs' assertions, that is precisely what defendants have done. Indeed, nothing demonstrates better how disingenuous plaintiffs' claims are than recent progress made regarding some of the very issues raised in this letter. Despite the discussions had that morning, and the fact that certain issues were left unresolved, plaintiffs filed this letter only hours after the meet and confer had concluded, demonstrating an unwillingness to meaningfully confer and cure discovery disputes before raising them with the Court.

### B. The Notice Seeks Irrelevant Information

Topic Nos. 1-3 of the Notice each center on a list of purportedly "Relevant Policies and Procedures," set forth at No. 8 of "Attachment A" of the Notice. (Ex. A at 8-11) This list of NYPD policies and procedures encompasses 32 discrete subparts, (a)-(ff), some of which contain their own subparts, such as letter "o," while others, such as letter "r," represent compound requests seeking information on multiple policies and procedures. *Id.* Topic No. 1 seeks information on the process of the NYPD's creation, revision, and finalization for each of these greater than 32 policies or procedures. This information is patently irrelevant; it has no bearing on the allegations in the complaints, regardless of whether the alleged conduct of any officer is claimed to have conformed with any of these particular policies or procedures. Nor is the origin of any NYPD policy or procedure relevant to plaintiffs' *Monell* claims, as that inquiry only asks whether a municipal policy or procedure caused a plaintiff to suffer a constitutional violation.

---

[5] For example, plaintiffs claimed that defendants "mysteriously" removed certain custodians from their list of proposed custodians to collect. Yet, by letter dated July 12, 2021, defendants explained that certain NYPD custodians originally listed were not appropriate custodians because their only involvement was to assist in preservation and collection of responsive information.

4

The portions of Topics 2-3 seeking information about the multitude of "Relevant Policies and Procedures" are likewise irrelevant to this litigation, as they are not probative of any party's claim or defense in this litigation.[6]

Further, none of the collateral discovery sought in Topic Nos. 2, 3, 4 and 5 (addressed in detail above), is relevant to any party's claims or defenses. *See* Fed. R. Civ. P. 26(b)(1).

### C.   The Notice Seeks Discovery That is Unduly Burdensome

As described above, Topic Nos. 1-3 all seek information regarding more than 32 individual NYPD policies and procedures. Plaintiffs' requests for information in these Topics, encompassing such a broad and expansive range of policies and procedures, and seeking a minute level of detailed background as to each of the policies or procedures, are unjustifiably and unduly burdensome.

### D.   The Notice Seeks Discovery That is Overbroad and Not Proportional to the Needs of the Case

Topics Nos. 1-3, seeking extensive background information on greater than 32 NYPD policies and procedures, are overbroad and not proportional to the needs of the case. Further, none of these Topics is at all limited in time by the Notice. Even if defendants construe the requests in Topics Nos. 1-3 as limited to policies and procedures in effect at the time period covered by the complaints, they would still be irrelevant, overly burdensome, and overbroad.

Further, Topic No. 4 is so vague and overbroad that defendants are left to guess at which document maintenance and retention policies are at issue. The burden of attempting to identify and prepare appropriate witnesses and defend multiple depositions on two agencies' document maintenance and retention policies writ large is wholly disproportionate to the needs of the case. Topic 5 presents a similar problem, as the burden of identifying and preparing witnesses and defending depositions on the 18 listed data sources violates Rule 26's proportionality requirement.

### E.   The Deliberative Process Privilege Protects Certain Discovery

To the extent that Topic No. 2 seeks "any drafts, versions, and revisions" of the "Relevant Policies and Procedures" – "including, but not limited to, correspondence, memoranda, to/from communications, meeting minutes, agendas, [etc.]" (Ex. A at 11), defendants object that such material is protected by the deliberative process privilege.

---

[6] Topic 2 seeks, in relevant part, "records documenting the process for developing, soliciting or providing input into, modifying or revising, reviewing, and approving, as well as the identities of the individuals involved in drafting, developing, modifying, providing input into, and/or approving, each one," of the more than 32 specified policies and procedures; while Topic 3 seeks "[d]ocuments and information that were reviewed or considered related to developing, modifying or revising, and approving" each of those policies and procedures. (Ex. A at 11-12)

5

The deliberative process privilege extends to any "inter- or intra-agency document" that is "(1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually related to the process by which policies are formulated." *Brennan Ctr. For Justice at NYU Sch. Of Law v. U.S. Dep't of Justice,* 697 F.3d 184, 194 (2d Cir. 2012) (quotation marks and citations omitted). This privilege covers "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *New York Times Co. v. HHS*, No. 20-CV-3063 (GWG), 2021 U.S. Dist. LEXIS 6267, at *18 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). Such documents may include, "<u>recommendations, draft documents, proposals, suggestions,</u> and other subjective documents…" *Id.* (quotations and citations omitted) (emphasis added). Draft versions of NYPD policies and procedures and all other predecisional and deliberative materials sought by Topic 2 are shielded by the deliberative process privilege.

      **F.**      **Certain Discovery Sought is Duplicative or Cumulative**

Topic No. 3 seeks information that is duplicative of information requested in Topic 1. In addition, Topics Nos. 6-7 are both duplicative and/or cumulative of discovery previously produced by defendants, including in the form of document production (such as written NYPD policies), as well as in testimonial form during plaintiffs' depositions of scores of individual officers.

      **G.**      **The Notice Seeks Information That is Impracticable and Infeasible to Obtain**

Topic 3 seeks in relevant part, "[d]ocuments and information that were reviewed or considered related to developing, modifying or revising, and approving each of the Relevant Policies and Procedures." (Ex. A at 12) These requests regarding the more than 32 policies and procedures specified by plaintiffs are simply impracticable. Written NYPD policies and procedures, such as Patrol Guide sections, generally evolve via an ongoing process of periodic revisions over a period of up to many years. This is true of the majority of the policies and procedures identified by plaintiffs, which were initially formulated years ago and gradually updated. Given this process of evolution, it would be utterly impracticable and infeasible (if not outright impossible) for defendants to obtain the above information sought by Topic No. 3.

**II.**      **Plaintiffs' Letter Motion to Compel Should Fail**

Defendants respectfully refer the Court to their arguments at Sections I(A) through I(G), *supra*, which evidence plaintiffs' numerous failures to set forth "relevant" topics with "reasonable particularity" in their Rule 30(b)(6) deposition notice. (*See* Dkt no. 256 at 3-4) Further, despite plaintiffs' attention to these two requirements of Rule 30(b)(6), their letter motion completely disregards the fact that a Rule 30(b)(6) deposition notice is also "subject to the limitations under Rule 26..." *FedEx Ground*, 2016 U.S. Dist. LEXIS 56553, at *15.

Moreover, plaintiffs cannot establish that defendants have "waived" their objections to the Notice and any entitlement to a protective order. (Dkt no. 256 at 4-5) None of the cases on which plaintiffs purport to rely support this argument. Plaintiffs' citation to *Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-CV-3701 (JPO)(JCF), 2013 U.S. Dist. LEXIS 173006 (S.D.N.Y. Dec. 9, 2013) is inapposite for several reasons, but most significantly, plaintiffs'

6

cited quotation is strikingly misleading when viewed in its full context. Plaintiffs cite *Fort Worth Emples.* for the proposition that: "The weight of the authority holds that a party believing it has received a flawed 30(b)(6) notice may not merely rest upon its objections, but must move for a protective order." *Id.*, 2013 U.S. Dist. LEXIS 173006, at *7. (Dkt no. 256 at 4) However, in that same paragraph, the *Fort Worth* court expressly qualifies this observation by noting, "the issue is not free from doubt; at least one court takes the position that some objections to a 30(b)(6) notice may be adjudicated on a motion to compel, thus shifting the burden of going forward to the requesting party." *Id.* at *8 (citation omitted). For that reason, the court denied the requesting party's application to hold the noticed party in "procedural default;" instead, the court considered the merits of the noticed party's objections to the 30(b)(6) notice, and even limited the scope of certain deposition topics in accordance with those objections. *Id.* at *8-9, 10-11.

Equally unhelpful to plaintiffs is *Reilly v. Natwest Markets Group, Inc*., 181 F.3d 253, 268 (2d Cir. 1999). In *Reilly, the* Second Circuit identified only the court-ordered end date for discovery as a deadline by which the noticed party was to have produced witnesses for Rule 30(b)(6) deposition; the Circuit did not indicate any other standards by which to judge "timeliness" of compliance with a deposition notice. *See Reilly*, 181 F.3d at 259, 268-69. Plaintiffs' final case citation likewise fails to further their waiver argument. In *Alli v. Steward-Bowden*, the court upheld an order of costs to plaintiff for its motion to compel 30(b)(6) depositions by the defendant city. *Alli*, No. 11-CV-4952 (PKC)(KNF), 2013 U.S. Dist. LEXIS 165354 (S.D.N.Y. Nov. 7, 2013), However, the court emphasized that this decision was largely driven by the fact that the defendant city had, for a prolonged period, steadfastly refused to produce a 30(b)(6) witness, due to its stated belief that any such testimony would be moot because the plaintiff failed to state a plausible *Monell* claim. *Id.* at *3, 6-7. In sum, plaintiffs' attempt to establish that defendants have waived their objections to the Notice and any entitlement to a protective order fails.

**Conclusion**

Plaintiffs' decision to file their motion to compel rather than continue to work cooperatively with the City only serves to increase the cost of discovery and delay the City's ability to produce documents and prepare witnesses related to merits-based discovery. That decision, and plaintiffs' decision to notice impermissible 30(b)(6) deposition topics violate the goals of Rule 1, which emphasizes that, "'[e]ffective advocacy is consistent with—and indeed depends upon—cooperation and proportional use of procedure,' and decries the 'over-use, misuse, and abuse of procedural tools that increase cost and result in delay.'" *See* Hon. Craig B. Shaffer, Deconstructing "Discovery About Discovery", 19 The Sedona Conference Journal 215, 225 (2018) (citing F.R.C.P. 1 Advisory Committee's note to 2015 amendment)).

Thank you for your consideration herein.

Respectfully submitted,

*Dara L. Weiss s/*

Dara Weiss
*Senior Counsel*
Special Federal Litigation Division

CC: All Counsel of Record (via ECF)