```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In Re: New York City Policing During Summer    :    MEMORANDUM ORDER
2020 Demonstrations                                                 20 Civ. 8924 (CM) (GWG)
                                                                         :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

  Before the Court is the City of New York's motion to quash a subpoena to a police practices expert, Sean Smoot, who was engaged by the Office of the Corporation Counsel ("OCC") to assist it in preparing a report to the Mayor. See Letter from Dara L. Weiss, filed August 16, 2021 (Docket #232).[1] The City's motion makes no arguments regarding relevance or burden. It seeks to quash the subpoena only on the ground that it calls for records protected by the deliberative process privilege, which protects inter-agency "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)). The privilege also protects similar material originating from outside consultants. See Tigue v. Dep't of Justice, 312 F.3d 70, 77 (2d Cir. 2002). A document may properly be withheld pursuant to the deliberative process privilege if it is: "(1) predecisional, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision, and (2)

---

 [1] The City subsequently requested that this letter constitute their motion to quash. See Letter from Dara L. Weiss, filed August 18, 2021 (Docket #237). Plaintiffs responded by filing a memorandum of law. Plaintiffs' Consolidated Memorandum of Law in Opposition to Defendants' Motion to Quash Plaintiffs' Third-Party Subpoena, filed August 27, 2021 (Docket #250) ("Pl. Mem.").

 Although the motion to quash is purportedly made by the "defendants," only the City of New York (or its employees sued in their official capacities) have an interest in raising the deliberative process privilege. Thus, we refer to the movant in this case as the "City."

deliberative, i.e., actually . . . related to the process by which policies are formulated." ACLU v. Nat'l Sec. Agency, 925 F.3d 576, 592 (2d Cir. 2019) (punctuation and citation omitted).

The plaintiffs make a number of arguments opposing the motion to quash the subpoena none of which have been addressed by the City inasmuch as the City did not submit any reply to the plaintiffs' opposition.  Nonetheless, we find most of them unpersuasive.

    A.  Waiver

Plaintiffs argue that the City's motion to quash is untimely, and any applicable privileges therefore waived, because the City's objections were not made within the 14-day period contemplated for objections under Fed. R. Civ. P. 45(d)(2)(B).  We reject this argument for two reasons.  First, it is not clear that this deadline applies.  As one case has noted, the 14-day deadline for objections in Fed. R. Civ. P. 45(d)(2)(B) "applies to the person who is the subject of the subpoena" but does not apply to a party that moves "to quash the subpoena on the basis of privilege."  Univ. Sports Publ'ns Co. v. Playmakers Media Co., 2011 WL 1143005, at *3 (S.D.N.Y. Mar. 21, 2011).  Indeed, "Rule 45 contemplates that a party's privilege claim can be raised even after documents have been produced pursuant to a non-party subpoena."  Id. (noting that Fed. R. Civ. P. 45(d)(2)(B) provides a procedure for a person to raise a privilege objection as to "information produced in response to a subpoena").  Thus, courts have not viewed the 14-day deadline as providing a bar to any later objection based on privilege.  See id.; accord Hutchins v. Palmer, 2015 WL 13713335, at *14 (E.D.N.Y. Mar. 31, 2015) (allowing claim of privilege made more than a month after service of the subpoena).

In any case, while unjustified noncompliance by the subpoenaed party with the 14-day deadline in Fed. R. Civ. P. 45(d)(2)(B) can result in the waiver of privileges against disclosure,

see FG Hemisphere Assocs., LLC v. Du Congo, 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) (collecting cases),"[o]f relevance to such a determination is the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties." AFP Imaging Corp. v. Philips Medizin Sys., 1993 WL 541194, at *3 (S.D.N.Y. Dec. 28, 1993). In light of the fact that the City initially raised the privilege during a telephone conference before the subpoena's extended return date, the City did not unreasonably delay in filing the motion to quash, and there has been no showing that plaintiffs were prejudiced, the Court will assess the motion to quash on the merits.

B. Whether the Documents are Predecisional

Plaintiffs argue that the materials are not "predecisional" because the only potential "decision maker" was not the OCC, which received the materials, but rather the Mayor's Office or the New York Police Department ("NYPD"), and thus that the privilege does not apply. Pl. Mem. at 2-5. The City has offered no response. Nonetheless, we reject this argument. The OCC had a clear role in making recommendations to the Mayor, see Executive Order No. 58 at § 1(c)(3) (issued June 20, 2020) ("E.O. 58"), and Smoot was assisting OCC in making those recommendations. The fact that Smoot was a consultant rather than an agency employee is of no consequence. See Tigue, 312 F.3d at 77.

Plaintiffs urge rejection of the privilege because the OCC Report contains much more factual material than recommendations and because they find the recommendations to be "comical[ly] vague" or "meaningless." Pl. Mem. at 7, 8. But it is enough that a core reason for the generation of the OCC Report was to make policy recommendations to the Mayor and NYPD. See E.O. 58 § 1(c)(3); Corporation Counsel Report Pursuant to Executive Order 58, at

3

5-6, annexed as Ex. B to Docket #232. This is because the purpose of the deliberative process privilege is to promote "open and frank discussion" among government officials, in light of the chilling effect that would arise "if each remark is a potential item of discovery and front page news." Klamath Water Users, 532 U.S. at 8-9. That purpose would be thwarted if discussions between OCC and its consultants as to policy recommendations were made public merely because a report containing the recommendations ultimately produced factual material in support of the recommendations or if the report made ineffectual recommendations.

      Plaintiffs argue that there can be no privilege because Smoot's contribution amounts to a "retrospective analysis" of past agency actions. Pl. Mem. at 7, 10. The case cited for this proposition, Hennessey v. U.S. Agency for Int'l Dev., 1997 WL 537998 (4th Cir. 1997), an unpublished decision from the Fourth Circuit, does not hold that a retrospective analysis cannot qualify for the privilege. Rather, Hennessey found that the material at issue was a "factual account of the events" at issue. Id. at *3. While it is certainly the case that purely factual compilations would not qualify for the deliberative process privilege, see Allocco Recycling, Ltd. v. Doherty, 220 F.R.D. 407, 412-14 (S.D.N.Y. 2004), this principle does not apply where a retrospective analysis of past policies (even if factually based) is part of the process of generating a policy recommendation. See, e.g., National Sec. Archive v. C.I.A., 752 F.3d 460, 465 (D.C. Cir. 2014) (draft report analyzing Central Intelligence Agency's role in Bay of Pigs invasion was within the privilege, as "'the selection of the facts thought to be relevant' is part of the deliberative process; it necessarily involves 'policy-oriented judgment.'") (citation omitted); Color of Change v. Dep't of Homeland Sec., 325 F. Supp. 3d 447, 456 (S.D.N.Y. 2018) (factual materials protected where they were "compiled and arranged . . . to support the positions" the

4

writers espoused); Hamilton Sec. Grp. Inc. v. H.U.D., 106 F. Supp. 2d 23, 30 (D.D.C. 2000) (draft audit of mortgage loan sale program was within the privilege as the "drafts contained recommendations . . . concerning policies or procedures to improve program operations"), aff'd, 2001 WL 238162 (D.C. Cir. Feb. 23, 2001); see also N.Y. Times Co. v. Dep't of Health & Human Servs., 513 F. Supp. 3d 337, 350-52 (S.D.N.Y. 2021) (finding a retrospective review of agency compliance with internal policy to be within the privilege).

Plaintiffs argue that even if the deliberative process privilege applies to the Smoot documents, the privilege is qualified, and can be overcome through a showing that the plaintiffs' interest in obtaining access to the documents outweighs the public's interest in nondisclosure. See Walls v. City of New York, 502 F. Supp. 3d 686, 698 (E.D.N.Y. 2020) ("[t]he deliberative process privilege is a qualified one, meaning that when it applies, courts should balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information.").[2] Plaintiffs assert that Smoot's analyses of past events are "directly relevant to Plaintiffs' core claims." Pl. Mem. at 12. But the "relevance" standard for this balancing test is that found in Fed. R. Evid. 401, as incorporated by Fed. R. Civ. P. 26(b)(1). See Noel, 357 F. Supp. 3d at 303-04. Although plaintiffs argue that they are "entitled to know" if Smoot believed that the NYPD violated their rights, Pl. Mem. at 12, any post-hoc opinion from Smoot about the events alleged in the lawsuit does not make any "fact" at issue in this case more

---

[2] Some courts have enumerated five factors useful for conducting this balancing. The factors are: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." Noel v. City of New York, 357 F. Supp. 3d 298, 303 (S.D.N.Y. 2019) (formatting and citation omitted). We find it unnecessary to address the five factors in light of the lack of relevance discussed next.

or less probable.  See Fed. R. Evid. 401, 402.  Plaintiffs also assert that they need to know if the City adopted any recommendations by Smoot.  Pl. Mem. at 13.  But Smoot made the recommendations after the events at issue in this lawsuit took place.  Smoot's own views as to past events are inadmissible unless offered as an expert opinion.  See Fed. R. Evid. 702.  Plaintiffs, however, will retain their own expert to opine on the City's practices and have no need to use Smoot's expertise.  Certainly, the City's interest in keeping Smoot's recommendations protected is not outweighed by plaintiffs' desire to know his recommendations.  The disclosure of Smoot's contributions to drafts of the OCC Report unnecessarily risks "future timidity" by those contributing to recommendations regarding government policy.  See Rodriguez v. Pataki, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003).

      Finally, we find that plaintiffs do make a forceful point in noting that the City has made "no effort to identify the Smoot documents with any more particularly than Plaintiffs' subpoena."  Pl. Mem. at 9.  The City produced no privilege log or any statement from a person with knowledge (either Smoot or someone who has read the documents) who has explained Smoot's role and the nature of his contributions.  The plaintiffs assert that Smoot was engaged to conduct a "project of factual analysis," Pl. Mem. at 11, but there is no competent evidence that either supports or refutes this assertion.  Normally, the Court would deny the motion to quash based on the City's failure to provide any kind of competent evidence describing the nature of Smoot's contribution or the documents being withheld.  In this case, however, the Court may have misled the City into thinking that its initial letter was sufficient to invoke the privilege given that the Court issued an order specifically permitting the City to rely on that letter to justify its assertion of the privilege.  See Memorandum Endorsement, filed August 17, 2021 (Docket #234).  That

was not the Court's intention, however, and thus the Court will allow the City to submit a sworn statement addressing the nature of the Smoot documents (including a statement of whether they involved purely factual material), and what role Smoot played in making recommendations to OCC. The City shall also supply a copy of the documents to the Court in electronic form for <u>in camera</u> review. The filing and the transmission of the documents to Chambers shall take place by October 8, 2021.

This constitutes the Court's ruling on defendants' Motion to Quash (Docket #232). Smoot need not produce documents responsive to the subpoena at this time. If the Court's review of the sworn statement and the documents themselves <u>in camera</u> changes this ruling, the Court will issue a new order so stating.

SO ORDERED.

Dated: September 24, 2021
       New York, New York

　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　GABRIEL W. GORENSTEIN
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge