# Rickner PLLC

Rob Rickner | rob@ricknerpllc.com

September 29, 2021

**Via ECF**

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York

    Re:    *In re: New York City Policing During Summer 2020 Demonstrations,*
             No. 20-CV-8924
             *This Filing is Related to All Cases*

Dear Judge Gorenstein:

We write on behalf of counsel for all Plaintiffs in these consolidated actions to ask that this Court hold a Conference under Rule 37.2 and Order the Defendants to comply with their discovery obligations. Specifically, Defendants have: (1) failed to adequately search for and timely produce by July 31 dozens of categories of documents responsive to Plaintiffs' March 25, 2021 First Consolidated Set of Requests for Production of Documents (the "March 25 Requests"), or account for how or why they were not produced; (2) failed to produce a complete privilege log; (3) failed to timely respond to discovery requests served by the *Sierra* Plaintiffs on August 3, 2021; and (4) failed to produce key Aviation video footage.

    **I.**    **Defendants Have Failed to Search for and Produce Dozens of Categories of Key Documents by the July 31 Deadline, Refused to Provide any Explanation of their Search Processes, and Have Provided No Future Production Deadline**

Plaintiffs have discovered that there are substantial gaps in Defendants' production, because they failed to do a diligent search for documents in response to the March 25 Requests. Instead, they simply reproduced documents they had already collected as part of prior investigations. It is not the case that they searched for documents again and happened to find the same ones. The documents they produced are in fact *the exact same ones* they had collected the prior year, as the metadata reveals. These deficiencies must be remedied quickly.

Plaintiffs have long sought details about how the Defendants searched for documents. Following a letter motion by Plaintiffs, on June 15, the Court held a discovery conference regarding the scope and pace of Defendants' search for and collection of documents responsive to Plaintiffs' March 25 Requests. At the conference, the Court ordered Defendants to produce a letter explaining their "algorithm" for searching for and producing responsive documents, and how they would meet their agreed-upon July 31 deadline. Ex. A (June 15, 2021 Conf. Tr. at 6:13-7:14). The Court cautioned Defendants, "what I don't want to have happen is . . . for the plaintiffs to learn for the first time on July 31 that [] some whole category or some avenue of production was not pursued that they think they have a right to have pursued." *Id.* at 6:15-22. In response, Defendants agreed to produce amended responses that would clarify "what our objections are and what [they] would be producing," and further promised, "to produce really the great majority of what [Plaintiffs] have asked for." *Id.* at 7:18-22. Several weeks later, the Court confirmed at another discovery conference that Defendants "made a commitment . . . to have [production] all done by July 31," and informed

Rickner PLLC

Defendants that the Court would "hold [Defendants] to that commitment." Ex. B (June 24, 2021 Conf. Tr. at 10:14-17).

As Ordered, Defendants then sent periodic "algorithm" letters that provided updates to Plaintiffs regarding their search progress. In these letters, Defendants represented that they were reviewing documents produced to the Department of Investigation ("DOI") and the New York State Office of the Attorney General ("OAG"), and described their ongoing searches for other responsive documents. Defendants' final letter, on July 29, stated that they had "completed [their] review of the 45,000 documents that [they] previously listed were in [their] possession, and they have all been produced." Ex. C. Defendants never said that they still needed to search for other documents, except to note that they were "in the process of collecting ESI material." *Id.*

Defendants produced approximately 75,700 documents between April and July 30, but the vast majority (83%) were produced between July 18 and July 30.[1]

Plaintiffs diligently reviewed this production and were stunned to discover that more than 70,000 (91%) of the documents that Defendants produced by the July 31 deadline were a reproduction of files already provided to the DOI, or the OAG, in 2020.[2] Nearly half (3,027) of the remaining files were produced from the NYPD Office of the Deputy Commissioner for Public Information and were primarily reproductions of press materials and other publicly available information collected during the protest period in summer 2020. The other files were TARU videos (1,148 videos), and 800 files from other NYPD sources, including some policies and training materials. *No* documents from the Office of the Mayor appear in these productions. This discovery is troubling because it seems apparent that Defendants have not adequately searched for and collected all documents responsive to the March 25 Requests, and instead wrongly assumed the productions sent to DOI and OAG in 2020 would be sufficient.

On September 10, Plaintiffs sent Defendants a letter raising these concerns and identifying more than 30 categories of documents missing from Defendants' productions, and a large number of additional categories where Plaintiffs believed there to be responsive documents that would not have been included in the 2020 productions. Ex. D. For example, Plaintiffs explained that Defendants did not produce records related to protests after mid-to-late summer of 2020, even though Plaintiffs had requested documents from dozens of protests occurring after this period. And while Defendants produced some records as to the May and June 2020 protests, Defendants did not produce or account for key categories of records related to Plaintiffs and other arrestees at all, including, but not limited to, command and other logs, digital arrest and mass arrest processing photographs, mass arrest processing intake records, and other arrest processing records that are typically created and produced in other, similar cases. These deficiencies, Plaintiffs explained, undoubtedly stemmed from Defendants' strategy of merely reproducing documents that were collected the year before in response to different and much more limited requests from the DOI and OAG.

---

[1] Defendants separately produced approximately 43,000 documents from the Civilian Complaint Review Board (CCRB) on August 14, 2021, as ordered separately by the Court. See Dkt. 206.
[2] Based on a metadata comparison, nearly 79,000 (approximately 65%) of all files Defendants have produced with bates numbers in this litigation are duplicative of documents that either the NYPD or CCRB previously produced to the OAG during its pre-suit investigation between June and December 2020.

Rickner PLLC

Plaintiffs asked that Defendants meet and confer regarding these deficiencies, and that they bring people with knowledge of the nature and extent of Defendants' record searches. The Parties met and conferred on September 20.[3] Defendants did not bring anyone with knowledge of the relevant searches and were otherwise unprepared to confer on the topics in the September 10 letter. Defendants had no information about the nature or extent of the NYPD's searches. They said their clients had told them that some NYPD commands had apparently answered NYPD Legal Bureau requests for documents responsive to the March 25 requests by re-sending or simply relying on the same documents sent to DOI/OAG, rather than actually searching for additional documents. They did not present any other explanation of the deficiencies identified in Plaintiffs' September 10 letter. Defendants, however, did admit that multiple categories of documents were missing. But they refused to provide any information as to why these documents were missing or what in their search process had caused this problem. Plaintiffs reiterated that Defendants should have already provided this information in their "algorithm" letters or, at the latest, during the September 20 meet and confer, and that the Parties were at an impasse as to Defendants' refusals to do so.

Defendants promised to explain which of the categories of documents identified by Plaintiffs remained outstanding, but such a letter never came. After the most recent Court conference, Plaintiffs wrote Defendants to ask that they reconsider their refusals to provide additional "transparency" in light of the Court's admonitions that they do so. Defendants never responded.

The underlying problem is that the NYPD, which the Law Department refers to as its client, handles the searches. The Law Department readily admitted this at the last conference when they objected to disclosing what "**our clients** have done in the process of searching for certain documents" in a deposition. Ex. E (Sept. 20, 2021 Conf. Tr. at 21:18-20) (emphasis added). And in a recent letter, the Law Department took issue with even the suggestion that they were doing any searches themselves: "[D]efendants wish to clarify that defense counsel were not personally searching for such records, but instead their **client**, the custodian of such records, was searching for the documentation in question." Dkt. 269 (emphasis in original).

Thus, it is unclear how much the Law Department supervises the NYPD's document collection efforts, and Defendants refuse to tell Plaintiffs this information in meet and confers. In another case, Judge Castel admonished the Law Department for using this same process, letting the NYPD search for documents without proper scrutiny:

> "[I]t is only when someone from the Legal Affairs Bureau or some person within the NYPD is going to have to put their name on a declaration and under penalty of perjury, and if they are lying, they can go to jail and lose their job, that we get accurate information."

*Brown v. City of New York*, 15-cv-4091-PKC-GWG (SDNY), Ex. F (Jan. 31, 2019 Conf. Tr. at 8-10); *see also, Brown*, Ex. G (Mar. 29, 2019 Conf. Tr. at 13-18).

---

[3] The meet and confer took 25 minutes, and for the Plaintiffs Molly Biklen, Remy Green, Wylie Stecklow, Travis England, Gideon Oliver, Rob Rickner, Daniel Lambright, Lillian Marquez, Doug Lieb, and Corey Stoughton attended; for the City Dara Weiss attended.

Defendants need to work with Plaintiffs to remedy these substantial deficiencies in the production, and the only way forward is to let Plaintiffs talk to the people, likely at the NYPD, who are actually doing the searches and collection. At far too many meet and confers, the Law Department attorneys have been unable to answer even basic questions about the process, instead saying that they need to talk to their client (*i.e.* the NYPD) and get back to us, which often takes weeks, if it happens at all.

The Court should order Defendants to produce people with knowledge of the nature and extent of the searches, including ESI searches, that Defendants conducted in response to the March 25 Requests, who can explain how and why Defendants' productions have not included the dozens of categories of documents identified by Plaintiffs. Further, the Court should order Defendants to promptly search for and produce those missing documents by a date certain.

## II.     Defendants Must Produce a Complete Privilege Log

Although Plaintiffs have been asking for a privilege log since April, Defendants have continually failed to provide a meaningful, complete one. Weeks after the last of the rolling productions, on August 23, Defendants finally provided a log of the documents that they claim had been completely withheld for privilege. Ex. H. Plaintiffs immediately realized that the only documents on the privilege log are from the Department of Investigations ("DOI"). There were no documents listed from the NYPD, the Office of the Mayor, the Law Department itself, or any other entity.

It is obvious that the privilege log provided is incomplete. Defendants invoked multiple privileges in response to almost every document request. *See* Ex. I. (Responses and Objections). Defendants also said that the NYPD drafted an "after action" report, but are now withholding it and all materials compiled to prepare it as privileged. This was never logged.

Plaintiffs asked Defendants why only DOI documents were listed on the privilege log, and discussed it at a meet and confer on September 8.[4] The Defendants acknowledged that it was unlikely that only DOI documents had been withheld for privilege, but had no idea what was withheld by other City agencies. They then promised an answer at the next meet and confer, September 15. But when the parties spoke, Defendants still had no information about what was withheld for privilege.[5]

Under Local Civil Rule 26.2(b), a privilege log must be provided "at the time of the response to such discovery or disclosure." Defendants have continually failed to comply with this clear directive. And Plaintiffs are entitled to know what documents the Defendants are withholding, from every agency, so we can challenge privilege designations, if necessary. Defendants should be ordered to produce a complete privilege log for every production so far, and to produce one for every one going forward.

---

[4] The meet and confer covered multiple issues, took 2 hours, and for Plaintiffs Remy Green, Gideon Oliver, Daniel Lambright, Molly Blinken, Andrew Stoll, Travis England, Swati Prakash, Jennvine Wong, Wylie Stecklow, Greg, Rob Rickner, Lillian Marquez attended; for the City Allison Arenson, Rachel Kaufmann, Dennis Wu, Jason LaFond, Greg Cassel, and Elissa Jacobs attended.

[5] The meet and confer covered multiple issues, took 1.5 hours, and for Plaintiffs Remy Green, Corey Stoughton, Molly Blinken, Travis England, Swati Prakash, JP Perry, Daniel Lambright, Rob Rickner, Wylie Stecklow, Conor Duffy attended; for the City Rachel Kaufman, Stephanie Breslow, Dara Weiss, and Anthony Disenso attended.

### III. Defendants Must Respond to *Sierra's* Discovery Requests

The *Sierra* plaintiffs seek an Order compelling Defendants to respond to their Plaintiffs' First Set of Supplemental Discovery Requests (the "Sierra Requests") (Ex. J.). The Sierra Requests were served August 3; responses were due September 2. On August 30, Plaintiffs emailed Defendants' counsel regarding overdue responses to other requests, and included a reminder of the upcoming deadline. A few hours later, Defendants wrote back, "We will get you responses to the Sierra plaintiff's [sic] requests by the second." But Defendants never responded, and never asked for an extension.

On September 14, Plaintiffs again emailed Defendants concerning the Sierra Requests, asking Defendants provide a date certain for their responses during a meet and confer scheduled for the next day, September 15. Defendants' counsel wrote back, "I do not know that there will be someone on tomorrow's call who can answer these questions." Plaintiffs said that if there was not a timely response to the Sierra Requests, we would be at an impasse as to timing. On September 17, Defendants' counsel emailed to say that responses would be provided by September 20. But nothing has been provided, no explanation has been given, and the Defendants have not said when they would respond. Therefore, Plaintiffs respectfully request that this Court order Defendants to promptly respond to the Sierra Requests.

### IV. Defendants Must Produce the Aviation Footage

The NYPD Aviation Unit has helicopters that surveilled the protests from above. These helicopters are equipped with cameras that recorded footage of the protests. This footage is critical, particularly for the claims regarding the Mott Haven protest, as well as at other large protests where the NYPD engaged in kettling. At Mott Haven, the NYPD's Strategic Response Group moved in formation around the protestors, creating barricades with their bikes and foot units, and ultimately trapping the protestors pursuant to a pre-existing plan. A top-down view would how thnis plan was executed. This is critical discovery, and Defendants did not, and do not, object to producing it. But when the rolling production was allegedly complete on July 31, the Aviation footage was missing.

Defendants, over the course of multiple meet and confers, were completely unable to explain why the footage was not produced on or before July 31, as this Court Ordered. *See* Ex. B (June 24, 2021 Conf. Tr. at 10:14-17). Defendants have been unable to say when or if it will ever be produced. Since the NYPD's Legal Bureau is handling the document production, Plaintiffs asked that someone from Legal attend a meet and confer so Plaintiffs could get some idea of what happened to this request and when the footage might be available. But Defendants flatly refused. After multiple attempts to resolve this issue, at the September 15 meet and confer, Plaintiffs confirmed that there was an impasse. Thus, Plaintiffs now respectfully ask that this Court Order Defendants to produce the Aviation footage promptly.

We thank the Court for considering these issues.

Respectfully,

/s/

Rob Rickner