UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                      Docket #20cv8924
 PAYNE, et al.,                     : 1:20-cv-08924-CM

                  Plaintiffs,       :

   - against -                      :

 DE BLASIO, et al.,                 : New York, New York
                                      June 24, 2021
                  Defendants.       :

-----------------------------------: TELEPHONE CONFERENCE

                    PROCEEDINGS BEFORE
             THE HONORABLE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Payne Plaintiffs:    NEW YORK CIVIL LIBERTIES UNION
                         BY:  MOLLY BICKLEN, ESQ.
                         125 Broad Street
                         New York, New York 10004

For Sow Plaintiffs:      GIDEON ORION OLIVER, ESQ.
                         277 Broadway, Suite 1501
                         New York, New York 10007

For Sierra Plaintiffs:   RICKNER PLLC
                         BY:  ROB RICKNER, ESQ.
                         14 Wall Street, Suite 1603
                         New York, New York 10005

For Wood Plaintiffs:     KAUFMAN LIEB LEBOWITZ & FRICK LLP
                         BY:  ALISON FRICK, ESQ.
                         10 E. 40th Street, Suite 3307
                         New York, New York 10016


Transcription Service: Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

APPEARANCES (CONTINUED):

For Yates Plaintiff:        STOLL, GLICKMAN & BELLINA, LLP
                            BY:  ANDREW STOLL, ESQ.
                            300 Cadman Plaza West, 12th Floor
                            Brooklyn, New York 11201

For Plaintiff People        NEW YORK STATE OFFICE OF
of the State of New         THE ATTORNEY GENERAL
York:                       BY:  LILLIAN MARQUEZ, ESQ.
                            28 Liberty Street
                            New York, New York 10005

For Defendants:             NEW YORK CITY LAW DEPARTMENT
                            BY:  DARA WEISS, ESQ.
                                 BRACHAH GOYKADOSH, ESQ.
                                 ANTHONY DISENSO, ESQ.
                                 RACHEL KAUFMAN, ESQ.
                            100 Church Street
                            New York, New York 10007

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-Direct</u> | <u>Re-Cross</u> | <u>Court</u> |
|---|---|---|---|---|---|
| None | | | | | |

<u>**E X H I B I T S**</u>

| <u>Exhibit Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir Dire</u> |
|---|---|---|---|---|
| None | | | | |

1

```
 1                                                    4
 2              THE CLERK:  Payne v. De Blasio, et al., 20cv8924.
 3    Counsel, please state your names and appearances for the
 4    record starting with plaintiffs.
 5              MS. MOLLY BICKLEN:  This is Molly Bicklen of the
 6    New York Civil Liberties Union Foundation and co-counsel
 7    for the Payne plaintiffs.
 8              MR. GIDEON OLIVER:  Gideon Oliver co-counsel for
 9    the Sow plaintiffs.
10              MR. ROB RICKNER:  Rob Rickner, co-counsel for the
11    Sierra plaintiffs, good afternoon.
12              MS. ALISON FRICK:  Good afternoon, this is Alison
13    Frick from Kaufman Lieb Lebowitz & Frick for the Wood
14    plaintiffs.
15              MR. ANDREW STOLL:  And good afternoon, this is
16    Andrew Stoll for plaintiff Cameron Yates.
17              MS. LILLIAN MARQUEZ:  Good afternoon, this is
18    Lillian Marquez of the AG's office on behalf of for
19    plaintiffs for People v. City of New York.
20              THE COURT:  Who's here for defendants?
21              MS. DARA WEISS:  Good afternoon, this is Dara
22    Weiss for the York City Law Department for defendants.
23              MS. BRACHAH GOYKADOSH:  Brachah Goykadosh also on
24    behalf of defendants.  Good afternoon, Your Honor.
25              MR. ANTHONY DiSENSO:  Anthony DiSenso also on
```

1                                                              5

2  behalf of the defendants.

3          MS. RACHEL KAUFMAN:  Rachel Kaufman also on

4  behalf of defendants.

5          THE COURT:  Okay, who's going to be speaking for

6  the plaintiffs today?

7          MS. MOLLY BICKLEN:  Your Honor, this is Molly

8  Bicklen from the New York Civil Liberties Union Foundation.

9  I'll be speaking on behalf of the plaintiffs to address

10 defendants' failure to produce documents in these

11 consolidated cases.

12         MR. OLIVER:  And, Your Honor, Gideon Oliver, co-

13 counsel, and so I'm prepared to speak about the

14 interrogatories piece.

15         THE COURT:  I think we have – first, let me

16 start by saying we're being recorded, but any dissemination

17 of this proceeding of copying of any kind is strictly

18 prohibited.  A transcript will presumably be ordered by the

19 parties.  And I should remind attorneys that if they're not

20 speaking, they should keep themselves on mute.

21         I think we have sort of three projects for this

22 conference.  One is dealing with substantive objections to

23 the responses to the document requests and the

24 interrogatories.  And when I say substantive, I guess I

25 would also include complaints about the manner in which

those document requests or interrogatory responses will

give information about timing, and if there's complaints

about that, what we do about that.  The second thing is the

plaintiffs' complaints about the information that's been

provided by the City about their process which is reflected

in the June 21 letter.  And then I think the third thing is

the requests for what we do going forward in terms of

specific orders regarding timing of production.

If after we accomplish that, if someone thinks

there's something else we need to do, certainly we'll go

around at the end and make sure I didn't fail to cover what

we need to accomplish.

Also, I had spoken to Judge McMahon, I just

wanted to advise you of information that she had given to

me regarding the discovery process which I'll distill and

summarize.  In essence, she reiterates that she does not

believe this litigation should be prolonged.  She intends

to try the case next year.  She wants me to advise her

whether any party is being recalcitrant about discovery.

She's fully prepared to enter sanctions orders of

preclusion against any party who's being recalcitrant about

discovery.  She expects all parties, especially the City,

to devote whatever resources are necessary to getting

discovery done in time to meet her schedule.  And if it

7

turns out that a particular party is being recalcitrant or

slow walking discovery, she wants it known that she will

entertain a preclusion motion.  So I just wanted to make

sure I got that out there and it didn't get lost as we go

later into the conference.

Okay, on the issues that I talked about, I'm

prepared to go through the complaints about the responses

to the document requests and the interrogatories both to

the extent that they're substantive and relate to timing.

It's a little bit unusual for me because, you know, because

as I put this on a compressed schedule, I've gotten a

letter from the plaintiffs but I haven't gotten anything

from the defendants.  I assume they're prepared to talk.

I'm prepared to try to do this orally.  If something comes

up that absolutely has to be in a letter, then, you know, I

can wait a day or two for such a letter.  I think would be

to the City's advantage to not have to write a letter and

to present it orally, but if for some reason that's a

problem, I guess I'm willing to hear about it.

So, Ms. Bicklen, should we go through your sort

of specific – if we start with the thing which is the, you

know, the complaints about the specific request

interrogatories or should we start with the letter and

whether you got sufficient information in that letter?

```
1                                                    8
2            MS. BICKLEN:    Thank you, Your Honor.  We think
3    that they're one of a piece.  Most specifically, the
4    problem that plaintiffs have had with defendants' responses
5    is that they keep telling us that they are searching and
6    just to wait and they will provide us something.  But it's
7    clear as their June 21 letter that that's illusory.   In
8    many cases they merely claimed to have requested the
9    information, in other places it's very clear that they have
10   not even gathered or searched for this information.
11           And so putting together their second amended
12   responses, which, again, in many cases promises to be
13   looking for things.  In other places it says that, you
14   know, issues are burdensome but does quantify that.  It's
15   hard to separate out these issues.  We're happy to go
16   through it one by one, but we think at the end of the day
17   the most significant problem is that they are not gathering
18   these documents quickly enough, reviewing them and sending
19   them out, and that is just going to be true in response to
20   every single request.
21           THE COURT:    Okay, well, I mean this is your
22   chance to go through some of those issues in depth.  I mean
23   I guess one – well, maybe we should do it on a broader
24   scale to start.  So, Ms. Weiss, are you speaking for the
25   defendants?
```

1                                                          9

2          MS. WEISS:   Yes, Your Honor.

3          THE COURT:   I think that your June 21 letter

4  certainly advances the ball on transparency which was my

5  goal from the last conference by giving a good deal of

6  information I didn't have before.  But I think on the thing

7  that's most important to the plaintiffs they're still

8  operating in the dark.  And I would've thought that there

9  has to be some mechanism whereby you can say we have 5,000

10 documents, or whatever the number is, that have to be

11 reviewed.  We have X number of people reviewing it.  It's

12 going to take this much time, and we're going to do it on

13 this schedule.  I'm not saying that you could do that

14 definitively with respect to all the documents, but you

15 might know that you have right now 5,000 documents or some

16 number, whatever the number is, and what is the problem

17 telling us what that number is and what it's going to take

18 timing-wise to go through the process that you describe in

19 this letter.

20          MS. WEISS:   Well, Your Honor, I can answer that

21 to some extent, but with your permission I may need – we

22 have two of our e-discovery counsel no the line, Ms.

23 Kaufman and Mr. DiSenso, and I may need them to chime in

24 with some details if that would be okay.  I do know that as

25 of right now we probably have about 40,000 documents in our

10

possession that we received from our client.  Is that

right, my e-discovery colleagues?

        MR. DiSENSO:   This is Anthony DiSenso.  I don't

have the number in front of me, but that sounds roughly

right.  I think it's maybe in the neighborhood of 50,000 if

I recall off the top of my head.

        MS. WEISS:   We can confirm that we have that

now.  And we're trying to – we don't have a definitive

answer right now on how many people and how the review is

going to do because it is such a huge amount, and we are

working on trying to figure out the most efficient way to

get those documents reviewed.

        THE COURT:   Okay, I mean you made a commitment

at the last conference and I think before that to have it

all done by July 31.  So I'm going to hold you to that

commitment, and I guess the question is what is the

impediment to producing them on a rolling basis essentially

in equal, you know, in one, 10,000 a week if that's what it

comes down to, between now and July 31 sort of on an equal

weekly basis.

        MS. WEISS:   There's certainly going to be more

than just these 50,000, that's just what we have in our

possession right now.  And as I think we stated either

during the conference last week or it could've been in

1
2  conversations, in meet and confers, I'm sorry, I don't

3  remember off the top of my head exactly when it was, this

4  coming Wednesday we're going to produce the first large

5  batch of these documents which we committed to do and we

6  will do.  Some of them require less of a level of review

7  than others.  So some of them will be able to go out fairly

8  quickly; some of them need a more thorough and intense

9  review because of the nature of the documents.  And we're

10  sliding around personnel and reorganizing who's going to be

11  doing what on these cases and that takes things from other

12  cases that our division has, but we're ramping up how we're

13  going to get these reviews done.

14          THE COURT:   How many documents will you produce

15  on the 30th, you must know that?

16          MS. WEISS:   I don't have the number in front of

17  me.  Anthony or Rachel, do you have that number from what

18  we had spoken about earlier?

19          (pause in proceeding)

20          MS. WEISS:   I guess not --

21          MS. KAUFMAN:   Hi --

22          (interposing)

23          MR. DiSENSO:  Sorry, Rachel, you're going to

24  speak?

25          MS. KAUFMAN:   No, go ahead.

1

2          MR. DiSENSO:   Okay, as far as knowing the number

3    of documents we can produce, that's hard to say.  We know

4    the (indiscernible) documents roughly, based on what we

5    have now from the number I stated before, the number of

6    documents that need to be reviewed in some fashion, you

7    know, it's possible some of those may be non-responsive or

8    privileged and wouldn't thus be actually produced.

9          THE COURT:   So I'm not getting a number it

10   sounds like.

11         MS. KAUFMAN:   For this Wednesday, this coming

12   Wednesday as I sit here right now, Your Honor, I'm sorry,

13   I don't have the number but it is significant.  It's not a

14   hundred documents.  It's a significant number of documents.

15         THE COURT:   Thousands?

16         MS. KAUFMAN:   I believe so, yes.

17         MS. BICKLEN:   Your Honor, this is Molly --

18         THE COURT:   What is the process for – how much

19   personnel – let me back up.  There may be vast differences

20   in what's needed to do different kinds of documents, and

21   one of the things that's going on is that the plaintiffs

22   need on the short term basis documents that relate to

23   policing practices more than they need documents relating

24   to particular arrests.  Is that – and maybe I should ask

25   plaintiffs if, in fact, that's an appropriate distinction

1

2 and one that should be pursued.

3         MS. BICKLEN:   Your Honor, this is Molly Bicklen

4 for the Payne plaintiffs.  Because they are not a class

5 case, I would defer to my colleague on the line for Sow,

6 Gideon, who may be able to address that as well.  I think

7 we want both types of documents, but currently the class

8 certification is September 1.

9         THE COURT:   I understand that, but it's the

10 expert deadline that I know that is of great concern right

11 now or least expert disclosure deadline.  And I would have

12 thought that, and I understood from the last letters and

13 conference, that the documents relating to police practices

14 are in a sense a priority because that was the subject of a

15 July 1 deadline.  Your class certification deadline's not

16 till September.

17         MS. BICKLEN:   That's right, Your Honor, and

18 those should not be very difficult to review insofar as

19 there should be no privilege.  They should be able to

20 identify those and send those out the door and should

21 already have been able to do so.

22         THE COURT:   All right, let me just ask Ms.

23 Weiss, do you understand the distinction that I'm making

24 and what is this first batch going to be more arrests, you

25 know, individual arrest type documents or are they going to

14

2  be what I'm calling police practice documents?

3          MS. WEISS:    I do understand the distinction, and

4  it's my understanding that it's going to be a mix.  A lot

5  of it is going to be individual arrest type documents which

6  it's my understanding those play into part of the expert

7  issues as well in that plaintiffs are concerned with

8  statistics on race and gender in the arrests.  I don't know

9  what they're asking their experts to opine upon, of course,

10  but I think there's definitely overlap.  But certain things

11  like training documents and procedural documents, Ms.

12  Bicklen is right, require not a very high level of review,

13  and they would be able to go out sooner rather than later.

14          It's just, you know, if I may, it becomes very

15  difficult because on the several meet and confers that the

16  parties have had plaintiffs are giving defendants mixed

17  messages on what they want and when they want it.  You

18  know, it comes down to, of course, they want everything,

19  and they will – as I mentioned several times, plaintiffs

20  are going to get and defendants will produce thousands upon

21  thousands upon thousands of documents.  There's very little

22  that they're asking for that we're not planning on

23  producing.  But it would actually be great, and thank you,

24  Your Honor, for bringing it up, if plaintiffs were able to

25  tell us what their real priorities were and perhaps we

1
2  could do our best to get those documents reviewed and out

3  first, you know, because as I said, we've been getting

4  mixed messages in our meet and confers about what they're

5  looking for right away, what they need right now.  So so

6  this is actually very helpful to defendants.

7          THE COURT:   So, Ms. Bicklen, again, I – you

8  know, it seemed what precipitated the original letter to me

9  from June 9 was the concern about the expert discovery

10  deadline and I think to a lesser extent the class

11  certification deadline since it's months later.  Is there a

12  desire to have them put the police practice/policy

13  documents to the front burner or is that not a desire?

14          MS. BICKLEN:   Your Honor, at this stage almost

15  everything needs to be on the front burner, and what

16  defendants refer to as mixed messages I think is attempt at

17  flexibility on the part of the plaintiffs to work with

18  defendants to get literally anything.  We have gotten so

19  few documents.  We're trying to provide them with

20  flexibility to produce anything.

21          And so in our letter last night, for example,

22  we've identified documents that we think should be quite

23  easy to produce, including everything that already has been

24  produced to the Department of Investigation and Corporation

25  Counsel, after action reports and underlying documents, all

```
1                                                           16
2   responsive training documents, and all --
3            THE COURT:   Okay, before you go down this road,
4   the answer I think I'm getting is it's not - making these
5   distinctions is not what's driving the plaintiffs at this
6   point.  It's just the getting of the documents.  So I don't
7   think I'm going to dwell any longer on trying to figure out
8   if there's something that should be front loaded.  I think
9   we should go just back to the issue of producing as much as
10  can be produced as soon as it could be produced.
11           So I'm the one who brought this up.  I've now
12  gotten my answer, and I think we have to move on from the
13  concept of trying to distinguish between different
14  categories just being of greater need to the plaintiffs
15  than others.
16           But let's now talk about what you talked about,
17  Ms. Bicklen.  We have to do it in the context of the
18  overall production.  I guess your contention is that there
19  are certain things that should be much easier to produce
20  than others.  I don't think the defendants are arguing with
21  that principle.  So I don't know - we're now being told
22  that by the 30th you're going to get thousands of
23  documents, that there's going to be, there's at least
24  50,000 documents they're reviewing and that will be
25  produced or withheld on nonresponsive or privilege grounds
```

                                                                    17

1
2   by July 31.  Tell me how we can best use our time today to

3   do whatever it is you want to accomplish.

4            MS. BICKLEN:   Well, respectfully, Your Honor, I

5   don't think we (indiscernible) where they wait until July

6   31 to produce documents.

7            THE COURT:   No, I didn't mean to imply that.

8   No, and I don't think they said that.  So I think that's a

9   straw horse, sorry, straw man.  They said they're going to

10  be producing thousands of documents next week.  I'm

11  prepared to order weekly production because I think the

12  biweekly production doesn't make any sense because there's

13  only one, two, three, four, five and a half weeks till this

14  July 31 deadline.  So to the extent you were seeking weekly

15  production, I think that is important because you really

16  have waited long enough to get any serious number of

17  documents, and, you know, for the first time June 30 is

18  when you're getting a significant number.

19           So I'm with with you on that.  Tell me what else.

20           MS. BICKLEN:   Thank you, Your Honor.  Another

21  concern we have is made clear by the defendants' letter is

22  that it appears that the New York Police Department is

23  doing an initial review for many documents and then sending

24  them to the defendants, or defense counsel to then do

25  another review.  And we have significant concerns that that

18

1
2   is not going to be sufficient in terms of obtaining the
3   documents that are necessary and responsive to the
4   plaintiffs' request.  NYPD legal is not signing these
5   objections, and so, for example, in their June 21 letter,
6   with respect to responses 22 and 23, for example, these are
7   the search out documents concerning the Corporation counsel
8   report and the DOI report.  And defendants state that these
9   documents do exist, they're currently undergoing review by
10  the NYPD and are expected to be produced to this office,
11  the Corporation Counsel's office soon, at which point they
12  will again be reviewed.

13         Respectfully, we have grave concerns about the
14  idea that there is an initial review happening that's
15  outside of Corporation Counsel's purview, but, second, that
16  this two layer track of review is just not going to get the
17  job done in terms of the compressed schedule that has been
18  set by Judge McMahon.

19         THE COURT:   And these are documents that were
20  provided to the Corporation Counsel and DOI, is that what
21  this is?

22         MS. BICKLEN:   These are documents concerning,
23  for example, document request 22 is all documents including
24  communications concerning the December 30, 2020 Corporation
25  Counsel report, which includes both documents that they

1                                                          19

2   produced to the Corporation Counsel in preparing such a

3   report but also any other communications concerning that

4   report.

5              THE COURT:    And same for DOI.

6              MS. BICKLEN:    And that is one example – sorry,

7   that is the Corporation Counsel number 22, and then we

8   asked for the same with respect to the DOI report in 23.

9   But, again, their response in a letter of June 21 is the

10  first time that they have made clear that, in fact, NYPD is

11  doing the sort of first analysis and review, and if that is

12  what is holding up, and if that is what they're doing in

13  response to other of the requests, that is a significant

14  problem.

15             MS. WEISS:    Your Honor, if I may, just to

16  clarify what is meant by the NYPD's review, respectfully,

17  they can't just hand us over a bunch of documents.  They

18  have a responsibility and we have asked them to look

19  through these documents and make sure that this is, you

20  know, say, for example, they have a file folder drawer full

21  of documents, you know, they have – and understanding

22  likely all on computer but I'm speaking in more of an old-

23  fashioned sense I guess.  They have a responsibility and

24  we've asked them to make sure that the documents that

25  they're giving us are, in fact, the documents that were

1

2 handed over to these entities for their investigations.

3          And another part of the review is, and I want it

4 clear that they're not holding things back or deciding what

5 is responsive and what is relevant, but they're also

6 looking through them because, as I'm sure the Court and all

7 the parties are aware, there are a lot of very sensitive

8 documents within the NYPD, and we've asked them to sort of

9 flag these documents so we know when we are looking at them

10 as their attorneys and as attorneys for the City, things

11 that we might have to take a closer review, a closer look

12 at for privilege or for responsiveness or for relevance.

13          So I just want to make it clear that NYPD legal

14 or anyone within the NYPD is not making decisions on what

15 should or should not be produced.  That's not what this

16 review is that's mentioned in our letter.  It's a review to

17 make sure that they're getting us the proper documents.

18          THE COURT:  I'm not as concerned about that

19 aspect as I am about the delay factor.  So what, you know,

20 the word soon is not helpful which is the letter that, the

21 word that you use in the letter.  So what date do you get

22 these documents or do you have no idea?

23          (pause in proceeding)

24          THE COURT:  Ms. Weiss, did we lose you?

25          MS. WEISS:  I'm sorry, I'm very sorry.  I was

21

1

2  saying, and I don't know how much you caught, when I wrote

3  this letter on Monday, I was not aware that we, in fact,

4  almost 50,000 documents in our possession, us being the New

5  York City Law Department.  They are undergoing review.  So

6  I believe that those documents are probably encompassed in

7  these 50,000 documents or at least a good portion of them.

8           THE COURT:   You think you have them already?

9           MS. WEISS:   I can't – I can't guarantee that we

10  have every single one, but it looks like we have a lot of

11  documents from the DOI investigation at the very least.

12           THE COURT:   Is there someone who knows more than

13  you about what's going on?  Because (indiscernible).

14           MS. WEISS:   Perhaps our e-discovery counsel, Mr.

15  DiSenso or Ms. Kaufman, have a better idea exactly what

16  have with respect to those documents?

17           (pause in proceeding)

18           MR. DiSENSO:   Hi, this is Mr. DiSenso.  You

19  know, again, these are the same documents we were talking

20  about before.  We have them in our database, as Ms. Weiss

21  was saying at the beginning of the conference.  At this

22  point, we're trying to determine the proper (indiscernible)

23  strategy for these documents, what can go out as quickly as

24  possible --

25           THE COURT:   That's not the part I'm asking

1
2   about.  That's not the part I'm asking about.  I'm asking

3   about --

4           MR. DiSENSO:   I apologize.

5           THE COURT:   No problem.  Are you familiar with

6   Ms. Weiss's letter of June 21?

7           MR. DiSENSO:   Unfortunately, Your Honor, I can't

8   say I am.

9           THE COURT:   Okay, so, Ms. Weiss, this is the

10  problem, I need someone who knows everything.  And I think

11  you should be this person.  You write these documents

12  expect to be produced to this office soon, and it seems

13  like it is your responsibility to know that, but I think

14  it's your responsibility to know the answer to that

15  question which is have they been produced now and are they

16  in this batch?

17          MS. WEISS:   As I said, I believe with respect to

18  the documents that NYPD produced to Department of

19  Investigations, yeah, I believe that that is what is in the

20  set, you know, among other things of course.

21          THE COURT:   Okay, so you think that – I mean I

22  would've thought that Ms. Bicklen said we're really

23  concerned about the fact that you haven't even gotten these

24  documents from NYPD, your answer would've been, oh, no, we

25  have them, don't worry.  What wasn't that your answer and

```
 1                                                    23
 2  is that your answer?
 3            MS. WEISS:   Because I'm going to give the
 4  answer, yes, we have those documents, don't worry, to the
 5  extent I can without being able to, as I sit here right now
 6  and, you know, as an officer of the court, I do not want to
 7  give incorrect information, but as I sit here now, I cannot
 8  access the database to see exactly what documents are in
 9  there.  This is what has been indicated to me, that this
10  was this part of this huge batch of documents that was sent
11  over to our office.  But I also can't right now, as we sit
12  here this moment, 100 percent guarantee that, but it is my
13  strong belief.
14            THE COURT:   Okay, well, I mean that's worth
15  something, but let me just tell you for the future, you
16  need to have, you know, when you put something in the
17  letter like this, you need to be able to answer questions
18  about it and track it, not just for me, but to know what's
19  going on with the efforts to do all of this, and that has
20  to reside in someone's know, and if you're the person who
21  it is, then you need to have all that knowledge, you need
22  to track each of these requests to see what's going on, how
23  many documents are involved, what stage they're at.  There
24  should be a chart that's available to you that let's you
25  know what all these things are and what's being done about
```

1

2   them.  All right?  So for our next conference, do you

3   understand you have to be able to do?

4           MS. WEISS:   Yes, Your Honor.

5           THE COURT:   Okay, Ms. Bicklen, should we go

6   through more of these?  Tell me what we should do.

7           MS. BICKLEN:   Thank you, Your Honor.  At this

8   point, it might be helpful to inquire as to how many

9   attorneys are working on this.  We have known from some of

10  the meet and confers with respect to depositions that at

11  times it's only one attorney from Corporation Counsel who's

12  available.  And if it is the case that only one attorney is

13  available to review these documents for privilege to

14  determine when they can be produced, I have grave concerns,

15  given what we just heard, about the ability to even meet

16  the promise to start major production.

17          THE COURT:   So, Ms. Weiss, I think that's

18  something that I talked about last time in order to assess,

19  you know, whatever claims you've made to not having made

20  much production up until this point, what – and I'm not so

21  concerned about the tasks, but I'm concerned about a July

22  31 deadline, how many attorneys are going to be reviewing

23  these documents and at what pace and what is the plan on

24  that?

25          MS. WEISS:   Well, that is part of what we're

25

1

2   trying to determine now.  We don't have the staffing at

3   this moment or the arrangement of staffing I should say to

4   be able to review tens upon tens of thousands of documents

5   by July 31.  Part of what we're doing is working on

6   getting, you know, ramping up the staffing to get these

7   documents reviewed so that we can ensure that we will have

8   them reviewed and produced in time.

9            THE COURT:   Well, this is the first time I've

10  ever heard you express doubt that you're going to meet the

11  July 31 deadline.

12           MS. WEISS:   Oh, no, we fully intend on doing so,

13  Your Honor.

14           THE COURT:   But you don't have, no one has given

15  you the staffing to do it.

16           MS. WEISS:   It's being worked on as we speak.

17           THE COURT:   Okay, well, what I have to tell you

18  is what I said earlier which is the communication from

19  Judge McMahon which is either we don't get answers to the

20  questions or it was insufficient, then the City is putting

21  itself at risk in terms of how this delayed, the delay is

22  going to be treated.  So I'm not asking you to say anything

23  about it, but I just want to remind you again that the City

24  is at risk of preclusion or other sanctions if it hasn't

25  done the staffing necessary to meet the deadlines on the

26

1

2  case.  You understand that, Ms. Weiss?

3          MS. WEISS:   Understood, Your Honor.

4          THE COURT:   All right, well, I think we need to

5  get more reports.  I hate to have, you know, you spend

6  whatever it takes to write these letters, I think it'll be

7  a little easier to write the second one because you can use

8  the template of the first.  We're going to have to continue

9  the transparency as long as the plaintiffs aren't getting a

10 large number of documents which they just aren't.  We have

11 to understand what's going on.  So we're going to have to

12 go to weekly production.  You told me the first production

13 is Wednesday, the 30th.  In the earlier call you told me

14 for some reason Thursday was better for you.  Has that gone

15 by the boards?

16         MS. WEISS:   Well, the reason I was saying

17 Wednesday I think that was in part in response to what

18 plaintiffs are saying because we made a small production on

19 Wednesday the 16th I believe it was.  Thursday is better

20 for the Law Department.  We would certainly prefer to do

21 Thursdays if that's an option.

22         THE COURT:   Well, let's start with the 30th which

23 is a Wednesday.  That's going to be the first one.  And

24 then for the next week you can go to Thursday, which would

25 be July 8.

```
 1                                                        27

 2            MS. WEISS:   Thank you.

 3            THE COURT:   And I think we're going to have to

 4  get updates from you on anything that changes with respect

 5  to what you wrote in your June 21 letter.  So, for example,

 6  you say arrest report - I just picked one out for example -

 7  the document request number 9 was going to even have

 8  certain things produced next week.  So in your next letter

 9  you're going to say they were produced, presumably, and if

10  not, given an explanation for it.  And I think you have to

11  do that for - I think we're going to have to have reports,

12  you know, you're going to have to update this letter, and

13  we're not going to, and I need you to add a section and the

14  section is how many people, how many documents are

15  available for you to review and how many people are working

16  on doing the privilege responsiveness review.

17            Okay, Ms. Bicklen, should we go through - is

18  there anything more specific we should be going through?

19  What do you propose?

20            MS. BICKLEN:   I can continue, Your Honor.  So,

21  for example, with respect to document request 7, seeks a

22  variety of documents related to the incident and the

23  protest at issue.  Now, in their June 21 letter, they say

24  they will produce many of these but that the search for

25  U49, the unusual incident or occurrence reports will be
```

1                                                              28

2   unduly burdensome as it encompasses nearly any document

3   that NYPD employees created regarding the incident.

4           Quite simply, these protests are what are at

5   issue.  The incidents at the protests are what are at

6   issue.  And with just --

7           THE COURT:   Before you go any further, before

8   you go any further, what's a UF49?

9           MS. BICKLEN:   It's an unusual incident --

10          MS. WEISS:   Your Honor --

11          (interposing)

12          MS. BICKLEN:   -- occurrence report.

13          THE COURT:   Okay.

14          MS. WEISS:   Your Honor, this is Dara Weiss.  If

15  I may add to this, the NYPD considers a UF49, from what I

16  understand with conversations with the NYPD, it's not only

17  the actual printed report but pretty much anything that any

18  NYPD employee writes down anywhere at all about the

19  incident.  You know, and there were, at some of these

20  incidents, there were hundreds of police officers present,

21  you know, almost any little thing that they wrote down,

22  whether it be relevant or not, would be considered part of

23  a UF49.

24          The finalized report, you know, the official, the

25  to/from sort of memo report, that we're happy to produce.

29

1
2  I guess it was just in the – we want it to be crystal clear
3  from the phrasing of plaintiffs' document request that, you
4  know, absolutely anything that any NYPD employee wrote
5  about anything regarded to any of these incidents would be
6  overbroad, overly burdensome, and likely irrelevant.

7          THE COURT:   I'm totally lost still.  Are you
8  talking about a logbook entry, Ms. Weiss, is that what you
9  say is burdensome or is there literally a formal form
10 called the UF49 and --

11         MS. WEISS:   There is --

12         THE COURT:   I'm completely confused.

13         MS. WEISS:   There is – I'm not sure if there's a
14 formal form, but there is often like a to/from memo, you
15 know, often written to a higher-up from someone who was on
16 the scene saying, you know, this, that, or the other thing
17 happened.  Those types of things are, you know, filed in a
18 certain way and easily found, and they often describe what
19 happened at these events, including, you know, arrests that
20 were made and a number of other things.  Those --

21         THE COURT:   Those you say you are producing.

22         MS. WEISS:   Those we can produce absolutely.
23 But the NYPD --

24         THE COURT:   But what is it you can't produce?

25         MS. WEISS:   The NYPD also considers, you know,

30

in the universe of UF49 absolutely, you know, anything that

any NYPD employee writes down anywhere about anything that

happened at these events, whether relevant to the claims in

these lawsuits or not.  And it's just, to try to – and it's

not even the officers who were present; if someone

somewhere else happened to jot something down, it would be

incredibly burdensome to try to get these documents, and we

don't even know if we could, you know, if we could even

find everything that's out there.

      But I think ultimately what would be the

important and relevant part would be these final UF49

unusual occurrence reports.

      THE COURT:  Which is what they asked for.  I

don't understand why you would call a logbook entry a UF49,

if that's what you're talking about.

      MS. WEISS:  No, no, I don't think we did.  It

wouldn't be a logbook.

      THE COURT:  Well, you just keep saying someone,

anybody writes down anywhere – this is getting a little bit

surreal.  Either there's this form UF49 or there isn't, and

I don't know why you're defining it in this broad manner.

      MS. WEISS:  This is after conversations with the

NYPD, this is what they explained to me.

      THE COURT:  You need to get – we're not going to

31

do this now.  I think there's something not making sense
here.  I'd like you to get as much information as you can
about what a UF49 is, find some examples of things that
you're talking about, just one, that you're not going to
produce, discuss this with plaintiffs' counsel, and I think
this is not the right time to work this out.  So, Ms.
Bicklen, let's go on to something else.

MS. BICKLEN:   Thank you, Your Honor.  I'd like
to turn to document request 15, which seeks all documents
concerning incidents investigated or referred to
investigation to the Civilian Complaint Review Board.  And
in their response and there letter of June 21, defendants
claim that they've requested this information from the CCRB
and are waiting a response.  But we need specifics on when
that information will be provided and as quickly as
possible.

THE COURT:   And just to educate me, so this is
for anybody, the CCRB is, you know, it's subject to the
Mayor, it's not in any way independent.  Mayor has complete
control over getting their documents and so forth or not?

MS. BICKLEN:   It is my understanding that
Corporation Counsel has agreed to represent them in this to
produce documents.

THE COURT:   Are they a separate entity from –

                                                                    32

 1

 2     that doesn't answer my question.  I'm not asking who the

 3     lawyer is.  I'm asking who has control over the documents.

 4              (interposing)

 5              MR. OLIVER:   -- Gideon Oliver.

 6              THE COURT:   The CCRB is assume is not a

 7     defendant in this case.  So my question is --

 8              MS. BICKLEN:   That's right.

 9              THE COURT:   -- the City of New York is a

10     defendant.  Is the CCRB completely within, the documents of

11     the CCRB completely in the control of the Mayor of the City

12     of New York?  Ms. Weiss.

13              MS. WEISS:   I actually do not know the answer to

14     that question, Your Honor.  All I know is that in this case

15     or any other case when we are requested or required to

16     provide documents by the CCRB, we make a request like

17     anyone else would to the CCRB for documents.  And they are

18     --

19              THE COURT:   Like anyone else would, you mean

20     like a person off the street?

21              MS. WEISS:   If a person off the street wanted to

22     subpoena documents from the CCRB, I'm sure that they could.

23     I don't know what they would get, but the CCRB --

24              THE COURT:   No, Ms. Weiss, I'm trying to

25     understand what you're – Ms. Weiss, I'm trying to

33

understand what you're saying.  Are you saying that you

(indiscernible) same position as anybody else?  Because

that's what I heard you to say.

　　　　　MS. WEISS:   From the way that in my career with

the New York City Law Department I have been requesting

documents from the CCRB, I don't know that they are – I

don't know their exact relation with the City and how they

are involved or controlled with the City.  It was my

understanding that they were an independent entity of some

sort.  I don't know all the background behind it.  But the

New York City Law Department and the NYPD do not unfettered

access to their documents.  We have to go through a formal

requesting process.

　　　　　THE COURT:   Okay, well, so, Ms. Bicklen, you

know, if this was a city agency, a normal city agency, I

would treat this in one way.  It's something else

apparently, unless you persuade me otherwise, and tell me

what you think is the right, I mean I don't know if they

need to be subpoenaed, I don't know, maybe they need to be

in front of us?  I guess is it correct, Ms. Weiss, you're

representing them right now?

　　　　　MS. WEISS:   I don't know that I'm representing

them.  I don't know that I have any call to represent them.

　　　　　THE COURT:   Well, if they're (indiscernible)

34

1

2  documents, I mean was a document request the appropriate

3  way to get these documents or did it require a subpoena?

4          MS. WEISS:   It did not require a subpoena.  We

5  made a request to the CCRB.

6          THE COURT:   No, no, no, I'm talking about the --

7          MS. BICKLEN:   Your Honor, the City --

8          THE COURT:   I'm talking about the plaintiffs,

9  you can only make document requests of parties.  So did

10 they properly proceed or not?  I mean they can issue a

11 subpoena tomorrow.  It's not terribly hard.  Someone has to

12 be able to say to me here's what's going in the CCRB and

13 here's their timetable.  Are you saying you're not that

14 person?  Because I need that person.

15         MS. WEISS:   I can - I personally am not that

16 person.  I can make or have calls made to them tomorrow to

17 try to find out the, you know, progress that they're

18 making.

19         THE COURT:   Well, I think that's important --

20         MS. WEISS:   We have contact --

21         THE COURT:   I mean if they're prepared to submit

22 to the Court's jurisdiction now, great.  If they want a

23 subpoena, we'll do that tomorrow.  But they need to, I

24 think, Ms. Bicklen, it makes sense for them to send you a

25 letter or whoever's representing them to send you a letter

                                                                35

1
2     immediately saying what the status of the request is
3     because Ms. Weiss is taking the position that she can just
4     request from them and has to wait.  Because they're an
5     independent agency.
6           MS. WEISS:  Your Honor, I just want to clear I
7     don't know exactly what they are in relation to the City.
8     I don't know all the ins and outs of their relationship --
9           THE COURT:  Okay, Ms. Weiss, this is back to
10    what I, related to what I said before, which is you need to
11    be on top of all of these requests.  It needs to be one
12    person, and if it's you, that's great.  But you need to
13    know what's going on at the CCRB, and if your answer is I
14    have no control, all I can do is find out what they're
15    doing, then we need to do something else.  We need to have
16    a subpoena so that I can order them to do something.  I
17    know I can order the City to do something, but it sounds
18    like you're telling me that you have no control over the
19    CCRB.
20          MS. BICKLEN:  Your Honor, this is Molly Bicklen.
21    With respect, they're a City agency, and defendants have
22    not taken the position in their responses that they are not
23    in possession of the documents or not in custody of them
24    such that we would have to do a subpoena.  They're part of
25    the City charter, and so it's just not clear to me why

1

2  there has to be this process of waiting.

3        THE COURT:   I don't want to wait, I agree with

4  you.   I want a letter from, if, Ms. Weiss, you can't do it,

5  I want a letter from the CCRB by Monday that says exactly

6  when these documents are going to be produced.   And I don't

7  mean produced to you; I mean produced.   Whoever's producing

8  them.   Okay, so that needs to be given to the plaintiffs by

9  Monday, Ms. Weiss, do you understand that?

10       MS. WEISS:   Yes, Your Honor.

11       THE COURT:   That's with respect to document

12  request 15.   Ms. Bicklen, what's next?

13       MS. BICKLEN:   I think I'll defer to my colleague

14  with respect to the interrogatory.

15       MR. OLIVER:   Your Honor, hi, Gideon Oliver.

16  Sorry that it's so late and we're just getting to the

17  interrogatories.   But the letter from the – so the City had

18  three, has done three rounds of interrogatories.   They're

19  virtually the same.   There's almost no substantive

20  responses being the main problem.   The June 21 letter from

21  the City provides no algorithm information about the

22  process that's been deployed.   These interrogatories are

23  signed by Ms. Weiss, not any of the individual defendants.

24  We don't know anything about who was asked, which documents

25  were reviewed, which documents are necessary to give

61

## C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, Payne, et al. versus De Blasio, et al., docket #20cv8924, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature _____  *Carole Ludwig*

Date:  June 28, 2021