```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK
In re:                             :
                                        Docket #1:15-cv-04091-
 BROWN, KAREN, et al.,             : PKC-GWG

                    Plaintiffs,    :

   - against -                     :

 THE CITY OF NEW YORK, et al.,     : New York, New York
                                     March 29, 2019
                    Defendants.     :

------------------------------------ :


                       PROCEEDINGS BEFORE
           THE HONORABLE JUDGE GABRIEL W. GORENSTEIN,
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For Plaintiffs:          LEVENTHAL LAW GROUP, P.C.
                         BY:  JASON L. LEVENTHAL, ESQ.
                         45 Main Street - Suite 528
                         Brooklyn, New York 11201
                         718-556-9600

                         BERNSTEIN CLARKE & MOSKOVITZ, PLLC
                         BY:  JOSHUA S. MOSKOVITZ, ESQ.
                         11 Park Place - Suite 914
                         New York, New York 10007
                         212-321-0087

For the Defendants:      NEW YORK CITY LAW DEPARTMENT
                         BY:  ANGHARAD WILSON, ESQ.
                              KEANA SMITH WILLIAMS, ESQ.
                         100 Church Street - Room 4-114
                         New York, New York 10007
                         212-356-2572


Transcription Service:   Carole Ludwig, Transcription Services
                         141 East Third Street #3E
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

**<u>INDEX</u>**

**<u>E X A M I N A T I O N S</u>**

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

**<u>E X H I B I T S</u>**

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                         PROCEEDINGS              3

 2              THE CLERK:  In the matter of Brown v. The City of

 3   New York, Docket No. 15-cv-4091.

 4              Counsel, please state your appearances.

 5              MR. JASON LEVENTHAL:  Jason Leventhal for

 6   plaintiff, Karen Brown.  Good morning, your Honor.

 7              MR. JOSHUA MOSKOVITZ:  Joshua Moskovitz, also for

 8   the plaintiff.  Good morning, your Honor.

 9              MS. ANGHARAD WILSON:  Angharad Wilson for the

10   defendants.  Good morning, your Honor.

11              MS. KEANA WILLIAMS:  Keana Smith Williams for

12   defendants.  Good morning, your Honor.

13              HONORABLE GABRIEL W. GORENSTEIN:   Okay.  Good

14   morning.  You can have a seat if you're not speaking.

15              All right, so we're here based on originally a

16   letter, Docket 206, from the plaintiff, and then two

17   letters regarding discovery, 208 and 209.

18              So I want to separate out -- I already separated

19   out, I should say, the question of what discovery needs to

20   be done before there's to be a motion for sanctions.  But I

21   guess I want to separate out the discovery into discovery

22   on the merits that was occasioned by the late production,

23   which may have been completed -- I don't know -- and

24   discovery on the issue of what sanctions are appropriate,

25   if there is to be any.  And I assume that the first one is
```

```
 1                         PROCEEDINGS                    4
 2    done; but if I'm wrong, Mr. Leventhal, you should tell me.
 3              MR. LEVENTHAL:  Judge, we have conducted, I
 4    believe -- hopefully, it's substantially all that
 5    discovery.  I believe the City has agreed to search for all
 6    potential notes from all potential investigators that were
 7    involved.  They had indicated that they may have located
 8    some additional notes and memo books that they were
 9    preparing to turn over.  I believe that was the extent of
10    it.
11              THE COURT:  Okay.  So I'm assuming that's not
12    going to be an issue.
13              So I want to deal with No. 2.  And then -- you
14    know, it just occurred to me -- do you know -- I shouldn't
15    be asking you to read Judge Castel's mind, but do you know
16    if he wanted me to do the motion for sanctions?  I know
17    he's doing the summary judgment motion.  Or don't you know
18    the answer to that question?  Did he say one way or the
19    other at any point?
20              MR. LEVENTHAL:  He didn't, Judge, no.
21              THE COURT:  All right, I'd better ask him that.
22              But, certainly, I need to do the discovery pieces
23    of the letter.  So let's -- I mean, let's talk about it.
24    Here, Mr. Leventhal, the City does have a point, which is
25    this is not a spoliation case.  So, you know, discovery
```

```
 1                        PROCEEDINGS                       5
 2   that I would normally allow as to how evidence got
 3   spoliated doesn't seem terribly relevant here.  And I
 4   certainly understand your need for maybe something on this
 5   because you are seeking sanctions; and if they willfully or
 6   negligently or grossly negligently delayed in producing the
 7   discovery, you know, perhaps there's something that can be
 8   done from a Rule 37 perspective.  And I'm not saying for
 9   sure you would get an affidavit as to what they did and how
10   and how it came about that it was late; but let's assume I
11   did give you that, what more do you need?
12             MR. LEVENTHAL:  Judge, I believe that's what we
13   need is the affidavits that we disclosed in our letter
14   yesterday.  We are in --
15             THE COURT:  Well, now it's been pluralized if I
16   heard you correctly.  Did you say -- use plural,
17   affidavits?
18             MR. LEVENTHAL:  Well, whatever affidavit,
19   affidavits, whatever it takes to --
20             THE COURT:  Yes, whatever it takes to explain why
21   these items showed up, you know, months after they were
22   presumably asked for and due.
23             MR. LEVENTHAL:  Yes.
24             THE COURT:  Okay.
25             MR. LEVENTHAL:  With regard to spoliation, I do
```

```
 1                         PROCEEDINGS                        6
 2   want to make clear that we believe that Detective
 3   Fernandez's notes have been spoliated.  And I can explain
 4   that to your Honor.  Detective Fernandez was disclosed
 5   recently as an investigator who interviewed EMS personnel
 6   who treated Mr. Williams at the scene.
 7             THE COURT:  What's his name again?
 8             MR. LEVENTHAL:  Javier Fernandez.
 9             THE COURT:  Fernandez.  Okay.
10             MR. LEVENTHAL:  He was disclosed in the 44th
11   Precinct detective investigation file.  We deposed him --
12             THE COURT:  You deposed him?
13             MR. LEVENTHAL:  We deposed him.
14             THE COURT:  Okay.
15             MR. LEVENTHAL:  And he stated that he may have
16   taken -- he interviewed EMS personnel witnesses; that he
17   took notes; that he didn't know what those notes contained
18   other than he was certain that it contained the pedigree
19   information that he had included in his formally-filed
20   report on that interview, but there may have been other
21   notes -- may have been -- other notes with substantive
22   notes of those interviews; and that he searched for those
23   notes; that he found notes from before this incident and
24   after this incident but was not able to locate any notes
25   whatsoever from the interviews with EMS personnel.
```

```
 1                         PROCEEDINGS                    7

 2              THE COURT:  Okay.  So what more discovery do you

 3   need as to those notes, then?

 4              MR. LEVENTHAL:  Well, I think it just -- I think

 5   we are fine with the affidavits that we requested in terms

 6   of disclosing the circumstances of the parties' and the

 7   City's efforts to collect -- locate, collect and preserve

 8   evidence.  I think that's what we need for those notes, as

 9   well.

10              THE COURT:  Okay, so you're imagining an aff --

11   a generic -- I wasn't -- I'm not saying again we're having

12   an affidavit or we're not having an affidavit, but I was

13   positing an affidavit regarding the late disclosure.  And

14   I guess you assume such an affidavit would have to, on a

15   more overall basis, describe the efforts to preserve.  So

16   I think there might have been, Mr. Leventhal, a little

17   disconnect between you and I on that.  I was thinking more

18   in terms of the late disclosure, and I was saying why

19   would you need more than affidavit about why these three

20   categories of documents were not produced initially, which

21   would presumably involve someone, maybe the attorneys,

22   saying, "Well, I need to go here and here.  And we assumed

23   this would have" -- you know, whatever it is, there's

24   going to be some explanation.  That's the affidavit I was

25   imagining.  You're talking about something different,
```

```
 1                          PROCEEDINGS                  8
 2   which is whatever the process is for maintaining that
 3   person's notes, was anything done to stop the process of
 4   throwing them out or to preserve them, or something like
 5   that, which I don't think would require, you know, some
 6   generic affidavit about preservation of evidence in the
 7   entire case, but would have to be directed to those notes.
 8          So that sounds like those are the two things you
 9   want, then:  affidavit as to the late disclosure; and an
10   affidavit as to the preservation efforts as to Fernandez's
11   notes.  Is that fair, Mr. Leventhal?
12          MR. LEVENTHAL:  Judge, I think it's beyond that.
13   Under Rule 37 we need to explore why this evidence wasn't
14   disclosed timely.  And the City's duty to collect and
15   preserve and what they did would be relevant to why it
16   wasn't disclosed timely.  So I think --
17          THE COURT:  Well, I think preservation is not
18   terribly relevant to timeliness.  They do a search for --
19   in response to your document requests; they make a
20   production; and then months later they find things that
21   are responsive.  That's not a preservation issue to me;
22   that's a was -- you know was the original effort good
23   enough, and how did it come about that the later
24   disclosure happened.  Are you with me so far?
25          MR. LEVENTHAL:  I am.
```

```
 1                         PROCEEDINGS              9
```

```
 2              THE COURT:  Okay.  Preservation, you've now made
```

```
 3   a case that you have an interest in that issue as to
```

```
 4   Fernandez's notes.  So I'll ask you again:  Is there
```

```
 5   something beyond that that you're looking for?
```

```
 6              MR. LEVENTHAL:  As to preservation?
```

```
 7              THE COURT:  As to anything.
```

```
 8              MR. LEVENTHAL:  Well, Judge, it all is a -- the
```

```
 9   big picture has to be looked at here.  So initially in
```

```
10   October the City tells us that they destroyed audio
```

```
11   recordings.  And I understand that those recordings
```

```
12   actually weren't destroyed; they've been found.  So we
```

```
13   don't have a spoliation issue with those audio recordings.
```

```
14   However, the reason why -- one of the reasons why the
```

```
15   recordings weren't timely produced is because the original
```

```
16   recording was destroyed.  And it shouldn't have been.  So
```

```
17   I think the efforts taken to preserve, coupled with
```

```
18   collect and produce -- so preserving evidence, the
```

```
19   obligation to preserve evidence also requires you to
```

```
20   collect it, to find it and collect it and preserve it.  So
```

```
21   I think all of those efforts from when their obligation
```

```
22   first began are important for our motion.
```

```
23              THE COURT:  Because?
```

```
24              MR. LEVENTHAL:  Because --
```

```
25              THE COURT:  You've got to understand the two
```

```
 1                        PROCEEDINGS                10

 2   affidavits I am imagining.  Tell me what's not in them

 3   that you need.

 4            MR. LEVENTHAL:  The City's efforts to locate,

 5   collect -- preserve, collect evidence.  I believe your

 6   Honor is saying that an affidavit of what you did to

 7   produce the evidence --

 8            THE COURT:  Okay, but can we just -- you're

 9   doing so much in one sentence.  To me, collecting -- an

10   affidavit about collecting evidence is completing

11   different than the effort to preserve.  Those are like two

12   different things.  People preserve evidence; that's all

13   fine.  And then someone has to go out and collect them.

14   All right?  So tell me -- I think that if you got the

15   affidavit about why there was a late disclosure, you're

16   going to have to get evidence about the effort to collect

17   because they're going to say, "Well, when we got your

18   interrogatories, we checked this place and this place,"

19   and either, "We forgot to do this place," or, "Someone

20   didn't know it existed."  There's going to be some

21   explanation about the collection.  So that's fine.  It's

22   the preservation piece that I still need to get you to

23   make me understand.  I understand your issue in getting

24   information on preservation as to Fernandez's notes.  Tell

25   me why you need information about preservation more
```

```
 1                        PROCEEDINGS                11
 2  generally than that.
 3           MR. LEVENTHAL:  I think it goes directly to the
 4  audio recording.  So the audio recording, if it would have
 5  been preserved in its original form in the NYPD
 6  Communication Bureau, it would have been timely produced.
 7  The City has indicated that it wasn't preserved, that it
 8  was destroyed, and that's why it wasn't timely produced.
 9  They subsequently then found it in another file.
10           THE COURT:  A copy, you're saying?
11           MR. LEVENTHAL:  A copy of it, in another file.
12  So the reasons why that recording wasn't timely produced
13  also implicate why it wasn't preserved.  If it would have
14  been preserved, it would have been timely produced.
15  They're saying it was destroyed; they didn't preserve it.
16           THE COURT:  I guess I understand.  The problem
17  is that you haven't been prejudiced by that destruction.
18  So it makes me wonder why we need to go backwards to talk
19  about the preservation of that recording.
20           MR. LEVENTHAL:  We've been prejudiced by the
21  timeliness of the production.
22           THE COURT:  Okay.  I see what you're getting at.
23  You're saying -- and how have you been prejudiced other
24  than just normal taking time, you know, you getting it
25  months later?
```

```
 1                         PROCEEDINGS              12

 2              MR. LEVENTHAL:  Well, no, we filed a summary

 3   judgment motion based on the facts that --

 4              THE COURT:  I see.

 5              MR. LEVENTHAL:  And, Judge, it was years later,

 6   not months later.

 7              THE COURT:  Okay.  Well, no, now you're

 8   making -- now at least I understand.  So you would be

 9   seeking sanctions, I guess, for the costs of making that

10   motion.  Was that in your list?  I forget now.

11              MR. LEVENTHAL:  Yes, your Honor.

12              THE COURT:  So you're saying if they had

13   properly preserved, then we would have had the recording

14   beforehand, we wouldn't have had to file that motion, and

15   we were prejudiced thereby.  Okay, so there's at least

16   three pieces from your point of view.  One is the

17   Fernandez notes, the effort -- why efforts to collect did

18   not result in the late production; the production of the

19   materials that came late; and the preservation as to the

20   audio recording.

21              But, once again, it's the preservation of the

22   Fernandez notes and the audio recording to me, not

23   preservation generally.  Why do you need to go beyond

24   those two things?

25              MR. LEVENTHAL:  Judge, no, not unless there is
```

```
 1                        PROCEEDINGS                    13
 2   some distinction between their efforts to preserve other
 3   evidence versus --
 4            THE COURT:  Okay.  All right.  So let me hear
 5   from defendants as to why they shouldn't provide these
 6   affidavits.
 7            MS. WILSON:  Well, your Honor, in the first
 8   instance we would argue that these affidavits necessarily
 9   implicate attorney work product and attorney-client
10   privilege, given that these --
11            THE COURT:  You're saying that a litigant
12   corporate city, whatever, can't produce information about
13   efforts made to collect documents?  That would be very
14   novel.  How is that possible?
15            MS. WILSON:  Well, our argument would be that
16   that was done at the direction of counsel and in
17   anticipation of litigation.  But I think that as your
18   Honor has --
19            THE COURT:  But don't you have routinely
20   depositions of document custodians who are asked where
21   documents are and where they're located and, you know,
22   what was done to produce?  Is that not standard?
23            MS. WILSON:  Well, certainly there are
24   depositions of individuals who are knowledgeable as to the
25   location and preservation of certain -- the location and
```

```
 1                          PROCEEDINGS                    14
 2   preservation of certain documents.
 3            Additionally, we would argue that, as your Honor
 4   has correctly pointed out, there isn't really a spoliation
 5   issue in this case.
 6            THE COURT:  Well, now, I've now been convinced
 7   there is as to the Fernandez notes and as to the original
 8   audio recording.  Why isn't there spoliation as to those?
 9            MS. WILSON:  Well, with respect to the audio
10   recording, it's clear that the audio recording was in fact
11   preserved.  And I'd like to make --
12            THE COURT:  But is the explanation for why it
13   was done late because it had been destroyed in this other
14   file that you had looked at much, much earlier?
15            MS. WILSON:  I'd like to clarify one point, your
16   Honor.  When plaintiff is talking about the "original" of
17   the audio recording, that refers to the version that --
18   the electronic version that lives on a server.  It is
19   automatically deleted after 180 days.  And so I just want
20   to make it clear that there wasn't a copy of it sitting in
21   a file somewhere that was destroyed; it was automatically
22   deleted pursuant to the policy and by a computer, not by
23   any individual.
24            THE COURT:  Okay, well, that -- this is the very
25   sort of thing they wanted an affidavit on.  But go ahead.
```

```
 1                          PROCEEDINGS                    15

 2              MS. WILSON:  That said, they did ultimately

 3   receive the -- did receive that audio recording.  And that

 4   audio recording was contained in the TBIU file, which

 5   would be one of the files that would be part of the late

 6   disclosures.  So it would be the City's position that that

 7   is really more of an issue of the late disclosure of the

 8   documents as opposed to a spoliation issue in which there

 9   is some --

10              THE COURT:  Well, whatever you call it, they're

11   saying they want sanctions because of it, notwithstanding

12   the fact that it was found, because the late disclosure

13   caused them to do this unnecessary summary judgment

14   motion, which just got knocked out.  So unless you're

15   willing to concede -- if you're willing to concede to pay

16   the fees for that, then you don't have to provide the

17   affidavit.  But if you're not -- and I assume you're

18   not -- then why aren't they entitled to know why it

19   happened, to see if there's some fault on your part that

20   should justify their getting those fees?

21              MS. WILSON:  Your Honor, I just simply don't

22   understand why the -- why they are distinct, they're

23   distinct issues; that is, the issue between the late

24   disclosure of the TBIU file, which I think that we

25   certainly would agree had the audio recording in it, versus
```

2 this sort of preservation-of-evidence issue regarding an

3 audio recording that plaintiff has undoubtedly received.

4 I think that they are clearly the same issue because the

5 audio recording was in fact preserved in the TBIU file.

6 The TBIU file was simply turned over late.

7           THE COURT:  I'm not following you at all.  I'm

8 not sure what you mean by "the same issue."  Let's

9 try -- I'll give you one more shot -- let's try it this

10 way.  They're going to seek sanctions in the form of

11 attorney's fees for having to file a motion when they

12 didn't have evidence that was critical to it.  I'm not

13 saying they're going to get it, but they're going to ask

14 for it.  Is it going to be relevant to that issue whether

15 you are in any sense culpable for the late production?  If

16 your answer is it doesn't matter, we will take the same

17 position on sanctions whether we destroyed the first thing

18 intentionally or it happened by accident, that makes no

19 difference to the request for sanctions, and the judge

20 could assume we did it intentionally and they would still

21 not be entitled to that sanction, then you're right; then

22 it's not a relevant issue.  Are you prepared to take that

23 position?

24           MS. WILSON:  I don't believe so, your Honor.

25           THE COURT:  Okay, well, then, it's relevant.

```
 1                         PROCEEDINGS                    17

 2              So I'm not sure what's left.  I'm ready to hear

 3   you.  Anything else on anything else as to the affidavits?

 4   Is there anything else you haven't already said you want

 5   to add?

 6              MS. WILLIAMS:  Your Honor, if I may?  On the

 7   issue of the audio recordings, I understand that it's

 8   plaintiffs' position that they had to file this summary

 9   judgment motion without having the luxury of having the

10   recording.  But they would have made the summary judgment

11   motion, nonetheless.

12              THE COURT:  Now you're getting to -- okay, this

13   is my very point.  They're going to make that application.

14   We're not deciding it now.  The only thing we're trying to

15   decide is is the City's culpability for destroying that

16   recording relevant to the motion.  And I just gave you a

17   hypothetical.  I said if you're willing to say it doesn't

18   matter whether were did it intentionally or we did it by

19   accident, they're still not entitled to those fees, that's

20   fine.  And I won't require you to do the affidavit.  But

21   then they're going to be allowed to argue as if you had

22   done it intentionally.  So if you want to take it off the

23   table, that's the way to take it off the table.  Do you

24   wish to stipulate that it makes no difference to their

25   application for sanctions on the summary judgment motion
```

```
 1                        PROCEEDINGS              18
 2  briefing whether you destroyed the recording intentionally
 3  or unintentionally?
 4          MS. WILLIAMS:  I don't think that we want to
 5  take that position.  But they also shouldn't be arguing
 6  that it was intentional when it wasn't.  At the end of the
 7  day --
 8          THE COURT:  They just want to figure out --
 9          MS. WILLIAMS:  -- I don't think it's relevant.
10          THE COURT:  -- what happened; that's why they
11  want an affidavit.
12          Okay, anything else from the plaintiffs' side on
13  this?
14          MS. WILLIAMS:  And, your Honor, just one more
15  thing?
16          THE COURT:  Yes.
17          MS. WILLIAMS:  If I will say, during the
18  conference on the 31st we had a discussion about the audio
19  recording and it being discovered in this TBIU file.  They
20  had the information that they're looking for.  So I'm not
21  quite sure why we're now in a position of providing an
22  affidavit on the very same thing.
23          THE COURT:  Well, have they got the information
24  that you say they have?
25          MS. WILLIAMS:  We made the representations in
```

```
 1                          PROCEEDINGS                    19
```

 2   court before Judge Castel, your Honor.

 3           THE COURT:  Well, put it in an affidavit.  It

 4   sounds like it will be no effort whatsoever.

 5           MS. WILLIAMS:  That's fine, your Honor.

 6           THE COURT:  Okay, so I'm directing the City to

 7   provide an affidavit on three issues.  One, the

 8   preservation effort as to the audio recording that was

 9   destroyed, knowing that there was some other copy later,

10   but still they need to do that; second, as to Fernandez's

11   notes; and, third, they need to give an affidavit as to

12   how it came about that the collection did not result in

13   the timely production of the three things they produced

14   this year.  How soon can you provide the affidavit?

15           MS. WILLIAMS:  Your Honor, we would have to

16   consult with the police department.

17           THE COURT:  Okay, well, then I'm just going to

18   order a date.

19           MS. WILLIAMS:  I would imagine that we need at

20   least two weeks, your Honor.

21           THE COURT:  Okay.  April 12, then.  That's

22   acceptable.

23           Okay, so as to any other requests for discovery,

24   I'm denying them at this time.  I assume the affidavit

25   will provide the information that's needed.  I mean, we

```
 1                        PROCEEDINGS                20
 2  could have done this through an interrogatory and
 3  response, but this seems to be a more efficient way to do
 4  it now that we know exactly what we're looking for.
 5            And I'm going to figure out from Judge Castel
 6  whether he wants me to do this Rule 37 motion or not.  And
 7  if he does, I think I need a -- I think you should assume
 8  I'm doing it; and I'll let you know if it's otherwise.
 9  And you should file a letter -- Mr. Leventhal, are you
10  with me?
11            MR. LEVENTHAL:  Yes, Judge.
12            THE COURT:  You should file a letter after the
13  12th giving me a proposed schedule for this motion.
14            MR. LEVENTHAL:  Yes, your Honor.
15            THE COURT:  I think that's it from my end.
16            Anything else, Mr. Leventhal?
17            MR. LEVENTHAL:  No, your Honor.  Thank you.
18            THE COURT:  Ms. Wilson, anything?
19            MS. WILSON:  Nothing further, your Honor.
20            THE COURT:  All right.  Thank you, everyone.
21            (Whereupon, the matter is adjourned.)
22
23
24
25
```

1                                                                    21

2

3                     C E R T I F I C A T E

4

5          I, Carole Ludwig, certify that the foregoing

6    transcript of proceedings in the case of Brown et al v. The

7    City of New York et al, Docket #15-cv-04091-PKC-GWG, was

8    prepared using digital transcription software and is a true

9    and accurate record of the proceedings.

10

11

12                    *Carole Ludwig*

13   Signature_____

14                    Carole Ludwig

15   Date:     April 3, 2019

16

17

18

19

20

21

22

23

24

25