```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK

In re:                          :
                                    Docket #20cv8924

 IN RE NEW YORK CITY POLICING   :
 DURING SUMMER 2020 DEMONSTRATIONS
                                : New York, New York
                                  October 19, 2021
----------------------------------: TELEPHONE CONFERENCE


                      PROCEEDINGS BEFORE
           THE HONORABLE GABRIEL W. GORENSTEIN,
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Gray Plaintiffs:     DAVIS WRIGHT TREMAINE LLP
                         BY:  ROBERT BALIN, ESQ.
                         1251 Avenue of the Americas
                         New York, New York 10020

For Payne Plaintiffs:    NEW YORK CIVIL LIBERTIES UNION
                         BY:  JESSICA PERRY, ESQ.
                         125 Broad Street, 19th Floor
                         New York, New York 10024

For Plaintiff People     NEW YORK STATE OFFICE OF
of the State of New      THE ATTORNEY GENERAL
York:                    BY:  TRAVIS ENGLAND, ESQ.
                         28 Liberty Street
                         New York, New York 10005

For Sierra Plaintiffs:   RICKNER PLLC
                         BY:  ROB RICKNER, ESQ.
                         14 Wall Street, Suite 1603
                         New York, New York 10005

For Sow Plaintiffs:      COHEN & GREEN
                         BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New York 11385

Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

For Cameron Yates:          STOLL, GLICKMAN & BELLINA, LLP
                            BY:  ANDREW BRIAN STOLL, ESQ.
                            300 Cadman Plaza West, 12th Floor
                            Brooklyn, New York 11201

For Defendants:             NEW YORK CITY LAW DEPARTMENT
                            BY:  DARA WEISS, ESQ.
                            100 Church Street
                            New York, New York 10007

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> | <u>**Court**</u> |
|---|---|---|---|---|---|

None

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|

None

1

```
 1                        PROCEEDINGS              4

 2            THE CLERK:  In re New York City Policing During

 3   Summer 2020 Demonstrations, case number 20cv8924.

 4   Counsel, please state their appearances for the record

 5   starting with plaintiff.

 6            MR. ROBERT BALIN:  This is Robert Balin of David

 7   Wright Tremaine for the newly consolidated Gray

 8   plaintiffs.

 9            MS. JESSICA PERRY:  Good afternoon, Your Honor,

10   this is Jessica Perry with the New York Civil Liberties

11   Union Foundation, appearing on behalf of the Payne

12   plaintiffs.

13            MR. TRAVIS ENGLAND:  Good afternoon, this is

14   Travis England with the New York State Office of the

15   Attorney General, appearing on behalf of plaintiff People

16   of the State of New York.

17            MR. ROBERT RICKNER:  Good afternoon, this is

18   Robert Rickner, Rickner PPLC, for the Sierra plaintiffs.

19            MX. REMY GREEN:  Good afternoon, this is Remy

20   Green, Cohen & Green PLLC, for the Soh plaintiffs, and for

21   the reporter I should appear as Mx. Green in the

22   transcript, spelled M-X period, rather than Mr. or Miss.

23            MR. ANDREW STOLL:  And good afternoon, this is

24   Andrew Stoll, Stoll Glickman & Bellina for plaintiff

25   Cameron Yates.
```

```
 1                          PROCEEDINGS                    5

 2              THE COURT:  And for defendants.

 3              MS. DARA WEISS:  Good afternoon, Your Honor,

 4   this is Dara Weiss from the New York City Law Department

 5   for the defendants.

 6              THE COURT:  Okay, we're here based on document

 7   277 and document 283.  I assume, Mr. Rickner, you're

 8   appearing for plaintiffs.

 9              MR. RICKNER:   Hello, Your Honor, Rob Rickner.

10   I will be appearing for issues 2, 3, and 4.  The People

11   will be covering issue 1 as they're the most familiar with

12   that particular set of facts and arguments.

13              THE COURT:   Who's speaking for number 1?

14              MR. ENGLAND:   This is Travis England, Your

15   Honor.

16              THE COURT:   Okay.  Welcome, everyone.  As you

17   know, this conference is being recorded, but any other

18   recording or dissemination or broadcast of the proceeding

19   is prohibited.  If you're not actually speaking, please

20   keep your cellphone mute.

21              All right, so I guess we'll hear from you, Mr. —

22   it's England, is that right?

23              MR. ENGLAND:  Yes, Your Honor.

24              THE COURT:  On the first issue.

25              MR. ENGLAND:  Thank you, Your Honor.  So the
```

PROCEEDINGS                6

1    reason we're here today, you know, defendants, as we

2    explained in our submission, produced approximately 70,000

3    documents nearly the July 31 deadline, and that is the

4    deadline that they had committed to producing documents by

5    in response to plaintiffs' first consolidated set of

6    requests.  And, you know, shortly after defendants

7    produced these documents, plaintiffs several weeks

8    analyzing them and discovered that for the most part the

9    documents that were produced were basically reproductions

10   of documents that had been produced to both the Office of

11   the Attorney General, my office, as well as the Department

12   of Investigation, the City investigative department last

13   year.

14   And this discovery led to certain concerns that

15   we raised fairly immediately with the defendants.  One,

16   you know, as we previously explained on prior discovery

17   conferences and in conferrals with the defendants, while

18   the documents produced to the government last year are

19   certainly responsive, they are by no means coextensive

20   with discovery requests that plaintiffs have propounded in

21   this litigation, both temporally and substantively.

22   Temporally meaning we have identified a range of protests

23   that go beyond those that were identified in the

24   government investigations last year, and substantively

```
 1                           PROCEEDINGS                    7
 2   certain of the documents that are in our requests that we
 3   specifically enumerate in our requests were not
 4   encompassed in the documents either requested by or
 5   produced to the government agency last year.
 6           And so we've flagged these issues for the
 7   defendants, and, you know, quite frankly, we've had a lot
 8   of difficulty in getting any information from defendants
 9   about the status of what their production, what their
10   search process was for the documents that were not
11   coextensive with the government agency productions.  And
12   any supplementation that they are doing in terms of
13   identifying additional documents that were not produced by
14   the government agencies but which are responsive to our
15   requests.
16           And so as defendants' response to our submission
17   admits, there, you know, they seem to acknowledge that
18   there are certain categories of documents that were not
19   produced by the July 31 deadline and that they are still
20   in the process of gathering these documents.  But
21   plaintiffs have no information about what these categories
22   are other than the document categories that we've
23   identified in our September 10 letter to the defendants.
24   And they've acknowledged that there are certain
25   supplementation that is ongoing, but, again, we've had no
```

```
1                          PROCEEDINGS                8
2   insight into what these documents are or when they will be
3   produced, and that's part of the reason we're here today.
4            And plaintiffs, you know, really are requesting
5   that both a date certain by which defendants will collect
6   and produce these yet-to-be-produced documents as well as
7   additional transparency into the process of their searches
8   because we are simply not able to confer with them to get
9   the appropriate information about what they've collected.
10       MS. WEISS:   Your Honor, if I may.  Plaintiffs –
11  defendants and plaintiffs have had several discussions
12  regarding how the defendants and their clients have
13  collected this discovery that has been produced so far.
14  And plaintiffs are well aware that the reason that the
15  majority of the documents that have been produced are
16  identical to the documents that have been sent to the DOI
17  and the Attorney General's Office is because the documents
18  that were requested by those agencies are identical to
19  many of the documents that were requested by the
20  plaintiffs in this case.  So it makes sense that they
21  would be identical.
22           Plaintiffs have also been made aware on several
23  occasions by this office that they didn't simply reproduce
24  those documents rather than conducting a separate search
25  for those documents.  But when it became clear that the
```

PROCEEDINGS                    9

1

2   documents were the same, rather than conducting a search

3   from scratch for those documents, our client was able to

4   pull them from the documents that were already produced to

5   those agencies.  So that takes care of the documents that

6   were already produced to the Attorney General and to the

7   DOI.

8           A great number of documents that were not

9   requested by the DOI or the AG's office were produced to

10  plaintiffs' counsel.  When plaintiffs' counsel pointed out

11  that it looked like some documents were missing, this

12  office immediately conferred with our client and began

13  searching for those documents and have been in pretty

14  constant contact with plaintiffs' counsel through a series

15  of meet and confers about those documents, about those

16  searches.

17          Plaintiffs wanted to speak with our client with

18  members of the NYPD about those searches, and quite

19  honestly, Your Honor, we didn't think that that was proper

20  or necessary.  We're the attorneys; there's no need for

21  plaintiffs' counsel to speak directly to our clients about

22  the searches that are occurring.  We have told them about

23  the searches, that we had spoken with our contacts, and

24  what our contacts at our clients have done to request the

25  documents.  We have, for instance, one of the – just as an

```
 1                        PROCEEDINGS              10
 2  example, one of the things that, you know, are outstanding
 3  are footage from aviation, from the helicopters that were
 4  flying over some of those (indiscernible).  That is, you
 5  know, ready for production.  I don't know if it's going to
 6  be today or tomorrow, but that is ready for production.
 7  There's another pretty big load of documents that is going
 8  to be ready for production hopefully by the end of this
 9  week.
10          So the documents are coming in, they're being
11  produced.  We (indiscernible) plaintiffs for giving us,
12  you know, what they believe was missing.  We acknowledged
13  that not every document was there.  I think considering
14  the enormous amount of documents that were requested and
15  the scope and breadth of discovery in these cases I think
16  it would be virtually impossible to have produced every
17  single document that they've requested, especially in
18  light of defendants' responses and objections and requests
19  for clarification on a number of the document requests and
20  interrogatories.  So I think the parties are certainly
21  working, the defendants at least are working towards
22  trying to get plaintiffs the documents that they have
23  requested that are proportional, that are responsive, that
24  are not objectionable, not otherwise privileged or – and
25  we are currently doing so.
```

```
1                          PROCEEDINGS                    11
2              In addition, as the Court knows and as
3   plaintiffs know, we are working on the electronic
4   discovery, part of it the email discovery which is also
5   going to contain a lot of information and documentation.
6   A lot of the documents that plaintiffs have listed in
7   their so-called deficiency letter, which they referred to
8   in their letter to the Court, a lot of those documents
9   were, in fact, produced to plaintiffs.  So I think that
10  their, you know, their co-called deficiency letter is
11  inaccurate.
12             So there are a lot of moving parts here.
13  Defendants are, in fact, in the process of producing
14  things that may have not been produced, but I also think
15  that plaintiffs are asking for things or presenting to the
16  Court that documents weren't produced that were, in fact,
17  produced or documents that were, still need to be produced
18  even though they were objected to.
19             THE COURT:  So what was the last sentence?
20             MS. WEISS:  I'm sorry --
21             THE COURT:  Ms. Weiss, what was the very last
22  thing you said?
23             MS. WEISS:  Oh, that there were a number of
24  documents, document requests that might have been objected
25  to that plaintiffs are still categorizing as unproduced
```

```
1                        PROCEEDINGS                 12
2    documents.
3           THE COURT:   Okay, so we have two issues.   One
4    is when you're going to produce the items that you admit
5    needed to be produced, and the other is a process issue of
6    how you're going to have discussions.   I don't think we're
7    at a stage where I can start ruling on what's been
8    presented to me on particular categories and whether
9    you're done what you needed to do to search for those
10   categories.   So it sounds like you now think you've done
11   everything they've told you, although they may not believe
12   that, in terms of searching for them, and then the last
13   question is I guess reviewing them for production or
14   getting them in a form to be produced.   Is that right, Ms.
15   Weiss?
16          MS. WEISS:   Well, some of the documents are
17   still being searched for.   It's not – the searches are in
18   progress.   I think on some of the documents we're not
19   ready to say, no, they absolutely do not exist or we
20   haven't been able to locate them.   A number of things we
21   have located and we're reviewing.   A number of things
22   we're still waiting.   You know, there's been, for example,
23   where somewhere oh, yeah, you know, this is around, we
24   have this, we've got to find it, we've got to locate it.
25   You know, there's several different things going on.   Some
```

```
 1                        PROCEEDINGS              13
 2   things, you know, no one could quite find.  They might
 3   exist, they might exist, but we're not ready to say a
 4   definitive no, they don't exist sort of thing.
 5            There's been issues with Argus footage which I
 6   think has been before the Court as well, whether or not it
 7   exists or there's an overbroadness issue with that, and I
 8   think we're still trying to work with plaintiffs' counsel
 9   on narrowing that down.  I haven't been 100 percent
10   involved in those discussions, but I know there are issues
11   there.
12            So, yes, Your Honor, we are absolutely willing
13   to produce and will produce what we have that is relevant
14   and proportional and not overly burdensome, and that is a
15   good deal of what plaintiffs have put in their letter and
16   their letter to our office that has not already been
17   produced and that we have not objected to.
18            Let me, if I may, let me rephrase that.  We've
19   objected to a number of things and stated that we're not
20   producing them at all or we have narrowed down what in
21   those requests that we will be producing, you know,
22   objections are part of it and producing's part of it, as
23   Your Honor had us do early on in this letter.
24            THE COURT:  Mr. England, you wanted to add
25   something?
```

```
 1                        PROCEEDINGS              14

 2          MS. WEISS:   I'm sorry?

 3          MR. ENGLAND:   Yes, Your Honor.

 4          THE COURT:   Mr. England's going to speak.

 5          MS. WEISS:   Okay, sorry.

 6          MR. ENGLAND:   Yes.  Yes, Your Honor, you know,

 7   I respectfully disagree with Ms. Weiss's characterization

 8   of the back and forth between the parties leading up to

 9   this dispute.  We put together the September 10 letter

10   that specifically identified more than 30 categories of

11   documents which we did not see in their production.

12          We then requested a meet and confer.  Defendants

13   asked for more than I think ten days to put together a

14   response to that.  We then met on September 20 on a

15   Monday.  When pushed to provide responses about the 30

16   categories identified in the letter, defendants' counsel

17   continually deferred and said I don't know to the status

18   of the searches for those documents.  We then asked for

19   more information; counsel said they'd get back to us.  We

20   said without a date certain that, you know, we would see

21   that we were at an impasse because we need more

22   information about when defendants intended to produce

23   these documents, what the status of the searches were, and

24   just what each of these categories, if defendants are

25   claiming that they previously objected to these
```

```
 1                        PROCEEDINGS              15
 2  categories, they need to state that.
 3         But we did not get any of that information from
 4  the defendants.  They agreed to produce by the end of that
 5  week a list of the categories where they admitted that
 6  they had not produced or fully produced and where the
 7  searches were ongoing.  We never got that information by
 8  the end of the week.  And, you know, we then confirmed, in
 9  the absence of getting that information, that we were at
10  an impasse, and that is why we're here.
11         And, frankly, we, you know, we have attempted to
12  get additional information from the defendants multiple
13  times about what the status is on their search for each of
14  these categories to no avail, and that is, you know, Your
15  Honor identified the process issue, that is a significant
16  issue that has perennially invaded our conferrals with the
17  defendants, and it's something that I think needs to be
18  addressed.
19         THE COURT:  All right, so, Ms. Weiss, I believe
20  the plaintiffs are entitled to a definitive answer on
21  those 30 categories.  Either you objected to them or you
22  are undertaking a process to search for them and with a
23  reasonable description of that process.  I understand your
24  interest in avoiding a deposition of someone in the police
25  department, but it seems to me it would be a whole lot
```

1                        PROCEEDINGS                    16

2   better to have someone available answering questions than

3   to put the plaintiffs in a situation where they can't get

4   answers about whether the search is being conducted

5   adequately and then having a good case for having a

6   deposition of that person.

7           So rather than go to that extreme length, it

8   seems to me you should have such a person available on the

9   phone call.  I suppose at this point I'm not going to

10  require you to make them speak, but they should be

11  available for a real time consultation with you and with

12  real answers to these things.  I mean either that or you

13  completely educate yourself so that you have the real time

14  answers to these things.

15          MS. WEISS:   Your Honor, that's --

16          THE COURT:   I --

17          (interposing)

18          THE COURT:   Go ahead.

19          MS. WEISS:   That's no problem, Your Honor, but

20  part of the problem in the past meet and confers is that

21  plaintiffs have been very, very quick, we feel, jumping

22  the gun to declare things an impasse rather than what I

23  think is the purpose of a meet and confer is to try to

24  reach an agreement.  And this has happened before, and

25  it's happened throughout the process.  They make a

```
 1                          PROCEEDINGS                    17
 2  suggestion, which is more of a demand, and when the
 3  defendants, be it myself or one of my colleagues, don't
 4  agree, rather than have useful back and forth on how we
 5  can reach an agreement or a compromise, they're very quick
 6  to say so we're at an impasse, let's move on to the next
 7  topic.
 8            So there's rarely, you know, in this case it was
 9  have someone on the phone from the police department or
10  we're at an impasse.  There has rarely been true back and
11  forth chance for a compromise to talk about how we can do
12  this, and this is why there's so many letters to Your
13  Honor and so many court conferences.  I don't know that
14  the meet and confers that we've been having are in the
15  true spirit of time to work things out between the
16  parties.
17            THE COURT:  I'm not ready to blame the
18  plaintiffs on this score.  So I think the better way to
19  think about this problem, and I'm just dealing with the
20  problem in front of me, is that they tried to have a meet
21  and confer with you and you didn't have the information
22  that they needed to have an intelligent meet and confer on
23  the topic.  Usually, when I have parties meet and confer,
24  they know the facts, they're having an argument about, you
25  know, whether some particular category is too burdensome
```

```
 1                         PROCEEDINGS                  18
 2   or too expansive or something like that or relevant and so
 3   forth, and that's in a situation where both sides know
 4   what's at issue and what the facts are and have their
 5   arguments about burden and proportionality and everything
 6   else.  But if they've given you a list of 30 document
 7   areas and you come to the meeting and you say you don't
 8   know where you are on some of them, I see the frustration
 9   on the plaintiffs' part, and I think they're justified.
10           I think – and especially if there is someone who
11   does know who you could consult with on the spot or could
12   speak, you know, it's not that uncommon for attorneys to
13   have a client on the line who's in charge of production
14   and turn it over to that person to talk about it.  I'm not
15   at the point of forcing you that, but I am at the point of
16   saying that person has either got to be in the room with
17   you or on another line with you or whatever it takes that
18   you can give them some real answers.
19           As to these 30 categories, have you gotten the
20   answers about whether you're objecting or whether they're
21   searchable and what the timing is and all those kinds of
22   things that are so critical for a meet and confer?
23           MS. WEISS:  The objections are in all of the
24   responses to the requests that plaintiffs have made.  I'm
25   more than happy to pull them out specifically to give to
```

```
 1                        PROCEEDINGS                19
 2  plaintiffs.  And the timing I can certainly confer with my
 3  client, but as Your Honor pointed out, it might be easier
 4  to do on a phone call with a representative from my client
 5  with me in the room, you know, in the room with me so we
 6  can answer sort of quick questions on that stuff.  And if
 7  plaintiff --
 8           THE COURT:   Yeah, I think --
 9           (interposing)
10           THE COURT:   You have to have that conference as
11  soon as possible.  I don't care if you, you know, and you
12  have to have the answers to start off with.  I don't think
13  it's easier to put it in writing and you can do it in the
14  next day or two, put it in writing as to all 30
15  categories.  If you think it's easier to have this person
16  on the phone, then have this person on the phone.  But you
17  have to go through each category and state what your
18  position is and what the timing is and what the search,
19  you know, what the delay – if you're not producing it, you
20  know, in a very short time period, then you have to
21  explain what the problem is and what kind of delay you're
22  talking about.
23           I mean I'm not going to go back and figure out
24  whose fault each of those categories was, but you did make
25  a commitment to produce everything by the 31st.  If it
```

1

2   turns out there was something obviously within a category

3   that you didn't do by that date, you know, that's the

4   City's fault, and you shouldn't act like it's some kind of

5   burden on you to now have to explain that to the other

6   side.  Maybe there's some categories that you think

7   weren't clear in the request.  I don't want to go through

8   that now.  But the process has to be with someone who's

9   extremely knowledgeable about the collection process.  So

10  that person has to be on the phone, either speaking or

11  immediately consulting with you.

12          MS. WEISS:  Yes, Your Honor.

13          THE COURT:  All right, Mr. England, anything

14  else we should do on this particular issue on this phone

15  call?

16          MR. ENGLAND:  No, Your Honor, you know, I

17  believe once defendants identify what objections they have

18  to purport to have about any particular categories, we may

19  need to raise that, you know, if further conferrals aren't

20  fruitful.  You know, we believe we identified whether they

21  had already objected to these categories, and part of the

22  reason why we had pushed for compliance with the 2015

23  amendments where they specifically note their objections

24  to each specific category of document is for this very

25  reason.  So we know up front what, you know, what they

```
1                          PROCEEDINGS              21
```

2   aren't intending to produce or collect, and that's simply

3   just difficult here.  But thank you, Your Honor, and I

4   guess just one other I guess request would be, you know,

5   to the extent that defendants have confirmed that there

6   are outstanding categories, a deadline from the Court by

7   which they should be produced would be one thing that we

8   would perhaps request.

9           THE COURT:  Yeah, I mean I'm flying a little

10  blind on that, Ms. Weiss.  You told us I think the

11  aviation documents could be ready this week, is that what

12  you said?

13          MS. WEISS:  Aviation footage, yes, Your Honor.

14  There is a series of things which we do have here which

15  need to be reviewed and go out.  The aviation footage does

16  not have to be reviewed, and it's with the vendor as we

17  speak getting ready for a production.  And there's some

18  other things which – I can pull up my computer but it

19  might, yeah, I don't think it's necessary to talk about it

20  here at this conference, but I can get the list to

21  plaintiffs' counsel after the conference so they know

22  what's coming next.

23          THE COURT:  Mr. England, I'm not sure I can do

24  dates without knowing which category we're talking about

25  and what the claims are as to each category.  I mean I'm

```
 1                      PROCEEDINGS            22
 2  grateful that you, in a way, that you didn't go through
 3  each of the categories and try to put this all together
 4  because I think an immediate conference is a better way to
 5  deal with this problem.  And if at that conference they're
 6  not giving you dates that make any sense to you in terms
 7  of production dates, then you should absolutely come back
 8  to me.
 9            MR. ENGLAND:   Thank you, Your Honor, I think
10  that makes sense.  We will see what happens at the
11  forthcoming conference and we will revisit with you if
12  necessary.
13            THE COURT:   Okay.  All right, that is issue 1.
14  Okay, next the privilege log.  Okay, Mr. Rickner, why
15  don't you go ahead on that.
16            MR. RICKNER:   Thank you, Your Honor.  Rob
17  Rickner.  I think really the first point is privilege logs
18  going forward.  It took months, numerous emails,
19  mentioning it at meet and confers to get the privilege log
20  that we did get with the DOI documents.  We don't have
21  time to wait four or five months for a privilege log going
22  forward.  Moreover, I think the local rules are pretty
23  explicit on this.
24            So the first thing we would ask is simply to
25  order the defendants to provide a privilege log with each
```

1                          PROCEEDINGS                    23

2    production.  If they're withholding documents, we need to

3    be able to know the grounds for why they were withheld so

4    we can meet and confer immediately and try to move the

5    ball on that.  So I think that's the first thing that

6    we're asking for.

7              The second is is that we have real concerns

8    about the completeness of the existing privilege log.  And

9    here's why.  There was a series of interviews by the DOI

10   where, you know, there were doing essentially a post

11   mortem on the NYPD's response to the protestors.  And

12   during those interviews two separate high level NYPD

13   officers discussed an internal NYPD sort of high level

14   after action report, you know, a detailed exploration of

15   what happens, what needed to be done better or often I

16   think they say what they don't need to do better,

17   arresting under existing processes.

18             So that isn't just one document, right?  An

19   investigation like that generates some paper, right, and

20   I'm gathering it's being withheld on deliberative process.

21   Of course, I don't know.  I can only theorize based on

22   their past objections.  But that doesn't appear on the

23   privilege log.  And so that just happens to be a category

24   of documents that we've stumbled on through a review of

25   the existing production.  They're obviously missing.

```
 1                      PROCEEDINGS              24

 2            Another issue is the point about the Mayor's

 3    Office documents.  Their contention is is that they've

 4    never looked for the Mayor's Office documents at all, and

 5    that's why there's nothing on the privilege log.  Those

 6    were requested specifically in the document requests.  So,

 7    you know, the fact that we are unable to tee up any issues

 8    we might have with privileges that they're asserting

 9    because they haven't even done the work of producing the

10    documents is troubling.

11            So I think that there needs to be a repair of

12    the existing privilege log and, you know, some real strong

13    ground rules going forward if they're going to be

14    withholding materials.

15            THE COURT:  Okay, Ms. Weiss, why don't you

16    address the last issue first which is the notion that you

17    haven't done any search of the Mayor's Office apart from

18    any issue of privilege, which in a way I suppose goes to

19    the issue we just discussed with Mr. England.

20            MS. WEISS:  Well, Your Honor – sorry.

21            THE COURT:  But what is your response on that

22    issue?

23            MS. WEISS:  It's my understanding that the

24    documents from the Office of the Mayor are all contained

25    within the email productions which are currently being
```

1                           PROCEEDINGS                    25

2   reviewed.

3           THE COURT:   Okay, so you think there's no non-

4   email Mayor's Office material?

5           MS. WEISS:   This is what I have been advised.

6   That's all contained --

7           THE COURT:   By the Mayor's Office or somebody

8   else?

9           MS. WEISS:   Yes, yes, by the Mayor's Office.

10          THE COURT:   Okay, well, if it is just emails,

11  then I guess why don't you respond to the other two issues

12  then, the past privilege logs and the completeness of the

13  prior privilege logs and what the plan is going forward

14  with respect to providing privilege logs.

15          MS. WEISS:   With respect to the past privilege

16  logs, so the privilege logs are generated through the

17  database that we've been using to produce the documents.

18  Absolutely there – because when the documents are coded,

19  they're coded for responsiveness, for privilege, for

20  redactions.  So in the past there was absolutely a holdup

21  with – when the documents were first being coded and

22  produced, there was definitely a holdup with getting the

23  privilege log printed out from those past documents, and

24  it was on us, and we apologize.

25          In the future, as we produce documents through

1                              PROCEEDINGS                    26

2    this database, including the emails, because of the way

3    they're coded, we should be able to provide almost

4    immediate privilege logs.  I believe there have been some

5    back and forth and concerns with redactions and the

6    redactions not being on the privilege log.  The reason for

7    that is because the redactions themselves on the documents

8    state the reason for the redaction.  And if something is

9    being redacted because it's personally identifiable

10   information, it will say that on the redaction itself.  If

11   it's being redacted for a privilege, it will say that on

12   the redaction itself.  So that might not always come up on

13   the privilege log.  The privilege log will show if the

14   document is being completely withheld for a privilege.

15                I can inquire to see if documents with

16   redactions can be put on a log.  Not really sure how the

17   database works in that way, but all the privileges are

18   there and all the information for a privilege log is

19   contained in the documents it might not be in the exact

20   format that counsel is used to.  I'm not a hundred percent

21   sure.  I can inquire further into that.  I don't think we

22   have any of our e-discovery folks on this call today.  We

23   don't know right now.  But future privilege logs this

24   shouldn't be a problem producing them in a much more

25   timely manner.

```
1                          PROCEEDINGS              27

2              With respect to completeness, I'm not really

3    sure what Mr. Rickner is referring to.  The one document

4    that he refers to, this after action report, there's been

5    discussion about this.  Something that was referred to and

6    it was unauthorized document, not unauthorized, that's not

7    really (indiscernible), it was something written up by

8    someone in the police department.  It was an unofficial

9    document.  It hasn't been put on a privilege log because

10   it's my understanding and I don't know what's happened in

11   the last three or four weeks about it, but the last that I

12   had heard no one has seen that document.  The police

13   department knows what plaintiffs' counsel has been

14   referring to when they talk about this document, but no

15   one's seen it, so it can't be on a privilege log.

16   Presumably it would be deliberative process privilege, but

17   it can't be on a privilege log yet because we don't have

18   the document to produce or withhold the document.  So it's

19   not that it's being left off of a privilege log, but we've

20   got to have the document and review it so we can see if

21   it's privileged before we withhold it and put it on a

22   privilege log.  So that's the explanation for that one

23   document.

24              MR. RICKNER:  If I may, Your Honor --

25              THE COURT:  All right - sure, go ahead.
```

```
 1                       PROCEEDINGS            28
 2            MR. RICKNER:   Rob Rickner for the plaintiffs.
 3   Just two additional points.  We're talking about a
 4   conversation and an investigation between two chiefs at
 5   the NYPD.  This was not an unauthorized side project by
 6   someone.  This was a significant investigation.
 7            And the second part on the Mayor's Office, I
 8   guess I just want to note for the record that we will be
 9   taking these people's deposition and asking them if they
10   have paper, right, non-electronic documents that are
11   responsive.  And if they say yes, we're going to make way
12   for arguments.
13            THE COURT:   Okay, that's noted.  All right, on
14   the log issues, it sounds like - I'm not sure - strike
15   that.  The privilege logs should be produced at the time
16   of the document production, and it sounds like the City
17   doesn't really have a problem with that.  So I don't think
18   there's any problem my ordering that going forward.  I
19   mean the only slight hiccup to that is if they have a load
20   of documents that are ready to go and they have to do some
21   more work to put a privilege log together, the City
22   certainly might be entitled to ask the plaintiffs for
23   leave to give them the documents so it's not held up while
24   they do the privilege log.  But the principle should be
25   that they happen at the same time.
```

```
1                      PROCEEDINGS                    29
2            I'm not sure why this issue specifically
3   regarding redactions, you know, there certainly shouldn't
4   be redactions except for some, you know, privilege or for
5   some personal privacy thing.  I can't see any other reason
6   why there'd be a redaction.  There certainly shouldn't be
7   a redaction on a document because of relevance.  But
8   presumably it sounds like from the City that's going to be
9   explained at the time the document is produced, and
10  certainly plaintiffs will see the redactions, so they'll
11  know if it wasn't explained.
12           So I think that takes care of it.  Absolutely
13  produce the log at the time the documents are being
14  produced.  That's when it's due under the rule and that's
15  when it should be produced unless the parties agree
16  otherwise.  Anything else on this privilege log issue, Mr.
17  Rickner?
18           MR. RICKNER:  Only that the log needs to
19  conform to the local rules with all of the information the
20  local rules require.
21           THE COURT:  Yeah, it certainly should have all
22  the information.  There may be some reason that it doesn't
23  have to be in beautiful columns because of the way the
24  computer generates it.  I don't see why it can't be, but,
25  Ms. Jacobs, did you – I'm sorry – Ms. Weiss, did you think
```

```
 1                      PROCEEDINGS              30
 2   that that was, do you have any reason to believe all the
 3   categories aren't going to be there?
 4         MS. WEISS:   All the categories will be there,
 5   Your Honor.
 6         THE COURT:   Okay.  Anything else, Mr. Rickner,
 7   on this?
 8         MR. RICKNER:   Well, on privilege log, no.  Just
 9   the other two issues.
10         THE COURT:   Okay, go ahead.
11         MR. RICKNER:   Well, we did today receive
12   objections to the Sierra plaintiffs' first set of
13   supplemental document requests.  We did not receive any
14   documents.  In response to most of the requests, there was
15   an instruction that they were still searching and still
16   looking.  This is, you know, a microcosm of the issues
17   that Mr. England addressed, but, you know, we're really
18   looking – those requests are much more targeted, and we're
19   looking for a hard date by which they'll actually produce
20   the materials so we can move our case forward.  Something
21   in the neighborhood of 30 days.
22         THE COURT:   All right, Ms. Weiss.
23         MS. WEISS:   I just want to point out that,
24   although Mr. Rickner refers to this as a microcosm and
25   that there are more targeted requests, most of the
```

```
 1                         PROCEEDINGS                    31
 2   objections were stated because these requests were
 3   absolutely duplicative of many of the requests that they
 4   were already made, that were already made.  And many, many
 5   documents responsive to these requests were already
 6   produced in the 70 some odd thousand documents that were
 7   already produced.
 8            Regardless, more - documents are, more targeted
 9   documents I suppose we could say are being searched for.
10   We had a conversation just this afternoon with a chief who
11   has some specific information.  This is about specifically
12   the Mott Haven protest.  So we hope to be getting some
13   more answers from this individual within the next day or
14   two, but within 30 days to provide further, more
15   substantive responses is absolutely reasonable and no
16   problem.
17            THE COURT:  Well, I don't think they want
18   responses.  I think they want the documents in 30 days.
19   What's the problem with that?
20            MS. WEISS:  Well, that's, that is what I mean,
21   Your Honor, the documents to the extent that they exist.
22            THE COURT:  Okay.  All right --
23            MR. RICKNER:  One other --
24            THE COURT:  Go ahead.
25            MR. RICKNER:  I'm sorry, Your Honor, Rob
```

```
1                          PROCEEDINGS              32
2   Rickner.  One other small subpoint.  They also provided
3   interrogatory responses, but they aren't verified which,
4   you know, is an evidentiary issue for us if we want to use
5   those responses at trial.  So we would ask that they be
6   verified by somebody with knowledge.
7              THE COURT:  Okay, this is new.  I understand
8   you didn't get them till recently.  Do you have a response
9   to that, Ms. Weiss?
10             MS. WEISS:  Well, I do, but we will provide
11  verified responses.  Not a problem.
12             THE COURT:  Okay.  All right, so the documents
13  are --
14             (interposing)
15             THE COURT:  I'm sorry, Mr. Rickner, you wanted
16  to say something?
17             MR. RICKNER:  Just in the same 30-day period if
18  it's okay.
19             THE COURT:  Yeah.  All right, so verified
20  responses and the actual documents to be produced by
21  November 19.
22             MR. RICKNER:  Thank you, Your Honor.  And only
23  one --
24             THE COURT:  Okay --
25             MR. RICKNER:   -- small additional point about
```

1                              PROCEEDINGS                    33

2   the aviation footage.  And I understand that they

3   represent that they're producing it, but I'm going to need

4   a little bit more clarity, and that's why I want to

5   address this with the Court.  Aviation footage in the

6   regular course of business is deleted in 30 to 60 days, a

7   relatively short period of time.  What I mean by that is

8   is that any aviation footage from let's say May or June of

9   last year is only still in existence because they

10  preserved it.  Right?  If they didn't preserve it, it's

11  gone in the regular course of business.  Presumably, if

12  they preserved it, it's all in one place.  Right?  If

13  you're going to do a document or video preservation for

14  litigation, you're not going to leave it scattered across

15  a bunch of other hard drives.

16         And so my point is we want to know what was

17  preserved, and then we want to be ensured that everything

18  that was preserved with respect to aviation footage is

19  being produced, right, because that is going to be the

20  complete universe.  And it may be that some things weren't

21  preserved, but that's a different set of issues.

22         MS. WEISS:  Well, I think that Mr. Rickner

23  assumes a lot.  He makes assumptions.  I don't know where

24  those assumptions come from.  I don't know how long

25  aviation footage is preserved for.  I know the aviation

1                          PROCEEDINGS              34

2   footage for the Mott Haven protest was preserved because

3   it was clear that it was a mass arrest situation and that

4   the footage could possibly be useful for any criminal

5   prosecutions.  So a decision was made to preserve it.  I

6   don't know where it was preserved, how it was preserved,

7   if it was preserved on one hard drive in one location, if

8   other aviation footage from any other protests were

9   preserved --

10           THE COURT:   Then, Ms. Weiss, if I can just stop

11  you.  I'm getting a sense of the frustration of the

12  plaintiffs during your meet and confers.  I feel like I'm

13  getting my own experience of it.  There's no point in

14  talking about it if you don't know anything about it.  I

15  understand what Mr. Rickner said, and you said you don't

16  know if it's true.  That's enough; that's fine.  I don't

17  need to have the details of all the things you don't know.

18           So, you know, you're going to get this footage,

19  Mr. Rickner.  You'll know immediately if, (indiscernible)

20  immediately or at some point, you'll have a sense of

21  whether there's something missing, and then you'll make

22  the appropriate inquiries, first with Ms. Weiss, and then

23  if that doesn't work perhaps within a deposition, about

24  whether things were preserved or not preserved, and you'll

25  make an appropriate spoliation motion.  But I don't think

1                          PROCEEDINGS                35

2  on this phone call we can get to the bottom of this

3  factually, which is what you really need.

4           So this would certainly be a subject of

5  discussion in a meet and confer.  The City should

6  certainly be prepared to answer the question when the time

7  comes.  You'll need to give them some warning about it.

8  But I don't think your letter teed it up for the

9  spoliation aspect of this.  So I don't think this is the

10 time to do it.

11          MR. RICKNER:   Understood, Your Honor.  And can

12 we get a deadline for the time for which the City will

13 produce the aviation footage that it is producing?

14          THE COURT:   Ms. Weiss.

15          MS. WEISS:   It will be, it should be ready the

16 end of this week, but just in case there's a technical

17 issue, if we could have one week from today.

18          THE COURT:   Okay, have it produced as soon as

19 you have it, but in any event no matter than October 26

20 unless the parties agree otherwise.

21          MS. WEISS:   Thank you.

22          THE COURT:   All right, Mr. Rickner, anything

23 else we need to do on this phone call?

24          MR. RICKNER:   No, Your Honor.

25          THE COURT:   Ms. Weiss, anything?

```
1                          PROCEEDINGS                    36

2          MS. WEISS:   No, Your Honor.

3          THE COURT:   Okay, thank you, everyone, good

4   bye.

5          MS. WEISS:   Thank you.

6          (Whereupon the matter is adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

37

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, In Re: New York Policing During Summer 2020 Demonstrations, docket #20cv8924, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature _____

Date:  August 29, 2021