UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

In Re: New York City Policing During Summer 2020 Demonstrations

Index No. 20-cv-8924(CM)(GWG)

-------------------------------------------------------------------x

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISQUALIFY PLAINTIFFS' EXPERT WITNESS

GEORGIA M. PESTANA
Corporation Counsel of the
 City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By:  Jenny Weng
     *Senior Counsel*
     Special Federal Litigation Division
     (212) 356-2648

Dated:    New York, New York
          November 4, 2021

# TABLE OF CONTENTS

                                                                           **Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 1

ARGUMENT

        A. MAGUIRE HAD A CONFIDENTIAL RELATIONSHIP WITH THE CITY ................................................................... 4

        B. MAGUIRE RECEIVED CONFIDENTIAL AND PRIVILEGED INFORMATION REGARDING THE SUBJECT MATTER AT ISSUE IN THIS LITIGATION ........................................................................................ 4

                1. The Deliberative Process Privilege ......................................................... 5

                2. Maguire Gained Extensive Access to Confidential Materials and Materials Protected by the Deliberative Process Privilege, And His Contributions to the Corporation Counsel Report Are Likewise Protected by The Deliberative Process Privilege ............................................................... 6

                3. The Confidential and Privileged Material Maguire Obtained is Directly Relevant to, and Indeed Pertained to The Subject Matter of This Litigation ............................................................................................. 8

        C. THE PUBLIC INTEREST FAVORS DISQUALIFYING MAGUIRE ........................................................................ 9

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**  **Pages**

*Local 3621, Ems Officers Union v. City of New York,*
    No. 18-cv-4476 (LJL)(SLC),
    2021 U.S. Dist. LEXIS 104810 (S.D.N.Y. June 2, 2021),
    *R&R adopted by,*
    2021 U.S. Dist. LEXIS 126420 (S.D.N.Y. July 7, 2021) ................................................. 3

*Auto-Kaps, LLC v. Clorox Co.,*
    No. 15-cv-1737 (BMC),
    2016 U.S. Dist. LEXIS 37097 (E.D.N.Y. Mar. 22, 2016) ............................................ 3, 8, 9, 11

*Brennan Ctr. For Justice at NYU Sch. Of Law v. U.S. Dep't of Justice,*
    697 F.3d 184 (2d Cir. 2012) ......................................................................................... 5

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001) .................................................................................................... 5, 10

*Eastman Kodak Co. v. Kyocera Corp.,*
    No. 10-cv-6334 (CJS),
    2012 U.S. Dist. LEXIS 132436 (W.D.N.Y. Sept. 17, 2012) ........................................ 4, 9

*Grioli v. Delta Int'l Mach. Corp.,*
    395 F. Supp. 2d 11 (E.D.N.Y. 2005) ........................................................................... 3, 4

*New York Times Co. v. HHS,*
    No. 20-cv-3063 (GWG),
    2021 U.S. Dist. LEXIS 6267 (S.D.N.Y. Jan. 13, 2021) ................................................ 5

*Pellerin v. Honeywell Int'l Inc.,*
    No. 11-cv-1278-(BEN) (CAB),
    2012 U.S. Dist. LEXIS 3781 (S.D. Ca. Jan. 12, 2012) .................................................. 9

*Rodriguez v. Pataki,*
    293 F. Supp. 2d 305 (S.D.N.Y. 2003),
    *aff'd*, 293 F. Supp. 2d 315 (S.D.N.Y. 2003) ................................................................. 3

*Tigue v. United States Dep't of Justice,*
    312 F.3d 70 (2d Cir. 2002),
    *cert. denied*, 538 U.S. 1056 (2003) ............................................................................. 7

## PRELIMINARY STATEMENT

Plaintiffs have engaged Dr. Edward Maguire ("Maguire") as an expert witness in support of their claims in this matter. Defendants oppose qualification of Maguire because he has a pre-existing confidential relationship with Defendants' counsel and with defendant City of New York ("City"), pursuant to which he has received confidential and privileged information concerning the very issues which are the subject of this litigation. Because of this, and the public interest in maintaining judicial integrity as well as the integrity of government deliberations, this Court should disqualify Maguire as an expert.

## STATEMENT OF FACTS

The facts relevant to this motion are described in the accompanying declarations of Gavin B. Mackie ("Mackie Decl.") and Elissa B. Jacobs ("Jacobs Decl.") and are summarized below for the Court's convenience.

In December 2020, former Corporation Counsel James E. Johnson issued a report entitled "Corporation Counsel Report Pursuant to Executive Order 58 (June 20, 2020) Directing an Analysis of Factors Impacting the George Floyd Protests in New York City" (the "Corporation Counsel Report"). *See* Mackie Decl. Ex. A. Corporation Counsel Johnson enlisted the assistance of City attorneys (the "Review Team") and outside experts, including Maguire, in preparing the Corporation Counsel Report. Mackie Decl. ¶¶ 4, 7. The Review Team and the experts reviewed a wide variety of materials. including a number of confidential internal documents retained by NYPD and other City agencies. *See* Mackie Decl. ¶ 6.

In the course of preparing the Corporation Counsel Report, Maguire had a confidential relationship with the Review Team and received a number of confidential documents and communications. As a condition of his employment, Maguire signed a Non-Disclosure Agreement ("NDA") that required him to "keep all Confidential Information strictly confidential

and not disclose it to any person …" and which required that he "shall not use any Confidential Information, except as required to work on" the Corporation Counsel Report. Mackie Decl. ¶¶ 8-9, *Id.* Ex C ¶ 2.a.-b. Further, Maguire in fact received a great deal of confidential information in connection with his work on the Corporation Counsel Report. Mackie Decl. ¶ 11. For example, Maguire "participated in discussions regarding the scope of the review and the strategies that the Review Team would pursue," Mackie Decl. ¶ 12, "had access to and provided feedback on memoranda developed by the Review Team that summarized ACCs' thoughts and impressions" regarding the material they reviewed, Mackie Decl. ¶ 13, and "reviewed and provided extensive feedback on drafts of the Corporation Counsel Report." Mackie Decl. ¶ 14. Indeed, the review team considered Maguire "not just as an outside consultant but as an integral member of the team as it worked to develop policy recommendations." Mackie Decl. ¶ 14.

On June 16, 2021, the People of the State of New York sent a letter to Defendants informing them of their intention to engage Maguire as an expert in the above-referenced litigation and requesting that Defendants inform them of our position regarding any conflict of interest. *See* Jacobs Decl. Ex. B ¶ 2. On June 23, 2021, Defendants informed them that there would be a conflict and attempted to resolve the issue without involving the Court. Jacobs Decl. ¶ 2. Ms. Jacobs attended a meet and confer with attorneys from the Office of the Attorney General on June 28, 2021 in an attempt to resolve the dispute. Jacobs Decl. ¶ 3. A second meet and confer was held on July 7, 2021. Jacobs Decl. ¶ 4. That meeting was attended by Ms. Jacobs, Karen Griffin, Chief Ethics Officer for the Office of Corporation Counsel, and attorneys from the Office of the Attorney General. Jacobs Decl. ¶ 4. The parties corresponded about the dispute and remaining factual issues via e-mail until July 15, 2021. Jacobs Decl. ¶ 5. No resolution was reached, and the Plaintiffs named Maguire as an expert on September 1, 2021. Jacobs Decl. ¶ 5.

## ARGUMENT

This Court should disqualify Maguire as an expert because he has a prior confidential relationship with Defendants' counsel and defendant City that precludes him from working in a capacity antagonistic to the City on matters relating to the protests that occurred in May-June 2020, *i.e.* the subject matter of this litigation.

"The Court has the inherent power to disqualify an expert witness when such relief is warranted." *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y. 2003), *aff'd*, 293 F. Supp. 2d 315 (S.D.N.Y. 2003) (citation omitted). "Disqualification is designed to protect the integrity of the judicial process by ensuring that experts to do not use, even unwittingly, confidential information that they learned from a party in the course of an earlier engagement against that party in a later lawsuit." *Local 3621, Ems Officers Union v. City of New York*, No. 18-cv-4476 (LJL)(SLC), 2021 U.S. Dist. LEXIS 104810, at *10 (S.D.N.Y. June 2, 2021), *R&R adopted by*, 2021 U.S. Dist. LEXIS 126420 (S.D.N.Y. July 7, 2021) (citation omitted).

The courts of the Second Circuit have generally adopted a three-part test to consider whether an expert should be disqualified. The courts consider: "(1) was it objectively reasonable for the first party who retained the expert to conclude that a confidential relationship existed; (2) was any confidential or privileged information disclosed by the first party to the expert; and (3) does the public have an interest in allowing or not allowing the expert to testify." *Grioli v. Delta Int'l Mach. Corp.*, 395 F. Supp. 2d 11, 13-14 (E.D.N.Y. 2005). "To the extent the nature of the disclosures is disputed, courts also consider whether the confidential information revealed is relevant to the current litigation." *Auto-Kaps, LLC v. Clorox Co.*, No. 15-cv-1737 (BMC), 2016 U.S. Dist. LEXIS 37097, at *7 (E.D.N.Y. Mar. 22, 2016).

It is clear that Maguire had a confidential relationship with the City and that he received a large volume of confidential and privileged information directly related to the claims

3

and allegations in this litigation. Further, the public interest in preserving both the integrity of the judicial process and the government's ability to consult with experts as part of a confidential deliberative process favors disqualifying Maguire in this case.

### A. Maguire Had a Confidential Relationship with the City

There can be no question that Maguire's employment as a consultant in the preparation of the Corporation Counsel Report established a confidential relationship. In general, the existence of a confidential relationship is not hard to establish, and courts in this Circuit have found a confidential relationship based only on an affidavit that asserted the expert agreed to maintain confidential information. *See, e.g., Eastman Kodak Co. v. Kyocera Corp.*, No. 10-cv-6334 (CJS), 2012 U.S. Dist. LEXIS 132436, at *25 (W.D.N.Y. Sept. 17, 2012) ("This sworn assertion is sufficient"). Here, Maguire in fact signed the NDA with the Law Department that specifically prevented him from disclosing any confidential information or from using it in connection with any other matter. *See* Mackie Decl. ¶¶ 8-9; *Id.* Ex. C. § 2.a.-b. Maguire agreed to be bound by the NDA as part of his work for the City and understood that he could not use the information he obtained in connection with his work on the Corporation Counsel Report in any future work engagements. *See* Mackie Decl. ¶¶ 8-10. This agreement and understanding clearly establishes a confidential relationship. *See Grioli*, 395 F. Supp. 2d at 13-14, *supra*.

### B. Maguire Received Confidential and Privileged Information Regarding the Subject Matter at Issue in This Litigation

That Maguire received confidential and privileged information relevant to the issues in this litigation is also beyond dispute. *See Grioli*, 395 F. Supp. 2d at 13-14, *supra*. Specifically, Maguire's work as an outside consultant, including the activities described below and in the annexed Mackie Declaration, gained him access to voluminous materials protected by the deliberative process privilege.

4

### 1. The Deliberative Process Privilege

The deliberative process privilege extends to any "inter- or intra-agency document" that is "(1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually related to the process by which policies are formulated." *Brennan Ctr. For Justice at NYU Sch. Of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 194 (2d Cir. 2012) (quotation marks and citations omitted).

The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news, and its object is to ***enhance the quality of agency decisions by protecting open and frank discussion*** among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (internal citations omitted) (emphasis added). The deliberative process privilege covers "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *New York Times Co. v. HHS*, No. 20-cv-3063 (GWG), 2021 U.S. Dist. LEXIS 6267, at *18 (S.D.N.Y. Jan. 13, 2021) (quoting *Klamath*, 532 U.S. at 8). Such documents may include: "recommendations, draft documents, proposals, suggestions, and other subjective documents…" *Id.* (citation and quotations omitted).

In his role as an outside consultant, Maguire obtained and reviewed these types of materials, as well as helped to generate and review the same, all of which are protected from disclosure by the deliberative process privilege.

## 2. Maguire Gained Extensive Access to Confidential Materials and Materials Protected by the Deliberative Process Privilege, And His Contributions to the Corporation Counsel Report Are Likewise Protected by The Deliberative Process Privilege

As set forth in the annexed Mackie Declaration, Maguire played a pivotal role in the development of all aspects of the Corporation Counsel Report, which required Maguire to receive far-ranging access to confidential and privileged materials. Indeed, "Maguire participated in discussions regarding the scope of the review and the strategies that the Review team would pursue" as well as "shap[ing] document requests" and "assist[ing] in developing framing questions." Mackie Decl. ¶ 12. Maguire "participated in the Review Team's internal deliberations and conversations at every step of the analysis." *Id.* Maguire reviewed internal memoranda developed by the Law Department attorneys on the Review Team, which contained attorney thoughts and impressions in addition to confidential deliberations regarding potential policy recommendations, as well as work product produced by other independent experts. Mackie Decl. ¶ 13. Maguire also "reviewed and provided feedback on drafts of the Corporation Counsel Report," Mackie Decl. ¶ 14, which, as this Court has already found, constitute internal deliberations regarding policy recommendations protected by the deliberative process privilege. *See* Memorandum and Order of Judge Gorenstein, No. 20-cv-8924, September 24, 2021, Document 271 at 3 ("[t]he OCC [Office of the Corporation Counsel] had a clear role in making recommendations to the Mayor . . . and [the outside consultant was] assisting OCC in making those recommendations"). In finding that documentation of another outside consultant's review and feedback on drafts of the Corporation Counsel Report were protected from disclosure by the deliberate process privilege, this Court noted that, "a core reason for the generation of the OCC Report was to make policy recommendations to the Mayor and NYPD." *Id.* This Court also observed that the deliberative process privilege applies as equally to government employees

6

engaged in policy-related deliberations and recommendations as to outside consultants retained by a government agency to assist with those same processes. *Id.* (citing *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 77-79 (2d Cir. 2002), *cert. denied*, 538 U.S. 1056 (2003)).

Maguire received and reviewed other privileged material, such as internal memoranda developed by the Law Department attorneys on the Review Team, which contained attorney thoughts and impressions, as well as confidential deliberations regarding potential policy recommendations. Mackie Decl. ¶ 13. In sum, the Review Team treated Maguire "not just as an outside consultant but as an integral member of the team," Mackie Decl. ¶ 14, and it "viewed [all] communications with Maguire as confidential." Mackie Decl. ¶ 15.

Earlier this week, on November 2, 2021, this Court issued an Order granting Defendants' motion to quash a subpoena served by Plaintiffs on another outside consultant who was retained by the Corporation Counsel to assist in preparation of the Corporation Counsel Report. *See* Order of Judge Gorenstein, No. 20-cv-8924, November 2, 2021, Document 310 (adhering to prior order granting Defendants' motion to quash) ("Nov. 2 Order"). Defendants argued that Plaintiffs' subpoena sought materials from that outside consultant that were protected by the deliberative process privilege, and this Court agreed. *Id.* In the Nov. 2 Order, the Court took note of evidence regarding that consultant's participation in confidential and privileged activities with the Corporation Counsel Review Team, and/or activities that likely involved sharing of privileged and confidential material with the consultant, including "'participat[ing] in discussions regarding the scope of the review and the strategies that [the Corporation Counsel] would pursue,' 'participat[ing] in . . . internal deliberations and conversations at every step of the analysis,' and provid[ing] feedback on internal memoranda and drafts of the [Corporation Counsel] Report." *Id.* at 1. As described above and in the annexed Mackie Declaration, Maguire engaged in these very

same activities while acting as an outside consultant for the Corporation Counsel, and in this manner was privy to a great deal of confidential and privileged information.

### 3. The Confidential and Privileged Material Maguire Obtained is Directly Relevant to, and Indeed Pertained to The Subject Matter of This Litigation

Moreover, the confidential and privileged information Maguire obtained in connection with his engagement with the Corporation Counsel Report is plainly relevant to the issues in this litigation. The Corporation Counsel Report "analyz[ed] factors impacting the protests that took place throughout New York City between the murder of George Floyd in late May 2020 through June 20, 2020." Mackie Decl. ¶ 2. Before issuing the Corporation Counsel Report, the Review Team and its outside consultants conducted an analysis of the various "factors that may have impacted events at the protests." Mackie Decl. ¶¶ 3-4. Documents reviewed during the course of the analysis included, among other things, multiple NYPD resources. Mackie Decl. ¶ 6. The confidential communications that Maguire received in the course of his participation in the process of developing policy recommendations included attorney memos containing thoughts and impressions regarding some of these NYPD resources. Mackie Decl. ¶ 13. These communications are all directly related to the subject matter of this litigation and to the work that Plaintiffs seek to have Maguire do in connection with this litigation. Mackie Decl. ¶ 16.

It is of no moment whether or not Maguire intends to disclose to Plaintiffs any confidential information that may have been provided to him as part of the Corporation Counsel Report. "[T]he inquiry is not into what confidential information the <u>expert</u> has disclosed, but what was disclosed to him." *Auto-Kaps*, 2016 U.S. Dist LEXIS 37097, at *9 (emphasis in original). His conflict cannot be remedied, therefore, by an assertion from Plaintiffs that Maguire will not disclose information covered by the NDA or that he will review documents and events with a fresh eye. The fact that Maguire had a confidential relationship with Defendants and that he received

8

confidential and privileged information relevant to this lawsuit renders him ineligible to serve as an expert witness for Plaintiffs in this matter.

## C. The Public Interest Favors Disqualifying Maguire

Public policy considerations also weigh in favor of disqualifying Maguire. In considering this factor, courts weigh "the public's interest in preserving judicial integrity and fairness as balanced against the party's right to the assistance of experts who possess specialized knowledge and the right of such experts to pursue their professional calling." *Auto-Kaps*, 2016 U.S. Dist. LEXIS 37097, at *7.

As an initial matter, given the evidence that a confidential relationship existed and that relevant confidential information was disclosed to Maguire, this Court can assume the public interest in preserving judicial integrity prevails, absent any competing evidence. *See Auto-Kaps*, 2016 U.S. Dist. LEXIS 37097, at *14 ("[a]lthough the movant bears the burden of establishing the elements supporting its motion for disqualification, [opponent] has not presented evidence that would outweigh the public's interest in preserving judicial integrity").

Further, one cannot overstate the public interest in preserving judicial integrity as well as the governments' ability to engage experts in a deliberative process without fear they will later reveal confidential information or use that information to the government's disadvantage in a subsequent case involving the very issues for which they were retained. As to the former consideration, "[d]isqualification is designed to protect the integrity of the judicial process by ensuring that experts do not use, even unwittingly, confidential information that they learned from a party in the course of an earlier engagement against that party in a later lawsuit." *Eastman Kodak Co. v. Kyocera Corp.*, No. 10-cv-6334 (CJS), 2012 U.S. Dist. LEXIS 132436, at *23-24 (W.D.N.Y. Sept. 17, 2012) (citing *Pellerin v. Honeywell Int'l Inc.*, No. 11-cv-1278-(BEN) (CAB), 2012 U.S. Dist. LEXIS 3781, at *8 (S.D. Ca. Jan. 12, 2012)) (rejecting "suggestion that [expert]

9

can parse his knowledge of [party's] confidential information to only rely upon what is provided to him in the litigation," because "the human brain does not compartmentalize information in that manner").

Moreover, the critical public interest served by safeguarding the government's ability to engage trusted experts in confidential and privileged matters, such as assisting in deliberative processes in the course of internal investigations, is beyond debate. The Corporation Counsel's investigation into and report on the NYPD response to the summer 2020 protests, which proffered recommendations for specific policy reforms, illustrates the obvious public benefit that inheres by ensuring the government's ability to engage in uncensored self-scrutiny, bolstered by experts in their relevant fields, in order to improve an agency's service to the public. The *raisôn d'être* of the deliberative process privilege is relevant here, because internal investigations and reports are most effective and beneficial to the public when agencies feel that they can engage in an "open and frank discussion" with the experts they retain without fear that their discussions will later be used against them, or "if each remark is a potential item of discovery and front page news." *Klamath*, 532 U.S. at 8-9, *supra*. Allowing Plaintiffs to retain Maguire as an expert witness in this litigation would only dissuade the City and other government entities from relying on independent experts in future internal reviews for fear that those same experts would be used against them in litigation. Such a prospect is clearly contrary to the public's interest, which is to promote and incentivize its public agencies to engage in those very sort of internal investigations and evaluations, and to retain the most qualified experts on point to assist in the process in order to maximize government efficiency and public benefits for all.

Finally, Plaintiffs cannot offer any countervailing interests to outweigh the public interest in judicial integrity and preservation of the deliberative process. First, Plaintiffs cannot

possibly argue that there are no other experts that they could retain to support their case. As valuable as his knowledge and experience is, Maguire is hardly the only expert on policing in the United States. Nor does Maguire possess any specific expertise valuable to Plaintiffs in this matter that could not be provided by other similar experts, aside from his confidential relationship as a consultant on the Corporation Counsel Report. Second, Plaintiffs cannot argue that Maguire will be "deprived of his professional calling." *Auto-Kaps*, 2016 U.S. Dist. LEXIS 37097 at *14. Maguire is a valued expert in the field of policing, and Defendants have no intention of limiting his participation in cases that do not directly implicate the specific professional relationship for which he signed the NDA. He is free to pursue his scholarship and to serve as an expert for parties in any other litigation that does not involve the specific subject matter that was at issue in the Corporation Counsel Report and is now in issue in this litigation.

The public interest in preserving both the integrity of the judicial process and the government's ability to consult with experts as part of a confidential deliberative process favors disqualifying Maguire in this particular case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion to disqualify Maguire as an expert witness in this litigation.

Dated: New York, New York
       November 4, 2021

GEORGIA M. PESTANA
Corporation Counsel of the
City of New York
*Attorney for Defendants*
100 Church Street,
New York, New York 10007
(212) 356-2648

By: *[signature]*
Jenny Weng
*Senior Counsel*
Special Federal Litigation Division