

GEORGIA M. PESTANA
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK , NEW YORK 10007

DARA L. WEISS
*Senior Counsel*
daweiss@law.nyc.gov
Phone:  (212) 356-3517
Fax:  (212) 356-1148

<u>**By ECF**</u>                                                                    November 4, 2021
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> In Re:  *New York City Policing During Summer 2020 Demonstrations*,
> No. 20 Civ. 8924 (CM) (GWG)
> This filing is related to all cases

Your Honor:

        I am a Senior Counsel in the Office of Georgia M. Pestana, Corporation Counsel of the City of New York and I am among counsel for the defense in the above-referenced matter. I write in accordance with Rule 2.A of the Court's Individual Practices to respectfully oppose plaintiffs' October 28, 2021 letter motion pursuant to Local Civil Rule 37.2.

ARGUMENT

        A.  Meet-and-Confers

        At the outset, by counsels' own admission, one of the meet-and-confers they complain about had already been scheduled as of the writing of their motion, has already been held, and is scheduled to continue on Tuesday, November 9.  The parties are already more than 3 hours into a conferral on numerous topics regarding discovery that plaintiffs allege is outstanding.  The parties engage in meet-and-confers on a regular basis, sometimes several times in a week.  Unfortunately, these conferrals have a tendency to go sideways.  For example, attorneys for the plaintiffs may repeat topics that were already discussed at previous meet-and-confers that they did not attend (as happened just this week. as one counsel on a Wednesday conferral wanted to take time to discuss an issue that had just been discussed during a Monday conferral).  Or, counsel for plaintiffs may not make their agenda for the meetings clear, so when defense counsel is unable to answer unanticipated questions posed by counsel for plaintiffs, the meetings become an exercise in futility.

        Due to the size and scope of this case, the number of attorneys involved, and the enormous amount of work that needs to get done on a daily basis, constant meet-and-confers simply takes time away from allowing counsel for the defendants to actually do the work they are required to

do to defend this action. But, in one way or another, plaintiffs' concerns are addressed, even if they are not always satisfied with the responses they receive. So, although it may be true that not every request for a formal meet-and-confer has resulted in one, there is in fact a constant stream of communication among the parties. Defendants are in no way willfully engaging in any conduct in an attempt to frustrate the discovery process.

## B.  30(b)(6) Witnesses

With respect to 30(b)(6) witnesses, Defendants have, in fact, identified witnesses for topics 1, 6 and 7, other than a witness to testify as to racial profiling and implicit bias, where we are attempting to identify the best and most knowledgeable witness. We hope to be able to do this by the end of next week. Defendants have put forth the names of four witnesses along with the various topics they can testify about, which cover the topics discussed and agreed upon by the parties from the first 30(b)(6) notice.

For the topics that were agreed upon from the second 30(b)(6) notice, there was a misunderstanding and miscommunication among the attorneys in this office. The undersigned had been under the impression that one of my colleagues, who is no longer working on the matter, had provided the names of the witnesses well before the September 20, 2021 conference. In actuality, she had just obtained the names, but not provided them to plaintiffs. During a meet-and-confer this past Monday, counsel for the Payne plaintiffs, Molly Biklen, asked about these 30(b)(6) designations and whether we could meet-and-confer about it. I advised her I would be sending a communication within a few days that I believed would obviate the need to a meet-and-confer, as in the process of responding to the instant motion I learned that the designations had not been shared. Contemporaneous with filing this letter I have sent the 30(b)(6) designations for topics 12, 13, 14 and 16 from the Plaintiffs' Second 30(b)(6) notice dated August 6. Once again, there is absolutely no willful non-compliance with any Order of this Court or any discovery obligation. The 30(b)(6) depositions are not expected to go forward until after production of the email discovery, so plaintiffs will not be able to show any prejudice simply because they may not have some of the names until now.

## C.  Deposition of Sergeant Majer Saleh

Finally, with respect to the deposition of Sergeant Majer Saleh, plaintiffs seem to be asserting that this somehow fits into a pattern of refusal to engage in meet-and-confers, which is in no way the case. The issues are in no way related. Meet-and-confers were neither necessary nor requested, as rescheduling of Sgt. Saleh's deposition was agreed to through written correspondence. As indicated in plaintiffs' October 28 letter, Sgt. Saleh's first scheduled date for deposition had to be changed, as did a number of the early depositions in this matter due to scheduling issues which needed to be worked out. That issue was already before Your Honor, and was resolved. The dates proposed by plaintiffs for his rescheduled deposition were not available. Then, plaintiffs unilaterally "rescheduled" his deposition, for a date which was never agreed to by defendants and never confirmed, yet they were irritated that it did not go forward. They accused defendants of "canceling" a deposition, but there was no confirmed deposition to "cancel".

After his deposition did not go forward in July, Sgt. Saleh's name went back in the "queue" pursuant to the newly agreed upon deposition scheduling protocols endorsed by Your Honor.

Several attorneys in this office began reaching out to him, including myself, to schedule his deposition.  On September 15th and 16th, both Sgt. Saleh and his personal attorney were called, and Sgt. Saleh was emailed.  According to Sgt. Saleh's personal attorney, even he had difficulties reaching him. The next day, Sgt. Saleh called the undersigned, and he advised me that he was not available for anything until at least mid-October.  His wife had medical issues that he had to help her with, then was leaving the country for several weeks for a personal, semi-emergent issue.  Sgt. Saleh assured me that he was available to be deposed after mid-October.  At that point, we set his deposition for October 28, and advised Sgt. Saleh of that date via email.

On September 28, Sgt. Saleh phoned this office and advised that he may not be available on October 28th, due to several obligations, and that he may still be out of the country.  He was advised that the deposition was rescheduled to accommodate him, since he told us he would be back from his trip in mid-October. He then told us he'd have to call us back.

As it got closer to the scheduled deposition date, we continued to attempt to reach Sgt. Saleh and his personal attorney, leaving urgent messages.  We spoke to Sgt. Saleh's personal attorney on October 26, who again advised us that he has difficulty contacting Sgt. Saleh, and further advised that Saleh had put in his retirement paperwork.  He told us he would attempt to reach out to Sgt. Saleh regarding the deposition.  Since we did not hear from Sgt. Saleh or his personal attorney, defendants had no choice but to cancel the deposition.  This office has been doing all that it can to secure the appearance of Sgt. Saleh, who is not a defendant.  There has been no willful conduct that would justify the imposition of sanctions.

## CONCLUSION

Once again in this litigation, plaintiffs purport to argue that defendants' actions are sanctionable. They are not.  "In determining whether preclusion or another sanction would be appropriate, courts should consider: '(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the importance of... the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Ritchie Risk-Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (citing Softel, Inc. v. Dragon Medical & Scientific Communications, Inc., 118 F.3d 955, 961 (2d Cir.1997)). Plaintiffs wholly fail to meet the standard for Rule 37 sanctions. Discovery is ongoing in this case.  Depositions continue. 30(b)(6) depositions will not start until the beginning of the New Year. More attorney hours are taken up by innumerable hours of meet-and-confers with upwards of a dozen lawyers on the line than could have possibly been spent on plaintiffs' letter.  Any purported non-compliance with discovery obligations has not been in any way willful or an attempt to obstruct the progress of this matter. Plaintiffs have suffered no prejudice at all and sanctions are not warranted.  Plaintiffs' application should be denied in its entirety.

Thank you for your consideration herein.

Respectfully submitted,

*Dara L. Weiss* s/

Dara Weiss
*Senior Counsel*
Special Federal Litigation Division

cc:     ALL COUNSEL (via ECF only)