# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In Re: New York City Policing
During Summer 2020 Demonstrations

20 Civ. 8924 (CM)(GWG)

This filing is related to:

ALL CASES

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO
DISQUALIFY DR. EDWARD R. MAGUIRE AS AN EXPERT WITNESS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ......................................................................................................... 2

ARGUMENT ............................................................................................................... 6

   I. Defendants Have Not Established That Dr. Maguire's Consultancy Requires His
      Disqualification. ................................................................................................. 6

     A. Defendants Have Not Established That They Disclosed Confidential Information to Dr.
        Maguire ....................................................................................................... 7

     B. Defendants Have Failed to Establish That Disclosures Would Prejudice Defendants if
        Revealed ...................................................................................................... 11

     C. The People's Need for Access to Dr. Maguire's Specialized Expertise Outweighs Any
        Countervailing Interests ............................................................................. 14

   II.   Any Remedy That the Court May Deem is Necessary Should Be Limited ...................... 17

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTHORITIES

CASES                                                                                     Page(s)

*ACORN v. Cnty. of Nassau*,
    No. 05-CV-2301, 2008 WL 708551 (E.D.N.Y. Mar. 14, 2008) ........................................ 12, 13

*Agron v. Trustees of Columbia Univ. in City of New York*,
    176 F.R.D. 445 (S.D.N.Y. 1997) ...................................................................... 17, 18

*Auto-Kaps, LLC v. Clorox Co.*,
    No. 15-CV-1737, 2016 WL 1122037 (E.D.N.Y Mar. 22, 2016) ...................................... passim

*Breitkopf v. Gentile*,
    No. 12-CV-1084, 2014 WL 12843765 (E.D.N.Y. Mar. 24, 2014) ........................................... 8

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
    No. 95-CV-8833, 2000 WL 42202 (S.D.N.Y. Jan. 19, 2000)................................................... 9

*Degen v. United States*,
    517 U.S. 820 (1996) .......................................................................................... 17

*Eastman Kodak Co. v. Agfa-Gevaert N.V.*,
    No. 02-CV-6564, 2003 WL 23101783 (W.D.N.Y. Dec. 4, 2003) ....................................... 9, 12

*Eastman Kodak Co. v. Kyocera Corp.*,
    No. 10-CV-6334, 2012 WL 4103811 (W.D.N.Y. Sept. 17, 2012) ................................. 7, 8, 14

*Env't Prot. Agency v. Mink*,
    410 U.S. 73 (1973) ........................................................................................... 11

*Grand Cent. P'ship, Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999)................................................................................. 11

*Grioli v. Dental Int'l Mach. Corp.*,
    395 F. Supp. 2d 11 (E.D.N.Y. 2005)................................................................. 10, 17

*Heard v. Statue Cruises LLC*,
    No. 16-CV-1079, 2020 WL 1285456 (S.D.N.Y. Mar. 18, 2020) ......................................... 7, 8

*Hewlett-Packard Co. v. EMC Corp.*,
    330 F. Supp. 2d 1087 (N.D. Cal. 2004) ................................................................... 7

*Hinterberger v. Cath. Health Sys., Inc.*,
    No. 08-CV-380S F, 2013 WL 2250591 (W.D.N.Y. May 21, 2013)..........................................7

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    No. 12-CV-5067, 2019 WL 5634171 (S.D.N.Y. Oct. 31, 2019) .......................................14, 16

*Hopkins v. United States Dep't of Housing & Urban Dev.*,
    929 F.2d 81, 85 (1991) ..................................................................................................11

*In re Namenda Direct Purchaser Antitrust Litig.*,
    No. 15-CV-7488, 2017 WL 3085342 (S.D.N.Y. July 20, 2017) ............................6, 12, 14, 18

*In re New York City Policing During Summer 2020 Demonstrations*,
    No. 20-CV-8924, 2021 WL 4344919 (S.D.N.Y. Sept. 24, 2021)..........................................12

*Nikkal Indus., Ltd. v. Salton, Inc.*,
    689 F. Supp. 187 (S.D.N.Y. 1988) ....................................................................................7

*Pellerin v. Honeywell Intern Inc.*,
    No. 11-CV-1278, 2012 WL 112539 (S.D. Ca. Jan. 12, 2012) ..............................................13

*Raba v. Suozzi*,
    No. 06-CV-1109, 2006 WL 8435604 (E.D.N.Y. Nov. 17, 2006).....................................10, 11

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) ......................................................................................................17

*Rodriguez v. Pataki*,
    293 F. Supp. 2d 305 (S.D.N.Y. 2003) .................................................................................6

*Rouviere v. DePuy Orthopaedics, Inc.*,
    496 F. Supp. 3d 811 (S.D.N.Y. 2020) .................................................................................6

*Soc'y for Good Will to Retarded Child., Inc. v. Carey*,
    466 F. Supp. 722 (E.D.N.Y. 1979) ..................................................................................17

*Space Sys./Loral v. Martin Marietta Corp.*,
    No. 95-CV-20122 SW, 1995 WL 686369 (N.D. Cal. Nov. 15, 1995)....................................18

*Stencel v. Fairchild Corp.*,
    174 F. Supp. 2d 1080 (C.D. Cal. 2001) ............................................................................18

*Topps Co. v. Productos Stani Sociedad Anomina Indus. y Com.*,
    No. 99-CV-9437, 2001 WL 406193 (S.D.N.Y. Apr. 20, 2001)................................................. 16

*Torres v. City Univ. of New York*,
    No. 90-CV-2278, 1992 WL 380561 (S.D.N.Y. Dec. 3, 1992)................................................. 13

*TVT Recs. v. Island Def Jam Music Grp.*,
    250 F. Supp. 2d 341 (S.D.N.Y. 2003)................................................................................... 14

*U.S. ex rel. Cherry Hill Convalescent, Ctr., Inc. v. Healthcare Rehab Sys., Inc.*,
    994 F. Supp. 244 (D.N.J. 1997) ........................................................................................... 10

*United States v. Adlman*,
    134 F.3d 1194 (2d Cir. 1998)................................................................................................. 8

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961)................................................................................................... 8

*Wang Lab'ys, Inc. v. CFR Assocs., Inc.*,
    125 F.R.D. 10 (D. Mass. 1989) ........................................................................................... 18

**RULES**

FED. R. CIV. P. 26(b)(3) .......................................................................................................... 8

FED. R. CIV. P. 26(b)(4).......................................................................................................... 18

# PRELIMINARY STATEMENT

The People of the State of New York, by their Attorney General, Letitia James ("Plaintiff" or the "People"),[1] have retained Dr. Edward R. Maguire, the preeminent U.S. scholar on the social science of crowds and their interaction with police at protests, to lend his specialized expertise in this matter of great public importance. Defendants move for the rare and "drastic remedy" of disqualifying Dr. Maguire, but they have not satisfied, and cannot satisfy, their burden to prove that this drastic remedy is warranted or in the public interest.

Plaintiff seeks injunctive relief from the unconstitutional policing practices that the New York City Police Department ("NYPD") used at racial-justice protests across the City beginning in May 2020 (the "Protests"). Dr. Maguire has, over 20 years, extensively studied the use of police tactics at mass demonstrations by myriad police departments across the nation. Recognizing this expertise, a team within the New York City Law Department, walled-off from Protest-related litigation and tasked with recommending *future* areas of study regarding protest policing, retained Dr. Maguire to create a checklist for policing First Amendment assemblies.

Defendants argue that Dr. Maguire's post-protest communications with this isolated, non-litigation team merit complete disqualification from testifying in this matter. But no court in this Circuit has ever recognized deliberative process privilege as a basis for disqualifying a litigation expert. Defendants have failed to meet their burden of proving that they shared "confidential information" to Dr. Maguire that, if revealed, would prejudice Defendants' case, and that disqualification serves the public interest. That team's post-Protest deliberations about what NYPD reforms to promote *in the future* do not alter what occurred at the Protests *in the past*. They thus could not answer the questions Dr. Maguire is being asked to answer here, including

---

[1] Defendants incorrectly assert that Dr. Maguire has been retained by all plaintiffs. Only the People have retained him.

what sociological effect the NYPD's use of encirclement, force, and mass arrests had on demonstrators at the Protests. Dr. Maguire is also being asked to opine on the extent to which practices he identified while studying the NYPD's response to the Occupy Wall Street protests—a study he independently completed prior to being retained by the City last year—continued to be used at the Protests at issue here. Defendants fail to establish any potential for prejudice and downplay countervailing public policy considerations, such as the uniqueness of Dr. Maguire's expertise. Because Dr. Maguire was not privy to confidential information that can be used to establish Defendants' liability, and his specialized knowledge is unmatched in the United States, the drastic step of disqualifying Dr. Maguire is not warranted. The Court should deny Defendants' Motion.

## BACKGROUND

In June of 2020, Mayor Bill de Blasio issued Executive Order 58 ("EO 58"), requiring the Commissioner of the Department of Investigation ("DOI") and the Corporation Counsel of the New York City Law Department ("Law Department") to jointly review the NYPD's response to the Protests. *See* (Decl. of Gavin B. Mackie, Ex. B, ECF No. 131-1). EO 58 specifically directed the Corporation Counsel to compile an "analysis . . . of factors that may have impacted events at protests during the Review period," as well as "any recommendations . . . the Corporation Counsel may make in [his] independent professional judgment about any additional areas of study and engagement worth pursuing." *Id.* at 2. The agencies' review was to "culminate in a written public report" whose express purpose was to "ensure there is accountability for the police who acted inappropriately during these protests, and to help deepen trust between community and police." *Id.*

The Law Department published its findings in a December 2020 Report (the "Report"). (Mackie Decl., Ex. A (Report)). The Report makes clear that the "small team of [Assistant Corporation Counsels]" investigating the protest response (the "Review Team"), (Mackie Decl. ¶ 4), was not and would not be litigating cases arising from the Protests, stating,

> [A]lthough the Law Department is counsel to the City, this report does not reach legal conclusions. Rather, per the Executive Order, this report is an 'analysis . . . of factors that may have impacted the events at protests.' As a result, this report is less focused on reaching specific factual determinations and more focused on understanding events, looking at the circumstances around those events, and developing recommendations going forward. In support of this task, we have enlisted the assistance of experts in policing and behavioral science.

Report at 6.

The Review Team retained three consultants, including Dr. Maguire, to provide input in "four distinct areas: (a) policing protests; (b) management of high-impact events from the perspective of senior managers; (c) crisis response from the perspective of officers; and (d) organizational behavior." *Id.* at 8. The Report states that the consultants generally "advised the review team" on the four aforementioned categories, "provided their experienced assessments of NYPD's policies and practice," and "vetted and endorsed" the recommendations in the report. *Id.* at 9. However, in specifying their contributions to the Report, it states that Dr. Maguire only "advised on the creation of a strategic checklist" that lists action items the NYPD should take to prepare for, respond to, and review responses to protests. *Id.*

That checklist largely draws upon Dr. Maguire's extensive study of and publications regarding protest policing. (Decl. of Dr. Edward Maguire ¶ 18.) Dr. Maguire is the preeminent U.S. expert on the intersection between the social science of crowds and intergroup communication and protest policing. (Dr. Maguire Decl. ¶ 14.) Dr. Maguire currently works as a professor of criminology and criminal justice at Arizona State University. *Id.* ¶ 1. His recent

research has focused in substantial part on police responses to protests. *Id.* ¶¶ 7–8.  He has written or edited seven books, contributed to over 100 journal articles and book chapters concerning topics such as policing, violence, organization theory, and social science methodology, and, based on a national study of protest policing practices in the United States, has recently co-authored a guidebook for police on handling protests entitled *Policing Protests: Lessons from the Occupy Movement, Ferguson & Beyond: A Guide for Police*, which explores how communication intersects policing in such areas as police culture, police reform, and crowd violence. *Id.* ¶ 9.

Prior to his work with the Law Department, Dr. Maguire executed a non-disclosure agreement ("NDA"). *Id.* ¶ 17. Dr. Maguire met with the Review Team, authored the checklist based on his knowledge of general best practices in protest policing, and commented on drafts of the Report. *Id.* ¶¶ 18–19. But he did not participate in any discussion regarding future litigation or any related strategy. *Id.* ¶ 21. The Report describes the materials that the Review Team examined as public reports by governmental agencies and professional or advocacy organizations, executive orders, news articles, and "NYPD Resources," including training materials and provisions of the NYPD Patrol Guide. Report at 7.

Plaintiff initiated the instant case on January 14, 2021. Dkt. 21-cv-322, ECF No. 1. Following an exhaustive search for an expert with specialized knowledge of both the social science research on crowds and policing protests, Plaintiff identified fourteen candidates. (Decl. of Lillian M. Marquez ¶ 4.) Plaintiff narrowed that pool, due to lack of sufficient expertise in these disciplines or experience particularly as applied to American police departments, to one person—Dr. Maguire. *Id.* ¶¶ 5–7, 10.

Beginning in June 2021, Plaintiff engaged Defendants' counsel in numerous conferrals to address Plaintiff's interest in engaging Dr. Maguire. *Id.* ¶¶ 12–17. During those conferrals, Defendants' counsel acknowledged that the work product privilege would not apply to Dr. Maguire's engagement with the Review Team because that team was purposefully recused from litigation. *Id.* ¶ 16. Instead, Defendants asserted that Plaintiff should not retain Dr. Maguire because he had access to material covered by the deliberative process privilege. *Id.* Plaintiff ultimately engaged Dr. Maguire and notified Defendants so by the court-ordered deadline, September 1, 2021. *Id.* ¶ 18. Defendants waited two months before moving to disqualify Dr. Maguire. ECF No. 313 ("Mot.").

To opine on how Defendants' training, supervision, and operational structure—or lack thereof—contributed to the constitutional violations at the Protests, as well as to assess individual uses of force, Plaintiff also retained a second expert, Hassan Aden. (Marquez Decl. ¶ 8.) Aden is a former Chief of Police for the Greenville Police Department in North Carolina, and former director of the Research and Programs Directorate of the International Association of Chiefs of Police, a role in which he oversaw a large portfolio of operational programs aimed at promoting improved police practices among police leaders. *Id.* His experience also includes providing consultation and monitoring services for police departments. *Id.* Likewise, the other plaintiffs consolidated in this action have retained experts with similar backgrounds to Aden. *Id.* However, these law enforcement experts do not have expertise regarding crowd psychology or intergroup communications and thus cannot explain how the NYPD's tactics were contrary to social science research on how police should respond to large crowds to avoid escalation. *Id.* ¶ 9; (Dr. Maguire Decl. ¶ 8, 13). Furthermore, none of the other experts independently studied the NYPD's response to the Occupy Wall Street protests. (Marquez Decl. ¶ 9.) Dr. Maguire's

anticipated testimony is critical for the factfinder to understand the full scope of what went

wrong during the Protests and will aid in proving Plaintiff's *Monell* claims.

## ARGUMENT

### I. Defendants Have Not Established That Dr. Maguire's Consultancy Requires His Disqualification.

Disqualification of an expert witness is a "drastic remedy" that "should be resorted to

rarely." *Rouviere v. DePuy Orthopaedics, Inc.*, 496 F. Supp. 3d 811, 813 (S.D.N.Y. 2020)

(internal citation and quotation marks omitted). In cases where an expert has been previously

retained by the opposing party, disqualification serves only to "prevent the 'risk of prejudice

from possible disclosure' [of confidential information shared with an expert] and the

'fundamental unfairness' that would arise as a result" and must be balanced against competing

interests. *Auto-Kaps, LLC v. Clorox Co.*, No. 15-CV-1737, 2016 WL 1122037, at *3 (E.D.N.Y

Mar. 22, 2016) (citations omitted). To establish that such a risk of prejudice exists and warrants

disqualification, the movant must establish each of these three elements: (1) "that it was

objectively reasonable for the movant to believe that it had a confidential relationship with the

expert," *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 311 (S.D.N.Y. 2003) (citation omitted);

(2) that the movant actually made "specific and unambiguous disclosures" of confidential

information to the expert "that if revealed would prejudice the party," *In re Namenda Direct*

*Purchaser Antitrust Litig.*, No. 15-CV-7488, 2017 WL 3085342, at *2 (S.D.N.Y. July 20, 2017)

(quoting *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal.

2004)), *report and recommendation adopted in part, rejected in other part*, No. 15-cv-7488

(CM), 2017 WL 3613663 (S.D.N.Y. Aug. 21, 2017); and (3) that "the public's interest in

preserving judicial integrity and fairness," as established by the first two elements, outweighs

"the party's right to the assistance of experts who possess specialized knowledge and the right of such experts to pursue their professional calling," *Auto-Kaps, LLC*, 2016 WL 1122037, at *2.

Here, although the first prong is not in dispute, Defendants do not satisfy the second and third prongs of the test because they fail to establish that they have shared with Dr. Maguire "confidential information," that the information the Review Team shared would prejudice Defendants if revealed in this litigation, or that public policy favors disqualifying him.

### A. Defendants Have Not Established That They Disclosed Confidential Information to Dr. Maguire

In arguing to disqualify Dr. Maguire on the basis of the deliberative process privilege, Defendants seek a novel—and unwarranted—expansion of what "confidential information" means in this context. Courts in this Circuit have interpreted "confidential information" in this context narrowly, to encompass information protected by the attorney-client or attorney work product privilege, *Heard v. Statue Cruises LLC*, No. 16-CV-1079, 2020 WL 1285456, at *10 (S.D.N.Y. Mar. 18, 2020); *Hinterberger v. Cath. Health Sys., Inc.*, No. 08-CV-380S F, 2013 WL 2250591, at *11 (W.D.N.Y. May 21, 2013), or company intellectual property such as trade secrets regarding the product at issue in the litigation, *see, e.g.*, *Auto-Kaps, LLC*, 2016 WL 1122037, at *4 (disqualifying packaging system expert who helped defendant develop product at issue during two-year consultancy). *But see Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 191–92 (S.D.N.Y. 1988) (explaining that "[c]ommunication based upon technical information [to expert] as opposed to legal advice" was not a basis for disqualification). No court in this Circuit has disqualified a litigation expert based on the deliberative process privilege. Once discoverable or made public, confidential information loses its protection. *See Heard*, 2020 WL 1285456, at *10 (facts learned through site tour was not confidential information because they were discoverable); *Eastman Kodak Co. v. Kyocera Corp.*, No. 10-CV-6334, 2012 WL 4103811, at

7

*10 (W.D.N.Y. Sept. 17, 2012) (rejecting notion that disclosure of public information can disqualify an expert). Defendants do not argue that any of the recognized categories of confidential information apply here, nor do they in fact apply.

First, Defendants do not argue that the Review Team shared work product or attorney-client communications with Dr. Maguire. Although Defendants' memo makes casual references to "attorney memos containing thoughts and impressions," they do not—and cannot—assert that Maguire received attorney work product. That is because the Review Team was walled-off from this or any Protest litigation. As counsel for Defendants has expressly acknowledged, the Review Team did not create documents "in anticipation of litigation," (Marquez Decl. ¶ 16), a necessary element of attorney work product, *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(3)). The attorney-client privilege is also inapplicable because it does not protect communications between attorneys and their consultants where, as here, the purpose of the engagement is not to develop legal conclusions or provide legal advice. *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ("What is vital to the [attorney-client] privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer."); *Breitkopf v. Gentile*, No. 12-CV-1084, 2014 WL 12843765, at *5 (E.D.N.Y. Mar. 24, 2014) (citations omitted) ("[U]nlike attorney-client communications, conversations between a party and an expert carry no presumption of confidentiality.").

Second, Defendants do not argue that Dr. Maguire acquired specialized technical knowledge through the materials he received from the Review Team. Outside of the attorney-client and work product protections, courts in this Circuit have disqualified only experts who have had access to non-discoverable, confidential information through years' long employment or consultancy relationships. Specifically, courts have disqualified a consultant whose expert

testimony would necessarily utilize knowledge of various drug regimens for treating ovarian cancer learned during the decade he worked with defendant, *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95-CV-8833, 2000 WL 42202, at *1 (S.D.N.Y. Jan. 19, 2000); a patent expert seeking to opine on the very technology he helped develop over the two decades he worked for the opposing party, *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02-CV-6564, 2003 WL 23101783, at *5 (W.D.N.Y. Dec. 4, 2003); and a packaging system expert who developed part of his expertise during the two years he worked for the adversary developing the antecedent design to the allegedly infringing product at issue, *Auto-Kaps, LLC*, 2016 WL 1122037, at *4. In sharp contrast, Dr. Maguire devised a checklist drawing largely on his previous scholarship, not factual materials provided to him during his brief six-month consultancy. (Dr. Maguire Decl. ¶ 18.) In any event, Defendants do not argue that any of the factual information Dr. Maguire reviewed was non-public or non-discoverable, nor does it appear to be. The information instead appears to consist solely of public reports, news articles, executive orders, policies, and studies, as well as types of materials received during discovery (*e.g.,* training materials, DOI investigative material, and documents about previous NYPD protest responses). (Mackie Decl. ¶ 6.)

Because the recognized categories of confidential information do not apply, Defendants seek to expand the definition of confidential information to include information protected by the deliberative process privilege. Mot. at 4. But the only court to examine a similar argument in the related context of disqualification of counsel rejected it. *Raba v. Suozzi*, No. 06-CV-1109, 2006 WL 8435604, at *18 (E.D.N.Y. Nov. 17, 2006) (evaluating a motion to disqualify an attorney

based on deliberative process privilege).[2] In *Raba v. Suozzi*, the County of Nassau moved to disqualify plaintiffs' counsel due to counsel's retention of a non-lawyer and former Director of the Nassau County Office of Labor Relations as an outside consultant. *Id.*, at *1. The County argued that plaintiffs' counsel would gain an "unfair advantage" by learning of privileged discussions among executive staff regarding the termination of certain benefits that were the subject of the litigation. *Id.*, at *17. The court denied the motion. While acknowledging the purpose of the common law deliberative process privilege—to "safeguard the quality and integrity of governmental decisions"—the court found no case where the privilege was used to disqualify counsel rather than to withhold documents in discovery. *Id.*, at *18. The court concluded, "after analyzing existing case law which discusses the nature of this privilege," that "it does not appear that the deliberative process privilege is meant to be used in the context of a motion for disqualification." *Id.*, at *18.

This Court should likewise hold that the deliberative process privilege alone is not a basis for invoking the rare remedy of disqualification. That remedy is aimed at preserving litigation fairness. *See Auto-Kaps, LLC v*, 2016 WL 1122037, at *2. Courts preserve litigation fairness by protecting attorney-client communications, work product, and confidential intellectual property because of the direct relationship to potential revelations of "the [retaining party's] strategies in the litigation, the kinds of expert [the party] expected to retain, [the party's] views of the strengths and weaknesses of each side, the role of each of the [party's] witnesses to be hired, and anticipated defenses.'" *U.S. ex rel. Cherry Hill Convalescent, Ctr., Inc. v. Healthcare Rehab Sys., Inc*., 994 F. Supp. 244, 250 (D.N.J. 1997). The deliberative process privilege asserted here

---

[2] *Raba v. Suozzi* is instructive here because "the reasons behind disqualifying an expert witness are similar to those behind disqualifying an attorney that has a conflict of interest." *Grioli v. Dental Int'l Mach. Corp*., 395 F. Supp. 2d 11, 13 (E.D.N.Y. 2005).

does not extend to "purely factual, investigative matters" or factual observations. *Env't Prot. Agency v. Mink*, 410 U.S. 73, 89 (1973); *see also Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999); *Hopkins v. United States Dep't of Housing & Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991). Rather, it aims to protect "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Grand Cent. P'ship, Inc.*, 166 F.3d at 482. The "personal opinions" of individuals who are not defending the City in any Protest litigation and who reached no "legal conclusions" or "specific factual determinations" (Report at 6) do not implicate concerns about litigation fairness. Their opinions in creating the Report would not reveal the NYPD's litigation or expert strategies, the strength or weakness of the NYPD's defense of this case, or any anticipated defenses. Disqualification due to receipt of deliberative process materials alone has no precedent and, as further explained below, is not warranted here.

## B. Defendants Have Failed to Establish That Disclosures Would Prejudice Defendants if Revealed

Potential prejudice is at the heart of the disqualification inquiry; yet Defendants fail to allege any prejudice, nor could they for the first time on reply. "The disqualification of an expert is not to provide a remedy or punishment for a confidential disclosure, but to prevent the 'risk of prejudice from possible disclosure' and the 'fundamental unfairness' that would arise as a result." *Auto-Kaps, LLC*, 2016 WL 1122037, at *3 (citations omitted); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3085342, at *8 (reiterating that the purpose of disqualification "is to protect the former employer from use of its confidential information *against* itself and not as a general purpose procedural device to prevent the disclosure of privileged or confidential material") (emphasis added); *Agfa-Gevaert N.V.*, 2003 WL 23101783

at *5 ("material questions" include "whether use of . . . confidential knowledge would give [a former employee] an *unfair advantage* in acting as patent expert for [the opposing party]").

As an initial matter, Defendants seem to concede that there is no prejudice to them in Dr. Maguire reviewing purely factual materials that he also had access to as a consultant for the Review Team. Mot. at 6–7 (characterizing only discussions with Review Team attorneys and review of their internal memoranda or draft reports, and not the NYPD or other factual resources, as confidential information). Further, Dr. Maguire has not retained any documents from his consultancy and has not disclosed, nor will he disclose, any information that the NDA he signed protects as confidential: *i.e.,* information he acquired through his consultancy that is not public and was not independently developed by Dr. Maguire prior to that consultancy. (Dr. Maguire Decl. ¶¶ 20, 22); ECF No. 313-3 ¶ 1(a).

Moreover, there is no risk that Dr. Maguire would use the Review Team's opinions and deliberations against Defendants because they have no bearing on the question of the NYPD's liability or any issues Dr. Maguire is opining on. This Court has already suggested that the Review Team's weighing of recommendations for policy reform lacks probative value in this litigation, highlighting that those recommendations came "*after* the events at issue in this lawsuit took place." *In re New York City Policing During Summer 2020 Demonstrations*, No. 20-CV-8924, 2021 WL 4344919, at *2–3 (S.D.N.Y. Sept. 24, 2021).[3] If these deliberations were, indeed, the subject of the litigation, the deliberative process privilege would not apply. *See ACORN v. Cnty. of Nassau*, No. 05-CV-2301, 2008 WL 708551, at *4 (E.D.N.Y. Mar. 14, 2008) ("When the decision making process is itself at issue, particularly in a civil rights action, the

---

[3] The Court made this finding when ruling on a motion to quash a subpoena against another Review Team consultant, Sean Smoot, for production of documents withheld under the deliberative process privilege. *See* ECF Nos. 232-1 (Sean Smoot Subpoena); 250 (Opp'n to Mot. to Quash). Contrary to Defendants' assertion, Mot. at 7, Plaintiff did not issue that subpoena or join that opposition motion.

deliberative process privilege and other privileges designed to shield that process from public scrutiny may not be raised as a bar against disclosure of relevant information; it must yield to the overriding public interest in challenging discrimination.'") (citing *Torres v. City Univ. of New York*, No. 90-CV-2278, 1992 WL 380561, at *8 (S.D.N.Y. Dec. 3, 1992)).

Further, Dr. Maguire is being asked to provide an opinion on the contemporaneous effect of the NYPD tactics used *at* the Protests, not the Review Team's thought process in determining what policy changes to recommend *after* the Protests. Unlike other cases where an expert's opinion must rely on confidential information learned pre-suit to explain, for instance, how a challenged product design functions, the Review Team's ideas regarding post-protest reform are not the subject of the litigation here or Dr. Maguire's likely testimony. *Cf. Auto-Kaps, LLC v*, 2016 WL 1122037, at *4 (dispensing system expert cannot segregate confidential information when opining on a product he helped develop during his two-year consultancy with defendant); *Pellerin v. Honeywell Intern Inc.*, No. 11-CV-1278, 2012 WL 112539, at *1, *3 (S.D. Ca. Jan. 12, 2012) (former Honeywell ear plug designer could not compartmentalize trade secrets learned from ten-year employment when testifying against Honeywell in case about the misappropriation of hearing protection trade secrets). They do not bear on Dr. Maguire's opinion regarding the NYPD's conduct during the Protests, and they do not bear on Plaintiff's claims, which require showings that NYPD officers violated protesters' constitutional rights and that Defendants' policies or practices to date enabled those violations. *See* ECF No. 191 (detailing the applicable legal standards). There is therefore no risk that Dr. Maguire will rely on the Review Team's deliberations to form his opinion.

While Defendants argue that the deliberative process materials that Maguire was privy to are "relevant to" the *subject matter* of this litigation, that is not the standard. Disclosure must be

of relevant material *and* result in prejudice. Defendants do not even attempt to show the requisite prejudice from any disclosures to Dr. Maguire here that might warrant the extreme remedy of disqualification, and their motion fails for that reason alone. *See In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3085342, at *8 (emphasis added) (denying disqualification when the confidential information "will not be used *against* the originator of that information: [disqualification] is too blunt an instrument, especially as there are other, more targeted weapons available under the Federal Rules of Civil Procedure."); *see also TVT Recs. v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 345 (S.D.N.Y. 2003) (denying motion to exclude report of movant's previously-retained expert absent showing that it relied upon any information the expert acquired in the course of his services to the moving party); *Kyocera Corp.*, 2012 WL 4103811, at *9 (denying motion to disqualify in part because "[plaintiff] will not be prejudiced . . . nor will [defendant] obtain an unfair advantage" by the expert's involvement in previous litigation).

### C. The People's Need for Access to Dr. Maguire's Specialized Expertise Outweighs Any Countervailing Interests

Having failed to demonstrate a risk of prejudice from any potential disclosure of the Review Team's deliberations, Defendants have made no case that Dr. Maguire's retention threatens "the public's interest in preserving judicial integrity and fairness." *Auto-Kaps, LLC*, 2016 WL 1122037, at *2. To the contrary, in light of Dr. Maguire's unique knowledge and the lack of potential prejudice from disclosure, "it is disqualification — not the lack of disqualification — that would harm the integrity of the judicial system." *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067, 2019 WL 5634171, at *3 (S.D.N.Y. Oct. 31, 2019). On balance, the public's interest in allowing Dr. Maguire to testify about the NYPD's violent protest response greatly outweighs any concerns raised by Defendants.

Dr. Maguire is the foremost U.S. expert on the interaction between crowds and police forces. *See* (Dr. Maguire Decl. ¶¶ 8, 13–14). He is one a few American scholars who apply two bodies of research, crowd psychology and intergroup communication, to the policing of crowds. *Id.* ¶ 8. Dr. Maguire's expertise in the "evidence-based principles, strategies, and lessons for how to handle protests and other public order events in a manner that can prevent conflict and violence" may be used to contrast the NYPD's Protest response. (Marquez Decl. ¶ 10.) That comparison will help illustrate where the NYPD's tactics and strategies went wrong—whether it was, for example, through the failure to differentiate between violent individuals and non-violent protesters, ineffectual communication with demonstrators, or escalation through premature shows or use of force. As the federal Task Force on 21st Century Policing has noted, the use of evidence-based policing practices at mass demonstrations:

> can make the difference between a peaceful demonstration and a riot. Citizens have a constitutional right to freedom of expression, including the right to demonstrate peacefully. There are strong examples of proactive and positive communication and engagement strategies that can protect constitutional rights of demonstrators and the safety of citizens and the police.

*Id.* ¶ 3.

Defendants have recognized Dr. Maguire's specialized expertise (Mackie Decl. ¶ 7 & Ex. A at 8), and Plaintiff's exhaustive search for other academics or researchers with the same expertise in the United States confirms the same. As part of efforts to identify an expert on crowd psychology and protest policing, Plaintiff investigated and solicited recommendations for numerous potential expert witnesses in this field, examining the backgrounds of approximately fourteen possible experts, Dr. Maguire included.[4] (Marquez Decl. ¶ 4.) Dr. Maguire's extensive

---

[4] These efforts are in addition to Plaintiff's search for an expert with law enforcement experience whose perspective regarding the efficacy and impact of NYPD's law enforcement training and tactics is not informed by the crowd psychology or intergroup communication studies in which Dr. Maguire specializes. (Marquez Decl. ¶¶ 8–9; Maguire Decl. ¶¶ 8, 13.)

experience regarding the social science of crowds, intergroup communication, and the dynamics that exist in the policing of mass demonstrations, including his independent reviews of the NYPD response to the 2011 Occupy Wall Street protests and publication of a police guidebook on protest policing, made him an ideal candidate. *Id.* ¶¶ 9–10. Ultimately, Plaintiff's expert search team excluded all other candidates from consideration due to various reasons, including the lack of the same niche expertise or a deep understanding of American police culture. *Id.* ¶¶ 6–7. Despite a diligent search, Plaintiff has been unable to identify another expert in the United States who possesses the type and breadth of experience as Dr. Maguire. *Id.* ¶ 10.

Courts considering the scarcity of specialized experts have cautioned that setting the bar low for disqualification could lead to a race for expert witnesses, encouraging "unscrupulous attorneys [who might] attempt to create relationships with numerous potential experts at a nominal fee hoping to preempt the ability of their adversaries to obtain expert assistance." *Homeward Residential, Inc.*, 2019 WL 5634171, at *2 (internal citation omitted). Disqualifying Dr. Maguire would deprive the People of their "right to the assistance of experts who possess specialized knowledge" and thus would be contrary to public policy. *Auto-Kaps, LLC*, 2016 WL 1122037, at *2. This fact weighs strongly against his disqualification. *See Topps Co. v. Productos Stani Sociedad Anomina Indus. y Com.*, No. 99-CV-9437, 2001 WL 406193, at *2–3 (S.D.N.Y. Apr. 20, 2001) (finding that lack of an "abundance of experts from which to choose" weighed "strongly" against disqualifying an expert witness).

Further, the very purpose of the People's action is to promote the public's interest in lawful protest policing. The People seek Dr. Maguire's assistance in explaining the effects of the NYPD's tactics and strategies at the Protests through the lens of his social science research on crowds and intergroup communication. This is important expertise that will assist the factfinder

in evaluating the claims in this case and assist New Yorkers, who Plaintiff represents, in understanding the practices that caused the constitutional violations at the Protests. *See Grioli v. Dental Int'l Mach. Corp.*, 395 F. Supp. 2d 11, 13–14 (E.D.N.Y. 2005) (considering on a disqualification motion whether "the public [has] an interest in allowing or not allowing the expert to testify"); *Soc'y for Good Will to Retarded Child., Inc. v. Carey*, 466 F. Supp. 722, 727 (E.D.N.Y. 1979) (noting that, in "public law" litigation seeking broad remedies to cure systemic violations, courts have "relied heavily on the testimony and assistance of experts" to determine liability).

Defendants have failed to establish that the People's retention of Dr. Maguire will prejudice them or be contrary to the public's interest. The Court should therefore deny Defendants' motion to disqualify Dr. Maguire. *See Grioli*, 395 F. Supp. 2d at 14 ("The burden is on the party seeking disqualification to establish these elements").

## II. Any Remedy That the Court May Deem is Necessary Should Be Limited.

Should the Court find that it must take some measure to shield information the Review Team divulged to Dr. Maguire, there are alternative means that the Court may employ short of the drastic remedy of disqualification. As a general matter, "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). To the extent they are exercised, they must "be a reasonable response to the problems and needs that provoke it." *Degen v. United States*, 517 U.S. 820, 823–24 (1996). For instance, the Court may impose a protective order or limiting instruction restricting reliance upon or disclosure of any confidential information. *See Agron v. Trustees of Columbia Univ. in City of New York*, 176 F.R.D. 445, 451 (S.D.N.Y. 1997) (permitting testimony of defendant's expert with limiting instruction not to discuss prior

retention by plaintiff); *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3085342, at *8 (suggesting that party could challenge the use of confidential information at trial through a motion *in limine*); *Wang Lab'ys, Inc. v. CFR Assocs., Inc.*, 125 F.R.D. 10, 13 (D. Mass. 1989) (finding disqualification of expert unwarranted but issuing protective orders prohibiting expert's disclosure of confidential information); *Space Sys./Loral v. Martin Marietta Corp.*, No. 95-CV-20122 SW, 1995 WL 686369, at *4 (N.D. Cal. Nov. 15, 1995) (limiting expert's testimony to opinion based on information he obtained prior to or subsequent to his employment with the plaintiff).

Moreover, the Federal Rules of Civil Procedure provide a level of protection to exclude any potential taint. "Experts . . . are subject to deposition, to cross examination, and are obligated to reveal any sources they rely upon in forming their opinion." *Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1086 (C.D. Cal. 2001) (citing Fed. R. Civ. P. 26(b)(4)). Defendants' NDA, and potential contractual claim for any violation thereof, adds yet another layer of protection from prejudice. In combination with any delimiting court instruction or order, these natural boundaries to what Dr. Maguire may consider in formulating his opinion suffice to defuse any concern with allowing his testimony.

## CONCLUSION

Defendants have failed to meet their burden of showing that the Review Team divulged confidential and prejudicial information to Dr. Maguire or that his retention would violate public policy. For these reasons, the Court should deny Defendants' motion to disqualify Dr. Maguire.