**Declaration of Dr. Edward R. Maguire in Support of
Plaintiff's Opposition to Defendants' Motion to Disqualify**

I, Edward R. Maguire, hereby declare pursuant to 28 U.S.C. § 1746, under penalty of perjury, as follows:

1. I am a Professor in the School of Criminology and Criminal Justice at Arizona State University. For a six-month period from July 2020 through December 2020, I was retained by the New York City Law Department (the "Law Department") as a consultant for the public report mandated under New York City Executive Order 58 and was subsequently retained as an expert by the State of New York in this case. I submit this declaration in response to the motion by the City of New York, Mayor Bill de Blasio, and Terence A. Monahan (collectively the "Defendants") seeking to disqualify me as an expert witness for Plaintiff, the People of the State of New York, by their Attorney General, Letitia James (the "Plaintiff"). In particular, I submit this declaration to explain the specialized nature of my area of expertise and the limited scope of my work with the Law Department.

## I. I Am the Preeminent Expert on the Use of Crowd Psychology and Intergroup Communication to Shape Protest Policing Strategies in the United States

2. I received my Ph.D. in Criminal Justice from the State University of New York at Albany in 1997. My dissertation, "*Context, Complexity, and Control in Large Municipal Police Organizations*," developed and tested a theoretical model to explain the variation in structure of large municipal police agencies.

3. I have over 20 years of academic teaching experience and have held positions in universities across the nation, including in the Arizona State University School of Criminology and Criminal Justice, the George Mason University Administration of Justice Department, and the University of Nebraska at Omaha Department of Criminal Justice.

4. During my tenure, I have also worked as a Social Science Analyst at the U.S. Department of Justice's Office of Community Oriented Policing Services (COPS) and as an Associate Social Affairs Officer with the United Nations Crime Prevention and Criminal Justice Branch.

5. I am also the chairman of the Research Advisory Board of the Police Executive Research Forum (PERF). That Board is composed of academics, researchers, and police executives who advise PERF's efforts to advance policing research. The inclusion of practitioners provides an important perspective on the real-world application of police strategies and tactics and the feasibility and efficacy of proposed reforms.

6.    Throughout my career, I have focused on the study of policing and violence.  I have led several externally-funded national studies of police organization and innovation within the United States, and am particularly interested in using social science research evidence to improve police agencies nationally and abroad.

7.    For the past decade, my policing research has focused on police response to protests, procedural justice and legitimacy, officer safety and wellness, the effectiveness of violent crime control initiatives, and the influence of the COVID-19 pandemic on police practices.

8.    My research regarding protests focuses on the use of two social science disciplines— criminology and social psychology—to develop fairer and more effective strategies for policing protests and other public order events, particularly within the context and culture of American policing. The social psychology perspectives I rely upon are based on two bodies of research, one focusing on crowd psychology and the other on intergroup communication. Both of these bodies of research first developed abroad, at the University of Bristol in the U.K. The application of these bodies of research to the policing of crowds has been studied by few American scholars, including myself. The most related academic discipline in the United States is the study of social movement theory, which seeks to explain why social mobilization occurs, but, unlike my research, attempts no practical application to inform policing strategies and tactics.

9.    Additionally, I have written extensively about my expertise in this area: I have written or edited seven books and contributed to more than 100 journal articles and book chapters on topics related to policing and violence.  As related to protest policing, I recently co-authored (together with research specialist Megan Oakley) *Policing Protests: Lessons from the Occupy Movement, Ferguson & Beyond: A Guide for Police*, a guidebook for police that incorporates lessons from the Occupy Movement that was prevalent in New York and describes evidence-based approaches to policing protests. It has been distributed to more than 1,000 police agencies in the United States and abroad. I also recently co-edited a book entitled, *The Rowman & Little Handbook of Policing, Communication, and Society*, that combines research and theory in criminology, psychology, and communication to explore how communication intersects with policing in areas like police culture, police innovation, and crowd management.

10.   I have also authored or contributed to numerous articles examining the psychological and public safety impact of police strategies and tactics at large protests, including, *The Effects of Procedural Justice on Civil Disobedience: Evidence from Protesters in Three Cities*, *Attitudes toward the use of Violence against Police among Occupy Wall Street Protesters*, *Attitudes among Occupy DC Participants about the Use of Violence against Police*, *The Effects of Procedural Injustice on the Use of Violence Against Police by Occupy Wall Street Protesters*, and *New Directions in Protest Policing*. My *curriculum vitae*, which is attached as Exhibit A, reflects my additional publications.

11.     I have conducted investigations and provided assessments of American police departments' responses to protests in Phoenix, Columbus, and Seattle.

12.     I am regularly invited to speak on topics related to crime and justice throughout the United States and around the world, including Australia, England, and Honduras. Over the past year and a half, I have conducted protest policing seminars and workshops with numerous governmental and non-governmental organizations, reviewing my research as well as guidance from my guidebook, *Policing Protests: Lessons from the Occupy Movement, Ferguson & Beyond: A Guide for Police*.

13.     I am unaware of any other expert in the United States with analogous experience and expertise on the intersection between protest policing, crowd psychology, and intergroup communication.

14.     As a result of my previous education, body of scholarship, and experience, as well as the scarcity of American academics in this field, I consider myself the preeminent expert on the intersection between protest policing, crowd psychology, and intergroup communication in the United States.

## II.     My Services Consulting with the New York Law Department Report Team Were Limited in Duration and Scope

15.     In July 2020, pursuant to New York City Executive Order 58, I, along with two other consultants, were retained as consultants by the New York City Law Department in connection with the Department's independent investigation regarding the New York City Police Department's ("NYPD") response to the protests that took place throughout New York City from May 28 to June 20, 2020.

16.     My engagement with the Law Department lasted for six months, from July 8, 2020 to December 18, 2020, at which point the Law Department published its final report.

17.     Prior to the start of my work with the Law Department, I signed a standard form detailing my retention as a consultant with the Department. I also executed a Consultant Non-Disclosure Agreement with the Law Department (the "NDA"), which defined the terms of confidential information that governed my work. In particular, the NDA excluded from its definition of confidential information any information "(i) previously known by Consultant without a duty to keep such information confidential; (ii) generally available to the public; or (iii) independently developed by Consultant prior to his or her engagement by NYCLAW."

18. I drafted a strategic checklist that was included in the final report. This checklist was synthesized from my previous years of research on protest policing and general best practices I have identified, some of which were included in my guidebook incorporating lessons from the Occupy Movement. This guidebook was funded by the United States Department of Justice and is freely available to the public.

19. In addition to authoring the checklist, I participated in team meetings and reviewed drafts of the Report, though I do not recall the particulars of their substance.

20. I did not retain copies of any documents or files the Law Department provided to me in connection with my consultancy.

21. I did not attend or participate in any discussions with the Law Department regarding future litigation or any related strategy.

22. I have not disclosed, and will not disclose, any confidential information as defined by the NDA with the Office of the New York State Attorney General.

23. I declare under penalty of perjury that the foregoing is true and correct.

Dated: Phoenix, Arizona
November 19, 2021

_____
Edward R. Maguire