**Declaration of Lillian M. Marquez in Support of Plaintiff's Opposition to Defendants' Motion to Disqualify Expert Witness Dr. Edward R. Maguire**

I, Lillian M. Marquez, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am an Assistant Attorney General in the Office of the New York State Attorney General (the "OAG"), counsel of record for Plaintiff the People of the State of New York (the "People") in this action. I have personal knowledge of the matters set forth herein and make this declaration in support of the People's opposition to the motion by the City of New York, Mayor Bill de Blasio, and Terence A. Monahan (collectively the "Defendants") to disqualify Dr. Edward R. Maguire.

2. For the past eight months, I have been part of the team of attorneys within the OAG working to identify and retain an expert or multiple experts with the experience and knowledge to testify about the significant issues at the heart of this civil rights litigation, which seeks declaratory and injunctive relief to end unconstitutional policing at protests by the New York City Police Department (NYPD).

3. Specifically, the OAG sought an individual with expertise on crowd psychology and how that research informs policing practices at protests because, as the federal Task Force on 21st Century Policing has noted, the use of evidence-based policing practices, such as those informed by social science research,

> can make the difference between a peaceful demonstration and a riot. Citizens have a constitutional right to freedom of expression, including the right to demonstrate peacefully. There are strong examples of proactive and positive communication and engagement strategies that can protect constitutional rights of demonstrators and the safety of citizens and the police.[1]

As described below, the OAG's search identified only one lead American expert on this critical topic, Dr. Maguire.

**I.     The OAG's Search for a Crowd Psychology Expert**

4. The OAG initiated its search for a crowd psychology expert by identifying scholars who work in that discipline through extensive reviews of academic and other published literature, expert reports submitted in similar civil rights litigation, and recommendations of civil rights attorneys and policing practices experts. Through this process, I and the OAG team identified approximately 14 potential crowd psychology experts.

---

[1] President's Task Force on 21st Century Policing, *Final Report of the President's Task Force on 21st Century Policing* (Washington, D.C., Office of Community Oriented Policing Services, 2015), http://www.cops.usdoj.gov/pdf/taskforce/TaskForce_FinalReport.pdf.

5. Upon identifying potential experts, I and other OAG team members further reviewed each candidate's published works and experience serving as an expert.

6. Out of the fourteen candidates, the OAG narrowed its search to three who appeared to be sufficiently trained to testify to the intersection between proper police practices and crowd psychology. The OAG excluded several candidates at this stage due to lack of experience in protest policing. For example, a number of candidates had experience solely with examining individual use of force incidents, police pursuits, and/or proper training procedures rather than large-scale events. Other candidates had only published a handful of studies or articles related to protest policing, had no expertise in crowd psychology, and/or had conflicts of interest that would otherwise disqualify them.

7. I and other OAG team members interviewed the three remaining candidates. Of the three, one did not in fact have particular expertise regarding protest policing and the crowd psychology of mass demonstrations. A second candidate was based in the United Kingdom, making coordination difficult. The third, Dr. Maguire, was recommended by multiple experts whom I interviewed. The OAG believed the two remaining experts to be excellent candidates for the position, but ultimately decided to engage Dr. Maguire due to his experience with United States protest policing.

8. Plaintiffs in this and the consolidated actions have identified experts with law enforcement backgrounds to provide a distinct perspective on protest policing practices and/or use of force incidents. The OAG, in particular, has hired Hassan Aden, a former Chief of Police for the Greenville Police Department, and former director of the Research and Programs Directorate of the International Association of Chiefs of Police, a role in which he oversaw a large portfolio of operational programs aimed at promoting improved police practices among police leaders.[2] His experience also includes providing consultation and monitoring services for police departments.[3]

9. However, unlike Dr. Maguire, they do not have expertise in crowd psychology and intergroup communication and thus cannot use social science research to explain, for example, how a police force's tactics and strategies may themselves escalate tensions and violence at a mass demonstration; the fallacy of viewing crowds as homogenous and importance of differentiating between violent and non-violent protesters when taking enforcement actions; and how to effectively communicate orders to demonstrators, including those which are

---

[2] Resume of Hassan M. Aden, No. 15-cv-1046 (N.D. Ohio), ECF No. 266-1 https://clecityhall.files.wordpress.com/2019/07/7-17-19-ex-a-resume-hassan-aden.pdf.

[3] *Id.*

spontaneous or loosely organized through social media. Plaintiff's law enforcement expert also has not independently studied the NYPD's response to the Occupy Wall Street protests.

10. OAG is confident that Dr. Maguire is the best positioned expert witness in the United States to testify regarding the import of social science research in this case, due to his years of experience, education, and scholarship regarding "evidence-based principles, strategies, and lessons for how to handle protests and other public order events in a manner that can prevent conflict and violence."[4] Knowledge of how crowds, and particularly mass demonstrations, interact with police particularly within the context of American policing has proven to be specialized knowledge and OAG has failed to locate an available alternative in the United States who has the breadth of experience possessed by Dr. Maguire, despite our best efforts to do so.

11. As a result of the efforts detailed in this Declaration, I believe that Dr. Maguire is the foremost expert in his field in the United States, and that his disqualification would cause hardship to the Plaintiff in seeking to retain a similarly-positioned expert witness to testify to proper protest policing practices.

## II. Defendants' Objections to the OAG's Retention of Dr. Maguire

12. OAG first advised Defendants' counsel of its intention of retaining Dr. Maguire in a letter dated June 16, 2021.

13. Counsel for Defendants, Dara L. Weiss, responded to that letter on June 23, 2021, stating, "[W]e believe there would be a conflict if Dr. Maguire worked on this matter for any person or entity adverse to the City on this or a substantially related matter."

14. Plaintiff's counsel Jaclyn Grodin requested a meet and confer to discuss Defendants' objection and the parties met on June 28, 2021. During that meet and confer, Defendants' counsel, Elissa Jacobs, asserted that Dr. Maguire received privileged information during his consultancy with a non-litigation team within the Law Department (the "Review Team") charged with publishing the December 2020 Corporation Counsel report on the protests. Ms. Jacobs advised that she would provide OAG with further detail for the basis of that privilege assertion at a later date.

15. On July 1, 2021, Ms. Jacobs asserted that "both the information that the expert was provided with (both in document form and in consultation with our office) is protected from disclosure by the attorney work-product privilege and the deliberative process privilege" and offered to provide further detail.

---

[4] Edward R. Maguire & Megan Oakley, *Policing Protests: Lessons from the Occupy Movement, Ferguson & Beyond: A Guide for Police* (2020), https://www.hfg.org/wp-content/uploads/2021/06/PolicingProtests.pdf.

16. On July 7, 2021, Jaclyn Grodin and I met with Ms. Jacobs and Karen Griffin, Chief Ethics Officer for the Law Department, to discuss the factual basis for Defendants' assertion of privilege. On that call, Ms. Jacobs withdrew Defendants' assertion that the work product privilege applied to any documents provided to Dr. Maguire because the Review Team was prohibited from participating in the defense of the City of New York in any protest litigation and therefore did not create documents in anticipation of litigation. Ms. Jacobs then asserted that the law enforcement and deliberative process privilege protected information provided to Dr. Maguire and advised that she would provide OAG with more details as to the scope of that information.

17. On July 15, 2021, Ms. Jacobs emailed further details regarding the total number of conversations and drafts exchanged with all three of the Review Team's consultants claimed to be protected by the deliberative process privilege but did not provide further explanation as to why these communications should disqualify Dr. Maguire.

18. On September 1, 2021, the People notified Defendants that they had retained Dr. Maguire as a testifying expert.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Brooklyn, New York  
      November 22, 2021

Respectfully submitted,

LETITIA JAMES  
*Attorney General of the State of New York*

By: _____  
Lillian M. Marquez, *Assistant Attorney General*  
Office of the New York State Attorney General  
Civil Rights Bureau  
28 Liberty, 20th Floor  
New York, New York 10005  
(212) 416-8250