```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

In re:                            :
                                        Docket #20cv8924
 PAYNE, et al.,                   : 1:20-cv-08924-CM

                 Plaintiffs,      :

  - against -                     :

 DE BLASIO, et al.,               : New York, New York
                                    June 15, 2021
                 Defendants.       :

------------------------------------: TELEPHONE CONFERENCE

                    PROCEEDINGS BEFORE
             THE HONORABLE GABRIEL W. GORENSTEIN,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Payne Plaintiffs:    LEGAL AID SOCIETY
                         BY:  COREY STOUGHTON, ESQ.
                         199 Water Street
                         New York, New York 10036

For Sow Plaintiffs:      COHEN & GREEN
                         BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, new York 11385

For Sierra Plaintiffs:   RICKNER PLLC
                         BY:  ROB RICKNER, ESQ.
                         14 Wall Street, Suite 1603
                         New York, New York 10005

For Wood Plaintiffs:     KAUFMAN LIEB LEBOWITZ & FRICK LLP
                         BY:  ALISON FRICK, ESQ.
                         10 E. 40th Street, Suite 3307
                         New York, New York 10016

Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

For Yates Plaintiff:         STOLL, GLICKMAN & BELLINA, LLP
                             BY:  ANDREW STOLL, ESQ.
                             300 Cadman Plaza West, 12th Floor
                             Brooklyn, New York 11201

For Plaintiff People         NEW YORK STATE OFFICE OF
of the State of New          THE ATTORNEY GENERAL
York:                        BY:  TRAVIS ENGLAND, ESQ.
                             28 Liberty Street
                             New York, New York 10005

For Defendants:              NEW YORK CITY LAW DEPARTMENT
                             BY:  DARA WEISS, ESQ.
                                  ELISSA JACOBS, ESQ.
                             100 Church Street
                             New York, New York 10007

<u>**INDEX**</u>

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1

```
 1                                                      4
 2              THE CLERK:  Payne, et al. v. De Blasio, et al.,
 3   20cv8924.  Counsel, please state your names and
 4   appearances for the record starting with plaintiffs.
 5              MS. COREY STOUGHTON:  This is Corey Stoughton
 6   for the Payne case for the plaintiffs.
 7              MX. REMY GREEN:  This is Remy Green for the Sow
 8   plaintiffs, and for the recording, if anyone orders the
 9   transcript, my name should appear Mx. Green, M-X-period,
10   rather than Mr. or Ms.
11              MR. ROB RICKNER:  Rob Rickner for Sierra
12   plaintiffs, good morning.
13              MS. ALISON FRICK:  Good morning, this is Alison
14   Frick for the Wood case.
15              MR. ANDREW STOLL:  And good morning, this is
16   Andrew Stole for Cameron Yates.
17              MR. TRAVIS ENGLAND:  Good morning, this is
18   Travis England for plaintiff People of the State of New
19   York.
20              THE COURT:  And for defendants.
21              MS. DARA WEISS:  Good morning, this is Dara
22   Weiss for the defendants from the New York City Law
23   Department.
24              MS. ELISSA JACOBS:  (indiscernible)
25              THE COURT:  I think we better try that again.
```

```
 1                                                     5
 2             MS. JACOBS:  Sure, this is Elissa Jacobs also
 3   from Corporation Counsel for the defendants.
 4             THE COURT:  Okay.  Who will be speaking, who is
 5   the attorney who will speaking for plaintiffs?
 6             MS. STOUGHTON:  Following the Judge's order,
 7   we've got one attorney to speak to each of the three
 8   issues that we've raised, if that's all right with the
 9   Court, and the way we've organized it is that, this is
10   Corey Stoughton from the Payne case who will speak for all
11   plaintiffs on the first issue that we raise, the lack of
12   production.  Mx. Green, I'm sorry, yes, Mx. Green will
13   speak on the second issue, the responses and objections.
14   And Mr. Rickner will speak on the third issue about the
15   interrogatories.
16             THE COURT:  Okay, I, the interrogatories I guess
17   I can accept as separate, I'm not sure I understand one
18   and two to be quite as separate as you think they are but
19   we'll see how this all works.  Who's speaking for the
20   defendants?
21             MS. WEISS:  For the most part, Dara Weiss will
22   be speaking for the defendants.
23             THE COURT:  Okay.  So I've read both sides'
24   letters and I mean I think the production/objection
25   problem are to some degree mixed. Because what, I think
```

6

1

2   what I would like to see is, you know, some way to give

3   more transparency to the plaintiffs as to what the

4   defendant's process is. So here the defendant gets a

5   number of interrogatories. It thinks some are burdensome,

6   overbroad, various other objections, it certainly is going

7   to have to make clear under the amendments to the rules

8   whether it's withholding anything under these objections

9   but, you know, these are significantly broad document

10  requests, I'm not saying necessarily overly broad, but

11  they obviously are going to require a good deal of work by

12  the City.

13         So, you know, the City is potentially being

14  given the advantage of not having to produce it all for a

15  number of weeks completely, but it also in my view needs

16  to do something to express the algorithm, I guess for lack

17  of a better word, that its using to put together this

18  production that it's doing because, you know, what I don't

19  want to have happen is to find, for the plaintiffs to

20  learn for the first time on July 31 that, you know, some

21  whole category or some avenue of production was not

22  pursued that they think they have a right to have pursued,

23  and then they don't find out for six week something that

24  they could have found out tomorrow.

25         So, for example, the defendants could say, you

1

2  know, I don't even know if we've gotten into ESI but we'll

3  put that aside for the moment, they could say, you know,

4  we are doing, we are searching, you know, the hard files

5  or non-email files of these custodians and we are, you

6  know, I can't even imagine what the algorithm is because I

7  don't know enough about how documents are kept by the

8  police department, but I'm just, I just, I don't see, I

9  see a disadvantage to everyone if it's a completely closed

10  door that the plaintiffs don't know what it is the City is

11  doing to conduct the search.

12          So since I put a burden on the City I'm going to

13  turn to defendants to address what they think they could

14  do to be forthcoming about what their algorithm is?

15          MS. WEISS:  Yes, Your Honor, this is Dara Weiss.

16  Not a problem at all, I have actually been spending the

17  last couple of days as I had offered the plaintiffs during

18  a meet and confer last week to amend our responses to try

19  to specify what our objections are and to offer what we

20  would be producing. And also ask I had advised them during

21  our meet and confer last week, we do intend to produce

22  really the great majority of what they have asked for.

23          As you mentioned, they have asked for really

24  broad categories of documents, but we do, the defendants

25  and the City do understand why they're asking for most of

8

what they're asking for. They do have Monell claims.

These were demonstrations that took place lover a long

period of time.  Most of what they're asking for is not

outside the realm of what we think is appropriate.  Some

of it is very burdensome, we're not sure yet what is

overly burdensome.

        For example, they ask for some documents back

form the WEF demonstrations which took place in New York

City in 2002. I know from experience because I worked on

the litigations that arose out of those demonstrations

that those are, you know, paper files, not computerized,

that had been archived after those litigations were

finished and put into storage, I can't even imagine where.

I know at one point there was a flood in one of the

archive sites.  I, although I haven't confirmed this with

the police department, I would imagine something like that

might be overly burdensome, especially in light of the

value they might be to this litigation considering those

were things that took place 20 years ago.

        But we do intend to produce really, I mean more

than even just the great majority of the documents that

plaintiffs are asking for.  It is taking a good bit of

time, especially now in light of the recent unauthorized

access that occurred last week within the Law Department's

9

IT environment, a lot of the progress that we have made in reviewing the documents that we currently do have has kind of ground to a standstill. So it's taken longer than we had hoped to get some of these documents out, you know, whereas we had sort of 24/7 access to these documents working remotely, we don't have quite that freedom of access right now.

So, you know, we certainly do intend to get a huge amount of these documents that have been requested out.  We are certainly more than happy to, you know, as you put it, give them the algorithm of what we're thinking we're going to produce and provide more specificity on what we won't produce and why, be it privilege, or burden, or whatever it may be.

THE COURT:  Okay, well the algorithm doesn't necessarily align with objections, so the more information you can give on the objections and what they mean and whether they mean the withholding of documents, I certainly want that, and it sounds like you're planning to do that, and perhaps we should talk about a date by which you can do that.  But I was thinking something beyond that which is to the extent you're using a process and saying, and you gave an example which is we will or we will not be able to find these documents from this other

10

demonstration.  Or you will or will not be looking to some
other custodians because it's too burdensome or they're
not available. I'd like that to be disclosed, as well, as
soon as you know it.  So that, I mean it would come out in
some form eventually anyway, I just want it to come out
essentially sooner rather than later and in a way as soon
as you know it.  So if you know you're not going to do a
particular type of search or if you know you are doing a
particular type of search, it seems like there needs to be
a way you can express that so it doesn't come as a
surprise when you announce your document production is
finished.  Do you think there is something you can do to
do that, Ms. Weiss?

          MS. WEISS:  Yes, we can absolutely do that, Your
Honor.

          THE COURT:  Okay.  And what was the plan for
providing revised responses and objections in terms of the
date?

          MS. WEISS:  As I mentioned earlier, I have been
working on that.  Revised responses and objections, as I
put in my letter, I can have within five business days, I
can have them to plaintiffs by Friday, possibly even
before. But just to be safe I would say Friday. And that's
not necessarily going to be with what Your Honor just, you

11

know, noted with what documents we're definitely not

producing because that would require, you know,

consultation with our clients and they might not know

immediately what the burden would be for each particular

document. But we could do that as soon as we find out,

with each particular thing that we think might be

problematic. Some we might know immediately, some might

take a little more digging to figure out if it's something

would be much too difficult or impossible to find.

THE COURT:  Okay.

MS. WEISS:  You know, I'm just not sure as I sit

here.

THE COURT:  I'm envisioning two documents. One

is the classic responses to the document requests with

objections. I'm also envisioning a letter that is

descriptive of what you are doing and perhaps what you are

not going to do with respect to searching for documents.

Can you provide such a letter by Friday that will be

meaningful to the plaintiffs?

MS. WEISS:  I can try but I can't promise

exactly how descriptive and meaningful it will be, Your

Honor, by Friday I just don't know.

THE COURT:  Well if it was the following week,

would that be more descriptive and meaningful?

```
 1                                                    12

 2            MS. WEISS:  Absolutely.

 3            THE COURT:  Okay, well why don't we hear, before

 4  we --

 5            MX. GREEN:  Your Honor, this is Remy Green, may

 6  I say something on this point?

 7            THE COURT:  Yes, I was about to turn to the

 8  plaintiffs.

 9            MX. GREEN:  Okay. I suppose what I would like to

10  say on this is the Court ordered rolling productions to

11  begin in April. We've been supposed to have productions

12  rolling even, you know, by defendants' standards, you

13  know, as soon as they finished a batch it was supposed to

14  go out. So we know they haven't finished a batch. And they

15  have already objected to things as burdensome, right?  I

16  think, you know, I think they called every single document

17  burdensome.  So it's very troubling to me to hear that

18  they don't know what the burden is because you're supposed

19  to, especially (indiscernible) amendments, explain what

20  the burden is. And I, you know, I understand the situation

21  we're in but it doesn't seem ,fair to me or compatible

22  with the scheduled the Court has set to not find out what

23  they think, you know, what they're doing until the end of

24  June, you know.  This had already gotten us to a place

25  where we are severely prejudiced, we are required to
```

1

2  identify our experts by August 1, there's a September

3  deadline for class certification motions.  There are any

4  number of any deadlines and as Your Honor identified,

5  right, the schedule is built around the idea that we are

6  getting productions and we have been getting productions

7  since June. So to only find out what searches they're

8  doing by the end of next week, that's just not workable I

9  don't think.

10        And I'm sorry, I said August 1, I mixed up

11  sevens and eights in my head, what I meant was the expert

12  deadline is July 1.

13        THE COURT:  Right.  Well, I mean, I mean the

14  difference between, I'd like to get, you know, useful

15  information out of them.  So they already have something

16  they have to produce by this Friday, I want them to get

17  those objections, right, and I think that's going to go a

18  long way to telling us where we are.  But I didn't get a

19  chance to ask Ms. Weiss, are you, what is the plan on

20  actually producing documents and, you know, there has

21  already been a mention that you had to collect a whole

22  bunch of documents for the Attorney General already, it

23  seems like those would be easily producible, though, I

24  mean maybe that's not something that plaintiffs care

25  about.  Perhaps, do the other plaintiffs have the Attorney

1  General documents?

2

3          MS. STOUGHTON:  Your Honor, this is Corey

4  Stoughton, we have access to the documents that were

5  produced to the Attorney General, but it's important to

6  note that those documents are fairly limited and were not

7  complete even at the time they were produced. And, you

8  know, there are other batches of documents that I think, I

9  would assume wound up in what Ms. Weiss suggested, you

10  know, that she's put together for other investigations,

11  the Law Department's investigations, the Department of

12  Investigation's investigation. And I think it would be,

13  you know, as Your Honor was getting to, really critical,

14  and Mx. Green was pointing out, you know, it's very clear

15  that the production of the revised responses and

16  objections and a letter will be very useful information

17  that will help move things along.

18          But, you know, I think all of us have the

19  experience that you don't really know what's going to

20  happen until you start getting the documents. And so we'd

21  really ask for a clear deadline to start rolling

22  production and get those documents moving which is really

23  critical to maintain, you know, stay on the schedule that

24  the Court has set.

25          THE COURT:  All right.  So, Ms. Weiss, I was

15

1
2  about to ask you when can we actually start getting some
3  documents?
4       MS. WEISS:  Before I answer that, I just want to
5  point out that the plaintiffs have subpoenaed both the
6  Department of Investigation and two separate parties who
7  did work with respect to the investigations that the
8  Corporation Counsel did with regard to the protests last
9  summer. So they're also going other routes to try to get
10 documents.
11      THE COURT:  I'm sorry, if I could just, I'm a
12 little, I'm confused. I would have thought DOI was part of
13 the City and that that would be your responsibility to
14 produce.
15      MS. WEISS:  Yeah, they are, so we're not quite
16 sure why they felt the need to subpoena the documents from
17 DOI, but I did want to point that out.  We --
18      THE COURT:  Well it doesn't answer my question
19 in the least, so why don't we try to answer my question
20 which is when there could be actual production of
21 documents by the City, whoever it is?
22      MS. WEISS:  We have the documents in our
23 possession, they have to be reviewed by our office for
24 privilege which is being done right now.  Unfortunately,
25 because of the unauthorized access and the IT problems it

1                                                                    16

2    caused, it is going slower, that has come to a bit of a

3    slowdown. And then it's got to be put in a format which

4    was agreed, the electronic format which was agreed between

5    and among the parties. I don't have a date by which that

6    can be done.

7           I do have other documents that I can access

8    quicker that I could send out.  We've been sending out, a

9    lot of videos have been produced. I have other documents

10   that I can send out. But the documents from the DOI

11   report, I just, there are so many thousands of pages and

12   the reviews are slow. So I just, I don't know, I can't put

13   a date, you know, certainly before the July 31 deadline,

14   but beyond that I just, I don't know what, you know, I can

15   give a date but I just don't know that we would be able to

16   finish it by that point.

17          THE COURT:  But the question is not finishing

18   it, the question is the rolling production which was

19   apparently agreed to and, in fact, I think perhaps

20   ordered.  So the problem is there's a lot of mystery and

21   the mystery, the veil of mystery needs to be lifted. So

22   when you say there's thousands of documents, I don't know

23   how many thousands, I don't know how many people are

24   assigned to reviewing them, I don't know how long it's

25   going to take. I don't know if you have 1,000 documents

1

2  sitting ready right now. I don't know if you have zero

3  ready right now.  this is part of what needs to be

4  disclosed and what I was referring to as the algorithm.

5  Separate and apart from the objections, there has to be

6  much more transparency about what you have and what you're

7  going to do so that I can make a judgment about whether,

8  about, well before I make a judgment, so that you can, the

9  plaintiffs can make a judgment about whether they can make

10 an application to require you to do more or not. Right

11 now, if they have no information then, and I have no

12 information, my reaction is to say, you know, it's not

13 acceptable to produce these documents on July 31, I want

14 you to produce, you know, 1,000 documents next Friday.

15         Now, I don't want to fly blindly like that, I

16 need to have information in order to make judgments about

17 that. So I don't know that we can wait until a week from

18 Friday to get what I'm calling the algorithm letter. I

19 think you need to be, do something by, if not Friday,

20 Monday, that sets forth what you're doing, what you

21 collected, what it's going to take, how many people are

22 doing it so that you can make your case first to the

23 plaintiffs about why what you're doing is reasonable, if

24 that's what you think it is, and if they don't, they can

25 come to me and say, you know, no, this has got to happen

1

2 much faster.

3          So, you know, I'm willing to give you the Friday

4 on the objections and Monday on this letter that describes

5 exactly what it is you're doing, and then if we need to

6 have, and maybe it makes sense to plan another conference

7 after you explain all that so that we can see where we

8 are.  But right now, if you don't give me any information,

9 Ms. Weiss, then I have to make judgments without

10 information and you may be very unhappy with those.

11          MS. WEISS:  I will certainly be able to get more

12 information.

13          MX. GREEN:  Thank you, Judge.

14          THE COURT:  Mx. Green, go ahead.

15          MX. GREEN:  Somewhere between a request and a

16 suggestion, it might make sense to calendar weekly

17 conferences or something like that, maybe biweekly, from

18 now until July 31, so that rather than going through kind

19 of I think ultimately with the useless meet and confer

20 process in this instance, you know, we can hammer these

21 things out on the schedule the Court has set.

22          THE COURT:  No, I have a trial that's starting

23 next week and continuing, and this is one of several

24 hundred cases I have. I can't promise that I'm going to be

25 able to have a conference on this every week and, in fact,

1                                                                19

2    it would hurt the process that I want to be used which is

3    a discussion among counsel and not an assumption that the

4    Court is necessarily going to resolve everything.

5              So I said I'm willing to set something up, I

6    think, as it turns out, well, if we're going to do this

7    next week, unfortunately it's going to have to be at five

8    because I'm going to have a trial all day. I'm willing to

9    try one conference next week to see if that helps.  So why

10   don't we tentatively put this down for Thursday, the 24th,

11   at 5 p.m.  And, you know, I'll take a break from the trial

12   if it goes late to do this. It's possible that, you know,

13   I might have to do a jury charge that evening and I won't

14   be able to do it, so if suddenly postpone at the last

15   minute, don't be surprised, it will just probably be for a

16   couple of days until the following week, but I don't know

17   what night I'm going to have to do the jury charge. So

18   we'll say the 24th at 5 p.m., any problem from the

19   plaintiffs for that time?

20             MS. STOUGHTON:  Your Honor, for Payne, that's

21   fine with us.

22             THE COURT:  Okay, from defendants?

23             MS. WEISS:  Sorry, Your Honor, I couldn't find

24   my unmute button, that is fine for the defendants.

25             THE COURT:  Okay.  So the same dial-in number is

20

1

2  for the public and for the attorneys, either way I should

3  have said at the beginning that any recording of the

4  proceeding is prohibited and dissemination of this

5  proceeding is also prohibited. Obviously, the parties can

6  order the transcript.

7          Okay, I'm not sure what --

8          MS. STOUGHTON:  Your Honor?

9          THE COURT:  Yes?

10          MS. STOUGHTON:  I'm sorry, this is Corey

11  Stoughton for the plaintiffs, I very much appreciate the

12  order for the algorithm letter and the updated responses

13  and objections and the conference next week. In light of

14  the fact that the conference won't happen until the 24th,

15  and especially with the possibility that it might be put

16  off further, I'd like to respectfully ask that the Court

17  also order the City to begin rolling production. I

18  recognize that we don't know how many documents the City

19  actually, that Corporation Counsel, rather, actually has

20  in its possession, but given that rolling production was

21  meant to begin on April 24, it's inconceivable to me that

22  they cannot begin rolling production immediately of at

23  least some of the documents that have been reviewed or

24  that are being reviewed. And if we don't get started on

25  that production of documents, it's putting such pressure

21

1

2  on this tight schedule that I know there are many people

3  in the plaintiffs' group that are concerned about meeting

4  other deadlines. So if that's something the Court would

5  consider making part of today's order, the plaintiffs

6  would very much appreciate it.

7            THE COURT:  Ms. Weiss, is there literally

8  nothing ready?

9            MS. WEISS:  There is, Your Honor.  Plaintiffs

10  asked us to prioritize --

11            THE COURT:  There is meaning there is literally

12  nothing, or there is not literally --

13            MS. WEISS:  No, no, there is, and we have been

14  producing video which plaintiffs asked us to prioritize.

15            THE COURT:  Wait, just forget the video, we now

16  you produced video, they would like some documents, are

17  there literally no --

18            MS. WEISS:  There are documents that we can --

19  there are documents that we can serve, as I mentioned

20  earlier, and we will, we will produce them.

21            THE COURT:  Okay, what date?  I mean if they're

22  ready, how about tomorrow, you know, that would be great?

23            MS. WEISS:  But they're not, they're not in the

24  agreed upon format. I can serve them as PDFs but they will

25  not be in the agreed upon format, and they cannot be

1

2  tomorrow because I do not have, tomorrow is Wednesday, I

3  actually can serve documents tomorrow but they might not

4  be in the agreed upon electronic format that the parties

5  agreed to because we don't have our usual access to our

6  system. I can just serve a production of PDF documents. If

7  that's acceptable to plaintiffs, then I can do that

8  tomorrow.

9        THE COURT:  Ms. Stoughton, I think you were the

10 one who was talking, right?

11       MS. STOUGHTON:  I think we can accept that as

12 long as they can be reproduced once they have an

13 opportunity, but I think that would be very helpful

14 because it would allow us to get started in reviewing the

15 documents.  Is that all right?

16       THE COURT:  Ms. Weiss, can you produce them as

17 PDFs and then do whatever this process is that converts

18 them to the proper format, as well?

19       MS. WEISS:  Absolutely, thank you.

20       THE COURT:  So (indiscernible) production --

21       MX. GREEN:  Your Honor --

22       THE COURT:  Hold on, let's have a production

23 then tomorrow of what you have and then, I mean I think it

24 makes sense, and this was something plaintiffs requested,

25 to, you know, have a date where you just produce your

1

2  rolling production each week, whatever you have, if

3  there's one document or a thousand documents, what's the

4  problem with doing that, Ms. Weiss?

5         MS. WEISS:  There is no problem.

6         THE COURT:  Okay, then let's say every Wednesday

7  since you're doing it for the first time tomorrow.

8         MS. WEISS:  Your Honor, we had actually agreed

9  on Thursday, there's some internal deadlines that

10 Thursdays were generally, were easier for our office. And

11 after speaking to our internal e-discovery group, we had

12 spoken about biweekly, every two weeks, because it is

13 quite an onerous process to convert documents into the

14 format that were agreed on among the parties.  And to do

15 it weekly, even if it's one page, it's a very difficult

16 and time consuming process. And to do it weekly is just

17 very, very difficult. So we had spoken about doing it

18 every two weeks and plaintiffs had agreed. Yes, Your

19 Honor, sorry.

20        THE COURT:  I mean I'm surprised that, what is

21 this other format they're being converted to?

22        MS. WEISS:  I have to say that I don't know, I

23 don't understand it, I'm not much of an electronic

24 discovery tech person. The parties had agreed to, and not

25 myself personally, nor anyone from the defendants who is

24

1

2  on the phone call, had agreed to a format and a way to

3  produce the documents. And it's not just sort of emailing

4  documents in a PDF format, perhaps there is someone on the

5  line from plaintiffs who can explain it, but it's --

6          THE COURT:  No, I don't want it explained, but

7  here's the part that doesn't make sense to me. If from

8  your point of view you say this PDF is good to go and then

9  you send it to the computer people, or these 500 PDFs are

10  good to go and you send it to the computer people, and the

11  computer people are doing some, you know, terribly

12  difficult, lengthy, whatever process it is that suggests

13  you can't do it once a week, is there a problem with, I

14  mean maybe the plaintiffs don't want this, with producing

15  the PDFs and then having this computer process happen

16  separately?

17          MS. WEISS:  Well we had discussed early on --

18          THE COURT:  You've already agreed to do that for

19  the first production, I'm just wondering, you know, if

20  that's going to speed things along for other productions?

21          MX. GREEN:  Your Honor, this is Remy Green --

22          THE COURT:  Hold on, go ahead.  Go ahead, Mx.

23  Green.

24          MX. GREEN:  We tried to discuss this on the meet

25  and confer and I, frankly, you know, as somebody who as a

1

2  younger lawyer my entire career has been e-discovery, the

3  assertions here are baffling. I don't understand, right,

4  we've asked for things in their native format so there is

5  actually less to do to produce them than there would

6  normally, because you're not converting them to PDF,

7  you're producing them in native format. And beyond that,

8  my understanding is that the City has employed a vendor,

9  so they're not, they're not doing any of this internally,

10  they're sending documents off to a vendor who can produce

11  them.  And, you know, we have tried to get color on why

12  this is going to take so long, and we haven't been able

13  to. And maybe the right answer is they can explain why

14  it's taking so long or why it's burdensome in the Monday

15  letter.  But, otherwise, I just, I don't, you know, have

16  in my head any e-discovery issues. What Ms. Weiss is

17  saying makes absolutely no sense to me.

18          THE COURT:  Well I'm certainly not going to be

19  of any help.  So we're getting the PDF production tomorrow

20  and I guess the dispute is about how often you should do

21  this rolling production.  Ms. Weiss says that there was an

22  agreement to do it every two weeks, so why don't we assume

23  every two weeks is acceptable until the parties come to me

24  and say they no longer can live with that.  So let's see

25  what you get tomorrow and then we'll see where we are I

1                                                           26

2  guess.

3           MS. STOUGHTON:  Thank you, this is Ms.

4  Stoughton, I think we can live with that, I'll just say,

5  and I think this is, perhaps, what Your Honor was hinting

6  at, but we agreed to two weeks when we were back in May

7  and I will just say on behalf of plaintiffs, I'm a little

8  bit worried that every two weeks, whether two weeks works

9  or not really depends on the volume of production and the

10 consistency and substantiality of it.  But I hear Your

11 Honor saying we'll come back, we'll see how it is and come

12 back on that --

13          THE COURT:  You have the option to come back. I

14 mean if they haven't been doing production, you know, at

15 all, the fact that you agreed to two weeks, you know, a

16 long time ago, I don't think you're going to be bound by

17 that.  But let's try it and see what we get and then

18 you'll come back to me.

19          MS. STOUGHTON:  Thank you, Your Honor.

20          THE COURT:  I think all that's left outstanding

21 is whatever the interrogatory issue is, which I'm not

22 quite sure what it is. So is there anything else on non-

23 interrogatory materials?

24          MX. GREEN:  Your Honor, I guess I would ask,

25 this is Remy Green again, I would ask that in the amended

1                                                                    27

2   response and in the order related to the amended response,

3   that we do hold, that you hold the City's feet to the fire

4   a little bit in finding that, you know, objections that

5   don't comply with the 2015 amendment are now waived so

6   that we don't have to be back here on this issue again.

7          THE COURT:  I'm not going to make a prospective

8   ruling of that kind.  And I'm not sure what order you're

9   referring to other than the orders that I've stated here

10  today --

11         MX. GREEN:  Exactly those orders.

12         THE COURT:  I'm not going to issue a written

13  order.  Okay, I'm assuming compliance with all rules and

14  we'll take it from there if it doesn't happen.

15         All right, as to the interrogatory, who is

16  speaking on that from plaintiffs?

17         MR. RICKNER:  This is Rob Rickner for the

18  plaintiff, hello, Your Honor. I think this actually goes

19  to the algorithm that we've discussed beforehand. The

20  reason that we want each of the individual defendants to

21  sign the interrogatories is because we want the plaintiffs

22  to do or, excuse me, the defendants to do the work to get

23  good information into those interrogatories.

24         Using the mayor as an example, one of the key

25  questions we have it who from the mayor's office was

1

2 supervising or observing the protests and relaying

3 information to this final policy maker?  Right now we

4 don't have that information.  Now, we're presuming that if

5 the mayor signs the verification and swears to it and

6 swears to the information in the interrogatory responses,

7 which is required under the rules, that the mayor's office

8 will make sure that they have good information in response

9 to that question.

10      So that's what we're trying to get to. If, you

11 know, Commissioner Shea signs an interrogatory, presumably

12 the interrogatory he signs will have the best information

13 he has in response. And that gets us the witnesses we need

14 so that we can identify them as ESI custodians and

15 potential people we'd want to take depositions from.

16      That's really, I think, the key point here, and

17 also --

18      THE COURT:  I read your letter, I remember

19 something about the signing, but in your little section

20 three here did you even talk about signing? I didn't know

21 this was a big deal, I thought it was a failure to provide

22 names of witnesses, I thought that was the big problem?

23      MR. RICKNER:  Well it is a big problem, there's

24 two parts to it and we're trying to get to the names of

25 witnesses. But the title of our section is "Interrogatory

1                                                                29

2  Responses Must Be Answered Completely and Verified Under

3  Oath by Each Defendant."  And the verification under oath,

4  as well as being simply required by the Federal Rules,

5  also is a way to get to the first part, which is complete

6  responses since somebody has to actually sign off of them.

7          In addition, you know, most of the responses

8  refer to documents which haven't been produced yet.  Now I

9  understand that, you know, until the documents are

10 produced, the defendants may not have that information,

11 but I do think that they have the ability to call up their

12 individual clients and say we have 14 questions here, we

13 want to look at the, you know, we want to know the precise

14 answers and we want you to swear to them.

15         THE COURT:  Okay.  Well, unfortunately, it was

16 within your heading but not described anywhere in the

17 text, so I don't think the defendants even have thought

18 about this. I'm sure they've thought about it but I don't

19 have a written response from them.  So, I mean, how many

20 defendants are there?

21         MS. WEISS:  Your Honor?

22         THE COURT:  No, no, no, one person per issue.

23 Mr. Rickner, how many defendants are there?

24         MR. RICKNER:  My understanding is, is that there

25 are 33 total.

1                                                            30

2              THE COURT:  Yes, I mean, you know, I'm entitled

3    to limit discovery and having 33 signatures on

4    interrogatories may not be the most useful thing to do

5    when the defendants are going to be responsible, you know,

6    anyway, for what is said in those interrogatories.  I

7    don't feel this has been  -- hold on.  Hold on. I don't

8    think the issue of signing has been properly presented to

9    me. I want this to be a discussion between the plaintiff

10   and the defendant, I have a specific rule about how to

11   present issues to me, paragraph 2(A), this is not

12   described in any way, shape or form in the text of this

13   letter. So the swearing part is not something that I feel

14   is properly presented.

15             So, Mr. Rickner, what other issue on the

16   interrogatories should we deal with?

17             MR. RICKNER:  Well we also want complete answers

18   to the interrogatories.  You know, for example, we want to

19   know who the highest ranking officers were at each

20   protest.  In response, we got a heavily redacted

21   spreadsheet that only has their last names, it doesn't

22   have their first names, and that's an incomplete response

23   to the information we require.

24             We want to know, you know, which people, as I

25   said, from the mayor's office were at the protest.

1
2  They're key people who can, were communicating with final

3  policy makers regarding what was actually happening on the

4  ground. So the answer --

5          THE COURT:  So the problem is that the responses

6  are incomplete and I guess the defendant said they were

7  going to be giving new responses.  Ms. Weiss, what's going

8  on with the interrogatories?

9          MS. WEISS:  Yeah, that's correct. In addition to

10 giving supplemental responses to the document demands, I'm

11 also working on supplemental responses to the

12 interrogatories which I will also have ready on Friday.

13 Just with respect to the spreadsheet that was heavily

14 redacted, I did promise to plaintiffs previously that I

15 would give them that entire spreadsheet unredacted.

16 Unfortunately, I haven't been able to get that, but I will

17 be in the office tomorrow and I will get that and send

18 that out to them tomorrow as part of the production. And,

19 you know, other information that they want as responsive

20 to the interrogatories, to the extent that I have that

21 information currently, it will be part of the

22 interrogatory responses. And, you know, to the extent that

23 I don't have it currently, it's part of the searches that

24 we are currently conducting. I'm not holding back this

25 information unless it clearly --

1

2          THE COURT:  Are we going to get the names of

3    some witnesses in this amended response which I assume is

4    going to be Friday?

5          MS. WEISS:  Yeah, I mean a lot of it is in the

6    documents, but I will spell it out more specifically in

7    the interrogatory responses which I will serve on Friday.

8          THE COURT:  All right, Mr. Rickner, anything

9    else you want to add?

10          MR. RICKNER:  No, Your Honor, not until we see

11    the actual responses, themselves.

12          THE COURT:  Okay.  So, yes, we'll see what

13    happens and if there is still a problem use my process,

14    it's very important for the parties to consult and to, you

15    know, follow what I have in paragraph 2(A) of my

16    individual practices.

17          I think we're done from my point of view, I'll

18    just check with the plaintiffs, anything further from the

19    plaintiffs' side?

20          MS. STOUGHTON:  No, thank you, Your Honor.

21          MX. GREEN:  Your Honor, this is Remy Green, on

22    the expert disclosure portion of the Court's schedule, I

23    think we may need to move that given where we are and we

24    may want to ask to adjust some other deadlines. Is there a

25    particular way you'd like us to ask to shuffle those

                                                              33

deadlines?

          THE COURT:  Yes, and that is to address them to

Judge McMahon who is in charge of the discovery deadlines,

unless she refers it to me.

          MX. GREEN:  That makes a lot of sense, and I

thought that was the answer but wanted to make sure. Thank

you, Judge.

          THE COURT:  Okay. All right, anything from the

defendants' side?

          MS. WEISS:  No, Your Honor.

          THE COURT:  Okay.  Thank you, everyone.  Good-

bye.

               (Whereupon the matter is adjourned.)

34

## C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, Payne, et al. versus

De Blasio, et al., docket #20cv8924, was prepared using

PC-based transcription software and is a true and accurate

record of the proceedings.

Signature  *Carole Ludwig*
_____

Date:  June 17, 2021