

May 16, 2021

Dara Weiss
Senior Counsel
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007

By Electronic Mail Only.

Re:   **In re: New York City Policing During Summer 2020 Demonstrations,**
      **1:20-CV-8924 (CM) (GWG)**
      *This Letter Relates to All Cases*

Dear Ms. Weiss:

We write on behalf of counsel for all Plaintiffs in the consolidated cases with regard to the numerous and significant deficiencies in Defendants' responses to Plaintiffs' Requests for Documents and First Consolidated Set of Interrogatories dated April 26, 2021.

Plaintiffs initially sent a letter on May 10, 2021, generally outlining Defendants' broad non-compliance with the discovery rules and overall failure to heed the "discovery wake-up call to the Bar in this District." *Fischer v Forrest*, 2017 US Dist LEXIS 28102, at *2 (SDNY Feb. 28, 2017). This letter is a follow-up to that letter and is an attempt to individually address each improper objection Defendants made. It appears every single objection *is* improper in this respect, and the law on this point is outlined in more detail below.[1]

There are so many improper objections and deliberate refusals to disclose core documents and information, like the names of witnesses, Plaintiffs are worried that the City of New York has no intention of complying with the Court's Order to swiftly move through discovery.  This is unacceptable. Most of the objections interposed have no basis and should simply be removed or corrected. In other instances, Plaintiffs invite a meet and confer to discuss what the Defendants will be providing, and when.

1.   **Defendants' Responses to the Document Requests and Interrogatories violate the 2015**
     **Amendments to the Federal Rules of Civil Procedure, and include numerous invalid**
     **and inapplicable objections.**

The Federal Rules of Civil Procedure were amended in 2015 to bar the kind of boilerplate, unspecific objections Defendants have interposed. Compounding this violation, Defendants have also

---

[1]  While Plaintiffs have attempted to be exhaustive, an omission in this lengthy letter should not be read as suggesting anything other than the fact that the deficiencies were so numerous that one slipped through.



included objections in the Responses that are not applicable, ignore blackletter law, and in one instance, Defendants appear to have invented an objection that has no basis in the law. Taken together, Defendants have unnecessarily complicated these proceedings, and delayed resolution of disputes, against the Court's clear instructions. Plaintiffs expect Defendants to revise and otherwise correct their Responses and Objections to conform with the law, at or before our meet and confer.

> **a. Defendants improperly assert non-specific, vague, and boilerplate objections, in violation of the 2015 Amendments to the Federal Rules of Civil Procedure, and then compound this abuse by failing to state what documents, if any are being withheld based on each objection.**

As an initial matter that cuts across Defendants' responses, Defendants fail to conform to the 2015 amendments to the FRCP, which were implemented to bar the exact type of boilerplate, vague responses that Defendants have employed here. It is no longer acceptable to list a series of objections and then at the end state vaguely what may or may not be produced. Since 2015, FRCP 34(b)(2)(C) has been clear that "An objection must state whether any responsive materials are being withheld on the basis of that objection" and that an "objection to part of a request must specify the part and permit inspection of the rest." As such, the majority of Defendants' responses and objections are inadequate and operate to waive objections for vagueness, relevance, burden, proportionality, and breadth. *See Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("From now on in cases before this Court, any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)."). Additionally, "'[a]n objection may state that a request is overbroad, but if the objection recognizes that some part of the request is appropriate the objection should state the scope that is not overbroad" although "[a]n objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'" *Id.* at *2-4 (citing 2015 Advisory Committee Notes to Rule 34). Additionally, "meaningless boilerplate" objections such as statements that requests are "overly broad and unduly burdensome" that does not explain why the requests are burdensome or how they are overbroad are "'improper unless based on particularized facts'" that are articulated as part of the objection. *Id.* at *8. "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse." *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009).

Furthermore, Defendants did not state whether they have withheld any responsive materials on the basis of these objections, and, if so, which documents they have withheld, on the basis of which objection, despite the clear mandates of Fed. R. Civ. P. 34(b)(2)(C). That is improper. *See Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-CV-2684 (KHP), 2019 WL 1517552, at *3 (S.D.N.Y. Apr. 8, 2019) ("Rule 34 imposes the responsibility on a responding party to state what it is withholding or describe the scope of the production it is willing to make, including the parameters of the search to be made (i.e., custodians, sources, date ranges and search terms, or search methodology)."). Defendants cannot interpose multiple, overlapping objections that make it impossible to know what is being withheld (if anything) based on each specific objection.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Because of the manner in which Defendants have asserted their purported objections, Plaintiffs are at a loss as to which documents Defendants have simply not searched for, and which documents Defendants have searched for, but withheld from production, and why. By failing to conform to the 2015 Amendments, Defendants have obfuscated their objections and disguised the scope of the ultimate production. This unnecessarily complicates the meet and confer process, and delays progress of this case, in direct violation of Judge McMahon's instructions at the Initial Conference: "you are going to be on a rocket docket moving towards a trial and don't think that's going to be delayed." Transcript of Feb. 22, 2021 Rule 16 Conference ("2/22/21 Tr.") at 20:25-22:2. *See also, id.* at 23:6-7 ("By the way, when I say all discovery, in my courtroom that means *all* discovery"). Even if this kind of mass objection dumping were reasonable in an ordinary case (it is not), it is directly contrary to the directions of the Court here.

At or before the meet and confer, Defendants must unambiguously commit to amend their responses to state whether they are deliberately withholding documents, or are refusing to search for documents, based on each and every objection interposed, and make such amendment within five days thereafter. To be clear: Each individual objection should be followed by a clear statement as to whether documents are being withheld based on that objection, and if so, it should then state exactly the documents or categories of documents that are being withheld pursuant to that individual objection. Each individual objection should also be followed by a statement of whether Defendants have contracted the scope of documents reviewed or searched based on the objection, along with a statement of exactly what investigative efforts Defendants have undertaken. This will prevent Plaintiffs from being forced to waste time arguing over objections that Defendants only (improperly) submitted as boilerplate, rather than a basis to withhold documents.

### b. Defendants improperly claim that defined terms, and words with plainly understood—or explicitly defined by governing rules or the requests—meanings, are vague.

Defendants repeatedly claim terms with plain meanings—or, indeed, terms defined by the Local Rules or the Requests themselves—are vague and undefined. These objections then improperly fail to state how Defendants limited their responses or interpreted the terms they claim are ambiguous. So each is improper on its face, since they do not "help[] … understand what about the request is vague or ambiguous." *Caprate Events, LLC v Knobloch*, No. 17-CV-5907-NGG-SJB, 2018 US Dist LEXIS 227238, at *5 (EDNY Apr. 18, 2018). Instead, the objections are "vacuous boilerplate." *Id.*, *citing Fischer,* 2017 US Dist LEXIS 28102, at *8. Nonetheless, below are explanations of how each term is not vague.

In the Response to Request 2, Defendants state that "it is vague and ambiguous as to whether 'recordings' means recordings used during trainings or recordings of trainings." Plaintiffs demand both.

In the Response to Request 13, Defendants claim that the phrase "use of force" is unclear. It is not. Use of force is a term of art, used by both the NYPD (and Defendants' counsel) in training, supervision, documentation, and litigation. Defendants also use this phrase elsewhere in their

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457 · FemmeLaw.com



Responses, for example the response to Requests 21, 25, and 25. So it is confusing why it is only unclear when *Plaintiffs* use it in Request 13.

In the Response to Request 14, Defendants claim that the phrase "related complaints" is vague and ambiguous. Not so. In the Request, Plaintiffs' demand documents concerning incidents referred to or under investigation by a series of agencies, like the Internal Affairs Bureau. The "related complaints" are the complaints that started those investigations. There is no vagueness or ambiguity; each investigation starts with a complaint and Plaintiffs want those complaints produced, along with the other relevant documents. Similarly, in the Response to Request 37, Defendants object to the term "complaints" because it does not specify who those complaints were made to. But this does not make the Request vague; Plaintiffs want all the complaints, regardless of who they were made to, if they are in the Defendants' possession, custody, or control.

In the Response to Requests 19, and 22-25, Defendants object to the terms "concerning" and "communications" as vague and ambiguous. These are defined terms under the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Local Civil Rule 26.3(c), and these definitions were (unnecessarily, but as a matter of belt and suspenders to prevent this kind of objection) specifically incorporated into Plaintiff's First Consolidated Set of Requests for Documents. Plaintiffs assign the same meaning to these terms as the Southern District does. Thus, when Plaintiffs demand a document concerning another document, Plaintiffs want both the document itself (that is, "constituting" the document (L.R. 26.3(c)(7)) and all documents concerning that document, pursuant to the plain definitions in the Local Rules.

In the Response to Request 19, Defendants object to the phrase "anticipated protests" as "too generalized." It is not. The phrase is clearly limited to the protests in the wake of the death of George Floyd, *i.e.* the 83 Protest Locations identified on Schedule A. And even if it were not, it is within Defendants' knowledge what protests they anticipated.

In the Response to Request 20, Defendants object to the phrase, "occurrences and/or interactions," along with "received" and "referenced," as vague and ambiguous. These terms are used with their ordinary dictionary definitions, "something that happens" and "something that happens, often something that is unpleasant," for occurrence and interaction, respectively. Received means to "get it after someone gives it to you or sends it to you." Referenced means "the act of consulting someone or something in order to get information or advice." In sum, the Request 20 seeks documents that Mayor de Blasio, *et al.*, got or obtained information from, regarding what happened between the protestors and the NYPD, after May 28, 2020. There is nothing vague or ambiguous about this Request.

In the Response to Request 32, Defendants object to the phrase, "racist or white supremacist organizations" as vague and ambiguous. Again, this phrase is assigned its ordinary, dictionary definition, meaning organizations that are prejudiced or antagonistic toward a particular racial or ethnic group, or organizations that believe white people constitute a superior race and should therefore dominate society, typically to the exclusion or detriment of other racial and ethnic groups. Plaintiffs want responsive documents regarding any group that fits this well understood definition. Moreover, the objection is largely pointless: the parties "shall reach agreement as to the method of searching, and

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



the words, terms, and phrases to be searched" under Judge McMahon's Rules Governing Electronic Discovery (*id.* ¶ 3), so any existing ambiguity (and there is none) will obviously be resolved in our discussion of search terms. We expect to discuss search terms for this, Requests 31, 33, 34, and 35, and other racial discrimination-related requests at our meet and confer.[2]

In the Response to Request 39, Defendants object to the phrase "person related to a protest" as vague and ambiguous. As is clear from the Request, Plaintiffs want the policies and procedures concerning who is authorized to decide when someone arrested at or near a protest is released with a Summons or DAT, as opposed to being taken for arraignment.

In the Response to Requests 40 and 41, Defendants claim that the phrase "Protest-Related Violation of Offense" are "undefined terms." This is simply wrong. In Plaintiff's First Consolidated Set of Requests for Documents, this phrase was assigned a precise definition. And thus, Defendants' objection in Request 40 claiming it is not intelligible "how one could have an arrest for a protest-related violation outside of a protest or demonstration" is itself unintelligible. A person can be charged with the listed offenses outside of protests, and the Request seeks to determine what NYPD policy is for these offenses outside of protests.

In the Response to Request 42, Defendants object to the phrase "training logs" as vague and ambiguous. It is not. As explained in the Request itself, Plaintiffs seek the logs of the training each officer received. Hence, "training logs." This phrase has a plain meaning.

In the Response to Interrogatory 2, Defendants object to the phrase "Incident Commander(s)" as vague and ambiguous. It is not. First, Defendants omit the full phrase, "Incident Commander(s) *in command*" (emphasis added). What is being requested is clear: Defendants should identify the people "in command" at each protest identified in Schedule A. Obviously, NYPD's command structure is not ambiguous. Moreover, the phrase "Incident Commander" is even defined by the Patrol Guide:

> The highest ranking uniformed police supervisor responsible for the command, control and coordination of all incident operations. For planned events such as parades, demonstrations, and similar situations, the precinct commanding officer will ordinarily be designated as incident commander. If the event occurs in two or more commands within the same patrol borough, the patrol borough commander will be designated as incident commander, and in cases where the event affects more than one patrol borough, the Chief of Patrol will be designated as incident commander.

P.G. Procedure No. 213-11. The phrase is also repeatedly used in the SRG Guide. *See, id*,[3] at 23 (personnel must be briefed on arriving to detail on "[i]dentification of the incident commander" and

---

[2] We should also begin a bigger picture e-discovery search protocol discussion and we expect you to be prepared to start that series of discussions at the meet and confer.

[3] *Available online* at https://www.documentcloud.org/documents/20584527-strategic_response_group_guide.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



noting that a decision to "affect an arrest for civil disobedience at … [a] demonstration will be made by the Patrol Borough Incident Commander"); 24 (SRG Detail Captain must "[c]oordinate with Patrol Borough Incident Commander (IC)" and noting a number of other things to do with the IC); 25 ("If at a detail/ demonstration where a mass arrest situation was not anticipated, the decision to initiate the aforementioned procedure will be made by the Patrol Borough Incident Commander"); 46; 51; 87. In other words, Defendants know very well what the phrase "Incident Commander" means. So please identify those "in command"—the "Incident Commander(s)"—at each site, unless Defendants intend to suggest that no one was in command.

In Response to Interrogatory 6, Defendants assert that the term "questioned" is "vague and ambiguous." Again, this phrase is assigned its ordinary meaning. The request seeks every person that NYPD "stopped, detained, questioned, or Arrested." Beyond that, "questioned" is a commonly used term in Fourth Amendment jurisprudence, and its meaning is that context is quite clear. If Defendants did not keep records and cannot figure out how to determine who NYPD officers "stopped, detained, questioned, or Arrested" during the Protests, they should explain how that has come to be. Otherwise, Defendants must answer this Interrogatory.

In Response to Interrogatory 7, Defendants state that they "object as to the generic term 'complaint,'" without any further explanation. The term has a clear meaning, particularly given the list of things that the request includes (e.g., complaints to the CCRB, DOI, NYC Law Department). Complaint means an "expression of grief, pain, or dissatisfaction" and "a formal allegation against a party." Moreover, it has an obvious meaning with regard to particular agencies. For example, consider this from the CCRB's website:



So, the term is clear.

In Response to Interrogatory 10, Defendants claim that the Interrogatory "is vague and ambiguous as to the generalness of 'NYPD's response to the Protests.'" The "generalness" is not ambiguous: the Interrogatory seeks the identity of every individual employed by the City, including in the Mayor's Office, who communicated with NYPD personnel about how NYPD responded to the Protests, in any way. This request is not vague, it is clear — and Defendants essentially concede as much by objecting that it is also "unduly burdensome to identify every City employee who

COHEN&GREEN

Page 6 of 36

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



communicated with any NYPD personnel regarding [the Protests]." So, Defendants must identify such people. If this process requires a discussion of electronic search protocols, we are happy to begin the process of reaching an agreement on those protocols as required by the Court's Rules.

In Response to Interrogatory 11, Defendants state that "personnel of the Office of the Mayor or the Mayor's Office of Criminal Justice" "is vague and ambiguous as to whether the interrogatory is asking for personnel in their official or individual capacity." To be clear, Plaintiffs seek information on both, and finding this information should be a simple matter of the relevant supervisor level official sending an email asking who attended Protests.

In the Response to Interrogatory 14, Defendants claim the Interrogatory "is vague and ambiguous as to the term 'event.'" It is not. The word "event" has its plain, contextual meaning: "[any]thing that happened" (Merriam-Webster) that involved the NYPD "open[ing] up or utiliz[ing] a Mass Arrest Processing Center." Defendants know when they have opened Mass Arrest Processing Centers, and to suggest otherwise is absurd. Nor is the time objection proper here: nothing is burdensome or irrelevant in asking Defendants to produce easily accessible, historical data.

In sum, none of these objections based on vagueness or ambiguity have any validity, and they should be removed from the Responses at or before our meet and confer, and going forward. *See Caparte Events, LLC*, 2018 US Dist LEXIS 227238, at *5.

### c. Defendants have invented the objection "compound"; it is not valid and should be removed.

Defendants Responses to Requests 1-5, 7-9, 11, 12, 16, 25, 36-38, and Interrogatories 1 and 6 object to the Requests and Interrogatories as "compound" because the they have subparts or request multiple documents, or multiple relevant pieces of information or *kinds* of people. "Compound" is not a valid objection and nothing in the Federal Rules prohibits asking for multiple documents or categories of documents in a single Request. Nor is there anything in the Federal Rules that somehow prohibits an Interrogatory on the basis "that it seeks that [sic] identity of civilians and members of service in the same interrogatory." If Defendants have specific objections to any document or category of documents or interrogatory, they must make that objection with specificity, as required under the 2015 Amendments, discussed above.

At or before our meet and confer, Defendants must remove this invalid compound objection, and to the extent they are objecting to a specific document or category of documents or information, they must make such a response with specificity.

### d. Defendants cannot object to valid Requests by claiming the documents are public, or that Plaintiff has them already.

Defendants' Responses to Requests 1, 3- 5, 7-13, 16, 23, 24, and 39-42 and Interrogatories 1, 6, and 13 claim, in sum and substance, that Defendants need not produce documents or information because Plaintiffs already have it, can subpoena it from third parties, or that the documents and information are somehow public. This is not a valid objection.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



At the outset, the factual basis for these objections is unsound. The Patrol Guide is posted online, but it is redacted and missing many vital sections — to say nothing of the fact that it has changed many times over the last two decades.[4] Additionally, much of what Plaintiffs request is not online even in an incomplete and unverified fashion. While there is a list of training programs, from an internal NYPD online database,  it lacks many basic search features. It would take Plaintiffs substantial time to obtain the information, while Defendants, who have access to the actual data, can simply export it. And many internal documents relevant to this case are not online or public in any form.

Another recurring objection is that Plaintiffs received documents in their criminal prosecution. But Plaintiffs received very few documents from their criminal prosecutions because, fortunately, these arrests were so transparently illegal the charges were swiftly dropped. Plaintiffs did not get their discovery from the criminal cases, so Defendants must now produce it. Similarly, while some information about prior suits against NYPD and its officers is available on PACER, the state court system cannot be searched, so the full caption and complaints must be produced by Defendants, who certainly have them as the Law Department defended, or at least evaluated and refused to defend, every lawsuit against an NYPD officer.

As an adjacent point, Defendants surely do not intend to suggest they concede the authenticity of every document Plaintiffs and their counsel might have in their possession. But without such a concession, these objection cannot lie — at least without a specification of which records, exactly, Plaintiffs have or are public, a stipulation that those records are authentic, and an agreement to produce everything else. And as Defendants well know, the Patrol Guide online is *not* complete. And the Patrol Guide is hardly the only record responsive to these Requests. Thus, absolutely nothing about the records requested is equally available to Plaintiffs. So Defendants must either (1) produce or (2) identify and authenticate the documents responsive to these requests. *Charter Practices Intl., LLC v Robb*, 2014 US Dist LEXIS 8166, at *6-7 (D Conn Jan. 23, 2014); *National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009); *Fosselman v. Gibbs*, No. C 06-0375, 2008 U.S. Dist. LEXIS 82697, 2008 WL 745122, at *4 (N.D. Cal. Mar. 18, 2008) ("the objection that information is equally available to the questioner is not a proper objection"); *Foti ex rel. Louisiana v. Eli Lilly & Co.*, 2008 U.S. Dist. LEXIS 55780, 2008 WL 2858617, *3 (E.D.N.Y. 2008) ("Mississippi's 'equally available' objection deprives Lilly of basic information concerning the nature of that State's claims"); *Chinn v Elmwood Franklin Sch.*, 2018 US Dist LEXIS 188307, at *12 (WDNY Nov. 1, 2018).

The third-party component in some of these objections is also legally unsound. Plaintiffs are not required to subpoena documents that can be produced by another party—in fact, such subpoenas are sometimes considered improper. *See Burns v Bank of Am.*, 2007 US Dist LEXIS 40037, at *46

---

[4] And, beyond that, the City routinely objects at depositions to the authenticity of the Patrol Guide provisions printed from the online version. Given routine practice of making such objections, the argument that Defendants need not respond to these requests because Plaintiffs should just print out the online version only serves to unnecessarily multiplies the proceedings here.



(SDNY June 4, 2007)) ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45]").[5]

Defendants must remove these invalid objections from their Responses at or before our meet and confer, and otherwise specify exactly what records are responsive that Plaintiffs have access to, and stipulate to the authenticity of those records, as well as the time period for which the policies they reflect were in effect.

### e.  Defendants cannot claim a Request is duplicative when they have produced next to nothing in discovery.

In the Responses to Requests 3, 4, 7, 9, 11, 12, 14, 15, 30, and 31-35, and Interrogatories 2, 3, 4, 5, 6, 7, 8, 9, 12, and 13, Defendants state that the Request or Interrogatory is "duplicative" of some prior request. In the Responses to Requests 6, 18, 30, 31, 35, Defendants make a similar objection, claiming that the Request is "subsumed by" another Request, and "any responsive documents" would have been produced in response to that other Request.

Defendants appear to misunderstand how this objection applies. A court can limit discovery if it is duplicative, but discovery is only duplicative if the relevant documents and testimony have already been provided. *See Ottoson v. SMBC Leasing & Fin., Inc.*, No. 13-CV-1521 (RWS), 2015 WL 4597542, at *3 (S.D.N.Y. July 30, 2015) (finding that a deposition was not duplicative because the relevant testimony had not yet been obtained in prior depositions); *Napolitano v. Synthes USA, LLC*, 297 F.R.D. 194, 208 (D. Conn. 2014) (overruling objection that request is duplicative because the request was reasonably calculated to lead to the discovery of admissible evidence and requiring the party to either sign an affidavit swearing the documents do not exist, or to identify them in the prior production); *Armstrong Pump, Inc. v. Hartman*, No. 10-CV-446S, 2014 WL 2830322, at *3 (W.D.N.Y. June 23, 2014) (resolving claim that document requests are duplicative by ordering the objecting party to identify the responsive documents already produced).

Put simply, a request can't be duplicative if there is nothing to duplicate. Consider Interrogatory 4. Defendants say it duplicates Interrogatory 1. But the information in response to Interrogatory 1 is 15 blank pages, 38 entirely redacted pages,[6] and 13 mostly redacted pages, with no

---

[5] Notwithstanding this error, and given Defendants' position on this, we intend to send subpoenas to all potential third-party custodians of relevant records, and trust Defendants will not make any objection.

[6] Putting aside whether these redactions are appropriate (they are not, and are not even properly made given the lack of a privilege log), a small number of the pages Plaintiffs' are describing as "entirely redacted" appear to involve mis-redaction, in that it appears Defendants intended to redact the entire page, but a few words escaped redaction with no context or reason:

*(image on following page)*



explanations for the redactions. But beyond that, it discloses the names of an extremely limited number of officers designated "Executive,"[7] in response to a demand for all officers at Protest Locations. None of that serves to identify members of the NYPD Legal Bureau involved in the police responses at the Protest Locations — and so, there is no duplication.

Relatedly, many of the Interrogatory-related objections simply misunderstand the nature of the questions being asked. For example, while it may be true that if Defendants actually fully answered Interrogatory 1 by identifying every officer at each Protest Location (Defendants did not), that list alone would not answer the question posed by Interrogatory 2: which officers were "in command." So too with Interrogatory 3: nothing in any actual or future imagined response to Interrogatories 1 and 2 actually identifies the Highest Ranked Patrol Service Borough Uniformed member at a Protest Location. Without belaboring the point, the Responses to Interrogatories 4, 5, 6, 8, 9, 12, and 13 are identically deficient: the information sought is not *just* the identity of an officer in a vacuum, but which officers did what at which protests. That is plainly relevant, non-duplicative, discoverable, and a proper subject for Interrogatories.

Defendants must remove these invalid objections from their Responses at or before our meet and confer. And to the extent Defendants claim future Requests are duplicative, they should identify, by Bates-stamp number, the documents that have already been produced or identify exactly where in the interrogatory response the relevant information appears, so that Plaintiff can determine whether this objection has any merit.

### f. Defendants' use of the evidentiary objection "assumes" is not appropriate for an objection to a documents request.

In the Responses to Requests 5, 10, 29, and 4, and Interrogatories 4 and 5, Defendants object by arguing that the Requests or Interrogatories "assume" some fact that the Defendants disagree with. This may be a valid evidentiary objection, but it is not a valid objection to a document request or interrogatory. Defendants either have the documents or they do not. If they do not have the documents, there is nothing to produce.

On the two Interrogatory objections, it appears Defendants have misread the two Interrogatories. Neither Interrogatory 4 nor Interrogatory 5 assumes anything. Defendants simply must identify "each" and "every" officer from NYPD Legal Bureau or NYPD SRG who was at any

---



[7] Defendants appear to have made the decision to produce this response to Interrogatory 1 after completing drafting on their document objections, since the assertion that "there are no datasets produced pursuant to this request or Plaintiffs' Interrogatories" (Response to Request 43) is inaccurate given this dataset.



of the Protest Locations. Put simply, Defendants must identify "each" officer, and if the answer is "none," Defendants can state: "none."

Thus, these objections should be removed from the responses at or before our meet and confer.

### g. Defendants' statement in Response 2 that the NYPD has outsourced training and review of officers is an admission, not a valid objection.

In the Response to Request 2, Defendants object to producing documents regarding training and review of officers because the Request "seeks documents not within defendants' possession, custody, or control insofar as any 'critique, evaluation, or review' of trainings were made by non-NYPD employees." This objection on its face states that Defendants are aware of "'critique, evaluation, or review' of training" that was "made by non-NYPD employees." Assuming Defendants' Response is accurate, and the NYPD has been using outside consultants or other third parties who are "non-NYPD employees" to evaluate NYPD training, the names of these consultants, and their contact information, should have been included in the Defendants' Initial Disclosures.  If Defendants maintain this objection and refuse to supplement their disclosures, Plaintiffs will serve an additional Interrogatory set that includes a demand for this information, so Plaintiffs can serve subpoenas.

The Defendants Disclosures must be updated with the names of the outside training companies within five days of our meet and confer.

### h. Defendants' statement in Response 5 that there are additional responsive documents is an admission, not a valid objection.

In the Response to Request 5, Defendants state that, "Defendants further object that it assumes that there were trainings on only the 32 requested topics in regards to protests (as opposed to general trainings that covered some or all of the requested topics)." Plaintiffs provided an exhaustive list of relevant training, but now the Defendants have admitted are even more relevant trainings at the NYPD. The documents relating to these trainings must be produced, and Plaintiffs will be shortly serving an Interrogatory so Defendants further can clarify what additional trainings they believe are relevant as suggested by this response.

### i. Defendants' objection to producing "all" documents responsive to a Request as burdensome, or just unexplained assertions of "burden," without stating in detail why, is improper.

In the Responses to Requests 2, 26, and 27, Defendants claim that producing "all" responsive documents is not "proportional to the needs of the case" and that the "burden" of producing these documents outweighs "any likely benefit." These objections are exactly what the 2015 Amendments prohibit: "meaningless boilerplate. Why is it burdensome? How is it overly broad?" *Fischer*, 2017 US Dist LEXIS 28102, at *8. Yet, each of these responses is almost word-for-word identical.



The same is true of Defendants' boilerplate burden objections to Interrogatories 1 ("outweighs any likely benefit to plaintiffs"), 6 (same, verbatim), 7 (same, verbatim), 8, (same, verbatim), 10 ("*far* outweighs any likely benefit to plaintiffs") (emphasis added), 12 (same), 13 (back to just "outweighs any likely benefit to plaintiffs"), 14 (same). The only difference between the entire explanation of the burden for these interrogatories is that apparently the burden "far" outweighs the benefit for two. But none of this provides what is required: "Why is it burdensome?" *Fischer*, 2017 US Dist LEXIS 28102, at *8.

Similarly, Defendants repeatedly assert burden objections by simply describing an Interrogatory. *See* Interrogatory 2 ("it is burdensome to identify every 'Commander' present for all 83 Protest Locations"); 3 ("it is burdensome to identify the highest ranking uniformed officer on scene for all 83 Protest Locations"); 4 ("it is burdensome to identify every officer from the NYPD Legal Bureau present for all 83 Protest Locations"); 5 ("it is burdensome to identify every [SRG] officer present for all 83 Protest Locations"); 6 ("it is *unduly*[8] burdensome to identify every person "stopped, detained, questioned, or Arrested" for all 83 Protest Locations") (emphasis added); 7 ("it is unduly burdensome to identify every individual who made a complaint by any means to any City agency"); 10 ("it is unduly burdensome to identify every City employee who communicated with any NYPD personnel regarding the 83 Protest Locations"); 12 ("unduly burdensome to identify every officer who merely "observed" an individual who was stopped, arrested, or detained by NYPD at the 83 Protest Locations"); 13 ("it is unduly burdensome to identify every officer who determined that there was probable cause, other than the arresting officers'"). This failure to even *recite* a burden—let alone explain how that burden is undue (and for some, Defendants seemingly concede the burden is not undue, *see* note 8)—waives the objection. *Fischer*, 2017 US Dist LEXIS 28102, at *9.

In short: Plaintiffs are entitled to "all" the relevant documents, unless Defendants can actually articulate a specific reason why producing these documents is particularly difficult. A general objection to producing "all" relevant documents is meaningless and only serves to multiply proceedings. Similarly, Plaintiffs are entitled to have Defendants fully answer their Interrogatories, unless Defendants articulate a specific reason answering is burdensome. Which, Defendants have not. Just involving *some* amount of work—in a massive, consolidated case addressing NYPD misconduct at going on 100 protests, based on decades of historical misconduct—is not nearly enough. *See, 2/22/21*

---

[8] Defendants' use of "unduly" in this Response and just "burdensome" in the others suggests that the burden in the other Requests is something Defendants concede is appropriate. After all, all discovery imposes a burden. *See* 2/22/2021 Tr. 25:16-21 (THE COURT: "…I can give you a tight discovery deadline, and I mean it. And I appreciate it that *it will be on a burden* on everyone and *particularly on the Corporation Counsel*. I understand that. Nothing I can do about it.") (emphasis added).

[9] This objection is particularly poorly conceived because, as Defendants know, arresting officers are virtually never the officer who made a probable cause determination in the mass arrest context. And the question of *individual* probable cause is critical to the issues in the case. So if Defendants cannot even determine who made those determinations, that is tantamount to a concession that no probable cause existed for any arrests. If Defendants do not intend to make that concession, they must identify officers who made probable cause determinations.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Tr. 25:16-21 ("it will be on a burden on everyone and particularly on the Corporation Counsel"). *Cf. also,* ECF No. 149.

Defendants must either withdraw these objections, or unambiguously commit to revising them to describe the exact reasons why producing the documents or answering the interrogatories is (unduly) burdensome within 5 days, at or before our meet confer.

### j.   Defendants' objection regarding City Agencies is bizarre and improper.

In the Response to Interrogatory 7, Defendants object to identifying individuals who have submitted complaints to various City agencies on the basis that Plaintiffs are seeking "information that is in possession by entities or agencies that are not represented by the Office of Corporation Counsel in this litigation." This objection is equal parts bizarre and improper. Nothing about discoverability turns on who is representing an agency. Either information is "available to the party" (Fed. R. Civ. P. 33(b)(1)(B) or it is not. If information is accessible to the City, it must disclose it. And representation by the Corporation Counsel is irrelevant to that question.

Defendants must either withdraw this objection, or revise it to describe the exact information held by agencies outside of the City's control so that Plaintiffs may subpoena it, and commit to having those descriptions to Plaintiffs no later than five days after our meet and confer.

### k.   Defendants' objections to identifying witnesses with direct knowledge are baseless.

In response to many Interrogatories, Defendants—with no explanation—suggest that witnesses with direct knowledge of facts underlying this suit will not be identified. These objections have no basis in law or the case. Beyond that, Defendants mischaracterize the scope of Interrogatories, in order to suggest they are broader than they are.

For example, Defendants assert that Interrogatory 10, which seeks communications between City employees and NYPD personnel "regarding the NYPD's response to the Protests," "it is not sufficiently limited in scope because the subject matter of the conversations between the City employee [sic] and NYPD is overly broad." But the subject matter identified is not just "conversations between [] City employee[s] and NYPD"; it is conversations between City employees and the NYPD *about the Protests.*

Defendants, critically, have asserted that Mayor de Blasio had no knowledge or involvement in NYPD's brutal crackdown over the summer. ECF No. 106 at 22-23. So, it matters quite a bit what conversations took place between City employees—who report to the Mayor—and NYPD. And those conversations go directly to many of the allegations in various complaints. *See, e.g., Sow* FAC ¶¶ 456, 506, 507; *Sierra* FAC ¶¶ 45, 128, 130, 133, Wood FAC ¶¶ 8, 92-94, 95 (Mayor de Blasio stated that he "'constantly talks' to Commissioner Shea about videos depicting the force used by the NYPD against protesters" (alteration adopted)), 96; *Payne* FAC ¶¶ 48, 56, 69-70, 73 (noting Mayor de Blasio "constantly talk[s]" to Commissioner Shea), *People* FAC ¶¶ 101-103, 110, 272, 326, 329, 372.

COHEN&GREEN                                                 Page 13 of 36

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



2. **Documents and information concerning all of the 83 Protest Locations, and all of the protestors arrested and abused at those protests, along with all the NYPD officers responsible, are relevant.**

Defendants, across their Responses, object to any discovery unless it involves a named plaintiff, a named Defendant, and a protest where both were present. This improperly limits the scope of discovery in these class actions: anyone at any protest who was subject to NYPD's policies is a purported class member. *See* ECF No. 150.

    a. **Defendants must produce documents and information regarding relevant protestors, regardless of whether they are named Plaintiffs or not.**

In the Responses, Defendants repeatedly object to producing documents that relate to protestors who are not Plaintiffs named in one of the Consolidated Cases. This objection is stated in several ways:

- Defendants claim the production is too burdensome because it seeks "all" documents, including "those that do not pertain to plaintiffs" – Responses to Requests 7-11, 13, 21-25, and 36-41;

- "Defendants further object that it seeks documents that are not relevant because it seeks documents that pertain to subjects other than the arrest or use of force involving protesters at issue in this action." – Response to Request 24;

- "it is overbroad because it seeks [documents or communications] that pertain to subjects other than the arrest or use of force involving protesters at issue in this action" – Response to Request 21, and 25;

- "it is overbroad because it seeks documents that do not include incidents with plaintiffs" – Response to Request 22, and 23;

- "it is overbroad because it seeks the identity of officers who were near the Protest Locations but have no knowledge of the Incidents in the Complaints" or "information in regards to the plaintiffs" (and slight variations on this theme) – Response to Interrogatories 1, 5, 8, and 9;

- "it is overbroad because not every single person stopped or arrested has relevant knowledge" – Response to Interrogatory 6;

- "it is overbroad because it seeks individuals [sic] who did not communicate with NYPD regarding the plaintiffs in the Complaints" or "concerns events beyond the plaintiffs [sic] in the Complaints" – Responses to Interrogatories 10, and 13;

- A request to identify "each and every Officer who was disciplined, or recommended to receive such discipline, for conduct occurring at or relating to any of the Protests"



was "an unwarranted invasion of privacy into non-parties who have no connection to the Complaints insofar as it seeks officers who have no connection to the plaintiffs" – Response to Interrogatory 9;

- And while it doesn't necessarily fit anywhere in particular because it is unfinished, Defendants' overbreadth objection to Interrogatory 12 is simply: "it is overbroad because ;" (semicolon ends objection in original).[10]

All of these are premised on a misreading of both the operative complaints and the Court's Orders and directions to date. As discussed more fully below, this is a class action. Class actions are treated as involving the class until the class is either certified, or certification is denied—and that is just what Judge McMahon has done. *See, for example,* ECF  145; 150. So the assertion that Plaintiffs were not at virtually all the events in Schedule A is irrelevant.  Protests 1-79 all involved unambiguous members of the *Sow* class. *Sow* FAC, ¶ 510 (defining proposed class as "all persons … from May 28, 2020 through *no earlier* than November, 2020") (emphasis added). Discovery on how, exactly, NYPD officers harmed members of the class is both relevant and proper. Defendants' choice to pretend there are neither *Monell* nor class allegations is directly contrary to the Court's directions. *See* 2/22/21 Tr. at 21:17-22:1. Judge McMahon *just* observed that any other actions concerning the summer protests are "essentially 'opt out' lawsuits on behalf of persons whose interest are already represented in these actions. ECF No. 150 at 2. And beyond that, she made clear that "[a]rrangements can *and will* be made for the sharing of discovery when the stay is lifted." *Id.* (emphasis added). Neither Judge McMahon nor those whose actions have been stayed to "get through discovery and on to the merits" (*id.*) would be pleased to find out that Defendants unilaterally limited discovery to just the named Plaintiffs. So it won't be.

Defendants must either withdraw these objections, or revise them to accurately reflect the breadth and scope of these consolidated cases at or before our meet and confer.

**b. Defendants must produce documents and information regarding all of the 83 Protest Locations.**

Throughout the Responses, Defendants object to documents relating to protests besides the protests where the named Plaintiffs were arrested, claiming this discovery is outside the scope of the litigation. These objections take many forms:

- "Schedule A purports to identify protests that are outside the scope of litigation" and/or claims that instructions or commands to officers who have no connection to plaintiffs" are "beyond the scope of this litigation" – Response to Request 7;

---

[10] While the objection is obviously improper because Defendants did not finish writing it, assuming it was supposed to be identical to Defendants other boilerplate overbreadth objections, it suffers from the same flaws all of those objections do.





- The Requests are overbroad because "not every individual" or "officer" "at the 83 Protest Locations have relevant knowledge to this litigation" – Responses to Requests 8, and 10;

- "it is overbroad because not every individual stopped or arrested at the 83 Protest Locations has relevant knowledge as to this litigation" – Response to Request 9;

- "it is overbroad because not all of the 83 Protest Locations is relevant to this litigation" – Response to Request 13;

- "it is unduly burdensome to search for, obtain, and produce 'all documents concerning any incident' under investigation for the 83 Protest Locations" – Responses to Requests 14, and 15;

- "Defendants also object that this request is not proportional to the needs of the case because the burden and expense of obtaining and producing all of the requested documents, especially those that do not pertain to … Protests at issue, outweigh any likely benefit to plaintiffs." – Responses to Requests 22, 23   ;

- "it is not limited in time and scope to the protests at issue" – Response to Request 24;

- "this interrogatory is not sufficiently limited in scope because it seeks complaints of any misconduct even that which is not relevant to the Complaints" – Response to Interrogatory 7;

- "it seeks information that is not relevant and beyond the scope of this litigation because it seeks 'events' [sic] that have no bearing on the Incidents in the Complaints" – Response to Interrogatory 14.

This is nonsense. Judge McMahon has already indicated her strong view that all protest-related police conduct from the summer is covered in this case—and stayed litigation on this basis. ECF No. 150. Indeed, Defendants have repeatedly stressed this in correspondence with the Court. *See, for examples,* ECF No. 140, ECF No. 117. Defendants reading of any of the events listed in Schedule A as somehow not being encompassed by these cases related {to] New York City Policing During Summer 2020 demonstrations" has no basis in the pleadings or common sense. And, to the extent that *post*-summer police conduct might have been beyond the scope, that argument ceased being remotely colorable when Defendants argued that the case was moot. ECF No. 106 at 12-13. That is, Defendants suggest that "[t]here is no expectation the events of the summer will recur." *Id.* So Plaintiffs are entitled to test Defendants' (incorrect) suggestion.

Beyond that, obviously NYPD conduct at protests is relevant to evaluating Plaintiffs' *Monell* claims: for example, if NYPD employed kettling tactics at numerous protests, that supports an inference that such tactics were official policy. Unless Defendants are prepared to stipulate that every policy and tactic alleged to have been used at the protests individual Plaintiffs attended (1) was, in fact,



used and (2) was an official policy and practice, Plaintiffs are entitled to discovery on this (and, for that matter, for discovery from protests further in the past proving up the same policies and tactics).

Similarly, the objection that an Interrogatory seeking "each and every Officer who was disciplined, or recommended to receive such discipline, for conduct occurring at or relating to any of the Protests occurring at or near the Protest Locations" is somehow "seek[ing] … [information about] discipline [imposed] for any reason, even that which is not relevant to the Complaints" is facially incoherent. Interrogatory 9. *See also* Interrogatory 7; Requests 14, 15, 16, and 17. Conduct "at or relating to the Protests" is what is at issue in this case.

And finally, as Judge McMahon has emphasized in more than one decision at this point (*see, e.g.,* ECF 145 at 3-4; 150 at 2), those at nearly every listed protest are unambiguously "members of the plaintiff classes." ECF. No. 150 at 2. *See, e.g., Sow* FAC, ¶ 510 (defining proposed class as "all persons … from May 28, 2020 through *no earlier* than November, 2020") (emphasis added). Thus, just as a question of the basic facts of the claims being litigated, Defendants must produce discovery relevant to the class claims at issue here, which cover virtually every protest on Schedule A. Defendants' insistence on pretending that this case does not have *Monell* allegations and is not a class action has no basis in the pleadings or the proceedings. As Judge McMahon made absolutely plain: "discovery will begin immediately and will encompass both the claims of individuals and *Monell* issues." 2/22/21 Tr. at 21:17-22:1; *cf. id.* at 27:1-4 (THE COURT: "There will be no stay. If you've been paying attention, it should be obvious. You can make a motion. I will write deny across the front of it. There will be no stay."). And for the protests beyond that, those directly bear on Defendants' repeated claims that this action is moot, and that the NYPD brutality was a result of how unexpected protests during the pandemic were.[11] We expect these objections to be withdrawn within seven days.

### c. Defendants must produce documents and information regarding all of the relevant officers, whether they are named Defendants or not.

As discussed at length above, despite Defendants' apparent view otherwise, this is a class-action — and an action on behalf of the People of New York — about every protest about police brutality over the summer and beyond. Even in single plaintiff cases, the City must identify individual Doe defendants. And Defendants must identify the Doe defendants that assaulted not just the named Plaintiffs, but every plaintiff. After all, the Court is even *staying* actions with Doe defendants on the premise that "sharing of discovery" relevant to those cases will take place later. ECF No. 150. In fairness to those cases, before memories fade, Plaintiffs here must discover which officers brutalized which protesters.

---

[11] That is, even if Defendants were right to argue "there is no history of mishandling protests during a pandemic" as to protests in June (ECF No. 153 at 12) — and they are not — that argument completely dissipates by the later protests in Schedule A. And perhaps more importantly, the misconduct at those later protests, to the extent it is of the same kind at protests earlier in the pandemic, is direct and substantial evidence that Defendants are entirely wrong in making causal connections between the pandemic and their pervasive, protest-related misconduct.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Yet, Defendants are making objections to Plaintiffs discovering *anything* about "non-party officer[s]":

- "…insofar as any investigation is against a non-party officer" – Response to Request 14;

- "…insofar as any investigation is against a non-party officer" – Response to Request 15;

- "…insofar as any investigation or lawsuit is against a non-party officer." – Response to Request 16;

- "… it is an unwarranted invasion of privacy into non-parties [sic] who have no connection to the Complaints insofar as it seeks officers [sic] who have no connection to the plaintiffs." – Interrogatory 9; and

- "…it is an unwarranted invasion of privacy into non-parties [sic] who have no connection to the instant litigation." – Interrogatory 11.

Simply not *yet* being a party is not a cause to refuse discovery when there are countless Does and the discovery sought would help identify those Does. Each of the officers at issue (1) has relevant knowledge as a witness of NYPD brutality, and (2) could be a Doe defendant in the class actions, particularly because all of these requests seek to discover information about officers who have either been accused of misconduct *at the protests*, or already have been disciplined for it. Beyond that, the notion that — where Defendants are asserting that (1) no misconduct happened at the protests and (2) all misconduct is fully addressed by not-even-complete partial reforms — investigations into misconduct of officers are not relevant is absurd. And that remains true even if there were no chance of those officers become parties: Those investigations go directly to Plaintiffs' *Monell* claims (particularly the failure to discipline claims).

The same argument applies equally to Mayor's Office personnel (Interrogatory 11). But further, the knowledge of personnel in the Mayor's Office goes to what the Mayor knew and when. Since Defendants have *repeatedly* asserted that the Mayor's Office could not have relevant knowledge, going as far as to call a plain language description of "real-time notice" (that is, notice given in real-time, as events unfold) "not a legally cognizable concept,"[12] Defendants have placed at issue whether the Mayor's Office knew (to a moral certainty) that the NYPD would continue brutalizing protesters each successive day of the protests. But the basic idea is simple: Plaintiffs have alleged that the Mayor knew, in real-time, that protesters were going to continue to be brutalized by NYPD, and not only did

---

[12] This argument is strange. The significance of "real-time notice" is not doctrinal; it's factual. As a sort of at-a-minimum example, if the Mayor had real-time notice of NYPD misconduct at continuing protests on a Monday, he was on notice of that conduct for protests happening that Friday. No case needs to be cited for the basic proposition that time creeps forward, in a linear path.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



nothing, but indicated his approval of that brutality. Discovery into what the Mayor knew and when is relevant, proper, and proportional.

Similarly, in the Response to Request 5, Defendants object because the Requests seeks "records for retired members of service and others who have no knowledge about the plaintiffs." This is unnecessarily narrow. The training received by all officers who policed the 83 protests Plaintiffs identified is relevant, not just the officers who assaulted and arrested the Plaintiffs. And there is certainly no reason to exclude officers who were at these protests but happened to retire afterwards. This is a case with *Monell* claims, and we are conducting discovery on those *Monell* claims. 2/22/21 Tr. at 21:17-22:1.

Plaintiffs stand ready to discuss, under Judge McMahon Electronic Discovery Rules, how best to export information and what search terms to use, so that this information can be used. Plaintiffs are also happy to schedule a 30(b)(6) deposition at a time convenient to Defendants to depose an NYPD representative about how the relevant documents and information are stored, so we can lock in the best way to produce this information. Plaintiffs expect to begin this conversation at our meet and confer.

3. **Defendants are improperly limiting *Monell* discovery; the decades-long pattern of similar misconduct by the NYPD at other protests is relevant.**

   a. **Defendants improperly limit their responses to a narrow time period, or object as to the time period requested without stating what time period Defendants believe is relevant.**

Defendants have interposed various objections, all of which essentially state that the Defendants will not be producing documents or information because, Defendants allege, the time period requested is too broad:

- "it is not sufficiently limited in time as it seeks documents from January 1, 2018, which is more than two years before the Incidents" – Response to Request 1;

- "this request is overbroad insofar as it seeks documents that were not in effect on the dates in question." – Responses to Requests 1, 3, 4 and 5;

- "this request is not proportional to the needs of the case because … the burden and expense of searching for and producing 'all' of the requested policies and training materials, including those that were not in effect on the dates in question, far outweigh any likely benefit to plaintiffs." – Responses to Requests 1, 3, 4, 12 and 42;

- "it is not sufficiently limited in time because it seeks documents dating back [two to eighteen years, depending on the Response,] before the dates in question" – Response 3, 4, 5, 12, 25, 32, 36, 37, 38, 40, 41, and 42;



- "it is overbroad insofar as it seeks documents that were not in effect on the dates in question" – Response to Request 12;

- "it is not sufficiently limited in time because it seeks ongoing protests" – Responses to Requests 19, and 20;

- "it is not limited in time to the date of the protests" – Response to Request 21;

- "it is not limited in time in anyway," even though the Request seeks documents regarding the a Report from December 30, 2020 – Response to Request 22;

- Responses to Requests 13-15, and 21 do not actually object based on time period, but state that Defendants will only produce, "disciplinary proceedings related to incidents that occurred between May 29, 2020 and June 9, 2020," and similarly in the Response to Interrogatory 2 Defendants limit their response to "May 29-June 14, 2020."

In most cases, the Defendants do not even state with particularity what time period they will agree to produce documents for. And when Defendants did provide a time period, in Responses 13-15, 21 and 38, they limited it to only a few days: "May 28, 2020 to June 9, 2020."

In order to prove *Monell* liability, particularly the long pattern of deliberate indifference to the rights of protestors, Plaintiffs need and are entitled to documents showing what Plaintiffs assert is a two-decade pattern of constitutional violations by the NYPD before the protests started in May of 2020, including the  prior policies and procedures, and how those policies and procedures have (or have not) changed. It is also clear from both Schedule A and the face of the amended complaints in these consolidated actions, which include protests between May 28, 2020 to January 18, 2021—that a broader time period after June 9, 2020 is clearly relevant.

In fact, in the Memorandum of Law in the motion to dismiss, Defendants claim that, "there is no history of unlawful policing at protests," and, "[i]n response to the unprecedented protests and at the Governor's directive, the City of New York is revamping policing, including policing at protests." Both of these statements are false (and they contradict each other), and Plaintiffs are certainly allowed discovery to prove the falsity of the specific contentions the Defendants themselves are making, in a dispositive motion, before the Court. Defendants cannot assert that massive reform has made the case moot, but then refuse to produce discovery for the period representing those changes.

In sum, Defendants current position is unacceptable. Plaintiffs demand an immediate meet and confer on this issue, so we can try to reach agreement as to the applicable timeframe is for each Request, and avoid motion practice.

COHEN&GREEN

Page 20 of 36

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457 ·  FemmeLaw.com



**b. Defendants must produce the policies relating to racial slurs, racial bias, and racial profiling—and the Defendants' efforts (if any) to investigate racism at the NYPD.**

In the responses to Requests 1-4, Defendants object to producing documents concerning the "subsections 't' though 'w'" (sic) as they are not "specifically related to protests. These subsections request: "t) Policies, procedures, or protocols relating to racial profiling; u) Officers' use of race in law enforcement decisions and/or implicit bias; v) Officers' use of racial slurs or epithets; [and] w) Officers' affiliation with or participation in groups or website that promote racists views."

While policies and training materials may not specifically relate to protests—which in itself is a stark admission, because they certainly should include the rights of protestors, many of whom are people of color—the documents are still relevant because of the subject matter of the litigation. The protests, who proclaimed Black Lives Matter, took to the streets because police officers, including the officers in the NYPD, disproportionately used violence against black people. And the NYPD responded to these protests by using violence, often against black people. *Sierra's* First Amended Complaint, paragraphs 157-168, detail how NYPD supervisors express racist views, and how NYPD officers are members of white power organizations. Racism within the NYPD is relevant, and responsive documents must be produced.

Similarly, in Requests 32 through 35, Plaintiffs requested documents regarding the investigation of NYPD officers' affiliations with racists and white supremacist organizations, and the use of far-right and racists social media, like "Law Enforcement Rant." The Response to each of these was, after a litany of boilerplate objections, "defendants state that NYPD intelligence Bureau has no responsive documents." This Response is improper, because the Defendant is the City of New York, and documents and investigations beyond the NYPD Intelligence Bureau are relevant and must be produced. And if the City and NYPD—meaning every agency and division under the City or NYPD's control—has never conducted any such investigation into racism in the NYPD, Defendants must say so without qualification. If Defendants maintain this position, Plaintiffs will serve a request for admission in exactly the same terms of the Requests, and Defendants will need to admit each one (e.g., for Request 34, the required admission would be "Neither any part of the NYPD nor any agency of the City have conducted any investigation into NYPD officers' participation in online far-right/racist message boards, such as the Law Enforcement Rant site Deputy Inspector James Kobel posted on (see Sierra First Amended Complaint at ¶¶ 166-168)"). Anything else would be needlessly multiplying the proceedings.

Further, in Requests 30, 31, and 35, Plaintiffs request documents concerning complaints of racist language and behavior by NYPD officers, and any discipline that results. Defendants refer to their Responses to Requests 14 through 16 in Response. But in those Responses, Defendants only agree to produce a small subset of allegations against the named Defendants. Far more is relevant, and Plaintiffs are entitled to a complete production of complaints and discipline related to racism in the NYPD, because that is at issue in this case.

Plaintiffs ask that Defendants immediately meet and confer regarding these materials, including what documents are available, and when they can be produced.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



c. **Defendants must produce the policies relating to the policing of protests, including documents and information that shows who drafted these policies, who approved them, how they have changed over time.**

As described in detail above, Defendants that interposed a litany of objections to Requests 1 through 5, which seek documents relating the NYPD's training, policies and procedures regarding policing protests and addressing racism within the NYPD. Plaintiffs believe that every enumerated subsection in Request 1 is relevant, and Plaintiffs are not limiting themselves to the training, policies and procedures themselves. Defendants must also produce the documents showing how these training, policies and procedures were developed, who reviewed and approved them, what materials were consulted in developing them, and how these training, policies and procedures have changed over time.

All of this discovery is relevant to the *Monell* claims. For example, the nature and extent of NYPD policies and training in the relevant topics, as well as whether and when NYPD members received such training, is relevant to determining whether the police actions and responses were "reasonable" within the meaning of Plaintiffs' core claims that Defendants violated their First Amendment rights by unreasonably restricting them and that Defendants subjected Plaintiffs to unreasonable force in violation of their Fourth and Fourteenth Amendments because "[t]he reasonableness of an officer's actions must be assessed in light of the officer's training." *Weigel v. Broad*, 544 F.3d 1143, 1154-55 (10th Cir. 2008), *cert. den'd,* 2009 U.S. LEXIS 3582 (May 18, 2009) (cited in *Jackson v Tellado*, 236 F Supp 3d 636, 665, n 27 (E.D.N.Y. 2017) (same)); *see also Brown v. City of New York*, 798 F.3d 94, 101 at n. 11 (2d Cir. 2015) (noting that consideration of NYPD Patrol Guide provisions is appropriate in the context of determining if a use of force is reasonable); *Wright v Wilburn*, 194 FRD 54, 61-62 (N.D.N.Y. 2000) ("[d]efendant's conduct must be judged based on the objective reasonableness standard of a properly trained police officer"); *Davies v City of Lakewood*, No. 14-cv-01285 (RBJ), 2016 US Dist LEXIS 18355, at *8, n 2 (D Colo Feb. 16, 2016) ("an officer's training is relevant to the reasonableness of his conduct, and admissible"); *Tardif v. City of New York*, No. 13 CV 4056 (KMW), 2017 U.S. Dist. LEXIS 135607, at *17-19 (S.D.N.Y. Aug. 23, 2017) ("Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity") (citing *Smith v. City of New York*, 2015 U.S. Dist. LEXIS 102669, 2015 WL 4643125, at *3 (S.D.N.Y. Aug. 5, 2015) (Buchwald, J.) ("The [NYPD] Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer"); *Tardif v. City of New York*, 344 F.Supp.3d 579, 608 (S.D.N.Y. 2018) (allowing Patrol Guide provisions into evidence regarding excessive force and deliberate indifference claims at trial).

Plaintiffs expect Defendants to be prepared to discuss the scope of their production on these issues at the meet and confer. In addition, Plaintiff's Federal Rule of Civil Procedure 30(b)(6) notice to the City of New York will include a request for testimony on the specific policies within the enumerated topics and details regarding what documentation is available for each.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



**d. Defendants must produce documents regarding prior lawsuits where the City was found liable for protest-related misconduct.**

In the Responses to Requests 26 through 29, Defendants flatly refuse to produce documents relating to *Dinler v. City of New York*, 04-CV-7921, *Abdell v. City of New York*, 05-CV-8453 and *Vincent v. Winski*, 14-CV-7744 (VSB), apparently claiming that these three cases are too dissimilar to the present Consolidated Cases to warrant discovery. Not so. While numerous similarities exist between those three cases and the present ones, Plaintiffs especially note:

In *Dinler*, Defendant Terrence Monahan accused Republican National Convention protestors ("RNC") of blocking the sidewalk and proceeded to block protestors from dispersing by blocking them with a line of NYPD officers on bicycles and conducting mass arrests of protestors, even those who pleaded to leave the group. *Dinler v. City of N.Y.*, 2012 U.S. Dist. LEXIS 141851, at *29 (S.D.N.Y. Sep. 30, 2012). The Court granted summary judgment in favor of plaintiffs for these false arrest claims.

In *Abdell*, after NYPD officers arrested plaintiffs while conducting mass arrests at demonstrations relating to the 2004 RNC, a jury awarded $40,000 each to four plaintiffs unlawfully arrested and found Defendant Terrence Monahan liable for $25,000 in punitive damages for his callous disregard to the plaintiffs' rights, as videos showed that he arrested protestors in retaliation to their participation in marches, rather than based on violation of any law. *Abdell v. City of N.Y.*, No. 05-cv-8453 (RJS), 2014 U.S. Dist. LEXIS 107918, at *7 (S.D.N.Y. Aug. 5, 2014).

In *Vincent*, the plaintiff participated in protest marches during the Occupy Wall Street ("OWS") movement, was four times arrested, and NYPD officers "grabbed Plaintiff, pulled him to the ground, [and] placed Plaintiff's face firmly into the sidewalk before placing flexicuffs on him." (*Vincent* Compl ¶ 84). The Court denied defendants' motion to dismiss. Among the many similarities to *In re: New York City Policing During Summer 2020 Demonstrations*, the plaintiff in *Vincent* had a First Amendment retaliation claim, which the Court refused to dismiss as NYPD officers arrested him because he was engaging in political speech at the OWS protests. *Vincent*, 2018 U.S. Dist. LEXIS 47537, at *40 (S.D.N.Y. Mar. 22, 2018).

**e. Defendants must produce documents regarding all disciplinary investigations, regardless of whether they are substantiated or not.**

In the Responses to Requests, 14-16, 26, 27, and 29 Defendants object because the documents "concern allegations of misconduct that are not substantiated; did not result in a finding of misconduct; or are not similar in nature to the allegations herein." This is not a valid objection. Discoverability does not turn on whether a disciplinary proceeding is "substantiated and completed." *See, e.g., Gibbs v. City of New York*, 243 F.R.D. 95, 96 (S.D.N.Y. 2007) ("[T]he fact that CCRB complaints are unsubstantiated does not make them irrelevant and undiscoverable[.]"). Incidents under investigation plainly relate to Defendants' policies of excessive force and unlawful arrest at protests against police brutality as well as their real-time notice of problems. And allegations and complaints that are *not* substantiated and completed are not only relevant, but are direct evidence of Plaintiffs' claims that NYPD officers rarely if ever face meaningful discipline for violence and misconduct at protests. That is, the nature and allegations involved in unsubstantiated claims of

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



misconduct that NYPD has rejected is relevant to whether NYPD has failed to properly impose discipline it *should have*. It is hard to imagine better evidence of that.

Further, while in theory some disciplinary complaints or actions are too dissimilar to be relevant, most will be. Any discipline or investigation into a use of force is relevant because force is at issue in the Consolidated Cases, and because officers uniformly deny excessive force, even when it was used, so the discipline relates to the officers' veracity. Any disciplinary complaints or actions concerning protests or other First Amendment activities are relevant. And any other complaint or action that implicates an officers' honestly is relevant. Broad disclosures is thus appropriate here.

### f. Defendants' reliance on *Simms v. City of New York* is improper.

In multiple Responses, Defendants take a narrow view of *Monell* discovery that simply cannot be supported by the relevant authority—or by Judge McMahon's clear view of this case. In the Responses to Requests 14-16, 26-29, and 36-38, as well as Interrogatories 7-9, Defendants "object and state that unrelated actions, premised on different sets of factual allegations, cannot support an inference of the existence of unconstitutional customs and policies and thus cannot support a claim against the City. *See Simms v. City of New York*, 480 F. App'x 627 (2d Cir. 2012)." The objection makes no attempt to explain how Defendants believe *Simms* is relevant to the specific Request or Interrogatory.

This objection is problematic for multiple reasons. But, at base, Plaintiffs are not seeking discovery into "unrelated actions premised on different sets of factual allegations." Plaintiffs have identified nearly identical prior protests, where NYPD officers, including some officers, like Defendant Monahan, who are individual Defendants here, engaged in the same illegal arrests, kittling, and violence that Plaintiffs and the class members were subjected to, under the same policies.

Further, Defendants do not make any effort to delineate what prior protests, arrests, and policies are sufficiently similar to warrant production. Instead, it appears that Defendants are objecting to any *Monell* discovery based on their misreading of *Simms*. This is not acceptable, and if Defendants are withholding information or documents based on an assertion that the factual allegations are not sufficiently similar, Defendants must identify the exact documents or information being withheld so Plaintiffs can evaluate and challenge this assertion—*i.e.*, exactly what is required under the 2015 Amendments.

### 4. When Defendants do agree to produce documents, the proposed production is far too narrow.

Most of the Responses say nothing about what will be produced. But in the Responses to Requests 8, 11, 13, and 14, Defendants do agree to produce specific categories of documents. Unfortunately, the proposed production is far too narrow. Those requests each identify, at great length, every category of relevant document that must be produced. Despite these identifications, Defendants do not even nominally attempt to explain why the identified categories of document are somehow not discoverable. And they are.



For other requests, Plaintiffs have asked only for documents "sufficient to identify" particular people or information. *See,* Requests 11 and 13. These Requests are, by their nature, satisfied once all the requested information appears in documents that are produced. Defendants' objections — and proposed productions — miss the mark on these because metric is whether the documents reflect the information sought. Thus, Defendants should amend their Responses to indicate whether they intend to produce documents that in fact are sufficient to gather the information sought. Otherwise, Defendants must explain how each particular category of information sought is either not discoverable or not reasonably within Defendants' control. The current Responses do neither, and therefore fail.

Plaintiffs are prepared to discuss search terms in particular document categories, and to otherwise explain the relevance of particular categories of documents if Defendants have particular objections. Similarly, Plaintiffs are prepared to help counsel identify the kinds of documents that contain the information sought in Requests 11 and 13. Otherwise, no later than five days after our meet and confer, please amend Defendants' Responses and indicate whether you plan to produce every category of document identified before the July 31 deadline—along with documents sufficient to identify the information sought—and provide real explanations where Defendants do not intend to produce information or documents.

**5.  Defendants' 160.50 Objection Should Be Moot, and HIPAA Objections Are Improper.**

Defendants interpose objections to Requests 7-11, 13, 16, and 38 because the responsive documents are sealed under CPL § 160.50, or are protected by the Health Insurance Portability and Accountability Act ("HIPAA").

For CPL § 160.50, Plaintiffs' understanding from the parties' agreement on video is that all parties will make a joint motion for an Order unsealing any documents sealed under 160.50, and relating to the arrest of protestors at the 83 protests Plaintiffs identified.

On HIPAA, Defendants' objections as they stand are inadequate. In Defendants' objection to Request 7, they suggest that documents "for injured officers are protected from disclosure by [HIPAA]," without even a suggestion of what those documents might be. So too with Request 8 ("it seeks medical records of non-parties that are protected from disclosure by [HIPAA]"), 9 (same, defining HIPAA again) and 14 (same, defining HIPAA a fourth time). These boilerplate objections — and they are clearly copied and pasted given that HIPAA is defined in each, as if it is appearing for the first time — are not sufficient. HIPAA only applies in certain circumstances, and to certain entities. Yet the objections do not explain how Defendants are acting as a health plan, health care clearinghouse, or healthcare provider to either officers or third-parties.[13] If Defendants are not a covered entity, HIPAA simply does not apply. And Defendants are not.

---

[13] If HIPAA applies to Defendants, and applies *specifically* to Defendants' use of anything relating to NYPD Officers' injuries, the fact that Defendants filed in unredacted form photographs of purportedly injured officers (ECF No. 106 at 5) seems problematic. And along with the HIPAA releases Plaintiffs are requesting, Plaintiffs demand Defendants provide some proof they had HIPAA releases from the four individual officers

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Nonetheless, Defendants have suggested explicitly that "400 NYPD personnel were injured" in the Protests, and (improperly) filed photographs of purportedly injured officers in their motion to dismiss (ECF No. 106 at 5), all while saying they can't provide *similar* records for HIPAA reasons. So, as with any party asserting injuries, Plaintiffs expect Defendants will promptly provide HIPAA releases for each officer asserting injuries, along with a list of providers each officer has seen.

Plaintiffs ask that Defendants state, at or before our meet and confer, whether they intend to provide appropriate releases.

Separately, Defendants must amend their improper HIPAA objections to explain how, exactly, the records sought implicate HIPAA, or otherwise withdraw the objections.

### 6.  Failure to Produce Privilege Logs

Rule 26(b)(5)(A) of the Federal Rule of Civil Procedure provides that a party withholding discoverable information on the grounds of privilege or subject to protection as trial preparation material must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Local Civil Rule 26.2 also imposes requirements on litigants with respect to providing specific information regarding any privilege assertion at the time the assertion is made.

On April 8, 2021, Defendants produced documents DEF000001-DEF000498 as part of their initial disclosures. Many of these documents contained redactions, and Defendants appear to have withheld documents based on privilege, but Defendants have not identified which records Defendants have withheld on which privilege grounds, set forth the basis for the redactions in the records produced, or produced the required privilege logs.  Defendants also heavily redacted their Interrogatory Responses, and the same deficiency exists there too. Yet, on the initial disclosures, Defendants have not made any express claim of privilege, let alone provided the type of information that would allow Plaintiffs the ability to assess the claim.

Please provide a privilege log for the documents produced to date in this litigation no later than five days following our meet and confer. In the future, please provide the required privilege logs at the same time as you make any future productions. *See In re Chevron Corp.*, 749 F. Supp. 2d 170, 182 (S.D.N.Y.), aff'd sub nom. *Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010) (finding privilege was waived by the failure to timely provide a log, because "the presumption that the privilege log is due with the response to a discovery request").

Further, if the Defendants are going to assert other privileges, such as the law enforcement privilege or the deliberative process privilege, they must do so soon, so any disputes can be resolved. In the Responses to Requests 1, 2, 3, 4, 14, 21, 22, 25, and 42. Defendants state that, "Defendants

---

whose photographs appear in Defendants' motion to dismiss prior to filing. Plaintiffs will follow up with a formal request.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



further object insofar as any documents or portions of documents are protected from disclosure by the law enforcement privilege because they would reveal information that would interfere with ongoing investigations," or Defendants state that documents may be protected by the "deliberative process" privilege.  But shortly after, the Responses state that "Defendants are not currently withholding documents on the basis of any privilege, but if any such documents are identified, defendants will supplement this response and provide a privilege log."

It seems likely that the Defendants will eventually rely on the law enforcement privilege, deliberative process privilege, or claim an interference with ongoing investigations. But by failing to assert it now, Defendants are delaying the resolution of any disputes, delaying discovery, and failing heed Judge McMahon's warning that, "you will be litigating this case toward a December 31, 2021 deadline for discovery" and that the parties shouldn't "think that's going to be delayed." 2/22/21 Tr. at 20:25-22:2.

Notably, the Response to Request 7 includes an objection based on law enforcement privilege, but it does not include language stating that no documents are being withheld based on the privilege. Thus, we infer that documents were withheld, and they must be included on a privilege log.

Further, even if Defendants cannot identify every specific document they might assert a privilege over because their review is incomplete, Defendants must know the categories of documents, and ongoing investigations, that are likely relevant. And beyond that, Defendants *have* asserted privileges—which a party cannot do without a good faith basis. Thus, we ask that Defendants state what categories of documents, and what ongoing investigations, warrant withholding documents based on the privilege, at or before our meet and confer, so Plaintiff can evaluate the merits of this claim and the parties can resolve any disputes expeditiously.

7.  <u>**Other Deficiencies in Defendants' Responses to the Interrogatories.**</u>

   a.  **Defendants must each respond to and verify the Interrogatories.**

Rule 33(b) of the Federal Rules of Civil Procedure require that the parties to whom interrogatories are directed answer them in writing and sign and verify them under oath. Answers provided by attorneys do not suffice. However, Rule 26(g) requires that attorneys sign and certify that the disclosure is "complete and correct as of the time it is made" and that all objections included are appropriate. Relatedly, a party responding to an interrogatory must provide answers based on reasonable investigation of documents and other information in and related to the case. *See, e.g., Trueman v. N.Y. State Canal Corp.*, No. CIV. 1:09-CV-049 (LEK)(RFT), 2010 WL 681341, at *5(N.D.N.Y. Feb. 24, 2010) (Treece, M.J.); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 563 B.R. 737, 750 (Bankr. S.D.N.Y. 2017). Beyond that, "[t]he responding party must provide the best answer they can based upon current information in their possession" and "[e]ach answer must be based upon all of the information at the responding party's" and their "attorney's disposal." *Trueman*, 2010 WL 681341, at *2 and 5. Additionally, interrogatory responses (and written responses to document demands) are  evidence, *see* Fed. R. Civ. P.  33(c) ("An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence"), and can  constitute party admissions at trial, *see, e.g., Skinner v City of NY*, No. 15-CV-6126(KAM)(JO), 2017 US Dist LEXIS 104650, at *14-

COHEN&GREEN

Page 27 of 36

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



15 (EDNY Apr. 7, 2017); *see also, e.g., Gaul v Chrysler Fin. Servs. Ams. LLC*, No. 1:13-CV-433 (TJM/RFT), 2014 US Dist LEXIS 52449, at *30 (NDNY Apr. 16, 2014) (identifying among the "general aims" of interrogatories to "serve as admission[s] for trial"). Under Fed. R. Civ. P. 26(g)(2), "[o]ther parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention."

In this case, none of the interrogatory responses provided are signed or verified by the parties under oath. Additionally, the responses do not appear to be the "best answer" the responding party can provide "based upon all of the information at the responding party's" and their "attorney's disposal."

We therefore hereby demand that each Defendant provide appropriate, signed, verified interrogatory responses—based on all of the information available to them and their counsel—at or before our meet and confer.

Further, in providing those new interrogatory responses, we demand that Defendants refrain from interposing the improper, boilerplate objections and purported privilege assertions that we have complained about in regard to Defendants' discovery responses. We also demand that each individual Defendant be asked what they know about each requested topic. The Interrogatories are propounded on the City of New York and each individual, and Plaintiffs are entitled to what each person knows.

### b. Defendants improperly use Fed. R. Civ. P. 33(d) to refer to documents they have not provided or identified, rather than actually answering the Interrogatory.

By way of one such example of a serious deficiency that cuts across many interrogatory responses, after interposing a number of improper objections, instead of providing responses to identification interrogatories such as Interrogatories 1, 6, 12, and 13, Defendants purport to invoke Fed. R. Civ. P. 33(d) and "refer plaintiffs to the documents produced as part of defendants' Initial Disclosures" and "documents to be produced in response to plaintiffs' First Consolidated Set of Requests for Documents" – without indicating which documents they mean to refer to. Both the reliance on Fed. R. Civ. P. 33(d) and the substantive response are improper. By its clear terms, Fed. R. Civ. P. 33(d) only allows the responding party to exercise its option to answer an interrogatory by producing business records when "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same for either party." And even then, the responding party must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could" under Rule 33(d)(1) – which Defendants have not done in their interrogatory responses.

With respect to Interrogatories 1-6, 12, and 13, in each case, the answers cannot be determined by reference to business records alone, the burden is not substantially the same for both parties, and Plaintiffs require appropriately researched, sworn, and verified answers from each Defendant. For example, most, if not all, of these interrogatories seek at least some, if not principally, information



within the unique knowledge of each individual Defendant, as well as the Defendant City and its agents, which cannot be gleaned from business records – certainly not in sworn interrogatory responses that can be used in depositions, at summary judgment, trial, and otherwise. For example, Interrogatories 1-6 require Defendants to identify NYPD members, including supervisors, who were present or performed official duties at or near each Protest Location; No. 6 requires Defendants to identify each person stopped, detained, questioned, or Arrested at or near each such Protest Location; No. 12 requires Defendants to identify, for each Plaintiff, other person identified in the complaints, and person identified in response to No. 6, the NYPD members who "directly observed that person or their conduct"; and No. 13 requires Defendants to identify the NYPD members who "determined there was probable cause to arrest" Plaintiffs and others. Even if Defendants had identified the "business records" they might claim provide some responsive information, which they have not, that identification would not supply the information sought in the clear terms of each of those interrogatories. And that information is critical to Plaintiffs' pursuing their claims in a meaningful and efficient manner to the extent that Defendants' incomplete and piecemeal responses are prejudicing Plaintiffs' ability to prosecute these cases. For example, Plaintiffs require both Defendants' sworn interrogatory responses, as well as the records sought in their discovery requests, in order to effectively identify potential witnesses; determine which witnesses to serve deposition notices on; and examine those witnesses on the topics in the relevant interrogatories and discovery requests, and other matters relevant to the parties' claims and defenses.

Defendants must be prepared to discuss at the meet and confer whether they are going to produce and identify the relevant records, or whether they will provide specific responses; right now Defendants have done neither.

### c. Defendants repeatedly fail to identify witnesses.

Plaintiffs cannot glean the identities of the NYPD members who were present at each Protest Location; who stopped, detained, questioned, or Arrested people at or near such arrest location; and who directly observed the conduct of each person who was stopped, detained, questioned, or Arrested and determined there was probable cause to stop, detain, question, or Arrest them by referring to Defendants' initial disclosures. A party's obligations under Fed. R. Civ. P. 26(a)(1)(A) and Fed. R. Civ. P. 33 are different. For example, Fed. R. Civ. P. 33 requires certain automatic disclosures, including, among other things, the identities of certain individuals, as well as certain records, "*that the disclosing party may use to support its claims or defenses*." There is no such limitation on the scope of the disclosures that are required under Rule 33, and Defendants' disclosures of some records they may use to support their claims or defenses to satisfy their Rule 26(a)(1)(A) is no substitute for interrogatory responses sworn by each Defendant providing the responses to the specific interrogatories posed, which are themselves evidence and can be used at each Defendant's deposition, at summary judgment, at trial, etc.

Similarly, Interrogatory No. 5 seeks the identity of SRG officers who were assigned to the Protest Locations in Schedule A or "who performed any of the 'Assignments' described in Sections I and II of the March 2019 SRG Guide." Defendants completely fail to answer this request, objecting on the basis of overbreadth and relevance as well as because "Section 1 of the March 2019 SRG Guide is inapplicable to this matter." However, Section I of the SRG Guide relates to "SRG Patrol" including



"Mobilizations" such as those Defendants have claimed in their motion to dismiss were required to respond to "unscheduled" demonstrations and other events, including the Protest Locations. And Section II – which Defendants do not mention in their response or objections – relates to "Public Order" including "Disorder Control Operations" an "Mass Arrests." The identities of SRG officers assigned to the Protest Locations or performing assignments at them, are plainly relevant given that the amended complaints specifically refer to the active presence of SRG at the protests that form the basis of the litigation. *See, e.g. People* FAC ¶¶ 85-97; *Payne* FAC ¶¶ 76-80. And SRG officers injured both individual plaintiffs and countless members of the various classes. To the extent that Defendants for some reason believe Section I of the SRG Guide is not applicable, Defendants should explain how and why, along with responses disclosing relevant information.

Interrogatory No. 6 requests that Defendants "identify each and every person who NYPD personnel stopped, detained, questioned or Arrested" at or near the Protest Locations and provide certain information related to those stops or arrests. Defendants interpose numerous objections and point to their response to Request 9, which limits responses to plaintiffs who were arrested. The identity of individuals stopped, detained, questioned or arrested at the Protest Locations is plainly relevant to this matter because such individuals are percipient witnesses to the events underlying Plaintiffs' claims, including with respect to their false arrests, the uses of excessive force against them, their treatment being subjected to NYPD large-scale arrest processing during the COVID-19 pandemic, and the like. They are also potential class members. potential witnesses to Defendants' mass arrest procedures and are potential class members. Moreover, such information should be readily retrievable.

And Interrogatory No. 7 seeks the identities of individuals who submitted complaints to any agency regarding NYPD at or near the Protest Locations (including the CCRB, DOI and the Law Department) and Interrogatory No. 8 seeks the identities of officers subject to those complaints. Further, Interrogatory No.  9 seeks the identities of officers who were disciplined for conduct occurring at or related to any of the Protests. Defendants refuse to answer these interrogatories on the basis of burden and relevance, citing *Simms v. City of New York*, 480 F. App'x 627 (2d Cir. 2012). *Simms* is inapposite, including because these interrogatories are not seeking information wholly unrelated to the incidents in the complaints. In fact, they are limited to complaints and discipline related to the very Protest Locations and protests that form the basis of the consolidated cases. Complaints made against officers and officer discipline at the protests in controversy are plainly relevant to the Plaintiffs' *Monell* claims and claims for injunctive relief. Nor is this information unduly burdensome as Defendants have made no effort to substantiate these claims, the identity of individuals making complaints, and the officers involved, and any discipline imposed is available to the Department upon reasonable inquiry.

Defendants must be prepared to discuss at the meet and confer when they will provide the names of all witnesses, so the deposition schedule can be negotiated.

### d.  Many of Defendants' other Interrogatory Responses are Deficient

Defendants' responses to many interrogatories, including Interrogatories 2, 3, 4, 10, 11, 12, 14, are deficient in that they are either incomplete or nonresponsive. Fed. R. Civ. P.  33(b)(3) requires that

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



each interrogatory response be answered "fully." If an interrogatory cannot be answered fully, "despite conducting a diligent inquiry," "any efforts utilized should be set forth in detail to ensure a sufficient response is interposed." *Harris v. Bronx Parent Hous. Network, Inc.*, No. 18-CV-11681 (GBD)(SN), 2020 WL 763740, at *2 (S.D.N.Y. Feb. 14, 2020); *Zanowic v. Reno*, No. 97-CV-5292 (JGK)(HBP), 2000 WL 1376251, at *3 n.1 (S.D.N.Y. Sept. 25, 2000) ("[A] party's failure to describe his efforts to obtain the information sought by plaintiffs renders his responses insufficient.").

Similarly, Defendants' responses to Interrogatories 2, 3, 4, and 12 are incomplete and improper in referring Plaintiffs to Defendants' initial disclosures and first production (as discussed above) and in stating that the City is "currently searching for additional responsive information and will provide further responsive, relevant information, to the extent it exists, as soon as possible." Similarly, the responses to Interrogatories 10, 11, and 14 merely state that Defendants are "currently searching for additional responsive information." Defendants have not identified any steps taken to secure the missing information or give a date by which they will provide full responses and must do so immediately.

8. **Defendants must meet and confer regarding the rolling production, and prioritize the production of documents that will allow depositions to begin as soon as possible.**

Plaintiffs cannot wait until July 31, 2021 to get all, or at least the majority, of the documents. Defendants must produce documents, at a minimum, on a weekly basis, so Plaintiffs can review these documents and prepare for depositions.

In addition, Plaintiffs believe that certain documents should be produced as soon as possible, as they relate to certain core issues in the litigation and will allow Plaintiffs to prepare for depositions, and indeed begin taking those depositions, before July 31, 2021, to ensure all discovery is completed by the deadline. Plaintiffs propose that the following be produced immediately:

- All proper transcripts of the individual named Defendants, whether from deposition, hearing, or trial, except for purely criminal proceedings;

- All requested training, policy, and procedure documents;

- All documents concerning the protests Plaintiffs attended.

9. **Conclusion**

In Section 1.b. through Section 1.k., above, Plaintiffs ask Defendants to remove patently invalid objections at or before our meet and confer. Keeping invalid objections in the Responses, and indeed interposing them in the first place, simply multiplies these proceedings both unreasonably and vexatiously. Similarly, in Section 1.a., Plaintiffs ask Defendants to commit—unambiguously—to revising their Responses within five days of the meet and confer, to conform with the Federal Rules that require specific objections. And in Section 6, Plaintiffs ask Defendants to commit to providing a privilege log related to the documents produced and to provide one with each document production going forward. We assume that Defendants have no objecting to following black letter law, and thus no meet and confer is necessary on these issues. If this is not accurate, let us know immediately.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



In the remaining Sections, above, Plaintiffs have teed up the issues—in painstaking depth—that we need to address at our meet and confer(s) so that we can reach a prompt resolution, either through agreement or by taking issues to the Court.

Yours, &c.,

/s/
_____

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow Plaintiffs, on behalf of all Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

**[Full signatures on following page]**

cc:
All counsel of record.

Cohen&Green P.L.L.C.   ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



**BELDOCK LEVINE & HOFFMAN LLP**

By: _____

Jonathan C. Moore
David B. Rankin
Luna Droubi
Marc Arena
Deema Azizi
Rebecca Pattiz
Katherine "Q" Adams
Regina Powers

99 Park Avenue, PH/26th Floor
New York, New York 10016
   t: 212-490-0400
   f: 212-277-5880
   e:  jmoore@blhny.com
      drankin@blhny.com
      ldroubi@blhny.com
      marena@blhny.com
      dazizi@blhny.com
      rpattiz@blhny.com
      qadams@blhny.com
      rpowers@blhny.com

**WYLIE STECKLOW PLLC**

_____

By: Wylie Stecklow
Wylie Stecklow PLLC
231 West 96th Street
Professional Suites 2B3
NYC NY 10025
t: 212 566 8000
Ecf@wylielaw.com

**GIDEON ORION OLIVER**

_____

277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: _____

Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
   t: (929) 888-9480
   f: (929) 888-9457
   e: elena@femmelaw.com
     remy@femmelaw.com
     jessica@femmelaw.com

**LORD LAW GROUP PLLC**

_____

Masai I. Lord
14 Wall St., Ste 1603
New York, NY 10005
P: 718-701-1002
E: lord@nycivilrights.nyc

*Counsel for Plaintiffs in Sow v. City of New York, No. 21-cv-533*

COHEN&GREEN                                               Page 33 of 36

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  · t: (929) 888.9480  · f: (929) 888.9457  · FemmeLaw.com



                                        LETITIA JAMES
                                        *Attorney General of the State of New York*

Anisha S. Dasgupta                      By: /s/ _____
  *Deputy Solicitor General*            Jessica Clarke, *Chief of Civil Rights Bureau*
Philip J. Levitz                        Lillian Marquez, *Assistant Attorney General*
  *Assistant Solicitor General*         Swati Prakash, *Assistant Attorney General*
                                        Travis England, *Assistant Attorney General*
                                        Jaclyn Grodin, *Assistant Attorney General*
                                        Gregory Morril, *Assistant Attorney General*
                                        Office of the New York State Attorney General
                                        28 Liberty Street, 20th Floor
                                        New York, NY 10005
                                        (212) 416-8250
                                        Jessica.Clarke@ag.ny.gov

*Counsel for Plaintiff in People of the State of New York v. City of New York, No. 21-cv-322*


NEW YORK CIVIL LIBERTIES UNION FOUNDATION

/s/ _____
Jessica Perry
Molly Biklen
Daniel E. Lambright
Robert Hodgson
Lisa Laplace
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
mbiklen@nyclu.org
jperry@nyclu.org
dlambright@nyclu.org
llaplace@nyclu.org
cdunn@nyclu.org

*Co-Counsel for Plaintiffs in Payne v. De Blasio, No. 20-cv-8924*



THE LEGAL AID SOCIETY

/s/ _____
Corey Stoughton
Jennvine Wong
199 Water Street
New York, NY 10038
(212) 577-3367
cstoughton@legal-aid.org
jwong@legal-aid.org

*Co-Counsel for Plaintiffs in Payne v. De Blasio, No. 20-cv-8924*


HAMILTON CLARKE LLP

/s/ _____
Lance A. Clarke, Esq.
Jason Clark, Esq.
Michael L. Spiegel, Esq.
48 Wall Street, Suite 1100
New York, NY 10005
(212) 729-0952

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, No. 20-cv-10291*


THE LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.

/s/ _____
Joshua S. Moskovitz, Esq.
14 Wall Street, Suite 1603
New York, NY 10005
(212) 380-7040

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, No. 20-cv-10291*

COHEN&GREEN

Cohen&Green P.L.L.C.   ·   1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



RICKNER PLLC

/s/_____
Rob Rickner
14 Wall Street
Suite 1603
NY NY 10005

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, No. 20-cv-10291*


KAUFMAN LIEB LEBOWITZ & FRICK LLP

/s/ _____
Douglas E. Lieb
10 East 40th Street, Suite 3307
New York, NY 10016
(212) 660-2332
dlieb@kllf-law.com

*Counsel for Plaintiff in Wood v. de Blasio, et al, No. 20-cv-10541*


STOLL, GLICKMAN & BELLINA, LLP

/s/ _____
Andrew B. Stoll
300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201
(718) 852-3710
astoll@stollglickman.com

*Counsel for Plaintiff Cameron Yates, No. 21-cv-1904*

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com