

January 31, 2022

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

**Re: In re: New York City Policing During Summer 2020 Demonstrations, 1:20-CV-8924 (CM) (GWG) — This Letter Relates to All Cases**

Dear Judge Gorenstein:

I write on behalf of the consolidated Plaintiffs in the case above, regarding prior protest discovery (addressed in the Court's Orders at ECF No. 352 and 359). Plaintiffs have two issues they wish to raise — first, Defendants have once again not even "considered seeking an extension of time to produce documents, choosing instead to ignore the Court's Orders." *Martinez v City of NY*, 2018 US Dist LEXIS 13409, at *34, n 12 (EDNY Jan. 24, 2018). And second, to provide arguments the Court previously invited on the scope of prior protest discovery (whether appropriately framed as a reply or as a reconsideration motion[1]).

**Failure to Comply with Court Orders**

The Court's latest Order was clear. It offered Defendants two options on documents the parties should have "should have met and conferred [about] in detail long ago" — but didn't because "of the City's failure to comply with the meet-and-confer process." ECF No. 352. Those options were: (1) that the "[t]he document production at issue ***shall be completed*** by January 28, 2022" or (2) that Defendants "***shall produce all documents available*** on that date and ***shall serve on plaintiffs*** on that date a detailed sworn statement from an individual with personal knowledge of the search describing all efforts made to respond to the request, explaining why the January 28, 2022, deadline was impossible to meet, and stating when the documents will be produced." ECF No. 359 (emphasis added).

Instead, Defendants produced nothing at all: there were no documents and there was no explanation or sworn statement. Put directly, Defendants intentionally disregarded the Order. In an email about depositions, Defendants simply declared "Defendants agree to produce prior depositions of deponents on a rolling basis." Though I raised the inconsistency with the Court's Order, and reminded counsel of the requirement to explain why the "deadline was impossible to meet" *and* give a date when "documents will be produced" if compliance was impossible, I received no answer. And while I sent an email informing Defendants of our intention to seek relief because

[1] Plaintiffs had initially planned to see what Defendants produced on Friday, and decide what to file and ask for based on that production. But Defendants produced nothing. And waiting longer is not feasible.



of their failure to comply with the Court's Orders, I received nothing in response (and relevant inquiries were simply overlooked when I made them in other threads regarding other overdue productions).

If this were the first time Defendants interpreted the Court's Orders as gentle suggestions, it would be one thing.[2] But that has been their attitude throughout this case — as the Court knows very well at this point, and explained in its comments when we needed to seek intervention during a recent deposition. At this stage, Plaintiffs are left begging the Court to hold a conference to discuss how to handle this. Despite an Order explicitly threatening "other sanctions" as well as costs (*see, e.g.,* ECF No. 352), Defendants continue to do whatever suits them. It matches a pattern observed by Judge Pollak some time ago (*see, e.g., Martinez,* at *34 n. 12) — and unfortunately suggests that Judge Pollak's order was not quite the wakeup call Corporation Counsel assured the Court it was to evade the most dramatic sanctions in that case.

At this stage, the schedule the Court has set is blown. The parties have been separately discussing measures to request appropriate extensions and adjustments, and will continue to do so. But none of that matters if the City continues to treat the Court's Orders as mere requests. So we ask for at least a conference to discuss how we can get this case back on track, if not for sanctions that begin to cure the prejudice from the City's continued failures to follow the Court's Orders.

## <u>Reply/Reconsideration</u>

The Court allowed Defendants a second chance at filing a "proper letter that responds to the issues raised" in Plaintiffs' motion (ECF No. 341), and with that, permitted Plaintiffs a chance to reply on or before January 25. The issue of prior protest documents — as the Court observed — is "important," (ECF No. 352), and it is just as important that Plaintiffs get an appropriate scope of documents. Plaintiffs had been preparing a substantive reply (most of which is repurposed below) when the Court entered its order on January 24, resolving the motion.

Thus, Plaintiffs want to essentially offer the reply they would have filed the afternoon of the 24th, had the Court not entered its order that morning. Because the Court has entered an order, this portion of the letter is styled as a motion for reconsideration — but we ask that the Court essentially treat it as it would have any reply: if the arguments below would have swayed the Court, we ask the Court to consider them; if they would not have, then the motion should be denied.

Substantively, there is one major issue and one minor issue. The major issue is that documents from the World Economic Forum era of protest policing (e.g., 1999-2002) are highly

[2] Relatedly, we understand that many NYPD members were occupied with the funeral and memorial taking place Thursday and Friday this week. However, that does not explain why Corporation Counsel failed to ask for more time — especially given that, as we understand it, most of the relevant documents are in the Corporation Counsel's control. Nor does it explain why Defendants have simply ignored emails on this topic today.



relevant. As Defendant Terrance Monahan put it in his CCRB interview about Mott Haven,[3] [redacted] Ex. 1 at 18-19. As explained below in more detail, because nothing has changed since then in terms of protest policing (*see, e.g.,* SOW FAC ¶¶ 460-61 (30(b)(6) witness for the "City could identify no impact that litigation against Defendant City between 2000 and 2011 had on Defendant City's relevant policies, practices, customs, or NYPD training")) — and because the World Economic Forum era cases were being litigated *while* the NYPD was engaged in the same tactics against Occupy Wall Street and Republican National Convention protesters — documents from that era are inexorably intertwined with the history and long-standing brutal approach the NYPD has taken to policing protests.[4] The minor issue is that, given the nature of the application — that is, that Defendants' refusal to meet or respond to Plaintiffs' requests for months is "not acceptable" — no exception to the mandatory fee shifting in Rule 37 applies, and the Court should grant Plaintiffs the fees related to this application.

## I. Documents Related to the NYPD Response to Protests between 1999 and 2003 are Highly Relevant and Defendants Only Claimed Gathering them "May" be Burdensome.

### A. The 1999-2003 protest documents are highly relevant.

The operative pleadings in these cases include allegations about patterns of NYPD misconduct, and litigation over it, dating back to 1999, which the pleadings link to the constitutional violations at issue in these cases. For example, in describing the NYPD's long history of responding to certain protests by deploying the same unconstitutional policies and practices deployed against Plaintiffs in these cases, such as the use of excessive force, mass and pre-emptive arrests, and retaliatory, excessive detentions, the *Sow* First Amended Complaint (ECF No. 96, "*Sow* FAC", ¶¶ 421-29, 451-54, 472-73) refers to and discusses the following protests that took place between 1999-2003 and resulted in extensive discovery and litigation:

- NYPD responses to protests between 1999-2001 in connection with which the NYPD established policies of subjecting protest arrestees to excessive detention by denying them individual consideration for summonses and Desk Appearance Tickets ("DATs"), *see Sow* FAC ¶ 429(a), citing *Mandal v. City of New York.,* 02-cv-1234 (WHP)(FM) (S.D.N.Y.) and related cases; *see, e.g.,* 2006 WL 2950235, at *4-7 (S.D.N.Y. Oct. 17, 2006)

---

[3] A transcript of that interview, prepared by counsel, will be submitted to chambers under separate cover as **Exhibit 1**, along with an unredacted version of this letter. Defendants have designated the entire interview as confidential.

[4] Another important piece of the WEF story is that it is one of the times that NYPD, in official policy and writing, stated that their goal was to "engage in pre-emptive mass arrests and to subject arrestees to delayed and arduous post-arrest processing" specifically to deter First Amendment activity. *Haus v. City of New York,* 03-cv-4915 (RWS)(MHD) 2006 WL 1148680, *1 (S.D.N.Y. April 24, 2006). *See also, Allen v. City of New York,* 2007 US Dist LEXIS 15 at *45; *70 (S.D.N.Y. January 3, 2007) (NYPD decided to "set a 'tone' with the demonstrators and their possible plans at other demonstrations,'" and "purposely staged massive amounts of police personnel and equipment around the WEF to 'cause [protestors] to be alarmed.'").

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



(denying summary judgment on plaintiffs' Fourteenth Amendment Equal Protection and First Amendment-based *Monell* claims challenging those policies and practices); 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007) (noting that almost 40 plaintiffs prevailed on those *Monell* claims at trial);

- NYPD responses to the 2002 WEF protests, *see Sow* FAC ¶¶ 429(b) and (c), 451-454, 472, citing *Burley v. City of New York*, 03 Civ. 2915 (WHP)(FM); *see* 2005 WL 668789 (S.D.N.Y. March 23, 2005) (class action arising from mass arrests of over 200 demonstrators during 2002 WEF in New York City challenging, *inter alia*, (1) NYPD policy of detaining perceived protesters who were otherwise eligible to be released earlier with DATs for excessive periods of time and denying them consideration for DAT release on the grounds of their perceived participation in protests and (2) policy and practice of using plastic flex cuffs as unreasonable and excessive because of the manner in which the handcuffs were applied and the length of time for plaintiffs were handcuffed) and *Allen v. City of NY*, 03 Civ. 2829 (KMW)(GWG); *see* 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006) and 2007 US Dist LEXIS 15 (S.D.N.Y. January 3, 2007) (challenging mass arrests made in February 2002 related to the WEF alleging, *inter alia*, that the protestors remained on the sidewalk, walking two abreast and followed all rules of protesting, yet Executive Officers including Defendant Monahan arrested them anyway, and then "the police deliberately held [protesters] in custody for an unnecessarily long period of time in order to delay their arraignment in Criminal Court"); and

- NYPD responses to anti-war protests in February and April of 2003, FAC ¶¶ 423, 429(d) and (o), 473, citing, *inter alia, Haus v. City of New York,* 03-cv-4915 (RWS)(MHD) 2006 WL 1148680, *1 (S.D.N.Y. April 24, 2006) (class action challenging arrests, detentions, and prosecutions of around 300 people in connection with February 15, 2003 anti-war protests, alleging that arrests were made without probable cause and pursuant to Department directive to "engage in pre-emptive mass arrests and to subject arrestees to delayed and arduous post-arrest processing") and *Kunstler v. City of New York*, 04-cv-1145 (RWS)(MHD) (S.D.N.Y.) (raising *Monell* and other claims similar and related to the policies and practices complained of herein such as encircling and pre-emptively arresting protesters, striking them with nightsticks, and using extremely tight plastic handcuffs).

The discovery that exists in Defendants' possession about the NYPD misconduct and policies deployed during those prior protests provide important data points in developing the long and unbroken march of NYPD misconduct at protests leading up to and including the misconduct challenged in these lawsuits. There was substantial litigation over that misconduct in the cases mentioned above (and others) that led to extensive discovery, trials, and tens of millions of dollars in settlements and judgments — all of which appears to have resulted in little or no relevant policy changes.

For example, at the 2002 WEF, the NYPD targeted protesters — just as they did here — for



the message they were advocating.  As this Court noted, there was substantial evidence that (as alleged for BLM protesters here), "[t]he WEF arrestees were the subject of unnecessarily harsh comments and treatment, suggesting that the police wanted to punish them for protesting," there was a substantial difference in the time spent in custody between protesters and everyone else arrested in the same period, and more broadly that the NYPD "was engaging in a 'proactive arrest policy' in order to 'set a 'tone' with the demonstrators and their possible plans at other demonstrations,'" "purposely staged massive amounts of police personnel and equipment around the WEF to 'cause [protestors] to be alarmed.'" *Allen*, 2007 US Dist LEXIS 15 at *45; *70.  All the same things happened in some form or another during the summer of 2020.  In fact, this Court spelled it out in *Allen* — often citing the Graham Report attached as **Exhibit 2** to this letter.

Why this all matters is because, put somewhat pithily (perhaps a trial theme), "Once is happenstance.  Twice is coincidence.  The third time, it's enemy action."  Ian Fleming, GOLDFINGER (1959).  And being able to show that NYPD did exactly the same things repeatedly across *three* major eras of protests before the Black Lives Matter protest movement started — then kept doing the same things despite knowing that they would lead to constitutional violations — will be critical at trial.  So it is of vital importance to confront witnesses with those, and other, similar, facts that are reflected in the discovery Plaintiffs are seeking regarding these prior protests, and to ask (in essence) what, if any, policy changes were made in the intervening 20 years — or if, as Plaintiffs claim, the NYPD in substance expanded their policies and practices of retaliatory policing.  And it will be just as vital to ask why the NYPD has not changed policies following any of the major litigations about protest policing — including litigation during the pre-RNC era of protests.

Defendants offered no challenge to the relevance of records relating to pre-RNC 2004 protests but to say that Judge McMahon did not mention the WEF or those other protests by name.  That is not entirely true, as Judge McMahon's decision discusses "plans for and responses to protests in the early 2000's" enumerated in Plaintiffs' complaints.  *See, e.g.,* 2021 U.S. Dist. LEXIS 128437, at *29, 31.  And all it would mean if true is that the Court did not need to discuss the WEF or the other pre-RNC protests referred to in the pleadings in order to reject Defendants' "absurd" argument that "Plaintiffs cannot [state a deliberate indifference/failure to train claim] because there has only been one liability verdict arising out of an alleged constitutional violation stemming from a protest."  *Id.* at *37-8.

The Court did not have this detailed description of Plaintiffs' need for these documents in hand when deciding this issue.  Given that, we ask that the Court reconsider its evaluation that "[i]n light of the passage of time, defendants need not produce documents from 2002 and earlier relating to policies and practice."  ECF No. 359.  As Defendants themselves have said, the World Economic Forum itself was a key time where Defendant Monahan learned the tactics he later "directed [others to use] against the Mott Haven protesters on June 4, 2020."  2021 US Dist LEXIS 128437, at *40.

B. **Defendants still articulate no specific burden nearly a year after receiving Plaintiffs' document requests.**

On the other side of the coin, Defendants did not articulate any actual burden to the Court.  At this stage, Defendants have had Plaintiffs' requests since March 2021 — nearly a year.  They have

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com

re-written their responses several times over, and repeatedly been reminded by the Court that they need to articulate exactly what the burden is to produce documents if they want to make a burden objection. *See, e.g.*, 2021-6-15 Tr. at 6:4-8 ("If [Defendants] thinks some [requests] are burdensome, overbroad, various other objections, [they] certainly [are] going to have to make clear under the amendments to the rules whether [they're] withholding anything under these objections."); *see also,* ECF No. 347 ("the City must make plain whether such objections apply to the entire request or not, and whether it remains willing to use certain means to search for the requested documents but not others."). In fact, Defendants used the WEF as an example at the very first settlement conference (even if they ultimately searched for few if any documents beyond those already gathered for the various government reports, *see* ECF Nos. 277 and 354):

> "Some of it is very burdensome, we're not sure yet what is overly burdensome.
>
> For example, they ask for some documents back f[ro]m the WEF demonstrations which took place in New York City in 2002. I know from experience because I worked on the litigations that arose out of those demonstrations that those are, you know, paper files, not computerized, that had been archived after those litigations were finished and put into storage, I can't even imagine where. I know at one point there was a flood in one of the archive sites. I, although I haven't confirmed this with the police department, ***I would imagine something like that might be overly burdensome***, especially in light of the value they might be to this litigation considering those were things that took place 20 years ago."

2021-06-15 Tr. 8:5-20 (attached as **Exhibit 3**). After that representation, the Court explained that defense counsel needed to explain what they were or were not searching for, and provide information about claimed burdens related to those searches (2021-06-15 Tr. 9:16-10:14) — which Defendants have simply never done with respect to documents related to prior protests. And apparently, Defendants are *still* "not sure yet what is overly burdensome" after assuring the Court they would figure it out some seven months ago.

Defendants' responses don't explain how searching for documents related to the WEF era protests is burdensome at all,[5] let alone more burdensome than searching for any of the documents they now "concede" (ECF No. 348) must be produced— or why WEF era documents could not be easily swept into a search that already requires gathering documents from 2003 and 2004. Nor does their current letter (ECF No. 357) even try to articulate a burden. Instead, just as they did in June last year, Defendants just speculate that documents "***may*** not be readily available to produce." ECF No. 357 at 2 (emphasis added). That is not enough under the rules, and given that this is

[5] *See, e.g.*, ECF No. 341-3 at 39 ("Defendants object to Document Request No. 36 on the grounds that it is compound in that it seeks various documents for five different protests spanning 18 years; it is not sufficiently limited in time because it seeks documents dating back to 18 years before the dates in question and for a period of seven years … Defendants further object that this request is not proportional to the needs of the case because the burden and expense of searching for and producing "all" of the requested documents, as they do not pertain to the plaintiffs, far outweighs any likely benefit to plaintiffs.").



Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



Defendants' second attempt at an opposition[6] (to say nothing of the larger process on the first requests), Plaintiffs submit the Court should have found most burden objections (except as explained below) here are waived. *See Fischer v. Forrest*, No. 14-CV-1304, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017).[7]

**II. The Court Should Grant Plaintiffs the Mandatory Attorneys' Fees under Rule 37.[8]**

Given the history here — and, as the Court put it, the fact that "[t]he City should have met and conferred in detail long ago on the issues raised in plaintiffs' letter in order to explain to plaintiffs exactly what are the areas of disagreement" and that the City's delays are "not acceptable" (ECF No. 352) — Plaintiffs respectfully request that the Court direct Defendants to pay attorney's fees for this round of motions, meet and confer attempts, and drafting letters under ECF No. 317. Plaintiffs had to make a motion to even *get* Defendants in the room for the first time on this issue — and after Defendants had apparently not started working on gathering documents, despite repeated promises of fixed deadlines. And ***even after that*** Defendants simply blew the Court's deadline, not even bothering to attempt what the Court specifically directed as the minimum for moving it.

Rule 37 provides that "if a motion to compel is granted, 'or if the disclosure or requested discovery is provided after the motion was filed — the court **must** . . . award reasonable motion expenses incurred in making the motion.'" *Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 37) (emphasis added in *Underdog*). There are narrow exceptions to that rule when the movant doesn't meet and confer (37(a)(5)(A)(i)), where the non-disclosure is "substantially justified" ((A)(ii)), or where other circumstances make a mandatory award "unjust" ((A)(iii)). Plaintiffs' motion has been granted — Defendants were ordered to meet and then to produce.

None of the exceptions apply here. For (A)(i), as the Court observed, the City does not deny Plaintiffs' lengthy account of months of attempts to meet before involving the Court. For (A)(ii), as the Court explained, the City's position here was not only not "substantially justified," it was "not acceptable." ECF No. 352. And for (A)(iii), there are no circumstances making fee and cost shifting unjust. If anything, just the opposite: Plaintiffs are spending the last moments before high level depositions still attempting to pry "important" (ECF No. 352) documents they should

---

[6] *See* ECF No. 352 at 3 ("The City is directed to send a proper letter that responds to the issues raised Docket # 341 on or before January 20, 2022.").

[7] As the parties discussed during the meet and confer, Plaintiffs are not going to (for example) insist Defendants try to tape together fragments of documents destroyed during Hurricane Sandy. But that is not what Defendants say they are facing. Instead, despite knowing for nearly a year that they would need to produce these documents, Defendants apparently *still* don't know what it would take to gather documents. In that context, Defendants' objections to burden are not objections at all. If, after the Court orders Defendants to do something, they discover something is actually "impossible to produce," they can follow the Court's procedure for discovery disputes — and if Defendants actually describe an impossibility or disproportionate burden, Plaintiffs will (of course) consent to appropriate relief.

[8] Since the Court did not address this issue in its order, we ask the Court to treat this, in the alternative, as a motion in the first instance under Rule 37(a).

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



have had on July 31 from Defendants' hands. Even now, with a clear Court Order, Defendants just decided they didn't have to produce documents. In that context, we ask that the Court to shift the cost of this odyssey off Plaintiffs' shoulders. That renders fee and cost shifting as just as it comes.

As ever, we thank the Court for its continued time and attention.

Respectfully submitted,

/s/

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow Plaintiffs and Hernandez/Minett Plaintiffs, on behalf of all Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

COHEN&GREEN

Page 8 of 8

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com