**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In Re: New York City Policing
During Summer 2020 Demonstrations

20 Civ. 8924 (CM)(GWG)

This filing is related to:

ALL CASES

**THE PEOPLE OF THE STATE OF NEW YORK'S OBJECTIONS TO MAGISTRATE
JUDGE GORENSTEIN'S JANUARY 24, 2022 ORDER GRANTING
DEFENDANT CITY OF NEW YORK'S MOTION TO DISQUALIFY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 8

   I.   The Magistrate Judge's Holding that Relevant Expert Testimony May be Excluded
      Absent a Showing of Prejudice is Contrary to Law ........................................... 10

     A.   A Party Seeking to Exclude an Otherwise Qualified Expert Must Establish Unfair
         Prejudice. ..................................................................................................... 10

     B.   The City Failed to Establish Prejudice. ......................................................... 14

   II.   The Magistrate Judge's Decision is Contrary to Law in its Failure to Consider Less-
       Drastic Remedies. .............................................................................................. 17

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Agron v. Trustees of Columbia Univ. in City of New York*,
    176 F.R.D. 445 (S.D.N.Y. 1997)................................................................ 13

*Auto-Kaps, LLC v. Clorox Co.*,
    No. 15-CV-1737, 2016 WL 1122037 (E.D.N.Y 2016)............................................. 18

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
    No. 95-CV-8833, 2000 WL 42202 (S.D.N.Y. Jan. 19, 2000).................................... 15

*Carlisle v. United States*,
    517 U.S. 416 (1996) .............................................................................. 13

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*,
    206 F.R.D. 78 (S.D.N.Y. 2002).................................................................. 9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .............................................................................. 13

*Degen v. United States*,
    517 U.S. 820 (1996) ............................................................................. 18

*Dietz v. Bouldin*,
    579 U.S. 40 (2016) ............................................................................... 13

*DLC Mgmt. Corp. v. Town of Hyde Park*,
    163 F.3d 124 (2d Cir. 1998)..................................................................... 18

*Eastman Kodak Co. v. Agfa-Gevaert N.V.*,
    No. 02-CV-6564, 2003 WL 23101783 (W.D.N.Y. Dec. 4, 2003) .......................... 11, 15

*Eastman Kodak Co. v. Kyocera Corp.*,
    No. 10-CV-6334, 2012 WL 4103811 (W.D.N.Y. Sept. 17, 2012) ......................... 11, 16

*FDIC v. Providence Coll.*,
    115 F.3d 136 (2d Cir. 1997)..................................................................... 9

*Gordon v. Kaleida Health*,
    No. 08-CV-378S F, 2013 WL 2250506 (W.D.N.Y. May 21, 2013)...................... 11, 12, 14

*Great Lakes Dredge & Dock Company v. Harnischfeger Corp.*,
    734 F. Supp. 334 (N.D. Ill. 1990) .............................................................. 11

ii

*Greer v. Miller*,
　483 U.S. 756 (1987) .......................................................................................... 20

*Heard v. Statue Cruises LLC*,
　No. 16-CV-1079, 2020 WL 1285456 (S.D.N.Y. Mar. 18, 2020) ........................... 16

*Hewlett-Packard Co. v. EMC Corp.*,
　330 F. Supp. 2d 1087 (N.D. Cal. 2004) .............................................................. 11

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
　No. 12-CV-5067, 2019 WL 5634171, at *2 (S.D.N.Y. Oct. 31, 2019) ................... 9

*In re Ambassador Group, Inc., Litig.*,
　879 F. Supp. 237 (E.D.N.Y. 1994) ....................................................................... 11

*In re Namenda Direct Purchaser Antitrust Litig.*,
　No. 15 CIV. 7488, 2017 WL 3613663 (S.D.N.Y. Aug. 21, 2017) ......................... 21

*In re Namenda Direct Purchaser Antitrust Litig.*,
　No. 15-CV-7488, 2017 WL 3085342, at *8 (S.D.N.Y. July 20, 2017) ................... 19

*In re New York City Policing During Summer 2020 Demonstrations*,
　No. 20-cv-8924, 2021 WL 4344919 (S.D.N.Y. Sept. 24, 2021)............................ 17

*Irvin v. Dowd*,
　366 U.S. 717 (1961) .......................................................................................... 20

*Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*,
　No. 18-cv-4476, 2021 WL 5362256 (S.D.N.Y. June 2, 2021) ................ 9, 11, 15, 17

*Palmer v. Ozbek*,
　144 F.R.D. 66 (D. Md. 1992) ............................................................................. 11

*Paul ex rel. Paul v. Rawlings Sporting Goods Co.*,
　123 F.R.D. 271 (S.D. Ohio 1988) ....................................................................... 11

*Pellerin v. Honeywell Intern Inc.*,
　No. 11-CV-1278, 2012 WL 112539 (S.D. Ca. Jan. 12, 2012)................................ 20

*Raba v. Suozzi*,
　No. 06-CV-1109, 2006 WL 8435604, at *18 (E.D.N.Y. Nov. 17, 2006) ........................ 15 n.2

*Richardson v. Marsh*,
　481 U.S. 200 (1987) .......................................................................................... 20

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1980) .......................................................................................... 18

*Soc'y for Good Will to Retarded Child., Inc. v. Carey*,
    466 F. Supp. 722 (E.D.N.Y. 1979) .................................................................... 18

*Space Sys./Loral v. Martin Marietta Corp.*,
    No. CIV. 95-20122 SW, 1995 WL 686369 (N.D. Cal. Nov. 15, 1995) ................... 19

*Topps Co. v. Productos Stani Sociedad Anomina Indus. y Com.*,
    No. 99-CV-9437, 2001 WL 406193 (S.D.N.Y. Apr. 20, 2001) ............................. 18

*TVT Recs. v. Island Def Jam Music Grp.*,
    250 F. Supp. 2d 341 (S.D.N.Y. 2003) ................................................................ 15

*U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*,
    112 F. Supp. 3d 122 (S.D.N.Y. 2015) ................................................................ 20

*United States v. Lowery*,
    166 F.3d 1119 (11th Cir. 1999) ......................................................................... 13

*United States v. Jackson*,
    792 F. App'x 849 (2d Cir. 2019) ....................................................................... 20

*United States v. Pinto-Thomaz*,
    No. 18-CR-579, 2019 WL 1460613 (S.D.N.Y. Jan. 15, 2019) ............................ 20

*United States v. U.S. Gypsum Co.*,
    333 U.S. 364 (1948) ........................................................................................... 9

*Wang Lab'ys, Inc. v. CFR Assocs., Inc.*,
    125 F.R.D. 10 (D. Mass. 1989) .......................................................................... 19

*Xiao Xing Ni v. Gonzales*,
    494 F.3d 260 (2d Cir. 2007) ...................................................................... 13, 18

**RULES**

FED. R. CIV. P. 72(a) ................................................................................................ 8

FED. R. CIV. P. 26(b)(4) ......................................................................................... 18

FED. R. EVID. 402 ........................................................................................... 10, 12

FED. R. EVID. 403 ........................................................................................... 10, 13

Pursuant to Federal Rule of Civil Procedure 72(a), the People of the State of New York, by their Attorney General, Letitia James ("the People"), submit these Objections to Magistrate Judge Gabriel W. Gorenstein's January 24, 2022 Opinion and Order (the "Opinion") granting the motion of Defendant the City of New York (the "City") to disqualify the People's crowd psychology expert, Dr. Edward R. Maguire.

## PRELIMINARY STATEMENT

The People retained Dr. Edward R. Maguire, the preeminent U.S. scholar on the social science of crowds and their interaction with police at protests, to opine on the sociological effect of the New York City Police Department's tactics at racial-justice protests beginning in May 2020. However, the Magistrate Judge granted the City the drastic and rare remedy of disqualifying Dr. Maguire on the sole basis that he was previously exposed, in a post-protest consultancy with City attorneys walled off from this litigation, to information protected by the deliberative process privilege.

The People respectfully submit that the Order be modified or set aside. The Magistrate Judge erred as a matter of law in holding—despite case law and procedural rules to the contrary—that the City need not articulate or demonstrate prejudice that may result from disclosure of its post-protest communications in order to exclude expert testimony. And the City did not even attempt to establish such prejudice. Nor could it have done so, both because it failed to identify any particular information whose disclosure would supposedly be prejudicial, and because it is undisputed that Dr. Maguire did not retain and does not remember the particulars of any confidential communications with the City. Absent any possibility of concrete prejudice, there is no basis to deprive the People of a critical witness in this important case.

The Magistrate Judge also erred in failing to consider remedies less drastic than disqualification, such as an instruction to Dr. Maguire to disregard any protected information when formulating his opinion, or a protective order barring disclosure of particular information or communications that are properly deemed confidential. Such a targeted remedy would provide the City with assurance that its confidences are not breached, without denying the People of the opportunity to present their case through the most qualified expert witness available.

## BACKGROUND

### A.    The Protests and The City's Investigation

Beginning in May 2020, thousands of New Yorkers decried police brutality and racial injustice in protests across New York City. Dkt. 21-cv-322, ECF No. 51 ("Am. Compl.") ¶ 2. In response, the New York City Police Department (NYPD) engaged in a new round of police brutality that included use of excessive force against, and unlawful arrests of, New Yorkers who had been lawfully exercising their constitutional rights to protest. *Id.* ¶¶ 2-3. In June 2020, Mayor Bill de Blasio responded to these publicly reported abuses by issuing Executive Order 58 ("EO 58"), a directive requiring the Commissioner of the New York City Department of Investigation ("DOI") and the Corporation Counsel of the New York City Law Department ("Law Department") to jointly review the NYPD's response to the Protests. *See* Decl. of Gavin B. Mackie, Ex. B, ECF No. 313-1.

To complete this task, the Law Department assembled a small "Review Team" of in-house City attorneys to develop recommendations for how NYPD could improve its protest policing. Mackie Decl. ¶ 4. The Law Department published the Review Team's findings in a December 2020 Report (the "Report"). Mackie Decl., Ex. A. The Report states expressly that it "does not reach legal conclusions" and that the Review Team was "recused from and walled off from

discussions with other Law Department colleagues about the recent protest events, as well as any matters regarding Law Department representations [*i.e.*, litigation matters] relating to such events." Report at 6, 9. The Report explains that the Review Team considered public reports by governmental agencies and professional or advocacy organizations, executive orders, news articles, and "NYPD Resources," including training materials and provisions of the public NYPD Patrol Guide. Report at 7. This material either was publicly known prior to this litigation or is being disclosed to Plaintiffs in discovery (or both). *See* ECF No. 163-2.

In addition to its review of this documentary material, the Review Team retained three consultants in policing and behavioral science, explaining that the Review Team needed to understand both "the practical experience of our expert team and [] behavioral science, and how such science can help shape strategies for responding to large protests going forward." Report at 6.

One of the consultants retained for this purpose was Dr. Maguire. After executing a non-disclosure agreement ("NDA"), Dr. Maguire met with the Review Team and commented on drafts of the Report. Dr. Maguire Decl. ¶¶ 17, 19. However, Dr. Maguire does not recollect the particulars of any of those conversations or the contents of any drafts of the Report. *Id.* ¶ 19. He did not retain copies of any documents provided to him. *Id.* ¶ 20. Nor did he participate in any discussion regarding future litigation or any related strategy, *id.* ¶ 21, from which (as noted) the Review Team had been specifically walled off and recused, Report at 1, 6, 9. Dr. Maguire's specific role in connection with the review was to "advise[] on the strategic checklist" of action items that the Report recommended the NYPD adopt as it prepares for, responds to, and reviews responses to future protests. *Id.* at 9. Dr. Maguire synthesized the checklist from his previous years of research

on the intersection between the social science of crowds and intergroup communication and protest policing. Dr. Maguire Decl. ¶¶ 14, 18.

### B.    The People's Lawsuit and The Motion to Disqualify Dr. Maguire

Believing that the City's response to widespread police abuse was inadequate, the People initiated this case on January 14, 2021. Dkt. 21-cv-322, ECF No. 1. The People seek injunctive relief prohibiting the NYPD from again employing the violent and unconstitutional practices that characterized its response to the Protests. *See* Am. Compl. at 82.

On July 9, 2021, the Court denied the City's motion to dismiss the People's amended complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), finding that the City's voluntary reforms since the protests had not rendered the claims moot, that the People had *parens patriae* standing, and that the People's amended complaint pleaded viable causes of action for which the Court could grant relief against the City. Decision and Order, ECF No. 191.

To develop the case to be presented at trial, the People conducted an exhaustive search for an expert with specialized knowledge of both the social science research on crowds and policing protests. Decl. of Lillian M. Marquez ¶ 4. This search identified only one person—Dr. Maguire—who had both expertise in these disciplines and experience applying this expertise to American police departments. *Id.* ¶¶ 5–7, 10.[1] Dr. Maguire, a professor of criminology and criminal justice at Arizona State University, is the preeminent U.S. expert on the intersection

---

[1] The People also retained Hassan Aden (former Chief of Police for Greenville, North Carolina) as an expert witness in the field of law enforcement. The plaintiffs in these consolidated cases have retained experts with similar backgrounds to Aden. However, these experts lack Dr. Maguire's expertise in crowd psychology and intergroup communications, and thus are not nearly as well positioned to explain the conflicts between the NYPD's tactics and the evidence regarding how police should respond to large crowds to avoid escalation. *Id.* ¶ 9; Dr. Maguire Decl. ¶¶ 8, 13. Furthermore, none of the other experts independently studied the NYPD's response to the Occupy Wall Street protests, Marquez Decl. ¶ 9, a focus of Dr. Maguire's scholarship. *See* Dr. Maguire Decl. ¶ 10.

between the social science of crowds, intergroup communication, and protest policing—that is, the interaction between protesting crowds and police forces. Dr. Maguire Decl. ¶¶ 1, 8, 13-14. His recent research has focused in substantial part on police responses to protests, and he is the only American scholar the People identified who has applied the fields of crowd psychology and intergroup communication in the context of policing crowds. *Id.* ¶¶ 7–8. He has written or edited seven books; contributed to more than 100 journal articles and book chapters concerning topics such as policing, violence, organization theory, and social science methodology; conducted an independent review of the NYPD response to the 2011 Occupy Wall Street protests; and, based on a national study of protest policing practices in the United States, has recently co-authored a guidebook entitled *Policing Protests: Lessons from the Occupy Movement, Ferguson & Beyond: A Guide for Police. Id.* ¶¶ 9-10.

Whereas experts who derive their expertise from prior law enforcement experience are equipped to opine on police training and tactics from an operational lens, Dr. Maguire offers a different perspective: Unlike other experts, he alone can explain the scientific research on how a police force's tactics and strategies may themselves escalate tensions and violence at a mass demonstration; the fallacy of viewing crowds as homogenous and the importance of differentiating between violent and non-violent protesters when taking enforcement actions; and how to effectively communicate orders to demonstrators, including those who are spontaneous or loosely organized through social media. Marquez Decl. ¶ 9. The People anticipate that Dr. Maguire's testimony will aid the factfinder in understanding the full scope of the People's allegations regarding NYPD's violations of law in responding to the Protests. Moreover, whereas Dr. Maguire's role in connection with the City's review concerned recommendations for forward-looking policy changes, his proposed role in this litigation is to offer expert opinion

testimony about whether the specific tactics that the NYPD employed at the Protests failed to account for crowd dynamics and psychology and increased the likelihood and severity of violence. *See* Marquez Decl. ¶¶ 3, 10. Despite a diligent search, the People have been unable to identify another expert in the United States who possesses the type and breadth of experience as Dr. Maguire. *Id.* ¶ 10.

Prior to retaining Dr. Maguire, the People conferred repeatedly with Defendants regarding the People's interest in engaging him. *Id.* ¶¶ 12–17. During those conferrals, Defendants' counsel acknowledged that the work-product privilege would not apply to Dr. Maguire's engagement with the Review Team because that team was purposefully recused from litigation. *Id.* ¶ 16. Nor would any attorney-client privilege apply to communications with a consultant outside the Review Team's client organization. Instead, Defendants asserted that the People should not retain Dr. Maguire because he had access to material covered by the "deliberative process" privilege. *Id.* But the City never identified any prejudice that might result were such information to be disclosed. The People ultimately determined that the City's objections were unfounded, and accordingly engaged Dr. Maguire as an expert prior to the court-ordered deadline for expert disclosure, September 1, 2021. *Id.* ¶ 18.

On November 4, 2021, the City moved to disqualify Dr. Maguire from testifying as an expert in this action. ECF No. 313 ("Mot."). The City's motion did not invoke any Rule of Evidence or of Civil Procedure. *See generally id.* It did not contend that Dr. Maguire is somehow an unsuitable expert or that his opinions are otherwise inadmissible under Fed. R. Evid. 702 or 703. Nor did the City contend that his testimony would be irrelevant and inadmissible under Fed. R. Evid. 402, or that it would be unfairly prejudicial or otherwise inadmissible under Fed. R. Evid. 403. Indeed, the City expressly disclaimed any obligation to identify prejudice to their case

from Dr. Maguire's proposed testimony. *See* Defs.' Reply at 1, 2, 4, 5-6, ECF No. 328. Instead of invoking any Federal Rule, Defendants relied exclusively on the Court's inherent power, asserting that the Court should disqualify Dr. Maguire as an expert to preserve "the integrity of the judicial process and the government's ability to consult with experts as part of a confidential deliberative process" because Dr. Maguire allegedly had received "confidential and privileged information directly related to the claims and allegations in this litigation" in the course of his consulting work with the City. Mot. at 3-4. The City did not identify any specific information it sought to protect, but rather pointed broadly to the fact that Dr. Maguire (1) "participated in the Review Team's internal deliberations and conversations"; (2) "reviewed internal memoranda developed by attorneys on the Review Team, which contained attorney thoughts and impressions in addition to confidential deliberations regarding potential policy recommendations, as well as work product produced by other independent experts"; and (3) "reviewed and provided feedback on drafts of the Report." *Id*. at 6.

The People opposed the motion to disqualify, explaining (*inter alia*) that without identifying even *potential* prejudice from Dr. Maguire's retention, the City could not justify its request to disqualify him. ECF No. 321 ("Opp'n") at 11-14. The People also explained that other protections and alternative remedies provided for under the Federal Rules of Civil Procedure and Evidence would sufficiently preserve litigation fairness without resort to the Court's residual and rarely-used inherent power to disqualify—particularly given Dr. Maguire's undisputed attestation that he did not retain any confidential documents and does not remember the particulars of any conversation between himself and any representative of the City. *Id.* at 12, 17-18; Maguire Decl. ¶¶ 19, 20. In addition, the People explained the importance of Dr. Maguire's

testimony to their case, and the significant prejudice that the People will suffer at trial if he is disqualified. Opp'n at 14-17.

### C.     The Magistrate Judge's Ruling

On January 24, 2022, Magistrate Judge Gorenstein granted the City's motion to disqualify Dr. Maguire. Op. & Order, ECF No. 361 ("Op."). The Magistrate Judge rested his ruling on the determination that Dr. Maguire had received information from the City that was "confidential" under the deliberative process privilege. *Id*. at 9-17. Although Dr. Maguire could not remember the substance of any communication between himself and the Review Team and the City had not identified any particular information whose disclosure to the People would cause it to suffer prejudice, the Magistrate Judge ruled that this did not matter. In his view, there is no requirement "that a movant prove 'prejudice'" in order to disqualify an expert witness. *Id*. at 8.

Further, while the Magistrate Judge acknowledged that the absence of available alternative experts weighs in favor of admitting an expert's testimony, he suggested that the People could retain a general "policing practices expert[]" to apply Dr. Maguire's scholarship and cited to cases involving experts with a law enforcement background. *Id*. at 19. The Magistrate Judge also rejected the alternative remedies suggested by the People, finding that "no remedy short of disqualification is adequate to vindicate the interests subject to harm from Dr. Maguire's testimony in this case." *Id*. at 20.

### ARGUMENT

This Court "must . . . modify or set aside any part" of a magistrate judge's ruling on a non-dispositive motion "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules

of procedure." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted). A factual determination is "clearly erroneous" when the entire evidence leaves the district court "with the definite and firm conviction that a mistake has been committed." *FDIC v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir. 1997) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Although courts have recognized an "inherent power to disqualify an expert witness," this is "a drastic remedy [] and should be resorted to rarely." *Local 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18-cv-4476, 2021 WL 5362256, at *4 (S.D.N.Y. June 2, 2021), *report and recommendation adopted*, 2021 WL 4706162 (S.D.N.Y. Oct. 7, 2021) (quotation marks omitted). Failing to set a high bar for disqualification would encourage "unscrupulous attorneys . . . to preempt the ability of their adversaries to obtain expert assistance" by racing to hire them as consultants. *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067, 2019 WL 5634171, at *2 (S.D.N.Y. Oct. 31, 2019) (internal citation omitted). Therefore, "[a] party seeking to disqualify an expert whom it had previously retained but whom an adversary seeks to use as an expert bears the burden"—and it is a heavy one—"to establish: '(1) that it was objectively reasonable for the movant to believe that it had a confidential relationship with the expert and (2) that the movant's confidential information was in fact disclosed to the expert.'" *Local 3621*, 2021 WL 5362256, at *4 (citation omitted). It is not enough to vaguely describe the information to be protected. Rather, the party seeking disqualification "must identify 'specific and unambiguous disclosures that if revealed would prejudice the party.'" *Id.* (citation omitted). The court also should consider "the public's interest in preserving judicial integrity and fairness as balanced against the party's right to the assistance

of experts who possess specialized knowledge and the right of such experts to pursue their professional calling." *Id.* (citations omitted).

The Magistrate Judge's holding that expert disqualification does not require a showing of prejudice and failure to employ less-absolute remedies are contrary to law.

**I.    The Magistrate Judge's Holding that Relevant Expert Testimony May be Excluded Absent a Showing of Prejudice is Contrary to Law.**

The Magistrate Judge erred in granting the motion to disqualify Dr. Maguire in the absence of any showing that Defendants would be prejudiced by the admission of his testimony. Contrary to the Magistrate Judge's assertion that there is "no … burden that the movant prove some specific 'prejudice'" (Op. at 8), the case law in this Circuit and elsewhere firmly supports such a requirement. And with good reason. The doctrine supporting expert disqualification derives only from the courts' inherent authority, and that authority cannot properly be invoked in derogation of the Federal Rules of Evidence. Under Fed. R. Evid. 402, relevant evidence "is admissible" absent specific provision to the contrary, and the only arguable basis in the Rules for excluding evidence like Dr. Maguire's proposed testimony is "unfair prejudice" under Fed. R. Evid. 403. The Magistrate Judge's conclusion that relevant evidence could be barred from trial without any showing of prejudice or other particularized basis for exclusion is therefore incorrect as a matter of law. And because Defendants made no attempt to prove that they would be unfairly prejudiced by Dr. Maguire's testimony, correction of the Magistrate Judge's legal error requires reversal of his disqualification order.

**A.   A Party Seeking to Exclude an Otherwise Qualified Expert Must Establish Prejudice.**

The Magistrate Judge's decision is incorrect in asserting (Op. at 8) that case law imposes no "requirement that a movant prove 'prejudice' will result from the expert's continued involvement."  Neither the Magistrate Judge nor the City identified any case *rejecting* a

prejudice requirement. And contrary to the Magistrate Judge's assertion, reams of cases decided over the course of decades, both within and outside this Circuit, *expressly* require a party seeking to disqualify an expert to "identify specific and unambiguous disclosures" of confidential information to the expert "*that if revealed would prejudice the party*" seeking disqualification. *Local 3621*, 2021 WL 5362256, at *4 (emphasis added). This requirement has been reiterated over and over again. *See, e.g.*, *Gordon v. Kaleida Health*, No. 08-CV-378S F, 2013 WL 2250506, at *5 (W.D.N.Y. May 21, 2013) (same rule); *Eastman Kodak Co. v. Kyocera Corp.*, No. 10-CV-6334(CJS), 2012 WL 4103811, at *10 (W.D.N.Y. Sept. 17, 2012) (same); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1094 (N.D. Cal. 2004) (same); *In re Ambassador Group, Inc., Litig.*, 879 F. Supp. 237, 243 (E.D.N.Y. 1994) (similar); *Great Lakes Dredge & Dock Company v. Harnischfeger Corp.*, 734 F. Supp. 334, 336-38 (N.D. Ill. 1990) (similar). Some courts put the point slightly differently, but are to the same effect: "*the key question* is whether [the proposed expert] had reasonable access" to confidential information "*which would cause prejudice* . . . if disclosed" to an adversary, *Palmer v. Ozbek*, 144 F.R.D. 66, 67 (D. Md. 1992) (emphasis added), and therefore the "total absence of demonstrable prejudice to [the party seeking disqualification] is a very important factor in determining that [a proposed expert] ought not to be disqualified," *Paul ex rel. Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 280 (S.D. Ohio 1988). Even courts that do not expressly mention "prejudice" often make the same point from another direction, explaining that one of the two "material questions" in any disqualification inquiry is "whether use of that confidential knowledge would give [the proposed expert] an *unfair advantage*." *E.g., Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02-CV-6564, 2003 WL 23101783, at *5 (W.D.N.Y. Dec. 4, 2003) (emphasis in original).

The requirement to establish "specific and unambiguous" prejudice, *Local 3621*, 2021 WL 5362256, at *4, flows from the purpose of the expert-disqualification doctrine. The power of disqualification is "justified by the need to avoid the 'risk of prejudice from possible disclosure and use of confidential client communications' and the fundamental unfairness that would arise if 'an expert hired by a party, who at that party's expense obtains specific knowledge and expertise in the issues involved in the litigation, [were permitted] to then be hired by the opposing party and allow the opposing party to reap the benefits of that work.'" *Gordon*, 2013 WL 2250506, at *6 (quoting *Great Lakes*, 734 F. Supp. at 336). But "the presumptions and standards relevant to disqualification of attorneys do not apply to experts," *id.* at *10, and in particular there is no presumption in the expert-witness context that confidential communications previously shared with a consultant "will be used to the detriment of the communicating party." *Great Lakes*, 734 F. Supp. at 338 (citing *Paul*, 123 F.R.D. at 280). Thus, "[a]bsent evidence indicating a former testifying expert or consultant obtained and provided the client's confidential litigation-related information to the opposing [party or] attorney, there is no presumption that such information was obtained by opposing counsel." *Gordon*, 2013 WL 2250506, at *21. And without a presumption of disclosure, a party seeking to disqualify an expert on the ground that the expert would use confidential information to the unfair benefit of an opposing party must establish both that the information would be improperly shared with the other side and that the result would be prejudice. *See id.* at *5.

It is unsurprising that courts require a showing of prejudice to justify exclusion of an otherwise qualified expert's testimony:  The contrary rule, adopted by the Magistrate Judge, conflicts with the Federal Rules of Evidence. Specifically, Fed. R. Evid. 402 provides in straightforward fashion that relevant evidence—such as Dr. Maguire's contemplated expert

testimony—"is admissible" unless the Constitution, a federal statute, another federal rule, or "other rules prescribed by the Supreme Court" bar admission. Rule 402 provides an "exclusive list of the source of authority for exclusion of evidence in federal court," *United States v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. 1999), and no constitutional provision, statute, or rule specifically provides for the exclusion of otherwise relevant opinion testimony from an expert qualified under Fed. R. Evid. 702. Such evidence accordingly may properly be excluded only upon a showing of "undue prejudice" or another of the grounds for exclusion set forth in Fed. R. Evid. 403. *See, e.g.*, *Agron v. Trustees of Columbia Univ. in City of New York*, 176 F.R.D. 445, 450-54 (S.D.N.Y. 1997) (considering but denying Rule 403 motion to exclude testimony of defense expert previously retained by plaintiff). The usual requirement to establish prejudice prior to disqualifying an expert comports with the scheme established by the federal rules.

The Magistrate Judge's no-prejudice disqualification regime, in contrast, conflicts with Fed. R. Evid. 402—it excludes relevant evidence even though no statute, rule, or constitutional provision demands it, and even without prejudice justifying invocation of Fed. R. Evid. 403. This conflict, moreover, cannot be avoided by pointing to the fact that (as the Magistrate Judge noted, Op. at 7) a federal court's power to disqualify an expert derives from its inherent power. As the Supreme Court has explained, "[w]hatever the scope of [the federal courts'] 'inherent power,' . . . it does not include the power to develop rules that circumvent or conflict with" express Federal Rules like those that govern the admission and exclusion of evidence. *Carlisle v. United States*, 517 U.S. 416, 426 (1996) (Federal Rules of Criminal Procedure); *see Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (Federal Rules of Civil Procedure); *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 266 (2d Cir. 2007) (same); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587-89 (1993) (Federal Rules of Evidence "occupy the field" of evidence admissibility, superseding

conflicting common law). The federal courts therefore lack "inherent authority" to exclude relevant evidence in disregard of Rule 402.

In short, both the case law and the underlying rules governing the admission of evidence are in conflict with the Magistrate Judge's no-prejudice rule. That no-prejudice rule is contrary to law.

### B.  The City Failed to Establish Prejudice.

Having adopted the wrong rule, the Magistrate Judge also reached the wrong result. It was the City's "burden," as "the party seeking disqualification," to identify (*inter alia*) "specific and unambiguous disclosures that if revealed would prejudice [Defendants]." *Gordon*, 2013 WL 2250506, at *5 (citations, quotation marks, and brackets omitted). But Defendants *expressly disclaimed* any intention to make any showing of prejudice (*see* Reply 5-6), and they accordingly made no effort to carry their burden.

Nor is such a showing possible. As the Magistrate Judge recounted, the only "information" that Defendants purport to have shared with Dr. Maguire was (1) unspecified "internal deliberations and conversations" during preparation of the Report; (2) unspecified "internal memoranda . . . which contained attorney thoughts and impressions [and] deliberations regarding potential policy recommendations, as well as work product produced by other independent experts"; and (3) "drafts of the Report." Op. at 9 (quoting Def. Mem. at 6). Although such categories of material may in principle be protected by the "deliberative process" privilege, the City's reliance on such broad characterizations—and failure to provide detail regarding the particular  disclosed information—fails to carry the City's burden to identify "*specific* and *unambiguous* disclosures" of supposedly confidential information that would

prejudice it, *contra Gordon*, 2013 WL 2250506, at *5 (emphases added).[2]  The City did not

produce any of the "memoranda" or "work product" or "drafts" that it says Dr. Maguire

reviewed, nor did it submit declarations detailing the contents of the "internal deliberations and

conversations" to which he allegedly was privy. And without that specificity, it is impossible to

say that the City carried its heavy burden of proof to establish that it would suffer prejudice if Dr.

Maguire were somehow to disclose the unspecified material to which the City says he may have

had access.

Even if the vague categories of information referenced in the City's motion could satisfy

the requirement to identify "specific and unambiguous" privileged information (*Local 3621*,

2021 WL 5362256, at *4) to which Dr. Maguire had access, the City still could not make out the

kind of prejudice that is necessary to justify disqualification. To the contrary, the narrow scope

of Dr. Maguire's work with the Review Team refutes any assumption that he received material

whose disclosure to the People would be prejudicial. It is undisputed that Dr. Maguire did not,

for example, participate in any discussion regarding litigation strategy. Maguire Decl. ¶ 21.

Indeed, he could not have done so, because the Review Team was "recused from and walled off

from discussions with other Law Department colleagues about the recent protest events, as well

---

[2] Even the claim of confidentiality is dubious. There is no dispute that the communications at issue are not protected by the attorney-client or work product privileges, given the Review Team's recusal. Marquez Decl. ¶ 16. The communications also do not comprise any kind of confidential trade-secret information. *Cf. Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95-CV-8833, 2000 WL 42202, at *1 (S.D.N.Y. Jan. 19, 2000); *Agfa-Gevaert N.V.*, 2003 WL 23101783, at *5. Because none of these recognized forms of confidentiality apply, the Magistrate Judge invoked the "deliberative process" privilege (Op. at 12)—but the only prior case to consider that privilege in an analogous situation ruled that it is not "meant to be used in the context of a motion for disqualification." *Raba v. Suozzi*, No. 06-CV-1109, 2006 WL 8435604, at *18 (E.D.N.Y. Nov. 17, 2006). Indeed, the court in that case declined to apply the deliberate-process doctrine in the context of *attorney* disqualification, where concerns about confidentiality are far greater than in this case regarding an expert witness. *See id.*, at *5.

as any matters regarding Law Department representations relating to such events." Report at 6, 9. Instead, Dr. Maguire's role as a consultant to the Review Team was limited to "advis[ing] on the strategic checklist" that the Report offered to the NYPD as a guide to responding to future protests. *Id.* at 9. But that checklist did not incorporate any deliberative material: Dr. Maguire synthesized it from his own prior work on the intersection between the social science of crowds, intergroup communication, and protest policing. Maguire Decl. ¶¶ 14, 18. And to whatever extent Dr. Maguire relied on factual matter specific to the 2020 Protests in formulating his checklist, any such material is either a matter of public record (*e.g.*, public reports, news articles, executive orders, policies, and studies) or the proper subject of discovery in this action (*e.g.*, training materials, DOI investigative material, and documents about previous NYPD protest responses). Mackie Decl. ¶ 6. None of that is subject to any claim of privilege. Dr. Maguire would not prejudice the City by disclosing his own scholarship and/or non-privileged factual matter to the People. *See Heard v. Statue Cruises LLC*, No. 16-CV-1079, 2020 WL 1285456, at *10 (S.D.N.Y. Mar. 18, 2020) (facts learned through site tour was not confidential information because they were discoverable); *Kyocera Corp.*, 2012 WL 4103811, at *10 (rejecting notion that disclosure of public information can disqualify an expert).

There is also no danger of *actual* prejudice here because it is undisputed that Dr. Maguire did not retain copies of any confidential documents and does not recall the specifics of any confidential information that he may have received. Maguire Decl. ¶¶ 19, 20. Because Dr. Maguire thus does not even have access to any supposedly confidential information, he cannot disclose that information to the People and so cannot possibly prejudice the City by working on the People's behalf.

Finally, even setting all of the above to one side, the City still could not establish
prejudice because any information Dr. Maguire may once have learned (but has now forgotten)
during his brief work with the Review Team has no bearing on the City's liability in this case.
The Review Team's objective was not to arrive at factual or legal conclusions but to developing
*prospective* recommendations for policy reform. *See* Report at 6. The Report credits Dr. Maguire
only with advising on a strategic checklist for *future* protest response planning. *Id.* at 9. But Dr.
Maguire's role in this case is *backward*-looking:  He will evaluate the NYPD's *past* conduct in
order to aid the trier of fact in determining whether that conduct violated the Constitution. Any
possible (unforeseeable and inadvertent) disclosure of unspecified but purportedly confidential
information regarding what recused attorneys thought NYPD *should* do to respond to *future*
protests is immaterial to the question whether the NYPD acted unlawfully in the past—as the
Magistrate Judge here recognized earlier in the case. *See In re New York City Policing During
Summer 2020 Demonstrations*, No. 20-cv-8924, 2021 WL 4344919, at *3 (S.D.N.Y. Sept. 24,
2021) (ruling that "recommendations *after* the events at issue in this lawsuit took place" were not
relevant to determining liability for those events). Because the information shared with Dr.
Maguire is not relevant to establishing liability, there can be no cognizable prejudice here.[3]  The
Magistrate Judge acted contrary to law in disqualifying Dr. Maguire in these circumstances.

## II.    The Magistrate Judge's Decision is Contrary to Law in its Failure to Consider Less-Drastic Remedies.

Even assuming that the Magistrate Judge correctly articulated the legal standard for
disqualifying an expert, the court still erred by invoking the extraordinarily "drastic remedy,"
*Local 3621*, 2021 WL 5362256, at *4, of disqualifying Dr. Maguire *in toto*. A federal court's

---

[3] It is premature to address the Magistrate Judge's skepticism that this information might be
relevant in crafting remedies if the People succeed at the liability phase. Op. at 15.

inherent powers "must be exercised with restraint and discretion," *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980), and only in a manner that constitutes a "reasonable response to the problems and needs" at hand, *Degen v. United States*, 517 U.S. 820, 823–24 (1996); *accord DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (similar). Thus, a court should not "resort to inherent powers" where there exist "alternative means of protecting the [parties'] interests." *Xiao Xing Ni*, 494 F.3d at 266.

The need for caution is particularly evident here, because of the nature of this case and the unique expertise that Dr. Maguire would bring to bear. The People's action seeks to promote the public's exceptionally vital interest in the right to protest free from unconstitutional policing. In such a case, which stands to impact millions of New Yorkers, it is critical that the Court have access to the most experienced and knowledgeable experts in the field. *See, e.g.*, *Soc'y for Good Will to Retarded Child., Inc. v. Carey*, 466 F. Supp. 722, 727 (E.D.N.Y. 1979) (noting that courts "rel[y] heavily on the testimony and assistance of experts" in such "public law" litigation). Due to his specific expertise on crowd psychology in police-protester interactions, Dr. Maguire can, for example, testify to the danger of relying on antiquated notions of the mob mentality in a protest and the impact of kettling on protesters. Contrary to the Magistrate Judge's suggestion, his expertise is not interchangeable with that of a former law enforcement officer. Op. at 19. As the City's Report acknowledged, both "practical experience" and "behavioral science" are important perspectives in assessing the impact of police tactics in large crowds. Report at 6.

Disqualifying Dr. Maguire would deprive the People of their "right to the assistance of experts who possess specialized knowledge" in this case of great public significance, *Auto-Kaps, LLC v. Clorox Co.*, No. 15-CV-1737, 2016 WL 1122037, at *2 (E.D.N.Y 2016), which weighs "strongly" against disqualification, *see Topps Co. v. Productos Stani Sociedad Anomina Indus. y*

18

*Com.*, No. 99-CV-9437, 2001 WL 406193, at *2–3 (S.D.N.Y. Apr. 20, 2001). Certainly, the inherent power of expert disqualification "is too blunt an instrument" to remedy the City's purported confidentiality concerns where "there are other, more targeted weapons available" to protect the City's interests. *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-CV-7488, 2017 WL 3085342, at *8 (S.D.N.Y. July 20, 2017), *report and recommendation adopted in part, rejected in part*, No. 15 CIV. 7488 (CM), 2017 WL 3613663 (S.D.N.Y. Aug. 21, 2017).

For example, the Magistrate Judge could have protected the City from any possible unfairness in the litigation by issuing a protective order forbidding Dr. Maguire from disclosing confidential communications to the People, or from relying on confidential matter in his report and testimony. *See, e.g.*, *Space Sys./Loral v. Martin Marietta Corp.*, No. 95-CV-20122 SW, 1995 WL 686369, at *4 (N.D. Cal. Nov. 15, 1995) (prohibiting defense expert from offering opinion testimony reliant on information obtained during prior employment with the plaintiff); *Wang Lab'ys, Inc. v. CFR Assocs., Inc.*, 125 F.R.D. 10, 13 (D. Mass. 1989) (denying motion to disqualify expert but issuing protective orders prohibiting expert's disclosure of confidential information). Or, if the City were to identify a concrete and justified reason to believe that Dr. Maguire might refer to confidential information, any such concern could be addressed through a motion *in limine* before or during trial. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 3085342, at *8. And to the extent the City has legitimate concerns about prejudice or injury outside the context of this litigation, its NDA with Dr. Maguire authorizes the City to seek "specific performance and injunctive relief" to preclude the disclosure of non-public information learned through his consultancy. ECF No. 313-3 ¶¶ 1, 2, 4. The Magistrate Judge's order here impermissibly employs the blunt instrument of disqualification where other more targeted remedies are available.

The Magistrate Judge's order is contrary to law in its refusal to adopt such an alternative remedy or explain why such a remedy would be inadequate. The opinion simply asserts (at 20) that "no remedy short of disqualification is adequate to vindicate the interests subject to harm from Dr. Maguire's testimony in this case," offering no explanation of why that would be so. The Magistrate Judge's premise—that Dr. Maguire cannot "compartmentalize information" in order to avoid disclosing the City's unspecified confidential material—is itself contrary to the law that applies in related contexts. For example, the courts operate under the "invariable assumption . . . that jurors follow their instructions" and either disregard improper evidence or consider it only for proper purposes (*e.g.*, for impeachment but not to establish guilt). *E.g.*, *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (collecting examples); *United States v. Jackson*, 792 F. App'x 849, 853 (2d Cir. 2019) (relevant but prejudicial evidence of prior conviction admitted with limiting instruction). The law also assumes that jurors are able to compartmentalize their own personal experiences and knowledge in order to "render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). And as another Judge of this Court observed, "experience" shows that "juries are not only able to 'compartmentalize' as required, but do it with care and, frequently, visible results in [their] verdicts." *United States v. Pinto-Thomaz*, No. 18-CR-579, 2019 WL 1460613, at *4 (S.D.N.Y. Jan. 15, 2019); *see also U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 155 (S.D.N.Y. 2015) (McMahon, J.) (rejecting, in civil case, argument "that jurors could not compartmentalize this evidence"; limiting instruction sufficient). Only an "overwhelming probability" that a juror cannot comply with an instruction can overcome the assumption that he will compartmentalize information as ordered. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987).

The very case the Magistrate Judge relied upon suggests that inevitable disclosure is not assumed, but rather there must be a "substantial risk" that an expert will—voluntarily or unwittingly—disclose confidential information. In *Pellerin v. Honeywell Intern Inc.*, the Court found that there was a "substantial risk" that an ear plug designer could not compartmentalize trade secrets learned from his ten-year employment with Honeywell when testifying against the company in a case about the misappropriation of hearing-protection trade secrets. No. 11-CV-1278, 2012 WL 112539, at *1, *3 (S.D. Ca. Jan. 12, 2012). Several other courts have also required a threshold showing of a "substantial" or "significant risk of such disclosure" prior to disqualification. *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2017 WL 3613663, at *6 (S.D.N.Y. Aug. 21, 2017) (expert's extensive, 23-year relationship with movant created "substantial risk of inadvertent disclosure"); *Great Lakes*, 734 F. Supp. at 339 (refusing to disqualify expert absent proof that there is "a significant risk of such disclosure and resulting prejudice"). There is no such "substantial risk" here. Dr. Maguire was retained only briefly and for a limited purpose that does not bear on the question of liability—to create a checklist in the fall of 2020, well after the protests began. And again, he neither recalls the specifics of any confidential communications nor retained copies of any confidential documents. In these circumstances—which differ materially from those in *Pellerin* and *Namenda*—there is no reason to assume that an expert witness like Dr. Maguire would be categorically unable to perform the same type of mental compartmentalization that we routinely expect of lay jurors.[4]

---

[4] For these reasons, the Magistrate Judge's order cannot be salvaged by reference to Fed. R. Evid. 501 and broad reliance on the "deliberative process" privilege. Any genuinely privileged material may be excluded from trial by measures well short of wholesale disqualification—which has the impermissible effect of excluding relevant expert opinion that will not itself comprise or disclose any privileged matter.

The People respectfully submit that the Magistrate Judge erred as a matter of law in so readily dismissing a remedy less severe than wholesale disqualification. This Court should set aside the Magistrate Judge's order and should tailor any remedy so that the People are not deprived of Dr. Maguire's vital testimony in this case.

## CONCLUSION

The Magistrate Judge's order is contrary to law and should be set aside. The City's motion to disqualify Dr. Maguire should be denied.

Dated: February 7, 2022

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

Anisha S. Dasgupta
  *Deputy Solicitor General*
Philip J. Levitz
Cleland B. Welton II
  *Assistant Solicitors General*

By: /s/ Lillian Marquez
Travis England, *Deputy Chief Attorney General*
Lillian Marquez, *Assistant Attorney General*
Swati Prakash, *Assistant Attorney General*
Gregory Morril, *Assistant Attorney General*
Colleen Faherty, *Assistant Attorney General*
Conor Duffy, *Assistant Attorney General*
Gina Bull, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street, 20th Floor
New York, NY 10005
(212) 416-8250
Lillian.Marquez@ag.ny.gov