**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: New York City Policing During Summer 2020 Demonstrations | 20 Civ. 8924 (CM)(GWG) |
| This document is related to: *Sow et al. v. City of New York et al.*, 21-cv-533(CM)(GWG) | |

*SOW* **PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSION, SUPPLEMENTAL INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS**

Plaintiffs hereby request, pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure and the applicable Local Civil Rules that Defendants respond to the following Requests for Admissions, Interrogatories and Document Requests.

## REQUESTS FOR ADMISSION

1.      Plaintiffs request that defendants admit that Commissioner Shea expressed concern that the curfew would suppress first amendment activity.

2.      Plaintiffs request that defendants admit that Mayor de Blasio stated that the City will not enforce the curfew against "peaceful protesters."

## INTERROGATORIES

1.      Identify the infractions, violations, and/or crimes which gave rise to probable cause for the detention and/or arrest of each of the Named Plaintiffs.

2.      Identify each individual and/or officer who issued a dispersal order at any protest location on the date and time identified in Scheduled A, including:

a.      the language of the order;

b.      method used to convey the order (i.e. bullhorn, LRAD, voice only, etc.);

c.      the number of times such order was given;

d.      which path(s) of egress was/were provided; and

e.      the duration of time such egress was made available.

3.      Identify each individual and/or officer who placed each Named Plaintiff in handcuffs and/or flex cuffs.

4.      Identify each individual who was arrested at a location listed in Schedule A.

5.      Identify each individual and/or officer who otherwise used force on each Named Plaintiff in connection with each Named Plaintiff's arrest and/or interaction with the NYPD during a protest.

6.      Identify, by name and timestamp, any video produced to Defendant City of New York in any case, or in this case depicting each Plaintiff.

7.      Identify, by name and timestamp, any video produced to defendant City of New York in any case, or in this case depicting each Defendant.

8.      Identify, by name and timestamp, any video produced in this case or any of the related cases listed in Document Request No. 1 depicting each Defendant by name of Defendant and timestamp of footage in which that Defendant appears.

9.      Identify any conversations, including electronic communications, between Defendants Monahan and de Blasio concerning the protests, including, but not limited to the telephone call that was recently made public held during the Mott Haven protest/arrests. (*See* https://www.thecity.nyc/2021/5/18/22442881/floyd-protest-policing-defended-by-nypd-commissioner-shea).

10. Identify, by Name and Tax ID, each and every officer who was disciplined for using excessive force at a protest over the last 20 years, and identify the date, location and conduct resulting in such discipline.

11. For Officers identified in the interrogatory above (Interrogatory No. 10), identify the nature of the discipline received.

12. For each Protest Location listed in the attached Schedule B, Documents sufficient to identify the intended roles or functions, deployments, commands, and instructions provided to each and every Officer who was assigned to, or who responded to, the Protest Location, permits sought for such protest, instructions conveyed to officers assigned to police such protest, intelligence received regarding such protest, including but not limited to documents identifying:

      a. the commanding Officer for each location;

      b. the full name, shield number, tax identification number, assigned command, and rank of each Officer deployed;

      c. each Officer's assignment post, including the assignment address and borough;

      d. any and all Officers assigned to supervise or oversee such deployment;

      e. any attorneys from either the NYPD or the NYC Law Department at each location;

      f. all intelligence reports created prior to, during or after each protest;

      g. any roll call or other documents identifying the assignment of officers to these protests;

      h. all Threat Response Inquiry ("TRI"), Officer Injury Reports, Complaints, or other written documentation of any kind related to such deployment;

i.      all Unusual Incident or Occurrence Reports (PD370-152; UF-49);

j.      all instructions or directives regardless of form regarding police equipment and uniforms (including disorder control gear, face coverings, and so-called "mourning bands") to be worn or possessed by Officers during the assignment;

k.      any communications relating to the decision to deploy Officers from the SRG and any instructions or directives provided to the SRG or Officers assigned to such deployments;

l.      any applications for permits related to these protests, including but not limited to, permits to march in the street, permits to march on the bridge roadway, permit for sound amplification;

m.      any requests for TARU to be present at any of these locations;

n.      any dispersal orders that were provided to officers who would be policing these protests;

o.      any documents, memos, emails, communications in possession of any defendant related to these protests; and

p.      any document identifying a policy of the defendants on how to police any of the protests identified in Schedule B.

13.   Who made the decision that officers should conduct custodial arrests of protesters for violations of New York Penal Law § 240.20 and the Mayor's Executive Curfew Orders during the events listed in Schedule A and describe how this decision was made.

14.   Who made the decision that Emergency Executive Order 117 and Emergency Executive Order 119 establishing the city-wide curfews should be enacted and/or issued and describe how these decisions were made.

15.     Identify any and all protests listed in Schedule A to which the SRG was deployed and whether those protests were categorized as "civil disobedience" "nonviolent/complaint crowds" and/or "violent/non-complaint crowd control arrests," and/or other categorizations used, pursuant to the SRG training manuals.

16.     Identify any and all policy changes, changes in training, or FINEST messages which were in some way a response to the judgment in *Abdell v. City of New York*, No. 05 Civ. 8453 (RJS) (S.D.N.Y.) and/or *Gersbacher v. Winski*, No. 14 Civ. 7600 (S.D.N.Y.); the settlement in *Rodriguez v. Winski*, 12 Civ. 3389 (NRB) (S.D.N.Y.), and district court summary judgment decision in *Dinler v. City of New York*, 1:04-cv-7921 (S.D.N.Y.) (Dkt. No. 312 therein).

17.     Identify any and all policy changes, changes in training, or FINEST messages concerning the settlement of the RNC cases, including but not limited to *MacNamara, et al., v. City of New York, et al.*, 04 Civ. 9216 (KMK)(JCF).

18.     Identify the 'senior official' who stated there were not enough police officers. Referenced at page 31 of the NYC Department of Investigation Report.

19.     Identify by investigation number and officer name individuals who were recommended for discipline and or charges by the CCRB listed in Exhibit 1, CCRB 2020 Protest Data Snapshot Oct 18, 2021.

20.     Identify the type of discipline and/or charges which were recommended for the officers identified in response to Interrogatory No. 19.

21.     Identify John and Jane Does 1-20 who formed the line blocking Brook Avenue.

22.     Identify John and Jane Does 21-40 who formed the line blocking 136th Street and Brown Place.

23.     Identify John and Jane Does 41-60 who formed the blockade between 136th Street and the sidewalks to the north and south of 136th Street.

24.     Identify John Doe NYPD Legal Bureau Attorney, wearing Helmet No. 26435, whose helmet number does not match the assigned officer, as depicted in the still below from June 4, 2020.



25.     Identify SRG Doe Officer who can be seen in the City's production, Body Worn Camera footage 11808655_1 at timestamp 0:04-0:10, striking David Jaklevic with a bicycle, as noted in paragraph 136 of Plaintiffs' First Amended Complaint, and as depicted in the stills below.





*Plaintiff: David Jaklevic (May 30, 2020 arrest)*

26.     Identify Doe Officer who can be seen in the City's production, Body Worn Camera

footage 11808554_1 at timestamp 1:35-1:42, violently pulling Mr. Jaklevic by his left arm while

Mr. Jaklevic is restrained from behind by a white-shirt officer, before drawing Mr. Jaklevic out of

frame, as noted in paragraph 137 of Plaintiffs' First Amended Complaint, and as depicted in the stills below.







27.     Identify Doe Officer who can be seen in the City's production, Body Worn Camera footage 11808269_1 at timestamp 5:02-5:11 and 11808185_1 at timestamp 21:59, piling on top of Mr. Jaklevic, who pulled Mr. Jaklevic's arms forcefully back while on top of him, as noted in paragraph 139 of Plaintiffs' First Amended Complaint and as depicted in the stills below.









28.     Identify white-shirt Doe Officer who can be seen in the City's production, Body

Worn Camera footage 11808663_1 at timestamp 1:01-1:09 and 11808554_1 at timestamp 1:24-

1:43, violently pulling Mr. Jaklevic's arms from behind as noted in paragraph 137 of Plaintiffs'

First Amended Complaint and as depicted in the stills below.



29.     Identify Doe Officer, Helmet No. 11026, who can be seen in the City's production, Body Worn Camera footage 11808148_1 at timestamp 20:12, visible as one of the officers who tackled Mr. Jaklevic, as noted in paragraphs 137 through 143 of Plaintiffs' First Amended Complaint and as depicted in the still below.



30.    Identify Doe Officer, Helmet No. 20331, who can be seen in the City's production, Body Worn Camera footage 11808148_1 at timestamp 20:16, visible as one of the officers who tackled Mr. Jaklevic, as noted in paragraphs 137 through 143 of Plaintiffs' First Amended Complaint and as depicted in the still below.



31.     Identify Doe Officer, Helmet No. 15083, who can be seen in the City's production, Body Worn Camera footage 11808148_1 at timestamp 19:19, visible as one of the officers who tackled Mr. Jaklevic, as noted in paragraphs 137 through 143 of Plaintiffs' First Amended Complaint and as depicted in the still below.



*Plaintiff: Alexandra de Mucha Pino (May 30, 2020 arrest)*

32.     Identify 2 Doe Officers who shoved and handcuffed or assisted in handcuffing Ms. de Mucha Pino as noted in paragraphs 161 through 166 of Plaintiffs' First Amended Complaint and as depicted in the stills below.



33.     Identify 1 or more Doe Officers who ignored Ms. de Mucha Pino's requests to loosen her excessively tight handcuffs, as noted in paragraphs 168 through 170 of Plaintiffs' First Amended Complaint.

*Plaintiff: Oscar Rios (June 1, 2020 arrest)*

34.     Identify Doe Officer who tackled Mr. Oscar Rios, forced him prostrate on the ground, struck him multiple times with a baton, and punched him repeatedly, as noted in paragraph 185 of Plaintiffs' First Amended Complaint.

35.     Identify Doe Officer who stepped on Mr. Rios's face, breaking his eyeglasses, and told Mr. Rios, in sum and substance, to "Shut the fuck up," after Mr. Rios expressed that he was struggling to breathe with his face pressed into the ground, as noted in paragraphs 188 through 191 of Plaintiffs' First Amended Complaint.

36.     Identify 5 Doe Officers who sat or kneeled on top of Mr. Rios, continued to strike him with their fists and batons, handcuffed him with excessively tight flex-cuffs, and told him that they could not do anything about his complaints regarding the excessive tightness of the cuffs and the numbness in his hands, as noted in paragraphs 195 through 196 of Plaintiffs' First Amended Complaint.

37.     Identify Doe Officer who threatened Mr. Rios with a baton and told him, in sum and substance, "Shut the fuck up," as noted in paragraphs 193 through 194 of Plaintiffs' First Amended Complaint.

38.     Identify Doe Officers who led Mr. Rios to a prisoner transport vehicle and loaded him or assisted in loading him inside, as noted in paragraph 197 of Plaintiffs' First Amended Complaint.

39.     Identify Doe Officers inside the prisoner transport vehicle who denied Mr. Rios's request for a face mask, confiscated his fanny pack, and confiscated his phone, as noted in paragraphs 198 and 200 of Plaintiffs' First Amended Complaint.

***Plaintiff: Barbara Ross (June 1, 2020 incident)***

40.     Identify Jane Doe Officer who flung upon the door of an NYPD van and grabbed the handlebar of Ms. Barbara Ross's bicycle as she was riding past, causing Ms. Ross to be thrown off her bicycle and into the street, as noted in paragraphs 210 through 213 of Plaintiffs' First Amended Complaint.

*Plaintiff: Matthew Bredder (June 2, 2020 arrest)*

41.     Identify 2 or more Doe Officers who threw Matthew Mr. Bredder to the ground and slammed his head into the street, resulting in a chipped tooth and a cut on his chin. The same Doe Officers also pulled Mr. Bredder's arms behind his back and handcuffed him with plastic flex-cuffs, as noted in paragraphs 221 through 225 of Plaintiffs' First Amended Complaint.

*Plaintiff: Sabrina Zurkuhlen (June 2, 2020 arrest)*

42.     Identify John Doe Officer 1, who wore a blue NYPD uniform and riot helmet, and charged at Ms. Sabrina Zurkuhlen with a baton, knocked the phone out of her hands, struck her across the chest, arms, and upper body with his baton, and tackled her to the ground, as noted in paragraphs 247 and 249 through 252 of Plaintiffs' First Amended Complaint.

43.     Identify Doe Officers 2-4 who descended on Ms. Zurkuhlen, beat her with batons, and kicked her, as noted in paragraph 253 of Plaintiffs' First Amended Complaint.

44.     Identify Doe Officer who knelt on Ms. Zurkuhlen's legs while she was on the ground, preventing her from standing up, as noted in paragraphs 254 through 255 of Plaintiffs' First Amended Complaint.

45.     Identify Doe Officer who sat on Ms. Zurkuhlen's back while she was on the ground, preventing her from standing up, as noted in paragraphs 254 through 255 of Plaintiffs' First Amended Complaint.

46.     Identify white-shirt John Doe Officer 5 who said to other NYPD officers, in sum and substance, "Ok, that's enough guys, get her up," as noted in paragraph 258 of Plaintiffs' First Amended Complaint.

47.     Identify Doe Officer who laughed at Ms. Zurkuhlen when she requested her phone to be returned to her, and told Ms. Zurkhlen that her phone was gone, as noted in paragraph 261 of Plaintiffs' First Amended Complaint.

48.     Identify Doe Officer who told other officers nearby to not turn on their Body Worn Cameras and cover their name badges, as noted in paragraph 263 of Plaintiffs' First Amended Complaint.

49.     Identify Doe Officers who laughed at Ms. Zurkuhlen's requests to pull up her mask after it had fallen down or keep a safe distance between persons present, mocked her, and refused to help her, as noted in paragraphs 265 through 266 of Plaintiffs' First Amended Complaint.

50.     Identify Doe Officers who loaded Ms. Zurkuhlen into the prisoner transport vehicle and held her in there for an extended period of time, as noted in paragraphs 270 through 271 of Plaintiffs' First Amended Complaint.

51.     Identify Doe Officers who told Ms. Zurkuhlen, in sum and substance, to "Shut the fuck up," in response to her request to be able to help other arrestees who she observed to have purple hands from excessively tight handcuffs and who she heard were complaining of numbness in the hands, as noted in paragraphs 267 through 269 of Plaintiffs' First Amended Complaint.

52.     Identify Doe Officers inside the Brooklyn centralized arrest processing center who refused Ms. Zurkuhlen's many requests for water and instead mocked her, as noted in paragraphs 278 and 279 of Plaintiffs' First Amended Complaint.

***Plaintiff: Maria Salazar (June 3, 2020 arrest)***

53.     Identify John Doe Officer who rammed his bicycle into Ms. Salazar with such force that her mask came off her face, as noted in paragraphs 288 through 289 of Plaintiffs' First Amended Complaint.

54.     Identify Jane Doe Officer who rammed her bicycle into Ms. Salazar with such force that her mask came off her face, as noted in paragraphs 288 through 289 of Plaintiffs' First Amended Complaint.

55.     Identify blue-shirt John Doe Officer who appeared to be a young Black man and placed excessively tight handcuffs on Ms. Salazar, as noted in paragraphs 295 and 299 of Plaintiffs' First Amended Complaint.

56.     Identify blue-shirt John Doe Officer who recuffed Ms. Salazar from plastic handcuffs into metal handcuffs.

57.     Identify Doe Officers at the arrest processing center who ignored and/or refused Ms. Salazar's repeated requests for water and restroom access, as noted in paragraphs 304 through 305 of Plaintiffs' First Amended Complaint.

***Plaintiff: Matthew Bredder (June 4, 2020 arrest)***

58.     Identify Doe Officer who said to Mr. Bredder, in sum and substance, "Fuck you" or "Fuck off," and punched him on the chin, as noted in paragraph 314 of Plaintiffs' First Amended Complaint.

59.     Identify John Doe Officers 83-86, who can be seen in the City's production, Body Worn Camera footage AXON_Body_2_Video_2020-06-04_2008.mp4 at timestamp 7:52, visible as appearing to all be males, 1 of whom appeared to be back and 1 of whom wore a yellow helmet, who picked Mr. Bredder up by his arms and legs approximately 3 feet off the ground, partially ripped his shirt off, and slammed and/or dropped him to the ground, as noted in paragraphs 315 through 318 of Plaintiffs' First Amended Complaint.

60.     Identify white-shirt John Doe Officer who can be seen in the City's production, Body Worn Camera footage AXON_Body_2_Video_2020-06-04_2016-10.mp4 at timestamp









62.     Identify 2 blue-shirt Doe Officers who can be seen in the City's production, Body Worn Camera footage AXON_Body_2_Video_2020-06-04_2016-3.mp4 at timestamp 06:02, standing next to Mr. Bredder as he waits in line to get onto the transport vehicle, as depicted in the still below.

***Plaintiff: Dara Pluchino (June 4, 2020 arrest)***

63.     Identify blue-shirt Jane Doe Officer 82, appearing to be a Black woman, who grabbed Ms. Pluchino and passed her to Lieutenant/Sergeant John Doe 83, and as depicted in the stills below.









64.    Identify blue-uniform Lieutenant/Sergeant John Doe 83, who can be seen in the

City's production, Body Worn Camera footage DEFVID_000000477 at timestamp 0:38, with

helmet showing number 75 and appearing to be a white male, who placed Ms. Pluchino in

excessively tight handcuffs, unmasked her, and pulled on her left upper arm so hard that he left a

bruise, as noted in paragraphs 335 through 337 of Plaintiffs' First Amended Complaint and as

depicted in the stills below.







65.     Identify blue-shirt John Doe Officer who can be seen in the City's production, Body Worn Camera footage AXON_Body_2_Video_2020-06-04_2021-4.mp4 at timestamp 8:12-8:25, who leads Ms. Pluchino into the intersection to sit down in the middle of the street, as noted in paragraph 338 of Plaintiffs' First Amended Complaint, and as depicted in the stills below.







66.    Identify blue-shirt John Doe Officer who can be seen in the City's production, Body Worn Camera footage AXON_Body_2_Video_2020-06-04_2026.mp4 at timestamp 3:00, who walks with his arm/hand on Ms. Pluchino, as noted in paragraph 338 of Plaintiffs' First Amended Complaint, and as depicted in the stills below.

AXON_Body_2_Video_2020-06-04_2026.mp4



2020-06-05 T00:28:35Z
AXON BODY 2 X81356895

3:00 / 3:05



67.    Identify blue-shirt Doe Officer, who can be seen in the City's production, Body

Worn Camera footage AXON_Body_2_Video_2020-06-04_2133.mp4 at timestamp 2:40, with

"Luckert" and number "31654" embroidered on his shirt, standing at the back of the prisoner

transport vehicle, receiving arrestees and coordinating loading them into the vehicle, as depicted

in the stills below.

AXON_Body_2_Video_2020-06-04_2133.mp4



AXON_Body_2_Video_2020-06-04_2133.mp4

*Plaintiff: Adama Sow (June 4, 2020 arrest)*

68.     Identify John Doe Officer 82, appearing to be white and who Mr. Sow believed to be a "Chief," who gave an order to disperse when there was no physical room available for Mr. Sow to leave the area.

69.     Identify Doe Officer who sprayed pepper spray into Mr. Sow's left eye, as noted in paragraph 352 of Plaintiffs' First Amended Complaint.

70.     Identify Doe Officer who grabbed Mr. Sow from behind and pushed him against a car, as noted in paragraph 353 of Plaintiffs' First Amended Complaint.

71.     Identify John Doe Officer 83 who, in response to Mr. Sow's request for his mask to be pulled up over his nose and mouth, pulled Mr. Sow's mask up over his eyes like a blindfold, and shoved him onto the ground, as noted in paragraphs 354 through 356 of Plaintiffs' First Amended Complaint.

72.     Identify Jane Doe Officer 84, appearing to be white, who responded to Mr. Sow's requests to pull his mask over his nose and mouth by pulling his mask down around his neck.

73.     Identify Doe Officers who put excessively tight handcuffs on Mr. Sow and refused to loosen them, as noted in paragraphs 358 and 362 through 366 of Plaintiffs' First Amended Complaint.

74.     Identify Doe Officer who removed Mr. Sow's first set of excessively tight handcuffs, only to replace them with another pair of excessively tight handcuffs, as noted in paragraphs 367 through 369 of Plaintiffs' First Amended Complaint.

75.     Identify John Doe Officer 85 who said "I miss the raping days" to Officer Talha Ahmad, while Mr. Sow was waiting to be processed, as noted in paragraph 377 of Plaintiffs' First Amended Complaint.

***Plaintiff: Savitri Durkee (June 4, 2020 arrest)***

76.     Identify blue-shirt John Doe Officer, who can be seen in the City's production, Body Worn Camera footage AXON_Body_2_Video_2020-06-04_2003-2.mp4 at timestamp 19:50, AXON Body 2 Video 2020-06-04 2017 at timestamp 6:25, AXON_Body_2_Video_2020-06-04_2010.mp4 at timestamp 13:25, and AXON_Body_2_Video_2020-06-04_2001-2.mp4 at timestamp 22:17, appearing to be a white male, who can be seen standing in line with Ms. Durkee after she was handcuffed, in a group of people waiting to be walked up to the transport vehicle, as noted in paragraph 410 of Plaintiffs' First Amended Complaint, and as depicted in the stills below.









78. Identify blue-shirt Doe Officer, who can be seen in the City's production, Body Worn

Camera footage AXON_Body_2_Video_2020-06-04_2007.mp4 at timestamp 0:53, visible as

standing and facing Ms. Durkee, prior to her arrest, as depicted in the still below.



77.     Identify John Doe Officer who grabbed Ms. Durkee from behind, threw her to the

ground on top of other protestors, told her, in sum and substance, to "Shut the fuck up," grabbed

her hair, pulled her hair back, ripped her mask down, put his knee or baton into her back, and put

handcuffs on her, as noted in paragraphs 402 through 406 of Plaintiffs' First Amended

Complaint.

78.     Identify Doe Officers who deployed pepper spray into the crowd of protestors, as

noted in paragraph 409 of Plaintiffs' First Amended Complaint.

79.     Identify Doe Officers who denied or delayed responding to Ms. Durkee's requests

for medical attention and/or medication.

## DOCUMENT REQUESTS

1. Produce all documents referenced in Defendants' responses to the above Interrogatories.

2. Produce the following documents for each Protest listed on attached Schedule A:

> a.    any and all intelligence reports, threat assessments, and information compiled and/or reviewed in advance of and during the Protests, including all Documents reflecting Officers' planning for policing the Protests, and any spreadsheets or other lists of "scheduled" and "unscheduled" events during the time period surrounding each Protest;

> b.    any and all communications, tactical decisions, intelligence alerts, policies or other directives issued by any Officer as a result of such intelligence reports, assessments, or other information pertaining to the Protests;

> c.    news clips, social media postings, and internet links gathered by the NYPD, including but not limited to such information and records gathered or created by the Office of the Deputy Commissioner for Public Information ("DCPI"), the Intelligence Division, or otherwise, related to any Protest;

> d.    requests for detail, Operations Unit (including Detail Section) records, "204s", "Who's Who," "Force Figures," "Detail Overview," roll calls, tactical plans, detail rosters, assignment sheets, internal communications, and other documents) concerning NYPD's deployment or assignment of Officers and resources relating to the Protests;

> e.    command Log(s) and other records created as a result of or related to the operation any Incident Command Post utilized in connection with policing a Protest;

f.      records reflecting whether and, if so, by whom, when, and to what extent, dispersal orders or other warnings and opportunities to disperse or comply were given before enforcement action was taken at each Protest where force was used or detentions or Arrests were made;

g.      all To/From Memoranda, Unusual Occurrence Reports, U.F. 49s, Mass Arrest Reports and/or any other Documents consisting of summaries, reviews, recaps, evaluations, critiques, after-action reports, or other reports following any Protest, including but not limited to Joint Operations Center reports;

h.      all videos, including TARU videos, body worn camera videos, and Aviation Unit videos;

i.      all audio recordings, including audio recordings of NYPD Citywide and other radio communications;

j.      SPRINT reports and ITAC reports related to recorded communications (and documents sufficient to decipher such SPRINT and/or ITAC reports);

k.      internal NYPD communications, including, but not limited to, e-mails, text messages, records regarding telephone calls made or received;

l.      any and all TRI Reports, and any and all Incident Worksheets (PD370-154), and any and  all TRI Incident-Investigating Supervisor's Assessment Reports (PD370-154A), any and  all TRI Interaction Reports, all Unusual Incident Reports, including any and all other  Documents relating to such reports and worksheets;

m.      command Log(s) from each arrest processing location to which a person arrested in connection with a Protest was brought, including any Mass Arrest Processing Center ("MAPC");

n.      MAPC intake and processing records; Documents sufficient to identify all Arrests by Officers based on alleged conduct occurring at each Protest Location, including Documents sufficient to identify the number of such Arrests voided by the NYPD;

o.      for any Officer who was injured during any Protest, any related Line of Duty injury paperwork, including but not limited to AIDED Report(s), witness statement(s), and medical records;

p.      for any non-Officer injured related to a Protest, all records related to such injury, including any AIDED Report, Medical Treatment of Prisoner Form, Central Booking Medical Screening Form, Ambulance Call Report, Computer Aided Dispatch, FDNY Pre-Hospital Care Report, and other documents related to such injury;

q.      documents concerning press inquiries received by Defendants and/or press releases or statements to the press made by individual Defendants or their agents related to any Protest, including such statements made in electronic communications such as e-mail or text messages.

3.      Produce all SRG documents for the protests dates and locations identified in Schedule A:

a.      City Mobilization Log;

b.      intelligence packets distributed by Local SRG Commanding Officer to supervisors that would appear at detail;

c.      results of inspection;

d.      photographs taken at MAPC;

   e.  Command Log(s); and

   f.  CIRC Response ("Critical Incident Response Capacity").

4. Produce all OLPA (zOLPA) for all putative class members arrested from May 28, 2020 to January 18, 2021, at locations listed in Schedule A.

5. Produce redacted OLPA (zOLPA) for individuals arrested from May 28 to June 6, 2020, not at locations listed in Schedule A.

6. Produce any and all documents, including emails, text messages, or other electronic communications which referenced the implementation of the mass arrest processing centers listed in Defendants' Fifth Supplemental Responses and Objections to Plaintiffs' First Consolidated Interrogatory No. 14

7. Produce any and all documents concerning the City's response to the COVID-19 pandemic in protest and/or arrest including, but not limited to the topics of:

   a.  social distancing;

   b.  hand sanitizing;

   c.  hand washing;

   d.  face coverings and/or face masks;

   e.  opening of windows;

   f.  ventilation; and

   g.  gloves and/or other PPE used by NYPD members of service.

8. Produce any and all documents including electronic communications related to the preparation of mass arrest processing facilities sanitation logs, pest control logs, plans for cleaning, toilet cleaning provisions and logs, provisions of cleaning equipment and products for the same,

heating and cooling of the facilities and transport vehicles where prisoners would be held during processing time.

9.      Produce any and all documents, including electronic communications related to the decisions to custodially arrest protesters.

10.     Produce any and all documents, including electronic communications related to the briefings and training given to the individuals city employees who were in charge of supervising mass arrest processing facilities.

11.     Produce any and all documents, documents or communications have with any borough district attorney office relating to mass arrests that resulted in dispositions that include decline to prosecute.

12.     Produce any and all documents, including electronic communications related to the information collected pursuant to Local Law 68-2020, the Department's Early Intervention Program (which collects information regarding certain declinations to prosecute), as well as Law Department declinations to indemnify or represent officers in civil lawsuits brought from protest arrests alleging a constitutional violation.

13.     Produce any and all documents reflecting policy changes, changes in training, or finest messages, and/or any discipline that incurred by any officer which were in some way a response to the judgment in *Abdell v. City of New York*, No. 05 Civ. 8453 (RJS) (S.D.N.Y.) and/or *Gersbacher v. Winski*, No. 14 Civ. 7600 (S.D.N.Y.); settlement in *Rodriguez v. Winski*, 12 Civ. 3389 (NRB (S.D.N.Y.) and district court summary judgment decision in *Dinler v. City of New York* 1:04-cv-7921 (S.D.N.Y.) (Dkt. No. 312 therein).

14.     Produce any and all documents reflecting policy changes, changes in training, or finest messages which were in some way a response to the settlement of the RNC cases, including

but not limited to *MacNamara, et al., v. City of New York, et al.*, 04 Civ. 9216 (KMK)(JCF) (S.D.N.Y.).

15.     Produce the Joint Operations Center (JOC) logs for each day listed in Schedule A.

16.     Produce the Mass Arrest Processing Center (MAPC) logs for each day listed in Schedule A.

17.     Produce the "intel SITREPS" for each day listed in Schedule A.

18.     Produce the intelligence bureau surveys for each day listed in Schedule A.

19.     Produce the spreadsheet titled "Protest Related Activity May 28 through June 7" and referenced at pg. 24 of the NYC Dept. of Investigation Report.

20.     Produce any press releases, press advisories or the like issued by members of Deputy Commissioner of Public Information ("DCPI")'s office from May 28, 2020 to July 1, 2020.

21.     Produce the communications from Chief Terence Monahan which ordered the release of the legal observers. *See* NYC Department of Investigation Report, Pg. 44.

22.     Produce records which reflect NYPD employees' efforts to cover their badges during the protests listed at Schedule A.

23.     Produce records which reflect the efforts of the NYPD, or any City agency, to investigate the prevalence of NYPD employees covering their badges.

24.     Produce records which reflect the efforts of the NYPD to decrease the prevalence of NYPD employees covering their badges.

25.     Produce records which would reflect Commissioner Shea's concern that the curfew would suppress first amendment activity.

26.     Produce records of the statements made by the Mayor stating that the City will not enforce the curfew against "peaceful protesters."

27.     Produce documents which show the basis for the statement made on May 31st by Deputy Commissioner John Miller at a press briefing where he stated that NYPD had evidence providing a high level of confidence that disorderly groups had organized bike scouts, medics, and supply routes of rocks, bottles, and accelerants for the purpose of vandalism and violence.

28.     Produce documents which show the basis for the statement made on June 5 by Mayor de Blasio and Commissioner Shea pointed to intelligence to justify the mass arrest that took place the prior evening in Mott Haven.

29.     Produce documents which show the basis for the statement made on June 6, Deputy Commissioner Miller provided a second press briefing where he provided data on arrests, burglaries, and the numbers of injured officers. Deputy Commissioner Miller also noted that officers had been attacked with bricks, trash cans, vehicles, and other projectiles, as well as homemade incendiary devices such as Molotov cocktails. The briefing also contained information on specific incidents, including the knife-attack by a "homegrown violent extremist," a Bronx vehicle stop that resulted in the discovery of hammers and accelerants, and a gun arrest that took place in the South Bronx prior to the Mott Haven protest.

30.     Produce the whole daily binders from the intelligence division for the days listed in Schedule A.

31.     Produce the Situation Reports prepared by the intelligence division for the days listed in Schedule A.

32.     Produce the Tactical Assessments prepared by the intelligence division for the days listed in Schedule A.

33.     Produce the Handschu Investigative Statements prepared by the intelligence division for the days listed in Schedule A.

34.     Produce the Academy curriculum including the four-hour module on disorder control training conducted by the Disorder Control Unit.

35.     Produce the training material used to train the SRG units, specifically the five days that are dedicated to disorder control training.

36.     Please produce any communications between NYPD and the CCRB regarding Kenneth Rice, including but not limited to any requests to reopen his disciplinary case.

Dated: November 15, 2021
       New York, New York

**BELDOCK LEVINE & HOFFMAN LLP**

By: _____
    Jonathan C. Moore
    David B. Rankin
    Luna Droubi
    Marc Arena
    Deema Azizi
    Rebecca Pattiz
    Katherine "Q" Adams
    Regina Powers

99 Park Avenue, PH/26th Floor
New York, New York 10016
    t: 212-490-0400
    f: 212-277-5880
    e: jmoore@blhny.com
       drankin@blhny.com
       ldroubi@blhny.com
       marena@blhny.com
       dazizi@blhny.com
       rpattiz@blhny.com
       qadams@blhny.com
       rpowers@blhny.com

**GIDEON ORION OLIVER**

_____
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: _____
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com
       jessica@femmelaw.com

**WYLIE STECKLOW PLLC**

_____
By: Wylie Stecklow
Wylie Stecklow PLLC
231 West 96th Street
Professional Suites 2B3
NYC NY 10025
t: 212 566 8000
Ecf@wylielaw.com

**LORD LAW GROUP PLLC**

_____
Masai I. Lord
14 Wall St., Ste 1603
New York, NY 10005
P: 718-701-1002
E: lord@nycivilrights.nyc