```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                           :
                                       Docket #20cv8924

  IN RE NEW YORK CITY POLICING   :
  DURING SUMMER 2020 DEMONSTRATIONS

                                 : New York, New York
                                   February 11, 2022
------------------------------------: TELEPHONE CONFERENCE


                       PROCEEDINGS BEFORE
               THE HONORABLE GABRIEL W. GORENSTEIN,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Sow and Hernandez    COHEN & GREEN
Plaintiffs:              BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New York 11385


For Payne Plaintiffs:    NEW YORK CIVIL LIBERTIES UNION
                         BY:  JESSICA PERRY, ESQ.
                         125 Broad Street, Suite 19
                         New York, New York 10004


For Sierra Plaintiffs:   RICKNER PLLC
                         BY:  ROB RICKNER, ESQ.
                         14 Wall Street, Suite 1603
                         New York, New York 10005


For Plaintiff People     NEW YORK STATE OFFICE OF
of the State of New      THE ATTORNEY GENERAL
York:                    BY:  TRAVIS ENGLAND, ESQ.
                         28 Liberty Street
                         New York, New York 10005




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

<u>APPEARANCES (CONTINUED)</u>:


For Gray Plaintiffs:      DAVIS WRIGHT TREMAINE LLP
                          BY:  ROBERT BALIN, ESQ.
                          1251 Avenue of the Americas
                          New York, New York 10020

For Yates Plaintiff:      STOLL, GLICKMAN & BELLINA, LLP
                          BY:  ANDREW STOLL, ESQ.
                          300 Cadman Plaza West, 12th Floor
                          Brooklyn, New York 11201

For Defendants:           NEW YORK CITY LAW DEPARTMENT
                          BY:  DARA WEISS, ESQ.
                               GENEVIEVE MILTON, ESQ.
                               JENNY WANG, ESQ.
                          100 Church Street
                          New York, New York 10007

3

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|-----|-----|-----------|
| None | | | | |

1

1                           PROCEEDINGS                    4

2              HONORABLE GABRIEL W. GORENSTEIN (THE COURT):

3    Okay, you can call the case.

4              THE CLERK:  This is In Re:  New York City

5    Policing During Summer 2020 Demonstrations, case number

6    20cv8924.

7              Will counsel, please state your appearances for

8    the record, starting with plaintiffs.

9              MX. REMY GREEN:  Good morning, this is Remy Green

10   from Cohen & Green, representing the Sow and Hernandez

11   plaintiffs.  And for the recording, I should appear in the

12   transcript as Mx. Green spelled M-X-period, rather than Mr.

13   or Ms., thank you.

14             MR. TRAVIS ENGLAND: Good morning, this is

15   Travis England from the Office of the New York State

16   Attorney General on behalf of The People of the State

17   of New York.

18             MS. JESSICA PERRY:  Good morning, this is

19   Jessica Perry with the New York Civil Liberties Union

20   Foundation appearing on behalf of the Payne

21   plaintiffs.

22             MR. ROB RICKNER:  Good morning, this is Rob

23   Rickner, Rickner PLLC, appearing for the Sierra plaintiffs.

24             MR. ROBERT BALIN:  Good morning, Your Honor,

25   this is Robert Balin of Davis Wright Tremaine,

```
 1                          PROCEEDINGS                    5
 2   appearing on behalf of the Gray plaintiffs.
 3            MR. ANDREW STOLL:  And, good morning, this is
 4   Andrew Stoll for Cameron Yates.
 5            THE COURT:  All right, and for defendants?
 6            MS. DARA WEISS:  Good morning, Your Honor, this
 7   is Dara Weiss from the New York City Law Department.
 8            MS. GENEVIEVE MILTON:  Good morning, Your
 9   Honor, this is Genevieve Milton also from the Law
10   Department.
11            MS. JENNY WANG:  Good morning, Your Honor,
12   this is Jenny Wang also from the Law Department.
13            THE COURT:  Okay, let me remind everyone we're
14   being recording but any other recording of the proceeding
15   is forbidden, as is any transmission, dissemination or
16   rebroadcast.
17            We're here based on a number of matters and I
18   have an order in my mind I'd like to go through them,
19   basically from smaller in scope to larger in scope.  You
20   did have something that did not, was not the subject of an
21   order, it was something from Mr. Rankin, number 386, which
22   sounds like it's being solved by stipulation so I'm
23   assuming that's going to be given to me in due course and
24   I'm not going to be concerned about that further.
25            The next one that I want to go to are, hold on a
```

```
 1                        PROCEEDINGS                    6
 2   second, the two unopposed letters for which there are
 3   proposed orders 370 and 374.  I am not sure there's a lot
 4   to say but if the City wants to say anything about the
 5   phrasing of the orders that's fine, anything on 370?
 6          MS. WEISS:  Yes, Your Honor, this is Dara
 7   Weiss.  On 370, which is the order on the Payne v. de
 8   Blasio case, I just, there were two things.  First, we
 9   respectfully request that Your Honor permit the
10   defendants to assert objections on the, the discovery
11   demands that, that were not responded to. although we
12   were late, it's part of I guess the overall issue that
13   we're having in this case and that has led to
14   everything that we're here for today.  The plaintiffs
15   are absolutely bombarding the defendants with letters
16   and emails and letters to the Court and requests for
17   meet and confers. And these discovery responses fell
18   sort of into the category the rest of these issues
19   were in that we're simply unable to keep up.  There
20   was no malice, it was inadvertent that responses
21   weren't done, the attorney from our office who was
22   assigned to draft the responses to these was wrapped
23   up in a lot of other things. She communicated with
24   plaintiffs on a number of occasions that she needed a
25   little more time, it just, unfortunately, did not get
```

1

2  done.  So for that we apologize to plaintiffs and to

3  the Court but we think that that's such a strong

4  remedy of not allowing the defendants to interpose

5  objections is certainly a lot.

6          We're really happy to produce responses and

7  the documents that our clients have in a short period

8  of time, but we would like to be able to pose

9  objections. The second thing is plaintiff have put in

10 their proposed order that full responses should be

11 submitted by February 15th which his five days from

12 today and considering all the other discovery that

13 we're trying to get out to plaintiffs and the fact

14 that we're in the middle of depositions, we just don't

15 think that that is a reasonable time period for

16 defendants to be able to respond.

17         THE COURT:  All right, before I hear from

18 plaintiffs, on the first point, it's completely

19 unacceptable to not comply with Court orders and to

20 not comply with my individual practices.  There are

21 not so many letters coming in to me that that

22 shouldn't be an obligation that you keep paramount in

23 your mind, and if you can't comply with my orders and

24 you can't comply with my individual practices, it

25 really makes you question whether you're doing

PROCEEDINGS                              8

1

2   everything else you're supposed to do in terms of

3   dealing directly with the plaintiffs when I'm not

4   there to oversee it.  So it's completely inexcusable

5   and I'm surprised you don't understand that.

6           So in terms of the merits of this particular

7   request, I didn't just, you know, endorse the letter,

8   as you saw, I allowed you to make, to address it here

9   at the conference. So if there is something that is,

10  you on the merits say you shouldn't have to produce,

11  I'm ready to hear from you, we're going to do it right

12  now. If it's simply a timing issue, we can talk about

13  that.

14          MS. WEISS:  Well I think on the merits for the

15  second request, plaintiffs had requested that we

16  attempt to identify some officers by photographs which

17  are fine, you know, we do that quite often, we send

18  those photos to our clients and see if there is

19  anything in them that allows them to attempt to make

20  an identification. And we have no problem doing that

21  quickly but there is no guarantee that they will be

22  able to, to identify them, so I just want to make that

23  clear.  And I think I'm (indiscernible), I'm sorry, I

24  just want to double check that, I am, this is the

25  second set.

```
 1                        PROCEEDINGS                    9

 2              I think that a big part of the issue though

 3   is, is the document request, they're asking for all,

 4   in their order they're asking for all of the

 5   documents.  It's a lot of stuff, a lot of stuff, a lot

 6   of which has been produced already, but for us to

 7   produce all of something, it kind of puts us in a bad

 8   position because there's no way to guarantee that we

 9   have all or can produce all of something.  We could

10   produce what's in our possession, what we can locate,

11   but putting in the word all kind of sets us up to fail

12   because if something is not there that we find later,

13   you know, based upon the prior acts of plaintiffs'

14   counsel, it's, they're going to, we fear that they're

15   then going to Your Honor and complain that we didn't

16   produce all.  We know we have an ongoing obligation to

17   supplement any discovery responses and we will, of

18   course, do that, but it's a matter of being ordered to

19   produce the documents in response to the request that

20   can be located after the searches that our clients do.

21              A lot of the document request in this

22   supplemental request are already the subject of a lot

23   of other document requests in other of the

24   consolidated cases, be it their consolidated discovery

25   demands or discovery demands that have been sent by
```

```
 1                      PROCEEDINGS              10

 2   individual plaintiffs' cases so there's really

 3   probably not anything here that hasn't been either

 4   produced or was the subject of a meet and confer that

 5   we had just this past Wednesday. I'm looking at it

 6   now, Your Honor, and it's really, it's really things

 7   that have been dealt with in other cases in

 8   consolidated demands during meet and confers and it,

 9   these -- and just one final thing, if we're unable to

10   identify these two officers then we're certainly not

11   going to be able to provide documents related to them.

12   To the extent that we can identify these two officers,

13   as we have been doing throughout this litigation,

14   we'll provide these types of documents that are

15   related to that officer.

16            THE COURT:  Okay, I think I'm, I think all I

17   heard was that if you can't locate the documents you

18   won't be producing them, and that's, I'm going to put

19   in the order that if there is some category here

20   you're not producing you have to explain that in

21   writing at the time you make the production, I think

22   that will solve that.

23            Anything else on the plaintiffs' side, I guess

24   it is, let's see, hold on, Ms. Perry maybe who signed

25   this letter, whomever is speaking about this?
```

```
 1                        PROCEEDINGS                      11

 2          MS. PERRY:  Yes, Your Honor, I'm speaking

 3   about this for the Payne plaintiffs, good morning. I

 4   think the only, the only things I would say are the,

 5   you know, in the second document request, you know,

 6   the documents that we've requested are not documents

 7   that we, that have been produced yet and we, and there

 8   is also not language in the second document request

 9   that requests all documents, so I just wanted to note

10   that, note that for the record.

11          But, and I guess I'll just briefly --

12          THE COURT:  Well, I mean your proposed, your

13   proposed order says all documents, I think that's'

14   what set this off.

15          MS. PERRY:  I understand, Your Honor, that's

16   understandable.  In that case, I don't think we have

17   any, anything else to respond to that Ms., that Ms.

18   Weiss raised.

19          THE COURT:  Okay.  All right, so and does this

20   relate to any upcoming depositions, this particular

21   document production, that's a question for Ms. Perry

22   or Ms. Weiss?

23          MS. PERRY:  We have noticed a number of

24   depositions that have not yet been scheduled of I

25   believe three officers who, who are identified in both
```

1                          PROCEEDINGS                    12

2   the second and third requests, but those depositions

3   have not been scheduled and we're still sort of been

4   conferring over defendants about getting those depositions

5   scheduled.

6           THE COURT:  Okay, and the reason I'm asking is

7   that I want to frontload document obligations onto the City

8   that relate to, you know, imminent depositions.  So it seems

9   like this is not something that should be frontloaded.  I'm

10  not saying, you know, we should wait some lengthy period but

11  this doesn't have to be done in the next few days, would you

12  agree, Ms. Perry?

13          MS. PERRY:  Yes, we, I agree in that we, the

14  depositions are not currently scheduled and we're currently

15  in the process of undertaking other depositions.  But I will

16  just note that, you know, a pattern that we've noticed in

17  this case is that for individual fact witnesses and

18  individual cases, those, the discovery relating to those

19  cases often gets put on the back burner and then we're left

20  in a position of kind of attempting to track down discovery

21  that we need to make out our individual claims.

22          And so we do think that a deadline of five days is

23  reasonable, and given that defendants have had not over a

24  month since they responded to give us the response to the

25  third request, we do think that, you know, to the extent

1                        PROCEEDINGS                    13

2   they have any documents in their possession right now they

3   should be produced in short order.

4        THE COURT:  I'll keep that in mind, I'm going to,

5   when I issue the order is when I'm going to fill the dates

6   in so you'll see it when it comes out.

7        MS. PERRY:  Thank you, Your Honor.

8        THE COURT:  Okay, our next one I guess is from

9   Mr. Rickner, it's number 374, I'm going to start with

10  the defendants to see if there is anything they want

11  to say about the wording of the order?

12        MS. WEISS:  Yes, Your Honor, this is another

13  issue with the word all.  We can certainly produce

14  documents that we have and that are in our possession,

15  the defendants, but that doesn't necessarily account for

16  all that may exist. So I just wanted to point that out

17  again, and --

18        THE COURT:  If I can just interrupt you, Ms.

19  Weiss, I'm just a little thrown off when you say we

20  can produce things in our possession but that's not

21  necessarily all. As I'm sure you know, Rule 34 only

22  requires you to produce things that are in your, I

23  forget the word, custody, possession, so what is it

24  you're getting at?

25        MS. WEISS:  I do think, as I said before, it

1
2  kind of sets us up to fail because it's in, as we've
3  noticed throughout the litigation of this case,
4  plaintiffs very often revert to saying that things
5  should exist or they can't believe things don't exist.
6  And then when the defendants produce whatever they
7  have in their possession, custody or control,
8  plaintiffs often complain that that's not it, this is
9  not all. They certainly can't know what is in the
10  defendants' possession yet they claim to.  And then if
11  the defendants supplement their response afterwards because
12  they have then found something else, plaintiffs tend
13  to complain that we violated an order or an agreement
14  because the first time we made a production we didn't
15  produce all.
16         So that's kind of our concern. I understand
17  what the Federal Rules say and we can only produce
18  what we have and we're required to supplement but we
19  do. But that just, it makes another place for
20  plaintiffs to complain and then, once again, write
21  emails and letters and go to the Court which we're
22  really hoping to try to have plaintiffs cut down on.
23  Because, as I think you've seen in the letter that I
24  submitted last night, it's, it's a lot.
25         THE COURT:  Ms. Weiss, I have to say this line

1          PROCEEDINGS                15

2   of argument makes no sense to me. From what I've

3   gathered, what actually is typically happening is that

4   City is producing some materials, the plaintiffs are

5   noticing it's not all, you're conceding, as you just

6   did now in your discourse that you then come up with

7   it, and they're right, you did violate the order. Now

8   it's possible you did a reasonable search in which

9   case it's justified, but it's also possible you didn't

10  do a reasonable search and the only reason you came up

11  with the other stuff was because the plaintiffs

12  happened to know that it existed.

13          So no one is being set up when they're being

14  told to produce all documents on a topic, that happens

15  every single day in every single litigation.  Parties

16  then do a reasonable search and they don't feel

17  they're being set up.  They produce the documents and

18  usually there's not an issue, and when there is an

19  issue then we solve it through the mechanisms. And,

20  you know, maybe we'll talk later about whether those

21  are working or not. But you're making me very

22  concerned with these objections, the idea that you are

23  incapable of producing, of doing a reasonable search

24  to produce the documents, it makes no sense.

25          So there's nothing on the substance of this

```
 1                          PROCEEDINGS                    16
 2    then in terms of scope or date of the proposed order?
 3              MS. WEISS:  No, those, these are documents
 4    that we will produce. We would like a date further out
 5    than February 18th, that's a week from now, we would
 6    request 30 days to provide these documents.
 7              THE COURT:  Mr. Rickner, is there a deposition
 8    as to which these are going to relate that's coming
 9    up?
10              MR. RICKNER:  Well, there may, it depends on
11    what's in the documents so it's hard for me to know.
12    We know for a fact that Dermot Shea weighed in on the
13    sanctions on Mr. Mullins so, and I don't believe his
14    deposition is within the next 30 days so that isn't
15    the issue. But the problem is, is that I suspect there
16    were an awful lot of high level people involved in
17    this decision, I mean fire, the recommendation to fire
18    the head of the Sergeants Benevolent Association is
19    not a minor event at the NYPD, so I don't know. I
20    don't know who was involved with that because I can't
21    see under the hood because I don't have the documents.
22    So there very well may be depositions that are
23    currently scheduled and when we get the documents
24    we're going to say, oh, no, I would have liked to have
25    used this on some other person's deposition, like the
```

```
 1                    PROCEEDINGS                    17
 2  Dowling deposition that's going right, going on right
 3  now.  It also might be relevant to the 30(b)(6)
 4  depositions which are being scheduled, you know,
 5  within the next 30 days or taking place within the
 6  next 30 days, at least for some of them.
 7            So it's hard for me to answer the question and
 8  it kind of highlights the entire problem we have,
 9  which is I don't know what there is and what there
10  isn't until the City gives it to me. And, you know, I
11  guess I would just say that if it does turn out that,
12  you know, there are key documents to a witness whose
13  deposition has already taken place, that we be able to
14  recall that witness because we've certainly been
15  diligent.
16            THE COURT:  Right. Well, I mean the, I mean
17  the email searches have happened, and that's a done
18  deal.  So this seems like it's documents mainly about
19  an investigation, is that, was that what you're
20  seeking, Mr. Rickner?
21            MR. RICKNER:  Yeah --
22            THE COURT:  Like these are actual
23  investigation reports or something like that?
24            MR. RICKNER:  Yeah, I mean my assumption is,
25  is that there's, well we know there's the CCRB
```

```
 1                        PROCEEDINGS                 18
 2   investigation, in fact, several of them. I believe
 3   there was also an internal NYPD investigation of some
 4   kind, as well, I know less about what that looks like.
 5   So, yes, so that is the, I guess sort of the meat and
 6   potatoes of what we're looking for. But, again, there
 7   may be other things that are relevant and I don't know
 8   enough about how the NYPD structures these things to
 9   know specifically what documents to look for.  For
10   example, if there is a process that the NYPD goes
11   through when they decide to override the CCRB's
12   decision to fire somebody and go to a lesser sanction,
13   if there's, I don't know what that process is, but if
14   it's out there and it's document that's also included
15   in our requests.
16             THE COURT:  Ms. Weiss, what do you know about
17   the burdensomeness of this request?
18             MS. WEISS:  I, I don't know, to be honest,
19   Your Honor. We had originally objected to providing
20   these documents for a number of reasons, not including
21   burdensomeness, we'll now provide them.  CCRB
22   documents I know are fairly quick and easy to get,
23   internal NYPD investigations not as easily acceptable.
24   And I know from other internal investigation documents
25   that the plaintiffs have requested in this case,
```

PROCEEDINGS                    19

1

2  there's many, many, many of them that they take quite

3  a bit of time to get and that unit is very, very

4  backed up right now. You know, we could certainly ask

5  them to put something to the head of the line, but

6  then it's just going to slow down the process for the

7  other ones that, that the plaintiffs have asked for in

8  these cases, you know. And, additionally, there's

9  likely --

10         THE COURT:  What other ones are you talking

11  about? Are you talking about other incidents regarding

12  arrests and so forth?

13         MS. WEISS:  Yeah, other IAB and internal NYPD

14  investigations into arrests and uses of force for

15  these protests as well as I believe plaintiffs had

16  requested individual IAB histories for defendant

17  officers and witness officers. I don't have all of

18  those requests in front of me right not, I apologize,

19  but I do know that the IAB section has been working

20  very hard and as quickly as they can to get us any

21  other outstanding sort of disciplinary documents for

22  other issues in these cases.

23         And if I may, Your Honor, although I

24  understand that allegations of bias policing are a

25  part of some of the plaintiffs' claims in these cases,

```
 1                      PROCEEDINGS              20
 2   I don't think that they are some of the bigger issues
 3   for the overall consolidated cases. So although there
 4   is going to be one 30(b)(6) deposition on this issue,
 5   there's a number of other 30(b)(6) depositions on a
 6   lot of other I think more sort of overall and pressing
 7   issues in these cases.
 8           So I don't want to belittle the importance of
 9   this issue, but I think it's just a smaller one
10   overall for these consolidated cases as opposed to
11   ones like, you know, improper training, things like
12   that.
13           THE COURT:  Is the 30(b)(6) on this topic
14   scheduled?
15           MS. WEISS:  I know there's a witness, I don't
16   know when that witness is scheduled for.
17           THE COURT:  Does someone, Mr. Rickner, do you
18   know?
19           MR. RICKNER:  I, unfortunately, I do not have
20   that information at my fingertips but I will say that
21   the lion's share of these have been scheduled to be
22   completed before the end of March. So there's a good
23   chance that it is scheduled and, you know, it's not
24   just getting the documents, we need to prepare and
25   think about them in order to make proper use. So
```

1                        PROCEEDINGS                    21

2   giving them to us, you know, what happens to be two

3   days beforehand doesn't necessarily do much good.

4           I mean also to the other point, this is

5   protests as part of the Black Lives Matter movement,

6   racism among high level people at the NYPD is of

7   paramount importance. This isn't something that could

8   be I think shuffled to the side or just dealt with

9   later because it's not a big issue, it is a big issue.

10  And also the idea that this Court's order would sort

11  of just go into the morass of regular discovery is a

12  false equivalence, this is a Court order, it goes to

13  the top of the pile, it gets paramount importance.

14  And, frankly, it's important over emails and other

15  requests and other things they're doing.

16          THE COURT:  Well I think they're talking about

17  other productions in this case so I'm not sure this

18  particular, I mean I don't know but I'm not sure this

19  particular production is more important than other

20  productions they're doing in this case, is that what

21  you're saying?

22          MR. RICKNER:  Well, I'm saying that the other

23  productions may not necessarily be part of a Court

24  order and I do think, in general Court orders should

25  take priority. But another --

```
 1                        PROCEEDINGS                    22
 2              THE COURT:  No, no, they're willing to do
 3    that, what they're saying is if you do it then now
 4    other things are going to be delayed. I mean I can't
 5    believe this is going to delay much but that's their
 6    point.  They're not saying that it won't happen,
 7    they're saying that it will cause delay in other
 8    things. So my question is, you know, what, is this of
 9    greater, you know, temporal importance than the other
10    things in terms of the need for the documents
11    (indiscernible), that's all I was trying to figure
12    out.
13              I don't think it's going to make much
14    difference. I'm going to, I'm going to give a date in
15    the next week or two to produce these so I'll figure
16    them out at the end of this. I think we're okay on
17    this now.
18              MR. RICKNER:  Yep, understood, thank you, Your
19    Honor.
20              THE COURT:  Okay, my next issue is 379, we're
21    going to end with the prior protests. So, Mr. Rickner,
22    I think this was your letter, right?
23              MX. GREEN:  No, I believe this is mine and
24    this is Mx. Green, Your Honor.
25              THE COURT:  I'm looking at 379, it has Mr.
```

```
 1                      PROCEEDINGS              23

 2  Rickner's signature on it.

 3            MX. GREEN:  Oh, sorry, prior protests, 379, my

 4  mistake.

 5            THE COURT:  No, no, I said prior protests was

 6  last, you're 369.

 7            MX. GREEN:  Oh, I am so sorry.

 8            THE COURT:  Okay, no problem.  Mr. Rickner,

 9  this is you, right?  Mr. Rickner, you may be on mute.

10            MR. RICKNER:  You're right, I was on mute,

11  thank you, Your Honor.

12            THE COURT:  Okay.

13            MR. RICKNER:  So going to the, the audit trail

14  logs, I mean really this is two motions in one I

15  suppose, one is for sanctions and one is to actually

16  get the information that we've been seeking for many

17  months. I can address those in either order that the

18  Court would prefer.

19            THE COURT:  And let's end, let's have

20  sanctions last.

21            MR. RICKNER:  Okay, well, I think the first,

22  the primary argument they're making is burden, and

23  this is very troubling because I thought we had

24  already settled this issue. After the motion that we

25  filed in August the Court ordered a conference with
```

1                          PROCEEDINGS                    24

2   people from the NYPD.  This was actually a really

3   productive conference, we learned a lot, and the NYPD

4   conceded that bulk exports of audit trail logs weren't

5   that hard, they just had to set up their system and

6   turn off or turn on one particular function and then

7   they could do bulk productions.

8          So on September 28th the City through Alyssa

9   Jacobs, counsel who was on this case, emailed and they

10  said, and this is a quote in the email, September 28th,

11  "I have spoken with the clients who have agreed that

12  they would permit bulk downloads in these

13  circumstances, and so we will withdraw the

14  burdensomeness objection to the extent it was based on

15  having to download each audit train individually."

16         Now following that, in two separate letters,

17  in the January 18th motion which resulted in the order

18  which got us where we are today, as well as my motion

19  regarding the, you know, the failure to comply with

20  that order on February 3rd, in both of those I said

21  specifically, the only thing left here to talk about

22  is relevance. The City did not jump in on either of

23  those letters to say, no, Mr. Rickner is wrong, we

24  still have another burdensomeness argument.  And now I

25  get the letter, as did the Court last night, and we

```
 1                    PROCEEDINGS                    25
 2   see a burdensomeness argument.
 3          This is really a core problem in this case,
 4   which is we cannot get the City to take a clear and
 5   coherent point and we don't find out what their point
 6   is until, until effectively motion practice and even
 7   then, in this case, it's contradictory to what I
 8   thought was a pretty clear waiver of this argument
 9   beforehand. It's really been waived two times, once by
10   not responding to the February 3rd letter or the
11   January 18th letter, and once through the September
12   28th email that I thought settled the burdensomeness
13   issue.
14          And also, above and beyond that, they're
15   wrong, this isn't burdensomeness. You can look and see
16   the audit trails that we've attached to the motion and
17   you can see there's tagging and, in fact, in some
18   cases even tagged to my case, to the Sierra
19   plaintiffs.  And so they can use those tags through
20   the evidence.com system which is designed to tag and
21   catalog large amounts of bodycam footage. It's
22   sophisticated program, I've read multiple portions of
23   the manual, that's why I was so confident that this
24   could be done relatively easily when I went into the
25   meet and confer with the NYPD, and so you can look up
```

```
 1                          PROCEEDINGS                    26
 2   those tags and do bulk exports. I actually sent, I
 3   attached to one of my motions the part of the manual
 4   where it shows the little box you click to include the
 5   audit trail logs in your bulk export.
 6          And I think the final portion is, if the City
 7   has really produced these in such a haphazard manner
 8   that they can't even figure out what it is that they
 9   produced, that's on them.  That's their problem, that
10   is a mess that they have created through their own
11   actions and it shouldn't now be any kind of barrier or
12   burdensomeness argument.
13          So, in sum, I think we should get the audit
14   trail logs, I think we should get them relatively
15   soon, and it's important that we get them soon because
16   we have a lot of people watching these body worn
17   camera footage videos, and the audit trail logs give
18   them a window into other information they should also
19   be looking at like CCRB files, summonses, other officers
20   who were there, explained in my letter. That makes the
21   process, the review, easier, it makes it more thorough, it
22   makes it easier to understand what you're looking at.
23          So really, I think we're being actively
24   prejudiced by not having this, these audit trail logs
25   right now.
```

 1                          PROCEEDINGS                    27

 2          THE COURT:  I need a little bit more background,

 3   Mr. Rickner, I think the letters assume a level of

 4   knowledge about the camera footage that I don't think

 5   was presented to me, or if it was it was presented in

 6   some other form at another time that I can't locate.

 7   So what, let's start from the beginning, what have

 8   you, what did you get and what was the volume, and

 9   what did it look like?  In other words, did you get

10   like, was it 600, I've seen the word 600 and 1,000,

11   I'm not sure, what did you get, what did it look like,

12   and how does the audit trail logs relate to it?

13          MR. RICKNER:  Okay, so there's a few pieces to

14   that.  Initially, we got the body worn camera footage

15   produced to us through a digital system where they

16   would just give us the video files. The video files --

17          THE COURT:  Stop right there.

18          MR. RICKNER:  Okay.

19          THE COURT:  This happened when and about how

20   many?

21          MR. RICKNER:  This happened during the course

22   of the line officer depositions, so if my memory is

23   correct, we're talking about starting June or July of

24   last year.

25          THE COURT:  Okay.

```
 1                        PROCEEDINGS                   28

 2            MR. RICKNER:  And they were pegged to, well at

 3   the time we thought we were getting footage that was

 4   relating to our specific plaintiff, like footage that

 5   would show our plaintiff, instead we got a larger

 6   production that I think was more like, well, we think

 7   this might have to do with your plaintiff. And we

 8   also, and so there was some repeats, but they came in

 9   large blocks, I think probably the largest of them for

10   Sow was over 100 and I would say we got approximately

11   50 or so of these, of these productions or these

12   videos.

13            The --

14            THE COURT:  Wait, hold on.  Hold on, stop,

15   stop, stop.

16            MR. RICKNER:  Sorry.

17            THE COURT:  You got a total of 50 on someone,

18   is that what you're saying?

19            MR. RICKNER:  I'm saying each --

20            THE COURT:  Yes, go ahead.

21            MR. RICKNER:  Each team got their own

22   production of body worn camera videos that the City

23   said were related to either a particular plaintiff or

24   particular deponent. It's approaching 1,000 total, I

25   think, and it came in multiple different tranches and
```

```
 1                        PROCEEDINGS              29
 2   I think there's also some substantial repeats there.
 3              THE COURT:  Okay, I assume, Mr. Rickner -- Mr.
 4   Rickner, I assume you're speaking on behalf of all
 5   plaintiffs now, right, I mean in terms of this issue?
 6              MR. RICKNER:  Yes.
 7              THE COURT:  Okay, good. So just so I, let me
 8   just get it in my head, there were approximately 1,000
 9   productions, some of which may have been duplicates,
10   last summer, of, and a unit I guess is one particular
11   officer on a particular day, that counts as one?
12              MR. RICKNER:  Yes, that is almost always
13   correct. If the officer turns their camera on and off
14   more than once, there would be more than one video
15   generated, but for the vast majority, you know, each
16   unit is one video, the officer clicks on the body worn
17   camera, it films, clicks it off, they put it in the
18   docking bay and it gets uploaded automatically to
19   evidence.com.
20              THE COURT:  Okay.  And what information did
21   you have with respect to any given video, for example,
22   officer's name, date, time, location, did you have all
23   that or not?
24              MR. RICKNER:  We could use, date we absolutely
25   had, although the time was off because of the way that
```

PROCEEDINGS                         30

1
2    the videos were produced, although we could surmise

3    that it was always off by about four hours. That's

4    actually something that's corrected in the audit trail

5    logs. And obviously the date, we knew which protest it

6    was. We generally knew the location, that was not

7    universally true which is why we were pursuing GPS

8    data because sometimes we couldn't figure it out.  And

9    we sometimes knew the officer but often didn't, they

10   produced a spreadsheet that you could look at the

11   times of the video and click through and try to

12   guesstimate as to which officer may have been

13   producing, may have been wearing that particular

14   camera. But we definitely couldn't figure it out for

15   all of them and, in fact, when we chose the examples

16   we picked ones that, for the most part, we couldn't

17   figure out. So sometimes we could figure out who the

18   officers were with a fair amount of effort, and

19   sometimes we couldn't figure out their names.

20           THE COURT:  Okay, so the, I'm trying to find,

21   do you have a letter with the sample audit trail logs,

22   do you remember the docket number?

23           MR. RICKNER:  That was the, that was the most

24   recent one and, hold on --

25           THE COURT:  385 maybe?

```
 1                        PROCEEDINGS                    31

 2            MR. RICKNER:  385, yes.

 3            THE COURT:  Okay.  All right, so let me just

 4   look at -- so this very first exhibit to your letter

 5   is an audit trail log?

 6            MR. RICKNER:  Yes, that's correct.

 7            THE COURT:  Evidence audit, evidence audit

 8   trail, okay.

 9            MR. RICKNER:  Yes.

10            THE COURT:  So is this associated with a

11   particular recording?

12            MR. RICKNER:  Yes, it is.

13            THE COURT:  Every audit trail log pertains to

14   one recording.

15            MR. RICKNER:  Exactly.

16            THE COURT:  And so someone at some point did

17   something to put all this information and associate it

18   with a recording, is that what happened?

19            MR. RICKNER:  Yes, although it's almost, I'd

20   say, even better than that because the way the

21   evidence.com evidence system works is if you look

22   there's a source, a particular device name, it starts

23   with an X, it says X81 and a string of digits.

24            THE COURT:  Yep.  Yep.

25            MR. RICKNER:  That's a specific camera, so
```

1

2  after their shift the officer who is wearing the

3  camera puts it in the docking bay, it's automatically

4  uploaded to evidence.com, it's supposed to be tamper

5  proof up until that point, so really you get the nice

6  pristine body cam footage. And then the audit trail is

7  actually automatically generated by the system,

8  obviously there's additional information that's added

9  later like the tags, but we can look at the camera footage

10  and we see that device name, the X81 and then, you know,

11  ideally when we get all of the audit trails, if you, our

12  order is granted, we can control that search for the

13  device name and, boom, now we get the history of that

14  piece of body worn camera footage.

15           And it's meant to work like the evidence locker

16  for physical evidence, right, so you can tell everything

17  that's happened.  If there's been an excerpt that's

18  loaded, that's identified, if there's tags, that's

19  identified.  And, you know, as it says in the letter,

20  there's various ways this is useful.

21           THE COURT:  Right.  So the camera, this audit

22  trail log is not associated with any particular date, it's

23  associated with a camera, and then each date it gets

24  docked the date gets added trail, is that it?

25           MR. RICKNER:  No, that's not it, each video

1                              PROCEEDINGS                    33

2   generates its own audit trail log, so, but the camera and

3   the camera being placed in the dock is sort of the

4   triggering event, but then every single file that they

5   produced on evidence.com has an audit trail that looks

6   just like --

7              THE COURT:  I see, I'm just trying to

8   understand, so this audit trail is all about one

9   particular piece of footage, in this case the first one it

10  looks like is an hour and a half long and it's all the

11  things that happened to this footage on evidence.com?

12             MR. RICKNER:  Yes, including --

13             THE COURT:  Right, okay.

14             MR. RICKNER:  Yes.

15             THE COURT:  Go ahead.

16             MR. RICKNER:  One more point that I think is

17  important, all of these different tags like the

18  categories, demonstration, civil disobedience, those are

19  all searchable because this software is designed, and

20  it's well made, it's designed to keep track of this

21  information. And so --

22             THE COURT:  Okay.

23             MR. RICKNER:  You can search it and then you

24  can bulk download it.

25             THE COURT:  Okay, so when, I'm just trying to

1                              PROCEEDINGS                      34

2   figure out what, unfortunately you may now, now that I

3   understand this a little better you may need to repeat

4   some things.  So you are looking for the audit trail

5   logs for the material that was already produced to you

6   last summer, is that it, for that thousand videos --

7            MR. RICKNER:  Yes.

8            THE COURT:  Of which many are duplicates?

9            MR. RICKNER:  Well we believe some are. I

10  should mention, because we sort of got cut off a

11  little in our conversation, there is then a second set

12  of body worn camera productions or second

13  (indiscernible) body worn camera production, we, in

14  effect, complained that we didn't think we had

15  everything and then we got another, much more

16  recently, I think in the last two months, a production

17  of 600 or so body worn camera videos which some were,

18  some were already produced according to the City

19  although we don't know which ones without doing a

20  manual compare and some were new.  So the universe

21  we're looking for is, is all of those really. If

22  they've produced it to us we would like the

23  accompanying audit trail so we can start working out

24  what we've got.

25            THE COURT:  Right.  Okay, all right, so I'll

```
 1                       PROCEEDINGS                    35
 2   hear from the City.
 3           MS. WEISS:  Yes, Your Honor, it's Dara Weiss
 4   again.  I just want to clarify a couple of things that
 5   Mr. Rickner said. The first actions of body worn
 6   camera footage were produced actually well before the
 7   line officers' depositions, they were produced, if I'm
 8   not mistaken prior to the plaintiffs' depositions.
 9   Plaintiffs' counsel insisted that they be provided
10   with body worn camera footage before each of their
11   plaintiffs were deposed. Because we didn't have a
12   system in place, an electronic system in place yet for
13   providing them, we actually just sent the videos
14   themselves through a secure email system. They hadn't
15   been Bates numbered in any way or with any other
16   identifying information, we were just trying to get
17   them the videos as quickly as possible so they could
18   have them before their clients' depositions.
19           Then when plaintiffs noted they were having
20   trouble figuring out certain information about the
21   videos, we started sending them spreadsheets that
22   showed the name of the video, which officer was taking
23   it, and there might have been a little bit more
24   information, I think the time of the, the length of
25   the video. And then plaintiffs asked for the
```

```
 1                        PROCEEDINGS                    36
 2   production of these same videos through an electronic
 3   system where they would be Bates numbered and further
 4   identified so we did that, which is why there are
 5   duplicates of some of the videos. And I am pretty sure
 6   that when they were sent they were noted that these
 7   are just reproductions of the videos that were
 8   provided earlier.
 9           It's entirely possible that there are
10   duplicates of videos or things that seem like
11   duplicates because the way the system works is that if
12   a certain officer, if their bodycam video is searched
13   the system is going to also provide the names of
14   officers who are within a certain distance of that
15   target officer and who also had their video on, so we
16   would have provided that as well. So that can
17   certainly make it, if two officers were near each
18   other recording something, it would certainly make it
19   look like it could be the same video but it likely is
20   not.
21           We did provide the sample audit trail logs and
22   it was when Mr. Rickner brought it to our attention
23   during a meet and confer we immediately sent it over.
24   But as you can see, there's a lot of information on
25   these audit trails that's completely irrelevant and
```

1                          PROCEEDINGS                          37

2    unnecessary. There certainly is the information in the

3    beginning about the officer's name and when they took

4    the video and when they downloaded it, but the bulk of

5    this information is what happened to it afterwards,

6    mostly as a result of obtaining it to provide in

7    discovery in these lawsuits or for CCRB or other

8    internal purposes.

9          If plaintiffs, it seems like the reason the

10   plaintiffs are claiming they need these audit trail

11   logs is so they can tell one video from the next and

12   two took a video and if they'd seen it before in their

13   review. But these audit trail logs really provide

14   substantially more information that's just not

15   relevant or necessary for these cases.  As mentioned,

16   we, the City provided spreadsheets that gives --

17          THE COURT:  Ms. Weiss, if I could just make

18   life simple, as long as there is some information on

19   here that I find is relevant, I assume it's easier for

20   you just to produce the whole thing than to go over it

21   line by line with a black felt marker taking out some

22   potentially irrelevant material.

23          MS. WEISS:  Well, certainly, Your Honor, if

24   you're looking at the audit trail you could see what a

25   burden that would be. But I just, although, I

1

2   personally was not aware of the bulk download issue, I

3   do know that it's not difficult to actually press the

4   button and print these things, but there are so many

5   of them that we have produced that we've given the

6   relevant information that I don't think that there's a

7   need to, you know, kind of press the button for

8   everything.

9          The other thing that I'm concerned about is

10  that although it may be true that you can simply do a

11  search by a category such as demonstration or civil

12  disobedience, it's entirely possible that that would

13  produce audit trail logs that are for things that are

14  not at issue at this case or audit trail logs for --

15  I'm sorry, I'm having trouble sort of articulating

16  this so I apologize, but simply putting in a category

17  is not going to necessarily produce the audit trail

18  logs for the videos that were produced. In order to be

19  sure to produce the audit trail logs for the videos

20  that were in fact produced, they have to be done one

21  by one. It's possible that a wrong category was put in

22  and then you'd come up with a bodycam video audit

23  trail log of something that is not part of these cases

24  or, you know, if bodycam footage was taken, for

25  example, of --

```
 1                         PROCEEDINGS                    39
 2              THE COURT:  Okay, you're going into all this
 3     because they proposed a way to get around doing it one
 4     by one and you're saying that won't work, is that why
 5     you're getting into this?
 6              MS. WEISS:  It's my understanding that that's
 7     not going to be accurate and that they have to be done
 8     one by one.
 9              THE COURT:  Hold on, let me just, I've got to
10     talk to Mr. Rickner, hold on.  Mr. Rickner, you're
11     happy to just get the audit trail logs for the videos
12     they produced to you, I assume you're not, I'm not
13     sure what's going on here about searching audit trail
14     logs in general?
15              MR. RICKNER:  Well --
16              THE COURT:  Is that the one you asked for?
17              MR. RICKNER:  Well, yeah, I mean the way to
18     get the audit trail logs that we're looking for is
19     through a search function. This is an ordinary ESI
20     issue, they have tags on these logs, they actually
21     have a specific locker in the Law Department. The Law
22     Department has an evidence.com access code with body
23     worn camera footage that they've produced in this case
24     that's actually tagged, you can see it in some of the
25     logs. The point is tell us what searches you're going
```

```
 1                    PROCEEDINGS              40
 2  to run, we'll look at it, produce the bulk audit trail
 3  logs to us after those searches have been performed
 4  and give it to us. And don't let the perfect be the
 5  enemy of the good. If there's one that's missing,
 6  we're not going to run to Court, we're just going to
 7  email Dara and say, okay, camera XYZ looks like it
 8  wasn't captured in one of the searches but it's really
 9  important, can we get it, and that solves the problem.
10         THE COURT:  So you would do some search in
11  this time period for demonstration or something like
12  that, is that it?
13         MR. RICKNER:  I mean I'd need to know which
14  tags that the Law Department had used, but, yeah, we'd
15  work it out.  It's not impossible to get vastly all of
16  the information.
17         THE COURT:  So, to you, that's better for you?
18  The way I was originally imagining this was you were
19  going to give them a list of 600 or something device
20  names and dates and you were going to have them, and
21  times, you know, you were going to identify recordings
22  and then they were going to find the log and then
23  print it out one by one and you're saying that's not
24  what you're seeking?
25         MR. RICKNER:  That's not what we're seeking
```

```
 1                            PROCEEDINGS                    41
 2    and, in fact, to catalog all of that information would
 3    be an immense burden on plaintiffs.
 4              THE COURT:  I see.
 5              MR. RICKNER:  Instead, we want them --
 6              THE COURT:  So no one, neither the plaintiff
 7    nor the defendants want to have someone push a button a
 8    thousand times, is that correct?
 9              MR. RICKNER:  Correct.  Yes, absolutely.
10              THE COURT:  Okay.  Because I was having trouble
11    figuring all this out.  Okay, so back to Ms. Weiss, no one
12    is having you push a button a thousand times which is what I
13    thought I was hearing you tell me.
14              MS. WEISS:  That's why I'm just -- sorry.
15              THE COURT:  So what they're asking for, and I'm
16    just looking at this first one, it has a category, you know,
17    demonstrations, civil disobedience, whatever, they're asking
18    you to do a search for that during the time period and just
19    produce those audit trail logs. That seems unburdensome,
20    what's the problem?
21              MS. WEISS:  That is not burdensome but that is
22    likely to be inaccurate, because these videos can certainly
23    be mistagged or not have a tag, or other irrelevant videos
24    could be mistagged with a demonstration tag.  The tag is
25    helpful overall, but it's not, it is certainly not going to
```

```
 1                        PROCEEDINGS                    42
 2   --
 3            THE COURT:  So what?  So what if it's inaccurate,
 4   what do you care, unless you'd rather figure out the
 5   thousand videos you produced and press a button a thousand
 6   times, if you want to do that, hire someone to do that in
 7   the next week, that's your alternative.
 8            MS. WEISS:  No, Your Honor, we certainly don't
 9   but we're loathe to provide inaccurate information
10   because that, once again, puts us --
11            THE COURT:  You're not providing inaccurate
12   information, you're providing you think potentially
13   irrelevant, but let's run it and then you'll figure
14   out whether that's true or not.
15            MS. WEISS:  I just don't think that that is a
16   good way to go about this. I don't know what the best
17   way is.
18            THE COURT:  Why?
19            MS. WEISS:  Because, Your Honor, I don't --
20            THE COURT:  Why don't you tell me a better
21   way?
22            MS. WEISS:  To not provide the audit trail
23   logs for the body worn camera that has been previously
24   produced except for in the most recent batch of 600 or
25   so we know which are the new ones, we can certainly
```

```
 1                        PROCEEDINGS                    43
 2   give that.  But like I said earlier, we provided the
 3   information including the names of the officers, when
 4   the body cam produced was taken, so I don't think that
 5   this information is necessary.
 6             THE COURT:  Okay, the relevance objection is
 7   overruled, it sounds like we have a plan that's not
 8   going to be burdensome at all. Let's see what running
 9   the search produces. If, you know, if it's more or
10   less matching what was produced already then that's
11   going to be great, if it's vastly uninclusive or over
12   inclusive, there could be, you know, discussion about
13   that, it could be produced under a confidentiality
14   order certainly since there may be some irrelevant
15   material in there. So that's my ruling on that.
16             This seems like something that should be done
17   relatively quickly, to at least do a run of this,
18   because it's a very, a very closed system and very
19   limited search terms. So I'm going to require this to be
20   done in the next two weeks.
21             Anything else, Mr. Rickner?
22             MR. RICKNER:  Yes, I'd like to know what searches
23   that they're running.
24             THE COURT:  Yes, you need to work, Ms. Weiss, you
25   need to work with Mr. Rickner on the actual search terms,
```

PROCEEDINGS                    44

1

2   you should talk about that as soon as possible.  If you

3   haven't figured it out in the next few days you need to

4   write me, Mr. Rickner, you need to write a joint letter

5   giving the defendants' position so I can quickly rule on

6   search terms.

7           MR. RICKNER:  Yes, Your Honor, and I would ask

8   that that meet and confer be attended by the people

9   from the NYPD who came last time who were very

10  familiar with the technology and knew exactly how it

11  worked, which is how we made progress initially.

12          THE COURT:  Certainly makes sense that only

13  people who know exactly how this works should be involved

14  in discussing how to deal with it.  Yes, so ordered.

15          MR. RICKNER:  Thank you, Your Honor.

16          THE COURT:  Ms. Weiss, anything else?

17          MS. WEISS:  No, Your Honor.

18          THE COURT:  Okay, that's 379.

19          MR. RICKNER:  Well would you like to discuss

20  the sanctions issue that was also part of 379?

21          THE COURT:  Oh, gosh, I'm sorry, I'm, I

22  apologize, you're absolutely right.  Okay --

23          MR. RICKNER:  Well I will --

24          THE COURT:  Hold on, hold on.  Go ahead.

25          MR. RICKNER:  I would say I'll try to make

```
 1                          PROCEEDINGS                    45
 2   this brief.
 3          THE COURT:  No, no, give me a second to, give
 4   me a second, I just need to re-read my order and so
 5   forth, hold on.
 6          MR. RICKNER:  Yes, Your Honor.
 7          THE COURT:  Okay, go ahead.
 8          MR. RICKNER:  Thank you, Your Honor. So going
 9   to the sanctions issue, it seems, it seems that one of
10   the major thrusts of Ms. Weiss' arguments is that she
11   doesn't have time, and I think it's worth noting that
12   this particular issues, the body worn camera issue
13   and, in fact, the meet and confer where we got into
14   the technical specifications was being handled by
15   attorney Alyssa Jacobs. And she actually made good
16   progress. In fact, in the September 28th email that I
17   mentioned before, she says we are in the process of
18   obtaining those four audit trails that should allow us
19   to continue our discussions, and she said I have one
20   that I expect in the next, quote, "In the next few
21   days."  Now this is months ago now.
22          This was good progress. The problem is, is
23   that Ms. Jacobs was reassigned to other cases.  There
24   is, she moved to withdraw. And actually if you go to
25   the motion, this was October 22nd and it's docket
```

1                           PROCEEDINGS                    46

2   number 296, in that motion Ms. Jacobs and another

3   attorney for the Law Department who was also very

4   senior and working on this case said don't worry, this

5   case won't be understaffed if we leave. I'm

6   paraphrasing but that was the thrust of the statement.

7   And that wasn't true.

8           And so I understand that this may be, you

9   know, dealing with all of this information may be

10  personally unpleasant for Ms. Weiss, but this is a

11  specific set of decisions by the Law Department and

12  the NYPD as to where to place the resources and what

13  resources to obtain. If you put it all on one lawyer

14  maybe, yes, that lawyer gets overloaded, but that

15  doesn't mean that the plaintiffs are wrong for asking

16  for all this material, it means you need more staff.

17  And so I think, you know, the primary explanation for

18  why this wasn't done really falls apart when you look

19  at this as a larger issue and go, yes, they need to

20  put more lawyers who know what's going on and

21  certainly shouldn't be taking lawyers off this case.

22          Now, again, you know, as far as, you know,

23  priority, and I think I made this point earlier, in

24  fact, Your Honor did, which is Court orders go to the

25  top of the pile, they're not the equivalent of, you

1         PROCEEDINGS                    47

2    know, the emails, and (indiscernible) as part of

3    discovery. And so this particular order should have

4    gone to the top of the pile. And we know it wasn't

5    ultimately that hard to comply with because after I

6    filed the motion we got the documents the next

7    morning. The problem is, is that whatever it took

8    between the City and the NYPD to make that happen

9    didn't occur when it should have.  So really, again, I

10   don't think the idea that this was somehow burdensome

11   and that's why it didn't work out, holds any water.

12          And, further, this is really a, this whole

13   dispute is a microcosm of what we've been facing in

14   every discovery dispute.  We cannot rely on the City

15   to take clear positions, we end up not finding out

16   what their true position is until motion practice or,

17   in this case, apparently Ms. Weiss forgot about the

18   earlier position they had taken on burden and then,

19   you know, changed their mind again in motion practice.

20   We just can't make progress if that keeps happening.

21          They promised to give us documents of

22   information.  We have, they never really objected to

23   the sample logs and we have email after email where

24   either Ms. Jacobs or Ms. Weiss is saying, oh, don't

25   worry, we're going to get them to you shortly, we're

1

2  looking into it and it just never happened.  So we

3  can't rely on them when they say they're going to do

4  something in the meet and confer, that they're

5  actually going to do it.  And compounding this and

6  also this appeared with the body worn camera footage

7  issue generally, we spent two months almost I think

8  scheduling the meet and confers, not regarding the

9  Court order but following the Court ordered meet and

10  confer where we needed to do all the follow-up and

11  build on the progress we had made, they just won't

12  schedule them. This was part of another motion that

13  Mx. Green put in and that I think detailed it fairly

14  well.

15          And then when we finally get fed up and we

16  file motions, sometimes more than one, Aviation took

17  two motions, body worn camera took two motions, these

18  are key documents where we're applying to the Court

19  multiple times, they don't follow the orders. Or they

20  don't take any action until, in candor, it looks like

21  they're obviously going to lose a motion and they

22  decide, gosh, you know, quick, I may just well try to

23  fix this.  We have experienced this at every level

24  really, you know, every single one of those complaints

25  that I've made could be applied entirely or at least

1                          PROCEEDINGS                    49

2   in large part to all of the discovery requests. And

3   that is why, you know, we're facing this, you know,

4   very strict schedule and, you know, the plaintiffs are

5   panicking, because we aren't getting information we

6   need in the time to use it in depositions, in time to

7   analyze it and understand how it fits with the larger

8   case, and it's really created a lot of burden.

9           I mean, so, yes, we've been filing a lot of

10  letters and making a lot of requests, but we don't see

11  a choice. They have forced this, they have forced us

12  into this through the multiple deficiencies in the

13  actions that I've outlined. So I think a sanction

14  needs, and, you know, we can maybe talk about this as

15  a larger issue, but there needs to be a sanction that

16  is sufficient to get them to knock it off.

17          THE COURT:  Ms. Weiss?

18          MS. WEISS:  Your Honor, respectfully, as I'm

19  sure the Court knows and plaintiffs' counsel, I am not

20  the only attorney on this case.  These cases are fully

21  staffed by a full team of attorneys and paralegals

22  plus a lot of non-team attorneys who are doing

23  specific tasks. Part of the problem is that earlier on

24  Your Honor told the plaintiffs that when they have

25  issues they should have one attorney dealing with the

PROCEEDINGS                    50

1    issue write to us or contact us with all of the issues

2    once a week or once every two weeks or whatever the

3    time period may be. That's not happening.  We're

4    getting dozens and dozens of emails and letters and

5    requests for meet and confer all by different

6    attorneys on different individual cases.  These are

7    supposed to consolidated for discovery but plaintiffs'

8    counsel are supposed to act as one with respect to

9    discovery.  It's not happening and although we're

10   certainly not missing out on things or we're ignoring

11   things, we're not ignoring things at all.  Any missed

12   deadlines are simply inadvertent, but we're really

13   trying to scramble to keep up with plaintiffs'

14   onslaught.

15           And, you know, this goes into Mx. Green's

16   letter as well, we want to get these documents and

17   this information to plaintiff, plaintiffs.  They're

18   making it very, very difficult because we're spending

19   an inordinate amount of time responding to them rather

20   than having the time we need to actually get these

21   documents, review them, get them out to plaintiffs

22   while still trying to defend our clients. It's, it's

23   constant and it's impossible to keep up with because

24   the plaintiffs are, instead of acting like a

1                      PROCEEDINGS                    51

2    consolidated group of cases and a number of these

3    cases actually asked to be consolidated into these

4    actions, they're still, they're still litigating these

5    cases in large part like they're individuals cases.

6    And it's, it's unfair to defendants to try to ask us to

7    keep up.

8              And then when we try to concentrate on one issue,

9    if another issue falls by the wayside we then have those

10   counsel coming up to us and insisting. We can't do

11   everything at once, things have to happen in an order, and

12   the last few weeks have really, really been, really since

13   the start of the year but the last two weeks especially,

14   it's just been constant and not possible for us despite our

15   full and fairly large team of attorneys working on this.

16             So, you know, we certainly apologize, we certainly

17   in no way meant to ignore any kind of order but it happened

18   and it was missed, and we would love to find some sort of

19   way to, to I guess, I understand plaintiffs have their

20   issues and we're happy to hear them, but some sort of

21   orderly way to do it so we have everything in front of us at

22   once instead of piecemeal so we can deal with it that way.

23                      (interposing)

24             THE COURT:  Sorry?  Mr. Rickner?

25             MR. RICKNER:  I'm sorry, Your Honor --

```
 1                        PROCEEDINGS              52

 2           THE COURT:  Go ahead, Mr. Rickner.  Actually,

 3   Ms. Weiss, you were done, right?

 4           MR. RICKNER:  I'd just like to correct --

 5           THE COURT:  Hold on, Ms. Weiss, you were done,

 6   right?

 7           MS. WEISS:  Well I just wanted to conclude by

 8   saying, you know, based upon the good faith the

 9   defendants are trying to engage in, I don't think that

10   sanctions are appropriate.

11           MR. RICKNER:  I'd like to correct the record, Your

12   Honor, on one specific issue.  We have not been

13   spreading different discovery issues across different

14   teams. The body worn camera audit trail logs are a

15   perfect example. This has been, for better or worse,

16   my problem from the beginning, I'm on the Sierra team,

17   I have one protest, not all 83, but I've been -- but I

18   didn't limit my demands to that protest. I worked with

19   everyone, I've been on all the meet and confers on the

20   issue which, mind you, the City, in fact, has shifted

21   around who's on the meet and confers, but I've handled

22   this, you know, pretty much from start to finish, I've

23   always been the point person on communicating about

24   this with the attorneys assigned and that's the way we

25   do it every time.
```

```
 1                      PROCEEDINGS                    53

 2          So somebody has Aviation, actually that was

 3   me, as well, so that's a bad example. Somebody has the

 4   audit trail logs. Somebody has disciplinary records.

 5   And it's really always been the same attorney on one

 6   of the consolidated teams who's followed up.  So the

 7   accusation that we're somehow picking an issue and

 8   coming at it with five different people throwing

 9   emails at Ms. Weiss or the rest of defense counsel,

10   that's not true. That's not what we've been doing.

11          And I'd also like to note, it has taken a

12   remarkable amount of coordination on the plaintiffs'

13   side, we aren't always in agreement, to always present

14   a unified front with one person handling each issue.

15   Almost always. I mean I can't say we've always been

16   perfect but 95 percent of the time, we've worked

17   together internally and then put one person up to

18   handle it.

19          THE COURT:  All right, let me do what's

20   simple. What's simple is I issued a very clear order

21   requiring documents to be produced and the City failed

22   to comply with it. The excuse I have heard is

23   certainly not sufficient for that. It does not show,

24   it does not show substantial justification or any

25   other circumstances that make an award of expenses
```

1                        PROCEEDINGS                    54

2    unjust.  So with respect to the failure to comply with

3    the order, Mr. Rickner, your, I'm awarding as a

4    sanction your attorney's fees for having to write me

5    the letter, I guess your letter of February 8th, and

6    any other related time for that.  So if you can make a

7    presentation by letter to me at some point to get

8    those fees and so we can specify the amount of those

9    fees.

10            MR. RICKNER:  Yes, Your Honor.

11            THE COURT:  With respect to the substantive --

12   okay, with respect to, and by the way, I suggest you

13   show it to the other side and maybe they'll agree on

14   the amount and then I won't have to be involved.  With

15   respect to the overall issue of the production of the

16   body worn camera audit logs, I'm not happy certainly

17   with the City's conduct during that, I'm on the fence

18   about it, I'm going to reserve sanctions on that, I'm

19   going to see how things go otherwise and I reserve the

20   right to issue sanctions with respect to that course

21   of conduct but at this point I'm not going to be doing

22   that today so that's being reserved to another date.

23            Let me just address what Ms. Weiss said, it's

24   probably going to come up with Mx. Green, the notion

25   that it's unfair to ask you to keep up with discovery

1                              PROCEEDINGS                          55

2   issues is completely unacceptable. If the case is not

3   sufficiently staffed, it needs to be sufficiently

4   staffed.  Ms. Pestana is an extremely competent

5   administrator and attorney and if the demands are

6   large enough that more staff is needed she will

7   understand that, you need to present that to her.  You

8   need to suggest to her that I've raised this issue

9   with you. It's not acceptable for you to say that, and

10  I'm now quoting you, "It's unfair to defendants to ask

11  us to keep up with the discovery demands here."  The, if you

12  had come to me and said that there were, you were getting

13  different signals from the plaintiffs, that you had two

14  different attorneys asking for the same thing and

15  doing it in different ways, I want to hear about that

16  immediately, that that is unfair. But if there are 10

17  discovery issues or 15 discovery issues and they're

18  being presented by 4 or 5 lawyers, that's not, that's

19  not a grave problem it seems to me.  You're certainly

20  welcome to have a single conference with each, they're

21  all required to speak when you want to meet and

22  confer, if that scheduling makes it easier for you,

23  but there's no point in, as long as they're keeping to

24  the notion that the discovery requests or discovery

25  disputes, each one is being handled by a single

PROCEEDINGS                    56

1
2  attorney, that's nothing to complain about, they don't
3  all have to be handled by one attorney.
4       And as I said, you know, if there's a problem,
5  the solution is not to ignore Court orders and refuse
6  to meet and confer, I mean there is a whole litany of
7  that here. The solution, if it's a problem, is to come
8  to me and say here's how to make this more efficient,
9  we need to have it done some particular way, you know,
10 these two attorneys are across purposes and we can't
11 keep up with that.
12      It doesn't surprise me that in a case like
13 this, I think you said there were nine attorneys on
14 it, one person may just be responsible for dealing
15 with the discovery disputes and that might involve a
16 lot of meeting and conferring during the week, so that
17 shouldn't be a big surprise.  And part of the reason,
18 from what I can tell from the letters, that we need so
19 much meeting and conferring is that the City is not
20 giving definitive positions on things.
21      You know, I'm ready to decide disputes about
22 what is burdensome and what is not burdensome but the
23 City has to get to the point where it can articulate
24 exactly what the burden is which almost never happens.
25 Even when it comes to me there is just this sort of

PROCEEDINGS                    57

1

2  generic statement about this is burdensome without

3  saying, you know, what's involved, without saying how

4  many hours are involved, how much personnel is

5  involved. At the bare minimum the City has to figure

6  out, if it's going to be making these objections, what

7  actually is the burdensomeness objection, I'm almost

8  never getting that. So from the record presented to

9  me, and the record from the City is extremely thin, I

10  get very detailed letters from the plaintiffs

11  describing at length, you know, refusals by the City

12  to meet and confer, cutting off a session after an

13  hour and a half that involves a lot of issues, the

14  City never denies any of this, never responds, never

15  explains. And if the only explanation is going to be,

16  well, we can't keep up, that's just not an acceptable

17  explanation.  What's going on here is just of the

18  character of what might be expected in a case like

19  this.

20          Okay, so that's my ruling as to 379. I think

21  what we have left is 369, the prior (indiscernible) so

22  I'll turn it over to Mx. Green.

23          MX. GREEN:  Thank you, Judge. I think there

24  are a couple of things in the letter, I'm happy to try

25  to address them all at once or if you'd rather, as we

PROCEEDINGS                    58

1

2    did before, we can start with the merits of --

3            THE COURT:  Yes, I was a little unprecipitous

4    and I apologize because I had forgotten that I had

5    promised you a reply date on the issue of the 2002 and

6    prior documents. So I apologize, I read your letter, I

7    thought of it as a reply, so I'm ready to deal with

8    the merits of that.

9            MX. GREEN:  Okay.

10           THE COURT:  I should have asked what you meant

11   by the merits.

12           MX. GREEN:  Exactly, Judge.

13           THE COURT:  Okay, so why don't we discuss

14   that, then I'll hear from Ms. Weiss, and then I'll

15   make a ruling on that.

16           MX. GREEN:  Okay, I think one of the just

17   core, call it, themes of this case is that this is

18   what the NYPD has done forever, they have engaged in

19   the same practices, sometimes they give them new

20   names, sometimes they rename the units that are doing

21   it, but at the core they have over more than 20 years

22   engaged in a policy of brutalizing protestors, of

23   intentionally intending to "disburse and demoralize,"

24   those are quotes from a Power Point presentation

25   during the Work Economic Forum, protestors, rather

1                              PROCEEDINGS                        59

2   than facilitating First Amendment expression.

3              I think that, while it's certainly important

4   and I don't think that, you know, we would conceded we

5   can't make our case without World Economic Forum and

6   that era of protests, I think that that is the most, I

7   mean more than Republican National Convention, I think

8   that that's probably the most important origin point

9   for a lot of the policies that we intend to track

10  through time. I'm not going to say on the record or on

11  a public call what has been designated confidential,

12  but the, the quote that was redacted in my letter I

13  think speaks directly to that.

14             Beyond that, you know, separating the

15  Republican National Convention from the World Economic

16  Forum is somewhat artificial given that, you know,

17  the, all of these sets of litigations dragged out for

18  a decade each. And so the documents all overlap, I

19  mean the question is just when, when is the start date

20  for collection. And as far as, I think it seems to me

21  that it's obvious that it's relevant, it's important,

22  being able to say that, that it has happened across

23  three major eras of protests is, you know, much better

24  at trial than being able to say it happened over two

25  major eras of protest, right? Whether it's literature

PROCEEDINGS                        60

1

2   or art or comedy, we all talk about a rule of three

3   sometimes.

4          I think, the question is what's the burden,

5   and as you just said, we haven't heard even a word

6   about the burden. And I think this is, that's

7   particularly significant because at the very first

8   discovery conference, Ms. Weiss, in complaining about

9   the scope of our request, specifically identified the

10  World Economic Forum as something that they were

11  looking at doing, right, they were looking at getting

12  those documents and said, and said to the Court that

13  she didn't know then what the burden of doing it was.

14  And despite, you know, a specific direction from the

15  Court to respond to all the arguments in our letter,

16  we still have no idea what the burden of doing it is.

17         I think that relevance is not really at issue,

18  the question is maybe proportionality and burden and

19  at this point I don't see how the City hasn't waived

20  it.  We had to make motions about compliance with the

21  2015 amendments earlier in the case where the Court

22  specifically, I think, identified burdensomeness as

23  something they'd have to object to with specificity and

24  tell us if they were refusing to make certain searches.

25  The Court also ordered algorithm letters during which they

```
1                        PROCEEDINGS                    61
```

```
2    did not say a word, not one word about what they weren't
```

```
3    collecting from the World Economic Forum. And, you know, I
```

```
4    do not see how in good faith they can assert that these
```

```
5    objections are preserved, let alone meritorious. So that's
```

```
6    the merits.
```

```
7              THE COURT:  Okay, so just turning to the 2002
```

```
8    and earlier, Ms. Weiss?
```

```
9              MS. WEISS:  Yes, Your Honor. So I think that,
```

```
10   so the defendants had objected initially back to times of
```

```
11   even the Republican National Convention in 2004 as being not
```

```
12   proportional. Plaintiffs then, after Judge McMahon issued
```

```
13   her order on the City's motion to dismiss, she specifically
```

```
14   mentioned the relevance, I suppose, of the Republican
```

```
15   National Convention to the claims or mentioned the
```

```
16   Republican National Convention.
```

```
17             So the defendants withdrew that part of their
```

```
18   objection and offered to produce materials with, certain
```

```
19   materials with respect to the Republican National
```

```
20   Convention. But, and plaintiffs used Judge McMahon's order
```

```
21   trying to convince us to provide materials from as far back
```

```
22   as the Republican National Convention, that's the date that
```

```
23   they used at that time. It's really hard to fathom how
```

```
24   events that happened 20 years ago are relevant to events
```

```
25   that happened so much more recently.
```

```
 1                      PROCEEDINGS                    62
 2          There is, the police department is a completely
 3   different place now.  There, there have been many changes
 4   between the time of the Republican National Convention and
 5   today.  It's, I don't see how policies that went back that
 6   far could possibly have relevance today. In addition, as we
 7   have learned recently as we're collecting materials from the
 8   Republican National Convention and other demonstrations and
 9   protests and related lawsuits, burden is incredible.  We're
10   having difficulty obtaining documents from the Republican
11   National Convention because it was so long ago, they exist
12   but they're not all electronic.  Papers are likely archived.
13   Part of the, part of the discussions in producing those
14   documents was that we in our office at the Law
15   Department were going to try to go through our files
16   and see what we still had from those litigations
17   because it's likely that we would have gotten anything
18   from New York City Police Department that the
19   plaintiffs are looking for here.
20          It turns out that the database that we had
21   them on is no longer in existence.  Paper documents
22   would be archived and not easy to access. Documents
23   from the World Economic Forum were even older. They're
24   not electronic formats at the New York City Police
25   Department. There were a couple of them but they would
```

1                           PROCEEDINGS                    63

2    generally be paper documents.  Anything in our office

3    from those lawsuits which I expect would have the

4    types of documents that plaintiffs are looking for are

5    not even, they're so old that they're not even on our

6    most basic sort of electronic file system that we use

7    every day. I was involved in a couple of those cases

8    and if I try to bring them up on our internal system

9    they're not even there.

10           So I think, besides the fact that those events

11   were so distant in time to the ones at issue here, and

12   the burden of trying to track down these papers

13   documents from archive and find the relevant

14   documents, it's really, you know, it outweighs the

15   relevance. Plaintiffs are going to have documents from

16   2004 and actually even a little bit before 2004, which

17   include some of the planning type documents for the

18   Republican National Convention, it just seems like an

19   added burden to what's already burdensome to try to

20   get documents that are even older.

21           MX. GREEN:  Your Honor --

22           THE COURT:  No, no, no, no, hold on.

23           MX. GREEN:  Okay.

24           THE COURT:  So explain the paper archive

25   process, Ms. Weiss, how does that work, how do you

PROCEEDINGS                64

1

2  find out about documents, what does it take to get

3  them, what's the issue?

4       MS. WEISS:  So from, I know how it works in my

5  office.  The cases are closed, they're boxed up

6  hopefully with the name of the case on the box, and

7  they are brought to an offsite warehouse. I know from

8  the WEF cases there's got to be at least 100 boxes.

9  There is unlikely going to be any sort of index of

10 what's in each box and I also don't know what, you

11 know, the extent that all documents were properly

12 filed and saved, I'd like to assume that they're all

13 there but I know generally when we request boxes out

14 of archive it takes some time to come. I haven't done

15 it since, since the pandemic started so I don't

16 exactly know what the timeframe is on that.  But then

17 it would take significant or support staff hours to go

18 through those boxes and try to find the relevant

19 documents.  I don't know exactly how it works from the

20 police department's standpoint, unfortunately, but I

21 do know --

22       THE COURT:  That's going to be the more

23 targeted documents, I mean, if they have, you know,

24 plans, operational plans, whatever it is.

25       MS. WEISS:  I do, I do know from other cases

1

2  that police department archives are a similar system,

3  they're boxed up and sent to either offsite archives

4  or sometimes I know, for example, I had a case where

5  documents were placed in a basement of a precinct and

6  it just so happened that there was a flood and they

7  were destroyed. I think actually during Hurricane

8  Sandy but I'm not saying that that's happening here. I

9  don't know where these boxes are archived, but when

10  they're not saved electronically, it's just many, many

11  hours --

12         THE COURT:  Well, Ms. Weiss, this is very

13  disturbing because this issue's been on the radar for

14  months. It seems like you should know what the burden

15  is exactly for what they're asking, what you could and

16  what you could not do, why don't we have the answers

17  to those questions?

18         MS. WEISS:  Well, Your Honor, because we have

19  been concentrating on the documents from the

20  Republican National Convention which --

21         THE COURT:  Well as to those, let me ask as to

22  those, as to those documents, what's the, are you

23  giving up on the NYPD, are you just producing from the

24  Law Department, what's going on with those?

25         MS. WEISS:  No, Your Honor, not at all, but

```
 1                         PROCEEDINGS                    66
 2   they, the documents have been requested.  Hopefully
 3   they're somewhere on, at least some of them are on,
 4   have been saved electronically.  We've provided
 5   previous --
 6             THE COURT:  At the NYPD?
 7             MS. WEISS:  Yes.  We've already provided
 8   certain documents --
 9             THE COURT:  Is there more to be found at the
10   NYPD?
11             MS. WEISS:  There's things like after action
12   reports, there's a few specific documents that I know
13   Mx. Green has spoken about that we were hoping would
14   be exhibits to certain depositions which we did
15   produce. We produced the depositions, unfortunately
16   the exhibits were not contained along with them.
17   They're in the Law Department database that no longer
18   exists that had been made specifically for the RNC
19   cases.  But we --
20             THE COURT:  Are they in an identified box?
21             MS. WEISS:  I, I do not believe so.
22             THE COURT:  Who, who's responsible for looking
23   for all this?
24             MS. WEISS:  It would be myself and my team for
25   the Law Department, and then we have liaisons at NYPD who
```

```
 1                        PROCEEDINGS                   67
 2   search for documents or assign searches for documents.
 3           THE COURT:  I, the vagueness here is
 4   incredible to me. I mean you need to, I mean are the
 5   exhibits, for example, for the depositions in an
 6   identified box that's in an archive that can be
 7   ordered or not --
 8           MS. WEISS:  I --
 9           THE COURT:  Or don't you know the answer, if
10   you don't know the answer it's very important that you
11   tell me you don't know rather than guess?
12           MS. WEISS:  Oh, I'm not guessing, Your Honor,
13   I don't know, but I can speak to the attorney who was
14   in charge of those cases who is still with the Law
15   Department. He's the one who was able to point me to
16   the deposition transcripts which were requested and
17   produced.
18           THE COURT:  Well why hasn't that happened?
19   (indiscernible) know the answer to that right now --
20           MS. WEISS:  I'm don't, I'm sorry.
21   Respectfully, Your Honor, I did not know that I was
22   going to be asked how exhibits are archived, I
23   apologize.
24           THE COURT:  Well it's raised in your letter.
25   All right, Mx. Green, did I interrupt you?
```

1                        PROCEEDINGS                    68

2            MX. GREEN:  Your Honor, the only thing I was

3    really aiming to add, well, two things.  First, I

4    think where Ms. Weiss ended before you two started

5    talking, I think it's very important to note we still

6    don't have documents, and we still don't have an

7    explanation or an affidavit like you ordered, and I

8    think that's partly what's driving the problem.

9    Although the other thing that I would add is my

10   understanding of whenever, you know, the City doesn't

11   get to just archive or destroy things, they actually

12   have to ask permission from the Corporation Counsel.

13   And there are, I think there are affidavits that are

14   created whenever anything goes to an archive. And, you

15   know, certainly we're not going to ask them to try to

16   reconstruct documents that were destroyed in a flood

17   or a hurricane, but I, you know, it is just as

18   incredible to me that we don't know the basic answers.

19            You know, I'll segue to sanctions, we'll segue

20   to sanctions at some point but I think at some point,

21   you know, the fact that we don't have answers, it

22   might be a deterrent sanction to make them, you know,

23   collect this no matter the burden.

24            THE COURT:  I, there's an utter lack of

25   information here about burden and I, I mean I, I'm

PROCEEDINGS                           69

1

2   ready to, I guess maybe one thing to do would be to

3   get the NYPD people to meet with you, Mx. Green, like

4   Monday and so you can talk to them about where these

5   documents might be, would that help and we can get

6   back on the phone, I could try to find a time next

7   week for us to continue this?

8           MX. GREEN:  I mean I suppose --

9           THE COURT:  I don't want, I don't want them to

10  do, I mean I'm not prepared to say they've waived the

11  burdensomeness objection because I mean I do have a

12  goal in trying to move this along. And on the prior

13  protests, you know, we're not going to, I don't want a

14  litigation, I don't want, you know, to require them to

15  produce on the RNC or Occupy Wall Street, you know,

16  the set of documents that would have been or were

17  produced as part of, you know, a case that was brought

18  about those two things.  This is a much more limited

19  production having to do with their, you know,

20  operations, conduct, something, I mean it's just

21  something much more limited and I think there has to

22  be a way to figure out how to do this without

23  burdensomeness.

24          MX. GREEN:  I agree, Your Honor --

25          THE COURT:  Let me just tell you on 2002, it's

1
2  a long time ago, I don't, you know, the relevance

3  becomes, I disagree on your, your view, Mx. Green,

4  that it's necessarily relevant.  Certainly, I have no

5  problem you're asking about anything you want in

6  deposition, the question is how much burden I'm going

7  to put on the City to produce documents from it. I,

8  when I made my ruling I was persuaded, perhaps I

9  shouldn't have been, that there was going to be a

10  burden, a significant burden in producing 2002

11  documents, I just don't know that we've gotten to the

12  bottom, the bottom of this and I'm trying to figure

13  out a good way to do it, do you have any thoughts, Mx.

14  Green?

15          MX. GREEN:  Well, you know, I suppose a

16  meeting would be useful. I'm not sure if the people

17  we've been talking to at NYPD know this stuff, if

18  there's an archivist maybe that's the right person to

19  talk to. You know, knowing only what I do about the

20  NYPD through litigation, I don't know who the relevant

21  --

22          THE COURT:  Ms. Weiss, who are you talking,

23  who's responsible for this at the NYPD, who is

24  responsible for looking for this?

25          MS. WEISS:  My liaison is the managing counsel

1                              PROCEEDINGS                    71

2   of the Civil Litigation Unit and her, one of her main

3   roles is knowing where to find documents and give it

4   to the Law Department for litigation. We also have an

5   attorney liaison from the Police Action Litigation,

6   I'm not sure of what the acronym is but he's an

7   experienced litigation attorney at the police

8   department and he also plays a role in helping us

9   obtain necessary documents.  So between the two of

10  them, I have no doubt that they will know who to speak

11  to, to find out more information about these

12  documents.

13          MX. GREEN:  Your Honor, if I may, they'll know

14  who to speak to, not they're the people to speak to.

15  And I do think this plugs into something I want to

16  talk about a little later which is, you know, the meet

17  and confers on the first consolidated requests where

18  the Court ordered defendants to be ready to find confirmed

19  dates on a list of documents that we sent them in

20  September last year.  And the best we were able to do

21  talking to this liaison was getting dates, getting

22  commitments to give us dates to give us dates 20 days

23  from Wednesday.  So, you know, clearly that person

24  doesn't know where documents are with firsthand

25  knowledge, she knows who to talk to, and that's

PROCEEDINGS                    72

1   clearly not enough.

2

3          THE COURT:  And I mean the nature of the

4   documents we're talking about, I mean that's also a

5   little bit unclear to me and maybe this is partly an

6   issue for you, Mx. Green, which is what is it that you

7   are looking for?  Because, as I said, you can't do a

8   re-litigation of RNC or anything else.

9          MX. GREEN:  Of course. I think our discovery

10  requests spell it out in some detail, but it's stuff

11  like after action reports, UF-49s, some arrest

12  reports, action plans, after action reviews. I think

13  we may have asked for some disciplinary material,

14  although my understanding is that that's going to be a

15  very thin stack of paper if it exists at all.  It's

16  that kind of stuff, it's spelled out in more detail in

17  the requests but it is targeted in that we named by

18  name the kind of documents we want.

19          THE COURT:  So you don't think there is any

20  utility in having someone from (indiscernible) talking

21  to anyone at NYPD, and I can have them bring the

22  people who are responsible for --

23          MX. GREEN:  If it's the right person --

24          THE COURT:  (continuing) -- that has some

25  knowledge of where the documents are.

```
 1                          PROCEEDINGS                      73
 2              MX. GREEN:  If it's the right person I think
 3    it would be hugely useful, the problem is that we've
 4    never been in the room with the right person except on
 5    the, on the body worn camera issue. The people that
 6    have been coming to our meet and confers need to go
 7    talk to other people and don't have any personal
 8    knowledge of what searches have been done. And, in
 9    fact, you know, they'll put a footnote on that because
10    the general answer is that they haven't started
11    searches at all.
12              MS. WEISS:  Respectfully, I disagree with a
13    lot of what Mx. Green --
14              THE COURT:  Have they started searches, Ms.
15    Weiss?
16              MS. WEISS:  Yes.  Yes, Your Honor.
17              THE COURT:  Okay, who, is it this managing
18    attorney who personally looks or they delegate
19    someone?
20              MS. WEISS:  No, she does not personally look,
21    there is, there's dozens and dozens and dozens of
22    different places where, where documents can be. And
23    she does not personally look.  She either reaches out
24    to the different places where documents could be to
25    have searches done or she has, if it's something
```

1                        PROCEEDINGS                    74

2   simple she delegates to one of her staff. But she does

3   not personally do searches.  Different searches,

4   different types of searches for different types of

5   material are done in different places by different

6   people.  It's just not practical to have all these

7   different people on meet and confer which is why all

8   the information is consolidated through this managing

9   attorney.

10         THE COURT:  Well we have limited categories of

11  documents so I'm ordering that the people who know

12  where those documents are appear in a conference call

13  with or without the managing attorney and do it by

14  Monday or Tuesday so that we can finally figure this

15  out and I can understand what the burdensomeness issue

16  is.  I'm leaving 2000 -- I'm leaving the World

17  Economic Forum in the mix for right now, I'm not going

18  to make a final ruling on it without hearing what it

19  would take for you to get documents from them, but we

20  need a meeting with the actual people who know where

21  this stuff is, I don't believe it's dozens and dozens.

22  I believe that given the listing that Mx. Green has

23  described, that's going to be circumscribed.

24         MX. GREEN:  Your Honor, can we order -- I'm

25  sorry, I did not mean to interrupt.

```
 1                       PROCEEDINGS                  75

 2              THE COURT:  Go ahead.

 3              MX. GREEN:  Can we order a meet and confer

 4  time just because of the difficultly we've been having

 5  in getting these scheduled --

 6              THE COURT:  Sure. Let's say Tuesday.

 7              MX. GREEN:  Can we do Monday at one o'clock?

 8              THE COURT:  Well I want them to be able to get

 9  people to work on this.

10              MX. GREEN:  Understood.

11              THE COURT:  I'd rather do Tuesday or

12  Wednesday.

13              MX. GREEN:  Okay, then for me a Wednesday

14  afternoon would be ideal.

15              THE COURT:  Okay, Wednesday, 2 p.m.

16              MS. WEISS:  Your Honor, respectfully, if the

17  person who is in charge of this is not available

18  Wednesday at two, I don't want to be in violation of

19  the Court --

20              THE COURT:  Then you'll write me a letter

21  telling me what the problem is after talking to Mx.

22  Green first.

23              MS. WEISS:  Yes, Your Honor.

24              THE COURT:  And, by the way, that's advice for

25  the future, if I order something and you feel you
```

```
 1                        PROCEEDINGS                    76
 2   can't do it, you can't just blow it off, you have to
 3   do something about it, do you understand that, Ms.
 4   Weiss?
 5           MS. WEISS:  Yes, Your Honor.
 6           THE COURT:  Okay, so my problem is I'm a
 7   little booked up in the following days but I, probably
 8   Friday afternoon I have time for us to reprise this
 9   next Friday.  Okay, why don't we reserve the p.m. on
10   the 18th in case, 2:30 p.m. on the 18th in case we need
11   it. I'm not putting this down as a conference yet but
12   we'll see what, see what report I get.
13           MX. GREEN:  Understood.
14           THE COURT:  If you come to an agreement on
15   this it would be great.  And, you know, Ms. Weiss, you
16   have responsibility in the meantime, it's not just
17   NYPD, you've got to get your ducks in a row completely
18   about what the Law Department can get its hands on,
19   what it would take to get something from archives --
20           MS. WEISS:  Yes, Your Honor.
21           THE COURT:  You know, whether, how they're
22   identified and what the big deal is, you can't just
23   have guesses about based upon some experience you once
24   had in the past.
25           MS. WEISS:  Understood.
```

```
 1                          PROCEEDINGS                    77
 2          THE COURT:  All right, we have some other
 3   pieces of this, Mx. Green, do we have any other pieces
 4   on this, I feel like there was some other order that
 5   was violated --
 6          MX. GREEN:  Yes, Your Honor. So I mean we
 7   haven't talked about the sanctions issue on this issue
 8   and --
 9          THE COURT:  Okay, so let's finish out the
10   merits, maybe we have finished out the merits, before
11   we get to sanctions, and we're putting off the merits,
12   I guess.
13          MX. GREEN:  Yeah, the only thing I will add on
14   the merits is I'm not entirely sure we have a full set
15   of depositions so I'd like that to be, you know, we,
16   Ms. Weiss and I can meet about that, but I, I do not
17   think that they were, that we've gotten is
18   particularly comprehensive. I think it's, anyway, I
19   will address that separately if that's okay with
20   everybody.
21          THE COURT:  Okay.  So we're on sanctions then?
22          MX. GREEN:  I believe so. So I think, if I
23   may, I'd like to start with, you know, a particular
24   set of sentences in the letter opposing it where
25   defendants wrote in ECF --
```

```
 1                        PROCEEDINGS                 78
 2              THE COURT:  Before you get to the opposition, just
 3    since I have a bunch of issues here, just remind me
 4    specifically --
 5              MX. GREEN:  Understood.
 6              THE COURT:  Is this the one where I required an
 7    affidavit?
 8              MX. GREEN:  It is.
 9              THE COURT:  Okay.
10              MX. GREEN:  An affidavit or production and we
11    still are, have no affidavit as of today and the production
12    is still incomplete as of today.
13              THE COURT:  Okay, just give me the docket number
14    of my order.
15              MX. GREEN:  Absolutely, give me one second unless
16    somebody has it and can pass it to me.  I believe this is
17    383.
18              THE COURT:  Hold on.  No, I think the order is
19    359.
20              MX. GREEN:  Oh, I'm sorry, I thought you meant
21    the, yes, that, yes, correct.
22              THE COURT:  359, okay, so let me just look at it.
23    I need to pull it up here.  Okay, go ahead.
24              MX. GREEN:  Okay, so I think given where the Court
25    wanted to start, where I'd like to start then is just
```

PROCEEDINGS                    79

1
2   briefly with the history of what's happened here. These are
3   documents that I think, you know, our view is that we
4   should have gotten them on July 31st.  They are clearly
5   part of the first set of consolidated requests,
6   although defendants did object ultimately I think the
7   Court ultimately rejected the argument on which they
8   were objecting in a decision that it issued on the
9   motion to dismiss before July 31st.
10          The way we've gotten to where we are now is we
11  then sent an email, defendants asked for a couple of
12  weeks to think about it, they thought about it and
13  that just kept getting kicked down the road with
14  progressive commitments to get us documents and
15  revised objections, you know, every few weeks.  And
16  so, you know, theoretically, at least, I would have
17  hoped that somebody was looking for the documents in
18  that time.
19          Ultimately, skipping forward a bunch,
20  defendants made a firm commitment, and if I'm remembering
21  this issue correctly, this is one where they even said, yes,
22  there will be consequences, we agree you'll be able to call
23  witnesses back if we don't make a deadline of December 17th.
24  What happened, and this connects some of the staffing stuff
25  we were talking about earlier, is that Ms. Weiss had planned

1

2   a vacation and, of course, attorneys should be allowed to go

3   on vacation, there is nothing wrong with that, that lasted

4   for about two and a half weeks starting on December 20th.

5   And so this was not the only commitment that defendant sets

6   for December 17th and 18th, there were five or six big issues

7   that they promised productions on and they didn't produce

8   anything.

9        And so what happened is we then started trying to

10  follow up and the answer we got from the rest of defendants'

11  litigation team was that they were not able to respond to

12  anything while Ms. Weiss was out of the office and that

13  every decision needs to be signed off on by Ms. Weiss.  And,

14  you know, I think for this issue, in particular, that was

15  striking because at every meet and confer we had, Ms. Weiss

16  told me that this was not her issue, that she was not

17  dealing with it, that somebody else on her team was dealing

18  with it and would be getting the answers soon and until the

19  commitment of December 17th.

20        Ultimately then, you know, we held off on making a

21  motion although we sent them a motion I think on December

22  20th or 21st under ECF 317 that said, you know, we want to

23  compel these documents, it's, you know, disserving that

24  you're blowing our, you know, the things you've committed in

25  writing to us to do. Ultimately, we decided to hold off and

1                         PROCEEDINGS                    81

2   let Ms. Weiss have an opportunity to address it when she

3   got back to the office and what we got was nothing when

4   she got back to the office, she just didn't respond to the

5   emails. And so we filed the letter and the first time

6   around defendants filed an opposition that the Court said

7   did not actually do any of the things it was supposed to do.

8   And so they filed another opposition and, you know, what it

9   seems like from what they've said about at this stage their

10  failure to produce is that they started collecting these

11  documents for the first time after the Court ordered

12  them, not even after the Court ordered them to, to

13  file a second opposition letter but they didn't start

14  collecting them until the Court literally ordered them

15  to collect the documents.  And so, you know, on

16  sanctions Ms. Weiss' letter focuses on how it wasn't

17  unreasonable for them to miss a deadline when the

18  Court ordered it on January 24th for January 28th.  And

19  maybe in isolation that's true, but that ignores the

20  entire history of this. It ignores that they've been

21  promising these documents for more than, you know, six

22  months.

23          And the other thing I will say about the

24  letter that defendants have filed, there's a line in it

25  that says --

```
 1                         PROCEEDINGS                      82
 2            THE COURT:  You're talking about docket 381?
 3            MX. GREEN:  381 that says, "Defendants do not take
 4   the orders of this or any other Court lightly."  As Your
 5   Honor knows, this case is on a rocket docket with ten
 6   consolidated cases, several of them purported class
 7   actions, dozens of attorneys, with seemingly unlimited
 8   time and resources for bullying and attempting to
 9   intimidate defendants and their counsel.  Of course, as the
10   Court probably remembers, just before that at ECF 347, the
11   Court had written there are many problems with the City's
12   response and I'm just kind of putting ellipses in here.  The
13   City's letter improperly accuses plaintiffs' counsel of
14   acting unprofessionally without providing a basis for that
15   accusation. Such accusations shall not be repeated in the
16   future. It didn't even, their claim to be taking the Court's
17   orders seriously didn't even last a single sentence.
18            This is not the only order that we're running into
19   problems on.  As the other letter I filed last week as a
20   status report, and that's, if you give me a second, sorry --
21            THE COURT:  380?
22            MX. GREEN:  I believe that's right, yes, 380,
23   despite a clear Court order saying that they needed to be
24   ready to provide firm dates on documents they've known we
25   don't have since September, and really they've known
```

PROCEEDINGS                83

1
2   we weren't going to get since March, defendants were not

3   prepared to provide firm dates.  We objected to it at the

4   first meet and confer that they cut off after about an hour

5   last week, and this week they were no more prepared to

6   provide us firm dates on any, you know, I -- I may have, if

7   I suggested they haven't started looking for anything, I

8   overstated it earlier, but it's very clear that for a large

9   number, if not a majority of the categories identified in

10  the September letter, defendants are considering how to

11  collect the documents for the first time in our meet

12  and confers. And then they need to go talk to the

13  people who organized those documents to find out how

14  long it's going to take to collect. When the Court has

15  already ordered them to provide firm deadlines, that's

16  just not okay.  It's, it's extraordinarily frustrating

17  and it's obviously on the schedule grinding things to

18  a halt.

19          In terms of what we should do at this point,

20  to my mind there are three basic kinds of sanctions.

21  There are sanctions that are individual that are

22  intended to provide some kind of deterrent effects,

23  for example, fining an individual attorney $500 in a

24  written decision --

25          THE COURT:  Before, wait, wait, before we get

```
 1                         PROCEEDINGS                    84
 2   to the types of sanctions I need, I need greater
 3   specificity on what you're talking about in terms of
 4   what specific conduct is being sanctioned and what
 5   letter is raising this. You're talking about sanctions
 6   based on 380?
 7              MX. GREEN:  So I think that there are
 8   appropriate sanctions based on 380 --
 9              THE COURT:  This is not, we're not going to do
10   sanctions based on 380, that's not, that was not keyed
11   up for this, I'm happy to talk about --
12              MX. GREEN:  Understood. And I, I don't mean to
13   be suggesting that we're asking for it directly, I
14   think that I'm mentioning it because this is, at this
15   point, to say that this is not an intentional course
16   of conduct, it strains reality. I think that more
17   orders have been violated than have not.  Just this
18   week, you know, after the Court's comments at the lack
19   of deposition, about the 48 hour rule, it was not
20   until Thursday at 4:00 for a, I'm sorry, Tuesday at
21   4:00 for a Thursday deposition that we got, we got the
22   documents that the Court had ordered for every
23   deponent. It's, there is a total lack of respect for
24   the Court's orders.
25              Now I think it is teed up with regard to the
```

PROCEEDINGS                    85

1

2   prior protest motion, right, that it is that course of

3   conduct, that violation of a clear order to produce or

4   provide an explanation by way of affidavit with

5   somebody with personal knowledge as to why collection

6   was impossible, neither of which has been done even as

7   of today.  That's what we're seeking sanctions on. But

8   I think the reason I am talking about the rest of it

9   is I think that bears very much on the severity of the

10  sanction that's warranted and kind of, I know we'll

11  talk in a moment about the kinds of sanctions, but the

12  point is the kind of sanction that will actually get

13  this case back on track.

14          THE COURT:  Okay, so --

15          MX. GREEN:  And I thought I should mention it

16  was because of our, the lack of documents on this that

17  we had to cancel the deposition that was scheduled for

18  Tuesday.

19          THE COURT:  Because of lack of prior protest

20  documents?

21          MX. GREEN:  Yes, correct.

22          THE COURT:  Yes, okay.  So, all right, so now

23  I know we're talking about 359, go ahead about the

24  types of sanctions.

25          MX. GREEN:  Okay.  So to my mind there are

PROCEEDINGS                         86

1
2   basically three ways we can look at sanctions. There
3   is, you know, the individual, I mean it's more than a
4   slap on the wrist but a targeted, you know, Dara Weiss
5   shall pay plaintiff $500. I don't know that that's
6   going to get us much of anywhere in this case.  You
7   know, certainly it's, I don't even think that most of
8   this is Dara Weiss' fault, I think most of it's the
9   client's fault, so I don't know that I think that
10  would be appropriate.
11          Past there, there are two ways I see of
12  looking at sanctions. First is kind of backward
13  looking make whole sanctions. So those are things like
14  ordering attorneys' fees, or perhaps even, you know,
15  an order of preclusion when, you know, documents have
16  been destroyed and there is no way to replace them.
17  and them. And then there are forward looking
18  sanctions, and this would be category three, that aim
19  at fixing the problem going home, whether through
20  deterrents or, you know, I know it wasn't phrased as a
21  sanction, but things like you see at 317 that provide
22  procedures that try to stop the problems from popping
23  back up again.
24          You know, I thought a lot about what would
25  work in this case. I think attorneys' fees, as we

PROCEEDINGS                    87

1
2   understand it, are mandatory, so we'd ask for those.
3   But in terms of fixing the problem going forward,
4   here's what I think makes sense.  In order to stop us
5   from ending up here and expending more unnecessary
6   motion practice when the City misses Court ordered and
7   agreed upon deadlines, we'd ask the Court to do
8   something like this.
9             First, if the City anticipates missing a
10  deadline, Court ordered or one agreed by from the
11  parties, they must submit an affidavit from the
12  appropriate custodian, so either NYPD or Mayor's
13  Office, at least two days before the deadline
14  explaining in detail why the deadline is impossible to
15  meet so the Court can decide whether an extension is
16  appropriate and actually have a chance to tell them
17  that the extension is inappropriate if it believes it
18  is. The Court can then also schedule a conference
19  requiring the person from the NYPD or Mayor's Office
20  to come to see if an extension is warranted if the
21  information in the affidavit it threadbare or not
22  sufficient.
23            Second, we think that at this point it makes
24  sense to have the Court so order any and all of the
25  parties' agreements about defendants' deadlines to

```
 1                         PROCEEDINGS                    88
 2   produce that we agree on at meet and confers or an email
 3   that we exchange in lieu of meet and confers. In terms of
 4   process, what I'd propose is that plaintiffs send an email
 5   to defendants summing up any commitments that we believe
 6   they've made and proposing language to be so ordered, and if
 7   they don't object that (indiscernible) we can send it to the
 8   Court can be so ordered. If they do object, then they can do
 9   so by identifying what they disagree with, and for the
10   issues that aren't in dispute, then we can submit those to
11   the Court to be so ordered, for everything that is in
12   dispute, as with ECF 317 we'll make ourselves available
13   within 24 hours to discuss and otherwise defendant should
14   propose alternate language that they believe reflects the
15   agreements and we can go from there.
16            Third, if the City misses a deadline without
17   submitting an affidavit two days in advance, they must
18   submit a letter within one day of missing the deadline
19   explaining why they shouldn't be sanctioned for further
20   failures to comply with the Court's orders.
21            And then, finally, if defendants fail to submit a
22   letter, we think it would be appropriate for the Court to
23   set a presumed scale for progressive monetary sanctions for
24   each deadline missed. We're really hoping that won't be
25   necessary, but we think that having the system in place so
```

1          PROCEEDINGS                    89

2  that we're not coming to the Court and providing fair

3  warning to defendants, and specifically to, you know, to

4  counsel's clients that there will be consequences for

5  failure to follow the Court's orders is necessary at this

6  point to insure that we're not missing deadlines, both, you

7  know, committed to formally in the Court's meet and confer

8  process, and ordered by the Court.

9          THE COURT:  Okay, gather this is the first time

10  Ms. Weiss is hearing this, Mx. Green?

11          MX. GREEN:  That's correct, this is something

12  that, you know, we've spent some hours in common interest

13  meetings putting together, but yes.

14          THE COURT:  Okay.  All right, Ms. Weiss, I know

15  you're blindsided a little by this but I'll hear from you.

16          MS. WEISS:  Yeah, you could say that.  First of

17  all, I appreciate, Mx. Green, that you don't think sanctions

18  against me personally are appropriate here. But, you know,

19  Your Honor pointed out this is, this is new, and these

20  sort of sanctions. Mx. Green's letter talked about

21  attorneys' fees under Rule 37 and that was, frankly,

22  all we were prepared to discuss.  You know, and, Your

23  Honor, this goes back to the argue with respect to

24  audit trails and our opposition to that.  Despite Mx.

25  Green's contentions, none of this is purposeful or an

```
 1                      PROCEEDINGS                    90
 2  intentional disregarding of the Court's order.  That's
 3  just not something that is at issue in this case at
 4  all.
 5            And I also appreciate that Mx. Green said that
 6  I, attorneys can go on vacation. I don't know
 7  everything that happened while I was on vacation, I
 8  know what happened when I came back. If there were any
 9  orders that were, were missed, I sincerely apologize.
10  We're working now on getting the documents, we're,
11  it's going to be the discussion on Monday to make sure
12  that we get documents as quickly as possible. I'm not
13  sure that deposition had to be postponed because of
14  lack of these documents but, you know, plaintiffs
15  wanted to do that and that was fine with defendants,
16  it's understandable. There's a very tight amount of
17  time to do depositions, we're trying to fit in fifty-
18  some-odd in that time but I'm sure we'll be able to
19  reschedule it.
20            But, once again, this was in no way
21  intentional, it was just so many things coming in at
22  once and trying to keep up with it.  And I made this
23  argument earlier in this conference and we rest on
24  that.
25            THE COURT:  Here's the part I don't
```

1                          PROCEEDINGS                    91

2  understand, Ms. Weiss, I issue a Court order requiring

3  you to provide an affidavit and you literally just act

4  as if it doesn't exist. I mean we have a lot remedies,

5  you can move for reconsideration, you can object, but

6  why is violating it an option?

7            MS. WEISS:  Well, Your Honor, it was not

8  intentionally violated. I was busy trying to get the

9  documents and the date, the date just passed and I

10 apologize that we didn't get the affidavit. It was, it

11 was a complete oversight. We --

12           THE COURT:  Did you read -- I don't issue that

13 many orders, did you read the January 24th order?

14           MS. WEISS:  Yes, I did, Your Honor.

15           THE COURT:  Were you aware that you either had

16 to produce or provide this affidavit, did you

17 understand that from the order?

18           MS. WEISS:  Yes, Your Honor, and I was working

19 on --

20           THE COURT:  And at the time you read it did

21 you think, did you think I'm not going to have to do

22 that affidavit because I know we're all going to get

23 it done or did you think, you know, we're not going to

24 get this done by the 28th, I'm going to have to do an

25 affidavit?  Did you think either of those things?

```
 1                         PROCEEDINGS                 92
 2          MS. WEISS:  I don't remember exactly what I
 3   thought when I got the order, but I, I proceeded as if
 4   I was attempting to get the documents.
 5          THE COURT:  You thought you would have it all
 6   produced by the 28th?
 7          MS. WEISS:  I didn't know, I was looking
 8   through documents to see what I could produce and then
 9   the date simply passed.
10          MX. GREEN:  Your Honor, that's also just not
11   true. In an email the day it was due, defendants wrote
12   saying we intend to produce prior protest documents on a
13   rolling basis. The idea that this passed without notice is,
14   I mean it's not believable on a Court order in the first
15   place.  But in writing defendants said that they intended to
16   produce prior protest documents on a rolling basis, I
17   emailed them back saying that's not consistent with
18   the Court's order and didn't get a response.
19          THE COURT:  What date did you email them?
20          MX. GREEN:  They emailed me on the 28th and I
21   emailed them back on the 28th.  It's quoted in my
22   letter and I'm happy to file --
23          THE COURT:  You it that to Ms. Weiss?
24          MS. WEISS:  Yes, Ms. Weiss and Ms. Robinson.
25          THE COURT:  Well, Ms. Weiss, you got an email
```

1                          PROCEEDINGS                    93

2  saying that you had to produce this affidavit on the

3  28th, right, reminding you?

4          MS. WEISS:  It's possible, I don't have my

5  emails from the 28th open here and I don't specifically

6  remember.

7          THE COURT:  I mean this, we can't function if

8  you don't read and comply with Court orders, that's so

9  basic.  I mean I'm just flabbergasted that I don't know

10 what you expect is going to happen if you don't comply

11 with a Court order or try to do something about if you

12 think you can't comply with it.  I mean this one,

13 obviously, could have been complied with.  I just, I, I

14 don't think I ever had a litigant quite so contentious, I

15 mean sometimes.

16         All right, I think I would like, Mx. Green, for

17 you to put this proposal you gave to me on future

18 sanctions in a letter and then I will -- file it as soon

19 as you can, Ms. Weiss, you can respond within two days,

20 and then I'll decide what I think is the best way going

21 forward as to those.

22         As to a Rule 37 sanction for violating my

23 extremely clear order of January 24th at docket number

24 359, the City is sanctioned by awarding the attorneys'

25 fees that Mx. Green had to go through to bring this to my

1   

2   attention afterwards. So we're going to use the same

3   procedure that we used in the other case.  Mx. Green, you

4   put together, you know, whatever your proposal is for the

5   fees, show it to Ms. Weiss, if you want to work it out on

6   your own, that's fine, otherwise you'll just send it to

7   me.

8          MX. GREEN:  Yes, Your Honor. If I may clarify

9   what's the starting date on, just so we don't end up

10  in dispute about what's fair game for this --

11         THE COURT:  After January 24th.

12         MX. GREEN:  After the 24th, okay.

13         THE COURT:  No, no, no, I take it back, it has

14  to be after the 28th, it has to be after the failure to

15  file the affidavit, it's post January 28th.

16         MX. GREEN:  Understood.

17         THE COURT:  And also relevant to this

18  particular issue.

19         MX. GREEN:  No, of course, I suppose the only

20  thing I --

21         THE COURT:  We're talking about basically the

22  369 but, you know, if there's some other work you did

23  on it, that's fine.

24         MX. GREEN:  Well, Your Honor, I suppose what,

25  I understand the, I think that's 37(a) for violating

```
 1                         PROCEEDINGS                    95
 2   the Court order, we'd also ask for 37(b) and I may
 3   have mixed them up, sanctions related to, you know,
 4   having to just follow-up for nearly a year on this
 5   stuff and --
 6             THE COURT:  Yes, I understand, on the merits
 7   of that I'm putting that off for now.
 8             MX. GREEN:  Understood, that's all I want to
 9   clarify.
10             THE COURT:  Okay.
11             MX. GREEN:  I'm not going to argue and I just
12   wanted to know what I'm supposed to send them.
13             THE COURT:  I'm glad you asked.  Okay, what's
14   left, Mx. Green?
15             MX. GREEN:  I suppose I think the right way to
16   handle what's been going on on the, kind of the bigger
17   picture stuff, I mean, you know, I understand that
18   perhaps I have blindsided Ms. Weiss with the specific
19   proposal but I think that we had asked to be, everyone
20   to be ready to talk today about the bigger picture
21   issue that it's not just Court orders that are getting
22   disregarded but, you know, defendants are not keeping
23   their commitments in the meet and confers, they're not
24   scheduling meet and confers, that just getting basic
25   information is pulling teeth here.
```

```
 1                      PROCEEDINGS                    96
 2             I think the proposed sanction handles that in
 3    part. I suppose what I would ask in addition to that is just
 4    if we could submit all of the commitments defendants have
 5    made in the most recent meet and confers to be so ordered,
 6    that might also help us move forward. Otherwise I think the
 7    proposed prophylactic sanction is, covers that part of our
 8    request.
 9             THE COURT:  I think it's a good idea to have Court
10    ordered deadlines where possible so I'll agree with you on
11    that. I guess there's a listing, and I can't remember what
12    docket number it is, of categories that the City, that
13    you're in discussions with the City on --
14             MX. GREEN:  Correct.
15             THE COURT:  Is it that they have made
16    commitments on some and you want them so ordered?
17             MX. GREEN:  So what we would have to do here
18    because they did not come to that meet and confer
19    prepared to discuss firm dates, is they have
20    committed, that's 20 days from this Wednesday, they
21    will give us what we referred to as a date for a date.
22    Meaning, or, sorry, the 20 days from Wednesday was a
23    date for a date, meaning on that day we will get a
24    firm commitment.  And, you know, I think in our view
25    the discovery schedule is kind of blown already at
```

1                          PROCEEDINGS                    97

2   this point, we're discussing separately requesting an

3   extension and, you know, rescheduling depositions as

4   is appropriate. But I think whatever comes out of

5   their mouth on the 20th we want that to be so ordered

6   and we want the fact that it has to come out of their

7   mouth, not the 20th, in 20 days, and the fact that it

8   has to come out of their mouth in 20 days also to be

9   so ordered.

10          THE COURT:  That's fine. I'm a little

11   concerned about this notion that there's some

12   automatic extension of a discovery schedule that's

13   going to happen, is this going to affect other dates?

14          MX. GREEN:  Your Honor, I believe it is, I

15   just, you know, we've been talking to the City about

16   it. I think the only other option is, you know, given

17   the prejudice we've had to be talking about preclusive

18   sanctions instead of prophylactic sanctions. I

19   understand --

20          THE COURT:  Proving what exactly?

21          MX. GREEN:  I mean the reason we didn't ask

22   for it specifically is because I can't think of

23   anything that wouldn't basically amount to striking

24   the City's answer.  And I, you know, please do tell me

25   if I'm wrong but I assume you're not there.

PROCEEDINGS                    98

1
2          THE COURT:  Well, no, I mean we have to, I
3   mean you're not stopping all depositions, I assume. I
4   assume there are some, I mean I can see how for high
5   level people there may need to be a moving to the end
6   but you're not talking about halting depositions, are
7   you?
8          MX. GREEN:  We're not talking about halting
9   them, but because of the way we did things if, the
10  reason that we didn't finish discovery at the end of
11  last year is that the City, despite the Court's order
12  on when to produce documents and, you know, despite
13  the Court's order on when discovery ended had, without
14  telling anybody, decided they were going to produce
15  emails at either the end of December or beginning of
16  January, which was past the discovery end date.  And
17  we only found that out because we moved to compel
18  those.  And so, you know, what was left at that point
19  in terms of depositions was high level.  There are
20  line level officers that we've discovered exist from
21  various discovery, from emails, from so on, and we had
22  noticed some of those, but really all that's left were
23  the depositions that in the first instance we decided
24  we were unable to take without significant document
25  production. And, of course, all of those decisions

```
 1                        PROCEEDINGS                99
 2   were made on the assumption that we were going to get
 3   everything on July 31st which didn't happen. And, you
 4   know, even though the Court ordered -- sorry, please.
 5          THE COURT:  Well I'm trying to follow where we
 6   are now.  So some depositions are going to be
 7   happening because they can go forward without this
 8   production, there are others you want to wait on the
 9   production for, is that it?
10          MX. GREEN:  That's correct.
11          THE COURT:  Okay.  How many others are waiting
12   on the production?
13          MX. GREEN:  I could not tell you offhand
14   where, I am happy to discuss with the common interest
15   group and put together a list of each category but I
16   am not prepared to say that right now.
17          THE COURT:  I mean, again, the parties just
18   can't assume that if they agree to it that deadlines
19   are going to be extended, the Court has an interest,
20   too. So, you know, I'm not saying that some brief
21   extension isn't possible but we have to do what we can
22   to, you know, limit it.
23          MX. GREEN:  I understand, Your Honor. I think
24   what I would like to just say on that, almost every
25   one of these motions that we're here on today were
```

1                          PROCEEDINGS                    100

2   filed, you know, about commitments the defendants missed

3   in mid-December at the beginning of January. And I

4   understand why it's taken so long to get here on a

5   conference, I do, but, you know, what we had asked for in

6   each of these letters was production in time to keep the

7   schedule and we're just --

8            THE COURT:  I don't want to talk about the past or

9   blame, I want to talk about --

10           MX. GREEN:  Yes.

11           THE COURT:  Like one way to solve this is to say

12  20 days is too long, we need the commitments sooner and, you

13  know, if I think the commitment is so unreasonable then, you

14  know, if they're going to extend discovery more than, you

15  know, some brief period of time, then they are not going to

16  be acceptable.

17           MX. GREEN:  Understood, Judge. I think, you know,

18  what we had been discussing between the parties was

19  (indiscernible) extension. Another problem that we have is

20  that despite, you know, really not trying to cast blame

21  here, but not every deponent is even on the schedule yet and

22  the Court had ordered that.  And then defendants also, after

23  I think last week shuffled all of their 30(b)(6) deposition

24  designations and so, you know, that, that is also affecting

25  things and the need for an extension.

```
 1                        PROCEEDINGS                    101

 2              I understand what the Court's saying, that, you

 3    know, we, we shouldn't assume that we're going to get an

 4    extension but given --

 5              THE COURT:  No, I understand the problem.  I mean

 6    there's, you know, I mean if the City was actually able, I

 7    mean the City had shot itself in the foot because it's not,

 8    it's not been articulating burdens and it's possible that if

 9    they articulated, you know, particular burdens in producing

10    things, I would say that's too much, I'd rather sacrifice

11    the documents, have the case, you know, go forward on what I

12    think is an appropriate schedule.  That's, you know, an

13    option, there's a tradeoff to be made potentially between

14    producing documents and getting the case over with, and one

15    might sacrifice some category of documents to say, you know,

16    it's not worth waiting for these, better that the

17    depositions go forward and the case go forward. Or that the

18    documents only happen after the depositions and they can

19    only be able to use, be used without having questioned

20    deponents on them, that's probably the more likely option.

21              Do you see what I'm saying, Mx. Green, there's a

22    balancing here.

23              MX. GREEN:  I do, Your Honor.

24              THE COURT:  The plaintiffs have an interest in

25    moving the case along more than the City I would
```

```
 1                        PROCEEDINGS                    102
 2   think.
 3          MX. GREEN:  I think that's right. I think it
 4   ultimately comes down to prejudice though. You know,
 5   we have, we spent significant time at the beginning of
 6   last year mapping out a schedule that allowed us to
 7   take the depositions and get the discovery we wanted
 8   in a way that we thought allowed us to best prove our
 9   case.  I think that there are very important documents
10   and you're, of course, right that perfect productions
11   are not something to hold up depositions for. But we
12   are still missing just major, major crucial categories
13   of documents, you know, and it's something that I
14   think --
15          THE COURT:  My point is those need to be
16   prioritized. I mean I assume prior protests is one of
17   those categories, right?
18          MX. GREEN:  Absolutely.
19          THE COURT:  Yes. And I guess there's others I
20   haven't heard about.
21          MX. GREEN:  That's correct, Your Honor.
22          THE COURT:  In terms of being presented.
23          MX. GREEN:  Right, or they were listed in the
24   September letter that became the October motion that
25   became the January motion.
```

```
 1                         PROCEEDINGS                    103
 2            THE COURT:  Okay, but not, the merits have not
 3   been presented to me.
 4            MX. GREEN:  Right, because presumably
 5   defendants were agreeing to produce them, they just
 6   haven't.
 7            THE COURT:  Right. Yes, I mean you need to be
 8   sensitive to the possibility that some categories need
 9   to be frontloaded so that depositions can happen,
10   others can wait because, I mean if the City ever
11   showed it they would be too burdensome to be produced
12   before the deposition and the plaintiffs might just
13   have to wait in order to have a schedule when the case
14   moves forward.  So I just want to throw that in the
15   hopper as a thought that you need to consider.
16            MX. GREEN:  Yes, Your Honor, and I, you know,
17   I would respectfully suggest that we have considered
18   it and we've considered it I think pretty thoroughly
19   at a lot of different stages in this case --
20            THE COURT:  Well, I mean I'm not saying --
21            MX. GREEN:  We've taken fifty-some-odd
22   depositions, there's a deposition going on right now.
23            THE COURT:  I'm not saying you're slacking,
24   what I'm saying is that for purposes of seeking an
25   extension, as someone said earlier, perfect could be
```

1                            PROCEEDINGS                    104

2    the enemy of the good which is to say there are some

3    categories of documents we can wait till after the

4    depositions.  Because, you know, we won't be able to

5    make the case to Judge Gorenstein that the City should

6    have to produce all of it in time to have this go on

7    the schedule that I'm contemplated.

8            MX. GREEN:  Understood. I think the best thing

9    to do then is, you know, for the documents we care

10   about we will, you know, I suppose propose that they

11   be ordered produced sooner rather than later and that

12   might involve renegotiating some of the commitments

13   we've made and then otherwise we'll propose a new

14   schedule and request an extension in the appropriate

15   way.

16           THE COURT:  All right.  I mean I think we're

17   not thinking about schedule extensions, I was thinking

18   more in the nature of, you know, 30 days, 45 days, I

19   think what you're talking about is a lot longer than I

20   was ever contemplating or would be expected to approve

21   of.

22           MX. GREEN:  I mean, Your Honor, I guess all I

23   would say is if we count the days from when we were

24   supposed to get documents and when we moved on them,

25   which would be mid-December, so December 15th, 16th,

1                        PROCEEDINGS                    105

2   17th and, you know, what I think the Court has signaled

3   is the shortest period it's willing to order which is

4   15 days from now, we're talking about --

5            THE COURT:  Wait, wait, wait, 15 days from

6   now, I'm sorry, I lost you?

7            MX. GREEN:  When we were discussing various

8   productions earlier in this call the Court was

9   ordering, was suggesting it was going to order, you

10  know, two-week type deadlines, not five-day or three-

11  day deadlines. And so, you know, if you had the 15

12  days at the end of last year, the 15 days from now,

13  and the time it's been since January 1st, that's 60

14  days --

15           THE COURT:  Okay, right, I'm not sure that's

16  necessarily the way to think about it but, fine,

17  understood, maybe you'll be able to make the case for

18  60 days. I mean how many, how much, how many days of

19  depositions are contemplated once you get these

20  documents?

21           MX. GREEN:  I think we have something like 40

22  depositions outstanding, maybe less than that, at the

23  high level.

24           THE COURT:  And how long are you expecting it

25  to take you to do 40 depositions?

```
 1                          PROCEEDINGS                   106

 2              MX. GREEN:  Well I think the time schedule

 3    extends into May I want to say, so about three months

 4    total.

 5              THE COURT:  Right, well that's another place

 6    where efficiency, I mean other efficiencies could be

 7    achieved, right? I mean the current deadline is, in

 8    fact, April 22nd.

 9              MX. GREEN:  Then I apologize because I had

10    gotten the deadlines wrong, obviously the schedule for

11    the most part complies with that although defendants

12    have scheduled, I think there are a couple of

13    witnesses that defendants have given updates that are past

14    the discovery deadlines more.

15              THE COURT:  Right. I mean if there is any play in,

16    you know, liability and deadlines, that's something to be

17    considered.  Okay, well, I think, are we done, Mx. Green?

18              MX. GREEN:  I believe so. I think, you know, the

19    only other thing I would say is if we end up not having

20    crucial documents at depositions and we can't get time

21    to get those, I think we, we would end up

22    contemplating another motion that takes, you know,

23    curative sanctions in the form of some kind of

24    preclusion.

25              THE COURT:  Preclusion of what?
```

```
 1                        PROCEEDINGS                    107
 2           MX. GREEN:  I mean maybe precluding them from
 3   arguing probable cause on, you know, the arrests of
 4   people over 2020, in the course of something like
 5   that.
 6           THE COURT:  All right, well, we're, I mean
 7   preclusion is always an option depending upon what the
 8   City does.  But nothing to be addressed right now.
 9           MX. GREEN:  Understood.
10           THE COURT:  Ms. Weiss, anything you want to
11   say in response to what you heard?
12           MS. WEISS:  No, Your Honor, if and when these
13   issues come up we'll certainly address them. I know
14   that Mx. Green was just sort of throwing things out
15   there now, but I don't think they need to be addressed
16   at this moment by the City.
17           THE COURT:  The date for the date is really
18   bothering me.  It's just too long.  When, Ms. Green,
19   what do you calculate this promise date to be?
20           MX. GREEN:  It's 20 days from Wednesday and if
21   you give me a moment I can look at a calendar and see
22   what that actually means.
23           THE COURT:  Twenty days from this past
24   Wednesday?
25           MX. GREEN:  Yes, so that's going to be the 1st
```

```
 1                    PROCEEDINGS                 108

 2  of March.

 3          MS. WEISS:  Your Honor, we had originally

 4  proposed it earlier but during the earlier week the

 5  NYPD liaison, the managing attorney of the unit, is

 6  going to be on vacation, so we extended it until she

 7  got back from vacation because she's really the one

 8  who needs to get and would have the information.

 9          THE COURT:   (indiscernible)?

10          MS. WEISS:  It's the week after Presidents Day

11  so I think that's the week of the 21st.

12          MX. GREEN:  Right, defendants did not want to be

13  responsible for something at all that week so we moved

14  it to the next week.

15          THE COURT:  I mean is any work being done on

16  actually looking for the documents, I mean, or is this

17  date to announce when you're going to be looking in

18  the future, Ms. Weiss?

19          MS. WEISS:  No, it's a, it's a date to give

20  plaintiffs a firm date of when the documents will be

21  produced.  Our liaison is reaching out --

22          THE COURT:  The work on searching for them has

23  to happen immediately, is that happening or not?

24          MS. WEISS:  It is, our liaison has already

25  reached out to or is in the process, the meet and
```

PROCEEDINGS                                    109

1
2  confer just happened on Wednesday, the process of
3  reaching out to all the different units who would be
4  in possession of these documents or these types of
5  documents to have them looking and she will then let
6  us and plaintiffs know when each of these units will
7  have the documents all collected.
8           THE COURT:  Right, and also they should be
9  collecting it, too, I mean --
10          MS. WEISS:  Well, yes --
11          THE COURT:  That should be started.
12          MS. WEISS:  Yes, that is the part of it, I
13  can't guarantee that she has been able to reach and
14  speak to all of the units as of now, you know, I don't
15  know what people's days off are or people's
16  availability --
17          THE COURT:  Well make clear that the
18  collection process has to start, it's not just an
19  exercise to figure out when, how long it would take if
20  it started on March 1st.
21          MS. WEISS:  Yes, of course.
22          THE COURT:  Start right now.
23          MS. WEISS:  Absolutely.
24          THE COURT:  And that they may be called in to
25  say what they've done on particular searches.

```
 1                        PROCEEDINGS                    110

 2            MS. WEISS:  Yes, Your Honor.

 3            THE COURT:  So maybe people -- okay, Mx. Green

 4   anything else?

 5            MX. GREEN:  Given all of that, perhaps the

 6   best thing to do is just set the deadline that

 7   everything needs to be produced or an affidavit needs

 8   to be produced by March 1st?

 9            THE COURT:  Well I, you mean actually produce

10   the documents by March 1st or give --

11            MX. GREEN:  Yes.

12            THE COURT:  I mean they're being required to

13   meet with you on March 1st, right?

14            MX. GREEN:  They're being --

15            THE COURT:  Or not?

16            MX. GREEN:  The previous agreement which I

17   think, you know, I think assumes perhaps wrongly that

18   we would be able to get significant further time from

19   the Court is, because defendants didn't come prepared as

20   ordered to provide firm dates at a meet and confer and, you

21   know, it's not the first time they were ordered, they were

22   ordered to do that in October, as well --

23            THE COURT:  I'm happy to order them to provide

24   firm dates on March 1st, is that what you're asking or

25   something else?
```

```
 1                      PROCEEDINGS                    111
```

```
 2              MX. GREEN:  Well, no, I mean, you know, I think
```

```
 3    that's what we've agreed to do, I think the problem is if
```

```
 4    we're not going to be able to get the significant discovery
```

```
 5    extension that what we agreed to in that meet and
```

```
 6    confer doesn't work.
```

```
 7              THE COURT:  Well, I mean it depends what you
```

```
 8    mean by significant.
```

```
 9              MX. GREEN:  Sixty, ninety days.
```

```
10              THE COURT:  It depends what these dates are.
```

```
11    So I, let me think about this, I mean I, I'm flying
```

```
12    blind here because I would have to go through the
```

```
13    categories and understand what the issues are. Let me
```

```
14    just think about this. I mean if the assumption is,
```

```
15    right, that you're going to produce the documents on
```

```
16    March 1st unless it's impossible to do so?  Ms. Weiss
```

```
17    is maybe on mute.
```

```
18              MS. WEISS:  I'm sorry, I was on mute.  The
```

```
19    intention was not to produce the documents on March 1st
```

```
20    unless, of course, we have them, but the intention was
```

```
21    to be able to have full and thorough conversations
```

```
22    with the folks who are searching for the documents to
```

```
23    get a firm date by which they know they could get the
```

```
24    documents to us and then we, in turn, can turn them
```

```
25    over to plaintiff.
```

```
 1                        PROCEEDINGS                    112

 2            THE COURT:  Mx. Green, the categories of

 3   documents are listed where right now?

 4            MX. GREEN:  They are in the September 10th

 5   letter that's attached to the first motion on this,

 6   give me a second and I'll give you a docket number.

 7   It's going to be one of the 354s, it's 354-2 --

 8            THE COURT:  Yes.

 9            MX. GREEN:  342-2 provides the list and the

10   list is provided between pages 5 and 8, and this was

11   the motion that was made on, initially, or this is a

12   letter that was filed on September 10th and then

13   attached to a motion made in October. And then again

14   attached to a motion made in January.

15            THE COURT:  Yes, January, right.

16            MX. GREEN:  And the January motion came

17   because we weren't able to complete a process where

18   the Court had ordered us to meet and confer and get

19   firm dates for production.

20            THE COURT:  I don't understand how the City

21   gets a letter like this in September and doesn't know

22   now what its position it in terms of the ability to

23   produce them. Ms. Weiss, how does that happen?

24            MS. WEISS:  Your Honor, we responded to the

25   letter, plaintiffs were not satisfied with our
```

1                           PROCEEDINGS                    113

2   response so we continued to engage in meet and confers

3   to try to reach, to reach a conclusion that the

4   parties would be satisfied with.  This has been going

5   on and we have been responding.  There had been a

6   series of meet and confers, the City provided

7   materials and information to plaintiffs, we haven't

8   heard anything for quite a while and then once they

9   started contacting us, again, we started engaging in

10  further meet and confers. And this week --

11          THE COURT:  All right, this is what we're

12  going to do on this.  By, on March 1st you need to

13  produce something, either produce these documents or

14  give a letter to the other side that says when you're

15  producing the, and if it's more than two weeks away

16  you need to have a full explanation of what the

17  problem is.

18          MS. WEISS:  Okay.

19          THE COURT:  If we do that, if you get

20  everything, if you get everything, maybe, Mx. Green,

21  where does that take us?

22          MX. GREEN:  I think that that probably means

23  that we'll, you know, assuming we actually do get

24  everything and there isn't an objection that shows up

25  for the first time, say, to privilege that we didn't

1                        PROCEEDINGS                    114

2   expect, that, I think that gives us some ability to,

3   well, let's see, that would put us in March. I think

4   maybe that means that with a 90 or 100, maybe 90 day

5   extension of the discovery deadline we can keep things

6   going, assuming that there are no scheduling issues.

7   Like, for example, that the mayor is not, or the

8   former mayor is not available for an entire month.

9            THE COURT:  That's just too long.

10           MX. GREEN:  I mean, Your Honor, I think, you

11  know, one of the things that struck me in what Ms.

12  Weiss just said, when explaining why they couldn't

13  give us dates today it was, well, we just had this

14  meet and confer on Wednesday.  All we did at the meet

15  and confer is go through this list, I said the name of

16  the document request and read it and asked what the

17  status was. And what we got on virtually every one is,

18  okay, well those documents live here, I will go make a

19  request. You know, it's very clear that defendants did

20  not view this as something they needed to do until the

21  Court specifically ordered it.

22           MS. WEISS:  That's, that's not accurate at

23  all.

24           THE COURT:  Go ahead, Ms. Weiss. I mean for

25  each of these categories have people been working on

```
 1                        PROCEEDINGS                    115

 2   getting them or not?

 3           MS. WEISS:  For some of the categories,

 4   absolutely but, Your Honor, a lot of them were either

 5   unclear or plaintiffs -- defendants objected to and

 6   then we withdrew objections, it's not as clear cut.

 7   And I don't have all my notes from that meet and

 8   confer with me so I can't tell you everything that

 9   happened, unfortunately, I didn't think that that was

10   necessary to have with me today for today's

11   conference. But I think Mx. Green is generalizing

12   quite a bit.

13           THE COURT:  All right, let's, let's leave it,

14   let's -- give me a second.  Whatever this order is,

15   Mx. Green, I mean how is it phrased, I mean is it all

16   of documents on this list to which objection has not

17   been made and is that, does that make it clear?

18           MX. GREEN:  I think that the answer is, you

19   know, produce, shall produce all documents identified

20   in document identifier or shall, you know, I mean, you

21   know, end up with the basic thing that we should have

22   gotten in the first document, the first set of

23   objections which is state what's being withheld and

24   why, if anything is being withheld. Obviously, we also

25   need a privilege log on that day if there is anything
```

PROCEEDINGS                              116

1

2  being withheld and we need, but, you know, I think

3  that these are all things and we picked these

4  categories because they were not ones where defendants

5  stated they were withholding documents.

6          MS. WEISS:  Your Honor, I also just want to --

7          THE COURT:  Some of these have been produced,

8  right, I mean, or it's already been covered by things

9  we've talked about.

10          MS. WEISS:  Yes, Your Honor.

11          MX. GREEN:  Some and in part.  But, for

12  example, let's take stop reports, that's document

13  request 10, we talked for the first time on Wednesday

14  about defendants gathering stop reports. There is no

15  objection to producing stop reports, stop reports are

16  something that's required, as I understand it, by a

17  Court order in *Floyd* which is a stop and frisk case,

18  and, you know, we just don't know when they are going

19  to get them to us. And, you know, that item has been

20  on this list since September 10th and it took until the

21  beginning of February to even have them start

22  searching for them.

23          MS. WEISS:  Your Honor, if I may just point

24  out that the September 10th letter, if I'm not

25  mistaken, referred to one, one of plaintiffs',

PROCEEDINGS                          117

1

2  consolidated plaintiffs' discovery requests. The meet

3  and confer that we had this past week extended to

4  their second or supplemental request which had 101

5  requests, it was not part of the motion. We discussed

6  it anyway because we understand that there are items

7  in there that might not have yet been located. So not

8  everything here was at any point the subject of a

9  motion. Not to say that we're not --

10          MX. GREEN:  Your Honor, that's not true, we

11  moved on the second consolidated request, too, because

12  they didn't, they didn't give us requests that

13  complied with the 2015 amendment. And the Court

14  ordered us to meet and confer on those immediately at

15  the beginning of January, it has been the subject of a

16  motion.

17          MS. WEISS:  Okay, I apologize, that is right,

18  I -- that's right.

19          THE COURT:  I keep trying, I keep trying to

20  get the City to just state what they're producing and

21  what they're objecting to, and you're saying Mx.

22  Green, you haven't even gotten that?

23          MX. GREEN:  I mean I think we've gotten closer

24  on the second consolidated request. Again, you know,

25  some of what we were agreeing to, perhaps wrongly, we

```
 1                         PROCEEDINGS                    118

 2   assumed that we'd be able to, given what's happened,

 3   ask for an extension. But, you know, we're certainly

 4   not at the end of that, we don't have a privilege log

 5   for, you know, substantial privilege assertions and,

 6   you know, it's also true that a lot of the content of

 7   our meet and confers gets lost between them.  In that

 8   particular instance, Ms. Weiss decided that there were

 9   no privilege assertions that warranted a privilege log

10   despite the fact that they're withholding massive

11   amounts of documents on privilege bases, and we had to

12   just go back through on Wednesday the meet and confer

13   we'd had just the previous week to remind her that

14   there are privilege assertions she's making.

15             MS. WEISS:  Some of which were withdrawn, that

16   was discussed.

17             MX. GREEN:  Right, no, some were withdrawn but

18   then her response to having committed to getting us a

19   privilege log by February 4th and then not doing it

20   was, well, I don't think that we need it anymore. And

21   then, you know --

22             MS. WEISS:  No, that's --

23             MX. GREEN:  It's absurd.

24             THE COURT:  All right --

25             MX. GREEN:  And, you know, this is not just,
```

```
1                        PROCEEDINGS                    119
2  these are not the only requests, right?  As you know,
3  we just ordered today responses to individual RFPs
4  that are still outstanding, there was just an
5  agreement reached on the motion by Mr. Rankin at the
6  very beginning that, you know, we've agreed on, but
7  like there are -- like the amount of material we're
8  missing is massive.
9            THE COURT:  All right, I'm prepared to do
10 this. I'm prepared to order the production by 30 days
11 from now which is going to be March 11th.  If I get a
12 request for, you know, 60 or maybe something a little
13 more extension on the depositions, we'll try to figure
14 that out.  I just, I'm just trying to figure out, the
15 thing I'm ordering is what pages of September, the
16 September 10th letter?
17            MX. GREEN:  So that's going to be pages 5
18 through 8.
19            THE COURT:  That's what's the subject of the
20 March 1st conference?
21            MX. GREEN:  Yes.  Yes.
22            MS. WEISS:  Your Honor, there was a lot more,
23 I think I'm confused.
24            MX. GREEN:  Let me propose this, Your Honor,
25 we can draft an order, if defendants commit to giving us
```

```
 1                        PROCEEDINGS                120

 2   approval or any objections within 24 hours, we can probably

 3   get that out to the Court by the end of next week.

 4             THE COURT:  And order to what exactly is being

 5   produced by March --

 6             MX. GREEN:  Yes, exactly.  Exactly.

 7             THE COURT:  Okay, I mean, did I say the 8th, what

 8   did I say?

 9             MS. WEISS:  You said the 11th initially.

10             THE COURT:  The 11th, yes.

11             MX. GREEN:  I mean, you know, Your Honor, I just

12   would say, right, most of these motions were made

13   January 1st, 2nd, 3rd, 4th so, you know, this is us

14   finally getting documents 60 days after we've moved to

15   compel them, you know, it's a lot of time.

16             THE COURT:  All right, so you'll give me a

17   proposed order on that.

18             MX. GREEN:  Yes, and can we ask that the City

19   just either give us objections with specificity and

20   propose alternate language within 24 hours of getting

21   our draft which we'll get to them by close of business

22   or by the end of the night Monday?

23             MS. WEISS:  That's fine.

24             THE COURT:  Okay, you'll respond on Tuesday.

25   Okay, I'm a little concerned that, you know, I've done
```

PROCEEDINGS                    121

1
2   a lot of oral orders and they still count. I wouldn't

3   mind someone putting it in a form that I could sign.

4   You don't have to worry about 370 and 374 because I

5   have those, but to the extent there were other orders,

6   I think it would be a big help to give me a draft

7   order. So, for example, you know, producing the audit

8   trail logs and I forget what date, I think I had two

9   weeks, and then a brief sanctions order, same thing

10  for you, Mx. Green, for 369 --

11          MX. GREEN:  Right, and the proposed sanction

12  order, prophylactic order that we discussed, Your

13  Honor.

14          THE COURT:  Well that's a proposal.

15          MX. GREEN:  Oh, sorry, yes.

16          THE COURT:  I want to implement what I said

17  today, not merely by my having said it, but also in a

18  written order.

19          MX. GREEN:  Understood.

20          THE COURT:  (indiscernible) I actually ordered

21  and that's what I'd just like to get a draft of. And

22  you can just email it to me, cc the other side, if

23  they want to complain about it they can give their own

24  order.

25          MX. GREEN:  Understood.  And I assume it makes

```
 1                        PROCEEDINGS                 122

 2  sense to separate --

 3            THE COURT:  Anything I ordered other than 370

 4  and 374.

 5            MX. GREEN:  Right, and I assume it makes sense

 6  to send two separate orders, one being the things you

 7  actually ordered and then, second, the proposed

 8  sanctions order on --

 9            THE COURT:  Yes, your proposed sanctions order

10  should be filed on ECF.

11            MX. GREEN:  Okay, perfect.

12            THE COURT:  What I'm talking about you can

13  just email to me because it's merely implementing

14  something I've already said. Anything that I haven't

15  ordered you should file on ECF.

16            MX. GREEN:  Understood.

17            THE COURT:  Okay, so I think we're done.

18  Anything else, Mx. Green?

19            MX. GREEN:  No, Judge.

20            THE COURT:  Ms. Weiss, anything?

21            MS. WEISS:  No, Your Honor.

22            THE COURT:  Okay, thank you, everyone.  Good-

23  bye.

24                 (Whereupon the matter is adjourned.)

25
```

123

C E R T I F I C A T E

      I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, In Re: New York City Policing During Summer 2020 Demonstrations, docket #20cv8924, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature _____*Carole Ludwig*_____

            CAROLE LUDWIG

Date:  February 15, 2022