

February 16, 2022

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

Re: <u>In re: New York City Policing During Summer 2020 Demonstrations,
1:20-CV-8924 (CM) (GWG) — This Letter Relates to All Cases</u>

Dear Judge Gorenstein:

I write on behalf of the Plaintiffs in the consolidated case above. As discussed at Friday's conference, I write to update the Court on the meeting the Court ordered take place today, at which the parties discussed Plaintiffs' demands for certain records related to the Black Lives Matter ("BLM") protests that are the subject of these consolidated actions, as well as certain categories of documents from certain prior protests, including:

1. Mass Arrest Reports[1] created related to protests dating back to 2000 (*see* ECF Nos. 348 at 1, 341 at 3-4, and 369 at 2-5), including the 2000-2002 World Economic Forum ("WEF")-era protests; the 2004 Republican National Convention ("RNC")-era protests, which began in 2003; the 2011-2012 Occupy Wall Street ("OWS") protests; Black Lives Matter ("BLM") protests between 2013 and 2020 (the "Prior Protests"); and pro-Trump car caravans on November 1, 2020;

2. "49's" / "UF-49's" / "To/From"/ Unusual Occurrence Reports / Unusual Incident Reports (collectively "49's" in this letter)[2] regarding (a) the BLM protests that are the

---

[1] A Mass Arrest Report is a spreadsheet generated by the NYPD's Criminal Justice Bureau ("CJB") that tracks certain information related to protest at which there are more than five arrests and the NYPD actives a Mass Arrest Processing Center ("MAPC"), including the date, time, and location of each arrest; the time and date the arrestee arrives at the MAPC; their name, gender, race, age, and address; the name and command of the assigned arresting officer; the arrest or summons number; the top charge number; whether the top charge is a violation, misdemeanor, or felony; other charges; whether the arrest was processed online (for live arraignment before a judge), or with a Criminal Court Summons ("C-Summons") or Desk Appearance Ticket ("DAT") requiring the arrestee to appear later for arraignment; and when the arrestee was released from the MAPC. *See, e.g., Marom v. City of New York,* No. 15-CV-2017 (PKC)(SN), 2016 US Dist LEXIS 165536 (SDNY Nov. 30, 2016) (ordering Defendants to produce Mass Arrest Reports with only the personally identifying information of third-party arrestees redacted); <u>Marom v Esposito</u>, 2017 US Dist LEXIS 60969 (SDNY Apr. 21, 2017) (upholding November 30, 2016 Order on Rule 72 review).

[2] UF-49's are memoranda, reports, and other internal NYPD communications that typically either follow a form that is like a worksheet or appear like memoranda, on typed letterhead. UF-49's related to the BLM protests that are the subject of this action were the topic of discussion at the June 24, 2021 discovery conference in this matter. Because, the

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



subject of these consolidated actions as well as (b) the Prior Protests and November 1, 2020 pro-Trump car caravans;

3. After-Action Reports[3] related to the Prior Protests and the November 1, 2020 pro-Trump car caravans;

4. Deposition transcripts and exhibits from 30(b)(6) witnesses and NYPD members ranking Lieutenant and above from the Prior Protests; and

5. Documents from Defendant City's Civilian Complaint Review Board ("CCRB") and the NYPD's Internal Affairs Bureau ("IAB") regarding complaints, investigations, and discipline arising from the Prior Protests.

Unfortunately, although the parties discussed each category of documents at least to some extent, today's meeting was largely a failure — and we remain apparently weeks away from finding out what the burden of collecting the vast majority of both the UF-49's related to these cases and the prior protest documents actually *is*. Instead, as has been consistent throughout this litigation, Defendants continue to be unable to state basic burden information like "what's involved, … how many hours are involved, how much personnel is involved" and so on related to searching for or collecting the documents in question. 2022-02-11 Tr. 57:3-6. Indeed, at today's meet and confer, Defendants were not prepared to talk about many of the issues the parties knew in advance were on the table in any detail, admitted they had not yet begun conducting searches (or even asking the relevant custodians basic questions about how searches could or should be conducted).

So, we ask that the Court actually hold the conference tentatively scheduled for this Friday, and direct Defendants to bring people to that conference with personal knowledge of the actual burden involved in searching for and producing the documents outlined above within the NYPD, the CCRB, and the Law Department, within the relevant electronic system(s) and physical locations where such documents are stored, including in the archives those agencies maintain internally and off-site related to the Prior Protests.

---

Court found, "there [was] something not making sense" about what Defendants had said about these documents when Plaintiffs' counsel first began pressing the Court to order their production, the Court ordered Defendants to produce "some examples of" the UF-49's they were talking about to Plaintiffs' counsel. *See* 2021-6-24 Tr. 27:17-28:2-31:8. Although Plaintiffs' counsel reiterated their demands for UF-49's, and the samples the Court had ordered produced, in multiple meet and confers and follow-up communications, throughout July and August of 2021 and thereafter, Defendants have simply never produced the UF-49 examples the Court ordered them to produce on June 24, 2021.

[3] After-Action Reports are 49's or other internal NYPD documents that contain frank evaluations and critiques of NYPD planning for and response to protests and other, similar incidents. *See, e.g., Allen v City of NY*, 03 Civ. 2829 (*KMW)(GWG), 2007 US Dist LEXIS 15, at *70-71 (SDNY Jan. 3, 2007) (discussing WEF-related After-Action Reports); *MacNamara v City of NY*, 2007, 04 Civ. 9216 (KMK)(JCF), US Dist LEXIS 17478, at *6-18 (SDNY Mar. 14, 2007) (discussing RNC-related After-Action Reports); *In re NY City Policing During Summer 2020 Demonstrations,* No. 20-cv-8924 (CM)(GWG), 2021 US Dist LEXIS 128437, at *41 (SDNY July 9, 2021) (citing the *Sow* Plaintiffs' allegations that "in the past, the NYPD created "after-action reports" that documented and analyzed plans for and responses to protests in the early 2000s; that some of the reports praised officers for using "militarized tactics"; and that after several of those reports were made public during the course of the litigation over the 2004 RNC protests, the[] NYPD stopped creating these reports altogether").

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



More broadly, this fits into Defendants' continued pattern of view Court orders as optional or subject to creative interpretation.[4] Last Friday, the Court issued an unambiguous order: Defendants were to come to a meeting to so the parties could "finally figure this out and I can understand what the burdensomeness issue is" as to the documents above. *Id.* 74:10-23. The Court warned Defendants in clear terms: "Ms. Weiss, you have responsibility in the meantime, it's not just NYPD, you've got to get your ducks in a row completely about what the Law Department can get its hands on, what it would take to get something from archives … how they're identified and what the big deal is, you can't just have guesses about based upon some experience you once had in the past." *Id.* 76:14-24. Instead, at this meeting, Defendants did not even know what company currently held their archives from 2002 and 2004. On that topic, notably, Defendants used the example of "documents back from the" WEF-era demonstrations in their arguments to the Court on June 15, 2021 that searching for records from that era that "had been archived" and "put into storage" might, Defendants imagined at that time, be overly burdensome, however at that time they were "not yet sure." 2021-06-15 Tr. 8:5-20. Despite their knowing about the need to understand, and be able to meet and confer meaningfully about, any burdens involved in searching for and producing those (and other) archived records, since mid-2021, Defendants were no more prepared to discuss the burdens involved in searching for or producing archived records today than they were in the middle of last year.

This letter is not meant to exhaustively list the issues arising from the meet and confer. Rather, we only write to highlight some of the issues, in hopes that perhaps Defendants will have better answers for the Court when we meet later this week. By way of incomplete illustration of some of today's meet and confer, Defendants:

- Have not searched for Mass Arrest Reports from *any* era, although the CJB has historically maintained all such Mass Arrest Reports in a single, centralized location on a shared drive;
- Had no information on searches wthin *any* NYPD commands for 49's from *any* era, including 49's from the protests at issue in these consolidated actions, although Defendants well know which commands were involved in planning for policing, policing, and evaluating the policing of, the relevant protests;
- Could not say where any such Mass Arrest Reports or 49's were, who sent or received them, or what it would take to collect them;
- Did not have any information about which Prior Protest documents are stored on NYPD shared drives, or how the relevant shared drives are organized and searchable;
- Do not know how many Prior Protest documents are in storage, or which, or where;
- Do not have indices of any such Prior Protest documents in storage, and believe even getting any such index would take two weeks;
- Did not have specific information about how CCRB and IAB records arising from

---

[4] In fact, in the letter just filed, Defendants have attempted to re-write this Court's clear order directing that privilege logs must be produced at the same time as documents.



Page 3 of 4

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



Prior Protests were stored and could be searched;
- Did not know if or to what extent Prior Protest-related documents could be searched by "Event Code," "Detail Number," or other, similar keyword;
- Said searching for certain documents would take herculean efforts when common sense and/or past experiences in similar cases have shown that there are much simpler ways of searching (like asking the relevant custodians which documents are stored where and how they are searchable);
- Stated that all Defendants could provide was information about what "was *likely* out there"; and
- Did not think Defendants would need to discuss the existence, custodians, capacity to search for, or other topics related to these documents on a "granular level" at the meet and confer.

At the end of the meet and confer, Defendants asked for yet another two weeks to try to gather basic information about what burden would *in fact* be involved in producing various documents. If Defendants were unable to do what the Court ordered at this Court-ordered meet and confer — which was to "get your ducks in a row completely about what the Law Department can get its hands on, what it would take to get something from archives … how they're identified and what the big deal is" — they should have sought relief. In fact, the Court warned them about this too: "by the way, that's advice for the future, if I order something and you feel you can't do it, you can't just blow it off, you have to do something about it, do you understand that, Ms. Weiss?" 2022-02-16 Tr. 75:24-76:4.

At this stage, if Defendants still cannot answer with any clarity these basic questions, we would ask the Court to consider whether directing the parties to propose appropriate adverse inferences about the history of unconstitutional policing in New York would be appropriate — since even finding out what it would take to gather the documents that would provide that information appears to simply be impossible at this stage.

As ever, we thank the Court for its continued time and attention.

Respectfully submitted,

/s/
_____

J. Remy Green
   *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow, Minett, & Hernandez Plaintiffs,
on behalf of all Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 4 of 4

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com