UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

In Re: New York City Policing During Summer 2020       :
Demonstrations                                          :       Index No. 20-cv-8924 (CM)(GWG)
                                                       :
                                                       :
                                                       :
                                                       :
                                                       :
                                                       :
                                                       :
                                                       :
                                                       :
------------------------------------------------------------------- x

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S RULE 72 OBJECTIONS

**GEORGIA M. PESTANA**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007


By:    Jenny Weng
       *Senior Counsel*
       Special Federal Litigation Division
       (212) 356-2648


Dated:    New York, New York
          February 21, 2022

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES………………………………………………………………..iii

PRELIMINARY STATEMENT…………………………………………………………….1

RELEVANT FACTS AND PROCEDURAL HISTORY………………………………….....3

LEGAL STANDARD……………………………………………………………………….5

ARGUMENT

I.  Plaintiff's Motion Should Be Denied Because the
    Magistrate Judge's Order is Not Clearly Erroneous
    Or Contrary to Law…………………………………………………………6

    A.  The Magistrate Judge's Order Correctly Held
        That A Separate Showing of Prejudice or a
        Risk of Prejudice is Not Required……………………………………6

        1.  None of the case law plaintiff cites supports its
            argument that a separate showing of prejudice
            is required for a disqualification motion………………………7

        2.  Plaintiff's argument purportedly based in the
            Federal Rules of Evidence likewise fails to
            establish that a separate showing of prejudice
            is required for disqualification………………………………12

    B.  Even if the City Had Been Required to Demonstrate
        Prejudice to Prevail on Its Motion to Disqualify Dr.
        Maguire, the City's Motion Papers Provide Ample
        Evidence of Prejudice…………………………………………..14

        1.  The City's disqualification motion provided
            substantial evidence of the risk of prejudice
            should plaintiff retain Dr. Maguire, based on
            the volume of privileged and confidential
            information disclosed to Maguire during his
            consultancy…………………………………………………..15

        2.  Maguire's alleged failure to recall any privileged
            or confidential information disclosed to him by
            the City, even if true, is irrelevant to the
            disqualification inquiry………………………………………17

3.  Plaintiff's claim that retaining Dr. Maguire
    could not possibly prejudice the City because
    Maguire performed only "forward-looking"
    analysis in his consultancy for the City is
    easily disproved……………………………………………...19

4.  The "wall" established by the City between
    the OCC Review team and the City attorneys
    in the instant litigation is irrelevant to the issue
    of prejudice in this instance…………………………………19

II.  The Magistrate Judge's Decision is Not Contrary
     to Law For Failing to Consider Less Drastic Remedies…………………20

CONCLUSION……………………………………………………………………………..23

**<u>Table of Authorities</u>**

**<u>Cases</u>**                                                                                                                                  **<u>Pages</u>**

*Agron v. Trustees of Columbia Univ. in City of New York,*
    176 F.R.D. 445 (S.D.N.Y. 1997) ...................................................................12, 13

*In re Ambassador Group, Inc., Litig.*,
    879 F. Supp. 237 (E.D.N.Y. 1994) ..................................................................8, 11

*Auto-Kaps, LLC v. Clorox Co.*,
    No. 15-cv-1737 (BMC), 2016 U.S. Dist. LEXIS 37097,
    2016 WL 1122037 (E.D.N.Y. Mar. 22, 2016)................................14, 18, 20, 21, 22

*Easley v. Cromartie,*
532 U.S. 234 (2001) ...........................................................................................5

*Eastman Kodak Co. v. Kyocera Corp.*,
    No. 10-cv-6334, 2012 U.S. Dist. LEXIS 132436
    (W.D.N.Y. Sept. 17, 2012) ......................................................................8, 9, 10, 11

*Edmonds v. Seavey*,
    No. 08 Civ. 5646 (HB), 2009 U.S. Dist. LEXIS 62548
    (S.D.N.Y. July 19, 2009) .....................................................................................5

*Fielding v. Tollaksen*,
    510 F.3d 175 (2d Cir. 2007)................................................................................5

*Gordon v. Kaleida Health*,
    No. 08-CV-378S, 2013 U.S. Dist. LEXIS 73334
    (W.D.N.Y. May 21, 2013) .......................................................................8, 11, 12

*Great Lakes Dredge & Dock Company v. Harnischfeger Corp.*,
    734 F. Supp. 334 (N.D. Ill. 1990) .....................................................................8

*Grioli v. Delta Int'l Mach. Corp.*,
    396 F. Supp. 2d 11 (E.D.N.Y 2005) ...................................................................6

*Hewlett- Packard Co. v. EMC Corp.*,
    330 F. Supp. 2d 1087 (N.D. Cal. 2004) ...........................................................8, 11

*Junger v. Singh*,
    514 F. Supp. 3d 579 (W.D.N.Y. 2021)......................................................6, 14, 15

*Loc. 3621, EMS Officers Union v. City of New York*,
    No. 18-cv-4476 (LJL)(SLC), 2021 U.S.
    Dist. LEXIS 104810 (S.D.N.Y. June 2, 2021)....................................7, 8, 9, 10, 20

*In re Namenda Direct Purchaser Antitrust Litig.*,
  No. 15-cv-7488 (CM), 2017 U.S. Dist.
  LEXIS 134047 (S.D.N.Y. Aug. 21, 2017).................................................................18, 23

*In re New York City Policing During Summer 2020 Demonstrations*,
  2021 WL 4344919
  (S.D.N.Y. Sept. 24, 2021).................................................................................................16

*Palmer v. Ozbek*,
  144 F.R.D. 66 (D. Md. 1992)..............................................................................................8

*Paul ex rel. Paul v. Rawlings Sporting Goods Co.*,
  123 F.R.D. 271 (S.D. Ohio 1988).......................................................................................9

*Samad Bros. v. Bokara Rug Co.*,
  No. 09 Civ 5843 (JFK), 2010 U.S. Dist. LEXIS 132446
  (S.D.N.Y. Dec. 13, 2010)....................................................................................................5

*United States v. U.S. Gypsum Co.*,
  333 U.S. 364 (1948).............................................................................................................5

*Winfield v. City of New York*,
  No. 15 Civ 5236 (LTS) (KHP), 2017 U.S. Dist. LEXIS 182021
  (S.D.N.Y. Nov. 2, 2017).......................................................................................................5

*Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*,
  No. 15 Civ. 4546 (LGS), 2018 U.S. Dist.
  LEXIS 8996 (S.D.N.Y. Jan. 19, 2018) ...............................................................................5

## Statutes

28 U.S.C. § 636(b)(1)(A)............................................................................................................5

Fed. R. Civ. P. 72.........................................................................................................1, 2, 12, 23

**<u>Statutes</u>**                                                                                            **<u>Pages</u>**

Fed. R. Civ. P. 72(a) ...............................................................................................1,3, 4, 5, 12, 15

Fed. R. Evid. 402 ...................................................................................................................12

Fed. R. Evid. 403 ...................................................................................................................12

## PRELIMINARY STATEMENT

Defendant City of New York ("City"), by its attorney, Georgia M. Pestana, Corporation Counsel of the City of New York, respectfully submits this memorandum of law in opposition to the People of the State of New York's ("plaintiff's") Rule 72 objections.[1] Plaintiff wholly failed to meet the high burden required to set aside the Magistrate Judge's thorough and well-reasoned Order granting the City's motion to disqualify Dr. Edward Maguire as an expert witness. Plaintiff fails to cite to any infirmity or other misapplication of the law that would render the Order "contrary to law." Fed. R. Civ. P. 72(a). Instead, plaintiff argues that the City failed to make a showing that the City was not required to make and incorrectly asserts that the Magistrate Judge's Order failed to make a finding that it did in fact make.

Contrary to plaintiff's claims, once the court found that the City had borne its burden of establishing that, (a) a prior confidential relationship existed between the City and Dr. Maguire, and (b) the City had disclosed confidential information to Maguire that was directly relevant to the instant litigation, the Magistrate Judge's Order correctly held that the City did not need to separately demonstrate prejudice or a risk of prejudice in order to prevail on its motion to disqualify Maguire.  None of the cases plaintiff cites in support of its argument to modify or set aside the Order on this ground actually supports plaintiff's reasoning, nor does plaintiff's attempt to rely on the Federal Rules of Evidence.  Moreover, even if the City *were* required to make a

---

[1] The People of the State of New York's Objections to Magistrate Judge Gorenstein's January 24, 2022 Order Granting Defendant City of New York's Motion to Disqualify, filed Feb. 7, 2022 (Docket # 382) ("Objections Brief" or "Objections Br."); *see also* Opinion & Order of Magistrate Judge Gabriel W. Gorenstein, filed Jan. 24, 2022 (Docket # 361) ("Order").

showing of prejudice in order to prevail on its motion to disqualify Dr. Maguire, its motion papers provided ample evidence to clear this bar.

Plaintiff's strained arguments that retaining Dr. Maguire could not possibly prejudice the City because, *inter alia*, Maguire does not recall any privileged or confidential information that the City disclosed to him during their confidential relationship; Maguire performed only prospective analysis as a consultant with the City; or the "wall" established between the City and the OCC's Review Team precludes any possibility of prejudice to the City, are each factually dubious and simply not the standard of law.

Nor can plaintiff's Rule 72 motion succeed on its argument that the Magistrate Judge's Order is contrary to law for not considering "less drastic" remedies than disqualification. Plaintiff's argument that Dr. Maguire's expertise is so rarefied and unique that he, alone, can adequately serve the plaintiff's – and the public's – interest in this case remains unconvincing. This is particularly so in light of the fact that Dr. Maguire's *curriculum vitae* reveals that he collaborates with one or more co-authors on publication – some of whom would presumably be qualified to opine on Maguire's areas of expertise, either individually or in combination. Plaintiff's public interest argument also falls flat when compared to the even greater public interest served by encouraging and promoting open and honest internal self-reviews among public entities and agencies such as the City and the NYPD, with the assistance of trusted and qualified third-party experts, without fear that their experts will be used as a weapon against them in a future related proceeding.  The instant dispute involves a particularly troublesome circumstance in that plaintiff seeks to retain the very expert that defendant City previously engaged in an undisputed confidential relationship, and to whom the City disclosed a large volume of privileged and confidential information on the very topic at issue in this litigation and

on the very subject for which plaintiff wishes the expert to opine.  Given these facts, the Magistrate Judge's Order disqualifying Dr. Maguire was entirely consistent with the law.

For these as well as the reasons stated below, and as further detailed in the City's papers filed in support of its motion for disqualification, plaintiff's Rule 72(a) motion should be denied in its entirety.

## RELEVANT FACTS AND PROCEDURAL HISTORY

On June 20, 2020, New York City Mayor Bill de Blasio issued Executive Order No. 58, directing the Commissioner of Investigation and the Corporation Counsel to undertake "a review into the response of the New York City Police Department ("NYPD") to the protests that took place throughout the City from May 28, 2020" through June 20, 2020; to analyze "factors that may have impacted the events at protests during the Review period;" to produce "a written public report;" and to identify "any recommendations . . . about any additional areas of study and engagement worth pursuing." Declaration of Gavin B.  Mackie in Support of Defendants' Motion to Disqualify Plaintiff's Expert Witness, filed Nov. 4, 2021 (Docket # 313-1) ("Mackie Decl.") ¶ 3; Executive Order No. 58, Exhibit B to Mackie Decl., filed Nov. 4, 2021 (Docket # 313-1) at 62 ("E.O. 58").  Shortly thereafter, the Corporation Counsel convened a team of internal employees ("Review Team") to carry out the mayor's directives in E.O. 58; the Review Team, in turn, "retained and consulted with third-party subject matter experts, including Edward Maguire . . . to provide specialized expertise throughout the analysis and the drafting of the Corporation Counsel Report." Mackie Decl. ¶¶ 4, 7.  On July 8, 2020, Dr. Maguire signed a Consultant Non-Disclosure Agreement with the City and the Corporation Counsel Report ("OCC Report") was released in December 2020. *Id.* ¶¶ 2, 8; Maguire Non-Disclosure Agreement, Exhibit C to Mackie Decl., filed Nov. 4, 2021 (Docket # 313-3).

Over the course of this consultancy, Dr. Maguire "receive[d] a large volume of confidential information." Mackie Decl. ¶ 11. Maguire played an active and varied role in the Review Team's review, analysis, and preparation of the OCC Report. *See*, *e.g.*, Mackie Decl. ¶ 12 ("[Maguire] assisted in developing framing questions and had access to and participated in the Review Team's internal deliberations and conversations at every step of the analysis."). Among other materials and information disclosed to Dr. Maguire, which Magistrate Judge Gorenstein ruled were protected by the deliberate process privilege, Maguire "reviewed and provided extensive feedback on drafts of the [OCC Report]." *Id.* ¶ 14; *see also* Order at 11-12, 14.

Within months of Dr. Maguire's confidential consultancy with the City, plaintiff approached Maguire about retaining him as an expert witness in this litigation, *i.e.*, sometime prior to June 16, 2021, when plaintiff first informed the City if its intention to retain Maguire. Declaration of Elissa B. Jacobs in Support of Defendants' Motion to Disqualify Plaintiff's Expert Witness, filed Nov. 4, 2021 (Docket # 313-2) ("Jacobs Decl.") ¶ 2. Following a series of meet-and-confers during which defendants registered their objections, citing obvious conflict of interest concerns, plaintiff confirmed its formal retention of Dr. Maguire on Sept. 1, 2021. *Id.* ¶ 5.

Accordingly, defendant City moved to disqualify Dr. Maguire as plaintiff's expert. The motion was fully briefed as of Dec. 3, 2021, and Magistrate Judge Gorenstein's Order granting the City's motion to disqualify Dr. Maguire was issued on January 24, 2022. *See* Docket Nos. 313, 321, 328, and associated filings; *see also* Order. Subsequently, on February 7, 2022, plaintiff submitted Objections to the Magistrate Judge's Order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, and further moved to modify or set aside the Order as "contrary to law." Objections Br. at 1.

## **LEGAL STANDARD**

A district court may modify or set aside any portion of a magistrate judge's non-dispositive over only if it is found to be clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A); *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); *Asch/Grossbardt Inc. v. Asher Jewelry Co.*, 2003 U.S. Dist. LEXIS 2837, at *1-2 (S.D.N.Y. Feb. 27, 2003); Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Xiaohong Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15 Civ. 4546 (LGS), 2018 U.S. Dist. LEXIS 8996, at *3 (S.D.N.Y. Jan. 19, 2018) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). *See also Easley v. Cromartie*, 532 U.S. 234, 242 (2001). "A ruling is contrary to law if it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Xie*, 2018 U.S. Dist. LEXIS 8996, at *3 (quoting *Winfield v. City of New York*, No. 15 Civ. 5236 (LTS) (KHP), 2017 U.S. Dist. LEXIS 182021, at *5-6 (S.D.N.Y. Nov. 2, 2017)).

That "reasonable minds may differ on the wisdom of granting [a party's] motion is not sufficient to overturn a magistrate judge's decision." *Winfield*, 2017 U.S. Dist. LEXIS 182021, at *6 (quoting *Edmonds v. Seavey*, No. 08 Civ. 5646 (HB), 2009 U.S. Dist. LEXIS 62548, at *7 (S.D.N.Y. July 19, 2009)). Indeed, magistrate judges "are afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused." *Thai Lao Lignite (Thailand) Co.*, 924 F. Supp. 2d at 511 (S.D.N.Y. 2013) (Wood, J.). The party seeking to overturn a magistrate judge's decision—plaintiff here—"thus carries a heavy burden." *Samad Bros. v. Bokara Rug Co.*, No. 09 Civ. 5843 (JFK), 2010 U.S. Dist. LEXIS 132446, at *4 (S.D.N.Y. Dec. 13, 2010).

# ARGUMENT

I.   **Plaintiff's Motion Should be Denied Because the Magistrate Judge's Order is Not Clearly Erroneous or Contrary to Law.**

### A. The Magistrate Judge's Order Correctly Held That a Separate Showing of Prejudice or a Risk of Prejudice is Not Required.

Magistrate Judge Gorenstein's Order held that, to prevail on a motion to disqualify an adversary's expert witness when the moving party had previously retained that expert, the movant must demonstrate the following two required elements: (1) a prior confidential relationship between the movant and the expert; and, (2) the disclosure of confidential information by the movant to the expert that is relevant to the instant litigation. *Junger v. Singh*, 514 F. Supp. 3d 579, 598 (W.D.N.Y. 2021). Some courts also consider whether "the public [has] an interest in allowing or not allowing the expert to testify . . . ." *Id.* at 599 (quoting *Grioli v. Delta Int'l Mach. Corp.*, 396 F. Supp. 2d 11, 14 (E.D.N.Y 2005)). The Magistrate Judge's Order correctly rejected plaintiff's contention that, once the aforementioned requirements are satisfied, "an additional element must be shown: 'potential prejudice.'" Order at 8. To the contrary, the Order held: "Once the elements of the inquiry are demonstrated, case law imposes no additional burden that the movant prove some specific 'prejudice' that would result if the disclosed information was used against the prior employer." *Id.*

Plaintiff's Objections Brief notes that, "neither the Magistrate Judge nor the City identified any case *rejecting* a prejudice requirement." Objections Br. at 10-11 (emphasis in original). Leaving aside the absurd notion that plaintiff seems to be inquiring why defendant and Magistrate Judge Gorenstein have failed to prove a negative, neither the Magistrate Judge nor the City have represented that prejudice is irrelevant to disqualification. As the Magistrate Judge's Order explained, "[d]isqualification is designed to protect the integrity of the judicial process by ensuring that experts do not use, even unwittingly, confidential information that they learned

from a party in the course of an earlier engagement against that party in a later lawsuit." Document 361, Order at 7 (quoting *Loc. 3621, EMS Officers Union v. City of New York*, No. 18-cv-4476 (LJL)(SLC), 2021 U.S. Dist. LEXIS 104810, 2021 WL 5362256, at *4) (S.D.N.Y. June 2, 2021)).   Thus, disqualification exists to eliminate the risk of prejudice to parties that would necessarily flow from one of the party's former experts sharing, either intentionally or inadvertently, that party's privileged and/or confidential information with the party's adversary in a subsequent proceeding.

### 1.) None of the case law plaintiff cites supports its argument that a separate showing of prejudice is required for a disqualification motion.

Plaintiff cites a litany of cases that it claims support its argument that the Magistrate Judge's Order is contrary to law.   However, each of the cases cited by plaintiff (as well as all those cited in the Magistrate Judge's Order) employs the same standard two-factor test for determining a motion for disqualification.   Contrary to plaintiff's repeated argument, none of these cases requires a separate showing of prejudice by the movant. Instead, plaintiff has misinterpreted these cases, reading into them a requirement for which there actually exists no basis in law. *See*[2] *Loc. 3621, EMS Officers Union v. City of New York*:

> A party seeking to disqualify an expert whom it had previously retained but whom an adversary seeks to use as an expert bears the burden to establish: (1) that it was objectively reasonable for the movant to believe that it had a confidential relationship with the expert and (2) that the movant's confidential information was in fact disclosed to the expert.

---

[2] These cases are all listed on p. 11 of plaintiff's Objections Brief (Document 382) and are listed here in the same order in which they appear on p. 11.

*Loc. 3621,* No. 18-cv-4476 (LJL)(SLC), 2021 U.S. Dist. LEXIS 104810, at *10-11 (S.D.N.Y. June 2, 2021) (internal citation and quotations omitted); *see also, Gordon v. Kaleida Health*, No. 08-CV-378S, 2013 U.S. Dist. LEXIS 73334, at *23 (W.D.N.Y. May 21, 2013) ("The burden is on the party seeking disqualification to show the party's counsel's 'objectively reasonable' belief that a confidential relationship existed with the expert or consultant and that a party's confidential information was 'actually disclosed' to the expert or consultant."); *Eastman Kodak Co. v. Kyocera Corp.,* No. 10-cv-6334, 2012 U.S. Dist. LEXIS 132436, at *22-24 (W.D.N.Y. Sept. 17, 2012) ("In determining whether disqualification is appropriate based on a prior relationship between an expert and the party moving for disqualification, the court should consider whether (1) the movant had a prior confidential relationship with the expert; and (2) the movant had disclosed to the expert confidential or privileged information."); *Hewlett-Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092-93 (N.D. Cal. 2004)) ("In particular, disqualification of an expert is warranted based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation."); *In re Ambassador Group, Inc., Litig*., 879 F. Supp. 237, 242 (E.D.N.Y. 1994) ("Some federal courts have applied a two-pronged test when faced with a motion to disqualify an expert on the basis of the expert's prior relationship with a party: 'First, was it objectively reasonable for the first party who retained the expert to believe that a confidential relationship existed? Second, did that party disclose any confidential information to the expert?") (citations omitted).[3]

---

[3] Plaintiff's Objections Brief at p. 11 additionally cites three non-controlling cases from 1992, 1990, and 1988, respectively: *Palmer v. Ozbek*, 144 F.R.D. 66, 67 (D. Md. 1992); *Great Lakes* Continued…

Each of the above cases can also be factually distinguished from the instant litigation. Significantly, plaintiff misconstrues the language in cases such as *Local 3621, EMS Officers Union v. City of New York* to incorrectly impose a requirement that a movant must separately show prejudice on a motion to disqualify. Plaintiff's error is strikingly obvious in this (mis)quote from its Objections Brief: "The requirement to establish ***'specific and unambiguous' prejudice***, flows from the purpose of the expert-disqualification doctrine." Objections Br. at 11 (citing *Loc. 3621*, 2021 WL 5362256, at *4) (emphasis added). This statement conflates the court's phrasing and grossly misstates that portion of the holding. Instead, the Loc. Court stated that "[t]he party seeking disqualification bears the burden of establishing this standard [two factor test], and cannot do so through 'mere conclusory or *ipse dixit* assertions,' but rather must identify '***specific and unambiguous disclosures*** that if revealed would prejudice the party.'" Objections Br. at 11 (quoting *Kyocera Corp*., 2012 U.S. Dist. LEXIS 132436, at *24 (internal citations omitted) (emphasis added). The court's plain language is clear that there is no separate requirement to establish prejudice, to any degree of specificity, but makes clear that the movant must identify the specific and unambiguous disclosures that were made, and cannot rely on mere generalizations.

As the *Local 3621* Court put it, it is the requirement "that the movant's confidential information was in fact disclosed to the expert." *Loc. 3621*, 2021 U.S. Dist. LEXIS 104810, at

_____

*Dredge & Dock Company v. Harnischfeger Corp.*, 734 F. Supp. 334, 336-38 (N.D. Ill. 1990); *Paul ex rel. Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 280 (S.D. Ohio 1988).

*10-11 (internal citation and quotations omitted). Where this disclosure of confidential, privileged, and relevant evidence is established, prejudice must be necessarily assumed. The language plaintiff cites regarding "identifying specific and unambiguous disclosures" simply refines this element by requiring that evidence of the movant's prior disclosure of confidential information to the challenged expert must be clear, unequivocal, and render the disclosure beyond question. *See*, *e.g.*, *Kyocera*, 2012 U.S. Dist. LEXIS 132436, at *29-30 (court denied plaintiff Kodak's motion to disqualify defendant Kyocera's expert witness, whom Kodak had previously retained as an expert in litigation regarding the same patents at issue in that case, because Kodak's supporting affidavit contained only "conclusory" allegations of confidential disclosures to the challenged expert). Thus, the language cited by plaintiff speaks to the courts' concern with the quality of evidence regarding the movant's disclosure of confidential information to the challenged expert, which the Magistrate Judge properly found that the City met here.

Indeed, the court denied the plaintiffs' motion for expert disqualification in *Local 3621* because the plaintiffs failed to establish that they had previously shared any confidential information with the challenged expert. *Loc. 3621,* 2021 U.S. Dist. LEXIS 104810, at *15-16. Of course, that is not an issue in the instant case. Here, the City submitted evidence with its motion papers detailing specific types of privileged and confidential materials and information that were disclosed to Dr. Maguire in the course of his confidential consultancy with the City. For the same reason, the controlling issue in the *Kyocera* case described above does not apply here. The *Kyocera* court denied plaintiff Kodak's motion to disqualify defendant's expert witness, whom Kodak had previously retained, because Kodak's affidavit attesting to confidential disclosures made to the challenged expert consisted of "conclusory" allegations and

contained no specific information that was disclosed to the expert. *Kyocera*, 2012 U.S. Dist. LEXIS 132436, at *31.

In a scenario much different from the instant circumstances, the court in *Hewlett-Packard Co.* denied the defendant's motion to disqualify the plaintiff's expert witness on the ground that defendant did not disclose any confidential information to the expert. *Hewlett- Packard Co.*, 330 F. Supp. 2d at 1090. Although there was a signed consultation agreement, a lengthy initial meeting and several follow-up conversations, the court found that the defendant did not end up working with the expert, and the defendant could not show that the expert had been privy to any confidential information. *Id.* Quite clearly, the same cannot be said of Dr. Maguire. The City established that confidential information directly relevant to this litigation had been shared with Dr. Maguire and that he had been an integral member of the Review Team. *See generally*, Mackie Decl.; Order at 9-12, 14-15. Once this standard is met, no separate showing of prejudice is required.

In contrast, in *In re Ambassador Group*, despite finding that a confidential relationship existed between the plaintiff and the challenged expert, the court did not find satisfactory evidence of any confidential disclosure by the plaintiff to the expert. 879 F. Supp. at 242. Plaintiff, the movant there, "did not specifically recollect" any confidential information he shared with the expert, and the court held that "vague and ambiguous statements" were insufficient to sustain the motion. *Id.*

Finally, in *Gordon*, the defendants' motion to disqualify the expert entity fundamentally failed on all bases; the defendants could not show that they reasonably believed they were ever in a confidential relationship with the entity, or that any of their confidential information had been or was "highly likely to have been" disclosed to the entity, and moreover, the defendants could

not even show that the entity ever provided "expert services" to them. *Gordon*, 2013 U.S. Dist. LEXIS 73334, at *105-106. None of these infirmities are relevant to the City's thorough and well-documented motion.

In sum, none of the cases plaintiff cites in support of its Rule 72(a) motion hold up under scrutiny, and none provide a basis to modify or set aside the Magistrate Judge's Order.

> **2.) Plaintiff's argument purportedly based in the Federal Rules of Evidence likewise fails to establish that a separate showing of prejudice is required for disqualification.**

Plaintiff additionally argues that Magistrate Judge Goresntein's Order is contrary to law because, by not requiring of the City "a showing of prejudice to justify exclusion of an otherwise qualified expert's testimony," the Order "conflicts with the Federal Rules of Evidence." Objections Br. at 12. As the Order correctly points out, the cases plaintiff cited in its opposition to the City's motion to disqualify Dr. Maguire only confirm that there is no separate requirement that a movant prove "prejudice" will result from the expert's continued involvement. Order at 8. Now, in the Rule 72 Objection Brief before Your Honor, plaintiff argues, for the first time, that this separate requirement comes from Federal Rules of Evidence 402 and 403. Objections Br. at 10, 12-13. Failing to cite to any caselaw or even provide an analysis, plaintiff baldly argues that Magistrate Judge Gorenstein's Order conflicts with Fed. R. Evid. 402 – that "it excludes relevant evidence even though no statute, rule, or constitutional provision demands it, and even without prejudice justifying invocation of Fed. R. Evid. 403." Objections Br. at 13.

The one case, *Agron v. Trustees of Columbia Univ. in City of New York*, that plaintiff cites for the proposition that the court denied a Rule 403 motion to exclude testimony of a defense expert previously retained by the plaintiff, is easily distinguishable, because of the confidential relationship between the City and Maguire and the confidential information relevant

to the instant litigation that the City revealed to Maguire.  176 F.R.D. 445, 450, 54 (S.D.N.Y. 1997).  Significantly, the facts in *Agron* are the opposite of the facts here.  In *Agron*, the expert was retained for the purpose of testifying at trial, not merely consulting, and his opinions were disclosed voluntarily.  Thus, the *Agron* Court reasoned that the expert's opinions were not used solely to assist the movant in preparing a case and were not intended to be kept from the adversary.  Here, on the contrary, Dr. Maguire's consultancy with the City was on a strictly confidential basis, as evidenced by his signed NDA. He was not at liberty to testify publicly about the privileged or confidential information he received in the course of that consultancy, nor would he have the option to make any voluntary disclosures of the same.

Plaintiff's citation to a string of cases for a general proposition about the Court's inherent authority with no further analysis is also unpersuasive.  Objections Br. at 13-14.  And it falls far short of the heavy burden plaintiff must carry to overcome this highly deferential standard of review.  In contrast, Magistrate Judge Gorenstein's Order was thorough and well-reasoned. While the Court was exercising its inherent power, the Court was also expressly following the caselaw and two-factor standard for deciding this issue where the movant was disqualifying an expert based on the confidential relationship between the movant and the expert.  Plaintiff never challenged the standard set forth in defendant's moving papers and plaintiff in this motion before this Court still does not.  Plaintiff is only able to point to these principles in a broad manner because there is no specific requirement that a movant separately show specific prejudice to disqualify an expert.

Significantly, in advancing this new argument, plaintiff wholly fails to address Magistrate Judge Gorenstein's reasoning that "the information given to Dr. Maguire was of a type that is customarily treated as private and was in fact treated as such.  And the information's

13

unauthorized disclosure could harm the governmental interest that the deliberative process privilege was designed to protect." Order at 14. Thus, contrary to plaintiff's assertions, the Court did speak to prejudice and the harm the City would suffer should Maguire not be disqualified under these circumstances. The Court further explained the balancing test and its considerations when analyzing the third element of public interest. There, Magistrate Judge Gorenstein starts off by stating that it balances "the public's interest in preserving judicial integrity and fairness" against "the party's right to the assistance of experts who possess specialized knowledge and the right of such experts to pursue their professional calling." Order at 17 (citing *Auto-Kaps, LLC v. Clorox Co.*, No. 15-cv-1737 (BMC), 2016 U.S. Dist. LEXIS 37097, 2016 WL 1122037, at *2 (E.D.N.Y. Mar. 22, 2016)). After laying out the reasoning and considerations made in this balancing test, the Court correctly concluded that as "the public interest in the integrity of these proceedings is not outweighed by any other interest, disqualification is warranted." *Id.* at 17-21.

### B. Even if the City Had Been Required to Demonstrate Prejudice to Prevail on Its Motion to Disqualify Dr. Maguire, the City's Motion Papers Provide Ample Evidence of Prejudice.

In attacking the Magistrate Judge's Order, plaintiff's Objections Brief also makes the following bald assertions: that "the City did not even attempt to establish . . . prejudice," and that, in any event, the City could not have done so, "both because it failed to identify any particular information whose disclosure would supposedly be prejudicial, and because it is undisputed that Dr. Maguire did not retain and does not remember the particulars of any confidential communications with the City." Objections Br. at 1. The first point is irrelevant, as the City was only required to establish the standard two factors for disqualification (a prior confidential relationship and disclosure of relevant, confidential information); the risk of prejudice flows inherently from a showing of those two elements. *See Junger v. Singh*, 514 F.

Supp. 3d 579, 598-99 (W.D.N.Y. 2021).  Nevertheless, if the City *were* required to demonstrate prejudice or the risk of prejudice, the City's motion papers provided ample evidence of prejudice.  Plaintiff's additional factual allegations and legal arguments that the City could not possibly demonstrate prejudice, or the risk of prejudice, if plaintiff were to retain Dr. Maguire is also flawed because, again, plaintiff misconstrues the applicable standard of law.

> **1.) The City's disqualification motion provided substantial evidence of the risk of prejudice should plaintiff retain Dr. Maguire, based on the volume of privileged and confidential information disclosed to Maguire during his consultancy.**

The City did not make an explicit separate showing of prejudice in its motion papers to disqualify Dr. Maguire because, as set forth above, a party moving to disqualify an adversary's expert when the movant had previously retained that same expert is only required to establish two core factors— and the City did so here.  Order at 8 (citing *Junger*, 514 F. Supp. 3d at 598-99). Nevertheless, even if this Court were to determine that the City must make an affirmative demonstration of prejudice, that bar has been met and exceeded in this instance.  Contrary to plaintiff's assertion, the City demonstrated that a significant amount of privileged and confidential information was disclosed to Dr. Maguire in the course of his confidential consultancy with the City. Specifically, the Mackie Declaration detailed various forms of privileged and confidential materials and information the City shared with Dr. Maguire during his tenure as a consultant to the Review Team, which researched and prepared the Corporation Counsel Report ("OCC Report"). *See generally*, Mackie Decl.; Order at 9-12, 14-15.  Indeed, the Magistrate Judge's Order found that the materials and information identified in the City's motion – "OCC Report drafts, Review Team memoranda disclosed to Dr. Maguire, and conversations between Dr. Maguire and OCC staff" are predecisional and thus the deliberative process privilege applies.  Order at 11-12.

In its Rule 72(a) motion, plaintiff continues to downplay Dr. Maguire's role in the review and the production of the OCC Report, asserting that his only contribution was to advise on a strategic checklist that was ultimately included as a section of the report. *See* Objections Br. at 3, 16-17. But as the Mackie Declaration makes clear, Dr. Maguire "participated in the Review Team's internal deliberations and conversations at every step of the analysis." Mackie Decl. ¶ 12. Dr. Maguire was an integral member of the Review Team and, as such, he "had access to and provided feedback on memoranda developed by the Review Team" throughout the process, *Id*. ¶ 13, and he "reviewed and provided extensive feedback on drafts of the Corporation Counsel Report." *Id*. ¶ 14. Magistrate Judge Gorenstein previously determined that documents Dr. Maguire received are protected by the deliberative process privilege. *See In re New York City Policing During Summer 2020 Demonstrations*, 2021 WL 4344919 (S.D.N.Y. Sept. 24, 2021), at *2-3; Order of November 2, 2021 (Docket #310) ("Nov. 2 Order"). The Magistrate Judge determined that "[t]he OCC had a clear role in making recommendations to the Mayor," and found that "one can hardly think of a document more obviously predecisional than internal discussions regarding a report to a Mayor offering policy recommendations." Order at 11.

While plaintiff now seeks to alter its account of Dr. Maguire's involvement with the Review Team, Magistrate Judge Gorenstein observed in his Order, issued just weeks ago, that the Mackie Declaration was "uncontroverted," remarking, "Dr. Maguire's description of his role in the OCC Review is cursory but ultimately does not contradict Mackie's description." Order at 5-6.

The prejudice to defendant should plaintiff be allowed to retain Dr. Maguire is plain. Maguire was hired by the City to participate in an internal review, signed an NDA, and received "a large volume of confidential information," Mackie Decl. ¶ 11, in connection with his work.

He participated in internal discussions regarding "document requests and other inter-agency communications," Mackie Decl. ¶ 12, and "had access to and provided feedback on memoranda developed by the Review Team that summarized the ACCs' thoughts and impressions regarding [various materials], all of which were produced as part of the process of developing policy recommendations." *Id.* ¶ 13.   Maguire's role in these candid discussions provides a high probability of prejudice and necessitates his disqualification.

> **2.) Maguire's alleged failure to recall any privileged or confidential information disclosed to him by the City, even if true, is irrelevant to the disqualification inquiry.**

Plaintiff's claim that the City cannot establish prejudice if plaintiff were to retain Dr. Maguire, because "it is undisputed that Dr. Maguire did not retain and does not remember the particulars of any confidential communications with the City" is problematic for several reasons, most of which do not even merit discussion here.   Objections Br. at 1.   As an initial matter, it is far from "undisputed" that Dr. Maguire has no memory of any of the privileged or confidential information that the City disclosed to him during the course of Maguire's confidential consultancy, which concluded mere months before plaintiff approached Maguire as a possible expert. (The OCC Report was issued in December 2020; meanwhile, plaintiff approached Dr. Maguire sometime prior to June 16, 2021, when plaintiff first informed defendants of their intention to retain him. Jacobs Decl. ¶ 2. Plaintiff confirmed that it had finalized its retention of Dr. Maguire over the City's objections on September 1, 2021 – less than a year after his confidential engagement with the City concluded.   Jacobs Decl. ¶ 5.   It strains credulity that, as of that point, Dr. Maguire had already forgotten every bit of privileged and/or confidential material and information disclosed to him by the City, particularly given his level of involvement

in the Review Team's research and drafting process and the volume of privileged and confidential information to which he was exposed during that time. Mackie Decl. ¶¶ 11-13.

And indeed, even if the City accepted this far-fetched assertion, what the expert claims he remembers or not remembers is not relevant to the inquiry.   Precedent is firm that disqualification serves to protect against inadvertent as well as purposeful breaches of confidentiality by experts, which may occur consciously or unconsciously; thus, an expert's intent or memory does not factor into the court's decision.   As is well established, "[d]isqualification of a party's expert is designed to protect the integrity of the judicial process by ensuring that experts do not use, ***even unwittingly***, confidential information that they learned from a party in the course of an earlier engagement against that party in a later lawsuit." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488 (CM), 2017 U.S. Dist. LEXIS 134047, at *20   (S.D.N.Y. Aug. 21, 2017) (granting motion to disqualify plaintiffs' expert witness who promised not to "reveal confidential information" obtained through her prior engagement with defendants) (internal citation and quotations omitted) (emphasis added). Even assuming no conscience memory, it is possible that Dr. Maguire retains knowledge of privileged or confidential matters without realizing it, or that he recalls certain information but is unaware of or has forgotten its privileged or confidential status – any of which could be subject to accidental disclosure.  *See also Auto-Kaps*, 2016 U.S. Dist. LEXIS 37097, 2016 WL 1122037, at *4 (An "expert cannot build a [] wall in his own mind, despite his best efforts to do so."). And finally, simply claiming that the expert has forgotten everything the expert learned during the confidential arrangements cannot be sufficient to defeat disqualification. This is an impossible assertion to disprove, no matter how farfetched it may be.

> **3.) Plaintiff's claim that retaining Dr. Maguire could not possibly prejudice the City because Maguire performed only "forward-**

> **looking" analysis in his consultancy for the City is easily disproved.**

Plaintiff's last-gasp argument that Dr. Maguire's work was prospective only and thus has no bearing on the City's liability in this case is contradicted by the evidence in the record and was roundly rejected by Magistrate Judge Gorenstein.  Plaintiff claims that:

> [A]ny information Dr. Maguire may once have learned (but has now forgotten) during his brief work with the Review Team has no bearing on the City's liability in this case. The Review Team's objective was not to arrive at factual or legal conclusions but to developing [sic] *prospective* recommendations for policy reform.

Objections Br. at 16 (emphasis in original).  Accordingly, plaintiff reasons, Dr. Maguire presents no danger of prejudice to defendant City. *Id.*  This argument is specious and nonsensical.  As Magistrate Judge Gorenstein aptly pointed out, "the most obvious" problem with this argument "is that it incorrectly assumes that the deliberations the City shared with Dr. Maguire bore no relation to the City's past actions. In fact, the record shows that the City's deliberations were specifically about what actions to take in the future in response to police conduct that actually occurred in 2020 during the protests." Order at 16.  One certainly cannot advise on what you should do differently if they do not know what was previously done.  Plaintiff completely fails to address Magistrate Judge Gorenstein's problem with plaintiff's argument in this regard.

> **4.) The "wall" established by the City between the OCC Review Team and City attorneys in the instant litigation is irrelevant to the issue of prejudice in this instance.**

Next, plaintiff argues that the City cannot be prejudiced by Maguire switching sides because, while performing work for the City, the Review Team, of which Maguire was a crucial part, was walled off from the litigation team, and, thus, he was not privy to the City's litigation strategy.  Objections Br. at 15.  But it is his access to and ability to use or disclose the City's confidential and deliberative process protected information that is the disqualifier here, not its

litigation strategy. The wall does nothing to protect against that. The wall was not installed to protect the City from the Review Team.  Indeed, the Review Team had full access to the City's confidential and deliberative information, and it was understood that this deliberative and confidential information would be protected by statute and the NDA Maguire signed.  Rather, the sole purpose of the wall was to address any potential conflicts or even the appearance of conflicts that might arise where our office represents City employees being sued in their individual capacities for actions or omissions that fell within the Review Team's jurisdiction. As such, plaintiff's reliance on the wall to defeat disqualification is simply misplaced.  Thus, the City has definitely refuted plaintiff's assertion that the City could not establish prejudice because it failed to identify particular information whose disclosure would be prejudicial to the City.

## II.    The Magistrate Judge's Decision is Not Contrary to Law For Failing to Consider Less-Drastic Remedies

Plaintiff argues that, "[e]ven assuming that the Magistrate Judge correctly articulated the legal standard for disqualifying an expert, the court still erred by invoking the extraordinarily 'drastic remedy' . . . of disqualifying Dr. Maguire *in toto*." Objections Br. at 17 (citing *Local 3621*, 2021 WL 5362256, at *4).  As in plaintiff's opposition brief to defendant's motion to disqualify, plaintiff again attempts to sway the Court by touting "the public's exceptionally vital interest" that it alleges is at stake in the instant litigation, which, coupled with its preferred expert, Dr. Maguire's, "unique expertise," plaintiff claims weigh heavily against disqualification. *See* Objections Br. at 18.    Plaintiff further invokes the public interest by asserting, "[d]isqualifying Dr. Maguire would deprive the People of their 'right to the assistance of experts who possess specialized knowledge' in this case of great public significance . . . ." *Id.* (quoting *Auto-Kaps LLC v. Clorox Co.*, No. 15-cv-1737 (BMC), 2016 U.S. Dist. LEXIS 37097, 2016 WL 1122037, at *2 (E.D.N.Y. Mar. 22, 2016)).

The first flaw in plaintiff's argument is that it remains unconvincing that Dr. Maguire is so "uniquely" positioned to testify as to the topic of "crowd psychology in police-protester interactions." Objections Br. at 18. As previously noted, plaintiff has not presented a satisfying explanation as to why no other expert, or combination of experts in complementary areas of expertise, could suffice to substitute for Dr. Maguire. Indeed, Dr. Maguire's *curriculum vitae* (filed Nov. 22, 2021, Docket # 322-1) reveals that he regularly publishes with at least one co-author, usually multiple co-authors, including on topics regarding policing of mass protests. Document 322-1, Maguire CV. Thus, there are other professionals, for whom Dr. Maguire obviously has professional respect and trust, which share expertise in the areas that are of interest to plaintiff in this litigation. It remains unclear why plaintiff could not retain any of Dr. Maguire's regular research partners and co-authors, either singularly or in combination, as a substitute for Maguire himself, so long as none of them assisted Dr. Maguire in his work for the City.

The second flaw in plaintiff's purported "public interest" argument is that any interest the public may have vested in Dr. Maguire as plaintiff's first choice expert witness in this litigation is far outweighed by the public interests served by disqualification in this instance. In light of the City's overwhelming evidence that a confidential relationship existed between the City and Dr. Maguire during the latter's consultancy, and that Maguire was exposed to a high volume of privileged and confidential information in the course of this consultancy that is directly relevant to the instant litigation, the essential public interest in preserving judicial integrity should prevail over plaintiff's preference for its first-choice expert witness. *See Auto-Kaps*, 2016 U.S. Dist. LEXIS 37097, at *14. Indeed, the public interest factor heavily weighs in favor of the City here. As the Magistrate Judge's Order held:

> In the end, whatever burden may fall on OAG by retaining a less desirable expert is simply not sufficient to outweigh the public interest in the integrity of these proceedings. Municipalities must feel free to engage and deliberate with consultants without fear that those consultants will be hired to prove the municipalities' liability on the very matters about which the consultant was engaged.

Order at 20.  As the City previously observed, allowing plaintiff "to retain Maguire as an expert witness in this litigation would only dissuade the City and other government entities from relying on independent experts in future internal reviews for fear that those same experts would be used against them in litigation. Such a prospect is clearly contrary to the public's interest . . . ." Defs. Mov. Br. at 10.  Whatever short term gain could be gleaned from plaintiff using Maguire does not negate the long term chill that would result if Maguire were allowed to now be plaintiff's expert. Certainly, government entities would be reluctant to retain external experts to assist with important internal reviews or to provide critical analysis.

Finally, plaintiff's citations to jury cases to argue that Judge Gorenstein's Opinion is contrary to law is also unpersuasive.  Objections Br. at 25.  Jury cases are not an apt comparison. We rely on juries to be able to disregard and compartmentalize as it would be unduly burdensome and wholly impractical to continue to restart trials every time there is a concern of prejudice or taint. However, where such concern is compelling, a new trial is awarded.  Here, where the issue before the Court involves expert disqualification due to his prior confidential relationship with the adverse party, the objective is to entirely avoid the "substantial risk of inadvertent disclosure" *Auto-Kaps*, 2016 U.S. Dist. LEXIS 37097, 2016 WL 1122037, at *3. That is, the risk can be removed from the outset.

Magistrate Judge Gorenstein correctly held that the City has met its burden for disqualification by showing that the City and Maguire had a confidential relationship, and that Maguire received confidential information relevant to the litigation in this matter, "substantial

risk of inadvertent disclosure" is therefore assumed. *See In re Namenda Direct Purchaser Antitrust Litig.*, 2017 U.S. Dist. LEXIS 134047, at *25 (finding that where the movant has met its burden for disqualification by showing that the expert and movant had a confidential relationship, and that the expert received confidential information relevant to the Instant Action, "there can be no question that [the movant] is at a 'substantial risk of inadvertent disclosure,'"). The potential prejudice of the "substantial risk of inadvertent disclosure" can and should be entirely avoided, which is what Magistrate Judge Gorenstein did here. Indeed, nothing short of disqualification of Maguire will cure this substantial risk here because, as Magistrate Judge Gorenstein aptly noted, "this is one of the rare cases in which a litigant has attempted to use an expert who was specifically engaged by its adversary on the same subject matter of the litigation." Order at 21.

## CONCLUSION

For the foregoing reasons, the Court should overrule plaintiff's objections pursuant to Rule 72, and the Court should affirm Magistrate Judge's Order dated January 24, 2022.

Dated: New York, New York
     February 21, 2022

                              GEORGIA M. PESTANA
                              Corporation Counsel of the
                              City of New York
                              *Attorney for Defendants*
                              100 Church Street,
                              New York, New York 10007
                              (212) 356-2648
                              By: *Jenny Weng*  /s
                                   Jenny Weng
                                   *Senior Counsel*