# Rickner PLLC

Rob Rickner | rob@ricknerpllc.com

March 9, 2022

**Via ECF**

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York

> Re:     *In re: New York City Policing During Summer 2020 Demonstrations,*
> *No. 20-CV-8924*
> *This Filing is Related to All Cases*

Dear Judge Gorenstein:

We write on behalf of counsel for all Plaintiffs in these consolidated actions to ask that this Court hold a Conference under Rule 37.2 to discuss the appropriate sanction to address the dishonest letter motion opposition Defendants filed on March 8, 2022, Docket Number 437, signed by Patricia Miller, the Division Chief for the Special Federal Litigation unit, on behalf of the City.

> I.    Defendants failed to fully comply with the Order to produce the Mullins documents, and then filed a letter to the Court, implying that they had.

Defendants failed to oppose the motion to compel production of documents related to racist tweets and an email sent by Ed Mullins, the recently indicted former head of the Sergeant's Benevolent Association, and documents relating to the resulting discipline. Dkt. Nos 374 & 383. So this Court Ordered a complete production of the relevant documents, except those withheld for privilege, by March 3, 2022. Dkt. No. 408. When Defendants ignored this deadline, Plaintiffs filed a motion for sanctions. Dkt. No. 431. At a conference the same day, the Court asked the counsel present, "[A]ny idea why you violated my order?" Ex. A at 55:4. Nobody on the call could explain, so the Court gave the City until Tuesday, March 8th, to explain itself. *Id*. at 58:2-5. Yet the letter the City filed, Dkt. No. 437, still doesn't provide any meaningful explanation—in large part because Defendants are still in violation of the Order.

On March 8th, at 6:13 p.m., the City finally produced some Internal Affairs Bureau and Civilian Complaint Review Board files for Mullins, including records relating to an investigation into his racist tweet, but said they could not find anything about the racist email Mullins sent to thousands of NYPD sergeants. Ex. B. Defendants did not even produce the email itself, which has not been made public in the media—let alone the replies to it.

Plaintiffs immediately reviewed the production and discovered that documents were missing—most obviously, the transcripts from the tweet-related disciplinary hearings prosecuted by the CCRB, and the ensuing disciplinary recommendations by First Deputy Commissioner Benjamin Tucker and the ultimate decision by Commissioner Dermot Shea. Plaintiffs sent an email to the City noting these obvious deficiencies. Ex. C. The Plaintiffs also warned the City that it would be false to tell the Court that everything had been produced, as it was apparent that this after-

Rickner PLLC

hours production was going to be used to try and argue that the City had complied with this Court's Order at Docket Number 408. Ex. C.

Soon after sending this email, having further reviewed the CCRB files, Plaintiffs discovered that Mullins had filed a federal lawsuit trying to stop the disciplinary trials related to his tweets; in that case he filed an affidavit complaining that he had already been interviewed by the IAB three times. Ex. D at ¶39. Based on this new information, a further review of the City's Production revealed that the CCRB had requested these interviews and then used them at the disciplinary hearings. But no interview transcripts, notes, or recordings were included in the City's production.

In the City's March 8th letter to the Court, filed shortly after it made its paltry production (Dkt. No. 437), the City made three assertions, none of which withstand scrutiny. *First*, the City claimed that, with respect to Mullins' email circulating a racist video, the "NYPD found nothing in Sgt. Mullins' disciplinary history regarding this video. It is also not noted on his CCRB history." Dkt. No. 437 at 2. But this ignores the Order. The City was required to produce all documents relating to the racist email, which became a widely reported scandal; nothing in the Order suggests they were to limit their search to IAB and CCRB records. (The racist email incident, it should be noted, was (inexplicably) *not* investigated alongside Mullins' racist tweets that resulted in hearings and discipline.) Thousands of sergeants received this email; it is simply incredible that the City has not a single responsive document to produce. The problem is that the City did not do a thorough search; instead, counsel looked at his CCRB and IAB records, did not see anything, and stopped looking. This illustrates a repeated problem in this case, and gives Plaintiffs reason to question the City's entire document production. The City, we believe, is drastically limiting where it is searching, and then telling Plaintiffs that the production is complete or that there is nothing to produce.

Obviously, the City needs to do a real search, and Plaintiffs have requested a meet and confer with the City to find out what additional searches they will perform. Ex. C. Of course, Plaintiffs worry that every other aspect of the production is being limited by the City's deliberate choice to only look for documents in one or two places, despite knowing responsive documents are almost certainly elsewhere.

*Second*, the City claims that the delay in production was caused by their own misunderstanding (or mis-recording) of the actual deadline to produce documents. Their explanation, that the Court-Ordered Chart they prepared was inaccurate, makes no sense. The Court has already warned the City lawyers that they actually have to read orders and make sure they are complied with:

> THE COURT: I mean this, we can't function if you don't read and comply with Court orders, that's so basic. I mean I'm just flabbergasted that I don't know what you expect is going to happen if you don't comply with a Court order or try to do something about if you think you can't comply with it. I mean this one, obviously, could have been complied with.

Rickner PLLC

Ex. E at 93:7-13. Despite already being sanctioned, the City still is not taking this Court's orders seriously.

And *third*, the City details what they produced. Dkt. No. 437 at 2. But they did not say what they had not produced, despite the Plaintiffs emailing them beforehand to tell them the production was incomplete. The City did not say the production was finished, but the letter certainly implied they had fully complied with the Order; a plain reading of the letter would certainly give the Court that impression. Again, this highlights a larger problem in discovery. Over and over, Plaintiffs have complained that they cannot rely on what the City says they are producing, because they obfuscate what they are withholding. And as this Court has observed, the Plaintiffs are left to discover what is missing through their own investigation:

> THE COURT: From what I've gathered, what actually is typically happening is that City is producing some materials, the plaintiffs are noticing it's not all, you're conceding, as you just did now in your discourse that you then come up with it, and they're right, you did violate the order.

Ex. E at 15:2-7.

At a minimum, this Court should order someone from the NYPD who has personal knowledge of the searches for the documents provide a sworn affidavit as to all the steps they took to locate responsive documents, and to disclose any places that they did not look, but may have relevant documents.

II.     Defendants' Response to Payne Plaintiffs' Second and Third Requests Is Not Complete and Does Not Comply with this Court's Order

Defendants' letter to the Court dated March 8, 2022 makes clear that they have not complied with this Court's Order to respond to the Payne Second and Third Discovery Requests. As an initial matter, Defendants claim that they have not violated this Court's Order at ECF No. 408 because they produced responses to the Third Requests on January 14. *See* Dkt. No. 437. While true, this ignores everything that led to this Court's Order on February 18 and Defendants' obligations pursuant to that Order to provide fulsome responses and actually produce documents and body worn camara video.

 As explained in Plaintiffs' initial motion at Dkt. No. 370, after receiving Defendants' incomplete responses on January 14, which did not include any document production but claimed that further documents would be forthcoming within 60 days, Plaintiffs sought to confer with Defendants over this failure. On February 1, Plaintiffs then moved the Court for an order compelling complete responses and the production of documents in response to the Third Requests as well as *any* responses to the Second Requests. Dkt. No. 370. Defendants failed to respond to that motion. *See* Dkt. No. 383.

This Court then requested that Plaintiffs put in a proposed order for the letter motion at ECF No. 370, which Plaintiffs did. *See* Dkt Nos. 383, 387. This Court entered its order on February 18, at issue here, which required the following:

Rickner PLLC

> With regard to Plaintiffs' Supplemental Set of Interrogatories and Request for the
> Production of Documents ("Second Requests") and Plaintiffs' Third
> Supplemental Set of Interrogatories and Request for the Production of Documents
> ("Third Requests") (raised in Docket # 370), Defendants' objections as to
> Plaintiffs' Second Requests are hereby overruled except for those relating to
> privilege. Defendants shall answer the interrogatories and respond to Plaintiffs'
> Second Requests by March 3, 2022. Similarly, Defendants' objections to the
> Third Requests other than to privilege are overruled and Defendants shall answer
> Interrogatories 18, 19, and 20, and respond to Requests Nos. 1-7 and 10-11 by
> March 3, 2022. Additionally, Defendants shall produce all documents and videos
> that are responsive to Plaintiffs' Second and Third Requests by March 3, 2022.

Dkt. No. 408. Defendants' claim that they produced responses on January 14 is thus no answer as to why they did not comply with this Court's order on February 18, which Payne Plaintiffs sought because of the incomplete nature of those January 14 responses. Indeed, their March 8 letter suggests that Defendants are unaware of their obligations with respect to this Court's Order.

Similarly, Defendants' letter admits that they continue to search for documents and body worn camara video in response Payne Plaintiffs' requests, but they have made no application to the Court for additional time—itself a violation of the Court's orders:

> If defendants contend that the deadline for production as to any category is
> impossible to meet, they shall produce all available documents on that date and
> must make an application to the Court by March 3, 2022, for an extension of the
> deadline, which shall include a sworn statement from an individual with personal
> knowledge of all efforts made to respond to the request, including dates such
> efforts were begun, and describing in detail the impediments that prevented
> compliance with the Court's deadline.

Dkt. No. 408. Nowhere in Defendants' response or their email to counsel do they identify *any* of the information required to seek an extension, let alone a sworn statement by someone with personal knowledge regarding that information.

Finally, Defendants claim that they have responded to Payne Plaintiffs' Second Discovery requests by providing certain information in the Chart and by email on March 8. But these responses, to the extent they are discernable, fall far short of the requirements of Rule 33(b). Interrogatory responses must be signed and are admissible as evidence in Court. Defendants' emails and chart entries are not. In short, Defendants have failed to comply with this Court's Order and the Payne Plaintiffs remain prejudiced by these failures. Accordingly, sanctions are appropriate here too.

* * *

It is in this context that Plaintiffs renew their motion for sanctions. There is no justification for Defendants violating this Court's Order and providing inaccurate information to the Court.

Rickner PLLC

Worse, it is apparent from the City's letter at Dkt. No. 437 that the City, including the Division Chief Patricia Miller, is not listening to the Court's warning, and the prior sanctions have had no deterrent effect. Moreover, Defendants are simply not being forthright with the Court — and despite knowing without a doubt productions were incomplete on submitting their letter, simply ignored what had been flagged for them. We submit that this Court must craft a more substantial sanction in response. Plaintiffs propose the following (in the alternative or in some combination):

1. Striking affirmative defenses, starting with the first, and continuing in a linear fashion as Defendants violate more orders;[1]
2. Granting Plaintiffs attorneys' fees for all discovery to date;
3. Finding that an adverse relevant fact has been conclusively established, such as a ruling that the NYPD did nothing to address or correct the effect of the racist Mullins email; and/or
4. Granting an adverse inference on what the discovery related to the requests at issue would uncover, and directing the parties to submit competing proposed inference instructions.

We thank the Court for considering these issues.

Respectfully,

/s/

Rob Rickner

---

[1] This sanction is not nearly as draconian as it sounds.  The first affirmative defense pled—that the Complaints "fail[] to state a claim upon which relief can be granted"—is no defense at all, and Courts routinely strike such defenses on motions anyway.  *See, e.g., Figueroa v Hasaki Rest., Inc*., 2018 US Dist LEXIS 14838, at *6 (SDNY Jan. 29, 2018). But striking it as a sanction puts Defendants on meaningful notice that if their conduct continues, the more important defenses will be on the chopping block.