```
                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK


In re:                                :
                                         Docket #1:20-cv-08924-
                                      : CM
          NEW YORK CITY POLICING
          DURING SUMMER 2020          :
          DEMONSTRATIONS
                                      : New York, New York
                                        March 4, 2022
                  Defendant.          :

                                        TELEPHONE CONFERENCE
------------------------------------- :


                    PROCEEDINGS BEFORE
             THE HONORABLE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff,
People of the State
of New York:              NYS OFFICE OF THE ATTORNEY GENERAL
                          BY:  LILLIAN MARIE MARQUEZ, ESQ.
                          28 Liberty Street
                          New York, NY 10005


For Plaintiff, Adam
Gray:                     WYLIE STECKLOW PLLC
                          BY:  WYLIE M. STECKLOW, ESQ.
                          111 John Street, Suite 1050
                          New York City, NY 10038


For Plaintiffs, Adama
Sow, Krystin Hernandez,
And Ryan Minett:          COHEN & GREEN P.L.L.C.
                          BY:  REMY GREEN, ESQ.
                          1639 Centre Street, Suite 216 11385
                          Ridgewood, NY 11207



Transcription Service:    Carole Ludwig, Transcription Services
                          155 East Fourth Street #3C
                          New York, New York 10009
                          Phone:  (212) 420-0771
                          Email:  Transcription420@aol.com
```

APPEARANCES - Continued:

For the Payne plaintiffs:          NEW YORK CIVIL LIBERTIES UNION
                                   BY:   DANIEL ROSS LAMBRIGHT, ESQ.
                                   125 Broad Street, Ste. 19
                                   New York, NY 10004


For the Sierra plaintiffs:         RICKNER PLLC
                                   BY:   ROBERT HOWARD RICKNER, ESQ.
                                   14 Wall Street, Suite 1603
                                   New York, NY 10005


For Plaintiff, Cameron
Yates:                             STOLL, GLICKMAN & BELLINA, LLP
                                   BY:   ANDREW BRIAN STOLL, ESQ.
                                   300 Cadman Plaza West, 12th Fl.
                                   Brooklyn, NY 11201

For Plaintiff, Charles H.
Wood:                              KAUFMAN LIEB LEBOWITZ & FRICK
                                   BY:   ALISON ELLIS FRICK, ESQ.
                                   10 E. 40th Street Suite 3307
                                   New York, NY 10016


For Defendants:                    NEW YORK CITY LAW DEPARTMENT
                                   BY:   JENNY SUE-YA WENG, ESQ.
                                         GENEVIEVE NELSON, ESQ.
                                         AMY ROBINSON, ESQ.
                                   100 Church Street Room 3-173b
                                   New York, NY 10007



Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
 1                          PROCEEDINGS                 4

 2              THE CLERK:  In the matter of In Re New York City

 3   Policing During Summer 2020 Demonstrations, 20-civ-8924.

 4              Could we have appearances of counsel, beginning

 5   with the plaintiffs?

 6              MS. LILLIAN MARQUEZ:  Good morning, your Honor.

 7   This is Lillian Marquez of the New York State Attorney

 8   General's Office on behalf of plaintiff, People of the

 9   State of New York.

10              MR. WYLIE STECKLOW:  Good morning, your Honor,

11   Wylie Stecklow for the plaintiffs in the Gray matter.

12              MX. REMY GREEN:  Good morning, Judge; Remy Green

13   in the Sow, Hernandez and Minett matters.  And for the

14   reporter/recording, I should appear in the transcript as

15   Mx. Green, spelled m-x-period, rather than Mr. or Ms.

16              MR. DANIEL R. LAMBRIGHT:  Good morning, your Honor,

17   Daniel Lambright on behalf of the Payne plaintiffs.

18              MR. ROBERT H. RICKNER:  Good morning, your Honor.

19   Rob Rickner on behalf of the Sierra plaintiffs.

20              MR. ANDREW BRIAN STOLL:  And good morning, your

21   Honor; it's Andrew Stoll on behalf of plaintiff, Cameron

22   Yates.

23              MS. ALISON FRICK:  Good morning, your Honor.  This

24   is Alison Frick on behalf of the Wood plaintiff.

25              HONORABLE GABRIEL W. GORENSTEIN (THE COURT):   And
```

```
 1                        PROCEEDINGS              5
 2   for defendants?
 3            MS. JENNY SUE-YA WENG:  Good morning, your Honor.
 4   This is Jenny Weng for the defendants.
 5            MS. GENEVIEVE NELSON:  Good morning, your Honor,
 6   Genevieve Nelson, also for defendants.
 7            MS. AMY ROBINSON:  Good morning, your Honor; this
 8   is Amy Robinson for the defendants.
 9            THE COURT:  Okay.  Ms. Weng, are you speaking for
10   defendants?
11            MS. WENG:  For most of it, yes, your Honor.
12            THE COURT:  Okay.  All right, now, you know, there
13   may be reason to hold another conference Tuesday or
14   Wednesday.  I had hoped not to do that based on my own
15   schedule, but if I have to, I will.
16            So knowing that's available, Mx. Green, what do
17   you think would be good things to discuss at this
18   conference, which I think you said might be brief, if we
19   were going to be holding another one?
20            MX. GREEN:  Yes, your Honor.  I think the core
21   here is that -- well, there are two categories of issues,
22   one being the documents and chart issues, and the other
23   being deposition issues.  Let's take them in order.  As to
24   the chart, defendants didn't do the assignment.  What the
25   Court ordered -- and kind of the spirit of the thing as I
```

```
 1                        PROCEEDINGS                    6
```

```
 2   understood it -- was that we were supposed to know what
```

```
 3   documents we're getting.  And rather than, you know,
```

```
 4   clarify that, the chart obfuscates it.  And, worse than
```

```
 5   that, it seems to suggest that they're walking back, you
```

```
 6   know, this large array of commitments that we spent two
```

```
 7   months and dozens of hours meeting and conferring to get
```

```
 8   to.
```

```
 9            So, you know, looking at this chart -- and I think
```

```
10   the Court could look at it, too -- it's not possible to
```

```
11   tell what we're getting, and it's not possible to tell what
```

```
12   we're not getting.  And so we're, you know -- I feel like
```

```
13   we are not only not in a better place than we were on the
```

```
14   11th of February, but I think we're in a worse place than
```

```
15   we were, you know, in June last year, because all it does
```

```
16   is muddy the water; and, you know, I'm at a loss for what
```

```
17   to do next.  I think maybe the right answer is by Monday we
```

```
18   need -- or by, you know, close of business Monday we need a
```

```
19   chart that says in reality what we're getting.
```

```
20            And, you know, I don't know how the corporation
```

```
21   counsel is operating this case.  If it were me, I would
```

```
22   probably have a Word document on my computer that listed
```

```
23   every document request, what searches I was doing and what
```

```
24   I'd gotten, and then, you know, what I was withholding.
```

```
25   And so, theoretically, if they're doing this in a
```

1                         PROCEEDINGS                    7

2    reasonable way, I don't think it's much of a burden for

3    them to say that.

4           What I fear is that they're not doing this in a

5    reasonable way and that that's kind of what they were

6    getting at last time when they objected to producing all of

7    something and called -- and described producing all of

8    something as setting them up to fail.  What I think is

9    they're grabbing a couple of documents and hoping we don't

10   figure out that things are missing.  And that's why we're

11   getting so much resistance to just finding out what they

12   are and aren't producing.

13          So, you know, I think that what we need is before

14   we meet and confer again and before we have another

15   conference is, you know, we need them to do the assignment.

16   And I think that we should probably deal with the

17   deposition stuff not in sequence but after we deal with

18   this.

19          THE COURT:  Ms. Weng?

20          Ms. Weng or whoever's speaking for defendant?

21          MS. WENG:  Yes, your Honor, first I want to

22   apologize for coughing.  And so to respond to Mx. Green, my

23   understanding is that Mx. Green's issue is they want to

24   know what they're getting.  The deadlines are March 11th

25   and March 18th, so we're still gathering the documents that

```
 1                        PROCEEDINGS                    8
 2  the plaintiffs will be getting.
 3               THE COURT:  I think maybe just to be clear, if
 4  they ask for a particular thing and you know you're not
 5  giving them something within that category, they shouldn't
 6  be finding that out on March 18th; they should find that
 7  out right now.  Maybe what you're telling me is we're not
 8  objecting to the requests where we say we're gathering
 9  documents; they're going to get everything within that
10  request.  And, you know, maybe that's a reasonable way to
11  deal with it.  But I just wanted to make clear if you read
12  a request and you say, you know what, for this we can give
13  them, you know, X, Y, and Z, but getting A, B, and C is too
14  burdensome, they have to know that immediately.
15               MX. GREEN:  Your Honor, if I may, this is what we
16  were getting at in the letter.  We got one thing
17  that's -- we got one response, responsive documents
18  previously provided, and didn't detail that they were
19  withholding anything.  But those were documents that, you
20  know, based on the last conference we had, the Court
21  accepted their burden objection and said that they weren't
22  going to have to produce certain things.  So if you read
23  that kind of on its face, the chart seems to suggest that
24  they're waiving those objections.  And that's the real
25  problem.
```

```
 1                         PROCEEDINGS                    9
 2             THE COURT:  Well, I mean, that's just for one
 3   particular document request.  I'm trying to do a little bit
 4   bigger picture on this.  So I guess I was trying to get
 5   Ms. Weng to react to what I just said.
 6             I mean, do you understand --
 7             MS. NELSON:  Your Honor --
 8             THE COURT:  Go ahead.
 9             MS. NELSON:  -- this is Ms. Nelson, if I may?
10             THE COURT:  Go ahead.
11             MS. NELSON:  In response to your question about
12   objections and we limited the objections, my understanding
13   of what we did on the chart is we limited the objections to
14   burden or privilege as to what we weren't producing.  And I
15   believe there is a column on the Chart F where we did try
16   to explain what it is that we would not be producing.
17             THE COURT:  So if that's blank, that means you're
18   producing it.  My point is if you're not saying that you're
19   not going to produce something within the category, that
20   means you're not objecting on burdensome or any other
21   grounds, and you're producing whatever's in the category.
22             MS. NELSON:  And one of the reasons we wanted
23   Ms. Weiss here is she understands mostly how the chart was
24   finalized.  But it's either in Column E or Column F where
25   we indicate that something will not be produced.  For
```

1                          PROCEEDINGS                      10

2    example --

3              THE COURT:  If it's blank -- Ms. Nelson, if it's

4    blank, that means it will be produced; is that right?

5              MS. NELSON:  That is my understanding, your Honor,

6    which is very different from what was previously produced.

7    Our understanding and -- of what was to be done and

8    Mx. Green's complaint that she's raising is they don't know

9    what they will be getting.  And so that is what we are

10   working towards for the March 11th and March 18th

11   deadlines.  So if it says Previously Produced, it means

12   that they've already received those --

13             THE COURT:  That's a different category --

14             MS. NELSON:  I agree.

15             THE COURT:  -- for a very different issue.

16             When we're talking about previously produced,

17   that's not what I'm talking about.  I'm talking about

18   things that you are going to produce where you said this

19   will be produced on the 18th, and Mx. Green is saying the

20   fact that that's all you're saying, he assumes, though he's

21   skeptical, that you mean you're producing everything.  And

22   Mx. Green is concerned that in fact you'll produce

23   something less than the full category because you came up

24   with some things that you decided were too burdensome or

25   couldn't be done or have some objection to, and that won't

```
 1                          PROCEEDINGS                    11
 2   be discovered until the 18th.  And I'm saying that's not
 3   acceptable.
 4          MS. NELSON:  I understand.  Your Honor, if --
 5          THE COURT:  Okay, now, we have a separate issue,
 6   which is where you say, "Oh, we've already produced that."
 7   I haven't gotten there yet.
 8          MS. NELSON:  Okay.  So we're happy to take another
 9   look at the chart, but my understanding of what is on the
10   chart is those areas where we're raising an objection,
11   either privilege or burden.  We've put that in either
12   Column E or Column F on the chart.
13          THE COURT:  Okay.  And if it's not there, there's
14   no such objection, right?
15          MS. NELSON:  Except -- your Honor, I am reluctant
16   to speak for some of these because, again, I think
17   Ms. Weiss can better explain for ones where the --
18   particularly the consolidated BRIs where the productions
19   have been made.  For a year now we've been making
20   productions on those.
21          So I think the best that I can offer is I think we
22   did this, but we will take another look at the chart,
23   particularly Columns E and F.  But I believe that's what's
24   done.
25          THE COURT:  Okay.  We have a separate issue.  And
```

1                            PROCEEDINGS                    12

2  we're going to talk about the process here.  My view is

3  there should be an all-day, starting nine a.m., meet-and-

4  confer Monday going through all of this so that everything

5  can be hashed out.  Is there anything preventing that?

6            MS. NELSON:  Well, Ms. Weiss really is very sick.

7  So I am not sure about here availability for Monday.

8            THE COURT:  All right.  I didn't know the degree

9  of her illness.  To the degree that you know she will not

10 be available Monday?

11           MS. NELSON:  Well, the reports I've gotten is that

12 she is very sick.  I wouldn't believe she'd be at work on

13 Monday.

14           THE COURT:  All right, I think we're going to

15 have to play this by ear a little bit, Mx. Green.  I know

16 it's frustrating to you.  I know you feel there should be

17 another person from the City who can answer all these

18 questions, but we have to deal for the moment right now

19 with what we have.  And this is apparently an extraordinary

20 circumstances.  I'm going to figure out a way to, you know,

21 make myself available if necessary.  But, I mean, you folks

22 need to -- I mean, I think that there's things -- I think

23 it's worth conferring on Monday even without Ms. Weiss,

24 because I think there are things that could be raised that

25 potentially could have answers.  So who is -- Ms. Nelson,

```
 1                          PROCEEDINGS                    13
 2   is it you, Ms. Weng, who is the person who is going to be
 3   most knowledgeable about this, or you'll do it together?
 4             MS. WENG:  Your Honor, I guess we'll speak
 5   internally, and if it's okay with your Honor, we'll let
 6   plaintiffs' counsels know.  But I think most likely we'll
 7   be doing it together, your Honor.
 8             MS. NELSON:  My apologies, your Honor; I got cut
 9   off the conference line.  I had to dial back in.  This is
10   Ms. Nelson.
11             THE COURT:  Okay.  All right, what I was saying is
12   that you and Ms. Weng need to be available first thing
13   Monday to go through as many issues as possible that you
14   can deal with.
15             MX. GREEN:  Your Honor --
16             MS. WENG:  I apologize -- oh, I'm sorry.  Before
17   we move on, I just saw on my calendar, I'm supposed to be
18   at a deposition all day Monday.
19             THE COURT:  On this case?
20             MS. NELSON:  Yes
21             MS. WENG:  It's -- yes.
22             MS. NELSON:  On the Yates case, your Honor.
23             MS. WENG:  Yes.
24             MR. STOLL:  Your Honor, this is Andrew Stoll
25   speaking for Cameron Yates.  It was my understanding
```

```
 1                         PROCEEDINGS                  14
```

 2   another attorney, Giancarlo Vecciarelli, was going to be

 3   conducting that deposition.

 4          MS. WENG:  Yes.  He was defending, and I was going

 5   to be on --

 6          MS. NELSON:  And, yes, (indiscernible) will be

 7   there.  Miss --

 8          MR. STOLL:  I'm sorry?

 9          MS. NELSON:  -- (indiscernible) there to

10   supervise.  He is a new --

11          THE COURT:  No, no.  We need another supervisor.

12   No, Ms. Weng has to be available Monday to discuss the

13   discovery issues.  You have no supervisor on the case.

14          MS. NELSON:  It's Ms. Weng --

15          THE COURT:  We have to take the --

16          MS. NELSON:  (Indiscernible)

17          THE COURT:  Sorry?

18          MS. NELSON:  It's Ms. Weng or I or Ms. Weiss, your

19   Honor.

20          THE COURT:  You need another person.  We can't --

21   we can't treat this case like this anymore.  You have to

22   have a lot more flexibility.  You already have an attorney

23   taking the deposition on this case.  Another person can

24   supervise.

25          All right, Mx. Green --

```
 1                        PROCEEDINGS                    15
 2          MX. GREEN:  Your Honor, I propose -- here is what
 3  I would say about this.  I have a class on Monday, so I'm
 4  happy to cancel it and, you know, reschedule with my
 5  students.
 6          THE COURT:  What time's your class?
 7          MX. GREEN:  It's from 10:45 to noon.  We can also
 8  take a break then from the meet-and-confer.
 9          But the fear I have, especially without, say,
10  something like the prophylactic order in place that we
11  propose, is that, you know, it's not like we haven't gone
12  line by line through every single one of these requests at
13  a meet-and-confer before.  We have.  One of the problem
14  that we have here is that they've walked all of that back
15  in the charts.  And so, you know --
16          THE COURT:  I don't think it's all been walked
17  back, Mx. Green.  I think let's --
18          MX. GREEN:  No, you're right.  It's not -- I
19  overstated -- a lot of it has been walked back.  And --
20          THE COURT:  I'm not even sure it's a lot.  I think
21  there's -- I think if someone could make commitments, and
22  my problem -- the (indiscernible) question is whether
23  Ms. Nelson can do so.
24          You know, I mean, I think this illness is really
25  throwing us off; that's the problem.  And, you know, if we
```

1                              PROCEEDINGS                    16

2    have to -- I mean, I think the better thing, perhaps,

3    Mx. Green, is just to wait a day or two, business day or

4    two.

5              MX. GREEN:  Yes.  I think that that makes sense.

6    I mean, the only thing we were afraid of is, you know, the

7    issues on the back end.  But --

8              THE COURT:  No, I understand.  We have to deal

9    with the issues on the back end.

10             What's going on with the depositions in terms of

11   right now how many are scheduled, unscheduled, what's going

12   on?

13             MS. MARQUEZ:  Your Honor, this is Lillian Marquez

14   from the AG's office, if I may speak to that issue?

15             THE COURT:  Go ahead.

16             MS. MARQUEZ:  So, as of late, Chief Gallotti, who

17   was scheduled for February 3rd and 4th, and Chief Steven

18   Hughes, scheduled for March 3rd and March 4th, were

19   cancelled by the City, as was Chief O'Reilly, who was set

20   to go for March, I believe, 8th, and was actually moved to

21   March 11.  The concern that plaintiff has is that the Court

22   ordered the defendants to schedule these higher-level

23   depositions and to limit any last-minute schedule changes

24   to circumstances that made participation in a deposition

25   essentially impossible.  However, the explanations that the

2   City has given, when they have given it, do not meet that

3   criteria.  So for Chief Gallotti the explanation was that

4   he was participating in an NYPD-wide event on dates that

5   were not coinciding with his deposition.  Apparently, the

6   cancellation was due because the City could not schedule

7   him -- excuse me -- prepare him, and perhaps because they

8   were delaying the preparation until just a day or two

9   before the scheduled depositions.

10             And then for Chief Steven Hughes, just on

11   March 1st this week the City, specifically, Ms. Robinson,

12   emailed plaintiffs stating simply that they needed to

13   schedule the deposition, that only upon question for a

14   reason stated we are not prepared to go forward with a two-

15   day deposition.

16             So it's plaintiff's position that these

17   explanations that a lack of preparation as a reason for

18   cancelling unilaterally and last minute these depositions

19   is not in line with the Court's order back in December.  So

20   these need to be real based, and we just need to make sure

21   that we're trying to keep as many dates as we can, even

22   with the potential for an extension.

23             THE COURT:  What are the numbers in terms of

24   things that have been scheduled in the future?

25             MS. MARQUEZ:  So there's -- I don't have exactly

```
 1                        PROCEEDINGS              18
```

 2  the number -- there's about, I would say, about twenty.

 3  But then there's a number of depositions which the City has

 4  refused to schedule on the basis that the current schedule

 5  does not allow it and that they will not schedule it unless

 6  and until there is an extension.  And the number of those

 7  depositions that have not been scheduled number around 15.

 8            THE COURT:  So the current date is April 22nd for

 9  the cutoff, is that right?

10            MS. ROBINSON:  Correct, your Honor.

11            MS. MARQUEZ:  I believe that's correct, your

12  Honor.

13            THE COURT:  Okay.  So there's twenty scheduled for

14  April 22nd?

15            MS. MARQUEZ:  Approximately.  And I apologize for

16  not having the exact number.

17            THE COURT:  Okay.  And there's another --

18            MS. ROBINSON:  There are about fifty in total,

19  your Honor.  This is Amy Robinson for defendants.

20            THE COURT:  Fifteen through April 22nd?

21            MS. ROBINSON:  No.  There are five-zero in total

22  being taken, and before April 22nd there are 29.

23            THE COURT:  So 29 scheduled for April 22nd?

24            MS. ROBINSON:  Yes.

25            THE COURT:  Okay, and you think there's an

```
 1
 2  additional how many?
 3          MS. MARQUEZ:  That are being scheduled, your
 4  Honor?
 5          MS. ROBINSON:  There are -- there are a total of
 6  about fifty, all told.
 7          THE COURT:  Does that mean -- I don't know how
 8  many you've already done.  So are you trying to tell me
 9  that there are 21 that remain to be scheduled?  I'm just
10  looking for a number, if you know it.
11          MS. ROBINSON:  There's 14 on the -- in terms of
12  higher-level depositions that are yet to be scheduled, not
13  including some of the ones -- so Chief Steven Hughes still
14  needs a few more dates, as well, and Gallotti.  So that
15  puts it at about 16 that needs to be scheduled.
16          MS. NELSON:  Your Honor, this is Ms. Nelson.  I
17  think in addition to the high-level depositions, there are
18  also depositions in single matters, as well, like the Gray
19  depositions are going forward, as well as depositions in
20  Sow.
21          THE COURT:  They're going forward before
22  April 22nd, or -- and they're not included in the 29 that
23  were just mentioned?  Or they're included --
24          MS. NELSON:  Ms. Robinson, were they included in
25  the --
```

1                            PROCEEDINGS                    20

2            MS. ROBINSON:  I'm not really sure of the -- I

3   don't have -- I don't believe that I have any Gray

4   plaintiffs in my list.

5            Your Honor, I'm doing mostly the 30(b)(6) higher-

6   up depositions, so I'm afraid I'm looking at that list, and

7   I don't have the total list of depositions, including, you

8   know, the Gray plaintiffs, for example.

9            MS. NELSON:  So the number of depositions that are

10  proceeding --

11           MS. ROBINSON:  Are much higher.

12           MS. NELSON:  -- for April 22nd is higher than that

13  number that Ms. Robinson just quoted to you.

14           THE COURT:  Okay.

15           MX. GREEN:  Your Honor, this is Remy Green.  In

16  Hernandez, for example, we've served notice.  And they may

17  be counting those.  We haven't had a response to our notice

18  yet, and so those aren't on the schedule.  But they might

19  be part of what they're counting.  It may also be that

20  they're counting days as opposed to deponents, and that

21  might account for some of the discrepancies.

22           UNIDENTIFIED:  We are not.  For example, the

23  deposition on Monday is, I think, on the Yates case.

24           MS. NELSON:  Right.  And, your Honor, just --

25           THE COURT:  Go ahead.

```
 1                          PROCEEDINGS                    21

 2              MS. NELSON:  Just so that you know, before the

 3   high-ranking depositions began, plaintiffs requested and

 4   defendants agreed to two-day depositions for 14 deponents,

 5   which means 14 extra days of depositions and 14 extra days

 6   of prep.  So that has gone a long way into preventing us

 7   from meeting the April 22nd deadline, as well.

 8              THE COURT:  Okay.  I've already set up and allowed

 9   some slippage in that deadline, so the City should be

10   scheduling depositions certainly through May 22nd.  All

11   right?  So that should not be a basis for not scheduling a

12   deposition, Ms. Robinson; do you understand that?

13              MS. ROBINSON:  I missed that, your Honor.  We

14   should not be not scheduling through what date?

15              THE COURT:  You should be scheduling through at

16   least through May 22nd, for sure.

17              MS. ROBINSON:  Okay.  Okay.  I was not aware of

18   that.  We could probably be scheduling through June 22nd,

19   to be honest with you.

20              THE COURT:  Well, I don't know that I'm giving you

21   till June 22nd.

22              MS. ROBINSON:  Understood.

23              THE COURT:  But at least start.  I mean, you

24   can -- I assume you can do more depositions on more than

25   one day; am I right about that?
```

```
 1                         PROCEEDINGS                22
 2            MS. ROBINSON:  It depends on the --
 3            THE COURT:  More than one deposition on a day --
 4            MS. ROBINSON:  Right.  It depends on the -- your
 5   Honor, it depends on the level of the witness.  If we have
 6   two -- for example, we wouldn't necessarily double track
 7   two 30(b)(6) witnesses, but we would do a 30(b)(6) witness,
 8   and maybe ae plaintiff would go or a deponent in the Gray
 9   case, for example.  But we generally wouldn't have two
10   high-ranking people going on the same day.
11            THE COURT:  All right, let's do this.  Schedule
12   everything now, and I'll give you till June 10th to send
13   everything in.  All right?
14            MX. GREEN:  Your Honor, if I may also just note,
15   due in part because, as I mentioned, I think the City is
16   preparing these witnesses too close to the deposition
17   dates, when there is a cancellation, those dates go unused
18   by any deposition, given the late nature of it.
19            THE COURT:  Right.
20            MX. GREEN:  So I'd -- I think you know where I'm
21   going with that.
22            MS. ROBINSON:  And, your Honor, just --
23            THE COURT:  Well, yes, I'm trying to think -- I'm
24   trying to think how -- first of all -- I'm sorry, was
25   someone from the City just trying to speak?
```

```
 1                      PROCEEDINGS               23

 2              MS. ROBINSON:  Yes, your Honor.  This is Amy

 3   Robinson.  To begin with, we've cancelled one deposition of

 4   a higher-ranking person, which was Steven Hughes.  It's my

 5   understanding that plaintiffs wanted us to push off Chief

 6   Gallotti and Deputy Commissioner Miller to later dates.

 7              MX. GREEN:  That's  --

 8              MS. ROBINSON:  So I believe that is --

 9              THE COURT:  Sorry?  You disagree?

10              MX. GREEN:  I disagree.  I mean, I could --

11              THE COURT:  No, no, no.  Plaintiff just disagrees?

12              MX. GREEN:  Correct.

13              MS. ROBINSON:  Yes.  So, if I may clarify --

14              THE COURT:  Okay, people need to identify

15   themselves before they speak.

16              MS. MARQUEZ:  This is Lillian Marquez again from

17   the AG's office.  If I may clarify?  Chief Gallotti got an

18   email from Ms. Robinson on the 26th of January, just short

19   of in a week before the scheduled dates; emailed

20   plaintiff's counsel stating that he was attending, Officer

21   Tina Rolles on January 28th and February 2, which were not

22   the scheduled deposition dates but stated because of his

23   attendance on different dates, he could not attend those

24   two scheduled dates.  So Chief O'Reilly, it was again at

25   Ms. Robinson's request without explanation despite
```

1

2    plaintiffs' request for one, that it's been pushed back to

3    a different date.  And so those are all requests from the

4    City to change these higher-level depositions.

5           MS. ROBINSON:  Okay, your Honor, I misspoke.  Yes,

6    Chief Gallotti was unable to attend his deposition because

7    of the murder of the two officers and their funeral

8    arrangements.  I completely forgot about that.  That is

9    accurate.

10          THE COURT:  All right, you need, for the high-

11   level people, to have backup dates.  That is not something

12   that's happened already?

13          MS. ROBINSON:  Well, what we did was we had placed

14   backup dates into the calendar, but it was clogging up the

15   calendar so much before April 22nd, that plaintiff said,

16   well, let's ease off of the ultimate dates and try to get

17   these things scheduled.  And so that's what we've done.

18          And with respect to Chief O'Reilly --

19          MX. GREEN:  Your Honor, that's -- this is Remy

20   Green.  That's also not accurate.  They asked us if we

21   could do that.  We did --

22          MS. ROBINSON:  No, we did not.

23          MX. GREEN:  -- not ask for -- Ms. Robinson, I was

24   at that meet-and-confer --

25          MS. ROBINSON:  We did not -

```
 1                         PROCEEDINGS                    25

 2              MX. GREEN:  -- I'm happy to send the Court our

 3     notes, but that's just not true.

 4              THE COURT:  Let's figure out how to solve the

 5     problem.

 6              What's your proposed solution on backup dates,

 7     Mx. Green or whoever's speaking, Ms. Marquez, whoever?

 8              MS. MARQUEZ:  Well, I will also note that, for

 9     instance, for Chief Hughes, who was supposed to go on

10     yesterday and today, the plaintiffs did offer an

11     alternative that we hold the second date, the later in

12     time, so that defendants could at least have the Thursday

13     to prepare their witness.

14              And so I think that the first step is,

15     especially for these depositions which have two dates, and

16     I think I just want also to clarify that point.  The reason

17     why a lot of these deponents have two dates is because

18     they've been cross-designated as both a fact and a 30(b)(6)

19     witness, so they got one date for each -- that we at least

20     attempt or defendants attempt to keep the second dates and

21     that -- I mean, the original proposal is that we keep to

22     the Court's order from December that late scheduling -- no,

23     conflicts should be limited to words and impossibility, not

24     simply due to the defendants' failure to prepare their

25     witnesses.  So as a third alternative in terms of
```

1                              PROCEEDINGS                    26

2   alternative dates, we have on the table a proposal to

3   defendants, which they recently objected, that we have a

4   double-tracking of certain dates so that at least we have,

5   even if we lose a day of higher-level folks, we have

6   another deposition going that day.

7             MS. ROBINSON:  Your Honor, that --

8             MS. MARQUEZ:  That would be a --

9             MS. ROBINSON:  -- the plaintiffs' proposed double-

10  tracking, we simply cannot do that.  For example, for Chief

11  Monahan, the chief of the department is going next week.

12  He requires two days of deposition, two days of prep.  To

13  double-track that would reduce our staffing levels

14  extremely.  It would just be --

15            THE COURT:  Listen, listen, I don't know that we

16  have -- now that you have some breathing room at the other

17  end, I don't know that we have to worry about double-

18  tracking in the same way.  And there has to be -- the high-

19  level people have to block out backup dates, and they have

20  to be before June 10th, and it has to be done realistically

21  so that if they all back out, they can all be done on their

22  later dates.  If that requires double-tracking, so be it.

23  You must give alternate dates for all the high-level

24  people.

25            You know, the odds are if you tell them the

1                              PROCEEDINGS                    27

2    seriousness of this and if you prep them a week in advance

3    and not two days in advance, it's not going to be an issue.

4    But you absolutely must have backup dates that you inform

5    the other side of, saying, "Here's the date for this

6    person.  And if that date doesn't work, here's the date or

7    dates that they're going to do it, if for some reason the

8    first one doesn't work."  And if the first one doesn't

9    work, I'm trying to think, this has got to be, you know, an

10   emergent project like attending a funeral, not like

11   attending a conference.  It's got to be something that is

12   of an emergent, emergency nature.

13           And I'm trying to think how -- I think that's

14   going to have to be expressed in a representation from the

15   attorney that describes in detail what the problem is and

16   why this person is completely prevented from attending the

17   deposition on that date.  And preparation is not going to

18   be an excuse.  It's going to be a problem of that person.

19   Your preparation's going to have to happen in advance.  And

20   the plaintiffs should feel free to test this deposition

21   under oath if they have any doubts when the deposition

22   ultimately happens.  So make sure your deponents tell you

23   very accurately what the problem is.

24           MS. ROBINSON:  I understand -- this is Amy

25   Robinson, your Honor.  I understand.  Understood.  And I'm

1                          PROCEEDINGS                    28

2   just a little concerned that with backup dates we could --

3   it would be difficult --

4           THE COURT:  You could end up in double-tracking, I

5   don't know.  But you're going to have to get another

6   attorney on the case.  I don't know what else to tell you.

7   I hope you will impress upon your deponents how important

8   it is to appear for their date.

9           MS. ROBINSON:  I will in fact do that, your Honor.

10  My only concern is the June 10th dates.

11          MX. GREEN:  Your Honor, if I may?  I suspect not

12  everybody has seen this yet.  And as we're thinking about

13  June 10th, the Second Circuit just in part reversed Judge

14  McMahon's decision to deny intervention to the FDA.  And I

15  suspect that that's going to affect where our end date is

16  at the end of the day because we're going to have a bunch

17  of new -- or well, we're going to have one new party in a

18  sense who is starting from square one on discovery.  And,

19  you know, I'm not sure how realistic keeping the time

20  schedule is going to be, given that.

21          THE COURT:  Breaking news.  I mean, I can't see

22  that we should halt depositions for this.  I mean, maybe

23  they have some additional deponents or something.

24          MX. GREEN:  To be clear, yes.  I don't think that

25  we should halt depositions in any way.  I just -- I suspect

2    that's just going to, given that we're going to have new

3    document requests sent in all directions and then they're

4    going to have whoever they want to depose, that the

5    ultimate end date is going to probably have a lot more play

6    on it than we were all thinking.  And maybe that means we

7    do have a little more breathing room than we thought to

8    kind of weave all of that together, not that we would stop

9    taking depositions, but that, you know, for the depositions

10   that haven't been scheduled yet maybe there's a little more

11   room, and for making sure that we do have these backup

12   dates, we have a little more room.

13         MS. NELSON:  Your Honor, this is Ms. Nelson.  I

14   don't believe that just document requests are going to be

15   impacted by the addition of another party.  But to the

16   extent they also want to depose some of these high-level

17   officials, I don't know that it would be efficient to go

18   forward with some of them now just so that we have to bring

19   them back at a later date.  We already have difficulty

20   scheduling them now.

21         THE COURT:  All right, listen, I have to digest

22   this news.  I don't want to make any decisions right now on

23   it.  I don't want to -- let's digest this all.  Proceed as

24   we've been proceeding.  Everything I've just ordered is the

25   case:  same backup dates, June 10th for the moment.  If you

PROCEEDINGS                    30

1

2   have a proposal for what we should do next, I think you

3   should talk about this and --

4          MS. NELSON:  Your Honor, this is Ms. Nelson again.

5   My apologies.  So the deposition, my understanding is Chief

6   Monahan is going to be deposed next week.  We should

7   proceed with his deposition.

8          THE COURT:  I mean, you know, the mandate doesn't

9   even issue for 45 days.  I guess we could -- I'm trying to

10  think procedurally whether they can be instantly inserted

11  in the case.

12         MS. MARQUEZ:  If I may, your Honor?  This is

13  Lillian Marquez again from the AG's office --

14         THE COURT:  Folks, hold on a second, I want to

15  look at this.

16         (Brief silence.)

17         THE COURT:  Folks, this is Judge Gorenstein.  Are

18  you all there?  Mx. Green?

19         MX. GREEN:  Yes, your Honor.

20         UNIDENTIFIED:  Yes, Judge.

21         THE COURT:  And Ms. Weng and everyone else.

22         Okay, I think we have to halt depositions of

23  higher-level people and that that could, you know,

24  reasonably expect -- for which we could reasonably expect

25  the new plaintiffs, the PBA, to need to participate in the

1                            PROCEEDINGS                    31

2   depositions.  I think we have to do that.  I'm going to

3   issue an order that allows them to start participating now.

4   And I'm just trying to think what I should tell them.  I

5   mean, they need to be provided with all document discovery

6   produced to date.  Who is in the best position to do that

7   for them?  Do you have some platform that has it all that

8   it can be transmitted from that platform?  I don't want to

9   put you on the spot, but someone has to figure out how to

10  do that.

11          Hello?

12          MS. NELSON:  Your Honor, this is Ms. Nelson.  I

13  think we're -- I'm reluctant to speak for plaintiff, but I

14  think I'm right -- I think we all feel a little put on the

15  spot, and maybe we can think about how best to do that, and

16  we can advise the Court.

17          THE COURT:  And then we need -- you know, I'm

18  going to give them a deadline.  It's hard to believe

19  there's any discovery request they need that hasn't already

20  been made, but I'm going to give a deadline to make such

21  requests, you know, a quick deadline.  And, you know, we

22  shouldn't hold up depositions of, you know, that don't

23  involve -- you know, the --

24          MS. NELSON:  The other depositions --

25          MX. GREEN:  Your Honor --

```
1                          PROCEEDINGS                  32
```

```
2              THE COURT:  -- the individual kind of depositions.

3              Go ahead, Mx. Green.

4              MX. GREEN:  My memory is that they have not -- and

5    I know that Courts can excuse this, and I think the Second

6    Circuit did, having not spent hours on the order -- I don't

7    think they filed an answer, and they propose to intervene

8    as defendants, so, you know, I think there are certainly

9    discovery requests we would intend to serve on them,

10   especially defendants, depending on what affirmative

11   defenses they raise and what they deny.  I think, you know,

12   we should just all be thinking about the fact -- unless I'm

13   completely wrong, and someone please correct me -- we don't

14   have a pleading from them yet.  And that obviously affects

15   the shape of what discovery will follow.

16             THE COURT:  So I -- all right, so we need to get

17   them to file their answer --

18             MX. GREEN:  Right.

19             THE COURT:  -- (indiscernible) within 21 days or

20   something.

21             All right, file their answer.  And the discovery

22   requests probably the same date.

23             MS. MARQUEZ:  Your Honor, this is Lillian Marquez

24   again from the AG, if I may?

25             THE COURT:  Yes.
```

```
 1                    PROCEEDINGS                    33
 2          MS. MARQUEZ:  First, I just want to make sure
 3   we're all clear on what it means for higher-level
 4   depositions.  So we have, of course, a lot of cross-
 5   designees for former chiefs -- or excuse me -- for current
 6   high-level officers as being both fact and 30(b)(6).  And
 7   then, of course, we have a slate of folks who are simply
 8   fact and a lot of whom are actually retired now.  And so we
 9   just want a clarification.  We would propose that only the
10   30(b)(6) depositions be delayed so that the intervenors can
11   join but that we be able to move forward both with the
12   fact-only depositions, whether they be high level or line
13   level.
14          MS. NELSON:  Your Honor --
15          THE COURT:  Yes.
16          MS. NELSON:  -- this is Ms. Nelson.  I think in
17   theory that sounds practical, but it might not be that
18   simple to -- for some of these witnesses to parse out what
19   is the 30(b)(6) portion and what is the fact portion,
20   particularly for these high-level officials that --
21          THE COURT:  Yes, I think I'm going to have to
22   defer to some degree with the City on this because they're
23   the ones who are going to have to bring them back.  That's
24   the risk here.
25          MS. MARQUEZ:  I could respond to that, your Honor.
```

1                              PROCEEDINGS                    34

2   Again, this is Lillian Marquez.  Actually, that's what

3   they've been doing to date.  So we had agreed to have

4   distinct days or distinct sections of depositions, one

5   section being designated as 30(b)(6) and the second being

6   designated as fact.  And then we have done that with Chief

7   Dowling already, so that is actually something the City has

8   agreed is a possible and has agreed that that's how we

9   would move forward.  So I disagree with that

10  characterization that witnesses cannot distinguish or find

11  it hard to prepare --

12          THE COURT:  How many high-level people are both

13  fact and 30(b)(6)?

14          MS. MARQUEZ:  Twelve.

15          THE COURT:  Yes, if the City wants to put them

16  off, I think we should just put them off.  I mean, I'm

17  prepared to have these people, you know, jump into this

18  pretty quickly, but there's going to be a delay.  And I --

19          MS. MARQUEZ:  Just as -- oh, sorry.

20          THE COURT:  Go ahead.

21          MS. MARQUEZ:  I'm just looking at the schedule

22  right now, and I only see five cross-designees.  And there

23  are some high level that are not 30(b)(6) at all, for

24  instance, the named defendants, Terence Monahan and De

25  Blasio.

```
 1                        PROCEEDINGS                    35

 2            MS. NELSON:  And then we have Steven Hughes, David

 3   Miller, James Kahn, Dean --

 4            THE COURT:  Okay.  Folks, just because someone is

 5   fact doesn't mean that these new plaintiffs might not need

 6   to depose them.  That's the test.  These people need to

 7   depose them as fact witnesses.  It's unreasonable to expect

 8   the City to have them come twice.  That's the test.

 9            We're not going to solve this now.  There's going

10   to have to be some delay in the deponents for whom the PBA

11   and their claims, which apparently are going to be limited

12   to injunctive relief.  You know, to the extent they're

13   going to be able to say that they should have discovery

14   from a particular deponent on those topics, if that's

15   reasonable expectable, then we have to put these off

16   temporarily.  Anyone else should go forward.

17            MS. MARQUEZ:  This is Lillian Marquez again.  Does

18   your Honor mean to delay also the line-level officers that

19   have yet to be --

20            THE COURT:  No, no, no, that's my point.

21            MS. MARQUEZ:  Okay.

22            THE COURT:  Those are not people for whom, you

23   know, injunctive relief -- they're not going to have

24   evidence with respect to injunctive relief, it seems to me.

25   All right --
```

```
 1                        PROCEEDINGS                    36

 2              MX. GREEN:  Your Honor, it seems then, you know,

 3    in some ways maybe this is a blessing in disguise in that

 4    it lets us focus on making sure that before all of these

 5    depositions we actually get document discovery as close to

 6    done as we can.  And so maybe we should turn back to that

 7    and kind of --

 8              THE COURT:  Yes, I agree.

 9              MX. GREEN:  -- figure out how we're resolving

10    those issues in the interim.

11              THE COURT:  Okay.  I think we have to accept that

12    Ms. Weiss's health is, unfortunately for her and --

13    obviously -- but in terms of everything else, that's

14    something we have to consider in terms of what's happening

15    next.  So let's see --

16              MX. GREEN:  Your Honor --

17              THE COURT:  Hold on, hold on.  Let's see how soon

18    she can be involved.

19              In the meantime, Ms. Weng and Ms. Nelson, I mean,

20    I don't know -- well, go ahead, Mx. Green, what's your

21    proposal?

22              MX. GREEN:  Yeah.  So I think that the -- our view

23    is that the chart wasn't done in the way that is

24    particularly helpful.  And maybe with Ms. Weiss out and,

25    you know, call it the little extra breathing room we have,
```

1                            PROCEEDINGS                    37

2  another round of doing it makes sense where what they tell

3  us is, you know, to be clear, right, what are we going to

4  get, what searches are they doing to get us that, what are

5  they withholding.  And I think "withholding" should cover

6  both what are they withholding on the new searches, but

7  also if they withheld something or didn't search for

8  something the first time around, given that we have, you

9  know, a live dispute about the adequacy of their previous

10 searches and their previous withholdings and we found

11 things, big categories of things that are missing, right,

12 so that what they tell us they're withholding has to be

13 what they've withheld in toto.  And if we can get a chart

14 that actually covers all of that, I think by the time

15 Ms. Weiss is better, then perhaps we can have a very

16 productive meet-and-confer where we're actually talking

17 about what we're getting and what we're not getting, not

18 what information is hiding behind the words Documents To Be

19 Produced.

20         MS. NELSON:  Your Honor --

21         THE COURT:  So -- yes, go ahead.

22         MS. NELSON:  This is Ms. Nelson.  I just want to

23 be clear it's what we are going to be producing.  My

24 understanding is that document production has been going on

25 in this case for a year.  It's not what was previously

1                              PROCEEDINGS                    38

2   produced but what we are going to produce and whether we

3   have any objections and are withholding on those

4   objections.  And I think that can be on the chart.

5             MX. GREEN:  Your Honor --

6             THE COURT:  Just so we're clear, in some cases you

7   said, "See our prior production."  So -- and without any

8   other explanation -- so for those categories they don't

9   know if -- you know, imagine if some very narrow --

10             MS. NELSON:  Again --

11             THE COURT:  Let me finish my sentence.

12             Imagine if some very narrow categories produce all

13   documents -- which I know is not even on the list -- but

14   produce all documents for Jane Doe's arrest on June 5th,

15   okay?  No produce the arrest reports for Jane Doe's -- or

16   arrest documents for Jane Doe's arrest on June 5th.  Okay.

17   They need to know what it is you're produce -- that

18   sentence encompasses A through J.  You know, it could mean

19   a notebook, it could mean the online sheet, whatever they

20   are.

21             MX. GREEN:  Yes.

22             THE COURT:  If you are agreeing to produce

23   everything, then that's fine, but what you need to do is to

24   in some way indicate what your search involved.  So you

25   should say, "We're producing the online arrest reports, the

2  notebook page of that date," and so forth.  You should

3  explain what it is you're producing.  Or you could say,

4  "We're relying on the email search, you know, the search

5  terms.  That's whatever it is, and that's what we think is

6  all we have to do for this."  You have to express what it

7  is that is being produced.  And if there's something you

8  know is not being produced that's within that category, you

9  have to say that, as well.  Do you understand what I'm

10  saying?

11        MS. NELSON:  I want to make sure I understand,

12  your Honor.  So the request is there.  We will say what we

13  will be producing in terms of --

14        THE COURT:  Yes, and that's -- or if you say, "We

15  already produced it," say what it is you have produced.

16        MS. NELSON:  Well, I think that's where the

17  misunderstanding might have come in with the chart, your

18  Honor.  To the extent we're talking about going back

19  through a year's worth of production, that's where the

20  Previously Produced was indicated on the chart.

21        THE COURT:  Well, how are they supposed to know

22  what it is?  How do you know what it is?  How do you know

23  it's been previously produced?

24        MS. NELSON:  Again, I think we need Ms. Weiss's

25  input there, but my understanding is that's the way the

```
 1                         PROCEEDINGS                    40
 2  chart was prepared.  So for --
 3            THE COURT:  I understand that, and I'm trying to
 4  say why is it insufficient if you just say --
 5            MS. NELSON:  Okay, your Honor --
 6            THE COURT:  -- In response to the request
 7  Previously Produced, they need some hint about what you're
 8  talking about, because they don't think they have -- in
 9  some cases they don't think they have it.
10            MS. NELSON:   We will try to do that for --
11            THE COURT:  I'm not saying you have to come up
12  with Bates numbers.  There could be some other reasonable
13  way you could express --
14            MS. NELSON:  Okay.
15            THE COURT:  -- what production you're referring
16  to.
17            MS. NELSON:  Okay.
18            THE COURT:  For example, in an email search you
19  could say, "We did an email search with everything with
20  this term, and therefore, if there was anything, it's
21  that."  I'm not saying you have to go and find those; you
22  could just say, "We thought our email thing was sufficient
23  to produce all that."  There may be 100 other examples of
24  what you could say that didn't actually require Bates
25  numbers.  I mean, you could say, "We produced all IAD
```

1                           PROCEEDINGS                    41

2  documents with respect to this set of people, and

3  therefore, we think that's sufficient to comply with this

4  document request; and, you know, that was previously

5  produced."  And I'm not saying you have to go through and

6  find the Bates numbers for them.

7           MS. NELSON:  Understood.  So, your Honor --

8           THE COURT:  But there has to be some

9  identification.

10          MS. NELSON:  Right.  I just want to repeat what

11 I --

12          MX. GREEN:  Your Honor --

13          MS. NELSON:  -- think your instructions --

14          THE COURT:  Hold on.  Let's hear from Mx. Green

15 before you repeat it.

16          MX. GREEN:  Here's the fundamental problem I see

17 with that.  We have -- we've made a bunch of motions at

18 this point on the issue that in essence -- and this is what

19 the metadata on the document says -- and this has been

20 confirmed by NYPD reps at meet-and-confers -- what they did

21 for the vast majority of document requests and documents

22 produced on July 31st is they took what they gave the OIG

23 and the AG in the investigation and just reproduced it.

24 And they have spent a couple of months rereviewing it,

25 apparently redacting it in a different way this time around

```
 1                        PROCEEDINGS                    42
 2   and then reproducing it.  And so, for example, the Court
 3   mentioned IAB documents.  IAB documents cut off as of the
 4   date that they produce to the OAG and OIG.  Right?  And the
 5   reason it cuts off at that date is because they couldn't
 6   have produced future documents at that point.
 7            And so one of the biggest issues here -- and we've
 8   made motions on this, and we've met and conferred for
 9   dozens of hours on it -- is that when they say Previously
10   Produced, they are not telling us what they withheld on the
11   basis that it happens that it wasn't what was collected in
12   the OAG and OIG investigation.  And we know this because
13   Ms. Fitzpatrick, who is the head --
14            THE COURT:  I lost -- I lost the last sentence.  I
15   didn't understand what you just said.
16            MX. GREEN:  Okay.  Sorry.  And we know this
17   because the head attorney at -- who does discovery at the
18   NYPD, who is Bridget Fitzpatrick, said that what happened
19   when they were collecting documents is a lot of the
20   precincts they sent requests to said, "Isn't this just the
21   same request we got a year ago?"  And what Ms. Fitzpatrick
22   said to them was, "Yes, just produce it again."
23            And, of course, it's not the same requests, and
24   it's not the same documents.  And that cuts it off as of a
25   certain date.  So there are already huge categories that are
```

2   missing.  And what's working behind the "we already

3   produced it" representation is whatever differences there

4   were in the requests between the AG requests and our

5   requests in the consolidated cases, what's working behind

6   there is, you know, that entire date range after those

7   requests in 2020.  And, of course, there are many more

8   documents that were generated after that, and many of the

9   protests at issue here were after that investigation got

10  its production.  And so, you know, that's the kind of stuff

11  we're missing and that's hiding behind the Documents

12  Previously Produced.

13          MS. NELSON:  Your Honor --

14          THE COURT:  Your solution is what?

15          MX. GREEN:  My solution is I think that, you know,

16  they should say what they have produced, maybe by Bates

17  number, because I don't see another way to do it where we

18  can check their work conveniently.  And when they say what

19  they're withholding, I think they need to say, you know,

20  what they've withheld in toto, not just what they're

21  withholding from their new searches but what they

22  previously withheld.  And I don't think that should be that

23  hard to generate if they've kept good records of what

24  they've searched for.

25          MS. NELSON:  Your Honor, that is not my

2  understanding of what the Court instructed us to do.  This

3  is a different request that is being made now.  What we're

4  now asked to do is go through the previous production, and

5  Mx. Green now wants us to give Bates numbers for every one

6  of those requests.  That is not what the judge ordered us

7  to do.

8             THE COURT:  Well, it has to be identified.  You

9  can't just say "previously produced."  You have to say what

10  it -- how on earth are they supposed to know what you would

11  tell, what you're produced, what it is?  So you're going to

12  have to figure out some ways.  It's date numbers, it's

13  Bates numbers; if it's something else, it's something else.

14             MS. NELSON:  Okay, we will --

15             MX. GREEN:  And, to be clear, I'm not asserting

16  that the Court previously ordered this.  I'm saying this is

17  how I think we fix the problem.

18             THE COURT:  I mean, you have to say -- if someone

19  gives you a document request, you have -- I mean, you have

20  to say it was produced -- you have to identify in some way

21  where it is.  But very importantly, you have to say what

22  wasn't produced within that category --

23             MS. NELSON:  Yes.  And I -- I think we've tried to

24  do that with the chart, your Honor, for the items that we

25  are going to produce.  Right?  So I noted that we had

1                              PROCEEDINGS                        45

2   Column B -- forgive me, not B -- E and F, where we tried to

3   indicate there whether or not -- and your Honor was very

4   precise about the type of objections that we could raise,

5   so we didn't raise all objections; we wanted this to be

6   very clean.  It is as to -- where we're withholding as to

7   privilege or burden and then explain why.  And that's what

8   we did for the chart.  We didn't put all objections on

9   there.  That wasn't what the Court ordered.  In fact,

10  that's what the Court cautioned against.

11          MX. GREEN:  Your Honor, may I just ask a

12  clarification, because I do not understand the chart?  Does

13  that mean that there are relevance withholdings that are

14  not reflected on the chart?

15          MS. NELSON:  My apologies.  If there was a strong

16  relevance objection, I believe we put it on there; but we

17  didn't put it on there for all the ones that we thought

18  might not be relevant but we're going to produce something.

19  That's my understanding of the chart, and my apologies, I

20  cannot speak further to the contents of the chart beyond

21  that.

22          THE COURT:  You're going to have to talk to

23  Ms. Weiss.  I mean, I don't -- the chart has to indicate

24  what it is within a request that you're producing and that

25  you're not producing.

```
 1                        PROCEEDINGS                    46

 2              MS. NELSON:  Understood.

 3              THE COURT:  And if you're not producing something,

 4   then you have to say what the burden --

 5              MS. NELSON:  Right.

 6              THE COURT:  -- and say why you're not producing

 7   it.  And, I mean, if you think it's irrelevant, I think you

 8   have to say that, too, if there's some piece of it that's

 9   irrelevant.

10              MS. NELSON:  I think I misspoke, your Honor.  I

11   think that is part of the chart.  It's privilege, burden or

12   relevance.  We did not --

13              THE COURT:  I don't think you have any other

14   objection.

15              MS. NELSON:  Well, we didn't include any others

16   because we wanted --

17              THE COURT:  No, I don't think you have --

18              MS. NELSON:  -- to (indiscernible).

19              THE COURT:  -- (indiscernible) what is there?

20              MS. NELSON:  Understood.  I just wanted you to

21   know that we tried to follow the instructions that were

22   given by making the chart clean and only including those

23   three types of objection.

24              THE COURT:  Well, if there's other objections,

25   we'd better know about them.
```

```
 1                        PROCEEDINGS                   47

 2            MS. NELSON:  I --

 3            THE COURT:  I don't recall telling you that you

 4   could have secret objections.

 5            MS. NELSON:  No, not secret objections, your

 6   Honor.  I think your instruction was only include the

 7   objections where you are withholding something.  And so

 8   there are other objections that you would normally make

 9   under Rule 33 in --

10            THE COURT:  In other words -- right, yes, in other

11   words, if you made some objection but you're producing it

12   anyway, I agree, don't waste our time with that.

13            MS. NELSON:  Exactly.

14            THE COURT:  That's all we're talking about.  Yes,

15   that's fine.  But if you're withholding something, then,

16   yes, you have to explain what you're withholding and why.

17   You have to describe it and you have to say why.

18            MS. NELSON:  But I think we did that --

19            MX. GREEN:  And, your Honor, if I --

20            MS. NELSON:  -- for most of the chart.  We will

21   look at the chart again, your Honor, with those

22   instructions in mind.

23            MX. GREEN:  And, your Honor, I suppose let me do

24   two things, one being -- and if -- it's not just

25   withholding, right?  If they limited the scope of their
```

1                          PROCEEDINGS                    48

2    search on the basis of some objection that's not privilege

3    or burden, then we need to know about that, too, right?

4    Because then -- and I know there are documents that fit

5    this --

6              THE COURT:  Say that again.  Say it again.  Say

7    what you said again.  I'm sorry, "scope"?  Say it again.

8              MX. GREEN:  If, for example, they didn't go search

9    in someplace because, I don't know, maybe they didn't think

10   they were going to find relevant documents there -- that's

11   probably the wrong one -- but we know that they limited

12   their search such that they either didn't give us a

13   privilege log or identify as withholding.  For example, the

14   draft After Action Report from the 2020 protest, we know

15   that this document exists.  It's not on any privilege log,

16   and nothing states they're withholding it.  We know it

17   exists because it's mentioned in dozens of interviews --

18   maybe not dozens, but a couple of interviews.  And so, you

19   know, it seems to us that there are also limitations that

20   we don't know about based on where they searched.  And so

21   the chart, I think, needs to say what were the limitations

22   on your searches as well that meant that you didn't find

23   documents?

24             THE COURT:  Well, to the extent you're expressing

25   a burden of doing everything within the document request,

2  then that is going to be described when you say it's too

3  burdensome.  You can't just say it's too burdensome; you

4  say -- you're going to have to say, "Well, it's too

5  burdensome to search in this particular place, so we didn't

6  do that; instead, here's what we did."

7           MS. NELSON:  Your Honor, I don't understand

8  about -- I don't understand the explanation about searching

9  in a particular place.  If the document request is for a

10  particular thing, let's say an IAB file, we are going to

11  search those databases that would have that information.

12  Maybe I'm missing something --

13           THE COURT:  Okay, if there's something that -- I

14  say we can't do this without specific requests -- if the

15  request asks for a particular thing and it's very easy for

16  you to get this particular thing by searching a particular

17  way but there's a possibility that something that fits

18  within that category could be buried under someone's desk

19  or in a warehouse and you have no idea how to find it and

20  you say, "Well, that -- you know, it's possible there's

21  documents there that are nonduplicative that are also

22  responsive to the request, it's not worth searching," you

23  have to explain what it is that you're not searching for

24  that's within that request.

25           MS. NELSON:  And I think that's what --

1                           PROCEEDINGS                    50

2               THE COURT:  You know what's non -- if you know

3    there's some nonduplicative thing within a request that

4    you're not searching for and it's clearly called for by the

5    request, you have to say, "I didn't search the warehouse

6    because that would be too much."

7               MS. NELSON:  Right.  So --

8               MX. GREEN:  And, your Honor, let me just put

9    something concrete on this, because I think you're right;

10   it's hard to talk about it abstractly.  Let's talk about

11   IAB reports.  We don't have IAB reports after a particular

12   date.  That is, in our understanding, because they just

13   reproduced whatever was produced to the AG and OIG.  But

14   there's nothing in the chart and there's nothing in any

15   objection that states that they are limiting their search

16   to documents generated by the IAB before a certain date.

17   All it says is Documents Previously Produced --

18               MS. NELSON:  Understood.

19               MX. GREEN:  -- but this is something, you know, we

20   raised in the motion --

21               THE COURT:  Okay.  Do you see this problem,

22   Ms. Nelson?

23               MS. NELSON:  I understand that objection that

24   Mx. Green just raised.

25               THE COURT:  Okay.  So that has to be clarified on

1                          PROCEEDINGS                    51

2  the chart, what you're doing, what you're not going to do.

3          MX. GREEN:  And, your Honor, this is the first

4  consolidated protest request motion that we've made, I

5  think three times now, which is, you know, we sent them

6  that letter last year in September listing all the

7  categories of documents we were missing --

8          THE COURT:  Okay.  Mx. Green, we've got to --

9  right now I want to just figure out what to do next.

10         MS. NELSON:  I just want to -- I'm looking at the

11 chart right now, and I believe what your Honor is asking

12 for and what Mx. Green just raised is on the chart.  She's

13 talking about IAB files, and we have burden argument we put

14 in -- our objection is that producing the document is

15 unduly burdensome, and then we have an explanation as to

16 the burden.

17         MX. GREEN:  Which -- sorry, let's all look at

18 the same place on the chart.  Which request are you

19 looking --

20         MS. NELSON:  I think it's 18, Row 18, Document

21 Request Number 17.  I don't think we need to go into

22 all of it, and again, I --

23         MX. GREEN:  But the --

24         MS. NELSON:  -- apologize -- I'm going to

25 apologize because my knowledge of the chart is

1                          PROCEEDINGS                    52

2  limited.  I'm just pointing out this one particular

3  item.

4          MX. GREEN:  I mean, 18 is Academy Transcripts.

5          MS. NELSON:  Document Request Number 17.  I'm

6  at Row 18.

7          MX. GREEN:  That's not the request we're

8  talking about.

9          MS. NELSON:  I didn't say it was the request

10  you're talking about.  I'm talking about IAB

11  investigation files.

12          MX. GREEN:  Right.  But we're talking IAB

13  requests, investigation files that were due July 31st

14  last year, not a new request.

15          MS. NELSON:  What I'm trying to point -- this

16  is not a new request, and what I'm trying to point out

17  is to the extent that there is an objection and a

18  burden, it has been explained.

19          THE COURT:  Okay, folks, listen.  Mx. Green,

20  I'd like you to take -- to continue discussing this

21  with Ms. Nelson offline.  Your goal is to get a redone

22  chart as soon as you can.  I think it may be helpful

23  to have Ms. Weiss involved if we're going to have this

24  be fruitful.  We're --

25          MS. NELSON:  I agree.

```
 1                        PROCEEDINGS                    53

 2              THE COURT:  -- going to have to have some delay

 3   due to the intervenors.  So why don't you take it day

 4   by day next week and see if you can figure out a way

 5   to put this together and have your discussion, then

 6   bring me any disputes.  I just don't think we can

 7   solve this right now.

 8              MX. GREEN:  All right, your Honor.  I suppose

 9   the thing I will ask for, then, is what -- can we say

10   that one of the things that we need to figure out is

11   how they're going to identify documents for us.  And

12   so, you know, if it's not Bates numbers, we need an

13   agreed-upon way to identify them.

14              THE COURT:  Yes.  You need to talk to Ms. Weiss

15   and explain to her the problem with all those

16   statements.  I agree there's a problem.

17              MX. GREEN:  Okay.  And so just so that we're

18   all super-clear, because I had thought we were at

19   least somewhat clear before, what the new chart needs

20   to do is across all of the requests and all of the

21   productions state what it is they think we have and

22   what it is they think they're going to give us and

23   what it is that across time they have withheld; is

24   that right?

25              THE COURT:  They have to state what they have
```

```
 1                        PROCEEDINGS                54
 2  withheld or plan to withhold, yes.
 3            MX. GREEN:  Yes.  Okay.  Great.  I think we can
 4  do that.
 5            THE COURT:  Well, it's the City who has to do
 6  it.
 7            Okay, all right, so I'll wait to hear from you
 8  as to, you know, what the next thing is.  In the
 9  meantime, an order will be issued about the
10  intervenors.
11            MS. NELSON:  Thank you, your Honor.
12            MS. MARQUEZ:  Your Honor -- your Honor, this is
13  Lillian Marquez from the AG's Office.  If I may make one
14  last request regarding the depositions with regard to the
15  line-level officers?  So there remains to be scheduled
16  about five line-level officers.  To be most efficient about
17  our time in the midst of this sort of delay for the higher
18  levels, I'd ask that we have a deadline for the City to
19  propose dates within the current schedule to schedule those
20  unscheduled line officers and that it be made clear that,
21  as with the higher levels, that lack of preparation is not
22  a reason to cancel, rather it should just be limited to
23  emergent circumstances, as you earlier explained.
24            THE COURT:  I think my order about emergent
25  circumstances related to the high-level people who I
```

1                         PROCEEDINGS                    55

2   assumed were a lot harder to reschedule than line officers.

3   So I think you're asking for something new right now.  Yes,

4   my order was about high-level people.

5            MS. MARQUEZ:  If we could get a date to schedule

6   these unscheduled line officers, given that we --

7            THE COURT:  Yes.  Let's -- any problem getting

8   them dates in the next week to do this?

9            MS. NELSON:  We can -- I'll defer to Ms. Robinson,

10  but I think we can get them done by next -- get schedule

11  dates by next Friday.

12           THE COURT:  Yes.  Schedule dates --

13           MS. ROBINSON:  Yes, your Honor.  This is Amy

14  Robinson --

15           THE COURT:  Ms. Robinson, any problem with that?

16           MS. ROBINSON:  I don't see any problem with that,

17  your Honor.

18           MS. NELSON:  Your Honor, I would also like if

19  Ms. Marquez can send me the name of those five officers

20  that she believes --

21           THE COURT:  I don't think you need me to order

22  that.  I'm sure you can talk to her directly about that.

23           MS. ROBINSON:  Thank you, your Honor.

24           MS. MARQUEZ:  And I'll just correct my -- this is

25  Lillian Marquez again -- I'll just correct myself.  It's

1                              PROCEEDINGS                    56

2    five unscheduled for the ones that were in most of the

3    consolidated actions, but then there were a few that joined

4    in later in time.  So Hernandez and Gray may still have

5    some that are unscheduled.  But we could speak offline.  I

6    just want to put that on the Court's radar.

7              THE COURT:  All right.

8              MX. GREEN:  And before we go, if we are wrapped

9    with the -- oh, sorry, I assume you were about to say

10   something on that.

11             THE COURT:  No, go ahead.  What else?

12             MX. GREEN:  Before we are wrapped on that, I

13   think, you know, we kind of derailed from dealing with the

14   staffing issue when we discussed the Second Circuit's

15   mandate.  But, you know, I think the staffing issue is

16   plugging into every single issue here.  And, you know, it

17   plugged into the motion that we filed this morning because

18   the defendants missed the two very clear deadlines to

19   produce the Mullens and Payne documents that the Court

20   ordered.  And so, you know, I think -- I don't know how we

21   deal with it, but I think we should have something on

22   staffing.

23             THE COURT:  I'm not ready to deal with staffing

24   right now.  Ms. Weng, any idea why you violated my order?

25   Did you violate my order -- not you, the City?

```
 1                          PROCEEDINGS                    57

 2            MS. WENG:  I'm not sure I can speak to this

 3  because I'm -- actually wasn't involved in that, so I

 4  apologize, your Honor.

 5            THE COURT:  Anyone here know about it from the

 6  defendants?

 7            MS. NELSON:  I cannot speak to it, either, your

 8  Honor.  Apologies.

 9            THE COURT:  I mean, it's pretty serious. I mean,

10  I --

11            MS. NELSON:  I understand.  But we really tried to

12  staff the case and so there are assignments are given to

13  different individuals --

14            THE COURT:  Who was in charge of this?

15            MS. NELSON:  I --

16            THE COURT:  Who's in charge of making sure my

17  order was complied with --

18            MS. NELSON:  Well, the entire team, your Honor,

19  should be.  But as to Payne, I just don't recall who the

20  attorney is that's assigned to that matter.

21            THE COURT:  And it's not someone on the call right

22  now?

23            MS. NELSON:  It's not Ms. Weng or I, no.

24            THE COURT:  Or Ms. Robinson?

25            MS. NELSON:  Or Ms. Robinson.
```

```
 1                          PROCEEDINGS                    58

 2              THE COURT:  All right, well, you'd best respond to

 3    this letter within the two business days, which is Tuesday.

 4    And whatever your response is, I'd like to be -- who's the

 5    head of your unit?

 6              MS. NELSON:  The head of the Special Federal

 7    Litigation Unit?

 8              THE COURT:  Yes.

 9              MS. NELSON:  Patricia Miller.

10              THE COURT:  Ms. Miller should sign the letter in

11    addition to whoever else signs it.  Got it?

12              MS. NELSON:  Got it.

13              THE COURT:  Okay.  All right, Mx. Green, anything

14    else for now?

15              MX. GREEN:  No.  We will confer next week, and I'm

16    sure we'll either send you opposing letters or a letter

17    telling you what we think we should do with the chart.

18              THE COURT:  Okay.  All right.  Thank you,

19    everyone.  Good-bye.

20              (Whereupon, the matter is recessed.)

21

22

23

24

25
```

PROCEEDINGS                              59

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of In Re: New York

City Policing During Summer 2020 Demonstrations, Docket

#20-cv-08924-CM, was prepared using digital transcription

software and is a true and accurate record of the

proceedings.

Signature  *Carole Ludwig*

Carole Ludwig

Date:    March 4, 2022