UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x

In Re: New York City Policing During Summer 2020　　　：　Index No. 20-cv-8924 (CM)(GWG)
Demonstrations

-------------------------------------------------------------- x

BRIDGET FITZPATRICK, Managing Attorney of the Civil Litigation Unit ("CLU") of the New York City Police Department ("NYPD"), declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am an attorney admitted to practice in the State of New York.

2. I submit this declaration at the request of the New York City Law Department, attorneys for the Defendants herein, in support of the City's motion for an extension of time, past April 1, 2022, to produce certain documents and categories of documents to plaintiffs.

3. There are certain documents and categories of documents that the NYPD will not be able to provide to the Law Department in time for them to be produced to plaintiffs by April 1, 2022, pursuant to Your Honors' March 16, 2022 Order (Dkt. No.453).

4. Plaintiffs provided Defendants with a list of 83 different locations know as Schedule A. Schedule A lists various dates and geographical locations. In order to provide Plaintiff with all the documents requested for each location listed in Schedule A, CLU must first ascertain which precincts cover the geographical areas for each of the 83 dates listed in Schedule A. Many of the areas of occurrence requested by plaintiff in Schedule A cover

at a minimum two precincts. Most NYPD databases require the precinct of occurrence in order to insure a complete and accurate search. To provide Plaintiffs with all the documents they requested CLU must search six different databases each with different search functionality. Some searches require cross referencing information to ensure that the document produced is protest related. For example, Medical Treatment of Prisoner forms ("MTP's") do not always have a narrative and often when they do it is not clear why the individual named was arrested. In order to ascertain if the arrest is protest related, you have to cross reference the information listed in the FORMS database with information listed in Omniform. Given the broad parameters in Schedule A in order to find MTPs forms that are responsive, the first query in FORMS is the date of incident and borough of occurrence. Then each form from the entire query list for that date and borough has to be reviewed one by one to see if the form relates to a particular location listed in Schedule A. Finally, if the narrative in the MTP form does not state that it is related to a protest the arrest number must be searched in Omniform to see if the arrest was protest related.

5. Regarding arrest paperwork there are two different ways to search for arrest paperwork based upon the information provided by the Plaintiffs. The first way is to use the Omniform, database and go to the arrest report search page and enter a date range and precinct. You would need to determine from Schedule A which precinct are in a given geographical location for example if you are looking for arrests that occurred in Times Square, you would need to look at all arrests from Midtown North and South for any given day. Then you would have to go to the que of responsive documents and read the narrative to insure that the arrest is related to the protests. Then you have to take the arrest number and enter that number into the Omniform arrest portal, which should have the majority of

the Arresting Officer's paper work. Alternatively, you could review the Mass Arrest Processing spread sheets which contain arrest numbers and run those arrest numbers in the Omniform arrest portal. Running a query in the Omniform arrest portal requires an arrest number (the arrest portal has the arrest paperwork but only for Desk Appearance Tickets and live arrests).

6. The FORMS database contains C-Summonses, Aided Reports, TRIs (Threat, Resistance Injury), Stop Reports as well as Medical Treatment of Prisoner forms. Searching for any of these reports require the same protracted type of search as for MTP's.

7. Regarding disciplinary and personnel files there are five different databases that need to be searched to ensure a complete and through search. The Internal Case Management System houses IAB resumes and logs from 2013 forward. CLU can only search for IAB resumes in ICMS by UMOS tax number. Currently there are three people assigned to CLU who have access to the ICMS database. That access is restricted so CLU can only produce IAB resumes and logs, not case files. To obtain case files a communication has to be sent to the IAB records officer. ICMS files are digital. IAB also has the IAPRO database which contains information regarding IAB logs prior to 2013. There are no case files stored in IAPRO just summaries of allegations. You can search by tax number or shield number but not date of incident in IAPRO. If a case file is required from prior to 2013, it is a paper case file which likely has to be retrieved from the NYPD's off site storage facility. Normally, when we search for disciplinary history we would have a subject officer's name or tax number. Many of the disciplinary investigations sought by plaintiff have neither name nor tax. For example, Plaintiffs have requested all disciplinary files from 2014 forward related to allegations of UMOS being members of racist organizations. That

request has to be handled by IAB records officer because they have greater search capability. IAB does not investigate every allegation of UMOS misconduct. Cases that are not investigated by IAB are tracked to the Chief of Department Investigation and Review Section who sends the allegation to either an Investigatory Unit or the ICO of the command involved. From 2018 forward those investigations are housed in a database called Internal Case Management Tracking (ICMT). Currently the NYPD Legal Bureau does not have access to this database, in order to obtain records from ICMT a communication has to be sent to one of two liaisons in the Chief of Department's office. These liaisons are responsible for answering every request from the entire Legal Bureau. In order to provide plaintiff with the personnel records and training records for every UMOS named CLU has to send communications to the Chief of Training and Human Capital. CLU has access to the Central Personnel Index (CPI) and Central Personnel Records (CPR). CPR lists trainings that a UMOS has attended but not the course material. Course material has to be obtained from Chief of Training, that information is not on a database that is accessible to CLU.

8. Plaintiffs have requested policy and procedure documents dating back to 2002. Obtaining historical documents, which are largely paper based, requires a written request to the command that is the custodian of the documents. This is not always readily apparent as the organizational structure of the NYPD has changed considerably over the years. For example, the Strategic Response Group was proceeded by a borough wide task force. Once the appropriate custodian is identified then that command must request the archived boxes be obtained from our vendor. Depending upon the type of records requested it is not unusual to have to manually search through hundreds of boxes.

9. Plaintiff designated 9 commands that they want searched for communications regarding a variety of topics including but not limited to policy changes implemented after certain events if such documents exist. My colleague Heidi Grygiel has been working on obtaining information from shared drives from these 9 commands. This is another time-consuming process. Approximately 20 terms were run on each of their communications databases. Some terms like Garner, Occupy Wall Street – specific protest names had very modest results. The broader terms – protest, demonstrations, analysis – brought in larger document counts. For these, EAC Grygiel must go through and choose the ones that are actually protest related. Once they have been identified, she will have to go into the actual share drives and locate the specific documents and save them all, which can only be done one at a time. Ms. Grygiel is also trying to schedule about 8-10 interviews of team leaders at the Intelligence Division to find out how long it will take to collect documents from their shared drives.

10. For any given day on Schedule A, over 600 people could have had contact with the NYPD during the protest. The type of interaction an individual had with the NYPD will dictate what documents if any will exist. So, for example, on the early dates when there was a large number of property crimes being committed, there is more arrest paperwork that has to be pulled. Additionally, for the earlier dates on Schedule A there are several hundred invoices that have be pulled and reviewed to insure that they are protest related.

11. It is not feasible to hire outside contractors to assist in locating and collecting documents. Anyone who works for the NYPD, even interns, have to go through a rigorous background check. Additionally, due to the sensitive nature of the records that are stored on our databases, even if we could get contractors through the background check, we would have

to request access via channels to every database. That takes at a minimum two weeks often longer.

12. Finally, one member of the consolidated protest team at CLU is out as of Friday with Covid. CLU is staffed largely with UMOS, the incoming administration has indicated that they wish to increase police presence throughout the City. Therefore, on any given day at least one UMOS from CLU is not in the office but rather assigned to enforcement details. All of the above has proven slow down the team even further.

13. Due to the labor-intensive steps required to collect the documents requested by plaintiffs. we expect it to take at least an additional two weeks from April 1st to complete the document production.

Dated: March 22, 2022

_____
BRIDGET FITZPATRICK