UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x

In Re: New York City Policing During Summer 2020   :
Demonstrations                                                   :     Index No. 20-cv-8924 (CM)(GWG)

----------------------------------------------------------------- x

ERNEST F. HART, Deputy Commissioner for Legal Matters ("DCLM") of the New York City Police Department ("NYPD" or "Department"), declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am an attorney admitted to practice in the Courts of the State of New and I have held the position of DCLM with the NYPD since March of 2019. As the DCLM, I oversee the Legal Bureau, which provides assistance to law enforcement personnel regarding department legal matters. This includes, but is not limited to, assisting members of the NYPD in interpreting and enforcing federal, state, and local laws; ensuring that the policies and practices of the Department are lawful and are fairly applied; and developing legislation in accordance with the needs of the Department and public safety concerns. As an executive member of this Department, I am responsible for attending executive staff meetings to discuss various issues as they arise and advising the Police Commissioner on all legal matters accordingly.

2. I submit this declaration at the request of the New York City Law Department, attorneys for the Defendants herein, in support of the Defendants' opposition to Plaintiffs' letter motion to

Compel the City of New York to produce documents related to an after-action review process conducted by the NYPD (Dkt. No.463).

3. I have personal knowledge of the facts and circumstances surrounding the drafting of the "Conforti Report," and submit this declaration to further explain the rationale for the designation of this document as subject to the deliberative process privilege.

4. Shortly after the first weeks of the George Floyd protests, then-Police Commissioner Dermot Shea tasked Assistant Chief Joseph Conforti, with reviewing the Department's response to the protests in New York City which occurred in large part between May 25 and June 30, 2020.

5. Within about two months, Assistant Chief Conforti drafted a report, approximately 40 pages in length. The foundation of this report relied upon, in most part, Department records as well as interviews of various members of service.

6. A sampling of the documents, all of which have been previously produced to plaintiffs in this action, considered for this report include:

> Complaint reports;
> Arrest reports and C-summonses;
> TRI reports;
> MOS aided reports;
> Detail rosters;
> Training curriculums and lesson plans;
> Patrol guide procedures;
> Finest messages;
> CJB arrest statistics;
> MAPC statistics;
> Time records/overtime costs;
> ARGUS video;
> Open source social media; and
> Statistical information from both IAB and CCRB regarding allegations made between May and June 2020.

7. Upon information and belief, Assistant Chief Conforti interviewed approximately 100 members of service, all below the rank of four-star chief. Some of these interviews were conducted

on an individual basis, some in a group setting. None of the interviews were recorded with any audio or video device. The substance of these interviews mostly revealed the individual officers' personal impressions, opinions, and thoughts.

8. Upon information and belief, approximately every two weeks, Assistant Chief Conforti would provide Commissioner Shea with an update as to his opinions on the Department's response to the protests. In a few instances, this resulted in immediate changes to the report. By way of example, because there were instances where individuals set garbage, as well as police vehicles, on fire, the Department moved to purchase handheld fire extinguishers, known as "Cold Fire", to place in police vehicles so officers could quickly eliminate the dangerous conditions that fires create.

9. Before an initial draft of the report was even circulated, executive members of this Department met to discuss some of Assistant Chief Conforti's preliminary thoughts on the Department's response to the protest. During this meeting, there were participants who questioned some of the reporting.

10. Thereafter, an initial draft of the report was given to several individuals within the NYPD, including myself, asking for comments and/or revisions.

11. Myself and others provided Assistant Chief Conforti with our proposed substantive changes, only some of which were adopted by him, resulting in a subsequent draft that continued to reflect the personal opinion of Assistant Chief Conforti.

12. Based upon information and belief, a subsequent draft was not provided to the Police Commissioner.

13. Before any final draft of the report was compiled, the New York City Department of Investigations and the Corporation Counsel released their reports, which included suggestions on

improving policing of protests. So that there would not be competing reports and in the interest of accepting an independent report, Assistant Chief Conforti's draft report was abandoned at some point.

14. Assistant Chief Conforti's draft report was never finalized, accepted or approved. The draft report was the opinion of Chief Conforti only, and not of the City or the NYPD.

15. As more fully explained in the letter accompanying this declaration, since the Conforti Report is nothing more than a series of drafts, it is subject to the deliberative process privilege.

April 6, 2022

_____
ERNEST F. HART