**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: New York City Policing During Summer 2020 Demonstrations | |
| This filing is related to: | |
| *Payne v. De Blasio, et al.* | 20 Civ. 8924 (CM)(GWG) |
| *Sierra v. City of New York, et al.* | 20 Civ. 10291 (CM)(GWG) |
| *People v. City of New York, et al.* | 21 Civ. 322 (CM)(GWG) |
| *Sow v. City of New York, et al.* | 21 Civ. 533 (CM)(GWG) |

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO
MOTIONS TO INTERVENE BY SERGEANTS BENEVOLENT ASSOCIATION AND
DETECTIVES' ENDOWMENT ASSOCIATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ......................................................................................................................... 5

    I.   Proposed Intervenors are Not Entitled to Intervene as a Matter of Right Under Rule 24(a). 5

        A.   If the PBA intervenes, it will adequately represent any interest that Proposed Intervenors may have in the outcome of this litigation........................................................... 5

        B.   Proposed Intervenors' motions are foreclosed by the law of the case. ......................... 10

        C.   The SBA's interest in preserving sergeants' discretion is not cognizable.................... 12

    II.  Permissive Intervention Under Rule 24(b) Is Unwarranted. ................................................ 14

    III. If the Court Grants Intervention, Proposed Intervenors Should be Limited to Filing Their Original Proposed Pleading and this Court Should Limit the Scope of Their Participation ..... 17

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*335-7 LLC v. City of New York*
   No. 20 CIV. 1053 (ER), 2020 WL 3100085 (S.D.N.Y. June 11, 2020) ................................20

*ACRA Turf Club, LLC v. Zanzuccki,*
   561 F. App'x 219 (3d Cir. 2014) ................................................................... 15-16

*Afro Am. Patrolmen's League v. Duck,*
   503 F.2d 294 (6th Cir. 1974) .............................................................................7, 9

*AT&T Corp. v. Sprint Corp.,*
   407 F.3d 560 (2d Cir. 2005)................................................................................15

*Battle v. City of N.Y.,*
   No. 11-CV-3599, 2012 WL 112242 (S.D.N.Y. Jan. 12, 2012) ...................... 16-17

*British Airways Bd. v. Port Auth. of N.Y. & N.J.,*
   71 F.R.D. 583 (S.D.N.Y. 1976), *aff'd,* 556 F.2d 554 (2d Cir. 1976)......................17

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
   250 F.3d 171 (2d Cir. 2001)............................................................................. 6-7

*Catanzano by Catanzano v. Wing,*
   103 F.3d 223 (2d Cir. 1996) .............................................................................15

*DiLaura v. Power Auth. of State of N.Y.,*
   982 F.2d 73 (2d Cir. 2006.................................................................................10

*Doe v. New York City Dep't of Soc. Servs,*
   709 F.2d 782 (2d Cir. 1983...............................................................................10

*EM Ltd. v. Republic of Argentina,*
   695 F.3d 201 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML*
   *Cap., Ltd.,* 573 U.S. 134 (2014) ........................................................................18

*Firebird Soc. of New Haven, Inc. V. New Haven Bd. Of Fire Comm'rs,*
   66 F.R.D. 457 (D. Conn. Feb. 3, 1975), *aff'd sub nom. Firebird Soc. V.*
   *Members of Bd. Of Fire Comm'rs, City of New Haven,* 515 F.2d 504 (2d Cir.
   1975) ................................................................................................................ 7-8

*Floyd v. City of N.Y.,*
   770 F.3d 1051 (2d Cir. 2014)...........................................................................5, 12

*Floyd v. City of New York*,
  302 F.R.D. 69 (S.D.N.Y. 2014), *aff'd in relevant part, appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014) ...................................................................5

*FTC v. First Capital Consumer Mbrshp. Servs.*,
  206 F.R.D. 358 (W.D.N.Y Oct. 15, 2001) ...........................................................16

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*,
  797 F.2d 85 (2d Cir. 1986) ..................................................................................12

*In re New York City Policing During Summer 2020 Demonstrations*,
  27 F.4th 792 (2d Cir. 2022) .........................................................................*passim*

*Kleeberg v. Eber,,*
  No. 16-CV-9517 (LAK)(KHP), 2019 WL 1416898 (S.D.N.Y. Mar. 28, 2019)…................17

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) .................................................................................5

*Natural Resources Defense Council, Inc. v. Costle*,
  561 F.2d 904 (D.C. Cir. 1977) ........................................................................ 8-9

*Natural Resources Defense Council, Inc. v. New York State Dep't of Envtl. Conservation*,
  834 F.2d 60 (2d Cir. 1987) ...................................................................................8

*New York SMSA Ltd. P'ship v. Vill. of Nelsonville*,
  No. 18 CV 5932, 2019 WL 1877335 (S.D.N.Y. Apr. 26, 2019) .........................6–7

*New York v. United States Dep't of Educ.*,
  No. 20-CV-4260, 2020 U.S. Dist. LEXIS 122489 (S.D.N.Y Jul. 10, 2020) ..............15, 16–17

*New York v. United States Dep't of Health & Hum. Servs.*,
  No. 19 CIV. 4676 (PAE), 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019) .................9

*Reynolds v. LaSalle Cnty.*,
  607 F. Supp. 482 (N.D. Ill. Apr. 15, 1985) ........................................................19

*SEC v. Credit Bancorp, Ltd.*
  No. 99 CIV. 11395 (RWS), 2000 WL 1170136 (S.D.N.Y. Aug. 16, 2000) .........................18

*Trbovich v. United Mine Workers of Am..*,
  404 U.S. 528 (1972) ..............................................................................................6

*United States v. City of New York*,
  198 F.3d 360 (2d Cir. 1999) .................................................................................18

iv

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC,*
    No. 18-CV-4044 (BCM), 2021 WL 6201777 (S.D.N.Y. Dec. 31, 2021) ..................................18

*U.S. v. City of Albuquerque,*
    No. 14-CV-1025 (JB)(SMV), 2020 WL 3129825 (D.N.M. June 12, 2020) ..........................19

*U.S. v. City of Albuquerque,*
    No. 14-CV-1025 (JB)(SMV), 2020 WL 5987797 (D.N.M. Dec. 16, 2021) ..........................19

*Vulcan Soc. of Westchester Cty., Inc. v. Fire Dep't of City of White Plains,*
    No. 78 CIV. 911 (ADS), 1979 WL 259  (S.D.N.Y. June 28, 1979) ..................................7 n.2

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,*
    922 F.2d 92 (2d Cir. 1990) .......................................................................... *passim*

*Wildearth Guardians v. Salazar,*
    272 F.R.D. 4 (D.D.C. Dec. 6 2010) ............................................................... 18-19

*Wu v. City of New York,*
    934 F. Supp. 581 (S.D.N.Y. Jul. 22, 1996) .........................................................13

## RULES

Fed. R. Civ. P. 24(a) ............................................................................... *passim*

Fed. R. Civ. P. 24(b) ............................................................................... *passim*

## INTRODUCTION

Plaintiffs in the *Payne, Sierra, People,* and *Sow* cases collectively submit this memorandum of law in opposition to the second motions to intervene filed by the Sergeants Benevolent Association (SBA) and the Detectives' Endowment Association (DEA) (collectively, "Proposed Intervenors").  *See Payne v. De Blasio*, Dkt. No. 20-CV-8924, ECF Nos. 468, 474. Proposed Intervenors renew their failed motions based on the Second Circuit's recent, though non-final, decision to grant the Police Benevolent Association (PBA) intervention based on its stated interest in officer safety.  *Id.*  Regardless of the final outcome of that decision, the Court should deny Proposed Intervenors' motions with prejudice.

Should the Second Circuit's decision stand, the Court should deny the unions' motions because the PBA will adequately represent Proposed Intervenors' interest in front-line officer safety.  To the extent Proposed Intervenors seek to protect additional interests, the law of the case forecloses intervention based on those interests, which were either rejected by this Court (and no appeal was taken by the Proposed Intervenors) or were not raised in the original intervention motions.  In any event, those additional interests are also factually baseless and too remote to be cognizable and therefore cannot establish the unions' right to intervention under Rule 24(a)(2).  Permissive intervention under Rule 24(b) at this stage of litigation is also foreclosed by the law of the case and, regardless, remains unwarranted as it would substantially prejudice the parties and impede efficient and effective adjudication of this litigation.  This Court has broad discretion to control this litigation by denying the intervention of redundant parties and should exercise that discretion to deny the extensive and disruptive participation Proposed Intervenors seek.

1

## BACKGROUND

This litigation currently comprises eight civil rights actions filed against the City of New York ("City") and/or certain City and New York City Police Department (NYPD) leadership and personnel (collectively, "Defendants"), alleging that Defendants have engaged or continue to engage in unconstitutional or otherwise illegal conduct in policing social justice protests throughout New York City. *See generally* original and Amended Complaints in *Payne* (ECF No. 54); *Sierra, et al, v. City of New York*, No. 20 Civ. 10291 (ECF No. 38); *Wood v. De Blasio, et al*, No. 20 Civ. 10541 (ECF No. 48); *People of the State of New York v. City of New York et al*, No. 21 Civ. 322 (ECF No. 51); *Sow, et al, v. City of New York et al*, 21 Civ. 533 (ECF No. 49); *Gray v. City of New York*, 21 Civ. 6610 (ECF No. 1); *Hernandez v. City of New York*, 21 Civ. 7406 (ECF No. 1), *Rolon v. City of New York*, 21 Civ. 2548 (ECF No. 1) ("*Rolon*"), and *Minett v. City of New York*, 21 Civ. 8161 (ECF No. 1). The Court consolidated these cases for pretrial purposes and set an expedited discovery schedule originally slated to conclude by the end of 2021, with the exception of *Rolon*, which is stayed. *See Payne*, ECF Nos. 40 ¶¶ 1, 4, 150. Defendants' persistent violations of the Court's discovery orders and delay in production have pushed the discovery deadline into this year. ECF No. 450.

Proposed Intervenors and the PBA each moved to intervene, under Rule 24(a)(2) or, in the alternative Rule 24(b). ECF Nos. 38, 45, 48. The three unions represent current or former NYPD employees at various ranks (the PBA, police officers; the SBA, sergeants; and the DEA, detectives), and they alleged identical interests in defending against potential remedies that they believe would impair officer safety or infringe statute-based collective bargaining rights. ECF No. 47 at 1–2, 49 at 2, 53 at 2. The PBA additionally sought to protect its members from damage that may be done to their reputations. ECF No. 49 at 2. The SBA and DEA appended to

their motions proposed pleadings, per Rule 24(c), ECF Nos. 39-16, 44-3, but the PBA did not. The Court denied those motions, concluding that the unions' interests in officer safety and bargaining rights were too remote to be cognizable and that the PBA's interest in avoiding collateral consequences of the litigation—tarnishing officers' reputations—would be adequately represented by the City.  ECF No. 144.

The SBA and DEA did not appeal that decision; only the PBA did.  2d Cir. Dkt. 21-1316. On March 4, 2022, the Second Circuit issued an opinion reversing this Court's denial of intervention with regard only to those matters that seek injunctive or declarative relief: *Payne*, *Sierra*, *People*, and *Sow*.  *Id.*, No. 134-1; *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792 (2d Cir. 2022) ("*PBA Op.*").  First, the Circuit found that the PBA had a cognizable interest in the "safety of front-line officers" that, the court speculated, "may be impaired in litigation that could result in a determination that NYPD policies governing the interaction of officers and protesters are unlawful and must be altered." *PBA Op.* at 799.  To tether the PBA's safety interest to the speculated outcome of this litigation, the court assumed that Plaintiffs seek to change NYPD policies to be "less focused on the safety interest of the front-line officers."  *Id.* at 802.  Second, the Circuit determined that the PBA's interest in employee safety "might not be adequately represented" by the City of New York because the PBA had criticized its approach to the Protest response and because its former mayor Bill de Blasio had once agreed in a statement that the NYPD must undergo reforms.  *Id.* at 803. Individual defendant officers were also deemed inadequate representatives because they are primarily concerned with vindicating their own conduct.  *See id.* at 803–04.

Regarding the two actions that seek only monetary damages and not a change to NYPD policy, the Court of Appeals agreed that the PBA had failed to establish a cognizable intervenor

interest.  *Id.* at 804 n.4.  The Second Circuit did not disturb this Court's rulings regarding the denial of permissive intervention or findings that the unions lack a cognizable interest in protecting their collective bargaining rights or officers' reputational interests.  *See PBA Op.* at 799 n.3 (declining to reach these issues).  The appellate court has stayed its mandate until at least April 18, the deadline for petitioning for a rehearing.  *See* 2d Cir. Dkt. 21-1316, No. 151.  In anticipation of the PBA's intervention, this Court has stayed depositions of senior NYPD officials until the PBA's appeal is resolved.  ECF. No. 456.

In the meantime, the SBA and the DEA have filed these motions to intervene in the *Payne*, *Sierra*, *People*, and *Sow* cases, raising largely the same arguments as their original motions.  ECF Nos. 468, 474.  Proposed Intervenors reassert their interest in front-line officer safety, arguing that the Second Circuit has found the PBA's identical interest to be cognizable.  ECF No. 469 ("SBA Mem.") at 1; 476 ("DEA Mem.") at 2.  The DEA also reasserts its interest in ensuring that the City of New York negotiates in good faith regarding its members' safety, ECF No. DEA Mem. at 9–11, though it did not challenge the Court's decision rejecting that interest as non-cognizable, ECF No. 144 at 8.  Finally, the SBA asserts an interest in preserving sergeants' discretion to order the use of protective gear and weapons, SBA Mem. at 2, 14, an argument it did not raise in its original motion to intervene.  Proposed Intervenors argue that these additional interests in preserving detectives' collective bargaining rights and sergeants' discretion cannot be adequately represented by any existing party or the PBA.  DEA Mem. at 9–11; SBA Mem. at 2.

**ARGUMENT**

I.   **Proposed Intervenors are Not Entitled to Intervene as a Matter of Right Under Rule 24(a).**

Proposed Intervenors have failed to meet their burden to demonstrate that they are entitled to intervene as of right.  To intervene as of right under Rule 24(a)(2), a proposed intervenor must: (1) file a timely motion; (2) "assert[] an interest relating to the property or transaction that is the subject of the action;" (3) demonstrate that "without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest;" and (4) show that its "interest is not adequately represented by the other parties."  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (citing *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).  "[F]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (internal citation omitted) (emphasis in original).  "The burden to demonstrate a right to intervene, including a cognizable interest, is at all times on the applicant." *Floyd v. City of New York*, 302 F.R.D. 69, 100 (S.D.N.Y. 2014), *aff'd in relevant part, appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 490 (S.D.N.Y. 1998)).  Regarding Proposed Intervenors' and the PBA's shared interest in the safety of front-line officers, the PBA will adequately represent that interest and thus further intervention should be denied.  Proposed Intervenors' motions are otherwise foreclosed by the law of the case.

A.   **If the PBA intervenes, it will adequately represent any interest that Proposed Intervenors may have in the outcome of this litigation.**

Proposed Intervenors assert that they share the PBA's interest in the "safety of front-line officers" and that the Second Circuit's decision recognizing that interest should be extended to

"similarly-situated union[s]" like the SBA and DEA.  DEA Mem. at 6–7; *see also* SBA Mem. at 8 ("Like the PBA, the SBA has a direct interest in the merits based on . . . injunctive relief, which could, in turn, impair the safety of sergeants on the job.").  Should the Second Circuit's decision become final, the PBA will become a party in this litigation and will represent that broadly-defined interest in officer safety.  Proposed Intervenors challenge the adequacy of the PBA's representation only to the extent that the PBA may not be sufficiently focused on minute differences in the role of sergeants or detectives in its representation.  That is not enough to overcome the presumption of adequate representation.

While the burden of showing inadequacy may generally be "minimal," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972), the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective," *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179–80 (2d Cir. 2001).[1]  Here, Proposed Intervenors admit, and indeed must admit, that they share the same interest as the PBA in front-line officer safety in order to benefit from the PBA's favorable ruling on appeal.

"Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action."  *Butler, Fitzgerald & Potter*, 250 F.3d at 179–80.  To rebut this presumption, Proposed Intervenors "may offer, for example, 'evidence of collusion, adversity of interest, nonfeasance, or incompetence' by the named party sharing the same interest."  *New York SMSA Ltd. P'ship v. Vill. of Nelsonville*, No.

---

[1] Although the Circuit in the PBA's appeal did not employ this heightened standard, perhaps based on its determination that Defendants' interests diverged from the PBA's, it also did not disturb that precedent.  *PBA Op.* at 803.

18 CV 5932, 2019 WL 1877335, at *2 (S.D.N.Y. Apr. 26, 2019) (quoting *Butler*, 250 F.3d at 180).  Proposed Intervenors have made no such showing, nor could they.

The PBA, like the SBA and DEA, share an "ultimate objective" of defending "policies that governed front-line officers' rules of engagement with demonstrators" that serve to protect officer safety.  *PBA Op.* at 797; *see also* DEA Mem. at 6–7; SBA Mem. at 8.  All three unions define "front-line officers" to include their members and are critical of Defendants' purported failure to protect their members from harm during the Protests—whether due to the failure to adequately train, outfit with protective gear, or supervise them.  *See PBA Op.* at 797–98, 803–04; DEA Mem. at 8; SBA Mem. at 10 n.3, 13.  The unions also desire to participate in both the merits phase of the litigation, defending the legality of their members' actions and tactics at the Protests, and (should there be one) the judicial review of any proposed consent decree.[2]  *See* ECF No. 49 at 2, 11–12; DEA Mem. 12–16; SBA Mem. at 9, 13, 16–17.  The Court need not host all of NYPD's many unions[3] seeking to represent minutely-defined differences in officer roles and hypothetically-unique safety risks, given that the PBA would be a party already representing the broader shared interest in front-line officer safety.  *See Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (upholding exclusion of two police unions as intervenors because their interests were adequately represented by individual officers who had intervened to protect their interests in the Toledo Police Department's promotional practices); *Firebird Soc. of New Haven, Inc. v. New Haven Bd. of Fire Comm'rs,* 66 F.R.D. 457, 465–66 (D. Conn.

---

[2] The degree of any intervenor's participation in settlement would be the same as a nonparty if a consent decree is proposed because the "parties cannot be prevented from negotiating on their own."  *Vulcan Soc. of Westchester Cnty., Inc. v. Fire Dep't of City of White Plains*, No. 78 CIV. 911 (ADS), 1979 WL 259, at *1 (S.D.N.Y. June 28, 1979).

[3] There are yet more NYPD unions that represent officers who were at the Protests: the Captains Endowment Association and the Lieutenants Benevolent Association.

1975), *aff'd sub nom. Firebird Soc. v. Members of Bd. of Fire Comm'rs, City of New Haven*, 515

F.2d 504 (2d Cir. 1975) (denying motion of firefighters of various ranks and nonprofit firefighter

collective to intervene when individual firefighter captains had already intervened).  The identity

of the unions' stated objectives demonstrates that the PBA has more than "sufficient motivation

to litigate vigorously and to present all colorable contentions" so as to find that "the interests of

the intervenor[s] are adequately represented."  *Natural Resources Defense Council, Inc. v. New

York State Dep't of Envtl. Conservation*, 834 F.2d 60, 62 (2d Cir. 1987).

Proposed Intervenors do little to counter this conclusion.  The SBA argues that its

"narrow and more focused perspective" in preserving sergeants' "discretion to alter directives" in

order to protect *both* police officers and sergeants, such as ordering the use of helmets "even

when senior leadership has directed officers not to use that equipment."  SBA Mem. at 11, 14.

But, as detailed below, *infra* at 12–14, the SBA overstates sergeants' discretion at protests and

the discretion the SBA purportedly seeks to preserve—to use helmets and non-lethal weapons—

is often shared with the police officers whom the PBA represents.  Further, the SBA does not

explain how the PBA's efforts to defend the lawfulness of the challenged policies and

practices—and which they seem to agree includes free rein to use weapons against protesters and

don protective gear—would not ultimately protect the same policies that grant on-scene

supervisors' discretion to authorize those tactics for the same end of officer safety.

This identity of purpose and concern is distinguishable from the (out-of-circuit) case the

SBA cites, *Natural Resources Defense Council v. Costle*.  In that case, the court found that the

defendant agency shared a general interest in promulgating lawful nationwide regulations

regarding pollutants but did not share the narrower concerns of the movants' various private

industries in including or excluding particular pollutants in those regulations.  *Nat. Res. Def.*

*Council v. Castle*, 561 F.2d 904, 912 (D.C. Cir. 1977).  In contrast, here we have three police

unions representing officers from the same city agency who, at least at the Protests, all served on

the front lines and all voice a desire to protect their members' safety with more protective gear

and freedom to use force.  There is no adversity or gap among their interests.

For its part, the DEA asserts that the detectives it represents typically work in

plainclothes and so do not receive the same tactical gear as members of the other unions and that

they, like police officers, must follow sergeants' orders.  DEA Mem. at 16–17.  But absent again

is any argument that the PBA's efforts to maintain policies that support officer safety, which the

PBA has said would include access to protective gear and physical tactics, would not also apply

to detectives who respond to protests.  "The possibility that the Proposed Intervenors may

emphasize different evidence in support of a common outcome," or have a different "motive to

litigate," "does not make [the PBA's] representation of the Proposed Intervenors' interests

inadequate."  *New York v. United States Dep't of Health & Hum. Servs.* ("*HHS*"), No. 19 CIV.

4676 (PAE), 2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019); *see also Washington Elec. Co-

op., Inc.*, 922 F.2d at 98 ("[A] putative intervenor's interest is not inadequately represented

merely because its motive to litigate is different from that of a party to the action.").

Finally, the fact that the unions represent distinct groups of NYPD employees at the

bargaining table and have distinct collective bargaining agreements, does not evidence any

difference in interests.  *See Afro Am. Patrolmen's League*, 503 F.2d at 298 ("[T]he fact that

applicants have [CBAs] with the City [] does not establish that they are entitled to intervention as

a matter of right."); *see also PBA Op.* at 801 (declining to limit the PBA's interest in officer

safety to its CBA).  If the PBA joins this litigation, it is to represent all front-line officers'

interest in their safety.  Therefore, Proposed Intervenors' roles as exclusive bargaining

representatives for their respective groups do not render the PBA's representation of all front-line officers inadequate.

### B. Proposed Intervenors' motions are foreclosed by the law of the case.

To the extent that the Second Circuit's opinion does not govern, the law of the case precludes Proposed Intervenors' motions. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992). In the event that the Second Circuit's opinion is vacated, there is no "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," that would justify the Court disturbing its previous ruling denying Proposed Intervenors' intervention. *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983).

Even if that decision stands, the law of the case precludes revisiting determinations that the Second Circuit did not disturb, namely this Court's rulings on permissive intervention and determination that the unions did not have a cognizable interest in protecting their collective bargaining rights. Reusing much of the same language from its original brief, the DEA again asserts its statute-based collective bargaining right to negotiate issues with a "practical impact on [officer] safety." DEA Mem. at 9, *compare with* ECF No. 40 at 10–11. However, as this Court previously found, "[t]he unions have not demonstrated why – absent any specific details of a settlement – this litigation has at present any "practical impact" that "directly" or "substantially" affects their collective-bargaining rights. . . . And while the DEA cites to several provisions of their collective-bargaining agreement in an attempt to show which provisions might potentially be impacted by a settlement, its suggestions are speculative at best, since there is no settlement." ECF No. 144 at 8. In addition, this Court found that any such interest would not be impaired

should intervention be denied because Proposed Intervenors could seek to participate in the approval of any consent decree, and then address any risks of interference with collective bargaining rights; there is no need to participate at the merits stage to protect any such interest. *See id.* at 10.

The DEA offers no reason why the Court should reverse its previous ruling.  The Second Circuit's decision provides no such justification as it expressly declined to rely on the PBA's collective bargaining rights to define its intervenor interest in officer safety, noting that the two interests were "independent[]." *PBA Op.* at 801; *see also id.* at 799 n.3 (declining to consider the PBA's interest in collective bargaining).  Additionally, Proposed Intervenors provide no explanation as to why the Court should revisit its rulings regarding permissive intervention, which the Second Circuit explicitly declined to address. *PBA Op.* at 799 n.3.  Accordingly, there is no compelling reason to disturb the Court's ruling that the DEA failed to identify 'direct' or 'substantial' threat on any specific collective-bargaining right" that would be impaired by this litigation and that Proposed Intervenors should not be granted permissive intervention.  ECF No. 144; *see Doe*, 709 F.2d at 789 (refusing to depart from the law of the case "absent 'cogent' or 'compelling' reasons).

Moreover, the SBA should be precluded from attempting to identify a new interest—in preserving sergeants' discretion—that is not grounded in a change of controlling law or newly-available facts.  The SBA did not identify its interest in sergeants' discretion in its original motion, though there is no reason to believe that it was not aware of it, and the Second Circuit did not address it on appeal.  Although this Court expressly allowed the SBA to renew its motion for intervention "if changed circumstances give rise to a legitimate impact on the unions' collective bargaining rights," the Court contemplated only changes to the settlement stances of

11

the parties, "such as if a settlement is agreed to or injunctive relief is ordered."  ECF No. 144.

No such circumstances have occurred, and in any event, as discussed below, is not cognizable.

Accordingly, Proposed Intervenors' attempt to relitigate, or newly introduce, these issues

are foreclosed by the law of the case.

### C.  The SBA's interest in preserving sergeants' discretion is not cognizable.

Even if the Court were to consider the SBA's stated interest in preserving sergeants'

discretion, that interest is not cognizable.  The Second Circuit has "made it clear that, for an

interest to be 'cognizable' under Rule 24, it must be 'direct, substantial, and legally

protectable.'"  *Floyd*, 770 F.3d at 1060 (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602

F.3d 469, 473 (2d Cir. 2010)).  "An interest that is remote from the subject matter of the

proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes

colorable, will not satisfy the rule."  *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,

922 F.2d 92, 97 (2d Cir. 1990) (citing *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 797 F.2d 85,

88 (2d Cir. 1986)).  Nor will "interests of a general or indefinite character."  *H.L. Hayden Co.*,

797 F.2d at 88.

The SBA premises its interest on the assertion that sergeants have the sole discretion to

direct the use of helmets and non-lethal weapons in the field, and use certain other restraining

devices, but these interests are entirely speculative and collateral to the questions at hand.  With

respect to their discretion, the SBA's president, Vincent J. Vallelong, alleges that:

> [P]olice officers are often directed at the outset of protests not to use helmets or
> shields.  At such a protest, if members of the public begin to threaten the safety of
> police officers, those officers are not authorized to ignore the advance directive and
> use helmets or shields to protect themselves.  However, a sergeant has discretionary
> authority to direct officers to use equipment when necessary to protect their safety,
> notwithstanding written directives from senior leadership."
> . . .

[In addition,] sergeants are authorized to use certain restraining devices that are not available to police officers.

ECF No. 469-1 ("Vallelong Decl.") ¶¶ 14, 16. However, NYPD written policy suggests that police officers or non-sergeant supervisors often exercise this discretion.

Take, for instance, the use of helmets. The NYPD's Patrol Guide allows police officers to use their helmets "if it is believed that safety is endangered or conditions warrant" or, if there is a contrary order by a supervisor, "in emergencies, such as those situations where the member reasonably believes that there is a substantial and specific imminent threat to the safety of the member." Patrol Guide Procedure No. 203-05, Ex. A; *see also Wu v. City of New York*, 934 F. Supp. 581, 591 (S.D.N.Y. 1996) (the Patrol Guide sets forth NYPD policy). It also provides that "[m]embers of the service shall have the discretion to carry their helmets . . ., *to be deployed as circumstances warrant*." *Id.* (emphasis added). Police officers are therefore able to decide whether to use their helmets to protect themselves at a protest.

Further, sergeants are not "mid-level" managers (SBA Mem. at 14) but the lowest-tier supervisor, below lieutenants, captains, deputy inspectors, inspectors, deputy chiefs, assistant chiefs, bureau chiefs, and the chief of department. Patrol Guide Procedure No. 203-01 (currently Administrative Guide Procedure No. 304-01), Ex. A. So, they are typically not the "ranking member on scene" at protests. Indeed, NYPD policy instead requires that incident commanders leading a response to an unplanned protest with the rank of Captain or higher. *See* Patrol Guide Procedure No. 213-05, Ex. A. The incident commander is also charged with instructing sergeants and other supervisors on the "use of specialized equipment" and "tactics that will be utilized," such as the use of force. *Id.* ¶ 7. Because it would be up to the incident commander or, in the absence of that person's direction, to police officers themselves to decide whether to don helmets or use force at a protest, the SBA is mistaken that sergeants have exclusive discretion to

13

order the use of protective gear and tactics.  Even assuming the truth of that assertion, the SBA

can do no more than speculate that the adoption of certain reform measures as a result of this

litigation would impact that discretion, making this purported interest too remote to warrant

intervention at the merits stage of this litigation.  SBA Mem. at 11; *see Wash. Elec. Coop., Inc.*,

922 F.2d at 97.

  The SBA also references powers that appear to have no relation to the protest responses

that are the subject of this litigation.  For instance, the SBA asserts, with no citation to policy,

that sergeants may use restraining devices that are not available to police officers.  These cases

take issue with how the NYPD used pepper spray, batons, body strikes and flex cuffs against

protesters.  All of these restraining devices are available to police officers, within constitutional

bounds.  *See* Patrol Guide Procedure No. 221-02 ¶ 10, Ex. A.  Therefore, the SBA's claimed

interest lies in discretion to use some undisclosed restraining device not challenged here.  That

interest is too "remote from the subject matter of the proceeding" to serve as a basis for

intervention.  *Wash. Elec. Coop., Inc.*, 922 F.2d at 97.  The SBA's asserted interest in preserving

sergeants' discretion at protests is therefore not cognizable.

  For these reasons, the Court should deny Proposed Intervenors' motion to intervene as of

right under Rule 24(a)(2).

## II. Permissive Intervention Under Rule 24(b) Is Unwarranted.

  Should the Court not apply the law of the case to Proposed Intervenors' motion for

permissive intervention, it should be denied.  Rule 24(b) allows the Court to permit intervention

by one who "has a claim or defense that shares with the main action a common question of law

or fact," subject to the Court's consideration of "whether the intervention will unduly delay or

prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(1)(B), (b)(3).

The district court has "broad discretion" to deny permissive intervention.  *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996); *see also AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005) (internal citation omitted).

The Court should deny the motion for permissive intervention for the same reasons that intervention of right is unwarranted.  *See supra*; *see also New York v. United States Dep't of Educ.*, No. 20-CV-4260, 2020 U.S. Dist. LEXIS 122489, at *13 (S.D.N.Y Jul. 10, 2020) ("[T]he considerations that render [the movant] ineligible for intervention as of right under Rule 24(a) . . . militate strongly as well against granting permissive intervention under Rule 24(b).") (internal citation and quotation marks omitted).

Additionally, applying the factors identified in Rule 24(b), the Court should deny permissive intervention because Proposed Intervenors' participation as a party "will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  As discussed above, Proposed Intervenors' stated goal is identical to the PBA's goal: all the unions seek to defend the constitutional validity of the NYPD's use of force practices during the protests.  *See supra* at 5–8.  Proposed Intervenors identify no cognizable interests in the present litigation that would not be adequately protected by the PBA's participation.  Permitting intervention will therefore simply result in duplication of the PBA's arguments, cluttering and unnecessarily prolonging the litigation, which will return to its expedited schedule once the PBA's appeal is resolved.  The addition of each separately-represented union also increases the complications and delays attendant with discovery, like coordinating schedules to depose witnesses.  Proposed Intervenors' participation would only serve to impede efficient adjudication of this matter, and intervention should be denied.  *See, e.g.*, *ACRA Turf Club, LLC v. Zanzuccki*, 561 Fed. App'x. 219, 222 (3d Cir. 2014) ("[T]he district court is well within its discretion in

deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'") (quoting *Hoots v. Commonwealth of Pa.*, 672 F.3d 1133, 1135–36 (3d Cir. 1982)).

Alternatively, even if the Court accepts the Proposed Intervenors' contention that they possess separate cognizable interests to the PBA in this litigation, and that such assertions are not foreclosed by the law of the case, these interests are collateral to the core interests at stake in this action. Concern regarding collective bargaining rights is not only attenuated but is secondary to the core legal issue in this action: whether the NYPD's policing practices related to the protests are constitutionally permissible. Because Proposed Intervenors' interests in addressing nuanced differences between sergeants, detectives, and police officers are secondary to this issue, permissive intervention is not appropriate here. *See, e.g.*, *FTC v. First Capital Consumer Mbrshp. Servs.*, 206 F.R.D. 358, 366 (W.D.N.Y 2001) ("[T]he case law is clear that if an intervenor attempts to introduce collateral issues in a proceeding, a court may be justified in denying a motion to intervene based on undue delay or prejudice.") (citing *The Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 178 F.R.D. 39, 44 (E.D.N.Y. 1998)); *see also Washington Elec. Coop*, 922 F.2d at 97 ("Intervention cannot be used as a means to inject collateral issues into an existing action.") (citing *Sierra Club v. United States Army Corps of Engineers*, 709 F.2d 175, 176-77 (2d Cir. 1983).

Insofar as Proposed Intervenors have some unique perspective regarding how a proposed settlement may impact the particular roles of sergeants or detectives, their insights may be offered as *amici curiae* or in the normal course of a fairness hearing. *See, e.g.*, *United States Dep't of Educ.*, 2020 U.S. Dist. LEXIS 122489, at *15 (denying permissive intervention and noting that movant could instead raise issues in an amicus brief); *Battle v. City of N.Y.*, No. 11-

CV-3599, 2012 WL 112242, at *7 (S.D.N.Y. Jan. 12, 2012) ("To the extent that Taxi Federation

members may have had relevant experiences with TRIP . . . the Taxi Federation may request to

participate as an amicus curiae."); *British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D.

583, 585 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1976) (same).

 For these reasons, the Court should deny Proposed Intervenors' request for permissive

intervention under Rule 24(b).

### III.   If the Court Grants Intervention, Proposed Intervenors Should be Limited to Filing Their Original Proposed Pleading and this Court Should Limit the Scope of Their Participation

 Proposed Intervenors filed a proposed pleading with its initial motion to intervene (ECF

Nos. 39-16, 44-3), but they purposefully do not do so with this motion, suggesting instead that

the Court should allow them to file a new pleading in the event their motion is granted.  This

failure not only directly violates Rule 24(c), which requires movants to append a "pleading that

sets out the claim or defense for which intervention is sought," it also prevents the Court and

parties from understanding the full scope of Proposed Intervenors' proposed participation.

 This failure may be excused if "the position of the movant is apparent from other filings,

and [] the parties to the litigation will not be prejudiced."  *Kleeberg v. Eber*, No. 16-CV-

9517(LAK)(KHP), 2019 WL 1416898 (S.D.N.Y. 2019) (quoting *Tachiona ex rel. Tachiona v.

Mugabe,* 186 F. Supp. 2d 383, 393, 393 n. 8 (S.D.N.Y. 2002)).  But here it is not clear whether

Proposed Intervenors intend to assert a cross-claim against Defendants, or otherwise stray from

their initial strategy of simply submitting an answer, given their (and the PBA's) extensive

critiques of Defendants' failures to train, supervise, or outfit their members with protective gear

so as to protect from injury at the Protests and the DEA's suggestion that it alone is positioned to

bring a claim for violation of its members' bargaining rights under NYCCBL.  *See PBA Op.* at

797–98, 803–04; DEA Mem. at 8; SBA Mem. at 10 n.3, 13.  Such an insertion of collateral issues would unduly expand the litigation and prejudice Plaintiffs.  *See Washington Elec. Coop., Inc.*, 922 F.2d at 98 (denying entry of prospective intervenor into litigation where it would turn it into a much more complex litigation requiring the court to make a determination regarding the rights of many more parties); *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999) ("Intervention . . .  'cannot be used as a means to inject collateral issues into an existing action.'"); *SEC v. Credit Bancorp, Ltd.,* No. 99 CIV. 11395 (RWS), 2000 WL 1170136, at *2 (S.D.N.Y. 2000) (suggesting that a proposed intervenor's request to present any causes of action which are factually or legally distinct in a significant way from those already asserted" may "unduly inconvenience or delay" the existing parties).  While the failure to attach a pleading alone serves the basis for rejecting these motions, should the Court disagree, Plaintiffs respectfully request that Proposed Intervenors be limited to filing their original proposed answers in only the four cases that the PBA may join.

Further, if the Court does grant intervention, the Court should exercise its broad discretion to significantly limit the scope of Proposed Intervenors' participation in discovery and other aspects of this litigation, limiting such participation only to those issues directly related to any unique interests in this matter, properly raised at this juncture, that this Court might recognize. *See generally EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) ("[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way.") *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014); *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-CV-4044 (BCM), 2021 WL 6201777, at *3 (S.D.N.Y. Dec. 31, 2021) (writing that courts have "considerable flexibility in devising the conditions" upon intervenor participation); *Wildearth Guardians v.*

*Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010) (collecting cases and noting that courts have imposed conditions such as consult with one another prior to filing papers with the Court and restricted their presentations to non-cumulative arguments); *see also* Fed. R. Civ. P. 24(a) advisory committee's note to 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings.").

The majority of police reform cases involving union intervention have involved intervention at the point of a consent decree, leaving little precedent to support union intervenors' participation in discovery or trial in any form. Even in those cases, courts have been judicious in limiting unions' role to the boundaries of their defined interest, underscoring this Court's ample authority to limit the unions' participation here. *See, e.g.*, *United States v. City of Albuquerque*, No. 14-CV-1025 (JB)(SMV), 2020 WL 3129825, at *79 (D.N.M. June 12, 2020) (allowing "the Officers Association to intervene only to protect its interest under the CBA" and limiting the scope of objections the union can make to objections related to that interest); *United States v. City of Albuquerque*, No. 14-CV-1025 (JB)(SMV), 2021 WL 5987797, at *26 (D.N.M. Dec. 16, 2021) (in the same case, noting that "[t]The Court has been generous to the Officers Association, whose only role in this litigation is to protect its CBA rights"); *Reynolds v. LaSalle Cnty.*, 607 F. Supp. 482, 483 (N.D. Ill. 1985) (granting permissive intervention to union and noting that "[t]he Court, however, will not allow FOP to dispute any monetary settlements with the plaintiffs or object to any other provisions of the Consent Decree with the exception of Paragraph 3, which provides for the promotion of plaintiffs Reynolds and Hetelle to deputy sheriff"). Here, significant discovery already has taken place and the parties have met and conferred over dozens of issues. To avoid any further delay or complication, strict supervision of

any participation by the intervenors in discovery will be necessary. *Cf. 335-7 LLC v. City of New York,* No. 20 CIV. 1053 (ER), 2020 WL 3100085, at *4 (S.D.N.Y. June 11, 2020) (noting the court's power to supervise discovery to avoid duplication concerns from intervenor).

Without a pleading from the PBA or knowing what claims the Proposed Intervenors will press, Plaintiffs are not able to make a detailed proposal on the scope of Proposed Intervenors' participation.  Accordingly, Plaintiffs request that if this Court grants intervention, it orders Proposed Intervenors to file their pleadings, and allows the parties an opportunity to brief the scope of their participation.

## CONCLUSION

For these reasons, Proposed Intervenors have failed to demonstrate their entitlement to intervene in these actions as of right or as a matter of discretion, or that the law of the case does not foreclose their motions altogether.

Dated: April 12, 2022                    Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: */s/ Lillian M. Marquez*
Travis England, *Deputy Bureau Chief*
Philip Levitz                          Lillian Marquez, *Assistant Attorney General*
*Assistant Solicitor General*           Swati Prakash, *Assistant Attorney General*
Gregory Morril, *Assistant Attorney General*
Colleen Faherty, *Assistant Attorney General*
Conor Duffy, *Assistant Attorney General*
Gina Bull, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street, 20th Floor
New York, NY 10005
(212) 416-8250
Lillian.Marquez@ag.ny.gov

*Counsel for Plaintiff in People of the State of New York v. City of New York et al,*
*No. 21 Civ. 322*

**NEW YORK CIVIL LIBERTIES UNION FOUNDATION**

*/s/Daphna Spivack*
Daphna Spivack
Molly K. Biklen
Daniel R. Lambright
Jessica Perry
Robert Hodgson
Lisa Laplace
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
dspivack@nyclu.org


**THE LEGAL AID SOCIETY**

*/s/ Corey Stoughton*
Corey Stoughton
Jennvine Wong
Rigodis Appling
199 Water Street
New York, NY 10038
(212) 577-3367
cstoughton@legal-aid.org

*Co-Counsel for Plaintiffs in Payne v. de Blasio, 20 Civ. 8924*


**HAMILTON CLARKE LLP**

Lance A. Clarke, Esq.
Jason Clark, Esq.
Michael L. Spiegel, Esq.
48 Wall Street, Suite 1100
New York, NY 10005
(212) 729-0952

**THE LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.**

Joshua S. Moskovitz, Esq.
14 Wall Street, Suite 1603
New York, NY 10005
(212) 380-7040

**RICKNER PLLC**

Rob Rickner, Esq.
14 Wall Street, Suite 1603
New York, NY 10005
(212) 300-6506

*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, et al, No. 20 Civ. 10291*

**BELDOCK LEVINE & HOFFMAN LLP**

By: _____
Jonathan C. Moore
David B. Rankin
Luna Droubi
Marc Arena
Deema Azizi
Rebecca Pattiz
Katherine "Q" Adams
Regina Powers

99 Park Avenue, PH/26th Floor
New York, New York 10016
　t: 212-490-0400
　f: 212-277-5880
　e:　jmoore@blhny.com
　　drankin@blhny.com
　　ldroubi@blhny.com
　　marena@blhny.com
　　dazizi@blhny.com
　　rpattiz@blhny.com
　　qadams@blhny.com
　　rpowers@blhny.com

**LORD LAW GROUP PLLC**

_____
Masai I. Lord
14 Wall St., Ste 1603
New York, NY 10005
P: 718-701-1002
E: lord@nycivilrights.nyc

**WYLIE STECKLOW PLLC**

_____
By: Wylie Stecklow
Wylie Stecklow PLLC
231 West 96th Street
Professional Suites 2B3
NYC NY 10025
t: 212 566 8000
Ecf@wylielaw.com

**GIDEON ORION OLIVER**

_____
277 Broadway, Suite 1501
New York, NY  10007

22

t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com


**COHEN&GREEN P.L.L.C.**

By:    _____
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com
       jessica@femmelaw.com

*Co-Counsel for Plaintiffs in Sow et al v. City of New York et al, No. 21 Civ. 00533*