```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF NEW YORK

In re:                          :
                                      Docket #20cv8924

 IN RE NEW YORK CITY POLICING   :
 DURING SUMMER 2020 DEMONSTRATIONS

                                : New York, New York
                                  April 12, 2022
--------------------------------: TELEPHONE CONFERENCE


                   PROCEEDINGS BEFORE
          THE HONORABLE GABRIEL W. GORENSTEIN,
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:


For Plaintiff People      NEW YORK STATE OFFICE OF
of the State of New       THE ATTORNEY GENERAL
York:                     BY:  LILLIAN MARQUEZ, ESQ.
                          28 Liberty Street
                          New York, New York 10005


For Gray Plaintiffs:      DAVIS WRIGHT TREMAINE LLP
                          BY:  ROBERT D. BALIN, ESQ.
                          1251 Avenue of the Americas
                          New York, New York 10020


For Payne Plaintiffs:     LEGAL AID SOCIETY
                          BY:  COREY STOUGHTON, ESQ.
                          199 Water Street
                          New York, New York 10036


For Sierra Plaintiffs:    RICKNER PLLC
                          BY:  ROB RICKNER, ESQ.
                          14 Wall Street, Suite 1603
                          New York, New York 10005




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

2

<u>APPEARANCES (CONTINUED):</u>


For Sow, Hernandez,        COHEN & GREEN
and Minett Plaintiffs:     BY:  REMY GREEN, ESQ.
                           1639 Centre Street, Suite 216
                           Ridgewood, New York 11385

For Charles Henry Wood:    KAUFMAN LIEB LEBOWITZ & FRICK LLP
                           BY:  ALISON ELLIS FRICK, ESQ.
                           18 East 48th Street, Suite 802
                           New York, New York 10017

For Defendants:            NEW YORK CITY LAW DEPARTMENT
                           BY:  DARA WEISS, ESQ.
                                ANTHONY DISENSO, ESQ.
                           100 Church Street
                           New York, New York 10007

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---|---|---|---|---|---|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
1                        PROCEEDINGS                    4

2               THE CLERK:  This is In Re New York City Policing

3    During Summer 2020 Demonstrations, case number 20cv8924.

4    Will counsel please state their appearances for the

5    record, starting with the plaintiffs.

6               MS. LILLIAN MARQUEZ:  Good afternoon, Your

7    Honor, this is Lillian Marquez of the New York State

8    Attorney General's Office on behalf of People of the State

9    of New York.

10              MR. ROBERT BALIN:   Good afternoon, Your Honor,

11   this is Robert Balin of Davis Wright Tremaine on behalf of

12   the Gray plaintiffs.

13              MS. COREY STOUGHTON:   This is Corey Stoughton

14   from the Legal Aid Society on behalf of the Payne

15   plaintiffs.

16              MR. ROB RICKNER:   Good afternoon, Your Honor,

17   this is Rob Rickner for the Sierra plaintiffs,

18              MX. REMY GREEN:  And good afternoon, this is

19   Remy Green for the Sow, Hernandez, and Minett plaintiffs.

20   And for the recording I should appear in the transcript as

21   Mx. Green, spelled M-X-period, rather than Mr. or Ms.

22              MS. ALISON FRICK:  This is Alison Frick for

23   Charles Henry Wood.

24              THE COURT:   For defendants.

25              MS. DARA WEISS:  Good afternoon, this is Dara
```

```
 1                            PROCEEDINGS                    5
 2    Weiss from the New York City Law Department for the
 3    defendants.
 4          MR. ANTHONY DISENSO:  Good afternoon, Your
 5    Honor, this is Anthony DiSenso from the New York City Law
 6    Department on behalf of the defendants as well.
 7          THE COURT:  Okay, we're being recorded.  I just
 8    want to remind everyone that no further recording or
 9    dissemination of this proceeding is permitted.
10          We're here based on letter, docket 464, we had a
11    response from (indiscernible) 477, and a reply, 479.  I'd
12    like to divide this into two parts.  Part 1 is getting the
13    chart into the appropriate shape it needs to be in, and
14    part 2 is whether sanctions are appropriate.  So let's
15    keep those separate.  And, Mx. Green, I, you know, I'm
16    happy to do this whatever you think the best way possible
17    it is.  I think going through the problems and figuring
18    out what you need that isn't there is the way to do it,
19    and for me to give rulings, to the extent there's
20    disagreement.  So I kind of would like to turn the floor
21    over to you.
22          MX. GREEN:  Yes, Your Honor.  I mean I think
23    while that sounds like I think may be, you know, in some
24    ways the right way to do it, I'm also reluctant to do it
25    because, as I think from our perspective, the problems
```

| | PROCEEDINGS | 6 |

1
2    we're seeing are global as opposed to, you know, problems

3    that crop up in individual answers.  And, you know, I

4    think what the letter and affidavit filed last night

5    highlight is that there are a lot of I'll call them secret

6    objections or objections that haven't crystallized yet

7    that may come up.  Right?  But the letter last night seeks

8    permission to insert a brand new burdensomeness objection

9    as to things we already had a hearing on, and, you know,

10   in a category of things that we've been highlighting for I

11   think a couple of letters now.  Right?  This is stuff

12   about the RNC.

13          So I think it's very difficult for me to picture

14   it being a good use of the Court's time to go through, you

15   know, at this point some hundred some odd document

16   requests when the issue is that we still don't have

17   descriptions of what we're getting.  Right?  I think maybe

18   the right thing to do is pick a couple examples and then

19   have defendants update the charts to match those examples

20   and maybe make, you know, I had thought it was clear, but

21   make clearer that if there aren't objections or

22   limitations in the chart, that means we're getting

23   everything.  Right?  And that is a full waiver of any

24   future objections, right, because I think one of the

25   biggest problems that we see is not even necessarily

```
1                         PROCEEDINGS                    7
2    what's in the chart but defendants' description of it as
3    an evolving document which, you know, I think defeats the
4    purpose of the exercise.  Right?
5             As we understood it, the point was to finally,
6    and, you know, this is something we've been making motions
7    on since June of last year, and I think we've made more
8    than a dozen motions trying to get, you know, in some way
9    defendants to state what they're producing and what
10   they're withholding.  And at this stage we need that
11   information, and we need it in a final form.  And so, you
12   know, I think maybe the place to start is whatever comes
13   next is the final for, right, there isn't an evolving
14   chart after that.  And then maybe we should go to some
15   specific examples, I mean, you know, candidly I am also a
16   little bit at a loss as to what to do.
17            THE COURT:  Well, I think your instinct is
18   correct which is I don't think we have to go through all
19   300 or whatever it is lines on the document.  What we need
20   to do is for you to give exemplars and to get rulings and
21   including raising any overarching issues like the evolving
22   document issue.  So I think your instinct is correct.  And
23   I'm happy to start with the evolving document issue
24   because I don't, I mean I'll hear from the defendants, but
25   I didn't order an evolving document; I ordered a
```

```
1                          PROCEEDINGS                      8
2    definitive document the way one has in any response to a
3    document request which is to say here is what I'm
4    producing and here's what I'm not producing and here's why
5    I'm not producing it.
6            So that's what this document is, and the use of
7    the word evolving is completely inappropriate unless
8    there's been some specific application as to a specific
9    request that says, you know, we can't respond to that now
10   and giving me a good reason why you couldn't respond to a
11   particular category now.  And before, Mx. Green, before I
12   turn to the defendants, anything more you want to say on
13   the evolving issue or, I mean --
14           MX. GREEN:   I mean what I will say on the
15   evolving issue for, you know, and this perhaps treads into
16   category 2 a little but I'm not going to say anything
17   about what I think that means, you know, I think one of
18   the things that's very troubling in this is, you know, if
19   we look at Ms. Fitzpatrick's two affidavits that have been
20   on the docket, it really, really suggests that defendants
21   only started furiously looking for documents this year.
22   Right?  You know, they only, according to the first
23   Fitzpatrick affidavit, figured out where documents related
24   to the 83 protests on schedule A lived in about February
25   of March of this year.  And, you know, I think to me
```

```
1                         PROCEEDINGS                    9
2  that's shocking.
3            THE COURT:   Okay, that's not --
4            MX. GREEN:   Yeah, no, but --
5            THE COURT:   We're getting ahead --
6            MX. GREEN:   Okay.
7            THE COURT:   So let's just talk, Ms. Weiss, what
8  was unclear about my saying you had to give a definitive
9  response as is required of any Rule 34 request and are you
10 still contending that you're not required to do that?
11           MS. WEISS:   No, Your Honor, we're not
12 contending that.  We never have contended that.  But the
13 deeper that our clients dig into trying to find where
14 these documents are, they find different things.  They can
15 talk to, you know, for example, Ms. (indiscernible) have
16 spoken to a number of commands and a number of people and
17 looked at a number of shared drives, and the more
18 information she finds, the more places there may be to
19 look or the more different types of responsive documents
20 she might learn might exist.
21           So it's not a matter of – I just have, I'm
22 sorry, Your Honor, I've just been having a hard time and
23 as have my colleagues sort of understanding what Mx.
24 Green's and her colleagues' issues are.
25           THE COURT:   Their colleagues.
```

1                              PROCEEDINGS                    10

2              MS. WEISS:   We're searching for documents on a

3    consistent basis ourselves and our clients throughout the

4    entire police department, have been doing so well before

5    Mx. Green's contention of February or March of this year.

6    It's not that we're saying we're not providing documents.

7    Unless the chart says that something is overly burdensome

8    and not proportional to the needs of the case, we have

9    been and before the end of this week, save the two

10   documents, the couple of typed documents we wrote about

11   last night, are planning on producing all responsive

12   documents that can be located that respond to the document

13   requests.  There's a very few places on the chart where

14   the defendants note that they will not be, or they will

15   not be producing documents as they're objecting on

16   burdensomeness grounds.

17             So I just – I am – we believe that the chart

18   shows what we're producing, it shows where we're looking,

19   at commands we've contacted.  You know, I guess I'm just

20   having trouble understanding what more Mx. Green is

21   looking for.  Plaintiffs have asked for an incredibly wide

22   and broad array of documents.  We are producing the

23   responsive documents.  We can't say at this moment, well,

24   now we can a little bit more than when we did this chart.

25   Last week where documents are coming from are exactly what

```
 1                        PROCEEDINGS                11
 2   documents there are.  But they've been searched for,
 3   they're being prepared for production this Friday, and
 4   that's what the documents are and are going to be because
 5   those the ones that exist.  We're not holding things back.
 6   You know --
 7             THE COURT:  Okay, I don't think you've
 8   addressed what I was talking about.  I want to just talk
 9   for everyone's benefit, when I saw that the letter last
10   night didn't comply with 2A, I actually didn't read the
11   affidavit.  So if anyone thinks there's something in there
12   I have to know, they should tell me, but I rejected the
13   letter for procedural reasons and didn't get beyond the
14   first two pages.  Obviously, I'll be seeing it again.
15             But so --
16             MX. GREEN:  Your Honor, if I may, I think there
17   are two things I should say about it.  First, that, as Ms.
18   Weiss says, there are bases for withholding that they're
19   adding to their objections that are not in the current
20   chart.  And so as far as that goes, I think that's what
21   we've been worried about the whole time, right, if
22   objections coming out of, you know, coming out of the
23   woodwork after the definitive chart.  So that, you know --
24             THE COURT:  Okay --
25             (interposing)
```

1                       PROCEEDINGS                    12

2          THE COURT:   Let me just – go ahead, what's the

3  second thing?

4          MX. GREEN:   And the second thing is there is, I

5  think there's paragraphs 8 and 9 of the second Fitzpatrick

6  affidavit, but it says that NYPD, you know, the mayor has

7  apparently moved people out of the office that's handling

8  documents and onto the street.  And so one of the reasons

9  that everything is getting delayed is because the NYPD has

10 not staffed their document offices sufficiently to meet

11 the Court's schedule because the mayor has decided he

12 doesn't want to.

13         THE COURT:   Okay.  Let's – thank you for that

14 information.  I'm still back on evolving, and I mean I've

15 heard from both sides.  You know, there has to be a

16 definitive document.  It's not evolving.  This is the

17 response.  If there's an application as to particular

18 categories that says it's not possible to give a

19 definitive response as to these discrete categories,

20 perhaps that's what last night's letter was about, then I

21 would consider that.  But the document – this document is

22 the Rule 34 response, and I mean I don't know how I can be

23 any clearer about that.

24         You know, it may – and perhaps the answer is to

25 just say you got one more shot at this on Friday, which is

1                              PROCEEDINGS                      13

2   when the documents are due, to give the defendant a

3   response and we'll have to rise or fall on that.  And to

4   some extent you're not making, you're not planning, you

5   said you're not planning to make changes to, I assume, a

6   whole number of categories that are on the chart, and I'd

7   like to talk about the map and the extent right now the

8   chart is defective for reasons other than being allegedly

9   evolving.  I certainly want to go through whatever

10  categories Mx. Green wants me to give rulings on.

11          But the question about whether this can be

12  characterized as evolving or not is over.  It's not

13  evolving.  It's the definitive chart.  And if it's

14  defective in some way, then we'll deal with how that's

15  going to be impacting on the City's obligations or

16  responsibilities at some other time, but definitiveness is

17  absolutely what this chart is.  This is the Rule 34

18  response.

19          Mx. Green, I think the better thing is to start

20  going through the broader areas, talking about --

21          MX. GREEN:   Agreed.

22          THE COURT:   -- what you think are defects on

23  the chart and seeing what we can do about them.

24          MX. GREEN:   Okay.  So I think why don't we just

25  start at the top.  This is going to be in the Excel file

```
 1                         PROCEEDINGS                    14

 2   that we (indiscernible) last night called Consolidated

 3   Cases DRI Responses.  And this is line --

 4           THE COURT:   Hold on one second, hold on.  Hold

 5   one second.

 6           (pause in proceeding)

 7           THE COURT:   Got it.

 8           MX. GREEN:   Okay.  And why don't we just start

 9   at line 5 which is document request 1.

10           THE COURT:   Okay. Give me one second, all

11   right?

12           MX. GREEN:   Of course.  And if it's helpful,

13   this is one of the things that I, you know, clicked and

14   pasted into our letter.

15           THE COURT:   Yes.  No, I remember this, and the

16   problem is that you can't tell from these broad volumes

17   where the documents are.

18           MX. GREEN:   There are two problems, right,

19   there is that problem, right, we can't tell from these

20   broad volumes where the documents are, but we also don't

21   have a description of what, you know, what they intend to

22   produce on Friday at this point or what they're

23   withholding, and I, you know, if their answer is that any

24   documents that, you know, matches the description of this

25   document request is something we're going to get, I'm
```

1                          PROCEEDINGS                    15

2   going to be thrilled, but I just don't believe that's

3   true.  You know, I think what we need is a description --

4             THE COURT:   Well --

5             (interposing)

6             THE COURT:   Yeah, well, I mean, Ms. Weiss, so

7   here's the thing.  Someone asks you for all documents on

8   topic X.  If you have no objections to that, you have to

9   produce all documents on topic X.  And if you think it's

10  too burdensome to actually extract all documents on topic

11  X, then you have to say I'm producing all documents on

12  topic X through a reasonable search which involved

13  whatever the search was.  You see what I'm saying?

14            MS. WEISS:   Yes, Your Honor, absolutely, and

15  that is what we've done and what we're doing.  We are

16  producing all responsive documents that we can locate

17  through a reasonable search.

18            THE COURT:   Okay, and that's fine --

19            MS. WEISS:   We're not withholding anything from

20  say document response number 1.

21            THE COURT:   Okay, I think maybe we're on a

22  fundamental issue, and I'm actually not sure, I got to

23  think about this for a second.  I mean it's an axiom I

24  suppose of document production that one only needs to do a

25  reasonable search, Mx. Green.  So if you asked for all

1                         PROCEEDINGS                    16

2   topics, all documents about topic X in a document request,

3   and a party thinks, well, that's, you know, topic X is the

4   core of this lawsuit, it's certainly a reasonable request,

5   it's relevant, you know, with a reasonable search, it's

6   not burdensome.  I'm trying to think if they sort of have

7   no real objection to the concept of the documents being

8   relevant, to what degree – I'm just trying to think as a

9   practical matter what you would require in terms of the

10  description of the reasonable search.  You see my

11  question?

12          MX. GREEN:   I do, Judge, and, you know, I think

13  our understanding of the order that you issued was that

14  for something like this they would describe where they had

15  searched and what they expected to find there.  And not

16  only was that the, you know, what we understood your order

17  to be, in the email commemorating, you know, our mutual

18  understanding of your order, that what was we wrote down.

19  Right?  If defendants think they're producing everything,

20  they will describe the search, where they're searching,

21  and what they expect to find there.

22          And so in that sense I don't, you know, I don't

23  think that responsive documents to be produced, especially

24  in the context of how we've gotten here, is particularly

25  assuring.  I mean maybe the answer is that we should just

1    PROCEEDINGS                    17

2    go revisit 30(b)(6) depositions about, you know, the

3    searches that we've done so that we can know what searches

4    they've done.  But absent that, you know, I think this is

5    information that I think the Court initially told them to

6    provide in the algorithm letters that were the first

7    solution to this problem, and then, you know, I don't have

8    the quote in front of me, but I think you said something

9    to the effect of, you know, you should describe where

10   you're searching and what you expect to find there.  And

11   instead what we've got here is just responsive documents

12   to be produced which, you know, gives us a lot of concern

13   about, you know, the adequacy of the search, especially

14   given that, you know, defendants were initially ordered to

15   produce all this by July 31 last year and assured, and

16   told the Court that they'd done a complete search, and now

17   we're here.

18          MS. WEISS:   Your Honor, this goes back to –

19   sorry.

20          THE COURT:   Go ahead.

21          MS. WEISS:   This goes back to the idea of a

22   reasonable search.  Things like, for example, document

23   request number 1, it's policies, directives, and training.

24   The Federal Rules don't require us to tell the plaintiffs

25   everywhere that we've searched.  They have gotten hundreds

```
 1                         PROCEEDINGS              18
 2  if not thousands of documents responsive to these
 3  requests.  It's not like we're going and saying, oh, there
 4  are no, you know, training documents on say use of force.
 5  So to then go back and fill in this chart where all these
 6  things have been searched for since essentially the
 7  beginning of this litigation is in and of itself a burden
 8  on top of getting the documents, reviewing them, you know,
 9  more than half a million pages that we, you know, on this
10  side have been doing nonstop for the last several months,
11  the priorities should be getting the documents, and that's
12  what it is.
13          And I understand the useful of the chart, it's
14  useful for the Court, for the plaintiffs' counsel, and for
15  defense counsel, but the documents that we've produced
16  they have.  I don't think it should be relevant where they
17  were found what part of is it the 30,000 member NYPD they
18  were found in.  Understanding it's a different issue where
19  there had been trouble finding documents or where we found
20  something, and a great number of the entries of the chart
21  talk about where we're looking for these documents, where
22  we expect to find these documents as well as the volumes
23  in which the responsive documents that we have to date has
24  been produced.
25          So to go back at this point and try to recall
```

1                             PROCEEDINGS                      19

2   all the information about the different places that were

3   searched is in and of itself going to be a huge, time-

4   consuming burden and doesn't let this case progress.  It

5   doesn't do anything to move this case along or to provide

6   discovery.

7              THE COURT:   All right, Mx. Green, I think

8   there's – notwithstanding, you know, how things have been

9   said in prior conferences, I mean I don't know that it was

10  my intention where the City concedes something is

11  relevant, thinks they know where the documents are, and

12  then does a search for those documents consistent with

13  where they believe they are, and it's a reasonable search,

14  I don't know that I expected them to lodge a

15  burdensomeness objection in a situation like that or to

16  necessarily describe on this document how they conducted

17  the search.  What I was trying to say in prior

18  conferences, and I know it's hard when we do these things

19  orally, what I was trying to say was that if they are

20  making a burdensomeness objection, in that case they have

21  to explain what it is, what search is burdensome that

22  they're not going to do and what they are going to do.

23  That was certainly my intent when I did it.  It was not

24  that for every single document request when they're not

25  making an objection that they have to describe their

1                              PROCEEDINGS                    20

2   search.

3            Now, that doesn't mean you're not entitled to

4   the information at some point if you had reason to believe

5   that they had not done a good search, and I'm, you know,

6   prepared to figure out a way to do that outside the

7   context of this chart and perhaps after the chart is

8   finally produced in a satisfactory form hopefully in a

9   matter of days and not weeks.  We can talk about the best

10  way to get you that information.  My view would be that

11  there'd be discussion about, well, gee, what did you do to

12  search for this rather than doing it through a formal

13  mechanism like a 30(b)(6).  But it was not my intent that

14  for any document request they had to describe the search.

15  It was only for those where they talked about

16  burdensomeness and then they would have to describe what

17  it was that was burdensome and what if anything they were

18  willing to do.

19            So, Mx. Green, I'm sorry if that wasn't clear,

20  but that was my intent on this.

21            MX. GREEN:   Okay.  Understood.  Let's – while

22  we are still on this one, let's talk about the volume

23  issue.

24            THE COURT:   Yes, so that was your other issue –

25  –

```
1                          PROCEEDINGS                    21
2            MX. GREEN:   With the understanding that --
3            THE COURT:   Go ahead.
4            MX. GREEN:   Yes, I think for this one in
5   particular it makes sense for us to meet and confer and
6   ask for what searches they've done if we think they were,
7   you know, if we have some reason to think they were
8   inadequate, and I don't think that's the wrong answer.
9   It's just very frustrating that didn't come up when we met
10  and conferred about what the Court's order meant.  Let's
11  move to the volume issue.
12           THE COURT:   Okay.  All right, so, Ms. Weiss,
13  you read the letter obviously.  I didn't - I will give you
14  a chance to expand on your response.  But, you know, the -
15  and I've no idea what these volumes look like, and I don't
16  know if they're 5 percent responsive to document request
17  number 1 or 95 percent or something in between.  If it was
18  95 percent, you know, then I don't think we'd be getting a
19  complaint here.  So what, you know, imagine yourself as
20  someone making a document request, someone produces some
21  number of documents to you and you want to figure out
22  where they are, what're you supposed to do?
23           MS. WEISS:   Well, I'm going to ask Mr. DiSenso
24  from our e-discovery group to get into this a little bit
25  more because he has a better understanding and a better
```

1                          PROCEEDINGS                    22

2   way to explain exactly how the volume numbers and the

3   information that go along with them has a lot of

4   information that can help the plaintiffs.  So, Mr.

5   DiSenso, if you would.

6               MR. DiSENSO:   Certainly.  Good afternoon --

7               THE COURT:   Just hold on, Ms. Weiss, I am

8   relieving you of the normal rule of one attorney per

9   issue.  So I will pretend you asked for permission for

10  that, and I'm granting it.  Go ahead.

11              MS. WEISS:   Thank you, Your Honor.

12              MR. DiSENSO:   Thank you, Your Honor, and good

13  afternoon again.  So as far as the information that was

14  provided and to answer your question directly, how are

15  they supposed to understand what we provided to them,

16  we've provided a number of metadata fields that are

17  particularly useful for understanding how the documents

18  are organized and what the documents are.  In particular,

19  the metadata fields that are most relevant for this

20  inquiry are file path information and file name

21  information.  And, you know --

22              MX. GREEN:   I'm sorry, can I just clarify?  Are

23  we talking about something that's in the chart?

24              MR. DiSENSO:   We're not talking about something

25  in the chart.  We're talking about information we've

1                        PROCEEDINGS                    23

2    provided to you with the productions.

3           THE COURT:   Okay, so you're describing – I'm

4    just wondering where this is going.  At the end of this,

5    is it that you're going to say, oh, define the documents

6    responsive to request number 1 in any of these 15, 20

7    volumes that are listed on the chart, all you have to do

8    is insert this search term in metadata field B and you'll

9    find it.  Is that where we're going or it's not quite so

10   wonderful?

11          MR. DiSENSO:   I mean that is one way to parse

12   the information.  We've exported the metadata, and we're

13   certainly no experts in Excel, but we've been able to

14   basically sort by volume number all of the different

15   folders that are in there.  For example, I think Mx.

16   Green, in volume 7 we can see, in volume 7 which contains

17   about 29,000 documents, that, you know, there's a number

18   of folders that are very clearly labeled, arrests, C

19   summonses, TRIs, complaints, and then within them you can

20   see the file names for all the different files that are in

21   them and pretty clearly understand what is in that volume.

22          THE COURT:   Well, let's talk about – I'm not

23   sure that number 1, request number 1 involves summonses

24   specifically.  It involves policies and procedures.

25   Right?  So can you answer the question for how they find –

```
 1                         PROCEEDINGS                    24
 2    how do they – it's very simple, how do they find what
 3    you've produced responsive to DR number 1?
 4              MR. DiSENSO:   If we've cited a volume number
 5    there, they could look at that volume, and they can look
 6    at the file path information associated with that.  And in
 7    addition they --
 8              THE COURT:   Hold on.  Do you have this chart in
 9    front of you?
10              MR. DiSENSO:   I do have the chart in front of
11    me.
12              THE COURT:   Okay.  So let's just take number 1.
13              MR. DiSENSO:   I apologize.  I apologize, Your
14    Honor.  I don't have the DRI chart.  I will get that up
15    right now.
16              MX. GREEN:   Your Honor, just for context, I
17    would like to, you know, read out, if I may, what we'd
18    agreed was going to happen which is, quote, "For documents
19    defendants claim they have already produced, there will be
20    a general description of those documents, e.g., something
21    like closed IAB files from date X to date Y, for
22    allegations that took place at protests on schedule A
23    along with something pointing at where to find it.  That
24    something will either be Bates numbers or something like a
25    volume number, except the defendants won't use a volume
```

1
2    number if they are pointing to a disproportionately large

3    volume relative to the documents being pointed to."

4         You know, I don't think that what we agreed was

5    unclear here.

6         THE COURT:   Okay, but if the answer is, and I

7    have no idea where we're going, I tried, if the answer is,

8    oh, it's really easy to find these things through some

9    search in the volume --

10        MX. GREEN:   Yeah, of course.

11        THE COURT:   I mean let's let the defendants

12   finish.  By the way, can you spell your last name, Mr. Di

13   --

14        MR. DiSENSO:   Certainly, Your Honor, it's D as

15   in David-I-S as in Sam-E as in Edward-N as in Nancy-S as

16   in Sam-O as in Oscar.

17        THE COURT:   DiSenso, okay.  So, Mr. DiSenso,

18   when you have it up, tell me.

19        MR. DiSENSO:   I believe I have it up.  I'm

20   looking at the – Your Honor is referencing DR number 1 --

21        THE COURT:   Yeah.

22        MR. DiSENSO:   -- is that for the – this chart I

23   have that was filed by --

24        THE COURT:   It's called Consolidated Cases DRI

25   Responses.

```
 1                        PROCEEDINGS                    26

 2            MR. DiSENSO:   I see, okay.

 3                (pause in proceeding)

 4            MR. DiSENSO:   I don't believe I'm looking at

 5   the right chart.

 6            THE COURT:   Hold on, hold on.  Ms. Weiss --

 7            MR. DiSENSO:   I apologize.  I don't think --

 8            THE COURT:   Are we actually - is there any hope

 9   Mr. DiSenso is going to solve this problem?  Because I

10   don't want to waste time having you send him a chart.

11            MS. WEISS:   Your Honor, I just sent him the

12   link to the chart to be sure that he's got the correct

13   one.  So, Anthony, you should have that in your email.

14                (pause in proceeding)

15            MR. DiSENSO:   Okay, I apologize, Your Honor.  I

16   have the right chart now I think.

17            THE COURT:   Okay, let me explain to you the

18   problem, and then you tell me if there's a solution.  The

19   plaintiffs in DR number 1 - can you read me the first

20   three words of the request in column C?

21            MR. DiSENSO:   Provide all documents --

22            THE COURT:   First line.  Keep going.

23            MR. DiSENSO:   Provide all documents concerning

24   policies, procedures, directives --

25            THE COURT:   Yep, yep, yep, that's it.  Okay.
```

1                          PROCEEDINGS                    27

2  So you're the plaintiff, you want to find these documents

3  that fit into these categories all relating to policies

4  and procedures about all these other things.  Okay.  You

5  want to - you then look to column D to find out where they

6  are.  It doesn't have Bates numbers so that's not going to

7  be the way to do it.  Instead, it gives volume numbers of

8  a document production apparently with tens of thousands of

9  pages.  How are they supposed to find this within any one

10 of those given volumes?

11          MR. DiSENSO:   They would go - they can look at

12 the volumes and then they could - so they could run a

13 search for the volume and then they can look within the

14 volume both at the file names and the file path

15 information to discern specific, you know, what documents

16 relate to policies or procedures.  For example, they're

17 looking for training material that's part of their

18 request.  I'm just looking at volume 7.  Now I can see

19 that in some unfoldered documents within volume 7 there's

20 a bunch of training materials that's fairly clearly

21 labeled by file name.

22          THE COURT:   So your view is to search the file

23 names in some way?  How many file names are there in the

24 volume?

25          MR. DiSENSO:   There would be one file name for

```
1                        PROCEEDINGS                    28

2   every document.  Right so in volume 7 that's 27,000

3   documents, 27,000 file names, and there are 20 some odd

4   volumes here.

5           THE COURT:   Right, but, Ms. Weiss, if you

6   haven't figured out that there's a problem here, then I'll

7   try to explain it to you.

8           MS. WEISS:   No, Your Honor, I completely

9   understand.  Plaintiffs have asked for such a huge and

10  broad array of documents.  So there's going to be a huge

11  number of responsive documents.  Presumably, they've taken

12  the documents and put them in some sort of database of

13  their own where presumably there's a search function as

14  well.  So I think that between the file name, file path,

15  and whatever search function that they have on their

16  database would make these documents, you know, findable

17  for them.

18          We've already hired an outside vendor to help us

19  document the volume numbers, and it's taken them, I don't

20  know exactly how long it took them, but it took them a

21  while, and to find the Bates numbers of the responsive

22  documents would probably take them until the end of this

23  litigation considering they're not as knowledgeable as the

24  type of – not as knowledgeable of these documents as all

25  of us who are involved are.
```

```
1                          PROCEEDINGS                    29

2              I understand plaintiffs may just want to be able

3    to find a document by a Bates number, but we simply can't

4    give it to them.  There's just too many, there are just

5    too many documents and too broad of requests to be able to

6    do that.  To search for a single document or a single type

7    of document I can't imagine would be that difficult with

8    whatever search function plaintiffs were using on their

9    databases.  But to go through each type of document I just

10   don't see how that's possible for us to do.

11             MX. GREEN:   And, Your Honor --

12             THE COURT:   Here's the problem – well, here's –

13   two things going on, and one is this is what Rule 34

14   requires, and the other is what was apparently an

15   agreement that no one ever presented to me, and, you know,

16   I take agreements seriously.  So this – the agreement as

17   read to me by Mx. Green, Ms. Weiss, says either you give

18   Bates numbers or you could give a volume number but only

19   if the response is like some large proportion of that

20   volume.  So do you see why --

21             MS. WEISS:   That's --

22             (interposing)

23             THE COURT:   -- you have to comply with your

24   agreement?

25             MS. WEISS:   That's not what I understood the
```

```
 1                         PROCEEDINGS                    30
 2   agreement to be.  I understood the agreement to be we
 3   would provide Bates numbers where we could, which we did
 4   do in quite a number of responses, especially on the non-
 5   consolidated requests, and where we weren't able to do
 6   that, we were going to provide volume numbers.
 7             MX. GREEN:  Your Honor, this was in writing,
 8   and beyond it being in writing, you know, I think the
 9   Court said as much at the March 4 conference.  And I
10   understand, you know, Ms. Weiss not being present for that
11   conference may be a bit of a problem here, but we sent her
12   the transcript.  I don't think there was an ambiguity
13   here.  And, you know, this shouldn't be the first time
14   we're hearing that they had a different interpretation of
15   that.
16             THE COURT:  I'm reading the volume
17   proportionate thing.  This is your summary I guess.  It's
18   not in quotes.
19             MX. GREEN:  Because it's --
20             (interposing)
21             MX. GREEN:  Sorry, because it's indented, it is
22   a direct quote from the email that we sent from the meet
23   and confer --
24             THE COURT:  That's something that will either
25   be - that's something that will either be Bates numbers or
```

```
 1                        PROCEEDINGS                    31
 2  something else like a volume number, except the defendants
 3  won't use a volume number if they're pointing to a
 4  disproportionately large volume relative to the documents
 5  being pointed to.  So, Ms. Weiss, was that your agreement?
 6           MS. WEISS:   If that's what it says in the
 7  writing, I suppose it was, but that is not how I recall
 8  it.
 9           THE COURT:   What do you mean?  You got this
10  letter, 464.  Is the block quote incorrect?
11           MS. WEISS:   No, Your Honor, I --
12           THE COURT:   The top of page 2.
13           MS. WEISS:   -- I'm not saying it's incorrect.
14  I'm not saying it's accurate.  Perhaps it was a
15  misunderstanding on my part.  But what I recall the
16  agreement being was that we would provide volume numbers
17  and when we could provide Bates numbers, we would.
18  Perhaps I had an incorrect recollection or understanding,
19  for which I apologize.
20           THE COURT:   It can't be a recollection because
21  it's in writing.  You don't have to recollect anything.
22  All you have to do is read it.  So you're saying you have
23  some different understanding of what it meant to not use a
24  volume number when it's disproportionately large?
25           MS. WEISS:   I'm trying to, as I sit here now,
```

PROCEEDINGS                    32

1

2  recall back to exactly what the conversation was, and I

3  don't remember exactly what the conversation was because

4  there were a lot of them and they were all very long.  But

5  as I said, if that is what is in writing, then I'm not say

6  that that wasn't what the agreement was.  I just remember

7  that when I spoke with my team and we were all working on

8  this chart and working on --

9          THE COURT:  I mean what did you do to, I mean –

10  I'm trying to understand what you did to come up with

11  these policies and procedures and why they had to be

12  spread over 20 volumes.  I mean, you know, Rule 34 is

13  ultimately our touchstone here, and Rule 34 does allow you

14  to produce documents as they're kept in the usual course,

15  but I don't even, I don't know how these volumes got put

16  together is the problem.  So why did, I mean is the answer

17  that these policies and procedures could be spread out

18  anywhere over these 15 volumes?  And how does that happen,

19  I mean did you – how did these volumes get put together?

20          MS. WEISS:  It's my understanding, Your Honor,

21  that when our client found documents, they sent them to

22  our office.  They were uploaded to our system.  Then

23  reviewed, redacted where need be, prepared for production,

24  and produced to plaintiff as they came into our office.

25  We didn't have say, for example, just one big block

1                                PROCEEDINGS                        33

2    produced to our office from our client of say policies

3    with respect to policing, use of force at protests.  As

4    they were found, they were sent to us.  They weren't sent

5    to us and, okay, this is every single document on use of

6    force at a protest and then sent to us.  If one was found

7    here or one was found there, they were sent to us.

8    Because we were trying to get them to plaintiffs as

9    quickly as we could rather than waiting for all of one

10   type of document to be received by our office, we produced

11   it as soon as we got it and reviewed it.

12           THE COURT:  All right.  I mean, Mx. Green, the

13   problem is, you know, I didn't order your agreement with

14   the other side in terms of how this was to be done, and,

15   you know, Ms. Weiss has her own view of what she intended

16   to do and obviously she didn't read this very carefully.

17   It's not like time was lost because of it.  We have a

18   problem now and the question of how to solve it.

19           Ms. Weiss, you're at some point going to have to

20   figure out where these policies and procedures are.  What

21   was your plan for that?

22           MS. WEISS:  I don't have a plan for it yet.

23   I'm working obviously with my team, but as of this moment,

24   nothing that I can express to the Court right now.

25           MR. DiSENSO:  This is Mr. DiSenso again.  If I

```
 1                        PROCEEDINGS                    34
 2   could just maybe speak on the issue again as to the
 3   metadata and why it is so important for finding some of
 4   these documents.
 5            THE COURT:   I suppose, although Ms. Weiss says
 6   she doesn't even know what the plan is.  So are you
 7   telling her for the first time now?
 8            MR. DiSENSO:   My only point would be, Your
 9   Honor, that, for example, you referenced Rule 34 before.
10   The Sedona Conference takes the position that when you
11   have large-scale ESI productions, it would be burdensome
12   and not reasonable to organize them by document request
13   and that, in fact, Rule 34 does not require it of large-
14   scale ESI productions.  Well, one of the reasons that they
15   take that position is because presumably you're providing
16   metadata including the file name and file path information
17   as I discussed before, as well as the ability to search
18   for documents within a database as a way to be able to
19   understand where the documents are and to find specific
20   types of documents within a production.  So --
21            MX. GREEN:   Your Honor, if I may --
22            THE COURT:   Go ahead.
23            MX. GREEN:   I think there are two different
24   issues here, and I think they're getting conflated a
25   little bit.  One is finding particular documents within
```

1  the production which I, you know, I may disagree with Mr.

2  DiSenso on that, but I don't know that there's that much

3  daylight between us ultimately.  The bigger issue, and

4  this is a part of how we've gotten here, is that what we

5  got on July 31 really was not, you know, a holistic or a

6  we think diligent attempt to produce the documents.  And

7  so what we're trying to figure out is not, you know, where

8  in the production are particular documents but rather what

9  is it that defendants think they've produced because we

10  think that there are huge gaps between what exists and

11  what they've produced.

12        And we've identified a large number of those

13  gaps.  We've made a number of motions on it.  This is the

14  letter that we sent them identifying that, you know,

15  something like 80 percent of their initial production was

16  just the AG production and the OIG production.  And what

17  we're trying to figure out here is not necessarily, and

18  this is why I think descriptions were important, not

19  necessarily where in the production things are but what,

20  you know, what is it they think they've produced, where is

21  that, so that we can kind of then take a look at that and

22  figure out where the disconnect is, right, why is it they

23  think they've produced much more than we think they're

24  produced.

```
 1                       PROCEEDINGS                      36
 2              THE COURT:  Well, now you're back to where it
 3   is.  I'm not sure I followed your last point.  I think you
 4   need to try me again on it.
 5              MX. GREEN:  Okay, I mean, you know, I think
 6   what we had hoped to get out of this chart was a
 7   description, you know, with something pointing at
 8   documents but, you know, we've produced, you know, the
 9   academy training at maybe volume, maybe Bates number, this
10   to this.  And we've produced – and even if we don't get
11   that description, I think if we got Bates numbers, we
12   could at least, you know, see what defendants think is
13   responsive.
14              The problem is here that, you know, we're trying
15   to make sure we have all the training documents, for
16   example, and we don't know, you know, we can guess what
17   they think is a training document, but we're inherently
18   guessing.  And as I understood the point of this part of
19   the chart, as we discussed on March 4, was to pin them
20   down on, okay, what documents do you think you've given us
21   in response to this because we think that we don't have
22   everything.  And, you know, I think that's – we need --
23              THE COURT:  You can think you don't have it if
24   they, unless you've gone through, you know, the entire
25   production and say, gee, there's no training documents.
```

1                          PROCEEDINGS                    37

2            MX. GREEN:   Well, we --

3            THE COURT:   Which I assume hasn't happened yet

4   and I don't expect you to have done it yet.

5            MX. GREEN:   Well, Your Honor, in fact, we have,

6   and we went through the metadata, and that's how we

7   figured out that what we got was not actually, you know, a

8   response to these document requests but instead a

9   reproduction of the response to the OIG request and the AG

10  request from 2020.

11           THE COURT:   Wait, you're talking about --

12           (interposing)

13           THE COURT:   Are you talking about in these 15

14  volumes in column D or in the July 2021 production?

15           MX. GREEN:   Well, those - they are coextensive.

16  Right?  These volumes are the July and pre-July

17  productions along with a few from after July.

18           THE COURT:   Oh, I thought they were mostly new.

19           MX. GREEN:   No, they are mostly old.

20           THE COURT:   Is there more coming after this,

21  Ms. Weiss, or not?

22           MS. WEISS:   Yeah, there's - I don't even know

23  how many thousands and thousands of documents we've

24  produced since July.  So I'd say that Mx. Green is very

25  wrong on that point.

```
 1                        PROCEEDINGS                    38

 2            I don't know the number of documents that are

 3   going to be produced on Friday, but it is extensive.  I

 4   don't know if Mr. DiSenso knows that number.

 5            THE COURT:   And that means you're adding volume

 6   numbers to column D?

 7            MS. WEISS:   Yes.  Column D, that I'm not sure.

 8   It's possible.  I don't know exactly how it's going to

 9   come out.  It hasn't been processed yet.

10            MX. GREEN:   Your Honor, I mean it says

11   additional responsive documents will be provided prior to

12   the court-ordered date.  I don't know how that can mean

13   anything other than there are more volume numbers, unless

14   that means something other than what it suggests.

15            THE COURT:   Yes, well --

16            MS. WEISS:   I presume there will be additional

17   volume numbers, I just don't know how the volume numbers

18   come out at the end of the (indiscernible).  There

19   probably will be, yes.

20            THE COURT:   At this point on this issue, I

21   think Rule 34 is my touchstone, but for purposes of the

22   production, but there's been enough water under the bridge

23   here and delays that I think I am going to put the

24   defendants to the burden of answering essentially on a

25   very quick basis what would amount to a contention
```

1                              PROCEEDINGS                      39

2    interrogatory as to which documents you contend fall into

3    these categories.  So I am, I mean the plaintiffs

4    certainly should do their own work.  I'm not saying the

5    defendants have to do it by Friday, but they are going to

6    have to put up or shut up as to what the training

7    documents are.  The plaintiffs shouldn't have to guess on

8    that.  So that's --

9             MS. WEISS:   Your Honor --

10            THE COURT:   If that's - go ahead.

11            MS. WEISS:   If I may.  Just, for instance,

12   training documents, it happens to be an easy one, the

13   metadata and the file path name and the file name say

14   training specifically.  Training documents in and of

15   themselves say things like police academy or --

16            THE COURT:   So you're saying it would be easy

17   to do?

18            MS. WEISS:   For plaintiffs to take a look at

19   and see what's there, yes, I do think it's very easy --

20            THE COURT:   Okay, I'm putting --

21            (interposing)

22            THE COURT:   As a sanction for everything that's

23   happened so far, I'm requiring the defendants to do it.

24   You're going to have to say what you contend, at least as

25   to this category - we can talk about others - what is

2  responsive to docket number 1.  I don't necessarily

3  require you to distinguish between the subcategories A

4  through Z, but you're going to have to say which are

5  responsive to, one, policies, procedures, directives,

6  training materials, and you're going to have to identify

7  that for them, and we'll talk about timing.  But it's

8  going to have to be on a relatively quick basis.  But I

9  want you to finish the production first.

10          Okay, Mx. Green, what's our next big issues?

11          MX. GREEN:   Why don't we take a look at

12  document request 14?  This is IAB files.  Among other

13  things.  But, you know, the thing we raised on this was

14  the IAB issue which, you know --

15          THE COURT:  Okay, and this is line 21 I guess?

16          MX. GREEN:   It looks like that's correct, yes.

17          THE COURT:  Okay, hold on a second.

18          (pause in proceeding)

19          THE COURT:  Okay, what do you want to do on

20  this?

21          MX. GREEN:  Okay, so here is the problem we

22  have here.  They have not told us that we're going to get

23  IAB documents.  They have not told us they're withholding

24  IAB documents, and we have gone through everything we have

25  and figured out that IAB documents that we have stop as of

1                           PROCEEDINGS                    41

2   the date of the requests from the OIG and AG in, you know,

3   I think the fall of 2020 or winter of 2020, all of which

4   is to say, right, like this chart doesn't answer the

5   question which we understood to be, you know, very

6   crystallized because we put it in I think three or four

7   different letters, which is what's going on with the IAB

8   documents after that date.

9           THE COURT:   Right.  I can't tell from this, Ms.

10  Weiss, whether you are objecting to this.  It doesn't

11  sound like you are.

12          MS. WEISS:   No, Your Honor, we're not

13  objecting.  We're not objecting.  If we were --

14          (interposing)

15          THE COURT:   Are you, in fact, producing - are

16  you, in fact, producing documents regardless of date?

17  You're not stopping at fall of 2020 for IAB?

18          MS. WEISS:   No.  We are not.

19          THE COURT:   So there's going to be additional

20  production coming in on Friday, is that it?

21          MS. WEISS:   Some of these might be some of the

22  documents that, and I'm not sure off the top of my head,

23  that we put in our letter last night that we will re-

24  submit following your rules, for which we apologize.  I

25  don't remember if these were some of the documents or not.

```
 1                         PROCEEDINGS                    42
 2  But yes, we will be producing.
 3            THE COURT:   Mx. Green, do you have anything to
 4  add on this?  I mean to some extent --
 5            (interposing)
 6            MX. GREEN:   Yeah, I guess --
 7            THE COURT:   If you're asking questions about
 8  objections, we can answer it, but --
 9            (interposing)
10            THE COURT:   What of the documents are going to
11  actually show up on Friday, you'll have to wait till
12  Friday to look at them.
13            MX. GREEN:   Yeah, at this point I think that
14  makes sense.  You know, obviously we wrote the letter a
15  little bit before today.  But I suppose then the bigger
16  picture zoom out I would like to do is here if I think
17  it's columns E and F are empty, does that mean that if we
18  discover we're missing something, there is never going to
19  be an objection on that because I think that cuts to the
20  quick a little bit here.  Right?  Like I think that helps
21  us get through this, but I think we do need on the record,
22  you know, a clear representation that if those two columns
23  are empty, that means that there is not going to be a,
24  well, we decided not, we think it's burdensome to give
25  that to you in the future.
```

```
 1                         PROCEEDINGS                    43

 2             THE COURT:   Well, do you want me to answer or

 3   you want Ms. Weiss to answer it first?

 4             MX. GREEN:   I suppose either.

 5             THE COURT:   I mean I feel the answer is the

 6   same as what I gave, we talked about at the very

 7   beginning.  If it's empty, it means there is no per se

 8   relevance, burdensomeness, privilege, whatever - well,

 9   privilege is a different issue - but there's no burdensome

10   relevance request.  But it still means that you are

11   required only to do a reasonable search for those

12   documents, as would be true in any situation, and, you

13   know, you have to take the steps that you think would be

14   reasonable.  If it turned out that those reasonable steps

15   missed, you know, some tiny fraction of possibly

16   responsive documents, that wouldn't necessarily show some

17   fault on your part --

18             MX. GREEN:   No, understood.  I suppose let me

19   rephrase that which is, you know, historically the NYPD

20   has been loath to give up open IAB files.  Based on this

21   response, I understand them to be saying they're going to

22   give us the open files.  Is that wrong?

23             THE COURT:   Ms. Weiss.

24             MS. WEISS:   Sorry, I couldn't find the unmute

25   button.  Once again, if there is no burdensome or
```

```
 1                        PROCEEDINGS                    44
 2   responsiveness or other objection in the chart, we are
 3   producing the documents.  We were already, there's already
 4   been talk in this case a long time ago about producing
 5   open investigations, and we were ordered to do so.  So we
 6   will be doing so here.  The only --
 7             THE COURT:   Sounds like our answer --
 8             (interposing)
 9             THE COURT:   Go ahead.
10             MS. WEISS:   The only objections that we put in
11   the chart, as we were directed to, were where we were not
12   producing based upon claims of burdensomeness or non-
13   responsiveness, not, you know, the quote/unquote
14   "biggies," you know, the ones that would really keep us
15   from producing documents.  So if there's nothing in the
16   chart under columns E or F, we will be producing.  Just
17   with one caveat, and that comes as part of the letter that
18   we filed last night.  There was one instance --
19             THE COURT:   I don't want to get into it.  I
20   want to do that separately.  So I understand that
21   everything is with a caveat of whatever your application
22   was last night.  And, by the way, the objections you had
23   to list were not just the biggies but also the smallees.
24   I don't know if there's something you were leaving out.
25   But burdensomeness relevance are the most common, but if
```

1                         PROCEEDINGS                    45

2   you had some other odd objection, then certainly you would

3   have to put it.

4         MS. WEISS:   Yes, of course.  I mean, you know,

5   not be sort of more, you know, vague, you know, sort of

6   things, but only objections that would keep us from

7   producing the documents.

8         THE COURT:   Yeah, well, I mean if it's

9   something that you couldn't understand because it was

10  vague, then you had to say something about it.  So I think

11  that's --

12        MS. WEISS:   Yes, yes.

13        THE COURT:   -- waived.

14        MS. WEISS:   Of course.

15        THE COURT:   Anyway, that answers your question

16  as to open IAB files, Mx. Green.

17        MX. GREEN:   Yes, it does.  So let's go up to

18  line 9 which is document request 4.

19        THE COURT:   Hold on.  Hold on, hold on, hold

20  on.

21        (pause in proceeding)

22        THE COURT:   Okay, go ahead.

23        MX. GREEN:   So I mean there are a couple of

24  issues I think here.  The biggie, to parrot everybody else

25  and so I can have my fun too, is that I think this is a

```
 1                          PROCEEDINGS                    46
 2  category where there is nothing in column B and E, but the
 3  Court has ordered a limitation on what they have to
 4  produce.  So it seems like, you know, if everything we've
 5  just discussed is correct, the defendants have now waived
 6  what, you know, the limitation they earned from the Court
 7  the last time we talked about these documents.  And so,
 8  you know, this is driving I think the bigger concern that
 9  we have about the chart which is this, we love this answer
10  to be clear, but it doesn't seem consistent with a motion
11  defendants already won.
12          THE COURT:  Ms. Weiss, do you understand the
13  problem?
14          MS. WEISS:  Yes, I understand what Mx. Green is
15  saying but we didn't think we had to specify on the chart
16  that we were going to be complying with, you know, with
17  Your Honor's past decisions and orders.  This was put in -
18  the response here was assumed to encompass the limitations
19  that Your Honor put on the production of, say, the RNC
20  documents.  We didn't think we had to restate it in this
21  chart.  We thought it was kind of a given.
22          THE COURT:  Mx. Green, I have to say I agree
23  with the defendants on this.  If I made a ruling, I don't
24  think they have to repeat it in the chart and say, you
25  know, subject to our ability to comply with the Court's
```

1                      PROCEEDINGS                    47

2  limitation.

3              MX. GREEN:   I mean --

4              THE COURT:   So certainly it's fine if you asked

5  the question; now you have the answer, and it's acceptable

6  to me.

7              MX. GREEN:   Okay.  Then let's move on.  I think

8  the only - it seems to me there are two things I'd like to

9  do.  There's one more kind of set of requests that I'd

10  like, or one more request I'd like to talk about

11  specifically, and then I suppose we should take what the

12  Court has ruled on and figure out how to apply it to the

13  bigger picture.  So the one last one I'd like to take a

14  look at is - sorry, let me just find the document request

15  number for this.  It's the org chart issue, but I

16  apparently did not do as good a job as I wish I had of

17  including the document request number.

18              Okay, so this is document request 48, and that's

19  at line 57.

20              THE COURT:   Hold on.

21              (pause in proceeding)

22              THE COURT:   Okay, go ahead.

23              MX. GREEN:   Oh, I was on mute this time.  So

24  this is something that we've discussed at no less than six

25  meet and confers, and each time, you know, what we get

PROCEEDINGS                48

1

2    after the meet and confer, despite a clear agreement, is

3    something other than what we've agreed on.  What we've

4    agreed on is that defendants are is that defendants are

5    going to produce I think the last three years of org

6    charts that are published internally at the NYPD annually.

7    What their current response says is go look at this list

8    of leadership, so it's not a chart, it doesn't give the

9    hierarchy, it doesn't give the command structure, and

10   we'll print out a copy for you.  That's not what we've

11   agreed to, and this is something that's been in I think

12   three or four different letters.  So, you know, I don't

13   know what to do with that.

14        I'll also add on this is that, you know, we

15   talked to Ms. Fitzpatrick about org charts.  She said she

16   thought the only one that existed was, you know, this

17   annually published one, although I recently found in a

18   confidential document or a document designated

19   confidential an SRG org chart.  So I'm also concerned

20   about, you know, the scope of the searches here because

21   it's clear to me at this point that there is at least one

22   other set of org charts out there that are not getting

23   covered by their response.

24        THE COURT:  Ms. Weiss, I mean you can't just,

25   you can't assume that this public chart on the website is

```
 1                        PROCEEDINGS                    49
 2   the only organizational chart.
 3             MS. WEISS:    No --
 4             THE COURT:    What's going on here?
 5             MS. WEISS:    -- understood and Ms. Fitzpatrick
 6   has been looking for any sort of organization chart,
 7   leader chart, leadership chart, hierarchical, sorry,
 8   charts of the hierarchy, of the commands and the leaders,
 9   and to the extent that there is anything, it will be
10   produced on Friday.  I don't think that I updated this
11   part of the chart completely, for which I apologize, but
12   Ms. Fitzpatrick, I don't remember if I personally saw
13   these documents but it's absolutely on the list for things
14   to be produced on Friday.
15             THE COURT:    Okay, well, I mean it seems to me
16   this should just be blank then, and you should say they're
17   being produced.  And given that this has been such a long
18   history for this one, I'm specifically directing that you
19   supply the Bates numbers so they know exactly what it is.
20             MS. WEISS:    No problem, and I just, I just have
21   to correct Mx. Green.  I'm sorry, this has not been the
22   subject of six or --
23             (interposing)
24             THE COURT:    Ms. Weiss, let's not --
25             MS. WEISS:    -- many letters --
```

```
 1                         PROCEEDINGS                    50

 2              THE COURT:   Mx. Weiss, enough, thank you.  Mx.

 3   Green, what's next?

 4              MX. GREEN:   Okay, I mean I think we have

 5   covered the examples I have – you know what, no, I'm

 6   sorry, I have one more huge example.  This is going to be

 7   document request 8, and I'm sorry, I have my notes in two

 8   different places, so that's why – this is document request

 9   8, which is at line 13.

10              THE COURT:   Hold on a second.

11              (pause in proceeding)

12              MX. GREEN:   And to make things easier, the

13   issue I want to address here is body-worn camera footage,

14   and that's it.

15              THE COURT:   Oh, okay, go ahead.

16              MX. GREEN:   So I have gone through the body-

17   worn camera footage we have, and I found some pretty big

18   holes in the production.  So, for example, and this is

19   just by the dates of videos.  I haven't watched every

20   video to confirm, you know, if there were – there were

21   multiple protests on June 4, for example.  I haven't

22   watched every June 4 video to make sure we have something

23   from every June 4 protest.  So on the schedule A protests,

24   we don't – I know for fact because we don't have anything

25   from the relevant days that we don't have any body-worn
```

1                          PROCEEDINGS                    51

2   camera from protest 59, 60, 61, 63, 64, 65, 69, and 70.  I

3   suspect we're also missing a number of protests from, you

4   know, the whoozy whatsits, the kind of more condensed

5   period at the beginning of the protests where, you know,

6   multiple protests were happening in a single borough in a

7   day.  So right there these big gaps in the body-worn

8   camera footage we have.

9           In columns D and E there's nothing noting that

10  they're withholding anything.  They say that they've

11  searched for each protest located on schedule A, but I

12  guess, you know, we are – they don't describe that search.

13  I think we had met and conferred on this and had, you

14  know, that issue had not actually come to a resolution.

15  So, you know --

16          THE COURT:   Wait, wait, wait, when you say that

17  issue, you mean --

18          (interposing)

19          THE COURT:   -- they're not denying that --

20          MX. GREEN:   That --

21          (interposing)

22          THE COURT:   Well, they're not denying they're

23  supposed to produce it?  I feel like this was the subject,

24  I feel like I issued some orders on body-worn camera

25  footage, involved a vendor and dates of deadlines they

```
 1                      PROCEEDINGS                    52
 2   were supposed to produce things.  Am I misremembering
 3   this?
 4          MX. GREEN:  Yes, Your Honor, this was about
 5   audit logs, and --
 6          THE COURT:  Oh, right, right, right, right.
 7          MX. GREEN:  That issue has, in fact, recently
 8   come back.  Defendants are declining to produce more audit
 9   logs on a different set of body-worn camera, but that's a
10   different issue for a different day.
11          THE COURT:  Okay, so you think you're missing
12   body-worn camera footage from certain protests, is that
13   it?
14          MX. GREEN:  Yes, yes, and, in fact, right,
15   getting those audit logs was very helpful in figuring out
16   what we were missing.
17          THE COURT:  Okay, so I mean, Ms. Weiss, have
18   you discussed – Mx. Green, I mean this seems like a little
19   bit not, I can't believe there's any objection to
20   producing something that could've been dealt with in a
21   meet and confer but maybe not.  Ms. Weiss, are you
22   objecting to producing this missing stuff?  Are you
23   denying anything's missing?  Are you saying if it's not
24   there, it doesn't exist?  What's going on?
25          MS. WEISS:  It's my understanding this one,
```

PROCEEDINGS                    53

this (indiscernible) unless I missed it in Mx. Green's

letter wasn't something I was prepared to discuss, but I

do know that we have been in constant contact with the

body-worn camera unit at NYPD which is the place where

body-worn camera would be found and how we would get

copies of it, and the head person over there is Allison

Aaronson, she's been on meet and confers with plaintiffs.

We have requested from her and her unit all the relevant

body-worn camera from the 83 protests.  If there is any,

it has been produced.  I can't guarantee that there is not

more that will be produced on Friday.

I, unfortunately, am not privy to every single

document that has been, you know, running through our

offices the past few months.  There might be more that are

going to be produced on Friday.  I don't know off the top

of my head.  I'm happy to get in touch with Ms. Aaronson

after this conference and find out what's up with this.

Mx. Green, if you know there are definitely

dates where you don't have body-worn camera and you can

send that to me, that will be even more helpful.  I can

doublecheck with Ms. Aaronson that those protests have

been checked for and give you a definitive answer just as

soon as I hear back from her.

MX. GREEN:  So if I may, I think the underlying

1                           PROCEEDINGS                    54

2   issue here, and, yes, we have met and conferred on this

3   and just didn't get to a resolution, is that what I think

4   happened is they used – and the Court probably remembers

5   this, right – they used the proximity feature of these

6   body-worn cameras to search for basically everyone who

7   came near a set of seed officers.  I think the problem is

8   that the set of seed officers that they used was just

9   deponents and defendants.

10          And so I think that's the only search they ever

11  did, and I think that's why we're missing protests because

12  we don't have, you know, we had an interrogatory that

13  never got answered which is please name everybody at

14  every, who policed each protest on schedule A.  I

15  understand why they thought that was burdensome.  It is

16  probably burdensome.  I don't know that I would agree it's

17  too burdensome but I get it.  But ultimately I think

18  that's what's prevented us from doing this search in a way

19  that we think is complete which is the seed officers were

20  not representative.  And so, you know, there was never a

21  comprehensive search, and I think what kind of got in the

22  way of doing this is that we did line officer depositions,

23  and that's primarily how defendants have gathered body-

24  worn camera footage is they did the proximity feature for

25  everyone who was being deposed and gave us that for each

1                              PROCEEDINGS                    55

2   deposition, but that's kind of a – it wasn't aimed at

3   complying with the requests per se; it was aimed at

4   getting us footage for each individual deponent.

5              THE COURT:   I see.  Okay, this is – I

6   understand why you're raising it now.  It's not to my mind

7   specifically a structural chart issue.  I guess in your

8   mind it is maybe because they didn't object to it, but

9   they do have a rather, their response seems to suggest

10  that they think that they've done it and/or they've done

11  it in a certain way.

12             MX. GREEN:   Right --

13             THE COURT:   I mean – and maybe that's

14  unacceptable and I think you should absolutely talk to

15  them about what they did to look for the body-worn camera

16  video, but I don't think it's something I want to do now

17  as part of this process.  All right?

18             MX. GREEN:   If I may suggest perhaps they

19  should have a date to give us a description of what search

20  they did.

21             THE COURT:   On the body-worn camera footage?

22             MX. GREEN:   Yes.  I think that would be the

23  right next step.

24             THE COURT:   Yeah, I mean you rather – I mean I

25  would've thought that talking to this Ms. Aaronson

PROCEEDINGS                          56

1

2    would've been the ideal way to do it.  You rather just

3    have them say what they did?

4         MX. GREEN:   I would at this point.  You know,

5    we've had these --

6         THE COURT:   That's fine.

7         MX. GREEN:   -- meet and confers and we've

8    gotten different answers at different meet and confers

9    unfortunately.

10        THE COURT:   Okay, so, Ms. Weiss, you put in

11   writing within one week exactly what you did to search for

12   the body-worn camera footage responsive to request number

13   8 and send it to Ms., Mx. Green and then we'll see where

14   that takes us --

15        MX. GREEN:   Yes --

16        THE COURT:   -- by April 19.

17        MX. GREEN:   Okay, so then I --

18        THE COURT:   Mx. Green.

19        MX. GREEN:   Yes, I think the next issue before

20   we move onto the sanction issue is kind of zooming out

21   what can we take from what we just did and apply it

22   globally.

23        THE COURT:   Okay.

24        MX. GREEN:   You know, I think our view is that

25   what the Court ordered on column D for request 1 makes a

1                              PROCEEDINGS                    57

2   lot of sense throughout the chart because I do think that

3   what we identified in column D is a recurring issue, or in

4   document request 1 is a recurring issue, right, it's we do

5   not know what they think they've produced.  We don't think

6   it's quite as easy as Mr. DiSenso is saying it is to

7   figure out what they think they've produced.  And if they

8   do think it's easy, it seems to me then they should be

9   able to do it.  You know, I can't tell you how many hour

10  I've spent trying to correlate this chart to what's in the

11  production, you know, I obviously did think to try the

12  metadata.  I don't think it's quite so easy especially

13  when for an individual document request you have to comb

14  through 20 different volumes across, you know, tens of

15  thousands of documents per volume.

16          So, you know, my view is that what the Court

17  ordered for column D in request 1 is something that

18  defendants should do for every request.  I will not be

19  surprised when Ms. Weiss disagrees with me.

20          THE COURT:  Ms. Weiss.  Ms. Weiss, you may be

21  on mute.

22          MS. WEISS:  Yes, sorry.  Sorry.  I'm just going

23  to go back to my previous argument, what Mr. DiSenso

24  explained.  The information is there.  They just need to

25  look through the metadata and they'll find the document

1                          PROCEEDINGS                    58

2   they asked for, find the documents, because there are so

3   many responsive documents to so many of their requests.

4   And for defendants to now go back and try to assign Bates

5   numbers to the massive number of productions that we've

6   made is simply incredibly burdensome, and it's something

7   that we won't be able to do yet still try to move forward

8   this litigation which is what we're trying to do.

9            THE COURT:   Let's hold off on this for one

10  moment, and, Mx. Green, I'm about to hear from you on part

11  2.  Thank you, go ahead.

12           MX. GREEN:   Okay, I mean what has happened over

13  the course of this conference really emphasizes, let's

14  start with the prophylactic order that we had proposed

15  after and during the February 11 conference and the Court

16  has held off on deciding what to do with.

17           I think that what just happened today with this

18  email that I think Your Honor said it looks like Ms. Weiss

19  didn't read very carefully.  I think we are at a stage

20  where that's what needs to happen out of agreements,

21  right.  Instead of what agreements we've gotten

22  commemorated in writing, defendants are going off of Ms.

23  Weiss's personal recollection of a meet and confer that

24  lasted hours.  It's not tenable, and it really is a

25  problem.  I don't even know that that's so much a

```
1                        PROCEEDINGS                    59
2    sanction, I think it's in part a sanction because they
3    have to do something more, and, you know, they are subject
4    to more court orders which could ultimately, you know,
5    have consequences, but, you know, I think it's been made
6    very clear that the agreements defendants are making are
7    being complied with at best in a half-remembered way.
8    Right?
9            And that kind of goes to what we just put up
10   with the Court's ruling on which is if the Court had so
11   ordered the agreement that was in writing, there would be
12   no ambiguity that defendants have clearly violated an
13   order, there would be no ambiguity as to what they were
14   required to do, and there would be no, and, you know, my
15   personal view is that after the March 4 conference there
16   was no ambiguity, but that prophylactic order would
17   resolve the issue.  Right?
18           So what that prophylactic order does is it
19   allows us to submit --
20           THE COURT:  Just so I have it in front of me.
21   Do you remember the docket number?
22           MX. GREEN:  Yeah, give me a second.  It's
23   mentioned at the bottom of my letter, my reply letter.
24   This is - sorry.
25           THE COURT:  Take your time.
```

```
 1                          PROCEEDINGS                  60
 2           MX. GREEN:   Yep.
 3           (pause in proceeding)
 4           MX. GREEN:   Docket 394.
 5           THE COURT:   Okay.  Hold on a second.
 6           MX. GREEN:   And the relevant paragraph --
 7           THE COURT:   Hold on a second, hold on a second.
 8           MX. GREEN:   I'm sorry.
 9           (pause in proceeding)
10           THE COURT:   Go ahead.
11           MX. GREEN:   So the relevant paragraph, you
12   know, I still think most of this is still relevant, but
13   paragraph 4 is what I'm specifically referring to.
14           THE COURT:   Ms. Weiss, paragraph 4.  You have
15   it in front of you?
16           MS. WEISS:   I'm still trying to open it.  I'm
17   having a little trouble getting into ECF.
18           MX. GREEN:   Ms. Weiss, I will email it to you -
19   -
20           THE COURT:   Mx. Green, can --
21           (interposing)
22           THE COURT:   -- email it to her?
23           MS. WEISS:   Thank you.
24           MX. GREEN:   Already on it.
25           MS. WEISS:   It's rejecting my password.
```

```
 1                         PROCEEDINGS                61

 2              (pause in proceeding)

 3              MS. WEISS:   Okay, I just received it from Mx.

 4    Green.  I'm just opening it up now.  Paragraph 4 you were

 5    speaking about, am I correct?

 6              THE COURT:   Take your time.  Take your time,

 7    and when you're ready, you can react.

 8              (pause in proceeding)

 9              MS. WEISS:   I think, I mean defendants don't

10    think that a court order of agreements between parties is

11    necessary.  If Your Honor disagrees, I just want to make

12    sure that if there is an order, something having to do

13    with paragraph 4, that it goes both ways, that if there

14    comes a time where defendants have an issue with something

15    plaintiffs have done or not done, that there's some back

16    and forth on the agreement and that it goes before Your

17    Honor as well.  And if something is agreed to, that

18    plaintiffs agree that they're going to do something or

19    defendants, that it be so ordered as well.

20              THE COURT:   I'm sure there's no objection to

21    that.

22              MX. GREEN:   I mean --

23              THE COURT:   Someone --

24              MX. GREEN:   Your Honor, I think we have a lot

25    of objection to that.  We aren't the ones who have
```

1                            PROCEEDINGS                        62

2   violated agreements.  We aren't the ones who have violated

3   court orders.  I think the reason for this is because

4   defendants, as we saw here today, don't keep their

5   agreements.  This is meant to I think, you know, plug a

6   gap.  You know, I think being subject to court orders on

7   ordinary agreements is a dramatic, you know, change of the

8   default.  I think that we believe that they very warrant

9   the change of the default given corporation counsel's, you

10  know, conduct in this case.  But we're not saying this is

11  an appropriate default for every case.  It's an

12  appropriate default where time and again, you know, and

13  this kind of comes back to, you know, how we got here in

14  the first place which is defendants don't even contend

15  that they've followed the parties' agreements or the

16  Court's order to produce the chart on time.  Right?

17          The parties agreed that we would get it by I

18  think March 14.  We got a wildly incomplete chart on the

19  18th.  Right?  The reason we are asking for this is not

20  because we think this is a default.  It's because we don't

21  know what else to do when we agree to things and then they

22  just don't happen.

23          THE COURT:  Okay, I see your point.  Ms. Weiss,

24  you can say something if you wish.

25          MS. WEISS:  No, I just – defendants completely

1          PROCEEDINGS                      63

2   disagree with what Mx. Green is saying about defendants

3   not complying with agreements, and anything that Mx. Green

4   says about a wildly incomplete chart is wholly incorrect,

5   and defendants take issue with that.  And we still contend

6   that if parties are going to agree to something in this

7   case, then any agreement should be court ordered.

8          THE COURT:   All right.  I've already heard from

9   you, Mx. Green, you don't need to say anything further on

10  that.  Anything else on part 2?

11         MX. GREEN:   Yes, I mean I think we need – yes.

12  Perhaps a lot more.  And I know Ms. Weiss disagrees with

13  my characterization, but the time to disagree with the

14  characterization was in the opposition letter.  Right?

15  The Court ordered defendants, not just, and, you know,

16  this goes back to the core sanction issue.  The Court

17  didn't just ask defendants, it ordered defendants to make

18  clear whether they had complied with the Court's orders or

19  not as of a certain date.  There is no question, none,

20  that there were no Bates numbers, no even volume numbers,

21  nothing producing, or pointing to prior productions in the

22  charts that existed as of the time defendants filed their

23  opposition.  It was only once we made a motion that we got

24  that version of the chart.

25         Nor did they contest that, and the time to do

PROCEEDINGS                    64

1
2  this was in their opposition, that, you know, and I think
3  the Court has observed on multiple occasions that we
4  recite these long histories of multiple agreements, and
5  defendants don't contest them.  I know Ms. Weiss is
6  contesting it in the whole today, but I mean is she
7  suggesting that defendants didn't agree to produce
8  something by March 14?  Is she suggesting that they didn't
9  after that produce it in the middle of the next week?  Is
10  she suggesting that they did, in fact, produce the chart
11  that they produced to the Court last Friday sometime
12  before 7 p.m. on Friday?
13           Like if – I don't think there's a serious
14  question that defendants have, again, just violated all
15  kinds of court orders, and both the spirit and the letter
16  of them.  I don't think that the Court was at all
17  ambiguous that, you know, the goal here was by February 25
18  initially we were supposed to get a description of
19  everything we had, everything we're going to get, and
20  everything that was going to be withheld.  We didn't get
21  that on February 25.  We brought that back to the Court.
22  On March 4 we had a conference where the Court I think
23  again was very clear what defendants had to do and sent us
24  to agree on a date by which that would be done.
25           We met with Ms. Weiss.  Because of her illness

1
2  it was not right away.  I think the Court had initially
3  said it should be much faster, and then we had to agree to
4  set it back.  But Ms. Weiss agreed to March 14.  We didn't
5  get it March 14, nor did defendants even say we're not
6  going to get it to you March 14.  It just didn't come.
7  And then we got a partial chart on the 18th.  And then,
8  you know, we didn't get the complete chart until we made a
9  motion, and not until the Court asked defendants to tell
10 it they thought they violated the order.  I don't know how
11 they can claim good faith in saying that they thought they
12 complied with the order when you asked the question before
13 they'd complied.  Right?  There is a linear time issue
14 there.

15         And, you know, all of that puts aside the fact
16 that what we're talking about here are a set of documents
17 that the Court ordered in no uncertain terms to be
18 produced by July 31 last year.

19         The reason we are here and, you know, this is
20 something in the pending motion about the after action
21 reports that I just, you know, defendants are asserting
22 that the Court has effectively decided that the July 31
23 deadline was meaningless.  I don't think the Court's done
24 that.  I think what the Court has done is given, you know,
25 perhaps some of the extraordinary circumstances and, you

1                                PROCEEDINGS                      66

2    know, everything that's gone on decided that certain

3    things are water under the bridge.  We're not going to

4    deal with whether or not defendants violated that order,

5    but we're just going to move forward.

6          That said, I don't see how they can stand here

7    and say they haven't violated the Court's orders here.

8    And so, you know, I think given what has been said in the

9    two Fitzpatrick affidavits, in particular the one that

10   said, you know, it was not until March that defendants

11   started trying to figure out where the standard, you know,

12   where a holistic view of the schedule A documents lived.

13   I think, you know, our proposal is we should probably get

14   document discovery fees up until whatever the date is that

15   Ms. Fitzpatrick, and she didn't include a date, but, you

16   know, she can tell us the date.  Whenever they started

17   that search I think we should get attorney's fees for all

18   document work between the start of the case and then.  I

19   think defendants have been sanctioned four times in this

20   case already, and it has clearly not made an impact.

21         It is, you know, I don't know where the decision

22   is happening, but as the letters that they submitted last

23   night makes very clear, defendants, like the City itself

24   has made a decision that it is not going to prioritize

25   collecting documents in this case.  The Mayor pulled

1                              PROCEEDINGS                    67

2  people out of the office that's collecting documents and

3  apparently that's why they can't meet the April 15

4  deadline.  They didn't tell the Court until last night

5  either, and, you know, it's just, it is not tenable, and

6  if there isn't some consequence for all of this and some

7  meaningful consequence, we're just going to be right back

8  here repeatedly, and this case isn't going to end.  I, you

9  know, I don't know how else to say it than that.  I, you

10 know, if this wasn't the City of New York, I can't imagine

11 any other party doing this, I genuinely can't, without at

12 least having their CEO hauled into court.

13            So, you know, I think that a very serious

14 sanction is in order.  I think the other thing that makes

15 a lot of sense to me is if the Court isn't going to do it

16 just as part of the chart, it makes a lot of sense to

17 expand the contention interrogatory sanction from document

18 request 1 to the rest of the chart at a minimum.  I think

19 that we need, you know, I just – there can't be no

20 consequences for violating clear court orders.  There just

21 can't.

22            THE COURT:  Ms. Weiss.

23            MS. WEISS:  There's so much to address here.

24 The defendants have not violated any court orders.  With

25 respect to this chart, the reason that we're here at this

1                              PROCEEDINGS                    68

2   conference today, Mx. Green and plaintiffs had what they

3   thought were issues with the chart.  We went through them

4   today.  I think that there was one area where Your Honor

5   has ordered us to do more to help identify what documents

6   are responsive to requests, and that's fine, but most of

7   the issues that Mx. Green brought up today are issues that

8   they had with the chart.  Your Honor didn't, you know,

9   understood what they were saying but in no way indicated

10  that the City had done anything wrong.  And to the extent

11  something wasn't up to the understanding of Mx. Green or

12  the Court, we agreed to fix it or change it or provide

13  more information.

14          This chart, since the beginning of when Your

15  Honor ordered that defendants produce it, has gone through

16  several iterations after conferences with the Court and

17  after meet and confers with the plaintiffs to try to get

18  it to where everyone's differing expectations wanted it to

19  be.

20          But it's – it really should be about the

21  document productions themselves, what defendants are

22  producing and what they're not, and to some extent where

23  the defendants have looked, and that's on the chart.  As I

24  said several times throughout the course of this

25  conference, if there's not something on the chart saying

1                              PROCEEDINGS                          69

2    that the defendants aren't producing it, defendants are,

3    in fact, going to produce it.  So it really leaves little

4    issue and certainly no basis for any sort of sanctions.

5              I just want to address briefly Mx. Green's

6    statement several times about the mayor deciding to pull

7    people off of the document collection, and I just want to

8    make clear and I think it's certainly at the very least a

9    misunderstanding that Mx. Green has.  The mayor has not

10   personally said I'm going to pull NYPD officers off of the

11   document collection for the 2020 Protest cases.  No.  NYPD

12   officers are reassigned to patrol and out in the street

13   has nothing to do with this case or anything that anyone

14   in the administration is trying to do with this case.

15   It's just a fact of life that the NYPD, like almost any

16   company or corporation, is losing staff, and people need

17   to be reassigned to other aspects of the organization.

18             I'm sorry, there are just, there's no reason for

19   there to be sanctions.  Your Honor, you yourself during

20   the course of this conference corrected misunderstandings

21   that Mx. Green has had with respect to the chart.  For

22   whatever reason things were not clear to them, things

23   might not have been clear to anybody, people might not,

24   people involved in this litigation may not have had the

25   same thoughts or views about what they thought should be

1
2   on the chart.  But it's crystal clear now that the

3   defendants, any different understanding that the

4   defendants had with respect to what should be in this

5   chart have been corrected, and if there's anything else,

6   it will be corrected, and it's certainly not any sort of

7   sanctionable bad faith in the completion of this chart

8   that would lead to sanctions.

9            MX. GREEN:   I mean, Your Honor, we started --

10           THE COURT:   Briefly, briefly.

11           MX. GREEN:   Yes.  We started with defendants

12  claiming that the chart is evolving.  Let's go back there

13  because that's what they said.  They believed that you

14  told them they could have an evolving document, that they

15  produced an evolving document.  That wasn't what you

16  ordered.  I don't, I mean between that and the fact that

17  the document that existed when the Court issued what I

18  think we can fairly call a show cause order was, did not

19  have anything pointing to where documents were.  Put aside

20  whether or not what they did by, you know, April 1 was

21  adequate, we had to make a motion and the Court had to

22  issue an order before they did that.  That's what at

23  issue, right, that's the sanctions issue.

24           The sanctions issue is not whether, you know,

25  they put a Band-Aid over it after the fact or whether that

```
 1                        PROCEEDINGS                     71
 2    Band-Aid, in fact, fixed the problem.  The issue is
 3    whether they complied with the Court's orders from
 4    February 18 and March 4.  There's no question they didn't.
 5    And Ms. Weiss didn't say anything to contradict that.
 6              THE COURT:  All right --
 7              MS. WEISS:  I will say it right now.
 8    Defendants did nothing to not comply with the Court's
 9    order.
10              THE COURT:  Well, I mean I did – I ordered a
11    definitive chart that said to identify what it is that you
12    had produced, and that was not in your original version,
13    right?
14              MS. WEISS:  That's correct.
15              THE COURT:  All right, just hold on a second,
16    folks.  We're going to take a five-minute break, all
17    right?
18              MX. GREEN:  Thank you, Your Honor.
19              THE COURT:  All right.
20              (pause in proceeding)
21              THE COURT:  All right, Mx. Green, are you
22    there?
23              MX. GREEN:  Yes, Judge.
24              THE COURT:  Ms. Weiss, you're there?
25              MS. WEISS:  Yes, Your Honor.
```

```
 1                        PROCEEDINGS                    72
 2            THE COURT:   Okay.  All right, well, you know,
 3   there's a larger overarching issue which was, you know,
 4   the City's definitive promise that documents, all
 5   documents were going to be produced by July, non-email,
 6   non-electronic documents were going to be produced by July
 7   31, and that did not happen.  There's obviously searches
 8   that started happening long after that that the Court was
 9   unaware had not happened.  So that's an overarching
10   problem.
11            I'm not prepared to order monetary sanctions
12   except with one exception that I'll get to in a moment,
13   but I am going to do some things to try to make sure that
14   this case stays on, continues on track as much as
15   possible.  First --
16            MS. WEISS:   Your Honor, may I just make - I'm
17   sorry, may I just add something before you make any
18   rulings.
19            THE COURT:   Go ahead.
20            MS. WEISS:   With respect, just briefly, to what
21   Mx. Green has asked the Court to order, for defendants to
22   associate Bates numbers with all 101 of the consolidated
23   demands.  It's associated tens of thousands of documents
24   with those demands, and that is virtually an impossible
25   task.  Even if we re-reviewed every document, it would be
```

```
 1                          PROCEEDINGS                    73
 2   ordinarily time-consuming and unlikely to be accurate --
 3              THE COURT:   Okay, just --
 4              MS. WEISS:   -- Mr. DiSenso --
 5              THE COURT:   -- Ms. Green, sorry, Ms. Weiss,
 6   just hold on because I'm going to get to that and I'll
 7   give you a chance to talk about time.  All right?
 8              MS. WEISS:   Thank you.
 9              THE COURT:   Okay.  So on that respect, and so
10   in terms of what I'm going to be doing now, I think
11   paragraph 4 in docket 394, the prophylactic order makes
12   sense.  I think it should be one way because it is being
13   issued as a sanction.  And I'm going to ask Mx. Green to
14   send me a Word version of just that section so that I can
15   easily deal with it.  I may make some tweaks in it.  So
16   that's one thing.
17              Mx. Green, I'm going to award you your fees for
18   464.  There's a disagreement about what they are.  The
19   defendant can, you folks can bring that to my attention.
20   But, you know, in a certain way the chart was not in the
21   shape that I had ordered it in February or on March 4.
22              Now, on the --
23              (interposing)
24              MX. GREEN:   -- we move on, Your Honor, may I
25   just clarify so that we don't, we have easier time.  I
```

1                          PROCEEDINGS                    74

2  assume what you mean is starting with whatever work went

3  into writing the letter at 464 and continuing through the

4  end of this conference is what your order --

5              THE COURT:   Correct.

6              MX. GREEN:   Correct?

7              THE COURT:   Correct.

8              MX. GREEN:   Thank you.

9              THE COURT:   Correct.  And in terms of the

10  chart, some of it is not – I want to do what's fair to the

11  plaintiffs, but some of it is really sort of, would have

12  been equally burdensome to the defendants or the

13  plaintiffs.  You know, I'm just picking random, you know,

14  produce all documents showing persons showing plastic

15  bottles or something like that.  That's, there's no

16  particular expertise on the part of the defendant to

17  determining something like that.  It either it happened or

18  it didn't happen.  Somebody will find it on the body-worn

19  camera footage or they won't.  There may be a time later

20  in the case where a party may be required to be more

21  specific about what evidence they're offering, and it will

22  become clearer.

23              There are some things that are what I would call

24  within the purview of the defendants, and that's very

25  obvious in request number 1.  You know, they know what

1    their policies and procedures are.  I don't expect the

2    plaintiffs to figure out what their policies or procedures

3    are.

4

5           So I'm not going to go through them all now.  I

6    want the plaintiffs to think about what I just said in

7    terms of what would be reasonable to require the

8    defendants to do as opposed to them because of the

9    defendants' knowledge and expertise and presumed knowledge

10   of their own documents versus things that either side

11   would have knowledge about and could look into.

12          So you should make a proposal to the defendants

13   about what you think they should do.  Any disagreement

14   just present it to me in a letter, and I'll go through the

15   chart and say what the defendants have to do.  They

16   definitely have to do number 1, they should start doing

17   that now.  They should give their response within two

18   weeks from today, the 26th.  Identifying where those

19   policies and procedures are, again, they don't have to

20   break it down by the letters but within the document

21   request.  And, again, by Bates number, not by volume

22   number obviously.  That's the whole point of this

23   exercise.

24          Ms. Weiss, I cut you off because of what I was

25   going to say, but I did promise that I'd let you say

1                        PROCEEDINGS                 76

2 something.  Is there anything you want to say on that?

3            MS. WEISS:  Just again the burden, but I

4 suppose we'll see what plaintiff proposes, and then we can

5 explain further if we believe that it would be a nearly

6 impossible task.  I guess it's going to kind of depend on

7 what plaintiff proposes.

8            THE COURT:  That's what I assumed.  So let's

9 see what shakes out from that.

10           MS. WEISS:  Certainly.  Thank you, Your Honor.

11           THE COURT:  Let's see, that's the limit of what

12 I'm doing on sanctions today.  I think we're done with

13 this issue.  I have a couple of other issues.  But

14 anything else on 464, Mx. Green?

15           MX. GREEN:  Not on 464, Your Honor.

16           THE COURT:  All right, and we're getting an

17 updated chart Friday with a definitive version?  Or do you

18 think this is it, Ms. Weiss?

19           MS. WEISS:  I believe this is it, but I will

20 doublecheck to make sure nothing in the production makes

21 that --

22           THE COURT:  There was some language we know you

23 had to remove, Mx. Green, I forget what it was.

24           MX. GREEN:  Yes.

25           THE COURT:  Okay, so I suggest going through it

1                              PROCEEDINGS                    77

2    again.  If there's another iteration, give it by Friday.

3              MS. WEISS:   Yes.

4              THE COURT:   All right, before we get to my two

5    issues, Mx. Green, you said you had something else?

6              MX. GREEN:   No, I think that is unexpectedly

7    all I have for today.

8              THE COURT:   Okay.  My issue is, you know, I

9    talked about holding off on higher level depositions while

10   we deal with the intervenors and give them time to come

11   in, which obviously isn't happening until the Second

12   Circuit acts.  How many more – I had understood there

13   weren't that many more depositions left.  For some reason,

14   at the last conference I had written down the number 12 or

15   13.  Then I saw in some memo, some letter, and maybe it

16   wasn't this group --

17              (interposing)

18              MX. GREEN:   I believe it is.  There are about

19   50 to 60 deposition days which probably boil down to 30 or

20   so depositions, and I am not asserting that in a way where

21   I won't accept a correction from Ms. Weiss.  But I think

22   there are about 60 deposition days that defendants are

23   classifying as high level.  I think we have a disagreement

24   about ten of them that we had met and conferred on, we

25   have an impasse on.  We have a letter motion in draft

```
 1                         PROCEEDINGS                    78
 2  about it.  But then I think what the Court is about to get
 3  to is that defendants have said that they need five months
 4  to spread those out over, and we have about three months
 5  left in the discovery schedule altogether.
 6            THE COURT:   Right.  So 50 to 60 days, meaning
 7  some people are booked for two days.  That's what's going
 8  on?
 9            MX. GREEN:   Exactly, or they're cross-
10  designated as 30(b)(6), so technically it's the City but
11  it's going to be somebody who is deposed as a fact witness
12  the day before.
13            THE COURT:   Okay.  Yes, I saw someone's letter
14  said they thought it would take four to five months.  Is
15  that, that's the City's contention.  I'm wondering why
16  that --
17            MX. GREEN:   It's the City's contention --
18            THE COURT:   -- would be so.
19            MX. GREEN:   It's the City's contention coming
20  through our letter, and since we wrote the letter, the
21  City has clarified that they understand the Court's order
22  of the discovery end date to not apply to high level
23  depositions.
24            THE COURT:   Oh, no, of course it applies.
25  Except for the fact, I mean I think I issued that order
```

```
 1                        PROCEEDINGS                    79
 2   before – did I issue it before the Second Circuit decision
 3   or after?
 4          MX. GREEN:   No, well after.  It was on
 5   defendants' motion to stay and our cross-motion for an
 6   extension --
 7          THE COURT:   Oh, right.  Yeah, it was after.
 8          MX. GREEN:   Yeah.
 9          THE COURT:   But it was on the assumption that
10   there might, there would be action quickly which has not
11   happened.  Okay, well, we're going to put that aside.  I
12   just wanted to answer a question – I don't want to deal
13   with the issue now.  I just wanted to understand where
14   those numbers were coming from.  I'm not saying that I
15   agree that it's going to take four to five months.
16          MS. WEISS:   Your Honor, if I may, just want to
17   throw out there – sorry.  There are still a number of line
18   officers who were level officers that need to be completed
19   as well.  So I think that that is in part where the time
20   period comes from.  And we are doing them now.  I think
21   there's one going on today as we speak.  But it's not just
22   the high level officers.  There's still quite a few line
23   officers that need to be deposed.
24          THE COURT:   How many line officers left?
25          MS. WEISS:   That I don't know.
```

```
 1                      PROCEEDINGS              80
 2          THE COURT:   Anyone know?
 3          MS. WEISS:   I would --
 4          (interposing)
 5          MS. WEISS:   -- 30 or 40.
 6          MX. GREEN:   If I may, I think there are a
 7 number that are likely to ultimately be, you know,
 8 withdrawn.  We've had a meet and confer.  To let Ms. Weiss
 9 off the hook a little bit, the person handling this on
10 their team is Amy Robinson.  We had a meet and confer on
11 this.  The four- to five-month timeframe though is only
12 for high levels or what the City is viewing as high levels
13 because we do have some disputes on kind of technical
14 classification.  Because I think the assumption is we're
15 going to really do our best to knock out all the line
16 officers between now and when the stay ends, although
17 there are some scheduling issues there and the City is not
18 necessarily scheduling --
19          THE COURT:   Wait, wait, when you said – oh, I
20 see, when the new parties come in.  Sorry, go ahead.
21          MX. GREEN:   Right, because I think we all
22 decided it was a blessing in disguise in some ways because
23 we could knock out a bunch of stuff before we resume high
24 level depositions.  And so the thought I think that we
25 all, although we have different views of how to do it, is
```

1                            PROCEEDINGS                      81

2    ideally we'll have gotten through however many line

3    officers are on the stack or most of them by the time we

4    resume high level depositions.

5              THE COURT:   When you say by the time, no one

6    knows what that time is.

7              MX. GREEN:   No one does because --

8              (interposing)

9              THE COURT:   You have to - you must have some

10   vision in mind how long it's going to take.

11             MX. GREEN:   Yeah, well, unfortunately, you can

12   look at the time between filing a petition for en banc

13   review and the time --

14             THE COURT:   No, no, no, no, you mis-heard me.

15   I said you must have some vision of time of how long it

16   would take to do the remaining --

17             MX. GREEN:   Oh, oh --

18             THE COURT:   -- not high level --

19             (interposing)

20             MX. GREEN:   I'm sorry.  I'm sorry.

21             THE COURT:   Not how long it would take the

22   Second Circuit to act, no.

23             MX. GREEN:   It's been a long afternoon.  Yeah,

24   I think the answer is it does depend a lot on what

25   information we get because, you know, for example, I

```
 1                         PROCEEDINGS                    82
 2   represent, I'm one of the lawyers on the Hernandez case,
 3   we were not a hundred percent sure who our Does are yet,
 4   and if we happen to get them right in the first kind of
 5   stab we take at it, that cuts a lot of people off the
 6   list.  If we don't, it doesn't.  But I think our thought
 7   is it's probably two months of work maybe.  I'm going to
 8   go see if anyone is yelling at me in our group chat.  But
 9   I think that's --
10             THE COURT:   I'm sorry, what was your answer?
11   What was your answer for the timing, I'm sorry?
12             MX. GREEN:   I think two to three months.
13             THE COURT:   Just to do the remaining 30 to 40.
14             MX. GREEN:   Yeah, I mean one of the other
15   issues is, you know, there are always scheduling issues,
16   right, so, for example, there was somebody who was
17   supposed to go forward tomorrow and understandably, given
18   the shooting this morning, the officer was required to do
19   something else during the day he would've been prepped
20   which was today, and so tomorrow's deposition's cancelled.
21   And, you know, obviously I'm not saying that that was not
22   the right call; that was the right call.  But, you know,
23   we are running into a lot of scheduling issues, many of
24   which make sense, but, you know, I'm trying to account for
25   that in the timeframe I'm given.
```

```
 1                        PROCEEDINGS                    83
 2              THE COURT:   Okay.  How many line level - how
 3    many depositions have you done to date about, anyone know?
 4              MS. WEISS:   I don't know, Your Honor.  I'm
 5    sorry.
 6              MX. GREEN:   I want to say it's something in the
 7    range of 50.
 8              MS. WEISS:   I would estimate somewhere around
 9    that as well.
10              MX. GREEN:   Not counting the plaintiffs I think
11    because obviously that increases the number.
12              THE COURT:   That's already happened?
13              MX. GREEN:   I'm being told that it's probably
14    closer to 30 officers, but, you know, I don't --
15              THE COURT:   And how many plaintiffs?
16              MX. GREEN:   We've done all of the plaintiffs
17    except for the plaintiffs in the newly added cases, and we
18    haven't done any of those plaintiffs.  And new meaning,
19    you know, sometime last year.
20              THE COURT:   How many plaintiffs are there
21    before the newly added?
22              MX. GREEN:   There are 11 in Hernandez, 1 in
23    Minett, and somebody is about to tell me how many there
24    are in Gray.
25              ATTORNEY:   There's five in Gray.
```

```
 1                        PROCEEDINGS                    84
 2          MX. GREEN:   Thank you.
 3          THE COURT:   And they were all deposed?
 4          MX. GREEN:   No, those --
 5          (interposing)
 6          MS. WEISS:   -- happened yet --
 7          THE COURT:   I'm sorry, how many have been – my
 8  question is how many plaintiffs have been deposed so far?
 9          MX. GREEN:   I want to say it's 20 to 30.  It is
10  the total across the other cases.
11          THE COURT:   Okay.  I'm just trying to get a
12  sense of --
13          MX. GREEN:   Yeah, no, understood.
14          THE COURT:   -- rate of depositions.  Okay.  All
15  right, so my last issue is just, if people aren't
16  prepared, I guess I can deal with it in another way, but
17  it was on Ms. Stoughton's letter.  Ms. Stoughton, are you
18  ready to talk about it?
19          MS. STOUGHTON:   Yes, Your Honor.
20          THE COURT:   Ms. Weiss, are you (indiscernible)?
21          MS. WEISS:   Unfortunately, Your Honor, I am not
22  prepared to speak about it today, and I would have to get
23  off this call by 5 p.m. anyway even if I was ready, but I
24  am not prepared to talk about it today.  I don't even have
25  the document up in front of me.
```

```
 1                        PROCEEDINGS                    85

 2          THE COURT:   All right, well, I'm going to just

 3  make a ruling then without, a partial ruling without

 4  anyone having to talk about it.  So you can, if you have

 5  to leave, feel free to order the transcript.  It's not

 6  going to take more than a couple of minutes.

 7          What I want - I'm not prepared to find a waiver

 8  based upon what I've read, but the defendants need to be

 9  much more definitive about what we're talking about.  I

10  could not, I don't know why we don't have an affidavit

11  from Conforti, there may be a reason.  But I can't tell

12  whether the only thing that the Conforti ever put into

13  writing was a draft document or whether there are other

14  documents that are associated with that, such as, you

15  know, notes of discussions with people or emails or

16  anything like that.

17          So we need a new affidavit, don't file it, give

18  it to the plaintiffs, that describes exactly what the

19  material is that it's going to be subject to the

20  deliberative process.  I'm not sure that it's going to

21  matter on the substantive issue of whether it's a good,

22  plaintiff's privilege. that was not presented to me in the

23  letters.  It was just the log issue.  And the log needs to

24  be beefed up, and it could be done through an affidavit

25  through a description of what, you know, actual documents
```

2   there are that come within this claim of privilege.

3          If Conforti, you know, picked up a police record

4   and, you know, some after action report or whatever else,

5   that's, unless you're claiming privilege as to the after

6   action report, that's not what I'm looking for.  I'm

7   looking for actually created documents that are being, for

8   which privilege is being claimed.  If he looks up reports

9   or anything else, that was either the subject of a request

10  by the plaintiff or it wasn't, and if it was, presumably

11  it was produced because it was relevant.  I'm just trying

12  to get as to the deliberative process, and right now, you

13  know, I don't, I accept that there can be a categorical

14  assertion of privilege, but right now it just says

15  Conforti report.

16          You know, it's not an assertion over a set of

17  documents.  It claims just to be a report, but I want more

18  clarity about whether this literally, only the single

19  document that lived in draft form weeks or months or

20  whatever it was or there's something else like notes of

21  interviews or emails back and forth or something else, in

22  which case the plaintiffs should be entitled to know

23  exactly what was involved.

24          So you need to produce that within the next

25  week, okay, so that's by April 19.  Someone with knowledge

1

2  has to provide that to the plaintiff, and then the

3  plaintiff is going to be free to make a new application,

4  but the waiver application, application on the merits if

5  they think they can defeat the privilege.  I'll probably,

6  you know, have you just brief it formally because that's

7  what I usually prefer for privilege, but if people want to

8  do it by letter, I don't care.  But I'm rejecting the

9  waiver argument based upon what was in the letters now.

10 Any questions about the ruling, Ms. Stoughton?

11        MS. STOUGHTON:   Yes, just one question, Your

12 Honor.  In addition to the order to produce an affidavit

13 or otherwise, would it be (indiscernible) privilege log

14 listing the actual, actually created document?  We just

15 ask that the Court also order defendants to list the

16 documents that were consulted as part of the after action

17 review process.  Your Honor referenced that presumably

18 those documents were produced.  But I don't know that we

19 share that presumption.  In the paper --

20        THE COURT:   That's not a deliberative - but

21 that's not a deliberative process issue.  I don't think

22 that's, I don't think you're entitled to that on a

23 privilege log.  So I'm --

24        MS. STOUGHTON:   No, Your Honor --

25        THE COURT:   -- denying - go ahead.

```
 1                        PROCEEDINGS                    88

 2          MS. STOUGHTON:   Your Honor, I understand what

 3   you're saying.  I agree it's not necessarily part of the

 4   privilege log, but it was a document request that – this

 5   starts to fit in more with the discussion we've had all

 6   day about the chart, and perhaps it's best to think of it

 7   as another line on the chart.  Where there was a request

 8   for documents related to any after action review process

 9   and we just don't any way to determine what those

10   documents were.

11          THE COURT:   I feel this is a little bit outside

12   the scope of the letter which was limited to deliberative

13   process.  So if you want to raise that as part of a meet

14   and confer process, that's fine.  I'm not going to deal

15   with it today.

16          MS. STOUGHTON:   Okay, Your Honor.

17          THE COURT:   Anything else we need to do today

18   from the plaintiffs' side?

19          MX. GREEN:   Your Honor, if I may, I suppose we

20   briefly talked about depositions, but I don't know that we

21   came to a conclusion on what we're doing.  Should we

22   assume that there is some length of extension past the

23   current end date to have high level depositions?  I mean

24   given that we don't have the Second Circuit

25   (indiscernible) and I know that the Court has cautioned us
```

```
 1                       PROCEEDINGS                   89
 2   against making those assumptions.  But I have to assume
 3   we're extending somewhat.  Should we, you know, should we
 4   make an application and propose something?
 5           THE COURT:   Yeah, I think you should do that.
 6   Make an application and propose something.  But try to –
 7   we need to squeeze things in, okay.  So if it requires
 8   doubling days, so be it.
 9           MX. GREEN:   Yes.  Your Honor, I assure you we
10   are asking for that.  It's, you know, we can only do so
11   much with the answers we get.
12           THE COURT:   Okay.  Anything else from the
13   plaintiff?
14           MX. GREEN:   No, Judge.
15           THE COURT:   From defendant?
16           MS. WEISS:   No, Your Honor.
17           THE COURT:   Okay, thank you, everyone, good
18   bye.
19           (Whereupon the matter is adjourned.)
20
21
22
23
24
25
```

90

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, In Re: New York City

Policing During Summer 2020 Demonstrations, docket

#20cv8924, was prepared using PC-based transcription

software and is a true and accurate record of the

proceedings.


Signature  _____
                CAROLE LUDWIG

Date:  April 13, 2022