

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES  
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE  
CIVIL RIGHTS BUREAU

May 2, 2022

**By Electronic Filing**

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

> Re:  *In re: New York City Policing During Summer 2020 Demonstrations,*
> *No. 20-CV-8924*
> This Letter is Related to All Cases

Dear Judge Gorenstein:

We write on behalf of all plaintiffs in these consolidated cases to respectfully request a discovery conference, pursuant to Local Civil Rule 37.2, regarding Defendants' failure to produce ARGUS video footage and related information by the Court-ordered deadline of April 15.

Defendants have failed to produce ARGUS footage that is vital to the conduct of depositions and whose delay is severely prejudicial to Plaintiffs. Defendants claimed to have been collecting this footage for nearly a year and stated on the purportedly final version of the Court-Ordered "chart" that it would be produced on April 15th. But Defendants admit they did not produce it and, to date, cannot explain why it has not been produced or when it will be produced. The thousands of hours of ARGUS footage will require painstaking review before depositions and must be produced immediately.

### I. Summary of the Parties' Conferrals

The history of the parties' conferrals about ARGUS footage is long.

By way of context, the NYPD owns and controls 3,510 ARGUS closed-circuit video system cameras which are installed at approximately 1,755 locations throughout New York City. *See* Ex. A (Decl. of Joseph Klubnick) ¶¶ 3–8.[1] These cameras are perched atop poles and record

---

[1] As explained *infra*, Defendants provided the Klubnick Declaration pursuant to the Court's order to provide a sworn statement by someone with knowledge to explain the process for storing and retaining ARGUS video. The declaration explained that the NYPD Legal Bureau

Hon. Gabriel W. Gorenstein
May 2, 2022
Page 2

their public surroundings continuously. *Id.* ¶¶ 9–10. Network Video Recorders, in turn, store that recorded video on hard drives for thirty days after which they automatically overwrite the video, unless the footage is identified for a longer retention period. *Id.* ¶ 11. Many of these cameras captured the protests at issue in these consolidated actions from a fixed, aerial vantage point, unique from any other NYPD surveillance tool and are essential to grasping the full scope of some of the protests, particularly those involving kettling.

On March 25, 2021, Plaintiffs served their First Consolidated Sets of Requests for Documents, seeking "all video" relating to the 83 protests identified in an attached Schedule A (the "Protests"), including but not limited to ARGUS video footage "concerning any incidents currently or formerly under investigation or referred for internal investigation by the NYPD," or "by the Civilian Complaint Review Board." ECF No. 103-1 at 11 (Request for Production No. 8(h)), 17–18 (Request for Production Nos. 14, 15) (together, the Requests). Defendants generally objected to these Requests as not proportional to the needs of the case to obtain *all* videos pertaining to the Protests, including those not involving the named plaintiffs, but agreed to produce investigation files from the CCRB and NYPD on a rolling basis. *See* ECF No. 103-2 at 71–72, 80–82 (Defs.' April 26, 2021 Responses). While Plaintiffs did not agree with the merits of these objections, they nonetheless continued to confer with Defendants regarding the scope of what ARGUS footage Defendants would produce.

For example, Defendants repeatedly promised ARGUS footage at conferrals regarding pre-deposition discovery. Following a May 7, 2021 conferral, Defendants' counsel Dara Weiss informed Plaintiffs that she had "reached out to the appropriate people and asked them to start putting the BWC and Argus footage in a format to allow me to exchange it with you." On May 12, 2021, Ms. Weiss further apprised Plaintiffs that her "client is still checking on aviation, and is still in the process of collecting ARGUS.  They will be part of the rolling production, but it is unlikely that you will have them prior to your clients' depositions."

In later conferrals, Defendants reiterated that they were searching for, and would produce, ARGUS footage. In May 10 and May 16 letters sent to Defendants, Plaintiffs identified numerous and significant deficiencies in Defendants' responses to their First Consolidated Requests.  The parties met and conferred regarding those deficiencies on May 21 and agreed that Defendants would begin rolling production and would amend their responses. *See* ECF No. 163. Defendants amended their responses to the Requests, committing to "search for additional responsive documents and [] provide them, on a rolling basis prior to July 31, 2021, to the extent they exist." ECF No. 173-2 at 14. By letter dated June 21, 2021, Defendants also asserted that some ARGUS footage had been produced and that "[a]dditional footage is being searched for." ECF No. 173-1. Although Defendants produced CCRB and IAB files that themselves contained some limited ARGUS footage relevant to previously commenced investigations, it was apparent that Defendants had not independently searched for or produced any of the ARGUS video in response to the Requests in this litigation. *See* ECF No. 173.

---

ordered the preservation of ARGUS footage to June 8, 2020, though protests continued thereafter.

Defendants then walked back their previous commitments. At numerous conferrals with Plaintiffs on ARGUS video—on July 27, August 18, September 8, and September 15, 2021—Defendants claimed that producing ARGUS video would be overly burdensome because to do so, an individual would purportedly have to watch every minute of footage. But Defendants did not, as they promised at these conferrals, put forth a person with technical knowledge of this process and alleged burden or a sample ARGUS video in its native format to support this assertion. Only when ordered by the Court to provide a "sworn statement from somebody saying exactly what the retention process is where these documents are and so forth," did Defendants provide a declaration from Lt. Joseph Klubnick of the NYPD's Information Technology Bureau. *See* 9/20/21 Tr. at 42:16–20. For the first time, Defendants disclosed that the NYPD preserved only footage from 1,560 (of a total 3,510) ARGUS cameras that was captured May 28, 2020 through June 8, 2020, and that all other Protest footage would now be overwritten (an issue that Plaintiffs reserve for a future spoliation motion[2]). (Klubnick Decl. ¶¶ 8, 13, 15.) However, Lt. Klubnick did not explain the process of producing ARGUS video.

In the absence of that information, Plaintiffs asked Defendants to meet and confer regarding what portions of the ARGUS video (which record 24/7) to produce and the format in which it can be produced. At conferrals on November 1 and 5, 2021, Defendants refused to provide Plaintiffs with maps of the locations of ARGUS cameras (to allow Plaintiffs to identify the relevant cameras for each protest) but instead agreed to prioritize its search of relevant video if Plaintiffs could provide maps indicating the areas of the protests to prioritize, along with the related dates and time periods. Ms. Weiss confirmed by email dated November 19, 2021, that "[o]nce those maps are received, the footage will be collected and provided."

Based on these representations, Plaintiffs provided Defendants with an initial batch of 36 protest area maps on December 15, 2021. A sample map, marked with area, date, and times of the requested footage, is attached here. Ex. B. The cover email made clear that these maps did not reflect the entire area that is relevant to each protest or the litigation and reserved the right to amend and supplement these maps and to maintain Plaintiffs' prior objections to Defendants' positions regarding protest-related video footage. On January 10, 2022, the undersigned emailed Defendants requesting an update on the production of ARGUS footage and in the alternative, a meet and confer. Defendants did not respond to that email.

Plaintiffs noted Defendants' failure to produce ARGUS videos in a January 14, 2022 deficiency letter to Defendants' counsel. Prior to a meet and confer regarding that letter, Ms. Weiss confirmed by email dated February 8, 2022, that:

---

[2] Defendants received preservation letters from a number of Plaintiffs' counsel before overwriting and destroying this important evidence. Once Plaintiffs are able to show definitively what kinds of things ARGUS footage shows generally, Plaintiffs can better make the showing of what the spoliated footage would have likely contained and thereby propose a more appropriate spoliation sanction. *See generally, Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003).

> We have sent the maps of Argus locations to LMSI for them to review and they will follow up with our NYPD liaisons if they need more information to fulfill the request. We will provide the locations of the cameras within the areas on the maps provided.

Defendants confirmed their commitment to provide this ARGUS footage at the meet and confer the next day.[3] Defendants did not follow up or produce ARGUS videos or the camera locations. Instead, in each iteration of the discovery chart that laid out the progress of their production, Defendants asserted the following: (1) that any responsive documents not already provided in response to Request No. 8—which called for ARGUS video—"will be provided by the Court-ordered date"; and (2) in response to a request from *Sierra* for all video recordings, that "as per [the] agreement of the parties, all Argus footage sought by plaintiffs is in the process of being collected and will be produced forthwith." *See* ECF Nos. 426-1 at 5, 15, 464-1 at 9, 28. At that time, the Court had ordered all outstanding production, other than certain unrelated categories, to be produced by March 18, 2022. ECF No. 410. The Court later granted Defendants two more extensions, to April 15, 2022, to produce all documents, stating in its last order that:

> While the City's past dilatory conduct with respect to responding to discovery counsels against granting an extension, the fact remains that a brief extension at this time may not have a practical effect on the progress of this case. The Court will therefore grant an extension to April 15, 2022, to produce all documents. The Court finds it highly unlikely that the City could show cause for any further extension.

ECF Nos. 453, 462.

On March 16, 2022, Plaintiffs sent Defendants an additional 9 maps. And on April 11, 2022, having received no ARGUS files nor response to her previous email, the undersigned emailed Ms. Weiss and Defendants' counsel requesting confirmation that all outstanding ARGUS footage, including videos pertaining to the maps produced December 21 and March 16, would be included in the April 15 production.

Defendants did not respond until after that deadline, on April 25, 2022, to note, "We are unaware of any ARGUS in the 4/15 production, we are checking further to determine where it is." On April 28, 2022, Plaintiffs advised Defendants that they would be moving to compel the production of the ARGUS video due to Defendants' violation of the Court's order. In response, on April 29, Defendants' counsel Jenny Weng notified Plaintiffs that Defendants "have conferred with NYPD and they have represented that all the relevant Argus Cameras to the protest areas specified on those pages have been identified. There is approximately 3300 hours' worth of video requested and NYPD will be receiving weekly updates as to how much data has been exported to

---

[3] The February 9, 2022 meet and confer was attended by Dara Weiss, Bridget Fitzpatrick, and Bridget Hamill for Defendants and the following plaintiffs' counsel: Travis England, Lillian Marquez, and Conor Duffy for the *People*; Remy Green for *Sow*; Wylie Stecklow and Mickey Osterreicher for *Gray*; Daniel Lambright for *Payne*; and Rob Rickner for *Sierra*. It lasted approximately two hours.

date." Defendants never sought an extension of the April 15 deadline and still have provided no firm date for this production.

## II. DEFENDANTS HAVE FAILED TO COMPLY WITH THE COURT'S PRODUCTION DEADLINE

By their own admission, Defendants did not produce any ARGUS videos in their April 15th production and have no idea when it can or will be produced. A review of the production for *any possible* native ARGUS files, which Plaintiffs believe would be Genetec Video (.g64) files, confirms that Defendants have produced only videos that the CCRB or the IAB collected during their investigations and nine videos from a 15-minute period on July 3, 2020. Because Defendants do not identify the source of these videos, it is unclear whether these are in fact from ARGUS cameras.[4] What is clear is, however, that Defendants did not produce all the agreed-upon ARGUS footage based on the maps provided to Defendants by Plaintiffs. The file names of produced videos suggest that footage from approximately 56 cameras and 14 geographic areas have been produced, though the time periods captured by this footage are not easily discernible. Even if these files are from ARGUS cameras, this is a far cry from the 1,560 cameras that recorded protest activity and the 45 protests for which Defendants promised to produce preserved ARGUS footage. Defendants have violated the Court's clear order to complete the production of ARGUS video by April 15.

## III. THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE ALL ARGUS VIDEOS BY A DATE CERTAIN AND SANCTION DEFENDANTS

Defendants should be ordered to immediately produce ARGUS footage in their possession that pertain to the areas, dates and locations identified in the 45 maps Plaintiffs provided — and be found to have waived any further right to review or withhold that footage. As Defendants have acknowledged, at least 1,560 cameras captured footage of the protests from fixed aerial views. They claimed to have preserved videos from these cameras for a period of May 28, 2020 through June 8, 2020, and to have been collecting these videos for production since May 7, 2021. With the clear parameters detailed in Plaintiffs' maps, which Defendants have at no point objected to, there is no reason why Defendants cannot produce these videos immediately, no later than 14 days from the date of this letter.

Further, to allow Plaintiffs to confirm that all the maps have been responded to, the Court should order Defendants to produce the videos in a manner that makes clear:

(1) which maps Defendants are producing ARGUS video for and the Bates numbers of the corresponding videos; and

---

[4] According to the few CCRB logs that were produced to the OAG during its investigation, these videos are categorized as videos from cameras run by the NYPD's Technical Assistance Response Unit, which include ARGUS or "HARGUS" cameras.

>   (2) in each video file name, the location of the camera that recorded the footage and the date and time period of the footage.

To the extent any responsive videos have already been produced through a CCRB or IAB file, Defendants should be required to provide the Bates number for each of those videos and the above information regarding the related protest, date and time period of the footage. And if Defendants are producing no ARGUS footage for any particular map, they should be required to state whether that is due to the absence of cameras in the identified area or due to the City's failure to preserve the video.

Finally, Defendants should be sanctioned for their failure to abide by the Court's clear order to complete production by April 15. Based on this Court's direction to Defendants that the "chart" encapsulate Defendants' final position on what would be produced, Plaintiffs believed that the final April 15th production would include what Defendants promised. It did not. Defendants have received numerous extensions of the deadline to complete their productions, including two extensions within the last two months. But Defendants did not seek another extension (albeit one the Court noted would not likely be granted) and instead let the deadline pass without comment.

This late production is severely prejudicial. There are thousands of hours of footage to be produced from these ARGUS cameras. Footage cannot be skimmed to locate key moments; arduous eyes-on review is needed. And even when key moments in the video are located, it often takes multiple viewings to understand what is being shown and why it is important. There is also no substitute for the ARGUS video. Body-worn camera video is from street level, but the ARGUS video looks down at an angle, giving a unique view of the street. It will take Plaintiffs a substantial amount of time to review this video, determine what is important, and to determine what might be missing—because the Defendants have already admitted to spoliating all of the ARGUS video from after June 8, 2022, and have still failed to explain why that footage was not preserved.

Similarly, this video evidence is necessary to properly conduct depositions, and plaintiffs should not be required to conduct depositions without it. Therefore, Defendants' failure to produce the ARGUS video footage by this late date – when they have known since the George Floyd protests began almost two years ago that it would be critical evidence in Department of Investigation and Civilian Complaint Review Board investigations and these Consolidated Cases –will have a serious negative impact on the ability of the depositions to re-commence once the intervenor status has been resolved.

It is well within this Court's discretion to impose appropriate sanctions for such discovery violations as long as those sanctions are "just" and "relate to the particular claim to which the discovery order was addressed." *Shcherbakovskiy v. Seitz,* No. 03 Civ. 1220(RPP), 2010 WL 3155169, at *8 (S.D.N.Y. July 30, 2010) (quoting *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1366 (2d Cir.1991). A sanction of at least reasonable attorneys' fees incurred in making this motion is such a just and related sanction. *See John v. City of New York*, No. 11-CV-5610 (RPP), 2012 WL 2719154, at *7 (S.D.N.Y. July 9, 2012) (sanctioning the City of New York and Dara Weiss individually for evasive conduct in discovery, for failing to timely

Hon. Gabriel W. Gorenstein
May 2, 2022
Page 7

produce relevant documents, and for failing to provide accurate information to the court); *see also* 2/11/22 Tr. at 93:22–94:7 (sanctioning the City in this matter by awarding attorneys' fees for violating the Court's "extremely clear order" to produce documents (ECF No. 359)).

        Sincerely,

        */s/ Lillian M. Marquez*
        Lillian M. Marquez
        Assistant Attorney General
        Office of the New York State Attorney General
        Civil Rights Bureau
        28 Liberty St.
        New York, NY  10005
        Tel: 212-416-6401
        lillian.marquez@ag.ny.gov

CC: All counsel of record