

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

May 5, 2022

<u>By Electronic Filing</u>

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

   **Re: *In re: New York City Policing During Summer 2020 Demonstrations*, 1:20-CV-8924 (CM) (GWG)**
   **This Letter Relates to All Cases**

Dear Judge Gorenstein:

   I write on behalf of all Plaintiffs in the above-captioned consolidated cases, to respond to Defendants' letter "seeking clarification . . . that this Court requires a privilege log for every redaction in defendants' productions made on the basis of privilege." Dkt. 529. Defendants' letter—essentially a motion for a protective order that fails to comply with the Court's rules regarding such motions—short circuits not only the parties' ongoing conferrals regarding the privilege log pertaining to Defendants' April 15 production, but other conferrals regarding the Defendants' failure to log substantive privilege redactions for all of their productions.[1]

   Notwithstanding Defendants' failure to properly exhaust this issue with Plaintiffs, I now write to oppose the City's request to be relieved of its obligation to provide a log for its privilege-based redactions. ***First***, the use of conclusory "white box" redactions,[2] absent any

---

[1] On April 1, 2022, Plaintiffs' counsel wrote Defendants that their failure to log the approximately 4,000 documents with privilege-based redactions produced through that date violated Defendants' obligations under local and federal rules. Plaintiffs requested that Defendants provide such a log or identify a date to meet and confer, but counsel for Defendants provided no substantive response to that request.

[2] Defendants' redactions take the form of an opaque white box placed over withheld text, with an acronym identifying the nature of the asserted privilege. While Defendants have not provided a comprehensive list of the acronyms used or all grounds for redactions, Plaintiffs understand them as follows: LE or LEP (law enforcement investigative privilege); DP (deliberative process privilege); NR (nonresponsive); PII (personally identifying information); MOS Injury (names of injured NYPD members of service).  In their April 1st communication to Defendants—which remains unanswered—Plaintiffs objected to Defendants' vast and overbroad redactions of material as nonresponsive, PII or "MOS Injury," given the protective order in place in this litigation. Because the

Office of the New York Attorney General
Letter to Judge Gorenstein
Page 2

descriptive narrative, fails to provide the information required or sufficient viewable context to allow Plaintiffs to consistently discern the subject matter of the redacted material, let alone why any privilege is applicable. ***Second***, Defendants overstate their burden, which was created only because they failed to log these redactions at the time of production as required, in violation of the clear guidance the Court has offered repeatedly on this issue. ***Third***, the process of reviewing redactions will permit crucial secondary review by the Law Department of Defendants' assertion of privilege–a quality control process that appears to have been neglected in the first instance.

### A. Defendants' Conclusory White-Box Privilege Redactions Omit the Information and Context Needed to Establish that any Privilege Applies.

Defendants have asserted three broad categories of substantive privilege in the form of white-box redactions: (1) the law enforcement investigatory privilege ("LEP"), (2) the deliberative process privilege ("DPP") and (3) attorney client communication privilege ("ACC") and attorney work product protection ("AWP"). Each of these privileges requires that the asserting party, in the first instance, provide sufficient information and context to permit the receiving party to evaluate the applicability of the privilege. *See, e.g.*, *Walls v. City of New York*, 502 F. Supp. 3d 686, 696-98 (E.D.N.Y. 2020) (party asserting DPP make "threshold showing that the privilege attaches"); *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 648 (S.D.N.Y. 2019) (party asserting ACC or AWP "bears the burden of establishing facts to demonstrate applicability of the protective rule"); *Edwards v. Nassau Cnty. Corr. Ctr.*, No. 13-CV-4345, 2022 WL 22736, at *4 (E.D.N.Y. Jan. 3, 2022) (party asserting LEP "must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted").

Defendants provide no case law to support their unilateral decision—made over Plaintiffs' objections— to simply name each privilege asserted over redacted material rather than provide a log. Courts in this Circuit have consistently held that privilege-based redactions must be logged just as documents that are withheld must be logged. *See, e.g.*, *Amley v. Sumitomo Mitsui Banking Corp.*, No. 19-CV-3777 (CM) (BCM), 2020 WL 8514825, at *1 (S.D.N.Y. Dec. 8, 2020) (ordering Defendant to produce a privilege log for redactions in emails, noting that "[t]he parties cannot adequately meet and confer as to these issues, and the Court cannot resolve any remaining disagreements, until defendant has served the privilege log(s)"); *Yang Feng Zhao v. City of N.Y.*, 07 Civ. 3636, 2007 WL 4358470 at *7 (S.D.N.Y. Dec. 4, 2007) (finding privilege waiver for all redacted material not listed in a privilege log).

#### 1. <u>Law Enforcement Investigative Privilege</u>

---

parties have not exhausted their conferrals on that issue, Plaintiffs do not raise those objections here and reserve the right to raise them with the Court if and when they become ripe.

Office of the New York Attorney General
Letter to Judge Gorenstein
Page 3

To establish that the LEP justifies withholding certain material, Defendants must show that disclosure of that material "would undermine the confidentiality of sources," "endanger witness and law enforcement personnel [or] the privacy of individuals involved in an investigation," or "otherwise . . . interfere[] with an investigation." *In re City of N.Y.*, 607 F.3d 923, 944 (2d Cir. 2010) (cleaned up). The simple placement of a white box over text in produced documents fails to provide the necessary level of detail to assess the merits of Defendants' privilege claims. With respect to the LEP, it is only in the rare instance that the information surrounding the redacted material is relevant and specific enough to identify that the material relates to an investigation and the reason why disclosure of the redacted material would interfere with it. For example, DEF_E_PD_0008779 appears to provide a redacted list of "New York State Designated Regional Trauma Centers," with no corresponding description of the related investigation:

Again, Defendants' aspirational claim that "[t]he documents provide the necessary context; from the unredacted content surrounding the redaction, the reader can glean information about the nature of the redacted material and the document as a whole" is true at best in the minority of cases, saddling Plaintiffs with the burden of identifying the many other examples of redactions that contain insufficient or even no contextual information, and then requiring Defendants to go back and conduct an ad hoc privilege review of each such document.[3] Such an approach is neither efficient nor fair.

2. Deliberative Process Privilege

To support their claim of DPP, Defendants must make the "threshold" showing that the withheld material was both "predecisional" and "deliberative." *See Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 356 (2d Cir. 2005). To qualify for the DPP, the particular decision for which the privilege is being claimed also must be explicitly stated. *See Lawrence v. Suffolk Cnty.*, 19-CV-2887, 2022 WL 855380, at *28-29 (E.D.N.Y. Mar. 23, 2022) (rejecting the DPP claim because "the pertinent policy or decision is not even identified"). Defendants' use of white box redactions to assert the DPP generally fails to identify the decision at issue, let alone how the redacted material embodies deliberations entitled to the privilege. While most documents with relevant DP redactions have also been marked "Confidential" by Defendants, precluding a detailed description here, at the Court's request Plaintiffs can file several examples under seal. By way of general example, Defendants have produced multiple emails with general (but clearly relevant to this litigation subject lines) and email bodies that are redacted *in their entirety. See, e.g.*, confidential documents at DEF-E_000056647; DEF-E_000053866; DEF-E_000051503.

---

[3] Defendants' claim that the placement of white box redactions is equivalent to providing a privilege log may make sense to Defendants, given their frequent practice of providing only conclusory descriptions in their privilege log that do nothing more that recite the elements of the asserted privilege and provide broad subject matter descriptions. *See* Dkt. 506. Because Plaintiffs are continuing to meet and confer with Defendants about their objections to this practice, that issue is not further addressed here.

Office of the New York Attorney General
Letter to Judge Gorenstein
Page 4

3.        Attorney-Client Privilege and Attorney Work Product Protection

The assertion of ACC privilege and AWP protection both require Defendants to provide more detail than a conclusory assertion of the relevant privilege. *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) ("[T]he law is clear in this circuit that a person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof."). Defendants' use of conclusory white box redactions fails to demonstrate that key elements of these privileges apply, such as the nature of legal advice requested or conveyed, or (in this case of attorney work product protections) the litigation that was anticipated at the time. *See, e.g.*, DEF_000344900. In other cases where context may be apparent, the redactions appear to be of factual material, *see, e.g.*, confidential document at DEF_000344892 at 894-895; absent a narrative description explaining the basis for the privilege, Plaintiffs cannot evaluate whether the claim is properly made. *See In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 326 (S.D.N.Y. 2020) (rejecting producing party's "ipse dixit" assertion of ACC).

**B. Defendants Vastly Overstate Their Burden In An Attempt to Improperly Shift Review To Plaintiffs**

Ironically, while Defendants were able to identify that 6,377 documents in their productions contain privilege redactions, they suggest that they have no way—other than manual review of each page—to identify where those redactions are located. But given Defendants' insistence on using technology-assisted-review to identify and prioritize substantively responsive documents (*see, e.g.*, Dkt. 267 at n.3), it would be surprising if their software platforms did not permit an automated identification of pages with privilege-based redactions.

But even assuming the accuracy of Defendants' claim, the very fact that manual review is the only way to identify where privilege-based redactions are located underscores the unfairness of Defendants' request to shift their burden of justifying their privilege assertions to Plaintiffs. Because Defendants failed to provide a privilege log identifying and supporting their privilege redactions, Plaintiffs are left with no choice but to conduct a manual review of each document and bring inappropriate redactions to Defendants' attention—a task complicated by the inability to run keyword searches and by the lack of context to determine the basis for the redaction.

**C. Requiring Defendants to Log Redactions Will Also Help Address Defendants' Overreach in Redactions.**

Plaintiffs' experience to date in carrying Defendants' burden to identify problematic privilege assertions further justifies a redaction privilege log. After Plaintiffs brought to Defendants' attention 18 documents with substantive privilege redactions that either appeared improper on their face or lacked sufficient detail to permit the evaluation of the privilege, Defendants conceded that privilege-based redactions should be removed from 4 of these documents—suggesting an error rate of 22% in this instance (although Plaintiffs do not concede Defendants made accurate privilege calls on the balance of those documents). Plaintiffs respectfully submit that a process of reviewing and logging privilege redactions is further needed

Office of the New York Attorney General
Letter to Judge Gorenstein
Page 5

to serve as a form of quality control over the claims of privilege in the first instance. Defendants should not be relieved of their obligation to "check their work" simply because they apparently failed to keep accurate records as to where and why those assertions were made. Indeed, had they ***done*** that task, the process of creating the required log would be easier.

Although Plaintiffs previously flagged erroneous privilege assertions document-by-document—a pragmatic concession to the previously-compressed discovery schedule—the current extension of discovery and stay on higher-level depositions, as well as the sheer volume of improper or insufficiently detailed redactions, allows Defendants sufficient time to create a privilege log for their own privilege assertions as the federal and local rules required all along. Re-reviewing privilege-based redactions for logging purposes will also address Defendants' improper practice of wholly redacting documents in lieu of simply withholding them from production and logging them. Take, for example, Exhibit A, in which every page of the 43-page document is wholly redacted as follows, but not logged:

**DP/LEP**

That practice has permitted them to avoid their undisputed obligation to log documents that they assert are wholly privileged. *See* Exhibit A (DEF_E_PD_00070829-871); *see also* DEF_E_PD_0070819 (confidential document wholly redacted as "AWP" but not logged).

\*    \*    \*

Each of the privileges asserted by Defendants through white-box redactions—law enforcement investigative, deliberative process, and attorney client communication/attorney work product—are qualified privileges, which may be overcome by Plaintiffs' showing of an irreplaceable need for the information at issue. This Court will not ultimately be able to balance Defendants' claims of protection against Plaintiffs' claim of need without a privilege log–unless it reviews every single document *in camera*. Indeed, Defendants sole argument is of the "too big to fail" flavor: essentially a claim that they redacted (but failed to justify) ***so much*** material at this stage that requiring them to follow the rules is burdensome. Accordingly, and for the reasons set forth above, Plaintiffs respectfully ask that the Court deny Defendants' request and order the production of a log for privilege-based redactions that conforms to the local and federal rules.

Sincerely,

*/s/  Swati Prakash*
Swati R. Prakash, Assistant Attorney General
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-6201
Swati.Prakash@ag.ny.gov

CC: All counsel of record