**Rickner PLLC**

Rob Rickner | rob@ricknerpllc.com

May 6, 2022

**Via ECF**

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *In re: New York City Policing During Summer 2020 Demonstrations,*
             No. 20-CV-8924
             *This Filing is Related to All Cases*

Dear Judge Gorenstein:

I represent the *Sierra* Plaintiffs in the above-captioned Consolidated Cases. I write to respond to the Defendants' position in their letter (Dkt. No. 532) filed in further opposition to the motion for sanctions relating to the Mullins documents. Defendants were given the opportunity to further respond to the arguments in the original motion (Dkt. No. 504), which they did, and to respond to the revelations in the reply (Dkt. No. 524), which conspicuously they did not. Accordingly, we respond to the new arguments in opposition to the original motion. There are several troubling issues with this filing.

      **I.**    **Defendants have not done a reasonable search for the Mullins documents.**

Defendants now admit they never even searched for significant, easy-to-find documents. It was obvious to Plaintiffs that documents were missing from Defendants' production because the files they did produce specifically referenced trial transcripts, which were cited by line number, but no transcripts were produced. Plaintiffs brought up the missing transcripts in their reply to the opposition to the first motion for sanctions on March 9th: "[D]ocuments were missing—most obviously, the transcripts from the tweet-related disciplinary hearings prosecuted by the CCRB …." Dkt. No. 438. And Plaintiffs brought it up again on April 19th in the most recent motion for sanctions: "There were references in the records to two disciplinary trials, with transcript citations, but those transcripts had not been produced." Dkt. No. 504.

At the meet and confer on April 29, 2022, which included NYPD legal department attorney Bridget Fitzpatrick, Plaintiffs asked her where the transcripts were. She told us that the NYPD did not have the transcript because it is part of the file held by the CCRB's Administrative Prosecution Unit—but defense counsel had apparently not yet asked the Unit for those records.[1]

---

[1] In the original Order compelling the meet and confer on the missing Mullins documents, the City was Ordered to be, "completely forthcoming as to what it did to search for the documents." Dkt. No. 457. But at this meet and confer, defense counsel was not prepared to provide this

Rickner PLLC

Now, in their most recent filing (Dkt. No. 532), Defendants admit that when they finally asked the CCRB about the transcripts, the CCRB "located the transcript and other documents related to a disciplinary trial."

This is a dramatic shift from the Defendants' original opposition letter, where they insisted that they performed a "reasonable" search, that there were no other responsive documents, and then chided Plaintiffs for insisting there was more to produce: "Plaintiffs' unsupported opinion that it is *obvious* that documents were missing is not enough to make it so." *Id*. (emphasis in original). Defendants further claimed that at a meet and confer that Ms. Fitzpatrick will explain all the places she searched, where any responsive documents would be housed, and how no further responsive documents could be found." *Id*. But that is the exact opposite of what happened. As it turns out, when Defendants finally made Ms. Fitzpatrick available, Plaintiffs almost immediately learned that the missing transcripts were at the CCRB.

Remarkably, despite this revelation at last week's conferral, while Defendants finally admit they had not searched for or produced the transcripts Plaintiffs specifically requested, they still claim in their renewed opposition that "adequate and reasonable searches were conducted" and that "Defendants were completely forthcoming as to the searches conducted prior to the production of documents on March 8th . . . ." Dkt. No. 532. But all Plaintiffs had to do to determine the location of these transcripts was ask Ms. Fitzpatrick a few simple questions; Defendants' counsel should have asked Ms. Fitzpatrick these questions themselves, months ago. It is apparent none of the counsel for Defendants responsible for ensuring an "adequate and reasonable search" did so.

This position is even more troubling because the Court already warned Defendants, twice, that these inadequate searches could result in sanctions. At the February 11, 2022 Conference, the Defendants objected to being ordered to produce all documents—claiming these orders "sets us up to fail"—because Plaintiffs find gaps in the production and then move for sanctions. Ex. A at 13:25-14:24. The Court emphasized that the Defendants would be protected from sanctions as long as they did a reasonable search for the responsive documents. *Id*. at 15:13-24. But the Court also warned Defendants they would be sanctioned when, "you didn't do a reasonable search and ***the only reason you came up with the other stuff was because the plaintiffs happened to know that it existed***." Id. at 15:9-12 (emphasis added). This warning was repeated in the Order to produce all the Mullins documents. Dkt. No. 457 ("If in fact the City's search was adequate, the appropriate sanction will consist of those attorney's fees. If it was not adequate, plaintiffs are free to seek additional sanctions.").

If Defendants seriously contend that this was a reasonable search, it calls into question the adequacy of the entire document production to date. Here, Plaintiffs had a way of proving there were documents missing. But in this complex litigation, Plaintiffs will not always know whether the Defendants have failed to look for responsive documents in obvious places.

---

information, stated they needed to confer internally to determine whether they would provide this information, and still have not complied with this part of the Order. The conclusory statement in Defendants' letter saying "Defendants were completely forthcoming as to the searches conducted" is simply untrue.

Rickner PLLC

## II. The search for the Mullins documents is still incomplete.

The Defendants' searches remain incomplete. Most obviously, Defendants still have not produced a copy of the 2019 racist email Mullins sent. Two thousand sergeants received a copy of this email. Yet Defendants have not produced a single copy of it. It is hard to imagine how a reasonable search would have failed to locate even one of the thousands of copies of this email.

Similarly, Defendants have not produced a basic disciplinary file. First Deputy Commissioner Benjamin Tucker testified that there is an entire file generated when NYPD upper management reviews a CCRB disciplinary recommendation:

> Q. Is there any documentation that's generated when you make a recommendation regarding CCRB discipline?
>
> A. All sorts of documentation. I'm not sure what you mean. There's a whole process by which their recommendation comes through and we are then looking at whatever their recommendation is, or was, and acting on it accordingly.

Ex. B at 186. And he further clarified:

> Q. When you make the recommendation, do you write anything down? Do you generate paperwork?
>
> A. Yes. It's an entire report. Everything is there.

*Id*. at 188. The documents produced do not appear to contain this file or the report.

## III. Sanctions are appropriate.

The Defendants are wrong to insist that that they should not be subject to any sanction whatsoever. Defendants violated every part of this Court's Order requiring a meet and confer on the missing Mullins documents. Dkt. No. 457. This Order had two key features: (1) Defendants had to meet and confer; and (2) Defendants had to be forthcoming. They did neither. Instead, they forced Plaintiffs to go to the Court and take extraordinary, time-consuming steps to learn the truth about these responsive documents.

Defendants have now admitted that Ms. Weiss made a false statement about her email offering to meet and confer. This false statement remained uncorrected on the open docket until this Court Ordered the Defendants to file a correction—which Defendants first tried to bring to the Court *ex parte*. And Defendants are still insisting that their search was adequate, in the same letter where they admit facts that show their search was not at all reasonable. Defendants have not taken responsibility for their actions, further exacerbating Plaintiffs' concerns about the overall state of discovery to date.

In conclusion, this Court should grant the motion for sanctions, including these adverse inferences:

Rickner PLLC

- Union leader Ed Mullins repeatedly made racist statements to thousands of Sergeant's Benevolent Association members and the general public.

- The New York City Police Department knew that Ed Mullins was making these racist statements, and knew that these racist views would be adopted by some Sergeant's Benevolent Association members, and other officers, who heard these statements.

- The New York City Police Department deliberately chose not to tell the Sergeant's Benevolent Association members, and other officers, that Ed Mullins' statements were racist and in violation of the NYPD's policies.

- The New York City Police Department deliberately chose not to take any other actions to correct or mitigate the effects of Ed Mullins' racist statements.

- The New York City Police Department has a de facto policy of tolerating racist statements by supervising officers.

Ms. Weiss' false statement was deeply problematic. But rather than address it directly, Defendants tried to keep it a secret. Defendants are still telling the Court that their searches for the Mullins documents were reasonable. Defendants still argue that they should not be sanctioned for any of this at all. And Defendants still have not told Plaintiffs or the Court what really happened. A potent sanction—beyond attorney's fees—should be levied to show Defendants that this conduct is not acceptable. The adverse inferences, we submit, are tailored to do so.

These misrepresentations also call into question many other aspects of Defendants' discovery responses. But Plaintiffs will wait until after the May 9, 2022 filing by Chief Miller before submitting any additional requests for sanctions. *See* Dkt. No. 526; s*ee also*, 2022-02-11 Tr. 54:16-19 (reserving decision on additional sanctions).

We thank the Court for considering these issues.

Respectfully,

/s/

Rob Rickner