```
 1                          PROCEEDINGS                        13
 2  they have any documents in their possession right now they
 3  should be produced in short order.
 4          THE COURT:  I'll keep that in mind, I'm going to,
 5  when I issue the order is when I'm going to fill the dates
 6  in so you'll see it when it comes out.
 7          MS. PERRY:  Thank you, Your Honor.
 8          THE COURT:  Okay, our next one I guess is from
 9  Mr. Rickner, it's number 374, I'm going to start with
10  the defendants to see if there is anything they want
11  to say about the wording of the order?
12          MS. WEISS:  Yes, Your Honor, this is another
13  issue with the word all.  We can certainly produce
14  documents that we have and that are in our possession,
15  the defendants, but that doesn't necessarily account for
16  all that may exist. So I just wanted to point that out
17  again, and --
18          THE COURT:  If I can just interrupt you, Ms.
19  Weiss, I'm just a little thrown off when you say we
20  can produce things in our possession but that's not
21  necessarily all. As I'm sure you know, Rule 34 only
22  requires you to produce things that are in your, I
23  forget the word, custody, possession, so what is it
24  you're getting at?
25          MS. WEISS:  I do think, as I said before, it
```

```
 1                          PROCEEDINGS                         14
 2   kind of sets us up to fail because it's in, as we've
 3   noticed throughout the litigation of this case,
 4   plaintiffs very often revert to saying that things
 5   should exist or they can't believe things don't exist.
 6   And then when the defendants produce whatever they
 7   have in their possession, custody or control,
 8   plaintiffs often complain that that's not it, this is
 9   not all. They certainly can't know what is in the
10   defendants' possession yet they claim to.  And then if
11   the defendants supplement their response afterwards because
12   they have then found something else, plaintiffs tend
13   to complain that we violated an order or an agreement
14   because the first time we made a production we didn't
15   produce all.
16              So that's kind of our concern. I understand
17   what the Federal Rules say and we can only produce
18   what we have and we're required to supplement but we
19   do. But that just, it makes another place for
20   plaintiffs to complain and then, once again, write
21   emails and letters and go to the Court which we're
22   really hoping to try to have plaintiffs cut down on.
23   Because, as I think you've seen in the letter that I
24   submitted last night, it's, it's a lot.
25              THE COURT:  Ms. Weiss, I have to say this line
```

```
 1                            PROCEEDINGS                          15
 2   of argument makes no sense to me. From what I've
 3   gathered, what actually is typically happening is that
 4   City is producing some materials, the plaintiffs are
 5   noticing it's not all, you're conceding, as you just
 6   did now in your discourse that you then come up with
 7   it, and they're right, you did violate the order. Now
 8   it's possible you did a reasonable search in which
 9   case it's justified, but it's also possible you didn't
10   do a reasonable search and the only reason you came up
11   with the other stuff was because the plaintiffs
12   happened to know that it existed.
13             So no one is being set up when they're being
14   told to produce all documents on a topic, that happens
15   every single day in every single litigation.  Parties
16   then do a reasonable search and they don't feel
17   they're being set up.  They produce the documents and
18   usually there's not an issue, and when there is an
19   issue then we solve it through the mechanisms. And,
20   you know, maybe we'll talk later about whether those
21   are working or not. But you're making me very
22   concerned with these objections, the idea that you are
23   incapable of producing, of doing a reasonable search
24   to produce the documents, it makes no sense.
25             So there's nothing on the substance of this
```

```
 1                      PROCEEDINGS                        16
 2  then in terms of scope or date of the proposed order?
 3            MS. WEISS:  No, those, these are documents
 4  that we will produce. We would like a date further out
 5  than February 18th, that's a week from now, we would
 6  request 30 days to provide these documents.
 7            THE COURT:  Mr. Rickner, is there a deposition
 8  as to which these are going to relate that's coming
 9  up?
10            MR. RICKNER:  Well, there may, it depends on
11  what's in the documents so it's hard for me to know.
12  We know for a fact that Dermot Shea weighed in on the
13  sanctions on Mr. Mullins so, and I don't believe his
14  deposition is within the next 30 days so that isn't
15  the issue. But the problem is, is that I suspect there
16  were an awful lot of high level people involved in
17  this decision, I mean fire, the recommendation to fire
18  the head of the Sergeants Benevolent Association is
19  not a minor event at the NYPD, so I don't know. I
20  don't know who was involved with that because I can't
21  see under the hood because I don't have the documents.
22  So there very well may be depositions that are
23  currently scheduled and when we get the documents
24  we're going to say, oh, no, I would have liked to have
25  used this on some other person's deposition, like the
```

```
 2   Dowling deposition that's going right, going on right
 3   now.  It also might be relevant to the 30(b)(6)
 4   depositions which are being scheduled, you know,
 5   within the next 30 days or taking place within the
 6   next 30 days, at least for some of them.
 7            So it's hard for me to answer the question and
 8   it kind of highlights the entire problem we have,
 9   which is I don't know what there is and what there
10   isn't until the City gives it to me. And, you know, I
11   guess I would just say that if it does turn out that,
12   you know, there are key documents to a witness whose
13   deposition has already taken place, that we be able to
14   recall that witness because we've certainly been
15   diligent.
16            THE COURT:  Right. Well, I mean the, I mean
17   the email searches have happened, and that's a done
18   deal.  So this seems like it's documents mainly about
19   an investigation, is that, was that what you're
20   seeking, Mr. Rickner?
21            MR. RICKNER:  Yeah --
22            THE COURT:  Like these are actual
23   investigation reports or something like that?
24            MR. RICKNER:  Yeah, I mean my assumption is,
25   is that there's, well we know there's the CCRB
```

```
 1                        PROCEEDINGS                         18
 2   investigation, in fact, several of them. I believe
 3   there was also an internal NYPD investigation of some
 4   kind, as well, I know less about what that looks like.
 5   So, yes, so that is the, I guess sort of the meat and
 6   potatoes of what we're looking for. But, again, there
 7   may be other things that are relevant and I don't know
 8   enough about how the NYPD structures these things to
 9   know specifically what documents to look for.  For
10   example, if there is a process that the NYPD goes
11   through when they decide to override the CCRB's
12   decision to fire somebody and go to a lesser sanction,
13   if there's, I don't know what that process is, but if
14   it's out there and it's document that's also included
15   in our requests.
16             THE COURT:  Ms. Weiss, what do you know about
17   the burdensomeness of this request?
18             MS. WEISS:  I, I don't know, to be honest,
19   Your Honor. We had originally objected to providing
20   these documents for a number of reasons, not including
21   burdensomeness, we'll now provide them.  CCRB
22   documents I know are fairly quick and easy to get,
23   internal NYPD investigations not as easily acceptable.
24   And I know from other internal investigation documents
25   that the plaintiffs have requested in this case,
```

```
 1                          PROCEEDINGS                         19
 2   there's many, many, many of them that they take quite
 3   a bit of time to get and that unit is very, very
 4   backed up right now. You know, we could certainly ask
 5   them to put something to the head of the line, but
 6   then it's just going to slow down the process for the
 7   other ones that, that the plaintiffs have asked for in
 8   these cases, you know. And, additionally, there's
 9   likely --
10            THE COURT:  What other ones are you talking
11   about? Are you talking about other incidents regarding
12   arrests and so forth?
13            MS. WEISS:  Yeah, other IAB and internal NYPD
14   investigations into arrests and uses of force for
15   these protests as well as I believe plaintiffs had
16   requested individual IAB histories for defendant
17   officers and witness officers. I don't have all of
18   those requests in front of me right not, I apologize,
19   but I do know that the IAB section has been working
20   very hard and as quickly as they can to get us any
21   other outstanding sort of disciplinary documents for
22   other issues in these cases.
23            And if I may, Your Honor, although I
24   understand that allegations of bias policing are a
25   part of some of the plaintiffs' claims in these cases,
```

```
                                PROCEEDINGS                          20
```

I don't think that they are some of the bigger issues for the overall consolidated cases. So although there is going to be one 30(b)(6) deposition on this issue, there's a number of other 30(b)(6) depositions on a lot of other I think more sort of overall and pressing issues in these cases.

So I don't want to belittle the importance of this issue, but I think it's just a smaller one overall for these consolidated cases as opposed to ones like, you know, improper training, things like that.

THE COURT: Is the 30(b)(6) on this topic scheduled?

MS. WEISS: I know there's a witness, I don't know when that witness is scheduled for.

THE COURT: Does someone, Mr. Rickner, do you know?

MR. RICKNER: I, unfortunately, I do not have that information at my fingertips but I will say that the lion's share of these have been scheduled to be completed before the end of March. So there's a good chance that it is scheduled and, you know, it's not just getting the documents, we need to prepare and think about them in order to make proper use. So

2  giving them to us, you know, what happens to be two
3  days beforehand doesn't necessarily do much good.
4          I mean also to the other point, this is
5  protests as part of the Black Lives Matter movement,
6  racism among high level people at the NYPD is of
7  paramount importance. This isn't something that could
8  be I think shuffled to the side or just dealt with
9  later because it's not a big issue, it is a big issue.
10 And also the idea that this Court's order would sort
11 of just go into the morass of regular discovery is a
12 false equivalence, this is a Court order, it goes to
13 the top of the pile, it gets paramount importance.
14 And, frankly, it's important over emails and other
15 requests and other things they're doing.
16          THE COURT:  Well I think they're talking about
17 other productions in this case so I'm not sure this
18 particular, I mean I don't know but I'm not sure this
19 particular production is more important than other
20 productions they're doing in this case, is that what
21 you're saying?
22          MR. RICKNER:  Well, I'm saying that the other
23 productions may not necessarily be part of a Court
24 order and I do think, in general Court orders should
25 take priority. But another --

```
 1                         PROCEEDINGS                      22
 2            THE COURT:  No, no, they're willing to do
 3   that, what they're saying is if you do it then now
 4   other things are going to be delayed. I mean I can't
 5   believe this is going to delay much but that's their
 6   point.  They're not saying that it won't happen,
 7   they're saying that it will cause delay in other
 8   things. So my question is, you know, what, is this of
 9   greater, you know, temporal importance than the other
10   things in terms of the need for the documents
11   (indiscernible), that's all I was trying to figure
12   out.
13            I don't think it's going to make much
14   difference. I'm going to, I'm going to give a date in
15   the next week or two to produce these so I'll figure
16   them out at the end of this. I think we're okay on
17   this now.
18            MR. RICKNER:  Yep, understood, thank you, Your
19   Honor.
20            THE COURT:  Okay, my next issue is 379, we're
21   going to end with the prior protests. So, Mr. Rickner,
22   I think this was your letter, right?
23            MX. GREEN:  No, I believe this is mine and
24   this is Mx. Green, Your Honor.
25            THE COURT:  I'm looking at 379, it has Mr.
```

```
 1                        PROCEEDINGS                        52
 2              THE COURT:  Go ahead, Mr. Rickner.  Actually,
 3   Ms. Weiss, you were done, right?
 4              MR. RICKNER:  I'd just like to correct --
 5              THE COURT:  Hold on, Ms. Weiss, you were done,
 6   right?
 7              MS. WEISS:  Well I just wanted to conclude by
 8   saying, you know, based upon the good faith the
 9   defendants are trying to engage in, I don't think that
10   sanctions are appropriate.
11              MR. RICKNER:  I'd like to correct the record, Your
12   Honor, on one specific issue.  We have not been
13   spreading different discovery issues across different
14   teams. The body worn camera audit trail logs are a
15   perfect example. This has been, for better or worse,
16   my problem from the beginning, I'm on the Sierra team,
17   I have one protest, not all 83, but I've been -- but I
18   didn't limit my demands to that protest. I worked with
19   everyone, I've been on all the meet and confers on the
20   issue which, mind you, the City, in fact, has shifted
21   around who's on the meet and confers, but I've handled
22   this, you know, pretty much from start to finish, I've
23   always been the point person on communicating about
24   this with the attorneys assigned and that's the way we
25   do it every time.
```

```
 1                        PROCEEDINGS                          53
 2            So somebody has Aviation, actually that was
 3   me, as well, so that's a bad example. Somebody has the
 4   audit trail logs. Somebody has disciplinary records.
 5   And it's really always been the same attorney on one
 6   of the consolidated teams who's followed up.  So the
 7   accusation that we're somehow picking an issue and
 8   coming at it with five different people throwing
 9   emails at Ms. Weiss or the rest of defense counsel,
10   that's not true. That's not what we've been doing.
11            And I'd also like to note, it has taken a
12   remarkable amount of coordination on the plaintiffs'
13   side, we aren't always in agreement, to always present
14   a unified front with one person handling each issue.
15   Almost always. I mean I can't say we've always been
16   perfect but 95 percent of the time, we've worked
17   together internally and then put one person up to
18   handle it.
19            THE COURT:  All right, let me do what's
20   simple. What's simple is I issued a very clear order
21   requiring documents to be produced and the City failed
22   to comply with it. The excuse I have heard is
23   certainly not sufficient for that. It does not show,
24   it does not show substantial justification or any
25   other circumstances that make an award of expenses
```

```
 1                          PROCEEDINGS                          54
 2   unjust. So with respect to the failure to comply with
 3   the order, Mr. Rickner, your, I'm awarding as a
 4   sanction your attorney's fees for having to write me
 5   the letter, I guess your letter of February 8th, and
 6   any other related time for that.  So if you can make a
 7   presentation by letter to me at some point to get
 8   those fees and so we can specify the amount of those
 9   fees.
10             MR. RICKNER:  Yes, Your Honor.
11             THE COURT:  With respect to the substantive --
12   okay, with respect to, and by the way, I suggest you
13   show it to the other side and maybe they'll agree on
14   the amount and then I won't have to be involved.  With
15   respect to the overall issue of the production of the
16   body worn camera audit logs, I'm not happy certainly
17   with the City's conduct during that, I'm on the fence
18   about it, I'm going to reserve sanctions on that, I'm
19   going to see how things go otherwise and I reserve the
20   right to issue sanctions with respect to that course
21   of conduct but at this point I'm not going to be doing
22   that today so that's being reserved to another date.
23             Let me just address what Ms. Weiss said, it's
24   probably going to come up with Mx. Green, the notion
25   that it's unfair to ask you to keep up with discovery
```

issues is completely unacceptable. If the case is not sufficiently staffed, it needs to be sufficiently staffed.  Ms. Pestana is an extremely competent administrator and attorney and if the demands are large enough that more staff is needed she will understand that, you need to present that to her.  You need to suggest to her that I've raised this issue with you. It's not acceptable for you to say that, and I'm now quoting you, "It's unfair to defendants to ask us to keep up with the discovery demands here."  The, if you had come to me and said that there were, you were getting different signals from the plaintiffs, that you had two different attorneys asking for the same thing and doing it in different ways, I want to hear about that immediately, that that is unfair. But if there are 10 discovery issues or 15 discovery issues and they're being presented by 4 or 5 lawyers, that's not, that's not a grave problem it seems to me.  You're certainly welcome to have a single conference with each, they're all required to speak when you want to meet and confer, if that scheduling makes it easier for you, but there's no point in, as long as they're keeping to the notion that the discovery requests or discovery disputes, each one is being handled by a single

```
 1                         PROCEEDINGS                      56
 2  attorney, that's nothing to complain about, they don't
 3  all have to be handled by one attorney.
 4          And as I said, you know, if there's a problem,
 5  the solution is not to ignore Court orders and refuse
 6  to meet and confer, I mean there is a whole litany of
 7  that here. The solution, if it's a problem, is to come
 8  to me and say here's how to make this more efficient,
 9  we need to have it done some particular way, you know,
10  these two attorneys are across purposes and we can't
11  keep up with that.
12          It doesn't surprise me that in a case like
13  this, I think you said there were nine attorneys on
14  it, one person may just be responsible for dealing
15  with the discovery disputes and that might involve a
16  lot of meeting and conferring during the week, so that
17  shouldn't be a big surprise.  And part of the reason,
18  from what I can tell from the letters, that we need so
19  much meeting and conferring is that the City is not
20  giving definitive positions on things.
21          You know, I'm ready to decide disputes about
22  what is burdensome and what is not burdensome but the
23  City has to get to the point where it can articulate
24  exactly what the burden is which almost never happens.
25  Even when it comes to me there is just this sort of
```

generic statement about this is burdensome without saying, you know, what's involved, without saying how many hours are involved, how much personnel is involved. At the bare minimum the City has to figure out, if it's going to be making these objections, what actually is the burdensomeness objection, I'm almost never getting that. So from the record presented to me, and the record from the City is extremely thin, I get very detailed letters from the plaintiffs describing at length, you know, refusals by the City to meet and confer, cutting off a session after an hour and a half that involves a lot of issues, the City never denies any of this, never responds, never explains. And if the only explanation is going to be, well, we can't keep up, that's just not an acceptable explanation.  What's going on here is just of the character of what might be expected in a case like this.

  Okay, so that's my ruling as to 379. I think what we have left is 369, the prior (indiscernible) so I'll turn it over to Mx. Green.

  MX. GREEN:  Thank you, Judge. I think there are a couple of things in the letter, I'm happy to try to address them all at once or if you'd rather, as we