21-1316
*In re New York City Policing*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

_____

AUGUST TERM 2021
No. 21-1316

**IN RE NEW YORK CITY POLICING
DURING SUMMER 2020 DEMONSTRATIONS**

JARRETT PAYNE, ANDIE MALI, CAMILA GINI, VIDAL GUZMAN,
CHARLIE MONLOUIS-ANDERLE, JAIME FRIED, MICAELA MARTINEZ,
JULIAN PHILIPS, NICHOLAS MULDER, COLLEEN MCCORMACK-
MAITLAND, VIVIAN MATTHEW KING-YARDE, CHARLES HENRY
WOOD, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY
SITUATED, PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE OF NEW YORK, ADAMA SOW,
DAVID JAKEVIC, ALEXANDRA DE MUCHA PINO, OSCAR RIOS,
BARBARA ROSS, MATTHEW BREDDER, SABRINA ZURKUHLEN, MARIA
SALAZAR, DARA PLUCHINO, SAVITRI DURKEE, ON BEHALF OF
THEMSELVES AND OTHERS SIMILARLY SITUATED, SAMIRA SIERRA,
AMALI SIERRA, RICARDO NIGAGLIONI, ALEX GUTIERREZ,
INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
CAMERON YATES,
*Plaintiffs-Appellees*,

v.

CITY OF NEW YORK, NEW YORK POLICE DEPARTMENT, MAYOR ERIC
ADAMS, IN HIS OFFICIAL CAPACITY, BILL DE BLASIO, IN HIS
INDIVIDUAL CAPACITY, POLICE COMMISSIONER KEECHANT L.
SEWELL, IN HER OFFICIAL CAPACITY, DERMOT SHEA, IN HIS
INDIVIDUAL CAPACITY, CHIEF OF DEPARTMENT KENNETH E. COREY,
IN HIS OFFICIAL CAPACITY, TERENCE MONAHAN, IN HIS INDIVIDUAL
CAPACITY, SERGEANT GYPSY PICHARDO, SERGEANT KEITH CHENG,

OFFICER MATTHEW TARANGELO, OFFICER MATTHEW L. PERRY,
LIEUTENANT THOMAS R. HARDELL, OFFICER DAMIAN RIVERA,
OFFICER JACQUELINE VARGAS, LIEUTENANT MICHAEL BUTLER,
OFFICER AARON HUSBANDS, OFFICER JOSEPH DECK, OFFICER
THOMAS E. MANNING,
*Defendants-Appellees,*

OFFICERS JOHN DOES 1-32, OFFICERS JANE DOES 1-2, OFFICERS JOHN
DOES 1-26, OFFICER JANE DOE 1, OFFICER DOE ESPOSITO, SERGEANT
DOE CARABALLO, OFFICER ISMAEL HERNANDEZ CARPIO (NO. 19759),
JOHN/JANE DOES 1-10, DETECTIVE EDWARD CARRASCO (NO. 1567),
OFFICER TALHA AHMAD (NO. 21358), OFFICER KEVIN AGRO (NO.
8054), OFFICERS JOHN/JANE DOES 1-40, UMID KARIMOV, IN HIS
INDIVIDUAL CAPACITY, ALFREDO JEFF, IN HIS INDIVIDUAL CAPACITY,
DEBORA MATIAS, IN HER INDIVIDUAL CAPACITY, ANDRE JEANPIERRE,
IN HIS INDIVIDUAL CAPACITY, KENNETH C. LEHR, IN HIS INDIVIDUAL
CAPACITY, FAUSTO PICHARDO,
*Defendants,*

POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.,
*Proposed Intervenor-Defendant-Appellant.*[*]

———————

On Appeal from the United States District Court
for the Southern District of New York

———————

ARGUED: OCTOBER 5, 2021
DECIDED: MARCH 4, 2022

———————

Before:    LIVINGSTON, *Chief Judge,* and JACOBS and MENASHI,
*Circuit Judges.*

———————

[*] The Clerk of Court is directed to amend the caption as set forth above.

2

Proposed Intervenor-Defendant-Appellant Police Benevolent Association of the City of New York, Inc. ("PBA") appeals the order of the district court denying its motion to intervene in the consolidated cases captioned *In re New York City Policing During Summer 2020 Demonstrations*. The PBA asserts interests in the litigation that it argues the parties to the actions cannot adequately represent, and for that reason the PBA claims it is entitled to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a). We reverse the district court's denial of intervention with respect to the actions seeking declaratory or injunctive relief. We affirm the district court's denial of intervention with respect to those actions that seek neither declaratory nor injunctive relief.

——————

PHILIP J. LEVITZ, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Anisha S. Dasgupta, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, for *Plaintiff-Appellee People of the State of New York*.

MACKENZIE FILLOW (Richard Dearing and Devin Slack, *on the brief*), *for* Georgia M. Pestana, Corporation Counsel of the City of New York, New York, NY, *for Municipal Defendants-Appellees*.

ROBERT S. SMITH, Law Offices of Robert S. Smith (Richard H. Dolan and Thomas A. Kissane, Schlam Stone & Dolan LLP, *on the brief*), New York, NY, *for Proposed Intervenor-Defendant-Appellant Police Benevolent Association of the City of New York, Inc.*

Joshua S. Moskovitz, Law Office of Joshua Moskovitz, P.C., New York, NY, *for the* Sierra*,* Wood*, and* Yates *Plaintiffs-Appellees*.

——————

MENASHI, *Circuit Judge*:

Proposed Intervenor-Defendant-Appellant Police Benevolent Association of the City of New York, Inc. ("PBA") appeals the denial of its motion to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) in six civil actions consolidated under the caption *In re New York City Policing During Summer 2020 Demonstrations*. Both New York State and private plaintiffs brought the actions, which name as defendants the City of New York and its leadership ("City"), the New York City Police Department and its leadership ("NYPD"), and NYPD officers in their individual and official capacities. The claims relate to police actions and practices in response to demonstrations that occurred in the summer of 2020. We hold that the district court erred in holding that the PBA did not have a cognizable interest in the personal safety of its member officers at the merits stages of the actions seeking injunctive or declaratory relief and that such interests were adequately represented. We therefore reverse the judgment of the district court as to those cases and remand with instructions to grant the PBA's motion to intervene.

## BACKGROUND

### I

*In re New York City Policing During Summer 2020 Demonstrations* includes six civil actions. In each, the plaintiffs allege that the NYPD acted unlawfully at demonstrations occurring in the summer of 2020.

### A

Three actions were brought by individual plaintiffs on behalf of themselves or putative classes against the City, the NYPD, and NYPD officers. The plaintiffs in these actions allege violations of the federal and New York State constitutions, New York civil rights law,

and common-law torts. The actions seek injunctive or declaratory relief as well as damages.[1] Another action, *People of the State of New York v. City of New York*, No. 21-CV-322, was brought by the New York State Attorney General against the City and the NYPD, alleging violations of the federal and New York State constitutions as well as other violations of New York law, and seeks declaratory and injunctive relief. The final two actions were brought by individuals on behalf of themselves or putative classes against the City, the NYPD, and NYPD officers, alleging violations of the federal and New York State constitutions and common-law torts. These actions seek only damages.[2]

The complaints in each of the cases allege that the NYPD used excessive force, engaged in unreasonable searches and seizures, and violated First Amendment rights of the press and peaceful assembly. The *Sow* plaintiffs, for example, refer to "militarized tactics," including "massive amounts" of NYPD officers "in riot gear including riot helmets and militarized" vehicles intended to "alarm[]"

---

[1] These actions are *Payne v. de Blasio*, No. 20-CV-8924; *Sow v. City of New York*, No. 21-CV-533; and *Sierra v. City of New York*, No. 20-CV-10291. The *Sierra* action seeks a declaratory judgment as well as damages. The *Sierra* plaintiffs argue that their request for declaratory relief is "limited" to "a request for 'a declaration that past conduct was unlawful.'" *Sierra*, *Wood*, and *Yates* Appellees' Br. 3 (quoting *In re New York City Policing During Summer 2020 Demonstrations*, No. 20-CV-8924, 2021 WL 2894764, at *5 (S.D.N.Y. July 9, 2021)). Because such a declaration would declare unlawful "the City's policies, practices, and/or customs," App'x 337, *Sierra* is properly considered alongside those actions that seek injunctive relief.

[2] These actions are *Yates v. New York City*, No. 21-CV-1904, and *Wood v. City of New York*, No. 20-CV-10541. Two additional cases, *Rolon v. City of New York*, No. 21-CV-2548, and *Hernandez v. City of New York*, No. 21-CV-7406, were filed after the PBA's intervention motion and are therefore not at issue in this appeal.

and "deter[]" protesters. App'x 270. Likewise, the Attorney General alleges in the *People* case that many NYPD officers who responded to protests "appeared in full riot gear, including external Kevlar vests, helmets, and forearm plates," before "unlawfully arrest[ing] over 300 individuals" in a campaign of "excessive force" that culminated in "mass detentions and arrests." App'x 127-28.

Individual plaintiffs allege that such tactics were deployed unlawfully against them when, for example, a "group of at least 100 NYPD officers form[ed] a line" and "began to move towards the protesters with their helmets on and batons out." App'x 245. An officer then allegedly "pointed his drawn baton at" one plaintiff, "lunged at" her, "forcefully knocked the phone" out of her hands, "struck" her "across her chest," and "began beating [her] on the arms and upper body," at which point "[a]dditional NYPD members descended" to "beat her with their batons and kick[] her." App'x 245-46. The plaintiffs allege that such interactions reflect the NYPD's "long history of violence towards Black and Latinx people," App'x 158, and "historical brutality against protesters," App'x 271.

## B

Four of the consolidated actions seek broad injunctive and declaratory relief. For example, the Attorney General asks that the district court

> [e]njoin Defendants … from implementing, applying, or taking any action whatsoever under its unconstitutional policies or practices of employing excessive force, false arrests, and retaliatory tactics … in the form of an order requiring Defendants to take all affirmative steps, including changing policies, conducting training, and undergoing monitoring, among others, to … eliminate

ongoing unlawful policing practices and their effects,
and … prevent this unlawful conduct in the future.

App'x 148. The Attorney General further requests that the district court "[i]ssue an order holding unlawful, vacating, and setting aside Defendants' policies or practices of employing excessive force and false arrests, suppressing free expression and press reporting, and retaliating against" who participated in the Summer 2020 demonstrations. App'x 148.

Similarly, the *Sow* plaintiffs request that the district court "[i]ssue a permanent injunction enjoining Defendant City of New York and the NYPD from violently disrupting protests." App'x 299. And the *Sierra* plaintiffs ask that the district court declare unconstitutional "defendants' conduct and the City's policies, practices, and/or customs of retaliating against peaceful protesters out of hostility toward their message, arresting protesters without probable cause, using excessive force against the protesters, and targeting protesters for law enforcement action because of their advocacy for racial justice and equality." App'x 337.

By contrast, the plaintiffs in *Yates* and *Wood* seek neither declaratory nor injunctive relief.

## II

On March 3, 2021, the Police Benevolent Association of the City of New York, Inc. ("PBA") moved to intervene as of right in the consolidated actions under Federal Rule of Civil Procedure 24(a). The PBA is "the designated collective bargaining agent for the more than 23,000 police officers employed by the NYPD," and its "core mission" is "to advocate for and protect the interests of … the front-line police officers of the NYPD." App'x 66.9-66.10. The PBA argued that it had interests at stake at both the merits and remedy phases of the

litigation and that the parties did not adequately represent those interests.

The PBA identified an interest in maintaining officer safety that would be affected if the policies that governed front-line officers' rules of engagement with demonstrators were declared unlawful or otherwise altered. According to the PBA, front-line officers who responded to the Summer 2020 protests suffered multiple casualties. For example, the PBA described a female officer who suffered fractured vertebrae from being repeatedly kicked in the head at a demonstration, even though she was wearing a helmet. App'x 66.24. Another officer "was struck in the face with a brick," which bounced off the face shield of his helmet, striking his shoulder. App'x 66.25. And in responding to a reported robbery at a retail store during the protests, another officer was run over by the getaway vehicle, and he "sustained injuries to his back, knee, and hip." App'x 66.26-66.27.

The PBA also criticized the leadership of the City and the NYPD for failing to provide guidance to police officers in advance of protests occurring on May 29, 2020, and for adopting a posture of "business as usual." App'x 66.23. The PBA argued that "NYPD management was taking a purely reactive and defensive approach, and had failed to account for the escalating violence witnessed around the country on previous nights and in New York City the night prior," and as a result "a significant number of police officers assigned to protest details … were not equipped with disorder control helmets," a "standard" piece of protective equipment. App'x 66.23. The PBA suggested that the approach of management caused officer injuries, including one officer who was "hit in the back of the head with a metal trash can" after he was "instructed by supervisors to leave his helmet in the vehicle." App'x 66.25. The PBA reported that

"nearly 400 police officers … were injured during the protests." App'x 66.24.

In its motion papers, the PBA connected its interest in officer safety to its role in negotiating collective-bargaining agreements with the City. As the collective-bargaining agent for the officers, the PBA has the right to bargain over "questions concerning the practical impact that" even non-negotiable management "decisions … have on terms and conditions of employment, including … questions of … employee safety." N.Y.C. Admin. Code § 12-307(b). However, the PBA maintains that its interest in officer safety is "not limited to 'collective-bargaining rights'" but independently serves as a cognizable interest entitling it to intervene as of right. Appellant's Br. 12.

The PBA argued that both the merits and remedies phases of the litigation implicated its interest in officer safety because the "sweeping demands for declaratory and injunctive relief in the complaints" could "encompass restrictions on NYPD officers' ability to use defensive and non-lethal equipment … to protect themselves" in future protests. App'x 66.18. Because any conclusions of the district court on the merits would affect the scope of a resulting settlement agreement between the parties and would constrain the policy options available for new rules of engagement, the PBA said its intervention at the merits stage is necessary.

### III

The district court denied the PBA's motion to intervene in the consolidated actions on April 28, 2021. The district court characterized the PBA's interest as "an interest in [its] collective-bargaining rights, and how any future injunctions or settlements/consent decrees might impact working conditions or

officer safety." *In re New York City Policing During Summer 2020 Demonstrations*, 537 F. Supp. 3d 507, 512 (S.D.N.Y. 2021). The district court concluded that because "[a]t this early stage of the litigation, the primary question … is whether certain NYPD policies are, in fact, unconstitutional—an issue that has nothing to do with the unions' collective-bargaining rights"—the PBA had no "protectable interest" that would justify its intervention. *Id.* at 515. The PBA "might have an interest" only "if the parties were to propose a settlement that would result in changes to NYPD tactics/personnel procedures, or if the [district c]ourt, at the remedy stage after liability was found, was considering the imposition of injunctive relief that would have the same effect" because "such relief might have a practical impact on the unions' collective-bargaining interests." *Id.* at 512.

The merits stage of the litigation, according to the district court, did not implicate a cognizable interest of the PBA in officer safety because at the merits stage "the focus is on whether … certain NYPD tactics during protests are unconstitutional," *id.*, and "[t]he unions have not demonstrated why they have a protectable interest in preserving any allegedly unconstitutional policies that the NYPD might be employing," *id.* at 515. The district court denied the PBA's motion to intervene "without prejudice to renewal if changed circumstances give rise to a legitimate impact on the unions' collective bargaining rights," *id.* at 516, in particular "if the City agrees to any proposed settlement or consent decree that impacts the unions' collective-bargaining rights, or if the [district c]ourt proposes to order injunctive relief that does so," *id.* at 520.

On appeal, the PBA argues that the district court abused its discretion in denying the motion to intervene. The PBA contends that it is entitled to intervene on the basis not only of its interest in

collective bargaining but also of its related but independent interest in protecting the personal safety of its member officers.[3]

## DISCUSSION

"On timely motion, the [district] court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). To prevail on a motion for intervention as of right, a movant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).

No one disputes that the PBA timely filed its motion. This appeal turns on whether the PBA sufficiently identified a protectable interest at stake in the litigation. "For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). The district court concluded, and the appellees contend, that the PBA failed to show that it has a cognizable interest that the dispositions of the consolidated actions may impair and that the parties do not adequately represent.

---

[3] The PBA also claims to have an interest in protecting the reputations of its member officers. Because the interest in officer safety is sufficient to establish a right to intervention under Rule 24(a), we need not consider the PBA's interests in officers' reputations or in collective bargaining.

We review the district court's denial of a motion to intervene as of right for abuse of discretion. *Id.* A district court has abused its discretion if it "based its ruling on an erroneous view of the law," "made a clearly erroneous assessment of the evidence," or "rendered a decision that cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted).

We hold that the PBA identified a direct, substantial, and legally protectable interest in officer safety that may be impaired by the disposition of those actions seeking declaratory or injunctive relief with respect to NYPD policies. The PBA also showed that its interest was not adequately represented by the parties to those actions. Accordingly, we reverse the judgment of the district court and remand with instructions to grant the PBA's motion to intervene in those actions.

## I

The PBA asserted an interest in the safety of front-line officers. That interest may be impaired in litigation that could result in a determination that NYPD policies governing the interaction of officers and protesters are unlawful and must be altered. Therefore, the PBA has a cognizable interest at stake in those actions seeking declaratory or injunctive relief with respect to NYPD policies—that is, the *Payne*, *Sow*, *Sierra*, and *People* actions. The district court erred in concluding otherwise.

## A

The district court mischaracterized the PBA's interest as "preserving any allegedly unconstitutional policies that the NYPD might be employing, such as the use of excessive force or unlawful arrests," and it erred in holding that officer safety would not be implicated in litigation over police policies because "officers are not

allowed to violate the constitutional rights of citizens." 537 F. Supp. 3d at 515-16. This reasoning begs the question to be decided in the litigation—whether the challenged policies are in fact unlawful—and thereby confuses the merits of the litigation with the standard for intervention under Rule 24(a)(2). As we have emphasized, "except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *Oneida Indian Nation of Wisc. v. State of New York*, 732 F.2d 261, 265 (2d Cir. 1984).

The merits question before the district court is whether certain NYPD policies are permissible. The answer to that question may require a change in those policies. And changing the policies that govern officer conduct may affect officer safety. That means the litigation—at the merits phase—may impair the PBA's interest.

The district court quoted the Ninth Circuit in stating that "it goes without saying that the unions 'and the officers [they] represent have no protectable interest in violating other individuals' constitutional rights.'" 537 F. Supp. 3d at 515 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 398-99 (9th Cir. 2002)). But the Ninth Circuit—in that very passage—specifically rejected the view that because a police union and its officers do not have an interest in violating constitutional rights, the union lacks an interest in the merits phase of litigation that will determine *whether* officers violated constitutional rights:

> Of course, as the district court noted, the Police League and the officers it represents have no protectable interest in violating other individuals' constitutional rights. No one could seriously argue otherwise. However, the Police League claims a protectable interest because the

13

> complaint seeks injunctive relief against its member
> officers and raises factual allegations that its member
> officers committed unconstitutional acts in the line of
> duty. *These allegations are sufficient to demonstrate that the
> Police League had a protectable interest in the merits phase of
> the litigation.*

*City of Los Angeles*, 288 F.3d at 398-99 (emphasis added). We agree
with the Ninth Circuit that there is a crucial difference between an
interest in unconstitutional practices, on the one hand, and an interest
in the outcome of litigation seeking a determination that certain
practices are unconstitutional, on the other. In this case, as in *City of
Los Angeles*, the PBA does not have a protectable interest in acting
unlawfully. But it does have a protectable interest in the continuation
or alteration of policies that are alleged to be unlawful—and therefore
it has such an interest in the outcome of the litigation at issue here.

The district court improperly assumed that any decision on the
merits of the litigation would be limited to prohibiting unlawful
conduct and therefore the PBA could not show an interest that would
be impaired by such a decision. But Rule 24(a) assumes that questions
about the lawfulness of challenged conduct will be subject to
adversarial testing. If a proposed intervenor has an interest that may
be impaired by a decision that challenged conduct is unlawful, the
district court may not deny intervention on the ground that its
decision on the merits will be legally correct.

In *Brennan v. New York City Board of Education*, the district court
had concluded that non-minority employees of the defendant school
district lacked "a cognizable interest in their employment status and
seniority rights" that would justify intervention in a discrimination
case "because these benefits were presumptively obtained as the
result of discriminatory practices." 260 F.3d 123, 129 (2d Cir. 2001).

We explained that "the district court's ruling put the cart before the horse." *Id.* In the underlying litigation, it was "precisely the existence or non-existence of prior discrimination and its relationship to [the employees'] present status that they want to contest by intervening as parties." *Id.* at 130. It was possible to resolve that merits issue "only after" the employees had "an opportunity for discovery and the presentation of evidence as a party to the action." *Id.*

The district court's decision in this case similarly put the cart before the horse. The PBA seeks to contest the proposition that the challenged policies are unlawful and should be changed. The district court erred in denying intervention on the ground that this asserted interest amounts to a defense of unlawful policies.

### B

The district court also erred as a matter of law when it concluded that the PBA's interest in officer safety was derivative of its interest in collective bargaining. The collective bargaining law recognizes the importance of employee safety by authorizing negotiation over "questions concerning the practical impact" of management decisions on "employee safety." N.Y.C. Admin. Code § 12-307(b). But the interest in officer safety is not limited to the PBA's collective-bargaining rights and is independently cognizable.

We have cautioned against requiring that a proposed intervenor identify a narrow interest amounting to a legal entitlement. In *Brennan*, the district court had denied intervention because the non-minority employees had "no vested property right in a particular position or appointment." 260 F.3d at 128 (quoting *United States v. N.Y.C. Bd. of Educ.*, 85 F. Supp. 2d 130, 155 (E.D.N.Y. 2000)). In reversing the judgment of the district court, we explained that "Rule 24(a)(2) requires not a property interest but, rather, 'an

interest relating to the property or transaction which is the subject of the action.'" *Id*. at 130 (quoting Fed. R. Civ. P. 24). Because the action could require changes in the personnel policies of the school district, which would affect the non-minority employees through the "loss of relative seniority," the intervenors met that standard. *Id.* Similarly, in *Bridgeport Guardians*, we held that non-party employees had "an interest in their employers' employment practices" that justified intervention in a discrimination case that could alter those policies. 602 F.3d at 474.

The appellees suggest that our decision in *Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014), requires the conclusion that the PBA lacks a cognizable interest. We are not persuaded. In *Floyd*, we affirmed the denial of motions by police unions to intervene in litigation over the NYPD's "stop and frisk" practices, which yielded "an order imposing remedies … in the form of various 'reforms'" to those policies. *Id.* at 1055. In that case, however, we noted that "there was no evidence in the record showing that the union members' careers had been tarnished, that their safety was in jeopardy, or that they had been adversely affected in any tangible way." *Id.* at 1061. By contrast, the record in this case more clearly shows that changes to policies affecting interactions between officers and protesters may affect officer safety. The PBA introduced evidence that officers suffered injuries during interactions with protesters because of policies governing the rules of engagement with protesters and the equipment issued to officers. *See* App'x 66.24-66.27. The plaintiffs in the consolidated actions seek to change those policies to be more protective of the protesters and correspondingly less focused on the safety interest of the front-line officers. The PBA is asserting an interest in officer safety that is "the mirror image" of the claims

16

pressed in the individual actions, *Brennan*, 260 F.3d at 130, and that interest justifies its intervention.

## C

The district court distinguished *Brennan* and *Bridgeport Guardians* on the ground that the motions for intervention were filed in those cases after "the parties to the lawsuit had agreed on a settlement." 537 F. Supp. 3d at 516. But in neither *Brennan* nor *Bridgeport Guardians* did we hold that such an agreement was necessary to establish a cognizable interest. To the contrary, we focused on "the nature of appellants' interest in the underlying action," in light of the relief being sought, and we cautioned district courts against requiring too direct a connection between the interest asserted and the relief sought. "[T]he effects of a loss of relative seniority rights," we said, "should not be regarded as too speculative and remote to justify intervention save, perhaps, in a case where a concrete effect on an employee is impossible." *Brennan*, 260 F.3d at 129, 132 (footnote omitted). Given the relatively straightforward connection between the relief sought in this case and the PBA's claimed interest, the PBA's interest is not too remote.

In *Floyd*, we faulted the police unions for failing to move to intervene *before* the parties agreed to the remedial order that settled the litigation. We said that the "unions knew, or should have known, of their alleged interests in these controversial and public cases well before they filed their motions" because "the full scope of these cases and the potential reform measures were readily apparent from years of extensive public filings and intense media scrutiny." *Floyd*, 770 F.3d at 1054, 1058. We explained that the litigation "should have put the unions on notice of the potential political and judicial dangers that these cases posed to their interests well before" the remedial order

and, for that reason, we would not "allow[] the unions to revive a now-settled dispute by intervening at this late juncture." *Id.* at 1054, 1058.

Our decision in *Floyd* is incompatible with the conclusion that the PBA must await a settlement agreement in order to establish an interest justifying intervention under Rule 24(a)(2). As in *Floyd*, the scope of these cases and the potential reform measures are apparent from the character of the actions that seek to "hold[] unlawful" and "vacat[e] … policies" that allegedly authorize "excessive force and false arrests." App'x 148. The nature and scope of any injunctive relief and accommodations could turn on political calculations with respect to which the individual officer defendants would not be influential and to which they may not even be privy. Likewise, the nature and scope of any injunctive relief would likely be influenced by the circumstances shown in discovery and the resolution of issues that may predate the remedy phase. We therefore hold that the PBA has identified an interest that may be impaired by the disposition of the consolidated actions.

## II

We further hold that the PBA has "carried the minimal burden required for a showing that representation by the existing parties may be inadequate." *LaRouche v. FBI*, 677 F.2d 256, 258 (2d Cir. 1982). The district court correspondingly erred in concluding that the PBA's interest in officer safety was adequately represented by the City defendants.

Intervention under Rule 24(a)(2) is warranted when there is "sufficient doubt about the adequacy of representation." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). This requirement "is satisfied if the applicant shows that representation of his interest

'may be' inadequate; and the burden of making that showing should be treated as minimal." *Id.* at 538 n.10. We have explained that an employer may inadequately represent the interest of its employees when the employer may have an interest in "bringing such litigation to an end by settlements involving the displacement of employees who are not parties to the action." *Brennan*, 260 F.3d at 133. "The employer may, in short, behave like a stakeholder rather than an advocate" for those employees. *Id.*

We observed in *Floyd* that it was not evident that the City "*ever*" adequately protected the interests of NYPD officers. 770 F.3d at 1059. We noted that "the interests of employers and their employees frequently diverge, especially in the context of municipal employment, where an employer's interests are often not congruent with the employee's and the employer may argue that the employee was acting outside the scope of his employment." *Id.* Given "[t]his inherent conflict," we said that "it should have been readily apparent to the [police] unions that their interests diverged from the City's long before the unions filed for intervention." *Id.* And we emphasized that the inadequacy-of-representation standard was met before any settlement was discussed: "the unions should have known that their 'interests *might* not be adequately represented' far in advance of any indication that the City might settle the dispute." *Id.* (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001)).

In this case, the PBA has shown that its interest might not be adequately represented by the City. The PBA provided a detailed account of how its view of the appropriate response to the Summer 2020 protests diverged from the views of the City and the NYPD. Indeed, the PBA argued that the approach of the City and the NYPD resulted in officer injuries. App'x 66.23. In addition, the PBA took account of the "widely understood … views of the incumbent

municipal administration." *Floyd*, 770 F.3d at 1058. As the PBA notes, after the Attorney General filed the complaint in the *People* action against the City, the Mayor of the City announced that he had met with the Attorney General and "couldn't agree more that there are pressing reforms that must—and will—be made this year." App'x 66.17-66.18. On this record, the PBA has met its burden to demonstrate that the City's representation may be inadequate.

We also agree with the PBA that "[t]he defense of individual damage actions is not comparable to the defense of a high-profile, politically charged litigation seeking 'reforms.'" Reply Br. 9. Accordingly, the individual officers named as defendants in some of the actions do not necessarily represent the PBA's interest. While the individual officers might be interested in the impact of NYPD policies on officer safety, their interests in the litigation are not "so similar" to those of the PBA that "adequacy of representation" is "assured." *Brennan*, 260 F.3d at 133. Those officers may well be primarily concerned with vindicating their own conduct because personal liability would predictably affect each individual officer's career. Moreover, if the conduct alleged is found to violate "any rule or regulation" of the NYPD, N.Y. Gen. Mun. L. § 50-k(3), the City will have grounds to withhold indemnity. As a result, the individual officers have reason to fear financial consequences, and concerns over policing policies regarding officer safety are of discounted importance. We therefore hold that the district court erred in denying the PBA's motion to intervene in those actions that seek declaratory or injunctive relief regarding NYPD policies.[4]

---

[4] We do not believe that the PBA has shown a cognizable interest inadequately represented in those actions that seek only damages against

### III

Because the PBA was entitled to intervention as of right for the four litigations that seek declaratory or injunctive relief, we need not address the district court's denial of permissive intervention. As to those two litigations that seek neither declaratory nor injunctive relief, we review the district court's denial of permissive intervention under Federal Rule of Civil Procedure 24(b)(1) for abuse of discretion. Permissive intervention is appropriate when a proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The district court did not abuse its discretion when it concluded that the PBA had not identified such a claim or defense with respect to the damages-only actions.

### CONCLUSION

The district court abused its discretion in denying the PBA's motion to intervene as of right in the actions seeking declaratory or injunctive relief with respect to NYPD policies. The PBA has a cognizable interest in officer safety that may be impaired by the disposition of those actions and that the parties may inadequately represent. Accordingly, we **REVERSE** the district court's judgment denying intervention under Rule 24(a) as to *Payne v. De Blasio*, No. 20-CV-8924; *People of the State of New York v. City of New York*, No. 21-CV-322; *Sow v. City of New York*, No. 21-CV-533; and *Sierra v. City of New York*, No. 20-CV-10291. We **AFFIRM** the district court's judgment denying intervention under Rules 24(a) and (b) as to those litigations within the consolidated actions that seek only damages: *Yates v. New*

---

certain defendants for past conduct and that could not directly require a change in NYPD policies. We affirm the district court's judgment with respect to those actions—namely, *Yates* and *Wood*.

*York City*, No. 21-CV-1904, and *Wood v. City of New York*, No. 20-CV-10541.