

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**PATRICIA MILLER**
*Division Chief*
(212) 356-3500 (tel.)

May 20, 2022

**By ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      In Re: *New York City Policing During Summer 2020 Demonstrations*,
      No. 20 Civ. 8924 (CM) (GWG)
      This filing is related to all cases

Your Honor:

    I am the Division Chief of the Special Federal Litigation Division in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York. In an order, dated May 2, 2022, the Court directed the undersigned:

> "[T]o consult separately with each employee of the Law Department who has worked on the consolidated cases to determine whether any such employee is aware of any other misrepresentations that have been made either to the Court or to opposing counsel in connection with the consolidated cases."

The undersigned has provided so far two status reports dated, May 9 and May 16. On May 11, just two days after the first status report, I received a letter from the Office of the Attorney General ("OAG") on "behalf of Plaintiffs in these consolidated cases" addressing "issues" (but "not [an] exhaustive" list) that "should be included in the focus of your inquiry." The letter ends with '[s]hould you fail to do so, we intend to raise issues concerning the adequacy of your investigation with the Court." (Attached as Exhibit A with redactions). In addition, in a letter to the Court, dated May 13, 2022 (Dkt. #540), the OAG again stated "Plaintiffs anticipate raising [more issues] soon, following the completion of Chief Miller's internal investigation." (Attached as Exhibit B).

1

Last, in an email dated, May 3, 2022, the OAG referred to the Court's May 2 order as an "audit." (Attached as Exhibit C, with redactions).

First, the undersigned's focus is based on the parameters set by this Court. I take my direction from this Court and take that direction quite seriously. Both status letters are in compliance with what the Court has directed. The Court has not directed an "audit," for example. Rather, the Court was quite specific and the undersigned has conducted interviews accordingly.

Second, addressing the last line of the OAG's letter to me indicating "[s]hould you fail to do so, we intend to raise issues concerning the adequacy of your investigation with the Court," I am sure the tone as it reads is not what was intended. I trust there is no attempt here to exploit a most unfortunate and sad situation by casting aspersions on a group of attorneys and staff, who by all accounts so far in the inquiry directed by the Court, did not participate in or have any knowledge of any wrongdoing. At this time it would appear that this matter is limited to the acts of a single attorney, but I have not completed my inquiry as defined by the Court.

Third, counsel has referred to a flurry of matters using the word "misrepresentation." If the OAG (on behalf of plaintiffs) has more discovery issues it would like to raise, now is the time to do so. It is unclear why counsel would want to wait until I complete what the Court has directed to then raise discovery concerns, especially where the OAG appears to believe that their discovery concerns should be addressed by the Court's directed inquiry. On Tuesday (May 17), I asked the OAG (as spokesperson) if they would be interested—in the first instance -- in providing to the defense team a complete list of the identified, and alluded to, discovery issues. I have not received a response as of yet.

Given the fact that the defense team has lost a senior person who was handling a number of discovery matters and given the fact that plaintiffs have raised some issues and have alluded to others, I respectfully request that the Court direct the OAG (as spokesperson) to provide to the defense team a complete list of legitimate discovery concerns to streamline any needed review.

Respectfully submitted,

*Patricia Miller* /s/

Patricia Miller
Division Chief
Special Federal Litigation Division

c:
ALL COUNSEL (via ECF only)

EXHIBIT A



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

May 11, 2022

By Email

Patricia Miller
Division Chief, Special Federal Litigation Division
Law Department
100 Church Street
New York, NY 10007

Re: *In re: New York City Policing During Summer 2020 Demonstrations*

Dear Ms. Miller:

    The Court has Ordered an investigation into whether other misstatements have been made to the Court or Plaintiffs' counsel in the course of this case. (ECF No. 526). You filed a letter on Monday stating that you have consulted 43% of the Law Department employees who have engaged in work on this case and have nothing further to report to the Court based on these conversations. (ECF No. 536). I write now on behalf of Plaintiffs in these consolidated cases to flag a number of issues that we believe should be included in the focus of your inquiry and which may involve "misrepresentations that have been made either to the Court or to opposing counsel in connection with the consolidated cases."

1.

2.



Office of the New York Attorney General
Letter to P. Miller
Page 2



3.

4.

5.

6.

The above list is not exhaustive, and this letter is not intended to limit any other relief Plaintiffs may seek with respect to these issues. But any meaningful investigation into this matter would need to address these apparent misrepresentations, among others. Should you fail to do so, we intend to raise issues concerning the adequacy of your investigation with the Court.

Sincerely,

/s/ Travis W. England
Travis W. England
Deputy Bureau Chief
Civil Rights Bureau
New York State Office of the Attorney General
(212) 416-6233

CC: All counsel of record

EXHIBIT B

Case 1:20-cv-08924-CM   Document 540   Filed 05/13/22   Page 1 of 5



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

May 13, 2022

**By Electronic Filing**

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

     **Re:**   *In re: New York City Policing During Summer 2020 Demonstrations,*
           *No. 20-CV-8924*
           This Letter is Related to All Cases

Dear Judge Gorenstein:

    We write on behalf of all plaintiffs in these consolidated cases in further support of Plaintiffs' motion to compel the production of ARGUS video and for sanctions regarding Defendants' failure to do so by the Court-ordered deadline of April 15.

    Despite its conciliatory tone, Defendants' Response (Dkt. 539) makes clear the following:

- Defendants did not begin preparing ARGUS video responsive to Plaintiffs' March 2021 requests until more than 10 months later, on February 8, 2022. This contradicts numerous representations made by Defendants to Plaintiffs and the Court since last May that ARGUS footage was being "searched for" or "collected." *See, e.g.*, 5/12/21 Email from D. Weiss to W. Stecklow ("My client is still . . . in the process of collecting ARGUS. They will be part of the rolling production . . . ."); ECF 173-1 at 14 (6/21/21 Letter from D. Weiss to Plaintiffs' Counsel ("[W]ith respect to ARGUS camera footage . . . some of these documents have been provided . . . . Additional footage is being searched for.").

- From February through April 2022, Defendants transmitted a number of revised "charts" of discovery status updates representing that they expected to produce ARGUS footage by specific Court-ordered deadlines. Defendants' letter now makes clear that during this same time period, the NYPD was purportedly experiencing extraordinary technical issues completing that "Herculean task," causing the project to grind to a halt for weeks at a time.

- Despite knowing they could not have possibly met the Court-ordered deadlines, Defendants did nothing to notify Plaintiffs (despite Plaintiffs' unheeded April 11 request

Hon. Gabriel W. Gorenstein
Page 2

>to confirm ARGUS would be timely produced) or the Court, or to request more time for production.[1] They simply let the deadline pass without comment.

In light of these admissions, the Court should order the following relief:

1. Order Defendants to make their production of ARGUS video on a rolling basis to be completed by May 27, in a manner that mitigates the prejudice caused by their unjustified delay in production, as detailed below; and
2. Sanction Defendants through a limited preclusion order designed to offset the prejudice to Plaintiffs, and reasonable attorneys' fees.

## I. THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE ARGUS VIDEO BY A DATE CERTAIN AND IN A MANNER THAT MITIGATES ITS EXTRAORDINARY DELAY.

As a result of Defendants' dereliction of their discovery obligations, Plaintiffs will receive thousands of hours of video footage on the eve of the resumption of policymaker depositions. To mitigate the prejudice caused by this late production and keep the parties on track to complete discovery and depositions expediently, the Court should:

a. Order the production of all responsive ARGUS video footage on a rolling basis to be completed by May 27, 2022, with progress reports, in sworn declarations, to be provided by an individual with direct personal knowledge on May 20 and May 24;
b. Order Defendants to produce the videos in a manner that (a) clearly identifies which of the Plaintiff-provided maps of protest locations video is being produced for, and indexes the Bates number of each video to each of those maps; and (b) provides—in metadata or some other easily trackable, video-specific manner—the precise location of the camera that recorded the footage and the date and time of the footage;
c. Order Defendants to provide the Bates number for any responsive ARGUS videos that have already been produced through a CCRB or IAB files (a small number of videos in total), and identify the related protest, date and time period of the footage; and
d. Order Defendants—in the event they produce no ARGUS footage for any of the Plaintiff-provided maps showing relevant protest areas—to provide an affidavit from an individual with personal knowledge stating whether that is due to the absence of cameras in the identified area or due to Defendants' failure to preserve the video.

Without these measures, Plaintiffs will be unable to efficiently review Defendants' production in the compressed time frame remaining before depositions resume, and further will have no assurance that Defendants will even meet their self-imposed deadline of May 27.

---

[1] Indeed, even as Defendants requested additional time to respond to Plaintiffs' motion to compel, Dkt. 530, they were aware that only 700 hours of the estimated total of 3,300 hours of video had been "uploaded" for production. (Email dated May 3, 2022 from A. Robinson to L. Marquez.) Although Plaintiffs conditioned their consent to Defendants' request for an extension of time on Defendants notifying the Court (in the extension request) of that fact, Defendants failed to do so.

Hon. Gabriel W. Gorenstein
Page 3

## II. THE COURT SHOULD SANCTION DEFENDANTS FOR IGNORING MULTIPLE ORDERS TO PRODUCE RESPONSIVE VIDEO.

Defendants offer only apologies, not justification, for flaunting the Court's discovery order despite clearly understanding the consequence of noncompliance. Defendants' failure to meet their discovery obligations has been repeated so often in this litigation that it can only be described as willful. Plaintiffs have been extraordinarily prejudiced by Defendants' late and noncompliant production. As a result, sanctions are merited, and should be of the scale and nature that is needed at this stage to effectively stop Defendants from continuing their pattern of ignoring Court discovery orders. *See Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) ("In imposing Rule 37 sanctions . . . courts properly consider various factors, including . . . the willfulness of the non-compliant party or the reason for noncompliance; . . . the efficacy of lesser sanctions; . . . [and] whether the non–compliant party had been warned of the consequences of noncompliance.") (cleaned up). Applying the *Funk* factors here, it is apparent that sanctions beyond attorneys' fees are warranted, and would be both "just" and "commensurate" with Defendants' discovery violations. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).

### A. Defendants Offer No Justification For Missing Multiple Court Deadlines, Despite Numerous Warnings.

Defendants' description of their efforts to collect ARGUS video footage responsive to Plaintiffs' March 25, 2021 discovery requests begins on February 8, 2022; Defendants do not even attempt to explain why they seemingly took no action prior to then. Accordingly, even assuming (without conceding) that the various technical issues between February 8 and May 4 are justifiable causes of the delays during that three-month period, they do nothing to excuse the 10-month delay in beginning the collection process. Moreover, Defendants' Response does not explain why they simply flouted the Court's order to show cause for any requested extension with an affidavit and details regarding the collection efforts to date, *see* Dkt. 462 at 3, or why they continued to falsely represent to Plaintiffs in their Court-ordered discovery status "chart" that ARGUS footage would be produced by the "Court-ordered deadlines." *See* Dkt. 426-1 and 464-1 (Charts sent by D. Weiss to Plaintiffs by e-mail on March 1 and March 18, 2022, respectively).

### B. Plaintiffs Have Been Severely Prejudiced.

By failing to even begin collecting responsive ARGUS video footage until February of this year, Defendants deprived Plaintiffs of the opportunity to use this irreplaceable information in line-officer depositions conducted last summer and fall. As noted in Plaintiffs' opening letter, the unique vantage point and quality of ARGUS footage makes this source of evidence uniquely important in understanding what took place during the crowd-control and mass gathering situations that are at issue in these cases. Given the compressed discovery schedule and clear directives from your Honor and Judge McMahon, Plaintiffs had little choice but to move forward expeditiously with these depositions, despite Defendants' failure to turn over these crucial videos.

Because this prejudice cannot be undone, Plaintiffs respectfully submit that Defendants should be precluded from introducing evidence designed to contradict any facts discernible from

Hon. Gabriel W. Gorenstein
Page 4

ARGUS video from any location where any previously-deposed line officer was present. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (order prohibiting "disobedient party . . . from introducing designated matters in evidence"); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318-GBD-BCM, 2019 WL 4727537, at *28 (S.D.N.Y. Sept. 26, 2019) (awarding sanction of limited preclusion order and noting "[s]uch sanctions affect the merits of the litigation by placing the risk of a verdict uninformed by important facts on the party that made evidence of those facts unavailable in the discovery process"), *aff'd* 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020). In addition, to the extent Defendants produce any ARGUS footage from (or any other evidence relevant to) incidents where any previously deposed "higher level" officer was present, Plaintiffs should be permitted to recall those witnesses.

Plaintiffs also maintain their request for a sanction of reasonable attorneys' fees in making the instant motion. By ordering these sanctions, along with the measures detailed above, the Court will send a much-needed message to Defendants that their routine practice of seeking forgiveness rather than permission for ignoring Court orders and other litigation obligations must end.

### C. Defendants' Belated Investigation Suggests Potentially Widespread Similar Failures to Conduct a Reasonable and Diligent Search.

Defendants' description of their investigation into the status of ARGUS video collection raises questions regarding the completeness of the April 15 production, and of the accuracy of other entries in Defendants discovery status "chart." The fact that the Court's April 15 deadline passed with no production of ARGUS video footage—and that it is only now in response to Plaintiffs' motion to compel that the City investigated and provided a truthful status report—raises serious questions about the accuracy of other entries in the "chart." This concern is compounded by the Law Department's apparent reliance on a single attorney to conduct all aspects of document discovery, despite the Law Department's reassurance to Your Honor that this case was suitably staffed and that the Special Federal Litigation office "strongly believes in the general principle to comply in good faith with Court Orders." (Dkt. 466, Declaration of P. Miller ¶¶ 2(a)-(e)). This extremely lean staffing on discovery matters became evident following the departure of that attorney, when defense counsel requested that Plaintiffs' counsel provide them with a copy of that chart, as no one on the defense team had a copy. *See* Exhibit A.[2]

Defendants' newly candid description of when and how it began to search for and collect ARGUS footage exemplifies a fundamental failure to conduct a reasonable and diligent search—a failure that Plaintiffs have identified on numerous other occasions. *See, e.g.*, Dkt. 534 (describing multiple iterations of Defendants' internal searches for Mullins documents); Dkt. 379 (describing shifting explanations of searches for audit trail logs for bodyworn camera footage); Dkt. 444 (Defendants stating a huge volume of unexplained occurrence reports ("49s") existed after they had previously represented, in writing, to Plaintiffs that none existed).

---

[2] Notably, that recently departed attorney commented to the press that these consolidated cases have been staffed "without adequate Law Department resources for more than a year"—despite the Court repeatedly ordering otherwise. *See* Benjamin Weiser, *N.Y.C. Lawyer Fired Over Handling of George Floyd Protesters' Lawsuits*, N.Y. TIMES (May 3, 2022).

Hon. Gabriel W. Gorenstein
Page 5

    Viewed in this light, Defendants' inexcusably late production of thousands of hours of video footage, on the eve of supervisory and policy-maker depositions, if disappointing, is hardly surprising. It is among the myriad examples prompting Plaintiffs to seek remedies from the Court compelling compliance with prior stipulations and orders. Defendants' actions here reflect their longstanding practice of assuring Plaintiffs and the Court either that they have diligently searched for and produced, or that they are in the process of diligently searching for and timely producing all responsive information—when in reality they have engaged in no more than a superficial inquiry. The pervasiveness of this practice is a strong indication that Defendants' other representations regarding the search, collection, and April production of the remaining items on the Chart bears revisiting. While addressing such potentially extensive ongoing deficiencies is outside the scope of this motion, Plaintiffs anticipate raising them soon, following the completion of Chief Miller's internal investigation.

Sincerely,

*/s/ Swati Prakash*

Swati R. Prakash, Assistant Attorney General
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-6201
Swati.Prakash@ag.ny.gov

CC: All counsel of record

EXHIBIT C

**Robinson, Amy (LAW)**

| | |
|---|---|
| From: | Marquez, Lillian |
| Sent: | Tuesday, May 3, 2022 4:31 PM |
| To: | |
| Cc: | |
| Subject: | [EXTERNAL] RE: Pls Ltr to the Ct re ARGUS (Dkt. No. 527) |

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe. Forward suspect email to phish@cyber.nyc.gov as an attachment (Click the More button, then forward as attachment).

Amy,

I appreciate that you are trying to get this information and Plaintiffs consent to the one-week extension so long as you note in your letter request that your response will provide, as you say, "the current status of ARGUS," "a date when [you] can expect to receive video," and a date "when it can be produced." Also, we note our understanding that the City's previous representations on the status of ARGUS will be included in the audit ordered by the Court yesterday.

Regards,
Lillian

**Lillian Marquez | Assistant Attorney General**
New York State Office of the Attorney General, Civil Rights Bureau
28 Liberty St., New York, NY 10005
Tel: 212-416-6401
Pronouns: She/Her/Hers