

May 23, 2022

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

> Re:   **In re: New York City Policing During Summer 2020 Demonstrations,
> 1:20-CV-8924 (CM) (GWG) — This Letter Relates to All Cases**

Dear Judge Gorenstein:

      I write on behalf of the consolidated Plaintiffs in this case, regarding the Court-Ordered negotiation process about filling in the Bates identifiers for documents on certain rows in the chart originally due in February.  *See* 2022-4-12 Tr. 74:9-75:23. Counsel for the parties met and conferred on this matter over an extended period on April 25,[1] on May 5, for approximately an hour,[2] and again on May 11 for a bit more than an hour.[3]  The parties have reached a number of agreements, as follows:

> Defendants will provide Bates numbers for Request Nos. 2, 3, 4, 12, 39, 40, 41, 49, 52, 54, 56, 57, 70, 71, 72, 73, 75, 76, 78 and 90.

> Defendants will provide Bates numbers for Request No. 20 as to the MOS listed excluding "Incident Commanders."

> Defendants agree to run keyword searches as to Request Nos. 31-33 to simply confirm that such documents were produced.

**Exhibit 1** (2022-05-18 Letter from Amy Robinson).  Plaintiffs accept the limitations imposed in the second and third agreements, and thus these issues are resolved (and can be So Ordered).  For context, the chart itself is provided as **Exhibit 2**.

---

[1] In attendance were:  Dara Weiss for Defendants; and myself, Molly Biklen, Travis England, Lillian Marquez, Ali Frick, and Daphna Spivack for Plaintiffs.  This protracted process was due in part to additional time Defendants' counsel requested after the departure of Ms. Weiss.

[2] In attendance were:  Amy Robinson, Anthony DiSenso, Rachel Kaufmann, Bridgit Hamill, and Jenny Weng for Defendants; and myself, Molly Biklen, Wylie Stecklow, Travis England, Conor Duffy, Rob Rickner, Alexandra Settelmayer, Nimra Azmi, and Ali Frick for Plaintiffs.

[3] In attendance were:  Anthony DiSenso, Amy Robinson, Rachel Kaufman, Genevieve Nelson, Jenny Weng, and Bridget Hamlin for Defendants; and myself, Molly Biklen, Wylie Stecklow, Travis England, Rob Rickner, and Rigodis Appling for Plaintiffs.



However, there remain significant unresolved disputes regarding the Bates identification process — and Plaintiffs have declared impasses as appropriate at the three meetings. First, the parties remain at an impasse as to Plaintiffs' request that Defendants provide Bates numbers responsive to Requests 17, 35, and 88.[4] Second, Defendants will not commit to completing the identification of Bates numbers before "at best" *July* 22, 2022 (Ex. 1 at 1) — some three and a half months after the Court ordered this project.[5] That is simply not compatible with the schedule in the case. And finally, notwithstanding the Court's clear language, Defendants assert that this — what the Court literally described as "the limit of what I'm doing on sanctions today" at the conference (2022-04-12 Tr. at 11-14) — is not a sanction.[6]

Each of Defendants' positions here is wrong. And as to the sanction, it falls into a long and unfortunate pattern of Defendants taking orders they don't like and "interpreting" them in ways that thwart the Court's clear intentions. *See, e.g.,* Dkt. Nos. 334 ("the Court does not understand how the City ended up believing that the plaintiffs were interested in only the Mott Haven video"); 330 (similar); 457 ("plaintiffs are correct as to the Court's intention, though the Court accepts that there was arguably some basis for confusion"). Accordingly, Plaintiffs request that this Court enter an order requiring Defendants to produce Bates numbers for 17, 25 and 88, in addition to those agreed by the parties, and do so on a rolling basis every Friday to be completed by June 17. Finally, Plaintiffs ask that the Court enter the relevant directions clearly as a sanction, as was plain at the April 12 conference, to ensure that Defendants fully complete this project.

## DISCUSSION

### I. Defendants Should Produce Bates Ranges on Requests 17, 35 and 88.

Requests 17 and 35 are about discipline. Request 17 seeks documents concerning officers receiving or being recommended to receive discipline for misconduct occurring during the Protests, while Request 35 seeks documents concerning discipline of any NYPD officer for use of racist language during the Protests. The documents concerning whether and what discipline any officers received is uniquely within Defendants' expertise and presumed knowledge of their own documents. What, if any, discipline Defendants have imposed (or not) for misconduct during the protests is a key factual question for liability (*In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 405 (S.D.N.Y. 2021)) — and one that Defendants are uniquely positioned to answer.

---

[4] The parties could also not agree on Request 7, but Plaintiffs have decided not to move on that request.
[5] The parties could not agree on an interpretation of the Court's Order on timing. Defendants did not read the Court to set *any* deadline. Plaintiffs believed that when the Court talked about timing — saying, "[a]ny disagreement just present it to me in a letter, and I'll go through the chart and say what the defendants have to do. They definitely have to do number 1, they should start doing that now. They should give their response within two weeks from today, the 26th" (2022-04-12 Tr. 75:12-23) — it either meant the whole project must be done in two weeks or that, at a minimum, Defendants needed to answer Plaintiffs' proposal by the 26th.
[6] Of course, if it's **not** a sanction, then the order was part of what the Court ordered as to the substance of chart that Defendants should have had done in February. And the Court made very clear that the final chart should be done in a "matter of days and not weeks" from April 12. 2022-04-12 Tr. 20:2-10. So, if Defendants are asserting this is not a sanction with any seriousness, they should be explaining how they interpret the Court to have given them as much time as they like past the third "put up or shut up" moment.

Cohen&Green P.L.L.C.   ·   1639 Centre Street, Suite 216 · Ridgewood, New York · 11385   ·   t : (929) 888.9480   ·   f : (929) 888.9457   ·   FemmeLaw.com



While Plaintiffs can search documents and files produced by the CCRB or IAB related to any recommended discipline, the NYPD is in the unique position to identify and ensure the production of all documents relating to the ultimate discipline imposed, if any, and documents created as part of the discipline decision-making process. If, as Plaintiffs suspect, very little discipline has been imposed for misconduct during the Protests, providing the Bates numbers of documents produced concerning such discipline should not be overly burdensome for Defendants.

Moreover, there are obvious documents missing from production. For example, while the CCRB has recommended discipline for a number of officers, Defendant Shea apparently intervened to override many of the CCRB's determinations. *See, e.g.,* Craig McCarthy, *NYPD cops won't face discipline for misconduct during George Floyd protests,* N.Y. POST (Dec. 23, 2021). And at least some of that process, given that it was reported last December, took place before Defendants began their more serious document searches in earnest. Yet, as far as Plaintiffs can tell, documents reflecting the NYPD's ultimate decisions on discipline are entirely missing from the production (or, for that matter, Defendants' search).

Request 88 concerns certain claims the Defendants have made about occurrences at Mott Haven — specifically concerning the throwing of plastic bottles and/or Molotov cocktails.[7] There appears to be no evidence anything related to a Molotov cocktail ever took place beyond thirdhand rumors repeated verbatim in dozens of arrest documents. Here, Plaintiffs have not sought out documents concerning all the Protests at issue, but one in particular that Defendants use to justify their tactics at that location. Accordingly, Plaintiffs do not need a Bates number for every document "concerning" those acts. But they *do* need Bates ranges for any first-hand or video accounts specifically related to Molotov cocktails — because as far as we can tell, neither exists. And Plaintiffs need to be able to sit assured that Defendants won't realize their search was inadequate and produce those first-hand documents on the eve of trial.

So, on Request 88, Plaintiffs ask only that Defendants identify Bates numbers for (1) video footage or (2) any document reflecting a first-hand account of protesters at Mott Haven throwing Molotov cocktails that Defendants have produced.

## II. Defendants' Proposed Timing Is Not Feasible or Consistent with the Court's Orders.

Defendants' proposal to delay providing the requested Bates stamp information for another two months is untenable — particularly in light of (1) their unreasonable delays in meeting on this issue and (2) their failure to start the process until every last piece was locked in place.

While there is more background, in short, after significant delays, the parties met on May 5 and May 11 and were able to reach the substantial agreements outlined in this letter. During the May 11 meeting Defendants also revealed that, notwithstanding *some* agreement about what

---

[7] Specifically, Request 88 seeks "all documents concerning persons at the June 4, 2020, Mott Haven Protest (Protest No. 44 on Schedule A) throwing plastic bottles containing liquids and/or Molotov cocktails (including but not limited to identifying videos depicting such acts)."

COHEN&GREEN  Page 3 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



categories they would work on (*see, e.g.,* Ex. 2 at 3-4 (agreeing to provide Bates ranges for requests 39, 40, 41, 76 and 78)), they had not started that review at all — and did not intend to until the final list was in place.  Plaintiffs asked Defendants to begin review right away at all meetings, and Defendants declined.

Being forced to wait until July to receive the Court-ordered Bates ranges will undoubtedly prejudice Plaintiffs.  Document discovery was intended to be complete almost a year ago, and yet Plaintiffs are still attempting to ensure that Defendants have completed basic discovery tasks.  Given that Defendants have had every chance at this stage to get ahead on this project — knowing, as they have the entire time, that the Court was going to order ***something*** beyond Request 1 — their claim that they need until July is unacceptable.  Nor, given the schedule and the obvious importance of the information at issue in upcoming depositions, is that timing tenable.  Accordingly, the Court should order the project finished by June 17, with rolling productions each Friday before then.[8]

### III. There is No Question the Court Directed this Project as a Sanction — and Defendants' Continued Creative Reading of the Court's Orders Should Be Discouraged.

It is unfortunate we've needed to bring this to the Court.  At the meet and confers on this subject, Defendants largely agreed to the basic facts:  the Court split the hearing into two parts (merits in part 1, sanctions in part 2); the Court ordered this project during part 2; and the transcript was accurate.  Nonetheless, Defendants insisted the Court did not order the production of Bates ranges as a sanction.  The ***only*** explanation they offered for this interpretation was that the Court happened to skip ahead during part 1 and ***also*** sanction them then.  That makes no sense at all.

The record is also not ambiguous.  The Court explicitly directed a break to pull together its sanctions ruling, neatly dividing the first part of the hearing from what the Court called "part 2 [discussing] whether sanctions are appropriate."  2022-04-12 Tr. 5:10-17.[9]  The Court directed the project explicitly because of the "larger overarching issue which was, you know, the City's definitive promise that documents, all documents were going to be produced by July, non-email, non-electronic documents were going to be produced by July 31, and that did not happen."  *Id.* at 72:2-10.  And indeed, as the Court began to enumerate sanctions, Defendants asked the Court not to issue the full version of the sanction Plaintiffs had requested.  *See id.* at 72-73.  And to cap off discussion of the project, the Court concluded, "***that's*** the limit of what I'm doing on sanctions today."  2022-04-12 Tr. at 76 (emphasis added).  As a matter of basic English, Defendants have no possible justification for calling this anything but a sanction.

Labeling the project as a sanction is not merely semantics.  Sanctions are not "assessed lightly" precisely because their aim is to call out, correct, and deter future misconduct.  *Sakon v.*

---

[8] This is especially important because, given Defendants' track record, it seems almost inevitable that this process will reveal still more things Defendants "missed .. and failed to file a motion" about — or "mindful of Rule 26(e)," decided that they "should be able to supplement productions" later.  Dkt. No. 545 at 2.
[9] *See also, id.,* at 63:8-10 (The Court, following argument in the relevant part of the hearing, asking "Anything else on part 2?").

Page 4 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



*Andreo*, 119 F.3d 109, 114 (2d Cir. 1997). Defendants' counsel seem to understand the import of the label in rejecting it and in how they say they handle sanctions orders. As they represented to the Court, "it is [the Law Department's] practice for attorneys to communicate any sanction order promptly to their supervisor who, in turn, communicates the order to their Division Chief who, in turn, notifies the Executive overseeing that Division." Dkt. No. 457 ¶ 2(e). However, it does not appear that anything less than a sanction is so communicated.

Thus, it is of vital importance that this project be deemed a sanction to ensure that Defendants are held accountable — both by this Court and internally by Law Department supervision— in correcting the chart. The chart was meant to be something that, after the Court spent the better part of a year trying to get Defendants "to just state what [the City is] producing and what they're objecting to" (2022-02-11 Tr. 117:19-23), finally forced Defendants to "put up or shut up on all the document requests about what it is you're producing and what is not, what you're not." 2022-02-18 Tr. 99:16- 19. Yet, already, Defendants have explicitly conceded the chart is inaccurate in at least one major way. Dkt. No. 545. So accuracy clearly requires something more. As Defendants letter at Dkt. No. 545 (reflecting the result of a previous non-sanction order) makes clear, ordinary orders do not do the trick. Otherwise, Defendants make clear they believe they "should be able to supplement productions" later regardless of what the chart says. *Id.*

Beyond that, it seems clear Defendants will continue to violate this Court's clear orders and delay the discovery process without clear sanctions **beyond** attorneys' fees for such conduct. *See* Dkt. Nos. 334, 330, and 457; *see also,* 2022-04-12 Tr. 78:19-24 (rejecting a City reading that the discovery end date did not apply to high level depositions, stating "Oh, no, of course it applies."); 2022-02-18 Tr. 118:12-13 ("I think I already ruled on that. Produce [privilege logs] at the same time."). "Unless Rule 37 is perceived as a credible deterrent rather than a 'paper tiger,' the pretrial quagmire threatens to engulf the entire litigative process." *Cine Forty-Second St. Theatre Corp. v Allied Artists Pictures Corp.*, 602 F.2d 1062, 1064 (2d Cir 1979); *see also, e.g.,* 28 U.S.C. § 1927. It is important to put a lid on this practice, given "that the City has failed repeatedly to meet its discovery obligations," been sanctioned eight times for violating clear orders (to say nothing of the orders that it has creatively interpreted), and continues to both (1) violate Court orders and (2) interpret Orders with an eye to violating them without "violating" them.[10]

---

[10] Indeed, yet another deep issue with how the City is interpreting the Court's orders already has surfaced on the docket: the City appears to be interpreting "misrepresentation" in the context of the audit directed in Dkt. No. 526 so narrowly as to be meaningless. *Accord, e.g.,* Dkt. No. 545 (arguing that the chart's false representation that ARGUS would be produced by April 15 was somehow not a "misrepresentation"); *with* Dkt. Nos. 536 and 542 (Defendants claiming that they have not found a single misrepresentation over the course of the entire case); *see also, Jocks v Tavernier*, 97 F Supp 2d 303, 311 (EDNY 2000) ("Ms. Miller was and is disingenuous at best when claiming ignorance… Ms. Miller should be grateful that the parties did not seek personal sanctions against her"); *Martinez v City of NY*, 2018 US Dist LEXIS 13409, at *98 (EDNY Jan. 24, 2018) ("That the defendants and their attorneys continued to insist that they were fully compliant in this context demonstrates that lesser sanctions would not affect the defendants' behavior and would achieve none of the purposes of sanctions.").



In sum, the Court's sanctions orders to date apparently have not deterred Defendants from their selectively creative approach to reading the Court's orders.  *See, e.g., Cine Forty-Second*, 602 F2d at 1064.  Defendants must be required to complete this project fully and accurately so that the Plaintiffs are not further prejudiced as they continue through discovery.  The Court's intention in labeling this as a sanction provides the incentive Defendants require to ensure such accurate completion. Once again, we thank the Court for its continued time and attention.

                  Respectfully submitted,

                    /s/
                  _____

                  J. Remy Green
                    *Honorific/Pronouns: Mx., they/their/them*
                  **COHEN&GREEN P.L.L.C.**
                  *Attorneys for Sow Plaintiffs, on behalf of all Plaintiffs*
                  1639 Centre St., Suite 216
                  Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com