

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK , NEW YORK 10007

**BRIDGET V. HAMILL**
*Senior Counsel*
brhamill@law.nyc.gov
Phone: (212) 356-2662
Fax: (212) 356-1148

**By ECF**  May 27, 2022
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

       In Re: *New York City Policing During Summer 2020 Demonstrations*,
               No. 20 Civ. 8924 (CM) (GWG)

Your Honor:

      I am a Senior Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, representing Defendants in the above referenced matter. Defendants write in response to Plaintiffs' May 23, 2022 Letter Motion for a conference pursuant to Local Rule 37.2 (Dkt. 551).

      On April 19th, one week after the Your Honor ordered this project, Plaintiffs sent an email to Defendants proposing that Defendants should provide Bates numbers for 30 consolidated requests – one third of all of the consolidated requests. As explained in Plaintiffs' May 23rd letter, in accordance with Your Honor's instructions during the court conference on April 12, 2022 (2022-04-12 Tr. 74:9-75:23), the parties met and conferred three times between April 25th and May 11th and reached agreements on the majority of items over which there was initial disagreement. In fact, over the course of the process, Defendants agreed to increase the number for which they will provide Bates numbers to 25 of the 30 Plaintiffs submitted.[1]

      Despite the fact that Defendants' have agreed to provide the requested information for a large number of requests, Plaintiffs are still not satisfied and are refusing to recognize the enormous amount of time and effort that will be required to provide even the information Defendants have agreed to. Plaintiffs want more information, in less time, and seemingly most important, with the Court's assurance that anything Defendants do is part of a sanction. Defendants address Plaintiffs' arguments below.

---

[1] As stated in Plaintiffs' letter, Plaintiffs agreed to Defendants' suggested limitations on the information they will provide concerning four of the Requests – Nos. 20, 31, 32, and 33.

**DISCUSSION**

I. **Defendants' Proposed Timetable is Proportionate to the Scope of Plaintiffs' Demands**

Given the large number and wide scope of the agreed-upon requests and the immense volume of documents that Defendants have collected, reviewed, and produced so far in discovery, conducting the necessary investigation and review for this project is understandably a massive, time-consuming, and labor-intensive endeavor. While the workflow and burden of responding to each request will likely vary, the process undertaken to respond to Request No. 1 is illustrative of the burden Defendants anticipate will be required to respond to many of the agreed-upon requests. To respond to Request No.1, over a nearly two-week period, the case team worked closely with the E-Discovery team and our electronic discovery vendor to create and refine iterative searches within the Law Department's document review platform. Utilizing a combination of searches based upon the content of the documents, the metadata associated with the documents, and the organizational structure of the documents as provided to the Law Department, an initial set of documents was identified. By reviewing metadata exports for this initial set, the case team identified as many responsive (and non-responsive) documents as possible based on metadata alone. A search was then created in our document review platform to compile the remaining uncategorized documents, which were then reviewed by the case team. In total, the case team reviewed the metadata for nearly 7,000 documents and fully reviewed approximately 1,400 documents for this single request Defendants' time estimate for the additional requests takes into consideration that it may be possible to utilize some work product from Request No. 1 to identify Bates numbers for other, related requests and, similarly, that it may be possible to conduct concurrent reviews for certain requests to the extent they are closely related.[2] In order to respond to the Plaintiffs' "contention" requests, the City must interview certain individuals including the staffs of the former Mayor, and the former Police Commissioner to learn what information and documents they relied on before we can do a search for responsive documents. Furthermore, with the upcoming volume of depositions and the multitude of other discovery matters to be done in the same time period, Defendants' time frame is reasonable.

Plaintiffs maintain that they will "undoubtedly" be prejudiced if they are "forced" to wait until July to receive Bates ranges for every Request within the scope of this project. However, the documents (along with their associated metadata) have already been produced to Plaintiffs and Plaintiffs are able to review and conduct their own targeted searches for some of these documents. Your Honor suggested as much when ordering the project. (See Tr. 39:3-4, "I mean the plaintiffs certainly should do their own work."). To be clear, the Defendants agree to produce responses on

---

[2] Seven of the requests that Defendants are providing Bates numbers for should overlap with DR. No. 1, which were already provided. Defendants took that into account in estimating the time it will take to complete this project.

2

a rolling basis and will do so in any order of priority the Plaintiffs provide.[3] However, providing responses for all of the agreed upon Requests before July 22nd is unrealistic and invites further requests for sanctions when the defendants fail to meet a deadline they cannot reasonably meet.

As addressed further below, the largest section of Plaintiffs' letter is spent on the argument that whatever Defendants do with respect to this project, it must be a sanction and it must be the broadest sanction available. Two of the three footnotes in their argument are devoted to disparaging Counsel.[4] Not content to confine their argument to the issue at hand, Plaintiffs support their insinuations with references to docket entries unrelated to this project. In that atmosphere, Defendants are loathe to hurry through and produce a product vulnerable to further sanctions. The parties have agreed to a broad scope of work for this project, all of which will fall on Defendants. We respectfully request that we be afforded the time to complete it properly and accurately.

**II.     Sanctions**

In spite of the length of Plaintiffs' argument on this point, and their disingenuous, gratuitous remarks at Counsel, Defendants' position on the question of whether the Court intended to limit the sanctions element of the project to Request No. 1 is simple, genuine, and grounded in the transcript.

At the April 12th hearing, the Court's order for this project grew out of an exchange concerning how Plaintiffs could identify documents responsive to their requests using the volume numbers provided in the Chart, with Consolidated Request No. 1 as an example. Tr. 23:22-39:3. In the course of the discussion, the Court directed that Defendants be "put to the burden" of identifying documents responsive to "these categories," i.e., "put up or shut up as to what the training documents are." Tr. 38:20-39:7. As the discussion continued, the Court clarified that as a sanction, Defendants would have to "say what you contend, at least as to this category - we can talk about others – what is responsive to docket number 1." Id. at 39:22-40:09. Plaintiffs asked the Court to expand the scope of the project to all of Plaintiffs' document requests, notably, "*before* we move on to the sanction issue." Id. at 56:19-57:19 (emphasis added). The Court then heard the parties on the proposal and put the issue on hold while "hear[ing] from [Plaintiffs] on part 2," id. at 58:9-11, during which Plaintiffs asked that the *sanction* be expanded from Request No. 1 to the entire chart. Id. 67:13-21.

---

[3] If Plaintiffs are amenable to reducing the scope of their demands, Defendants will of course agree to providing the information in less time.

[4] See, e.g., n8 ("[G]iven Defendants' track record, it seems almost inevitable that this process will reveal still more things Defendants "missed . . . and failed to file a motion about."); n10 (citing a 22-year-old decision addressing Division Chief Miller. Notably, plaintiffs' counsel neglected to mention any context for this Court (the matter involved a trial subpoena) and most importantly forgot to mention the subsequent appeal where the Second Circuit reversed the finding of sanctions against the City; vacated a verdict for plaintiff; and remanded the matter for a retrial.). *See Jocks v. Tavernier*, 316 F.3d 128, 138-139 (2d Cir. 2003). Defendants, of course, assume this was not an intentional misleading statement or misrepresentation to this Court.

The Court's ruling explicitly states that it would order limited monetary sanctions, and that the Plaintiffs' proposed prophylactic order at paragraph four of Docket 394 would be entered as a sanction. Id. at 72:11-12, 73:9-13. However, before expanding the number of Requests for which Defendants must provide Bates numbers, the Court stated, "I'm not prepared to order monetary sanctions, . . . but I am going to do *some things* to try to make sure that this case stays on, continues on track as much as possible." Id. at 72:11-15. In light of the foregoing, Defendants' uncertainty lies in whether the Court's ruling with respect to the provision of Bates numbers was an expansion of the sanction or an expansion of the project without additional sanction.

To be clear, Defendants have agreed to provide Bates numbers to Plaintiffs for almost all of the Requests for which they demanded them in response to the Court's order and are in the process of identifying responsive documents. Defendants do not seek relief from the Court's order, only clarity as to its intent.

### III. Production of Bates Numbers for Documents Responsive to Requests 17, 35, and 88 Is Not Within the Scope of the Court's Order

The Court made clear at the April 12th conference that Plaintiffs' proposal of Requests for which Defendants would provide Bates numbers should be limited to documents about which Defendants have particular knowledge and expertise. Tr. at 74:9-75:11. In outlining those parameters, the Court specifically stated, as an example, that there is no special expertise required to identify documents that concern throwing "plastic bottles." Id. at 74:13-17. Nevertheless, Plaintiffs ask the Court to order defendants to identify certain documents responsive to Consolidated Request 88, which seeks "all documents concerning persons at the June 4, 2020, Mott Haven Protest . . . throwing plastic bottles containing liquids and/or Molotov cocktails (including but not limited to identifying videos depicting such acts)." Plaintiffs make no argument that Defendants have specialized knowledge about the documents they would like Defendants to identify. They simply say that they need Defendants to identify documents and video they have not found and which they suspect do not exist.[5] However, it is not within the scope of the Court's order for Defendants to provide such information, and the Court suggested as much. Id. at 74:19-22 ("There's no particular expertise on the part of the defendant to determining something like that. Somebody will find it on the body-worn camera footage or they won't. There may be a time later in the case where a party may be required to be more specific about what evidence they're offering, and it will become clearer.")

---

[5] Plaintiffs limit their request to certain documents or videos concerning Molotov cocktails, as opposed to plastic bottles. However, Defendants see no reason – and Plaintiffs make no argument – as to why the Court's reasoning that no expertise is required to identify documents pertaining to throwing plastic bottles does not apply to throwing Molotov cocktails.

4

Plaintiffs further assert that the Defendants should identify documents responsive to Consolidated Requests 17[6] and 35,[7] by which they seek documents related to Officers disciplined for misconduct during the Protests. Plaintiffs admit that they can search the voluminous CCRB and IAB files and related documents Defendants have produced for information about recommended discipline, but maintain that some responsive documents concerning what discipline officers ultimately did or did not receive are "uniquely within Defendants' expertise." Plaintiffs appear most concerned about documents referenced in a December 23, 2021 article from the New York Post that reports that Police Commissioner Shea failed to impose discipline recommended by the Civilian Complaint Review Board with respect to misconduct by nine officers during the Protests. Plaintiffs again note that they suspect there are few documents of the type they seek, and contend that *if* this is true, providing Bates numbers for the documents will not be overly burdensome for Defendants. Plaintiffs make no allowance for the burden to Defendants of identifying the responsive documents unrelated to the "ultimate discipline imposed," or for the burden to Defendants if their suspicion is *not* correct, or for the burden to Defendants of proving their postulated negative. Given that no particular expertise or knowledge is necessary to identify the majority of documents responsive to these requests, it is not within the scope of the Court's order for Defendants provide Bates numbers for documents responsive to Request Nos. 17 and 35.

### IV.   Conclusion

In conclusion, Defendants respectfully request that the Court permit them the time needed to review and provide the Bates numbers for Document Requests Defendants agreed to. In addition, Defendants submit that while it was clear at the April conference that providing Bates numbers for DR No. 1 was a sanction, it was not for the other requests demanded by the Plaintiffs. Finally, Defendants believe that providing Bates numbers for Document Requests 17, 35, and 88 is not within the scope of the Court's order.

Thank you for your consideration herein.

Respectfully submitted,

*Bridget V. Hamill s/*
Bridget V. Hamill
Senior Counsel
Special Federal Litigation Division

cc:   ALL COUNSEL (via ECF only)

---

[6] "Provide all Documents concerning Officers receiving discipline for misconduct occurring during the Protests, or who have been recommended to receive discipline for such misconduct."

[7] "Provide all Documents concerning any discipline of any NYPD officer for use of racist language during the Protests."