# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: New York City Policing During Summer 2020 Demonstrations | 20 Civ. 8924 (CM)(GWG) |
| This filing is related to: ALL CASES | |

## PLAINTIFFS' FIRST CONSOLIDATED REQUESTS FOR ADMISSION TO CERTAIN DEFENDANTS AND SUPPLEMENTAL INTERROGATORY AND REQUEST FOR PRODUCTION

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, plaintiffs in these consolidated actions[1] ("Plaintiffs") request that defendants the City of New York, Bill de Blasio, Terence Monahan, Sergeant Gypsy Pichardo, Sergeant Keith Cheng, Officer Matthew Tarangelo, Officer Matthew L. Perry, Lieutenant Thomas R. Hardell, Detective Damian Rivera, Officer Jacqueline Vargas, Officer Joseph Deck, Lieutenant Michael Butler, Officer Aaron Husbands, Sergeant Thomas E. Manning, Officer Doe Esposito, and Sergeant Doe Caraballo, answer the following requests for admissions ("Requests") under oath and fully in writing within thirty (30) days of service hereof, or such shorter time as the Court orders or the parties stipulate.

---

[1] Pursuant to the Court's February 22, 2021 Order (ECF No. 40), the following cases have been consolidated for pretrial purposes: *Payne, et al, v. Mayor Bill De Blasio*, No. 20 Civ. 8924; *Sierra, et al, v City of New York*, No. 20 Civ. 10291; *Wood v. City of New York*, No. 20 Civ. 10541; *People of the State of New York v City of New York*, No. 21 Civ. 322; *Sow, et al, v. City of New York*, 21 Civ. 533; *Yates v. City of New York et al*, 21 Civ. 1904; *Gray v. City of New York*, 21 Civ. 6610; *Hernandez v. City of New York*, No. 21 Civ 7406; and *Minett v. City of New York*, 21 Civ. 8161. Plaintiffs in all consolidated actions hereby serve their First Requests for Admissions (RFAs) to Defendant in the consolidated actions without prejudice to plaintiffs in any given action supplementing these consolidated RFAs with additional case-specific RFAs.

## DEFINITIONS

1. "Arrest" means an Officer's seizure, detention, or arrest of a person, including but not limited to for the purpose of issuing them a C-Summons ("summons") or Desk Appearance Ticket ("DAT") or fully processing them for arraignment.

2. "City" and "NYPD" are to be construed to include each other, such that a request for the names of certain New York City Police Department ("NYPD") employees, *e.g.*, should be construed to include employees of any agency of the City of New York.

3. "Complaints" means the Complaint, or any superseding amended Complaint, filed in each of these consolidated actions: *Payne, et al, v. Mayor Bill De Blasio*, No. 20 Civ. 8924; *Sierra, et al, v. City of New York*, No. 20 Civ. 10291; *Wood v. City of New York*, No. 20 Civ. 10541; *People of the State of New York v. City of New York*, No. 21 Civ. 322; *Sow, et al, v. City of New York*, 21 Civ. 533; *Yates v. City of New York et al*, 21 Civ. 904; *Gray v. City of New York*, 21 Civ. 6610; *Hernandez v. City of New York*, No. 21 Civ 7406; and *Minett v. City of New York*, 21 Civ. 8161 (together, the "Actions").

4. "Date" means the exact day and time, month, and year if ascertainable, or if not, the best approximation (including relationship to other events).

5. "Defendants," "You," and "Yours" shall mean the defendants answering these requests for admission.

6. "Officer" means a member of service of the NYPD, regardless of rank, including but not limited to any and all officers, detectives, sergeants, lieutenants, captains, chiefs, and/or deputy commissioners.

7. "*Payne* Defendants" means the named defendants in *Payne v. City of New York*, 20-CV-8924 (S.D.N.Y.), *i.e.*, City of New York, Mayor Bill De Blasio, Chief of Department Terence

2

Monahan, Sergeant Gypsy Pichardo, Sergeant Keith Cheng, Officer Matthew Tarangelo, Officer Matthew L. Perry, Lieutenant Thomas R. Hardell, Detective Damian Rivera, Officer Jacqueline Vargas, Officer Joseph Deck, Lieutenant Michael Butler, Officer Aaron Husbands, Sergeant Thomas E. Manning, Officer Doe Esposito, and Sergeant Doe Caraballo.

8.  "Person" means any natural person, association, business, group, organization, legal entity, government entity, or other entity.

9.  "Protests" means any and all protests, demonstrations, or gatherings on the dates and at the Protest Locations identified on the attached Schedule A and/or referenced in any of the Complaints.

10. "Mott Haven Protest" means the June 4, 2020 protest that began at the Hub in the Bronx and ended on East 136th Street between Brown Place and Brook Avenue.

## INSTRUCTIONS

1.  The answers to these requests for admissions shall specifically admit or deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.

2.  A denial shall fairly respond to the substance of the requested admission.

3.  When good faith requires that a party qualify an answer or deny only a part of the matter to which an admission is requested, the party shall specify the portion that is true and qualify or deny the remainder. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny *only* if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

4.  The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

3

5.   Identify each Person who assisted or participated in preparing and/or supplying any of the information given in a response to or relied upon in preparing the answers to these requests for admissions.

6.   The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive. The word "including" shall be construed to mean without limitation. The words "any" and "all" shall be construed so as to make the request inclusive rather than exclusive.

7.   The singular shall include the plural, and vice versa.

8.   Defendants are under a continuing duty to supplement their responses to these discovery requests without further request from Plaintiffs.

9.   All Requests are directed to the City of New York, Bill de Blasio, and Terence A. Monahan, and the Requests pertaining to the plaintiffs in the *Payne* (*i.e.* Jarrett Payne, Colleen Maitland-McCormack, Andie Mali, Camilla Gini, James Lauren, Vidal Guzman, Matthew King-Yarde, Nicholas Mulder, Charlie Monlouis-Anderle, Julian Phillips and Micaela Martinez) are directed to the *Payne* Defendants.

### REQUESTS FOR ADMISSION TO THE CITY OF NEW YORK, BILL DE BLASIO, AND TERENCE MONAHAN

1.   Admit that the New York Police Department ("NYPD") did not have a policy in the NYPD Patrol Guide or the Administrative Guide specific to policing protests or First Amendment-protected expression prior to December 2020.

2.   Admit that after the Strategic Response Group ("SRG") was created in 2015, through May 28, 2020, non- SRG officers did not receive in-service disorder control training.

3.   Admit that Bill de Blasio and Dermot F. Shea communicated with each other at least once per day between May 29 and June 5, 2020, regarding the NYPD response to the Protests.

4.   Admit that Bill de Blasio and Terence A. Monahan communicated with each other at least once per day between May 29 and June 5, 2020, regarding the NYPD response to the Protests.

5.   Admit that Police Commissioner Dermot F. Shea stated at a June 4, 2020 press conference "You look at the anti-police rhetoric, it disgusts me to my core."

6.   Admit that Mayor de Blasio stated at a press conference on June 5, 2020, that he "had observers from City Hall" present at the rally in Mott Haven on June 4, 2020.

7.   Admit that employees of the Office of the Mayor of New York City were present at the June 4, 2020, rally in Mott Haven, Bronx, and reported back their observations to Mayor de Blasio.

8.   Admit that at a press conference on June 5, 2020, Mayor de Blasio stated regarding the Mott Haven operation: "This is something the NYPD saw coming."

9.   Admit that, at a June 5, 2020, press conference with Mayor de Blasio, Commissioner Shea acknowledged that protesters at the Protests to date "overwhelmingly [] are good people coming out to voice their opinion."
    a.      *See* DEF_000174347.

10. Admit that Police Commissioner Dermot F. Shea stated at the same June 5, 2020 press conference, that the NYPD "had a plan which was executed nearly flawlessly" at Mott Have on June 4, 2020.
    a.      *See* DEF_000174347.

11. Admit that during a June 7, 2020, news conference, Mayor de Blasio was asked: "Did you approve the tactics that we saw the NYPD using, starting on June 3rd and June 4th? That's the use of batons, more sort of pushing of protests, that sort of thing? Did you approve those?" and Mayor de Blasio answered that "I approve the broad strategies and sometimes very specific choices."

12. Admit that during a June 7, 2020, news conference, Mayor de Blasio stated, "I constantly talk to Commissioner about everything I see in those videos."

13. Admit that, during an October 29, 2020 Reform & Reinvention Listening Session, NYPD Chief of Patrol Juanita Holmes stated, "With the officers, to the, just giving them the benefit of the doubt, that they reacted the way they normally react. If they see someone doing something that they perceived to be not within the law, they arrested them, not realizing that protests are allowed—but peaceful protests are allowed."
    a.      *See* NYAG-G-00001360, time stamp 1:09:00 to 1:10:20.

14. Admit that, during an October 29, 2020 Reform & Reinvention Listening Session, NYPD Chief of Patrol Juanita Holmes stated, "We had officers that did things that never should have been done; that's not in alignment with what we stand for as agency."
    a.      *See* NYAG-G-00001360, time stamp 1:11:53 and 1:12:01.

15. Admit that, during an October 19, 2020 Reform & Reinvention Listening Session, then Assistant Chief Matthew Pontillo, of the NYPD Office of the First Deputy Commissioner, stated:

      a.    "Training is crucial to what we do, and it's a never-ending process. So, when you think about a lot of the skills that police officers need to do their jobs, a lot of the tactical skills, those are perishable."; and

      b.    "When we hire young people, they go through the police academy for six months, we give them all the basic skills they need to begin. But then really it's the next 20, 25, 30 years of learning. And we have to understand that there's a cost to that . . . but that training is absolutely essential."; and

      c.    "All of our training curricula materials are also policy and must be complied with and will be the basis for either discipline or some other remedial action if not complied with."
          i.      *See* NYAG-G-00001361, starting at 32:20.

16. Admit that, in a video message released on December 18, 2020 and posted on YouTube, Mayor de Blasio spoke regarding the New York City Department of Investigation's December 2020 report on the Protests, stating, "I read this report and I agree with it. I agree with its analysis and I agree with its recommendations. Because it makes very clear that we gotta do something different and we gotta do something better."
      a.    *See* NYAG-G-00001358, time stamp starting at 0:15.

17. Admit that, in a December 18, 2020 video statement regarding the Protests, Mayor de Blasio "there were things that happened that were not about whether someone made the individual mistake, there were choices made, strategic choices, that weren't good choices it turns out; that end up causing problems. And we have to come to grips with that. We have to train our police force differently."
      a.    *See* NYAG-G-00001358, starting at 3:45.

18. Admit that Defendant Monahan stated on May 29, 2020, that the "vast majority of people are out there to express their views," referring to individuals attending the Protests that had occurred to date.
      a.    *See* NYAG-G-00001359, starting at 3:29.

19. Admit that on February 16, 2021, during a City Council hearing by the Committee on Public Safety, Chief of Patrol Juanita Holmes stated that "four hours of disorder training is not enough."

20. Admit that the time stamp that appears on NYPD body-worn camera footage is in Greenwich Mean Time, which is five hours ahead of U.S. Eastern Standard Time ("EST") and four hours ahead of Eastern Daylight Time ("EDT").

**NYPD's Failure to Take into Account Litigation About Misconduct**

21. Neither the City nor the NYPD made any changes to policing policy, practices, or trainings related to or because of *MacNamara, et al., v. City of New York, et al.*, 04 Civ. 9216

(KMK)(JCF) (S.D.N.Y.), the allegations therein, or any other case related to the police response to protests at the 2004 Republican National Convention.

22. Neither the City nor the NYPD made any changes to policing policy, practices, or trainings related to or because of the following cases, the settlement or resolution thereof, or the allegations therein: *Mandal v. City of New York*, 02-cv-1234 (WHP)(FM) (S.D.N.Y.) and the related decisions (e.g., "Mandal I," No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 02-cv-6537 (WHP), 2006 WL 2950235, at *4-7 (S.D.N.Y. Oct. 17, 2006) and "Mandal II," No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007); *Burley v. City of New York*, 03-cv-2915 (WHP)(FM) 2005 WL 668789 (S.D.N.Y. March 23, 2005); *Allen v. City of New York*, 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006); *Haus v. City of New York*, 03-cv-4915 (RWS)(MHD) 2006 WL 1148680, *1 (S.D.N.Y. April 24, 2006); *Larsen v. City of New York, et al.*, 04-cv-0665 (RWS) (S.D.N.Y.); *Kunstler v. City of New York*, 04-cv-1145 (RWS)(MHD) (S.D.N.Y.); *Abdell. v. City of New York*, 05-cv-8453 (RJS)(JCF) (S.D.N.Y.), *Schiller. v. City of New York*, 04- cv-7922 (RJS) (JCF) (S.D.N.Y.), *Dinler v. City of New York*, 04-cv-7921 (RJS)(JCS) (S.D.N.Y.), *Kyne v. Wolfowitz*, 06-cv-2041 (RJS)(JCF) (S.D.N.Y.); *Callaghan v. City of New York*, 07-cv-9611 (PKC)(JLC) (S.D.N.Y.); *Osterhoudt v. City of New York, et al.*, No. 10-cv-3173 (RJC)(RML), 2012 WL 4481927, at *1-2, (E.D.N.Y. Sept. 27, 2012); the cases listed in *Marisa Holmes v. City of New York, et al.*, 14-cv-5253 (LTS) (S.D.N.Y.) (Dkt. No. 13 ¶ 89); *Gerskovich v. Iocco*, 15-cv-7280 (S.D.N.Y. Berman, J.); *Peat v. City of New York*, No. 12-cv-08230 (S.D.N.Y.); *Packard v. City of New York* 15-cv7130 (S.D.N.Y.) (AT); *Case v. City of New York*, 14-cv-9148 (S.D.N.Y.) (AT); *Clarke v NYC*, 13-cv-(RWS); *Crisp v. NYC*, 12-cv-5482(RWS); *Dedrick v. NYC*, 12-cv-7165(RWS); *Dierken v. NYC*, 12-cv-7462(RWS); *Elliot v. NYC*, 12- cv-992(RWS); and *Hanlin v. NYC*, 12-cv-5844(RWS).

23. The City of New York, in reviewing and revising its protest policing policies, trainings, and practices, does not review or otherwise take into account (i) decline to prosecute decisions, (ii) conviction conversion rates, or (iii) allegations and settlements in lawsuits relating to protests.

24. No protest policing related litigation, settlement, verdict, notice of claim under the General Municipal Law, or allegation between 2000 and May 27, 2020, had any effect on the City's relevant policies, practices, customs, or NYPD training.

**NYPD's Failure to Investigate or Take Seriously White Supremacy**

25. Neither the City nor the NYPD has conducted any investigation into any displays of white power symbols by any NYPD officers since January 1, 2014.

26. Neither the City nor the NYPD has conducted any investigation into any complaint concerning biased policing by any NYPD officers since January 1, 2014.

27. Neither the City nor the NYPD keeps any records of statements that reflect racial bias by NYPD officers.

28. Neither the City nor the NYPD has conducted any investigation into whether NYPD officers other than James Kobel post racist, misogynist, homophobic, and anti-Semitic messages on the website "Law Enforcement Rant."

29. Neither the City nor the NYPD made any changes to policing policy or practices, or imposed any discipline outside of the firing of then Deputy Inspector James Kobel, following the hearing and related proceedings conducted by the City Council.

30. Neither the City nor the NYPD, including the IAB, Intelligence, and Anti-Terrorism divisions, has conducted any investigation into, or any assessment of, NYPD officers' possible affiliations with racist or white supremacist organizations.

31. Neither the City nor the NYPD, including the IAB, Intelligence, and Anti-Terrorism divisions, has conducted any investigation into, or any assessment of, NYPD officers' possible affiliations with the Proud Boys, Oath Keepers, Three Percenters, or other far-right or neo-Nazi organizations.

32. Neither the City nor the NYPD, including the IAB, Intelligence, and Anti-Terrorism divisions, has conducted any investigation into, or any assessment of, NYPD officers' possible affiliations with the Proud Boys, Oath Keepers, Three Percenters, or other far-right or neo-Nazi organizations.

33. Neither the City nor the NYPD, including the IAB, Intelligence, and Anti-Terrorism divisions, has conducted any investigation into, or any assessment of, NYPD officers' participation in online far-right/racist message boards, such as the Law Enforcement Rant site Deputy Inspector James Kobel posted on.

34. Neither the City nor the NYPD has disciplined any officer for the use of racist language during the Protests.

**Keith Boykin**

35. Admit that the video recording produced by Defendant under Bates stamp DEF_000321057 is a true and accurate copy of the body worn camera footage recorded by Sgt. Mitchell Epstein on May 30, 2020, between approximately 3:27 p.m. EDT and 3:40 p.m. EDT.

36. Admit that the video footage produced by Defendant under Bates stamp DEF_000321057, depicts the apprehension and arrest of Keith Boykin on May 30, 2020.

37. Admit that in the video footage produced by Defendant under Bates stamp DEF_000321057, starting at approximately 2 minutes and 39 seconds into the video, the following statements were made. Sgt. Mitchell Epstein stated to Keith Boykin: "Let's go." Mr. Boykin stated "I'm press. CNN." Sgt. Epstein, replied, "I don't care. You can't be in the road. Get off the bike. You're under arrest." Mr. Boykin replied, "OK."

38. Admit that Keith Boykin was apprehended and arrested by NYPD officers on May 30, 2020, at approximately 3:39 p.m. EDT, in the vicinity of the West Side Highway and West 96th Street in Manhattan.

39. Admit that on May 30, 2020, was issued summonses for two offenses, disorderly conduct and unauthorized use of a roadway.

40. Admit that the documents produced by Defendant under Bates numbers DEF_000075618 and DEF_000090674 are true and accurate copies of the summonses issued to Mr. Boykin.

41. Admit that both summonses issued against Mr. Boykin on May 30, 2020, were dismissed.

42. Admit that the document attached hereto as Exhibit A (and which is contained within the document produced by Plaintiffs under Bates number OAG-0396824), is a true and accurate copy of an email sent by Freddi Goldstein, then Press Secretary to Mayor Bill de Blasio, on approximately May 31, 2020, at 12:55 a.m., to Keith Boykin.

**Jemell Cole**

43. Admit that Jemell Cole was apprehended and arrested by NYPD officers on July 15, 2020, at approximately 10:20 a.m., in the vicinity of the Brooklyn Bridge pedestrian path.

44. Admit that the document produced by Defendant under Bates numbers DEF_000046332-34 is a true and accurate copy of the arrest report prepared for the arrest of Jemell Cole.

45. Admit that the NYPD "voided" the July 15, 2020 arrest of Jemell Cole.

46. Admit that the NYPD released Cole from NYPD custody without being charged with any offense.

47. Admit that the document produced by Defendant under Bates number DEF_CCRB_0120887 is a true and accurate copy of the body worn camera footage of Officer Briana Carlo on July 15, 2020.

48. Admit that the document produced by Defendant under Bates numbers DEF_CCRB_0120862-74 is a true and accurate copy of the Activity Log Report of Officer Briana Carlo on July 15, 2020.

**Alexandra Crousillat**

49. Admit that on November 4, 2020, near the intersection of 14th Street and Irving Place in Manhattan and between approximately 9:23:21 p.m. and 9:25:02 p.m. EST, an NYPD officer played the following prerecorded warning through a sound amplification device: "This is the New York City Police Department. You are unlawfully in the roadway and obstructing vehicular traffic. You are ordered to leave the roadway and utilize the available sidewalk. If you do so

voluntarily, no charges will be placed against you. If you remain in the roadway and refuse to utilize the sidewalk, you will be placed under arrest and charged with disorderly conduct."

    a.  See DEF_000320348, DEF_000320349, DEF_000320350.

50. Admit that on November 4, 2020, near the intersection of 14th Street and Irving Place in Manhattan and between approximately 9:25:17 p.m. and 9:25:47 p.m. EST, an NYPD officer played the following prerecorded warning through a sound amplification device: "Since you have refused to leave the roadway, I am ordering your arrest on the charge of disorderly conduct. If you do not accompany the arresting officer voluntarily to the prisoner transport vehicle, or if you resist arrest, you may be charged with additional crimes."

    a.    See DEF_000320350

51. Admit that on November 4, 2020, near the intersection of 14th Street and Irving Place in Manhattan and between approximately 9:26:26 p.m. and 9:27:22 p.m. EST, an NYPD officer played the following prerecorded warning through a sound amplification device: "This is the New York City Police Department. You are unlawfully obstructing pedestrian traffic. You are ordered to disperse now to permit the safe flow of pedestrian traffic. If you do so voluntarily, no charges will be placed against you. If you refuse to disperse, you will be placed under arrest and charged with disorderly conduct."

    a.    See DEF_000320350.

52. Admit that NYPD officers did not provide any other amplified warning or order to disperse other than those referenced in Requests to Admit numbers 49 to 51 on November 4, 2020, between 9:00 p.m. and 9:30 p.m. EST in the vicinity of 14th Street and Irving Place in Manhattan.

53. Admit that Alexandra Crousillat was standing on the sidewalk at the time that an NYPD officer or officers began to effect her arrest on November 4, 2020.

    a.    See DEF_000320372.

54. Admit that Alexandra Crousillat was not ordered to disperse from the sidewalk when she was arrested by NYPD officers on November 4, 2020.

55. Admit that Alexandra Crousillat was recording police activity with her mobile phone when an NYPD officer or officers began to effect her arrest on November 4, 2020.

    a.    See DEF_000320372.

56. Admit that, on November 4, 2020, Alexandra Crousillat informed her arresting officer, Officer Jarvis Onabanjo, that her flex-cuffs were causing her to lose feeling in her fingers.

    a.    *See* DEF_000320368.

57. Admit that Officer Jarvis Onabanjo did not cut or otherwise remove any of Alexandra Crousillat's flex-cuffs on November 4, 2020, until approximately 17 minutes after Ms. Crousillat first complained about their tightness.

    a.    *See* DEF_000320368.

58. Admit that the NYPD does not issue tools to safely remove flex-cuffs to all officers who are issued flex-cuffs.

**Andrew Smith**

59. Admit that on May 30, 2020, near the intersection of Bedford and Tilden Avenues in Brooklyn, NYPD police officer Michael Sher pulled down Andrew Smith's face mask from his face and then sprayed him with Oleoresin Capsicum (OC).

60. Admit that Andrew Smith was participating in a protest at the time that Officer Sher sprayed Smith with OC on May 30, 2020.

61. Admit that Officer Sher did not administer medical aid or seek medical aid for Andrew Smith after spraying him with OC on May 30, 2020.

62. Admit that on May 30, 2020, near the intersection of Bedford and Tilden Avenues in Brooklyn, Officer Sher issued his OC spray against a second Black male protester.

63. Admit that Officer Sher violated NYPD's policy regarding the use of OC spray when he sprayed Andrew Smith with OC spray.

**Dennis Mullikin**

64. Admit that the document produced by Defendant under Bates stamp DEF_000226839 is a true and accurate copy of the Medical Treatment of Prisoner Form created by NYPD on May 31, 2020, relating to Dennis Mullikin.

65. Admit that that the document produced by Defendant under Bates stamp Def_CCRB-00004862 is a true and accurate copy of the Threat, Resistance, and Injury (TRI) Incident Form created by NYPD on June 1, 2020, relating to the arrest of Dennis Mullikin.

66. Admit that at approximately 10:00:13 p.m. EDT on May 31, 2020, SRG officers called for a line formation at the intersection of 12th Street and Broadway in Manhattan.
   a.    *See* DEF_000321006, between 1:55 and 2:10 minutes.

67. Admit that at 10:01:30 p.m. EDT on May 31, 2020, at the intersection of 12th Street and Broadway in Manhattan, SRG 2 Captain Julio Delgado told various NYPD sergeants, "Tell your cops, we are making arrests."
   a.    *See* DEF_000321086, between 1:19 and 1:22 minutes.

68. Admit that at 10:01:33 p.m. EDT on May 31, 2020, Sergeant Brian Verkay ordered NYPD officers lined up at the intersection of 12th Street and Broadway in Manhattan to "move the crowd."
   a.    *See* DEF_000321006, between 3:17 and 3:19 minutes.

69. Admit that at 10:01:32 p.m. EDT on May 31, 2020, NYPD officers lined up at the intersection of 12th Street and Broadway in Manhattan began moving south towards protesters on Broadway, as recorded between 1:25 and 1:45 minutes in the recording produced as DEF_000321086.

70. Admit that at 10:01:57 on May 31, 2020, in the vicinity of 12th Street and Broadway in Manhattan, an NYPD officer played the following prerecorded warning through a sound amplification device: "This is the NYPD. This group has become violent and is creating a disturbance. You are being ordered to disperse. If you do not disperse you will be subject to arrest," as recorded between 1:45 and 2:00 minutes in the recording produced as DEF_000321086 and between 3:34 and 3:45 minutes in the recording produced as DEF_000321006.

71. Admit that NYPD officers did not issue an order to disperse to protesters at the intersection prior to 10:01 p.m. EDT on May 31, 2020.

72. Admit that at 10:01:48 p.m. EDT on May 31, 2020, Dennis Mullikin was walking southbound on Broadway between 12th and 11th Streets in Manhattan when an NYPD officer grabbed Mullikin from behind.
    a.    *See* DEF_000321007

73. Admit that NYPD officers Luis Ortiz (Tax ID 956142), Brenda Olivierre (Tax ID 950977), James Lee (Shield 19325), and Mauricio Thomas (Tax ID 945466), were involved in the apprehension of Dennis Mullikin on May 31, 2020.

74. Admit that NYPD officer James Lee (Shield 19325) did not activate his body-worn camera during the arrest of Dennis Mullikin.

75. Admit that Officer Luis Ortiz used force to arrest Dennis Mullikin, including striking Mullikin's body with his ASP.
    a.    *See* Def_CCRB-00004862.

76. Admit that as a result of the force used by NYPD officers in effecting his arrest, Dennis Mullikin suffered injuries, including swelling and a minor laceration to his face.
    a.    *See* DEF_000226839.

77. Admit that NYPD officer James Lee (Shield 19325) was not disciplined for failing to activate his body-worn camera during the arrest of Dennis Mullikin on May 31, 2020.

78. Admit that no NYPD officer has received command or formal discipline for the injuries Dennis Mullikin sustained during his arrest on May 31, 2020.

**Jillian Primiano**

79. Admit that the document produced by Defendant under Bates stamp DEF_000094595 is a true and accurate copy of a C-Summons issued by the NYPD on June 4, 2020, to Jillian Primiano.

80. Admit that PO Brian P. Destefano (Tax No. 954727) was the "summonsing officer" referenced in the section titled "Factual Allegations" on Jillian Primiano's C-Summons, at DEF_000094596.

81. Admit that PO Brian P. Destefano was not Jillian Primiano's arresting officer.

82. Admit that the name of Jillian Primiano's arresting officer does not appear on DEF_000094595.

83. Admit that PO Brian P. Destefano personally observed Jillian Primiano in purported violation of the Citywide Curfew.

84. Admit that PO Brian P. Destefano did not personally observe Jillian Primiano in purported violation of the Citywide Curfew.

85. Admit that Jillian Primiano's arresting officer personally observed Jillian Primiano in purported violation of the Citywide Curfew.

86. Admit that Jillian Primiano's arresting officer did not personally observe Jillian Primiano in purported violation of the Citywide Curfew.

87. Admit that Jillian Primiano's arresting officer was aware that Ms. Primiano was a healthcare worker prior to her arrest.

88. Admit that PO Brian P. Destefano was aware, prior to June 5, 2020, that healthcare workers were exempt from the Citywide Curfew.

89. Admit that PO Brian P. Destefano was not aware, at any time prior to June 5, 2020, that healthcare workers were exempt from the Citywide Curfew.

90. Admit that PO Brian P. Destefano was not aware, at any time prior to June 5, 2020, that individuals providing medical support or medical services at protests were exempt from the Citywide Curfew.

91. Admit that PO Brian P. Destefano was aware, prior to June 5, 2020, that individuals providing medical support or medical services at protests were exempt from the Citywide Curfew.

92. Admit that Jillian Primiano's arresting officer was not aware, at any time prior to June 5, 2020, that healthcare workers were exempt from the Citywide Curfew.

13

93. Admit that Jillian Primiano's arresting officer was aware, prior to June 5, 2020, that healthcare workers were exempt from the Citywide Curfew.

94. Admit that Jillian Primiano's arresting officer was not aware, at any time prior to June 5, 2020, that individuals providing medical support or medical services at protests were exempt from the Citywide Curfew.

95. Admit that Jillian Primiano's arresting officer was aware, prior to June 5, 2020, that individuals providing medical support or medical services at protests were exempt from the Citywide Curfew.

**Mike Pappas**

96. Admit that the document produced by Defendant under Bates stamp DEF_000090620 is a true and accurate copy of a C-Summons issued by the NYPD on June 4, 2020, to Michael Gregory Pappas.

97. Admit that the document produced by Defendant under Bates stamp DEF_000094595 is a true and accurate copy of a C-Summons issued by the NYPD on June 4, 2020, to Michael Gregory Pappas.

98. Admit that PO Niazul Haque (Tax No. 943349) was the "summonsing officer" referenced in the section titled "Factual Allegations" on Michael Gregory Pappas's C-Summons, at DEF_000094596.

99. Admit that PO Niazul Haque was not Michael Gregory Pappas's arresting officer.

100.    Admit that the name of Michael Gregory Pappas's arresting officer does not appear on DEF_000094595.

101.    Admit that PO Niazul Haque personally observed Michael Gregory Pappas in purported violation of the Citywide Curfew.

102.    Admit that PO Niazul Haque did not personally observe Michael Gregory Pappas in purported violation of the Citywide Curfew.

103.    Admit that Michael Gregory Pappas's arresting officer personally observed Michael Gregory Pappas in purported violation of the Citywide Curfew.

104.    Admit that Michael Gregory Pappas's arresting officer did not personally observe Michael Gregory Pappas in purported violation of the Citywide Curfew.

105.    Admit that Michael Gregory Pappas's arresting officer was aware that Ms. Primiano was a healthcare worker prior to her arrest.

106.     Admit that PO Niazul Haque was aware, prior to June 5, 2020, that healthcare workers were exempt from the Citywide Curfew.

107.     Admit that PO Niazul Haque was not aware, at any time prior to June 5, 2020, that healthcare workers were exempt from the Citywide Curfew.

108.     Admit that PO Niazul Haque was not aware, at any time prior to June 5, 2020, that individuals providing medical support or medical services at protests were exempt from the Citywide Curfew.

109.     Admit that PO Niazul Haque was aware, prior to June 5, 2020, that individuals providing medical support or medical services at protests were exempt from the Citywide Curfew.

110.     Admit that Michael Gregory Pappas's arresting officer was not aware, at any time prior to June 5, 2020, that healthcare workers were exempt from the Citywide Curfew.

111.     Admit that Michael Gregory Pappas's arresting officer was aware, prior to June 5, 2020, that healthcare workers were exempt from the Citywide Curfew.

112.     Admit that Michael Gregory Pappas's arresting officer was not aware, at any time prior to June 5, 2020, that individuals providing medical support or medical services at protests were exempt from the Citywide Curfew.

113.     Admit that Michael Gregory Pappas's arresting officer was aware, prior to June 5, 2020, that individuals providing medical support or medical services at protests were exempt from the Citywide Curfew.

**Mott Haven Protest**

114.     Admit that, on June 4, 2020, prior to 8:00 p.m., SRG officers formed a line across East 136th Street close to Brook Avenue.

115.     Admit that, on June 4, 2020, prior to 8:00 p.m. NYPD officers and officials formed a line across East 136th Street between Brook Avenue and Brown Place.

116.     Admit that, on June 4, 2020, there were persons on 136th Street between the lines of SRG officers and NYPD officers that formed prior to 8:00 p.m.

117.     Admit that the persons on 136th Street between the lines of SRG officers and NYPD officers on June 4, 2020, were not free to leave once the police lines were in place.

118.     Admit that the LRAD announcement that was played on 136th Street between Brown Place and Brook Avenue at or around 8:00 p.m. on June 4, 2020, did not tell persons there to disperse or leave the area.

119.    Admit that the LRAD announcement that was played on 136th Street between Brown Place and Brook Avenue at or around 8:00 p.m. on June 4, 2020, did not say that persons on that street were under arrest or about to be taken into custody, or communicate that information in other words.

120.    Admit that the LRAD announcement that was played on 136th Street between Brown Place and Brook Avenue at or around 8:00 p.m. on June 4, 2020, did not say or explain what persons there could do to avoid being arrested.

121.    Admit that the LRAD announcement that was played on 136th Street between Brown Place and Brook Avenue at or around 8:00 p.m. on June 4, 2020, did not say that it was after 8:00 p.m.

122.    Admit that the LRAD announcement that was played on 136th Street between Brown Place and Brook Avenue at or around 8:00 p.m. did not say that it was past the curfew.

123.    Admit that, on June 4, 2020, OC Spray was sprayed by SRG Sgt. Sindi Sanchez on 136th Street between Brook Avenue and Brown Place.

124.    Admit that no "Molotov cocktails" were thrown on 136th Street between Brook Avenue and Brown Place on June 4, 2020.

125.    Admit that no hammers or wrenches were recovered by any NYPD officer from any person on 136th Street between Brook Avenue and Brown Place on June 4, 2020.

126.    Admit that no firearm or gun was recovered by any NYPD officer from any person on 136th Street between Brook Avenue and Brown Place on June 4, 2020.

127.    Admit that no gasoline can was recovered by any NYPD officer from any person on 136th Street between Brook Avenue and Brown Place on June 4, 2020.

128.    Admit that no incendiary device was recovered by any NYPD officer from any person on 136th Street between Brook Avenue and Brown Place on June 4, 2020.

129.    Admit that no person on 136th Street between Brook Avenue and Brown Place on June 4, 2020, attempted to throw a wheelbarrow onto NYPD officers.

130.    Admit that no NYPD officer found or saw loose cinderblocks or loose bricks in the area of the Hub in the Bronx at any time on June 4, 2020.

131.    Admit that no NYPD officer found or saw loose cinderblocks or loose bricks in the area of 136th Street and Brook Avenue on June 4, 2020.

132.    Admit that no person participating in the Mott Haven Protest caused any property damage during that protest.

133.     Admit that no person participating in the Mott Haven Protest caused any injury to any other person before 8:00 p.m.

134.     Admit that, on June 4, 2020, during the Mott Haven Protest, no amplified sound device was used by the NYPD to make any announcement to the protestors before an LRAD announcement was played at or after 8:00 p.m. in the vicinity of East 136th Street between Brook Avenue and Brown Place.

135.     Admit that, on June 4, 2020, during the Mott Haven protest, NYPD officers permitted the protesters to march from The Hub to Brook Avenue on East 136th Street.

136.     Admit that the following officials met together on June 4, 2020 to plan the response to the Mott Haven Protest: Kenneth Lehr, Terence Monahan, Harry Wedin, John D'Adamo, Edward Delatorre, and Raymond Spinella.

137.     Admit that the following officials met together on June 4, 2020 to plan the response to the Mott Haven Protest: Kenneth Lehr, Robert Gallitelli, Gerard Dowling, James McGeown, David Miller, Joseph Taylor, and Julio Delgado.

138.     Admit that the following officials met on June 4, 2020 to plan the response to the Mott Haven Protest: Kenneth Lehr, Terence Monahan, Harry Wedin, John D'Adamo, Gerard Dowling, Raymond Spinella, David Miller, Robert Gallitelli, Isaac Soberal, Edward Delatorre (Chief of Transit), Kenneth Rice (Legal), Bobby Rice, and John Parker.

139.     Admit that more than 500 NYPD officers were deployed to the Mott Haven Protest on June 4, 2020.

140.     Admit that, on June 4, 2020, Theresa Doherty was employed with the Mayor's Community Affairs Unit ("CAU") and was present at the Mott Haven Protest.

141.     Admit that Theresa Doherty sent an email at approximately 7:57 p.m. on June 4, 2020, that read, "Held up at 136 and Brook." (See DEF-E_45453).

142.     Admit that the email sent by Theresa Doherty at approximately 7:57 p.m. on June 4, 2020, that read, "Held up at 136 and Brook," was sent to New York City employees America Canas, Dustin Ridener, Pinchas Ringel, Jennifer Paez, Natalie Grybauskas, Jeffrey Dupee, Harold Miller, Tahirah Moore, and Andrew Kunkesa. (See DEF-E_45453).

143.     Admit that Theresa Doherty sent an email at approximately 8:03 p.m. on June 4, 2020, that read, "We are trapped at this intersection. Closing in both directions no exit. Being penned in." (See DEF-E_42737).

144.     Admit that the email sent by Theresa Doherty at approximately 8:03 p.m. on June 4, 2020, that read, "We are trapped at this intersection. Closing in both directions no exit. Being penned in," was sent to, among others, New York City employees America Canas, Dustin

Ridener, Pinchas Ringel, Jennifer Paez, Natalie Grybauskas, Jeffrey Dupee, Harold Miller, Tahirah Moore, and Andrew Kunkesa. (See DEF-E_42737).

145.     Admit that, on June 4, 2020, Surey Miranda was employed by the Office of the Mayor and was present at the Mott Haven Protest.

146.     Admit that Surey Miranda sent an email at approximately 8:02 p.m. on June 4, 2020, that read, "Surrounded on both sides on 136th and intersection of Brook ave. Police playing recording on curfew. Now Pd breaking group." (See DEF-E_45457).

147.     Admit that the email sent by Surey Miranda at approximately 8:02 p.m. on June 4, 2020, that read, "Surrounded on both sides on 136th and intersection of Brook ave. Police playing recording on curfew. Now Pd breaking group," was sent to, among others, New York City employees America Canas, Dustin Ridener, Pinchas Ringel, Jennifer Paez, Natalie Grybauskas, Jeffrey Dupee, Harold Miller, Tahirah Moore, and Andrew Kunkesa. (See DEF-E_45457).

148.     Admit that, on June 4, 2020, Marco Carrion was employed as the Commissioner of the Mayor's Community Affairs Unit and was present at the Mott Haven Protest.

149.     Admit that NYPD Detective Barrett reported that the Mott Haven protest was "orderly" as of 7:44 p.m., which was relayed through "indecc notify." (See DEF_E_PD_29184).

**Cameron Yates**

150.     Admit that no New York City employee depicted in videos previously provided as Yates 144, 145 and 514 was wearing an activated body worn camera- ie, a camera that was recording- during the events depicted on Yates 144, 145 and 514.

151.     Admit that Sergeant William Mansour was named as a defendant in a civil case filed in the United States District Court, Eastern District of New York, Docket # 14-CV-2788.

152.     Admit that Ashley Painson was a Plaintiff in a case against Sergeant William Mansour in a civil case filed in the United States District Court, Eastern District of New York, Docket # 14-CV-2788.

153.     Admit that Ashley Painson alleged in a civil case filed in the United States District Court, Eastern District of New York, Docket # 14-CV-2788, that police officers " forcibly grabbed Painson, pulled her arms behind her back, twisting and jerking up her arms at the same time" and that "[b]ecause of the excessive force and pressure exerted against Painson by defendant officers, Painson was caused to sustain multiple fractures on her left arm."

154.     Admit that during a deposition, Ashley Painson stated that William Mansour was the officer who forcibly grabbed Painson, pulled her arms behind her back, twisting and jerking up her arms at the same time" and that "[b]ecause of the excessive force and pressure exerted

against Painson by defendant officers, Painson was caused to sustain multiple fractures on her left arm."

155.    Admit that the City of New York paid Ashley Painson $175,000.00 in settlement of her claims in a civil case filed in the United States District Court, Eastern District of New York, Docket # 14-CV-2788.

156.    Admit that during the events described in a civil case filed in the United States District Court, Eastern District of New York, Docket # 14-CV-2788, Sergeant William Mansour was a Police Officer who had been on the force for less than a year.

157.    Admit that other than investigation conducted by the New York City Corporation Counsel in its defense of a civil case filed in the United States District Court, Eastern District of New York, Docket # 14-CV-2788, no investigation was conducted by the City of New York or any of its agencies into the actions of Sergeant William Mansour in the underlying matter.

158.    Admit that neither the City of New York nor any of its agencies initiated any training, retraining, or discipline of Sergeant William Mansour as a result of any of the events at issue in a civil case filed in the United States District Court, Eastern District of New York, Docket # 14-CV-2788.

## PAYNE PLAINTIFFS

### James Lauren (formally known as Jaime Fried)

159.    Admit that the document produced by Defendant under Bates stamp DEF_000096532-33 is a true and accurate copy of a C-Summons issued by the NYPD on June 4, 2020, to James Lauren.

160.    Admit that the document produced by Defendant under Bates stamp DEF_000096534-35 is a true and accurate copy of a C-Summons issued by the NYPD on June 4, 2020, to James Lauren.

161.    Admit that James Lauren's arresting officer, Damian Rivera, was aware, prior to June 4, 2020, that healthcare workers were exempt from the Emergency Executive Order No. 119, the Citywide Curfew.

162.    Admit that James Lauren's arresting officer, Damian Rivera, was aware that James Lauren was a healthcare worker prior to their arrest on June 4, 2020.

163.    Admit that James Lauren was present at the protest on June 4, 2020 to provide medical services.

164.    Admit that prior to 8:00 PM on June 4, 2020, the NYPD surrounded a group of protesters in the vicinity of 136th Street and Brook Avenue in the Bronx.

165.     Admit that prior to 8:00 PM on June 4, 2020, the NYPD contained a group of protesters in the vicinity of 136th Street and Brook Avenue in the Bronx to a limited area without exit, preventing them from dispersing.

166.     Admit that prior to 8:00 PM on June 4, 2020, James Lauren was in the group of protesters surrounded by the NYPD in the vicinity of 136th Street and Brook Avenue in the Bronx and therefore was not able to disperse.

167.     Admit that no NYPD member of service provided any verbal notice to James Lauren that they were under arrest prior to taking them into custody on June 4, 2020.

168.     Admit that no NYPD officers present at the Mott Haven protest on June 4, 2020, has received command or formal discipline because of their actions at that protest.

169.     Admit that both summonses issued against James Lauren on June 4, 2020, were dismissed without James Lauren appearing in court or being found guilty of an offense.

**Julian Phillips**

170.     Admit that Detective Lee Arroyo did not personally observe Julian Phillips violate Emergency Executive Order No. 119, the Citywide Curfew.

171.     Admit that Detective Lee Arroyo did not personally observe Julian Phillips violate any Penal Law offense.

172.     Admit that Detective Lee Arroyo did not personally issue dispersal orders to Julian Phillips on June 4, 2020.

173.     Admit that Julian Phillips was arrested by NYPD officers on June 4, 2020 at approximately 8:15 P.M. in the vicinity of 136th Street and Brook Avenue in the Bronx.

174.     Admit that prior to 8:00 PM on June 4, 2020, Julian Phillips was in the group of protesters surrounded by the NYPD in the vicinity of 136th Street and Brook Avenue in the Bronx and therefore was not able to disperse.

175.     Admit that Defendants are unable to identify the officers involved with placing Mr. Phillips under arrest.

176.     Admit that Defendants cannot identify any officer who observed Julian Phillips commit any offense.

177.     Admit that the summons issued against Mr. Julian Phillips on June 4, 2020 was dismissed without Mr. Phillips appearing in court or being found guilty of an offense.

**Jarett Payne**

178.    Admit that on June 2, 2020, Office Joseph Sung did not personally observe Jarrett Payne violate Emergency Executive Order No. 119, the Citywide Curfew.

179.    Admit that on June 2, 2020, Officer Joseph Sung did not personally observe Jarrett Payne violate any Penal Law offenses.

180.    Admit that on June 2, 2020, Officer Joseph Sung did not personally issue dispersal orders to Jarrett Payne prior to arresting him.

181.    Admit that on June 2, 2020, Jarrett Payne was bleeding from lacerations on his nose and face when he was arrested by NYPD officers.

182.    Admit that Jarrett Payne was arrested by NYPD officers on June 2, 2020 in the vicinity of 79th Street and 5th Avenue at approximately 8:15pm.

183.    Admit that Defendants are unable to identify the officers involved with placing Jarrett Payne under arrest.

184.    Admit that no NYPD officer has received command or formal discipline for their conduct in arresting Jarrett Payne on June 2, 2020.

185.    Admit that on January 18, 2021 (Martin Luther King, Jr. Day), in the vicinity of Chambers Street and Centre Street (City Hall), Police Officer Matthew Tarangelo pulled Jarrett Payne down to the ground with Mr. Payne's face downwards.

186.    Admit that Officer Tarangelo placed flex cuffs on Jarrett Payne while holding him on the ground.

187.    Admit that Police Officer Tarangelo did not personally issue dispersal orders to Jarrett Payne prior to arresting him.

188.    Admit that Defendants cannot identify any officer that personally issued a dispersal order to Jarrett Payne on January 18, 2021.

189.    Admit that Defendants cannot identify any officer that personally observed Jarrett Payne commit any offense on January 18, 2021.

190.    Admit that Jarrett Payne did not receive medical treatment while in NYPD custody on January 18, 2021.

191.    Admit that the summons issued against Mr. Payne on January 18, 2021 was dismissed without Jarrett Payne appearing in court or being found guilty of an offense.

192.     Admit that no NYPD officer has received command or formal discipline for their conduct in arresting Jarrett Payne on January 18, 2021.

**Colleen Maitland-McCormack**

193.     Admit that on June 28, 2020, in Washington Square Park in Manhattan, NYPD police officer Hensley Caraballo discharged Oleoresin Capsicum (OC) into a crowd of people gathered at the Queer Liberation March.

194.     Admit that Colleen Maitland-McCormack was in the vicinity of the OC Spray discharged by Hensley Caraballo on June 28, 2020.

195.     Admit that Colleen Maitland-McCormack was participating in a protest at the time that Officer Caraballo sprayed McCormack with OC on June 28, 2020.

196.     Admit that prior to officer Hensley Caraballo's discharging of OC, NYPD officers did not give instructions to the crowd of protesters in Washington Square Park on how to disperse on June 28, 2020.

197.     Admit that Officer Caraballo did not administer medical aid or seek medical aid for Colleen Maitland-McCormack at any time on June 28, 2020.

198.     Admit that NYPD officer Hensley Caraballo did not activate his body-worn camera on June 28, 2020 during his use of force by means of OC spray.

199.     Admit that Officer Caraballo's discharge of OC spray on June 28, 2020 violated NYPD Patrol Guide 221-07.

**Andie Mali**

200.     Admit that Andie Mali was standing on the sidewalk, on the corner of Dekalb and Flatbush in Brooklyn, at the time that NYPD officers approached and arrested him on May 30, 2020.

201.     Admit that Andie Mali was observing police arrest a protestor when NYPD officers began to effect his arrest on May 30, 2020.

202.     Admit that Andie Mali was not warned that his actions were subject to arrest before NYPD officers began to effect his arrest on May 30, 2020.

203.     Admit that NYPD officers were involved in the arrest of Andie Mali on May 30, 2020.

204.     Admit that Defendants are unable to identify the officers involved with placing Andie Mali under arrest on May 30, 2020.

205.     Admit that on May 30, 2020, Officer Yahaira Perez-Gutierrez did not personally observe Andie Mali violate any Penal Law offenses.

206.     Admit that the summons issued against Andie Mali on May 30, 2020 was dismissed without Mr. Mali appearing in court or being found guilty of an offense.

207.     Admit that no NYPD officer activated their body-worn camera during the arrest of Andie Mali on May 30, 2020.

208.     Admit that NYPD officers used force to arrest Andie Mali on May 30, 2020.

209.     Admit that NYPD officers struck Andie Mali with batons on May 30, 2020.

210.     Admit that as a result of the force used by NYPD officers in effecting his arrest on May 30, 2020, Andie Mali suffered injuries, including a laceration to his head and bruising on his chest, back, legs and wrists.

211.     Admit that NYPD officers were not disciplined for failing to activate their body-worn cameras during the arrest of Andie Mali on May 30, 2020.

212.     Admit that no NYPD officer has received command or formal discipline for their conduct in arresting Andie Mali on May 30, 2020.

**Camilla Gini**

213.     Admit that Camilla Gini was standing on the sidewalk, on the corner of Dekalb and Flatbush in Brooklyn, at the time that NYPD officers approached and arrested her on May 30, 2020.

214.     Admit that Camilla Gini was observing police arrest a protestor when NYPD officers began to effect her arrest on May 30, 2020.

215.     Admit that Camilla Gini was not warned that her actions were subject to arrest before NYPD officers began to effect her arrest on May 30, 2020.

216.     Admit that NYPD officers were involved in the arrest of Camilla Gini on May 30, 2020.

217.     Admit that Defendants are unable to identify the officers involved with placing Camilla Gini under arrest on May 30, 2020.

218.     Admit that on May 30, 2020, Officer Zakie Karimzada did not personally observe Camilla Gini violate any Penal Law offenses.

219.     Admit that the summons issued against Camilla Gini on May 30, 2020 was dismissed without Ms. Gini appearing in court or being found guilty of an offense.

23

220.     Admit that NYPD officers did not activate their body-worn camera during the arrest of Camilla Gini on May 30, 2020.

221.     Admit that NYPD officers used force to arrest Camilla Gini on May 30, 2020.

222.     Admit that NYPD officers struck Gini with batons on May 30, 2020.

223.     Admit that as a result of the force used by NYPD officers in effecting her arrest on May 30, 2020, Camilla Gini suffered injuries, including a laceration to her head and bruising on her arms, legs and wrists, as well as injuries to her back and neck.

224.     Admit that, on May 30, 2020, Camilla Gini informed NYPD officers that her handcuffs were too tight and causing her injury.

225.     Admit that NYPD officers did not remove or adjust Camilla Gini's handcuffs on May 30, 2020, until she was at the police station.

226.     Admit that NYPD officers conducted a public physical search of Camilla Gini, including lifting up her shirt, when she arrived at the police station on May 30, 2020.

227.     Admit that NYPD officers were not disciplined for failing to activate their body-worn camera during the arrest of Camilla Gini on May 30, 2020.

228.     Admit that no NYPD officer has received command or formal discipline for their conduct in arresting Camilla Gini on May 30, 2020.

**Charlie Monlouis-Anderle**

229.     Admit that the document produced by Defendants under DEF_000001 is a true and correct copy of a C-Summons issued by the NYPD on June 3, 2020 to Charlie Monlouis-Anderle.

230.     Admit that NYPD Officer Taylor Corcoran and NYPD Officer Stephanie Chen were Charlie Monlouis-Anderle's arresting officers on June 3, 2020.

231.     Admit that NYPD Officer Matthew Perry did not personally observe Charlie Monlouis-Anderle commit any penal law offenses on June 3, 2020.

232.     Admit that the summons for Disorderly Conduct issued against Charlie Monlouis-Anderle on June 3, 2020 was dismissed without Monlouis-Anderle appearing in court or being found guilty of an offense.

233.     Admit that Charlie Monlouis-Anderle was not verbally warned that their actions were subject to arrest prior to their arrest on June 3, 2020 at Cadman Plaza.

24

234.     Admit that one or more NYPD officers used force to arrest Charlie Monlouis-Anderle on June 3, 2020.

235.     Admit that one or more NYPD officers used force to put Charlie Monlouis-Anderle in handcuffs and then flex cuffs on June 3, 2020.

236.     Admit that, as a result of the force used by NYPD officers in effecting their arrest, Charlie Monlouis-Anderle suffered injuries, including a fractured right humerus and radial nerve injury and related injuries on June 3, 2020.

237.     Admit that no NYPD Officer requested medical assistance for Charlie Monlouis-Anderle prior to Charlie's presence on a bus on the evening of June 3, 2020.

238.     Admit that no NYPD officer has received command or formal discipline for their conduct in arresting Charlie Monlouis-Anderle on June 3, 2020.

**Vidal Guzman**

239.     Admit that Vidal Guzman was not arrested by the NYPD on May 30, 2020.

240.     Admit that the NYPD Patrol Guide 221-01 requires an officer to advise the offender that physical force or other devices, such as pepper spray, will be used to handcuff/restrain the offender before applying such force and that pepper spray or OC spray will not be used against offenders who are passively resisting.

241.     Admit that the NYPD Patrol Guide 221-07 states that officers should avoid discharging pepper spray or OC spray indiscriminately over a large area for disorder control and that this policy was in effect on May 30, 2020.

242.     Admit that Sergeant Majer Saleh was present on May 30, 2020 at and/or near FDR Drive in the vicinity of South Street and Gouverneur Slip E.

243.     Admit that Sergeant Majer Saleh was carrying pepper spray or OC spray on his person on May 30, 2020.

244.     Admit that Sergeant Majer Saleh discharged pepper spray or OC spray on May 30, 2020 on and/or near FDR Drive in the vicinity of South Street and Gouverneur Slip E.

245.     Admit that protestors were not given an order to disperse at or near FDR Drive in the vicinity of South Street and Gouverneur Slip E prior to being arrested or physically dispersed on May 30, 2020.

246.     Admit that no NYPD member of service requested EMS to respond on May 30, 2020 to provide medical services to individuals who had been pepper sprayed at/or near FDR Drive in the vicinity of South Street and Gouverneur Slip E.

**Matthew King-Yarde**

247.     Admit that Defendants are unable to identify the officers involved in placing physical restraints on Matthew King-Yarde on May 31, 2020.

248.     Admit that NYPD Officer Bryan Rozanski did not personally observe the circumstances leading to Matthew King-Yarde's arrest on May 31, 2020.

249.     Admit that NYPD Officer Bryan Rozanski did not personally observe Matthew King-Yarde commit any violations of the Penal Law offenses on May 31, 2020.

250.     Admit that no other NYPD officer told Officer Bryan Rozanski of the circumstances that led to Matthew King-Yarde's arrest on May 31, 2020.

251.     Admit that Officer Bryan Rozanski independently did not have probable cause to arrest Matthew King-Yarde on May 31, 2020.

252.     Admit Matthew King-Yarde's arrest on May 31, 2020, Arrest ID: M20617134-K (Bates stamped DEF_000112289) was voided.

253.     Admit that the charge of "PL 240.20(6)" "DIS/CON: REUSING TO DISPERSE" that appears on Matthew King-Yarde's voided arrest form, DEF_000112289, was only entered on the form for processing purposes and not because any officer involved in the processing of Matthew King-Yarde had probable cause to believe that he violated that portion of the Penal Law.

**Nicholas Mulder**

254.     Admit that Nicholas Mulder was present at the protest on June 4, 2020 in the vicinity of Penn Street and Wythe Avenue in the Williamsburg neighborhood of Brooklyn, New York.

255.     Admit that Nicholas Mulder was holding a light as part of a crew filming the protest in the vicinity of Penn St. and Wythe Ave on June 4, 2020.

256.     Admit that a film crew for the purposes of newsgathering are media personnel.

257.     Admit that Nicholas Mulder was arrested by the NYPD on June 4, 2020.

258.     Admit that NYPD officers used force to arrest Nicholas Mulder on June 4, 2020.

259.     Admit that, on June 4, 2020, in the vicinity of Penn St. and Wythe Ave. in Brooklyn, New York, Lieutenant Michael Butler used force to get Nicholas Mulder down to the ground.

260.     Admit that an NYPD officer struck Nicholas Mulder with a baton on June 4, 2020.

261.     Admit that an NYPD Officer placed flex cuffs on Nicholas Mulder.

262.     Admit that NYPD Officers did not personally issue verbal dispersal orders to Nicholas Mulder prior to arresting him.

263.     Admit that Lieutenant Michael Butler was aware, prior to June 4, 2020, that members of the media were exempt from Emergency Executive Order 119, the Citywide Curfew.

264.     Admit that Lieutenant Michael Butler was not aware, prior to June 4, 2020, that members of the media were exempt from Emergency Executive Order 119, the Citywide Curfew.

265.     Admit that Lieutenant Michael Butler was aware that Nicholas Mulder was a member of the media prior to his arrest.

266.     Admit that on June 4, 2020, Nicholas Mulder was bleeding from lacerations on his head when he was arrested by NYPD officers.

267.     Admit that as a result of the force used by NYPD officers in effecting his arrest on June 4, 2020, Nicholas Mulder suffered injuries, including a laceration to his head.

268.     Admit that Defendants cannot identify any officer that personally issued a dispersal order to Nicholas Mulder.

269.     Admit that NYPD Officer Aaron Husbands did not personally observe Nicholas Mulder violate Emergency Executive Order 119, the Citywide Curfew.

270.     Admit that NYPD Officer Aaron Husbands did not personally observe Nicholas Mulder violate any Penal Law offenses.

271.     Admit that NYPD Officer Aaron Husbands did not personally issue dispersal orders to Nicholas Mulder.

272.     Admit that the document produced under Bates stamp Payne_363 is a true and accurate copy of a C-Summons issued by the NYPD on June 4, 2020, to Nicholas Mulder.

273.     Admit that the summons issued against Nicholas Mulder on June 4, 2020, was dismissed without Nicholas Mulder appearing in court or being found guilty of an offense.

274.     Admit that no NYPD officer has received command or formal discipline for their conduct in arresting Nicholas Mulder on June 4, 2020.

**Micaela Martinez**

275.     Admit that prior to 8:00 PM on June 4, 2020, Micaela Martinez was in the group of protesters surrounded by the NYPD in the vicinity of 136th Street and Brook Avenue in the Bronx and therefore was not able to disperse.

276.     Admit that protestors were not given an order to disperse in the vicinity of 136th Street and Brook Avenue in the Bronx prior to being placed under arrest on June 4, 2020.

277.     Admit that Micaela Martinez was arrested by the NYPD on June 4, 2020.

278.     Admit that Officer Joselyn Jimenez (Shield Number 14191) was present on June 4, 2020 in the vicinity of 136th Street and Brook Avenue in the Bronx.

279.     Admit that Officer Joselyn Jimenez put flex cuffs on Micaela Martinez.

280.     Admit that Officer Joselyn Jimenez did not adjust or otherwise remove the flex cuffs applied to Micaela Martinez.

281.     Admit that Micaela Martinez's arresting officer, Officer Joseph Deck, was present on June 4, 2020 in the vicinity of 136th Street and Brook Avenue in the Bronx.

282.     Admit that Officer Joseph Deck did not personally observe Micaela Martinez violate Emergency Executive Order No. 119, the Citywide Curfew.

283.     Admit that, on June 4, 2020, Micaela Martinez informed NYPD officers that her flex cuffs were too tight and causing her injury.

284.     Admit that NYPD officers did not remove or adjust Micaela Martinez's flex cuffs on June 4, 2020, until she was at the police van when they put a second set of flex cuffs on her wrists.

285.     Admit that the document produced under Bates stamp Payne_332 is a true and accurate copy of a C-Summons issued by the NYPD on June 4, 2020, to Micaela Martinez.

286.     Admit that the summons issued against Micaela Martinez on June 4, 2020, was dismissed without Micaela Martinez appearing in court or being found guilty of an offense.

## INTERROGATORY

15.     If any of the Responses to the above Requests for Admission are anything other than an unqualified admission, identify any person with knowledge of the subject of said Request(s) for Admission.

## REQUEST FOR DOCUMENTS

102.    If any of the Responses to the above Requests for Admission are anything other than an

unqualified admission, produce any documents concerning the subject of said Request(s) for

Admission.

Dated: February 16, 2022

*/s/ Lillian M. Marquez*
Travis England, *Deputy Bureau Chief*
Gregory Morril, *Assistant Attorney
General*
Lillian Marquez, *Assistant Attorney
General*
Swati Prakash, *Assistant Attorney General*
Conor Duffy, *Assistant Attorney General*
Colleen Faherty *Assistant Attorney
General*
Gina Bull, *Assistant Attorney General*
Office of the New York State Attorney
General
28 Liberty Street, 20th Floor
New York, NY 10005
Phone: (212) 416-6233
Lillian.Marquez@ag.ny.gov

*Counsel for Plaintiff in People of the State of New York v. City of New York et al,
No. 21 Civ. 322*

*/s/ Molly K. Biklen*
Molly K. Biklen
Jessica Perry
Daniel R. Lambright
Lisa Laplace
Christopher T. Dunn
NEW YORK CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
mbiklen@nyclu.org
jperry@nyclu.org
dlambright@nyclu.org
llaplace@nyclu.org

cdunn@nyclu.org

*/s/ Corey Stoughton*
Corey Stoughton
Jennvine Wong
Rigodis Appling
THE LEGAL AID SOCIETY
199 Water Street
New York, NY 10038
(212) 577-3367
cstoughton@legal-aid.org
jwong@legal-aid.org
rtappling@legal-aid.org

*Co-Counsel for Plaintiffs in Payne v. de Blasio, 20 Civ. 8924*


*/s/ Michael Spiegel*
Lance A. Clarke, Esq.
Jason Clark, Esq.
Michael L. Spiegel, Esq.
Joshua S. Moskovitz, Esq.
48 Wall Street, Suite 1100
New York, NY 10005
(212) 729-0952


*Co-Counsel for Plaintiffs in Sierra et al v. City of New York, et al, No. 20 Civ. 10291*

*/s/ Douglas E. Lieb*
Douglas E. Lieb
Alison Frick
10 East 40th Street, Suite 3307
New York, NY 10016
(212) 660-2332
dlieb@kllf-law.com

*Counsel for Plaintiff in Wood v. de Blasio, et al, No. 20 Civ. 10541*
*/s/ Andrew B. Stoll*

Stoll, Glickman & Bellina, LLP
Andrew B. Stoll (AS8808)
300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201
(718) 852-3710
astoll@stollglickman.com

*Counsel for Plaintiff in Yates v. City of New York et al, No. 21 Civ. 01904*

30

**BELDOCK LEVINE & HOFFMAN LLP**

By:

Jonathan C. Moore
David B. Rankin
Luna Droubi
Marc Arena
Deema Azizi
Rebecca Pattiz
Katherine "Q" Adams
Regina Powers

99 Park Avenue, PH/26th Floor
New York, New York 10016
    t: 212-490-0400
    f: 212-277-5880
    e: jmoore@blhny.com
       drankin@blhny.com
       ldroubi@blhny.com
       marena@blhny.com
       dazizi@blhny.com
       rpattiz@blhny.com
       qadams@blhny.com
       rpowers@blhny.com

**WYLIE STECKLOW PLLC**

By: Wylie Stecklow
Wylie Stecklow PLLC
231 West 96th Street
Professional Suites 2B3
NYC NY 10025
t: 212 566 8000
Ecf@wylielaw.com

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By:

Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com
       jessica@femmelaw.com

**LORD LAW GROUP PLLC**

Masai I. Lord
14 Wall St., Ste 1603
New York, NY 10005
P: 718-701-1002
E: lord@nycivilrights.nyc

31

*Co-Counsel for Plaintiffs in Sow et al v. City of New York et al, No. 21 Civ. 00533*

DAVIS WRIGHT TREMAINE LLP

By: /s/ Robert D. Balin
   Robert D. Balin
   Abigail B. Everdell
   Kathleen Farley
   Nimra Azmi
1251 Avenue of the Americas, 21st Floor
New York, NY  10020
Phone: (212) 489-8230
Fax: (212) 489-8340
robbalin@dwt.com


Mickey H. Osterreicher
General Counsel
National Press Photographers Association
70 Niagara Street
Buffalo, NY 14202
Phone: (716) 983-7800
lawyer@nppa.org

Alicia Calzada (*pro hac vice*)
ALICIA WAGNER CALZADA, PLLC
Deputy General Counsel
National Press Photographers Association
12023 Radium , Suite B1
San Antonio, TX 78216
Phone: 210-825-1449
Alicia@calzadalegal.com

Wylie Stecklow
WYLIE STECKLOW PLLC
Carnegie Hill Tower
152 W. 57th Street, 8th FLoor
NY NY10019
(t) 212 566 8000
ecf@WylieLAW.com


*Attorneys for the Gray Plaintiffs*

**GIDEON ORION OLIVER**


*Attorney for Sow, Hernandez and Minett Plaintiffs*
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com


**COHEN&GREEN P.L.L.C.**


By:
Elena L. Cohen
J. Remy Green
Jessica Massimi

*Attorneys for Sow, Hernandez and Minett Plaintiffs*
1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
elena@femmelaw.com
remy@femmelaw.com
jessica@femmelaw.com

33

# EXHIBIT A

**To:** Metz, Brian[Brian.Metz@ag.ny.gov]; Tucker, Brooke[Brooke.Tucker@ag.ny.gov]
**From:** Keith Boykin[kb@keithboykin.com]
**Sent:** Mon 6/8/2020 2:05:31 PM Eastern Standard Time
**Subject:** Fwd: My sincerest apologies
**Attachment:** Keith Boykin - desk ticket.jpg
**Attachment:** Keith Boykin - Police Arrest.jpg

[EXTERNAL]

Thanks for taking the time to interview me today.

Attached please find

1. A copy of the two police desk tickets. (Attached)

2. A photo of the officers who arrested me on May 30, 2020. (Attached)

3. A link to the video I took of the protesters marching onto the West Side Highway.
https://twitter.com/keithboykin/status/1266806424719577088

4. A link to the video of my appearance on CNN describing the arrest.
https://twitter.com/keithboykin/status/1267106995116609536

5. A copy of the email from the mayor's office apologizing to me for the arrest. (Forwarded email below)


---------- Forwarded message ---------
From: **Goldstein, Freddi** <FGoldstein@cityhall.nyc.gov>
Date: Sun, May 31, 2020 at 12:55 AM
Subject: My sincerest apologies
To: publicity@keithboykin.com <publicity@keithboykin.com>


Keith - My name is Freddi Goldstein, and I'm Mayor de Blasio's Press Secretary. I want to apologize for what happened to you today. It never should have happened. We are working with the NYPD to dismiss your summons, and will let you know when it is finalized in the morning.

Confidential / PII