

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMESDIVISION OF SOCIAL JUSTICE
ATTORNEY GENERALCIVIL RIGHTS BUREAU

June 10, 2022

**By Electronic Filing**

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

Re:   *In re: New York City Policing During Summer 2020 Demonstrations,*
      *No. 20-CV-8924*
      This Letter is Related to All Cases

Dear Judge Gorenstein:

I write on behalf of all Plaintiffs in these consolidated cases in opposition to Defendants' motion to extend the time to respond to Plaintiffs' First Consolidated Requests for Admission (RFAs) dated February 16, 2022, or to withdraw or amend their automatic admissions under Federal Rule of Civil Procedure 36(b). The RFAs largely seek to confirm facts readily apparent from Defendants' own productions. Defendants' inexcusable neglect in failing to respond to them does not warrant an extension of time or permission to withdraw their admissions.

Contrary to Defendants' suggestion that Plaintiffs have "deemed" the RFAs admitted, ECF No. 578 ("Mot.") at 1, the RFAs are admitted by operation of law. When Defendants did not object to or answer within 30 days of Plaintiffs serving their RFAs, as they admit happened, *see id.*, the self-executing Rule 36(a)(3) automatically deemed the RFAs admitted. *See DeNicola v. Frontline Asset Strategies*, 279 F.R.D. 214, 215 (E.D.N.Y. 2012) ("[T]he court need not deem the requests to admit admitted. Pursuant to Rule 36(a)(3), [admission of RFAs] is the automatic result of a failure to timely respond."). Courts throughout this circuit routinely uphold such automatic admissions. *See, e.g., Buffalo Laborers Welfare Fund v. Di Pizio Construction Co.*, 318 F. Supp. 3d 591, 597 (W.D.N.Y. 2018) (plaintiffs' requests deemed admitted where defendant did not serve responses for approximately four months). Nothing warrants departure from that "well settled" principle here. *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966).

###   I.  Defendants' Inexcusable Neglect Cannot Justify an Extension of Time

Defendants' gross disregard of deadlines in this case precludes the extension of time they seek. Only "excusable neglect" may warrant an extension to respond to RFAs *after* the deadline

has passed. Fed. R. Civ. P. 6(b)(1). Courts consider four factors in determining excusable neglect: (1) "the danger of prejudice to the non-movant," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Alexander v. Saul*, 5 F.4th 139, 148 (2d Cir. 2021) (brackets omitted) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "[I]t is the third factor—the reason for the delay—that predominates." "The burden of proving excusable neglect lies with the [ ] claimant." *Id.* "Mere oversight" and the inability to manage one's caseload do not constitute excusable neglect, *Leidig v. BuzzFeed, Inc.*, 258 F. Supp. 3d 397, 400 (S.D.N.Y. 2017), nor does the "failure to follow the clear dictates of a court rule," *In re Lynch*, 430 F.3d 600, 604 (2d Cir. 2005); *Morisseau v. DLA Piper*, 255 F.R.D. 127, 129 (S.D.N.Y. 2008); *see also In re Bank of Am. Corp. Sec., Deriv., and ERISA Litig.*, No. 10 Civ. 2284, 2013 WL 2443748, *6 (S.D.N.Y. June 5, 2013) ("Preoccupied and 'overworked' staff does not establish excusable neglect, and neither does inadvertence."). Defendants fail to justify their neglect here.

Plaintiffs served their RFAs on *eight* attorneys representing Defendants in the Law Department on February 16, 2022, including the attorney who made the instant motion.[1] All eight attorneys have failed to respond to the RFAs to date. Rather than take responsibility for their collective failure to respond, Defendants blame their former colleague Dara Weiss for not calendaring the response date and bury the fact that all counsel received service of the RFAs in a footnote. Mot. at 3 n.3.[2] Defendants incredibly claim that Ms. Weiss was the *sole* attorney responsible for responding to eight litigation teams' hundreds of requests and for calendaring them. Mot. at 3. This excuse defies logic and fact — and it wears thin.[3]

Specifically, other Defendants' counsel have participated in responding to Plaintiffs' requests to date, not just Ms. Weiss. On March 18, the same day Defendants' responses to Plaintiffs' RFAs were due, Defendants' counsel Nadine Ibrahim responded to RFAs made

---

[1] Plaintiffs emailed the RFAs to Dara Weiss, Amy Robinson, Genevieve Nelson, Jenny Weng, Nadine Ibrahim, Daniel Braun, Giancarlo Vecchiarelli, and Shannon Riordan. With the exception of Ms. Nelson and Mr. Vecchiarelli, these counsel have entered their appearance on the docket on behalf of Defendants (though Ms. Nelson has appeared at court conferences and filed documents on behalf of Defendants).

[2] Defendants also omit reference to this fact from their partial quotation of Plaintiffs' position. Mot. at 1. Plaintiffs' full response to Defendants' request for an extension was: "All Defendants' counsel who are on this email were sent the RFAs in February. Plaintiffs maintain their position that these matters are admitted by automatic operation of Rule 36 and do not consent to vacatur of those admissions."

[3] For that matter, at least as far as staffing goes, the excuse was wearing thin before Defendants missed this deadline. Plaintiffs served the RFAs on February 16. Just five days earlier, Defendants were in Court, responding to Plaintiffs' and the Court's concerns about the staffing of the case, and when Plaintiffs complained that it seemed Ms. Weiss was the only attorney working on the case, the City was indignant: "Your Honor, respectfully, as I'm sure the Court knows and plaintiffs' counsel, I am not the only attorney on this case. These cases are fully staffed by a full team of attorneys and paralegals." 2022-02-11 Tr. 49:18–24. Defendants cannot have it both ways.

separately by the *Gray* plaintiffs. Ms. Ibrahim, Shannon Riordan, and Daniel Braun have also signed responses to discovery requests from other consolidated plaintiffs' teams. It therefore cannot be true that Ms. Weiss bore sole responsibility for responding to all requests in this complex consolidated litigation.

Defendants' excuse is not new. This marks the third time that Defendants have publicly scapegoated Ms. Weiss for such negligence — in addition to doing so many times privately. *See, e.g.,* ECF No. 549 at 2 ("Given the fact that the defense team has lost a senior person who was handling a number of discovery matters…"); ECF No. 539 at 1 ("the undersigned was recently assigned…"; "The undersigned was not present…"). But responsibility for this matter lies with the entire litigation team of attorneys who represent Defendants in this case, and the consequences of their inaction necessarily befall their client. "[I]t is well settled that a party is presumed to be adequately represented by the counsel of its choice, and hence the failure of counsel—if such it be—to provide timely discovery responses is imputed to the client." *Beberaggi v. New York City Transit Auth.*, No. 93 CIV. 1737 (SWK), 1994 WL 18556, at *3 (S.D.N.Y. Jan. 19, 1994). "Mere oversight" of a deadline is not excusable neglect and thus does not warrant an extension here. *Leidig*, 258 F. Supp. 3d at 400.

Further, it was entirely "within the reasonable control of the movant" to timely respond to the RFAs. *Alexander*, 5 F.4th at 148. This Court has repeatedly warned counsel, "[i]f the case is not sufficiently staffed, it needs to be sufficiently staffed." 2022-02-11 Tr. 55:2–4. At a February 11, 2022, the Court specifically stated that "if the only explanation [for failing to meet discovery deadlines] is going to be, well, we can't keep up, that's just not an acceptable explanation. What's going on here is just of the character of what might be expected in a case like this." 2022-02-11 Tr. 57:15–57:19. Nevertheless, Defendants continued to understaff this case. Ms. Weiss has, at least following her departure, acknowledged that. Benjamin Weiser, *N.Y.C. Lawyer Fired Over Handling of George Floyd Protesters' Lawsuits*, N.Y. TIMES (May 3, 2022) (describing this case as being "without adequate Law Department resources for more than a year). *But see* 2022-02-11 Tr. 49:18-24 (Ms. Weiss saying the opposite to the Court); ECF No. 466 ¶ 2 (in response to an Order, Ms. Miller assuring the Court the case was adequately staffed).[4] The Court has attempted to repair the damage done by Defendants' understaffing and counsel's discovery misconduct, ordering the Law Department to review all their discovery responses and commitments for any missed deadlines or productions or misrepresentations. *See* ECF Nos. 526, 546. Despite these efforts, Defendants did not identify the missed RFA deadline (or, indeed, other missed deadlines like the April 15 production deadline for ARGUS video, the May 27 deadline to provide ARGUS video Bates stamps, and, most recently, the June 3 deadline to provide an ARGUS declaration), until Plaintiffs alerted Defendants to it. Defendants' neglect is ultimately inexcusable and cannot justify an extension of time *nunc pro tunc*.

---

[4] In fact, on March 28, 2022, prior to the departure of Ms. Weiss, Patricia Miller filed a declaration with this court under penalty of perjury stating that "the Team has a shared calendar posting all events/deadlines." *See* ECF No. 466. Ms. Miller declared that there were three supervisors on this case; 6 litigation attorneys that spend between 80 and 100% of their time on this case, three "e-discovery" attorneys; and four support staff on the case. *Id.*

Finally, Defendants' attempt to blame Plaintiffs for Defendants' own failure to follow the rules falls flat. Defendants note that "in the normal course of practice on these cases, a reminder would be sent to opposing counsel advising that responses were pas[t] due." ECF No. 578 at 3 n.4. That much is true, as far as it goes: Defendants have missed so many deadlines in this case that Plaintiffs have repeatedly been forced to remind Defendants of deadlines set by Rule and by order of the Court in order to move the case forward. That fact supports consequences for the City's pattern of inexcusable neglect, not shifting the blame to Plaintiffs. Indeed, Plaintiffs had no reason to follow up on this particular deadline because the RFAs were admitted once it passed and no further action by any party was required. And Defendants fail to prove that an extension of that deadline is warranted.

## II. Defendants' Admissions Should Not Be Withdrawn or Amended as a Matter of Discretion

The Court should not exercise its discretion to absolve Defendants of their inexcusable neglect by allowing them to withdraw or amend their admissions. Rule 36(b) permits a party to withdraw or amend an admission *only* "(1) when the presentation of the merits will be aided *and* (2) no prejudice to the party obtaining the admission will result." *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983), *overruled on other grounds* by *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) (*citing Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir.1966)). "Even where both of these criteria are satisfied, the court is not required to permit the withdrawal or amendment" because the Rule is permissive, not mandatory. *See Weinberger v. Provident Life & Cas. Ins. Co.*, No. 97 CIV. 9262 (JGK)(HBP), 1999 WL 225537, at *1 (S.D.N.Y. Apr. 19, 1999) (citing *Donovan,* 703 F.2d at 652); *Beberaggi v. New York City Transit Auth.,* 93 Civ. 1737 (SWK)(MHD), 1994 WL 18556 (S.D.N.Y. Jan. 19, 1994). "Vesting such power in the district court is essential for Rule 36 admissions effectively to narrow issues and speed the resolution of claims." *Donovan*, 703 F.2d at 652 (citing Developments in the Law—Discovery, 74 Harv. L. Rev. 940, 969–70 (1961)).

Courts have held that the first prong of the test is satisfied "when upholding the admission would practically eliminate any presentation on the merits of the case." *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 537 F. Supp. 3d 497, 500 (S.D.N.Y. 2021) (citing cases); *see also Garden City Boxing Club, Inc. v. Rice*, No. 04-Civ-3100 (KNF), 2005 WL 613249, at *4 (S.D.N.Y. Mar. 14, 2005) ("Permitting a party to dispute a central issue in an action may serve the presentation of the merits of an action."). In considering whether the presentation of the merits will be improved by permitting an admission to be revised, this Court has considered whether the movant provided any evidence that the admissions were contrary to actual fact. *Id.* The prejudice contemplated by the second prong refers to "'special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.'" *River Light V, L.P. v. Lin & J Int'l, Inc.*, 299 F.R.D. 61, 63 (S.D.N.Y. 2014) (citation omitted). Neither prong of the Rule 36(b) standard is satisfied here.

Hon. Gabriel W. Gorenstein
June 10, 2022
Page 5

### A. Defendants Fail to Show their Admissions are Counter-Factual or Preclude Any Presentation of the Merits

Defendants do not provide proposed responses to Plaintiffs' RFAs or argue that any of the requests are "contrary to actual fact." *Collector's Coffee Inc.*, 537 F. Supp. 3d at 500.[5] Instead, they assert that upholding these admissions could "practically eliminate any presentation of the merits of a large swatch of the consolidated cases." Mot. at 2. Further inspection of the RFAs belies that assertion.

The RFAs can be summarized as seeking admissions of fact relating to roughly four categories: (1) the attribution of a public statement to a speaker, including named defendants Bill de Blasio and Terence Monahan; (2) the existence or non-existence of a written policy or training; (3) whether any kind of investigation or discipline occurred regarding a specific incident or type of incident; and (4) specific evidence pertaining to witnesses and plaintiffs in the *People* and *Payne* actions. As to the first category, Defendants argue that these statements are "already attributed to a speaker." It seems, then, that Defendants do not dispute that the purported speakers in fact stated the words attributed to them in RFA numbers 5, 6, and 8–19 — and Plaintiffs need these admissions because Defendants denied these facts in their answers. *See, e.g.,* Dkt. No. 94 (*People* FAC) ¶ 49; 21-cv-322 Dkt. No. 117 ¶ 49; *cf. Barnes v Shul Private Car Serv., Inc.*, 59 Misc. 2d 967, 968 (Sup. Ct., Kings Cnty. 1969) (under the far more restrictive state equivalent, noting "[i]t is exactly because the defendant's answer makes these matters controversial that CPLR 3123 is brought into play in order to take them out of controversy"). Those admissions should not be disturbed. *See Boyd v. Does It Even Matter, LLC*, No. 19 CV 5342 (DLI)(LB), 2021 WL 7209779, at *3 (E.D.N.Y. Apr. 8, 2021) (denying withdrawal of admissions which plaintiffs separately admitted).

Defendants next argue that "many of these requests ask defendants to admit that they violated specific policies or certain requirements under various laws," and claim that these types of requests "constitute an improper use of Rule 36." Mot. at 2. Defendants do not specify which requests they believe are improper and the Court should decline to guess. Even upon review of the RFAs, it is not readily apparent which ones admit violation of "certain requirements under various laws." It appears that only two requests ask to confirm a violation of NYPD policy, specifically that Officers Michael Sher and Henry Caraballo's discharge of pepper spray violated the Patrol Guide. ECF No. 578-1 (Requests No. 63, 199). However, Defendants do not argue that these statements are inaccurate; indeed, the City itself is pursuing disciplinary charges against Officer Sher under the theory that he violated the NYPD policy on the use of pepper spray. Ex. A.[6] Regardless, such requests are proper. *See* Fed. R. Civ. P. 36(a)(1) (permitting requests to admit "facts, the application of law to fact, or opinions about either" and the "genuineness of any

---

[5] Defendants note that there are two factually inconsistent admissions. Mot. at 2 n.1. This scrivener's error does not affect the presentation of merits at all as they would have the effect of canceling each other out.

[6] Pursuant to the Court's Individual Rule 2E, as a document marked confidential by Defendants, Defendants shall make the application for its sealing.

described documents"); *Beberaggi v. New York City Transit Auth.,* 93 Civ. 1737 (SWK)(MHD), 1994 WL 18556, at *4 ("[A] party is permitted to pose a Rule 36 request that calls for the application of legal principles to a set of facts.").

Further, these admissions do not "eliminate any presentation of the merits." The majority of these requests seek to narrow the issues in contention based on what appears to be conclusive from evidence provided by Defendants, as is the goal of Rule 36. *See Donovan*, 703 F.2d at 652 (the "Second Circuit has signaled that the trial court should keep in mind the underlying policy of Rule 36 'to narrow issues and speed the resolution of claims'"). For instance, many of the requests that fall within the fourth category of documents seek to confirm the genuineness and creator of records produced by Defendants (such as body-worn camera footage), who arrested or issued summonses to plaintiffs or witnesses, and the series of events that occurred as depicted in Defendants' footage or paperwork. Requests that fall into the third category similarly seek to confirm Defendants' documents —that certain officers were not disciplined for conduct relating to the protests or investigated at all by Defendants. This is not the end of the inquiry regarding the City's liability. Rather, many of these admissions pertain to line-level officers and Defendants make no argument that their ultimate *Monell* liability is established through these admissions. *Cf. River Light V, L.P.*, 299 F.R.D. at 64 (finding admissions may be dispositive of infringement action when defendants are deemed to have admitted that the Accused Products are "counterfeit" and infringe plaintiffs' trademarks and copyright, that defendants knew of this, and that any of defendants' rights with respect to its design were abandoned).

Because Defendants make no effort to contest the accuracy of the admissions and fail to establish that they will foreclose any presentation on the merits, they fail to meet the first prong of Rule 36(b) and their motion should be denied. *Collector's Coffee Inc.*, 537 F. Supp. 3d at 500 (denying withdrawal of admissions absent effort to challenge accuracy of admissions); *SEC v. Thrasher*, No. 92 CIV. 6987, 1996 WL 460148, at *2 (S.D.N.Y. Aug. 13, 1996) ("The inappropriateness of relieving [defendant] of his deemed admissions on these requests is further underscored by his failure to demonstrate that any of the requests call for admissions that are plainly inconsistent with the facts.").

### B.    Plaintiffs Will Be Prejudiced If the Admissions are Withdrawn

Defendants have waited over three months to seek their extension to respond to these RFAs and now ask for two more months to answer them. Mot. at 1. The delay threatens Plaintiffs' ability to establish these facts given the possibility that there will be insufficient time to call necessary witnesses.

Plaintiffs intended to utilize these RFAs to not only narrow the issues in contention, but also to pare back on the number of depositions necessary to establish these facts. In reliance on these admissions, Plaintiffs did not call certain line-level officers to establish facts related to the incidents in the RFAs. Due to the unions' intervention, depositions were stayed for months, and Plaintiffs have recently learned from a meet and confer that Defendants have done nothing during that stay (or since May 17, when the appellate mandate issued and depositions could have

restarted) to begin scheduling the delayed depositions. With the real possibility that depositions will not start again until July, and the fact that the currently-noticed depositions cannot be conducted on the current discovery schedule (or even one that extends to the end of the year), Plaintiffs may not have the opportunity to depose the additional witnesses necessary should Defendants' admissions be withdrawn. Defendants' failure to establish either this or the first prong of the Rule 36(b) withdrawal standard are fatal to the motion.

      However, should the Court grant Defendants' motion to any extent, Plaintiffs ask that the Court mitigate the prejudice to Plaintiffs by: (1) ordering Defendants to confer with Plaintiffs regarding what subset of admissions, not to exceed 50, they want to withdraw or amend; and (2) shortening the time to respond to those RFAs to two weeks, to allow for the noticing of additional deponents which are the subject of current conferrals.

Respectfully submitted,

Lillian M. Marquez
Assistant Attorney General
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-6401
Lillian.Marquez@ag.ny.gov

CC: All counsel of record (by ECF)