

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**STEPHANIE M. BRESLOW**
*Senior Counsel*
sbreslow@law.nyc.gov
Phone: (212) 356-2660
Fax: (212) 356-1148

**By ECF**

June 15, 2022

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    In Re:  *New York City Policing During Summer 2020 Demonstrations*,
              No. 20 Civ. 8924 (CM) (GWG)

Your Honor:

      I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. I write in accordance with Rule 2.A of the Court's Individual Rules to respectfully oppose plaintiffs' June 7, 2022 letter to the Court, seeking to compel certain discovery (Dkt No. 586).

      Plaintiffs' letter is mired in errors of law and fact, as it relies almost entirely on speculation and baseless assertions. Most disturbing, however, are counsel's disingenuous efforts to deny that, as of April of 2021, the parties had agreed upon a set of electronic discovery production specifications ("ESI Specs"), that explicitly allow for the withholding of non-responsive documents within responsive families. Now, over a year later and following defendants' production of tens of thousands of documents in accordance with that agreement, plaintiffs have reneged and seek to shift blame to defendants for the instant dispute, which defendants have attempted to resolve through compromise. Plaintiffs' position is not supported by case law, the Court's Orders, or the agreement between the parties, and their requests should be denied.

**Factual Background**

      On March 23, 2021, counsel for defendants circulated to plaintiffs' counsel in the (then) six consolidated protest cases a copy of proposed ESI Specs. *See* Exhibit A. On April 1, 2021, plaintiffs' counsel responded by email attaching a redlined version of the ESI Specs, with the proposed insertion of one sentence in track changes. *Id.* at 1; *see also* Exhibit B (redlined ESI Specs), at 2. On April 16, 2021, defendants' counsel replied to plaintiffs' counsel, accepted plaintiffs' revision, and confirmed that the parties had reached an agreement as to the ESI Specs. *See* Exhibit C.

The ESI Specs document is short and straightforward. It consists of four pages, two of which contain sparse text; the other two comprise a table. The second page lists four brief provisions, one of which states, in relevant part: "…[I]f a document within a responsive family is **fully withheld** for privilege **or non-responsiveness**, a Bates-stamped, single page TIF placeholder indicating either 'Document Withheld for Privilege' or '**Document Withheld for Non-Responsiveness**' should be included as the corresponding image for the withheld file." *See* Ex. B (ESI Specs), at 2 (emphasis added). In the weeks after receiving the ESI Specs and prior to the parties' agreement on April 16, 2021, plaintiffs did not ask any questions pertaining to the section of the ESI Specs which set forth defendants' express intent to withhold non-responsive documents and to slip-sheet non-responsive documents within responsive families. Nor did plaintiffs raise any objections to or seek modifications of this provision. Significantly, plaintiffs did propose a revision to a different section of the ESI Specs and even followed up to confirm that defendants agreed to the modified language.

Despite this clear agreement, memorialized in email (*see* Exs. A, B), plaintiffs' counsel recently denied that they had ever agreed to the practice of withholding non-responsive member documents within responsive families. Yet, that is precisely what is set forth in the agreed upon ESI Specs. *See* Ex. B (ESI Specs), at 2. The fact that Plaintiffs' First Consolidated Set of Requests for Production of Documents to All Defendants unilaterally demands that documents be produced with all corresponding attachments has no bearing in the face of the parties' subsequent agreement to the contrary. Moreover, non-responsive documents are beyond the scope of discovery pursuant to the Federal Rules.

Further, given that defendants have been producing documents on a rolling basis since the summer of 2021, plaintiffs could have raised their concerns regarding defendants' withholding of documents and/or redacting on the basis of non-responsiveness many, many months ago, while defendants' document review was ongoing. That way, the parties or the Court could have resolved these issues when they first arose, and defendants could have adapted their review and production practices as necessary, rather than face the potential severe prejudice confronting them now: countless hours, efforts, and expenses to undo months' worth of hard work. Nevertheless, defendants seek to resolve this protracted disagreement between the parties. In the spirit of compromise, defendants have already informed plaintiffs that they will re-review the bulk of "non-responsive" redactions and documents withheld as "non-responsive," to confirm that all redacted and withheld material is non-responsive, as set forth below.

**Non-Responsive Redactions**

Plaintiffs reject the possibility that defendants may redact information for the simple reason that it is "non-responsive" to their adversaries' discovery requests and the needs of the litigation, including the discovery parameters set by the Court. This Court requires defendants to provide plaintiffs with certain information regarding all defendant officers and non-party officer witnesses in this litigation. While defendants must produce the NYPD records containing these officers' complete disciplinary histories, the Court has limited the scope of information to which plaintiffs are entitled. As Your Honor ruled on October 12, 2021: "Having conducted the *in camera* review, the Court finds that the City has largely complied with its responsibilities to produce the categories that both sides agree must be produced (and that the Court would have ordered produced):

2

incidents relating to excessive force or false arrest, and incidents bearing on officers' dishonesty." Order of the Hon. Magistrate Judge Gabriel W. Gorenstein, No. 20-cv-8924 (CM)(GWG), S.D.N.Y. (10/12/2021) (Dkt No. 286) (finding defendant City had properly redacted non-responsive information on officer disciplinary histories). As a result, defendants must redact these and other records to remove information that, while not subject to legal privilege, is nonetheless protected and not subject to production in this litigation.

Plaintiffs' assertion that defendants have made "extraordinarily broad" redactions based on on-responsiveness is misleading (Dkt No. 586, at 2). The stark statement that over 15,000 documents produced by defendants contain redactions for "non-responsiveness" obscures the facts behind the numbers. The majority of "NR" redaction text boxes in defendants' production indicate with specificity the reason the redacted information is non-responsive and subject to redaction. The most common "NR" redactions indicate "NR – Phone Number" (for telephone numbers). Other examples of specific "NR" text redactions include: "Non-Responsive. Not Related to FA/EF/Honesty," (for incidents on officer disciplinary records not related to false arrest, excessive force, or honesty); and "NR – Non-Agency Email" (for email addresses other than familiar municipal agencies). These specific "NR" redactions are proper and there is no basis to require defendants to remove them or produce unredacted versions of the documents. Nor do these "NR" redaction boxes impede plaintiffs' ability to review or comprehend the responsive content within the documents.

Aside from these specific "NR" redactions, there are less than 500 documents containing non-specific "NR" redaction boxes – the ones that simply state, "Not Responsive," without providing any information about the redacted material. Although there are over 5,000 individual "NR" redaction boxes spread across these approximately 500 documents, defendants agreed to re-review all such redactions to ensure their propriety; defendants will also add specificity to the redaction boxes as necessary. If defendants should locate any information incorrectly redacted as "NR," they will remove the improper redaction and replace it with a correct redaction (such as for privilege or other protection, as appropriate) or re-produce the document without the redaction(s). In the meantime, defendants have re-reviewed the specific documents identified by plaintiffs' counsel and can confirm that all redacted material was non-responsive.

**Withholding of Non-Responsive Documents**

Despite the fact that the parties agreed to production specifications that contemplated defendants withholding non-responsive email attachments over a year ago, as well as the fact that defendants have been producing documents since November 2021 which clearly indicated that non-responsive attachments were being withheld, plaintiffs only recently, for the first time, have raised the specious argument that they are entitled to these non-responsive documents. Plaintiffs demand the immediate production of *all* such documents, without affording defendants so much as an opportunity to a re-review these materials for privilege. In order to support their belated argument for why they are entitled to non-responsive documents, plaintiffs point to instructions in their document requests. Yet, plaintiffs agreed, after serving those requests, to allow defendants to slip-sheet documents as non-responsive.

Plaintiffs also cite to *Families for Freedom v. U.S. Customs and Border Protection* to support their claims; however, that opinion is inapposite. In *Families for Freedom*, the court found that the parent emails were necessary to understand the context of responsive attachments. No. 10 Civ. 2705(SAS), 2011 WL 4599592, at *17 (S.D.N.Y. Sept. 30, 2011). Plaintiffs cannot credibly claim that defendants have withheld parent emails with a responsive, non-privileged attachment. Defendants' production protocol in this matter has always included producing parent emails with a responsive attachment, regardless of whether the parent email is deemed responsive itself.[1] Accordingly, the only documents slip-sheeted for non-responsiveness were attachments, which are not necessary to understand the context in the same way as parent emails.

Notwithstanding the above and in the interest of compromise, defendants had agreed to re-review certain non-responsive slip-sheeted documents to confirm they are indeed non-responsive. To the extent that any documents are determined to be responsive, defendants agreed to produce those documents to the extent they are not privileged.[2] There are over 4,000 documents that have a non-responsive slip sheet.[3] Of those documents, more than 2,000 are either calendar items or non-substantive files/icons such as signature blocks and similar items. Defendants consider these items properly withheld as non-responsive and do not consider it necessary to re-review or produce them. That leaves approximately 2,000 substantive slip-sheeted documents. When adding in family members, which defendants will likely need to review to understand the context of the slip-sheeted documents, that number grows to approximately 5,000 documents.[4]

Defendants respectfully submit that their proposal to re-review NR redactions and withheld documents, as described above, is both reasonable and necessary to allow any responsive documents to be evaluated for privilege, confidentiality, and any other applicable protection.

**Defendants Have Not Waived Any Claim of Privilege**

Plaintiffs' fail to support their bald assertion that defendants have "waived" any claim to "legal privilege" "by not asserting" the same with respect to previously withheld documents (Dkt No. 586 at 2). The Second Circuit "has not established a bright-line test for determining when privileges have been waived by delay, but district courts in the circuit have typically considered three factors. The first is 'the length of the delay' in asserting the privilege claim." *Imperati v.*

---

[1] To the extent any portion of a parent email is privileged, it would be produced with appropriate redactions.

[2] There is a subset of documents slip-sheeted as both non-responsive and privileged. Defendants did not agree to re-review those documents.

[3] A non-responsive slip sheet is a placeholder document inserted into the production as an otherwise blank page bearing the Bates number of the document and indicating that the document has been "Withheld for Non-Responsiveness," in accordance with the Law Department's ESI Production Specifications

[4] In addition to the slip-sheeted documents with families, plaintiffs' letter refers to 395 "stand-alone" documents that have been slip-sheeted (so-called because they are not part of any document families). Defendants have already re-reviewed these 395 documents and can confirm they are not responsive (arrest records and related documents pertaining to incidents that occurred during the same time period as the protests, but that are otherwise wholly unrelated to the protests or this litigation); thus, defendants will not produce them.

*Semple*, No. 3:18-cv-01847 (RNC), 2020 U.S. Dist. LEXIS 125897, at *2-3 (D. Conn. July 16, 2020). In cases where, as here, discovery has not yet closed, courts are reticent to deem a privilege waived. *See Id.* at *5 (the court rejected party's request to deem adversary's privilege claim "waived" when adversary delayed in providing adequate privilege log, in part because discovery was still open). Moreover, it is well established that waiver of a legal privilege is among the harshest, most drastic penalties available, which should reserved for only the most "flagrant" offenders. *See Tiger Capital, LLC v. PHL Variable Ins. Co.*, No. 12-cv-2939 (CM)(JCF), 2013 U.S. Dist. LEXIS 121395, at *6-7 (S.D.N.Y Aug. 26, 2013) ("While failure to provide a privilege log in a timely manner may result in a waiver, only flagrant violations require such an outcome.") (internal citation and quotations omitted).

The second factor courts consider in determining waiver is whether any harm has accrued to other parties as a result. *Imperati*, 2020 U.S. Dist. LEXIS 125897, at *2-3. In this case, plaintiffs have not alleged and cannot demonstrate any harm, including prejudice. The documents and information in question have been withheld as non-responsive since the inception of the litigation, such that plaintiffs have never had access to them. If, upon re-review, defendants should discover an error and re-designate a withheld document as responsive but shielded by privilege, plaintiff's situation with respect to that document would not change; plaintiffs will continue to not have access to the document. In these circumstances, it is challenging to imagine how an assertion of privilege by defendants over a previously withheld document could possibly harm plaintiffs.

Finally, the third factor that courts within this Circuit consider in determining whether to waive privilege in the context of a delayed privilege claim is "the willfulness of the transgression." *Imperati*, 2020 U.S. Dist. LEXIS 125897, at *2-3. As in *Imperati*, a court may find that a party's counsel was "negligent" by delaying in invoking a privilege, but that action is not "willful or flagrant." *Id.* at *20-21. Defendants respectfully submit that any assertion of privilege that may result from their re-review of previously withheld or redacted documents or information would be in no way a reflection of any willful or wanton intent, and thus would not weigh in favor of waiving any privilege claim defendants may bring.

**Conclusion**

As the Court is undoubtedly aware, "[courts] in this District have instructed that 'the standard [in ESI discovery] is not perfection, . . ., but whether the search is reasonable and proportional.'" *See Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, 2018 U.S. Dist. LEXIS 81840, at *28 (S.D.N.Y. May 14, 2018) (quoting *Hyles v. New York City*, 10 Civ. 3119 (ATF)(AJP), 2016 U.S. Dist. LEXIS 100390, 2016 WL 4077114 at *3 (S.D.N.Y. Aug. 1, 2016) (Peck, M.J.)). The defendants' review, while perhaps not perfect, was certainly both reasonable and proportional to the needs of the case. Moreover, defendants respectfully submit that their proposal will be more than sufficient to address plaintiffs' concerns about material withheld as non-responsive, while also allowing defendants to review any material identified as responsive for privilege, confidentiality, and any other protection. As such, we respectfully request that the Court afford defendants five weeks to complete the task as described herein.

5

Accordingly, defendants respectfully request that the Court deny plaintiffs' application and grant defendants' request.

Respectfully submitted,

*Stephanie M. Breslow*

Stephanie M. Breslow
*Senior Counsel*
Special Federal Litigation Division

cc: ALL COUNSEL (via ECF only)