

June 24, 2022

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing and Email Under Seal.

**Re: In re: New York City Policing During Summer 2020 Demonstrations, 1:20-CV-8924 (CM) (GWG) — This Letter Relates to All Cases**

Dear Judge Gorenstein:

I write on behalf of Plaintiffs in the consolidated cases, as the Court invited, to provide a reply on our motion to compel production of certain documents Defendants are wrongly withholding as "non-responsive."

By way of context, Defendants filed a letter last week that, in essence, assured the Court that none of the documents Plaintiffs identified in their motion were relevant or responsive. However, faced with the prospect of a motion to compel those documents, Defendants agreed to produce them — and admitted half of the fully withheld documents should have been produced. These were not close calls: the materials Defendants have now admitted are responsive include a video, [REDACTED] DEF_E_000003844. Yet, in the things Defendants continue to insist are non-responsive is [REDACTED][1] *But see*, Dkt. No. 586-1; L.R. 26.3(c)(7).

Had the Court followed its ordinary practice and taken Defendants assurances at face value — rather than inviting a reply and a motion for the documents at issue — neither Plaintiffs nor the Court would have ever discovered these apparent mis-categorizations of documents and the seeming misrepresentations in Defendants' Opposition. That troubles Plaintiffs deeply — and we think it should trouble the Court too. Thus, in addition to the relief requested in our initial motion, the Court should order an audit of Defendants' review methodology.

[1] Defendants have designated this material as "Confidential" under the applicable Order. Plaintiffs therefore redact it on the public docket, and under the Court's Individual Practice 2(E), Defendants have "the obligation to make the written application to the Court justifying the proposed sealing." *Id.* Plaintiffs will submit an unredacted version of this letter with all attachments to Chambers by email. If Defendants fail to make that application, Plaintiffs ask the Court to let them know when it is appropriate to complete the public record, since the Rule sets no time.



## I. Plaintiffs Never Agreed to Let Defendants Withhold Attachments to Responsive Documents.

Defendants overstate the significance of Plaintiffs' failure to object to one, qualified by an "if" sentence in the City's proposed ESI Production Specifications. That document — described by Defendants' counsel themselves as "the City's requested production format," Dkt. No. 606 at Ex. A — simply described the format in which the parties would produce electronic discovery. It did not impose any substantive requirement governing what documents would be considered responsive. Showing this, the document defines issues such as the type of file in which documents will be produced, the folder structure, the names of metadata fields, and so on. Dkt. No. 606 at Ex. B. The document came about after a series of meet and confers the City made necessary by taking — and maintaining — the position that somehow, contrary to their plain text ("These rules automatically apply in every case assigned to Judge McMahon"), Judge McMahon's Rules Governing Electronic Discovery did not apply to the City of New York. Thus, Plaintiffs reviewed those proposed specifications with the goal of ensuring the electronic discovery productions would be provided in a format that could be stored, organized, and understood consistent with Plaintiffs' document review platform and technological capabilities.[2]

The only logical reading of the agreed-upon ESI Production Specifications is that it was intended to be consistent with—and not to supersede or substantively modify—outstanding document requests that treated email attachments as responsive per se. Courts recognize that "attachments must be produced with e-mails," because that is how they are stored in the ordinary course of business. *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, No. 08-CV-7508 (SAS), 2011 WL 3738979, at *4 (S.D.N.Y. Aug. 18, 2011), *report and recommendation adopted*, No. 08-CV-7508 (SAS), 2011 WL 3734236 (S.D.N.Y. Aug. 24, 2011); *see also PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, No. 05-CV-657 (DNH)(RFT), 2007 WL 2687670, at *8 (N.D.N.Y. Sept. 7, 2007) (requiring a production of emails with attachments, even though many of the attachments may be irrelevant). Consistent with that common practice, Plaintiffs' March 25, 2021 document requests were clear that documents had to be produced as they were kept in the ordinary course of business, including any attachments:

> "A request for a Document ***shall be deemed to include a request*** for any and all file folders or binders within which the Document was contained, transmittal sheets, cover letters, exhibits, enclosures, ***or attachments to the Document*** in addition to the Document itself

*See* Dkt. No. 586-1 at 4-5 (Plaintiff's First Consolidated Document Requests) (emphasis added).

---

[2] Specifically at issue is a single sentence under the heading "Format for Placeholder Documents." *Id.* at 2. The sentence outlines that parent emails and attachments will be produced together and provides that slip sheets stating that "if" a party withholds a document for "Privilege" or "Non-Responsiveness," a slipsheet will be produced in place of fully withheld documents within a responsive family. Plaintiffs obviously did not object to keeping family member documents together or the use of slip sheets to indicate when family member documents were withheld for privilege. In agreeing to this language, Plaintiffs had no way of knowing Defendants would read the language to erase the "if," and imply that ***any*** withholding for "Non-Responsiveness," no matter what a request actually said, would be proper..



Defendants' opposition requires the nonsensical assumption that Plaintiffs served document requests that treated attachments as responsive and then abandoned that position less three weeks later when agreeing to a set of technical production specifications.

## II. The ESI Production Specifications Should Be Read Consistent With Parties' Document Requests

Instead, the ESI Production Specifications can and should be read consistent with both parties' document requests outstanding at the time of the agreement. Unlike Plaintiffs' March 25 document requests that treat attachments as responsive per se, Defendants' March 25 requests chose not to treat attachments as responsive per se. Defendants' March 25, 2022 Interrogatories and Document Requests at 5-9, attached as **Exhibit 1**. Plaintiffs' reading of the ESI Production Specifications impairs neither parties' documents requests, giving both parties the benefit of their agreement.

Defendants have opted to interpret the parties' agreement over how electronic documents will be produced to substantively alter the parties' discovery requests — but only to the detriment of Plaintiffs. Absolutely nothing in the ESI Production Specifications indicates that the parties' intended to use that agreement to make such substantive modifications. This was not an ESI protocol describing substantive agreements. *Compare Verint Sys. Inc. v. Red Box Recorders Ltd.*, 183 F. Supp. 3d 467, 468 (S.D.N.Y. 2016) (noting that the ESI protocol "provide[d] in relevant part that each party 'shall disclose' '[t]he eight custodians most likely to have discoverable ESI in their possession, custody or control.'"). The parties' ESI Production Specifications here should not be read to modify Plaintiffs' discovery requests to authorize Defendants to withhold documents that are definitionally responsive. If Defendants wanted to withhold attachments, they could and should have made clear that they were doing so in their responses — or, at least, in the Discovery Chart. Plaintiffs could then consider the issue and then meet and confer as needed. Moreover, if Defendants understood the ESI Production Specifications to prevent them from complying with Plaintiffs' document requests, the specifications provide in bold type in the first clause of the agreement that they should have sought to meet and before production. Dkt. No. 606, Ex. B at 1. They did not.

Even on its own terms, Defendants' reading of the ESI Production Specifications relies on a misguided variation on the surplusage canon. That is, Defendants argue that because in a set of technical specifications the parties accounted for the *possibility* that associated documents might be withheld and noted how that should be done if relevant, that must mean the rule applied to *something*. The argument seems to be, basically, that because the parties provided a way to do something, they must have agreed Defendants could, under all circumstances, do that thing. Otherwise, Defendants say, the agreement is surplusage.

That's wrong. "[T]he surplusage canon does not apply" where, as here, the terms at issue

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com


"are not provisions of a single contract."[3] *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 273 (2d Cir. 2015). And maybe more to the point, under the Federal Rules and the Court's repeated orders, Defendants were required to state their (1) objections to Plaintiffs' requests and (2) what they were withholding. The requests and responses define what will or will not be produced. The ESI Production Specifications merely explain the technical process for making that production. That some part of the technical process is not ultimately used does not require altering the scope of the parties' document requests or objections.

**III. Defendants' Use of "Non-Responsive" Objections are Really Confidentiality or Relevance Objections in Disguise.**

In their Opposition, Defendants conflate responsiveness and relevance. They argue that "non-responsive documents are beyond the scope of discovery pursuant to the Federal Rules." But that is not what the Federal Rules say. The scope of discovery, outlined in Rule 26(b) (emphasis added), limits discovery to any "nonprivileged matter that is *relevant* to any party's claim or defense." Responsiveness is outlined in Rule 34(b) (emphasis added), which explains that "[a]n objection must state whether any *responsive* materials are being withheld on the basis of that objection."

So: (1) A document is responsive if it is falls within the text of a document request; (2) a document is relevant if it supports a party's claim or defense; and (3) a document may be responsive to a request, but subject to a valid objection because it is not relevant. But non-responsiveness is not a standalone objection: If a document is not within the scope of the request, there is no need to object to producing because the other side never actually requested it. It's not that it's "beyond the scope of discovery pursuant to the Federal Rules," it's that there's no active request. But as Defendants concede, there is no question Plaintiffs have requested these documents. Instead, Defendants, in the meet and confer, claimed that the attachments, and other materials they withheld, were not important. But *importance* is a relevance objection, which they waived—not a responsiveness issue.

Defendants appear to include confidential or private information, such as phone numbers, in their definition of non-responsiveness. Information, or whole documents, may be properly withheld based on a proper objection grounded in privacy, but that is also not a responsiveness argument. And again, if Defendants had told Plaintiffs they planned to withhold every single number formatted like a phone number — including Plaintiffs' own counsel's phone numbers, case numbers, and other strange errors — using an automatic redaction system, Plaintiffs would not have agreed. Again, this distortion of "non-responsiveness" as an objection to portions of responsive documents would create a loophole that allows Defendants to withhold material based on claims of irrelevance and privilege, by incorrectly calling it "non-responsiveness." And that distortion permits Defendants to avoid the way the rules require them to assert relevance, privilege, or confidentiality — to ultimately

[3] Even reading the two documents together as a whole, Defendants' anti-surplusage argument fails. The surplusage "canon needs to be deployed with special care in a setting … in which redundancies abound." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 405-06 (6th Cir. 2021) (discussing insurance contracts); *see also, J. Kleinhaus & Sons v. Valley Forge Ins. Co.*, 2021 U.S. Dist. LEXIS 239127, at *11 (S.D.N.Y. Dec. 14, 2021) (same). Much like insurance contracts, discovery requests and related agreements often "flood us with words from time to time, saying two or more things where one will do." *Id.* And, of course, "surplusage alone does not make" something ambiguous. *Santo's*, F.4th at 405.

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



prevent Plaintiffs from getting important information.

**IV. Following their Opposition, Defendants Acknowledged At Least Half of the Withheld Examples in Plaintiffs' Letter Motion Were Indeed Responsive, and Showed Many of the Redacted Materials Were Relevant.**

Defendants say that for the materials specifically identified in Plaintiffs' motion, they have "re-reviewed [them] and can confirm that all redacted material was non-responsive." Dkt. No. 605 at 3. Plaintiffs read that to mean that Defendants had found all examples identified in Plaintiffs' motion were confirmed to be non-responsive and demanded copies of these allegedly non-responsive documents, so they could review them for themselves. Defendants finally agreed to provide three documents with "NR" redactions removed. But for the documents fully *withheld*, Defendants' counsel said that "they re-reviewed" the four documents cited in Plaintiffs' letter for having been fully withheld and "determined that two of these documents — 1 pdf file and 1 video file — are responsive []." It seems that Defendants' letter opposition either conveniently (and misleadingly) left out the fact that at least two of the examples provided by Plaintiffs were in fact responsive, or faced with the prospect of having to produce these attachments, Defendants re-reviewed them a third time and decided that they would eventually have to admit the documents were, in fact, responsive. Either possibility is troubling.

A. **Defendants now admit half the withheld documents are responsive, and cannot explain how the other half wouldn't be.**

The two re-produced documents — submitted to Chambers — are both clearly responsive and highly relevant. One is literally a video [REDACTED]. Its relevance is obvious — and it was attached to an email [REDACTED]. Defendants have offered no explanation how any reviewer could have — particularly given that the parent email was marked responsive — concluded this video was "non-responsive."

The other is [REDACTED] The [REDACTED]. The relevance here too is obvious — and casts doubt on both Defendants' line-level review instructions and quality control.

All of this implicates a problem the Court has previously identified. If this is what Defendants are doing in front of the Court and in motion practice, "it really makes you question whether [they']re doing everything else [they]'re supposed to do in terms of dealing directly with the plaintiffs when [the Court is] not there to oversee it." 2022-02-11 Tr. 7:17-8:5. Defendants did not admit to this in their opposition. Rather, it took the Court inviting a reply, and Plaintiffs threatening a motion to compel for the purpose of this motion, to extract these obviously relevant documents.

So, Defendants admit an error rate of at least 50% in what Plaintiffs have identified. But



Defendants are still refusing to produce copies of the two other withheld attachments cited in Plaintiffs' motion, saying, "defendants first reiterate that, as indicated in their June 15 opposition letter, defendants will not produce any non-responsive documents." But for those remaining documents, there is no serious question they are responsive and relevant: the documents at issue are [redacted] Dkt. No. 586 at 5 (quoting Dkt. No. 582-2 at 11 (Req. 8)). Defendants do not even attempt to articulate how these documents are non-responsive — in either their opposition, or in their emails to Plaintiffs — presumably because they cannot.

B. **Defendants' productions show that they are redacting relevant materials.**

Defendants produced the documents with many redactions removed. In the email providing these documents Thursday evening, they noted "Defendants re-reviewed the material formerly redacted as NR and confirmed that it was not responsive, as plaintiffs may now see for themselves." Given what was under the redactions, Defendants' continued insistence that all the redacted material is non-responsive is troubling.

As Plaintiffs explained in their motion, one example was obviously responsive and relevant: comments made to [redacted]

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



What Defendants revealed is a relevant and responsive comment: [redacted]

[redacted]

It would be one thing if Defendants owned up to this as a mistake. Instead, however, their insistence that an email [redacted] is not a "Document[] concerning … training materials" (Dkt. No. 586-1 at 6-9) calls into question the entirety of how Defendants interpreted Plaintiffs' document requests.

The other examples, such as they are, are similar. In a document [redacted] irrelevant or non-responsive.

Zooming out, none of this is proper in the first place. Defendants present no argument for why they should be allowed to redact *parts* of documents as "non-responsive." And they make no argument for why this Court was wrong when it said, "redactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014). And the example Defendants cite — the Court's ruling on redactions for certain materials in officer disciplinary files (Dkt. No. 286) — was not based on responsiveness. Plaintiffs ***obviously*** asked for (i.e., the documents were responsive) all disciplinary files, without exception. But Defendants argued — successfully — that certain materials were not relevant to credibility. *See generally*, 2021-08-19 Tr. at 26-33. Not once in that exchange (or in any of the papers on the motion) did any party mention responsiveness — because there was no question about responsiveness. With that confusion taking the day, Defendants make no argument about why they are permitted to redacted *anything* based on what they (seem to) concede is not "a legal privilege." 298 F.R.D. at 186.



**V. Plaintiffs Did Not Unreasonably Delay in Making This Motion.**

Plaintiffs did not delay in raising this issue with Defendants but rather prioritized other pressing issues among the parade of deficiencies in paper discovery that Defendants have brought about in this litigation. Quite simply, the significant number of problems with Defendants document production have been compounded by Defendants' delays in agreeing to meet and confer. It took more than six weeks to get Defendant to agree to discuss this issue, [4] and far longer to get Defendants to discuss other issues. Plaintiffs have been prioritizing problems that are the most time-consuming, such as the ARGUS video. While it will take many hours to review the improperly withheld non-responsive documents, it will take far longer for Plaintiffs to review the ARGUS footage, so Plaintiffs worked (and unfortunately, are still working) to resolve that issue first.

Defendants cannot use the sheer number of problems with their productions, their "repeated failure" to fulfill "the most basic responsibilities of attorneys" (Dkt. No. 598), and the continual delays in resolving them as a shield. Instead, the scope of Defendants' discovery deficiencies to date shows why they should not be allowed to re-review documents they have largely claimed are irrelevant. They wasted months improperly redacting and slip-sheeting their production: They should not be allowed to waste even more time doing it again. There is a claw-back agreement and a confidentiality order in place. *See* Dkt. No. 115. Defendants are adequately protected and the production can be fixed quickly — in fact, the Defendants never claim that removing the improper redactions and slip sheets poses any burden at all.

**VI. Failure to Timely Make Privilege Objections is Waiver.**

Defendants never objected to producing attachments in their responses based on claimed irrelevance or non-responsiveness. Any argument to the contrary is waived: "The law is well settled that a failure to assert objections to a discovery request in a timely manner operates as a waiver." *Eldaghar v. City of New York*, No. 02-CV-9151 (KMW)(HBP), 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003). And if Defendants had objected, they would have had to do so with specificity, making it clear what they were withholding. *See Cambridge Cap. LLC v. Ruby Has LLC*, No. 20-CV-11118 (LJL), 2022 WL 889143, at *5 (S.D.N.Y. Mar. 24, 2022) (finding that the 2015 Amendments to the FRCP require specific objections if documents are being withheld, and failing to do so is waiver), citing *Fischer v. Forrest*, No. 14-CV-1304 (PAE)(AJP), 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017). Plaintiffs requested the attachments and Defendants never objected. So, simply put, these attachments are responsive to the requests and there is no objection.

Summing things up, Defendants' production of (some of the) documents has clarified things: every example Plaintiffs identified appears to have both plain responsiveness and clear relevance. Defendants have no explanation for why these documents were not produced, or for that

[4] Indeed, the withheld documents Defendants admitted were actually responsive were only produced to Plaintiffs informally after 9 PM on Thursday June 23, 2022, over two weeks after Plaintiffs' motion was filed and four full weeks since Plaintiffs first raised those same examples with Defendants in an email on May 27, 2022. Given their track record, we find it doubtful Defendants will actually be able to complete a re-review of thousands of documents and re-produce all responsive documents in just five weeks as proposed in Defendants' opposition letter.

matter, why they told the Court, after supposedly re-reviewing them, that they were non-responsive. Ultimately, then, the fact that Defendants have simply marked relevant documents "non-responsive" may make the details of what an ESI Production Specification document said beside the point: either (1) Defendants' definition of responsiveness, as applied to their entire review, does not reflect a remotely reasonable reading of Plaintiffs' requests or (2) Defendants' quality control, even at the stage of re-review during a motion, is so lacking as to warrant investigation.

But either way, there is no way to be confident Defendants are not wrongly withholding still more crucial documents. So the Court should order production of everything — and consider further measures to determine how Defendants' process has gone so wrong and how to correct. And given that (among other things) Defendants' apparent position requires thinking that an email [REDACTED] is somehow not a "Document concerning" policies, the mandatory fees under Rule 37 should be granted.

Once again, we thank the Court for its continued time and attention.

Respectfully submitted,

/s/

J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow Plaintiffs, on behalf of all Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.