```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                            :
                                        Docket #20cv8924

 IN RE NEW YORK CITY POLICING     :
 DURING SUMMER 2020 DEMONSTRATIONS
                                  : New York, New York
                                    June 30, 2022
-----------------------------------:  TELEPHONE CONFERENCE


                     PROCEEDINGS BEFORE
            THE HONORABLE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff People      NEW YORK STATE OFFICE OF
of the State of New       THE ATTORNEY GENERAL
York:                     BY:  LILLIAN MARQUEZ, ESQ.
                          28 Liberty Street
                          New York, New York 10005

For Gray Plaintiffs:      WYLIE STECKLOW PLLC
                          BY:  WYLIE M. STECKLOW
                          111 John Street, Suite 1050
                          New York City, New York 10038

For Payne Plaintiffs:     NEW YORK CIVIL LIBERTIES UNION
                          BY:  ROBERT HODGSON, ESQ.
                          125 Broad Street, 19th Floor
                          New York, New York 10004

For Sierra Plaintiffs:    RICKNER PLLC
                          BY:  ROB RICKNER, ESQ.
                          14 Wall Street, Suite 1603
                          New York, New York 10005




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

<u>APPEARANCES (CONTINUED):</u>


For Sow and Hernandez        COHEN & GREEN
Plaintiffs:                  BY:  REMY GREEN, ESQ.
                             1639 Centre Street, Suite 216
                             Ridgewood, New York 11385


For Wood Plaintiffs:         KAUFMAN LIEB LEBOWITZ & FRICK LLP
                             BY:  ALISON ELLIS FRICK, ESQ.
                             18 East 48th Street, Suite 802
                             New York, New York 10017


For Roland Plaintiffs:       THE ABOUSHI LAW FIRM
                             BY:  TAHANIE ABOUSHI, ESQ.
                             1441 Broadway, 5th Floor
                             New York, New York 10018


For Defendants:              NEW YORK CITY LAW DEPARTMENT
                             BY:  AMY ROBINSON, ESQ.
                                  NADINE IBRAHIM, ESQ.
                                  JENNY SUE-YA WENG, ESQ.
                                  GENEVIEVE NELSON, ESQ.
                                  ANTHONY DISENSO, ESQ.
                                  RACHEL KAUFMAN, ESQ.
                             100 Church Street
                             New York, New York 10007


For Intervenor              PITTA LLP
Detectives Endowment         BY:  STEPHEN MCQUADE, ESQ.
Association:                 120 Broadway, 28th Floor
                             New York, New York 10271

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---------|--------|-------|-----------|----------|-------|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------| 
| None | | | | |

1

```
 1                          PROCEEDINGS                    4
 2              THE CLERK:  This is In Re New York City Policing
 3   During Summer 2020 Demonstrations, case number 20cv8924.
 4   Will counsel please state their appearances for the
 5   record, starting with the plaintiffs.
 6              MS. LILLIAN MARQUEZ:  Good morning, Your Honor,
 7   this is Lillian Marquez of the New York State Attorney
 8   General's Office on behalf of the People of the State of
 9   New York.
10              MR. WYLIE STECHLOW:  Good morning, Your Honor,
11   this is Wylie Stecklow on behalf of the plaintiffs in the
12   Gray matter.
13              MR. ROBERT HODGSON:   Good morning, Your Honor,
14   this is Robert Hodgson from the New York Civil Liberties
15   Union on behalf of the Payne plaintiffs.
16              MR. ROB RICKNER:   Good morning, Your Honor,
17   this is Rob Rickner for the Sierra plaintiffs.
18              MX. REMY GREEN:  Good morning, this is Remy
19   Green for the Sow and Hernandez plaintiffs.  For the
20   recording I should appear in the transcript as Mx. Green,
21   spelled M-X-period, rather than Mr. and Ms.  And I will be
22   speaking on the redaction and withholding issue.
23              MS. ALISON FRICK:  Good morning, Your Honor,
24   this is Alison Frick from Kaufman Lieb Lebowitz & Frick on
25   behalf of the Wood plaintiffs.  I'll be speaking on the
```

```
 1                         PROCEEDINGS                    5

 2   extension issue.

 3            MS. TAHANIE ABOUSHI:   Good morning, Your Honor,

 4   Tahanie Aboushi appearing on behalf of the Roland

 5   plaintiffs.

 6            THE COURT:   And for defendants.

 7            MS. AMY ROBINSON:   This is Amy Robinson, good

 8   morning, Your Honor.  I represent the defendants.

 9            MS. DARA WEISS:  Good morning, Your Honor --

10            THE COURT:   Just you, Ms. Robinson - oh, go

11   ahead.

12            MS. NADINE IBRAHIM:   Nadine Ibrahim, I also

13   represent the defendants, and I will be speaking to the

14   redaction issue.

15            MS. JENNY WENG:   Good morning, Your Honor, this

16   is Jenny Weng, I also represent the defendants.

17            MS. GENEVIEVE NELSON:  Good morning, Your Honor,

18   this is Genevieve Nelson.  I also represent the

19   defendants.

20            MR. ANTHONY DISENSO:  Good morning, Your Honor,

21   this is Anthony DiSenso.  I also represent the defendants.

22            MS. RACHEL KAUFMAN:  Good morning, Your Honor,

23   this is Rachel Kaufman, I also represent defendants.

24            MR. STEPHEN McQUADE:  Good morning, Your Honor,

25   Stephen McQuade, I represent the Detectives Endowment
```

```
 1                        PROCEEDINGS                    6

 2   Association, one of the three union intervenors in the

 3   case.

 4            THE COURT:  Any other intervenors present?

 5   Okay, let me just ask initially since it's a little

 6   disturbing we're starting 15 minutes late.  Ms. Ibrahim,

 7   what was the impediment in at 11?

 8            MS. IBRAHIM:   Your Honor, I believe a lot of us

 9   that are on this call are newer to the team, and we did

10   not have the correct dial-in information.  We used the

11   number that was on the docket, and I believe that was the

12   incorrect or an older number.  But we promptly joined this

13   call as soon as we had the right dial-in information.

14            THE COURT:  Okay, well, hopefully that won't

15   happen again.  My order was pretty clear that that number

16   was for the public only.

17            MS. IBRAHIM:   I apologize, Your Honor, it won't

18   happen again.

19            THE COURT:  Okay, all right, we'll move on.

20   Okay, we're here initially on a letter from Mx. Green,

21   586, followed by, the docket entry is 605, 618, and 614.

22   We'll do this in two pieces.  One is redactions within a

23   document, and the other is withheld documents --

24            MX. GREEN:  Your Honor, before we get into

25   that, can I do a bit of housekeeping which is defendants
```

```
1                        PROCEEDINGS                    7
```

2  have not made an application to see all the documents we

3  filed with the Chambers as is required by the Court's

4  individual practice 2E.  I anticipate in both categories

5  we're going to want to talk about the contents of the

6  documents today.  So given that defendants responded to

7  our letter, which explicitly noted that requirement, but

8  didn't make an application and for that matter didn't make

9  an application on the moving letter on June 7, I think it

10  makes some sense to say that we are free to discuss the

11  contents of the supposedly confidential documents today

12  and, you know, maybe deal with whether copies should be

13  filed on the document separately.

14          THE COURT:   Ms. Ibrahim, do you have a position

15  on this?

16          MS. IBRAHIM:   Your Honor, again, I recently was

17  assigned this issue.  I think that, I think that that

18  should be okay with us.

19          THE COURT:   Okay.

20          MS. IBRAHIM:   To the extent that the documents

21  contain sensitive information, I don't believe that that

22  should be said on the record today, but more generally

23  speaking about the documents should be okay.

24          THE COURT:   All right, listen, as this is a

25  matter of substantive law, what is actually in those

```
 1                         PROCEEDINGS                  8
 2   documents is irrelevant to anything I'm doing today.  So,
 3   Mx. Green, I don't think there's any need to discuss them.
 4   If you feel there's a need at some point, let me know.
 5             MX. GREEN:   Fair enough, thank you, Judge.
 6             THE COURT:   All right.  So on the redactions
 7   within the document, I mean this is easy.  There are to be
 8   no redactions of portions of the document, that's
 9   improper.  It shouldn't have happened.  I don't understand
10   why it happened.
11             Now, that being said, there appears there's some
12   things that were called non-responsive that the City
13   really meant something else like personal information or
14   something like that or, and this is maybe one possible
15   exception to what I just said.  And the City seems to
16   raise this.  I did make some rulings about disciplinary
17   history and things that could be redacted with respect to
18   disciplinary history, and those, assuming my instructions
19   were followed, are proper.  So, Mx. Green, where do you
20   think we are on this and given what I just said and what I
21   said about disciplinary history and, you know, phone
22   numbers or things like that?
23             MX. GREEN:   Yes, Your Honor.  I think the
24   answer is that's exactly what we've been arguing.  So I
25   think we are of a mind with the Court with perhaps a
```

```
 1                    PROCEEDINGS                    9
 2   footnote that – or let me directly address what you said,
 3   Judge, which is I don't think that there's any
 4   disciplinary history in what we've identified here, I
 5   think we (indiscernible) or to the extent that there is,
 6   we agree you've already ruled on that where the objection
 7   has been made to providing it as personal information, you
 8   know, that is an appropriate privacy or relevance
 9   redaction where that objection has been made.
10            On the phone numbers, one of the issues is that
11   defendants apparently automated this without telling us
12   that that's what they were going to do, and so while I
13   think if they had been, you know, thoughtful in applying
14   phone number redactions, that would, you know, make sense.
15   What they've done is anything that is nine digits got
16   redacted.  If it's certain formats, so there are case
17   numbers redacted.  There are witness phone numbers that
18   are not private redacted.  I mean I think I've seen my own
19   phone number redacted as well as Mr. Rickner's phone
20   number.  So these are not – I think the problem is a lack
21   of review or quality control on how they've done that.
22   But the basic principle we don't disagree with.
23            THE COURT:  Okay, so what's – I guess I'm not
24   understanding what the City has already said it's going to
25   do and what they've said is unacceptable to you.
```

```
 1                        PROCEEDINGS              10
 2            MX. GREEN:   I mean they are, they are unwilling
 3   to remove anything was their last position.  So that's
 4   what's unacceptable to us.  As the Court said, there just
 5   shouldn't be redactions other than some very minor things,
 6   and there are massive redactions.
 7            THE COURT:   Okay, I mean I thought --
 8            MS. IBRAHIM:   Your Honor --
 9            THE COURT:   -- aside from nine-digit numbers
10   you mean.
11            MX. GREEN:   Yes, yes.  I mean, yes, the nine-
12   digit number issue I think that's kind of a side show.
13   Ultimately --
14            THE COURT:   I want to put the nine-digit number
15   issue to the side for the moment, you know, because I
16   don't think there's a rush on that, and if --
17            MX. GREEN:   Of course not.
18            THE COURT:   -- there's something you need right
19   away, you can just ask for it.  So let's just put that
20   aside on the assumption that there will be some process
21   put in place either by your asking or them reviewing.  I'm
22   not even sure I'll deal with it today.  I hope you can
23   work it out, but if I have to, I will.
24            So let's talk about everything else, and, Ms.
25   Ibrahim, if you wanted to say something, go ahead.
```

```
 1                          PROCEEDINGS                  11

 2              MS. IBRAHIM:   Yes, Your Honor, the City, even

 3  prior to plaintiffs' filing their letter motion, had

 4  already agreed to re-review all of the generic NR

 5  redactions within documents and remove any NR redactions

 6  that were not otherwise protected.  So I --

 7              THE COURT:   What do you mean by protected?

 8              MS. IBRAHIM:   Either subject to a privilege or

 9  a privacy concern.

10              THE COURT:   Okay, so --

11              MX. GREEN:   Your Honor, though that --

12              THE COURT:   Go ahead.

13              MX. GREEN:   The problem with that, and this is

14  why I want to talk about the specific examples, is all you

15  have to do is look at the one that they produced to know

16  that that's, I mean I'm trying, I'm struggling to find a

17  word for it.

18              THE COURT:   No, no, no, Mx. Green, this is not

19  the point though.  I'm willing to assume that every

20  redaction here is responsive, so that's not the issue.

21  The issue is whether they should be allowed to review for

22  privilege or not --

23              MX. GREEN:   Right.

24              THE COURT:   -- and how much time we give them

25  to do it.  That's the only issue.
```

```
 1                          PROCEEDINGS                    12

 2              MX. GREEN:   Got it, got it.  Okay, so I mean

 3    the answer I think is they already reviewed for privilege.

 4    If it was a privilege, there are expansive privilege

 5    redactions, and that's not what we're here to talk about

 6    today.  I assume --

 7              THE COURT:   Let me just stop you --

 8              MX. GREEN:   -- if there had been a privilege -

 9    go ahead.

10              THE COURT:   Let me just ask (indiscernible),

11    what is your timing on this, what do you need to review

12    for?

13              MX. GREEN:   I mean depositions starting

14    immediately.

15              THE COURT:   No, no, no, I'm asking Ms. Ibrahim.

16              MX. GREEN:   Oh, I'm sorry.

17              THE COURT:   What is your timing, what is your

18    timing, what do you need to review for?

19              MS. IBRAHIM:   Your Honor, if I could just

20    explain that when the reviewers were initially reviewing

21    these documents, when they found something to be not

22    responsive, they did not go the extra step to review it

23    for privilege.  So those documents have not been reviewed

24    for privilege.  Our estimate --

25              THE COURT:   You did redact some things for both
```

1                              PROCEEDINGS                    13

2   as being non-responsive and privileged, did not you?

3              MS. IBRAHIM:   Yes, Your Honor, but for the

4   majority of this, the redactions that we're talking about

5   here, they were not reviewed for privilege or for privacy

6   concerns.  If the reviewer found it non-responsive, then

7   they just redacted it as non-responsive.

8              Our timeline for this, Your Honor, is we

9   anticipate it would take five weeks for us to re-review

10  all the NR redactions within documents as well as the

11  about 2,000 standalone email attachments.  So re-review

12  for all --

13             THE COURT:   All right, well, okay, the five

14  weeks starts June 15, so I'm not saying I'm giving you

15  five weeks, but that was the date you said it would take

16  five weeks.

17             MS. IBRAHIM:   Yes.

18             THE COURT:   So we're already two weeks into

19  your five weeks.  I'm not sure I'm going to give you all

20  that time.  I will give you a 502(d) order which says that

21  if you make a production that turns out to be privileged,

22  you're going to have a chance to argue that it's not a

23  waiver of any kind.  But I'm going to get to your timing

24  when we get to the end of this.

25             MS. IBRAHIM:   Okay.

```
 1                         PROCEEDINGS              14
 2             THE COURT:   I'm not sure there's anything else
 3  to do on that.  Mx. Green, I'll hear from you if there's
 4  anything.
 5             MX. GREEN:   No, I think that addresses it.  You
 6  know, there are other redaction issues but we have not
 7  raised them in this motion.
 8             THE COURT:   Okay.  All right, so now we have
 9  the withheld documents which I have mentally divided into
10  two parts as I think the plaintiffs did.  One is those
11  that appear as attachments to emails.  And the other that
12  were just standalone documents that seem to be unconnected
13  to anything else.
14             Let me just deal with the unconnected ones.  So
15  I don't understand why one tells the other side that
16  there's a – I assume the City has several billion non-
17  responsive documents in its files.  What made you pick out
18  these 395?
19             MS. IBRAHIM:   Your Honor, these 395 documents
20  have been re-reviewed and they are all arrest reports from
21  the same time period of the protests.  There's not any
22  related to anything related to the 2020 protests or this
23  litigation.
24             THE COURT:   You didn't answer my question.
25             MS. IBRAHIM:    Your Honor, I think what had
```

1                         PROCEEDINGS                15

2    happened initially was that when we asked for the arrest

3    reports for the period of the protests, they sent

4    everything that was from that time period because there

5    was no time to parse through it and look for things that

6    were protest related versus non-protest related.  And

7    that's why that happened.  And I believe someone from our

8    e-discovery, our e-discovery attorney might speak to this

9    a little bit better than I do, Mr. DiSenso, he's on the

10   call as well.

11              MR. DISENSO:  Yes, Your Honor --

12              (interposing)

13              THE COURT:  Go ahead, Mr. DiSenso.

14              MR. DISENSO:  I was just going to add, Your

15   Honor, I think initially this was just a production

16   mistake that we weren't aware of until (indiscernible) by

17   plaintiffs.

18              THE COURT:  Okay --

19              MR. DISENSO:  And that's --

20              THE COURT:  -- Ms. Green, is there anything –

21   anything else we need to do on these 395?

22              MX. GREEN:  Your Honor, I think one thing that

23   we just don't know is whether these might, for example,

24   have charges that the NYPD might think is looting which

25   they said was connected to the protests but obviously

1                            PROCEEDINGS                    16

2   wouldn't be protest related.  You know, I think our –

3   they're responsive to the requests as written because the

4   request asks for all arrests during the time period,

5   period.  There is nothing saying, as I recall, that these

6   documents are being withheld in the chart, so I think, you

7   know, certainly our view is --

8            THE COURT:  I'm sorry, I didn't realize it was

9   responsive.

10           MX. GREEN:  I think it is.  I mean whether it's

11  relevant is a different question, and that seems to be

12  what the City is saying.  But we did ask for all arrests

13  during the time period, and part of the reason we did that

14  is we wanted to compare things like curfew arrests at a

15  protest versus curfew arrests not at a protest.  Kind of

16  on the theory that we think that curfew arrests were

17  pretty much only happening at protests.

18           MS. IBRAHIM:  Your Honor, if I may, anything

19  related to looting curfew arrests, things like that was

20  already turned over.  I believe these 395 documents were

21  more things along the lines of like domestic violence or

22  other types of arrests that were not similar to the types

23  of arrests that are in this litigation.

24           MX. GREEN:  And assuming that's true, I think

25  we have no need for the documents.  Perhaps the best

```
 1                          PROCEEDINGS                17
 2  solution is to have some kind of declaration confirming
 3  that, and then we could be done.
 4            THE COURT:   Who's the one who actually looked
 5  at these 395?  Someone on this call?
 6            MS. IBRAHIM:   It is somebody on our team, Your
 7  Honor, but I don't believe he's a participant on this
 8  call.
 9            THE COURT:   All right.  Can you get that person
10  to file a declaration explaining exactly what these are
11  and what the nature of these things are and give it to the
12  other side?
13            MS. IBRAHIM:   Yes, Your Honor.
14            THE COURT:   Okay, do that within a week.
15            MS. IBRAHIM:   Thank you, Your Honor.
16            THE COURT:   Now, we have what I gather are
17  4,000 or so attachments to emails.  I mean I wish this had
18  been raised sooner, and I know that plaintiffs feel it's
19  the City's fault for not responding to requests promptly,
20  to meet and confer, and the City hasn't denied it took
21  them six weeks on this one.  On the other hand, it seems
22  like this was happening with productions that happened
23  long, long ago.  I don't agree with the City's
24  interpretation of the ESI specifications, but that's
25  different from saying that there wasn't at least some
```

1                         PROCEEDINGS                    18

2   degree of ambiguity on this.

3           So what we need to do is solve this problem.  I

4   mean the principle has to be that attachments are

5   responsive and, therefore, must be produced.  I think

6   we're now back in the situation of figuring out whether

7   you get the full five weeks which ends on July 22 or

8   whether it's going to be something sooner than that --

9           MX. GREEN:   Your Honor --

10          THE COURT:   Mx. Green, is there anything you

11  want to add before I figure out a date?

12          MX. GREEN:   Yes, Your Honor, and the answer to

13  this is there are two different kinds of flip sheets that

14  they use.  They use flip sheets for privilege and non-

15  responsive, I'm sorry, there are three kinds.  There are

16  privileged flip sheets, there are privileged and non-

17  responsive flip sheets, and there are non-responsive only

18  flip sheets.  They've reviewed this.  They have confirmed

19  it, and I think the only protection they need is the 502

20  order.

21          THE COURT:   Well, they just, they denied the

22  other ones that they've reviewed it for privilege.  Ms.

23  Ibrahim, have these all been for reviewed for privilege or

24  not?

25          MS. IBRAHIM:   No, they have not, Your Honor,

```
 1                        PROCEEDINGS                    19
 2   and if I could just quickly speak to the examples that
 3   plaintiffs cited in their letter --
 4            THE COURT:   No, no, I don't want to do
 5   examples.  The examples are completely irrelevant to me.
 6   We have a principle here.  The principle is that they
 7   asked for attachments to emails, they should get the
 8   attachments to emails.  I recognize there was some
 9   ambiguity in the ESI protocol.  I think it should've been
10   discussed by the City instead of just assumed.  But we are
11   where we are.  I don't care what any of these documents
12   say, so I don't know why you need to talk to me about
13   documents in order to answer the question of whether you
14   reviewed this for privilege.
15            MS. IBRAHIM:   No, we did not review this for
16   privilege, Your Honor.
17            THE COURT:   So, Mx. Green, I don't know what to
18   tell you.  The same answer is for within document
19   redaction.
20            MX. GREEN:   I mean, Your Honor, I just, I don't
21   understand the answer from defendants on that.  There are
22   three different kinds of flip sheets.  How are they saying
23   they didn't - there is a flip sheet that's in the middle
24   of that Venn diagram that they used.  I don't understand
25   how they are saying they didn't review it for privilege
```

1                            PROCEEDINGS                20

2   when they have invoked privilege on many attachments.  And

3   invoked it alongside non-responsiveness.  And I understand

4   Ms. Ibrahim has her marching orders, but I think it's

5   probably relevant that she was not involved in the review

6   process.

7              THE COURT:  Well, you're trying to get an

8   answer to the question, it's a reasonable question which

9   is how did it come about that you reviewed some documents

10  and determined that they were both non-responsive and

11  privileged and for others you determined they were non-

12  responsive.  You obviously conducted a privilege review on

13  non-responsive documents.  Why do you believe that the

14  other non-responsive documents weren't subject to a

15  privilege review?

16             MR. DISENSO:  Your Honor --

17             MS. IBRAHIM:  Your Honor - oh, go ahead,

18  Anthony.

19             MR. DISENSO:  Hi, Your Honor, this is Anthony

20  DiSenso.  I just want to - I'm not particularly - I'm not

21  at this point clear on why some of the documents were

22  marked for both privilege and non-responsiveness in the

23  flip sheet.  I can tell you that our standard review

24  protocol, which is, you know, just based on an efficiency

25  workflow, is that if a document is non-responsive, the

1                            PROCEEDINGS            21

2   reviewer is instructed to mark it as such and move on and

3   not assess the document for privilege.

4           THE COURT:   So how did some get assessed for

5   privilege?

6           MR. DISENSO:   That I don't know, Your Honor.

7           THE COURT:   I mean one could guess.  I mean

8   it's – Mx. Green, it's not outside of the realm or the

9   reason that someone would – do you do multiple layers of

10  review, Mr. DiSenso or was it just one person?

11          MR. DISENSO:   We have multiple layers of

12  review, and it is possible, Your Honor, that some of these

13  documents were initially coded as responsive, in which

14  case they would've gotten a privilege review and then were

15  changed to non-responsive on a secondary review.

16          THE COURT:   All right.  Mx. Green, I think

17  we've gotten as much of an answer on this as we're going

18  to get.

19          MX. GREEN:   I mean, Your Honor, what Mr.

20  DiSenso just said suggests that if, that dual coded

21  documents should be very rare.  In fact, there are about

22  5,000 dual coded documents.  So I don't think that

23  explanation holds any water.  It's – oh, I'm sorry, no,

24  that number was redactions.  I misread my notes.  But --

25          MS. IBRAHIM:   Your Honor, there's only about

```
 1                        PROCEEDINGS                    22
 2   130 or so of those documents that are coded NR and
 3   privileged.  So it's, you know, it's out of hundreds of
 4   thousands of documents.
 5            MX. GREEN:   But, Your Honor, I do think the
 6   broader point, if we zoom out, because I mean it sounds
 7   like the Court has decided how it wants to handle this, so
 8   I know I'm not going to convince you to do something else.
 9   But the broader point that I do think we ought to discuss
10   is the serious quality control issue this seems to
11   reflect.  Right?  Mr. DiSenso can't explain what happened
12   here.  It's a guess.  And, you know, all of this to me
13   speaks to, I don't know, just that we are not sure about
14   anything that happened in defendant's production, and, you
15   know, give the way some of these documents are coded, it
16   also does to me raise the question of if there was a
17   reviewer that marked certain of the documents that we've
18   discussed as non-responsive, and we only know about those
19   because they happened to be attached to emails, I'm very
20   worried about what's in the hundreds of thousands of
21   documents that we don't have any way of seeing how they
22   were coded.
23            THE COURT:   I mean you mean the billions of
24   documents that the City holds that they view as non-
25   responsive, whatever, yes.
```

| 1 | PROCEEDINGS | 23 |

2          MX. GREEN:   Not the billions of documents --

3          THE COURT:   You don't know what that number is.

4          MX. GREEN:   Right, well, we do know the review

5 population in this case was 500,000 documents, and we also

6 know the defendants reviewed it using an active learning

7 algorithm that learned from the coding that was done.  So

8 that algorithm was taught, for example, that a video of a

9 protest is not responsive based on what happened here.

10 And that to me, you know, that calls into question a lot

11 about what's going on.

12          THE COURT:   Well, I mean that's a good point,

13 and I think we should get to it.  Let me just finish up on

14 this, and then we'll come back to that.  All right?

15          MX. GREEN:   Understood.

16          THE COURT:   Okay.  All right, so you asked for

17 five weeks from June 15.  I think that's a little lengthy.

18 I don't – you know, the more this gets delayed, the more,

19 if we have a deposition in which some of these issues were

20 raised, there's the possibility that someone might need to

21 be brought back which is extremely inefficient.  We're not

22 going to be delaying depositions for reasons that I'll be

23 explaining shortly.  Depositions have to start going

24 forward immediately and on a very heavy schedule.

25          So I'll give you, you know, let's say four weeks

1                           PROCEEDINGS                    24

2   from the date that you originally requested, June 15, that

3   takes us to July 15, which is two weeks from today.

4   That's to - you know, anything - you have to turn over all

5   this.  If you need a 502(d) order, you can ask me for it.

6   If, you know, that's the most I can give you; otherwise,

7   anything that was redacted as non-responsive has to be

8   turned over.  That means both with document redactions and

9   the attachments, and the only exception for right now are

10  things like nine-digit numbers or something that I made a

11  specific ruling on like the disciplinary history

12  redactions.

13          MS. IBRAHIM:   Your Honor, I actually --

14          THE COURT:   Yep.

15          MS. IBRAHIM:   -- more time as we didn't

16  actually --

17          THE COURT:   No, you're just going to turn it

18  over.  If you need a 502(d) order, that's the solution to

19  this.  Your request for more time is denied.

20          Any questions other than the issue you just

21  raised, Mx. Green, any questions about the relief

22  requested and your letter?

23          MX. GREEN:   I think that the balance of relief

24  that I would raise kind of falls into the issue I just

25  raised.  So no.

```
1                        PROCEEDINGS                    25

2          THE COURT:  Okay --

3          MX. GREEN:  Or, I'm sorry, Your Honor, Rule 37

4   costs as least as to redactions.

5          THE COURT:  All right, Ms. Ibrahim, any issues

6   or questions about my ruling, putting aside Rule 37 and

7   Mx. Green's request about the propriety of the non-

8   responsiveness review in general?

9          MS. IBRAHIM:  I just want to make sure I

10  understand your order correctly, Your Honor.  You are

11  giving us two weeks from today to --

12         THE COURT:  From tomorrow.

13         MS. IBRAHIM:  From tomorrow to complete our

14  review, and we are to give a declaration from the person

15  who reviewed these 395 standalone documents within one

16  week.

17         THE COURT:  Yes, characterizing what they are.

18         MS. IBRAHIM:  Yes.

19         THE COURT:  That goes to the other side.  It

20  doesn't have to be filed.

21         MS. IBRAHIM:  Okay, understood, Your Honor.  I

22  just want to be clear on that.  I don't have any other

23  issues to raise.

24         THE COURT:  Okay.  If you need the 502(d)

25  order, give me a sample, you know, after first discussing
```

1                              PROCEEDINGS                    26

2  with the other side, and I'll issue it.

3            MX. GREEN:   Your Honor, I think there may even

4  be a 502(d) order for some purpose or another already on

5  the docket.  So I think that will be very easy.

6            THE COURT:   Okay, well, let's just say it's

7  covered by it.  Okay, on the issue of the propriety of the

8  redactions.  Now, this raises the issue I didn't want to

9  start talking about on the phone call, but the City has

10 already conceded that there are at least two items that,

11 in fact, were responsive.  So why should we not be

12 concerned, Ms. Ibrahim, or someone else, about whatever

13 the machine learning protocol occurred, that occurred

14 making an error of this kind?  Is this not a concern, and

15 if so, why not?

16           MS. IBRAHIM:   Your Honor, these were two

17 examples that were cherrypicked by plaintiffs for their

18 motion.  We all know that discovery is not a perfect

19 process, especially when we're talking about hundreds of

20 thousands of documents and, you know, plaintiffs pointed

21 to two examples out of hundreds of thousands of documents.

22 Reviewer error does happen, and --

23           THE COURT:   Well, was it reviewer error or was

24 it some kind of other error?

25           MS. IBRAHIM:   Well, no, Your Honor, we believe

1                        PROCEEDINGS                    27

2  it was reviewer error here that led to this.  So, you

3  know, we can't expect the discovery process to be perfect

4  when we're talking about this large number of documents,

5  and that is why we have agreed to re-review all of those

6  documents to ensure that we are complying.

7              MX. GREEN:   Your Honor --

8              THE COURT:   Well, hold on a second.  Hold on,

9  hold on, hold on.  Hold on.  Re-review.  I hope you

10 understand, Ms. Ibrahim, you're not re-reviewing for

11 responsiveness.  That's not what I ordered.

12             MS. IBRAHIM:   No, Your Honor, we are re-

13 reviewing the documents that were withheld for non-

14 responsiveness for privilege and other protections.

15             THE COURT:   No, no, no, stop.

16             (interposing)

17             MS. IBRAHIM:   -- or --

18             THE COURT:   Ms. Ibrahim, Ms. Ibrahim.  You're

19 not reviewing for responsiveness.  Was I not clear on

20 this?

21             MS. IBRAHIM:   Yes.

22             THE COURT:   I was not clear or I was clear?

23             MS. IBRAHIM:   It was awkward to me, Your Honor,

24 but I understand now.

25             THE COURT:   You're not reviewing for

 1
 2  responsiveness.  I've ordered they're all to be produced
 3  except for nine-digit numbers.
 4          MS. IBRAHIM:  I'm sorry, so you're talking
 5  about the NR redactions within documents or the withheld
 6  documents?  I think that's what I'm unclear on.
 7          THE COURT:  Both.  The redactions within
 8  documents all need to be produced and the attachments to
 9  emails all need to be produced.  There's no review for
10  responsiveness going on.
11          MS. IBRAHIM:  Okay, Your Honor.
12          THE COURT:  The only thing --
13          (interposing)
14          THE COURT:  -- you say you need to review for
15  privilege or the nine-digit numbers or whatever it is.
16  That's the only thing that you're reviewing for.
17          MS. IBRAHIM:  Got it.  Thanks, Your Honor.
18          THE COURT:  Okay, well, maybe that'll make it
19  easier for you to meet the deadline.  Okay, so now we're
20  back to the original question which you answered, which
21  your answer is no longer satisfactory because you acted
22  like you were checking your responsiveness reviews.  Now,
23  as a practical matter, and maybe this is the solution for
24  right now.  You know, Ms. Green, you're going to be
25  getting a whole bunch of documents that they claimed were

```
 1                          PROCEEDINGS                    29
 2   non-responsive, and maybe it would be better to have a
 3   better record about this when you get those documents
 4   rather than trying to form a solution now.  What's your
 5   views on that?
 6           MX. GREEN:   Your Honor, I think I have – I
 7   think I have three responses.  So the first is I don't
 8   think that this is just user error, and I'd like to talk
 9   about one of the examples if I may.  I don't think there's
10   anything sensitive about it.  It's the email that was
11   attached to a training notice.
12           THE COURT:   That one sentence?  With that one
13   sentence redaction?
14           MX. GREEN:   Yep, yep, it was one sentence, but
15   I think the --
16           THE COURT:   Well, I'm not minimizing it.  I'm
17   just trying to identify it, that's all.
18           MX. GREEN:   Oh, yes.  Yes, I'm sorry.  Then,
19   yes, correct, the one sentence.
20           THE COURT:   Okay, good, so you can refer to it
21   as the one sentence redaction.  Go ahead.
22           MX. GREEN:   Okay, yeah, so the one sentence
23   redaction.  Defendants have I think two times with the top
24   tiers of the quality control on their team again stated
25   that this is non-responsive.  That's just plain wrong.
```

PROCEEDINGS                    30

1

2   Right?  We asked for all documents concerning training.

3   What the sentence is is a sentence that refers to who is

4   responsible for a particular training.  I don't see how

5   anyone could in good faith argue that's not a document or

6   a sentence concerning training.

7           THE COURT:   Okay, Mx. Green, let me just back

8   up for a second because I think the – we don't have to

9   worry right now about redactions within documents because

10  they're impermissible, and I think there may be a

11  qualitative difference between the mental effort that

12  someone puts in to look at a little piece of a document

13  and decide it's non-responsive and how they view that

14  versus how they take, what they do with an entire document

15  to say this is not responsive.  So I'm just a little –

16  this is why I think it's better for you to get these

17  attachments to the emails because that's more like what

18  we're talking about.

19          MX. GREEN:   Understood, Judge, and I think the

20  only reason I'm fixated on this is because it would be one

21  thing if what defendants did when we identified it is say,

22  oh, yeah, that's an obvious error, especially because we

23  quoted the document request in our initial motion.

24  Instead what they did is they told the Court without

25  producing it we've re-reviewed it and it's all non-

1                       PROCEEDINGS                    31

2  responsive.  Right?  We pointed to that one sentence and

3  said we cannot see how anything that could possibly be

4  under here would be non-responsive, and the attorney

5  writing the response, writing the opposition, right, I

6  hope that it was not just kind of an offhand decision that

7  it was non-responsive because that would, you know, I

8  don't think that's what's appropriate for an opposition

9  when there's a motion to compel.  I think that this is,

10 because they argued it, a genuine reflection of what their

11 position on responsiveness is.  And that's why I want, I

12 go to that example.

13          More broadly, I think there's some issues, you

14 know, I think you're right that the attachments we're

15 going to get are going to be helpful but maybe a random

16 sampling of what's called the null set which is the

17 documents that were not produced might, you know, a small

18 random sample of that, maybe --

19          THE COURT:  Okay, when you say the documents

20 that were not produced, you mean documents that somehow

21 were generated – how --

22          (interposing)

23          MX. GREEN:  That were in the review --

24          THE COURT:  It's not the billions of documents;

25 it's something else.

1                          PROCEEDINGS                    32

2              MX. GREEN:   No, it's the documents that were

3    reviewed by defendants' outside counsel and then quality

4    controlled by the law department team, there are about

5    500,000 of those and marks non-responsive or, and maybe

6    the answer is maybe a sample of both of these, or because

7    they did machine learning, what they did is they had a

8    priority queue that put at the front, based on what the

9    machine had learned, documents it believes to be the most

10   likely to be responsive.  And once they – I think it was

11   two rounds of document sets without a responsive document,

12   they cut off review.

13              So there is a population, I think it's a

14   relatively large number of documents that no one has put

15   eyes on that they did collect, and the reason for that is

16   because of the way they trained their machine.  The

17   machine told them there's a certain probability that those

18   documents are not responsive.

19              So maybe the answer, taking a cue from what the

20   Court is thinking about the attachments at issue here, is

21   we should get a representative sample based on the same

22   statistical approach defendants used to confirm their

23   review of both set that was marked non-responsive and

24   never produced and the set that was never reviewed because

25   the machine said they didn't have to.

1                          PROCEEDINGS                        33

2              MR. DISENSO:   Your Honor, this is Anthony

3   DiSenso, maybe I speak on this?

4              THE COURT:   Yeah, go ahead.

5              MR. DISENSO:   I just want to say I don't know

6   Mx. Green is getting this information about our review

7   process because almost none of it is correct.  We did use

8   a prioritization software, and what that does is it

9   prioritizes the review of documents in a queue.  The more

10  likely to be responsive documents come up to the top of

11  the queue.  But it is incorrect to say we didn't after two

12  rounds of review we stopped after not seeing any

13  responsive document.  And it's also incorrect to say that

14  no one has evaluated the null set of documents that were

15  left behind without being reviewed.  We do our own

16  validation on that set which includes sampling that

17  population with a statistically valid random sample of

18  documents, a 95 percent confidence level with a plus or

19  minus 5 percent margin of error, to make sure that we are

20  not leaving behind responsive documents.

21              And to Mx. Green's larger point about the

22  sufficiency of its review, as Ms. Ibrahim stated, in

23  discovery perfection is not the standard, and certainly it

24  cannot be the standard with a document review population

25  of this size.  As we discussed back in November, Your

1                          PROCEEDINGS                   34

2   Honor, as I'm sure you'll recall, we had in place and

3   we've staffed our review team appropriately to ensure that

4   we could do a 10 percent quality control review with the

5   case team, with a (indiscernible) attorneys, every day

6   from the documents reviewed by the review team.  We had

7   consistent feedback from that QC that we provided to the

8   review team.

9           And I will also mention that we worked with

10  plaintiffs on coming up with a definition of

11  responsiveness which was used for the review that everyone

12  agreed on.

13          With respect to these two documents, these two

14  documents that plaintiffs have selected to make this

15  argument, it is not representative of anything.

16          THE COURT:   Okay.  This issue is not dead in my

17  view, but I just don't think this is the place for us to

18  deal it out.  You know, whatever system you used I'm not

19  saying it has to be perfect and it's possible your system

20  has very responsive documents not coming through.  I guess

21  I'm a little surprised at that.  But I want more

22  information before me before I order anything else.

23          I want you to discuss this outside of this phone

24  call or make yourself, Mr. DiSenso.  I'm not adverse to

25  the plaintiffs' being supplied with a very small sample of

PROCEEDINGS                    35

the documents that sort of didn't make your cut after this

process, so they have a little bit of sense of what the

ones that were towards the top but were not, you know,

didn't make the final cut of production.  But we can't do

this now.  But the issue's not dead.  I mean I think it's

something that should be discussed.  I don't know what the

solutions will be if we find it.  But I think the City

needs to be reasonably forthcoming with the plaintiffs to

provide information that will allow them to see what

happened here, and I think the responsive, sorry, the

documents marked as non-responsive as attachments to

emails (indiscernible) supply a nice piece of information,

and I just want to wait before I do anything until the

plaintiffs have had a chance to see those which is not

going to be very long from now.

          Mx. Green, anything else on this before we move

on?

          MS. IBRAHIM:   Your Honor, I just --

          THE COURT:   First Mx. Green and then the

defendants.

          MX. GREEN:   I think the answer is – let me

just, for the record, state I did not mean to imply that

there was not a audit with a representative sample.  I

thought that's exactly what I was saying, and I apologize

```
 1                        PROCEEDINGS                    36
 2   if I was unclear.  The only thing left to my mind is costs
 3   and fees.
 4             THE COURT:  Okay.  And, Ms. Ibrahim, you wanted
 5   to say something?
 6             MS. IBRAHIM:  Yes, Your Honor, I just wanted to
 7   seek a clarification about what we will be producing.  Of
 8   the 4,000 email attachments that plaintiffs have pointed
 9   to that we are withholding, about 2,000 of those or about
10   half are calendar items, icons from signature blocks,
11   things of that nature.  Are you ordering that we produce
12   all that as well, Your Honor?
13             THE COURT:  Well, let me ask you this question.
14   My understanding is that it's easier for, it's just as
15   easy for you to produce as to not produce in a sense.  If
16   you told me there was some burden to doing that and you
17   could prove that these were, you know, irrelevant to the
18   case, I might be willing to hear you.  Does it really
19   matter to you?
20             MS. IBRAHIM:   I think the calendar items would
21   need to be reviewed for privilege would be the only thing
22   --
23             THE COURT:  Okay, and when you say calendar
24   items, I'm just wondering, you know, how do they know that
25   those are not relevant, that's what I'm trying to
```

```
 1                        PROCEEDINGS                    37
 2   understand.
 3            MS. IBRAHIM:   Your Honor, I think based on the
 4   name of the subject line and the name of the item is how
 5   they were able to determine that.
 6            THE COURT:   Give me an example of – I mean I
 7   understand like from image like a signature block, you
 8   know, may not matter, although I suppose it could matter
 9   if it was the only identification of someone's name, but
10   that's probably very unlikely.  But maybe I'm just not
11   thinking this through.  So we have an email from someone
12   to someone else, and whether you say there's a calendar
13   item attached, what is  that?  Is the theory that this is
14   an email saying, you know, let's meet next Thursday at 3
15   p.m. and they're attaching their calendar so it's just
16   duplicating what's in the email?  I mean what's the theory
17   on not producing it?
18            MS. IBRAHIM:   Your Honor, I'm going to let
19   someone from e-discovery speak to that as they reviewed
20   them.  So Anthony or Rachel.
21            MR. DISENSO:   I can speak to this, Your Honor.
22            THE COURT:   Mr. DiSenso.
23            MR. DISENSO:   Yes, Your Honor.
24            THE COURT:   Go ahead.
25            MR. DISENSO:   I think the theory is that it
```

```
 1                           PROCEEDINGS                    38
 2    would be of marginal value that is our assumption because
 3    it is just a calendar notation or something akin to that,
 4    that's --
 5              THE COURT:   I just want to understand what
 6    we're talking about.  Are we talking about literally some
 7    Outlook, you know, invitation, is that, or some other
 8    calendar --
 9              MR. DISENSO:   Yes --
10              THE COURT:   -- type of notation?
11              MR. DISENSO:   Exactly --
12              (interposing)
13              THE COURT:   And that's an attachment?
14              MR. DISENSO:   Well, when we're collecting
15    emails, the Outlook calendar notation also come along, and
16    sometimes when there are, for example, recurring meetings,
17    these types of calendar entries can like form, they look
18    like they're a full family of documents themselves.  So
19    each entry would be like a member of a family of
20    documents.
21              THE COURT:   You know, here's the thing I don't
22    understand.  If it's as innocuous as you say it is, then I
23    don't understand why you would feel a need to review it
24    for privilege, especially since you have a 502(d) order.
25              MR. DISENSO:   Well, we don't know it's
```

1                      PROCEEDINGS                    39

2    innocuous I guess is the point, Your Honor.  We don't know

3    --

4              (interposing)

5              THE COURT:   So if it's not innocuous, there may

6    be some substance in there, in which case the plaintiffs

7    should be getting it.  This is my problem.

8              MR. DISENSO:   Understand, Your Honor.

9              THE COURT:   Okay?  I mean, remember, you have a

10   502(d) order.  It may be perfectly reasonable as an

11   attorney to say, you know what, no one puts privileged

12   information – this is a calendar entry that generated in

13   some weird way, it doesn't have text in it, you don't have

14   to worry about privilege, you know, and we're just, it's

15   reasonable to not review it for privilege.

16             MR. DISENSO:   Well, Your Honor, I think,

17   respectfully, we would still, in order to protect the

18   privilege, calendar entries can have text in them, they

19   could it have privileged information.  And --

20             (interposing)

21             THE COURT:   Okay, well --

22             MR. DISENSO:   -- Your Honor --

23             THE COURT:   -- the plaintiffs should be

24   getting, if that's the case, the plaintiffs should be

25   getting it.  So, Ms. Ibrahim, does that answer your

```
 1                      PROCEEDINGS                    40
 2   question on the calendar entries?
 3            MS. IBRAHIM:   Yes, Your Honor.
 4            THE COURT:   Okay.
 5            MS. IBRAHIM:   In light of that, Your Honor, I
 6   would like to renew my request for maybe an additional
 7   week for this review because that is going to
 8   significantly add to our review.  As the five weeks we had
 9   originally asked for did not include the calendar items
10   and signature blocks.
11            THE COURT:   Well, you're not going to be
12   reviewing signature blocks, are you?
13            MS. IBRAHIM:   I apologize, not the signature
14   blocks, but the calendar items.
15            THE COURT:   How many calendar items are there?
16            MS. IBRAHIM:   I don't know what the difference
17   or how it's split between calendar items and signature
18   blocks, but I do know that both of those amount to about
19   2,000 attachments.
20            THE COURT:   All right, you can produce
21   everything but the calendar items by July 15, my original
22   date, deadline, and you can have another week for the
23   calendar items.
24            MS. IBRAHIM:   Thank you, Your Honor.
25            MX. GREEN:   Your Honor, I almost want to ask to
```

```
 1                          PROCEEDINGS                    41
 2  flip those and part of the reason is because higher level
 3  NYPD members don't keep memo books.  Calendar items are
 4  extraordinarily important in figuring out where people
 5  were during depositions.  In a motion we just filed
 6  seeking, you know, to compel certain documents that
 7  defendants should have produced but didn't in response to
 8  our document requests before depositions.  You know, one
 9  of the key issues is calendar items, and it's because --
10            (interposing)
11            THE COURT:  I'm happy to flip it.  I guess I'm
12  surprised because I would've assumed that the email says
13  let's meet next week at 3 p.m. and attaches this, you
14  know, Outlook items, and that everything you need is in
15  the email anyway.  But --
16            MX. GREEN:  So I think typically --
17            THE COURT:  If you want to flip it, I don't
18  care, that's fine.
19            MX. GREEN:  Okay, fair enough.
20            THE COURT:  So, Ms. Ibrahim, Ms. Ibrahim, we're
21  flipping it.  All the documents have to be produced by
22  July 22, except the calendar entries need to be produced
23  by July 15.
24            MS. IBRAHIM:  Okay, Your Honor, that works for
25  us.
```

1                              PROCEEDINGS                    42

2            THE COURT:  Okay, last issue is attorney's

3    fees.  So, Mx. Green, I mean I've already talked about,

4    you know, the attachments to emails --

5            (interposing)

6            THE COURT:  -- and I think you've taken the

7    hint already on that.

8            MX. GREEN:  Correct, Judge.

9            THE COURT:  Okay, so you want to talk about the

10   redactions within the emails.  You're going to have to

11   somehow parse that out from your, you know, from this

12   other thing, and you want attorney's fees for that, is

13   that correct?

14           MX. GREEN:  That's correct, Your Honor.  You

15   know, I think that they are connected issues, but perhaps

16   we just discount by 50 percent and then recover the rest

17   if we prevail at the end of the day, and maybe that's just

18   the easiest way to parse this.  But I do think, as the

19   Court suggested, right, that there is no justification for

20   redacting for responsiveness in a document review.

21   Defendants have not cited any authority for it, defendants

22   have not provided a justification for doing it, and, you

23   know, I think substantively I don't think there's a whole

24   lot of question that the calls that they are making on the

25   specific documents at issue in this motion are not

```
 1                          PROCEEDINGS                    43
 2   substantially justified.
 3              THE COURT:   All right --
 4              MX. GREEN:   So, you know, I don't – Rule 37 is
 5   mandatory.
 6              THE COURT:   Ms. Ibrahim.
 7              MS. IBRAHIM:   Thank you, Your Honor.  First, I
 8   would like to say that we had already agreed to re-review
 9   and reproduce all of these documents prior to plaintiffs
10   filing that motion, so filing the motion was not really
11   necessary.  And additionally, Your Honor --
12              THE COURT:   Hold on, hold on, hold on, hold on.
13   This is a factual circumstance that absolutely was not
14   presented in your letter, or at least not clearly to me.
15   So you're saying that before the June 7 letter had been
16   filed, you agreed to produce all redactions within
17   documents that were marked as NR – we'll put aside, you
18   know, nine-digit numbers and personal info and
19   disciplinary history that I've ordered otherwise – you're
20   saying you agreed to that before he wrote his June 7
21   letter?
22              MS. IBRAHIM:   Yes, Your Honor, we agreed to re-
23   review and remove the improper redactions, that's correct.
24              THE COURT:   Well, hold on, no, no, hold on.
25   Hold on, hold on.  Not remove the improper redactions.
```

```
 1                         PROCEEDINGS                    44
 2   Did you agree to produce every single redaction other than
 3   the categories I said?
 4             MS. IBRAHIM:   That's my understanding, Your
 5   Honor, yes.
 6             MX. GREEN:   Your Honor, that's not true.
 7             THE COURT:   Okay, Mx. Green --
 8             MX. GREEN:   Yes.
 9             THE COURT:   Okay.  All right, Ms. Ibrahim, when
10   you say that's your understanding, what're you basing this
11   on?
12             MS. IBRAHIM:   I'm basing it on my conversations
13   with the prior attorney, but I believe that what we had
14   agreed to do was re-review all the documents which --
15             (interposing)
16             MX. GREEN:   Your Honor, I can just quote the
17   email.
18             MS. IBRAHIM:   Excuse me, I'm speaking, Mx.
19   Green.
20             THE COURT:   Okay, let's Ms. Ibrahim finish.
21   I'll give you a chance, Mx. Green.
22             MS. IBRAHIM:   My understanding was that we had
23   agreed to re-review all the NR redactions and remove
24   redactions that were not proper, and by that I --
25             THE COURT:   Stop, stop.
```

```
 1                         PROCEEDINGS                    45
 2           MS. IBRAHIM:   My understanding --
 3           THE COURT:   We're having the same disconnect,
 4  Ms. Ibrahim, that we had about 15 minutes ago.  The review
 5  I ordered is not you going through and saying, geez, is
 6  that really responsive or not.  The review I have now
 7  ordered, and I say was required from day one, is just
 8  producing it all.  Is that what you agreed to do?
 9           MS. WENG:   Your Honor, if I may, this is --
10           (interposing)
11           MS. WENG:   Your Honor, if I may, this is Jenny
12  Weng.
13           THE COURT:   Yes.
14           MS. WENG:   As for the redactions is exactly how
15  Your Honor ordered.  We agreed to re-review and produce
16  the non - and produce the - re-review and remove the
17  redactions, except if it was privileged and we will
18  replace it with the proper privilege explanation.  And we
19  also said, you know, the phone number issue, the phone
20  number, if it's obvious it's phone numbers, that is
21  personal, it's privacy, it's something that Your Honor had
22  allowed us to redact --
23           THE COURT:   Okay.
24           MS. WENG:   -- those --
25           (interposing)
```

```
 1                        PROCEEDINGS                    46
 2            THE COURT:   All right.  The City is sticking to
 3  this.  Mx. Green, you have, I mean I don't --
 4            (interposing)
 5            THE COURT:   I think we might, I might need
 6  letters on this, but go ahead.
 7            MX. GREEN:   Your Honor, I can quote an email.
 8  They're just wrong.
 9            THE COURT:   Go ahead.  What's the date and
10  time?
11            MX. GREEN:   I mean this is in a number of
12  emails – here, let's quote, the email --
13            MS. WENG:   It's between – hold on, let me --
14            THE COURT:   Stop, Mx. Green is talking.
15            MX. GREEN:   This is from 5:38 p.m. on June 3,
16  stating, defendants stated that they would re-review to
17  ensure they are, in fact, non-responsive.  That's what
18  they agreed to do.  They agreed to review for
19  responsiveness.  That's the issue.  That's the issue we
20  brought the motion.
21            MS. WENG:   I believe what you're speaking to is
22  the documents.  I'm talking about the redactions.
23            THE COURT:   All right, listen, we're not –
24  stop, everyone stop.  We're not doing this today.  The
25  City, right now, based upon the letters I've seen, I'm
```

1                          PROCEEDINGS                    47

2   prepared to order the sanctions for redactions only

3   against the City.  However, I will give the City a chance

4   to prove to me by whatever means they want that prior to

5   the filing of docket 586 on June 7 they agreed to do what

6   I say they were required all along to do, which is to

7   produce all of the documents with partial redactions in

8   its unredacted form except for the nine-digit numbers and

9   the disciplinary history.  Okay?  If they want to supply

10  proof of that, they can do it, and I'll give Mx. Green a

11  chance to respond.  I mean only do this if you're sure

12  you're right because you're just going to be charged

13  attorney's fees for doing this if you're wrong.

14          And, you know, this is obviously not a huge

15  rush.  So when does the City want to file this letter, and

16  I'll give a date for Mx. Green's reply?

17          MS. WENG:  Your Honor, and also in addition to

18  privilege, correct, because that's what we said.  We would

19  review for privilege --

20          THE COURT:  Yeah, yeah, yeah.  Yeah, yes, yes.

21          MS. WENG:  Okay, okay.

22          MS. IBRAHIM:  Your Honor, I mean I'm – I'm also

23  looking at the, at a June 3 email that Ms. Weng sent to --

24          THE COURT:  I'm not doing this today.  I can't

25  do this now.  I can't have a factual dispute like this

```
 1                         PROCEEDINGS                    48
 2   that was never presented to me.  I'm giving you a chance
 3   to put in whatever you want, when do you want to do it?
 4             MS. IBRAHIM:   Okay, Your Honor.  Would one week
 5   be appropriate?
 6             THE COURT:   One week sounds perfect, July 7,
 7   July 14 for any reply, and I'll give you a written ruling
 8   after that.
 9             MX. GREEN:   Okay.
10             THE COURT:   Okay, anything else on 587 before
11   we turn to scheduling?
12             MX. GREEN:   Yes, Your Honor, can we get an
13   order just directing us to meet and confer within a week
14   on the issue with Mr. DiSenso, given, you know, as I think
15   you know what I'm going to say, one of the issues we're
16   having is defendants' staffing makes it impossible to have
17   meet and confers in any timely manner, and so a court
18   order always helps.
19             THE COURT:   Mr. DiSenso, can you meet within
20   the next week?
21             MR. DISENSO:   Yes, Your Honor.
22             THE COURT:   Okay, so within a week by July 7
23   you should start this discussion.
24             MX. GREEN:   Thank you, Judge.
25             MR. DISENSO:   Yes, Your Honor.
```

```
 1                        PROCEEDINGS                    49

 2             THE COURT:   Anything else on 586?

 3             MX. GREEN:   No, Your Honor.

 4             THE COURT:   From defendant?

 5             MS. IBRAHIM:   No thank you, Your Honor.

 6             THE COURT:   Okay.  Let's talk about scheduling.

 7   I gather it's Ms. Frick, is that right?

 8             MS. FRICK:   Yes, Your Honor.

 9             THE COURT:   Okay.  All right, so I just want

10   everyone to know that I've been in consultation with Judge

11   McMahon on this.  Our assumption had been that this could

12   all be done by the end of the year.  I just recognize that

13   there's a lot of depositions that are expected.  But

14   there's limits to how much we can tolerate in terms of how

15   long it's going to take.

16             I've been – the City's proposal was way too far

17   out.  December 31 was the ideal.  I'm prepared to or we're

18   prepared to accept the plaintiffs' position for fact

19   deposition completion, there'll be some adjustment from

20   (indiscernible), on liability experts that I'll tell you

21   about.  There are – I did a calculation, there are 185

22   business days between next week, July 5, and March 31.  If

23   we take out the winter holidays, it's still 177 days.  I

24   recognize that there's going to be perhaps close to a

25   similar number of depositions.  What that means is you
```

```
 1                       PROCEEDINGS              50
 2  need to be doing a deposition a day.  Any day you don't do
 3  that, you need to recognize there's another day where it's
 4  going to be two depositions or half day with two
 5  depositions or two simultaneous depositions.  But we have
 6  to start going through this and it has to be done a very
 7  tight schedule.  So --
 8            MS. ROBINSON:   Your Honor --
 9            THE COURT:   I mean I assumed your position was
10  set forth in this letter.  I mean, Ms. Ibrahim – who was
11  that?  I'm sorry --
12            MS. ROBINSON:   I'm sorry, this is Amy Robinson
13  for the defendants.
14            THE COURT:   Okay.
15            MS. ROBINSON:   The only thing I want to say is
16  for, you know, we have over a hundred depositions that
17  have been noticed that still haven't been taken, and that
18  is, according to plaintiffs, 145 deposition days.  And for
19  145 deposition days, there are going to be 145 prep days.
20  And that just doesn't fit into the calendar.
21            THE COURT:   All right, I'm well aware of that.
22  Well, it does if you have multiple people – if you get one
23  person taking a deposition, it wouldn't.  One person
24  dealing with all depositions it wouldn't, but if you have
25  more than one person, then it does.  The deadline's not
```

```
 1                         PROCEEDINGS               51

 2   going to be moved.  I don't have authority to move it, and

 3   I mean you can try Judge McMahon, but she's already said

 4   she's not moving it.  So it's March 31, and that has to be

 5   worked into.

 6         Now, in terms of making sure that it happens,

 7   you know, you need to - I don't think doing it in little

 8   15 deposition blocks is going to work.  So there - I mean

 9   I would rather have the parties figure - and the parties

10   need to understand that this is going to happen, and I

11   would rather have them figure out the best mechanism.  If

12   they can't, I would certainly get involved.  I would think

13   that scheduling specific individuals on specific days as

14   far out as possible is the best way to do it, and also to

15   schedule only through the 28th so that you have at least a

16   little bit of leeway - February 28 - so you have a little

17   bit of leeway for the period after that to fit in

18   stragglers or problems or unexpected issues.  I mean

19   that's my sort of initial inclination on this.

20         I don't have, you know, specific desires as to

21   how to control the process.  If the parties are otherwise

22   happy with how the process is going, but the second

23   they're not happy, then I'll simply order deposition days

24   as needed.  Someone spoke.  I don't know if was --

25              (interposing)
```

1                          PROCEEDINGS                    52

2          MS. ROBINSON:   It's Amy Robinson, Your Honor.

3   I just wanted to point out that a large number of these

4   depositions are high ranking and 30(b)(6) people who, you

5   know, frequently get called away for emergencies, get

6   called away for mandatory meetings.  It's just very

7   difficult to say that the Chief of Department is going to

8   be available on such and such a day and then, in March or

9   January or December and we can in fact accommodate that.

10         THE COURT:   Well, that's why you should

11  schedule it, that's why you should schedule such people

12  for whatever date you need to to accommodate it.  If that

13  means November, December, then that's when you should be

14  scheduling it for.

15         MS. ROBINSON:   And another issue is that

16  they're continuing to notice depositions.  When I say a

17  hundred, it's a hundred plus, and deposition notices

18  continue to come.

19         THE COURT:   Well, I mean I'm not saying that

20  there should be unlimited number of depositions.  I

21  invited the City more than a year ago to come to me and

22  say to the extent that there are, you know, issues about

23  numbers, to the extent you want, to have some limitations

24  on that because plaintiffs are not being reasonable, you

25  should come to me.

1                              PROCEEDINGS                      53

2             Now, part of the problem has been, contrary to

3    what the City told me, they did not, in fact, produce all

4    documents by July 31 of 2021.  So some of this, the fact

5    that there may be stragglers popping up now may be due to

6    document production issues that are really the City's

7    responsibility.

8             MS. ROBINSON:   Well --

9             THE COURT:   That doesn't mean – hold on.  That

10   doesn't mean I'm going to be unreasonable if, in fact,

11   there's a dispute about who should or should not be

12   deposed, but I think we've had a very significant

13   production to date.  If we need to have a deadline for

14   when they say they're going to add any more deponents, I

15   think you should talk about it first.  I absolutely want

16   to be reasonable.  I don't want to be unreasonable with

17   the City.  It's not the case that every single possible

18   person necessarily gets to be deposed in a litigation.

19   That doesn't always happen that way.  On the other hand,

20   the plaintiffs are entitled to, you know, people that are

21   important to their case.  So --

22            MS. ROBINSON:   May I give you examples of what

23   the people that they're noticing?

24            THE COURT:   I'm not sure what, I'm not sure

25   it's going to help to give me the example.  What we need

```
 1                           PROCEEDINGS                 54

 2   is a process.

 3              MS. ROBINSON:   Okay.

 4              THE COURT:   If you think that there's a

 5   problem, it's got to be teed up in some fashion for me as

 6   soon as possible (indiscernible) what you're up against.

 7   I think it will help you.

 8              MS. ROBINSON:   Understood.

 9              THE COURT:   Okay, in terms of liability,

10   there's going to be slight cutting down on that.  I cannot

11   - it can't be the case that no preparation could be done

12   on the plaintiffs' liability experts until the very last

13   day of depositions, and especially if we're going to be

14   making efforts to depose people before even the 31st, in

15   other words, we're trying to put these in by February

16   28th.

17              So it's going to be a slight cutting down of the

18   expert report dates.  Right now we have four for the

19   reports and then four weeks for depositions.  That's going

20   to be cut down to three, six, three, three.  And that's

21   going to take us to I think July 31.  I'll be issuing a

22   scheduling that sets all this out.  Judge McMahon is going

23   to separately set a date for class certification motions.

24              I'm prepared to talk about - I'm not sure

25   there's anything else on the schedule.  I know there's
```

1

2   another letter, docket 627, about the, you know,

3   information in advance of depositions.  Before we get to

4   that, any questions on the schedule?  I know you haven't

5   seen the actual order, but I was giving you enough hints.

6   Oh, I'm sorry, on the intervenor's demands, I'm going to

7   give them a deadline of July 7.  If something comes in

8   after that date that justifies a late submission from

9   discovery request, they can come to me and ask for

10  permission if they can show good cause.  But otherwise I

11  am going to put down the July 7 date.  The designation

12  dates are fine.

13          I'm not going to put down --

14          (interposing)

15          THE COURT:   -- the schedule (indiscernible)

16  depositions because this should be an immediate process,

17  and I mean I'm not even sure what the October 14 deadline

18  would mean, and I don't - 15 at a time is not viable

19  either.  I think - I mean maybe what I am saying is that

20  everyone needs to be scheduled by a certain date.

21  Frankly, I think October 14 may be too late for that, but

22  if the parties think that will work, I suppose I could

23  live with that.  Hold on, let me just make sure I have

24  addressed everything else.  I think I have addressed

25  everything else, and now I'll hear from each side if

```
 1                          PROCEEDINGS                     56
 2   there's anything else they want to say.  And I think that
 3   was Ms. Robinson who was talking, so I'll hear from Ms.
 4   Robinson first and then Ms. Frick.
 5              MS. ROBINSON:   No, Your Honor, I mean I think
 6   you made yourself clear and that is we have issues with
 7   the noticed depositions, that we need to tee that up.  And
 8   --
 9              THE COURT:   Okay.  Ms. Frick, anything else
10   before we get to that last issue?
11              MS. FRICK:   Yeah, I'll just say that the
12   October 14 deadline for scheduling all noticed depositions
13   was essentially a compromised position that plaintiffs
14   have offered.  To the extent that the Court thinks they
15   should be sooner, plaintiffs are certainly amenable to
16   that.
17              THE COURT:   Yeah, I think I may put something
18   in sooner because I don't see how this happens unless
19   people know - there's going to be too much temptation to
20   just go at a preferred pace for some period, and what
21   needs to happen is there needs to be an even pace
22   throughout.  It sounded like there were 20plt depositions.
23   I don't know what's stopping them from happening, you
24   know, immediately.  Some of those --
25              MS. FRICK:   Yes, we agree, Your Honor.
```

```
 1                        PROCEEDINGS                    57

 2          THE COURT:   Some of those the City may think,

 3   you know what, I don't want to spend a whole, I don't want

 4   to reserve a whole deposition day for those people.  I

 5   know I can do each of them in half days and have half

 6   days, and that will save you some time at the end.  But

 7   the pace has to be the same throughout or it can't be

 8   accomplished, and if it's whatever party is responsible

 9   for not getting it accomplished, it's going to bear the

10   brunt of whatever sanction happens because the deadline is

11   not going to be extended.

12          MX. GREEN:   Your Honor, this is Remy Green.  I

13   just want to say that the Hernandez plaintiffs have

14   actually been, and I've never done this in a case of mine

15   before, pushing to schedule our clients' depositions, and

16   I think we even sent the City a set of dates for everyone

17   during the stay --

18          THE COURT:   Okay, that's fine.  That's fine.  I

19   don't really understand why it hasn't happened, but no

20   reason it can't happen next week or immediately.

21          Okay, my only issue on what happens in advance

22   is I couldn't tell from this letter whether the City had

23   set forth what it wanted to say, whether it wanted to do

24   it orally.  I'm happy if they want to put like a letter in

25   and then have another conference early next week, that's
```

1                           PROCEEDINGS                    58

2   fine --

3           MS. FRICK:   Yes, Your Honor.

4           THE COURT:   -- I just - unless 617 I couldn't

5   tell if this letter was jointly composed or not.

6           MS. ROBINSON:   It was not jointly composed, and

7   the City would like to be heard on it.  We had - I had

8   emailed Mr. Lieb, the author of the letter, an email

9   yesterday asking for consent with respect to an extension,

10  as I have document request and DRI's to respond to and a

11  deposition to do and various things, to extend that to a

12  week our response.  And then we would like to be heard on

13  that.

14          THE COURT:   Okay, and that, you know, that's

15  fine for the future.  I'm slightly worried about the short

16  term, you know.

17          MS. ROBINSON:   Well, we're taking depositions

18  in the short term.  We have scheduled depositions --

19          THE COURT:   Right, I think Mr. Lieb wanted to

20  do this as soon as possible so that something could happen

21  in the short term.

22          MS. ROBINSON:   Yeah, things are happening in

23  the short term.

24          THE COURT:   It sounds like --

25          MS. ROBINSON:   Depositions are being taken.

1                        PROCEEDINGS                    59

2   And --

3            THE COURT:   No, no, no, I'm not saying that

4   depositions - I know that.  I'm saying --

5            MS. ROBINSON:   Okay.

6            THE COURT:   -- production of documents or

7   information or topics or whatever else, you know, I'll

8   issue some final order after I hear from you next week,

9   but in the short term I feel like you need to do

10  something.  I don't know if it's Ms. Lieb or --

11           MS. FRICK:   Your Honor, Mr. Lieb is my partner.

12  I drafted this letter.  I'm on vacation this week, so he

13  was just handling the emailing and the filing yesterday.

14  But I'm fully prepared to discuss, and I know that, as I

15  understand it, Mr. Lieb communicated the plaintiffs'

16  position to Ms. Robinson yesterday that we would consent

17  to, you know, an extension of one or more days rather than

18  a week for exactly the reason that you're raising here.

19           I think the short-term solution here is that, as

20  I understand it, we have depositions that are going on

21  this week and next week.  Plaintiffs are prepared to, you

22  know, provide some exhibits and topics on a non-exhaustive

23  basis, meaning we're not able, basically exactly the

24  position that we put in the letter.  And so long as the

25  defendants, that counsel will not be instructing

```
 1                        PROCEEDINGS                    60
```

 2  defendants not to answer questions about other exhibits or

 3  other topics, then I don't think we have a huge concern

 4  about the depositions that are scheduled and that are

 5  taking place this week and next week.

 6          If that's not going to be defendants' position,

 7  then obviously that is a concern.  We obviously don't want

 8  to have to recall people.

 9          THE COURT:  Okay.  All right, this obviously

10  under Rule 30 there can't be an instruction not to answer

11  a question about anything other than for privilege.  So

12  that's easy.  So it sounds like we can make it through the

13  next week or so.  So why don't we give you, I don't know,

14  your week is running from when, Ms. Robinson, the day you

15  spoke to Mr. Lieb?

16          MS. ROBINSON:   From today.

17          THE COURT:  From today, okay, July 7 for your

18  letter, and then let's just have a conference on the 8th.

19          MS. ROBINSON:   I believe I have a deposition on

20  the 8th, but I may be able to --

21          THE COURT:  That's ironic.  I mean I can do the

22  10th if you think that's better.

23          MS. ROBINSON:  Okay.

24          ATTORNEY:  Your Honor --

25          THE COURT:  Yep.

1                        PROCEEDINGS                   61

2              ATTORNEY:   I believe the 10th is, well, first --

3              THE COURT:   The 10th, yes, yes, is a Sunday.

4    How about the 11th?  Yep, go ahead.

5              MS. FRICK:   I just wanted to raise a concern I

6    have that, from what I can tell on the plaintiffs' end, I

7    think kind of helping to coordinate these issues about

8    depositions, and it does seem like Ms. Robinson is the

9    only person on the City who is dealing with the

10   depositions and doing the bulk of the scheduling and the

11   prep and the defending and I have concerns.  Obviously she

12   has expressed her concerns about that, and I wonder if

13   there needs to be some kind of court order that we need

14   additional staffing to actually make this happen.

15             MS. ROBINSON:   Well, Your Honor, that's not

16   true, and we have, we do have a staff of people working,

17   who will be working on the pre-deposition protocol and we

18   have several people that will be taking these, defending,

19   taking and defending these depositions.

20             THE COURT:   Okay, that's good to hear.  I'm not

21   going to start ordering staffing at this point.  I already

22   made clear that if either side is not doing what needs to

23   be done to get the depositions scheduled in the way we

24   discussed, there will be consequences.  And each side is

25   certainly to tell me as soon as possible when they see

```
 1                        PROCEEDINGS                    62
 2    something like that coming so no one's blindsided.  Okay -
 3    -
 4            MS. FRICK:   And just the last point, the last
 5    point, Your Honor, is to the extent that, you know, your
 6    order sets out quite clear that there can be no
 7    instruction not to answer other than privilege, I'm not
 8    sure if there really even is a dispute at least in terms
 9    of what plaintiffs can provide defendants.
10            THE COURT:   You're talking about the long term,
11    there's no long-term dispute?
12            MS. FRICK:   Well, I don't think that there
13    would be - I guess there's still a dispute on whether the
14    defendants are just refusing to provide relevant and
15    responsive information that we need to coordinate these
16    depositions.  But I don't think that there is the dispute
17    on plaintiffs' obligations.  Perhaps (indiscernible) we
18    should wait to see the letter, I apologizes.
19            THE COURT:   Ms. Frick, you should talk, feel
20    free to talk to Ms. Robinson if you think you guys can
21    reach an agreement.  And if not, I won't get a letter on
22    the 7th or someone will tell me that the conference is
23    going to be cancelled.  On the 11th I have something in
24    the morning, and I have something that's going to take me
25    till about 2:45.  So 3 p.m. maybe the 11th?
```

```
 1                          PROCEEDINGS                    63
 2             MS. ROBINSON:   That's fine for me, Your Honor.
 3             MS. FRICK:   That's fine, Your Honor.
 4             THE COURT:   All right, so 3 p.m. just on this
 5   issue raised in 627 whatever responsive letter there is.
 6   Ms. Frick, if you feel that whatever that letter that
 7   comes in on the 7th it'll make my life easier to reply to
 8   it in some way, feel free to reply.   Otherwise, we'll hear
 9   you orally on the 11th.
10             MS. FRICK:   Thank you, Your Honor.
11             THE COURT:   Okay, anything else for today from,
12   and all that's left, of course, is what we just talked
13   about, 627, so I'll just turn to Ms. Frick, anything else,
14   Ms. Frick?
15             MS. FRICK:   No, Your Honor.
16             THE COURT:   Ms. Robinson, anything else on
17   this?
18             MS. ROBINSON:   No, Your Honor.
19             THE COURT:   Ms. Robinson, are you now the lead
20   attorney on this case?
21             MS. ROBINSON:   No, Your Honor.
22             THE COURT:   Who is the lead attorney?
23             MS. ROBINSON:   I don't know who the lead
24   attorney, I wouldn't know who I would say is the lead
25   attorney, but I am definitely a point person for the
```

1                          PROCEEDINGS                    64

2  depositions, but I do have supervisors who are on the

3  team.  So I would not say that --

4            (interposing)

5            THE COURT:   I mean we used to have a lead

6  attorney.  I assume that's a good thing.

7            MS. ROBINSON:   Well, then, okay, then if we're

8  talking about the lead attorney that left, now we have two

9  that replaced her.

10           THE COURT:   Okay, who are they?

11           MS. ROBINSON:   And it's not me because I have,

12  those two are supervisors.  But my bosses.

13           THE COURT:   Is it top secret who these two co-

14  lead attorneys are?

15           MS. ROBINSON:   The two lead attorneys would be

16  Jenny --

17           MS. NELSON:   Your Honor, this is Ms. Nelson.

18  Jenny Weng and I are supervising the case.  Ms. Weng is –

19  if Your Honor needs a specific person as lead attorney,

20  that would be Ms. Weng.  But we're both supervising the

21  case at the moment.

22           THE COURT:   Okay, good, I have my answer then.

23  All right, thank you everyone, and for those who are

24  appearing, it'll be the 11th at 3 p.m.  Thank you and good

25  bye.

```
 1                        PROCEEDINGS                      65

 2           MX. GREEN:   Thank you, Your Honor.

 3           ATTORNEY:   Thank you, Your Honor.

 4           MS. ROBINSON:   Thank you, Your Honor.

 5           THE COURT:   Okay, thank you, everyone, good

 6   bye.

 7           (Whereupon the matter is adjourned.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

66

## C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, In Re: New York City

Policing During Summer 2020 Demonstrations, docket

#20cv8924, was prepared using PC-based transcription

software and is a true and accurate record of the

proceedings.

Signature _____ *Carole Ludwig*

                CAROLE LUDWIG

Date:   July 6, 2022