```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                          :
                                        Docket #20cv8924

 IN RE NEW YORK CITY POLICING   :
 DURING SUMMER 2020 DEMONSTRATIONS

                                : New York, New York
                                  July 11, 2022
----------------------------------: TELEPHONE CONFERENCE


                        PROCEEDINGS BEFORE
              THE HONORABLE GABRIEL W. GORENSTEIN,
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Sow and Hernandez    COHEN & GREEN PLLC
Plaintiffs:              BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New Jersey  11207


For Payne Plaintiffs:    NEW YORK CIVIL LIBERTIES UNION
                         BY:  ROBERT HODGSON, ESQ.
                         125 Broad Street, 19th Floor
                         New York, New York 10004


For Sierra Plaintiffs:   RICKNER PLLC
                         BY:  ROB RICKNER, ESQ.
                         14 Wall Street, Suite 1603
                         New York, New York 10005


For Gray Plaintiffs:     WYLIE STECKLOW PLLC
                         BY:  WYLIE STECKLOW, ESQ.
                         111 John Street, Suite 1050
                         New York, New York  10038

For Plaintiff People     NEW YORK STATE OFFICE OF
of the State of New      THE ATTORNEY GENERAL
York:                    BY:  LILLIAN MARQUEZ, ESQ.
                         28 Liberty Street
                         New York, New York 10005


Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

For Wood Plaintiffs:        KAUFMAN LIEB LEBOWITZ & FRICK, LLP
                            BY:  ALISON FRICK, ESQ.
                            18 E. 48th Street, Suite 802
                            New York, New York  10017

For Roland Plaintiffs:      THE ABOUSHI LAW FIRM
                            BY:  TAHANIE ABOUSHI, ESQ.
                            1441 Broadway, Suite 5036
                            New York, New York  10018

For Defendants:             NEW YORK CITY LAW DEPARTMENT
                            BY:  AMY ROBINSON, ESQ.
                                 GENEVIEVE NELSON, ESQ.
                                 JENNY WENG, ESQ.
                                 BRIDGET HAMILL, ESQ.
                            100 Church Street
                            New York, New York 10007

## INDEX

### E X A M I N A T I O N S

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---|---|---|---|---|---|
| None | | | | | |

### E X H I B I T S

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

1

```
 1                        PROCEEDINGS                    4

 2            THE CLERK:  We're here in In Re:  New York

 3   City Policing During Summer 2020 Demonstrations, case

 4   number 20cv8924.

 5            Will counsel, please state their appearances

 6   for the record, starting with plaintiffs.

 7            MS. LILLIAN MARQUEZ:  Good afternoon, Your

 8   Honor, this is Lillian Marquez of the office of the New

 9   York State Attorney General on behalf of plaintiffs and

10   the People.

11            MR. WYLIE STECKLOW:  Good afternoon, Your

12   Honor, Wylie Stecklow on behalf of the plaintiffs in

13   the Gray litigation.

14            MR. ROBERT HODGSON:  Good afternoon, Your

15   Honor, this is Robert Hodgson from the New York Civil

16   Liberties Union on behalf of the Payne plaintiffs.

17            MR. ROBERT RICKNER:   Good afternoon, Your

18   Honor, this is Rob Rickner on behalf of the Sierra

19   plaintiffs.

20            MX. REMY GREEN:  This is Remy Green on behalf

21   of the Sow and Hernandez plaintiffs, and while I don't

22   anticipate I'll be speaking today, if I speak I should

23   appear in the transcript as Mx. Green spelled M-X-

24   period rather than Mr. or Ms.

25            MS. ALISON FRICK:  This is Alison Frick for
```

```
 1                         PROCEEDINGS              5
 2   the Wood case.
 3            MS. TAHANIE ABOUSHI:  Good afternoon, Your
 4   Honor, this is Tahanie Aboushi for the Roland
 5   plaintiffs.
 6            MS. AMY ROBINSON:  Good afternoon, Your Honor,
 7   this is Amy Robinson for defendants.
 8            MS. GENEVIEVE NELSON:  This is Genevieve
 9   Nelson for defendants, good afternoon, Your Honor.
10            MS. JENNY WENG:  This is Jenny Weng for
11   defendants, good afternoon, Your Honor.
12            MS. BRIDGET HAMILL:  Good afternoon, Your
13   Honor, this is Bridget Hamill for the defendants.
14            HONORABLE GABRIEL W. GORENSTEIN (THE COURT):
15   Okay, I assume that's everyone.  We are here based on a
16   letter of June 28th filed twice at dockets 625 and 627,
17   and the response at docket 639.  I think we'll start
18   with what the defendants are going to supply plaintiffs
19   and then we'll get to what the plaintiffs are going to
20   supply defendants.  But Ms. Frick, you're speaking for
21   the plaintiffs?
22            MS. FRICK:  yes, Your Honor, thanks very much.
23   So --
24            THE COURT:  Hold on, hold on, I just wanted to
25   know who it was.
```

```
 1                         PROCEEDINGS                    6

 2           MS. FRICK:  Yes, it's me.

 3           THE COURT:  And what I was going to say was

 4   you obviously didn't have the benefit of seeing the

 5   letter though I know you talked to them.  Maybe what we

 6   can do is work off what their proposal is with respect

 7   to that, it may be in their letter or if you need to

 8   confirm what it is we can do that. Maybe you're fine

 9   with it, maybe you have problems, so why don't you let

10   me know.

11           MS. FRICK:  Sure.  So I think that we're

12   relatively close to agreement but I think we need the

13   Court's assistance to get us over the finish line in

14   terms of what we have requested from defendants.  So we

15   have asked for two things, information on the one hand,

16   and crucial documents in kind of three categories on

17   the other hand.

18             So with respect to information we're very

19   close to an agreement.  From the City's letter it

20   appears that the City is agreeing to provide at a

21   reasonable timeline information about the protest that

22   a deponent was present at or involved in the planning.

23   We ask only that that also be supplemented to identify

24   protests that the deponent may have been involved in

25   the response. So not just physically present or
```

1                          PROCEEDINGS                    7

2  involved in the planning, but also in the response or,

3  you know, the investigation afterwards, any aftermath

4  with respect to that protest. And we just ask that that

5  information be provided as early as practical so that

6  we can coordinate our depositions.

7          So I do think that we're quite close to an

8  agreement on that bucket of information.  I can move on

9  to the second category which is the documents that we

10  have asked for and I'm going to --

11          THE COURT:  I'm sorry, I'm sorry, I realized I

12  was on mute, I apologize.

13          MS. FRICK:  Oh, I'm sorry, Your Honor.

14          THE COURT:  I, what I'd like to do is do them

15  one piece at a time so we don't have to sort of go back

16  over it.

17          MS. FRICK:  Sure.

18          THE COURT:  So let me turn to the City, it

19  sounds like they're adding the response to what you

20  put, any problem with that?

21          MS. ROBINSON:  No, Your Honor, the only

22  question that I have, I think we are in substantial

23  agreement, the only question I have is what plaintiffs

24  are referring to as the aftermath.

25          MS. FRICK:  Well, Ms. Robinson, I think it

```
 1                        PROCEEDINGS                    8
 2   depends a little bit about the information that you
 3   learned from --
 4         THE COURT:  Just as a matter of practicality,
 5   Ms. Frick, just address me, I don't want attorneys
 6   addressing each other.
 7         MS. FRICK:  Oh, sure, I apologize, Your Honor.
 8   I think that's a completely valid question and I think
 9   it will depend on the deponent. And so some of these
10   deponents were involved more in kind of after action
11   reviews or discussions about, I would imagine that some
12   are more involved than others in discussions about, you
13   know, what happened or lessons learned --
14         THE COURT:  So you're talking about, so you
15   mean by aftermath you mean after reviews of what
16   happened?
17         MS. FRICK:  I don't think we want to limit it
18   to something as formal as that, but to the extent that
19   there were meetings or discussions, say, at the
20   precinct level or in at some other level about a given
21   protect that had happened, we want to know if the
22   deponent was involved in such discussions, even if that
23   deponent had not, themselves, been present at the
24   protest.
25         THE COURT:  Okay, so you're talking about, we
```

PROCEEDINGS                    9

1
2  just need to put it in a term and, by the way, I want a
3  written order after all this and hopefully my direction
4  will be clear, if not you present me with competing
5  orders, it sounds like what you're looking for is any
6  involvement in a, sort of a self-evaluation of the
7  police department conduct during the protests, is that
8  what you're looking for?
9        MS. FRICK:  I think it might be just more
10 basic than that and it might be our fault for trying to
11 provide examples, but what we want is to know which
12 protests each deponent knows about. And that might be
13 because they were there, but it might be because they
14 had discussions with people who were there or, you
15 know, there were involved in some way with supervising
16 people who were there, or they met to plan the protest
17 but didn't attend, or they had discussions in the
18 precinct afterwards about lessons learned. So I am
19 hesitant to cabin it to something as formal as, you
20 know, some kind of after action review.
21        What we want to know are the protests that
22 each individual deponent, you know, knows the most
23 about and is there to talk about so that we can make
24 sure that we question the deponent on those protests.
25 So we provided an, what I would think of as a list of

PROCEEDINGS                    10

1

2   examples of, you know, whether they were involved in

3   the planning, the execution or the aftermath. I

4   understand that aftermath might be too vague of a term

5   but this is what we're trying to get at.

6          THE COURT:  It is too vague so I'm giving you

7   your chance to give me something else, I'm not sure

8   what, I'd like something, you know, in the form of a

9   phrase rather than in the form of examples, if you can

10  think of a phrase I'm willing to consider it, otherwise

11  I'll try to come up with one, do you have anything?

12         MS. FRICK:  Perhaps formal or informal

13  reviews?

14         THE COURT:  Of the police department's conduct

15  at the protest?

16         MS. FRICK:  Yes, after the fact review or

17  evaluation.

18         THE COURT:  Yes, I thought that's what I was

19  kind of saying, evaluation of the police department's

20  conduct at that protest.

21         MS. FRICK:  Yes, I think maybe if we can say a

22  formal or informal evaluation of the police

23  department's conduct.

24         THE COURT:  Well the way I put it, evaluation

25  I think would include both but, okay. Ms. Robinson, any

```
1                          PROCEEDINGS                    11
2   problem with that?
3            MS. ROBINSON:  No problem with that, Your
4   Honor.
5            THE COURT:  Okay, I think evaluation of the
6   police department's conduct of the protest is fine, I'm
7   not specifying whether it's formal or informal, so I
8   think it includes both.
9            Okay, next category.
10           MS. FRICK:  So then we have documents that
11  we're asking for and we start by noting, as we did in
12  the letter, that these are documents that were all
13  responsive to discovery requests served a year ago.  So
14  but, you know, given where we are now we are kind of
15  willing to take what we can at this point so that we
16  can actually move forward quickly with effective
17  depositions.
18           So the first kind of category of things was
19  all grouped together, we've asked for calendars and
20  texts, text messages, and we've asked for those during
21  a short eight week window when the bulk of protests
22  occurred, May 25th to July 25th.  And the defendants
23  appear willing to provide calendars and texts to the
24  extent that they exist but I believe I understood from
25  their letter that they want to limit it to I guess
```

```
 1                          PROCEEDINGS                12
 2   documents just created on the dates of any protest
 3   identified in our first, you know, information sharing
 4   exercise.  They also seem to want to limit gathering
 5   texts --
 6            THE COURT:  Hold on.  Hold on one second, I
 7   want to read the part of the letter, I mean I'll give
 8   them a chance soon, but I just want to read the part of
 9   the letter that you are talking about that you think is
10   limiting, can you just quote it for me?
11            MS. FRICK:  Oh, sure, let me find it.  Okay,
12   calendars -- sorry, this is on page, the top of page 3,
13   the first full paragraph.
14            THE COURT:  All right.
15            MS. FRICK:  "Defendants agree to provide
16   relevant, responsive, non-privileged calendars and text
17   messages but only should be required to supply any for
18   plaintiffs' 83 Schedule A protest locations." So I took
19   that to mean, I don't really know what that means with
20   respect to texts and calendars, but I took that to mean
21   texts and calendars that occurred on the date of those
22   protests.
23            THE COURT:  Well maybe it doesn't, I assumed
24   it meant concerning those protests, Ms. Robinson?
25            MS. ROBINSON:  What we were referring to would
```

PROCEEDINGS                    13

1

2  be, starting with calendars first, would be the

3  calendars that are for the schedule, the 83 Schedule A

4  dates list of protest locations that plaintiff

5  provided. And even going back to the first, the first

6  prong of this that we discussed earlier, also subject

7  to relevancy and to privilege. And, yes, we are trying

8  to limit it to the 83 Schedule A protest locations.

9          THE COURT:  Okay, I'm a little confused.  Hold

10 on, let's just, let me try to imagine this. The, I'm

11 not sure what a calendar is anymore in terms of what

12 people actually maintain. Is there some department, you

13 know, issued calendar or --

14         MS. ROBINSON:  They use Outlook, Your Honor.

15         THE COURT:  Okay, so they use Outlook, and, I

16 see, so you want to supply their calendars for, let's

17 say, the protest June 1st, you want to supply the

18 calendar for June 1st but only insofar as it mentions

19 protest things, is that it?

20         MS. ROBINSON:  Well, yes, things that are

21 relevant to protests, that things that are not

22 privileged, things that are responsive, not --

23         THE COURT:  Privilege don't worry about, you

24 can withhold what's privileged as long as you did a

25 log, or do a log, or we can talk about that. But what

```
 1                         PROCEEDINGS                    14
```

```
 2   is it that you are imagining not giving? Is it, you

 3   know, they have a meeting with somebody, you know, that

 4   relates to, you know, X murder that occurred on and you

 5   don't want to give that up, is that it?

 6        MS. ROBINSON:  Correct, Your Honor, just

 7   anything that's not responsive, you know, that, I mean

 8   something that is department, that is department issue

 9   or something that, you know, a dentist appointment,

10   things that, you know, things that pop up on calendars

11   that, you know, are not responsive to the protests,

12   themselves.

13        THE COURT:  All right, so Ms. Frick?

14        MS. FRICK:  Well, Your Honor, I think as we've

15   seen already in this case, we've had some issues with

16   determinations of what is, quote, relevant information,

17   and that's why what we have asked for is a kind of,

18   just an eight week period where everything that's not

19   privileged be turned over. Because, to be honest, if

20   they're spending lots of time not dealing with the

21   protests that it helps, is also information that's

22   relevant. It also might not be, for example, with Mott

23   Haven there were, we believe, phone calls or meetings

24   with non-police people that on their face might not be,

25   might not appear to be related to any protest but, you
```

```
 1                      PROCEEDINGS                15
 2   know, we believe that there is a connection there to
 3   the, to how the response ended up going. And so it just
 4   seems to be inviting a lot of mischief to have parsing
 5   through each day for defendants to be determining what
 6   they think is relevant as opposed to providing
 7   calendars that should have been produced a year ago
 8   that have not been objected to, that aren't included in
 9   the chart of objections and we've now limited it to a
10   very short window of time.
11           MS. ROBINSON:  Okay, Your Honor, may I
12   interject?
13           THE COURT:  Yes.
14           MS. ROBINSON:  What plaintiffs are asking for
15   are not just the eight weeks, they're asking for the
16   eight weeks plus any other protests that they were,
17   that the deponent was present for.  That goes outside
18   of the Schedule A, and so, you know, we have --
19           THE COURT:  Hold on, can you just stop for a
20   second?
21           MS. ROBINSON:  Yes.
22           THE COURT:  Are you saying that there are
23   protests that occurred that are not on Schedule A?
24           MS. ROBINSON:  Yes.
25           THE COURT:  That are at issue in this lawsuit?
```

```
1                        PROCEEDINGS                    16

2              MS. ROBINSON:  No.

3              THE COURT:  I'm confused about what's going

4    on.

5              MS. ROBINSON:  There are, the only dates of

6    issue in the lawsuit are the plaintiffs' provided

7    Schedule A list of protest dates and locations.

8              THE COURT:  Okay, and is that --

9              MX. GREEN:  Your Honor, this is Remy, that's

10   incorrect.  The Schedule A is not the limitation, a

11   limitation on what's at issue in the case.

12             THE COURT:  Hold on, I'm enforcing my one

13   attorney rule here, I can't, I can't have more than one

14   attorney talking. So, look, the Schedule A, what is

15   this eight week period, Ms. Frick?

16             MS. FRICK:  So, Your Honor, we had asked for

17   all of the calendars from the eight week period plus

18   calendar entries --

19             THE COURT:  What is the eight week period?  Is

20   the eight week period --

21             MS. FRICK:  May --

22             THE COURT:  Let me finish my sentence.  Let me

23   finish my sentence. Is the eight week period

24   coterminous with whatever the dates are, the beginning

25   and the end date on Schedule A, does that happen to be
```

PROCEEDINGS                17

1

2  eight weeks or is that longer than eight weeks?

3          MS. FRICK:  No, Your Honor, Schedule A is

4  longer than eight weeks.  This eight weeks is when the

5  bulk of protests occurred, May 25th to July 25th, but

6  then we've asked for plus calendar entries reflecting

7  the involvement in protests outside of that time range

8  which is more limited. And, Your Honor, just to be

9  clear what Mx. Green was referring to is that Schedule

10 A does not include every single protest at issue in

11 this case, there are additional ones that have come to

12 light during discovery and also it doesn't include the

13 Roland, the Roland case protest. It was, Schedule A was

14 meant to, you know, help the parties, not limit the

15 parties.

16         THE COURT:  Okay, I'm still trying to work

17 through the calendar problem.  So you are looking for

18 the calendars of these individuals for the eight week

19 period plus what, Ms. Frick?

20         MS. FRICK:  Plus all calendar entries

21 reflecting involvement in any protests outside of that

22 time range which will be, by definition, more limited.

23         THE COURT:  Okay, but only to the extent that

24 there is a protest at issue. And how do they know

25 they're at issue, they look at Schedule A and plus

```
 1                        PROCEEDINGS              18
 2  Roland plus what?
 3        MS. FRICK:  We have served an amended Schedule
 4  A that tried to provide all of the protests, defendants
 5  have objected to that.  Again, it was meant to be of
 6  assistance so I don't completely understand defendants'
 7  objection, but we have a list.
 8        THE COURT:  Okay, so at least it's known what
 9  you're asking for.
10        MS. FRICK:  Yes.
11        THE COURT:  So, Ms. Robinson, try me again
12  because I think I got thrown off by what was outside
13  the eight week period.
14        MS. ROBINSON:  Okay.
15        THE COURT:  Tell me what it is they want that
16  you don't want to do.
17        MS. ROBINSON:  What they want is an eight
18  week, a random eight week period, there has been no,
19  you know, eight week period in the litigation so far.
20  The deposition protocol that's in place right now for
21  line officers is their attendance, their attendance or
22  policing at the Schedule A list of protests.  And so we
23  believe that the protocol for the high ranking officers
24  should be no different.
25        THE COURT:  Well hold on, hold on --
```

```
 1                      PROCEEDINGS              19
 2          MS. ROBINSON:  It should be the Schedule A --
 3          THE COURT:  Hold on.  Hold on.  Hold on.  The
 4   low level people I didn't think had calendars, I
 5   thought I had you look through the memo book --
 6          MS. ROBINSON:  I'm sorry, no, you're
 7   absolutely right, I'm sorry, Your Honor, I misspoke.
 8   What was relevant at the line officer depositions was
 9   the Schedule A list of protests, so that's what we have
10   been applying to the high ranking officers' protocol as
11   well.
12          THE COURT:  Okay, but we have a request of a
13   different character, and I'm not even deciding yet what
14   way it cuts, but now we're asking for peoples'
15   calendars which was not going on with the low level
16   police officers.
17          MS. ROBINSON:  True, we were asking for their,
18   they were essentially asking for their, whether they
19   were present at any one of those 83 protest locations
20   which is what I understand is what they are trying to
21   get to with respect to high ranking officers, as well,
22   you know, are they present at these 83 protest
23   locations --
24          THE COURT:  Yes, see, I don't think that's, I
25   think that's not, I think they were making, I think
```

PROCEEDINGS                    20

1

2  they made clear that's not what's going on with the

3  calendars of the high level people. They're trying to,

4  I think the way they're viewing it is that this is a

5  watershed period in the life of the police department

6  and they want to see what the high level people are

7  doing during this watershed period, whether it relates

8  to the protests or not. Ms. Frick, have I characterized

9  it correctly?

10        MS. FRICK:  Yes, Your Honor, you've

11  characterized it perfectly.

12        THE COURT:  Okay.  So, Ms. Robinson, that's

13  why they want, they want everything, I mean we could

14  probably work on the dentist problem although I think

15  that the, you know, the simplest thing is to have, you

16  know, attorneys' eyes only designation. I mean I

17  usually, what's on an office calendar is not really

18  that personal, so that's what they're getting at and

19  you need to -- and I think they're trying to do you a

20  favor by limiting it to the eight week period, I

21  suppose they could have gone longer but that's what

22  they're identifying as the watershed period. And then

23  we can talk about what they want outside that, but I

24  don't even think we've reached a resolution on the

25  eight week period.

```
 1                        PROCEEDINGS              21
 2            MS. ROBINSON:  Your Honor --
 3            THE COURT:  So on the eight week period, Ms.
 4   Robinson, tell me, I mean or maybe you told me and I
 5   need to rule, what's the objection on the calendar for
 6   the eight week period?
 7            MS. ROBINSON:  Well my objection was
 8   originally based on what plaintiffs seem to be
 9   disagreeing with is the, the high ranking officers'
10   presence at particular protests, the confirmation of
11   their presence at particular protests --
12            THE COURT:  Right, so that's not what it's
13   about?
14            MS. NELSON:  Your Honor, this is Ms. Nelson,
15   may I be --
16            MS. FRICK:  I'm sorry, Your Honor, the
17   defendants repeatedly violate the Court's one attorney
18   --
19            THE COURT:  Hold on, you didn't even let me
20   speak, Ms. --
21            MS. FRICK:  I apologize, it just happened the
22   entire last, the entire last conference and it --
23            THE COURT:  Hold on --
24            MS. FRICK:  It behooves me to speak up but I
25   apologize for being premature.
```

```
 1                        PROCEEDINGS              22

 2          THE COURT:  Yes, well also given what happened

 3   earlier it's particularly inappropriate.  So I was about

 4   to say the same thing, which is what I said before to

 5   Mx. Green, one attorney per side.  Ms. Robinson, if you

 6   need to take a break to consult with someone I'd much

 7   rather you did that than anything else.  So anything

 8   else you want to say on just the eight week period

 9   calendar issues, Ms. Robinson?

10          MS. ROBINSON:  Nothing else that I want to say

11   on the eight week period.

12          THE COURT:  Okay.  Now before I rule on that,

13   Ms. Frick, outside the eight week period what is it you

14   are talking about in terms of calendar entries?

15          MS. ROBINSON:  In terms of calendar entries,

16   as we put in our letter, outside of the eight week

17   period we asked for calendar entries reflecting

18   involvement in any protests outside of that

19   (inaudible), so from Schedule A.  So it presumably

20   could be showing attendance at a protest but it also

21   could show meetings about a protest.  And that's really

22   what we're looking for even more than just attendance.

23          THE COURT:  Okay, entries relating to

24   protests.  Okay, so, Ms. Robinson -- and is there a

25   period for that?
```

1                        PROCEEDINGS                    23

2            MS. ROBINSON:  I would suggest that the

3    period, if the eight week period --

4            THE COURT:  Hold on, I was addressing -- I was

5    addressing Ms. Frick, what --

6            MS. ROBINSON:  Oh, I'm sorry, I thought you

7    said Ms. Robinson.

8            THE COURT:  Maybe I did.  Ms. Frick, what,

9    when you're talking about outside the eight week

10   period, is there some time limitation on that?  you

11   talked about a subject matter limitation which you said

12   is entries relating to protests, is there a time

13   limitation?

14           MS. FRICK:  Yeah, well I think it would be

15   entries reflecting involvement in the protests listed

16   on the amended or supplemental Schedule A.

17           THE COURT:  Okay, so that takes us to some end

18   date, do you remember what it is by any chance?

19           MS. FRICK:  I don't have it offhand but my co

20   -- my colleagues might be telling me, I believe, I

21   believe it's early January of 2021, but I might be

22   wrong.

23           THE COURT:  Some period of months. Okay, so,

24   Ms. Robinson, do you want to address that piece?

25           MS. ROBINSON:  I would like to address it as I

PROCEEDINGS                    24

1

2  addressed it earlier which is that we should stick with

3  the original Schedule A list of protest locations.

4  That's what we, that's what the whole litigation has

5  been based upon this far, and to change it at this late

6  date, it's only going to add more documents, more time,

7  more time at depositions and that's why we objected to

8  an amended Schedule A in the first place.

9           THE COURT:  Okay, so your objection is,

10  relates to the amended Schedule A, if it was Schedule A

11  you wouldn't have an objection, is that it?

12           MS. ROBINSON:  Correct.

13           THE COURT:  Okay.

14           MS. FRICK:  Your Honor, the amended Schedule A

15  --

16           THE COURT:  Hold on.  Hold on.

17           MS. FRICK:  I'm sorry.

18           THE COURT:  Hold on, what is, how many

19  protests are added to the amended Schedule A from the

20  83?

21           MS. ROBINSON:  That's what I was just about to

22  say, it adds five and I believe that that includes the

23  roll in matters. So it's a total of five.

24           THE COURT:  Okay, so I'm going to give you the

25  ruling on the calendars.  You should supply the full

1

2   calendars for the eight week period for these

3   individuals and they should supply entries relating to

4   protests on the amended Schedule A for, for entries

5   outside the eight week period.  And I'm not making any

6   definitive rulings about the meaning of the amended

7   Schedule A or what has to be responded to in other

8   areas, this is just for this way now.

9           Let's move on to other categories in this, and

10  I guess --

11          MS. ROBINSON:  Yes.

12          THE COURT:  I think I was going through this

13  with Ms. Robinson when I got sidetracked on the

14  calendars.

15          MS. FRICK:  No, Your Honor, we were going

16  through it.

17          THE COURT:  I was talking to you, Ms. Frick?

18          MS. FRICK:  Yes.

19          THE COURT:  Okay, so what's the next category

20  other than calendars, just text messages?

21          MS. FRICK:  Text messages and then the final

22  category is just (inaudible) history.  So with respect

23  to text messages, again, we asked for the same, it's

24  the same timeframe as the calendars which would be text

25  messages sent by or to the deponent's NYPD phone during

```
 1                        PROCEEDINGS                    26

 2   that eight week period, plus dates of other protests

 3   that the deponent attended or was substantially

 4   involved in.

 5              THE COURT:  Okay --

 6              MS. FRICK:  And as I understand --

 7              THE COURT:  Hold on a second. Hold on a

 8   second.

 9              MS. FRICK:  Yes.

10              THE COURT:  Hold on a second.  Are you

11   seeking, so like the calendar, and I think there may be

12   a different analysis that applies, you know, for me a

13   calendar is a document and it's circumscribed, very

14   circumscribed compared to text messages. So it sounds

15   like you want text messages on every possible topic for

16   these people for the eight week period, is that what

17   you're saying?

18              MS. FRICK:  We're not seeking, you know,

19   privileged text messages, we would be --

20              THE COURT:  No, no, but you're seeking about a

21   murder investigation or whatever else is, okay.

22              MS. FRICK:  Yes, Your Honor, and part of that

23   is for the same reason as it's hard to circumscribe the

24   calendars to a specific date is that discussions about

25   a protest can happen well after a protest or, you know,
```

1

2  discussions about planning can happen well before. And

3  so limiting it to a date of a protest, especially, you

4  know, when protests often went, you know, past the hour

5  of midnight and into the second day.  And, for example,

6  in these, in the body worn camera and Tero (phonetic)

7  footage, you can see many of these high level officers

8  on their phones, what appear to be texting, meaning

9  like they're not speaking, they're, you know, using

10 their thumbs, so we can surmise it's texting like

11 during a protest. So we believe that the text messages

12 are highly relevant, we've been trying to get text

13 messages for a year now, we haven't received any. I

14 hope that they've been preserved and to the extent that

15 they have, we think that the best way is to again focus

16 it during this very intense eight week period plus the

17 specific dates listed on the Amended Schedule A

18 relating to protests.

19         THE COURT:  Okay, but you didn't really

20 address my concern and maybe I wasn't clear enough

21 about it. I said to you, you want the text messages

22 about the murder investigation, and then you started,

23 you didn't really answer that question, you started

24 talking about how you wanted it about protests, so I

25 can't tell if you're seeking the murder investigation

1                          PROCEEDINGS                    28

2    text messages and all the other text messages, if any,

3    that had nothing to do with the protests?

4         MS. FRICK:  Well, Your Honor, I apologize for

5    not answering clearly. We are interested primarily in

6    texts about the protests, but we are also interested,

7    for the reasons that we explained in the earlier

8    discussion on calendars, to see what high level NYPD

9    officers and supervisors were doing, in general, during

10   this period of time.

11        And so we also just think, to be honest, based

12   on the amount of work that these discovery disputes

13   have entailed, that it would just be a simpler

14   proposition to ask for everything and not invite the

15   redaction issues that we have run into over and over in

16   this case.

17        You know, if there is absolutely a completely

18   irrelevant conversation, are we going to fight to the

19   mat to have those, no, but I am very concerned about

20   feeding grounds to defendants to make those

21   determinations about, quote-unquote, "relevance," when

22   we've, you know, been down this road and has been, and

23   have been forced to spend a lot of time litigating

24   similar redactions.

25        MS. ROBINSON:  And, Your Honor, if I could

1                           PROCEEDINGS                    29

2    interject --

3              THE COURT:  Wait, who is this?

4              MS. ROBINSON:  Amy Robinson.

5              THE COURT:  Okay, you want to interject, go

6    ahead I guess.

7              MS. ROBINSON:  I just wanted to state that,

8    you know, if it's, if there's a murder investigation or

9    there is any other kind of investigation, that, you

10   know, that very well, very likely will be privileged

11   because it's going to be an ongoing investigation. So

12   that would be law enforcement privilege.  And --

13             THE COURT:  Wait, wait, hold on.  Ms.

14   Robinson, I assumed you would be arguing that you don't

15   want to produce it, it's not relevant, why are you --

16             MS. ROBINSON:  I agree with that, but I also

17   want to assert privilege --

18             THE COURT:  Hold on, there is no point in

19   asserting privilege because you're going to have that

20   right on the production.  So let's talk practicalities

21   here.

22             MS. ROBINSON:  Okay.

23             THE COURT:  If it's not relevant we don't have

24   to worry about privilege.

25             MS. ROBINSON:  Understood.

```
 1                         PROCEEDINGS                   30

 2              THE COURT:  Hold on a second, folks.  I, this

 3    is of a different character than the calendar entries,

 4    I, there's no, I do not see a reason to,

 5    notwithstanding past, I can't start making rulings that

 6    the City can never be trusted to review documents for

 7    relevance, so I'm prepared to limit this to texts

 8    relating to the protests in some way, planning, things

 9    happening at the protest, post protest, you know, texts

10    relating, anything concerning the protests, period.

11              MS. FRICK:  Okay, Your Honor -- sorry.

12              THE COURT:  Hold on.  So, Ms. Robinson, is

13    there some objection to that?

14              MS. ROBINSON:  The caveat, there are two

15    caveats, the first is that the timing, if it's going to

16    be the same sort of timing with the calendars. And

17    second is that the folks that are going to be deposed

18    are very high ranking individuals and, you know, are

19    decision makers. And to remove their, and in order to

20    avoid unnecessary removal of their phones, we would

21    like to go through a series of questions with them to

22    see if they do, in fact, use the text function, if they

23    texted during protests, things along those lines so

24    that we can find out whether we need to remove their

25    phones from them.
```

```
1                          PROCEEDINGS                      31

2              THE COURT:  Okay, but that's not dependent on

3    I mean as long as they're getting any text messages my

4    ruling isn't going to affect your obligation. You have

5    the same obligation you have with any other document

6    request, you need to do a reasonable investigation --

7              MS. ROBINSON:  Understood, Your Honor.

8              THE COURT:  If it's, if you have a witness

9    who, you know, is, can provide you with sufficient

10   assurance that they never used their phone for texting

11   ever, then you will make your decision about what you

12   are going to do.  I'm not going to start ruling in

13   advance about how you're supposed to do that. God help

14   this person if it turns out that they said they never

15   do texting and texts from them turn up, someone will

16   have failed miserably and there will be consequences

17   for it.  So I'm not going to tell you how to do that

18   job.  What I am going to tell you to do is to produce

19   text messages. If they --

20             MS. ROBINSON:  Right, Your Honor, but --

21             THE COURT:  There's nothing else I can do.

22             MS. ROBINSON:  The only question I have with

23   that is that do you text message ever is a different

24   question than did you text during the protests or do

25   you generally used the texting function. If somebody
```

1                              PROCEEDINGS                    32

2     doesn't use the text, didn't use text during the

3     protest --

4            THE COURT:  I mean you're asking me, I'm not

5     sure what you're asking me for.  Right now there's a

6     request which I'm about to grant in some form that

7     requires you to produce the text messages of certain

8     individuals relating to protest, and we haven't figure

9     out the period or whatever it is.  So what is it you

10    want from me, do you want me to say I give you

11    permission to take their word for it if they say they

12    don't have any, I'm not going to do that.  you have to

13    conduct a reasonable investigation and discuss it with

14    them and let them know the consequences for an error in

15    this.

16           MS. ROBINSON:  Understood, Your Honor.

17           THE COURT:  It's not for me to tell you how to

18    do it. You have to do it correct, they have to -- and

19    you have to do it correctly.  They have to be produced.

20           MS. ROBINSON:  Understood, Your Honor.

21           THE COURT:  And you have to do it reasonably.

22    So I mean I'm not, you're not looking, I think it's the

23    same ruling as we had before, I'll give each side one

24    last chance to tell me why it shouldn't be, which is

25    it's going to, and I know the objection about the

1                       PROCEEDINGS                    33

2     amended Schedule A, and I'm going to overrule that

3     temporarily, it's going to be texts relating to these

4     protests, texts concerning these protests, to use the

5     Southern District definition, that are on the revised

6     schedule.  And I think that's it, that's what you're

7     looking for, Ms. Frick, now that you know that you're

8     not getting all the texts, right?

9                 MS. FRICK:  Yes, Your Honor.

10                THE COURT:  Okay, Ms. Robinson, anything else

11    to say on that?

12                MS. ROBINSON:  No, Your Honor.

13                THE COURT:  Okay, so that's what needs to be

14    produced on texts.  Ms. Frick, next category?

15                MS. FRICK:  Thank you, Your Honor. The final,

16    the final thing to discuss is the disciplinary history.

17    So, you know, as is typical with depositions, we'd like

18    to see the disciplinary history for each deponent,

19    particularly the CCRB and the IAB files.  Right now

20    what has been produced is just CCRB and IAB files

21    relating to the protests, but for the deponents,

22    themselves, we're interested in their disciplinary

23    history and, you know, to the extent that the City,

24    what I was going to say is that we can offer, you know,

25    we're fine with a compromise of, you know, old, very

```
1                         PROCEEDINGS                    34

 2   old disciplinary history that doesn't implicate

 3   honesty, or excessive force or improper arrests could

 4   be redacted.  But otherwise we're entitled to know if

 5   the person that we're deposing has a significant

 6   history of improper conduct.

 7              THE COURT:  Ms. Robinson?

 8              MS. ROBINSON:  Your Honor, we, we do not

 9   object to that.  We don't object to giving the exact

10   same thing that we've given for the line officers,

11   which are their, to non-civilians, their disciplinary

12   histories, their IAB history, their CCRB history and

13   their CPI history redacted just the way they were with

14   the, with the line officer depositions.

15              THE COURT:  Okay, I gather from your letter

16   that you thought you had already produced it and you

17   wanted them to find it and you didn't have to find it,

18   I wouldn't have thought you'd already produced it to

19   these people but maybe I'm wrong.

20              MS. ROBINSON:  Well what we, what we've done

21   with the line officers if we've produced it, I think

22   it's the two business days prior to the deposition. So

23   it would be, you know, in the hopes it would be the

24   most recent that we could print out on before a

25   deposition.
```

```
 1                        PROCEEDINGS                    35
 2              THE COURT:  I think you're not following me.
 3    You seem to be objecting to this in some way in your
 4    letter --
 5              MS. ROBINSON:  I was objecting to -- I'm
 6    sorry, Your Honor, I'm sorry to interrupt you.  What I
 7    was objecting to was providing IAB and CCRB files.
 8              THE COURT:  Oh, as opposed to history.
 9              MS. ROBINSON:  As opposed to the histories.
10              THE COURT:  And what did you do with the line
11    officers, did you get, did you get the plaintiffs files
12    or just histories?
13              MS. ROBINSON:  The plaintiffs got the
14    histories, but we had already produced, we've already
15    produced all the CCRB files and the IAB files. So for
16    us to reproduce them for a deposition would to me seem
17    to be a waste of valuable time.
18              THE COURT:  I can't tell you how lost I am,
19    I'm totally lost now.
20              MS. ROBINSON:  Okay, I understand, let me, I
21    think I understand why you're lost. So there's a --
22              THE COURT:  All right, try and help me.
23              MS. ROBINSON:  There are three reports of
24    various pages long, and IAB report, a CCRB report, and
25    a CPI report which shows an officer's history at a
```

```
 1                    PROCEEDINGS                   36
 2  glance. Now, if there's a case or an investigation
 3  within those reports, then there would be a file that
 4  pertains to that investigation. And we have produced
 5  all of those, and protest related --
 6          THE COURT:  Hold on.  Hold on, stop, stop,
 7  stop, you've produced them all for line officers, is
 8  that right?
 9          MS. ROBINSON:  For everyone.
10          THE COURT:  Including these high level
11  deponents?
12          MS. ROBINSON:  No.
13          THE COURT:  Hold on, hold on, I'm going to
14  hear from one side and then the other.  You've produced
15  it for these high level deponents, you produced their
16  disciplinary history, first of all, you produced their
17  disciplinary histories already?
18          MS. ROBINSON:  Well not their, possible, yes,
19  some of them we have produced their disciplinary
20  histories, they're not --
21          THE COURT:  But not all?
22          MS. ROBINSON:  Even the police commissioner on
23  down.  You know --
24          THE COURT:  Some or all?  Ms. Robinson, Ms.
25  Robinson, you said some --
```

```
 1                        PROCEEDINGS                37

 2            MS. ROBINSON:  Well, I'm not sure how current

 3  they are.

 4            THE COURT:  Have you done it for all?

 5            MS. ROBINSON:  I don't believe we have done it

 6  for all, but the ones that we have done it for would be

 7  outdated at this point in our database.  So --

 8            THE COURT:  But you're willing to do, hold on,

 9  you're willing to do the histories for all of them,

10  you're not objecting to that I assume?

11            MS. ROBINSON:  No objection to that.

12            THE COURT:  Okay.  So now we need to deal with

13  is in the event there's something for honesty or

14  improper arrest, whatever our categories are, there may

15  be a, quote, "substantive file relating to an

16  investigation."  And let me just turn now to Ms. Frick

17  and I'd like her to answer that question, and then if

18  she wants to say whatever she was going to say before,

19  that's fine.

20            MS. FRICK:  Thanks, Your Honor. So we do, we

21  are hoping with these higher level officers to receive

22  the underlying files for the entire disciplinary

23  history that is, you know, relatively, that isn't too

24  old, because these are officers who by definition have

25  been promoted through the ranks. And a lot of our cases
```

1                              PROCEEDINGS                    38

2  involve Monell claims based on supervision and

3  promotion. And so even if an improper conduct is not

4  protest related or even false arrest related, that is,

5  can be very relevant to the plaintiffs' claims.  And we

6  have already seen this in disciplinary files and

7  histories that we have had to fight over, for example,

8  with an officer named Zelikov, there was a disciplinary

9  file or disciplinary incident that had been entirely

10  redacted which, as I understand it, this was the AG's

11  Office, but brought this dispute forward and eventually

12  they learned from that incident that this involves a,

13  the officer threatening to kill his ex-wife and the

14  response was that this officer's gun was removed for a

15  year.  And so that entire file is very relevant to

16  plaintiffs' claims regarding to, regarding promotion

17  and supervision even though it doesn't have to do with

18  excessive force, or dishonesty or a false arrest

19  because this person --

20            THE COURT:  Okay, hold on. Hold on, I could

21  not tell from the letters that this was, this does not

22  seem to be the issue from the letter. I don't mind

23  doing it --

24            MS. ROBINSON:  I also do not, I also do not

25  know that this is the issue, Your Honor.

1                          PROCEEDINGS                    39

2              THE COURT:  Yes, this obviously has not been

3    keyed up -- teed up, rather, I'd certainly rather deal

4    with it now.  So it sounds like, Ms. Frick, that for

5    the high level people you're interested in their

6    disciplinary history whether or not it relates to the

7    categories that I've already ruled upon with respect to

8    the line officers, is that correct?  It certainly

9    wasn't in your letter, at least I didn't see it, is

10   that what I'm hearing now?

11             MS. FRICK:  I think you -- well I think

12   there's some confusion here about what was ruled

13   earlier with respect to the line officers.  So what has

14   been produced in general in the litigation are the CCRB

15   and IAB files relating to the protests, that's bucket

16   one.  So when Ms. Robinson referred to having produced

17   a lot of other CCRB files, that is, those are the files

18   that we have received, they are protest related files.

19   In advance of each deposition we have been given that

20   deponent's disciplinary history, those kind of snapshot

21   looks that Ms. Robinson --

22             THE COURT:  Hold on, did you get the full

23   disciplinary history or did you get just the listings

24   relating to the categories I thought I had ruled on

25   like improper arrest, honesty and so forth, I remember

```
 1                    PROCEEDINGS              40
```

2  ruling on this.

3          MS. ROBINSON:  Can I object --

4          THE COURT:  Hold on.  Hold on --

5          MS. FRICK:  Ms. Robinson, I don't know the

6  answer --

7          THE COURT:  Ms. Robinson, do you know the

8  answer?

9          MS. ROBINSON:  I do know the answer because I

10  did most of the production --

11          THE COURT:  Okay, what's the answer.

12          MS. ROBINSON:  Yes, I did make a mistake, you

13  know, according to Your Honor, with respect to the

14  Zelikov, it was a failure to report and we no longer

15  redact for failures to report.

16          THE COURT:  Okay, so just can you answer my

17  question, does the, please, if you can, can you answer

18  this question, when you give what you call these

19  reports, these histories, are you giving the full

20  history or are you redacting everything except for the

21  categories of honesty, improper arrest, failure to

22  report and so forth?

23          MS. ROBINSON:  We only redact for anything

24  over ten years, anything that relates to -- no, we

25  redact for anything that is over ten years, anything

1                         PROCEEDINGS                    41

2   that's not related to excessive force, false arrest or

3   honesty.

4          THE COURT:  Okay, so that was my, that's my

5   very simple question, so the histories do not show

6   things outside what I've ruled on with the categories,

7   that's all I was trying to get at. So --

8          MS. ROBINSON:  But there's another issue which

9   is, I mean to produce the, let's say, let's take, you

10  know, an example of an officer that did something that

11  is not related to false arrests or excessive force, and

12  it's part of his CCRB report, his snapshot. For us to

13  go back now and get the underlying files for something

14  that's --

15         THE COURT:  Hold on, we're not at the

16  underlying files yet, and I don't even know why we're

17  talking about underlying files that don't relate to

18  these categories. I'm even more confused than I thought

19  I could be right now. I thought what we were talking

20  about was what they get for these high level officers

21  and that there's essentially two categories. One is

22  what they get on the histories and two, if there is

23  something on the history that fits within those

24  categories, when do they get the actual underlying

25  documents. I haven't even gotten through number one yet

```
 1                         PROCEEDINGS              42
 2   --
 3              MS. ROBINSON:  Okay, do you want the answer to
 4   that one?
 5              THE COURT:  I'd like to try getting through
 6   number one.
 7              MS. ROBINSON:  Okay, if that was number one I
 8   can answer that.
 9              THE COURT:  Well I think you already answered
10   it, I'm trying to figure out what the rule, what Ms.
11   Frick is seeking with respect to the high level people,
12   are you seeking anything more on just the redactions of
13   the histories?  It sounds like they're not even
14   objecting to giving the histories for these people that
15   fit within these categories, are you seeking something
16   more than a listing that redacts everything but those
17   categories, Ms. Frick?
18              MS. FRICK:  Your Honor, for, we are willing to
19   accept that for the histories we can be limited to the
20   categories that you've discussed.
21              THE COURT:  Okay.  So, one, okay, so that
22   takes care of the history. Now, in terms of, that
23   should be, I mean any questions on that, Ms. Robinson?
24   So for the histories you have to produce the histories
25   for each of these people with respect to what I'll call
```

```
 1                        PROCEEDINGS                    43

 2    the four categories, I don't know if there really are

 3    four, honesty, improper arrest, falsely reporting,

 4    excessive force, any problem with that?

 5            MS. ROBINSON:  Yes, I do have a problem with

 6    that because we've, what we've produced so far, and I

 7    don't mean with respect to depositions, I mean in the

 8    litigation in total, is we've produced the underlying

 9    files for this, the protests only.

10            THE COURT:  Okay, stop, just stop. Are you

11    telling me you haven't produced for each officer their

12    histories?

13            MS. ROBINSON:  No, their histories, yes --

14            THE COURT:  That's my only question, Ms.

15    Robinson, do you have an objection to producing the

16    histories for these individual people with redacting

17    everything but the four categories. I can't believe

18    you'd have a problem with it but I'm just asking.

19            MS. ROBINSON:  No, as I said earlier, I don't

20    have a problem with that.

21            THE COURT:  Thank you, that's fine, we've now

22    gotten through that, now we're going to get to

23    underlying documents, I haven't even started on that

24    yet.

25            MS. ROBINSON:  Okay.
```

```
 1                         PROCEEDINGS                    44
 2              THE COURT:  So, Ms. Frick, what are you
 3    looking for in terms of underlying documents?
 4              MS. FRICK:  I mean I'm looking for --
 5              THE COURT:  When I say underlying documents,
 6    hold on, let me just back up for a second.
 7              MS. FRICK:  Yep.
 8              THE COURT:  I may be making a false assumption
 9    here and my assumption is, is that to the extent there
10    are any investigations, that you are looking for
11    documents on those investigations and that's all you're
12    looking for. You're not looking for documents on any
13    investigations that don't relate to the four
14    categories, is that right, Ms. Frick?
15              MS. FRICK:  That's right, Your Honor, we would
16    like the underlying documents, meaning the files,
17    relating to disciplinary history that falls into those
18    categories that defendants have agreed to produce.
19              THE COURT:  Okay.  So now I know, you know,
20    Ms. Robinson, what the plaintiffs are seeking, what's
21    the objection to that?
22              MS. ROBINSON:  Okay, I, I'm probably the only
23    one now in the room that's confused, but as long as
24    what, and we're talking underlying files now, correct,
25    Your Honor?
```

```
 1                        PROCEEDINGS                    45

 2            THE COURT:  Yes.

 3            MS. ROBINSON:  Okay, so we have no, we've

 4  already produced the underlying protest files for all

 5  officers.

 6            THE COURT:  Stop, stop, you just used the word

 7  protest, no one said anything about protest in all of

 8  this.

 9            MS. ROBINSON:  If we were to go back and

10  provide other disciplinary history, files for things

11  that were not protests, we're talking terabytes.

12            THE COURT:  Okay, that's fine, now I'm happy

13  to hear your objection. So, first of all, with respect

14  to the line officers, did you produce the underlying

15  files?

16            MS. ROBINSON:  Only for the protests, Your

17  Honor.

18            THE COURT:  Only for protests, okay, and Ms.

19  Frick, you're looking for not, anything, not just

20  protests, is that right?

21            MS. FRICK:  That's right, Your Honor. And I do

22  just want to clarify just for the record that the CCRB

23  and IAB files that have been produced for the protests

24  are not complete. And we have been fighting with them

25  on this and I just really want to --
```

1                           PROCEEDINGS                    46

2           THE COURT:  I can't deal with that now, Ms.

3  Frick.  I can only deal with one thing at a time.

4           MS. FRICK:  Understood.

5           THE COURT:  So what's the, I mean there is

6  some (inaudible) inconsistency and I, you know, at this

7  point we're not talking about relevance, we're talking

8  about I guess impeachment or something, there does seem

9  to be a burden if someone had some disciplinary history

10 unrelated to this protest.  What's the justification

11 for that burden?

12          MS. FRICK:  The justification for the burden

13 is that, in general, when you are deposing somebody you

14 are entitled to understand exactly what it is that they

15 have been accused or found to have done in terms of

16 misconduct, particularly as here where so many of the

17 cases involve claims about the NYPD's improper

18 promotion and supervision of these high level officers.

19          THE COURT:  But I mean I don't know if it was

20 your own judgment, but you didn't get it with respect

21 to the line officers, is that right?

22          MS. FRICK:  That's right, Your Honor, but here

23 this is specifically about people who, you know, we

24 would argue, many of who have failed upward, right, who

25 are being promoted despite serious histories of

1
2    misconduct. And so with higher level people those files

3    are arguably more relevant and that's why we're, you

4    know, pushing for them here.

5            THE COURT:  Okay, I understand the argument

6    but I also understand the burden. So I'm not going to

7    give it to you now, you certainly can inquire about it

8    at the deposition. If there's some particular case that

9    you think you can make the case to me that producing a

10   particular file is extremely important, you can make

11   the application, I doubt you'll get the deponent back

12   again, but I'd be willing to hear the application. But

13   for right now you are going to get what you got with

14   the line officers.

15           All right, anything else on the requests from

16   the plaintiffs to the defendant?

17           MS. ROBINSON:  I just, I have one thing that I

18   would like to add, and I know that we've discussed

19   privilege and you have discussed privilege on this, in

20   this conference, but I also want to make objections for

21   the deliberative process privilege with respect to any

22   sort of after action reports, the aftermath.

23           THE COURT:  I'm not sure what you mean when

24   you say you're objecting to it, to the extent there's a

25   document involved you should supply a privilege log

1                              PROCEEDINGS                        48

2   that says I'm not producing this calendar entry. I mean

3   it's hard to believe a calendar entry would --

4            MS. ROBINSON:  No, no, no, Your Honor, I'm not

5   talking about calendar entries, I'm --

6            THE COURT:  But if you're talking about text

7   messages then that's, you'll do your privilege log, I

8   don't know what else to tell you.

9            MS. ROBINSON:  Okay.  All right, I just wanted

10  to make, you know, just, I just wanted to make it clear

11  that there could be a deliberative process privilege to

12  be asserted. And you're right on the calendars and the

13  texts.

14           THE COURT:  Okay, I mean, you know, the

15  privilege may not be as broad as you think. I mean

16  people talking about what just happened at a protest

17  doesn't mean --

18           MS. ROBINSON:  No, no, no, not that, Your

19  Honor, steps leading up to making changes, that sort of

20  thing.

21           THE COURT:  Well I'm not making any rulings on

22  deliberative process.

23           MS. ROBINSON:  Understood.

24           THE COURT:  Any questions about what I ordered

25  with respect to the plaintiffs' requests of the

1                          PROCEEDINGS                    49

2  defendant?

3          MS. FRICK:  Yes.  Yes, Your Honor.  If the

4  defendants are being compelled only to produce the

5  disciplinary history which they have already claimed

6  today are, you know, just a handful of pages that can

7  be pulled up quite easily, we'd ask that those be

8  provided much sooner than, you know, in the days

9  leading up to a deposition, especially so that if there

10 does seem to be something that we do feel is

11 particularly significant based on Your Honor's order,

12 that we would have time to come, you know, just meet

13 with the City and then if necessary come to the Court

14 to petition for those underlying documents. And so I

15 don't see any reason why we should have to wait until

16 the days before a deposition to receive those

17 disciplinary histories.

18          THE COURT:  Yes, Ms. Robinson, unique among

19 these various requests, the disciplinary histories do

20 not require the involvement or your preparation of the

21 deponent, it seems like this is something you're going

22 to run on a computer, and that you can do it pretty

23 easily --

24          MS. ROBINSON:  It is easily, it is not

25 difficult to obtain them, it's exceedingly tedious and

PROCEEDINGS                    50

1

2  time consuming to redact them.

3          THE COURT:  Right, but you're going to have to

4  do it anyway.  And you don't need the involvement of

5  the deponent, that's what's unique about this.  So this

6  should be, you know, unlike the other things which I

7  understand require the involvement of the deponent,

8  this should be done on a much sooner timeline. So --

9          MS. ROBINSON:  Perhaps one week ahead of a

10  deposition?

11          THE COURT:  Yes, well, no, I think it should

12  be done within the time period of when you get them

13  name. Have all the names been done or been out there or

14  not yet, Ms. Frick?

15          MS. FRICK:  Yes. Yes, all the names have been

16  delivered --

17          THE COURT:  It should be tied to the names. So

18  this should be, you're going to have to do it anyway,

19  you should start this project independent of

20  preparation for the deposition, and I'll give you two

21  weeks to do whatever names they've given you so far,

22  okay?  So that's July 25th, is that two weeks?

23          MS. ROBINSON:  It will take, you know, quite

24  some time to do the redactions, Your Honor.

25          THE COURT:  But you can run them tomorrow. How

```
 1                          PROCEEDINGS                    51
 2  many people are we talking about?
 3            MS. ROBINSON:  Well, it's not a matter of us
 4  running them, it's a matter of we get them from
 5  different places.  So the requests have to be made and
 6  I think that we could get them relatively quickly but
 7  the redaction process is what takes, what takes the
 8  time.
 9            THE COURT:  How many people are we talking
10  about, Ms. Frick?
11            MS. FRICK:  Meaning, I'm sorry, Your Honor,
12  how many deponents?
13            THE COURT:  How many names have you already, I
14  said do you remember how many names are out there that
15  they need to do this for right now?
16            MS. FRICK:  Well we've already provided from
17  our last conference and weeks before that we've
18  provided our full list of the high level deponents.
19  And I believe it's something around 80-ish names.
20            THE COURT:  Eighty names.
21            MS. FRICK:  It might be more than that, I
22  don't have it in front of me because it wasn't at issue
23  today.
24            THE COURT:  I mean some of this depends upon
25  when these people are going to be deposed. I mean if
```

1                          PROCEEDINGS                      52

2  someone is not being deposed for six months, I would

3  give more time. When is, when do we, when does the next

4  high level deposition happen?

5           MS. FRICK:  Well that's another issue, Your

6  Honor, that I was hoping that we could speak about at

7  the end of this conference, but right now there are no,

8  we have asked the defendants to schedule, we have a

9  list of 30 names as like a first batch to prioritize

10 including a handful of names that we'd be ready to

11 depose right away. We sent that to them last week on

12 Wednesday. We have not gotten a response and right now

13 there are no depositions of defendants on the calendar

14 despite our efforts.

15          THE COURT:  Okay, well I will put that off for

16 the moment.  Here's what I'll say, you should run these

17 80 names now and you should do the reactions, I'll give

18 you till August 1st to do that.  And presumably the

19 plaintiffs will be reasonable about people who aren't

20 being deposed right away if you need some time to do

21 the redactions. But other than that you're going to

22 have to come back to me.  August 1st for the redactions.

23          MS. ROBINSON:  You know, I understand that,

24 Your Honor, but if a deponent is going in December --

25          THE COURT:  Yes, I assume the plaintiffs will

1                           PROCEEDINGS                    53

2  not, will be reasonable but if they're not, just write

3  me a letter and say we have this person in December,

4  they're refusing to give us an extra week, and we'll

5  see what comes of that.  I'm counting on the parties'

6  good will here.

7           MS. FRICK:  Your Honor, just to clarify

8  because I now have the list in front of me, the high

9  level deponents that we've noticed are approximately

10  55, so my number was significantly overstating.

11           THE COURT:  Okay, that seems very redactable

12  by August 1st.

13           MS. ROBINSON:  The only --

14           THE COURT:  Any --

15           MS. ROBINSON:  The only issue that I have with

16  that, Your Honor, is that when somebody high ranking is

17  deposed in December and they're going to want the whole

18  thing all over again.

19           THE COURT:  No, they get it once. So, I mean,

20  Ms. Frick, you get it once. I mean if you'd rather have

21  a system where you get it closer to the deposition, you

22  can work that out with the defendants, but I assume you

23  understood you'd get it once.

24           MS. FRICK:  Understood, Your Honor. If there's

25  some other alternative, I don't want to speak for

1                           PROCEEDINGS                    54

2   everybody right now, I'm not (inaudible), I think that,

3   you know, we can, that sounds good to me but, of

4   course, we will communicate with Ms. Robinson if we

5   want to propose some other --

6           THE COURT:  You two can modify -- you two can

7   modify, the two sides can modify this date of August 1st

8   by agreement without involving me.

9           MS. FRICK:  Thank you, Your Honor, that's

10  helpful.

11          MS. ROBINSON:  Thank you, Your Honor.

12          THE COURT:  Okay.  Anything else on what

13  defendants owe plaintiffs, Ms. Frick?

14          MS. FRICK:  Nothing -- nothing else on our

15  end, Your Honor.

16          THE COURT:  Ms. Robinson?

17          MS. ROBINSON:  Yes.  What defendants would

18  like is essentially --

19          THE COURT:  No, no, no, no, no, anything else

20  on what defendants owe to the plaintiffs?

21          MS. ROBINSON:  No, Your Honor.

22          THE COURT:  Okay, now we'll move on to the

23  other issue that is in the letter which is what the

24  plaintiffs, I'm sorry, what the defendants are seeking

25  from the plaintiffs.  Let me, let me try to express

PROCEEDINGS                    55

1
2    what I was trying to express on docket 528.  These are
3    not 30(b)(6) depositions.  The nature of the
4    plaintiffs' claims are apparent from the complaints.
5    There's not a big mystery there.  If the plaintiffs
6    provide them exhibits that the defendant has never
7    seen, the defendant -- I'm sorry, I say defendant, it's
8    not a defendant. If the plaintiffs during the
9    deposition of a witness pull out an exhibit that the
10   witness has not, you know, been prepped on, has not
11   seen or whatever, that witness is going to have the
12   opportunity to read that document and answer it
13   intelligently after having read the document. If the
14   witness is a lawyer and they're being asked about what
15   the meaning of a case is, that lawyer is going to have
16   the opportunity if they can't answer it on the spot to
17   say I would like to read the case fully in order to
18   give you an intelligent answer and they are going to be
19   allowed to do that.
20          So and we're deciding, and the time being
21   allotted to the deponents we're hopefully setting in
22   advance, and even if we're not, certainly, whatever
23   time is spent reviewing something like that is not
24   going to be chargeable to the defendant as it were. So
25   there's every incentive to the plaintiffs to inform the

1
2    witness in advance of exhibits and cases and things
3    like that. So I'm not sure that it adds anything for me
4    to require the plaintiffs to do it because, you know,
5    then we, you know, if they came up with something that,
6    you know, maybe there's some line of questioning that
7    led to some other document and they want me to bring up
8    the document, I don't want to prevent them from doing
9    it if the deponent, you know, already knows about it
10   and it's not something they necessarily would have
11   known about in advance to alert the other side to.

12          So it seems like there's some natural
13   incentives here on the plaintiffs to supply documents,
14   and the same thing goes for topic areas. If there's a
15   topic area they want to know that's somehow not obvious
16   that the witness would know, and the witness is saying,
17   you know, I'd have to review my notes on that and I
18   can't answer that question for you right now, there's
19   some things I need to review in order to answer your
20   question, then they're not going to get that witness
21   back necessarily if it's something, you know, that they
22   could have told the witness about in advance. So these
23   natural breaks, that just makes me wonder why the
24   plaintiffs feel, I'm sorry, why the defendants feel
25   that I need to be ordering something along these lines,

| 1 | PROCEEDINGS                        57 |

2    what is it that you envision happening that's going to

3    be -- let me finish --

4              MS. ROBINSON:  I'm sorry.

5              THE COURT:  That's going to be detrimental to

6    you if I don't issue the order that you're requesting?

7              MS. ROBINSON:  Your Honor, defendants, the

8    defendants believe that they should be provided with as

9    much of the topics, and exhibits, and video, and case

10   law to the extent that it's relevant, as much as

11   possible before these depositions take place to, to --

12   what am I trying to say, to make as much of the time of

13   the depositions that we have and not have any gotcha

14   moments. There are 500,000 documents in this litigation

15   and thousands of videos, and, you know, to, to catch

16   someone out on a video that they haven't been prepped

17   on or an exhibit that they haven't seen before, it just

18   seems to me to be an inefficient way of conducting the

19   depositions. And the defendants are as entitled to, as

20   far as I'm concerned, they're entitled to information

21   before depositions as plaintiffs are.

22             THE COURT:  I mean, Ms. Robinson, there is

23   absolutely no equivalence here. I mean I'm not saying

24   you shouldn't get it, but there's a world of difference

25   between producing documents that were part of a

1                          PROCEEDINGS                    58

2   document request and producing them in advance of the

3   deposition in which you've been (inaudible) and should

4   have happened anyway, and asking what you're going to

5   be asked about in a deposition, you don't see the

6   difference between those two, they're completely

7   different? And it's not the norm that people know in

8   advance what exhibits they're going to be asked for in

9   depositions, why is this case being treated

10  differently?

11          MS. ROBINSON:  Well a lot of things in this

12  case are treated differently and, you know, this is a

13  case that is very unusual in that there are many very

14  high ranking officials that are going to be testifying

15  in this case.  And I'd just go back to what I as saying

16  earlier is that it is, it prevents the gotcha moment.

17  It prevents wasting time reading a 50 page document.

18  It prevents going down topics which the deponent has no

19  knowledge of and allows that deponent to, when the

20  topics are given, and we're not, you know, we're not

21  saying that, we understand that not every exhibit and

22  topic is known, you know, a week in advance of a

23  deposition but we, we would like to see topics and

24  exhibits, you know, a week before a deposition with the

25  follow-up in three days. I mean it makes, it just makes

1

2  the depositions more efficient and it prevents, you

3  know, gotcha, here you are on video doing this, which

4  could be completely taken out of context or just

5  snippets of video. A snippet of this video and then

6  missing five minutes of it, and then a snippet of, you

7  know, it just, it prevents that.

8            THE COURT:  Ms. Frick?

9            MS. FRICK:  Your Honor, I'm not really sure

10 what to say to be honest. I think that we agree with

11 Your Honor that it is not in our interest to spend our

12 precious deposition hours that we, you know, our few

13 hours that we're allotted between eight cases, having a

14 plaintiff sit and read a 50 page document, that's in

15 our interest. And so the extent that we can avoid

16 wasting time like that, we will absolutely do so in

17 order to have an efficient deposition, that's

18 absolutely in our interest.

19            You know, the flipside of that, of course, is

20 that to the extent that we do provide information in

21 advance, we ask that the City actually prepare their

22 witness for it and, you know, not take additional time

23 during the deposition to re-review it.  But other than

24 that, the idea that a deponent is entitled to know

25 exactly what is coming to them in a deposition, whether

1                     PROCEEDINGS                    60

2  it's the types of questions that will be asked, the

3  exhibits that will be shown, just have no support in

4  any, in any case, in any rule, in any case law. And I

5  don't have anything else to say other than that there

6  are very good reasons for a lawyer on either side to

7  not want to telegraph their entire deposition strategy

8  well in advance of a deposition.

9        MS. ROBINSON:  And I understand that, Your

10 Honor, but maybe it's escaping me, but I'm pretty sure

11 that plaintiffs agreed to giving topics and exhibits a

12 week in advance to the extent that they know what they

13 are.  I think that they agreed to that in their letter.

14       MS. FRICK:  Yeah, exactly, what we agreed to

15 -- what we agreed to is that we would provide exhibits

16 and topics, you know, that we have ready and that we

17 think will aid at the deposition, but that we are not

18 precluded from asking about other topics and other

19 exhibits, that is the whole point of our, you know, our

20 exhaustive meet and confer and our letter.

21       THE COURT:  Okay.

22       MS. ROBINSON:  And we understand that, Your

23 Honor, and all we are asking for is a supplement, you

24 know, we understand that not every document and topic

25 is going to be given to us, but what can be given to us

1                          PROCEEDINGS                    61

2    within a week and then what can be given to us within

3    three days is all we're asking for.

4              MS. FRICK:  Your Honor, what the City, as long

5    the City is not asking for an exhaustive list then we

6    can, we can provide as we have said from the start, we

7    will provide what we can.

8              THE COURT:  Okay, that's fine.

9              MS. FRICK:  But we won't be precluded --

10             THE COURT:  Provide what you can, provide what

11   you can, you will not be precluded from asking about

12   other topics or documents or videos, just understand

13   that there could be consequences if the deposition has

14   to stop while something gets reviewed that you could

15   have, something that you could have told them about.

16   So I think I'm going with the plaintiffs' offer on this

17   and that's sufficient for me.

18             MS. ROBINSON:  You know, in that case we also

19   would want to object to bringing witnesses back because

20   they, you know, the time is being taken up by reading

21   documents that they haven't seen before --

22             THE COURT:  We'll deal with that if it comes

23   up, I think I already said what I had to say about

24   that.

25             Okay, I think we've covered the letters.  Ms.

1                          PROCEEDINGS                    62

2   Frick, did I understand from you that you wanted to

3   talk about deposition scheduling?

4          MS. FRICK:  Yes, Your Honor, so --

5          THE COURT:  I normally don't hear topics like

6   this but this is such a critical issue and was the

7   subject of an order that I issued and a discussion

8   that, you know, we had in the conference, that I'm

9   going to make an exception and see what we can do right

10  now on it.  Go ahead.

11         MS. ROBINSON:  Your Honor, just before we,

12  before we --

13         MS. FRICK:  Our concern is that --

14         THE COURT:  Hold on.  Hold on, Ms. Robinson

15  had something before we start, what?

16         MS. ROBINSON:  Just one thing before we start,

17  does that mean that we will get exhibits and topics a

18  week, you know, what they can a week in advance and

19  what they can't three days in advance, is that what we

20  agreed to?

21         THE COURT:  No, I think you'll get what they

22  can a week in advance and anything else they want to

23  supplement is completely up to them.

24         MS. ROBINSON:  Understood.

25         THE COURT:  Go ahead, Ms. Frick.

```
 1                         PROCEEDINGS                    63

 2              MS. FRICK:  Okay, so I think our concern is

 3    that we have, we have radio silence right now from

 4    defendants about the process that will be used to

 5    schedule these depositions. So after we, you know, the

 6    conference, I guess it was two weeks ago, and the very

 7    firm messaging that, you know, we're going to be on a

 8    tight timeline, we need to get everything done, we

 9    decided to just make a kind of first batch of deponents

10    that included both lower level and higher level

11    deponents and send that batch over to defendants to

12    say, look, we think it makes sense to kind of start

13    with trying to schedule these so that you're not

14    looking at a giant list and don't really know where to

15    start. So let's start with these 30 people, a handful

16    of which we're ready to depose, you know, right away,

17    and the rest we would ask for, you know, in a couple of

18    weeks and later.  We provided that list on Wednesday

19    and obviously that took a lot of coordination among the

20    teams and we haven't heard, we asked for confirmation

21    on Friday that, you know, there was going to be some

22    kind of start to this process, we haven't heard

23    anything. I followed up again today and I haven't heard

24    anything.

25              And so I'm just concerned A) about the lack of
```

PROCEEDINGS                          64

1

2   a process, and B) what plaintiffs don't want to do is

3   waste the Court's time or come to the Court prematurely

4   about scheduling issues. At the same token obviously we

5   don't want to wait too long such that by the time we

6   get to the Court, you know, we have run out of a lot of

7   time or the Court thinks that we've delayed. And so I

8   guess it's a two-pronged process question, one is

9   looking for process from the City and two is asking the

10  Court for its preference on a process to bring

11  scheduling matters to its attention.

12          THE COURT:  Ms. Robinson.

13          MS. ROBINSON:  We have received their proposed

14  list, Your Honor, but it is our understanding that when

15  a, as it came, as it comes to the line officers and the

16  high ranking officers, that defendants choose their

17  dates based upon their availability. And we have been

18  taking plaintiff depositions and officer depositions

19  and we are going to get back to plaintiffs with respect

20  to their list. But they have a lot of high ranking

21  depositions on the list and we still need to obtain

22  availability for those. And we would prefer, I mean

23  what we would prefer to do is to get the line officers

24  and the plaintiffs out of the way and then work on the

25  high ranking and 30(b)(6) witnesses. That's been our

```
 1                          PROCEEDINGS                    65

 2   plans from the beginning.

 3            THE COURT:  I mean --

 4            MS. FRICK:  Well that plan was never

 5   communicated to us.

 6            THE COURT:  Yes, I mean I'm not quite sure how

 7   to do this.

 8            MS. FRICK:  And --

 9            THE COURT:  Hold on.  Hold on.

10            MS. FRICK:  If that was the plan we should

11   have been doing that during the stay.

12            THE COURT:  Listen, we have to solve the

13   problem we have in front of us.  The, I guess when

14   names are available the defendants need to immediately

15   contact these people and schedule them.  Now whether

16   they are scheduled, you know, August 1st or they're

17   scheduled October 1st, I'm not sure is that important as

18   long as, because some people might not be free for two

19   months.  But I guess it's what's important that there

20   be a flow of names from the plaintiffs and a constant

21   filling in of the calendar by defendants as they reach

22   each of these deponents.

23            MS. FRICK:  I believe that our understanding

24   this entire time is that defendants would be choosing

25   the dates for the defendant officers, especially --
```

```
 1                         PROCEEDINGS                    66

 2              THE COURT:  We just want to make sure that

 3   those dates get chosen --

 4              MS. FRICK:  Understood.

 5              THE COURT:  (continuing) -- within some,

 6   within some reasonable period of when they give you

 7   names.  So the calendar has to be --

 8              MS. FRICK:  Your Honor, I need to clarify

 9   that.

10              THE COURT:  Go ahead.

11              MS. FRICK:  I'm sorry to interrupt, but we

12   have provided the defendants the full list months,

13   weeks ago, if not I believe when I started this process

14   it may have been in May, possibly April, so the

15   defendants have had the list. The list that we provided

16   last week was just a subset to say, look, to the extent

17   that you are feeling overwhelmed by this big list of

18   names, like here's a list of 30 that we have identified

19   that like we could, that we want you to prioritize

20   getting done and that list included a number of line

21   officers.

22              So the point is that there are, other than

23   plaintiffs there are no depositions on the calendar,

24   none, zero.

25              THE COURT:  Okay, I see the problem. You have
```

PROCEEDINGS                          67

1

2  the full list, you just, you gave a list of people that

3  you wanted to give priority to.  Are you ready on the

4  full list as it were?

5          MS. FRICK:  Are we ready, Your Honor?

6          THE COURT:  Yes, on the full list?

7          MS. FRICK:  Do you mean, I just don't think I

8  understand the question.

9          THE COURT:  No, I mean is there any reason

10 they can't just start going down that full list and

11 putting together a deposition calendar right now?

12         MS. FRICK:  There's no reason.  We, our idea

13 was that by providing the names now it would also help,

14 it would also help the defendants know that like we

15 think it makes sense to start with these folks and by

16 start we don't mean, you know, tomorrow, but like this

17 batch of 30 makes sense to be scheduling in the nearer

18 term because there might be, you know, maybe the chief

19 of police shouldn't be the first high level deponent,

20 maybe that person makes sense to be scheduled more in

21 the winter. But at a certain point we kind of lost our,

22 at this point there's not going to be really even time

23 for us to have preferences like that, like we just need

24 people on the calendar.

25         THE COURT:  All right, Ms. Robinson, what's

1                              PROCEEDINGS                      68

2  your proposal for making sure we have everybody

3  scheduled and it's scheduled through February 28th,

4  what's your proposal for how to do that?

5            MS. ROBINSON:  We, as I stated, we are working

6  on plaintiffs' list, that our plan all along was to do

7  the line officer, and that's, in fact, what's been

8  going on is the line officers and the plaintiffs' deps

9  which were ordered to be also taking place. And then

10  the higher ranking individuals would go last in the

11  schedule. And we are doing our best to make the

12  schedule happen and we are going to respond to Ms.

13  Frick's schedule. We've been planning to respond to

14  that schedule.

15            THE COURT:  When you say schedule --

16            MS. FRICK:  Well, to be clear, it wasn't a

17  schedule.

18            THE COURT:  You mean the list of thirty?

19            MS. ROBINSON:  The list, yes.

20            THE COURT:  Yes, okay.  So

21            MS. FRICK:  I also think, Your Honor, we have

22  to double track depositions, and so our idea, as we had

23  discussed in meet and confers and at the conference a

24  couple of weeks ago was that we can hold line officers

25  and high up officers on the same day. There is simply

```
 1                          PROCEEDINGS                    69
 2   not, there are not enough days, work days between now
 3   and February 28th, to do it completely staggered to do
 4   it the way Ms. Robinson is suggesting.
 5            MS. ROBINSON:  I'm not suggesting that, Your
 6   Honor. I'm not suggesting, you know, a deposition a
 7   week.  I'm not even suggesting that we can't double
 8   track, it's only been three days since we've gotten the
 9   list.
10            MS. FRICK:  No.
11            MS. ROBINSON:  And we are working on that
12   list.
13            THE COURT:  What is your process, when you
14   want to, do you contact a line officer's supervisor and
15   you pick a day and you discuss it with them, what do
16   you do?
17            MS. ROBINSON:  We contact the officer directly
18   and we find out what his availability is, and based
19   upon that we schedule, we basically find out what his
20   vacation days are, what his regular scheduled days off
21   are, and then we work into the schedule when that
22   person is available and then when we are available to
23   prep them and depose them. That's how it works with the
24   line officer, it's the same way that it works --
25            THE COURT:  And how long does, I mean it
```

PROCEEDINGS                    70

 1

 2  doesn't sound like it would take, I mean maybe it takes

 3  a day or two to reach the officer, but once you reach

 4  the officer then you've got your list of days, right?

 5          MS. ROBINSON:  Yes, we also -- yes, in theory,

 6  yes, that should work. It's, it just, it's time

 7  consuming, it's a little more involved than that.

 8          THE COURT:  I know, but I think this

 9  investment of time here will save you some grief down

10  the road.

11          MS. ROBINSON:  And plaintiffs have cancelled

12  depositions, this is, you know, not something that's on

13  the defendants.

14          THE COURT:  Ms. Robinson, Ms. Robinson, I'm

15  talking about scheduling depositions.

16          MS. ROBINSON:  Understood.

17          THE COURT:  We need to have depositions

18  filling up a calendar in the short term.

19          MS. ROBINSON:  Understood.

20          THE COURT:  I'm trying to think about how the

21  process should be, I mean I guess I could say I require

22  the plaintiff, I mean it's a total of about how many

23  names or days, it's like a hundred-something, what was

24  it?

25          MS. FRICK:  With the plaintiffs I believe it's

```
 1                           PROCEEDINGS                    71

 2   approximately 125 days total.

 3           MS. ROBINSON:  I think it's 145 days with the

 4   plaintiffs, and that's 145 deposition prep days.  So we

 5   are mindful of the schedule and the --

 6           THE COURT:  Okay, I mean it's your own head on

 7   the chopping block figuratively, I just can't imagine

 8   how you are going to do this without contacting these

 9   officers immediately and getting back to plaintiffs

10   within a matter of, you know, two or three, maybe five

11   at the most days saying here's the dates for these

12   people.  So that's what should be happening on some

13   ratio.

14           Now it doesn't seem, if you've got thirty

15   names, is that what you said you gave them, Ms. Frick,

16   to start?

17           MS. FRICK:  Yes, our kind of batch, but,

18   again, it's just a subset of the people that we're --

19           THE COURT:  I understand, on Wednesday, okay.

20   So --

21           MS. FRICK:  And I do think it's not going to

22   work if the defendants try to first get through all of

23   the line officers before scheduling high up officers.

24   Our main concern about that is we're going to come to

25   the winter and we're going to suddenly have no time for
```

1               PROCEEDINGS              72

2  the people that, you know, the teams really care about.

3            MS. ROBINSON:  And, Your Honor, you know, I

4  misspoke because, you know, obviously, you know,

5  officers will be, you know, combined with each other

6  and there will be high ranking people that will go, you

7  know, more than one in one week. So -- and plaintiffs

8  as well, we still have numerous plaintiffs to go

9  through and we haven't received any of their

10 availabilities as of yet either.  So --

11           THE COURT:  If you had come to me and

12 complained about that -- if you came to me and

13 complained about that I would do something.  But I'm

14 just trying to solve this problem and it seems to me

15 that we need to get a list really quickly, and I'm not

16 sure it has to be all 145, but at least the 30, you

17 know, within a matter of, you know, by Friday at the

18 absolute latest --

19           MS. ROBINSON:  Your Honor, that would be

20 impossible to get availability for 30 officers --

21           THE COURT:  Why?

22           MS. ROBINSON:  By Friday.

23           THE COURT:  You told, I asked you this

24 question, you told me that you have to contact the

25 officer and then you basically know the dates of that

1                              PROCEEDINGS                        73

2   officer and it takes you a day or two to reach that

3   officer.

4           MS. ROBINSON:  Well I didn't say it takes a

5   day or two to reach the officer, sometimes it can take

6   a long time to reach an officer.  We've had that issue

7   with the past round of officers. We did double track on

8   Friday, by the way, and it can be complicated reaching

9   officers. Once you reach an officer and, it's just a,

10  it can be a complicated process reaching them, not

11  necessarily getting them scheduled.  But we have to

12  take into consideration there are --

13          THE COURT:  How many officers have you

14  contacted so far to try to schedule their deposition?

15          MS. ROBINSON:  Me, personally?

16          THE COURT:  No, the City of New York.

17          MS. ROBINSON:  I don't, I don't know the

18  answer to that, Your Honor.

19          THE COURT:  I want an answer to that question

20  and I want it by tomorrow.  I want, I ordered these

21  depositions to start happening. You already have the

22  list of a hundred and whatever names putting aside

23  these thirty names. These people have to be contacted

24  immediately. I want, I think the way to do this is for

25  you to do an Excel spreadsheet with these names and

2  column one is officer contacted, and I'd like to see

3  it, if not tomorrow, the next day.  And, of course, it

4  needs to be shared with the plaintiffs.  And this is a

5  very serious issue, this is a, you know, a gateway into

6  the whole deposition process and it has to be done on

7  an expedited basis, it's the simplest thing in the

8  world. I'm not saying you should be able to reach them

9  in a day or two, but making that initial contact that

10  has to be done just immediately.  And you have to

11  figure out these dates, otherwise this is not going to

12  happen and I'm going to, I'm absolutely going to put

13  the blame on the City for this and there will be no

14  escaping it.

15          MS. ROBINSON:  I also want to bring up that

16  plaintiffs have given us no availability for any of the

17  plaintiff dates.

18          MS. FRICK:  That's not, Your Honor, that's

19  simply not true --

20          THE COURT:  Stop.  Stop.  Stop, Ms. Frick, I'm

21  not dealing with that now, I'll deal with it perhaps at

22  the end of this phone call, but it's outrageous, Ms.

23  Robinson, that your reaction to my asking you to

24  contact these officers which is your responsibility or

25  the City's responsibility, your reaction to that is to

1                          PROCEEDINGS                    75

2     point fingers at the plaintiff about a problem you

3     never --

4              MS. ROBINSON:  No, I agree with Your Honor,

5     I'm not --

6              THE COURT:  Ms. Robinson, you need to stop

7     interrupting me.

8              MS. ROBINSON:  Understood.

9              THE COURT:  Because that sends a very bad

10    message to me when you don't deal with an issue that

11    I'm raising with you. This is a very, very serious

12    issue.  You have to contact these names, it should not

13    require the plaintiffs to give you a list of thirty

14    names. I put a task on you that I know is hard, but

15    you're not helping yourself. If it were me, the day

16    after I was told that I had to depose a hundred-

17    whatever people by February 28th.  I would organize a

18    group to contact all of those people to put together a

19    schedule that would allow me to do it.  And that's what

20    you should be doing.  And that's why you need to start

21    this spreadsheet, I'm frankly shocked if it doesn't

22    exist already --

23             MS. ROBINSON:  It does, Your Honor.

24             THE COURT:  And column one is date this person

25    was contacted, column two is dates they're available,

PROCEEDINGS                                76

2  then you get to putting together a schedule that you

3  share with the plaintiffs in consultation with the

4  plaintiff.

5         So we're now going to start, this spreadsheet

6  is doing to be shared with the plaintiffs, the list of

7  names and contact date. Whether there's been an effort

8  to contact them and when the contact was made, okay?

9  and that needs to be shared with them on a regular

10  basis starting to days from now. You don't have to send

11  it to me, I want you to send it to plaintiffs, they'll

12  tell me if they think there is going to be a problem in

13  doing this. And it's not just the thirty names they

14  gave you, that's everybody.

15         Now some, if some names are blank because you

16  couldn't contact them in the next couple of days,

17  that's fine, but if it turns out you've only contacted

18  three people between now and two days from now, that's

19  going to be very serious and I want to hear about it.

20         MS. ROBINSON:  Understood, Your Honor.

21         THE COURT:  So let's provide a spreadsheet

22  every Wednesday, okay, starting this Wednesday, and if

23  the plaintiffs feel this is not happening the way it

24  should be happening, they're absolutely welcome to come

25  to me, I'm not going to be giving any extensions on

```
 1                        PROCEEDINGS                    77
 2  2(a) letters or anything like that, we're going to do
 3  it very quickly.
 4          All right, Ms. Frick, do you think there is
 5  anything else we can do on the scheduling piece from
 6  your end other than the spreadsheet for now?
 7          MS. FRICK:  No, Your Honor, I appreciate your
 8  help.
 9          THE COURT:  Okay, so hopefully that works.
10  Now, Ms. Robison, what do you want, what relief do you
11  want from me on the issue of scheduling plaintiffs'
12  depositions or would you rather talk about it with the
13  plaintiffs first?
14          MS. ROBINSON:  We can discuss it with the
15  plaintiffs first, we just need dates of  availability.
16          THE COURT:  All right, I will not deal with
17  the issue then now.
18          I think that's my agenda for today, anything
19  else Ms. Frick from the plaintiffs' side?
20          MS. FRICK:  That's all on our side, Your
21  Honor, thank you very much for your time.
22          THE COURT:  Ms. Robinson, anything from the
23  defendants' side?
24          MS. ROBINSON:  No, Your Honor, thank you.
25          THE COURT:  I'd like a written order about the
```

```
 1                         PROCEEDINGS                    78

 2  deposition protocol, if you can't agree on it just send

 3  me competing orders, try to do it by Friday.

 4           Okay, thank you, everyone, good-bye.

 5           MS. ROBINSON:  Thank you, Your Honor.

 6           MS. FRICK:  Thank you, Your Honor.

 7                (Whereupon the matter is adjourned.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

79

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, In Re: New York Policing During Summer 2020 Demonstrations, docket #20cv8924, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature  ___*Carole Ludwig*_____

Date:  July 13, 2022