UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

In Re: New York City Policing During Summer 2020 Demonstrations

Index No. 20-CV-8924(CM)(GWG)

------------------------------------------------------------- x

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Corey Stoughton
Jennvine Wong
Rigodis Appling
The Legal Aid Society
199 Water Street
New York, N.Y. 10038
(212) 577-3367
cstoughton@legal-aid.org

Robert Hodgson
Molly K. Biklen
Jessica Perry
Daniel R. Lambright
Daphna Spivak
Lisa Laplace
Christopher T. Dunn
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300
rhodgson@nyclu.org

*Attorneys for Plaintiffs in 20 Civ. 8924*

Dated: July 21, 2022
         New York, N.Y.

**TABLE OF CONTENTS**

**Page**

Introduction ........................................................................................................................1

Factual Background ...........................................................................................................1

Argument ............................................................................................................................5

I.     Deliberative Process Is a Qualified Privilege that Must Give Way to Plaintiffs' Greater Need for Records of the NYPD's Only After-Action Review of the 2020 Racial Justice Protests. ............................................................................................5

II.    *In Camera* Review and Production with Appropriate Redactions is Warranted Because the Disputed Documents Likely Contain Segregable Factual Information, Final Recommendations or Information Related to the Final Decision to Abandon the Conforti Report. ..................................................................................................8

Conclusion ........................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abdell v. City of New York*, No. 05 CIV. 8453 KMK JCF, 2006 WL 2664313 (S.D.N.Y. Sept. 14, 2006) .................................................................................................................................. 10

*Borchers v. Com. Union Assur. Co.*, 874 F. Supp. 78 (S.D.N.Y. 1995) ...................................... 13

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .............................. 9

*Color of Change v. U. S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447 (S.D.N.Y. 2018) .......... 12

*Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565 (D.C. Cir. 1987) ...................... 12

*E.B. v. N.Y.C. Bd. of Educ.*, 233 F.R.D. 289 (E.D.N.Y. 2005) ...................................................... 10

*Env't Prot. Agency v. Mink*, 410 U.S. 73 (1973) .......................................................................... 12

*Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473 (2d Cir. 1999) ........................................... 6, 10

*Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81 (2d Cir. 1991) ............................ passim

*Kerr v. U. S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394 (1976) .................................................. 13

*King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988) .......................................................................... 7

*MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008) ................................... 6, 7, 8, 13

*Mitchell v. Fishbein*, 227 F.R.D. 239 (S.D.N.Y. 2005) .................................................................. 7

*N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) ............................................................. 14

*Nat'l Cong. For Puerto Rican Rts. ex rel. Perez v. City of New York*, 194 F.R.D. 88 (S.D.N.Y. 2000) ......................................................................................................................................... 7, 9

*Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350 (2d Cir. 2005) ....................................... 9

*Noel v. City of New York*, 357 F. Supp. 3d 298, (S.D.N.Y. 2019) ............................................. 6, 7

*Tigue v. U.S. Dep't. of Just.*, 312 F.3d 70 (2d Cir. 2002) ......................................................... 6, 12

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ........................................ 10

*Wood v. F.B.I*, 432 F.3d 78 (2d Cir. 2005) ................................................................................... 14

**Introduction**

Plaintiffs move the Court to conduct an *in camera* review of, and release with appropriate redactions, certain documents relating to an internal after-action review process the NYPD conducted in the aftermath of the George Floyd protests. Defendants have withheld these documents in their entirety based on the deliberative process privilege. Deliberative process is a qualified privilege that must cede to Plaintiffs' significant need for these materials on an issue vital to the case – namely, Defendants' violent and unlawful response to widespread protests against the police and how official actions and inactions contributed to that response. Moreover, even if the qualified privilege is not *per se* overcome, Defendants' own description of the documents indicate that they contain highly relevant, non-privileged material and Defendants have not established that privileged and non-privileged portions of these documents are inextricably intertwined. Accordingly, *in camera* review and release is appropriate.

**Factual Background**

At the end of June 2020, as protests sparked by the death of George Floyd and the NYPD's brutal response to those protests continued to roil the City, NYPD Commissioner Dermot Shea tasked Assistant Chief Thomas Conforti, the Commanding Officer of the NYPD Operations Bureau and the former Executive Officer of the Training Bureau, with conducting an after-action review and "drafting a report reviewing the police response to those protests." Exhibit 1 (Affirmation of Thomas Conforti (April 19, 2022) (hereinafter, "First Conforti Aff.") ¶ 5). This process "reviewed the police response to protests" that occurred between May 25 and June 30, 2020, including by analyzing "statistical data and other information provided" by a range of documents and conducting interviews of approximately 100 members of the NYPD. *Id*. ¶¶ 6-8. Those interview notes were memorialized in real time in the working draft of the report kept by

Chief Conforti. *Id.* ¶¶ 8-9. Chief Conforti completed a draft report of "approximately 46 pages in all." *Id.* ¶ 6. Some of the recommendations in the report were adopted by the NYPD "in real-time" as Chief Conforti continued to revise his draft. *Id*. ¶¶ 11-12.

On September 29, 2020, Chief Conforti presented his findings to a presently unknown group of high-level NYPD officials. Exhibit 2 (June 24 Conforti Privilege Log at 11, Document 26). Communications were prepared to transmit the report to Mayor Bill de Blasio, among others. *Id*.at 14 (Document 32). At some subsequent point, however, a decision was taken within NYPD leadership that the report would not be published or released to the public. Ex. 1 (Conforti Aff. ¶ 16.)

A central contention of the Plaintiffs' claims is that the NYPD systematically fails to learn the lessons of its pattern of abusive and unconstitutional policing of protests, in particularly by failing to competently perform after-action reviews. *See, e.g.*, *People v. City of New York*, 21-CV-322, First Amended Complaint ¶ 77 (ECF 51) (citing the New York City Law Department's own conclusion that the NYPD's failure to conduct protest-related after-action reviews between the 2004 RNC protests and the 2020 Racial Justice Protests contributed to the constitutional violations found during the latter).  Plaintiffs therefore sought discovery on Defendants' after-action report of the protests.

On April 12, 2022, the Court denied Plaintiffs' prior motion seeking production of all documents related to the Chief Conforti's after-action review, reasoning that Plaintiffs had not established waiver of the privilege despite the belated and inadequate nature of the Defendants' first two privilege logs relating to this issue. ECF 463, 481, 484, 497.[1] Following the Court's instruction to Defendants to provide a "beefed up" privilege log and an affidavit from Chief

---

[1] The procedural history of the parties' discovery dispute prior to the Court's April 12 order is not directly relevant to this motion, but is memorialized in Plaintiffs letter motion of March 25, 2022 (ECF 463).

Conforti, *see* Tr. (April 12, 2022) at 85:17-86:2, Defendants produced a revised privilege log on April 19, 2022, listing 39 separate documents withheld in their entirety, along with an affirmation from Chief Conforti. Exhibit 3 (April 19 Conforti Privilege Log); Exhibit 1 (First Conforti Aff.).

After reviewing this new material, Plaintiffs did not agree that the revised log properly invoked the privilege as to each of the listed documents. Two days prior to the parties' scheduled meet and confer on this issue, Defendants emailed to say that they were "in receipt of approximately 50 additional documents provided by Chief Conforti," needed time to review them for privilege, and would produce another amended privilege log by the following Monday, May 16. Exhibit 4 (Email from Breslow to Stoughton, dated May 10, 2022). While expressing concern about the belated disclosure of additional responsive documents, Plaintiffs agreed to postpone the meet and confer until the updated privilege log was produced. *Id.* (Email from Stoughton to Breslow, dated May 11, 2022).

On May 17 – one day later than promised – Defendants produced a supplement to the April 19 privilege log, listing ten additional documents withheld in their entirety. Exhibit 5 (May 17 Conforti Privilege Log Supplement).

Defendants appeared on May 26, 2022 for a meet and confer on the adequacy of the April 19 privilege log and its May 17 supplement.[2] During that meeting, the parties agreed they had

---

[2] The length and attendees of this meet and confer are memorialized in Plaintiffs' July 19, 2022 letter seeking leave to file this motion. ECF 675.

3

reached an impasse as to several documents.[3] Those documents, which are now the subject of the motion, include the following:[4]

- Documents 1, 4-5, 8-10, and 24: These documents consist of the final or near-final versions of the Conforti report (Documents 1 and 5) as well as draft portions that appear to contain non-privileged information that is not duplicative of the more complete drafts (Documents 4, 8-10 and 24);

- Document 26: The Power Point presentation delivered by Chief Conforti on September 29, 2020, summarizing his review;

- Document 2: Chief Conforti's notes documenting a specific incident at one of the protests allegedly involving an emotionally disturbed person;

- Document 3: Emails relating to media inquiries from the *New York Times*, among other outlets; and

- Documents 31-32: Emails between Chief Conforti, Deputy Commissioner William Andrews, and Assistant Commissioner for Legal Matters Oleg Chernyavsky from the period in November 2020, months after the completion of the report and close in time to the NYPD's final decision not to publish the Conforti report.

Despite the impasse as to these documents, Defendants agreed to amend the privilege log to provide additional information to better enable Plaintiffs to assess the application of the privilege as to these and other documents that, at that point, remained under discussion. Exhibit 4 (Email from Stoughton to Breslow, dated May 26, 2022).

---

[3] During the May 26 meet and confer, Defendants also agreed to reassess the application of the privilege as to several other documents, and on June 25, 2022 agreed to produce some of them, with redactions. Exhibit 4 (Email from Breslow to Stoughton dated June 25, 2022). Unfortunately, defendants have stated that they are unable to produce those documents until July 25, 2022. *Id.* (Email from Riordan to Stoughton, dated July 11, 2022). Because Plaintiffs have not received these documents, the scope of those redactions are not the subject of this motion. However, Plaintiffs reserve the right to raise any issues relating to the scope of Defendants' redactions of these documents, once they are produced.

[4] The numbering in this list is based on Exhibit 2, the June 24 privilege log. Defendants changed the numbering of the documents across the various versions of the Conforti privilege log produced, such that references to these same documents in earlier versions or in some correspondence among the parties may differ.

After some delay, on June 25, 2022, Defendants produced a fifth amended Conforti privilege log. Exhibit 2.[5] This was followed on June 29 with a supplemental affirmation from Chief Conforti consisting of an index of the records he produced to NYPD Legal Bureau relating to his review process. Exhibit 6 (Affirmation of Thomas Conforti (June 29, 2022) (hereinafter "Second Conforti Aff.").[6] The June 24 Conforti Privilege Log provides representations that certain documents not at issue in this motion – e.g, Documents 6, 11-23, 25, and 27-30 – do not contain "any factual takeaways" or "any distinct factual information" other than factual information duplicated in Conforti's final drafts, or contain "solely draft recommendations." *See* Exhibit 2 at pp. 3, 5-12. Notably, Defendants do not (and presumably cannot) make such representations as to the documents at issue in this motion.

**Argument**

I.  Deliberative Process Is a Qualified Privilege that Must Give Way to Plaintiffs' Greater Need for Records of the NYPD's Only After-Action Review of the 2020 Racial Justice Protests.

---

[5] This fifth amended privilege log included yet more newly discovered responsive documents – including five documents that informed Conforti's review, as to which Defendants, for the first time, invoked the law enforcement privilege - and also removed several documents previously listed, without explanation. Defendants have agreed to meet and confer on this issue, as well as the issue of Defendants' response an interrogatory Plaintiffs served asking Defendants to identify all individuals involved in the decision to abandon the Conforti report, after the July 25 production of redacted documents. Thus, these issues are not the subject of the instant motion, but Plaintiffs reserve the right to move to compel on these issues at a later date.

[6] Although it is not directly relevant to the substance of this motion, Plaintiffs wish to alert the Court that Chief Conforti's second affirmation states that he provided the records relevant to his review to the NYPD Legal Bureau on April 14 and April 19, 2022 – days after the court conference on Plaintiffs' motion seeking a declaration that Defendants had waived the privilege as to these records. *See* Exhibit 6 at ¶ 2. This sworn statement establishes that, contrary to any representations made in April 2022, Defendants did not work in good faith to respond to Plaintiffs' discovery demands or comply with the Federal and Local rules on invocation of the privilege, as Defendants' counsel did not even possess the records, let alone review them for privilege, prior to preparing their first two privilege logs on this issue – or, indeed, at any point until after Plaintiffs filed their motion and the Court ordered a "beefed up" privilege log on April 12. These misrepresentations to the Court and Plaintiffs were not identified in the audit the Court ordered. *See* ECF 526.

5

The deliberative process privilege protects inter-agency and intra-agency documents only when they are "predecisional" and deliberative. *Tigue v. U.S. Dep't. of Just.*, 312 F.3d 70, 76 (2d Cir. 2002). Documents are "predecisional" when they are "prepared in order to assist an agency decisionmaker in arriving at his decision." *Id.* at 80 (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999)). Documents are deliberative when they are "actually . . . related to the process by which policies are formulated." *Cuomo*, 166 F.3d at 482 (quoting *Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81, 84 (2d Cir. 1991)).

Even if the disputed records satisfy the "deliberative" and "pre-decisional" criteria for invocation of the privilege, that is not enough for the City to justify withholding them in full. Deliberative process privilege is a qualified privilege subject that must yield to a party's greater need. *Noel v. City of New York*, 357 F. Supp. 3d 298, 303 (S.D.N.Y. 2019). When administering this balancing test, the party invoking the privilege holds the burden of persuasion. *MacNamara v. City of New York*, 249 F.R.D. 70, 80 (S.D.N.Y. 2008). The balancing factors are:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Noel*, 357 F. Supp at 303.

All of these factors weigh in favor of disclosure of the disputed records. As noted above, the decision-making processes to create and abandon the report is the direct subject of this litigation, making disclosure of otherwise privileged documents appropriate and necessary. *See Mitchell v. Fishbein*, 227 F.R.D. 239, 250 (S.D.N.Y. 2005); *Noel*, 357 F. Supp at 303 n.2. "Generally, in civil rights cases against police departments, it is unlikely that plaintiffs will be able to obtain information of comparable quality from any other source." *Nat'l Cong. For Puerto Rican Rts. ex rel. Perez v. City of New York*, 194 F.R.D. 88, 96 (S.D.N.Y. 2000). That is the case here,

6

especially as the Conforti review is the only internal review conducted by the NYPD and deposition testimony coming two years after the fact and without the benefit of documents to ground testimony and refresh recollections is unlikely to match the value of contemporaneous, written documentation of the process. In civil rights cases, government defendants' privilege claims "must be extremely persuasive" because the government's actions are so central to litigation in the public interest. *MacNamara*, 249 F.R.D. at 80 (citing *King v. Conde*, 121 F.R.D. 180, 195 (E.D.N.Y. 1988)). That is especially so here, where the allegations of widespread police violence targeting racial justice protesters has sparked dozens of lawsuits and a challenge from the Attorney General. Keeping these records of the NYPD's only after-action review of its protest response completely hidden will fundamentally inhibit a full inquiry into the important questions of liability at issue in these cases. As to the final factor – the risk of creating timidity within the NYPD –there is no reason that targeted redactions or a protective order could not suffice to mitigate any risk. It is also important to note that the NYPD already buried the Conforti review process, suggesting that agency timidity about candid self-reflection is linked more to other factors than to the prospect of disclosure in this litigation.

In all these respects, this case is similar to *MacNamara*, where the court held that a memorandum detailing a proposal for mass arrest processing during the 2004 RNC fell within the deliberative process privilege, but that privilege was overcome after administering the balancing test. *Id.* at 82. Facts tipping the court in favor of disclosure were: that "the intent and knowledge of the NYPD officials" were "central to the plaintiffs' claims;" that the information in the memorandum could only be obtained from the defendants; and that disclosure would not pose a substantial risk of chilling NYPD employees' candor due to protective orders and the NYPD's "strong incentive . . . to fulfill their professional obligations [] to relay to their supervisors

7

recommendations regarding operational policies." *Id.* at 82-83. All of these factors are present in this case with equal force and support the disclosure of the disputed documents.

II. *In Camera* Review and Production with Appropriate Redactions is Warranted Because the Disputed Documents Likely Contain Segregable Factual Information, Final Recommendations or Information Related to the Final Decision to Abandon the Conforti Report.

Even if the deliberative process privilege does not yield in full to Plaintiffs' higher interests, disputed documents 1-5, 8-10, 24 and 26 should be produced because the June 24 privilege log contains strong indications that they contain important, segregable factual material or other non-privileged information describing the process the NYPD undertakes to perform after-action reviews of major protest events – a subject that is directly at issue in this litigation.

As an initial matter, Defendants' assertion that all of the recommendations contained in the draft Conforti materials are "pre-decisional" is belied by Chief Conforti's statement that some of his proposals – he provides an example relating to placing fire extinguishers in police vehicles – were adopted "immediate[ly]" and "in real-time" as he reported back to Commissioner Shea on his progress. Exhibit 1, ¶¶ 11-12. Because aspects of Chief Conforti's personal recommendations were, in fact, adopted, the report represents, at least in part, final agency decisionmaking; the fact that the NYPD chose never to publish his report does not itself render its contents "pre-decisional." *New York Times Co. v. United States Dep't of Just.*, 939 F.3d 479, 490 (2d Cir. 2019) ("[E]ven when a document is, in fact, pre-decisional and non-binding at the time of its creation, it may over time come to constitute the agency's 'working law' if … the agency 'incorporates by reference' the document into a final decision"); *Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 356-57 (2d Cir. 2005) (holding that documents that would have been categorized as predecisional at the time of preparation can lose that status when they are "adopted, formally or informally, as the agency position on an issue.") (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d

8

854, 866 (D.C. Cir. 1980)). Therefore, at a minimum, portions of the report relating to recommendations that were adopted should be produced.

The deliberative process privilege also does not apply to "purely factual material." *Nat'l Cong. for Puerto Rican Rts.*, 194 F.R.D. at 93 (quoting *Hopkins* 929 F.2d at 84). Defendants thus must disclose "any reasonably segregable portion" of the allegedly privileged documents. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 789 n.5 (2021). Defendants must utilize redactions to segregate such material from pre-decisional, non-final opinions and recommendations and produce what it can. *See Cuomo*, 166 F.3d at 482 ("The privilege does not, . . . as a general matter, cover 'purely factual' material.") (quoting *Hopkins*, 929 F.2d at 85); *E.B. v. N.Y.C. Bd. of Educ.*, 233 F.R.D. 289, 292 (E.D.N.Y. 2005) ("[F]actual findings and conclusions, as opposed to opinions and recommendations, are not protected.") (internal quotation marks and citation omitted).

The First Conforti Affirmation establishes that the draft report itself – reflected in Documents 1 and 5 – is based on a review of statistical information, including information contained in records Defendants have withheld on the basis of law enforcement privilege, and interviews with more than 100 members of service, most of whom Plaintiffs will never have the opportunity to depose. Exhibit 1 ¶ ¶ 6-8. It is therefore almost certain to contain highly relevant and possibly unique factual information about the protests at issue. Chief Conforti stated in his affirmation that "to the extent that [he did take notes of his more than 100 interviews], they were memorialized within the electronic working draft of the report, contemporaneous to each interview." Conforti Aff. ¶ 9. As a result, the draft report represents the only documentation of that factual material and is not privileged. *Cf.*, *Abdell v. City of New York*, No. 05 CIV. 8453 KMK

9

JCF, 2006 WL 2664313, at *7 (S.D.N.Y. Sept. 14, 2006) (holding that witness statements in interview notes are not protected by attorney work product).

Moreover, in their June 25 privilege log, Defendants indicated where documents do not contain any factual information (or, at least, any factual information not duplicated by other disputed documents). *See* Exhibit 2 at pp. 3, 5-12 (Documents 6, 11-23, 25, and 27-30). Notably, they do not make any such claim as to the documents that are subject to this motion. The references to documents that contain factual information "duplicative" of that in the disputed records implicitly affirm that those records contain factual information. *Id.*

Beyond the full draft reports, the privilege log entries for certain parts of the drafts at issue in this motion – namely documents 4, 8-10 and 24 – contain affirmative indications that they are primarily factual in nature. Document 4 is titled "Notes – CJB," presumably referring to the role of the Criminal Justice Bureau, which managed mass arrest processing centers during the protests. While Document 4 may contain, in part, Chief Conforti's "personal thoughts and ideas," it also is likely to contain information about the decisions made by the CJB that are directly relevant to questions of municipal liability in this case, among other matters. Document 8 is titled "De-arrest" and is described as relating information the NYPD assembled about its allegations that protesters deliberately acted "to intervene in law enforcement arrests" – a claim that both Defendants and the Union Intervenors are likely to press in their defense and for which Plaintiffs are entitled to test the evidentiary basis. Document 9 is titled "Over this period" – an opening that strongly suggests a factual description of specific events -- and is not described as containing only Chief Conforti's opinions. Document 10 is titled "The Intelligence Bureau is the primary source…," again an opening that suggests a factual recitation of the role of the Intelligence Bureau in developing the NYPD's response to the protests. Finally, Document 24 is titled "Technology played an important

10

role," suggesting material explaining how the NYPD used technology during the protests – a factual issue and one about which very little discovery material has been produced to date.

In these privilege log entries and in the parties' meet and confers, Defendants have declined to provide any information to suggest that any of Chief Conforti's proposed and rejected policy or procedure changes cannot be segregated (and redacted) from the factual material and information about those of his proposals that were adopted. The test for whether factual information is segregable from an otherwise privileged document is whether the factual information "too intertwined with evaluative and policy discussions." *Tigue*, 312 F.3d at 82. Factual segments of otherwise privileged documents are "inextricably intertwined" with privileged information when disclosure of the factual information would "compromise the confidentiality of deliberative information," *Hopkins*, 929 F.2d at 85 (quoting *Env't Prot. Agency v. Mink*, 410 U.S. 73, 92 (1973)), or when disclosure would "expose an agency's decisionmaking process in such a way . . . [that] undermine[s] the agency's ability to perform its functions." *Color of Change v. U. S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 455 (S.D.N.Y. 2018) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

Defendants have not provided any reason to believe that disclosing the non-privileged portions of these records would be impossible or would compromise the protection of truly deliberative material. Indeed, Defendants have provided no basis for distinguishing the disputed records from other records Defendants have agreed to produce with redactions. The absence of a record sufficient to establish lack of segregability warrants, at a minimum, the Court's review of the records. *See Hopkins*, 929 F.2d at 85-86 and 89 (holding that because the district court did not initially consider if factual data could be segregated, and because the defendant – HUD – only made a conclusory assertion that factual information was intertwined with privileged opinions, the

Second Circuit remanded the issue back to the district court to conduct an *in camera* review to determine if the information could be segregated).

"*In camera* review is particularly encouraged in cases invoking governmental claims of privilege." *MacNamara*, 249 F.R.D. at 75 n.2 (quoting *Borchers v. Com. Union Assur. Co.*, 874 F. Supp. 78, 79 (S.D.N.Y. 1995)). The Supreme Court has "long held the view that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege." *Kerr v. U. S. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 405-06 (1976).

Beyond the above-described records, the Court should review and order the production of Documents 31 and 32. These records represent emails between Chief Conforti, Deputy Commissioner William Andrews and Assistant Deputy Commissioner for Legal Matters Oleg Chernyavsky from November 2020—long after the completion of the draft Conforti report and closer in time to the final decision near the end of 2020 to abandon the report. These records presently represent the only possible documentation of the final agency decision to abandon the report – an issue that is directly relevant to Plaintiffs' claims that the NYPD does not take seriously its obligation to review and respond to its own malfeasance. As a matter of law, this decision is final, and thus not subject to the deliberative process privilege. *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975) (holding that memoranda explaining decisions by the NLRB not to file unfair labor practice complaints were final decisions). While not every memoranda or communication relating to that final decision may be disclosable, at a mimumum, *in camera* review is necessary to examine whether these communications by high-level NYPD officials, who likely were involved in that decision, reveal final decisionmaking and reasoning. *Cf. Wood v. F.B.I*, 432 F.3d 78, 81-85 (2d Cir. 2005) (holding that a DOJ decision not to initiate a prosecution is a

final decision, but declining to order production of a subordinate memoranda relating to that decision absent evidence that its reasoning was incorporated into that final decision).

## Conclusion

For the foregoing reasons, the Court should review the disputed documents *in camera* and order their release with redactions, if appropriate.