UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

SAMIRA SIERRA, AMALI SIERRA,
RICARDO NIGAGLIONI, and ALEX GUTIERREZ,
individually and on behalf of all others similarly situated,

                       Plaintiffs,

       v.

CITY OF NEW YORK, a municipal entity; BILL DE BLASIO,      20-cv-10291
in his individual capacity; DERMOT F. SHEA, in his individual  (CM)(GWG)
capacity; TERENCE A. MONAHAN, in his individual capacity;
UMID KARIMOV, in his individual capacity; ALFREDO JEFF,
in his individual capacity; DEBORA MATIAS, in her individual
capacity; and ANDRE JEANPIERRE, in his individual capacity,
KENNETH C. LEHR, in his individual capacity,

                       Defendants.

------------------------------------------------------------------------ X

CHARLES HENRY WOOD, on behalf of himself
and all others similarly situated,

                       Plaintiff,

       v.

CITY OF NEW YORK, a municipal entity; and            20-cv-10541
BILL DE BLASIO, TERENCE A. MONAHAN,           (CM)(GWG)
JULIO DELGADO, THOMAS MOSHER, THOMAS
GARGUILO, and ISMAEL HERNANDEZ CARPIO, in their
individual capacities,

                       Defendants.

------------------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF *SIERRA* AND *WOOD* PLAINTIFFS'
MOTION FOR LEAVE TO FILE AN AMENDED AND CONSOLIDATED COMPLAINT**

THE LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.
392 Central Avenue # 7803
Jersey City, New Jersey 07307

Michael L. Spiegel, Esq.
48 Wall Street, Suite 1100
New York, New York 10005

RICKNER PLLC
14 Wall Street, Suite 1603
New York, New York 10005

HAMILTON CLARKE, LLP
48 Wall Street, Suite 1100
New York, NY 10005

*Attorneys for the Sierra Plaintiffs*

KAUFMAN LIEB LEBOWITZ & FRICK LLP
18 E. 48th Street, Suite 802
New York, New York 10017

*Attorneys for Charles Henry Wood*

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF RELEVANT FACTS ......................................................................... 2

   I.   The Mott Haven Protest ...................................................................................... 2

   II.   The Arrests ......................................................................................................... 6

   III.  The NYPD's Preparation for the Operation ....................................................... 9

PROCEDURAL HISTORY ............................................................................................ 11

ARGUMENT .................................................................................................................. 14

   I.   JOINING THE SIERRA AND WOOD PLAINTIFFS IN A SINGLE, CONSOLIDATED ACTION IS CONSISTENT WITH THE FEDERAL RULES OF CIVIL PROCEDURE, AND WILL PROMOTE EFFICIENT LITIGATION ...................................................... 16

   II.   PLAINTIFFS SHOULD BE PERMITTED TO JOIN THE PROPOSED DEFENDANTS WHO WERE PERSONALLY INVOLVED IN PLANNING, COMMANDING, AND EXECUTING THE MOTT HAVEN OPERATION, AND DISMISS THOSE DEFENDANTS WHO WERE NOT PERSONALLY INVOLVED ............................... 17

     A.  The Proposed New Defendants Were Personally Involved in the Incidents Alleged.... 17

     B.  Defendants Without Personal Involvement Should Be Dismissed. ............................... 18

     C.  The Allegations Against the Proposed Defendants State a Claim for Relief. ................ 19

     D.  There Is No Other Reason to Deny Amendment. ......................................................... 20

CONCLUSION ............................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699 (2d Cir. 2010) ........... 15

*Ambac Assur. Corp. v. EMC Mortg. Corp.*, 08-CV-9464 (RMB) (THK),
   2011 WL 566776 (S.D.N.Y. Feb. 8, 2011) ................................................................................. 23

*CAC Atl., LLC v. Hartford Fire Ins. Co.*, 16-CV-5454, 2017 WL 3149340
   (S.D.N.Y. July 25, 2017) ........................................................................................................... 24

*Duino v. CEM W. Vill., Inc.*, 18-CV-10249 (CM), 2020 WL 3249214
   (S.D.N.Y. June 16, 2020) ........................................................................................................... 23

*Foman v. Davis*, 371 U.S. 178 (1962) ......................................................................................... 15, 19

*G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*,
   14-CV-418 (CKK), 2018 WL 4680199 (D.D.C. Sept. 28, 2018) .............................................. 24

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) .......................................... 23

*McNally v. Yarnall*, 764 F. Supp. 853 (S.D.N.Y. 1991) .............................................................. 20

*Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002) ............................................................ 20

*Romano v. Verizon Commc'ns, Inc.*, 01-CV-6737 (LMM), 2002 WL 1484403
   (S.D.N.Y. July 10, 2002) ....................................................................................................... 15, 19

*U1it4less, Inc. v. Fedex Corp.*, 11-CV-1713, 2014 WL 12779775
   (S.D.N.Y. Dec. 15, 2014) ........................................................................................................... 24

**Rules & Statutes**

42 U.S.C. § 1983 ........................................................................................................................... 19

Fed. R. Civ. P. 12 ..................................................................................................................... 18, 19

Fed. R. Civ. P. 15 ........................................................................................................... 14, 15, 17, 24

Fed. R. Civ. P. 16 ........................................................................................................................... 24

Fed. R. Civ. P. 20 ..................................................................................................................... 15, 16, 17

Fed. R. Civ. P. 42 ........................................................................................................................... 15

## PRELIMINARY STATEMENT

The *Sierra* and *Wood* plaintiffs seek leave to file a consolidated amended complaint that joins the plaintiffs together in one merged action. The existing claims in both cases are substantially similar and consolidating the cases will facilitate motion practice and trial. The newly-consolidated case will have a unitary class definition, which will reduce the number of class certification motions across the consolidated protest actions; and the consolidated case will seek only money-damages. Finally, certain defendants will be dropped, and others added, based on evidence obtained in discovery. That evidence revealed certain existing defendants were only "assigned" the plaintiffs' arrests, while a group of high-ranking and supervisory NYPD officials personally planned and executed the NYPD's unconstitutional and violent response to the Mott Haven protest, which is the subject of these two lawsuits.

The proposed Consolidated and Amended Complaint ("Proposed Complaint") is attached as Exhibit 1 to the accompanying Declaration of Rob Rickner. All exhibits referenced in this memorandum are attached to the same declaration. The Causes of Action alleged in the Proposed Complaint are identical to those in the currently operative *Sierra* First Amended Complaint. Dkt. 98. The Proposed Complaint does not request declaratory relief as requested in the *Sierra* First Amended Complaint. *See* No. 20 Civ. 10291 Dkt. 139 (So Ordered Stipulation to Dismiss *Sierra* Plaintiffs' Request for Declaratory or Injunctive Relief). The amendments in the Proposed Complaint will require no additional discovery beyond what is already contemplated by the parties.

The City would not stipulate to the addition of new defendants, but it did not express any objection to the other proposed amendments when presented with a substantially similar proposed amended complaint. The City objected to the timing of adding these new defendants, but those objections are meritless – and they ignore the fact that depositions of high-ranking NYPD officials

1

have barely begun, and the City's singular responsibility for delaying the production of discovery that revealed the personal involvement of these proposed defendants.

The proposed amendments are supported by justice and good cause. Merging these cases will facilitate the efficient progress of this litigation without causing any additional burden or any prejudice to defendants. Accordingly, the Court should grant this motion.

## STATEMENT OF RELEVANT FACTS

The *Sierra* and *Wood* cases are putative class actions stemming from the NYPD's response to a protest on June 4, 2020, in the Mott Haven neighborhood of the Bronx. The NYPD's Mott Haven operation was unique among the incidents at issue in the *In Re: New York City Policing During Summer 2020 Demonstrations* cases. Unlike other protest incidents, the Mott Haven operation was both planned in advance and personally directed on the ground by the very highest levels of the NYPD – including Chief of Department Terence Monahan, the highest-ranking uniformed officer in the NYPD. The Mott Haven operation was also unique because of the large number of officers (over 700) and other police resources deployed in advance. It resulted in the mass arrest of approximately 300 people, the largest mass arrest of 2020's racial justice protests. The NYPD seized the Mott Haven protesters *en masse* <u>before</u> the 8:00 p.m. curfew took effect, held the protesters until after 8:00 p.m., and then assaulted and arrested them, and charged them with violating the curfew.

### I.      The Mott Haven Protest

The Mott Haven event was a traditional protest called by several community-based organizations in the Bronx and advertised in advance. It began in the early evening with an orderly gathering at The Hub, a major intersection in the South Bronx. The rally was followed by a peaceful march through the Mott Haven neighborhood, passing through public housing

2

developments and stopping to express support for a local business on Willis Avenue. Police estimates of the size of the crowd ranged from approximately 150 at The Hub, to 400 people in the march. The crowd size estimates and the route of the march are taken from contemporaneous police radio transmissions, Exhibit 2.

Exhibit 3 are maps of the area of the rally, march, and arrests. The arrows show the route of the march; a red oval and a red "X" show two lines of NYPD bike officers, as described below.

During the rally and march there was no violence; no property was damaged; no police officer was attacked or assaulted; no one was arrested. Proposed Compl. ¶¶ 1-2, 9, 56-60, 72, 185. For approximately forty-five minutes, the police permitted the march to proceed in the roadway, taking whatever route they wished; police did not order the marchers to disperse, nor issued any other instructions to them. *Id.* ¶¶ 9, 66. At one point, while marchers were on Willis Avenue, a police dispatcher asked, "is the group peaceful? disorderly?"; and the response was, "They're not disorderly yet." Exhibit 2 at 16:15; Exhibit 4, Excerpt of DOI interview transcript of defendant Lehr, pages 45-46.

Although the march was peaceful and the curfew hadn't started yet, and even though the police had given no direction to protesters to disperse or cease the march, NYPD Chiefs in command of the operation twice directed officers to seize the protesters before the 8:00 p.m. curfew. Proposed Compl. ¶¶ 59-68. The first attempt was unsuccessful because the protesters turned away from a confrontation with the police; the second resulted in the mass arrest. *Id*.

Initially, NYPD Chiefs directed SRG bike units to form a line blocking the ramp off of the Willis Avenue Bridge at East 135th Street (shown in red oval on map below). *Id.*; *see also* Exhibit 5, Email from A.C.C. Braun; Exhibit 2 at 24:00. Other SRG foot-officer units were directed to fall

in behind the marchers to encircle them on Willis Avenue as they proceeded beyond 136th Street toward the bike line at 135th Street. Proposed Compl. ¶ 59.



It was 7:50 p.m. when the following radio transmissions were broadcast:

> Captain Taylor, have your guys come up with me, I'm at 137 and Willis heading south, so we can block 'em in.
>
> Ten four.
>
> Gotta be advised, there are, they're approaching us at 135 right now, we're setting up a line.
>
> Alright, Chief, we're gonna set up a line behind 'em.
>
> Ten four.
>
> Captain Taylor, get your guys to the rear of the march here with me.
>
> Ten four, (…) coming now (…) be there in a second.

4

Exhibit 2, at 30:35.[1]

As marchers ascended the incline on Willis Avenue between 137th and 136th Streets, the line of officers blocking the ramp off of the Willis Avenue Bridge at 135th Street came into view. So, avoiding any confrontation with those officers, the marchers turned east onto 136th Street (red arrow in map above, Exhibit 3), the only other available route. Proposed Compl. ¶ 59. With the police blocking Willis Avenue at East 135th Street, and East 136th Street open and unobstructed, marchers reasonably believed that the police wanted the march to proceed down 136th Street. There were no officers at the intersection of Willis Avenue and East 136th Street telling marchers they *shouldn't* go down 136th Street or that they needed to disperse. *Id*. at ¶¶ 59, 63-66. With no indication that the police had withdrawn permission for the march to proceed as it wished, protesters turned onto East 136th Street. *Id*.

After the march proceeded several hundred yards down East 136th Street, a squad of bike officers rode down the north sidewalk of 136th, passing to the front of the march, and set up a barricade of officers and bicycles at Brook Avenue (shown by the red X in the map above, Exhibit 3). Proposed Compl. ¶¶ 61-63. The highest-ranking uniformed officer in the NYPD, Chief of Department Terence Monahan; the Commanding Officer of the 40th Precinct, Inspector Robert Gallitelli; and the Commanding Officer of SRG 2, Captain Julio Delgado, along with approximately fifty SRG foot officers and dozens of additional patrol officers and supervisors went to East 136th Street and Brook Avenue. *Id*. ¶¶ 63, 70. Based on a bike officer's body-worn camera

---

[1] The time of day is established as follows: At timestamp 36:20 on the recording of the radio transmissions, a "time check" is requested and the dispatcher responds that it is "1956," or 7:56 p.m. The quoted transmission above, requesting Capt. Taylor to respond so that the police can "block 'em in," occurs six minutes earlier, at timestamp 30:35 of the recording. Therefore, the quoted transmission took place at 7:50 p.m.

("BWC") video, the marchers were stopped by the bike officers at 7:56 p.m. *See* Exhibit 6 at 00:01.[2]

## II.     The Arrests

East 136th Street between Brown Place and Brook Avenue – where the protesters were surrounded or "kettled" by police – is a hill that slopes down to Brook Avenue. It is a narrow street, with about twenty feet between the parked cars. There is no way to leave in the middle of the block; the only way in or out is from Brown Place or Brook Avenue.

As protesters crossed Brown Place and reached Brook Avenue, they were stopped at the bottom of the hill by the bike officers at the intersection with Brook Avenue. Proposed Compl. ¶¶ 61-64.   Following behind the marchers were approximately 60 SRG foot officers and fifteen white-shirted NYPD Executives – including the Commanding Officer of Patrol Borough Bronx, the Chief of the Special Operations Bureau, the Chief in command of SRG, and other defendants. *Id*. ¶ 63. The officers had encircled the march and kettled the protesters on East 136th Street, as shown in the below screenshot, which is a still from a citizen video looking west on East 136th Street toward Brown Place (further up the hill), taken from an upper floor of a building on the east side of Brook Avenue, at the bottom, Exhibit 7:

---

[2] The time appearing in the upper right corner of BWC video is set to Greenwich Mean Time, which is four hours ahead of Eastern Daylight Time. Thus, 23:56 on the BWC video corresponds to 19:56, or 7:56 p.m. in New York City in June.



The people kettled on East 136th Street were not permitted to leave. It was not yet 8:00 p.m. and the curfew was not yet in effect. Proposed Compl. ¶¶ 64-65.

After 8:00 p.m., an announcement was played several times over an NYPD Long-Range Acoustical Device ("LRAD"). It said, in its entirety: "Beginning at 8:00 p.m. a citywide curfew will be in effect. Other than essential workers, no person or occupied vehicles are permitted in public or on city streets. Thank you for your cooperation." Exhibit 8. There was no other communication from the police before white-shirted NYPD Executives and SRG officers advanced down the hill from Brown Place. Neither the recorded announcement nor any police official told the people trapped in the kettle to disperse or go home. Even as police advanced, they did not tell people that they were about to be arrested, or that they should put their hands behind their backs to be cuffed. Exhibits 6-10.

The NYPD Chiefs, other Executive officers, and dozens of helmeted SRG officers who advanced down the hill from Brown Place were equipped with pepper spray cannisters the size of fire extinguishers, a "PepperBall gun," and plexiglass shields, among other equipment. These heavily armed officers descended on the peaceful protesters, pressing them toward the lines of bike officers at the bottom of the hill at Brook Avenue. Proposed Compl. ¶¶ 69-71. Protesters were indiscriminately pepper sprayed. *Id*. ¶¶ 54, 71, 96, 176. These events are captured on police and citizen videos and BWCs. Exhibits 6-10.

At the bottom of the hill, bike officers repeatedly shouted "move back" as they thrust their raised bikes forward again and again into the people facing them. The crowd was crushed together as people uphill recoiled from the onslaught of officers descending from above, while bike officers several rows deep pushed people at the bottom of the hill with the line of bikes. But there was nowhere for the trapped people to move because of the crush of people and police on all sides. Exhibit 6 at 1:55; Exhibit 9 at 1:35. Officers kneeling on top of a parked car struck protesters with batons and others indiscriminately pepper sprayed the crowd. Exhibit 10. After the assault and arrests were finished, officers had detained approximately 300 people in flex-cuffs. Many of the protesters were seriously injured. Proposed Compl. ¶¶ 77-78.



*Screenshot from Exhibit 10 (P.O. Migliaccio pepper spraying from behind a car)*

Officers who were not involved in the assault were brought in to process "assigned arrests." Each officer was assigned two to five arrestees for processing, which took place at Mass Arrest Processing Centers ("MAPC's") in Queens and Brooklyn, and at regular precincts in the Bronx. *Id*. ¶¶ 50, 80.

At first, arrestees were given summonses, but eventually an instruction was given to cease issuing summonses and to process the remaining arrestees as Desk Appearance Tickets, thus prolonging their detention. Proposed Compl. ¶ 88. Many people were not released until late the next afternoon. *Id*. ¶ 85.

### III.    The NYPD's Preparation for the Operation

The NYPD's Mott Haven operation was meticulously organized. The next day, Police Commissioner Dermot Shea discussed the operation at a press conference and said: "We had a plan which was executed nearly flawlessly in the Bronx." *Id*. ¶¶ 50, 170.

The plan included a vast array of police resources. Over 700 officers were mobilized in advance; Corrections Department buses and more than twenty NYPD arrest vans were assigned in advance; Mobile Field Forces, consisting of squads of upwards of forty officers each, were arrayed around the protest before it began; and dozens of officers were pulled from precincts all over the City and sent to the Bronx for the sole purpose of being assigned arrestees for arrest processing. Exhibits 11 and 12; Proposed Compl. ¶ 50.

This battalion of officers was directed by no less than **ten** Chiefs who were present and directly involved in effecting the arrests, including the highest ranking uniformed officer in the Police Department, Chief of Department Terence Monahan.[3] ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ Inspector Robert Gallitelli, Commanding Officer of the 40th Precinct, which includes Mott Haven, was also a key participant in the planning and execution of the police operation.

---

[3] The Chiefs were Terence Monahan, Chief of Department; Kenneth Lehr, Commanding Officer of Patrol Borough Bronx; Harry Wedin, Chief of the Special Operations Bureau; Robert Lukach, Executive Officer of the Special Operations Bureau; John D'Adamo, Chief of the Strategic Response Group; Raymond Spinella, Chief of the Special Services Bureau; Edward Delatorre, Chief of the Transit Bureau; Joseph Gulotta, Executive Officer of Patrol Borough Brooklyn North; Timothy McCormack, Chief of Bronx Detectives; and Raul Pintos, of Bronx Borough Command.

Lehr and Gallitelli, who were Executives in the NYPD Patrol Services Bureau, not only worked with Monahan; they planned and executed the police operation with the highest Executives of the Special Operations Bureau, which contains SRG.   The SRG units, including both bicycle-mounted and foot officers, were assigned to make the initial seizure of protesters and to place them in cuffs.   They were supervised at the scene by the entire command structure of the Special Operations Bureau – including Bureau Chief Harry Wedin; Chief of SRG John D'Adamo; and Executive Officer of SRG Gerard Dowling (all named as defendants in the Proposed Complaint). Patrol officers had been pulled from their regular precinct duties and pre-assigned to process the arrests, or formed into Mobile Field Forces to supplement the SRG officers. Other support units were assigned to have the arrest vans and buses at the ready. Proposed Compl. ¶ 50.

Every police witness who has been asked at a deposition about the number of Chiefs and Executives they saw in Mott Haven has testified that they saw more Chiefs and other high-level NYPD Executives at the Mott Haven operation than at any other protest they policed that summer.

## PROCEDURAL HISTORY

The original Class Action Complaint in *Sierra* et al. *v. City of New York* et al., No. 20-cv-10291, was filed on December 7, 2020; and a First Amended Class Action Complaint was filed on March 25, 2021. Dkt. 98. The original Complaint in *Wood v. City of New York* et al., No. 20-cv-10541, was filed on December 14, 2020; a First Amended Class Action Complaint was filed on March 25, 2021, Dkt. 100; and a Second Amended Class Action Complaint on August 26, 2021, Dkt. 249. (The putative class in the First and Second Amended Complaints in *Wood* also encompassed persons arrested and/or injured at protests other than Mott Haven. The class definition in the Proposed Complaint is limited to Mott Haven arrestees only, consistent with the proposed class definition in the initial Complaint and First Amended Complaint filed in *Sierra*.

The interests of non-plaintiff protesters who were arrested and/or injured at protests other than Mott Haven continue to be represented by counsel in other actions consolidated for discovery within *In re: New York City Policing During Summer 2020 Demonstrations*.)

The *Sierra* case was reassigned to this Court on February 4, 2021. Dkt. 30 in No. 20-cv-10291. On February 22, 2021, the *Sierra* and *Wood* cases, along with several others, were consolidated for discovery under *In re: New York City Policing During Summer 2020 Demonstrations*, 20-cv-8924 (CM) (GWG). All subsequent filings were made on the consolidated docket, and all docket entries referenced in this memorandum going forward are to the docket in No. 20-cv-8924.

Discovery, as the Court is aware, has been substantially delayed by the City and by the intervention by police unions.   Only one deposition noticed by plaintiffs has taken place since March 2022, due to the stay of depositions during the litigation concerning intervention and City delay in scheduling depositions. Spiegel Decl. at ¶ 9. There have been dozens of motions concerning the City's failure to provide timely and complete discovery. In deciding plaintiffs' motions, the Court has sanctioned the City multiple times for its repeated failures to comply with the Court's discovery orders.

In addition to causing extensive delay, the City's discovery responses have obfuscated the specific and important information plaintiffs have sought. For instance, in response to plaintiffs' interrogatories seeking the identities of the supervisors present during the Mott Haven operation, the City gave piecemeal and incomplete responses, or no response at all. *See* Exhibit 14, at Interrogatory Responses 7 to 11. When the City *has* produced documents, it has dumped hundreds of thousands of pages without identifying by Bates number the documents plaintiffs specifically requested. When *Sierra* plaintiffs' counsel wrote in February 2022, requesting that the City

12

identify specific Mott Haven-related documents by Bates number, the City never responded. Exhibit 15; Spiegel Decl. at ¶¶ 4-7.

The City's persistent recalcitrance in identifying specific discovery, and the stay of depositions, required plaintiffs' counsel to expend hundreds of hours combing through the City's document dumps to identify the NYPD executives who were responsible for planning and executing the Mott Haven operation. Many hours were needed to listen to CCRB and DOI interview recordings and NYPD radio transmissions and to watch BWC and TARU video footage. All of this was needed to understand what happened during the Mott Haven operation and to determine the individuals who were responsible for it. Spiegel Decl. at ¶¶ 3, 8, 9.

As recently as April 14, 2022, *Sierra* and *Wood* counsel had to file a motion for discovery to obtain the identities of the bicycle-mounted officers who made the initial seizure of the crowd at East 136th Street and Brook Avenue and production of their BWC video footage. After the City steadfastly resisted the production of this obviously-discoverable material and forced plaintiffs to make a motion before Magistrate Judge Gorenstein, the City later conceded the merits of the application and stated that it would gather those materials – which should have been produced at the outset of discovery over a year ago.   As of the date of this motion, defendants have still not identified the bike officers who made the initial seizure of the plaintiffs, nor produced all of the BWC video. *See* Dkts. 491, 518, 642, 664.

On March 16, 2022, *Sierra* counsel sent the City a proposed Second Amended Complaint and proposed that the parties discuss a stipulation to file the pleading. That proposed pleading tracked the Proposed Complaint herein insofar as it voluntarily dismissed the police officers who had been assigned the arrests of the *Sierra* plaintiffs, and joined as defendants executive officers in command of the Mott Haven operation.

13

On April 7, 2022, counsel for defendants responded:

> We don't think a meet and confer is necessary. Here's our position:
>
> 1. There were no John Does in the original complaint or in the first amended complaint for you to replace them with individually named defendants.
>
> 2. Per Judge McMahon's Order, the deadline to amend the pleadings was *over a year ago* on March 5, 2021, so this proposed amended complaint is not timely. (Dkt No. 34).
>
> 3. Plaintiffs had the names of the individual defendants for a long time so there's no good cause for such delay.
>
> 4. The statute of limitations have [*sic*] run on the state law claims and therefore such claims are time-barred as to any newly added defendants.
>
> Based on all the above, defendants object to your proposed Second Amended Complaint.

Exhibit 16.

None of these objections has merit. The absence of "John Doe" defendants in the original complaint is irrelevant; due to the City's discovery delays, plaintiffs did not know until recently the identity and role of the executive and supervisory officers they now seek to add; and the federal constitutional claims against all of the proposed defendants are timely because less than three years have passed since the June 4, 2020, Mott Haven protest. Accordingly, because defendants would not stipulate, plaintiffs now seek leave to file their Proposed Complaint.

## ARGUMENT

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Following this rule, courts have held that amendments should be permitted when the party seeking leave to amend: "(1) has not unduly delayed; (2) is not acting in bad faith or with a dilatory motive; (3) when the opposing party will not be unduly prejudiced by the amendment; and

(4) when the amendment is not futile." *Romano v. Verizon Commc'ns, Inc.*, 01-CV-6737 (LMM), 2002 WL 1484403, at *1 (S.D.N.Y. July 10, 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[T]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010).

The five categories of changes contained in the Proposed Complaint meet these standards for granting leave. The Proposed Complaint (i) joins the *Sierra* and *Wood* plaintiffs in one action and consolidates the cases for all purposes, including motion practice and trial; (ii) adds as defendants executive and supervising officers who were personally involved in the Mott Haven operation, and identifies Chief Kenneth Lehr (who is already a named defendant in *Sierra*) and Captain Julio Delgado (who is already a named defendant in *Wood*) as defendants in the newly-consolidated case; (iii) removes Dermot Shea from the caption to conform with the Court's Memorandum Decision and Order of July 9, 2021 (Dkt. 191); and (v) dismisses defendants Umid Karimov, Alfredo Jeff, Debora Matias, and Andre Jeanpierre from the *Sierra* case, and defendant Ismael Hernandez Carpio from the *Wood* case – these being the officers who were "assigned" the arrests of the named plaintiffs.

The foregoing amendments fall squarely within the settled principles of Rule 15 (amending pleadings), Rule 20 (joinder of parties), and Rule 42 (consolidation of actions). These amendments will streamline the litigation by reducing the number of separate lawsuits; will avoid duplicative and potentially conflicting motion practice; and will facilitate a single jury trial for the cases seeking only monetary relief. The proposed amendments will cause no prejudice to the parties, and instead, will promote justice by naming the proper defendants and dismissing other defendants

who were not personally involved in plaintiffs' arrests. Accordingly, good cause exists for granting the *Sierra* and *Wood* plaintiffs leave to file the Proposed Complaint.

I.   **JOINING THE SIERRA AND WOOD PLAINTIFFS IN A SINGLE, CONSOLIDATED ACTION IS CONSISTENT WITH THE FEDERAL RULES OF CIVIL PROCEDURE, AND WILL PROMOTE EFFICIENT LITIGATION**

Federal Rule of Civil Procedure 20(a) permits plaintiffs to "join in one action . . . if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Relatedly, Rule 42(a) permits the Court to "consolidate" actions that "involve a common question of law or fact."

Joining the *Sierra* and *Wood* plaintiffs and consolidating their actions into a single, merged action is appropriate and will promote efficient litigation. These cases are already consolidated for discovery purposes, and no new legal claims have been added to the Proposed Complaint. Joining the *Sierra* and *Wood* plaintiffs and consolidating their actions for all purposes will reduce the number of summary judgment motions, class certification motions, *in limine* motions and other pre-trial and post-trial motions – and the need to have two separate jury trials. Additionally, merging these cases will reduce the number of class certification motions that the Court will need to address, combining what would otherwise be competing proposed classes. Finally, joinder and consolidation will not prejudice any of the other parties. Accordingly, the Court should grant plaintiffs' motion to join the *Sierra* and *Wood* plaintiffs into the same consolidated action.

## II. PLAINTIFFS SHOULD BE PERMITTED TO JOIN THE PROPOSED DEFENDANTS WHO WERE PERSONALLY INVOLVED IN PLANNING, COMMANDING, AND EXECUTING THE MOTT HAVEN OPERATION, AND DISMISS THOSE DEFENDANTS WHO WERE NOT PERSONALLY INVOLVED

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Rule 20(b) provides that defendants "may be joined in one action . . . if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Both rules are satisfied by allowing plaintiffs to join as defendants those NYPD officers who were personally involved in the underlying claims and dismissing those defendants who were not personally involved.

### A. The Proposed New Defendants Were Personally Involved in the Incidents Alleged.

Discovery has revealed that the proposed newly-joined defendants, identified here in bold, were personally involved in the underlying claims in this case: along with Chief of Department Terrence Monahan and Assistant Chief Kenneth Lehr, **Inspector Robert Gallitelli**, the Commanding Officer of the 40th Precinct; **Bureau Chief Harry Wedin**, the Commanding Officer of the NYPD Special Operations Bureau; **Deputy Chief John D'Adamo**, the Commanding Officer of the Strategic Response Group; **Deputy Chief Gerard Dowling**, the Executive Officer of the Strategic Response Group.

These proposed defendants planned and personally directed and supervised over 700 police officers engaged in carrying out the NYPD's operation in Mott Haven. They personally participated in planning meetings at the 40th Precinct and other locations in Mott Haven on June 4, 2020 prior to and during the NYPD's Mott Haven operation; and they were directly and personally

17

involved in seizing, assaulting, and arresting plaintiffs and other people on East 136th Street between Brook Avenue and Brown Place. Proposed Compl. ¶¶ 28-54; 61-64; 70-80.

      **Sergeant Kenneth Rice**, an attorney assigned to the NYPD Legal Bureau, advised Lehr, Wedin, D'Adamo, and Dowling, among others, that there was probable cause to arrest the people encircled on East 136th Street; **Rice** also personally participated in assaulting and arresting them. *Id.* ¶¶ 28-53, 64-66, 69-73, 80. **Police Officer John Migliaccio** indiscriminately sprayed the group of trapped people with pepper spray, and pepper sprayed Plaintiff Ricardo Nigaglioni in the face, blinding him. *Id.* ¶¶ 54, 70-71, 113, 126.

      **Assistant Chief Kenneth C. Lehr** is already a named defendant in the *Sierra* First Amended Complaint, Dkt. 98 (which survived defendants' Rule 12(b)(6) motion); and **Captain Julio Delgado** was added as a defendant in the *Wood* Second Amended Complaint on consent of defendants, Dkt. 249. Plaintiffs seek to maintain each as a defendant in the consolidated Proposed Complaint.[4]

### B. Defendants Without Personal Involvement Should Be Dismissed.

      In contrast to the proposed new defendants, existing defendants Umid Karimov, Alfredo Jeff, Debora Matias, and Andre Jeanpierre from the *Sierra* case, and Ismael Hernandez Carpio from the *Wood* case, were not personally involved in violating plaintiffs' constitutional rights. Depositions of those officers revealed that they were all merely "assigned" the arrests of the plaintiffs – meaning these officers did not personally detain or apprehend the plaintiffs, but merely

---

[4] Both *Sierra* and *Wood* named the City of New York, Bill de Blasio, and Terence Monahan as defendants, and all three remain as defendants in the Proposed Complaint. In addition, defendants Thomas Garguilo and Thomas Mosher, who used force against plaintiff Wood, were named in the *Wood* complaint, and remain named as defendants in the Proposed Complaint.

processed the paperwork related to each plaintiff's arrest. Since discovery has revealed that these officers were not culpable for the plaintiffs' arrests, they should be dismissed from this litigation.

### C.  The Allegations Against the Proposed Defendants State a Claim for Relief.

The allegations concerning the proposed defendants state claims for relief under 42 U.S.C. § 1983. The Court's decision on the City's Rule 12(b)(6) motion – in particular, its discussion of the claims against Chief of Department Monahan and Mayor de Blasio – is instructive:

> Plaintiffs have pleaded facts tending to show Chief Monahan's personal involvement in police activity at two of the protest events. They allege that he was present at and personally led the NYPD's response to the June 4 protest in Mott Haven, where he personally directed officers to kettle, subdue and arrest protesters. They also allege that Chief Monahan personally approved the mass use of pepper spray against protesters at the Barclays Center on May 29, 2020. Those allegations raise an inference of his personal involvement in alleged violations of Plaintiffs' rights.
> . . . .
> The Attorney General and the *Payne*, *Wood*, and *Sierra* plaintiffs have also stated a claim against Mayor de Blasio, insofar as they allege that he was personally involved in the development of the tactics employed by the NYPD that they allege to be unconstitutional. He allegedly admitted to having seen videos of the clashes between police and protesters and had personnel present at several of the protests. They further allege that he personally approved the strategies employed by the NYPD beginning during the June 3 and June 4 protests . . . . This gets the plaintiffs past a motion to dismiss. Whether this claim against the Mayor survives a motion for summary judgment after discovery remains to be seen.

Dkt. 191 at 32 (citations omitted).

This same analysis applies to the allegations concerning the proposed defendants.  Since the allegations in the Proposed Complaint state claims against the proposed defendants, the amendments should be permitted. *See Foman*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Romano*, 2002 WL 1484403, at *1 ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject

to a motion to dismiss on some other basis." (citing *McNally v. Yarnall*, 764 F. Supp. 853, 855 (S.D.N.Y. 1991)).

**D.  There Is No Other Reason to Deny Amendment.**

Defendants will not be prejudiced by the proposed amendments, and their refusal to stipulate to those amendments (Exhibit 16) is as mystifying as it is meritless.

First, it is unclear why defendants' counsel would not stipulate to dismissing existing *Sierra* defendants Karimov, Jeff, Matias, and Jeanpierre. There is no good reason for keeping them as defendants when discovery has revealed their lack of personal responsibility for the underlying constitutional violations at issue.

As for the proposed defendants, contrary to the City's suggestion, there is no statute of limitations problem. The events at issue occurred two years ago and the statute of limitations for the federal claims that plaintiffs intend to bring against the proposed defendants in the Proposed Complaint is three years. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). The Proposed Complaint makes clear that plaintiffs are not seeking to assert state law claims against the proposed additional defendants individually.

Nor is there merit to the City's contention that the current motion is untimely because the Court's original scheduling order set March 5, 2021 as the deadline for amendments, *see* Dkt. 34. The Court's March 5, 2021 deadline to amend the pleadings was imposed with the understanding that discovery would be well underway by then. In reality, defendants had not produced a single page of discovery by that date. Indeed, by the end of May 2021, it had produced only 1,000 documents. Not a single NYPD email was produced until December 10, 2021. Nearly a quarter of defendants' entire document production to date was produced in 2022.

Only a handful of depositions have taken place thus far.  Counsel for the *Sierra/Wood* plaintiffs thus far have had the opportunity to depose only one high-ranking police witness involved in the Mott Haven operation, and that witness arrived after the initial seizure had taken place. In the absence of depositions, the process of determining the details of the Mott Haven operation and the identities of the NYPD leadership who planned and executed the operation has been long and difficult. While the names of several of these individuals were produced earlier, they were "produced" in document dumps where their names appear on individual documents. Spiegel Decl. at ¶¶ 2-9; Frick Decl. at ¶¶ 2-13. The link between the newly-named defendants and their involvement with the Mott Haven operation is the result of plaintiffs' own investigations. In an operation involving over 700 officers, ten NYPD Chiefs, and dozens of Inspectors and Captains, determining the key decision-makers in command – without sworn testimony -- has been a challenge. Spiegel Decl. at ¶¶ 2-9; Frick Decl. at ¶¶ 4-13.

Accordingly, the City's argument that Plaintiffs acted with any "delay" in seeking leave to add these individuals as defendants is wrong. As this Court is well aware, the City has engaged in vexatious discovery tactics throughout this litigation and has been sanctioned repeatedly for it. Indeed, the City's lead attorney was terminated from the New York City Law Department for making misrepresentations about the City's compliance with the Court's discovery orders. *See* Dkt. 523. Plaintiffs have acted with all available diligence to pursue and ultimately obtain the discovery needed, and to review that discovery, to connect the individuals now sought to be named with their conduct during the Mott Haven operation.

For example, on October 8, 2021, the *Sierra* plaintiffs served their Third Set of Supplemental Discovery Requests requesting, among other things, the identities of the supervisory chain of command of the NYPD bike squads that made the initial seizure of the plaintiffs; the chain

of command of the police units that were pre-assigned to arrest vans and Corrections buses; the chain of command of the SRG units that participated in the arrest and handcuffing of the protesters on East 136th Street; and the chain of command of the police units that were pre-assigned to take assigned arrests for processing. Exhibit 14, Defendants' Responses and Objections to Plaintiffs' Third Set of Supplemental Discovery Requests, at Interrogatories 7 to 11); Spiegel Decl. at ¶ 5.

The only substantive response defendants provided to the interrogatories seeking this information referred plaintiffs to a production that contained more than 12,000 documents (which brought the total produced by the City at that point to nearly 119,000). Exhibit 14 at p. 5. There was no obvious organization to the documents produced and no Bates number index was provided. This has also been true of all subsequent document productions by the City, which now total well over fifty formal productions and more than 213,900 documents. Spiegel Decl. at ¶ 6.

On February 23, 2022, Mr. Spiegel, one of the *Sierra* plaintiffs' counsel, wrote the City defendants a discovery deficiency letter, Exhibit 15; the letter was prepared in anticipation of production by the City of a chart showing the status of all of defendants' responses to all discovery requests by all plaintiffs in the Consolidated Cases. The City's chart had been ordered by Magistrate Judge Gorenstein (Dkt. 410). In the letter, the *Sierra* plaintiffs provided the City a detailed list of insufficient responses to discovery requests, and demanded that the responses identify Bates numbers for the documents being produced. The City did not respond to the letter, and did not provide Bates numbers in the chart they produced. Spiegel Decl. at ¶ 7.

Identifying the NYPD leadership who planned and executed the Mott Haven operation required plaintiffs' counsel to expend hundreds of hours reviewing video from police BWC; videos created by the NYPD's Technical Assistance and Response Unit ("TARU"); citizen video collected by the Civilian Complaint Review Board ("CCRB"); police radio transmissions; and

hundreds of thousands of documents produced by the City, plus thousands more collected by the CCRB. Spiegel Decl. at ¶¶ 3, 8.

Thus, there is no merit whatsoever to the City's argument that "Plaintiffs had the names of the individual defendants for a long time so there's no good cause for such delay." Exhibit 16. While some of the names of these individuals were produced earlier, some names have never been produced, and the involvement of these proposed defendants in the underlying constitutional violations was shrouded by the City's discovery tactics and the absence of depositions.

Thus, there is good cause to allow these amendments now, because depositions have not taken place yet, and the City obfuscated and prevented plaintiffs from learning the identities and involvement of the proposed defendants in the underlying constitutional violations. *See Duino v. CEM W. Vill., Inc.*, 18-CV-10249 (CM), 2020 WL 3249214, at *3 (S.D.N.Y. June 16, 2020) ("[B]ecause Plaintiff was not in possession of the full facts when he first filed the suit, and it was after discovery that Plaintiff learned that [the proposed defendant] might be as liable as [the existing defendant], Plaintiff did not delay unreasonably in joining [the new party] as a defendant" (quotation marks and alterations omitted) (quoting *Ambac Assur. Corp. v. EMC Mortg. Corp.*, 08-CV-9464 (RMB) (THK), 2011 WL 566776, at *3 (S.D.N.Y. Feb. 8, 2011)).

But *even if* plaintiffs could have discovered the roles of these defendants a few months earlier, defendants are not prejudiced by the amendment, which should end the discussion. In determining whether to allow an amendment, courts consider "relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Thus, courts routinely permit even delayed amendments, so long as the other side faces no prejudice. *E.g.*, *CAC Atl., LLC v. Hartford Fire Ins. Co.*, 16-CV-5454, 2017 WL 3149340, at *4

(S.D.N.Y. July 25, 2017) (permitting amendment even where moving party "did not demonstrate the diligence ordinarily required by Rule 16(b)" since other party faced "no significant prejudice").

Here, defendants face no prejudice whatsoever. All proposed defendants have already been noticed for depositions; many of them were included in the high-level list of deponents the parties had scheduled before depositions were stayed in March. Allowing the amendment places no further discovery burden on defendants.

The Proposed Complaint is a good faith effort by the plaintiffs to focus their claims on the NYPD officials who orchestrated and commanded the NYPD's Mott Haven operation. The three "line officers" who are included as defendants are officers who assaulted and injured named plaintiffs. The Proposed Complaint reflects a considered effort to focus and amend the complaint to conform to the evidence revealed in discovery, which is precisely what Rule 15 contemplates. *See G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 14-CV-418 (CKK), 2018 WL 4680199, at *2 (D.D.C. Sept. 28, 2018) ("One basis for seeking amendment may be to conform the operative complaint to the evidence produced during discovery.") (citing Fed. R. Civ. P. 15(b)(2) ("A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.")); *U1it4less, Inc. v. Fedex Corp.*, 11-CV-1713, 2014 WL 12779775, at *10 (S.D.N.Y. Dec. 15, 2014) ("Plaintiff is entitled to make its proposed housekeeping amendments to conform its complaint to what it has learned in discovery.").

**CONCLUSION**

Because good cause exists for the proposed joinder, consolidation, and amendments; no prejudice will ensue; and defendants have offered no legally-sound opposition, the Court should grant the *Sierra* and *Wood* plaintiffs' motion for leave to file the Proposed Complaint.

Dated: July 22, 2022

_____

Rob Rickner
RICKNER PLLC
14 Wall Street, Suite 1603
New York, New York 10005

Joshua S. Moskovitz
THE LAW OFFICE OF JOSHUA MOSKOVITZ, P.C.
392 Central Avenue # 7803
Jersey City, New Jersey 07307

Michael L. Spiegel, Esq.
48 Wall Street, Suite 1100
New York, New York 10005

Lance Clarke
HAMILTON CLARKE, LLP
48 Wall Street, Suite 1100
New York, NY 10005

*Attorneys for the Sierra Plaintiffs*

_____

Alison Frick
Douglas E. Lieb
KAUFMAN LIEB LEBOWITZ & FRICK LLP
18 E. 48th Street, Suite 802
New York, New York 10017

*Attorneys for Charles Henry Wood*

25