

July 28, 2022

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

    Re:    <u>In re: New York City Policing During Summer 2020 Demonstrations,
1:20-CV-8924 (CM) (GWG) — This Letter Relates to *Sow*, 21-cv-533</u>

Dear Judge Gorenstein:

    I write on behalf of the *Sow* Plaintiffs in the consolidated case above to request a conference under Local Civil Rule 37.2 and ultimately to seek an order compelling responses that comply with the Federal Rules — as well as for appropriate sanctions for Defendants' continued dilatory conduct.

    Early in this case, the Court warned that Judge McMahon was "fully prepared to enter sanctions orders of preclusion against any party who's being recalcitrant about discovery. … [A]nd if it turns out that a particular party is being recalcitrant or slow walking discovery, she wants it known that she will entertain a preclusion motion." 2021-06-24 Tr. 6:14-25. Since that time, as the Court has observed, the City's attorneys have failed to live up to even "the most basic of responsibilities of attorneys" — and has "already been sanctioned for its repeated failure to comply with such basic responsibilities." Dkt. No. 598. Here again, the City has violated an order, slow-walked discovery, and taken maximally recalcitrant positions without justification. The Court's if-then condition has been satisfied.

    At issue is Defendants' failure to provide meaningfully informative responses to various requests in the *Sow* Plaintiffs' first set of discovery requests (**Exhibit 1**; with Defendants' response as **Exhibit 2**). Those requests were served in November, and it took months of threats, a motion, and a missed Court deadline to even get a response. In February, Plaintiffs moved to compel. Dkt. No. 386. This was after significant follow-up and an unanswered letter under Dkt. No. 317. Defendants responded and promised "defendants will provide document responses and documents in two weeks, and that will be a court-ordered date." Dkt. No. 391.[1] Then Defendants violated that Order: they did not serve responses until late May. Even then, the responses they sent were deficient in obvious ways (and despite the Court's repeated cautions, Defendants' responses still failed to conform to the 2015 Amendments[2]).

---

[1] *See also,* 2022-02-11 Tr. at 5:17-24.
[2] *See, e.g.,* Doc. Req./Response 4 (Ex. 2 at 61) (failing to state whether Defendants are withholding any documents based on their objections).



Plaintiffs sent a deficiency letter on June 28, 2022.  *See* **Exhibit 3.**  After several requests to meet, on July 12, the parties met for approximately 2 hours.[3]  During that meeting,[4] the parties reached the agreements memorialized in Dkt. No. 663 and Plaintiffs declared impasses on the issues discussed in Point II below.  For Point I, Plaintiffs stated there was an impasse if Defendants maintained their position that referring to a volume number complied with Rule 33(d).  The Court ordered that commitment (Dkt. No. 663 ¶ 5).  And on July 22 Defendants confirmed the impasse, stating "Defendants believe that providing a volume number complies with Fed. R. Civ. P. 33(d)."

### I. The Court Should Order a Response and Sanction Defendants for their Abuse of Rule 33(d) and Violation of a Clear Order.

At the meet and confer — and in the letter — *Sow* Plaintiffs asked Defendants to justify their claim that reference production volumes containing tens of thousands of documents complied Fed. R. Civ. P. 33(d)'s requirement of "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Defendants were only willing to commit to confirming that was, in fact, their position.  *See* Dkt. No. 663 ¶ 5.  That position is not feasible — and amounts to "an obvious abuse of the option provided by Rule 33(d)." *This, LLC v. Jaccard Corp.*, No. 3: 15-cv-1606(JBA), 2017 U.S. Dist. LEXIS 19383, at *13 (D. Conn. Feb. 9, 2017) (granting a rebuttable adverse inference for discovery abuses and candor issues similar to those Defendants have had here).

The relevant Interrogatories are numbers 2, 9, 12, 13, and 14.  The appended chart sets out what Plaintiffs sought, and what Defendants provided.  In short, for these interrogatories, Defendants are claiming that pointing to sets of about 10,000 – 80,000 documents leaves Plaintiffs able to find the information requested in the interrogatories "as readily as the responding party could."  Nothing about Defendants' approach here is good faith.  The claim that having Plaintiffs review hundreds of thousands of *documents* (not pages) worth of seemingly irrelevant[5] information

---

[3] Present for Plaintiffs were Wylie Stecklow, Alicia Loecker, Marc Arena, Regina Powers, and myself (as well as some summer associates observing); present for Defendants were Shannon Riordan, Nadine Ibrahim, and Bridget Hammill.

[4] At the meeting, Plaintiffs raised a wide array of deficiencies that, owing to the pace of this case — and the sloth of Defendants' responses — must be raised at separate times in order for Plaintiffs to receive documents and information in advance of relevant depositions.

For example, the Order directed that by July 21, "Defendants will state whether they are willing to disclose what steps NYPD has taken to try to identify the Does in response to Interrogatory Nos. 21, 22, and 23." Dkt. No. 663 ¶ 14.  Instead, Defendants sent an email repeating their objections as if the meet and confer never happened.  Late Monday night, after Plaintiffs raised the violation of the Court's Order, Defendants answered the question (they will disclose the steps) — and thus motion practice on whether Defendants have complied with their duties to investigate under Rule 33 must await Defendants' statement of what they have done on August 18 or later, if Defendants miss that commitment or once again provide something other than what they've promised/been ordered to do.

[5] It is not clear if Defendants have done any evaluation of whether any particular volume contains relevant information.  For example, Interrogatory 13 seeks to figure out how a decision at issue in this case was made and who made it:  the decision that, "instead of detaining Plaintiffs and other arrestees for a relatively brief

COHEN&GREEN                                                                                                                                 Page 2 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



will "enable the interrogating party to locate and identify them as readily as the responding party could" is facially absurd. Yet, that is the position Defendants have taken, seemingly driven by the City's continued failure to staff the case appropriately.

In any event, courts repeatedly reject such "obvious abuse of the option provided by Rule 33(d)." *This, LLC*, 2017 U.S. Dist. LEXIS 19383, at *13. Instead, the Court should direct that Defendants "must supplement its responses to specify, by Bates numbers, the business records from which the answers may be ascertained." *Nycomed US Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA), 2009 U.S. Dist. LEXIS 53860, at *4 (E.D.N.Y. June 25, 2009). Indeed, even when parties mass-designate records at a factor of **one hundred** away from what the City has done here, Courts have found "[s]imply stating 'see attached' and attaching approximately 100 pages of materials is insufficient" under Rule 33(d). *Synventive Molding Sols., Inc. v. Husky Injection Molding Sys., Inc.*, 262 F.R.D. 365, 378 (D. Vt. 2009) (holding that "the production of relevant Bates numbers is required" when responding under Rule 33(d)). For obvious reasons, this kind of discovery abuse makes Defendants' responses useless. For example, Plaintiffs cannot — and should not have to — walk a deponent through 77,900 documents to confirm Defendants cannot identify who made a particular decision. The Court should therefore order a full response to Interrogatories 2, 9, 12, 13, and 14— or citation to Bates numbers if Defendants intend to use the option available under Rule 33(d).

Additionally, since (1) Defendants violated a Court order; (2) Defendants' procedural approach shows remarkable slow-walking and recalcitrance in spite of the Court's orders; and (3) Defendants' substantive approach has no justification whatsoever in the rules[6] the Court should also grant the mandatory fees required by Rule 37(a)(5) and enter a further sanction. *See* Fed. R. Civ. P. 37(d)(3). On the facts presented here, there is no question at all that the City is "being recalcitrant [and] slow walking discovery." 2021-06-24 Tr. 6:14-25. Beyond the specific cautions in this case, this Court has specifically commented that an order declaring that "matters embraced in the order or other designated facts be taken as established for purposes of the action," is the "least harsh sanction under Rule 37(b)(2)(A)." *United States SEC v. Collector's Coffee*, 2021 U.S. Dist. LEXIS 15586, at *12 (S.D.N.Y. Jan. 27, 2021). Thus when a party — even a *pro se* litigant, as in *Collector's Coffee* — "inexcusably violate[s] the Court's" orders, taking facts as established is appropriate to address a "continued failure to comply."

Defendants clearly violated a Court Order (*see* Dkt. No. 386), both by its letter (by serving

---

period of time on the street, issuing them summonses, and releasing them, Defendants [would] subject[] Plaintiffs to flex-cuffing as well as unreasonably lengthy, onerous arrest processing, significantly increasing the amount of time they would otherwise have been in custody and exposing them to inappropriate and especially hazardous conditions of confinement" (*see* Dkt. No. 96 ¶ 492). Yet, the sole documents in one indicated volume are requests for information from the CCRB (VOL031_Confidential). Why Defendants are saying these documents contain the information Plaintiffs are seeking — or how Plaintiffs could extract the information from these documents — is a mystery. And that independently shows Defendants' use of Rule 33(d) is inappropriate.

[6] Even if the approach arguably did have some support, the particular instance of it — saying Plaintiffs can review hundreds of thousands of records as easily as Defendants can review their own business records — is so absurd as to be frivolous.

 Page 3 of 8

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



responses months after the "court-ordered date") and its spirit (by failing to take seriously its responsibilities under Rule 33), a sanction is warranted. And given the ever-growing "history of sanctions imposed on the City" in this case (Dkt. No. 457 at 3), it seems that absent a greater sanction, the City will continue to view Court Orders as precatory, not mandatory. *But see*, Dkt. No. 383 ("Moreover, it appears that the City still has not complied with the Court's Order to provide the sworn statement. Court orders are mandatory, not precatory."). At this stage, "any lesser sanction — such as" reminding the City "once again" that it must comply with Court orders — "would be ineffective." *Collector's Coffee*, at *12. Violation of this Court's Orders has become quotidian.

Thus, Plaintiffs ask that the Court direct the parties to confer on an appropriate, incidental (that is, not case-ending) preclusion sanction — and submit competing language if they cannot agree.

## II. Defendants Should be Ordered to Produce Bates Numbers for Discovery Produced After the Chart.

Defendants have also failed to comply with the Federal Rules in their document responses. Defendants supplied purely volume numbers in claiming they already produced documents responsive to Document Requests 2, 3, 4, 6, 7, 9, 10, 11, 21, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, and 36 — though they pointed to a handful of non-exhaustive Bates numbers for some requests.[7]

This approach finds no support in the Rules. In fact, while Plaintiffs viewed the Court's previous direction that Defendants must produce Bates numbers on the "Chart" for the Consolidated Requests as a sanction, **Defendants** argued that the Court was merely forcing them to follow the Rules. The Court agreed with Defendants. *See* Dkt. No. 577 at 7 ¶ 3. Moreover, on the merits of the Chart dispute that culminated in Dkt. No. 577, the Court repeatedly reminded the parties that Rule 34 is ultimately our touchstone here." 2022-04-12 Tr. at 32:9-19. Indeed, the Court was clear at that conference that providing Bates numbers in response to a document request is simply "what Rule 34 requires." *Id.* at 29:12-20. The point is that Plaintiffs should be able to look at the responses and figure out what documents Defendants have produced.

Moreover, while the Court excused Defendants' previous negligence in failing to log Bates numbers for documents, that was because, as the Court put it, "[w]e have a problem now and the question of how to solve it." *Id.* at 33:12-18; *see also, id.,* 38:20-39:8 (I think Rule 34 is my touchstone, but for purposes of the production, but there's been enough water under the bridge here and delays…"). *Cf.* Dkt. No. 334 ("the Court does not understand how the City ended up believing that the plaintiffs were interested in only the Mott Haven video. But that is water under the bridge now."). But Defendants did not respond to these requests until *long* after the Chart Order: they were on notice that this Court views providing Bates numbers as "what Rule 34 requires." They **then** made the choice to skip that work — instead forcing Plaintiffs to litigate this issue from square one. And it leaves Plaintiffs in the exact dilemma that the Court pointed out at the conferences on this issue: "So what, you know, imagine yourself as someone making a document request, someone produces some number of documents to you and you want to figure out where

---

[7] Defendants conceded at the meet and confer that these were not intended to be exhaustive.

COHEN&GREEN                                                                                     Page 4 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



they are, what're you supposed to do?" 2022-04-12 Tr. 21:19-22; 28:5-7 (the Court, following Defendants' explanation of how Plaintiffs were supposed to evaluate the responses which ended, "Right so in volume 7 that's 27,000 3 documents, 27,000 file names, and there are 20 some odd volumes here," stating: "Ms. Weiss, if you haven't figured out that there's a problem here, then I'll try to explain it to you.").

Even evaluating this from the water-under-the-bridge perspective,[8] many of Defendants' refusals are meritless. Take Document Request 10, as an example. Like Defendants' policies, the question of what documents reflect "the briefings and training given to the individuals city employees who were in charge of supervising mass arrest processing facilities" is very much "within the purview of the defendants." 2022-04-12 Tr. at 74:23-75:4. As with Defendants policies themselves, makes no sense for "plaintiffs to figure out what their [Defendants' briefings and trainings received by particular individuals] are." *Id.* Instead, figuring that out requires "defendants' knowledge and expertise and presumed knowledge of their own documents." *Id.* at 75:5-11. So too with many other Requests.[9] Indeed, in some instances, Defendants did not even attempt a volume number: "Defendant City refers Plaintiffs to email discovery previously produced." Ex. 2 at 71. And there is no sense in which that response complies with the Rules.

On this Plaintiffs just seek to have the City comply with Rule 34 — and the Court should order that compliance in very short order. But given the variety of Orders on this topic, and at least an arguable basis for Defendants' confusion, Plaintiffs do not seek fees (and have segregated attorney time appropriately).

Once again, we thank the Court for its continued time and attention.

Respectfully submitted,

/s/
_____

---

[8] That is, with regard to the Chart, Defendants received a reprieve from having to do what the Rules require because of the burden it would have posed looking backward. Even though Defendants were pointing to hundreds of thousands of often totally unrelated documents, the Court decided that Plaintiffs could clean up the mess as easily as Defendants with regard to certain categories of document — and thus did not order Defendants to provide Bates ranges outside of certain categories where Defendants were uniquely knowledgeable.

[9] Specifically, Requests 7 (documents about the "City's response to the COVID-19 pandemic in protest and/or arrest" contexts); 9 (documents about the City's "decisions to custodially arrest protesters"); 10 (briefings and trainings related to mass arrest processing facilities); 21 (a particular communication from Defendant Monahan referenced in the DOI report); 25 (documents about a particular concern Commissioner Shea expressed); 27 (documents showing the "basis for the statement made on May 31st by Deputy Commissioner John Miller at a press briefing where he stated that NYPD had evidence providing a high level of confidence that disorderly groups had organized bike scouts, medics, and supply routes of rocks, bottles, and accelerants for the purpose of vandalism and violence"); 28 (similar seeking documents forming the basis for a statement about intelligence justifying the Mott Haven arrests); 29 (similar for documents forming the basis of a statement about injured officers); 34 (particular Academy trainings); and 35 (particular SRG trainings).

COHEN&GREEN    Page 5 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



        J. Remy Green
            *Honorific/Pronouns: Mx., they/their/them*
        **COHEN&GREEN P.L.L.C.**
        *Attorneys for Sow Plaintiffs*
        1639 Centre St., Suite 216
        Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

COHEN&GREEN     Page 6 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



## APPENDIX:  Chart of Responses and Documents Referenced

| Request | Defendants' FRCP 37(d) Reference | Number of Documents[10] Referenced |
|---|---|---|
| 2:  Identify each individual and/or officer who issued a dispersal order at any protest location on the date and time identified in Schedule A, including:<br>　　a. the language of the order;<br>　　b. method used to convey the order (i.e. bullhorn, LRAD, voice only, etc.);<br>　　c. the number of times such order was given;<br>　　d. which path(s) of egress was/were provided; and<br>　　e. the duration of time such egress was made available | "[D]efendants, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, refer plaintiffs to the documents produced as part of defendants' productions VOL040_Confidential and VOL041_Not Confidential" | **9,229**<br><br>(8,327 in VOL040_C; 902 in VOL041_NC) |
| 9:  Identify any conversations, including electronic communications, between Defendants Monahan and de Blasio concerning the protests, including, but not limited to the telephone call that was recently made public held during the Mott Haven protest/arrests. (See https://www.thecity.nyc/2021/5/18/22442881/floyd-protest-policing-defended-by-nypdcommissioner-shea) | "[D]efendants, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, refer plaintiffs to defendants' Objections and Responses to plaintiffs' First Consolidated Set of Document Requests Nos. 18-19 and to the documents produced as part of defendants' productions DEF-E_001, DEF-E_002, DEF-E_003, DEF-E_004, DEF-E_005. | **17,696**<br><br>(9,549 in DEF-E_001; 7,802 in 002; 2 in 003; 7 in 004 (consisting of a reproduction of documents already counted in the other volumes listed in this subsection); 343 in 005) |
| 12:  For each Protest Location listed in the attached Schedule B, Documents sufficient to identify the intended roles or functions, deployments, commands, and instructions provided to each and every Officer who was assigned to, or who responded to, the Protest Location, permits sought for such protest, instructions conveyed to officers assigned to police such protest, intelligence received regarding such protest, including but not limited to documents identifying:<br>　　[a list of 11 specified categories of information for things like deployment of officers] | "[D]efendants refer plaintiffs to the documents produced in DEF_PD_002[11], VOL08_Not Confidential, VOL037_Confidential, VOL041_Confidential, VOL041_Confidential.[12]" | **28,425**<br><br>(17,673 in DEF_E_PD_002; 458 in [0]08; 808 on 037; 902 in VOL041_NC; 8,584 in VOL041_C) |
| 13:  Who made the decision that officers should conduct custodial arrests of protesters for violations of New York Penal Law § 240.20 and the Mayor's Executive Curfew Orders during the events listed in Schedule A and describe how this decision was made. | "[D]efendants, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, refer plaintiffs to defendants' Objections and Responses to plaintiffs' First Consolidated Set of Document Requests No. 41 and to the documents produced as part of defendants' productions VOL002_Confidential, | **77,900**<br><br>(1,970 in 002; 5 in 005_C; 108 in 005_NC; 9,929 in 006_NC; 281 in 007_C; |

---

[10] Plaintiffs note that many of these documents are themselves hundreds of pages.

[11] There is technically no such production, but Plaintiffs assume Defendants meant DEF_E_PD_002.

[12] Plaintiffs assume from the double listing that Defendants intended to list the Confidential and the Non-Confidential volume, rather than listing the Confidential volume twice.

COHEN&GREEN                                                                                      Page 7 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



| | | |
|---|---|---|
| | VOL005_Confidential, VOL005_Not Confidential, VOL006_Not Confidential, VOL007_Confidential, VOL007_Not Confidential, VOL008_Confidential, VOL008_Not Confidential, VOL009_Confidential, VOL010_Confidential, VOL011_Not Confidential, VOL014_Confidential, VOL018_Confidential, VOL019_Not Confidential, VOL026_Confidential, VOL031_Confidential, VOL032_Confidential, VOL035_Confidential, VOL037_Confidential, VOL039_Confidential. As well as, NYPD Patrol Guide, available at https://www1.nyc.gov/site/ccrb/investigations/nypd-patrol-guide.page." | 28,676 in 007_NC; 715 in 008_C; 458 in 008_NC; 488 in 009_C; 27,426 in 010_C; 3,033 in 011_NC; 1,725 014_C; 1,132 in 018_C; 19 in 019_NC; 31 in 026_C; 13 in 031_C; 54 in 032_C; 1,761 in 035_C; 808 in 037_C; 12 in 039_C (Patrol Guide not counted)) |
| 14: Who made the decision that Emergency Executive Order 117 and Emergency Executive Order 119 establishing the city-wide curfews should be enacted and/or issued and describe how these decisions were made. | "[D]efendants, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, refer plaintiffs to the documents produced as part of defendants' productions DEF-E_001, DEF-E_002, DEF-E_003, DEF-E_004, DEFE_005" | **17,696**<br><br>(9,549 in DEF-E_001; 7,802 in 002; 2 in 003; 7 in 004 (consisting of a reproduction of documents already counted in the other volumes listed in this subsection); 343 in 005) |

Page 8 of 8

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com