UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In Re: New York City Policing During        Index No. 20-CV-8924 (CM)(GWG)
Summer 2020 Demonstrations

-------------------------------------------------------------x

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York
100 Church Street
New York, New York 10007
Shannon Riordan
*Counsel for City Defendants*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................. 1

ARGUMENT

      POINT I

           DEFENDANTS HAVE PROPERLY INVOKED
           THE DELIBERATIVE PROCESS PRIVILEGE ....................................... 2

      POINT II

           DEFENDANTS HAVE PROPERLY WITHHELD
           DOCUMENTS UNDER THE DELIBERATIVE
           PROCESS PRIVILEGE, HOWEVER IN THE
           ALTERNATIVE AN *IN CAMERA* REVIEW OF
           SAID DOCUMENTS WOULD BE WARRANTED ................................. 7

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Pages**

*Abraham Fruchter & Twersky LLP v. U.S. SEC*,
   No. 05 Civ. 00039, 2006 U.S. Dist. LEXIS 13607
   (S.D.N.Y. Mar. 29, 2006) ...................................................................................................4

*Allstate Ins. Co. v. Serio*,
   1998 U.S. Dist. LEXIS 12583 (S.D.N.Y. 1998)...................................................................4

*Borchers v. Com. Union Assur. Co.*,
   874 F. Supp. 78 (S.D.N.Y. 1995).........................................................................................10

*City of New York v. Group Health, Inc.*,
   06 Civ. 13122 (RJS)(RLE),
   2008 U.S. Dist. LEXIS 82681 (S.D.N.Y. Oct. 10, 2008)......................................................3

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001)...................................................................................................................3

*EPA v. Mink*,
   410 U.S. 73 (1973).................................................................................................................7

*Exxon Corp. v. Dep't of Energy*,
   585 F. Supp. 690 (D. D.C. 1983)...........................................................................................7

*In re Franklin Nat'l Bank Secs. Lit.*,
   478 F. Supp. 577 (E.D.N.Y. 1979)........................................................................................8

*Hopkins v. United States Dep't of Housing & Urban Dev.*,
   929 F.2d 81 (2d Cir. 1991)..................................................................................................3, 4

*Ingles v. City of New York*,
   2004 U.S. Dist. LEXIS 21783 (S.D.N.Y. Oct. 7, 2004).........................................................4

*Jowett, Inc. v. Dep't of the Navy*,
   729 F. Supp. 871 (D. D.C. 1989)...........................................................................................8

*Kerr v. US. Dist. Ct. for N. Dist. of Cal.*,
   426 U.S. 394 (1976).............................................................................................................10

*Lead Industries Assoc., Inc. v. Occupational Safety & Health Admin.*,
   610 F.2d 70 (2d Cir. 1979).....................................................................................................7

*Lewis v. Reynolds*,
   284 U.S. 281 (1932)...............................................................................................................5

**Cases**                                                                                     **Pages**

*MacNamara v. City of New York*,
   04-CV-09216 (KMK)(JCF), 2007 U.S. Dist. LEXIS 28956,
   2007 WL 1169204 (S.D.N.Y. Apr. 20, 2007) ................................................................6

*MacNamara v. City of New York*,
   249 F.R.D. 70 (S.D.N.Y. 2008) ............................................................................6, 10

*Mead Data Central, Inc. v. U.S. Dep't of the Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ..................................................................................8

*Montrose Chem. Corp. of Calif. v. Train*,
   491 F.2d 63 (D.C. Cir. 1974) ..................................................................................7, 8

*NAACP Legal Def. & Educ. Fund, Inc. v. United States HUD*,
   07 Civ. 3378 (GEL),
   2007 U.S. Dist. LEXIS 88027 (S.D.N.Y. Nov. 30, 2007) .........................................3

*National Wildlife Federation v. U.S. Forest Service*,
   861 F.2d 1114 (9th Cir. 1988) ..................................................................................7

*Peck v. United States*,
   88 F.R.D. 65 (S.D.N.Y. 1980) ..................................................................................8

*Radiation Sterilizers, Inc. v. U.S. Dep't of Energy*,
   No. 90-880 (CRR),
   1991 U.S. Dist. LEXIS 4669 (D. D.C. Apr. 9, 1991) ...............................................7

*Russell v. U.S. Dep't of the Air Force*,
   682 F.2d 1045 (D.C. Cir. 1982) ................................................................................7

*Spinner v. City of New York*,
   No. 01 CV 2715 (CPS),
   2004 U.S. Dist. LEXIS 2541 (E.D.N.Y. Feb. 19, 2004) ...........................................7

*Tigue v. United States Department of Justice*,
   312 F.3d 70 (2d Cir. 2002) ..............................................................................3, 4, 6

**Statutes**

5 U.S.C. § 552(b)(5) ........................................................................................................8

42 U.S.C. § 1983 .............................................................................................................4

**Other Authorities**

Pub. L. No. 93-502, 88 Stat. 1561 (1974) .......................................................................7

## PRELIMINARY STATEMENT

Defendants submit this memorandum in opposition to the Plaintiffs' Motion to Compel. Defendants have produced approximately 170 documents that were reviewed by Chief Thomas Conforti as he drafted an after-action review of protests that occurred between May 25, 2020 through June 30, 2020. Defendants withheld 40[1] such documents on the basis of privilege. Plaintiffs take issue with 12 of the documents that Defendants withheld on deliberative process privilege. *See* Plaintiffs' Memorandum of Law in Support of Motion to Compel, dated July 21, 2022, at 4 ("Pl. Mo."). For the reasons set forth below, Defendants request that the Court deny Plaintiffs' request or, in the alternative, conduct an *in camera* review of these 12 documents to determine if the deliberative process privilege was properly asserted.

## FACTUAL BACKGROUND

In the wake of George Floyd's death, protests began across the country, including New York City. At the end of June 2020, then-Commissioner Shea, asked Chief Conforti to conduct a review of police responses to these protests. Affirmation of Thomas Conforti dated April 19, 2022, annexed to the Declaration of Shannon Riordan, dated July 28, 2022 ("Conforti Apr. 19 Aff."), as Exhibit A, ¶5. In compiling this draft after-action report, Chief Conforti reviewed statistical data, as well as, conduct informal interviews with approximately 100 members of the New York City Police Department ("NYPD") ranging from line officers to other Chiefs. *Id.* ¶¶7-8. Incorporated into the draft report was Chief Conforti's personal observations and opinions, as well as his own thoughts and suggestions for policies and procedures within NYPD moving forward. *Id.* ¶10. While compiling the draft report, Chief Conforti would check in with then-

---

[1] A duplicative document in Chief Conforti's possession is not listed on the privilege log dated June 24, 2022.

Commissioner Shea approximately every two weeks to provide updates on his progress. *Id.* ¶11. In early August 2020, the draft was circulated to then-Commissioner Shea and other NYPD executives, from whom Chief Conforti received "a great deal of input" on suggested revisions, some of which Chief Conforti added into an amended draft. *Id.* ¶¶13-14. Chief Conforti never sent the amended draft to then-Commissioner Shea and it is his understanding that the "draft report was never finalized, accepted, or approved, and it was never published or released to the public or even to the entirety of the NYPD." *Id.* ¶¶15-16.

On April 14, 2022 and April 19, 2022, Chief Conforti provided the NYPD Legal Bureau with both hard copies and a flash drive of the materials that he amassed during the creation of his draft after-action report.[2] *Id.* ¶17. The most up to date privilege log, dated June 24, 2022, was produced to Plaintiffs on June 25, 2022. Following that production, on June 29, 2022, Defendants produced to Plaintiffs a second affidavit from Chief Conforti which provided an index of the materials that he had amassed. *See* Exhibit B (Supplemental Affirmation of Thomas Conforti dated June 28, 2022). On July 22, 2022 the remaining documents, which were not being withheld for privilege, were produced to Plaintiffs.

## ARGUMENT

### POINT I

### DEFENDANTS HAVE PROPERLY INVOKED THE DELIBERATIVE PROCESS PRIVILEGE

---

[2] As to Plaintiffs' footnote 6, Plaintiffs raised this issue and it was already addressed by the Court during the April 12th conference. Since even Plaintiffs admit that the issue is not relevant here, Defendants can only surmise that this is simply another attempt by Plaintiffs to cast Defendants in a poor light. Defendants, however, point out that while again accusing Defendants of misrepresentations, Plaintiffs, once again, misrepresent that the Court ordered an audit when it did not.

The purpose of the deliberative process privilege "'is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the [g]overnment.'" *NAACP Legal Def. & Educ. Fund, Inc. v. United States HUD*, 07 Civ. 3378 (GEL), 2007 U.S. Dist. LEXIS 88027, at *31 (S.D.N.Y. Nov. 30, 2007)(quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)(internal citations omitted)); *see also, Hopkins v. United States Dep't of Housing & Urban Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). The privilege is based on the "obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of **discovery** and front page news..." *Tigue v. United States Department of Justice*, 312 F.3d 70, 76 (2d Cir. 2002) (emphasis added). As the court aptly noted, "[t]he rationale underlying the privilege is that 'those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decision making process.'" *City of New York v. Group Health, Inc.*, 06 Civ. 13122 (RJS)(RLE), 2008 U.S. Dist. LEXIS 82681, at *4 (S.D.N.Y. Oct. 10, 2008)(citations omitted). Courts afford "considerable deference" to the judgment of the agency as to what constitutes part of the process by which a final decision is made, since the agency is in the best position to know how to prevent injuring the quality of agency decision-making. *NAACP Legal Def. & Educ. Fund, Inc.*, 2007 U.S. Dist. LEXIS 88027, at *36-37 (citations omitted). The deliberative process privilege covers "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Tigue*, 312 F.3d at 76 (citation and internal quotes omitted).

In order to qualify as privileged, the advisory opinions, recommendations or deliberations must be (1) pre-decisional and (2) deliberative. *Hopkins,* 929 F.2d at 84. First, information is pre-decisional "when it is prepared in order to assist an agency decision maker in

3

arriving at his decision." *Tigue,* 312 F.3d at 80 (citation omitted). Pre-decisional material or information normally includes "recommendations, draft documents, proposals, suggestions and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Second, information is "deliberative" when it is "actually related to the process by which policies are formulated." *Hopkins,* 929 F.2d at 84. Courts in this district have held that the "observations and questions" of agency staff are "precisely the type of candid discussion that the deliberative process privilege is designed to shield." *Abraham Fruchter & Twersky LLP v. U.S. SEC,* No. 05 Civ. 00039, 2006 U.S. Dist. LEXIS 13607, at *3 (S.D.N.Y. Mar. 29, 2006). As a matter of public policy, agencies such as NYPD must be free to evaluate the impact of new legislation on the department, candidly evaluate NYPD policies and procedures, and make recommendations to the Police Commissioner in that regard. In doing so, agency members must be encouraged to speak freely, even where their opinions may be unpopular, without fear that the individual will later be subject to public scorn or ridicule because that opinion became part of the public record in a subsequent civil litigation.

The party seeking to overcome the deliberative process privilege must make a "strong showing of 'substantial need' for the privileged material." *Ingles v. City of New York,* 2004 U.S. Dist. LEXIS 21783 *1, *5-6 (S.D.N.Y. Oct. 7, 2004) (denying disclosure of privileged material to plaintiff alleging violation of their § 1983 rights where plaintiffs failed to demonstrate a sufficiently "strong need" for the materials to overcome the privilege); *see Allstate Ins. Co. v. Serio,* 1998 U.S. Dist. LEXIS 12583 *1, *6-7 (S.D.N.Y. 1998) (deliberative process privilege not overcome where plaintiffs who alleged violation of their First Amendment free speech rights failed to demonstrate a "substantial need" for the documents). "Whether the privilege will be overridden depends on the balancing of (1) the relevance of the evidence sought to be protected, (2) the

4

availability of other evidence, (3) the "seriousness" of the litigation and the issues involved, (4) the role of the government in the litigation, and (5) the possibility of future timidity of government employees who will be forced to recognize that their secrets are violable." *Allstate*, 1998 U.S. Dist. LEXIS 12583 at *7. Defendants believe that Plaintiffs have not made a sufficiently strong showing and their motion should be denied.

Plaintiffs principally argue that they have a *need* for the deliberative process privileged documents; however, plaintiffs have fallen far short of making a strong showing of 'substantial need' which is required to pierce the privilege. Plaintiffs claim to need the protected documents because "the decision-making processes to create and abandon the report is the direct subject of this litigation." Pl. Mo. at 6. However, it is the NYPD policy *in effect* that is relevant, not any behind-the-scenes back-and-forth among policymakers about what a new policy should look like. *See, Lewis v. Reynolds*, 284 U.S. 281 (1932)(mental processes of government officials are not relevant nor do they lead to relevant evidence). Plaintiffs in effect argue that by simply alleging a *Monell* municipal liability claim, whereby a plaintiff alleges deliberate indifference, they can defeat the deliberative process privilege. Such a doctrine would entirely eviscerate the privilege in cases against municipal police departments irrespective of the circumstances of the case. Further, there is an abundance of other evidence available. Indeed, as Plaintiffs point out themselves, Chief Conforti, along with various other high-ranking NYPD officials, are set to be deposed and hundreds of thousands of documents have been produced since the start of this litigation. The documents in question reflect the personal views, ideas, proposals, and recommendations of Chief Conforti rather than the official NYPD policy, and contain suggestions and recommendations not adopted by NYPD, that, if disclosed, would inaccurately reflect the views of NYPD and cause confusion as to what the policy and practices of NYPD are verses what

5

was merely suggested and never adopted. Disclosure of this material is also harmful because members of NYPD will in the future refrain from engaging in frank discussions pertaining to critical NYPD matters for fear of dissemination resulting in criticism and ridicule.

Plaintiffs rely most heavily *MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008) for the proposition that the deliberative process privilege "is routinely found to be inapplicable where the agency deliberations are central to the case." In all important respects, this matter is dissimilar to *MacNamara*. In that case, the plaintiffs alleged that the policy at issue, the so-called "mass arrest processing plan," was *purposefully* created in such a way to deprive the plaintiffs of their constitutional rights and that the plaintiffs needed the City's deliberative documents to prove their claim. *See MacNamara*, 249 F.R.D. at 82. Here, these deliberative documents have remained deliberative and pre-decisional as no policy was enacted following their creation. Further, in *MacNamara* the Court found that, "[t]he City has made no effort to demonstrate that the redacted comments and recommendations were intended to assist a policymaker in 'the formulation or exercise of policy-oriented judgment,' *Tigue*, 312 F.3d at 80, with respect to a specific agency decision." *MacNamara v. City of New York*, 04-CV-09216, Memorandum and Order (ECF 133). Here, the City Defendants produced to Plaintiffs, among other things, an affirmation stating that the "then-Police Commissioner Shea tasked [Chief Conforti] with drafting a report reviewing the police response to those protests" which was then sent to then-Police Commissioner Shea for his review. *See* Shannon Riordan Decl., Exhibit A, ¶ 2. Accordingly, Plaintiffs' reliance on *MacNamara* is unpersuasive.

# POINT II

**DEFENDANTS HAVE PROPERLY WITHHELD DOCUMENTS UNDER THE DELIBERATIVE PROCESS PRIVILEGE, HOWEVER IN THE ALTERNATIVE AN *IN CAMERA* REVIEW OF SAID DOCUMENTS WOULD BE APPROPRIATE**

Defendants do not dispute that the deliberative process privilege does not generally apply to factual matters. *See*, *EPA v. Mink*, 410 U.S. 73, 87-88 (1973), *superceded on other grounds by* Pub. L. No. 93-502, 88 Stat. 1561 (1974) ("[P]urely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government."). However, federal case law is clear that the privilege does apply to, and will protect, facts and factual materials, when the discovery of those facts and materials would reveal an agency's decision-making process. *See*, *Spinner v. City of New York*, No. 01 CV 2715 (CPS), 2004 U.S. Dist. LEXIS 2541, at *7 (E.D.N.Y. Feb. 19, 2004) (citing *Lead Industries Assoc., Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 83 (2d Cir. 1979)) ("[W]hen facts are part of the analysis and disclosure of the facts would reveal the agency's underlying privileged thought processes, the entire document is privileged."); *Radiation Sterilizers, Inc. v. U.S. Dep't of Energy*, No. 90-880 (CRR), 1991 U.S. Dist. LEXIS 4669, at *4 (D. D.C. Apr. 9, 1991) (quoting *Russell v. U.S. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)) ("Where, however, disclosure of even purely factual material would reveal an agency's decision-making process, Exemption [5] [of the Freedom of Information Act] applies.") (first set of brackets in original) (internal quotation marks deleted); *National Wildlife Federation v. U.S. Forest Service*, 861 F.2d 1114, 1119 (9th Cir. 1988) (quoting *Montrose Chem. Corp. of Calif. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974) ("[E]ven if the content of a document is factual, if disclosure of the document would expose 'the decision-making process itself' to public scrutiny

7

by revealing the agency's 'evaluation and analysis of the multitudinous facts,' the document would nonetheless be exempt from exposure."); *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D. D.C. 1983) (quoting *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)) ("[T]he disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted by section 552(b)(5).").

The privilege applies in such circumstance because the analysis and selection of some facts over others is no less a step in the deliberative process than the formation of agency policy based on them. *See*, *Peck v. United States*, 88 F.R.D. 65, 71 (S.D.N.Y. 1980) (quoting *In re Franklin Nat'l Bank Secs. Lit.*, 478 F. Supp. 577, 588 (E.D.N.Y. 1979)) ("[R]eview and selection [of facts] constitutes a step in the agency's deliberative process, albeit only an initial step. Separation of the important fact from the unimportant is basic to any deliberation.") (internal quotation marks deleted); *Montrose Chem. Corp.*, 491 F.2d at 71 ("[S]eparating the wheat from the chaff is surely just as much part of the deliberative process as is the later milling by running the grist through the mind of the administrator."); *Jowett, Inc. v. Dep't of the Navy*, 729 F. Supp. 871, 877 (D. D.C. 1989) ("Th[e] sifting of the facts and determining which facts are significant, giving frank opinions and recommendations based on those facts . . . constitute precisely the kind of 'process' that the deliberative process privilege of Exemption 5 is designed to protect.").

Plaintiffs seek to compel 12 documents which are protected by the deliberative process privilege and for which Plaintiffs have failed to make a showing of substantial need. Defendants list below the title and description of the documents, as well as provide additional reasoning for their protection under deliberative process privilege.

- "Conforti Report" – Final draft of the after-action report regarding NYPD policing of George Floyd protests in NYC from May 25-June 30, 2020. *This document contains Chief Conforti's personal opinions as to the efficacy of existing NYPD*

8

*protocols for responding to mass demonstrations and other relevant protocols, as well as draft suggestions for amending certain agency policies and procedures.*

- "Notes-CJB" – Handwritten and typed notes by Chief Conforti. *The document contains Chief Conforti's thoughts and ideas for possible inclusion in the draft after-action report, including his "critiques", "recommendations", and various other issues.*

- "After Action Plan Final2" – Unfinished draft of the after-action report regarding NYPD policing of George Floyd protests in NYC from May 25-June 30, 2020. *This document contains Chief Conforti's personal opinions as to the efficacy of existing NYPD protocols for responding to mass demonstrations and other relevant protocols, as well as draft suggestions for amending certain agency policies and procedures.*

- "De-arrest" – Draft section from the draft after-action report. *This section reflects Chief Conforti's personal opinion and thoughts regarding the actions activists take to intervene with law enforcement arrests.*

- "Over this period" – Draft section from the draft after-action report. *This section reflects Chief Conforti's personal opinion and suggestions regarding City government observers at protests.*

- "The Intelligence Bureau is the primary source…" – Draft section from the draft after-action report. *This section contains Chief Conforti's personal opinion, thoughts, and suggestions regarding NYPD's policy and procedure in the NYPD Intelligence Bureau.*

- "Technology played an important role…" – Draft section for possible inclusion in the draft after-action report. *This section contains Chief Conforti's personal thoughts, opinions, and ideas for changes to NYPD's policy and procedures.*

- "PowerPoint Presentation" – PowerPoint presentation presented by Chief Conforti on 9/29/20 to NYPD executives, based on his draft after-action report. *This PowerPoint contains the same personal thoughts, opinions, and recommendations from Chief Conforti's draft after-action report.*

- "Notes-EDP Story-Protest" – Handwritten and typed notes by Chief Conforti. *This document contains Chief Conforti's personal assessment of the propriety of police actions taken during an incident at a protest involving an emotionally disturbed person ("EDP").*

- "Email Thread Re: Media Interviews & Inquiries – DCPI" – Two separate email printouts comprised into a PDF. *These emails contain (1) a draft response from NYPD to the New York Times regarding a media inquiry, and (2) several draft responses pertaining to other media inquiries.*

- "After Action Report Edits – Email Thread from Chernyavsky, Oleg" – Email from Oleg Chernyavsky to Chief Conforti and other high-ranking officials. *This email contains Oleg Chernyavsky's thoughts, impressions, personal opinion and edits, both stylistic and substantive, regarding Chief Conforti's draft after-action report.*

- "Draft Forward to After Action Report – Email from Andrew, William" – Email from Deputy Commissioner William Andrews to Chief Conforti. *This email contains Deputy Commissioner Andrews' personal thoughts, opinions, and suggestions regarding improvements or other changes to the draft after-action report as well as a letter from then-Police Commissioner Shea to then-Mayor de Blasio.*

If the Court is not inclined to deny Plaintiffs motion outright, then an *in camera* review of the above documents as Plaintiffs have pointed out would be warranted. "'*In camera* review is particularly encouraged in cases invoking governmental claims of privilege. *MacNamara*, 249 F.R.D. at 75 n.2 (quoting *Borchers v. Com. Union Assur. Co.*, 874 F. Supp. 78, 79 (S.D.N.Y. 1995)). The Supreme Court has "long held the view that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege." *Kerr v. US. Dist. Ct. for N. Dist. of Cal.*, 426 U.S. 394, 405-06 (1976). Pl. Mo. at 12. Notwithstanding, Defendants maintain that these documents are fully privileged and should be withheld in full as any facts or factual material contained within them are those that are either (1) contained within documents previously produced to Plaintiffs,[3] (2) not severable, or (3) would reveal the privileged thought-process of NYPD personnel. However, if the Court is inclined to order production of any or part of the above documents, Defendants respectfully request that they be permitted to submit to the Court proposed redactions for the Court's review prior to the production of said documents to Plaintiffs.

---

[3] Defendants produced the non-privileged documents from Chief Conforti's index to Plaintiffs on July 22, 2022. *See* Exhibit B.

10

**CONCLUSION**

For all of the foregoing, Defendants respectfully request that this Court find that Defendants have properly invoked the deliberative process privilege. In the alternative, Defendants request that the Court conduct an *in camera* review of the challenged documents.

DATED:   New York, New York
         July 28, 2022

                                    **HON. SYLVIA O. HINDS-RADIX**
                                    Corporation Counsel of the
                                    City of New York
                                    *Attorney for City Defendants*
                                    100 Church Street
                                    New York, New York 10007


                              By:   *Shannon Riordan /s/*
                                    Shannon Riordan
                                    Assistant Corporation *Counsel*
                                    *Special Federal Litigation Division*