UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

In Re: New York City Policing During Summer 2020 Demonstrations

Index No. 20-CV-8924(CM)(GWG)

------------------------------------------------------------- x

# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL

Corey Stoughton
Jennvine Wong
Rigodis Appling
The Legal Aid Society
199 Water Street
New York, N.Y. 10038
(212) 577-3367
cstoughton@legal-aid.org

Robert Hodgson
Molly K. Biklen
Jessica Perry
Daniel R. Lambright
Daphna Spivak
Lisa Laplace
Christopher T. Dunn
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300
rhodgson@nyclu.org

*Attorneys for Plaintiffs in 20 Civ. 8924*

Dated: August 1, 2022
        New York, N.Y.

## TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................1

Argument ...................................................................................................................1

I.   All of the Factors Relevant to Assessing Whether the Deliberative Process Privilege Must Yield Weigh in Favor of Disclosure of the Disputed Conforti Documents ....................................................................................................1

II.  Defendants Continue to Provide No Basis for Concluding that Privileged Material is Not Segregable and Must Not Be Permitted to Use the *In Camera* Review Process to Make *Ex Parte* Arguments ...................................................................6

Conclusion .................................................................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Ins. Co. v. Serio*, No. 97 CIV. 0023 (SS)THK, 1998 WL 477961 (S.D.N.Y. Aug. 13, 1998) .................................................................................................................................... 4

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y. 2009) .................................................................................................................................... 3

*Ingles v. City of New York*, No. 01 CIV. 8279 (DC), 2004 WL 2274653, at *2 (S.D.N.Y. Oct. 8, 2004) ................................................................................................................................. 4, 5

*Lead Industries Assoc., Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 83 (2d Cir. 1979) ................................................................................................................................. 7, 8

*Lewis v. Reynolds*, 284 U.S. 281 (1932) .......................................................................................... 5

*MacNamara v. City of New York*, 249 F.R.D. 70, 80, 82-83 (S.D.N.Y. 2008) .............. 2, 4, 5, 6, 7

*Martin v. New York City Transit Auth.*, 148 F.R.D. 56, 59 (E.D.N.Y. 1993) ................................. 2

*Noel v. City of New York*, 357 F. Supp. 3d 298, 303 (S.D.N.Y. 2019) ........................................... 2

*United States v. Wey*, 252 F. Supp. 3d 237, 250 (S.D.N.Y. 2017) ............................................. 2, 3

**Introduction**

The disputed documents relating to Assistant Chief Thomas Conforti's after-action review of the 2020 racial justice protests are central to question of the City's liability for the NYPD's unlawful response to those protests. Defendants have provided no basis for the Court to find that the deliberative process privilege should shield them from disclosure. Critically, Defendants make no substantive argument that disclosure of these particular records would chill internal NYPD deliberations and do not refute the notion – recognized by prior courts to consider this issue – that ample independent incentives for the NYPD to continue to engage in frank discussions make such risk marginal. Nor do Defendants grapple with the direct relevance of the adequacy of the NYPD's after-action review process to Plaintiffs' claims of liability, including for prospective injunctive relief. For these reasons, the Court should find that the qualified privilege is overcome and order Defendants to produce the disputed documents. In the alternative, the parties appear to agree that *in camera* review and release with appropriate redactions is warranted.

**Argument**

I. <u>All of the Factors Relevant to Assessing Whether the Deliberative Process Privilege Must Yield Weigh in Favor of Disclosure of the Disputed Conforti Documents</u>

Defendants acknowledge that the deliberative process privilege is a qualified privilege subject that must yield to a party's greater need but fail to make a case for why those factors weigh in favor of non-disclosure in this particular case.

As an initial matter, Defendants do not make any meaningful argument as to three of the five factors - the "seriousness of the litigation and the issues involved," "the role of the government in the litigation" and "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Noel v. City of New York*, 357 F. Supp. 3d 298,

1

303 (S.D.N.Y. 2019). As Plaintiffs noted in their opening brief, the government's actions are central to this public interest litigation about crucial issues of racial justice, free expression and longstanding patterns of police misconduct; and there are substantial independent incentives for the NYPD not to become "timid" even if the disputed records are disclosed, particularly if they are disclosed pursuant to a protective order. *MacNamara v. City of New York*, 249 F.R.D. 70, 80, 82-83 (S.D.N.Y. 2008) (noting that for these same reasons, the government's arguments for sustaining the privilege must be "extremely persuasive"). Beyond citing cases for the general proposition that the deliberative process privilege is designed to protect frank exchanges of information within government agencies, Defendants do not engage with these points.

Moreover, to make such arguments and to properly invoke assert the privilege, Defendants were required to provide the Court with an affirmation from the NYPD Commissioner or a high-level delegate who has personally reviewed the documents and determined that they would cause actual harm to agency decision-making. "[I]t is well-established that the claim of deliberative-process privilege must be lodged by the head of the agency after personal consideration of the allegedly privileged material or by a subordinate with high authority pursuant to guidelines on the use of the privilege issued by the head of the agency." *United States v. Wey*, 252 F. Supp. 3d 237, 250 (S.D.N.Y. 2017) (cleaned up). *See also Martin v. New York City Transit Auth.*, 148 F.R.D. 56, 59 (E.D.N.Y. 1993) ("The privilege must be invoked by the head of the agency which seeks to prevent disclosure."). A proper affiant must personally review the documents sought to be withheld and determine that their disclosure would harm the agency's internal decision-making process. *Wey*, 252 F. Supp. 3d at 250. Here, Defendants have not filed an affidavit from the head of the NYPD or a high-level delegate formally invoking the privilege and therefore it is waived. *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y.

2009) (noting in the absence of such a declaration that "the City has not properly asserted the deliberative process privilege over [the] documents. . . ."). Even assuming Chief Conforti was meant to be the Commissioner's designee on this issue, the Conforti affirmation does not set forth any assessment of how disclosure would actually harm internal deliberations and, therefore, does not satisfy this requirement.

Turning to the question of Plaintiffs' need for the records, Defendants make several attempts to minimize the significance of that need, none of which hold up to scrutiny. Contrary to Defendants' argument, Plaintiffs' need is not based on a desire to observe "behind-the-scenes back-and-forth among policymakers about what a new policy should look like." Defendants' Memorandum of Law (July 28, 2022) (ECF 702) (hereinafter, "Def. Mem.") at 5. Rather, it is based on the reality that the quality of the NYPD's after-action review process is directly linked to the City's liability for systemic failures to constitutionally police protests – as Corporation Counsel's own report on the 2020 protests acknowledges. *See, e.g.*, *People v. City of New York*, 21-CV-322, First Amended Complaint ¶ 77 (ECF 51) (citing the New York City Law Department's own conclusion that the NYPD's failure to conduct protest-related after-action reviews between the 2004 RNC protests and the 2020 Racial Justice Protests contributed to the constitutional violations found during the latter). Thus, the broad picture of how the Conforti review unfolded (and how it ended) is directly relevant both to Plaintiffs' claim for injunctive relief to mitigate ongoing risk of further misconduct at future protests and to Plaintiffs' claim that a consistent pattern of lack of internal reflection and lesson-learning within the NYPD contributed to events in 2020.

Acknowledging this fact would not, as Defendants claim, "entirely eviscerate the privilege in cases against municipal police departments irrespective of the circumstances of the case." Def.

3

Mem. at 5. As Defendants point out, there are cases where the privilege is overcome, and cases where it is not, depending on the application of the five *Noel* factors. *Compare MacNamara*, 249 F.R.D. 70 (finding deliberative process privilege overcome as to a proposal for mass arrest processing during the 2004 RNC in case challenging NYPD's policing of protests) *with Ingles v. City of New York*, No. 01 CIV. 8279 (DC), 2004 WL 2274653, at *2 (S.D.N.Y. Oct. 8, 2004) (finding deliberative process privilege not overcome as to pre-decisional feedback of various DOC officials provided to DOC Commissioner prior to his adoption of changes to use of force policy in case challenging pattern of excessive force in city jails).[1] In this case, as in *McNamara* – and in contrast to *Ingles* and other examples cited by Defendants – the after-action review process is (a) directly subject of the litigation because of the broadly acknowledged link between such processes and Defendants' liability, as previously discussed; (b) not merely a collection of "candid personal views" but a formal after-action review initiated by the Commissioner and intended, from the outset, to create a report deliverable to the Mayor representing the formal views of and lessons learned by the NYPD; and (c) Defendants have made no effort to explain how or why the NYPD

---

[1] Defendants' citation to *Allstate Ins. Co. v. Serio*, No. 97 CIV. 0023 (SS)THK, 1998 WL 477961 (S.D.N.Y. Aug. 13, 1998) is entirely inapt. The *Allstate* plaintiffs sought to overcome the privilege based on a purported need to obtain evidence of the agency's subjective intent, but the Court found that "questions of motive, state of mind or scienter do not form part of the relevant legal standard" for their claims. *Id*. at *5. Thus, unlike here, the *Allstate* plaintiffs could not establish any need, let alone "substantial need." It is equally odd that Defendants cite *Lewis v. Reynolds*, 284 U.S. 281 (1932) for the proposition that the "mental processes of government officials are not relevant nor do they lead to relevant evidence." Def. Mem. at 5. *Lewis* – an early 20th century case about the authority of the federal government to collect tax revenue – does not stand for the proposition cited and, even if it did, Plaintiffs have never grounded their "substantial need" for the disputed documents in a need to obtain evidence of Chief Conforti's subjective mental processes. Rather, the primary question is: how does the NYPD, as an institution, approach after-action reviews and how does that approach relate to its repetition of the same patterns of false arrest and excessive force at protests?

would cease to engage in such reviews if these records were disclosed, let alone how that risk compares to Plaintiffs' substantial need in this case of significant public interest.

Defendants' attempts to distinguish *MacNamara* are unavailing. First, they argue that the *McNamara* plaintiffs were entitled to records of proposed changes to mass arrest policies because they alleged the policies were purposefully designed to violate rights. Def. Mem at 6. But this provides a favorable point of comparison: Plaintiffs allege that the NYPD purposefully – or at least in a deliberately indifferent manner – fails to conduct any meaningful after-action reviews of protests and this failure contributed to the misconduct at the 2020 protests and continues to create ongoing risk of future misconduct, as discussed above.

Defendants further attempt to distinguish *MacNamara* on the grounds that "no policy was enacted following the[] creation" of the documents at issue in this case. Def. Mem at 6. But, by Defendants' own account, that is wrong: they claim that a final decision was taken not to complete, or at least not to adopt, Chief Conforti's after-action review. While perhaps not a "policy" decision in a formal sense, the point remains that the NYPD's practices regarding after-action reviews of major protest events is a central component of liability in this matter, just as its approach to mass arrests was central in the *MacNamara* case and, therefore, Plaintiffs should be allowed discovery into the NYPD's process during the Conforti review.

Finally, Defendants claim that Plaintiffs' need for the disputed documents is not substantial because they will have the opportunity to depose Chief Conforti, among others. Def. Mem. at 5. However, the testimony of witnesses whose recollections are often incomplete even in the moment and whose memories will have faded substantially in the two years or more since the after-action review is no substitute for real-time documentary evidence of a process as centrally relevant as the NYPD's sole after-action review of the 2020 protests. Moreover, while it is true that many

thousands of pages of documents have been produced in this case, Defendants do not explain how any category of those documents could act as a substitute for the disputed documents, which are the sole documents related to this after-action review. Defendants have not produced, for example, any policy document setting out the NYPD's "after-action review process" (likely because no such practice exists), leaving the Conforti records as the only means Plaintiffs have to understand how such processes work within the NYPD and gather evidence of the inadequacy of those processes.

For all these reasons, Defendants have failed to meet their burden to establish the validity of the privilege. *MacNamara*, 249 F.R.D. at 80 (the party invoking the privilege holds the burden of persuasion).

> II. Defendants Continue to Provide No Basis for Concluding that Privileged Material is Not Segregable and Must Not Be Permitted to Use the *In Camera* Review Process to Make *Ex Parte* Arguments

If the Court does not find the privilege overcome, the parties appear to agree that *in camera* review is appropriate so that the Court can evaluate whether factual and other non-privileged portions of the disputed documents can be released. *See* Def. Mem. at 7-10.

Notably, Defendants do not dispute that some of the Conforti records contain significant non-privileged material – namely: (a) non-privileged information revealing the process the NYPD undertakes to perform after-action reviews of major protest events – a factual matter central to this case; (b) objective and possibly unique facts about the protests themselves; and (c) recommendations or proposals that were adopted by the NYPD and therefore lost their privileged status. *See* Plaintiffs' Memorandum of Law (July 21, 2022) (ECF 681) at 8-12.

Plaintiffs do not dispute the general proposition that, in some instances, the disclosure of specific non-privileged facts may functionally reveal agency deliberations. *Lead Industries Assoc., Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 83 (2d Cir. 1979). However, Defendants

have made no argument for why disclosure of any facts contained in the disputed documents would "serve primarily to reveal the 'evaluative' process by which different members of the decision-making chain arrived at their conclusions." *Id.* at 84. And, to the extent they would, that only reinforces Plaintiffs' claim for finding the privilege overcome, because the nature of this "evaluative process" is itself a relevant fact in the litigation, and no other document sets out the NYPD's "after-action review process" (to the extent such a thing exists).

Finally, while Plaintiffs do not object to Defendants' request to propose potential redactions to the Court, *see* Def. Mem. at 10, that process should not become a vehicle for Defendants to make *ex parte* arguments about the nature of the information contained in the disputed records that they failed to raise in response to this motion.

## Conclusion

For the foregoing reasons, the Court should find that the privilege is overcome or, in the alternative, review the disputed documents *in camera* and order their release with redactions, if appropriate.

*/s/ Corey Stoughton*
COREY STOUGHTON
The Legal Aid Society
199 Water Street
New York, N.Y. 10038
(212) 577-3367
cstoughton@legal-aid.org