

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

    Re:    In re: New York City Policing During Summer 2020 Demonstrations, 1:20-CV-8924 (CM) (GWG) — This Letter Relates to Sow, 21-cv-533

Dear Judge Gorenstein:

    I write on behalf of the *Sow* Plaintiffs in the consolidated case above to request a conference under Local Civil Rule 37.2 and ultimately to seek an order compelling responses to various of the *Sow* Plaintiffs' discovery requests. Additionally, Defendants have — following impasses confirmed in writing — retreated on certain positions (as further explained below). Given Defendants' shifting potions, and the Court's rules on providing the history of disputes, I ask the Court excuse this slightly overlength letter. While the initial draft sent to Defendants fit on five pages (*see* Ex. 4), explaining those impasses Defendants backed down from on the eve of filing a motion and the accompanying context — along with adding a conclusion summing things up for clarity — has pushed the letter on to a sixth page. Plaintiffs have no objection to Defendants similarly taking an extra page to respond.

## BACKGROUND, CONFERRING, AND IMPASSES

    This motion concerns requests in the *Sow* Plaintiffs' first set of discovery requests (**Exhibit 1**; with Defendants' responses as **Exhibit 2**). Those requests were served in November. After receiving no timely response, Plaintiffs moved to compel after significant follow-up and an unanswered letter under Dkt. No. 317. *See* Dkt. No. 386. Defendants responded after conferring and promised "defendants will provide document responses and documents in two weeks, and that will be a court-ordered date." Dkt. No. 391. In violation of that Order, Defendants did not serve any responses until late May. After reviewing the responses and attempting to bundle all the issues they could, Plaintiffs sent a deficiency letter on June 28, 2022. *See* **Exhibit 3.** Prompted by several requests to meet, on July 12, the parties met for approximately 2 hours.[1] During that meeting, the parties reached the agreements memorialized in Dkt. No. 663 and Plaintiffs declared impasse on all other issues. For the issues where Defendants promised — and the Court order production of —

---

[1] Present for Plaintiffs were Wylie Stecklow, Alicia Loecker, Marc Arena, Regina Powers, and myself (as well as some summer associates observing); present for Defendants were Shannon Riordan, Nadine Ibrahim, and Bridget Hammill.



further information (*see generally,* Dkt. No. 663[2]), Plaintiffs orally declared contingent impasses,[3] and those impasses were later confirmed in writing.

Given the wide variety of impasses and active issues on which the City is still collecting documents and asserting there are no impasses, Sow Plaintiffs emailed a draft of this motion (**Exhibit 4**) to Defendants on September 19, 2022 at 4:55 p.m., informing them it would be filed within 24 hours.  Defendants responded at 3:48 p.m. September 20, claiming that somehow, despite the months of history and detailed herein (and more than a dozen emails not catalogued), their positions were not "finalize[d] — and asked for another 24 hours to "finalize" their position.  *But see* Dkt. No. 685.[4]  Following an exchange, Defendants withdrew their objection to the substance on Point I(A) below, while claiming they still needed "6-7 weeks" to produce the records.  After the 24 hours they asked for, at 4:58 p.m. today, Defendants confirmed the impasse.

## ARGUMENT

### I. Defendants Cannot Refuse to Produce Class Discovery, and Should Produce Timely.

#### A. The Court should compel production of OLPA/zOLPAs for all putative class members in short order.

In Document Request No. 4, Plaintiffs sought discovery necessary to help ascertain their class:  so-called "OLPA" or "zOLPA" (short for "Online Prisoner Arraignment") forms for all putative class members arrested at locations listed in Schedule A.  Defendants have withdrawn their objections, but now claim they need "6-7 weeks" to produce these documents.  There is also a very good chance that Defendants simply plan to ask for another extension in the seventh week or leave the work incomplete.  *See, e.g.,* n. 2, above; Dkt. Nos. 453, 457, 462, 513, 537.  That leaves no impasse on the substance, but a meaningful impasse on timing.

---

[2] Many of the obligations in Dkt. No. 663 remain outstanding because Defendants have been unable to commit to completing the searches the Court specifically ordered finished by April any earlier than October.  As with Dkt. No. 700, Defendants continue to move through the process of production, and are even still conducting their initial searches.  However, any further delay on this motion would prejudice Plaintiffs.

[3] Because Defendants do not always come to meet and confers prepared to discuss their positions — or bring attorneys with authority to take any positions — Plaintiffs have started declaring impasses in the form of "by [date], Defendants will let us know whether they are actually asserting a burden, and if they are asserting a burden, we will be at an impasse."

[4] Specifically, after the meet and confer, Defendants confirmed in writing:  "the defendants confirm that there is an impasse with respect to the Sow plaintiffs' Document Request No. 4, unless the Sow plaintiffs can identify specific members of the putative class for whom they seek OLPA (zOLPA) information. Furthermore, the defendants state that to the extent that OLPAs have not already been produced, Defendants continue to assert burden and are not producing any additional OLPA pursuant to that objection (except as specified above)."  Yet, after facing a motion, it took less than 24 hours to do a total about-face.  So this marks yet another instance of, as the Court observed, the fact that "part of the reason … that we need so much meeting and conferring is that the City is not giving definitive positions on things."  2022-02-11 Tr. at 56:12-20.

COHEN&GREEN                                                                                                                Page 2 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



These are documents that should have been produced in July 2021[5] — and at the latest, in April this year. In line with the rocket docket approach, Defendants made "a commitment to produce everything by the 31st" of July in 2021. 2022-08-19 Tr. at 19:23-20:11. As has long been clear, however, the City's responses on that date were very much lacking. And so, the Court ordered a second "final" date for production — ultimately shifted back to April 15, 2021 (with some carveouts not relevant here). *See* Dkt. No. 462.[6] In the "Charts" that Defendants have now audited for misstatements (after some became clear) extensively, Defendants did not state they withholding OLPAs either in response to the *Sow* request, or the consolidated request. The relevant Charts are attached as **Exhibits 5** and **6**, with an email copy in .XLS format also sent to Chambers and shows Plaintiffs were entitled to expect that because "there's nothing in the chart under columns E or F, [Defendants would] be producing" all responsive documents. 2022-04-12 Tr. at 44:10-18.[7]

Given all that, it is simply not fair to Plaintiffs to allow the City to delay *another* 6-7 weeks. Plaintiffs should have had these documents more than a year ago. The Court should give the City two weeks to produce the relevant documents. In the alternative, Defendants should be directed to provide affidavits from (1) the relevant NYPD executives and (2) the Corporation Counsel herself explaining (a) what staffing levels currently are in the relevant offices, (b) what changes to staffing have been made in response to the many orders like the ones at Dkt. Nos. 453[8] and 457,[9] and (c) why OLPAs were not collected when the Chart represented that they were and/or why this misstatement was not caught in Defendants' Chart audit.

### B. Defendants should identify people arrested at Schedule A locations in response to Interrogatory No. 4.

Interrogatory No. 4 seeks to have Defendants identify "each individual who was arrested at a

---

[5] Plaintiffs sought the OLPAs in their consolidated requests — but did so tied to an interrogatory Defendants did not answer by providing the information that would make the request work as written. *See,* Dkt. No. 341-1 at 14 (Doc. Req. 9); Dkt. No. 341-4 at 5. It then appeared from the July production Defendants were withholding a large number of OLPAs. So *Sow* Plaintiffs sought them specifically — and both from the meet and confer process and from the fact that Defendants previously claimed there were 250 hours of work to do in collecting OLPAs — Plaintiffs confirmed that Defendants withheld OLPAs without identifying the withholding in the Chart or in compliance with 2015 Amendments.

[6] "While the City's past dilatory conduct with respect to responding to discovery counsels against granting an extension, the fact remains that a brief extension at this time may not not have a practical effect on the progress of this case. The Court will therefore grant an extension to April 15, 2022, to produce all documents. The Court finds it highly unlikely that the City could show cause for any further extension."

[7] Attached as **Exhibit 7** is Defendants email following the review for "misstatements" the Court directed (Dkt. No. 573), which does not state anything in the relevant request was inaccurate.

[8] "In light of the City's failure to focus on gathering these documents long ago when it should have, the Court will not keep granting extensions to produce them. The City also acted improperly by waiting until the due date to seek the extension. An extension to April 1, 2022, is granted. If staffing needs to be increased to meet this deadline, that would be the proper course of action for the City to take."

[9] "[T]he City must assure the Court [] that this case is adequately staffed to comply with all of the City's discovery obligations.."



Page 3 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



location listed in Exhibit A." Defendants initially objected that the interrogatory was "duplicative," but ultimately conceded that they did not provide identification of every individual arrested at a location in Schedule A (Ex. 2 at 3–4); Defendants' position at the meet and confer on July 12 was that Defendants provided *some* of this information in various documents. However, this response runs into several problems. First, not all protest areas are contained within the documents Defendants reference. Second, officers arrested many individuals, but let them on the street without any charging instrument. For example, the *Hernandez* former plaintiffs were arrested in this manner.

Thus, the request seeks unique information. And this is a case where there will not be a separate, post-certification class discovery phase. So, beyond being necessary to understand the size of the class and necessary to identifying potential witnesses, this information is necessary for class notice and other post-certification purposes as well.[10] Thus, the information is not just relevant, but essential — and Defendants' underdeveloped (*see, e.g., King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988)) proportionality and burden objections fail. That is, Defendants provides no information describing the supposed burden at all (Ex. 2 at 4). Thus, the Court should compel production.

### II. Defendants Invocation of Confidentiality Orders in Response to Document Request 12 is Baffling.

In Document Request No. 12, Plaintiffs sought information about certain decisions to (1) decline to prosecute and (2) decline to indemnify and/or represent officers (Ex. 1 at 66[11]). In the current Chart, Defendants do not state any objections are the basis for withholding other than privilege. *See* Ex. 6, Row 162/Columns E-D (no objections or withholding beyond an ultimately uninvoked privilege). Indeed, the Court has already sanctioned Defendants for thinking that they were allowed to treat the chart as an "evolving" document. *See, e.g.,* 2022-04-12 Tr. at 7-8. However — perhaps because they continue to do first order searches — Defendants are now seeking to amend the Chart. And in violation of the Court's orders, they still have not completed the basic search or produced a privilege log. In an email thread (**Exhibit 8**, the relevant issue is described as Item 2(c)) following the Order at Dkt. No. 663, Defendants invoked confidentiality orders in *other cases* as somehow barring the City from disclosing its own documents. They have also — without clarifying what it is they are withholding, or what the burden *is* — stated " as the request seeks all documents related to the information collected pursuant to Local Law 68-2020, it is overbroad and burdensome." Ex. 7 at 9.

None of that complies with the rules or the Court's Orders. The Court already Ordered Defendants to "do the exercise of going through and saying exactly what you're going to produce and what you're not, and to the extent you're not producing it, and if it's on burdensomeness grounds rather than relevance, you need to specify in detail what that burden is." 2022-04-12 Tr. at

---

[10] Notably, Defendants have never objected to the fact that the Court placed class certification post-discovery, nor have they ever moved for a protective order or bifurcation on that basis.

[11] "Produce any and all documents, including electronic communications related to the information collected pursuant to Local Law 68-2020, the Department's Early Intervention Program (which collects information regarding certain declinations to prosecute), as well as Law Department declinations to indemnify or represent officers in civil lawsuits brought from protest arrests alleging a constitutional violation."



Page 4 of 6

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com

Case 1:20-cv-08924-CM   Document 742   Filed 09/21/22   Page 5 of 6



96-97.  And Defendants stated, unambiguously, "if there is no burdensome or responsiveness or other objection in the chart, we are producing the documents." 2022-04-12 Tr. 43-44.  So the objection is waived, since Defendants cannot assert new objections.  But even if making new objections did not violate a Court Order (it does), there is similarly no question that Defendants' bare assertion here doesn't suffice to state a burden objection.  *See, e.g., King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988).  That is, either way, the objection fails.

That leaves, since Defendants are alleging it would violate a Court order — and thus the objection is not necessarily waivable — to disclose certain documents.  But that does not make any sense.  The documents at issue are ***City documents***.  Nothing in any confidentiality order — and certainly nothing in the ones Defendants have cited — can prevent the City from disclosing ***its own documents***.  All it could prevent is documents they received from the plaintiffs in those cases.  But those documents, at most, are incidentally covered by these requests.  What Plaintiffs are seeking are the documents that show just how bad an apple must be before the City will refuse to defend their conduct.  Since the City does not somehow lose the ability to control its own records just because a confidentiality order exists, and they've disclosed those documents to a third party under that order, their objection is frivolous and should be overruled — and production should be ordered in no more than 10 business days.

### III. Defendants Should Respond to Interrogatory Nos. 10 and 11.

Interrogatory No. 10 seeks to identify officers who were disciplined for using excessive force at a protest over the last 20 years, as well as basic information about the underlying conduct.  Interrogatory No. 11 asks for the nature of the same discipline.  Defendants say finding this information is not proportional to the case and belatedly try to raise a burden objection.  Starting with the latter, while Defendants say the request is burdensome and estimate it would take 250 hours to search for all documents, they have not offered a "declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principle matters to be attested to in the affidavit or declaration." *King*, 121 F.R.D. at 189.  But even if the objection were in an affidavit, Defendants offer no explanation.  Neither works.

On relevance, as Judge McMahon explained, at issue here are "numerous instances of the NYPD's ignoring CCRB disciplinary recommendations following complaints of police misconduct" — including specifically "that the NYPD failed to discipline then-Deputy Chief Monahan after he directed [unconstitutional activity] 2004 RNC protest" and "instead, he was eventually promoted to Chief of Department, and … directed the use of the same strategies against the Mott Haven protesters on June 4, 2020." *In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 405 (SDNY 2021)

In the alternative, if the Court sustains a burden objection, the Court should also grant an inference that the City has not adequately imposed discipline following protest-related excessive force.  The City should not be allowed to use the burden of actually parsing information as a sword and a shield.  While Defendants claim there is a massive amount of responsive material, it is also undisputed the number of officers who ultimately have faced serious discipline for protest-related

COHEN&GREEN    Page 5 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



misconduct is vanishingly small.[12]  So either Plaintiffs should receive all that information — information that, if it shows what is alleged, gives rise to liability because it shows "Defendants ratified the actions taken by the NYPD by publicly praising, failing to discipline, and, at times, even rewarding officers for their conduct (548 F. Supp. 3d at 406) — or Defendants should not be allowed to dispute what Plaintiffs claim that information would show.  *See, e.g.,* Fed. R. Civ. P. 37(c).

In sum, Court found that if Plaintiffs presented historical evidence that the NYPD has not imposed serious discipline for misconduct at past protests, "a trier of fact could plausibly infer, from … the City's long history of inaction, that the City maintained a policy of deliberate indifference[.]" 548 F. Supp. 3d at 406.  So if Defendants say it is too burdensome to provide evidence about those well-pled facts, then Defendants should not be allowed to dispute them — particularly given the obvious consistency of those historical facts with the NYPD's current practice.

## CONCLUSION

In the interest of clarity, subject to the discussions above, Plaintiffs are ultimately seeking an order:  (1) order directing production of OLPA/zOLPA forms for all Schedule A protests within no more than 2 weeks (or alternative relief as explained above); (2) compelling responses to *Sow* Interrogatory No. 4; (3) compelling production in response to *Sow* Doc. Req. No. 12 and finding all objections waived; and (4) compelling responses to *Sow* Interrogatory Nos. 10 and 11 (or alternative relief as explained above).  For the reasons discussed in Point I(A), *Sow* Plaintiffs respectfully request the Court direct all this information be produced within 2 weeks of any order.  With depositions starting back up imminently, anything else risks significant prejudice.

Once again, we thank the Court for its continued time and attention.

Respectfully submitted,

/s/
_____

J. Remy Green
  *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

---

[12] Indeed, just as to the protests during the summer of 2020, notwithstanding the City's assurance that "it is only a matter of time before more officers are disciplined for their role in policing the BLM protests" (548 F.Supp.3d at 406 n.9), as of May 2022, despite recommendations for discipline against 145 officers — including recommendations of charges and specifications (the highest available penalty) for 88 officers — a scant 18 officers have faced ***any*** discipline.  See CCRB 2020 Protest Data Snapshot (May 11, 2022).  Of those, ***not a single officer*** has faced charges and specifications.



Page 6 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com