

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**BRIDGET V. HAMILL**
*Senior Counsel*
brhamill@law.nyc.gov
Phone: (212) 356-2662
Fax: (212) 356-1148

**By ECF**

September 29, 2022

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      In Re: *New York City Policing During Summer 2020 Demonstrations*,
           No. 20 Civ. 8924 (CM) (GWG)

Your Honor:

      I am a Senior Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and one of the attorneys representing Defendants in the above referenced matter. Defendants write in response to Plaintiffs' September 21, 2022 Letter Motion to Compel for a conference pursuant to Local Rule 37.2 (Dkt. 551).

      On August 4, 2022, the Court entered a joint Stipulation and Order, granting the parties' request for a 60-day pause of discovery while they seek to mediate a resolution of the injunctive and declaratory claims in the consolidated actions. Dkt. 718. The Stipulation and Order stated, in relevant part:

> 5. For any discovery issues raised before the stay period (except those in Paragraphs 4a-b), nothing prevents any party from seeking to address the dispute consistent with the Court's Individual Rules and Dkt. Nos. 317 and 490. *The parties agree, however, that in furtherance of the good-faith negotiation process they are currently engaged in via mediation, they will work together in good faith to avoid unnecessarily burdening the Court with discovery issues during the stay period.*

<u>Id</u>. at p. 3 (emphasis added). As a threshold matter, Defendants want to note that they believe that the timing of the filing of Plaintiffs' application is not in keeping with the letter or the spirit of that order.

      I.    <u>Defendants Have Agreed In Good Faith to Produce Online Prisoner Arraignment Reports (OLPAs) and Should Be Afforded Adequate Time to Do So</u>

Plaintiffs' Document Request Number 4 seeks "all OLPA (zOLPA) for all putative class members arrested from May 28, 2020 to January 18, 2021, at locations listed in Schedule A." In their written responses to the *Sow* Plaintiffs' discovery requests, Defendants objected to Plaintiffs' request, including because it presented an undue burden. Notwithstanding and without waiving their objections to producing the OLPAs, Defendants opted in good faith and in light of the opportunity provided by the discovery pause to confer further with NYPD about production of the OLPAs. NYPD agreed that they could provide the requested information, but given the real and extremely large burden which remains, it will take six to seven weeks. Although we have agreed to the production, Plaintiffs still filed this application demanding production in two weeks, or alternatively, executive-level affidavits concerning internal Law Department staffing decisions, and "an explanation of why OLPAs were not collected when the Chart represented that they were and/or why this misstatement was not caught" in Defendants' review of the Chart pursuant to the Court's order at Dkt. 541[1].

As an initial matter, as explained in the declaration submitted herewith as Exhibit A, the Online Prisoner Arraignment system (OLPA) is designed such that OLPAs can be retrieved only one at a time, and only using individual arrest numbers. To produce the OLPAs for "all putative class members arrested at locations listed in Schedule A," requires reviewing arrest information for Schedule A locations, then entering each arrest number into the OLPA system, one at a time, in order to retrieve and print each individual report. This is an enormously time-consuming task, even for someone with no other obligations or deadlines – which is not the case here. In any event, Defendants have offered to waive the burden objection and provided a realistic deadline for completing production of these documents.

Second, OLPAs are created for "live arrests" and DATs only and are not created for persons who receive summonses. Therefore, to the extent that Plaintiffs seek to ascertain the identity of their class members, OLPAs will not provide all of the necessary information. As discussed in more detail below, the arrest reports, MAPC reports, summonses, desk appearance tickets (DATs), and Threat, Resistance, or Injury (TRI) reports, already produced are more complete sources of that information.

Plaintiffs argue that they were entitled to production of the OLPAs because the Charts produced by Defendants did not state that they were withholding them. However, shortly after the production of the Charts on April 15, 2022, the *Sow* Plaintiffs contacted Defendants to demand separate responses to their document requests. *See* relevant email chain attached hereto as Exhibit B. On May 6, 2020, Plaintiffs reiterated their demand, and Defendants referred them to the responses on the Chart and requested a meet and confer on any outstanding issues. Plaintiffs rejected Defendants' reference to the responses on the Chart, and their request for a meet and confer, and demanded written responses. Defendants served their objections and responses on May

---

[1] With respect to Plaintiffs' allegations that Defendants did not identify a "misstatement" on the Chart, that is because there was no misstatement. A limited number of OLPAs had been produced as part of arrest-related documents responsive to other requests. As explained in more detail above, after Plaintiffs demanded written responses to their discovery demands, Defendants asserted a burden argument and the current dispute arose.

2

27, 2022, which included an objection as to the burden of identifying "all" putative class members. Dkt. 742, Ex. 2, p. 61. Plaintiffs appear to disregard those developments that occurred after April 15, 2022.

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion with respect to the OLPAs and allow them seven weeks to produce those documents.

II. <u>Defendants Have Produced Documents That Provide the Information Sought by Interrogatory No. 4</u>

Interrogatory No. 4 seeks to have Defendants identify "each individual who was arrested at a location listed in Schedule A," which echoes the Consolidated Plaintiffs' Interrogatory No. 6, "For each Protest Location listed on the attached Schedule A, identify each and every person who NYPD personnel stopped, detained, questioned, or Arrested (including those released and issued summonses or desk appearance tickets, or who were processed "on-line") at or near such Protest Location . . .." The *Sow* Plaintiffs argue that "officers used excessive force and arrested many individuals, and then let them on the street without any charging instrument," and cite the *Hernandez* plaintiffs as examples of such individuals. This eliminates the distinction that the Consolidated Plaintiffs' Interrogatory No. 4 makes between persons "stopped, detained, questioned *or* Arrested [*sic*] (including those released and issued summonses or desk appearance tickets, or who were processed "on-line)," and seemingly expands the category of persons arrested to include persons detained without summonses or charging instruments, for whom no "arrest" record would exist.

With respect to persons who were arrested, Defendants have produced arrest reports, MAPC reports, summonses, desk appearance tickets (DATs) and Threat, Resistance, or Injury (TRI) reports for Schedule A locations. Plaintiffs' deficiency letter to Defendants dated June 28, 2022 (Dkt. 742, Ex. 3, p. 4) asserted that "there should be a record of the arrests requested," without identifying any such record or where it would be.[2] Nevertheless, there are indeed records, in the form of arrest reports, MAPC reports, summonses, DATs, and TRIs, which have been produced for the locations listed on Schedule A, to the extent that they exist. Plaintiffs argue that "not all protest areas are contained within these documents," without identifying the "protest areas" to which they refer.

Plaintiffs argue that they need the information sought to understand the size of the class, identify potential witnesses, effectuate class notice, and other unidentified post class certification purposes. However, as noted above, that information was already produced. It appears from Plaintiffs' motion that what they are really asking is that Defendants review the documents that identify individuals arrested at Schedule A locations and compile a single list of names from those

---

[2] Plaintiffs state that Defendants "conceded that they did not provide identification of every individual arrested at a location in Schedule A in response to Consolidated Interrogatories," and cite Exhibit 2, Defendants' Objections and Responses to Sow Plaintiffs' First Set of Requests for Admission, Supplemental Interrogatories and Requests for Production of Documents to All Defendants, at p. 3-4. It is unclear where the concession is in the information cited.

documents. In a similar context, this Court has stated, "Plaintiffs certainly should do their own work," and that should apply here as well. *See* Transcript of Court Conference of April 12, 2022 at 39:3-4.

Defendants respectfully ask that the Court deny Plaintiffs' motion as to Interrogatory No. 4.

III. <u>Collection of Information Requested Pursuant to the Early Intervention Program Is Burdensome Because the Information Kept in the Ordinary Course of Police Business Is Not About Protests Nor Flagged as Protest-Related</u>

Plaintiffs' Document Request No. 12 seeks "Any and all documents, including electronic communications related to the information collected pursuant to Local Law 68-2020, the Department's Early Intervention Program (which collects information regarding certain declinations to prosecute), as well as Law Department declinations to indemnify or represent officers in civil lawsuits brought from protest arrests alleging a constitutional violation."

As an initial matter, we note that Plaintiffs' Request appears to be an almost verbatim recitation of a statement on NYPD's website: "In addition to the information collected pursuant to Local Law 68-2020, the Department's Early Intervention Program also collects information regarding certain declinations to prosecute as well as Law Department declinations to indemnify or represent officers in civil lawsuits alleging an *unconstitutional stop[s], unconstitutional trespass enforcement, or racial profiling or slurs*." https://www1.nyc.gov/assets/nypd/downloads/pdf/eip/early-interventionn-report-cy-2021.pdf (citing to *Floyd v. City of New York*, 08-cv-1034 (AT), Dkt. 767, Order at 2-5 (S.D.N.Y. June 2, 2020)(emphasis added)). NYPD's statement concerns certain claims that are part of the NYPD federal monitorship, i.e. "unconstitutional stop[s], unconstitutional trespass enforcement, or racial profiling or slurs." Perhaps it is coincidental but it appears to Defendants that Plaintiffs have twisted NYPD's statement into a demand for data concerning "protest arrests." However, information collected in the ordinary course of NYPD's business pursuant to the Early Intervention Program concerns "unconstitutional stop, unconstitutional trespass enforcement, or racial profiling or slurs" – not "protest arrests." It is on this foundation that we make part of our burden objection. In order for NYPD to locate data concerning protest-related incidents, they would have to review the files of each officer for whom data is stored – an extremely comprehensive list – to see if any of the information concerns a protest. Moreover, they would then have to review the respective IAB and CCRB allegations to see whether any were related to a protest.

In addition, Plaintiffs appear to misunderstand the Defendants' objections based on the confidentiality order in place in *Floyd*. That order prohibits the City from disseminating others' confidential information, i.e., "material that became Confidential Material because someone other than the City shared it." *Floyd*, Order Dkt. 650, Order at 7. To the extent Plaintiffs are seeking the data shared with NYPD under the Floyd confidentiality stipulation, we object on that particular ground. In any event, Plaintiffs may have already sought the information they seek from those sources, including the district attorneys' offices or from publicly available sources (*see e.g.* https://www.nydailynews.com/new-york/manhattan/ny-cy-vance-will-not-prosecute-protesters-20200605-koon5gsfjfc5hczw7xdtnt4gci-story.html.) Notwithstanding, the confidentiality

4

stipulation governing the three cases in the NYPD federal monitorships should not be breached even if NYPD were to be able to reasonably discern data responsive to Plaintiffs' request.

In the Chart, Defendants asserted objections to Document Request No. 12 on the grounds that responsive documents may be subject to the attorney-client or work-product privileges. Part of Plaintiffs' request is for "Law Department declinations to indemnify or represent officers in civil lawsuits….." The decision made by this Office as who it will represent or decline to represent and the reasons behind those decisions are protested from disclosure by the attorney-client or work-product privileges. The fact that we share that information with a client agency, even pursuant to the Court Order, does not dilute or extinguish the privileges. [3]

Plaintiffs' focus on the objection Defendants raised with respect to the confidentiality orders in other cases, and on their supposed attempt to treat the Chart as "evolving," obscures the fuller picture. As noted above, Plaintiffs seek information collected pursuant a Court order establishing a program "for systematically receiving, assessing, and acting on information regarding adverse finding on the conduct of police officers involving illegal stops or illegal trespass enforcements." *See Floyd, et al. v. City of New York, et al.*, 08 Civ. 1034 (AT), Dkt. No. 767, attached hereto as Exhibit C. The Order requires NYPD to collect multiple categories of information from the District Attorneys' offices of Bronx, Kings, New York, Queens, and Richmond Counties; the Officers of Court Administration and the U.S. Attorney's Offices for the Eastern and Southern District of New York; and the New York City Law Department, and to enter that information into databases. *Id.* at p. 2-5. The Order does not mention "protests."

However, pursuant to the Court's Order in *Floyd*, the City must track metrics to assess the performance of the Early Intervention Program, and report quarterly on the metrics tracked. The resulting reports are available to the public. To the extent that Document Request No. 12 seeks non-privileged information that allegedly shows "how bad an apple must be before the City will refuse to defend their conduct," these publicly available reports provide some insight, albeit not specifically protest-related as the information collected is not noted or flagged as protest-related.

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion as to Document Request No. 12.

    IV.    <u>Defendants Have Raised a Valid Objection Based on the Burden of Producing Disciplinary Information for the Last Twenty Years, and Plaintiffs Are Not Entitled to an Adverse Inference If It Is Allowed</u>

---

[3] Plaintiffs argue that the Confidentiality orders at issue could prevent Defendants from disclosing documents received from Plaintiffs in the relevant cases, and casually note that such documents "at most, are incidentally covered by these requests." Unfortunately, Defendants are bound by those so-ordered stipulations and do not have the latitude to be so cavalier about disclosure of such documents. However few, Defendants would be obligated to review to identify any they could possibly disclose.

Plaintiffs complain that Defendants have not offered a declaration or affidavit concerning the burden of collecting the information sought by Interrogatories 10 and 11.[4] Defendants have previously provided declarations that speak to the burden of locating and reviewing officer disciplinary information where, as here, the request does not identify specific officers whose histories are sought.[5] Those declarations concerned documents that could not be produced by the dates previously ordered by the Court. As explained in the declaration attached hereto as Exhibit A, the amount of information that would have to be searched and reviewed in order to provide the information sought by Plaintiffs makes the request overly burdensome and not proportional to the needs of this case.

Plaintiffs' request for an adverse inference that the City has not adequately disciplined officers following protest-related excessive force should the Court allow Defendants to assert their burden argument is based on their flawed understanding of the City's objection. The City does not "claim there is a massive amount of responsive material," such that the burden of "parsing" that information is being used as both a sword and a shield. Dkt. 742, p. 5. Rather, Defendants claim that there is simply a massive amount of *material* that would have to be located and reviewed in order to separate the non-responsive from the responsive, before the information that Plaintiffs seek could be produced. Giving an adverse inference where an objection for undue burden was established would eviscerate this as a meaningful objection. That is, a valid objection based on burden would preclude that party from raising a valid defense. Tellingly, Plaintiffs cite no legal support for this argument and we have found none to support their argument. Plaintiffs' request, which would highly prejudice Defendants' and is not based on the Federal Rules of Procedure, should be denied.

Plaintiffs suggest that the Honorable Colleen McMahon's decision on the Motion to Dismiss in these cases supports their need for the information sought in Interrogatory Nos. 10 and 11. They argue that Judge McMahon "explained" that "numerous instances of the NYPD's ignoring CCRB disciplinary recommendations following complaints of police misconduct" are "at issue" in these cases. Dkt. 742 (citing *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 405 (S.D.N.Y. 2021)). However, Judge McMahon's decision did not put the allegations "at issue." Rather, it merely set forth that allegation from the *People's* Complaint. 548 F. Supp. 3d at 405. The decision said that evidence supporting Plaintiffs' allegations of a "long history of inaction" could lead a trier of fact to infer that "the City maintained a policy of deliberate indifference to Plaintiffs' constitutional rights leading up to and during the first few days of the BLM protests." *Id.* at 405. Nothing in the decision suggests the scope of that evidence should be as broad as what Plaintiffs' request.

---

[4] Interrogatory No. 10 seeks the identities, "by Name and Tax ID, each and every officer who was disciplined for using excessive force at a protest over the last 20 years, and identify the date, location and conduct resulting in such discipline." Interrogatory No. 11 seeks "For Officers identified in the interrogatory above (Interrogatory No. 10), [the] nature of the discipline received."

[5] *See, e.g.* Dkt. 459-1; Dkt. 485-1; Dkt. 493-1.

Conclusion

Defendants believe they have asserted proper reasons in support of their objections to the requested Interrogatories and Document Requests cited here.  As such, for the reasons stated herein, defendants respectfully request that the Court deny Plaintiffs' motion on all claims.  As to Document Request No. 4, Defendants respectfully request that the Court grant them seven weeks to produce the OLPAs.

Respectfully submitted,

*Bridget V. Hamill s/*

Bridget V. Hamill
Senior Counsel
Special Federal Litigation Division

Attachments
cc:     ALL COUNSEL (via ECF only)