# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In Re: New York City Policing During Summer 2020
Demonstrations

DECLARATION OF
BRIDGET FITZPATRICK

No. 20-cv-08924(CM) (GWG)

------------------------------------------------------------------------x

BRIDGET FITZPATRICK, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746,

that the following is true and correct:

1.  I am an attorney admitted to practice in the State of New York, Managing Attorney of the

    Civil Litigation Unit ("CLU") of the New York City Police Department ("NYPD").

2.  I submit this declaration at the request of the New York City Law Department, attorneys

    for the Defendants herein, in support of Defendants' opposition to Plaintiffs' Motion to

    Compel responses to various *Sow* Plaintiffs' discovery requests.  (Dkt. 742).

3.  There are certain documents and categories of documents that the NYPD will not be able

    to provide at all, without it being unduly burdensome, described in detail below.

4.  In addition, there are certain documents and categories of documents that the NYPD will

    not be able to provide to the Law Department within the 2-week timeframe Plaintiffs seek

    in their Motion.  (Dkt. 742).

A.  **Documents That Cannot Be Produced Due to Burden**

    a.  **Officer Discipline Related to Excessive Force Allegations**

5.  Plaintiffs have requested information related to NYPD disciplinary and IAB files that date

    back as far as 2002.  As explained in my declarations dated March 22, 2022, (Dkt. No. 461-

    1) (the "March 2022 Declaration"), April 11, 2022, (Dkt. No. 485-1), and April 14, 2022

    (Dkt. No. 493-1), information regarding IAB logs from 2013 forward is stored on the

1

Internal Case Management System (ICMS).  CLU's access to the ICMS database is restricted to three people on the team.  Moreover, CLU can only search ICMS using UMOS tax number or name.  As a result, in order to obtain the tax number or names of officers who received discipline following allegations of excessive force at a protest, CLU would need to send a request to an IAB records officer with search terms based on the information sought, such as "protest" and "excessive force."  The IAB records officer would then conduct a search and provide CLU with any responsive investigatory files.  CLU would then review the closing reports of the file to determine whether any discipline was recommended or received.  This would only yield cases that were investigated by IAB.  In certain cases where charges and specifications were recommended, CLU would then conduct a separate search in the Central Personnel Index system using the name or tax number of the MOS involved to determine the outcome.

6. IAB does not investigate every allegation of UMOS misconduct.  Cases that are not investigated by IAB are tracked to the Chief of Department Investigation and Review Section which sends allegations to either an Investigatory Unit or the ICO of the command involved.  From 2018 forward, these investigations are housed in a database called Internal Case Management Tracking (ICMT).  ICMT is searchable by certain fields including allegation and year.  However, in order to conduct a search by these fields, CLU would have to search by commands, using individual command codes.  Each search would return a list of cases and report relevant information including closing disposition, and provide a link to the case file.  CLU would have to click into and review each case file to determine the outcome and whether discipline was received.

7. Information regarding IAB logs prior to 2013 is stored in NYPD's IAPRO database, which may be searched by UMOS tax number or shield number.  The search functionality of IAPRO is limited and not conducive to producing the information sought.  Moreover, the IAPRO database does not contain case files, only summaries of allegations.  As a result, in order to locate the names of officers charged with excessive force at a protest prior to 2013, CLU would search IAPRO by allegation, i.e., unnecessary force, over a date range.  This search type does not include keyword searches, such as "protest."  This would return a list of incidents that CLU would have to click through and open individually to determine whether an incident was protest-related.  The information provided includes the names and tax numbers of MOS with a narrative of the incident.  If it can be determined from the narrative that the incident involved excessive force, CLU would have to click an additional drop down to determine what the outcome was.  However, the information does not include whether discipline was received or what that discipline was.  In order to find that information, CLU would have to conduct a separate search in the Central Personnel Index system using the name or tax number of the MOS involved.

8.  As further explained in the March 2022 Declaration, IAB does not investigate every allegation of MOS misconduct, and cases not investigated by IAB are tracked to the Chief of Department Investigation and Review Section, and from there they may go to an Investigatory Unit or to the ICO of the command involved.  The IAPRO incident summaries would indicate if a case was referred to the Chief of Department IRS.  However, it is not always the case that the Central Personnel Index system includes the outcome for such cases.  In those instances, CLU would have to find out from the Chief of Department

3

IRS where the investigation was conducted, and ask that Investigatory Unit to provide the paper case file in order to determine what happened.

9. The searches described above would fall well outside of the normal processes in place and available to CLU for identification and retrieval of documents.  The additional steps necessary to identify, retrieve, review, and provide these additional documents are labor-intensive and time-consuming, and searching for and identifying responsive information would take approximately 250 hours.

10. It is still the case that UMOS are providing an increased police presence on the City's streets.  Therefore, UMOS normally assigned to CLU and UMOS on whom CLU relies to obtain information are available on a more limited basis.  As a result, it is apparent that the burden of locating these documents, which may or may not be responsive to Plaintiffs' requests, is not proportionate to the needs of this case.

**B. Documents That Cannot Be Produced Within the Deadline Plaintiffs Request**

11. Defendants have agreed to search for and produce OLPA reports for persons arrested from May 28, 2020 to January 18, 2021, at locations listed in Schedule A.  CLU estimates that the process will take six to seven weeks, and will not be able to produce the documents within two weeks, as Plaintiffs request.

12. The Online Prisoner Arraignment system (OLPA) is designed such that OLPA reports can be retrieved only one at a time, and only using individual arrest numbers.  To produce the OLPAs for "all putative class members arrested at locations listed in Schedule A," requires reviewing MAPC reports, arrest reports, and DATs for Schedule A locations, then entering each arrest number into the OLPA system, one at a time, in order to retrieve and print each

individual report.  This is an enormously time-consuming task, even for someone with no other tasks or deadlines – which is not the case here.

13. In addition, MAPC reports were not created for every location on Schedule A.  For locations where no MAPC report was created, arrest reports and DATs must be reviewed in order to identify arrest numbers to enter into the OLPA system and retrieve OLPA reports.

14. The staffing issues described above in paragraph 10 with respect to the *Sow* Plaintiffs' Interrogatory Nos. 10 and 11 also apply to their Document Request No. 4.  As stated, CLU expects that it will take six to seven weeks to complete production of OLPAs located by the searches described above.

Dated:  September 29, 2022

_Bridget Fitzpatrick_ /s/__

BRIDGET FITZPATRICK