```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In Re New York City Policing During Summer      :      OPINION & ORDER
2020 Demonstrations                                    20 Civ. 8924 (CM) (GWG)
                                                :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

I.       BACKGROUND

This case consists of consolidated lawsuits against the City of New York, the New York City Police Department ("NYPD"), and other defendants (collectively, "the City") based on allegations of improper policing by the NYPD during demonstrations in the summer of 2020. See, e.g., Complaint, filed October 26, 2020 (Docket # 1). Before the Court is the City's application to maintain under seal certain material that formed part of the record filed by the parties in relation to various discovery disputes.[1] The application came about because plaintiffs noted that the City had failed to seek sealing of these documents at the time they were filed. See Pl. Let. at 1. For the reasons stated below, the City's application is granted in part and denied in part.

II.      LAW GOVERNING THE FILING OF MATERIALS UNDER SEAL

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." Newsday LLC v. County of Nassau, 730 F.3d 156, 163 (2d Cir. 2013). The stronger First Amendment right of access applies to judicial proceedings and certain judicial documents afforded this status because of "experience and logic" (i.e., historical practice or whether "public access plays a significant positive role in the

---

[1] See Letter, filed July 13, 2022 (Docket # 655) ("Pl. Let."); Defendants' Motion to Seal, filed Aug. 25, 2022 (Docket # 732) ("Def. Mot."); Plaintiffs' Response, filed Sept. 1, 2022 (Docket # 736) ("Pl. Resp.").

functioning of the particular process in question") or "the extent to which the judicial documents are derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings."  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006) (quotations omitted).  The common law presumption applies to all "judicial documents." Lugosch, 435 F.3d at 119.  In Lugosch, the Second Circuit instructed courts on how to assess an application to file a document under seal.  Id. at 121-24.

First, the Court determines whether the document at issue is a "judicial document."  Id. at 121; accord Olson v. Major League Baseball, 29 F.4th 59, 87-88 (2d Cir. 2022).  A document is "judicial" when it is "relevant to the performance of the judicial function and useful in the judicial process."  United States v. Amodeo, ("Amodeo I"), 44 F.3d 141, 145 (2d Cir. 1995); Olson, 29 F.4th at 87-88.  "A document is . . . relevant to the performance of the judicial function if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019) (internal quotation marks omitted).

That being said, "when a party posits clearly losing arguments, thereby engaging in gamesmanship to publicize documents subject to a protective order, the Court is not required to reflexively find that these documents are judicial."  United States. v. Alshahhi, 2022 WL 2239624, at *18 (E.D.N.Y. June 22, 2022) (documents relating to a "sufficiency of the evidence" argument submitted as part of a motion to dismiss are not judicial documents because there was no possibility that the court would address a "sufficiency of the evidence" argument), reconsideration denied, 2022 WL 3595056 (E.D.N.Y. Aug. 23, 2022).  Thus, where a party files materials designated by an opposing party as confidential and the materials are in support of a

motion or argument that is obviously meritless or could not possibly be considered by the court, the materials will not qualify as judicial documents.

Although the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document," Amodeo I, 44 F.3d at 145, where a document is not filed at all, a court cannot deem it judicial. "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach." United States v. Amodeo, ("Amodeo II"), 71 F.3d 1044, 1050 (2d Cir.1995); accord Liyan He v. Cigna Life Ins. Co. of New York, 2015 WL 4114523, *1 (S.D.N.Y. July 8, 2015). Likewise, the presumption does not apply to documents attached to a motion to unseal. Brown, 929 F.3d at 50, n.33 ("[T]he presumption of public access does not apply to material that is submitted to the court solely so that the court may decide whether that same material must be disclosed in the discovery process or shielded by a Protective Order.") (emphasis in original). It also does not apply to a document contained in a filing that does not "seek any specific relief from the Court." In re Commodity Exch., Inc. Gold Futures & Options Trading Litig., 2020 WL 7342675, at *1 (S.D.N.Y. Dec. 13, 2020).

If a court determines that a document is "judicial" in nature, a presumption of access attaches to the document, and the Court must determine at the second step the "weight" to afford this presumption. Lugosch, 435 F.3d at 119. This determination "flows from the purpose underlying the presumption and the broad variety of documents to be deemed judicial." Amodeo II, 71 F.3d at 1048. Courts determine the weight of the presumption of access afforded to judicial documents on a "continuum" of importance. Id. at 1049. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the

federal courts." Amodeo II, 71 F.3d at 1049; Olson at 87-88. Lugosch expounded on the "continuum" as follows:

> [I]n discussing the continuum along which the strength of the presumption will be measured, we explained that where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches. Amodeo II, 71 F.3d at 1049. Moving down the continuum, away from "matters that directly affect an adjudication" and towards "matters that come within a court's purview solely to insure their irrelevance," we explained that "the weight of the presumption declines." Id. Considering briefly what might fall into the middle of the continuum, we noted that "[o]ne judge has pointed out, for example, that where a district court 'denied the summary judgment motion, essentially postponing a final determination of substantive legal rights,' the public interest in access 'is not as pressing.'" Id. (quoting In re Reporters Comm. for Freedom of the Press, 773 F.2d 1325, 1342 n. 3 (D.C.Cir.1985) (Wright, J., concurring in part and dissenting in part)). At the low end of the continuum, "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Id. at 1050.

Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006).

In Lugosch itself, the documents at issue were submitted by the parties as supporting material in connection with the motion for summary judgment and the presumption was afforded the "highest" weight because the motion was potentially dispositive of the case. 435 F.3d at 123; see also Olson, 29 F.4th at 90 (letter filed in connection with motion for reconsideration that "was a dispositive adjudication of the parties' substantive legal rights" accorded "the strongest presumption of access"). By contrast, where the document is submitted in connection with a discovery motion, rather than a dispositive motion, the presumption of access is entitled to only "modest" weight, because the resolution of a discovery motion does not require the Court to "analyze the merits of the parties' claims or defenses." Royal Park Investments SA/NV v. Deutsche Bank Natl. Tr. Co., 2016 WL 7188795, at *2 (S.D.N.Y. Dec. 7, 2016). Thus, in Brown, the Second Circuit found at the second step that filings related to "motions to compel testimony, to quash trial subpoenae, and to exclude certain deposition testimony" were not given

4

a strong presumption of public access because judicial powers over discovery and evidence are "ancillary to the court's core role in adjudicating a case." 929 F.3d at 50. The Second Circuit also noted that "while a court must still articulate specific and substantial reasons for sealing such material, the reasons usually need not be as compelling as those required to seal summary judgment filings." Id.

Some of the considerations that go into determining whether a document is a "judicial document" may overlap with the question of weight at the second step. Thus, courts have recognized that where documents have "little or no discernable relationship to the resolution" of the issue the court is being called upon to decide, such materials will be deserving of "limited weight" even if they are judicial documents. Banco Santander (Brasil), S.A. v. Am. Airlines, Inc., 2020 WL 4926271, at *3 (E.D.N.Y. Aug. 21, 2020); Oliver Wyman, Inc. v. Eielson, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (material that was "largely collateral to the factual and legal issues central to the resolution of these motions" was entitled to only a "low" presumptive weight).

At the third step, a court "must identify all of the factors that legitimately counsel against disclosure of the judicial document and balance those factors against the weight properly accorded the presumption of access." Mirlis v. Greer, 952 F.3d 51, 59 (2d Cir. 2020). "Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." Lugosch, 435 F.3d at 124. "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Lugosch, 435 F.3d at 120 (quoting Amodeo II, 71 F.3d at 1050). Courts must

consider whether redactions rather than wholesale sealing will satisfy this balancing. Olson, 29 F.4th at 93.

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997). Additionally, the mere fact that the parties agreed to a confidentiality designation does not overcome the presumption of access to judicial documents. Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018) (citing cases).

III. DISCUSSION

The plaintiffs filed the documents at issue under seal because the documents previously had been designated as confidential by the City under a Confidentiality Order issued by the Court. Order, filed Apr. 2, 2021 (Docket # 115) ("Confidentiality Order"). The Confidentiality Order, in conjunction with this Court's Individual Practices, required the party who designated the material as confidential to make an application to the Court to justify its sealing even where the opposing party placed the material before the Court. Id. While the City failed to make any applications at the time the documents were originally made, they have made the application now because of prompting by the plaintiffs. See Pl. Let.; Def. Mot.

The parties have identified six filings, docketed as numbers 369, 506, 549, 586, 594, and 613. Id. We address each next.

A.   Docket # 369

In a letter motion filed by plaintiffs in January 2022 regarding a discovery dispute, which included an accusation that the City was not complying with its discovery obligations (Docket # 369), the plaintiffs filed under seal a transcript of the audio recording of a March 5, 2021, interview of NYPD Chief Terrance Monahan, see Docket # 369-1. While the audio recording

had been designated as confidential under the Confidentiality Order, the City withdrew that designation many months later, in August 2022 (Docket # 726). The City therefore characterizes the dispute as "moot" now that it has agreed that the audio recording is not protected by the Confidentiality Order. Def. Mot. at 2. The City, nevertheless, continues to seek sealing of the transcript of that now-unsealed audio tape interview. Id. It fails to provide the Court with any analysis under the Lugosch three-part test, however. That is, it gives no explanation of why the transcript is not a judicial document. It gives no explanation of its view of the weight of the presumption of judicial access. It also does not give any explanation of considerations that would counter that weight. All it states is that the transcript "does not appear to be verified." Id. The City never explains why the lack of verification is significant and thus we cannot weigh its reasoning against the presumption of access. Accordingly, the Court denies the application to seal this document.

      B.      Docket # 506

# 506 is a letter from plaintiffs in which plaintiffs took issue with the City's late and incomplete compliance with a Court order regarding production of documents and an accompanying privilege log. The letter notes that "there are also massive categories of information missing from the log" and gave as examples two screenshots of fully redacted pages that had been produced to plaintiffs by the City. See # 506 at 2-3 (cited as "DEF_000462544; DEF_000443489-92").

While plaintiffs assert that Lugosch requires that the City seek sealing of these documents, we reject this argument. Pl. Resp. at 2-4. The redacted text does not consist of materials whose contents were ever presented to the Court. Instead, to support its arguments regarding the City's compliance with its discovery obligations, plaintiffs in # 506 pointed to the

fact that the City withheld those two pages in its production.  In other words, the plaintiffs' motion relied exclusively on the existence of redactions, and did not (indeed, could not) rely in any way on the text that was actually redacted since plaintiffs had no knowledge of the content of this text.

The Lugosch analysis applies only to material that is "submitted to the court."  435 F.3d at 123.  Because no party ever submitted to this Court the unredacted text on these two pages, the two pages in their unredacted form do not qualify as "judicial documents" for purposes of the Lugosch analysis.  See generally JMG Improvements, Inc. v. Arch Specialty Ins. Co., 2021 WL 3173022, at *1 (S.D.N.Y. July 26, 2021) (redacted materials never presented to opposing party or the Court fall outside the scope of Lugosch).

C. Docket # 549

# 549 is similar to Docket # 506 in that the Court was never presented with an unredacted version of that filing.  Accordingly, these redactions fall outside the scope of Lugosch as well.

D. Docket ## 586 and 613

# 586 is a letter from plaintiffs requesting a conference to compel production of documents or portions of documents the City had withheld on the grounds they were "not responsive," See # 586.  The allegedly non-responsive material had been redacted from documents produced to the plaintiffs.  When plaintiffs filed # 586 on ECF, they redacted the contents of and references to the material that was actually produced (i.e., the responsive material that was actually produced to plaintiffs) because the City had designated the responsive material as confidential.

In other words, to challenge the City's use of the redactions for nonresponsiveness, # 586 cited examples of the produced/responsive portions of the documents that had been produced to

plaintiffs in an effort to argue that the adjacent redactions for nonresponsiveness were improper. The publicly filed version of the letter, however, redacted <u>all</u> quotations from, descriptions of, or visual depictions of, the documents in the form produced to plaintiffs because the City had designated the material as confidential under the Confidentiality Order.

The City opposed the plaintiffs' application, though it apparently agreed to re-review some of the redacted material. Letter, filed May 16, 2022 (Docket # 605). As was true for #586, plaintiffs' reply to the City's opposition, # 613, contained depictions, quotations, or references to produced/responsive materials, but redacted this material in the publicly-filed version of the document.

The plaintiffs submitted unredacted versions of their letters to the Court via email. ## 586, 613. The unredacted versions showed only the produced/responsive portions of the documents, not the portions that had been withheld as nonresponsive (since the plaintiffs of course did not have such material at that time).

Shortly thereafter, the Court ordered a conference to address the dispute. <u>See</u> Order, filed June 27, 2022 (Docket # 616). The conference took place on June 30, 2022 and concerned the appropriateness of the redactions in the entirety of the challenged production (approximately 15,000 documents), which necessarily included the examples reproduced in #586 and # 613.

During the conference, the Court stated that "what is actually in those documents is irrelevant to anything I'm doing today," Transcript of Proceedings of June 30, 2022, filed July 11, 2022 (Docket # 645) at 7-8, a reference to the responsive materials produced to plaintiffs that had been redacted on the public docket. Without citation, the City argues that because the Court stated that redacted material was irrelevant to its adjudication of the discovery dispute, the "exhibits" — presumably intending to refer to all redacted material in Docket ## 586 and 613,

9

and not merely the exhibits — are "not judicial documents" and should remain sealed.  Def. Mot. at 3.

We reject this argument.  In #586 and # 613, the plaintiffs referred to the redacted/produced documents to directly support their arguments in the dispute over the City's conduct in redacting allegedly nonresponsive material that was adjacent to the responsive material in a particular document.  Even if the Court chose to decide the application without reference to the content of the redacted material, the redacted materials were still submitted to the Court.  As the Second Circuit found in Brown, "the proper inquiry" in determining whether documents are judicial documents, "is whether the documents are relevant to the performance of the judicial function, not whether they were relied upon.  Indeed, decision-makers often find that a great deal of relevant material does not ultimately sway their decision."  929 F.3d at 50.  Thus, it does not matter "whether the document ultimately in fact influences the court's decision."  Id. at 49; accord Olson, 29 F.4th at 89 (documents presented to court were judicial documents even though the court ruled the document's contents were "immaterial").  Even where a court does not "actually rely" on a particular submission, this "does not weaken the presumption of public access."  Shetty v. SG Blocks, Inc., 2020 WL 3183779, *11 (E.D.N.Y. June 15, 2020).  Rather, "[t]he public still has a right to look at the documents underlying [a] decision, even a decision that determines that the documents are not relevant."  Id.  The public has the right to see the document because "even if a court finds some piece of evidence irrelevant to its consideration of a particular motion or to the lawsuit itself, access to such materials assists the public in evaluating the merits of the court's decision."  Olson, 29 F.4th 89; accord Amodeo II, 71 F.3d at 1048 ("The presumption of access is based on the need for federal courts, although independent — indeed, particularly because they are independent — to have a measure of accountability and

for the public to have confidence in the administration of justice."). Thus, the text and the exhibits that were submitted to the Court in unredacted form are judicial documents.[2]

For the second step, the City offers no specific argument regarding the weight that should be afforded these documents. Because they were part of the adjudication by the Court of a dispute regarding the City' conduct of discovery, we view the public's interest in seeing them as carrying "modest" weight. Royal Park Investments SA/NV, 2016 WL 7188795, at *2.

As to the third step, the City make no specific arguments about these documents. Instead, its only showing on this point is a generic statement that "many of the documents that are the subject of this application are internal police documents concerning intelligence gathering and law enforcement techniques." Def. Mot at 5. The City provides no elaboration and makes no effort to specify which documents or which considerations the Court should take with respect to any particular material submitted as part of ## 586 and 613. It does not specify where in plaintiffs' letters or the multi-page attachments "intelligence gathering and law enforcement techniques" are revealed. It gives no explanation whatsoever of the harm that might ensue from public revelation of these matters. We do not understand how the City could expect the Court to make the findings required by case law to justify the sealing. Thus, the Court views the presumption as essentially unopposed on the third Lugosch step and denies the request to seal. That being said, we will permit the City to file these documents in a form redacting the email addresses of City personnel. See generally Olson, 29 F.4th at 93 (urging courts to consider their "ability to use redactions that do not unduly interfere with the public's right to access judicial

---

[2] In keeping with our ruling in section III.B, the only "judicial documents" are the responsive/redacted materials that were actually presented to the Court, not the nonresponsive material that had not up that point been produced to plaintiffs or presented to the Court.

documents in order to address privacy concerns").[3]

  E.  Docket # 594

The entry at # 594 is a response to an application by the City to extend its time to respond to plaintiffs' First Consolidated Requests for Admission. Letter filed June 3, 2022 (Docket # 578) ("# 578"). In that application, the City argued that many of the requests for admission "ask defendants to admit they violated specific policies or certain requirements under various laws" and that such requests "constitute an improper use of Rule 36." # 578 at 2. In #594, the plaintiffs responded to the City's argument by noting that only two of their requests for admissions fit this category — specifically, requests that the City admit that two named offers discharged pepper spray in violation of the NYPD Patrol Guide. Id. At 5. To support their argument that the City should be required to respond to these requests for admission, the plaintiffs noted that the City was "pursuing disciplinary charges against" one of the two named officers for improper use of pepper spray. Id. at 5. In an apparent effort to provide proof that the plaintiffs were accurately representing this point to the Court, plaintiffs attached as an exhibit to Docket # 594 a copy of the actual charge against the officer. See Exhibit A to # 594 (Docket # 594-1). The exhibit had been designated as confidential, and the plaintiffs filed it in redacted form. Id.

---

[3] In light of the low threshold needed to show countervailing considerations justifying sealing of documents relating to a discovery dispute (in particular, as is the case here, documents that relate only tangentially to a discovery dispute), and in an exercise of caution given the (as yet unexplained) suggestion that the documents will reveal sensitive matters, the Court will permit to the City to make a filing within 7 days of the date of this Order in the event it wishes present specific reasons why certain of these documents or portions thereof could properly remain sealed under Lugosch. In the event such a filing is made, the 14-day deadline referenced at the conclusion of this Order will be stayed pending the Court's consideration of the City's additional filing.

On the same day the plaintiffs filed the letter, the Court granted the extension of time that the City requested, without referencing the particular requests for admission involving the pepper spray but rather for more generic reasons, including the "sheer number of requests — 286 of them." Order, filed June 10, 2022 (Docket # 598) ("June 10, 2022 Order").

To justify the sealing of the exhibit (that is, a copy of the disciplinary charge), the City makes the same argument as it did for other documents: namely, that "the Court did not consider the materials at issue in the motion in its decision" and that is therefore "not a judicial document." Def. Mot. at 5. Once again, we reject this argument for the reasons already stated. Even if the Court's ruling did not reference the document at issue, that does not mean the document was not "relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119 (quotations omitted).

As to the second step, the issue raised by the document relates only to the deadline for a response to a request for admissions. Given that a deadline is at issue rather than a substantive discovery dispute (let alone a dispositive application), we view this document as carrying a very low presumptive access weight.

Nevertheless, the City has made no showing as to why this document should not be public. "Even where, as here, the presumption of public access is entitled to relatively little weight, the party seeking to seal a judicial document must provide some basis for the Court to conclude that there are legitimate 'competing considerations.'" Royal Park Investments SA/NV, 2016 WL 7188795, at *3 (citing Lugosch, 435 F.3d at 120). The name of the disciplined officer and the charges brought against him are not confidential inasmuch as they are set forth in the publicly filed version of #594 (at page 5). As already noted, the City's application to seal does not give arguments as to any specific documents but instead refers generally to documents that

13

show "law enforcement techniques" and "intelligence gathering." See Def. Mot. at 5. The disciplinary charge shows neither. Thus, the City has not given the Court any reason to counter even the low presumptive weight afforded this document. Accordingly, it must not be filed under seal.

IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the City' motion to seal. The City shall file unredacted versions of Docket ## 369, 586, 594, and 613 within 14 days of the date of this decision.[4]

Dated: October 14, 2022
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[4] Plaintiffs also request relief with respect to the City's alleged improper designation of documents as confidential generally. Pl. Resp. at 7. This argument, however, does not relate to the application before the Court and thus we do not consider it. Plaintiffs may raise this issue by complying with paragraph 2.A of the Court's Individual Practices.