

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

December 7, 2022

**By Electronic Filing**

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

      **Re:**    *In re: New York City Policing During Summer 2020 Demonstrations,*
               *No. 20-CV-8924*
               This Letter is Related to All Cases

Dear Judge Gorenstein:

      I am counsel for the People of the State of New York and write on behalf of all plaintiffs in these consolidated actions to respectfully request that the Court schedule a conference under Local Rule 37.2 regarding Plaintiffs' intention to seek an order compelling Defendants to identify and produce 30(b)(6) witnesses to testify regarding Defendants' efforts and capabilities to preserve protest video footage and the related intent prong of Rule 37(e)(2) for remedies related to the destruction of relevant evidence.[1] Plaintiffs seek that testimony to investigate the City of New York's admission that it failed to preserve and/or search for video footage that may have captured the protests, despite the City's duty to do so, and overwrote that footage. Defendants have claimed that identifying the necessary witnesses is too burdensome but they should be required to explain their destruction of relevant evidence.

BACKGROUND

      Spoliation and the adequacy of Defendants' efforts to preserve relevant video footage from the 2020-2021 protests have been the subjects of numerous meet-and-confers in these consolidated actions. On March 25, 2021, Plaintiffs served their First Consolidated Sets of Requests for Documents, seeking "all video" relating to the 83 protests identified in an attached Schedule A (the "Protests"). ECF No. 103-1 at 11, 17–18 (Request Nos. 8(h), 14, 15) (together, the Requests). Defendants initially objected to these Requests as not proportional to the needs of the case to obtain *all* videos pertaining to the Protests, including those not involving the named plaintiffs. *See* ECF No. 103-2 at 71–72, 80–82 (Defs.' Responses). To address Defendants'

---

[1] Given the complexity and extensive factual background of this motion, Plaintiffs ask the Court to excuse this overlong letter.

Hon. Gabriel W. Gorenstein
Page 2

concerns, the parties agreed that Defendants could begin their search at least for ARGUS camera footage by using maps of prioritized protests Plaintiffs provided. *See* ECF No. 527. However, Plaintiffs did not narrow or abandon all other video categories they sought. Indeed, Defendants, whether on their own or pursuant to Court order, eventually produced relevant footage in addition to ARGUS footage captured by NYPD helicopters, the Technical Assistance Response Group (TARU), and body-worn cameras (BWC). *See* ECF Nos. 334, 354, 527, 541, 551-2.

Earlier this year, the Court ordered Defendants to complete their production for outstanding document requests by March 18, 2022; that deadline was then extended to April 15. ECF Nos. 410, 453, 462. The Court also ordered Defendants to provide Plaintiffs with "a chart showing for each pending document request . . . a description of responsive documents to which there is no objection to production [and] a description of responsive documents that the City declines to produce (if any), a statement of the objection, and, if the objection [] relates to burden, a detailed description of that burden." ECF No. 410. In the final discovery chart, Defendants represented that all videos responsive to the Requests, except for a specified subset of BWC, had been provided or would be provided by the Court-ordered date (April 15). ECF No. 551-2. The City confirmed that if there is no objection or assertion of burden in the chart, it "will be producing" the documents. 2022-04-12 Tr. at 44:10-18.

Plaintiffs later discovered that Defendants' video production excluded ARGUS footage. Plaintiffs obtained a Court order to compel the production of that footage and a declaration by Defendants if no footage was provided for the plaintiff-provided maps. ECF No. 541. Bridget Fitzpatrick submitted such a declaration, stating that the NYPD *sua sponte* ordered the preservation of "all video from selected cameras from May 28, 2020, until June 8, 2020," but otherwise allowed the remainder to be overwritten. Ex. A ¶¶ 5, 7, 8 ("Fitzpatrick Decl."). While Ms. Fitzpatrick also noted that the City received preservation requests from private attorneys, she did not acknowledge that some of those requests broadly requested that it preserve *all* video footage of the protests on *or after* May 25, 2020. *See* Ex. B (Preservation Letters).

The City failed to comply with these requests for preservation. For example, the July 6, 2020 letters from Rickner PLLC[2] and Cohen&Green P.L.L.C. stated that "Audio and video related to the protests must be preserved," including "NYPD Argus cameras; Body Worn Cameras; dashboard or other cameras attached to police vehicles; [and] surveillance footage collected from any other source." *Id.* The letters defined "protests" to mean "any gathering and demonstration, of any kind, *starting* May 25, 2020, *and going forward*, related to the Black Lives Matter movement, the murders of George Floyd and Breonna Taylor, and violence and discriminatory policing by the NYPD." *Id.* (emphasis added). A June 26, 2020 letter from Jeffrey A. Rothman and July 6 letter from the Legal Aid Society (LAS) similarly defined the footage to be preserved, including all video, *i.e.* "body-worn cameras, surveillance cameras on the street,

---

[2] Ms. Fitzpatrick's declaration did not acknowledge the City's receipt of the Rickner PLLC preservation request though Defendants have separately produced that letter with the City's confirmation of receipt. Defendants (improperly) marked these documents confidential and so they will not be filed but can be submitted upon request.

Hon. Gabriel W. Gorenstein
Page 3

including but not limited, all ARGUS and VIPER cameras (NYPD and NYCHA) and drone footage," of any protest against police brutality on or after May 25, 2020. *Id.*

The revelation of these deficiencies in Defendants' production prompted Plaintiffs to further confer with Defendants about their preservation of ARGUS footage. During that process, Defendants asserted that "there is no list of all [ARGUS] cameras that existed at the time of the 2020 protests" that would allow Plaintiffs to confirm that Defendants preserved all footage from cameras positioned near the Protests, but also refused to provide documents that would detail the cameras that NYPD ordered preserved, asserting attorney-client and attorney work product privileges. Ex. C at 2, 9. Plaintiffs also identified street surveillance cameras positioned on precincts and at intersections from Google maps from which footage was not produced, but Defendants claimed that they could not confirm that those were ARGUS cameras. *Id.*

Concerned that Defendants did not properly preserve and/or search for all responsive video footage and would not (or could not) provide documents to fully explain their preservation efforts, Plaintiffs served notice on Defendants of the 30(b)(6) Topics 23 to 28 ("Topics") on July 7, 2022. Ex. D (Second Consolidated Notice of 30(b)(6) Deposition (the "Notice")). The Topics aim to understand Defendants' preservation process and motives for not retaining certain footage by covering the ways different types of footage controlled by the City are stored and marked for preservation and how the City responds to requests to preserve evidence. *Id.*

On July 27, Plaintiffs requested a meet-and-confer regarding the designation of 30(b)(6) witnesses for the Topics. Defendants did not provide their availability for a meet-and-confer until August 8, and ultimately met with Plaintiffs on August 16.[3] In this meeting, Defendants' counsel Amy Robinson stated that one witness could likely speak to the preservation process for video footage. Although Defendants objected to Topic 23 as overly broad, based on their assertion that one person could not be educated as to how different types of camera footage are collected and electronically stored, they agreed to clarify the number of necessary witnesses. In the interest of efficiency, Plaintiffs indicated that they would consider having witnesses testify to the technical aspects of Topic 23 in written form, if one witness could not be educated on the Topic and the number of necessary witnesses would be burdensome. Finally, Defendants agreed to provide answers to several questions by August 23, including how many types of cameras the City controls (in order to determine the number of Topic 23 witnesses) and the minimum number of individuals with knowledge who can speak to topics involving preservation. The undersigned summarized these agreements by email to Defendants on July 28. Ex. E (M&C Emails) at 15.

After requesting numerous extensions, Defendants finally responded to Plaintiffs on September 23, only to refuse to provide the agreed-upon information or name the necessary witnesses. *Id.* at 12–14. Ms. Robinson wholesale objected to Topics 23 and 24 as "massively overbroad" and "overly burdensome." *Id.* For the first time, Defendants stated that there would be "no way to determine" how many witnesses would be required to speak to the Topics, despite

---

[3] Present for Plaintiffs were Lillian Marquez, Remy Green, Molly Biklen, Alanis McAlmont, Jessica Perry, and Tahanie Aboushi. Amy Robinson and Bridget Hamill appeared on behalf of Defendants and Marykate Acquisto appeared on behalf of the SBA.

Hon. Gabriel W. Gorenstein
Page 4

having had over a month to investigate this information (and the obligation to determine what responsive video footage the City possessed). *Id.* Plaintiffs responded that these objections contradicted Defendants' promises to provide substantive information and declared an impasse if that information was not provided by October 19. *Id.* at 7. Ms. Robinson responded after that deadline, on October 26, only to refute Defendants' agreements and restate their objection to the Topics, claiming that a single witness could not testify to the Topics. *Id.* at 2–5. Ms. Robinson also (incorrectly) claimed that Plaintiffs never specifically requested footage other than ARGUS, TARU, BWC and Aviation and, so, Defendants did not have to search for other footage. *Id.*

Since reaching an impasse, Defendants produced documents relating to NYPD's Aviation unit, which Defendants had represented was complete. They included summaries of flight data that indicate footage *was* recorded of protests relating to the consolidated actions for *eleven* different dates and locations that were *not* produced to Plaintiffs.[4] In a November 7 email, the undersigned asked Defendants to explain this discrepancy. On November 16, having received no response, the undersigned requested a meet-and-confer.[5] Defendants did not respond for over a week. The parties ultimately met on November 29, but Defendants could provide no substantive answers. Plaintiffs granted Defendants two more extensions to definitively state whether they had additional Aviation footage. On December 6, Defendants confirmed that they had additional flight data reports but had produced all Aviation footage in their possession, noting that the NYPD had only requested that footage up to June 8 be preserved.

## ARGUMENT

Defendants should be compelled to identify 30(b)(6) witnesses regarding their efforts and capabilities to preserve Protest video footage. Preliminary evidence of spoliation justifies testimony on the Topics to understand the motives for and extent of Defendants' destruction of relevant evidence, within the bounds of Rule 26, and those Topics are defined with "reasonable particularity" as required by Rule 30(b)(6).

I.     **The Topics Appropriately Seek Witness Testimony Necessary to Determine the Motivations for and Scope of Spoliation**

a.     **There is Preliminary Evidence that Defendants Spoliated Evidence**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). To determine whether evidence which was electronically stored[6] has been spoliated, Federal Rule of Civil Procedure 37(e)(1) instructs a court to examine four elements: whether (1) the information "should have been

---

[4] Defendants marked these documents confidential and so they will not be filed but can be submitted upon request.
[5] Present at the meet-and-confer for Plaintiffs were Lillian Marquez, Marc Arena, Nimra Azmi, and Remy Green, and for Defendants were Joseph Hiraoka Jr., Daniel Braun, and Amy Robinson. Defendants have requested a further meet-and-confer if Plaintiffs desire additional information about why that Aviation footage was not preserved or searched for previously. However, that additional conferral process is not necessary to exhaust the issues raised herein or decide this letter request.
[6] Plaintiffs believe that Defendants electronically store all video footage.

Hon. Gabriel W. Gorenstein
Page 5

preserved in the anticipation or conduct of litigation," (2) the information was lost, (3) the loss occurred because "a party failed to take reasonable steps to preserve it," and (4) the information cannot be "restored or replaced through additional discovery." Fed R. Civ. P. 37(e), advisory committee note, 2015.

The remedy for spoliation depends on whether it was intentional or not. Generally, "district courts possess 'wide discretion' in imposing sanctions under Rule 37." *Shcherbakovskiy v. Da Capo Al Fine, Ltd*., 490 F.3d 130, 135 (2d Cir. 2007). With the minimum showing that the spoliation has prejudiced a party, courts can order attorneys' fees or preclusion of evidence of the spoliated material. Fed. R. Civ. P. 37(e)(1); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, 341 F.R.D. 474, 497–98 (S.D.N.Y. 2022). But additional remedies are available if "[a] party acted with the intent to deprive another party of the information's use in the litigation," Fed. R. Civ. P. 37(e)(2), meaning that the spoliating party "intentionally deleted" ESI or "did not intentionally take any steps to preserve [the information]" or "failed to produce [the ESI]" despite still having possession of it, *Ottoson v. SMBC Leasing & Fin., Inc*., 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017).

Here, elements of spoliation are already evident. Defendants admitted that, past June 8, 2020, they failed to preserve ARGUS and Aviation footage "for another's use as evidence in pending or reasonably foreseeable litigation." *West*, 167 F.3d at 779. Video footage from cameras located near Protests "should have been preserved in the anticipation or conduct of litigation," as the preservation letters the NYPD received contained broad requests to retain such footage, but it was instead overwritten. Fed. R. Civ. P. 37(e); Ex. A ¶¶ 5, 7, 8; Ex. B. Even without the preservation letters, Defendants "should have known that the evidence may be relevant to future litigation" about the Protests and that video footage of the Protests should be preserved. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). Defendants knew that the NYPD's response to the Protests was the subject of a contemporaneous investigation by the OAG and other daily, public scrutiny as to the legality of the Department's tactics and was the subject of 260 notices of claims filed between June 1 and September 4, 2020, which, as a matter of law, trigger a duty to preserve. *See Hughes v City of N.Y.*, No. 18-CV-9380, 2022 WL 3919637, at *2 (S.D.N.Y. Aug. 31, 2022) (notice of claim receipt triggers City's obligation to "place a litigation hold on any of the City's potentially relevant evidence."). And Defendants knew that they have been extensively sued for their problematic policing of other large-scale demonstrations in 2004 and 2011. *See generally* ECF No. 51, 21-cv-322 (Am. Compl.). Indeed, the NYPD's self-initiated effort to preserve *some* footage reflect its understanding that litigation would follow its highly-criticized protest response. *See Taylor v. City of New York*, 293 F.R.D. 601, 610 (S.D.N.Y. 2013) (the duty to preserve video footage attaches at the time of the event when defendant "has knowledge that certain types of incidents tend to trigger litigation").

Despite this duty, Defendants (1) limited their substantive search for footage to only certain types of cameras, ARGUS, Aviation, BWC, and TARU, without noting it in the chart; and (2) failed to take reasonable steps to preserve all other types of relevant footage. The preservation letters identified some of those other types of cameras, calling for footage from

Hon. Gabriel W. Gorenstein
Page 6

dashcam, drone, VIPER, and street surveillance cameras, which Plaintiffs believe includes traffic cameras operated (and publicly broadcasted) by the City's Department of Transportation.[7]

Additionally, Defendants have explicitly admitted that ARGUS footage has been overwritten and "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Defendants may have also overwritten post-June 8 Aviation footage, which recently disclosed reports show was recorded but never produced in this litigation. Thus, the elements of spoliation are likely met and *some* remedy is required, but questions remain as to the extent of footage that was lost, what footage was "lost because [Defendants] failed to take reasonable steps to preserve it," and whether there was an intent to "deprive" Plaintiffs of footage. Fed. R. Civ. P. 37(e). The 30(b)(6) testimony will further ground Plaintiffs' forthcoming Rule 37(e) motion by revealing the *full* extent of, and culpability for, Defendants' spoliation.

### b.  The Evidence of Spoliation Justifies Discovery About Its Severity

To answer these questions as to the severity of Defendants' spoliation, collateral discovery is warranted. Discovery on spoliation, *i.e.* discovery on discovery, is permissible when there exists an "adequate factual basis to justify the discovery," as balanced against "the danger of extending the already costly and time-consuming discovery process *ad infinitum*." *Winfield v. City of New York*, No. 15-CV-05236, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) (cleaned up). Defendants' admissions to overwriting responsive ARGUS footage and narrowing their search for responsive video without indicating (as ordered by the Court) that they were doing so, (2022-02-18 Tr. 99:16- 19), as well as their failure to preserve certain Aviation footage, provide an "adequate factual basis" for the testimony Plaintiffs seek regarding the extent and motives for Defendants' failure to preserve and destruction of evidence. Specifically, Plaintiffs cannot know just how many cameras the City controlled that captured the Protests but were not preserved (*i.e.*, the scope of spoliation) without the testimony of City employees familiar with the preservation process and City video assets as documents with this information apparently do not exist and Defendants' counsel have otherwise refused to provide this information. Witness testimony is also essential to determine whether the relevant protest video footage was overwritten or otherwise destroyed with the "culpable state of mind" that would merit harsher sanctions. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). To determine whether Defendants intended to deprive Plaintiffs of the unpreserved footage, Plaintiffs need to know whether and why Defendants may have deviated from policies and procedures for preservation and storage of footage. *Ottoson*, 268 F. Supp. 3d at 582.

The testimony sought will not unduly delay or burden discovery. By their refusal to determine how many witnesses would be needed to testify to the Topics, Defendants cannot support any claim of undue burden. Indeed, it is a basic preliminary step in discovery to determine what categories of responsive and relevant documents may exist at the outset of the litigation that Defendants should have already performed. In any event, Plaintiffs anticipate that

---

[7] The NYC DOT broadcasts footage from hundreds of traffic cameras throughout the City in real time. *See* N.Y.C. DEP'T OF TRANSPORTATION, *Real Time Traffic Information: Cameras List*, https://nyctmc.org/multiview2.php (last visited Nov. 18, 2022).

Hon. Gabriel W. Gorenstein
Page 7

one witness can be educated to speak both to the processes by which the City ensures evidence is preserved when that duty attaches (Topics 26–28) and what the City did to preserve evidence relating to the Protests (Topic 24–25). As Defendants explained during the conferral process, an individual from the NYPD's Legal Bureau would likely be familiar with these preservation efforts and protocols. Topic 23 seeks information about what relevant footage the City had in its control during the Protests and how it stores and preserves such footage, to define all the steps for preservation that may have been reasonable. Defendants assert that one witness cannot be educated on all types of City-controlled cameras (without saying how many types exist). However, such technical information may be provided via depositions by written question if the number of witnesses proves onerous. In sum, there is an adequate factual basis to believe that spoliation has occurred, justifying the limited 30(b)(6) testimony Plaintiffs seek.

### c. Defendants Cannot Show Good Cause to Curtail Spoliation Discovery

Defendants cannot show good cause for curtailing such discovery when faced with Plaintiffs' need to determine the scope of spoliation. "Once relevance of the information sought or an adequate factual basis for the collateral issue discovery has been shown, the burden falls on the responding party to justify curtailing discovery" by showing "good cause"—the standard for a protective order under Rule 26(c). *Winfield*, 2018 WL 840085, at *6 (citing *Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 8 (S.D.N.Y. 2015)). To meet this standard, the opposing party "must show that disclosure will result in a clearly defined, specific and serious injury." *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16-CIV-1805, 2017 WL 3055098, at *3 (S.D.N.Y. July 18, 2017) (cleaned up). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Moreover, the harm must be significant, not a mere trifle." *Laugier v. City of New York*, No. 13-CV-6171, 2014 WL 6655283, at *1 (S.D.N.Y. Nov. 24, 2014). Defendants' baseless assertion that the Topics are "massively overbroad" and "overly burdensome" fail to meet that burden.

Defendants have asserted that it would be overly burdensome to identify the types and number of cameras controlled by the City, as "there is no one City agency which can provide a list of all of the cameras owned and operated by every City agency." Ex. E at 3. Defendants state that, because "there is no single entity with jurisdiction or oversight over all City-owned and operated cameras," it would be too much work to gather this information. *Id.* That objection is not "clearly defined, specific and serious." *Johnson*, 2017 WL 3055098, at *3. The *City* is the party to this case, not an agency. Moreover, Defendants should have already determined what video footage the City controlled to fulfill their duties to preserve evidence and search for responsive evidence—they should not be allowed to further skirt that responsibility. That is particularly so when the burden Defendants claim appears to be minimal (to the extent it has not already been done), *i.e.*, inquiring to *more than one* City agency regarding the types of cameras within their control that might have captured the on-street Protests.

Defendants' claim that it would be overly burdensome to produce witnesses regarding Topic 23 also fails. Defendants have not attempted to determine just how many witnesses would be needed to explain how the City stores its video footage and have only assumed that these

Hon. Gabriel W. Gorenstein
Page 8

technical witnesses cannot learn about other types of footage in order to testify about their protocols. However, as explained above, if that assertion is true, Plaintiffs would accept this technical testimony unrelated to motive (including explanations as to how long such data is stored and how easy it is to access and preserve) by written question. In an analogous case, a judge in this Court allowed a simultaneous deposition by committee of four witnesses to answer questions about a complex database with numerous fields. *Winfield*, 2018 WL 3055098, at *8. Defendants therefore cannot establish "good cause" to limit or deny discovery on spoliation.

## II.     Plaintiffs Describe the Topics with Reasonable Particularity

Noticed 30(b)(6) topics must be described with "reasonable particularity." Fed. R. Civ. P. 30(b)(6). To determine whether a notice meets the Rule's specificity requirement, a court should consider: "(1) the nature of the topics; (2) whether the descriptions of the topics include examples of questions and clarifying information such as references to specific named policies, documents, incidents, and the like; and (3) whether a reasonable person reading the notice would understand how to prepare for the deposition." *Winfield*, 2018 WL 840085, at *6. The Notice provides sufficient understanding of the information sought.

Topics 24 to 28 are straightforward, seeking testimony regarding the City's policies on preservation and actions to preserve footage related to this litigation. To ensure that Defendants can properly prepare their witnesses, Plaintiffs separated these overlapping topics by the type of event that may trigger preservation, *i.e.*, a notice of claim, discovery during a criminal investigation of an issue that may lead to litigation (like the use of excessive force during an arrest), internal video requests (a Video Retrieval Request) and external preservation requests.

Topic 23 requires the most technical knowledge, regarding the "Document Storage Protocols" for cameras controlled by the City. These storage protocols "refer[] to policies, practices, and technical information, relating to the collection, storage, preservation, replacement (through overwriting), and deletion" of footage. Ex. D. To further explain what this topic might include, Plaintiffs provided examples, including the "hardware capacity," "ordinary deletion schedules," and "[s]taffing and technological capabilities concerning the creation, contemporaneous monitoring, storage, review, preservation, replacement, and deletion of Footage." *Id.* Defendants are already familiar with providing similar testimony with regards to ARGUS footage when it submitted a two-page declaration by Joseph Klubnick of the NYPD's Information Technology Bureau (ITB). ECF No. 527-1. That declaration touches on some of the information Plaintiffs seek to confirm applies to other types of cameras controlled by the City, including whether they, too, "are stored for a period of thirty (30) days after which [the Network Video Records will] automatically overwrite previously recorded video" and can be preserved by members of the ITB. *Id.* ¶¶ 11, 14. Plaintiffs simply seek more information to identify what, if any, barriers existed to preservation to inform whether Defendants took "reasonable" steps to preserve footage and the Notice sets forth those topics with "reasonable particularity."

\* \* \*

Hon. Gabriel W. Gorenstein
Page 9

For these reasons, the Court should order Defendants to identify and produce witnesses who will testify to the Topics forthwith.

Sincerely,

Lillian Marquez, Assistant Attorney General
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-6401
Lillian.Marquez@ag.ny.gov
*Counsel for the People of the State of New York*

CC: All counsel of record