# EXHIBIT C

| | |
|---|---|
| **From:** | Robinson, Amy (LAW) |
| **To:** | Marquez, Lillian; AG-NYPDLitigation; sierrateam@moskovitzlaw.com; sow-legal@blhny.com; paynelitigationteam@nyclu.org; wood@kllflaw.com; rolonlegalteam@aboushi.com; graylegalteam@dwt.com; pbalitigtationteam@schlamstone.com; aquinn@quinnlawny.com; macquisto@quinnlawny.com; smcquade@pittalaw.com |
| **Cc:** | Nelson, Genevieve (Law); Weng, Jenny (Law) |
| **Subject:** | Argus Response |
| **Date:** | Wednesday, August 17, 2022 8:59:06 PM |

**[EXTERNAL]**

Lillian,

In response to Item 5 of the Court Order dated July 26, 2022, the list of Argus and non-Argus cameras selected for preservation is subject to attorney-client and attorney work product privileges and will not be produced.  The content may also be subject to other privileges and list non-relevant cameras.

Regards,
Amy

Amy Robinson
Senior Counsel
Special Federal Litigation Division
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-3518
arobinso@law.nyc.gov

| | |
|---|---|
| **From:** | Robinson, Amy (LAW) |
| **To:** | Marquez, Lillian; AG-NYPDLitigation; sow-legal@blhny.com; sierrateam@moskovitzlaw.com; paynelitigationteam@nyclu.org; wood@kllflaw.com; graylegalteam@dwt.com; rolonlegalteam@aboushi.com; pbalitigtationteam@schlamstone.com; aquinn@quinnlawny.com; macquisto@quinnlawny.com; smcquade@pittalaw.com |
| **Cc:** | Nelson, Genevieve (Law); Weng, Jenny (Law) |
| **Subject:** | Responses to 8-5-22 E-mail |
| **Date:** | Wednesday, August 17, 2022 8:08:40 PM |

**[EXTERNAL]**

Lillian, please find below defendants' responses to the questions posed in your e-mail dated August 5, 2022:

1. I am concerned by Bridget's suggestion in her declaration that she knows what cameras existed at the time of the protests (including those from which footage was not preserved) despite your response below that a list of what cameras existed then do not exist and otherwise cannot be confirmed. (*See* ¶¶ 9-10.) As my previous email of our meet-and-confer agreements noted, if there are any records that provide this information, perhaps whatever Bridget relied upon in writing this declaration, **please provide it on August 17, along with the list of preserved cameras**.

   According to NYPD, no list of the locations of all Argus cameras in 2020 exists. Defendants do not see any language in Ms. Fitzpatrick's declaration that indicates that she knows of the locations of all of the Argus cameras that existed at that time.

2. Bridget's declaration does not appear to account for the preservation notices sent by Ilann M. Maazel and Scout Katovich on June 24, 2020 concerning a June 3, 2020 incident. Please let me know if that was an oversight that you plan on rectifying by updating the declaration or if there's a reason it is not addressed in the declaration.

   Yes, this was an oversight as defendants produced to plaintiffs those preservation notices. Defendants do not believe that it is necessary to submit yet another declaration from Ms. Fitzpatrick to account for this oversight.

3. I am concerned by Defendants' non-response to our requests for a

meet and confer regarding the designation of a 30(b)(6) witness for Topics 23 to 27. The Court requires a response to such requests within 24 hours and it's been over a week. **Please provide a date for that meet and confer on Monday, Aug. 8.**

<span style="color:red">The parties met on this issue on August 16, 2022.</span>

4. Your answer to item 6 in the Order at ECF No. 695 is not entirely responsive. The Order states that Defendants will "[t]ell Plaintiffs whether Defendants searched ARGUS videos preserved as part of criminal investigations as part of their search for footage in response to the Plaintiffs' document requests and provide a date by which they will supplement their production, if necessary." That request echoes the agreement from our meet-and-confer (as copied from my prior email below). Your response states only that the Criminal Section has a screenshot/video of ARGUS footage from June 2, 2020, without any confirmation that they searched for ARGUS evidence for all of the maps were provided, including specifically the July 15 incident we discussed. If you have provided the footage requested, it is unclear where that is. Please clarify whether or not Defendants searched videos that were preserved as a part of criminal investigations, confirm whether or not any footage has subsequently been located and provide the date by which any supplemental production will be provided from searches of criminal investigations.

   <span style="color:red">NYPD has now confirmed that it did not specifically place a preservation hold on Argus footage as part of criminal investigations pertaining to the protests. Accordingly, no search would provide footage pertaining to plaintiffs' document requests on this issue.</span>

5. The last ARGUS drive has a Sheet 6 that's empty – was that intentional? Also, I can have this delivered back to you on Monday, but let me know who I should have our person ask for.

   <span style="color:red">NYPD confirms that Sheet 6 was unintentionally skipped/left blank and there is no missing footage or data.</span>

Regards,
Amy

Amy Robinson
Senior Counsel
Special Federal Litigation Division
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-3518
arobinso@law.nyc.gov

| | |
|---|---|
| **From:** | Marquez, Lillian |
| **To:** | arobinso@law.nyc.gov; aquinn@quinnlawny.com; sow-legal@blhny.com; sierrateam@moskovitzlaw.com; paynelitigationteam@nyclu.org; AG-NYPDLitigation; wood@kllflaw.com; macquisto@quinnlawny.com; graylegalteam@dwt.com; smcquade@pittalaw.com; rolonlegalteam@aboushi.com; pbalitigationteam@schlamstone.com |
| **Cc:** | gnelson@law.nyc.gov; jweng@law.nyc.gov; NYC Law Protest Team |
| **Subject:** | RE: Argus Response |
| **Date:** | Friday, August 5, 2022 4:05:10 PM |

Amy,

Thank you for the additional information and revised affidavit from Bridget. I continue to have a few concerns that not all our meet-and-confer agreements and the Court's orders have been met, as described below.

1. I am concerned by Bridget's suggestion in her declaration that she knows what cameras existed at the time of the protests (including those from which footage was not preserved) despite your response below that a list of what cameras existed then do not exist and otherwise cannot be confirmed. (*See* ¶¶ 9-10.) As my previous email of our meet-and-confer agreements noted, if there are any records that provide this information, perhaps whatever Bridget relied upon in writing this declaration, **please provide it on August 17, along with the list of preserved cameras**.

2. Bridget's declaration does not appear to account for the preservation notices sent by Ilann M. Maazel and Scout Katovich on June 24, 2020 concerning a June 3, 2020 incident. Please let me know if that was an oversight that you plan on rectifying by updating the declaration or if there's a reason it is not addressed in the declaration.

3. I am concerned by Defendants' non-response to our requests for a meet and confer regarding the designation of a 30(b)(6) witness for Topics 23 to 27. The Court requires a response to such requests within 24 hours and it's been over a week. **Please provide a date for that meet and confer on Monday, Aug. 8.**

4. Your answer to item 6 in the Order at ECF No. 695 is not entirely responsive. The Order states that Defendants will "[t]ell Plaintiffs whether Defendants searched ARGUS videos preserved as part of criminal investigations as part of their search for footage in response to the Plaintiffs' document requests and provide a date by which they will supplement their production, if necessary." That request echoes the agreement from our meet-and-confer (as copied from my prior email below). Your response states only that the Criminal Section has a screenshot/video of ARGUS footage from June 2, 2020, without any confirmation that they searched for ARGUS evidence for all of the maps were provided, including specifically the July 15 incident we discussed. If you have provided the footage requested, it is unclear where that is. Please clarify whether or not Defendants searched videos that were preserved as a part of criminal investigations, confirm whether or not any footage has subsequently been located and provide the date by which any supplemental production will be provided from searches of criminal investigations.

5. The last ARGUS drive has a Sheet 6 that's empty – was that intentional? Also, I can

have this delivered back to you on Monday, but let me know who I should have our person ask for.

**Relevant Excerpts from Prior Email:**

3. Determine whether there exists a list of all cameras that existed at the time of the 2020 protests so as to help confirm what cameras were *not* selected for preservation. *If there is a list or any other documents that would provide this information, please provide it.*
   a. As part of this investigation, please advise whether the cameras at the intersections listed in Exhibit C to our June 10 letter are ARGUS or other Defendant-controlled camera and, if so, whether footage from the protests were captured or preserved from these cameras.

   There is no list of all cameras that existed at the time of the 2020 protests. There is no way to tell if the Google map photos of cameras that you provided are ARGUS cameras. The only way to determine if a camera is ARGUS camera is through the ARGUS system.

   a. In this regard, we noted that there may be ARGUS footage that lives with a criminal investigation file (rather than explicitly protest related) like footage referenced in the production related to the July 15, 2020 incident on the Brooklyn Bridge footpath. Were these types of files searched?

   We were unable to reach the Legal Bureau's criminal section to determine if there is ARGUS videos in criminal files, such as the incident involving Chief McMahon, i.e., whether ARGUS videos were requested in such circumstances. We will endeavor to obtain this information after the holiday. However, anything further beyond this inquiry raises privilege, privacy and burden concerns

Thanks,

**Lillian Marquez | Assistant Attorney General**
New York State Office of the Attorney General, Civil Rights Bureau
28 Liberty St., New York, NY  10005
Tel: 212-416-6401 | lillian.marquez@ag.ny.gov | www.ag.ny.gov
Pronouns: She/Her/Hers

---

**From:** secure_mail@secureft.law.nyc.gov <secure_mail@secureft.law.nyc.gov>
**Sent:** Wednesday, August 3, 2022 8:50 PM
**To:** aquinn@quinnlawny.com; sow-legal@blhny.com; sierrateam@moskovitzlaw.com; paynelitigationteam@nyclu.org; AG-NYPDLitigation <AG.NYPDLitigation@ag.ny.gov>; wood@kllflaw.com; macquisto@quinnlawny.com; graylegalteam@dwt.com; smcquade@pittalaw.com; rolonlegalteam@aboushi.com; pbalitigationteam@schlamstone.com
**Cc:** gnelson@law.nyc.gov; jweng@law.nyc.gov

**Subject:** Argus Response

**[EXTERNAL]**



# arobinso@law.nyc.gov sent you a secure message

Access message

This message requires that you sign in to access the message and any file attachments.

| | |
|---|---|
| **From:** | Robinson, Amy (LAW) |
| **To:** | Marquez, Lillian; AG-NYPDLitigation; Payne Litigation Team; sierrateam@moskovitzlaw.com; "Sow-Legal"; rolonlegalteam@aboushi.com; GrayLegalTeam@dwt.com; Hernandez Team |
| **Cc:** | Nelson, Genevieve (Law); Weng, Jenny (Law) |
| **Subject:** | ARGUS Responses |
| **Date:** | Friday, July 1, 2022 6:07:58 PM |

**[EXTERNAL]**

Lillian,

Thank you for your comments. After conferring the NYPD, the answers to the questions you posed are as follows:

1. Determine a date by which you can provide ARGUS footage for the nine protest maps sent earlier this year.

   Production of footage for seven of the nine additional maps will take approximately three weeks. The other two maps, Union Square and City Hall/Brooklyn Bridge do not have time frames on them and so cannot be included in the estimate at this time. Please provide time frames for those maps.

2. Determine whether there exists a list of the cameras (preferably by location) that were selected for preservation pursuant to the notice from the NYPD Legal Bureau's notice to preserve referenced by Ms. Fitzpatrick in her declaration. If so, or if there is any other document(s) that would provide this information, please provide it.

   Defendants expect to be able to give you a response to this inquiry sometime after the holiday.

3. Determine whether there exists a list of all cameras that existed at the time of the 2020 protests so as to help confirm what cameras were *not* selected for preservation. If there is a list or any other documents that would provide this information, please provide it.
   a. As part of this investigation, please advise whether the cameras at the intersections listed in Exhibit C to our June 10 letter are ARGUS or other Defendant-controlled camera and, if so, whether footage from the protests were captured or preserved from these cameras.

   There is no list of all cameras that existed at the time of the 2020 protests. There is no way to tell if the Google map photos of cameras that you provided are ARGUS cameras. The only way to determine if a camera is ARGUS camera is through the ARGUS system.

4. Confirm the nature of the search for ARGUS footage in response to the Court's order, including the search you described in you 5/27 email as follows: "The NYPD has since performed a search for any other ARGUS that may have been saved by request outside of the preservation dates but during the Schedule A protest period. This search yielded negative results."

> The nature of the search for ARGUS is covered in Bridget Fitzpatrick's June 8, 2020, declaration. As to your second inquiry, in response to becoming aware of the ARGUS footage for a particular location that was outside the preservation period, the NYPD conducted a search for other preservation requests outside of the preservation period, which yielded negative results. That request was made using an NYPD form which went directly to LMSI in the normal course of business. The NYPD searched to see if any other requests using this form were generated for additional footage pertaining to the protests. That search yielded negative results.

   a. In this regard, we noted that there may be ARGUS footage that lives with a criminal investigation file (rather than explicitly protest related) like footage referenced in the production related to the July 15, 2020 incident on the Brooklyn Bridge footpath. Were these types of files searched?

   > We were unable to reach the Legal Bureau's criminal section to determine if there is ARGUS videos in criminal files, such as the incident involving Chief McMahon, i.e., whether ARGUS videos were requested in such circumstances. We will endeavor to obtain this information after the holiday. However, anything further beyond this inquiry raises privilege, privacy and burden concerns

5. Determine if there are documents setting forth how preservation requests are handled, including any protocols for determining what to preserve and the mechanical process. For instance,
   a. According to Mr. Klubnick's declaration, "[a] request to preserve video beyond the thirty (30) day retention may be made by the Deputy Commissioner of Counterterrorism, the Deputy Commissioner of Legal Matters, or their respective authorized designees" – who are those designees and in what form can that request be made?

   > Defendants will formally produce the preservation request made by DCLM Hart to ITB.

   b. He also said, "To effectuate this preservation request, members of ITB worked with Lower Manhattan Security Initiative ("LMSI") and the Department's vendor to identify the ARGUS system cameras at the specified locations and archive all ARGUS system camera footage recorded from May 28, 2020 through June 8, 2020 from those cameras."
      i. Our request for protocol documents would include anything that clarifies: (a) the process through which relevant ARGUS cameras are identified;
      ii. How footage is archived (is this by the press of a button, by a sole assigned person?); and
      iii. What limitations may exist to archiving footage – for instance, you indicated that there might be storage space concerns.
   c. As part of this inquiry, please identify who's who – who can fulfill preservation requests, who would know about this entire process, who monitors ARGUS videos, etc.

As to (b)(i), as stated at the meet and confer, ARGUS cameras for the maps provided by plaintiffs were identified based on conversations that PD Legal had with various commands involved in the protests and from MAPC spreadsheets looking at where arrests were being made. As to (b)(ii), footage is stored on a server for 30 days then overwritten pursuant to a retention plan.  Footage is archived only under circumstances when it is requested within the 30-day retention period and it is copied to a disc and provided.  Any NYPD officer can request ARGUS footage by making a request through the Legal Bureau who then in turn uses the NYPD form discussed in response to No. 4 above.  Defendants do not understand what you mean by, "who monitors ARGUS videos. . ." As the (b)(iii), Argus footage is stored on a server do to its size.  As to (c), any officer can make a preservation request.  We do not understand what is meant by, "who monitors ARGUS videos, etc."

6. Provide in writing the reasons why Defendants did not preserve any other ARGUS footage than what was provided on May 27. In doing so, please address Plaintiffs' notes that language in the preservation requests did not have an end to the relevant time period, that ARGUS cameras appeared to have been monitored contemporaneously such that relevant footage could be timely identified and preserved, and that NYPD Legal asked for a different preservation period for TARU videos (to June 20).

    Again, we do not understand what you mean when you say, ". . . that ARGUS cameras appeared to have been monitored contemporaneously."  With respect to TARU, kindly provide the preservation request that you are referring to.

7. Confirm that Defendants have produced to Plaintiffs all Notices of Claim, preservation requests, and notices to preserve (from Defendants) that pertain to any of the Protests. If any of these are missing from the production, please produce those documents. You noted that the June 28 preservation request may have been a phone call; if it was, please identify the requester and date of the call.

    Defendants need to confirm that a request was made for all notices of claim and whether defendants produced notices of claim in response to that request.  The June 28, 2020, request was not a phone call.  The lieutenant actually completed an NYPD form to make the request which went directly to LMSI.

8. Confirm that (a) all relevant ARGUS footage of the protests that exists has been produced to Plaintiffs and, conversely that (b) if we did not receive footage from a particular ARGUS camera in the production to date, that means it has been destroyed.

    Defendant produced relevant ARGUS footage corresponding with the plaintiff-provided maps as laid out in the Fitzpatrick Declaration and will provide relevant footage for the additional seven of nine maps to the extent possible as per the parties' agreement.  As to the two other maps, we await information from plaintiffs.  ARGUS camera footage is not destroyed; it is overwritten in 30 days pursuant to the retention plan.

9. Provide a revised declaration from Ms. Fitzpatrick that conforms to the Court's order, i.e. states what camera footage has not been provided but which would have been responsive to our maps and provide a reason why—whether it was not preserved or not working. Please confirm how many cameras fall into each category.

   At no time during the meet and confer was there an agreement to provide a revised declaration. The agreement was to provide the protocol that was used to select cameras during the preservation period, which has been provided. However, defendants will supplement the declaration with respect to the nine maps.

In addition, we discussed Plaintiffs' position that Defendants may have spoliated ARGUS footage and may seek depositions of persons with knowledge regarding that issue, but held further discussion in abeyance pending the above-mentioned inquiries and appropriate discovery about exactly what happened (such as depositions).

   There was no agreement pertaining to plaintiffs' taking depositions of persons with respect to any spoliation claims plaintiffs believe they have.

Regards,
Amy

Amy Robinson
Senior Counsel
Special Federal Litigation Division
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-3518
arobinso@law.nyc.gov