# EXHIBIT E

| | |
|---|---|
| **From:** | Robinson, Amy (LAW) |
| **To:** | Marquez, Lillian; remy |
| **Cc:** | aquinn@quinnlawny.com; sow-legal@blhny.com; sierrateam@moskovitzlaw.com; paynelitigationteam@nyclu.org; AG-NYPDLitigation; wood@kllflaw.com; macquisto@quinnlawny.com; graylegalteam@dwt.com; smcquade@pittalaw.com; rolonlegalteam@aboushi.com; pbalitigationteam@schlamstone.com; Nelson, Genevieve (Law); Weng, Jenny (Law); NYC Law Protest Team |
| **Subject:** | RE: [EXTERNAL] M&C Footage 30b6 Summary |
| **Date:** | Wednesday, October 26, 2022 5:42:04 PM |

Hi Lillian,

Defendant's most recent responses are in purple below:

First:  It appears Defendants are walking back their commitments on a large number of our agreements.  Specifically, as set out in Lillian's initial email, the City explicitly agreed to "Confirm the types of cameras controlled by the City at the time of the 2020 protests," yet now you say the City is refusing to do so.  Is there a reason the City's position is different from what it committed to at the meet and confer?

Defendants are not walking back anything said during the meet and confer. What you are quoting is Lillian's request, and in response to this request, we objected.  As you will recall, at the beginning of the meet and confer, defendants objected to the Notice, as written, in its entirety on burden and proportionality grounds.  It was not agreed that defendants would confirm every type of camera controlled by the City at the time of the Summer 2020 Protests. In fact what was said was that the parties met and conferred extensively and agreed to produce videos based on the agreements during meet and confers.  At which point it was stated that plaintiffs wanted to further explore all cameras that the City has under its control—which, as stated in defendants' prior response, requires a formal request.  However, even if a formal request is made, the objections raised by defendants with respect to proportionality and burden remain.

It is inaccurate to say that this was a mere request. I confirmed at the end of the meet and confer that you would be providing me with the types/number of cameras controlled by the City by August 23. And in my email on August 17 I confirmed to you (without objection until October 4) that this was something you "agreed to work on and provide by August 23." The City raised at the meet-and-confer a burden argument regarding Topic 23, which requires that the witness be able to testify to Document Storage Protocols for Footage (defined as all camera footage that is under the control of the City by or through its agencies concerning the Summer 2020 Protests and/or the NYPD, including, but not limited to footage filmed by NYPD ARGUS cameras, Body Worn Cameras, Aviation, TARU, Dashboard, cameras affixed onto or in precinct buildings, police vehicles, or other City property), but could not say what cameras fall within the definition of Footage. This information should have been provided at the meeting to explain the City's claim of burden but, as it was not, it was agreed that the City would provide it by August 23. Defendants did not express confusion at the time as to what "type" of cameras mean, but to clarify: provide the categories of cameras controlled by the City that may have captured footage of any of the Summer 2020 Protests (e.g., ARGUS, TARU, etc.).
The types of cameras are also, of course, relevant to issues of spoliation and the adequacy of Defendants' search for video. As we discussed at the meet-and-confer, Plaintiffs never narrowed their requests for relevant footage but rather helped Defendants prioritize their search for ARGUS footage. I stated in my December 2021 email providing access to the ARGUS maps that Plaintiffs "do not waive our objections to Defendants' previous responses

to our requests for protest-related video footage." In their revised responses to Plaintiffs' Consolidated Request 8h, 14, 15, Defendants stated that all responsive videos had been provided or would be provided by the Court-ordered date except that they asserted burden arguments relating only to BWC. Any other objections to producing non-ARGUS video footage have been waived. Defendants now confirm that their search for footage was limited to TARU, BWC, Aviation, and ARGUS, but cannot say what other cameras were in the City's control that may have captured responsive footage. This is a subject that can and must be explored through deposition of the proper 30b6 witness(es) to determine what City-controlled cameras should have been inspected for responsive Footage. But Defendants must first understand what universe of cameras are at issue to identify the proper witnesses and/or adequately prepare their witnesses.

If Defendants refuse to provide this basic information by next Wednesday, we cannot adequately assess its burden assertion and Defendants cannot identify appropriate witnesses and, as such, the parties will be at an impasse.

It was simply not agreed to at any time that defendants would provide all of the types/number of cameras controlled by the City. Upon information and belief, there is no single entity with jurisdiction or oversight over all City-owned and operated cameras. Thus, there is no one City agency which can provide a list of all of the cameras owned and operated by every City agency.  The parties met and conferred extensively on the footage that would be produced in the consolidated cases, which included Argus, TARU, BWC and Aviation. To our knowledge, at no time was dashboard footage or precinct footage or all footage owned and operated by the City of New York requested or even raised at any meet and confer.  Further, defendants have waived no objections to the production of video footage owned and operated by every City agency, including burden and proportionality

Second:  It also appears all of your answers pre-suppose that the City has a different preservation process for each possible type of document.  That is, while you say "Just taking into consideration the NYPD-owned cameras would necessitate multiple 30(b)(6) witnesses," as we discussed at the meet and confer, that is only true if the City has an entirely different preservation process for each kind of camera -- which strikes me as (1) unlikely and (2) possibly an independent basis for a spoliation motion.  To explain a little, we're looking to depose someone who can walk us through what happens when the City gets a preservation demand that explicitly asks to preserve all video footage the City has -- and who that person would speak to.  If what you're saying is that it is not even possible to have someone figure that initial answer out, we probably need that confirmed in a declaration.

Put another way, before we move on these impasses (including the brand new, never moved on, and therefore waived objection we can substitute depositions with interrogatories), can you confirm that the City is really saying "we cannot find a person[*] or reasonable number of people who can answer how we preserve all video footage when legally required and answer reasonable follow up questions"?

Every City agency has its own preservation procedures. One person cannot speak to the preservation procedures for all City agencies.  In fact, no one witness should be required to testify as to preservation outside of their own agency—therein lies the burden.  Further, as plaintiffs did not make a formal request in the Consolidated Cases for all "types of cameras controlled by the City at the time of the protests," seeking a deponent or deponents to testify as to this request is premature not to mention that any response to such a request, as stated in defendants' prior response, would be subject to objections, including that determining every City agency which owns cameras and the procedures for preserving the footage from those cameras, is overly burdensome and not proportional to the to the needs of this case.  Further, I


do not understand your meaning when you state above, "including the brand new, never moved on, and therefore waived objection we can substitute depositions with interrogatories," and so therefore I cannot address the statement.

Again, our requests asked for video recordings concerning any of the Protests in any of the Defendants' control. This does not require a separate request for the types of cameras; rather, it was Defendants' duty to ascertain what footage was in its possession or control. It appears they did not do that are unwilling to do so now. As Remy noted, Defendants are making assumptions as to what Footage remains unsearched for—and the number of different agency cameras may be implicated—in lieu of confirming that information. Defendants repeatedly asked for extensions of time to get this information and instead of using it, assert various objections that could have been made at the meet-and-confer.

If Defendants refuse to provide this basic information by next Wednesday, we cannot adequately assess Defendants' burden assertion and the parties will be at an impasse.
Please see response above regarding all video footage owned and operated by the City. Defendants do not understand Remy's note.
We would ask for answers to these questions by Friday -- or we will just have to assume the City's position (1) has shifted since the meet and confer because the City had not in fact looked into the issue beforehand and (2) is genuinely that they cannot find a person to answer basic and general questions about what happens when the duty to preserve is triggered, and move on those assumptions.  And we will also assume we have an impasse on all the above, since, for the reasons we discussed at the meet and confer, these answers -- and a limited number of written questions -- are simply not adequate to explore both the intent element and scope of harm related to the undisputed spoliation at issue.

With respect to item (1), none of defendants' positions have shifted since the meet and confer.  Further, we have addressed item number (2) above.  I do not understand the last sentence of this paragraph.  Thus, I cannot respond to this statement.

At the meet-and-confer, Defendants asserted that potentially only one witness (possibly already noticed) would be needed to speak to the preservation process. Now Defendants argue that it is impossible to know the number of people who can adequately speak to this process.

At the meet-and-confer, Defendants stated that they would clarify the number of witnesses who would be needed to testify regarding Topic 23. Regarding only this Topic, Plaintiffs offered that, should there be a burdensome number of witnesses that Defendants identify, we would consider having the witnesses testify by written question. But now Defendants refuse even to state a number, claiming that "there is simply no telling how many witnesses from across all City agencies" would be needed to testify to the Topic.

Defendants' position that they cannot even investigate what Footage the City may have had or who can speak to the process of responding to Protest-related preservation letters cannot support an argument of burden. Please provide this promised information by Wednesday, October 19 at 6 pm or we will consider the parties to be at an impasse

Defendants never asserted that one witness could cover the preservation process of the City when the Comptroller's Office receives a notice of claim or with respect to the preservation processes of the NYPD as to various types of video footage.  However, for the reason stated

above, defendants cannot provide a witness to testify as to all video footage owned and operated by the City.

Regards,
Amy

---

**From:** Marquez, Lillian <Lillian.Marquez@ag.ny.gov>
**Sent:** Friday, October 14, 2022 8:19 AM
**To:** Robinson, Amy (LAW) <arobinso@law.nyc.gov>; remy <remy@femmelaw.com>
**Cc:** aquinn@quinnlawny.com; sow-legal@blhny.com; sierrateam@moskovitzlaw.com; paynelitigationteam@nyclu.org; AG-NYPDLitigation <AG.NYPDLitigation@ag.ny.gov>; wood@kllflaw.com; macquisto@quinnlawny.com; graylegalteam@dwt.com; smcquade@pittalaw.com; rolonlegalteam@aboushi.com; pbalitigationteam@schlamstone.com; Nelson, Genevieve (Law) <gnelson@law.nyc.gov>; Weng, Jenny (Law) <jweng@law.nyc.gov>; NYC Law Protest Team <NYCLawProtestTeam@law.nyc.gov>
**Subject:** RE: [EXTERNAL] M&C Footage 30b6 Summary

Hi Amy,

Plaintiffs' responses are in blue below:

First:  It appears Defendants are walking back their commitments on a large number of our agreements.  Specifically, as set out in Lillian's initial email, the City explicitly agreed to "Confirm the types of cameras controlled by the City at the time of the 2020 protests," yet now you say the City is refusing to do so.  Is there a reason the City's position is different from what it committed to at the meet and confer?

Defendants are not walking back anything said during the meet and confer. What you are quoting is Lillian's request, and in response to this request, we objected.  As you will recall, at the beginning of the meet and confer, defendants objected to the Notice, as written, in its entirety on burden and proportionality grounds.  It was not agreed that defendants would confirm every type of camera controlled by the City at the time of the Summer 2020 Protests. In fact what was said was that the parties met and conferred extensively and agreed to produce videos based on the agreements during meet and confers.  At which point it was stated that plaintiffs wanted to further explore all cameras that the City has under its control—which, as stated in defendants' prior response, requires a formal request.  However, even if a formal request is made, the objections raised by defendants with respect to proportionality and burden remain.

It is inaccurate to say that this was a mere request. I confirmed at the end of the meet and confer that you would be providing me with the types/number of cameras controlled by the City by August 23. And in my email on August 17 I confirmed to you (without objection until October 4) that this was something you "agreed to work on and provide by August 23." The City raised at the meet-and-confer a burden argument regarding Topic 23, which requires that the witness be able to testify to Document Storage Protocols for Footage (defined as all camera footage that is under the control of the City by or through its agencies concerning the Summer 2020 Protests and/or the NYPD, including, but not limited to footage filmed by

NYPD ARGUS cameras, Body Worn Cameras, Aviation, TARU, Dashboard, cameras affixed onto or in precinct buildings, police vehicles, or other City property), but could not say what cameras fall within the definition of Footage. This information should have been provided at the meeting to explain the City's claim of burden but, as it was not, it was agreed that the City would provide it by August 23. Defendants did not express confusion at the time as to what "type" of cameras mean, but to clarify: provide the categories of cameras controlled by the City that may have captured footage of any of the Summer 2020 Protests (e.g., ARGUS, TARU, etc.).

The types of cameras are also, of course, relevant to issues of spoliation and the adequacy of Defendants' search for video. As we discussed at the meet-and-confer, Plaintiffs never narrowed their requests for relevant footage but rather helped Defendants prioritize their search for ARGUS footage. I stated in my December 2021 email providing access to the ARGUS maps that Plaintiffs "do not waive our objections to Defendants' previous responses to our requests for protest-related video footage." In their revised responses to Plaintiffs' Consolidated Request 8h, 14, 15, Defendants stated that all responsive videos had been provided or would be provided by the Court-ordered date except that they asserted burden arguments relating only to BWC. Any other objections to producing non-ARGUS video footage have been waived. Defendants now confirm that their search for footage was limited to TARU, BWC, Aviation, and ARGUS, but cannot say what other cameras were in the City's control that may have captured responsive footage. This is a subject that can and must be explored through deposition of the proper 30b6 witness(es) to determine what City-controlled cameras should have been inspected for responsive Footage. But Defendants must first understand what universe of cameras are at issue to identify the proper witnesses and/or adequately prepare their witnesses.

If Defendants refuse to provide this basic information by next Wednesday, we cannot adequately assess its burden assertion and Defendants cannot identify appropriate witnesses and, as such, the parties will be at an impasse.

Second: It also appears all of your answers pre-suppose that the City has a different preservation process for each possible type of document. That is, while you say "Just taking into consideration the NYPD-owned cameras would necessitate multiple 30(b)(6) witnesses," as we discussed at the meet and confer, that is only true if the City has an entirely different preservation process for each kind of camera -- which strikes me as (1) unlikely and (2) possibly an independent basis for a spoliation motion. To explain a little, we're looking to depose someone who can walk us through what happens when the City gets a preservation demand that explicitly asks to preserve all video footage the City has -- and who that person would speak to. If what you're saying is that it is not even possible to have someone figure that initial answer out, we probably need that confirmed in a declaration.

Put another way, before we move on these impasses (including the brand new, never moved on, and therefore waived objection we can substitute depositions with interrogatories), can you confirm that the City is really saying "we cannot find a person[*] or reasonable number of people who can answer how we preserve all video footage when legally required and answer reasonable follow up questions"?

Every City agency has its own preservation procedures. One person cannot speak to the preservation procedures for all City agencies. In fact, no one witness should be required to testify as to preservation outside of their own agency—therein lies the burden. Further, as plaintiffs did not make a formal request in the Consolidated Cases for all "types of cameras controlled by the City at the time of the protests," seeking a deponent or deponents to testify as to this request is premature not to mention that any response to such a request, as stated in

defendants' prior response, would be subject to objections, including that determining every City agency which owns cameras and the procedures for preserving the footage from those cameras, is overly burdensome and not proportional to the to the needs of this case.  Further, I do not understand your meaning when you state above, "including the brand new, never moved on, and therefore waived objection we can substitute depositions with interrogatories," and so therefore I cannot address the statement.

Again, our requests asked for video recordings concerning any of the Protests in any of the Defendants' control. This does not require a separate request for the types of cameras; rather, it was Defendants' duty to ascertain what footage was in its possession or control. It appears they did not do that are unwilling to do so now. As Remy noted, Defendants are making assumptions as to what Footage remains unsearched for—and the number of different agency cameras may be implicated—in lieu of confirming that information. Defendants repeatedly asked for extensions of time to get this information and instead of using it, assert various objections that could have been made at the meet-and-confer.

If Defendants refuse to provide this basic information by next Wednesday, we cannot adequately assess Defendants' burden assertion and the parties will be at an impasse.
We would ask for answers to these questions by Friday -- or we will just have to assume the City's position (1) has shifted since the meet and confer because the City had not in fact looked into the issue beforehand and (2) is genuinely that they cannot find a person to answer basic and general questions about what happens when the duty to preserve is triggered, and move on those assumptions.  And we will also assume we have an impasse on all the above, since, for the reasons we discussed at the meet and confer, these answers -- and a limited number of written questions -- are simply not adequate to explore both the intent element and scope of harm related to the undisputed spoliation at issue.

With respect to item (1), none of defendants' positions have shifted since the meet and confer.  Further, we have addressed item number (2) above.  I do not understand the last sentence of this paragraph.  Thus, I cannot respond to this statement.

At the meet-and-confer, Defendants asserted that potentially only one witness (possibly already noticed) would be needed to speak to the preservation process. Now Defendants argue that it is impossible to know the number of people who can adequately speak to this process.

At the meet-and-confer, Defendants stated that they would clarify the number of witnesses who would be needed to testify regarding Topic 23. Regarding only this Topic, Plaintiffs offered that, should there be a burdensome number of witnesses that Defendants identify, we would consider having the witnesses testify by written question. But now Defendants refuse even to state a number, claiming that "there is simply no telling how many witnesses from across all City agencies" would be needed to testify to the Topic.

Defendants' position that they cannot even investigate what Footage the City may have had or who can speak to the process of responding to Protest-related preservation letters cannot support an argument of burden. Please provide this promised information by Wednesday, October 19 at 6 pm or we will consider the parties to be at an impasse.

Regards,

**Lillian Marquez | Assistant Attorney General**
New York State Office of the Attorney General, Civil Rights Bureau

28 Liberty St., New York, NY 10005
Tel: 212-416-6401 | lillian.marquez@ag.ny.gov | www.ag.ny.gov
Pronouns: She/Her/Hers

---

**From:** Robinson, Amy (LAW) <arobinso@law.nyc.gov>
**Sent:** Tuesday, October 4, 2022 4:43 PM
**To:** remy <remy@femmelaw.com>
**Cc:** Marquez, Lillian <Lillian.Marquez@ag.ny.gov>; aquinn@quinnlawny.com; sow-legal@blhny.com; sierrateam@moskovitzlaw.com; paynelitigationteam@nyclu.org; AG-NYPDLitigation <AG.NYPDLitigation@ag.ny.gov>; wood@kllflaw.com; macquisto@quinnlawny.com; graylegalteam@dwt.com; smcquade@pittalaw.com; rolonlegalteam@aboushi.com; pbalitigationteam@schlamstone.com; Nelson, Genevieve (Law) <gnelson@law.nyc.gov>; Weng, Jenny (Law) <jweng@law.nyc.gov>; NYC Law Protest Team <NYCLawProtestTeam@law.nyc.gov>
**Subject:** RE: [EXTERNAL] M&C Footage 30b6 Summary

Remy,

Defendants' responses are in red.

First: It appears Defendants are walking back their commitments on a large number of our agreements. Specifically, as set out in Lillian's initial email, the City explicitly agreed to "Confirm the types of cameras controlled by the City at the time of the 2020 protests," yet now you say the City is refusing to do so. Is there a reason the City's position is different from what it committed to at the meet and confer?

Defendants are not walking back anything said during the meet and confer. What you are quoting is Lillian's request, and in response to this request, we objected. As you will recall, at the beginning of the meet and confer, defendants objected to the Notice, as written, in its entirety on burden and proportionality grounds. It was not agreed that defendants would confirm every type of camera controlled by the City at the time of the Summer 2020 Protests. In fact what was said was that the parties met and conferred extensively and agreed to produce videos based on the agreements during meet and confers. At which point it was stated that plaintiffs wanted to further explore all cameras that the City has under its control—which, as stated in defendants' prior response, requires a formal request. However, even if a formal request is made, the objections raised by defendants with respect to proportionality and burden remain.

Second: It also appears all of your answers pre-suppose that the City has a different preservation process for each possible type of document. That is, while you say "Just taking into consideration the NYPD-owned cameras would necessitate multiple 30(b)(6) witnesses," as we discussed at the meet and confer, that is only true if the City has an entirely different preservation process for each kind of camera -- which strikes me as (1) unlikely and (2) possibly an independent basis for a spoliation motion. To explain a little, we're looking to depose someone who can walk us through what happens when the City gets a preservation demand that explicitly asks to preserve all video footage the City has -- and who that person would speak to. If what you're saying is that it is not even possible to have someone figure that initial answer out, we probably need that confirmed in a declaration.

Put another way, before we move on these impasses (including the brand new, never moved on, and therefore waived objection we can substitute depositions with interrogatories), can you confirm that the City is really saying "we cannot find a person[*] or reasonable number of people who can answer how we preserve all video footage when legally required and answer reasonable follow up questions"?

Every City agency has its own preservation procedures. One person cannot speak to the preservation procedures for all City agencies.  In fact, no one witness should be required to testify as to preservation outside of their own agency—therein lies the burden.  Further, as plaintiffs did not make a formal request in the Consolidated Cases for all "types of cameras controlled by the City at the time of the protests," seeking a deponent or deponents to testify as to this request is premature not to mention that any response to such a request, as stated in defendants' prior response, would be subject to objections, including that determining every City agency which owns cameras and the procedures for preserving the footage from those cameras, is overly burdensome and not proportional to the to the needs of this case.  Further, I do not understand your meaning when you state above, "including the brand new, never moved on, and therefore waived objection we can substitute depositions with interrogatories," and so therefore I cannot address the statement.

We would ask for answers to these questions by Friday -- or we will just have to assume the City's position (1) has shifted since the meet and confer because the City had not in fact looked into the issue beforehand and (2) is genuinely that they cannot find a person to answer basic and general questions about what happens when the duty to preserve is triggered, and move on those assumptions.  And we will also assume we have an impasse on all the above, since, for the reasons we discussed at the meet and confer, these answers -- and a limited number of written questions -- are simply not adequate to explore both the intent element and scope of harm related to the undisputed spoliation at issue.

With respect to item (1), none of defendants' positions have shifted since the meet and confer.  Further, we have addressed item number (2) above.  I do not understand the last sentence of this paragraph.  Thus, I cannot respond to this statement.

Regards,

Amy Robinson
Senior Counsel
Special Federal Litigation Division
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-3518
arobinso@law.nyc.gov

---

**From:** remy green <remy@femmelaw.com>
**Sent:** Monday, September 26, 2022 2:02 PM
**To:** Robinson, Amy (LAW) <arobinso@law.nyc.gov>

**Cc:** Marquez, Lillian <Lillian.Marquez@ag.ny.gov>; aquinn@quinnlawny.com; sow-legal@blhny.com; sierrateam@moskovitzlaw.com; paynelitigationteam@nyclu.org; AG-NYPDLitigation <AG.NYPDLitigation@ag.ny.gov>; wood@kllflaw.com; macquisto@quinnlawny.com; graylegalteam@dwt.com; smcquade@pittalaw.com; rolonlegalteam@aboushi.com; pbalitigationteam@schlamstone.com; Nelson, Genevieve (Law) <gnelson@law.nyc.gov>; Weng, Jenny (Law) <jweng@law.nyc.gov>; NYC Law Protest Team <NYCLawProtestTeam@law.nyc.gov>
**Subject:** Re: [EXTERNAL] M&C Footage 30b6 Summary

Hi Amy,

Lillian tasked me with following up on this while she's out of the office. It sounds like we have a number of impasses, but I want to confirm two things and keep that in motion.

First: It appears Defendants are walking back their commitments on a large number of our agreements. Specifically, as set out in Lillian's initial email, the City explicitly agreed to "Confirm the types of cameras controlled by the City at the time of the 2020 protests," yet now you say the City is refusing to do so. Is there a reason the City's position is different from what it committed to at the meet and confer?

Second: It also appears all of your answers pre-suppose that the City has a *different* preservation process for each possible type of document. That is, while you say "Just taking into consideration the NYPD-owned cameras would necessitate multiple 30(b)(6) witnesses," as we discussed at the meet and confer, that is only true if the City has an entirely different preservation process for each kind of camera -- which strikes me as (1) unlikely and (2) possibly an independent basis for a spoliation motion. To explain a little, we're looking to depose someone who can walk us through what happens when the City gets a preservation demand that explicitly asks to preserve *all* video footage the City has -- and who that person would speak to. If what you're saying

is that it is not even possible to have someone figure that initial answer out, we probably need that confirmed in a declaration.

Put another way, before we move on these impasses (including the brand new, never moved on, and therefore waived objection we can substitute depositions with interrogatories), can you confirm that the City is really saying "we cannot find a person[*] or reasonable number of people who can answer how we preserve all video footage when legally required and answer reasonable follow up questions"?

We would ask for answers to these questions by Friday -- or we will just have to assume the City's position (1) has shifted since the meet and confer because the City had not in fact looked into the issue beforehand and (2) is genuinely that they cannot find a person to answer basic and general questions about what happens when the duty to preserve is triggered, and move on those assumptions.  And we will also assume we have an impasse on all the above, since, for the reasons we discussed at the meet and confer, these answers -- and a limited number of written questions -- are simply not adequate to explore both the intent element and scope of harm related to the undisputed spoliation at issue.

Yours,

Remy.


*One thing you say is "It is simply not possible to determine the number of individuals who can speak to such overly broad and

vague requests."  There are other similar comments.  From those comments, it seems like in saying that you're trying to find *all* of the people who can speak to these issues.  But that's not what we're seeking.  All we're asking for is the number of people it would be necessary to depose to get full answers -- not the full "number of people who *can* speak" to the issues here.   If one person (along some preparation from their staff) can explain how all video is preserved -- and it's hard to imagine a non-negligent preservation protocol that has more than two or three central people -- then we only need to speak to one person.  Can you clarify your answer on this basis?

_____

**J. Remy Green**
         *Partner*
| Cohen&Green P.L.L.C. | #FemmeLaw |
| remy@femmelaw.com (e) | (929) 888.9560 (direct) |
| (929) 888.9480 (p) | (929) 888.9457 (f) |
| honorific / pronouns:  Mx. / they, their, them |
| 1639 Centre St., Ste. 216 | Ridgewood (Queens), NY 11385 |

_____

[?]

_____

On Fri, Sep 23, 2022 at 4:19 PM Robinson, Amy (LAW) <arobinso@law.nyc.gov> wrote:

> Lillian,
>
> Defendants' responses are below in red. As an initial matter, the questions you pose are interrogatories which should have been formally served under the federal rules  Notwithstanding, defendants provide some responses here but reserve thier right to supplement and provide formal objections.

- Confirm the scope of Defendants' search in response to Plaintiffs' requests for video (including Requests for Production 8h, 14, 15). Did Defendants search for only ARGUS videos responsive to Plaintiff-created maps or did they also search other types of City-controlled-camera footage?

The scope of the search with respect to the cited document requests was TARU footage, BWC footage, Aviation footage and Argus footage the latter for which plaintiff provided maps to narrow the search for those relevant videos. Based on our extensive meet and confers, defendants are unaware that plaintiffs sought any other types of videos.

- Confirm the types of cameras controlled by the City at the time of the 2020 protests.

First, defendants object to, the phrase, "types of cameras," and to "controlled," as they are vague and ambiguous. "Types of cameras" can have more than one meaning. If the meaning is to define every camera owned by the City of New York, that is clearly overly burdensome and well beyond the scope of the litigation. The burden of determining every City agency which owns cameras is overly burdensome and not proportional to the to the needs of this case.

- Confirm the minimum number of individuals with knowledge who can speak to Topic 23 -- the Document Storage Protocols of these categories of cameras. For instance, can the LMSI person speak to Aviation?

Defendants object to Deposition Topic No. 23 in its entirety for the reasons stated below. On its face, this Topic is overbroad and not sufficiently limited in scope. When factoring in the stated definitions of "footage" and "document storage protocols" in the Notice, Topic 23 is additionally overly burdensome, not proportional to the needs of this litigation and seeks information that is not relevant to the claims and/or defenses in this litigation. Topic 23 directs defendants to provide witnesses to testify as to a lengthy list of storage protocols for "all camera footage that is under the control of the City, by or through its agencies, including but not limited to," Argus cameras, Body Worn Cameras ("BWC"), Aviation cameras, TARU cameras, dashboard cameras, precinct cameras police vehicle cameras or any other camera affixed to City property. There are very likely numerous City agencies that own cameras in addition to the NYPD. Just taking into consideration the NYPD-owned cameras would necessitate multiple 30(b)(6) witnesses. There is simply no telling how many witnesses from across all City agencies, including NYPD, would be required to testify as to an entirely irrelevant matter—the storage protocols for all City cameras. Likewise, and for these same reasons, there is no way to determine how many witnesses from across all City agencies are or even just NYPD, would be required to testify as to these matters.

o Can any of these systems' Document Storage Protocols be adequately described by written questions and answers?

As stated above, the scope of Topic 23 is massively overbroad. The definitions are themselves overly burdensome as written. There is simply no way that defendants can adequately respond to this inquiry especially given that the requests includes protocols for both documents and footage. As discussed at the meet and confer, this Topic as it relates to "footage" and "documents," implicates a voluminous amount of witnesses for both the NYPD and the City. Thus, while answers on written questions might be useful to a topic and definitional section much more limited in

<span style="color:red">scope, it is not even possible to identify witnesses at this time.</span>

- Confirm the minimum number of individuals with knowledge who can speak to the preservation topics; for instance, would a Comptroller employee be needed? Can topics be assigned to already to-be scheduled witnesses?

<span style="color:red">The same objections made with respect to Topic 23 apply to Topic 24. " In addition, the process of preserving Footage relevant to these Actions, including but not limited to: a) Video retrieval requests made by *any* City agency or employee thereof . . . " is  massively overbroad and not proportional to the needs of this case.  Further, the phrase, "relevant to these Actions," is vague and ambiguous.  Subsections (b) – (e) as they pertain to any City agency are similarly overbroad and vague.  It is simply not possible to determine the number of individuals who can speak to such overly broad and vague requests.</span>

<span style="color:red">With respect to Topics 25 through 28, defendants believe suggest that plaintiffs provide a reasonable amount of written questions.</span>

- Confirm what topics in the Notice Defendants will produce on and which ones we are at an impasse, and the basis for that impasse.

<span style="color:red">Defendants have made suggestions above as to how the parties can proceed with the topics posed such as significantly narrowing the definitions and Topics 23 and 24 and providing reasonable written questions.</span>

Regards,
Amy


Amy Robinson
Senior Counsel
Special Federal Litigation Division
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-3518
arobinso@law.nyc.gov


**From:** Marquez, Lillian <Lillian.Marquez@ag.ny.gov>
**Sent:** Wednesday, August 17, 2022 1:24 PM
**To:** Robinson, Amy (LAW) <arobinso@law.nyc.gov>; aquinn@quinnlawny.com; sow-legal@blhny.com; sierrateam@moskovitzlaw.com; paynelitigationteam@nyclu.org; AG-NYPDLitigation <AG.NYPDLitigation@ag.ny.gov>; wood@kllflaw.com; macquisto@quinnlawny.com; graylegalteam@dwt.com; smcquade@pittalaw.com; rolonlegalteam@aboushi.com; pbalitigationteam@schlamstone.com
**Cc:** Nelson, Genevieve (Law) <gnelson@law.nyc.gov>; Weng, Jenny (Law) <jweng@law.nyc.gov>;

NYC Law Protest Team <NYCLawProtestTeam@law.nyc.gov>
**Subject:** [EXTERNAL] M&C Footage 30b6 Summary

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.  Forward suspect email to phish@cyber.nyc.gov as an attachment (Click the More button, then forward as attachment).

Amy,

Thanks for meeting yesterday. I write to summarize the items you agreed to work on and provide by August 23:

- Confirm the scope of Defendants' search in response to Plaintiffs' requests for video (including Requests for Production 8h, 14, 15). Did Defendants search for only ARGUS videos responsive to Plaintiff-created maps or did they also search other types of City-controlled-camera footage?
- Confirm the types of cameras controlled by the City at the time of the 2020 protests.
- Confirm the minimum number of individuals with knowledge who can speak to Topic 23 -- the Document Storage Protocols of these categories of cameras. For instance, can the LMSI person speak to Aviation?

    - Can any of these systems' Document Storage Protocols be adequately described by written questions and answers?

- Confirm the minimum number of individuals with knowledge who can speak to the preservation topics; for instance, would a Comptroller employee be needed? Can topics be assigned to already to-be scheduled witnesses?
- Confirm what topics in the Notice Defendants will produce on and which ones we are at an impasse, and the basis for that impasse.

In making these inquiries, please consider the 2020 protests to include those protests that *Rolon* additionally involves: September 12, 2020 and February 12, 2021.

Please let me know immediately if any of the above is incorrect.

Thank you,

**Lillian Marquez | Assistant Attorney General**
New York State Office of the Attorney General, Civil Rights Bureau
28 Liberty St., New York, NY  10005
Tel: 212-416-6401 | lillian.marquez@ag.ny.gov | www.ag.ny.gov
Pronouns: She/Her/Hers

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or

> otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.