

| **HON. SYLVIA O. HINDS-RADIX**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK , NEW YORK 10007 | **AMY ROBINSON**<br>*Senior Counsel*<br>arobinso@law.nyc.gov<br>Phone: (212) 356-3518<br>Fax: (212) 356-1148 |
|---|---|---|

**By ECF**                                                                                December 19, 2022

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        In Re: *New York City Policing During Summer 2020 Demonstrations*,
                No. 20 Civ. 8924 (CM) (GWG)
                This filing is related to all cases

Your Honor:

       I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. I write in accordance with the Court's Individual Practices as well as Local Rule 37.2 to oppose plaintiffs' request that the Court compel defendants "to identify 30(b)(6) witnesses regarding their efforts and capabilities to preserve Protest video footage." (Dkt No. 773).

       Plaintiffs' request for collateral discovery is not only overbroad and unreasonable, it has already been considered and rejected by this Court. Moreover, defendants have already provided three affidavits and answered plaintiffs' many questions related to the preservation of Argus video and are willing to provide similar information with respect to aviation footage. Those two sources of video are the only ones for which plaintiffs provide any evidence that possibly warrants collateral discovery in any form, but their request should not be granted for the reasons set forth below.

       The Court should deny plaintiffs' request (again) because it seeks information that is both beyond the scope of Rule 26(b)(1), and which can also be obtained from sources that are "more convenient, less burdensome, or less expensive" than the mode of discovery being sought. *See* Fed. R. Civ. P. Rule 26(b)(2)(C). In the alternative, defendants seek a protective order pursuant to Rule 36(c).

## Background

       Plaintiffs provide only a selective portion of the procedural history of this dispute. Not mentioned in plaintiffs' motion is their *first* 30(b)(6) notice served in July 2021. However, the

crux of this dispute goes back further, to plaintiffs' written discovery demands and defendants' responses thereto.

Plaintiffs originally demanded production of "[a]ll videos, including TARU videos, bodyworn ("BWC") camera videos and Aviation Unit videos" related to the protests. Plaintiffs' First Consolidated Set of Requests for Documents, Document Request No. 8(h). Each of the sources listed by plaintiffs in Document Request No. 8(h) referred to video footage collected by the NYPD. Furthermore, pursuant to the Honorable Colleen McMahon's Individual Rules, on May 7, 2021, defendants identified the sources of video evidence it anticipated to have relevant information and those were limited to NYPD sources. In addition, since the outset of this litigation, it has been clear that discovery of video has been limited to NYPD sources. At no point until very recently did plaintiffs object to that limitation in scope or demand a broader search of other agencies.

In July 2021, plaintiffs served their first 30(b)(6) notice which, like the current one, seeks extremely overbroad collateral discovery on various topics, including defendants' retention and preservation procedures in general, the manner in which certain documents are stored, and the technical aspects of nearly twenty electronic data sources. Plaintiffs brought a motion to compel that testimony in September 2021, letters were submitted to the Court, and a conference was held before Your Honor on September 20, 2021. During that conference, the Court observed that plaintiffs had only alleged a data loss with respect to Argus video, but no other data or document type and, on that basis, the Court stated: "I'm not going to allow discovery about the discovery process unless there is some evidence of a loss and answers can't be gotten in some other way." (Dkt. No. 272 at 42:10-13). Once again, the entire discussion was limited to video collected by NYPD.

In lieu of the first 30(b)(6) deposition sought by the plaintiffs, the Court ordered defendants to provide a sworn statement about the Argus retention process and denied the rest of the requested collateral discovery. *Id.* Defendants provided the Court-ordered declaration on September 28, 2021. On November 1, 2021, plaintiffs sent a list of follow-up questions about Argus, which defendants answered in writing on November 5, 2021. Defendants also provided additional declarations that addressed Argus preservation, search and production on June 8, 2022, and August 3, 2022.[1] Defendants have responded in full to Document Request No. 8(h), producing video from each of the listed sources as well as Argus video.

Rather than accept the relevant discovery that they were granted by the Court, plaintiffs have now served an even broader 30(b)(6) notice ("the second 30(b)(6) notice") seeking, *inter alia*, testimony on the City's preservation of video from *any* camera system across every entity "controlled" by the City. (Dkt. No. 773-4, Definition No. 11). In short, plaintiffs are now demanding that defendants provide 30(b)(6) witnesses to testify as to the preservation of every

---

[1] As the Court may recall, defendants provided additional declarations as ordered by the Court, after a member of the defense case team, who was handling the Argus matter abruptly left the Law Department and did not provide Argus video by the Court-ordered deadline, April 15, 2022. In addition, that same attorney was in possession of nine additional maps that were provided by plaintiffs to locate Argus footage that was not shared with the case team as a whole. The available Argus footage was subsequently produced.

hypothetical camera within the City's "control" across every agency and entity that may have incidentally captured some protest activity. Additionally, plaintiffs seek testimony on the storage protocols for these cameras, the hardware capacity for storing footage from these cameras, the deletion schedules for these cameras, the staffing and technological capabilities pertaining to these cameras, the capacity to pause deletion of these cameras, and any and all responses to preservation notices for these cameras, among many other things. (Dkt. No. 773-4).

On August 16, 2022, the parties met and conferred to discuss the second 30(b)(6) notice.[2] During the meet and confer, plaintiffs stated that they, "want to further explore all cameras that the City has under its control." Following the meet and confer, plaintiffs stated, "to explain a little, we're looking to depose someone who can walk us through what happens when the City gets a preservation demand that explicitly asks to preserve all video footage the City has and who that person would speak to." (Dkt. No. 773-5, pg. 2). During the conferral, defendants objected to the second notice in its entirety on burden and proportionality grounds, but plaintiffs remain adamant in their unreasonable demands for additional collateral discovery.

At a November 29, 2022, meet and confer, defendants agreed to provide information with respect to two questions related to aviation footage: (i) was all aviation footage and flight data summaries produced; (ii) if any aviation footage was not preserved, provide an explanation. By email on December 6, 2022, in response to plaintiffs' two questions, defendants confirmed that available footage was produced, provided the date ranges of what was preserved, and offered to provide additional information. Defendants requested a brief meet and confer to discuss precisely what information was to be included in the response and in what form, in order to avoid the need for follow-up requests and discussions. Instead, on December 7, 2022, plaintiffs filed the instant motion seeking far beyond what was discussed in the recent meetings.

## Argument

The 2015 Amendments to the Federal Rules of Civil Procedure limit the permissible scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." F.R.C.P. 26(b)(1). The current rule restores specific language from the 1983 Amendments that was designed to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." F.R.C.P. 26, Advisory Committee's note to 1983 amendments. Pursuant to Rule 26(b)(2)(C)(iii), courts must limit discovery sought when it falls outside the scope of Rule 26(b)(1). Moreover, Rule 26(b)(2)(C)(i) requires that a court limit discovery when the discovery sought can be obtained from some other source that is "more convenient, less burdensome, or less expensive."

Neither Rule 26(b)(1) nor 26(b)(2)(C) require the party resisting discovery to show good cause, and both allow a court to limit discovery on its own. *See Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 122–25 (E.D. Mich. 2019) (finding that discovery-on-discovery 30(b)(6) testimony was "irrelevant and not important to resolve the case, and the burden of requiring defendant to prepare a witness to testify . . . [outweighed] the likely benefit."). Thus, "relying on

---

[2] Those present at the meet and confer were Lillian Marquez, Remy Green, Bridget Hamill and the undersigned.

Rule 26(b)(1), Rule 26(b)(2) and Rule 30(b)(6), courts have quashed or limited Rule 30(b)(6) depositions" without engaging in the good cause analysis necessary for entering a protective order pursuant to Rule 26(c)(1).  *See id.* (citing *Alvey v. State Farm Fire & Cas. Co.*, No. 5:17-CV-00023-TBR-LLK, 2018 U.S. Dist. LEXIS 21356 (W.D. Ky. Feb. 9, 2018)).

Even assuming, *arguendo*, that the testimony sought is within the scope of discovery permitted by Rule 26(b)(1), a party "may move for a protective order under Fed. R. Civ. P. 26(c)(1) 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]'" *Seliger v. Breitbart News Network, LLC*, No. 20-CV-2860 (ER), 2021 U.S. Dist. LEXIS 33325, at *3 (S.D.N.Y. Feb. 22, 2021) (quoting Fed. R. Civ. P. 26(c)(1)) (emphasis added). Courts in this Circuit commonly grant requests for protective orders regarding 30(b)(6) witness testimony where the notices are overbroad or do not request information with reasonable particularity. *See, e.g.*, *Seliger*, 2021 U.S. Dist. LEXIS 33325, at *7–10 (granting protective order excusing party from producing 30(b)(6) witness as to noticed topics deemed irrelevant, vague, overbroad, and which failed to request information with "reasonable particularity"); *Fort Worth Emp. Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09-CV-3701 (JPO) (JCF), 2013 U.S. Dist. LEXIS 173006, at *10–11 (S.D.N.Y. Dec. 9, 2013) (excusing defendants from producing 30(b)(6) witness regarding deposition topic that was "all-encompassing and fatally vague," and limiting scope of other topics deemed "overly broad").

### A. Plaintiffs Fail to Allege Sufficient Bases for Seeking the Extraordinarily Broad Collateral Discovery They Seek.

#### 1. Plaintiffs' 30(b)(6) Notice Topics Are Not Within the Bounds of Discovery contemplated by Rule 26(b)(1).

As an initial matter, Topic Nos. 23–28 in plaintiffs' second 30(b)(6) notice do not seek information relevant to any party's claims or defenses as contemplated by Rule 26(b)(1).  The instant litigation is about alleged Fourth Amendment violations during certain protest events. Information related to retention and preservation procedures, or the manner in which certain documents are stored, or the technical aspects of data sources will not help plaintiffs prove those claims, nor do they help establish any defense that the defendants may assert.  Simply put, this information is "outside the bounds of relevancy" and is instead, "discovery-on-discovery". *Downing v. Abbott Labs.*, No. 15 CV 5921, 2017 U.S. Dist. LEXIS 181401, at *2–4 (N.D. Ill. Nov. 2, 2017);  *see also, e.g.*, *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 91570, at *18–20 (S.D.N.Y. July 14, 2016).  For this type of discovery to be appropriate, plaintiffs must provide specific evidence that the defendants have failed to meet their Rule 26 obligations in some material way.  *See, e.g. Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 U.S. Dist. LEXIS 91570, at *20 ("[a] party must provide 'an adequate factual basis' for its belief that discovery on discovery is warranted."); *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) ("[s]peculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end.").  Plaintiffs have not, and cannot, meet this burden.

### 2. Defendants Have Already Provided Sufficient Collateral Discovery Regarding Argus Footage and Have Offered to do the Same for Aviation Footage.

Even where the party seeking discovery-on-discovery has demonstrated an adequate factual basis warranting some collateral discovery, it must "be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*." *Id.* (quoting *Freedman v. Weatherford Int'l*, 2014 U.S. Dist. LEXIS 133950, at *7 (S.D.N.Y. Sep. 12, 2014)); *see also Gray v. Conner Indus.*, No. 20-1037-TC-GEB, 2021 U.S. Dist. LEXIS 219744, at *14 (D. Kan. Nov. 15, 2021) (rejecting plaintiff's attempt to obtain collateral discovery on the entire production process and limiting the inquiry to those issues that plaintiffs had provided an adequate factual basis for pursuing). Here, plaintiffs have identified in their motion only two specific instances of a potential data loss. One relates to Argus footage and the other to Aviation footage – neither are sufficient to satisfy plaintiffs' burden.

Even assuming that plaintiffs have presented an adequate basis for collateral discovery on Argus and aviation footage, defendants have already provided or agreed to provide that discovery. The Argus issue was already litigated and argued before the Court last year. Plaintiffs already sought a 30(b)(6) witness pertaining to Argus, the parties engaged in motion practice on this issue, and it was addressed at a Court conference on September 20, 2021. Defendants were ordered to provide sworn statements from the NYPD in lieu of witness testimony. Through a series of affidavits and written responses over the past year, defendants have explained the affirmative steps taken to preserve Argus video for a specific time period and the reasons why that time period was decided upon. No additional witness testimony is necessary. Plaintiffs have what they need to bring a motion for alleged spoliation on Argus footage if they so choose.[3] Similarly, defendants offered to provide an affidavit for aviation footage, but sought a meet-and-confer before providing one in order to avoid the need for follow-up statements.[4] Defendants have therefore already provided or offered adequate collateral discovery on the two topics for which plaintiffs have provided any factual basis. Plaintiffs filed their instant motion regardless; and that motion should be denied.

### 3. Plaintiffs' 30(b)(6) Notice Topics Are Patently Unreasonable, Overbroad and Not Proportional to the Needs of this Case.

Plaintiffs seek to compel defendants, "to identify 30(b)(6) *witnesses* regarding their efforts and capabilities to preserve Protest video footage." (Dkt. No. 773, pg. 4). "Footage" is defined in the second notice as "all camera footage that is under the control of the City by or through its agencies concerning the Summer 2020 Protests. . ." (Dkt. No. 773-4, Definition No. 11). During the meet and confer pertaining to the second notice, plaintiffs stated, that they, "want to further explore all cameras that the City has under its control." Plaintiffs further stated, "to explain a little, we're looking to depose someone who can walk us through what happens when the City gets a preservation demand that explicitly asks to preserve all video footage the City has—and who that

---

[3] Such a motion would be without merit.

[4] Defendants remain willing to provide the proffered additional information on the preservation of aviation footage.

person would speak to. (Dkt. No. 773-5, pg. 2). In short, despite never once objecting to the NYPD-exclusive sources of video footage produced, plaintiffs now take the extraordinary position that footage should have been preserved and produced for *any* video camera across *every* agency or entity within the City's "control" that incidentally captured protest activity from *any* of 90 protests listed on Plaintiffs' Amended List of Protest Locations.

Preservation is governed by the same proportionality standards as any other aspect of discovery. *See* Federal Rule of Civil Procedure 37 Advisory Committee Notes ("Another factor in evaluating the reasonableness of preservation efforts is proportionality. The court should be sensitive to party resources; aggressive preservation efforts can be extremely costly, and parties (including governmental parties) may have limited staff and resources to devote to those efforts."). To be clear, there are *over 150* New York City "agencies." *See*, https://www.nyc.gov/nyc-resources/agencies.page. This number does not account for the other types of entities controlled by or associated with the City. Identifying every camera that was within visual line of sight of protest activity across the City and its myriad agencies, boards, commissions, *etc.* is not only unreasonable and overly burdensome, given the presumed number of such cameras and the decentralized nature of these video systems, it is not proportional to the needs of this case. It is in fact likely impossible to determine what other video systems the City controlled without narrowing the inquiry to specific agencies or entities associated with the City. Even if additional camera systems were identified, it would be extremely unlikely that the existence of those cameras would materially affect any claim or defense in this action relative to the extraordinary amount of BWC, TARU, Argus, and aviation footage that was already produced.[5] Furthermore, considering the number of City agencies and/or entities, even if the Court were to grant plaintiffs' request, it is likely that the City could not comply with such an order as it would take dozens of deponents to testify on these topics.

    **B.   Plaintiffs Further Cannot Show an Intent to Deprive.**

Finally, there was no intention to deprive plaintiffs of evidence. As plaintiffs well know from the affidavits already provided with respect to Argus footage, they cannot show an intent to deprive. If plaintiffs had taken defendants up on their offer of additional information on aviation footage, they would know that the same is true for that video source. "[T]he intent contemplated by Rule 37 is not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Stanbro v. Westchester Cty. Health Care Corp.*, 20 Civ. 1591 (KMK)(JCM), 2021 U.S. Dist. LEXIS 163849, at *43 (S.D.N.Y. Aug. 27, 2021) (quoting *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 337 F.R.D. 47, 66 (S.D.N.Y. 2020) (internal quotes omitted). Here, defendants not only lacked any specific intent to destroy evidence, but in fact took reasonable and proportional steps to preserve video of the Summer 2020 Protests: BWC footage, TARU footage, Argus footage, and aviation footage. The selection of these sources was more than reasonable in light of the significant challenges faced by the

---

[5] The reasonableness of demanding all video "controlled" by the City can be gauged by whether the State plaintiffs have acted in kind. We are not aware that the State has searched for, much less produced, as is its affirmative obligation under Rule 26, all video captured by cameras in the five boroughs that are operated or controlled by *State* governmental agencies.

unprecedented nature of the protests and which were compounded by the unprecedented nature of the COVID-19 pandemic.  As such, plaintiffs' motion should be denied.

## Conclusion

Plaintiffs' decision to move to compel 30(b)(6) witnesses to testify, *inter alia*, as to the preservation of each and every City-controlled camera which may have happened to capture protest-related activity only serves to increase the high cost of discovery and delay defendants' ability to prepare witnesses related to merits-based discovery. That decision, and plaintiffs' decision to notice impermissible 30(b)(6) deposition topics violate the goals of Rule 1, which emphasizes that, "'[e]ffective advocacy is consistent with—and indeed depends upon—cooperation and proportional use of procedure,' and decries the 'over-use, misuse, and abuse of procedural tools that increase cost and result in delay.'" *See,* Hon. Craig B. Shaffer, Deconstructing "Discovery About Discovery," 19 The Sedona Conference Journal 215, 225 (2018) (citing F.R.C.P. 1 Advisory Committee's note to 2015 amendment).

Based upon the foregoing, defendants respectfully request that plaintiffs' motion to compel 30(b)(6) witnesses be denied.   In the alternative, defendants seek a protective order pursuant to Rule 26(c).

Thank you for your consideration of this matter.

Respectfully submitted,

*Amy Robinson s/*

Amy Robinson
*Senior Counsel*

cc:     ALL COUNSEL (*via* ECF)