

December 22, 2022

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

Re:     In re: New York City Policing During Summer 2020 Demonstrations,
        1:20-CV-8924 (CM) (GWG) — This Letter Relates to All Cases

Dear Judge Gorenstein:

        As the Court knows, I am co-counsel for the *Sow* Plaintiffs in the consolidated case above.
I write, as the Court invited, to provide a reply on Plaintiffs' request that the Court deem admitted,
or direct Defendants to answer, Plaintiffs' First Consolidated Requests for Admission (RFAs)
pursuant to Federal Rule of Civil Procedure 36(a)(6) (also seeking related relief explained elsewhere)
(*see* Dkt. Nos. 721, 769, 790)

        In the chart at Dkt. No. 721-2, Plaintiffs have broken down each Request at length.
Defendants only respond in summary form, not even responding to the points in the Chart for
those Requests they *do* highlight.  In sum, the opposition fails at every stage.  Plaintiffs' RFAs
demand no more than what any RFA response requires:  a reasonable inquiry — here made easier by
frequent citation to specific evidence cited within the Requests themselves — as to whether the
answering party can fairly admit, deny, or determine and "state in detail" an inability to do either.
Fed. R. Civ. P. 36(a)(4).  And contrary to Defendants' assertions, the Court's June 29 Order did not
foreclose this motion, amend Rule 36, or give Defendants leave to assert baseless objections.
Rather, it told Defendants to follow Rule 36.

        Yet, in the main, Defendants' papers reprise the argument the Court has already rejected
several times — that "Rule 36 does not require a 'significant investigation'" (Dkt. No. 790 at 9; *but
see* Dkt. Nos. 626 and 598).  As the Court has already had to explain in response to the same kind of
complaints, "What's going on here is just of the character of what might be expected in a case like
this."  2022-02-11 Tr. at 57:17-19.  Just as producing a large number of documents is reasonable,
answering 286 RFAs is reasonable in the largest protest litigation in a generation.

        Because Defendants' objections fail to comply with Rule 36, the motion should be granted
in full.  Because Defendants' arguments otherwise are frivolous, the Court should deem admitted the
requests for which there are challenged responses, and the Court should award both mandatory fees
under Rule 37 and any further relief or sanction it finds appropriate.



## ARGUMENT

### I.     Defendants' Merits Arguments Fail and are Frivolous.

The City's arguments are meritless on the surface and at a deeper level betray — and even seem to explicitly admit — its failure to conduct any investigation where Defendants have raised objections.  Yet, Defendants fail to point to even persuasive authority that justify their continued refusal to conduct a reasonable inquiry (or, most cases still at issue, any inquiry) in order to respond to Plaintiffs' proper Requests.

Moreover, in its random mudslinging, the City manages to accuse Plaintiffs of being "abusive" by trying to keep the necessary pace for the deposition and discovery schedule the Court has ordered (Dkt. No. 790 at 8 n. 11; *see also,* Dkt. No. 630), violate court orders by again accusing Plaintiffs of trying to "harass defendants" simply by serving routine discovery, and betray an unfortunate lack of familiarity with the basic facts of this case.[1]  And that says nothing of the fact that the City admits it still has not conducted a meaningful inquiry into the facts underlying the RFAs, even with the long history of this issue that *started* with the City's "repeated failure to comply" with its "most basic of responsibilities."  Dkt. No. 598; *cf., e.g., Dacosta v City of NY*, 296 F Supp 3d 569, 605 (EDNY 2017).

None of that is a reason Defendants cannot answer RFAs on facts that can be discerned from currently available discovery and are not seriously in dispute (even if Defendants' papers — though not their witnesses and documents — nominally say otherwise).[1]  None of that is a reason for more delay.  Thus, as explained below, the Court should grant the motion.

> #### A.   Defendants' "highly disputed fact" argument fails on the merits, but even on their own terms, Defendants' failure to investigate has led them to misunderstand basic facts, which are not actually in dispute.

Defendants object to 128 RFAs, at least in part, by claiming that they "seek an admission to facts in dispute."  *See* Dkt. Nos. 721-1; 721-2.  However, Defendants' opposition only attempts — and fails — to justify three of those instances.

In the first instance, Defendants' argument is legally misguided and barred by the plain language of the rule.  In claiming that RFAs about "highly disputed" facts are improper, Defendants cite two cases that do not deem such RFAs improper.  Dkt. No. 790 at 5.  First, *SEC v. Micro-Moisture Controls* stands for the proposition that RFAs strive to assert single facts, but such guidance on the construction of a request says nothing of asking a defendant to admit or deny a "highly disputed" fact.  21 F.R.D. 164, 166 (S.D.N.Y. 1957).  Moreover, this 1957 decision did not address key language added to the Rule in 1970, as explained below (and as previously noted in Plaintiffs

---

[1] As more discovery reveals other facts not seriously in dispute, or other appropriate circumstances to use Rule 36, Plaintiffs reserve the right to serve further RFAs.





moving papers, though Defendants' Opposition offered no meaningful response).  *River Light V, L.P. v. Lin & J Int'l, Inc.* also says nothing of the propriety of RFAs on facts that are "highly disputed."  299 F.R.D. 61, 65 (S.D.N.Y. 2014).  Rather, the court there grappled with whether allowing defendants to withdraw their default admissions "would promote the presentation of the merits of the action" or prejudice plaintiffs.  *Id.* at 64.  Because many of the requests were for "admissions of ultimate liability" (not simply supposedly contested facts), the court determined that allowing defendants to simply answer would promote the presentation of the merits.  *Id.* at 65.  But it did not strike the requests as improper.  And defendants did ultimately admit or deny each of those requests.  *See* Dkt. No. 166-60, 13-CV-3669 (S.D.N.Y.).

Defendants do not provide any contrary reading to the Rule's own commentary.  Addressing a pre-1970 division among courts "on whether an answering party may properly object to request for admission as to matters which that party regards as "in dispute," the committee definitively states that "[t]he proper response in such cases is an answer." . 1970 Advisory Comm. N., Fed. R. Civ. P. 36(a); *see also, e.g.,* Dkt. No. 721-2 at 2.[2]  As amended,the Rule expressly prohibits a party from objecting "solely on the ground that the request presents a genuine issue for trial."  Here are examples of (supposedly) "highly disputed facts" from Defendants' own opposition that illustrate both Defendants' failure to follow the Rule's plain instruction, as well as the unseriousness of their assertion that the facts are "highly disputed":

> **Request 23:**  The City of New York, in reviewing and revising its protest policing policies, trainings, and practices, does not review or otherwise take into account (i) decline to prosecute decisions, (ii) conviction conversion rates, or (iii) allegations and settlements in lawsuits relating to protests.[[3]]

> **Request 166:**  Admit that prior to 8:00 PM on June 4, 2020, James Lauren was in the group of protesters surrounded by the NYPD in the vicinity of 136th Street and Brook Avenue in the Bronx and therefore was not able to disperse.

> **Request 240:**  Admit that the NYPD Patrol Guide 221-01 requires an officer to advise the offender that physical force or other devices, such as pepper spray, will be used to handcuff/restrain the offender before applying such force and that pepper spray or OC spray will not be used against offenders who are passively resisting

---

[2] All citations, where relevant, are to documents as paginated (rather than the page within a pdf or the docket stamp).

[3] Defendants seem to raise, for the first time, a deliberative process objection to this request.  Dkt. No. 790 at 4 n.4, *but see* Dkt. No. 721-1 at 11 (no deliberative process objection).  Even if it were not waived, since the question of whether the City has adequately responded to the notice its officers will, to a moral certainty, continue violating constitutional rights is at the core of this case, it is hard to see Defendants' argument that the privilege would protect this information — or believe seriously the City would be willing to accept the sword/shield doctrine consequences of asserting it.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457 ·  FemmeLaw.com



Dkt. No. 790 at 4-5.  In objecting to these simple requests, Defendants betray either (1) their unwillingness to admit even the most straightforward facts or (2) their newest counsel's unfortunate unfamiliarity with the case (or both).  In particular:

**Request 23** is taken from the testimony of the City's own 30(b)(6) witness in *Packard v. City of New York*, 15-cv-7130 (S.D.N.Y.) (AT).  As alleged in the *Sow* amended complaint, that witnesses testified to exactly these facts, binding the City in that case.  *See* Dkt. No. 96 ¶ 458; *see also, for example,* Gannon Deposition, 15-cv-7130 (AT), Dkt. No. 266-3 at 71 (the City's 30(b)(6) witness stating:  (1) "the NYPD doesn't – doesn't make policy changes based on filed lawsuits").  Indeed, during further depositions, the City made that position abundantly clear, chastising the plaintiffs there for thinking they needed further testimony on the issue.  *See, e.g.,* Perkins Deposition, 15-cv-7130 (AT), Dkt. No. 266-30 at 94:11-18 (Ms. Robinson: "[it is the City's] position that it has already provided a 30(b)(6) witness who has testified that the NYPD did not change its policies and practices with respect to filed lawsuits and settled litigation").

There is no trap here.  There is no trick.  The request is not made "in the hope that a party's adversary will simply concede essential elements" of the case."  Dkt. No. 790 at 5.  That the City does not use the kinds of data identified to update NYPD policy is simply the state of the world.  And Plaintiffs just want to know if they really need to cover this ground anew in this case.[4]

Defendants' objections to **Request 166** are frivolous both as a legal matter and on the factual record.  Making the analysis here complicated, Defendants fail to specify what portion of the request they deem "highly disputed," which inappropriately leaves Plaintiffs to do guesswork.  *Gaul v. Chrysler Fin. Servs. Americas LLC*, No. 1:13-CV-433 TJM/RFT, 2014 WL 1513843, at *7 (NDNY Apr. 16, 2014), *citing Herrera v. Scully,* 143 F.R.D. 545, 548 (SDNY1992) ("If the objection is only to a portion of the request, the responding party is required to unambiguously answer that portion of the request to which the objection does not apply.").

The request concerns the Mott Haven protest featured in the allegations of a number of these cases — where a number of the *Sow* injunctive, declaratory, and damages class representatives (among others) were brutalized and arrested.  Defendants assert that somehow "Request 166 … combines two highly disputed facts."  Dkt. No. 790 at 5.  But Defendants do not identify what facts they dispute — or how the nature of those facts prevents them from simply "specify[ing] the part admitted and qualify[ing] or deny[ing] the rest."  Fed. R. Civ. P. 36(a)(4).  Like any sentence, Request 166 includes some presumed facts:  that the NYPD exists, that James Lauren exists, that there was a protest in the Bronx on June 4, that the protesters were encircled by police, and that the encirclement took place at the time the radio runs indicate it did, that the videos the City produced are accurate and not manufactured, and so on.  Just raising vague "metaphysical doubt as to the material facts" is not how litigation is conducted.  *Scott v Harris*, 550 US 372, 380 (2007).  Yet,

---

[4] Although, it is true enough that the policies of the NYPD, when a person learns them for the first time, are rather shocking.





metaphysical doubt, based on the context below, appears to be all Defendants are standing on here.

Here's what is shown in uncontestable documents.[5]  *See also, e.g.,* Dkt. No. 687 at 2-11 (describing the protest).  NYPD's own radio runs confirm that officers had been following the march from long before the curfew.  At around 7:36 p.m.,[6] officers confirm the crowd is "not disorderly" — though they use an ominous "yet," making clear they intend to crack down violently at some point.  Def_CCRB_00031093 at 16:15-22.  Starting around 7:40, NYPD makes its first attempt to kettle — or, in NYPD terms, "encircle" — the peaceful crowd.  That tactic, by design, nvolves completely surrounding a set of people so they cannot move.  At 7:50, NYPD succeeds at "block[ing] 'em in" by "set[ting] up a line behind 'em," and cutting the crowd off.  *Id.* at 30:31-36:23.

With the crowd fully surrounded, the officers call for a time check on the radio — and are told it's only 7:56.  *Id.* at 36:23.  If the audio wasn't enough, ground-level video also shows protesters begging to leave, and NYPD officers mocking them.  "Where are we going to go?," one protester asks, and a fully kitted-out bike officer smirks, "to jail."  *See,* Human Rights Watch, NYPD Beat and Arrest Peaceful Protesters in Planned Assault at 7:50-8:00 (2020).  That comment shows the NYPD officers on the ground certainly would not dispute the crowd was "not able to disperse."  And if the audio and ground-level video wasn't enough, video from overhead definitively shows — before the clock struck 8:00 — that the crowd had been fully surrounded and was left with nowhere to:



---

[5] Notably, Mott Haven is the most litigated protest in these consolidated cases.  It was the sole protest at issue in the *Sierra/Wood* and *Hernandez* actions, and still forms a core part of the injunctive, declaratory, and damages claims in *Sow, Rolon, People,* and *Payne*.  Thus, the facts that follow are beyond well-known to any attorneys familiar with the underlying case.

[6] At 36:23 into the audio, an officer calls for a timecheck, and is told "19:56" — or 7:56 p.m.

COHEN&GREEN

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Dkt. No. 687 at 7. Thus, the Request does not even have one "highly disputed fact," let alone two. And since Defendants refuse to specify which facts they think are disputed, it's impossible to respond further.

Ultimately, whether it is for a lack of investigation or some metaphysical objection, the objection does not hold up — and apparent the lack of basic investigation merits a judicial response. *See also, e.g.,* Dkt. No. 721-2 at 75-79 (Requests 114, 115, and 116), 102 (Request 136), 126 (Request 164). Put simply, if Defendants want to say, for example, that notwithstanding clear evidence no one could disperse, that Lauren could, they can simply say something like, "Defendants deny that Lauren was unable to disperse, otherwise admit," as the Rules require.

**Request 240** is simpler yet – it seeks an admission about a subset of requirements of the NYPD Patrol Guide, and it does so reciting uncontroversial statement of how the Patrol Guide works in practice: certain uses of force require warnings before use and cannot be used against individuals who are passively resisting. If Defendants think the Patrol Guide doesn't have those requirements they should have denied the RFA.

What Defendants do get right is that these three RFAs — 23, 166, and 240 — may well be the best examples of their arguments. In the other footnoted examples (Dkt. No. 790 at 5 n. 7), Defendants do not even making a passing attempt to justify their claim that it is in dispute that the NYPD did not have a policy specific to the First Amendment in the Patrol Guide or Administrative Guide prior to December 2020 after producing no such documents (Request 1, Dkt. No. 721-2 at 1); that Mayor de Blasio, Chief Monahan, and Commissioner Shea communicated daily between May 29 and June 5 (Requests 3 and 4, Dkt. No. 721-2 at 2-4); that members of the mayor's officer were at Mott Haven (Request 7, Dkt. No. 721-2 at 6-7); or the like. And the unexplained examples in the footnotes are facially frivolous. *See, e.g.,* Request 193.[7]

Again, the reason for this is clear: Defendants' objection to conducting any investigation admits they have not asked a single person a single question. Dkt. No. 790 at 10. The opposition makes clear the burden assertion the City is making is that making *any* inquiry of the NYPD is unduly burdensome. This simply isn't countenanced by the Rules.

### B. Defendants misconstrue Rule 36's limitation on objections and the Court's Order.

Defendants appear to argue that the Court's order at Dkt. No. 626 somehow either (1) granted them leave to make any objections generally permitted in discovery but not under Rule 36 or

---

[7] Request 193 is cited as "highly disputed" and "also … not properly constructed" in Dkt. No. 790 at 5 n. 7. But the fact that "police officer Hensley Caraballo discharged Oleoresin Capsicum (OC) into a crowd of people" (Dkt. No. 721-2 at 153) is a simple fact, and — unless Defendants are asserting officer Caraballo engaged in perjury — not in dispute. 2021-10-14 Caraballo Tr. at 160:10-12; 161:2-4; 162:25-163:5 ("Q: So your reaction at this moment in this time on this video is to pepper spray the crowd; is that correct?  A: Yes.").



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



(2) that any such objections cannot be challenged by Plaintiffs.  *See* Dkt. No. 790 at 3.  Either reading is incorrect.

First, Dkt. No. 626 unambiguously states that the "City must follow the procedure outlined in Fed. R. Civ. P. 36."  As explained above, Rule 36 prohibits objections solely because a request presents a genuine issue for trial.  Further, the Court did not protect Defendants' responses from further scrutiny but rather expressly acknowledged that Plaintiffs can subsequently challenge Defendants' compliance with Rule 36. Dkt. No. 626 at 7.  Indeed, the Rule does not permit a preemptive protective order but instead requires that the court evaluate the basis of each objection and, "[u]nless the court finds an objection justified, it must order that an answer be served."  Fed. R. Civ. P. 36(a)(6).  And the touchstone, under the Rule, is whether an answer "compl[ies] with this rule" — not some other standard. [8]

Given that the Court invoked 36(a)(6) in its Order, and warned Defendants that a motion could result from any inadequate answers, it is just not plausible that Defendants read the Court's order to have relieved them of their duty to comply with Rule 36 in responding to the RFAs.[9]

### C.  Defendants' argument that the RFAs are somehow being used as "discovery" is frivolous.

Defendants repeatedly argue that somehow, the Requests are not *really* RFAs, but other discovery in disguise.  *See, e.g.,* Dkt. No. 790 at 2, 8, 9.[10]  It is genuinely a mystery what they mean by this, and their explanations provide little help.

First, the authority Defendants cite is not on-point — and indeed, one of their two cases actually rejects the arguments they cite it for.  *See, e.g., Pasternak v Kim*, 2011 US Dist LEXIS 113998, at *15 (SDNY Sep. 28, 2011) (compelling answers to RFAs).  Defendants' example, Request 137 is not some shot in the dark.  Rather, analogous to what is explained in Defendants' own centerpiece

---

[8] Moreover, as the Court has emphasized at every stage of this case, the "Rule[s are] ultimately our touchstone here," no matter what additional process the Court has used to move the case forward.  2022-04-12 Tr. at 23:9-19.

[9] *Cf., for example,* Dkt. Nos. 334 ("the Court does not understand how the City ended up believing that the plaintiffs were interested in only the Mott Haven video"); 330 (contrary to Defendants' interpretation of the Court's order, "[i]t was certainly the Court's intention that the depositions of all expected deponents be scheduled at the earliest possible time.").

[10] Defendants cite a laundry list here, identifying Requests 56-57, 59, 75, 80, 84, 85, 89-90, 99, 102, 107-108, 123, 162, 170-172, 178-180, 185-187, 193, 196- 198, 205, 218, 230-231, 242-244, 248-251, 259, 263, 265, 269-271, and 278-282 as being secretly other sorts of discovery requests.  None of the assertions make sense.  Without being exhaustive, a quick look reveals that Requests 56 and 57 just ask to confirm a series of events visible on a cited video clip.  That is routine RFA material.  The rest are similar, if not far more frivolous.  *See, e.g.,* Dkt. No. 721-2 at 55-56 (Request 80 asks Defendants to confirm that Brian Destefano is correctly identified as the "summonsing officer" in a particular C-Summons).



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



case, Plaintiffs believe they know who was at the meeting (more on that below) — and with that "know[ledge of] the facts," they "merely wish[ their] opponent to concede their genuineness." *Pasternak,* 2011 US Dist LEXIS 113998, at *15-16 (*quoting* 8B Wright, Miller, & Marcus, Federal Practice and Procedure, § 2253 at 324). Yet, just like the party seeking to avoid RFAs in *Pasternak,* Defendants are "wrong when [they] argue[] that the RFAs do not 'serve any clarifying purpose,'" for reasons very well explained in *Pasternak* itself. *Id.* As Judge Cott did in *Pasternak,* this Court should order a response — or, as explained below, it should simply deem the Requests admitted given the particular circumstances here.

Defendants' other case,[11] *Spectrum Dynamics Med. Ltd. v GE*, 2021 US Dist LEXIS 35633, at *6 (SDNY Feb. 25, 2021), is simply a world apart. *Spectrum* involved "1672 individual RFAs," and those RFAs alternated between a fact and its opposite. That is, for example, "Admit that John Doe accessed the Spectrum Data Room in 2011" was immediately followed by "Admit that John Doe did not access the Spectrum Data Room in 2011." *Id.* at *5. And given the volume, the requests (unlike those here) covered every possible fact in that case. Hence the *Spectrum* Court's conclusion the RFAs were contention interrogatories in disguise: because the opposing party had to admit fact one or the other for every possible fact, they ultimately needed to explain what their theory of the case was, and disclose what it was they were *contending.* That is nothing like the set of Requests in this case — and Defendants never bother explaining why they think the cases are similar. Instead, Defendants claim they read *Spectrum* to basically eliminate Rule 36, because they say it means RFAs cannot "seek concessions to facts." Dkt. No. 790 at 9. Since, *of course* a party can seek concessions "relating to ... Facts" (Fed. R. Civ. P. 36(a)(1)(A)) — and Plaintiffs have not served RFAs like those in *Spectrum* that force a party to commit to a contention one way or another for every fact in the pleading — Defendants' arguments here fail.

Nor is the example Defendants use — Request 137 — any help in figuring out what Defendants are objecting to. Request 137 asks Defendants to confirm a list of attendees at a meeting to plan the mass arrests at the Mott Haven Protest. As then-Commissioner Shea himself stated at a press conference the next day, "We had a plan which was executed nearly flawlessly in the Bronx." Presumably, that "plan" was made at a meeting. Plaintiffs think they've figured out it was this meeting, with these attendees. Yet Defendants claim it is somehow improper to ask them (1) to confirm attendance of specific people, or (2) even seemingly to confirm whether the "response" to the Mott Haven protest was the subject of the meeting.[12] Why that is, they do not say. *But see*, Fed.

---

[11] Defendants' citation to *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966), though it follows the sentence "Plaintiffs clearly use RFAs as a discovery device instead of using them to eliminate uncontested issues for trial" (Dkt. No. 790 at 9), appears to be for just the Circuit's generic statement that "the purpose of Rule 36 is to expedite trial by removing uncontested issues." *Moosman*'s substantive holding addresses and rejects a claim that a district court was required to leave untimely responses as admissions (which the Court here already passed on). Indeed, *Moosman* does not use the words "discovery," on page 688, or anywhere else.

[12] Specifically, Request 137 asks that Defendants "admit that the following officials met together on June 4, 2020 to plan the response to the Mott Haven Protest: Kenneth Lehr, Robert Gallitelli, Gerard Dowling,





R. Civ. P. 36(a)(4).

In all events, Defendants do not explain why Plaintiffs should not be allowed to confirm the attendance at a meeting — or anything else they complain about. Nor do they explain why that is some other form of discovery in disguise (let alone a contention interrogatory). So the Court should compel responses or simply deem the Requests admitted. And, given how Defendants have not made a serious (let alone a substantially justified) argument, the Court should order Rule 37 remedies.

### D. Defendants' legal conclusion argument is misguided.

Defendants argue that, notwithstanding that "Rule 36 allows RFAs that seek admissions related to 'the application of law to fact,'" Plaintiffs' simple RFAs in that form are improper. Dkt. No. 790 at 6. In their letter, Defendants contend that they've objected to "the repeated requests to admit legal conclusions," and then cite 199, 251, and 171 as examples. Dkt. 790 at 6. However, Defendants' objections only claimed that Request 251 was a legal conclusion; Defendants' objections as to the other requests was simply that they were "improper."

But, putting aside that Defendants are seemingly making objections for the first time, the argument in Defendants' opposition appears to be primarily based on a ground-level misunderstanding of how mass arrest processing — and so-called "turnover arrests" — work.

Both of Defendants' in-text examples are revealing because they both concern such "turnover arrests." Turnover arrests are essentially defined by the fact that the designated "arresting officer" did not personally arrest the arrestee.[13] *See* NYPD Patrol Guide Procedure No. 208-20. Because of the nature of the kinds of police tactics at issue in this case, turnover arrests constitute a large share of both named Plaintiffs' arrests and arrests of class members in the class actions. That is, turnover arrests were the norm during mass arrests of 2020 racial justice protesters — just as they

---

James McGeown, David Miller, Joseph Taylor, and Julio Delgado." In their supplemental and amended responses on August 3, 2022, Defendants made the same "disputed facts" objection and — without clearly denying any portion of the Request, only admitted "that a group of high-ranking officers met on June 4th, 2020, with respect to the activity in Mott Haven," without stating whether they were denying anything. Dkt. No. 721-3 at 6. But are Defendants denying that the specific individuals identified were there? Are they denying that they were planning a "response"? Because the response fails to "qualify or deny the rest" (Fed. R. Civ. P. 36(a)(4), that remains a mystery.

[13] Related to the turnover arrest issue, and how admissions of this kind interact with depositions, while Defendants assert Plaintiffs are not willing to cancel depositions based on admissions (Dkt. No. 790), that is simply untrue and seems to be made because the attorney drafting the opposition did not attend any of the meet and confers. At those meetings, Plaintiffs made clear they were willing to, if things were admitted, reevaluate what depositions were needed. Defendants, however, have not admitted much of anything, so that offer has never been relevant. Of note, just this week, Plaintiffs offered to withdraw a pending deposition if Defendants admitted (essentially) that the officer had no personal involvement, and only signed arrest documents in an administrative capacity. Puzzlingly, Defendants objected to *that* too.





were during Occupy Wall Street, and before.

Yet, Defendants overlook this basic fact about the protests and mass arrest processing when they complain that Request 251 asks them to admit "Officer Bryan Rozanski independently did not have probable cause to arrest Matthew King-Yarde on May 31, 2020." *Id.* Since Mr. King-Yarde's arrest was a turnover arrest, Request 251 does not state a legal conclusion. Rather, that Rozanski didn't "independently" have probable cause is just a fact about the arrest. That is, Rozanski, like any arresting officer in a turnover arrest, is named as the "arresting officer," but did not personally observe any alleged offense. Defendants' claim that this Request calls for a "bald legal conclusion" is unavailing and uninformed.

The same is true for Request 179, which Defendants assert also attempts to achieve a "conclusion of law."[14] They do not explain how, nor could they. Request 179 asks, "admit that on June 2, 2020, Officer Joseph Sung did not personally observe Jarrett Payne violate any Penal Law [.]" Indeed Sung testified that he did not "personally observe" any actions by Jarrett Payne, and acknowledged that the "arrest[] w[as a] turnover arrest." 2021-08-18 Sung Tr. at 89:6-15. Given their own witness's testimony and lack of any explanation, Defendants' assertion is once again frivolous.

The examples in Defendants' footnotes[15] are all largely the same: a basic misunderstanding of how mass arrest processing works leading to Defendants thinking it is somehow a trap for them to admit a turnover arrest happened. As explained in Point II.A below, these are all the kinds of objections that would not have survived even a *single* factual question asked in an investigation (or a glance from a City attorney more familiar with mass arrest processing). That is, the fact that Defendants are claiming that it is unfair to ask them to admit the things to which *their own witnesses have testified* to shows they have conducted no investigation at all. And it is frivolous.

### E. Defendants' other arguments are frivolous and confusing.

Defendants gesture at a number of other arguments in passing. These arguments take the form of stating a broad conclusion in the body of their letter and then citing specific requests in a footnote. Without any explanation of how the arguments actually apply, they are waived on their face. Indeed, the arguments are hard to even reconstruct. That said, Plaintiffs attempt to address them below.

---

[14] Defendants cite Request 171, but instead discuss Request 179. Dkt. No. 790 at 7. Request 171 reads "Admit that Detective Lee Aroyo did not personally observe Julian Phillips violate any Penal Law[.]" Request 179 is similarly worded, except that it concerns Jarrett Payne and Officer Joseph Sung. The analysis of Request 171 would be the same, because Officer Arroyo similarly testified that he "observe any of the arrests that were made on June 4th" and that he was not "part of policing the protest in any way prior to" being assigned a group of ten arrestee s to transport. 2021-10-07 Arroyo Tr. at 53:22-54:15; 68:23-71:2; 76:7-19.

[15] There are two exceptions that Plaintiffs assume, by their silence, Defendants concede do not bear discussion if Defendants are wrong about the examples they highlight.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



*First,* Defendants say some "RFAs require defendants to go through hours of video footage to admit a fact that was clearly taken out of a context." Dkt. No. 790 at 10; 10 n. 14, citing Requests 69, 70, and 71. To the contrary, Plaintiffs have specified little more than a few minutes of footage using precise time stamps, and the facts — that officers lined up then moved towards protesters (Request 69), that a particular message was played over a loudspeaker (Request 70), and that officers did not issue an order to disperse prior to that loudspeaker message (Request 71) — are neither out of context nor do they require watching more than the small amount of video cited to evaluate. *See* Dkt. No. 721-2 at 47-49. Similar is Defendants' that Request 229 is "simply compound … vague, and are confusing" (Dkt. No. 790 at 10; 10 n. 13) when all it asks is, "Admit that the document produced by Defendants under DEF_000001 is a true and correct copy of a C-Summons issued by the NYPD on June 3, 2020 to Charlie Monlouis Anderle." Dkt. No. 721-2 at 188. Defendants do not explain why a routine request to confirm the authenticity of their own document is confusing, vague, or compound at all, let alone "simply" so.

*Second,* Defendants claim that some "RFAs seek admissions related to third parties, including former employees and other state and city agencies," and therefore they can't admit "a summons that was issued to Ms. Camilla Gini was dismissed without any finding of guilt and without Ms. Gini appearing in Court." Dkt. No. 790 at 8 (Request 219). Those are facts that are established conclusively by Court records, and Plaintiffs are entitled to know whether Defendants are asserting the Court records are wrong. Defendants' claim that answering it requires some evaluation of how "the decision of whether to dismiss the summons, and on what basis, was made by District Attorney's Office" is nonsensical — and Defendants do not attempt to explain it. Dkt. No. 790 at 8.

The other examples Defendants cite under this argument about supposed "third parties" cannot even survive glance of scrutiny (Dkt. No. 790 at 8 n. 10):

- Requests 5, 9, and 10 ask Defendants to confirm verbatim quotes from former-Commissioner Shea at a press conference (Dkt. No. 721-2 at 6);
- Requests 6, 8, 9, 11, 12, 16, 17 do the same for Mayor de Blasio (Dkt. No. 721-2 at 5-10; 12);
- Requests 13, 14, and 15 do the same for high-ranking NYPD officials (Dkt. No. 721-2 at 10-12);
- Request 22[16] asks the City to admit it has not made any changes to policies after a list of cases — and it asks for this ***because*** the City's s document response to a request seeking documents reflecting any changes to policies because of those cases was "No responsive documents exist" (*see also, e.g.,* Dkt. No. 577 at 3);
- Request 36 asks the City to admit certain video depicts the apprehension and arrest of a specified person (Dkt. No. 721-2 at 24-25); and
- Requests 191, 219, and 232 ask the City to confirm the basic procedural history of specified

---

[16] Why Defendants seem to be asserting that the City and the NYPD are "third parties" is a mystery.





Plaintiffs' prosecutions.

None of that has anything to do with any "third party."

*Third,* Defendants' claim that "[o]ther RFAs ask defendants to admit facts that have not been established through third party testimony" makes little sense, they do not cite a single example from the Requests. Given that, it is impossible to respond any further to this particular argument.[17]

## II.   <u>Defendants Have Waived Opposition to Core Issues.</u>

It also bears mentioning what Defendants have not said. As explained below, Defendants have waived much of the relief sought by this motion with silence. That waiver may be sufficient to resolve the motion, even without the merits discussed above. It also sufficiently demonstrates the need for a Rule 37 remedy.

### A.  Defendants admit they have conducted no factual investigation.

At least as to the requests Defendants have objected to, Defendants appear to concede they have not conducted any factual inquiry. In fact, nowhere in Defendants letter do they assert they have asked a *single* factual question of a single human being. That is, they do not — presumably because they cannot — assert that they have conducted any investigation at all. It would not be hard to detail even *one* illustrative example of the investigation the City has done. Yet, the City offers nothing.

Nor do Defendants even nominally contest Plaintiffs' assertion that they have failed to conduct reasonable inquiries in response to the challenged RFAs. Dkt. No. 721 at 12 n. 13. What has happened here has happened many times in this case: Plaintiffs have offered a "detailed letter . . . describing at length" what investigation should have been done, what it would reveal, and why Plaintiffs think the City has done no investigation; and once again "the City [doesn't] den[y] any of this, never responds, [and] never explains" (2022-02-11 Tr. at 57: 8-19) — or, for that matter, even describes who or what counsel consulted to determine the burden asserted. That "failure to respond to Plaintiff[s'] substantial argument can be taken as a concession." *See Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 48 n.4 (S.D.N.Y. 2020). Plaintiffs detailed why they think Defendants did no investigation at all on most RFAs. Defendants did not respond or contest the conclusion. Thus, Defendants admit they have not done any investigation.

A glance at any specific example highlights this point. Consider even just the first Requests where Defendants say "after a reasonable inquiry the information defendants know or can readily obtain is insufficient for defendants to admit or deny this request":

---

[17] Defendants' claim that some RFAs include "a fact [that] has not been established by the witness," in light of the basic lack of familiarity with underlying facts Defendants have shown elsewhere, should not be taken seriously. Had Defendants cited an example, Plaintiffs would be easily able to show otherwise — because, again, the RFAs here are only addressed at facts on which there is no serious dispute.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



- Defendants say it is too burdensome to figure out whether one Plaintiff was issued summonses for two specified offenses (Request 39). In the motion and meet and confer process, Plaintiffs even screen-grabbed the summonses for Defendants. Dkt. No. 721-2 at 27-28. Yet, Defendants still claim they cannot figure out whether those summonses were issued to the relevant Plaintiffs, without describing their "inquiry." Dkt. No. 721-2 at 27-28.
- Defendants say it is too burdensome to determine whether a document they produced is the actual arrest report for a particular plaintiff (Request 44). Again, they do not explain what inquiry they have conducted, presumably because they have conducted none. Dkt. No. 721-2 at 29-30.[18]
- Defendants say it is too burdensome to determine whether a document they produced is actually the Body Worn Camera footage from a particular officer on a particular date (Request 47). They do not explain what inquiry they have conducted, presumably because even the most cursory inquiry — looking at the audit trail log — would allow them to take a position on this Request. Dkt. No. 721-2 at 31.
- Defendants do the same for an Activity Log, with the same problems (Request 48). Again, unless there are grave issues with Defendants' documents systems that have not been disclosed, less than 30 seconds of inquiry should be enough for the City to gather information "[]sufficient for defendants to admit or deny this request." Dkt. No. 721-2 at 31-32. And without an admission or denial, the Court should conclude the City is asserting that even those 30 seconds are too much burden.

Or, consider the examples Defendants themselves choose to highlight:

- Defendants say it is too burdensome to figure out whether City employees *in fact* sent a particular email or internal message (Requests 141,[19] 143, 146, and 149). But why? Is there

---

[18] This objection, and the objection to Request 20, also contain a frivolous expert objection (what expert would be required by the City to determine that the City's own documents are authentic?) that Defendants do not defend.

[19] Defendants say "plaintiffs omitted the fact that defendants also admitted RFA No. 141" (Dkt. No. 790 at 10) citing Dkt. No. 721-2. That's not true. Here is Defendants' actual response:

> "defendants admit that the document bearing Bates stamp No. DEF-E_45453 *appears to be* an email sent from Theresa Doherty at approximately 7:57 p.m. on June 4, 2020 and states, in part, "Held up at 136 and Brook."

Dkt. No. 721-2 at 109 (emphasis added). As Plaintiffs explained, the problem here is that "Defendants have not explained why they are unable to confirm whether a City employee – Doherty — in fact sent the email at issue, and do not describe any efforts to investigate (reasonable or otherwise)." *Id.* at 109-110. Curiously, despite making identical objections to Requests 142-147 and 149, Defendants *do* admit these Requests were only partially admitted.



Page 13 of 18

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



some issue with the City's computer systems?  Are they concerned the email was forged?[20]  Defendants offer no answer.

- Similarly, Defendants say it is too burdensome to confirm whether certain City employees were the recipients of certain emails (Requests 142, 144, and 147).  Again, why?  Defendants offer no answer.

- Finally, Defendants claim it is too burdensome to figure out whether certain people were in fact employed by the City and at certain protests, based on those emails — which say they were at the protests and were sent from a City email (Request 145).  And once again, Defendants offer no explanation as to why.

If Defendants are not asserting that *any* inquiry into the objected-to RFAs is unduly burdensome — a position the Court has firmly rejected[21] — Plaintiffs are at a loss for why Defendants think it is burdensome to ask people with personal knowledge these basic questions.

Finally, confirming the above, Defendants appear to directly state that they conducted no investigation when they claim that "just the task of sorting out what can be answered and what is objectionable is unduly burdensome."  Dkt. No. 790 at 10.  Since the Court has long since rejected that approach, it should presume that the City is once again genuinely asserting that asking them to do any factual investigation at all is unduly burdensome.  And it should evaluate the appropriate remedy accordingly.

Even just on these RFAs, the Court has twice explicitly rejected the argument that a "significant investigation by the City" (Dkt. No. 598) — "even for 286 requests" — "is [] in and of itself burdensome."  Dkt. No. 626 at 7.  So Defendants' tacit admission they have conducted no inquiry at all is an admission that "once again" the City has violated the Court's orders (Dkt. No. 513):  The Court's orders made clear these Requests required an investigation in granting the City the many, many extensions it has received.  Yet, it is clear no investigation took place.  That merits a response under Rule 37.

### B.  Defendants waive opposition to the motion to compel responses to the interrogatory and the document request.

Defendants do not make any argument about either the interrogatory or the document request, and only mention them in passing outside their prayer for relief.  *See* Dkt. No. 790 at 12.

---

[20] Particularly given the history of this case (*see, e.g.,* Dkt. No. 525), surely Defendants would understand — for example — why Plaintiffs need to confirm an email was in fact sent, regardless of what "appears" (Dkt. No. 721-2 at 108-9)  to be true (*see, e.g.,* Dkt. No. 524-1).

[21] *See* Dkt. No. 626 at 7 (an investigation "is not in and of itself burdensome even for 286 requests") and Dkt. No. 598 (specifically noting the Court expected the responses to require a "significant investigation by the City").



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



The sum-total of what Defendants say is this:

1. "Plaintiffs' argument that defendants should be ordered to answer the … accompanying interrogatory and discovery demand is a clear attempt to overburden and harass defendants" (Dkt. No. 790 at 9); and

2. "Although, at the outset, it might appear to the Court that plaintiffs' RFAs are not unduly burdensome, such a conclusion should change once the Court considers the RFAs collectively, as well as the associated interrogatory and document request. It then becomes apparent that the combined effect of all RFAs makes them onerous, argumentative, and disproportionate to the needs of these cases" (Dkt. No. 790 at 10).

Otherwise, the document request and interrogatory do not appear at all in the opposition.

These passing references do nothing to address the arguments Plaintiffs made to compel interrogatory and document responses.  For example, Defendants do not explain why it would be unfair for them to have to produce the relevant documents when they refuse to admit "certain documents — or things that would necessarily be reflected in documents, like discipline — do not exist." Dkt. No. 721 at 12; *see id.,* n. 14 (listing RFAs concerning documents specifically).  Nor does the City grapple at all with the fact that the Court specifically anticipated that exact argument, saying the City should not need to identify Bates ranges for certain document requests where Plaintiffs did not believe the City had produced any documents specifically **because** "plaintiffs are free to serve a request for admission that such documents do not exist."  Dkt. No. 577 at 3; *see also,* Dkt. No. 721 at 12 (*citing* Dkt. No. 577 at 3).  Again, as Plaintiffs explained — and Defendants left unrebutted — if Defendants will not admit that neither "'NYPD Patrol Guide or the Administrative Guide" [had] any policy 'specific to policing protests or First Amendment-protected expression prior to December 2020,' all they have to do is produce the Patrol Guide provision. There is nothing objectionable about that request."  Dkt. No. 721 at 13.

Defendants' refusal to engage with the actual argument here also leaves them without a substantial justification (since there is no justification), triggering Rule 37 remedies.

### C.  Defendants do not defend many of their objections.

Defendants do not defend many of the objections Plaintiffs challenge, leaving those objections now waived.  Those include the objection about the "meaning of purported statements" and that documents speak for themselves (Dkt. No. 721 at 6-7); that RFAs are "duplicative" (Dkt. No. 721 at 10); and that RFAs are somehow barred by a settlement (Dkt. No. 721 at 10-11).  Since Defendants make no effort to defend those objections, they are waived.

### D.  Defendants once again failed to follow the Court's rules, waiving their cross-motion.

While, perhaps, any agreement was unlikely, as Defendants note, they believed "the Court

COHEN&GREEN

Cohen&Green P.L.L.C.  · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  · t : (929) 888.9480  · f : (929) 888.9457 ·  FemmeLaw.com



appeared to suggest that defendants could move at a later time as outlined in Paragraph 2.A of Your Honor's Individual Practices."  Dkt. No. 790.  Yet, just like in the initial motion the Court denied, entirely absent from Defendants' cross motion is any of the information required by Paragraph 2.A.

The Court denied Defendants' application the last time, explaining, "The Court is not considering the request for a protective order or the merits of any burdensomeness arguments in this letter because disputes about requests for admissions must go through the process mandated by paragraph 2.A of the Court's Individual Practices." Dkt. No. 626 at 7.  Because the City has again failed to provide the information required Paragraph 2.A in support of its cross-motion for a protective order, Defendants should be foreclosed from making that motion.

In any event, the motion fails on its merits for the same reasons Plaintiffs' motion should be granted.  And beyond that, Defendants do not even attempt to meet the standard for a protective order.  A protective order requires "good cause" (Fed. R. Civ. P. 26(c)(1), yet Defendants do not mention that standard, let alone explain how the very argument the Court has already rejected has now somehow alchemized into good cause (the specific examples they cite are addressed in Point I.E above).

Between the failure to comply with the Court's rules and the failure to even cite the governing standard, Defendants' afterthought of a cross-motion can and should be summarily denied.

### III.    Fees, Sanctions, and Deeming the Facts Admitted are All Appropriate.

Defendants' only arguments against the mandatory fees and sanctions requested in the motion is that the "responses were reasonable and proper."  Dkt. No. 790 at 11.

But, as explained above, Defendants' responses were far from reasonable, and not proper in the least.  There are really only two explanations for Defendants' responses:  a genuine, deliberate bad faith approach to this case or a failure to conduct any inquiry.  A sanction would obviously be warranted for the former, and since Defendants essentially admit they did no investigation at all (and their responses show it) — let alone the "significant investigation" the Court made clear it expected (Dkt. No. 598) — a sanction is warranted either way.  That is, the hill Defendants have chosen to fight on is their assertion that "just the task of sorting out what can be answered and what is objectionable is unduly burdensome."  Dkt. No. 790 at 10.  That is not a position the Rules allow, to say nothing of the fact that it is substantively frivolous on these requests (as detailed above).

Worse, Defendants have taken that position even after the Court explicitly rejected it:  "the City must follow the procedure outlined in Fed. R. Civ. P. 36, which is not in and of itself burdensome even for 286 requests."  Dkt. No. 626 at 7.  And of course, as the Court alluded to, Fed. R. Civ. P. 36 explicitly requires an investigation, period:

"The answering party may assert lack of knowledge or information as a reason for failing to admit or deny *only if the party states that it has made reasonable inquiry* and that the



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



information it knows or can readily obtain is insufficient to enable it to admit or deny."

Fed. R. Civ. P. 36(a)(4) (emphasis added).  Even then, as set out above, it is not even as if the inquiry required for each request would have taken (at least in most instances) much more than a single phone call, watching 30 seconds of video, or just reviewing the fact that Defendants already stated "no documents exist" in response to a matching document request.

     Moreover, the Court has previously sanctioned Defendants where "plaintiffs have shown that the City's search for responsive documents was unreasonable."  Dkt. No. 537.  Here, even with that warning and two unambiguous orders making clear a meaningful investigation was required, the City made a decision to not conduct a meaningful search, and instead reprise the argument that *any* search was too burdensome.  So, once again, Defendants' search was on its face unreasonable.  And once again, that makes sanctions appropriate.

     In that context, fees are mandatory.  And given the pervasive violation of the Court's Orders throughout Defendants' opposition and substantive position, something further is likely required. With that said, as Plaintiffs suggested in the opening motion, the best path may be to find out more information first, before determining such remedies.  That is, if the Court does not believe it has sufficient information to reach a decision or believes fairness requires offering Corporation Counsel another chance to explain what appears to be a failure to investigate, filling out something like the attached chart (Dkt. No. 721-2) would be a sensible approach, as would asking counsel such questions at a conference (though notably, counsel who drafted the responses themselves has left this case).

     Finally, given the time that this has taken — and ongoing depositions — Plaintiffs believe Defendants' failure to respond after a year of supposed investigation makes it appropriate to deem these uncontroversial facts admitted.[22]  If the Court offers Defendants another chance to decide whether they want to deny or admit, Plaintiffs submit that two weeks is more than enough for Defendants to respond, and any more time would be an unfair delay.  *See also, e.g.,* Dkt. No. 768; 767 at 2; 598 (The Court discussing back in June how prejudice from delay from allowing the City to cure their initial failure to respond could be mitigated with a deadline of July 1)).  Any burden that timeline imposes is solely because of "the City's failure to focus on [investigating the facts asserted in the RFAs] long ago when it should have."  Dkt. No. 453.

     Once again, we thank the Court for its continued time and attention.

                           Respectfully submitted,

---

[22] In fact, doctrinally, the facts may just *be* admitted, since a "a refusal to admit, without detailed reasons why the responder cannot truthfully admit or deny[,] is the equivalent of an admission."  *Guadalupe v. City of New York*, No. 15-CIV-0220, 2016 WL 3570545, at *3 n.3 (S.D.N.Y. June 24, 2016).  In that case, there is certainly not cause for the Court to relieve Defendants of the effect of their admissions a second time — and Defendants have not asked.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



/s/
_____
J. Remy Green
    *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

COHEN&GREEN

Cohen&Green P.L.L.C.  · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com