

| | | |
|---|---|---|
| **HON. SYLVIA O. HINDS-RADIX**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NEW YORK 10007 | Peter Scutero<br>Special Associate Counsel<br>pscutero@law.nyc.gov<br>Phone: (212) 356-2332 |

**By ECF**  
Honorable Gabriel W. Gorenstein  
United States Magistrate Judge  
United States District Court  
Southern District of New York  
500 Pearl Street  
New York, New York 10007

December 22, 2022

      In Re: *New York City Policing During Summer 2020 Demonstrations*,  
            No. 20 Civ. 8924 (CM) (GWG)  
            This filing is related to all cases

Your Honor:

      I am a Special Associate Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. Defendants write in opposition to Plaintiffs' letter dated December 7, 2022 (Docket # 774), seeking a discovery conference or permission to file a motion to compel the production of certain Office of the Mayor ("OTM") and New York City Police Department ("NYPD") documents that are either subject to privilege or prior federal government authorization. For the reasons set forth below, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety. If the Court is inclined to grant any part of Plaintiffs' motion, Defendants respectfully request that the Court first conduct an *in camera* review of the subject documents.

    **I.**    **The Documents Plaintiffs Seek to Discover are Protected by the Deliberative Process Privilege and Not Subject to Disclosure in this Matter.**

      Plaintiffs move to compel certain OTM and NYPD communications that are protected by the Deliberative Process Privilege. Plaintiffs argue that documents withheld pursuant to the Deliberative Process Privilege, contained on Defendants' privilege log, should be subject to disclosure. See Plaintiffs' Letter Application at 2.[1] Defendants maintain that the privilege log

---

[1] Plaintiffs' Letter Application was unnumbered so we have referred to the numbering that was affixed in connection with the ECF filing.

sufficiently invokes the Deliberative Process Privilege[2] and Plaintiffs have no significant need for the withheld documents.

### A. Defendants' Privilege Log Sufficiently Invokes the Deliberative Process Privilege.

"The deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NRDC v. United States EPA, 19 F.4th 177, 184 (2d Cir. 2021)(quoting U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 141 S.Ct. 777, 785 (2021)(internal quotation marks and brackets omitted). "The privilege encourages candor, which improves agency decision[sic]making, by blunting the chilling effect that accompanies the prospect of disclosure." NRDC, 19 F.4th at 184 (internal quotation marks omitted); quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975). The Deliberative Process Privilege only applies to documents that are pre-decisional and deliberative. NRDC, 19 F.4th at 184. "Generally, documents are pre-decisional if they were generated before the agency's final decision on a matter, and they are deliberative if they were prepared to help the agency formulate its position." NRDC, 19 F.4th at 184 (internal quotation marks and brackets omitted); quoting Sierra Club, Inc., 141 S.Ct. at 786).

Here, Plaintiffs have focused their arguments on the second element of the Deliberative Process Privilege: deliberativeness. However, Defendants' log entries for the email communications and documents that Plaintiffs challenge all validate the invocation of the Deliberative Process Privilege. Each log entry lists members of the Office of the Mayor who participated in the decision making process, the date when the deliberations took place, a categorical tag, and description among other things. (See, Defendants' Privilege Log, annexed to Plaintiffs' Letter Application (Dkt. No. 774 at Exhibit A).

The examples cited in Plaintiffs' motion are only OTM documents (even though the motion broadly concerns NYPD and OTM documents). For example, the entry relating to document DMNL00303_000043165, which Plaintiffs argue are not deliberative, contains the Categorical Tag: "Curfew-Discussions and Interpretation of Executive Order"; and the document description: "Internal OTM communication containing pre-decisional discussions, thoughts, ideas and deliberations regarding curfew enforcement." The deliberative element is satisfied by the terms discussions, thoughts, ideas, and deliberations that are plainly stated in the document's description. See In re Methyl Tertiary Butyl Ether "MBTE" Prods. Liab. Litig., 898 F.Supp.2d 584, 591 (S.D.N.Y. 2012)(internal discussion is sufficient as the privilege log asserts the document as a deliberation); see also Rutigliano v. United States DOJ, 847 Fed. Appx. 86, 87 (2d Cir. 2021)(deliberations concerning an assessment of facts are privileged). In fact, the entire score of emails Plaintiffs challenge contain descriptions with similar detail.

Likewise, the entry for document DMNL00303_000016070, which Plaintiffs argue do not "appear" to be deliberative, contains the Categorical Tag: "Agenda/Schedule – Discussions/Planning/Drafting"; and the document description: "Communication between OTM

---

[2] Should the Court require a declaration regarding the invocation of the Deliberative Process Privilege and/or the Law Enforcement Privilege over these documents, one can be provided.

and NYPD containing pre-decisional discussions, deliberations, thoughts and ideas regarding officer discipline and protest investigations." Again, the terms discussions, deliberations, thoughts and ideas are plainly stated in the document's description on the log and the document is properly protected from disclosure by the assertion of privilege.

Accordingly, Defendants have sufficiently invoked the Deliberative Process Privilege in their privilege log.

> B. *Plaintiffs Failed to Show the Documents are not Protected by the Deliberative Process Privilege.*

Plaintiffs make the argument that the documents "appear to concern factual or operational matters", "do not *appear* to be deliberative", and do not "include the application of policy-oriented judgment related to how to communicate policy decisions to the public." (emphasis added). These arguments are flawed as they are either not requirements for asserting the Deliberative Process Privilege or they are inconsistent with the fact that the log entries contain plainly stated deliberative descriptions.

In addition, Plaintiffs' reliance upon MacNamara v. City of New York, 249 F.R.D. 70 (S.D.N.Y. 2008) is misplaced. The District Court there found the magistrate acted contrary to law in finding documents that reflect deliberations in a decision-making process were not subject to privilege, and only affirmed the magistrate's finding the privilege inapplicable to documents that "merely" constituted lists of broadly defined meeting topics, subjects, and attendees. Id. at 81. Here, the documents that Plaintiffs challenge contained in Defendants' privilege log constitute communications and documents of pre-decisional deliberations and are more than just mere lists of broadly defined materials.

Similarly, Plaintiffs misapply Auto Club of N.Y., Inc. v. Port Auth. of N.Y., 297 F.R.D. 55 (S.D.N.Y. 2013). First, Plaintiffs' broad statement is inaccurate as the entries to the documents Plaintiffs challenge refer to either the curfew or policing the protests, which are specific policies. (see e.g. log entries DMNL00303_000041903 and DMNL000043165). Regardless, no such detail is required for the sufficiency of a privilege log. See In re Methyl Tertiary, 898 F.Supp.2d at 590 – 591.

With respect to DMNL00303_000016775, the document description speaks for itself and satisfies the deliberative requirement of the privilege. That the file name of the document may appear inconsistent with the document's description carries no weight in determining the deliberative nature of the document.

Concerning the documents listed in footnote 3 of Plaintiffs' motion, Defendants adopt the arguments made herein and note that the Parties met and conferred on December 14, 2022 regarding the issue of attorney-client communications. The privilege log speaks for itself and clearly indicates that the communications constitute legal advice, analysis, thoughts, and impressions.

Accordingly, Plaintiffs have failed to show the documents contained on Defendants' privilege log are not protected by the Deliberative Process Privilege.

C. *Plaintiffs Failed to Demonstrate a Significant Need for the Documents.*

Plaintiffs argue that the enforcement of the curfew[3] is an essential element of their case, and for that reason the relevance of the privileged documents to their claims outweighs the chilling effect that disclosure of these documents would have on the deliberative process for government officials. This argument should be disregarded as it relies heavily upon flawed logic.

It is the curfew policy in and of itself that is relevant to Plaintiffs' claims, not the process by which the City formulated that policy. On the other hand, "the risk that disclosure here will inhibit frank discussion in the future among the agency's officers is sufficient to tip the balance against" disclosure to Plaintiffs. Exp.-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd., 232 F.R.D. 103, 110 (S.D.N.Y. 2005)(denying a motion to compel documents protected by the Deliberative Process Privilege). Moreover, Plaintiffs have a vast number of other documents and deposition testimony available to them in support of their case and these are other sources to obtain information regarding the curfews. See Exp.-Import 232 F.R.D. at 110.

Accordingly, Defendants' interest in improving the decision making process outweighs any tangential relevance these documents have to Plaintiffs' claims.

II. **Documents Plaintiffs Seek are Protected by the Law Enforcement Privilege and Not Subject to Disclosure.**

Plaintiffs argue that Daily Intelligence and Terrorism Briefings ("NYPD Intel Briefs") and intelligence documents from the Department of Homeland Security ("DHS Intel") should be produced. Defendants have withheld the NYPD Intel Briefs and the DHS Intel on the grounds that they are either subject to the Law Enforcement Privilege or require federal authorization for their disclosure.

A. *Defendants Sufficiently Invoked the Law Enforcement Privilege.*

"The party asserting the law enforcement privilege bears the burden of showing that the privilege indeed applies to the documents at issue." In re The City of New York, 607 F.3d 923, 948 (2d Cir. 2010); citing, In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988). To show that the privilege applies, the party asserting the privilege "must demonstrate that the documents in question contain (1) information pertaining to law enforcement techniques and procedures, (2) information that would undermine the confidentiality of sources (3) information that would endanger witness and law enforcement personnel, (4) information that would undermine the privacy of individuals involved in an investigation, or (5) information that would seriously impair the ability of a law enforcement agency to conduct future investigations…" White v. City of

---

[3] Plaintiffs argue "the enforcement of the curfew and how the NYPD and City officials were interpreting which members of the public were exempt from complying with the curfew" as essential elements of their case. These two elements are so closely related that, for the sake of brevity, we refer to them here as the enforcement of the curfew.

4

Mount Vernon, 2022 U.S. Dist. LEXIS 198805 at * 8 (S.D.N.Y. Nov. 1, 2022)(internal quotation marks omitted); citing, In re New York at 948.

Here, Defendants invoked the Law Enforcement Privilege to withhold production of the NYPD Intel Briefs to Plaintiffs. For the most part, the NYPD Intel Briefs contain "compilations of highly sensitive intelligence discussing, describing, analyzing, and assessing threats, sources, events, and news stories relating to terrorism", foreign adversaries, and counterintelligence. See DEF_E_PD_000111745, annexed to Plaintiffs' Letter Application at Exhibit B. Plaintiffs argue that Defendants' privilege log is conclusory and fails to "specify why the documents would expose ongoing law enforcement techniques and procedures or hinder future law enforcement investigations." See Plaintiffs' Letter Application at 4.

It is Defendants' position that this compilation of information concerns NYPD intelligence programs as well as constitutes institutional thoughts as to antiterrorism investigations and preparedness. Any dissemination of this information would seriously impair NYPD's ability to conduct future antiterrorism investigations and operations because it shows the information NYPD uses to assess terrorism threats as well as security capabilities and vulnerabilities, among other things.

As in In re New York, NYPD employed a law enforcement strategy that included "combing through publicly available information on the internet" and compiling the results of that search into a report, or in this case the NYPD Intel Briefs. Id. at 930. There, the Second Circuit determined that these compilations, i.e., Field Reports, were protected by the Law Enforcement Privilege because they contained information about undercover operations that relate to law enforcement techniques and procedures. Id. at 944. The Second Circuit further determined that disclosure of the information contained in the Field Reports would present a risk to future investigations and NYPD personnel. Id. So too, will disclosure of the NYPD Intel Briefs. As such, the asserted privileges should be maintained.

Moreover, the NYPD Intel Briefs contain information, when taken together and divined, provide insight into NYPD thoughts and concerns about nascent and potential terrorist threats One court applied the Law Enforcement Privilege to documents containing information relating to hypothetical events and the existing evaluations of strengths and weaknesses of various techniques and procedures that NYPD uses or anticipates to use to respond to law enforcement situations, like a terrorist attack. See, Macnamara v. City of N.Y., 249 F.R.D. 70, 86-87 (S.D.N.Y. 2008). Additionally, that court found the Magistrate Judge erred by denying the privilege to documents, euphemistically called the "Scenarios", that if disclosed would "likely expose vulnerabilities in NYPD's ability to address mass disorder and/or terrorist activity." Id. There, the District Court found that NYPD clearly made a substantial threshold showing that public disclosure of the Scenarios would likely result in specific harm to "identified important interests." Id.

Similarly, the Law Enforcement Privilege has been applied to a wide array of documents, and not exclusively to those constituting actual intelligence, but also documents relating to protocols, tactics, plans, or known otherwise as institutional knowledge. See e.g., Commonwealth of Puerto Rico, 490 F.3d 50, 67 (1st Cir. 2007)(Law Enforcement Privilege applied to internal FBI protocols relating to the use of force); Nat'l Congress for Puerto Rican Rights ex rel. Perez v. City

of New York, 194 F.R.D. 88, 94 (S.D.N.Y. April 7, 2000)(applied to memoranda [that] discuss specific deployment tactics used in a program to reduce subway crime); Schiller v. City of New York, 244 F.R.D. 273, 280 (S.D.N.Y. 2007) (applied to a document that describe[s] the NYPD's plans for its pre-RNC intelligence-gathering operation).

Here, it is also not the individual articles that has led to the assertion of privilege. Rather, it is the choice of what articles and information to include (and not include) that require protection from disclosures. In fact, courts have held that compilations of open source materials met the law enforcement exemption to a FOIA request. See Knight First Amendment Inst. At Columbia Univ. v. United States Citizenship & Immigr. Servs., 30 F.4h 318, 330 (2d Cir. 2022)(holding that compilations of publicly available questions relating to citizenship were protected for law enforcement purposes). In Knight, the Second Circuit stated that "an agency's compilation of laws and policies might provide insight into its conduct and approaches to law enforcement" and that "[r]eleasing this information would allow an individual with actual terrorist ties to better tailor his or her application to avoid detection." Id. at 328 – 330. In this case, releasing the NYPD Intel Briefs would provide insight into the intelligence NYPD and its federal, state, and local partners collect and analyze when assessing terrorist threats. Releasing this information would also provide individuals with terrorist ties the means to avoid detection by knowing that emphasis is being placed on specific criminal activities.

With respect to Plaintiffs' motion to compel documents they characterize as "Intelligence Directly Related to Protest Response" and "Redacted Subject Lines and File Names", Plaintiffs' arguments are conclusory, and for the latter, neglects to point to particular entries on Defendants' privilege log as examples, making it difficult for Defendants to respond. Courts have held that conclusory assertions of necessity as a basis for disclosing privileged documents is insufficient. See e.g., Edwards v. Schoenig, 2014 U.S. Dist. LEXIS 130498 at * 8 (E.D.N.Y. 2014). Moreover, the description of these documents clearly indicates that their disclosure would jeopardize the safety of confidential sources, witnesses, and law enforcement among other things.

    B.   *Federal Authorization is Required for the Disclosure of Certain Documents.*

Plaintiffs also seek the production of the DHS Intel. The DHS Intel documents contain a warning, in effect, stating that they may not be disclosed without prior federal government authorization, in some cases authorization is needed from DHS and in others from the FBI.[4] Defendants have contacted DHS and the FBI and received confirmation that DHS requires a formal Touhy request pursuant to 6 C.F.R. part 5 subpart C (in particular, 6 C.F.R. § 5.45), in order to evaluate whether to authorize disclosure of the DHS Intel. DHS will then analyze the request under the criteria in 6 C.F.R. part 5 subpart C in order to determine whether disclosure is permissible. We have not received the same confirmation from FBI, but presume that the same requirement applies. As such, Defendants maintain that the designation for the DHS Intel provided on their Privilege Log should remain.

---

[4] The documents were password protected and even Defendants did not have access to them. Defendants recently obtained access to password protected documents that were attached to produced emails. These documents themselves contain a similar warning.

### C. *The Public Interest in Nondisclosure Outweighs the Plaintiffs' Need.*

"Once the party asserting the privilege successfully shows that the privilege applies, the district court must balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information." In re New York at 948 (internal citations omitted). "There is a strong presumption against lifting the privilege." Id. (emphasis added); citing, Dellwood Farms, 128 F.3d 1122, 1125 (7th Cir. 1997). To rebut that strong presumption, "the party seeking disclosure bears the burden of showing (1) that the suit is non-frivolous and brought in good faith, (2) that the information sought is not available through other discovery or from other sources, and (3) that the party has a compelling need for the privileged information." Powell v. U.S., 2022 Dist. LEXIS 108630 at * 7 (S.D.N.Y. June 17, 2022); citing, In re New York at 948. "If the presumption against disclosure is successfully rebutted (by a showing of, among other things, a "compelling need"), the district court must then weigh the public interest in nondisclosure against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required." Id. Plaintiffs have not met this burden.

As in Macnamara and Powell, Plaintiffs here do not present a compelling need for the disclosure of the NYPD Intel Briefs. The compilations of daily terrorist threats, counterintelligence, and NYPD's treatment of them fails to inure to Plaintiffs' benefit. This information provides very little, if anything at all, concerning NYPD's response to the Summer 2020 protests or NYPD's policing policies. Accordingly, Plaintiffs have no compelling need that outweighs the damage of disclosing the NYPD Intel Briefs.

### III. Defendants Invocation of Privilege does not Preclude Their Affirmative Defenses

Plaintiffs "request that Defendants be precluded from relying on any specific incident described in any withheld document as part of [Defendants'] defense" and that "Defendants may not rely on the defense that force used against protestors was justified while withholding the basis for that determination." They point to Defendants' affirmative defenses of the use of reasonable, justified, and necessary force. Defendants maintain that their invocation of privilege does not preclude them from raising affirmative defenses because the documents being withheld on privilege grounds are not being used to support those defenses.

Plaintiffs' request, however, is mired by the very case law they cite in support. The cases Plaintiff relies upon, In re Grand Jury Proceedings, 219 F.3d 175 (2d Cir. 2000) and Trouble v. Wet Seal, 179 F,Supp.2d 291 (S.D.N.Y. 2001), do not stand for the proposition that affirmative defenses are to be precluded, but instead for the more narrow proposition that a party may not use the attorney-client privilege as both a "sword and a shield." United States v. Wells Fargo Bank, N.A., 2015 U.S. Dist. Lexis 84602 * 7 (S.D.N.Y. 2015). Assuming arguendo a broader application of the principle, it still bears no weight as this is not a case where Defendants are attempting to use privileged materials as both a sword and a shield. See Ambrose v. City of White Plains, 2011 U.S. Dist. Lexis at * 34 – 35 (S.D.N.Y. 2011); see also, Costabile v. County of Westchester, 254 F.R.D. 160, 167 (S.D.N.Y. 2008); In re Grand Jury 297 F.3d at 182. As such, the Court should disregard these requests.

### IV. Conclusion

The sheer volume of discovery already produced to Plaintiffs should precipitate the Plaintiffs narrowing of the issues in this matter as well as their need for additional documentation. Indeed, to date, Defendants have produced to Plaintiffs approximately hundreds of thousands of pages of discovery and conducted more than 60 depositions. However, Plaintiffs have lost sight of the proportional needs of their case, and now seek the production of more than 200 additional documents that are subject to the Deliberative Process Privilege, Law Enforcement Privilege, as well as prior federal government authorization.

Accordingly, Defendants respectfully request that the Court deny Plaintiffs' motion because: 1) the documents Plaintiffs seek in discovery are protected by either the Deliberative Process Privilege or the Law Enforcement Privilege, or require federal authorization for disclosure; 2) Plaintiffs' failed to show that are not privileged; and 3) Plaintiffs' failed to demonstrate how their need for privileged documents outweighs the public interest in nondisclosure. If the Court is inclined to grant any part of Plaintiffs' motion, Defendants respectfully request that the Court first conduct an *in camera* review of the subject documents.

Defendants thank the Court for its attention to this matter.

Respectfully submitted,

*Peter Scutero*

Peter Scutero
*Special Associate Counsel*
Special Federal Litigation Division

cc: ALL COUNSEL (via ECF)