

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

December 23, 2022

**By Electronic Filing**

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

> **Re:**  *In re: New York City Policing During Summer 2020 Demonstrations,*
> *No. 20-CV-8924*
> This Letter is Related to All Cases

Dear Judge Gorenstein:

I am counsel for the People of the State of New York and write on behalf of all plaintiffs in these consolidated actions to reply to Defendants' opposition to the production of 30(b)(6) witnesses regarding the preservation of protest video footage. ECF No. 791 (Opp'n).

## ARGUMENT

### I.    Plaintiffs' Motion is Ripe and Necessitated by Defendants' Stonewalling

As Defendants note, Plaintiffs have previously noticed 30(b)(6) topics relating to document retention and data storage policies. Although the Court found that such discovery was not ripe then, it is now.  Plaintiffs previously sought that testimony because "counsel for Defendants ha[d] been unable to explain why certain materials known to exist have not been produced," "who made th[e] decision" not to retain ARGUS footage after June 8 "and why." ECF No. 256 at 4. The Court denied the application to compel testimony for those topics, but did so without prejudice. Ex. A, Sept. 20, 2021 Tr. at 43:4–6. The Court explained:

> I'm not going to allow discovery about the discovery process unless there is some evidence of a loss and answers can't be gotten in some other way.  But the defendants still need to have transparency on this, and if questions are asked about, you know, the collection process, answers should be given.  On Arg[u]s, I think the defendants owe a sworn statement from somebody saying exactly what the retention process is where these documents are and so forth, so that should be provided in the next week.

Hon. Gabriel W. Gorenstein
Page 2

*Id.* at 42:11–19. The conditions for a renewed notice—evidence of loss and the inability to get necessary answers through counsel or documents—are now met.

First, there is clearly evidence of loss. The ARGUS declarations[1] that Defendants reference make clear that "Defendants issued a preservation request to the Information Technology Bureau ("ITB") seeking to preserve all video [only] from *selected* cameras from May 28, 2020, until June 8, 2020." ECF No. 773-1 (Fitzpatrick Decl.) (emphasis added) ¶ 5. Footage from some cameras that may have captured protests occurring on or before June 8 was not preserved. *Id.* ¶ 8 ("Although there were eight cameras in that location, none had archived footage, because that specific area was not identified during NYPD's self-initiated preservation efforts in June and July 2020, and thus no video covered by the area in the map was selected for archive."). Because *no* video recorded of protests after June 8 was marked for preservation it was overwritten and lost within 30 days of the recordings. *Id.* ¶¶ 5–6. Defendants have since indicated that the same self-initiated preservation request applied not only to ARGUS footage but also Aviation footage, such that Defendants produced only Aviation footage up to June 8, though flight reports show Aviation recorded Protests after June 8. There can be no dispute—and appears to be none from Defendants' papers—that video footage of the protests has been lost.

Second, despite lengthy conferrals since September 2021 and multiple affidavits, Defendants have failed, or categorically refused, to answer basic questions about this missing footage and about whether other kinds of video footage existed and has been destroyed. Given Defendants' destruction of responsive Aviation and ARGUS footage and admission that non-NYPD cameras were not searched, Plaintiffs reasonably believe that if there is a kind of footage absent from the production, it is not because it *never* existed, but it is missing because the Defendants destroyed it.[2] Defendants have yet to explain:

1) **How did Defendants identify which ARGUS cameras to flag for preservation?** The NYPD preserved video only from "selected cameras." Fitzpatrick Decl. ¶ 5. When Plaintiffs asked Defendants to identify the location of non-preserved cameras (to determine if relevant footage was lost) and explain why some footage was not preserved, Defendants first stated that there is no single list identifying the cameras then in existence but then refused to provide "the list of Argus and non-Argus cameras selected for preservation [as] subject to attorney-client and attorney work product privileges." ECF No. 773-3 at 2. Setting aside the apparent contradiction in those assertions, knowledgeable witnesses could explain which cameras were preserved, if there was a protocol for identifying which to preserve, and how that protocol was created. These answers will bear on the reasonableness of Defendants' steps to preserve evidence and the reasons for limiting preservation. *See* ECF No. 773 at 3, 6.

2) **Why did Defendants not amend their preservation notice to account for the broad preservation requests from multiple outside counsel?** Defendants initially explained that they did not expand their *sua sponte* preservation notice past June 8 (or beyond originally

---

[1] One of the three declarations was Bridget Fitzpatrick's revision to her original declaration, adding her explanation that there was no footage for a second set of nine ARGUS maps because there were no cameras at the locations identified or they had malfunctioned.

[2] Should testimony reveal that relevant camera footage exists but has not been produced, Plaintiffs will move to compel its production at that time.

Hon. Gabriel W. Gorenstein
Page 3

identified cameras) upon the City's receipt of outside preservation requests because "[a]ll of
the protest dates on plaintiffs' preservation lists fell within the time frame of NYPD's self-
initiated preservation." Fitzpatrick Decl. ¶ 6. When Plaintiffs pointed out that such a
characterization was inaccurate—because those requests plainly sought preservation of
footage of protests that might post-date the July 6, 2020 letters—Defendants would not
address that point. ECF No. 773-3 at 11 (No. 6). And Defendants have not explained why
they did not notify the letters' senders, as they requested, of their objection to expanding the
NYPD's preservation efforts in time to allow outside counsel to seek a court order to comply.
Dkt. No. 773-2 at 8, 42 (requesting notice of non-compliance so counsel "may seek judicial
intervention to secure relevant material").

Defendants, through counsel, have suggested that Aviation footage was also preserved
through the same NYPD June 8 notice. So, despite their belated promise to provide
information (but not an affidavit) about that preservation notice,[3] the same unresolved issues
persist. And these issues raise a core intent question, which may be a basis for stricter
remedies under Rule 37(e)(2), that knowledgeable witnesses should be required to testify to.

**3)  What other types of camera footage did Defendants control but fail to search or
preserve?** The Notice seeks testimony regarding "Footage," *i.e.* camera footage within the
City's control "concerning the Summer 2020 Protests and/or the NYPD." Defendants have
refused to take any steps to learn what types of cameras they controlled through non-NYPD
agencies which may have captured the Protests and indeed may not have searched NYPD
sources (e.g., dashcams). According to their opposition, the only legwork they have done in
this regard is to discover the total number of City agencies (150) but not whether any of these
agencies maintain cameras that record on streets, sidewalks, and bridges where all of the
Protests occurred. Presumably, the availability of surveillance footage through a City agency
is something that the NYPD, in its public safety role, would be well aware of.

Indeed, internal NYPD records suggest that the Lower Manhattan Security Initiative and
Coordination Center regularly retrieve Department of Transportation video, as shown in the
sample Video Retrieval Request shared with Defendants on July 5, 2022, *see* Ex. A at 1, 6;
ECF No. 773 at 8, and at least one IAB investigation (FI-20-454) that pulled video from two
DOT cameras on Canal Street. And one ARGUS declaration notes that "NYPD can access
CCTV systems that are owned by the NYPD or owned by external entities." ECF No. 527-1
¶ 4. We aim to learn more through depositions as counsel has refused to make the necessary
inquiries.

---

[3] Prior to the parties' November 29 meet-and-confer on Aviation footage, Plaintiffs asked Defendants to come
prepared to provide an explanation as to why that footage was not preserved or searched for previously. They did
not provide any substantive answers at that conferral or in a follow-up email on December 2. Plaintiffs informed
Defendants that failure to provide that information by December 5 would result in an impasse, but Defendants have
yet to provide any such explanation. Defendants later invited Plaintiffs to meet and confer yet again about that issue
and as to what form that information might take – they did not, as Defendants assert, commit to providing an
affidavit. After Plaintiffs last provided their availability, on December 8, Defendants have yet to confirm a date.
Even if Defendants seriously intended to provide additional information regarding Aviation, counsel's assertion that
the same *sua sponte* NYPD preservation notice covered Aviation footage put this on the same footing as the issues
relating to ARGUS footage.

Hon. Gabriel W. Gorenstein
Page 4

The parties have reached the limits of the conferral processes on spoliation and must depose people with knowledge as to City-controlled camera footage and how it was preserved.

## II. Plaintiffs Have Continuously Sought *All* Relevant Video in Defendants' Possession

Since their first consolidated requests, Plaintiffs have sought "all video" relating to the Protests in Defendants' possession. Defendants focus on one of three requests for documents that ask for such evidence. The two Defendants do not mention are Requests 14 and 15, which asked for "all Documents concerning any incidents" under investigation by the NYPD or the CCRB "including . . . video and audio recordings." ECF No. 103-1 at 17. These clearly ask for all videos in Defendants' possession related to protest incidents under investigation. Defendants do not contest that. Nor have Defendants preserved any objections because the discovery chart includes, in column F, (1) a limitation on only BWC for Request 8, and (2) *no* limitation on what Defendants said they would produce in response to Requests 14 and 15.

Defendants instead refer solely to Request 8(h), which asks that they produce, for each of the Protests, "[a]ll videos, including TARU videos, bodyworn camera videos, and Aviation Unit videos." Defendants want to now interpret "including" as limiting "[a]ll videos" to only the sources Plaintiffs identified (TARU, bodyworn camera and Aviation). That is not a fair reading or consistent with Defendants' own prior interpretation. Defendants have produced camera footage outside this list, notably ARGUS video. Further, the Supreme Court has consistently interpreted "including" as introducing illustrative examples rather than a restrictive definition. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012) (The term "is introduced with the verb 'includes' instead of 'means.' This word choice is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive."); *West v. Gibson*, 527 U.S. 212, 212–13 (1999) ("including" preceded list of equitable remedies, making "clear that the authorization is not limited to the remedies specified"); *see also Pfizer, Inc v. United States Dep't of Health & Hum. Servs.*, 42 F.4th 67, 76 (2d Cir. 2022) (the word "includes" is "usually a term of enlargement, and not of limitation"). These Requests were not limited to NYPD-controlled cameras but rather sought all protest-related footage in Defendants'—including the City's—possession.

Plaintiffs have never narrowed those requests and have repeatedly reminded Defendants at meet-and-confers of this fact. Defendants never disclosed in their discovery chart that they were limiting their search in response to these requests to certain NYPD-controlled cameras until *this* conferral process. ECF No. 773-5 at 13. Defendants say they "identified the sources of video evidence [they] anticipated to have relevant information and those were limited to NYPD sources," Opp'n at 2, but those sources in Defendants' ESI disclosures do not align with what Defendants say they searched as they exclude Aviation and TARU video and include footage we did not receive (dashcams and CCTV cameras outside of precincts, interior of Mass Arrest Processing Center (MAPC), and inside precinct interview rooms).[4] Defendants cannot blame Plaintiffs for their own failure to perform the necessary searches for responsive documents,

---

[4] Defendants also fail to mention that their ESI disclosures identify a non-NYPD source, "[Office of the Mayor] Network Drives," and that, per Judge McMahon's rules, they list only what Defendants believed to be the *likeliest* sources of relevant emails, not the only sources searched in response to Defendants' requests for preserved footage.

Hon. Gabriel W. Gorenstein
Page 5

notwithstanding several rounds of motions and sanctions on just that issue, or for not knowing precisely what camera footage was in Defendants' possession and control when they claim they do not know either. Without counsel's cooperation, we need 30(b)(6) testimony to determine to what footage should have been captured by a proper search if that footage is lost.

## III.    Defendants Fail to Establish the Burden They Claim

Defendants rest their opposition to the Notice on the claims that (1) they have answered all of Plaintiffs' questions regarding spoliation of video footage; (2) there is no other evidence of spoliation and (3) the Topics are "unreasonable, overbroad and not proportional to the needs of the case."[5] The first two claims have been debunked above and the third is unsupported by any facts.

Defendants speculate that "[i]t is in fact *likely* impossible to determine what other video systems the City controlled without narrowing the inquiry to specific agencies or entities associated with the City," that such video would "be extremely *unlikely*" to have material evidentiary value, and "it is *likely* that the City could not comply with [an order to produce the witnesses sought] as it would take dozens of deponents to testify on these topics." Opp'n at 6 (emphasis added). Glaringly, counsel makes no claim that she even attempted to confirm these assumptions by asking any City agency—including the NYPD—whether there exists a database of the types of cameras in Defendants' control or if they are aware of non-NYPD cameras on public streets. Nor do they claim to have confirmed with the NYPD who may be educated as to the protocols for storing and preserving video footage, if not centrally controlled, or taken steps to determine whether any claimed burden would be lessened if they accepted Plaintiffs' offer to take certain testimony by written question. It is plain that Defendants are merely guessing that this would be an "impossible" feat. Contrary to Defendants' assertion, Opp'n at 6, Plaintiffs do not seek an exhaustive list of all individual cameras but asked for the types of cameras Defendants controlled, and only to better understand their burden argument. Counsel's continued speculation fails to establish that burden.

For these reasons, the Court should order Defendants to identify witnesses who will testify to the Topics forthwith, and to schedule the same with sufficient time for Plaintiffs to make the substantive spoliation motion in short order.

Sincerely,

Lillian Marquez, Assistant Attorney General
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-6401
Lillian.Marquez@ag.ny.gov

CC: All counsel of record

---

[5] Defendants also argue that Plaintiffs have not proven an intent to deprive but that is not required to set forth an adequate factual basis for the testimony sought.