| | |
|---|---|
| **From:** | Marquez, Lillian |
| **To:** | Robinson, Amy (LAW); AG-NYPDLitigation; Payne Litigation Team; sierrateam@moskovitzlaw.com; "Sow-Legal"; rolonlegalteam@aboushi.com; GrayLegalTeam@dwt.com; Hernandez Team |
| **Cc:** | Nelson, Genevieve (Law); Weng, Jenny (Law) |
| **Subject:** | RE: ARGUS Responses |
| **Date:** | Tuesday, July 5, 2022 5:06:12 PM |
| **Attachments:** | NYPD-00137346_LMSI request.pdf<br>DEF_E_PD_00055618_image.pdf |

Amy,

Thanks for your responses. Some follow up responses from us are below:

1. Please provide footage from 1 pm to 6 pm for the Union Square and 6 pm to 9 pm for the City Hall/Bk Bridge maps.

2. Please provide your response by 5 p.m .Wednesday, July 7. We think that there must be an accounting regarding the targeted cameras as Defendants have provided declarations regarding the number of cameras and hours of footage that were preserved.

3. We find it implausible that there is no record of where ARGUS cameras existed in 2020. You note that "the only way to determine if a camera is ARGUS camera is through the ARGUS system" – is there a way to audit that system for a list of cameras and when those cameras were placed at a particular location? As the attached LMSI video request suggests, there seems to be a way for officers requesting ARGUS video to do a geographic search for these cameras (in order to be able to identify them in the request form)– is there any reason why this information cannot be extracted and compiled into a list? Please provide responses to these by Wednesday at 5 pm.

4. Regarding the criminal case inquiries for ARGUS, please provide your response by 5 pm tomorrow. Regarding the NYPD search for more LMSI video retrieval requests, what was used to determine whether a request was "pertaining to the protests", i.e. was Schedule A appended? Were the dates and locations in that schedule separately searched? Please let us know by tomorrow at 5 pm.

5. Please provide that request by Wednesday at 5.

6. As noted in our letter and on our call, the document pertaining to the TARU request is DEF_000405646–48, and the fact that some ARGUS cameras were zoomed in or panned from side to side to capture specific activity suggested that an individual was monitoring ARGUS footage contemporaneously. Indeed, as the attached email notes, officers working at JOC can "bring[] up the ARGUS cameras on one of the computer monitors at [their] assigned desk." DEF_E_PD_00055618. We reiterate our request for an explanation as to why contemporaneously-monitored protest footage (and footage that related to preservation letter requests) were not preserved. If you will not provide that explanation, please let us know. Either way, please provide your response by Wednesday at 5.

7. You did not provide a response regarding whether all preservation notices and letter requests were produced to us (including the Legal Aid letter referred to in Bridget's declaration). Please provide any that were not produced or confirm that they've all been produced by Wed. at 5.

Regards,

**Lillian Marquez | Assistant Attorney General**
New York State Office of the Attorney General, Civil Rights Bureau
28 Liberty St., New York, NY  10005
Tel: 212-416-6401 | lillian.marquez@ag.ny.gov | www.ag.ny.gov
Pronouns: She/Her/Hers

---

**From:** Robinson, Amy (LAW) <arobinso@law.nyc.gov>
**Sent:** Friday, July 1, 2022 6:08 PM
**To:** Marquez, Lillian <Lillian.Marquez@ag.ny.gov>; AG-NYPDLitigation <AG.NYPDLitigation@ag.ny.gov>; Payne Litigation Team <PayneLitigationTeam@nyclu.org>; sierrateam@moskovitzlaw.com; 'Sow-Legal' <Sow-Legal@blhny.com>; rolonlegalteam@aboushi.com; GrayLegalTeam@dwt.com; Hernandez Team <hernandez@femmelaw.com>
**Cc:** Nelson, Genevieve (Law) <gnelson@law.nyc.gov>; Weng, Jenny (Law) <jweng@law.nyc.gov>
**Subject:** ARGUS Responses

**[EXTERNAL]**

Lillian,

Thank you for your comments.  After conferring the NYPD, the answers to the questions you posed are as follows:

1. Determine a date by which you can provide ARGUS footage for the nine protest maps sent earlier this year.

    Production of footage for seven of the nine additional maps will take approximately three weeks.  The other two maps, Union Square and City Hall/Brooklyn Bridge do not have time frames on them and so cannot be included in the estimate at this time.  Please provide time frames for those maps.

2. Determine whether there exists a list of the cameras (preferably by location) that were selected for preservation pursuant to the notice from the NYPD Legal Bureau's notice to preserve referenced by Ms. Fitzpatrick in her declaration. If so, or if there is any other document(s) that would provide this information, please provide it.

    Defendants expect to be able to give you a response to this inquiry sometime after the holiday.

3. Determine whether there exists a list of all cameras that existed at the time of the 2020 protests so as to help confirm what cameras were *not* selected for preservation.

If there is a list or any other documents that would provide this information, please provide it.
   a. As part of this investigation, please advise whether the cameras at the intersections listed in Exhibit C to our June 10 letter are ARGUS or other Defendant-controlled camera and, if so, whether footage from the protests were captured or preserved from these cameras.

There is no list of all cameras that existed at the time of the 2020 protests. There is no way to tell if the Google map photos of cameras that you provided are ARGUS cameras. The only way to determine if a camera is ARGUS camera is through the ARGUS system.

4. Confirm the nature of the search for ARGUS footage in response to the Court's order, including the search you described in you 5/27 email as follows: "The NYPD has since performed a search for any other ARGUS that may have been saved by request outside of the preservation dates but during the Schedule A protest period. This search yielded negative results."

   The nature of the search for ARGUS is covered in Bridget Fitzpatrick's June 8, 2020, declaration. As to your second inquiry, in response to becoming aware of the ARGUS footage for a particular location that was outside the preservation period, the NYPD conducted a search for other preservation requests outside of the preservation period, which yielded negative results. That request was made using an NYPD form which went directly to LMSI in the normal course of business. The NYPD searched to see if any other requests using this form were generated for additional footage pertaining to the protests. That search yielded negative results.

   a. In this regard, we noted that there may be ARGUS footage that lives with a criminal investigation file (rather than explicitly protest related) like footage referenced in the production related to the July 15, 2020 incident on the Brooklyn Bridge footpath. Were these types of files searched?

   We were unable to reach the Legal Bureau's criminal section to determine if there is ARGUS videos in criminal files, such as the incident involving Chief McMahon, i.e., whether ARGUS videos were requested in such circumstances. We will endeavor to obtain this information after the holiday. However, anything further beyond this inquiry raises privilege, privacy and burden concerns

5. Determine if there are documents setting forth how preservation requests are handled, including any protocols for determining what to preserve and the mechanical process. For instance,
   a. According to Mr. Klubnick's declaration, "[a] request to preserve video beyond the thirty (30) day retention may be made by the Deputy Commissioner of Counterterrorism, the Deputy Commissioner of Legal Matters, or their respective authorized designees" – who are those designees and in what form can that request be made?

   Defendants will formally produce the preservation request made by DCLM Hart to

  ITB.

  b. He also said, "To effectuate this preservation request, members of ITB worked with Lower Manhattan Security Initiative ("LMSI") and the Department's vendor to identify the ARGUS system cameras at the specified locations and archive all ARGUS system camera footage recorded from May 28, 2020 through June 8, 2020 from those cameras."
    i. Our request for protocol documents would include anything that clarifies: (a) the process through which relevant ARGUS cameras are identified;
    ii. How footage is archived (is this by the press of a button, by a sole assigned person?); and
    iii. What limitations may exist to archiving footage – for instance, you indicated that there might be storage space concerns.
  c. As part of this inquiry, please identify who's who – who can fulfill preservation requests, who would know about this entire process, who monitors ARGUS videos, etc.

  As to (b)(i), as stated at the meet and confer, ARGUS cameras for the maps provided by plaintiffs were identified based on conversations that PD Legal had with various commands involved in the protests and from MAPC spreadsheets looking at where arrests were being made. As to (b)(ii), footage is stored on a server for 30 days then overwritten pursuant to a retention plan. Footage is archived only under circumstances when it is requested within the 30-day retention period and it is copied to a disc and provided. Any NYPD officer can request ARGUS footage by making a request through the Legal Bureau who then in turn uses the NYPD form discussed in response to No. 4 above. Defendants do not understand what you mean by, "who monitors ARGUS videos. . ." As the (b)(iii), Argus footage is stored on a server do to its size. As to (c), any officer can make a preservation request. We do not understand what is meant by, "who monitors ARGUS videos, etc."

6. Provide in writing the reasons why Defendants did not preserve any other ARGUS footage than what was provided on May 27. In doing so, please address Plaintiffs' notes that language in the preservation requests did not have an end to the relevant time period, that ARGUS cameras appeared to have been monitored contemporaneously such that relevant footage could be timely identified and preserved, and that NYPD Legal asked for a different preservation period for TARU videos (to June 20).

  Again, we do not understand what you mean when you say, ". . . that ARGUS cameras appeared to have been monitored contemporaneously." With respect to TARU, kindly provide the preservation request that you are referring to.

7. Confirm that Defendants have produced to Plaintiffs all Notices of Claim, preservation requests, and notices to preserve (from Defendants) that pertain to any of the Protests. If any of these are missing from the production, please produce those documents. You noted that the June 28 preservation request may have been a phone call; if it was, please identify the requester and date of the call.

    Defendants need to confirm that a request was made for all notices of claim and whether defendants produced notices of claim in response to that request. The June 28, 2020, request was not a phone call. The lieutenant actually completed an NYPD form to make the request which went directly to LMSI.

8. Confirm that (a) all relevant ARGUS footage of the protests that exists has been produced to Plaintiffs and, conversely that (b) if we did not receive footage from a particular ARGUS camera in the production to date, that means it has been destroyed.

    Defendant produced relevant ARGUS footage corresponding with the plaintiff-provided maps as laid out in the Fitzpatrick Declaration and will provide relevant footage for the additional seven of nine maps to the extent possible as per the parties' agreement. As to the two other maps, we await information from plaintiffs. ARGUS camera footage is not destroyed; it is overwritten in 30 days pursuant to the retention plan.

9. Provide a revised declaration from Ms. Fitzpatrick that conforms to the Court's order, i.e. states what camera footage has not been provided but which would have been responsive to our maps and provide a reason why—whether it was not preserved or not working. Please confirm how many cameras fall into each category.

    At no time during the meet and confer was there an agreement to provide a revised declaration. The agreement was to provide the protocol that was used to select cameras during the preservation period, which has been provided. However, defendants will supplement the declaration with respect to the nine maps.

In addition, we discussed Plaintiffs' position that Defendants may have spoliated ARGUS footage and may seek depositions of persons with knowledge regarding that issue, but held further discussion in abeyance pending the above-mentioned inquiries and appropriate discovery about exactly what happened (such as depositions).

    There was no agreement pertaining to plaintiffs' taking depositions of persons with respect to any spoliation claims plaintiffs believe they have.

Regards,
Amy

Amy Robinson
Senior Counsel
Special Federal Litigation Division
New York City Law Department
100 Church Street
New York, NY 10007
(212) 356-3518
arobinso@law.nyc.gov



# VIDEO RETRIEVAL REQUEST

**REQUESTOR**

**Date of Request:** 6/24/2020

- **Name:** MICHAEL TORPEY
- **Rank:** SGT
- **Tax Registry No:** 924560
- **Command:** HOUSING INVESTIGATIONS UNIT / 820
- **Telephone Number:** (212) 860-2765
- **Fax Number:** (xxx) xxx-xxxx

**Location:** * Frederick Douglas Circle 110 Street and Central Park West
* (3) Argus and (1) DOT camera

**Stationhouse or Non-Stationhouse Camera:** * Non-Stationhouse Camera
**Camera Type:** ARGUS
(*Stationhouse camera requires Commanding Officer's approval)

**ARGUS Box/Camera Utilized:** *
7.1524 110 St. SS1E of Frederick Douglas Blvd. Cam 1
7.1524 110 St. SS1E of Frederick Douglas Blvd. Cam 2

**Date Start *:** 6/4/2020  20 : 15
**Date End *:** 6/4/2020  21 : 00

**Burn:**

---

**REASON FOR REQUEST**

- **Crime:** HBIU internal Investigation
- **ICAD #:**
- **Arrest #:**
- **Complaint #:**
- **Intel Lead #:**
- **Case #:**
- **I-Card #:**
- **Other (Specify):**

**LMSCC PERSONNEL**

LMSCC# (for LMSCC internal only):

**ATTACHMENTS**

Outside Agency Video Request Document Upload   ⊕ Add Attachment

[Print to PDF]   [Submit]   [Cancel]

OAG-0393783