

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK , NEW YORK 10007

**AMY ROBINSON**
*Senior Counsel*
arobinso@law.nyc.gov
Phone: (212) 356-3518
Fax: (212) 356-1148

**By ECF**  December 23, 2022
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    In Re: <u>New York City Policing During Summer 2020 Demonstrations</u>,
           No. 20 Civ. 8924 (CM) (GWG)
           This filing is related to all cases

Your Honor:

    I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. I write concerning the number and scheduling of the remaining depositions in this matter and respectfully request: (1) a protective order limiting the number of remaining depositions; and (2) that defendants be relieved of the requirement to schedule all remaining depositions on one date, December 30, 2022, and instead, continue to schedule the remaining depositions on a two-week rolling basis starting January 13, 2023. The parties met and conferred on December 21, 2022,[1] and reached impasses with respect to both requests in this application. Defendants have not previously sought the requested relief herein.

**I.  Motion for a Protective Order to Limit the Excessive Number of Depositions[2]**

    In these consolidated matters, plaintiffs seek and have sought to take over 150 depositions without stipulation or leave of the court. Many of the additional depositions sought would be duplicative and cumulative and are unlikely to materially advance any claim or defense

---

[1] The attorneys in attendance at the December 21st meet and confer were Wylie Stecklow, Lillian Marquez, Remy Green, Tobias Zimmerman, Peter Scutero and Amy Robinson.

[2] The parties are still discussing defendants' objections individual deponents, particularly the high level and Rule 30(b)(6) witnesses. In fact, the parties are scheduled to meet next week. Should the parties reach an impasse on any of those witnesses, defendants will make a separate application in that regard. Even if the parties were to reach agreement on all those deponents, plaintiffs' list would still require further limitation.

in this action, and should therefore not be allowed. Defendants therefore request a protective order limiting the number of depositions still to be taken to a reasonable number.

Rule 26(c)(1)(D) provides that, upon a movant's application:

> "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters."

Good cause exists to limit the number of depositions by plaintiffs. The Federal Rules of Civil Procedure presumptively limit each party to ten depositions. See Fed. R. Civ. P. 30(a)(2)(A) ("[a] party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than ten depositions being taken. . .."); see also Galgano v. Cty. of Putnam, 2021 U.S. Dist. LEXIS 99702, at *4 (S.D.N.Y. May 26, 2021) quoting DelaRaba v. Suozzi, CV 06-1109, 2006 U.S. Dist. LEXIS 92813, 2003 WL 8435603, at *1 (E.D.N.Y. Nov. 17, 2006) ("[a]bsent an agreement among the parties, a party must obtain leave of the court before taking any additional depositions beyond the limit of ten."). Rule 30(a)(2)(A) is meant to "enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of '[w]ide-ranging discovery.'" Sigala v. Spikouris, 00-CV-0983, 2002 U.S. Dist. LEXIS 10743 at * 10, 2002 WL 721078 at *3 (E.D.N.Y. Mar. 7, 2002) (quoting Whittingham v. Amherst Coll., 163 F.R.D. 170, 171–72 (D.Mass. 1995)). Accordingly, "[t]he mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." Sigala at * 10; see also Commodity Futures Trading Com'n v. Commodity Inv. Group, Inc., 05-CV-5741, 2005 U.S. Dist. LEXIS 27454, 2005 WL 3030816 at *1 (S.D.N.Y. Nov. 10, 2005) ("[a]lthough a witness might have discoverable information, a party is not always entitled to depose that individual.").

In addition, Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure sets forth the factors the Court should consider to limit the extent of discovery—which also apply when a party seeks to exceed the ten-deposition limit imposed by Rule 30(a)(2)(A)(i). These factors include whether (1) "the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other sources that is more convenient, less burdensome, or less extensive," (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," and (3) "the burden or expense of the discovery outweighs its likely benefit, considering the needs of the case, the parties' resources, the importance of the issue at stake in the action, and the importance of the discovery in resolving the issues." Atkinson v. Goord, No. 01-CV-0761, 2009 U.S. Dist. LEXIS 27851 at * 4, 2009 WL 890682, at *1 (S.D.N.Y. Apr. 2, 2009); see, also, Snoussi v. Bivona, No. 05-CV-3133, 2011 U.S. Dist. LEXIS 147833, 2011 WL 6761068, at *1 (E.D.N.Y. Dec. 22, 2011);; Gross v. Bare Escentuals, Inc., 03-CV-3089, 2006 U.S. Dist. LEXIS 79320, 2006 WL 3161386 at *1 (S.D.N.Y. Oct. 30, 2006). This also applies to cases filed as putative class actions. See Redmond v. Moody's Investor Serv., 92-CV-9161, 1995 U.S. Dist. LEXIS 6277, 1995 WL 276150 at *4–5 (S.D.N.Y. May 10, 1995)(defendant unable to demonstrate basis for deposing sixty-eight nonrepresentative class members because the knowledge possessed by those class members was not shown to be superior to the named plaintiffs, and the volume of depositions would be unduly burdensome).

Discovery in these consolidated cases—including deposition discovery—has become unduly burdensome. Plaintiffs have already deposed approximately 70 individuals and noticed an additional 80 depositions. At the Court conference on July 11, 2022, plaintiffs estimate that there are *well over 100* depositions *remaining* to be taken. (Ct. Tr. 7/11/22, pp. 70-71). In fact, the Court's July 2022 Order accounted for 132 deponents. (Dkt No. 679). Meanwhile, three of the actions in these consolidated cases have been resolved via acceptances of Rule 68 Offers of Judgment. (Yates Dkt. No. 88; Hernandez Dkt No. 30; and Minett Dkt No. 26). In addition, the parties in Sierra/Wood[3] recently settled that class action in principle. (See Dkt Nos. 784 and 786). This currently leaves a total of five active lawsuits[4] remaining in these consolidated cases. By applying the rule of ten depositions, it becomes clear that these five sets of plaintiffs who remain in these cases should not be permitted to take as many depositions as they noticed, absent an application for leave of the Court justifying why this should be allowed. The court in turn should take into consideration the depositions plaintiffs have already taken when deciding how many more should be allowed. To be sure, because of the consolidated nature of these actions, and because they included putative class actions, defendants understand in principle that plaintiffs would want to depose a reasonable number of additional individuals beyond the statutory ten per case, but plaintiffs' intention of deposing over *150* people is plainly excessive. The discovery conducted to date, including depositions and hundreds of thousands of documents and media, has already provided plaintiffs with more than a representative sample of the class-wide information relevant to their claims.

Deposing this many witnesses, especially prior to class certification, belies not only the goal of efficiency via consolidation, but runs contrary to Rule 1 of the Federal Rules of Civil Procedure which calls for the just, speedy, and inexpensive determination of every action and proceeding. In addition, Deposing individuals with no unique knowledge or substantive personal involvement in the Summer 2020 protests, or deponents from incidents where those one-off cases were resolved by motion or settlement, is simply not conducive to the aim of Rule 1. Expending resources on such depositions would fail to promote claims or defenses or make any fact more or less probable. Indeed, such an endeavor would be wasteful and hence disproportionate to the needs of the case.

Moreover, it is noteworthy that, despite the vast discovery which has already occurred, no plaintiff has moved for class certification. In order to certify a class, plaintiffs must meet the requirements under Rule 23 of the Federal Rules of Civil Procedure. At the very least, the Court should limit remaining discovery, including the number of depositions, pending class certification. Continuing to engage in such expansive and expensive discovery is extremely wasteful if plaintiffs' anticipated motion for class certification is ultimately denied, or if their putative class becomes certified according to a definition that is far more limited than the extraordinarily broad and vague group whom the remaining individual plaintiffs presently purport to represent.

---

[3] The Sierra-Wood matters were consolidated, per Dkt Nos. 740 and 741.

[4] Mediation of the declaratory demands in five cases, People, Sow, Payne, Rolon, and Gray, is ongoing.

**II.     Request for an Extension of Time to Schedule Remaining Depositions**

On July 21, 2022, the Court issued an Order which required, *inter alia*, that every two weeks defendants must provide to plaintiffs deposition dates, with an alternate date of availability, for each of ten deponents. (Dkt. No. 679). Defendants complied with that order up to the time when most discovery was stayed for the parties to mediate settlement of the declaratory claims. The "discovery pause" ended on November 18, 2022. Since then, defendants have been scheduling depositions in compliance with that Court's Order. As such, depositions are now scheduled through January 20, 2023. Defendants have needed to cancel three scheduled officer depositions due to the illness of the assigned defending attorneys.[5] Plaintiffs have cancelled a number of depositions, including many of the remaining plaintiffs' depositions that defendants have attempted to schedule.[6] Defendants have also been maintaining the pace of scheduled depositions as set forth in the July 21st Order. In fact, although the Court's July 21st Order required 15 deponents to be scheduled in the period that turns out to be December 2022, defendants were able to schedule 21 depositions in December.

The parties agree that, pursuant to the July 21st Order, by December 30, 2022, defendants are to provide a schedule, including alternate dates, for the approximately 80 remaining depositions, which include approximately 20 line officers, the high-ranking officials and Rule 30(b)(6) witnesses. Defendants note that plaintiffs have added more deponents since the July Court conference, including new depositions noticed in November (Mayor Eric Adams and Commissioner Keechant Sewell) and one in December of a line officer.

Both the extension and the request to modify the scheduling of the remaining depositions on a two-week basis is necessary for the following reasons. First, it is not possible for defendants to schedule approximately 80 depositions with alternate dates to occur on or before May 30, 2022, as there are only 81 business days from January 20th through May 30th, the existing discovery deadline.

Second, it is not possible for defendants to schedule approximate 80 depositions at one time. Having gone through the exercise of scheduling these depositions pursuant to the July Court Order, we can confirm that it is quite an undertaking even where the deadline is to provide only ten witnesses at a time. In order to schedule these depositions, defendants must take into consideration, *inter alia,* the availability of the officers, the defending attorneys and even union counsel's availability in some instances. Third, there are many deponents who are retired and more continue to retire on a regular basis (which requires an often time-consuming additional process in attempting to contact them). This is complicated by some deponents who re-located

---

[5] Should the Court require additional detail about these illnesses, counsel can provide it *ex parte* to Your Honor.

[6] Plaintiffs have requested alternate dates within the provided schedules for several witnesses. However, the Court's July 21st Order does not require defendants to do so. More importantly, it is not possible for defendants to provide more alternate dates than the one within a given schedule because of the deponents' availability.

to different parts of the State, different states and out of the country, which leads to a longer length of time for them to respond.

Fourth, determining availability for the approximately 60 high-ranking and 30(b)(6) deponents has become even more difficult by the massively complex retrieval process of their calendars and cell phones which was ordered by the Court and which has taken months to coordinate. Whether a high-ranking or Rule 30(b)(6) deponent is available to be scheduled deposition is now also dependent on whether the retrieval and review process of their calendars and cell phones are completed. The process of obtaining these 60 members of services' text messages requires each to submit their department phones to the NYPD Computer Crimes Unit, unlocking the phones, copying the entire content, limiting the retrieved content to the pertinent dates, physically providing the content to the E-Discovery Group at the Law Department who must process the data, and then the thousands of pages of resulting text messages must be reviewed and produced before the depositions. As the Court can surmise, NYPD cannot take 60 department phones from these high ranking law enforcement members at one time, and it is being done on a rolling basis. In short, providing dates for the depositions for all of these deponents, including an alternate dates, by December 30, 2022, or any other one date, will be overly burdensome, if not impossible. It is also impractical, in light of the defendants' motion for protective order which, if granted, will impact many of these deponents.

Defendants have not previously sought an extension of the deadlines raised herein. Plaintiffs do not consent to either the extension or to the continued scheduling of depositions on a two-week basis. Plaintiffs' position, sent by email today, is as follows:

> Plaintiffs oppose any artificial cap for all of the reasons we have opposed it before when the court previously denied this motion. Moreover, Plaintiffs oppose the current motion because the parties have a scheduled meet and confer next week to discuss whether any individual depositions can be eliminated as duplicative or unnecessary. Further Plaintiffs' counsel do not believe that the parties' have reached an impasse, and so the Defense has not satisfied the Court's conferral requirement prior to filing this subject motion. Defendants could have made this motion at any point since the Court set the deadline, or after the stay expired, and have not done so until the eleventh hour. Should it not be denied on these bases alone, Plaintiffs respectfully request a week to respond to Defendants' motion, to December 30, in light of the holidays, planned vacations, and unexpected timing of the motion.

Defendants disagree that the parties have not reached an impasse on the requests made in this application. In addition, plaintiffs' position is contradictory: plaintiffs argue that defendants should have waited to meet and confer more even though plaintiffs made it abundantly clear at the December 21st meet and confer and in subsequent emails that they will not agree to any limit on the number of depositions, the amount of extension time and on the modified scheduling defendants are requesting; but at the same time they also argue that defendants waited too long to make their application. In any event, as noted in footnote 2, further limitations to plaintiffs' deposition list is warranted beyond the individual deponents to be discussed.

**III.     Conclusion**

For the foregoing reasons, defendants respectfully move the Court for: (1) a protective order limiting the number of depositions taken by plaintiffs to a reasonable number beyond those depositions already taken; and (2) for an extension of time to schedule the remaining depositions to January 13, 2023, and to relieve defendants of having to schedule all the remaining depositions at once.

Thank you for your consideration of this matter.

Respectfully submitted,

*Amy Robinson s/*

Amy Robinson
*Senior Counsel*

cc:     ALL COUNSEL (*via* ECF)