

December 27, 2022

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

Re:   In re: New York City Policing During Summer 2020 Demonstrations,
1:20-CV-8924 (CM) (GWG) — This Letter Relates to *Sow*, 21-cv-533

Dear Judge Gorenstein:

I write on behalf of the *Sow* Plaintiffs in the consolidated case above to ask that the Court reconsider, under Local Rule 6.3, the portion of its Order at Dkt. No. 780 relating to *Sow* Interrogatories Nos. 10 and 11.[1]  Given that the underlying motion is a discovery motion, we make this motion by letter (filed as a letter as the Court's rules provide for discovery motions) — but are happy to recast it in more formal briefing if the Court would prefer.

### Background

The history of this motion and the related meet and confers are set out in the moving letter at Dkt. No. 742.  As relevant here, Interrogatories 11 and 12 in the *Sow* requests sought information essential to one of *Sow* Plaintiffs' *Monell* theories:  That NYPD's "bad apples" have a tendency to "fail upward," and the worst kind of abusers of certain sorts of protesters are ultimately rewarded with career benefits.  In support of this theory, the First Amended Complaint highlights "numerous instances of the NYPD's ignoring CCRB disciplinary recommendations following complaints of police misconduct" — including specifically "that the NYPD failed to discipline then-Deputy Chief Monahan after he directed [unconstitutional activity] 2004 RNC protest" and "instead, he was eventually promoted to Chief of Department, and … directed the use of the same strategies against the Mott Haven protesters on June 4, 2020."  *In re NY City Policing During Summer 2020 Demonstrations*, 548 F Supp 3d 383, 405 (SDNY 2021).  As noted in the motion, the Court found this theory well-pled and allowed it to proceed to discovery.  *Id.*

The Court ultimately sustained a burden objection to the requests in full — seemingly finding that the request could not be narrowed appropriately.  The Court explained,

---

[1] As noted in Dkt. No. 797, Plaintiffs may file a broader appeal of the order, particularly as concerns the "discovery chart" issue related to *Sow* Document Request No. 12 (Dkt. No. 780 at 1-2) — and have asked that their time to do so be stayed pending a decision on this motion and conducting the meet and confer the Court ordered (which Defendants have not yet provided any dates for, despite repeated requests since December 13).



> "Defendants have made a compelling showing regarding the burden of this request as currently formulated, see Docket # 750-1, and we find that the burden would be disproportionate to the needs of the case. The fact that plaintiffs' complaint in this action made allegations regarding these matters, and that the allegations were found sufficient to state a claim, is germane to the issue of relevance but does not address the question of whether any particular discovery request is appropriate following the balancing required by Fed. R. Civ. P. 26(b)(1)."

Dkt. No. 780 at 2.

The Court also rejected an alternative request for relief. Plaintiffs had asked that, "if the Court sustains a burden objection, the Court should also grant an inference that the City has not adequately imposed discipline following protest-related excessive force," reasoning that "[t]he City should not be allowed to use the burden of actually parsing information as a sword and a shield." Dkt. No. 742 at 5-6.[2] Plaintiffs cited Rule 37(c) in passing, and apologize for the lack of clarity, but the core argument being made was the common-sense — and common law — sword and shield doctrine: The basic idea being that equity prevents a party from "impermissibly and unfairly [wielding] attorney-client privilege," for example, "as both sword and shield." *SEC v Honig*, 2021 US Dist LEXIS 229931, at *24 (SDNY Nov. 30, 2021). In basic terms, the argument was the City should not be able to "present to the jury a version of events that serves [its] defense, while insulating [itself] from discovery." *Id.*[3] Defendants' opposition was to say there was no authority they found supporting the sword/shield point — while not citing any authority rejecting it either. The Court ultimately ruled that "the request is denied as unsupported by citation to any case law or rule, other than Rule 37(c). Rule 37(c) has not been triggered by this request, however, given that there has been no determination that the City has improperly failed to make a disclosure." Dkt. No. 780 at 2.

Particularly in light of the many opportunities the Court has offered the City to clarify its arguments or claims — or even make an argument for the first time — after a motion was fully briefed (*see* Dkt. Nos. 779, 755, 263, *see also, e.g.,* Dkt. Nos. 598, 513), Plaintiffs respectfully request that the Court reconsider its decision as set out below.

---

[2] Plaintiffs also cited information that shows that discipline of officers for conduct during the 2020 racial justice protects has been — even for those officers that have been identified, and there were many issues identifying officers — basically non-serious. Despite the CCRB recommending discipline of 145 officers, and the highest penalty for 88, only 18 have faced ***any*** discipline, and no officer has faced the highest penalty. *See* Dkt. No. 742 at 6 n. 12, *citing* CCRB 2020 Protest Data Snapshot (May 11, 2022). So, the question Plaintiffs are getting at here is basically: "Historically, is the City's approach to protest discipline similar to — or, potentially, worse than —what it is doing now?"

[3] It is not entirely clear whether courts derive their authority to block the sword/shield use of privilege and objections (discussed in more depth below) from Rule 37, or from the common law itself — or whether that ultimately matters.



Page 2 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



## Discussion

Reconsideration is a limited remedy.  It is limited to instances where a party can identify something the Court has "overlooked."  Loc. Civ. R. 6.3.  Put briefly, it's not a time for a party to reiterate its arguments with more emphasis, but to point to something that the Court missed, that might genuinely change the analysis.

Here, Plaintiffs believe there is one such reason that should merit a second look:  That the sword/shield doctrine, contrary to Defendants' arguments (Dkt. No. 750 at 5-6, which the Court seemingly adopted), is well-supported in at least persuasive authority, and appropriate here.  Neither party briefed in depth, and the Court's decision did not analyze, the cases applying the sword and shield doctrine to burden and relevance assertions.  Thus, this issue is appropriate for reconsideration.

### I. The Sword and Shield Doctrine Applies Here, Particularly Given the Importance of this Information to Plaintiffs' Failing Upward Theory.

To start with a point of agreement, the sword and shield doctrine is well-trod territory when applied to attorney-client privilege.  Basically, the doctrine functions so that "work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege."  *Granite Partners, L.P. v Bear, Stearns & Co.*, 184 FRD 49, 54 (SDNY 1999).  Thus, "[i]t is well settled that waiver may be imposed when the privilege-holder has attempted to use the privilege as both 'sword' and 'shield.'"  *Id.* (cleaned up)*, quoting In re von Bulow*, 828 F2d 94, 102 (2d Cir 1987).

Courts have not, however, stopped at the bounds of attorney client privilege with this reasoning.  Rather, the basic fairness reasoning — that a party should not be able to block access to Information X, and then say, "well, plaintiffs haven't proven their case because they didn't provide Information X" —- has been applied in a wide variety of contexts.  That is, "**relevancy and** privilege objections should not be used as a "sword and shield" in certain circumstances.  *Medtronic Sofamor Danek, Inc. v Michelson*, 2003 US Dist LEXIS 25156, at \*25 (WD Tenn Dec. 2, 2003) (describing, in dicta, a party's argument and "agree[ing]" with it).

Thus, federal courts have applied the sword and shield doctrine to a variety of relevance/burden assertions, including:  claims of commercial sensitivity and "woeful[] overbr[eadth]",[4]  a claim that a request to disassemble a helicopter to show causation was not

---

[4] *Epic Sys. Corp. v Tata Consultancy Servs.*, 2016 US Dist LEXIS 7903, at \*2 (WD Wis Jan. 22, 2016) ("the additional detail sought from Epic with regard to the development of its own software is woefully overbroad, unduly burdensome and likely to lead to the unnecessary invasion of sensitive, proprietary information. Of course, in upholding Epic's right to refuse to produce this information, it will also be barred from using the same information as a shield or sword in this lawsuit.").

COHEN&GREEN                                                                                                                         Page 3 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



relevant,[5] the relevance of damages discovery to class 'certification,[6] and statutory and contract based confidentiality claims.[7]  Some Courts state the doctrine very broadly:

> "decisions involving the 'sword and shield' concept have precluded a party from shielding evidence from an opposing party and then relying on the evidence at trial to meet its burden of proof on an issue central to the resolution of the parties' dispute."

*Terramar Retail Ctrs., LLC v Marion*, 2018 Del. Ch. LEXIS 552, at *27 (Ch Dec. 4, 2018, No. 12875-VCL) (discussing Delaware law); *see also, for a discussion, Strong v GEICO Gen. Ins. C*o., 2017 US Dist LEXIS 36674, at *9-13 (MD Fla Mar. 15, 2017).

    The doctrine, given its equitable roots, also applies with more force given the kind of burden Defendants have asserted.  The particular burden asserted *here* — a burden created due to the manner in which Defendants' computer systems are set up that specifically prevent ordinary keyword searches — is not necessarily cognizable as a basis to resist discovery at all.  That is, the general rule when a defendant makes a claim that the nature of their information storage limits searching or otherwise makes information inaccessible — as Defendants do here in claiming their computers cannot search except by officer name — is that "Plaintiffs should not suffer if the information is not easily accessible because defendants have an inefficient filing system" (and that there is no intent element to that rule).  *Fagan v District of Columbia*, 136 FRD 5, 7 (1991).  That is, as Judges in this district have previously observed, where it  "would be 'extremely burdensome'" to retrieve documents "because [a party] does not maintain documents in a manner that makes them readily accessible," is not an argument the party with the documents can make to avoid production.

    That is the exact argument made by the City here.  But when the City has made the same argument elsewhere, Courts have criticized its "underlying assumption that an institution may shield itself from discovery by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expenditure is incorrect." *Wesley v Muhammad*, 2008 US Dist LEXIS 74342, at *14 (SDNY Sep. 17, 2008), *quoting Dunn v. Midwestern Indem.*, 88 F.R.D. 191, 198 (S.D. Ohio 1980).  *See also, e.g., Black Love Resists in the Rust v. City of Buffalo*, 2019 U.S. Dist. LEXIS 218415, *26-27, 2019 WL 6907294 (W.D.N.Y. Dec. 19, 2019); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D. Ma 1976).  In that context, the sword and shield nature of the

---

[5] *Snyder v Honeywell, Inc.*, 2022 US Dist LEXIS 184483, at *4 (ND Ohio Aug. 12, 2022) (defendant "cannot use potential disassembly as a sword and a shield, saying, on the one hand, disassembly is neither necessary nor relevant, but on the other hand, Plaintiffs need to identify the FCU defect that led to engine power loss").

[6] *Brazil v Dole Packaged Foods, LLC*, 2014 US Dist LEXIS 74234, at *63 (ND Cal May 30, 2014) ("Dole cannot use damages discovery as both a sword and a shield. In its DDJR #1, Dole claims that it need not produce discovery relevant to damages before class certification because the discovery is not relevant to class certification. Yet, Dole opposes class certification on the basis that Dr. Capps has not performed his regression analysis.").

[7] *Florida v Abbott Labs.*, 2009 US Dist LEXIS 53298, at *5 (D Del June 23, 2009) ("plaintiffs cannot use information as both a shield and a sword; if the information is relevant, plaintiffs must disclose it or be subject to adverse inferences at trial. Any problems with confidentiality can be resolved through a protective order and appropriate redactions.").

COHEN&GREEN     Page 4 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



assertion that providing information on historical discipline has even more force: it is only because Defendants' computer systems cannot run routine searches for keywords that the task here is too burdensome relative to the undisputed gravity of the claims.

The point is that there *is* a doctrinal basis to place some limit on Defendants' ability to argue later in this litigation, that the Plaintiffs have not shown that **enough** officers have failed upward, when they are unwilling to let Plaintiffs look at the full data set. Plaintiffs certainly have sufficient examples to show that failing upward has happened at least once in a significant way in the two biggest protests of the past twenty years — including Monahan in the Republican National Convention in 2004 and Winski in Occupy Wall Street in 2011. The NYPD rejected the CCRB recommendations for Terence Monahan's conduct at early-2000's protests, only for him to do the same things during 2020 as the highest-ranking uniformed member of the NYPD. 548 F Supp 3d at 405. Ed Winski had a federal jury rule that he violated the constitutional rights of a protester on the third day of Occupy Wall Street by using excessive force, however, he received no discipline for this conduct and failed upwards to become the Commanding Officer of the recruit training. Plaintiffs also have significant current evidence that the NYPD does not ultimately impose much discipline, if any, when it comes to protest misconduct. *See generally,* CCRB 2020 Protest Data Snapshot (May 11, 2022); *see also,* Dkt. No. 742 at 6 n. 12. Therefore, Plaintiffs respectfully urge that that Court rethink the conclusion that there was no basis at all for a request limiting Defendants' ability to claim Plaintiffs don't have enough evidence.

Such a re-thinking also makes sense given the importance of the information at stake. While Plaintiffs will, of course, attempt to work around not getting this information, it is hard to imagine a way to systematically approach proving that the NYPD consistently allows officers to fail upward without getting to look at the basic data. That is, the best — and perhaps only statistically valid — way to show that the "numerous instances of the NYPD's ignoring CCRB disciplinary recommendations following substantiated complaints of police misconduct" (548 F Supp 3d at 405) have not just made it plausible that the NYPD has a policy of letting officer fail upward, but does so as a matter of policy is to look at the full data set. At this stage, Plaintiffs have plausibly alleged a foundation for the claim. They should be allowed to take the discovery necessary to prove that claim. And if Plaintiffs cannot do so, it is only fair that the City cannot **then** turn around and say, "too bad, you don't have **enough** data."

One final point merits mentioning here: Plaintiffs do not mean to suggest the Court should adopt the exact remedy Plaintiffs proposed. It certainly was not meant to be the final and only way to address this issue. Indeed, if the Court believes some limit on Defendants' ability to use the burden of reviewing disciplinary files as a sword and shield makes sense, but Plaintiffs have not hit the nail quite on the head, it may make sense for the parties to confer and see if there is some agreement they can reach.

The basic point is that there is an unfairness that will come at summary judgment or trial, when suddenly Defendants argument will be that the volume of information Plaintiffs have is **not** enough. This Court can avoid that unfairness in a straightforward way: "in uphold[ing] [the City's] right to refuse to produce this information, it [should] also be barred from using the same information as a shield or sword in this lawsuit." *Epic,* 2016 US Dist LEXIS 7903, at *2. Thus,

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



Plaintiffs ask the Court to reconsider its decision, and upon reconsideration, grant Plaintiffs some protection against the City shifting from using the asserted burden as a shield to using it as a sword.

Once again, we thank the Court for its continued time and attention.

Respectfully submitted,

\_\_\_\_/s/_____
J. Remy Green
*Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

Page 6 of 6

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com