


January 6, 2023

**Via ECF**
The Honorable Gabriel W. Gorenstein
United States Magistrate Judge United States
District Court
Southern District of New York 500
Pearl Street
New York, NY 10007

*Re: In re: New York City Policing During Summer 2020 Demonstrations, No. 20-CV-8924*
*This Filing is Related to All Cases*

Dear Judge Gorenstein:

We write on behalf of the non-stayed Plaintiffs in support of our request for a discovery conference or permission to file a motion to compel the production of certain Office of the Mayor and NYPD emails wrongfully withheld under the deliberative process and/or law enforcement privileges. Dkt. No. 794. Defendants' opposition relies heavily on the bare-bones assertions contained in their privilege log, but they do not bear the weight of Defendants' reliance. In some cases, these assertions strongly suggest that the deliberative process and law enforcement privileges do not apply, and in all cases, they lack the specificity to provide Plaintiffs with enough information to discern if the privileges are properly applied. Accordingly, this Court should compel the production of the documents listed in Exhibits A and B to Dkt. No. 774 or conduct an *in camera* review of those documents.

## I. DELIBERATIVE PROCESS PRIVILEGE ASSERTIONS

Regarding Defendants' assertions of privilege over documents like DMNL00303_000016070 and DMNL00303_000016071, which were identified as "agendas" or "schedules" and do not appear to reflect deliberation, Defendants respond that the "document descriptions" are sufficient to show that they meet the deliberativeness requirement of the DPP. Dkt. no. 794 at 2. However, these descriptions are little more than bare-bones assertions that lack the requisite specificity to show that the privilege applies.

A document is deliberative when it is "actually ... related to the process by which policies are formulated." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 482 (2d Cir. 1999) (quoting *Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81, 84 (2d Cir. 1991)). A document that is merely "peripheral" to actual policy formation is not covered by the privilege. *Auto. Club of New York, Inc. v. Port Auth. of New York & New Jersey*, 297 F.R.D. 55, 58–59 (S.D.N.Y. 2013) (internal quotations omitted). Therefore, to sufficiently establish deliberativeness the Defendant's privilege

log must set "forth *specific facts* that, if credited, would" establish that information contained in the documents were central to the formulation of specific policies. *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 274 F.R.D. 106, 112 (S.D.N.Y. 2011) (emphasis added); *see also Robinson v. De Niro*, No. 19CV9156LJLKHP, 2022 WL 704922, at *2 (S.D.N.Y. Mar. 9, 2022).

Here, the document descriptions that Defendants rely on fail to meet this standard because they are vague, bare-bones assertions untethered to specific policies or agency actions. Agenda and scheduling documents, DMNL00303_000016070 and DMNL00303_000016071, are described as "Communication between OTM and NYPD containing pre-decisional discussions, deliberations, thoughts and ideas regarding officer discipline and protest investigations." However, the conclusory assertion that the documents contain "thoughts" and "ideas" about unspecified and abstract topics like "officer discipline" and "protest investigations" does not provide specific facts to show that they were central to particular decisions made by the Mayor's Office.

Similarly, Defendants have withheld many documents under the DPP that appear to contain routine operating decisions, or factual descriptions of events. For example, DMNL00251_000287365 is an email with the subject line "RNC Exec Summary061004.doc" and the document description "NOW DP only - Internal NYPD communication containing pre-decisional drafts, revisions, discussions, deliberations, thoughts and ideas regarding RNC executive summary." It is hard to see how "discussions" and "thoughts" about a summary of a past event can be deliberative unless these "discussions" and "thoughts" are directly connected to specific decisions made by the Mayor or NYPD. The document descriptions contain no indication that they are. Additionally, DMNL00251_000257987 and DMNL00251_000234771 concern "Re: USE OF HIGHWAY AND MOUNTED" and "Mobile Field Force Instructions." From the email names these documents appear to be either operating instructions to officers or articulations of final agency policy, neither of which would be covered by the DPP. The privilege log and Defendants' opposition provides no reason to think otherwise.

Finally, concerning the emails related to the curfew, Defendants do not contest that the deliberative process privilege is a qualified privilege that can be overcome by the needs of the case, particularly when a "party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation." *Child. First Found., Inc. v. Martinez*, No. CIV. 1:04-CV-0927, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007). Defendants contend that "[i]t is the curfew policy in and of itself that is relevant to Plaintiffs' claims, not the process by which the City formulated that policy." Dkt. no. 794 at 4. This statement is at odds with the document descriptions in the privilege log. The curfew documents are described as "Internal OTM communication containing predecisional discussions, thoughts, ideas and deliberations regarding *curfew enforcement*" and "Internal OTM communication, including predecisional deliberations, discussions, thoughts and ideas regarding *enforcement* of EO (emphasis added). It is precisely the *enforcement* of the curfew that is at issue in these cases and that Plaintiffs need to fully understand in order to make out our claims.[1]

[1] Concerning the documents listed in footnote 3 of Plaintiffs' letter motion, Defendants claim, "the privilege log speaks for itself." Dkt. No. 794 at 3. But as Plaintiffs' letter motion explains, the privilege log does not indicate that anyone involved in these communications was serving as counsel to the Office of the Mayor or the NYPD, which would be required for the privilege to

## II. LAW ENFORCEMENT PRIVILEGE ASSERTIONS

### A. Defendants Have Failed to Identify Specific Harms Posed by Disclosure Warranting Protection of the LEP

Defendants' arguments that all the documents challenged in Plaintiffs' letter motion warrant protection of the law enforcement privilege (LEP) do not satisfy their burden of "show[ing] that the documents contain information that the law enforcement privilege is intended to protect." *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010), which cannot be satisfied by "mere conclusory or ipse dixit assertions." *MacNamara v. City of N.Y.*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984)); *see also City of New York v. FedEx Ground Package Sys.*, Inc., No. 13 CIV. 9173 (ER), 2017 WL 4155410, at *4 (S.D.N.Y. Sept. 19, 2017).

Instead of meaningfully engaging with Plaintiffs' arguments, Defendants try to shift the burden on Plaintiffs by arguing that "Plaintiffs' arguments are conclusory" and claiming that they cannot fully respond because Plaintiffs "neglect[] to point to particular entries on [their] privilege log." Dkt. No. 794 at 6. But Plaintiffs clearly reference the documents they seek to compel in Exhibit B, which lists the relevant entries in Defendants' privilege logs verbatim under subheadings corresponding to Plaintiffs' letter motion. *See* Dkt. No. 774-2.

*a. Defendants Have Waived the LEP with Respect to the DHS Documents If DHS and the FBI Do Not Object to Disclosure*

With respect to the "DHS Documents," Plaintiffs will submit a formal Touhy Request. Since Defendants have not raised another objection to the DHS Documents, they have waived any assertion of privilege of their own.

*b. The NYPD Intel Briefs Are the Type of Documents the NYPD Has Previously Disclosed and Are Not Protected by the LEP Wholesale*

Defendants argue that the compilations of information held in the NYPD Intel Briefs warrant the protection of the LEP because they "show[] the information NYPD uses to assess terrorism threats as well as security capabilities and vulnerabilities, among other things." Dkt. No. 794 at 5. But Defendants' vague explanations still fail to establish that "there are specific harms likely to accrue from disclosure of specific materials" by the standards of the very case law upon which they rely. *See MacNamara v. City of N.Y.*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008).

As support for their position that the LEP applies, Defendants compare the Intel Briefs to the "Field Reports" that were ordered to be disclosed in *In re The City of New York*. That case discussed two sets of information: (1) "End User Reports" which compiled publicly available plans to disrupt the RNC on the Internet—documents which were already disclosed by the City, without any challenge to their privilege assertion in the opinion, and (2) "Field Reports" prepared by

---

apply. Plaintiffs also clarify that, contrary to Defendants' assertion, these documents were not the subject of the December 14, 2022 meet and confer.

undercover officers who infiltrated various organizations—documents for which an LEP assertion was at issue. *In re The City of N.Y.*, 607 F.3d at 928-31. In their description of that case, Defendants erroneously equate the NYPD Intel Briefs to the Field Reports while describing the Briefs using the Second Circuit's definition of the *End User Reports*. Like the End User Reports, Defendants assert that the Briefs are compilations of search results gathered by "combing through publicly available information on the Internet for plans to disrupt the RNC with violence or unlawful civil disobedience." *Id.* at 930; Dkt. No. 794 at 5. Unlike the Field Reports in *In re The City of New York*, the Intel Briefs here are not asserted to contain intelligence reports by undercover officers. Crediting Defendants' description of the Intel Briefs, then, it is clear that the information contained in the Intel Briefs is already the type that has been previously disclosed by the City in a similar case. Moreover, here, Plaintiffs do not have the benefit of having another set of documents from which to ascertain the intelligence relied upon by the City, whereas in *In re the City of New York*, the Court found there was no compelling need for the Field Reports since it found after *in camera review* that they did not contradict information already available in the End User Reports. *See id.* at 946.

### B. Even If the LEP Applies to Some of the Documents, Plaintiffs Have Demonstrated a Compelling Need for the Challenged Documents That Is Unrebutted by Defendants

Even if the Court finds that Defendants have adequately shown the applicability of the privilege, Plaintiffs need these documents to evaluate Defendants' claims that the NYPD's response to the Protests was justified based on intelligence they obtained or necessary to protect officers' safety and the safety of others. In the case of documents like the "Redacted Subject Lines and File Names," any ambiguity in Plaintiffs' letter is a product of the lack of information contained in the privilege logs. Since Defendants declined to provide more information about those documents, the Court may find it appropriate to use *in camera* review to assess the applicability of the privilege as well as Plaintiffs' need for the documents. *See In re the City of N.Y.*, 607 F.3d at 948.

Defendants also argue that Plaintiffs do not have a compelling need for the Intel Briefs because the information compiled in them "provides very little, if anything at all, concerning NYPD's response to the Summer 2020 protests or NYPD's policing policies." Dkt. No. 794 at 7. To the contrary, however, the very *lack* of intelligence related to protest activity within the Intel Briefs would in fact bolster Plaintiffs' need for them because it would undercut Defendants' defenses that their use of force was justified based on intelligence received. *See In re the City of N.Y.*, 607 F.3d at 946.

Defendants' reliance on *MacNamara* is similarly misplaced. In that case, hypothetical "Scenarios" that the NYPD used to prepare for response to a mass disorder or terrorism activity were found to be of minimal value to plaintiffs' claims in relation to the potential vulnerabilities they would expose. 249 F.R.D. at 87–88 (S.D.N.Y. 2008). But in the same decision, the court ruled that several documents that revealed vulnerabilities, techniques, and procedures in the NYPD's response to mass disorder must nonetheless be turned over because they "bear[ed] upon the intent and knowledge of NYPD officials in planning the NYPD's responses to instances of civil disorder," they were not obtainable through other sources, and because protective orders would

mitigate any risks posed by disclosure. *Id.* at 88–89.[2] These same factors weigh in favor of disclosure here.

Finally, Defendants' description of the risks of disclosing the Intel Briefs assume that the information would be publicly disclosed and would thereby "provide individuals with terrorist ties the means to avoid detection." Dkt. No. 794 at 6. But Defendants have not indicated that the dangers inherent in disclosure of the "choice of what articles and information to include (and not include)" in the Intel Briefs—which they describe as compilations of publicly available information, *see* Dkt. No. 794 at 5-6, are so severe and sensitive that the risk cannot be mitigated with a protective order. *See MacNamara*, 249 F.R.D. at 88–89.; *Floyd v. City of N.Y.*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010).

**C. If the Privilege Attaches, Implied Waiver under the Sword-Shield Principle Precludes Defendants' Affirmative Defenses**

Defendants argue that their affirmative defenses are not precluded by assertion of the LEP over intelligence documents "because the documents being withheld on privilege grounds are not being used to support those defenses." Dkt. No. 794 at 7. The argument too narrowly construes the principle that a party may not use privileged material as both "sword and a shield." A privilege "may implicitly be waived when defendant asserts a claim that in fairness requires examination of the protected communications" and the privilege may not be used "to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d. Cir. 1991)*; see also In re the City of N.Y.*, 607 F.3d at 946–47 (holding that the principle applies with respect to the LEP). The Court may strike or preclude a defense that relies upon information for which the privilege has been implicitly waived. *See Trouble v. Wet Seal,* 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001); *SEC v. Honig,* No. 18 CIV. 8175 (ER), 2021 WL 5630804, at *10 (S.D.N.Y. Nov. 30, 2021).

* * *

Accordingly, Plaintiffs respectfully request that this Court review *in camera* and compel the disclosure of the documents listed on Exs. A and B. Alternatively, Plaintiffs request permission to file a motion to compel these documents.

By: */Daniel Lambright*
Daniel R. Lambright
Molly K. Biklen
Jessica Perry
Robert H. Hodgson
Veronica Salama
Lisa Laplace
Christopher T. Dunn
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300
dlambright@nyclu.org

By: *Corey Stoughton*
Corey Stoughton
Jennvine Wong
Rigodis Appling
The Legal Aid Society
199 Water Street
New York, N.Y. 10038
(212) 577-3367
cstoughton@legal-aid.org

*Attorneys for Plaintiffs in 20 Civ. 8924*