


January 20, 2023

**BY ECF**

Honorable Gabriel W. Gorenstein,
United States Magistrate Judge
United Stated District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

      Re:    *In re: New York City Policing During Summer 2020 Demonstrations*,
               *No. 20-CV-8924 (CM) (GWG)*
               *This Letter Relates to All Cases*

Dear Judge Gorenstein:

      We write on behalf of the non-stayed Plaintiffs in these consolidated cases in opposition to Defendants' motion for an extension of time to schedule the remaining depositions. Dkt. No. 796.[1] Filed before the parties had an opportunity to meet and confer over the Defendants' concerns, the Court ordered the parties to confer to try to agree on a reasonable schedule for depositions (Dkt. No. 805). On January 11, the parties met and conferred regarding both the number of depositions and Plaintiffs' proposed deposition schedule that would provide sufficient time for scheduling.[2] Plaintiffs have agreed to withdraw 28 witnesses and are still discussing the withdrawal of an additional two witnesses.[3] Since that time, Defendants have not fully responded with respect to the Plaintiffs' proposed deposition scheduling protocol. Given the number of days that have already been wasted in the short term, however, Plaintiffs are concerned that the

---

[1] To preserve the status quo pending Plaintiffs' opposition, the Court ordered Defendants to continue scheduling depositions through February 17, 2023; this opposition speaks to the process for scheduling depositions after that date. Defendants' motion also included a purported motion for a protective order limiting the number of remaining depositions (Dkt No. 796, Part I). As to Part I, the Court ordered the parties make further efforts to confer, and noted that only after those discussions have satisfied paragraph 2.A of the Court's Individual Practices may the Defendants make a renewed application for a protective order with more specific information (i.e. the "numerical limitation proposed by Defendants and the subject areas of those depositions"). Dkt. No. 801. Plaintiffs note that a renewed application as to Part I of Docket # 796 at this time would be premature, as Defendants have requested another meet and confer to discuss objections to depositions that they raised in an email at 2pm on January 20. Further, Plaintiffs reserve their right to oppose any such renewed application for a protective order in a separate letter motion.

[2] The meet and confer lasted approximately 1.5 hours; present for Plaintiffs were Jessica Perry, Remy Green, Alicia Calzada, Lillian Marquez, Tahanie Aboushi, Wylie Stecklow, and Karsyn Archambeau (intern); present for Defendants were Peter Scutero, Amy Robinson, and Tobias Zimmerman.

[3] Defendants have refused Plaintiffs' request to admit certain facts in order to withdraw two witnesses. As to Juanita Holmes, Plaintiffs requested that Defendants simply admit that the deponent made three statements for which Plaintiffs have provided the evidence citation and time stamp. As to the Sgt. Haldeman, Defendants informed Plaintiffs on the eve of the deposition (that they later canceled) that the witness in fact had not attended the protest in question but would rather produce him for a deposition in lieu of confirming by written admission that he does not have personal knowledge to the underlying facts.

current pace of scheduling—wherein Defendants provide the dates for depositions every two weeks—will result in the parties' inability to meet the Court's *ultimate goal*: that all depositions be completed by the cutoff date. Dkt. No. 805. For the reasons set forth below, Plaintiffs therefore request that the Court deny Defendants' request and grant their deposition schedule proposal.

### **Two Week-Lead Time for Scheduling Depositions Has Proven Unworkable**

In the short term, a two-week lead time has resulted in wasted deposition days because it does not provide sufficient time to account for cancellations and to allow Defendants to make substitutions as needed. Defendants themselves have acknowledged that scheduling depositions has proven to be "quite an undertaking even where the deadline is to provide only ten witnesses at a time." Dkt. No. 796. And although the Court has ordered twenty depositions per month, as the schedule currently stands, the month of January will have only resulted in 12 depositions. This is, in part, because Defendants have been unable to provide substitutions for proposed depositions when they have made an error, when Plaintiffs respond that the dates provided are not possible, or wherein Defendants requested a cancellation.[4]

As an example of the first issue, on December 16, 2022, Defendants proposed Officer Stephanie Chen as a deponent on January 12, 2023. That same day, counsel for Plaintiffs responded and explained that Officer Chen already had been deposed and requested a substitute deponent for the period of January 9-20. Defendants did not provide a substitute. Similarly, the deposition of Lt. Keith Hockaday is an example of Defendants' inability to substitute a deposition within the two-week time frame following a cancellation. Lt. Keith Hockaday was originally scheduled and confirmed for December 9, 2022. Then, on December 7, Defendants notified that due to counsel's illness, Lt. Hockaday's deposition would need to be cancelled. Defendants did not provide new dates for Lt. Hockaday's deposition until January 13, 2023, over four weeks later, to be scheduled for either February 2 or February 3.

Similarly, on December 16, 2022, Defendants proposed Officer Fierro as a deponent on January 19 or 18. Counsel for Plaintiffs responded on December 20th confirming the 1/19 deposition date. Then, on January 10, 2023, three weeks after the parties' confirmation and one week before his deposition, Defendants stated that Officer Fierro was inadvertently offered for deposition on a date that was his regular day off and asked to reschedule his deposition between January 23 – 25. Counsel for Plaintiffs responded that they could instead depose Officer Fierro on January 26. Still, Defendants included January 24 and 25, for which Plaintiffs' counsel was unavailable, as the dates for Officer Fierro in their new list of proposed deponents, which they sent on January 13.[5] Defendants also ignored a request by Plaintiffs to find a substitute who could be deposed prior to January 20.

---

[4] Some depositions have been altogether deferred by the Sierra/Wood team as they were scheduled right before—and after—they reached a settlement in principle with Defendants and negotiated a stay while an agreement is being memorialized.

[5] Defendants' batch of proposed deponent schedules must list *new* deponents and not only deponents whose depositions have been cancelled and have not yet been rescheduled. If a deposition is not scheduled during a specific

By requiring at least three weeks before the first deposition in a scheduled batch, Plaintiffs' deposition schedule proposal should adequately safeguard the timeframe for Defendants to provide substitutions where needed. It will also prove necessary as coordinating the schedule of all five non-stayed plaintiff teams to attend high-level and 30(b)(6) depositions will become more difficult.

**Plaintiffs' Proposed Deposition Schedule and Attendant Principles Should be Approved**

Plaintiffs have sought to accommodate Defendants' request not to schedule all depositions by a date certain and have proposed a plan that would provide the time that Plaintiffs need to coordinate high-level depositions. Plaintiffs' proposal satisfies the Court's order that the parties "put a [permanent] system in place such that all deposition dates will be completely scheduled as far in advance as possible…." Dkt No. 805. Plaintiffs' proposal requires at least a three-week lead time before the first deposition in each schedule batch, and it is reasonable given the parties' experience with substitutions and cancellations. Plaintiffs' proposed timeline is as follows:[6]

| Deadline to provide proposal | Dates to be scheduled | No. of Deponents to Provide Proposed Dates |
|---|---|---|
| Jan. 13 | Jan. 23 – Feb. 10 | 11 |
| Jan. 20 | February 13-17 | 4 |
| January 27 | Feb. 20 to March 17 | 16 |
| February 17 | March 20 – April 14 | 15 |
| March 10 | April 17-May 12 | 15 |
| March 31 | May 15-June 16 | 15 |

In addition to this pace, Plaintiffs asked that Defendants commit to additional principles of scheduling to ensure orderly completion of the discovery period.

First, Plaintiffs asked that Defendants immediately begin scheduling high-level fact witnesses and 30(b)(6) witnesses. Scheduling these witnesses with sufficient advance notice, and in a way that does not bunch them all at the end of the schedule, makes sense because all of the consolidated plaintiffs' teams plan to attend and ask questions at these depositions and, as the Court acknowledged at the March 4, 2022, and June 30, 2022 conferences, scheduling busy high-level personnel far in advance ensures that they can block off dates in their calendar. *See* Ex. A (6/30/2022 Tr. at 52:3–14); Ex. B (3/4/2022 Tr. at 26:18–24). Further, by having the schedule

---

time period, it must be added to the next batch and not just substituted so that the parties never complete the schedule.

[6] This is an amended timeline to accommodate the two witnesses Defendants refused to provide certain admissions for and the witness inadvertently left on Plaintiffs' tally.

3

laid out in advance and requiring Defendants to begin including 30(b)(6) deponents in that schedule, there is a firm—and reasonable—time frame wherein Defendants may confer and make any motions for a protective order or other limitation. Indeed, a firm time frame will ensure that neither Plaintiffs, nor this Court, will again be subjected to hasty motions made on the *eve* of deadlines or depositions. And an absence of that time frame—particularly given that, notwithstanding the Court's directions, the City has indicated in an email this afternoon it will continue to pursue a theory that there should be a strict, substance-independent number limit—will only result in more 13th hour motion practice by the City.[7]

Second, Plaintiffs asked that proposed dates of deponents not significantly overlap with each other. To illustrate, Defendants proposed three witnesses who were to be questioned by the Office of the New York State Attorney General [OAG] to testify on two dates, with one witness being offered without the Court-ordered alternate date. The OAG was required to pick and choose which depositions it could take, and, due to Defendants' purported inability to substitute deponents on a short turnaround, lost a deposition day. Aiming to limit overlap between proposed deposition dates would help avoid this waste.

Third, should a scheduling conflict render proposed dates impossible for any given deponent, Plaintiffs promised to confirm or note that scheduling conflict within four days of receiving the scheduling proposal. Defendants could then offer at least one substitute deponent (or a second alternative date) within 4 days thereafter. This will ensure that the parties make the most of the discovery period that remains.[8] By email at 2pm on January 20, Defendants responded with the following position regarding this scheduling principle:

> "[I]f plaintiffs are referring to four business days, which would be the following Thursday after Friday's Schedule of Depositions, defendants cannot agree as defendants would then be required to come up with a Friday schedule of depositions on one-day's notice. If plaintiffs are referring to two business days, which would be the following Tuesday, then defendants should have enough time to propose an alternate date on Friday's Schedule. As to scheduling substitutes when a witness's proposed date and alternate date are rejected, defendants will make its best efforts to substitute. However, defendants cannot provide a third alternate date for officers for the week the officer is scheduled due to their RDOs and vacation dates."

Defendants have not provided their response to the overall scheduling proposal deadline and request to begin scheduling high level and 30(b)(6) deponents, made last Wednesday, January 11, other than to agree that they will begin scheduling high-level fact depositions they do not oppose (because they have run out of plaintiffs and line-level officers). In the same email at 2pm on January 20, Defendants stated that they are continuing to take this issue under

---

[7] Defendants have unilaterally been scheduling noticed witnesses for depositions and refusing to produce higher-level deponents. It is ultimately unfair for Defendants to decide the order in which noticed deponents are produced and, at some point before the higher-level deponents are scheduled and produced, seek a protective order based on the number of depositions already taken (in the order chosen by Defendants).

[8] Plaintiffs' proposal also takes into consideration that Plaintiffs are not precluded from noticing additional depositions prior to the close of fact discovery on July 14, 2023, and that Plaintiffs may need to notice, for example, newly identified John Does.

advisement and will provide a position next week regarding 30(b)(6) deponents.[9] However, because the schedule and attendant principles outlined above would best ensure a timely completion of depositions while granting Defendants some of the relief they seek, they should be approved.

Further, the Plaintiffs' proposed schedule is not only feasible, it is necessary. Defendants have claimed throughout this litigation that scheduling the number of depositions made necessary by the breadth of these consolidated actions are impossibly difficult. *See, e.g.*, Ex. A, 6/30/2022 Tr. at 52:3–14. But when pressed to provide details, they refuse. What we do know suggests that Defendants have understaffed the scheduling process. Specifically, Defendants' counsel, Amy Robinson, has represented she and one paralegal alone are responsible for scheduling all deponents in these cases. They do so by emailing and/or calling witnesses about their schedules, but only for the two-week periods that they are scheduling.[10] Defendants have not asked witnesses for their schedules beyond that, presumably requiring them to reach back out if there is any delay past the requested two-week calendar period. Ms. Robinson has represented that more staffing is not possible because it would create confusion as to who was scheduled when. This does not make sense. If dates of availability were collected for longer periods than just two weeks, staff could be given responsibility over certain batches of people and periods of time so as to not intersect.

**Conclusion**

In sum, Defendants have been unwilling to share more detail as to why this alternative way of scheduling cannot be adopted, shutting down all inquiries as simply ignorant while refusing all tools, such as RFAs, that would help streamline depositions. But Defendants' short-term scheduling is sure to run out the clock and require yet another extension of the discovery schedule.[11] A different scheduling process—like the one Plaintiffs have proposed—is needed.

---

[9] Putting aside that there is no stay in place and this case is on a rocket docket pace — and Defendants' inappropriate attempt to leverage a confidential process — there are live *Monell* damages claims that have not been the subject of any settlement discussion yet. Defendants were unable to explain in any fashion how a settlement of injunctive claims would moot even a single 30(b)(6) topic.

[10] Notably, Ms. Robinson representation that she speaks directly to the witnesses about their schedules seems to contradict their own testimony as to when they learn they are being deposed. For example, Officer Jarvis Onabanjo's deposition took place on December 14, 2022. Defendants had proposed dates for Officer Onabanjo's deposition on November 18 and the OAG confirmed his deposition date by email on November 22. Yet, Officer Onabanjo testified that he first learned he was being deposed on the Friday before his deposition, December 9, through a notification sent by the NYPD. Officer Onabanjo's testimony suggests that witnesses are contacted about their schedules by the NYPD, not Ms. Robinson; it also suggests that witnesses are not told to block off the deposition date until weeks after Defendants have already confirmed a date certain, creating a likelihood for schedule conflicts.

[11] The delays to date may inevitably require an extension but Plaintiffs are endeavoring to avoid that possibility.

                Sincerely,

| | |
|---|---|
| By: /s/ *Veronica R. Salama* | By: /s/ *Corey Stoughton* |
| Veronica R. Salama | Corey Stoughton |
| Molly K. Biklen | Jennvine Wong |
| Robert Hodgson | Rigodis Appling |
| Daniel R. Lambright | THE LEGAL AID SOCIETY |
| Jessica Perry | 199 Water Street |
| Perry Grossman | New York, N.Y. 10038 |
| Lisa Laplace | (212) 577-3367 |
| Christopher T. Dunn | cstoughton@legal-aid.org |
| NEW YORK CIVIL LIBERTIES UNION FOUNDATION | |
| 125 Broad Street, 19th Floor | |
| New York, N.Y. 10004 | |
| (212) 607-3300 | |
| vsalama@nyclu.org | |

*Attorneys for Plaintiffs in 20 Civ. 8924*

Cc: All Counsel