

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**AMY ROBINSON**
*Senior Counsel*
arobinso@law.nyc.gov
Phone: (212) 356-3518
Fax: (212) 356-1148

**By ECF**                                                                                                January 25, 2022

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

       In Re:  *New York City Policing During Summer 2020 Demonstrations*,
               No. 20 Civ. 8924 (CM) (GWG)
               This filing is related to all cases

Your Honor:

      I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. Defendants write in advance of the conference on Friday, January 27, 2023, to address certain issues raised in plaintiffs' response filed on January 20, 2023, (Dkt. No. 821), as we believe that letter does not accurately reflect the parties' current positions.

**<u>Withdrawing Deponents</u>**

      In their letter, plaintiffs state that they have agreed to withdraw 28 witnesses and agree to withdraw two additional witnesses if defendants will agree to answer certain Requests for Admissions ("RFAs") propounded by plaintiffs concerning these witnesses. Plaintiffs also informed defendants today of another witness they will not be deposing. Defendants are pleased to learn that plaintiffs will now indeed withdraw 29 witnesses without imposing conditions. In fact, the proposal made to defendants included conditions not raised in plaintiffs' response, so defendants will now consider them moot. While defendants appreciate these withdrawals, there still remain many other witnesses that defendants object to being deposed.

      With respect to seeking RFA responses for two deponents (see footnote 3), the RFAs pertaining to witness Juanita Holmes were propounded before the Court's ruling, (<u>See</u> Dkt. No. 811, Jan. 12, 2023) and plaintiffs are insisting on "admissions" to the now defunct requests without revision in compliance with the January 12 ruling. Defendants have advised plaintiffs that, pursuant to the Court's instruction, they await the re-propounded requests and will respond accordingly. With respect to RFAs pertaining to Sgt. Scott Haldeman, defendants informed plaintiffs that this sergeant was not present at any protests, and therefore his deposition should not go forward. Plaintiffs then served RFAs pertaining to the sergeant and also continued to require

his deposition. Defendants chose to have the sergeant deposed concerning to his signature on a desk appearance ticket. On January 13, 2023, plaintiffs confirmed by email their oral representation at meet and confer among the parties on January 11—that they would withdraw the RFAs if the sergeant is produced for deposition. As such, it is unclear why plaintiffs would file a letter a week later accusing defendants of refusing to respond to those RFAs.

**Cancelling Depositions**

As to plaintiffs' complaint regarding cancelled depositions, this has occurred on both sides. Defendants cancelled three depositions due to illness, mistaken scheduling of one officer who had already been deposed, and mistakenly offering the wrong date for one officer. Plaintiffs have cancelled or failed to confirm depositions of 12 officers, and at least one officer was cancelled two times. In addition, counsel for plaintiffs have cancelled plaintiffs' depositions four times, and one plaintiff was cancelled two times. In any event, it appears that plaintiffs' issue concerns re-scheduling an officer within the same week that defendants had already offered two dates that were ultimately rejected by plaintiffs. During the January 11 meet and confer, defendants agreed to make their best effort to substitute another witnesses or provide more dates in a particular batch. However, it is not usually possible to provide plaintiffs with a *third* alternate date for the same officer during the same week as their regularly scheduled days off, vacation days and the availability of the defending attorney must be taken into account.

**Depositions are Scheduled With A Four-Week Lead Time**

Plaintiffs continue to assert that there is only a "two week lead time," for scheduling depositions. On January 13, 2023, in compliance with the Court's Order, defendants provided a deposition schedule through February 10. As of January 20, depositions were scheduled through February 17th —that is nearly a four-week lead time. On January 27, defendants will also provide another list of depositions through February 24. In the Court ruling on January 3, defendants were instructed to "provide a schedule every week starting January 27, 2023, that tacks on at least another week of depositions to the schedule." (Dkt. No. 805). This scheduling alone will not result in less witnesses being scheduled or deposed, and it will not result in the need to extend the deposition deadline.

Defendants' pace, of tacking on depositions on a weekly basis, satisfies the Court's order and is also reasonable and practical. This timing allows defendants to schedule depositions of witnesses not objected to and continue to provide deposition dates nearly four weeks in advance. In addition, as outlined in defendants' December 30 letter to the Court (Dkt. No. 803, at page 3), it is not just about scheduling the deposition but also the preparation that defendants have to conduct for each witness. In particular, the collection of calendars and phones to get text messages for high ranking officials, while it is proceeding, is arduous and time-consuming. By keeping the scheduling to a weekly list, we are also attempting to avoid cancellations because of issues with phone collections or if a deponent will eventually not be deposed.

In terms of plaintiffs' proposed timing for scheduling depositions, pursuant to plaintiffs' proposed plan, defendants did provide a list of 11 deponents on January 13 and four deponents on January 20. Defendants do not to intend to "bunch" depositions at the end of the schedule.

2

However, scheduling 15 to 16 depositions at a time through March, (1) forces defendants to schedule depositions that are objected to, (2) forces defendants to provide the pre-deposition packets in accordance with the established protocols for both line officers and high level officials on remaining objectionable witnesses who may be eliminated by Court order or agreement of the parties. Indeed, the parties are presently conferring over these witnesses in an effort to resolve any remaining impasse. Defendants propose to continue to provide depositions on a weekly basis as ordered by the Court. There will be no delay in depositions and the depositions schedule will still be almost four week ahead.

As to plaintiffs' "additional principles" for scheduling depositions, first, defendants have already committed to interspersing high-ranking officials with 30(b)(6) witnesses as soon as it is determined, which, if any, 30(b)(6) witnesses/topics plaintiffs still require given the various settlements in these consolidated cases[1] and the ongoing settlement discussions regarding declaratory relief.[2] Second, defendants can attempt to avoid overlap but we are not usually aware who intends to take lead a deposition. For example, when defendants were able to discern that a deponent was related to settled consolidated case and object to his/her deposition, plaintiffs have informed us that counsel in the remaining cases also want to depose that witness. Defendants also note that they are Court-ordered to provide two dates for each deponent to provide flexibility to plaintiffs. As such, this should prevent overlap on the same day of deponents related to the same case. Third, plaintiffs' timing in advising defendants that they are not available on either of the *two* dates for an officer's deposition is important as to whether defendants can reasonably attempt to substitute another officer into that same date slot. However, it is usually not possible to provide plaintiffs with a *third* alternate date for the same officer during the same week as stated above.

**Contacting Witnesses**

Lastly, plaintiffs' characterization of how witnesses are contacted is inaccurate. Officers are emailed and called numerous times, months and weeks in advance, to determine their availability, possession of necessary documents and other information. It can and often does take multiple attempts to contact some members of service. At no time is a witness first contacted only days before their depositions. There is, of course, a difference between contacting officers for their availability and officially notifying those officers of their depositions. In order for most officers to appear at depositions, they must be *formally* notified by the Law Department through NYPD's notification system or other electronic means. Plaintiffs' statement in footnote 10 of their letter that the undersigned misrepresented the contacts made to Officer Onabanjo is not true insofar

---

[1] *Yates*, *Hernandez* and *Minett* accepted Rule 68 Offers of Judgment and attorneys' fees were either already paid or there are settlement agreements in place. In addition, the parties in *Sierra/Wood* have already agreed to settlement in principle on their class action claims.

[2] Settlement discussions among the parties concerning declaratory claims continues concurrent with discovery.

as it conflates the case team's multiple contacts with that officer[3] and the formal notification that must be made to his agency.

**Conclusion**

Simply put, the current scheduling of witnesses pursuant to the Court's January 3 Order (Dkt. 805) is working. The parties have scheduled a meet and confer for tomorrow to continue to discuss the parties' positions on remaining objectionable witnesses, after which, defendants anticipate filing another motion for protective order on any deponents where there remains an impasse.

Accordingly, defendants respectfully request that the Court deny plaintiffs' request and proposed timing of depositions. Defendants thank the Court for its consideration herein.

Respectfully submitted,

*Amy Robinson s/*

Amy Robinson
*Senior Counsel*

cc:   ALL COUNSEL (*via* ECF)

---

[3] In fact, the undersigned had nine email communications and at least two phone calls with Officer Onabanjo concerning his availability and pre-deposition documents and information. A paralegal had six email communications with him—all before the formal notification to his agency. Notably, this officer was scheduled to be deposed before the discovery stay, and his deposition cancellation as a result of the pause in discovery evidences the fact that he has been contacted over a series of months before his deposition in December.