

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK , NEW YORK 10007

JOSEPH M. HIRAOKA, JR.
*Senior Counsel*
jhiraoka@law.nyc.gov
Phone: (212) 356-2413
Fax:  (212) 356-1148

January 28, 2023

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      In Re:  *New York City Policing During Summer 2020 Demonstrations,*
             No. 20 Civ. 8924 (CM) (GWG)
             <u>This filing is related to all cases</u>

Your Honor:

      I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. Defendants write in accordance with the Court's Individual Practices as well as Local Rule 37.2 in response to Plaintiffs' request to compel the production of closed CCRB Administrative Prosecution Unit (hereinafter referred to as "APU") files and NYPD Department Advocacy Office (hereinafter referred to as "DAO") files by February 3, 2023. (Docket No. 814). Instead, Defendants respectfully request that they be allowed to produce the non-privileged portions of the remaining closed APU and DAO files in their possession, on a rolling basis, until March 3, 2023.

### BACKGROUND

      Plaintiffs served a Third Supplemental Set of Requests for Production of Documents dated August 19, 2022 requesting certain records from APU and DAO. (Exhibit A annexed to Plaintiffs' motion at Dkt No. 814). In Defendants' Responses and Objections to Plaintiffs' Third Supplemental Set of Requests for Production of Documents dated October 4, 2022, Defendants stated that it will produce closed APU files regarding the Summer 2020 protests by October 14, 2022 pursuant to the parties' meet and confer that occurred on September 13, 2022. Defendants further stated that pursuant to the parties' September 13, 2022 meet and confer, they would produce the closed DAO files regarding the Summer 2020 protests by November 4, 2022. (Exhibit B annexed to Plaintiffs' motion).

On October 3, 2022, Defendants timely produced two closed APU files. On November 2, 2022, Defendants also timely produced the sections of the DAO files it had received.

On December 13, 2022, Defendants advised Plaintiffs that CCRB had 14 APU and NYPD had 82 DAO files that had been closed. Defendants also advised that it could better estimate when the closed files could be produced by December 28, 2022.

On December 15, 2022, Plaintiffs proposed the date of January 13, 2023 to produce the closed DAO files. Defendants advised Plaintiffs that due to the amount of files, and the time it would take to review and produce these files, Defendants would not be able to produce the files by that proposed date.

On January 4, 2023, Plaintiffs inquired about the status of producing the closed DAO files, and Defendants replied the next day that the person to whom Defendants needed to speak about the status of producing the DAO files was out sick, and that Defendants expected to get an update as to when the closed DAO files could be produced when that person returned the following week.

However, on January 13, 2023, Plaintiffs declared an impasse and filed the instant motion before Defendants could provide an updated status.

## ARGUMENT

Plaintiffs seek an order compelling the Defendants to produce all closed DAO and APU files by February 3, 2023. (See Letter to the Court from the New York Attorney General's Office dated January 13, 2023 (the "AG's Letter") at pg. 3 - 4). While Plaintiffs claim that the APU and DAO records should have been produced pursuant to the First Consolidated Sets of Requests for Documents dated March 21, 2021 (Id. at 3.), they did not move to compel previously under that theory. Instead, Plaintiffs propounded new demands. Plaintiffs' further statement that "Defendants seem to acknowledge [this] by objecting to the Requests as duplicative of those original demands" is misleading. When read in context, Defendants' duplicative objection in Request No. 1 refers to the CCRB investigation files and not the APU files (the prosecution files). As stated above, Defendants have already produced some of the files and are not objecting to the production of the remaining files that are not otherwise privileged. With respect to the privileged portions, Defendants are invoking the deliberative process privilege and the attorney work product doctrine over certain DAO and APU documents.[1]

### I. Some APU Documents are protected by both the Deliberative Process Privilege and the Attorney Work Product Doctrine

---

[1] See Declaration of Matthew Kadushin dated January 27, 2023 and attached hereto as Exhibit A (the "Kadushin Declaration" or "Kadushin Decl."); and Declaration of Nancy Slater dated January 27, 2023 and attached hereto as Exhibit B (the "Slater Declaration" or "Slater Decl."). Defendants will produce privilege logs to Plaintiffs at a later date.

Defendants invoke the Deliberative Process Privilege and the Attorney Work Product Doctrine over certain APU documents to the extent the Court determines that Plaintiffs' requests seek such documents. See Kadushin Aff. at ¶ 11.

   *a. The APU documents are protected by the Deliberative Process Privilege.*

The deliberative process privilege extends to any inter-or intra-agency document that is (1) pre-decisional, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, i.e., actually related to the process by which policies are formulated. Brennan Ctr. For Justice at NYU Sch. Of Law v. U.S. Dep't of Justice, 697 F.3d 184, 194 (2d Cir. 2012). To be deliberative, "the record must bear on the formulation or exercise of policy-oriented judgment." New York Times Co. v. HHS, 513 F.Supp.3d 337 (quoting Grand Cent. P'ship. v. Cuomo, 166 F.3d at 482).

The deliberative process privilege covers advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. New York Times Co. v. HHS, 513 F.Supp. 3d 337(quoting DOI v. Klamath Water Users Protective Ass'n, 532 U.S. at 8). Such documents may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Id. (quoting Grand Cent. P'ship. v. Cuomo, 166 F.3d at 482).

Defendants invoke the Deliberative Process Privilege over draft documents and notes, internal documents related to APU recommendations, non-final plea/settlement offers and negotiations, among other documents. (See Kadushin Decl. at ¶¶ 11 and 15.) Kadushin describes the notes, drafts, and internal memoranda as either informing or being incorporated into decisions made by the APU. (Id. at ¶ 14.) The decisions include, but are not limited to, penalty recommendations; deviations from the Matrix; settlement/plea offers, agreements and negotiations; and pleading and charging decisions. (Id.) Additionally, Kadushin poignantly states that disclosure of these documents would impair the APU's ability to strategize, develop, and determine appropriate penalty recommendations and plea/settlement offers. Id. at ¶ 13. Further, Kadushin illustrates how the disclosure of these documents would undermine negotiation processes as well as the incentive for parties to engage in robust plea negotiations. Id. Accordingly, Plaintiffs' motion must be denied to the extent they seek the APU documents identified in the Kadushin Affidavit which are protected by the Deliberative Process Privilege.

   *b. The APU documents are protected by the Attorney Work Product Doctrine.*

The attorney work product doctrine protects from disclosure materials prepared in anticipation of litigation by or for a party or that party's attorney acting for his or her client. Fed. R. Civ. P. 26(b)(3). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 235 (1975).

Defendants invoke Attorney Work Product over draft documents and notes, internal documents related to APU recommendations, non-final plea/settlement offers and negotiations, among other documents. (See Kadushin Decl. at ¶¶ 11 and 15.) Kadushin states that these

documents were being prepared in anticipation for litigation. (Id. ¶¶ 11 and 12.) Accordingly, Plaintiffs' motion must be denied because the APU documents identified in the Kadushin Declaration are protected by the Attorney Work Product Doctrine.

## II.   The DOA documents are protected by the Deliberative Process Privilege.

For the same legal principles cited above, Defendants invoke the Deliberative Process Privilege over the DAO Case Analysis and Review memos ("CAR Memos"). (See Slater Decl. at ¶¶ 3 – 7.) Slater describes the CAR Memos as receiving rigorous levels of review and scrutiny by executives within the NYPD as well as their advisory nature with respect to disciplinary decisions within the department. (Id. at ¶¶ 5 – 6.) In addition, Slater identifies the chilling effect that disclosure of these documents would have by inhibiting the candor of NYPD officials in the formulation of fair and appropriate penalties and that the public would be better served when NYPD decision makers are free to discuss sensitive issues regarding misconduct. (Id.) Accordingly, Plaintiffs' motion must be denied to the extent they seek the DAO documents identified in the Slater Declaration which are protected by the Deliberative Process Privilege.

## CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court deny Plaintiffs' motion to compel "all documents" in the closed APU and DAO files and for production by February 3, 2023. CCRB estimates that they can provide the remaining closed 14 APU files by February 17, 2023. Defendants will require a reasonable amount of time to review and produce the remaining closed APU and DAO files after receiving them, and have the non-privileged portions processed for production.

Defendants propose that they produce the non-privileged portions of the remaining closed APU and DAO files in their possession, on a rolling basis, by March 3, 2023, and to thereafter produce the APU and DAO files that have closed within two weeks of receiving them.

Thank you for your consideration herein.

Respectfully submitted,

*Joseph M. Hiraoka, Jr.* s/

Joseph M. Hiraoka, Jr.
*Senior Counsel*
Special Federal Litigation Division

cc:   ALL COUNSEL (*via* e-mail)

4

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

In Re: New York City Policing During
Summer 2020 Demonstrations

Index No. 20-CV-8924 (CM)(GWG)

------------------------------------------------------------------x

**DECLARATION OF
MATTHEW D. KADUSHIN**

**MATTHEW D. KADUSHIN**, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.  I am the General Counsel at the New York City Civilian Complaint Review Board ("CCRB") and make this declaration in that capacity. I am familiar with the types of documents typically maintained by the CCRB's Administrative Prosecution Unit ("APU") in connection with the administrative prosecution of a member of service of the New York City Police Department ("NYPD").

2.  I submit this declaration in opposition to Plaintiffs' motion to compel as it pertains to the production of APU records and assert that certain records within those case files are protected from disclosure pursuant to the deliberative process privilege and attorney work product doctrine.

**Background and the APU Process**

3.  The CCRB is an independent New York City agency that is empowered to receive, investigate, hear, make findings and recommend action upon complaints against uniformed members of the NYPD that allege misconduct involving excessive use of force, abuse of authority, discourtesy, use of offensive language against a member of the public or regarding the truthfulness

of material statements made by a member of service during the course of or in relation to the resolution of a CCRB complaint. N.Y.C. Charter, Chapter 18-A § 440(c)(1).

4. Although the CCRB is an integral part of the NYPD disciplinary process, the CCRB is not a part of the NYPD. The agencies are independent of each other. N.Y.C. Charter, Chapter 18-A § 440(a). The CCRB only has the power to make recommendations on how allegations of misconduct should be resolved and the level of discipline to impose. The Police Commissioner has final authority on all matters of discipline. N.Y.C. Charter, Chapter 18 § 434(a). All CCRB cases, including those handled by the APU, are reviewed by the Police Commissioner, who has the power to accept, modify, or reject any discipline recommendation made against a member of service. *Id.*; N.Y.C. Admin. Code § 14-115; 38 RCNY §§ 15-16, 15-17; 38-A RCNY § 1-45(a).

5. The APU is a special unit of the CCRB that was created pursuant to an April 2012 Memorandum of Understanding ("MOU") between the CCRB and the NYPD. See a copy of the MOU at the following link: https://www.nyc.gov/site/ccrb/prosecution/apu-memorandum-of-understanding.page. Under the MOU, when the CCRB recommends Charges and Specifications ("Charges") against a member of service for a substantiated allegation(s) of misconduct, the APU will handle the administrative prosecution of the Charges except where the Police Commissioner determines that the APU's prosecution would be detrimental to the NYPD's disciplinary process and retains the case—which is limited to when there is a parallel or related criminal investigation, or, when the member of service has no disciplinary history or prior substantiated CCRB complaints, and based on the member of service's record and disciplinary history the interests of justice would not be served. MOU ¶¶ 1-2; 38 RCNY § 15-12; 38-A RCNY §§ 1-41, 1-42.

6. In order to formally commence an administrative prosecution, the NYPD's Department Advocate's Office ("DAO") must serve the member of service with the CCRB's

Charges, which is a written accusation of misconduct against a civilian that specifies the activity or conduct at issue, along with the date, time, and place of occurrence. MOU ¶ 15; RCNY § 15-01.

7. Instead of proceeding to trial, the APU attorney may make a plea offer to the subject officer, which, if accepted, is presented to Police Commissioner for final determination. MOU at ¶ 20-21; RCNY §§ 15-04(h), 15-08, 15-16, 15-17; 38-A RCNY § 1-46(d). If the Police Commissioner approves the plea bargain, it becomes final and the case is closed. *See* MOU at ¶¶ 20-21; 38 RCNY §§ 15-16 to 15-18; 38-A RCNY § 1-46(d), (f). If the Commissioner rejects the plea and dismisses the case outright, the case is closed as "Dismissed by the Police Commissioner." If the Commissioner increases or decreases the recommendation in the plea, the APU attorney redrafts the plea agreement to reflect the Police Commissioner's decision and submits it to the subject officer and subject officer's attorney for consideration. *See id.* If the subject officer agrees to the new plea agreement, it is then resubmitted to the Police Commissioner for final approval and is closed only after the final approval is received. *See id.*

8. If a plea is not offered, accepted by the officer, or approved by the Police Commissioner, a trial is held before the NYPD Deputy Commissioner of Trials ("DCT") or an Assistant Deputy Commissioner of Trials ("ADCT"). Following the trial, the DCT or ADCT submits a draft decision and recommendation to the Police Commissioner reflecting the results of the trial. 38 RCNY §§ 15-06, 15-16. The Police Commissioner then uses the draft decision, along with the trial record and the entire CCRB case file, to make a final disciplinary determination regarding the subject officer. *See* MOU ¶¶ 19-20; 38 RCNY §§ 15-06, 15-08, 15-16; 38-A RCNY § 1-46(b).

9. The NYPD is responsible for notifying the CCRB of the Police Commissioner's final determination and any penalty imposed. 38 RCNY § 15-17. The CCRB considers an APU case "open" until the Police Commissioner's final determination is received.

**Document Request**

10. I have reviewed the motion to compel submitted by the Plaintiffs and it is my understanding that the only outstanding document requests that pertain to the CCRB involve records from closed cases that were handled by the APU. The CCRB will provide documents in response, except documents that are privileged.[1]

11. Certain records maintained by the APU are protected from disclosure pursuant to the deliberative process privilege or attorney work product doctrine or both. We do not believe that Plaintiffs have requested the documents mentioned below, but to the extent they have the CCRB asserts the deliberative process privilege and attorney work product doctrine as to drafts and notes relating to all documents that were prepared by CCRB attorneys, as well as support staff and paraprofessionals, in anticipation of litigation, or by CCRB attorneys and officials as part of a recommendation, suggestion, or advisory opinion for the purposes of making an agency decision. Additionally, the CCRB asserts the privilege and doctrine over internal documents related to APU recommendations, and non-final plea/settlement offers and negotiations. These documents are either deliberative and pre-decisional, or prepared in anticipation of litigation, or for both purposes. Accordingly, I have determined that the following documents in the APU files are privileged:

   a. Any and all drafts and notes related to all documents;
   b. Internal memoranda, including final versions, drafts, and any notes, reflecting legal opinions, strategy, potential discipline

---

[1] For purposes of CCRB's document response, we have interpreted the undefined term "trial folder", contained in Plaintiffs' Third Request, to refer to records of trial proceedings.

4

recommendations or settlement/plea offers, agreements, or negotiations;
c. Documents relating to non-final settlement/plea offers, agreements, or negotiations;
d. Final and draft copies of attorney trial and trial preparation documents, including, but not limited to, opening and closing statements, direct- and cross-examination, notes on opposing party's trial presentation, documents related to witness preparation, documents related to trial strategy;
e. Final and draft documents relating to the determination of the applicability of legal theories or prevailing laws, except where the final version was served on opposing counsel or submitted to the DCT/ADCT, Police Commissioner, or other unit of the NYPD;
f. Legal research and any memoranda or notes relating thereto;
g. Records relating to retention of or consultation with actual or potential experts;
h. Names of potential witnesses not disclosed to opposing counsel;
i. Notes on communications or conferences with or appearances before the DCT or ADCT, or their staff.

12. The attorney work product doctrine shields the production of records, including drafts and notes, prepared in anticipation of litigation or for trial, and extends to records prepared in anticipation of foreseeable litigation. The notes, drafts, and internal memoranda were being prepared in anticipation of litigation.

13. The deliberative process privilege protects from disclosure advisory opinions, recommendations, and deliberations that are part of the process in formulating governmental policy. I understand the reason for protecting such documents is to encourage candor among government officials during the decision-making process, which is imperative to the proper functioning of the CCRB. Disclosure of internal documents, notes, or draft versions of documents would impair the APU's ability to develop strategy and discuss and determine appropriate penalty recommendations and plea/settlement offers. Further, disclosing any documents other than the signed plea/settlement agreement reached upon by the parties would undermine the plea/settlement negotiation process and disincentivize the parties from engaging in robust plea negotiations.

14. The notes, drafts, and internal memoranda either informed or were incorporated into decisions made by the APU such as and including, but not limited to, penalty recommendations; deviations from the Matrix; settlement/plea offers, agreements and negotiations; and pleading and charging decisions. As such, these documents are pre-decisional and deliberative in nature.

15. Accordingly, the Court should deny Plaintiffs' motion to compel to the extent it seeks production of draft documents or notes, internal documents related to APU recommendations, non-final plea/settlement offers and negotiations and any material that constitutes attorney work product or is privileged.

Dated: New York, New York
January 27, 2023

MATTHEW D. KADUSHIN

EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In Re: New York City Policing During
Summer 2020 Demonstrations

Index No. 20-CV-8924 (CM)(GWG)

------------------------------------------------------------x

**DECLARATION OF
NANCY SLATER**

**NANCY SLATER**, declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Assistant Deputy Commissioner of the New York City Police Department's (NYPD) Department Advocates Office (DAO), and am fully familiar with the DAO's procedures. This position is subordinate to the Commissioner of the NYPD, but has a high-level of authority.

2. DAO is responsible for prosecuting Members of the Service (MOS) for misconduct. In the normal course of business, DAO receives investigatory files from the NYPD Internal Affairs Bureau, NYPD Investigatory Units, NYPD Integrity Control Officers and the Civilian Complaint Review Board. Upon receipt of these files, an attorney assigned to DAO will review the file and make recommendations regarding the appropriate level of discipline. The attorney will draft a Case Analysis and Review (CAR) memo containing a summary of the allegations, an analysis of the case and the disciplinary history of the MOS, and a recommendation regarding the appropriate penalty. CAR memos are reviewed by DAO executives to evaluate the attorney's recommendation, and to decide if the recommendation is appropriate based upon a variety of metrics. If the DAO executives disagree with the attorney's recommendation, the CAR memo is returned to the assigned attorney to make the appropriate edits. Once the edits are completed, the

CAR memo is sent through channels to the Police Commissioner's Office to be reviewed. Upon completion of this review, the Police Commissioner will issue a final determination of the appropriate penalty.

3. The New York City Law Department, attorneys for the Defendant City of New York, has informed me that plaintiffs seek to compel the production of closed DAO files, which would include CAR memos, relating to the George Floyd and BLM protests. I submit this declaration in opposition to Plaintiffs' motion to compel to the extent that CAR memos are protected from disclosure pursuant to the deliberative process privilege.

4. I am familiar with the deliberative process privilege, which protects from disclosure advisory opinions, recommendations, and deliberations that are part of the process in formulating governmental policy. The reason for protecting such documents is to encourage candor among government officials during the decision-making process. As a contributor to decisions of numerous NYPD policies, including those relating to the policing of large-group demonstrations and mass protests, I can confirm the importance of candor and trust in the decision-making process and the chilling effect that would result from any diminishment of these factors. They are imperative to the proper functioning of the NYPD.

5. CAR memos are by their very nature deliberative because they are prepared to ensure uniformity and fairness in the NYPD's disciplinary process. This is evident from the issues analyzed and dissected in the memos, as well as the rigorous levels of review and scrutiny by several different executives in the NYPD.

6. Maintaining a robust and fair internal disciplinary process is essential to the good order and efficiency of the NYPD. Ensuring fair and appropriate penalties for infractions not only assists in promoting a well-ordered department, but also instills public confidence. Specifically, a

fair system of discipline instills confidence in the public that the NYPD takes MOS misconduct seriously. The disclosure of CAR memos would inhibit the candor of NYPD officials in the formulation of appropriate and fair penalties. The public is best served when policy makers are free to discuss sensitive issues regarding misconduct. Production of CAR memos would have a chilling effect on the NYPD's ability to ensure that all those who serve do so honorably and without engaging in misconduct.

7. Accordingly, the Court should deny Plaintiffs' motion to compel to the extent it seeks production of CAR memos.

Dated: New York, New York
January 27, 2023

_____
NANCY SLATER