

| | | |
|---|---|---|
| **HON. SYLVIA O. HINDS-RADIX**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>LAW DEPARTMENT<br>100 CHURCH STREET<br>NEW YORK, NEW YORK 10007 | **AMY ROBINSON**<br>*Senior Counsel*<br>arobinso@law.nyc.gov<br>Phone: (212) 356-3518<br>Fax: (212) 356-1148 |

**By ECF**                                                                                        February 8, 2023

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

       In Re:  *New York City Policing During Summer 2020 Demonstrations*,
                 No. 20 Civ. 8924 (CM) (GWG)
                 This filing is related to all cases

Your Honor:

       I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. Pursuant to Fed. R. Civ. P. 26(c), defendants hereby move for a protective order limiting the number and scope of the many additional depositions plaintiffs are seeking in the consolidated cases.[1]

### I. Excessive Number of Depositions

       In these consolidated matters, plaintiffs are seeking to take more than 150 depositions—far in excess of the presumptive limit established by the Federal Rules of Civil Procedure. Many of the depositions that plaintiffs seek are duplicative and cumulative and are unlikely to materially advance any claim or defense in this action. These excess depositions should therefore not be allowed. Defendants therefore move for a protective order limiting the total number of remaining depositions that plaintiffs may take, and specifically denying plaintiffs' requests for certain depositions.[2]

---

[1] The parties met and conferred on these issues on December 28, 2022, January 11, 2023, and January 24, 2023.

[2] Defendants moved for a protective order with respect to this portion of their application on December 23, 2022 (Dkt. No. 796). By Order dated December 28, 2022 (Dkt. No. 801), the Court instructed that the parties make further efforts to confer as to which depositions should and should

The Federal Rules of Civil Procedure presumptively limit each party to ten depositions. See Fed. R. Civ. P. 30(a)(2)(A) ("[a] party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than ten depositions being taken. . .."); see also DelaRaba v. Suozzi, No. 06-CV-1109, 2006 U.S. Dist. LEXIS 92813, 2003 WL 8435603, at *1 (E.D.N.Y. Nov. 17, 2006) ("[a]bsent an agreement among the parties, a party must obtain leave of the court before taking any additional depositions beyond the limit of ten."); and Universal City Studios, Inc. v. Reimerdes, 104 F. Supp. 2d 334, 342 (S.D.N.Y. 2000). Rule 30(a)(2)(A) is meant to "enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of '[w]ide-ranging discovery.'" Sigala v. Spikouris, 00-CV-0983, 2002 U.S. Dist. LEXIS 10743, 2002 WL 721078 at *3 (E.D.N.Y. Mar. 7, 2002) (quoting Whittingham v. Amherst Coll., 163 F.R.D. 170, 171–72 (D.Mass. 1995)). Accordingly, "[t]he mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." Id. (citation omitted); see also Commodity Futures Trading Comm'n v. Commodity Inv. Group, Inc., No. 05-CV-5741, 2005 Dist. LEXIS 27454  at *1 (S.D.N.Y. Nov. 10, 2005) ("[a]lthough a witness might have discoverable information, a party is not always entitled to depose that individual.").

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure sets forth the factors the Court should consider when limiting the extent of discovery, including when a party seeks to enforce the ten-deposition limit imposed by Rule 30(a)(2)(A)(i).  Factors weighing in favor of limiting discovery include whether (1) "the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other sources that is more convenient, less burdensome, or less extensive," (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," and (3) "the burden or expense of the discovery outweighs its likely benefit, considering the needs of the case, the parties' resources, the importance of the issue at stake in the action, and the importance of the discovery in resolving the issues." See, e.g., Snoussi v. Bivona, No. 05-CV-3133, 2011 U.S. Dist. LEXIS 147833, 2011 WL 6761068, at *1 (E.D.N.Y. Dec. 22, 2011); Atkinson v. Goord, No. 01-CV-0761, 2009 U.S. Dist. LEXIS 27851, 2009 WL 890682, at *1 (S.D.N.Y. Apr. 2, 2009); Gross v. Bare Escentuals, Inc., 03-CV-3089, 2006 U.S. Dist. LEXIS 79320, 2006 WL 3161386 at *1 (S.D.N.Y. Oct. 30, 2006).  This also applies to cases filed as putative class actions. See Redmond v. Moody's Investor Serv., 1995 WL 276150 at *4–5 (denying defendants request to depose sixty-eight nonrepresentative class members because the knowledge possessed by those class members was not shown to be superior to the named plaintiffs, and the volume of depositions would be unduly burdensome).

Discovery in these consolidated cases—particularly deposition discovery—has become unduly burdensome.  Plaintiffs have already deposed approximately 85 individuals and noticed approximately 70 additional depositions. Meanwhile, five of the actions in these consolidated cases have been resolved via acceptances of Rule 68 Offers of Judgment or settlement in principle: Hernandez (see, Dkt. 749), Minett (See, Dkt No. 749), Yates (Dkt No. 440), and Sierra/Wood (Dkt Nos. 784 and 786). This currently leaves a total of five active lawsuits remaining in these consolidated cases. Because of the consolidated nature of these actions, and because they included putative class actions, defendants understood in principle that plaintiffs would want to depose a

---

not be taken.  Defendants renew this portion of their December 23 application in seeking to limit the number of depositions in these matters after conferring with plaintiffs.

reasonable number of additional individuals beyond the statutory ten, but plaintiffs' intention of deposing over 150 individuals is plainly excessive. By applying the rule of 10 depositions, it means that plaintiffs should be permitted no more than an additional 15 depositions absent an application for leave of the Court.

In any event, deposing more than 150 witnesses, especially prior to class certification, belies not only the goal of efficiency via consolidation, but runs contrary to Rule 1 of the Federal Rules of Civil Procedure which calls for the just, speedy, and inexpensive determination of every action and proceeding. Deposing individuals with no unique knowledge or substantive personal involvement, for example, is simply not conducive to the aim of Rule 1 or the proportionality doctrine under Rule 26. Expending resources on such depositions would fail to promote claims or defenses or make any fact more or less probable. Indeed, such an endeavor is wasteful and hence disproportionate to the needs of the case.

It is noteworthy that, despite the vast discovery which has already occurred, no plaintiff has yet moved for class certification. In order to certify a class, plaintiffs must meet the requirements under Fed. R. Civ. P. 23. At the very least, the Court should limit further discovery, including in the number of depositions, pending a determination on class certification.

The fact that plaintiffs seek to depose well over 100 line officer members of service alone not only exceeds the Federal Rules' presumptive limit of ten depositions, it also significantly inflates the burden and cost, and forces defendants to unnecessarily expend limited resources in order for plaintiffs to acquire discovery that is duplicative. Further, Plaintiffs do not have to take the depositions of every officer who might have had tangential encounters with them or other individuals in order to obtain deposition testimony representative of a class (in those cases where there is a putative class action) or to advance their individual claims. In fact, the law specifically warns against such conduct. See Whittingham, 163 F.R.D. 170, 171–72; see also Commodity Futures Trading Comm'n 2005 Dist. LEXIS 27454 at *1.

It is uncontroversial that plaintiffs should not be permitted to depose witnesses who cannot provide relevant information. "Information is relevant if: a) it has any tendency to make a fact more or less probable than it would be without the evidence; and b) the fact is of consequence in determining the action." Vaigasi v. Solow Mgmt. Corp., 11 CV. 5088 (RMB)(HBP), 2016 U.S. Dist. LEXIS 18460, at *35 (S.D.N.Y. Feb. 16, 2016). Indeed, "[A] subpoena seeking testimony 'with little apparent or likely relevance to the subject matter' may be quashed even if the burden on the deponent is not 'onerous.'" Lynch v. City of New York, 16 CV. 7355 (LAP), 2021 U.S. Dist. LEXIS 192425, at *4 (S.D.N.Y. Oct. 5, 2021). Furthermore, even if the Court determines that evidence is relevant, it "must also be 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to the information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" North Shore-Long Island Jewish Hospital v. Multiplan, Inc., 325 F.R.D. 36, 49 (E.D.N.Y. 2018). Indeed, "[p]roportionality focuses on the marginal utility of the discovery sought." Vaigasi, at *43.

Similar reasoning supported by the same legal authority applies to plaintiffs' attempts to depose high-ranking officers as fact witnesses. To the extent that plaintiffs seek to depose such

3

tangential deponents in support of their municipal liability claims, plaintiffs are already seeking to depose an excessive number of high-ranking NYPD officials.

Finally, even though a number of cases within the consolidated action have resolved, the remaining plaintiffs continue to insist upon deposing witnesses who were noticed in the resolved matters. For example, all of the plaintiffs in the Hernandez and Minett accepted Rule 68 Offers of Judgment. However, an officer related to those matters was deposed on December 19, 2022, over defendants' objection.  Despite the fact that all of the plaintiffs in those two cases resolved all of their claims—neither of which were even putative class actions—the plaintiffs from remaining cases continue to insist that the purported witnesses must still be deposed. This increases the numbers of depositions and contributes to creating an undue burden contrary to the Federal Rules which require, inter alia, the just, speedy and inexpensive determination of every action.

Defendants respectfully submit that since plaintiffs already deposed 85 witnesses, and for the reasons set forth herein, that they be limited to no more than between 15-25 additional fact witness depositions. This includes both line officers and high-ranking officers. This number is difficult to calculate with precision because of a number of factors, including Rule 30(b)(6) witnesses who must also testify as fact witnesses as well, and because defendants recognize that plaintiffs may be titled to a reasonable number of depositions beyond the statutory limit.

## II. High-Ranking Government Officials Not Subject to Deposition

In addition to the request that plaintiffs be limited in the number of depositions they can still take, defendants specifically object to the depositions of the current and former mayors and police commissioners.  There is just cause under Rule 26(c)(1)(D), to preclude these depositions.

Under Fed. R. Civ. P. 26(c)(1)(D), courts may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including. . .that the disclosure or discovery not be had. . ."  See, e.g., Marisol A., 1998 U.S. Dist. LEXIS 3719 at *6. "As a general proposition, high-ranking government officials are not subject to depositions." Marisol A. v. Guiliani, No. 95 CV 10533 (RJW), 1998 U.S. Dist. LEXIS 3719, at *7 (S.D.N.Y. Mar. 23, 1998) (citations omitted) (granting motion to preclude deposition of the mayor).

"The burden a deposition would place on a high-ranking government official must be given special scrutiny." Schiller v. City of New York, 04 Civ. 7922, 2006 U.S. Dist. LEXIS 67907, *5-6 (S.D.N.Y. Sept. 20, 2006) (quoting Marisol A., 1998 U.S. Dist. LEXIS 3719, at *6 (granting defendants' motion for a protective order barring the deposition of the Police Commissioner).  To obtain the deposition of a high-level government official, plaintiffs must establish that the deposition meets the test set forth in Marisol A. v. Giuliani, 95 CV 10533 (RJW), 1998 U.S. Dist. LEXIS 3719 (S.D.N.Y. Mar. 23, 1998). See Ebbert v. Nassau County, 05 CV 5445 (FB) (AKT), 2007 U.S. Dist. LEXIS 15159, at *15-16 (E.D.N.Y. Mar. 2, 2007).  Depositions of high-level officials should only be allowed if the party seeking the deposition can establish that: "1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source, and 2) the deposition would not significantly interfere with the ability of the official to perform his governmental duties." Marisol A. v. Giuliani at *6-7.  We believe plaintiffs have not met this burden.

With regards to the first prong of the Marisol A. test, "[a] deposition will be considered necessary . . . when 'the official's testimony will likely lead to the discovery of admissible evidence' and the official has 'unique personal knowledge that cannot be obtained elsewhere.'" Bey v. City of New York, 99 CV. 3873 (LMM) (RLE), 2007 U.S. Dist. LEXIS 76464, at *3 (S.D.N.Y. Oct. 15, 2007) (citations omitted) (emphasis added). The first prong of the Marisol A. test "has been strictly imposed to the extent that if a person does not have unique personal knowledge, that is not obtainable elsewhere, then the deposition should not be permitted." Lederman v. Giuliani, 98 Civ. 2024 (LMM), 2002 U.S. Dist. LEXIS 19857, at *5 (S.D.N.Y. Oct. 17, 2002). This is intended, in part, to ensure that high ranking government officials "have the necessary time to dedicate to their governmental duties…" Id. at *5-6 (citations omitted).

Indeed, "[e]ven where a high-level government official possesses relevant knowledge, courts have granted protective orders where . . . no showing has been made that the deposition is necessary in order to obtain relevant information that cannot be obtained from another source or in a less intrusive manner." Connecticut v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.), 04-MD-1596 (JBW), 08-CV-955 (JBW), 2008 U.S. Dist. LEXIS 104180, at *71-72 (E.D.N.Y. Nov. 6, 2008). By way of example, where information sought through the deposition of a high-level official could be obtained from an alternative source, such as other individual deponents or a Rule 30(b)(6) witness, such depositions have been precluded. See Lilly, 2008 U.S. Dist. LEXIS 104180, at *71-72; see also Marisol A., 1998 U.S. Dist. LEXIS 3719, at *8 ("If the information is available through alternative sources, courts discourage the deposing of high officials.") (citations omitted); see also Pegoraro, 2012 U.S. Dist. LEXIS 75635, at *6. This result is common in cases where a high-level official is noticed to testify as the 'ultimate policymaker' with regard to municipal liability claims. See, e.g., Murray, 212 F.R.D. at 109; Schiller, 2006 U.S. Dist. LEXIS 67907, at *5-9.

### A. Mayor Eric Adams and Police Commissioner Keechant Sewell Should Not Be Deposed or, in the Alternate, Their Depositions Should Be Limited To Three Hours Each.

On November 28, 2022, plaintiffs noticed the depositions of Mayor Eric Adams and Police Commissioner Keechant Sewell. Defendants move to preclude their testimony on the grounds that their testimony is not relevant to the events of Summer 2020 and because, as they are active high-ranking government officials, plaintiffs cannot meet the Marisol A. standard for deposing them.

Mayor Adams and Commissioner Sewell satisfy the first prong of the Marisol A. test. Neither have unique personal knowledge that is not obtainable elsewhere. Neither Mayor Adams nor Commissioner Sewell were in office when the protests at issue in these cases took place in Summer 2020 through the winter of 2021. So, they have no personal involvement in those events in their current role and have no relevant testimony to offer. Further, there are a significant number of other witnesses, including Rule 30(b)(6) witnesses, from both the Office of former Mayor de Blasio and from the highest ranks of NYPD whose testimony would actually be relevant to these cases.

With respect to the second prong of the test, both Mayor Adams and Commissioner Sewell are currently active government officials whose presence at a deposition for any length of time would significantly interfere with their ability to perform their governmental duties. Depositions

would require that they be taken away from the extremely important business of the City in order to be prepared and sit for depositions in these consolidated cases, which concern events that they had no involvement in.

To be clear, defendants object to these depositions and seek to preclude them. However, to the extent the Court requires these depositions, the Court should limit their duration. In setting reasonable limits on depositions, courts may limit the time allotted for the depositions. See, e.g., United States v. City of New York, 2009 U.S. Dist. LEXIS 68167, at *11 (E.D.N.Y. Aug. 5, 2009) (allowing the deposition of the mayor to go forward but limiting it to three hours so as not to significantly interfere with his official duties). Defendants believe that no more than three hours is sufficient to question these high-level government officials who have no relevant first-hand knowledge of the claims alleged.

Accordingly, defendants respectfully request the Court preclude the depositions of the current Mayor and Commissioner, and should the Court permit them, that they be limited to no more than three hours each.

### B. Former Mayor Bill de Blasio and former Police Commissioner Shea Should Not Be Deposed.

Defendants move to preclude the depositions of former Mayor Bill de Blasio and former Police Commissioner Dermot Shea on the grounds that plaintiffs cannot meet the standard for deposing these high-ranking government officials.

Applying the standard set forth in Marisol A., former Mayor Bill de Blasio's deposition should be precluded. Plaintiffs sought, and defendants are providing, a Rule 30(b)(6) witness who has been designated to testify as to the policies, procedures, and practices followed by the Mayor and the Mayor's Office for overseeing, reviewing, and/or monitoring the NYPD's policing of demonstrations or protests. Thus, information pertaining to matters involving the Summer 2020 Protests from the Office of the Mayor sought through the deposition of former Mayor de Blasio will be obtained from an alternative source. Former Mayor de Blasio's testimony on the orders given by the Mayor to create certain reports after the Summer 2020 protests will be covered in the deposition of the former First Deputy Mayor, who defendants have agreed to produce. Because a designated Rule 30(b)(6) witness can testify to these policies procedures, and practices, former Mayor de Blasio's deposition is not necessary and should be precluded.

The standard set forth in Marisol A. precludes former Police Commissioner Shea's deposition as well, because plaintiffs also cannot show that he has unique personal knowledge that is not available through another source. In Schiller v. City of New York, 04 Civ. 7922 (KMK)(JCF), 2006 U.S. Dist. LEXIS 67907 (S.D.N.Y. Sept. 20, 2006), plaintiff sought to depose Police Commissioner Raymond Kelly. The Court found that Commissioner Kelly did not possess unique information, because the police policies in questions were "formulated in consultation with, and on the basis of recommendations made by, the other police officials who have already been deposed." Id. at *6-*7. Because the information that plaintiff would have sought from Commissioner Kelly could have been obtained during the depositions of these other individuals, the Court granted defendants motion to quash the deposition. Id. at *8-*10. See also Bey v. City of New York, 99 Civ. 3873 (LMM)(RLE), 2007 U.S. Dist. LEXIS 76464, (S.D.N.Y. Oct. 15,

6

2007) (precluding deposition of former Commissioner of the Department of Correction where information was available from other officials); Bryant. v. City of New York, 2002 U.S. Dist. LEXIS 11114, at *4 (S.D.N.Y. June 20, 2002) (granting a protective order precluding the depositions of the Mayor and Police Commissioner as plaintiffs had ample opportunity to obtain the information they sought regarding police policies during other depositions of other officials that had already been taken); Murray v. County of Suffolk, 212 F.R.D. 108, 110 (E.D.N.Y. 2002) (deposition notice of Suffolk County Police Commissioner quashed where information available from other sources).

Here, defendants have already designated at least twelve witnesses on 22 Rule 30(b)(6) topics (with a multitude of subtopics). Defendants have also agreed to produce numerous former high-ranking uniformed officers such as former Chief of Department Terence Monahan, four Borough Chiefs, the Commanding Officer of Operations, the Commanding Officer of Crowd Management and the Commanding Officer of the Strategic Response Group ("SRG").  Yet, plaintiffs are still seeking to depose numerous additional high-ranking officials including former Commissioner Shea. Plaintiffs cannot overcome the special scrutiny given to the deposition of high-ranking officials like former Commissioner Shea.

As plaintiffs cannot meet the high standard for deposing the former Mayor and Police Commissioner, the Court should issue a protective order precluding those depositions.

### III. NYPD Legal Bureau Officials Should Be Precluded From Being Deposed

"The NYPD Legal Bureau serves as the NYPD's 'in-house' counsel, advising the Commissioner and members of NYPD on legal issues affecting the Department." MacNamara v. City of New York, 2008 U.S. Dist. LEXIS 3937 at *2 (S.D.N.Y. Jan. 17, 2008). When the "client" is an entity rather than a person, no employee of the entity falls outside of the ambit of attorney-client privilege when consulting in-house counsel for legal advice within the scope of their employment. Upjohn Co. v. United States, 449 U.S. 383, 395-398 (1981). Plaintiffs have noticed the depositions of several current and former members of NYPD's Legal Bureau.  As discussed below, agency counsel should be precluded from sitting for depositions in these consolidated matters.

#### A. Former Deputy Commissioner Hart and Assistant Deputy Commissioner Chernyavsky Should Not Be Deposed.

In light of  Rule 26 and the standard governing the propriety of depositions of opposing counsel articulated by the Second Circuit in In re Friedman, 350 F.3d 65 (2d Cir. 2003), a protective order should be issued to preclude or limit the depositions of Judge Ernest Hart, former NYPD Deputy Commissioner of Legal Matters[3] and Oleg Chernyavsky, former NYPD Assistant Deputy Commissioner ("ADC") of Legal Matters.

---

[3]  Judge Hart sat in the Supreme Court 11th Judicial District in New York; he is currently a professor of Criminal Justice and former Justice of the New York State Supreme Court at the City University of New York.

"[D]epositions of opposing counsel are disfavored." United States v. Yonkers Bd. of Educ., 946 F.2d 180, 185 (2d Cir. 1991). In determining whether opposing counsel should be deposed in connection with ongoing litigation, courts in the Second Circuit have followed the dicta in In re Friedman, 350 F.3d at 71–72, which instructs the Court to consider "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." Id. at 72. The Circuit explained that such "considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." Id.; see also Sea Tow Int'l, Inc. v. Pontin, 246 F.R.D. 421, 424–25 (E.D.N.Y. 2007).

Plaintiffs simply cannot show that the depositions of Judge Hart and ADC Chernyavsky would be appropriate in this case because: (1) these witnesses are non-parties whose personal knowledge is not relevant to the claims or defenses in this case; (2) neither attorney played an exclusive role in NYPD's response to the protests; (3) both attorneys are privy to substantial attorney-client communications and attorney work product; and (4) the approximately 845,000 pages of discovery produced are additional sources of the same information that is already available to plaintiffs.

Plaintiffs have not demonstrated a specific need to depose these witnesses. At the outset, neither of these witnesses are named as defendants in these cases, and there are no allegations of wrongdoing asserted against them. Plaintiffs also have not provided a list of topics these witnesses would be deposed on, and therefore have not articulated what unique knowledge these witnesses have that cannot be obtained from other deponents. See Sea Tow Int'l, Inc., 246 F.R.D. at 425–26 (finding that defendants had not shown specific need to depose attorney where "much, if not all the information" sought could be obtained from other individuals).

Defendants further respectfully submit that there is a significant risk of encountering issues relating to both the attorney-client privilege and attorney work product at the depositions of any agency attorney and in particular both Judge Hart and ADC Chernyavsky. As a general matter, both Judge Hart and ADC Chernyavsky, in their capacity as agency counsel to NYPD, advised that agency with respect to legal and policy issues on a host of topics, most unrelated to these matters. It would be difficult to segregate matters of privilege from other issues plaintiffs may seek to exam them about.

Lastly, ADC Chernyavsky is the current Chief of Staff to the Police Commissioner. In this role, he too is an active government official whose presence at a deposition for any length of time would take away from his duties for NYPD and the City. As such the second prong of Marisol A. should also apply to preclude, or in the alternative, severely limit the duration of his deposition.

Accordingly, Judge Hart and ADC Chernyavsky's deposition should be precluded.

## IV. Duplicative, Cumulative and Non-Relevant Deponents Should Be Precluded.

As set forth above, Rule 26(b)(C)(i) allows this Court to limit the frequency or extent of discovery, including depositions. Further, the discovery sought must also be proportional to the needs of the case. As such, defendants seek a protective order to prevent: (1) depositions that are unreasonably duplicative of existing discovery, including witnesses who were already deposed, witnesses to be deposed and the approximately 845,000 pages of documents produced in these cases; and (2) depositions of high level officials who did not plan any protest, were not present at any protest and had no involvement in after action review of any protest.

- **Former Deputy Commissioner of Counterterrorism and Intelligence John Miller**. Deputy Commissioner Miller's testimony would be duplicative of 30(b)(6) witness, Chief of Intelligence, Thomas Galati, who has been designated on the requested topic of Intelligence, including a variety of related subtopics pertaining to the Summer 2020 protests. As Chief of Intelligence, Chief Galati is in the best position to testify on this information. Further former Deputy Commissioner Miller is informed by Chief Galati, *i.e.*, Commissioner Miller obtains intelligence information from Chief Galati. Thus, the testimony of former Commissioner Miller would be duplicative of Chief Galati's testimony and should be denied by the Court. Plaintiffs stated at a meet and confer on January 11, 2023,[4] that they needed Commissioner Miller's testimony because he had an email conversation with Commissioner Shea, and because he was allegedly involved in the protest responses. Plaintiffs, however, make no allegation that former Commissioner Miller had any contact with any protesters, including plaintiffs, or gave any orders at any protest. Plaintiffs have therefore failed to demonstrate that Commissioner Miller has unique relevant knowledge that cannot be obtained from other sources including Chief Galati.

- **Former Staten Island Borough Chief Kenneth Corey.** Chief Corey has no unique relevant knowledge about NYPD's policing of the Summer 2020 protests as he was present for only one protest during the entirety of the protests, and the protest for which he was present was on Staten Island and not on plaintiffs' amended list of protest locations. Further Chief Corey did not plan any protests and was not involved in after-action review of any protest. Plaintiffs even stated at the January 11 meet and confer that they were "putting off" this deposition, further indicating that plaintiffs have no real need to depose this Chief.

- **Deputy Commissioner of the Internal Affairs Bureau ("IAB') Joseph Resnick**. Deputy Commissioner Resnick's testimony would be duplicative of 30(b)(6) witness, Captain Lauren Foster, who is designated to testify as to the initiation, conduct, and outcome of investigations by the NYPD Internal Affairs Bureau and the disciplinary actions taken by NYPD imposed on officers for their conduct during the Summer 2020 Protests. Plaintiffs stated at a meet and confer on December 28, 2022,[5] that they do not want to rely on the designated 30(b)(6)

---

[4] Attending the January 11, 2023, meet and confer were Tahani Aboushi, Wylie Stecklow, Lillian Marquez, Jessica Perry, Remy Green, Amy Robinson, Peter Scutero and Tobias Zimmerman.

[5] Attending the December 28, 2022, meet and confer were Lillian Marquez, Mickey Osterreicher, Wylie Stecklow, Alicia Calzada, Remy Green, Travis England, Tahanie Aboushi, Amy Robinson, Tobias Zimmerman and Peter Scutero.

witness, Captain Lauren Foster, because she was a "low-level" officer. However, Captain Foster is the designated witness, and taking the deposition of a higher-ranking official does not further bind the City.

• **Commanding Officer of the Criminal Justice Bureau ("CJB"), Chief Donna Jones**. Chief Jones' testimony would be duplicative of 30(b)(6) witness Lt. Christopher Czark, CJB, a 30(b)(6) witness designated to testify as to the activation and utilization of Mass Arrest Processing Centers ("MAPCs) during the protests. Further, Chief Jones was not involved in planning any protest, was not present for any protest and was not involved in after-action review of the protests.

• **Former Chief of Patrol Juanita Holmes**. Chief Holmes was not involved in planning any protest, was not present for any protest and was not involved in after-action review of the protests. Thus, her testimony would not advance any claims or defenses in these cases. Additionally, she did not become Chief of Patrol until the end of October 2020, late in the protest period. Plaintiffs are deposing a number of other Patrol Borough Chiefs, thus any testimony given by Chief Holmes would be duplicative of the other Patrol Borough Chiefs.

• **Sergeant Shuzhen Wong and any other NYPD Investigators who investigated allegations of misconduct pertaining to some officers who policed the Summer 2020 protests**. These depositions must be precluded as the witnesses were not present at the protests and were not personally involved in the incidents. Further, their testimony would be duplicative of 30(b)(6) witness Captain Lauren Foster, who is designated to testify as to the initiation, conduct, and outcome of investigations by the NYPD Internal Affairs Bureau and the disciplinary actions taken by the NYPD imposed on officers for their conduct during the Summer 2020 Protests.

• **Sergeant Stuart Wohl of the NYPD Firearms and Tactics Section**. Plaintiffs stated at the January 11 meet and confer that they want to depose Sergeant Wohl on the grounds that he designed and taught the Constitutional Policing and Community Events ("CPACE") training class instituted after the 2020 George Floyd Protests. Sergeant Wohl did not in fact design CPACE. In any event, defendants have designated Sergeant Jason Saturnin of the Police Academy, where CPACE was created, as a 30(b)(6) witness on CPACE training. As such, Sergeant Wohl should not be deposed.

Finally, plaintiffs seek a number of high-ranking NYPD officials who were present at the Mott Haven protest. However, the following depositions would be cumulative and duplicative of the testimony of Chief Terrence Monahan, Chief Kenneth Lehr, Chief John D'Adamo, Chief Gerald Dowling, Inspector Robert Gallitelli, Captain Julio Delgado, Captain Joseph Taylor and 30(b)(6) witness Captain David Miller—all of whose depositions defendants do not dispute. While defendants understand that plaintiffs in Sierra/Wood's settlement does not include Rule 23(b)(2) relief (See, Dkt Nos. 784 and 786), plaintiffs seeking such relief, including Sow and People, have already deposed the line officers and will depose high-level officers with direct involvement. As such, those remaining consolidated cases with claims arising out of Mott Haven on June 4, 2020, already have more than sufficient discovery which is representative of the class for purposes of moving for certification. As such, plaintiffs should not be allowed to take the following depositions without a showing of just cause as to each deponent:

- **Chief Harry Wedin, Commanding Officer of Special Operations**. Chief Wedin oversees several units within NYPD, including the SRG. His testimony would be duplicative of the testimony of the Commanding Officer of the SRG, Chief D'Adamo, and further duplicative of Gerard Dowling, Executive Officer of the SRG. Plaintiffs stated at the January 11 meet and confer that they needed Chief Wedin's testimony, because he has long-running knowledge of SRG and was present at Mott Haven. Plaintiffs, however, have made zero allegations against Chief Wedin. Plaintiffs do not assert that Chief Wedin had any contact with any protesters, including any plaintiffs or gave orders for anyone's arrest. Further, his mere presence at Mott Haven and his supposed "long-standing" knowledge of SRG is not a sufficient basis for requiring his deposition.

- **Chief Edward Delatorre.** Chief Delatorre was the Chief of Transit at the time of the Mott Haven protest and was present at the protest. Plaintiffs, however, make no allegation that Chief Delatorre had any contact with any protesters, including named plaintiffs or gave any orders for their arrest. His mere presence at a protest is not a sufficient basis for requiring his deposition. Further, plaintiffs stated at the January 11 meet and confer that they were "putting off" this deposition further indicating that plaintiffs have no real basis to depose this Chief.

- **Captain Isaac Soberal**. Captain Soberal was a member of the 40th Precinct and present at the Mott Haven protest which is within the confines of the 40th Precinct. At the January 11 meet and confer, plaintiffs stated that they want to depose Captain Soberal because he was the Commanding Officer of the 40th Precinct on the date of incident at Mott Haven. However, Captain Soberal was not the Commanding Officer of the 40th Precinct on that date; Inspector Robert Gallitelli was . Defendants do not oppose Inspector Gallitelli's deposition.

- **Chief Thomas Conforti.** In July 2022, plaintiffs moved to compel documents that were withheld that were created by former Chief Conforti. See e.g., Dkt. Nos. 675, 681. Plaintiffs have noticed his deposition in relation to those documents. Defendants believe the notice of his deposition is an end run around the assertion of privilege. As such, his deposition should be precluded.

- **Police Officers Michael Sher and Malik McCloud, and Sergeant Steven Counihan**. These three line officers should not be deposed, because they were noticed in People, and plaintiffs in that case have sought to depose 32 line officers—a number that far exceeds the statutory limit for any one case. Further, this number does not include the 40+ high-ranking witnesses who will be deposed. Plaintiffs declined to remove these deponents at the January 11 meet and confer among the parties.

- **Police Officer John Migliaccio and Lieutenant Eric Dym**. These two line officers whom the plaintiffs in People want to depose were actually noticed for deposition in the Sierra/Wood matter, which has settled in principal. As stated above, People have sought to depose 32 line officers and even with that they still refuse to withdraw these deponents at the January 11 meet and confer.

11

**V. Conclusion**.

For the reasons stated above, a protective order is warranted to: (1) limit the number of excessive depositions to a more reasonable and proportional amount between 15-25 line officer and high-ranking deponents; (2) preclude the depositions of the current and former Mayors and Police Commissioners (or in the alternative, limit the depositions to no more than three hours); (3) preclude the depositions of Judge Hart and ADC Chernyavsky (or in the alternative, limit them to no more than three hours); and (4) preclude the depositions of cumulative, duplicative and non-relevant deponents listed in Point IV above.

Defendants thank the Court for its attention to this matter.

Respectfully submitted,

*Amy Robinson s/*

Amy Robinson
*Senior Counsel*

cc:     ALL COUNSEL (*via* ECF)