

February 9, 2023

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

<u>By Electronic Filing.</u>

    Re:    <u>In re: New York City Policing During Summer 2020 Demonstrations,
1:20-CV-8924 (CM) (GWG) — This Letter Relates to All Cases</u>

Dear Judge Gorenstein:

    I write on behalf of the plaintiffs in the nine live cases[1] that judges in this district and the Eastern District have directed to be "coordinated" with the consolidated case above. This letter is submitted separately from the plaintiffs in the formally consolidated cases.[2] Between the Coordinated Cases, there are 19 plaintiffs who have relied on the notion that discovery on this docket will be expansive on *Monell* topics — and similarly relied on the Court's prior orders setting a deposition schedule that included many high-ranking NYPD officers. Just as the Court has done before (*see, e.g.,* Dkt. No. 801), we seek to have the Court strike or deny summarily the request in Point I of Defendants' letter.

    As discussed below, Defendants have failed to follow the Court's rules, or even discuss the substance of the Coordinated Case Plaintiffs' issues in their motion or at ***any*** meet and confer. Indeed, as it stands, as of the (untimely) filing of the motion, the City still had an open promise to get back to us on their position. And tellingly: (1) the motion does not even ***contain*** the word impasse and (2) mentions nothing of the Coordinated Cases. Further, the ***very first time*** the City proposed an actual number limit was in this motion. At meet and confers, the City's attorneys repeatedly refused to say a number — let alone discuss the impact a number would have on the specific depositions taken or the reliance interests of the Coordinated Case Plaintiffs.

---

[1] As the Court knows, I am also counsel on the *Sow* case, but am not acting in that capacity on this letter. Those cases (the "Coordinated Cases"), not including the handful that have settled, include:
1. *Casablanca-Torres v. City of New York*, 21-cv-10832 (LAK)(JLC);
2. *Britvec et al. v. City of New York*, 21-cv-10759 (LAK)(KNF);
3. *Rodriguez et al. v. City of New York*, 21-cv-10815 (PKC);
4. *Sukana et al. v. City of New York,* 21-cv-10899 (LJL)(BCM);
5. *Sharma v. City of New York*, 21-cv-10892 (ER)(BCM);
6. *Acosta et al v. City of New York,* 21-cv-00576 (FB)(RER);
7. *Bensmaine v. City of New York*, 21-cv-4816 (JLR)(SLC);
8. *Payamps v. City of New York,* 22-cv-005633 (AMD)(VMS); and
9. *DeLuca et al. v. City of New York*, 21-cv-10777(AJN)(KJP).

[2] We also want to clarify that the Plaintiffs on this consolidated docket will be separately filing a full opposition in the time set by the Court, by February 15, 2023.



Thus, because of the profound prejudice the Coordinated Case Plaintiffs would face if the Court allows the City's tactical refusal to engage or follow the Court's rules to succeed, we ask that the Court strike Point I of Defendants' motion. And since this is hardly the first time the Court has urged the City to do its homework on a proposed number limit on depositions (*see, e.g.,* Dkt. No. 801), and given that — counting the presumptive depositions the Coordinated Cases add — the consolidated case is well below the presumptive limit, we suggest that striking should be with prejudice.

## Discussion

A. **Context for the Coordinated Cases.**

This consolidated docket represents a concerted effort by the Court to avoid some of the issues in past mass protest litigation. Across the consolidated cases in litigation from the 2004 Republican National Convention, for example, there were multiple hundreds of depositions across nearly a decade. The Court set a goal — a noble one — of avoiding a similar sprawl, and getting this case done more quickly and more efficiently. Part of that goal has been to set the case on a rocket docket — in part for the purpose of getting *this* docket ahead of others, but viewing those others as benefiting from the lead time on this lead docket. As the Court explained:

> "[Initially,] this court was hoping that a sentinel case (most likely the *parens patriae* action brought by New York State Attorney General Leticia James) could be readied for trial with a year[.] The idea was to prevent a lot of 'do over' discovery.
>
> …In the intervening year, much has happened … [V]arious individuals who … are putative members of one or more plaintiff classes in the class actions that are among the consolidated cases (*Sow, Sierra*) are choosing to file their own lawsuits; some of those cases have been wheeled out to other judges of the court. The assigned judges in those cases have agreed to coordinate discovery with the discovery that is being overseen by Judge Gorenstein. As those plaintiffs have joined the party, they have begun participating in discovery."

Dkt. No. 538. That is, many Courts in two districts have relied on the premise that this docket will exhaustively cover *Monell* discovery about the 2020 protests — and with that reliance, the Coordinated Case Plaintiffs "joined the party." *Id.* Formally codifying that reliance in part, the coordination orders entered in those cases nearly all specify that "All depositions taken in the Consolidated Actions (where taken heretofore or hereafter) may be used in this action as if conducted in this action," that "No deposition of a witness or party conducted in the Consolidated Actions shall be conducted in this action without leave of this Court," and that "Except to the extent otherwise ordered by Judge McMahon or Judge Gorenstein, [any Coordinated Case] Plaintiff's counsel may attend and participate in any depositions conducted in the Consolidated Actions."[3]  *See, for example, Sharma,* 21-cv-10892, Order, Dkt. No. 26 ¶¶ 9-11.

---

[3] As discussed below, these orders leave open that the Coordinated Case Plaintiffs might notice their own set of higher-ranking deponents — at least if the Court employs the waiver-like logic Defendants advance.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



The motions on these issues heavily relied on the fact that high-level witnesses would be deposed here — and there would be no need to do them over on other dockets. Indeed, when the City has opposed coordinated depositions at all, Courts have overruled that objection. *See, e.g., Bensmaine*, 22-cv-710, Letter, Dkt. No. 40 (explaining the position that the City took, "opposed coordinating depositions in any fashion" and explaining in particular the efficiencies with regard to Defendant Monahan).

That reliance has moved a number of cases forward quite efficiently. In addition to the Coordinated Cases here, several others have been filed, coordinated, and then fully resolved. Part of that resolution has included attorneys working on those cases preparing for and attending relevant depositions on this docket.[4] *See, e.g., Margolies v. City of New York*, 21-cv-10839 (PKC).

B. **The City Has (Again) Violated the Court's Meet and Confer Rules.**

With that in the background, the Coordinated Case Plaintiffs have **repeatedly** been asking the City for its position on whether the coordinated cases count towards the 10-per-case presumption for ordinary cases under the Rules and how much so — and an explanation if the answer was "not at all." At the meet and confer on January 11 — before the most recent conference — the Coordinated Case Plaintiffs explicitly asked Defendants for their position. Defendants said they would return with a position once they had considered the matter. ***Defendants never said they were at an impasse on numbers as to the Coordinated Cases.*** Since Defendants never took a position, and never reached an impasse on this — and indeed, do not explain anywhere in their motion why the Coordinated Cases should not count towards a presumptive number — we assume Defendants agree that the Coordinated Cases should add the number any other case would to the presumption.

With that, Defendants' failure to reach impasse is fatal to the motion. Even if the Court only gives the settled cases (e.g., *Yates, Hernandez, Sierra, Wood*, and *Minnett*) half credit for their contribution to the presumption — which there is no reason to, and the City never explains why they seem to credit them for no depositions whatsoever, the current calendar falls comfortably within the presumption. That is, the addition to the presumptive limit from the nine Coordinated Cases places the total presumption comfortably above the number of depositions scheduled on the current calendar because, as we understand it, the current tally of taken and to-be-taken fact depositions is 141 — which is, again, a far cry from the numbers reached by prior similar litigation.[5]

Defendants **also** failed to reach impasse on the exact issue the Court already struck this

---

[4] The City never explains why it does not include **any** of the settled cases in tallying the presumptive deposition list, notwithstanding that the attorneys in those cases led a large number of depositions.
[5] That very City-favorable math works out like this: (5 * 5 (*Yates, Hernandez, Sierra, Wood, Minnett*)) + (10 * 5 (*Sow, People, Rolon, Gray, Payne*)) + (10 * 9 (*Casablanca-Torres, Britvec, Rodriguez, Sukana, Sharma, Acosta, Bensmaine, Payamps, DeLuca*)) = 165.



Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



motion for once.[6]  *See, e.g.,* Dkt. No. 801.  When Defendants moved prematurely for a numerical cap, the consolidated docket Plaintiffs filed a letter that noted that "[t]he Court in this case has consistently denied both parties' motions when they fail to fully exhaust the meet and confer process," and that "Defendants never said what number they thought was reasonable — and specifically represented that they were **not** seeking an arbitrary cap on depositions."  Dkt. No. 799 at 2.  The Court struck the motion, explaining:

> It is unclear what specific relief defendants in Part I of Docket # 796 are seeking to have the Court impose **given that defendants propose no numerical limitation on the number of depositions**. Having read plaintiffs' response (Docket # 799), **it is obvious the parties should make further efforts to confer as to what number of depositions is a reasonable number to be taken.** This discussion must be done in conjunction with a discussion of whose depositions should be taken.
>
> The dispute will be most productively presented to the Court if it is presented in a form so that the Court understands whose depositions would not be taken under the numerical limitation proposed by defendants and the subject areas of those depositions. The application may be made again as soon as the discussion between the parties is concluded pursuant to paragraph 2.A of the Court's Individual Practices.

Dkt. No. 801 (emphasis added, break inserted).  Yet **at no time before filing their letter** have Defendants stated any proposed numerical limit.  Indeed, Defendants' 2:45 a.m. letter was the first time any Plaintiff saw Defendants suggest a number, because Defendants **refused** to state a number at each meet and confer when asked.  Thus, even the threshold issue failed to exhaust the Court's process — let alone what the Court directed with regard to ensuring the issue was "presented in a form so that the Court understands whose depositions would not be taken under the numerical limitation proposed by defendants and the subject areas of those depositions."  Dkt. No. 801.  Defendants' discussion says absolutely nothing about that — and indeed, implies a sort of waiver argument should apply (essentially, that because of the number of depositions that **happen** to have been taken, the consolidated Plaintiffs — and with them, the Coordinated Case Plaintiffs —- should be punished).[7]

Since the Court was clear with what must be done — and Defendants simply did not do it — Point I of the motion is simply not ripe.  Even without that, though, Defendants simply never took **any** position on the Coordinated Cases, even in their motion — let alone reached an impasse.

---

[6] Coordinated Case Plaintiffs raise this because we relied on Defendants' failure to request a meet and confer and assumed no motion on this issue would be coming.  The only meet and confer Defendants requested with the formally consolidated Plaintiffs was a last-minute request on 30(b)(6) issues sent some ten days after the most recent conference — at 4:15 p.m. on Monday, February 9, 2023.  We anticipate that the formally consolidated Plaintiffs will deal with this argument in more depth in their formal opposition — but it also justifies striking the motion on its own.

[7] It is also notable that the Consolidated case Plaintiffs mentioned the Coordinated Case Plaintiffs' plight in that application.  *See* Dkt. No. 799 at 2 n. 2.

   Page 4 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



C. **The City Has Affirmatively Induced Reliance, Making its Refusal to Even Engage In the Meet and Confer Process Particularly Prejudicial.**

The Court has been very clear in this case that the parties must exhaust the meet and confer process. The process serves a useful function, and makes it so the Court does not have to deal with motions made before a party has made the concessions it is going to make. That applies with particular force here because Defendants have made no concession at all to the obvious interest the Coordinated Case Plaintiffs — and indeed, the Magistrate and District Judges on those cases — have in ensuring the *Monell* discovery on this docket is thorough and not arbitrarily limited. And it also applies with particular force given the City's total failure to ever discuss a specific numerical limit with ***any party*** — let alone "present[]" its argument "in a form so that the Court understands whose depositions would not be taken under the numerical limitation proposed by defendants and the subject areas of those depositions." Dkt. No. 801.

Instead, Defendants focus largely on the number of depositions that have been taken. But those depositions have exclusively been at Defendants' choice. As they have explained to the Court, what the City "would prefer" is "to get the line officers and the plaintiffs out of the way and then work on the high ranking and 30(b)(6) witnesses" — indeed that was supposedly the City's "plan[] from the beginning." 2022-07-11 Tr. at 64:22-65:2. At least for their part, the Coordinated Case Plaintiffs assumed this was a good faith representation — not gamesmanship. And in reliance on that explanation, the Court allowed the City to trickle out deponents in the order it preferred.

However, the City now is trying to use the parties' reliance on that representation to snap shut the jaws of a sort of trap, saying that "since plaintiffs already deposed 85 witnesses,[8] and for the reasons set forth herein, [they must] be limited to no more than between 15-25 additional fact witness depositions." Dkt. No. 841 at 4. At no point do they explain when the "plan" the City explained to the Court changed — because certainly, if no one else had, the Coordinated Case Plaintiffs would have raised all manner of objections if they understood that somehow the consolidated case Plaintiffs taking line-level officers aimed at doing things like identifying John Does was going to limit *Monell* discovery. Parties are entitled to rely on representations an adversary makes to the Court. For the City to change its "plan[]" now is profoundly prejudicial to the Coordinated Case Plaintiffs.

The Coordinated Case Plaintiffs also note that, should the Court impose an arbitrary numerical limitation — essentially letting the City spring the trap described above — that would not end the issue. The depositions of high-ranking NYPD officials is essential to the *Monell* claims at issue in all of the cases across the consolidated docket and its Coordinated Case satellites. But if the consolidated docket is limited simply because it happens that the City produced something like 85 witness before producing any high level witnesses, the Coordinated Case Plaintiffs will still have the option — which they will exercise — to notice high level members of the NYPD on their own dockets. The consolidated docket plaintiffs, of course, would be free to request such transcripts — and there is no rule that would bar their use on this docket. It seems like a concern over this kind of

---

[8] We have not checked the City's numbers for the purposes of this motion, but expected the formally consolidated Plaintiffs will address if the numbers are wrong.

COHEN&GREEN    Page 5 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



issue lines up neatly with what the Court said in directing the City that it must actually explain the *effect* of numerical limit. Yet, the City still has not made any attempt at following that order — whether in any meet and confer or in their letter.

Indeed, had Defendants' tack been clear and not a trap they sought to spring shut, the Coordinated Case Plaintiffs might have sought some other relief — for example, filing with the multi-district litigation panel in the case of the EDNY cases, or otherwise seeking to have their cases fully consolidated with this case, such that there was no question that their depositions counted towards the presumptive number. It is hard to count the number of times over the past two years the Court has suggested to the City if it wanted to make a motion about the number of depositions, it needed to meet and confer and *then* make an applications. For the City to move now, employing what is essentially waiver-type logic, having *still* failed to meet and confer to a sincere impasse, gets the calculus exactly backwards.

Finally, given the depositions already scheduled, if imposed, Defendants' proposed numerical limitation combined with what they have put on the calendar would mean that basically two or three high-level members of NYPD — and certainly not the most important members in the broader scheme of the 2020 racial justice protests — would be deposed. Among others, Defendants will never have to produce Defendant Monahan — whose deposition was *explicitly* contemplated in many of the coordination orders. This prejudice is, of course, why the Court directed the parties to discuss in real terms what any proposed limit would mean. And it may well be why the City chose not to engage in that discussion even when the Court ordered it.

## Conclusion

For the reasons above, the Coordinated Case Plaintiffs seek to have the Court strike Point I of the motion at Dkt. No. 841. Defendants yet again failed to exhaust the meet and confer process, and are attempting a naked bait and switch. Even opposing this motion in full — which the Coordinated Case Plaintiffs would need to do separately and at some length, given the profound prejudice Defendants are seeking to cause — is an undue burden. It is simply not fair for Defendants to refuse to engage at all, and fail to make good on their meet and confer promises. The number limit portion of the motion should be struck.

As ever, we thank the Court for its continued time and attention.

Respectfully submitted,

/s/
_____
J. Remy Green
  *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Coordinated Case Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



cc:
All relevant parties by electronic filing.

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com