```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In Re: New York City Policing During Summer    :    MEMORANDUM ORDER
2020 Demonstrations                                 20 Civ. 8924 (CM) (GWG)
                                                :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

This case consists of consolidated actions against the City of New York and other defendants (collectively, the "City") based on allegations of improper policing by the New York City Police Department ("NYPD") of demonstrations occurring during the late spring and summer of 2020. See, e.g., Complaint, filed October 26, 2020 (Docket # 1). Plaintiffs have moved to compel defendants to produce documents relating to an "after-action review" of the police operations during the demonstrations.[1] The documents were prepared by Thomas Conforti, who was at the time an Assistant Chief with the NYPD and Commanding Officer of the Operations Bureau. For the reasons stated below, we conclude that nearly all of the documents have been properly withheld.

Law Governing Deliberative Process Privilege

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Dep't of the Interior v. Klamath Water Users Protective

---

[1] Motion to Compel, filed July 21, 2022 (Docket # 680) ("Mot."); Memorandum of Law in Support, filed July 21, 2022 (Docket # 681) ("Pl. Mem."); Declaration of Corey Stoughton, filed July 21, 2022 (Docket # 682) ("Stoughton Decl."); Memorandum of Law in Opposition, filed July 28, 2022 (Docket # 702) ("Opp."); Declaration of Shannon Riordan, filed July 28, 2022 (Docket # 702-1) ("Riordan Decl."); Affidavit of New York City Police Department Assistant Chief Thomas Conforti, annexed as Exhibit A to Riordan Decl. (Docket # 702-1 at *3) ("Apr. 19, 2022 Conforti Decl."); Reply Memorandum, filed Aug. 1, 2022 (Docket # 708) ("Reply Br."); Letter, filed Jan. 13, 2023 (Docket # 815) ("Jan 13 Ltr."); Letter, filed Jan. 20, 2023 (Docket # 819) ("Jan. 20 Ltr."); Letter, filed Feb. 6, 2023 (Docket # 837) ("Feb. 6 Ltr."); Letter, filed Feb. 8, 2023 (Docket # 840) ("Feb. 8 Ltr.").

Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)).  The privilege protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (quotation marks and citations omitted). The privilege

> rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

Klamath, 532 U.S. at 8-9 (quotation marks and citations omitted).

For a particular document to be protected by the privilege, the agency must demonstrate that the document is both "(1) predecisional, i.e., prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, i.e., actually . . . related to the process by which policies are formulated."  Am. Civ. Liberties Union v. Nat'l Sec. Agency, 925 F.3d 576, 592 (2d Cir. 2019) (citations omitted).

This predecisional element distinguishes documents prepared before a final agency decision, which are protected, from "postdecisional memoranda setting forth the reasons for an agency decision already made, which are not."  Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975).  Thus, this element looks to whether the document was "received by the decisionmaker on the subject of the decision prior to the time the decision is made to ensure that the subsequent decision will be fully informed."  Am. Civ. Liberties Union, 925 F.3d at 593 (quotation marks and citation omitted).

"[T]he deliberative process privilege does not extend to 'purely factual, investigative matters. . . .  If factual portions of a document are 'severable without compromising the private remainder of the document,' then the factual portions must be disclosed, even though the

deliberative material remains protected." New York Times Co. v. Dep't of Health & Human Services, 513 F. Supp. 3d 337, 350 n.3 (S.D.N.Y. 2021) (quoting EPA v. Mink, 410 U.S. 73, 89, 91 (1973)), aff'd, 15 F.4th 216 (2d Cir. 2021).  Also, the privilege is not applicable where "the document is more properly characterized as an opinion or interpretation which embodies the agency's effective law and policy, in other words, its working law." Brennan Ctr. for Just. at New York Univ. Sch. of L. v. U.S. Dep't of Just., 697 F.3d 184, 195 (2d Cir. 2012) (quoting Sears, 421 U.S. at 153) (punctuation omitted).

      Additionally, even where a party opposing disclosure has demonstrated that the deliberative process privilege applies, the privilege "is merely a qualified privilege" and "thus 'when the existence of [the] privilege is established, there is a need to balance the public interest in nondisclosure against the need of the of the particular litigant for access to the privileged information.'" In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 643 F. Supp. 2d 439, 442 (S.D.N.Y. 2009) (quoting MacNamara v. City of New York, 249 F.R.D. 70, 79 (S.D.N.Y. 2008)).  "Some courts have enumerated five factors useful for conducting this balancing. The factors are: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." In re New York City Policing During Summer 2020 Demonstrations, 563 F. Supp. 3d 84, 89 n.2 (S.D.N.Y. 2021) (citation and punctuation omitted).

      While "[i]n camera review is considered the exception, not the rule," see Loc. 3, Int'l Brotherhood of Elec. Workers, AFL-CIO v. N.L.R.B., 845 F.2d 1177, 1180 (2d Cir. 1988), a court has discretion to perform such a review where evidence in the record is insufficient to

make a determination regarding privilege, see, e.g., Henry v. County of Nassau, 2022 WL 4111123, at *6 (E.D.N.Y. Sept. 7, 2022), reconsideration denied, 2022 WL 16965006 (E.D.N.Y. Nov. 16, 2022).

      Assertion of the Privilege

      As reflected in an order previously issued, see Order, filed Jan. 30, 2023 (Docket # 835), the City's initial assertion of the privilege was flawed because it was made by Chief Conforti after he had retired and because it was not clear that Chief Conforti had received a proper delegation from the Commissioner of the NYPD. Thus, the City's invocation of privilege violated the principle that because "[t]he assertion of the deliberative process privilege reflects a deviation from the norm of full transparency in litigation[,] . . . it should only be exercised by the head of an agency or through tightly controlled delegation." In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 643 F. Supp. 2d at 443; accord Resol. Tr. Corp. v. Diamond, 137 F.R.D. 634, 641 (S.D.N.Y. 1991) ("The claim of deliberative-process privilege must be lodged by the head of the agency after personal consideration of the allegedly privileged material. Although this power may be delegated to a subordinate with high authority, this may be done only if the head of the agency issues guidelines on the use of the privilege.") (citation omitted).

      The City ultimately filed a new declaration asserting the privilege from an employee who had been properly delegated the authority to assert the privilege and the declaration was accompanied by a copy of the written guidelines issued by the Commissioner of the NYPD as to how the privilege should be exercised. See Declaration of Carrie B. Talansky, annexed as Exhibit D. to Feb. 6 Ltr (Docket # 837 at **4-7); Letter, annexed as Exhibit A. to Feb. 6. Ltr (Docket # 837 at *9). These materials are sufficient to constitute a proper invocation of the privilege.

Applicability of the Privilege

The Court has reviewed the documents in camera and in conjunction with declarations from Chief Conforti that describe the process under which the after-action review was undertaken. We find that the deliberative process privilege applies because the documents were prepared as part of a process to determine agency policy in the future as to how to handle mass demonstrations. Chief Conforti at the time was the "Executive Officer of the Training Bureau." Apr. 19 Conforti Decl. ¶ 2. The report was a post-hoc review of protests occurring between May 25 and June 30, 2020, and evaluated the efficacy of existing NYPD protocols for responding to mass protests and included Chief Conforti's "thoughts and suggestions for ways to amend certain of" the NYPD policies on policing in the future. Id. ¶ 10. The draft report was not completed until August 2020, and Chief Conforti sent it to the Commissioner and another high-level official. Id. ¶ 13. The draft was then circulated to a larger group of executives in the NYPD who suggested additional revisions that were incorporated into a later draft of the report. Id. ¶ 14; see also Declaration of Thomas Conforti, annexed as Exhibit C. to Jan. 13 Ltr. (Docket # 815 at **5-8), ¶¶ 4-8. The report was given to the Commissioner, who never approved it or released it to the entirety of the NYPD. Apr. 19 Conforti Decl. ¶ 16.

The documents at issue consist of drafts of the full report, drafts of various sections of the report, notes, and emails transmitting these documents or comments on the documents. The elements of the deliberative process privilege are met because the documents are predecisional in that they were intended to precede the determinations of agency policy. They are also deliberative in that they consist of or relate to discussions of NYPD policy going forward as to its handling of mass demonstrations. The documents thus constitute "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal

opinions of the writer rather than the policy of the agency." Grand Cent. P'ship, Inc., 166 F.3d at 482 (citation and punctuation omitted).  Notably, the fact that the report was never issued or that some or all of the recommendations were never acted on does not lessen the applicability of the privilege since the privilege protects documents even where the decision to which they relate "died on the vine." Color of Change v. U.S. Dep't of Homeland Sec., 325 F. Supp. 3d 447, 454 (S.D.N.Y. 2018) (quoting Nat'l Sec. Archive v. CIA, 752 F.3d 460, 463 (D.C. Cir. 2014)).

      Severable Material

As noted, the privilege does not extend to "purely factual, investigative matters" that can be severed without revealing the deliberative matter within the document.  New York Times Co., 513 F. Supp. 3d at 350.  In considering this issue, however, we are mindful of the fact that factual portions of a document may reflect deliberative process insofar as they show the authors' editorial judgment in "cull[ing] the relevant documents, extract[ing] pertinent facts, [and] organiz[ing] them to suit a specific purpose." Nat'l Sec. Archive, 752 F.3d at 465 (citation omitted).

It may be that plaintiffs already have the factual material that was used to create the report.  But in light of the known subject of the report, we do not believe it would reveal any deliberations to require production of certain graphs and tables contained in the report: specifically:

Document # 1: page 10, "Chart 1" and "Table 1";  page 19, "Table 4"; page 21, "Chart 3."

Document # 5: page 10, "Chart 1" and "Table 1"; page 19, "Table 4"; page 21, "Chart 3."[2]

Document # 26: Slide appearing at *18.

Document # 31: The text beginning with paragraph "1" on page *1 until the end of the document is deliberative but the portion before that is not because it merely provides information as to the process of transmitting the report. Accordingly, the portion before paragraph "1" shall be produced in redacted form.

Document # 32: The three middle paragraphs are deliberative but the rest of the document is not because it provides information as to the process of transmitting the report. Accordingly Document # 32 shall be produced in redacted form.

<u>Need</u>

As noted, courts have examined five factors in weighing the public interest in non-disclosure of deliberative process material against the need of the litigant for access to the privileged information: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." <u>In re New York City Policing During Summer 2020 Demonstrations</u>, 563 F. Supp. 3d at n.2.

Here, we view the litigation and its issues as being serious. With regard to the other factors, the plaintiffs assert that one of their "central" contentions is that the NYPD

---

[2] While there are other charts and tables in this document and in Document # 1, it appears to the Court that the selection of data in the other tables and charts reveals the nature of the deliberative process.

"systematically fails to learn the lessons of its pattern of abusive and unconstitutional policing of protests, in particularly by failing to competently perform after-action reviews." Pl. Mem. at 2 (citing First Amended Complaint, filed in 21 Civ. 322 [Docket # 51], ¶ 77 ("NY Compl.")). They argue that they need the drafts of the after-action review to support this contention.

In fact, the allegation regarding after-action reviews is just one of at least 357 allegations in the cited pleading. See NY Compl ¶¶ 73-430. More to the point, reading the complaint as a whole, we do not see why plaintiffs have any strong need to learn what analysis Chief Conforti employed and what recommendations he made as part of the 2020 after-action review. Indeed, the complaint's allegations focus on the failure to learn lessons from the policing of protests that occurred before the 2020 protests. Thus, the plaintiffs need is to find out what lessons were learned from protests before 2020 and whether those lessons were implemented in time for the 2020 protests. The analysis undertaken after the 2020 protests is of only tangential if any relevance to this issue.

Perhaps there is some greater relevance as to how the after-action review process was conducted following the start of the 2020 protests: that is, whether the NYPD undertook such a review and whether an appropriate process for such a review was followed. But it is not necessary to look at the actual analysis conducted by Chief Conforti and those he conferred with in order to learn about the after-action review process.

And assuming arguendo that the police department's process of engaging in after-action review following the 2020 protests is of relevance to this action, we note that the plaintiffs already have learned from Chief Conforti's declaration that the review was never approved by the Commissioner and plaintiffs may question witnesses to verify this assertion. Also, we have already found that some material relating to the process is severable and should be released. But

whether Chief Conforti engaged in a particular analysis or proposed a particular recommendation as to a police practice following the 2020 protests is not relevant to the core issues in this case. The plaintiffs' expert will ultimately testify as to whether the police actions during the protests were proper or not. While it would surely be of interest to plaintiffs to learn Chief Conforti's views on this same subject, we must weigh the value to plaintiffs of such information against the serious cost of exposing agency deliberations. Common sense tells us that police department officials will be inhibited in the future from undertaking analyses of police practices and offering recommendations as to improvements to agency policy if it is known that their analysis and recommendations will be exposed and used against the department in litigation. The avoidance of such an outcome is the central purpose of the deliberative process privilege. Plaintiffs have not shown that their need outweighs this important governmental interest.

### Conclusion

For the reasons stated above, the motion to compel (Docket # 680) is granted in part and denied in part. The City shall produce the materials containing purely severable factual matter described herein within 7 days of the date of this decision. The motion to compel production of the remaining materials is denied.

Dated: February 15, 2023
　　　　New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge