

February 16, 2023

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

By Electronic Filing.

    Re:    **In re: New York City Policing During Summer 2020 Demonstrations,**
                **1:20-CV-8924 (CM) (GWG) — This Letter Relates to** *Sow*, **21-cv-533**

Dear Judge Gorenstein:

    I write on behalf of the *Sow* Plaintiffs in the consolidated case above, to ask that the Court schedule the conference it offered in Dkt. No. 834.

    Following the Order at Dkt. No. 834, Plaintiffs sought a meet and confer. Plaintiffs ad hoped to discuss what made the requests burdensome — and how those concerns might be addressed. The parties met on February 10, 2023,[1] during which Defendants were not prepared to discuss the technical details of their asserted burden. Instead, Defendants asked Plaintiffs to agree to narrow the requests without any information. For their part, Plaintiffs asked Defendants to explain basic facts about how the information was stored: whether the information is keyword searchable, whether it is stored by date, whether reports can be pulled in bulk based on search terms, type of discipline, and so on. Defendants did not have the information ready to hand, and they were not willing to commit to providing any particular information.

    As an attempt to bridge that gap, the parties thus agreed Plaintiffs would provide a list of questions about technical capabilities and burden that could be a jumping off point for a discussion, and Defendants would decide whether or not they were willing to answer those questions. Plaintiffs also made clear they considered the parties to be at an impasse if Defendants refused to answer the questions — and were frustrated Defendants were not prepared to discuss (and did not bring anyone with personal knowledge about) the technical details of the asserted burden. Yesterday evening, Defendants objected to every single question Plaintiffs sent — essentially saying the questions sought too much detail and were too technical.[2] The questions appear in an appendix to

---

[1] I was present for Plaintiffs, Daniel Braun and Joseph Hiraoka were present for Defendants. The meeting lasted just under a half an hour.

[2] Plaintiffs also note that time after time in this case, after Defendants' attorneys have asserted a burden, when actual NYPD members are forced to say something under oath, it has turned out the burden asserted does not exist.



this letter, given Defendants' objections.[3]

At this stage, since Defendants are apparently unwilling to answer basic questions about *why* they think there is a burden — or how that burden might be addressed.[4]  So, "plaintiffs do not think that a conferral with the City can result in an agreed-upon narrowing of the request" (Dkt. No,. 834) — since they cannot reasonably figure out how to narrow the requests without understanding how Defendants can and cannot parse information, and Defendants are unwilling to have that discussion.

Thus, Plaintiffs ask the Court to "hold a conference (at which Ms. Fitzpatrick would be available) so the Court could determine for itself whether there might be an appropriate narrowing and, if so, what form it could take."  Dkt. No. 834.

Once again, we thank the Court for its continued time and attention.

Respectfully submitted,
/s/
_____
J. Remy Green
  *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
*Attorneys for Sow Plaintiffs*
1639 Centre St., Suite 216
Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

---

[3] As the Court can see, they are really just the kinds of questions one would expect any lawyer to ask a client when figuring out the initial assertion of burden — or attempts by Plaintiffs to see what the scale of raw information at issue was (for example, asking if Plaintiffs narrowed to a fixed set of incident dates for discipline, if Defendants could give the raw numbers of disciplinary files those dates covered).

[4] *See, e.g.,* Question 9 (asking what the burden would be for Defendants produce excessive force discipline for specified dates, which as Plaintiffs explained at the meet and confer, would be dates Mass Arrest Processing Centers have been activated in the past).



Page 2 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



**Appendix: Questions Plaintiffs Asked**

1. What search capabilities does the current system for tracking discipline have?

    a) Can you search by: (a) date; (b) name; (c) keywords; (d) category (e.g., excessive force, discourtesy, etc.); (e) kind of discipline imposed; (f) whether discipline was imposed.

    b) Can you narrow results of a search by: (a) date; (b) name; (c) keywords; (d) category (e.g., excessive force, discourtesy, etc.); (e) kind of discipline imposed; (f) whether discipline was imposed.

2. What file formats are things stored in? Is it possible to import those files to Relativity or another application to run keyword searches, even if the native application cannot run such searches?

3. How far back does the current system go?

4. What is the status of each system before that (e.g., where is information kept, in what format, etc. -- including questions 1 and 2)?

5. If information before a certain date is not in a live system, is that information not available in any way to current supervisors?

    a) As an illustration, let's assume the system does not go back to 2004. Officer XYZ was disciplined for excessive force using a baton at a protest in 2004. Officer XYZ now faces discipline for excessive force using a baton in 2020. Does the person deciding whether to impose that discipline simply not know about the 2004 incident?

6. How many cases are we talking about here? That is, can we get a read out of the raw total number of officers disciplined for excessive force generally between the start of the RNC protests and the present (assuming the relevance period the Court set previously is how we're proceeding)? It would also be helpful to have that information on a per-year basis, since one way we might be able to narrow to say we only want years where there were major protest events.

7. Is there any particular burden to just providing summary level data of excessive force discipline without officer names? That is, can you generate a spreadsheet that just shows the date of incident, location (?), case number, discipline recommended (where the CCRB is involved), and discipline imposed?

    a) If that's easy to do, it may be possible for us to just give you a list of cases we want more information about -- which would, given the explanation to date, mean there's virtually no burden at all (since we would narrow by incidents that correlate by location and date to mass arrests at protests).

COHEN&GREEN                                                                                                                                 Page 3 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



8. If we give you a list of dates we care about, can you tell us exactly how many cases cover those incident dates?

9. Similarly, if we give you a list of dates, what would be the burden of producing all excessive force files for those dates? — This is understanding that the false positives (e.g., excessive force disciplinary proceedings not related to protests) would be very limited and we could agree to a clawback for any such files.

COHEN&GREEN                                                                 Page 4 of 4

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com