```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                           Docket #20cv8924

  IN RE NEW YORK CITY POLICING      :
  DURING SUMMER 2020 DEMONSTRATIONS

                                    : New York, New York
                                      February 13, 2023
-----------------------------------: TELEPHONE CONFERENCE


                      PROCEEDINGS BEFORE
            THE HONORABLE GABRIEL W. GORENSTEIN,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff People    NEW YORK STATE OFFICE OF
of the State of New     THE ATTORNEY GENERAL
York:                   BY:  SWATI PRAKASH, ESQ.
                             LILLIAN MARQUEZ, Esq.
                        28 Liberty Street
                        New York, New York 10005


For Gray Plaintiffs:    WYLIE STECKLOW PLLC
                        BY:  WYLIE STECKLOW, ESQ.
                        111 John Street, Suite 1050
                        New York, New York  10038


For Payne Plaintiffs:   NEW YORK CIVIL LIBERTIES UNION
                        BY:  DANIEL LAMBRIGHT, ESQ.
                        125 Broad Street, 19th Floor
                        New York, New York 10004

                        LEGAL AID SOCIETY
                        BY:  COREY STOUGHTON, ESQ.
                        199 Water Street
                        New York, New York 10036



Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

APPEARANCES (CONTINUED):

For Roland Plaintiffs:    THE ABOUSHI LAW FIRM
                         BY:  TAHANIE ABOUSHI, ESQ.
                         1441 Broadway, Suite 5036
                         New York, New York 10018

For Sow Plaintiffs:      COHEN & GREEN PLLC
                         BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New York 11207

For Defendants:          NEW YORK CITY LAW DEPARTMENT
                         BY:  GENEVIEVE NELSON, ESQ.
                              PETER SCUTERO, ESQ.
                              BRIDGET HAMILL, ESQ.
                         100 Church Street
                         New York, New York 10007

## INDEX

## **E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** | **Court** |
|---|---|---|---|---|---|
| None | | | | | |

## **E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

1

```
 1                     PROCEEDINGS              4

 2         THE CLERK:  In the matter of In Re New York

 3  City Policing During Summer 2020 Demonstrations, case

 4  number 20cv8924.  Starting with plaintiff's counsel,

 5  please state your appearances for the record.

 6         MS. SWATI PRAKASH:  Good morning, this is Swati

 7  Prakash from the New York State Office of the Attorney

 8  General for plaintiffs People of the State of New York.

 9         MS. LILLIAN MARQUEZ:  Good afternoon, Your

10  Honor, this is Lillian Marquez of the Office of the New

11  York State Attorney General on behalf of plaintiffs and

12  the People.

13         MR. WYLIE STECKLOW:  Good morning, this is

14  Wylie Stecklow on behalf of the plaintiffs in the matter

15  of Gray, et al. v. City of New York.

16         MR. DANIEL LAMBRIGHT:  This is Daniel Lambright

17  for the New York Civil Liberties Union on behalf of the

18  Payne plaintiffs.

19         MS. COREY STOUGHTON:  Good morning, Your Honor,

20  this is Corey Stoughton on behalf – good morning, Your

21  Honor, this is Corey Stoughton, also on behalf of the

22  Payne plaintiffs, and I'm only one because I'm here if

23  the Court does decide to address the Conforti motion.

24         MS. TAHANIE ABOUSHI:  Good morning, Your Honor,

25  Tahanie Aboushi of The Aboushi Law Firm appearing on
```

```
 1                        PROCEEDINGS                5
 2   behalf of the Roland plaintiffs.
 3            MX. REMY GREEN:  And good morning, this is Remy
 4   Green of Cohen & Green on the Sow case, and if the Court
 5   decides to roll in anything about the coordinated cases,
 6   I'm here, I am on behalf of them too.  For the
 7   transcript, if we order it, I should appear in the
 8   transcript as Mx. Green, spelled M-X period rather than
 9   Mr. or Ms.
10            MS. GENEVIEVE NELSON:  Good morning, Your
11   Honor, this is Genevieve Nelson for defendants.
12            MR. PETER SCUTERO:  Good morning, Judge, this
13   is Peter Scutero for the defendants.
14            THE COURT:  Okay, who is going to be speaking
15   for plaintiffs on number 774?
16            MR. LAMBRIGHT:  I will, Your Honor, Daniel
17   Lambright.
18            THE COURT:  Spell your last name please.
19            MR. LAMBRIGHT:  L-A-M as in Mary-B-R-I-G-H-T
20            THE COURT:  Okay.  And Mr. – Mr. Scutero signed
21   the letter.  You're speaking for defendants?
22            MR. SCUTERO:  I will be speaking for the
23   defendants, Your Honor.
24            THE COURT:  Okay.  Okay, first, let me just say
25   we're recording this for purposes of anyone ordering a
```

```
 1                        PROCEEDINGS              6

 2   transcript, but any other dissemination or recording or

 3   broadcast of this proceeding is contrary to law.  I'm

 4   going to start with 774, and my plan right now is to go

 5   through the documents and try to give you rulings on

 6   each.  So it may be a little bit of a laborious process.

 7   I will just note for the record that it was agreed that

 8   I would decide this based on letters rather than based

 9   on formal briefing.

10          So as I go through, I'm going to try to start

11   with the law enforcement privileged documents I think.

12   I'll make the ruling, as to the privilege, if it's

13   unclear or if I forget to address the issue of need or

14   substantial need or whatever the standard is for the

15   particular privilege, I'm counting on the plaintiffs to

16   remind me.  Otherwise, if we just go on, I mean I

17   thought about need with respect to each of them, if I

18   haven't articulated it, and if it is something that I

19   find that there is privilege and you don't remind me and

20   I keep going, it means that I didn't find there was a

21   substantial need.  So if you think you need to remind me

22   because I haven't said anything about it, I'm putting it

23   on the plaintiffs to do that.  Mr. Lambright, do you

24   understand what I'm saying?

25          MR. LAMBRIGHT:  Yes, Your Honor.
```

```
 1                    PROCEEDINGS                7
 2          THE COURT:  Okay, good.  The other thing
 3  floating out there is attorney-client privilege.  So,
 4  Mr. Lambright, you need to remind me when we get to that
 5  document in case I don't address attorney-client
 6  privilege.  Is it more than one or just one?
 7          MR. LAMBRIGHT:  I think there are a few
 8  documents where there are attorney-client privilege
 9  issues.
10          THE COURT:  No, I mean in the sample.  You
11  think there's a few?
12          MR. LAMBRIGHT:  Yes, in the general but I can
13  check the sample again to see if --
14          THE COURT:  All right, well, we're going to go
15  through it document by document.  I actually have
16  noticed this too, just in case I miss it, you need to
17  remind me to address attorney-client privilege if I fail
18  to do that.
19          MR. LAMBRIGHT:  Yes, Your Honor.
20          THE COURT:  And then after we're done with all
21  this, as I said, we may or may not get to 680 which is
22  the after action review briefing.  But in any case, to
23  the extent that I found that the privilege was not
24  properly asserted or that I found that the need was
25  there, we need to talk about what we're going to do
```

```
 1                          PROCEEDINGS              8
 2   about the documents that are not in the sample.  You
 3   know, one possible option – I mean my preferred option
 4   is that I can somehow give direction that will cover
 5   other documents.  But if that doesn't seem to be what's
 6   happening, you know, another option is to have a quick
 7   process where the City sees that they're willing to, not
 8   willing I guess is the right word, but whether they're
 9   able to apply whatever principles I gave to other
10   documents, release those, and if there's any left, for
11   us to figure out what I'm going to do with those.
12          Okay, so having said all that, let me also say,
13   to the extent I'm going to be ruling, I should let the
14   record reflect what standards I'm using.  For purposes
15   of law enforcement to me is completely laid out in the
16   Second Circuit case, (indiscernible) v. City New York.
17   It's a 7 F.3d 923.  As to deliver the process standard,
18   I've written briefly on this in this case at 563 F.
19   Supp. 3d 84.  And it's also expressed in Second Circuit
20   decisions such as ACLU v. National Security Agency, 925
21   F.3d 576.  Those are the principles I'm using in making
22   whatever rulings I make during this phone call.
23          I'm not necessarily planning to do a separate
24   order after this phone call, so I hope you'll take good
25   notes as to what I rule as to each document.
```

```
 1                      PROCEEDINGS              9
 2          Okay.  Looking now at all of the documents.
 3  They were in two categories for me, NYPD documents and
 4  OTM, which I guess is the Office of the Mayor documents.
 5  Let's start with the NYPD documents.  And let's talk
 6  about the first one which is the Conforti log document
 7  number 39.  All right, now I know plaintiffs are
 8  obviously at a disadvantage here.  I still thought it
 9  would be helpful for me to get some argument from the
10  City as to each of the documents, though if you can, Mr.
11  Scutero, just briefly explain the basis for the law
12  enforcement privilege on this one.
13          MR. SCUTERO:  Good morning, Judge.  I
14  apologize, I didn't realize we were going through the
15  sample.  I thought we were going through all of the
16  documents that you requested on Friday.  And so I do not
17  have that document in front of me.  I can say too though
18  that --
19          THE COURT:  How hard would it be for you to get
20  that document in front of you?  I was planning to go
21  through the whole sample.
22          MR. SCUTERO:  Yeah, I understand, Judge, I
23  didn't realize we were just, you were just doing the
24  sample because you requested all the documents on
25  Friday.  I didn't realize we were just limiting
```

```
 1                     PROCEEDINGS                10
 2  ourselves to the sample.  But it could take me a few
 3  minutes, I could probably get it.
 4         THE COURT:  I think it's better.  So we'll
 5  wait, and whether you have the sample documents
 6  available, let me know.
 7         MR. SCUTERO:  I appreciate it, thank you,
 8  Judge.  And I do apologize.
 9             (pause in proceeding)
10         MR. SCUTERO:  Sorry about that, Judge.  I do
11  have the document in front of me.  And basically this
12  document is a slideshow that was prepared with the, in
13  preparation for the Conforti report, the after-action
14  report.  And it contains information regarding law
15  enforcement techniques as well as capabilities.  It also
16  contains information relating to individuals who were
17  subject of investigations and information relating to
18  confidential sources.  Because of those reasons this
19  document should be protected under the law enforcement
20  privilege.  And plaintiffs have not provided a reason to
21  rebut that strong presumption that this document should
22  be protected, and even if they did, the fact that the
23  information contained in this slideshow contains such
24  sensitive information, it outweighs any significance or
25  need for the plaintiffs which they could obtain similar
```

```
 1                          PROCEEDINGS               11
 2   information through other sources.
 3              (pause in proceeding)
 4              MR. SCUTERO:  Hello?
 5              THE COURT:  Sorry, sorry, I realized I was on
 6   mute.  I just spoke for about 20 seconds.  So let me try
 7   it again.
 8              What I had said was I quibbled with the last
 9   point that was made which is that the information could
10   be obtained from other sources.  There's actually
11   information about specific individuals and criminal
12   activity of those individuals, and I questions the model
13   charged and I questioned whether it could be obtained
14   from other sources.
15              So let me just turn to plaintiffs to see what
16   they would like to say on this document.  Mr. Lambright.
17              MR. LAMBRIGHT:  Yeah, I think, Your Honor, that
18   these documents go to the core of the claims at issue in
19   this case.  You know, the NYPD and the City has made
20   assertion that their conduct was reasonable based upon
21   intelligence and threats, intelligence that they had
22   about threats of property damage or threats to officers'
23   safety specifically.  But even if (indiscernible) the
24   privilege accurately applies to this document, it's
25   clearly overcome by the need for the case given that we
```

1                           PROCEEDINGS                12

2  have claims directly related to this.  And the

3  defendants have asserted defenses that kind of rely at

4  least on the subject matter underlying this report.

5              THE COURT:  Okay.  So my ruling on this one is

6  that it clearly fits within the law enforcement

7  privilege in that it reflects information about specific

8  information and incidents and techniques.  As to whether

9  it's been overcome, I'm just going to note that the need

10  to overcome, sorry, the level of showing needed to

11  overcome the law enforcement privilege is far greater

12  than what's needed to overcome the deliberative process

13  period.  So my ruling with respect to this document is

14  not indicative one way or the other as to a ruling with

15  respect to a document protected solely by deliberative

16  process.

17              But given the specifics of the information

18  here, this is not a case that it's, the plaintiffs need

19  this in order to fairly litigate the case, and the mere

20  fact that in some generic sense the City might use the

21  existence of threats or things of that sort as an

22  explanation for their conduct is not enough to find a

23  waiver or a sufficient need.  So I'm upholding as to

24  this document which is Conforti log document number 39.

25              Let's move to the next one.  I assume the order

```
 1                        PROCEEDINGS              13
 2  in which these documents have been organized and the way
 3  they were sent to me corresponds to something that you
 4  two have.  I assume it corresponds to the privilege log,
 5  but my next one ends in 56452.  Mr. Lambright, is that
 6  sort of your next one?
 7            MR. LAMBRIGHT:  I'm trying to find it.  Because
 8  56412 --
 9            THE COURT:  52, 56452 are the last digits.
10            MR. LAMBRIGHT:  Give me one second, Your Honor.
11            THE COURT:  Take your time.  Mr. Scutero, this
12  is the order somehow they were, in what was sent to me.
13  Is this up on your screen?
14            MR. SCUTERO:  I'm trying to pull it up now,
15  Judge.
16            THE COURT:  Is there a better way for me to do
17  this?  I mean I don't know how to identify it other than
18  by the last digits of the Bates number.
19            MR. SCUTERO:  Yeah.  No, I think that's the
20  best way to identify it, Judge.  I just - you know, if
21  the Court would just be patient because it does take
22  some time on our end to pull up each document.  Unless
23  the Court wants to adjourn for a short period, maybe 15,
24  20 minutes, so we can try and get everything organized
25  on both sides.
```

```
 1                      PROCEEDINGS            14

 2            THE COURT:  Okay, I mean I don't think Mr.

 3   Lambright has to find the document.  He just has to find

 4   this entry.

 5            MR. LAMBRIGHT:  Right, I found it.  I found the

 6   entry, Your Honor.

 7            THE COURT:  All right.

 8            MR. LAMBRIGHT:  It doesn't appear to be in a

 9   particular order that sent it in or any kind of

10   particular order, but since I have the document, it's

11   pretty easy for me to pull up.

12            THE COURT:  So, Mr. Scutero, I need your

13   judgment.  My goal is to be as efficient as possible.

14   You know how many documents there are, 20 or so.  What's

15   going to be faster, if I have you pull them up each

16   time?  I think I could theoretically email the order - I

17   could email you something that has the order I'm about

18   to do this in.  Would you have someone who could work on

19   it while we're doing this?

20            MR. SCUTERO:  Yeah, I think that would be

21   helpful, Judge.

22            THE COURT:  Let me see if it's actually

23   possible.  Hold on a second.  I'm cutting a column from

24   an Excel spreadsheet I've created.

25            MR. SCUTERO:  Oh, and I do have that document
```

```
 1                          PROCEEDINGS            15

 2  in front of me.  I think, Judge, what would be helpful,

 3  because some of the documents have Bates stamps and some

 4  have our control number, if you can reference to us

 5  either whether it starts with DEF or DMN, then I can

 6  navigate to the document a lot quicker.

 7              THE COURT:  Okay, hold on.  I have a list of

 8  the documents in the order.  I'm going to try sending

 9  it, hold on, one second.

10              (pause in proceeding)

11              THE COURT:  Okay, I just sent it to Mr. Scutero

12  and Mr. Lambright.  Okay, so you think possibly, Mr.

13  Scutero, someone can, while we're doing this, calling up

14  those documents for you?

15              MR. SCUTERO:  Yes, I do, Judge, thank you.

16              THE COURT:  Okay.  All right, so let's go to

17  the next document which is daily intelligence briefing.

18  Happy to give the whole number, it's DEF PD0056452.

19              MR. SCUTERO:  Yes, Judge, I have that document.

20              THE COURT:  All right, just give me a moment to

21  look at my notes.

22              (pause in proceeding)

23              THE COURT:  Do you want to talk about this

24  document?

25              MR. SCUTERO:  Sure, Judge.  This document
```

```
 1                          PROCEEDINGS                16
 2  consists of an intelligence briefing from the MTA, and
 3  it includes analysis, news stories, as well as
 4  assessments and definitions relating to terrorism.
 5  Because these documents, because the information within
 6  this document is a compilation of information relating
 7  to terrorism and antiterrorism techniques and
 8  guidelines, it should be protected under the law
 9  enforcement privilege because releasing it would pose a
10  significant harm to the specific task force that this
11  briefing was released under.
12          It would show to potential bad actors what
13  information the MTA and the interagency counterterrorism
14  task force looks at when investigating terrorism and
15  when it is preparing and preparing to put into place
16  antiterrorism measures.  This would provide significant
17  information to bad actors that can help them evade
18  antiterrorism, the antiterrorism task force in detecting
19  terrorists, potential terrorists, as well as thwarting
20  potential terrorist acts.  Because of those reasons it
21  should be protected under the law enforcement privilege.
22          THE COURT:  Mr. Lambright.
23          MR. LAMBRIGHT:  Your Honor, our understanding
24  of this document is that it's essentially a roundup of
25  news sources and other primary open source intelligence.
```

1                          PROCEEDINGS                  17

2   Defendants have never declared that these contain

3   identities of undercover sources or kind of any real

4   tactics that are used, or confidential tactics that are

5   used by officers in the field.  It's hard to see how the

6   release of these documents would undermine the

7   confidentiality of sources or impair future

8   investigations.

9            Defendants have really, in their letter, only

10  claimed that these documents contain, quote/unquote,

11  "institutional thoughts" as to antiterrorism

12  investigations and NYPD thoughts and concerns about

13  potential terrorists threats.  And these (indiscernible)

14  an amorphous description just simply do not meet the

15  standard.

16           And if we look to In Re City of New York, the

17  field reports that were at issue in those cases and

18  where the court found that the law enforcement privilege

19  properly applied involved undercover officers

20  infiltrating various organizations and the kind of

21  discussion about those concerns.  And similarly in

22  McNamara, the documents at issue there were scenarios

23  about kind of hypothetical situation that, an actual

24  kind of discussions about the weaknesses of the NYPD and

25  kind of addressing various scenarios that might actually

```
 1                         PROCEEDINGS                18
 2   cause a rift of future harm.  And here, or at least from
 3   what we understand it from what the privilege log says,
 4   here it does not appear to be the case.
 5           Additionally, we would argue that it's over,
 6   that because it's central to the case, it's overcome,
 7   and additionally there are protective, there's a
 8   protective order in place such that, you know, that
 9   these documents would not be kind of widely distributed
10   to bad actors as the defense has suggested.
11           THE COURT:  So let me ask Mr. Scutero, I feel
12   there's a difference between pages 1 through 4 of this
13   document and the remaining pages.  Page 1 through 4 are
14   kind of an assessment of certain factual scenarios and
15   what they mean.  I mean I didn't go through in detail
16   the remaining pages.  It starts with news and then has a
17   description of a number of news articles, I mean all of
18   which is sort of completely irrelevant to this case and
19   maybe that's, that may be my answer.  It has nothing to
20   do with protests in New York City, at least - yeah, I
21   mean it just has, it basically is just, you can't even
22   tell what the common theme is necessarily.  Most of it's
23   terrorism.  The first story seems to be something else.
24           Anything you want to say about those pages?
25           MR. SCUTERO:  Well, Judge, the first four pages
```

1                         PROCEEDINGS                    19

2   do relate to domestic terrorism, and as you mentioned,

3   it does make up an assessment by, or it consists of an

4   assessment by this interagency counterterrorism task

5   force.  And distributing that information would impair

6   law enforcement's ability to conduct future

7   investigations because then terrorist actors, the

8   individuals who are, that this report details would have

9   this information and know who the task force would be

10  targeting and what they would be looking at.  They would

11  look, they would have access to the definitions that are

12  also included in these first few pages that you've

13  mentioned.

14          With respect to the other pages, Judge, that

15  consist of news reports, although these news reports,

16  plaintiffs have access to because they're public source

17  documents, the fact that they're compiled together

18  within this report should also prevent this report from

19  being released.  Because this shows what information law

20  enforcement is looking at, what information they're

21  relying on, what information they're assessing in order

22  to determine how to best counteract terrorist

23  activities.

24          And so because it's compiled into one document,

25  and this goes to the arguments we provided in our papers

1                         PROCEEDINGS                    20

2    with regards to the Knight case, because these articles

3    are all contained in the same papers, in the same

4    report, it would provide information to bad actors and

5    would be a significant danger to not only New York City

6    but also would harm and impair law enforcement's ability

7    to conduct future investigations because terrorists

8    would have or potential terrorists and bad actors would

9    have this information, know how to get around it, know

10   how to, know what task force, antiterrorism task force

11   are looking at when they're investigating them.

12           So for those reasons, Judge, we think that this

13   should be protected under the law enforcement privilege

14   and should not be released.

15           MR. LAMBRIGHT:  Your Honor, if I may.  I'll

16   just note, again, defense counsel has not addressed the

17   protective order and the fact that I think at least, I

18   don't think any counsel is going to provide these

19   documents to any terrorists organizations.

20   Additionally, I'll just note that the Knight case that

21   was cited is a FOIA challenge and that distribution in

22   that case would have necessarily been public and not

23   subjected to the same type of protective element that we

24   have in this litigation.

25           THE COURT:  All right.  I've considered this

1                          PROCEEDINGS                    21

2   document, and I believe that it would seriously impair

3   the ability of law enforcement agency to conduct future

4   investigations, to have, you know, its analysis of how

5   certain acts are to be considered and what kind of acts

6   are to be considered in assessing threats.  Once again,

7   it's a very high bar for overcoming the law enforcement

8   privilege in terms of substantial need.  I think

9   plaintiffs can easily litigate this case without this

10  specific information.

11          And as to the protective order, In re City of

12  New York was very skeptical about the ability of a

13  protective order to truly (indiscernible) the interests

14  of the law enforcement privilege, and given the relative

15  lack of relevance of a huge portion of this and even to

16  some degree the beginning portion, I don't think a

17  protective order is an effective mechanism here.  So I'm

18  going to uphold it as to this document.

19          The next document is DEF EPD00120004.  I think

20  it's – I'm not sure – I don't think we need to do

21  anything more on this.  It's the same – it's the same

22  issue that was raised in the other one, unless, Mr.

23  Lambright, you think there's something different about

24  this.

25          MR. LAMBRIGHT:  No, I think it is the same as

1                        PROCEEDINGS                    22

2   the other document.

3            THE COURT:  Okay, so it follows from my

4   previous ruling.  So that's going to be upheld.

5            Okay, I think the next document is actually

6   deliberative process has been inserted in here.  So

7   maybe I'd like to skip over the one ending

8   DNNL00251_000134920.  So let's come back to this, don't

9   let me forget, but I think we have a few law enforcement

10  privilege ones after this.  I'd rather do those.

11            Okay, the next one is DNNL00251_00160633.  Mr.

12  Scutero, you have that one?

13            MR. SCUTERO:  I'm pulling it up now, Judge.

14            THE COURT:  You know, actually you can save

15  yourself some time.  This one actually and the next one

16  which ends 68789 and 17856, they all involve a

17  confidential source.  So, Mr. Lambright, having told you

18  that, tell me if you have anything else to say on this.

19            MR. LAMBRIGHT:  Sure, I would say that even if

20  a confidential source is involved, you know, there are,

21  there's an ability to kind of redact the identifying

22  information of that confidential source.  And, again,

23  given that issues of officer safety and intel are

24  particularly relevant to this case, and how the NYPD

25  reacted to the protests are issue, we would argue that

```
 1                      PROCEEDINGS                    23

 2   even if there's a confidential source, that the

 3   privilege is overcome and that the defense can take

 4   whatever means necessary to redact any confidential

 5   information about that source.

 6          THE COURT:  Mr. Scutero.

 7          MR. SCUTERO:  Judge, we would say that we

 8   argued that even redacting that would pose a danger to

 9   the sources and methods by which the NYPD conducts its

10   investigations, and redaction does not necessarily

11   segregate all the information that would be harmful to

12   not only the source but also to the investigation that

13   these documents are related to.

14          THE COURT:  I have to say, there's one of them,

15   the one ending 60633, Mr. Scutero.

16          MR. SCUTERO:  Yes, Judge.

17          THE COURT:  It's pretty truncated all this.

18   There's a source in there somewhere.

19          MR. SCUTERO:  Yes, there is, without --

20          THE COURT:  Can you tell me what line it is or

21   something?

22          MR. SCUTERO:  I would have to go back to - hold

23   on one second.

24          (pause in proceeding)

25          THE COURT:  Maybe it's in the attachment line.
```

```
 1                         PROCEEDINGS               24

 2            MR. SCUTERO:  I believe it is in the

 3  attachment.

 4            THE COURT:  Okay.

 5            MR. SCUTERO:  It is the attachment, Judge.

 6  That is the source.

 7            THE COURT:  Got it.  All right, so the problem

 8  with redacting the name of the source is that the

 9  information from the source can lead back to the source.

10  If it's any consolation to the plaintiffs, these are

11  extremely truncated brief emails, making references to

12  the source, that has very little utility in terms of the

13  plaintiffs' own case.  So the privilege is there.

14  There's not going to be any great need, and, again,

15  relying on In re City of New York especially for

16  something like confidential sources, a protective order

17  is not sufficient protection.  So I'm upholding it as to

18  those three documents.

19            Okay, I think we now have a another deep

20  deliberative process in the middle of the law

21  enforcement privilege.  It's the one ending 34771.  I'm

22  going to skip over that and come back.  And you know

23  what, the next documents ending, I remember these,

24  58479, 59557, those next two are the exact same,

25  undercover source problem.  So I'm going to uphold it as
```

```
 1                        PROCEEDINGS              25
 2   to those.  I mean undercover or source, one or the
 3   other, or confidential source.
 4            Okay, the next law enforcement privilege one is
 5   DNNL00251_00311632.  So if you could call it up, Mr.
 6   Scutero.  I'm sorry, I think I jumped ahead.  Did I?
 7   So, no, I'm upholding as to, just to be clear, the one
 8   ending 42609, 54769, and 58479, and also 59557.  Yeah,
 9   so I'm right.  So the one we're up to now is
10   DNNL00251_000311632.
11            MR. LAMBRIGHT:  And just to be clear, Your
12   Honor, those are all documents where there is a
13   confidential informant listed and there's basically not
14   much substance in the emails.  Is that the
15   understanding?
16            THE COURT:  Yeah, I mean if you want me to
17   verify there's not much content in the emails, I could,
18   but there was no question, I mean I just remember
19   looking - I'll look at them again if you want, hold on.
20            (pause in proceeding)
21            THE COURT:  Yeah, same thing.  Brief emails on
22   609.  Brief email 4769.  Same thing with 8479.  And
23   we're skipping 555.  Oh, no, 5557, yes, same thing.
24            MR. LAMBRIGHT:  Thank you, Your Honor.
25            THE COURT:  Okay, and now we're at 11632.  Mr.
```

```
 1                     PROCEEDINGS              26
 2  Scutero, I mean this is a report about a particular
 3  individual, a person of interest.  I mean all kinds of
 4  personal information about this person, and I mean it's
 5  just quite obviously a matter that would undermine the
 6  privacy of individuals involved in an investigation.
 7            MR. SCUTERO:  Yes, we agree --
 8            THE COURT:  Gang affiliation and all kinds of
 9  stuff.  So I'm holding this one too.  There's certainly
10  no need by the plaintiffs, and a protective order is not
11  going to solve it.
12            Okay, I think there's only, in the next group,
13  which are the OTM documents, are any of those law
14  enforcement privilege?  I'm trying to look at my listing
15  here.  6042258 or 323.  Yes, 56, 51616, that's the only
16  one of that group.  Do you see the one I'm talking
17  about?  I'll give the full number.  It's
18  DNNL00303_000151616.
19            MR. SCUTERO:  Yes, Judge, I'm pulling it up
20  now.  Judge, I think this falls under the same category
21  as the other briefing documents that you had already
22  ruled or upheld the privilege under.
23            THE COURT:  Well, this seems like of a
24  different character because what it is is it seems to be
25  sort of a summary of how the intelligence bureau
```

1

2  operates.  I'm not saying it's not protected or is

3  protected.  It's not like the daily terrorism briefing.

4  I'm not sure what you were likening this to.

5           MR. SCUTERO:  Right, but at the – that is true,

6  Judge, that it does provide information as to how the

7  intelligence bureau operates and as such should be

8  protected.  But if you scroll down to the end of the

9  document in the appendix, it also provides, you know,

10 information about terrorist plots that are targeting New

11 York City and emanating from New York City.

12          THE COURT:  Yes, okay, and that is easily

13 protected, but I think you need to talk to me about

14 whether the first, I mean protected for the same reasons

15 I said earlier about the daily terrorism briefing of the

16 same character.  But what about the first pages about

17 the structure and the different units that operate

18 within and how they operate, just address that please.

19          MR. SCUTERO:  Sure, Judge, well, again, this is

20 information that pertains to techniques and procedures

21 that the NYPD uses to collect and assess intelligence

22 with respect to potential crimes.  Because of that it

23 meets that first prong under the law enforcement

24 privilege and should be protected.

25          I don't – the plaintiffs haven't provided a

PROCEEDINGS                      28

1
2  compelling need for this information.  They argue that
3  they should be entitled to intelligence relating to the
4  protests because their argument is that the defendants
5  have posited a defense that there was no intelligence
6  with regards to the protests and the NYPD relied upon.
7  But the information --
8         THE COURT:  Wait, wait, wait.  Say that again.
9  You said they posited a defense?  I didn't follow that.
10 Try me again.
11        MR. SCUTERO:  Yeah, so they, the plaintiffs in
12 their papers argue that the defendants have put forth a
13 defense that with respect to intelligence collection,
14 and if I can just – with respect to intelligence
15 collection that the defendants relied upon intelligence
16 in conducting their policing of the protests.  The
17 document that we are currently looking at doesn't have
18 any information or at least doesn't appear to have
19 information with respect to – and I'm sorry, the
20 document, I just lost the document – doesn't appear to
21 have information relating to policing the protests at
22 issue here.
23        THE COURT:  Well, I mean that's the substantial
24 need issue is what you're saying.
25        MR. SCUTERO:  Yes, they --

```
 1                        PROCEEDINGS                    29

 2              THE COURT:  All right - go ahead.

 3              MR. SCUTERO:  No, I was just arguing that they

 4  don't have a substantial need.  We meet the first prong

 5  under the law enforcement privilege because this

 6  information pertains to techniques and procedures.  They

 7  now have to rebut that under the strong presumption that

 8  privilege doesn't apply based on a compelling need.  Our

 9  argument is that they do not have a compelling need for

10  this information because it doesn't contain information

11  with respect to the protests.

12              THE COURT:  Okay, Mr. Lambright.

13              MR. LAMBRIGHT:  So, again, it's hard to

14  (indiscernible) not seeing what is actually there.  But,

15  you know, I think maybe it's helpful to kind of just

16  talk about the importance of intelligence and the kind

17  of this litigation.  You know, the defendants have

18  constantly asserted that they intelligence that there

19  are certain threats and that intelligence informed how

20  they responded to the protests.  Obviously, we have

21  (indiscernible) challenging that the City's response to

22  the protests.

23              And additionally I'll note that in the DOI

24  report, one of the major concerns and kind of problems

25  that were pointed out about the NYPD's response to the
```

1                           PROCEEDINGS                    30

2   protest was faulty intelligence.  And, you know, insofar

3   as, you know, insofar as the document can speak to how

4   the NYPD collected intelligence and how they collect

5   intelligence and how, you know, they got faulty

6   intelligence I think is particularly relevant, and even

7   if the law enforcement privilege does apply, it should

8   be overcome by the needs of this case.

9            And, yeah, that's, you know, and I'll just kind

10  of quote the decision by the, in Floyd where, you know,

11  the court said that an important factor is whether the

12  case is a civil rights case and it's certainly a matter

13  here that, it certainly matters here how the NYPD

14  conducted its intelligence gathering.

15           THE COURT:  Mr. Scutero.

16           MR. SCUTERO:  (no response)

17           THE COURT:  Mr. Scutero, anything you want to

18  add to this?

19           MR. SCUTERO:  No, Judge.

20           THE COURT:  I mean what is the City's plan in

21  terms of testimony or defense it's going to offer saying

22  we did X because intelligence told us that, you know, Y

23  was going to happen?

24           MR. SCUTERO:  Well, that is, Judge, that is,

25  you know, information that the City would rely upon.

```
 1                          PROCEEDINGS                  31

 2              THE COURT:  Well, I mean is it information in

 3   any of the documents we're talking about?

 4              MR. SCUTERO:  Well, that's what I was – that's

 5   what I was arguing before that there doesn't appear to

 6   be information in this document that relates to the

 7   protests.  I'd have to --

 8              THE COURT:  Yeah, I agree as to this document,

 9   but I guess maybe I'm reopening my thinking as to other

10   documents.  I agree, this document – I'm not even sure

11   why it was considered relevant except that it summarizes

12   I guess how the intelligence bureau works, maybe that's

13   viewed as having some relevance.  I don't think it's

14   really very, I don't think, you know, what units they

15   operate under and how those units operate are sufficient

16   relevance to overcome the privilege.  But I'm just now

17   going back, you know, to some of the other documents

18   that had some specific intelligence.  I mean obviously

19   the City is not going to be able to use those documents

20   in any way.  I assume that's understood at a minimum.

21              MR. SCUTERO:  Yeah, that's – yes.  And the City

22   was not planning on using those documents, Judge, since

23   they don't --

24              THE COURT:  So what are they going to use --

25              MR. SCUTERO:  -- no relevance --
```

1

2          THE COURT:  What are they going to use to talk

3   about the threats?  Are they just going to rely on

4   testimony and what is the testimony based on?

5          MR. SCUTERO:  Well, Judge, I don't, I can't say

6   for sure offhand.  The City will be relying on

7   testimony, and that will be subject of, you know,

8   depositions that plaintiffs are currently taking.  But I

9   can't say for sure which documents the, that – without

10  seeing them in front of me, which documents the City

11  will be relying upon with respect to intelligence.  I

12  can --

13         THE COURT:  But it's not these documents

14  obviously.

15         MR. SCUTERO:  Right, that's what I was going to

16  say, Judge, it's not these documents.

17         THE COURT:  But what intelligence documents,

18  are there intelligence documents that don't reveal

19  techniques and (indiscernible)?

20         MR. SCUTERO:  Well, I believe there would be.

21  I can't say for sure, Judge, but, generally speaking, I

22  would say that, yes, there are documents, there are

23  intelligence documents that could be produced or have

24  already been produced --

25         THE COURT:  Well, I hope they have been

```
 1                         PROCEEDINGS                    33

 2   produced --

 3             (interposing)

 4         MR. SCUTERO:  Yes, sorry, Judge, I misspoke.

 5   That have been produced that do not reveal techniques

 6   and procedures.  It's hard to say --

 7         MR. LAMBRIGHT:  Your Honor --

 8         THE COURT:  It's hard to say, you know, with

 9   the documents in front of me, without knowing all the

10   documents in the universe of documents that have been

11   produced, whether or not, you know, there are documents

12   that the City will be relying upon with respect to

13   intelligence.  I can't say that for sure because I don't

14   have, I don't know the whole universe of documents.

15   There's been so many that have been produced already.

16         THE COURT:  Mr. Lambright, you were saying

17   something?

18         MR. LAMBRIGHT:  Yes, Your Honor, you know, I

19   just want to flag that we do have a preclusion argument

20   and that, you know, even if the City's not going to rely

21   upon these specific documents to make its intelligence

22   argument, we need to be able to review, you know, it's

23   unfair for us not to have reviewed these documents and

24   to challenge, asserting that there were threats against

25   officer safety and other intelligence related matters
```

1                           PROCEEDINGS                    34

2    and not to be able to use these in our preparation for

3    depositions and those (indiscernible) challenge

4    assertions that are kind of made about threats to

5    officers' safety and terrorism threats.  You know,

6    obviously there are going to be a lot of assertions

7    about whether there was actual threats or not, and to be

8    able to review these documents is kind of essential for

9    us to be able to say that, you know, one possible threat

10   was not really credible and to really kind of go and

11   say, and make our claim and case that the NYPD was

12   relying upon faulty intelligence to over-police these

13   protests and to escalate tension resulting in harms to

14   our clients.

15           MR. SCUTERO:  Well, Judge, what I would say is

16   that, again, we would not be relying on the documents

17   that are subject to privilege in this case and that

18   plaintiffs' argument would essentially eviscerate the

19   privilege if they're saying that because they're making

20   an argument based on intelligence that then they can,

21   they should be permitted to view documents relating to

22   intelligence, that would just completely eviscerate the

23   privilege.  We would not have the ability to assert

24   privilege at that point.  And documents that ordinarily

25   would be protected would be subject to being disclosed.

```
 1                        PROCEEDINGS                    35

 2          So I think it's a broad view of this sword and

 3  shield argument that plaintiffs appear to be taking when

 4  that sword and shield's argument is more narrowly

 5  tailored than I think plaintiffs seem to be suggesting.

 6          THE COURT:  Well, In re City of New York is a

 7  little equivocal on this.  It seemed to be satisfied

 8  with a notion that the (indiscernible) used as a sword,

 9  though it did find in the alternative that even if it

10  was selectively disclosing reports that they found that

11  there was other information available through the other

12  reports, which they called the end user reports.

13          You know, looking at these documents, you know,

14  the undercover is much more specific than some of the

15  other ones.  The other ones are really just not going to

16  be useful to the plaintiffs.  So it's easy for me to

17  find that they certainly couldn't form the basis for

18  preclusion.

19          I think the way we're going to have to leave

20  this is if in questioning anyone about the basis for

21  their, you know, policing activities, if they're relying

22  on some intelligence reports and it's determined that,

23  in fact, the plaintiffs weren't provided with whatever

24  that information was, I think that would be the time to

25  come immediately back to me and see if at that point
```

```
 1                        PROCEEDINGS                36
 2   there's a basis for getting (indiscernible) preclusion
 3   or something else.  So it's not the most efficient way
 4   to do it, but I don't really see any other way to do it.
 5            So I'm going to adhere to my rulings on the law
 6   enforcement privilege, and if something comes up in the
 7   future depositions that suggests there's an unfairness,
 8   I'm ready to hear it.
 9            All right, let's move on to deliberative
10   process.  And let me, I believe the first - let me just
11   clear out what I have.  Okay, we're going to go back to
12   the NYPD documents, and I think the first one ends
13   34920.  Mr. Scutero, do you see the document I'm talking
14   about?
15            MR. SCUTERO:  Yes, Judge, I'm pulling it up
16   now.
17            THE COURT:  Just give me a second to --
18            MR. SCUTERO:  Yes, Judge, I have it.
19            THE COURT:  Okay, so we're - so let me hear
20   what you have to say about this.
21            MR. SCUTERO:  Sure, Judge.  It's - as you know,
22   for a document to be privileged under the deliberative
23   process, it has to be pre-decisional and deliberative.
24   In this email exchange, you can clearly see that members
25   of the police department are suggesting and debating
```

1                          PROCEEDINGS                    37

2   whether or not a certain tactic should be utilized in

3   terms of crowd control during the June 2020 protests.

4            THE COURT:  Well, let me hear from Mr.

5   Lambright, and then I'll ask questions.  Mr. Lambright.

6            MR. LAMBRIGHT:  Yes.  So, again, this document,

7   as we said in our letter, appears to be a document

8   relating to operational, to operations and not kind of

9   the formation of high level policy.  And, therefore,

10  it's not deliberative in the meaning of the deliberative

11  process privilege.  And, again, we would also make the

12  argument that it would be overcome by the needs of the

13  case.

14           THE COURT:  So, Mr. Scutero, this is people

15  talking about practically in real time whether, as you

16  put it, to use a certain tactic or not.  I'm trying to

17  understand why this is policymaking.  Policy in my mind

18  involves, you know, a judgment about kind of an

19  overarching in some sense policy.  I'm going to use the

20  Second Circuit term policy oriented judgment.  And we

21  know it doesn't apply to routine operating decisions.

22  This was certainly a non-routine situation that happened

23  in 2020, but it's routine in the sense that the idea of

24  what tactics you're going to use in a given situation,

25  that's a judgment that is routinely made by the police

```
 1                        PROCEEDINGS                    38
 2   department.
 3           So tell me why this is policy and not, you
 4   know, just trying to figure out how to police
 5   demonstrations?
 6           MR. SCUTERO:  Well, Judge, we see the Court's
 7   point that this appears to be relating to a operational
 8   tactic for policing demonstrations, but it, you know, it
 9   concerns using a certain technique that was not used
10   during the protests and was not used further in the
11   protests, so it essentially became a policy of the NYPD
12   to not use that certain tactic when policing the
13   protests in 2020.
14           THE COURT:  Well, now you're saying whether
15   it's policy or not depends upon whether it's actually
16   employed.  Well, that may be true in the sense that –
17   well, actually, no, I'm not sure why it matters whether
18   it's actually used or not used.  I think whether
19   something is, quote, "policy," a "policy oriented
20   judgment," unquote, to quote the Second Circuit, doesn't
21   depend upon whether it's used or not.
22           All right, so on this one I don't believe the
23   deliberative process privilege has been met, and I think
24   this is operating decision, it's certainly being
25   discussed at the very highest levels, but just because
```

```
 1                      PROCEEDINGS              39
 2   something is brought to the highest level to my mind
 3   does not make it a policy-oriented judgment.  So I'm
 4   going to order the production of this document which is
 5   ending 34920.
 6           Okay, let's go to our next one.  The next one I
 7   believe ended it's DMNL00251_000242609.  And just give
 8   me a moment to remind myself of what this is.  Oh, wait,
 9   no, no.  I had the number wrong.  It's not 42609.  Is
10   that what I just said?
11           MR. SCUTERO:  Yes, Judge.
12           THE COURT:  I mean 37 - it's the same opening
13   DMN line but it's, the numbers end 00234771, that's what
14   I mean.  Okay, let me call that up.
15           MR. SCUTERO:  I'm pulling it up now, Judge.
16           (pause in proceeding)
17           MR. SCUTERO:  Judge, this document, if I have
18   the right document, it's 234771.  Is that correct?
19           THE COURT:  Yes.
20           MR. SCUTERO:  Okay.  This document appears that
21   the law enforcement privilege would protect this
22   document.
23           THE COURT:  That's not what you marked.  Unless
24   I have it wrong, exhibit A at 2.  Can someone check it?
25           MR. LAMBRIGHT:  Yes, my, Your Honor, I only see
```

1                          PROCEEDINGS              40

2   deliberative process privilege marked for this document.

3           THE COURT:  You're going to have to justify it

4   or not on that basis.

5           MR. SCUTERO:  Yes, certainly, Judge.  So this

6   is a document that was submitted to a chief of the NYPD

7   asking for approval of certain rules with regards to

8   arrests and how they will be assigned and what type of

9   approaches concerning violations the NYPD should take.

10  And it's providing instructions for officers in the

11  field, proposed instructions for officers in the field

12  on how they should police certain areas during the

13  protests and how they should treat the curfew during the

14  protests.

15          THE COURT:  Okay, I mean I don't think I need

16  to hear from the plaintiffs.  This is just not a policy-

17  oriented judgment going on here.  This is decision about

18  how to operate, what's going to be done very

19  specifically with respect to the protests.  It's a

20  operating, what I view as a routine operating decision

21  on that end of the spectrum, not a policy judgment.  We

22  don't know from this whether it's, you know, enacted or

23  not, but that doesn't matter, it's just not

24  deliberative.  So I'm ordering production of that one.

25  That's 34771.

```
1                      PROCEEDINGS                41
2              Okay, let's go now to what I think – okay, I
3   think the next deliberative process is from the OTM
4   documents.  And it's 16070.  Let me just look at this
5   again to refresh my recollection.
6              (pause in proceeding)
7              THE COURT:  Okay, so, Mr. Scutero, what do you
8   have to say about this one?
9              MR. SCUTERO:  So, Judge, this document contains
10  discussion, questions and answers and discussion related
11  to a number of policies that were put in place with
12  respect to the protests, including how the City should
13  address certain issues like officer discipline and other
14  issues with respect to the protests.
15             THE COURT:  All right, I mean, once again, I
16  don't see what the policy process is.  I see this as
17  operating, how they're to operate during the course of
18  the protests.  I see questions about things going on
19  with the officers at the protests.  I just don't see a
20  policy-oriented judgment being made here.  And just to
21  put it in context of the deliberative process privilege,
22  I can't see that in the future if this sort of
23  information were released, that this would inhibit
24  anyone from doing exactly what, asking the questions
25  that people are asking here about what's going on with
```

```
 1                        PROCEEDINGS              42

 2   the policing of the protests and the treatments of the

 3   protests.  So I'm not finding that there's deliberative

 4   process privilege applicable here.  So 16070 is ordered

 5   released.

 6           Next is 42258.  Tell me what you want to say

 7   about this, Mr. Scutero.

 8           (pause in proceeding)

 9           MR. SCUTERO:  I'm just pulling it up now.

10           (pause in proceeding)

11           MR. SCUTERO:  Oh, Judge, this is a document

12   that is pre-decisional in that you have members of the

13   Mayor's office discussing what should be, what

14   information should be disseminated to the public with

15   respect to certain policies that the City has employed

16   in policing the protests.  It's deliberative because it

17   relates to these specific policies and, therefore,

18   should be withheld and protected by the deliberative

19   process privilege.

20           THE COURT:  Okay, I don't need to hear from the

21   plaintiff again.  This is geared towards, you know, what

22   public statement's going to be made about what is going

23   on sort of in real time with respect to actions of the

24   police during the protest.  To me this is not a policy-

25   oriented judgment that people are deliberating about.
```

1                         PROCEEDINGS                    43

2    It's, you know, a routine, it's a matter outside the

3    scope of policymaking.  So I'm going to order 42258

4    produced.

5           Next is ends in, it's DMNL00303_000043232.

6    Anything you want to say about this?

7           MR. SCUTERO:  I'm just pulling it up right now,

8    Judge.  Again, considering the Court's rulings on the

9    last four documents, I would say that this probably

10   falls into the same category.

11          THE COURT:  Okay, you saw the writing on the

12   wall.

13          MR. SCUTERO:  Yes, Judge.

14          THE COURT:  Okay, once again, not a policy-

15   oriented judgment.  It's an operational decision about

16   what to do during the course of the protests.  So that's

17   ordered produced.  That's 43232.

18          Okay, next is the document ending 98522.  Do

19   you know what I'm talking about?

20          MR. SCUTERO:  I'm pulling it up now, Judge.

21   Yes, I see it, Judge.  This appears to be meeting notes.

22          THE COURT:  Okay, I don't even know whose

23   meeting it is, but go ahead.

24          MR. SCUTERO:  No, Judge, I understand, you

25   know, the Court will likely rule has it has in the last

1                              PROCEEDINGS                    44

2    five documents.  I will note though there are two points

3    in the notes that I think relating to discipline that

4    should be subject to redaction based on DPP because they

5    appear to propose certain guidelines for --

6              THE COURT:  After the word discipline?

7              MR. SCUTERO:  Yes, Judge.

8              THE COURT:  And the second one with discipline?

9              MR. SCUTERO:  Yes, Judge.

10             THE COURT:  So you're saying even if the others

11   are deliberative process, you think those two are?

12             MR. SCUTERO:  I think those two are, yes,

13   Judge.

14             THE COURT:  Let me look at them again.  Before

15   you start, let me just look at them more specifically.

16             (pause in proceeding)

17             THE COURT:  All right, go ahead.

18             MR. SCUTERO:  Judge, I would say with regards

19   to the first one, you have a suggestion on, an advice on

20   how discipline and misconduct should be treated by the

21   police department.  The defendants would argue that

22   because of that this information is certainly pre-

23   decisional because a decision has not been since it's a

24   recommendation.  And that is deliberative because it's

25   in the formulation of formulating policy with respect to

1                          PROCEEDINGS                45

2   disciplining of officers.  And so for those reasons it

3   should be redacted under DPP.

4           With respect to the second one, Judge, I'm just

5   looking at that now and don't believe that one would be

6   subject to redaction.

7           THE COURT:  Okay, so on the two that you just

8   said should be, why don't you address need.

9           MR. SCUTERO:  Is that for defendants or

10  plaintiffs, Judge?

11          THE COURT:  No, for you.

12          MR. SCUTERO:  For me.

13          THE COURT:  Tell me why there isn't a need.  I

14  mean if you want to hear their need argument, I'm happy

15  to - it's just a little hard for them to do it given

16  they can't see what it is.

17          MR. SCUTERO:  Right.  Well, Judge --

18          THE COURT:  You might as well go first.

19          MR. SCUTERO:  Sure.  Sure, Judge.  I don't

20  believe that there's a need for this information because

21  certainly the plaintiffs can obtain this information

22  from other sources, either through --

23          THE COURT:  Wait, wait, wait.  They contain

24  information about what was being discussed in terms of a

25  proposal?

```
 1                      PROCEEDINGS                46
 2           MR. SCUTERO:  Well, they could obtain not
 3   necessarily the proposal but what the actual policy with
 4   respect to discipline was at the time.  That information
 5   that they could obtain and that's the information that's
 6   relevant to their case.  Not information of what was
 7   being debated by the NYPD in terms of how they should
 8   discipline officers during the protests.
 9           THE COURT:  All right, Mr. Lambright.
10           MR. LAMBRIGHT:  Yeah, so I have two points in
11   response to that.  First, again, it's hard to kind of
12   know about seeing what we're discussing, but, first, I
13   would just say that general kind of thoughts and ideas
14   or concerns which defendants say about kind of generally
15   how they discipline officers does not meet the kind of
16   standards of the deliberative process privilege in that
17   there has to be kind of a specific policy that
18   (indiscernible) idea or discussion kind of aligned with.
19   This kind of amorphous kind of generally talking about,
20   you know, how to discipline officers doesn't just meet
21   that standard.
22           And then my second point as to need is that,
23   you know, obviously we have Monell theory against the
24   City and one of the possible theories as to how one
25   develops the Monell claim is failure to discipline.  And
```

1                          PROCEEDINGS                    47

2   if this goes to, you know, if this provides relevant

3   information about failure to discipline, excuse me, then

4   the need is overcome.  Additionally, there are questions

5   about what decisionmaker, whether a higher level

6   decisionmaker is aware of and whether a higher level

7   decisionmaker ratifies, and all of those issues are kind

8   of relevant when kind of addressing whether the

9   privilege is overcome.  It's not just narrowly an issue

10  of kind of looking at disciplinary policy as it's

11  written.

12            THE COURT:  All right.  I'm going to find this

13  is not protected by deliberative process privilege,

14  thinking specifically of the Grand Central Partnership

15  case, 166 F.3d at 682.  Privilege does not protect a

16  document which is merely peripheral to actual policy

17  formation.  And in order to apply the privilege, the

18  document has to form an essential link in a specified,

19  consultative process.  And this is just too amorphous,

20  you know, it's completely unknown who did this as part

21  of what process.  That specificity is just not gleanable

22  from the document and certainly hasn't been provided in

23  any other way.  So I'm finding this document is not

24  protected by deliberative process privilege.

25            Mr. Scutero, I note this is one of the

1                          PROCEEDINGS                48

2  documents that said attorney-client.  So are you giving

3  up on that or do you want to tell me what the issue is?

4          MR. SCUTERO:  Judge, I don't see --

5          THE COURT:  I suspect it's the second line

6  there.

7          MR. SCUTERO:  Yes --

8          (interposing)

9          THE COURT:  But that's not enough.

10          MR. SCUTERO:  No, I agree, Judge.  I don't see

11  how there would be, how this would be privilege under

12  attorney-client privilege.

13          THE COURT:  All right, so 198522 is ordered

14  produced.  I think we have two more in the sample.

15  13061, give me a second just to remind myself what this

16  is.

17          (pause in proceeding)

18          THE COURT:  I remember, and I think you'll

19  probably guess, Mr. Scutero, that it's of the same ilk

20  as the other decisions.  But if you think there's

21  something different about it, tell me.

22          MR. SCUTERO:  Yeah, I think that's right,

23  Judge.  I just want to look at the entire document if

24  you just give me a moment.

25          THE COURT:  Take your time.

```
 1                      PROCEEDINGS               49

 2          MR. SCUTERO:  Thank you.

 3          (pause in proceeding)

 4          MR. SCUTERO:  Judge, my concern with this

 5  document, not necessarily the exchanges at the top of

 6  the document but further down, the email exchange that

 7  took place on June 1 at 5:38 p.m.

 8          THE COURT:  Hold on.  Let me look at that part.

 9          (pause in proceeding)

10          THE COURT:  Go ahead.

11          MR. SCUTERO:  Judge, obviously, here you have

12  members of the Mayor's office discussing the curfew, and

13  you have advisors expressing, you know, their opinions

14  about certain aspects of the curfew.  And so those would

15  certainly be pre-decisional and deliberative as the

16  curfew was a, you know, a specific policy that was

17  imposed by the City.  With that in mind, that these,

18  this conversation would fall under deliberative process

19  privilege, and I don't see how plaintiffs have a need

20  for this specific conversation.  Again, the curfew is

21  the policy that is put in place, and the deliberations

22  that took place aren't relevant to the plaintiffs'

23  Monell claims.  It's actually the curfew in and of

24  itself that is relevant to the plaintiffs' claims.

25          And so how we get to the policy of the curfew
```

```
 1                          PROCEEDINGS              50
 2   doesn't provide much with respect to the plaintiffs
 3   having to prove those claims.  We know the curfew is in
 4   place.  Their claims relate to how that curfew was
 5   imposed and whether or not officers enforced that curfew
 6   properly.  So the decision leading up to the curfew or
 7   the deliberations I should say and the discussions
 8   leading up to the curfew the plaintiffs do not have a
 9   significant or compelling need for.  So I would - the
10   defendants argue that this particular email conversation
11   starting at, on June 1 at 5:38 p.m. should be redacted
12   from this, from the document.
13            THE COURT:  There's three people mentioned.
14   Who are they?  Do you know?
15            MR. SCUTERO:  Within the body or the people who
16   are conversing in the to and from lines?
17            THE COURT:  No, no, in the body.
18            MR. SCUTERO:  In the body.  I do not know,
19   Judge.
20            THE COURT:  Mr. Lambright.
21            MR. LAMBRIGHT:  I would say that opinions about
22   - again, it's hard to comment on this without seeing
23   what's being referenced - but opinions about an ongoing
24   curfew would probably be too attenuated, the to/from
25   policy oriented judgment to constitute, to rightly
```

```
 1                         PROCEEDINGS                    51
 2  invoke the deliberative process  privilege.
 3  Additionally, going to the needs of the case, it is not
 4  merely – we're not seeking anything kind of generally
 5  about the formulation of the curfew order.  What we are
 6  seeking is information about how the curfew was
 7  interpreted and enforced after it was put in place, and
 8  that directly goes to our claims.  We have plenty of –
 9  we know the policy on the books.  However, we have
10  plenty of documentation showing that the policy was not,
11  that the policy was not being enforced against everyone,
12  and it was only being enforced against some people, and
13  we need to kind of understand why there were kind of
14  disparities in enforcement.
15              (pause in proceeding)
16              THE COURT:  All right, look, my problem right
17  now is I don't know who these people are.  I don't know
18  how it relates to a chain of, you know, decision-making.
19  I mean that piece of it is just missing here.  Look, I'm
20  going to order this produced.  I'll give you a chance to
21  redact this part, if you want to make a separate
22  application immediately to explain who these people are
23  and why it's part of some, you know, definable process
24  for formulating policy.
25              And let me give an alternative here.  If you
```

1                              PROCEEDINGS              52

2   want to protect these people's names, you could redacted

3   them, and you have the names be for attorney's eyes only

4   so at least they know who they're dealing with.  So

5   either produce the whole thing or produce it with an

6   attorney's eyes only redaction of the names, that's one

7   option.  The other option is to produce everything but

8   the 5:38 email and make an immediate application to me

9   with an affidavit from someone who's explaining who

10  these people are and what the process was.

11            MR. SCUTERO:  Understood, Judge, thank you.

12            THE COURT:  Do you understand, Mr. Scutero?

13  Okay.

14            MR. SCUTERO:  Yes, understood.

15            THE COURT:  So that was 13061.  And maybe I

16  should just make clear, in terms of need, I think, I

17  can't even think about that without knowing who these

18  people are.  There could be zero need for this depending

19  upon who they are and what the process was.  So I can't

20  think about that, you know, with the information I have

21  or rather I can't rule on it.

22            Okay, the last one in our sample ends 13266.

23  Is that enough for everyone or should I give the full

24  number?

25            MR. SCUTERO:  No, I have it, Judge.

```
 1                         PROCEEDINGS               53

 2            THE COURT:  Mr. Lambright, do you know what

 3   we're talking about?

 4            MR. LAMBRIGHT:  Yes, Your Honor.

 5            THE COURT:  Okay, give me a second just to look

 6   at it.

 7            (pause in proceeding)

 8            THE COURT:  All right, this seems of a piece

 9   with the ones earlier that I ordered to produce, people

10   talking on the spot about what to do and what's going

11   on.  So is there anything else you want to add, Mr.

12   Scutero?

13            MR. SCUTERO:  No, Judge.

14            THE COURT:  Okay, so I'm going to make a ruling

15   that those are produced.

16            Okay, so, you know, here's where we ended up.

17   We ended up with all the law enforcement privilege being

18   upheld and virtually none of the deliberative process

19   being upheld.  So what that says to me is the City

20   should go back and presumably produce all their

21   deliberative process withheld material unless they think

22   they can make a case that there's something very

23   different about it and do that very quickly.  Mr.

24   Lambright, do you have any ideas about how to do this?

25            MR. LAMBRIGHT:  I mean I would just suggest
```

```
 1                        PROCEEDINGS                    54
 2   that they produce the documents, you know, as quickly as
 3   possible.
 4           THE COURT:  Yeah, I mean theoretically I
 5   suppose I could just, you know, go over the remaining
 6   hundred or two hundred or whatever it is documents.  I
 7   don't particularly relish doing that.  So I'd like the
 8   City to make some effort to spare me that and do it
 9   quickly, and then if they say, no, we think these are
10   all different, you're going to have to go through them
11   all again, then that's what I'll do, I'll go through
12   them all.
13           MR. SCUTERO:  Judge, I'd just ask if the City
14   could have some time to cull through the documents and
15   look to make sure that these documents fall underneath
16   the reasons and, the reasons why the Court produced or
17   ordered the production of the deliberative process
18   documents in the sample.  So --
19           THE COURT:  Okay, so, Mr. Scutero, you were
20   really quick I thought in looking at the ones we looked
21   at today.  I know the conference took a long time, but
22   that was mostly me talking and thinking.  You seemed to
23   go through them in a couple of minutes.  So with that in
24   mind, how much time are you, thought you needed to do
25   it?
```

```
 1                       PROCEEDINGS                55
 2             MR. SCUTERO:  Well, there are considerably many
 3   more documents at issue, Judge, so I was hoping that we
 4   could get two weeks.
 5             THE COURT:  I think I need you – the problem is
 6   the depositions are now, you know, in full swing, I
 7   hope, and I just don't, I think two weeks is too much.
 8   I'll give you a week, Mr. Scutero.
 9             MR. SCUTERO:  Thank you, Judge.
10             THE COURT:  So let's say a week from today,
11   that's the 20th.  You know, it's a holiday, so you get a
12   break for a day, February 21.
13             MR. SCUTERO:  Right, thank you, Judge.
14             THE COURT:  So what I'm hoping to get from you,
15   well, my fantasy is you don't have to look at any
16   documents, Judge, we're just producing them all.
17   They're governed by your prior ruling.  And then the
18   next possibility is here's the list of documents we've
19   produced, don't worry about those, and here's the ones
20   we're still asserting the privilege, and then I'll deal
21   with those.
22             MR. SCUTERO:  Understood.
23             THE COURT:  Okay.  You know, for law
24   enforcement privilege, I feel like it's the, you know,
25   the most likely ones chosen by the plaintiffs didn't
```

1                              PROCEEDINGS                    56

2  make it and some of them are of, you know, a category.

3  I think there's multiple.  I'm not sure there's any

4  utility in my doing anything further, but I'm willing to

5  hear from you, Mr. Lambright.

6          MR. LAMBRIGHT:  I mean if we could also review

7  and, you know, I think given your, the ruling on the law

8  enforcement privilege, also have a time and, you know,

9  just given how you ruled, if we can identify some

10 documents that we think should be turned over, if we

11 could provide that list to you maybe around the same

12 time as the defendants provide the DP list.  I think

13 that – I would suggest that.

14         THE COURT:  Okay, that's fine, in a week.

15 Hopefully, you'll be conservative in your request.  But

16 I leave it to you to make that decision.  You'll give me

17 a list of Bates numbers.

18         MR. LAMBRIGHT:  Yes.  Yes, Your Honor.

19         MR. SCUTERO:  Judge, is there any way – Judge,

20 is there any way we could maybe limit that like you did

21 with the sample?  I think you limited the sample to ten

22 to twenty documents.  I think that would be a good way

23 going forward especially for Your Honor, given the

24 number of documents --

25         THE COURT:  Well, I'm very appreciative of your

```
 1                    PROCEEDINGS              57
 2  valuing my time.  I think it doesn't really affect you
 3  all that much.  Certainly, I'm hoping it's not more than
 4  ten.  I don't think I want to put a numerical limitation
 5  on it.  I mean I didn't limit you as to how many
 6  deliberative process documents you could require to be
 7  presented to me.  So I think I just have to rely on
 8  people's good faith at this point.  If it's too much,
 9  then I can always say, you know what, it's too much,
10  let's try another sample and see how that goes.
11            MR. SCUTERO:  Understood, thank you, Judge.
12            MR. LAMBRIGHT:  Thank you.
13            THE COURT:  Okay.  I think we're done on this,
14  and I'm ready to turn to the other one, but only just
15  check with Mr. Lambright, anything further on this one?
16            MR. LAMBRIGHT:  No, Your Honor.
17            THE COURT:  Mr. Scutero, anything further?
18            MR. SCUTERO:  No, Judge.
19            THE COURT:  Okay, I'm sorry, who's going to go
20  for the City on 680?
21            MR. SCUTERO:  On the after-action review,
22  Judge, that would be me.
23            THE COURT:  Okay, and for the plaintiffs?
24            MS. STOUGHTON:  Your Honor, it's Corey
25  Stoughton.
```

```
 1                        PROCEEDINGS              58
 2            THE COURT:  Okay.  We're going to take a two-
 3  minute break, so just stay where you are, maybe on mute,
 4  and I'll be back with you in a minute.  Okay?
 5            (pause in proceeding)
 6            THE COURT:  Ms. Stoughton, is that you?
 7            MS. STOUGHTON:  I'm sorry, Your Honor, this is
 8  Ms. Stoughton.
 9            THE COURT:  Okay, no problem.  Mr. Scutero,
10  you're ready?
11            MR. SCUTERO:  Yes, Judge.
12            THE COURT:  Okay.  Hopefully, this won't be as
13  lengthy as the other, and I don't expect to be making
14  oral ruling.  This is really just have some questions.
15            Let me organize my notes.  I guess one question
16  I have for defendants to start with, which is I thought
17  there was some implication that the plaintiffs have
18  already given factual material underlying the draft
19  after-action report and, you know, the (indiscernible)
20  documents.  I mean I'm trying to figure out if there's
21  any way for me to determine that from anything,
22  certainly nothing I have, and you know, I'm really
23  jumping to segregability here.
24            But, you know, there's a couple charts here,
25  page 10.  There's a timeline that is, you know, I have
```

1                                 PROCEEDINGS                      59

2  to look a little more carefully.  I think it's largely

3  factual.  I don't think it shows a lot of deliberation.

4  I mean and there's page 15, 16, you know, those charts

5  scattered throughout here.  Assuming deliberative

6  process were found to apply, why wouldn't at least those

7  charts and those numerical listings be segregable?

8           MR. SCUTERO:  Well, Judge, purely --

9           THE COURT:  And I know the legal argument, oh,

10 well, it shows you what they're thinking about, but some

11 of it is just so obvious, you know, I don't think I'm

12 giving anything away if I talk about number of arrests,

13 things like that.  That, you know, you can't seriously

14 say that those charts show something about a policy

15 deliberation.  Sorry if I cut you off if that was going

16 to be your answer and now you have to come up with

17 something else.

18           MR. SCUTERO:  No, Judge, that was going to be

19 my answer that, you know, factual information isn't

20 always segregable because it does show the decision-

21 making process of the agency.  But if the Court believes

22 that that information, that factual information in the

23 charts that you pointed out is segregable and does not

24 actually reveal the agency's process, then we would

25 defer to the Court's, obviously defer to the Court's

PROCEEDINGS                    60

1

2    decision on that.

3             THE COURT:  All right, now here's a completely

4    different question, and this goes more to need again.

5    I'm skipping over actual privilege for the moment.  What

6    is it – in your briefing you say, oh, well, they're

7    going to get testimony; they don't need this.  Why kind

8    of testimony do you think they're going to get that

9    replaces this?  And if I've been accurately

10   characterizing what you said, tell me.  I'll try to find

11   it.

12            MR. SCUTERO:  No, Judge, you did accurately

13   characterize it.  Yes, we did mention that as an

14   alternative plaintiffs would be able to receive

15   testimony from individuals who were part of the after-

16   action review.  Certainly, I believe Conforti is on the

17   deposition list.  I'm not exactly certain --

18            THE COURT:  But what are they --

19            (interposing)

20            MR. SCUTERO:  -- plaintiff might be able to

21   correct me.

22            THE COURT:  But what are they going to get

23   testimony on?  Are they going to get testimony on the

24   substance of the report or on the process of the report

25   of the review coming into existence and it not being an

```
 1                        PROCEEDINGS                    61
 2   issue.
 3            MR. SCUTERO:  Well, that's a good question,
 4   Judge.  Obviously, those would be protected, those two
 5   issues would be protected under deliberative process
 6   privilege as well.
 7            THE COURT:  Well, hold on, hold on, hold on.
 8   The first one much more obviously than the second one.
 9   I'm not sure why the second one is.  The process – the
10   process of creating the after-action review is not by
11   itself a policy.
12            MR. SCUTERO:  But is --
13            THE COURT:  That – go ahead.
14            MR. SCUTERO:  Sorry, Judge.  My understanding
15   of the case law on deliberative process is that the
16   actual process of making the decision is protected under
17   deliberative process and that's one of the reasons why
18   fact --
19            (interposing)
20            THE COURT:  Hold on, hold on, hold on.  I don't
21   know what you mean by the word process.  And maybe we're
22   getting too meta here, if that's the right word.  But
23   when five people in the policy department at the agency
24   get around and say, oh, what's going to be our policy
25   on, and let's pick something that's not in this report,
```

1
2    you know, the number of officers to put in a police car
3    going out to a protest, should it be two or should it be
4    three?  Their discussions about whether it should be two
5    or it should be three and what they said about it and
6    why one's better than the other, that's definitely part
7    of the policy process and policy-making process and
8    could easily be part of the deliberative process.

9         The fact that people met on something that's
10   now known, which was there's an actual after-action, the
11   fact that there was – I mean is it all completely out
12   anyway?  It's in the affidavit.  You gave an affidavit
13   on the topic which is, you know, that I was asked to
14   prepare a report, I did this, I did that, and then I
15   didn't do anything about it.  The notion you could say
16   that I don't know what you meant by process, but that's
17   what I meant by process, and that's obviously something
18   you're going to have to give testimony on.  Right?

19        MR. SCUTERO:  I suppose that's correct, Judge.
20        THE COURT:  Yeah.  So, again, we need to
21   distinguish between the actual judgments that were being
22   bandied back and forth, the substance, whether it's two
23   or three police officers in the patrol car, and the, you
24   know, what I call a process of putting this report
25   together.

```
 1                        PROCEEDINGS              63

 2              So my question was really about the first thing

 3    because I thought it was obvious that you were going to

 4    give testimony about this structural process.  Are you

 5    going to give testimony about the recommendations and

 6    what was considered and what was rejected and so forth?

 7              MR. SCUTERO:  The actual substance of what was

 8    considered and what was recommended?

 9              THE COURT:  Yes.

10              MR. SCUTERO:  No, that would be protected under

11    deliberative process, Judge.

12              THE COURT:  Okay, so when you said in your

13    brief that they were going to get testimony, what is it

14    you were referring to?

15              MR. SCUTERO:  Well, it certainly would not be

16    the actual substance of the report or those documents

17    and conversations and discussions that went into the

18    report.  It would involve, as you say, the process of

19    how the report was done, how it came about, who actually

20    met about the report, things that have already been

21    provided on the declarations that we submitted to the

22    Court, that's all information that could possibly be

23    questioned during deposition.

24              THE COURT:  Okay, so you can imagine it's cold

25    comfort to them for you to respond to their argument
```

```
 1                    PROCEEDINGS              64
 2  that they have a substantial need for this by saying,
 3  oh, don't, you know, for the substance of this by
 4  saying, oh, don't worry, you're going to get testimony,
 5  because you're not talking about testimony about the
 6  substance.  Do you see the problem?
 7            MR. SCUTERO:  Yes, I do, Judge.
 8            THE COURT:  Okay.  I want to clear that up.
 9  And I think the rest of my questions are for the
10  plaintiffs.  So I'm not sure, I'm happy to hear from you
11  about the substance of the deliberative process, but I
12  thought your stronger argument was about need.  But if
13  there's something you want to say about substance since
14  we're all here, Ms. Stoughton, I'm happy to hear from
15  you.
16            MS. STOUGHTON:  No --
17            THE COURT:  But if you don't, if you don't, I
18  want to have some questions on need.
19            MS. STOUGHTON:  I'm happy to focus on the need
20  issue.
21            THE COURT:  Okay.  So here's the problem.
22  You're going to get information from Conforti, you've
23  already gotten it, or from some other person about how
24  this after-action process was put into effect, they were
25  asked to do it, they went through all this effort, and
```

PROCEEDINGS                    65

1    then the whole thing fizzled out and they didn't do a

2    report.  So you're going to have all the information you

3    need about what I call the process.  Tell me why the

4    substance, why you need the substance of this for your

5    case.

6            MS. STOUGHTON:  Your Honor, two things.  First,

7    and I'm sure Your Honor would have seen this but just to

8    connect up the dots, in the letter regarding depositions

9    that the defendants just filed which is at ECF 841, the

10   defendants have moved to preclude the deposition of

11   Chief Conforti on the grounds that they assert, and I'm

12   quoting from the letter, "an end run around assertion,"

13   their assertion of the privilege.  So I think that's

14   worth saying off the top.

15           THE COURT:  Okay --

16           MS. STOUGHTON:  Second --

17           THE COURT:  -- but I think we now – hold on,

18   just to be, the record's clear.  I think we've had a

19   concession, and if not we can come back to it, that the

20   process of doing this, whether it's Conforti or someone

21   else, is not going to be hidden.  So keep going.

22           MS. STOUGHTON:  Okay.  The second thing to say

23   is just all of our experience, we've been litigating a

24   long time, that witnesses' memories fade over time.  So

1                              PROCEEDINGS                    66

2   it may be that Chief Conforti remembers every detail of

3   how the process unfolded and then fizzled out, but it's

4   very likely that he does not.  And in those situations,

5   having documents to refresh the witness' recollection,

6   to focus the witness' memory, and to fill in the gaps

7   where that memory can't be refreshed is important.  And

8   that is the primary concern in withholding all of these

9   documents without having any documentary record to give

10  a sense of shape to this critical process.

11          THE COURT:  Okay, so I'm just trying to think

12  technically.  I think – I don't know if it's Conforti,

13  but I mean I assume this is a 30(b)(6) topic.  Maybe it

14  isn't.  But it would be their responsibility to prepare

15  someone as to the process.  So I'm not sure that the

16  answer is wholesale production of – and, by the way, the

17  report itself is not terribly indicative of the process.

18  The other, you know, perhaps – I didn't really focus as

19  much on the other documents.  Maybe the other documents

20  give a little bit of indication of that – actually, I

21  remember them now.  Some of them do.

22          But I mean is that – so you're – you're going

23  to be – it sounds like you're going to get what you need

24  if you find out that the, putting aside the substance of

25  the recommendations.  You'll pretend, you know, one of

1                              PROCEEDINGS                  67

2    the recommendations is three police officers versus two

3    police officers in a car.  Your issue is not getting the

4    fact that that was a recommendation that was out there,

5    but the fact that they did not actually conduct, did not

6    actually kind of implement this after-action review and

7    have it distributed out to the NYPD.

8              MS. STOUGHTON:  The only one of the issues.

9    Yeah, and that, of course, in and of itself is a final,

10   the decision not to circulate the report or adopt the

11   report is, of course, a final decision.  So that

12   deliberative, deliberations about that fact shouldn't be

13   privileged.  So to the extent that the documents, and

14   we'd have no way of knowing that from the privilege log,

15   but to the extent that the documents that we're debating

16   here reveal those discussions, those discussions

17   themselves are not privileged and they're very relevant

18   because, again, going back to the need argument, one of

19   the claims that plaintiffs have made drawing on

20   conclusions reached in the law department's, Corporation

21   Counsel's own review of the protests, is that the NYPD

22   systemically failed to follow through in these kinds of

23   reviews and learned lessons of past misconduct at

24   protests.

25              THE COURT:  Okay, but you're going to get that.

1                          PROCEEDINGS                    68

2    You're going to get that they conducted a review and

3    then failed to do anything with it or distribute it to

4    anyone.  You're going to get all the information on

5    that.  Why do you need the substance of three police

6    officers versus two police officers being one of the 25

7    recommendations?

8            MS. STOUGHTON:  I think – I'm not sure that

9    we're as confident as you are that we are going to get

10   that information, just again because we can't really

11   know until the deposition happens, we don't know what

12   the witnesses know or don't know about that decision, or

13   what they remember and don't remember about those

14   decisions.  So it's just always been our experience that

15   deposition testimony is never a full substitute for

16   getting a look into a documentary record of that

17   process.

18           The quality of this, of the decision-making

19   around the process, which is itself not deliberative

20   because it's not pre-decisional, is really relevant to

21   our claim.  So getting a sense of the quality and nature

22   of that decision-making is important.  And if we had all

23   the, complete confidence that deposition testimony would

24   completely duplicate what those documents reveal, that

25   would be one thing, but I just don't know, I don't see

1                            PROCEEDINGS                    69

2   any basis, we don't see any basis for being sure about

3   that conclusion.  And given how central this issue is to

4   our theory of the case and building plaintiffs' case for

5   liability, taking that chance, you know, is – that's why

6   the need exception exists to this qualified privilege.

7              THE COURT:  Okay, but to the extent that I'm

8   accepting that you have that need, the report, again,

9   this is my question, the report – maybe some of these

10  later emails are what we're talking about.  I was more

11  mentally focused on the report itself.  The report

12  itself, which, again, has whatever recommendations it

13  has, again, one of the ones it doesn't have that I'm

14  giving as a hypothetical, three police officers versus

15  two police officers, that doesn't go to that.  That

16  doesn't have anything to do with this.  That doesn't

17  have anything to do with the process.  Right?

18             MS. STOUGHTON:  I mean I'd have to take your

19  word for it because we haven't seen the document, but I

20  can understand how that would be the case.

21             THE COURT:  Okay.  Let me just look at my other

22  notes here.

23             (pause in proceeding)

24             THE COURT:  Let me just --

25             MS. STOUGHTON:  Your Honor, I didn't want to

```
 1                    PROCEEDINGS              70
 2   interrupt your thought process, but before we move on --
 3            THE COURT:  Go ahead.
 4            MS. STOUGHTON:  -- to a different thing.
 5            THE COURT:  Yep.
 6            MS. STOUGHTON:  You know, again, just to play
 7   this - I know you're not going to rule today, but if you
 8   are considering not ordering the production of the
 9   documents, you know, one question that I would have is
10   whether the documents - again, I'm very concerned about,
11   and this is based both on experience in other cases but
12   also on our one experience with a 30(b)(6) witness so
13   far.  And I'll just point out that Conforti I think is
14   not a 30(b)(6) witness, a fact witness, but serving the
15   same sort of function here, testifying as to this
16   process.  And based on that experience we are
17   anticipating that the witness will have various times
18   when the witness' recollection needs to be refreshed.
19   And I think the challenge arises in not having these
20   documents available to use for that purpose.  And if
21   there's an alternative way to ensure that the witnesses
22   were ordered to be prepared on this topic with
23   documents, that would I think perhaps not fully solve
24   the problem but go some way toward ensuring that the
25   depositions did serve as an adequate substitute.
```

```
1                        PROCEEDINGS              71

2              THE COURT:  I'm sorry, what was the proposal at

3    the end, that what happened?

4              MS. STOUGHTON:  Well, if the documents, if the,

5    well, look, here's the problem.  I'm not sure what I'm

6    proposing here but I'm trying to brainstorm a solution.

7    Our concern is that we have had the experience already

8    with a 30(b)(6) witness in this case where the witness

9    was, in fact, not prepared to testify to certain topics.

10   And so we are concerned that Chief Conforti, you know,

11   he's not even a 30(b)(6) witness, he's a fact witness,

12   and if his memory is not refreshed in some way as to

13   this process, it will not come into a deposition which

14   is really refreshed.  And if there were a way to ensure

15   that he was fully prepared with the documents that we

16   might not have access to at least to be prepared to

17   testify as to the details of the process of creating the

18   report and the decision not to proceed with it, you

19   know, that could help.  I mean, again, I don't know what

20   that would look like because I never, I've never been in

21   a case where the defendants (indiscernible) to prepare

22   their witness in a particular way.

23             I say this more to highlight the issue, a

24   particular concern that we have about not having those

25   documents available to refresh his recollection.
```

```
 1                          PROCEEDINGS                72

 2               THE COURT:  Okay, well, I think the City should

 3     understand, and I'm sure Mr. Scutero will agree with me,

 4     that whoever is prepared to testify about the after-

 5     action review process has to be fully prepared and may

 6     need to use deliberative process documents, protected

 7     documents in order to refresh their recollection or even

 8     to educate themselves perhaps to some degree.  So there

 9     has to be full preparation.  If it didn't happen, then

10     it would have to happen all over again if it was

11     understood that there were documents that they hadn't

12     bothered to look at.

13               So perhaps that takes us a little bit of the

14     way you were looking for us to go, Ms. Stoughton, is

15     that fair?

16               MS. STOUGHTON:  I think it would if it all

17     plays out as you just anticipated.  I'd say the concern

18     would be if it doesn't, then especially given all the

19     time pressure we're all under, that feels like, you

20     know, not the most efficient way to approach this, and

21     having the documents would be much more efficient.

22               THE COURT:  Right.  Yeah, the other documents

23     that have been withheld, not many of them actually go to

24     process, I'm now looking at them.  They're more like

25     little subsections of the report or a new draft of the
```

```
 1 |
 2 | report.  You know, none of it really is I would call,
 3 | almost none of it, I'm just going through them one by
 4 | one now.  They're all like draft sections of the report
 5 | or is like a PowerPoint version or a mini version of the
 6 | report, edits another report.  Yeah, there's really
 7 | almost nothing, except for the very last document.  Let
 8 | me see what you have on that --
 9 |          MS. STOUGHTON:  Is that document 32?
10 |          THE COURT:  No, it's - yes, document 32 from
11 | Andrews to Conforti.  That's the only one that fits into
12 | that process, I'm sorry, into that category.  So let me
13 | now, having heard from you, let me think about that and
14 | see if there's any piece of this.
15 |          (pause in proceeding)
16 |          THE COURT:  Yeah, some of it - there's a tiny
17 | bit of substance in this.  Yeah --
18 |          (interposing)
19 |          MS. STOUGHTON:  Your Honor --
20 |          THE COURT:  -- it has some substance.
21 |          MS. STOUGHTON:  -- can I just make a point
22 | linking up the draft report and the process which is
23 | this, that, you know, it's - as Your Honor knows because
24 | you've been discussing it today, the case law suggesting
25 | that there's a link between the facts an agency or
```

1                           PROCEEDINGS                    74

2    government official review and the process kind of is,

3    the flip side of that coin is that that information can

4    be relevant when there's a need argument, when the

5    process is at issue.  I think one of the things that we

6    think is critical about getting some window into the

7    draft report is that we don't have, again, putting the

8    deposition question aside, any other way to understand

9    what it is that the NYPD thought it was important to

10   look at after the 2020 protests.  What did they chose

11   and not chose to focus on and examine?  And I don't

12   think we have any real way of getting a full and robust

13   answer to that without knowing what kinds of, you know,

14   what are the subject, what are the headers of the draft

15   report, what are the subject matter areas that they were

16   looking into and not looking into and what's missing

17   from that.

18              And so I'd say that to say that in addition to

19   whatever portion of documents you're looking at, I do

20   think that bigger picture – and that doesn't mean every

21   document.  I mean I recognize what you're saying about

22   some of these are just fragments, and just being

23   perfectly frank, I think the list of documents that we

24   moved on were move of a group.  I'm sure it's probably

25   true that we could get the picture without every single

1                          PROCEEDINGS                   75

2  one of those fragments.  It's just drawing a distinction

3  between us moving on one of them and not the other is

4  like we couldn't draw a sensible line there.

5              But that's the point I wanted to make is that

6  that – just to take one step backwards, it is based on

7  the documents we reviewed and what Chief Conforti has

8  said in his affirmations in support of this, it seems

9  that there is no standard process for these after-action

10 reviews.  So the only way to understand what kind of

11 process is used is to look at this process, and, again,

12 that's not an interest in looking at what were the draft

13 recommendations, was it two officers in a car, three

14 officers in a car, but more the shape of it.  And we

15 don't really have a window into that unless we get some

16 window into these drafts.

17             THE COURT:  Okay, so now we've expanded from

18 where we were before, and that's fine, but I now need to

19 think about this new argument.  I mean new in a sense of

20 new just now, not that it wasn't observed in your

21 papers.  So the thought is that you need to see whether

22 they were making recommendations about the number of

23 people in police cars in order to judge whether this

24 was, making some judgment about the sort of efficacy,

25 potential efficacy of the after-action report.  Try

1                          PROCEEDINGS              76

2   connecting it up with me again.

3           MS. STOUGHTON:  I think that was well said.

4           THE COURT:  I'm just making that up.  Okay, go

5   ahead.

6           MS. STOUGHTON:  I thought you put it very well.

7   The question of what issues, challenges they looked at

8   and didn't look at speaks to the efficacy of their

9   after-action review process.  And, again, as many

10  reviewers, including Corporation Counsel, the Department

11  of Investigation, have noted, and as, you know, as our

12  experts will note, that kind of reflection of a review

13  process is, should be part of any competent police

14  department's approach to these issues.  And so getting a

15  sense of what that process is and how good or bad the

16  NYPD is at it is central to our Monell claim because of

17  the claim that this is a repeated pattern of failing to

18  draw those lessons and learn those lessons.

19          THE COURT:  Mr. Scutero.

20          MR. SCUTERO:  Well, Judge, it's defendants'

21  position that, you know, again, going back to what the

22  Court had already set out was that the after-action

23  review process is something that they can look into, but

24  the actual substance of that information does not

25  actually go to their Monell claims because, again, there

```
 1                        PROCEEDINGS              77
 2   is already decisions made and policies put in place that
 3   is relevant to their Monell claims, not actual policies
 4   that were not put in place.  And some of these
 5   recommendations that Conforti has in his report were
 6   adopted by the NYPD.
 7             They're able to, they should be able to get the
 8   information that they're seeking about the after-action
 9   review process through deposition and not through the
10   actual substance of this report.  This report, it's
11   about discrete issues --
12             THE COURT:  They're saying, I mean just to
13   focus you.  Forget the first half of our conversation
14   about this because it turns out they want more than just
15   the process.  Let me put it this way, they want more
16   than just the, you know, technical, you know, who
17   proposed to whom and what date and who killed it and so
18   forth.  They want to have the actual information in the
19   report or the minimum the topics that were looked at I
20   guess so that they can get up and say, you know what,
21   this after-action report that, I guess, maybe, Ms.
22   Stoughton, maybe I need you to correct me.  You can get
23   up and say, oh, I mean it seems to me like it's enough
24   to know that they did not disseminate this in this form
25   to the police department.  I assume that you'll find out
```

1

2  about changes in policy if there were any and they're

3  certainly not reflected in this report, that doesn't

4  give any information about what ultimately happened

5  later, assuming it's even relevant.

6         But I guess, Ms. Stoughton, let me just turn

7  back to you, I'm trying to see why it adds anything for

8  you to say, you know, they - I mean I'm just trying to

9  imagine what this looks like.  You have an expert get up

10  and testify they looked at putting in three police

11  officers but not two police officers, and that's not

12  part of a good after-action review.  And then I say to

13  myself, well, who the hell cares.  They didn't issue

14  this report anyway.  I mean that seems to get you all

15  the way to home base.  They didn't issue this out to the

16  police commanders.  Who cares whether they looked at one

17  thing or fifty things?

18         MS. STOUGHTON:  Well, except that I think the

19  reason that Chief Conforti and others and counsel's

20  represented that the reason that they didn't adopt it is

21  because they sought, that the recommendations in other

22  reports like Corporation Counsel's or the DOI's report

23  were better or sufficed or something of that nature.

24  And so we do know I think through that and through other

25  discovery what changes they did and didn't adopt.  But

1
2   that still leaves open the question of what was the
3   NYPD's own process for learning those mistakes because
4   that is relevant.  I mean it just so happens that in
5   this particular instance a lot of outside agencies,
6   independent agencies or quasi-independent agencies also
7   reviewed things.  But what is really relevant is what is
8   the NYPD's own internal mechanisms for learning those
9   lessons, and, you know, frankly, plaintiffs' theory is
10  that they don't have any.  But we have to, we need to
11  know what they did, what process they went through to
12  try to learn those lessons even if at the end of the day
13  they --
14          THE COURT:  Well, again, process --
15          MS. STOUGHTON:  -- thought, well --
16          THE COURT:  Process yes as I use that term, but
17  why do you need to know - let's pretend there's 50
18  things in here and one of which is the three versus two
19  police officers.  Why do you need to know that part of
20  it?  Why do you need to know the substance of it?
21          MS. STOUGHTON:  Well, I don't know we need the
22  three versus two, but we need to know what things they
23  looked at, what topics they looked at.  For example --
24          THE COURT:  Okay --
25          MS. STOUGHTON:  Give me a second to give you an

PROCEEDINGS                    80

example.

THE COURT:  -- number of police officers in cars.  Okay.

MS. STOUGHTON:  So I don't know if this is true, but if our expert told us that any responsible police agency would have looked at the numbers of police officers in cars during the 2020 protests and tried to figure out what about those numbers was good or bad, and then it turns out they didn't look at that at all during the Conforti review, then that seems highly relevant to establishing that the NYPD continues to have a poor process by which they will never learn lessons because they don't look at the right things or ask the right self-reflective questions.

THE COURT:  But is there any evidence this, I mean this process, again, this process was terminated and did not play out and didn't happen the way it was supposed to.  So I mean we're going in circles here.  I guess I --

(interposing)

MS. STOUGHTON:  I do understand - if I could, Your Honor.  I do understand what you're saying, but I think the reason - if it were terminated and they said we're not doing anything, I think you'd have a point.

```
 1                      PROCEEDINGS              81
```

But they didn't say that.  They said we're terminating

it because somebody else did the same thing and we're

going to go with their conclusions because --

            THE COURT:  Right, which you have.

            MS. STOUGHTON:  -- maybe because it's

duplication --

            THE COURT:  You did have that.  If you didn't

have that, then I would understand it, but you have the

other thing, whatever this other thing is.

            MS. STOUGHTON:  Yes, but that other thing

doesn't speak to the NYPD's own internal processes.  And

let me just bring another point, it's important to

remember that there's an injunctive relief claim and

that the defendants have claimed mootness.  So to that

point I think the next time there's a protest, we can't

rely on the fact that Corporation Counsel and the

Department of Investigation might undertake their own

review.  Once again, our clients would be relying on the

NYPD's own internal ability to learn lessons.  And so,

again, what it does as an agency to look back at its own

actions and learn lessons is critically important to

establishing, you know, the risk of ongoing harm to our

clients and backward looking the decisions made by NYPD

officials and their systemic failures that led to the

```
 1                         PROCEEDINGS              82
 2  harm that our clients experienced.
 3            THE COURT:  Okay.  I think I've probably
 4  reached the limit of whether I can do anything more on
 5  this today.  So I think we're done.  If I didn't say it
 6  before, but you should produce the documents that were
 7  ordered produced by the 21st, and I will probably issue a
 8  brief written order on the first thing we did, 774 I
 9  think it is, and eventually you'll hear something about
10  the after-action review documents.  And I think that's
11  it for those two items, and that's all I'm prepared to
12  do today.
13            Ms. Stoughton, anything else on 680?
14            MS. STOUGHTON:  No, Your Honor, thank you.
15            THE COURT:  Mr. Scutero, anything?
16            MR. SCUTERO:  No, Judge, thank you.
17            THE COURT:  Okay, thank you, everyone, good
18  bye.
19            MR. SCUTERO:  Thank you, have a good day.
20                 (Whereupon the matter is adjourned.)
21
22
23
24
25
```

83

C E R T I F I C A T E

     I, Carole Ludwig, certify that the foregoing transcript of proceedings in the United States District Court, Southern District of New York, In Re: New York Policing During Summer 2020 Demonstrations, docket #20cv8924, was prepared using PC-based transcription software and is a true and accurate record of the proceedings.

Signature ___*Carole Ludwig*___

Date:  February 14, 2023