

**HON. SYLVIA HINDS-RADIX**
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**Sergey Marts**
*Assistant Corporation Counsel*
Phone: (212) 356-5051
semarts@law.nyc.gov

February 23, 2023

**BY ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:  In Re: New York City Policing During Summer 2020 Demonstrations
              20 Civ. 8924 (CMJ)(GWG)

Your Honor:

       I am an Assistant Corporation Counsel in the Office of the Honorable Sylvia Hinds-Radix, Corporation Counsel of the City of New York and one of the attorneys assigned to the defense of the above-referenced consolidated matters. Defendants write in opposition to the *Sow* plaintiffs' motion to compel defendants to take a position as to the relevance of certain documents and for a Rule 37.2 conference. See Dkt. No. 848. The Court should deny the *Sow* plaintiffs' application, which belatedly attempts to change the terms of the parties' agreement on a protocol to address plaintiffs' purported concerns about the sufficiency of defendants' document review process.

## Introduction

       The *Sow* plaintiffs' latest motion to compel improperly seeks to unilaterally alter an agreement they requested, the parties agreed to, and the Court entered as an Order. That agreement contemplates that the parties would address plaintiffs' concerns with the defendants' document review process by taking statistically valid random samples of the remaining documents that were not produced (the "Unproduced Documents") to determine if any responsive documents remain in that population and whether it would be reasonable and proportional to address any such documents by performing some additional review. These samples were drawn in such a way to ensure they are representative of the remaining population. They are the best evidence for determining whether any additional review is warranted.

The information plaintiffs now seek relates to email attachments that have already been produced and plaintiffs already have in their possession. They are not randomly drawn, nor are they part of the remaining Unproduced Documents. Even if defendants agreed—which we do not—with plaintiffs' baseless assertion that 63% of these attachments are responsive, as discussed below, it irrelevant to the analysis before the parties, and potentially the court.  How and why any of those attachments were withheld as non-responsive is similarly irrelevant because regardless of whether defendants' coding decisions were right or wrong on these documents, plaintiffs are able to evaluate for themselves whether or not defendants review process resulted in substantively responsive material being left unproduced through their review of the representative samples of the Unproduced Documents.

The *Sow* plaintiffs' motion is also troublingly opaque as to the basis for their assertion that "somewhere between 25% and 63%" of the Unproduced Documents are likely relevant.  If these percentages were extrapolated from plaintiffs' review of the already produced attachments (the "Produced Attachments"), then they cannot and should not be used to draw any sort of conclusion about the Unproduced Documents – a completely different document population. Regardless of the basis for this assertion, however, it is completely unsupported. To date, plaintiffs have only identified to defendants approximately twenty-nine (29) Produced Attachments that they allege are relevant from the thousands of Produced Attachments and 264 of the approximately 1,518 documents from the Unproduced Document samples, the vast majority of which appear to actually be non-responsive to defendants.

Notwithstanding this apparent disagreement about responsiveness, the parties are scheduled to discuss their respective reviews of the Unproduced Document samples at a Friday meet-and-confer, at which time they will discuss their views of what documents in the samples might need to be addressed through additional review.  That is where the parties efforts should be focused at this point, as plaintiffs originally requested and defendants agreed.

## **Procedural History**

During the June 30, 2022 Court conference, the Court directed the parties to meet and confer regarding plaintiffs' concerns about the adequacy of the Defendants' document review process.

### I.      **The Parties Conferred and Reached Agreement on a Sampling Protocol to Address Plaintiffs' Concerns About the Defendants' Review Process**

In compliance with the Court's instructions, the parties conferred on July 5, 2022.[1] As articulated by plaintiffs in advance of the conferral, the purpose of the meet and confer was to discuss "what Defendants are willing to be (to use the Court's word) 'forthcoming' about to assure [plaintiffs] that (1) the null set and (2) the [sic] set of documents affirmatively marked non-responsive do not contain relevant or responsive documents." See Exhibit A at 7-8 [6/30/2022 4:56 p.m. email from Remy Green]. During the meet and confer, the parties agreed that to address

---

[1] Although the undersigned did not participate in the meet and confer, the undersigned's statements are based on the information received from individuals who participated in the meet and confer as well as the review of the relevant correspondence.

plaintiffs' concerns, the defendants would provide plaintiffs with representative samples of certain sets of unproduced documents. To determine which sets of unproduced documents should be sampled, plaintiffs requested information regarding the number of documents meeting the initial search criteria that were either affirmatively reviewed and determined to be non-responsive, or were low ranked by the technology assisted review software and never reviewed (the "Unproduced Population"). After the defendants disclosed the requested information on July 15, 2022, plaintiffs then requested that the defendants provide four separate samples from the Unproduced Population, totaling approximately 1,518 randomly drawn documents. See Exhibit A at 1 [7/25/2022 10:43 a.m. email from Remy Green]. Each sample was to be drawn from a different tranche of documents within the Unproduced Population and be of a sufficient size to ensure the sample was representative of the population within that subgroup with a 95% confidence level and a 5% margin of error.

This request sought an extraordinarily large amount of material outside the scope of discovery. Yet, in the interest of transparency, cooperation, and efficiently resolving the ultimate question of whether any additional review was necessary to find responsive material in the Unproduced Population without the need for further Court intervention, defendants agreed to plaintiffs' request, which was memorialized in a proposed Order filed with the Court on August 4, 2022. See Dkt. No. 718. The parties agreed that the samples, subject to a privilege review, would be provided to plaintiffs on a date to be determined after the stay of discovery was lifted.[2] Id.

At no point prior to the entry of the August 4, 2022 Order did plaintiffs suggest that they were interested in the sort of discovery-on-discovery regarding the already "Produced Attachments, which they now seek. Nor was there any reason to do so. While this sort of discovery-on-discovery might be relevant to determining whether sampling of the Unproduced Population is warranted, the Defendants *had already agreed* to provide an extraordinarily large sample from that population to conclusively resolve the issue. That sample would be the basis for determining whether additional review was needed.

## II.      After the Agreement, Plaintiffs Sought Additional Discovery-on-Discovery

On November 10, 2022, eight days before the expiration of the discovery pause, plaintiffs emailed defendants seeking agreement on a date for the production of the previously agreed upon sample sets. See Exhibit B at 1 [11/21/2022  12:53 p.m. email from Remy Green]. Then on November 21, 2022, after the entry of the Order memorializing the parties' agreement on the sample sets, counsel made, for the first time, an additional request that defendants provide discovery-on-discovery regarding approximately 29 strategically-selected documents from the Produced Attachments. Id.

Thereafter, on December 2, 2022, despite the fact that the defendants had never agreed to provide the newly requested discovery-on-discovery, plaintiffs attempted to insert this requirement

---

[2] Producing a voluminous sample of documents outside the scope of discovery is neither appropriate nor necessary in the vast majority of cases. *See Aurora Coop. Elevator Co. v. Aventine Renewable Energy - Aurora W., LLC*, No. 4:12CV230, 2015 U.S. Dist. LEXIS 177331, at *6 (D. Neb. Jan. 6, 2015) (plaintiffs' request for non-responsive documents within a technology assisted review training set not authorized by Rule 26(b)(1)). Defendants agreed to provide the samples in this particular matter in an effort to prevent this type of satellite litigation.

into a proposed order about the timing of the production of the sample sets. See Exhibit C [12/2/2022 12:59 p.m. email from Remy Green]. On December 6, 2022, defendants responded that the proposed order should be limited to "the date by which defendants will provide the sample set of documents" because "[t]he parties have not agreed to anything further." [12/6/2022 5:00 p.m. email from Daniel Braun].[3] On the same day, defendants advised counsel for *Sow* that defendants were available for a meet and confer on the issue, which occurred on December 15, 2022.[4]

During the meet and confer, defendants explained their position and followed up with a detailed email reiterating this position:

> The City can confirm that it will not provide this information and does not agree that any conclusion about the City's review can or should be based on information about 29 non-randomly selected documents that plaintiffs cherry picked.  As we stated during the meet and confer, the City is concerned that providing this information confuses the issue the parties, and potentially the Court, need to consider.  That issue is whether or not responsive material remains in the City's unproduced universe of documents and whether it makes sense to perform some targeted re-review to address any such material.  Providing answers to plaintiffs' questions do not bear on that analysis. The statistically valid random samples of documents drawn from the unproduced population should conclusively determine whether or not any such material remains in the unproduced population and the City's position is that the parties' evaluation of its review should be focused on that population.  If plaintiffs had wanted something other than the four sample sets, it should have been articulated many months ago – before the parties spent considerable time discussing the process and timeline by which the City will review and produce the Sample Documents.

See Exhibit D [12/22/2022 4:02 p.m. email from Jenny Weng].

### III.   After Reviewing the Agreed-Upon Samples, Plaintiffs Tried Again to Unilaterally Alter the Parties' Agreed-Upon Sampling Protocol

On January 9, 2023, defendants provided plaintiffs with the documents from the agreed upon representative samples from the Unproduced Population. On February 7, 2023, plaintiffs indicated that they had completed their review and requested that certain documents within the sample population be produced in accordance with the parties' prior agreement, which was memorialized in the Court's Order dated August 4, 2022, at Dkt. No. 809. Thereafter, on February 10, 2023, the *Sow* plaintiffs revived the dispute in their instant application.[5]

---

[3] Defendants are not attaching the referenced email as an exhibit because it was sent pursuant to the parties' settlement negotiations in an unrelated matter.
[4] Present for defendants were Jenny Weng, Anthony DiSenso, Rachel Kaufman, and Sergey Marts; present for plaintiffs Remy Green, Travis England, Lois Saldana, and Regina Yu.
[5] It also noteworthy that the none of the other consolidated case plaintiffs chose to join the *Sow* plaintiffs in bringing this motion to compel.

**Argument**

It is telling that *Sow* plaintiffs have chosen to file their motion compel only *after* completing a review of the sample documents. Indeed, understanding that perfection is not the standard and human review is never perfect,[6] defendants' own review of the sample documents suggests that a remarkably low number of substantively responsive documents remain in the population. Clearly unsatisfied with the small number of responsive documents in the sample population, *Sow* plaintiffs are now improperly attempting to re-litigate an issue the parties resolved more than *half a year ago*.

**I.    Plaintiffs Have Not Demonstrated Any Valid Basis for the Requested Discovery-on-Discovery**

Defendants have been clear with plaintiffs since the party's meet-and-confer on December 15, 2022 that focusing on documents outside of the Unproduced Population confuses what is truly at issue—namely whether there are documents in the Unproduced Population that would warrant additional review. The sample provided is the only relevant inquiry with respect to the Unproduced Population. How defendants previously identified responsive documents is simply not relevant where plaintiffs themselves are able to review the sample documents, and where plaintiffs agreed that the sample was of a size that was statistically representative of the Unproduced Population.

Defendants repeatedly articulated their concern that plaintiffs would attempt to improperly use information about these approximately twenty nine (29) cherry-picked, non-representative Produced Attachments to make a sweeping, specious argument about the defendants' review process and the make-up of the Unproduced Population to try and force the defendants to conduct a broad re-review *regardless of what was actually discovered in the representative sample* and indeed, that is precisely the argument *Sow* plaintiffs seem to be advancing in their application. See Dkt. No. 848 at 2. While this argument may have some surface-level appeal, as discussed below, it is flawed for several reasons.

**A.  Plaintiffs' Claim That 63% of Non-Responsive Produced Attachments Are In Fact Responsive Is Entirely Unsupported by Evidence, And More Importantly, Irrelevant to Whether Additional Review Is Warranted**

As defendants explained to plaintiffs during the parties' December 15th meet-and-confer and in subsequent correspondence, there are several serious issues with relying on plaintiffs' analysis of the twenty nine (29) Produced Attachments to determine whether additional review is needed in the Unproduced Population. First, as plaintiffs are aware, the approximately (29) Produced Attachments are not a statistically valid representative sample of anything, and in fact, they are all part of partially-responsive document families. It stands to reason then, that they are more likely to be responsive than the typical unproduced non-responsive document and in any

---

[6] *See* Maura R. Grossman & Gordon V. Cormack, *Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review*, XVII RICH. J.L. & TECH. 11, 16 (2011), http://jolt.richmond.edu/v17i3/article11.pdf (document review studies found human review recall rates (i.e., the percentage of responsive documents found) between 52.8% and 83.6%).

event are not representative of the average document in the Unproduced Population. They are also, of course, *not part of that population at all*. As such, it is impossible to accurately draw any conclusions regarding whether additional review of the Unproduced Population is warranted from this set documents.

Additionally, plaintiffs have provided no basis for their assertion that approximately 63% of the Produced Attachments are responsive. While plaintiffs could easily have provided the Bates number of each Produced Attachments they assert is responsive along with the corresponding document request number, they have not done so and instead have only ever identified this strategically-selected set of twenty nine (29) documents.

### B. Plaintiffs Fail to Articulate Any Basis for the Requested Discovery-on-Discovery About the Identified Produced Attachments.

Given that the defendants have already agreed to provide (and has in fact already provided) the agreed-upon representative samples from the Unproduced Population, it is unclear why plaintiffs are continuing to insist on this discovery-on-discovery about a limited set of Produced Attachments.

As the parties have agreed during the meet and confer process about the protocol for the Unproduced Population samples, any analysis of whether additional review of the Unproduced Population is warranted must be based on a review of a representative sample that is actually drawn from that set of documents. No such conclusion can properly be drawn from the twenty nine (29) strategically-selected documents from the Produced Attachments (an entirely separate population of documents). Importantly, regardless of what any discovery-on-discovery might reveal about the twenty nine (29) Produced Attachments, the review of the agreed-upon samples will ultimately control the answer to the question of whether further review of the Unproduced Population is warranted.

### Conclusion

Accordingly, defendants respectfully request that the Court deny plaintiffs' instant application.

Thank you for your time and consideration.

Respectfully submitted,

/s/ *Sergey Marts*
Sergey Marts
*Assistant Corporation Counsel*

cc:     ALL COUNSEL (*via* ECF)