**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SAMIRA SIERRA, AMALI SIERRA, RICARDO
NIGAGLIONI, ALEX GUTIERREZ, and
CHARLES HENRY WOOD, on behalf of
themselves and all others similarly situated,

                         Plaintiffs,

      -against-

CITY OF NEW YORK, a municipal entity; and
BILL DE BLASIO, TERENCE A. MONAHAN,
KENNETH LEHR, ROBERT GALLITELLI,
HARRY WEDIN, JOHN D'ADAMO, GERARD
DOWLING, JULIO DELGADO, KENNETH
RICE, THOMAS GARGUILO, JOHN
MIGLIACCIO, THOMAS MOSHER,

                         Defendants.

20-CV-10291 (CM)(GWG)
20-CV-10541 (CM)(GWG)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS
SETTLEMENT, CERTIFICATION OF CLASS AND APPOINTMENT OF CLASS
COUNSEL FOR SETTLEMENT PURPOSES, APPROVAL OF PROPOSED
CLASS NOTICE AND ADMINISTRATION PROCESS, AND APPOINTMENT
OF CLAIMS ADMINISTRATOR**

 

Kaufman Lieb Lebowitz & Frick LLP
18 E. 48th Street, Suite 802
New York, New York 10017

Hamilton Clarke, LLP
48 Wall Street, Suite 1100
New York, NY 10005

Michael L. Spiegel, Esq.
48 Wall Street, Suite 1100
New York, New York 10005

Rickner PLLC
14 Wall Street, Suite 1603
New York, New York 10005

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES ..........................................................................iii

INTRODUCTION ...........................................................................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND ................................2

    A.    The *Sierra-Wood* Action.................................................................2

    B.    Investigation, Discovery, and Settlement Negotiations ...................3

II.    SUMMARY OF PRINCIPAL SETTLEMENT TERMS .........................4

    A.    Proposed Settlement Class Definition ..............................................4

    B.    Proposed Payments to Class Members..............................................4

    C.    Proposed Process for Providing Notice to Class Members .............5

III.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED
       SETTLEMENT ...............................................................................6

    A.    Continued Litigation Would Be Complex, Expensive, and Lengthy
        (Factor 1) ...................................................................................8

    B.    The Reaction of the Class to the Settlement Has Been Positive
        (Factor 2) ...................................................................................9

    C.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case
        Responsibly (Factor 3).................................................................9

    D.    Plaintiffs Would Face Real Risks if the Case Proceeded (Factors 4 and 5) ...10

    E.    Maintaining the Class Through Trial Would Not Be Simple (Factor 6) .........11

    F.    Defendants Could Conceivably Withstand a Greater Judgment, But This Fact
        Alone Does not Weigh Against Approval (Factor 7) ...............................12

    G.    The Settlement Is Substantial, Even in Light of the Best Possible Recovery
        and the Attendant Risks of Litigation (Factors 8 and 9) .........................12

IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS
       PURSUANT TO RULE 23(E) .........................................................13

    A.    The Proposed Class Satisfies the Rule 23(a) Factors .....................14

B.     The Proposed Class Satisfies the Rule 23(b)(3) Factors ................................17

V.     PLAINTIFFS' COUNSEL SHOULD BE APPPOINTED AS CLASS COUNSEL. 18

VI.    THE PROPOSED PROCESS FOR NOTIFYING THE CLASS, RECEIVING CLAIM FORMS, AND DISTRIBUTING PAYMENTS TO ELIGIBLE CLASS MEMBERS IS FAIR AND REASONABLE ......................................................... 19

VII.   THE PROPOSED CLAIMS ADMINISTRATOR IS ADEQUATE ...................... 21

CONCLUSION ........................................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000) ............. 19

*Black Lives Matter Los Angeles v. City of Los Angeles*,
   No. 20 Civ. 5027 (C.D. Cal. Oct. 3, 2022)...................................................... 15

*Brown v. Kelly*, 244 F.R.D. 222 (S.D.N.Y. 2007) ......................................................... 15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ...................................... 7, 8

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
   2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................................... 6, 7

*Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)........................................................................... 17

*County of Suffolk v. Long Island Lighting Co.*,
   710 F. Supp. 1422 (E.D.N.Y. 1989) .............................................................. 13

*Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397 (W.D.N.Y. 2013) ..................... 7

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 184 (W.D.N.Y. 2005) ............................... 12, 13

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................... 8, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir.2009) ..................... 16

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ................... 19

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996).......... 18

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) .......................... 10

*In re Traffic Exec. Ass'n-E. R.Rs.*, 627 F.2d 631 (2d Cir. 1980) ....................................... 7

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)............................ 10

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003) ................................. 14

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. 2014) ........................................ 7

*MacNamara v. City of New York*, 275 F.R.D. 125 (S.D.N.Y. 2011). .......... 14, 15, 16, 17, 18

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) ...................................... 9

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995)...................... 6

*McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006) ........................................ 12

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006)....... 14

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ............................................................ 16

*Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ...........................................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................... 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................ 6

**RULES**

Fed. R. Civ. P. 23(a) ...................................................................................................16, 17

Fed. R. Civ. P. 23(b)..........................................................................................................20

Fed. R. Civ. P. 23(g)......................................................................................................... 21

**TREATISES**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 13:3............................ 13

**INTRODUCTION**

After years of hard-fought litigation, the Named Plaintiffs,[1] individually and on behalf of the class they seek to represent (collectively "Plaintiffs"), and the City of New York and the individual NYPD Defendants (collectively "Defendants") have reached a settlement agreement in this class action that will compensate the approximately 320 people who were arrested, detained, and/or subjected to force by police officers on June 4, 2020 at the "George Floyd Protest" in the Mott Haven neighborhood of the Bronx, and all persons who were given a summons or Desk Appearance Ticket ("DAT") following their arrest there. Specifically, Defendants will pay each eligible class member $21,500, an additional $2,500 to each class member who was given a Desk Appearance Ticket, and a $21,500 service award to each Named Plaintiff.

Because this proposed settlement satisfies all of the criteria for preliminary approval, Plaintiffs respectfully request that the Court (1) preliminarily approve the proposed settlement terms as reflected in the parties' Stipulation of Settlement and Order ("Agreement"); (2) conditionally certify the proposed class for settlement purposes pursuant to Fed. R. Civ. P. 23(c) and 23(e); (3) appoint Hamilton Clarke, LLP; Kaufman Lieb Lebowitz & Frick LLP; Rickner PLLC; and Michael L. Spiegel, Esq. (collectively, "Plaintiffs' Counsel") as Class Counsel; (4) approve the proposed class settlement notice procedure as reflected in the Agreement; and (5) appoint Rust Consulting, Inc. as Class Administrator. The Stipulation of Settlement and Order (referred to herein as "Settlement Agreement" or "Agreement"), with the proposed class

---

[1] The Named Plaintiffs are Samira Sierra, Amali Sierra, Ricardo Nigaglioni, Alex Gutierrez, and Charles Henry Wood.

notices and claims form attached, is attached as **Exhibit 1** to the accompanying Declaration of Alison Frick.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The *Sierra-Wood* Action

In the consolidated *Sierra-Wood* action,[2] Plaintiffs allege that the New York City Police Department arrested and charged the protestors without probable cause and subjected them to excessive force, as part of a planned police action involving some of the most senior members of the NYPD. In total, over 320 people were arrested at the protest. The Consolidated Amended Class Action Complaint, Dkt. #741, alleges, among other things, that Defendants violated class members' Fourth Amendment rights by arresting them without probable cause and by using excessive force to do so; violated class members' First Amendment right to freedom of expression by retaliating against them for their political speech; and violated class members' Fourteenth Amendment rights by denying them equal protection of the laws. Plaintiffs also raise state-law claims for false arrest, assault and battery, denial of medical care, infliction of emotional distress, negligent hiring, training, and supervision, and disciplining subordinates, and excessive detention. (The claims of class members are referred to collectively in this brief as "the Class Claims"). The Complaint seeks money damages only and does not make a demand for injunctive relief.

_____

[2] The *Sierra* case, 20 Civ. 10291, and the *Wood* case, 20 Civ. 10541, were consolidated for all purposes by Order of the Court dated September 15, 2022, Dkt. #740. (All Docket Numbers referenced herein are to the docket in *In re New York City Policing During Summer 2020 Demonstrations*, No. 20 Civ. 8924.)

### B.      Investigation, Discovery, and Settlement Negotiations

The *Sierra* and *Wood* cases were brought in late 2020. For purposes of discovery, the Court eventually consolidated them with other related cases (the "Consolidated Cases"). Consistent with the Court's consolidation order, the plaintiffs in the Consolidated Cases coordinated and collaborated in taking discovery. Frick Decl. ¶¶ 5-7.

Given the breadth of the consolidated actions and the number of parties, discovery in the Consolidated Cases has been complex, lengthy, and hard-fought. To date, Defendants have produced hundreds of thousands of documents, including thousands of hours of videos and audio recordings. *Id*. ¶ 5.

By reviewing and sorting through the mass of discovery (which related to protests over an eight-month period), the *Sierra-Wood* Plaintiffs were able to identify the approximately 320 people who were arrested at the Mott Haven protest on June 4, 2020, the NYPD Chiefs in command of that police operation, and an understanding of how the operation was carried out. *Id*. ¶ 8.

The *Sierra-Wood* Named Plaintiffs responded to Defendants' discovery requests and were all deposed in 2021, and *Wood* and *Sierra* Plaintiffs' Counsel participated in at least another 18 depositions of NYPD officers and defendants. *Id*. ¶ 9. *Wood* and *Sierra* Plaintiffs' Counsel filed several motions to compel discovery that were granted, took depositions, and prepared for many depositions that were scheduled to take place in 2021-22, but, because of ongoing discovery disputes, were delayed and/or were adjourned as a result of a stay for settlement discussions. *Id*. ¶ 10. *Wood* and *Sierra* counsel were actively preparing for depositions of high-level NYPD officials in the fall of 2022 until the parties reached an agreement in early December 2022. *Id*.

3

In response to requests by the Defendants, the *Sierra-Wood* Plaintiffs provided settlement demands in December 2021 and April 2022, but actual settlement negotiations commenced with a mediation session in September 2022 (assisted by Rebecca Price, the Director of the Court's Alternative Dispute Resolution Program). The parties continued direct settlement negotiations over the following months (without the assistance of Ms. Price), until finally agreeing upon the key terms of the settlement on December 2, 2022. *Id.* ¶¶ 11-17. On December 16, 2022, this Court granted the parties' requested schedule for submitting this motion, the proposed Stipulation of Settlement and Order, and related class documents. Dkt. #786.

## II.  SUMMARY OF PRINCIPAL SETTLEMENT TERMS

The Agreement provides significant compensation to hundreds of protestors subjected to arrest and/or police force.

### A.  Proposed Settlement Class Definition

The proposed Settlement Class is defined as all persons who were detained, arrested, and/or subjected to force by police officers on June 4, 2020, on East 136th Street between Brook Avenue and Brown Place in the Bronx during the "George Floyd protest" in Mott Haven, and all persons who were given a summons or Desk Appearance Ticket following their arrest at that location. Those who have already settled claims arising out of the events on June 4, 2020 are excluded from the proposed Agreement. Agr. ¶¶ 32-33.

### B.  Proposed Payments to Class Members

Under the Agreement, all eligible class members who submit timely Claim Forms will each receive $21,500. Agr. ¶ 40. In addition, those class members who were issued Desk Appearance Tickets ("DATs") will receive an additional $2,500, for a total of

$24,000, as those class members were subjected to fingerprinting, photographing, and a criminal history check (resulting in an open criminal case record until dismissal), and were generally detained for at least several more hours than those who received only a Summons. *Id.* The Agreement also provides for supplemental service award payments of $21,500 to each of the Named Plaintiffs for their efforts in bringing and maintaining this action, subject to Court approval. Agr. ¶ 41.

### C. Proposed Process for Providing Notice to Class Members

The parties have agreed to provide notice to the Class in three forms. First, a "Claims Package" will be mailed to every known Class Member. Agr. ¶¶ 49, 56. The Claims Package consists of a Class Notice, attached to the Agreement as Exhibit A, and a Claim Form, attached to the Agreement as Exhibit C. *Id.* ¶ 11. As noted below, the Claims Administrator will translate the Claims Package into Spanish (which the parties will review for accuracy), and both the English and Spanish language versions of the Claims Package will be transmitted together to every class member. *Id.* ¶ 49. Second, a Class Notice Summary, attached to the Agreement as Exhibit B, will be published in *The Daily News* and *El Diario* in English and Spanish three times within the same three-week period. *Id.* ¶ 37. Third, a website will be established where Class Members can review the terms of the proposed Settlement, submit a Claim Form, and submit questions about this lawsuit.

The schedule for providing Notice to the Class and deadlines for administering the proposed settlement are set forth in the Settlement Schedule. *Id.* ¶ 4.

### D. Attorneys' Fees and Costs

Finally, the City will pay Plaintiffs' reasonable attorneys' fees and costs. Agr. ¶ 81. The parties agree that they will attempt to settle the amount of fees and costs incurred

up to and including the date of the Agreement and for those fees and costs that are
reasonably likely to be incurred through the date of the Final Approval hearing;
Plaintiffs will move this Court for approval of their attorneys' fees and costs, pursuant to
Federal Rule of Civil Procedure 23(h) and 54(d)(2), simultaneously with their Motion
for Final Approval of the Settlement. Plaintiffs intend to seek $2,550,000 for the
reasonable attorneys' fees and costs incurred to date,[3] plus all additional reasonable fees
and costs incurred subsequent to this motion. Frick Decl. ¶¶ 27.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

Preliminary approval of this settlement is appropriate, especially given the
"strong judicial policy in favor of settlements, particularly in the class action context."
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Approval of a
class action settlement is a matter of discretion, *see Maywalt v. Parker & Parsley
Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995), with "proper deference" given "to the
private consensual decision of the parties," *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04
Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal
quotation marks and citations omitted). Courts considering a proposed class action
settlement "should keep in mind the unique ability of class and defense counsel to assess
the potential risks and rewards of litigation . . . ." *Id.*

Preliminary approval of a proposed class settlement "requires only an initial
evaluation of the fairness of the proposed settlement on the basis of written submissions

---

[3] Each of Plaintiffs' attorneys kept contemporaneous time records throughout his/her work on
this case. This figure represents the sum of each attorney's hours spent on this matter to date, multiplied
by that attorney's regular hourly rate, plus the reasonable costs each attorney has incurred (for example,
for deposition transcripts).

and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). Granting preliminary approval is "at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980). "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 407 (W.D.N.Y. 2013) (internal quotation marks omitted).

The proposed settlement here is fair, reasonable, and adequate and should be preliminarily approved. In evaluating the fairness of a proposed class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). The *Grinnell* factors are:

> (1) the complexity, expense, and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463. These factors all weigh in favor of the granting preliminary approval to the Agreement.

### A.    Continued Litigation Would Be Complex, Expensive, and Lengthy (Factor 1).

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay and ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

There is no question that litigating this case through trial would be complicated and time-consuming. Completing discovery for this case would require the *Sierra-Wood* plaintiffs to take more than a dozen additional depositions of high-level NYPD officials, including but not limited to, former NYPD Chief of Department Terence Monahan and current or former Chiefs Kenneth Lehr, Harry Wedin, John D'Adamo, and Gerard Dowling. Preparing for and taking those depositions would require hundreds of hours of attorney time. There is also additional paper discovery that would need to be completed if this case is not resolved by settlement.

Absent settlement, Plaintiffs would need to litigate the issue of class certification (Plaintiffs' motion would be due by the end of next month, pursuant to Court order) and, most likely, prepare a summary judgment motion on a significant number of claims or elements of claims. Thus, by settling now, the Parties avoid protracted motion practice and save the Court the task of reviewing and deciding these sequential motions. Moreover, given that this case could not be fully resolved through summary judgment, a full jury trial would be necessary—another burden on the Court and the Parties that settlement avoids.

Settlement avoids the time and costs of numerous additional depositions, further paper discovery, disputed motions for class certification and summary judgment, and trial. Significantly, it also avoids years of delay in obtaining compensation for class members. Thus, the first *Grinnell* factor weighs strongly in favor of approval.

### B. The Reaction of the Class to the Settlement Has Been Positive (Factor 2).

Because notice of the settlement has not yet been issued to the class, the Court can and should more fully consider this factor after notice is sent and class members are given the opportunity to respond to it. Still, at this stage, the five Named Plaintiffs have all expressed their approval of the settlement and, given the size of the awards, there is likely to be a positive reaction from the class. This factor, too, weighs in favor of approval.

### C. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 3).

The parties have completed enough discovery to recommend settlement. "Because much of the point of settling is to avoid litigation expenses such as full discovery, it would be inconsistent with the salutary purposes of settlement to find that extensive pre-trial discovery is a prerequisite to approval of a settlement." *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) (internal quotation marks and citations omitted). The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts

helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks and citation omitted).

Discovery to date easily meets this standard. This Court is fully aware of how hard-fought discovery has been to date, with dozens of discovery disputes coming before the Court for resolution. Plaintiffs' Counsel have sifted through thousands of documents, reviewed hundreds of hours of video and audio recordings (including CCRB and NYC Department of Investigation interviews of many Defendants), defended the Named Plaintiffs' depositions, and taken numerous depositions of NYPD personnel. Plaintiffs also obtained subpoenaed records from the Bronx District Attorney's Office.

After reviewing this discovery, Plaintiffs' counsel in *Sierra* and *Wood* prepared an amended and consolidated complaint that identified additional appropriate defendants and withdrew claims against defendants initially named. Defendants did not oppose that motion.

This case has been litigated at an expedited pace for more than two years—more than enough time for the parties to responsibly resolve the case. This factor weighs in favor of approval.

### D. Plaintiffs Would Face Real Risks if the Case Proceeded (Factors 4 and 5).

Plaintiffs believe their case is strong. But considerable risks remain if the case does not settle. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "The proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial." *Velez v.*

*Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. To prevail on some of their constitutional claims, Plaintiffs would need to prove that they were singled out for police mistreatment on the basis of their message (against police brutality) and/or because of their race. They would also need to overcome Defendants' insistence that probable cause—and, with respect to the individual Defendants' qualified immunity defense, arguable probable cause—existed to arrest the protestors. Plaintiffs would also have to prove that the use of force against the protestors was objectively unreasonable, not to mention the other Class Claims—like the violation of protestors' First Amendment Rights. Plaintiffs also would need to show that each of the named Defendants was personally involved in the alleged constitutional deprivations and that the City was liable as a municipality.

Even if Plaintiffs succeeded at trial (and on appeal) in proving Defendants' liability, they would face additional difficulty in proving the full extent of damages. Given that large per-person settlement figure, it is clear that Plaintiffs would face substantial risk in leaving the award of damages up to a jury. These factors also weigh in favor of approval.

### E.  Maintaining the Class Through Trial Would Not Be Simple (Factor 6).

While Plaintiffs are confident that they would obtain certification of the class under Rule 23, the many other litigations surrounding the Summer 2020 protests mean that maintaining the class through trial would be complicated, given other cases that could impinge upon the class. Further, any trial would not occur for another year or

more, further complicating efforts to maintain the class (as members may move away or become harder to find). Risk, expense, and delay permeate the class certification process. Settlement eliminates these risks, expenses, and delay. This factor favors preliminary approval.

### F. Defendants Could Conceivably Withstand a Greater Judgment, But This Fact Alone Does Not Weigh Against Approval (Factor 7).

While the City of New York could presumably withstand a judgment greater than the total class settlement awards, that fact "does not render the settlement unfair, especially where the other *Grinnell* factors favor approval." *McBean v. City of New York*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006). Indeed, "fairness does not require that the City of New York empty its coffers before this Court will approve a settlement." *Id*.

### G. The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9).

The City agreed to pay a significant sum to every class member: $21,500 for each class member and an additional $2,500 for class members who received DATs. Even without the DAT enhancement, this settlement award represents a substantial per-plaintiff settlement amount for a case like this, involving mass arrests and excessive force, among other things.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 184, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular

case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

As this Court is well aware, in this District, Section 1983 and state law claims of false arrest and excessive force frequently settle in the range of, and oftentimes lower than, the class settlement awards proposed here. Indeed, some of the otherwise-would-be-class-members previously settled their claims with the City for amounts less than the proposed class settlement awards. Frick Decl. ¶ 21. The large per-person settlement Plaintiffs have achieved weighs strongly in favor of approval.

*   *   *   *

Because the settlement agreement is, on its face, "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## IV.   THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS PURSUANT TO RULE 23(e)

Plaintiffs respectfully request that the Court certify the Proposed Class under Federal Rule of Civil Procedure 23(e) for purposes of effectuating the settlement. As discussed below, the Class meets all of the requirements for class certification, and Defendants do not oppose certification under Rule 23(e). *See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 13:3 ("If a class has not yet been certified, the parties stipulate to the conditional or temporary establishment of settlement classes for the purposes of the agreement."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("negotiat[ing] a proposed settlement . . . prior to certification of the class" is appropriate), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Under Rule 23(a), a class action may be maintained if all the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997)).

### A.     The Proposed Class Satisfies the Rule 23(a) Factors

The Proposed Class—all persons who were detained, arrested, and/or subjected to force by police officers on June 4, 2020, on East 136th Street between Brook Avenue and Brown Place in the Bronx during the "George Floyd protest" in Mott Haven, and all persons who were given a summons or Desk Appearance Ticket following their arrest at that location—satisfies the Rule 23(a) requirements. The class is sufficiently numerous; questions of law and fact are common to the class; the class representatives' claims are typical of those of the class; and there is adequacy of representation. Fed. R. Civ. P. 23(a).

### 1.     <u>Numerosity</u>

The Proposed Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "[T]he numerosity analysis begins with the presumption that a class comprising 40 or more members is generally sufficient." *MacNamara v. City of New York*, 275 F.R.D. 125, 141 (S.D.N.Y. 2011). Here, there were approximately 320 people detained at East 136th Street during the protest. Frick Decl. ¶¶ 8, 18-21.  On information and belief, fewer than 100 proposed class members have already resolved and released their claims against the City. *Id.* ¶ 21. And while some class members have a separate lawsuit pending, "the presence of those actions does not

militate against class certification," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 305 (S.D.N.Y. 2003), because, for purposes of the Rule 23 analysis, "individuals are considered class members until they opt out of the suit." *MacNamara*, 275 F.R.D. at 141. Accordingly, the Proposed Class is sufficiently numerous to satisfy Rule 23(a).

### 2.    <u>Commonality</u>

Rule 23(a)(2) requires "questions of law and fact common to the class." Even a "single common question" will suffice. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). The rule "does not require all questions of law or fact be common to the class," and, indeed, such a requirement "would be the death knell for class actions challenging the systemic enforcement of an [unlawful] statute," an "unacceptable result." *Brown v. Kelly*, 244 F.R.D. 222, 230-31 (S.D.N.Y. 2007), *affirmed in part and vacated in part on other grounds*, 609 F.3d 467 (2d Cir. 2010).

There are numerous factual and legal issues common to the class. Most centrally, the case is about the NYPD's response to a specific protest on a specific date in a specific neighborhood at which all class members were present and experienced the same or similar conduct. In *MacNamara*, this court certified subclasses of arrestees from the Republican National Convention protests under markedly similar circumstances. The court found that the commonality requirement was met because the mass arrests of protestors presented common questions of fact and law, including, whether officers arrested protestors without probable cause, whether officers issued dispersal orders and provided an opportunity to disperse, and whether officers acted pursuant to an unlawful policy or practice of indiscriminate mass arrest. *MacNamara*, 275 F.R.D. at 143. *See also Black Lives Matter Los Angeles v. City of Los Angeles*, No. 20 Civ. 5027, Dkt. # 174

(C.D. Cal. Oct. 3, 2022) (certifying class of protestors subjected to mass arrest during first week of Black Lives Matter protests).

### 3.    <u>Typicality</u>

The Named Plaintiffs' experiences and claims are typical of those in the class. Here, "each class member's claim arises from the same course of events"—their detention, arrest, or experience of police force on East 136th Street between Brook Avenue and Brown Place on June 4, 2020—"and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir.2009). "[T]he same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Specifically, each Named Plaintiffs, and all class members, were subjected to a coordinated police action and the use of excessive force. The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims.

### 4.    <u>Adequacy of the Named Plaintiffs</u>

The Named Plaintiffs have no interests that are "antagonistic to those of the []class members," and "there is no dispute that if the named Plaintiffs prevail, the putative class members will also benefit, since all were subject to the same allegedly unconstitutional course of conduct." *MacNamara*, 275 F.R.D. at 144. Accordingly, the Named Plaintiffs—all of whom were present for the Mott Haven protest, marched peacefully, were subjected to the use of force and arrested, were placed in tight flexicuffs, were processed at a mass arrest processing center, and were given

summonses or desk appearance tickets—are adequate representatives of the proposed class.[4]

## B.      The Proposed Class Satisfies the Rule 23(b)(3) Factors

In addition to satisfying the Rule 23(a) factors, the Proposed Class meets the more stringent requirements necessary to certify a damages class under Rule 23(b)(3), which requires that common questions of law or fact "predominate" over individual matters, and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

First, Plaintiffs can demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–08 (2d Cir. 2007). Like the certified mass arrest subclasses in *MacNamara*, common issues predominate over individual ones in this case, where hundreds of people were arrested at a single location under a single plan orchestrated by Defendants. Because the Proposed Class comprises "individuals who were arrested as part of a group based on the alleged conduct of the group," and not their individual actions, the Court can find predominance. *MacNamara*, 275 F.R.D. at 146. Further, while "assessment of damages may ultimately require individualized inquiries, that possibility is no bar to class certification here." *Id.*

"[F]actors relevant to the superiority analysis include: the interest of class members in controlling separate actions; the extent and nature of existing litigation concerning the controversy; the desirability or undesirability of concentrating litigation

---

[4] The adequacy of counsel to represent the class is addressed in Section V below.

of the class claims in the particular forum; and the likely difficulties in managing a class action." *Id*. at 148. A class action is certainly the most fair and efficient way of resolving this case. First, more than two and a half years have passed since the Mott Haven protest, and the vast majority of putative class members have not filed separate actions. In addition, "the likely difficulties in managing a class action" are not greater here – particularly where Plaintiffs seek certification under Rule 23(e) as part of a proposed money-damages class settlement – than the difficulties of continuing to litigate as one of the Consolidated Cases, which have presented their own management difficulties. Indeed, whatever "'management difficulties' that might accompany the proposed certification are certainly no greater than the management difficulties that would inevitably result from hundreds of separate trials." *Id*. "Given the number of class members injured" by the NYPD's alleged conduct, "a class action is not only the most efficient and convenient method to resolve this controversy, it is the only 'fair' and 'efficient' means to adjudicate this controversy." *In re NASDAQ Market-Makers Antitrust Litig*., 169 F.R.D. 493, 527 (S.D.N.Y. 1996).

## V.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs' Counsel are appropriate Class Counsel under Rule 23(g), which sets forth the four criteria for appointing class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court

may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class. Fed. R. Civ. P. 23(g)(1)(B).

As further detailed in the attached Declarations of Alison Frick, Josh Moskovitz, Rob Rickner, and Michael Spiegel, Plaintiffs' Counsel meet all of these criteria. Plaintiffs' Counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims. Plaintiffs' Counsel have substantial experience prosecuting and settling civil rights cases and class actions, and they are well-versed in civil rights and class action practice and are well-qualified to represent the class. Frick Decl. ¶¶ 28-51; Moskovitz Decl.; Rickner Decl.; Spiegel Decl. Furthermore, Plaintiffs' Counsel have successfully and efficiently worked together on this case for the last two years. *Id.*

Plaintiffs' Counsel are "qualified, experienced, and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). The Court should appoint them as Class Counsel.

## VI.    THE PROPOSED PROCESS FOR NOTIFYING THE CLASS, RECEIVING CLAIM FORMS, AND DISTRIBUTING PAYMENTS TO ELIGIBLE CLASS MEMBERS IS FAIR AND REASONABLE

The Proposed Notices, attached as Exhibits A and B to the Agreement, comply with due process and Federal Rule of Civil Procedure 23. The Class Notice that will be mailed to class members in two languages, and the Class Notice Summary that will be used in publishing notice also in two languages, contain all the information required by Rule 23(c)(2)(B). They describe the terms of the settlement, inform the class that Plaintiffs will seek to recover costs, attorneys' fees, and service awards from the Defendants, and provide specific information regarding the date, time, and place of the final approval hearing. Moreover, the proposed class administration process involves

establishing a website, where anyone can easily access the full settlement terms and the Class Notice, and class members can submit a claim form.

Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The detailed information in the proposed Notices—and the easily accessibility of a detailed website—far exceeds this bare minimum and fully complies with the requirements of Rule 23 (c)(2)(B).

The Parties have agreed to a clear and comprehensive plan to send out notice to all class members, provide time for inquiries and claim submission, and timely pay out all timely legitimate claims. Agr. ¶ 4; *see also* Frick Decl. ¶¶ 22-27. Specifically, no more than 30 days after the Preliminary Approval Order is issued, the Claim Package will be mailed directly to all Class Members at their last known addresses. Agr. ¶¶ 11, 36, 49, 56. Notice will also be published for several weeks in a row in Spanish and English language newspapers. *Id.* ¶ 37. To receive a payment, class members must timely submit a Claim Form, either by mail or online, by the deadline set by the Court, which the Parties propose to be 180 days from the date of Preliminary Approval. *Id.* ¶¶ 4, 5, 59. Those members wishing to opt out of or object to the settlement will need to do so by the same deadline. *Id.* ¶ 71. With help from the Parties, the Claims Administrator will be responsible for determining who is eligible for payment and calculating class payments. *Id.* ¶ 51.

The Parties propose that Plaintiffs submit their motion for final approval by October 17, 2023, and that the Fairness Hearing take place on October 24, 2023. The

Agreement proposes that the Claims Administrator will begin paying class members 55 days after the Final Approval Order, unless there is an appeal. *Id.* ¶¶ 4, 43-45.

## VII.   PROPOSED CLAIMS ADMINISTRATOR IS ADEQUATE

The parties have agreed to retain Rust Consulting, Inc. to serve as the Claims Administrator. *Id.* ¶ 48. Rust has 30+ years of class action settlement administration experience and has administered more than 5,200 class action settlements, judgments, and similar administrative programs. Rust employs a permanent staff of more than 200. Rust has handled claims administration in matters in this district and involving the City of New York, including, but not limited to, *Stinson v. City of New York*, No. 10 Civ. 4228 (RWS) (S.D.N.Y). Attached as Exhibit 2 to the Frick Declaration is a declaration from then-Senior Vice President of Rust Tiffaney Janowicz, filed in the *Stinson* case, explaining Rust's experience and services.

The Claims Administrator will: (1) mail the Claims Package, in both English and Spanish, to Class Members; (2) establish a website where information about the Settlement will be available to Class Members and where Class Members can submit Claim Forms; (3) publish the Class Notice summary; (4) respond to questions from Class Members; (5) review and assess the validity of information in the Claims Forms submitted by Class Members; (6) calculate the payments to the individual Class Members consistent with the Agreement; (7) arrange for and distribute checks containing payments to Class Members; (8) arrange for reversion back to the City of any amounts from the Total Class Settlement Amount pursuant to the terms of the Agreement; (9) create a database of Class Members who have filed timely and valid Claim Forms; (10) create a database of Opt-Outs; (11) deduct any applicable liens from the claim awards and forward those deductions to the New York City Comptroller or any

21

other relevant agencies; and (12) perform any other duties necessary to fulfill the foregoing responsibilities and any other responsibilities set forth in the Agreement. Agr. ¶ 49. The costs of Class Administration will be paid by the City of New York. *Id*. ¶ 48.

## CONCLUSION

Because the Proposed Settlement is fair and reasonable and serves the interests of the proposed Class, this Court should enter the proposed Stipulation of Settlement and Order and preliminarily approve the class settlement, conditionally certify the class, appoint Plaintiffs' Counsel as Class Counsel, approve the claims administration process, and approve the appointment of Rust as Claims Administrator.

Dated:      February 28, 2023
            New York, New York

KAUFMAN LIEB LEBOWITZ
& FRICK LLP

Alison Frick
Douglas E. Lieb
18 E. 48th Street, Suite 802
New York, New York 10017
(212) 660-2332

Joshua S. Moskovitz
Lance Clarke
HAMILTON CLARKE, LLP
48 Wall Street, Suite 1100
New York, NY 10005

Michael L. Spiegel, Esq.
48 Wall Street, Suite 1100
New York, New York 10005

Rob Rickner
RICKNER PLLC
14 Wall Street, Suite 1603
New York, New York 10005

*Attorneys for Plaintiffs*