UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAMIRA SIERRA, AMALI SIERRA, RICARDO NIGAGLIONI, ALEX GUTIERREZ, and CHARLES WOOD, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>   -against-<br><br>CITY OF NEW YORK, a municipal entity; and BILL DE BLASIO, TERENCE A. MONAHAN, KENNETH LEHR, ROBERT GALLITELLI, HARRY WEDIN, JOHN D'ADAMO, GERARD DOWLING, JULIO DELGADO, KENNETH RICE, THOMAS GARGUILO, JOHN MIGLIACCIO, THOMAS MOSHER,<br><br>            Defendants. | No. 20 Civ 10291 (CM)(GWG)<br>No. 20 Civ. 10541 (CM)(GWG) |

**DECLARATION OF ALISON FRICK**

Alison Frick declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.    I am a partner at Kaufman Lieb Lebowitz & Frick LLP. My firm, along with Hamilton Clarke, LLP, Rickner PLLC, and Michael Spiegel, Esq. (collectively, "Plaintiffs' counsel" and "Counsel for Wood and Sierra") represent Plaintiffs in this matter. I am duly qualified to practice in the State of New York and before this Court.

2.    I submit this Declaration on behalf of the Named Plaintiffs,[1] individually and on behalf of the class they seek to represent (collectively "Plaintiffs"), in support of

---

[1] The Named Plaintiffs are Samira Sierra, Amali Sierra, Ricardo Nigagioni, Alex Gutierrez, and Charles Henry Wood.

1

their unopposed motion for preliminary approval of their class action settlement, conditional certification of the settlement class, appointment of Plaintiffs' counsel as class counsel, approval of the proposed notice of settlement plan, and approval of the proposed claims administrator.

3. Attached as **Exhibit 1** is the Stipulation of Settlement, signed by attorneys for Plaintiffs and Defendants. The Stipulation attaches the proposed Class Notice (Ex. A), Summary Class Notice (Ex. B), and Claim Form (Ex. C).

***Discovery Was Complex, Lengthy, and Hard Fought***

4. This action was originally filed as two separate cases, *Sierra, et al. v. City of New York, et al.*, No. 20 Civ 10291, and *Wood, et al. v. City of New York, et al.*, No. 20 Civ. 10541. The two cases were consolidated with nine others for purposes of discovery ("the Consolidated Cases"). On a motion by *Sierra* and *Wood*, this Court ordered the two cases consolidated for all purposes on September 15, 2022, Dkt. #740.

5. Attorneys for the Consolidated Cases worked closely to coordinate and manage discovery. Together with the plaintiffs in the Consolidated Cases, Plaintiffs propounded dozens of discovery requests, reviewed tens of thousands of documents produced by Defendants, and litigated dozens of discovery disputes. Defendants produced more than 225,000 documents, including thousands of hours of video and audio recordings.

6. Counsel for *Wood* and *Sierra* took a leading role among the attorneys for the Consolidated Cases in a variety of matters. For example, we indexed the body worn camera and TARU footage to help elucidate missing footage; coordinated the review of dozens of CCRB files related to the Mott Haven protest; and led subcommittees to prepare for high-level depositions.

7. Counsel for the *Sierra* and *Wood* plaintiffs also took a lead role on various discovery matters, including successful motions to compel the production of relevant CCRB files, to permit extended depositions of high-level police officials, and to obtain video footage from body worn cameras. *Sierra* and *Wood* Counsel also spent significant time conferring with the City about discovery issues in an effort to obtain discovery without the need for court intervention. For example, Plaintiffs' Counsel were lead on several conferrals with the City about the production of surveillance video footage, ultimately securing the release of Aviation Unit and ARGUS surveillance footage (among other documents) crucial to the investigation of the events that occurred around the Mott Haven protest at the heart of the *Sierra* and *Wood* case. I spent significant time organizing and litigating disputes with Defendants over deposing high-level NYPD officers.

8. Through discovery, Plaintiffs were able to discover the identities of the approximately 320 people who were arrested at the Mott Haven protest and removed in police custody, identified the highest-level NYPD officials who were responsible for planning and overseeing the NYPD's operation in Mott Haven, and identifying critical evidence from within thousands of hours of videos and hundreds of thousands of pages of documents.

9. The Named Plaintiffs were all deposed in 2021, and the *Wood* and *Sierra* teams participated in questioning witnesses in at least 18 depositions of NYPD officers and defendants.

10. Nearly all depositions of Defendants were delayed while the parties litigated disputes over paper discovery and, later, discussed settlement. In late 2022, as the stay of discovery expired and depositions were scheduled to resume, *Sierra* and

*Wood* counsel were actively preparing to take depositions of high-level NYPD officials, until the parties reached a settlement agreement in principle in early December. For example, Mr. Spiegel and I had begun outlining deposition questions for several of the high-level officers we had told counsel for the Consolidated Cases that we would lead.

***The Parties Engaged in Lengthy Settlement Discussions***

11. In December 2021, Defendants requested a settlement demand from the *Sierra-Wood* Plaintiffs, and in September 2022, the parties met with Rebecca Price, the Court's Director of the Alternative Dispute Resolution, for a mediation session.

12. The parties met again in person in October 2022. Present were all five lead attorneys for the *Sierra* and *Wood* Plaintiffs: Douglas Lieb, Rob Rickner, Joshua Moskovitz, Mike Spiegel, and I. Also present were New York Law Department senior attorneys Omar Siddiqi, Genevieve Nelson, and Nadine Ibrahim, and a representative from the New York City Comptroller's office.

13. At that session, we used video footage from protestors, police Aviation and TARU units, police and private surveillance cameras, and police body worn cameras, as well as audio recordings from Department of Investigation and Civilian Complaint Review Board interviews and NYPD radio transmissions, to demonstrate that the NYPD's actions that night were coordinated and approved at the highest levels.

14. The parties continued discussing settlement in the weeks following the in-person session.

15. On December 2, 2022, the parties reached agreement on the principal terms of the settlement. Negotiations continued to resolve the remaining terms of the agreement.

16. The Named Plaintiffs were kept abreast of and provided input into all aspects of these negotiations. We met with them to discuss an initial demand and had continuous discussions throughout the process to obtain authority for subsequent moves. Our clients expressed deep enthusiasm for the settlement agreement.

17. Counsel for Plaintiffs and Defendants signed the Settlement Agreement on February 28, 2023. To date, it is the only class action related to the NYPD's response to the 2020 protests to reach a settlement.

***The Proposed Class***

18. The proposed class consists of the approximately 320 people who were detained and/or subjected to force by police while protesting police brutality on June 4, 2020 in the Mott Haven neighborhood of the Bronx. Excluded from the class are those who entered into an individual release of claims in a settlement agreement with the City that covers the June 4, 2020 arrest.

19. Specifically, the class is defined as "all persons who were detained, arrested, and/or subjected to force by police officers on June 4, 2020, on East 136th Street between Brook Avenue and Brown Place in the Bronx during the "George Floyd protest" in Mott Haven, and all persons who also were given a summons or Desk Appearance Ticket following their arrest at that location." Agr. ¶ 32.

20. Plaintiffs' Counsel have identified nearly all of the proposed class members by reviewing records of summonses and desk appearance tickets given to protestors on June 4, 2020, creating a list of those arrestees, and cross-checking with Defendants that each person's arrest was at the Mott Haven protest and not elsewhere.

21. On information and belief, fewer than 100 proposed class members have already resolved their claims against the City (many for less than $21,000 inclusive of

attorneys' fees). Upon sufficient proof that they have indeed settled their claims, they will not be included in the class.

***Class Notice and Payment Procedure***

22.     The proposed Class Notices are attached as Exhibits A and B to the Settlement Stipulation. The "long form" notice attached at Exhibit A will be mailed to every known class member and posted on a public website (in both English and Spanish); and the "short form" notice attached at Exhibit B will be published in two newspapers, one in English and one in Spanish. Both the long and short form Class Notices contain all the information required by Rule 23(c)(2)(B) and describe the terms of the proposed settlement and provide specific information regarding the date, time, and place of the fairness hearing.

23.     Per the Settlement Stipulation, within fifteen days after the Court preliminarily approves the settlement and certifies the class, the City begin payment to the Claims Administrator and the parties will provide the Claims Administrator information about class members they have gathered.

24.     The Claims Administrator will use that information to mail the Claims Package—the long form Class Notice and Claim Form (both in English and in Spanish)—to the known class members. The Administrator will also establish a website with information on the settlement (including the full Settlement Stipulation and long form Class Notice) and a mechanism for class members to submit a Claim Form online. The short form Class Notice will be published in *The Daily News* and *El Diario*, in English and Spanish respectively.  The Parties have agreed to retain Rust Consulting, Inc., which has extensive experience working as a claims administrator for class actions. Attached as **Exhibit 2** is a declaration filed by the then-Senior Vice President of Rust in *Stinson*

*v. City of New York et al.*, 10 Civ. 4228 (S.D.N.Y.), detailing the company's qualifications.

25. Class members will have 180 days after Preliminary Approval to submit Claim Forms, to opt out of the settlement, or to file an objection to the settlement.

26. Unless there is an appeal of a final approval of the settlement, the Class Administrator will start making payments to class members who have submitted timely and valid Claim Forms 55 days after the Court's final approval order.

27. Finally, the Settlement Stipulation provides that the City will pay Plaintiffs' reasonable attorneys' fees and costs separately, meaning, it will not reduce the amount of payments made to class members. Plaintiffs seek $2,550,000 for the reasonable attorneys' fees and costs incurred to date,[2] plus all additional reasonable fees and costs incurred following this motion. The parties have not yet come to an agreement on this amount, but have agreed to negotiate the amount of reasonable fees and costs in good faith. Whether on agreement or otherwise, Plaintiffs will move this Court for approval of reasonable attorneys' fees and costs, pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), simultaneously with their Motion for Final Approval of the Settlement.

***Plaintiffs' Counsel Are Adequate Class Counsel***

28. For the reasons explained in the following paragraphs and in the accompanying declarations of Joshua S. Moskovitz, Rob Rickner, and Michael Spiegel,

---

[2] Each of Plaintiffs' attorneys has kept contemporaneous time records throughout his/her work on this case. This figure represents the sum of each attorney's hours spent on this matter to date, multiplied by that attorney's regular hourly rate, plus the reasonable costs each attorney has incurred in litigating this matter (for example, for deposition transcripts).

7

Kaufman Lieb Lebowitz & Frick LLP ("KLLF"), Hamilton Clarke, LLP, Rickner PLLC, and Mr. Spiegel are adequate class counsel.

29. KLLF is a six-attorney litigation firm based in New York City focused on civil rights cases. We represent clients across a broad range of civil rights matters, including police abuse and wrongful convictions; employment discrimination and housing discrimination; prison conditions and prisoners' rights; disability discrimination and abuse in group residential settings; and First Amendment issues. We also represent clients in some commercial matters.

30. KLLF was founded in March 2020. Its four founding partners, including Douglas Lieb and myself, all practiced for a combined two decades at Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM," formerly known as Emery Celli Brinckerhoff & Abady LLP) before founding KLLF. ECBAWM is widely recognized as a preeminent civil rights litigation firm in New York and the nation. *See, e.g.*, *Scott v. Quay*, 338 F.R.D. 178, 189 (E.D.N.Y. 2021).

31. KLLF attorneys have served as class counsel in *Betances v. Fischer*, No. 11-CV-3200 (S.D.N.Y.), a complex damages class action arising from DOCCS's unlawful imposition of post-release supervision when not ordered by a Court, and *Saska v. Metropolitan Museum of Art*, Index No. 650775/2013 (Sup. Ct. N.Y. Cty.), a class action arising from the Metropolitan Museum of Art's deceptive practices in charging admission fees inconsistent with local law.

32. Mr. Lieb and I are currently representing a putative class challenging a facially discriminatory New York Department of Corrections and Community Supervision policy barring incarcerated people with mental health disabilities from an

8

early release program. *Caballero v. N.Y. Dep't of Corr. & Cmty. Supervision*, 20 Civ. 1470 (N.D.N.Y.).

### My Experience and Qualifications

33. I graduated from Yale Law School in 2012.

34. Following my graduation, I was the Legal Affairs intern at National Public Radio (NPR), before clerking for the Honorable Anita B. Brody of the United States District Court for the Eastern District of Pennsylvania.

35. I joined ECBAWM as an associate in September 2013 and practiced there until co-founding KLLF in March 2020.

36. I am licensed to practice in New York and New Jersey, and am admitted to the Southern, Eastern, and Northern Districts of New York and the Second Circuit Court of Appeals.

37. I am an active member of the Civil Rights Committees of both the New York City Bar Association and the Federal Bar Association. From approximately 2013-2021, I was an active member of the National Police Accountability Project, an organization made up of hundreds of plaintiffs' attorneys nationwide who work on police misconduct cases to provide training, support, and education on important civil rights matters.

38. At ECBAWM, I worked on dozens of civil rights cases, including multiple cases involving the false arrest and/or use of excessive force by police and corrections officers. In those cases, I was responsible for the day-to-day management of the case, typically leading the drafting of all pleadings and motion papers, reviewing and producing documents, and taking depositions.

9

39. During my six-plus years at ECBAWM, I achieved many successful outcomes in complex civil rights cases involving police and/or prison misconduct. For example, I was the primary attorney on a case resulting in a $750,000 settlement from the City of New York involving a young man who lost his spleen after officers at Rikers Island brutally assaulted him. *Cruz v. City of New York*, No. 15 Civ. 4801 (S.D.N.Y.). I helped secure a $2.5 million settlement from the City of New York on behalf of a man wrongfully convicted for a murder he did not commit, *Fowler v. City of New York*, No. 16 Civ. 6059 (E.D.N.Y.), and $495,000 for a woman whose arm was broken by police officers during an unjustified traffic stop, *Guzi v. City of New York*, 13 Civ. 71711 (E.D.N.Y.).

40. I have taken dozens of depositions and has tried cases to victory. With Mr. Lieb, I tried an excessive force/unlawful search case in the Eastern District of New York that resulted in, among other things, $30,000 in punitive damages based upon an adverse credibility finding against the defendant officers. *Jenkins v. City of New York*, No. 19-CV-557 (E.D.N.Y.). After years of litigation in which I was the primary attorney for the intervenor-plaintiff, I won summary judgment on liability against a cosmetic surgeon who refused to treat a man living with AIDS, in violation of the Americans with Disabilities Act and the New York City Human Rights Law; after a bench trial on damages, the court awarded Plaintiff $125,000, the top end of Tier One emotional distress damages. *United States v. Asare*, 15 Civ. 3556 (S.D.N.Y.).

41. Currently, I represent numerous clients in a variety of civil rights matters, including cases involving police or corrections officer abuse. Along with co-counsel, I am putative class counsel for a proposed class of people who were incarcerated in a privately-run civil immigration detention center that, we allege, coerced detainees to

provide labor in violation of state and federal law. *Yeend, et al. v. Akima Global Services*, 20 Civ. 1281 (N.D.N.Y.). I represent a man whose nose was shattered and whose jaw was dislocated by Rikers Island corrections officers. *Grant v. City of New York*, 22 Civ. 10375 (S.D.N.Y.). I am also counsel for two brothers who were wrongfully incarcerated for a combined 18 years in a wrongful conviction case in the Southern District of West Virginia. *Barnett v. Cabell County Commission et al.*, No. 3:22-CV-203 (S.D. W. Va.).

### Mr. Lieb's Qualifications and Experience[3]

42. Mr. Lieb graduated in 2013 from Yale Law School, where he was elected by my peers as the editor-in-chief of the *Yale Law Journal*.

43. After graduation, Mr. Lieb clerked for Judge Kim McLane Wardlaw on the United States Court of Appeals for the Ninth Circuit and Judge Vernon S. Broderick on the United States District Court for the Southern District of New York.

44. Mr. Lieb joined ECBAWM in October 2015 and practiced there until co-founding KLLF in March 2020.

45. Mr. Lieb is licensed to practice in New York, Connecticut, and California. He is admitted to the Southern, Eastern, and Northern Districts of New York; the U.S. Court of Appeals for the Second Circuit; the Northern District of California; and the United States Court of Federal Claims.

46. Mr. Lieb has extensive experience in complex federal civil rights litigation, with a particular focus on police, jail, and prison misconduct. At ECBAWM, Mr. Lieb had primary day-to-day responsibility in representing four named plaintiffs in

---

[3] Mr. Lieb has reviewed this declaration prior to its filing and has verified the truth and accuracy of the representations about his qualifications and experience contained herein.

*Washington v. City of New York*, No. 18 Civ. 12306 (S.D.N.Y.), a case challenging the systematic transfer of young New York City pretrial detainees ineligible for solitary confinement to the Albany County Jail, where they were beaten and held in solitary. After receiving a 92-page decision from Chief Judge McMahon denying Defendants' motion to dismiss and referring the matter to state and federal prosecutors for investigation, the case resolved for a settlement of approximately $1,000,000 and an agreement not to transfer any additional detainees to Albany and to provide written notice to any detainees transferred to other jails, which Chief Judge McMahon described as an "excellent result," Dkt. #163.

47. Mr. Lieb also had primary day-to-day responsibility for a jail excessive force case that resulted in a settlement of $1,250,000 for an inmate beaten by correction officers, which is the largest single-plaintiff excessive force settlement of which he is aware, after inquiry, in a non-death case arising from misconduct in New York City jails, *Guadalupe v. City of New York*, No. 15 Civ. 220 (S.D.N.Y.), and a malicious prosecution/fabrication of evidence case that resulted in a $725,000 pre-deposition settlement for two years of wrongful pretrial detention, *Mitchell v. Constantino*, 17 Civ. 3328 (S.D.N.Y.).

48. Mr. Lieb currently represent plaintiffs in two wrongful conviction cases in the District of Connecticut arising from a combined 47 years of wrongful incarceration. *Birch v. Town of New Milford*, No. 20 Civ. 1790 (D. Conn.) (co-lead counsel); *Horn v. City of New Haven*, No. 18 Civ. 1502 (D. Conn.). He is lead counsel for two brothers who were wrongfully incarcerated for a combined 18 years in a wrongful conviction case in the Southern District of West Virginia. *Barnett v. Cabell County Commission et al.*, No. 3:22-CV-203 (S.D. W. Va.)*.*

49. In addition to this case, Mr. Lieb is currently lead counsel in prisoners' rights cases involving deficient medical care at a federal prison, *Almonte v. United States of America*, No. 3:21-CV-959 (D. Conn.) and negligent supervision leading to inmate-on-inmate assault in a state prison, *McCollough v. State*, Claim No. 136227 (N.Y. Ct. Claims).

50. Mr. Lieb has tried several cases to favorable verdicts in his legal career. In 2022, he was co-lead counsel in a postconviction trial that resulted in the vacatur of a 28-year old wrongful homicide conviction, in which the court ruled that the petitioner had been denied a fair trial and that newly discovered forensic scientific evidence would likely have changed the outcome. *Carmon v. State*, No. NNH-CV20-6107902, 2022 WL 17423683 (Conn. Super. Ct. Nov. 30, 2022). Together, Mr. Lieb and I tried an unlawful search / false arrest case in the Eastern District of New York that resulted in, among other things, $30,000 in punitive damages based upon an adverse credibility finding against the defendant officers. *Jenkins v. City of New York*, No. 19-CV-557 (E.D.N.Y.). Mr. Lieb also tried two misdemeanor criminal cases resulting in not-guilty verdicts, a trial on damages in a commercial dispute, and a post-conviction trial in a habeas matter in Connecticut.

51. Mr. Lieb has personally taken, as the questioning attorney, at least 100 depositions in police misconduct, jail misconduct, and prison misconduct cases alone, including of supervisory defendants and departmental leadership, firearms examiners, police practices experts, and Rule 30(b)(6) witnesses.

*Conclusion*

52. For the reasons above and explained in detail in the accompanying Memorandum of Law, I respectfully request that the Court so-order the Stipulation of

13

Settlement and appoint KLLF, along with Hamilton Clarke, LLP, Rickner PLLC, and Michael Spiegel, as co-lead class counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 28, 2023
      New York, NY

_____
Alison Frick