

February 10, 2023

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

MEMORANDUM ENDORSED

By Electronic Filing.

    Re:    <u>In re: New York City Policing During Summer 2020 Demonstrations,</u>
               1:20-CV-8924 (CM) (GWG) — This Letter Relates to All Cases

Dear Judge Gorenstein:

    I write on behalf of the *Sow* Plaintiffs in the consolidated case above.[1]  I write to request the Court compel Defendants to take a position.  Plaintiffs also seek a conference under Local Rule 37.2.  At issue here is Defendants' categorical refusal to take any position as to the relevance of certain documents they previously asserted were not relevant — and withheld on that basis.  As explained below, by Plaintiffs' reckoning, it is likely that between 25% and 63% of the many thousands of withheld documents are relevant.[2]

    To the extent Defendants admit that the basis for withholding was wrong,[3] Plaintiffs also seek to have Defendants provide any explanation they intend to provide now, so that the parties can meaningfully confer — rather holding information until Plaintiffs make a motion, and forcing (as has happened many times in this case) multiple rounds of post-motion meet and confers that might have prevented the motion in the first place.  All of the documents seemed clearly relevant to Plaintiffs, and we believe meeting about the tens of thousands of documents Defendants are still withholding would proceed more efficiently if the Court compels Defendants to provide clarity on whether (1) the parties agree Defendants withheld large volumes of responsive material or (2) the dispute is actually about what is relevant to this case.

    Thus, the Court should direct Defendants take a position on whether the specified documents in the appendix to this motion relevant or not.  And if Defendants say they are relevant,

---

[1] Given the very long procedural history, we ask the Court to excuse this overlength letter.
[2] This refusal is particularly problematic because the documents Defendants refuse to take positions on were also part of how Defendants trained their machine learning algorithm.  The algorithm in turn used that "knowledge" of what was relevant and not relevant when reviewing all of the remaining documents to determine relevancy among other issues, and organize what documents no person would ***ever*** review.  That is, the machine algorithm was taught to identify relevant documents as irrelevant in a manner that would ensure systemic errors.
[3] At issue, as explained below, are documents that were withheld and slipsheeted, as they were attachments to relevant documents.  Plaintiffs use "wrong" here to describe the relevance position, since the Court has already determined that the withholding itself was wrong.



Plaintiffs want to understand from Defendants how these documents ended up being withheld — including whether there were issues with Defendants' external review firm, review criteria, or in the quality control process.[4]

## Introduction

Defendants are refusing, once again, to take definite positions in the meet and confer process. That position is slowing down the case, and potentially risks the entire schedule (again), because the implications of the pending discussion (and potential motion) are massive and will require massive work to address.

Based on Plaintiffs' review, the remaining null and affirmatively tagged "non-responsive" set of documents appears likely to contain somewhere between 25% and 63% relevant documents.[5] So, given the history of this case, Plaintiffs have been trying to get to the bottom of *how* Defendants' process went wrong before figuring out whether making the larger motion about Defendants' review process is necessary.[6] But Defendants are — contrary to the Court's repeated direction to "respond immediately and definitively to any attempts by plaintiffs to clarify the City's position on any discovery issue" (Dkt. No. 685) — refusing to take a basic position. Defendants have also indicated that they intend to refuse to discuss anything about the thousands of email attachments improperly withheld as non-responsive in any meet and confer process about their review.

Before entering the substantive meet and confer process what remedies Defendants are willing to accept (and proceeding to a motion if necessary), Plaintiffs need a better understanding of *how* this could have happened. And we believe the Court would be better served if the parties discuss the substance of what has happened now — rather than discussing it for the first time in motion papers. Indeed, discussing it now may prevent the need for a motion, as Defendants positions will help crystalize what remedies would address the issue.

## Background

When Defendants made their email productions, they withheld thousands of documents that were attached to those emails, claiming in slipsheets that the documents were withheld as "non-responsive." *See generally,* Dkt. No. 586 at 4-5. Plaintiffs moved to compel those documents (*id.*). In the motion, Defendants maintained that the documents Plaintiffs had picked out as demonstrating substantive errors were not relevant, but did not explain the position. The Court did not directly reach that question, finding it did not need to dig into the substance to resolve the dispute, because the withholding was not justified regardless of substance.

---

[4] Plaintiffs also note that per the Court's rules, certain material in this letter is redacted, and ask the Court to set a very short date for Defendants to apply to seal that material.

[5] The nuances of that issue are what would be addressed in the meet and confer process (and subsequent motion if necessary), directed at what remedy is appropriate given the facts.

[6] That is, with these positions and information, we believe a meet and confer on the potential substantive remedy would be more fruitful — and might even obviate the need for further motion practice if the parties agree there is a problem and agree on a solution.



Page 2 of 7

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



At that conference, the Court also expressed concern over — and the need to separately address — Defendants' substantive mistakes. The Court directed the parties to confer over how to address the issues, saying "This issue is not dead in my view," and "I want more information before me before I order anything else." 2022-06-30 Tr. 16-22. As the Court explained,

> "I think the City needs to be reasonably forthcoming with the plaintiffs to provide information that will allow them to see what happened here, and I think the responsive, sorry, the documents marked as non-responsive as attachments to emails [will] supply a nice piece of information."

2022-06-30 Tr. at 35:8-16; *see also id.,* at 30:7-18 ("this is why I think it's better for you to get these attachments to the emails because that's more like what we're talking about").

What followed, then, was an attempt to confer on (as the Court suggested) "plaintiffs' being supplied with a very small sample of the documents that … didn't make [the] cut after [Defendants'] process" (*id.* at 34:23-35:3), and an agreement on a sampling methodology. *See, e.g.,* Dkt. No. 809. Plaintiffs have now asked Defendants to produce without restrictions responsive documents from those samples. In addition to the samples, Plaintiffs also reviewed the thousands of documents Defendants affirmative represented were non-responsive and non-relevant from the attachment set — because those document "supply a nice piece of information" (2022-06-30 Tr. at 35:8-16); as to Defendants' process.

This motion concerns not the sampling process at all, but the email attachments Defendants designated non-responsive. On review of those attachments, Plaintiffs believe a full 63% of the attachments were responsive and relevant, while a mere 21% were fairly described as non-responsive. Several hundred documents were of very high importance to Plaintiffs, including among other things:

- Dozens of spreadsheets ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*see, e.g.,* DEF_E_PD_000122205, spreadsheet submitted to Chambers; DEF_E_PD_000122202, submitted in camera/under seal) — that solely consisted of periodically updated lists of BLM protests NYPD was apparently planning enforcement around and the various details those protests;
- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (DEF_000517799, submitted in camera/under seal);
- Many copies of dispersal orders sent to officers to use to disperse protesters (*see, e.g.,* DEF_E_PD_000130844, attached as **Exhibit 2**); and
- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (*see, e.g.,* DEF_000501191, submitted in camera/under seal).

Given this, and what we believe is an obvious need to address how a well-briefed reviewer could

COHEN&GREEN    Page 3 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com



make these calls,[7] Plaintiffs sought to get Defendants' positions on documents they spent time culling as useful and representative examples of what was tagged "non-responsive."

Specifically, Plaintiffs asked — as a condition for agreeing to postpone a meet and confer on the sampling process — that Defendants clarify as to a list of specific documents "(1) whether they are still asserting the documents are 'non-responsive' or 'non-relevant' and (2) if not, explaining how these documents came to be marked non-responsive (including whether the specific document was subject to quality control)." **Exhibit 1** at 4. Plaintiffs also said, in this November email, "if the City is not willing to provide this information, by the same time, please provide two or three proposed times to meet and confer early next week." *Id*. And Plaintiffs asked that Defendants "let us know by close of business on November 25" if they were objecting. *Id*. Defendants never objected, and indeed, seeming to commit to providing the information, Defendants' counsel said, in response to the email asking to confirm if Defendants objected, "I believe that the meet and confer is no longer necessary." Ex. 1 at 1. Plaintiffs sought to confirm the agreement, *again* asking that Defendants confirm the date they were proposing for samples "also comes with a version of the other information in [our] email," stating if that was true, "we're in agreement." *Id*. Defendants never clarified, and given the sheer number of times we'd asked to confirm, Plaintiffs assumed there was an agreement.[8]

The parties ultimately conferred on December 15, 2022.[9] That meeting lasted for approximately an hour. At that meeting, Defendants walked back the commitment and instead refused to provide positions as to the relevance of the documents. Instead, Defendants insisted that *only* the sampling process was relevant — despite the negligible burden of simply taking an up or down position on the relevance of (obviously relevant) documents. Nor, relative to that position, is there any burden in stating whether the documents were quality controlled by the Law Department's case team. Plaintiffs stated there was an impasse, and followed up in writing asking Defendants to confirm they were genuinely refusing to take a position. Defendants did so, but also objected to a summary that stated, "the City refused to take any position at all as to whether it was genuinely asserting specified documents in the attachments it designated as 'NR' were non-responsive, or provide any explanation whatsoever for how those documents ended up designated 'NR.'"

## Discussion

The Court has been beyond clear throughout this case that "the City should respond

---

[7] This is particularly important, given the snowball effects these calls would have, given Defendants' use of machine learning, and the fact that the machine appears to have been trained that the documents above were *not* relevant.
[8] In a later message, Plaintiffs acknowledged we "understand there were some miscommunications in the process of setting up this meeting, which seems to be a major reason we're on different starting pages here." But that is not to say Defendants' misunderstanding was reasonable — quite the opposite. And as explained below, given the likelihood the Court would send the parties back to discuss if they do not reach final positions on examples in the papers, Plaintiffs believe this application is necessary to save everyone time.
[9] In attendance for Plaintiffs were myself, Travis England, Lois Saldana, and Regina Yu; for Defendants were Sergey Marts, Rachel Kaufman, Anthony DiSenso, Jenny Weng.

 Page 4 of 7

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com

Case 1:20-cv-08924-CM   Document 848   Filed 02/00/23   Page 5 of 7



immediately and definitively to any attempts by plaintiffs to clarify the City's position on any discovery issue." Dkt. No. 685. The fact that the "City is not giving definitive positions on things" is, as the Court has observed, "part of the reason … that we need so much meeting and conferring." 2022-02-11 Tr. at 56:12-20. The Court also stringently enforces its rules, such that even when the City categorically refuses to provide basic information, the parties must still — following briefing — go back to the meet and confer process. Plaintiffs make this motion in part because that trend has been escalating, and the attorneys the City sends to meet and confers are repeatedly refusing to answer questions about what makes a request burdensome, to follow up with actual NYPD personnel about information, or to answer basic questions about the Law Department's process when there are significant indications something merits inquiry.

In this instance, the Court has already explained that the document Defendants intentionally withheld claiming they were non-responsive would be "a nice piece of information" that would "allow [Plaintiffs] to see what happened here." 2022-06-30 Tr. at 35:8-16. And understanding what Defendants' position — that is, whether they are genuinely asserting these carefully selected, representative documents are non-responsive or whether the City is admitting a mistake was made — is critical in the main remaining task: "know[ing] what the solutions will be if we find it" is true that Defendants productions show systemic withholding of responsive documents. 2022-06-30 Tr. at 35:6-16. Obviously, the solution would be profoundly different if it just happens that a handful of Defendants' external reviewers was tagging everything "non-responsive" (unlikely, given the 63% error rate) vs. if it turns out the case team (which included, at the time, an attorney that forged documents to cover up mistakes in this case) was affirmatively saying these obviously responsive documents were not.

The burden of simply taking positions on a handful of documents and providing — depending on the position — basic historical information about who handled the document is negligible. And ordering Defendants to produce information that they clearly let Plaintiffs believe would be produced is appropriate. *Accord, e.g.,* 2022-04-12 Tr. 30:7-33:18; 73:9-16 (the Court criticizing Defendants' failure to object to a summary of a commitment in writing, saying, "It can't be a recollection because it's in writing. You don't have to recollect anything. All you have to do is read it.").

### Conclusion

Thus, Plaintiffs ask for the Court to direct Defendants to take a position on the relevance of the documents listed in Exhibit 1 (also listed in the appendix hereto), as well as state whether any of these documents were quality controlled by the case team. And if Defendants agree any documents are relevant, Plaintiffs ask the Court to direct Defendants to provide any explanation they have for how these documents ended up being withheld — including whether there were issues with Defendants' external review firm, review criteria, or in the quality control process.

As ever, we thank the Court for its continued time and attention.

COHEN&GREEN   Page 5 of 7

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com



        Respectfully submitted,

        /s/
        _____

        J. Remy Green
           *Honorific/Pronouns: Mx., they/their/them*
        **COHEN&GREEN P.L.L.C.**
        *Attorneys for Sow Plaintiffs*
        1639 Centre St., Suite 216
        Ridgewood, New York 11385

cc:
All relevant parties by electronic filing.

The Court is not convinced that whatever flaws the <u>Sow</u> plaintiffs perceive as inhering in the document production process justifiy requiring the City to take the "position" demanded in this letter as to the particular documents listed. Any testing of the City's document production process should be done through a random sampling of unproduced documents, which the Court understands has already occurred, and not based on particular withholdings that were done in the past. This letter reflects an effort to obtain information that does not relate to a sampling process, and thus the Court will not require the City to respond to the request for that information.

So Ordered

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

    March 7, 2023

COHEN&GREEN     Page 6 of 7

Cohen&Green P.L.L.C. · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385 · t: (929) 888.9480 · f: (929) 888.9457 · FemmeLaw.com



# APPENDIX:  List of Documents

- DEF_E_PD_000131831;
- DEF_E_PD_000122664;
- DEF_E_PD_000130174;
- DEF_E_PD000122220
- DEF_E_PD_000122197;
- DEF_E_PD_000122201;
- DEF_E_PD_000122205;
- DEF_E_PD_000122209;
- DEF_E_PD_000122213;
- DEF_E_PD_000130575;
- DEF_E_000055797
- DEF_E_PD_000121769;
- DEF_E_PD_000121580
- DEF_000518366;
- DEF_E_PD_000127889;
- DEF_E_000057519;
- DEF_E_000132831;
- DEF_E_PD000131017;
- DEF_E_PD_000121789;
- DEF_E_PD_000121903
- DEF_E_PD_000122160
- DEF_E_PD_000122457;
- DEF_E_PD_000124934;
- DEF_E_PD_000126320;
- DEF_E_PD_000129918;
- DEF_E_PD_000130722;
- DEF_E_PD_000130851;
- DEF_E_PD_000136288;
- DEF-E_000057786

Cohen&Green P.L.L.C.  ·  1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  ·  t : (929) 888.9480  ·  f : (929) 888.9457  ·  FemmeLaw.com