# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In Re: New York City Policing
During Summer 2020 Demonstrations

This filing is related to:

ALL CASES

20 Civ. 8924 (CM)(GWG)

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW TO PRECLUDE DEFENDANTS' RELIANCE ON MATERIAL WITHHELD ON LAW ENFORCEMENT INVESTIGATIVE PRIVILEGE GROUNDS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

   I.  Factual Background ......................................................................................................... 2

  II.  Procedural History ......................................................................................................... 6

ARGUMENT .............................................................................................................................. 10

   I.  THE COURT SHOULD PRECLUDE DEFENDANTS FROM RELYING UPON ANY
      OTHERWISE UNAVAILABLE FACTS CONTAINED IN THE WITHELD
      DOCUMENTS ......................................................................................................... 10

CONCLUSION ........................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Recs. LLC v. Lime Grp. LLC*, No. 06-CV-5936, 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011) ............................................................................................................................. 11

*Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 257 F. Supp. 2d 751 (S.D.N.Y. 2003) .................... 10, 15

*In re Buspirone Antitrust Litig.*, 208 F.R.D. 516 (S.D.N.Y. 2002)................................................ 15

*In re The City of New York*, 607 F.3d 923 (2d Cir. 2010) ...................................................... 10, 11

*John Doe Co. v. United States*, 350 F.3d 299 (2d Cir. 2003) ...................................................... 10

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991)........................................................... 16

## INTRODUCTION

Plaintiffs in these consolidated actions challenge the constitutionality of Defendants' response to the protests in the wake of George Floyd's death.  Specifically, Plaintiffs have asserted claims that Defendants used excessive force, made false arrests, and suppressed the First Amendment rights of protestors and journalists. For the past three years, Defendants consistently have defended their actions as justified by purportedly "credible" threats of harm to the safety of officers, the public and property. Yet Defendants have invoked the law enforcement investigative privilege to withhold key documents about several purported incidents giving rise to their belief that the protests themselves posed those risks. *See generally* Answer, Dkt. 202 ¶ 242 (raising the affirmative defense that "[t]o the extent any force was used, such force was reasonable, justified, and necessary to accomplish official duties and to protect the officers' own physical safety and the safety of others"). Defendants seek to use this alleged credible intelligence as both a sword and a shield, asserting that they have such intelligence but denying Plaintiffs access to the documents containing it. This is improper and undermines the adversary system the discovery rules are intended to protect.

Plaintiffs respectfully move for a Court order precluding Defendants from relying—whether directly or through witness testimony—on any otherwise-unavailable factual information that is redacted or contained in documents that have been wholly withheld from production to Plaintiffs on the ground that such information is protected by the law enforcement investigative privilege.

1

## BACKGROUND

### I.      Factual Background

This consolidated litigation currently comprises five civil rights actions against the City of New York and certain City and New York City Police Department ("NYPD") leadership and personnel, alleging that Defendants have, *inter alia*, engaged in unconstitutional conduct in response to social justice protests throughout New York City.  *See generally* original and Amended Complaints in *Payne v. De Blasio,* 20 Civ. 8924 (Dkt. 54); *People of the State of New York v. City of New York*, No. 21 Civ. 322 ("*People*") (Dkt. 51); *Sow, v. City of New York*, 21 Civ. 533 ("*Sow*") (Dkt. 49); *Gray v. City of New York*, 21 Civ. 6610 (Dkt. 124); and *Rolon v. City of New York*, 21 Civ. 2548 (Dkt. 43). Plaintiffs allege that Defendants used excessive force against protestors, unlawfully seized individuals attending protests by restricting their ability to leave a confined area, and retaliated against individuals who lawfully exercised their First Amendment right to criticize police conduct.

At the time, Defendants claimed that a strong and forceful response to the protests was necessary because intelligence they gathered and the arrests of people who they described as affiliated with the protests caused them to believe that the protests posed a threat to public and officer safety. For example, just prior to a June 4, 2020 protest scheduled to take place at "the Hub"—a commercial district in the Bronx—then Commissioner Dermot Shea held a press conference citing, among other purported threats, the NYPD's recovery of weapons and "clear plans to do violence" from "protestors." Ex. A[1] (DEF-E_000053395–97 at -95, Tr. of Dermot Shea Remarks (June 4, 2020), *also available at* https://www.pscp.tv/w/1mnxeQNvjmLxX ("We have arrested people with weapons — one, five minutes ago, a loaded firearm on a protest or in

---

[1] All exhibits cited herein are attached to the Declaration of Lillian M. Marquez.

the Bronx, at a lawful protest with an unlawful actor.")).[2] Defendant Mayor Bill de Blasio

repeated this claim the following day. Ex. B (DEF-E_000032191–98, Tr., *Mayor De Blasio*

*Appears Live on the Brian Lehrer Show*, WNYC (June 5, 2020) ("[T]he NYPD recovered

gasoline canisters on protesters, weapons, and clear plans to do violence in that context is very,

very dangerous to not address that.")).

   Defendants also sought to connect various commercial burglaries and property crimes,

including the looting of commercial districts in Manhattan and the Bronx, to protest organizers,

again citing purported intelligence and information available to them. *See, e.g.*, Ex. C

(DEF_000287244–329 at -7302–03, Tr. of New York City Department of Investigation ("DOI")

Interview of Harry Wedin (Sep. 2, 2020) ("I headed up to the Bronx at about 5:30 to the 40

precinct. The tactical meeting regarding demon—Intel—demonstrators looking to loot—to loot

and damage over the hub area up in the Bronx, 138 in Grand Concourse. It's an anarchist group[]

going up there, they planned on destroying all the stores. They did that a few days prior, there

was a lot of damage at the Bronx. The whole shopping district up there. The same group

again.")).

   The NYPD repeated this justification throughout the summer. Testifying before the New

York State Attorney General, Commissioner Shea made claims about the threats purportedly

posed by protestors in explaining the NYPD's kettling and mass arrest of peaceful protesters at

Mott Haven. *See* Ex. D (OAG-0001053–54 at -54, Statement of Police Commissioner Dermot

Shea for NYS Attorney General's Public Hearing on Police and Public Interactions During

---

[2] Although the press conference held by Commissioner Shea was public, the transcript of the press conference was produced by Defendants as part of a longer email thread with a "confidentiality" designation, and accordingly is not appended to this motion. Therefore, Plaintiffs have submitted a placeholder Exhibit (Ex. A), and are emailing the full document to Chambers. Per the Court's Practice 2(E), Defendants must now make an application to seal this document.

Protests (June 22, 2020) ("On Thursday, June 4th, the Bronx played host to a 'F--k the Police

Rally.' Social media invites to this event encouraged injuring police officers and looting,

resisting arrest and fire-bombing police vehicles. Invites also encouraged local gangs to converge

on the event site to harm police and destroy property. The Department *recovered a firearm*,

gasoline canisters, lighter fluid, hammers, spray paint, fireworks, and other incendiary devices

*from participants*.") (emphases added)). Similarly, Chief of Department Terence Monahan told

investigators from the DOI that NYPD-gathered intelligence helped "shape . . . how big a

response" the NYPD might need at certain protest locations. *See* Ex. E (Tr. of DOI Interview of

Terence Monahan, Oct. 28, 2020, DEF_000286986 at -7027 ("Intel would be -- would shape it

by how big a response we may need to a location. So if we got information that there was going

to be a problem at -- at a certain location, we would have a bigger response to that location, and

we would be more aware or more keen of what's going on. And it could determine how lenient

we were or weren't in the course of a demonstration.")).

      Other high-level NYPD executives concurred that alleged intel about the potential for

violence—both in the context of protests at other cities as well as in New York City—influenced

their planning for or communications about the NYPD's protest response. *See* Ex. E

(DEF_000286986 at -7029, DOI Monahan Tr.) ("A lot of the intelligence was tactics that had

been utilized throughout the country, whether it's a de-a-- de-arresting tactics that we had seen,

different objects that were being thrown, the idea of hiding bricks along a route that a march was

going to go. This was so our cops would have a knowledge to look for these sort of things when

they were out there, so it was incumbent upon our supervisors to relay this to the cops."); Ex. F

(DEF_000287090, at -7122, Tr. of DOI Interview of Kenneth Lehr (Nov. 17, 2020) ("So, we

have the experience of June 1st on Fordham Road, then we have the recovery of the contraband

4

in the form of bricks and broken cinder blocks, then we have the firearm recovered, we have the gasoline recovered. We have all the intel glorifying fires and burning stuff down. So, that's what we had going into June 4th. Basically, substantiated levels of incremental -- substantiation of all the threats and promises that people who have violent histories or organizations, not everybody, but people -- there were people in that group that clearly were committed to causing destruction in the South Bronx . . . . And it's the Police Department's responsibility to try and prevent that.")).

NYPD leadership also represented to the DOI that it relied upon specific evidence to plan the response to the FTP protest in the Bronx on June 4, 2020, namely (1) "a vehicle stop near the planned protest location and found hammers, fireworks, and lighter fluid; evidence indicated that the vehicle occupants had been attending protests"; (2) the arrest of two men "after a search of their vehicle uncovered, among other items, knives, two bricks, one power saw, and two bottles of fuel injector," and (3) the recovery of "a firearm from an alleged gang member during a vehicle stop near the planned protest location prior to the start of the Mott Haven protest." Ex. G (DOI, Investigation into NYPD Response to the George Floyd Protests (Dec. 2020)) at 54–55. The DOI agreed that "NYPD did have actionable intelligence that indicated the serious potential for violence and looting by some participants to occur at, or arise out of, the Mott Haven protest," but noted that "[t]he force required to carry out a mass arrest was disproportionate to the identified threat, placed the burden of potential crime on a wide swath of people who had no apparent connection to that potential criminal activity . . . ." *Id*. at 56.

However, as set out further below, Plaintiffs cannot locate credible materials in the disclosed documents that substantiate the threats purportedly posed by the protests, nor, it seems,

can Defendants.[3] Nevertheless, Defendants have verbally committed to confining proof of their intelligence claims to only the discovery Plaintiffs have had access to. That commitment should be codified in an order.

## II.    Procedural History

Defendants have fully withheld approximately 250 NYPD documents in discovery based on the law enforcement investigative privilege, nearly half of all documents they fully withheld on privilege grounds.[4] On December 7, 2022, Plaintiffs moved to compel the production of several categories of these documents, including (1) Daily Intel briefings supplied by the MTA to the NYPD and NYPD-authored Daily Terrorism briefings; (2) protest-related intel contained in emails described as "Officer Safety and Intel Gathering"; and (3) protest-related intel described as "Undercover officer / CI leads." Dkt. 774.

Plaintiffs argued that, even assuming the law enforcement investigative privilege applied to the challenged documents, that the documents contained information that Defendants had placed "at issue" in this litigation, and that were essential to Plaintiffs' claims that Defendants used unreasonable force in response to protests—force that was disproportionate to the known risks to public and officer safety. Plaintiffs further requested, "[s]hould the Court uphold Defendants' claim of privilege with respect to these documents, Plaintiffs respectfully request

---

[3] When asked to identify the type of intelligence Defendants would rely upon for their defense, in lieu of the withheld intelligence, Defendants' counsel could cite (vaguely) only testimony. Ex. H, 2/13/23 Telephone Conf. Tr. at 30:20–33:6. Plaintiffs also note that Defendants have elsewhere failed to point to specific intelligence supporting their conduct. For example, in addressing the ten protest locations in the *Sow* supplemental discovery request that sought, among other things, "all intelligence reports created prior to, during or after each protest" (ECF No. 700-3 at 10–11), Defendants pointed in the general direction of volumes that contained 28,425 individual documents. ECF No. 700 at 7.

[4] The Court previously granted Defendants' request for a reprieve of privilege-logging requirements for redaction of privileged material. *See* Dkt. 535. Approximately 6,540 documents in Defendants' NYPD production have LEP redactions.

that Defendants be precluded from relying on any specific incident described in any withheld document as part of their defense." Dkt. 774 at 5.

In their opposition to Plaintiffs' motion, Defendants represented that the information contained in the Daily Intel briefs "provides very little, if anything at all, concerning NYPD's response to the Summer 2020 protests or NYPD's policing policies." Dkt. 794 at 7. Defendants further argued that "their invocation of privilege does not preclude them from raising affirmative defenses because the documents being withheld on privilege grounds are not being used to support those defenses." Dkt. 794 at 7. At oral argument, Plaintiffs argued that it would be unfair to permit Defendants to cite to factual evidence contained in law enforcement sensitive documents to justify their protest response, while simultaneously asserting the law enforcement investigative privilege to shield those documents from being assessed for credibility and reliability. Ex. H (2/13/2023 Tr.) at 29:13–30:8, 33:18–34:14. Counsel for Defendants again stated that "we would not be relying on" any of the documents "that are subject to privilege in this case." *Id.* at 34:16–17; *see also id.* at 31:18-32:16 (THE COURT: "I'm just now going back, you know, to some of the other documents that had some specific intelligence. I mean obviously the City is not going to be able to use those documents in any way. I assume that's understood at a minimum. MR. SCUTERO: Yeah, that's – yes. And the City was not planning on using those documents, Judge, since they don't -- THE COURT: So what are they going to use -- MR. SCUTERO: -- no relevance –").

During this teleconference, the Court deferred ruling on whether Defendants should be precluded from relying on the contents of the withheld material, explaining:

> I think the way we're going to have to leave this is if in questioning any [NYPD witnesses] about the basis for their, you know, policing activities, if they're relying on some intelligence reports and it's determined that, in fact, the plaintiffs weren't provided with

> whatever that information was, I think that would be the time to
> come immediately back to me and see if at that point there's a basis
> for getting (indiscernible) preclusion or something else. . . . So I'm
> going to adhere to my rulings on the law enforcement privilege, and
> if something comes up in the future depositions that suggests there's
> an unfairness, I'm ready to hear it.

*Id*. at 35:19–36:8.

Following oral argument, Plaintiffs requested that the Court conduct *in camera* review of

four additional LEP-withheld documents, including one email regarding a "metal object"

(DMNL00251_ 000159162), another email regarding a "social media post," (DMNL00251_

000177794) and a third regarding threats to NYPD "RMPs," *i.e.* vehicles

(DMNL00251_000197116). Dkt. 866 at 1–2. Plaintiffs argued that they "are entitled to test the

credibility of the NYPD's intelligence regarding the possible presence of dangerous objects at or

near protest locations," and that "Defendants should not be permitted to disclose only the

documents favorable to them—*i.e.,* the most credible intel—while withholding unfavorable

documents—*i.e.,* the less credible intel—on the ground that they do not intend to rely on those

documents to make their case." *Id*.  Plaintiffs also renewed their request, initially raised in their

December 7 letter motion, that should the Court decline to compel production of the withheld

documents, that the Court preclude Defendants from relying either on the specific content of

withheld documents, or on the broader subject matter of the documents. *Id*.

The Court granted Plaintiffs' request to review the four documents *in camera* and ordered

Defendants to respond and provide copies of the documents. The Court also denied Plaintiffs'

request to preclude Defendants' reliance on the contents or subject matter of the withheld

material, and ruled that "plaintiffs are free to raise the preclusion issue in a letter that fully

describes their argument or that seeks a briefing schedule on the issue," and that "plaintiffs have

leave to defer raising the issue until the beginning of the expert discovery period as it does not

appear to be necessary to obtain an immediate ruling." Dkt. 869. Plaintiffs did not seek a briefing schedule on the issue at the time because the depositions of higher-level witnesses had not yet begun, and the question of the full extent of Defendants' intent to rely on withheld material would likely not be fully evident until the beginning of the expert discovery period.

Defendants responded to Plaintiffs' request to compel production of the four LEP-withheld documents and once again took the position that withholding protest-related intel material on LEP grounds would not be fundamentally unfair to Plaintiffs because the documents "either provide little evidence to test the credibility of Defendants' defenses or relate negligibly, if at all, to the specific protests Plaintiffs seek information about." Dkt. 878 at 2. Defendants also noted, with respect to the "metal object" email (-59162) that "this document provides virtually no probative value to Plaintiffs' claims and—with unequivocal certainty—does not place credibility of any of Defendants' defenses in question." *Id*. Defendants explained, "Rather, it would bolster Defendants' defense if this document were disclosed." *Id*.

The Court declined Plaintiffs' application to compel production of the four additional LEP-withheld documents, reconsidered the deadline for Plaintiffs to move to preclude Defendants from relying on the contents or related subject matter of the withheld documents, and advanced the deadline for any such motion to March 28, 2023, a deadline the parties agreed to extend. Dkts. 897, 911. Plaintiffs now bring this motion and narrow the request for relief to precluding Defendants from relying on any otherwise-unavailable factual information that has been redacted from discovery or contained in documents that are presently being withheld from production to Plaintiffs on the ground that such information is protected by the law enforcement investigative privilege.

**ARGUMENT**

## I.     THE COURT SHOULD PRECLUDE DEFENDANTS FROM RELYING UPON ANY OTHERWISE-UNAVAILABLE FACTS CONTAINED IN THE WITHELD INFORMATION OR DOCUMENTS.

Defendants have repeatedly asserted that there is credible intelligence that justified the NYPD's aggressive response to the 2020-2021 social justice protests, yet they also have withheld key intelligence documents under the law enforcement privilege preventing Plaintiffs from fully assessing the credibility of these claims. It is well established that "a party cannot use materials as a 'sword' in its defense while using privileges attaching to materials relied upon for that defense as a 'shield.'" *In re The City of New York*, 607 F.3d 923, 946–47 (2d Cir. 2010) (citing *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003)). Defendants' attempt to use intelligence as a sword and a shield here is improper.  At this time, Plaintiffs do not seek preclusion of Defendants' affirmative defense or their argument that use of force was justified based on the intel known to them, but simply an order precluding Defendants from citing or relying—whether directly or through witness testimony—on facts that are redacted or contained in the withheld documents that Plaintiffs will not have the ability to test or challenge.

The sword and shield principle is rooted in "considerations of fairness to the party's adversary" and recognizes that "in certain circumstances a party's assertion of factual claims can . . . result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." *John Doe Co.*, 350 F.3d at 302. A parallel principle recognizes that where factual material is withheld on the basis of privilege, then those same fairness considerations preclude a party from relying on the withheld material. *See Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 257 F. Supp. 2d 751, 761 (S.D.N.Y. 2003) (addressing motions to exclude evidence where Defendants' motivations for entering into a prior Consent Order were at issue, and ruling "to the extent that

Defendants have withheld facts from discovery that relate to the Consent Order, they will not be allowed to introduce such facts in any form at trial"); *see also Arista Recs. LLC v. Lime Grp. LLC*, No. 06-CV-5936, 2011 WL 1642434, at \*3 (S.D.N.Y. Apr. 20, 2011) (precluding Defendants from "offering evidence or argument at trial regarding their purported belief in the lawfulness of their conduct," finding that "it would be unfair for a party asserting contentions [of good faith] to then rely on its privileges to deprive its adversary of access to material that might disprove or undermine the party's contentions").

In *City of New York*, the Second Circuit declined to find that the Defendant City of New York had forfeited or waived the law enforcement investigative privilege over withheld "Field Reports"—intelligence gathered in advance of the Republican National Convention—because the City "has expressly disavowed reliance on the information contained in the Field Reports to support its claim that there was a substantial risk of mayhem during the RNC," and therefore was not intending to use those reports "as a 'sword.'" 607 F.3d at 947. Here, Defendants similarly purport to disclaim—through representations made in Court filings and in oral argument— reliance on certain information contained in LEP-withheld documents. Plaintiffs request that the Court codify this disclaimer through an order precluding Defendants from citing, as a defense against any of Plaintiffs' claims in this litigation, otherwise-unavailable facts or information contained in withheld material.

At this point in the parties' discovery, despite production of much intel-related material, Defendants have offered only statements made by witnesses during depositions—the credibility of which is yet to be tested—as support for the NYPD's claims that it had reliable intel suggesting that protests posed a threat to public or officer safety. For example, documentary evidence remains elusive or sparse for:

- Claims that the FTP protest expected to take place at East 149th Street and Third Avenue in the Bronx ("the Hub") was organized by the same group that was responsible for looting another Bronx commercial district several nights earlier;

- Claims that an individual arrested for unlawful possession of a firearm at 5:20 pm at the Hub—the expected site of an FTP protest at 6:30 pm—was a "protestor" or otherwise planning to attend the FTP protest;

- Claims that two car stops that took place in New York City on June 4, 2020, led to the arrest of individuals who admitted to being on their way to a protest in the Bronx with the intent to use "accelerants" and tools found in the cars as weapons;

- General claims that individuals stopped on their way to attend protests were found to be carrying tools or equipment intended to be used as weapons; and

- Claims that rocks, bricks, and cinderblocks were being staged at or near common protest locations throughout the City by protest organizers, to facilitate their use as weapons during the protests.

Although Defendants have produced numerous intelligence-related documents, they contain extensive law enforcement privilege redactions, and approximately 250 documents remain wholly withheld on such grounds. And though many appear to relate to the subject matter of Defendants' claims, the interest of fairness dictates that the withheld information be treated as an evidentiary nullity—as if it does not exist. For example,[5] Defendants have redacted both the subject lines and attachment names of 110 emails or attachments to or from Chief Galati and/or Chief Monahan, describing these only as "Undercover Officers/CI Leads" or "Officer Safety and Intel Gathering." *See* Dkt. 774, Section II.C.iii. Chief Monahan explained in his interview with DOI that he spoke with Chief Galati on a daily basis to obtain relevant and timely intel, and then passed that intel on to NYPD operational leadership who passed it on to lower-tier leaders. *See* Ex. E at DEF_000286994 ("We all talk. We all call. Calling back and forth to one another, making sure that if Tommy Galati gave me information about something that was going to be

---

[5] All of the examples above are given for illustrative purposes and are not intended to be an exhaustive documentation of what Defendants are redacting or withholding on law enforcement investigative privilege grounds.

happening in Brooklyn North, then I'm reaching out to Jeff Maddrey and Fausto Pichardo, making sure they have that same information, Eddie Mullane in Operations has it too, and that he is disbursing it to all the field commanders."). Plaintiffs cannot assess or test the credibility of any threats that those withheld communications may have included, so Defendants should not be allowed to rely on that evidence—either through the document itself, or through testimony by those or other NYPD members of service—in defending against Plaintiffs' claims.

Similarly, Defendants have withheld an email dated June 5, 2020, sent to the commanding officer of the 40th precinct, one day following the June 4 Mott Haven protest, with the subject "Re: Gun Arrest-confines of the 40 Pct-Protest related."  This email likely concerns an arrest for gun possession made at 5:20 pm the day before, one hour prior to the anticipated start time for the FTP protest scheduled to take place at East 149th street and Third Avenue in the 40th precinct. Although this arrest for unlawful possession of a firearm has been extensively cited by the NYPD in the press just prior to and the day after the protest as evidence that the Bronx protest was expected to be violent, Defendants have not produced any documentary evidence corroborating that assertion. This may mean either that such evidence simply does not exist, or that it exists but is being withheld. If the evidence exists but is being withheld, in the interest of fairness, Defendants should not be permitted to rely on testimony citing those documents, either during summary judgment proceedings or at trial, without providing Plaintiffs with an opportunity to test the credibility and reliability of that evidence.

Defendants also withheld an email sent on June 3, 2020, at 8:42 pm, from Chief Galati to Chief Monahan and Chief Pichardo, with the subject "Metal Object," on the ground that it contained information provided by a confidential source. Plaintiffs moved for production of this document on the basis that they were "entitled to test the credibility of the NYPD's intelligence

regarding the possible presence of dangerous objects at or near protest locations." Dkt. 866 at 1. Defendants responded by assuring the Court that "Plaintiffs can rest assured that—in the case of this particular email chain—Defendants are withholding a document that reinforces the proposition that dangerous objects were present during protests," and that it "would bolster Defendants' defense if this document were disclosed." Dkt. 878 at 2. But, at that time, Defendants did not disclaim their intent to rely on the contents of that particular email, and Plaintiffs are not able to view this specific email chain to evaluate for themselves whether the withheld material actually undermines or impeaches the more general proposition that any dangerous objects found near protest locations were necessarily protest-related. This unilateral assertion that relied-upon evidence is both credible and relevant to Defendants' defenses undermines the very adversary system the discovery rules create. Defendants have since disclaimed their intent to rely on withheld material but should not be given the opportunity to backtrack from that disclaimer. The Court should, therefore, order them precluded from citing the withheld material—such as the specific intel about the metal object that was the subject of the withheld email—to claim that their protest response was proportionate and reasonable.

Finally, Defendants describe withheld MTA-generated Daily Intel Briefs, and NYPD-authored Daily Terrorism Briefs as "compilations of highly sensitive intelligence discussing, describing, analyzing, and assessing threats, sources, events, and news stories relating to terrorism, foreign adversaries, and counterintelligence." Dkt. 794 at 5. While Defendants now claim that "[t]his information provides very little, if anything at all, concerning NYPD's response to the Summer 2020 protests or NYPD's policing policies," the NYPD has taken a different position in the past, claiming that evidence that protests in other cities experienced disorder or violence informed its own response to protests in New York City. *See, e.g.*, Ex. E at

DEF_000287028 ("You know, we had information -- as you looked around the country, similar

tactics were used in New York that were used elsewhere. So we -we believed and -- and from

Intel that there was sources out there that was sharing information between what was happening

in Portland, what was happening in Seattle, what was happening throughout the country,

[coughs] excuse me, and New York."). Intel about potential terrorist threats at protests, as well as

information about violence and terrorist activity in other cities deemed relevant by the

Intelligence Bureau was disseminated internally at NYPD through the Daily Terrorism Briefs. In

light of Defendants' current position that the content of the Daily Terrorism briefs are of little

relevance to Plaintiffs' claims, the Court should preclude Defendants from citing to testimony by

any member of NYPD on the content of those communications in formulating their protest

response.

Further, given the close nexus between the subject matter of certain withheld materials

and of Defendants' claims that the use of force at protests was justified, combined with the

apparent lack of concrete intelligence supporting those claims, in the interest of fairness, the

Court should preclude Defendants from claiming that it had evidence of threats posed at or by

protests or protestors, to the extent any of that evidence is contained within LEP-withheld or

redacted documents. *See Cary Oil Co.*, 257 F. Supp. 2d at 761 (addressing motions in limine and

noting "the Court is prepared to exclude any testimony or evidentiary presentations by the

Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during

discovery based on attorney-client privilege"); *In re Buspirone Antitrust Litig.*, 208 F.R.D. 516,

522 (S.D.N.Y. 2002) (requiring defendant to elect, prior to the completion of fact discovery,

whether to assert a good faith and/or reliance on counsel defense and noting "a party must

disclose during the discovery period whether it intends to rely on factual assertions or

corresponding defenses that would require a waiver of the attorney-client privilege"); *see also United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991) ('[C]ourts cannot sanction the use of the [attorney-client] privilege to prevent effective cross-examination on matters reasonably related to those introduced in direct examination"). Although the parties are still in the midst of discovery and the full scope of and need for this preclusion order may not become fully apparent until the parties enter summary judgment or pre-trial briefings, at this point in the litigation this order should extend to preclude the Court, at the summary judgment stage, and the fact-finder, at trial, from considering (1) argument that cites to or relies on facts that are redacted or documented only in withheld documents; (2) testimony by any witness that cites or references redacted or withheld documents, or that cites or references facts that exist only within those redactions or documents; and (3) the redacted information or withheld documents itself.

## CONCLUSION

For these reasons, the Court should preclude Defendants relying—whether directly or through witness testimony—on any otherwise-unavailable factual information that is redacted or contained in wholly-withheld documents on the ground that such information is protected by the law enforcement investigative privilege.

Dated: April 11, 2023
    New York, New York           Respectfully submitted,

                                  LETITIA JAMES
                                  *Attorney General of the State of New York*

                                  By: */s/ Lillian Marquez*
                                  Lillian Marquez, *Assistant Attorney General*
                                  Office of the New York State Attorney General
                                  28 Liberty Street, 20th Floor
                                  New York, NY 10005
                                  (212) 416-8250
                                  Lillian.Marquez@ag.ny.gov

*Counsel for Plaintiff in People of the State of New York v. City of New York, No. 21-cv-322*

**BELDOCK LEVINE & HOFFMAN LLP**

By: _____
    Jonathan C. Moore
    David B. Rankin
    Luna Droubi
    Marc Arena
    Deema Azizi
    Rebecca Pattiz
    Katherine "Q" Adams
    Regina Powers

99 Park Avenue, PH/26th Floor
New York, New York 10016
    t: 212-490-0400
    f: 212-277-5880
    e:  jmoore@blhny.com
       drankin@blhny.com
       ldroubi@blhny.com
       marena@blhny.com
       dazizi@blhny.com
       rpattiz@blhny.com
       qadams@blhny.com
       rpowers@blhny.com

**WYLIE STECKLOW PLLC**

_____
By: Wylie Stecklow
Wylie Stecklow PLLC
Carnegie Hall Tower
152 W. 57th Street, 8th Floor
NYC NY 10019
t: 212 566 8000
Ecf@wylielaw.com

**GIDEON ORION OLIVER**

_____
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By: _____
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com
       jessica@femmelaw.com

**LORD LAW GROUP PLLC**

_____
Masai I. Lord
14 Wall St., Ste 1603
New York, NY 10005
P: 718-701-1002
E: lord@nycivilrights.nyc

*Counsel for Plaintiffs in Sow v. City of New York, No. 21-cv-533*

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
*s/ Daniel Lambright*
Molly K. Biklen
Daniel R. Lambright
Jessica Perry
Robert H. Hodgson
Veronica Salama
Lisa Laplace
Christopher T. Dunn
New York Civil Liberties Union   Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300
dlambright@nyclu.org

*Co-Counsel for Plaintiffs in Payne v. De Blasio, No. 20-cv-8924*

THE LEGAL AID SOCIETY

s/ *Corey Stoughton*
Corey Stoughton
Jennvine Wong
Rigodis Appling
Paula Garcia-Salazar
The Legal Aid Society
199 Water Street
New York, N.Y. 10038
(212) 577-3367
cstoughton@legal-aid.org

*Co-Counsel for Plaintiffs in Payne v. De Blasio, No. 20-cv-8924*

DAVIS WRIGHT TREMAINE LLP

By: */s/ Robert D. Balin*
    Robert D. Balin
    Nimra H. Azmi
    Abigail Everdell
    Kathleen Farley
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
robbalin@dwt.comabigaileverdell@dwt.com
kathleenfarley@dwt.com

Mickey H. Osterreicher
General Counsel
NATIONAL PRESS PHOTOGRAPHERS
ASSOCIATION
70 Niagara Street
Buffalo, New York 14202
Tel: (716) 983-7800
Fax: (716) 608-1509
lawyer@nppa.org

Alicia Calzada (*pro hac vice*)

18

Wylie Stecklow
WYLIE STECKLOW PLLC
Carnegie Hill Tower
152 W. 57th Street, 8th FLoor
NY NY10019
(t) 212 566 8000
ecf@WylieLAW.com

ALICIA WAGNER CALZADA, PLLC
Deputy General Counsel
National Press Photographers Association
12023 Radium , Suite B1
San Antonio, TX 78216
210-825-1449
Alicia@calzadalegal.com

*Counsel for Plaintiffs in Gray, et al v. City of New York, et al, No. 21-cv-06610*

The Aboushi Law Firm PLLC

Tahanie A. Aboushi, Esq.
Aymen A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: (212) 391-8500
Fax: (212) 391-8508
Aymen@Aboushi.com
Tahanie@Aboushi.com

*Counsel for Plaintiffs in Rolon, et al v. City of New York, et al, No. 21-cv-2548*