# EXHIBIT H

```
                     UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF NEW YORK

In re:                                  :
                                            Docket #20cv8924
 IN RE NEW YORK CITY POLICING           :
 DURING SUMMER 2020 DEMONSTRATIONS
                                        : New York, New York
                                          February 13, 2023
------------------------------------:   TELEPHONE CONFERENCE

                        PROCEEDINGS BEFORE
            THE HONORABLE GABRIEL W. GORENSTEIN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff People    NEW YORK STATE OFFICE OF
of the State of New     THE ATTORNEY GENERAL
York:                   BY:  SWATI PRAKASH, ESQ.
                             LILLIAN MARQUEZ, Esq.
                        28 Liberty Street
                        New York, New York 10005

For Gray Plaintiffs:    WYLIE STECKLOW PLLC
                        BY:  WYLIE STECKLOW, ESQ.
                        111 John Street, Suite 1050
                        New York, New York  10038

For Payne Plaintiffs:   NEW YORK CIVIL LIBERTIES UNION
                        BY:  DANIEL LAMBRIGHT, ESQ.
                        125 Broad Street, 19th Floor
                        New York, New York 10004

                        LEGAL AID SOCIETY
                        BY:  COREY STOUGHTON, ESQ.
                        199 Water Street
                        New York, New York 10036



Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

```
                                                              2
APPEARANCES (CONTINUED):

For Roland Plaintiffs:   THE ABOUSHI LAW FIRM
                         BY:  TAHANIE ABOUSHI, ESQ.
                         1441 Broadway, Suite 5036
                         New York, New York 10018

For Sow Plaintiffs:      COHEN & GREEN PLLC
                         BY:  REMY GREEN, ESQ.
                         1639 Centre Street, Suite 216
                         Ridgewood, New York 11207

For Defendants:          NEW YORK CITY LAW DEPARTMENT
                         BY:  GENEVIEVE NELSON, ESQ.
                              PETER SCUTERO, ESQ.
                              BRIDGET HAMILL, ESQ.
                         100 Church Street
                         New York, New York 10007
```

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross | Court |
|---|---|---|---|---|---|
| None | | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|
| None | | | | |

```
 1                       PROCEEDINGS                      26
 2   Scutero, I mean this is a report about a particular
 3   individual, a person of interest.  I mean all kinds of
 4   personal information about this person, and I mean it's
 5   just quite obviously a matter that would undermine the
 6   privacy of individuals involved in an investigation.
 7             MR. SCUTERO:  Yes, we agree --
 8             THE COURT:  Gang affiliation and all kinds of
 9   stuff.  So I'm holding this one too.  There's certainly
10   no need by the plaintiffs, and a protective order is not
11   going to solve it.
12             Okay, I think there's only, in the next group,
13   which are the OTM documents, are any of those law
14   enforcement privilege?  I'm trying to look at my listing
15   here.  6042258 or 323.  Yes, 56, 51616, that's the only
16   one of that group.  Do you see the one I'm talking
17   about?  I'll give the full number.  It's
18   DNNL00303_000151616.
19             MR. SCUTERO:  Yes, Judge, I'm pulling it up
20   now.  Judge, I think this falls under the same category
21   as the other briefing documents that you had already
22   ruled or upheld the privilege under.
23             THE COURT:  Well, this seems like of a
24   different character because what it is is it seems to be
25   sort of a summary of how the intelligence bureau
```

```
 1                         PROCEEDINGS                    27
 2   operates.  I'm not saying it's not protected or is
 3   protected.  It's not like the daily terrorism briefing.
 4   I'm not sure what you were likening this to.
 5              MR. SCUTERO:  Right, but at the - that is true,
 6   Judge, that it does provide information as to how the
 7   intelligence bureau operates and as such should be
 8   protected.  But if you scroll down to the end of the
 9   document in the appendix, it also provides, you know,
10   information about terrorist plots that are targeting New
11   York City and emanating from New York City.
12              THE COURT:  Yes, okay, and that is easily
13   protected, but I think you need to talk to me about
14   whether the first, I mean protected for the same reasons
15   I said earlier about the daily terrorism briefing of the
16   same character.  But what about the first pages about
17   the structure and the different units that operate
18   within and how they operate, just address that please.
19              MR. SCUTERO:  Sure, Judge, well, again, this is
20   information that pertains to techniques and procedures
21   that the NYPD uses to collect and assess intelligence
22   with respect to potential crimes.  Because of that it
23   meets that first prong under the law enforcement
24   privilege and should be protected.
25              I don't - the plaintiffs haven't provided a
```

```
 1                          PROCEEDINGS                        28
 2   compelling need for this information.  They argue that
 3   they should be entitled to intelligence relating to the
 4   protests because their argument is that the defendants
 5   have posited a defense that there was no intelligence
 6   with regards to the protests and the NYPD relied upon.
 7   But the information --
 8            THE COURT:  Wait, wait, wait.  Say that again.
 9   You said they posited a defense?  I didn't follow that.
10   Try me again.
11            MR. SCUTERO:  Yeah, so they, the plaintiffs in
12   their papers argue that the defendants have put forth a
13   defense that with respect to intelligence collection,
14   and if I can just - with respect to intelligence
15   collection that the defendants relied upon intelligence
16   in conducting their policing of the protests.  The
17   document that we are currently looking at doesn't have
18   any information or at least doesn't appear to have
19   information with respect to - and I'm sorry, the
20   document, I just lost the document - doesn't appear to
21   have information relating to policing the protests at
22   issue here.
23            THE COURT:  Well, I mean that's the substantial
24   need issue is what you're saying.
25            MR. SCUTERO:  Yes, they --
```

```
 1                       PROCEEDINGS                      29
 2              THE COURT:  All right - go ahead.
 3              MR. SCUTERO:  No, I was just arguing that they
 4    don't have a substantial need.  We meet the first prong
 5    under the law enforcement privilege because this
 6    information pertains to techniques and procedures.  They
 7    now have to rebut that under the strong presumption that
 8    privilege doesn't apply based on a compelling need.  Our
 9    argument is that they do not have a compelling need for
10    this information because it doesn't contain information
11    with respect to the protests.
12              THE COURT:  Okay, Mr. Lambright.
13              MR. LAMBRIGHT:  So, again, it's hard to
14    (indiscernible) not seeing what is actually there.  But,
15    you know, I think maybe it's helpful to kind of just
16    talk about the importance of intelligence and the kind
17    of this litigation.  You know, the defendants have
18    constantly asserted that they intelligence that there
19    are certain threats and that intelligence informed how
20    they responded to the protests.  Obviously, we have
21    (indiscernible) challenging that the City's response to
22    the protests.
23              And additionally I'll note that in the DOI
24    report, one of the major concerns and kind of problems
25    that were pointed out about the NYPD's response to the
```

```
 1                     PROCEEDINGS                    30
 2  protest was faulty intelligence.  And, you know, insofar
 3  as, you know, insofar as the document can speak to how
 4  the NYPD collected intelligence and how they collect
 5  intelligence and how, you know, they got faulty
 6  intelligence I think is particularly relevant, and even
 7  if the law enforcement privilege does apply, it should
 8  be overcome by the needs of this case.
 9            And, yeah, that's, you know, and I'll just kind
10  of quote the decision by the, in Floyd where, you know,
11  the court said that an important factor is whether the
12  case is a civil rights case and it's certainly a matter
13  here that, it certainly matters here how the NYPD
14  conducted its intelligence gathering.
15            THE COURT:  Mr. Scutero.
16            MR. SCUTERO:  (no response)
17            THE COURT:  Mr. Scutero, anything you want to
18  add to this?
19            MR. SCUTERO:  No, Judge.
20            THE COURT:  I mean what is the City's plan in
21  terms of testimony or defense it's going to offer saying
22  we did X because intelligence told us that, you know, Y
23  was going to happen?
24            MR. SCUTERO:  Well, that is, Judge, that is,
25  you know, information that the City would rely upon.
```

```
 1                        PROCEEDINGS                          31
 2            THE COURT:  Well, I mean is it information in
 3   any of the documents we're talking about?
 4            MR. SCUTERO:  Well, that's what I was – that's
 5   what I was arguing before that there doesn't appear to
 6   be information in this document that relates to the
 7   protests.  I'd have to --
 8            THE COURT:  Yeah, I agree as to this document,
 9   but I guess maybe I'm reopening my thinking as to other
10   documents.  I agree, this document – I'm not even sure
11   why it was considered relevant except that it summarizes
12   I guess how the intelligence bureau works, maybe that's
13   viewed as having some relevance.  I don't think it's
14   really very, I don't think, you know, what units they
15   operate under and how those units operate are sufficient
16   relevance to overcome the privilege.  But I'm just now
17   going back, you know, to some of the other documents
18   that had some specific intelligence.  I mean obviously
19   the City is not going to be able to use those documents
20   in any way.  I assume that's understood at a minimum.
21            MR. SCUTERO:  Yeah, that's – yes.  And the City
22   was not planning on using those documents, Judge, since
23   they don't --
24            THE COURT:  So what are they going to use --
25            MR. SCUTERO:  -- no relevance --
```

```
 1                         PROCEEDINGS                     32
 2            THE COURT:  What are they going to use to talk
 3   about the threats?  Are they just going to rely on
 4   testimony and what is the testimony based on?
 5            MR. SCUTERO:  Well, Judge, I don't, I can't say
 6   for sure offhand.  The City will be relying on
 7   testimony, and that will be subject of, you know,
 8   depositions that plaintiffs are currently taking.  But I
 9   can't say for sure which documents the, that – without
10   seeing them in front of me, which documents the City
11   will be relying upon with respect to intelligence.  I
12   can --
13            THE COURT:  But it's not these documents
14   obviously.
15            MR. SCUTERO:  Right, that's what I was going to
16   say, Judge, it's not these documents.
17            THE COURT:  But what intelligence documents,
18   are there intelligence documents that don't reveal
19   techniques and (indiscernible)?
20            MR. SCUTERO:  Well, I believe there would be.
21   I can't say for sure, Judge, but, generally speaking, I
22   would say that, yes, there are documents, there are
23   intelligence documents that could be produced or have
24   already been produced --
25            THE COURT:  Well, I hope they have been
```

```
 1                     PROCEEDINGS                    33
 2  produced --
 3            (interposing)
 4            MR. SCUTERO:  Yes, sorry, Judge, I misspoke.
 5  That have been produced that do not reveal techniques
 6  and procedures.  It's hard to say --
 7            MR. LAMBRIGHT:  Your Honor --
 8            THE COURT:  It's hard to say, you know, with
 9  the documents in front of me, without knowing all the
10  documents in the universe of documents that have been
11  produced, whether or not, you know, there are documents
12  that the City will be relying upon with respect to
13  intelligence.  I can't say that for sure because I don't
14  have, I don't know the whole universe of documents.
15  There's been so many that have been produced already.
16            THE COURT:  Mr. Lambright, you were saying
17  something?
18            MR. LAMBRIGHT:  Yes, Your Honor, you know, I
19  just want to flag that we do have a preclusion argument
20  and that, you know, even if the City's not going to rely
21  upon these specific documents to make its intelligence
22  argument, we need to be able to review, you know, it's
23  unfair for us not to have reviewed these documents and
24  to challenge, asserting that there were threats against
25  officer safety and other intelligence related matters
```

```
 1                        PROCEEDINGS                        34
 2   and not to be able to use these in our preparation for
 3   depositions and those (indiscernible) challenge
 4   assertions that are kind of made about threats to
 5   officers' safety and terrorism threats.  You know,
 6   obviously there are going to be a lot of assertions
 7   about whether there was actual threats or not, and to be
 8   able to review these documents is kind of essential for
 9   us to be able to say that, you know, one possible threat
10   was not really credible and to really kind of go and
11   say, and make our claim and case that the NYPD was
12   relying upon faulty intelligence to over-police these
13   protests and to escalate tension resulting in harms to
14   our clients.
15             MR. SCUTERO:  Well, Judge, what I would say is
16   that, again, we would not be relying on the documents
17   that are subject to privilege in this case and that
18   plaintiffs' argument would essentially eviscerate the
19   privilege if they're saying that because they're making
20   an argument based on intelligence that then they can,
21   they should be permitted to view documents relating to
22   intelligence, that would just completely eviscerate the
23   privilege.  We would not have the ability to assert
24   privilege at that point.  And documents that ordinarily
25   would be protected would be subject to being disclosed.
```

```
 1                        PROCEEDINGS                      35
 2             So I think it's a broad view of this sword and
 3   shield argument that plaintiffs appear to be taking when
 4   that sword and shield's argument is more narrowly
 5   tailored than I think plaintiffs seem to be suggesting.
 6             THE COURT:  Well, In re City of New York is a
 7   little equivocal on this.  It seemed to be satisfied
 8   with a notion that the (indiscernible) used as a sword,
 9   though it did find in the alternative that even if it
10   was selectively disclosing reports that they found that
11   there was other information available through the other
12   reports, which they called the end user reports.
13             You know, looking at these documents, you know,
14   the undercover is much more specific than some of the
15   other ones.  The other ones are really just not going to
16   be useful to the plaintiffs.  So it's easy for me to
17   find that they certainly couldn't form the basis for
18   preclusion.
19             I think the way we're going to have to leave
20   this is if in questioning anyone about the basis for
21   their, you know, policing activities, if they're relying
22   on some intelligence reports and it's determined that,
23   in fact, the plaintiffs weren't provided with whatever
24   that information was, I think that would be the time to
25   come immediately back to me and see if at that point
```

```
1                        PROCEEDINGS                        36
2   there's a basis for getting (indiscernible) preclusion
3   or something else.  So it's not the most efficient way
4   to do it, but I don't really see any other way to do it.
5             So I'm going to adhere to my rulings on the law
6   enforcement privilege, and if something comes up in the
7   future depositions that suggests there's an unfairness,
8   I'm ready to hear it.
9             All right, let's move on to deliberative
10  process.  And let me, I believe the first – let me just
11  clear out what I have.  Okay, we're going to go back to
12  the NYPD documents, and I think the first one ends
13  34920.  Mr. Scutero, do you see the document I'm talking
14  about?
15            MR. SCUTERO:  Yes, Judge, I'm pulling it up
16  now.
17            THE COURT:  Just give me a second to --
18            MR. SCUTERO:  Yes, Judge, I have it.
19            THE COURT:  Okay, so we're – so let me hear
20  what you have to say about this.
21            MR. SCUTERO:  Sure, Judge.  It's – as you know,
22  for a document to be privileged under the deliberative
23  process, it has to be pre-decisional and deliberative.
24  In this email exchange, you can clearly see that members
25  of the police department are suggesting and debating
```

```
 1                                                              83
 2                       C E R T I F I C A T E
 3
 4           I, Carole Ludwig, certify that the foregoing
 5   transcript of proceedings in the United States District
 6   Court, Southern District of New York, In Re: New York
 7   Policing During Summer 2020 Demonstrations, docket
 8   #20cv8924, was prepared using PC-based transcription
 9   software and is a true and accurate record of the
10   proceedings.
11
12
13
14
15   Signature    ___Carole Ludwig___
16
17   Date:   February 14, 2023
18
19
20
21
22
23
24
25
```