SYLVIA O. HINDS-RADIX
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NEW YORK 10007

JOSEPH M. HIRAOKA, JR.
*Senior Counsel*
jhiraoka@law.nyc.gov
Phone: (212) 356-2413
Fax: (212) 356-1148

April 14, 2023

**BY Electronic Case Filing**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> In Re: *New York City Policing During Summer 2020 Demonstrations*
> No. 20 Civ. 8924 (CM) (GWG)
> This filing is related to all cases

Your Honor:

I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. Defendants write in accordance with the Court's Individual Practices as well as Local Rule 37.2 in response to plaintiffs' request for defendants to conduct an audit of its IAB file productions to date, and for costs. (Docket No. 924). Defendants respectfully submit that a full audit is not warranted and would be disproportionate to the needs of the case. Defendants further submit that they have made reasonable efforts to produce IAB files, and that costs against defendants are not warranted. As such, defendants respectfully request that plaintiffs' application be denied.

## BACKGROUND

As set forth in plaintiffs' motion, plaintiffs' have demanded a plethora of investigatory files pertaining to the 2020 protests, including IAB files related to Argus maps plaintiffs provided to defendants.

With respect to the IAB files related to Argus maps plaintiffs had provided to defendants, the parties agreed that defendants would produce the IAB files and a declaration that all IAB files associated with plaintiffs' Argus maps by February 17, 2023. The agreement was memorialized in an Order at ECF No. 839. Defendants produced the IAB files pursuant to the agreement.

Specifically, defendants produced IAB file numbers FI-2020-0608, FI-2020-0711, FI-2020-0814, FI-2021-0516, M-2021-0078, FI-2020-610, Fl-2020-622, Fl-2020-722, OG-2020-10670, OG-2020-7738, OG-2020-8430, OG-2O20-8443, OG-2021-1731, OG-2021-8999, OG-2022-5991, and OG-2022-5993.

Thereafter, on February 24, 2023, plaintiffs demanded IAB file numbers 2020-452 and 2020-530 pertaining to Officer Frank Fiorenza. Defendants responded on February 27, 2023, and advised that defendants would attempt to produce the files in advance of Officer Fiorenza's deposition scheduled for March 1, 2023.[1] Plaintiffs replied by claiming production of the files was mandated by the Court's Order at ECF 839. Defendants in turn informed plaintiffs on February 28, 2023 that IAB file numbers 2020-452 and 2020-530 were not contemplated by the Order at ECF 839 since those files were not associated with the plaintiffs' Argus maps. Nevertheless, on February 28, 2023, defendants produced the paper portions of IAB file numbers 2020-452 and 2020-530 that were readily available. The attachments to these files (which included audio and/or video recordings) were not readily available, and were later produced.

Thereafter, on March 11, 2023, plaintiffs demanded IAB file numbers FI-2020-609 and OG-2020-6973 pertaining to Lt. Eric Dym, and claimed they were also mandated by the Court's Order at ECF 839. As was the case with Officer Fiorenza, defendants advised plaintiffs that IAB file numbers FI-2020-609 and OG-2020-6973 would not be provided pursuant to the Order at ECF 839 because they were not subject to that Order since they were not related to the plaintiffs' Argus maps.

Plaintiffs then e-mailed defendants on March 14, 2023, and stated Lt. Dym's file numbers FI-2020-609 and OG-2020-6973 should have been previously produced pursuant to ECF 839. Plaintiff attached an Argus map that depicted an area that Lt. Dym was allegedly involved in on June 4 to June 5, 2020. Plaintiffs also requested a meet and confer on the issues of whether defendant would produce file numbers FI-2020-609 and OG-2020-6973 pertaining to Lt. Dym and whether he would be produced for another deposition pending receipt of those files.

The parties then met and conferred on March 22, 2023. Plaintiffs began the meeting by stating they wanted a full audit done of defendants' IAB file production. Defendants advised plaintiffs that any other issues would need to be discussed at a separate meet and confer and that the subject of the meeting was Dym's IAB files. As to those files, plaintiffs maintained their position that Lt. Dym's IAB file numbers FI-2020-609 and OG-2020-6973 should have been produced pursuant to the Order at ECF 839. Defendants reminded plaintiffs that they had only requested IAB files related to their Argus maps for incidents that occurred <u>after</u> June 19, 2020; and that, therefore, plaintiffs' position was not valid as the incidents in IAB file numbers FI-2020-609 and OG-2020-6973 occurred on June 4 to June 5, 2020.[2] However, defendants advised that they

---

[1] This is not a document that is part of the pre-deposition protocol to be produced 48 hours before an officer's deposition.

[2] Plaintiffs admit in footnote 5 on page 3 of their motion that plaintiffs did advise defendants that plaintiffs only demanded IAB files associated with their maps for incidents that occurred after June 19, 2020.

would produce the two files by April 14, 2023 if they were protest-related.

On March 24, 2023, defendants advised that they would produce the IAB files for FI-2020-609 and OG-2020-6973 pertaining to Lt. Dym. Defendants also advised they would produce the IAB files for FI-2020-530 and FI-2020-452 pertaining to Officer Fiorenza by April 14, 2023.

Thereafter, on March 31, 2023, the parties had a second meet and confer. The issue at the meet and confer was to discuss whether defendants would conduct a full audit of its IAB file productions to determine which protest-related IAB files were not produced. Defendants advised that a full audit was not warranted as plaintiffs only identified four outstanding files. Defendants also pointed out that they had already agreed to produce the IAB files pertaining to Lt. Dym and Officer Fiorenza.

Plaintiffs responded that they "believed" IAB files were also missing for Officers Migliaccio, Miret, Casablanca, Britve, and Zinstein, but could not confirm such at the meet and confer.[3] Defendants advised that "believing" IAB files were missing is not grounds for defendants to conduct a full audit.[4] Defendants instead offered a reasonable alternative that the issue of what IAB files may be outstanding be addressed on a case by case basis. Defendants also offered to check if there were outstanding IAB files for specific officers that plaintiffs identified.

However, plaintiffs would not consider any alternative to a full audit, rejected defendants' proposals and declared an impasse.

## ARGUMENT

### I. The Court Should Deny Plaintiff's Request For An Audit.

Despite the voluminous nature of plaintiffs' demands for protest related IAB files set forth in their application, plaintiffs could only identify four IAB files at the meet and confers that were not produced. Plaintiffs' Exhibit C only lists four others that are either incomplete or partial. This does not mandate a full audit of defendants' IAB file production. Indeed, plaintiffs' request for a full of audit of defendants' IAB file productions would be unduly burdensome and is not proportional to the needs of the case.

F.R.C.P. 26(b)(1) states as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering

---

[3] A review of plaintiffs' Exhibit C shows that plaintiffs appear to have now confirmed that plaintiffs have an incomplete file for Zinstein and Migliaccio; and a partial file for Francisco Casablanca-Torres (who is a plaintiff in an un-related matter) and Trevor Thomas. Defendants are already seeking to confirm with NYPD whether there are additional documents to produce pertaining to these files.

[4] Even the log annexed as Exhibit C to plaintiffs' motion sets forth "suspected" deficiencies.

the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

As set forth in the accompanying declaration from NYPD, such an audit would be unduly burdensome. In order to complete an audit of defendants' IAB productions, NYPD would have to locate each inquiry it received to produce an IAB file over the course of this litigation along with any information NYPD received to help it locate a particular IAB file. (Declaration of Bridget Fitzpatrick, Dated April 14, 2023, annexed hereto as Exhibit A).There inquiries were made by e-mail, phone call (that were not memorialized), or by handwritten note (that were not maintained). Id.

After locating any still existing inquiries, the identity of the person who conducted that search (some of whom have transferred or retired) would have to be determined in order to re-check that person's search for the particular IAB file, and whether it was produced. Id. Such an audit would require dedicating several members of staff full-time solely to that task, and could take approximately 800 hours to complete. Id.

As the declaration clearly demonstrates, the amount of time and effort that would be expended to conduct a full audit of defendants' IAB file productions on the basis that plaintiffs were not provided with seven IAB files would be unduly burdensome, especially in light of the fact that defendants have now already produced the four files as it represented to plaintiffs it would. Moreover, the burden is not proportional to the needs of this case because it far outweighs the minimal benefit any theoretical additional files would provide to plaintiffs given the innumerable documents and files they already have.

Furthermore, plaintiffs locating only four IAB files that defendants did not produce at all shows that defendants' prior productions of IAB files was reasonable, and hardly demonstrates that the searches and productions were flawed. The standard for evaluating discovery under Rule 26 is reasonableness, not perfection. See Freedman v. Weatherford International Ltd., No. 12 Civ. 2121, 2014 U.S. Dist. LEXIS 133950, 2014 WL 4547039, at *3 (S.D.N.Y. Sept. 12, 2014); Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("[W]hile parties must impose a reasonable construction on discovery requests and conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection.'); Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees International Union, 212 F.R.D. 178, 223 (S.D.N.Y. 2003) (Rule 26(g) requires a "reasonable inquiry under the circumstances"); Moore v. Publicis Groupe, 287 F.R.D. 182, 188 (S.D.N.Y. 2012) ("[T]he Federal Rules of Civil Procedure do not require perfection."). Defendants conducted reasonable searches and have produced voluminous amounts of records pertaining to investigatory files. Defendants have offered to, and have, produced outstanding files plaintiffs have identified. NYPD should not be required to conduct an audit on such slim evidence as plaintiffs have proffered.

Accordingly, the Court should deny plaintiffs' request for an audit.

II.     **Plaintiffs' Request For Fees Under Rule 37 Should Be Denied.**

Plaintiffs' request for fees under Rule 37 should be denied because defendants' responses were reasonable and proper.

Rule 37 establishes a mechanism under which reasonable fees can be recovered if a motion to compel is granted. See Fed. R. Civ. P. 37. However, Rule 37 is also clear that a party cannot recover fees when "the nondisclosure was 'substantially justified' or 'other circumstances make an award of expenses unjust.'" See Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 273 F.R.D. 372, 377 (S.D.N.Y. 2011)(citing Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii)). In turn, reasonableness of a party's conduct is determined by whether there was genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." Id. (citing Comprehensive Habilitation Servs. v. Commerce Funding Corp., 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (denying sanctions motion where opposing party raised valid relevancy objections to document requests)).

Here, defendants' responses to plaintiffs demands have been reasonable. As an initial matter, defendants properly pointed out that the files plaintiffs initially sought under Dkt No. 839, were not applicable to that Court Order. Furthermore, the fact that plaintiffs contend that only four IAB files had not been produced (and list four partially produced ones on their exhibit) in response to their demands for a copious amount of IAB files clearly shows that defendants' responses were reasonable. Furthermore, prior to the filing of the instant opposition, defendants have already provided the four IAB files plaintiffs seek and have already made efforts to confirm the completeness of the other four.

Moreover, contrary to plaintiffs' contention, defendants did not have "nothing to say" at the meet and confer on March 31, 2023 pertaining to producing additional IAB files. As previously stated, defendants offered to address the issue of producing any missing protest related IAB files in a more appropriate reasonable manner than a full audit. Defendants advised plaintiffs that they would produce protest-related IAB files that plaintiffs informed defendants they did not receive. Defendants also offered to check for any IAB files for specific officers that plaintiffs identified.

Defendants responses to plaintiffs' demands have been reasonable, and defendants have agreed to take additional steps that are more focused, less burdensome, and commensurate with the plaintiffs' needs. As such, plaintiffs' request for fees under Rule 37 should be denied.

## CONCLUSION

Defendants respectfully request that the Court: 1) deny plaintiffs' request to have NYPD conduct a full audit of its IAB file productions; and 2) deny plaintiffs' request for fees under Rule 37.

Thank you for your time and consideration.

5

Respectfully submitted,

*Joseph M. Hiraoka, Jr.* s/

Joseph M. Hiraoka, Jr.
*Senior Counsel*
Special Federal Litigation Division

cc:   ALL COUNSEL (*via* ECF)

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

In Re: New York City Policing During
Summer 2020 Demonstrations

**DECLARATION OF**
**BRIDGET M. FITZPATRICK**

**20-CV-8924 (CM) (GWG)**

------------------------------------------------------------------X

Bridget M. Fitzpatrick Esq., declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am an attorney and a civilian employee of the New York City Police Department (the "NYPD"). I serve as the Managing Attorney of the Civil Litigation Unit (CLU) which is part of the NYPD Legal Bureau. CLU provides litigation support to the New York City Law Department. CLU is responsible for the production of all NYPD documents, including files related to NYPD's internal disciplinary process. I am personally familiar with the matters set forth herein.

2. I have been informed that plaintiffs have moved this Court for a full audit to be performed of defendants' IAB file productions.

3. There is no comprehensive list of every IAB file that was requested and/or provided to the Law Department. Thus, in order to perform an audit of defendants' IAB productions, the NYPD would have to locate each inquiry to produce an IAB file it received over the course of this litigation along with any information NYPD received to help it locate a particular IAB file. During the course of this litigation, inquiries for IAB files came by e-mail, phone call, or by handwritten notes. Inquiries that came by phone call or by handwritten notes were not memorialized or maintained after the request was completed.

4.      After locating each inquiry NYPD received (to the extent they can be located), along with any information NYPD received to help it locate a particular IAB file, the identity of the person who conducted that search (some of whom have transferred or retired) would have to be determined in order to re-check that person's search for the particular IAB file. Only then can it be determined if an IAB file was provided to the New York City Law Department.

5.      In order to locate each inquiry NYPD received for an IAB file along with any information NYPD received to help it locate a particular IAB file, and to identify the person who conducted the search for a particular IAB file during the course of this litigation, would necessitate dedicating at least five members of my staff solely to this task full-time, and could take at least 800 hours to complete. In addition, due to the fact that inquiries that came by phone call or handwritten notes were not memorialized or maintained, there could be no assurance of the completeness of the audit.

*Bridget M. Fitzpatrick /s*
BRIDGET M. FITZPATRICK

Dated: New York, New York
       April 14, 2023