

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

April 24, 2023

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

<u>By Electronic Filing.</u>

    Re:    <u>In re: New York City Policing During Summer 2020 Demonstrations,
1:20-CV-8924 (CM) (GWG)</u> — This Letter Relates to All Cases

Dear Judge Gorenstein,

    I am counsel for the People of the State of New York and write on behalf of all non-stayed plaintiffs in these consolidated actions to respectfully request that the Court schedule a conference under Local Rule 37.2 regarding Defendants' failure to prepare their witness on 30(b)(6) Topics 20 and 21 properly. As set out below, we seek to compel production of a properly prepared witness, and to address the City's obstructive approach to objections. We also seek sanctions for Defendants' egregious failure to prepare the witness, which is treated by courts as "'tantamount to a failure to appear,'" *Adrian Shipholding, Inc. v. Lawndale Group S.A.*, 08 Civ. 11124 (HB)(GWG), 2012 U.S. Dist. LEXIS 4234 at *26 (S.D.N.Y. Jan. 13, 2012), *quoting Crawford v. Franklin Credit Mgmt. Corp*, 261 F.R.D. 34, 38039 (S.D.N.Y. 2009), and refusal to schedule meet and confers on this issue in a reasonable time frame.

    As set out below, Defendants' witness stated he was unprepared to answer questions *more than one-hundred ninety-four times*. While this letter motion only addresses the deposition of former Deputy Inspector John Kanganis—the first 30(b)(6) witness to be deposed in this litigation since Chief Dowling in February 2022—Defendants have already continued their obstructive pattern of behavior in unreasonably objecting to the scope of deposition questions, re-designating 30(b)(6) witnesses at the very last minute, and refusing to prepare witnesses with exhibits provided by Plaintiffs as set out in the Court's protocol. Since this behavior is likely to continue as we approach the end of fact discovery, the Court's intervention is necessary to prevent further prejudice to Plaintiffs.

## I. Defendants' Failure to Meet and Confer

Before reaching the merits, we address Defendants' failure to meet and confer. On April 7, 2023—the morning after the deposition—Plaintiffs sent an email describing in detail DI Kanganis' lack of preparation and counsel's unreasonably narrow interpretation of the scope of the 30(b)(6) topics. Plaintiffs asked for a meet and confer immediately and proposed any time on April 14, the following Friday. Initially, the attorney who defended the deposition, Sergey Marts, responded at 6:12 PM on April 7th that he would "get back to [us] on this next week." However, when Plaintiffs followed up on April 11, a different attorney responded on April 12th at 4:48 PM claiming that Mr. Marts "is out of the office for the remainder of this week and next week" and that therefore they "will not be able to meet until his return."

A refusal to meet and confer for over two weeks after the deposition at issue (without even a commitment to a time that week) is untenable and violates the Court's rules and order in ECF No. 317, which the Court issued after Defendants repeatedly failed to respond to meet and confer requests earlier in the case. Especially given the recent caution the Court issued in ECF No. 936, and the approaching deadline for depositions, Plaintiffs quickly prepared this letter and sent it to Defendants on April 14 at 3:05 p.m. At 2:04 p.m. on April 17 (the next business day), Defendants offered two meet and confer times on Friday, April 21. Although it took some time coordinate Plaintiffs' counsels' schedules, Plaintiffs confirmed and sent a calendar invitation on Thursday to meet on Friday, but Defendants told us that they had released the times without letting us know. Plaintiffs made several attempts to have a conversation at *some* time on Friday, but Defendants did not respond. We held open a Zoom meeting at the time Defendants had offered and no one appeared. Plaintiffs therefore sent a second ECF No. 317 notice at 12:40 p.m. on April 21, 2023 (more than two weeks after the initial request to meet and confer), making clear that "we will be available for the next 24 hours, and then file." After a brief response, Plaintiffs again made clear "We will file this motion unless we meet and confer by 12:40 Monday, or hear from you that you will be designating a new witness by that same time," in which case Plaintiffs could hold off in filing the letter until further conferral as to the details of the new designation. Defendants failed to respond at all within the 24 hours set by ECF No. 317, so this motion followed.

## II. Background

### A. Defendants Belatedly Object to the Scope of Topics 20 and 21

On January 21, 2022, Defendants designated former Deputy Inspector John Kanganis to testify as the City's Fed. R. Civ. P. 30(b)(6) witness for the following topics (the "Topics"):

> Topic 20: "The NYPD's and City of New York's response, coordination, and cooperation with investigations by any local district attorney's office, the Civilian Complaint Review Board, the Law Department, or the Department of Investigation of the City of New York into the City's responses to the Summer

> 2020 Protests, including requests and responses for the production of documents, witnesses, and other information from Defendants."
>
> Topic 21: "The NYPD's and City of New York's response to:
>
> > a. the investigation and Preliminary Report by the New York State Office of the Attorney General;
> >
> > b. Any decisions by any district attorney to decline to prosecute or dismiss a prosecution related to any of the Arrests made during the Summer 2020 Protests."

Exhibit A, Defendants' 30(b)(6) Witness Designation by Topic; Exhibit B, Plaintiffs' Consolidated Amended Notice of Deposition.[1] Prior to this dispute, Defendants did not object to the Topics, even after the Court set a February 8, 2023 deadline to object to the 30(b)(6) topics noticed by Plaintiffs. 2023-01-27 Tr. at 41:4-7.

Pursuant to ECF No. 670, Plaintiffs sent Defendants a pre-deposition email on March 30, 2023, confirming that DI Kanganis was designated for Topics 20 and 21 and providing a non-exhaustive list of exhibits to be used in the deposition to aid DI Kanganis in his preparation. Ex. C at 3–4. At 9:42 p.m. on April 3 – that is, two business days before the deposition – Defendants raised for the first time an unexplained scope objection to "quite a few exhibits" listed by Plaintiffs. *Id.* at 2. Aside from listing examples of exhibits which Defendants believed were outside the scope of the Topics (including one letter from the Legal Aid Society to Mayor Adams, one news article, documents related to two CCRB case files and two IAB case files), Defendants' email explained their objections only in so far as they stated that DI Kanganis will not be prepared to testify "regarding the specific investigations by the CCRB, IAB, or any of the local [district attorney's] ("DA's") offices into '*allegations of misconduct by members of the NYPD during the Summer 2020 Protest*' as well as the results of such investigations at his deposition on Thursday." *Id.*

Plaintiffs responded the next day, April 4th, just after noon, reminding Defendants that they needed to prepare the witness and explaining the obvious relevance of the subtopics. *Id.* at 1–2. Defendants responded at 6:56 PM that they disagreed on Plaintiffs' reading of Topic 20 and "do not agree that *specific investigations* into allegations of misconduct by members of the NYPD fall within the scope of the topic." *Id.* at 1 (emphasis added). For the first time, Defendants explained their reasoning that Topics 17 and 18 encompass disciplinary actions and investigations by the NYPD IAB, the CCRB, and local DA's offices into allegations of misconduct by members of the NYPD, and therefore those subject areas fell outside Topics 20 and 21. Defendants did not further explain whether the designee for Topics 17 and 18, who at the

---

[1] Following extensive conferrals and Court conferences, the parties amended the original and supplemental 30(b)(6) notices of deposition and Plaintiffs consolidated those notices, with incorporated amendment, for clarity. Although the consolidated notice post-dates the designation, Topics 20 and 21 are the same as they appear in the original 30(b)(6) notices.

Hon. Gabriel W. Gorenstein
Page 4

time was Captain Lauren Foster, would be able to explain the internal aspects of the "NYPD's and City of New York's *response, coordination, and cooperation with*" those investigations.

Despite the continued dispute as to what subjects were covered under Topics 20 and 21, Plaintiffs adjusted their preparation for the deposition in response to Defendants' email by reserving the objected-to topics to the end of the examination and removing lines of questioning regarding CCRB and IAB files as Defendants made clear that DI Kanganis would not be prepared to discuss "specific investigations."

### B. DI Kanganis was Unprepared to Testify to the Topics

Plaintiffs deposed DI Kanganis on April 6, 2023. DI Kanganis testified that he was knowledgeable about Topics 20 and 21 because he "was the point of contact for the investigations conducted by outside entities into the events of 2020, summer of 2020," Kanganis Dep. Tr. 19:12–14 (Ex. D), but that he not aware of any "investigations by any local district attorney's offices." Tr. 19:20–22:10.

By the end of the deposition, it became clear that DI Kanganis and counsel unreasonably interpreted Topic 20 to only include "any investigation by district attorney office that was similar in nature to that of the investigations by the Department of Investigation or the Law Department," Tr. 306:14–23, and not any criminal investigation. Tr. 307:6–19. In other words, Defendants interpreted the inclusion of "investigations by any local district attorney's office" (the first in the enumerated list in Topic 20) as meaningless since such an investigation did not take place. But, of course, the local DA's offices conducted criminal investigations into a number of individual officers. Defendants also objected as outside the scope any questions pertaining to "the NYPD and City of NY's response, coordination, and cooperation with investigations by any local district attorney's office," related to prosecution of any arrest made in the course of the protests, including questions that overlapped with Topic 21(b), pertaining to decisions to decline or dismiss prosecutions related to the protests.

Defendants objected to scope 122 times during the deposition.[2] DI Kanganis said he was unprepared to answer at least 194 times. Courts have sanctioned parties for less than half of that. *See, e.g., Wager v G4S Secure Integration*, 2021 U.S. Dist. LEXIS 220116, at *22 (noting the moving party wrote, "[a] review of Mr. Letizia's transcript provides at least eighty-four (84) instances in which Mr. Letizia was unable to answer questions, claimed he could not recall the answer or that he had not accessed the documents in which the answer could be found (and similarly that he did not know if the document was ever produced," and finding such a "record demonstrates that the defendant's Rule 30(b)(6) was not prepared adequately for his deposition").

DI Kanganis testified that in preparation for the deposition he reviewed only four reports referenced in Topic 20 (those by the Department of Investigation (DOI), the Law Department,

---

[2] Plaintiffs do not include in this number objections which were not specified to be based on "scope" and submit that Defendants should not be permitted to later claim that a statement by DI Kanganis is not binding on Defendants if the objection was not clearly stated.

the Attorney General's Office and the CCRB), three other materials that were provided by Plaintiffs in the pre-deposition email, and three documents not specified by Plaintiffs, in addition to his calendar. Tr. 22–29. The only document he reviewed relevant to Topic 21(b) (decisions by DA's offices to decline or dismiss prosecutions related to the protests) was an article about DA Vance's announcement he would not prosecute protest offenses. Tr. 24:22–24, 304–05. DI Kanganis testified that he did no research and did not speak with, nor attempt to speak with, anyone in preparation for his deposition other than his attorneys. Tr. 29:21–30:12.

In addition to being unprepared to answer virtually any question relating to any investigation by a local DA's office or coordination between NYPD and DA's offices, DI Kanganis was unprepared to answer many of the questions at the heart of Topics 20 and 21. Some of the questions the witness was unprepared to give any answer to included:

Topic 20:

- "Were there any instances where the CCRB subpoenaed documents or testimony from the NYPD for any investigation related to the 2020 protests?" Tr. 155:6–10;
- "Was there any time frame by which [the CCRB Liaison Unit within IAB] had to fulfill requests for documents or records?" Tr. 133:6–10;
- Whether any version of a section of the Patrol Guide entitled "Investigations by Civilian Complaint Review Board" was "in place before July 1, 2020," Tr. 146:15–19;
- "Who directed that memo [by NYPD in response to the CCRB's final report] be written?" and "What was the process of putting together that memo?" Tr. 162:2-4; 11–14;
- "How do you explain the discrepancies in the data collected by these [four different sources of arrest data]" identified in the DOI report? Tr. 231:5–11;
- Whether the NYPD did anything to implement the DOI/Law Department Reports' recommendations not included in the "Mass Demonstrations Response Recommendations Tracker" document published on the NYPD's website, stating he did not "have independent knowledge of what the City implemented to address this issue" outside of that document, Tr. 232:15–22;
- "Who was responsible for writing [the "Mass Demonstrations Response Recommendations" Tracker"]?" Tr. 251:21-23 and "Does this reflect the final version of this tracking document?" Tr. 252:7–10;
- "How did the Law Department and DOI coordinate in creation of their reports?" Tr. 245:5–9;

Topic 21(a):

- "What, if anything, did the City of New York do to track what was said during the [OAG] hearings?" Tr. 282:14-20;
- "Did NYPD open any internal investigations as a result of testimony in the AG hearings?" Tr. 285:2–7;
- "Did the NYPD or the City of New York take any action in response to the information contained within the [OAG] preliminary report?" Tr. 285:22–286:2;

Topic 21(b):

- Whether "NYPD ... receive[d] complaints from officers following the announcements by the district attorney offices [that they would be declining to prosecute protest arrests]" Tr. 88:8–18;
- Who was involved in the creation of the "FINEST message" describing district attorney's decision not to prosecute arrests related to the 2020 protests, Tr. 90:11-16, whether there were any instructions or guidance to members of service about the policy within the FINEST message that "despite this announcement, so long as probable cause exists, members of the service will continue to make arrests for unlawful assembly," Tr. 91:7-93:2, and why there were two identical FINEST messages disseminated on this topic, Tr. 96:11-15;
- Who made the decision to reassign NYPD security details out of district attorney's offices, a decision which, according to the *New York Times,* was communicated to district attorney's offices hours after they announced they would not be prosecuting certain arrests related to the protests; when that decision was made; and how it was communicated, Tr. 105:5-106:3;
- "Whether [any part of the City took] into account declination to prosecute decisions during the summer of 2020 in evaluating NYPD policy?" Tr. 313:4-23.

    Defendants' counsel made "scope" objections to many of the questions identified above.

### C. Defendants Partially De-designated Captain Foster Two Days Before Her Deposition

Plaintiffs deposed Captain Foster, who Defendants designated in January 2022 to testify to Topics 8(c), 17 and 18—which Defendants claimed encompassed the questions they objected to as outside the scope of DI Kanganis's deposition—on April 13, 2023. However, Captain Foster was not prepared to testify to the entirety of those topics. That is, in part, because Defendants belatedly narrowed the scope of her testimony to a portion of Topic 17. On February 4, 2023, 1.5 years after the Court first ordered Defendants to designate 30(b)(6) witnesses, *see* 9/20/2021 Tr. at 36:9–10, Defendants removed Captain Foster as the Topic 8(c) designee. Then, at 6:47 PM on April 11, Defendants notified Plaintiffs that "Captain Foster is no longer designated as a Rule 30(b)(6) witness for Topic 18" and that "she would not able to speak to actions of CCRB or any district attorney's office [and, so, would] only be testifying about the IAB with respect to Topic 17." Defendants' untimely notification again required Plaintiffs to redo their deposition outline in anticipation of scope objections.

At the deposition, Captain Foster testified that she was never told that she was designated to speak to Topics 8(c) or 18 or that she would testify to the sections of Topic 17 pertaining to investigations by the CCRB or DA's offices.[3] She also was unaware of the outcome or status of certain IAB investigations, including one involving Officer Vincent D'Andraia, who was criminally prosecuted by the Kings County DA for assaulting a protester, and could not provide

---

[3] The deposition transcript has not yet been prepared but Plaintiffs can supply it to the Court once available.

Hon. Gabriel W. Gorenstein
Page 7

any information about the time the NYPD took (or purported delays) in producing body worn camera footage or other documents in response to CCRB requests for documents in their investigation of protest-related investigations, though this was a function of the CCRB Liaison Unit within the IAB.

### III. Defendants Should Be Sanctioned for Failing to Meet their Obligations to Prepare the Witness

When a party seeks to depose a corporation, governmental agency, or entity under Rule 30(b)(6), the entity "has an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf" and to the extent any person is not knowledgeable, "make a conscientious and good faith endeavor . . . to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters." *Bush v. Element Fin. Corp.*, No. 16-cv-1007 (RJS), 2016 U.S. Dist. LEXIS 189319, at *4–5 (S.D.N.Y. Dec. 13, 2016) (internal quotations and citations omitted).

If a party fails to comply with their obligation to prepare the witness under Rule 30(b)(6), the Court can issue a variety of sanctions under Rule 37. *See Adrian Shipholding*, 2012 U.S. Dist. LEXIS 4234, at *16–28 (taking as established that personal jurisdiction exists over the defendant and ordering defendant to pay plaintiffs' attorneys fees where the witness to answer questions about personal jurisdiction "lacked sufficient knowledge" to testify to the relevant subjects and the entity "made no efforts to familiarize [him] with the relevant subjects"); *Wager v. G4S Secure Integration*, 19-CV-3547 (MKV)(KNF), 2021 U.S. Dist. LEXIS 220116, at *22–23 (S.D.N.Y. Nov. 15, 2021) (ordering defendants to pay attorney's fees associated with the failure to provide an adequate 30(b)(6) witness, provide a properly prepared 30(b)(6) witness to be examined within 30 days, and to pay the costs associated with the deposition of the properly prepared witness); *Bush*, 2016 U.S. Dist. LEXIS 189319 at *5–8 (ordering the defendants to prepare one or more witnesses to address the topics in plaintiffs' 30(b)(6) notice that were not covered in the deposition, as well as attorney's fees where they failed to prepare the witness and did not offer multiple witnesses to address the topics until after the deposition of the designated witness was underway).

Because of Defendants' egregious failure to prepare DI Kanganis to testify knowledgeably, completely and fully, and because Defendants' many objections to scope leave in doubt what answers will be binding on the City, Plaintiffs request that the Court order new 30(b)(6) witness(es) be designated and fully prepared to testify to the portions of Topics 20 and 21 that DI Kanganis was unprepared to testify to and that Defendants pay Plaintiffs' attorneys fees and costs incurred in conducting DI Kanganis' deposition and in bringing this motion. If, in compliance with such an order, Defendants choose to designate any other 30(b)(6) witness who is already to-be-scheduled for a deposition to additionally testify on Topics 20 and 21, Plaintiffs should be awarded additional time beyond the already-planned seven hours for that questioning.

  We thank the Court for its continued time and attention.

Respectfully Submitted,

<u>  /s/ Lillian Marquez  </u>
Lillian Marquez, Assistant Attorney General
Civil Rights Bureau
Gina Bull, Assistant Attorney General
Executive Division
Office of the New York State Attorney General
Tel: 646-574-2180
Gina.Bull@ag.ny.gov

CC: All counsel of record