

| | **THE CITY OF NEW YORK** | |
|---|---|---|
| **HON. SYLVIA HINDS-RADIX** <br> *Corporation Counsel* | **LAW DEPARTMENT** <br> 100 CHURCH STREET <br> NEW YORK, NY 10007 | **Sergey Marts** <br> *Assistant Corporation Counsel* <br> Phone: (212) 356-5051 <br> sermarts@law.nyc.gov |

April 27, 2023

**BY ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:  <u>In Re: New York City Policing During Summer 2020 Demonstrations</u>
                20 Civ. 8924 (CMJ)(GWG)

Your Honor:

      I am an Assistant Corporation Counsel in the Office of the Honorable Sylvia Hinds-Radix, Corporation Counsel of the City of New York and one of the attorneys assigned to the defense of the above-referenced consolidated matters. Defendants write in opposition to Plaintiffs' motion to compel, for sanctions, and for a Rule 37.2 conference. *See* Dkt. No. 955. For the reasons set forth below, the Court should deny plaintiffs' application in its entirety.

## Background

      By way of background, former Deputy Inspector John Kanganis ("DI Kanganis") was designated by Defendants to testify as a 30(b)(6) witness with respect to Topics 20 and 21 (hereinafter the "Topics").

Specifically, Topic 20 states:

> The NYPD's and City of New York's response, coordination, and cooperation with investigations by any local district attorney's office, the Civilian Complaint Review Board, the Law Department, or the Department of Investigation of the City of New York into the City's responses to the Summer 2020 Protests, including requests and

responses for the production of documents, witnesses, and other information from Defendants.[1]

*See* Exhibit 1.

Topic 21, in turn, states:

> The NYPD's and City of New York's response to: a. the investigation and Preliminary Report by the New York State Office of the Attorney General; b. Any decisions by any district attorney to decline to prosecute or dismiss a prosecution related to any of the Arrests made during the Summer 2020 Protests.

*Id.*

On Thursday, March 30, 2023, at 5:28 p.m., Plaintiffs emailed Defendants a list of topics and documents Plaintiffs intended to cover at DI Kanganis' deposition. *See* Exhibit 2. On April 3, 2023, at 9:42 p.m., Defendants emailed Plaintiffs and informed them that, in Defendants' opinion, quite a few exhibits Plaintiffs intended to use and inquire into at DI Kanganis' deposition, were outside of the scope of Topics 20 and 21 and informed Plaintiffs that the witness will be unable to provide testimony Plaintiffs were seeking. *Id.* at 13-14. On April 4, Plaintiffs emailed Defendants and insisted that Defendants need to prepare DI Kanganis to provide testimony on the subjects Defendants stated DI Kanganis will not be able to testify to. *Id.* at 13. On April 6, Defendants again emailed Plaintiffs and further explained that the areas Plaintiffs intended to cover with DI Kanganis fell under two separate topics – Topics 17 and 18. *Id.* at 12. On April 6, 2023, the parties appeared for DI Kanganis' deposition which lasted the entire day. At the deposition, Defendants again reiterated their position regarding the disputed topics from March 30, and informed Plaintiffs that DI Kanganis was not designated to provide testimony on the subject matter covered by Topics 17 and 18, but nonetheless Plaintiffs still proceeded to ask questions covered by those two Topics. Tr. 4:2-24. On April 7, Plaintiffs emailed Defendants and requested a meet and confer on Friday, April 14. *Id.* at 11. That same day, Defendants emailed Plaintiffs and informed them that they would confer internally and would get back to them on their request. On April 12, in response to Plaintiffs' follow-up email, Defendants informed Plaintiffs that due to unavailability of the undersigned (who was on vacation), Defendants would not be able to meet and confer on that proposed date *Id.* at 9.

On April 17, in response to Plaintiffs' April 14 email, Defendants emailed Plaintiffs and informed them that Defendants will be available to meet and confer on Friday, April 21 at either 2-3 p.m. or 4-5 p.m. *Id.* at 7. Plaintiffs then responded on April 20 at 5:52 p.m., after the close of business confirming their availability for the meet and confer the next day at 2 – 3 p.m. on Friday, April 21. *Id.* at 6. On Friday, April 21 at 12:31 p.m., Defendants emailed Plaintiffs and informed them that, due to late confirmation by Plaintiffs, the personnel who was covering the meet and confer was now unavailable. *Id* at 6. Defendants provided—in good faith—two additional dates for the meet and confer on Tuesday, April 25 at 4:00 p.m. and on Wednesday, April 26 at 4:00 p.m. *Id* at 6. On April 21 at 1:31 p.m., Defendants again reiterated that Defendants were no longer

---

[1] Defendants have designated Executive Director Jonathan Darche from CCRB to cover a portion of Topic 17.

available on Friday due to Plaintiffs' late notice but still remained available on Tuesday, April 25, 2023, at 4:00 p.m. and on Wednesday, April 26, 2023, at 4:00 p.m. *Id* at 4. Plaintiffs then issued an "ultimatum" knowing that the most relevant personnel was not available until Tuesday, April 25. On April 24, Plaintiffs filed the instant motion. *See* Dkt. No. 955. On April 26, the Court issued an order under Docket No. 956 and directed the parties to meet and confer. The parties met and conferred on Tuesday, April 25.[2] At the meet and confer, Defendants, in a good faith attempt to resolve the instant motion, proposed to bring back DI Kanganis for another day of deposition. On April 26 at 5:57 p.m., Defendants emailed Plaintiffs and again reiterated their proposal to bring back DI Kanganis. *See* Exhibit 3. Nonetheless, what Plaintiffs requested that Defendants to include in this letter is the following:

> "Plaintiffs did not have sufficient time to consider Defendants' revised proposal which was communicated on Wednesday at 5:57 p.m.. and required a response the same night by 9 p.m."

## **Argument**

### *A. Defendants Did Not Refuse to Meet and Confer with Plaintiffs.*

Contrary to Plaintiffs' argument, Defendants did not refuse to meet and confer with Plaintiffs and, in fact, offered several dates and times when Defendants were available for the meet and confer. Plaintiffs further argue that "[a]lthough it took some time [to] coordinate Plaintiffs' counsels' schedules, Plaintiffs confirmed and sent a calendar invitation on Thursday to meet on Friday." *See* Dkt. 955 at 2. However, Plaintiffs omit that they "confirmed and sent a calendar invitation" at 5:52 p.m., after the close of business the evening before. *See* Exhibit 2 at 7-8. Plaintiffs further omit that at 12:31 p.m. on Friday, April 21, 2023, Defendants emailed Plaintiffs and informed them that, due to late confirmation by Plaintiffs, the personnel who was covering the meet and confer was no longer available. Defendants provided—in good faith—two additional dates for the meet and confer on Tuesday, April 25, 2023, at 4:00 p.m. and on Wednesday, April 26, 2023, at 4:00 p.m. *Id.* at 6. Plaintiffs further claim that they made "several attempts to have a conversation" on Friday, April 21, 2023, and that they "held open a Zoom meeting at the time Defendants had offered and no one appeared." Again, Plaintiffs omitted the fact that in response to Plaintiffs' email, Defendants emailed Plaintiffs at 1:31 p.m. and again advised that Defendants were no longer available on Friday due to Plaintiffs' late notice but still remained available on Tuesday, April 25, 2023, at 4:00 p.m. and on Wednesday, April 26, 2023, at 4:00 p.m. *Id.* at 4. Plaintiffs then issued an "ultimatum" for a meet and confer for Monday, April 24, 2023 even though Defendants have repeatedly informed Plaintiffs that the most relevant personnel was not available until Tuesday, April 25. Had Plaintiffs waited for one additional day, the parties could have met and conferred on Tuesday, April 25, and attempted to resolve the issues that were raised by Plaintiffs.

---

[2] Present for Plaintiffs were Lillian Marquez, Remy Green, and Wyllie Stecklow; present for Defendants were Peter Scutero, Sergey Marts, and Michael Olney.

### B. Defendants 30(b)(6) Witness DI Kanganis was prepared to testify to the Topics.

Plaintiffs' argument that DI Kanganis was not prepared to testify to Topics 20 and 21 is misplaced.

Plaintiffs argue that "DI Kanganis and counsel unreasonably interpreted Topic 20 to only include 'any investigation by district attorney office that was similar in nature to that of the investigations by the Department of Investigation or the Law Department and not any criminal prosecution.'" However, Plaintiffs' argument is without merit. First, Plaintiffs themselves included in their 30(b)(6) notice a separate topic—Topic 17—which specifically covers investigations by the local district attorney's offices related to the Summer of 2020 Protests.

Topic 17 states:

> The initiation, conduct, and outcome of investigations by the NYPD Internal Affairs Bureau and/or the Civilian Complaint Review Board, any local district attorney's office of allegations of misconduct by members of the NYPD during the Summer 2020 Protests.

*See* Exhibit 1.

Based on the plain meaning of the language of Topic 17, it is clear that Plaintiffs' argument that the witness and "counsel unreasonably interpreted Topic 20" is erroneous. Plaintiffs' drafting of the 30(b)(6) Topics should not be held against Defendants. In fact, Courts have refused to enforce topics which were vague, overbroad, or lacked particularity. *See, e.g., DDK Hotels, LLC v. Williams-Sonoma, Inc.*, No. 19 CV 226 (ILG) (CLP), 2022 U.S. Dist. LEXIS 126008, at *5-6 (E.D.N.Y. Feb. 11, 2022) (ordering defendants to revise certain topics and "provide more specificity in defining the areas of inquiry sought in this topic); *Fung-Schwartz v. Cerner Corp.*, 2020 U.S. Dist. LEXIS 160262, 2020 WL 5253224, at *2-4 (finding topics overbroad, disproportional to the needs of the case and lacking the necessary particularity required to prepare the 30(b)(6) witness); *Government Emps. Ins. Co. v. Lenex Servs., Inc.*, No. 16 CV 6030, 2018 U.S. Dist. LEXIS 43584, 2018 WL 1368024, at *3 (E.D.N.Y. Mar. 16, 2018) (striking topic as vaguely worded where requests sought information related to "all matters" or "all facts").

Although Plaintiffs seemed to acknowledge that there is an overlap of the topics in Plaintiffs' 30(b)(6) Notice, they still proceeded to question the witness on issues covered by other topics regardless of Defendants' good-faith objections, and have taken the position that overlap of the topics is of no fault of Plaintiffs' and is Defendants' burden to carry. However, 30(b)(6) Topics are construed in favor of the non-drafting party, so the burden born from any overlap here is Plaintiffs' and not Defendants'. Furthermore, by arguing that Defendants unreasonably excluded "any criminal prosecution" from the scope of Topic 20 and that DI Kanganis was required to answer questions on that subject, Plaintiffs practically argue that they should be allowed to depose multiple 30(b)(6) witnesses on the same subject matter and dictate who they want to testify for the City on each of the 30(b)(6) Topics. Rule 30(b)(6), however, does not grant the deposing party such an ability. Rather, the Rule provides the right to choose the witness to the entity from whom testimony is sought— in this case the City. From a purely practical standpoint, Plaintiffs' position

would also overburden the Defendants as other 30(b)(6) witnesses would need to review the transcripts of all other 30(b)(6) witnesses to insure consistency. Such a process would be unworkable, disproportional, and prejudicial to Defendants.

Additionally, Plaintiffs' interpretation that Topic 20 includes DAs' investigations of individual officers' misconduct during the 2020 protests is inconsistent with the definitions Plaintiffs provided in their 30(b)(6) notice. For example, nowhere in Topic 20 does it mention officers, a defined term. Rather, the undefined term the "City" is mentioned in Topic 20, which leads to the interpretation held by Defendants that the scope of Topic 20 is directed to the City as a municipal organization and not individual officers. Accordingly, Plaintiffs' interpretation of Topic 20 is overbroad and inconsistent with the 30(b)(6) notice Plaintiffs drafted.

Plaintiffs further argue that Defendants objected to scope 122 times. *See* Dkt. 955 at 4. As an initial matter, it is well settled that a defending party has a right to pose objection to the scope at 30(b)(6) depositions. *See, e.g., Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. CV 2010 3647(CBA)(MDG), 2012 U.S. Dist. LEXIS 113819, 2012 WL 3536987, at *5*.

However, Plaintiffs omit the reason why Defendants objected to the questions. The questions being posed were outside of the scope of the topics DI Kanganis was designated to testify about. For a few examples, Plaintiffs asked the following questions where Defendants interposed objections based on scope:

- Can you walk me through the steps that officers were trained to take in preparing arrests for prosecution starting from the time of an arrest? (Tr. 35:13 - 17);
- Are you prepared to answer the question what involvement would the arresting officer have on the preparation of a criminal complaint? (Tr. 39:19 – 22);
- Are you aware of any specific trainings that NYPD conducts on those procedures [for preparing an arrest for prosecution]? (Tr. 41:8 – 10);
- And can you tell me what is the process of assigning another officer to an arrest? (Tr. 48:12 – 12);
- After reading the affidavit, what is your understanding as to why the district attorney decided to dismiss the charges of unlawful and disorderly conduct here? (Tr. 49:4 – 8);
- What is the standard for establishing probable cause to arrest someone for unlawful assembly as an arrest? (52:4 – 6);
- What is the probable cause needed to make out an offense of disorderly conduct? (Tr. 53:2 – 4);
- Based on the facts alleged in this details section here, do you think that there is probable cause to make out the offense of unlawful assembly. (Tr. 54:9 – 12);
- Let's assume for the purpose of this discussion that the person who the arresting officer did not see the individual defendant engage in any of the conduct, any of this violent and disorderly conduct that's described in the affidavit. Do you think that makes out the probable cause for offense of unlawful assembly? (Tr. 55:18 – 25);
- So looking at this affidavit, right without the ability to identify the defendants as individuals suspected of criminal conduct, let's assume that this person was in a crowd of protesters but there was no knowledge that person, this defendant was

- engaged in the alleged violent and disorderly conduct, is there a probable cause? (Tr. 56:14 -22);
- Do you know what VTL 1156a is? (Tr. 74:11);
- How does the NYPD ensure that there is individualized probable cause in arrests for large demonstrations such as these? (Tr. 58:13 – 16);
- How often in your years with the police department did you issue a summons for VTL 1156a, if at all? (Tr. 74:17 – 19);
- Are you aware of anyone else in the NYPD issuing a summons for VTL 1156a during your years in the police department? (Tr. 74:25 – 75:3);
- Are you aware of anyone else in the NYPD issuing a summons for VTL 1156a outside of protest or First amendment activities? (Tr. 75:13 – 16);
- What legal authority governs how the CCRB operates? (Tr. 118:11 – 12);
- You stated before that there is an 18-month statute of limitation for a CCRB investigation. What happens if the CCRB cannot conclude their recommendation by the end of the statute of limitations? (Tr. 204:3);
- Who gives notice to the medical division about the injury? (Tr. 237:5);
- And if a civilian reports to a police officer or mentions that they are injured, is an officer required to put that information in a TRI report? (Tr. 238:13 – 16)

In Defendants' view, the above examples, and other similar questions, cannot be construed to fall within the Topics DI Kanganis was designated to testify to. Indeed, many of the questions that were asked, including "Do you know what VTL 1156a is?" *See* Tr. 74:11, were about arrest procedures, probable cause, and similar topics. None of these questions fit within Topics 20 and 21, which generally concern NYPD's response to investigations by external governmental organizations. Plaintiffs took the position that these questions were within the scope of the Topics because of the questions context within the greater line of questioning and that the questions were foundational in nature. These positions are inapposite to the conduct of 30(b)(6) depositions and unworkable from a practical standpoint. First, there is nothing foundational about asking the witness about the probable cause in a hypothetical scenario or the meaning of a particular provision within the Vehicle and Traffic Law. Second, Plaintiffs' argument about context would permit any question about any topic during the deposition, defeating the purpose of 30(b)(6) topics and the Rule's requirements. We have provided a number of examples of the questions that clearly fall outside the scope below.

Defendants further argue that DI Kanganis stated that he was "unprepared to answer" questions 194 times. *See* Dkt. 955 at 1. However, Plaintiffs fail to mention that the reason DI Kanganis did not answer those questions was again due to the fact that Plaintiffs' questions were outside of the scope of Topics 20 and 21. Notwithstanding that Defendants advised Plaintiffs in advance of the deposition that DI Kanganis will not be testifying as to certain subjects as they are outside the scope of his designated topics, Plaintiffs still chose to ask questions on those subjects and were essentially trying to illicit objections knowing full well that lines of questioning would be objected to. For example, in their email dated April 3, 2023, Defendants informed Plaintiffs that they believed that the March 15, 2023 letter from the Legal Aid Society to Mayor Adams regarding the decision by the NYPD Commissioner to depart from certain CCRB recommendations regarding discipline was outside of the scope of Topic Nos. 20 and 21. However, Plaintiffs still asked questions regarding that letter essentially drawing an objection and forcing

the witness to state that he was not prepared to answer plaintiffs questions on that topic at least nine times. Plaintiffs asked the following questions regarding the March 15, 2023 letter:

- It says that the Legal Aid Society found that the commissioner had rejected CCRB's recommendations in 346 cases because the NYPD decided that the CCRB's recommendation was sent to the NYPD too close to the complaint's statute of limitation; correct? (Tr. 298:12 – 18);
- Does the City dispute the accuracy of the number? (Tr. 298:22 – 23);
- Do you dispute that number? (Tr. 299:18);
- What is a sufficient amount of time for a commissioner to make a determination about whether or not to accept CCRB's recommendation for discipline? (T. 300:6 – 10);
- In cases when the commissioner determines that the recommendation is too close to the statute of limitations or that it has expired, can NYPD still impose discipline on an officer where warranted? (Tr. 300:16 – 20);
- Does the NYPD consider training or instructions discipline in those cases? (Tr. 300:24 – 25);
- What was the NYPD's response to this report from the Legal Aid Society? (Tr. 301:7 – 8);
- Is it accurate that NYPD sources told New York Post that the CCRB dumped hundreds of cases on them? (Tr. 301:13 – 15)

Not only were Plaintiffs on notice that DI Kanganis was not designated to testify to Topics 17 and 18, which cover the subject matter of the above line of questions, Plaintiffs consciously made a "tactical" decision to continue asking those questions, essentially to harass the witness and to manufacture this dispute.

Plaintiffs used the same tactic with respect to the March 18, 2023, article title "New York Post article "*Civilian Complaint Review Board 'dumped' hundreds of cases on NYPD at last minute: police sources*." Again, although Defendants gave Plaintiffs advanced notice that the subject matter of that article was outside the scope of Topic Nos. 20 and 21, Plaintiffs still chose to ask questions on that subject again "forcing" the witness to state twice that he was not prepared to answer. For example, Plaintiffs asked the following questions regarding the March 15, 2023 letter:

- This is a New York Post article that was shared with counsel before the deposition today. Have you seen this before? (Tr. 302:2 – 4);
- Does this statement reflect a position of the NYPD? (Tr. 302:16 – 17);
- Can you explain what is meant by the statement, that is, "the CCRB dumped hundreds of cases on the NYPD"? (Tr. 302:22 – 24).

Plaintiffs further state in their motion that DI Kanginis testified that he reviewed only "four reports referenced in Topic 20 (those by the Department of Investigation (DOI), the Law Department, the Attorney General's Office and the CCRB), three other materials that were provided by Plaintiffs in the pre-deposition email, and three documents not specified by Plaintiffs, in addition to his calendar." *See* Dkt. 955 at 5. However, this statement is not accurate because, although DI Kanganis did state that he did not review a few documents that Plaintiffs showed to

7

him at the Deposition, the witness essentially reviewed all of the documents Plaintiffs' provided in their pre-deposition email. *See* Exhibit 2. Additionally, as much as Defendants were required under Rule 30(b)(6) to prepare the witness for the deposition, Rule 30(b)(6) also requires Plaintiffs to "describe the noticed topics with 'painstaking specificity.'" *See DDK Hotels, LLC v. Williams-Sonoma, Inc.,* No. 19 CV 226 (ILG) (CLP), 2022 U.S. Dist. LEXIS 126008, at *5 (E.D.N.Y. Feb. 11, 2022). Here, if Plaintiffs wanted the witness to review specific documents they deemed essential for the purposes of their claims, they could have, pursuant to this Court's instructions, provided them to Defendants prior to the deposition.

Furthermore, Plaintiffs argue that DI Kanganis was not able to answer "many of the questions at the heart of Topics 20 and 21." *See* Dkt. 955 at 5. While DI Kanganis was not able to answer some questions related to specific details pertaining to Topics 20 and 21, DI Kanganis provided sufficient answers. Additionally, the Courts are clear that 30(b)(6) depositions are not "memory contests" and that deponents are not expected to remember "every fact." *See, e.g., First Hill Partners LLC v. Bluecrest Capital Mgmt.*, No. 13-cv-7570 (RJS), 2015 U.S. Dist. LEXIS 199264, at *4 (S.D.N.Y. July 6, 2015) ( internal citations omitted); *EEOC v. American Int'l Group*, No. 93—cv-6390 (PKL) (RLE), 1994 U.S. Dist. LEXIS 9815, 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994); *see also Dealer Comput. Servs., Inc. v. Curry*, No. 12 Civ. 3457 (JMF) (JLC), 2013 U.S. Dist. LEXIS 18315, 2013 WL 499520, at *4 (S.D.N.Y. Feb. 7, 2013) (stating that "a Rule 30(b)(6) deposition is "not a quiz").

Here, Plaintiffs routinely asked detailed questions and expected DI Kanganis to remember specific details. For example, Plaintiffs asked DI Kanganis whether the Mass Demonstration Response Recommendation Tracker dated December 22, 2021, that was shown to DI Kanganis was the "final version of the document." Tr. 252:7-8. DI Kanganis was not able to answer that specific question but he testified that the document accurately described the steps NYPD took to implement the recommendation. Tr. 251:24 – 252:2. If Plaintiffs were interested in whether the version of the Mass Demonstration Response Recommendation Tracker they provided to Defendants prior to the deposition was the latest version, they could have indicated that in their pre-deposition email. Plaintiffs cannot reasonably expect DI Kanganis to answer such specific questions without any prior indication. *See Agniel v. Cent. Park Boathouse LLC, 2015 U.S. Dist. LEXIS 13450, at *7 (S.D.N.Y. Jan. 23, 2015)* (holding that the testimony sought at a 30(b)(6) deposition "demand[ed] a degree of detailed recollection of past arrangements that would be unrealistic without more specific notice").

### C. Defendants should not be sanctioned because DI Kanganis was adequately prepared for the deposition, Defendants' objection were proper, and because Defendants offered to produce DI Kanganis for a second deposition.

District courts have "wide discretion" when deciding whether to impose sanctions under Rule 37. *See* Fed. R. Civ. P. 37; *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (internal quotations omitted). However, Rule 37 is also quite clear that a party cannot recover reasonable fees when "the nondisclosure was 'substantially justified' or 'other circumstances make an award of expenses unjust.'" *See Underdog Trucking, L.L.C. v. Verizon Servs. Corp.,* 273 F.R.D. 372, 377 (S.D.N.Y. 2011)(citing Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii)). The reasonableness of a party's conduct depends on whether there was a "'genuine dispute' or if

8

'reasonable people could differ' as to the appropriateness of the contested action." *Id.* (citing *Comprehensive Habilitation Servs. v. Commerce Funding Corp.*, 240 F.R.D. 78, 87 (S.D.N.Y. 2006).

It is also well settled that in the context of a Rule 30(b)(6) deposition, the "[s]anctions are appropriate only where 'the inadequacies in a deponent's testimony [are] egregious and not merely lacking in desired specificity in discrete areas.'" *See Townsquare Media, Inc. v. Regency Furniture, Inc.*, No. 21-CV-4695 (KMK), 2022 U.S. Dist. LEXIS 176541, at *18 (S.D.N.Y. Sep. 28, 2022)(internal citations omitted).

Here, Defendants' conduct was reasonable. First, Defendants agreed to meet and confer with Plaintiffs and, in fact, provided multiple dates and times when they were available. The Plaintiffs confirmed the date and time for the April 14 meeting too late for Defendants to still participate in and even then Defendants provided two additional dates. However, instead of waiting for one additional day for that meeting, Plaintiffs chose to file their motion.

Second, Defendants' conduct at the deposition was reasonable. Defendants gave Plaintiffs advance notice of the deposition topics that they believed were outside the scope of this deponent's testimony. Defendants also explained that other witnesses were designated on some of the very topics Plaintiffs wanted to examine this witness on. Plaintiffs still proceeded to ask questions on those topics that they knew full well would illicit objections at the deposition. Plaintiffs then continued asking question even after the witness informed them that he was not prepared to answer about those particular subjects. Furthermore, DI Kangnis' testimony was adequate in light of the wording of the 30(b)(6) Topics and the list of exhibits Plaintiffs provided to Defendants prior to the deposition.

Finally, Defendants have already agreed to make DI Kanganis available for another day of 30(b)(6) testimony and cover the court reporting costs for that additional day to address the questions set forth in Plaintiffs' letter motion (*See* Dkt. No. 955) as well as the questions that the witness was unprepared to answer during the deposition, to the extent those questions are within the scope of Topics 20 and 21 and do not fall within the scope of another 30(b)(6) Topic. *See* Exhibit 3.

## Conclusion

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiff's motion to compel and for sanctions under Rule 37. Defendants thank the Court for its attention to this matter.

Respectfully submitted,

*Sergey Marts*

Sergey Marts
*Assistant Corporation Counsel*

cc: ALL COUNSEL (*via* ECF)

Attachments