STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES  
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE  
CIVIL RIGHTS BUREAU

April 28, 2023

**BY ECF**

Honorable Gabriel W. Gorenstein  
United States Magistrate Judge  
United Stated District Court, Southern District of New York  
Daniel Patrick Moynihan Courthouse, 500 Pearl Street  
New York, New York 10007

    Re:    *In re: New York City Policing During Summer 2020 Demonstrations,*  
            No. 20-CV-8924 (CM) (GWG)  
            *This Letter Relates to All Cases*

Dear Judge Gorenstein:

    We write on behalf of the non-stayed Plaintiffs in these consolidated cases to provide a brief response to Defendants' request for additional time to produce 10 IAB log files and a related declaration. ECF No. 967. As the information and declaration counsel provided in and with that letter was not conveyed to Plaintiffs before that filing, we wish to correct a few points but also agree to an extension to May 5, 2023.

    Defendants were ordered to produce any documents missing from 10 IAB log files "within five business days" of their request. ECF No. 943. As those logs were requested April 20, the production was due yesterday, the same day Defendants (belatedly) made their application for an extension. *But see*, ECF No. 788 ("The Court expects this will be the last time the defendants seek an extension on the date a filing is due"). Plaintiffs note that they requested files related to logs, as opposed to cases, because it was Plaintiffs' understanding that every log may have one or more associated case, as every incident may have one or more allegation of misconduct. *See* ECF No. 967 at 6–7; *see also* 4/19/2023 Tr. at 84:8–12, 86:14–22 (explaining that a log may have different associated case numbers). Plaintiffs did not, as counsel asserts, expand their request to include any more than ten logs by referencing case numbers associated with those logs because, as Plaintiffs understood their representations, their production of each log should necessarily contain *all* associated cases. ECF No. 967 at 2. And so identification of those specific case numbers were

Honorable Gabriel W. Gorenstein
Page 2

intended to make Defendants' job *easier* because they are case numbers we affirmatively know (from other records) are associated with the logs.[1]

Plaintiffs also note that Defendants' description of the process by which they pull IAB log files seems on its face to be inefficient. As Lt. Anthony Francione of the IAB recently confirmed to Plaintiffs during the Court-ordered conferral, IAB officers like him **have full access to the electronic files associated with any given IAB log**, whether it was investigated by the IAB itself (and therefore contained in ICMS) or investigated by a borough investigation unit (and contained in ICMT). These investigation units "function as satellites of IAB and are responsible for the integrity controls within their respective units [and] report their findings through IAB, which retains oversight over the investigations."[2] Yet Defendants have inexplicably overcomplicated the process by directing separate requests for information to the specific unit that investigated each matter. Ms. Mulle's declaration does not state that physical files were collected (as opposed to data transferred or disks or pen drives with electronic data collected) and, so, it is unclear why a search by an IAB officer could not efficiently perform all of these searches electronically, thereby avoiding an otherwise burdensome manual review of the files.

In addition, Plaintiffs suggest that comparing hash values in Relativity[3] should suffice to determine whether the log files were completely produced to Plaintiffs and, indeed, may be the

---

[1] Ms. Mulle's suggestion otherwise, that Defendants need only produce certain cases for each log, is contrary to Plaintiffs' understanding as to what is the overarching file. ECF No. 967 ¶ 12. As each IAB investigation is started with the creation of one log number and is later referred out as different cases each with a prefix that relates to the type of allegation being investigation (e.g., FI for force, OG for outside guidelines, M for misconduct), Plaintiffs understood that a request for a log would produce all individual cases for the different allegations pertaining to the incident. So, the violent pushing of Dounya Zayer by Officer Vincent D'Andraia in May 2020 would theoretically result in a log with one case each for a referral to CCRB, an investigation of the allegation that D'Andraia failed to activate his body-worn camera footage, and an investigation of his use of force by the NYPD. Defendants should clarify in their declaration whether they did not produce all associated cases or if the above understanding is inaccurate.

[2] NYPD, *NYPD Disciplinary System Penalty Guidelines* (Jan. 15, 2021), https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/disciplinary-system-penalty-guidelines-effective-01-15-2021-compete-.pdf. Investigation units are decentralized, located in their respective boroughs or units, like the SRG. They can handle lower-level investigations and their access to internal investigations are limited to what appears in ICMT and is assigned to their unit.

[3] Hash values "can be thought of as fingerprints for files. The contents of a file are processed through a cryptographic algorithm, and a unique numerical value – the hash value - is produced that identifies the contents of the file. If the contents are modified in any way, the value of the hash will also change significantly. Two algorithms are currently widely used to produce hash values: the MD5 and SHA1 algorithms." TrendMicro, https://www.trendmicro.com/vinfo/us/security/definition/hash-values (last accessed Apr. 28,

only manner that Defendants should be allowed to determine duplication in order to ensure that any unproduced responsive unique content is duly produced. For example, if a worksheet laying out the investigative actions in an IAB log maintains the same file name (say, "index.htm") or folder name (say, "FI-2020-0418.zip") despite being periodically updated with additional information, Defendants cannot refuse to produce an updated worksheet simply because the file name was not changed. The manual review Defendants intend on performing—"running searches . . . based on other information such as . . . file names, file paths, and content/text searches and comparing the search results," ECF No. 967 at —is unnecessarily duplicative of a hash comparison and creates the possibility that Defendants would produce even *less* than Plaintiffs are entitled to.[4]

By restricting the comparison process to hash values, we believe the original extension requested, to May 5, will be enough time even with the apparently inefficient process to date to perform the tasks ordered by the Court.

Respectfully submitted,

*s/ Lillian M. Marquez*
Lillian Marquez, Assistant Attorney General
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-6401
Lillian.Marquez@ag.ny.gov

CC: All counsel of record

---

2023). Plaintiffs would be entitled to both versions of a file that has been altered (and so files with different hash values despite having the same or similar file names, folder paths, and contents/text).

[4] Without getting too technical, there is a possibility that Defendants have somehow lost access to their original collections in Relativity. Even so, there is a more efficient process available to compare parent hashes that does not require a manual review.