STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES  
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE  
CIVIL RIGHTS BUREAU

April 28, 2023

**BY ECF**

Honorable Gabriel W. Gorenstein  
United States Magistrate Judge  
United Stated District Court, Southern District of New York  
Daniel Patrick Moynihan Courthouse, 500 Pearl Street  
New York, New York 10007

    Re:    *In re: New York City Policing During Summer 2020 Demonstrations*,  
            No. 20-CV-8924 (CM) (GWG)  
           ***This Letter Relates to All Cases***

Dear Judge Gorenstein:

    We write on behalf of the non-stayed Plaintiffs in these consolidated cases to provide further briefing in opposition to Defendants' renewed motion for a protective order limiting the number of remaining depositions. ECF No. 841. Defendants previously sought to strike the notices of deposition for witnesses who they claimed are duplicative or cumulative of other noticed deponents. *Id.* The Court ordered the parties to provide further briefing on the issue after the depositions of allegedly excess witnesses were taken. Where Defendants have not failed to schedule these witnesses, they have failed to provide testimony that would completely overlap with the depositions Plaintiffs still seek to take. We therefore respectfully request that the Court order the depositions of John Miller, Sgt. Shuzhen Wong, Sgt Stuart Wohl, Chief Harry Wedin, and Deputy Inspector Isaac Soberal to proceed.[1]

---

[1] Plaintiffs note that contrary to Defendants' representation in their letter at ECF No. 966, Defendants did not make any argument regarding duplicativeness as to the depositions of former Commissioner Shea and Mayor de Blasio. Their original letter addressed those depositions under a different section and theory from those which are allegedly duplicative, claiming that the two were former high-ranking government officials who should be excused from testifying under the *Marisol A.* standard. *Compare* ECF No. 841 at 6 (Part II.B), *with id.* at 9 (Part IV). Defendants also incorrectly state the dates the Court set for further briefing regarding Shea and de Blasio's depositions, which was originally set to May 5 and May 12. *See* 3/6/23 Tr. at 66:12–14. So, any claim of duplication is waived. Plaintiffs will address the *Marisol* standard in additional briefing, now extended on consent to June 12 and June 15.

## BACKGROUND

In relevant part,[2] Defendants sought to preclude the depositions of witnesses listed in Column B as duplicative of those in Column A:

| A<br>Predicate Depositions | B<br>Depositions Defendants Seek to Preclude |
|---|---|
| Chief Thomas Galati | John Miller |
| Capt. Lauren Foster | Sgt. Shuzhen Wong |
| Sgt. Jason Saturnin | Sgt. Stuart Wohl |
| Chief Gerard Dowling<br>Chief John D'Adamo | Chief Harry Wedin |
| Inspector Robert Gallitelli | Deputy Inspector Isaac Soberal |

After hearing argument at a conference on March 6, 2023, the Court asked for further briefing once Plaintiffs had deposed the predicate (Column A) witnesses that Defendants claimed would be duplicated by the objected-to deponents. *See* 3/6/23 Tr. at 52:14-53:7. The Court explained that "[i]f [the City] can schedule them by April 14" or, in the case of Monahan and Galati, by April 21, "then I'm prepared to, you know, put this off and see if, you know, what's being represented by the City is really the case." *Id.* at 50:22–51:17. The Court directed Defendants to include the purportedly duplicate depositions in the schedule, and, following the predicate deposition, the City was to "just make the case again" and the Court would "decide whether it's really necessary or not." *Id.* at 52:14–53:7. The Court clearly warned Defendants that, "if it's the City's fault that they're not doing it by the 14th or 21st, I'm just going to allow the deposition." *Id.* at 54:3–8.

In this context, the Court addressed the individual depositions, including that of Deputy Inspector Soberal, which Defendants objected to as duplicative of Inspector Gallitelli with regards to knowledge of a local protest group. Plaintiffs explained that, unlike Inspector Gallitelli, Deputy Inspector Soberal was a fact witness in part to testify to the arrest he ordered of one of the People's witnesses and to force he excessively used at a protest. As with the other depositions challenged for duplicativeness, the Court asked the City to confirm that they could produce Gallitelli by the 14th along with the other predicate depositions and noted that, if they could, "then you don't have to do Soberal; otherwise, you will do Soberal." Tr. at 59:1–9; *see also id.* at 50–54.

Since the conference, Plaintiffs have taken all of the Column A depositions except for Chief Galati, Sgt. Saturnin, and Chief D'Adamo. By email dated April 20, 2023, Defendants unilaterally cancelled Deputy Inspector Soberal's deposition (previously scheduled for May 3), taking the position that the Court already granted the protective order motion as to Deputy Inspector Soberal because the Defendants had fulfilled the condition of scheduling Inspector Gallitelli by April 14. Plaintiffs objected, noting the context of the Court's statements as to Soberal and the upcoming briefing that the Court had ordered regarding duplicativeness, including the Soberal deposition, and again confirmed their readiness to take that deposition on May 3. In response, by email on

---

[2] Plaintiffs have withdrawn the notice for Joseph Reznick.

April 21, 2023, Defendants maintained that "Defendants will not be producing Deputy Inspector Soberal for deposition as per this [Court's] ruling" at the March 6 conference.

Defendants first offered to produce Sgt. Saturnin on either April 12 or 13—just a day or two before the Court's cut-off. Plaintiffs could not accept those dates due to scheduling conflicts and proposed the following week. In an email dated March 28, 2023, Plaintiffs confirmed Saturnin's fact testimony date for April 26 and insisted that a second date be provided for his 30(b)(6) testimony and also sought clarification as to the topics Saturnin was designated for. When Defendants refused to schedule a second day for Saturnin's 30(b)(6) testimony, Plaintiffs (again) requested confirmation of the sub-topics he was designated for to determine if a single day of testimony would suffice. It was not 9:21 PM on Friday April 21 (six weeks after plaintiffs' initial request and two business days prior to the scheduled deposition) that the City finally provided plaintiffs with specific 30(b)(6) sub-topics that Saturnin would testify about (13 in total). Plaintiffs asked to adjourn Saturnin's deposition until the parties could meet and confer about the need for a second day to cover the extensive number of sub-topics but Defendants refused at that point to provide a time to meet, asserting that one day was sufficient, and adjourned the deposition.

## ARGUMENT

### A. Defendants Have Waived Any Duplicativeness Argument Relating to John Miller and Sgt. Wohl.

Defendants have failed to comply with the Court's directive to produce two predicate witnesses, Sgt. Saturnin and Chief Galati, by April 21 and April 14, respectively, as ordered by the Court. Defendants did not even attempt to schedule Chief Galati before today's filing deadline, having proposed only dates in late May, and so the Court should "allow the deposition" of John Miller. 3/6/2023 Tr. at 54:3-8. Although Defendants scheduled Sgt. Saturnin's fact testimony day, the parties did not resolve when he was to give his 30(b)(6) testimony– the testimony that the City said would be duplicated by Sgt. Wohl's testimony – as the scope of that designation was unclear and disclosed only days before deposition. The City's failure to provide plaintiffs with 30(b)(6) topic designations until only two business days before the Saturnin deposition was highly prejudicial and precluded plaintiffs from being able to adequately prepare. Because Defendants indicated that they would not re-produce him for his 30(b)(6) testimony if the fact day went forward, it was adjourned.

Further, although Defendants complain that they had only two scheduling cycles to schedule Sgt. Saturnin and Chief Galati, ECF No. 966 at 2, nothing prevented them from immediately reaching out to Plaintiffs' counsel for their availability to take either deponent to ensure their timely deposition or from scheduling more than the number of depositions ordered by the Court in that period. They simply did not do so despite knowing the Court's order. Both failures to timely complete the predicate depositions should be attributed to Defendants and the associated depositions, of John Miller and Sgt. Wohl, should be ordered.

Even if Defendants are not foreclosed from seeking to preclude witnesses who were designated or noticed over a year ago, Defendants cannot make a showing of duplicativeness. As previously argued regarding Former Deputy Commissioner Miller, he has unique knowledge of

the basis for the scope and tactics of the NYPD's violent protest-policing tactics. During his interview with the Inspector General's office, Chief Terence Monahan repeatedly identified DC Miller as among a small "crew of individuals at the Department that makes the strategy" for these protests. However, at critical times throughout the protests of 2020, DC Miller was the sole member of the NYPD's intelligence apparatus in direct communication with the Mayor, First Deputy Mayor, and Police Commissioner concerning the intelligence informing the NYPD's response to the Protests. Due to his position and his exclusive communications with the Mayor and Police Commissioner, DC Miller is uniquely positioned to know whether and to what extent the NYPD's fact-gathering provided reasonable cause for the highest-ranked policymakers in the NYPD and the City to authorize the use of force against protesters.

As for Sgt. Wohl, Plaintiffs seek to depose Sgt. Wohl as a fact witness because he has been extensively involved in training NYPD officers regarding how to police mass protests and large crowds. Sgt. Wohl's testimony is thus directly relevant—indeed, crucial—to plaintiffs' failure-to-train *Monell* claims. Even without the benefit of having conducted Sgt. Saturnin's deposition, it is self-evident that he will not be an adequate substitute for Sgt. Wohl's extensive first-hand knowledge regarding mass protest training—one of the central issues in these consolidated cases. Plaintiffs seek Sgt. Wohl's testimony not only because he was involved in designing the CPACE [Constitutional Policing and Community Events] training class (which Defendants argue Sgt. Saturnin will be able to speak to), but because of Sgt. Wohl's extensive involvement in trainings relating to policing mass protests and large crowds. Per Sgt. Wohl's prior recorded statements, he was assigned to the Disorder Control Unit for six years, where he conducted trainings on Civil Disorder, and participated in designing the Strategic Response Group (SRG), a specialized NYPD unit that was deployed in response to multiple incidents underlying the Plaintiffs' claims. Ex. A at DEF_000479109.[3] Indeed, Wohl represented that he personally trained SRG personnel. *Id.* Furthermore, Sgt. Wohl currently teaches relevant First Amendment training that purportedly derived from lessons learned from the policing of the 2020 Floyd protests and is a CPACE coordinator. *Id.* at DEF_000479109. Sgt. Wohl's statements demonstrate his uniquely broad and relevant knowledge of NYPD's trainings and tactics relevant to situations involving large crowds, and how that training has evolved over time. Just yesterday, Chief Thomas Conforti confirmed at his deposition that Sgt. Wohl helped to develop disorder control training, was involved in conducting the training, and has extensive firsthand knowledge. This specific, personal knowledge of relevant facts renders Sgt. Wohl's testimony critical to the Plaintiffs' failure-to-train *Monell* claims.

### B. The Depositions of Chief Wedin, Sgt. Wong, and Deputy Inspector Soberal Would Not Be Duplicative of their Predicates

**Chief Harry Wedin, Former Chief of Special Operations**

While Defendants argue that Chief Wedin's testimony is duplicative of Chief D'Adamo and Gerard Dowling, as Chief of Special Operations during the 2020 Protests, Chief Wedin possesses unique knowledge which warrants allowing his deposition to continue. First, in Defendants' own

---

[3] As this document was produced with a "confidentiality" designation, it is not appended to this letter. Instead, Plaintiffs are emailing the full document to Chambers and, per the Court's Practice 2(E), Defendants must now make an application to seal this document.

production related to Chief Wedin's scheduled deposition, he is listed as being present not only at Mott Haven on June 4, but also ten other protests that are central to the *Payne* and *People* cases. For some of these protests, Plaintiffs have not had the opportunity to question high-ranking officers about the deployment, planning, and oversight of the protests, such as the protests on May 30 and May 31 at Union Square, May 31 and June 2 at Barclay's, and thus it is important to question Chief Wedin about his personal knowledge.

Second, although Defendants claim that Chief Wedin's deposition would be duplicative of Chief D'Adamo, they have adjourned that deposition until after May 3, the scheduled date for Chief Wedin, and thus the parties cannot know whether Chief D'Adamo will be able testify to these incidents or whether there will be any duplication. Defendants have not sought to stay briefing based on their delay in scheduling Chief D'Adamo. Additionally, while Chief Dowling—who has already been deposed—was personally present at some of the same protests, he denied engaging in planning for protests beyond the Mott Haven protest on June 4, and thus his testimony is not a substitute for Chief Wedin. Even his planning for Mott Haven was generally restricted to ensuring the resources requested by others—and therefore decided and dictated by others—was available.

Finally, Chief Wedin's deposition is confirmed for May 3, 2023, and Plaintiffs' counsel has already reserved a court reporter and undertaken extensive preparation for the deposition. Defendants have also produced documents related to that deposition, so there is no efficiency for the parties in cancelling it at this time. For these reasons, Chief Wedin's deposition will not be duplicative and should proceed as planned.

**Investigative Unit Investigator Sergeant Shuzhen Wong**

The *Gray* plaintiffs have noticed Sgt. Wong because of her firsthand knowledge of the NYPDs failure to properly investigate or discipline Sgt. Christopher Hewitson despite overwhelming video evidence that he had assaulted photojournalist Jason Donnelly (who is one of the plaintiffs in the Gray case). By letter to Mr. Donnelly dated April 29, 2022, the CCRB informed Mr. Donnelly that it had Substantiated allegations that Sgt. Hewitson used physical force against Mr. Donnelly while he was attempting to cover a peaceful protest for the *Daily Mail* newspaper; had damaged Mr. Donnelly's camera equipment; had interfered with Mr. Donnelly's use of a recording device; and had provided a false official statement to the CCRB. Additionally, on April 21, 2022, the CCRB referred the Donnelly matter to the NYPD's Administrative Prosecution Unit for prosecution of Sgt. Hewitson. Moreover, at his deposition last week, Sgt. Hewitson admitted that he is the officer shown in a video assaulting Mr. Donnelly. Yet, in stark contrast, a purported "investigation" of the same exact incident conducted by Sgt. Shuzhen Wong from the NYPD's Investigative Unit was closed as "officer unidentified" despite the fact that she was in communication with the CCRB which had already identified Hewitson as a likely suspect. Far from finding excessive use of force or other misconduct by Sgt. Hewitson, Sgt. Wong and her investigative colleagues did not even bother to interview him. Sgt. Wong's testimony is thus highly relevant not only to Mr. Donnelly's individual claim, but also to the *Gray* Plaintiffs' failure-to-discipline *Monell* claim.

In their February 8 letter motion, the City contended that Sgt. Wong's testimony "would be duplicative of 30(b)(6) witness Captain Lauren Foster, who is designated to testify as to the initiation, conduct, and outcome of [IAB] investigations . . . and the disciplinary actions taken by the NYPD" against officers accused of misconduct during the Floyd protests. Captain Foster's deposition was conducted on April 13, and she is far from an adequate substitute for Sgt. Wong's first hand testimony. Although asked about the Donnelly incident, Captain Foster testified that "Sgt. Wong is not an IAB investigator," but instead is an investigation unit investigator ("IUI") that operates within an outside borough. Ex. B (Foster Tr.) at 250. Additionally, when asked about records showing that Sgt. Wong had interactions with the CCRB, and whether that was a common practice by NYPD investigators, Captain Foster testified "I'm not sure" and "I don't know." *Id* at 253–54. Captain Foster's testimony is surely not an adequate substitute for Sgt. Wong's detailed, first hand testimony regarding what she did and didn't do as part of her investigation into the Donnelly incident.

**Deputy Inspector Isaac Soberal**

Defendants argued that Deputy Inspector Soberal's testimony would be duplicative of Inspector Robert Gallitelli. ECF No. 841 at 11. During the March 6 conference, the Court deferred ruling on Deputy Inspector Soberal until after Inspector Gallitelli's deposition was taken, provided that Gallitelli's deposition was completed by April 14. Tr. 50:22-51:17; 54:3–8; 59:1–9. The Court further ordered Defendants to include the purportedly duplicative witnesses (*i.e.*, Soberal) to be included in the deposition scheduling pending the Court's final decision on whether to grant the protective order precluding their depositions. *Id*. 52:14–53:7. However, Defendants unilaterally cancelled Soberal's deposition (previously scheduled for early May), taking the position that the Court already granted the protective order motion as to Deputy Inspector Soberal because the Defendants had fulfilled the condition of scheduling Inspector Gallitelli by April 14. Defendants' position takes a narrow comment by the Court out of context and has prejudiced Plaintiffs by delaying Soberal (assuming he goes forward) to a later time in the schedule, after higher-level witnesses whose testimony should build on Soberal's. Specifically, requiring Gallitelli to be deposed by April 14 seems to serve no other purpose than to allow further briefing by today as to whether that testimony might be duplicated by Soberal and is therefore why Plaintiffs believe the Court did not intend to outright cancel Soberal's deposition without further consideration of what Gallitelli was able to testify to. Accordingly, to the extent Defendants' have abandoned any duplicativeness argument based on their interpretation of the Court's ruling, Plaintiffs request that the Court find that Defendants have waived any argument that Soberal's testimony is duplicative of Gallitelli's.

In any event, Inspector Gallitelli's testimony highlights several ways that Deputy Inspector Soberal's experience during the 2020 protests, and testimony to be elicited from him, is not cumulative. For example, Inspector Gallitelli testified that Deputy Inspector Soberal responded to widespread commercial burglaries and vandalism, or looting, that took place on Fordham Road in the Bronx on June 1, 2020. Gallitelli Tr. 98:5–20. Because Inspector Gallitelli did not respond to that looting incident, he could not provide information crucial for a comparative understanding of NYPD's under-resourced response to known and tangible violence, in contrast with their overpowering response to peaceful protest. *Id*. 99:9–13. Gallitelli also indicated that Soberal may have played a role in relaying directions from himself or from Chief Lehr—the commanding officer of Patrol Borough Bronx—to the numerous officers and units mobilized in

response to the June 4th protest in Mott Haven, and therefore would be a key witness for understanding the orders given directly to responding officers.

Gallitelli also testified that secondhand information about bricks or rocks being found near "the Hub" – the initial location for the June 4th Mott Haven protest—was a significant factor in his assessment that the protest had potential for violence and property damage. Gallitelli Tr. at 152:11–15; 155:19–156:8. Gallitelli testified that he did not see those bricks or rocks himself, and Plaintiffs have reason to believe that Soberal has non-cumulative testimony relevant to this alleged incident. DEF_000403905 (CCRB Interview of I. Soberal, Jan. 20, 2021, at 26:12-26:55).[4] Accordingly, it would be important to question Deputy Inspector Soberal directly about this incident.

* * *

We therefore respectfully request that the Court order the depositions of John Miller, Sgt. Shuzhen Wong, Sgt Stuart Wohl, Chief Harry Wedin, and Deputy Inspector Isaac Soberal to proceed.

Respectfully submitted,

*s/ Lillian M. Marquez*
Lillian Marquez, Assistant Attorney General
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-6401
Lillian.Marquez@ag.ny.gov

CC: All counsel of record

---

[4] As Defendants marked this audio interview file as confidential, Plaintiffs will submit a quotation from the audio file to Chambers as the file itself is too large a file to transmit by email and allow time for Defendants to make an application to seal that file.