

**SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK , NEW YORK 10007

Peter Scutero
*Senior Counsel*
pscutero@law.nyc.gov
Phone: (212) 356-2410
Fax:  (212) 356-1148

May 19, 2023

**By ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007
To All Counsel of Record

    In Re: *New York City Policing During Summer 2020 Demonstrations*
        20 Civ. 8924 (CM)(GWG)
        This filing is related to all cases

Your Honor:

    I am a Senior Counsel in the Special Federal Litigation Division of the New York City Law Department, and one of the attorneys assigned to the defense of the above-referenced matter. Defendants write pursuant to Rule 2.A. of the Court's Individual Practices to be relieved from the Court Order dated April 26, 2023 (the "April 26th Order").  (Docket No. 961).

    The April 26th Order has placed significant burdens upon Defendants in that it requires production of the NYPD Administrative Guide (the "AG") by May 19th.  However, as NYPD prepared to undertake this task it became clear that it is unmanageable for Defendants and disproportionate to the needs of the case.  Defendants met and conferred with Plaintiffs for purposes of finding an alternative means of narrowing the scope of production, and seeking relief from the April 26th Order.[1]  An impasse arose after the parties were unable to come to an agreement on these issues.

---

[1] Present for Defendants at the meet and confer were the undersigned and Michael Olney.  Present for Plaintiffs were Tahanie Aboushi, Lillian Marquez, and Veronica Salama.

At a meet and confer on April 21, 2023,[2] Defendants communicated that there are difficulties with producing the AG. Plaintiffs requested that Defendants provide their objections to producing the AG by April 24th and to produce the AG, except sections subject to privilege, by May 9th. Defendants agreed to provide objections to producing the AG by April 24th. On April 25, 2023, Plaintiffs filed a proposed order with respect to the AG as Exhibit 1 to a letter addressed to the Court. (Docket No. 958). On April 26, 2023, the Court endorsed Plaintiffs' proposed order. The April 26th Order provides:

1. On or before April 24, 2023, Defendants shall state whether they are going to assert any previously un-asserted objection to producing the entire NYPD Administrative Guide other than privilege.
2. On or before April 28, 2023, if Defendants are not asserting objections, Defendants shall provide a date certain for the complete production of the Administrative Guide aside from privilege, and the production of a privilege log for any withholding. If Defendants are asserting objections, they shall provide a date certain for production, along with a date certain for articulating any objections.
3. The date(s) provided pursuant to ¶ 2 herein shall be deemed incorporated in this Order.

(Docket No. 961).

On April 28, 2023, Defendants informed Plaintiffs that they would produce the AG by May 19, 2023. However, on May 8, 2023, Defendants emailed Plaintiffs and informed them of the nature of the AG and the way it is maintained, that it is a living document that changes regularly, making it difficult to produce in response to Plaintiffs' request. See Exhibit A. Because of the unique nature of the AG, Defendants requested Plaintiffs to provide a specific operative time frame and the particular sections of the AG that Plaintiffs claim were relevant to the case in order to expedite the production and lessen the burden to Defendants. Id. Defendants provided Plaintiffs with a copy of the AG's Table of Contents to assist with the selection of relevant sections from the AG. Id. Later that day, Plaintiffs responded by email indicating that Plaintiffs wanted the production of the entire AG for the entire timeframe of the list of protests on Schedule A (May 28, 2020 to February 12, 2021). Id. Plaintiffs did not provide Defendants with a list, or any other document or indication, of particular AG sections that could have expedited production or made their request more reasonable as Defendants requested. Id.

On May 17, 2023, Defendants emailed Plaintiffs again informing them of the difficulties with producing the AG in the manner that they want it and the burdens to Defendants. Id. Defendants further informed Plaintiffs that their insistence for all versions of the AG and unwillingness to select relevant sections of the AG for production on a rolling basis placed Defendants in a position where they could not comply with the April 26th Order. Id. Defendants therefore requested a meet and confer to take place on May 18th to discuss the issues with producing the AG. Id.

At the May 19th meet and confer, Defendants offered alternative methods for producing the AG to Plaintiffs so that they would receive any relevant sections more expediently and to lessen the burden to Defendants. As Defendants explained to Plaintiffs, the alternatives are based upon

---

[2] Present for Defendants at the April 21st meet and confer were the undersigned and Daniel Braun. Mr. Braun's last day of employment at the Law Department was April 21st. Present for Plaintiffs were Remy Green and Lillian Marquez.

Defendants' ability to produce relevant subsections of the AG at a faster rate than the entire AG at one time. Defendants would then be able to produce one or two relevant subsections, depending on the needs of the case, the following week for upcoming depositions as Plaintiffs had previously explained that they intended to use the AG as deposition exhibits. The remaining relevant subsections would be produced to Plaintiffs on a rolling basis. Defendants offered to provide Plaintiffs with a list of relevant subsections from the AG or to accept proposed relevant topics from Plaintiffs to assist in prioritizing the subsections of the AG that Plaintiffs purportedly needed. Nonetheless, Plaintiffs refused to accept anything less than the entire AG including any and all versions for the time period of May 28, 2020 to February 12, 2021. However, Defendants see no rational reason why Plaintiffs would need all versions of the AG for the remaining depositions, let alone to support their claims in these cases or how certain sections from the AG like Licenses and Permits, Medical Health and Wellness, or Employees Rights and Responsibilities are relevant and have any probative value. These are just some examples of how what Plaintiffs are seeking bear no relevance to these cases.

In addition, at the meet and confer, Defendants explained the burdens in producing the AG in the manner in which Plaintiffs insist on it being produced. The difficulty in producing the entire AG including all revisions and versions for the entire timeframe of May 28, 2020 to February 12, 2021, as Plaintiffs have demanded, comes from the nature of the AG and how it is maintained. See Declaration of Bridget Fitzpatrick attached hereto as Exhibit B. The AG is continually updated and stored digitally. Id. In addition, the entire AG is not stored as one singular document by specific dates. Id. For example, the reason for a revision to the AG from May 28, 2020 may not be noted in any particular AG subsection, but instead, the revision may have been the result of modifications to other policies, such as to the Patrol Guide, an Administrative Order, or some other directive or governing document. Id. As such, the dates of any revisions and amendments to the AG sections may not be in a singular location and may require a manual search by NYPD. Id. In addition, any subsection the AG can be revised at different times within each other and so for Plaintiffs to continue to ask for the entire AG of all changes and revisions at any given time from May 28, 2020 to Feb. 12, 2021 is very difficult to be done. The burdensome nature is contrasted with the fact that Plaintiffs have not explained how the entire AG is relevant or practical for use as evidence in these cases.

Indeed, due to the continuous updating to the AG, from multiple sources that may not be readily available, pinpointing the subsections that are subject to revision and how they were revised and what they were revised from, for any given time period, becomes extraordinarily labor intensive and time consuming. Id. It is these factors that explain why it took four NYPD members of service 12 hours to just print the most recent version of the AG and three hours to confirm that it was the most up to date version. Id. Plaintiffs' demand would essentially require Defendants to undertake a similar process for a minimum of 51 dates(the number of dates on the Schedule A), and most likely more since the AG likely changed on non-Schedule A dates during the period of May 28, 2020 to February 12, 2021. To go through such a process would overburden the Defendants and is not reasonable or proportional to the needs of the case, and it explains why Defendants realize now that they cannot comply with the April 26th Order and respectfully ask to be relieved.

Defendants reiterated that they would not be able to comply with the April 26th Order and informed Plaintiffs that they would seek to be relieved from the April 26th Order. Plaintiffs declined all of Defendants' proposals. Instead, they provided the following position:

Plaintiffs oppose Defendants' extension request. Defendants have provided no plausible explanation for their utter failure to produce any part of the Administrative Guide from the time of the Protests, in accordance with their Court-ordered commitment to produce the "entire Administrative Guide" by the date of their own choosing, today, May 19. ECF No. 961. Defendants have had years since they first received Plaintiffs' document requests, nearly three months since receiving specific notice of their failure to produce the Guide, and nearly four weeks since the proposed order was entered to produce it. Instead, Defendants have, yet again, relied upon being excused from their obligations to abide by Court orders by attempting to claim a burden but failing to articulate what efforts, if any, were made to produce the Guide, how production differs from that of the Patrol Guide, or why it should not be held the promise *they* made. To that end, Defendants offered a Table of Contents that has nearly no substantive information from which Defendants propose Plaintiffs prejudice themselves by guessing at what sections should be produced. Before ruling on Defendants' request, Plaintiffs ask that the Court allow them until the end of Monday to file a separate letter laying out more fully Defendants' delinquency in complying with clear Court orders and why they should be held to this one.

Plaintiffs' argument fail to appreciate, out of convenience or shear misunderstanding, the burdensome nature of their demand for the entire AG for a past period of time. In support of their view that there is no burden, Plaintiffs suggested that there were no revisions to the AG during the 2020 Protests and cited to a public document, referring to it as a timeline, that is maintained by the NYPD. See Ex. A. However, the document they cited to does not constitute a complete list of the AG provisions that have been revised, and certainly not those from 2020. As stated earlier, not all of the revisions to the AG are found in AG documents, and NYPD does not make all AG documents, including revisions, publicly available.

With respect to Plaintiffs' argument about not complying with Court orders, the Defendants have not shied away from informing Plaintiffs that complying with the April 26th Order would not be possible. In fact, Defendants have consistently maintained that producing the AG would be a difficult task and a burden. We attempted to comply with this Order and it became clear that it was not possible without tremendous burden and time. Moreover, Defendants took proactive steps, by advising Plaintiffs of publicly available parts of the AG, providing alternative ways of producing the relevant AG sections to Plaintiffs, to not only avoid noncompliance with the April 26th Order but also to mitigate any purported prejudice to Plaintiffs. Indeed, Defendants offered to provide a list of <u>subsections</u> to Plaintiffs so that they can select and prioritize those that are most relevant to their cases and would be used in upcoming depositions. Defendants also offered to provide AG subsections before upcoming depositions, and offered to provide relevant subsections next week. Plaintiffs declined all of Defendants' offers without even mentioning what parts of the AG they would need for their depositions. Defendants' proposals were constructive, offered in good-faith, and made for the purpose of providing documents to Plaintiffs as quickly as possible after it became clear that compliance with the April 26th Order would not be possible. Instead, Plaintiffs elected to solely rely on the April 26th Order and to not consider any constructive solutions. For example, Plaintiffs insisted on the entire AG, those public and non-public, even after Defendants pointed them to publicly available sections that, after even a cursory review, showed were not all relevant to these cases.

Given the burdens placed on Defendants to comply with the April 26th Order, their good-

faith attempts to provide alternative means of production to Plaintiffs, and Plaintiffs' refusal to work on a reasonable and proportional solution to this dispute with Defendants, Defendants respectfully request the Court schedule a conference and relieve the Defendants from the April 26th Order and provide Defendants with additional time to produce the relevant non-privileged portions of the AG on a rolling basis pursuant to one of Defendants' proposals.

      Thank you for your time and attention to this matter.

Respectfully submitted,

<em>Peter Scutero</em> /s

<em>Senior Counsel</em><br>Special Federal Litigation Division

Encl.

cc:    ALL COUNSEL (via ECF)