## Former DCLM Ernest Hart Deposition Topics

1. Deponent's knowledge and planning of, and participation in the NYPD responses and operations related to the Summer 2020 Protests, which means the protests, demonstrations, and gatherings identified in Amended Schedule A;
2. Deponent's instructions, guidance, and orders to other officers and members of the NYPD;
3. Deponent's knowledge of and responsibilities related to disciplinary action taken by the City of New York against members of the NYPD for their conduct or failure to act during the Summer 2020 Protests;
4. Deponent's monitoring and review of the NYPD's responses to large gatherings, including the Summer 2020 Protests;
5. Deponent's knowledge of and/or participation in the City's interpretation and enforcement of the Curfew Orders;
6. Meetings attended regarding interpretation and enforcement of the Curfew Orders and the decisions made, and rationale for those decisions;
7. Deponent's knowledge of and/or participation in NYPD's response and investigation into any reports of misconduct by members of service during the 2020 Protests, including but not limited to press reports, incidents raised in social media, incidents raised by community members, and investigations by the CCRB, DOI, and OAG, any district attorney's office and specifically:
    a. Response to the Human Rights Watch letter and investigation related to the June 4th Mott Haven protest,
    b. Response to the National Lawyers Guild regarding a letter concerning the same,
    c. Response to the New York City Bar regarding a letter concerning the same,
    d. Response to reports of Legal Observers being targeted by the protests,
    e. Response to reports regarding delays in arraignments by the OCA,
    f. The letters responding to criticism that DC Hart personally signed regarding Mott Haven;
8. Deponent's knowledge of and/or participation in analysis and tracking of arrests during the protests (*See* DEF_E_PD_00071847);
9. Deponent's knowledge of and/or participation in coordination with NYPD and Mayor's office on protest response and reform proposals;
10. Deponent's knowledge of and/or participation in Legal Bureau's coordination with IAB and CCRB investigations;
11. Deponent's knowledge of and/or participation in drafting and dissemination of FINEST messages;
12. Deponent's knowledge of and/or participation in NYPD's response to DAs offices' decision to no longer prosecute arrests for unlawful assembly and disorderly conduct at demonstrations;
13. Deponent's knowledge of and/or participation in NYPD's response to the AG hearing and preliminary report;
14. Deponent's knowledge of and/or participation in the preparation of Commissioner Shea's testimony to the AG Hearing;

15. Deponent's knowledge of and/or participation in the revision of training during/after 2020 protests;
16. Deponent's knowledge of and/or participation in NYPD's preservation of materials in anticipation of litigation relating to the Protests, including actions taken in response to letters received by attorneys during the summer of 2020 calling for NYPD to collect and preserve relevant materials;
17. Deponent's knowledge of and/or participation in after-action reviews, reports and analyses of NYPD protest response;
18. Deponent's knowledge of and/or participation in public messages related to NYPD protest response, including responses to press reports, town halls, social media and op-eds;
19. Deponent's knowledge of and/or participation in the creation and dissemination of "cheat sheets," templates and other materials created by the Legal Bureau to aid officers in enforcement;
20. Deponent's knowledge of and/or participation in the creation and dissemination of notes, scratch notes, and/or narrative templates and other materials created by the Legal Bureau to be used as narratives in arrest reports and other arrest paperwork.
21. Deponent's knowledge of and/or participation in the creation and dissemination of Legal Bureau Bulletins;
22. Deponent's knowledge of and/or participation in planning and preparation for the protests by Legal Bureau personnel;
23. The Op-Ed Deponent drafted and circulated regarding certain techniques used at the protest, how he arrived at the conclusions therein including the decision to condemn the use of certain law enforcement techniques, as well as the review process for the same;
24. The legal ethical issues caused by members of the NYPD seizing and publicly reading privileged materials from legal observers, and the NYPD Legal Bureau's efforts to comply with its attorneys' ethical obligations after learning the same, including the obligation to return privileged materials improperly seized, as well as any investigation the NYPD Legal Bureau conducted upon learning that officers had seized privilege materials;
25. Deponent's knowledge of and/or participation in the response to the New York Times' publication of a series of videos about brutality at the Protests, including the high-level meetings about this subject and how to address discipline (or a lack thereof) from the Protests in the wake of the New York Times' reporting;
26. The basis, support, and origin of Deponent's claim that "[p]lainly there cannot be a legal observer of a protest that is itself illegal";
27. Deponent's knowledge of and/or participation in the NYPD policies and treatment of journalists and the press while covering these protests;
28. Deponent's knowledge of and/or participation in coordinating with DCPI regarding the NYPD Policies and treatment of journalists and the press generally;
29. Deponent's knowledge of and/or participation in the seizure of, and decision to return Amr Alfiky's seized NYPD press credential in February of 2020.

## **Chief of Staff Oleg Chernyavsky Deposition Topics**

1. Deponent's knowledge and planning of, and participation in the NYPD response and operations related to the Summer 2020 Protests, which means the protests, demonstrations, and gatherings identified in Amended Schedule A;
2. Deponent's role in, observation of, responsibilities, and actions related to attendance at any Summer 2020 Protest.
3. Deponent's instructions, guidance, and orders to other officers and members of the NYPD;
4. Deponent's knowledge of and responsibilities related to disciplinary action taken by the City of New York against members of the NYPD for their conduct or failure to act during the Summer 2020 Protests;
5. Deponent's monitoring and review of the NYPD's large-scale incident responses, including the Summer 2020 Protests;
6. Deponent's knowledge of and/or participation in the drafting, interpretation, and enforcement of the Curfew Orders;
7. Deponent's knowledge of and/or participation in the NYPD's response to the AG hearing and preliminary report;
8. Deponent's knowledge of and/or participation in the preparation of Commissioner Shea's testimony to the AG Hearing;
9. Deponent's knowledge of and/or participation in the coordination with NYPD and Mayor's office on protest response and reform proposals;
10. Deponent's knowledge of and/or participation in the creation and dissemination of "cheat sheets," templates and other materials created by the Legal Bureau to aid officers in enforcement;
11. Deponent's knowledge of and/or participation in the creation and dissemination of notes, scratch notes, and/or narrative templates and other materials created by the Legal Bureau to be used as narratives in arrest reports and other arrest paperwork;
12. Deponent's knowledge of and/or participation in the creation of LRAD messages and decisions related to dispersal orders;
13. Deponent's knowledge of and/or participation in NYPD's response to DAs offices' decision to no longer prosecute arrests for unlawful assembly and disorderly conduct at demonstrations;
14. Deponent's knowledge of and/or participation in drafting and dissemination of FINEST messages;
15. Deponent's knowledge of and/or participation in meetings regarding "protest deployment";
16. Deponent's knowledge of and/or participation in deployment of members of Legal Bureau to protests;
17. Deponent's testimony to CCRB that led to the reversal of discipline for Rice;
18. The factual basis for the testimony to the CCRB, and the sources (or lack thereof) of the factual claims in that testimony;
19. The process that led to that testimony, including the decision to waive privilege and testify about legal advice given to Rice;
20. All other subject matter of the advice revealed to the CCRB;
21. The process of deciding it would be Deponent to testify to CCRB, including what appears to be the personal decision by then-Commissioner Shea;

22. The conversation at which Deponent was "the ranking executive" and stated "protests aren't essential business and services";
23. Deponent's claim that the Legal Bureau was not aware of the Mayor's explicit guidance that legal observers were exempt from the curfew, including Deponent's claim that was true even after Legal Bureau officials reviewed the attestations of legal services carried by legal observers.