

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

May 24, 2023

**BY ECF**

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United Stated District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse, 500 Pearl Street
New York, New York 10007

    Re:    ***In re: New York City Policing During Summer 2020 Demonstrations,***
               ***No. 20-CV-8924 (CM) (GWG)***
              ***This Letter Relates to All Cases***

Dear Judge Gorenstein:

    We write on behalf of the non-stayed Plaintiffs in these consolidated cases to provide further briefing in opposition to Defendants' renewed motion for a protective order as to the depositions of Professor Ernest Hart and Oleg Chernyavsky. ECF Nos. 841 (Mot.), 952. Defendants previously sought to strike the notices of deposition for these witnesses as former members of the NYPD Legal Bureau. Mot. at 7–8. On April 14, as directed by the Court, Plaintiffs provided Defendants with a list of topics that we intend to cover in both Professor Hart and Mr. Chernyavsky's depositions. Ex. A. The Court ordered the parties to provide further briefing after the deposition of Sgt. Kenneth Rice, which took place on March 29 and May 17. As explained below, Sgt. Rice lacked knowledge of topics, including regarding the enforcement of curfew orders and treatment of legal observers and journalists, that Professor Hart and Chernyavsky would have and should not preclude the latter witnesses' depositions.

## BACKGROUND

    On June 4, 2020, a pre-planned police operation at Mott Haven, Bronx entrapped a group of protesters and other individuals, including medics and legal observers,[1] on a block of the Bronx, until the start of an 8 PM curfew. Despite refusing their pleas to be let go prior to 8 PM, the officers declared those entrapped to have willfully violated the curfew order and proceeded, in often brutal fashion, to arrest them. As he testified at his May 17 deposition, Sgt. Kenneth Rice, a uniformed representative of the NYPD's Legal Bureau, conveyed to officers at Mott Haven an instruction

---

[1] Legal observers are individuals trained to monitor and document law enforcement behavior that can later be used in criminal defense cases and litigation to challenge police misconduct.

that came "from the top" of the legal team that oversaw the NYPD's response to the protest—*i.e.*, then-Deputy Commissioner (DC) Hart and Mr. Chernyavsky—that legal observers could be arrested under the curfew order. Officers acted on that directive and arrested numerous legal observers.

Previously, representatives of the Office of the Mayor, who had issued the curfew order, Ex. B, informed a legal observer organization that legal observers were, in fact, exempt under that same order, Ex. C at 2 n.2.[2] Sgt. Rice testified that he believed that the Mayor's Office had conversations with the NYPD Legal Bureau as to who was exempt from the curfew but had no knowledge of the timing or content of those conversations as he was not part of them. He also testified that Hart would have more knowledge on curfew enforcement issues. Both Hart and Chernyavsky were included in an emails circulating drafts of FINEST Messages providing guidance to officers on the curfew order, and Mr. Chernyavsky had authored an email in the same chain with the subject line "RE: Essential Work during the Curfew of June 2, 2020." Ex. D.

On September 16, 2020, Professor Hart personally signed the letter NYPD sent to Human Rights Watch attempting to justify the brutality at Mott Haven on June 4, 2020, by claiming that "the intent of this assembly was to engage in violence and inflict harm." Ex. E.[3] In support, Hart cited but did not attach "[s]ocial media advertisements, postings, and invites to the event [that] encouraged killing and injuring police officers, looting, resisting arrest, and fire-bombing police vehicles" and the recovery of a gun, hammers, fireworks, and lighter fluid from individuals either captured close in time or location to the protest. *Id.* at 2. Then-DC Hart also claimed that officers lawfully detained individuals who they "observed [] were not essential workers in public" after the 8 PM curfew, including legal observers. Declaring the entire assembly unlawful, Hart concluded that "there cannot be a legal observer of a protest that itself is illegal." *Id.* at 2. Sgt. Rice testified that he had no role in drafting this letter or any other published letter relating to the curfew.

During the Civilian Complaint Review Board's (CCRB) investigation of Sgt. Rice's instruction at Mott Haven to arrest legal observers, the CCRB initially recommended disciplinary charges against Sgt. Rice. It then withdrew the recommendation when Mr. Chernyavsky testified that he had given legal advice about who was and was not exempt from the curfew at the June 4 protest and had instructed Sgt. Rice to authorize the arrest of legal observers. Mr. Chernyavsky testified to the CCRB that he had not learned of the Mayor's Office interpretation of the curfew order but that it would not have changed the Legal Bureau's instruction that legal observers could be arrested. The Amended Complaint in the *People of the State of New York v. City of New York* challenges the detention of legal observers at Mott Haven and at least one other protest without probable cause.

Based on emails, calendar entries and deposition testimony to date, Professor Hart's wide-ranging duties as Deputy Commissioner of Legal Matters appear to have included operational and

---

[2] Letter from Andy Izenson, President, Nat'l Lawyers Guild-NYC, to Commissioner Dermot Shea, NYPD Police Commissioner (June 7, 2020) (referencing email from Jenny Sobelman, Chief of Staff, Mayor's Office of State Legislative Affairs, confirming that legal observers are exempt, an email that was produced but marked confidential).

[3] Letter from Ernest F. Hart, NYPD Deputy Comm'r, Legal Matters, to Ida Sawyer, Acting Crisis Conflicts Director, Human Rights Watch (Sept. 16, 2020), *available at* Annex II_0.pdf (hrw.org)

policy decisions, drafting of correspondence on behalf of the commissioner, the creation of FINEST message, legal bulletins and other guidance for officers, and directing preservation of records related to the Protests. Professor Hart was also in the small, high-level group discussing how to respond to the *New York Times*'s release of a series of videos about brutality at the Protests — and how to address discipline or the lack thereof. He was included in emails with other NYPD leadership tracking and analyzing arrest data during the period of the early summer Protests, May 28 to June 7. Likewise, he — with Mr. Chernyavsky — was involved in discussing possible reforms to use-of-force policies in the wake of the Protests. Sgt. Rice also testified that DC Hart was responsible for communicating directly with the [DCPI] Former Deputy Mayor Dean Fuleihan who himself testified that Professor Hart was part of some of the daily conversations the Mayor's Office had with NYPD leadership about policing of the Protests.[4] Professor Hart also interfaced with representatives of journalists whose press credentials had been stripped from journalists while covering police action and may have played a personal role in the return of Plaintiff Amr Alfilky's seized credentials. Mr. Chernyavsky was likewise included in several emails between members of the Mayor's Office discussing concerns by community members about the Protests and was the author of other guidance, including FINEST messages.

## ARGUMENT

In seeking to quash two depositions of former Legal Bureau attorneys — attorneys who gave direct orders to NYPD officers and signed off on specific strategies used during the protests — Defendants argue that depositions of similarly-situated opposing counsel are not warranted because they lack relevant personal knowledge that, in any event, may be privileged or duplicative of document discovery. But these witnesses are not opposing counsel and each personally played a core, unique role in the response to the Protests.

Neither Professor Ernest Hart nor Chief of Staff Oleg Chernyavsky represents any of the defendants in this litigation, nor are they affiliated with the New York City Law Department, and, so, are not opposing counsel. Defendants mistakenly cite *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003), Dkt. No. 841 at 7-8, but that case is inapposite. The concern that an attorney deposition "could potentially lead to the disclosure of the [opposing] attorney's litigation strategy," *id.* at *5 (citing *Friedman,* 350 F.3d at 71), is simply not present where the attorney sought to be deposed "is not affiliated with a lawyer representing any party in the instant litigation and where his sole relevance is to testify to his recollection of historical events he witnessed that are at the center of this case," *id.* at *6. *Friedman*, therefore, does not apply. *See, e.g.*, *Rekor Sys., Inc. v. Loughlin*, No. 19-cv-7767, 2022 WL 671908, at *2 (S.D.N.Y Mar. 7, 2022) (distinguishing *Friedman* where the attorney sought to be deposed is not affiliated with counsel for the other party in the pending litigation).

Regardless, the concern in *In re Friedman* over the "risk of encountering privilege and work-product issues" is also low because Defendants have waived the attorney-client privilege as it relates to the Legal Bureau's interpretation and enforcement of the curfew orders. The attorney-client privilege applies to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *In re County of Erie*, 473 F.3d 413, 419 (2d Cir.2007). However, "[w]hen an attorney

---

[4] The certified transcripts are not yet available and are based on memory and a rough transcript.

is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, business consultant, banker, referee or friend, that consultation is not privileged." *Id.* at 421. Courts "construe the privilege narrowly because it renders relevant information undiscoverable [ ] [and] apply it only where necessary to achieve its purpose. The burden of establishing the applicability of the privilege rests with the party invoking it." *Nat'l Day Laborer Org. Network v. United States Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 692 (S.D.N.Y. 2020).

Both Hart and Chernyavsky have made clear what they advised their client with regards to the interpretation of the curfew order, and in so testifying they relieved Sgt. Rice of any internal disciplinary action.[5] That position is repeated by Professor Hart in his letter to the Human Rights Watch. Such open disclosure of counsel's advice extinguishes any privilege. *Brewer v. Hall*, No. CV 00-6072 (ADS)(ARL), 2005 WL 2219304, at *2 (E.D.N.Y. Sept. 12, 2005) ("[T]he Village initially waived the attorney-client privilege by deciding to publish the Village Attorney's opinion"). And to the extent the City of New York would seek to rely on their attorneys' advice to shield it from liability, that advice is subject to discovery. *See Granite Partners, L.P. v Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 96-cv-7874 (RWS), 2002 WL 737482, at *2 (S.D.N.Y. Apr. 26, 2002) (""It is well-established that when a party asserts a defense, such as the advice of counsel defense, that makes an attorney's advice an issue in the litigation, that party waives the attorney client privilege."). What remains are factual issues – including the basis for DC Hart's factual assertions in his letter to HRW (such as the violence of the protest at Mott Haven and that officers observed that legal observers were not essential workers), whether and when Professor Hart engaged in conversations with the Mayor's Office regarding curfew exemption and to what extent the Legal Bureau of the NYPD and not the Mayor acted *de facto* as policymaker with regards to interpretation and enforcement by the NYPD of the curfew order. There is also the question of why Mr. Chernyavsky's FINEST message regarding the curfew order omitted mention of the need to issue a dispersal order, Exs. B, D, and the extent of Mr. Chernyavsky's role in communicating to subordinates the Legal Bureau's curfew interpretation.

Further, much of Plaintiffs' interest in Professor Hart and Mr. Chernyavsky's testimony relates to their involvement in non-privileged policy and operational decisions about which Sgt. Rice (as a line-level officer) lacked knowledge. Sgt. Rice was not a witness to any conversations that then-Deputy Commissioner Hart or Mr. Chernyavsky had with the Mayor's Office or other members of the NYPD regarding its interpretation of the curfew order. As Sgt. Rice made clear in his testimony, he did not have knowledge of those conversations or of then-DC Hart's expertise on curfew enforcement and thus additional testimony is not duplicative. Nor was he involved in the high-level decisions about responses to reports of misconduct, reform proposals, and deployment decisions about which Plaintiffs wish to question Hart and Chernyavsky. In addition, Sgt. Rice had no involvement in communications with the DCPI, unlike Hart who discussed the arrest of journalist and *Gray* Plaintiff Amr Alfiky shortly before his seized press credentials were returned—a matter that Plaintiffs also wish to question him about. To date, Plaintiffs have not obtained testimony of witnesses who were personally involved or knowledgeable about the creation of curfew guidance or the NYPD's response to concerns regarding the treatment of journalists.

---

[5] Defendants have yet to produce the full CCRB file for that case but it is believed that CCRB believed it lacked jurisdiction to pursue disciplinary action against Mr. Chernyavsky and therefore withdrew its recommendation of charges against Sgt. Rice and ended its prosecution.

Honorable Gabriel W. Gorenstein
Page 5

  Accordingly, Sgt. Rice's deposition has not supplied the factual information Plaintiffs seek from Professor Hart and Mr. Chernyavsky. Considering their personal "role[s] in connection with" the core issues concerning, *inter alia*, the curfew orders and treatment of journalists, the lack of duplicative testimony, and the waiver of privilege as to curfew guidance, Professor Hart and Mr. Chernyavsky's depositions would not "entail an inappropriate burden or hardship" and should be allowed to go forward. *In re Friedman*, 350 F.3d at 72.

              Respectfully submitted,

              *s/ Lillian M. Marquez*
              Lillian Marquez, Assistant Attorney General
              Civil Rights Bureau
              Office of the New York State Attorney General
              Tel: 212-416-6401
              Lillian.Marquez@ag.ny.gov

CC: All counsel of record