# EXHIBIT C



**NATIONAL
LAWYERS
GUILD**

**New York City Chapter**
168 Canal Street, 6th Floor
New York, NY 10013
Telephone: 212-679-6018
Facsimile: 212-679-6178
Website: www.nlgnyc.org
Email: nlgnyc@igc.org

PRESIDENT
Andy Izenson
VICE PRESIDENTS
Tamara Bedić
Alek Felstiner
TREASURER
Andrew Sawtelle

EXECUTIVE COMMITTEE
Miles Ashton
Elena Cohen
Aaron Frishberg
Elba Galvan
Valeria Gheorghiu
Joel R. Kupferman
Matthew Main
Daniel L. Meyers
Milad Momeni
Alex Petkanas
Micah Prussack
Collin Poirot
Marc Ramirez
Andrew Sawtelle
Ann M. Schneider
Dan Shockley
Franklin Siegel
Martin R. Stolar

Representatives from
New York City Law Schools

Susan C. Howard
Executive Director

June 7, 2020

**BY E-MAIL**
Commissioner Dermot Shea
New York City Police Department
One Police Plaza
New York, NY 10038

RE:    Legal Observer Targeting and Detentions

Commissioner Shea:

We write to condemn your NYPD officers' unlawful targeting and detention of nine trained and clearly identified National Lawyers Guild ("NLG") Legal Observers ("LOs") in the Bronx on the night of June 4, 2020, and to demand that you: (1) remind all NYPD officers of the status and role of Legal Observers via a FINEST message and citywide department announcements to be made at roll calls in the presence of all working officers; and (2) discipline those officers, including the NYPD Legal Bureau officers present, who supervised, and were otherwise involved in, detaining and searching the LOs, and violating the confidentiality of their LO notes.

During the recently reignited Black Lives Matter protests, trained NLG LOs have observed gatherings to ensure the transparency and constitutionality of police conduct. Protecting constitutional rights should not to be understood as antagonistic to community safety. NLG supports the First Amendment rights of protesters, including those in the Black Lives Matter movement, and in order to do so, insists on the rights of Legal Observers to freely observe and document police activity in response to those protests.

**Background**

The First Amendment guarantees the rights to observe and document the activities of uniformed police in traditional public fora, including police responses to protest, and arrest activity, subject to reasonable time, place, manner restrictions.

Against that backdrop, LOs fulfill several important functions. For example, NLG LOs are trained to observe and document police conduct in order to ensure that it comports with the mandates of the United States Constitution and the laws of the State of New York. LOs are also critical third-party witnesses to demonstrations, gathering evidence that often enables judges and juries to make wise and fair decisions in legal proceedings arising from protest-related activities.

The work of NLG LOs and other LOs is designed to uphold and is consistent with the legal rights guaranteed under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; the NYPD's promises of "Courtesy, Professionalism, and Respect", along with their commitments to be lawful in their own conduct; and the smooth functioning of New York's court systems.

DEF_CCRB_0087203

NLG-NYC Legal Observers have been observing and documenting NYPD response to protests in the City streets since the late 1960's and are well-known to the NYPD. NYPD officers have long been on notice that a person taking notes at a protest, wearing the NLG LO hat is an NLG LO, and that as such they have the rights to observe police, speak to scene commanders, and gather the names of those detained, from a safe distance. The NYPD Patrol Guide explicitly permits properly identified Legal Observers "free access through police lines at the scene of any demonstration… subject only to restrictions necessitated by personal safety factors."[1]

NLG Legal Observers mark themselves in a manner calculated to be obvious to police as such: high-visibility, bright neon green caps with the words "National Lawyers Guild LEGAL OBSERVER" prominently displayed on the front, as well as Legal Observer identification badges and credentials.

The detentions of nine such clearly identified NLG LOs in the Bronx last Thursday night, as well as the seizures of their identifications and, in some cases, Legal Observer notes, can only be understood as targeted actions intended to intimidate Legal Observers and discourage people from legal observing. You should not tolerate such conduct from your subordinate NYPD officers. We will not.

### The June 4, 2020 Legal Observer Detentions

Legal Observers were specifically exempted from the curfew in writing by the Mayor's Office[2], a fact that was documented in printed attestations carried by every Legal Observer during the curfew period, including on June 4, 2020. Nevertheless, on June 4, 2020, in the Bronx, nine NLG LOs who were lawfully observing a protest were detained against their will and without warning – in many cases violently.

---

[1]      On civilian legal observers, the NYPD Patrol Guide says:

The Demonstration Observer Program established in cooperation with the Bar Association, City of New York permits properly identified observers free access through police lines at the scene of any demonstration. Observers will display prominently, on their outermost garment, a photo identification and a green armband bearing the inscription "Civilian Observer". All members of the service will extend every courtesy and cooperation to observers. Observers shall be permitted to remain in any area, or observe any police activity, subject only to restrictions necessitated by personal safety factors, as determined by the incident commander.

P.G. 213-11 (Policing Special Events/Crowd Control),

[2]      For example, on June 1, 2010, Jenny Sobelman, Chief of Staff, Mayor's Office of State Legislative Affairs, confirmed in an e-mail that jail, legal, and medical support for protesters were "exempt from the curfew."

DEF_CCRB_0087204

First, at around 7:30 p.m., a lone LO was seized and cornered by around eight uniformed NYPD officers who had been driving in an unmarked minivan. An officer seized the observer's LO notes, questioned him about them, and read some of them out loud, accusing him of "doing illegal counter-surveillance of the police." The officers – whose shield numbers were covered - mocked, disrespected, and attempted to intimidate the LO before releasing him after around 10 minutes. During the detention, as those officers denied knowing what a LO was, a message came over their radio: "A lot of LOs out tonight."

Then, around 8:00 p.m., that Legal Observer, and eight others – nine LOs total – were arrested at 136th Street between Brook Avenue and Brown Place. Those nine Legal Observers were restrained using flex cuffs, and were placed on the ground under arrest in an intersection with other detainees for between ten and twenty minutes.

Disturbingly, at least some of those arrests appear to have been supervised and/or ordered by a NYPD Legal Bureau attorney wearing a riot helmet bearing Shield No. 26435. When protesters verbalized concern about the arrest of an LO, that NYPD Legal Bureau officer responded by repeatedly shouting "Legal Observers CAN be arrested, you're good to go." Then, other LOs were arrested – in several cases, by being snatched off the sidewalk. At some point during their detention, another officer said that police had been ordered to round up "all the green hats."

Eight of the nine detained LOs[3] were gathered and taken to one side of the street, where police positioned them with their backs to the protesters (effectively preventing them from observing police conduct). Those eight LOs were then told that police needed to run their identification cards, and police invaded their bags and pockets in order to retrieve them. At least one officer indicated that he did not know why the LOs were being detained, whether they would face charges, and if so, what charges they might face.

Police took pictures of the LOs' IDs, returned the IDs, and informed them, in sum and substance, that officers would cut the flex cuffs and end their detention only on the condition that they leave the area immediately and cease documenting arrests and police conduct.

The detained LOs declined to agree to that condition. Eventually, they were released from the flex cuffs. NYPD officers, however, forced the LOs to the other end of the block, thus hindering their ability to observe the police and protesters.

**Rights Violations**

As discussed above, observing and documenting police conduct from a safe distance and in a public place is protected conduct under the First Amendment. Disrupting the work of legal

---

[3]     Police knocked the hat off one LO's head during his arrest, so he was not removed with other LO's from the intersection. The ninth LO was detained at the same time, at a different spot on the block, and released after around 20 minutes.

DEF_CCRB_0087205

observation, by detaining LOs, removing them to a distance or a position at which they cannot observe, and/or seizing their LO notes, violates the LO's, and the NLG's, First Amendment rights.

Your NYPD officers had no cause or authority to detain our LOs. They knew, or should have known that they lacked such cause or authority, particularly given that there was at least one NYPD Legal Bureau officer present on the scene to offer advice about such matters. At least two LOs attempted to show NYPD officers documents attesting to their status as essential legal workers exempt from the curfew. As one LO held up her attestation to show it to an officer, another snatched it up and crumpled it, while an officer threw her to the ground.

Beyond that, your officers' demand for and ultimate seizures of the Legal Observers' identifications violated the Fourth Amendment and the New York State Constitution. Relatedly, because LOs were restrained, and could not reach their own identification cards, police officers seized them from their person without their consent.

Additionally, Legal Observers carry notebooks in which to record observations. These notes are considered privileged under the attorney work product doctrine. During the June 4, 2020 NLG LO detentions, your officers took several LO notebooks and did not return them, ripped pages from at least one notebook, and – as described above - officers read through one Legal Observer's privileged notes out loud, accusing him of "doing illegal counter-surveillance of the police." Such misconduct interferes with and violates the LOs' First Amendment and Fourth Amendment rights, among others.

Finally, many of the LOs were thrown to the ground, including one LO who hit the ground elbow-first, incurring injuries. Officers viciously twisted one LO's arm behind her back. Most LOs reported having the flex cuffs placed upon their wrists so tightly that they had swelling, numbness, and visible abrasions on their hands and wrists upon their release, even though they were cuffed for less than half an hour. That conduct violated the LOs' rights to be free from excessive force.

## Conclusion and Demands

The NLG-NYC is appalled by the NYPD's targeted harassment of our volunteer Legal Observers on June 4, 2020. They were engaging in critical, protected legal support work for constitutionally protected protest, and you should not condone your officers' attacks on their rights, or interference with that work.

In response to these serious violations, we demand that you: (1) remind all NYPD officers of the status and role of Legal Observers via a FINEST message and citywide department announcements to be made at roll calls in the presence of all working officers; and (2) discipline those officers, including the NYPD Legal Bureau officers present, who supervised, and were otherwise involved in, detaining and searching the LO's and violating the confidentiality of their LO notes.

DEF_CCRB_0087206

Please note that we are not asking you refer this complaint to another agency to investigate.

Please inform me as soon as possible in writing which steps you have taken to address our demands.

Andy Izenson
President, NLG-NYC

Moira Meltzer-Cohen
Gideon Orion Oliver
NLG-NYC

cc:    Ernest F. Hart, Esq.
       New York City Police Department
       Deputy Commissioner of Legal Matters
       One Police Plaza
       New York, NY 10038

       Bill de Blasio
       New York City Mayor
       City Hall
       New York, NY  10007

       James E. Johnson, Esq.
       New York City Corporation Counsel
       100 Church Street
       New York, NY 10007

       Jumaane Williams
       New York City Public Advocate
       David Dinkins Municipal Building
       1 Centre Street 15th Floor North
       New York, NY 10007

       Letitia James, Esq.
       New York State Attorney General
       Office of the Attorney General
       The Capitol
       Albany, NY 12224-0341

5

DEF_CCRB_0087207