
**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NEW YORK 10007

**AMY ROBINSON**
*Senior Counsel*
arobinso@law.nyc.gov
Phone: (212) 356-3518
Fax: (212) 356-1148

June 5, 2023

**By ECF**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      In Re: *New York City Policing During Summer 2020 Demonstrations*,
          No. 20 Civ. 8924 (CM) (GWG)
          This filing is related to all cases

Your Honor:

      I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. In furtherance of defendants' motion for Protective Order dated February 2, 2023 (Dkt. No. 841), defendants reply to plaintiffs' supplemental letter in opposition to defendants' motion to preclude the depositions of NYPD Legal Bureau members former Deputy Commissioner of Legal Matters Ernest Hart and former Assistant Deputy Commissioner for Legal Matters Oleg Chernyavsky (Dkt. No. 1012). Based on the following, defendants' respectfully request that the Court grant their motion for a protective order to preclude the depositions of former DC Ernest Hart and ADC Oleg Chernyavsky.

## BACKGROUND

      As an initial matter, in the background section of plaintiffs' supplemental letter, plaintiffs entirely mischaracterize the events that occurred in the Mott Haven section of the Bronx on June 4, 2020, and fail to mention the lead up to the events that played a significant role in policing the protests on June 4, 2020, in Mott Haven. *See* Pls Supp. Ltr. pg. 1, ¶ 2. Just days prior to the protest in Mott Haven, on June 1, 2020, there was utter devastation, destruction and looting of local businesses for an entire 18 blocks of the business district on Fordham Road in the Bronx, the aftermath of which was thoroughly publicized by the news media. Immediately after the events

of June 1 on Fordham Road, on June 2, 2020, Mayor Bill de Blasio revised the City-wide curfew already in effect from 11:00 pm – 5:00 am to *8:00 pm* to 5:00 am, stating…"demonstration activities were substantially escalated, by some persons, to include actions of assault, vandalism, property damage, and/or looting; and…the violent acts have been happening primarily during the hours of darkness, and it is especially difficult to preserve public safety during such hour s…the imposition of a curfew is necessary to protect the City and its residents from severe endangerment and harm to their health, safety and property." *See* Pls Ex. B, Emergency Executive Order No. 119.

Business owners in the South Bronx lead by the Executive Director of the Third Avenue Business Improvement District together with their local community and political leaders, pleaded for NYPD to prevent what happened on June 1 from happening to them on June 4.[1]

The protest indeed began at The Hub on the evening of June 4. Protesters began to march down Third Avenue. When it appeared that the group of protesters were headed for yet another business district in the South Bronx, and it was nearing dusk, police stopped the march, lined up curb to curb, with plenty of egress for any protester who wished to leave the area via the sidewalks—and some protesters did leave—and began issuing multiple warnings via a Long Range Acoustical Device which stated that it is a violation of the law to be out on public streets during the curfew. This is captured on video. Instead of heeding these warning, protesters faced off with police, lined up curb to curb locked arms with each other and refused to leave. These events are also captured on video. After the warnings were given, at 8:00 pm, police began making arrests for violations of the curfew. Among those who were out in public past the curfew were "legal observers," and "journalists," who were also arrested on the advice of Sgt. Kenneth Rice, the Legal Bureau attorney on the scene. Sergeant Kenneth Rice testified that he was given the directive to arrest the legal observers by ADC Chernyavsky who was off scene. Plaintiffs rely on Sgt. Rice's testimony as to this fact based on a "rough transcript" of his deposition.[2] However, it is undisputed that when Chief of Department Terence Monahan became aware that legal observers had been arrested, he de-arrested them and ordered their immediate release on the scene.

## ARGUMENT

Plaintiffs' reasons for wanting to depose DC Hart and ADC Chernyavsky have no merit. Plaintiffs incorrectly state in their supplemental letter and without any citation to the record, that DC Hart and ADC Chernyavsky "oversaw the NYPD's response to the protest." The Legal Bureau does not oversee any NYPD response to any incident except for the deployment of their own resources to the field to provide legal advice to Incident Commanders on scene.

Plaintiffs go on to state that representatives of the Mayor, "informed a legal observer organization that legal observers were, in fact, exempt under [the curfew order]." Plaintiffs cite to a footnote in a letter written by the National Lawyers Guild to former NYPD Commissioner Shea, three days *after* the events at Mott Haven, which states that a member of the Mayor's staff sent an

---

[1] Testimony in this regard has already been provided by Inspector Gallitelli who was the Commanding Officer of the 40th Precinct on June 4, 2020. Mott Haven is within the confines of the 40th Precinct. Further testimony will be provided by the Bronx Borough Commander during the Mott Haven protest, Chief Kenneth Lehr.

[2] Defendants are unaware that plaintiffs have been obtaining "rough transcripts" of NYPD officer depositions in these cases, as they were not provided to defendants, and defendants do not know what the purpose is for ordering "rough transcripts" or whether plaintiffs are making any changes to deposition transcripts before they are certified and sent to defendants.

email to an unknown recipient on an unknown date that "jail, legal, and medical support for protesters were 'exempt from the curfew.'" *See* Pls Supp. Ltr. Pg. 2, ¶ 1; Ex. C, Pg. 2, fn. 2.  A statement made by a member of the Mayor's staff in an undated email to an unknown recipient that was then relegated to a footnote to a letter to the Commissioner three days after the fact would hardly be expected to inform the Commissioner as to Mayor de Blasio's position on legal observers attending protests.  This should not be considered by the Court as a reason to order the deposition of DC Hart or ADC Chernyavsky because Plaintiffs fail to argue how this purported letter ties back to them and warrant their purported need to depose these high-ranking Legal Bureau attorneys.

Next, plaintiffs cite to a letter written by DC Hart to the Human Rights Watch in September 2020—well after the core of the George Floyd protests ended, as a reason why they need to depose DC Hart.  *See* Pls Supp. Ltr. Pg. 2, ¶2.  As to this letter, plaintiffs state that they want to inquire of DC Hart as to "the violence of the protest at Mott Haven," and "that officers observed that legal observers were not essential workers."  First, the record is already very clear that NYPD had substantial reasons to believe that violence and property destruction would take place on June 4, 2020, given the mass destruction of 18 blocks of the business district on Fordham Road in the Bronx just three days earlier.  All of this is in addition to the fact that further testimony will reflect the concern and urging from the business owners in The Hub, including the Executive Director of the Third Avenue Business Improvement District, to take action to prevent a repeat of June 1.[3]  Thus, DC Hart's deposition is not necessary to provide testimony on anticipated violence and destruction of property at Mott Haven.  Second, plaintiffs want to depose DC Hart as to whether legal observers were essential workers."  However, as shown below, a Rule 30(b)(6) witness was designated to provide testimony pertaining to the treatment of legal observers as essential workers.

Further, plaintiffs fail to cite to a single document in this case to support their claim that DC Hart or ADC Chernyavsky, "gave direct orders to NYPD officers and signed off on specific strategies used during the protests."  *See* Pls Supp. Ltr. Pg. 3, ¶ 1.

Additionally, plaintiffs state that they want to question ADC Chernyavsky as to, "why Mr. Chernyavsky's FINEST message regarding the curfew omitted mention of the need to issue a dispersal order."  Pls. Suppl Ltr. Pg. 4, ¶ 1.  Plaintiffs cite to Exhibits B and D attached to their supplemental letter in purported support.  *Id*.  However, Exhibit B contains the Mayor's Executive Orders regarding the curfew that has nothing to do with ADC Chernyavsky.  Exhibit D contains an email dated June 2, 2020, from ADC Chernyavsky to individuals who appear to be members of the NYPD Legal Bureau attaching a simplified draft at best pertaining to a FINEST message, dated June 3, 2020, but which has very little resemblance to the actual FINEST message issued on June 3 by NYPD Chief of Department's Office—which sends out all FINEST messages.  Thus, not only is it not "Mr. Chernyavsky's FINEST message," it does not appear that the draft language in the email he sent was used to compose the FINEST message attached hereto as Exhibit A.

Plaintiffs also want to depose DC Hart and ADC Chernyavsky as to "their involvement in non-privileged policy and operational decisions."  *See* Pls Supp. Ltr. Pg. 4, ¶ 2.  Neither DC Hart nor ADC Chernyavsky were policymakers, and plaintiffs have failed to cite a single case or any

---

[3] Testimony in this regard has already been provided by Inspector Gallitelli who was the Commanding Officer of the 40th Precinct on June 4, 2020. Mott Haven is within the confines of the 40th Precinct.  Further testimony in this regard will be provided by the Bronx Borough Commander during the Mott Haven protest, Chief Kenneth Lehr.

section of the City Charter in support of this statement. Further, as members of the Legal Bureau, neither made any NYPD operational decisions. They were attorneys. Their roles were to provide legal advice when sought regarding policy or operations, which would be privileged—not to make policy or operational decisions. Operational decisions are made by the NYPD Operations Unit, whose parent command is the Chief of Department's Office, which reports directly to the Police Commissioner. Thus, neither DC Hart nor ADC Chernyavsky can provide any non-privileged testimony with respect to NYPD policymaking or operational decisions.

Finally, plaintiffs state that they need DC Hart's and ADC Chernyavsky's testimony regarding the creation of curfew guidance and NYPD's treatment of journalists. *See* Pls Supp. Ltr. Pg. 4, ¶ 2. However, plaintiffs sought and obtained a Rule 30(b)(6) witness with respect to the implementation of the curfew orders, and Legal Bureau Executive Agency Counsel James Conroy, whose deposition already occurred on June 1 was designated as this witness on the following Topics and Subtopics in the Consolidated Rule 30(b)(6) notice pertaining to the curfew and what individuals to exempt:

**Topic 8**

Officers' interaction with, and treatment of, Legal Observers during a demonstration or protest
and Officers' enforcement of any applicable curfews in place during a demonstration or protest, such as the Curfew Orders, including, but not limited to:
    a.    The requirements in the Curfew Orders to give dispersal orders and opportunities to disperse prior to Arrests or Prosecutions for violations of the Curfew Orders;
    b.    The exemptions contained in the Curfew Orders for Essential Workers, including, but not limited to:
        i.    Identifying Essential Workers;
        ii.    The treatment of Legal Observers as Essential Workers; and
        iii.    Allowing Essential Workers who have been Arrested related to purported violations of the Curfew Orders to disperse;
    c.    Any requirements or prerequisites for an Officers' initiating an Arrest or prosecution related to a purported violation of the Curfew Orders, including, but not limited to, any requirements that the Officer have personally observed, or be able to identify an Officer who personally observed, a purported violation of the Curfew Orders prior to an Arrest or Prosecution related to a protest violation

**Topic 15**

Instructions given to NYPD members regarding the Curfew Orders and how to implement and/or enforce the Curfew Orders, and the NYPD's implementation and/or enforcement of, the Curfew Orders, including with respect to essential workers and other curfew- exempt individuals and the need to give dispersal orders and meaningful opportunities to comply before taking enforcement action related to the Curfew Orders.

Similarly, plaintiffs sought and obtained a Rule 30(b)(6) witness with respect to NYPD's treatment of journalists. The designee is Executive Director of Public Information Eugene Whyte who is scheduled to testify on June 22, 2023. Plaintiffs' 17-paged Rule 30(b)(6) Notice (without

attachments) pertaining exclusively to journalists is attached hereto as Exhibit B.

Thus, plaintiffs do not need to depose DC Hart or ADC Hart. Plaintiffs will be able to obtain the information they need from the two Rule 30(b)(6) witnesses that they already demanded and who have already been designated to testify in these cases. Based on the foregoing, defendants maintain that there is no good cause to allow plaintiffs an opportunity to depose former DC Ernest Hart or ADC Oleg Chernyavsky in these cases.

Thank you for Your Honor's consideration herein.

Respectfully submitted,

*Amy Robinson s/*

Amy Robinson
*Senior Counsel*

cc:   ALL COUNSEL (*via* ECF)