UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------- x

In Re: New York City Policing During Summer   :
2020 Demonstrations                            :

-------------------------------------   :

This notice relates to:               :

ADAM GRAY, JASON DONNELLY, DIANA  :
ZEYNEB ALHINDAWI, JEMELL D. COLE,  :
and AMR ALFIKY,                  :

Plaintiffs,         :

- against -          :

CITY OF NEW YORK, OFFICER NICHOLAS  :
TERRETT, OFFICER LUIGI TIRRO, OFFICER  :
ADAM MUNIZ, OFFICER LEONEL GIRON,  :
DETECTIVE ROBERT ALTIERI,      :
LIEUTENANT KEITH GALLAGHER,     :
CAPTAIN GZIM PALAJ, OFFICER BRIANNA  :
CARLO, SERGEANT WILLIAM E.      :
BALUNAS, OFFICER STEPHANIE ALBA,   :
OFFICER SEAN P. ROBINSON, SERGEANT  :
DANIEL SLEVIN, LIEUTENANT KEITH   :
HOCKADAY, and JOHN DOE 1,      :

Defendants.      :

------------------------------------- x

20 Civ. 8924 (CM)(GWG)

21 Civ. 6610 (CM)(GWG)

**THIRD NOTICE OF
DEPOSITION PURSUANT TO
FEDERAL RULE OF CIVIL
PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs in the above-captioned case (the "Gray Plaintiffs") will take the

deposition(s) upon oral examination of Defendant, City of New York (the "City"), through one

or more agents or other representatives who shall be designated to testify on the City's behalf,

regarding all information known or reasonably available to the City with respect to the Topics

for Deposition identified below. The City shall designate the person or persons most

knowledgeable and prepared to testify on behalf of the City concerning the Topics for

Deposition.  The Gray Plaintiffs request that the City provide written notice at least five (5)

business days before the deposition of (1) the name(s), (2) the employment position(s), and (3) the Topics for Deposition about which each designated individual shall testify on the City's behalf.

This deposition(s) shall commence at 9:30 a.m., on a date(s) to be mutually agreed by the parties, at the office of Davis Wright Tremaine LLP, 1251 Avenue of the Americas, 21st Floor, New York, New York 10020, or at another location to be determined by the Gray Plaintiffs, or by remote means (via videoconference) pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure, and shall continue from day to day until completion. This deposition(s) shall take place before a notary public or other officer authorized by law to administer oaths.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants are required to produce, by electronic delivery, in advance of any given deposition, any and all materials in any form they may have related in any way to the subject matter of that deposition.

Defendants are invited to attend and cross examine.


Dated: New York, New York
      November 11, 2021

DAVIS WRIGHT TREMAINE LLP

By: /s/ Robert D. Balin
    Robert D. Balin
    Abigail B. Everdell
    Kathleen Farley
    Nimra Azmi
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
robbalin@dwt.com

Mickey H. Osterreicher
General Counsel
National Press Photographers Association
70 Niagara Street
Buffalo, NY 14202
Phone: (716) 983-7800
lawyer@nppa.org

Alicia Calzada (*pro hac vice*)
ALICIA WAGNER CALZADA, PLLC
Deputy General Counsel
National Press Photographers Association
12023 Radium , Suite B1
San Antonio, TX 78216
Phone: 210-825-1449
Alicia@calzadalegal.com

Wylie Stecklow
WYLIE STECKLOW PLLC
Carnegie Hill Tower
152 W. 57th Street, 8th FLoor
NY NY10019
(t) 212 566 8000
ecf@WylieLAW.com

*Attorneys for the Gray Plaintiffs*

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

The following Definitions and Instructions apply to this Notice of Deposition Pursuant to Rule 30(b)(6) of the City, and Plaintiffs incorporates them into each Deposition Topic listed below:

1.     For purposes of interpreting or construing these Definitions and Instructions and the following Deposition Topics, the terms used are to be given their most expansive and inclusive interpretation, unless otherwise specifically limited in the Definition, Instruction, or Deposition Topic itself. Verb tenses shall be interpreted to include past, present, and future tenses; the use of the singular form of any word includes the plural and vice versa; references to a gender shall be interpreted to include the masculine, feminine, and neuter; and the word "including" should be read as "including but not limited to" and the word "includes" should be read as "includes but is not limited to."

2.     Defined terms may or may not be capitalized or made uppercase; the given definitions apply even if a term in question is not capitalized or made uppercase. No waiver of a definition is implied by the use of a defined term in a non-capitalized or lowercase form.

3.     "All," "any," and "each" shall each be construed as encompassing any and all.

4.     "Arrest" means an Officer's seizure, detention, or arrest of a person, including but not limited to for the purpose of issuing them a C-Summons ("summons") or Desk Appearance Ticket ("DAT") or fully processing them for arraignment.

5.     The "Complaint" means the active Complaint in the above captioned matter.

6.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7.     "Curfew Orders" means New York City Mayor Bill de Blasio's Emergency Executive Orders Nos. 117-119, which imposed curfews in New York City between June 1 and June 7, 2020. The Curfew Orders exempted certain categories of workers that were deemed "essential" ("Essential Workers"), including "police officers, peace officers, firefighters, first responders and emergency medical technicians, individuals travelling to and from essential work and performing essential work, people experiencing homelessness and without access to a shelter, and individuals seeking medical treatment or medical supplies." Each of the Curfew Orders provided: "Failure to comply with this Order shall result in orders to disperse, and any person who knowingly violates the provisions in this Order shall be guilty of a Class B misdemeanor" under NYC Administrative Code ("AC") § 3-108. AC § 3-108 contains a knowing intent requirement, as follows: "Any knowing violation of a provision of any emergency measure established pursuant to this chapter shall be a class B misdemeanor punishable by a fine of not more than five hundred dollars, or by imprisonment for not more than three months, or both."

8.     "Defendant," "the City," "You," and "Your," each mean the City of New York.

9.     "Demonstration" means any expression, display, protest, or gathering by persons in public places, for the purpose of conveying or expressing an idea, thought or belief.

10.    "Enforcement action" means conduct or action undertaken by the NYPD in furtherance of its responsibilities to enforce the laws and to provide for the safety of those present in the City of New York.

11.    "Incident Commander" means "[t]he highest ranking uniformed police supervisor responsible for the command, control and coordination of all operations at an incident" as

defined and used in the NYPD Patrol Guide (*see, e.g.*, Patrol Guide §§ 213-05, 213-11, and 213-15) and the NYPD SRG Guide.

12.     The term "instruction" means any communication, whether written or not, which directs the recipient(s) to do or not to do anything. The terms "memo" and "memorandum" mean any document that conveys information or instructions from an author or to a recipient, whether the author or recipient is an individual, an organization, a police unit, a group within an organization, an office, a file depository, etc. The terms "memo" and "memorandum" include memos "to file" and memos created primarily for record-keeping purposes. A memo or instruction is "issued" when it is made effective, or is communicated to recipients, displayed, circulated, or published, or when it is dealt with in a manner in which a like memo or instruction is typically dealt with in the normal course of operations when such memo or instruction intended to be made effective, or communicated to recipients, displayed, circulated.

13.     "Kettling," "Kettling Tactics," "Encirclement" or "Containment" means any and all plans, methods, procedures, tactics, strategies, or approaches, by whatever name or characterization, utilized by NYPD to control crowds, address disorderly conduct, and/or effectuate mass arrests and detentions, whether intentional or not, whereby Officers physically surround or otherwise contain members of the public within an area, leaving them few or no routes of egress without direct contact with Officers.

14.     "Legal Observer" means an individual who attends a public demonstration to observe and document interactions between law enforcement and demonstrators.

15.     "Member of the press" means any person or professional engaged in the gathering, publication, and/or transmission of news, images or information to the public.

16. "Member of Service," "MOS," of "member of the NYPD" means any person employed by the NYPD.

17. "NYPD" means the New York City Police Department.

18. "Officer" means a member of service of the NYPD, regardless of rank, including but not limited to any and all officers, detectives, sergeants, lieutenants, captains, chiefs, and/or deputy commissioners.

19. "Person" is defined as any natural person or any legal entity, including, without limitation, any business, governmental entity, or association.

20. "Prosecution" means any actual or potential prosecution of a person Arrested related to the Summer 2020 Protests.

21. "Protest-Related Violation or Offense" means an alleged violation of any of the following laws during a demonstration or protest: New York State Vehicle and Traffic Law ("VTL") Section 1156(a) (Pedestrians in Roadways); New York State Penal Law ("PL") Section 240.05 (Riot in the Second Degree); PL Section 240.10 (Unlawful Assembly); PL Section 205.30 (Resisting Arrest); PL Section 195.05 (Obstruction of Governmental Administration in the Second Degree); PL Section 240.20(5) (Disorderly Conduct – Blocking Vehicular or Pedestrian Traffic); PL Section 240.20(6) (Disorderly Conduct – Refusing to Obey a Lawful Dispersal Order); New York City Administrative Code ("NYAC") Section 3-108 (Executive Order Violation); and NYAC Section 10-110(c) (Parading Without a Permit), and any other offenses with which any individual who participated in any racial justice protests between May 28, 2020 and January 31, 2021 was actually Arrested for and/or charged.

22. "Summer 2020 Protests" means the protests, demonstrations, and gatherings at each of the "Protest Locations" identified in "Attachment B" to Plaintiffs' (in the Consolidated

case) first Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6), served on July 2, 2021.

23.     The term "training" refers to Instruction or teaching information, methods, practices, procedures, or policies. Without limiting the foregoing, the term training also includes:

     a.   Any such activity that occurs by means of written communications, such as FINEST messages, memos, and/or legal bureau bulletins.

     b.    Any such activity that occurs at roll call or muster points.

     c.    Any such activity which occurs in the Police Academy, the Training Bureau, the Disorder Control Unit, the Anti-Terrorism Bureau, or Strategic Response Group, whether as part of Academy training or post-Academy training.

     d.   Any training related to particular events, including, but not limited to training on Randall's Island in April 2012 in preparation for anticipated May Day protests on May 1, 2012, and training on Randall's Island in July, August, or September 2011 in preparation for Occupy Wall Street protests in September 2011.

     e.   Any training which occurs at facilities (including websites) not operated by the NYPD.

     f.   Any training required as part of promotions (Such as Sergeant, Lieutenant or Captain training).

     g.   Any training related to the policies, procedures, and customs surrounding the enforcement of New York Vehicle and Traffic Law § 1156(a) & § 1152

24.     "Relevant Policies and Procedures" refers to the policies, procedures, and directives of the New York City Police Department and the City of New York concerning

policing Demonstrations, crowd control, crowd dispersal, disorder control, the rights of members of the press at enforcement actions, including, but not limited to, policing demonstrations, mass demonstrations, protests, crowd control, crowd dispersal, and disorder control, including without limitation:

a.  Officers' use of tactics or objects to control crowds during a demonstration or protest;

b.  Officers' use of force during a demonstration or protest;

c.  Use of force reporting and investigations related to uses of force during a demonstration or protest;

d.  Officers' use of batons or other instruments during a demonstration or protest;

e.  Officers' tactical use of other objects, such as shields and bicycles, during a demonstration or protest;

f.  Officers' use of Oleoresin Capsicum (also known as "OC" or "pepper spray") during a demonstration or protest;

g.  Technical Assistance Response Unit ("TARU") video and audio recording related to a demonstration or protest;

h.  Strategic Response, Strategic Response Group ("SRG"), and Disorder Control Unit operations, including the bicycle unit and any other police subgroup that operates under SRG;

i.  Policing operations, including traffic safety, crowd and disorder control operations, during a demonstration or protest;

j.   Officers' uniform and equipment during a Demonstration, including helmets, shields, body-worn cameras, batons, vehicles, bicycles and protective equipment relating to COVID-19;

k.   Officers' use of body worn cameras during a demonstration or protest;

l.   Officers' use of zip-ties or flex cuffs during a demonstration or protest, proper application of zip-tie cuffs to an arrestee;

m.   Crowd control and dispersal during a Demonstration, including the use of Kettling, containment, or encirclement during a Demonstration, and/or the practice of sealing off any means of egress by members of a crowd for purposes of maintaining control or controlling disorder or effecting arrests;

n.   Officers' interaction with, and treatment of, Legal Observers during a demonstration or protest;

o.   Officers' interaction with, and treatment of journalists, reporters, photographers, videographers and members of the press during a demonstration or protest;

p.   Officers' interaction with, and treatment of, Medics during a Demonstration;

q.   Officers' enforcement of any applicable curfews in place during a demonstration or protest, such as the Curfew Orders, including, but not limited to:

     i.   The requirements in the Curfew Orders to give dispersal orders and opportunities to disperse prior to Arrests or Prosecutions for violations of the Curfew Orders;

i.    The exemptions contained in the Curfew Orders for Essential Workers, including, but not limited to

A.    Identifying Essential Workers;

B.    The treatment of Members of the Press as essential workers;

C.    The treatment of Legal Observers as Essential Workers; and

D.    Allowing Essential Workers who have been Arrested related to purported violations of the Curfew Orders to disperse;

i.    Any requirements or prerequisites for an Officers' initiating an Arrest or prosecution related to a purported violation of the Curfew Orders, including, but not limited to, any requirements that the Officer have personally observed, or be able to identify an Officer who personally observed, a purported violation of the Curfew Orders prior to an Arrest or Prosecution related to a protest violation.

r.    Incident command, chain of command, and command and control during a demonstration or protest and the Summer 2020 Protests;

s.    Facilitation, accommodation, and escort of demonstrations or protests;

t.    First Amendment, Fourth Amendment, and Fourteenth Amendment principles applicable to policing demonstrations or protests, including the requirements that content-neutral restrictions on speech are narrowly tailored and provide ample alternatives for expression, as well as the need to provide fair warning before making certain Arrests or engaging in certain uses of force;

u.    The need to give dispersal orders, alternative avenues of communications, and a meaningful opportunity to comply with dispersal orders before making

Arrests for a Protest-Related Violation or Offense at a demonstration or protest;

v. Racial profiling;

w. Officers' use of race in law enforcement decisions and/or implicit bias;

x. Officers' use of racial slurs or epithets;

y. Officers' affiliation with or participation in groups or website that promote racists views;

z. Officers' Arrest of individuals during a demonstration or protest, including procedures for effecting and processing large-scale or mass arrests;

aa. Probable cause, and probable cause decision making, to Arrest for a Protest-Related Violation or Offense;

bb. Discretion to Arrest for a Protest-Related Violation or Offense;

cc. When to process an Arrest for a Protest-Related Violation or Offense for release with a summons or Desk Appearance Ticket, or for arraignment, including during a demonstration or a protest;

dd. Officers' transportation of people Arrested during or after a demonstration or protest;

ee. Officers' use of mass or large-scale arrest processing (including the use of a Mass Arrest Processing Center), including related to a demonstration or a protest;

ff. Officers' provision of medical aid to civilians injured during a demonstration or protest;

gg. Officers' wearing of face coverings when interacting with the public during or after a demonstration or protest, including during arrest processing; and

hh. Any other policies, procedures, directives or training associated with policing large-scale events, including protests, demonstrations, and events involving civil disobedience.

ii. Officers' interaction with, and treatment of, members of the press or the public who attempt to gather information, observe, or record, in written, photographic, or other form, mass demonstrations, protests, and/or any enforcement action or other police activity;

a. First Amendment, Fourth Amendment, and Fourteenth Amendment principles applicable to policing demonstrations, protests and/or enforcement actions as they relate to members of the press present

25.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

26.     Unless otherwise specified, the relevant time period for these topics is from May 2007 to the present, including information pertaining to any decisions and actions concerning Training and Relevant Policies and Procedures, regardless of when those decisions or actions took place.

**DEPOSITION TOPICS**

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the City shall designate and produce for deposition one or more agents or other representatives who shall be designated to testify on the City's behalf, with respect to information known and reasonably available to the City concerning the following subjects:

**Topic No. 23:**  The drafting, adoption, and implementation of policies, procedures, directives, and training materials as of the RNC in 2004 to the present relating to Officers' treatment of and response to any member of the press or other individuals photographing, taking video of, or otherwise recording police activity, or attempting to do so, including but not limited to policies, procedures, directives, or training materials concerning:

- Identifying members of the press;

- Identifying visual journalists;

- Officers' treatment of visual journalists;

- Officers' treatment of individuals who identify themselves as journalists, members of the media, members of the press, or anything equivalent thereto;

- Officers' treatment of individuals who carry NYPD-issued press credentials;

- Officers' treatment of individuals who carry press credentials not issued by the NYPD;

- Officers' treatment of individuals who do not have press credentials and who record police activity in public;

- Officers' treatment of individuals photographing, taking video of, or otherwise recording police activity in public;

- Officers' interference with individuals taking photographs or recording video in public;

- Principles under the First Amendment of the U.S. Constitution and/or Article 1, Section 8 of the New York State Constitution relating to freedom of speech and freedom of the press;

- Officers' treatment of members of the press and/or visual journalists in the context of protests, demonstrations, or other large gatherings, including but not limited to the racial justice protests in New York City in the spring and summer of 2020; and

- Any curfew orders issued by Mayor Bill de Blasio and/or Governor Andrew Cuomo between June 1, 2020 and June 8, 2020, including but not limited to journalists and other categories of individuals exempt from such curfews and Officers' treatment of journalists and other individuals exempt or potentially exempt from such curfews.

**Topic 24:**  The investigation, review, and/or revision by the NYPD and/or City of New York of any policies, procedures, directives, or training materials relating to the issues described in Topic 23, as well the bases for any such investigation, review, and/or revision.  This includes, but is not limited to, whether any such investigation, review, and/or revision was considered or took place as a result of or in response to:

a. The circumstances described in Exhibits A through I attached to the Gray Plaintiffs' First Requests for Production of Documents to Defendant City of New York, dated October 22, 2021, inclusive of all other documents, meetings or other communications relating to those circumstances;

b. Any of the incidents identified in Paragraphs 105-18 of the Amended Complaint in this action;

c.  Any lawsuits brought by an individual who identifies as a member of the press against (i) the NYPD, (ii) any Officer, (iii) the City of New York, or any agency or office of the City of New York, since May 1, 2007, that asserts a claim involving mistreatment by the NYPD and/or a violation of that individual's rights as a member of the press, including but not limited to, rights guaranteed under the New York State Constitution, Article 1, § 8 (Free Press Provision), or any First, Fourth, and/or Fourteenth Amendment rights under the United States Constitution.  This includes, but is not limited to, the following lawsuits:

    i.  Stolarik v. City of NY, 15-cv-05858 (SDNY)

    ii.  Bandele v. City of New York, 07-cv-3339 (MGC)(SDNY)

    iii.  Carnevale v. City of New York, 08-cv-9993 (DAB)(AJP)(SDNY)

    iv.  Rodriguez v. City of New York, 12-cv-03389 (NRB)(SDNY)

    v.  Gerskovich v. Iocco, 15-cv-07280 (RMB)(SDNY)

    vi.  Goodman v. City of NY, 14-cv-5261 (CM)(SDNY)

    vii.  An v. City of NY, 16-cv-5381 (SDNY)

    viii.  Landers v. NYC PO Keon Franks, 16-cv-5176 (EDNY)

    ix.  Teitell v. City of New York, 15-cv-4187 (EDNY)

    x.  Nicholas v. Bratton, 15-cv-9592(JPO)(SDNY)

    xi.  Beckford v. City of NY, 17-cv-0926 (SDNY)

    xii.  Keith v. City of NY, (INSERT CITE)

    xiii.  Nigro v. City of NY, 19-cv-2369 (JMF)(SDNY)

    xiv.  Reinhart and Eastman v. City of NY, 13-cv-8314(JPO)(SDNY)

    xv.  Higginbotham v. Sylvester, 218 F. Supp. 3d 238 (S.D.N.Y. 2016)

    xvi.  Higginbotham v. Sylvester, 16-3994 (2d Cir. Jul. 25, 2018)

> d.  The June 2017 Report of the New York City Civilian Complaint Review Board entitled "Worth a Thousand Words:  Examining Officer Interference With Civilian Recordings of Police."

**Topic 25**:  The process of developing, drafting and disseminating (1) any FINEST messages issued since May 1, 2007 concerning the rights of members of the media or any NYPD policies relating to members of the media, including but not limited to the August 6, 2014 FINEST Message regarding Recording of Police Action by the Public (attached hereto as **Exhibit A**) and the FINEST Message issued in late 2011 or early 2012 for the stated purpose of "remind[ing] members of the service of their obligations to cooperate with media representatives acting in a news-gathering capacity at the scene of police incidents"; and (2) the April 2016 Legal Bureau Bulletin regarding Rights of Observers to Record Police Officers (attached hereto as **Exhibit B**); as well as any trainings that were based upon or incorporated any of these materials.

EXHIBIT A





| | |
|---|---|
| **DATE:** | 08/06/2014 |
| **TIME:** | 15:08:40 |
| **SER#:** | 9881632 |

# FINEST MESSAGE
## General Administrative Information

TO:    ALL COMMANDS

RE:    RECORDING OF POLICE ACTION BY THE PUBLIC

MEMBERS OF THE SERVICE ARE REMINDED THAT MEMBERS OF THE PUBLIC ARE LEGALLY
ALLOWED TO RECORD (BY VIDEO, AUDIO, OR PHOTOGRAPHY) POLICE INTERACTIONS.
THESE INTERACTIONS INCLUDE ARREST AND OTHER SITUATIONS. MEMBERS OF THE SERVICE
WILL NOT INTERFERE WITH A PERSON'S USE OF RECORDING DEVICES TO RECORD POLICE
INTERACTIONS. INTENTIONAL INTERFERENCE SUCH AS BLOCKING OR OBSTRUCTING CAMERAS
OR ORDERING THE PERSON TO CEASE CONSTITUTES CENSORSHIP AND ALSO VIOLATES THE
FIRST AMENDMENT.

IT SHOULD BE NOTED, HOWEVER, THAT PERSONS MAY NOT INTERFERE WITH POLICE
OPERATIONS. MEMBERS, IF APPROPRIATE, SHOULD ADVISE THE PUBLIC NOT TO GET TOO
CLOSE AND MAY TAKE ACTION ONLY IF THE PERSON INTERFERES WITH THE OPERATION OR
THE SAFETY OF THE MEMBERS OF THE SERVICE OR THE PUBLIC. HOWEVER, MERE
RECORDING OF AN INCIDENT DOES NOT CONSTITUTE INTERFERENCE.

COMMANDING OFFICERS WILL ENSURE THAT THE CONTENTS OF THIS MESSAGE ARE
DISSEMINATED TO ALL MEMBERS OF THE SERVICE.

AUTHORITY: CHIEF OF DEPARTMENT
OPER: LT CORBETT

ADMN – SER#: 9881632

EXHIBIT B



OFFICE OF THE DEPUTY COMMISSIONER - LEGAL MATTERS

# LEGAL BUREAU BULLETIN

| Vol. 46, No. 2 | April 2016 |
|---|---|

| I. | **SUBJECT:** | RIGHTS OF OBSERVERS TO RECORD POLICE OFFICERS |
|---|---|---|
| II. | **QUESTION:** | IS TT PERMISSIBLE FOR A CIVILIAN TO OBSERVE AND RECORD A POLICE OFFICER IN THE PERFORMANCE OF THE OFFICER'S DUTY? |
| III. | **ANSWER:** | YES. THE FIRST AMENDMENT PROVIDES CITIZENS THE RIGHT TO OBSERVE AND RECORD POLICE OFFICERS CARRYING OUT THEIR DUTIES. CITIZENS ALSO HAVE THE RIGHT TO MONITOR AND CRITICIZE THE POLICE. CITIZENS DO NOT HAVE THE RIGHT TO INTERFERE WITH OR PREVENT A POLICE OFFICER FROM PERFORMING AN OFFICIAL FUNCTION. |

**IV.    DISCUSSION**

**A. Introduction**

Both federal and New York State courts have consistently held that individuals have a fundamental First Amendment right to record police officers carrying out their duties and to criticize police activity, even if that criticism includes profane, insulting, or demeaning language. However, this right is not absolute, and there are restrictions that prohibit an individual from engaging in actual interference with police activity.

The purpose of this Bulletin is to provide guidance to police officers on:

- The First Amendment rights of individuals to record and/or criticize police action;
- How to respond when confronted with permissible First Amendment activities;
- How to detennine when the activity amounts to interference with police duties and the recommended proportional response to such interference; and
- Under what circumstances it is permissible to seize recordings or recording devices, as well as guidance on supervisory review.

### B.  First Amendment Right to Record Police Activity

Individuals have a First Amendment right to lawfully record police activity including, but not limited to, detentions, searches, arrests, or uses of force.  This right extends to those individuals in both public places, such as streets, sidewalks, and parks, *and* private property such as a building, lobby, workplace, or an individual's own property, providing the individual has a legal right to be present at that location.  An individual's recording of police activity from a safe distance without any additional action intended to obstruct the officer or threaten public safety does not amount to interference.  Further, an individual's conduct does not amount to interference if he or she expresses criticism of the police or the police activity being observed.[1]

### C.  Prohibited Responses to Individuals Observing or Recording Police Activity

Police officers may **NOT** order an observer to stop recording or disperse, arrest an observer for Obstructing Governmental Administration ("OGA"), or seize a recording device in any of the following situations:

- Observer is taking photographs, videotaping, or making a digital recording;
- Observer is requesting or making note of shield numbers or names of members of the service;
- Observer is criticizing the police or objecting to police activity; or
- Observer is using crude or vulgar speech.

Recognizing the affirmative right to record police action, **UNDER NO CIRCUMSTANCES** should a Member of the Service:

- Threaten, intimidate, or otherwise discourage an observer from recording the police officer's activities, assuming the observer is at a safe distance;
- Intentionally block or obstruct cameras or other recording devices when there is no legitimate law enforcement reason to do so; or
- Delete any pictures or videos from the observer's camera, or order observer to delete such pictures or recordings.

### D.  Interference with Police Activity and How to Respond Appropriately

A person may record public police activity unless the person engages in actions that jeopardize the safety of the officer, the suspect, or others **in** the vicinity; violate the law; or incite others to violate the law.[2]  However, an individual's right to record police action is not protected by the First Amendment if it amounts to actual obstruction of a police officer's investigation. Examples of this might be tampering with a witness or persistently engaging an officer who is in the midst of performing his or her duties.[3]  Therefore, in order for such conduct to reach the requisite level of interference, there must be some additional activity (other than video recording or criticism) that leads to an *actual* interference with the performance of an official police function.

Interference involves using actual physical force or intruding into the "zone of safety" established by the officer in the performance of his or her duties.  This zone of safety should be established on a case-by-case basis by the police officer taking police action after taking into account all

---

[1] Houston v. Hill 482 U.S. 451,461 (1987).
[2] Chaplinskyv. New Hampshire, 315 U.S. 568,573 (1942).
[3] Colten v. Kentucky 407 U.S. 104 (1972).

relevant factors, i.e., the matter being investigated, the location, size and actions of the crowd, the time of day, and the lighting. This zone of safety should only encompass the physical space necessary to safely perform police operations. As a practical matter, a reasonable zone of safety would be at a minimum, the span of an officer's arms when he or she is engaged in enforcement activities (i.e. arrest, summons, etc.).[4]

When an individual is **NOT** at a safe distance and is endangering the Member of the Service or others, or is actually interfering with the police action, the officer should immediately issue a warning. Acceptable warnings include:

- Please step back!
- Please get on the sidewalk!
- Please step away from the arrest van!

According to the New York State Penal Law, "a person is guilty of obstructing governmental administration when he ... prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act ...."[5] If the individual does not obey the warning **AND** one of the following situations is present, an arrest for OGA may be appropriate:

- The individual is touching or physically interfering with the officers or suspect (i.e. using a camera so close to the officer's face that it intentionally obstructs his or her view and prevents the officer from performing his or her duty);
- The individual is unreasonably encroaching in the immediate area in which the enforcement action is occurring **AND** refuses to obey an order to move back; or
- The individual is engaging **in** passive, non-violent behavior but is still purposefully blocking or preventing the officer from taking enforcement action (i.e. blocking a prisoner van).

### E. Permissible Seizure of Recordings and/or Recording Devices

A police officer's response to an observer's recording can implicate First Amendment rights as discussed above *and* Fourth Amendment rights related to search and seizure. When a police officer has probable cause to believe that a recording contains evidence of a crime, he or she should:

- Inform the observer that the recording is believed to contain evidence of a crime, and ask for consent to examine the recording. It should be noted that this consent to view must be freely and voluntarily given. Officers should be prepared for a subsequent court assessment to ensure that this consent was not coerced, either implicitly or explicitly. [6]
  - o Note: It may be possible for the observer to email the recording directly to the officer's Department-issued smartphone.

---

[4] Examples of "zone of safety" intrusions:
An individual enters an "obvious, defined area of police activity" and tips off others that the police are approaching. People v. Covington 18 AD.3d 65. 71 (1st Dep't. 2005).
A group of onlookers encircle an officer attempting to make an arrest thereby allowing the person to escape../3.ll, People v. Shea 68 Misc. 2d 271 (N.Y. Spec Sess. 1971).
Approaching an officer from behind in a threatening manner while the officer was attempting to make an **arrest.** People v. Tarver 188 A.D.2d 938 (3rd Dep't. 1992).
An observer physically placing him\herself bet\ween an officer and other individuals and ignoring repeated requests to move. See, People v. Jimenez, 138 Misc. 2d 867 (NY Crim. Ct. 1988); People v. Yarborough, 19 Misc. 3d 520 (NY Sup. Ct. 2008).
[5] N.Y. PENAL LAW§ 195.05.
[6] Schneckloth v. Bustamante, 412 U.S. 218,228 (1973).

- If the observer refuses, the officer should inform the observer that he or she will seek a search warrant for the device, and if the observer deletes the content the observer may be charged with tampering with physical evidence in violation of N.Y. Penal Law § 215.40.
- If the officer has reason to believe that the observer will delete the recording, he or she may seize the device, *without* looking into the device, and only for the time necessary to secure a warrant. In these types of seizures, the officer **MAY NOT** view the recording before obtaining the search warrant.

Under no circumstances should a Member of the Service seize a recording device merely because it has captured a law enforcement encounter. The seizure of the device would only be appropriate in circumstances where the officer has probable cause to believe that the recording captures evidence of an actual crime (i.e. assault on a police officer, an assault on a third party, possession of a weapon, etc.). Seizure of any recording device **MUST** be approved by a supervisor. In addition, it is a violation of N.Y. Penal Law § 215.40 for an officer to delete any video from a seized recording device.

**F.  Duties of Supervisors**

In situations where an observer is arrested for interference with police action or where the contents of a recording device are believed to contain evidence of a crime, Members of the Service **MUST** request a supervisor to respond to the scene. This is in addition to officers' responsibilities to have the validity of an arrest verified prior to removal to the stationhouse, as explained in Patrol Guide Procedure No. 208-02.

Front line supervision is a critical component in protecting the First and Fourth Amendment rights of observers. Supervisors **MUST** be familiar with this Bulletin and be prepared to take immediate remedial action in the field to ensure the constitutional rights of individuals are protected. This should be balanced with the priority to ensure the safety of the police officers and the public involved in police action.

**V.     CONCLUSION**

As a general matter, the recording of officers during the performance of their duties is not a violation of the law, so long as this recording does not amount to an *actual* interference with the police activity. Members of the Service are reminded that the courts have consistently held that police officers, as agents of the state, must tolerate a higher level of verbal criticism and potentially offensive language than an ordinary citizen.[7] Nevertheless, this does not mean that Members of the Service must wait until they are placed in serious jeopardy or imminent danger before taking affirmative action to protect themselves and safely complete the enforcement action that they are undertaking. However, in cases that implicate the First or Fourth Amendment rights of observers, officers must be able to clearly articulate the manner in which the observer engaged in *actual* interference of the police activity that lead to action being taken against the observer, and/or why it was necessary to seize any recording or recording device.

Members of the Service are encouraged to contact the Legal Bureau at (646) 610-5400 with any questions about the content of this Bulletin.

---

[7] SIT,    Duran v. Douglas  904 F.2d 1372, 1377-78 (9th Cir. 1990) (An individual who was making obscene gestures and yelled profanities at an officer engaged in conduct that "fell squarely within the protective umbrella of the First Amendment. and any action to punish or deter such speech - such as stopping or hassling the speaker - is categorically prohibited by the Constitution.").