# EXHIBIT A

Page 1

1

2      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
3      ------------------------------------------X
       PEOPLE OF THE STATE OF NEW YORK, by Letitia
4      James, Attorney General of the State of New
       York,
5
                              PLAINTIFF,
6

7         -against-        Case No.:
                           21-cv-322(CM)(GWG)
8

9
       CITY OF NEW YORK, MAYOR BILL DE BLASIO,
10     POLICE COMMISSIONER DERMOT F. SHEA, and
       CHIEF OF DEPARTMENT TERENCE A. MONAHAN,
11
                              DEFENDANTS.
12     ------------------------------------------X
13

14                    DATE:  MAY 26, 2023
15                    TIME:  10:32 A.M
16

17            REMOTE DEPOSITION of CHIEF JEFFREY
18     MADDREY, taken by the Plaintiffs, pursuant to
19     a Notice and to the Federal Rules of Civil
20     Procedure, held via video teleconference,
21     before Diane Buchanan, a Notary Public of the
22     State of New York.
23

24

25

Page 2

```
1
2       A P P E A R A N C E S:
3
        NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
4       Attorneys for the Plaintiffs
             28 Liberty Street
5            New York, New York 10005
             BY:  LILLIAN MARQUEZ, ESQ.
6
7
        NEW YORK CITY LAW DEPARTMENT
8       Corporation Counsel of the City of New York
             100 Church Street
9            New York, New York 10007
             BY:  JOSEPH HIRAOKA, ESQ.
10
11      ALSO PRESENT:  Alicia Calzada, Esq.
                       Veronica Salama, Esq.
12                     Aymen Aboushi-Rolan, Esq.
                        Elizabeth Moehle, Esq.
13                      Laura Mulle
14
                           *        *        *
15
16
17
18
19
20
21
22
23
24
25
```

                                        Page 3

 1

 2          F E D E R A L   S T I P U L A T I O N S

 3

 4

 5          IT IS HEREBY STIPULATED AND AGREED by and

 6     between the counsel for the respective

 7     parties herein that the sealing, filing and

 8     certification of the within deposition be

 9     waived; that the original of the deposition

10     may be signed and sworn to by the witness

11     before anyone authorized to administer an

12     oath, with the same effect as if signed

13     before a Judge of the Court; that an unsigned

14     copy of the deposition may be used with the

15     same force and effect as if signed by the

16     witness, 30 days after service of the

17     original & 1 copy of same upon counsel for

18     the witness.

19

20              IT IS FURTHER STIPULATED AND AGREED

21     that all objections except as to form, are

22     reserved to the time of trial.

23

24              *     *     *     *

25

```
 1              CHIEF JEFFREY MADDREY
 2      don't know exactly who.  And the City of
 3      New York.
 4           Q.   Okay.  Any other times you recall
 5      being deposed?
 6           A.   No.  I think I was deposed one
 7      other time, it was an extremely long time
 8      ago.  I don't remember.
 9           Q.   Was it while you were in NYPD?
10           A.   Yes.
11           Q.   Or in your capacity as a member of
12      the service?
13           A.   Yes.
14           Q.   More than ten years ago would you
15      say?
16           A.   Yes.
17           Q.   Any other times?
18           A.   The best of my recollection, that's
19      it.
20           Q.   Okay.  And I'm guessing you also
21      testified in criminal cases?
22           A.   Yes.
23           Q.   How many times would you say?
24           A.   At least ten times.
25           Q.   Have you ever been accused of lying
```

```
1              CHIEF JEFFREY MADDREY
2    under oath?
3         A.   Yes.
4         Q.   When?
5         A.   In 2017.
6         Q.   In connection with what?
7         A.   In connection with a case in the
8    police department.
9         Q.   Internal investigation?
10        A.   Internal investigation, yes.
11        Q.   Involving who?
12        A.   The same case with Tabatha Foster.
13        Q.   When you say the same case, is it
14   arising from the same circumstances or
15   involving that civil suit that's in court
16   right now?
17        A.   Arising from the same
18   circumstances.
19        Q.   Involving, I'm not sure what her
20   rank was, Tabatha Foster?
21        A.   She was a police officer.
22        Q.   PO.  Okay.  And was Officer Foster
23   a subordinate of yours or outside of your
24   command?
25             MR. HIRAOKA:  Ms. Marquez, I just
```

```
                                            Page 12
 1          CHIEF JEFFREY MADDREY
 2          want to step in for a moment.  The case
 3          is still open and I'm not representing
 4          Chief Maddrey with respect to that open
 5          case.  The attorney who is representing
 6          him should be available later this
 7          afternoon.  So, I have no problems with
 8          you asking questions about that, but I
 9          will not allow him to answer questions
10          while his attorney is not present.  If
11          you could wait to ask questions about
12          open cases until 2:30, 3 o'clock, when
13          his private attorney could log in, that
14          would be appreciated.
15          Q.   My understanding, Chief, that was
16     closed under plea, that particular
17     investigation; is that right?
18          A.   Yes.
19          MS. MARQUEZ:  Joe, do you still
20          want me to wait, I could do that later,
21          but my understanding that it's closed.
22          MR. HIRAOKA:  That would be
23          appreciated.  Because there could be
24          some overlap and so forth to prevent
25          future problems when his attorney who
```

```
 1            CHIEF JEFFREY MADDREY
 2        represents him on the case that is still
 3        open, since the facts they may overlap I
 4        think to prevent any problems if you
 5        could wait until his private attorney is
 6        available and logs in, that would be
 7        better.  I would very much appreciate
 8        it.
 9            MS. MARQUEZ:  What time are they
10        joining?
11            MR. HIRAOKA:  He should be
12        available between 2:30 and 3:00.
13            MS. MARQUEZ:  Okay.
14        Q.   I will hold off on those questions,
15   Chief.
16            Aside from that instance of that
17   accusation in you said 2017?
18        A.   Yes, I was deposed in 2017, 2017.
19        Q.   You were deposed, sir?
20        A.   Yes, I was deposed in 2017.  Yes.
21        Q.   And I just want to make sure, I
22   will get into the questions a little more
23   then.  I just wanted to make sure I was about
24   to ask a follow-up about depositions versus
25   interviews with IAB.  Because I will make a
```

```
                                              Page 16

 1              CHIEF JEFFREY MADDREY

 2      24-hours that might effect your ability to

 3      testify fully and accurately today?

 4           A.   I took blood pressure medication

 5      this morning and cough medicine.

 6           Q.   Nothing that would prevent you from

 7      testifying fully and accurately?

 8           A.   I don't believe so.

 9           Q.   Have you taken any alcohol within

10      the last 24 hours, again, that you believe

11      would effect your ability to testify fully

12      and accurately?

13           A.   No.

14           Q.   Okay.  Thank you.  You mentioned

15      some folks in the room today, are they your

16      counsel?

17           A.   Yes.

18           Q.   Are you represented by any other

19      counsel?

20           A.   I have a private attorney,

21      Mr. Lambros Lambrou.

22           Q.   Is he the attorney who will be

23      joining us later today?

24           A.   Yes.

25           Q.   Okay.  And so we will just note his
```

1        CHIEF JEFFREY MADDREY

2            MR. HIRAOKA:  So, for the record, I

3        found out that Chief Maddrey's personal

4        attorney regarding his open cases will

5        not be able to appear today partly

6        because it's the holiday weekend and his

7        office is closed.  Given the fact that

8        Chief Maddrey does have an open CCRB

9        case and he does have an open civil

10       lawsuit that is related to a closed IAB

11       investigation.  Since his Counsel is not

12       here for those two cases, I will not

13       allow him to answer any questions

14       regarding the open CCRB case or the open

15       civil case involving a closed IAB

16       lawsuit.  With respect to the closed IAB

17       lawsuit, like I said I have no problem

18       with you asking general things, like the

19       general allegations and the outcome and

20       any penalty, but because his private

21       attorney is not here, I will not allow

22       him to answer questions regarding the

23       underlying facts until his personal

24       attorney is here.  As I indicated on the

25       record, Chief Maddrey will come back to

```
 1          CHIEF JEFFREY MADDREY
 2     answer those questions with his private
 3     counsel present and we can go forward
 4     and also we would not consent to pay for
 5     the deposition transcript for when Chief
 6     Maddrey returns.
 7          MS. MARQUEZ:  As I was informing
 8     Counsel off the record, and will now
 9     state on the record, it was already put
10     on the record that at the start of the
11     deposition, you know, you represented to
12     me that his private counsel would be on
13     this afternoon, he did not come on in
14     the afternoon and you had asked me to
15     hold off asking questions based on that
16     representation and I did.  And now it's
17     past business hours and I don't feel
18     it's right to call the Court at this
19     hour to ask for a ruling on this, but
20     it's not appropriate to direct a witness
21     to not answer questions regarding an
22     open CCRB case, which is not anything
23     that is protected, as I understand it,
24     there's no privilege there, there's no
25     other basis I'm aware of that you can
```

```
 1          CHIEF JEFFREY MADDREY
 2      direct him not to answer that.  And I
 3      have questions on those issues.  And if
 4      it made you feel more comfortable to
 5      have counsel here that this was
 6      something that was only raised to me at
 7      the start of the deposition.  And again
 8      was represented to me private counsel
 9      would be on the deposition in the
10      afternoon.  Him not being here, it's not
11      right to have us bear the burden and
12      cost of the Chief coming back in form of
13      court reporter costs and the form of our
14      time, we are here today and you don't,
15      as you sit here, Joe, have a date and
16      time you would even produce him,
17      correct?
18          MR. HIRAOKA:  If you have some
19      dates and times you want to propose, I
20      think we can resolve that issue now.  Do
21      you have any dates and time?
22          MS. MARQUEZ:  Do you know when his
23      private counsel will be available?
24          MR. HIRAOKA:  No, I will have to
25      relate to him.  I'm sorry, were you done
```

```
 1          CHIEF JEFFREY MADDREY
 2      with the statement?
 3          MS. MARQUEZ:  No.  I just, yes, I
 4      was just making sure I understood that
 5      we can't resolve that right now.  You
 6      just informed me as of 20 minutes ago
 7      that it's -- that the private counsel is
 8      not even around because his office is
 9      now closed all of a sudden.  So, you
10      know, like, I'm going to go ahead and
11      finish with my questioning.  If you want
12      to direct him not to answer, I will mark
13      it for a ruling.  It's too late to call
14      the Court, but we will be seeking for
15      the City to pay for his return because I
16      don't think that's an appropriate
17      objection and, you know, if Counsel felt
18      more comfortable having private counsel
19      here on the call, they should have
20      arranged for that.  I think that was it.
21      Joe, I don't know if you had anything
22      else.
23          MR. HIRAOKA:  Yes.  Understood.
24      His private counsel indicated that he
25      would be available and it wasn't until
```

```
 1            CHIEF JEFFREY MADDREY
 2        late this afternoon that I was informed
 3        he would not be available.  So, I have
 4        no control over that.  I apologize.   At
 5        this point I would ask you continue with
 6        your deposition and any future disputes
 7        we have regarding fees and so forth will
 8        be taken up at the appropriate time.  I
 9        have no problem with you finishing up
10        the questions you have right now.  And
11        like I said we will bring Chief Maddrey
12        back regarding any questions you have
13        regarding any open cases he may have.
14            MS. MARQUEZ:  When were you alerted
15        private counsel would not be available?
16            MR. HIRAOKA:  That was
17        approximately, approximately 3:45 this
18        afternoon, approximately.
19        Q.   Let's start with the rest of the
20   questions.   Chief, we went over a number of
21   incidents, I remember one more protest you
22   said you were at June 3rd, Cadman Plaza,
23   correct?
24        A.   Yes.
25        Q.   Were you the incident commander
```

1           CHIEF JEFFREY MADDREY

2      is disqualifying, that's on a case-by-case

3      basis?

4           A.    Yes.

5           Q.    Determined by, I guess, ultimately

6      the police commissioner?

7           A.    Ultimately the police commissioner,

8      yes.

9           Q.    So just to go briefly over the

10     CCRBs.  You said everything that was opened

11     against you was unsubstantiated as it relates

12     to the protests?

13          A.    To my knowledge, yes.

14          Q.    Okay.  And what informs your

15     knowledge?

16          A.    I received, I received letters from

17     CCRB stating that they were closed, that they

18     were unsubstantiated and closed.

19          Q.    Did you receive a letter from CCRB

20     saying as much for the case we sort of

21     discussed on May 30th at the Brooklyn Bridge?

22          A.    I sat through CCRB hearings for

23     approximately four days in the summer of

24     2021.  There was multiple charges and to my

25     knowledge I received letters back on all of

                    CHIEF JEFFREY MADDREY

1       them saying they were all unsubstantiated.

2            Q.   Do you know if anybody else, any

3       other subject officer from that case against

4       whom charges and specifications were filed?

5            A.   I don't understand your question.

6            Q.   So you were one subject officer,

7       but there were others in that case, May 30th,

8       Brooklyn Bridge.  Are you aware of the status

9       of the case as to those officers?

10           A.   No, I don't know who received

11      complaints on May 30th at the Brooklyn

12      Bridge, so I can't provide an answer.

13           Q.   Okay.  And then you had also

14      testified earlier to a closed case involving

15      -- my apologies.  Tabatha Foster?

16           A.   Yes, Foster.

17           Q.   And the allegations there were that

18      you got into a physical altercation with Ms.

19      Foster?

20           A.   Yes.

21           Q.   And that you failed to report that

22      altercation to patrol supervisor?

23           A.   Yes.

24           Q.   And that you intended to impede the

```
 1                CHIEF JEFFREY MADDREY
 2      investigation by lying about the fact that
 3      Ms. Foster brandished her service weapon?
 4           A.    I never lied about that.
 5           Q.    That was an allegation?
 6           A.    The allegation I impeded the
 7      investigation by -- I impeded the
 8      investigation by telling them that, you know,
 9      I was police chief and everything was okay.
10           Q.    And did Ms. Foster actually
11      brandish a weapon?
12                MR. HIRAOKA:  No.  Don't answer
13           that.
14                MS. MARQUEZ:  That's a closed case.
15                MR. HIRAOKA:  As I stated on the
16           record beforehand, I'm not going to
17           allow him to answer questions regarding
18           the substance of the case.  The
19           allegations and the outcome is fine.
20           And I'm not saying you can't ask them
21           ever, I'm just saying I will not allow
22           him to answer without his private
23           counsel present.
24                MS. MARQUEZ:  You said the
25           opposite.  If it's closed you will not
```

```
 1              CHIEF JEFFREY MADDREY
 2         direct him not to answer.
 3         Q.    This is a closed case, Chief?
 4         A.    Yes, it is.
 5              MR. HIRAOKA:  What was your comment
 6         to me?
 7              MS. MARQUEZ:  I was going to ask
 8         another question.
 9         Q.    You entered a plea in that case,
10    yes?
11         A.    Yes.
12         Q.    The 45 days loss of vacation days;
13    is that right?
14         A.    Yes.
15         Q.    And that is a large amount, no?
16         A.    Yes.
17         Q.    And why did you plead?
18              MR. HIRAOKA:  No.  Don't answer
19         that.  Okay.  So, again, Counsel at this
20         point, like I said, I'm allowing him to
21         answer question.  It's a closed,
22         regarding closed allegation, regarding
23         the allegations and the outcome as for
24         any subjective matters regarding the IAB
25         case there's an open civil case, I will
```

1          CHIEF JEFFREY MADDREY

2          not allow him to answer further

3          questions regarding the IAB case without

4          his counsel present.

5              MS. MARQUEZ:  Do you have case law

6          allowing him not to answer questions?

7              MR. HIRAOKA:  Rule 30.  This will

8          be made at that base.  He does have a

9          private counsel.  I'm not saying he

10         can't answer them ever.  I'm not

11         allowing him to answer without his

12         personal counsel present.

13             MS. MARQUEZ:  I'm marking it for a

14         ruling.

15         Q.   You did plead to 45 days loss of

16     vacation, correct?

17         A.   Yes.

18         Q.   And I believe you won't stop me

19     from asking at least what the ultimate

20     charges that you pled to were?

21         A.   Yes, it was physical altercation,

22     failure to report and impede an

23     investigation.

24         Q.   So to all three?

25         A.   Yes.

1          CHIEF JEFFREY MADDREY

2          Q.    Okay.  If I told you it had been

3     reported that the last charge was dropped

4     from the ultimate findings, is that an

5     accurate reporting?

6          A.    When you say the last charge out of

7     the three I just spoke about?

8          Q.    The attempt to impede investigation

9     was dropped?

10         A.    The three3 charges I just named,

11    impeded investigation, physical altercation

12    and failure to report were the three charges.

13         Q.    Okay.  So your recollection is that

14    you pled, I guess, guilty to those three?

15         A.    Yes.

16         Q.    You didn't undergo a trial because

17    of that plea, correct?

18         A.    Yes.

19              MS. MARQUEZ:  And I'm going call

20         for production of that file.

21              MR. HIRAOKA:  Put all requests in

22         writing and we will take it under

23         advisement.

24         Q.    Was Tabatha Foster ever subject to

25    investigation with respect to that same

```
                                             Page 268
  1              CHIEF JEFFREY MADDREY
  2       investigation?
  3              MR. HIRAOKA:  Don't answer.  Same
  4          objection.  I will not let him answer
  5          questions.
  6              MS. MARQUEZ:  That is a
  7          third-party, Tabatha Foster.
  8              MR. HIRAOKA:  It still involves, it
  9          still involves the IAB investigation
 10          that is closed and the open civil case,
 11          so same objection.
 12          Q.   Is Tabatha Foster currently a
 13       member of service?
 14              MR. HIRAOKA:  Same objection.
 15          Don't answer.
 16              MS. MARQUEZ:  Seriously, that's a
 17          matter of public record.
 18              MR. HIRAOKA:  If it's a matter of
 19          public record you can get it.
 20              MS. MARQUEZ:  So you are actually
 21          directing him not to answer something
 22          that should be in the public record?
 23          You are directing a person not to answer
 24          something in federal, in a deposition
 25          that I could potentially go online and
```

```
 1           CHIEF JEFFREY MADDREY
 2      look up?
 3           MR. HIRAOKA:  Again, this involves,
 4      this is related to his open civil suit.
 5      All right, so I'm not going allow him to
 6      answer any other questions other than
 7      what he agreed to without his private
 8      counsel present.
 9           MS. MARQUEZ:  Are you going to stop
10      me from asking him if he has an open
11      civil suit?
12           MR. HIRAOKA:  You did.
13           MS. MARQUEZ:  That's an open civil
14      suit.  I think we can agree not all
15      questions about open civil suit that it
16      falls within whatever you are defining
17      as something you could tell him to stop
18      responding to.
19           MR. HIRAOKA:  We will go question
20      by question basis.  So, you know, you
21      can continue with your questioning.  I'm
22      not obstructing your questioning.  I'm
23      just saying there are certain parameters
24      that I will not let him go beyond and
25      answer the questions because he does not
```

```
 1              CHIEF JEFFREY MADDREY
 2         have private counsel present here.
 3         Q.   Did Ms. Foster retire?
 4         A.   Yes.
 5         Q.   When did she retire?
 6              MR. HIRAOKA:  That's it.  Lillian,
 7         no more about her retirement.
 8              MS. MARQUEZ:  I want to get it on
 9         the record, you are directing the
10         witness not to answer my question?
11              MR. HIRAOKA:  That particular
12         question, yes.
13              MS. MARQUEZ:  Okay.
14         Q.   Did you consider the altercation
15    akin to domestic violence incident?
16              MR. HIRAOKA:  Don't answer.  Same
17         objection.
18         Q.   You are taking the advise of
19    counsel, Chief, on all of these; is that
20    correct?
21         A.   He's the lawyer, yes.
22         Q.   Okay.  Just want to make sure.
23              And is it not a violation of NYPD
24    policy that pulling out a service weapon,
25    otherwise known as brandishing a service
```

1          CHIEF JEFFREY MADDREY

2     weapon, against an individual?

3          A.   I didn't hear your question.

4          Q.   Is brandishing a service weapon a

5     violation of NYPD policy if it's in a private

6     capacity?

7          A.   It's against the law.

8          Q.   Okay.  And so also against NYPD

9     policy?

10         A.   Well, an active officers, yes.

11         Q.   What about not active officer?

12         A.   Yes.

13         Q.   Meaning off duty?

14         A.   Off duty, if they are not

15    addressing a crime, yes.

16         Q.   And in such cases is it NYPD policy

17    to remove their service weapon?

18         A.   I don't understand your question.

19         Q.   So in a case where somebody has

20    misused their service weapon, for instance,

21    one of the instances is where you recommended

22    discipline, person I guess fired a shot with

23    their service weapon, is it protocol under

24    NYPD policy to remove the service weapon from

25    that person?

1               CHIEF JEFFREY MADDREY

2         A.    Normally I would say yes.

3         Q.    Why normally?  Why are you putting

4    the qualifier?

5         A.    I mean every situation is

6    different.  If the in the situation I

7    described, so fired his weapon for no reason,

8    I suspended the officer and he was suspended,

9    take his gun and shield.

10        Q.    So I guess if they use their

11   service weapon in an unauthorized fashion is

12   it protocol to strip them of their service

13   weapon?

14        A.    Yes.

15        Q.    What rank were you at the time of

16   this IAB case?

17        A.    Assistant chief.

18        Q.    Okay.  And did you suffer any

19   consequence other than the loss of vacation

20   days for your plea?

21        A.    In terms of within the department?

22        Q.    Yes.

23        A.    No, my penalty was 45 days.

24        Q.    And you were promoted there after

25   to Chief of Community Affairs?

```
 1          CHIEF JEFFREY MADDREY
 2     A.    Yes.
 3     Q.    How long after entering your plea?
 4     A.    Three years.
 5     Q.    Okay.  And if you know, what role
 6  did your plea play in your promotion?
 7     A.    I believe I would have been
 8  promoted a lot earlier, but because of the
 9  incident I didn't get promoted as fast.
10     Q.    Did you have to interview?  We went
11  over that.  You were pulled into the police
12  commissioner's office for that promotion,
13  correct?
14     A.    Yes.
15     Q.    Okay.  And what is the status of
16  the lawsuit against you from Tabatha Foster?
17     A.    It's an active lawsuit.
18     Q.    Do you know what state?  What is
19  the status?  Are you in discovery?  Do you
20  have a trial next week?
21     A.    No.
22          MR. HIRAOKA:  Do you know, yes or
23  no?
24          THE WITNESS:  Yes.  Attorney filed
25  a motion to dismiss.
```

```
 1            CHIEF JEFFREY MADDREY
 2       Q.   Okay.  So you haven't testified,
 3   you haven't provided deposition testimony
 4   there?
 5       A.   We have done depositions already.
 6       Q.   Okay.  So was it a summary judgment
 7   motion?  Have you heard that word?
 8       A.   Summary judgment, it probably is
 9   summary judgment.
10       Q.   But you have done a deposition at
11   the minimum?
12       A.   Yes, we have done deposition.
13       Q.   Any other active lawsuits against
14   you?
15       A.   Not that I am aware of.
16       Q.   Any other civil lawsuits as it
17   relates to your service in the NYPD civil
18   lawsuits?
19       A.   Did I incur any other civil
20   lawsuits during my time at NYPD?  Yes.
21       Q.   And not the ones we went over at
22   the top, other than that?
23       A.   32-year career, I had civil
24   lawsuits filed against me in 32 years.
25       Q.   Anywhere you were found to be
```

```
                                              Page 275
 1            CHIEF JEFFREY MADDREY
 2    liable?
 3         A.   No.
 4         Q.   Anywhere the City of New York was
 5    found to be liable?
 6         A.   No.
 7         Q.   Okay.  Are you aware of a CCRB
 8    investigation into an incident November 24,
 9    2021 where you are alleged to have abused
10    your authority by releasing from custody
11    retired NYPD Officer Kruythoff?
12         A.   Yes.
13         Q.   And what is the status of that
14    CCRB?
15         A.   I just -- I decided that I'm going
16    to take this to trial.  So, I'm going to
17    trial.
18            MR. HIRAOKA:  It's still open?
19            THE WITNESS:  It's open, yes.
20         Q.   Are you aware of reporting that
21    Commissioner Sewell has reprimanded you in
22    connection with this matter by proposing a
23    loss of ten vacation days?
24         A.   Yes.
25         Q.   And do you know that to be
```

```
 1              CHIEF JEFFREY MADDREY
 2      accurate?
 3           A.    It was proposed to me and I did not
 4      accept the findings.
 5           Q.    And how was it proposed to you?
 6                MR. HIRAOKA:  Don't answer that.
 7           Q.    And the allegation is abuse?
 8                MR. HIRAOKA:  Same objection
 9           because his private counsel isn't here.
10           Q.    I get to ask the question at least.
11      Is the allegation, do you know what the
12      allegations are?  I will go through what I
13      understand they are.  Abuse of authority?
14           A.    Yes.
15           Q.    Anything else?
16           A.    That's it.
17           Q.    Okay.  Did you play any role in
18      causing the release of Mr. Forrester from
19      custody?
20                MR. HIRAOKA:  Objection.  Same
21           objection.  His private counsel is not
22           here.  Again, we are going into the
23           underlying facts of the case.
24                MS. MARQUEZ:  You are directing him
25           not to answer?
```

```
 1              CHIEF JEFFREY MADDREY
 2                 MR. HIRAOKA:  Don't answer.
 3         Q.    What was the recommendation by
 4     CCRB?
 5         A.    Schedule B command discipline ten
 6     days.
 7         Q.    Were you served with charges and
 8     specifications yet?
 9         A.    Yes.
10         Q.    Okay.  Is that where you got the
11     proposal for the ten days?
12         A.    No.
13         Q.    Okay.  This is by separate
14     communication?
15         A.    Yes.
16         Q.    Would a false arrest be
17     investigated by an abuse of authority by the
18     CCRB?
19                 MR. HIRAOKA:  In this case or in
20         general?
21                 MS. MARQUEZ:  In general.
22         A.    A false arrest?
23         Q.    Yes.
24         A.    Yes.
25         Q.    Okay.  And were you interviewed by
```

```
 1              CHIEF JEFFREY MADDREY
 2      CCRB in relation to this matter?
 3           A.   Yes.
 4                MS. MARQUEZ:  We call for the
 5           production of this case.
 6                MR. HIRAOKA:  Please make all
 7           requests in writing.  We will take it
 8           under advisement.
 9                MS. MARQUEZ:  Just to get on the
10           record you are, you are directing the
11           Chief not to answer any further
12           questions on the CCRB or the closed IAB
13           relating to Ms. Foster for the civil
14           suit by Ms. Foster, correct?
15                MR. HIRAOKA:  No.  I said we will
16           take it on a question by question basis.
17           You are free to ask the questions.  If I
18           find it's too far into the underlying
19           case I will direct him not to answer.
20           He is my client and I'm defending him,
21           his private counsel is not here.
22           Q.   At any point before today did you
23      know retired NYPD Officer Forrester?
24           A.   Yes.
25           Q.   In what capacity?
```

1          CHIEF JEFFREY MADDREY

2               MR. HIRAOKA:  Objection.  Don't

3          answer that.

4          Q.    When was he retired?

5               MR. HIRAOKA:  Objection.  Don't

6          answer that either.

7          Q.    Do you know that he was alleged to

8      have chased three teens in Brownsville with a

9      gun?

10               MR. HIRAOKA:  Objection.  Don't

11          answer.

12          Q.    Do you know that Mr. Forrester was

13      taken into custody by NYPD officers?

14               MR. HIRAOKA:  Objection.  Don't

15          answer.

16          Q.    Do you know the reason for him

17      being taken into custody?

18               MR. HIRAOKA:  Objection.  Don't

19          answer.

20          Q.    Again, this relates to November 24,

21      2021, do you understand?

22          A.    Yes.

23          Q.    What happened ultimately to

24      Mr. Forrester?

25               MR. HIRAOKA:  Objection.  Don't

```
                                        Page 280
 1              CHIEF JEFFREY MADDREY
 2       answer.
 3       Q.   When did you first learn of
 4    Forrester's arrest?
 5              MR. HIRAOKA:  Objection.  Don't
 6       answer.
 7       Q.   What did you do with that
 8    information, if anything?
 9              MR. HIRAOKA:  Objection.  Don't
10       answer.
11       Q.   Have you spoken to the press in any
12    capacity around these allegations?
13              MR. HIRAOKA:  Objection.  Don't
14       answer.
15       Q.   What role, if any, did you play in
16    causing the release of Mr. Forrester from
17    custody?
18              MR. HIRAOKA:  Objection.  Don't
19       answer.
20       Q.   And why did you direct that action?
21              MR. HIRAOKA:  Objection.  Don't
22       answer.
23       Q.   Is this in accordance with NYPD
24    policy?
25              MR. HIRAOKA:  Objection.  Don't
```

```
                                           Page 281
 1              CHIEF JEFFREY MADDREY
 2         answer.
 3         Q.   Did you cause his arrest to be
 4    voided?
 5              MR. HIRAOKA:  Objection.  Don't
 6         answer.
 7         Q.   And, Chief, just as a general
 8    matter, what does it mean for an arrest to be
 9    voided?
10              MR. HIRAOKA:  A general manner.
11         A.   As a general manner if you find
12    probable cause is lacking you can void an
13    arrest.
14         Q.   Was this incident investigated by
15    anybody, any other entity other than CCRB?
16         A.   Yes.
17         Q.   By whom?
18         A.   By the Internal Affairs Bureau, by
19    Kings County District Attorney's office.
20         Q.   Okay.  Are those investigations
21    closed?
22         A.   Yes.
23         Q.   And what is the outcome, if you
24    know?
25         A.   Both of them found that I did
```

```
                    CHIEF JEFFREY MADDREY
 1
 2      nothing wrong.
 3           Q.    And why was the D.A.'s Office
 4      investigating it, under what jurisdiction?
 5           A.    What do you mean?  I don't
 6      understand the question.
 7           Q.    Was it, like, police accountability
 8      unit or in what capacity were they
 9      investigating?
10           A.    I don't know which unit it was
11      investigated in.  The case was referred to
12      them along with IAB.  We both conducted
13      investigations.  They both found I did
14      nothing wrong.
15                MS. MARQUEZ:  I will call for
16           production of the IAB file.
17           Q.    And how did you learn --
18                MR. HIRAOKA:  Put the requests in
19           writing, we will take it under
20           advisement.
21           Q.    How did you learn about the IAB
22      case?
23           A.    Through the news.
24           Q.    You didn't receive a communication
25      from IAB about the closure of the case?
```

```
 1              CHIEF JEFFREY MADDREY
 2         A.   Not that I recall.  Not that I ever
 3    seen.
 4         Q.   Were you interviewed by any part of
 5    the IAB or investigation unit?
 6         A.   No.
 7         Q.   Have you ever received discipline
 8    other than what we discussed for by NYPD?
 9              MR. HIRAOKA:  Or this case?
10              MS. MARQUEZ:  Anything.
11         A.   In 1995 I got in trouble, received
12    discipline.
13         Q.   For what?
14         A.   That my partner said I used force
15    against him.
16         Q.   Sorry, I couldn't hear that.
17         A.   Complainant said me and my partner
18    used force against him.
19         Q.   Okay.  And what was the discipline?
20         A.   It was a Nolo contendere loss of 20
21    days.
22         Q.   Anything else?
23         A.   That's it.
24         Q.   Okay.
25              MS. MARQUEZ:  I will reserve the
```

1           CHIEF JEFFREY MADDREY

2       remainder of the time for a court ruling

3       to bring you back.

4           Was there anything on your end,

5       Joe?

6           MR. HIRAOKA:  No.  I mean we are

7       agreeing to bring him back.

8           MS. MARQUEZ:  Well, at Counsel's

9       expense.  I think you inappropriately

10      directed him not to answer questions on

11      these things.  I was asking if you had

12      any questions.

13          MR. HIRAOKA:  No, no questions.

14          Once again, we will bring him back

15      and, you know, we are not directing him

16      not to answer forever it's just he can

17      answer in the presence of his private

18      counsel.

19          MS. MARQUEZ:  I think that's it

20      then.

21          (Time noted:  6:00 p.m.)

22

23          _____

24              JEFFREY MADDREY

25