```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
In Re: New York City Policing During Summer    :           ORDER
2020 Demonstrations                                        20 Civ. 8924 (CM) (GWG)
                                               :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

     The Court is in receipt of the parties' latest letters concerning the proposed depositions of Ernest Hart, a former Deputy Commissioner of Legal Matters, and Oleg Chernyavsky, a former Assistant Deputy Commissioner of Legal Matters.  See Docket ## 1011, 1012, 1036, 1040.  These letters supplement prior briefing submitted in conjunction with the City's Motion for a Protective Order, see Docket ## 841, 855, 872, which was itself the subject of a March 6, 2023, conference, see Docket # 934.  The Court has carefully reviewed all these materials.

     The main problem with these proposed deponents is the absence of a showing that they can provide competent or non-cumulative testimony with respect to the central issues in this case: whether the City and its employees engaged in illegal policing actions in 2020 and what City policies were in effect or should have been in effect for mass protests in 2020 and now.

     Plaintiffs assert that in addition to testimony they have received about what the NYPD Legal Bureau's role was "as a general matter," they also want to know about what Hart's "understanding was or what conversations took place between the Mayor's Office and the NYPD regarding the Executive Orders establishing the curfews" and Hart's "knowledge and involvement" in "decision-making during the Protests."  Docket # 1036 at 2.  This is just the sort of information that should be clear by now either from documents or from depositions of persons who were actually making decisions as to how the policing was to take place.  Certainly, these other individuals would be able to identify whether Hart (or Chernyavsky) was acting in a policy role, and not — as the City asserts —as a legal advisor.  The Court has reviewed the scattered pieces of evidence on this issue provided in plaintiffs' letters, but none of it is enough to show that either of the proposed deponents had a non-legal role, even if Hart was present at high-level meetings with policymakers and communicated the Department's position on policing matters in a few instances.  Without evidence that Hart or Chernyavsky had a non-legal role in the City's decisions as to policing, the Court sees only the most minimal value in deposing them simply to verify the City's claim that they operated as attorneys.

     Plaintiffs are also interested in legal advice that emanated from the NYPD's Legal Bureau, including directives drafted by the Legal Bureau to NYPD personnel, such as whether they were permitted to arrest legal observers.  But to the extent legal advice has been purportedly revealed, plaintiffs have not provided a good reason why they must also obtain testimony from high level attorneys as to how that legal advice was arrived at.  What is at issue in this case is the content of those directives and any legal advice given, and how the recipients understood and implemented those directives and that advice — not the legal process used by attorneys to arrive at them.  Even if there any waiver of privilege as a result of the revelation of advice of counsel, such waiver would only allow "examination of protected communications" between the attorney and the client.  See United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991).  Fairness (the

touchstone of the waiver doctrine) would not require examination of the attorney to determine how or why he or she arrived at that advice.

In a similar vein, the plaintiffs concede that they have gotten testimony as to how "line-level Legal Bureau attorneys" gave advice as to arrests. See Docket # 1036 at 2. While plaintiffs seek Hart and Chernyavsky's deposition to learn about "high-level conversations and decision-making in the Legal Bureau" in relation to that advice, see id., the Court fails to see the relevance of "conversations and decision[s]" within the Legal Bureau about the legal advice provided to the non-legal personnel. The advice is what it is. How the advice was arrived at and what reasoning was used, is not relevant because the propriety of the advice, assuming it is relevant, will be judged from an objective perspective. Whether or not the Legal Bureau followed a logical or reasonable path to arrive at the advice is only of the most tangential relevance.

The plaintiffs' letter, including the proposed topics, are replete with other matters that are either irrelevant or are easily obtained from other individuals. For example, how Hart determined certain facts that were included in a letter to a human rights organization is irrelevant to this case. See Docket # 1012 at 2. While the underlying facts are certainly relevant, the plaintiffs have had ample opportunity to obtain information regarding those facts from other sources. And, once again, there is no evidence that Hart was the person who instituted decisions at the NYPD based on those underlying facts.

These are just some examples. Overall, the Court finds that there is no reason to require the depositions of these two individuals in light of the total number of depositions already taken or to be taken in this case, the burden it would impose on the City and the deponents, the fact that large swaths of topics in the plaintiffs' list would appropriately be subject to privilege objections, the lack of proportionality with respect to the depositions, and the low if not vanishing degree of relevance. Accordingly, the Court exercises its discretion to not permit the depositions of Hart or Chernyavsky.

SO ORDERED.

Dated: June 8, 2023
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge