


June 12, 2023

**Via ECF**

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *In re: New York City Policing During Summer 2020 Demonstrations,*
              *No. 20-CV-8924*
              *This Filing is Related to All Cases*

Dear Judge Gorenstein:

      We represent the Plaintiffs in *Payne v. de Blasio* and write respectfully on behalf of all non-stayed consolidated cases in reply to Defendants' supplemental letter brief in support of their motion for a protective order to preclude the depositions of former Mayor Bill de Blasio and former Police Commissioner Dermot Shea. Plaintiffs and Defendants submitted simultaneous Supplemental Letter Briefs on June 5, 2023. ECF 1038 (Defs' Supp. Ltr. Br.), 1039 (Pls. Supp. Ltr. Br.). The Court granted the parties an extension on the reply briefing from June 8 until June 12. ECF 1041. The first day of Mr. Monahan's deposition was rescheduled from to June 9 and the second day was rescheduled to June 16. Commissioner Shea's text messages—initially scheduled to be produced on June 5—were produced on June 9.

      After having deposed Mr. Monahan for the first of two days and reviewed Commissioner Shea's text messages, Plaintiffs reached out to Defendants in an effort to reduce the number of depositions in this case and the issues before the Court here. The parties were able to reach agreement to avoid the deposition of Commissioner Shea and the terms of that agreement are memorialized at the end of this letter. A joint stipulation for the docket is forthcoming. The parties remain at an impasse over Mr. de Blasio.[1] Defendants' position is that Mr. de Blasio should not be deposed at all in this case. Plaintiffs therefore ask the Court to deny Defendants' motion for a protective order with respect to Mr. Blasio and order his deposition to proceed.

1. **The Depositions of the Mayor's Office Witnesses Confirm that Mr. de Blasio Has Unique, First-Hand Knowledge Related to the Core of Plaintiffs'** *Monell* **Claims**

      In their supplemental letter brief, Plaintiffs "identif[ied] with particularity" examples of the information related to their litigation claims within former Mayor de Blasio's "unique first-

---

[1] Defendants have yet to produce Mr. de Blasio's text messages and counsel could not provide estimates of when those text messages will be produced or their approximate volume..

hand knowledge." *See In re Terrorist Attacks on Sept. 11, 2001*, 2020 WL 8611024, at *12 (S.D.N.Y. Aug. 27, 2020), *objections overruled*, 2021 WL 2227204 (S.D.N.Y. June 2, 2021) (*In re Terrorist Attacks*) (quoting *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)). Plaintiffs' showing justifies the deposition of Mr. de Blasio, particularly given that Mr. de Blasio is a defendant in these consolidated cases and Defendants' did not offer any argument as to "how or why [Mr. de Blasio] should continue to enjoy the same level of protection from deposition that is afforded to *current* high-ranking officials." *Burns v. Rovella*, 2020 WL 12863772, at *2 (D. Conn. Feb. 19, 2020); *see also Herrera v. New York City Dep't of Educ.*, 2022 WL 2719186, at *2 (S.D.N.Y. June 15, 2022) (denying motion to quash deposition of former Mayor de Blasio because, *inter alia*, as a former official, "a single deposition would not interfere with any 'greater duties' or otherwise burden him") (quoting *Lederman*, 731 F.3d at 203). In their supplemental letter brief, Defendants do not argue that Mayor de Blasio does not possess first-hand information related to Plaintiffs claims. Nor could they. As Plaintiffs' supplemental letter brief showed, Mayor de Blasio was personally communicating with high-ranking NYPD concerning their response to the George Floyd protests, ordering a scheme for City Hall officials to monitor the protests for misconduct, order investigations of misconduct, and, on at least one occasion at Mott Haven, personally approving strategies and tactics deployed by the NYPD to police protests. *See* ECF 1039, at 3-5.

Instead, Defendants contend only that because Plaintiffs had the opportunity to depose two officials from the former Mayor's office, Mr. Carrion and Mr. Fuleihan, who testified as a 30(b)(6) witness, "there is absolutely no reason to believe that former Mayor de Blasio has any unique knowledge" related to Plaintiffs' claims. ECF 1038 at 2. But Plaintiffs' have shown that the depositions of those two witnesses revealed precisely the kind of firsthand knowledge uniquely within Mr. de Blasio's possession. *See* ECF 1039 at 4-5. The June 4 Mott Haven example shows that Plaintiffs' diligent efforts in discovery have revealed conflicts in testimony and gaps in knowledge of key information that only Mr. de Blasio's testimony can resolve. On June 5 and June 7, respectively, Mr. de Blasio praised the NYPD response at Mott Haven, *see* ECF 1039-3 at 9 (Mayor's June 5 press availability), and publicly stated: "I approved the broad strategies and some very specific choices" used by the NYPD at that protest, ECF 1039-4 at 15 (Mayor's June 7 Press availability).

However, Mr. Fuleihan testified that did not recognize the plan that the NYPD actually executed on the night of June 4 and that Mayor de Blasio was participating in calls with Commissioner Shea about Mott Haven that evening, to which Mr. Fuleihan was not privy, Ex. A Fuleihan 30(b)(6) Dep. at 213:11-224:3. Mr. Carrion had no knowledge of any preparations the NYPD made in advance to respond to the Mott Haven protest. Ex. B, Carrion Dep. 173:14-175:9. Instead, Mr. Carrion testified based on his contemporaneous documents that the NYPD "us[ed] the curfew to arrest protesters regardless of the tenor of the march," which was inconsistent with what other City Hall staff understood to be the deal they had made with the NYPD prior to Mott Haven. Ex. B, 209:13-212:14. Plaintiffs' depositions of Mr. Fuleihan and Mr. Carrion leave Mr. de Blasio as the only person within City Hall who understood what plan the NYPD actually made and executed at Mott Haven and which parts of that plan Mayor de Blasio approved. Mr. de Blasio's unique, firsthand information is directly related to Plaintiffs' *Monell* claims in terms of his personal direction, approval, or ratification of the unconstitutional protest policing at issue in this case. ECF 1039 at 2.

The testimony from Mr. Fuleihan and Mr. Carrion shows that Mr. de Blasio alone possesses critical information on whether and to what extent the Mayor himself understood the extent of misconduct in the NYPD's protest policing response and what he action he took or failed to take in response to the information he received from protest monitors outside the NYPD, as well from NYPD sources, including Mr. Shea. *See* ECF 1039, at 3-4. Because Mr. de Blasio has unique, first-hand information that goes to the core of Plaintiffs' claims, the Court should deny Defendants' motion for a protective order and order the deposition of Mr. de Blasio to proceed.

2. **The Parties Have Reached an Agreement to Avoid the Deposition of Mr. Shea.**

Although as Defendants note, the parties are still working out the precise details of their agreement as it relates to Mr. Shea's text messages, the principal terms are that in lieu of a deposition of Mr. Shea, Defendants will admit Plaintiffs' RFAs concerning Commissioner Shea's recorded statements, Ex. C., Plaintiffs' Second Set of Consolidated Requests for Admission to Certain Defendants, at 3-5, RFA Nos. 286, 287, 290, 291, 292, 295, and enter into a stipulation with Plaintiffs to be filed on the docket precluding either party from submitting a declaration from Mr. Shea in support of a motion for summary judgment or from calling him as a witness at trial.

\* \* \* \*

Plaintiffs respectfully request the Court deny Defendants' motion for a protective order with respect to Mr. de Blasio and allow Plaintiffs to proceed with his deposition.

Respectfully submitted,

| NEW YORK CIVIL LIBERTIES UNION FOUNDATION | THE LEGAL AID SOCIETY |
|---|---|
| By: *s/Perry Grossman* | By: *s/ Corey Stoughton* |
| Perry Grossman | Corey Stoughton |
| Molly K. Biklen | Jennvine Wong |
| Daniel R. Lambright | Rigodis Appling |
| Jessica Perry | Paula Garcia-Salazar |
| Robert Hodgson | Margaret Hadley |
| Veronica Salama | 199 Water Street |
| Lisa Laplace | New York, NY 10038 |
| 125 Broad Street, 19th Floor | (212) 577-3367 |
| New York, NY 10004 | cstoughton@legal-aid.org |
| (212) 607-3300 | jwong@legal-aid.org |
| pgrossman@nyclu.org | rappling@legal-aid.org |
| mbiklen@nyclu.org | pgarciasalazar@legal-aid.org |
| dlambright@nyclu.org | mhadley@legal-aid.org |
| rhodgson@nyclu.org | |

*Attorneys for the Payne Plaintiffs*

Cc: All counsel of record by ECF