

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES  
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE  
CIVIL RIGHTS BUREAU

June 12, 2023

**BY ECF**

Honorable Gabriel W. Gorenstein  
United States Magistrate Judge  
United Stated District Court, Southern District of New York  
Daniel Patrick Moynihan Courthouse, 500 Pearl Street  
New York, New York 10007

      Re:    ***In re: New York City Policing During Summer 2020 Demonstrations,***  
             ***No. 20-CV-8924 (CM) (GWG)***  
             ***This Letter Relates to All Cases***

Dear Judge Gorenstein:

      We write on behalf of the non-stayed Plaintiffs in these consolidated cases to provide a summary of Plaintiffs' review of the 10 IAB log files Defendants produced pursuant to the Court's orders (ECF No. 943; 5/9/23 Tr.) ("May 16 IAB Production") and in further support of Plaintiffs' request that Defendants promptly complete their deficient IAB document production.[1] ECF No. 924. As explained below, our review revealed that nearly half of the documents in the May 16 IAB Production were "new" to Plaintiffs, suggesting significant deficiencies in Defendants' overall IAB document production and meriting an order granting the original relief requested as modified herein to account for the fast-approaching discovery deadline: that Defendants promptly produce responsive IAB documents not previously produced and pay costs, including reasonable attorneys' fees, associated with Plaintiffs' prolonged and exhaustive efforts to obtain this discovery. *Id.* at 7.

      **I.**    **Background**

      By way of a brief overview, Plaintiffs raised their concern to the Court that Defendants had failed to produce responsive IAB files by the Court-ordered deadline of March 18, after learning that nearly the entire files for two deponents, and portions of a third, had been withheld and after requesting immediate identification and production of the missing IAB files. *Id.* In an effort to assess the scope of Defendants' production deficiency and an appropriate remedy, the Court ordered Defendants to produce any documents missing from a sample of ten IAB log files, to be

---

[1] Plaintiffs use the term "IAB document production" to refer to Defendants' discovery-related productions of IAB documents to date, which Plaintiffs have found to be deficient. Plaintiffs use the term "May 16 IAB Production" to refer specifically to Defendants' court-ordered production of the 10 IAB logs identified by the Plaintiffs on April 20, 2023, as a representative sample.

identified by Plaintiffs, and to provide a related declaration regarding Defendants' process of identifying the missing documents and producing them. *See* ECF No. 943. As directed, on April 20, Plaintiffs provided Defendants with a list of ten IAB log files. Following numerous extensions, and only after Plaintiffs agreed to take on Defendants' responsibility of deduplicating the IAB files, Defendants produced documents they represented were all those related to the ten IAB logs, to Plaintiffs on May 16, 2023. *See* ECF No. 978; 5/9/23 Tr.

### A. Plaintiffs' Comparison of the New and Old Productions Reveal Serious Deficiencies in Defendants' IAB Production

Defendants' May 16 IAB Production contained 856 total documents. As Defendants represented to the Court at the May 9, 2023 conference, this production was supposed to include the entirety of those ten IAB files, including a print out of the worksheet that logs IAB investigators' actions and is maintained in the normal course as an HTML file (similar to a webpage) and evidence the investigator attached to the worksheet. As an initial matter, the production did not appear to include *any* documents for three of the ten IAB log files that Plaintiffs had identified.[2] For the remaining seven IAB log files, Defendants' May 16 IAB Production still appears to be missing several documents. For example, for IAB Log Number 2020-14374, only two videos and a photograph were produced (and appear to be of the sort bearing markings that it was copied from a prior production) but Plaintiffs are still missing documents like the officer interviews referenced in a previously produced document associated with the log. Further, about 9 documents came from CCRB, not IAB, investigations and at least 13 documents appeared to be mere re-productions of prior productions that retained their original source folder stating which Request for Production the documents were responsive to or prior production date from 2020 and 2021, and approximately 338 documents were produced pre- and post-litigation to the AG's office. At times, the document contained only a case number (rather than the associated IAB Log number) or no associated IAB number whatsoever. Further, although Plaintiffs suggested that Defendants export the IAB files with their identifiers that would be unique to the database on which they are maintained—which would here be the Internal Case Management System ("ICMS") — to aid in the deduplication process, Defendants declined to do so; the files produced to Plaintiffs did not have such an identifier in the metadata. Despite the inclusion of non-IAB material and apparent deficiencies in even this May 16 IAB Production, as described below, Plaintiffs' deduplication efforts revealed a large number of new files that suggest a systemic deficiency.

Given the disorganized state of the production, Plaintiffs uploaded all the documents in Relativity and ran a comparison against prior IAB productions by Defendants in this litigation to determine which documents were entirely new. Plaintiffs set a generous cutoff for determining duplicativeness, a 98% text overlap, so that if there were minor changes to the document (say, the addition of a confidentiality watermark), the document would not be deemed "new." So, if 98% or more of the document's text overlapped with a previously-produced document, it would be marked as a potential duplicate. All others would be considered "new."

Of the 856 documents produced, 420 were identified as very likely "new" files based on their lack of 98% or higher text overlap with previously acquired documents. The other 436

---

[2] There do not appear to be any new productions for Log Numbers 2020-15371, 2020-14431, and 2020-13985.

documents from this production were potential duplicates of previously produced documents. Of these potential duplicates, 285 are icons—for instance, the NYPD's logo and other images that are embedded in the substantive files but do not themselves contain meaningful content. The 151 remaining likely-duplicates were sampled for quality control, whereby Plaintiffs manually reviewed 58 documents and confirmed that 56 of that sample were duplicates. In other words, Plaintiffs' use of the 98% overlap criteria appeared to accurately identify duplicates. These duplicates appeared to be previously-produced evidence collected by IAB investigators, such as social media and NYPD-captured video and audio interviews.

Similarly, a review of some of the new documents confirmed them to in fact be new to Plaintiffs. They revealed, *inter alia*, worksheets outlining the IAB's investigations that were closed since *before* the filing of this litigation, in the summer of 2020.[3] It is not clear how these documents and their attachments were never produced to Plaintiffs, but they are long overdue. Since Defendants' May 16 IAB production, Plaintiffs have also learned that Defendants failed to produce a number of additional IAB files, as, pursuant to ECF No. 943, they have produced new documents from the IAB files for deponents, including previously-unproduced files for IAB Cases OG2020-6973 and IAB Logs 2020-14099, 2020-14981, and 2020-14270. These deficiencies, in addition to the missing files for deponents Eric Dym, John Migliaccio, and Frank Fiorenza that prompted Plaintiffs' initial letter, suggest a more systemic failure in Defendants' IAB file production.

      **B.    Defendants' Proffered Explanations Regarding IAB Systems Suggest a Streamlined Auditing is Possible.**

The systemic failures in Defendants' IAB file production support Plaintiffs' original request for an order directing Defendants to confirm the full production of IAB files and produce what has not been produced. In light of Defendants' delays in producing even these files to this point—just about a month before the end of fact discovery—and the disorganization of, and deficiencies in, this production, Plaintiffs propose the following procedure:

1. By June 16, Defendants shall compile the identifying numbers (both log and case numbers) of all Protest-related IAB files. This should be accomplished with minimal effort given that: (1) many of the IAB files have been produced to Plaintiffs in folders labeled with those identifying numbers; (2) as the NYPD's Bridget Fitzpatrick confirmed, each time the NYPD searched for and produced an IAB record for this litigation, it was memorialized in a written memorandum that is maintained by the NYPD; and (3) as the City's Rule 30(b)(6) deponent on IAB matters confirmed, IAB records pertaining to the Protests would have been tagged as protest related.

2. By June 30, produce the worksheets associated with those protest-related IAB records in their native format. These worksheets are essentially the logs of investigative steps and findings

---

[3] For instance, for Log 2020-14196 (Case FI2020-478), Defendants previously produced four videos but here produced 20 documents, including an investigator worksheet indicating the case had been closed as substantiated on July 24, 2020. Defendants previously produced two videos for Log 2020-17377 (Case FI2020-661) and now produced 11 files that show the investigation closed on August 27, 2020. Similarly, Log 2020-17379 (Case FI2020-599) closed in August 2020 but Defendants had previously produced to Plaintiffs only one video from that file.

Honorable Gabriel W. Gorenstein
Page 4

in the case. As such, these worksheets provide a comprehensive list of documents that one should expect as part of the complete production of a given IAB log. Whether they are maintained in the main IAB system (ICMS) or in the system used by satellite Investigation Units, the NYPD's Lt. Anthony Francione confirmed to Plaintiffs that IAB personnel with sufficient access can immediately access these records electronically from ICMS with no need to reach out to Investigation Units. Producing these documents, which provides an overview of the investigation status, outcome, and evidence collected, will be the quickest way for Plaintiffs to confirm that they have at least that information for all relevant IAB records.

      3. By July 7, Defendants should produce a declaration confirming: (1) the list of relevant IAB logs and cases, providing cross-references where cases and logs are associated; and (2) that Defendants produced all worksheets for each case and log and, where it has not, explain why not. This is necessary because the most recent production for the 10 IAB logs came up short and with no explanation from Defendants as to why some of those documents were missing.

      4. Also by July 7, upon their review of the produced worksheets, Plaintiffs will identify to Defendants any additional IAB records that appear to be missing. Defendants must produce these documents, or identify by Bates stamp where in prior production these documents were produced, by July 28, 2023. This date is outside the fact discovery period but, to account for the realities of production, Plaintiffs ask for this one exception to that deadline.[4]

      In addition to above, Plaintiffs continue to request sanctions for Defendants' violation of Court orders as detailed in their pending application at ECF No. 924.

      We thank the Court for its continued attention to this matter.

Respectfully submitted,

  *s/ Lillian M. Marquez*
Lillian Marquez, Assistant Attorney General
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-6401
Lillian.Marquez@ag.ny.gov

CC: All counsel of record

---

[4] To be clear, this proposed process is meant to most efficiently identify missing documents but should not be used to prejudice Plaintiffs. If Defendants' failure to conduct a reasonably efficient and orderly search for IAB records led them to not produce a relevant file, they should not be allowed to later use that evidence on the claim that Plaintiffs did not identify it by name or reference to a specific IAB case or log.