```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In Re: New York City Policing During Summer    :    MEMORANDUM ORDER
2020 Demonstrations                                                 20 Civ. 8924 (CM) (GWG)
                                                                       :
----------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

The Court is in receipt of the parties' letters concerning the proposed depositions of former Mayor Bill de Blasio and former Police Commissioner Dermot Shea. See Docket ## 841, 855, 872, 1038, 1039, 1053, 1054. The parties have informed the Court that they have reached agreement regarding a deposition of Commissioner Shea. Accordingly, we address only the request to depose former Mayor de Blasio.

Governing Law

As the Second Circuit noted in Lederman v. New York City Dept. of Parks and Recreation, 731 F.3d 199, 203 (2d Cir. 2013), courts have commonly held that "a high-ranking government official should not—absent exceptional circumstances—be deposed or called to testify regarding the reasons for taking official action, including the manner and extent of his study of the record and his consultation with subordinates." Lederman holds that "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." Id. at 203 (citation omitted). Lederman required the plaintiffs to "identify with particularity the information they needed" and to show that the official "had first-hand knowledge about the litigated claims or that the relevant information could not be obtained elsewhere." Id. Obviously, whatever "unique first-hand knowledge" or "necessary information" is sought must of course be "relevant" and is subject to a proportionality analysis under Fed. R. Civ. P. 26(b)(1).

While the rationale for the decision in Lederman rested in part on the official's current duties and time constraints, case law makes clear that the doctrine applies to "former high ranking officials" as well on the theory that "[s]ubjecting former officials decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service." In re Terrorist Attacks on September 11, 2001, 2020 WL 8611024, at *12 (S.D.N.Y. Aug. 27, 2020) (citation omitted); accord Presti v. City of New York, 609 F. Supp. 3d 204, 207 (E.D.N.Y. 2022) ("The doctrine applies to both former and current high-ranking officials.").

Analysis

In support of their request, plaintiffs' first argument is that to show liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978), it is of "central importance" that the former Mayor testify as to his "awareness of and personal involvement in" approving the policy decisions on policing in the summer of 2020. Docket # 1039 at 2-3.

1

The Court rejects this argument.  A plaintiff cannot obtain the testimony of a high official merely on the ground that the official was a policymaker.  See Boggs v. Town of Riverhead, 2020 WL 1929076, at *3 (E.D.N.Y. Apr. 20, 2020) ("The fact that [the head of the agency] was the ultimate decision-maker regarding the alleged policy is not a sufficiently exceptional circumstance to compel a deposition."); Universal Calvary Church v. City of New York, 1999 WL 350852, at *7 (S.D.N.Y. June 2, 1999) (rejecting request to compel deposition of mayor and police commissioners in a Monell claim on the sole basis that they were "policy makers").  The former Mayor's testimony is unnecessary because the City's liability under Monell can be established by showing that the "actions or decisions" at issue in this case were "made by municipal officials with decision-making authority."  Sanchez v. Nassau County, 2023 WL 2457855, at *33 (E.D.N.Y. Mar. 11, 2023).  As the City notes, the policing decisions at issue in this case were made through a "hierarchy of command," and thus in the absence of some evidence that the "decisions or commands" (Docket # 1053 at 2) as to policing were made by persons without "decision-making authority," Sanchez, 2023 WL 2457855, at *33, the former Mayor's testimony is unnecessary.  In other words, the plaintiffs can obtain from the chain of command — most likely through higher level commanders — the facts they need to show that the challenged policing actions in the summer of 2020 were performed by officials with decision-making authority.  And in the unlikely event there was any doubt about whether the persons at the NYPD in charge of the questioned policing activities had decision-making authority, the more appropriate policymaker to depose on this issue would be the former Police Commissioner or other high-level commander, not the former Mayor.

Plaintiffs also point to evidence that the former Mayor was "consistently informed" about or "personally approved" of certain policing strategies, Docket # 1039 at 3, and that he thought an investigation of policing choices might need to be conducted, id. at 4.  Plaintiffs then note that one witness (Deputy Mayor Fuleihan) recalled that the former Mayor was involved in policing issues but could not specifically remember certain details of that involvement.  Id. at 4.  This too does not justify the "exceptional" remedy of deposing the former Mayor.  It is hardly surprising that the former Mayor was involved in discussing, approving, or directing changes in policing strategies.  But this does not show that testimony from the former Mayor as to his involvement has any relevance.  Once again, what matters is what strategies were actually carried out by the NYPD by persons with decision-making authority and whether they pass constitutional muster.  There is no suggestion that the former Mayor's testimony is needed to determine what strategies were actually carried out, and the plaintiffs obviously have had access to numerous sources from which to determine what occurred at the protests and what command structure was in place to implement the policing decisions.

In a similar vein, the plaintiffs argue that they must question the former Mayor to understand what "information he received in . . . conversations" with the Police Commissioner or senior NYPD officials about the protest at Mott Haven and to determine what "strategies and tactics" the former Mayor approved.  Id. at 4-5.  Once again, the plaintiffs have ample sources from which to determine what in fact occurred at the Mott Haven protest with respect to policing.  Plaintiffs assert that the former Mayor is the "only person within City Hall" who knew "what plan the NYPD actually made and executed at Mott Haven" and "which parts [the former Mayor] approved."  Docket # 1054 at 2 (emphasis added).  The flaw in the argument once again

is that the plaintiffs have no need of a "person within City Hall" to testify as to the plan the NYPD made and executed (or failed to execute).  Such testimony is readily available from video evidence and the many NYPD officials the plaintiffs have deposed — or have been given an opportunity to depose — who implemented policing decisions at Mott Haven.

Because plaintiffs have not shown that the former Mayor has unique knowledge that is relevant to an important issue in this case or that his testimony is relevant and necessary, this is not an "exceptional" case where a former Mayor should be deposed.  Accordingly, the application to quash the deposition of former Mayor de Blasio is granted.

SO ORDERED.

Dated: June 15, 2023
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge