**SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK , NEW YORK 10007

JOSEPH M. HIRAOKA, JR.
*Senior Counsel*
jhiraoka@law.nyc.gov
Phone: (212) 356-2413
Fax: (212) 356-1148

June 20, 2023

**BY Electronic Case Filing**
Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   In Re: *New York City Policing During Summer 2020 Demonstrations*
     No. 20 Civ. 8924 (CM) (GWG)
     <u>This filing is related to all cases</u>

Your Honor:

  I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. Defendants write in response to plaintiffs' request for defendants, i.e. the New York City Police Department ("NYPD"), to conduct an audit of its IAB file production to date, and for costs. (Docket No. 1055).

  Defendants respectfully submit that the plaintiffs' proposed audit remains unduly burdensome. Defendants made reasonable efforts to produce IAB files, and costs against defendants are not warranted. Further, even before the initial application was made, defendants had offered to work with plaintiffs on a more reasonable approach, which plaintiffs rejected. As such, defendants respectfully request that plaintiffs' application for an audit and for costs be denied.

## BACKGROUND

  Pursuant to the Court's Order at Docket No. 943 dated April 19, 2023, plaintiffs were to provide a listing of 10 IAB log numbers to defendants, and defendants were to determine whether all documents as to those 10 log numbers had been produced, and if not, were to provide a full production within five business days of the date defendants were given the log numbers. Defendants were also to provide a sworn statement to plaintiffs as to how long it took to make that

determination and produce missing materials. Defendants did provide such a statement as part of its application to extend the time to complete the production on April 27, 2023 (Docket No. 967).

During a telephone court conference on May 9, 2023, plaintiffs agreed to undertake the task of determining whether all documents as to those 10 log numbers had been produced after receiving the 10 IAB files. On Friday, May 12, 2023, plaintiffs e-mailed defendants and asked to be provided with unique identifiers that the IAB database uses to organize its records and an overlay for the original production to expedite the deduplication process. On the following Monday, May 15, 2023, defendants e-mailed plaintiffs and requested clarification as to what unique identifiers plaintiffs referred, and how plaintiffs expected defendants to provide an overlay for previously produced files. However, plaintiffs did not respond to defendants' e-mail.

Defendants then produced the 10 IAB files on May 16, 2023. Plaintiffs had previously represented that they had an efficient way of conducting the task of determining whether all documents as to those 10 log numbers had been produced in their letter to the Court dated April 28, 2023 (Docket No. 968). However, despite plaintiffs' representation, they did not file the instant application until June 12, 2023, almost a month after defendants produced the 10 IAB files, and appeared to have used a different method than the one described in their letter to the Court dated April 28, 2023. (Docket No. 968). Furthermore, while plaintiffs assert that there did not appear to be any files for Log Numbers 2020-15371, 2020-14431, and 2020-13985, all three files were in the May 16, 2023 production provided to plaintiffs. The Bates number for each of three index files respectively are as follows: DEF_000551867, DEF_000552405, and DEF_000553101.

## ARGUMENT

### I.      The Court Should Deny Plaintiff's Request for an Audit.

Plaintiffs are now proposing that defendants conduct a "streamlined" audit of the prior IAB file productions by compiling the identifying numbers of all previously provided protest related IAB files, provide a list of those identifying numbers to plaintiffs, produce the worksheets associated with the protest related IAB files and a corresponding declaration, or explain why they have not produced a particular worksheet. (Docket No. 1055, at 3-4).

Plaintiffs further contend that defendants compiling the identifying numbers of all protest related IAB files is a task that "should be accomplished with minimal effort." The bases of plaintiffs' claim is that certain of the IAB files defendants have already produced are in folders labeled with their identifying numbers; and that NYPD personnel have provided statements or testimony that protest related IAB files are easily identifiable by case number. (Docket No. 1055 at 3).

Not only is the bases for plaintiffs' proposal  inaccurate, the proposal itself is also still unduly burdensome. Contrary to plaintiffs' claim, compiling the identifying numbers of all protest related IAB files is a complicated task. As plaintiffs are calling into question the productions that were already made, then in order to ensure completeness of the files, it would mean obtaining the files again from NYPD for re-production. Thus, it will still take a tremendous amount of time for NYPD to collect all of those files and for the Law Department and its vendor to process them for

production.

While the Relativity electronic platform would contain all the IAB files defendants have produced, it is not designed to search for IAB files that been produced as simply as plaintiffs described. Consequently, although the Law Department can conduct a search for protest related IAB file numbers for IAB files that were previously produced by using search terms and parameters, no guarantee can be made that each protest related IAB file, and all of its documents, maintained in Relativity would be located. As such, while the Law Department can generate a list of IAB files from Relativity, we cannot guarantee we can locate every previously produced protest related IAB case number of file because of the way Relativity is organized.

With respect to plaintiffs' claim that NYPD personnel has provided statements or testimony that protest related IAB files are easily identifiable by case number, this claim is also not accurate. Plaintiffs assert that the former Managing Attorney of the NYPD's Civil Litigation Unit, Bridget Fitzpatrick, has "confirmed" that each time NYPD searched for and produced an IAB record for this litigation, it was memorialized in a written memorandum maintained by NYPD. However, plaintiffs have not referred to any transcript, declaration, or meet and confer to support this specious claim.

In fact, Ms. Fitzpatrick stated in her Declaration dated April 14, 2023, that was annexed as Exhibit A to defendants' opposition to plaintiffs' initial application for an audit of its prior IAB file productions (Docket No. 939) that, "[d]uring the course of this litigation, inquiries for IAB files came by e-mail, phone call, or by handwritten notes. Inquiries that came by phone call or by handwritten notes were not memorialized or maintained after the request was completed." (Declaration of Bridget Fitzpatrick dated Apr. 14, 2023, Docket No. 939 ("Fitzpatrick Decl."), at ¶3). Ms. Fitzpatrick's Declaration further stated that, "[t]here is no comprehensive list of every IAB file that was requested and/or provided to the Law Department." (Fitzpatrick Decl. at ¶3).

With respect to the efforts that would be required to locate each inquiry to produce an IAB file NYPD received over the course of this litigation that was memorialized, Ms. Fitzpatrick's Declaration further states that after locating each inquiry NYPD received (to the extent they can be located), along with any information NYPD received to help it locate a particular IAB file, the identity of the person who conducted that search (some of whom have transferred or retired) would have to be determined in order to re-check that person's search for the particular IAB file. (Fitzpatrick Decl. at ¶4). Only then can it be determined if an IAB file was provided to the New York City Law Department. (Fitzpatrick Decl. at ¶4).

In order to locate each inquiry NYPD received for an IAB file along with any information NYPD received to help it locate a particular IAB file, and to identify the person who conducted the search for a particular IAB file during the course of this litigation, would necessitate dedicating at least five members of her staff solely to this task full-time, and could take at least 800 hours to complete. (Fitzpatrick Decl. at ¶5).

Plaintiffs also claim that defendants' Rule 30(b)(6) deponent, Captain Lauren Foster, confirmed IAB records pertaining to Summer 2020 Protests would have been tagged as protest related. Captain Foster was designated as a 30(b)(6) witness to testify about the investigations by

the NYPD's IAB and/or the Civilian Complaint Review Board, and local district attorney's office of allegations of misconduct by members of the NYPD during the summer 2020 protests. (Excerpt of the Deposition of Captain Foster taken on April 13, 2023 ("Foster Tr."), annexed hereto as Exhibit A, at 12:15 to 13:16). She was not designated as an expert on the search capabilities of the NYPD's databases. While Captain Foster stated she believed the term "protest case" could be used to search for protest related IAB cases in NYPD's databases, she did not testify that every protest-related case would be found if the term "protest case" was used. (Foster Tr., Exhibit A, at 132:21 to 134:3).

In addition, as Captain Foster's Declaration annexed hereto as Exhibit B states, while the term "protest case" could be used to search for protest related IAB logs in NYPD's databases, not every protest related  log was tagged "protest case." (Declaration of Capt. Lauren Foster, dated June 20, 2023 ("Foster Decl."), at ¶ 3). Therefore, conducting a search using the term "protest case" by itself would not  produce all IAB logs related to Summer 2020 protests. Furthermore, regardless of what search terms were used to search for IAB protest related cases, there is no guarantee that any search would locate every protest related IAB case number or file. (Declaration of Capt. Lauren Foster, dated June 20, 2023 ("Foster Decl."), at ¶ 4).

Accordingly, since the Law Department and NYPD do not have a way to compile the identifying numbers of <u>all</u> previously provided Summer 2020 Protest-related IAB files that is not unduly burdensome, defendants propose that plaintiffs provide  a limited number of IAB log numbers and IAB case numbers they have for the files that they reasonably still need to prove their claims at this point of the litigation, and defendants will re-produce the worksheets for those files on a rolling basis by a date certain.[1]

Defendants respectfully submit that this proposal would be proportional to the needs of the case.

## II.    <u>Plaintiffs' Request For Fees Under Rule 37 Should Be Denied.</u>

Defendants maintain that plaintiffs' request for fees under Rule 37 should be denied because defendants' actions have been reasonable and proper.

Rule 37 establishes a mechanism under which reasonable fees can be recovered if a motion to compel is granted. <u>See</u> Fed. R. Civ. P. 37. However, Rule 37 is also clear that a party cannot recover fees when "the nondisclosure was 'substantially justified' or 'other circumstances make an award of expenses unjust.'" <u>See</u> <u>Underdog Trucking, L.L.C. v. Verizon Servs. Corp.</u>, 273 F.R.D. 372, 377 (S.D.N.Y. 2011)(citing Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii)).   In turn, reasonableness of a party's conduct is determined by whether there was genuine dispute or if

---

[1] Defendants respectfully request that any order for the production of IAB files be limited to just the worksheets.  First, although we do not agree that an audit should be conducted, these are the only documents plaintiffs are requesting. Second, production of entire IAB files, with attachment of videos and other supplemental documents, would to extremely burdensome and it is likely plaintiffs already have those documents from previous productions of Body Worn Camera footage and other materials.

reasonable people could differ as to the appropriateness of the contested action." Id. (citing Comprehensive Habilitation Servs. v. Commerce Funding Corp., 240 F.R.D. 78, 87 (S.D.N.Y. 2006) (denying sanctions motion where opposing party raised valid relevancy objections to document requests)).

Plaintiffs do not dispute that defendants have produced protest related IAB files responsive to their demands. These investigation files were being produced during the course of discovery in these cases and when specific files were requested by plaintiffs. Also, as set forth more fully in defendants' opposition (Docket No. 939), defendants have undeniably acted in good faith by expeditiously providing the outstanding IAB files for Officers Frank Fiorenza and Eric Dym, or any others, once plaintiffs advised defendants that they had not received the IAB files. Defendants have never refused to provide any Summer 2020 protest related IAB files and were of the belief that they had produced them until plaintiffs informed them of a few missing ones that were inadvertently not provided. Therefore, defendants respectfully submit that their actions have been reasonable.

As also set forth more fully in defendants' opposition (Docket No. 939), defendants advised plaintiffs that they were willing to discuss reasonable alternatives to resolve the subject dispute over the production of protest-related IAB files, and were willing to take additional steps that were more focused and proportional to plaintiffs' needs. Defendants advised plaintiffs that they would produce protest-related IAB files or portions thereof that plaintiffs informed defendants they did not receive. However, plaintiffs summarily rejected defendants' proposals.

The Court's intervention could have been avoided had plaintiffs agreed to a more focused approach. Thus, defendants respectfully request that any award for costs would be unjust. Therefore, plaintiffs' request for fees and any sanctions under Rule 37 should be denied.

## CONCLUSION

Defendants respectfully request that the Court: 1) deny plaintiffs' request for their proposed audit; and 2) deny plaintiffs' request for fees and any sanctions under Rule 37. Defendants instead respectfully ask the Court to endorse the approach they propose, i.e. for plaintiffs to provide a limited number of the IAB log numbers and IAB case numbers they have for the files that they reasonably still need to prove their claims at this point of the litigation, and defendants to re-produce the worksheets only for those files on a rolling basis by a date certain.

Thank you for your time and consideration.

Respectfully submitted,

*Joseph M. Hiraoka, Jr.  s/*

Joseph M. Hiraoka, Jr.
*Senior Counsel*
Special Federal Litigation Division

Encl.

cc:     ALL COUNSEL (*via* ECF)

# EXHIBIT A

Page 1

1      UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF NEW YORK
2      ------------------------------------------X
3      In Re:  New York City Policing During Summer
       2020 Demonstrations,
4
                              Index No.:
5                             20-cv-8924(CM)(GWG)
                              20-cv-10291(CM)(GWG)
6                             20-cv-10541(CM)(GWG)
                              21-cv-322(CM)(GWG)
7                             21-cv-533(CM)(GWG)
                              21-cv-1904(CM)(GWG)
8
       ------------------------------------------X
9
10
                      April 13, 2023
11                    10:41 a.m.
12
13
14
15
16
17
18
19         VIRTUAL DEPOSITION OF LAUREN FOSTER, the
20
21     Witness, pursuant to Subpoena, taken at the above
22
23     date and time, before MARIA ACOCELLA, a Notary
24
25     Public within and for the State of New York.

Page 2

1     A P P E A R A N C E S:

2

      STATE OF NEW YORK
3     OFFICE OF THE ATTORNEY GENERAL
      LETITIA JAMES
4           Attorney for Plaintiff
            28 Liberty Street
5           New York, New York 10005
      BY:   LILLIAN MARQUEZ, ESQ.
6           GINA BULL, ESQ.

7

      SYLVIA HINDS-RADIX, ESQ.
8           Corporation Counsel
            Attorneys for Defendants
9           100 Church Street
            New York, New York 10007
10    BY:   ELISSA JACOBS, ESQ.

11

12

13

14

15    ALSO PRESENT:   Matthew Russo, NYPD Legal

16

17    Maggie Hadley, Esq., Payne Plaintiffs

18

19    Remy Scott, Esq.

20

21    Mickey Osterreicher, Esq.

22

23    Tahanie Aboushi, Esq.

24

25    Maleeha Riaz, Fellow, Cohen Law Firm

Page 12

1                   Lauren Foster

2          pursuant to Federal Rules Civil

3          Procedure 30(b)(6).

4                   (Whereupon, a document was marked

5          as Foster Exhibit 1 for identification

6          as of this date.)

7          Q.      And just let me know when you can

8   see this.

9          A.      Okay.  I see it.

10         Q.      Okay.  Just going to scroll down

11  slowly.

12                  So, Captain, have you seen this

13  document before?

14         A.      No.

15         Q.      Okay.  And just to my earlier

16  questions, so you mentioned that you first

17  learned you would be a 30(b)(6) witness, you

18  believe, regarding IAB?

19         A.      It was Topic 17.

20         Q.      Okay.  So I will just go to that

21  real quick.

22                  So Topic 17, the initiation,

23  conduct and outcome of investigations by the

24  NYPD Internal Affairs Bureau and/or the

25  Civilian Complaint Review Board --

Page 13

Lauren Foster

1
2      A.      Intern --

3      Q.      If I can just -- sorry.  If I can

4   just finish the question.

5           So just again, the initiation,

6   conduct and outcome of the investigations by

7   the NYPD Internal Affairs Bureau and/or the

8   Civilian Complaint Review Board, any local

9   district attorney's office of allegations of

10  misconduct by members of NYPD during the

11  summer 2020 protests?

12     A.      Yes.

13     Q.      Okay.  So your understanding as

14  of 2021 was that you would be testifying

15  regarding that topic?

16     A.      Yes.

17     Q.      Okay.  And what about this Topic

18  18?  So I will just read it:

19           The disciplinary actions, if any,

20  taken by the City of New York against members

21  of the NYPD for their conduct or failure to

22  act during the summer 2020 protests?

23     A.      No.

24     Q.      And then just one more; so 8C,

25  regarding the use of force recording and

Page 132

1                     Lauren Foster

2      pretty -- like I said, it is a pretty robust

3      search capability, but I would need to look

4      at the screen to be able to tell you the

5      exact search capabilities.

6          Q.      And understanding it is not

7      necessarily exhaustive, are there any other

8      particular ones that you recall?

9          A.      There is key words.  There is an

10     open-ended key word search option.  There is

11     command of assignment.  There is a command

12     of -- there is a command of incident.  You

13     can do date range searches.  That is what

14     comes to my mind right now.

15         Q.      And I guess maybe not obviously,

16     but probably by log number or case number?

17         A.      Oh, yes.  Yes.

18         Q.      I just wanted to make sure I am

19     covering --

20         A.      Yes.

21         Q.      Was there -- can you tag a

22     particular set of investigations so that you

23     keep track of them?

24                 For instance, for the protest

25     cases, was there a particular -- could there

Page 133

1              Lauren Foster
2   have been a particular tag for those?
3       A.     So with the protest cases, once
4   it became apparent that there were going to
5   be multiples, and that we needed to be able
6   to keep track of them, the command center was
7   instructed to put a notation in the body of
8   the log protest case.  That way, we could use
9   the open key word search function.
10              However, it should be noted that
11  there were cases that either predated -- but
12  it was pretty quickly determined that that
13  would be something useful to do.
14      Q.     Do you remember the time frame or
15  rough estimate of the date when it was
16  determined, you know, here going forward, we
17  will use this key word?
18      A.     It was very early, very early in
19  June.
20      Q.     In June, so not May?
21      A.     Oh, I forgot that that would have
22  started in May.  It was very, very early on
23  in the protests.
24      Q.     And do you know what the tag or
25  the terms used to tag these protest cases

1                    Lauren Foster

2    was?

3         A.      I believe it was protest case.

4         Q.      That is helpful.

5                 So in other words, in the key

6    word search box you would simply put protest

7    case, and it could pull up these cases?

8         A.      Uh-huh.  Yes.  In quotes, yeah.

9         Q.      Understood.  And this would be

10   controlled all from command center?

11        A.      Control.

12        Q.      I apologize.

13                It would be at the command center

14   that this tag would be entered?

15        A.      Yes.  The investigator who is

16   taking down the log information and filling

17   out the log would put it in.  That would --

18   if it wasn't entered, the Assessments and

19   Analysis Unit, when they review logs, if they

20   were to see something that would be part of

21   their review process, like I said before,

22   about reviewing the logs for accuracy and

23   completeness -- if they saw a protest log

24   that didn't have that notation, they,

25   themselves, can enter it.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

                                                          **DECLARATION OF**
                                                          **LAUREN FOSTER**

In Re: New York City Policing During
Summer 2020 Demonstrations                                **20-CV-8924 (CM) (GWG)**


-----------------------------------------------------------------------X

      Lauren Foster, Esq., declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

    1.     I am a Captain in the New York City Police Department, and am currently assigned to the Office of Crime Control Strategies.

    2.     I testified at a deposition in this matter on April 13, 2023.  I was designated as a 30(b)(6) witness to testify about the investigations by the NYPD Internal Affairs Bureau (IAB) and/or the Civilian Complaint Review Board, and local district attorney's office of allegations of misconduct by members of the NYPD during the summer 2020 protests.  I was not designated as an expert on the search capabilities of the NYPD's databases for IAB protest related cases.

    3.     I testified that I believed the term "protest case" could be used to search for protest related IAB logs in NYPD's databases.  However, although the term "protest case" could be used to search for protest related IAB logs in NYPD's databases, not every protest related log was labeled as such.

    4.     Therefore, conducting a search using the term "protest case" by itself would not have produced all IAB logs related to the protests.  Also, when searching for IAB protest related

cases in NYPD's databases, there is no guarantee that any search would locate every protest related

IAB case number or file regardless of what search terms were used.

*Lauren Foster  /s*

LAUREN FOSTER

Dated:  New York, New York
        June 20, 2023