UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
                                                                   :
In Re: New York City Policing During Summer 2020                   :
Demonstrations                                                     :   Index No. 20-cv-8924 (CM)(GWG)
                                                                   :
                                                                   :
------------------------------------------------------------------ x

JOHN SCHNEIDER, Lieutenant Detective Commander, assigned to the Office of the Chief of Detectives, within the New York City Police Department ("NYPD"), declares under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I submit this declaration at the request of the New York City Law Department, attorneys for the Defendants herein, to answer the question posed by the Court's January 23, 2023 Order, namely, "what video within the control of any City department (including, of course, the NYPD) is normally sought by the NYPD in conducting [criminal] investigations of incidents occurring outdoors." My knowledge of this topic is based on over sixteen (16) years of experience in the Detective Bureau, including several supervisory roles.

2. For any criminal investigation the investigatory process is a combination of multiple factors dictated by the incident, including but not limited to, type and location(s) of incident(s), detective unit(s) assigned and the types of cameras available at any given location in which the incident in question may have occurred. It has been my experience that there is no single, uniform and static approach to investigating crimes, regardless of type or where they occur.

3. As a general rule, detectives begin the video canvass and collection process by identifying potential sources of video as well as the possible geographic parameters of the incident in question. For example, a street robbery or assault may only require video canvass of the

1

immediate vicinity of the incident, whereas a terrorist attack or a drive-by shooting could involve a substantial canvass area encompassing multiple locations, precincts and boroughs. Particularly where an outdoor incident contains an unknown number of separate events occurring simultaneously with multiple sites with non-defined perimeters, the identification of potentially probative video becomes an extended search and canvas process encompassing significant geographical area(s) and camera locations.

4. Investigators may search for possible fixed cameras that captured some aspect of the criminal incident they are investigating by examining a combination of sources available to the Department, including selected cameras accessible by the Lower Manhattan Security Initiative including ARGUS, certain DOT and MTA cameras as well as NYCHA CCTV feeds depending on the circumstance.

5. Upon arriving at the scene(s), detectives must also identify all video systems or platforms containing potentially relevant video not previously identified, such as security cameras in private business or the homes of private citizens, and cameras belonging to public agencies observed to be in areas to which NYPD does not have access. Investigators access this video by requesting voluntary cooperation from the relevant entity. Simultaneously, detectives must also "consider and evaluate" pertinent time periods, locations, persons, vehicles, buildings and the like in order to target the best sources of probative video before collection occurs.

6. Over the course of my experience within the Detective Bureau, the vast majority of requests for video footage of criminal incident(s) that occur outdoors involve a single or a discrete set of events, occurring within a very limited time frame and location.

JOHN SCHNEIDER
Lieutenant Detective Commander