# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: New York City Policing During Summer 2020 Demonstrations | **NOTICE OF DEPOSITION UPON WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31** |
| | 20 Civ. 8924 (CM)(GWG) (L) |
| This filing is related to: | 21-cv-322 (CM)(GWG) (M) |
| | 21-cv-2548 (CM)(GWG) (M) |
| ALL CASES | 21-cv-6610 (CM)(GWG) (M) |

## PLAINTIFFS' DEPOSITION BY WRITTEN QUESTIONS

Pursuant to Rule 26(b), Rule 30(b)(6), and Rule 31 of the Federal Rules of Civil

Procedure, the January 23, 2023 Order of United States Magistrate Judge Gabriel W. Gorenstein,

ECF No. 823, and the parties' agreement as discussed during the March 23, 2023 meet and

confer conference, plaintiffs in these non-stayed consolidated actions ("Plaintiffs") request

deposition(s) upon written questions of Defendant, City of New York (the "City"), through one

or more agents or other representatives who shall be designated to testify on the City's behalf,

regarding all information known or reasonably available to the City with respect to the Written

Questions for Deposition included below. The City shall designate the person or persons most

knowledgeable and prepared to testify on behalf of the City concerning the Written Questions

below. Plaintiffs request that the City provide written notice at least five (5) business days before

the deposition of the name(s) and employment position(s) of the individual(s) designated to

testify on the City's behalf and what substantive questions they are designated to answer.

This deposition(s) shall commence at 9:30 a.m. on June 16, 2023, at the Office of the

New York State Attorney General, located at 28 Liberty Street, 16th Floor, New York, New

York, or at another location to be determined by Plaintiffs, or by remote means (via

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

videoconference) pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure. This

deposition(s) shall take place before a notary public or other officer authorized by law to

administer oaths.

Pursuant to Rule 30(b)(3)(A) of the Federal Rules of Civil Procedure, the deposition will

administered and recorded by a court reporter and/or recorded by audiovisual means.

## <u>INSTRUCTIONS</u>

The Court Reporter shall read the following notice at the start of the deposition and then

swear in the witness:

"This deposition is being conducted by notice pursuant to Federal Rule of Civil

Procedure 31 and being conducted pursuant to the Federal Rules of Civil Procedure, Order, and

stipulations between Counsel."

## <u>QUESTIONS</u>

**Introduction**

1) Please state and spell your name.

2) Is there any reason you cannot testify fully and accurately today?

3) Do you have any physical or mental condition that might keep you from testifying fully
   and accurately today?

4) Have you taken any medication today that might keep your from testifying fully and
   accurately?

5) Do you understand that you have taken an oath to tell the truth?

6) Do you understand that your testimony is subject to the same penalty of perjury as if you
   were testifying in court?

7) Is there anything that would prevent you from testifying truthfully and accurately today?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

8) Where are you physically located right now?

9) Is anybody else in the room with you?

10) What, if any, materials do you have in front of you?

11) As you see, the plaintiffs' attorneys are not present for this deposition and have instead submitted written questions that the court reporter will ask for the record and you will respond to. If you need a break, please finishing answering any pending question, note for the record that you ask to take a break and the time you left for and returned from the break. Do you understand?

12) As this is a bit of unique style of taking depositions, I will now present to you a copy of the written questions that were served upon Defendants for your reference throughout the deposition. It will be marked as Video Deponent 1.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 1.]**

13) Other than Video Deponent 1, do not consult any materials during your testimony unless I give you an exhibit to review. If you do have materials that you brought with you please put them away. Do you understand?

14) If you consult materials without stating on the record that you are doing so and what document you are looking at, Plaintiffs reserve the right to recall you or another witness to testify to these questions. Do you understand?

15) Did you review the written questions that will be asked of you today in preparation for your deposition?

16) Did you confer with anyone as to how you would specifically answer any of these written questions?

    a. With whom did you confer regarding your answers?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    b.   Which questions did you confer about with each of those individuals?

17) Did you practice providing your specific answers to these written questions?

18) Do you have your answers to the written questions that will be posed today written down anywhere?

    a.   Where are they written down?

    b.   Plaintiffs call for production of those documents to the extent they exist.

**Preparation for Deposition:**

19) When did you first learn that your deposition would be taken?

20) How did you learn that your deposition would be taken?

21) What, if anything, did you do in preparation for your deposition?

22) Who, if anyone, is representing you for purposes of your testimony?

23) Without telling me the contents of the conversation, who did you speak with in preparation of this deposition?

24) How long did you speak with them?

25) How many times did you speak with them?

26) How did you speak with them, was it via computer, telephonically?

27) Who participated in the conversation?

28) Who, if anyone, besides your attorney did you discuss this deposition or lawsuit with?

29) If you spoke with anybody who is not your attorney about this deposition or lawsuit, what did you discuss?

30) If you spoke to your attorney about this deposition or lawsuit with someone who is not your counsel present, what did you discuss?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

31) As a general matter, when I refer to the "Protests" I am referring to racial justice protests occurring any time from May 28, 2020, to February 12, 2021, in New York City, and if I am referring to any other protest I will state so specifically; do you understand?

32) Other than this deposition, have you provided any sworn statements about the any of the Protests?

33) What materials, if any, did you review to prepare for today's deposition?

34) Can you identify any materials you reviewed by their Bates stamp number?

35) If yes, please identify the materials you reviewed by their Bates stamp number.

36) How long did it take to review such materials?

37) Did reviewing any of these materials refresh your recollection of the events of any of the Protests?

38) Did reviewing any of these materials refresh your recollection or educate you as to the policies and procedures of the New York City Police Department regarding how it collects video footage?

39) Going forward I will refer to the New York City Police Department as the NYPD. Do you understand?

40) Going forward I may refer to the City of New York as simply "the City." Do you understand?

41) Did reviewing any of these materials refresh your recollection or educate you as to the policies and procedures of the NYPD regarding data storage and retention of video footage?

42) Did reviewing any of these materials refresh your collection as to the policies and procedures of the NYPD regarding the preservation of video evidence?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

43) Did reviewing any of these materials refresh your recollection or educate you as to the policies and procedures of the NYPD regarding the preservation of video evidence?

44) What subjects are you prepared to testify to today?

45) Are you prepared to testify only to a specific subset of the questions served upon Defendants?

    a. If so, which ones?

**BACKGROUND**

46) Where do you work?

47) What is your job title there?

48) What are your roles and responsibilities in that position?

49) How long have you worked for your current employer?

50) How long have you worked in your current position?

51) Can you please state, chronologically with the dates included, all job titles and positions you have you held from January 1, 2020 until today?

    a. If you did not work for the City of New York during that time, have you ever worked for the City of New York?

    b. When did you work for the City of New York if not since January 1, 2020, and in what capacity?

52) What is your educational background?

53) What is your highest level of education?

54) What, if any, training have you received from the City of New York, including the NYPD, related to the use of surveillance video?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

55) What, if any, training have you received from the City of New York, including the NYPD, related to video retention and storage?

56) What, if any, training you have you received from the City of New York, including the NYPD,  related to retrieving digital evidence from electronic devices such as laptops, desktop computers, servers, mobile devices, tablets and CCTV systems?

57) What, if any, training you have you received from the City of New York, including the NYPD, related to the preservation of chain of custody of digital evidence?

**Video**

58) Does the NYPD own, maintain and/or control any cameras?

59) What types of cameras does the NYPD own, maintain, and/or control?

60) For each type of camera you just identified as one which the NYPD own, maintains, and/or controls, please answer the following questions. So that we have a clear record, please preface your answer by identifying which camera you are testifying to.

   a.   Was this type of camera in use at any time during the Protests?

   b.   What does this camera look like?

   c.   Where was this type of camera located at the time of the Protests?

   d.   How many cameras of this type did the NYPD own, maintain, or control at the time of the Protests?

   e.   Does the NYPD retain footage captured from this type of camera?

   f.   Who or what part of the City of New York was responsible for collecting this video footage at the time of the Protests?

   g.   How can an NYPD employee request to access video footage from this type of camera?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    h.  How long is footage from this type of camera retained in the normal course of business?

    i.  What happens at the end of that regular retention period?

    j.  Who or what was responsible for storing video footage at the time of the Protests?

61) What video within the control of any New York City agency is normally sought by the NYPD in conducting investigations of incidents occurring outdoors?

62) Is there any other video that is not within New York City agency's control that is normally sought and obtained by the NYPD in conducting investigations of incidents occurring outdoors?

63) Have you reviewed the Declaration of Lieutenant Detective Commander John Schneider in which in he declared that NYPD investigators may search ARGUS, DOT, MTA, NYCHA CCTV feeds, and security cameras in private businesses or private citizen homes as part of criminal investigations?

    a.  Do you agree that those cameras can be searched by the NYPD in the course of a criminal investigation?

    b.  Are there any cameras *other* than ARGUS, DOT, MTA, NYCHA CCTV cameras, and security cameras in private businesses or private citizen homes, that the NYPD has or can seek access to in the course of a criminal investigation?

        i.  If so, what cameras are those?

        ii.  How would the NYPD go about getting access to that camera footage?

        iii.  Is that process of accessing such footage documented in any way?

            1.  If it is documented, how is it that attempt or request to access footage documented?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

      2. Has that documentation been produced in this litigation?

      3. If not, why not?

    iv. Was any video footage accessed as part of criminal investigations related to any of the Protests?

    v. Was any Protest-related video footage accessed as part of criminal investigations preserved?

      1. If so, where is that footage preserved?

      2. Is that footage still preserved?

      3. If not, why not?

      4. Was that footage produced in this litigation?

      5. If not, why not?

64) What vendors does NYPD work with in connection with the collection of video footage owned, maintained and/or controlled by the NYPD?

**Information Technology Bureau**

65) What is the Information Technology Bureau or "ITB" within the NYPD?

66) Generally speaking, what does the ITB do?

67) What divisions exist within the ITB?

68) As of May 28, 2020, which, if any, divisions of ITB were responsible for aiding the NYPD in contemporaneously monitoring closed circuit surveillance cameras in New York City?

69) If any part of the ITB monitored surveillance cameras, please answer these questions:

    a. Which cameras did the ITB monitor?

    b. How did the ITB monitor these surveillance cameras?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    c.   What, if any, part of the NYPD was able to manipulate surveillance cameras?

70) As of May 28, 2020, which, if any, divisions of the ITB were responsible for obtaining video footage?

71) As of May 28, 2020, which, if any, divisions of the ITB were responsible for responding to requests for video footage by NYPD employees?

**Lower Manhattan Security Initiative**

72) What is the Lower Manhattan Security Initiative or "LMSI"?

73) What NYPD Bureau is LMSI in?

74) What is LMSI's role within NYPD?

75) Where is LMSI physically located?

76) At any time since May 28, 2020, who – by name and title - within the Lower Manhattan Security Initiative had duties relating to video footage?

77) What cameras did LMSI control or monitor?

78) What, if any, role did LMSI have in maintaining, retaining, or producing video footage as of May 28, 2020?

**Emergency Services Unit (ESU)**

79) What is the Emergency Services Unit or "ESU"?

80) What NYPD Bureau is ESU in?

81) What is ESU's role within NYPD?

82) What, if any, role did the ESU have in maintaining, retaining, or producing video footage as of May 28, 2020?

**Movie TV Unit**

83) What is the Movie TV Unit?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

84) What NYPD Bureau is Movie TV Unit located in?

85) What is Movie TV Unit's role within NYPD?

86) What is Movie TV Unit's responsibilities within NYPD?

87) What, if any, role did the Movie TV Unit have in maintaining, retaining, or producing video footage as of May 28, 2020?

88) What records did the Movie TV Unit preserve?

89) What communications did Lt. Nicholas D. Minor have with outside parties regarding the preservation of records relating to NYPD responses to any of the Protests?

**ARGUS CAMERAS**

90) What is ARGUS video?

91) Approximately when did the NYPD start utilizing ARGUS cameras?

92) During the Protests, what NYPD policies and procedures applied for the use of ARGUS cameras?

93) Do ARGUS cameras capture video footage?

94) Do ARGUS cameras capture audio?

95) Can video being captured by an ARGUS video camera be viewed in real-time?

96) Where can ARGUS video be viewed real-time?

97) Who has access to contemporaneous or live ARGUS camera feed?

98) Do ARGUS cameras have the capability to zoom in an out?

99) Do ARGUS cameras have the capability to pan and tilt?

100)     Who has the capability to move the ARGUS camera by zooming in, zooming out, or changing the angle of the camera?

101)     Do ARGUS video cameras also save video?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    a.   If not, how, is footage from ARGUS cameras saved, if at all?

    b.   Where is ARGUS camera footage saved?

    c.   If you did not specify in response to the previous question, is ARGUS camera footage retained on a hard drive, remotely via cloud storage, or in some other form?

    d.   What is the storage capacity of the whatever device, service or other format is used to store ARGUS video?

        i.   Roughly how many hours of ARGUS video does that translate to?

102)      What is the normal retention schedule for ARGUS footage as of May 28, 2020?

103)      Who, including title/rank, has the authority to save and export video retained from the ARGUS camera system?

104)      What are the names, title, and ranks of all designees of the Deputy Commissioner of Counterterrorism who have the authority to preserve ARGUS camera system video beyond the regular thirty-day retention period?

105)      What are the names, title, and ranks of all designees of the Deputy Commissioner of Legal matters who may preserve ARGUS camera system video beyond the regular thirty-day retention period?

106)      During the Protests, how many ARGUS cameras did the NYPD have access to?

107)      Who from the NYPD determined where to place ARGUS cameras at the time of the Protests?

108)      What factors did the NYPD utilize when making decisions of where to place ARGUS camera systems?

109)      Are any ARGUS cameras located on private property?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    a. If so, where?

110)     If any ARGUS cameras are located inside a building as opposed to on the street, where are those cameras located?

111)     What bureau of NYPD was responsible for the maintaining ARGUS video cameras?

112)     At the time of the Protests, did the NYPD have a policy or practice of recording where it placed an ARGUS camera?

113)     Where is the location of ARGUS cameras documented?

114)     How often, if at all, is that document recording the location of ARGUS cameras updated?

115)     Under what circumstances can an ARGUS camera be moved?

116)     Are requests to move an ARGUS camera documented?

117)     Are approvals to move an ARGUS camera documented?

118)     What paperwork, physical or electronic, is generated when an ARGUS camera system is moved?

119)     Who can request the installation of an ARGUS camera system?

120)     Who can approve the installation of an ARGUS camera system?

121)     Who can request that an ARGUS camera system be physically moved?

122)     Who can approve an ARGUS camera system be physically moved?

123)     What documents did you review to confirm the location of ARGUS cameras during the Protests?

124)     How long are documents that record where ARGUS cameras are located in New York City retained?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

125)     Where are those documents that record the location of ARGUS cameras maintained?

126)     Can anyone at NYPD access historical information as to where ARGUS cameras were located on any given day in the past?

    a.  If so, how is that historical location information accessed?

    b.  If that historical location information is available but only for a limited period of time, how far into the past is that information available?

    c.  If there is no way to know where ARGUS cameras were located in the past, how can a member of service know whether ARGUS cameras may have captured a specific event in the past?

127)     Does the NYPD have any general policies regarding tracking equipment that it owns?

128)     Does the NYPD keep track of ARGUS cameras that are owned?

129)     What steps would an individual take to obtain a list of the locations of all of the ARGUS cameras operated by the NYPD on any given day during the Protests?

130)     What, if any, ARGUS cameras malfunctioned or otherwise failed to properly record video footage during the Protests? On what dates did these cameras fail to record properly?

131)     Was any ARGUS video footage that captured any of the Protests preserved beyond the time dictated by the normal retention schedule?

    a.  For ARGUS video footage related to the Protests that was preserved, on what dates was that footage recorded?

14

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    b.  For ARGUS video footage related to the Protests that was preserved, on which dates was that footage recorded?

        i.  What is your basis for believing that some ARGUS video footage relating to the Protests was not preserved?

        ii.  Why was this footage not preserved?

    c.  For what reasons was that footage preserved?

132)     I am going to hand you an exhibit that has been pre-marked Video Deponent 2 and was produced with these written questions to Defendants. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 2 [Exhibits B and C] and waits to ask next question until witness states they have finished reviewing it.]**

133)     Have you seen this before?

134)     What is it?

135)     Please go through the exhibit and for each image you see:

    a.  read out loud the caption above it

    b.  state for the record what type of camera it is you see; and

    c.  state the basis for your belief that it is the type of camera you have identified it as.

136)     Now that you have gone through these photos of cameras, can you say which of these cameras would have been accessible by the NYPD?

**Technical Assistance Response Unit (TARU) Video**

137)     What is the Technical Assistance Response Unit (TARU)?

138)     What NYPD Bureau is TARU Unit located in?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

139)     What is TARU Unit's role within NYPD?

140)     What are the TARU Unit's responsibilities within NYPD?

141)     What role did the TARU Unit play during Protests?

142)     During the Protests, what NYPD policies and procedures applied to the use of

TARU cameras?

143)     Approximately when did the NYPD start utilizing TARU cameras?

144)     Do TARU cameras also record and save video?

145)     Do TARU cameras stream live video?

146)     Who, if anyone, in the NYPD can or does view live video streaming from TARU

cameras?

147)     During the Protests, how many TARU cameras did the NYPD have access to?

148)     At which Protests were TARU cameras used, if at all?

149)     What paperwork was submitted in connection with a request to use TARU

cameras?

150)     Who, within the Technical Assistance Response Unit, is responsible for

maintaining a log tracking approved requests for the use of video and photographic

equipment?

151)     What equipment did the TARU utilize to capture video during the Protests?

    a.  Did TARU use handheld cameras to video record any of the Protests?

    b.  Did TARU use situational awareness cameras to video record any of the Protests?

    c.  Did ESU use situational awareness cameras to video record any of the Protests?

    d.  What other equipment, if any, did TARU use to capture video during the Protests?

    e.  What other equipment, if any, did ESU use to capture video during the Protests?

16

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

      f.   Going forward, when I refer to TARU cameras, I am referring to the equipment you just identified as having been used by TARU to record protests and the term TARU video footage to refer to the footage that equipment captured; do you understand?

152)     Was TARU video footage tagged or otherwise identified as pertaining to particular Protest at which it was recorded?

      a.  If so, how?

      b.  If so, by whom?

153)     Who, if anyone, in the NYPD can access TARU video footage?

      a.  If so, how do they access TARU footage?

154)     If TARU video footage is accessed by request, who in TARU is responsible for processing those requests?

155)     As of May 28, 2020, how long is TARU video footage retained in the normal course of business?

156)     Would it surprise you to learn that in your Patrol Guide, Procedure No: 212-71, the Commanding Officer of the TARU is to "ensure that all videorecordings/photographs prepared in connection with [the use of video/photographic equipment by operational personnel at demonstrations] are maintained for a minimum of one year from the date the images were recorded."?

157)     Where is TARU video footage retained?

158)     How much data can that space designated for storing TARU video footage hold?

159)     How much footage, in terms of hours, does that storage capacity translate to?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

160)     What happens to TARU video footage at the end of the regular retention schedule?

    a.  Is that an automatic process?

161)     Under what circumstances will TARU video footage be preserved for longer than the regular retention schedule?

162)     What is the process for preserving TARU video footage for longer than the regular retention schedule?

    a.  Are the any other limitations that exist as to how much TARU video footage can be retained?

163)     How many requests to obtain or view TARU video footage or photographs did the Deputy Commissioner, Legal Matters, receive related to any Protest?

164)     How many copies of TARU video footage or photographs were provided to individuals as a result of requests made to obtain or view TARU video recordings or photographs to the Deputy Commissioner, Legal Matters?

165)     Was any TARU video footage that captured any of the Protests preserved beyond the time dictated by the normal retention schedule?

    d.  What footage?

    e.  For what reasons was that footage preserved?

166)     What paperwork, physical or electronic, is generated when TARU video footage is captured?

167)     What documents did anybody in the NYPD review to confirm the dates TARU video footage was captured during Protests?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

168)     For what days during the Protests did the Operations Unit provide Detail Section

Briefing?

**Department of Transportation ("DOT") Footage**

169)     Does the NYPD have access to footage recorded by Department of Transportation

cameras?

    a.   If so, which DOT cameras can the NYPD gain access to?

    b.   How would the NYPD go about obtaining access to DOT camera video footage?

    c.   What paperwork was submitted in connection with a request obtain DOT camera

      footage?

170)     As of May 28, 2020, what was the process for reviewing DOT camera footage?

171)     What factors did the NYPD utilize when making decisions when to utilize review

and save DOT Protest footage?

172)     What is the regular retention period for DOT camera footage as of May 28, 2020?

173)     Where is DOT camera footage stored?

    a.   What storage size limitations exist for stored DOT camera footage exist, if any?

    b.   Are the any other limitations that exist as to how much DOT video footage can be

      retained?

174)     What happens to DOT camera footage at the end of its normal retention schedule?

175)     Under what circumstances will DOT camera footage be preserved beyond the

time dictated by the normal retention schedule?

176)     Who can make such a request to preserve?

177)      As of May 28, 2020, what, if any, DOT video footage that captured any of the

Protests did the NYPD access?

19

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

      a. Did the NYPD or DOT preserve any DOT video footage that captured any of the Protests?

      b. Did the NYPD or DOT preserve any video footage from DOT cameras situated near any of the Protests?

      c. For which Protests was DOT video footage preserved?

178)    Does the NYPD have access to information regarding the location of DOT cameras?

      a. Where is that information kept?

      b. Did the NYPD have location information for DOT cameras for any date during the Protests?

179)    Does the City of New York, including any of its agencies, have any records as to where DOT cameras are currently located?

180)    Does the City of New York, including any of its agencies, have any records as to where DOT cameras were located at any point in May 2020?

181)    Does the City of New York, including any of its agencies, have any records as to where DOT cameras were located at any point in June 2020?

182)    Does the City of New York, including any of its agencies, have any records as to where DOT cameras were located at any point during the Protests?

**Aviation**

183)    During the Protests, what NYPD policies and procedures applied to the use of aviation at demonstrations?

184)    Does the Aviation Unit maintain cameras?

      a. If yes, where does the Aviation Unit have cameras mounted?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    b.  What assets does the Aviation Unit deploy to respond to demonstrations or protests?

185)    What paperwork is generated in connection with a request to deploy the Aviation Unit?

186)    Do Aviation cameras stream live video?

187)    Who, if anyone, in the NYPD can or did view video streamed from NYPD helicopters during the Protests?

188)    What is the regular retention schedule for Aviation camera footage as of May 28, 2020?

189)    Where is Aviation camera footage stored?

    a.  What storage size limitations existed for stored Aviation camera footage exist, if any, since May 28, 2020?

    b.  Are the any other limitations that exist as to how much Aviation video footage can be retained?

190)    What happens to Aviation camera footage at the end of its normal retention schedule?

191)    Under what circumstances will Aviation camera footage be preserved beyond the time dictated by the normal retention schedule?

192)    Who can make such a request to preserve?

193)    Who from the NYPD determined when to utilize aviation cameras during the Protests?

194)    During the Protests, how many times was the Aviation Unit deployed to a Protest?

    a.  Which Protests did the Aviation Unit deploy to?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

      b.  Which Protests, if any, did the Aviation Unit record video footage of?

      c.  How many requests to obtain or view aviation video recordings or photographs did the Deputy Commissioner, Legal Matters, receive related to any of the Protests?

      d.  Of the Protests the Aviation Unit did record, did the NYPD preserve that footage for any amount of time?

          i.  Until when did the NYPD preserve Protest-related video footage recorded by the NYPD helicopters or otherwise recorded by the Aviation Unit?

         ii.  Was this footage produced in this litigation?

       iii.  If any of the footage recorded by the Aviation Unit while deployed to a Protest was not preserved, why not?

       iv.  If any of the footage recorded by the Aviation Unit while deployed to a Protest was not preserved, for which Protests was recorded footage not preserved?

        v.  If any of the footage recorded by the Aviation Unit while deployed to a Protest was not produced in this litigation, why not?

195)     I am going to present you with an exhibit that was pre-marked Video Deponent 3 and was produced with these written questions to Defendants. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 3 [DEF_000541461] and waits to ask next question until witness states they have finished reviewing it.]**

196)     Have you seen this document before?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

197)   What is it?

198)   Is this a document that the Aviation Unit is required to fill out for each flight it

makes?

199)   And these flights are done on NYPD helicopters, correct?

200)   How many NYPD helicopters were in use at the time of the Protests?

201)   Can you explain what each of these entries indicate?

    a.   Does the date indicated here, "11/4/2020," mean this flight took place on

       November 4, 2020?

          i.   If not, what does it mean?

    b.   Do the entries at the time departed and return mean the helicopter left at 17:35, or

       5:35 PM, and returned at 19:20, or 7:20 PM?

          i.   If not, what does it mean?

          ii.   What does FBF mean?

    c.   What does PC mean?

    d.   What does CP mean?

    e.   Under Job #1, where it says Camera/Video and beside it has a "Y" – does that

       "Y" mean Yes?

          i.   If not, what does it mean?

    f.   If the Y means Yes, does that then also indicate that the helicopter recorded video

       footage on this flight?

          i.   If not, what does it mean?

          ii.   Where would this footage have been stored?

          iii.   How long would this footage have been retained?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

   iv. Was this footage preserved?

     1. If not, why not?

   v. Was this footage produced to Plaintiffs in this litigation?

     1. If not, why not?

  g. What does "Downlink operation mean"?

202) You can stop looking at Video Deponent 3 and refer now to this next exhibit I will hand you that has been pre-marked Video Deponent 4 and was produced with these written questions to Defendants. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 4 [DEF_000541432] and waits to ask next question until witness states they have finished reviewing it.]**

203) Have you seen this document before?

204) What is it?

205) Can you explain what each of these entries indicate?

  a. The Date says 1/18/2021—does that indicate that this helicopter flight took place on that date?

  b. Do the time entries – 18:45 and 20:30 – indicate that the helicopter left at 6:45 PM and returned at 8:30 PM?

  c. And under Job #1, do those entries indicate that the helicopter captured video footage?

   i. If not, what does the "Y" next to Camera/Video indicate?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    ii.   If this flight recording video footage, where would this footage have been stored?

    iii.  How long would this footage have been retained?

    iv.  Was this footage preserved?

        1.  If not, why not?

    v.   Was this footage produced to Plaintiffs in this litigation?

        1.  If not, why not?

  d.  Can you explain the following parts of the Comments section:

    i.   Where it says "Requested for a downlink for a demonstration V/O Barclay Center" – what does that mean?

    ii.  Where it says, "Approx. 300-400 demonstrators Flatbush Ave to Brooklyn Bridge to City Hall" is that indicating how many demonstrators the occupants of the helicopter observed moving from Flatbush Avenue to Brooklyn Bridge to City Hall?

    iii.  What does "Downlink and FLIR utilized" mean?

**Preservation Efforts**

206)      Other than the specific instances of preservation you have thus far testified to, what, if any, video footage relating to the Protests was preserved?

207)      What, if anything, prompted that preservation of that evidence?

208)      Who, if anybody, in the NYPD ordered the preservation of that evidence?

209)      When did they order that preservation occur?

210)      How was that order to preserve communicated?

WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31

211) Did anyone in the NYPD follow up to ensure that the order to preserve was being complied with?

212) How, if at all, did the NYPD ensure that the order to preserve was being complied with?

213) What video footage did the NYPD direct to be preserved?

214) If that instruction was time limited, what was the applicable time range for which video footage was to be preserved?

    a. Why was the order limited to that time period?

215) If the NYPD's order to preserve was limited to certain types of cameras, what cameras were ordered to be preserved?

    a. Why was the order limited to those cameras?

216) If the NYPD's order to preserve was limited to NYPD-owned cameras, why was it limited in that way?

217) I will now hand you what has been pre-marked Video Deponent 5 and was provided to Defendants with these written questions. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 5 [Declaration of Bridget Fitzpatrick] and waits to ask next question until witness states they have finished reviewing it.]**

218) Have you seen this document before?

219) What is the document marked Video Deponent 5?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

220) Do you see at paragraph 5 where it states, "On June 5, 2020, Defendants issued a preservation request to the Information Technology Bureau ("ITB") seeking to preserve all video from selected cameras from May 28, 2020, until June 8, 2020"?

    a. Who authorized the issuance of that preservation request?

    b. Who signed that preservation request?

    c. Was that preservation request produced in this litigation?

        i. If not, why not?

221) What does that statement "selected cameras" refer to?

    a. Did the June 5, 2020 preservation notice referenced in Video Deponent 5 direct the preservation only on selected cameras?

        i. Which types of cameras?

        ii. How many cameras were "selected" for preservation?

        iii. If only certain cameras were selected for preservation, what criteria were considered to determine which cameras would be selected for preservation?

        iv. If only certain cameras were selected for preservation, who determined which cameras would be selected for preservation?

        v. Where were the cameras selected for preservation located?

        vi. Was the footage for the selected cameras preserved for the entire period of May 28, 2020, to June 8, 2020, or only from certain dates?

        vii. Where was this footage stored?

        viii. Why was this preservation request directed to the ITB?

222) What prompted the issuance of the June 5, 2020 preservation notice?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

      a.   Did the City anticipate litigation regarding the George Floyd protests from the period May 28, 2020 to June 8, 2020?

223)     Did the June 5 preservation notice direct the preservation of any documents or materials other than video footage?

      a.   What other documents or materials did the June 5 preservation notice direct the preservation of?

224)     Why was that directive limited to the period of May 28, 2020, to June 8, 2020?

      a.   Was there any technological reason, such as the inability to store large amounts of data, that affected the scope of the NYPD's preservation notices regarding the Protests?

      b.   Did the NYPD or the City of New York consider the capacity to store the preserved material in determining the scope of the preservation notices they issued regarding the Protests?

           i.   If yes, what impact did that consideration have on the scope of their notices to preserve?

          ii.   Why didn't the NYPD narrow the notice to preserve to particular dates and locations after June 8 where protests occurred?

225)     What efforts, if any, did NYPD make to ensure that the ITB complied with this June 5 preservation notice?

226)     I will now hand you what has been pre-marked Video Deponent 6 and was provided to Defendants with these written questions. Please review it and tell me when you have finished reviewing it.

WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 6 [June 22 Preservation Notice, DEF_000405646] and waits to ask next question until witness states they have finished reviewing it.]**

227)     Have you seen this document before?

228)     What is the document marked Video Deponent 6?

229)     Focusing first on page 2 of the document, is it accurate to say this June 22, 2020 memo was from the Executive Officer of the Legal Bureau to the Commanding Officer of the Technical Assistance Response Unit?

230)     Do you see the line on that page that states, "Commands must ensure that all appropriate subordinate commands, to the extent they are not listed above, are identified and made aware of this notice and the duty to preserve evidence related to the incident described herein"?

    a.   Does TARU have any subordinate commands?

    b.   If it does, did TARU make its subordinate commands aware of this notice?

231)     Is it accurate to say that this document directs TARU to preserve "all evidence in its possession or control" related to the George Floyd/Black Lives Matter protests for the period May 29, 2020, to June 20, 2020?

    a.   If you do not believe that is accurate, what does this document direct TARU to do, if anything?

232)     Is it accurate to say that this document directed TARU to preserve "any video, photographic, physical, electronic or paper evidence captured or generated by NYPD leading up to and in response to" the George Floyd/Black Lives Matter protests?

    a.   Did TARU comply with this June 22 preservation notice?

WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31

233)      Who authorized the issuance of this June 22 preservation notice?

234)      What spurred the NYPD's decision to issue this June 22 preservation notice?

235)      Why did this June 22 preservation notice set the preservation period to May 29, 2020, to June 20, 2020, as opposed a shorter or longer period?

    a.  Who made the decision to set the period to those dates?

236)      What efforts, if any, did NYPD make to ensure this directive regarding the preservation of TARU video was being complied with?

237)      I will now hand you what has been pre-marked Video Deponent 7 and was provided to Defendants with these written questions. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 7 [DEF_000443365_ Preservation Notice] and waits to ask next question until witness states they have finished reviewing it.]**

238)      Have you seen this document before?

239)      What is the document marked Video Deponent 7?

240)      Focusing first on pages 15 to 18 of the document, is it accurate to say that this memorandum that appears on those pages was dated July 29, 2020, and came from Deputy Commission of Legal Matters Ernest Hart?

    a.  And is it accurate to say that Ernest Hart sent this notice to the numerous commands listed in the To: field on page 15?

        i.  If not, why not?

    b.  And is it accurate to that the receivers of this memorandum were directed to make subordinate commands aware of this notice?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

      i.   If not, why not?

      ii.  What, if anything, did the NYPD do to ensure that the commands complied with this particular directive?

c.   Directing your attention to the bottom of page 17 and the top of page 18, is it accurate to say that this notice directed the addressed commands to "preserve all evidence, whether documents or data, in its possession or control concerning any policies, protocols, law enforcement activities (e.g. crowd control, arrests, summonses) or personnel matters (e.g. movement and deployment of members of the service) created or implemented in response to the ongoing protests and/or ancillary looting or rioting stemming from the death of George Floyd and any related causes"?

      i.   If not, why not?

      ii.  What, if anything, did the NYPD do to ensure that the commands complied with this particular directive?

d.   Is it accurate to say that this notice expressly defined evidence to be preserved as including "email and Departmental social media accounts?"

      i.   If not, why not?

      ii.  What, if anything, did the NYPD do to ensure that the commands complied with this particular directive?

e.   Is it accurate to say that the notice directs the commands to preserve, among other things, "emails, text messages, and other communication between executives or other members of the service, including but not limited communications with City Hall or other city agencies, concerning the protests"?

31

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

      i. If not, why not?

      ii. What, if anything, did the NYPD do to ensure that the commands complied with this particular directive?

f. Is it accurate to say that the notice directs the commands to preserve "video, including but not limited to Argus, body cameras and any other video collected from any source and in Department custody or possession."

      i. If that is not accurate, why not?

      ii. What types of video was in fact preserved in accordance with this notice?

      iii. What was included in the category "video collected from any source and in the Department custody or possession" that was not Argus or body cameras?

      iv. What, if anything, did the NYPD do to ensure that the commands complied with this particular directive?

g. Is it accurate to say that this notice states, per the language on page 17 under the heading "Instructions for Electronically-Stored Information," that "Text messages must be preserved by taking a screen shot and sending it to the user's Department email account?"

      i. If not, why not?

      ii. What, if anything, did the NYPD do to ensure that the commands complied with this particular directive?

      iii. Did the NYPD come to learn at any point that some officers' NYPD-issued cellular phones deleted content from their phone automatically?

          1. When did the NYPD learn that?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    2.   What, if anything, did the NYPD do to ensure that the contents of NYPD-issued cellular phones were not programmed to automatically delete any of its contents?

h.   Is it accurate to say that this notice states, per the language on page 17 under the heading "Instructions for Electronically-Stored Information," that "relevant text messages should not be deleted from the phone on which they were sent or received"?

    i.   What, if anything, did the NYPD do to ensure that the commands complied with this particular directive?

i.   Did Executive Agency Counsel Heidi Grygiel receive any questions about this notice?

    i.   Wat was the content of those communications?

j.   Did Lieutenant Robert Corbett receive any questions about this notice?

    i.   What was the content of those communications?

k.   Did anyone in the NYPD become aware at any point that any portion of this preservation notice had not been complied with?

    i.   Who was aware?

    ii.   When did they become aware of that non-compliance?

    iii.   Did that individual or those individuals report the non-compliance?

    iv.   To whom?

    v.   What, if anything, did the NYPD do to ensure the cause of the non-compliance was corrected?

241)    Who authorized the issuance of this notice?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

242)     Who drafted the notice?

243)     Are you aware that, on July 29, 2020, Deputy Commissioner of Legal Matters indicated that, "The Legal Bureau began receiving notices of claim and preservation letters from plaintiffs' firms in June, and new notifications continue to arrive on a near-daily basis"?

244)     What efforts did the City of New York make to preserve video footage relating to the Protests for the period between from June 8, 2020, and February 12, 2021?

245)     What did the individuals listed in pages 2 through 13 of this document as being responsible for implementing the preservation notice do to comply with that notice?

246)     I will now hand you what has been pre-marked Video Deponent 8 and was provided to Defendants with these written questions. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 8 [DEF_000544486_ Preservation Notice] and waits to ask next question until witness states they have finished reviewing it.]**

247)     Have you seen this document before?

248)     What is the document marked Video Deponent 8?

249)     Why was this notice sent?

250)     When was this notice sent?

251)     What was the date of the incident to which this notice pertained?

252)     Is it accurate to say that this notice was sent over one year after the incident for which preservation of evidence was being ordered?

    a.   Why was there such a delay in sending this notice?

WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31

253)     What evidence was in fact preserved as a result of this notice?

    a.   Is it still preserved?

254)     Who approved the issuance of this notice?

255)     Why was this notice sent?

256)     Do you see on page 2 where it says, "Any photos/videos taken by NYPD members on Department-issue or personal devices as well as body cameras, dashcams and precinct cameras during or after the incident are also covered by this preservation order."

    a.   What, if any, photos or video were preserved for this incident?

    b.   Are they still preserved?

    c.   Did the NYPD preserve all precinct camera footage relating to the Protests?

        i.   If it did not, what precinct camera footage was not preserved?

    d.   Did the NYPD preserve all dashcam footage relating to the Protests?

        i.   If it did not, what dashcam footage was not preserved?

257)     Do you see on page 2 that this notice states, "Footage or photos on camera systems subject to routine overwriting or deletion schedules must be copied to appropriate media of preservation."

    a.   What is the "appropriate media of preservation" mean here?

    b.   What footage or photos are subject to routine overwriting or deletion schedules as referenced here?

    c.   Was this directive complied with?

258)     Do you see on page 2 that this notice directs questions about "preservation or copying of video or photo footage" be directed to Detective Binu Pillai-Abdul?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

      a.  Did anyone contact Detective Pillai-Abdul about this notice?

      b.  What was the substance of that communication?

      c.  What, if anything, was done in response to that communication?

259)      I will now hand you what has been pre-marked Video Deponent 9 and was provided to Defendants with these written questions. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 9 [DEF_000544490_ Preservation Notice] and waits to ask next question until witness states they have finished reviewing it.]**

260)      Have you seen this document before?

261)      What is it?

262)      Why was this request issued?

263)      Who approved the issuance of this request for documents?

264)      Do you see the language at the bottom of the page saying, "This is a preservation of evidence notification only, do not copy case"?

      a.  What does that mean?

      b.  What is the distinction copying a case and preserving the evidence only?

      c.  How long are IAB case files retained in the regular course of business?

      d.  Why was a request to preserve evidence in these cases necessary to preserve that evidence?

      e.  Did the NYPD issue similar requests for documents for other IAB files?

         i.  If not, why not?

        ii.  If yes, for which IAB files?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

265)     We have now reviewed a number of preservation orders and notices. Other than the exhibits you have reviewed today, did the NYPD issue any other notices or orders to preserve documents, including video and other evidence, relating to the Protests?

    a.   Please answer the following questions for each such order or notice:

        i.   When did the NYPD issue that order or notice?

        ii.   What did it direct?

        iii.   What, if anything, was actually preserved in response to the preservation order or notice?

        iv.   What, if anything, did the NYPD do to ensure compliance with those orders or notices?

**Preservation Letters**

266)     I will now hand you what has been pre-marked Video Deponent 10 and was provided to Defendants with these written questions. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 10 [Rickner PLLC Letter] and waits to ask next question until witness states they have finished reviewing it.]**

267)     Do you recognize Video Deponent 10?

268)     What is that document?

269)     Did the City receive the document marked Video Deponent 10?

270)     At the time the City received that letter from Rob Rickner, it anticipated litigation, correct?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

    a. If that is not correct, the City anticipated litigation upon receiving the document marked Video Deponent 5, correct?

        i. If that is not correct, do you see on page 1 where Video Deponent 10 says "the City of New York knows that litigation related to these protests is inevitable?"

        ii. Does this statement mean that the City of New York anticipated litigation related to these protests?

            1. If not, what does it mean?

271) Do you see where Video Deponent 10 says preservation should cover evidence regarding  "excessive force used and false arrests made by the NYPD since May 25, 2020", on page 1?

    a. Do you see the date of Video Deponent 10, on page 1 at the top stating July 6, 2020?

    b. Yet, the City did not preserve documents from between June 8 and the date of Video Deponent 5, July 6, 2020?

    c. Why did the City not preserve documents as requested by this preservation request for the period between June 8, 2020, and July 6, 2020?

        i. Did the City object to this request for preservation from Rob Rickner?

    d. Why did the City elect not to notify the author of this preservation request that it was not preserving documents as requested in the letter?

    e. Do you see on page 7 where Video Deponent 10 says "Should you object to this preservation request in any manner, you need to notify us immediately, so that, if necessary, we may seek judicial intervention to secure relevant material?"

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

     f.   Why did the City not comply with that request to notify the author as to their objection to the preservation request?

     g.   Do you agree that, if the City did not intend to preserve evidence, it is important to allow a party serving this kind of request to know so they could seek Court intervention?

272)     I will now hand you what has been pre-marked Video Deponent 11 and was provided to Defendants with these written questions. Please review it and tell me when you have finished reviewing it.

**[Whereupon Court Reporter presents pre-marked exhibit Video Deponent 11 [Cohen&Green Letter] and waits to ask next question until witness states they have finished reviewing it.]**

273)     Do you recognize Video Deponent 11?

274)     What is that document?

275)     Did the City receive the document marked Video Deponent 11?

276)     What does the stamp in the upper right – that reads "PALS # 2020-6-14 1-2" -- of Video Deponent 11 mean?

277)     At the time the City received Video Deponent 11, it anticipated litigation, correct?

     a.   If that is not correct, the City anticipated litigation upon receiving Video Deponent 6, correct?

         i.   If not, do you on page 1 where Video Deponent 11 says "the City of New York knows that litigation related to these protests is inevitable?"

         ii.   Does this statement mean that the City of New York anticipated litigation related to these protests?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

1. If not, what does it mean?

278)    Do you see where Video Deponent 11 says preservation should cover evidence about the protests, and defines protests by saying "'protest' used herein means any gathering and demonstration, of any kind, starting May 25, 2020 and going forward," on page 2.

   a. Do you see the date of Video Deponent 11, on page 1 at the top as reflecting July 6, 2020?

   b. Given the language in this request, why did the City not preserve documents from between June 8 and the date of Video Deponent 11, July 6, 2020?

   c. Did the City interpret the request "starting May 25, 2020 and going forward" to exclude dates between June 8, 2020 and July 6, 2020?

      i. If so, why did it interpret it in that way?

      ii. If not, why did the City not preserve documents during that period of time?

   d. And as of July 6, 2020, video footage from between June 8, 2020 and July 6, 2020 still existed, correct?

   e. Why did the City not preserve documents as requested by this preservation request for the period between June 8, 2020, and July 6, 2020?

      i. Did the City object to this request for preservation from Remy Green of Cohen&Green PLLC?

   f. Why did the City elect not to notify the author of this preservation request that it was not preserving documents as requested in the letter?

WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31

     g.   Do you see on page 7 where Video Deponent 11 says "Should you object to this preservation request in any manner, you need to notify us immediately, so that, if necessary, we may seek judicial intervention to secure relevant material?"

     h.   Why did the City not comply with that request to notify the author as to their objection to the preservation request?

     i.   Do you agree that, if the City did not intend to preserve evidence, it is important to allow a party serving this kind of request to know so they could seek Court intervention?

**Evidence and Prosecution of Protest Related Crimes**

279)     What is the process for invoicing video footage as evidence?

280)     How does an NYPD officer invoice or otherwise log video footage as evidence?

281)     What happens to video footage that is invoiced as evidence?

282)     Where is NYPD video evidence that is invoiced for evidence stored?

283)     Is that video footage still preserved?

284)     Has all of that video footage been produced in these litigations?

     a.   If not, Plaintiffs call for production of that video footage.

285)     What invoiced video evidence does NYPD have?

286)     What video footage was turned over to other law enforcement agencies, including District Attorney's Offices, the Federal Bureau of Investigation, and/or the United States Attorney's Office, in connection with possible prosecution for arrests made during the Protests?

287)     How did you turn over video to prosecuting agencies?

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

That is the end of the written questions.

Dated: June 1, 2023
       New York, New York

                              LETITIA JAMES
                              *Attorney General of the State of New York*

                              By: s/ Lillian Marquez
                              Lillian Marquez, *Assistant Attorney General*
                              Office of the New York State Attorney General
                              28 Liberty Street, 20th Floor
                              New York, NY 10005
                              (212) 416-8250
                              Lillian.Marquez@ag.ny.gov

*Counsel for Plaintiff in People of the State of New York v. City of New York, No. 21-cv-322*

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
*s/*
Molly K. Biklen
Daniel R. Lambright
Jessica Perry
Robert H. Hodgson
Veronica Salama
Lisa Laplace
Christopher T. Dunn
New York Civil Liberties Union   Foundation
125 Broad Street, 19th Floor
 New York, N.Y. 10004
 (212) 607-3300
 dlambright@nyclu.org

*Co-Counsel for Plaintiffs in Payne v. De Blasio, No. 20-cv-8924*

THE LEGAL AID SOCIETY

s/
Corey Stoughton
Jennvine Wong
Rigodis Appling
Paula Garcia-Salazar
The Legal Aid Society
199 Water Street

**WRITTEN QUESTIONS PURSUANT TO FED. R. CIV. P. 31**

New York, N.Y. 10038
(212) 577-3367
cstoughton@legal-aid.org

*Co-Counsel for Plaintiffs in Payne v. De Blasio, No. 20-cv-8924*

DAVIS WRIGHT TREMAINE LLP

By: */s/*_____

Robert D. Balin
Nimra H. Azmi
Abigail Everdell
Kathleen Farley
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
robbalin@dwt.comabigaileverdell@dwt.com
kathleenfarley@dwt.com

Wylie Stecklow
WYLIE STECKLOW PLLC
Carnegie Hill Tower
152 W. 57th Street, 8th FLoor
NY NY10019
(t) 212 566 8000
ecf@WylieLAW.com

Mickey H. Osterreicher
General Counsel
NATIONAL PRESS PHOTOGRAPHERS
ASSOCIATION
70 Niagara Street
Buffalo, New York 14202
Tel: (716) 983-7800
Fax: (716) 608-1509
lawyer@nppa.org

Alicia Calzada (*pro hac vice*)
ALICIA WAGNER CALZADA, PLLC
Deputy General Counsel
National Press Photographers Association
12023 Radium , Suite B1
San Antonio, TX 78216
210-825-1449
Alicia@calzadalegal.com

*Counsel for Plaintiffs in Gray, et al v. City of New York, et al, No. 21-cv-06610*

The Aboushi Law Firm PLLC

/s/_____
Tahanie A. Aboushi, Esq.
Aymen A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: (212) 391-8500
Fax: (212) 391-8508
Aymen@Aboushi.com
Tahanie@Aboushi.com

*Counsel for Plaintiffs in Rolon, et al v. City of New York, et al, No. 21-cv-2548*

## Schedule A: List of Protest Locations[1]

| Protest No. | Date | Approximate Location | Complaint Allegations |
|---|---|---|---|
| 1 | May 28, 2020 | Lafayette Street to City Hall, Manhattan | *People*, ¶ 51<br>*Sow*, ¶ 65 |
| 2 | May 28, 2020 | Union Square, Manhattan | *People*, ¶¶ 128-132<br>*Payne*, ¶ 44<br>*Sow*, ¶ 65 |
| 3 | May 29, 2020 | Foley Square Manhattan to Near Barclays Center, Brooklyn via Brooklyn Bridge | *People*, ¶¶ 52, 193-195, 196-202<br>*Payne*, ¶ 45<br>*Sow*, ¶ 65<br>*Wood,* ¶¶ 45-47 |
| 4 | May 29, 2020 | Clinton Hill, Brooklyn | *People*, ¶¶ 52, 133-140, 223-226 |
| 5 | May 29, 2020 | Fort Greene, Brooklyn | *People*, ¶ 52 |
| 6 | May 29, 2020 | Bedford-Stuyvesant, Brooklyn (Herbert von King Park), Brooklyn | *People*, ¶¶ 141-149, 161-163 |
| 7 | May 29, 2020 | Pacific Street and Flatbush Avenue, Brooklyn | *People*, ¶¶ 215-219<br>*Wood*, ¶¶ 48-50 |
| 8 | May 29, 2020 | Union Square, Manhattan | *People*, ¶ 52 |
| 9 | May 29, 2020 | Herald Square, Manhattan | *People*, ¶ 52 |
| 10 | May 30, 2020 | Jackson Heights, Queens | *People*, ¶ 53 |
| 11 | May 30, 2020 | Park Slope, Brooklyn | *People*, ¶ 53 |
| 12 | May 30, 2020 | East Flatbush, Brooklyn | *People*, ¶¶ 53, 312-317<br>*Sow*, ¶ 67 |
| 13 | May 30, 2020 | Near Bedford & Tilden Aves., Brooklyn | *People*, ¶¶ 178-192, 235-236 |
| 14 | May 30-31, 2020 | Barclays Center to Flatbush Extension, Brooklyn | *People*, ¶¶ 203-207, 107-114<br>*Payne*, ¶¶ 47-48, 107-115 |
| 15 | May 30, 2020 | Harlem / West Side Highway, Manhattan | *People*, ¶¶ 402-407 |
| 16 | May 30, 2020 | Union Square to FDR Drive/Lower East Side, Manhattan | *Payne*, ¶¶ 50, 117-123<br>*Sow*, ¶¶ 130-151 |
| 17 | May 30, 2020 | City Hall to Brooklyn Bridge, Manhattan | *Sow*, ¶¶ 152-177 |
| 18 | May 31, 2020 | Near Barclays Center, Brooklyn | *People*, ¶ 54<br>*Sow*, ¶ 68 |

---

[1] The allegations listed in this table reference those in the Amended Complaints in *People*, No. 21 Civ. 322 (ECF No. 51), *Payne*, No. 20 Civ. 8224 (ECF No. 54), *Sierra*, No. 20 Civ. 10291 (ECF No. 38), *Sow*, 21 Civ. 533 (ECF No. 49) and *Wood*, 20 Civ. 10541 (ECF No. 48) and the Complaint in *Yates*, No. 21 Civ. 1904 (ECF No. 1).

| Protest No. | Date | Approximate Location | Complaint Allegations |
|---|---|---|---|
| 19 | May 31, 2020 | Downtown Brooklyn to multiple bridges | *People*, ¶ 54 |
| 20 | May 31, 2020 | Brooklyn Bridge | *People*, ¶ 54 |
| 21 | May 31, 2020 | From Manhattan Bridge to Chinatown, Church Street, and/or across Canal Street, Manhattan | *People*, ¶ 54<br>*Yates*, ¶¶ 13-21<br>*Wood*, ¶¶ 51-54 |
| 22 | May 31, 2020 | Near Williamsburg Bridge, Manhattan | *People*, ¶ 54 |
| 23 | May 31, 2020 | Broadway to E. 11th St. & Near Union Square, Manhattan | *People*, ¶¶ 155-160, 231-234<br><br>*Payne*, ¶¶ 125-130 |
| 24 | May 31, 2020 | Times Square, Manhattan | *People*, ¶ 54 |
| 25 | May 31, 2020 | F.D.R. Drive, Manhattan | *People*, ¶¶ 208-210 |
| 26 | June 1, 2020 | Midtown, Manhattan | *People*, ¶¶ 55, 227-230<br>*Payne*, ¶ 53<br>*Sow*, ¶¶ 208-219 |
| 27 | June 1, 2020 | East Village, Manhattan | *People*, ¶ 55 |
| 28 | June 1, 2020 | Near Union Square Park, Manhattan | *People*, ¶ 55<br>*Payne*, ¶ 53 |
| 29 | June 1, 2020 | Near Barclays Center, Brooklyn, Crossing Manhattan Bridge into Times Square & Near Port Authority, Manhattan | *People*, ¶ 55<br>*Sow*, ¶¶ 180-206 |
| 30 | June 1, 2020 | Fordham Manor, Bronx | *People*, ¶ 55 |
| 31 | June 1, 2020 | Astoria Park, Queens | *People*, ¶ 55 |
| 32 | June 1, 2020 | Flushing, Queens | *People*, ¶ 55 |
| 33 | June 2, 2020 | Lower Manhattan/Foley Square to Central Park, Manhattan | *People*, ¶¶ 56, 318-323<br>*Payne*, ¶¶ 131-136 |
| 34 | June 2, 2020 | Union Square, Manhattan | *People*, ¶¶ 56 |
| 35 | June 2, 2020 | Near Barclays Center, Brooklyn to Manhattan Bridge | *People*, ¶¶ 330-336 |
| 36 | June 2, 2020 | Upper West Side, Manhattan | *People*, ¶¶ 56, 423-430 |
| 37 | June 2, 2020 | Astor Place, Manhattan | *People*, ¶ 56 |
| 38 | June 2, 2020 | Chelsea, Manhattan | *People*, ¶ 56<br>*Payne*, ¶ 54 |
| 39 | June 2, 2020 | Near West Side Highway, Manhattan | *Payne*, ¶ 54<br>*Sow*, ¶¶ 220-237, 239-282 |
| 40 | June 2, 2020 | Bryant Park to Midtown, Manhattan | *People*, ¶ 57<br>*Wood*, ¶¶ 55-59 |
| 41 | June 3, 2020 | Cadman Plaza, Brooklyn | *People*, ¶¶ 57, 164-168, 337-346<br>*Payne*, ¶¶ 55, 143-159 |

| Protest No. | Date | Approximate Location | Complaint Allegations |
|---|---|---|---|
| | | | *Sow*, ¶ 83<br>*Wood*, ¶¶ 65-66 |
| 42 | June 3, 2020 | Maria Hernandez Park, Brooklyn | *People*, ¶ 57 |
| 43 | June 3, 2020 | Midtown East/Upper East Side, Manhattan | *People*, ¶¶ 57, 237-246, 347-354<br>*Sow*, ¶ 84-85, 284-309<br>*Wood*, ¶¶ 60-64 |
| 44 | June 4, 2020 | Mott Haven, Bronx | *People*, ¶¶ 58, 169-170, 247-255, 284-310, 366-387<br>*Wood*, ¶¶ 116-167<br>*Payne*, ¶¶ 59-65, 161-173, 182-192, 194-200<br>*Sierra*, ¶¶ 41-124<br>*Sow*, ¶¶ 86-93, 310-329, 332-345, 348-390, 392-418 |
| 45 | June 4, 2020 | McCarren Park to South Williamsburg, Brooklyn | *People*, ¶¶ 355-365<br>*Payne*, ¶¶ 58, 202-206<br>*Wood*, ¶¶ 67-68<br>*Sow*, ¶ 84-85 |
| 46 | June 4, 2020 | Clinton Hill and Prospect Heights, Brooklyn | *People*, ¶ 59 |
| 47 | June 4, 2020 | Flatbush, Brooklyn | *People*, ¶ 59 |
| 48 | June 4, 2020 | Brooklyn Bridge | *People*, ¶ 59 |
| 49 | June 4, 2020 | Midtown, Manhattan | *People*, ¶ 59 |
| 50 | June 4, 2020 | Flushing, Queens | *People*, ¶ 59 |
| 51 | June 4, 2020 | Central Park West, Manhattan | *People*, ¶ 59 |
| 52 | June 5, 2020 | Crown Heights, Brooklyn | *People*, ¶ 60 |
| 53 | June 5, 2020 | Sunset Park, Brooklyn | *People*, ¶ 60 |
| 54 | June 5, 2020 | Staten Island | *People*, ¶ 60 |
| 55 | June 5, 2020 | Near Gracie Mansion, Manhattan | *People*, ¶ 60 |
| 56 | June 5, 2020 | Barclays Center to Downtown Brooklyn | *People*, ¶ 60 |
| 57 | June 5, 2020 | Nostrand Ave., Brooklyn | *Payne*, ¶ 71 |
| 58 | June 6, 2020 | Financial District, Manhattan | *People*, ¶ 61 |
| 59 | June 7, 2020 | Upper East Side, Manhattan | *People*, ¶ 61 |
| 60 | June 8, 2020 | Times Square, Manhattan | *People*, ¶ 61 |
| 61 | June 14, 2020 | Times Square, Manhattan | *Payne*, ¶ 74 |
| 62 | June 28, 2020 | Foley Square to West Village, Manhattan (incl. Washington Square Park) | *People*, ¶ 62<br>*Payne*, ¶¶ 78, 174-180, 209-210 |
| 63 | June 23-30, 2020 | City Hall Park, Manhattan | *Payne*, ¶ 74 |

| Protest No. | Date | Approximate Location | Complaint Allegations |
|---|---|---|---|
| 64 | July 3, 2020 | City Hall Park, Manhattan | *People*, ¶ 63 |
| 65 | July 11, 2020 | Dyker Heights, Brooklyn | *Sow*, ¶ 101 |
| 66 | July 12, 2020 | Bay Ridge, Brooklyn | *Sow*, ¶ 102 |
| 67 | July 15, 2020 | Brooklyn Bridge Pedestrian Path | *People*, ¶¶ 408-421 |
| 68 | July 28, 2020 | Kips Bay, Manhattan | *People*, ¶ 64 |
| 69 | September 11, 2020 | McCarren Park, Brooklyn | *People*, ¶ 65 |
| 70 | September 17, 2020 | Foley Square, Manhattan | *Payne,* ¶ 76 |
| 71 | September 19, 2020 | Times Square, Manhattan | *Payne,* ¶ 77 |
| 72 | September 26, 2020 | Washington Square Park and Near Sixth Precinct Stationhouse, Manhattan | *People*, ¶ 66 |
| 73 | October 6, 2020 | Borough Park, Brooklyn | *Sow*, ¶ 103 |
| 74 | October 7, 2020 | Bedford-Stuyvesant, Brooklyn | *People*, ¶ 67 |
| 75 | October 25, 2020 | Coney Island, Brooklyn to near Trump Tower, Manhattan, to Brooklyn Park | *Sow,* ¶ 104 |
| 76 | November 1, 2020 | Hell's Kitchen, Manhattan | *Sow*, ¶ 105 |
| 77 | November 4, 2020 | Washington Square Park, W. 8th and Greenwich Ave., Manhattan | *People*, ¶¶ 68, 388-389 |
| 78 | November 4, 2020 | Central Park to Union Square, Manhattan | *People*, ¶ 68, 390-393 *Payne*, ¶ 78 |
| 79 | November 5, 2020 | West Village to Union Square, Manhattan | *People*, ¶ 69 *Payne*, ¶ 79 |
| 80 | December 2, 2020 | Staten Island | *Sow,* ¶ 106 |
| 81 | December 11, 2020 | Downtown Brooklyn | *People*, ¶ 70 |
| 82 | January 12-16, 2021 | Downtown Brooklyn | *Payne,* ¶ 138 |
| 83 | January 18, 2021 | Barclays Center, Brooklyn to City Hall Park, Manhattan | *People*, ¶¶ 71, 112-113 394-398 *Payne*, ¶¶ 80, 139-140 |