

| | | |
|---|---|---|
| **HON. SYLVIA O. HINDS-RADIX**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NEW YORK 10007 | **AMY ROBINSON**<br>*Senior Counsel*<br>arobinso@law.nyc.gov<br>Phone: (212) 356-3518<br>Fax: (212) 356-1148 |

**By ECF**

June 23, 2023

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    In Re:  *New York City Policing During Summer 2020 Demonstrations*,
           No. 20 Civ. 8924 (CM) (GWG)
           This filing is related to all cases

Your Honor:

    I am a Senior Counsel in the Office of the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and I am among counsel for the defense in the above-referenced matter. Defendants write in response to Plaintiffs' letter dated June 21, 2023, (ECF No. 1067). Defendants acknowledge that this is a discovery issue which the parties have been trying, unsuccessfully, to resolve for some time. However, Plaintiffs' letter does not accurately reflect the timeline of the parties' discussions. Moreover, while Defendants have remained open to providing Plaintiffs with the information they seek, Defendants continue to ask that Plaintiffs work collaboratively to find an efficient manner of conveying that information. Defendants also assert that the "Notice of Deposition Upon Written Questions Pursuant to Fed. R. Civ. P. 31" (ECF No. 1067-3) ("the Rule 31 Notice") served by Plaintiffs is neither close to what Defendants had previously proposed, nor an efficient means of conducting the desired "discovery on discovery."

    Plaintiffs' representation that Defendants "agreed to conduct Rule 31 depositions" is not entirely accurate. Moreover, the fact that this dispute has re-emerged "less than one month from the end of discovery" is entirely a result of Plaintiffs lengthy failure to follow-up on communications from March of this year.

    Following the Court's Order on January 23, 2023 (ECF No. 823), Defendants produced the Declaration of John Schneider (ECF No. 1067-2) in an attempt to provide the information that the Court had identified as potentially relevant. Detective Schneider's declaration detailed the process by which certain video evidence is "normally sought by the NYPD in conducting [criminal] investigations of events occurring outdoors." (ECF No. 1067-1 at ¶ 1, (quoting Order ECF No. 823)). The Summer 2020 Protests were, of course, not in any way "normal" for NYPD, and a

description of NYPD's "normal" processes and procedures cannot fully capture the steps that were taken to preserve video related to those protests. Recognizing this, Defendants sought to continue working with Plaintiffs to develop the information that the Court ordered, and which would permit the parties and the Court to evaluate the merits of any potential spoliation motion.

Towards that end, Defendants met and conferred with Plaintiffs on March 23, 2023.[1] During that meeting, Defendants raised the possibility of using Rule 31 of the Federal Rules of Civil Procedure as a framework for establishing a process by which the necessary information would be conveyed, either in writing or through live testimony, whichever was more efficient. As defense counsel made clear in the follow-up email the same day (ECF No. 1067-2), neither side had fully grasped or agreed upon the precise procedure called for by use of Rule 31, which is a rarely used method of obtaining discovery. Defense counsel ended by saying "both sides need to examine this issue further, but we believe that the proposed method—deposition on written questions *that we can review and use to prepare the witness(es)*—offers an efficient means of resolving outstanding disputes in this area of discovery." ECF No. 1067-2. Plaintiffs' counsel responded to that email the same day, saying "thanks for the clarifications. We'll discuss and get back to you, hopefully early next week." Email from L. Marquez to T. Zimmerman dated March 23, 2023 (attached hereto as Exhibit "A"). However, Plaintiffs did not renew the discussion the following week and, hearing nothing from them, Defendants put the issue of video preservation on the backburner and focused on the flurry of other discovery, including depositions, that has occurred over the past three months.

The next time that Defendants heard from Plaintiffs on this issue was on June 1, 2023, when Plaintiffs served their 47-page Rule 31 Notice without any further discussion. Needless to say, Defendants were quite surprised after such a long pause to receive that extensive discovery demand without any of the follow-up negotiations that had been expected to narrow the proposed discovery to a reasonable scope and form. Upon examining the Rule 31 Notice, Defendants quickly concluded that it suffered from all of the defects that had led the Court to originally opine that Rule 31 would be the "least practical method" of resolving this issue. For example, it included numerous topics that are not relevant to the video preservation and production issues in this case, such as questions about the Movie TV Unit (ECF No. 1067-3 at 10–11) and lengthy background examination of the witness or witnesses designated to answer (*id*. at 6–7). Moreover, Plaintiffs' demands regarding the proposed procedures to be followed were not consistent with Defendants' understanding of Rule 31, and only seemed to further complicate what was supposed to be a collaborative process. For example, the Rule 31 Notice instructs the answering witness to "not consult any materials during your testimony" other than the exhibits chosen by Plaintiffs' counsel, (*id*. at ¶ 13) which would defeat the purpose of preparing an institutional witness to testify to the best of their ability. Defendants also take issue with Plaintiffs' intention to appear at the examination under oath as one of the purposes of Rule 31 is to save on the costs associated with live depositions including attorneys' fees.

Defendants' objection to simply produce the desired information under Rule 31 or Rule 30(b)(6) is based on the unfocused nature of Plaintiffs' inquiries, and the very broad scope of the information they purport to be seeking. The information that Plaintiffs seek does not reside in one,

---

[1] Present at the meet and confer for Plaintiffs were Lillian Marquez and Remy Greene. Present for Defendants was Tobias Zimmerman.

or even a small number of individuals at NYPD. Collecting the necessary information and preparing one or more witnesses on this topic (whether for a deposition under Rule 31 or one under Rule 30(b)(6)) will not be a trivial task and will require extensive efforts by defense counsel and NYPD. In sum, it would be extremely burdensome.

In an effort to further the resolution on this issue, defense counsel believes it is helpful to inform the Court and Plaintiffs of the following facts regarding NYPD's use of video evidence:[2]

- NYPD creates certain types of video through the following means (italics explained below):
    - Body Worn Cameras (BWC);
    - Department issued cell phones;
    - *ARGUS cameras situated in public places;*
    - *Precinct security cameras;*
    - *Aviation;*
    - Video created by the Technical Assistance Response Unit (TARU); and
    - Dashboard cameras.

- NYPD has access to some video from certain third parties:
    - *Department of Transportation (DOT);*
    - *NYCHA;*
    - *Department of Citywide Administrative Services (DCAS);*
    - *MTA;*
    - *Port Authority;*
    - *Certain institutional third parties cooperating on counterterrorism;*[3] and
    - Other third parties operating cameras in proximity to a crime scene, collected by Detective Bureau.

- The video sources listed above in *italics* are collected through the Lower Manhattan Security Initiative (LMSI), which is part of NYPDs Counterterrorism Bureau. The other (non-NYPD) parties participating in LMSI may or may not have additional video footage that they capture and store on their own video systems, which are not part of LMSI, and to which NYPD does not have access.

- Many of the video sources in LMSI are protected by the Law Enforcement Privilege because the location of the cameras and the footage they capture may reveal sensitive or vulnerable infrastructure related to NYPD's ongoing counterterrorism mission.

- LMSI is designed and optimized for real-time monitoring of catastrophic events such as the terrorist attacks of 9/11. As such, it was never meant to retain video for

---

[2] The information provided herein will supplement and update those set forth in Defendants' letter dated May 11, 2022.

[3] The identities of these third parties are also protected from disclosure by the Law Enforcement Privilege and confidentiality agreements.

   long periods, nor is it optimized to export video *en masse* for the purposes of aiding criminal investigations or civil litigation. As such:

   - Video is normally only retained for 30-days before it is automatically erased or overwritten;
   - Video can only be exported from LMSI (a very small unit at NYPD) at double the rate of normal playback, meaning a 10-minute video takes 5-minutes to export;
   - Video can only be exported onto physical media; and
   - Each video clip selected for preservation must be manually selected from the overall camera feed and individually exported (*i.e.*, one-by-one). Furthermore, only two exports can be queued at a time, in addition to the clip being copied, meaning a human operator must continually monitor the process to ensure all selected footage is exported.

- On or about June 5, 2020, the Legal Bureau notified the Information Technology Bureau (ITB)—the command responsible for storage and administration of retention policies for certain video data—that efforts to preserve protest related video should begin at once. Since a preservation of this size had never before been attempted, the request was made to ITB because it was immediately obvious that such mass preservation was beyond the technical capabilities of LMSI and would need to be implemented on the back end.

- Within the first few days of the protests, the Legal Bureau began to identify protests and related arrests by date, time, and location and submitted these lists of protest-related events to ITB for preservation. Other commands, such as the Office of the Police Commissioner, were also submitting requests directly to ITB for video related to the protests.

- Finding and marking all of the requested footage from specific cameras within the 30-day retention period became impractical or impossible, so a decision was made by ITB to extend the retention period to 55 days.

- By the middle of July 2020, the video flagged for special retention by ITB already consumed more than 25% of the available storage space. Meanwhile, the number of requests for video preservation sent to ITB had declined precipitously due to changing circumstances on the street. In light of those factors, and because ITB was facing severe staffing issues related to the pandemic, a decision was made to preserve indefinitely all video on cameras possibly implicated by the various preservation requests for the period of May 28 through June 8, 2020, and to resume normal operation of LMSI, including the 30-day retention/destruction cycle.

- During the course of discovery, the City used the maps provided by Plaintiffs to identify relevant Argus footage included within the May 28 to June 8, 2020, period that was preserved. Additionally, defendants identified Aviation footage and have produced all such relevant Argus and Aviation non-privileged video that was

    located during those searches.  The only LMSI video retained after June 8, 2020, were those clips for which a specific retention request was generated *within* the 30-day retention period.

- With respect to the video sources above that are *not* part of LMSI, NYPD has taken all reasonable measures to preserve and produce relevant video in this litigation:

  o  BWC video was preserved, and huge quantities have been produced to Plaintiffs;

  o  Deposition witnesses were questioned as to whether they have relevant video (or still images) of the protests on their department-issued phones, and relevant evidence has been copied and produced;

  o  All video of the protests created by TARU has been preserved, and large quantities of it have been produced;

  o  At the time of the protests, only the Highway Division of NYPD had dashboard cameras.  NYPD does not believe that any relevant and discoverable dashboard video was created; and

  o  Video from third parties in proximity to crime scenes is collected in the manner described by Detective Schneider in his declaration (ECF No. 1067-1).  Video collected in this manner would be stored in NYPD's Enterprise Case Management System (ECMS) along with other evidence and information pertaining to criminal investigations.  NYPD believes that there is unlikely to be much, if any, relevant video of this type, as the 2020 Protests were not generally investigated after the fact by the Detective Bureau.  Moreover, there is no reasonable means by which NYPD could search ECMS for relevant video evidence in this category.

  The facts proffered above are from defense counsel's understanding of the issues following a diligent investigation.  All told, Defendants have produced thousands of hours of video in this litigation.  Defendants reasonably believe that any additional video of the protests that might be available would be cumulative and would not materially advance the litigation.  As such Defendants contend that efforts to locate, copy, and produce any additional video would not be consistent with the requirement under Rule 1 that the discovery rules be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of [this] action and proceeding."

  Moreover, Plaintiffs' request for sanctions is entirely meritless.  Rule 37 provides that, where a motion "for an order compelling disclosure or discovery" is granted, "or discovery is provided after filing" … "the court must, after giving an opportunity to be heard, require the party or deponent who conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including reasonable attorney's fees…" Rule 37(a)(5)(A).  However, Rule 37(a) provides three exceptions if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Rule 37(a)(5)(A)(i)-(iii) (emphasis added).

As detailed above, Plaintiffs abandoned the video footage issue for over two months stating in March that, "we'll get back to you, hopefully early next week," and then complete radio silence until they dropped a 47-paged Rule 31 Notice inserting a very complicated process for dealing with what they have turned into an extremely complicated issue. Defendants tried in good faith to work this out with Plaintiffs collaboratively, and their failure to communicate from March until June is the only reason this is now a crisis before the Court. Waiting until June to serve a Rule 31 Notice and then expecting Defendants to be able to garner witnesses on very short notice to answer voluminous questions while right in the throes of high-ranking and 30(b)(6) depositions and preparations is not acting in good faith.

In light of the foregoing, Defendants respectfully request that the Court deny Plaintiffs' application including their application for sanctions by means of taking as established certain answers to open questions under Fed. R. Civ. P. 37(b)(ii)(A)(1) or by any award of costs and fees.

Thank you for Your Honor's consideration herein.

Respectfully submitted,

*Amy Robinson s/*

Amy Robinson
*Senior Counsel*

Encl.

cc:     ALL COUNSEL (*via* ECF)