# EXHIBIT

# 1

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                            :
                                         Docket #20cv8924

 IN RE NEW YORK CITY POLICING     :
 DURING SUMMER 2020 DEMONSTRATIONS

                                  : New York, New York
                                    May 23, 2023
------------------------------------ :


                          PROCEEDINGS BEFORE
                THE HONORABLE GABRIEL W. GORENSTEIN,
                    UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff People      NEW YORK STATE OFFICE OF
of the State of New       THE ATTORNEY GENERAL
York:                     BY:  LILLIAN MARQUEZ, Esq.
                          28 Liberty Street
                          New York, New York 10005


For Gray Plaintiffs:      WYLIE STECKLOW PLLC
                          BY:  WYLIE STECKLOW, ESQ.
                          111 John Street, Suite 1050
                          New York, New York 10038


For Roland Plaintiffs:    THE ABOUSHI LAW FIRM
                          BY:  TAHANIE ABOUSHI, ESQ.
                          1441 Broadway, Suite 5036
                          New York, New York 10018


For Payne Plaintiffs:     LEGAL AID SOCIETY
                          BY:  PAULA GARCIA SALAZAR, ESQ.
                          49 Thomas Street
                          New York, New York 10013




Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service.
```

2

<u>APPEARANCES (CONTINUED):</u>

```
For Defendants:          NEW YORK CITY LAW DEPARTMENT
                         BY:  PETER SCUTOER, ESQ.
                              JENNY WENG, ESQ.
                         100 Church Street
                         New York, New York 10007
```

3

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> | <u>**Court**</u> |
|---|---|---|---|---|---|
| None | | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

1

```
 1                            PROCEEDINGS                4

 2            THE CLERK:  This is in the matter of In Re New

 3   York City Policing During Summer 2020 Demonstrations,

 4   case number 20cv8924.  Starting with plaintiffs'

 5   counsel, please state your appearance for the record.

 6            MS. LILLIAN MARQUEZ:  Good morning, Your Honor,

 7   this is Lillian Marquez, representing the People of the

 8   State of New York.

 9            MR. WYLIE STECKLOW:  Good morning, Your Honor,

10   Wylie Stecklow for the Gray plaintiffs.

11            MS. TAHANIE ABOUSHI:  Good morning, Tahanie

12   Aboushi for the Roland plaintiffs.

13            MS. PAULA GARCIA SALAZAR:  Good morning, Your

14   Honor, this is Paula Garcia Salazar from the Legal Aid

15   Society on behalf of the Payne plaintiffs.

16            MR. PETER SCUTERO:  Good afternoon, Judge, this

17   is Peter Scutero from the New York City Law Department

18   on behalf of the defendants.  I'm also accompanied here

19   by Ms. Bridget Fitzpatrick from the Civil Litigation

20   Unit of the New York Police Department.

21            MS. JENNY WENG:  And good morning, Your Honor,

22   this is Jenny Weng, also for the defendants.

23            THE COURT:  Okay, first, this is being recorded

24   for purposes of obtaining a transcription, but no other

25   recording is dissemination is permitted.
```

```
 1                         PROCEEDINGS              5

 2              We're here based on two letters, dockets 1003

 3   and 1004.  Ms. Fitzpatrick, I'm glad you're on the line.

 4   I have some questions for you.  Are you there?

 5              MS. BRIDGET FITZPATRICK:  Yes, Your Honor, I'm

 6   here.

 7              THE COURT:  So if we want to get the current

 8   administrative guide, it sounds like you printed it out.

 9   Did I read your affidavit correctly?

10              MS. FITZPATRICK:  Your Honor, what I meant to

11   say is that we converted the documents as they live on

12   the administrative guide to PDF form and then put those

13   PDF documents on a disk and provided that to the Law

14   Department for their review, the current administrative

15   guide.

16              THE COURT:  So that's the current complete

17   administrative record.

18              MS. FITZPATRICK:  Yes.

19              THE COURT:  So I'm really mystified here.  Why

20   doesn't the Law Department give the current complete

21   administrative record to plaintiffs.  Plaintiffs can

22   look at it.  They can see if there's some revision that

23   was made since 2020 that they want a prior copy of, and

24   then they can ask for that as to those particular items.

25   Any problem from the plaintiff's perspective with that?
```

```
 1                        PROCEEDINGS              6
 2            MS. MARQUEZ:  The only thing is that we haven't
 3    really gotten a clear understanding.  So the defendants
 4    have been saying that things have been shifted from one
 5    side to the other.  I'm not completely clear on whether
 6    there's certain administrative guide provisions that
 7    were not just revised but completely removed.  In which
 8    case it seems that wouldn't necessarily be reflected in,
 9    you know, a new current guide provision that just says
10    this was revised this date.  You know, I just want to
11    make sure --
12            THE COURT:  Hold on, hold on, hold on.  Hold
13    on.  Removed and then put in the patrol guide or just
14    removed entirely?
15            MS. MARQUEZ:  Or just removed entirely, for
16    instance.
17            THE COURT:  Because if it's put in the patrol
18    guide, presumably you have access to the patrol guide,
19    right?
20            MS. MARQUEZ:  Right, and so we would just want
21    confirmation that, you know, if there are provisions
22    that existed at the time of the protests, we are getting
23    a copy of that if it's not, you know, if it's not as it
24    was in the current administrative guide.  If that makes
25    sense.  So we just want to make sure that we're not
```

```
 1                          PROCEEDINGS                    7
 2  missing provisions altogether.
 3          THE COURT:  Right, okay.  So I gather, Ms.
 4  Fitzpatrick, there's not a way to do what you did with
 5  respect to the guide as of, you know, May 1, 2020, or is
 6  there?
 7          MS. FITZPATRICK:  Hi, Your Honor, it would
 8  actually be done by the management orders and directives
 9  section.  We would send a request to them.  And the way
10  their file system is set up, it would require a manual
11  search through all of the subsections to determine how
12  the guide existed in 2020.  So it's possible to do --
13          (interposing)
14          THE COURT:  -- as of that date.
15          MS. FITZPATRICK:  No.
16          THE COURT:  And, all right, so, well, I mean do
17  you have any ideas, Ms. Marquez, because I don't think
18  I'm going to make them do that.  I mean my order was not
19  specific enough to say that producing the whole thing
20  right now showing the dates of the revision is somehow
21  improper.  I mean I'm not sure why (indiscernible)
22  waited this long since the 19th, but, you know, do you
23  have some reasonable thing we can ask them to do?  If
24  you can come up with it, I'm happy to try it.
25          MS. MARQUEZ:  It's really hard, Your Honor,
```

1
2  because we, you know, we've been, we brought this to
3  their attention, I mean this should've been something
4  that was an obvious part of their (indiscernible) years
5  ago, but even as recently as February asked for the, you
6  know, the guide as they existed at the time of the
7  protests of course and now.  I have a deposition
8  tomorrow that is all about this process of drafting,
9  developing, modifying, revising policies and procedures,
10 this would fall squarely within that bucket.  And I plan
11 on holding open the deposition to the extent that, you
12 know, to have to go back over whatever they give me.

13         You know, they should have, they should give me
14 the current guide in total, but my concern is that there
15 were quite a lot of revisions after the protests as I,
16 as the timeline that I reference in the letter suggests.
17 And so my concern is that I'm not going to be able to go
18 over those, you know, those revisions.  I don't really
19 understand the suggestion that there needs to be some
20 manual review when the department manual timeline says
21 exactly which provisions were amended when --
22         THE COURT:  No, no, no, but hold on, I mean
23 that's the thing we're spinning in circles here.  When
24 you get the current guide, obviously you're not
25 interested in, you know, how they cash paychecks or

```
 1                          PROCEEDINGS                    9
 2  whatever else is in there, there's going to be probably
 3  90 percent of this stuff is irrelevant, maybe more,
 4  probably more than 90 percent.  So you get the whole
 5  thing.  You say you know what, these provisions I care
 6  about, and for those we'll figure out how they're going
 7  to go back and get the pre-2020 version of it.  It'll
 8  say at the top whether there was a change.
 9            Now, the one thing you've talked about, which I
10  agree this will not solve, is if there was something in
11  2019 that got removed since then.  And I don't have a
12  good way to solve it.  I guess your idea is you look at
13  each of the 5,000 different provisions and check if –
14  you can't actually even look them up.  I'm not even sure
15  what you do.  Maybe you see missing numbers.  You know,
16  it seems to me that if in the course of all this no one
17  has mentioned that they were acting pursuant to an
18  administrative guide provision or an administrative
19  guide provision said something, and all you have is some
20  sense that something was out there that got deleted, I
21  just, I don't know that this is even worth doing.
22            So if you have an idea of what they could do
23  that's reasonable, tell me.  If not, I think you should
24  just take the current guide, and then for any provisions
25  that you're interested in and want to see the change, t
```

```
 1                       PROCEEDINGS              10
 2  that will be easy enough because you'll see there was a
 3  change since 2019 and you'll ask for that, and if it's
 4  relevant, you know, that makes sense, and they should
 5  get it for you as quickly as possible.  But not for the
 6  entire thing.
 7            MS. MARQUEZ:  But, you know, part of the
 8  question, Your Honor, is we're doing these meet and
 9  confers, and part of the issue is that time was of the
10  essence and that they should just produce everything
11  without having to give more work to plaintiffs to
12  determine, you know, like, okay, there was a revision to
13  this policy.  Can you please get this to me?  And then
14  we have to do meet and confers yet again about when that
15  happened --
16            THE COURT:  Wait, okay, hold on --
17            MS. MARQUEZ:  But, you know, and they --
18            THE COURT:  You're talking about - I'm trying
19  to understand what you're saying.  It doesn't seem like
20  it's an inappropriate burden for you to look at the
21  entire guide - I mean you don't care what revisions
22  there are to the guide since 2019 per se.  If they
23  changed how they cash salary checks and the 10,000 other
24  things in there that have nothing to do with this case,
25  you don't care about that.  You only care about the
```

1                              PROCEEDINGS                    11

2    things that have to do with things that might relate to,

3    you know, arrests, discipline, whatever else it might

4    be.  And that's, you know, whose specifically policies

5    might have an impact here.

6              MS. FITZPATRICK:  Your Honor, I'm sorry to

7    interrupt, but I think I might have an easier way to do

8    that even actually because there is a table of contents.

9    The initial table of contents is just specific sections,

10   but each one of those sections is broken down into

11   subsections.  So we could provide that to plaintiffs,

12   and then they could look through the subsections and

13   then they can let us know --

14             THE COURT:  Hold on, hold on, hold on.  Hold

15   on, hold on.  This is Ms. Fitzpatrick, right?

16             MS. FITZPATRICK:  Yes, I'm sorry, Your Honor,

17   it's Ms. Fitzpatrick.

18             THE COURT:  You can provide a table of contents

19   as of April 2020?

20             MS. FITZPATRICK:  Yes.

21             MS. MARQUEZ:  I believe, Your Honor --

22             (interposing)

23             MS. MARQUEZ:  We produced --

24             THE COURT:  Hold on, hold on, hold on.

25             MS. MARQUEZ:  -- those --

```
 1                        PROCEEDINGS              12
 2              THE COURT:  Hold on, hold on.  You're
 3   anticipating my next question to Ms. Fitzpatrick.  Is
 4   the table of contents going to be sufficiently detailed
 5   that you could see every single procedure and then
 6   compare it to whatever you're producing on this disk
 7   today presumably and see what got removed and what got
 8   added?
 9              MS. FITZPATRICK:  No, it would just be able to
10   provide information to the plaintiffs' counsel with more
11   specificity with regards to what the subsections are so
12   that they could say – because Your Honor is correct that
13   there is quite a bit in the administrative guide that is
14   not likely going to be relevant to the claims of this
15   case.  And then if the plaintiffs' counsel could just
16   look at the table of contents, we can provide --
17              THE COURT:  Stop, stop.  I have no idea what
18   you're talking about.  What is this table of contents?
19   Does it list every single, I'm using the word procedure.
20   Maybe that's the wrong word.  You used subsection,
21   that's probably a better word.  Does it provide a
22   listing of every single procedure, subsection, whatever
23   it's called?
24              MS. FITZPATRICK:  Yes.  There's – yes.  It's
25   broken down by section and then the sections are broken
```

1                              PROCEEDINGS                    13

2   by subsections which have more specificity.

3              THE COURT:  Okay.  So, for example, I'm just

4   picking out something that was attached to the

5   plaintiffs' letter.  They have procedure number 316-33,

6   Unusual Disorder Plan Arrest Processing, which came from

7   the administrative guide, issued in 2014.  Apparently

8   it's still in there I guess.  Ms. Marquez, it's still in

9   there as far as you know or you don't know?

10             MS. MARQUEZ:  I do not know, and I did provide

11  a table of contents that the defendants gave me, and it

12  doesn't match the description that Ms. Fitzpatrick is --

13             THE COURT:  Wait, wait --

14             (interposing)

15             MS. MARQUEZ:  -- docket number 1004-3.

16             THE COURT:  Yeah.  No, I mean, Ms. Fitzpatrick,

17  did you see the table of contents that was attached to

18  the letter?  It's got, you know, 20 topics in it and

19  that's it.

20             MS. FITZPATRICK:  Right, Your Honor, that's

21  because in order to be able to - I apologize, Your

22  Honor, I'm not particularly tech savvy, because it's a

23  drop down.  So you can click on the section, and then

24  it'll show all of the subsections.  And we could provide

25  the subsections to the plaintiff, and then they could

```
 1                        PROCEEDINGS              14
 2   figure out what --
 3            THE COURT:  That should've happened weeks ago,
 4   but that's not your fault, Ms. Fitzpatrick, I assume.
 5   So let's just try this again.  It's been unbelievable to
 6   me that parties haven't had a conversation this depth.
 7   I have my suspicions about who to blame, but I'm not
 8   going to cast blame.  I really want to solve this.
 9            So your answer to the question, my question was
10   you could provide a table of contents as of whatever
11   date plaintiffs give you, presumably something like
12   April 2020, that would have it broken down by every
13   single subsection so that they could at least compare
14   that to the thing you're about to give them, which is
15   the full guide and plus you should give them the same
16   table of contents in the exact same form so they could
17   say, oh, you know, there used to be 316-32 and now that
18   is missing.  Would they be able to see that?  Ms.
19   Fitzpatrick.
20            MS. FITZPATRICK:  I'm sorry, Your Honor, I'm
21   not a hundred percent sure about how the management
22   orders and directive sections maintains the table of
23   contents for prior versions of the administrative guide,
24   so I'm not a hundred percent sure if we'd be able to
25   produce that to the plaintiff for them to do the
```

```
1                          PROCEEDINGS              15
2  comparison that the Court is suggesting.
3          THE COURT:  Well, what was it you offering up
4  that you thought would be the simple way to deal with
5  this --
6          MS. FITZPATRICK:  In the normal --
7          (interposing)
8          MS. FITZPATRICK:  I'm sorry, Your Honor.  In
9  the normal course of business at CLU, we get requests
10 for sections of the patrol guide and the administrative
11 guide, and we are usually given like a particular date,
12 and then a particular - like the use of force policy,
13 like we would get a request, please give us the use of
14 force policy that was in effect on a certain date.  I
15 think that if the plaintiffs had the ability to see what
16 the subsections were in the administrative guide, that
17 might be able to narrow down to what's relevant to the
18 gravamen of the complaint and the case and that we could
19 produce that because that's how it's usually done in the
20 normal course.
21          Like, for instance, if they were interested in
22 security at a large public meeting which is another one
23 of the subsections in 316, which is command operations
24 miscellaneous, we could go to MODS and we could say
25 please give us 316-16 or -10 as it existed in 2020
```

```
 1                         PROCEEDINGS              16

 2  within the date range that the plaintiffs --

 3          THE COURT:  Ms. Fitzpatrick, we're talking in

 4  circles here because I already knew that.

 5          MS. FITZPATRICK:  Okay.

 6          THE COURT:  I'm talking about a very narrow

 7  (indiscernible).  Let me try it one more time.  And you

 8  thought you had a solution which sounded great, and

 9  maybe you're backtracking or maybe we're

10  misunderstanding each other.  You're going to give them,

11  presumably today.  I'll talk to Mr. Scutero about that.

12  A complete table of contents and the complete

13  administrative guide that exists today.  That's a given.

14  Also a given is that if there's something in there

15  that's germane to the case, frankly, I mean I'll give

16  them a free pass without any need for coming back to me

17  for like 20 of them.  They can pick any 20 they want,

18  and if they want to see, if it shows a revision after,

19  you know, 2020, they could say, you know what, give me

20  this one as it existed in April 2020.  And you're

21  already telling me that you're going to be able to do

22  that.  That's fine.  All of that is a given.

23          The one problem that anyone has pointed out to

24  me is what if there's something in the administrative

25  guide in 2019 that got removed, that was in effect in
```

```
 1                      PROCEEDINGS              17

 2  2020 and got removed in 2021?  It doesn't appear in the

 3  current administrative guide.  So my question is could a

 4  complete table of contents be printed, as you put it,

 5  for 2019, that's the question I asked you, Ms.

 6  Fitzpatrick, and that's the question I thought you told

 7  me yes to.

 8          MS. FITZPATRICK:  I apologize, Your Honor, I

 9  think there was a little bit of confusion.  I honestly I

10  don't know the answer to that question.  I have to speak

11  to someone in management orders and directives to see

12  about how they keep their table of contents

13  historically.  I don't know.  I don't want to say --

14          (interposing)

15          THE COURT:  That's fine.

16          MS. FITZPATRICK:  -- inaccurate.

17          THE COURT:  Let's look into that right away.

18  Ms. Marquez, what date do you want?

19          MS. MARQUEZ:  Your Honor, I just want to put on

20  the record that, you know, none of this burden was

21  mentioned at all in any of the meet and confers --

22          THE COURT:  Ms. Marquez, you got to answer my

23  questions when I ask you a question.

24          MS. MARQUEZ:  I was trying to provide an

25  alternative because I don't know --
```

```
 1                      PROCEEDINGS              18

 2            THE COURT:  If you're not interested, that's

 3    fine.  We'll move onto something else.  This is my

 4    solution to this.

 5            MS. MARQUEZ:  What I was going to - what I was

 6    going to say is that for the revisions the defendants

 7    already know when the administrative guide was amended.

 8    They keep an official record that is published that I

 9    believe we put with our papers.  And so they do know,

10    you know, what subsections have been amended.  And to

11    the extent that the table of contents reflects the same,

12    so, for instance, 303, duties and responsibilities, to

13    the extent those still exist, as they were back back in

14    2020, we could drop a few of the sections, and they

15    could just produce everything and the amendments, you

16    know, produce the current AG as it exists today, and to

17    the extent anything in those sections has been amended,

18    produce all those amendments.  And they already know

19    what amendments there are because they have that list of

20    amendments.

21            THE COURT:  Okay, stop right there.

22            MS. MARQUEZ:  Is that --

23            THE COURT:  Stop, stop, stop.  So the premise

24    of this is that there is a list of amendment to 303 I

25    guess by date that shows what's happened since 2019
```

1                          PROCEEDINGS                    19

2   through the present, is that what you're, that what you

3   think --

4            MS. MARQUEZ:  Yes, and so it's called the

5   timeline, and it's published, I mention in the letter

6   it's published on the NYPD website.  It goes --

7            THE COURT:  Have you seen it?

8            MS. MARQUEZ:  Yeah, and I referenced it to

9   defendants.

10           THE COURT:  Does it list --

11           MS. MARQUEZ:  So it's --

12           THE COURT:  Hold on, hold on, hold on.  Does it

13   list, have you seen the list of amendments in 303?

14           MS. MARQUEZ:  I could pull it up and look at it

15   and search, yeah, but it will say the procedure number

16   that has been amended and what date it was amended.

17           THE COURT:  Okay, and can you --

18           MR. SCUTERO:  Judge, if I may --

19           THE COURT:  Who is this?

20           MR. SCUTERO:  This is Mr. Scutero, Judge.

21           THE COURT:  Go ahead.

22           MR. SCUTERO:  Before we go down this road, I

23   wanted to mention to the Court that the timeline that

24   plaintiffs are referencing is not a complete history of

25   the revisions that were made to the administrative

1                           PROCEEDINGS                    20

2   guide, and we pointed that out to them during our meet

3   and confer.  And so they're relying on information that

4   isn't actually compete, and so that's why I think going

5   through or following the suggestion that the State is

6   proposing would not be useful, you know, for purposes –

7   I think the proposal that Your Honor was making would

8   be, if we explore that proposal, that would be a more

9   useful part of our time today rather than going through

10  something that really is based on information that isn't

11  complete.

12          THE COURT:  Ms. Marquez, you took me off my

13  track to say here's another solution.  Just go through

14  these revisions and give me those revisions.  Mr.

15  Scutero says they're incomplete.  If you don't care,

16  then we'll go with your way.

17          MS. MARQUEZ:  Right, and so I mean I don't know

18  who's right because prior counsel on this meet and

19  confer process that it was complete, but if it's less

20  than complete, this is at least a great starting point.

21  If we see something in the current AG that says

22  something that this was amended, and, again, without

23  having seen some of those provisions, I don't know if it

24  will say, you know, as clearly as that.

25          But at the very least we have a starting point

```
 1                        PROCEEDINGS              21
 2  because I didn't hear defendants to say that their own
 3  document is saying that something was amended when it
 4  was not.  It sounds like what they're saying is that
 5  there were other amendments that somehow or not
 6  accounted for in that document, and so I think it, you
 7  know --
 8            (interposing)
 9            THE COURT:  I'm sorry, I'm completely lost.
10  Are we back to the administrative guide again or are we
11  talking about your list of amendments?
12            MS. MARQUEZ:  The list of amendments talks
13  about the amendment to the administrative guide,
14  provisions to the administrative guide.
15            THE COURT:  I'm completely lost.
16            MS. MARQUEZ:  Okay.
17            THE COURT:  The administrative guide has its
18  little procedures in it.  At the top of the page it says
19  date effective.  Okay?  So that provides you some
20  information about when that thing came into effect.
21  That is not a list of amendments.  That's the current
22  guide.  Are you with me so far?
23            MS. MARQUEZ:  Yes.
24            THE COURT:  Then I thought you told me there's
25  some separate thing is which a list of --
```

```
 1                         PROCEEDINGS                 22

 2             MS. MARQUEZ:  Correct.

 3             THE COURT:  -- amendments which Mr. Scutero

 4   thinks is incomplete and which you were told otherwise,

 5   okay.

 6             MS. MARQUEZ:  Yes, that's correct.

 7             THE COURT:  So what are you proposing?  What is

 8   it your proposing as to those lists of amendments?

 9             MS. MARQUEZ:  So I think --

10             (interposing)

11             MS. MARQUEZ:  I think the Court --

12             THE COURT:  Have you seen – I don't think I

13   understand.  Have you seen this list of amendments that

14   you're talking about?  Can you say these amendments have

15   occurred to specific things and we would like the prior

16   version and it's some reasonable number?

17             MS. MARQUEZ:  Yes, we cited in footnote 2, or

18   footnote 3, excuse me, and we have seen the documents

19   and anything that --

20             THE COURT:  It's not --

21             (interposing)

22             THE COURT:  -- sorry.

23             MS. MARQUEZ:  And so anything that starts with

24   the number, anything that's in the 300 range will refer

25   to an administrative guide section.  So we know that
```

1                          PROCEEDINGS                    23

2   there are administrative guide sections, we don't have

3   the table of contents of the current guide, so I'm not

4   sure if the sections have changed.  Assuming they, you

5   know, they exist as they did back in 2020, then I have a

6   pretty good of what, at least what section it pertains

7   to.  But in any event, we know when the administrative

8   guide was amended.  We have cited this to say, to

9   question, you know, the burden of producing the guide

10  that existed back in 2020 because it doesn't seem like

11  it was amended at all during the time of the protests;

12  only since.

13           And so I think the Court was proposing, you

14  know, a two-part process where we get the administrative

15  guide, we look at all of the sections, we tally up, you

16  know, which sections seem to have been amended, and then

17  follow up again with defendants to get those amendments.

18  But I'm saying this is a shortcut because they already

19  know at the minimum the amendments that are reflected

20  here and the timeline.  And they should --

21           THE COURT:  Okay, I --

22           MS. MARQUEZ:  -- readily produce those --

23           THE COURT:  I clicked on your links.  There's

24  hundreds of amendments.  They apparently amend all the

25  time.  So I'm not sure what you're asking about this

```
 1                        PROCEEDINGS            24
 2  particular listing.
 3            MS. MARQUEZ:  So the majority of the amendments
 4  I would say are from the patrol guide sections, not the
 5  administrative guide.  The patrol guide would be
 6  anything with a 200 range.
 7            THE COURT:  It seems that everything you need
 8  is in your hands.  You're going to get the complete
 9  administrative guide now.  It has the procedures
10  numbers.  There's only going to be five or ten that
11  have, or some reasonable number, that have any relevance
12  to what's going on here.  Okay?  You're going to take
13  those, you can look on this list and see if there are
14  procedures that got changed and what the dates are.  You
15  can look it up by number.  You'll see on the thing
16  itself what date it thinks it was in effect.  And
17  there's going to be some reasonable number.  They can
18  then get you the ones from 2019 or whatever it was.
19  What is the problem with that, Ms. Marquez?
20            MS. MARQUEZ:  Well, we have depositions
21  including one tomorrow that has (indiscernible) very
22  specific issue of policies and when they were amended,
23  and, you know, we have received nothing so far.  I still
24  don't really understand --
25            THE COURT:  I'm not --
```

```
 1                          PROCEEDINGS                  25

 2          MS. MARQUEZ:  -- the burden.

 3          THE COURT:  I'm not saying we should be in a

 4  situation.  The City took way too long to figure out

 5  this problem.  There was insufficient discussion.  It's

 6  ridiculous that I have to be involved at this level of

 7  detail.  I don't blame you.  But we have to solve the

 8  problem.  You're going to get – Mr. Scutero, any problem

 9  with getting the current guide to them today?

10          MR. SCUTERO:  Judge, the only problem is we

11  have to review the guide for privilege, and it is, you

12  know, there are a number of sections within the guide,

13  it's quite --

14          THE COURT:  You have till tomorrow, you have

15  till tomorrow to review it for privilege, and I'll give

16  you a 502(d) order so there's no waiver.  Because this

17  should've happened ages ago.  Whatever request for an

18  extension of that is denied.  All right, I'll issue a

19  502(d) order today saying you're to produce it by

20  tomorrow.  Okay, you're getting it by tomorrow.

21          MS. MARQUEZ:  And the, yeah, I mean I still

22  plan on holding open the deposition to the extent that

23  any prior revision --

24          (interposing)

25          THE COURT:  -- if there's something that comes
```

```
 1                        PROCEEDINGS                 26
 2   up that you could've asked at the deposition and they
 3   failed to do it, come back to me instantly if they won't
 4   agree to reproduce the person.
 5          MS. MARQUEZ:  The other thing I'd ask is
 6   instead of just saying tomorrow, if we could get it
 7   tomorrow by 9 a.m.  The deposition starts at 9:30.  I
 8   mean I'll do my best to review it, but --
 9          THE COURT:  Well, they're the ones that have
10   the incentive to get it to you beforehand because
11   they're the ones who're going to have to bring back the
12   witness if it gets screwed up, and I promise to, if a
13   witness has to be brought up because of this delay, this
14   really is the City's fault.  They took way too long on
15   this.  So I will be happy to figure out a way to make
16   you whole if there's a way to do it.
17          MR. SCUTERO:  Judge --
18          THE COURT:  I'm going to order them to produce
19   it tomorrow, and if they, you know, if they want to do
20   it by 9:30, that'll solve this problem for them.  Ms.
21   Marquez, anything else?  I'll give you a chance, Mr.
22   Scutero.  Anything else you want to say before I hear
23   from Scutero?
24          MS. MARQUEZ:  Yeah, I will do my best, I'll be
25   taking a deposition at 9:30, so I won't be able to
```

```
 1                        PROCEEDINGS                   27

 2   review a document produced at 9:30, but especially if

 3   it's as lengthy as they're saying, but --

 4           THE COURT:  Yeah, so, I mean getting it by 9:30

 5   is not going to matter to you anyway.

 6           MS. MARQUEZ:  Yeah, but I mean I'll try my

 7   best, I still think that I'll have to come back to the

 8   Court about this.

 9           THE COURT:  All right, well, maybe they'll

10   agree.  Don't assume that you have to come to me.  Mr.

11   Scutero, go ahead.

12           MR. SCUTERO:  Judge, thank you.  I just wanted

13   to flag for the Court with respect to the deposition

14   that counsel is referencing for tomorrow, we had brought

15   to counsel, to the plaintiffs' attention that our

16   request to reschedule that deposition because of, you

17   know, tied to this issue, it would be difficult to

18   prepare the witness for the disposition.  We only

19   received a timeframe for the topic that the witness will

20   be testifying to on May 8 from plaintiffs.  And so we

21   were not able to obtain the documents and have the

22   witness speak to the necessary people in order to be

23   properly prepared for the deposition.  And we wanted to

24   avoid another situation that happened in the Canganis

25   (phonetic) deposition.
```

| | |
|---|---|
| 1 | PROCEEDINGS                    28 |
| 2 | And so we requested, we tried to work it out |
| 3 | with plaintiffs to see if they would be willing to |
| 4 | reschedule this deposition to another date, especially |
| 5 | since we had agreed with plaintiffs on another deponent |
| 6 | and extended them the courtesy to reschedule a |
| 7 | deposition.  We informed plaintiff that we would not be |
| 8 | able to appear for the deposition tomorrow. |
| 9 | So, you know, there's a little bit of a I guess |
| 10 | disconnect -- |
| 11 | THE COURT:  Oh, you're not planning to appear |
| 12 | tomorrow? |
| 13 | MR. SCUTERO:  For the deposition, the witness |
| 14 | will not be appearing for a deposition, Judge. |
| 15 | THE COURT:  Oh, Ms. Marquez, were you aware of |
| 16 | that? |
| 17 | MS. MARQUEZ:  So I could say a number of |
| 18 | things.  One, just to the inaccuracy of, you know, the |
| 19 | topics, the topics were laid out quite clearly in many |
| 20 | meet and confers, and that's I think not open any more. |
| 21 | But there is an order at 961 that requires an emergent |
| 22 | situation to adjourn a deposition.  Defendants have not |
| 23 | brought up the administrative guide as any kind of |
| 24 | concern as to preparing this witness.  Rather, they just |
| 25 | said that the counsel preparing him before left a month |

2 ago, and they didn't have enough time to prepare him at

3 all, which didn't sound emergent to us, and they still

4 haven't moved for a protective order, and it's not

5 proper I think to raise it on a call now where it's not

6 been put forth before the Court, and we haven't had a

7 chance to respond --

8          THE COURT:  It sounds like --

9          (interposing)

10          THE COURT:  Sounds like they've unilaterally

11 said they're not producing this person tomorrow, so I'm

12 not quite sure what the, why I'm being involved as if

13 this was emergent.  I mean it's a little bit emergent

14 but not enough for us to start arguing this out now.

15          MR. SCUTERO:  Judge, I wanted to bring it to

16 your attention because it was mentioned in plaintiffs'

17 opposition papers and plaintiff has made a number of

18 representations today about, you know, connecting that

19 deposition to the need for the administrative guide, and

20 I didn't want it to be a surprise to the Court if this

21 becomes an issue later on.  We're still hopeful that

22 plaintiffs will extend us the courtesy to reschedule

23 this deposition, especially because I think it would be

24 best for all parties --

25          THE COURT:  Okay, listen, listen, listen, stop,

```
 1                        PROCEEDINGS               30
 2  stop, stop, stop.  I'm not getting involved in this
 3  deposition.  You're not producing the witness.  You two
 4  should talk it out.  There's too many facts here that
 5  bear on whether the conduct is appropriate or not.  This
 6  is not the place to try to figure it out.  Ms. Marques,
 7  is there anything else you think we need to do today?
 8             MS. MARQUEZ:  No, Your Honor.
 9             THE COURT:  All right, I'm going to issue an
10  order that says the defendants must produce the patrol
11  guide by tomorrow, May 24, the complete current one and
12  that if there's any privileged material in there, the
13  production will not result in any waiver.
14             MS. FITZPATRICK:  I'm sorry, Your Honor, this
15  is Ms. Fitzpatrick.  It's the administrative guide that
16  we're going to produce?
17             THE COURT:  What did I say?
18             MS. FITZPATRICK:  Patrol.
19             THE COURT:  Did I say patrol?  Sorry, I meant
20  administrative guide.  Okay, Mr. Scutero, anything else
21  we need to do today?
22             MR. SCUTERO:  No, Your Honor.
23             THE COURT:  Okay, thank you, everyone, good
24  bye.
25             MR. SCUTERO:  Thank you, Judge.
```

1                            PROCEEDINGS                    31

2              (Whereupon the matter is adjourned.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                                                          32

 2                   C E R T I F I C A T E

 3

 4          I, Carole Ludwig, certify that the foregoing

 5   transcript of proceedings in the United States District

 6   Court, Southern District of New York, In Re: New York

 7   Policing During Summer 2020 Demonstrations, docket

 8   #20cv8924, was prepared using PC-based transcription

 9   software and is a true and accurate record of the

10   proceedings.

11

12

13

14

15   Signature _____ Carole Ludwig ____

16                    CAROLE LUDWIG

17   Date:  May 26, 2023

18

19

20

21

22

23

24

25
```