```
               UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF NEW YORK
------------------------------:

IN RE NEW YORK POLICING DURING: Case No.: 20-cv-08924

SUMMER 2020 DEMONSTRATIONS     :

                               : New York, New York

                               : June 21, 2023

------------------------------: CONFERENCE



                    PROCEEDINGS BEFORE
          THE HONORABLE GABRIEL W. GORENSTEIN
              UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For People of         NYS OFFICE OF THE ATTORNEY
The State of NY:      GENERAL
                      BY: LOIS TERESA SALDANA,ESQ.
                      28 Liberty Street
                      New York, New York 10005


For Julian            NY CIVIL LIBERTIES UNION
Phillips:             BY: VERONICA SALAMA, ESQ.
                      125 Broad Street
                      19th Floor
                      New York, New York 10004


For Kayla             THE ABOUSHI LAW FIRM
Roland:               BY: TAHANIE AHAMD ABOUSHI, ESQ.
                      1441 Broadway - Suite 5036
                      New York, NY 10007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES (Continued)

For City of NY:          NEW YORK CITY LAW DEPARTMENT
                         BY: JOSEPH M. HIRAOKA, Jr, ESQ.
                             JENNY SUE-YA WENG, ESQ.
                             ANOTHONY DISENSO, ESQ.
                         100 Church Street
                         New York, New York 10007

                         NEW YORK CITY POLICE DEPARTMENT
                         BY:  BRIDGET FITZPATRICK, ESQ.
                         One Police Plaza
                         New York, New York 10038


Transcription Service: Marissa Mignano Transcription
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                    THE DEPUTY CLERK:  In the matter of In Re:
 2      New York City Policing During Summer 2020
 3      Demonstrations, case number 20-cv-8924, starting
 4      with plaintiff's counsel, please state your
 5      appearance or the record.
 6                    MS. SALDANA:  Hi.  Good morning,
 7      Judge Gorenstein.  My name is Lois Saldana, and I'll
 8      be speaking on behalf of the plaintiffs today.
 9                    THE COURT:  Okay.  Just spell your last
10      name, please.
11                    MS. SALDANA:  Sure.  S-A-L-D-A-N-A.  And
12      I'm calling from the New York State Attorney
13      General's Office.
14                    THE COURT:  Okay.
15                    MS. SALAMA:  Good morning, Your Honor.
16      This is Veronica Salama from the New York Civil
17      Liberties Union on behalf of the Phillips
18      plaintiffs.
19                    MS. ABOUSHI:  Good morning, Your Honor.
20      Tahanie Aboushi of The Aboushi Law Firm, appearing
21      on behalf of the Roland plaintiffs.
22                    THE COURT:  For defendants?
23                    MR. HIRAOKA:  This is Joseph Hiraoka,
24      H-I-R-A-O-K-A, from the New York City Law Department
25      on behalf of the City of New York, Your Honor.
```

1          MS. WENG:  This is Jenny Weng for the

2    defendants.  Good morning, Your Honor.

3          MS. FITZPATRICK:  Bridget Fitzpatrick from

4    the NYPD Legal Bureau.

5          MR. DISENSO:  Good morning, Your Honor.

6    This is Anthony DiSenso.  I'm an E-discovery counsel

7    for the New York City Law Department.  In my office,

8    I'm also joined by Rob Zamansky.  He's our

9    E-discovery services director.  He's not an

10   attorney, but with Your Honor's permission, we'd

11   like to have him available to answer any technical

12   questions regarding the Relativity database and to

13   also use speakerphone when addressing the court.

14         THE COURT:  That's fine.

15         Okay.  So we're here based on the most

16   recent letters, 1055 and 1066.  I want to try to

17   focus on this, Ms. Saldana, in terms of what the

18   Court should be asking the City to do to get you

19   documents that you don't think you have and are

20   entitled to, rather than thinking about this in

21   terms of a, quote, audit or anything else.

22         I'd like to figure out -- it seems to me

23   that there were deficiencies in production, and I'd

24   like to figure out what we can do to get you

25   documents relating to the IAB investigations, cases,

```
 1   and to do it in a reasonable manner.  Any issues
 2   with sanctions we'll deal with after we solve the
 3   problem, and you're welcome to make a new
 4   application.
 5          Right now, I want to try to solve the
 6   problem.  I mean, we're at a point -- when we
 7   originally went down this road, you know, this was
 8   months ago.  I issued an order that tried to get
 9   things to you for specific depositions based on
10   names of specific people.  We're obviously at the
11   end of that particular road.  That doesn't mean
12   you're not entitled to IAB documents in order to
13   figure out how protest incidents were treated.
14          And I guess the problem with your proposal
15   from the City's point of view is that it's not --
16   you know, I appreciate that you are trying to figure
17   out in your proposal a way to do this efficiently,
18   and that is not going to be unduly burdensome, but
19   the City is saying that what you are assuming in
20   this is not correct.  In other words, for example,
21   that there's some record of every IAB record that
22   was ever requested in the litigation and that -- you
23   know, how you can look for protest-related matters.
24          So I think we need to -- I'm a little bit
25   at a loss because I'd like to figure out a way to
```

1    make sure you get the documents related to these

2    matters, but I also want to do it in a way that is

3    rational in terms of the burden it's going to put on

4    the City.  If you have any ideas that, having read

5    the City's letter or maybe there's things you want

6    to ask the City now, we seem to have people

7    available to talk about it.  I'm happy to use this

8    as an opportunity to do that.

9         MS. SALDANA:  Thank you, Your Honor.  We

10   appreciate your time today.  So I think that the big

11   picture is that plaintiffs have not been given any

12   sort of reassurance that the prior productions are

13   complete, and the City has produced files related to

14   the ten different log numbers that we identified for

15   them.  But based on our analysis, at least half of

16   those documents are new to us.  So we agree that the

17   production remains incomplete.

18        Now, plaintiffs are strongly prejudiced in

19   it because the defendants are in the best position

20   to know how to go about in making sure that their

21   production is complete.  The process that we

22   identified in our letter with defendants compiling

23   the log and case numbers of all protest-related IAB

24   files, I understand your judge's point.  There's no

25   master list.

```
 1              But we have spoken with Lieutenant Anthony
 2   Francione from the NYPD in one of our prior meet and
 3   confers.  We have also taken Rule 30(b)(6) testimony
 4   of Captain Foster.  And our understanding is that
 5   the protest-related IAB cases were tagged as protest
 6   related.  Some of that language could have been
 7   varied as simply as protest.  But the instruction at
 8   the time in 2020 was, as IAB investigators were
 9   doing their work, to tag their case files.
10              So we also understand they're able to run
11   that keyword search.  We also understand they're
12   able to do a search by officer subject -- I'm
13   sorry -- subject officer.  They're able to do a
14   search by year.  And it's sort of -- plaintiffs'
15   claims that the City has really not provided any
16   sort of good faith efforts to at least do a
17   reasonable check based on this capability.
18              On top of that, as the letter noted, once
19   defendants have compiled this list of
20   protest-related IAB files based on these searches,
21   if they were to produce the investigative worksheets
22   which outline exactly what steps each investigator
23   did to investigate the incidents, then plaintiffs
24   can review that and highlight the relevant pieces of
25   evidence that we think --
```

```
 1                  THE COURT:  I'd like to do this one step at
 2       a time.
 3                  MS. SALDANA:  Okay.
 4                  THE COURT:  So you've jumped to your step
 5       two of your proposal; am I right?
 6                  MS. SALDANA:  Yes.
 7                  THE COURT:  Okay.  We haven't gotten past
 8       step one yet.
 9                  MS. SALDANA:  Okay.
10                  THE COURT:  So let's try to figure out step
11       one, because I'm sure you read the other side's
12       letter, and, as you know, they deny the assumptions
13       that you're making in step one.  For example, just
14       to give an obvious one, that each time the NYPD
15       searched for a record, it was memorialized in a
16       written memorandum.
17                  Did you read their letter on this question?
18                  MS. SALDANA:  Yes, Your Honor.  But my
19       assumption, though -- my points are based on what
20       they told us in prior meet and confers on how their
21       system is organized and the sort of keyword searches
22       and other searches they're able to do.
23                  THE COURT:  Okay.  So we can skip that.
24       Sounds like you're agreeing that number sub two of
25       number one is not really an option.  So now you've
```

1    just moved on to, I guess, number three as saying

2    the keyword search.  Is that -- I need you to help

3    me to find a solution to this.  And if there's some

4    question you want to ask Ms. Fitzpatrick on this,

5    that's absolutely fine.

6            But right now, in order to do what you

7    want, I have to be able to make a factual finding as

8    to what the burden is and what the appropriate -- a

9    factual finding to what the real effect of my order

10   would be.  So you need to grapple with what they've

11   said, and if you think that they're wrong, you need

12   to tell me how you know they're wrong.  And if you

13   want to ask Ms. Fitzpatrick a question, tell me what

14   it is.  But your assumptions in paragraph one are

15   not accepted, and I don't have a basis for accepting

16   them.

17           MS. SALDANA:  So I guess I don't understand

18   from the City why exactly they're not able to

19   compile this list of protest-related IAB files.  I

20   mean, if the issue that the defendants have is that

21   they're not able to make a check of whether these

22   documents have already been produced, and in the

23   first instance, they can just make a production and

24   plaintiffs will endeavor to review that production,

25   I guess I really just don't understand why they're

1   not able to do that.

2         Maybe if Ms. Fitzpatrick or someone on the

3   defendants' side could just explain why their

4   internal database, which is able to run keyword

5   searches and other term searches to identify the

6   universe, why that is not something that they could

7   do at this stage of the litigation.

8         THE COURT:  Okay.  So, I mean, this came up

9   in prior submissions.  I assume you folks remember

10  it much better than I do.  But now this is the

11  question of whether you can sort of look up the

12  keyword "protest" in the database to come up with, I

13  guess, log numbers as to IAB investigations

14  involving protests during the relevant time period.

15        So who would like to answer that question

16  from the defense side?

17        MR. HIRAOKA:  This is Joseph Hiraoka,

18  Your Honor.  If I could just get the ball rolling

19  here.  Basically, what we have here, Your Honor, is

20  that what we've explained to the plaintiffs for some

21  time, and they seem to be under this impression, is

22  that there's this magic bullet that we can press a

23  button and all IAB files can be located.  That is

24  simply not the case.  That is not true for our

25  system here at the Law Department, and it is not

1    true for any system that the NYPD has discussed

2    during the course of this litigation.

3         None of the systems that we have simply are

4    designed, to put it quite simply, to where you can

5    just push a button, and everything will come up.  It

6    has to be done by way of search parameters, search

7    terms, and so forth.  And there's just no way to

8    guarantee, because of the way the systems are set

9    up, that whatever search you make is going to come

10   up with every IAB file that's protest related that

11   is out there.  All right?

12        So that's why when they're saying, you

13   know, Judge, we want them to just produce all the

14   IAB log numbers that they produced before, the Law

15   Department can create a list.  Okay?  But it won't

16   be all inclusive because, as I just explained,

17   there's no way to do that kind of a search.  But we

18   can provide a list.

19        The issue here as to how to solve this

20   problem is that -- I did my own search, just so you

21   know, and I came up with approximately 75 IAB files

22   that are in our system.  The problem will be now, as

23   the plaintiffs say, okay, well, now --

24        THE COURT:  I'm sorry, I don't know what

25   you mean when you say you did a search.  You did a

1    search of what?  What system are you talking about?

2            MR. HIRAOKA:  I did a search of our

3    electronic system, Relativity, where the IAB files

4    are put into --

5            THE COURT:  You're talking about the

6    production that you've already made?

7            MR. HIRAOKA:  Correct, yes.

8            Okay.  So the thing is that the problem

9    will be with this:  When it comes to trying to come

10   to a solution, the plaintiffs are saying we just

11   want the worksheets from those files.  The problem

12   will be is that we're going to have to reobtain all

13   these files from the NYPD in order to get those

14   worksheets.  And that's going to be extremely,

15   extremely cumbersome because even when you did the

16   order regarding the first ten files that we did the

17   last time, it took us a couple of weeks just to get

18   those files, then we had to process them, and then

19   we could turn them over.

20           So if we did that with, say, 75 files, that

21   would take an inordinate amount of time because,

22   like I said, the problem with the plaintiffs'

23   proposal is, one, it's inaccurate.  There is no one

24   master list, and as Captain Foster set forth in her

25   declaration, you can put in protest related as a

1   term, but that's not going to come up with

2   anything -- with everything.  Okay?  You'll get a

3   result, but there's no system on earth that we know

4   of that will bring up every single case, every

5   single IAB log number.  All right?

6          So what I would propose, Your Honor, is,

7   first of all, they already know that they've got the

8   ten files -- the complete copies of the ten files

9   that we've already given them.  Obviously, those

10  were --

11         THE COURT:  But you need to not lose sight

12  of the problem here, which is that that was a

13  reproduction of those ten files, as it were.  And

14  what was determined was that when you were given the

15  actual log numbers, you came up with more material

16  than you originally produced.  So I've never heard

17  an explanation, at least not one that I understand,

18  as to why that happened.  And in the absence of one,

19  it seems like there's a problem that has to be

20  solved.

21         MR. HIRAOKA:  Well, with respect to the ten

22  files that they gave to us, all right, that was

23  not -- obviously not a random sampling.  I'm sure

24  there were ten files where they knew there was going

25  to be a problem.  So we don't know, you know, if we

1    did a check of every single file, whether the
2    complete files would be -- you know, how many of
3    those files would have the complete files included
4    with them when we made that production.
5            With respect to, you know, why there were
6    partial files that were turned over before,
7    Your Honor, the best that I can surmise here is that
8    because of the amount of discovery demands that are
9    being made and the amount of deadlines that are
10   being made, what I can see is that, in order to
11   comply with the Court's prior orders, that portions
12   of files, as they came in, were being produced.
13           And perhaps somewhere along the line, with
14   respect to some of the files, not necessarily all of
15   them, maybe there wasn't a follow-up to get the
16   entire file.  So that would be my best explanation
17   as to why there are only portions of the files that
18   were produced.
19           Another thing is this, Your Honor, is that
20   because of the breadth of the discovery demands that
21   were made, for example, they could have been making
22   a demand for BW -- body cam footage.  We do a search
23   for body cam footage that relates to a particular
24   IAB file.  That body cam footage was turned over,
25   and in our system, it'll come up as being related to

1    IAB File 1234, although that doesn't mean that the

2    entire file was turned over.

3          So that's why I think, in a lot of cases,

4    because of the breadth of the demands, because of

5    the deadlines, portions of files were handed over in

6    part.  However, when complete files of certain IAB

7    files were produced or were provided to us by the

8    NYPD, those files were handed over in their

9    entirety.  Unfortunately, based on what we have

10   right now, because of the limitations of our search

11   capability, we're not going to be able to find out

12   exactly which files the entire files were turned

13   over.

14         THE COURT:  Okay.  Well, you've confirmed

15   what I thought, which is that the systematic search

16   was not done at any point and is represented by the

17   fact that, in these ten files, there were large

18   gaps.  These ten -- I should say these log numbers,

19   there were gaps in what was produced.  So I don't

20   have a lot of sympathy with the thought that, well,

21   you're completely done now, and there's nothing you

22   should do to try to cure this problem.

23         So we need to figure out a way to have you

24   do something reasonable to make sure that they have

25   a production that you were supposed to have done a

1    year and a half ago, essentially.

2             MR. HIRAOKA:  Exactly.  And -- I'm sorry.

3    Go ahead.

4             THE COURT:  No, go ahead.

5             MR. HIRAOKA:  Okay.  No, Your Honor, I was

6    just giving you an explanation to your question.  My

7    position is not that, oh, okay, we're done.  So

8    that's all there is to it.  What I'm saying is this,

9    is that what you did the last time, I think, was

10   very reasonable, is that you said, okay, here's a

11   sampling of ten files.  Do your check, and if your

12   check shows that the entire file wasn't turned over,

13   turn it over, which is what we did.  And we've been

14   doing that throughout the course of this litigation

15   as well.

16            With respect to coming to a solution to

17   this particular problem, like I said, by my

18   estimation, there are approximately 75 IAB files.

19   What I would recommend so we can get plaintiffs at

20   least the vast majority or the majority of what

21   they're entitled to is perhaps -- and this is what

22   we suggested also during the prior meet and confers,

23   is that, look, why don't you give us a listing of

24   the files that you're particularly concerned with.

25   Maybe your ten files that you find are most

1     beneficial to your case.

2              Because, obviously, they're not going to be

3     that interested in cases that may be detrimental to

4     their case.  They're going to want the files that

5     are most beneficial to the prosecution of their

6     case.  So perhaps what we could do is if the Court

7     could order the plaintiffs to say, all right,

8     plaintiffs, choose your ten best files, the ones

9     that you feel are the most beneficial to your case,

10    give those log numbers to the City, and then the

11    City will turn over the worksheets for those files.

12             Because we already know they at least have

13    ten files, ten complete files.  If you do another

14    ten, and by my calculation, that would be more than

15    a third of the entire universe of IAB files that

16    have been produced, that, I think, would be a very,

17    very beneficial solution to everybody.  That way,

18    the plaintiffs will have the complete files of their

19    ten most detrimental cases that they have against

20    the City, and it's something that the City would be

21    able to do in a relatively quick turnaround time,

22    maybe in about three weeks.

23             But if Your Honor is inclined to say we

24    have to turn over all 75 files again, you know, it

25    can be done, but that's just going to take an

```
 1    inordinate amount of time.  So my proposal, like I
 2    said -- I don't want to just keep rehashing it -- is
 3    perhaps the Court could say, plaintiffs, you list
 4    your ten most detrimental files that you have.
 5    City, you provide the worksheets for those files on
 6    a rolling basis by a date certain.
 7              That way, they have what they need for
 8    their ten best files, and it's something that would
 9    be manageable for the City to do in a relatively
10    manageable period of time.
11              THE COURT:  All right.  Let me ask a
12    question, which is I thought the worksheets give an
13    indication of what documents are associated with the
14    particular log number and any investigations that
15    ever happened.  At least that's the way the
16    plaintiffs presented the worksheets to me.
17              Is that the plaintiffs' understanding of
18    the worksheets, Ms. Saldana?
19              MS. SALDANA:  My understanding of the
20    worksheets is that they list the investigative steps
21    that the investigator took, yes.
22              THE COURT:  But just steps?  They don't
23    give a hint as to what documents are there?
24              MS. SALDANA:  I've seen worksheets that
25    say, you know --
```

```
 1              THE COURT:  Actually, in your letter, you
 2    say the worksheets provide a comprehensive list of
 3    documents.
 4              MS. SALDANA:  Right.
 5              THE COURT:  Or you seem to think that.
 6              MS. SALDANA:  Right.  So the worksheets
 7    might reference other pieces of evidence, but they
 8    don't necessarily come with all those attachments.
 9    But I guess what I'm concerned about is Mr. Hiraoka
10    has essentially admitted that there's never been a
11    systematic search, and now he's asking plaintiffs to
12    come up with IAB numbers.
13              THE COURT:  Yeah, yeah, no, we're not there
14    yet.  I'm going to give you a chance to answer that.
15    That proposal is not making sense to me, either.
16    But I'm trying to understand, once we figure out a
17    log number, I understand that there is a burden,
18    Mr. Hiraoka, in getting a complete file, videos,
19    paper, whatever it is.
20              But what if, as an initial step, you just
21    got these worksheets?  What's the burden in that?
22              MR. HIRAOKA:  That would still be a burden
23    because I don't know of any way where the NYPD can
24    just separate out worksheets.  So, in essence, what
25    we're going to have to do is just get the entire
```

```
1    file again.
2               THE COURT:  So from your point of view,
3    there's no particular benefit to just doing a
4    worksheet step.
5               MR. HIRAOKA:  No, not --
6               THE COURT:  Do you want to confer with your
7    colleagues on this, or are you confident?
8               MR. HIRAOKA:  Maybe.
9               Bridget, do you have any thoughts on that?
10              MS. FITZPATRICK:  I apologize.  I was on
11   mute.
12              I'm sorry.  With regards to what exactly,
13   again?  I apologize.  I was mildly distracted.
14              MR. HIRAOKA:  You're fine.
15              THE COURT:  No, no, let me ask.  The issue
16   is we're being told by Mr. Hiraoka that there is --
17   assuming we got a list of what we view as a
18   comprehensive list of IAB numbers, he thinks it's
19   75.  I'm not sure what the plaintiffs' view is or if
20   they even think that's comprehensive, but let's
21   pretend that that was the universe.  We're being
22   told that there's a burden in copying each of those
23   75 files and reproducing them.
24              And I guess my question was:  Would there
25   be any less of a burden to just starting out by
```

1   doing the worksheets?  Could that be done very

2   quickly?  I mean, I guess, in my mind -- and I have

3   no idea what these files look like, but in my mind,

4   there's some stack of paper, perhaps, that's not

5   computerized, and that on the top of this paper is a

6   two-page worksheet, and that's a heck of a lot

7   easier to copy, scan, get over to you than the

8   entire file.  If I'm wrong on that, tell me.

9           MS. FITZPATRICK:  So I think what is being

10  referred to is, like, the case index, which is the

11  cover page of the file, which basically is, like, a

12  table of contents for what's in the file.  And then

13  there are worksheets that are attached to that case

14  index, and in those worksheets, there are

15  attachments that are referenced in the worksheets

16  and, for instance, like a body-worn camera or some

17  type of report.

18          THE COURT:  Okay.  So is it easier to just

19  produce the --

20          MS. FITZPATRICK:  And that's essentially

21  how the files are created.

22          THE COURT:  Is it easier to produce the

23  index and worksheets than it is the entire file?

24          MS. FITZPATRICK:  Well, the issue,

25  Your Honor, is that the information lives in two

23

1    different databases, and the problem comes in with

2    regards to levels of access in those different

3    databases.  So, as a for instance, there's a

4    database that's ICMT, which has files that are

5    related to cases that were investigated by

6    investigatory units, and the Civil Litigation Unit

7    has access to those files, but can only actually

8    print them to a PDF and then actually have to go

9    back in and burn each attachment.

10          With regards to cases that were

11   investigated by the Internal Affairs Bureau, that

12   would be a request to the Internal Affairs Records

13   Officer.  And there is an extra added layer

14   currently with regards to getting files from the

15   Internal Affairs Bureau because there's a new

16   administration, and they're requiring a lot more

17   stricter handle on things that are -- the

18   information flow, what's being requested from IAB

19   and what's being put out the door.

20          So that might add on some of the time for

21   us to be able to answer this out.

22          THE COURT:  I'm not sure I heard or maybe I

23   didn't understand the answer to my question, which

24   has to do with specifically worksheets.  I mean, if

25   the answer is there's no difference, then I'd like

1   to know that.  But if the answer is there's a

2   difference, I'd like to know.  And if the answer is

3   you don't know, then I'd like to know that too and

4   perhaps get the person who knows.

5         MS. FITZPATRICK:  A difference between the

6   case index and the worksheets, Your Honor?  I'm

7   sorry.

8         THE COURT:  No, a difference between the

9   case index with the worksheets or the entire case

10  file.

11        MS. FITZPATRICK:  So the entire case file

12  would be the case index and all the worksheets and

13  the attachments.  That's the entire file.

14        THE COURT:  Well, the attachments --

15        MS. FITZPATRICK:  I mean, if this is a

16  question of what's quicker --

17        THE COURT:  Ms. Fitzpatrick?

18        MS. FITZPATRICK:  I'm sorry.

19        THE COURT:  Ms. Fitzpatrick, I assumed that

20  the attachments were the problem, that they were

21  many multiples the size of an index and worksheets,

22  but maybe I'm wrong.

23        MS. FITZPATRICK:  Well, the attachments can

24  be the problem, Your Honor, depending upon the size

25  of them.  You know, if it's a video, the file might

1    be large, so that could be an issue.  And the way

2    it's set up for us to be able to access cases that

3    are in the one database, which is ICMT, would

4    require us printing the documents to a PDF and then

5    actually burning each attachment to a disk for

6    production.  So that's a bit time consuming.  That

7    can be a bit time consuming.

8            Alternatively, if you would prefer just the

9    worksheets, if that's what you're asking for, that

10   would be less than actually the worksheets and the

11   attachments.

12           THE COURT:  Which has the index?  The index

13   lists all the documents?

14           MS. FITZPATRICK:  Yes, the case index lists

15   all the documents that are in the actual file.  The

16   worksheets --

17           THE COURT:  Go ahead.

18           MS. FITZPATRICK:  It's the worksheets.  So

19   basically how it works, Your Honor, the system is a

20   paper-based system, and it's based upon how the

21   files were organized prior to us going digital.  And

22   the worksheets are very similar to if Your Honor is

23   familiar with what we refer to here in the

24   Department as DD5s.  So, essentially, it

25   memorializes the steps that the investigator took at

1    a particular juncture of the investigation and then

2    also any attachment that may relate to that

3    particular juncture of the investigation.

4            For example, I looked at the body-worn

5    camera footage, attached is the body-worn camera

6    footage on this worksheet.

7            THE COURT:  Are these written, or are they

8    digital?

9            MS. FITZPATRICK:  They're digital.

10           MS. SALDANA:  Judge Gorenstein, can I --

11           THE COURT:  Hold on, hold on.

12           MS. SALDANA:  I'm sorry.  Okay.

13           THE COURT:  Hold on.

14           And all the attachments are digital too?

15           MS. FITZPATRICK:  Yes.  Well, I mean, for

16   those that are -- yes.  And then there might be

17   particular documents that would be, like, a PDF

18   that's attached to the worksheet because it would be

19   something like a report that was generated as a

20   result of the particular incident.  For example, if

21   somebody was arrested, you would review the arrest

22   report, and then, obviously, you would add that as a

23   PDF to the worksheet, and then it would be

24   considered an attachment.

25           THE COURT:  It sounds like there's not that

```
 1    much -- you know, I imagine this is paper, and
 2    obviously now I've just been disabused of that.  So
 3    that's great.  Now I'm trying to understand what the
 4    burden is of taking 75 log numbers and getting the
 5    digital production.
 6            What is the problem if you actually have
 7    the log numbers and you go to the ICMS people and
 8    then you do the ICMT thing yourself?  I'm trying to
 9    understand what the burden is.
10            MR. HIRAOKA:  Well, the burden, Your Honor,
11    is that there's just no simple way.  As
12    Ms. Fitzpatrick has been explaining, you can't
13    necessarily just press a button, and everything just
14    pops up automatically.  It's a long process in order
15    to get --
16            THE COURT:  Have you done this?  Have you
17    done it?
18            MR. HIRAOKA:  Oh, sure.  I mean, yeah, I
19    have done that before.  And it's never a process
20    where you can just snap your fingers.
21            THE COURT:  Do you do it, or is
22    Ms. Fitzpatrick going to do it?
23            MR. HIRAOKA:  Well, no, Ms. Fitzpatrick is
24    not with the CLU unit anymore.  It's just that she's
25    the one who's most familiar with this because she
```

```
 1    was there for several years.  She's in another unit
 2    right now, but no.
 3              THE COURT:  Would her former unit do it, or
 4    would you be doing it?
 5              MR. HIRAOKA:  No, it would be her former
 6    unit.  It would be the NYPD CLU unit.
 7              THE COURT:  So then let me ask
 8    Ms. Fitzpatrick.  I'd like to hear it from
 9    Ms. Fitzpatrick, then.
10              Tell me, Ms. Fitzpatrick, what the burden
11    is.  What is it that makes it burdensome?  Because I
12    read the affidavit on this, and it was quite unclear
13    as to the time problem.  So try it again.
14              MS. FITZPATRICK:  Okay.  Like I said,
15    there's two different databases.
16              THE COURT:  Let's do them one at a time.  I
17    gather ICMS involves somebody else.  Let's skip that
18    for the moment.
19              MS. FITZPATRICK:  Okay.  So ICMT involves
20    the Civil Litigation Unit.  And, as I said, to go
21    and get the files, it would require saving each
22    individual worksheet as a PDF, like printing it as a
23    PDF and then going back in and going through
24    manually and looking at the worksheets for
25    attachments and then saving those attachments to a
```

```
1    disk.  So that's really where it comes in.  It's --
2    what's the word I'm looking for?  It's time
3    consuming in the sense of the way our level of
4    access is set up in ICMT, that that's the only way
5    that we can produce the files.  So you have to go
6    through each worksheet.
7            THE COURT:  Is there someone else who can
8    produce it all at once?
9            MS. FITZPATRICK:  I'm not sure, Your Honor.
10   I don't know for certain.  I mean, I do know that
11   the ICMT system feeds into the IAB database.  I
12   don't know who at IAB would be able to access those
13   files for us in a way that would be less time
14   consuming.  I'd have to find that out for you.
15           THE COURT:  What about -- and the ICMS is
16   not even something you do yourself?  You rely on
17   someone at this internal --
18           MS. FITZPATRICK:  Correct.  Yes,
19   Your Honor.  The ICMS is with IAB.
20           THE COURT:  And are those people going to
21   understand whether they have this other better
22   access to ICMT that I'm hoping exists?  Same people.
23           MS. FITZPATRICK:  I believe
24   Lieutenant Francione would be able to shed more
25   light upon that, and I can ask him who in IAB would
```

1    be able to do that and if it's feasible.  I don't

2    know if it is, and I also don't know what their

3    manpower situation is currently.  So those would be

4    two questions that I'd have to find answers to

5    before I could say definitively if it would be

6    quicker.

7            MS. SALDANA:  And, Judge Gorenstein, just

8    since Ms. Fitzpatrick mentioned

9    Lieutenant Francione, he had told us that everything

10   contained in the ICMT copies back to ICMS.  So it

11   could be -- and maybe this is a question for him --

12   that it might be just easier just to grab documents

13   from the ICMS system.

14           THE COURT:  Yeah, I mean, I'm not sure why

15   we don't have all the information here, but I think

16   the City needs to understand -- it's my presumption

17   that this can be done easily.  And if you want to

18   disabuse me of that, I need someone who's going to

19   do it that has complete knowledge of the system and

20   is going to be able to tell me that under oath and

21   maybe at a hearing.  So I'm not really happy with

22   the level of information that's available to the

23   plaintiffs.

24           I think step one, is Francione around, as

25   far as anyone knows, today and tomorrow?

```
1              MR. HIRAOKA:  I don't know, Your Honor.
2              THE COURT:  Ms. Fitzpatrick, any knowledge?
3              MS. FITZPATRICK:  I know that he was in the
4    office yesterday, Your Honor.  I do not know if he's
5    in the office today.
6              THE COURT:  Okay.  So we're going to start
7    by having a meeting with the Lieutenant and the
8    plaintiff and Ms. Saldana, and the burden is going
9    to be on you.  I'm ready to order you just to
10   reproduce all of this because I have not been
11   convinced of the burden.  So if you want to disabuse
12   me of that notion, start by trying to disabuse
13   Ms. Saldana.  I'm sure she'll be perfectly
14   reasonable, and if there's a problem, I'd like to
15   see the two of you try to figure out a solution.
16             So that meeting should happen, if not
17   today, tomorrow.  And if it can't, then someone
18   should come back to me unless the plaintiffs agree
19   to whatever date you guys come up with.
20             MS. FITZPATRICK:  Your Honor, there's just
21   one thing that I --
22             THE COURT:  Just understand that the
23   default is going to be you just reproduce this.  I
24   need you to show me that the fact that the people in
25   IAB don't want to let you into their system, that's
```

```
 1    fine, but there's someone there who's doing it, and
 2    that's the person that needs to be dealt with, and
 3    that's the person who's going to have to give the
 4    proof, not someone who's talked to that person.
 5              Go ahead.  Someone said something.
 6              MS. FITZPATRICK:  There was just one thing
 7    I wanted to make clear, Your Honor, and I know this
 8    probably doesn't have much to do with what we're
 9    currently discussing.  With regards to the ability
10    to search in the systems, you cannot just -- and I
11    want this to be made abundantly clear --
12              THE COURT:  Well, we haven't even gotten to
13    the search thing.  Hold on.  And I was about to get
14    to that.
15              MS. FITZPATRICK:  Okay.
16              THE COURT:  Right now, we're just dealing
17    with the fact that, apparently, there's 75 IAB -- I
18    don't know if it's log numbers or case numbers that
19    everyone knows are out there, and the question is
20    whether there's a full production.  We took ten of
21    those.  We found out there wasn't a full production.
22    So Mr. Hiraoka's solution is say, oh, give him
23    another ten.  Somehow that adds up to 33 percent.
24    I'm not sure why, but it's not 75.
25              So right now, I assume someone can come up
```

```
 1   with those 75 numbers.  I don't know if it's
 2   Mr. Hiraoka or the plaintiffs.
 3            Ms. Saldana, do you know what these 75
 4   files numbers are that Mr. Hiraoka is talking about?
 5            MS. SALDANA:  No, because the plaintiffs
 6   know the universe of incidents that are referenced
 7   in their complaint, for instance, that are of
 8   interest to us.  But those incidents are not
 9   necessarily -- I mean, they are attached to IAB
10   numbers, but that information is known to
11   defendants, not to plaintiffs.  Unless, you know,
12   they're -- yeah.
13            THE COURT:  Mr. Hiraoka, where did the 75
14   come from, and do you have this list somewhere?
15            MR. HIRAOKA:  Your Honor, who are you
16   addressing?
17            THE COURT:  You.
18            MR. HIRAOKA:  Oh, I'm sorry.  I was
19   talking.
20            What were you saying?  What was your
21   question?
22            THE COURT:  I said you talked about these
23   75 -- I think the word you used was IAB files.
24            Is that log numbers, case numbers, and how
25   did you get it?
```

 1                 MR. HIRAOKA:  It's a combination of both,
 2      Your Honor, and I'm not an expert in Relativity.
 3      And, again, I want to make it clear that the 75
 4      files that I could locate -- the approximate 75
 5      files that I could locate was just a real
 6      guesstimate.  There could be a lot more.  I don't
 7      know.  All right?
 8                 THE COURT:  How did you do it?
 9                 MR. HIRAOKA:  Well, like I said, I'm not
10      that familiar with Relativity, but you can go into
11      Relativity, and you can type in search terms like
12      IAB log number, IAB case number, and then you get a
13      result.  And the thing is that it's not how you
14      would probably picture it in your mind, where you
15      have, like, okay, here's an IAB file number, here's
16      an IAB file number.
17                 They give you a list of documents, and then
18      you have to go into each document to figure out, you
19      know, how many -- to figure out what that document
20      includes.  And sometimes it could just be a video.
21      Sometimes it could just be a photograph.  It could
22      be a newspaper article, or it could actually be an
23      IAB file.
24                 And all I'm saying is that, when I did
25      mine, because I couldn't look at every single one,

```
 1   but with the results that I got with my searches, I
 2   came up with approximately 75 files.  But, again,
 3   that is a guesstimate.  So that should not --
 4           THE COURT:  Ms. Saldana, did you ever try
 5   finding file numbers in the existing production?
 6           MS. SALDANA:  So I guess I'm a little
 7   confused by Mr. Hiraoka's search in Relativity,
 8   because my understanding is that the defendants
 9   would have to do a search on their databases for
10   protest-related incidents.  So Relativity would only
11   have the documents that the attorneys have already
12   collected.
13           THE COURT:  No, I understand that.  I was
14   just wondering if anyone had tried to figure out
15   what IAB logs had already been produced by number.
16   It sounds like there was no systematic list kept.
17   And then Mr. Hiraoka kind of just tried to do a
18   search in the same database that's available to you
19   to figure out whether he could come up with a number
20   of IAB --
21           MS. SALDANA:  Judge Gorenstein --
22           THE COURT:  -- that have been the subject
23   of production.  I'm not saying that that should
24   be --
25           MS. SALDANA:  I'm sorry to interrupt.  I
```

```
 1    just want to make clear that we do not have access
 2    to the same database because we only have access to
 3    the documents that defendants produce, whereas
 4    counsel would have access to documents that
 5    reviewers marked not responsive, for instance, or
 6    reviewers marked privilege.  So his access is much,
 7    much wider than ours.
 8            MR. HIRAOKA:  No, but the thing is that the
 9    only thing that the plaintiffs are concerned with
10    right now is the prior IAB file production.  Those
11    are the IAB files that have been previously
12    produced.  The worksheets from those files, that's
13    what they're asking for now.  And so --
14            MS. SALDANA:  No, that's not --
15            MR. HIRAOKA:  That's --
16            THE COURT:  I understand.  Stop, everyone.
17    You're wrong, Mr. Hiraoka.  They just want it all,
18    whether it's been produced before or not.  So that's
19    the logical flaw in what you just said.  Now, I
20    understand --
21            MR. HIRAOKA:  Your Honor, if I may, no, in
22    their letter, they're specifically referring to the
23    IAB file production, that which has already been
24    produced.
25            THE COURT:  I understand the audit is an
```

```
 1    effort to figure out what happened as part of
 2    production, but there's also the larger problem of
 3    whether it was all produced.
 4            MS. SALDANA:  Right.
 5            THE COURT:  The audit was just a branch
 6    from an original effort to figure out if you guys
 7    did what you were supposed to do.
 8            MR. HIRAOKA:  I understood, Your Honor, but
 9    if you look at Docket Number 1055, they've modified
10    what they're asking for, and they're asking for the
11    worksheets that are in the IAB files that were
12    previously produced.  That is what they're asking
13    for right now.
14            THE COURT:  Well, okay.  That's fine, and
15    maybe if you were willing to do it --
16            MS. SALDANA:  No, Your Honor --
17            THE COURT:  Stop, stop, stop.  I agree that
18    the proposal right now for dealing with the current
19    problem involved looking at worksheets, but they
20    were also wanting you to do a search of your
21    database, so we cannot lose sight of that.  And we
22    haven't even gotten into that issue.
23            So I think this maybe has to be part of the
24    discussion with Lieutenant Francione, but
25    Ms. Fitzpatrick, you know, I feel like we've been
```

```
 1    going over this for months.  There is some
 2    capability, it sounds like, in the system to look
 3    for protests.  There is a capability to add other
 4    variables.  I was specifically told that whenever
 5    the last conference was.  You can limit by date and
 6    so forth.
 7            What would be -- is it really the case --
 8    and maybe if you don't know the answer, we need
 9    someone who knows the answer -- that if you go to
10    this IAB database, I guess it's ICMS, and look up
11    protest and particular dates in 2020, whether you're
12    not going to find IAB log numbers associated with
13    that?  This is a question for Ms. Fitzpatrick.
14            MS. FITZPATRICK:  Sorry, Your Honor.  I was
15    on mute.  This is Ms. Fitzpatrick.
16            So I am currently in the ICMT system.
17            THE COURT:  Well, I'm asking about ICMS.
18            MS. FITZPATRICK:  The search functions are
19    the same.
20            THE COURT:  I thought there was additional
21    search capability if you're someone within IAB.
22            Am I wrong in remembering that I was told
23    that?
24            MS. FITZPATRICK:  I don't recall that,
25    Your Honor.  In my conversations with
```

39

```
 1    Lieutenant Francione where I've gone over what the
 2    search functionality is in ICMT, he told me that
 3    it's essentially the same as in ICMS.
 4            THE COURT:  Ms. Saldana, do you have some
 5    memory of what I'm talking about?  Or maybe I'm
 6    misremembering.
 7            MS. SALDANA:  I'm getting a note from my
 8    colleague that we were told that.
 9            THE COURT:  All right.  Anyway, there's
10    been so much that has happened already on this.  But
11    when --
12            MS. FITZPATRICK:  Your Honor, if I may, I'm
13    sorry.  I think that there's a misunderstanding, and
14    the problem is -- Your Honor, is that there's a
15    misunderstanding about, I think, the vocabulary that
16    we use here in the department and, like, search
17    functionality versus levels of permission.
18            Levels of permission are different from
19    what the actual system allows you to search.  What I
20    mean to say is that there are certain places that I
21    don't have permission to look.  Meaning to say,
22    like, I can see that there's a file in group one,
23    but I'd have to go to somebody who has the ability
24    to get to group one files in order to be able to get
25    that file, which is different from searching.
```

```
 1                    THE COURT:  Let me try to frame it as a big
 2        picture.  If someone wants to find out -- I mean,
 3        this is such a basic question.  If someone wants to
 4        find out what IAB case numbers arose from protests
 5        in a particular time period in 2020, I could have
 6        sworn that there was some sense that, yes, you could
 7        do that as long as you added other search terms.
 8        Now, let's not worry about who's doing it.  Let's
 9        talk about someone with the most direct and deep
10        access possible.
11                    Are they able to do something like that or
12        not?  And if you don't know, who knows, and is it
13        Francione?
14                    MS. FITZPATRICK:  Sorry, Your Honor.  It
15        would be Lieutenant Francione.
16                    THE COURT:  Okay.  So that has to be part
17        of the discussion with Francione.  The City is
18        looking at a very big task coming down the road, and
19        if they want to talk me out of it, I need more
20        detailed information because none of it's making
21        sense to me right now.  I mean, I know that you
22        folks have your own abilities to get things and
23        limitations on your abilities, but that's not proof
24        that someone deeper in the system doesn't have the
25        abilities.
```

```
1              I mean, if someone wants to swear under
2    oath that there's nobody, that the only way to get
3    something out of this file is to, you know, one by
4    one, create PDFs and burn them onto disks, and that
5    there are dozens of documents in each of these
6    things, they're going to have to say that under
7    oath.
8              So it's not what you guys can do.  It's
9    what the person with the most access can do.  I
10   think we just need more information, Ms. Saldana,
11   and I think you need to get it directly from
12   Lieutenant Francione.  And if the defendants are
13   making a case to you, then I would encourage you to
14   figure it out.  And if, in fact, they have this
15   capability, then you need to immediately tell me.
16   We'll regroup this, and I'll order them to do it.
17             MS. SALDANA:  Okay, Your Honor.  So it
18   sounds like plaintiffs should reach out to schedule
19   a meeting for today or tomorrow.
20             THE COURT:  Yeah, it's really defendants.
21   It should be today or tomorrow, and if they can't do
22   it, they should explain to you why.
23             MS. SALDANA:  Okay.  Understood.  Thank
24   you.
25             THE COURT:  I'm happy to restart this as
```

1   quickly as we can.  I'm not going away in the next

2   couple of weeks, so I should be able to restart this

3   quickly.

4          MS. SALDANA:  Great, Your Honor.  We'll get

5   that ball rolling.  We really appreciate your time

6   and attention on this.

7          THE COURT:  All right.  Anything else from

8   defendants we need to do today?

9          MR. HIRAOKA:  No, not today, Your Honor.

10          MS. SALDANA:  I'm sorry.  One question for

11   defendants:  Is there any limitations on

12   Lieutenant Francione's access?

13          MR. HIRAOKA:  I don't have the answer to

14   that.

15          THE COURT:  Yeah.  If there's somebody with

16   better access than Francione, then you have to make

17   that person available to the plaintiffs because you

18   can't hide behind saying, well, only certain people

19   are given access.  I mean, I need to know -- or the

20   plaintiffs need to know who can get it and who can

21   do an efficient search and who can download

22   documents efficiently.  And if there are people who

23   can do that better than Francione, then it has to be

24   that person.

25          MS. SALDANA:  And if defendants can't

1  schedule the meeting by tomorrow, is there anything
2  specific plaintiffs should do?
3          THE COURT:  Yeah, if you can't do this by
4  tomorrow and you can't get the plaintiffs to agree
5  to do it later, I think you need to make an
6  application by the end of the day for an extension
7  explaining exactly what the problem is.
8          MS. SALDANA:  The defendants will make the
9  application by the end of the day tomorrow?
10         THE COURT:  Yeah, yeah, it's defendants'
11 burden.
12         MS. SALDANA:  Okay.
13         THE COURT:  Defendants are ordered to
14 produce the individual with all this knowledge
15 either today or tomorrow.  If they can't do it, they
16 need to make an application today why they can't do
17 it and when they say they have to do it and why.
18         MS. SALDANA:  Okay.  Thank you.
19         THE COURT:  Mr. Hiraoka, do you understand
20 that?
21         MR. HIRAOKA:  Yes.
22         THE COURT:  Okay.  Any other questions from
23 the plaintiffs' side?
24         MS. SALDANA:  No, I think we're all good.
25 Thank you, sir -- Your Honor.

1                 THE COURT:  Okay.  Thank you.  Goodbye.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                    C E R T I F I C A T E

 2

 3        I, Marissa Mignano, certify that the foregoing

 4   transcript of proceedings in the case of

 5   IN RE: NEW YORK CITY POLICING DURING SUMMER 2020

 6   DEMONSTRATIONS, Docket #1:20-cv-08924-CM, was

 7   prepared using digital transcription software and is

 8   a true and accurate record of the proceedings.

 9


10


11   Signature ___Marissa Mignano_____

12                  Marissa Mignano

13

14   Date:       June 28, 2023

15

16

17

18

19

20

21

22

23

24

25
```