UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------:

IN RE NEW YORK POLICING DURING: Case No.: 20-cv-08924

SUMMER 2020 DEMONSTRATIONS     :

                               : New York, New York

                               : May 9, 2023

------------------------------: CONFERENCE


PROCEEDINGS BEFORE

THE HONORABLE GABRIEL W. GORENSTEIN

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

| | |
|---|---|
| For People of<br>The State of NY | NYS Office of the Attorney<br>General<br>BY: Lillian M. Marquez<br>28 Liberty Street<br>New York, New York 10005 |
| For Plf Gray: | WYLIE LAW<br>BY: Wylie Stecklow, Esq.<br>10 Spring Street<br>New York, NY 10012 |
| For Julian<br>Phillips | NY Civil Liberties Union<br>BY: Veronica Salama<br>125 Broad Street<br>19th Floor<br>New York, New York 10004 |


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION - 631.334.1445

APPEARANCES (Continued)

```
For Keith          The Aboushi Law Firm
Clingman:          BY: Tahanie Ahamd Aboushi
                   1441 Broadway - Suite 5036
                   New York, NY 10007


For City of NY     New York City Law Department
                   BY: Joseph Hiraoka
                       Jenny Sue-Ya Weng
                       Rob DiSenso
                   100 Church Street
                   New York, New York 10007
```

PROCEEDINGS

1              THE DEPUTY CLERK:  This is the matter of In
2      Re: New York City Policing During Summer 2020
3      Demonstrations; Case Number: 20-cv-8924.
4              Starting with plaintiffs' counsel, please
5      state your appearance for the record.
6              MS. MARQUEZ:  Good morning, Your Honor.
7      This is Lillian Marquez on behalf of the People of
8      the State of New York.
9              MR. STECKLOW:  Good morning, Your Honor.
10     Wylie Stecklow for the plaintiffs in the Gray
11     matter.
12             MS. SALAMA:  Good morning, Your Honor.
13     Veronica Salama on behalf of the Payne plaintiffs.
14             MS. ABOUSHI:  Good morning, Your Honor.
15     Tahanie Aboushi on behalf of the Roland plaintiffs.
16             THE COURT:  Who's on the line for the
17     defendants?
18             MR. HIRAOKA:  Yes, Your Honor, this is
19     Joseph Hiraoka, H-I-R-A-O-K-A, for the City of New
20     York.
21             MS. WENG:  Jenny Weng, also for the City of
22     New York.  Good morning, Your Honor.
23             MR. DISENSO:  Good morning, Your Honor.
24     This is Anthony DiSenso.  I'm an e-discovery counsel
25     at the New York City Law Department.  And with

PROCEEDINGS

1    Your Honor's permission, I'm joined in my office by

2    Rob Szymanski, who is our e-discovery services

3    director.  Mr. Szymanski is not an attorney, but is

4    here just to help with technical questions as

5    needed.

6              THE COURT:  Okay.  Thank you.

7              All right.  So I'm trying to get the big

8    picture here.  And at this point, all we're trying

9    to solve is the ten IAB numbers and associated files

10   and documents and how we're going to figure out

11   whether they were previously produced in full or

12   not.

13             So that's my view of the big picture.  If

14   I've got that wrong, someone should jump in.

15             Ms. Marquez, is that what we're here for?

16             MS. MARQUEZ:  That's the near term, yes,

17   Your Honor.  And, of course, the later project would

18   be what this informs, which is a potential audit.

19             THE COURT:  Right.  I understand.

20             MS. MARQUEZ:  But this is the project

21   before us right now, yep.

22             THE COURT:  Yes.  Okay.  Yes.  Now, where

23   this leads is another question.  All right.

24             So, in my mind, there were two aspects of

25   this, one was to gather the papers on the ten IAB

PROCEEDINGS

1  numbers, and then the second was to see if they had

2  been produced before or not.  I guess it's water

3  under the bridge as to the process for the

4  gathering.  The City used a process described in its

5  letter.  The plaintiffs said it could have been done

6  in a much simpler way by someone -- based on the

7  conversation they had with someone from IAB as to

8  how they -- that person could access the files

9  himself.

10         But I gather, Ms. Marquez, that's water

11  under the bridge now, right?

12         MS. MARQUEZ:  That's my understanding, that

13  that's been collected and done.  And any question

14  about that process, we could revisit if there's an

15  audit.

16         THE COURT:  Okay.  Mr. Hiraoka, there's

17  nothing left on that, right?  You collected what

18  you're going to collect.

19         MR. HIRAOKA:  Yeah, that's -- that's

20  correct, yes, Your Honor.

21         THE COURT:  Okay.  So, yeah, obviously, if

22  we go down this road again, it seems like the

23  plaintiffs' process is much better, but I don't want

24  to get into that now.  Okay.

25         So, now, all we're trying to do is figure

PROCEEDINGS

1    out -- do a comparison of what you have sitting in
2    front of you right now, Mr. Hiraoka, in some form,
3    or available to you in some form, and what was
4    previously produced.
5            Mr. Hiraoka, is that right?
6            MR. HIRAOKA:  That's correct, Your Honor.
7            THE COURT:  Okay.  So I guess what is
8    confusing me is I -- it seems -- one way to do
9    this -- and the plaintiffs seem to have volunteered
10   for this -- is to simply give them this stuff, and
11   then they can figure out whether they think they've
12   gotten it before.  And that seems like an, actually,
13   really good way of doing it.
14           Are the plaintiffs still volunteering to
15   have that be the process if it's faster?
16           MS. MARQUEZ:  Yes, Your Honor.
17           THE COURT:  Okay.  So what -- I mean, what
18   is the -- what is the impediment then to simply
19   producing those files right now?
20           MR. HIRAOKA:  Right, Your Honor, there's no
21   true actual impediment except for maybe that of a
22   possible time constraint.  But as I said in my
23   letter, yeah, we don't have any objection --
24           THE COURT:  No, no.  What is the time
25   constraint?  What is it you have to do to these

PROCEEDINGS

1   files?

2           MR. HIRAOKA:  Well, the thing --

3           THE COURT:  How complicated is it?

4           MR. HIRAOKA:  Right.  Well, before we turn

5   them over, you know, if we're going to turn over

6   the -- reproduce the full files, what we still have

7   to do is that -- and we're in the process of it

8   right now -- is redacting them to make sure that any

9   personal or sensitive information is, in fact,

10  redacted.  And that's basically where we are right

11  now.  So some of these files --

12          THE COURT:  How many pages are these files?

13          MR. HIRAOKA:  Oh, Judge, they go -- it

14  would go into the -- my estimation, into the

15  thousands of pages because there are -- some of

16  these documents -- there of various sizes.  Some are

17  small, but some have -- you know, the terminology is

18  they have 225 documents to them, and a document

19  contain -- can contain any number of pages within

20  the document.  So -- and some of them have 21

21  documents, some have 225 documents, so it's a wide

22  range.

23          So we're in the process right now -- we've

24  already started this -- of what we call quality

25  controlling them.  We're in the process of redacting

PROCEEDINGS

1    them, you know, sensitive information and so forth.

2    And then after that, then we can provide them to the

3    plaintiffs' attorneys.

4            THE COURT:  Well, I -- you know, I just --

5    I have no sense of -- you know, the affidavit

6    doesn't really address these issues, and it's devoid

7    of any times.  You know, I have no idea how long it

8    took to do any of this stuff.  I don't know -- I

9    mean, I -- you know, sometimes you can look -- you

10   can see a document of 100 pages, maybe, or a

11   particular type, and you know already that there's

12   going to be nothing in it that needs redacting, and

13   sometimes you can't tell that.

14           Ms. Marquez, I'm -- do you have any help

15   that you can give me as to what I can order on this

16   front?  Or do you think it's going to be better to

17   go the other route?

18           MS. MARQUEZ:  I -- my preference would be

19   just to do the process on our end, just to make sure

20   that we're actually getting the documents because,

21   as Your Honor noted, the affidavit has some gaps

22   where I'm unclear as to what exactly is happening on

23   defendants' end in terms of the manual review.  They

24   mentioned a term search.  I don't really know, you

25   know, what defendants are doing to de-dupe, so, you

PROCEEDINGS

1   know, I -- we could possibly offer, you know, that

2   we can make this attorneys' eyes -- these ten logs

3   attorneys' eyes only, you know, for the purpose of

4   this exercise to expedite the process.

5          THE COURT:  Mr. Hiraoka, why can't we just

6   do that?

7          MR. HIRAOKA:  Excuse me, Your Honor.

8   It's -- that is, of course, an option.  But, you

9   know, again, my primary concern is the safety and

10  security of the officers involved.  I don't want --

11  even though it could be an attorneys' eyes only

12  designation and so forth, I would still strongly

13  prefer that we be allowed to redact the personal

14  information and contact information for the various

15  officers for their own safety.  That's something

16  that's very important to the City.  It's something

17  that's very important to me.

18          And as in Ms. Marquez's letter, she said

19  that, you know, she has no problem with them taking

20  over the review if we can do it -- if we can turn

21  them over by May 12th.  And, like I said, we have no

22  problem in having them do that.  I would just say,

23  perhaps, if we could turn them over -- and it won't

24  have to be all at once.  We can do it on a rolling

25  basis.  But if you could give us maybe -- perhaps,

PROCEEDINGS

1    maybe until May 17th to do that, then I would have
2    no problem with that because I -- because, again,
3    Your Honor, my primary concern is safety of the NYPD
4    officers.  That's very, very important to me and to
5    the City, and me personally, especially.
6            MS. MARQUEZ:  And this is Ms. Marquez
7    again, Your Honor.
8            My understanding is that there can -- if
9    the concern is, for instance, telephone numbers or
10   Social Security numbers -- which I don't believe the
11   latter is contained in any of these.  But for phone
12   numbers, there should be an automated way to search,
13   you know, regular patterns of numbers.  So if it
14   were a phone number, it would be 334 -- 3-3-4
15   patterns that can be redacted.  We don't mind if
16   they use that automated redaction technology, which
17   shouldn't, you know, require too much time.
18           THE COURT:  Mr. Hiraoka, are you familiar
19   with this technology?
20           MR. HIRAOKA:  I -- I'm sorry.  No, I'm not
21   aware if we have that sort of -- for -- again,
22   Your Honor, I'm not a tech person, but if we have
23   that sort of text search content capability, we have
24   someone from ED on the line.  Maybe they could speak
25   to that.  But I personally am not aware if we have

PROCEEDINGS

1    that sort of capability.

2             And it's beyond that.  You know, we also --

3    because we also redact the police officer's official

4    photograph as well.  And when it comes to things

5    like -- because we're also interested in protecting

6    the personal information of any complainants as

7    well.  And, you know, they have different numbers --

8    you know, Social Security numbers and so forth.  I

9    personally won't know what those are, so even if we

10   had that capability, I won't be able to type in, you

11   know, a set of numbers to make sure every sequence

12   of numbers that match will be redacted because I

13   won't know the Social Security numbers, for example.

14            THE COURT:  Ms. Marquez, I mean, I have

15   some sympathy with -- especially since it's an

16   electronic form -- with not putting out there a

17   document that could -- that contains the

18   information.  Let me ask you this question -- I

19   mean, I'm prepared, if necessary, to order it be

20   produced by a certain date, either the 17th or

21   something earlier.

22            Would it be of any utility for you to go

23   over to their offices and look through a paper copy

24   of whatever this stuff is, even without the

25   redaction, or look at their computer or a screen

PROCEEDINGS

1   that they would set up, which would give to my mind

2   complete assurance on the privacy issue.  But, you

3   know, I just don't know if you could do anything

4   with that.

5         Ms. Marquez, before I hear from

6   Mr. Hiraoka, I'll just want to hear from you whether

7   there's any point in trying to go down that route.

8         MS. MARQUEZ:  I don't think -- so the part

9   of the efficiency, it would need to happen

10  electronically to do the de-dupe, as I understand

11  it, and so that would have to, you know, be run

12  through Relativity.  So a -- so the -- you know, the

13  manual review or visual review is something we're

14  trying to avoid.  So I'd say that doesn't resolve

15  it.

16        But I would say to the earlier point

17  regarding automated redactions, which is something

18  as -- you know, that is simply -- even available on

19  as simple a software as PDF, Adobe PDF, they have --

20  the City has represented regular -- you know,

21  regularly during meet and confers previously that

22  that is something that they utilize.  And if the --

23  you know, there is a technical person on the line

24  who could confirm that the capability of theirs so

25  that there is no, you know, concern that they could

PROCEEDINGS

1    use that to redact any Social Security numbers.

2    Again, I don't -- I don't believe that is something

3    that's reflected on any of these documents.

4           But, in any event, they could readily

5    redact Social Security numbers, phone numbers.  I

6    don't think photographs are PII, but, again, I --

7    you know, at least the phone numbers and Social

8    Security numbers are something that could be easily

9    redacted by an automated search for number patterns.

10          THE COURT:  Mr. Hiraoka, is Mr. DiSenso or

11   Mr. Szymanski going to have information they can

12   give us?  Or we can -- I can ask them directly.

13          MR. HIRAOKA:  Your Honor, yeah, for that

14   particular question, I -- this is Joe Hiraoka.  You

15   can ask Mr. DiSenso.

16          But I just want to also point out, Your

17   Honor, that it's more than just, you know, phone

18   numbers and so forth.  So even if you have the

19   capability, and even if I know a particular sequence

20   of numbers for any particular complainant, you know,

21   even if they -- we have that capability, there's

22   also other sensitive information that may be in

23   there, such as, you know, medical information,

24   things of that nature.

25          So the text based sort of search, where I

PROCEEDINGS

1    can just, you know, plug in numbers and so forth,
2    while -- even if we had the technology that may help
3    to some degree, there is other information in there
4    that I would not want -- that I would not want
5    revealed, even under an A -- an attorneys' eyes only
6    designation.  So if you have medical information --
7              THE COURT:  All right.  All right.
8              MR. HIRAOKA:  -- it's going to be
9    sensitive.  I wouldn't want to disclose that or
10   divulge that.
11             THE COURT:  So let's -- I'm going to make
12   it --
13             MS. MARQUEZ:  And --
14             THE COURT:  Yes.  Go ahead.
15             MS. MARQUEZ:  Sorry, Your Honor.  Just one
16   clarification.
17             I think what I'm hearing from Mr. Hiraoka
18   is that you need to know the specific numbers in the
19   pattern.  What I'm saying is that it could be any
20   series of numbers so long as it matches a pattern of
21   three numbers, dash three numbers dash four numbers,
22   which would be a phone number, or three dash two
23   dash four to be SSN.  It could be any combination of
24   numbers.  There's no need to know the numbers
25   precisely.  They'll just all be redacted on any

PROCEEDINGS

1   pattern of numbers that fits that formulation, and
2   that's what makes it so nice and simple.
3           THE COURT:  Okay.
4           MR. HIRAOKA:  Okay.  And can I just respond
5   very quickly, Your Honor?
6           THE COURT:  Yep.
7           MR. HIRAOKA:  Okay.  Yeah, so I understand
8   that.  But, you know, even with a particular
9   sequence of numbers, there's also a possibility,
10  like, for example, let's just say I want to -- I
11  want to block out a precinct number, police
12  officer's number, whatever.  There's also a
13  possibility that that may also block a phone number
14  for a complainant, which is what the plaintiffs
15  would be entitled to and what they would want, so --
16          THE COURT:  But that's a -- but that could
17  be solved later.  That's the point.  The point is,
18  we need to -- we need to do this roughly right now
19  for our very limited purpose, which is do a
20  comparison.  If it turns out there's some number
21  improperly blocked, they can come back to you on
22  that.
23          MR. HIRAOKA:  True.
24          THE COURT:  Mr. Hiraoka, our goal is to --
25  our goal -- we have a different goal here right now.

PROCEEDINGS

1          MR. HIRAOKA:  Right, no, and I understand
2     that, Your Honor.  But, like, I'm saying is that, in
3     addition to -- I was just addressing Ms. Marquez's
4     statement about, you know, the ability to predict a
5     sequence of numbers.  Understanding that there's a
6     time constraint here, which is a -- one of the
7     primary concerns of the Court, my primary concern in
8     addition to that as well, in addition to the time
9     constraint -- but is also to make sure that any
10    private information regarding the officers is
11    totally protected.  And, you know, I'm not asking
12    for, like, weeks and weeks and weeks.
      Ms. Marquez --
14         THE COURT:  I understand that.  I thought
15    you were resisting using this system because you
16    thought it would over redact.  Perhaps I
17    misunderstood you.
18         MR. HIRAOKA:  Well, number one, I don't
19    know if we have that capability.  Ms. Marquez says
20    that we've made representations to that in the past.
21    I mean, I have not.  I don't know if others have, so
22    I don't know.  So maybe Mr. DiSenso could speak to
23    that.  But what I'm saying is that, in addition to
24    numbers, I'm also concerned about things like, you
25    know, private medical information as well.  That's

PROCEEDINGS

1    all I'm saying.

2              THE COURT:  I understand.

3              All right.  Let's hear from Mr. DiSenso.

4         MR. DISENSO:  Your Honor --

5              THE COURT:  Mr. DiSenso.

6         MR. DISENSO:  Yes, Your Honor.  This is

7    Mr. DiSenso.  Again, Your Honor, I'm in my office

8    with Mr. Szymanski.  As a result, I am on speaker

9    phone.  I hope that's okay.

10             Just to address Ms. Marquez's point about

11   the pattern redaction.  That's what we call -- and

12   that is the technology that -- the name for the

13   technology, it is called "pattern redaction."  We

14   can use it.  It does need to be QC'd.  Ms. Marquez

15   is correct, that it would essentially identify

16   anything with a pattern, the same pattern, so it

17   wouldn't be number specific.  It would just be any

18   phone number or any -- any pattern of Social

19   Security number with the -- what is a Social

20   Security number, a nine-digit number.

21             However, there are limitations to that.

22   And I just -- I think this is the point that needs

23   to be emphasized with respect to the pattern

24   redaction, as well as the reliance on any kind of

25   hash value de-duplication, is that it is not -- it

PROCEEDINGS

1    is not perfect.

2           With respect to the pattern redaction, it

3    does need to be QC'd, and it's reliant on text being

4    able to be extracted accurately out of a document.

5    That's not always possible depending on how the

6    document is formatted.

7           So those are the only things I would say.

8    It's not something that would allow us to avoid

9    looking at the -- the actual documents to confirm

10   that they were redacted accurately, but it is

11   something that we have used in this case, and we can

12   use it with this project.

13          THE COURT:  All right.  Ms. Marquez,

14   anything else?

15          MS. MARQUEZ:  I guess I don't really have

16   anything else, other than that --

17          THE COURT:  I mean, he's proposed -- he's

18   proposed a deadline of May 17th.

19          MS. MARQUEZ:  Again, I don't really

20   understand, you know, why -- it sounded like the

21   attorney's eyes only concern was if the contact

22   information or Social Security numbers would be

23   divulged.  It's sounding like they can do this

24   pattern redaction.  I haven't heard anything to say

25   that that would take more than a day.

PROCEEDINGS

1          The quality control issue, again, we're
2    okay with over redaction of numbers to get this
3    process moving.  And so if that's, you know, the
4    concern -- I don't know that quality control of the
5    numbers redaction is necessary.  So if the only
6    outstanding concern is medical information, if we
7    could, again, just do the attorneys' eyes only to
8    get this moving, I don't see the need to wait until
9    the 17th to get these documents because, again, now,
10   we -- if it's going to be on us to do the
11   de-duplication process, we'll need to have the time
12   to run those, those documents on our end so that we
13   can then revisit the question of the audit.
14          And my concern is the ongoing prejudice
15   that the -- we're having depositions in the
16   meantime, you know, so I'm just trying to make sure
17   we have enough time to do this whole process and not
18   deprive plaintiffs of this information.
19          THE COURT:  All right.  So I gather,
20   Mr. Hiraoka, this is not an all or nothing thing.
21   As you get them done, you can turn them over, right?
22          MR. HIRAOKA:  Yes.
23          THE COURT:  Okay.  I'm going to give you
24   until a week from today.  That's the 16th.  If you
25   can't make the 16th, your only other option is just

PROCEEDINGS

```
 1    turn it over attorneys' eyes only.  Do not bother
 2    coming to me for an extension because that's your
 3    option.
 4            MR. HIRAOKA:  Understood.
 5            THE COURT:  You have until -- you have
 6    until the end of the day, a week from today, the
 7    16th.
 8            MR. HIRAOKA:  Thank you, Your Honor.
 9            THE COURT:  And as soon as you have
10    something available, turn it over to them.
11            MR. HIRAOKA:  Absolutely, yes.  We'll turn
12    them over on a rolling basis, Your Honor.
13            THE COURT:  Okay.  Anything else we need to
14    do today from the plaintiffs?
15            MS. MARQUEZ:  No, Your Honor.  Thank you.
16            THE COURT:  From defendant?  Mr. Hiraoka,
17    anything?
18            MR. HIRAOKA:  No, nothing from the
19    defendant, Your Honor.  Thank you.
20            THE COURT:  All right.  Thank you.
21    Goodbye.
22            MR. HIRAOKA:  Goodbye.  Thank you.
23
24                        0o0
25
```

AMM TRANSCRIPTION - 631.334.1445

```
1                    C E R T I F I C A T E

2

3        I, Adrienne M. Mignano, certify that the

4   foregoing transcript of proceedings in the case of

5   In Re: New York Policing During Summer 2020

6   Demonstrations; Docket #20cv8924 was

7   prepared using digital transcription software and is

8   a true and accurate record of the proceedings.

9

10

11   Signature   _____
                  Adrienne M. Mignano

12                ADRIENNE M. MIGNANO, RPR

13

14   Date:       May 18, 2023

15

16

17

18

19

20

21

22

23

24

25
```

                AMM TRANSCRIPTION - 631.334.1445