UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In Re: New York City Policing During Summer 2020
Demonstrations

20-cv-8924 (CM)(GWG)

------------------------------------------------------------x

## ORDER DIRECTING VACATUR OF SETTLEMENT STIPULATION AND SETTING BRIEFING SCHEDULE FOR MOTIONS OPPOSING SETTLEMENT

McMahon, J.:

    Yesterday, I signed a stipulation of settlement in the above-captioned cases.

    This morning I find on my desk a letter filed yesterday by Ret. New York State Court of Appeals Judge Robert S. Smith on behalf of intervening party, the Police Benevolent Association (PBA). Judge Smith advises that the PBA wishes me to vacate yesterday's order and allow it to oppose the settlement, on the ground that its terms are contrary to the public interest. He further advises that the PBA made it opposition to the settlement known to the parties months ago, and that he contacted all counsel on September 6 – the day after the settlement papers were presented to me for signature – in order to negotiate a briefing schedule. Allegedly, the parties were considering this suggestion at the very time the supposedly unopposed settlement was being presented for my signature. However, neither Judge Smith nor any of the other attorneys involved in this matter bothered to let me know that any of this was happening; had someone done so, I would have stayed my hand. In fact, I should have been told that there was opposition to the settlement months ago.

    Obviously, I am going to allow the PBA to attack the settlement – it was for that very reason that the Second Circuit directed me to allow the police unions to intervene in these matters. The letter I just received from the NYCLU and The Legal Aid Society asking that I deny the PBA's motion (Dkt # 1105) does not convince me that the union should not be allowed to oppose the settlement. In fact, the issues raised in that letter are precisely the sort of issues that should be raised in opposition to such a motion. I am not going to put myself in a position to be reversed on the PBA's right as an intervenor a second time.

    Therefore, the Clerk of Court is directed to vacate yesterday's order approving the settlement. Here is your briefing schedule:

        PBA motion to disapprove:    September 29
        Settling parties' opposition:    October 20
        PBA Reply:    October 31

Any other interested party that opposes the settlement must adhere to the same briefing schedule. This includes any of the other police unions that have intervened in this matter.

I need to raise another issue. As many of you probably know, Judge Smith is my former law partner; we have known each other for almost 50 years. I am embarrassed to admit this, but I don't think I was consciously aware until today that Judge Smith was co-counsel for the PBA. He had not yet appeared in the case when I held the initial in-person conference with counsel on February 22, 2021; in fact, no lawyer for any of the police unions attended that conference (see transcript, Dkt #78). And while I had already received a letter from counsel for the Sergeants' Benevolent Association advising me of the union's intent to move for leave to intervene (Dkt. #36), the docket does not show that I had heard from anyone representing the PBA. Judge Smith's name does appear on the signature block of the motion for leave to intervene that was filed by the law firm of Schlam Stone & Dolan on March 3, 2021 (Dkt. #48), even though he did not file a notice of appearance until the following week (Dkt. #86). However, I can't pretend to have paid any attention to signature blocks, or to the numerous lawyers' notices of appearance that were filed in these cases over the course of many months.

The Paul Weiss firm, where Judge Smith and I were partners, always files a letter immediately and specifically notifying me that the firm is involved if one of its cases is assigned to me; I wish Judge Smith had done the same; then I could have raised the issue of our long relationship with the parties early on.[1] But in the end, if I failed to notice his involvement in this matter, the fault is mine. I know to an absolute certainty that I would have raised his entry into the case with the parties if I had been aware of it. However, after searching the docket, I see nothing to indicate that I ever raised this matter with the parties in writing; I have no recollection of doing so orally.

By the time my decision denying the PBA's motion to intervene was reversed, Magistrate Judge Gorenstein was ably handling the day-to day aspects of this complicated case. I thus had no reason to focus on Judge Smith's representation of the PBA until I received his letter of September 7, which was addressed to me and asked me to take action. In the two and one half years since he filed his notice of appearance, Judge Smith and I have co-hosted an annual Super Bowl party (we have watched the Super Bowl together, along with an ever-expanding group of friends and acquaintances, almost every year since 1977). And last spring, I attended a book party at the Judge's home to mark the launch of his son Ben's book, *Traffic*. I believe that is the extent of our socializing during this period. I have never discussed this case with Judge Smith.

I do not believe it would be appropriate for me to recuse myself on the basis of my friendship with Judge Smith after having been the presiding judge in these lawsuits for almost three years. However, I call this to the parties' attention in case anyone thinks otherwise.

---

[1] I do see on the docket one letter from Judge Smith addressed to me, dated March 26, 2021, explaining why the PBA's reply memorandum exceeded my 10 page-limit for reply papers. (Dkt #109). I would not likely have seen such a letter. The only other letter filed in this case on Judge Smith's letterhead (until yesterday) was addressed to Judge Gorenstein, not me. (Dkt #449).

Dated: September 8, 2023

_____
U.S.D.J.

BY ECF TO ALL COUNSEL
BY EMAIL TO MAGISTRATE JUDGE GORENSTEIN