UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------

In Re: New York City Policing

During Summer 2020 Demonstrations                Index No. 20-CV-8924(CM)(GWG)

-------------------------------------------------

# REPLY DECLARATION OF LOUIS ANEMONE IN FURTHER SUPPORT OF POLICE BENEVOLENT ASSOCIATION'S OPPOSITION TO PROPOSED SETTLEMENT

**LOUIS ANEMONE** affirms as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1. I submit this reply Declaration in further support of the Police Benevolent Association ("PBA")'s opposition to the proposed settlement in the consolidated matters captioned above (the "Proposed Settlement"), further to my moving Declaration of October 6, 2023 and in response to the opposition papers submitted by plaintiffs, including the November 1, 2023 Declaration of Hassan Aden, and by the New York City Defendants.

2. Mr. Aden mischaracterizes my declaration as espousing an "escalated force model" and sets up a false narrative by creating the "straw man" of the "escalated force model" versus the "negotiated method model". He also mischaracterizes my declaration as indicating an approval for "mass arrests", excessive force and violence by the police.

3. Far from endorsing an escalated force model or mass arrests, my prior declaration states that, given the variables involved in policing large protests, any ironclad rules that prohibit the on scene incident commander from swiftly deploying officers or from issuing arrest or dispersal orders based on her assessment of the conditions on the scene will pose an unnecessary

risk of injury to officers, the public, and protesters.  The Proposed Settlement has various provisions to that effect, which inevitably will slow down the police decision making and implementing process, while incident commanders wait for notification, explanation and approval of someone not present at the scene (such as the FAA Senior Executive).

4. Mr. Aden also suggests that my opinions are out of date because I retired from the NYPD in 1999.  He suggests that I have not been active or kept abreast of developments in current events and policing during those years. This is also mistaken.

5. In addition to private clients, I have been consulting with police departments since my retirement in 1999.  My clients have included the New York City Police Department, Boston Police Department, Baltimore Police Department, Los Angeles Police Department, Cincinnati Police Department, New Orleans Police Department, Savannah Metro Police Department, Fuerza Civil State Police of Nuevo Leon Mexico, and Carabineros de Chile (National Police of Chile).

6. I have been teaching for the last 5 years at John Jay College of Criminal Justice, Master's program for NYPD executives.

7. I have also been teaching at Fairleigh Dickinson University's Executive Leadership Program for police executives for more than 3 years.

8. My consulting and teaching experiences since my retirement have required that I keep abreast of the most recent learning and practices with respect to the policing of protests.

9. In contrast to my background, Mr. Aden's resume reflects a career more closely devoted to administrative and academic duties than actual "street experience" handling protests, and lacks any experience as an active duty officer, or any rank, in any jurisdiction larger than Alexandria, Virginia (current population under 150,000, per https://worldpopulationreview.com/us-cities/alexandria-va-population.)

10. At ¶4 of his declaration, Mr. Aden states that "best practices are not fixed or static". I agree, and submit this illustrates why the Proposed Settlement, in micromanaging the NYPD's response to unforeseeable events years into the future, jeopardizes the safety of officers and the public.

11. National standards for training, equipment, written policies and procedures may be useful in certain contexts, but Mr. Aden does not identify any jurisdiction that has adopted the type of structure contemplated by the Proposed Settlement, let alone any city with the size, density, population, and/or complexity as New York City. In any case, "best practices", whether "fixed or static" are always local in nature because protestors and events differ from city to city. This makes it infeasible to try to fit tactical decisions about policing mass protests into some rigid set of national standards, even had Mr. Aden identified any such widely adopted approach.

12. The NYPD's approach to policing public protests has long been flexible and tailored to the protest event, location, history of the group, time of day, day of week, likely presence of counter protesters, and always with the mission to provide a safe environment for protesters, public and police without categorically limiting or delaying the appropriate police presence at a protest. It has long included community engagement, de-escalation, minimization of mass arrests and review and improvement of police response.

13. Mr. Aden does not seem to be aware of this, or that:

- the NYPD for decades has negotiated in advance with protestors and, when available, with protest organizers, along with other approaches as appropriate on a case-by-case basis.

- negotiated symbolic arrests preplanned by NYPD and protesters have been a staple of NYPD practice for over 45 years.

- of the NYPD's practice for over 40 years of staging officers off site and in close proximity to a protest where the circumstances allow.

- of NYPD training in de-escalation, implicit bias, use of force and First Amendment training.

14. The problem with the Proposed Settlement is that it requires the use of certain tactics regardless of the views of the on-site Incident Commander, based on the facts on the ground, as to whether they are appropriate in a given protest at a given time.

15. Mr. Aden's lack of experience at mass demonstrations is clearly indicated by his recommendation that traffic officers do not need to wear protective equipment at protests. This betrays a lack of awareness as to how quickly a crowd can overwhelm officers just a block or two away from the protesters, and shows no recognition that traffic officers might be mobilized to assist other officers with the actual protest suddenly and without prior warning.

16. Finally, recent protests regarding events in Israel/Palestine highlight some of the Proposed Settlement's critical deficiencies. Such events have brought to the fore concerns about how, and in what numbers, police are to respond where a protest's threats of violence are yet unrealized. For example, under such circumstances will the Incident Commander and FAA Senior Executive be able to document the reasonable belief that "Green Light violations are imminent" or there is a "risk of obstructing access to critical infrastructure . . . [that] cannot be relieved by directing individuals to alternate entrances and exits of the critical infrastructure location" in order to move to Tier II (¶43), which even then only permits the Incident Commander to "station limited resources on scene" (¶47)?

17. Substantial police deployments to such events from the outset may be a necessary safety measure that the Proposed Settlement would impair, as Incident Commanders and Senior Executives ponder whether this Court might be called upon to declare such a deployment a material breach.

Date: New York, New York
November 15, 2023

Louis Anemone