

**Dechert**
LLP

Three Bryant Park
1095 Avenue of the Americas
New York NY 10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**STEVEN A. ENGEL**

Steven.Engel@dechert.com
+1 212 698 3512  Direct
+1 212 994 3599  Fax

March 6, 2024

**VIA ECF**

Hon. Colleen McMahon, U.S.D.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

3/6/2024
Response by Friday, March 8 at 2pm

Re:   *In re: New York City Policing During Summer 2020 Demonstrations*, No. 1:20-cv-08924-CM
       This Letter is Related to All Cases

Dear Judge McMahon:

      On behalf of the Intervenor-Union Police Benevolent Association of the City of New York, Inc. (the "PBA"), we respectfully request a stay pending appeal of the Decision & Order of February 7, 2024 (ECF 1147). On February 29, 2024, the Court denied the City's request for a stay pending appeal, without prejudice to the PBA's filing of such a motion (ECF 1154). Prior to implementing the consent decree, the PBA respectfully submits that the Court should allow the Second Circuit to address the appropriate standard of review for the decree and voluntary dismissal in this case of first impression.

      In ruling on a motion for a stay pending appeal, this Court must consider four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). The first two factors are the "most critical." *Id.* at 434. But "the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other." *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007) (cleaned up; citation omitted). Here, all four factors support the issuance of a stay.

      *First*, the PBA is likely to succeed on the merits of its appeal. The Second Circuit has already held that the PBA had a right to intervene in this matter. *See Payne v. City of New York (In re N.Y. City Policing During Summer 2020 Demonstrations)*, 27 F.4th 792, 799 (2d Cir. 2022). In so doing, the Court of Appeals recognized that the PBA has a "direct, substantial, and legally protectable interest in officer safety that may be impaired by the

1

disposition" of these actions. *Id.* That holding would be rendered a nullity if the other parties could bargain around the PBA's objections—as they have—to reach a settlement that injures the very legal interest that intervention was meant to protect.

This Court nevertheless held that the PBA had failed to show the particular *type* of "legal prejudice" contemplated by Rule 41(a)(2). ECF 1147 at 14. However, nothing in Rule 41(a)(2)'s text requires a showing that a "non-settling defendant will lose a 'legal claim, cause of action or contract rights' by virtue of the partial settlement and ensuing dismissal." *Id.* (citation omitted). The rule simply provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). That language gave this Court broad latitude to consider the PBA's interests.

Second Circuit precedent is not to the contrary. Indeed, two of the three decisions this Court primarily relied upon do not mention Rule 41. *See Bhatia v. Piedrahita,* 756 F.3d 211 (2d Cir. 2014); *Zupnick v. Fogel,* 989 F.2d 93 (2d Cir. 1993); *cf. Paysys Int'l, Inc. v. Atos IT Servs. Ltd.,* 901 F.3d 105, 109 n.3 (2d Cir. 2018) ("The legal prejudice language on which it relies, however, is not based on an interpretation of Rule 41(a)(2) . . . ."). Those decisions hold only that "a non-settling defendant *generally lacks standing* to object to a court order approving a partial settlement because a non-settling defendant is ordinarily not affected by such a settlement." *Bhatia,* 756 F.3d at 218 (emphasis added); *see Zupnick,* 989 F.2d at 98. That ordinary rule does not apply here. Because of the settlement, the PBA has "suffered an invasion of a legally protected interest" in officer safety "that is concrete and particularized and actual or imminent." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 339 (2016) (quotation marks omitted). The Second Circuit has already held that this is a "legally protectable interest." *Payne,* 27 F.4th at 799. There is also little doubt that the injury is "fairly traceable" to the challenged settlement and "likely to be redressed by a favorable judicial decision." *Spokeo,* 578 U.S. at 338. The PBA thus has standing.

As to the third decision relied upon, *Camilli v. Grimes,* 436 F.3d 120 (2d Cir. 2006), the court did not hold that the types of legal prejudice identified by this Court provide the only bases for a settlement objection. It did not even hold that legal prejudice is required—only that "plain legal prejudice" provides an example of "a circumstance that would defeat dismissal of a plaintiff's suit without prejudice." *Id.* at 124 (quotation marks omitted).

In short, "Rule 41(a)(2)'s 'proper terms' analysis focuses on the defendant's interests"—and the PBA's interest in ensuring officer safety here "militate[d] against dismissal." *United States ex rel. Polansky v. Exec. Health Res., Inc.,* 143 S. Ct. 1720, 1734 (2023). A court, "in applying Rule 41, 'should endeavor to ensure that substantial justice is accorded to all parties.'" *Id.* at 1734 (quoting 9 Wright & Miller, *Fed. Prac. & Proc.* § 2364 (4th ed. 2022)). But this Court's narrow focus on whether the PBA might lose a legal claim or contract right violated that standard. The PBA respectfully submits that there is a strong likelihood that the Second Circuit will reverse and hold that the Court's standard for approving the consent decree overlooked its impact on the very legal interest that the Court of Appeals found to warrant intervention.

The Second Circuit is also likely to revisit the Court's conclusion that the settlement is "fair and reasonable" and would not disserve the public interest. *U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 294 (2d Cir. 2014). As the PBA has explained, the settlement would jeopardize public and officer safety in multiple ways. *See* ECF 1120 at 9–13; ECF 1135 at 7–11. But the Court declined to consider those dangers in analyzing the settlement's fairness and reasonableness, holding that such considerations are "not properly part of a *Citigroup* inquiry." ECF 1147 at 32; *see also id.* at 36. Protecting officer safety, however, is precisely why the Second Circuit authorized the PBA to intervene. And *Citigroup* itself cautioned that "depending on the decree a district court may need to make additional inquiry" beyond the factors that the Second Circuit listed in order "to ensure that the consent decree is fair and reasonable." 752 F.3d at 295. This is such a case requiring additional inquiry. The Court should not have approved the consent decree without making the necessary factual findings concerning how the decree might impact safety, and if the Court believed that the material facts were disputed, then the Court could not make such a determination without a hearing to fully consider the PBA's evidentiary submission.

*Second*, the PBA will be irreparably injured absent a stay. The Second Circuit has already explained that "changing the policies that govern officer conduct may affect officer safety." *Payne*, 27 F.4th at 800. And again, the settlement does just that. *See* ECF 1120 at 9–13; ECF 1135 at 7–11. Police officers "could be injured or die" because of the settlement's lax approach to riot control. *Mozilla Corp. v. FCC*, 940 F.3d 1, 62 (D.C. Cir. 2019). That is a classic form of irreparable harm that is "incapable of being fully remedied by monetary damages." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990); *see New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990).

And the risk of that harm to the PBA's members only grows with each successive phase of the oversight plan. For example, once the parties finalize the policies and training curricula to operationalize the terms of the consent decree, police officers may be obliged to implement them during Phase II even while the Second Circuit is considering the appeal. This is all the more concerning given that the terms of the consent decree presuppose that some officers will operate under the new rules even before they have received training in the new policies and curricula. *See* ECF 1099-2 ¶ 75 (all deployed officers not trained until month 15 of Phase II).

*Third*, issuing the stay would not substantially injure the other parties interested in the proceeding. This Court has not entered any finding of liability or wrongdoing concerning the current procedures for policing demonstrations, and so there is no real harm to maintaining the status quo during the appeal. In fact, the defendants have recognized that declining to issue a stay pending appeal could "significantly impact[] defendants' ability to implement agreed-upon terms in the Agreement, including but not limited to, carrying out the Phase I training and paying attorneys' fees." ECF 1151 at 2. Defendants could also be saddled with "costly and irreversible consequences should any portion of [the settlement] agreement be overturned on appeal." ECF 1152 at 2. And the plaintiffs' interests in upsetting the status quo pale in comparison. If anything, they too could be irreparably harmed by sinking efforts into compliance measures prescribed by a settlement that the Second Circuit could overturn.

*Fourth*, the public interest favors the issuance of a stay pending appeal—for many of the reasons already described. The public has a clear interest in ensuring "effective law enforcement." *United States v. Napolitano*, 761 F.2d 135, 139 (2d Cir. 1985), and in maintaining "the safety of NYPD officers" and citizens alike. *Dinler v. City of New York (In re City of New York)*, 607 F.3d 923, 950 (2d Cir. 2010). It also has a significant interest in avoiding the waste of resources from implementing a settlement that could be declared a nullity. *See, e.g., Central Hudson Gas & Elec. Corp. v. U.S. Env't Prot. Agency*, 587 F.2d 549, 560 (2d Cir. 1978). Issuing the requested stay best serves those ends.

Therefore, this Court should enter a stay pending appeal.

Respectfully Submitted,

*/s/ Steven A. Engel*

Steven A. Engel

cc: All counsel via ECF