

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE
CIVIL RIGHTS BUREAU

March 8, 2024

By Electronic Filing

Hon. Colleen McMahon
United States District Court, Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

> **Re:** ***In re: New York City Policing During Summer 2020 Demonstrations**,*
> **1:20-CV-8924 (CM) (GWG)**
> **This Letter Relates to All Cases**

Dear Judge McMahon:

I write on behalf of the consolidated Plaintiffs who are parties to the Injunctive Settlement to oppose the intervenor-union Police Benevolent Association's motion for a stay during appeal. (ECF No. 1157 ("Mot.").) As an initial matter, the appeal—and consequently, the motion—is premature in the absence of an endorsed stipulation to dismiss. Even if the motion is considered, the PBA has not come close to satisfying its burden to justify a stay.

The party requesting a stay "bears the heavy burden" of showing that the circumstances justify such "an intrusion into the ordinary processes of administration and judicial review." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). In determining whether to grant a stay, the Court must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *SEC v. Citigroup Global Markets Inc.*, 673 F.3d 158, 162 (2d Cir. 2012) (*per curiam*). All of these factors weigh against the PBA.

***First,*** the PBA is not likely to succeed in showing on appeal that the Court abused its discretion. *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). A Court should reject a non-settling defendant's objection to a Rule 41(a)(2) dismissal with prejudice if it fails to demonstrate that "some formal legal prejudice will result from the settlement." *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014). The PBA does not argue that it demonstrated formal legal

Office of the New York Attorney General
Letter to Judge McMahon
Page 2

prejudice but rather that the Court has broader discretion to consider lesser injuries. *See* Mot. at 2. There is no support for that proposition. Although the Second Circuit has considered additional factors when the proposed dismissal is *without* prejudice, it did not open the door to additional bases for objections to dismissals *with* prejudice. *See Camilli*, 436 F.3d at 123 (discussing, e.g., the costs of re-litigation).

Nor did the Second Circuit afford the PBA a special right to "torpedo" a settlement among all other parties by granting it intervention under Federal Rule of Civil Procedure 24(a). Op. at 17. Intervention "merely afforded the PBA the status of a party defendant in these lawsuits." *See id.* at 4; *In re N.Y. City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022). This Court has fulfilled that mandate, not rendered it a "nullity" (Mot. at 2), including by extending discovery so that the PBA could fully engage in all aspects of the litigation. *See* Pls.' Br. at 9 (ECF No. 1127). Yet, the PBA chose never to develop the factual record (for instance, by designating experts or noticing depositions) and did not assert a single claim, counterclaim, or cross-claim in its pleading. *Id.* (citing PBA's Answers). Any speculative threat to officer safety is not formal legal prejudice, and the PBA cites no authority suggesting that it could be. In short, such speculative threats cannot operate as a veto over the carefully crafted Settlement Agreement, negotiated at length between the Plaintiffs, the City, and the SBA and DEA unions—and they cannot force the absurd result of making those parties continue litigating a dispute they all wish to settle.

Further, the PBA misconstrues *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285 (2014), which does not require a district court to make factual findings before approving a consent decree but only to "consider whether the public interest would be disserved by entry of the consent decree." *Id.* at 297. The Court did in fact consider the opinions of PBA's proffered expert, Chief Louis Anemone, as to how the Settlement Agreement would purportedly endanger officers and rightly rejected them as outdated, unfounded, and ultimately insufficient to overcome the "significant deference" owed to the careful policy considerations incorporated by the Office of the New York State Attorney General, as an enforcement agency, and the New York City Police Department in the Settlement Agreement. *Id.* at 296; Op. at 35–38. In fact, although the PBA now argues that a hearing should have been held in determining whether the Agreement is fair and reasonable, it expressly said a hearing was unnecessary when confronted with the question by the Court. (ECF No. 1120 at 8–9.) Regardless, the Second Circuit has held there is no need for such fact-finding when the resolution reflects "discretionary matters of policy" and is otherwise procedurally proper. *Citigroup Global Markets, Inc.*, 752 F.3d at 297; *see also SEC v. Citigroup Global Markets Inc.*, 34 F. Supp. 3d 379 (S.D.N.Y. 2014) (declining further fact-finding on remand). The intensive mediation in which the PBA participated exuded "not a whiff of collusion" or procedural impropriety, Op. at 35, and so the Court properly exercised its broad discretion to approve the Settlement Agreement.

Office of the New York Attorney General
Letter to Judge McMahon
Page 3

The PBA therefore has not shown it is likely to succeed in establishing that the Court abused its discretion in granting the dismissal requested by all parties other than the PBA—including the People of the State of New York, privately-represented Plaintiffs, two other intervenor police unions, and *the only Defendants facing any liability in this litigation*, *i.e.*, the City Defendants. *Nken*, 556 U.S. at 434.

**Second**, the PBA would not be irreparably injured absent a stay. To show irreparable injury, the movant must show "injury that is 'neither remote nor speculative, but actual and imminent.'" *Nat. Res. Def. Council, Inc.*, 884 F. Supp. 2d at 124 (citation omitted). As a preliminary matter, many of the policies that the Settlement Agreement operationalizes are already in place and any quibbles the PBA has with those policies pre-date the Agreement and should not be the basis for a stay.[1] The Agreement's tiered response system incorporates de-escalation tactics and principles of proportionality that serve to protect *both* officers and the public. Both the NYPD and two intervenor unions, which represent thousands of sergeants and detectives, support the adoption of those practices. Certainly, there is no factual basis for the PBA's bombastic claim that officers may die due to the drafting or implementation of those policies, especially considering similar reforms have been successfully implemented in other jurisdictions. (Mot. at 3.) Thus, the PBA faces no actual and imminent irreparable harm absent a stay.

**Third and fourth,** a stay would both substantially harm the other parties and impair the public interest. There is no evidence that the obligations under Phase I would result in "costly and irreversible consequences." (Mot. at 3.) The Settling Parties expended extraordinary resources to negotiate a painstakingly crafted settlement and to achieve finality in this litigation. This case has already dragged on for more than three years and a stay would delay the much-needed correction of the NYPD's policies and practices challenged in this action. Furthermore, the public interest requires a resolution and implementation of the Settlement immediately. The settling parties have agreed that the Settlement terms are appropriate to protect the public from the extensive and potentially ongoing unlawful policing practices at issue in this case while ensuring police safety. A stay would effectively grant the PBA veto power over the Agreement—a power the Court ruled it does not have—and delay its important protections, leaving the public at risk.

Accordingly, this Court should deny the PBA's requested stay pending appeal. We thank the Court for its time and consideration.

Sincerely,

/s/ Lois Saldana
Lois Saldana

---

[1] *See* Settlement Agreement (ECF No. 1099-2) ¶¶ 13, 32, 61, 64–66, 69–71 and 76. As the Court noted, neither officers nor unions would ordinarily have the ability to stop the implementation of these policies. Op. at 36.

Office of the New York Attorney General
Letter to Judge McMahon
Page 4

*Assistant Attorney General*
Civil Rights Bureau
Office of the New York State Attorney General
Tel: 212-416-8860
Lois.Saldana@ag.ny.gov

Zoe Ridolfi-Starr
*Assistant Attorney General*
Civil Rights Bureau

Lillian Marquez
*Deputy Bureau Chief*
Law Enforcement Misconduct Investigative
Office

CC: All counsel of record