MANDATE

1:20-cv-08924-CM

24-695(L)
*In re: New York City Policing During Summer 2020 Demonstrations*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of March, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge,*
> REENA RAGGI,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED   4/9/2025 |

THE PEOPLE OF THE STATE OF NEW YORK, ADAM GRAY, JARRETT PAYNE, KAYLA ROLON, COREY GILZEAN, MICHAEL HERNANDEZ, CHRISTOPHER HUSARY, KEITH CLINGMAN, JONATHAN PECK, JASON DONNELLY, DIANA ZEYNEB ALHINDAWI, JEMELL D. COLE, AMR ALFIKY,

*Plaintiffs-Appellees,*

v.

24-695
24-1443
24-1439
24-1434

BILL DE BLASIO, CITY OF NEW YORK, DERMOT F. SHEA, TERENCE A. MONAHAN, LARS FRANTZEN, FIERRO, JON BRODIE, PICHARDO, ALTAMIRANO, ROBERT DIXSON, SCOTT HALDEMAN, EDUARD LUCERO, BRITNEY OWENS, HEMME, ANTHONY

MANDATE ISSUED ON 04/09/2025

POLANCO, ERIK RODRIGUEZ, PATRICK GROSS, LUIS
E. ORTIZ, N. CANALE, MIGUEL CRUZ, JOSEPH A.
TAYLOR, NEW YORK POLICE DEPARTMENT,
THEODORE WELLS, JOHN DOES 1-38, JANE DOES 1-
38, SEAN P. ROBINSON, BRIANNA CARLO, NICHOLAS
TERRETT, LUIGI TIRRO, ADAM MUNIZ, LEONEL
GIRON, KEITH GALLAGHER, GZIM PALAJ, DANIEL
SLEVIN, KEITH HOCKADAY, DANIEL GALLAGHER,
ROBERT CATTANI, CHRISTOPHER RADZINSKI,
STEPHEN SPATARO,

> *Defendants-Appellees*,

POLICE BENEVOLENT ASSOCIATION OF THE CITY OF
NEW YORK, INC.,

> *Intervenor-Defendant-*
> *Appellant*,

SERGEANTS BENEVOLENT ASSOCIATION,

> *Intervenor*,

> v.

JOHN DOES 1-20, JANE DOES 1-20,

> *Defendants.*

---

For Plaintiffs-Appellees People of the State of New York:

PHILIP J. LEVITZ, Senior Assistant Solicitor General of Counsel, (Barbara D. Underwood, Solicitor General, Ester Murdukhayeva, Deputy Solicitor General, *on the brief*) *on behalf of* Letitia James, Attorney General of the State of New York.

For Individual Plaintiffs-Appellees:

MOLLY K. BIKLEN, (Daniel R. Lambright, Christopher T. Dunn, *on the brief*), New York Civil Liberties Union Foundation, New York, NY.

Jennvine Wong, Paula Garcia Salazar, The Legal Aid Society, New York, NY.

Corey Stoughton, Selendy Gay PLLC, New York, NY.

| | |
|---|---|
| For Municipal Defendants-Appellees | MACKENZIE FILLOW, Assistant Corporation Counsel (Richard Dearing and Devin Slack, *on the brief*) *on behalf of* Muriel Goode-Trufant, Acting Corporation Counsel of the City of New York, NY. |
| For Intervenor-Defendant-Appellant: | STEVEN A. ENGEL (Brian A. Kulp, *on the brief*) Dechert LLP., New York, NY. |

Appeal from a decision and order of the United States District Court for the Southern District of New York (McMahon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Intervenor-Defendant-Appellant Police Benevolent Association of the City of New York, Inc. ("PBA") appeals from a decision and order of the United States District Court for the Southern District of New York, entered on February 7, 2024, granting plaintiffs-appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2) and approving the terms of a proposed consent decree in four civil actions consolidated under the caption *In re New York City Policing During Summer 2020 Demonstrations*. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we discuss here only as necessary to explain our decision to **AFFIRM**.

The consolidated actions were brought by New York State and private plaintiffs (collectively, "plaintiffs"), naming as defendants the City of New York and its leadership (the "City"), the New York City Police Department and its leadership (the "NYPD"), and NYPD officers in their individual and official capacities (collectively, the "Municipal Defendants"). Plaintiffs' claims relate to police actions and practices in response to demonstrations that occurred in the summer of 2020. After engaging in intensive settlement discussions for more than a year,

plaintiffs and the Municipal Defendants reached an agreement for the NYPD to alter its practices for policing protests and demonstrations, and submitted a stipulation of settlement (the "Settlement") alongside a motion for voluntary dismissal pursuant to Rule 41(a)(2). The district court approved the Settlement as a consent decree, over the PBA's objections. It also granted plaintiffs' motion to dismiss. On appeal, the PBA argues that the district court erred by (1) granting plaintiffs' Rule 41(a)(2) motion over the objections of a non-settling defendant; (2) approving the consent decree without considering the impact of the Settlement on officer safety; and (3) failing to hold an evidentiary hearing prior to ruling. The PBA is wrong on all counts. We address each of its arguments in turn.

## I.    Motion to Dismiss Pursuant to Rule 41(a)(2)

Federal Rule of Civil Procedure 41(a)(2) provides that, except under circumstances inapplicable here, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." We review a district court's decision to grant a Rule 41(a)(2) motion for abuse of discretion. *Paysys Int'l, Inc. v. Atos IT Servs. Ltd.*, 901 F.3d 105, 108 (2d Cir. 2018) ("Rule 41(a)(2) dismissals are at the district court's discretion and only will be reviewed for an abuse of that discretion.").

In determining whether to grant a Rule 41(a)(2) motion for dismissal with prejudice, courts ask "whether the defendant would suffer some plain legal prejudice from a dismissal . . . , beyond the prospect of a second lawsuit." 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2364 (4th ed. 2024); *see Camilli v. Grimes,* 436 F.3d 120, 123 (2d Cir. 2006) ("[D]ismissal [pursuant to Rule 41(a)(2)] would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." (internal quotation marks

omitted)).[1]  We have previously noted that, "[w]hen the Supreme Court identified 'plain legal prejudice' to a defendant as a circumstance that would defeat [voluntary] dismissal of a plaintiff's suit . . . [t]he Court was concerned about the plight of a defendant who is ready to pursue a claim against the plaintiff in the same action that the plaintiff is seeking to have dismissed."  *Camilli*, 436 F.3d at 124 (emphasis omitted).  Thus, a defendant may suffer "plain legal prejudice" when a "cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action."  *Id.*  Notably, "the mere prospect of a second litigation upon the subject matter" is by itself insufficient.  *Jones v. Sec. & Exch. Comm'n*, 298 U.S. 1, 19 (1936).

We have also discussed "legal prejudice" in the context of Article III standing.  In *Bhatia v. Piedrahita*, 756 F.3d 211 (2d Cir. 2014), while analyzing an objection to a class action settlement, we observed the general rule that "a non-settling [] defendant [] lacks standing to object to a court order [] approving a partial settlement because a non-settling defendant is ordinarily not affected by such a settlement."  *Id.* at 218.  We further recognized an "exception to this general rule which permits a non-settling defendant to object where it can demonstrate that it will sustain some *formal legal prejudice* as a result of the settlement."  *Id.*  (emphasis added).  We went on to note that formal legal prejudice "only [arises] in those rare circumstances when, for example, the settlement agreement formally strips a non-settling party of a legal claim or cause of action, such

---

[1] In a separate line of cases, the Second Circuit has alternatively considered the five *Zagano* factors when evaluating Rule 41(a)(2) motions. *Zagano v. Fordham University*, 900 F.2d 12, 14 (2d Cir. 1990). These factors are: (1) the plaintiff's diligence in bringing the motion; (2) any undue vexatiousness on the plaintiff's part; (3) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial; (4) the duplicative expense of relitigation; and (5) the adequacy of the plaintiff's explanation for the need to dismiss. *Id.* However, "where [there is] no possibility of relitigation at the instance solely of the plaintiff [], the *Zagano* factors have little, if any, relevance." *Camilli*, F.3d at 123. Here, plaintiffs have moved for dismissal with prejudice and would be precluded from bringing their claims again. Accordingly, the *Zagano* factors are inapposite and the relevant test is whether the PBA would suffer "plain legal prejudice." *Id.*

as a cross-claim for contribution or indemnification, invalidates a non-settling party's contract rights, or the right to present relevant evidence at a trial." *Id.* (emphasis omitted).

Here, the PBA failed to demonstrate that it would suffer "legal prejudice" from dismissal. As the district court correctly observed:

> The PBA identifies no legal interest that would be compromised by my either so-ordering the Settlement or dismissing the case. It forfeits no pending cause of action (to date it has asserted none); it does not lose the ability to bring claims in the future (assuming it has any); and the fact that dismissal will be with prejudice means that neither the Attorney General nor the members of the settling classes can in the future assert any such claim arising out of the BLM protests against any member of the PBA — another protective feature of the Settlement. The union's contract and collective bargaining rights are not in any way compromised by dismissal of the case.

Special App'x 15 (citations omitted). The PBA seems to concede as much in its briefing, never asserting that it would lose the right to pursue a counterclaim against the plaintiffs and never arguing that it would lose a legal claim, cause of action, or contract right as a result of dismissal.

Nevertheless, the PBA contends that the district court was obligated to consider whether the Settlement would "materially affect" the PBA's interest in officer safety before ruling on the Rule 41(a)(2) motion. Dkt. 57 at 26. Not so. Under Rule 41(a)(2), the district court's analysis is limited to analyzing whether the non-settling defendant would suffer "legal prejudice." *See Camilli*, 436 F.3d at 124; *see also Chevron Corp. v. Donziger*, No. 11-CV-0691, 2013 WL 1481813, at *4 (S.D.N.Y. Apr. 8, 2013) ("As the non-settling defendants have not established any legal prejudice flowing from the dismissal, the Court's role under Rule 41 is at an end."). "[T]he Court's authority does not extend to approving, disapproving, or otherwise passing on the substantive terms of a private settlement of private claims[.]" *Donziger*, 2013 WL 1481813, at *4.

Nor is the Second Circuit's prior recognition of the PBA's interest in officer safety relevant at this juncture. "[T]he showing that a non-settling party must make to object to a partial settlement [is] an analytically distinct question from whether a non-party possesses a legally sufficient interest

in joining an action." *United States v. New York City Hous. Auth.*, 326 F.R.D. 411, 417 (S.D.N.Y. 2018) (citing *Bhatia*, 756 F.3d at 218); *see also Hollingsworth v. Perry*, 570 U.S. 693, 694-96 (2013) (observing that intervenors' "only interest was to vindicate the constitutional validity of a generally applicable California law, . . . by definition a generalized one," and holding "it is precisely because [intervenors] assert such an interest that they lack standing"); *Diamond v. Charles*, 476 U.S. 54, 68 (1986) ("[A]n intervenor's right to continue a suit . . . is contingent upon . . . fulfill[ing] the requirements of Art. III."). Last time this case was before this Court, we asked "whether the PBA sufficiently identified a protectable interest at stake in the litigation." *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022). We permitted intervention because we concluded that the PBA had "an interest in the safety of front-line officers[] [t]hat [] may be impaired ... [by] a determination that NYPD policies governing the interaction of officers and protesters are unlawful and must be altered."[2] *Id.* at 799-800. That determination is distinct from the question before the district court on a Rule 41(a)(2) motion. Here, as we have discussed, the question was whether the PBA would suffer "legal prejudice." Our prior determination that the PBA has a cognizable interest in this case justifying *intervention* is irrelevant to the narrower question of whether dismissal threatens the PBA with "legal prejudice."

Accordingly, we conclude that the district court did not err in granting plaintiffs' Rule 41(a)(2) motion.

---

[2] Notably, as the district court recognized, the Settlement "protect[s] one PBA interest that was of great concern to the Second Circuit: a settlement means there is no risk of any final adjudication or admission that anything done during the BLM protests was unconstitutional or illegal." Special App'x 16.

## II.    Approval of Consent Decree

Nor did the district court err in approving the Settlement as a consent decree.[3]  We review a district court's decision to approve a consent decree for abuse of discretion.  *See U.S. Sec. Exch. Comm'n v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 291 (2d Cir. 2014) ("*Citigroup*") ("We review the district court's denial of a settlement agreement under an abuse of discretion standard.").

While most consent decrees are reviewed under the standard articulated in *Kozlowski v. Coughlin*, 871 F.2d 241 (2d Cir. 1989), "when the case being settled is one brought by government agencies exercising their enforcement power," courts apply the "different and higher standard" from *Citigroup*.  Special App'x 23.  Under the *Citigroup* standard, "the district court [must] determine whether the proposed consent decree is fair and reasonable, with the additional requirement that the public interest would not be disserved."  *Citigroup*, 752 F.3d at 294 (internal quotation marks omitted).

The parties do not challenge the applicability of the *Citigroup* standard in this case.  Instead, the PBA argues that the district court erred by (1) finding that the proposed consent decree was fair and reasonable; and (2) finding that the proposed consent decree would not disserve the public interest.  Neither argument is availing.

### A.    Fairness and Reasonableness

Under the *Citigroup* standard, a court evaluating a proposed consent decree for fairness and reasonableness should, at a minimum, assess (1) "the basic legality of the decree"; (2) "whether the terms of the decree, including its enforcement mechanism, are clear";

---

[3] The district court construed the Settlement as a consent decree requiring court approval.  Special App'x 5.  The parties do not dispute this finding on appeal.

(3) "whether the consent decree reflects a resolution of the actual claims in the complaint;" and

(4) "whether the consent decree is tainted by improper collusion or corruption of some kind."

*Citigroup*, 752 F.3d at 294-95.  We have further noted that:

> Consent decrees vary, and depending on the decree a district court may need to make additional inquiry to ensure that the consent decree is fair and reasonable.  The primary focus of the inquiry, however, should be on ensuring the consent decree is procedurally proper, using objective measures similar to the factors set out above, taking care not to infringe on the [government's] discretionary authority to settle on a particular set of terms.

*Id.* at 295.

On appeal, the PBA does not contest the district court's determination that the various *Citigroup* factors, including the basic legality of the decree, the clarity of the decree, the degree to which the decree resolves the actual claims in the complaint, and the absence of collusion, all weigh in favor of approval.  *See* Special App'x 27-30; Dkt. 57 at 21 (arguing only that "[t]he district court [] erred by mechanically applying *Citigroup*'s 'minimum' requirements as though they defined the bounds of the court's review").  Rather, the PBA argues that the district court was required to "make additional inquiry to ensure that th[is] [particular] consent decree [was] fair and reasonable," *Citigroup*, 752 F.3d at 295, including an inquiry into whether the Settlement would negatively impact officer safety.

The PBA's argument is foreclosed by the Supreme Court's decision in *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986) ("*Firefighters*").  There, the Supreme Court made clear that:

> It has never been supposed that one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from litigation.  Thus, *while an intervenor is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.*

*Id.* at 528-29 (emphasis added). The Supreme Court observed that when an intervenor has taken "full advantage of its opportunity to participate in the [d]istrict [c]ourt's hearings on [a] consent decree[] [and] was permitted to air its objections to the reasonableness of the decree and to introduce relevant evidence," and when the district court "carefully considered these objections and explained why it was rejecting them," the intervenor has received "all the process that it was due." *Id.* at 529 (internal quotation marks and brackets omitted).

Here too, the PBA received "all the process that it was due." *Id.* (internal brackets omitted); *see also Citigroup*, 752 F.3d at 295 ("The primary focus of the inquiry [] should be on ensuring the consent decree is *procedurally* proper[.]" (emphasis added)). The PBA had the opportunity to present evidence and to have its objections heard, including the opportunity to introduce the testimony of its expert, Chief Anemone. *See* Special App'x 31-32 ("To support its arguments, the PBA offers an affidavit from retired NYPD Chief Louis Anemone, in which Chief Anemone opines that certain policies in the Settlement might be cumbersome and impractical when applied by the NYPD and its line officers."). And despite the PBA's claims to the contrary, the district court *did* ultimately consider the PBA's objections relating to officer safety and explained why it was rejecting them, albeit while analyzing the effect of the Settlement on the public interest.[4] *See* Special App'x 36 ("[A] substantial body of evidence suggests that Chief Anemone's evidence and opinions are out of date[.]"); *id.* at 38 ("So while the PBA urges in conclusory terms that tiered response represents a danger to officer safety — the interest it seeks to protect in this case — this

---

[4] The PBA attempts to argue that "*Firefighters* [actually] underscores the district court's mistakes" because the district court "declared that the PBA's concerns regarding the fairness, reasonableness, and adequacy of the consent decree 'will not be considered.'" Dkt. 99 16-17 (quoting Special App'x 31). But this argument takes the district court's words out of context. The complete excerpt provides that "[t]he PBA's arguments *concerning the settlement's 'adequacy'* will not be considered." Special App'x 31 (capitalization omitted). In making this statement, the district court was accurately restating the rule we laid out in *Citigroup*. *See Citigroup*, 752 F.3d at 294 ("We omit 'adequacy' from the standard."). It did not err by doing so.

court cannot conclude, on the basis of the record before me, that a settlement incorporating a current understanding of best policing practices is inconsistent with officer safety.").

This case also does not fall into any of the carveouts that the Supreme Court recognized in *Firefighters*. In *Firefighters*, the Court noted that:

> Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement. A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor. And, of course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree.

478 U.S. at 529 (internal citations omitted). Here, the Settlement does not "dispose of the valid claims of [a] nonconsenting intervenor[]," *id.*, because the PBA has not asserted any claims against any party in this action. *See* Special App'x 15 (noting that the PBA "forfeits no pending cause of action (to date it has asserted none)" and "does not lose the ability to bring claims in the future (assuming it has any)"). It also does not impose any duties or obligations on the PBA. *See* Dkt. 77 at 8-9 (describing how the Settlement only imposes obligations on the "Union Intervenors" as members of a "Collaborative Committee," a term which is "carefully define[d] . . . as the Detective's Endowment Association and the Sergeants Benevolent Association[] [while] notably omitting the PBA"). While the policies laid out in the consent decree may *impact* the PBA's members, those effects do not constitute *obligations* on the PBA itself.

Nor do we credit the PBA's argument that the district court erred in approving the Settlement "without [] finding that the [NYPD's] prior rules had, or likely would, lead to constitutional violations." Dkt. 57 at 36. This argument is squarely foreclosed by *Citigroup*. There, we made clear that "[i]t is not within the district court's purview to demand cold, hard, solid facts, established either by admissions or by trials, as to the truth of the allegations in the complaint

11

as a condition for approving a consent decree." *Citigroup*, 752 F.3d at 295 (internal quotation marks and citation omitted). Accordingly, we conclude that the district court did not err in finding the Settlement terms to be fair and reasonable under the *Citigroup* standard.

### B.    Public Interest

The PBA also argues that the district court improperly deferred to the judgment of the government actors in this case without independently assessing whether the Settlement would disserve the public interest. While the PBA is correct that *Citigroup* requires an independent assessment of the impact of a consent decree on the public interest, the district court *did* conduct such an analysis. Accordingly, we see no grounds for reversal.

In evaluating whether a consent decree would best serve the public interest, we have observed that "[t]he job of determining whether [a] proposed [] consent decree best serves the public interest . . . rests squarely with the [government], and its decision merits significant deference." *Citigroup*, 752 F.3d at 296. However, granting deference must not become mere "rubber stamp[ing]." *See id.* at 293 ("To be sure, when the district judge is presented with a proposed consent judgment, he is not merely a 'rubber stamp.' "). We have emphasized that district courts applying the *Citigroup* standard must "consider whether the public interest would be disserved by entry of the consent decree" regardless of the significant deference given to the government's decision to settle. *Id.* at 297. Accordingly, the district court could not have approved the consent decree by merely noting that the fact that "multiple government bodies . . . have concluded that the terms of [the] consent decree . . . would not disserve the public interest" is "effectively dispositive." Special App'x 34.

However, the district court additionally found that, "[even] if merits evidence were properly considered, the evidence does not establish a 'substantial basis in the record for

concluding the proposed consent judgment' would disserve the public interest." *Id.* at 36 (quoting

*Citigroup*, 752 F.3d at 294).  The court weighed the evidence presented by the parties, including

the dueling opinions of the parties' experts, and concluded that:

> The evidence in the record is overwhelmingly to the effect that the procedures proposed here — most especially tiered response — are neither novel nor untested, and are consistent with what is considered best practice policing at [protests] today.  The evidence also compels a finding that the methods endorsed by Retired Chief Anemone have been found — including by multiple presidential commissions — to be counterproductive.

> So while the PBA urges in conclusory terms that tiered response represents a danger to officer safety — the interest it seeks to protect in this case — this court cannot conclude, on the basis of the record before me, that a settlement incorporating a current understanding of best policing practices is inconsistent with officer safety.

Special App'x 38.  We see no error in the district court's analysis (albeit in the alternative) of the

effect of the Settlement on the public interest.

## III.    Evidentiary Hearing

We similarly conclude that the district court did not abuse its discretion by deciding to

approve the Settlement without holding an evidentiary hearing.  In the Rule 41(a)(2) context, the

decision as to whether to have a hearing is within the judge's discretion.  *See* 9 Wright & Miller,

*Federal Practice & Procedure* § 2364 (4th ed. 2024) ("*[I]f it seems necessary in the judge's

judgment*, a hearing on the propriety of dismissing the action should be held[.]" (emphasis added));

*see also Puerto Rico Mar. Shipping Auth. v. Leith*, 668 F.2d 46, 51 (1st Cir. 1981) (holding that a

district judge does not abuse his discretion in granting a dismissal motion without first holding a

hearing if it is familiar with the relevant issues and if the defendants have adequate notice and an

opportunity to be heard).  Here, regardless of whether the PBA waived its right to request an

evidentiary hearing by failing to assert it below, both sides presented significant written evidence

regarding various issues pertaining to the Settlement.  This evidence included written testimony

from the parties' respective experts describing their opinions as to various elements of the

Settlement and provided the court with an adequate basis to address the relevant issues.  In light of this well-developed record, the district court was within its discretion to approve the Settlement without holding a hearing.

*       *       *

We have considered the PBA's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

14