UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

```
----------------------------------------------------------   x
                                                             :
In Re: New York City Policing During Summer                  :
2020 Demonstrations                                          :        20 Civ. 8924 (CM)(GWG)
----------------------------------------------------------   :
                                                             :
This filing is related to:                                   :
                                                             :
                                                             :
ALL CASES                                                    :
                                                             :
                                                             :
                                                             :
                                                             :
                                                             :
                                                             :
----------------------------------------------------------   x
```

**CONSOLIDATED PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR AN ORDER COMPELLING THE CITY TO IMPLEMENT
<u>PARAGRAPH 89(h) OF THE STIPULATED ORDER</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 3

   A.   The Stipulated Order ...................................................................................... 3

   B.   The City's Incomplete Implementation of Paragraph 89(h) in Draft Policy and Training Materials ................................................................................................................. 6

ARGUMENT .............................................................................................................. 8

I.       THE COURT HAS JURISDICTION TO ENFORCE THE STIPULATED ORDER ....... 8

II.      THE ARREST PROCEDURES SET FORTH IN PARAGRAPH 89(h) OF THE STIPULATED ORDER UNAMBIGUOUSLY APPLY IN BOTH FAA AND NON-FAA CONTEXTS ................................................................................................................. 9

III.     EVEN IF THE STIPULATED ORDER WAS AMBIGUOUS, EXTRINSIC EVIDENCE CONFIRMS PARAGRAPH 89(h) WAS NOT INTENDED TO BE LIMITED TO FAA CONTEXTS .............................................................................................................. 14

CONCLUSION .......................................................................................................... 16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*67 Wall St. Co. v. Franklin Nat. Bank,*
   37 N.Y.2d 245 (1975) ................................................................................15

*Alexander & Alexander v. These Certain Underwriters,*
   136 F.3d 82 (2d Cir. 1998)...........................................................................9

*Berger v. Heckler,*
   771 F.2d 1556 (2d Cir. 1985)....................................................................14

*Broad. Music, Inc. v. DMX Inc.,*
   683 F.3d 32 (2d Cir. 2012).....................................................................9, 14

*Chapman v. N.Y. State Div. for Youth,*
   546 F.3d 230 (2d Cir. 2008)......................................................................10

*Compagnie Financiere v. Merrill Lynch,*
   232 F.3d 153 (2d Cir. 2000)........................................................................9

*Doe v. Pataki,*
   481 F.3d 69 (2d Cir. 2007)..........................................................................9

*Encyclopedia Brown Prods. v. Home Box Office, Inc.,*
   No. 91 Civ. 4092 (PKL), 1998 WL 734355 (S.D.N.Y. Oct. 15, 1998) ..................................11

*Gray, et al. v. City of New York, et al.,*
   No. 21-CV-6610 (S.D.N.Y.) ........................................................... *passim*

*K. Bell & Assocs. v. Lloyd's,*
   97 F.3d 632 (2d Cir. 1996)..........................................................................9

*King v. Allied Vision, Ltd.,*
   65 F.3d 1051 (2d Cir. 1995).......................................................................14

*Makinen v. City of New York,*
   722 F. App'x 50 (2d Cir. 2018) ..................................................................12

*Nat'l Util. Serv., Inc. v. Tiffany & Co.,*
   No. 07 Civ. 3345 (RJS), 2009 WL 755292 (S.D.N.Y. Mar. 20, 2009) ..................................10

*In re New York City Policing During Summer 2020 Demonstrations,*
   No. 20-CV-8924 (CM)(GWG), 2024 WL 476367 (S.D.N.Y. Feb. 7, 2024)
   *aff'd sub nom. New York v. De Blasio,* No. 24-1434, 2025 WL 857338 (2d
   Cir. Mar. 19, 2025) ......................................................................................9

*Omega Eng'g, Inc. v. Omega, S.A.*,
    432 F.3d 437 (2d Cir. 2005)................................................................14

*Payne, et al., v. de Blasio, et al.*,
    No. 20 Civ. 8924 (S.D.N.Y.) .............................................................1

*Payne, et al., v. de Blasio et al.*,
    No. 20-CV-8924(S.D.N.Y.) ...........................................................1, 3

*People of the State of New York v. City of New York, et al.*,
    No. 21-CV-322 (S.D.N.Y.) .............................................................1, 3

*RJE Corp. v. Northville Indus. Corp.*,
    329 F.3d 310 (2d Cir. 2003)..............................................................11

*Roberts v. Consol. Rail Corp.*,
    893 F.2d 21 (2d Cir. 1989)................................................................14

*Rolon, et al. v. City of New York*,
    No. 21-CV-2548 (S.D.N.Y.) ..........................................................1, 3

*United States v. Broad. Music, Inc.*,
    275 F.3d 168 (2d Cir. 2001)..............................................................10

**Other Authorities**

28 CFR § 50.10(m) ...............................................................................13

Fed. R. Civ. P. 41(a)(2)..........................................................................1

## INTRODUCTION

Under Paragraph 101(d) of the parties' Stipulated Order Pursuant to Fed. R. Civ. P.
41(a)(2) (Dkts. 1099-2 and 1166-1; entered at Dkt. 1167) (the "Stipulated Order" or "S.O."),
Plaintiffs in the Consolidated Protest Cases[1] hereby move, for an order compelling the City of
New York (the "City") to implement a critical term of the parties' Stipulated Order.

 Among its many carefully negotiated provisions, the Stipulated Order requires the City
to institute a policy designed to protect members of the press from retaliatory arrests and ensure
that any arrests of members of the press for low-level, non-violent offenses do not result in
unnecessary prolonged detention precluding further newsgathering.  S.O. ¶ 89(h).  Like the other
provisions of Section VI of the Stipulated Order concerning "Treatment of Members of the
Press" (the "Press Provisions"), the requirements of Paragraph 89(h) *are not limited to protests
or other first amendment activities* ("FAAs"), but apply in all circumstances where journalists
are arrested for low-level offenses.  Indeed, for avoidance of doubt, Paragraph 89 opens by
specifying that the policy changes set out in its subsections shall be **"applicable to both FAA
and non-FAA related circumstances."**  S.O. ¶ 89 (emphasis added).  Paragraph 89 also
explicitly requires the NYPD to institute or revise policy and training materials to implement
each of that paragraph's enumerated subsections, including subsection (h).  *Id.*

Notwithstanding all this, the City has taken the position that Paragraph 89(h) should only
apply in the context of FAAs, and has refused to revise its policy and training materials to
implement the negotiated policy outside that context, notwithstanding the express requirements

---

[1] The Consolidated Protest Cases include *Payne, et al., v. de Blasio et al.*, No. 20-CV-8924; *Gray, et al. v.
City of New York, et al.*, No. 21-CV-6610; *People of the State of New York v. City of New York, et al.*, No.
21-CV-322; and *Rolon, et al. v. City of New York*, No. 21-CV-2548.  Unless otherwise noted, docket
entries cited herein refer to *Payne, et al., v. de Blasio, et al.*, No. 20 Civ. 8924.

of Paragraph 89. The pretext offered by the City is that Paragraph 89(h) uses a defined term for low-level, non-violent offenses—so-called "Red Light offenses"—from elsewhere in the Stipulated Order. Because the term "Red Light offenses" is first defined in an earlier portion of the Stipulated Order that addresses FAAs, the City contends that any other paragraph in the Stipulated Order that uses the term "Red Light offenses" can also only apply in the context of FAAs. But this contorted reading goes against the plain meaning and manifest intent of Paragraph 89(h). Moreover, while the term "Red Light offenses" may be defined in the context of a policy relevant to FAAs, the actual defined term is *not* limited to offenses that only occur within the context of FAAs. Instead, "Red Light offenses" is defined simply as a list of common, low-level offenses. *See* S.O. ¶ 29. By using the defined term "Red Light offenses," Paragraph 89(h) simply referred to this list. It did not thereby port over a massive limitation on its plain intended scope.

There is no ambiguity in the language of Paragraph 89. It explicitly states that its requirements and procedures apply "to both FAA and non-FAA related circumstances." But even if the Court did find the provision ambiguous, extrinsic evidence supports the conclusion that the parties intended Paragraph 89(h) to apply in all contexts. The provision was negotiated in response to incidents alleged in the case *Gray et al. v. City of New York et al.*, No. 21-CV-6610 ("*Gray*"), including an incident involving the unlawful arrest and detention of Plaintiff Amr Alfiky *outside the context of any FAA*, which would not have occurred had the Paragraph 89(h) requirements been in place at the time. The provision could not achieve its intended purpose of addressing the incidents alleged in the *Gray* case if it were limited to only the context of FAAs. Moreover, evidence of the parties' settlement negotiations makes clear that the provision was never intended to be limited to FAAs.

In short, pursuant to Paragraph 89, the City must implement Paragraph 89(h) into its policy and training materials *in full*, to be applicable in both FAA and non-FAA contexts.  Its refusal to do so constitutes a material violation of the Stipulated Order, and grounds for Plaintiffs to make this motion to the Court.  *See* S.O. ¶ 101(d).[2]

## BACKGROUND

### A.    The Stipulated Order

The Stipulated Order was entered to resolve the injunctive claims asserted in four civil rights actions filed in this Court between October 2020 and March 2021 against the City of New York, and certain City and New York City Police Department ("NYPD") leadership and personnel (collectively, "Defendants").  These since-consolidated actions all alleged that Defendants engaged in unconstitutional or otherwise illegal conduct in response to racial justice protests occurring throughout New York City starting in 2020.  *See generally* Corrected Second Amended Complaint in *Payne* (ECF No. 957); Amended Complaint in *People of the State of New York v. City of New York et al.*, No. 21-CV-322 ("*People*") (ECF No. 51); Second Amended Complaint in *Rolon et al. v. City of New York*, No. 21-CV-2548 (ECF No. 65); Third Amended Complaint in *Gray* ("*Gray* TAC") (ECF No. 124).

But the claims in the Gray case went further than police misconduct at protests. The *Gray* case was brought by members of the press who had been unlawfully and unconstitutionally assaulted and/or arrested while engaging in newsgathering.[3]  Notably, the *Gray* Plaintiffs' claims

---

[2] Paragraph 101(d) reads, in full, "If, after exhausting the meet-and-confer process, Plaintiffs believe in good faith that the City has drafted relevant policies/procedures and training curricula that omit or violate material terms of this Agreement, they may make a motion to the Court on that basis. Plaintiffs shall have the burden to show that the policies/procedures and/or training curricula at issue omit or violate a material term of the Agreement."  S.O. ¶ 101(d).

[3] The *People* case also involved allegations of unconstitutional and illegal conduct by the NYPD against members of the press, including two of the *Gray* plaintiffs.  *See People* FAC (Dkt. 51) ¶¶ 399-430.

were not limited to policing during the 2020 racial justice protests, but also arose from unlawful conduct by NYPD officers during routine policing activity outside the context of FAAs. Among other things, the *Gray* pleadings alleged that Plaintiff Amr Alfiky was unlawfully arrested in February 2020 for filming the arrest of an apparently mentally disturbed man from across the street. *See Gray* TAC ¶¶ 86-96. Mr. Alfiky was thereafter taken into custody, charged with Disorderly Conduct under Penal Law ¶ 240.20(d), held for over three hours, and his NYPD-issued press credentials were seized. *Id.* The NYPD failed to pursue the charge against Mr. Alfiky. *Id.* The *Gray* pleadings also outlined numerous other instances of the NYPD's "unconstitutional practice of obstructing and retaliating against journalists," citing at least ten incidents that occurred outside the context of FAAs. *See Gray* TAC ¶¶ 107(a)-(f), (h)-(k).

The *Gray* Plaintiffs engaged in vigorous litigation, conducting extensive discovery on the NYPD's policies and practices regarding members of the press. The *Gray* Plaintiffs also participated in numerous mediation and settlement negotiation sessions over the course of over a year. The result of these sessions was the Stipulated Order, and in particular its Section VI, "Treatment of Members of the Press." S.O. at 19-22. Section VI opens with Paragraph 89, which provides that "During Phase I (as defined in the Oversight section below) NYPD shall institute policies, protocols, and updates to the Patrol Guide and Administrative Guide relating to the NYPD's interactions with members of the press *applicable to both FAA and non-FAA related circumstances*, which shall include the following:" S.O. ¶ 89 (emphasis added).[4] Nine subsections follow articulating specific policies, *none* of which are limited to the context of FAAs.

---

[4] In Paragraph 90, the NYPD also commits to "amend current policy and training to reflect" the terms set out in Paragraph 89.

Relevant to this Motion is subsection (h), which reads:

> Where a member of the press is arrested for any **Red Light offense(s)** and presents a MOME press credential or an official government-issued press credential from another jurisdiction or government agency, process for that arrest shall be approved by the Incident Commander and/or DCPI personnel at the time of the arrest. If such member of the press is arrested for a C-summons-eligible **Red Light offense**, the presumption shall be that the arrested member of the press will be issued process at the point of encounter. Such arrested member of the press may be removed to an arrest processing facility or otherwise transported to another location only in those instances where the Incident Commander determines that issuing process at the point of encounter would create a health and/or safety risk to officers or any other individual. In the event the member of the press is presenting a government-issued press credential from another jurisdiction or government agency, this shall be verified, to the extent possible, at the time of encounter. In a circumstance where the validity of the press credential is unable to be verified on scene, officers shall consider the following as indicia of the credential being valid: . . . .

S.O. ¶ 89(h) (emphasis added). Paragraph 89 uses the term "Red Light offense," which is earlier defined in Paragraph 29 of the Stipulated Order to encompass ten common, low-level offenses. Paragraph 29 reads, in full: "The following offenses shall be 'Red Light' offenses: riot, incitement to riot, non-violent obstruction of governmental administration, violation of emergency orders, disorderly conduct, trespass, criminal mischief 3 or 4, New York State Vehicle and Traffic Law ('VTL') 1156(a), and unlawful assembly (New York State Penal Law 240.10). Any offense not designated as a 'Red Light' offense shall be considered a 'Green Light' offense." S.O. ¶ 29. Neither Paragraph 89(h) nor Paragraph 29 mention FAAs.

The policy set forth in Paragraph 89(h) was a response to several incidents alleged in the *Gray* action, which together demonstrated the particular impact of the NYPD's policing upon professional journalists. The *Gray* TAC cited many instances of professional press photographers engaged in documenting policy activity in a variety of public settings not connected with FAAs, being arrested without probable cause, charged with low-level offenses,

and then taken into custody for hours, preventing them from engaging in further newsgathering.

The February 2020 Alfiky incident alleged in the *Gray* TAC followed this pattern, and notably

did not involve any protest activity. *See Gray* TAC ¶¶ 86-96. Had Paragraph 89(h) been in

place at the time, it would have prevented Mr. Alfiky's lengthy detention on the basis of a

pretextual and retaliatory disorderly conduct charge the NYPD later declined to pursue. Thus,

the February 2020 Alfiky incident informed the Plaintiffs' negotiations for policy changes—

including the policy articulated in Paragraph 89(h)—that would apply in ***all*** contexts, not just at

FAAs.

> **B.    The City's Incomplete Implementation of Paragraph 89(h) in Draft Policy and Training Materials**

In the course of Phase I, and pursuant to Stipulated Order ¶ 101, the City shared drafts of

revised policies and training materials with Plaintiffs. On June 28, 2024, the City shared an

initial draft of revised policies and procedures pursuant to Paragraph 101 of the Stipulated Order,

but these did not include a full set of policies and procedures related to NYPD interactions with

members of the press. Declaration of Abigail B. Everdell ("Everdell Decl.") ¶ 3. Plaintiffs

responded by letter on August 23, 2024, and included an appendix of material deficiencies,

including omissions of policies and trainings implementing Paragraph 89. *Id.* The parties met

and conferred in September 2024, as well as by subsequent letter on February 14, 2025. *Id.*

Between December 2024 and January 2025, the NYPD finally shared a full set of six draft press-

specific policy and training materials related to NYPD interactions with members of the press.

*Id.* ¶ 4.

On March 10, 2025, Plaintiffs provided feedback on these six policy and training

documents. Everdell Decl. ¶ 4. Plaintiffs told the City that the materials appeared to apply the

Paragraph 89(h) policy only in the context of FAAs, rather than in all contexts as required by the

Stipulated Order, and proposed specific changes to remedy this deficiency. *See id*; Ex. A.[5]  The

City responded on March 28, 2025 with updated policy and training materials that continued to

describe the Paragraph 89(h) policy as limited to the context of FAAs.  See Ex. B, Ex. C, Ex. D.

In a cover email, the City confirmed its position that Paragraph 89(h) applies only in the context

of FAAs because "[the] Red Light/Green Light [policy] is only during FAAs and does not apply

across the board to members of the press in all [NYPD] encounters." *Id.* Ex. B at 1.  On April 8,

2025, Plaintiffs responded that "Paragraph 89(h) contains no provision limiting its application to

FAAs." *Id.* Ex. G at 8.

The parties met and conferred on the City's inadequate implementation of Paragraph

89(h) on April 15, 2025.  Everdell Decl. ¶ 9.  Plaintiffs offered to provide additional

documentation of settlement discussions—which had not been attended by current lead counsel

for the City—demonstrating that Paragraph 89(h) was never intended to apply only in the context

of FAAs.  *Id*.  The City reserved its final position on the issue pending this information.  *Id*.  On

April 16, 2025, however, before Plaintiffs had sent the additional information, the City sent

correspondence confirming once again that it would not implement Paragraph 89(h) outside the

context of FAAs.  It claimed, among other things, that the paragraph's reference to "incident

commander[s]" meant it could only apply at FAAs.  Ex. G at 2.  Plaintiffs responded that same

day, pointing out that the City's limitation of Paragraph 89(h) was contrary to the plain language

of the agreement, and the NYPD's own Patrol Guide refers to "incident commander[s]" outside

the context of FAAs in numerous instances.  *Id*. at 1.  Plaintiffs asked the City to confirm it

would change its position by April 18, 2025.  *Id*.  In a separate email, Plaintiffs also provided

background information regarding the negotiation of Paragraph 89(h).  Everdell Decl. ¶ 11.

---

[5] Cited exhibits refer to exhibits to the Everdell Declaration.

Having received no response by April 23, 2025, Plaintiffs wrote to the City confirming the parties' impasse and indicating their intent to file this Motion pursuant to Paragraph 101(d) of the Stipulated Order.  Ex. H.  In their letter, Plaintiffs explained that an adequate implementation of Paragraph 89(h) would require the following:

- Revision of "Media Press Powerpoint" [Ex. C] at Slide 25 to remove limitation of policy to FAAs;

- Revision of "NYPDU Media_Press" training [Ex. D] at Slides 25-26 to remove limitation of policy to FAAs;

- Revision of "Final Draft Day 1 Module 8" of Policing First Amendment Activities training [Ex. E] at page 14 to make clear—in light of the City's own contention that the language of the policy is ambiguous as to this point—that this policy also applies outside the context of FAAs; and

- Revision to Patrol Guide 212-49 [Ex. F] at page 4 to make clear—in light of the City's own contention that the language of the policy is ambiguous as to this point—that Red Light offenses with regard to requirements for arrests of credentialed press are not limited to offenses that occur in the context of FAAs.

*See* Ex. H at 1.  The City responded the same day confirming the parties' impasse.  Everdell Decl. ¶ 13.[6]  This Motion follows, seeking an order compelling the City to make the revisions outlined above in order to comply with the parties' Stipulated Order.

## ARGUMENT

## I.    THE COURT HAS JURISDICTION TO ENFORCE THE STIPULATED ORDER

The Stipulated Order provides that if "[i]f, after exhausting the meet-and-confer process, Plaintiffs believe in good faith that the City has drafted relevant policies/procedures and training curricula that omit or violate material terms of this Agreement, they may make a motion to the Court on that basis."  S.O. ¶ 101(d).  This Court has further held that the Stipulated Order, which

---

[6] In a further meet and confer regarding the City's delay in proceeding to Phase II of Oversight under the Stipulated Order, the City indicated it would not finalize its policy and training material, and thus will not proceed to Phase II, until the Court has ruled on how Paragraph 89(h) should be interpreted.  Everdell Decl. ¶ 14.

it has approved and so-ordered, constitutes a consent decree, empowering the Court to hear such

motions and issue equitable relief concerning the Stipulated Order's implementation in NYPD

policy and training material.  *In re New York City Policing During Summer 2020*

*Demonstrations*, No. 20-CV-8924 (CM)(GWG), 2024 WL 476367, at \*11 (S.D.N.Y. Feb. 7,

2024) ("upon the motion of any party, the court agrees to review draft policies, procedures, and

training curricula if the parties cannot agree on such matters") *aff'd sub nom. New York v. De*

*Blasio*, No. 24-1434, 2025 WL 857338 (2d Cir. Mar. 19, 2025).

## II.    THE ARREST PROCEDURES SET FORTH IN PARAGRAPH 89(h) OF THE STIPULATED ORDER UNAMBIGUOUSLY APPLY IN BOTH FAA AND NON-FAA CONTEXTS

The Stipulated Order reflects a contractually binding agreement between the parties,

implemented as a consent decree.  "[Consent] decrees reflect a contract between the parties (as

well as a judicial pronouncement), and ordinary rules of contract interpretation are generally

applicable."  *Doe v. Pataki*, 481 F.3d 69, 75 (2d Cir. 2007).  *See also Broad. Music, Inc. v. DMX*

*Inc.*, 683 F.3d 32, 43 (2d Cir. 2012) ("Consent decrees are construed 'basically as contracts.'

When the language of a consent decree is unambiguous, deference is paid to the plain meaning

of the decree's language.") (citation omitted).  Under black letter law, "[t]he primary objective of

a court in interpreting a contract is to give effect to the intent of the parties as revealed by the

language of their agreement."  *Compagnie Financiere v. Merrill Lynch*, 232 F.3d 153, 157 (2d

Cir. 2000).  In making this determination, "the initial interpretation of a contract 'is a matter of

law for the court to decide.'"  *K. Bell & Assocs. v. Lloyd's*, 97 F.3d 632, 637 (2d Cir. 1996)

(quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996)).  "Included in

this initial interpretation is the threshold question of whether the terms of the contract are

ambiguous."  *Alexander & Alexander v. These Certain Underwriters*, 136 F.3d 82, 86 (2d Cir.

1998).  "[T]he presence or absence of ambiguity is determined by looking within the four corners

of the document, without reference to extrinsic evidence." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008) (citing *Kass v. Kass*, 91 N.Y.2d 554 (1998)). *See also United States v. Broad. Music, Inc.*, 275 F.3d 168, 175 (2d Cir. 2001) ("When the language of a consent decree is unambiguous, 'the scope of a consent decree must be discerned within its four corners'") (citation omitted).

Paragraph 89 of the Stipulated Order reflects the parties' intent in clear and unambiguous language. It expressly provides that the policies set out in its subsections, which the City has committed to implementing, are "applicable to both FAA and non-FAA related circumstances." S.O. ¶ 89. Paragraph 89(h) is included among these subsections, and sets out procedures and presumptions the NYPD must apply when arresting credentialed members of the press for a specific set of low-level, non-violent offenses defined elsewhere in the Stipulated Order as "Red Light offenses." *See* S.O. ¶ 29. No reasonable or logical interpretation of Paragraph 89(h) could limit its application to FAAs, because Paragraph 89(h) *does not mention FAAs*. *See Nat'l Util. Serv., Inc. v. Tiffany & Co.*, No. 07 Civ. 3345 (RJS), 2009 WL 755292, at *8 (S.D.N.Y. Mar. 20, 2009) (citing *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986) ("Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided."). In short, Paragraph 89(h)'s plain terms make its scope clear and unambiguous: It applies to both FAA and non-FAA related circumstances.

The City has acknowledged that the policies articulated in Paragraph 89 in general apply to FAA and non-FAA contexts. *See* Everdell Decl. Ex. G at 2. Nevertheless, it has taken the position that Paragraph 89(h) should be limited to only the context of FAAs, and has offered two arguments to support this unreasonable reading: *First*, the City has proposed that because the term "Red Light offense" is defined in a section of the Stipulated Order applicable to FAAs,

Paragraph 89(h) should also only be applicable in that limited context. But this reading ignores that the paragraph in which the term "Red Light offense" is defined does not reference FAAs or limit the definition to FAAs, either. See S.O. ¶ 29. Instead, it simply specifies ten offenses designated as "Red Light offenses." *Id*. Thus, while other portions of Section III.B of the Stipulated Order outline a policy relevant to policing FAAs ("Red Light/Green Light"), the defined term in Paragraph 29—the *only* portion incorporated into Paragraph 89(h)—is not so limited. The City's argument might have traction if Paragraph 29 defined "Red Light offense" as certain offenses occurring only "in the context of FAAs," but it does not. Instead, the definition simply lists a number of common, low-level offenses. Paragraph 89(h) cannot be implicitly limited in scope to FAAs on the mere basis of using a previously-defined term that is not itself in any manner limited in scope to FAAs.

Moreover, courts must "consider the entire contract to 'safeguard against adopting an interpretation that would render any individual provision superfluous.'" *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993)). *See also Encyclopedia Brown Prods. v. Home Box Office, Inc.*, No. 91 Civ. 4092 (PKL), 1998 WL 734355, at *9 (S.D.N.Y. Oct. 15, 1998) (under New York law, contracts are construed to "give[] a reasonable and effective meaning to all terms" and not to leave "a part unreasonable or of no effect.") (citation omitted). The City's proposed reading, which suggests that each subpart of Paragraph 89 should be evaluated independently to determine if it applies at FAAs or in all contexts, cannot be reconciled with Paragraph 89's preamble, which makes clear that *all* its provisions shall be "applicable to both FAA and non-FAA related circumstances." The City's reading should be rejected for this additional reason.

**Second**, the City has taken the position that Paragraph 89(h) would be "nonsensical outside the FAA context," since it requires "approval from 'the Incident Commander and/or DCPI personnel at the time of the arrest'" of a credentialed journalist for a Red Light offense. Ex. G at 2. The City contends that "[n]either an Incident Commander, nor personnel from DCPI could be expected to be present during an encounter that occurs outside of an FAA." *Id.* But these contentions are belied by the NYPD's own publicly available policies. Initially, Paragraph 89(h) does not require DCPI to be *on site* when approving an arrest. And contacting DCPI is already standard NYPD procedure when a member of service is involved in an incident involving media representatives (a.k.a. members of the press). Patrol Guide ("P.G.") 212-49 currently directs officers in such circumstances to "[n]otify the Office of the Deputy Commissioner, Public Information [DCPI] without delay," and notes that "[DCPI] is available 24 hours a day, 7 days a week for consultation and/or response to incidents involving the media." *Id.*[7]

The Patrol Guide also confirms without a doubt that "Incident Commander" is not a term of art specific to FAAs.[8] The Patrol Guide uses the term in countless contexts, to identify the member of service who has command at the scene of *any* incident. *See, e.g.* P.G. 213-4 at 5 (in context of "mobilizations and command post operations," defining "incident commander" as "the one position that will be filled at every incident, regardless of size, by the HIGHEST UNIFORM RANKING POLICY SUPERVISOR ASSUMING COMMAND, who has responsibility for

---

[7] The Court may take judicial notice of the NYPD's Patrol Guide, which is publicly available at https://www.nyc.gov/site/nypd/about/about-nypd/manual.page. *See Makinen v. City of New York*, 722 F. App'x 50, 53 n.1 (2d Cir. 2018) (taking judicial notice of NYPD Patrol Guide).

[8] While the Stipulated Order includes detailed provisions regarding the identities, duties, and responsibilities of Incident Commanders at FAAs, it does not thereby imply that the term Incident Commander is not or cannot be used outside that context.

management of incident in question"); P.G. 212-17 at 1 (referring to the "incident commander" at "scenes of critical situations on New York City transit"); P.G. 212-101 at 3 (directing the commanding officer/executive officer/duty captain to serve as "incident commander" at the scene of any "chemical, biological, radiological, nuclear (CBRN)/hazardous material incidents"); P.G. 213-02 at 2 (explaining who should serve as the "incident commander" at the scene of "emergency incidents"); P.G. 213-03 at 1 (designating platoon commander to serve as "incident commander" at the scene of "an unusual disorder/emergency incident").

Thus, Paragraph 89(h) requires approvals which can be made either by the Incident Commander at the scene of any incident, or by DCPI, who are available 24/7 to advise on incidents involving members of the press. These procedures do not, in any way, render the journalist arrest procedures of Paragraph 89(h) "nonsensical" outside the context of FAAs.

***Finally***, the City's most revealing concern with the Paragraph 89(h) policy is its contention that Paragraph 89(h) would require the City to "implement a significant change in the way police officers are trained relating to all arrest encounters regardless of context. This would not be a small or minor undertaking, and would also likely result in a great deal of additional confusion and uncertainty." Ex. G at 2-3. Thus, it appears the City's overarching concern is that Paragraph 89(h), as written, would require a significant policy change. But this is precisely why it was negotiated, and why Plaintiffs agreed to settle their injunctive claims (and concede on other settlement points) in exchange: because the City had agreed to *meaningful policy change*. The City cannot now disavow or narrow the parties' Stipulated Order because it has since changed its mind. *See, e.g., Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005) ("It is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made."). Nor do the City's concerns about "confusion and

uncertainty" hold up to scrutiny. The parties have spent approximately nine months preparing, discussing, and conferring on a set of comprehensive policy and training materials implementing the Paragraph 89 policies, with the shared goal of minimizing any confusion or uncertainty among members of service. While Plaintiffs welcome any further efforts the City considers necessary to achieve that end, they will not accept the City abandoning a painstakingly negotiated, stipulated, and court-ordered policy change by simply deciding the undertaking would be too hard.

### III.    EVEN IF THE STIPULATED ORDER WAS AMBIGUOUS, EXTRINSIC EVIDENCE CONFIRMS PARAGRAPH 89(h) WAS NOT INTENDED TO BE LIMITED TO FAA CONTEXTS

Even if Paragraph 89(h) were ambiguous—which it is not—the parties' intent that the provision apply in all contexts is also demonstrated by extrinsic evidence. "When the language of a decree is ambiguous, . . . a court may consider, *inter alia,* extrinsic evidence to determine the parties' intent, including the purpose of the provision and the overall context of the decree." *Broad. Music*, 683 F.3d at 43. *See also Berger v. Heckler*, 771 F.2d 1556, 1567-68 (2d Cir. 1985) ("A consent decree is a 'hybrid' contract and order, and 'reliance upon certain aids to construction is proper, as with any other contract.'") (citation omitted); *Roberts v. Consol. Rail Corp.*, 893 F.2d 21, 24 (2d Cir. 1989) (under New York law, where a contract is ambiguous, "courts look to the acts and circumstances surrounding execution of the ambiguous term to ascertain the parties' intent"); *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1059 (2d Cir. 1995) (considering evidence from parties' settlement negotiations to determine intent).

***First***, the overall context of the Press Provisions, and specifically the *Gray* claims resolved through these provisions, supports a broad reading of Paragraph 89(h). The *Gray* Plaintiffs alleged numerous instances of NYPD misconduct against members of the press *outside* FAA contexts. *Gray* TAC ¶¶ 86-96, 107(a)-(f), (h)-(k). Indeed, one of the six specific incidents

14

forming the basis of the *Gray* Plaintiffs' individual claims involved the unlawful and retaliatory arrest and several-hour detention of credentialed journalist Amr Alfiky in February 2020, outside the context of any FAA. *Id.* ¶¶ 86-96. Because Mr. Alfiky was charged with disorderly conduct—a "Red Light offense" under Paragraph 29 of the Stipulated Order—the policy set out in Paragraph 89(h) would have prevented the arrest entirely (by requiring approval of DCPI and/or the Incident Commander at the scene of the police action), or at minimum prevented Mr. Alfiky from being removed from the scene, held for hours and having his press pass seized when he could have simply been issued a summons at the site of the incident. If Paragraph 89(h) were narrowed to only apply at FAAs, an incident like what befell Mr. Alfiky could easily happen again. In short, the purpose of the Press Provisions was to address the wrongful police conduct alleged in the *Gray* TAC, and that goal would not be adequately achieved if Paragraph 89(h) only applied to FAAs.

**Second**, if Court *still* had any doubt as to the intended meaning of Paragraph 89(h), parole evidence of the parties' negotiations surrounding this term further confirms the parties' intent that it apply in all contexts.[9] *See 67 Wall St. Co. v. Franklin Nat. Bank*, 37 N.Y.2d 245, 248–49 (1975) ("while the parol evidence rule requires the exclusion of evidence of conversations, negotiations and agreements made prior to or contemporaneous with the execution of a written [instrument] which may tend to vary or contradict its terms, such proof is generally admissible to explain ambiguities therein.") (citation omitted). ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[9] The parties have agreed that Plaintiffs may disclose the below-referenced evidence from these confidential discussions under seal, as provided under Mediation Program Procedures (8/7/2023) § 2(b). A*vailable at* https://www.nysd.uscourts.gov/sites/default/files/2024-08/Mediation%20Program%20Procedures%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.pdf. *See* Everdell Decl. ¶ 3.



In short, there is no evidence the parties ever intended Paragraph 89(h) to apply only in the context of FAAs.  Instead, the context of the Stipulated Order and extrinsic evidence of its negotiation confirm its broad intended scope.

## CONCLUSION

For the foregoing reasons, the City's refusal to implement the policy set out in Paragraph 89(h) outside the context of FAAs omits a material portion of, and therefore violates, the Stipulated Order.  Plaintiffs respectfully ask this Court to enter an order requiring the City to

revise its policy and training materials—including, at minimum, (1) "Media Press Powerpoint" (Ex. C); (2) "NYPDU Media_Press" training (Ex. D); (3) "Final Draft Day 1 Module 8" of Policing First Amendment Activities training (Ex. E); and (4) Patrol Guide 212-49 (*Id.* Ex. F)—to clearly articulate that the Section 89(h) policy applies both in and outside the context of FAAs, and award Plaintiffs their reasonable costs and fees incurred in making this motion, pursuant to Paragraph 138 of the Stipulated Order.


Dated: New York, New York
　　　May 7, 2025

Respectfully submitted,


*/s/ Robert D. Balin*
Robert D. Balin
Abigail Everdell
Nimra H. Azmi
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax: (212) 489-8340
robbalin@dwt.com
abigaileverdell@dwt.com
kathleenfarley@dwt.com

Wylie Stecklow
WYLIE STECKLOW PLLC
Carnegie Hill Tower
152 W. 57th Street, 8th Floor
NY NY10019
(t) 212 566 8000
ecf@WylieLAW.com

Mickey H. Osterreicher
General Counsel
NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION
70 Niagara Street
Buffalo, New York 14202
Tel: (716) 983-7800

Fax: (716) 608-1509
lawyer@nppa.org

Alicia Calzada (*pro hac vice*)
ALICIA WAGNER CALZADA, PLLC
Deputy General Counsel
National Press Photographers Association
926 Chulie Drive, suite 16
San Antonio, TX 78216
210-825-1449
Alicia@calzadalegal.com

*Co-Counsel for Plaintiffs in Gray v. City of New York et al*

/s/ Molly K. Biklen
Molly K. Biklen
Jessica Perry
Daniel R. Lambright
Robert Hodgson
Veronica Salama
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
mbiklen@nyclu.org

Jennvine Wong
Rigodis Appling
THE LEGAL AID SOCIETY
49 Thomas Street,
10th Floor
New York, NY 10013
(646) 577-3398

Corey Stoughton
SELENDY GAY PLLC
1290 Avenue of the
Americas
New York, NY 10104
(212) 390-9000

*Counsel for Plaintiffs in Payne v. De Blasio, 20 Civ. 8924*

LETITIA JAMES
*Attorney General of the State of New York*

By: /s/  *Travis England*
Sandra Park, Chief, *Civil Rights Bureau*
Travis England, *Deputy Chief, Civil Rights Bureau*
Lillian Marquez, *Assistant Attorney General*
Office of the New York State Attorney General
28 Liberty Street, 20th Floor
New York, NY 10005
(212) 416-6233
Travis.England@ag.ny.gov

Mickey H. Osterreicher
General Counsel
NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION
70 Niagara Street
Buffalo, New York 14202
Tel: (716) 983-7800
Fax: (716) 608-1509
lawyer@nppa.org

Alicia Calzada (pro hac vice)
ALICIA WAGNER CALZADA, PLLC
Deputy General Counsel
National Press Photographers Association
926 Chulie Drive, suite 16
San Antonio, TX 78216
210-825-1449
Alicia@calzadalegal.com

*Co-Counsel for Plaintiffs in Gray v. City of New York et al*

The Aboushi Law Firm PLLC

*/s/ Tahanie A. Aboushi*
Tahanie A. Aboushi, Esq.
Aymen A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: (212) 391-8500
Tahanie@Aboushi.com
Aymen@Aboushi.com

**COHEN&GREEN P.L.L.C.**

By: _Elena L. Cohen_
Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
Tel: (929) 888-9480
Fax: (929) 888-9457
elena@femmelaw.com
remy@femmelaw.com
jessica@femmelaw.com

GIDEON ORION OLIVER

_/s/ Gideon Orion Oliver_
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

_Counsel for Plaintiffs in Rolon, et al v. City of New York, et al, No. 21-cv-2548_